# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

WARNER BROS. RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

C.A. No.: 19-cv-00874-RBJ-MEH

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLAIM FOR VICARIOUS LIABILITY**

Charter hereby replies to Plaintiffs' Opposition to its Motion to Dismiss, ECF 50 ("Opp."). Plaintiffs' effort to recast their allegations misstates the allegations and highlights the implausibility of their vicarious liability claim. In the final analysis, however, the Complaint fails to include allegations necessary for Plaintiffs to proceed on that claim. First, Plaintiffs have failed to allege that allegedly infringing material serves as a "draw" to subscribe to Charter's internet service. Second, Plaintiffs fail to allege that Charter can control the infringing activity.

**I.     Plaintiffs' effort to rehabilitate their allegations demonstrates that their "direct financial benefit" theory is fundamentally flawed.**

Charter's motion stated the proper standard for the direct financial benefit prong of vicarious liability; there must be a causal connection between the financial benefit and the infringing activity. Mot. at 9. This District has consistently held that any financial benefit must be *directly caused by the infringement*. *Id.* at C(2). Plaintiffs' Complaint falls short of alleging that the infringing material is a draw for infringers to subscribe to Charter's service. *Id.*

In response, Plaintiffs acknowledge that the requisite financial benefit must be obvious, direct, and attributable to the infringement. Opp. at 6, 10. They nonetheless argue that Charter misstates the standard, relying on out-of-context snippets of non-binding authority to argue that the financial benefit can be attenuated.[1] *Id.* at 11. Disregarding the circuit-level jurisprudence that has underpinned this District's vicarious liability rulings, Plaintiffs argue that *any* financial benefit, regardless of its proximity to the underlying direct infringement, should be sufficient. But even the out-of-circuit district court decisions they cite make no such leap. *See Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015)

---

[1] Plaintiffs also take issue with the fact that Charter cites cases decided at summary judgment, though Plaintiffs do as well. Opp. at 18. Notably, they do not cite a single instance of an ISP held vicariously liable on the basis alleged here, reinforcing that their theory simply does not fit here.

(requiring infringing material to serve as a draw), at *42; *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (same); *Disney Enters., Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *39 (S.D. Fla. Sept. 20, 2013) (same). Indeed, to do so would expand vicarious liability beyond all rational bounds. *Id*. at 10.[2]

To fit their allegations to the proper standard, Plaintiffs stretch them far beyond those actually reflected in the Complaint. They try to connect the dots between a random assortment of allegations by arguing that subscribers were drawn to Charter for fast internet speeds, and that Charter knowingly touted its internet speed as a way to attract would-be infringers. Opp. at 12 (citing to Compl. ¶¶ 75, 77-78, 85, 90-91). The Complaint, however, contains no such allegation (nor could it). The cited paragraph merely alleges that Charter advertises the speed of its internet service to subscribers, which, in turn, permits users to download material. Compl. ¶ 75.

But Plaintiffs' argument that ads touting the speed of Charter's service drew would-be infringers to select Charter's internet service over others is facially implausible. Plaintiffs state that "plausibility is not a probability standard," Opp. at 6, but while the Court must accept the allegations as true, the facts must still create a plausible basis for liability to survive a Rule 12 motion. *Robbins*, 519 F.3d at 1247 (noting that one of the purposes of the plausibility requirement is to "weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success"). It can safely be presumed that most, if not all, ISPs market the speed of their service, and there is of course nothing nefarious about doing so, as it is required for all manner of

---

[2] Plaintiffs rely on one Southern District of New York case to urge that allegations relating to an entity's tolerance of infringement are sufficient to allege vicarious liability. Opp. at 13. In that case, and the precedent upon which it relied, plaintiffs still alleged or demonstrated that the infringing content served as a draw to use defendant's service. *See Escape Media*, 2015 WL 1402049, at *42 (relying upon *Capitol Records, Inc. v. MP3tunes, LLC*, 2013 WL 1987225, at *10 (S.D.N.Y. May 14, 2013); *A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 921 (N.D. Cal. 2000)).

online activities. Plaintiffs can point to nothing to suggest that Charter's ads are specifically targeted at would be infringers. Moreover, Plaintiffs do not allege that the advertised speeds are meaningfully faster than Charter's competitors or that those faster speeds somehow drew subscribers to Charter's service (over others) to infringe. If Plaintiffs' allegations were sufficient, every ISP would face exposure for merely advertising the speed of its internet service.

Plaintiffs' cannot overcome another of Charter's key criticisms of the Complaint: that it provides no plausible basis for the necessary inference that subscribers chose Charter's internet service because they somehow knew that Charter would not terminate them if they were alleged to infringe. Opp. at 12. Plaintiffs simply fail to point to any allegations that potential subscribers were aware of or considered this when *selecting* a service provider. *Id.* Instead, Plaintiffs argue that "Charter's failure to act" somehow caused current Charter subscribers to become aware that they could infringe with impunity.[3] *Id*. However, Plaintiffs cannot point to any allegation that subscribers were drawn to or would *switch* services due to Charter's alleged practices.

Plaintiffs can point to no plausible allegations that support the financial benefit prong of vicarious liability. While they argue that the omission of allegations from their Complaint "does not bear on whether Plaintiffs have stated a claim," the sufficiency of their pleadings is precisely at issue here. *See* Opp. at 16. This failure to allege is fatal to their claim for vicarious liability.[4]

## II. Plaintiffs' arguments on the "right and ability to control" element of vicarious liability simply reinforce that they have sued the wrong party.

Plaintiffs rely on cherry-picked quotes from a handful of out-of-circuit cases to argue that

---

[3] Plaintiffs also inflate the number of alleged infringers by conflating numbers of *subscribers* and numbers of *notices*. *Compare* Opp. at 1 ("hundreds of thousands of defendant'[s] . . . subscribers") *with* Opp. at 4 ("Plaintiffs … identified *hundreds of thousands* of specific instances….").

[4] Plaintiffs contend that Charter's arguments rely on information "peculiarly within its knowledge or control," Opp. at 17, but the deficiencies identified herein do not warrant additional investigation.

the right and ability to control requirement is satisfied where a defendant has the ability to limit a user's capacity to upload or download materials to or from the internet. Opp. at 7. Specifically, Plaintiffs point to several cases where the defendant provided a closed, online file exchange system. *Escape Media*, 2015 WL 1402049 (defendant Grooveshark.com was a streaming site that allowed users to upload files to its system); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013) (defendant website engaged in the resale of digital downloads); *Usenet.com, Inc.*, 633 F. Supp. 2d 124 (file sharing site defendant); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) (defendant was a music exchange site that permitted users to remotely access infringing files on other users' hard drives). In each case, the defendant managed, operated, and controlled the very servers and technology that facilitated the transfer of copyrighted material. Each defendant played a direct role in indexing the infringing material and had the ability to block or remove content transmitted through or uploaded to its site. By virtue of its proximate relationship to the direct infringement, each defendant had the ability to stop users from storing infringing material on its servers and to identify and remove the allegedly infringing material upon notice, and therefore, had the practical ability to control it. *Escape Media*, 2015 WL 1402049 at *42; *ReDigi*, 934 F. Supp. 2d at 655, 660; *Usenet.com,* 633 F. Supp. 2d at 157; *Napster*, 239 F.3d at 1012, 1023.

For Charter, no such practical ability exists. The technology that allegedly facilitates the transfer of infringing material is BitTorrent and other P2P file sharing protocols. Charter cannot control BitTorrent or other P2P technology, nor do Plaintiffs allege as much. Terminating a user's internet service does not preclude that user from continuing to use BitTorrent or other P2P websites. Indeed, infringement will not be prevented as in the cases cited by Plaintiffs, as

infringers could still access the services through other connections, including mobile services.[5] The restrictions contemplated in Plaintiffs' cited cases would have controlled access to the specific, infringing files themselves. Here, Charter exercises no such control.

Rather than target the allegedly infringing P2P platforms themselves, Plaintiffs instead attempt to support a highly attenuated theory of liability. Plaintiffs try to distinguish *Amazon* and *Visa* by arguing that both "expressly distinguished situations like this one." Opp. at 9. However, *Amazon* specifically notes that the defendants at issue in that case could not "block [the users] ability to 'host and serve infringing [material] on the Internet." *Amazon*, 508 F.3d 1174. The very same is true here: Charter cannot control what files its subscribers access or prevent users from using BitTorrent or other P2P software to infringe. Similarly, the *Visa* court highlighted that Visa could not "block access to the internet," and neither can Charter. *Visa*, 494 F.3d at 804. Charter can only block one method of accessing the internet.[6] Plaintiffs cannot sufficiently allege that Charter has the right and ability to control the allegedly infringing conduct at issue.

## CONCLUSION AND REQUEST FOR ORAL ARGUMENT

Charter respectfully requests that the Court grant its Motion and dismiss Plaintiffs' claim for vicarious liability for failing to sufficiently allege either prong of that claim. Given the import of the legal issues raised in this Motion, Charter respectfully requests oral argument.

---

[5] The language from *Napster* relied upon by Plaintiffs, in fact, supports Charter's position. 239 F.3d at 1023 (emphasis added) ("The ability to block infringers' access to a *particular environment* for any reason whatsoever is evidence of the right and ability to supervise."). There is no "particular environment" at issue here—it is the entirety of the internet. *Id.*

[6] Plaintiffs reject the argument that any restriction imposed by Charter would not stop infringement. Opp. at 8. Pointing to *ReDigi*, they argue that infringement occurring outside of Charter's network is irrelevant. This argument fails for the same reason that their effort to analogize *ReDigi* fails: *ReDigi* dealt with a closed system where defendant's own system was being used to host infringing material. 934 F. Supp. 2d at 645, 657, 660. By contrast, Charter has no practical ability to control BitTorrent.

Respectfully submitted this 29th day of July, 2019.

                                  Respectfully submitted,

                                  By: */s/ Craig D. Joyce*
                                  Craig D. Joyce
John M. Tanner
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
Phone: 303.830.2400
Fax: 303.830.1033
E-mail: cjoyce@fwlaw.com
E-mail: jtanner@fwlaw.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
Stacey Foltz Stark
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166-4193
Phone: 212.294.6700
Fax: 212.294.4700
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com
E-mail: sfstark@winston.com

Jennifer A. Golinveaux
Winston & Strawn LLP
101 California Street
San Francisco, California 94111
Phone: 415.591.1000
Fax: 415.591.1400
E-mail: jgolinveaux@winston.com

*Counsel for Defendant*
*Charter Communications, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of July 2019, a true and correct copy of the foregoing **DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLAIM FOR VICARIOUS LIABILITY** was served electronically via CM/ECF E-Filing system as follows unless otherwise indicated:

Mitchell A. Kamin
Neema T. Sahni
Mark Y. Chen
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA  90067-4643

Jonathan M. Sperling
Jacqueline C. Charlesworth
William E. O'Neil
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405

Megan O'Neill
COVINGTON & BURLING, LLP
One City Center
850 Tenth Street NW
Washington, DC  20001-4956

Benjamin M. Leoni
Janette Lee Ferguson
LEWIS BESS WILLIAMS & WEESE P.C.
1801 California Street, Suite 3400
Denver, CO  80202

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC  20016

*/s/ Sharon Y. Meyer*
Sharon Y. Meyer