IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC.,
ATLANTIC RECORDING CORPORATION,
BAD BOY RECORDS LLC,
ELEKTRA ENTERTAINMENT GROUP INC.,
FUELED BY RAMEN LLC,
NONESUCH RECORDS INC.,
ROADRUNNER RECORDS, INC.,
WEA INTERNATIONAL INC.,
WARNER/CHAPPELL MUSIC, INC.,
WARNER-TAMERLANE PUBLISHING CORP.,
WB MUSIC CORP.,
W.B.M. MUSIC CORP.,
UNICHAPPELL MUSIC INC.,
RIGHTSONG MUSIC INC.,
COTILLION MUSIC, INC.,
INTERSONG U.S.A., INC.,
SONY MUSIC ENTERTAINMENT,
ARISTA MUSIC,
ARISTA RECORDS LLC,
LAFACE RECORDS LLC,
PROVIDENT LABEL GROUP, LLC,
SONY MUSIC ENTERTAINMENT US LATIN,
VOLCANO ENTERTAINMENT III, LLC,
ZOMBA RECORDINGS LLC,
SONY/ATV MUSIC PUBLISHING LLC,
EMI AL GALLICO MUSIC CORP.,
EMI ALGEE MUSIC CORP.,
EMI APRIL MUSIC INC.,
EMI BLACKWOOD MUSIC INC.,
COLGEMS-EMI MUSIC INC.,
EMI CONSORTIUM MUSIC PUBLISHING INC. d/b/a EMI FULL KEEL MUSIC,
EMI CONSORTIUM SONGS, INC., individually and d/b/a EMI LONGITUDE MUSIC,
EMI ENTERTAINMENT WORLD INC. d/b/a EMI FORAY MUSIC,
EMI JEMAXAL MUSIC INC.,
EMI FEIST CATALOG INC.,
EMI MILLER CATALOG INC.,
EMI MILLS MUSIC, INC.,
EMI UNART CATALOG INC.,
EMI U CATALOG INC.,
JOBETE MUSIC CO. INC.,
STONE AGATE MUSIC,

SCREEN GEMS-EMI MUSIC INC.,
STONE DIAMOND MUSIC CORP.,
UMG RECORDINGS, INC.,
CAPITOL RECORDS, LLC,
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC – MGB NA LLC,
UNIVERSAL MUSIC PUBLISHING INC.,
UNIVERSAL MUSIC PUBLISHING AB,
UNIVERSAL MUSIC PUBLISHING LIMITED,
UNIVERSAL MUSIC PUBLISHING MGB LIMITED,
UNIVERSAL MUSIC – Z TUNES LLC,
ISLAND MUSIC LIMITED,
POLYGRAM PUBLISHING, INC., and
SONGS OF UNIVERSAL, INC.,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

This action arises out of the alleged secondary infringement by the Defendant of the Plaintiffs' copyrighted musical compositions and sound recordings. Plaintiffs allege Defendant infringed on their copyrighted works by contributing to its subscribers' direct infringement ("contributory infringement") and by profiting from the subscribers' direct infringement while declining to exercise a right to stop or limit it ("vicarious infringement"). Defendant now moves to dismiss Plaintiffs' claims for vicarious infringement, and the motion has been referred to this Court for a report and recommendation. For the reasons that follow, this Court respectfully recommends that the Honorable R. Brooke Jackson deny the Defendant's motion.

2

## STATEMENT OF FACTS

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs in the operative Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs are record companies and music publishers that produce, manufacture, distribute, sell, and license commercial sound recordings and musical compositions. Through substantial investments of money, time, and creative effort, Plaintiffs—and the recording artists and songwriters they represent—have developed and marketed the music and recordings listed on the attachments to the Complaint, all of which have been registered with the U.S. Copyright Office ("copyrighted works"). Collectively, Plaintiffs own or control the copyrights to millions of musical compositions and sound recordings, which are one of their primary sources of income.

Defendant Charter Communications, Inc. is one of the largest internet service providers ("ISP") in the country, with more than twenty-two million subscribers nationwide. Defendant provides high-speed internet service to its customers in exchange for monthly subscription fees by offering a tiered pricing structure allowing a subscriber to purchase higher download speeds for higher monthly fees.

In recent years, Plaintiffs have become aware of persons infringing their copyrighted works through online peer-to-peer file-sharing programs, such as "BitTorrent." BitTorrent is a file-sharing protocol that allows users to transfer music and other files directly to one another over the internet. What makes BitTorrent unique from other file-sharing programs is that it facilitates much faster downloading by breaking each file into pieces, allowing users to download different pieces of

content simultaneously from different peers. At the same time, the system allows users to begin disseminating the copyrighted content before the complete file has even downloaded. This means that, at any given time, each user connected to the internet can be both downloading and uploading different pieces of a file from, and to, multiple other users. Once a user has downloaded all the pieces, the file is automatically reassembled into its complete form and available for playback by the user.

The efficiencies gained from this type of file sharing have led to significant online piracy. A January 2011 report estimated that 11.4% of all internet traffic at the time involved the unauthorized distribution of copyrighted works through BitTorrent. In a report from September 24, 2013, another company, NetNames, estimated that 99.97 percent of non-pornographic files distributed via BitTorrent systems infringe copyrights. Further, in a well-publicized incident in 2015, millions of individual BitTorrent users downloaded an episode of HBO's "Game of Thrones" within just twenty-four hours of its airing. Plaintiffs' own copyrighted works have been distributed millions of times through BitTorrent, depriving Plaintiffs of untold millions of dollars in legitimate music sales.

Defendant seeks to draw subscribers to its high-speed internet service—including subscribers who wish to download and distribute music illegally through programs such as BitTorrent—by touting "blazing-fast . . . speeds" that allow users to "download just about anything instantly," including up to "8 songs in 3 seconds." Subscribers, in turn, have utilized these speeds to pirate Plaintiffs' works. For example, between 2012 and 2015, Plaintiffs and their representatives identified hundreds of thousands of specific instances in which Defendant's subscribers utilized peer-to-peer systems to distribute and copy Plaintiffs' songs illegally. Tens of thousands of these

subscribers were serial infringers, with some pirating hundreds of Plaintiffs' songs over the course of several months.  Defendant ignored the hundreds of thousands of statutory infringement notices the Plaintiffs and others submitted to it under penalty of perjury, each of which detailed specific acts of infringement committed by specific subscribers, identified by their unique Internet Protocol ("IP") addresses.

Defendant's "Terms of Service/Policies" expressly prohibits users from engaging in copyright infringement and reserves to Defendant the right to terminate users' accounts for participating in piracy. Notwithstanding this policy, Defendant has failed to address the repeated infringement that occurs over its network because it derives significant income from subscription fees, and Defendant does not want to lose the revenue generated from these infringing subscribers by terminating their accounts, nor risk the possibility that account terminations would make its service less attractive to other existing or prospective users. In addition, Defendant does not want to devote the resources necessary to track repeat infringers and respond to infringement notices.

Furthermore, Defendant's refusal to terminate infringing users' accounts acts as a further draw to its service, as subscribers come to understand that they can download music and other files illegally over Defendant's network without fear that Defendant will terminate their internet access. That is, the specific infringing subscribers identified in Plaintiffs' notices knew Defendant would not terminate their accounts despite Defendant's receipt of multiple notices identifying them as infringers, and they remained Defendant's subscribers to continue illegally downloading copyrighted works.  Defendant's conduct encourages its customers to purchase even more bandwidth from the company and to continue using—and paying subscription fees for—Defendant's services.

When Defendant's subscribers use its network to obtain infringing copies of Plaintiffs'

copyrighted works illegally, that activity undercuts the legitimate music market, depriving Plaintiffs and those recording artists and songwriters, whose works Plaintiffs sell and license, of the compensation to which they are entitled. Without such compensation, Plaintiffs and their recording artists and songwriters, have fewer resources available to invest in the further creation and distribution of high-quality music.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *SEC v. Shields*, 744 F.3d 633, 640 (10th

Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

The present motion seeks an order dismissing Plaintiffs' "Count II" for vicarious copyright infringement. The Tenth Circuit has determined that a defendant can be secondarily liable for another's copyright infringement under principles of vicarious and contributory liability. *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76

F.3d 259, 261–65 (9th Cir. 1996)).  Vicarious liability attaches when the defendant "has the right and ability to supervise the infringing activity" and "has a direct financial interest in such activities." *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it").

A defendant may be vicariously liable even when he or she is not aware of the infringing activity.  *Diversey*, 738 F.3d at 1204 (citing *Fonovisa*, 76 F.3d at 262); *see also Grokster, Ltd.*, 545 U.S. at 930 n.9 ("vicarious liability theory ... allows imposition of liability ... even if the defendant initially lacks knowledge of the infringement.").  But, there must be a showing that someone directly infringed a copyright for vicarious liability to attach.  *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1181 (10th Cir. 2009) ("[B]oth contributory and vicarious infringements require someone to have directly infringed the copyright.") (citing *Grokster, Ltd.*, 545 U.S. at 930-31).

Here, Defendant contends that Plaintiffs fail to allege (1) a causal connection between the alleged infringement and its profits and, thus, fail to show a direct financial interest in any infringing activities; and (2) that Defendant maintained the right and ability to control infringement by its subscribers.  The Court will address each challenge as presented.

## I.     Direct Financial Interest in Alleged Infringing Activities

Citing cases from the Ninth Circuit, Defendant argues that Plaintiffs' allegations fail to demonstrate Defendant derived *direct* financial benefits from any infringement.  Specifically, Defendant asserts that the alleged subscription fees Defendant charges the infringing users constitute only an "indirect benefit" because "the infringing activity must be more than an 'added benefit' to

a subscription; it must be the attracting factor, the 'draw' for subscribers." Mot. 9 (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 674 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017)). Defendant contends that the only benefit it "receives is a flat fee for the provision of internet services, which is insufficient to state a claim." *Id.* at 11 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)). According to Defendant, "[a]t most, Plaintiffs assert that subscribers are able to utilize their internet connection for illegal activity as an added benefit to the subscribers, not the draw." *Id.*

Plaintiffs counter that Defendant "misstates the financial benefit standard." Resp. 11. Plaintiffs contend that the standard is "permissive and imposes liability even for 'remote' and 'unquantifiable' benefits." *Id.* Plaintiffs also argue that Defendant misinterprets *Ellison* in that flat periodic fees "*can* and *do* 'constitute direct financial benefits' when 'the value of a defendant's service lies in providing access to infringing material.'" *Id.* at 11-12 (citing *Ellison*, 357 F.3d at 1079 (emphasis in original)). Plaintiffs conclude their allegations "that Charter drew infringers to its service by touting specific features of its service that are attractive to copyright infringers and by adopting a policy of non-enforcement, *and* that these features 'motivated' a subset of users to sign up for, or remain with, the company," together with allegations "that Charter has a financial incentive not to terminate the accounts of infringing users—an allegation buttressed by the fact that Charter has declined to terminate users' accounts despite receiving repeated notices of specific users' infringement" are sufficient to plausibly state the "direct financial interest" element of a vicarious liability claim. *Id.* at 14.

The Court finds Plaintiffs' allegations, taken as true at this early stage of the litigation, plausibly state that Defendant has a direct financial interest in the alleged infringing activity.

Defendant is correct that the Tenth Circuit has cited opinions from the Ninth Circuit when addressing vicarious infringement claims. *See Diversey*, 738 F.3d at 1204 (citing *Fonovisa, Inc.*, 76 F.3d at 261–65) and *La Resolana Architects, PA.*, 555 F.3d at 1181 (citing *Ellison*, 357 F.3d at 1076). However, no case in the Tenth Circuit has cited *Perfect 10, Inc. v. Giganews, Inc.*, *supra*, on which Defendant primarily relies. Nevertheless, the court in *Perfect 10* confirmed that a "[f]inancial benefit exists where the availability of infringing material acts as a draw for customers" and "[t]he size of the 'draw' relative to a defendant's overall business is immaterial." *Perfect 10, Inc.*, 847 F.3d at 673. The court concluded that "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Id.*

The *Perfect 10* court also noted its analysis in *Ellison*–which has been cited by the Tenth Circuit–emphasizing the difference between a defendant's receipt of financial benefits from infringement of the plaintiff's copyrighted works and a defendant's receipt of benefits from infringement in general. In *Ellison*, the Ninth Circuit concluded "[t]he record lacks evidence that AOL attracted or retained subscriptions because of the infringement or lost subscriptions *because of AOL's eventual obstruction of the infringement*" – in other words, AOL's action upon its receipt of plaintiff's complaint of blocking access to the infringing material led the court to find the plaintiff failed to demonstrate the defendant received a direct financial benefit from the infringement alleged in that case. *Ellison*, 357 F.3d at 1079. Likewise, in *Perfect 10*, the court concluded "Perfect 10 was required to provide evidence that customers were drawn to Giganews's services because of the infringing Perfect 10 material at issue" and "there was no evidence indicating that anyone subscribed

to Giganews because of infringing Perfect 10 material." *Perfect 10, Inc.*, 847 F.3d at 674.

While the Tenth Circuit has cited *Ellison* and *Fonovisa* in setting forth the elements for secondary copyright infringement, the court has not yet engaged in an analysis of the direct financial benefit prong of such claim.  However, citing the Supreme Court's opinion in *Grokster* and the Ninth Circuit's opinions in *Ellison* and *Fonovisa*, the District of Kansas determined that "[t]he financial benefit may be established [ ] 'by showing that users are attracted to a defendant's product because it enables infringement and that [ ] use of the product for infringement financially benefits the defendant.' It exists 'where the availability of infringing material acts as a draw for customers.'" *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *15 (D. Kan. Dec. 9, 2015).[1]  The *Tomelleri* court addressed a motion for summary judgment and found the plaintiff failed to provide evidence that the alleged infringement was a "draw" to zazzle.com users.  *Id.*

This Court finds *Tomelleri* consistent with *Perfect 10*, *Ellison* and *Fonovisa*, and concludes that Plaintiffs have plausibly alleged the infringement of their musical compositions and sound recordings is a "draw" to Defendant's subscribers.  Taking the allegations as true, Plaintiffs allege that Defendant's subscribers are "motivated" by company advertisements promoting Defendant's "high speed" service that "enables subscribers to ... 'download 8 songs in 3 seconds'"; Defendant's subscribers have used such service to "pirate" Plaintiffs' works, as evidenced by Plaintiffs' identification between 2012 and 2015 of "hundreds of thousands" of instances in which Defendant's subscribers used its service to distribute Plaintiffs' songs illegally; despite notification of its

---

[1]The *Tomelleri* court cites to *Arista Records LLC v. Lime Grp. LLC*, 715 F. Supp. 2d 481 (S.D. N.Y. 2010), which was withdrawn and superceded by *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp.2d 398 (S.D. N.Y. 2011); however, the analysis cited in *Tomelleri* is the same in both opinions.

subscribers' infringement, Defendant did nothing to stop it; once Defendant's subscribers realized that Defendant did not intend to stop or control the infringement, they "purchased more bandwidth" and continued using Defendant's service to infringe Plaintiffs' copyrights; and, the greater the bandwidth used for pirating content, "the more money [Defendant] made." These allegations are sufficient to demonstrate a causal relationship between the infringing activity alleged in this case and any financial benefit the Defendant reaps in this case. *See Perfect 10, Inc.*, 847 F.3d at 673.

Defendant contends that the opinion in *UMG Recordings, Inc. v. Grande Communications Networks, LLC,* No. A-17-CA-365-LY, 2018 WL 1096871, at *10 (W.D. Tex. Feb. 28, 2018), *report and recommendation adopted by* 2018 WL 1905124 (Mar. 28, 2018), demonstrates Plaintiffs' allegations are insufficient to state a plausible direct financial benefit. This Court disagrees. In *Grande*, the court found the allegation that the availability of plaintiff's music acted as a "powerful draw for users of [defendant's] service" was not sufficient and noted, "[t]here are no allegations that [defendant's] actions in failing to adequately police their infringing subscribers is a draw to subscribers to purchase its services, so that they can then use those services to infringe on [plaintiff's] (and others') copyrights." *Id.* Here, the Plaintiffs do, in fact, allege that Defendant's failure to stop or take other action in response to notices of infringement is a draw to current and prospective subscribers to purchase and use Defendant's internet service to "pirate" Plaintiffs' copyrighted works. The Court finds the *UMG Recordings* opinion consistent with its conclusion that Plaintiffs' allegations, taken as true, are sufficient.

Accordingly, the Court respectfully recommends that Judge Jackson deny Defendant's motion to dismiss Plaintiffs' vicarious liability claim based on a failure to state the direct financial benefit element of the claim.

## II.     Right and Ability to Supervise Alleged Infringing Activities

Defendant also seeks dismissal of Plaintiffs' vicarious infringement claim asserting Plaintiffs fail to plausibly allege Defendant "exercises any practical ability to control the online activity of the allegedly infringing subscribers here."  Mot. 14.

Again, the Supreme Court has determined that a claim for vicarious infringement "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement."  *Grokster, Ltd.*, 545 U.S. at 930 n.9; *see also Diversey*, 738 F.3d at 1204 (the "right and ability to supervise" may be found even when a defendant is not aware of the infringing activity).  The parties cite *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) for the proposition that "a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."

The court in *UMG Recordings, Inc. v. Grande Communications Networks, LLC*, which is cited by both parties in this case, also cites *Amazon.com* for the same proposition.  *See* 2018 WL 1096871, at \*10.  Like the Plaintiffs here, UMG Recordings and the other plaintiffs in that case "are a collection of record companies that produce and distribute commercial sound recordings in the United States" and like Defendant here, Grande Communications is "an internet service provider that provides internet access to subscribers in portions of Texas."  *Id.* at \*1.  The court addressed Grande Communications' motion to dismiss the plaintiffs' vicarious infringement claims and, as set forth above, found that plaintiffs failed to allege plausible facts supporting the direct financial benefit element of the claims.  *Id.* at \*10 (allegations "that the existence of music and the BitTorrent protocol is the draw" were insufficient).

13

However, before coming to that conclusion, the *UMG Recordings* court addressed the same arguments Defendant proffers here (*see* Reply 4-5) for dismissal based on the "right and ability to supervise" element:

> Grande asserts that because it cannot block access to the peer-to-peer software used to infringe the copyrights here, it cannot stop or limit the infringing conduct taking place by its subscribers. Additionally, Grande argues that, even if it terminates subscribers, such action will only indirectly affect the infringing conduct, as Internet access is ubiquitous, and the subscribers can simply obtain the service from another ISP. The Court disagrees. Grande can stop or limit the infringing conduct by terminating its subscribers' internet access. *BMG* [*Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*], 149 F. Supp. 3d [634,] 674 [(E.D. Va. 2015), *reversed on other grounds*, 881 F.3d 293 (4th Cir. 2018)]. This is clearly sufficient to state a claim on the first element of vicarious liability.

*Id.* at *10. In fact, in *BMG Rights Management*, the court found that defendant, another internet service provider, had "the contractual right to condition the availability of its internet access to users who do not use that service to violate copyrights. If users listen when Cox exercises that power, infringement stops. If users do not and Cox terminates them, that also stops or at least limits infringement." *BMG Rights Mgmt. (US) LLC*, 149 F. Supp. 3d at 674.[2] The court also determined the defendant had

> the practical ability to stop or limit infringement. There cannot be any serious dispute that internet service is an essential component of the infringing activity alleged by BMG. File-sharing programs are completely dependent on the internet to facilitate the download and upload of files. It is therefore a reasonable inference that the result of an internet service provider exercising its ability to suspend or terminate account holders stops or limits infringement.

*Id.* This Court finds *UMG Recordings* and *BMG Rights Management* instructive as applied to this

---

[2]The Fourth Circuit reversed the jury verdict in this case based on a faulty jury instruction regarding contributory infringement. *BMG Rights Mgmt. (US) LLC*, 881 F.3d at 307. With respect to the vicarious infringement claim, the court did not opine on the trial court's decision on summary judgment (cited here) nor the jury's finding of no liability. *See id.*

14

case and concludes that Plaintiffs plausibly allege the Defendant "has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  Plaintiffs allege that Defendant's own "Terms of Service/Policies" expressly prohibits users from engaging in copyright infringement and reserves to Defendant the right to terminate users' accounts for participating in piracy. Plaintiffs provided Defendant with "hundreds of thousands" of notices of infringement; yet, despite the notices identifying the infringing users and the Defendant's policy, Defendant failed to stop or limit the infringement by suspending or terminating these users' accounts. *See Amazon.com, Inc.*, 508 F.3d at 1173.[3]

Accordingly, this Court respectfully recommends that Judge Jackson deny the Defendant's motion to dismiss Plaintiffs' vicarious infringement claim based on a failure to state the "right and ability to supervise" element of the claim.

### CONCLUSION

In sum, the Court finds that, taking Plaintiffs' allegations as true, Plaintiffs plausibly allege the Defendant profited from direct infringement while declining to exercise a right to stop or limit the infringing activity.  *See Grokster, Ltd.*, 545 U.S. at 930.  Thus, this Court respectfully RECOMMENDS that Judge Jackson **deny** Defendant's Motion to Dismiss Plaintiff's Claim for

---

[3]The Court notes an opinion from this District also citing *Amazon.com* and *Grokster*, and finding the plaintiff failed to state a plausible vicarious infringement claim.  *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 12-cv-02240-PAB, 2013 WL 4052024, at *8 (D. Colo. Aug. 12, 2013).  The *Viesti* court, unlike here, found the plaintiff asserted only conclusory allegations and failed to identify any third party over which the defendant might have the ability to control.  *Id.* ("The factual averments present no evidence to support a plausible inference that Pearson had the right or ability to prevent infringing conduct of unidentified third parties.").

Vicarious Liability [filed May 28, 2019; ECF 38].[4]

Respectfully submitted this 21st day of October, 2019, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[4]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).