## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER BROS. RECORDS INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No.  19-cv-00874-RBJ-MEH |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

### DEFENDANT CHARTER COMMUNICATIONS, INC.'S OBJECTIONS TO MAGISTRATE JUDGE HEGARTY'S OCTOBER 29, 2019 DISCOVERY ORDER

Defendant Charter Communications, Inc., by and through its attorneys Fairfield and Woods, P.C. and Winston & Strawn, LLP, hereby lodges the following objections to the October 29, 2019 Discovery Order by Magistrate Judge Michael E. Hegarty (Dkt. 76) regarding (1) Plaintiffs' financial information relevant to an assessment of the appropriate level of any damages; and (2) documents regarding the Copyright Alert System, an agreement Plaintiffs entered and that was in force during the claims period at issue here that reflected standards Plaintiffs found reasonable for major internet access providers during the relevant time period.[1]

---

[1] While Plaintiffs have agreed to produce the CAS Memorandum of Understanding ("MOU"), Charter also seeks five "Implementation Agreements" that implemented the MOU that Plaintiffs produced in a similar, pending case, *Sony Music Entm't. et. al v. Cox Commc'ns Inc*., Case No. 1:18-cv-950 ("*Cox*"). Magistrate Judge Hegarty's Order rejected Charter's request for CAS-related documents, though the Implementation Agreements were not specifically addressed prior to the issuance of the Order. On November 6, Charter submitted a request to Magistrate Judge Hegarty with a narrowed request specifically for the Implementation Agreements. Plaintiffs obtained permission from Magistrate Judge Hegarty to submit a response to Charter's narrowed request by November 11, and did so. Thus, while Charter is continuing its efforts to resolve this narrowed issue with Magistrate Judge Hegarty's assistance, Charter timely objects to the Order with respect to the CAS information herein to preserve its rights in the event that Magistrate Judge Hegarty does not issue an order with respect to the narrowed issue. Should Magistrate Judge Hegarty grant Charter's narrowed request while this objection remains pending, Charter will promptly inform the Court.

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     SUMMARY OF ARGUMENT .................................................................... 2

III.    FACTUAL BACKGROUND ......................................................................... 4

        A.      Financial Information Relevant to Any Assessment of Damages .......................... 4

        B.      Information Relating to the Copyright Alert System ("CAS")............................. 7

IV.     LEGAL STANDARD.................................................................................... 9

        A.      Discovery Should Be Broadly Construed and Allowed ......................................... 9

        B.      Orders by Magistrate Judges May Be Overruled Where Clearly Erroneous or
                Contrary to Law ........................................................................... 9

V.      LEGAL ARGUMENT .................................................................................. 10

        A.      Charter is Entitled to Meaningful Financial Data for Each Work at Issue ........... 10

                1.      Revenues on Per-Work Basis and Per-Channel Basis, and Physical
                        Downloads, Streaming, and Licensing Data.............................................. 10

                2.      Financial Information Regarding the Valuation of the Asserted Works .. 13

        B.      Charter Should Be Entitled to Documents Concerning the CAS ......................... 16

VI.     CONCLUSION............................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Agrusa*,
   No. 2:15–cv–07270–SVW–RAO, 2016 WL 7665767 (C.D. Cal. July 20,
   2016) ...................................................................................................................................15

*BMG Rights Management et al v. Cox Enterprises, Inc.*,
   1:14-cv-01611-LO-JFA (E.D. Va. 2015) ..............................................................................19

*Britton v. Car Toys, Inc.*,
   No. CIVA 05CV726WYDPAC, 2007 WL 1395290 (D. Colo. May 9, 2007) .........................9

*City & Cty. of San Francisco v. Tutor-Saliba Corp.*,
   218 F.R.D. 219 (N.D. Cal. 2003) ..........................................................................................14

*Cook v. Rockwell Int'l Corp.*,
   147 F.R.D. 237 (D. Colo. 1993) ..............................................................................................9

*Davidson v. Light*,
   79 F.R.D. 137 (D. Colo. 1978) ..............................................................................................19

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
   344 U.S. 228 (1952) ...............................................................................................................10

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998) ............................................................................................................. 12

*A.H. ex rel. Hadjih v. Evenflo Co.*,
   No. 10-CV-02435-MSK-KMT, 2011 WL 3684807 (D. Colo. Aug. 23, 2011) ......................19

*I.A. Westermann Co. v. Dispatch Printing Co.*,
   249 XJ.S. 100 (1919) .............................................................................................................10

*N.A.S. Imp. Corp. v. Chenson Enter., Inc.*,
   968 F.2d 250 (2d Cir. 1992) ..................................................................................................10

*Nunes v. Rushton*,
   No. 214CV00627JNPDBP, 2018 WL 2214593 (D. Utah May 14, 2018) .......................15, 18

*Ocelot Oil Corp. v. Sparrow Indus.*,
   847 F.2d 1458, 1464 (10th Cir. 1996) ....................................................................................9

*Onesource Commercial Prop. Servs., Inc. v. City & Cty. of Denver*,
   No. 10-CV-02273-WJM-KLM, 2011 WL 2632894 (D. Colo. July 6, 2011) .........................12

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ........................................................................................................9

*Reg'l Dist. Council by & through Parker v. Mile High Rodbusters, Inc.*,
    No. 13-CV-00214-REB-KLM, 2019 WL 1856743 (D. Colo. Apr. 24, 2019) ......................11

*Religious Tech. Ctr. v. Netcom On-Line Commc'n. Servs.*,
    923 F. Supp. 1231 (N.D. Cal. 1995) ................................................................................15

*Robison v. Transamerica Ins. Co.*,
    368 F.2d 37 (10th Cir. 1966) ............................................................................................9

*Simpson v. Univ. of Colo.*,
    220 F.R.D. 354 (D. Colo. 2004) ......................................................................................11

*Sony Music Entm't. et. al v. Cox Commc'ns, Inc.*,
    Case No. 1:18-cv-950, 149 F. Supp. 3d 634 (E.D. Va. 2015) ("*Cox*")........................... *passim*

*Van Der Zee v. Greenridge*,
    No. 03 Civ. 8659(RLE), 2006 WL 44020 (S.D.N.Y. 2006) .................................................10

*Waddell & Reed Fin., Inc. v. Torchmark Corp.*,
    222 F.R.D. 450 (D. Kan. 2004)..........................................................................................9

**Statutes**

17 U.S.C. § 504(b)-(c) ............................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b) .....................................................................................................4, 9, 12, 18

Fed. R. Civ. P. 26(b)(1)............................................................................................................9

Fed. R. Civ. P. 72(a) .........................................................................................................9, 16

## I.      INTRODUCTION

Plaintiffs filed this copyright infringement action against Charter Communications, Inc. ("Charter") claiming secondary liability based on allegations that Charter subscribers used Charter's high speed internet service to access the internet and infringe over 11,400 musical works that Plaintiffs claim to own.  Plaintiffs are seeking upwards of a billion dollars in damages in this case; yet they have stonewalled even the most basic categories of discovery.

Prior to Charter filing a motion to compel on core copyright issues, and following extensive meet and confer efforts, the parties participated in a pre-filing teleconference with Magistrate Judge Hegarty on October 29, 2019.  Immediately following the teleconference, and before any motions or other papers were filed, Magistrate Judge Hegarty issued a ruling on the issues raised herein (Dkt. 76) (the "Order").   Charter now objects to two aspects of Magistrate Judge Hegarty's Order.

The Order has effectively foreclosed Charter's ability to conduct a basic investigation into two key discovery issues: (i) the value and alleged damages related to the thousands of works at issue in this case; and (ii) agreements and documents relating to the Copyright Alert System ("CAS"), an inter-industry agreement entered into between major internet service providers ("ISPs") and many of the Plaintiffs in this case that defined standards for responding to notices of copyright infringement sent to ISPs like Charter.  Because Plaintiffs have put at issue the central question of what was an appropriate response by Charter to their notices of alleged infringement, this discovery goes to the heart of the claims and defenses in this action, and is central to Charter's experts' analysis in this case.  As explained below, Magistrate Judge Hegarty's rulings foreclosing Charter's ability to pursue these avenues of discovery in preparing its defense in this case are erroneous and contrary to law.

## II.     SUMMARY OF ARGUMENT

*First*, because copyright damages are assessed on a work-by-work basis, Charter is entitled to meaningful financial information for the works-in-suit for the claims period of March 2013 to May 2016 ("Claims Period").  This includes per-work information about profits, expenses, and revenues, as well as valuations of the works and agreements that set the value for the Plaintiffs' works in the streaming and downloading context.  This information is highly relevant to Plaintiffs' claim of damages, whether Plaintiffs ultimately elect actual or statutory.

Although Magistrate Judge Hegarty agreed that Charter was entitled to at least some financial information as relevant to the issue of damages, he ultimately ordered only that Charter could use documents already produced by Plaintiffs pertaining to overlapping works-in-suit that had been ordered in a similar, pending litigation by the same counsel representing Plaintiffs here to the same counsel representing Charter here.  *See Sony Music Entm't. et. al v. Cox Commc'ns, Inc.*, Case No. 1:18-cv-950, 149 F. Supp. 3d 634 (E.D. Va. 2015) ("*Cox*") (Ranahan Aff. at Ex. 11 at 32:11-13 (requiring Plaintiffs to produce revenue by work and by channel, physical downloads, streaming, and licensing data); and Ex. 12 (granting defendants' motion to compel financial information).)

Magistrate Judge Hegarty declined to order that any new financial information be produced, including regarding the approximately 2,400 new (non-overlapping) works-in-suit, for which Plaintiffs seek the maximum statutory damages award of $150,000 *per work,* though any such award could be as low as $200 per work for innocent infringement or $750 for willful or non-willful if the jury found the evidence presented at trial supported lower damages.  The potential statutory damages that Plaintiffs seek for these new works alone account for statutory damages as high as $360,000,000, and Charter is entitled to discovery regarding the value of these works for which Plaintiffs seek a separate award so that they may inform any jury assessing statutory

damages[2] where on the wide range of available damages would be most just under the circumstances of this case.

Magistrate Judge Hegarty also declined to order any update with respect to the financial information produced in *Cox* to account for the relevant claim period, which in this case is 2013-2016 (the "Claim Period"). The documents produced in *Cox* only cover 2010-2014, which encompasses the claim period in *Cox* plus the two preceding years. (*See* Ranahan Aff. Exs. 11 and 12). As it stands, Charter is only permitted to use information for the works at issue in *Cox* during only part of the relevant Claim Period here (2013-2014), while Charter has been provided no information for any of the works from 2015-2016, which is half of the Claim Period here. Charter is entitled to basic financial information including documents regarding profits and revenues for ***each*** of the works-in-suit and for the entirety of the Claim Period at issue, as well as underlying documents pertinent to Plaintiffs' alleged damages, in which they seek upwards of a billion dollars.

***Second***, Charter seeks core information concerning CAS, an inter-industry agreement signed by Plaintiffs that sets forth what Plaintiffs themselves believed was a reasonable way for ISPs like Charter to respond to allegations of infringement. Magistrate Judge Hegarty declined to order production of any documents regarding CAS despite their relevance to Plaintiffs' allegations that Charter acted "unreasonably" in failing to terminate alleged "repeat infringers,"—a stark contrast to Plaintiffs' own position while negotiating and entering the CAS agreement with other similarly situated ISPs, ***which specifically did not require termination of subscribers***. These agreements have been the subject of multiple depositions in *Cox*, expert analysis and opinion, and will serve to inform the jury about what should and could be the reasonable approach in an

---

[2] Plaintiffs have yet to elect statutory versus actual damages.

otherwise largely unchartered area of imposing secondary copyright liability for merely providing the pipeline to high speed internet access. CAS discovery is not only relevant to liability considerations but also to credibility and alleged willfulness that may further serve the jury in deciding what is just in terms of any damages.

Magistrate Judge Hegarty's Order regarding these two issues prevents Charter from obtaining key discovery critical to its defense and that should be granted under the liberal standards of Fed. R. Civ. P. 26(b). Accordingly, Charter respectfully requests that the Court sustain Charter's Objections and reverse Magistrate Judge Hegarty's Order of October 29, 2019 with respect to financial information and CAS information.

## III.   FACTUAL BACKGROUND

Charter served its first document requests on June 25, 2019 and Plaintiffs served their responses on July 25, 2019. (Ranahan Aff., Exs. 1-4.) On August 27, 2019, Charter's counsel sent Plaintiffs' counsel a letter regarding deficiencies in the responses, and the parties met and conferred in an unsuccessful attempt to narrow the issues. (Ranahan Aff. at Ex. 5.) Plaintiffs stood on their objections, prompting Charter to seek the Court's assistance.

The parties held a pre-motion conference with Magistrate Judge Hegarty on October 29, 2019. (Ranahan Aff. ¶¶ 8-9.) During the teleconference, Magistrate Judge Hegarty heard and issued an Order in response to Charter's arguments on a number of discovery issues, including the two issues that give rise to the present Objections.

### A.   Financial Information Relevant to Any Assessment of Damages

Charter's Request for Production Nos. 9, 12, 14, 16, 17, 18, 19, 21, 26, and 59, seek financial information relevant to Plaintiffs' claim for damages. Specifically, Charter seeks information regarding Plaintiffs' profits, revenues, and expenses on a per-work basis, as well as underlying agreements relevant to those calculations. Plaintiffs' objections responses limited the

scope of their production to "documents . . . sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the [period of] 2010 through 2016," and excluded financial data on a per-work basis, as well as revenues, expenses, and profits for physical sales, streaming sales, and licensing.  (Ranahan Aff. Ex. 3 at 10; Ranahan Aff. Ex. 4 at 17).  Magistrate Judge Hegarty did not review Charter's requests or Plaintiffs' responses in rendering his Order, which stated the following: "Relevant material from the related Cox lawsuit can be used in this case as related to the financial documents in question, Defendant will determine what is relevant and Plaintiffs will comment."  (Ranahan Aff. Ex 7).

The *Cox* court held much of this information to be relevant and discoverable, and required these same Plaintiffs to produce key financial information, including revenues by work and by channel for physical, digital permanent downloads, streaming, and licensing revenue for the period of 2011-2014, the entirety of the claim period in the *Cox* litigation and years before. (Ranahan Aff. Ex. 11 at 26:25-27:2, 32:6-13) (requiring Plaintiffs to produce revenue by work and by channel, physical downloads, streaming, and licensing data); (Ranahan Aff. Ex 12) (granting defendants' motion to compel financial information).

While there is significant overlap in the number of works at issue in the *Cox* litigation and those asserted here, there is not complete parity. A comparison shows that 79% of the works at issue are the same across both cases.  (Ranahan Aff. ¶ 11.)  Additionally, the claims periods differ between the cases; here it spans March 1, 2013 to May 17, 2016, while in *Cox* it runs only from February 2013 to November 2014.  *See Cox*, Dkt. 1 at ¶ 10 (E.D. Va. July 31, 2018).  The court in *Cox* ordered financial discovery for the preceding three years before this Claims Period.  (*See* Ranahan Aff. Ex. 11 at 26:25-27:2, 32:6-13).   Charter has proposed a discovery period here

beginning one year prior to the Claims Period (two years less than in *Cox*), dating March 1, 2012 to May 17, 2016.

During the teleconference, Magistrate Judge Hegarty was initially reluctant to require Plaintiffs to produce any financial records beyond what they agreed to produce in their Objections and Responses, based on Plaintiffs' counsel's representations that Plaintiffs do not maintain financial information on a per-work basis. (Ranahan Aff. Ex. 6 at 7:5-12; 12:8-22; 16:18-20.) (N. Sahni: "And here, they are asking for revenue, profits, expenses and much of which, as I mentioned, we don't maintain in that form.")   Magistrate Judge Hegarty initially accepted the representation of Plaintiffs' counsel and suggested Charter first take depositions to determine what information was available and revisit the issue with the Magistrate Judge Hegarty as needed.   (*Id.*) Charter's counsel informed Magistrate Judge Hegarty that Plaintiffs had, in fact, already produced much of this per-work financial information in the *Cox* litigation, contrary to Plaintiffs' representations.   (Ranahan Aff. Ex. 6 at 5:4-8; 6:2-6.)   Plaintiffs acknowledged this, but shifted then to complaining about the burden of having gathered such per-work financial information. (Ranahan Aff. Ex. 6 at 7:13-16.)

Magistrate Judge Hegarty agreed financial information was relevant and discoverable, noting he could "see somebody standing up in front of a jury and saying . . . plaintiffs are asking for $500 million in this case when – for these works when . . . their total profit for this time period was barely twice that for everything they do," and agreed to allow Charter to use the financial information produced in the *Cox* litigation with respect to the same works-in-suit.   (Ranahan Aff. Ex. 6 at 21:17-24:25.)

Magistrate Judge Hegarty, however, declined to order Plaintiffs to produce any additional information on approximately 2,400 new works (Ranahan Aff. Ex. 6 at 37:24-25), and declined to

require Plaintiffs to produce any financial information to cover the remainder of the Claims Period. (Ranahan Aff. Ex. 6 at 17:25; 18:1-5; 22:9-12.)  Even though Plaintiffs are seeking a separate award for each of the works in suit and any damages must be assessed per work, Magistrate Judge Hegarty stated he had reached this conclusion because he doubted Charter needed financial information for "100 percent" of the works at issue "in order to make the point that [it] need[ed] to make in front of a jury" and did not "want to create undue expense[.]" (Ranahan Aff. Ex. 6 at 21:17-19.)  But Plaintiffs had failed to articulate any expense at all.  *Id.*  And Charter does not have a meaningful chance to evaluate the financial information and allow its expert to analyze the value of each work without any discovery about over 2000 of the works at issue.

Magistrate Judge Hegarty also did not separately address Charter's request for agreements and other documents relating to the valuation of the works-in-suit, and did not require any production, but instead ruled only that Charter's counsel could use what Plaintiffs had already produced in *Cox* with respect to the overlapping works.

## B. Information Relating to the Copyright Alert System ("CAS")

With respect to the second issue, Charter propounded discovery requests, including Interrogatory No. 5 and RFP Nos. 51, 68-75, seeking documents regarding the CAS, the CAS MOU, and its implementation.  These requests sought, among other things, documents concerning the CAS negotiations, the CAS MOU, the CAS Implementation Agreements and related documents, documents concerning Plaintiffs' status as signatories of the CAS MOU, evaluations of technological systems used as part of the CAS, and notifications sent pursuant to the CAS.  The

CAS was a highly publicized inter-industry agreement entered into between five major U.S. ISPs[3] and major content owners, including many Plaintiffs.

The CAS and the CAS MOU specifically address the ways in which ISPs should appropriately handle notices of alleged copyright infringement.  In particular, the CAS MOU, includes provisions—agreed to by multiple ISPs *and Plaintiffs*—addressing whether and when an ISP has the obligation to terminate the accounts of subscribers targeted in infringement notices. Following the execution of the CAS MOU, the signatories entered into a handful of separate "Implementation Agreements" that set forth how each ISP would implement the CAS MOU.  In particular, the Implementation Agreements set forth terms regarding whether the copyright alert programs adopted by various ISPs (comparable to Charter's own internal system) were reasonable, whether ISPs could reasonably adopt limitations on the number of notices they would accept from content owners, and whether ISPs were required to terminate alleged "repeat infringers."  Plaintiffs are also in possession of these Implementation Agreements, as they produced them in the *Cox* litigation.

The issues covered by the MOU and the five Implementation Agreements are directly relevant to any underlying contributory liability in this case, including Plaintiffs' allegations that Charter should be held liable for failing to terminate alleged infringers upon receiving notices of alleged copyright infringement.  Charter was not a signatory to the CAS, and does not have access to many of the relevant documents and communications.  Magistrate Judge Hegarty briefly heard the parties on this issue and declined to order production of any CAS-related documents.  (Ranahan Aff. Ex. 6 at 51:6-11.)

---

[3] These ISPs include Comcast, TimeWarner, CableVision, AT&T, and Verizon.  *See* Memorandum of Understanding (7/6/2011), Section 1, Parties to the Agreement, https://info.publicintelligence.net/CCI-MOU.pdf.

## IV.   LEGAL STANDARD

### A.   Discovery Should Be Broadly Construed and Allowed

Parties may seek discovery on "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Ultimately, "[t]he administration of the rule[ ] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit." *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).  The Supreme Court has construed relevancy broadly, noting that discovery may "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### B.   Orders by Magistrate Judges May Be Overruled Where Clearly Erroneous or Contrary to Law

A non-dispositive order by a magistrate judge may be reversed by the district court if, as here, the findings are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).  An order meets this threshold "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Cook v. Rockwell Int'l Corp.*, 147 F.R.D. 237, 242 (D. Colo. 1993); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1996). Courts in this Circuit have reversed discovery rulings on these grounds. *See, e.g., Britton v. Car Toys, Inc.*, No. CIVA 05CV726WYDPAC, 2007 WL 1395290, at *2 (D. Colo. May 9, 2007) (overturning magistrate judge's decision to deny discovery where ruling was based upon a legal theories other than the Rule 26(b) standard); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (reversing magistrate judge's ruling on motion to compel where opposing counsel had not established undue burden).

## V.      LEGAL ARGUMENT

### A.      Charter is Entitled to Meaningful Financial Data for Each Work at Issue

Magistrate Judge Hegarty's ruling is clearly erroneous with respect to the financial information in two regards.  First, Magistrate Judge Hegarty recognized the potential relevance of per-work financial data regarding the works in suit, but declined to require Plaintiffs to produce data for all asserted works and for the entirety of the Claim Period.  Second, Magistrate Judge Hegarty did not order production of other relevant financial information, including licenses and agreements demonstrating such value.

#### 1.      Revenues on Per-Work Basis and Per-Channel Basis, and Physical Downloads, Streaming, and Licensing Data

As an initial matter, Magistrate Judge Hegarty's Order contravenes established law that financial information and documents on a per-work basis are directly relevant to a plaintiff's claim for damages.  Under the Copyright Act, 17 U.S.C. § 504(b)-(c), the ranges for available damages must be assessed per work, which, if a plaintiff elects statutory damages, can be as low as $200 or $750 per work, to as high as $30,000 or $150,000 per work. And, courts typically permit discovery into damages regardless of whether the plaintiff elects actual or statutory damages because the jury may consider factors, including the actual value of the works and any actual harm, to inform what is "just" to award on the wide range of available statutory damages.  *F.W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228, 232 (1952) (quoting *I.A. Westermann Co. v. Dispatch Printing Co*., 249 XJ.S. 100, 106 (1919)); *see also, N.A.S. Imp. Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992) (finding that the actual value of the copyright is relevant to the jury's determination of statutory damages); *Van Der Zee v. Greenridge*, No. 03 Civ. 8659(RLE), 2006 WL 44020, at *2 (S.D.N.Y. 2006) (statutory damages must bear some relation to actual damages).

The *Cox* court similarly found financial information on a per-work basis to be relevant, and ordered its production ***for each of the works-in-suit*** and for the entirety of the Claims Period, plus three years.  (Ranahan Aff. at Ex. 11 at 26:25-27:2, 32:6-13 (requiring Plaintiffs to produce revenue by work and by channel, physical downloads, streaming, and licensing data); Ranahan Aff. Ex. 12 (granting Charter's motion to compel financial information)).  Significantly, none of these cases, including *Cox*, take the limited approach adopted by Magistrate Judge Hegarty here, and each require production of information relevant to ***all*** asserted works.

During the teleconference, Plaintiffs made vague and uncorroborated arguments that producing financial information for all asserted works would be "burdensome."  In response, Magistrate Judge Hegarty ruled that it would be sufficient to make available in this litigation to Charter what Plaintiffs have already produced to Charter's counsel in the *Cox* litigation, relieving Plaintiffs from being required to provide any additional or similar discovery into the newly named works or for the full period at issue.  (Ranahan Aff. Ex. 6 at 6:18-19.)  In reaching this conclusion, Magistrate Judge Hegarty accepted Plaintiffs' representations as true without requiring Plaintiffs to substantiate the nature of this alleged "burden" or whether there would be any time or cost whatsoever associated with gathering such information.  (Ranahan Aff. Ex. 6 at 12:8-12.)

However, "an objecting party cannot sustain [its] burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." (*Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004); *see also Reg'l Dist. Council by & through Parker v. Mile High Rodbusters, Inc.*, No. 13-CV-00214-REB-KLM, 2019 WL 1856743, at *4 (D. Colo. Apr. 24, 2019) (overruling burden objection where party did not provide any evidence of burden, such as an estimate of the amount of time required to fulfill request or the volume of responsive materials); *Onesource Commercial Prop. Servs., Inc. v. City & Cty. of Denver*, No. 10-CV-02273-WJM-

KLM, 2011 WL 2632894, at *2 (D. Colo. July 6, 2011) (A party's burden to demonstrate that production would be unduly burdensome "can only be met by providing sufficient details or a compelling showing of undue burden to obviate the overwhelming preference for requiring that relevant discovery materials be exchanged.") (internal quotations omitted)).

Indeed, in *Cox*, the court **rejected** arguments regarding proportionality and burden as to the very same documents Charter now seeks in requiring Plaintiffs to produce revenue by work and by channel, physical downloads, streaming, and licensing data. *Sony Music Entmt. et al.*, Dkt. 89; Hr'g Tr. Jan. 25, 2019 at 26:25-27:2, 32:6-13. The *Cox* court ordered this production as to **all** works-in-suit and for the entirety of the Claims Period there. The burden here is even less than it was in *Cox*, because Plaintiffs need only compile this information for the **remaining** non-overlapping works-in-suit, a total of 2,430 works. (*E.g.*, Ranahan Aff. ¶ 8) (representing that a comparison of the works-in-suit in Exhibits A and B of Complaint with works-in-suit asserted in *Cox* showed an identity of over 79%); (*see also* Ranahan Aff. Ex. 6 at 42:13-4) (Plaintiffs' Counsel: "Ms. Ranahan's firm has examined the 80% overlap at length in the *Cox* case.").)

Furthermore, Magistrate Judge Hegarty noted that he reached his decision based on statistical significance, an analysis that is improper in light of the low threshold of Fed. R. Civ. P. 26(b): "foremost is 80% [of the asserted works, which were also asserted in *Cox*] is a very statistically significant sample if you've ever studied statistics." (Ranahan Aff. Ex. 6 at 21:14-15.) But an assessment to the jury about the level of appropriate damages in this case should not be based on statistics, but should be based on actual per work evidence. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 353 (1998). Magistrate Judge Hegarty's Order would fail to provide Charter with data required to analyze damages for thousands of the individual works at issue here and for a significant portion of the Claim Period at issue, which would impede Charter's ability to

meaningfully investigate and defend against the upwards of a claimed billion dollars of damages at issue.  Plaintiffs should not be absolved from conducting discovery on the value of their works based on an abstract burden when the proportional relevance is clear.

### 2.  Financial Information Regarding the Valuation of the Asserted Works

In addition to the revenues per work as requested above, Plaintiffs maintain additional responsive financial data beyond "total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016."  (Ranahan Aff. Exs. 3 and 4).  Indeed, there are multiple ways that record labels and music publishers like Plaintiffs may have earned revenues in connection with the works-in-suit, including through physical sales, digital downloads, interactive streaming, compulsory digital public performance, master use and synchronization licenses (in films, television and/or commercials), distribution, licensing fees, mechanical royalties and performance royalties.

The value of the musical works to those arrangements would be expected to be reflected through documents such as internal accounting documents, licenses and other agreements with third parties, royalty statements, internal analysis regarding profitability (or lack thereof) of various works or catalogues, and/or valuations.  Charter seeks production of documents sufficient to demonstrate revenue from any assignments, licenses, and/or transfer of rights for the works-in-suit, including all licensing agreements with ISPs entered during or governing the works-in-suit during the Claims Period.  In particular, Charter seeks agreements that relate to the streaming and downloading costs Plaintiffs have accepted through agreements with YouTube, Apple Music and iTunes, Amazon Unlimited, Prime Music, Pandora, Google Play, Vevo, Dailymotion, Qello, and/or Vimeo.  Digital streaming agreements for entities like YouTube, Apple Music and iTunes, Amazon Unlimited, Prime Music, Pandora, Google Play, Vevo, Dailymotion, Qello, and/or

Vimeo, etc. may provide key context for the comparative value of the works.  Such licenses are typically umbrella agreements for a copyright holder's full catalog, and provide tiered pricing based on the value of the work.[4] Production of such materials should not be burdensome for Plaintiffs given that these documents are kept in the normal course of business, and the volume of such materials should be relatively low given that they apply to the bulk of Plaintiffs' works (as opposed to requiring separate agreements for each work).

Charter additionally seeks production of any valuations or analyses of the value of the works-in-suit during the Claims Period.  Charter and its experts require these documents to fully analyze assess the value of the works, which is relevant to assess any harm (or lack thereof) Plaintiffs are alleged to have suffered as a result of the alleged infringement.  Plaintiffs must also provide any assessment of damages in light of the information currently available in sufficient detail so as to enable Charter to understand the contours of its potential exposure and make informed decisions as to settlement and discovery. *City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).

Plaintiffs apparently agree with Charter that the value of works at issue is directly relevant, because they themselves have stated in their initial disclosures that a "detailed computation of damages is premature…because a significant amount of information bearing on…damages—such as…the ***value of Plaintiffs' recordings and musical compositions at issue***…will otherwise be developed during the discovery process." (Ranahan Aff. Ex 9; *see also*, Ranahan Aff. Ex. 6 at 17:25; 18:1-5; 22:9-12).

---

[4] If indeed Plaintiffs' agreements reflected such tiered pricing, this information will no doubt assist a jury in any ultimate determination on damages should Charter be found liable. Jurors will be able to understand the relative value of works at issue against other works at issue as valued by Plaintiffs themselves, and potentially set any damages on that basis.

Beyond the value of the works, these documents represent necessary discovery for Charter and its expert to contextualize the revenues generated by the works against any purported loss from the alleged infringement.  Documents showing revenue sources, including streaming and digital download revenue, are critical to Charter's ability to calculate any actual damages attributable to the alleged infringement, and therefore the appropriate level of statutory damages. *See Nunes v. Rushton*, No. 214CV00627JNPDBP, 2018 WL 2214593, at *1–2 (D. Utah May 14, 2018) (noting that a jury may consider "a number of factors" including "the amount of any actual damages to the copyright holder. . .").

In addition to the *Cox* court, many other courts have found similar requests by defendants to be relevant and proportional, and have specifically compelled documents consisting of licensing agreements and other documents relating to value of the works at issue and/or actual damages, including profits and revenues.  *Adams v. Agrusa,* No. 2:15–cv–07270–SVW–RAO, 2016 WL 7665767, at *3 (C.D. Cal. July 20, 2016); *Religious Tech. Ctr. v. Netcom On-Line Commc'n. Servs.*, 923 F. Supp. 1231, 1241 (N.D. Cal. 1995); s*ee also* 3/29/19 *BMG v. Global Eagle Order* (Ranahan Aff., Ex. 10) (granting motion to compel the plaintiff to produce, in a mass copyright case like this one, licensing agreements, revenue information and value information relating to the work-in-suit).

For at least the above reasons, Charter respectfully requests the Court sustain Charter's Objections to the October 29, 2019 Order as to the financial information and order Plaintiffs to produce the requested data and documents.

## B.      Charter Should Be Entitled to Documents Concerning the CAS[5]

The CAS is an inter-industry agreement entered into between major content owners including many of the Plaintiffs in this action and five major ISPs and reflects what Plaintiffs themselves found to be an appropriate response to notices of alleged copyright infringement, by ISPs.  Plaintiffs have agreed only to produce the CAS MOU, which is publically available, and Magistrate Judge Hegarty refused to order production of any documents relating to CAS.  Ranahan Aff. Ex. 6 at 51:6-11.)

The CAS MOU is a general agreement implemented through five separate so-called "Implementation Agreements" entered into by content owners, including many Plaintiffs here, and each individual ISP.[6]  These Implementation Agreements set forth terms regarding the copyright alert programs adopted by various ISPs (comparable to Charter's own internal system), whether ISPs could reasonably adopt limitations on the number of notices they would accept from content owners, and whether ISPs were required to terminate alleged "repeat infringers." The *Cox* court found these five Implementation Agreements relevant and proportional, and ordered them to be produced.  (*See* Ranahan Aff. Ex. 11 at 61:20-62:9); (Ranahan Aff. Ex 12) (granting defendants' motion to compel information related to CAS).   These agreements have been the subject of multiple depositions in *Cox*, expert analysis and opinion, and will serve to inform the jury about a

---

[5] As mentioned in footnote 1, Charter has presented to Magistrate Judge Hegarty a narrowed request to compel just the five CAS Implementation Agreements, which Charter's counsel already have from the *Cox* litigation, for resolution.  Charter objects to Magistrate Judge Hegarty's Order to preserve its rights with respect to Rule 72(a), though this issue may be moot if Magistrate Judge Hegarty issues a new order regarding the CAS Implementation Agreements.  Charter will update the Court by withdrawing this issue if resolved in the interim by Magistrate Judge Hegarty.

[6] In their November 11, 2019 letter response to Charter's Letter to Magistrate Judge Hegarty on this issue, Plaintiffs erroneously argue that Charter divulged highly confidential information. The existence of the implementation agreements and other information regarding CAS is public, referenced both in the memorandum of understanding itself and the public hearing transcript in the *Cox* litigation. (See https://info.publicintelligence.net/CCI-MOU.pdf; *see, e.g.*, Ranahan Aff. Ex. 11 at 62:2-4)

reasonable approach in responding to notices of alleged copyright infringement, in an otherwise largely unchartered area.

Charter seeks an order that the Implementation Agreements be made available here. Charter seeks an order that the Implementation Agreements be made available here. Charter also seeks, in response to RFP Nos. 51, 68-75, communications with ISPs during the negotiation of the CAS or CAS MOU, particularly those that discuss whether the CAS should require termination for alleged repeat infringers (and/or any other expectation for ISPs' response to notices of alleged infringement); reviews and assessments prepared or reviewed in connection with any technology system used in the CAS; and notifications sent pursuant to the CAS, CAS MOU, or Implementation Agreement, during the relevant Claim Period.

These documents are directly relevant to Plaintiffs' allegations that Charter—in providing high speed internet access to the general public—failed to take reasonable steps to address alleged copyright infringement through its subscribers' accounts. Indeed, the Complaint is replete with assertions that Charter's failure to terminate its subscribers after receiving notices of infringement was "unreasonable" and constituted Charter's desire to turn a "blind eye" to alleged infringement. (*E.g.*, Complaint at ¶¶ 3, 4, 8, 9, 74, 81, 83, 86, 100.) Plaintiffs have repeatedly alleged that Charter "became aware of particular customers engaging in specific, repeated acts of infringement," yet "failed to terminate or otherwise take meaningful action." (Compl. at ¶¶ 2, 3 (emphases removed); *see also*, Ranahan Aff. Ex. 6 at 48:15-18, wherein Plaintiffs' counsel articulated the central issue as "Did [Charter] fail to meet its own legal obligation by accepting thousands and thousands and hundreds of thousands of the notices and doing nothing to curb infringement on its network?").)

The documents and information related to CAS will demonstrate that Plaintiffs did ***not*** consider termination to be necessary while negotiating and creating the *de facto* industry standard

with five other of the largest ISPs in the U.S.  The trier of fact in this case should be allowed to

consider this when deciding whether Charter acted reasonably, and whether liability should be

imposed in connection with how Charter responded to infringement notices, particularly because

it would inform the jury of what could be a reasonable approach in an otherwise largely uncharted

area of imposing secondary copyright liability for merely providing high speed internet access.

Fed. R. Civ. P. 26(b).

During the October 29 conference with Magistrate Judge Hegarty, Plaintiffs articulated

that one basis for refusing to produce documents relating to the CAS was the alleged burden

associated with searching for and/or reviewing various documents. (Ranahan Aff. Ex. 6 at 48:25-

49:1 ("[Plaintiffs' Counsel]: We are talking about eight years, and it's a real burden.")  Plaintiffs

failed to provide additional details beyond this, including whether they had attempted to run any

search terms, and if so, which ones, how many hits resulted, and what the time or monetary cost

would be in preparing any responsive documents for production, or in the case of the

Implementation Agreements, simply making those documents available again to the same counsel

as in *Cox*.

After hearing only brief arguments on the CAS and related documents, Magistrate Judge

Hegarty refused to compel any production at all by Plaintiffs, noting that what Charter believed to

be industry standard was within the bounds of Charter's own control. (Ranahan Aff. Ex. 6 at 51:6-

11.) This finding is clearly erroneous given the clear relevance and unidentified burden.[7]

---

[7] Furthermore, in the event of a finding of liability, this state of mind evidence is critical to the
Court's assessment of willfulness, alleged by Plaintiffs here, and in deciding an appropriate level
of statutory damages. *See, e.g. Nunes v. Rushton*, No. 214CV00627JNPDBP, 2018 WL 2214593,
at *1–2 (D. Utah May 14, 2018) (noting that a jury may consider "a number of factors" including
"the conduct and attitude of the *parties* in relation to the infringement") (emphasis added).

In response to the arguments contained herein and raised in Charter's November 7, 2019 letter, Plaintiffs have argued that the Court should not permit discovery into CAS because the court in *BMG Rights Management et al v. Cox Enterprises, Inc.*, 1:14-cv-01611-LO-JFA (E.D. Va. 2015) excluded such information on a motion *in limine,* and another *in limine* motion into CAS is pending in the *Sony Music Entertainment et al. v. Cox* case.  But critically, neither case foreclosed parties from pursuing *discovery* about CAS and developing an appropriate record to allow the courts to later decide about admissibility at trial.  This approach contravenes longstanding precedent in this district holding that what is discoverable is much broader than what may ultimately enter the record. *See A.H. ex rel. Hadjih v. Evenflo Co.*, No. 10-CV-02435-MSK-KMT, 2011 WL 3684807, at *3 (D. Colo. Aug. 23, 2011) ("Relevancy in the discovery context is broader than admissibility of evidence at trial."); *Davidson v. Light*, 79 F.R.D. 137, 140 (D. Colo. 1978) ("[A]dmissibility is not a criterion of discovery so long as the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").

Furthermore, even if the Court *were* to consider the admissibility of these materials in reaching its determination on Charter's motion, this *Cox* ruling is distinguishable from the present case, as Plaintiffs, by and through their agent Recording Industry Association of America Inc., are signatories to the CAS; BMG is not.  *See* Parties to the Agreement, https://info.publicintelligence.net/CCI-MOU.pdf.  Plaintiffs' entire theory of this case is that Charter's response to copyright infringement was somehow unreasonable because it allegedly failed to terminate customers.  *See, e.g.* Compl. ¶¶ 90-91.  However, CAS does not require terminations.  *See* https://info.publicintelligence.net/CCI-MOU.pdf.  Therefore, Charter should be able to provide evidence to the jury about the positions Plaintiffs took in CAS with respect to copyright liability for major internet providers.

Accordingly, the Court should sustain Charter's objections to the October 29, 2019 Order and order Plaintiffs to produce, in addition to the Memorandum of Understanding, the five CAS Implementation Agreements to which Plaintiffs are party and which were already produced in *Cox*; the reviews and analyses concerning the technology or system used in connection with CAS; all communications discussing the termination requirement for repeat infringers; all communications regarding the expectations regarding responding to notices of infringement under CAS; and documents constituting a representative sample of notices sent pursuant to CAS during the Claims Period.

## VI.    CONCLUSION

For the foregoing reasons, Charter respectfully requests that the Court sustain Charter's objections, and order Plaintiffs to provide (i) meaningful financial documents including per-work information about profits, expenses, and revenues, as well as any valuations of the works and umbrella agreements that set the value for the Plaintiffs' works in the streaming and downloading context for the entire Claims Period; and (ii) the CAS Implementation Agreements and reviews and/or analyses of any technology system used in CAS, and communications discussing the requirement that ISPs terminate alleged "repeat infringers," and appropriate responses to notices of alleged copyright infringement.

WHEREFORE Charter prays that this Court order production of the discovery described herein, and grant it such other and further relief as the Court deems just and proper.

Respectfully submitted this 12th day of November, 2019.

By:  *s/ Erin R. Ranahan*
Erin R. Ranahan
Shilpa A. Coorg
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90071

(213) 615-1700 (telephone)
(213) 615-1750 (facsimile)
Email: eranahan@winston.com
Email: scoorg@winston.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166-4193
Phone: 212.294.6700
Fax: 212.294.4700
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Jennifer A. Golinveaux
Winston & Strawn LLP
101 California Street
San Francisco, California 94111
Phone: 415.591.1000
Fax: 415.591.1400
E-mail: jgolinveaux@winston.com

Craig D. Joyce
John M. Tanner
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
Phone: 303.830.2400
Fax: 303.830.1033
E-mail: cjoyce@fwlaw.com
E-mail: jtanner@fwlaw.com

*Counsel for Defendant*
*Charter Communications, Inc.*