# EXHIBIT 11

Case 1:18-cv-00950-LO-JFA   Document 93   Filed 02/01/19   Page 26 of 87 PageID# 2087

26

1  Honor, but --

2  THE COURT:  No, I mean --

3  MR. OPPENHEIM:  -- they have -- so, Your Honor, there

4  are statements by each one of the plaintiff groups in this case

5  describing that providing this revenue data would be

6  burdensome.  It would require an enormous amount of pulling of

7  information.  It is described as to each plaintiff group.  And

8  that burden needs to be measured as against the value of it.

9  Your Honor, to be clear, we're not saying that the

10  data doesn't exist, but it doesn't exist in a single system

11  where it's just a computer-generated printout.  If that were

12  the case, then we would just simply be arguing relevance.

13  But it would require an enormous amount of effort and

14  time and money to extract all of this information for -- for a

15  purpose that the defendants haven't explained.

16  THE COURT:  Well, I think they have explained the

17  purpose for it.  I don't think -- and again, I'm focusing on a

18  very limited aspect of what was requested in the various

19  document requests, 27, 28, 29, 36, 41, 43, and 44, and

20  interrogatories 2 and 3.

21  You know, I think under the circumstances -- and, you

22  know, I -- you know, there is no reasonable argument that

23  revenues do come into play even when you have statutory

24  damages.  So that puts it in the realm of we don't just get to

25  wash our hands of, you know, profit and loss information and

Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626

27

1  revenues and lost revenues and things like that, just because
2  we have statutory damages.
3           And I understand that getting revenues doesn't
4  translate directly into it, but it gives one a sense of how one
5  could calculate on an industry basis what one could expect a
6  general range of profit and loss to be based on revenues.
7           MR. OPPENHEIM: So, Your Honor, what's interesting is
8  that the defendants pointed to the BMG case and what happened
9  in that case. We went back and looked. And without seeing
10 exactly what data was produced, we do know what their expert
11 said and did.
12          And all he did -- he didn't actually point to the
13 revenues, lost revenue per track. What he did is he did an
14 analysis to determine the proportion of revenue from digital
15 downloads versus streaming. So he took -- he got all of this
16 massive historical data and then he came up with just a simple
17 percentages.
18          That is, frankly, if that's all the expert wants,
19 that's publicly available information. You don't need to ask
20 for historical revenue data to figure out the proportion of
21 streaming to downloads. IFPI issues international reports on
22 those kinds of statistics, and their expert, I am sure, has
23 them or can easily find them.
24          So they argued for it, ultimately agreed, BMG agreed
25 to provide all that historical data in light of the motion, but

32

1 work. I think that a time period from 2011 through 2014 of
2 providing revenue by work is appropriate. And I think under
3 the circumstances of doing it, I'm going to at this point in
4 time, going to go ahead and do it by channel, including
5 physical sales, downloads, streaming, and licensing.
6          I mean, I think, you know, that's certainly
7 information that is relevant. Whether it is highly relevant, I
8 think arguably probably doesn't meet the highly relevant
9 component, but I do think it's relevant. And I am going to
10 require them to produce that information.
11          So it's going to be from 2011 through 2014, revenue
12 by work by channel, including those four channels, physical,
13 downloads, streaming, and licensing. Okay? Thank you.
14          MR. OPPENHEIM: May I ask a question, Your Honor?
15          THE COURT: Okay.
16          MR. OPPENHEIM: I guess I don't understand why the
17 information from 2011 and 2012 would be required.
18          Cox isn't required to provide termination information
19 for those years, but we have to provide revenue information for
20 those years? Clearly to the extent they are trying to show
21 actual damages, that revenue information wouldn't be relevant.
22          THE COURT: Well, it shows trends, so --
23          MR. OPPENHEIM: But similarly with respect to the AUP
24 terminations, we asked for it for purposes of showing trends
25 and changes and what their behavior --

61

```
 1   is very simple.  It's just the master agreement, the individual
 2   agreements, and any correspondence that relates to it.  And
 3   that's what we said in the meet and confer.  That's what we
 4   want.  It can't be that many documents.
 5              We don't want the whole history of every phone call
 6   and every e-mail.  What we want is what ultimately happened
 7   because in their complaint, as I said before --
 8              THE COURT:  All right.
 9              MR. BUCHANAN:  -- they constantly say, we're
10   arbitrary, unreasonable in the way we handled complaints and
11   notices.
12              So it is pretty narrow, and we narrowed it in our
13   reply to try to capture and boil down what we thought was
14   ultimately relevant.
15              Thank you, Your Honor.
16              THE COURT:  All right.  Well, I think many of the
17   document requests that were served relating to this are
18   certainly overbroad, unduly burdensome, and I wouldn't require
19   additional responses.
20              The ones that do have some more, I would say,
21   reasonable basis for consideration or narrowing are 167 and 168
22   and 169.  Taking those ones into consideration, I am going to
23   require that the plaintiffs produce a copy of the memorandum of
24   understanding concerning CAS, which I assume is this July 6,
25   2011 memorandum of understanding, their -- if it's in their
```

62

```
 1   possession, custody, or control.
 2             Any implementation agreements that they may have had
 3   with CAS.  So if the individual plaintiffs had any other
 4   implementation agreements with CAS, they should be provided.
 5             And documents that would be sufficient to show.  And
 6   that is not all documents relating to, but documents sufficient
 7   to show whether they were a signatory or member of this CAS
 8   organization from 2013 and 2014, at any time during that time
 9   period.
10             Yes, sir.
11             MR. OPPENHEIM:  Your Honor, we -- they already have
12   the memorandum of understanding, we provided it.
13             But with respect to the last point you made, whether
14   they were a participant, you are referring to the plaintiff
15   parties, not the defendant -- I'm just trying to understand.
16             THE COURT:  No, I know the defendant wasn't a party
17   to it.  And there are multiple plaintiffs in the case.  So we
18   need -- each plaintiff needs to get on the record as to whether
19   they were or weren't part of this.  Okay.
20             MR. OPPENHEIM:  Understood, Your Honor, we will
21   provide that in the form of an interrogatory type affirmation,
22   be all right, Your Honor?
23             THE COURT:  I think so.  The documents, obviously,
24   you need to -- the implementation agreements and the memorandum
25   of understanding, if there are any implementations.
```