IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

**WARNER RECORDS INC. et al.,**

    Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

    Defendant.

---

**DECLARATION OF MATTHEW FLOTT IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT CHARTER COMMUNICATIONS, INC.'S OBJECTIONS TO MAGISTRATE JUDGE HEGARTY'S OCTOBER 29, 2019 DISCOVERY ORDER**

---

I, Matthew Flott, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently employed as Executive Vice President and Chief Financial Officer, Recorded Music for Warner Music Group ("WMG"). I have held that position or a similar position at all times relevant to this declaration. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at WMG. If called upon and sworn as a witness, I could and would testify competently as to the matters set forth herein.

2. Plaintiffs Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., Warner Records Inc., and WEA International Inc. (collectively, "Warner Music") are individual companies within WMG.

1

3. I am generally familiar with Warner Music's practices and procedures for developing, exploiting, and distributing sound recordings and the costs and revenues associated therewith. I am also generally familiar with the process by which Warner Music accounts for income and costs in connection with the sound recordings it produces, distributes, and offers for sale to the public, and the manner in which Warner Music and its affiliates keep, maintain, and account for their records with respect to such income and expenses.

4. I understand this declaration is to be submitted to the Court in support of Plaintiffs' Response to Defendant Charter Communications, Inc.'s Objections to Magistrate Judge Hegarty's October 29, 2019 Discovery Order (Dkt. 84).

5. In the ordinary course of its business, Warner Music does not maintain summary financial documents reflecting the financial information Defendant Charter Communications, Inc. ("Charter") seeks on a track-by-track or even album-by-album basis. Warner Music does not have profit or loss statements (or data) at the level of individual sound recordings. Nor does it maintain such financial data for albums. Indeed, except for the track-by-track revenue data that Warner Music compiled when ordered to do so in another litigation, *Sony Music Entertainment et al. v. Cox Communications, Inc.*, Case No. 1:18-cv-950 (E.D. Va.) ("*Cox*"), Warner Music does not in the ordinary course of its business comprehensively track and maintain revenue information on a per-work basis, medium-by-medium, in a manner than can be easily queried without significant manual intervention.

6. As explained below, production of the categories of documents Charter seeks would be a massive undertaking. The burden and expense are further compounded by the fact that much of Warner Music's business is conducted by email. Consequently, as explained below, the

2

task of locating responsive documents (particularly electronic communications) is magnified dramatically as a result of the fact that the electronic files of hundreds of Warner Music employees could conceivably have documents falling within the broad categories of documents requested by Defendants.

7. My understanding of the incredible burden involved in collecting this data is not speculation, but is rather based on prior experience in attempting to collect and produce even a subset of this data in the *Cox* case. When Warner Music produced per-work revenue data in *Cox* (which is only a subset of what Charter seeks here)—for a different but partially overlapping set of musical works, and for a different claim period—it was an enormous undertaking that required the efforts of numerous individuals across multiple departments, hundreds of hours, and significant costs.

8. Any effort to identify and unearth every document or piece of financial data that would be needed to calculate profit or loss figures per sound recording would be a nearly impossible undertaking. Given the thousands of works at issue in this lawsuit, locating, collecting, and reviewing all the financial documentation Charter requests, including all documents related to the valuation of those works, would be unending. Charter apparently seeks full documentation about the revenues and costs involved in the creation, marketing, administration and exploitation of recorded music—the whole of Warner Music's business. It would require a full-time staff working many months, with thousands of hours of employee time, and additional time from in-house and outside attorneys to oversee such a process.

9. Creating, marketing, exploiting, and/or administering a sound recording is an extremely time-intensive and complex process that involves many categories of both income and

3

expenses. At each stage, each source of income and cost is documented in myriad ways, including through email communications, documents and/or in different databases or systems, by innumerable employees in offices located across the country.

10. Identifying and processing cost data with respect to a given sound recording (or the album or EP on which it appears) would be extremely complicated. Some of the types of costs include: recording costs, such as payments or advances to artists; direct payments to recording studios for recording session time; payments to producers, engineers, mixers, and other creative contributors to the process; costs of goods sold, such as manufacturing and distribution costs and royalty payments to artists, producers, and music publishers; marketing costs, such as publicity, advertising and video production costs; independent promotion costs; costs related to artist publicity tours and appearances, tour support, digital marketing; and overhead costs. Many of these costs are not allocated within Warner Music's financial systems on a track-by-track or even album-by-album basis. Revenue data would be similarly voluminous and include documents or information relating to the millions of track and album sales made each year, as well as licensing deals with television and movie studios, retailers, streaming services, satellite and cable services, and more.

11. Because of the different revenue systems maintained and used by the various Warner Music companies, it is largely impossible to collect even the requested *revenue* data in a systematic, automated way. Many companies within Warner Music use product codes to track revenue, but these product codes cannot be indexed with particular tracks in any automated fashion. As a result, attempting to compile track-by-track revenue is largely a manual process.

Minor discrepancies in song titles—such as use of punctuation, misspellings, etc.—also make it impossible to sort or search in an automated way.

12. Moreover, even this manual calculation process does not accurately capture all track revenue for a given work, as it would not typically include revenue associated with the track to the extent such revenue was received as part of a sale or distribution that included other works, such as the sale or distribution of EPs, LPs, digital or video bundles, etc. It is also essentially impossible to calculate track revenue for physical sales, because physical products such as CDs and records are generally sold at the album level, not as single tracks.

13. To provide even a subset of the data requested by Charter, this burdensome, time-consuming, and inherently incomplete manual calculation process must then be repeated thousands of times to capture all of the works in suit. In *Cox*, that was over 7,000 tracks in total and the process took over eight weeks to complete.

14. Although Warner Music already produced some financial information for works in suit here which were also in suit in *Cox*, the burden to produce financial data for the remaining works would be substantial. Because there is no centralized database from which to extract song-level information, Warner Music would be required to follow the same cumbersome and burdensome steps to produce the financial data for the thousands of additional works in total that are at issue in this case.

15. Moreover, as noted above, the claim period in *Cox* is different from the claim period at issue here, so even for works also in suit in *Cox*, updating the data produced in that case to cover the operative claim period here would be highly burdensome and require the same manual process

described above. In addition, in *Cox*, Plaintiffs only produced data pertaining to revenues; none of the other types of financial information requested by Charter was produced.

16. Given the incredible burden of collecting the detailed financial information Charter is requesting, Warner Music has provided its parent company's annual 10-K reports for the years 2010 through 2016. These reports include WMG's annual revenues from recorded music (broken down by physical sales, digital sales, licensing, and other) and music publishing (broken down by performance, mechanical, digital, sync, and other), cost of revenues (such as A&R costs); selling, general and administrative expense (for both recorded music and music publishing); interest and tax expense; and net profit/loss, among other financial information. In addition, I understand that, per the Magistrate Judge's discovery ruling, the financial information compiled through the time-intensive process described above and produced in the *Cox* case will be made available in this case. As explained above, it would be extremely difficult and burdensome to provide the additional detailed financial information Charter seeks.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Matthew Flott

Executed this 22 day of November, 2019, in New York, New York.