IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

**WARNER RECORDS INC., et al.,**

    Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

    Defendant.

---

**DECLARATION OF MICHAEL ABITBOL IN SUPPORT OF PLAINTIFFS'
RESPONSE TO DEFENDANT CHARTER COMMUNICATIONS, INC.'S OBJECTIONS
TO MAGISTRATE JUDGE HEGARTY'S OCTOBER 29, 2019 DISCOVERY ORDER**

---

I, Michael Abitbol, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently employed as Senior Vice President, Business and Legal Affairs, Digital for Sony/ATV Music Publishing LLC ("SATV"). I have held that position or a similar position at all times relevant to this declaration. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at SATV, and could and would testify competently thereto if called as a witness.

2. Plaintiffs SATV and its affiliates EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co. Inc., Stone

Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp. (collectively, "SATV/EMI") are full-service music publishing companies that collectively exploit with their fellow music publishing affiliates a diverse catalog of over three million songs, including some of the most iconic musical compositions of all time.

3. I am generally familiar with SATV/EMI's practices and procedures for acquiring, administering, publishing, licensing, and otherwise exploiting its catalogue of songs and the costs and revenues associated therewith. I am also generally familiar with the process by which SATV/EMI accounts for income and costs in connection with its catalog of musical compositions and the manner in which SATV/EMI and its music publishing affiliates keep, maintain, and account for its records with respect to such income and expenses.

4. I understand this declaration is to be submitted to the Court in support of Plaintiffs' Response to Defendant Charter Communications, Inc.'s ("Charter") Objections to Magistrate Judge Hegarty's October 29, 2019 Discovery Order (Dkt. 84).

## Discovery Concerning the SATV/EMI Plaintiffs' Financial Information

5. In the ordinary course of business, SATV/EMI does not maintain summary financial documents reflecting the full range of financial information Charter seeks on a track-by-track or even album-by-album basis. SATV/EMI does not have profit and loss statements at the level of individual compositions. Nor does it maintain such statements for albums. Indeed, except for the materials that SATV/EMI compiled when ordered to do so in another litigation, *Sony Music Entertainment et al. v. Cox Communications, Inc.*, Case No. 1:18-cv-950 (E.D. Va.) ("*Cox*"), SATV/EMI does not in the ordinary course of business comprehensively track and maintain revenue information on a per-work basis, medium-by-medium, in a manner than can be easily queried without significant manual intervention.

2

6. As explained below, production of all of the categories of documents Charter seeks would be a significant undertaking—literally requiring at least hundreds of hours of time from SATV/EMI employees to locate, identify, and review such documents. The burden is further compounded by the fact that much of SATV/EMI's business is conducted by email. Consequently, as explained below, the task of locating responsive documents (particularly electronic communications) is magnified dramatically as a result of the fact that the electronic files of dozens of SATV/EMI employees could conceivably have documents falling within the broad categories of documents requested by Defendants.

7. My understanding of the substantial burden involved in collecting this data is not speculation, but is rather based on prior experience in attempting to collect and produce even a subset of this data in the *Cox* case. It was a significant undertaking for SATV/EMI to produce per-work revenue data in *Cox* (which is only a subset of what Charter seeks here)—for a different but partially overlapping set of musical works, and for a different claim period.

8. Any effort to identify and unearth every document or piece of financial data that would be needed to calculate profit or loss figures per composition would be a burdensome undertaking. Given the thousands of works at issue in this lawsuit, locating, collecting, and reviewing all the financial documentation Charter requests, including all documents related to the valuation of those works, would be unending. Charter apparently seeks full documentation about the costs and revenues involved in acquiring, administering, publishing, licensing, and otherwise exploiting songs—the whole of SATV/EMI's business. It would require a full-time staff working many weeks, with hundreds of hours of employee time, and additional time from in-house and outside attorneys and vendors to oversee such a process. This would be hugely disruptive to SATV/EMI's business operations and incredibly costly to SATV/EMI.

9. Creating, publishing, and/or administering a song is a lengthy and complicated process that involves many categories of both income and expenses. At each stage, each source of income and cost is documented in myriad ways, including through email communications, documents and/or different databases or systems, by innumerable employees in offices located across the world.

10. Identifying and processing revenue and cost data with respect to a given song would be extremely burdensome and complicated. Some of the types of revenues and costs include those related to: acquiring songs via agreements with songwriters or other music publishers; administering mechanical, synchronization, performance, and print licenses pursuant to which SATV/EMI's copyrighted works are exploited; and maintenance and payment of royalties to songwriters, co-publishers, and other royalty participants in connection with income generated from the exploitation of SATV/EMI's works. I would estimate that SATV/EMI maintains millions and millions of pages of documents relating to these revenues and costs. As one example, the royalty statements that SATV/EMI receive from the licensees of its works can be complex and contain massive amounts of data (sometimes totaling millions of lines). These statements often are not limited to royalties for any one particular composition, and instead often cover hundreds of thousands of uses for thousands of other compositions that are administered by SATV/EMI.

11. Although SATV/EMI already produced some financial information in *Cox* for works in suit here which were also in suit in that case, that process took a number of weeks and required at least some manual intervention on the part of an SATV/EMI employee. The burden to produce financial data for the remaining works would likewise be time-consuming. Moreover, as noted above, the claim period in *Cox* is different from the claim period at issue here, so even for works also in suit in *Cox*, updating the data produced in that case to cover the operative claim

4

period here would be highly burdensome and require the same manual process described above. In addition, in *Cox*, Plaintiffs only produced data pertaining to revenues; none of the other types of financial information requested by Charter was produced.

12.     Given the impracticality of collecting the detailed financial information Charter seeks, SATV/EMI has provided summary a profit or loss statement for the years 2010 through 2016. Such statement includes the following annual U.S.-based financial detail for SATV/EMI: total revenues; total royalty expenses; talent expenses; amortization expense; overhead and other costs; operating income; and net income. In addition, I understand that, per the Magistrate Judge's discovery ruling, the financial information compiled through the time-intensive process described above and produced in the *Cox* case will be made available in this case. As explained above, it would be extremely difficult and burdensome to provide the additional detailed financial information Charter seeks.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Michael Abitbol

Executed this 26th day of November, 2019 in New York.