# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WARNER BROS. RECORDS INC., *et al.*,

       Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

       Defendant.

Case No. 19-cv-00874-RBJ

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S
## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

**PROPOUNDING PARTY**:  Defendant Charter Communications, Inc.

**RESPONDING PARTY**:    Plaintiffs

**SET NUMBER**:          One

      Defendant Charter Communications, Inc. ("Charter") hereby requests that Plaintiffs Warner Bros. Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., WEA International Inc., Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., W.B.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, Volcano Entertainment III, LLC, Zomba Recordings, LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc., d/b/a EMI Full Keel Music, EMI Consortium Song, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc.

d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co., Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capital Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Island Music Limited, Polygram Publishing, Inc., and Songs of Universal, Inc. (collectively "Plaintiffs") each produce the documents set forth below for inspection and copying at the New York offices of Winston & Strawn LLP, or at such other location as mutually agreed to by the parties, within thirty (30) days after the service of these Requests for Production ("Requests"), pursuant to Fed. R. Civ. P. 34, Local Rules, and any other applicable rules.

## <u>DEFINITIONS</u>

Notwithstanding any definition below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.      "Plaintiff," "Plaintiffs," "You," or "Your" shall mean plaintiffs to the above-captioned litigation, including any or all of Warner Bros. Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., WEA International Inc., Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., W.B.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, Volcano Entertainment III, LLC, Zomba Recordings, LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music

Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc., d/b/a EMI Full Keel Music, EMI Consortium Song, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co., Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capital Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Island Music Limited, Polygram Publishing, Inc., and Songs of Universal, Inc. and/or any of its or their representatives, all past and present predecessors, successors, subsidiaries, affiliates, and parent companies, and all past and present directors, officers, partners, employees, agents, representatives, or persons acting on behalf of the foregoing entities.

2.      "Charter" shall refer to Defendant Charter Communications, Inc.

3.      "CAS" shall refer to the Copyright Alert System.

4.      "Cloud Storage Account" shall mean any account, application, data repository, or virtual mailbox capable of sending, receiving, and/or storing messages or information electronically using a computer or other electronic device, and includes, without limitation, email accounts, cloud-based storage accounts (*e.g.*, Dropbox, Box.com, iCloud, Google Drive, etc.), cloud-based servers (*e.g.*, Digital Ocean, Rackspace, Amazon S3, Google Cloud, Microsoft Azure, etc.), cloud-based data repositories (*e.g.*, Github, Gitlab, Bitbucket, etc.) and email accounts (*e.g.*, Outlook, Gmail, Yahoo, etc.).

5.      "Communication" or "communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, in writing, or otherwise, including but

not limited to written correspondence, reports, mailings, conversations, meetings, letters, notes, recordings, and telegraphic, facsimile, telex, or computer-assisted electronic messages (including but not limited to e-mail, text messaging, instant messaging, VoIP calls, video conferencing, and posts on social media platforms or blogs).

6.      "Complaint" shall refer to Plaintiffs' complaint filed on or about March 22, 2019, in the above-captioned matter.

7.      "Copyright Works" shall refer to those works You claim were infringed and for which You seek relief in this litigation.

8.      "Document" or "documents" as used herein shall have the broadest possible construction under the Federal Rules of Civil Procedure.

9.      "Electronic Storage Device" shall mean remote storage systems; servers (including but not limited to virtual servers); hosted servers (including but not limited to virtual hosted servers); computers; CPUs; hard drives; disk drives; flash drives; virtual file systems; cellular telephones; smart phones; SIM cards; CDs; DVDs; USB drives; any devices that contain any hard drive, disk drive, flash drive, flash memory and/or SIM card; and any other device or medium that can be used to store data or information in any electronic format or that can be used to view, convert, process, or manipulate data or information in any way.

10.      "Harbor Labs" shall refer to Harbor Labs and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on Harbor Labs's behalf.

11.      "ISP" shall refer to Internet Service Provider.

12.     "MarkMonitor" shall refer to MarkMonitor, Inc. and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on MarkMonitor's behalf.

13.     "MarkMonitor System" shall refer to any and all of MarkMonitor's systems for monitoring and/or detecting alleged copyright infringement, generating copyright infringement notices, and sending copyright infringement notices.

14.     "Residential ISP Customer" shall refer to any customer of an ISP that is, for example, an individual or residence, and otherwise not a university, college, city, municipality, hospital, hotel, or any other type of institutional or corporate customer, including but not limited to any type of customer that would be targeted by a university-specific or corporate peer-to-peer notice program or a university-specific or corporate peer-to-peer litigation program.

15.     "Non-Residential ISP Customer" shall refer to any customer of an ISP that is, for example, a university, college, city, municipality, hospital, hotel, or any other type of institutional or corporate customer, including but not limited to any type of customer that would be targeted by a university-specific or corporate peer-to-peer notice program or a university-specific or corporate peer-to-peer litigation program.

16.     "Peer-to-peer file sharing technologies" shall include websites, other locations on the Internet or other networks, services, products, applications, apps, software, hardware, programs or programming, code, computer-based products, and/or any similar or related thing, including those utilizing the BitTorrent technology or protocol.

17.    "Person" shall mean any natural person, firm, association, partnership, government agency, or other entity and its officers, directors, partners, employees, former employees, representatives and agents.

18.    "Personally Identifiable Information" shall mean information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information.

19.    "Plaintiffs' Claim Period" shall refer to the time period from March 2013 to May 2016.

20.    "RIAA" shall refer to the Recording Industry Association of America and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on the RIAA's behalf.

21.    "Rightscorp" shall refer to Rightscorp, Inc. and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on Rightscorp's behalf.

22.    "Stroz Friedberg" shall refer to Stroz Friedberg, an Aon Company, and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on Stroz Friedberg's behalf.

23.    As used herein, the terms "this lawsuit," "this litigation," and "this case" refer to the above-captioned litigation, *Warner Bros. Records Inc. et al. v. Charter Commc'ns, Inc.*, Civil Action No. 19-cv-874, pending in the United States District Court for District of Colorado.

24.     "And" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and the use of the singular form of any word includes the plural and vice versa.

25.     "Any" and "all" shall mean one or more.

26.     The term "date" means the exact day, month and year, if ascertainable; and if not ascertainable, the closest approximation that can be made by means of relationship to other events, locations or matters.

27.     The terms "reflecting," "referring," "relating to," "concerning" or any derivation thereof shall mean, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, concerning, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

28.     "Including" shall mean without limitation.

29.     The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001.

30.     Unless the request specifically states otherwise, references to the singular shall include the plural and vice versa; references to one gender shall include the other gender; references to the past shall include the present and vice versa; and disjunctive terms shall include the conjunctive and vice versa.

## **INSTRUCTIONS**

1.     Each requested document shall be produced in its entirety, including all attachments and enclosures. If a portion of a document is responsive to a request, produce the entire document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached

to the document. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2. Pursuant to Rule 34 of the Federal Rules of Civil Procedure, all paper documents produced in response to these Requests for Production shall be produced in such a way as to identify the request that they are responsive to or in the same order as they are kept in the ordinary course of business and, where attached, shall not be separated or disassembled. If the documents responsive to any request are normally kept in a file or folder, also produce that file or folder with any labels attached thereto, and indicate the company, division, department, and/or individual from whose files the document is being produced. If responsive documents are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or any other method, produce such documents in that form.

3. All ESI shall be produced pursuant to the stipulation and agreement regarding the production of ESI that is being negotiated by the parties.  If the parties are unable to reach an agreement regarding production format, Charter reserves the right to supplement this Request to specify a specific production format.

4. Respond to each request by affirmatively stating in writing the full extent to which You will produce materials. Promptly after production, confirm in writing that You have produced all materials that You could locate after a diligent search of all locations that might plausibly have such materials. You may not respond that You have produced or will produce "responsive" materials.

5. The definitions and instructions set forth in Fed. R. Civ. P. 26(b)(5) are incorporated herein by reference.

6.      If You seek to withhold any information based on some limitation of discovery (including, but not limited to, a claim of privilege) applicable to any document, provide all parts of the document within the scope of the requests that are not subject to privilege. For each item of information contained in a document to which You claim privilege, provide at least the following:

(a)      the privilege You are asserting and the factual basis;

(b)      the names and positions of the author of the document and all other persons participating in the preparation of the document;

(c)      the name and position of each individual or other person who received the information in the document;

(d)      the date of the document;

(e)      a description of any accompanying material transmitted with or attached to such document;

(f)      the number of pages in the document;

(g)      the particular request to which the document is responsive;

(h)      whether the document has any discussion of business or non-legal matters; and

(i)      the steps You took to ensure the confidentiality of the document.

For email or message threads that contain multiple emails/messages, provide the above information for each email/message.

7.      If You have a good-faith objection to any request or any part of any request, state the specific nature of the objection and whether it applies to the entire request or to specific parts of a request. If the objection relates to only a part or parts of a request, identify the objectionable part or parts and identify or produce any and all documents responsive to the remaining parts.

8.       Each request is continuing in nature. If, after responding to these requests, You obtain or become aware of further documents, such documents shall be produced promptly in accordance with Rule 26(e) of the Federal Rules of Civil Procedure and the definitions and instructions herein.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Documents sufficient to identify all works, including, but not limited to, the Copyright Works, in which You own, claim, and/or control a copyright that You allege that subscribers, account holders, or customers of Charter have infringed and for which You claim Charter is responsible or liable in this litigation.

**REQUEST NO. 2:**

Full digital copies of all Copyright Works, including any and all versions of each Copyright Work You claim has been infringed, and any version submitted to the United States Copyright Office of the Library of Congress.

**REQUEST NO. 3:**

All documents concerning communications between You and the Copyright Office and all documents issued by the Copyright Office, regarding the Copyright Works, including, but not limited to, all applications to register the Copyright Works, certificates of copyright registrations for each of the Copyright Works, supplemental registrations, renewals of registrations, recorded assignments, recorded transfers, and/or terminations of transfer.

**REQUEST NO. 4:**

Documents sufficient to demonstrate whether any of the Copyright Works was created as or is a work for hire.

**REQUEST NO. 5:**

All documents concerning ownership of or claims of right in the Copyright Works, including those evidencing, referring, or relating to the chain of title for the Copyright Works or those pertaining to disputes related to any time, of the Copyright Works.

**REQUEST NO. 6:**

Documents, including without limitation organizational charts, sufficient to identify Your organizational structure since January 1, 2012, including without limitation Your departments, divisions, corporate officers, executives, and managers, including their names, titles, direct reports, and duties and responsibilities.

**REQUEST NO. 7:**

Documents, including without limitation corporate organizational charts, sufficient to identify Your corporate family structure since January 1, 2012, including without limitation Your parents, subsidiaries, affiliates, successors, and predecessors.

**REQUEST NO. 8:**

All documents concerning any licenses, assignments, and/or grant or transfer of rights of the copyrights that You claim cover(ed) the Copyright Works for any of the last ten (10) years, including copies of agreements reflecting such licenses, assignments, and/or grant or transfer of rights and documents analyzing such licenses, assignments, and/or grant or transfer of rights.

**REQUEST NO. 9:**

Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate the revenue You generated from any assignments, licenses, and/or grant or transfer of rights of each Copyright Work for the last ten (10) years.

**REQUEST NO. 10:**

Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate the claimed lost sales or licenses due to the infringement of the Copyright Works by Charter's subscribers, account holders, or customers, as alleged in Your Complaint and for which you seek relief in this litigation, organized by each of the Copyright Works.

**REQUEST NO. 11:**

Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate the claimed lost sales or licenses due to infringement of the Copyright Works on peer-to-peer file sharing sites, organized by each Copyright Work and for each of the last ten (10) years.

**REQUEST NO. 12:**

All documents that evidence, refer to, discuss, support, or refute any damages or harm, including, without limitation, monetary damage, You claim to have suffered, or believe are likely to suffer, due to the infringements of each of the Copyright Works by Charter's subscribers, account holders, or customers, as alleged in Your Complaint.

**REQUEST NO. 13:**

All documents concerning Your efforts to mitigate any damages or harm, including without limitation, monetary damage, You claim to have suffered, or believe are likely to suffer, due to the infringements of the Copyright Works by Charter's subscribers, account holders, or customers, as alleged in Your Complaint.

**REQUEST NO. 14:**

All documents, including appraisals and documents reflecting negotiations concerning and agreements covering the sale of the Copyright Works, concerning valuation and/or value of the

copyrights and the Copyright Works You assert in this litigation at any time, from the time You acquired them or were considering the acquisition of them through the present.

**REQUEST NO. 15:**

All documents concerning Your efforts to market and promote the digital downloading or streaming of the Copyright Works.

**REQUEST NO. 16:**

All documents concerning trends, forecasts, projections, or any other financial plans related to royalties, sales, revenue, or profits generated through streaming, digital downloads, physical media, and/or any other media, of the Copyright Works.

**REQUEST NO. 17:**

Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate Your total annual revenue, expense, and profits for each of the last ten (10) years.

**REQUEST NO. 18:**

Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate Your total annual revenue from each Copyright Work by medium for each of the last ten (10) years.

**REQUEST NO. 19:**

Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate Your total annual expense and profit from each Copyright Work by medium and for each of the last ten (10) years.

**REQUEST NO. 20:**

All documents concerning any relief, including but not limited to damages, You, any other Plaintiff, or any other person expect(s) to recover, gain, or receive because of this litigation, regardless of a finding of liability against Charter.

**REQUEST NO. 21:**

All documents regarding litigation(s) concerning peer-to-peer technologies or copyright infringement as a source of revenue generation for Plaintiffs, including but not limited to forecasts, estimates, and/or business plans reflecting the financial effect of this litigation on any Plaintiff.

**REQUEST NO. 22:**

All documents concerning the effect from copyright infringement using peer-to-peer file sharing technologies on Your projected and actual total revenue and/or profits generated during Plaintiffs' Claim Period.

**REQUEST NO. 23:**

All documents that reference BitTorrent or other types of peer-to-peer file sharing technologies as they relate to diminished or diminishing use of such technologies, copyright infringement, sampling musical works, or permitted authorized uses, whether actual, perceived, or potential, of the Copyright Works.

**REQUEST NO. 24:**

All documents concerning the effect of the use of peer-to-peer technologies on any Plaintiffs, including studies or analyses demonstrating, reflecting, supporting, or refuting any benefit or harm to any Plaintiff, including but not limited to any Copyright Work.

**REQUEST NO. 25:**

All documents concerning the use of peer-to-peer file sharing sites or technologies including but not limited to BitTorrent to promote, market, or otherwise benefit You, any of the Copyright Works, and/or any of the artists who created the Copyright Works.

**REQUEST NO. 26:**

Documents sufficient to demonstrate the amount of "money, time, effort and talent in creating, advertising, promoting, selling, and licensing unique and valuable sound recordings embodying the performances of [each Plaintiffs] exclusive recording artists," as alleged *inter alia* in paragraph 33 of Your Complaint, for each Copyright Work, for each of the last ten (10) years.

**REQUEST NO. 27:**

All documents that mention, refer to, or relate to Charter and/or the above-captioned litigation that were created, received, or sent from 2013 to the present.

**REQUEST NO. 28:**

All documents concerning communications with Charter regarding copyright infringement.

**REQUEST NO. 29:**

All documents You considered, whether supportive of Your allegation(s) or not, in determining whether there was infringement by a Charter subscriber, account holder, or customer of a Copyright Work and for which you seek relief in this litigation.

**REQUEST NO. 30:**

For each instance that You claim constitutes an act of infringement by a Charter subscriber, account holder, or customer of a Copyright Work, documents sufficient to also identify (a) the individual You claim engaged in the infringement, (b) the Copyright Work at issue, (c) the specific actions of that individual that You claim constitutes infringement of the Copyright Work, and (d) all

other facts that You claim support Your determination that the identified individual or act constitutes infringement by a Charter subscriber, account holder, or customer of a Copyright Work.

**REQUEST NO. 31:**

Documents sufficient to demonstrate the number of Charter subscribers, account holders, or customers You claim to be "repeat infringer[s]," as that term is used in Your Complaint.

**REQUEST NO. 32:**

For each subscriber, account holder, or customer of Charter that You determined or stated was a "repeat infringer," as that term is used in Your Complaint, all documents that You reviewed, considered, relied upon, or dismissed in connection with reaching a determination that an alleged infringer was a "repeat infringer," including any documents that define or provide Your understanding of the term "repeat infringer."

**REQUEST NO. 33:**

For each instance where You determined or stated that a subscriber, account holder, or customer of Charter infringed the Copyright Works, all documents that concern whether the Charter subscriber, account holder, or customer in question is the person who actually engaged in the allegedly infringing conduct, including documents that either tend to support or undermine such a determination.

**REQUEST NO. 34:**

All non-privileged documents concerning opinions, legal or otherwise, including the opinions You have rendered, obtained, received, considered, dismissed, or relied upon regarding alleged infringement or repeat infringement by Charter or by Charter's subscribers, account holders, or customers of the Copyright Works.

**REQUEST NO. 35:**

Documents sufficient to demonstrate that the Charter subscribers, account holders, or customers alleged to have infringed a Copyright Work downloaded the entirety of the data comprising the Copyright Work while connected to the Internet through Charter's network.

**REQUEST NO. 36:**

All documents You claim demonstrate Charter's knowledge of the copyright infringement alleged by You in this litigation, including all copyright infringement notices sent to Charter by, or on behalf of, You, and all documents You claim demonstrate Charter's receipt of those copyright infringement notices.

**REQUEST NO. 37:**

Documents sufficient to identify who or which entities identified the underlying data for, prepared and/or sent the copyright notices that You will rely on in this litigation, including but not limited to those referred to (for example) in paragraph 2 of the Complaint.

**REQUEST NO. 38:**

Documents that identify, in any respect, including by IP address, the Charter subscribers, account holders, or customers whom You claim have infringed the Copyright Works for which you seek relief in this litigation.

**REQUEST NO. 39:**

All documents concerning efforts, whether by You or by third parties on Your behalf, to identify and/or contact individuals (including efforts to obtain names, IP addresses, email addresses, or other Personally Identifiable Information) whom You believe infringed or attempted to infringe the Copyright Works online.

**REQUEST NO. 40:**

All documents concerning communications with, or attempts to contact, individuals or entities You believe infringed or attempted to infringe the Copyright Works online, including but not limited to infringement or attempted infringement by means of peer-to-peer file sharing sites.

**REQUEST NO. 41:**

All documents concerning Your decision not to pursue litigation against Charter's subscribers, account holders, and/or customers who have allegedly infringed the Copyright Works.

**REQUEST NO. 42:**

All documents that support Your allegations in paragraph 77 of Your Complaint, including that Charter made its "service," as that term is used in paragraph 77 of Your Complaint, "attractive" for copyright infringement, and "obliged" "subscribers who wanted to download files illegally at faster speeds[.]"

**REQUEST NO. 43:**

All documents that support Your claim that Charter was incentivized, financially or otherwise, to permit its subscribers, account holders, or customers to engage in copyright infringement on its network, or that Charter had or has a direct or indirect financial interest in the infringement of the Copyright Works specifically.

**REQUEST NO. 44:**

All documents that demonstrate any correlation, connection, or cause and effect relationship between Charter's actions with respect to its subscribers', account holders', or customers' Internet service due to alleged or complained-of copyright infringement, and the subsequent status of each such subscriber's, account holder's or customer's telephone or video services.

**REQUEST NO. 45:**

All documents concerning the ability of Charter to avoid, limit, or restrict infringements of the Copyright Works, including all actions You or any other Plaintiff believes Charter could have taken, other than monitoring its service or terminating service to subscribers, account holders, or customers, in order to avoid, limit, or restrict particular infringements of the Copyright Works.

**REQUEST NO. 46:**

All documents concerning the enforcement of the copyrights covering the Copyright Works other than as related to this litigation.

**REQUEST NO. 47:**

All documents concerning Your decision to initiate or not initiate enforcement efforts against Charter or any other ISP as it relates to alleged copyright infringement through the use of peer-to-peer file sharing sites.

**REQUEST NO. 48:**

All documents concerning Your communications or negotiations with Charter regarding the number of infringement notices Charter would accept from You, any other Plaintiff, or any other party attempting to enforce a copyright.

**REQUEST NO. 49:**

All documents concerning the policies or practices of online service providers (including without limitation ISPs and Internet access providers) concerning the termination or suspension of their subscribers or account holders due to allegations of copyright infringement.

**REQUEST NO. 50:**

All documents that reference or concern Charter's Charter Abuse Tracking System (the "CATS"), including the technical abilities of the CATS to process notices.

**REQUEST NO. 51:**

All documents concerning settlements or agreements that You, or anyone acting on Your behalf, have reached, proposed, or internally approved with any of Charter's subscribers, account holders, or customers, or of customers of ISPs other than Charter.

**REQUEST NO. 52:**

All documents that You claim demonstrate a relationship between Charter and any of its subscribers, account holders, or customers that justifies or creates *respondeat superior* or any vicarious liability of Charter as related to this litigation.

**REQUEST NO. 53:**

All documents concerning, and communications with, any entity, including the "representatives" identified in paragraph 2 of Your Complaint, that prepared and/or sent copyright infringement notices relating to the Copyright Works.

**REQUEST NO. 54:**

All communications with Rightscorp regarding the Copyright Works and/or copyright infringement notices considered, prepared, or sent to Charter or its account holders, subscribers, or customers.

**REQUEST NO. 55:**

All communications with MarkMonitor regarding the Copyright Works and/or copyright infringement notices considered, prepared, or sent to Charter or its account holders, subscribers, or customers.

**REQUEST NO. 56:**

All documents concerning any computer code, computer program, software, hardware, system, process, or device utilized to monitor or detect copyright infringement through BitTorrent or peer-to-peer file sharing technologies or sites, or using copyright infringement notices that were prepared and sent by You or on Your behalf to Charter for the Copyright Works.

**REQUEST NO. 57:**

All documents constituting, comprising, or evidencing Your policies for document management, preservation, storage, indexing, and disposal from 2010 to the present.

**REQUEST NO. 58:**

All documents that concern or support any of the facts alleged in Your Complaint.

**REQUEST NO. 59:**

Documents sufficient to demonstrate the specific actions You undertook in the last ten (10) years that were intended to reduce the infringement of Your Copyright Works and/or any of Your other copyrighted works, including any amount of money you expended on these actions.

**REQUEST NO. 60:**

Documents sufficient to demonstrate the amount of money You paid to the RIAA between 2010 and 2016.

**REQUEST NO. 61:**

All documents that reference the litigations styled as *UMG Recordings, et al. v. Grande Commc'ns et al.* (W.D. Tex.), and/or *Sony Music Entm't, et al. v. Cox Commc'ns, Inc., et al.* (E.D. Va.), including but not limited to pleadings and/or discovery, as well as any documents reflecting sworn testimony by Your employees and/or representatives in those litigations.

**REQUEST NO. 62:**

All documents concerning the RIAA and either this lawsuit, Charter, CAS, MarkMonitor, and/or the Copyright Works.

**REQUEST NO. 63:**

All documents pertaining to the relationship, agreement, and/or communications between You and/or any other Plaintiff and the RIAA and/or MarkMonitor regarding this lawsuit, the Copyright Works, and/or Charter.

**REQUEST NO. 64:**

All documents concerning the relationship, agreement, and/or communications between the RIAA and any other person as it relates to either Charter, this lawsuit, and/or the Copyright Works.

**REQUEST NO. 65:**

All documents concerning any technical or qualitative analysis of any computer code, computer program, software, hardware, system, process, or device utilized to identify infringement and/or produce the copyright notices which were sent to Charter or upon which You will rely in this litigation, including any documents drafted by the Center for Copyright Information ("CCI"), MarkMonitor, Stroz Friedberg, or Harbor Labs.

**REQUEST NO. 66:**

All documents and correspondence relating to the reliability and/or efficacy of the MarkMonitor System, including but not limited to audits related thereto, and documents and communications with MarkMonitor, Stroz Friedberg, and/or Harbor Labs pertaining to any technical assessments of the MarkMonitor System.

**REQUEST NO. 67:**

All documents concerning Stroz Friedberg's relationship with and/or engagement by the RIAA between 2004 and 2009.

**REQUEST NO. 68:**

All documents concerning CAS.

**REQUEST NO. 69:**

All documents concerning negotiations related to CAS.

**REQUEST NO. 70:**

All documents concerning any Memorandum of Understanding concerning CAS, including without limitation the July 6, 2011 Memorandum of Understanding (the "7/6/2011 MOU") to which the RIAA was a signatory (singly or collectively, a "CAS MOU"), and any related document or agreement (such as the Implementation Agreement You entered into pursuant to the 7/6/2011 MOU).

**REQUEST NO. 71:**

All documents concerning Your status as a signatory of a CAS MOU.

**REQUEST NO. 72:**

All documents concerning Charter's compliance or non-compliance with policies or procedures reflected in CAS, a CAS MOU, or any Implementation Agreement concerning a CAS MOU.

**REQUEST NO. 73:**

All documents concerning any technological system used to detect, monitor, or generate or send notifications concerning, copyright infringement in connection with CAS, a CAS MOU, or any Implementation Agreement concerning a CAS MOU.

**REQUEST NO. 74:**

All reviews, assessments, evaluations, reports, or the like, including drafts, concerning CAS, including without limitation any technological system utilized in connection with CAS.

**REQUEST NO. 75:**

All documents concerning notifications sent pursuant to CAS, any CAS MOU, or any Implementation Agreement, concerning allegations of copyright infringement of any Copyright Work.

**REQUEST NO. 76:**

All communications and documents concerning Your methodology, practice, policy, or effort to monitor and/or send notices to Non-Residential ISP Customers, including through any peer-to-peer notice program.

**REQUEST NO. 77:**

Documents sufficient to show Your or the RIAA's methodology, practice, policy, or efforts to monitor and/or send notices to Non-Residential ISP Customers, including through any Peer-to-Peer Notice Program.

**REQUEST NO. 78:**

All communications and documents concerning the RIAA and/or MarkMonitor's methodology, practice, policy, or efforts to monitor and/or send notices to Non-Residential ISP Customers, including through any Peer-to-Peer Notice Program.

**REQUEST NO. 79:**

All communications and documents concerning the method or system by which You, the RIAA, and/or MarkMonitor distinguish(es) between Non-Residential ISP Customers and Residential ISP Customers.

**REQUEST NO. 80:**

All communications and documents concerning Charter's customers that You, MarkMonitor, or the RIAA learned were Non-Residential ISP Customers.

**REQUEST NO. 81:**

Copies of any reports, including the weekly and/or monthly reports, from MarkMonitor to either the RIAA or You as related to any MarkMonitor Peer-to-Peer Notice Program, including all non-privileged documents and communications related to the same.

**REQUEST NO. 82:**

All communications and documents concerning alleged repeat infringers, as observed by either MarkMonitor or the RIAA, including, without limitation, concerning whether these alleged repeat infringers are Non-Residential ISP Customers.

**REQUEST NO. 83:**

All documents You relied on in answering any Interrogatory in the above-captioned litigation.

**REQUEST NO. 84:**

All documents concerning the company Audible Magic and/or its technology, including without limitation, the use of Audible Magic's technology to identify the alleged infringements at issue in this litigation.

Dated: June 25, 2019                   Respectfully submitted,

                                       By:   */s/ Seth E. Spitzer*

                                       Craig D. Joyce
                                       John M. Tanner
                                       FAIRFIELD AND WOODS, P.C.
                                       1801 California Street, Suite 2600
                                       Denver, Colorado 80202
                                       Phone: 303.830.2400
                                       Fax: 303.830.1033
                                       E-mail: cjoyce@fwlaw.com

E-mail: jtanner@fwlaw.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
Stacey Foltz Stark
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
Phone: 212.294.6700
Fax: 212.294.4700
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com
E-mail: sfstark@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
Phone: 415.591.1000
Fax: 415.591.1400
E-mail: jgolinveaux@winston.com

*Counsel for Defendant*
*Charter Communications, Inc.*

# CERTIFICATE OF SERVICE
## United States District Court for the District of Colorado

**Case No.** 19-cv-00874-RBJ

I am a resident of the State of New York, over the age of eighteen years, and not a party to the within action.  My business address is Winston & Strawn, LLP, 200 Park Avenue, New York, New York 10166-4193.  On June 25, 2019, I served a copy of the following document:

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S
## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

☐    by placing a copy of the document listed above in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, CA addressed as set forth below.

I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

☒    by electronically transmitting a copy of the document listed above via email to the addressees as set forth below, in accordance with the parties' agreement to be served electronically pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), or Local Rule of Court, or court order.  No error messages were received after said transmissions.

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Tel: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Tel: (202) 621-9027
matt@oandzlaw.com; scott@oandzlaw.com
jeff@oandzlaw.com;  kerry@oandzlaw.com

Mitchell A. Kamin
Neema T. Sahni
Rebecca Van Tassell
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800 mkamin@cov.com
nsahni@cov.com; rvantassell@cov.com

Jonathan M. Sperling
Jacqueline C. Charlesworth
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com; jcharlesworth@cov.com

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Signed:  /s/ *Seth E. Spitzer*
         Seth E. Spitzer

Dated:  June 25, 2019