# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER BROS. RECORDS INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 19-cv-00874-RBJ |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**

**CHARTER COMMUNICATIONS, INC.'S FIRST SET OF INTERROGATORIES**

PROPOUNDING PARTY:    Defendant Charter Communications, Inc.

RESPONDING PARTY:    Plaintiffs Warner Records, Inc., *et al.*

SET NUMBER:    One

Plaintiffs Warner Records Inc. (f/k/a Warner Bros. Records Inc.), Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., WEA International Inc., Warner Chappell Music, Inc. (f/k/a Warner/Chappell Music, Inc.), Warner-Tamerlane Publishing Corp., WB Music Corp., W.C.M. Music Corp. (f/k/a W.B.M. Music Corp.), Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, Volcano Entertainment III, LLC, Zomba Recordings, LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music

1

Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc., d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co., Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capital Records, LLC, Universal Music Corp., Universal Music–MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music–Z Tunes LLC, Island Music Limited, Polygram Publishing, Inc., and Songs of Universal, Inc. (collectively "Plaintiffs"), through their undersigned counsel and pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby respond to Defendant Charter Communications, Inc.'s ("Charter") First Set of Interrogatories upon Plaintiffs as follows.  Plaintiffs' investigation into the facts of this case is ongoing and is not yet completed, and Plaintiffs therefore reserve the right to supplement or amend their responses and objections to the extent permitted by the Federal Rules of Civil Procedure, the Local Rules, and any applicable order of this Court.  The responses set forth herein are based solely on the information that is presently available and known to Plaintiffs.

## PLAINTIFFS' OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.   Plaintiffs object to Charter's definitions, instructions, and interrogatories to the extent they seek to impose obligations other than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the District of Colorado, and any applicable order of this Court. Plaintiffs will interpret and respond to these interrogatories in the manner prescribed by the same.

2.   Plaintiffs object to the definitions and instructions to the extent they call for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common-interest privilege, or any other privilege or immunity under federal or state law. The inadvertent production of information that is privileged, was prepared in anticipation

2

of litigation or for trial, or that is otherwise protected from discovery, shall not constitute a waiver of any privilege or any ground for objection, or of the right of Plaintiffs to object to the use of such information during subsequent proceedings. Plaintiffs are willing to meet and confer with Charter in good faith to discuss a joint approach to addressing privilege. In the event that an inadvertent production or identification of information is deemed by the Court to be a waiver of any privilege or immunity, the waiver shall be a limited waiver pertaining to that information only.

3. Any confidential or proprietary information pertaining to the Plaintiffs' businesses, technology, or economic relationships shall be disclosed solely pursuant to a protective order to be agreed upon by and between Charter and Plaintiffs.

4. Plaintiffs object to the definitions and instructions as overly broad and unduly burdensome to the extent they require Plaintiffs to provide any information beyond what Plaintiffs are able to locate from a reasonable and diligent search of their files.

5. Plaintiffs' response to the interrogatories will be made without waiver of, and with the intentional preservation of:

   a. All objections as to the competence, relevance, materiality, privilege, confidentiality, authenticity, and admissibility as evidence in any aspect of this or any other legal proceeding;

   b. The right to object on any ground to the use of information or documents, or the subject matter thereof, in any aspect of this or any other legal proceeding;

   c. The right to object at any time to further responses to interrogatories on any ground; and

   d. The right to revise, correct, supplement, or clarify the responses and objections propounded herein at any time.

6. Identification or production of documents or information responsive to any discovery request should not be construed as:

a.  An admission or stipulation that the information or documents or their content or subject matter are properly discoverable or relevant;

b.  A waiver by Plaintiffs of any of their objections as set forth herein; or

c.  An agreement that requests for similar information will be treated in a similar manner.

7.  Plaintiffs interpret the interrogatories to include a reasonable time period of March 1, 2012 to May 17, 2016 and limit their responses to the interrogatories accordingly, unless otherwise indicated below.

8.  Plaintiffs object to the definition of "Plaintiff," "Plaintiffs," "You," or "Your," to the extent it encompasses entities, individuals, and information outside of Plaintiffs' knowledge, possession, custody, or control.  Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case.  By including "all past and present . . . employees" of every corporate affiliate, parent, and predecessor of the Plaintiffs, Charter is requesting that Plaintiffs search for information relating to tens of thousands of persons, including even persons who have not worked for any Plaintiff in decades. By including "all past and present predecessors, successors, subsidiaries, affiliates, and parent companies[,]" Charter is requesting that Plaintiffs search for information held or pertaining to related corporate entities which have no connection to this matter. Plaintiffs will construe the terms "Plaintiff," "Plaintiffs," "You" or "Your" to refer to the specific entities named as Plaintiffs in this action.

9.  Plaintiffs object to the definition of "Communication" as overbroad, unduly burdensome, and disproportionate to the needs of the case.  For example, the definition includes "telex" messages, which refers to messages sent on a public switched network of teleprinters that businesses used prior to the adoption of fax machines in the 1980s.  Charter cannot justify the burden of searching for and reviewing telex messages since this case concerns Charter's infringement of Plaintiffs' copyrights from 2013 to 2016. It is also unlikely that "posts on social media platforms or blogs" would contain relevant information not already publicly available to Charter.  And any limited or tangential relevance of such information would be outweighed by the

4

burden of searching an undefined number of social media and blog sites for, potentially, tens of thousands of current and former employees. Plaintiffs will construe "Communication" to mean oral and written transmittals of information which are reasonably searchable without undue burden to Plaintiffs, and likely to contain relevant information not already available to Charter.

10. Plaintiffs object to the definition of "Electronic Storage Device" as overbroad, unduly burdensome, and disproportionate to the needs of the case. For example, the definition includes "SIM cards," which are small integrated circuits designed to authenticate subscribers on cellphone networks. There is no reason to believe that SIM cards contain unique information that would justify the burden of locating and extracting data from, potentially, tens of thousands of cards. Plaintiffs will construe "Electronic Storage Device" to mean those electronic repositories likely to contain relevant information, from which data can be reasonably extracted without undue burden to Plaintiffs.

11. Plaintiffs object to the definition of "Residential ISP Customer" as overbroad, unduly burdensome, and disproportionate to the needs of the case, in that it encompasses a broad category of persons having no relationship to Charter, the copyrighted works in suit, and/or BitTorrent or other similar peer-to-peer file-sharing networks. Plaintiffs further object to Charter's definition of "Residential ISP Customer" because it assumes facts and/or requires knowledge not in Plaintiffs' possession, custody, or control. In addition, to the extent that Charter's interrogatories relating to Residential ISP Customers seek documents or information concerning any "peer-to-peer litigation program," whether "university-specific or corporate," Plaintiffs object on the basis that such interrogatories seek information protected by the attorney-client privilege, attorney work-product doctrine, or joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. Plaintiffs are aware of no documents that could be responsive to such a request that fall outside of the attorney-client privilege or the protection afforded to trial preparation materials under the Federal Rules of Civil Procedure.

12. Plaintiffs object to the definition of "Non-Residential ISP Customer" as overly broad, unduly burdensome, and disproportionate to the needs of the case, in that it encompasses a broad category of persons having no relationship to Charter, the copyrighted works in suit, and/or BitTorrent or other similar peer-to-peer file-sharing networks. Plaintiffs further object to Charter's definition of "Non-Residential ISP Customer" because it assumes facts and/or requires knowledge not in Plaintiffs' possession, custody, or control.  In addition, to the extent that Charter's interrogatories relating to Non-Residential ISP Customers seek documents or information concerning any "peer-to-peer litigation program," whether "university-specific or corporate," Plaintiffs object on the basis that such interrogatories seek information protected by the attorney-client privilege, attorney work-product doctrine, or joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law.  Plaintiffs are aware of no documents that could be responsive to such a request that fall outside of the attorney-client privilege or the protection afforded to trial preparation materials under the Federal Rules of Civil Procedure.

13. Plaintiffs object to the definition of "RIAA" to the extent it encompasses entities, individuals, and information outside of Plaintiffs' knowledge, possession, custody, or control. Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case.  By including "past and present employees" of the RIAA, Charter is requesting that Plaintiffs search for information relating to an unknown number of persons, all of whom are outside of Plaintiffs' control.  Plaintiffs will construe "RIAA" to mean the Recording Industry Association of America itself.

14. Plaintiffs object to the definition of "MarkMonitor" to the extent it encompasses entities, individuals, and information outside of Plaintiffs' knowledge, possession, custody, or control. Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case.  By including "past and present employees" of MarkMonitor, Charter is requesting that Plaintiffs search for information relating to an unknown number of persons, all of

whom are outside of Plaintiffs' control.   Plaintiffs will construe "MarkMonitor" to mean MarkMonitor, Inc. itself.

15. Plaintiffs object to the definition and sub-definitions of "Identify" as overbroad, unduly burdensome, and disproportionate to the needs of this case as set forth below:

    a. Plaintiffs object to the sub-definition under "Document."   The definition requires identification of documents with extensive information from the underlying documents.   For example, if Charter wants to know the "author," "subject matter," "title," "date," and "total number of pages," of particular documents, it should request those documents and review them itself.   Plaintiffs will identify documents by Bates number where applicable or by other reasonable criteria.

    b. Plaintiffs object to the sub-definition under "Communication."  The definition requires identification of communications with extensive information in records of the underlying communications.  For example, if Charter wants a "detailed description of the contents of the Communication," it should request records of the communications and review them itself.  Plaintiffs will identify communications by Bates number where applicable or by other reasonable criteria.

    c. Plaintiffs object to the sub-definition of "copyright" or a "Copyright Work."   The definition requires identification of "any current exclusive licensee," including nonparties that are exclusive licensees of rights not at issue in this suit, *e.g.*, public performance rights.   The only information that is relevant is whether the named Plaintiff for a particular work is an owner or licensee of an exclusive right for that work. Plaintiffs will identify a "copyright," or "Copyright Work," by the name of the work, the artist or author thereof (as applicable), and the Plaintiff entity which is an owner or licensee of an exclusive right for that work.

## OBJECTIONS AND RESPONSES TO CHARTER'S INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all copyrighted works that You claim that Charter's subscribers, account holders, or customers have infringed and for which You seek relief in this litigation.

### OBJECTIONS TO INTERROGATORY NO. 1:

1. Plaintiffs object to the interrogatory as premature because it seeks identification of "all copyrighted works." The full scope of Charter's infringement is not yet known and will be more fully determined during discovery. Plaintiffs reserve the right to rely upon or assert claims regarding Charter's infringement of any of their copyrighted works.

2. Plaintiffs object to the terms "subscribers," "account holders," and "customers," as vague and ambiguous. Charter's use of these three terms implies distinct definitions for each— definitions which Charter has not provided. Plaintiffs interpret these terms as coterminous, meaning Charter subscribers.

3. Plaintiffs object to the interrogatory to the extent it seeks to obtain expert opinions prior to the period for expert discovery or improperly seeks anything other than Plaintiffs' present contentions.

### RESPONSE TO INTERROGATORY NO. 1:

Subject to and without waiving their objections, and pursuant to Fed. R. Civ. P. 33(d), Plaintiffs direct Charter to Exhibits A and B of the Complaint, Dkt. 1. Exhibit A is a representative, non-exhaustive list of sound recordings (identified by title, artist, copyright registration number, and current copyright owner or exclusive licensee) for which Plaintiffs seek relief in this litigation. The sound recordings in Exhibit A represent works infringed by Charter's subscribers, account holders, or customers after those particular subscribers were identified to Charter in multiple infringement notices. Exhibit B is a representative, non-exhaustive list of musical compositions (identified by title, copyright registration number, and current copyright owner or exclusive

licensee) for which Plaintiffs seek relief in this litigation. The musical compositions in Exhibit B represent works infringed by Charter's subscribers, account holders, or customers after those particular subscribers were identified to Charter in multiple infringement notices. Plaintiffs reserve their right to amend Exhibits A and B during the litigation.

## INTERROGATORY NO. 2:

For each work identified in response to Interrogatory No. 1, state on an annual basis for each of the past ten (10) years Your gross and net revenue generated by each work organized by medium and how such gross and net revenue was calculated.

## OBJECTIONS TO INTERROGATORY NO. 2:

1. Plaintiffs object to the interrogatory as premature because it incorporates Interrogatory No. 1, which seeks identification of "all copyrighted works." The full scope of Charter's infringement is not yet known and will be more fully determined during discovery. Plaintiffs reserve the right to rely upon or assert claims regarding Charter's infringement of any of their copyrighted works.

2. Plaintiffs object to the interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. The term "medium" could encompass a wide range of physical products such as vinyl records, cassette tapes, CDs, super audio CDs, DVD audio discs, and Blu-ray audio discs, as well as digital products such as downloads, live streams, and on-demand streams, most of which are irrelevant to this case involving digital downloads. The ten-year time period is also overbroad because it seeks irrelevant information for a number of years prior to and following the infringement period at issue in this case.

3. Plaintiffs object to the interrogatory because Plaintiffs' revenues are not relevant to any claim or defense in suit, particularly on a track-by-track basis. Plaintiffs have elected statutory damages, not actual. And even if actual damages were at issue, revenue generated

by actual sales has no bearing on lost profits caused by Charter's infringement, particularly where the scope of infringement is unknown, as here.

4.  Plaintiffs object to the interrogatory to the extent it seeks revenue information that Plaintiffs do not maintain, or information organized or calculated in a manner that is different from how Plaintiffs maintain, organize or calculate such information in the ordinary course of business.

5.  Plaintiffs object to the interrogatory to the extent it seeks to obtain expert opinions prior to the period for expert discovery or improperly seeks anything other than Plaintiffs' present contentions.

6.  Plaintiffs object to the interrogatory because it contains four distinct topics that should be separately numbered interrogatories: (1) gross revenue; (2) net revenue; (3) the method of calculating gross revenue; and (4) the method of calculating net revenue.

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving their objections, pursuant to Fed. R. Civ. P. 33(d), and upon entry of an appropriate protective order, Plaintiffs will produce documents sufficient to show Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**INTERROGATORY NO. 3:**

Identify the entities that have prepared and/or sent copyright infringement notices to Charter regarding the Copyright Works upon which You will rely in this litigation, including the "representatives" and "others" referenced in paragraph 2 of Your Complaint.

**OBJECTIONS TO INTERROGATORY NO. 3:**

1.  Plaintiffs object to the interrogatory as vague and ambiguous.  In particular, the term "prepared" is unclear since it could mean preparing specific individual notices, drafting general template language, or something else.

2.  Plaintiffs object to the interrogatory as premature because it seeks information regarding "copyright infringement notices to Charter."  However, the full extent of the copyright

infringement notices sent to Charter is not yet known. Many are within Charter's possession, custody, or control, and Plaintiffs are presently seeking them in discovery. Plaintiffs reserve the right to use, rely upon, or assert claims regarding any copyright infringement notices sent to Charter, regardless of the entity that sent them.

**RESPONSE TO INTERROGATORY NO. 3:**

Subject to and without waiving their objections, Plaintiffs state that the RIAA, through MarkMonitor, sent copyright infringement notices to Charter regarding Plaintiffs' works upon which Plaintiffs will rely in this litigation. Plaintiffs further state that they have requested in discovery infringement notices Charter received from other copyright holders from 2010 through 2016 and may rely upon some or all of those notices as well.

**INTERROGATORY NO. 4:**

Identify all of the entities that have performed a technical or qualitative analysis of any entity, procedure, or system utilized to generate the copyright infringement notices upon which You will rely in this litigation, including notices generated by the MarkMonitor system.

**OBJECTIONS TO INTERROGATORY NO. 4**

1. Plaintiffs object to the interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "technical or qualitative analysis of any entity, procedure, or system utilized to generate the copyright infringement notices," is vague and confusing and encompasses significant irrelevant information.

2. Plaintiffs object to the interrogatory to the extent it seeks information from sources or entities not within Plaintiffs' possession, custody, or control.

3. Plaintiffs object to the interrogatory as premature because it seeks information regarding "copyright infringement notices." The full extent of the copyright infringement notices sent to Charter is not yet known. Many are within Charter's possession, custody, or control,

and Plaintiffs are presently seeking them in discovery.  Plaintiffs reserve the right to use, rely upon, or assert claims regarding any copyright infringement notices sent to Charter.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving their objections, Plaintiffs state that they will rely on copyright infringement notices generated by MarkMonitor and sent to Charter.  Plaintiffs have requested in discovery infringement notices Charter received from other copyright holders from 2010 through 2016 and may rely upon some or all of those notices as well.  With respect to MarkMonitor, Plaintiffs understand that Stroz Friedberg and Harbor Labs conducted assessments of certain MarkMonitor systems in connection with the Copyright Alert System.  Plaintiffs are not aware of any entity performing a technical or qualitative analysis of the MarkMonitor system used to generate copyright infringement notices upon which Plaintiffs will rely in this litigation.

**INTERROGATORY NO. 5:**

Identify all of the ISPs with which You, either directly or indirectly, have communicated regarding the CAS, any agreements related to the CAS, and the processing of copyright infringement notices by ISPs.

**OBJECTIONS TO INTERROGATORY NO. 5:**

1. Plaintiffs object to the interrogatory because CAS and Plaintiffs' communications with other ISPs about it are irrelevant.  CAS was a private agreement in which Charter did not participate.  CAS has no bearing on the claims or defenses in suit.  Any communications by Plaintiffs with ISPs other than Charter also have no bearing on Charter's continued provision of internet service to subscribers it knew repeatedly infringed Plaintiffs' copyrights.  Moreover, the identities of the parties to the CAS agreement, including ISPs, are well known publicly, including to Charter.

2. Plaintiffs object to the interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  The phrase "indirectly . . . communicated" has multiple definitions and could encompass, for example, a public report posted on the

internet read by an employee of any ISP, including those outside of the United States. Plaintiffs have no way of knowing the scope of all such "indirect" communications. Likewise, the phrase "any agreements related to the CAS," has multiple definitions and could be read expansively.

3. Plaintiffs object to the interrogatory because it contains two distinct topics that should be separately numbered interrogatories: (1) CAS; and (2) the processing of copyright infringement notices by ISPs.

## INTERROGATORY NO. 6:

State the amount of damages You believe that You are entitled to recover in this litigation, and all factual and legal bases for Your calculation.

## OBJECTIONS TO INTERROGATORY NO. 6:

1. Plaintiffs object to the interrogatory as premature.  A significant amount of information and documents bearing on the subject of damages—including, but not limited to, the nature and extent of Charter's infringement, financial benefits received in connection therewith, and Charter's financial documents—are in the possession, custody or control of Charter and have yet to be produced in discovery.

2. Plaintiffs object to the interrogatory to the extent it seeks legal conclusions or information before the time specified and agreed to by the parties for such disclosure or established by the Court for such disclosure.

3. Plaintiffs object to the interrogatory to the extent it seeks to obtain expert opinions prior to the period for expert discovery or improperly seeks anything other than Plaintiffs' present contentions.

## RESPONSE TO INTERROGATORY NO. 6:

Subject to and without waiving their objections, Plaintiffs state that they have elected to receive statutory damages and, subject to a jury's determination, may be entitled to obtain damages

to the fullest extent of the statutory law applicable to any violation of their rights.  *See* 17 U.S.C. § 504(c).

Further, subject to and without waiving their objections, and pursuant to Fed. R. Civ. P. 33(d), Plaintiffs direct Charter to the Complaint for a non-exhaustive, illustrative recitation of factual allegations upon which Plaintiffs may rely to support their request for damages.  As to legal bases for Plaintiffs' calculation, 17 U.S.C. § 504(c) authorizes a range for statutory damages per work infringed.  Case law concerning the interpretation and application of 17 U.S.C. § 504(c) describes the purposes of statutory damages and considerations for a jury.

**INTERROGATORY NO. 7:**

Describe in detail Your practice and policy regarding monitoring and/or sending notices of copyright infringement to ISP customers, including without limitation the procedures employed by MarkMonitor or any other notice program at issue in this case.

**OBJECTIONS TO INTERROGATORY NO. 7:**

1. Plaintiffs object to the interrogatory because it is vague, ambiguous, overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information not relevant to any of the issues in the action.  For example, the interrogatory seeks information unrelated to Charter, the copyrighted works in suit, the use of BitTorrent or similar peer-to-peer file-sharing networks, and/or Plaintiffs' claim period.  Additionally, the terms "practice and policy" are ambiguous in that they could be subject to multiple interpretations.

2. Plaintiffs object to the interrogatory to the extent it seeks information from sources or entities not within Plaintiffs' possession, custody, or control.

3. Plaintiffs object to the interrogatory because it seeks irrelevant information to the extent it calls for information outside the context of Plaintiffs' notice program that generated the infringement notices sent to Charter and on which Plaintiffs will rely in this litigation.  Plaintiffs limit their response below accordingly.

14

**RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving their objections, Plaintiffs state that the RIAA was authorized by the Sony Music Plaintiffs, Warner Music Plaintiffs, and UMG Plaintiffs (as defined and listed as the "Record Company Plaintiffs" in Appendix I to Plaintiffs' Initial Disclosures, served June 6, 2019) to conduct certain antipiracy activities, including sending copyright infringement notices to ISPs concerning certain copyrighted works. The RIAA contracted with MarkMonitor to monitor online infringement of certain of such Plaintiffs' copyrighted works and send notices of copyright infringement to ISPs, including Charter. Those confidential agreements between non-party RIAA and non-party MarkMonitor generally describe the process by which MarkMonitor conducted those activities.

**INTERROGATORY NO. 8:**

Identify any method, system, practice, policy, or procedure by which You, including any agent acting on your behalf, at any time, distinguished between Residential ISP Customers and Non- Residential ISP Customers, including whether it has changed over time.

**OBJECTIONS TO INTERROGATORY NO. 8:**

1. Plaintiffs object to the interrogatory because it is vague, ambiguous, overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information not relevant to any of the issues in the action. For example, the interrogatory seeks information unrelated to copyright infringement, the use of BitTorrent or similar peer-to-peer file-sharing networks, the copyrighted works in suit, and/or Plaintiffs' claim period. Further, the defined terms "Residential ISP Customers" and "Non-Residential ISP Customers" encompass broad categories of persons having no relationship to Charter or this lawsuit. The term "agent" similarly encompasses a broad category of persons having no relationship to Charter or this lawsuit. Further, the term "distinguished" is vague and ambiguous in that it does not specify the basis upon which any such distinction would be made.

2.   Plaintiffs object to the interrogatory to the extent it seeks information from sources or entities not within Plaintiffs' possession, custody, or control.

3.   Plaintiffs object to the interrogatory because it seeks irrelevant information to the extent it calls for information outside the context of Plaintiffs' notice program that generated the infringement notices sent to Charter and on which Plaintiffs will rely in this litigation. Plaintiffs limit their response below accordingly.

**RESPONSE TO INTERROGATORY NO. 8:**

Subject to and without waiving their objections, Plaintiffs state that the RIAA was authorized by the Sony Music Plaintiffs, Warner Music Plaintiffs, and UMG Plaintiffs (as defined and listed as the "Record Company Plaintiffs" in Appendix I to Plaintiffs' Initial Disclosures, served June 6, 2019) to conduct certain antipiracy activities, including sending copyright infringement notices to ISPs concerning certain copyrighted works. The RIAA contracted with MarkMonitor to monitor online infringement of certain of such Plaintiffs' copyrighted works and send notices of copyright infringement to ISPs, including Charter. Those confidential agreements between non-party RIAA and non-party MarkMonitor generally describe the process by which MarkMonitor conducted those activities.

**INTERROGATORY NO. 9:**

Identify each Charter customer that You, the RIAA, or MarkMonitor learned was a Non-Residential ISP Customer.

**OBJECTIONS TO INTERROGATORY NO. 9:**

1.   Plaintiffs object to the interrogatory because it is vague, ambiguous, overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information not relevant to any of the issues in the action. For example, the interrogatory seeks information unrelated to Plaintiffs, copyright infringement, the use of BitTorrent or similar peer-to-peer file-sharing networks, the copyrighted works in suit, and/or Plaintiffs' claim period. In addition, whether Plaintiffs or any other party has "learned" whether a Charter customer is

a "Non-Residential ISP Customer" is subject to multiple and expansive interpretations and has no relevance to any issue in this case.

2. Plaintiffs object to the interrogatory to the extent it seeks information from sources or entities not within Plaintiffs' possession, custody, or control.

3. Plaintiffs object to the interrogatory because it contains three distinct topics (relating to (i) Plaintiffs; (ii) the RIAA; and (iii) MarkMonitor) that should be separately numbered interrogatories.

**RESPONSE TO INTERROGATORY NO. 9:**

Subject to and without waiving their objections, Plaintiffs state that "Residential ISP Customers" versus "Non-Residential ISP Customers" appears to be a distinction of Charter's own creation, apparently used to categorize different segments of its customers. Notwithstanding, Plaintiffs further state that the RIAA was authorized by the Sony Music Plaintiffs, Warner Music Plaintiffs, and UMG Plaintiffs (as defined and listed as the "Record Company Plaintiffs" in Appendix I to Plaintiffs' Initial Disclosures, served June 6, 2019) to conduct certain antipiracy activities, including sending copyright infringement notices to ISPs concerning certain copyrighted works. The RIAA contracted with MarkMonitor to monitor online infringement of certain of such Plaintiffs' copyrighted works and send notices of copyright infringement to ISPs, including Charter. Those confidential agreements between non-party RIAA and non-party MarkMonitor generally describe the process by which MarkMonitor conducted those activities.

**INTERROGATORY NO. 10:**

For each registered work-in-suit that is a compilation (*e.g.*, an album) and which You allege has been infringed, state whether You intend to seek statutory damages once for the registered collective work (or compilation), or for each song or title that is a part of the registered collective work or compilation.

**OBJECTIONS TO INTERROGATORY NO. 10:**

1. Plaintiffs object to the interrogatory as premature in that it seeks information before the time specified and agreed to by the parties for such disclosure or established by the Court for such disclosure.

2. Plaintiffs object to the interrogatory to the extent it seeks legal conclusions and/or to obtain expert opinions prior to the period for expert discovery or improperly seeks anything other than Plaintiffs' present contentions.

3. Plaintiffs also object to this interrogatory because it is vague and ambiguous.

**RESPONSE TO INTERROGATORY NO. 10:**

Subject to and without waiving their objections, Plaintiffs state that they intend to seek statutory damages, within the range permitted under 17 U.S.C. § 504(c) and subject to a jury's determination, for the registered works identified in Exhibits A and B to the Complaint.

**INTERROGATORY NO. 3 [sic] [11]:**

Explain all of the factual bases known to You to date and upon which You intend to rely for any allegation that Charter is or is not entitled to the Safe Harbor under the Digital Millennium Copyright Act, 17 U.S.C. § 512.

**OBJECTIONS TO INTERROGATORY NO. 11:**

1. Plaintiffs object to the interrogatory as premature.  A significant amount of information and documents bearing on the subject of the Safe Harbor under the Digital Millennium Copyright Act, 17 U.S.C. §512, is in the possession, custody, or control of Charter and has yet to be produced in discovery.

2. Plaintiffs object to the interrogatory to the extent it seeks legal conclusions or information before the time specified and agreed to by the parties for such disclosure or established by the Court for such disclosure.

3. Plaintiffs object to the interrogatory to the extent it seeks to obtain expert opinions prior to the period for expert discovery or improperly seeks anything other than Plaintiffs' present contentions.

4. Plaintiffs object to the interrogatory on the grounds that it is a contention interrogatory, which is appropriate, if at all, only at the conclusion of discovery.

**RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving their objections, and pursuant to Fed. R. Civ. P. 33(d), Plaintiffs direct Charter to the Complaint for a non-exhaustive, illustrative recitation of factual allegations upon which Plaintiffs may rely to support an allegation that Charter is not entitled to the Safe Harbor under the Digital Millennium Copyright Ac, 17 U.S.C. § 512. Plaintiffs further direct Charter to the documents it will produce in response to Charter's Requests for Production Nos. 27-33, 35-36, 50, 55, 59, and 82.

**INTERROGATORY NO. 12:**

Identify any and all persons with information that is referred to, relates to, supports, or refutes the allegations of the Complaint, and state with specificity the knowledge of each such person.

**OBJECTIONS TO INTERROGATORY NO. 12:**

1. Plaintiffs object to the interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. The phrase "with information that is referred to, relates to, supports, or refutes the allegations," is subject to multiple and expansive interpretations. The facts alleged could include the location of a particular Plaintiff's principal place of business, the name of any of the thousands of works listed in Exhibits A or B to the Complaint, a Plaintiff's finances generally, or anything to do with the creation, production, or sale of Plaintiffs' music. Plaintiffs are 55 companies employing tens of thousands of persons worldwide, the majority of whom would have knowledge regarding at least some facts in the Complaint. For that reason, Plaintiffs object to the extent it seeks

the identity of persons on irrelevant topics. Accordingly, the burden of responding outweighs the relevance of the names that would be listed in response.

**RESPONSE TO INTERROGATORY NO. 12:**

Notwithstanding their objections and without waiving them, pursuant to Fed. R. Civ. P. 33(d), Plaintiffs direct Charter to their Fed. R. Civ. P. 26(a)(1) disclosures, served June 6, 2019.

Dated: July 25, 2019

*/s/ Neema T. Sahni*
Mitchell A. Kamin
Neema T. Sahni
Mark Chen
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
mychen@cov.com

Jonathan M. Sperling
William O'Neill
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
woneil@cov.com

Megan M. O'Neill
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
moneill@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

20

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone:  (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 25, 2019, a true and correct copy of the foregoing was served on counsel for the parties of record.

*/s/ Neema T. Sahni*
Neema T. Sahni