**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER BROS. RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

Civil Action No.  19-cv-00874-RBJ-MEH

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S [PROPOSED] REPLY BRIEF IN SUPPORT OF ITS OBJECTION TO RECOMMENDATION BY MAGISTRATE JUDGE TO DENY CHARTER'S MOTION TO DISMISS PLAINTIFFS' CLAIM FOR VICARIOUS LIABILITY**

---

Defendant Charter Communications, Inc. ("Charter"), by and through its attorneys Fairfield and Woods, P.C. and Winston & Strawn LLP, hereby submits its Reply Brief ("Reply") in support of its Objection to the October 21, 2019 Recommendation by Magistrate Judge Hegarty (Obj. (Dkt. 82-1)) to deny Charter's motion to dismiss Plaintiffs' claim for vicarious liability (the "Recommendation").

Though the Recommendation does not mention the case, Plaintiffs' Response to Charter's Objections (Dkt. 87) relies heavily on *Capitol Records, LLC v. Escape Media Grp.*, 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015) ("*Escape"*)—citing it six separate times. The facts here are a far cry from *Escape*.  As a preliminary matter, in *Escape*, the defendant hosted the infringing content, which resided on its servers.  *Id.* at *43.  Here, Charter does not host any of the

1

allegedly infringing content. Charter provides only a pipe to access the internet; it does not control what its customers do on the internet. There are no allegations to suggest otherwise.

Further, in *Escape,* the defendant advertised its "library" of *largely unauthorized content*, and accordingly, the court found that:

> the infringing content is a substantial draw to Grooveshark.com, as demonstrated by the fact that approximately 84.5% of the website's streams are of works belonging to major labels with whom Escape has no license. Approximately 80% of Escape's revenue is derived from website advertisements, and the more visitors Grooveshark attracts, the more advertising revenue Escape will earn.

*Id.*

There is no allegation here that Charter promoted or advertised any *infringing* content (let alone a massive library of mostly (85%) infringing content, as in *Escape*). *Id.* There are also no allegations of any scheme where Charter's advertising revenue increases through more visitors seeking out a massive infringing library as in *Escape*. Advertising fast download speeds for music content generally, which is widely available from authorized sources, cannot be equated with advertising the availability of largely *infringing* content.

Plaintiffs also omit that *Escape* notes that a direct financial benefit should be an "*obvious and direct financial interest in the exploitation of copyrighted materials*" which is nowhere alleged in this case. *Id.* at *41. While Plaintiffs cite their allegation that "online copyright infringement is pervasive, accounting for 11% of all Internet traffic in 2011" (Res. at 10 (Dkt. 87)), that is a stale statistic from before the claim period (2013-2016), before the proliferation of legal channels to download copyrighted music. And even if presumed true, that allegation has nothing to do with content hosted or promoted by Charter, and nothing close to the offerings of 85% infringing content in Grooveshark and 90%+ infringing content in Napster. *Ellison v. Robertson,* 357 F.3d 1072, 1078 (2004); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) ("*Napster*

2

*II*") (finding draw where "virtually all of Napster's 'draw' of customers resulted from Napster's providing access to infringing material.").

While Plaintiffs insist that *Ellison* supports their claims, the *Ellison* court rejected the vicarious liability claim as a matter of law. In *Ellison,* the plaintiff alleged that infringing copies of his works had appeared in defendant AOL's peer-to-peer newsgroup USENET server. *Id.* at 1074-75. The *Ellison* court found the plaintiffs' theory of a financial draw to be "hardly compelling," which was: (i) the importance AOL placed on attracting and retaining subscribers for its business and revenue generation and (ii) that users had complained to AOL to block the USENET system through which the allegedly infringing content was accessed. *Id.* at 1079. Plaintiffs' allegations here that Charter seeks to attract and retain its subscribers for revenues, and has not responded to Plaintiffs' complaints by blocking or terminating internet access of accused subscribers, are similar to the theory soundly rejected in *Ellison,* and likewise "hardly compelling" to satisfy the financial draw prong for vicarious liability here.

The *Ellison* court found it would have been necessary to show that AOL customers *either subscribed because of* the available infringing material *or canceled subscriptions because it was no longer available*. *Id.* Here, Plaintiffs do not allege either of those circumstances at all, let alone in a non-conclusory fashion. (Charter's Obj. at Rec. (Dkt. 82-1 at pp. 3-4).) Plaintiffs have alleged no plausible, causal allegation of "draw" in the Complaint, which cannot be satisfied through Plaintiffs' characterization of their allegations in their Opposition to Charter's motion to dismiss (which Magistrate Judge Hegarty assumed in his Recommendation were actually alleged in the Complaint).

Tellingly, Plaintiffs' Opposition does not even respond to Charter's discussion that:

> Congress cautions courts that 'receiving a one-time set-up fee and flat periodic payments for service ... [ordinarily] would not constitute receiving a 'financial benefit directly attributable to the infringing activity.' 'S. Rep. 105–190, at 44. But 'where the value of the service lies in providing access to infringing material,' courts might find such 'one-time set-up and flat periodic' fees to constitute a direct financial benefit. *Id*. at 44–45.

The defendants in *Napster II* and other defendants that have been found vicariously liable hosted infringing content on their servers and/or had some other financial benefit besides a "one-time set-up and flat periodic fees." Plaintiffs allege nothing similar here.[1]

As set forth in Charter's motion (Dkt. 38), Objections (Dkt. 82-1), and reply (Dkt. 90-1), Charter's motion to dismiss the vicarious liability claim for failing to properly allege any financial draw should be granted.

Respectfully submitted this 2nd day of December, 2019.

By: /s/ *Erin R. Ranahan*
Erin R. Ranahan
Shilpa A. Coorg
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, California 90071
Phone: 213.615.1700
Fax: 213.615.1750
E-mail: eranahan@winston.com
E-mail: scoorg@winston.com

---

[1] Plaintiffs further repeatedly note that the vicarious liability claim survived summary judgment in the pending *Cox* case (though vicarious liability was decided *against* the plaintiffs in the prior *Cox* case); *see BMG Rights Management (US) LLC v. Cox Commc'n, Inc.*, 149 F. Supp. 3d 634 (E.D. Va. 2015). But the summary judgment order referenced does not contain any analysis of the vicarious liability claim. Thus, it is unclear what allegations or evidence the Court may have relied upon, as there is no basis for the finding in the record except that like many other issues, the Court is letting the jury decide.

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
Phone: 212.294.6700
Fax: 212.294.4700
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
Phone: 415.591.1000
Fax: 415.591.1400
E-mail: jgolinveaux@winston.com

Craig D. Joyce
John M. Tanner
FAIRFIELD AND WOODS, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
Phone: 303.830.2400
Fax: 303.830.1033
E-mail: cjoyce@fwlaw.com
E-mail: jtanner@fwlaw.com

*Counsel for Defendant
Charter Communications, Inc.*

5