## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER BROS. RECORDS INC., *et al*., | |
| Plaintiffs, | |
| v. | **Civil Action No.  19-cv-00874-RBJ-MEH** |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION AND MEMORANDUM IN SUPPORT TO AMEND THE SCHEDULING ORDER

Defendant Charter Communications, Inc. ("Charter"), by and through its attorneys Winston & Strawn LLP and Fairfield and Woods, P.C., respectfully moves the Court, in accordance with Fed. R. Civ. P. 16(b)(4) and Section 13 of the Scheduling Order, to extend the dates set in the June 13, 2019 Scheduling Order (ECF No. 44) and the Court's Order Modifying the Scheduling Order (ECF No. 79), as detailed herein.  Charter also moves to amend the trial preparation conference and trial date which were set by the Court's July 8, 2019 Order (ECF No. 51).

### CERTIFICATE OF CONFERENCE WITH COUNSEL

Pursuant to D.C.Colo.LCiv.R. 7.1(a), counsel for Charter contacted counsel for Plaintiffs to confer in good faith regarding this motion several times. *See* Declaration of Erin R. Ranahan ("Ranahan Affid.") at ¶22 and Exs. 10, 12, 20, 21. Both parties agree that the Scheduling Order should be modified, but have not agreed on the dates.

## I.    INTRODUCTION

Charter seeks reasonable adjustments to the case schedule for this complex case so that the parties have sufficient time to complete appropriate party and third-party fact and expert discovery, before dispositive motions and trial.  Plaintiffs, who are more than sixty separate parties representing both publishers and record companies in the music industry, are seeking statutory damages of well over a billion dollars in this lawsuit.  Despite seeking these windfall statutory damages, and making substantial amendments to their complaint just this month, altering the parties to the case and works-in-suit, Plaintiffs are pressing for a schedule that would not allow Charter the opportunity to meaningfully investigate and gather evidence to defend against Plaintiffs' astronomical claims.

Given the complexity of the legal and technical issues in this case, the high number of parties, and the magnitude of the potential statutory damages claims, Charter seeks to move the close of fact discovery to early 2021, expert deadlines to mid-2021, and trial to late 2021.  After obtaining an extension to amend their pleadings, Plaintiffs' amended their Complaint and the exhibits to the Complaint just last week, adding nearly a dozen new parties and amending hundreds of the works-in-suit. This means that this case is still in the early pleading stages.

Moreover, Plaintiffs and essential third-parties have a substantial amount of discovery outstanding despite Charter's attempts to resolve these issues promptly.  There are ongoing discovery disputes that will not only require additional time to work out and resolve, but Plaintiffs have indicated that their own production will take substantial time. Nevertheless, Plaintiffs have indicated that they will only agree to a modest extension that would run the clock on Charter's discovery efforts. For the reasons discussed herein, Charter respectfully requests that the Court

amend the pretrial and trial schedule to set trial in late 2021, set discovery in early 2021, and adjust the remaining dates accordingly.

## II.    FACTUAL BACKGROUND

### A.    This Action

Plaintiffs, a large group of record labels and music publishers, regularly initiate massive copyright litigation alleging the unauthorized distribution of their works and seeking windfall statutory damages.  Plaintiffs commenced this action on March 22, 2019 naming 55 individual Plaintiffs. Plaintiffs recently amended the Complaint to add *eleven new Plaintiffs*, making the total count 66.  These 66 separate Plaintiffs collectively assert a total of roughly 11,000 works in this case. Because each individual work-in-suit can lead to a statutory damages award as high as $150,000 per work, this constitutes a potential award of $1,654,050,000 in statutory damages.

Plaintiffs assume that alleged acts of infringement are committed by the account holder who subscribed to Charter's services when in fact it is often other household members, visitors, neighbors or people who have accessed the subscriber's service in an unauthorized manner—or, in the case of commercial accounts, those who use the service without having decision-making authority.  Further complicating matters, many accounts are paid for by businesses, schools, libraries, military facilities, or the decision-maker in a family, who most times is not the same person responsible for the conduct alleged in the infringement notice.

Based upon Charter's provision of internet access to business and residential subscribers, Plaintiffs assert two claims of secondary liability for copyright infringement against Charter—contributory infringement and vicarious liability, each having separate and distinct elements. Each claim will require that Plaintiffs prove the predicate underlying direct infringement of their over

11,000 separate alleged copyrighted works-in-suit. In addition, contributory infringement will require Plaintiffs to prove that with actual knowledge of its subscribers' alleged infringement, Charter caused or materially contributed to those infringements. Separately, to establish vicarious liability Plaintiffs will have to prove that Charter received a direct financial benefit from infringement that it had both a right and practical ability to control.

Third-parties are also critical to Plaintiffs' claims. Plaintiffs relied on a third party, MarkMonitor, to detect the alleged infringements, using complex fingerprinting technologies provided by another third party, Audible Magic. Plaintiffs heavily relied upon another third party, the RIAA, to coordinate the efforts with MarkMonitor and Audible Magic, and to send notices to Charter of the alleged infringement. Thus, third-party discovery is a critical element in this case.

**B.      The State of the Initial Pleadings**

Plaintiffs should have known what they were suing about, and on whose behalf they were suing, before filing suit. Yet in October 2019—nearly seven months after filing this action—Plaintiffs sought and obtained leave of Court to modify the case schedule to extend the deadline to amend the pleadings by more than two months, until January 2020. Just last month, on January 6, 2020, Plaintiffs filed a motion to amend the complaint to add new parties. *See* ECF No. 109. The Court granted Plaintiffs' motion to amend the Complaint, which increased the total number of Plaintiffs from 55 to 66. Separately, Plaintiffs moved to file amend the exhibits to their Complaint that identified the works-in-suit on January 15, 2020. *See* ECF No. 111. The Court granted Plaintiffs' motion and the amended exhibits were filed just five days ago, on February 14, 2020, significantly altering the works-in-suit.

As explained in Charter's Response to Plaintiffs' Request to Amend the Complaint, given

the new Plaintiffs and modifications to the alleged works, Charter "intends to seek appropriate adjustments to the case schedule, and is currently working with Plaintiffs in an attempt to submit an agreed-to extension of the current pre-trial deadlines and trial dates." ECF No. 112 at 2.

      **C.**     **The Pending, Similar Action Plaintiffs Have Filed Against Bright House**

During the same period for which Plaintiffs have sued Charter here, Bright House Networks ("BHN") operated in the southeast United States providing cable, internet and other services to residential and business consumers. Since merging with Charter on May 18, 2016, BHN is now a subsidiary of Charter Communications, Inc. and a legacy company that no longer operates as a standalone business.  Rather than simply sue Charter, Plaintiffs chose to sue Charter in Colorado and bring a separate suit against the now-defunct entity, BHN, in the Middle District of Florida. *See UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, Case No. 8:19-cv-710-MSS-TGW (M.D. Fla.) (*"UMG v. BHN"*)

In *UMG v. BHN*, which is currently pending, the Court has ordered Plaintiffs to produce by March 9, 2020, complete ownership information for the more than 7,000 works at issue in that case, and licensing agreements covering the works in suit, and related information concerning the value of the works at issue in that suit, each key categories of documents that will allow BHN to test Plaintiffs' claims of ownership and damages. Charter has requested that the Court deem discovery produced by Plaintiffs in *UMG v. BHN* available for use in this case, to the extent that production covers the same works at issue here.  The information is set to be produced in *UMG v. BHN* by the same Plaintiffs, by and to the same counsel to what is effectively the same party (as Bright House is now a part of Charter)—for the very same claim period (March 2013 through May 2016).

But when discussing these deadlines in *UMG v. BHN*, Plaintiffs' counsel made clear that they did not believe they could comply with the 60-day deadline set for production in that case, and would likely need more time.  During the January 8, 2020 hearing in that case, Charter proposed a 30-day deadline for BHN to produce information that was subject to the Court's Order. *See* Ranahan Aff., Ex. 14 (Jan. 8, 2020 Hr'g Tr. at 137:1-17). Plaintiffs' counsel, however, indicated that Plaintiffs needed "as much time as" Plaintiffs "can get." *Id.* at 138:3-8 (Court: "So what's the proposal for whatever you all have to produce? MR. GOULD: I'd like as much time as I can get, Your Honor, 60 days.")

With respect to basic ownership documents, and in particular work-for-hire agreements, Plaintiffs' counsel noted that "even if you said 60 days at this point, I must tell you, I don't think we could do that." *Id.* at 145:22-24. The Court indicated that it would set a 60-day deadline for that, but Plaintiffs indicated they would come back to the Court "as necessary on that 60 days." *Id.* at 146:1-11.

## D. Discovery Disputes and Delays

Charter served its first set of document requests on June 25, 2019 and Plaintiffs served their written responses on July 25, 2019.  *See* Ranahan Aff., Exs. 1-2. On August 27, 2019, Charter's counsel sent Plaintiffs' counsel a letter regarding deficiencies in the responses, and the parties met and conferred in an unsuccessful attempt to narrow the issues.  *See id.* at Ex. 5.  Plaintiffs stood on their objections, prompting Charter to seek the Court's assistance.

After the parties engaged in extensive meet and confer efforts, it became clear that Plaintiffs would not agree to produce basic ownership and financial documentation, and other basic information and Charter sought permission to file a motion to compel.  The parties held a pre-

motion conference with Magistrate Judge Hegarty on October 29, 2019.[1]

### 1. Ownership Sample and Additional Ownership Production

During the October 29, 2019 teleconference, before reviewing any briefing on the issues, the Court heard extensive argument about what ownership information sought by Charter should be produced in this case. *See* Ranahan Affid., Ex. 8 (Oct. 29, 2019 Hr'g Tr. at 25:3-46:19). After considering multiple potential options, the Court ruled that as a preliminary step, Plaintiffs would be ordered to produce the ownership documents sought by Charter for a 1% sample of the works-in-suit. *Id.* at 40:11-16. On December 12, 2019, Charter sent a letter identifying the sample, and asking that Plaintiffs agree to provide it by December 30, 2019 in light of the current discovery schedule, with fact discovery set to close in March 31, 2020. *See* Ranahan Affid., Ex. 21.

Plaintiffs responded to that letter on December 13, 2019, indicating they would need more time, but were "willing to discuss" "modifications" to the case schedule given the timing issues with respect to Plaintiffs' ownership production. *See* Ranahan Affid., Ex. 12.

When Charter asked Plaintiffs to agree to provide their 1% sample production by early January 2020, Plaintiffs resisted, using their delayed amendments as an excuse. *See* Ranahan Affid., Ex. 13 (Dec. 17, 2019 Hr'g Tr. 107:2-6) (Plaintiffs' Counsel: "I also want to flag that there are two important deadlines in January, including our deadline to add plaintiffs to the case and our deadline to amend the exhibits, the works in suit. It simply doesn't make sense for us to have to produce chain of title information, you know, until after that point.") Ultimately, Plaintiffs asked the Court for until the end of January 2020 to make just 1% of the ownership sample production—

---

[1] Both parties recently served new discovery requests, which will require investigation and negotiation, and potentially court assistance in resolving.

a timeframe that if extrapolated across all of the works-in-suit would take more than a dozen years. *Id.* at 106:4-24.

During the December 17, 2019 hearing, the Court ordered Plaintiffs to produce the ownership documents for the 1% sample by January 27, 2020, at which point the Court would revisit the issue of a full ownership production if there was a "statistically significant" percentage of works for which Plaintiffs could not prove ownership in that sample. *Id.* at 35:8-11, 40:11-16; 106:20-112:5-6. With respect to the schedule, Magistrate Judge Hegarty noted that while it may be "technically true" that the discovery deadline was set to close in March 2019, it was "looking very unlikely." *Id.* at 109:21-25.

Plaintiffs failed to comply with the January 27, 2020 deadline for the 1% sample. Instead, they wrote to Magistrate Judge Hegarty on January 23, 2020, noting that they needed an extra week, or until February 3, 2020, to comply. *See* Ranahan Affid., Ex. 15. They also noted that they would have to order registration certificates from the Copyright Office, so would not be able to produce those any time soon either, and had "no control" over when that production would be possible. *Id.* at note 1. Plaintiffs continued to make ownership productions with respect to the sample even after February 3 and after the parties submitted statements about the sample production in preparation for the February 19, 2020 hearing. *See* Ranahan Affid., Exs. 22 and 23.

### 2. Digital Copies of the Works-in-Suit

Charter originally intended to move to compel the digital copies of the works-in-suit, but after Plaintiffs changed their initial refusal and agreed to produce them, Charter attempted to work with Plaintiffs to secure a deadline for their production. Plaintiffs argued that the digital copies should be produced on a rolling basis without a specified, agreed-upon date of production. *See*

Ranahan Affid., Exs. 6, 7, and 9.

On November 7, 2019, Charter's counsel proposed that the parties agree to a mutual deadline of December 2019 to attempt to substantially complete the parties' respective productions. *See* Ranahan Affid., Ex. 10.   Plaintiffs never responded to that proposal nor did they provide any alternative date. In fact, to date Plaintiffs have refused to agree to any mutual deadlines in connection with document productions.  Instead, when Charter attempted to secure an agreement with Plaintiffs about a deadline for producing the digital copies of the works-in-suit that were previously subject to a motion to compel—Plaintiffs refused to agree to any deadline, insisting that:

> we intend to work diligently to produce those materials in accordance with our discovery obligations. Beyond that, we see no reason -- and you have not articulated any basis -- for why this category of materials should be treated any differently from all other documents or categories of documents that the parties will be producing to one another on a rolling basis, and for which there is no requirement that either party specify a date certain for production.

*See* Ranahan Affid., Ex. 9. Similarly, at the December 17, 2019 hearing, Plaintiffs refused to state when they could produce the digital works-in-suit. *See* Ranahan Affid., Ex. 13 (Dec. 17, 2019 Hr'g Tr. 122:18-23).  When the Court asked Plaintiffs during the December 17, 2019 hearing when they could produce them, Plaintiffs again avoided committing to a date. *Id.* at 122:18-23 (The Court: So why don't you just give a guess, approximate. You just said end of January. Ms. Sahni: I think it would probably be around the end of January. It's just, again there are things out of our control.").

Though the Court asked Plaintiffs to produce digital copies of the works-in-suit by January 27, 2020, Plaintiffs missed and unilaterally extended this deadline, sending a letter to the Court just two business days before this deadline, indicating that they would need until March 16, 2020

to complete the production. *See* Ranahan Affid., Ex. 15.[2]  This, despite the fact that expert reports are currently due *before* that, on March 13, 2020, and Charter made clear it would need these digital copies, and copies of the corresponding alleged infringements (which have yet to be produced) for its experts to analyze.  The current schedule does not allow it.

### 3.  Financial Production

During the October 29, 2019 teleconference, Magistrate Judge Hegarty was initially reluctant to require Plaintiffs to produce any financial records beyond what they agreed to produce in their Objections and Responses, based on Plaintiffs' counsel's representations that Plaintiffs do not maintain financial information on a per-work basis. *See* Ranahan Affid., Ex. 8 (Oct. 29, 2019 Hr'g Tr. at 7:5-12; 12:8-22; 16:18-20) (N. Sahni: "And here, they are asking for revenue, profits, expenses and much of which, as I mentioned, we don't maintain in that form.").  Magistrate Judge Hegarty initially accepted the representation of Plaintiffs' counsel and suggested Charter first take depositions to determine what information was available and revisit the issue with him as needed. *Id.*  Charter's counsel informed Magistrate Judge Hegarty that Plaintiffs had, in fact, already produced much of this per-work financial information in the *Cox* litigation, contrary to Plaintiffs' representations. *Id.* at 5:4-8; 6:2-6.  Plaintiffs acknowledged this, but shifted then to complaining about the burden of having gathered such per-work financial information. *Id.* at 7:13-16.

Magistrate Judge Hegarty agreed financial information was relevant and discoverable, noting he could "see somebody standing up in front of a jury and saying . . . plaintiffs are asking for $500 million in this case when – for these works when . . . their total profit for this time period

---

[2] Notably Charter did not object to extending the January 27, 2020 production deadline and February 12, 2020 hearing date, as long as the overall case schedule was extended to accommodate the subsequent productions and review. *See* Ranahan Affid., Ex. 17.

was barely twice that for everything they do," and agreed to allow Charter to use the financial information produced in the *Cox* litigation with respect to the same works-in-suit.  Ranahan Affid., Ex. 8 (Oct. 29, 2019 Hr'g Tr. at 21:17-24:25.)  Plaintiffs were ordered in *Cox* to produce their track-by-track revenue. Plaintiffs have yet to produce these documents.

During the December 17, 2019 hearing, Plaintiffs' counsel represented to the Court that they would be making a financial production that week. *See* Ranahan Affid., Ex. 13 (Dec. 17, 2020 Hr'g Tr. 126:19-21) ("Ms. Sahni: We'll be producing what you ordered us to produce this week, and I'm not sure why we have to talk about it."). But Plaintiffs' counsel subsequently indicated to Charter's counsel that they would be delaying that production, at least until after the amendments were complete.

On November 13, 2019, Charter objected to certain aspects of the Court's order following the conference. *See* ECF No. 85.  Those objections remain pending.

### 4. Additional Outstanding Discovery

Plaintiffs have also skirted every attempt Charter has made to schedule deadlines for discovery productions and, when dates have been set, have missed nearly every one, significantly delaying discovery. To date, Plaintiffs' discovery production has been entirely deficient. *See* Ranahan Affid., Exs. 3, 4, 21, and 23.  The requests for which not a single responsive document has yet been produced include:

- Studies/reports regarding the effect of copyright infringement and/or use of peer-to-peer technologies. Plaintiffs have agreed to produce these documents responsive at least to Charter Request for Production Nos. 22, 23, 24, and 25. Plaintiffs have not produced these documents.

- Documents concerning Charter's abuse tracking system. Plaintiffs have agreed to produce documents responsive to at least Charter Request for Production No. 50. Plaintiffs have not produced these documents.

- Documents concerning the reliability of MarkMonitor's System. Plaintiffs have agreed to produce documents responsive at least to Charter Request for Production No. 66. Plaintiffs have not produced these documents

- Documents concerning entities that prepared or sent copyright infringement notices. Plaintiffs have agreed to produce documents responsive at least to Charter's Request for Production Nos. 53, 62, 63, 64, 65. Plaintiffs have not produced these documents.

- Documents concerning the use of Audible Magic's technology to identify infringements. Plaintiffs have agreed to produce documents responsive at least to Charter Request for Production No. 84. Plaintiffs have not produced these documents.

- Documents concerning opinions of infringement by Charter and/or its subscribers. Plaintiffs have agreed to produce documents responsive at least to Charter Request for Production No. 34. Plaintiffs have not produced these documents.

*See* Ranahan Affid., Ex. 4.  Plaintiffs have still not provided any commitment as to when they will make these productions. Charter is concerned that Plaintiffs will tactically delay their productions for so long that Charter will have inadequate time to review the data and prepare for and take depositions. Charter expressed its concerns in its February 11 and 12, 2020 letters to Plaintiffs' counsel outlining Plaintiffs' discovery delays and deficiencies. *See* Ranahan Affid., Exs. 3 and 4.

There have also been a number of deficiencies with the productions Plaintiffs have made, as detailed in Charter's Statement of Issues for the February 19, 2020 hearing. *See* Ranahan Affid.,

Ex. 22.  Notably, Charter has already identified deficiencies with respect to at least 36 works from the 110-work chain of title sample, which is over 30% of the sample. *See id*. There are a statistically significant number of defects with respect to the sample works sufficient to warrant production of chain of title documents for each of the works in suit. *See* Oct. 29, 2019 Tr. at 40:13-16 (previously holding that further discovery may be ordered if is "a statistically significant amount that cannot be proven to be owned by the plaintiffs"). As further detailed in Charter's February 12, 2020 letter to Plaintiffs, there are several categories of documents for which no emails have been produced. *See* Ranahan Affid., Ex. 3.

### E.   Charter Seeks to Reach Consensus with Plaintiffs on the Proposed Extensions

Over one month after first indicating that they would be proposing a schedule extension, despite multiple requests from Charter's counsel about when such dates would be forthcoming, Plaintiffs finally provided their proposed new schedule on January 31, 2020.  *See* Ex. 16. But, Plaintiffs' proposal failed to take into account any of the actual scheduling issues or delays presented in the case, and instead was narrowly focused on setting forth two options depending upon whether Charter intended to plead a certain affirmative defense—a pleading that is not due in this case until February 28, 2020 at the earliest, which Charter is still investigating, and which Charter is not required to plead until after its pending motion to dismiss is resolved.  *Id*.[3]

On February 7, Charter indicated it would move for relief if the parties could not agree on a case schedule in between the parties' competing proposals. *See* Ranahan Affid., Ex. 18.  Plaintiffs responded the next day that they were "disappointed" that Charter was not further "conferring"

---

[3] Charter's proposal provides Plaintiffs with ample time to conduct discovery regardless of whether Charter asserts the safe harbor defense.

with Plaintiffs to "endeavor to agree on one schedule to present for the Court's approval." *See* Ranahan Affid., Ex. 19.  Charter responded by offering to further meet and confer within the next several days. *See* Ranahan Affid., Ex. 20.  Plaintiffs elected the latest option provided, and the parties held a meet and confer on February 11, 2020. *See* Rahanan Affid., ¶ 22.

During the February 11 meet and confer, Plaintiffs' counsel asked that Charter further specify interim dates proposed in connection with its scheduling proposal.  Charter did so, and sent Plaintiffs proposed schedule with interim dates the following morning, February 12, and stated the following:

> We believe these schedules are reasonable and appropriate in light of the complexity of the cases, the stage of the pleadings (including amendments last month and coming later this week), the number of parties, and the realities about the time the respective remaining productions and discovery will take.  As we explained yesterday, we want complete ownership and financial discovery before proceeding with Plaintiffs' depositions, and these schedules would give us comfort in that.

*See* Ranahan Affid., Ex. 21.  Two days later, on February 14, 2020 Plaintiffs sent their proposed schedule, which was identical to their prior proposed schedule, suggesting that the request for another meet and confer was simply a delay tactic.  *Compare* Ranahan Affid., Ex. 16 *with* Ex. 2. The parties' proposed schedules contained material differences and the parties have not been able to reach an agreement on certain dates.

## III.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 16(b)(4) and D.C.Colo.L.Civ.R. 16.1, a scheduling order may be modified for good cause and with the judge's consent. Good cause to modify a Scheduling Order exists where the party seeking to amend establishes that despite diligence it could not reasonably meet the deadline under the case schedule. *See Strope v. Collins,* 315 F. App'x 57, 61 (10th

Cir.2009) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir.2004)) ("Demonstrating good cause under [Rule 16(b)(4)] 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for the delay.'").  The decision to modify the Scheduling Order "is committed to the sound discretion of the trial court." *Smith v. United States,* 834 F.2d 166, 169 (10th Cir. 1987); *see also Benton v. Avedon Eng'g, Inc.,* No. 10–cv–01899–RBJ–KLM, 2013 WL 1751886, at *1 (D. Colo. April 23, 2013).  Here, good cause exists to amend the Scheduling Order.

## IV.      GOOD CAUSE EXISTS TO EXTEND THE CASE DEADLINES

There is good cause to move the pretrial and trial dates in this case.  Plaintiffs have refused to consent to the timing Charter proposes, which is about seven months longer than Plaintiffs propose.  Charter moves to modify the Scheduling Order and Court's July 8, 2019 Order scheduling the trial date in light of the early stage of the pleadings, the complexity and needs of the case, and ongoing discovery delays.  The Scheduling Order governing the case discovery deadlines was entered into on June 13, 2019—long before Charter was faced with Plaintiffs' substantial amendments to the pleadings and significant discovery delays. *See Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 683 (D. Colo. 2014) (granting defendants' motion to extend the scheduling order upon finding that at the time the court entered the scheduling order "the need for additional discovery was not foreseeable).

Good cause exists to extend the case deadlines in light of the recently added parties and amendments to the alleged works and Charter's discovery needs.  There are a significant number of Plaintiffs and third-parties that Charter is still seeking written discovery from, which necessitates additional time. Charter's proposed modified case schedule is reasonable to

accommodate the time and resources Charter will have to expend to conduct discovery in connection with the large number of Plaintiffs and third-parties involved in this case. *See Cutting v. U.S. ex rel. Evans Army Cmty. Hosps.,* No. CIV 07-CV02053REBMEH, 2008 WL 4527708, at *3 (D. Colo. Oct. 3, 2008) (recommending an extension of several discovery deadlines and trial date in light of the possibility of additional parties and need for additional discovery); *see also Thornton v. Davita Healthcare Partners, Inc.,* No. 13-CV-00573-RBJ-KMT, 2013 WL 5567560, at *2 (D. Colo. Oct. 8, 2013) (staying discovery pending defendants' motion to dismiss because the burden on defendant to "proceed with potentially more than forty depositions . . . would impose on Defendant more than the ordinary burdens of litigation").

The deadline to complete fact discovery is presently set for March 31, 2020. Neither party has deposed or even scheduled the depositions for any party in this case, and need to complete ongoing document productions before doing so. This is because, as discussed below, the document production is nowhere near complete, and that must be done before depositions are commenced. It is practically impossible that Charter will be able to depose not only the sixty plus plaintiffs that are a party to this case, but the large number of third-parties that have already been disclosed.[4] *See Ambraziunas v. Bank of Boulder*, 846 F. Supp. 1459, 1467 (D. Colo. 1994) (extending the discovery cut-off date to "avoid prejudice to Defendants arising out of the addition of the new Plaintiffs"). The third-parties involved in this case are essential to Plaintiffs' claims and Charter's defenses. It is imperative that Charter have time to conduct meaningful discovery with each of them.

---

[4] To date, Charter has served subpoenas on nine third-party witnesses. Charter is in the process of evaluating the objections and responses by these third parties, and negotiations with many third parties are still ongoing. Charter intends to move to compel at least one third-party.

Furthermore, there are significant document productions that should be forthcoming, including those listed above, which Charter will need to rely on to meaningfully prepare for depositions. *See Cutting*, 2008 WL 4527708 at *3 (D. Colo. Oct. 3, 2008) (recommending that the parties' continuance be granted because it would accomplish the requested purpose of obtaining additional discovery). And, the multiple extensions Plaintiffs have already obtained to amend their pleadings, and unilaterally made to adjust their own discovery deadlines and refusal to agree to a production date for others, necessitates reasonable extensions of the case schedule.

The complexity of the case also supports Charter's proposed extensions. *See Cook v. Rockwell Int'l Corp.*, 147 F.R.D. 237, 239 (D. Colo. 1993) (modifying the discovery deadlines upon recognizing the complexity of the case, limited discovery, and limited time to analyze the results of discovery). This litigation involves two separate claims for secondary copyright infringement against Charter – contributory infringement and vicarious liability.  To have standing to bring their claims, Plaintiffs must first prove that they own the copyrights for the thousands of separate works-in-suit. As detailed above, it has already taken a significant amount of time for Plaintiffs to produce the ownership documents for the 1% sample of works-in-suit ordered by Magistrate Judge Hegarty.  And, after dozens of hours of analysis, Charter has already been able to identify significant holes in Plaintiffs' chain-of-title and deficiencies in Plaintiffs' ownership productions. *See* Ranahan Affid., Ex. 22.  Should the Court order Plaintiffs to produce ownership documents for the full set of 10,000 plus works-in-suit, it is guaranteed that they will need ample time to make the productions.  Charter will, in turn, need time to fully review the ownership documents in order to sufficiently confirm that Plaintiffs do indeed own the copyrights for all of the works-in-suit (for each of one they are seeking up to $150,000 in statutory damages).

Plaintiffs must also first prove direct infringement prior to obtaining any ruling on contributory or vicarious infringement, which requires extensive third-party discovery and expert analysis. The web-based protocols at issue in this case and third-party technology that Plaintiffs utilized to detect the alleged direct infringements for their claims are highly technical and complex. These are technologies and programs that will require substantial time for an expert to analyze – and this is just for the direct infringement portion of the case. Plaintiffs' request for statutory damages will also require complex discovery and expert analysis by both parties.

Charter has good cause to request a modification to the Scheduling Order. Accordingly, Charter is requesting that the Court amend the Scheduling Order to extend the following deadlines consistent with the proposed schedule below. This proposed schedule is reasonable and appropriate in light of the complexity of the case, the stage of the pleadings (including the recent amendments to the Complaint), the number of parties and substantial third party discovery, and the realities about the time the respective remaining productions and discovery will take.

|  | Present Date | Charter's Requested Date |
|---|---|---|
| Deadline to serve written discovery requests | February 26, 2020 | August 19, 2020 |
| Deadline to designate experts | March 13, 2020 | November 19, 2020 |
| Fact Discovery Close | March 31, 2020 | March 31, 2021 |
| Deadline to designate rebuttal experts | April 13, 2020 | December 17, 2020 |
| Expert Discovery Close | May 15, 2020 | May 16, 2021 |
| Dispositive Motions Deadlines | June 11, 2020 | July 18, 2021 |
| Trial Preparation Conference | October 2, 2020 | September 17, 2021 |

|  | Present Date | Charter's Requested Date |
|---|---|---|
| Trial | November 2, 2020 | November 2021 |

A comparison of the parties' proposed schedules, including interim production deadlines the parties were negotiating, is detailed below:

| Plaintiffs' Proposed Date/Deadline | Charter's Alternative Proposal |
|---|---|
| N/A | *Completion of Production of Documents Parties Have Already Agreed to Produce Pursuant to Initial Discovery Requests* 5/11/20 |
| N/A | *Completion of Production of Plaintiffs' Ownership Documents (If Ordered Further by Court)* 5/22/20 |
| N/A | *Completion of Production of Financial/Licensing Information Ordered by Court (including if BHN Production Deemed Usable)* 5/29/20 |
| *Substantial completion of document productions* 7/1/20 | *Completion of Production of any Other Documents Ordered from Initial Requests and Not Yet Produced* 7/1/20 |
| *Deadline to Serve Written Discovery* 8/19/20 | *Deadline to Serve Written Discovery* 8/19/20 |
| *Deadline to Designate Experts* 9/14/20 | *Deadline to Designate Experts* 11/19/20 |
| *Deadline to Designate Rebuttal Experts* 10/13/20 | *Deadline to Designate Rebuttal Experts* 12/17/20 |
| N/A | *Completion of Production of Documents Parties Have Already Agreed to Produce Pursuant to Subsequent Discovery Requests* 2/24/21 |

| Plaintiffs' Proposed Date/Deadline | Charter's Alternative Proposal |
|---|---|
| N/A | *Last Date to File Motion to Compel/seek relief from Court on discovery issues* 3/19/21 |
| *Fact Discovery Close* 9/25/20 | *Deadline to Complete Party Depositions* 3/31/21 |
| *N/A* | *Deadline to Complete Third Party Depositions/Discovery* 4/30/21 |
| *Expert Discovery Close* 11/16/20 | *Expert Discovery Close* 5/16/21 |
| *Dispositive Motion Deadlines* 12/21/20 | *Dispositive Motion Deadlines* 7/18/21 |
| *Trial Preparation Conference* 2/12/21 | *Trial Preparation Conference* 9/17/21 |
| *Trial* 4/21 | *Trial* 11/21 |

For the Court's convenience, a proposed Order is submitted herewith.

WHEREFORE Defendant Charter Communications, Inc. prays that this Court modify the Scheduling Order in this case as set out above, and that it grant Charter such other and further relief as the Court deems just and proper.

Respectfully submitted this 19th day of February 2020.


Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
Seth E. Spitzer (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com


Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

*s/ Erin R. Ranahan*
Erin R. Ranahan (*pro hac vice*)
Shilpa A. Coorg (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com
E-mail: scoorg@winston.com


Craig D. Joyce
John M. Tanner
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant*
*Charter Communications, Inc.*

CERTIFICATE OF SERVICE

I certify that on February 19, 2020, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

| | |
|---|---|
| Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Tel: (202) 851-4526<br>E-mail: matt@oandzlaw.com<br>E-mail: scott@oandzlaw.com<br>E-mail: jeff@oandzlaw.com<br>E-mail: kerry@oandzlaw.com<br>*Attorneys for Plaintiffs* | Mitchell A. Kamin<br>Neema T. Sahni<br>Mark Y. Chen<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Tel: (424) 332-4800<br>E-mail: mkamin@cov.com<br>E-mail: nsahni@cov.com<br>E-mail: mychen@cov.com<br>*Attorneys for Plaintiffs* |
| Janette L. Ferguson<br>LEWIS BESS WILLIAMS & WEESE, P.C.<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Tel: (303) 861-2828<br>E-mail: jferguson@lewisbess.com<br>E-mail: bleoni@lewisbess.com<br>*Attorneys for Plaintiffs* | Jonathan M. Sperling<br>William E. O'Neil<br>COVINGTON & BURLING LLP<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Tel: (212) 841-1000<br>E-mail: jsperling@cov.com<br>E-mail: woneil@cov.com<br>*Attorneys for Plaintiffs* |
| | Megan M. O'Neill<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Tel: (202) 662-5416<br>E-mail: moneill@cov.com<br>*Attorneys for Plaintiffs* |

*s/ Erin R. Ranahan*
Erin R. Ranahan