# Exhibit 10

| | |
|---|---|
| **From:** | Ranahan, Erin R. |
| **To:** | Lampros, Nicholas M. |
| **Cc:** | Coorg, Shilpa A.; Skopec, Allison N.; Sahni, Neema T; Arent, Madison P; O"Neill, Megan; Jeff Gould; Matt Oppenheim; Scott Zebrak; Elkin, Michael S.; Lane, Thomas Patrick; Golinveaux, Jennifer A.; Spitzer, Seth E.; Ellis, Emily; Kamin, Mitchell A; Sperling, Jonathan |
| **Subject:** | RE: Warner Bros. v. Charter & UMG v. Bright House |
| **Date:** | Thursday, November 07, 2019 11:08:11 PM |
| **Attachments:** | image001.jpg |

Dear Nik,

This email is in response to your email of November 4.

Last time we spoke, I understood Plaintiffs would attempt to prioritize producing the notices as part of Plaintiffs' earlier productions to facilitate ensuring that Defendants had the complete universe of notices being claimed, and could ensure all available discovery flowing from and regarding those notices was located.  We have never suggested that Defendants "need not comply with their discovery obligations until after Plaintiffs produce the infringement notices sent to Charter/Bright House."  What we indicated was there were multiple systems processing these requests over time, and it would be more efficient if we could track the universe of what is available and the subscriber data from your notices.  With respect to whether Defendants processed all of Plaintiffs' notices, obviously having all the notices you claim are at issue would be a starting point to confirm that.  Plaintiffs have agreed to produce these notices, and we assume you have already gathered them in connection with preparing your Complaints (which reference the number of alleged notices Plaintiffs contend were sent), so we are not clear why Plaintiffs are so resistant to providing them.

In fact, Plaintiffs have declined to agree to a date to produce any documents whatsoever.  This includes when I asked Plaintiffs whether they could produce the digital copies of the works in suit by December 15, or to inform us alternatively when Plaintiffs could make such production.  Plaintiffs refused to even provide a counter proposal for that production.  Defendants intend to begin producing documents on a rolling basis shortly, and plan to produce most documents for both cases by December 2019.   Will Plaintiffs commit to the same? Or will Plaintiffs commit to producing anything by any date?

With respect to PII, we also remain willing to continue the discussion regarding the terms of a stipulation regarding the disclosure of PII.   There are several concerns we have about the current proposed stipulations even beyond business vs. residential.  The trigger date that notice is required within five days of the order being entered is not workable, and not realistic given the status of discovery.  We are discussing with our clients a form of stipulated order that would be triggered from after the (initially redacted) production of the ticket data, or after Plaintiffs otherwise identified some set of redacted names for which they wanted to seek the PII.  Would Plaintiffs be willing to consider such options? Another possibility would be to consider a sampling approach similar to that which occurred in the BMG case, where the court

ordered the notice procedure for 250 of the customers.  The Court also inquired what the plaintiffs there wanted to do with such information.  Are you able to articulate here what that might be, which would also inform our clients' willingness to agree to this without a specific Court order?  While you dismiss Defendants' concerns regarding PII as "baseless," as we have repeatedly explained, there are multiple laws as well as privacy policies that address such disclosure.  Just because you have sent an infringement notice to some of these customers (who may not even be the person who allegedly infringed), or the fact that there is a protective order governing the treatment of documents in this case, does not alleviate those concerns.  Nevertheless, we are willing to work with Plaintiffs on a reasonable solution.

With respect to the scope of subscribers and infringement notices, I am not clear what you are referring to when you say the parties have reached an "impasse" and when you say Defendants are "backtracking."  Below simply asks whether we can obtain the infringement notices so we can investigate and ascertain what is available.  We are still willing to produce information regarding subscribers and their notices, but we want to understand the scope of that burden, which we cannot know until we know which notices you claim are at issue.

With respect to financial data, we fail to see the relevance of "audited" financial statements, to the extent Defendants maintain them at all.  Please let us know how "audited" financials are relevant to this case.  Tracking payments received from their customers is a far cry from tracking specific revenue data from a specific group of customers that we cannot conclusively define until we see Plaintiffs' notices.

With respect to Interrogatory 7, we will consider this proposal and will aim to get back to you next week.

We will also provide a ticket log data sample by next week.

Best Regards,

-Erin

**Erin R. Ranahan**
**Partner**
Winston & Strawn LLP
T: +1 (213) 615-1700
D: +1 (213) 615-1835
F: +1 (213) 615-1750
winston.com

**From:** Lampros, Nicholas M. <nlampros@cov.com>
**Sent:** Monday, November 4, 2019 4:43 PM

**To:** Ranahan, Erin R. <ERanahan@winston.com>
**Cc:** Coorg, Shilpa A. <SCoorg@winston.com>; Skopec, Allison N. <ASkopec@winston.com>; Sahni, Neema T <nsahni@cov.com>; Arent, Madison P <Marent@cov.com>; O'Neill, Megan <MONeill@cov.com>; Jeff Gould <Jeff@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Scott Zebrak <Scott@oandzlaw.com>; Elkin, Michael S. <MElkin@winston.com>; Lane, Thomas Patrick <TLane@winston.com>; Golinveaux, Jennifer A. <JGolinveaux@winston.com>; Spitzer, Seth E. <SSpitzer@winston.com>; Ellis, Emily <EEllis@winston.com>; Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>
**Subject:** RE: Warner Bros. v. Charter & UMG v. Bright House

Erin,

I write in response to your email of October 30.  We are troubled by the degree to which Defendants are still unable or unwilling to commit to firm positions on a number of discovery requests, despite these requests having been served nearly five months ago.  We remain committed to resolving these important issues, and while we would prefer to do so by agreement, we intend to seek judicial resolution in both cases if Defendants do not show meaningful progress on these issues by close of business on Thursday November 7.

As for the substance of your email, we disagree on several points, first and foremost your new contention that Defendants need not comply with their discovery obligations until after Plaintiffs produce the infringement notices sent to Charter/Bright House.  Plaintiffs' discovery requests were served nearly five months ago.  Defendants cannot unilaterally delay and withhold discovery until after Plaintiffs produce infringement notices simply because Defendants might find it more convenient to wait and see what Plaintiffs produce.  We provided you samples of those notices weeks ago and we have no doubt that Defendants already know who the subscribers are that were the subject of Plaintiffs' notices; if that is not the case because Defendants failed to process Plaintiffs' notices when they were sent, that is critical to Defendants' liability and we need to know that immediately, too.  In any event, we anticipate producing the infringement notices very soon, but that has nothing at all to do with Defendants' obligations to produce responsive documents consistent with their discovery obligations, let alone Defendants' ability to merely commit to certain positions on what they will and will not produce.

1.     **PII.**  We are open to further discussion on the specific terms of a stipulation regarding the disclosure of PII.  But, more basically, and consistent with our broader concerns, we are troubled that Defendants still have not confirmed their agreement in principle to produce PII subject to such a stipulation.  Defendants, not Plaintiffs, proposed the stipulation months ago on August 27, to resolve Defendants' baseless objections to producing PII absent such a stipulation.  Plaintiffs still contend the stipulation is unnecessary but have agreed to it as a compromise to move the issue forward.  And yet still Defendants lag.  Please confirm by November 7 whether Defendants will commit to disclosing PII for both business and residential subscribers to Plaintiffs and provide a counter proposal for any terms you contend should be adjusted.

As referenced above, there is no reason to make resolution of this issue contingent on Plaintiffs' production of infringement notices--Defendants already know the subscribers that were the subject of infringement notices, and the precise infringement notices at issue will have no bearing on how much time will be reasonably required as part of the notification

process.

2.      **Timeframe.**  From your email I understand that Defendants now refuse to provide documents or information from earlier than 2012, to the extent it exists, in response to any requests for production or interrogatories, including but not limited to the ones specifically identified in your email (excepting RFP No. 1).  We have reached an impasse on this issue and will proceed accordingly.

3.      **Scope of Subscribers and Infringement Notices.**  You represented during our call on October 24 that where Plaintiffs requested documents or information relating to Infringement Notices, Defendants would produce responsive documents or information relating to all subscribers who were the subject of Plaintiffs' infringement notices, regardless of who sent the Infringement Notices.  From your email below, it appears that Defendants are now backtracking from that position.  It thus appears we are at another impasse.  In any event, we fail to see why Defendants should require copies of the Infringement Notices at issue be produced before confirming this.

4.      **Financial-related Requests.**  Defendants' approach to Plaintiffs' financial requests is simply unacceptable.  Sophisticated business entities like Defendants must maintain audited financial statements as a matter of course.  There is no reason Defendants should still be "investigating" whether such statements exist.  The suggestion that you are still investigating what subscriber-level revenue Defendants can provide is equally incredulous.  Defendants are large corporations in the business of billing clients for services, so undoubtedly track payments received from their customers.  The revenue collected from the infringing subscribers implicated by Plaintiffs' notices is critical to both liability and damages, and the time has come to resolve this issue.  These requests have been outstanding for nearly five months; the time for you to be simply investigating the kind of financial documents your client has is long past.  Given Defendants' refusal to provide any meaningful information on these requests, we intend to raise this issue with both courts.  At minimum, if we cannot resolve these issues, we expect to move to compel audited financial statements for 2010-2016, documents sufficient to show actual monthly revenue from infringing subscribers for 2012 to present (akin to the ICOMS reports in *Cox*), and documents sufficient to show average revenue and profits per subscribers for all services (*i.e.*, data, phone, video) from 2010-2016.

5.      **Terminations/Interrogatory No. 7.**  As a compromise on this point, Plaintiffs propose that Defendants provide (1) the number of terminations/suspensions/limitations of each Defendants' Internet service per month from 2012 through 2016 for reasons related to copyright infringement, as Defendants have agreed, and also (2) the total number of terminations/limitations/suspensions of each Defendants' Internet service per month from 2012 through 2016 for violations of Defendants' Acceptable Use Policies.  As part of this compromise, Defendants' response to Point (2) need not be broken down with respect to the applicable provisions of the AUP; we are asking only that you provide the total number of terminations/limitations/suspensions for any violations of the AUP, by month.  Please let us know by November 7 if this agreement is acceptable.  If not, we will raise this issue with the courts as well.

Separately, Given Defendants' refusal to identify the number of Subscribers per month whose internet service Defendants terminated for non-payment, as sought by Plaintiffs' Interrogatory No. 12, we intend to raise this with the courts.

Finally, given how long it is taking for Defendants to provide any clear information on what they will produce, we are concerned about the adequacy of the ticket log data Defendants claim they will produce. To avoid further delays or preempt additional disputes, we ask that you provide a sample this week of what the ticket log data will look like. As you know, Plaintiffs complied with a similar request to provide sample notices to facilitate Defendants' discovery needs. We ask that you please do the same. As noted above, Plaintiffs will begin producing infringement notices shortly, but we see no reason why Defendants cannot begin producing at least some ticket log data now.

We will await your response on these issues by the end of the day on November 7.

Best regards,

Nik

**Nicholas Lampros**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | nlampros@cov.com
www.cov.com

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

---

**From:** Ranahan, Erin R. <ERanahan@winston.com>
**Sent:** Wednesday, October 30, 2019 10:09 PM
**To:** Lampros, Nicholas M. <nlampros@cov.com>
**Cc:** Coorg, Shilpa A. <SCoorg@winston.com>; Skopec, Allison N. <ASkopec@winston.com>; Sahni, Neema T <nsahni@cov.com>; Arent, Madison P <Marent@cov.com>; O'Neill, Megan <MONeill@cov.com>; Jeff Gould <Jeff@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Scott Zebrak <Scott@oandzlaw.com>; Elkin, Michael S. <MElkin@winston.com>; Lane, Thomas Patrick <TLane@winston.com>; Golinveaux, Jennifer A. <JGolinveaux@winston.com>; Spitzer, Seth E. <SSpitzer@winston.com>; Ellis, Emily <EEllis@winston.com>; Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>
**Subject:** RE: Warner Bros. v. Charter & UMG v. Bright House

[EXTERNAL]
Nik,

Below please find our response to your email of October 26, which purports to summarize our meet and confer discussions on October 24. We have noted where we have a different understanding of our positions than stated in your email.

PII:  We are discussing with our client your proposal for the parties to stipulate to a procedure for disclosure similar to that entered in the Cox case. As an initial matter, they will likely require more time than you have proposed for the notification process. When do Plaintiffs' anticipate completing

their production of notices sent to Charter and BHN? It will likely be more efficient to initiate this process once we have Plaintiffs' complete set of notices that you claim to be at issue.  As we have explained, notices have been processed through several different systems across both companies during the relevant time period.

Timeframe: For Requests for Production 2, 3, 4, 11, 12, 15, 16, 17, 19, and Interrogatories 2, 3, 4, 5, 6, 7, 10, and 12 it will similarly be helpful to have Plaintiffs' notices.  We do not intend, however, to provide information in response to these earlier than 2012, to the extent it is available.  The extent to which it is not available we will not know until we can fully assess Plaintiffs' notices.

For the remaining requests and interrogatories impacted (to the extent we have indicated we will respond or provide information pursuant to Rule 33(d)), we do not agree to provide information earlier than 2012, to the extent it exists.

Scope of Subscribers & Infringement Notices:  For these requests identified below under this category, we also need to receive and analyze against what subscribers are included on the notices at issue.  We understand that Plaintiffs are already agreeing to produce these notices, so once we receive those, we can get back to you on what we can reasonably produce in response to these requests.

Financial-Related Requests: We are actively investigating what our clients have with respect to subscriber-level financial data and audited financial records.

Interrogatory 7:  We do not agree to provide information about terminations that occurred with respect to any user for purposes other than copyright infringement.

Other Interrogatories,
Rog 1:  We will supplement our response with dates that we can identify for each.
Rog 2, 4, 5, 6:  We will provide certain ticket log data as we have discussed to the extent available once we have received Plaintiffs' full set of notices. To the extent we have this data and it is not overly burdensome to provide, we will likely be providing through ticket log data as opposed to through an interrogatory response.
Rog 3: To clarify, any responsive document or further interrogatory response that we agree to provide here would be related to the subscribers identified in Plaintiffs' notices, to the extent such information is available.
Rog 5: With respect to bandwidth, we have not yet agreed to provide that information, but agreed to look into whether we had it and assess whether we would be able to reasonably provide that information.  As stated above, whether and to what extent this is available for the relevant universe of subscribers will also first require Plaintiffs' notices.
Rog 8 & 9: We will be making a production shortly that we intend will include responsive documents to these.

Other RFPs Discussed:
RFP 1: We can confirm we are searching for responsive documents without any limitation on time.  Please let us know if Plaintiffs have agreed to do the same.

RFP 14: Though we understood from our prior discussions that Jeff Gould was particularly interested in emails for this request, we will not limit our searches for responsive documents to this Request to only emails, to the extent other responsive information exists.

We remain available and willing to discuss these issues further in an attempt to resolve any open issues.

Regards,

-Erin


**Erin R. Ranahan**
**Partner**
Winston & Strawn LLP
T: +1 (213) 615-1700
D: +1 (213) 615-1835
F: +1 (213) 615-1750

[winston.com](winston.com)

---

**From:** Lampros, Nicholas M. <nlampros@cov.com>
**Sent:** Saturday, October 26, 2019 10:29 AM
**To:** Ranahan, Erin R. <ERanahan@winston.com>
**Cc:** Coorg, Shilpa A. <SCoorg@winston.com>; Skopec, Allison N. <ASkopec@winston.com>; Sahni, Neema T <nsahni@cov.com>; Arent, Madison P <Marent@cov.com>; O'Neill, Megan <MONeill@cov.com>; Jeff Gould <Jeff@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Scott Zebrak <Scott@oandzlaw.com>; Elkin, Michael S. <MElkin@winston.com>; Lane, Thomas Patrick <TLane@winston.com>; Golinveaux, Jennifer A. <JGolinveaux@winston.com>; Spitzer, Seth E. <SSpitzer@winston.com>; Ellis, Emily <EEllis@winston.com>; Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>
**Subject:** Warner Bros. v. Charter & UMG v. Bright House

Erin,

We write following from our meet and confer on Thursday 10/24. This email memorializes our understanding where we stand on various issues we discussed. If you have a different understanding on any of the points below, please let us know.

PII: First, you agreed that you would review the draft stipulations regarding the disclosure of PII we sent on October 16 and let us know by Wednesday whether your clients will agree to utilize the stipulation procedure we proposed for both business and residential subscribers. This issue pertains to Plaintiffs' Interrogatory Nos. 5 and 6, and Plaintiffs' RFP Nos. 2-5, 12, and 15.

Timeframe: Second, for each of Plaintiffs' discovery requests where there is a potential dispute as to the applicable timeframe for the request, you agreed you would confirm the time

period for which Defendants will produce, including by identifying whether Defendants: (1) would produce documents or information for the full time period Plaintiffs request; (2) objected to producing documents or information before a certain date; or (3) could not produce documents or information for the full time period requested due to the unavailability (or non-existence) of documents or information prior to a given date.  The discovery requests for which Plaintiffs request this confirmation are Interrogatory Nos. 2-12 and RFP Nos. 2-5, 8, 9, 11-20, and 22.

<u>Scope of Subscribers & Infringement Notices</u>:  Third, you confirmed that where Plaintiffs have requested documents or information relating to Infringement Notices, Defendants would produce responsive documents or information relating to all subscribers who were the subject of Plaintiffs' infringement notices, regardless of who sent Infringement Notices (*i.e.*, not limited to notices sent only by Plaintiffs or on their behalf).  This issue pertains to Plaintiffs' Interrogatory Nos. 2-7, and 10, and RFP Nos. 2-4, 11, 12, and 15.

<u>Financial-Related Requests</u>:  Fourth, you agreed to revisit Plaintiffs' requests for Defendants' subscriber-level financial data and company-level financial data, and confirm what level of detail Defendants would agree to provide, including, but not limited to, whether Defendants will produce Subscriber-level revenue data, by month and year, and full audited financials for Bright House.  This pertains to Interrogatory Nos. 10-12 and RFP Nos. 18-20.

<u>Interrogatory No. 7</u>:  Fifth, we understand you will be reviewing Defendants' Acceptable Use Policies, and letting us know what additional response, if any, Defendants will make in response to Plaintiffs' Interrogatory No. 7.

<u>Other Interrogatories Discussed</u>:
- For Rog No. 1, you agreed to look into the dates during which the listed individuals held the roles and responsibilities responsive to this request, and to supplement your response to the extent such dates are identifiable for each.
- For Rog No. 2, you agreed to look into whether the ticket log data you are producing will be fully responsive to this request, including by providing the ability to identify the total number of Infringement Notices received by Defendants by month and year.
- For Rog No. 3, you represented that you are not aware of any limit, cap, or blacklist imposed by either Defendant, but are working to confirm there was no technical feature that operated as such a limit, cap, or blacklist.  To the extent any such limit, cap, or blacklist was imposed (including any de facto technical limit of the type you described), you agreed to produce documents that would provide the information requested in this interrogatory pursuant to Rule 33(d), and to the extent the documents do not fully respond, to supplement your answer.
- For Rog Nos. 4, 5, and 6, we understand you will be producing ticket log data that you believe to be responsive to these requests, and we can reassess the completeness thereof once produced.
- For Rog No. 5, you confirmed that to the extent your clients tracked bandwidth speeds associated with each account, you would provide that information.  You also represented that Defendants' statement that they will not provide information concerning notices of claimed infringement "obtained only through discovery in litigation" means only that you will not produce information concerning notices never received by Charter or Bright House, as applicable, and does not impose any other limitation on what you

- intend to produce in response to this request.
- For Rog Nos. 8 and 9, you stated Defendants would be producing documents you contend will be responsive to these requests next week. We expect you will supplement per Rule 33(d) to the extent you are relying exclusively on such documents so we may assess the completeness of your response.

Other RFPs Discussed:
- For RFP No. 1, you confirmed Defendants would conduct email searches without any time limitation.
- For RFP No. 14, you confirmed you would not limit your search to emails and stated you would do targeted collections for reports, plans, studies, analyses, or other documents responsive to this request not contained within custodial email files.

We understand you will revert on these issues early next week and will get back to us by Wednesday 10/30. If you wish to discuss any of these issues further, please let us know.

Best,

Nik

**Nicholas Lampros**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | nlampros@cov.com
www.cov.com

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.