# Exhibit 17



WINSTON
&STRAWN
LLP   North America   Europe   Asia

333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
T +1 213 615 1700
F +1 213 615 1750

**ERIN R. RANAHAN**
Partner
213-615-1835
ERanahan@winston.com

January 31, 2020

**VIA EMAIL**

Magistrate Judge Michael E. Hegarty
Alfred A. Arraj United States Courthouse
Courtroom A-501, 5th Floor
901 19th Street
Denver, CO 80294
Email: hegarty_chambers@cod.uscourts.gov

Re:   *Warner Records Inc., et al. v. Charter Communications, Inc.*
    **D. Colo. Case No. 19-cv-00874-RBJ-MEH**

Dear Judge Hegarty:

Defendant Charter Communications, Inc. ("Charter") hereby responds to the letter Plaintiffs sent via email
to Chambers on January 23, 2020, which seeks to extend the deadline for their sample ownership
production and continue the February 12, 2020 hearing on whether complete ownership/chain of title
production is appropriate in this case.

**Charter Does Not Object to Extending the Deadlines, As Long as The Overall Case Schedule is
Extended to Accommodate the Production and Review**

Subject to extending the case schedule to allow time for Plaintiffs to complete their ownership/chain of
title production and to allow Charter and its experts time to meaningfully review and analyze that
production, Charter does not object to: (i) extending the production deadline for Plaintiffs' sample
ownership/chain of title production from January 27 to February 3, 2020, or (ii) continuing the hearing on
this issue, scheduled for February 12, to February 19, or to another date and time convenient for the Court
and the parties.  Plaintiffs indicated weeks ago that they would be providing Charter a proposed extended
case schedule for consideration so that the parties can seek Court approval of an extended schedule.  To
date, however, Charter has yet to receive such a proposal.

**It Is Already Clear, Even Before Plaintiffs Complete Their Sample Ownership Production, that
Complete Ownership/Chain of Title Production for the Works-In-Suit Is Warranted**

Even before Plaintiffs' production is complete, it is already apparent that ownership/chain of title
production for each of the works-in-suit is warranted. This Court stated during the initial discovery call
with the parties on October 29, 2019 that it would expect Plaintiffs to have undertaken a diligent



January 31, 2020<br/>Page 2

investigation such that their allegations of ownership for each work-in-suit were made in good faith, and thus their asserted ownership was presumably accurate.  As the Court specifically stated during this teleconference:

> Under Rule 11, if plaintiff's counsel has signed a complaint that lists 11,000 works, they are representing to the Court that, after an inquiry reasonable under the circumstances, each one of these works is at issue and is owned by their client, that is counsel's representation to the Court by Rule 11. So what I'm assuming, justifiably so, is that there has been a reasonable inquiry, under the circumstances, and plaintiffs' counsel is representing to this Court that their clients have the ownership of each of these.

[*See* 10/29/2019 Hr'g Tr. 34:11-22.]

Unfortunately, Plaintiffs' recent proposed amendments to Exhibits A and B to the Complaint indicate otherwise.  The Exhibits Plaintiffs have filed with this Court have proven to be inaccurate and subject to major deletions and revisions.  *Compare* Dkt. 1 (Compl. Ex. A and Ex. B) *with* Dkt. 111-1 and 111-2 (Proposed Amended Exhibits A and B; *see also*, Dkt. 113, 113-1, 113-2, 113-4 (Objection in Part to Motion to Amend Exhibits to Complaint, Ranahan Aff. at ¶¶ 2-4, Exs. 1 & 2).  In fact, Plaintiffs admitted in communications to Charter prior to and leading up to the filing that the Exhibits were being substantially revised right up through the time of filing, calling into serious question whether they are accurate.  *Id.*

Indeed, since Plaintiffs were ordered to produce the chain of title sample, Plaintiffs themselves appear to have found fatal deficiencies with respect to at least **442** works previously alleged, and have stripped them entirely from the case. *Id.*  Collectively, this amounts to works-in-suit that represent over $66 million in potential statutory damages.  In their proposed amendments, Plaintiffs have also changed the claimed owner for more than 700 works (causing Plaintiffs to seek to amend to add twelve new plaintiffs to the case), and changed the registration number for more than 200 works.  *Id.*

A significant number of removed and altered works-in-suit appear in, or are directly related to works from, the 1% sample of 111 works, including:

- Eight works from the sample were removed entirely from Amended Exhibit A;[1]

- Eight additional works from the sample reflect a change in the name of the alleged owner;

- Five additional works from the sample change either the title of the song or the registration number for the work; and

---

[1] These include: (1) Trey Song*z, Panty Droppa (intro)*; (2) Billy Joel, *The River of Dreams;* (3) Amy Winehouse, *I Heard Love Is Blind (Live At Concorde)*; (4) Elton John, *Tiny Dancer;* (5) Eminem, *Stan (Live);* (6) Eric Clapton, *Swing Low Sweet Chariot;* (7) Kid Cudi, *Day 'N' Nite (Club mix)* and (8) David Guetta, *XXI Gotta Feeling (FMIF Remix Edit).  Compare* Dkt. 1 (Compl. Ex. A and Ex. B) *to* Dkt. 111-1 and 111-2 (Proposed Amended Exhibits A and B); *see also,* Dkt. 113 (Objection in Part to Motion to Amend Exhibits to Complaint, Ranahan Aff. at Exs. 1 & 2).



January 31, 2020
Page 3

- Plaintiffs removed at least *fifty-five additional sound recordings* by artists named in the sample. This includes works by Dave Guetta (14), Toby Keith (11), Maroon 5 (10), Elton John (4), Eric Clapton (3), Amy Winehouse (3), Bastille (2), Katy Perry (2), Big Sean (1), Colbie Caillat (1), Avril Lavigne (1), George Michael (1), Lady Gaga (1), and Timbaland (1).

In sum, there are 21 deficiencies in works-in-suit from the court ordered sample that were either withdrawn, or a new party name had to be added, or the song title or registration number changed. *Id.* Collectively, this means that there were errors resulting in works being withdrawn, raising questions of standing, and other defects identified already in at least 16% of the sound recordings listed in the 110-work sample before Plaintiffs have even completed their ownership/chain of title production and before Charter has had the opportunity to analyze it. This is more than statistically significant, and if extended to presume across all the works-in-suit, it would represent 1764 works subject to some such defect, *and thus would impact works-in-suit representing over 260 million in potential statutory damages*. Counting the additional fifty-five works that were removed by the same artists named in the 1% sample (representing potentially more than 8 million in statutory damages) the total number of works withdrawn flowing from the sample production are even greater.

In a case where Plaintiffs are seeking well over a billion dollars in statutory damages, the full ownership production should be ordered to ensure that Plaintiffs actually own the rights being asserted, and Charter is afforded the opportunity to rebut any presumption of ownership.[2]

### Plaintiffs Have Already Produced, or Been Ordered to Produce, Ownership Information for Most Works at Issue, Reducing Plaintiffs' Claimed Burden Objections Substantially

Additionally, earlier this month, the Court in *Universal Music Group Recordings, Inc. v. Bright House Networks, LLC* (8:19-cv-710-MSS-TGW) ("*UMG v. BHN*") ordered Plaintiffs to provide complete ownership information for the over 7,000 works at issue in that case. Plaintiffs have not objected to that ruling, and have a deadline to produce such information in early March 2020. This Court should deem discovery made in *UMG v. BHN* available for use in this case, to the extent that production covers the same works at issue here. There is no good reason to deny Charter the ability to use that information. Plaintiffs can claim no burden in producing it, and the information is plainly relevant to this action, as this Court acknowledged during the initial call on this issue (acknowledging that ownership information was "relevant"; *see* 10/29/2019 Hr'g Tr. 34:11-22.). The information is set to be produced *in UMG v. BHN* by the same Plaintiffs, by and to the same counsel to what is effectively the same party (as Bright House is now part of Charter)—for the very same claim period against Plaintiffs (March 2013 through May 2016). Should the Court permit that production to be used here, this would reduce the burden on Plaintiffs with respect to all of the overlapping works, and would cover chain of title/ownership documentation, including any work for hire agreements, for most of the works-in-suit.

---

[2] Notably, it appears that a significant number of works that Plaintiffs have now dropped from this case, were the subject of statutory damages awards in the *Cox* case, in which Plaintiffs were not ordered to produce complete chain of title (*e.g.*, no work for hire agreements were ordered).



January 31, 2020
Page 4

Likewise, Plaintiffs have already produced some chain of title information for approximately 77% of the works that were also at issue in *Cox Communications, Inc. et al. v. Sony Music Entertainment, Inc. et. al*, Case No. 1:18-cv-950 (LO / JFA) (E.D. Va.), also to the same counsel representing Charter here. The overlapping chain of title produced in the *Cox* case should also be made available for use in this case, though Plaintiffs should still be required to supplement any such production with the other additional information ordered here, such as work for hire agreements.

For all these reasons and those discussed previously, Charter respectfully requests that the Court require Plaintiffs to produce complete ownership/chain of title documents for the remaining works-in-suit that are not at issue in Bright House or covered by the sample production.

Respectfully Submitted,

Erin R. Ranahan