## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

        Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

        Defendant.

---

## PLAINTIFFS' MOTION TO DENY DINA HELLERSTEIN'S DESIGNATION AS A QUALIFIED PERSON

---

Plaintiffs, by and through undersigned counsel, hereby submit this Motion to Deny Dina Hellerstein's Designation as a Qualified Person. As grounds for the Motion, Plaintiffs state as follows:

### CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a)

Pursuant to D.C.Colo.LCivR 7.1(a), counsel for Plaintiffs contacted counsel for Charter to confer in good faith regarding its objection to Ms. Hellerstein's designation, and asked for more information regarding the scope of Ms. Hellerstein's objection. To date, counsel for Charter has not provided the requested information, or otherwise withdrawn its proposed designation.

### MOTION

On February 7, 2020, Charter disclosed to Plaintiffs that it had engaged Dina Hellerstein, a former in-house lawyer for one of the Plaintiffs, as an expert or consultant in this case, and

informed Plaintiffs it would be disclosing Highly Confidential materials to her as a "Qualified

Person" under the Protective Order. *See* Stipulated Protective Order (Dkt. No. 63), at ¶ 5(a)(iii).

Ms. Hellerstein was a senior legal executive for EMI Music, which encompassed Plaintiff

Capitol Records, and has since been acquired by Universal Music Group, the umbrella company

for several of the Plaintiffs in this case.  In this role, Ms. Hellerstein acquired six years of

confidential and privileged information regarding EMI's ownership and control of the works in

its catalog—now part of the UMG/Capitol repertoire—and regarding the record industry's

antipiracy enforcement and litigation strategies, both of which go to central issues in this case.

Defendant's engagement of Ms. Hellerstein in a case that could implicate confidential

and privileged information that she learned in her capacity as counsel raises an obvious "risk of

serious harm" to Plaintiffs.  *Id.* ¶ 14(b); *see Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163,

1170 (10th Cir. 2003) (the "'appearance  of impropriety' is raised when an attorney hires an ex-

employee of an adversary who had been exposed to a substantial amount of confidential

information to assist in litigation, even when the attorney takes precautions to prevent the

disclosure of confidential information.").  Because Charter has failed to respond to Plaintiffs'

request for greater clarity as to the scope of its engagement of Ms. Hellerstein in a manner that

could allay such concerns, Plaintiffs are forced to "move the Court for an order denying the

expert or consultant [] status as a Qualified Person" under the Protective Order.  *See* Dkt. No. 63,

¶ 14(b).[1]

---

[1] To be clear, Ms. Hellerstein's engagement as an expert raises issues well beyond those
contemplated by the Protective Order.  Plaintiffs' objection is broader; depending on the scope of
engagement, Charter's retention of Ms. Hellerstein could implicate ethical and privilege
considerations not specifically addressed by the Protective Order, as described below.  However,

## **ARGUMENT**

Under paragraph 5(b)(iii) of the Protective Order, any party that intends to disclose information designated as Highly Confidential – Attorneys' Eyes Only to an actual or potential expert must first provide notice to all counsel before disclosing the restricted information.  Dkt. No. 63, ¶ 5(a)(iii).  Pursuant to paragraph 14(b), any party that in good faith disagrees with the designation of an actual or potential independent expert or consultant as a Qualified Person must provide a written objection to the designating party.  *Id.* ¶ 14(b).  If the parties are unable to resolve the dispute in good faith, the objecting party may move the Court for an order denying the expert or consultant the designation of Qualified Person by demonstrating that such designation would expose it to risk of serious harm.  Upon the filing of such motion, Confidential and Highly Information may not be disclosed to the designated expert or consultant unless and until the Court enters an order preserving their designation as a Qualified Person.  *Id.*

On February 7, 2020, Charter notified Plaintiffs that it had engaged Ms. Hellerstein as an "actual or potential independent expert or consultant," and that it therefore considered her a Qualified Person to whom Charter would begin disclosing Plaintiffs' Highly Confidential information absent objection.  *See* Sahni Decl. ¶ 2, Ex. A.  Ms. Hellerstein served as Vice President of Business and Legal Affairs for EMI Music from 1998 through 2004, a period during which EMI encompassed Capitol Records, one of the Plaintiffs in this case.  In 2012, EMI was acquired by Universal Music Group, which includes UMG Recordings, Inc., also a Plaintiff here.

---

since Charter has itself presented this issue as one raised under the Protective Order, *see* Sahni Decl. ¶ 2, Ex. A, Plaintiffs object to Ms. Hellerstein's designation as a Qualified Person thereunder as well.

In this senior legal executive role at EMI, Ms. Hellerstein was engaged on many substantive matters through which she acquired privileged or confidential information related to issues in this litigation. For instance, Ms. Hellerstein was involved in the drafting and enforcement of licensing agreements with EMI's digital distribution partners, as well as analyzing ownership issues for works in the EMI catalog, among other responsibilities. Thus, she had access to and possessed privileged information that is relevant to several issues in the case, including ownership. Further, given Ms. Hellerstein's senior role within EMI's legal department, Ms. Hellerstein participated routinely and extensively in RIAA working groups, encompassing industry-wide issues—and involving communications with the other major label plaintiff groups—including, but not limited to, anti-piracy enforcement efforts and formulating litigation strategies and potential targets.

Charter's engagement of Ms. Hellerstein thus presents a manifest risk that Plaintiffs' privileged and confidential information will be used or disclosed in a manner adverse to Plaintiffs' interests. Indeed, the proposed engagement risks Ms. Hellerstein's potential violation of the duties she owes to her former clients under the governing rules of professional conduct. *E.g.*, Rule 1.9 of the NY and CA Rules of Professional Conduct (providing that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing"). It also risks Charter's inducement of a breach by Ms. Hellerstein of these duties. Indeed, even Charter's mere engagement of Ms. Hellerstein, absent any disclosure of Plaintiffs' privileged information, raises serious concerns. *E.g.*, *Butler*, 348 F.3d at 1169-72 (attorney

violated Canon of Professional Responsibility requiring a lawyer to "avoid even the appearance of impropriety" when he hired an individual who had been exposed to substantial confidential information belonging to her former employer, to assist in organizing discovery documents obtained from former employer).

Plaintiffs therefore timely objected to the designation of Ms. Hellerstein, specifying this risk of the misuse of their confidential and privileged information. *See* Sahni Decl. ¶ 2, Ex. A. Plaintiffs also explained they were willing to meet and confer on the matter, including to better understand the scope of Ms. Hellerstein's potential review and what she would be asked to consult on. *Id.* Charter refused to explain any further. To date, Charter has not explained what the scope of Ms. Hellerstein's retention is, beyond that Charter intends to provide her "copyright ownership-related documents designated as HC-AEO that Plaintiffs have produced." *Id.* ¶¶ 2-3, Ex. A.[2]

Plaintiffs also separately wrote to Ms. Hellerstein to remind her of the duties she continues to owe her former client and employer, and requesting that she explain the contours of her retention by Charter and how she believes she could undertake that representation without violating the obligations she owes to EMI and to UMG. Charter responded on behalf of Ms. Hellerstein, again refusing to explain the scope of Ms. Hellerstein's retention beyond that she would be provided documents relating to Plaintiffs' ownership of the works-in-suit that have been designated Highly Confidential.

---

[2] In a February 17, 2020 submission the Magistrate Judge Hegarty, Charter stated it "intended to have [Ms. Hellerstein] assist with the compressed review of ownership documents," but has provided no further detail to Plaintiffs in response to their request.

Accordingly, in light of Charter's refusal to explain the scope of Ms. Hellerstein's retention, and in order to preserve their rights under the Protective Order and protect against the risk of serious harm presented by Ms. Hellerstein's retention, Plaintiffs hereby move the Court for an order denying Ms. Hellerstein's designation as a Qualified Person under Protective Order ¶ 14(b),

WHEREFORE, Plaintiffs hereby request this Court deny Dina Hellerstein's designation as a Qualified Person under the Protective Order, as described above,  A proposed order is submitted herewith.

Dated: February 20, 2020

*/s/ Mitchell A. Kamin*
Mitchell A. Kamin
Neema T. Sahni
Mark Chen
Nicholas M. Lampros
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
mychen@cov.com
nlampros@cov.com

Jonathan M. Sperling
William O'Neill
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
woneill@cov.com

Megan M. O'Neill
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
moneill@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 20, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

_/s/ Mitchell A. Kamin_
Attorney