# EXHIBIT C

                                                                    1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     Case No. 19-cv-00874-RBJ-MEH
3    _____

4    WARNER BROS. RECORDS, INC., et al.,

5        Plaintiffs,
     vs.
6

7    CHARTER COMMUNICATIONS, INC.

8        Defendant.
     _____
9

10           Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 3:03 p.m., February 19,

13   2020, in the United States Courthouse, Denver, Colorado.

14   _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                         APPEARANCES

19           NEEMA SAHNI, JONATHAN SPERLING and MATT OPPENHEIM,

20   Attorneys at Law, appearing for the Plaintiffs.

21           ERIN RANAHAN, SEAN ANDERSON, CRAIG JOYCE and

22   JENNIFER GOLINVEAUX (via phone), Attorneys at Law, appearing

23   for the Defendant.

24   _____

25                     DISCOVERY CONFERENCE
```

113

1  provided that to them two and a half months ago and said,

2  Does this look good, does this look what you want before you

3  run it for all the tens of thousands that you have, and they

4  never got back to us.

5           THE COURT:  But wait a second, why are you covering

6  new ground if you guys did this in some other district?

7           MS. RANAHAN:  Well, we don't.  It's a different

8  client.  We have completely different data, we have different

9  retention policies.  The time period --

10          THE COURT:  Sorry, who was the different in

11 Virginia?

12          MS. RANAHAN:  Cox.  We're Charter.

13          THE COURT:  I know, but you didn't you buy Cox?

14          MS. RANAHAN:  No, no, no.

15          THE COURT:  Cox and Charter are completely

16 different --

17          MS. RANAHAN:  Completely different, nothing to do

18 with each other.

19          MS. SAHNI:  Your Honor, though, they do have the

20 same tracking system.

21          MS. RANAHAN:  At one point we did, but let me just

22 tell you about the timing of it and why is there is less than

23 they would like.

24          So they are suing for 2013 to 2016.  They sent us

25 notice of this lawsuit in late 2015.  At that time there was

114

1  about a -- there was one set of data there was an 18-month
2  retention policy and another --
3          THE COURT:  Is it a two-year statute of
4  limitations?
5          MS. RANAHAN:  Three-year --
6          THE COURT:  Three years.
7          MS. RANAHAN:  -- statute of limitations, but there
8  was a tolling period entered only at the time of the notice
9  of the lawsuit.  So as of the end of 2015 there was a tolling
10 agreement entered, and at that point everything was -- you
11 know, at that point they started implementing all the --
12         THE COURT:  So it's all of calendar year 2013?
13         MS. RANAHAN:  I'm sorry?
14         THE COURT:  It's all of calendar year 2013, 2014,
15 2015?
16         MS. RANAHAN:  No, no, no.  2015 is when we got
17 notice of the lawsuit.
18         THE COURT:  I know, but the period of time is 2013.
19         MS. RANAHAN:  Right.  So -- right, the claim
20 period -- if they went today they wouldn't have these claims
21 because they make a billion dollars off streaming now and
22 they don't even have the peer-to-peer problem.  So they had
23 to go back in time --
24         THE COURT:  So we won't have to do this again in
25 five years?

115

1           MS. RANAHAN:  No, it's a dinosaur I think as we
2   mentioned last time.
3           THE COURT:  Got that going for us.
4           MS. RANAHAN:  So if we go back to that time period,
5   by the time we got notice of the lawsuit there was only, in
6   some instances, six months worth of data and others 18.  So
7   that means that the notices that they provided us from 2013
8   all the way through 2000 -- March 2015, for the bulk of those
9   notices, the data doesn't exist anymore.  It's not same
10  client that was there in Cox, so there is not as fulsome --
11  there is not the same retention policies, it's a totally
12  different party and --
13          THE COURT:  Which makes the burden easier here?
14          MS. RANAHAN:  Makes it easier, actually makes it
15  easier, except for that, you know, we still have -- we would
16  like to be able to isolate the financial data for all of the
17  notice infringers and we're going to try to do it so we can
18  isolate the revenue.
19          THE COURT:  Well, why can't you do this on a
20  rolling basis?
21          MS. RANAHAN:  Well, the ticket data information
22  which -- again, we waited for them to say this is good, this
23  is the right columns.
24          THE COURT:  Did they say that?
25          MS. SAHNI:  Your Honor --