IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER BROS. RECORDS INC., *et al*.,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

**Civil Action No.  19-cv-00874-RBJ-MEH**

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S ("CHARTER") SUBMISSION REGARDING THE RELEVANCE OF PLAINTIFFS' WORK-FOR-HIRE AGREEMENTS AND THE NEED FOR THEIR PRODUCTION**

Pursuant to Dkt. 129, Defendant Charter submits this statement regarding the relevance of Plaintiffs' work-for-hire agreements and the need for their production.

## I. AN INVALID REGISTRATION DEPRIVES PLAINTIFFS OF STANDING

Plaintiffs claim Charter is liable for secondary copyright infringement based upon its internet subscribers allegedly infringing 6,963 sound recordings, which represents over a billion dollars in potential statutory damages. Plaintiffs registered most sound recordings as works "made for hire" ("WFH"), a box Plaintiffs or alleged predecessors checked when registering them for protection with the U.S. Copyright Office.[1] For these registrations to be accurate, ***Plaintiffs must have valid, signed WFH agreements with the artists who created the works***.[2] Based on Charter's review of the production—or lack thereof—of WFH agreements within the 110-work sample, Plaintiffs falsely registered at least 40 works in this case as WFH.[3] It is thus highly probable that a significant number of additional sound recordings in suit were also inaccurately registered.

It is black-letter law that an applicant's knowing misstatement to the Copyright Office regarding a work's author can invalidate the copyright registration, which deprives the applicant of standing to sue for infringement of that work.[4] 17 U.S.C. § 411(b); *DeliverMed Holdings, LLC v. Schaltenbrand*, No. 3:10-cv-00684, ECF No. 337-38 (invalidating registration after Register of Copyrights stated the false WFH designation at issue would cause rejection of application); *Rubloff Inc. v. Donahue*, 1994 WL 161098, at *6 (N.D. Ill. Apr. 11, 1994) (invalidating registration due to

---

[1] Of the court-ordered sample of 110 works, 106 were registered as WFH. In *Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-CV-950-LO-IDD, (E.D. Va.) ("*Sony*"), approximately 95% of the over 7,000 sound recordings in suit were registered as WFH. *See Sony* Dkt. 682 at 16. There is a significant overlap of works between the cases.

[2] The apparent circuit split on the timing of the execution of the WFH agreement is immaterial at this juncture, as a valid WFH agreement is always required. *Compare Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) *and Gladwell Gov't Servs., Inc. v. Cty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008) (requiring a valid WFH agreement that pre-dates creation) *with Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 559 (2d Cir. 1995) (allowing, among other required indicia of validity, an agreement that post-dates creation).

[3] While eight works were part of the 110-work sample, the inaccurate registrations affect 32 related works.

[4] Registration of a copyright is required to file suit and, separately, for statutory damages. 17 U.S.C. §§ 411(a), 412. Here, Plaintiffs have irrevocably elected statutory over actual damages. Ex. B (Dec. 17, 2019 Tr.) 72:12; *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1486640, at *1 (S.D.N.Y. Apr. 11, 2011).

fallacious WFH designation); *Morgan, Inc. v. White Rock Distilleries, Inc.,* 230 F. Supp. 2d 104, 108 (D. Me. 2002) (dismissing complaint due to invalid WFH designation on registration).[5]

Plaintiffs argued that Charter should not have the opportunity to challenge their right to sue for infringement in this case because the artists may not have challenged their right to *exploit* these sound recordings. Ex. A (Feb. 19, 2020 Hr'g Tr.) 41:1-23. Plaintiffs' argument misses the point. First, Charter will challenge their ownership. Second, Plaintiffs fail to address whether the registrations are valid in light of their ***knowing misrepresentation of authorship***—not solely whether they have the right to exploit the works due to an agreement or industry practice.[6] Further, in light of an erroneous WFH designation, the registrations would likely lack a transfer statement denoting how Plaintiffs actually obtained purported ownership from the artist, *see* 17 U.S.C. § 204, casting doubt on the validity of the information on the registrations. Based on the foregoing, Charter seeks to invalidate registrations that were knowingly obtained without a WFH agreement.

## II.  DISCOVERY ON PLAINTIFFS' KNOWLEDGE WOULD BE PRACTICABLE

Charter must be able to assess whether WFH agreements actually exist, and when they were entered, to demonstrate that Plaintiffs *knowingly* submitted inaccurate applications. To do

---

[5] *Cf. Sunham Home Fashions, Inc. v. Pem-America, Inc.*, 2002 WL 31834477, at *13 (S.D.N.Y. Dec. 17, 2003) (misrepresentation as to WFH material to registration validity); *Billy-Bob Teeth v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (validity of transfer of copyright question for jury). Courts invalidate registrations for myriad other material misrepresentations as well.  *See, e.g., Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC,* 925 F.3d 1140 (9th Cir. 2019) (misrepresentation as to whether work was previously published); *Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455-56 (2d Cir. 1989) (mischaracterization on registration to evade non-copyrightable nature of clothing invalidated registration).

[6] Plaintiffs pointed to several cases, none of which deal with allegations that the applicants knowingly deceived the Copyright Office. See Ex. A 55:16-56:6. *MOB Music Publ'g v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 204 (D.D.C. 2010) dealt with the defendant's claim that a music composition registered as a WFH should be invalidated because music compositions cannot be so registered. *Id.* In *Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.*, 720 F. Supp. 2d 904, 914 (S.D. Ohio 2010), the court held that the defendants did "little to show any inaccuracies regarding …authorship…were willful or deliberate." *Id.* Further, Plaintiffs misrepresented the procedural history in *Sony*, where this issue was ***not*** addressed. *See* Ex. A 32:10-21. Cox advanced an argument that Plaintiffs had erroneously registered individual sound recordings (i.e., "singles") as WFH. *Sony Music Entm't v. Cox Commc'ns, Inc.,* 2019 WL 6357963, at *7 (E.D. Va. Nov. 27, 2019). Moreover, this issue is distinguishable because, critically, *the plaintiff's WFH agreements were not produced in Cox.*

2

so, Charter will examine Plaintiffs' representatives to investigate issues of intent. Charter will also examine Plaintiffs about the economic benefits they enjoy by systematically and falsely registering works as WFH, which, as one court explained, are significant indeed:

> [A]n author has greater rights than one who acquires a copyright through an assignment, including the right to terminate all transfers of ownership after 35 years. 17 U.S.C. § 203. … The author's right of termination is intended to counter the "unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." H. R. Rep. No. 94–1476, at 5740 (1976). Because the record company plaintiffs list the copyrights as works for hire, they are considered to be the authors and do not have to face the prospect of artists terminating plaintiffs' ownership rights after 35 years. The result is that plaintiffs effectively guarantee themselves 95 years of copyright ownership—a total of 60 additional years beyond what they would have if the artists were listed as the authors.

*In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002).

This WFH evidence (or lack thereof) is also relevant to rebut Plaintiffs' claim that they act in the best interests of recording artists, a common refrain at the recent *Sony* trial where Plaintiffs obtained a windfall statutory damages verdict. In reality, due to Plaintiffs' systematic practice of misrepresenting authorship status to the Copyright Office, artists are routinely forced to institute disputes, which the labels vigorously challenge in order to defend their much more beneficial claim as "author." While Plaintiffs' counsel shrugged off any suggestion that the underlying artists may take issue with Plaintiffs' WFH designation or rights, *see* Ex. A 41:1-11, the many cases artists have filed against them regarding this scheme belies that claim. *See, e.g.*, *Waite et al. v. UMG Recordings, Inc. et al.*, Case No. 1:19-cv-01091-LAK (S.D.N.Y.) (putative class action against record companies for improperly claiming WFH); *Mtume v. Sony Music Entm't*, 408 F. Supp. 3d 471, 476 (S.D.N.Y. 2019) (dispute over WFH registration); *Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, 2010 WL 3564258, (S.D.N.Y. Sept. 10, 2010) (same); *Skidmore v. Led Zeppelin*,

2016 WL 1442461, at *9 (C.D. Cal. Apr. 8, 2016) (same).[7]

### III.     THERE IS <u>NO</u> BURDEN IN PRODUCING THIS RELEVANT EVIDENCE

Plaintiffs cannot claim any burden in producing these critical documents.  First, as the primary issue is the *lack* of the WFH agreement (the vast majority of the WFH deficiencies in the sample)*,* there will be nothing to produce for most works.  Plaintiffs are more concerned about the exposure of the massive fraud they have committed on the Copyright Office, which Charter seeks to assert both as an affirmative defense and to rebut Plaintiffs' claim that they act in the best interests of their artists.[8]  Second, to the extent Plaintiffs actually have WFH agreements, they have already been ordered to produce them in *UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, Case No. 8:19-cv-710-MSS-TGW (M.D. Fla.) for most of the works at issue in this case, further reducing any burden.  Third, any WFH language that has been located was within Plaintiffs' standard recording agreements, which Plaintiffs have already agreed to selectively produce to establish their purported chain of title and are therefore readily available.

The Court already held these documents are proportional to the needs of the case.  *See* Ex. A 18:16-23.  Indeed, the invalidation of just five percent of Plaintiffs' registrations would reduce Charter's exposure by over $52 million.[9]  Based on the foregoing, Charter is entitled to develop a record through discovery so that the Court can determine whether to invalidate the registrations.[10]

---

[7] Legal commentators explain this scheme creates myriad issues. *See, e.g.*, William Henslee & Elizabeth Henslee, *You Don't Own Me: Why Work for Hire Should Not Be Applied to Sound Recordings*, 10 J. Marshall Rev. Intell. Prop. L. 695, 713 (2011); Melville B. Nimmer, *Their Master's Voice? Recording Artists, Bright Lines, and Bowie Bonds: The Debate Over Sound Recordings as Works Made for Hire*, 48 J. Copyright Soc'y U.S.A. 145, 146 (2000) (Ex. C & D).
[8] While Plaintiffs' counsel feigned confusion as to the existence of this procedure, *see* Ex. A 57:14-25, as of 2008, the Copyright Act requires an advisory opinion from the Copyright Office as to "whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration" before it invalidates a registration.  *See* 17 U.S.C. § 411(b)(2).  To not unnecessarily stall proceedings, "the court retains the power to delay the request until a factual record has been developed, e.g., through affidavits or discovery."  *See Olem Shoe Corp. v. Wash. Shoe Co.*, 09 Civ. 23494 (S.D. Fla. Oct. 14, 2010), ECF No. 209 at 11.  Charter requests the opportunity to make such a record.
[9] This is a realistic estimate given that approximately 8% of the sample appeared to be erroneously registered.
[10] At the very least, the Court should order the remaining WFH agreements be produced, if they exist, so that Charter has the opportunity to appeal any legal findings on this issue with an appropriate record.

4

Date:   February 28, 2020

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Respectfully submitted,

*s/ Erin R. Ranahan*
Erin R. Ranahan
Shilpa A. Coorg
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com
E-mail: scoorg@winston.com

Craig D. Joyce
John M. Tanner
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
Phone: 303.830.2400
Fax: 303.830.1033
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant*

5

## CERTIFICATE OF SERVICE

I certify that on February 28, 2020, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

| | |
|---|---|
| Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Tel: (202) 851-4526<br>E-mail: matt@oandzlaw.com<br>E-mail: scott@oandzlaw.com<br>E-mail: jeff@oandzlaw.com<br>E-mail: kerry@oandzlaw.com<br>*Attorneys for Plaintiffs* | Mitchell A. Kamin<br>Neema T. Sahni<br>Mark Y. Chen<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Tel: (424) 332-4800<br>E-mail: mkamin@cov.com<br>E-mail: nsahni@cov.com<br>E-mail: mychen@cov.com<br>*Attorneys for Plaintiffs* |
| Janette L. Ferguson<br>LEWIS BESS WILLIAMS & WEESE, P.C.<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Tel: (303) 861-2828<br>E-mail: jferguson@lewisbess.com<br>E-mail: bleoni@lewisbess.com<br>*Attorneys for Plaintiffs* | Jonathan M. Sperling<br>William E. O'Neil<br>COVINGTON & BURLING LLP<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Tel: (212) 841-1000<br>E-mail: jsperling@cov.com<br>E-mail: woneil@cov.com<br>*Attorneys for Plaintiffs* |
| | Megan M. O'Neill<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Tel: (202) 662-5416<br>E-mail: moneill@cov.com<br>*Attorneys for Plaintiffs* |

                                          *s/ Erin R. Ranahan*
                                             Erin R. Ranahan