# Exhibit A

1

```
1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
     Case No. 19-cv-00874-RBJ-MEH
3    _____

4    WARNER BROS. RECORDS, INC., et al.,

5         Plaintiffs,
     vs.
6

7    CHARTER COMMUNICATIONS, INC.

8         Defendant.
     _____
9

10            Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 3:03 p.m., February 19,

13   2020, in the United States Courthouse, Denver, Colorado.

14   _____

15            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                         APPEARANCES

19            NEEMA SAHNI, JONATHAN SPERLING and MATT OPPENHEIM,

20   Attorneys at Law, appearing for the Plaintiffs.

21            ERIN RANAHAN, SEAN ANDERSON, CRAIG JOYCE and

22   JENNIFER GOLINVEAUX (via phone), Attorneys at Law, appearing

23   for the Defendant.

24   _____

25                    DISCOVERY CONFERENCE
```

1  would be something north of $250,000, right?

2          THE COURT:  20,000 --

3          MR. SPERLING:  25,000 times a 100,000 would be

4  25,000.

5          THE COURT:  Yes.

6          MR. SPERLING:  So 25 times 10,000 would be --

7          THE COURT:  250,000.

8          MR. SPERLING:  250,000.

9          THE COURT:  Yeah, that's what I'm saying, it would

10  be about $260,000 in a billion dollar case.

11          MR. SPERLING:  If we assume the hourly number that

12  Your Honor has conjured up in his hypothetical, but, of

13  course, Your Honor, there is a key consideration, right,

14  which is that you don't get the burden to the issue unless

15  there is some relevance.

16          THE COURT:  Exactly, I'm not there yet, I'm just at

17  the burden.  And so if you engage in any kind of

18  proportionality analysis, if this were a standard $100,000

19  employment case, I would be asking somebody to spend $250 in

20  a $100,000 case.

21          So I don't think I would buy any proportionality

22  argument, but a relevance argument I will certainly

23  entertain, okay.  That's all.

24          MR. SPERLING:  So with respect to relevance, Your

25  Honor, the key point is that again the purpose of this

32

1   not be the party that's on the registration, but we're
2   affiliated with them so it's okay.  I mean, they -- and those
3   declarations were by contrast to ours accepted.
4          So these are issues that are for later, but they
5   haven't been -- there is no authority saying that the
6   work-for-hire issue doesn't matter.  It actually wasn't
7   litigated, we didn't have the work-for-hire agreements.  And
8   what happened in Cox is not a fulsome review of the
9   ownership.
10         MR. OPPENHEIM:  Your Honor, I will allow
11  Mr. Sperling to give you a little more detail and background
12  on this, but one thing Ms. Ranahan said, she wasn't counsel
13  in the Cox case (inaudible - away from mic) and so maybe she
14  doesn't know the record.  There is a written opinion on the
15  work-for-hire issue in the Cox case.  They didn't cite it to
16  you, they should have.  And I don't know why they wouldn't
17  have.
18         It's a lengthy decision.  It not only says -- it
19  goes into detail as to why a work-for-hire agreement still
20  needs to be produced, but it cites to other authority on
21  which the Court came to a similar conclusion.
22         MS. GOLINVEAUX:  Your Honor, I apologize, but I
23  don't know if Mr. Oppenheim is at a microphone, because I'm
24  not able to hear him.
25         THE COURT:  He should be.

41

1          MR. SPERLING:  Correct, Your Honor.  And, Your
2     Honor, I point out, you know, the works that they're talking
3     about, these eight works, the artists are, for example, Cold
4     Play, George Michael, Pit Bull, Muse.  You know, their
5     suggestion is that we are out there, we are manufacturing and
6     selling CDs containing these works.  We're selling the
7     downloads on the iTune store, we're licensing it to Spotify
8     and to Amazon for them to issue it through their streaming
9     services, right, and we don't know it.  And somehow Cold
10    Play, Cold Play has failed to notice that we are selling CDs
11    with the song.
12         THE COURT:  Okay.  So in your experience with this
13    kind of litigation, and is it your representation to me that
14    you have never seen that happen in the history of your
15    practice of law?
16         MR. SPERLING:  I personally have never had an
17    instance, Your Honor, where the record company was exploiting
18    sound recording by an artist like this without the rights
19    thereto.
20         THE COURT:  Very good.
21         MR. SPERLING:  But I'll tell you, Your Honor -- but
22    I'll leave it at that.
23         THE COURT:  Okay, I accept that.
24         MS. RANAHAN:  Your Honor, the names that they've
25    withdrawn, you want to talk about some big music names, Elton

55

1          THE COURT:  But they'll object to the topic and
2    I'll be deciding it.
3          MS. RANAHAN:  If it's not -- it's not just -- it
4    doesn't have to be intentional.  That's one way to invalidate
5    it.  I'm telling you that's one avenue.  There is also just a
6    material misrepresentation that can be reckless, that's also
7    another ground, but --
8          THE COURT:  No.  I get the gravamen of the issue.
9    Do you both of you agree that the critical analysis will be
10   whether this Court, ultimately Judge Jackson, agrees with
11   either of you as to the import of a registration in which
12   there was no -- all of the box work-for-hire was checked,
13   there was no, in fact, work-for-hire agreement, don't you
14   agree that that's an important legal decision that should be
15   made?
16         MR. SPERLING:  It's an important legal issue, Your
17   Honor, it bears on relevance.  You know, Ms. Ranahan just
18   said to you, well, if it was intentional, then that would
19   invalidate the registration, but that too again, Your Honor,
20   is not the law.  I'll read to you, quote:  Neither innocent
21   misstatements nor deliberate, but nonmaterial misstatements,
22   will overcome the presumption of validity.
23         And so since they're not disputing the ownership
24   and there is nothing about what was produced that calls into
25   question the ownership, the error, even if intentional in

56

1  that hypothetical world, still wouldn't invalidate the
2  registration.
3         The case is 720 F.Supp.2d 904 at 914 and it is
4  quoted in the Cox decision, which obviously was endorsing
5  that view, and that's 2019 Westlaw 6357963 at star, if I
6  can -- at star 7, Your Honor.
7         THE COURT:  Okay, okay.
8         MS. RANAHAN:  Your Honor, there is -- we have law
9  on page 8 of out statement which goes through the work for
10 hire and why people have found it relevant in other
11 circumstances.
12        What actually counsel isn't mentioning is that to
13 invalidate a registration, it's actually something that we
14 could ask the copyright office to weigh in and give an
15 interim decision, that happens frequently in these cases
16 where there is an issue about whether the registration itself
17 should be invalidated.  We could --
18        THE COURT:  Are you saying, in essence, certifying
19 a question of law to --
20        MS. RANAHAN:  It's a -- it's a thing that happens
21 in copyright cases when the registration validity is at
22 stake, they will take -- they basically take the question and
23 will issue an interim opinion.
24        THE COURT:  Why haven't you done that already?
25        MS. RANAHAN:  Well, we don't have -- I mean, we

57

1   don't have -- we just got the work-for-hire agreements last
2   week.  We don't even know the scope of the issues.
3            THE COURT:  No, but you knew this issue was coming.
4            MS. RANAHAN:  No, we have to have specific
5   registrations to do.  We present the registration and say on
6   this -- it's not like an advisory opinion.  It's here a
7   registration where we see a problem, is this material and do
8   you --
9            THE COURT:  Do you agree that -- what entity will
10  do this?
11           MS. RANAHAN:  I'm sorry.
12           THE COURT:  The entity that will do this?
13           MS. RANAHAN:  The copy, the U.S. Copyright Office.
14           THE COURT:  So do you agree the U.S. Copyright
15  Office will render an opinion on those facts?
16           MR. OPPENHEIM:  Your Honor, I've been practicing in
17  the music space for over 20 years.  I've never once ever
18  heard of that, let alone seen it happen, and it has been the
19  majority of my practice for the last 20 some years.
20           THE COURT:  So you don't believe that exists?
21           MR. OPPENHEIM:  I'm not aware of it.  There are
22  situations in the architectural context where there have been
23  disputes.  I've never in the music space, the publishing
24  space or the software space ever seen anything like when
25  Ms. Ranahan has just suggested.