1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
      Case No. 19-cv-00874-MSK-MEH
 3    _____

 4    WARNER BROS. RECORDS, INC., et al.,

 5         Plaintiffs,

 6    vs.

 7    CHARTER COMMUNICATIONS, INC.,

 8         Defendant.
      _____
 9

10         Proceedings before MICHAEL E. HEGARTY, United States

11    Magistrate Judge, United States District Court for the

12    District of Colorado, commencing at 10:31 a.m., March 4,

13    2020, in the United States Courthouse, Denver, Colorado.

14    _____

15         WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17    _____

18                        APPEARANCES

19         JEFFREY GOULD, NEEMA SAHMI, MATTHEW OPPENHEIM and

20    MITCH HAMMOND, Attorneys at Law, appearing for the

21    Plaintiffs.

22         CRAIG JOYCE, JENNIFER GOLINVEAUX and SEAN ANDERSON,

23    Attorneys at Law, appearing for the Defendant.

24    _____

25                      STATUS CONFERENCE
```

2

1                    P R O C E E D I N G S

2             (Whereupon, the within electronically recorded

3    proceedings are herein transcribed, pursuant to order of

4    counsel.)

5             THE COURT:  Okay, we're on the record in Case

6    Number 19-cv-874, Warner Brothers Records, Inc., et al., vs.

7    Charter Communications, Inc.  For the plaintiff, please.

8             MS. SAHMI:  Good morning, Your Honor.  You have

9    Neema Sahmi and Mitch Hammond of Covington & Burling on

10   behalf of the plaintiff.  And I believe, Matt, do you want to

11   enter your appearance for Oppenheim?

12            MR. OPPENHEIM:  Sure.  You've got Matt Oppenheim

13   and Jeff Gould from Oppenheim & Zebrak on behalf of

14   plaintiffs as well.

15            THE COURT:  Thank you.

16            MS. GOLINVEAUX:  Good morning, Your Honor.  For

17   defendant you've got Jennifer Golinveaux and Sean Anderson at

18   Winston & Strawn.  And Craig, do you know want to enter your

19   appearance, as well?

20            MR. JOYCE:  Yes, good morning.  This is Craig Joyce

21   representing Charter.

22            THE COURT:  Okay, thank you.  Okay, so I'll let Mr.

23   Oppenheim add more to his position if he wants after I hear

24   from the defense on the issue that's before them.

25            So do you want to let me know what you're thinking?

3

1          MS. GOLINVEAUX:  Certainly, Your Honor, this is

2    Jennifer Golinveaux.

3          We read obviously Mr. Oppenheim's letter yesterday,

4    and I assume he'll we want to supplement that.  Charter's

5    position is that we understand that the Court prefers to

6    appoint a Special Master for discovery.  We've reviewed Ms.

7    Rodriguez's credentials and we're fine with her, we do not

8    have an issue with her.

9          Plaintiffs mentioned complex on both sides, but

10   they didn't specify -- she ran a complex check, we're not

11   aware of complex, so we are -- we are fine with the Special

12   Master the Court suggested.

13         THE COURT:  Okay.  Well, let me talk to

14   Mr. Oppenheim for a second.  I mean, I understood everything

15   you said, but it was kind of interesting that the gist of it

16   is this case is so contentious that to appoint a Special

17   Master would just be counterproductive, and maybe from your

18   perspective that's true.  From my perspective, you just made

19   me just want to do it even more.  So convince me that we

20   shouldn't.

21         MR. OPPENHEIM:  Certainly, Your Honor, and

22   obviously my point was not to push you the other direction.

23         So a Special Master, there are instances in which a

24   Special Master can be useful, and then there are instances

25   where we think a Special Master is not useful, and as between

4

1    counsel and our clients, we've had some experience with them.

2            And in this case, we think it really is the latter.

3    It would be counterproductive.  And the reason is that by and

4    large the issues here are not issues that we think that

5    additional briefing and further conference calls and

6    discussions with a Special Master are going to assist.

7            So take, for instance, the hearing we had I guess

8    it was two weeks ago.  That was a hearing where Your Honor

9    had already ruled on many of the issues that we were

10   discussing in terms of Charter's production of documents.  In

11   fact, Charter had committed at the prior hearing I believe in

12   December that they were going to produce documents by the end

13   of December, as Your Honor noted on the record, and yet

14   Charter had failed to comply with the Court's order and its

15   own commitment.

16           Had we been required to raise that with a Special

17   Master, it wouldn't have gotten us anywhere.  The Special

18   Master would have said, Well, you said you were going to do

19   it.

20           THE COURT:  Let me stop you there.  Now maybe

21   you've had a one size fits all Special Master experience.  It

22   can be -- we can design there any way we want, can't we?

23           MR. OPPENHEIM:  I suppose.

24           THE COURT:  So that if you think the issue you have

25   is to enforce an order, you come to me.  If the issue is

1    concerning, you know, I guess, the actual overseeing of the

2    movement of information and documents, then -- then she could

3    do that and we could split duties.  I'm just trying to save

4    myself a little time here, actually a lot of time.

5           So I agree that if -- that I am in charge of

6    enforcing my own orders and I'll do that gladly, but I just

7    suspect there is going to be a lot of new ground to cover in

8    terms of discovery because you say -- I'm not necessarily

9    agreeing with you, I'm just adopting your position for

10   argument sake that there is hardly any production right now

11   at all from the defense.

12          So there is a lot more to be done in the case

13   clearly.  And didn't we extend the discovery period, I guess?

14   Did we do that to a year from now or something?

15          MR. OPPENHEIM:  I think there is -- there is a

16   scheduling issue that is before Your Honor and it depends in

17   large measure on what -- whether or not Charter is going to

18   plead the affirmative defense of the safe harbor, which --

19   which we need to know about in order to figure out a

20   schedule.

21          But regardless of the schedule, the issue with the

22   Special Master, Your Honor, apart -- even the way you've

23   offered to construct it, and I'm trying to say this with a

24   certain amount of deference to opposing counsel, what is not

25   helpful is a massive proliferation of unending letters and

6

1    requests to revisit issues in conference calls.

2            What really needs to happen is issues get raised

3    clearly once in a set of motion papers and the order get

4    issued and the order be followed, and we don't -- we don't

5    believe in this case at this time that a Special Master is

6    going to assist in doing that.  We believe that the way this

7    case is being litigated that a Special Master will take in an

8    unending number of letters, raising an unending number of

9    disputes, which frankly, counsel would be reluctant to do

10   with Your Honor because a certain amount of deference is

11   reserved by the Court on those types of issues that the

12   Special Master does not get and has, in my experience, never

13   received.

14           So a Special Master will receive an unending litany

15   of issues, all of which will be required to respond to.  And

16   instead of actually getting discovery, what we'll do is we'll

17   spend most of our time doing discovery disputes.

18           Now, that serves defendants very well, that serves

19   defendants very well.  It does not serve plaintiffs.  And,

20   you know, apart from -- from the time and delay, what will

21   inevitably happen is then appeals of all of those issues to

22   you, and since all the legal issues have to be reviewed de

23   novo by you, you'll -- you'll still have to deal with these

24   issues.  Knowing the way this case has been litigated to

25   date, what would be attached to every brief to you by

1    defendant Charter will be every possible letter that was

2    submitted to the Special Master, and then you'll still end up

3    having to deal with these issues, only doing so with an

4    unending litany of materials that you have to review.

5         So I actually don't think that it -- it will aid

6    Your Honor.  I think it will exacerbate the situation and it

7    will certainly delay matters from our perspective and

8    massively add on to the cost here.  It's not -- it does not

9    go unnoticed by us that, you know, basically you're signing a

10   blank check for a Special Master and their team of lawyers to

11   dig into issues.

12        And while, you know, there may be this (inaudible)

13   of big companies and we can afford it, it shouldn't -- yes,

14   and by the way, with the extra cost of the extra litigation

15   that is attendant to it, then it shouldn't be incumbent on

16   the creative community to have to spend that kind of money in

17   order to vindicate their legal rights.

18        So, you know, I'm not opposed in some situations to

19   a Special Master, but in this situation, it will, I am almost

20   certain, lead to a prolonged discovery process, a far more

21   expensive process, and don't believe at the end, Your Honor,

22   that it's going to -- to relieve you from any significant

23   burden because we've already seen appeals from your orders to

24   Judge Shasta, and I believe that there will be an unending

25   waste of appeals from the Special Master's decision,

8

1    especially with the Special Master here who (inaudible) has

2    not really any experience in this and certainly no experience

3    or background in bittorrent or copyright.

4            So I feel as though we'll end up having to educate

5    the Special Master, again, and expensive and timely

6    proposition, on issues to which she's not familiar.

7            THE COURT:  Well, that's -- that's honestly the

8    weakest point.  I don't know if you know this, but she sat

9    for the entire year of 2016 as President Obama's nominee for

10   the U.S. District Court.  And if you recall 2016, the Senate

11   did not move on President Obama's nominees at all.

12           So she has -- I don't know what experience you

13   think she has, but she's as qualified as anybody I know to be

14   sitting as a U.S. District judge, she's just not there.  So

15   that's -- that's not going to fly, but the other points are

16   understandable and real, and there are matters that I need to

17   consider.

18           I'm not that worried about -- so on that part of it

19   I know Ms. Rodriguez does not suffer fools, so she won't have

20   any patience and won't be afraid to exercise the full extent

21   of her authority, whatever that is, that's given to her.

22           I don't disagree on the appeals and there's nothing

23   I can do about that.  It's just in the rules, and it's just

24   part of our life here at the court.

25           I am -- now, I'm not saying -- by the way, the

9

1    defense should not again think that I am at all agreeing with

2    any characterization of the way you've proceeded, but -- but

3    for either side, at the end of this case if I feel that the

4    proceedings have been multiplied beyond what they should have

5    been, then I will follow what I did in a case called EEOC vs.

6    HoneyBaked Ham and reallocate resources toward the end of the

7    case as I see necessary.

8            So again, there might be a short-term cost, but in

9    the long run, if there is, either side that has been

10   obstreperous or in my view hasn't fulfilled their obligations

11   in discovery and has cost the other side more litigation

12   resources than should have, then I'll -- I'll take care of

13   that and even that up a little bit.

14           So I need to hear from the defense, though, as to

15   the exact arguments made by the plaintiff.

16           MS. GOLINVEAUX:  Your Honor.

17           MR. OPPENHEIM:  I'm sorry.  I was just going to

18   make one last point if I may, Your Honor, and that is, you

19   know, I think that -- and apologies, Jennifer,

20   Ms. Golinveaux.

21           One last point.  One of the things that I think has

22   been helpful in our discussions with the Court to date is

23   being able to reference what other courts who have handled

24   similar situations have done.  And a perfect example is the

25   Cox decision on work for hire.  In Court -- took out the

1   exact issue that's before the Court now on what's for hire

2   and ruled on it in a written opinion.  And in nother

3   instances there are transcripts of the magistrate out of the

4   Eastern District of Virginia, and whether or not the Court

5   follows those decisions that are informative and useful for

6   the Court.

7         When employing a Special Master, you really lose

8   the presidential value.  And in a situation like this where

9   you have, you know, a systematic problem with ISPs and

10  counsel raising certain arguments and we've used the

11  presidential value of litigating something to address it, it

12  is useful and I fear it would be lost.  With that, I'll be

13  quiet and thank you for indulging me.

14        THE COURT:  Sure, go ahead, Ms. Golinveaux.

15        MS. GOLINVEAUX:  Thank you, Your Honor.

16        First of all, the defense certainly disagrees with

17  Mr. Oppenheim's characterization of the work-for-hire issue

18  in the Cox case.  We do not believe that the Cox Court ruled

19  on the sensitive issues that's before this Court now

20  (inaudible), but with respect to the points he made on

21  whether a Special Master will be appropriate here, as Your

22  Honor knows, this is a large complex case.  It's a case of

23  first impression of the circuit, there is very significant

24  exposure and there is frankly complicated discovery issues on

25  both sides.

1           We certainly take issue with the characterization

2   of how the defendant has litigated the discovery issues.

3   Those important issues, for example, the work-for-hire issue

4   and the ownership issues, could very significantly reduce the

5   scope of the case in terms of the counts of statutory

6   damages.  These are not issues that we are lightly taking up

7   with the Court.  They're very core to the case, they're

8   important issues, they're complicated.

9           Both sides also have new sets of discovery out,

10  written responses to those discovery demands are due next

11  week.  There is a number of open issues with respect to

12  plaintiffs' production that we've been frankly trying to work

13  through without Court intervention.  I'm hopeful that we'll

14  get there on a number of them, but I think it is likely there

15  are others that will need to be escalated.

16          So, you know, I think it's the nature of the case

17  and we understand the Court's position that it does not have

18  the time to -- to spend that it feels is needed for these

19  significant issues.

20          Your Honor, there is another issue that I want to

21  bring to the Court's attention today.  The plaintiffs don't

22  know about this yet, but we will be sending a detailed letter

23  out to them later today, but I think it's relevant to

24  discussion (inaudible) make sure that the Court is at least

25  aware of it now during this call.

1          In the process of conducting discovery in the case,

2     we have become aware of some e-mails lost by Charter.  As I

3     said, we'll be sending plaintiffs' a letter on this with much

4     more detail today, but I want to raise the issue now so that

5     the Court is aware and since we're discussing the need for a

6     Special Master for discovery.

7          THE COURT:  Okay, you've become aware of some what?

8          MS. GOLINVEAUX:  We have -- we have become aware of

9     certain e-mails lost by Charter and it's a complicated issue,

10    and the letter that we're going to be sending to the

11    plaintiff goes into specifics, but Charter suffered the loss

12    of certain e-mails as a result of the migration of the

13    (inaudible) system in 2017 and 2018.

14         THE COURT:  Okay.  So accidental destruction?

15         MS. GOLINVEAUX:  But I will be sending out -- yes,

16    correct, Your Honor, absolutely.  Entirely inadvertent and we

17    believe that there is -- (inaudible) e-mails lost and just

18    that any loss is minimal and any evidence that is material in

19    this action, but what I didn't want is for us to send this

20    letter to plaintiffs later today and you not to be aware that

21    it's coming down the pipe when we're talking about a Special

22    Master.

23         THE COURT:  Sure.  Well, along the lines of whether

24    to appoint a Special Master, I'm not insensitive to Mr.

25    Oppenheim's arguments and I guess I'm inclined to give it a

13

1    try, but I will also be open to a discussion that it's not

2    working, because I do want the courts to be a place where you

3    can efficiently litigate your case, even a billion dollar

4    case, and that is commanded by Federal Rule of Civil

5    Procedure 1 and I take that obligation seriously.

6            So if I did do that, appoint a Special Master, it

7    doesn't mean that it wouldn't be revoked if I believe that

8    it's counterproductive to the process.  And this -- you know,

9    there are certainly potential cases, even extremely large

10   cases, where the dynamics of discovery and disputes that

11   arise from that particular sort of discovery just aren't

12   amenable to a Special Master.  I want to see that in practice

13   probably a little bit before I would agree.  I do think there

14   is a probably a hybrid we can work out where she can take

15   some of the burden off of me, you know, at some expense, but

16   not terrible in light of what I would consider rational

17   proportionality considerations.

18           So it's something I might do.  I might have to

19   fashion the -- the actual order appointing a little different

20   than what I've done in the past, but there is another issue I

21   want to discuss today too, I guess, and I did receive your

22   briefs on the work for hire.

23           As I recall, Ms. Sahmi maybe or someone on the

24   plaintiffs' side, said that you had -- either had already or

25   were already producing agreements that would cover 80 percent

14

1    of the works.  Is that something that you did say or that I

2    recalled correctly?

3            MS. SAHMI:  No, that's not correct, Your Honor.

4    We're not producing -- that was related to the track-by-track

5    revenue I believe is maybe what you're referring to.

6            THE COURT:  Okay.

7            MS. SAHMI:  With respect to the work-for-hire

8    agreements, we are -- to the extent as part of the chain of

9    title we otherwise agreed to produce, we may produce it, but

10   we are not otherwise producing the work-for-hire agreements

11   or --

12           THE COURT:  These are a work-by-work agreement; is

13   that correct?  There is not clumps of work that would be

14   included in a work-for-hire agreement?

15           MS. SAHMI:  There are some work-for-hire agreements

16   that would cover a number of works, but in some cases they

17   might just have a one work, so it varies.

18           THE COURT:  Okay, so --

19           MS. GOLINVEAUX:  Your Honor, if I -- I'm sorry.

20           THE COURT:  I think we have about 7,000 allegedly

21   infringing recordings at issue here and would the approximate

22   number of work-for-hire agreements be somewhere around 80

23   percent of that 7,000?  So it would be like --

24           MS. SAHMI:  I don't think we've ever said that,

25   Your Honor.  I don't know the exact number that would cover

15

1    all 7,000.  I don't think it's 80 percent, but I'm not sure

2    that that -- I don't think we said that previously.

3         THE COURT:  Okay.  So Ms -- Ms. Golinveaux, one of

4    the things you said was that that might substantially affect

5    damages, but even under your own calculation, it could knock

6    5 percent off, I think is what you said, 50 something million

7    out of a potential billion-dollar exposure.  Isn't that what

8    you said?

9         MS. GOLINVEAUX:  Well, Your Honor -- Your Honor,

10   two things.  First, I thought that plaintiffs had agreed to

11   produce the work-for-hire agreements that were produced --

12   they're otherwise producing in the Brighthouse -- the similar

13   Brighthouse case.

14        THE COURT:  Okay.

15        MS. GOLINVEAUX:  And it sounds like opposing

16   counsel was saying something a little bit different just now,

17   so if we could get clarification on that.

18        THE COURT:  Go ahead, Ms. Sahmi.

19        MR. OPPENHEIM:  No, Your Honor, we have not agreed

20   to produce that, but, Your Honor -- as we said in the last

21   conference on this issue, I think Your Honor was considering

22   that, but I'm not sure that that has been decided.

23        THE COURT:  Okay, that's my order then.

24        MS. SAHMI:  We are producing work-for-hire

25   agreements in the Brighthouse case because we had been

16

1    ordered to do so.

2          THE COURT:  Okay.  Yeah, I mean, I actually see no

3    practical reason why I shouldn't require at least the

4    production of agreements that are already being produced

5    somewhere else, so that will be the order.

6          But again, do we have a feel for the overlap in

7    works between this and the Brighthouse case?

8          MS. GOLINVEAUX:  Your Honor, our understanding is

9    that the overlap is very substantial between the two cases.

10         THE COURT:  Okay.

11         MS. GOLINVEAUX:  My recollection is that it's in

12    the 80 percent range.

13         THE COURT:  I'm not inclined --

14         MS. SAHMI:  Your Honor, I think we discussed

15    this --

16         THE COURT:  Go ahead.

17         MS. SAHMI:  Sorry.

18         THE COURT:  You can go ahead.

19         MS. SAHMI:  I think we discussed at the last

20    conference.  The issue with producing it here is not simply

21    one as sort of deeming the production usable, but I think we

22    explained that this would open the door to substantial

23    additional discovery and Your Honor made clear that that was

24    not going to be permitted, but I just wanted to clarify

25    the -- the understanding on that, because the concern on our

1   end that we raised as to the burden is that then for every

2   deposition they're going to be going through -- you know,

3   it's just impractical to assume that our deponents need to be

4   prepped on, you know, thousands of work-for-hire agreements

5   and have painstaking depositions where they go through each

6   one by one.

7           THE COURT:  No, I understand, so what I want you to

8   do is whoever is in charge of discovery -- I mean, I'm in

9   charge of discovery.  I don't know whether that would be a

10  Special Master or Magistrate Judge issue, but I do want to

11  know if you're presented with what you consider to be that

12  additional unnecessary discovery as a result of the

13  production of the work-for-hire agreements.

14          So you just need to let me know when that comes in

15  and not wait -- if it's some kind of written discovery

16  request or deposition or whatever, just not wait until the

17  very end and then object because that will waste time.  I

18  need to know -- if you -- if you receive a discovery request

19  or more and you know from the very beginning that you are

20  going to object to this and this, in your view, is completely

21  inappropriate, you've got to to tell me right away rather

22  than, you know, maybe wait the full 33 days and then just

23  object and then I have to decide that later because that will

24  prolong the case.

25          So I'm open to those kinds of discussions being

1   held early and often, so -- okay, did you understand that,

2   Ms. Sahmi?

3        MS. SAHMI:  Yes, thank you, Your Honor.

4        THE COURT:  And what I want to do about the work

5   for hire, approximately when will those Brighthouse documents

6   be produced?

7        MS. GOLINVEAUX:  We are working on it, Your Honor,

8   in the Brighthouse case.  As we -- we alerted Court in that

9   case yesterday, there has been an outage of the eDiscovery

10  platform we're using for several days and so our production

11  has been delayed.  We're unable to review any documents at

12  present, so we sought additional time in that case, but we

13  have reviewed some, we're just not (inaudible) to make a

14  production.

15       But I assume that based on, you know, what we've

16  done to date, we'll be able to start making rolling

17  productions once the system has come back online, but right

18  now we haven't gotten an estimate from that third party

19  vendor as to when that will happen.

20       THE COURT:  So I want this to be the final

21  discussion for a while, at least, on work for hire.  Will you

22  send some kind of notice, e-mail is fine, when that

23  production starts occurring?  And, you know, as to

24  work-for-hire agreements that are in this case but not in

25  Brighthouse, I don't want to have that discussion until

1    Brighthouse work-for-hire agreements have been produced to

2    the defendants, defendants have done substantial

3    investigation and work and then can come and present to me

4    some kind of comprehensive outlook on what the fruit is of

5    the investigation into those work-for-hire agreements before

6    you seek anything further in this Court.

7            Ms. Golinveaux, did you understand that?

8            MS. GOLINVEAUX:  I do, Your Honor, thank you for

9    that.

10           THE COURT:  All right.  So what I want to do

11   then -- I think I will go ahead with the Special Master, but

12   Mr. Oppenheim, as for your side, or either side really, if

13   there is a point, a couple months down the road where you say

14   this is just not working, let's get together and talk it

15   through, okay?

16           MR. OPPENHEIM:  Very well, Your Honor.

17           THE COURT:  Okay.  What else can we do for you

18   today from the plaintiff's side?

19           MS. SAHMI:  Your Honor, the additional issue that

20   is on the table is the scheduling motion and response that

21   the parties have filed.

22           As we started to discuss at the last conference,

23   both parties agree that some extension is warranted.  Charter

24   has moved for an extension that we think is unduly long, for

25   a year-long extension of the trial date, and as plaintiffs

1  have noted in our response to the motion, we think that the

2  exact timing of any extension, it shouldn't be a full year,

3  but regardless, whether it's three to five months, turns on

4  essential question of whether Charter intends to assert a

5  safe harbor defense.

6          And we've asked repeatedly for its position on

7  that, at least as to the claim that it has not moved to

8  dismiss and Charter has repeatedly refused to provide that

9  information, and that makes it very hard, in our view, to

10  plan discovery accordingly as the scope of discovery

11  materially impacted based on whether or not Charter is

12  asserting that defense.

13          THE COURT:  Did I set a deadline?

14          MS. SAHMI:  So I believe we started to raise

15  this --

16          THE COURT:  I'm sorry, did I set a deadline for

17  that?

18          MS. SAHMI:  Sorry, Your Honor.  You have not set

19  any deadline at this point for them to assert that defense

20  and we would ask that they be required to do that immediately

21  so we can tailor a discovery accordingly.

22          MS. GOLINVEAUX:  Your Honor, if I may.

23          THE COURT:  Yes.

24          MS. GOLINVEAUX:  So as the Court knows, the

25  plaintiffs recently amended their complaint, this is many

1   months into the case.  Defendant has a pending motion to

2   dismiss.  And so under the Federal Rules of Civil Procedure,

3   no answer to the complaint is yet due until that motion to

4   dismiss is ruled upon.  We do not -- under the federal rules,

5   Charter does not need to plead affirmative defenses until it

6   responds to the complaint.  So it's time to do so and

7   (inaudible) plaintiffs have not come yet, and that's not that

8   a decision that we're prepared strategically to share with

9   them until we formally assert our affirmative defenses in the

10  case as part of responding to the complaint.

11          THE COURT:  Well, right, but it doesn't mean that I

12  won't allow discovery on it even if you're not going to show

13  your cards, so.

14          MS. GOLINVEAUX:  Understood, Your Honor.

15          THE COURT:  Okay.  Do you seek -- Ms. Sahmi --

16          MR. OPPENHEIM:  Your Honor, Matt Oppenheim, may I?

17          THE COURT:  Yes, go ahead.

18          MR. OPPENHEIM:  So, Your Honor, recently Judge

19  Jackson (inaudible) last year, I guess, and one of the things

20  that comes through loud and clear is a practical approach --

21  practical approach dealing with cases, and this is entirely

22  (inaudible).

23          Charter is not moving to dismiss the contributory

24  infringement claim, has never sought to dismiss the

25  contributory infringement claim, and on that claim they can

1    be ordered to answer and plead affirmative defenses.

2           With respect to the amendment, the amendment was

3    contemplated all along.  There is no substantive change at

4    all from what was previously pled, and yet this Court has

5    already ruled upon.  The notion that this Court should have

6    to rule again on motion papers, on a motion to dismiss, on a

7    complaint that substantively has not changed one bit is -- is

8    the kind of impractical over-litigious approach that we're

9    seeking to avoid.

10          So in my mind, it is -- I can't believe that, you

11   know, this far into the case they still have not indicated

12   whether they're pleading a fundamental affirmative defense to

13   the case; that is, the safe harbor.  It is -- they have known

14   probably since the day in 2016, I think, or '15 that I sent

15   them the original demand letter notifying them of the claims

16   of whether or not they were going to assert that defense.  It

17   is now five years -- four years later.

18          The idea that they should strategically, they

19   should be allowed to keep that closely (inaudible), to

20   prolong this case to me makes no sense and it is justice

21   denied because of justice delayed.

22          THE COURT:  So what --

23          MS. SAHMI:  Your Honor, if I may add to that --

24          THE COURT:  Hold on.  What have they done, and have

25   they answered in the other case or two or whatever is out

1   there?  And if, so did they assert that defense?

2         MS. SAHMI:  No, Your Honor, they are doing the same

3   thing in the Brighthouse case where they're refusing to state

4   whether they will take a safe harbor defense on the same

5   grounds and there they've tried to restart the clock by

6   filing a new motion to dismiss when we filed our not at all

7   changed amended complaint.

8         And so that -- and then they filed a motion to

9   dismiss that substantively is no different than their first

10  one further prolonging their ability to refuse to answer on

11  the contributory count.  That has never been the subject of

12  any motion to dismiss in either of these cases.

13        MS. GOLINVEAUX:  So, Your Honor -- I'm sorry.  I'm

14  sorry, go ahead, I didn't mean to cut you off.

15        MS. SAHMI:  That's all right, Jennifer.

16        So the issue is simply that they're both seeking an

17  unnecessary delay of the trial proceedings and then using

18  their failure to assert a defense and claiming there is some

19  uncertainty over the state of the pleadings which they

20  themselves have created to try to delay things even further,

21  and, you know, we have serious concerns about that.  And

22  there is no reason that one full year after we filed the

23  complaint they still will not tell us whether they're

24  asserting a safe harbor defense as to the count that has

25  never been subject to any motion to dismiss.

24

1           THE COURT:  Okay.  Well --

2           MS. GOLINVEAUX:  Your Honor, may I respond that.

3           THE COURT:  Yeah, but I think you need to know my

4    view on it first, and that is, of course, under Rule

5    12(a)(4), the Court may set a different time for answer, and

6    so I think we do have -- the Court does have the authority to

7    require a partial answer, but go ahead and state your

8    position.

9           MS. GOLINVEAUX:  Thank you -- thank you, Your

10   Honor.

11           Opposing counsel just said that we were trying to

12   delay things by following certain tactics in the Brighthouse

13   case.  In fact, what happened when they amended their

14   complaint, the Brighthouse Court, the District Judge mooted

15   out the pending motion to dismiss the vicarious and required

16   defendant to re- -- refile it as is appropriate under the

17   Federal Rules of Civil Procedure.  So that was not any kind

18   of maneuvering or strategic delay as opposing counsel was

19   trying to paint it as.  That's what the Court did in

20   Brighthouse, because it reached the Court there earlier than

21   it reached the Court in Colorado.

22           THE COURT:  So Ms. Golinveaux, do you agree with

23   the plaintiffs' position that the assertion of a safe harbor

24   defense would materially change discovery in the case?

25           MS. GOLINVEAUX:  Your Honor, I'm not sure that it

1   does.  The breadth of discovery they served so far, I find it

2   hard to imagine what additional categories they're holding

3   back on pending their knowledge of whether there is

4   affirmative defenses in the case or not.

5            MS. SAHMI:  Your Honor, if I may, I can respond to

6   one very discrete category that has been the subject of

7   discussions back and forth.

8            Charter has to date refused to produce any

9   information about notices that were sent by third parties

10  that do not relate to the safe subscribers identified in

11  plaintiffs' notices.  And so they refused to produce any

12  documentation or information related to their notices

13  generally received unless they're tied to plaintiffs

14  subscribers, the notices identified in claims -- the

15  subscribers identified that plaintiffs' notices.

16           So that is one core issue where Charter has refused

17  to go broader because it says it's not relevant, but if the

18  safe harbor was asserted, it would undoubtedly be relevant

19  and we should be entitled to receive information about any

20  notices they received, not just the ones that relate to those

21  subscribers.

22           THE COURT:  Okay.  Well, I think I'm apprized.

23  Anything else from the plaintiff?

24           MR. OPPENHEIM:  No, Your Honor, that's it on my

25  end.

1          THE COURT:  Okay.  And from defensor?

2          MS. GOLINVEAUX:  I think that covers it for the

3     defense, Your Honor.

4          THE COURT:  Okay.  So you know, I think with the

5     Special Master, what I don't want is overlap obviously, so if

6     there are matters that she is dealing with, I don't want you

7     to come to me, but I think I'm going to try and construct

8     some kind of method for you to come to me on maybe purely

9     legal issues that would then educate everyone as to their

10    discovery obligations.  We'll see how that works in practice.

11    It might, it might not.  It's kind of a new area for me to

12    try and do a hybrid, but, you know, I've always believed that

13    each case deserves its own consideration and we'll see how to

14    works.  Okay.

15         Thank you all for your appearances today.

16         MS. GOLINVEAUX:  Thank you, Your Honor.

17         MR. OPPENHEIM:  It thank you, Your Honor.

18         THE COURT:  Bye.

19         (Whereupon, the within hearing was then in

20    conclusion at 11:07 a.m.)

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    March 9, 2020

8    Signature of Transcriber               Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com