

North America   Europe   Asia

101 California Street
34th Floor
San Francisco, CA 94111
T +1 415 591 1000
F +1 415 591 1400

**JENNIFER A. GOLINVEAUX**
(415) 591-1506
jgolinveaux@winston.com

April 15, 2020

**VIA ECF**
Hon. R. Brooke Jackson
United States District Judge
Alfred A. Arraj United States Courthouse
901 19th Street
Denver, CO 80294

Re:   *Warner Records, et al. v. Charter Communications, Inc.*, Case No. 1:19-cv-00874-RBJ-MEH

Dear Honorable Judge Jackson:

Charter responds to Plaintiffs' April 8, 2020 Letter (Dkt. 156) seeking approval to move to dismiss Charter's counterclaims. The request should be denied as Plaintiffs' arguments lack merit. To the extent the Court deems more support necessary, Charter requests the opportunity to amend.[1]

I.   **Charter's Declaratory Judgement Claim for Non-Infringement**

Plaintiffs' anticipated motion to dismiss Charter's declaratory judgment claim for non-infringement lacks merit. Plaintiffs assert claims in this case between March 24, 2013 and May 17, 2016 (the "Claim Period"). Charter's counterclaim for non-infringement is not limited to Plaintiffs' Claim Period and, therefore, not a mirror-image of Plaintiffs' claim. When deciding whether to exercise jurisdiction over a declaratory judgment claim, courts are to consider, in part, whether the claim would settle the controversy and whether it would serve a useful purpose in clarifying the legal relations at issue. *See State Farm Fire & Cas. Co. v. Mhoon,* 31 F.3d 979, 982 (10th Cir. 1994). Here, Charter's counterclaim satisfies both these elements. *See also Prograde Ammo Grp. LLC v. Perry,* 2015 WL 1064266, at *3 (D. Colo. Mar. 9, 2015) (refusing to dismiss a non-infringement counterclaim that exceeded plaintiff's infringement claim).[2] During a meet and confer, Plaintiffs' counsel raised the issue of whether, if Plaintiffs stipulated not to pursue the same claims post-Claim Period, Charter would dismiss this counterclaim. Charter asked Plaintiffs' counsel to confirm whether Plaintiffs were amenable to the stipulation but have not yet heard back.

---

[1] Charter informed Plaintiffs that it would amend its Counterclaims to add a claim pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. 6-1-101 *et seq*. Charter still intends to add this claim pursuant to Fed. R. Civ. P. 15(a)(1)(B) after Plaintiffs file a motion under Rule 12 or answer.
[2] Plaintiffs' reliance on *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195–96 (D. Colo. 2018) and *PDX Pro Co. v. Dish Network, LLC,* 2013 WL 3296539, at *2 (D. Colo. July 1, 2013) is misplaced, as neither of those cases dealt with *counterclaims* seeking a declaratory judgment.



April 15, 2020
Page 2

## II. Charter's DMCA Section 512(f) counterclaim, 17 U.S.C. §512(f)

Charter also asserts a counterclaim for Plaintiffs' violation of § 512(f) of the Digital Millennium Copyright Act ("DMCA"). The DMCA provides safe harbor for online service providers whose users infringe third-party content. § 512(f) protects ISPs that receive knowingly false notices of alleged infringement by its subscribers. Charter asserts this claim because Plaintiffs sent Charter notices for hundreds of works that they dropped from this case after being ordered to produce basic chain of title information. Plaintiffs argue that this counterclaim should be dropped because Charter has failed to adequately allege the elements of the claim, including Plaintiffs' knowledge, and that the counterclaim is otherwise time-barred. Neither argument has merit.

Plaintiffs first argue that Charter does not adequately allege "that it suffered cognizable harm" in connection with its § 512(f) counterclaim, on the basis that Charter did not *itself* remove material from the Internet. But the statute does not prescribe any particular means of "removal or blocking," and there is no dispute that Charter, in forwarding the notices, took the only steps in its power to remove the accused material. Charter's allegations of harm easily meet the pleading standard: it alleges it was harmed by incurring costs in processing the notices and because false notices create tension with Charter's subscribers, negatively affecting goodwill and causing reputational harm to Charter, and that it was injured because it was required to investigate the false notices. Countcls., ¶¶ 121-124. The mere fact that Charter, a § 512(a) "conduit" service provider, does not host and cannot *itself* remove content does not mean it is not harmed by Plaintiffs' false notices. Plaintiffs' cited cases, which concern § 512(c) content hosting services, are inapposite. Congress "intended [§ 512(f)] to deter knowingly false allegations to service providers in recognition that such misrepresentations are detrimental to rights holders, service providers, and Internet users." H.R. Rep. 105-551 (pt. 2) at 59. Section 512(f) should be interpreted to apply to ISPs like Charter, which otherwise would have no recourse against knowingly inaccurate notices.

Plaintiffs also argue Charter's allegations that they "should have known" the notices were false are insufficient. But many courts to address this issue hold it is. *See Johnson v. New Destiny Christian Ctr. Church, Inc.*, 2017 U.S. Dist. LEXIS 136788, at *7 (M.D. Fla. Aug. 25, 2017) ("knowingly" "means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations").[3] It is an issue of fact whether Plaintiffs had a good faith belief.

Contrary to Plaintiffs' contention, *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000 (9th Cir. 2004) did not create a bright-line rule—even in the Ninth Circuit—that a § 512(f) claim requires actual knowledge of falsity. *See, e.g. Automattic*, 82 F. Supp. 3d at 1026-27 (finding "knowing misrepresentation" when "Defendant could not have reasonably believed that the [allegedly infringed material] … was protected under copyright."). And *Rossi* is also inapposite

---

[3] *See also Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026-27 (N.D. Cal. 2014); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 704 (D. Md. 2011); *Disney Enters. v. Hotfile Corp.*, 2013 U.S. Dist. LEXIS 172339 (S.D. Fla. Aug. 28, 2013) (where plaintiffs did not own works for which they had sent notices, a *lack* of good-faith belief that content was infringing could form the basis for a § 512(f) counterclaim.).



April 15, 2020
Page 3

where, as here, a notice sender does not own the works at issue, or lacks authorization to send notices on behalf of the rights owner. Indeed, this Court reached the same conclusion in *Dudnikov v. MGA Entm't, Inc.*, when it held that overcoming a § 512(f) counterclaim "required [defendant] to show that it had a sufficient basis to form the required good faith belief that the plaintiffs' auction infringed on its rights." 410 F. Supp. 2d 1010, 1013 (D. Colo. 2005). Plaintiffs' "subjective good faith" argument is even more implausible in light of false statements in their notices—made under penalty of perjury—that the sender was authorized to act on behalf of the copyright owner. *See* 17 U.S.C. § 512(c)(3)(A)(vi). Statements made under the penalty of perjury are permitted in lieu of requiring that such statements be sworn to before an official, *see* 28 U.S.C. § 1746, and "swearing to the truth of false information is perjury," *Zunogama v. Vigil*, 2015 U.S. Dist. LEXIS 50126, at *4 (D. Colo. Apr. 16, 2015) (Mix, Mag. J.). Plaintiffs cite no authority that it is possible to form a "good faith belief" without any basis to do so—still less that a putative "subjective good faith belief" can excuse a false statement made under penalty of perjury. Much more is required.

Charter's allegations are clearly sufficient under the proper standard. It alleges that Plaintiffs "knew or should have known, that the notices contained inaccurate information before they were sent. For example, the Record Company Plaintiffs knew, or should have known, that they did not own or control certain of the works identified in notices sent to Charter before they were sent." Countcls., ¶ 116. "Plaintiffs nevertheless sent, or authorized the sending of, notices to Charter, despite this knowledge." *Id.*, ¶ 117; *see also id.*, ¶ 74. And despite Plaintiffs having recently been awarded statutory damages of nearly $100,000 per work in a separate case for certain works dropped in this case, Plaintiffs' counsel was unable to confirm to Judge Hegarty that Plaintiffs actually owned those works. *Id.*, ¶ 72; ECF 138 (Feb. 19, 2020 Hr'g Tr. 30:6-31:2).

Plaintiffs also incorrectly argue that Charter's § 512(f) claim is time-barred by the "DMCA's three-year statute of limitations" and cite to "Section 512(b) of the DMCA." But neither Section 512(b) nor any other section of the DMCA contains a statute of limitations. Presumably Plaintiffs intended to cite to the Copyright Act's general three-year statute of limitations set forth in § 507(b). But—as Plaintiffs fail to address—the discovery rule broadly applies to claims arising under the Copyright Act. *See Diversey v. Schmidly*, 738 F.3d 1196, 1201 (10th Cir. 2013); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014).[4] Here, Charter adequately alleges the basis for application of the discovery rule. While Charter received Plaintiffs' notices between 2013 and 2016, it was not until January 15, 2020, after Plaintiffs dropped the works identified in these notices, that Charter learned of the false statements at issue in this counterclaim, well within the Copyright Act's general three-year statute of limitations. ECF 111. The discovery rule precludes dismissal based on the statute of limitation; if anything, the question is one for the finder of fact. *See Minck v. BNSF Ry. Co.*, 2013 WL 3895031, at *4 (D. Colo. July 26, 2013) (Jackson, J.).

Respectfully submitted,

*s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux

---

[4] Plaintiffs' only authority is inapposite as it turns on whether statutes of limitation on counterclaims are tolled by the complaint. *See Handshoe v. Perret*, 2018 WL 5316361, at *11 (S.D. Miss. Oct. 26, 2018).