IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

# DISCOVERY ORDER

---

This order addresses defendant's objections to discovery orders issued by United States Magistrate Judge Michael E. Hegarty on October 29, 2018. ECF No. 84. Defendant's objections on one of the two issues were amplified, and Judge Hegarty's decision on that issue was modified, in a later hearing, and I also address those changes in this order.

## BACKGROUND

Plaintiffs claim that the defendant has allowed its customers to use its internet service to infringe plaintiffs' rights on copyrighted works. The alleged facts are more fully described in an order I issued on April 15, 2020 denying defendant's motion to dismiss. ECF No. 157.

## STANDARD OF REVIEW

Timely objections to a magistrate judge's order on a non-dispositive matter may be modified or set aside by the district judge only to the extent that the order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

## ANALYSIS AND CONCLUSIONS

Defendant objects to two discovery orders, one concerning certain financial information, and the other concerning "CAS" agreements.

### A. Financial Information.

Many, perhaps nearly all, of the plaintiffs in the present case are also plaintiffs in a similar case in the Eastern District of Virginia referred to as the "Cox" case. The Cox case, to which Charter was not a party, was recently tried. The law firms on both sides of the present case were also involved in the Cox case, although for the most part different individual lawyers are involved here.

In Cox, plaintiffs produced, over objection, information concerning their actual losses from alleged infringement (revenues, profits, etc.). Plaintiffs' counsel in the present case describes the information produced in Cox as track-level revenue information to the extent that it existed and was available. ECF No. 80 at 14. In the October 29, 2019 hearing in this case, the lawyers indicated that about 80% of this information that was produced in Cox overlaps financial information that defendant seeks in the present case. In the pending objection defendant clarifies that the overlap is 79%, and that the overlap is due at least in part to the fact that the relevant period in Cox was February 2013 to November 2014, whereas the relevant period in this case is March 1, 2013 to May 17, 2016. ECF No. 84 at 9.

Plaintiffs represent that much of the per-work information that defendant is requesting in the present case does not exist. Such information as does exist was produced in the Cox case, for the period applicable in Cox, but it was very burdensome to compile. Plaintiffs argue that the information is not relevant because they are seeking statutory damages, not actual damages.

Defendant claims that there is a range of possible damages even in a statutory damages case, and the jury should at least have a sense of plaintiffs' actual losses in setting a number

2

within that range.  Defendant also argues that burdensomeness should be considered in the context of plaintiffs' potential demand for damages of $1 billion or more.

Plaintiffs deny that the information produced in the Cox case was useful even for the purpose defendant wants it.  The Cox trial apparently hadn't yet started when the October 29, 2019 discovery hearing was held in this case, and it was in progress when the December 17, 2019 hearing was held in this case.  That case concluded with a verdict in favor of the plaintiffs on December 19, 2019.  *See* ECF No. 106.  The extent to which the subject information was used during the Cox trial, if any, is unknown to me at this time.

Judge Hegarty ordered plaintiffs to produce the information that was ordered to be produced in the Cox case.[1]  He found that an 80% sample was sufficient to enable reasonable inferences to be drawn about the other 20%.  ECF No. 80 at 21-22.  It is not true, as defendant now argues, that Judge Hegarty's ruling "effectively foreclosed Charter's ability to conduct a basic investigation into . . . the value and alleged damages related to the thousands of works at issue in this case."  ECF No. 84 at 5.  He dealt with what plaintiffs claimed to exist, and he made a practical decision as to whether plaintiffs need to spend what they assert will be a very substantial amount of time and effort to produce the additional 20% of those documents that admittedly exist but did not overlap with Cox.  Judge Hegarty left the door open to ordering production of additional work-by-work information if defendant can establish, perhaps in a Rule 30(b)(6) deposition, that there is more to be found.

Defendant asks this Court to order plaintiffs to update the information produced in the Cox case and to produce the same type of information that fits the timeframe relevant to this case but wasn't produced in Cox.

---

[1] The brief minute order issued later that day, ECF No. 76, didn't change anything on this subject, and I am going by the actual transcript of the hearing in considering defendant's objections.

**Ruling:**

Plaintiffs have estimated that their claim might involve 11,000 works (songs) with as many as five or more alleged infringements per work. It is inconceivable that a jury could examine that number of works individually and calculate damages separately on a work by work basis. That might be defendant's litigation position, *see, e.g.,* ECF No. 80 at 9, but it is unrealistic from a practical standpoint. If plaintiffs can prove liability, the alternatives regarding a monetary remedy appear to be no remedy (because it can't be done on a work by work basis) or a realistic but reasonable means by which a jury could consider damages.

I agree with defendant and Judge Hegarty that it is reasonable for the jury to have some understanding of the level of actual losses plaintiffs allegedly incurred despite plaintiffs' limitation for their claim to statutory damages. The information that was ordered to be produced in the Cox case might be a means of providing such an understanding, although that is disputed. For discovery purposes – which is all that is before me now -- I have no problem with it. Producing it again in this case involves minimal burden. Perhaps defendant will be able to show that something more is available after obtaining deposition testimony, but that remains to be seen. I will, however, assume as Judge Hegarty did -- unless and until a qualified expert can convince me otherwise -- that a roughly 80% sample is statistically enough to permit reasonable inferences to be drawn about the remaining 20%. Regardless of the size of the claim, neither party should be required to do something that is unreasonable.

The cases defendant cites at page number 10 of its objection, ECF No. 84 at 15, miss the point. [2] As I have said, Judge Hegarty did not suggest that jurors should not have any

---

[2] Incidentally, and of course this applies to both sides, in any future motion or brief that you file in this case please comply with the page limits set in my practice standards. For non-dispositive motions it's 15 pages motion (or objection) and response, 5 pages for a reply. Please count from the top of the caption to the bottom of the certificate of service. One of my former partners famously used romanettes, fonts and

4

information about actual losses in a statutory damages case. He agreed with the defendant on that, but he dealt with what was presented to him. If the existence of additional relevant damages information is revealed by deposition testimony or otherwise, discovery of that information is not foreclosed.

The bottom line is that I find that Judge Hegarty's order on October 29, 2019 concerning damages discovery was not clearly erroneous or contrary to law. Plaintiffs should produce (meaning that defense counsel may now access) the information that the parties acknowledge overlaps the production in the Cox case. Defense counsel indicated that they would take the laboring oar of paring off that which does not overlap. ECF No. 80 at 20, 23. Plaintiffs apparently do not object to that. Plaintiffs are not required to update the overlapping information at this time. Again, it comes down to whether the information produced is a sufficient sample from which reasonable inferences may be drawn, and I have been provided nothing that tells me that Judge Hegarty's finding on that subject was clearly erroneous.

### B. CAS Agreements.[3]

In 2011 many of the same entities that are plaintiffs in the present case entered into agreements with five major providers of internet services. The parties refer to the five agreements as the "CAS" (Copyright Alert System) agreements and sometimes as "implantation agreements." The agreements set forth a multi-step protocol for how suspected infringements are to be addressed by the providers. A Memorandum of Understanding is publicly available, but the actual agreements with the protocol are not. The protocol does not require providers to terminate offending customers.

---

margins to create the allusion of compliance with page limits that applied in that era. Now that I am on this side of the bench, I would give him an "A" for effort but would strike his filing.

[3] Shortly after the briefing on defendant's objections was completed, defendant brought up the CAS agreement issue again during a discovery hearing on December 17, 2019. ECF No. 108 (transcript). I have used both transcripts to describe the facts and issues in this section.

Charter was not a party to the CAS agreements. However, it has requested production of the five agreements and related documents in this case. Charter argues that the agreements show plaintiffs' state of mind, i.e., what plaintiffs regard as reasonable conduct by an internet service provider. Because the agreements indicate that plaintiffs do not expect providers to terminate customers, they are evidence that plaintiffs' demand for termination of Charter's infringing customers in this case is unreasonable. Charter adds that the district judge in the Cox case ordered plaintiffs to produce the CAS agreements, and that they were admitted and frequently referenced during the trial of that case.

Plaintiffs argue that the CAS agreements are not relevant to the issues in this case. They are private agreements among the plaintiffs and the participating providers, resulting from compromises achieved after years of negotiation. By their terms the agreements do not purport to establish an industry standard or legal obligation. Charter's obligations must be determined by the law applicable to it, not by the terms of agreements to which Charter is not a party. The Cox court only ordered production of a limited set of documents, not the much broader request for all related documents that was (initially) made by Charter in this case. The broader request is subject to confidentiality and burdensomeness issues in addition to relevance issues.

Defendant replies that there is no burden vis-à-vis the CAS agreements themselves, because defendant's law firm already has them, and all Charter needs now is permission to access and use them in this case. Also, during the December 17, 2019 hearing defense counsel narrowed the request to just the agreements. ECF No. 108 at 83.

During the December hearing plaintiffs' counsel reiterated  previous arguments and indicated that they probably would have to go through the process of obtaining consents from the parties to the agreements again. However, because present counsel has not seen the agreements, she couldn't answer as to whether they contain a clause indicating that they could be produced on order of a court without the parties' consent.

Based on the information presented during the October 29, 2019 hearing, Magistrate Judge Hegarty found that the CAS agreements were not relevant, and he did not order plaintiffs to produce them. ECF No. 80 at 51. After hearing extensive (and repetitive) additional argument during the December 17, 2019 hearing, he reconsidered and ordered plaintiffs to obtain whatever consents they need and permit defendant to access the agreements. ECF No. 108 at 99.

**Ruling:**

The CAS agreements were negotiated compromises. It is difficult for me to see how what plaintiffs were willing to accept from those providers in that context is relevant to Charter's legal obligations in this case. Out of court agreements are made for various reasons including avoiding the risks inherent in litigation. However, Magistrate Judge Hegarty did not comment on the ultimate admissibility of the documents, and he also acknowledged the possibility that they might be used for impeachment purposes at a trial. Without commenting about the admissibility of the documents for any purpose, I simply find that his order to produce the CAS agreements (but not the related documents that were initially requested before counsel narrowed defendant's request) was not clearly erroneous or contrary to law.

## ORDER

Defendant's objection to the magistrate judge's discovery orders, ECF No. 84, is denied. However, the Court affirms the magistrate judge's subsequent order granting permission to the defendant to access the CAS agreements that are already in possession of defendant's law firm.

DATED this 16th day of April, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge