# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC., *et al.*,<br><br>　　Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>　　Defendant. | Case No. 1:19-cv-00874-RBJ-MEH |

## CHARTER COMMUNICATION, INC.'S SUBMISSION REGARDING ITS AFFIRMATIVE DEFENSES

Pursuant to the Court's directive (ECF 154), Defendant Charter Communications, Inc. ("Defendant" or "Charter") by and through its counsel, hereby identifies (1) affirmative defenses it will withdraw at this time, as they rebut elements of Plaintiffs' claims; (2) affirmative defenses it will withdraw at this time, reserving rights to seek to re-assert at a later date; and (3) affirmative defenses it seeks to maintain along with a short summary of the grounds it presently has to support the defense.

**I.    Procedural History**

On March 22, 2019, Plaintiffs filed their Original Complaint. ECF 1. On February 14, 2020, Plaintiffs filed their First Amended Complaint. ECF 123. On February 28, 2020, Charter filed a letter seeking leave to move to dismiss Plaintiffs' vicarious liability claim, which it had previously moved to dismiss from Plaintiff's Original Complaint. ECF 137.[1]

---

[1] On May 28, 2019, Charter first moved to dismiss Plaintiffs' vicarious liability claim. ECF 38. On October 21, 2019, Judge Hegarty recommended denying that motion, ECF 71 (the "Recommendation"), to which Charter timely objected. ECF 81. Upon the filing of Plaintiffs' First Amended Complaint, Charter's first motion to dismiss was mooted to the extent it was directed at a pleading that was no longer operative, ECF 121 (granting Plaintiffs leave to amend

On March 4, 2020, the Court directed Charter to respond to Plaintiffs' contributory liability claim, which was not subject to a pending motion to dismiss. ECF 141. On March 18, 2020, Charter timely responded, answering Plaintiffs' contributory liability claim, asserting affirmative defenses thereto, and two counterclaims. ECF 147.

On April 7, 2020, the parties held a meet and confer regarding Plaintiffs' intention to file a motion to strike certain of Charter's affirmative defenses. During this meet and confer, the parties also discussed Charter's intention to amend to assert an additional counterclaim and otherwise amend its affirmative defense, including in light of the parties' meet and confer discussions. The parties subsequently entered into a stipulation, which provided that Charter would amend its affirmative defenses and counterclaims by April 15, 2020. ECF 152. On April 8, 2020, the Court denied the stipulation and directed Charter to provide information regarding its affirmative defenses and, if necessary, the Court would order Plaintiffs to respond. ECF 154.

## II. Affirmative Defenses Charter Seeks to Withdraw Per the Court's Directive, as They Rebut Elements of Plaintiffs' Claims

The Court has directed Charter to withdraw affirmative defenses that seek to rebut elements of Plaintiffs' claims. On that basis, Charter hereby withdraws the defenses listed below, but reserves its right to re-assert any and all of these defenses should it be determined that the defense is properly postured as an affirmative defense.[2] Charter still intends to challenge Plaintiffs' claims on these grounds, and intends to seek appropriate discovery in support thereof.

---

and directing Charter to "file an answer or other response to the amended pleading in accordance with Fed. R. Civ. P. 15."). ECF 121. Thus, Charter sought to file a renewed motion to dismiss. ECF 137. On April 8, 2020, the Court indicated it would address the parties' letters regarding a renewed motion to dismiss after it has ruled on Charter's objections to the Recommendation. ECF 153. On April 15, 2020, the Court adopted the Recommendation. ECF 157.

[2] Charter also does so in reliance-upon the Court's directive that it will permit amendment should Charter later form a good-faith basis to assert these defenses. ECF 154; *see also* Fed. R. Civ. P. 15(a)(2); *List Interactive, Ltd. v. Knights of Columbus*, No. 17-CV-00210-RBJ, 2017 WL 4621277,

- Affirmative Defense No. 4: Plaintiffs' claims are barred or its damages are limited because any infringement was not willful.[3]

- Affirmative Defense No. 5: Plaintiffs' claims based upon secondary liability are barred because Plaintiffs cannot establish primary liability.

- Affirmative Defense No. 6: Plaintiffs' claims based on contributory liability are barred because Defendant did not have the requisite knowledge of the alleged primary infringement and did not cause, encourage, or induce the alleged primary infringement.

- Affirmative Defense No. 7: Plaintiffs' claims based on contributory liability are barred because Defendant did not materially contribute to the alleged primary infringement.

- Affirmative Defense No. 12: The doctrine of waiver bars Plaintiffs' claims.[4]

- Affirmative Defense No. 13: Plaintiffs' claims are barred to the extent they do not own copyrights in the works underlying their claims.

- Affirmative Defense No. 15: To the extent that Plaintiffs or their predecessors did not register copyrights before alleged infringements or within three months of first publication of published works, the failure to register timely bars Plaintiffs' claims for statutory damages and attorneys' fees.

---

at *3 (D. Colo. Oct. 13, 2017) ("The Court takes seriously the command of Rule 15(a)(2) that leave to amend should be freely given when justice so requires.").

[3] Charter asserted a combined innocent infringement and non-willful defense. Those defenses are separately addressed herein.

[4] Charter asserted a combined waiver and estoppel defense. Those defenses are separately addressed herein.

### III. <u>Affirmative Defenses Charter Seeks to Withdraw Reserving Rights to Reassert</u>

Pursuant to the Court's order, Charter hereby seeks to withdraw the following affirmative defenses, reserving its rights to reassert these defenses at a later point in this case.[5] Charter states that it intends to pursue additional facts in support of these defenses, so as to assert them at a later date, if appropriate, including by seeking discovery from Plaintiffs and/or third-parties in support of these and other defenses.

- <u>Affirmative Defense No. 1</u>: The Complaint, and each cause of action within it, fails to state facts sufficient to constitute a cause of action.

- <u>Affirmative Defense No. 2</u>: The statute of limitations bars Plaintiffs' claims to the extent Plaintiffs allege infringements that accrued outside the three-year limitations period, including any applicable tolling of the limitations period.

- <u>Affirmative Defense No. 3</u>: Plaintiffs' claims are barred by their failure to join indispensable parties.

- <u>Affirmative Defense No. 12</u>: The doctrine of waiver bars Plaintiffs' claims.[6]

- <u>Affirmative Defense No. 14</u>: The Court lacks subject matter jurisdiction over claims that depend upon works for which Plaintiffs have not obtained copyright registrations.

- <u>Affirmative Defense No. 18</u>: Plaintiffs' claims are barred because the statutory damages sought are unconstitutionally excessive and disproportionate to any actual

---

[5] Here, also, Charter does so in further reliance-upon the Court's directive that it will permit amendment should Charter later form a good-faith basis to assert these defenses. ECF 154; *see also* Fed. R. Civ. P. 15(a)(2); *List Interactive, Ltd.*, No. 17-CV-00210-RBJ, 2017 WL 4621277, at *3 ("The Court takes seriously the command of Rule 15(a)(2) that leave to amend should be freely given when justice so requires.").

[6] Charter asserted a combined waiver and estoppel defense. Those defenses are separately addressed herein.

damages that may be sustained, in violation of the Due Process clause of the U.S. Constitution.

- Affirmative Defense No. 19: Application of the Copyright Act and its remedies to the conduct of Defendant and their customers as Plaintiffs request would violate due process.

- Affirmative Defense No. 20: Plaintiffs' claims are barred by the First Amendment to the United States Constitution.

## IV. Affirmative Defenses Charter Seeks to Maintain

Pursuant to the Court's directive, Charter seeks to maintain the following affirmative defenses, which it believes it has pleaded with sufficient particularity. *See* Fed. R. Civ. P. 8(b)(1)(A); *see also Cagle v. The James St. Grp.,* 400 F. App'x 348, 355 (10th Cir. 2010) ("The rules do not require a party to plead every step of legal reasoning that may be raised in support of its affirmative defense; they only require a defendant to state in short and plain terms its defenses to a plaintiff's claims."); *Wanamaker v. Albrecht*, 99 F.3d 1151 (10th Cir. 1996) (approving of the practice of preserving affirmative defense for purposes of pursuing discovery in support thereof).

To the extent the Court deems any of these affirmative defenses to be inadequately pleaded, Charter requests the opportunity to amend and/or provide additional support.

### 1. Affirmative Defense No. 4: Plaintiffs' claims are barred or its damages are limited because any infringement was innocent.[7]

The Copyright Act provides that, in a case for statutory damages, which this is, where the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages

---

[7] Charter asserted a combined innocent infringement and non-willful defense. Those defenses are separately addressed herein.

to a sum of not less than $200." 17 U.S.C. § 504(c)(2). Court construe this as an affirmative defense. *See, e.g.*, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13CV816, 2016 WL 5092593, at *4 (S.D.N.Y. Sept. 19, 2016) ("When statutory damages are sought, a defendant may demonstrate that he is an innocent infringer if he sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright.") (internal quotations and citations omitted).

Here, during the Claim Period (March 2013 through May 2016), Charter's terms of service prohibited copyright infringement, and Charter had a procedure and system whereby it would process notices alleging copyright infringement and forward them to Charter's subscribers reiterating that infringement violated Charter's terms of service. Further, given that Plaintiffs' notices are unsubstantiated accusations of copyright infringement—for which Plaintiffs provided no proof—it was unclear that the claims contained therein actually demonstrated copyright infringement. These and other facts to be developed form the basis of this affirmative defense.

    **2.**  **Affirmative Defense No. 8: Plaintiffs' claims are barred because Defendant's ISP service has substantial non-infringing uses.**

It is undisputed that Charter's ISP service has substantial, non-infringing uses. Thus, plaintiffs cannot establish contributory liability based merely on the fact that certain of Charter's subscribers used its service to infringe. *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 306 (4th Cir. 2018) ("The *Grokster* Court explained that under *Sony*, intent to infringe will not be presumed from 'the equivocal conduct of selling an item with substantial lawful as well as unlawful uses,' even when the seller has the 'understanding that some of [his or her] products will be misused.' More is needed.") (quoting *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932-33 (2005)). Even though this is an element of Plaintiffs' contributory liability claim (*id.*), courts and commentators have recognized it as an affirmative

defense, *see, e.g.*, *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 262 (5th Cir. 1988),[8] as Charter does here.[9]

Charter is an ISP—it provides millions of its subscribers access to the Internet. It does not host infringing websites, it does not store infringing content on its servers, it does not promote the ability to infringe on its network, and it does not profit from infringement. The peer-to-peer ("P2P") networks on which Plaintiffs claim their works were infringed are equally-accessible through all ISPs. Thus, there is no question that Charter's ISP service has substantial, non-infringing use. Indeed, Charter's subscribers use its Internet service for a plethora of non-infringing uses, such as to send and receive email, access their bank accounts, perform on-line shopping, communicate with family and friends, work remotely, attend school, stream videos, music, and video games, and download media. This is particularly apparent in that Plaintiffs and their counter-parts in the film and television industries rely on ISPs like Charter for the vast majority of their revenue, which is now derived from at-home or mobile streaming. Indeed, the variety of legitimate, non-infringing uses of Charter's services are more evident than ever as the United States is under a directive to stay home during the COVID-19 pandemic. These and other facts to be developed form the basis of this affirmative defense.

---

[8] *See also Malibu Media, LLC v. Wong*, No. CIV. 2:14-5238 WJM, 2015 WL 4393917, at *1 (D.N.J. July 16, 2015) (denying motion to strike affirmative defense of substantial non-infringing use); Jiarui Liu, *Why Is Betamax an Anachronism in the Digital Age? Erosion of the Sony Doctrine and Indirect Copyright Liability of Internet Technologies*, 7 Vand. J. Ent. L. & Prac. 343, 348 (2005); *cf. Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286, at *32 (S.D. Fla. Sept. 20, 2013).

[9] *Cf. Malibu Media, LLC v. Batz*, No. 12-CV-01953-WYD-MEH, 2013 WL 2120412, at *3 (D. Colo. Apr. 5, 2013) (Hegarty, J.), *report and recommendation adopted*, No. 12-CV-01953-WYD-MEH, 2013 WL 2115236 (D. Colo. May 15, 2013) ("[T]his defense may be construed as merely a denial of Plaintiff's claim and need not be stricken if the Plaintiff is not prejudiced by it.") (citing *Home Design Servs., Inc. v. Trumble,* No. 09–cv–00964–WYD–CBS, 2011 WL 843900, at *3 (D. Colo. Mar. 8, 2011)).

# 3. Affirmative Defense No. 9: Plaintiffs' claims are barred by the doctrine of copyright misuse.

"The copyright misuse doctrine is an equitable defense to a copyright infringement action that forbids the use of a copyright to secure an exclusive right or limited monopoly not granted by the copyright office and is contrary to public policy to grant." *Malibu Media, LLC v. Miller*, Case No. 13-cv-02691-WYD-MEH, 2014 WL 2619558, at *4 (D. Colo. June 12, 2014) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999)). Courts look to whether the plaintiff "illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws." *Id*. (internal citation omitted). Courts may also consider a plaintiff's other fraudulent or wrongful actions. *See Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,* 121 F.3d 516, 520 (9th Cir. 1997).

Here, Charter relies on Plaintiffs' act of registering the vast majority of their sound recordings in suit as works "made for hire." Charter will seek to establish that many of these works were not works "made for hire" but Plaintiffs nevertheless fraudulently registered them as such in order to wrongfully extend their control. As one court explained, this practice confers substantial economic benefits onto record companies, like Plaintiffs:

> [A]n author has greater rights than one who acquires a copyright through an assignment, including the right to terminate all transfers of ownership after 35 years. 17 U.S.C. § 203. … The author's right of termination is intended to counter the "unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." H. R. Rep. No. 94–1476, at 5740 (1976). Because the record company plaintiffs list the copyrights as works for hire, they are considered to be the authors and do not have to face the prospect of artists terminating plaintiffs' ownership rights after 35 years. The result is that plaintiffs effectively guarantee themselves 95 years of copyright ownership—a total of 60 additional years beyond what they would have if the artists were listed as the authors.

*In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002). Charter intends to establish through discovery, including its pending request for Plaintiffs' work-for-hire

agreements,[10] the scope of Plaintiffs' practice of systematically misrepresenting to the Copyright Office the "made for hire" status of their works-in-suit, how they did this in order to expand their control over copyrights, and how this practice harms the public. These and other facts form the basis of this affirmative defense. Charter intends to develop further factual support for this defense.

### 4. Affirmative Defense No. 10: Plaintiffs' failure to mitigate damages bars their claims or limits their recovery.

A copyright plaintiff's failure to mitigate is an appropriate affirmative defense in a statutory damages case. *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 677 (E.D. Va. 2015) (O'Grady, J.), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) ("*BMG*"). In the recent *Sony* trial, many of these same Plaintiffs argued that mitigation cannot serve as a defense to liability, which that court rejected for the second time. *Sony Music Entm't et al. v. Cox Commc'ns, Inc. et al*, Case No. 1:18-CV-950-LO-IDD, ECF No. 599 (O'Grady, J.).[11] Many other courts are in accord. *See, e.g.*, *Malibu Media, LLC v. Guastaferro*, No. 1:14-cv-1544, 2015 WL 4603065, at *5 (E.D. Va. July 28, 2015); *Luxottica Group, SpA v. Airport Mini Mall, LLC*, 186 F. Supp. 3d 1370, 1378 (N.D. Ga. 2017); *Malibu Media, LLC v. Julien*, No. 1:12-cv-

---

[10] ECF 140 (Judge Hegarty is awaiting Charter's analysis of Plaintiffs' work for hire agreements, which will ultimately be produced in *UMG Recordings, Inc. v. Bright House Networks, LLC*, Case No. 8:19-cv-00710-MSS-TGW (M.D. Fla.), before ruling on Charter's request for these agreements in this case, *see* ECF 135).

[11] While Judge O'Grady admitted some evidence in support of the mitigation defense, at the conclusion of the trial, he ultimately declined to provide a jury instruction, as he concluded there was an insufficient evidentiary basis to do so. However, Judge O'Grady separately allowed Cox to argue, in connection with the jury's consideration of statutory damages, that Plaintiffs had failed to mitigate their alleged harm.

01730-TWP-MJD, 2013 WL 5274262, at *2 (S.D. Ind. Sept. 17, 2013); *Malibu Media, LLC v. Zumbo*, No. 2:13-cv-729-JES-DNF, 2014 WL 2742830, at *3 (M.D. Fl. June 17, 2014) (same).[12]

Here, Charter will rely, in part, on the fact that Plaintiffs could have, but failed, to sue the direct infringers at issue, including the commercial and residential subscribers that were the subject of higher volumes of notices. Plaintiffs received from their lobbying agent the Recording Industry Association of America ("RIAA") (and/or its vendor MarkMonitor) weekly reports identifying the IP addresses that were the subject of certain volumes of notices. Plaintiff could have sued these subscribers in order to mitigate their own purported damages from Charter's subscribers alleged infringement. Plaintiffs also engaged in a decade-long campaign in which they sued tens of thousands of individual Internet subscribers for direct infringement. Plaintiffs' failure to maintain these efforts cannot be attributed to Charter and other ISPs alone. Further, Plaintiffs did not, at any point in time, request that Charter take any specific action against its subscribers, let alone terminate their service, including those who were the subject of higher volumes of notices. These

---

[12] There is a series of cases deciding the opposite, citing the Tenth Circuit's holding in *Moothart v. Bell*, 21 F.3d 1499, 1506-1507 (10th Cir. 1994). *Moothart* and its progeny are inapposite, however, as *Moothart* dealt not with statutory damages in a copyright infringement action but rather ERISA's *penalty* provision. *See id.* (emphasizing that mitigation was unavailable because "the penalty statute is just that, a penalty," and explaining that the penalty provision "is intended to punish noncompliance with the employer administrator's disclosure obligation and not to compensate the participant."); *see also Malibu Media, LLC v. Julien*, at *2 ("*Moothart* is inapplicable because it applies to statutory damages in an ERISA case … As *Moothart* emphasizes, that statute's sole purpose is to penalize violators for noncompliance and does not take into account plaintiff's actual damages. In copyright infringement cases, however, the purpose of statutory damages is to serve a dual purpose of compensating the plaintiff for any actual damages that are not easily ascertainable and to deter future copyright infringement. Therefore, *Moothart* is inapplicable to copyright infringement cases.") (internal citations omitted). Charter submits that *Moothart* is not controlling and that the district court cases which cite to it should not otherwise be deemed by this Court as persuasive authority.

and other facts form the basis of this affirmative defense. Charter intends to develop further factual support for this defense.

> 5. **Affirmative Defense No. 12: The doctrine of estoppel bars Plaintiffs' claims.**[13]

"[E]quitable estoppel applies both in law and in equity to deny a party the right to plead or prove an otherwise important fact—here, the act of infringement—because of something he has done or omitted to do." *Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*, 746 F. Supp. 320, 329 (S.D.N.Y. 1990) (quoting *Tempo Music, Inc. v. Myers,* 407 F.2d 503, 507 n. 8 (4th Cir. 1969)). More specifically, "a copyright defendant invoking equitable estoppel must show that: 1) the plaintiff had knowledge of defendant's infringing acts, 2) the plaintiff either intended that defendant rely on his acts or omissions or acted or failed to act in such a manner that defendant had a right to believe that it was intended to rely on plaintiff's conduct, 3) the defendant was ignorant of the true facts, and 4) the defendant relied on plaintiff's conduct to its detriment." *Dallal v. The New York Times Co.*, No. 05-2924, 2006 WL 463386, at *1 (2d Cir. Feb. 17, 2006)

Here, Charter will establish this affirmative defense by demonstrating Plaintiffs' acquiescence and active participation in music sharing on P2P networks—like BitTorrent, Inc. ("BitTorrent"). Indeed, beginning in or around the Claim Period, upon information and belief, Plaintiffs made their works available on P2P networks as part of, for example, a "BitTorrent Bundle."[14] Charter intends to further explore in discovery the extent to which Plaintiffs (whose

---

[13] Charter asserted a combined waiver and estoppel defense. Those defenses are separately addressed herein.

[14] For example, in response to a letter sent by the RIAA to BitTorrent, BitTorrent's former Chief Content Officer stated the following: "[t]oday over 30,000 publishers, including all of the major record labels [the RIAA] represent[s], have signed up to legally publish a Bundle on BitTorrent.com. As have studios including Universal and Sony Pictures Classics, not to mention a litany of independent labels, studios and independent content creators. The reason RIAA members publish on BitTorrent Bundle is because it's a great platform that helps them and the artists they

11

marketing personnel may have been in direct tension with their "anti-piracy" or "content protection" personnel) allowed their works to be traded on P2P networks, which were equally-accessible through all ISPs, including Charter. These and other facts form the basis of this affirmative defense. Charter intends to develop further factual support for this defense.

      **6.    Affirmative Defense No. 16: To the extent that Plaintiffs rely upon copyright registrations that rest upon misstatements or fraud, those misstatements or fraud bar Plaintiffs' claims.**

This affirmative defense sounds in fraud on the Copyright Office and,[15] in the alternative, the affirmative defense that certain of Plaintiffs' registrations should be invalidated pursuant to 17 U.S.C. § 411(b)(1)-(2).[16]

In support of this affirmative defense, Charter intends to rely on some of the same factual bases outlined in connection with Affirmative Defense No. 9 (copyright misuse), namely that Plaintiffs knowingly misrepresented whether works were "made for hire" when applying with the U.S. Copyright Office for copyright registrations. Charter will rely on the registration statements, the fact that works were not "made for hire," and the fact that Plaintiffs knew that their representation on the subject applications was false. Charter intends to develop further factual support for this defense.

---

represent attract new fans, sell music and make money." Jason Abbruzzese, *BitTorrent defender sends scathing letter to music-industry lobby*, Mashable (Aug. 11, 2015), https://mashable.com/2015/08/11/bittorrent-fires-back-riaa/.

[15] *See Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) ("An allegation of fraud on the Copyright Office is typically brought in an infringement action as an affirmative defense to the enforcement of a registered copyright certificate.").

[16] Sections 411(b)(1) of the Copyright Act provides, in pertinent part, that a registration certificate is invalid for purposes of an infringement suit if "the inaccurate information was included on the application … with knowledge that it was inaccurate" and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). Before invalidating a registration on this basis, a court is required to seek a non-binding advisory opinion from the Register of Copyrights. *Id.*, § 411(b)(2).

> 7. **Affirmative Defense No. 17: To the extent that Plaintiffs failed to comply with renewal, notice, and registration requirements and/or other formalities, Plaintiffs' claim are barred.**

Charter intends to rely on certain of the same factual bases asserted in support of Affirmative Defense No. 16, including that, with respect to certain works in suit, Plaintiffs erroneously registered the works as "made for hire," which, when proven, may serve to invalidate the registrations, depriving Plaintiffs' of standing to assert claims for infringement of those works. *See* 17 U.S.C. § 411(b). Charter intends to develop further factual support for this defense.

> 8. **Affirmative Defense No. 21: To the extent that Plaintiffs can establish any underlying direct or secondary infringement, Defendant's liability and Plaintiffs' remedies are limited because Defendant qualifies for "safe harbor" under the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 512(a).**

To the extent secondary liability is established, the DMCA provides ISPs like Charter with safe-harbor from monetary damages and limits available injunctive relief where the proponent can show, in part, that it "reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." 17 U.S.C. § 512(i); *see also* 17 U.S.C. § 512(a) (the "DMCA Safe Harbor Defense").

Here, to the extent Plaintiffs can establish liability with respect to any of the works-in-suit, Charter will rely on the DMCA Safe Harbor Defense. Charter has several bases for this defense. Charter believes the facts will establish that its repeat infringer policy was reasonable and that the DMCA did not require it to cut off a subscriber's Internet service unless that subscriber was first adjudicated to be a repeat infringer, not merely based upon unsubstantiated third party assertions. Charter believes that the facts will show that none of Charter's subscribers who were accused by Plaintiffs were so adjudicated. Second, Charter believes that the record will show that its policies

and procedure in place during the Claim Period, including its response to receiving notices, fully complied with the requirements for the DMCA Safe Harbor Defense.

## V. Conclusion

Should the Court deem any of the affirmative defenses, as currently pleaded and explained herein insufficient, Charter requests the opportunity to amend or provide a more definite statement. Further, Charter seeks to withdraw those affirmative defenses identified in Sections II and III in reliance-upon the Court's directive that it will permit amendment should Charter later form a good-faith basis to assert these defenses. ECF 154; *see also* Fed. R. Civ. P. 15(a)(2); *List Interactive, Ltd.*, No. 17-CV-00210-RBJ, 2017 WL 4621277, at *3 ("The Court takes seriously the command of Rule 15(a)(2) that leave to amend should be freely given when justice so requires.").

Dated: April 16, 2020

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Respectfully submitted,

*s/ Erin R. Ranahan*
Erin R. Ranahan
Shilpa A. Coorg
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com
E-mail: scoorg@winston.com

Craig D. Joyce
John M. Tanner
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant Charter Communications, Inc.*

## CERTIFICATE OF SERVICE

I certify that on April 16, 2020, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

| | |
|---|---|
| Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Tel: (202) 851-4526<br>E-mail: matt@oandzlaw.com<br>E-mail: scott@oandzlaw.com<br>E-mail: jeff@oandzlaw.com<br>*Attorneys for Plaintiffs* | Mitchell A. Kamin<br>Neema T. Sahni<br>Mark Y. Chen<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Tel: (424) 332-4800<br>E-mail: mkamin@cov.com<br>E-mail: nsahni@cov.com<br>E-mail: mychen@cov.com<br>*Attorneys for Plaintiffs* |
| Janette L. Ferguson<br>LEWIS BESS WILLIAMS & WEESE, P.C.<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Tel: (303) 861-2828<br>E-mail: jferguson@lewisbess.com<br>E-mail: bleoni@lewisbess.com<br>*Attorneys for Plaintiffs* | Jonathan M. Sperling<br>William E. O'Neil<br>COVINGTON & BURLING LLP<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Tel: (212) 841-1000<br>E-mail: jsperling@cov.com<br>E-mail: woneil@cov.com<br>*Attorneys for Plaintiffs* |
| | Megan M. O'Neill<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Tel: (202) 662-5416<br>E-mail: moneill@cov.com<br>*Attorneys for Plaintiffs* |

                                          *s/ Erin R. Ranahan*
                                            Erin R. Ranahan