# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

## PARTIES' STIPULATION AND SPECIAL MASTER'S ORDER RESOLVING DISCOVERY DISPUTES

**Entered by Regina M. Rodriguez, Special Master, on April 28, 2020,**

On April 10, 2020, the parties submitted letter briefs detailing outstanding discovery disputes. On April 15, 2020 the parties filed responses in opposition to the other parties' letter briefs. The parties were able to reach agreement on several issues and arrived at a path forward on others. The issues on which the parties could not agree were argued at length and are now ripe for a determination.[1]

The Special Master heard oral argument on April 17, 2020 (the "Hearing"). This Order addresses the issues raised at the Hearing. The Special Master ruled as follows:

---

[1] The parties were instructed to submit letter briefs in advance of the April 17, 2020 telephonic hearing. Each party filed a motion to compel and a brief in opposition to the opposing party's motion to compel. The telephonic hearing on these issues lasted approximately four hours. I find that further argument or briefing on these issues would not be useful and will therefore rule at this time. *See* Fed. R. Civ. P. 1.

1. **DOCUMENT PRODUCTION SCHEDULE, SEARCH TERMS, AND PRIVILEGE LOGS.**

    A. Document production:

Defendant represents it has completed production of its documents, including emails. Plaintiffs have begun production and agree that they will substantially complete their production on or before:   **June 1, 2020**.

    B. Privilege logs:

Defendant will produce its privilege log on or before:        **May 25, 2020**

Plaintiffs will produce their privilege log on or before:        **June 22, 2020**

    C. Search terms:

Both parties have now exchanged search terms and lists of custodians for each discovery request where documents have been produced. The Order Approving the Protocol for Producing Documents and ESI, Dkt. 70, provides that the parties shall meet and confer in an attempt to reach an agreement on the scope of the relevant and proportional discovery within the meaning of Rule 26(b)(1), including with regard to search terms and custodians. The parties are expected to comply with the ESI Protocol and confer regarding the custodians and search terms if there is a dispute as to the scope of documents provided in response to a discovery request.

2. **PLAINTIFFS' MOTIONS TO COMPEL**

    A. Documents Sufficient to Identify the Subscribers Associated with Plaintiffs' Infringement Notices (RFP 11, 12, 9)

The Plaintiffs request information they claim is necessary for them to match IP addresses contained in infringement notices with particular subscribers. Plaintiffs claim that "only Charter can notify the subscriber of infringement claims, know how many times a subscriber was the

subject of infringement notices, and take steps to prevent continued infringement." (Pl. Letter Br. April 10, 2020) For this reason, Plaintiffs request Dynamic Host Configuration Protocol ("DHCP") logs, documents related to the retention policies for these logs, and documents sufficient to match specific subscribers to IP addresses.

Charter argues that the DHCP logs would not enable Plaintiffs to match specific subscribers to an IP address, but acknowledges Charter does have access to this information by "querying multiple internal systems that interrelate within Charter." (Def. Letter Br. April 15, 2020, p. 2) Charter objects to the production of this material as irrelevant, burdensome, and duplicative, because Charter has already produced "ticket-data" for all of the subscribers identified in Plaintiffs' notices from its internal abuse tracking system. *Id*.

Plaintiffs argue that the information is relevant because Plaintiffs allege that Charter is vicariously liable for subscriber infringement, and because Charter's safe harbor defense requires it to prove that it has implemented adequate processes to address and stop infringement. I agree.

The DHCP logs and other information sufficient to identify repeat infringers and communications with infringers is relevant to Plaintiffs' claims as well as Charter's defenses. While Charter states that the production would be burdensome due to the multiple steps it would need to undertake, it has provided no specific information regarding such burden to demonstrate the burden would be "undue." The discovery requested is relevant and proportional to the needs of the case, considering the importance of the issues at stake in the action and the amount in controversy.

**Defendant is ordered to produce information sufficient for Plaintiffs to match the IP addresses contained in infringement notices served on Charter with particular subscribers.**

3

During the telephonic hearing, the Defendant indicated that it would be easier for the Defendant to query the databases itself to create a document that includes the information that the Plaintiffs are seeking. (Tr. Apr. 17, 2020 Hearing at 78:7-25) Should the Defendant choose to do so, such a production would be in compliance with this Order. Of particular note, Defendant has also agreed to stipulate it did not terminate any user for infringement during the claim period. This will be considered in any determination of the need for additional information.

### B.  Personally Identifiable Information ("PII") for Residential Subscribers

Plaintiffs request PII for all residential subscribers that were the subject of Plaintiffs' notices of infringement and all subscribers identified in emails that the Defendant has produced in this case. The Defendant argues that such a request implicates subscriber privacy issues and would require Charter to undertake a burdensome notice process. Plaintiffs have identified over 11,000 potential infringers. Pursuant to Charter's procedures and the California Consumer Privacy Act, among others, Charter must notify residential subscribers that their PII will be disclosed and allow the subscribers an opportunity to respond.

While the information may be relevant, the notification of 11,000+ customers, and the potential legal challenges flowing therefrom, would be burdensome to the parties as well as to the courts. Further, the utility of information such production will yield is not yet established. During the Hearing, I therefore recommended that Defendant produce PII for a sample of residential subscribers. The parties were instructed to meet and confer to agree on the parameters for this sample.

With regard to PII, the parties have agreed as follows;

    i. **Charter will produce PII for commercial subscribers who were the subject of Plaintiffs' notices.** The parties have represented that this includes 638 accounts.

    ii. **Charter will produce PII for subscribers who corresponded with Charter about Plaintiffs' notices.** The parties have represented that this includes 38 accounts.

    iii. **Charter will produce PII for residential subscribers with the greatest number of copyright infringement "tickets."** The Defendant proposes the number to be 112 and Plaintiffs propose 150.

**Defendant is ordered to produce PII for the 112 residential subscribers with the greatest number of tickets.**[2] **The Defendant should amend its proposed order accordingly and resubmit to the Special Master.**

    C. <u>Financial Management Reports (RFP 18)</u>

The Plaintiffs request financial management reports from the Defendant, which they claim will allow them to determine Charter's revenue from bundled services. The Defendant argues that the management reports do not contain the information that the Plaintiffs seek. This issue was already raised with Magistrate Judge Hegarty at a hearing on February 19, 2020. At that hearing, Magistrate Judge Hegarty instructed Plaintiffs to take a 30(b)(6) deposition on this

---

[2] The parties have not agreed to the Plaintiffs' request for the Defendant to provide PII for all subscribers terminated for non-payment. I will not require it at this time.

topic to determine whether and how Charter keeps track of the requested information. *See* Tr. Feb. 19, 2020 Discovery Conf. at 145-150. I defer to Magistrate Judge Hegarty on this issue and therefore decline to rule on it. Any challenges to the completeness of Defendant's production related to the management reports addressed by Magistrate Judge Hegarty should be directed to Magistrate Judge Hegarty unless Judge Hegarty orders otherwise.

    D. <u>Communications Concerning Charter's Handling of Copyright Infringement by its Subscribers (RFP 4 and 16)</u>

The Plaintiffs seek "all communications" concerning Charter's handling of infringement by its subscribers during the relevant time period. (Pl. Letter Br. April 10, 2020, Ex. B) The Plaintiffs' request is extremely broad and likely encompasses information that is not relevant to this inquiry. The parties have agreed to exchange search terms and custodians and have agreed to meet and confer to reach an agreement to narrow the Plaintiffs' request. (Tr. Apr. 17, 2020 Hearing at 100:12-101:5)

    E. <u>Search Parameters Used to Identify Documents Responsive to Plaintiffs' Discovery Requests</u>

The parties have agreed to exchange search terms, custodians and output reports for each discovery request.

3. **DEFENDANT'S MOTIONS TO COMPEL**
    A. <u>Plaintiffs' Production of Email Communications</u>

The Defendant requests a date certain by which the Plaintiffs must have substantially completed their email productions. The Plaintiffs have begun producing emails and plan to continue making productions on a rolling basis. The Plaintiffs have agreed that production of

substantially all email communications in response to Defendant's discovery requests will be completed **by June 1, 2020**.

    B.   Revenue and Profit Information. (RFP 16 and 17)

The Defendant requests annual financial information that includes streaming revenues for 2017, 2018, and 2019. The parties discussed this request, and the Plaintiffs have agreed they will produce top end financial data that includes streaming revenues for 2017, 2018, and 2019. (Tr. Apr. 17, 2020 Hearing at 121:22-122:1)

**The Plaintiffs are ordered to produce this information by June 1, 2020.**

    C.   MarkMonitor Hard Drive (RFP 30, 32-33, 35, 40)

The Defendant requests an order requiring the Plaintiffs to produce an unaltered copy of a hard drive that Plaintiffs' counsel received from MarkMonitor containing evidence of the alleged direct infringement at issue in this case.[3] MarkMonitor is the vendor hired by the Plaintiffs to generate the infringement notices at issue in this case. The Defendant sought a copy of the hard drive by subpoena to MarkMonitor. (Pl. Letter April 21, 2020, Ex. A) MarkMonitor initially agreed to produce the hard drive, but later indicated that it provided a copy of the hard drive to the Plaintiffs instead. (Pl. Letter April 21, 2020, Exs. B, D) The Defendant therefore sought to obtain the hard drive from the Plaintiffs. The Defendant contends that the information produced by the Plaintiffs was incomplete. First, the Plaintiffs did not produce accurate metadata; second, the Plaintiffs did not produce the complete hard drive.

---

[3] The Plaintiffs argue that the hard drive itself was not requested in RFPs 30, 32, 33, or 35. Plaintiffs argue that RFP 40, which specifically requests the hard drive, is not yet ripe for a determination. I disagree. The documents at issue relate to a subpoena issued in December 2019. Further, the parties have already extensively met and conferred on this issue, including by correspondence dated as far back as March 26, 2020. (Pl. Letter Br. April 10, 2020, Ex. 3)

The parties agree that the information produced to the Defendant did not contain accurate metadata as received from MarkMonitor. (Tr. Apr. 17, 2020 Hearing at 125-128) While the parties may dispute the significance of the original metadata, the ESI Protocol stipulated to by the parties and entered as an order in this matter clearly requires that each electronic document be accompanied by metadata. (Dkt. 70) Plaintiffs are therefore obligated to produce the documents with metadata intact.

The Defendant secondarily seeks a forensic copy of the hard drive in its entirety, while the Plaintiffs argue that the hard drive contains irrelevant data to which the Defendant is not entitled. Plaintiffs therefore have only agreed to produce certain files from the hard drive that Plaintiffs have identified as relevant. The Plaintiffs were directed to submit an index of the files on the hard drive for the Special Master to review *in camera*.

The Defendant is unequivocally entitled to accurate and complete metadata for the files produced. The Defendant initially sought this information from MarkMonitor, and it arguably could seek to enforce the subpoena against MarkMonitor instead of attempting to obtain the information from the Plaintiffs. The Plaintiffs inserted themselves into the dispute when they accepted the production from MarkMonitor, and they cannot now attempt to sidestep their assumed obligation to produce accurate information. Upon *in camera* review of the hard drive index I will issue an order specifying the Plaintiffs' additional obligations, if any, with respect to the hard drive.

D. <u>Reference Copies of The Works-in-suit (RFP 2)</u>

The Defendant contends that the Plaintiffs used a third party, Audible Magic, to identify instances of infringement and to generate the infringement notices at issue in this case. To identify instances of infringement, Audible Magic compared a legitimate version of the copyrighted work

(the "reference" file) to a suspected file on a P2P network to confirm that the online copy did in fact contain the copyrighted work, as opposed to another work with a similar title, an amateur cover, a corrupted or "dud" file, a different version by the same artist, or something else.

The Defendant has requested that the Plaintiffs verify whether the digital files that the Plaintiffs have produced in response to the Defendant's Request for Production No. 2 are the same files that were used by or provided to Audible Magic to make those reference files.

The Defendant is entitled to an answer to this question. The Plaintiffs have agreed to undertake to find the answer to the Defendant's question if they are able. (Tr. Apr. 17, 2020 Hearing at 154:8-9) I will not order additional production at this time but will entertain an additional request for the reference files if the Plaintiffs are unable to provide the Defendant with a response.

**The Plaintiffs are ordered to provide a response to the Defendant by June 1, 2020.**

    E.   <u>Relevance and Sensitivity Redactions (RFP 4 and 5)</u>

The Defendant requests that the Plaintiffs be ordered to produce unredacted copies of agreements that the Plaintiffs unilaterally redacted as "not relevant" or "sensitive" in response to the Defendant's Requests for Production Nos. 4 and 5. In their responses to Requests Nos. 4 and 5, the Plaintiffs objected to the requests as overly broad, unduly burdensome, and irrelevant, and that the burden and/or expense of the proposed discovery outweighs any likely benefit. The Plaintiffs did not object on confidentiality or sensitivity grounds, nor did the Plaintiffs indicate that they would be producing documents with redactions. The Plaintiffs have provided copies of a sample of the agreements in unredacted form for my *in camera* review. I have reviewed the documents and determined the redacted terms predominantly reflect payment terms and advances, which are arguably relevant under the broad standard set forth in Rule 26. Fed. R.

Civ. P. 26(c)(1). The parties' Stipulated Protective Order, Dkt. 63, specifically sets forth the requirements for production of Highly Confidential documents and contains no allowance for the redaction of the type of information that the Plaintiffs have redacted. In fact, "artist agreements" are specifically identified as "Highly Confidential –Attorneys' Eyes Only" in the Stipulated Protective Order, which details the treatment of such information.

**Plaintiffs are ordered to produce unredacted versions of the agreements, except that PII contained in the documents (such as personal addresses or social security numbers) shall remain redacted.**

Such documents shall be produced pursuant to the Stipulated Protective Order already in place and marked as "Attorneys' Eyes Only." The Defendant has indicated it is willing to accommodate other protections Plaintiffs deem necessary, and I would be inclined to grant such protections if sought. The parties are instructed to meet and confer should Plaintiffs seek additional protections for the documents in question.

**SO ORDERED.**

Dated this 28th day of April, 2020                             BY THE SPECIAL MASTER:

*/s/ Regina M. Rodriguez*
Regina M. Rodriguez
Special Master