**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

      Defendant.

_____

**PLAINTIFFS' <u>EXPEDITED</u> MOTION FOR LEAVE TO CONDUCT DISCOVERY
OUTSIDE THE DISCOVERY LIMITS AND ON AN EXPEDITED BASIS REGARDING
CHARTER'S SPOLIATION OF ELECTRONIC DATA**
_____

      This motion seeks expedited discovery—outside the limits previously set in this Court's Scheduling Order—concerning Charter's admitted spoliation of highly relevant evidence.

      Charter recently disclosed that it spoliated the vast majority of Electronically Stored Information ("ESI") relevant to this case in two different ways. *First*, Charter disclosed that, as part of a data migration project in 2018, **Charter destroyed the ESI for nine of the fourteen custodians it deemed relevant to this case.  This destroyed data included more than half a million documents and nearly all of the emails from these custodians' Charter accounts**. Despite Charter knowing of this massive spoliation since at least *April 2019*, it failed to disclose this until *March 4, 2020, almost a year later*.  Charter did not breathe a word of it at the conference before this Court just two weeks earlier, on February 19, 2020.

      *Second*, in late February 2020, Charter revealed for the first time that it had an unwritten

policy to delete the records detailing Charter's receipt of, and responses to, infringement notices (called "ticket data") after six months, and related "ticket-table data"[1] after eighteen months. These are the records that Charter relied upon to track its users' record of infringement notices. Accordingly, **Charter says it has no ticket data for the approximately 700,000 notices** Plaintiffs sent during the claim period, and has "ticket table data" for only 38,000 notices.

The potential prejudice from Charter's deletion of the ESI for nine of fourteen key custodians, all of its ticket data, and 94% of its "ticket table" data, is severe and oppressive.  This case centers, in part, on what Charter did and did not do in response to Plaintiffs' approximately 700,000 infringement notices, and this spoliated evidence goes directly to that issue.

For example, the key custodian ESI should include Charter's internal emails showing, among other things, how Charter identified and treated repeat infringers, whether it focused on its own profits over its legal obligations, whether it treated copyright notices with blatant disregard, and whether it willfully ignored rampant infringement by its subscribers.  Such internal emails were among the most probative evidence in the analogous *BMG v. Cox* and *Sony v. Cox* cases.  *E.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 655, 656-662 (E.D. Va. 2015) (finding, on summary judgment, that the "emails in the record reveal that Cox had knowledge that at least some of its account holders were intentionally and repeatedly infringing," and denying Cox's safe-harbor defense, in part, because "numerous emails in the record" showed that Cox "privately disparage[ed] and intentionally circumvent[ed] the DMCA's requirements"); Declaration of Neema Sahni ("Sahni Decl.") Ex. 13 (exhibit in

---

[1] Despite repeated requests, Charter has yet to explain the difference between "ticket data" and "ticket table data," stating only that this is a related data repository.

*Sony v. Cox* trial in which Cox's head of the abuse department crowed "f the dmca!!!" while celebrating the "silent[] delet[ion]" of millions of infringement notices).  Likewise, the fact that Charter deleted 94% of its "ticket table data" means that Charter cannot even *identify* the subscribers associated with 94% of Plaintiffs' notices, which endangers Plaintiffs' ability to identify repeat infringers that Charter failed to terminate despite having received multiple infringement notices regarding those subscribers.

Given the centrality of this irreplaceable ESI that should have been preserved, there is no question that Plaintiffs have been prejudiced by Charter's admitted spoliation, and that some relief will be necessary under Federal Rule of Civil Procedure 37.  But first, it is essential that Plaintiffs and the Court understand the complete circumstances and full scope of the spoliation. Charter has voluntarily provided some information since it disclosed its deletion of ESI, but formal discovery is now needed to obtain an unbiased record of all of the facts and the extent of the prejudice to Plaintiffs.

Specifically, Plaintiffs request an Order:

- Permitting Plaintiffs to serve 25 Requests for Production regarding Charter's spoliation beyond the 100-RFP limit in the Scheduling Order;

- Requiring Charter to begin producing documents responsive to these RFPs within 15 calendar days of Charter's responses and objections thereto, and to provide a privilege log for that production within 15 days of their first production;

- Permitting Plaintiffs one Rule 30(b)(6) deposition and up to five fact-witness depositions (of the five persons Charter identified as having knowledge of the data destruction) beyond the 20-deposition limit in the Scheduling Order, and without prejudice to additional depositions pursuant to Rule 30(b)(6) or from these same witnesses on the claims and defenses at issue in this case.

Charter has not agreed to this relief.  In response to Plaintiffs' request for the discovery sought in this motion, Charter <u>did</u> agree that 25 RFPs and a 30(b)(6) deposition on Charter's

3

email deletion should not count against limits in the Scheduling Order, and Plaintiffs accordingly have served RFPs and a 30(b)(6) notice contemporaneously with this Motion (attached as Exhibits 1 and 2, respectively, to the Declaration of Neema Sahni). But Charter rejected Plaintiffs' requests for (i) fact-witness depositions of the five persons it identified as having knowledge of the data destruction (separate from the Scheduling Order's limits), (ii) a 30(b)(6) witness to testify about Charter's deletion of ticket data, and (iii) expediting Charter's production of documents responsive to Plaintiffs' spoliation-related requests.

As explained below, good cause exists for all of this additional, expedited discovery because it is discrete, non-cumulative, seeks information solely in Charter's possession, is occasioned by Charter's admitted destruction of evidence (of which Plaintiffs and the Court were not aware when setting the discovery limits in this action), and could not be more critical to the conduct of this case going forward. *See* Fed. R. Civ. P. 26(b)(2); *Martensen v. Koch*, 301 F.R.D. 562, 585 (D. Colo. 2014) (allowing for additional discovery where it did not run afoul of Rule 26(b)(2)). For the same reasons, Plaintiffs request an expedited briefing schedule for this Motion.

## **BACKGROUND**

On June 13, 2019, the Court entered the parties' proposed scheduling order, limiting each side to 20 total depositions and 100 Requests for Production. ECF No. 44. When the parties included these limits in their proposed scheduling order (on June 5, 2019), Charter had known about its spoliation of emails and other data for months, but had not yet disclosed it to Plaintiffs.

During the February 19, 2020 discovery conference, Charter disclosed for the first time that, at the time Plaintiffs sent their demand letters concerning this case, it had an unwritten

policy to delete ticket data older than six months and ticket-table data older than eighteen months.  (*See* Sahni Decl. Ex. 7, Tr. 120:4–126:6).[2]  Under that alleged policy, Charter destroyed *all ticket data* for Plaintiffs' approximately 700,000 notices, and retained ticket table data for only 38,000 notices.  As a result of its deletion policy, Charter cannot even *identify* subscribers associated with roughly 620,000 (or 94%) of Plaintiffs' notices.  This also means that Charter has not produced the infringement or payment histories for the subscribers associated with 94% of Plaintiffs' notices.  Charter has brushed aside Plaintiffs' questions regarding this deletion policy.

At the March 4, 2020 discovery conference, Charter revealed for the first time that it had "become aware of some e-mails lost by [the company]," and represented that the loss was "minimal."  (*See* Sahni Decl. Ex. 9, Tr. 12:1–22).  But that representation has since been belied by revelations that Charter deleted, ***at minimum, half a million emails (and likely far more)*** from active legal holds that Charter admits it should have, but did not, preserve.  The deleted emails include nearly the entirety of the email accounts for a majority of the Charter employees—nine out of fourteen—whom Charter has identified as having information relevant to this case, including employees responsible for processing and addressing infringement notices.

After the March 4, 2020, discovery conference, Charter sent Plaintiffs a letter describing the email destruction, but failed to detail how and why the destruction occurred, and the scope of what had been lost.  (*See* Sahni Decl. Ex. 4).  Plaintiffs therefore sought additional information

---

[2] As explained in their February 24 submission to the Court, counsel for Charter believes that their prior references to not knowing how much data Charter possessed constituted disclosures of this deletion policy.  (*See* Sahni Decl. Ex. 8).  Plaintiffs obviously disagree.

from Charter's counsel, and Charter responded with some further information.  (*See* Sahni Decl.

Ex. 5).  These responses both revealed additional troubling facts that make clear the severe

prejudice caused to Plaintiffs by this vast spoliation, and demonstrated that many questions

remain and that discovery is necessary to determine the full extent of that prejudice.  Charter's

written responses attempt to characterize the spoliation as inadvertent.  But stripped of

characterizations, Charter already has admitted the following:

- Charter never instituted a legal hold specific to this case.  Charter instead relied upon a
  legal hold instituted for an unrelated matter, months before Plaintiffs sent Charter notice
  of their infringement claims in March 2016.   (*See* Sahni Decl. Ex. 5, Responses to
  Questions 17, 18).

- Some unknown time between April 2017 and January 2018, Charter removed the above-
  referenced legal hold for all 14 custodians.  (*See* Sahni Decl. Ex. 5, Response to Question
  8).

- In December 2018, Charter ***deleted all of the data held in its email archive platform for
  9 of the 14 custodians*** (the "Nine Spoliated Custodians") it had identified as having
  relevant information to this case.  (*See* Sahni Decl. Ex. 4, Page 2; Ex. 5, Response to
  Question 10).

- The only reason that Charter did not delete the messages in its email archive for the other
  5 custodians is because they were subject to other active legal holds for unrelated matters.
  (*See* Sahni Decl. Ex. 4, page 2).

- Charter does not know the total number of emails it deleted, but there were ***at least
  500,000 emails*** in the Nine Spoliated Custodians' archives at the time they were placed
  on legal hold, in December 2015 and January 2016.  Charter deleted all half-million of
  those emails *in addition to* emails preserved after these custodians were placed on hold.
  (*See* Sahni Decl. Ex. 5, Response to Question 10).

- Charter says that it first began its investigation into this deletion in ***April 2019*** after
  learning that its document custodians for this case were not on active holds in its email
  archive platform.  But it ***waited 11 months*** to disclose any preservation issues to
  Plaintiffs.  Charter never mentioned the issue even as the parties met and conferred
  regarding Plaintiffs' discovery requests seeking relevant emails, beginning in August
  2019.  Nor did Charter mention the issue at this Court's discovery conferences on
  October 29, 2019, December 17, 2019, and February 19, 2020, despite now admitting
  that it knew of the spoliation before those dates.  (*See* Sahni Decl. Ex. 5, Response to

Question 2).

- Charter has produced a total of *two* emails from the spoliated custodians, and has represented that its email production in response to Plaintiffs' First Set of Requests for Productions is largely complete.[3]  (*See* Sahni Decl. ¶ 3; Ex. 10, Tr. 19:17–20:2).

- Around 2016, Charter also deleted *all* emails belonging to *all* relevant custodians for the litigation brought by most of these same Plaintiffs against Bright House Networks, LLC (which merged with Charter in 2016) in the Middle District of Florida.  Charter claims that was an unrelated event of destruction.  (*See* Sahni Decl. Ex. 5, Response to Question 4).

- Charter contends its deletion of ticket data was not spoliation but rather pursuant to its retention policy, but admits that it had no written retention policy.  (*See* Sahni Decl. ¶ 2; Ex. 6).

The prejudice caused by this spoliation is already apparent in Charter's failure to produce numerous key categories of documents over the past nine months.  For example, Charter has not produced *even a single email*, apart from a handful of auto-replies, in which a subscriber responded to any of the approximately 700,000 infringement notices sent by Plaintiffs during the claim period.  Indeed, for 8 out of the 24 RFPs in Plaintiffs' first set of document requests, Charter claims it cannot locate a single document to produce.  These RFPs include requests for documents concerning the use of BitTorrent by Charter's subscribers, the impact or effectiveness of any repeat infringer or DMCA policy, and other core categories of documents.

To understand how the loss will affect Plaintiffs' ability to litigate this case going forward, and the nature and scope of their Rule 37 relief, there must be discovery into the details

---

[3] Charter claims to have identified roughly 1.2 million messages sent to or from the Nine Spoliated Custodians during the Discovery Period, from other, unrelated legal holds.  (*See* Sahni Decl. Ex. 5, Response to Question 27).  But Charter has refused to identify what those legal holds are, has stated that it did not mean to imply that these messages "may be relevant to this action," and concedes that it already searched these emails for responsive documents, (*id.*), resulting in the production of only two emails from the Nine Spoliated Custodians, (*see* Sahni Decl. ¶ 3).

of the processes that led to the evidence destruction, as told by the contemporaneous documents and by the participants, and the details of what information the spoliated custodians possessed. Equally important is the genesis and implementation of Charter's ticket-data deletion policy, which resulted in the loss of key evidence concerning nearly every one of the 700,000 infringement notices in this case.

## ARGUMENT

I.   **DISCOVERY INTO SPOLIATION SHOULD BE OUTSIDE THE CURRENT DISCOVERY LIMITS BECAUSE IT IS DISCRETE, NON-CUMULATIVE, SOLELY IN CHARTER'S POSSESSION, AND CRITICAL TO THIS LITIGATION.**

Good cause exists to grant Plaintiffs leave to take discovery regarding Charter's spoliation that does not count against the currently-prescribed discovery limits, for the reasons set forth below.

*First*, there is no dispute that Charter has spoliated key evidence.  Accordingly, focused discovery is necessary to assess (i) the full scope of the "loss of information," Fed. R. Civ. P. 37(e)(1); (ii) the information's importance in the litigation, *see* Moore's Manual—Federal Practice and Procedure § 15.47 (2019) (discussing Rule 37 relief); (iii) whether the information can be restored or replaced through additional discovery, *id*.; and, ultimately, (iv) what measures are "necessary to cure the prejudice," Fed. R. Civ. P. 37(e)(1).  Charter has not revealed the full volume of messages deleted, nor the categories of messages and documents that are forever lost. Charter has interviewed the witnesses whose emails were lost, but has not shared those interviews, forcing Plaintiffs to propound the formal requests included with this motion.  (*See* Sahni Decl. Ex. 1 at RFP 18).

Indeed, Plaintiffs are still ascertaining just how many relevant custodians' ESI was

deleted.  That is because Charter recently disclosed that it apparently has not even attempted to

collect documents from employees that it should have.  For example, Charter's list of custodians

from whom it sought to collect documents did not include nine individuals (these are *not* the

Nine Spoliated Custodians) that Charter identified in its Initial Disclosures as "likely to have

discoverable information relevant to the allegations made in this action and any disputed facts,"

or that Charter listed in its interrogatory responses as "employees with responsibility for

designing, developing, or implementing Charter's policies and protocols for addressing

allegations of copyright infringement through Charter's network."  (*Compare* Sahni Decl. Ex. 5,

Response to Question 5 (Charter's list of document custodians) *with* Exs. 11, 12 (lists of

custodians included in Charter's Initial Disclosures and interrogatory responses)).  Plaintiffs do

not yet know whether Charter also deleted these nine individuals' documents (in addition to the

Nine Spoliated Custodians), whether these custodians were ever placed on legal hold for this

case, or whether Charter simply chose not to collect their documents.  Plaintiff's requested

discovery will help reveal the scope of what is missing and, ideally, where else Plaintiffs may

turn for additional discovery.

  ***Second***, discovery is needed to determine whether Charter "acted with the intent to

deprive" Plaintiffs of the spoliated information.  Fed. R. Civ. P. 37(e)(2).  There are many

unanswered questions.  Charter has not disclosed the full circumstances surrounding multiple

intentional acts that contributed to Charter's spoliation, including, for instance, Charter's

decision not to implement a separate legal hold for this case, Charter's removal of the prior legal

hold on which it relied somewhere between April 2017 and January 2018, and Charter's deletion

of the Nine Spoliated Custodians' data in December 2018.  Charter has refused to disclose what

other holds it deleted in December 2018, or the extent to which the employees responsible for the removal of the holds on the Nine Spoliated Custodians and deletion of their data were aware of Plaintiffs' claims against Charter.  These are merely some examples of the discovery needed to assess, for purposes of Rule 37, the intent of Charter's admittedly deliberate acts.  While there is much that Charter claims it cannot verify, or characterizes as innocent, Plaintiffs should not have to rely on Charter's counsel's investigation and representations nor on Charter's obvious interest in portraying this spoliation in the best possible light.  Plaintiffs are entitled to conduct their own investigation through discovery, in order to put a complete record before the Court.

*Third,* the nature and scope of the destruction must be understood to resolve existing discovery disputes.  A key issue for the Court and the Plaintiffs is whether Charter has failed to produce responsive documents because the documents never existed, or because they were destroyed.  Charter's spoliation also impacts a host of other discovery issues.  For example, Charter has objected to Plaintiffs' First and Second Sets of Requests for Production on burden grounds.  But Charter has deleted almost all of the email data for most of its custodians, has refused to identify the other, unrelated legal holds from which it obtained the documents it claimed to search, and has stated Charter did not mean to imply that these messages "may be relevant to this action."  *Supra* n.3.  To evaluate Charter's burden objections going forward, it is critical to know just how small the universe of potentially relevant documents is.

Moreover, the additional discovery sought by this Motion is narrowly tailored and limited to these spoliation issues:  25 Requests for Production; and depositions of the five individuals Charter has identified as having knowledge of the data destructions, and a corporate representative on Charter's destructions of both ticket data and emails.  Plaintiffs could not have

anticipated the need for this discovery when proposing the limits in the Scheduling Order, and it is warranted now under Rule 26, because it is discrete, non-cumulative, solely in Charter's possession, and critical to what has become a threshold issue in this litigation.  *See* Fed. R. Civ. P. 26(b)(1)–(2) (providing standard for permissible discovery); Fed. R. Civ. P. 30(a)(2)(A) (allowing for additional depositions "to the extent consistent with Rule 26(b)(1) and (2)"); *Martensen*, 301 F.R.D. at 585 (D. Colo. 2014) (allowing for second deposition of witness where consistent with Federal Rule of Civil Procedure 26).

Moreover, Plaintiffs should not be limited at the outset to a 30(b)(6) deposition, as Charter contends.  While a 30(b)(6) deposition is clearly necessary in order to ensure that Plaintiffs can discover all information known to Charter, there is no reason why Plaintiffs should not be permitted to depose the percipient fact witnesses who were actually involved in removing the legal hold and then manually deleting the Nine Spoliated Custodians' data.  Charter cannot hide those witnesses from discovery by instead putting forward solely a representative witness of its choosing.

Courts routinely grant leave for exactly this kind of enlarged and expedited discovery into spoliation.  *See, e.g., U.S. Commodity Futures Trading Comm'n v. Gramalegui*, No. 15-cv-02313-REB-GPG, 2016 WL 4479316, at *4 (D. Colo. July 28, 2016) (granting leave for additional deposition of defendant in order to determine extent of ESI spoliation and prejudice); *Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-cv-548-Orl-22GJK, 2016 WL 11164043, at *1 (M.D. Fla. Apr. 29, 2016) (granting leave for plaintiff to conduct additional Rule 30(b)(6) deposition about the defendant's delayed production of, and failure to produce, relevant documents); *Hunter v. Duff & Phelps Acquisitions, LLC*, No. 3:09-CV-0062-P, 2010

WL 11618791, at *2-4 (N.D. Tex. Apr. 13, 2010) (granting leave to conduct "spoliation discovery" after the discovery deadline, in excess of the allotted number of interrogatory and production requests, and on an expedited basis); *Roberts v. Can. Pac. Ry. Ltd.*, No. 06-CV_1960 JMRFLN, 2007 WL 118901, at *1 (D. Minn. Jan. 11, 2007) (granting "leave to conduct limited discovery concerning spoliation of evidence on an expedited basis" before the initial discovery conference, related to defendants' possible destruction of emails).

For example, in *U.S. Commodity Futures Trading Commission v. Gramalegui*, the court granted additional spoliation-related discovery where the defendant changed his data hosting platforms and thereby destroyed emails and other electronic data that he had an obligation to preserve. 2016 WL 4479316, at *3 (D. Colo. July 28, 2016). The court explained that the plaintiff "ha[d] met its burden of showing that relevant evidence existed, that it should have been preserved[,] and that it was not preserved." *Id.* at *4. It added that "[t]he extent of the spoliation is not yet known and most likely resides in Defendant's brain." *Id.* Here, too, it is clear that Plaintiffs have been deprived of a large corpus of documents that should have been preserved, and they need discovery from Charter to determine the extent and nature of that spoliation.

## II.   THE COURT SHOULD ORDER CHARTER TO RESPOND TO PLAINTIFFS' DOCUMENT REQUESTS ON AN EXPEDITED BASIS AND ALSO ORDER AN EXPEDITED BRIEFING SCHEDULE ON THIS MOTION.

As described above, Charter's data spoliation is a threshold issue that impacts the future of merits discovery and how Plaintiffs will litigate the rest of this case. Plaintiffs already spent two months attempting to obtain this information through informal means, in a good-faith attempt to accept Charter's offer to "hav[e] an open and transparent dialogue, (*see* Sahni Decl. Ex. 4, page 3). A full and prompt response is needed to the Request for Production so that

depositions may take place and the extent of the spoliation can be understood.  In similar

situations, courts have granted requests for expedited briefing and expedited discovery.  *See, e.g.*,

*Charles Schwab & Co v. Highwater Wealth Mgmt., LLC*, No. 17-cv-00803-CMA-NYW, 2017

WL 3503353, at *1 (D. Colo. Aug. 16, 2017) (granting expedited briefing for motion that would

stay discovery and in turn affect the parties' discovery plans); *see also infra*, Section I (collecting

cases allowing expedited discovery into spoliation).

Furthermore, Charter cannot claim that the burden of providing the requested discovery

on an expedited basis would cause it undue burden that would outweigh the manifest benefits of

obtaining this threshold information on an expedited basis.  Charter has represented that it

already conducted a "thorough and accurate" investigation into the data loss.  (*See* Sahni Decl.

Ex. 3).  Plaintiffs seek to obtain information that Charter should have uncovered as part of a

reasonably thorough investigation.

## CONCLUSION

For these reasons, Plaintiffs request that the Court decide this Motion on an expedited

schedule and issue an Order that:

(1) grants Plaintiffs leave to serve 25 RFPs, separate from the 100-RFP limit in the

Scheduling Order (ECF No. 44), on Charter's destruction of electronic data ,

(2) orders Charter to begin producing documents responsive to Plaintiffs' RFPs within 15

calendar days of Charter's responses and objections thereto, and to provide a privilege log for

that production within 15 days of their first production, and

 (3) grants Plaintiffs leave to conduct one Rule 30(b)(6) deposition and up to five fact

depositions separate from the discovery limits in the Federal Rules and the Scheduling Order

(*i.e.*, the depositions will not count against the limits of 20 depositions and one 30(b)(6)

deposition notice, and will not prevent Plaintiffs from deposing any of the witnesses a second

time regarding the claims and defenses at issue).[4]

Dated: May 4, 2020

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS
& WEESE, P.C.
1801 California Street, Suite
3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK,
LLP
4530 Wisconsin Ave. NW,
5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

/s/ Jonathan M. Sperling
Jonathan M. Sperling
William O'Neil
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
woneill@cov.com

Mitchell A. Kamin
Neema T. Sahni
Mark Chen
Nicholas M. Lampros
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
mychen@cov.com
nlampros@cov.com

Megan M. O'Neill
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
moneill@cov.com

*Attorneys for Plaintiffs*

---

[4] Plaintiffs note that there is a split of authority as to whether a party must obtain the court's leave to take multiple Rule 30(b)(6) depositions, and that neither the Tenth Circuit nor the District of Colorado appear to have weighed in. Plaintiffs seek the Court's leave to ensure there is no ambiguity as to whether Charter must provide testimony at an initial Rule 30(b)(6) deposition regarding its data destruction, as well as a second Rule 30(b)(6) deposition concerning the claims and defenses in this case.

## LOCAL RULE 7.1(a) CERTIFICATION

Pursuant to Local Rule 7.1(a), Plaintiffs certify that they conferred with counsel for Charter regarding this motion.  On April 24, counsel for Plaintiffs emailed counsel for Charter seeking the relief described in this motion.  Charter agreed that 25 RFPs and a 30(b)(6) deposition on Charter's email deletion should not count against limits in the Scheduling Order. But Charter rejected Plaintiffs' requests for (i) fact-witness depositions of the five persons it identified as having knowledge of the data destruction (separate from the Scheduling Order's limits), (ii) a 30(b)(6) witness to testify about Charter's deletion of ticket data, and (iii) expediting Charter's production of documents responsive to Plaintiffs' spoliation-related requests.

Dated: May 4, 2020                                    */s/ Jonathan M. Sperling*
                                                      Jonathan M. Sperling

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 4, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

                                                      */s/ Jonathan M. Sperling*
                                                      Jonathan M. Sperling