# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC., et al.,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.**

      Defendant.

**PLAINTIFFS' REQUESTS FOR PRODUCTION OF SPOLIATION-RELATED
DOCUMENTS TO DEFENDANT CHARTER COMMUNICATIONS, INC.**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs serve this set of Requests for Production of Spoliation-Related Documents to Defendant Charter Communications, Inc. Plaintiffs request that Defendant respond in accordance with the Federal Rules of Civil Procedure, and produce the documents hereinafter described at the offices of Covington & Burling, LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, or at such other time and place as the parties may agree upon, within thirty (30) days of the date of service. Plaintiffs serve these Requests without waiver of their right to seek the spoliation-related discovery sought herein outside the limits on Requests for Production set forth in the Scheduling Order (ECF No. 44). Plaintiffs' concurrently-filed Motion For Leave To Conduct Discovery Outside the Discovery Limits and on an Expedited Basis Regarding Charter's Spoliation of Electronic Data ("Motion") seeks to exempt these Requests from those limits. For clarity, however, Charter is required to provide responses to each of the Requests set forth below

regardless of the outcome of the Motion.

## DEFINITIONS

Unless otherwise indicated, the following definitions apply to these requests:

1.      The term "Plaintiffs" refers collectively to Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Warner Chappell Music, Inc., Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp., W.C.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Chappell & Co. Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC,

2

Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GmbH, PolyGram Publishing, Inc., and Songs of Universal, Inc.

2. The terms "you," "your," "Charter," or "Defendant" refer to Charter Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on behalf of the defendant.

3. The term "Subscriber" refers to any account holder or subscriber of your internet services.

4. The term "User" refers to any person that uses your internet services, either presently or in the past.

5. The term "Infringing Subscriber" refers to any Subscriber identified in any Infringement Notice sent to You by Plaintiffs, or on Plaintiffs' behalf, between March 24, 2013 and May 17, 2016.

6. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A non-identical copy is a separate document within the meaning of this term.  "Document" specifically includes electronically stored information as defined in Rule 34(a).

7. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances.  The definition includes any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between

3

one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal. For the avoidance of doubt, this term shall include letters, emails, call logs, voicemails, and text messages.

8. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

9. "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

10. The term "CATS" means the Charter Abuse Tracking System, including without limitation any programs, procedures, software, or policies related thereto.

11. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

12. The use of the singular form of any word shall include the plural and vice versa.

## INSTRUCTIONS

1. These requests shall be deemed to be continuing to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

2. Defendant is to produce documents comprising electronically stored information pursuant to the agreed-upon protocol governing the production of electronically stored information and paper documents.

3. Defendant is to produce entire documents, including attachments, enclosures, cover

letters, memoranda, and appendices as they are kept in the usual course of business or, alternatively, organized and labeled to correspond to the category of documents requested.

4. In response to each request, Defendant shall affirm whether responsive documents exist and have been, or shall be, produced.

5. If Defendant deems any information, document, or communication requested by any of the following requests to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe: (a) the information, document, or communication you claim to be so protected by author, subject matter, date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any individual to whom the information, document, or communication was distributed, shown, or explained; (c) the information, document, or communication's current custodian; and (d) all bases, factual and legal, upon which such protection allegedly rests.  If you contend that only a portion of the information contained in a document is privileged, provide the portion that you do not contend is privileged.

6. In the event that more than one copy of a document exists, Defendant shall produce the original and each non-identical copy of each document or other tangible thing requested herein, which is in Defendant's possession, custody, or control, or that of persons or entities under the control of Defendant.

7. Each discovery request shall be fully responded to unless it is objected to in good faith.  An objection must state with specificity the grounds for the objection and whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a

5

request (or a word, phrase, or clause contained in the request) must specify the part objected to and Defendant shall produce or permit inspection of the rest.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1** All documents concerning any of your document retention policies, practices, or parameters in effect from March 1, 2012 to the present, including, without limitation, (i) document retention policies applicable to materials potentially relevant to this lawsuit (including the October 1, 2004 Charter Communications Records and Information Management Policy, other policies mentioned in John Rosenthal's April 14, 2020 letter to undersigned counsel, those referenced in Erin Ranahan's February 24, 2020 email to the Court, and those referenced in Michael Elkin's March 4, 2020 letter to undersigned counsel); (ii) documents concerning your document retention policies applicable to "ticket data stored in CATS" and "ticket table data," documents concerning your retention of "ticket data stored in CATS" related to Infringing Subscribers and "ticket table data" related to Infringing Subscribers; (iii) configuration settings or other parameters concerning the retention of data in CATS (*see* 2/24/2020 E. Ranahan Email); and (iv) documents concerning your document retention policies applicable to emails and any other electronic data, including DHCP logs and customer billing data.

**REQUEST NO. 2** All documents concerning the legal hold that Charter instituted on December 17, 2015 "that was subsequently used across all secondary copyright infringement matters" (*see* Response to Question 7 in 4/14/2020 J. Rosenthal Ltr.) including documents sufficient to identify (i) all custodians subject to the legal hold at any point in time, (ii) what changes made to the list of custodians subject to the legal hold and when, (iii) the amounts and types of data preserved pursuant to the legal hold and/or deleted notwithstanding the legal hold,

and (iv) the terms and scope of the legal hold and the matters or claims to which it was deemed to apply, at any and all points in time.  (*See* 4/14/2020 J. Rosenthal Ltr.).

**REQUEST NO. 3**    Documents Charter received from or sent to Mingus Music Werkshop or its agent(s) regarding the claim that served as the basis of the legal hold you claim "encompassed the scope of the record potentially relevant to Plaintiffs' notice in March of 2016." (*See* 4/14/2020 J. Rosenthal Ltr.)

**REQUEST NO. 4**    Documents concerning the resolution or disposition of the Mingus Music Werkshop claim, including but not limited to documents sufficient to show the manner and date on which that resolution or disposition was recorded, displayed and/or described in Salesforce.com, Legal Hold Pro, and SharePoint, respectively.

**REQUEST NO. 5**    All documents concerning any of your legal hold policies, practices, or parameters in effect from December 16, 2015 to the present.

**REQUEST NO. 6**    Documents concerning Charter's decision not to implement a legal hold specific to Plaintiffs' notice in March 2016, including any documents concerning Charter's assessment that "the existing December 2015 hold encompassed the scope of the record potentially relevant to Plaintiffs' notice in March of 2016."  (*See* 4/14/2020 J. Rosenthal Ltr.)

**REQUEST NO. 7**    Documents sufficient to show the manner in which "the existing December 2015 hold" (as that phrase is used in response to Question 18 in the 4/14/2020 J. Rosenthal Letter) was recorded, saved, displayed and/or described in Salesforce.com and Legal Hold Pro, respectively, at any and all points in time, including with respect to the nine custodians whose data was deleted.  (*See* 4/14/2020 J. Rosenthal Ltr.)

**REQUEST NO. 8**    Documents discussing or concerning any legal hold(s) related to

7

Plaintiffs' claims, including documents sufficient to identify (i) all custodians and data repositories subject to the legal hold(s) at any point and time, (ii) what changes were made to the list of custodians or data repositories subject to the legal hold and when, and (iii) the amounts and types of data preserved pursuant to the legal hold and/or deleted notwithstanding the legal hold.

**REQUEST NO. 9**   Documents concerning Charter's removal or deletion of the "9 custodians" from "journaling [in] approximately September 2018." (*See* 4/14/2020 J. Rosenthal Ltr.).

**REQUEST NO. 10**   Documents concerning the considerations of taking or not taking snapshots of the inboxes of Tammy DeLoach and Matthew Nelson. (*See* 4/14/2020 J. Rosenthal Ltr.).

**REQUEST NO. 11**   Documents sufficient to show all instances when snapshots of the inboxes of Elfin Noce and Mary Haynes were taken and the manner in which their 90-day snapshots were preserved.

**REQUEST NO. 12**   All documents concerning Charter's "migration of its legal hold management system in 2017 and 2018," including, without limitation, documents concerning the migration from ZL Technologies to ProofPoint; documents concerning the migration from the Salesforce.com platform to Legal Hold Pro; any guidelines, policies, protocols, or instructions concerning such migration; documents referred to or relied upon in connection with performing such migration; and documents sufficient to identify all persons involved in such migration. (*See* 3/4/2020 M. Elkin Ltr.).

**REQUEST NO. 13**   All documents concerning Charter's "clean-up of its ProofPoint archive and delet[ion of] any held data that [Charter] believed it no longer had an obligation to

8

preserve," in December 2018, including, without limitation, documents concerning Charter's deletion of data belonging to nine custodians relevant to this litigation; any guidelines, policies, protocols, or instructions concerning the clean-up; documents referred to or relied upon in connection with performing the clean-up; and documents sufficient to identify all persons involved in the clean-up.  (*See* 3/4/2020 M. Elkin Ltr.).

**REQUEST NO. 14**   All documents concerning the "loss of e-mails as a result of the migration of [Charter's] legal hold management system in 2017 and 2018."  (*See* 4/14/2020 J. Rosenthal Ltr.)

**REQUEST NO. 15**   All documents concerning the loss of any non-email documents as a result of the migration of Charter's legal hold management system in 2017 and 2018, including documents held in SharePoint or any other document management or storage systems.

**REQUEST NO. 16**   All documents related to Charter's April 2019 discovery that "certain custodians subject to the relevant legal hold did not appear to be on active hold in its ProofPoint archive," and late 2019 discovery "of the full scope of the loss, the specific relevant custodians impacted, the causes of the loss, and the unavailability of alternative sources."  (*See* 4/14/2020 J. Rosenthal Ltr.).

**REQUEST NO. 17**   Documents sufficient to identify any legal holds, other than the December 2015 and January 2016 holds applied to the "9…Charter custodian relevant to this litigation," that were "inadvertently [] omitted from th[e] process of [transfer[ring] active legal hold data between SalesForce.com and Legal Hold Pro]."  (*See* Response to Question 8 in 4/14/2020 J. Rosenthal Ltr.).

**REQUEST NO. 18**   All documents concerning any investigations or inquiries regarding "the cause of the preservation failure," "the availability of sources from which the data might be restored or replaced," and "whether any ticket data was impacted," including documents sufficient to show investigatory steps taken and the results of any investigation, and notes or memos from any related interviews or conversations with Kirill Abramov, Dan Vasey, Christine Flores, Kimberly Love, Joshua Paske, Andrew Neipert, Thomas Mahoney, Jason Colvin, Christopher Avery, Timothy Brockel, Mary Haynes, Philip Jones, Kelly Matthews, Christin McMeley, Todd Neuverth, Elfin Noce, Tammy Stewart, or Laurie Rowlett.  (*See* 4/14/2020 J. Rosenthal Ltr.).

**REQUEST NO. 19**   Documents sufficient to identify the "employees on hold in [Charter's] ProofPoint archive as it relates to other matters" (*see* 3/4/2020 Letter from M. Elkin; Response to Question 27(a) in 4/14/2020 J. Rosenthal Ltr.) who sent or received the 1,264,704 messages identified in the Response to Question 14 set forth in John Rosenthal's April 14, 2020 letter.

**REQUEST NO. 20**   Organizational charts for Charter's internal e-discovery, information technology, and litigation support organizations for 2016 to present.

**REQUEST NO. 21**   Personnel files for Joshua Paske, Kirill Abramov, Dan Vasey, Christine Flores, and Kimberly Love.

**REQUEST NO. 22**   All communications between Charter and ZL Technologies or KLDiscovery regarding the deletion and attempted recovery of the emails and documents destroyed in the events described in your March 4 and April 14 letters to Plaintiffs.

**REQUEST NO. 23**    All communications between Charter and ProofPoint regarding the deletion and attempted recovery of the emails and documents destroyed in the events described in your March 4 and April 14 letters to Plaintiffs.

**REQUEST NO. 24**    All documents concerning correspondence with outside counsel about the existence or implementation of a legal hold in connection with Plaintiffs' notice in March 2016 or this lawsuit.

**REQUEST NO. 25**    Any sworn statements by any employee, agent, or other representative of Charter, discussing or concerning information that Charter lost that otherwise should or would have been preserved in the anticipation or conduct of any other litigation.

| | |
|---|---|
| May 4, 2020 | */s/ Mitchell A. Kamin* <br> Mitchell A. Kamin <br> Neema T. Sahni <br> COVINGTON & BURLING LLP <br> 1999 Avenue of the Stars, Suite 3500 <br> Los Angeles, CA 90067-4643 <br> Telephone: (424) 332-4800 <br> mkamin@cov.com <br> nsahni@cov.com <br> <br> Jonathan M. Sperling <br> COVINGTON & BURLING LLP <br> The New York Times Building <br> 620 Eighth Avenue <br> New York, NY 10018-1405 <br> Telephone: (212) 841-1000 <br> jsperling@cov.com <br> <br> Janette L. Ferguson, Esq. <br> Benjamin M. Leoni, Esq. <br> LEWIS BESS WILLIAMS & WEESE, P.C. <br> 1801 California Street, Suite 3400 <br> Denver, CO 80202 <br> Telephone: (303) 861-2828 <br> Facsimile: (303) 861-4017 |

jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

12

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 4th day of May, 2020, upon counsel of record.

Dated: May 4, 2020

                                                           */s/ J. Hardy Ehlers*