# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC., et al.,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.**

      Defendant.

## PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION ON SPOLIATION TOPICS TO DEFENDANT CHARTER COMMUNICATIONS, INC.

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs shall take the deposition upon oral examination of Defendant Charter Communications, Inc. ("Charter") before an officer authorized to administer oaths, on June 3, 2020 (or another date mutually agreeable to the parties), at Covington & Burling LLP, 620 Eighth Avenue, New York, NY 10018, beginning at 9:00 a.m.  Charter is requested to designate the person or persons most knowledgeable and prepared to testify on behalf of Charter concerning the subject matters described in Attachment A hereto.  Said deposition shall be recorded by stenographic and/or audiovisual means and shall continue from time to time and place to place until completed.

| | |
|---|---|
| May 4, 2020 | */s/ Mitchell A. Kamin*<br>Mitchell A. Kamin<br>Neema T. Sahni<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>mkamin@cov.com |

nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
jcharlesworth@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 4th day of May, 2020, upon counsel of record.

Dated: May 4, 2020

/s/ J. Hardy Ehlers

Warner Bros. Records, Inc., et al. v. Charter Communications, Inc.
Case No. 19-cv-00874-MSK-MEH

# ATTACHMENT A

# DEFINITIONS

Unless otherwise indicated, the following definitions apply to these requests:

1. The term "Plaintiffs" refers collectively to Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Warner Chappell Music, Inc., Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp., W.C.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Chappell & Co. Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC,

Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GmbH, PolyGram Publishing, Inc., and Songs of Universal, Inc.

2. The terms "you," "your," "Charter," or "Defendant" refer to Charter Communications, Inc., its parents, subsidiaries, predecessors, successors, affiliates, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

3. The terms "person" or "persons" are defined as any natural person or business, legal, or governmental entity or association. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

4. The term "DMCA" refers to the Digital Millennium Copyright Act.

5. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A non-identical copy is a separate document within the meaning of this term. "Document" specifically includes electronically stored information as defined in Rule 34(a).

6. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7. "Any" shall be understood to include and encompass "all"; "all" shall be understood to include and encompass "any"; "or" shall be understood to include and encompass "and"; and "and" shall be understood to include and encompass "or."

8. The term "Subscriber" refers to any past or present account holder or subscriber of your internet services.

9. The use of a verb in any tense shall be construed as the use of the verb in all other tenses. The use of the singular form of any word shall include the plural and vice versa.

## TOPICS OF EXAMINATION

**TOPIC NO. 1.** Charter's document retention policies in effect from 2012 through 2016, including but not limited to policies for preservation of emails, DHCP logs, Charter Abuse Tracking System (CATS) data (including ticket data), ticket table data, and customer billing data.

**TOPIC NO. 2.** Charter's policies, procedures, and practices for initiating a litigation hold in effect from December 16, 2015 to present, including the person(s) responsible for doing so, how Charter identifies custodians, how it informs custodians to preserve their documents, and how it initiates the email hold process.

**TOPIC NO. 3.** The legal hold that Charter instituted on December 17, 2015 "that was subsequently used across all secondary copyright infringement matters" (*see* Response to Question 7 in 4/14/2020 J. Rosenthal Ltr.), including (i) all custodians subject to the legal hold at any point in time, (ii) what changes were made to the list of custodians subject to the legal hold and when, (iii) the amounts and types of data preserved pursuant to the legal hold and/or deleted notwithstanding the legal hold, (iv) the terms and scope of the legal hold and the matters or claims to which it was deemed to apply, at any and all points in time, and (v) the manner in which the hold was displayed, recorded, and/or described in Salesforce.com and Legal Hold Pro, respectively.

**TOPIC NO. 4.**   The claim for copyright infringement for which Mingus Music Werkshop provided notice to Charter in December 2015, including the issues involved and when and how it was resolved.

**TOPIC NO. 5.**   Charter's decision not to implement a separate litigation hold in connection with Plaintiffs' March 2016 demand letter.

**TOPIC NO. 6.**   Any other litigation hold that Charter contends applied to the above-captioned litigation, including when such hold was created, any revisions or edits to it, how and when it was communicated to custodians, and why Charter contends it could apply to this case.

**TOPIC NO. 7.**   The functionality and operation of SalesForce and Legal Hold Pro, and Charter's use thereof.

**TOPIC NO. 8.**   Charter's transfer of active legal holds from SalesForce to Legal Hold Pro, including (i) why Charter transferred all of its holds and the "operative" hold, (ii) the process followed to effectuate that transfer, (iii) the roles performed by Kimberly Love, Christy Flores, Dan Vasey, Kirill Abramov, and any other Charter employees or agents for the transfer, (iv) who else was involved in the manual transfer, and (v) why and how the "operative legal hold" was omitted from the transfer.

**TOPIC NO. 9.**   The functionality and operation of ZL Technologies and ProofPoint, and Charter's use thereof.

**TOPIC NO. 10.**   Charter's migration of its email archives from ZL Technologies to ProofPoint, including when and why the migration was performed, and by whom.

**TOPIC NO. 11.**   Charter's review of "its preservation burden" in 2018, including the "process of comparing lists of active legal hold custodians in Legal Hold Pro against

those custodians on hold in ProofPoint," who was involved in that review, and why that process resulted in deletion of email for at least 9 Charter custodians who were the subject of active legal holds.

**TOPIC NO. 12.**   Charter's "clean-up of its ProofPoint archive and delet[ion of] any held data that [Charter] believed it no longer had an obligation to preserve," in December 2018, including, (i) the process used to effectuate that clean-up, (ii) the roles performed by Kimberly Love, Christy Flores, Dan Vasey, Kirill Abramov, and any other Charter employees or agents for the clean-up, (iii) who else was involved in the clean-up, and (iv) what safeguards were implemented to ensure that data was not inadvertently deleted as part of the clean-up.

**TOPIC NO. 13.**   The identities and job responsibilities of the persons responsible for Charter's use of SalesForce, Legal Hold Pro, ProofPoint, and ZL Technologies.

**TOPIC NO. 14.**   When and how Charter first became aware that it "suffered a loss of e-mails as a result of the migration of its legal hold management system in 2017 and 2018."

**TOPIC NO. 15.**   The steps Charter took to investigate the e-mail loss resulting from the migration of its legal hold management system, including the individuals involved in the investigation and when such steps were taken.

**TOPIC NO. 16.**   The steps Charter took to investigate whether the e-mails lost as a result of the migration of its legal hold management system could be replaced.

**TOPIC NO. 17.**   The job titles and responsibilities of the Charter custodians from whom Charter collected the messages "sent or received by the 14 custodians during the

period March 2012 to May 2016," as described in the March 4, 2020 letter from Michael Elkin.

**TOPIC NO. 18.** The scope of loss of e-mails resulting from the migration of Charter's legal hold management system, including custodians affected, time period of the loss for each custodian, and volume of data lost, including e-mails lost related to other litigation holds, if any, and the nature of the data identified in the Response to Question 10 in John Rosenthal's April 14, 2020, letter and how it had been preserved until the deletion.

**TOPIC NO. 19.** The scope of loss of any non-email documents or information resulting from the migration of Charter's legal hold management system, including the folders affected and the number and type of documents deleted, and including whether files preserved under the December 2015 legal hold in SharePoint or other document storage systems were also deleted.

**TOPIC NO. 20.** Any loss of documents from custodians identified in Charter's initial disclosures pursuant to FRCP 26(a)(1) in this lawsuit other than the loss described in John Rosenthal's April 14, 2020, letter, including but not limited to the identity of the custodians whose documents were lost, the nature and volume of the lost documents, when such documents were lost, how such documents were lost, and when Charter first learned of the loss of such documents.

**TOPIC NO. 21.** Charter's policies, procedures, and practices for retaining records of CATS tickets generated in response to DMCA notices to Charter about Charter's subscribers in effect from 2012 through 2016; when and by whom such policies, procedures, and practices were promulgated and made known with Charter; and the method by which such policies, procedures, or practices are carried out.

**TOPIC NO. 22.**   The distinction between CATS "ticket data" and "ticket table data," where each is stored, how each is accessed, by whom each can be accessed, and the respective retention period for each, including why.

**TOPIC NO. 23.**   The factual basis for Charter's contention that it deleted CATS ticket data and ticket table data in the ordinary course, consistent with an unwritten retention policy.

**TOPIC NO. 24.**   The facts disclosed in Michael Elkin's March 4, 2020 letter to Plaintiffs concerning Charter's deletion of ESI.

**TOPIC NO. 25.**   The facts disclosed in John Rosenthal's April 14, 2020 letter to Plaintiffs concerning Charter's deletion of ESI.