# Exhibit 6

| | |
|---|---|
| **From:** | Jeff Gould |
| **To:** | Ranahan, Erin |
| **Cc:** | Coorg, Shilpa; Ellis, Emily; Skopec, Allison; Elkin, Michael; Spitzer, Seth; Lane, Thomas; Alvarez, Cesie; Ehlers, J. Hardy; Kamin, Mitchell A; Sperling, Jonathan; Sahni, Neema T; Lampros, Nicholas M.; O"Neill, Megan; Scott Zebrak; Matt Oppenheim; Hill, Phil; Andrew Guerra; Golinveaux, Jennifer; Anderson, Sean R.; Waters, Patty |
| **Subject:** | Re: Charter discovery |
| **Date:** | Wednesday, April 8, 2020 10:46:44 AM |

**[EXTERNAL]**

Erin – Thank you for your letter of April 7. Given that we have been discussing these issues for months without resolution, we cannot delay any further in raising them with the Special Master (except the issue of Charter's redactions, which we believe is now resolved other than as to PII). We are nevertheless available for a call tomorrow (Thursday) at noon ET to continue the discussion in further hopes that Charter will agree to produce the requested information without need for intervention. Please let us know if that works for you.

Regards,
Jeff

Jeffrey M. Gould
**Oppenheim + Zebrak, LLP**
202.851.4526 (direct)
jeff@oandzlaw.com

---

**From:** "Ranahan, Erin" <ERanahan@winston.com>
**Date:** Tuesday, April 7, 2020 at 2:27 PM
**To:** Jeff Gould <Jeff@oandzlaw.com>
**Cc:** "Coorg, Shilpa" <SCoorg@winston.com>, "Ellis, Emily" <EEllis@winston.com>, "Skopec, Allison" <ASkopec@winston.com>, "Elkin, Michael" <MElkin@winston.com>, "Spitzer, Seth" <SSpitzer@winston.com>, "Lane, Thomas" <TLane@winston.com>, "Alvarez, Cesie" <CAlvarez@winston.com>, "Ehlers, J. Hardy" <JEhlers@cov.com>, "Kamin, Mitchell A" <MKamin@cov.com>, "Sperling, Jonathan" <jsperling@cov.com>, "Sahni, Neema T" <nsahni@cov.com>, "Lampros, Nicholas M." <nlampros@cov.com>, "O'Neill, Megan" <MONeill@cov.com>, Scott Zebrak <Scott@oandzlaw.com>, Matt Oppenheim <Matt@oandzlaw.com>, "Hill, Phillip A" <PAHill@cov.com>, Andrew Guerra <Andrew@oandzlaw.com>, "Golinveaux, Jennifer" <JGolinveaux@winston.com>, "Anderson, Sean R." <sranderson@winston.com>, "Waters, Patty" <PWaters@winston.com>
**Subject:** RE: Charter discovery

Dear Jeff,

Attached please find the attached correspondence, which responds to your email below.

Best Regards,

-Erin

**Erin R. Ranahan**
**Partner**
Winston & Strawn LLP
T: +1 (213) 615-1700
D: +1 (213) 615-1835
F: +1 (213) 615-1750

winston.com

**From:** Jeff Gould <Jeff@oandzlaw.com>
**Sent:** Sunday, April 5, 2020 5:47 AM
**To:** Ranahan, Erin <ERanahan@winston.com>
**Cc:** Coorg, Shilpa <SCoorg@winston.com>; Ellis, Emily <EEllis@winston.com>; Skopec, Allison <ASkopec@winston.com>; Elkin, Michael <MElkin@winston.com>; Spitzer, Seth <SSpitzer@winston.com>; Lane, Thomas <TLane@winston.com>; Alvarez, Cesie <CAlvarez@winston.com>; Ehlers, J. Hardy <JEhlers@cov.com>; Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>; Sahni, Neema T <nsahni@cov.com>; Lampros, Nicholas M. <nlampros@cov.com>; O'Neill, Megan <MONeill@cov.com>; Scott Zebrak <Scott@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Hill, Phillip A <PAHill@cov.com>; Andrew Guerra <Andrew@oandzlaw.com>; Golinveaux, Jennifer <JGolinveaux@winston.com>; Anderson, Sean <SRanderson@winston.com>
**Subject:** Re: Charter discovery

Erin – We write in response to your April 1 email below and your April 1 email to Special Master Rodriguez.  As an initial matter, your statement to Ms. Rodriguez that we only raised most of these issues on March 29 is blatantly false.  We have been pressing on nearly all of these issues since our August 15, 2019 letter, and have pressed on the improper redactions for months, including in our Feb. 7 letter and March 23 email.  Please refrain from making such false assertions in your correspondence with the Special Master and court in the future.  If you believe any of the below issues can truly be mooted, as you informed Ms. Rodriguez, please let us know.

1. **Redactions**

We understand that Charter refuses to remove wholesale redactions from its abuse handling procedures unless Plaintiffs agree to remove redactions of highly sensitive financial terms in artist agreements that Charter sought to test Plaintiffs' ownership of the works at issue.  If I have misstated your position, please clarify.  In any event, the two are not the same for the reasons we have explained.

We also disagree that your redactions are for non-relevance.  How Charter handled copyright infringement on its network, including how that compares to other types of abuse, is relevant to liability, willfulness, and damages.  Charter may not withhold that information merely because it disagrees with some other redactions in Plaintiffs' documents that have no bearing Plaintiffs' claims or Charter's defenses.  Your conclusory assertion that highly sensitive financial terms in Plaintiffs' documents are "potentially relevant" for some unspecified purpose is unsupported and does not change that.

2. **Documents sufficient to identify subscribers associated with Plaintiffs' infringement notices**

Thank you for confirming that Charter has retained DHCP logs from Dec. 2014 to present.  Please confirm by Monday, April 6 that you will produce those logs from Dec. 2014 through March 2015.  In addition to RFP 40, this information is also called for by RFPs 9, 11 and 12, which Plaintiffs served in June 2019.

You also state that DHCP logs alone would not allow identification of specific subscribers.  That is no response; it simply means that Charter must produce more documents from the "multiple other systems within Charter" that you describe as necessary to identify the relevant subscribers.  Those documents are also squarely called for by RFPs 9, 11, and 12 and your responses to same (7/10/19 Responses and 10/1/19 Letter).

3. **Communications concerning copyright infringement by your subscribers**

We are open to considering any proposed stipulation that could streamline issues in the case.  It is unclear, however, what stipulation could moot Plaintiffs' need for Charter's communications discussing its handling of copyright infringement on its network.  As your firm knows well from the *Cox* case, internal discussions regarding handling of copyright abuse rarely (if ever) relate to specific works infringed and also do not typically pertain to particular complainants.  The restriction you have imposed would have blocked from discovery in *Cox* virtually all of the highly probative emails (i.e. "f the dmca" etc) – a limitation the EDVA rejected multiple times.

Your limitation to Plaintiffs' notices and works is further problematic because Charter has not retained data or emails pertaining to Plaintiffs' notices and work.  In essence, Charter is thus agreeing only to look from within a non-existent (or deeply compromised) corpus in the first place.

In addition, Charter's safe harbor defense is not limited to how Charter addressed Plaintiffs' notices, but its overall policy for handling repeat infringement on its network. Information about notices and subscribers other than those in Plaintiffs' notices is thus clearly relevant.

As for other requests implicated by this improper limitation beyond RFPs 4 and 16, we explained that in detail in our March 25 letter at pages 1-4 and in our March 19 letter at page 1.

4. **Management reports and video/voice revenues**

We learned for the first time during the Feb. 19 hearing with Judge Hegarty that Charter's management reports "is where [Charter] tr[ies] to come up with different ways to try to account for different revenues when it's a bundled service" (2/19/20 Tr. at 147).  Charter cannot withhold a contemporaneous document with concededly relevant and responsive information in favor of a document you created for this case containing excerpts you selected (just as it cannot unilaterally redact half of an 80-page document).  We should not be required to take a deposition to understand what the reports contain, until we receive the reports themselves.  Nor is Charter's production of spotty billing reports for a mere 11,000 customers sufficient.  Those reports concern just ~5% of the infringing subscribers who were the subject of Plaintiffs' notices.  In light of that, Plaintiffs' need overall revenue from the bundled service lines to conduct their analysis of Charter's economic incentives.

Regards,
Jeff


Jeffrey M. Gould
**Oppenheim + Zebrak, LLP**
202.851.4526 (direct)
jeff@oandzlaw.com


**From:** "Ranahan, Erin" <ERanahan@winston.com>
**Date:** Wednesday, April 1, 2020 at 4:47 PM
**To:** Jeff Gould <Jeff@oandzlaw.com>
**Cc:** "Coorg, Shilpa" <SCoorg@winston.com>, "Ellis, Emily" <EEllis@winston.com>, "Skopec, Allison" <ASkopec@winston.com>, "Elkin, Michael" <MElkin@winston.com>, "Spitzer, Seth" <SSpitzer@winston.com>, "Lane, Thomas" <TLane@winston.com>, "Alvarez, Cesie" <CAlvarez@winston.com>, "Ehlers, J. Hardy" <JEhlers@cov.com>, "Kamin, Mitchell A" <MKamin@cov.com>, "Sperling, Jonathan" <jsperling@cov.com>, "Sahni, Neema T" <nsahni@cov.com>, "Lampros, Nicholas M." <nlampros@cov.com>, "O'Neill, Megan" <MONeill@cov.com>, Scott Zebrak <Scott@oandzlaw.com>, Matt Oppenheim <Matt@oandzlaw.com>, "Hill, Phillip A" <PAHill@cov.com>, Andrew Guerra <Andrew@oandzlaw.com>, "Golinveaux, Jennifer" <JGolinveaux@winston.com>, "Anderson, Sean R." <sranderson@winston.com>

**Subject:** RE: Charter discovery

Jeff,

1. **<u>Redactions</u>**

With respect to redactions, it is my understanding your position was that it was improper for Charter to redact out portions of otherwise responsive documents beyond privilege or PII.  Are you instead saying there are appropriate redactions for relevance, if those documents are Plaintiffs' documents? Or upon what basis are you maintaining that you should be permitted to make certain redactions for relevance? On what authority do Plaintiffs rely on for the proposition that any relevance redactions are proper?  As we indicated, Charter is willing to take another look and undo any redactions that are based on a relevance assertion, and will agree to consider that approach going forward.  Are Plaintiffs unwilling to revisit any of their own relevance redactions?  And are Plaintiffs unwilling to commit to not making any relevance redactions to responsive documents going forward? The fact that you produced certain documents as a means to attempt to prove ownership does not mean you can redact out portions of those documents that you consider sensitive, especially when that information is potentially relevant to other aspects of this case, including Charter's investigation into Plaintiffs' alleged damages (or lack thereof).  The Court has only attempted to limit Plaintiffs' obligations in this regard where it views there to be an onerous burden on gathering such information.  Plaintiffs have already gathered these documents, and thus undoing the redactions would not be the type of burden the Court was concerned with.  Indeed, Plaintiffs shouldn't have made the redactions in the first place, so any burden in undoing those improper redactions is entirely of Plaintiffs' own making.  Please let us know by April 3 whether Plaintiffs will agree to remove their improper redactions. Otherwise, Charter intends to raise this issue with Special Master Rodriguez.

2. **<u>Documents sufficient to identify subscribers associated with Plaintiffs' infringement notices</u>**

Charter has identified over 11,000 subscribers from Plaintiffs' notice data that was still available in light of Charter's reasonable retention period, and in light of the fact that Plaintiffs stopped sending notices in early 2015 (more than a year before the end of the claims period), and did not notify Charter of their anticipated claims until a year later.  At that point, there was ticket data maintained on a six month retention policy, and ticket table data available for 18 months prior as we have repeatedly explained.  Your repeated attempts to conflate these issues with the limited email loss demonstrates that you either have not listened to our repeated explanations or are being deliberately misleading.  With respect to DHCP logs, Plaintiffs first requested DHCP logs in their second set of document requests served on February 13, 2020, and Charter's written responses to which were timely served earlier this month. Specifically, Plaintiffs requested the following in RFP 40: "DHCP logs sufficient to link Subscribers to the IP addresses identified in each Infringement Notice you received from January 1, 2010 through May 17, 2016." Charter objected to the request as overbroad, unduly burdensome, and seeking information that is outside the scope of permissible discovery. As we subsequently discussed, collecting and producing the many years old DHCP logs that still exist would be extremely burdensome. More importantly, as we also discussed, production

of the DHCP logs would not allow Plaintiffs to identify any specific subscribers, as the DHCP logs must be matched with multiple other systems within Charter to identify actual subscribers. We have confirmed that Charter has DHCP logs dating back to December 2014. Because Plaintiffs only sent copyright notices to Charter through March 2015, any DHCP logs after March 2015 would be irrelevant.

3. **Communications concerning copyright infringement by your subscribers**

Plaintiffs have not articulated why any communications for works not related to this case are proportionally relevant to the needs of this case.  To the extent Plaintiffs are seeking emails about whether Charter terminated users in response to copyright allegations during the relevant timeframe, Charter is willing to explore and consider appropriate stipulations with Plaintiffs.  You also mention that this issue has arisen again in recent responses, but you do not identify where.  Please let us know why you believe you need all communications for any works across all timeframes, what requests this relates to, and whether you would be willing to discuss stipulations to avoid undue burden regarding these requests.

4. **Management reports and video/voice revenues**

You have already been provided extensive financial information about Charter's revenues earned through its bundled services. As Charter is a public company, it has extensive publicly available financial information.  Charter also went to great lengths to search through historic billing information by account number for those subscribers it could identify to provide you with available individual subscriber revenue for all services.  We provided an estimated version of internal internet only revenue, though you claimed that was "incomprehensible," and yet now are asking for more of what you call "incomprehensible" from management reports.  As we have also repeatedly explained, Charter does not officially calculate or track its revenues separately by service, as it offers its products as bundled services.  Contrary to your assumptions, there are no audited financials that break down Charter's revenues by service.  You have already repeatedly raised these issues with Judge Hegarty.  Judge Hegarty has made clear that Charter did not need to create new documents if they do not exist, and in direct response to your latest request to obtain full "management reports," advised you to take a deposition of a Charter financial witness and come back to him if you learned through that deposition that there were specific, additional relevant documents you believed should be produced.  You have yet to take any steps towards this deposition, and now appear to be violating Judge Hegarty's instruction that items he has already considered should not be brought before Special Master Rodriguez.

We remain available to further discuss these issues, including early next week, so that we can exhaust our efforts to resolve these issues informally, as Special Master Rodriguez has encouraged us to do.

Regards,

-Erin

**Erin R. Ranahan**
**Partner**
Winston & Strawn LLP
T: +1 (213) 615-1700
D: +1 (213) 615-1835
F: +1 (213) 615-1750

winston.com

**From:** Jeff Gould <Jeff@oandzlaw.com>
**Sent:** Sunday, March 29, 2020 8:34 PM
**To:** Golinveaux, Jennifer <JGolinveaux@winston.com>
**Cc:** Ranahan, Erin <ERanahan@winston.com>; Coorg, Shilpa <SCoorg@winston.com>; Ellis, Emily <EEllis@winston.com>; Skopec, Allison <ASkopec@winston.com>; Elkin, Michael <MElkin@winston.com>; Spitzer, Seth <SSpitzer@winston.com>; Lane, Thomas <TLane@winston.com>; Alvarez, Cesie <CAlvarez@winston.com>; Ehlers, J. Hardy <JEhlers@cov.com>; Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>; Sahni, Neema T <nsahni@cov.com>; Lampros, Nicholas M. <nlampros@cov.com>; O'Neill, Megan <MONeill@cov.com>; Scott Zebrak <Scott@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Hill, Phillip A <PAHill@cov.com>; Andrew Guerra <Andrew@oandzlaw.com>
**Subject:** Re: Charter discovery

Jennifer/Erin – We write to follow-up on several discovery issues in Charter. If Charter has a different understanding regarding any of the below issues, please provide your position by April 1, 2020.

1. **Redactions**

As you know, Charter's abuse policies and procedures are critical issues in the case and there is no basis to redact them. You seem to acknowledge that in Erin's March 25 email. Those redactions prejudice Plaintiffs' ability to assess Charter's policies and procedures for addressing abuse occurring on its network. They must be produced in full at once.

Even accepting for the moment that you have a valid PII objection (and we disagree about that), Charter's purported PII redactions are overbroad and include at least Charter employee emails, work log notes concerning abuse calls with customers, correlated ticket information and IP addresses. Those must be produced at once, as well.

None of those mass redactions is comparable in kind or scope to the minimal redactions of highly sensitive financial terms in Plaintiffs' artist agreements, which were sought and produced solely for purposes of assessing Plaintiffs' ownership / licenses to the works in

suit.  We therefore cannot agree to your proposal.

2. **Documents sufficient to identify subscribers associated with Plaintiffs' infringement notices**

In June 2019, Plaintiffs sought documents sufficient to identify the subscribers associated with Plaintiffs' infringement notices.  See RFPs 9, 11, 12.  Though we discussed this issue many times in the months that followed, it was not until early 2020 that you informed Plaintiffs that Charter could not identify the overwhelming majority of such subscribers.  The delay in that disclosure, and Charter's attempt to negotiate a scope of production in light of it, remains troubling.  Obviously, the failure to retain infringement notices and tickets is prejudicial to Plaintiffs' ability to test Charter's claim that it acted reasonably or that it effectively addressed infringement, among other issues.  We have since reiterated our request for DCHP logs and/or other documents that could connect Plaintiffs' infringement notices to Charter's subscribers, but Charter has refused to produce them.  And though Charter agreed long ago to produce DHCP log retention policies and related documents (RFP 9), it has not done so and, as of March 18, did not know what the retention policy was or whether it had a written one.

3. **Communications concerning copyright infringement by your subscribers**

Charter has unreasonably limited its production in response to RFP 4 to documents "concerning notices of claimed infringement of Plaintiffs' works in suit that were sent on Plaintiffs' behalf during the Discovery Period."  This was always an improper restriction and is even more indefensible in light of Charter's assertion of a safe harbor defense.  This issue has arisen again more recently in Charter's responses to Plaintiffs' second interrogatories and RFPs.

4. **Management reports and video/voice revenues**

Plaintiffs' RFP 18 seeks revenues and profits, by month and year, including a breakdown based on the type of service provided.  Charter has refused to produce anything beyond public financials and an extract of information from its so-called management reports that purports to show internet-only revenue.  Though the management report "is where [Charter] tr[ies] to come up with different ways to try to account for different revenues when it's a bundled service" (2/19/20 Tr. at 147), including bundled video and voice services, Charter refuses to produce the management reports from the period at issue.  Instead, Charter claims that Plaintiffs should take a Rule 30(b)(6) deposition merely to find out what may or may not exist.  Plaintiffs recognize that Judge Hegarty was amenable to the idea of such deposition to generally understand what financial documents Charter possesses, but that is unnecessary here.  There is no dispute that Charter maintains and possesses management reports from the discovery period that contain information sufficient to identify revenues from bundled

services, including video and voice.  And there is no basis to claim those reports are irrelevant or burdensome to produce.  Particularly in light of Charter's destruction of critical data and the critical importance of bundling, Plaintiffs' financial expert needs service-line revenue information to conduct his analysis on the value of Charter's subscribers.  The EDVA court in both the BMG and Sony cases repeatedly found video and voice revenues not only discoverable but admissible.  And even Charter seems to agree by having produced voice and video billings for the small number of infringing subscribers it could identify.

Regards,
Jeff


Jeffrey M. Gould
**Oppenheim + Zebrak, LLP**
202.851.4526 (direct)
jeff@oandzlaw.com

---

**From:** "Golinveaux, Jennifer" <JGolinveaux@winston.com>
**Date:** Wednesday, March 18, 2020 at 9:54 PM
**To:** Jeff Gould <Jeff@oandzlaw.com>
**Cc:** "Ranahan, Erin" <ERanahan@winston.com>, "Coorg, Shilpa" <SCoorg@winston.com>, "Ellis, Emily" <EEllis@winston.com>, "Skopec, Allison" <ASkopec@winston.com>, "Elkin, Michael" <MElkin@winston.com>, "Spitzer, Seth" <SSpitzer@winston.com>, "Lane, Thomas" <TLane@winston.com>, "Alvarez, Cesie" <CAlvarez@winston.com>, "Ehlers, J. Hardy" <JEhlers@cov.com>, "Kamin, Mitchell A" <MKamin@cov.com>, "Sperling, Jonathan" <jsperling@cov.com>, "Sahni, Neema T" <nsahni@cov.com>, "Lampros, Nicholas M." <nlampros@cov.com>, "O'Neill, Megan" <MONeill@cov.com>, Scott Zebrak <Scott@oandzlaw.com>, Matt Oppenheim <Matt@oandzlaw.com>, "Hill, Phillip A" <PAHill@cov.com>, Andrew Guerra <Andrew@oandzlaw.com>
**Subject:** RE: Charter discovery

Jeff, please review Charter's recent production.

Thanks,
Jennifer

**Jennifer Golinveaux**
Winston & Strawn LLP
D: +1 415-591-1506
M: +1 415-699-1802

winston.com

**From:** Jeff Gould <Jeff@oandzlaw.com>
**Sent:** Wednesday, March 18, 2020 6:38 PM
**To:** Golinveaux, Jennifer <JGolinveaux@winston.com>
**Cc:** Ranahan, Erin <ERanahan@winston.com>; Coorg, Shilpa <SCoorg@winston.com>; Ellis, Emily <EEllis@winston.com>; Skopec, Allison <ASkopec@winston.com>; Elkin, Michael <MElkin@winston.com>; Spitzer, Seth <SSpitzer@winston.com>; Lane, Thomas <TLane@winston.com>; Alvarez, Cesie <CAlvarez@winston.com>; Ehlers, J. Hardy <JEhlers@cov.com>; Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>; Sahni, Neema T <nsahni@cov.com>; Lampros, Nicholas M. <nlampros@cov.com>; O'Neill, Megan <MONeill@cov.com>; Scott Zebrak <Scott@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Hill, Phillip A <PAHill@cov.com>; Andrew Guerra <Andrew@oandzlaw.com>
**Subject:** Re: Charter discovery

Jennifer - please help me understand what policies have been produced from early in the claim period (7 below). Thanks.

> On Mar 18, 2020, at 8:37 PM, Golinveaux, Jennifer <JGolinveaux@winston.com> wrote:
>
> Jeff,
>
> Nice talking to you too. We disagree with your characterization of a number of points from our call. We will correct those inaccuracies in our forthcoming letter that you reference below. Preliminarily, however, I note that your statement at item 7 that no policies have been produced from the beginning of the claims period is simply false. With respect to item 6 in your email, as I said on the call, we have produced all communications responsive to Plaintiffs' RFP No. 8 as limited by the Court that we have located to date, with the exception of the categories of documents held up by the inaccessibility of Epiq's databases, which I informed you of in an email on March 15, and the Court of in a letter on March 16. If additional documents are identified, rest assured they will be promptly produced.
>
> Regards,
>
> Jennifer
>
> **Jennifer Golinveaux**
> Winston & Strawn LLP
> D: +1 415-591-1506
> M: +1 415-699-1802

winston.com

<image002.jpg>

---

**From:** Jeff Gould <Jeff@oandzlaw.com>
**Sent:** Wednesday, March 18, 2020 3:03 PM
**To:** Ranahan, Erin <ERanahan@winston.com>; Golinveaux, Jennifer <JGolinveaux@winston.com>; Coorg, Shilpa <SCoorg@winston.com>; Ellis, Emily <EEllis@winston.com>; Skopec, Allison <ASkopec@winston.com>; Elkin, Michael <MElkin@winston.com>; Spitzer, Seth <SSpitzer@winston.com>; Lane, Thomas <TLane@winston.com>; Alvarez, Cesie <CAlvarez@winston.com>
**Cc:** Ehlers, J. Hardy <JEhlers@cov.com>; Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>; Sahni, Neema T <nsahni@cov.com>; Lampros, Nicholas M. <nlampros@cov.com>; O'Neill, Megan <MONeill@cov.com>; Scott Zebrak <Scott@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Hill, Phillip A <PAHill@cov.com>; Andrew Guerra <Andrew@oandzlaw.com>
**Subject:** Charter discovery

Jennifer/Erin – Nice talking to you today.  I write to memorialize our discussions from today's meet-and-confer on Charter discovery.  We look forward to continuing this and other discussions and are available to do so at 2-3:30 ET (11-12:30 PT) on Tuesday, March 24.  On that call, we plan to discuss the Bright House issues we raised as long ago as Feb. 7 and thereafter, as well as your recent letter concerning Charter, which I received after midnight ET yesterday (late Monday night PT).

From today's call:

1. **Feb. 7 email**. You agreed to respond to our Feb. 7 letter in writing in the next few days to identify any areas where you disagree with our characterizations, including which issues you think are mooted by subsequent events.

2. **No documents identified**.  In light of Charter's destruction of emails and failure to retain CATS ticket data, we asked that you identify document requests for which Charter has identified no responsive documents.  In response, you proposed the parties both agree to supplement their RFP responses to so state.  As we explained, given Charter's destruction issues, the parties are not similarly situated, but we will consider the proposal.

3. **Retention policies**.

    a. Ticket data: You confirmed that Charter has not identified any written retention policies for ticket data and that your representation of 6-month (CATS) and 18-month (ticket table data) retention policies is based on oral representations from Charter employees.  You also indicated you did not know when those retention policies were implemented, and we asked if

you could find out and let us know. We also asked what, steps, if any, Charter has taken to attempt to locate the unretained ticket data from archives, back-up tapes, or other efforts. You said you would inquire and get back to us.

b. DHCP logs. We asked that, in light of the failure to retain ticket data or connect subscribers to roughly ~570,000 RIAA infringement notices, Charter commit to producing DHCP logs (and/or whatever other documents are necessary to connect RIAA's infringement notices to Charter's subscribers in the absence of retained ticket data). You said you would look into this, including what the retention policy is for DHCP logs and related records.

c. Central repositories/shared drives. We discussed our surprise that Charter had not produced policy documents from early portions of the claim period and asked if Charter had searched central repositories/shared drives. You said that Charter had searched central repositories, including shared drives, for copies of policy documents. We also asked what the retention policy is for such sources. You indicated that you did not know but would look into it and get back to us.

d. Producing retention policies. Given the many destruction issues and inconsistent or variant retention periods, we reiterated our request for Charter to promptly produce all retention policies. In addition, please identify the individuals with knowledge of the alleged policies.

4. **Ticket data**. You confirmed that Charter's production of ticket data is complete. You confirmed the production contains one file with records for all subscribers and tickets associated with RIAA infringement notices during the claim period, and that the other ticket data files contain records of infringement tickets from other copyright holders pertaining to the same roughly ~11,000 subscribers.

a. We asked if Charter's production contains documents defining the 4 values in the CUSTOMER_COMM_ACTION field (BATCHED, PC_WARNING, EMAIL_WARNING, and EMAIL_AND_PC_WARNING). You said you would inquire and let us know. If not, please produce such documents or define them for us.

5. **Management reports**. We reiterated our request for Charter to produce the management reports from which it extracted information to selectively provide alleged internet revenue information. We explained why that approach was improper, you disagreed and indicated we should take a financial deposition to

explore the issue further, and we responded that it be inefficient and unproductive without copies of the reports. We also explained why those reports are needed to assess other revenue streams, particularly in light of Charter's failure to retain data permitting production of billing data for all the relevant infringing subscribers. We appear to be at an impasse here.

6. **Email/communications re copyright policies**.  You did not provide clear information on this.  Erin said all documents had been produced (though only 41 emails are produced to date).  Jennifer hedged and indicated some additional QC was ongoing and there could be more.  Please clarify whether there is more to come or if the production is complete.

7. **Policies**. You said Charter's production of copyright policy documents is complete. We noted surprise at the absence of such documents from early in the claim period.

Regards,
Jeff

Jeffrey M. Gould
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue, NW | 5th Floor
Washington, DC 20016
202.851.4526 direct | 202.480.2999 main
jeff@oandzlaw.com | www.oandzlaw.com

Follow Oppenheim + Zebrak on Twitter:   https://twitter.com/OandZLaw

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.