# Exhibit 7

1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
   Case No. 19-cv-00874-RBJ-MEH
3  _____

4  WARNER BROS. RECORDS, INC., et al.,

5       Plaintiffs,
   vs.
6

7  CHARTER COMMUNICATIONS, INC.

8       Defendant.
   _____
9

10           Proceedings before MICHAEL E. HEGARTY, United

11 States Magistrate Judge, United States District Court for the

12 District of Colorado, commencing at 3:03 p.m., February 19,

13 2020, in the United States Courthouse, Denver, Colorado.

14 _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16 ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17 _____

18                        APPEARANCES

19           NEEMA SAHNI, JONATHAN SPERLING and MATT OPPENHEIM,

20 Attorneys at Law, appearing for the Plaintiffs.

21           ERIN RANAHAN, SEAN ANDERSON, CRAIG JOYCE and

22 JENNIFER GOLINVEAUX (via phone), Attorneys at Law, appearing

23 for the Defendant.

24 _____

25                     DISCOVERY CONFERENCE
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

120

1        MR. OPPENHEIM:  Can I finish without being
2   interrupted?
3        THE COURT:  Go ahead.
4        MR. OPPENHEIM:  So if they've identified 11,000
5   subscribers from log files, produce those log files, produce
6   information about those 11,000 subscribers.  If they've
7   identified 38,000 tickets, produce that.  She indicated they
8   have them.
9        The other thing is this retention policy issue,
10  retention of data, 18 months, six months, this today is the
11  very first time we're hearing that.  That shouldn't happen.
12  If they have a problem where they don't have certain data,
13  they should tell us.
14        THE COURT:  All right, let's stop right there.  So
15  have you ever disclosed -- what you said on the record today
16  was that Cox had a different retention policy than Charter.
17  This is a different client, that's what you said.  Have you
18  disclosed to the plaintiff ever that information you know
19  they expect you to produce will not be produced for the
20  full-time period because the documents don't exist?  Have you
21  disclosed that previously?
22        MS. RANAHAN:  I have said that in open court, I
23  have said we don't have all of it.  You can look back at the
24  hearing, the timeframe.  I didn't know specific until this
25  week about the 11,000 subscribers.  That's from a new

121

1   number -- new information.  We've just understood that there
2   is 11,000.
3          THE COURT:  But whenever said you don't have it,
4   did you link that thought to a document destruction policy?
5   That's what I'm asking.
6          MS. RANAHAN:  We have never had that discussion at
7   all.
8          THE COURT:  Just saying generally we don't have it
9   is not disclosing that the reason you don't is because the
10  information has been destroyed or recycled or written over,
11  whatever you call it.
12         MS. RANAHAN:  Right.
13         THE COURT:  You've never linked those thoughts?
14         MS. RANAHAN:  We haven't, no, we haven't -- well,
15  we have said in open that some of it is so old that we don't
16  retain it anymore.  I've said it numerous times, I've said it
17  in meet and confers.  I haven't ever said that we have 38,000
18  and 11,000 because we just figured that out.
19         THE COURT:  Okay.  So retain is not in the
20  transcript -- the word "retain" is not the transcript at all
21  for December?
22         MS. RANAHAN:  I don't think I used the word
23  "retain," but I would have said the date, some of it is old.
24  If I had a search button, I would find it.  But I definitely
25  said repeatedly to plaintiffs in meet and confers, some of

122

1   this is just so old we don't have it.  We literally went
2   through a whole exercise where we were going to tell them
3   categories where we don't have things anymore and we have.
4              MR. OPPENHEIM:  Your Honor, Ms. Ranahan is very
5   capable of attaching innumerable letters that have been and
6   e-mails that have gone back and forth before between us to
7   you even on things as mundane as a scheduling order.
8              I would like her to submit to the Court and us the
9   e-mails or the transcript sites that indicate that she has
10  previously disclosed that information was destroyed, because
11  this is the very first time any of us have heard it.  It's
12  simply inaccurate.
13             THE COURT:  Let's give her a chance to retract
14  that.  Do you believe in some communication that you could
15  produce to the Court that you've clearly indicated some
16  information does not exist because it is gone?
17             MS. RANAHAN:  Yes, I believe --
18             THE COURT:  Then go ahead and submit that.
19             MS. RANAHAN:  Okay, I'll submit that.
20             THE COURT:  By Monday.
21             MS. RANAHAN:  I mean, it wasn't a specific thing.
22  It was some of this is so sold we don't have anymore and I've
23  said that repeatedly, but it's not this exact data because we
24  didn't know it.
25             THE COURT:  Well, I guess if she said it's so old

123

 1   we don't have anymore, that would necessarily mean it's gone.
 2           MR. SPERLING:  But, Your Honor, she was
 3   more specific than that.
 4           MS. RANAHAN:  (Inaudible).
 5           MR. OPPENHEIM:  What she actually said is:  We
 6   don't have ticket data from Charter -- And I'm reading from
 7   75 of the transcript of the transcript, Your Honor, if you
 8   want to follow on.
 9           THE COURT:  What date?
10           MS. SAHNI:  December 17.
11           MR. SPERLING:  December 17, page 75 beginning at
12   line 4.
13           THE COURT:  I'll trust you.
14           MR. SPERLING:  We don't have ticket data from
15   Charter from 2010, we don't have it from 2011.  We have some
16   data which started at 2012, 2013.  Now she has represented to
17   the Court that they don't have data from 2013 --
18           MS. RANAHAN:  Well, we produced --
19           MR. SPERLING:  -- because -- because of an 18-month
20   or six-month document retention policy, I guess depending on
21   the nature of the material
22           So it's not, Your Honor, a matter of her simply
23   saying some material is so old.  There was at a minimum
24   misdirection by stating affirmatively that there was not data
25   from earlier periods, i.e., years predating the claim period,

124

1  2010, '11, '12.

2        THE COURT:  What page are you on?

3        MR. SPERLING:  I'm on page 75, Your Honor.  It's

4  right at the top, fourth line.

5        THE COURT:  All right.  So we don't have ticket

6  data from Charter from 2010.  We don't have 2011.  You can

7  reasonably assume, meaning it's gone, right?

8        MR. SPERLING:  For those periods.

9        THE COURT:  Yeah.

10       MR. SPERLING:  But, Your Honor, the negative

11  implication especially when she says, We have some data which

12  started at 2012, 2013, the negative implication is that they

13  have not lost data from those years onward.

14       THE COURT:  But she used the word "some."

15       MR. SPERLING:  Yes, Your Honor.

16       THE COURT:  She didn't say, We have data.  If she

17  said, We had data starting in 2012, 2013, that means she's

18  excluding that anything was destroyed.  If she says, We have

19  some, and then she says, We're trying to assess against their

20  notices what we have.  So that to me is close enough saying

21  we're trying to determine what still exists and what don't.

22       MR. SPERLING:  But, Your Honor, the question is not

23  did she make an affirmative misrepresentation that they had

24  data from those periods.  The question that you posed, which

25  was the right question to pose, is whether she ever told us

125

1  previously that they didn't have data from the claim period.
2  And this sentence or sentences that we just read strongly
3  imply that data was not lost from the claim period because it
4  says there is no data from earlier periods while making no
5  such representation with respect to the claim period.
6      So I'm not accusing Ms. Ranahan of stepping up
7  here, Your Honor, and making an affirmative misrepresentation
8  in December that stuff existed when it didn't, but this
9  supports our point, which is that this is the first time,
10 eight months into this case, that we are learning that they
11 have a serious document retention problem in this matter, and
12 they should have told us a long time ago.  And it explains in
13 part, of course, why they've been dragging their feet on
14 production, why we've gotten so few documents.  Now we're
15 learning they've got a big problem, they don't have documents
16 that they ought to have.
17      THE COURT:  Well, why is that their big problem?  I
18 mean, so far I haven't heard anything that would make me
19 suspicious that it's spoliation.  So everybody can have a
20 reasonable document retention policy, right?
21      MR. SPERLING:  They can, Your Honor.  Of course,
22 we'll need to take discovery about this policy and how it was
23 implemented.
24      But, Your Honor, given all of the disputes going on
25 about the failure to produce documentation, respectfully,

126

1   it's not responsible, it's not way that we or they should be
2   conducting this litigation.  We can fight hard on the merits,
3   but there is certain basic professional responsibilities that
4   we ought to be discharging in going back and forth over
5   discovery, however much we disagree.  This should have been
6   disclosed a long time ago.
7           MR. OPPENHEIM:  May I respond to your question how
8   it impacts the case substantively because it's important,
9   Your Honor?
10          This case is about the continued provision of
11  service to known repeat infringers.
12          THE COURT:  Understood.
13          MR. OPPENHEIM:  Right.  We don't know whether
14  they're going to plead the affirmative defense, the safe
15  harbor, which would require them to have adopted and
16  implemented a repeat infringer provision that provides for
17  termination.
18          If you don't maintain data on which of your
19  subscribers have been the subject of infringement notices,
20  you can't possibly know whether you're continuing to provide
21  service to repeat infringers, because if you erase your
22  memory every, say, six months, you don't know whether they
23  were -- a particular subscriber was the subject of 100
24  notices six months ago.  So it goes directly to the merits of
25  the case, whether or not they bothered to track or cared

154

1               TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                        February 22, 2020

8    Signature of Transcriber              Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25