# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

        Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

        Defendant.

---

## SPECIAL MASTER'S ORDER RESOLVING DISCOVERY DISPUTES

---

**Entered by Regina M. Rodriguez, Special Master, on May 29, 2020,**

Pending before the Special Master are Plaintiffs' and Defendant's Motions to Compel. The parties submitted letter briefs in support of their motions on May 8, 2020, detailing outstanding discovery disputes and seeking resolution. On May 13, 2020 each party filed a response in opposition to the other party's brief. These motions are within the scope of matters originally assigned to me as Special Master. (ECF 143). Telephonic hearings were held on May 15, 2020 and on May 18, 2020, totaling approximately nine hours of argument. For certain issues, additional briefing was ordered, which was submitted on May 20, 2020. Based on the record and for the

1

reasons that follow, Defendant's motion is **granted in part and denied in part** and Plaintiffs' motion is **granted in part and denied in part.**[1]

## I.   BACKGROUND

This action arises out of the alleged secondary infringement by the Defendant of the Plaintiffs' copyrighted musical compositions and sound recordings. Plaintiffs allege that Defendant infringed their copyrighted works by contributing to its subscribers' direct infringement and by profiting from the subscribers' direct infringement while declining to exercise a right to stop or limit the alleged infringement. Judge Hegarty has provided a detailed account of the factual allegations in this case in his October 21, 2019 Recommendation, ECF 71. For the sake of brevity, the procedural history and applicable facts will not be repeated here. To the extent facts are relevant to a request at issue, those facts will be addressed in the analysis thereof.

---

[1] Oral argument began with Defendant's motion to compel on May 15, 2020 and Plaintiffs' motion to compel was argued on May 18, 2020. I address the motions in the order they were argued.

## II.   APPLICABLE LAW

"[T]he scope of discovery under the federal rules is broad." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Federal Rule of Evidence 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. In considering whether the discovery is proportional to the needs of the case, Rule 26(b)(1) instructs courts to analyze "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Discovery matters are "entrusted to the sound discretion of the trial courts." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) (internal quotation marks omitted). Where a discovery request appears relevant on its face, the party resisting the discovery request has the burden to show "the request (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such

3

marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery." *Sinclair Wyoming Ref. Co. v. A&B Builders, Ltd.*, 2017 WL 10309306, at *5 (D. Wyo. Oct. 31, 2017) (internal quotation marks omitted).

There are over thirty discovery requests at issue in the parties' motions. Each request has been considered in accordance with the requirements of the Federal Rules of Civil Procedure and applicable law.

## III.   CHARTER'S MOTION TO COMPEL

### A.   Request for Order Compelling Plaintiffs to Expand Responses to Certain RFPs

Charter has identified a number of Requests for Production (RFPs) for which it claims Plaintiffs' responses are deficient as to time period and/or substance. Many of these requests seek documents without a limiting time period. Plaintiffs have limited their responses to these requests to either the claim period, March 2013 – May 2016 (*see* Def. First Set of Requests for Prod. at 6), or the discovery period, 2012 – 2016 (*see* ECF 108 at 47:7-17). Charter contends that such documents are relevant to the extent that they refer to or otherwise relate to the claim period and/or the alleged infringement. Specifically, Charter argues that these post-claim period documents are "highly likely to include information bearing on the integrity of Plaintiffs' notices, including whether Plaintiffs' [*sic*] owned a work before a notice was

4

sent, the notice correctly identified a work, the verification was accurate, and the system was reliable, which might not have been assessed until *after* the claim period." (Def. Letter Br. May 8, 2020 at 4). The existence of any such documents, however, is entirely speculative. With regard to time period, Charter has not demonstrated the relevance of documents significantly post-dating the discovery period. Given the breadth of Charter's requests as served, as well as the tenuous relevance that documents from as late as 2019 would have to the claims at issue in this case, the burden on Plaintiffs of producing this information is likely to outweigh any potential benefit of this discovery to Charter's development of the case. In certain instances, however, Charter has demonstrated that certain limited post-claim documents are relevant and should be produced. Orders for each request in dispute are as follows:

1. RFP 27: Charter seeks "[a]ll documents that mention, refer to, or relate to Charter and/or the above-captioned litigation that were created, received, or sent from 2013 to the present." Plaintiffs have limited their response to the time period from January 1, 2013 to May 17, 2016, arguing that documents post-dating the claim period are not relevant. Charter seeks an order requiring Plaintiffs to extend this time period through 2019. Charter argues that this request is relevant because it would capture communications after the claim period discussing events that happened during the claim

period. In response, Plaintiffs argue that, even if such documents
were relevant, the burden of collecting such documents outweighs
the probative value because Plaintiffs cannot construct a search
targeting only post-2016 documents discussing events that
happened during the claim period. Plaintiffs would therefore need
to review all documents, most of which would be either privileged
or irrelevant. I agree. Charter has not demonstrated the relevance
of the documents post-dating May 17, 2016, and Plaintiffs have
established that the production of such documents would be
unduly burdensome. **Charter's request is denied.**

2. <u>RFP 55</u>: Charter seeks "[a]ll communications with MarkMonitor
regarding the Copyright Works and/or copyright infringement
notices considered, prepared, or sent to Charter or its account
holders, subscribers, or customers." Plaintiffs have limited their
response to the time period from January 1, 2013 to May 17, 2016.
Charter seeks an order requiring Plaintiffs to produce documents
responsive to this request through 2019. For the reasons stated
with regard to Charter's RFP 27, it would be unduly burdensome
for Plaintiffs to produce documents through 2019. Plaintiffs have,
however, demonstrated that documents through the end of 2016

may be relevant. **Charter's request for an order requiring Plaintiffs to produce documents responsive to this request through 2019 is therefore denied. Plaintiffs shall produce documents for the time period of January 1, 2013 through December 31, 2016.**

Charter also seeks an order requiring Plaintiffs to search for responsive documents from custodians at the law firm of Oppenheim and Zebrak, counsel in this matter. Charter claims that Oppenheim and Zebrak acted as an agent of the Plaintiffs with regard to communications with MarkMonitor. Plaintiffs argue that ordering discovery from Oppenheim and Zebrak would be improper because Oppenheim and Zebrak is Plaintiffs' outside counsel and because MarkMonitor is Plaintiffs' litigation consultant. While I acknowledge Plaintiffs' concerns, the fact that Oppenheim and Zebrak is acting as Plaintiffs' outside counsel *in this litigation* is not dispositive of its role *vis-à-vis* MarkMonitor and Plaintiffs during the claim period. Charter is entitled to understand the nature of MarkMonitor's relationship with the Plaintiffs, including whether Oppenheim and Zebrak acted as an agent of the Plaintiffs. **Charter's request for an order**

7

**requiring Plaintiffs to search for documents from the law firm of Oppenheim and Zebrak is therefore granted in part and denied in part. Plaintiffs shall produce any litigation agreements relating to this matter entered into between MarkMonitor and the Plaintiffs, including any agreements entered into between MarkMonitor and Oppenheim and Zebrak wherein Oppenheim and Zebrak acts as an agent of the Plaintiffs.**

3. <u>RFP 56</u>: Charter seeks "[a]ll documents concerning any computer code, computer program, software, hardware, system, process, or device utilized to monitor or detect copyright infringement through BitTorrent or peer-to-peer file sharing technologies or sites, or using copyright infringement notices that were prepared and sent by You or on Your behalf to Charter for the Copyright Works." Plaintiffs have limited their response to the time period from January 1, 2013 to May 17, 2016. Plaintiffs further contend that this request is duplicative of Requests 65 and 66. Charter seeks an order requiring Plaintiffs to extend this time period through 2019. Charter has not established that the requested documents post-dating the claim period are relevant to this

matter, and the burden of producing such documents therefore outweighs their probative value. **Charter's request is denied. The parties are instructed to meet and confer regarding documents produced in response to Requests 65 and 66 to determine whether the production of additional documents responsive to Request 56 is necessary.**

4. <u>RFP 62</u>: This request seeks "[a]ll documents concerning the RIAA and either this lawsuit, Charter, CAS, MarkMonitor, and/or the Copyright Works." Plaintiffs have limited their response to the time period from March 1, 2012 to May 17, 2016. Plaintiffs have also limited their response in substance. As part of the meet and confer, Charter has further narrowed this request, and now seeks an order requiring Plaintiffs to produce documents that concern the RIAA and either (i) this lawsuit; (ii) Charter; (iii) MarkMonitor, and/or (iv) the works in suit through 2019. Charter has not established that the requested documents post-dating the claim period are relevant to this matter, and the burden of producing such documents therefore outweighs their probative value. Charter has, however, established that the categories of documents sought are relevant and that the burden of producing

such documents would not outweigh their probative value. **Charter's request is granted in part and denied in part. Plaintiffs are ordered to produce documents concerning the RIAA and either (i) this lawsuit; (ii) Charter; (iii) MarkMonitor, and/or (iv) the works in suit, to the extent that documents concerning the RIAA and the works in suit also relate to either Charter or this lawsuit. Plaintiffs shall produce documents for the period of March 1, 2012 through May 17, 2016.**

5. <u>RFP 63</u>: Charter seeks "[a]ll documents pertaining to the relationship, agreement, and/or communications between You and/or any other Plaintiff and the RIAA and/or MarkMonitor regarding this lawsuit, the Copyright Works, and/or Charter." Plaintiffs have limited their response to the time period from March 1, 2012 to May 17, 2016. Charter seeks an order requiring Plaintiffs to extend this time period through 2019. Charter has not established that the requested documents post-dating the claim period are sufficiently relevant to this matter and the burden of producing such documents therefore outweighs their probative value. **Charter's request is denied. Plaintiffs shall produce**

**documents for the time period of March 1, 2012 through May 17, 2016.**

6. <u>RFP 64</u>: Charter seeks "[a]ll documents concerning the relationship, agreement, and/or communications between the RIAA and any other person as it relates to either Charter, this lawsuit, and/or the Copyright Works." Plaintiffs contend that this request is duplicative of Requests 62 and 63 and therefore refuse to produce documents responsive to this specific request. Charter seeks an order requiring Plaintiffs to respond to Request 64 as served. I agree that this request is duplicative of Requests 62 and 63. **Charter's request is denied.**

7. <u>RFP 65</u>: This request seeks "[a]ll documents concerning any technical or qualitative analysis of any computer code, computer program, software, hardware, system, process, or device utilized to identify infringement and/or produce the copyright notices which were sent to Charter or upon which You will rely in this litigation, including any documents drafted by the Center for Copyright Information ("CCI"), MarkMonitor, Stroz Friedberg, or Harbor Labs." Plaintiffs have agreed to produce documents for the time period from March 1, 2012 to May 17, 2016. Plaintiffs have

11

explicitly agreed to produce analyses that concern computer code or other systems responsible for the process in identifying infringement and/or producing the infringement notices that were sent to Charter and that Plaintiffs will rely on. Charter seeks an order requiring Plaintiffs to produce any analyses that concern computer code or other systems responsible for the process of identifying infringement and/or producing the infringement notices that were sent to Charter, or upon which Plaintiffs will rely on in this case for the time period of March 1, 2012 through 2019. Charter has not established that the requested documents post-dating the claim period are relevant to this matter, and the burden of producing such documents therefore outweighs their probative value. Furthermore, Plaintiffs' response to this request is reasonable, given the relevance of the information sought and the burden on Plaintiffs of producing the requested information. **Charter's request is denied**.

8. <u>RFP 66</u>: Charter seeks "[a]ll documents and correspondence relating to the reliability and/or efficacy of the MarkMonitor System, including but not limited to audits related thereto, and documents and communications with MarkMonitor, Stroz

Friedberg, and/or Harbor Labs pertaining to any technical assessments of the MarkMonitor System." Plaintiffs have agreed to produce responsive, non-privileged documents for the period from January 1, 2013 to May 17, 2016, concerning the reliability of the MarkMonitor system used to produce the copyright notices sent to Charter upon which Plaintiffs will rely in this litigation. Charter seeks an order requiring Plaintiffs to produce all documents responsive to the request as written, through 2019. Charter has not established that the requested documents post-dating the claim period are relevant to this matter, and the burden of producing such documents therefore outweighs their probative value. Furthermore, Plaintiffs' response to this request is reasonable, given the relevance of the information sought and the burden on Plaintiffs of producing the requested information. **Charter's request is denied.**

9. RFP 84: Charter seeks "[a]ll documents concerning the company Audible Magic and/or its technology, including without limitation, the use of Audible Magic's technology to identify the alleged infringements at issue in this litigation." Plaintiffs have limited their response to the time period from March 1, 2012 to May 17,

13

2016. Charter seeks an order requiring Plaintiffs to extend this time period through 2019. Charter argues that documents concerning Audible Magic's verification process are clearly relevant, regardless of whether they were produced after the claim period. Charter has not established that the requested documents post-dating the claim period are relevant to this matter, and the burden of producing such documents therefore outweighs their probative value. **Charter's request is denied.**

## B.  Request for Order Compelling Plaintiffs to Produce Documents Relating to Certain Financial Information

Charter asks the Special Master to issue an order requiring Plaintiffs to provide a more fulsome response to certain RFPs relating to communications regarding financial documents. These requests seek documents without a limiting time period. Plaintiffs have limited their responses to these requests by both time period and substance. Charter argues that the post-claim period documents sought are relevant because "Plaintiffs' claim period is a convenient, tolling-agreement induced snap-shot in the history of alleged piracy. Post-claim-period documents are integral to painting a complete picture for the jury, which is relevant to the deterrence factor of statutory damages." (Def. Letter Br. May 8, 2020 at 4). Plaintiffs, however, provide no further explanation of relevance. Given the breadth of Charter's requests as served, as well as the tenuous relevance that documents from as late as 2019 would

14

have to the claims at issue in this case, the burden on Plaintiffs of producing this information is likely to outweigh any potential benefit of this discovery to Charter's development of the case. Furthermore, at the parties' last Special Master hearing, Charter sought post-claim period financial information to bolster its argument that "P2P infringement is no longer an impediment for Plaintiffs." (Def. Letter Br., Apr. 10, 2020 at 3). The Special Master granted Charter's request in part, ordering Plaintiffs to produce top end financial data for the periods 2017, 2018 and 2019. (Hrg. Tr. Apr. 17, 2020 at 121:22-122:8; ECF 164 at 7). The information sought here appears to be directed to the same purpose. While the Special Master recognizes the potential relevance of that data, Plaintiffs have not demonstrated how the information sought in the RFPs at issue here provides relevant information that is different than what has already been ordered. Orders for each request in dispute are as follows:

1. RFP 22: Charter seeks "[a]ll documents concerning the effect from copyright infringement using peer-to-peer file sharing technologies on Your projected and actual total revenue and/or profits generated during Plaintiffs' Claim Period." Plaintiffs have agreed to produce these documents from the claim period. Charter seeks an order requiring Plaintiffs to produce any documents responsive to this request that reference or relate to the claim

period. For the reasons set forth above, **Charter's request is denied.**

2. <u>RFP 23</u>: Charter seeks "[a]ll documents that reference BitTorrent or other types of peer-to-peer file sharing technologies as they relate to diminished or diminishing use of such technologies, copyright infringement, sampling musical works, or permitted authorized uses, whether actual, perceived, or potential, of the Copyright Works." Plaintiffs have agreed to produce responsive documents, subject to certain objections, for the time period of March 1, 2012 through May 17, 2016. Charter seeks an order requiring Plaintiffs to produce any documents responsive to this request that reference or relate to the claim period. For the reasons set forth above, **Charter's request is denied.**

3. <u>RFPs 24 and 25</u>: During the hearing, Charter noted that Requests 23 and 24 related to similar issues as those discussed with regard to Requests 22 and 23. Charter therefore agreed to withdraw its motion to compel on these requests, reserving the right to revisit

the requests if it obtained additional information in depositions or

otherwise. (Hrg. Tr. May 15, 2020 at 126:4-8).

### C. <u>Request for Order Requiring Plaintiffs to Produce Documents Relating to Rightscorp</u>

With Request 54, Charter seeks "[a]ll communications with Rightscorp

regarding the Copyright Works and/or copyright infringement notices considered,

prepared, or sent to Charter or its account holders, subscribers, or customers."

Plaintiffs object  to the request as overly broad and unduly burdensome and argue

that the request seeks information concerning communications with nonparties

irrespective of Charter, the works in suit, or the relevant time period. Plaintiffs have

refused to produce documents responsive to this request. (Def. Letter Br. May 8, 2020,

Ex. 1).  Rightscorp is a third-party service similar to MarkMonitor. Charter argues

that many of the infringement notices that it received during the claim period came

from Rightscorp. Charter contends that Plaintiffs' communications with or about

Rightscorp are "probative of the reliability of Rightscorp's system, the

appropriateness of its notices, and its perception by the industry." (Def. Letter Br.

May 8, 2020 at 5). Plaintiffs argue that because none of their notices were sent by

Rightscorp, communications with Rightscorp are not relevant. Further, Plaintiffs

argue that Charter has not offered any evidence to suggest that it considered the

reliability of a vendor sending a notice when deciding how to respond to that notice.

(Pl. Letter Br. May 13, 2020 at 4). I agree with Plaintiffs. While ultimately the issue

of Rightscorp's reputation and its handling of notices may be somewhat relevant to this case, there is no basis for finding that Plaintiffs' discussions with or about Rightscorp are sufficiently probative of relevant issues to justify the burden and expense of production at this time. **Therefore, Charter's request with regard to RFP 54 is denied.**

### D. Request for Order Requiring Plaintiffs to Produce Documents Relating to RIAA and Anti-piracy Efforts

Requests 59 and 60 seek information relating to anti-piracy efforts both during and after the claim period. In addition to information demonstrating the amount that Plaintiffs spent on anti-piracy efforts (RFP 59), Charter also seeks information regarding the amount actually paid to the RIAA between 2010 and 2016 (RFP 60). Charter alleges that this information is relevant to mitigation, which it contends can be considered as part of a statutory damages analysis. The parties discussed these requests at length during the hearing, and the Special Master ordered additional briefing on this issue. Each party submitted briefing on May 20, 2020. The Special Master has considered the parties' briefing and arguments and the issue is now ripe for determination.

Charter argues that Plaintiffs' payments to the RIAA are relevant for three reasons:

*First*, Charter argues that the information is relevant because "financial ties between a party and a chief witness bear on issues of motive, bias, and credibility."

18

(Def. Letter Br. May 20, 2020 at 2). In support of this claim, Charter cites to *Koch v. Koch Indus., Inc.*, No. 85-1636-C, 1992 WL 223816, at *15 (D. Kan. Aug. 24, 1992). While *Koch* does suggest that evidence of bias or motive of a witness is relevant, it specifically states that the information is relevant to determine whether the witness "has any personal motive, bias or interest in favor of or against a party to this litigation." *Id*. Here, however, that Plaintiffs and the RIAA have a business relationship—such that the RIAA has an interest in favor of Plaintiffs—is not in dispute. Therefore, the relevance of the information sought for showing motive is tenuous at best.

*Second,* Charter argues that it expects evidence to show that that the RIAA chose a less expensive—and less reliable—version of the MarkMonitor system to send notices to Charter than it used for other ISPs. Charter argues that the level of payments to the RIAA during this period is relevant to what Plaintiffs were willing to pay for this policing and the budget RIAA had available. However, I note, Charter has not contended that it considered the reliability of notices when determining how to respond to those notices.

*Third,* Charter argues that Plaintiffs' payments to RIAA are relevant to mitigation both as an affirmative defense and to inform the appropriate level of statutory damages.

19

The Plaintiffs argue that their exclusive pursuit of statutory damages invalidates Charter's failure to mitigate defense. The Plaintiffs cite to *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1163, 1169-70 (D. Colo. 2014), in which Judge Daniel adopted Judge Hegarty's recommendation that "[a] copyright plaintiff's exclusive pursuit of statutory damages invalidates a failure-to-mitigate defense."

While the merits of Charter's affirmative defenses are not before me at this time, case law on this issue in this district is clear. Precedent suggests that failure to mitigate is not a proper defense in the face of a request for statutory damages. Further, the Plaintiffs have not established any other relevant purpose for the requested information. **Charter's requests with regard to RFPs 59 and 60 are therefore denied.**

### E.   Request for Order Requiring Plaintiffs to Add Additional Custodians

Charter seeks an order requiring Plaintiffs supplement their custodian list. Specifically, Charter seeks an order requiring Plaintiffs to add to their custodian list Plaintiffs' agents who had correspondence with the RIAA, MarkMonitor, or Audible Magic. As analyzed in section III.A.2, *supra*, Charter contends that Plaintiffs' outside counsel, Oppenheim and Zebrak, acted as an agent with regard to communications with MarkMonitor. **Plaintiffs are ordered to produce documents in accordance with the specifications set forth in section III.A.2, *supra*.**

**Plaintiffs are not ordered to add outside counsel as a custodian at this time. Charter's request is denied.**

### F. Request for Order Requiring Plaintiffs to Provide a Date Certain for Complete Production of Copyright Validity Documents

Charter requests a date certain by which the Plaintiffs will complete their production of copyright validity documents. The parties do not dispute that Charter is entitled to these documents. Plaintiffs have represented that they have completed over 90% of this production and anticipate completing the production of these documents by June. Charter seeks a date certain by which this production will be complete. Plaintiffs' counsel represented that Plaintiffs would commit to full production of the requested documents by June 15, 2020. (Hrg. Tr. May 15, 2020 31:1-5). **Plaintiffs are ordered to complete production of copyright validity documents by June 15, 2020.**

### G. Request for Order Requiring an Email Search for Documents Relating to Ownership Disputes

Charter contends that Plaintiffs were ordered to produce, as part of a 1% ownership sample, documents relating to ownership disputes. (Def. Letter Br. May 8, 2020 at 1). Plaintiffs state that they searched for responsive documents by "consult[ing] centralized repositories and email folders where such 'dispute'-related documents would reside." (Pl. Letter Br. May 13, 2020 at 1). Plaintiffs did not, however, run email searches for these types of documents. Charter seeks an order

21

requiring Plaintiffs to search for these types of documents "through reasonably diligent email searches, such as including the names and artists of the sample works along with terms like 'own' and/or 'cease and desist.'" (Def. Letter Br. May 8, 2020 at 1). Plaintiffs contend that they have already identified the responsive documents, and that such a search would be overbroad and inefficient.

**The parties are ordered to meet and confer regarding search terms for the proposed email search. Plaintiffs will then provide Charter and the Special Master with hit counts for the proposed search terms. The parties are then encouraged to meet and confer regarding this request. If the parties cannot reach agreement on this issue, the Special Master will issue an order.**

### H. Request for Order Compelling Responses to MPP Interrogatories 13 and 14

With Music Publisher Plaintiffs ("MPP") Interrogatories 13 and 14, Charter requests that the MPPs identify which of their musical compositions-in-suit were recorded within which of the sound recordings in suit. (Def. Letter Br. May 8, 2020 at 2). Charter contends that the "owner(s) of the musical composition and sound recording are entitled to a single award of statutory damages—*not* separate awards for the musical composition and the sound recording." *Id*. Charter therefore argues that "the determination of which musical compositions-in-suit were recorded on

which sound recordings-in-suit has a dramatic impact on Charter's potential exposure." *Id.*

Plaintiffs argue, however, that Charter already possesses the information it needs to conduct the analysis. Plaintiffs state that "[t]he sound recordings in this case are listed by track name in Exhibit A; the musical compositions are also listed by name in Exhibit B. In virtually all cases, Charter can compare those listings to identify potential overlaps." (Pl. Letter Br. May 13, 2020 at 2). As Charter points out in its letter briefing, however, Plaintiffs ignore the fact that there are many music compositions that share the same title. (Def. Letter Br. May 20, 2020 at 2). Charter specifically argues that, for example, "by comparing these lists, it is not possible to determine *which* of the five separate music compositions titled 'Everything' corresponds to which of the four sound recordings bearing the same name. In addition, there are hundreds of music compositions where *no* corresponding sound recording shares a title. Thus, it is unclear whether any of these music compositions resides in any of the sound recordings." [2] *Id.* Charter's arguments with regard to this

_____

[2] Indeed, in *Sony v. Cox*, Plaintiffs made this same argument, directly contradicting the argument they make now. Specifically, Plaintiffs in *Sony* argued that comparing the lists of sound recordings and music compositions is no "ministerial task," arguing that "there are simply too many separate musical compositions that happen to have the same title to have any certainty whether a sound recording with the same title corresponds to the musical composition without referencing data not found in [the respective lists of sound recordings and music compositions in suit]." (Def. Letter Br. May 20, 2020 at 2 n.1, Ex. 1).

23

data are compelling. The process here does not appear to be as simple as merely comparing two listings to provide potential overlap. The information sought is relevant, and Charter cannot discover this information merely by analyzing the documents that Plaintiffs have already produced. **Charter's request with regard to MPP Interrogatories 13 and 14 is granted.**

I.  **Request for Order Compelling Responses to MPP Interrogatory 15 and RCP Interrogatory 14**

Charter here seeks an order compelling a response to MPP Interrogatory No. 15 and Record Company Plaintiffs ("RCP") Interrogatory No. 14, which respectively seek the identification of each notice that corresponds to each of Plaintiffs' works in suit. Charter alleges that the vast majority of Plaintiffs' works in suit are not identified in any notice. Plaintiffs claim, however, that Charter has all the information needed to link the notices to the works in suit. Plaintiffs claim that the notices sent to Charter identified the infringing torrent file by hash and named a representative sample of one sound recording in the torrent. Plaintiffs allege that Charter possesses a spreadsheet of works that matches hash values to individual torrent files.

In its letter brief submitted on May 20, 2020, Plaintiffs walked through the process for linking notices to the works-in-suit. Charter argues that Plaintiffs have already completed this analysis, arguing that "in order to bring this suit for the 75%

of works in suit that are not identified by name, the MPP had to have determined which of their music compositions are implicated by the RCP's notices and the RCP had to have determined which of their unidentified 5,000-plus sound recordings are allegedly implicated by their notices." (Def. Letter Br. May 20, 2020 at 2). Charter also correctly asserts that a party may produce documents in lieu of providing a written response to interrogatories only when the "burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P 33(d). Here, Charter has demonstrated that the Plaintiffs' burden of producing the requested information is less than Charter's. **Charter's request with regard to MPP Interrogatory 15 and RCP Interrogatory 14 is granted.**

### J. <u>Request for Order Compelling Responses to Requests for Production 90 and 91</u>

Charter's RFPs 90 and 91 relate to the reference files used by Audible Magic to detect alleged infringement. These reference files were discussed at length during a discovery hearing on April 17, 2020. During that hearing, the Special Master ordered Plaintiffs to answer by June 1, 2020 whether the digital copies they have already produced are the same reference files provided to Audible Magic during the claim period. The Plaintiffs' answer to this question may partially resolve Charter's request regarding RFPs 90 and 91. This request is therefore premature. **Charter's request for an order compelling responses to RFPs 90 and 91 is denied.**

Charter may refile this request if necessary after Plaintiffs provide an answer on June 1, 2020.

IV.    **PLAINTIFFS' MOTION TO COMPEL**

A. **Request for Order Requiring Charter to Respond to Interrogatories 13 and 14**

Plaintiffs seek an order requiring Charter to respond to Interrogatories 13 and 14, which seek the total number of infringement notices Charter received from any source from 2012 to 2016, in addition to the total number of actions Charter took in response to those notices. Charter has already provided Plaintiffs with information relating to all notices sent to subscribers identified in Plaintiffs' notices. Charter contends that compiling the information sought would be overly burdensome. Charter has not, however, provided any evidence of such a burden. Notwithstanding the production of information related to subscribers identified in Plaintiffs' notices, Charter's invocation of the DMCA Safe Harbor puts at issue its overall policies and procedures for addressing infringement. Information relating to the total number of notices received and Charter's reaction to those notices is therefore relevant. Plaintiffs are entitled to probe how Charter's infringement policies were actually implemented. **Plaintiffs' request is granted**. **Charter shall provide the total number of notices received during the identified period. Charter shall also**

**provide information regarding the number of actions taken in response to notices, broken down by the type of action taken**.

### B.  Request for Order Requiring Charter to Produce Documents Concerning its Practices for Responding to Copyright Infringement

Plaintiffs' Requests 37, 56, and 61 seek information relating to Charter's policies for responding to copyright infringement and other abuses of its network. Such information is generally relevant, and the burden on Charter of producing such information is minimal. Orders for the particular requests in dispute are as follows:

1. RFP 37: Plaintiffs seek "[d]ocuments concerning all policies, practices, or capabilities that you considered, formulated, rejected, or adopted for taking adverse action (including suspending or terminating internet service) against Subscribers or Users for alleged copyright infringement." Charter represents that it has searched for documents and memoranda discussing infringement policies and that no such documents have been found. (Rough Hrg. Tr. May 18, 2020 45:13-22). Charter further argues this request is duplicative of RFP 8, which Judge Hegarty analyzed last year. Charter argues that Judge Hegarty ordered Charter to produce only final policies, finding that "drafts had nothing to do with changes" to policies. (Def. Letter Br. May 13, 2020, Ex. 7, Dec. 17,

27

2019 Hrg. Tr. at 59:23-24). Request 37, however, is not duplicative of RFP 8, and Judge Hegarty's ruling specifically noted the potential relevance of the documents sought therein. *See id*. at 68:9-15 (acknowledging that internal documents or memoranda discussing Charter's policies are likely within the "zone of relevance."). This information is relevant, and the burden of producing it is minimal. **Plaintiffs' request is granted. Charter shall produce documents responsive to RFP 37. Plaintiffs are not required to produce drafts of policies.**

2. <u>RFP 56</u>: This request seeks "[a]ll records or logs of calls, scripts created for use on calls, or documents discussing calls or reflecting the content of any calls, between your employees, customer service representatives, or members of your internet security team, Network Securities Operations department, or Customer Security team, on one hand, and any Subscriber or User identified in Infringement Notices or otherwise identified in connection with actual or alleged copyright infringement, on the other, related to alleged copyright infringement, any Infringement Notice, or any 'ticket' generated by an Infringement Notice, including all 'work log' or other notes entered in CATS as referenced on

28

CHA_00000006." In their motion to compel, Plaintiffs specifically seek records or logs of calls with infringing subscribers regarding infringement. Charter has agreed to produce scripts for such calls in addition to CATS ticket data, which it contends provides Plaintiffs with sufficient information. Charter also contends that the requested logs contain Personally Identifiable Information for customers, which would be burdensome for Charter to redact. The requested information is relevant and goes directly to the issues at the heart of this case. Given the burden of producing this information, however, Plaintiffs' request for all log entries is overbroad. **Plaintiffs' request is therefore granted in part and denied in part. Charter shall produce the requested work logs for infringing subscribers identified in Plaintiffs' notices. Charter shall also produce call logs for certain repeat infringers who are not identified in Plaintiffs' notices. The parties are directed to meet and confer to determine how many times an individual need have infringed to be deemed a repeat infringer such that call logs should be produced. If the parties cannot reach agreement on the parameters of this production they are**

29

**to submit proposals to the Special Master who will issue an order.**

3. <u>RFP 61</u>: Plaintiffs seek "[a]ll documents or communications distinguishing, differentiating, or otherwise comparing Charter's responses to violations of its Acceptable Use Policies for reasons other than copyright infringement (including for hacking or spamming) to its responses to violations of those policies on the basis of copyright infringement." Charter argues that the request is overbroad and irrelevant. Charter secondarily argues that its production of the "Abuse and Vulnerability Process Playbook" provides adequate information regarding how Charter responds to various AUP violations. While the Playbook may be relevant in that it shows what Charter's policies are, Plaintiffs are also entitled to investigate the ways in which Charter actually implemented those policies. Plaintiffs' request for "all documents and communications," however, is overly broad. **Plaintiffs' request is therefore granted in part and denied in part. Charter is hereby ordered to produce CATS data providing**

information regarding Charter's actions taken in response

to different categories of abuse.[3]

### C. <u>Order Requiring Charter to Add Additional Custodians</u>

Plaintiffs identify a number of custodians that they contend should be searched for responsive documents. Central to Plaintiffs' argument is the fact that these individuals were included in Charter's Initial Disclosures. Orders regarding each requested additional custodian are as follows:

1. <u>Jeff Erhardt</u>: While Erhardt was included in Charter's Rule 26 disclosures, he did not begin working for Charter until September

---

[3] During the Hearing, Charter stated that it did not know whether this type of information was maintained in the CATS system. (Rough Hrg Tr. May 18, 2020 67:9-15). The Special Master directed Charter to inquire as to how this type of information is maintained in the ordinary course of business. On May 27, 2020, counsel for Charter informed the Special Master that the information sought is maintained in the CATS system but is not maintained in a readily available spreadsheet or report. Charter states that "[t]he administrator of CATS estimates that creating a report that summarizes the non-copyright AUP violations by type and by total number of actions taken in response to each category of AUP violation from available CATS data for the Claims Period would take approximately one week to complete." (Def. Email to Special Master May 27, 2020). The burden of producing the requested information does not outweigh the probative value.

31

2016—after the claim period ended. **Plaintiffs' request is therefore denied as to Jeff Erhardt.**

2. <u>Adam Taylor</u>: Taylor was included in Charter's Rule 26 disclosures and was a Charter employee in part during the claim period. **Plaintiffs' request is therefore granted as to Adam Taylor.**

3. <u>Kirill Abramov and Kelly Starkweather</u>: Both Abramov and Starkweather were included in Charter's Rule 26 disclosures. Charter argues however, that both Abramov and Starkweather are in-house counsel and would not have any relevant non-privileged documents. The fact that an individual serves as in-house counsel does not, in and of itself, render their documents privileged. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-1301-PAB-GPG, 2018 WL 3055774, at *3 (D. Colo. May 23, 2018) ("In-house counsel performs a dual role of legal advisor and business advisor.... Communications by in-house counsel are privileged only where the communication's primary purpose is to gain or provide legal assistance") (internal citations and quotations omitted). The question here is not whether these witnesses have relevant information. The question is whether or not that information is privileged and, if so, the extent to which it

32

would be burdensome for Charter to search for and log all such documents. While it is significant that Charter identified these individuals in its Rule 26 disclosures, it is not dispositive. Further information is needed to determine whether requiring discovery from Abramov and Starkweather would be proportional to the needs of this case. **I therefore decline to rule on this issue at this time. Charter is ordered to run searches for these individuals to determine how many documents hit on the agreed upon search terms. The parties are then ordered to meet and confer to determine whether discovery from these custodians is necessary and, if so, whether limited search terms are appropriate.**

4. <u>Jim Obermeyer and Danyel Schönemann</u>: Both Obermeyer and Schönemann were listed as individuals having relevant information in response to Plaintiffs' Interrogatory 1. Plaintiffs specifically contend that these individuals may have discoverable information relating to "Charter's financial incentives, or the impact of subscribers' infringement activity (and Charter's failure to respond) on its bottom line." (Pl. Letter Br. May 8, 2020). Charter alleges that Obermeyer and Schönemann were

inadvertently included in its interrogatory responses. **Plaintiffs'
request is granted as to Obermeyer and Schönemann. If
Charter identifies other individuals who would be more
likely to have documents responsive to Plaintiffs' request
the parties are directed to meet and confer in good faith to
determine whether either or both Obermeyer and
Schönemann should be replaced as custodians.**

### D. Request for Order Requiring Charter to Produce Documents Sufficient to Identify Titles and Roles of Relevant Employees

Plaintiffs' Requests 7 and 10 seek documents sufficient to identify
organizational structures and the employees involved in processing and responding
to infringement notices. Charter alleges that it does not have organizational charts
responsive to these requests. Orders for the requests in dispute are as follows:

1. RFP 7: Plaintiffs seek "[o]rganizational charts or other documents
   sufficient to show [Charter's] organizational structure for persons
   responsible for addressing copyright infringement complaints,
   user terms of service, Acceptable Use Policies, privacy policies, and
   finances, including the identity and title of each job occupant." The
   request seeks straightforward, relevant information to which the
   Plaintiffs are undoubtedly entitled. **Plaintiffs' request is**

**granted. Charter shall produce documents responsive to Request 7 as served.**

2. <u>RFP 10</u>: Plaintiffs seek "[d]ocuments sufficient to identify the name, title, and role of each of Defendant's employees or agents involved any manner in receiving, assessing, addressing, responding, and/or implementing any Infringement Notice." While the information sought in this RFP is relevant, it is unclear how a request for documents would result in satisfactory information. This information is more appropriately sought through an interrogatory. **Plaintiffs' request is therefore denied.**

**E.** **<u>Request for Order Requiring Charter to Produce Documents Concerning the Financial Benefits it Received from Infringement on its Network</u>**

With regard to Requests for Production 33, 41-43, 50, 52-53, and 57, Plaintiffs seek information relating to Charter's financial incentive to tolerate infringement on its network. Orders and analysis for the requests in dispute are as follows:

1. <u>RFP 33</u>: Plaintiffs seek "[f]or the time period May 17, 2016 through the present, documents sufficient to show the actual monthly revenue [Charter] received from all Infringing Subscribers." Charter has represented that it has provided the information sought for the claim period, through May 17, 2016. Charter

contends the requested post-claim period information is not relevant, and that the burden of producing such documents outweighs its minimal probative benefit. I agree. The information already produced by Charter provides the relevant information that Plaintiffs seek. **Plaintiffs' request is therefore denied.** [4]

2. <u>RFP 50</u>: Plaintiffs seek "[d]ocuments sufficient to show the average and/or estimated cost to you of obtaining a Subscriber and the average or estimated costs associated with terminating a Subscriber's internet service." Charter argues that this information is not relevant because Plaintiffs have failed to address how subscriber attrition was a factor that influenced Charter's copyright policies. Plaintiffs argue that the information is relevant to show the financial considerations that factored into Charter's decision-making for determining its policy on copyright infringement. I agree with Plaintiffs. This information is relevant, and Plaintiffs request is narrowly tailored, such that the burden

---

[4] During the Hearing, Charter indicated that this issue was discussed during the parties December 17, 2020 hearing with Judge Hegarty. I have reviewed that transcript and have determined that Judge Hegarty did not issue a ruling or make statements that resolve this request.

of collecting and producing this information is likely to be minimal. **Plaintiffs' request is granted.**

3. <u>RFP 52</u>: Plaintiffs seek "[d]ocuments sufficient to show the average revenue and profit that you have received per Subscriber, for the life of the account, from January 1, 2012 to present." Charter claims that Plaintiffs can calculate this based on the revenue information provided for the subscribers identified in Plaintiffs' notices. Plaintiffs' request, however, is not limited to only those subscribers identified in its notices. It instead seeks the average for *all* subscribers. The information sought in RFP 52 is straightforward and sufficiently narrowly seeks only the average revenue and profit. The information already produced by Charter does not sufficiently provide Plaintiffs with the information that they seek. **Plaintiffs' request is granted.**

4. <u>RFP 53</u>: Plaintiffs seek "[d]ocuments sufficient to show the average and/or estimated total length of time that you retain Subscribers, from inception to termination of the subscription for any reason." Charter argues that this information is not relevant because the Plaintiffs have failed to address how subscriber attrition was a factor that influenced Charter's copyright policies.

37

Plaintiffs claim that this information is necessary for their financial expert's analysis of the average lifetime value of a subscriber to Charter. The information sought in RFP 53 is straightforward and sufficiently narrow that it should not be burdensome to produce. Plaintiffs have not, however, established the relevance of this information outside of the claim period. **Plaintiffs request is granted in part and denied in part. Charter shall produce documents to show the average length of time that Charter retained a customer during the claim period, to the extent that information is maintained in the ordinary course of business. Charter need not create documents or calculate this information if it is not already kept in the ordinary course of business.**

5. <u>RFP 43</u>: Plaintiffs seek "[d]ocuments discussing the impact of Subscribers' use of BitTorrent and/or peer-to-peer networks on [Charter's] current or future profits." Charter argues that this request is overbroad because BitTorrent is used for many legitimate purposes. I agree. Plaintiffs' request seeks information not only about infringing activity, but also about non-infringing, legal activity. Requiring production responsive to this request

would therefore result in the production of a large amount of information that is not reasonably calculated to lead to the discovery of admissible evidence in the matter and would not be proportional to the needs of this case. A similar request may be appropriate if Plaintiffs can narrow the scope to specifically target infringing activity. As written, however, the request is overbroad. **Plaintiffs' request is denied.**

6. <u>RFP 57</u>: Plaintiffs seek "[d]ocuments sufficient to show the extent to which compensation (including bonus structure(s)) for your employees, customer service representatives, or members of your internet security, Network Securities Operations department, or Customer Security team, was tied to retention of Subscribers." Charter argues that this request is overbroad and irrelevant given that Charter has already stated that it did not have a policy of terminating subscribers for infringement. Plaintiffs argue that this request is relevant to any alleged motive or incentive on the part of Charter employees. I agree with Plaintiffs. This request is relevant and is sufficiently narrow that it should not be burdensome to produce. If documents responsive to this request do

not exist, Charter should make such a representation to Plaintiffs. **Plaintiffs' request is granted.**

7. <u>RFP 41</u>: Plaintiffs seek "[a]ll advertising or marketing materials, marketing reports, plans, studies, and consumer research materials discussing the use or potential use of your internet services to download or obtain music, including the speeds at which music can be downloaded using your networks." Charter argues that this request is overbroad because it seeks all advertising and marketing or strategic plans mentioning use of the internet to download or stream music. Plaintiffs argue that this request is sufficiently narrowly tailored because it relates specifically to advertising or marketing documents related to the use of Charter's service for downloading music, especially including speeds at which music can be downloaded on the network. This request is relevant and appears narrowly tailored, but further information is needed to determine whether the production of this information would be unduly burdensome. **Plaintiffs' request is therefore granted subject to certain conditions. Charter is ordered to develop search terms responsive to this request and determine how many**

40

**documents hit on those terms. If it is a very large number, the parties should meet and confer further about this request. If the parties cannot reach an agreement, they should contact the Special Master to reach resolution.**

8. <u>RFP 42</u>: Plaintiffs seek "[d]ocuments concerning your growth targets, strategic plans, or internal strategies pertaining to the use or offering of higher bandwidths to Subscribers for the purpose of downloading music." Charter argues that this request is overbroad and irrelevant because it seeks all documents mentioning the use of the internet to download and stream music. Plaintiffs argue that this request is sufficiently tailored because it relates specifically to offering customers higher bandwidth for the purpose of downloading music. This request is relevant and appears narrowly tailored, but further information is needed to determine whether the production of this information would be unduly burdensome. **Plaintiffs' request is therefore granted subject to certain conditions. Charter is ordered to develop search terms responsive to this request and determine how many documents hit on those terms. If it is a very large number, the parties should meet and confer further about this**

**request. If the parties cannot reach an agreement, they should contact the Special Master to reach resolution.**

Dated this 29th day of May, 2020

BY THE SPECIAL MASTER

*/s/ Regina M. Rodriguez*
Regina M. Rodriguez
Special Master