# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

WARNER BROS. RECORDS INC., *et al.*,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant

Case No. 19-cv-00874-MSK-MEH

## PLAINTIFFS' MOTION TO DISMISS CHARTER'S COUNTERCLAIMS THREE AND FOUR

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 2

   I.   Plaintiffs' Complaint ........................................................................................... 2

   II.   Charter's Answer, Affirmative Defenses, and Counterclaims ........................................ 3

   III.   Charter's Factual Allegations ................................................................................. 4

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT ................................................................................................................. 5

   I.   Charter's counterclaim for "knowing misrepresentation" under Section 512(f) of the DMCA should be dismissed with prejudice because it incurably fails to state a claim. .... 5

      A.   Charter's Section 512(f) counterclaim must be dismissed with prejudice because Charter admits that it cannot remove or disable access to any infringing material. ..... 7

      B.   Charter's Section 512(f) misrepresentation claim fails because Charter does not and cannot plead the required mental state of "actual knowledge." ................................. 8

   II.   Charter's counterclaim under the Colorado Consumer Protection Act should be dismissed with prejudice. ............................................................................................... 11

      A.   The DMCA preempts Charter's CCPA counterclaim. ............................................ 12

      B.   Charter's CCPA counterclaim fails to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). ................................................................................. 14

         i.   Charter fails to adequately plead a deceptive trade practice under the CCPA. ..... 15

         ii.   Charter fails to allege that Plaintiffs' allegedly deceptive business practices significantly impacted the public. ................................................................... 18

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Adams v. FedEx Ground Package Sys., Inc.,*
   546 F. App'x 772 (10th Cir. 2013) ...................................................................... 19

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
   790 F. Supp. 2d 1024 (N.D. Cal. 2011) ............................................................... 7

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
   No. 10-CV-05696, 2011 WL 2690437 (N.D. Cal. July 8, 2011) .......................... 12

*Arista Records, Inc. v. Mp3Board, Inc.,*
   No. 00-CV-4660, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002)...................... 7, 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................................. 5

*Avalon Condo. Ass'n, Inc. v. Secura Ins.,*
   No. 14-cv-00200-CMA-KMT, 2014 WL 6464562 (D. Colo. Nov. 18, 2014)................. 15, 18

*Capitol Records, Inc. v. MP3tunes, LLC,*
   611 F. Supp. 2d 342 (S.D.N.Y. 2009)................................................................... 7

*Carrado v. Daimler AG,*
   No. 17-cv-3080-WJM-SKC, 2018 WL 4565562 (D. Colo. Sept. 24, 2018).......... 17

*Carter v. Amica Mut. Ins. Co.,*
   No. 17-cv-02156-RM-MEH, 2018 WL 3093320 (D. Colo. June 22, 2018)................ 16, 17

*Christenson v. Citimortgage, Inc.,*
   No. 12-CV-2600-CMA-KLM, 2016 WL 7868812 (D. Colo. June 7, 2016) ........ 14

*Cochise Consultancy, Inc. v. U.S. ex rel. Hunt,*
   139 S. Ct. 1507 (U.S. 2019) ................................................................................ 16

*Coors v. Sec. Life of Denver Ins. Co.,*
   91 P.3d 393 (Colo. App. 2003).............................................................................. 19

*Dudnikov v. MGA Entm't, Inc.,*
   410 F. Supp. 2d 1010 (D. Colo. 2005)........................................................... 8, 9, 10

*English v. Gen. Elec. Co.,*
   496 U.S. 72 (1990)................................................................................................. 12

*Hansen v. Auto-Owners Ins. Co.,*
   No. 09-cv-02736-CMA-BNB, 2010 WL 74920 (D. Colo. Mar. 4, 2010) ............ 16

*Johnson v. New Destiny Christian Ctr. Church, Inc.,*
   No. 6:17-CV-710, 2019 WL 1014245 (M.D. Fla. Mar. 4, 2019)......................... 9

*Lenz v. Universal Music Corp.,*
   No. 07-CV-03783 JF, 2008 WL 962102 (N.D. Cal. Apr. 8, 2008)....................... 13

*Menard v. CSX Transp., Inc.,*
   698 F.3d 40 (1st Cir. 2012) ................................................................................. 10

*MP3Tunes, LLC v. EMI Grp., PLC,*
 No. 07-CV-1844, 2008 WL 11508670 (S.D. Cal. Apr. 18, 2008)..........................................11

*Ningbo Mizhihe I&E Co. v. Does 1-200,*
 No. 19 Civ. 6655, 2020 WL 2086216, at *3 (S.D.N.Y. Apr. 30, 2020) ...............................11

*Online Policy Grp. v. Diebold,*
 337 F. Supp. 2d 1195 (N.D. Cal. 2004) .................................................................................14

*Ouellette v. Viacom Int'l, Inc.,*
 No. 10-CV-133, 2012 WL 1435703 (D. Mont. Apr. 25, 2012) .......................................6, 10

*Purzel Video GmbH v. St. Pierre,*
 10 F. Supp. 3d 1158 (D. Colo. 2014)........................................................................................5

*Quill Ink Books, Ltd. v. Soto,*
 No. 1:19-CV-476 (E.D. Va. Am. Order filed Aug. 15, 2019)................................................12

*Reich v. Genzyme Corp.,*
 No. 14-cv-01684-RM-MJW, 2015 WL 5842418 (D. Colo. Oct. 7, 2015) ............................16

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,*
 62 P.3d 142 (Colo. 2003) .........................................................................14, 15, 17, 18, 19

*Robbins v. Oklahoma,*
 519 F.3d 1242 (10th Cir. 2008) .............................................................................................17

*Rossi v. Motion Picture Ass'n of Am., Inc.,*
 391 F.3d 1000 (9th Cir. 2004) ......................................................................................8, 9, 10

*Stevens v. Vodka & Milk, LLC,*
 No. 1:17-CV-08603, U.S. Dist. LEXIS 43666 (S.D.N.Y. Mar. 12, 2018) ...........................13

*Travelers Indem. Co. of Ill. v. Hardwicke,*
 339 F. Supp. 2d 1127 (D. Colo. 2004) ..................................................................................16

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,*
 472 F.3d 702 (10th Cir. 2006) ...............................................................................................16

*US Airways, Inc. v. O'Donnell,*
 627 F.3d 1318 (10th Cir. 2010) .............................................................................................12

*US Welding, Inc. v. Burroughs Corp.,*
 615 F. Supp. 554 (D. Colo. 1985).........................................................................................19

**Statutes**

17 U.S.C. § 512(c).................................................................................................................12

17 U.S.C. § 512(f) ................................................................................10, 11, 12, 13, 16, 17

17 U.S.C. § 512(g)................................................................................................................16

**Rules**

Fed. R. Civ. P. 9(b)..........................................................................................................17, 18

iv

Plaintiffs hereby move to dismiss Defendant Charter Communications, Inc.'s ("Charter") Counterclaims Three and Four, and as grounds therefor state as follows:

## PRELIMINARY STATEMENT

Charter asserts two counterclaims based on speculation over Plaintiffs' unremarkable decision in January 2020 not to pursue claims on a tiny fraction of more than 11,400 works originally at issue in this mass infringement case.  Charter speculates on information and belief that Plaintiffs do not own or control exclusive rights in "at least some of these works."  Charter then leaps further to speculate, again on information and belief, that Plaintiffs did not own them years ago, but knowingly sent Charter false infringement notices about them anyway.  Based on this pyramid of conjecture, Charter alleges claims for damages under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), for sending knowingly false infringement notices, and under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-105, for deceptive trade practices.  Both claims should be dismissed with prejudice.

Charter incurably fails to plead the elements of its DMCA § 512(f) claim.  To state a claim, Charter must plead that (1) Plaintiffs sent Charter infringement notices that they *subjectively knew were false at that time*, and (2) Charter relied on those notices *in removing or disabling access* to the material alleged to be infringing.  Charter has failed sufficiently to plead either.  *First,* Charter does not even purport to allege that it removed or disabled access to any allegedly infringing material, and that omission is fatal to its claim.  In fact, Charter expressly pleads that it *cannot* remove or block such access.  *Second*, Charter has not alleged, nor can it, that Plaintiffs knew that any infringement notices were false when they were sent.  Instead, Charter alleges only that Plaintiffs "knew *or should have known*" some unidentified subset of infringement notices was materially false.  Not only does Charter plead the wrong mental state,

but Charter pleads no facts—none—in support of its conclusory allegation of Plaintiffs' state of mind.  Based on these two obvious flaws, Charter's DMCA counterclaim should be dismissed.

Charter's deceptive trade practices counterclaim under the CCPA also fails for two independent reasons.  *First*, it is well-established that the DMCA preempts state law tort claims based on alleged misrepresentations in takedown notices.  *Second*, the CCPA claim fails on its own terms under Rule 12(b)(6) and Rule 9(b)'s heightened pleading standard for such fraud-based claims.  Far from pleading the requisite who, what, where, when and how of any known misrepresentation, Charter fails to identify a single inaccurate infringement notice, a single dropped work that was the subject of any misrepresentation, any intent to mislead or deceive, or even which Plaintiffs it is suing on this claim.  Nor has Charter pled a cognizable public harm; rather, it pleads only a private one, consisting of costs and goodwill to Charter.

As explained more fully below, Charter's § 512(f) and CCPA counterclaims therefore should be dismissed with prejudice.

## BACKGROUND

### I.  Plaintiffs' Complaint

Plaintiffs filed their Initial Complaint on March 22, 2019, ECF No. 1, and an Amended Complaint on February 14, 2020, ECF No. 123 ("Amended Complaint").  In their Amended Complaint, Plaintiffs allege that Charter is contributorily and vicariously liable for infringement of Plaintiffs' copyrights from March 24, 2013 through May 17, 2016 (the "Claim Period").  Amended Complaint, ¶¶ 5, 103–20.  Charter knew its subscribers were uploading and downloading Plaintiffs' copyrighted works without authorization, yet allowed them to continue doing so unfettered.  *Id.* ¶ 88.  Charter knew of the infringement because Plaintiffs sent hundreds of thousands of infringement notices to Charter, detailing specific instances of specific

infringements by specific subscribers—but Charter did nothing to curb this rampant infringing activity occurring on its network.  *Id.* ¶¶ 2–3, 95–96.

## II. Charter's Answer, Affirmative Defenses, and Counterclaims

Though Charter never moved to dismiss Plaintiffs' contributory infringement claim, it delayed answering that count for a full year.  After the Court ordered Charter to answer that claim, Charter filed a partial answer, 21 affirmative defenses, and two counterclaims.  ECF No. 147.  In these initial counterclaims, Charter sought a declaratory judgment that Charter is not liable for contributory infringement of Plaintiffs' works at issue, and damages for Plaintiffs' alleged violation of DMCA § 512(f) for knowingly sending materially inaccurate infringement notices to Charter.  *Id.*, Countercl. ¶¶ 100–24.

On April 8, 2020, Plaintiffs filed a pre-motion letter requesting permission to move to dismiss both counterclaims, and outlined the bases for the motion.  ECF No. 156.  In response, Charter informed the Court that it would be amending its counterclaims.  ECF No. 158.  In light of Charter's contemplated amendment, the Court found a motion to dismiss premature and advised Charter to "take into consideration in any amended counterclaims the questions raised in plaintiffs' letter about the factual basis for defendant's claims of knowledge and damages."  ECF No. 161.  The Court also authorized the instant motion without the need for additional pre-motion letters.  *Id.*

On April 15, 2020, the Court denied Charter's motion to dismiss Plaintiffs' vicarious liability claim.  ECF No. 157.  On April 29, 2020, Charter then filed an Amended Answer, Affirmative Defenses, and Counterclaims.  ECF No. 165 ("Am. Countercl.").  In that amended pleading, Charter re-pleaded its initial two counterclaims with minor adjustments and added two

more—one for a declaratory judgment of no vicarious liability and one for damages under the Colorado CCPA for deceptive trade practices.

### III. Charter's Factual Allegations

For purposes of this motion to dismiss, Plaintiffs treat Charter's allegations in support of its Amended Counterclaims as if they were true.  Charter is an internet service provider ("ISP") that provides internet service to some 29 million residential and business subscribers across 41 states.  Am. Countercl. ¶¶ 1, 4.  Charter alleges that it does not store its subscribers' content on its servers, cannot control what its customers store on their own or others' computers, and cannot remove third-party material from the internet unless it is stored on Charter's own servers, which it is not.  *Id.* ¶ 1, 12.  Charter also claims that it "has no ability to remove or take down infringing content from its customers' computers."  *Id.* ¶ 13.

Plaintiffs collectively own or control a substantial majority of copyrighted musical compositions and sound recordings in the United States, including many millions of works.  *Id.* ¶ 114–15.  The Record Company Plaintiffs, through their trade association, the Recording Industry Association of America ("RIAA"), used a company called MarkMonitor to monitor and detect infringing activity and send copyright infringement notices to Charter.  *Id.* ¶ 60.  Plaintiffs sent hundreds of thousands of notices to Charter during the March 24, 2013 – May 17, 2016 Claim Period alleging infringement of their copyrighted works.  *Id.* ¶ 81.  Charter acknowledges that it received Plaintiffs' infringement notices, and claims that it incurred costs to process them and engage with its subscribers concerning Plaintiffs' notices.  *Id.* ¶¶ 113, 161–64.

In March 2019, Plaintiffs sued Charter for secondary infringement of 11,482 sound recordings and musical compositions ("Works in Suit") during the Claim Period.  On June 13, 2019, the Court entered a Scheduling Order providing for Plaintiff to amend the list of Works in

Suit by January 15, 2020.  Plaintiffs requested leave to do so on that date, and withdrew 455 of the Works in Suit (less than 4% of the original total) from this case.  *Id.* ¶¶ 64–66.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1165 (D. Colo. 2014) (quoting *Iqbal*, 556 U.S. at 679).  Thus, a claim lacks plausibility where it is based on "'allegations in the complaint that are not entitled to the assumption of truth,' that is, allegations which are legal conclusions, bare assertions, or merely conclusory." *Id.* (quoting *Iqbal*, 556 U.S. at 678–80).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint "has not shown that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

I.   **Charter's counterclaim for "knowing misrepresentation" under Section 512(f) of the DMCA should be dismissed with prejudice because it incurably fails to state a claim.**

Congress enacted the DMCA in 1998.  The basic bargain embodied in the statute was that service providers would be provided safe harbors from liability for infringing activities occurring in connection with four types of service provider activities (as codified in §§ 512(a)–(d), respectively), *provided* that, among other things, they adopted and reasonably implemented, and informed subscribers of, a policy that provides for termination of repeat infringers (codified in § 512(i)).  Section 512(c) also specified a notice-and-takedown regime—*i.e.*, a process for

receiving notices of infringement from rights owners and removing infringing material in response to such notices.  *See* 17 U.S.C. § 512(c)(3).

Section 512(f), in turn, creates a private remedy against a person or entity who abuses this notice-and-takedown process by making knowing, material misrepresentations that result in a specific type of harm.  It provides that:

> Any person who *knowingly materially misrepresents* under this section that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . *as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing*[.]

17 U.S.C. § 512(f) (emphasis added).  Thus, to state a claim under § 512(f), a party must allege that (i) the sender of a DMCA notice made a knowing and material misrepresentation of infringement, and (ii) the party asserting the claim suffered harm in removing or disabling access to the allegedly infringing material or activity identified in the notice.  While the Tenth Circuit has yet to weigh in on this particular provision, other courts have made clear that the pleading standard under § 512(f) is "high," in view of "the reality that copyright owners face an uphill battle to protect their copyrights on the internet."  *Ouellette v. Viacom Int'l, Inc.*, No. 10-CV-133, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012), *aff'd* 671 F. App'x 972 (9th Cir. 2016) ("The Ninth Circuit has interpreted § 512(f) as setting a high bar for plaintiffs.").

Against this backdrop, Charter claims that Plaintiffs violated § 512(f) because they "knew or should have known" some of their infringement notices were inaccurate, and that it suffered harm in accepting and processing inaccurate notices.  These allegations, however, fail to plead the basic elements of the counterclaim.  Charter does not and cannot plead the mental state of "actual knowledge" that the statute requires.  Moreover, Charter not only concedes that it has *not* removed or disabled access to any infringing content, but affirmatively alleges that it *cannot*

do so.  Am. Countercl. ¶¶ 1, 12-13.  In light of these inescapable admissions, Charter cannot state a claim for violation of § 512(f) and its counterclaim must be dismissed.

### A. Charter's Section 512(f) counterclaim must be dismissed with prejudice because Charter admits that it cannot remove or disable access to any infringing material.

Charter's § 512(f) counterclaim must be dismissed with prejudice because Charter does not and cannot allege that it suffered cognizable harm.  The statutory text is plain and unambiguous:  a claim will lie only where a service provider has incurred costs "*in removing or disabling access to the material or activity.*"  17 U.S.C. § 512(f).  Thus, where the claimant did *not* remove or disable access to the material, its claim fails.  *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (dismissing § 512(f) claim with prejudice because no takedown occurred); *Capitol Records, Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2009) (dismissing § 512(f) counterclaim because defendant "suffered no injury because it took no action other than filing an anticipatory lawsuit"); *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00-CV-4660, 2002 WL 1997918, at *14 (S.D.N.Y. Aug. 29, 2002) (explaining notices are only actionable under § 512(f) where plaintiff is damaged by removing or disabling access).

Here—despite Plaintiffs identifying this defect in Charter's counterclaim in their pre-motion letter to the Court (ECF No. 156)—Charter does not allege that it removed or disabled infringing content.  Instead, it alleges only that Charter "processed" or "investigated" Plaintiffs' notices and "incur[red] costs" or "reputational harm" thereby, and that "[t]he steps Charter took in response to receiving Plaintiffs' inaccurate notices *can result* in the 'removal or blocking' of the noticed material."  Am. Countercl. ¶¶ 120–23, 160.  This vague, passive-construction allusion to the theoretical possibility that removal or blocking "can result"—without alleging that

Charter, in fact, ever removed or blocked access to the infringing material that was the subject of any Plaintiff's notice—fails to plead a fundamental element of the cause of action.

Critically, moreover, this is not some sort of drafting oversight that can be cured by repleading.  To the contrary, Charter affirmatively alleges that it *cannot* remove or take down infringing content, nor restrict its users' access to it:

> Charter *does not* store its subscribers' content on its servers. . . .
>
> Charter *cannot* remove third-party material from the Internet unless that material is stored on Charter's own servers. . . .
>
> Charter *has no ability* to remove or take down infringing content from its customers' computers. . . .

Am. Countercl. ¶¶ 1, 12–13 (emphasis added).  Charter cannot have it both ways.  In seeking to avoid liability for Plaintiffs' secondary infringement claims, Charter affirmatively alleges that it lacks the capability to do *the very thing* that is an essential element of its § 512(f) claim; thus, Charter has pled itself out of court.  Accordingly, Charter's counterclaim under 17 U.S.C. § 512(f) should be dismissed with prejudice.

### B.  Charter's Section 512(f) misrepresentation claim fails because Charter does not and cannot plead the required mental state of "actual knowledge."

Charter does not plead, as it must, that Plaintiffs made a "knowing misrepresentation" under § 512(f), nor does it (or can it) plead any facts that would make such an allegation plausible.

A cause of action under § 512(f) is "expressly limited to those situations where the copyright owner's notification is a 'knowing' and 'material' misrepresentation."  *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) (dismissing § 512(f) claim on summary judgment where there was no knowing misrepresentation) (citing with approval *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (same)); *Arista*

*Records, Inc. v. Mp3Board, Inc.*, No. 00-CV-4660, 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 29, 2002) (granting summary judgment on plaintiff's § 512(f) claim in part because "there is no evidence that any misrepresentation by the RIAA was made knowingly").

To defeat a motion to dismiss, therefore, Charter must plead facts sufficient to demonstrate that Plaintiffs sent infringing notices without "subjective good faith"—that is, Plaintiffs had "some *actual knowledge* of misrepresentation on the part of the copyright owner." *Rossi*, 391 F.3d at 1004 (emphasis added); *see also Dudnikov*, 410 F. Supp. 2d at 1012 (relying on *Rossi* in absence of Tenth Circuit precedent, and stating that "the good faith standard under § 512(c) is a subjective rather than objective standard" for an action under § 512(f)).   Under this subjective standard, "[a] copyright owner cannot be liable simply because an unknowing mistake is made, *even if the copyright owner acted unreasonably* in making the mistakes." *Rossi*, 391 F.3d at 1004 (emphasis added).   "[I]t is a complete defense to a claim under § 512(f) that the party issuing a takedown notice had a subjective good faith belief that the use in question was not authorized." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:17-CV-710, 2019 WL 1014245, at *4 (M.D. Fla. Mar. 4, 2019) (quotation marks omitted).[1]

Charter fails to meet this pleading requirement, for two reasons.  *First*, its sole allegation regarding Plaintiffs' mental state—made on information and belief—is that Plaintiffs "knew or should have known" at least some of their notices were inaccurate.  Am. Countercl. ¶ 116; *see*

---

[1] *See also* U.S. Copyright Office, SECTION 512 OF TITLE 17: A REPORT OF THE REGISTER OF COPYRIGHTS at 149-50 (May 2010) (concluding that Congress intended to adopt a subjective knowledge standard under § 512(f), rather than an objective standard asking whether a rightsholder "should have known"; also explaining that "[b]ecause Congress incorporated objective standards of liability in other provisions of the DMCA, the fact that it chose not to do so in section 512(f) indicates that Congress did not want an objective standard of liability for notices and counter-notices"), available at https://www.copyright.gov/policy/section512/section-512-full-report.pdf (last visited June 8, 2020).

*also id.* ¶¶ 74, 117.  But "knew or should have known" is an objective, negligence-based standard that does not apply to § 512(f) claims.  Indeed, an "'objective reasonableness' standard would be inconsistent with Congress's apparent intent [to] . . . protect potential violators from subjectively improper actions by copyright owners."  *Dudnikov*, 410 F. Supp. 2d at 1012; *see also Ouellette*, 2012 WL 1435703, at *3 ("[w]ithout the subjective standard, copyright owners such as [plaintiff] could face limitless lawsuits just by policing its copyrighted material on the internet.").

*Second*, and in all events, Charter has not pleaded any facts that would support an allegation that Plaintiffs knowingly misrepresented that they owned or controlled certain works for which they sent notices.  As Charter notes in its counterclaims, Plaintiffs' infringement notices "assert that the information in the notice is accurate" and that they "have a good faith belief that this activity is not authorized by the copyright owner, its agent, or the law."  Am. Countercl. ¶ 69.  Charter alleges on information and belief that "Plaintiffs dropped at least some of these works" in January 2020 because they did not own or control their copyrights.  *Id.* ¶ 66.  That is pure speculation; plaintiffs often make strategic decisions concerning which claims to pursue in a case and which to withhold.  *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) (observing that "'[i]nformation and belief' does not mean pure speculation" and concluding that if the plaintiff "had any facts to support [his] assertion" made on information and belief, "they should have been set forth"); *Ouellette v. Viacom Int'l, Inc.*, No. 10-CV-133, 2012 WL 850921, at *5 (D. Mont. Mar. 13, 2012), report and recommendation adopted, No. CV 10-133-M-DWM-JCL, 2012 WL 1435703 (D. Mont. Apr. 25, 2012), aff'd, 671 F. App'x 972 (9th Cir. 2016) (dismissing § 512(f) claim for failure to plead knowing misrepresentation; explaining that "[i]nferences and implications based on conduct alone, however, are insufficient.

Allegations describing conduct that could be merely parallel to, or consistent with, conduct that would otherwise give rise to liability is not sufficient to satisfy the plausibility standard.").

Critically, however, even if Plaintiffs *had* dropped works for lack of ownership, that still would not support an inference that Plaintiffs *knew at the time* they sent the notices that they were inaccurate—which is what Charter must, but fails to, plausibly allege. *Cabell v. Zimmerman*, No. 09 Civ. 10134, 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010) (dismissing § 512(f) claim where the complaint alleges no facts plausibly supporting allegation that defendant acted "with actual knowledge *when he sent the takedown notice*") (emphasis added).  Indeed, Charter fails to identify even a single notice in which Charter alleges Plaintiffs made a knowing misrepresentation, or a single dropped work that allegedly was the subject of a false notice.  *See MP3Tunes, LLC v. EMI Grp., PLC*, No. 07-CV-1844, 2008 WL 11508670, at *8 (S.D. Cal. Apr. 18, 2008) (dismissing with prejudice § 512(f) claim for failure to plead knowing misrepresentation, where claimant had not identified or alleged a single track as "definitively lawful, non-infringing, and wrongfully included in Defendants' cease-and-desist letter"); *Ningbo Mizhihe I&E Co. v. Does 1-200*, No. 19 Civ. 6655, 2020 WL 2086216, at *3 (S.D.N.Y. Apr. 30, 2020) (dismissing § 512(f) counterclaim where defendant made no allegations as to "whether or when" plaintiff was made aware that its representations were false).

## II.    Charter's counterclaim under the Colorado Consumer Protection Act should be dismissed with prejudice.

Apparently recognizing the deficiencies in its § 512(f) claim, Charter now raises a new counterclaim alleging that Plaintiffs' act of sending infringement notices with alleged inaccuracies—*i.e.*, the same conduct underlying its § 512(f) claim—also constitutes a deceptive and fraudulent trade practice under the Colorado Consumer Protection Act ("CCPA").  This

counterclaim is preempted by the DMCA, and in any event fails to state a claim for relief on its own terms.

### A.  The DMCA preempts Charter's CCPA counterclaim.

Charter's attempt to leverage allegedly improper DMCA notices into a state law claim is preempted by the DMCA and must be dismissed.  A state law claim is preempted when it regulates conduct in a field that Congress intended federal law to occupy exclusively.  *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324–25 (10th Cir. 2010).  "Congress's intent for federal law to occupy a field exclusively 'may be inferred from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"  *Id.* at 1325 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)).

Courts in numerous jurisdictions have held that the DMCA preempts state law claims based on misrepresentations contained in DMCA infringement notices, because Congress intended for federal law to *exclusively* govern the DMCA notice process.  *See, e.g.*, *Quill Ink Books, Ltd. v. Soto*, No. 1:19-CV-476 (E.D. Va. Am. Order filed Aug. 15, 2019) (tortious interference, defamation, and statutory conspiracy claims preempted because they "are all tied directly to the allegedly fraudulent DMCA takedown notices and [the claimant's] remedies lie in that statutory scheme, not in state law"); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. 10-CV-05696, 2011 WL 2690437, at *3–5 (N.D. Cal. July 8, 2011) (holding all state law claims based on false DMCA notices preempted and explaining that "a DMCA Takedown Notification is a creature of a federal statutory regime, and . . . that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification"); *Lenz v. Universal Music*

*Corp.*, No. 07-CV-03783 JF, 2008 WL 962102 (N.D. Cal. Apr. 8, 2008) (state tort claim

preempted under same rationale).

Courts apply field preemption to the DMCA notice regime for several reasons. First, the

DMCA (and the notice-and-takedown process set forth therein) is entirely a creature of federal

law, and copyright law has been overwhelmingly controlled by Congress since the Copyright Act

of 1976. As one court explained:

> The DMCA is a complex and comprehensive statutory regime that meticulously details
> the steps that providers must take to avoid liability and that copyright holders must take
> to enforce their rights. . . . Federal law's near-total occupation of the field of copyright
> law further supports an inference that the federal interest in creating remedies to ensure
> compliance with the DMCA "is so dominant that the federal system will be assumed to
> preclude enforcement of state laws on the same subject."

*Stevens v. Vodka & Milk, LLC*, No. 1:17-CV-08603, U.S. Dist. LEXIS 43666, at *6-7 (S.D.N.Y.

Mar. 12, 2018) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *cf. Urbont*

*v. Sony Music Entm't*, 831 F.3d 80, 93 (2d Cir. 2016) ("One of the goals of the Copyright Act of

1976 was to create a national, uniform copyright law by broadly pre-empting state statutory and

common-law copyright regulation.").

Second, the DMCA itself provides express remedies for false infringement notices:

namely, a counter-notice system under § 512(g) and a private cause of action for

misrepresentation under § 512(f) (which Charter has claimed here, albeit insufficiently). *See* 17

U.S.C. §§ 512(f)–(g). The existence of these express remedies suggests that Congress intended

the DMCA to preempt states from creating additional remedies to supplement the statute.

Section 512 of the DMCA carefully balances the competing interests of copyright holders,

service providers, and the public by providing immunity subject to relief for misuse of the

statute. *See Stevens*, U.S. Dist. LEXIS 43666, at *6-7 ("The pervasive nature of the DMCA,

including an express remedy for the very wrong that counterclaimants here allege, make[s]

13

reasonable the inference that Congress left no room for the States to supplement the remedies outlined in the DMCA.").

Third, state law causes of action stemming from allegedly false infringement notices conflict with and frustrate Congress's objectives in enacting the DMCA.  For example, in *Online Policy Grp. v. Diebold*, the court dismissed the state law tort claim based on an allegedly improper takedown notice, holding that "[i]f adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable difference between state and federal law."  337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004). Charter's CCPA counterclaim should therefore be dismissed.

### B.  Charter's CCPA counterclaim fails to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Even if Charter's CCPA claim were not preempted (which it is), it should nevertheless be dismissed because it fails to state a claim under Rule 12(b)(6) and the heightened pleading standard for fraud claims under Rule 9(b).

To state a claim under the CCPA, a plaintiff must sufficiently plead each of the following elements: (1) the respondent engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the claimant's business, vocation, or occupation; (3) the practice significantly impacts the public as actual or potential consumers of the respondent's goods, services, or property; (4) the claimant suffered an injury in fact to a legally protected interest; and (5) the challenged practice caused the claimant injury.  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003).  "If one element of a CCPA claim is not met, the entire claim fails."  *Christenson v. Citimortgage, Inc.*, No. 12-CV-2600-CMA-KLM, 2016 WL 7868812, at *4 (D. Colo. June 7, 2016).  "Because the CCPA is designed to protect against consumer fraud, the first element of a CCPA claim must be pled with

particularity pursuant to Fed. R. Civ. P. 9(b)." *Avalon Condo. Ass'n, Inc. v. Secura Ins.*, No. 14-cv-00200-CMA-KMT, 2014 WL 6464562, at *2 (D. Colo. Nov. 18, 2014).

Charter's counterclaim under the CCPA should be dismissed because Charter has failed to plead sufficient facts to support its claim that (1) Plaintiffs engaged in an unfair or deceptive trade practice, and (2) such practice significantly impacts the public as actual or potential consumers of Plaintiffs' music.

### i.   Charter fails to adequately plead a deceptive trade practice under the CCPA.

Charter alleges that Plaintiffs engaged in an unfair and deceptive trade practice by sending infringement notices to Charter concerning works that Plaintiffs allegedly knew they did not own or control. *See* Am. Countercl. ¶¶ 167–68. The crux of Charter's CCPA claim is identical to its argument underlying its § 512(f) claim—namely, that misrepresentations about ownership rights in some unspecified infringement notices constitute deliberately deceptive trade acts. On this basis, Charter alleges violations of CCPA § 6-1-105(1)(e) for making knowingly false representations concerning the characteristics or affiliation of goods, food, services or property, and § 6-1-105(1)(kkk)'s catchall provision for any knowingly unfair, deceptive, false or fraudulent practice. *Id.* ¶ 177.[2]

To state a claim under § 6-1-105(1)(e), a claimant must allege that a person "knowingly makes a false representation," "with an intent to mislead and deceive the plaintiff," that "induce[s] a party to act, refrain from acting, or ha[s] the capacity or tendency to attract consumers." *Rhino Linings*, 62 P.3d at 147; *see also Travelers Indem. Co. of Ill. v. Hardwicke*,

---

[2] Charter alleges "at least" these violations, as well as a violation of § 6-1-105(3), which merely provides that the "deceptive trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state." Colo. Rev. Stat. § 6-1-105(3) (2020).

339 F. Supp. 2d 1127, 1132 (D. Colo. 2004).  CCPA allegations are subject to Rule 9(b)'s

heightened pleading requirements, under which a "plaintiff must plead 'the who, what, when,

where, and how of the alleged fraud or in other words, 'the time, place, and contents of the false

representation, the identity of the party making the false statements and the consequences

thereof.'" *Carter v. Amica Mut. Ins. Co.*, No. 17-cv-02156-RM-MEH, 2018 WL 3093320, at *8

(D. Colo. June 22, 2018) (M.J. Hegarty) (explaining heightened pleading standard for CCPA

claims) (quoting *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702,

726–27 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. U.S. ex

rel. Hunt*, 139 S. Ct. 1507 (U.S. 2019)).

Charter's allegations do not come close to meeting this standard.  *First*, Charter fails to

identify a specific representation that it claims was false.  Charter speculates "upon information

and belief" that "Plaintiffs dropped at least some of these works because" they do not own or

control the copyrights.  Am. Countercl. ¶ 66.  But Charter does not identify a single notice

among the 700,000-plus notices that Plaintiffs sent that Charter alleges was inaccurate, nor does

Charter identify a single dropped work that allegedly was the subject of a false notice.  *See, e.g.*,

*Reich v. Genzyme Corp.*, No. 14-cv-01684-RM-MJW, 2015 WL 5842418, at *6–7 (D. Colo. Oct.

7, 2015) (accepting recommendation to dismiss CCPA claim when plaintiffs failed to plead "any

specific misrepresentations" made by defendants); *Hansen v. Auto-Owners Ins. Co.*, No. 09-cv-

02736-CMA-BNB, 2010 WL 74920, at *3 (D. Colo. Mar. 4, 2010) (dismissing CCPA claim in

part because plaintiff failed to identify the allegedly misleading representations).

*Second,* Charter fails to identify who the counterclaim-defendants are or who made the

supposed misrepresentations.  At varying points in the complaint, Charter ambiguously lumps

together all 66 Plaintiffs.  *E.g.*, Am. Countercl. ¶¶ 82, 113, 160, 165.  In other places, it refers to

the undifferentiated conduct of several dozen Record Company Plaintiffs. *E.g.*, *id.* ¶¶ 71, 153–58, 169, 174.  Occasionally the counterclaim allegations refer to the Music Publisher Plaintiffs. *E.g.*, *id.* ¶¶ 63, 70, 163–64.  Count Four, setting forth the elements of the CCPA claim, talks primarily of the Record Company Plaintiffs' conduct, *id.* ¶¶ 166–78, but the prayer for relief on the same claim seeks damages from all Plaintiffs.  This group pleading is inadequate.  *See Carter*, 2018 WL 3093320, at *8 (dismissing CCPA claim because it failed to identify who concealed the defendant's allegedly deceptive business practice from the plaintiff and how that person knew of the practice at that time); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (complaint fails to give notice because "given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"); *Carrado v. Daimler AG*, No. 17-cv-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018) ("Group pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants.").

*Third*, having failed to identify either any particular false statement or who made it, Charter unsurprisingly fails to plead any facts showing that any such unspecified statement was made with "knowledge of its untruth" and "with an intent to mislead and deceive" Charter.  *See Rhino Linings*, 62 P.3d at 147.  Indeed, while Charter includes a section entitled "Plaintiffs' Rampant and Deceptive Enforcement Conduct," Am. Countercl. ¶¶ 108–13, Charter nowhere alleges even in *ipse dixit* that Plaintiffs sent any notice "with an intent to mislead and deceive." Instead, Charter simply alleges "upon information and belief" that Plaintiffs knowingly sent infringement notices on works they did not own.  This bald, conclusory allegation is plainly

inadequate.  *See, e.g.*, *Avalon Condo. Ass'n*, 2014 WL 6464562, at *2–3 (denying motion to

amend complaint to add CCPA claim where allegations regarding defendant's knowledge of

misrepresentation "upon information and belief" were "purely speculative assertion[s] regarding

Defendant's mental state").

> ### ii.   Charter fails to allege that Plaintiffs' allegedly deceptive business practices significantly impacted the public.

Charter also fails to allege that the alleged misconduct "significantly impacts the public

as actual or potential consumers of the [Plaintiffs'] goods."  *See Rhino Linings*, 62 P.3d at 147.

Colorado courts consider three factors when analyzing this element: (1) the number of

consumers directly affected; (2) the relative sophistication and bargaining power of the

consumers affected; and (3) evidence that the challenged practice has previously impacted other

consumers, or has the significant potential to impact consumers in the future.  *Id.* at 149.

As a threshold matter, Charter does not allege that any of its subscribers or anyone else in

the public was impacted *as consumers of Plaintiffs' products* (*i.e.*, music), which is required to

state a claim under the CCPA.  *See id.*  Charter's bare allegation that "The Record Company

Plaintiffs' practices also target ISPs, like Charter, whose subscribers are consumers of Plaintiffs'

goods," Am. Countercl. ¶ 112, is plainly insufficient to withstand a motion to dismiss.  Rather,

under the guise of a deceptive trade practice claim, Charter alleges a purely private harm—

namely, costs and goodwill of Charter.  Am. Countercl. ¶ 113; *see also Rhino Linings*, 62 P.3d at

149 ("[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable

under the CCPA.").

Charter also fails to allege facts regarding the first and third factors above.  First, Charter

does not allege any facts regarding the number or proportion of consumers affected by the

challenged business practice.  *See, e.g.*, *Adams v. FedEx Ground Package Sys., Inc.*, 546 F.

App'x 772, 776 (10th Cir. 2013) (affirming dismissal of CCPA claim when plaintiff failed to allege the number of consumers harmed by challenged practice); *US Welding, Inc. v. Burroughs Corp.*, 615 F. Supp. 554, 555–56 (D. Colo. 1985) (dismissing CCPA claim when plaintiff failed to allege that defendant's misrepresentations "had any affect [sic] on consumers generally"); *Rhino Linings*, 62 P.3d at 150 (finding no significant public impact, in part, because allegedly deceptive advertisements affected only three of 550 dealers worldwide and did not reach the general public); *Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 399 (Colo. App. 2003) (holding that "an impact on at most one percent of the policyholders could not constitute public impact"), *rev'd on other grounds*, 112 P.3d 59 (Colo. 2005).

*Adams v. FedEx Ground Package System, Inc.* is instructive.  In *Adams*, the plaintiff alleged that defendant FedEx induced over 3,000 consumers into signing an allegedly deceptive independent contractor operating agreement in violation of the CCPA.  546 F. App'x at 773–74, 776.  The Tenth Circuit affirmed the district court's dismissal of the CCPA claim, reasoning that although the plaintiff had identified over 3,000 consumers who had signed the allegedly deceptive agreement, the plaintiff failed to allege the proportion of those 3,000 consumers who were actually harmed by FedEx's business practices.  *See id.* at 776.  Here, as in *Adams*, Charter asserts that "the recording industry" initiated over 30,000 lawsuits against peer-to-peer users for infringement many years before the claim period and that some settled their claims, Am. Countercl. ¶ 110, but it has alleged no facts regarding the number of subscribers who were purportedly harmed in any way by allegedly inaccurate notices Plaintiffs sent to Charter (or anyone else).[3]

---

[3] An amendment to state the number of Charter subscribers allegedly harmed by Plaintiffs' allegedly inaccurate notices would be futile.  Plaintiffs included roughly 11,000 works in the

*Second*, Charter has not alleged (and could not allege) that Plaintiffs' conduct has previously impacted consumers or has the significant potential to do so in the future.  While Charter alleges baldly that "[i]n certain circumstances, the subscribers question the veracity of the notices" generally, *see* Am. Countercl. ¶ 113, Charter has not alleged that *its subscribers* suffered any harm resulting from any allegedly inaccurate notices.  Indeed, Charter does not allege that it ever suspended or terminated a single subscriber based on infringing use of its network identified in an inaccurate notice sent by Plaintiffs.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court dismiss Charter's third and fourth counterclaims under the DMCA and CCPA with prejudice.

Dated: June 15, 2020

| | |
|---|---|
| Jonathan M. Sperling | */s/ Matthew J. Oppenheim* |
| William O'Neil | Matthew J. Oppenheim |
| COVINGTON & BURLING LLP | Scott A. Zebrak |
| The New York Times Building | Jeffrey M. Gould |
| 620 Eighth Avenue | OPPENHEIM + ZEBRAK, LLP |
| New York, NY 10018-1405 | 4530 Wisconsin Ave. NW, 5th Floor |
| Telephone: (212) 841-1000 | Washington, DC 20016 |
| jsperling@cov.com | Telephone: (202) 621-9027 |
| woneill@cov.com | matt@oandzlaw.com |
| | scott@oandzlaw.com |
| | jeff@oandzlaw.com |

| | |
|---|---|
| Mitchell A. Kamin | Janette L. Ferguson, Esq. |
| Neema T. Sahni | Benjamin M. Leoni, Esq. |
| Mark Chen | LEWIS BESS WILLIAMS & WEESE, P.C. |
| Nicholas M. Lampros | 1801 California Street, Suite 3400 |
| COVINGTON & BURLING LLP | Denver, CO 80202 |
| 1999 Avenue of the Stars, Suite 3500 | Telephone: (303) 861-2828 |

---

case and Charter has identified approximately 11,000 subscribers that received Plaintiffs' notices.  Assuming a linear adjustment to determine the number of Charter subscribers who received allegedly inaccurate notices concerning the 455 dropped works, the result is approximately 455 subscribers.  That amounts to just 0.0016% of Charter's 29 million subscribers, Am. Countercl. ¶ 4—far too low to satisfy the CCPA's public harm element.

Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
mychen@cov.com
nlampros@cov.com

Megan M. O'Neill
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
moneill@cov.com

jferguson@lewisbess.com
bleoni@lewisbess.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 15, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim