UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

WARNER BROS. RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant

Case No. 19-cv-00874-RBJ-MEH

**PLAINTIFFS' AMENDED MOTION TO DISMISS CHARTER'S COUNTERCLAIMS THREE AND FOUR[1]**

In January 2020, Plaintiffs made the unremarkable decision not to pursue claims on a tiny fraction of more than 11,400 works originally at issue in this mass infringement case. Defendant Charter Communications, Inc. now asserts, based on rank speculation, that Plaintiffs do not own or control exclusive rights in "at least some of these works," and did not own them years ago, but knowingly sent Charter false infringement notices about them anyway. Relying on this conjecture, Charter alleges counterclaims for damages under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), for sending knowingly false infringement notices, and under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-105, for deceptive trade practices. Both claims should be dismissed with prejudice.

Charter incurably fails to plead the elements of its DMCA § 512(f) claim: that (1) Plaintiffs sent Charter infringement notices that they *subjectively knew were false at that time*, and (2) Charter relied on those notices *in removing or disabling access* to the material alleged to

---

[1] Plaintiffs file this Amended Motion to comply with the Court's July 6, 2020 Order (ECF 187).

1

be infringing. *First,* Charter does not even purport to allege that it removed or disabled access to any allegedly infringing material, and that omission is fatal to its claim. In fact, Charter expressly pleads that it *cannot* remove or block such access. *Second*, Charter has not alleged, nor can it, that Plaintiffs knew that any infringement notices were false when sent.

Charter's deceptive trade practices counterclaim under the CCPA also fails for two independent reasons. *First*, the DMCA preempts state law tort claims based on alleged misrepresentations in takedown notices. *Second*, the CCPA claim fails on its own terms under Rule 12(b)(6) and Rule 9(b). Far from pleading the requisite who, what, where, when and how of any known misrepresentation, Charter fails to identify a single inaccurate infringement notice, any intent to mislead or deceive, or even which Plaintiffs are the subjects of this claim. Nor has Charter pled a cognizable public harm. As explained more fully below, Charter's § 512(f) and CCPA counterclaims therefore should be dismissed with prejudice.

## BACKGROUND

### I. Plaintiffs' Complaint

Plaintiffs filed their Initial Complaint on March 22, 2019, ECF No. 1, and an Amended Complaint on February 14, 2020, ECF No. 123 ("Amended Complaint"). Plaintiffs allege that Charter is contributorily and vicariously liable for infringement of Plaintiffs' copyrights from March 24, 2013 through May 17, 2016 (the "Claim Period"). Amended Complaint, ¶¶ 5, 103–20. Charter knew its subscribers were uploading and downloading Plaintiffs' copyrighted works without authorization, yet allowed them to continue doing so unfettered. *Id.* ¶ 88. Charter knew of the infringement because Plaintiffs sent hundreds of thousands of notices to Charter, detailing specific instances of specific infringements by specific subscribers—but Charter did nothing to curb this rampant infringing activity occurring on its network. *Id.* ¶¶ 2–3, 95–96.

## II. Charter's Answer, Affirmative Defenses, and Counterclaims

In March 2020, Charter filed a partial answer to Plaintiffs' contributory infringement claim, 21 affirmative defenses, and two counterclaims. ECF No. 147. One counterclaim sought a declaratory judgment that Charter is not liable for contributory infringement of Plaintiffs' works; the other sought damages for Plaintiffs' alleged violation of § 512(f) by knowingly sending materially inaccurate infringement notices to Charter. *Id.*, Countercl. ¶¶ 100–24.

Plaintiffs filed a pre-motion letter requesting permission to move to dismiss both counterclaims. ECF No. 156. In response, Charter informed the Court that it would amend its counterclaims. ECF No. 158. The Court advised Charter to "take into consideration in any amended counterclaims the questions raised in plaintiffs' letter about the factual basis for defendant's claims of knowledge and damages." ECF No. 161. The Court also authorized the instant motion without the need for additional pre-motion letters. *Id.*

On April 15, 2020, the Court denied Charter's motion to dismiss Plaintiffs' vicarious liability claim. ECF No. 157. On April 29, 2020, Charter then filed an Amended Answer, Affirmative Defenses, and Counterclaims. ECF No. 165 ("Am. Countercl."). In that amended pleading, Charter re-pleaded its initial two counterclaims with minor adjustments and added two more—one for a declaratory judgment of no vicarious liability and one for damages under the Colorado CCPA for deceptive trade practices.

## III. Charter's Factual Allegations

For purposes of this motion to dismiss, Plaintiffs treat Charter's allegations in support of its Amended Counterclaims as if they were true. Charter is an internet service provider ("ISP") that provides internet service to some 29 million residential and business subscribers across 41 states. Am. Countercl. ¶¶ 1, 4. Charter alleges that it does not store its subscribers' content on

3

its servers, cannot control what its customers store on their own or others' computers, and cannot remove third-party material from the internet unless it is stored on Charter's own servers, which it is not. *Id.* ¶ 1, 12. Charter also claims that it "has no ability to remove or take down infringing content from its customers' computers." *Id.* ¶ 13.

Plaintiffs collectively own or control a substantial majority of copyrighted musical compositions and sound recordings in the United States, including many millions of works. *Id.* ¶ 114–15. The Record Company Plaintiffs, through their trade association, the Recording Industry Association of America ("RIAA"), used a company called MarkMonitor to monitor and detect infringing activity and send copyright infringement notices to Charter. *Id.* ¶ 60. Plaintiffs sent hundreds of thousands of such notices to Charter during the Claim Period. *Id.* ¶ 81. Charter acknowledges that it received Plaintiffs' infringement notices, and claims that it incurred costs to process them and engage with its subscribers concerning Plaintiffs' notices. *Id.* ¶¶ 113, 161–64.

In March 2019, Plaintiffs sued Charter for secondary infringement of 11,482 sound recordings and musical compositions ("Works in Suit") during the Claim Period. On June 13, 2019, the Court entered a Scheduling Order providing for Plaintiff to amend the list of Works in Suit by January 15, 2020. Plaintiffs requested leave to do so on that date, and withdrew 455 of the Works in Suit (less than 4% of the original total) from this case. *Id.* ¶¶ 64–66.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice." *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1165 (D. Colo. 2014) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I. Charter's counterclaim for "knowing misrepresentation" under Section 512(f) of the DMCA should be dismissed with prejudice.

The basic bargain embodied in the DMCA was that service providers would be provided safe harbors from liability for infringing activities occurring in connection with four types of service provider activities (as codified in §§ 512(a)–(d)), *provided* that, among other things, they adopted and reasonably implemented, and informed subscribers of, a policy that provides for termination of repeat infringers (codified in § 512(i)). Section 512(c) also specified a notice-and-takedown regime—*i.e.*, a process for receiving notices of infringement from rights owners and removing infringing material in response to such notices. *See* 17 U.S.C. § 512(c)(3).

Section 512(f) creates a private remedy against a person who abuses this process by making knowing, material misrepresentations that result in a specific type of harm:

> Any person who *knowingly materially misrepresents* under this section that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . *as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing*[.]

17 U.S.C. § 512(f) (emphasis added). Thus, to state a claim under § 512(f), a party must allege that (i) the sender of a DMCA notice made a knowing and material misrepresentation of infringement, and (ii) the party asserting the claim suffered harm in removing or disabling access to the allegedly infringing material or activity identified in the notice. Courts have made clear that the pleading standard under § 512(f) is "high," in view of "the reality that copyright owners face an uphill battle to protect their copyrights on the internet." *Ouellette v. Viacom Int'l, Inc.*, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012), *aff'd* 671 F. App'x 972 (9th Cir. 2016).

5

As detailed below, Charter does not plead the basic elements of the counterclaim. Charter does not and cannot plead the mental state of "actual knowledge" that the statute requires. And Charter not only concedes that it has *not* removed or disabled access to any infringing content, but affirmatively alleges that it *cannot* do so. Am. Countercl. ¶¶ 1, 12-13. In light of these admissions, Charter cannot state a claim for violation of § 512(f) and its counterclaim must be dismissed with prejudice.

### A. Charter admits that it cannot remove or disable access to infringing material.

Charter's § 512(f) counterclaim must be dismissed with prejudice because Charter does not and cannot allege that it suffered cognizable harm. The statutory text is unambiguous: a claim will lie only where a service provider has incurred costs "*in removing or disabling access to the material or activity.*" 17 U.S.C. § 512(f). Thus, where the claimant did *not* remove or disable access to the material, its claim fails. *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (dismissing § 512(f) claim with prejudice because no takedown occurred); *Arista Records, Inc. v. Mp3Board, Inc.*, 2002 WL 1997918, at *14 (S.D.N.Y. Aug. 29, 2002) (explaining notices are only actionable under § 512(f) where plaintiff is damaged by removing or disabling access).

Here—despite Plaintiffs identifying this defect in Charter's counterclaim in their pre-motion letter to the Court (ECF No. 156)—Charter does not allege that it removed or disabled infringing content. Instead, it alleges only that Charter "processed" or "investigated" Plaintiffs' notices and "incur[red] costs" or "reputational harm" thereby, and that "[t]he steps Charter took in response to receiving Plaintiffs' inaccurate notices *can result* in the 'removal or blocking' of the noticed material." Am. Countercl. ¶¶ 120–23, 160. This vague, passive-construction allusion to the theoretical possibility that removal or blocking "can result"—without alleging that

6

Charter, in fact, ever removed or blocked access to the infringing material that was the subject of any Plaintiff's notice—fails to plead a fundamental element of the cause of action.

Critically, moreover, this is not some sort of drafting oversight that can be cured by repleading. To the contrary, Charter affirmatively alleges that it *cannot* remove or take down infringing content, nor restrict its users' access to it: "Charter *does not* store its subscribers' content on its servers. . . ."; "Charter *cannot* remove third-party material from the Internet unless that material is stored on Charter's own servers. . . ."; "Charter *has no ability* to remove or take down infringing content from its customers' computers. . . ." Am. Countercl. ¶¶ 1, 12–13 (emphasis added). Thus, Charter has pled itself out of court by affirmatively alleging that it lacks the capability to do *the very thing* that is an essential element of its § 512(f) claim.

### B. Charter does not and cannot plead "actual knowledge" as required.

A cause of action under § 512(f) is "expressly limited to those situations where the copyright owner's notification is a 'knowing' and 'material' misrepresentation." *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) (dismissing § 512(f) claim on summary judgment where there was no knowing misrepresentation) (citing with approval *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (same)); *Arista Records, Inc. v. Mp3Board, Inc.*, 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 29, 2002) (granting summary judgment on plaintiff's § 512(f) claim in part because "there is no evidence that any misrepresentation by the RIAA was made knowingly").

To defeat a motion to dismiss, therefore, Charter must plead facts sufficient to demonstrate "some *actual knowledge* of misrepresentation on the part of the copyright owner." *Rossi*, 391 F.3d at 1004 (emphasis added); *see also Dudnikov*, 410 F. Supp. 2d at 1012 (stating that "the good faith standard under § 512(c) is a subjective rather than objective standard" for an

action under § 512(f)). Under this subjective standard, "[a] copyright owner cannot be liable simply because an unknowing mistake is made, *even if the copyright owner acted unreasonably* in making the mistakes." *Rossi*, 391 F.3d at 1004 (emphasis added); *see also Johnson v. New Destiny Christian Ctr. Church, Inc.*, 2019 WL 1014245, at *4 (M.D. Fla. Mar. 4, 2019) (subjective good faith belief party issuing a takedown notice "is a complete defense to a claim under § 512(f)") (quotation marks omitted); U.S. Copyright Office, SECTION 512 OF TITLE 17: A REPORT OF THE REGISTER OF COPYRIGHTS at 149-50 (May 2010) (concluding that Congress intended to adopt a subjective knowledge standard under § 512(f)).

Charter fails to meet this pleading requirement, for two reasons. *First*, its sole allegation regarding Plaintiffs' mental state (made on information and belief) is that Plaintiffs "knew or should have known" at least some of their notices were inaccurate. Am. Countercl. ¶ 116; *see also id.* ¶¶ 74, 117. But "knew or should have known" is an objective standard that does not apply to § 512(f) claims.

*Second*, and in all events, Charter has not pleaded any facts that would support an allegation that Plaintiffs knowingly misrepresented that they owned or controlled any works for which they sent notices. Although Charter alleges on information and belief that "Plaintiffs dropped at least some of these works" in January 2020 because they did not own or control their copyrights, *id.* ¶ 66, that is pure speculation. Copyright plaintiffs often make strategic decisions concerning which claims to pursue in a case and which to withhold, and Charter pleads no facts in support of its information-and-belief allegation beyond the fact that Plaintiffs decided not pursue claims on certain works. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) (observing that "'[i]nformation and belief' does not mean pure speculation" and concluding that if the plaintiff "had any facts to support [his] assertion" made on information and

8

belief, "they should have been set forth"); *Ouellette v. Viacom Int'l, Inc.*, 2012 WL 850921, at *5 (D. Mont. Mar. 13, 2012) (dismissing § 512(f) claim where allegations of knowledge were based solely on "conduct that could be merely parallel to, or consistent with, conduct that would otherwise give rise to liability"), *report and recommendation adopted*, 2012 WL 1435703 (D. Mont. Apr. 25, 2012), *aff'd*, 671 F. App'x 972 (9th Cir. 2016).

Critically, however, even if Plaintiffs *had* dropped works for lack of ownership, that still would not support an inference that Plaintiffs knew any notices were inaccurate *at the time they were sent*—which is what Charter must plausibly allege. *Cabell v. Zimmerman*, 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010) (dismissing § 512(f) claim where the complaint alleged no facts plausibly supporting allegation that defendant acted "with actual knowledge *when he sent the takedown notice*") (emphasis added); *Ningbo Mizhihe I&E Co. v. Does 1-200*, 2020 WL 2086216, at *3 (S.D.N.Y. Apr. 30, 2020) (dismissing § 512(f) counterclaim where defendant made no allegations as to "whether or when" plaintiff knew that its representations were false). Indeed, Charter fails to identify any specific notice in which Plaintiffs allegedly made a knowing misrepresentation, or a single dropped work that allegedly was the subject of a false notice. *See MP3Tunes, LLC v. EMI Grp., PLC*, 2008 WL 11508670, at *8 (S.D. Cal. Apr. 18, 2008) (dismissing with prejudice § 512(f) claim, where claimant had not alleged a single track as "definitively lawful, non-infringing, and wrongfully included" in cease-and-desist letter).

## II. Charter's counterclaim under the Colorado Consumer Protection Act should be dismissed with prejudice.

Charter alleges that sending allegedly-inaccurate infringement notices—*i.e.*, the same conduct underlying its § 512(f) claim—also constitutes a deceptive and fraudulent trade practice under the Colorado Consumer Protection Act ("CCPA"). This counterclaim is preempted by the DMCA, and also fails to state a claim for relief on its own terms.

9

### A. The DMCA preempts Charter's CCPA counterclaim.

As numerous courts have held, the DMCA preempts state law claims based on alleged misrepresentations in infringement notices—including the CCPA claims Charter asserts here—because Congress intended for federal law to *exclusively* govern the DMCA notice process. *See, e.g.*, *Quill Ink Books, Ltd. v. Soto*, No. 1:19-CV-476 (E.D. Va. Am. Order filed Aug. 15, 2019) (tort claims preempted because they "are all tied directly to the allegedly fraudulent DMCA takedown notices and [the claimant's] remedies lie in that statutory scheme, not in state law"); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, at *3–5 (N.D. Cal. July 8, 2011) (holding that DMCA "preempts any state law claim based on an allegedly improper DMCA Takedown Notification"); *Lenz v. Universal Music Corp.*, 2008 WL 962102 (N.D. Cal. Apr. 8, 2008) (state tort claim preempted).

Courts apply field preemption to the DMCA notice regime for several reasons. First, "Federal law's near-total occupation of the field of copyright law further supports an inference that the federal interest in creating remedies to ensure compliance with the DMCA . . . will be assumed to preclude enforcement of state laws on the same subject." *Stevens v. Vodka & Milk, LLC*, U.S. Dist. LEXIS 43666, at *6-7 (S.D.N.Y. Mar. 12, 2018) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Second, the DMCA provides express remedies for false infringement notices, including the cause of action under § 512(f) that Charter has claimed here. *See id.*, U.S. Dist. LEXIS 43666, at *6-7 ("The pervasive nature of the DMCA, including an express remedy for the very wrong that counterclaimants here allege, make[s] reasonable the inference that Congress left no room for the States to supplement the remedies outlined in the DMCA.").

10

Third, state law causes of action stemming from allegedly false infringement notices necessarily conflict with the scheme devised by Congress; "[i]f adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable difference between state and federal law." *Online Policy Grp. v. Diebold,* 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004). Charter's counterclaim should therefore be dismissed because it is preempted by federal law.

### B. Charter's CCPA counterclaim fails to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

To state a claim under the CCPA, a plaintiff must sufficiently plead that: (1) the respondent engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the claimant's business, vocation, or occupation; (3) the practice significantly impacts the public as actual or potential consumers of the respondent's goods, services, or property; (4) the claimant suffered an injury in fact to a legally protected interest; *and* (5) the challenged practice caused the claimant injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). "If one element of a CCPA claim is not met, the entire claim fails." *Christenson v. Citimortgage, Inc.*, 2016 WL 7868812, at *4 (D. Colo. June 7, 2016).

Charter's counterclaim, however, fails to plead sufficient facts to support its claim that (1) Plaintiffs engaged in an unfair or deceptive trade practice, and (2) such practice significantly impacts the public as actual or potential consumers of Plaintiffs' music.

#### i. Charter fails to adequately plead a deceptive trade practice.

Charter alleges that Plaintiffs engaged in an unfair and deceptive trade practice by sending infringement notices to Charter concerning works that Plaintiffs allegedly knew they did not own or control. *See* Am. Countercl. ¶¶ 167–68. On this basis, Charter alleges violations of

11

two parts of the CCPA: § 6-1-105(1)(e), for making knowingly false representations concerning the characteristics or affiliation of goods, food, services or property, and § 6-1-105(1)(kkk)'s catchall provision for any knowingly unfair, deceptive, false or fraudulent practice. *Id.* ¶ 177.

A claimant under § 6-1-105(1)(e) must allege that a person "knowingly makes a false representation," "with an intent to mislead and deceive the plaintiff," that "induce[s] a party to act, refrain from acting, or ha[s] the capacity or tendency to attract consumers." *Rhino Linings*, 62 P.3d at 147; *see also Travelers Indem. Co. of Ill. v. Hardwicke*, 339 F. Supp. 2d 1127, 1132 (D. Colo. 2004). CCPA allegations are subject to Rule 9(b)'s heightened pleading requirements, under which a plaintiff must plead "the who, what, when, where and how of the alleged fraud" or, in other words, "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Adams v. FedEx Ground Package Sys., Inc.*, 2013 WL 1164426, at *6 (D. Colo. Mar. 1, 2013) (internal quotation marks and citations omitted).

Charter's allegations do not come close to meeting this standard. *First*, Charter does not identify a single notice among the 700,000-plus notices that Plaintiffs sent that Charter alleges was inaccurate. *See, e.g.*, *Reich v. Genzyme Corp.*, 2015 WL 5842418, at *6–7 (D. Colo. Oct. 7, 2015) (accepting recommendation to dismiss CCPA claim when plaintiffs failed to plead "any specific misrepresentations" made by defendants); *Hansen v. Auto-Owners Ins. Co.*, 2010 WL 749820, at *3 (D. Colo. Mar. 4, 2010) (dismissing CCPA claim in part because plaintiff failed to identify the allegedly misleading representations).

*Second,* Charter fails to identify who the counterclaim-defendants are or who made the supposed misrepresentations. At varying points in the complaint, Charter ambiguously lumps together all 66 Plaintiffs. *E.g.*, Am. Countercl. ¶¶ 82, 113, 160, 165. In other places, it refers to

the undifferentiated conduct of several dozen Record Company Plaintiffs. *E.g.*, *id.* ¶¶ 71, 153–58, 169, 174. Occasionally the counterclaim allegations refer to the Music Publisher Plaintiffs. *E.g.*, *id.* ¶¶ 63, 70, 163–64. Count Four, setting forth the elements of the CCPA claim, talks primarily of the Record Company Plaintiffs' conduct, *id.* ¶¶ 166–78, but the prayer for relief on the same claim seeks damages from all Plaintiffs. This group pleading is inadequate. *See Carter*, 2018 WL 3093320, at *8 (dismissing CCPA claim because it failed to identify who concealed the defendant's allegedly deceptive business practice from the plaintiff and how that person knew of the practice at that time); *see also Carrado v. Daimler AG*, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018) ("Group pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants . . . .").

*Third*, having failed to identify either any particular false statement or who made it, Charter unsurprisingly fails to plead any facts showing that any such unspecified statement was made with "knowledge of its untruth" and "with an intent to mislead and deceive" Charter. *See Rhino Linings*, 62 P.3d at 147. Indeed, Charter nowhere alleges even in *ipse dixit* that Plaintiffs sent any notice "with an intent to mislead and deceive." Instead, Charter simply alleges "upon information and belief" that Plaintiffs knowingly sent infringement notices on works they did not own. This bald, conclusory allegation is inadequate. *See, e.g.*, *Avalon Condo. Ass'n*, 2014 WL 6464562, at *2–3 (denying motion to amend complaint to add CCPA claim based on "purely speculative assertion[s] regarding Defendant's mental state").

### ii. Charter fails to allege that Plaintiffs' allegedly deceptive business practices significantly impacted the public.

Charter also fails to allege that the alleged misconduct "significantly impacts the public as actual or potential consumers of the [Plaintiffs'] goods." *See Rhino Linings*, 62 P.3d at 147. Colorado courts consider three factors when analyzing this element: (1) the number of

consumers directly affected; (2) the relative sophistication and bargaining power of the consumers affected; and (3) evidence that the challenged practice has previously impacted other consumers, or has the significant potential to impact consumers in the future. *Id.* at 149.

As a threshold matter, Charter does not allege that any of its subscribers or anyone else in the public was impacted *as consumers of Plaintiffs' products* (*i.e.*, music). *See id.* Rather, under the guise of a deceptive trade practice claim, Charter alleges a purely private harm—namely, costs and goodwill of Charter. Am. Countercl. ¶ 113. "[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Rhino Linings*, 62 P.3d at 149.

Charter also fails to allege facts regarding the first and third factors. First, Charter does not allege any facts regarding the number or proportion of consumers affected by the challenged business practice. *See, e.g.*, *Adams v. FedEx Ground Package Sys., Inc.*, 546 F. App'x 772, 776 (10th Cir. 2013) (affirming dismissal of CCPA claim when plaintiff failed to allege the number of consumers harmed by challenged practice); *Rhino Linings*, 62 P.3d at 150 (finding no significant public impact, in part, because allegedly deceptive advertisements affected only three of 550 dealers worldwide and did not reach the general public); *Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 399 (Colo. App. 2003) ( "an impact on at most one percent of the policyholders could not constitute public impact"), *rev'd on other grounds*, 112 P.3d 59 (Colo. 2005).

*Second*, Charter has not alleged (and could not allege) that Plaintiffs' conduct has previously impacted consumers or has the significant potential to do so in the future. While Charter alleges baldly that "[i]n certain circumstances, the subscribers question the veracity of the notices" generally, *see* Am. Countercl. ¶ 113, Charter has not alleged that *its subscribers* suffered any harm resulting from any allegedly inaccurate notices. Indeed, Charter does not

allege that it ever suspended or terminated a single subscriber based on infringing use of its network identified in an inaccurate notice sent by Plaintiffs.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court dismiss Charter's third and fourth counterclaims under the DMCA and CCPA with prejudice.

Dated: July 6, 2020

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@lewisbess.com
bleoni@lewisbess.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 6, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim

15