IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

        Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

        Defendant.

## SPECIAL MASTER'S ORDER

**Entered by Regina M. Rodriguez, Special Master, on July 6, 2020,**

On June 16, 2020, Plaintiffs filed a letter brief requesting reconsideration or revision of my May 29, 2020 Discovery Order ("May 29 Order"), ECF 181, in light of a recent post-trial ruling in *Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-CV-950-LO-JFA (E.D. Va.) ("Sony"), ECF No. 707 (the "Sony Post-Trial Order"). Plaintiffs specifically request reconsideration of that Order with regard to Plaintiffs' RFP 43 and Charter's Music Publisher Plaintiff ("MPP") Interrogatories 13 and 14. For the foregoing reasons, Plaintiffs' request for reconsideration is **DENIED**.

Plaintiffs also submitted a separate request for "clarification" of my May 29 Order relating to Charter's MPP Interrogatory 15 and Record Company Plaintiff ("RCP") Interrogatory 14.

1

That request is considered herein. To the extent that request seeks revision of my May 29 Order, that request is **DENIED**.

## I. BACKGROUND

This action arises out of the alleged secondary infringement by the Defendant of the Plaintiffs' copyrighted musical compositions and sound recordings. Plaintiffs allege that Defendant infringed their copyrighted works by contributing to its subscribers' infringement and by profiting from the subscribers' direct infringement while declining to exercise a right to stop or limit the alleged infringement. Judge Hegarty has provided a detailed account of the factual allegations in this case in his October 21, 2019 Recommendation, ECF 71. The procedural history and applicable facts will therefore not be repeated here.

The issues considered herein relate to the May 29, 2020 Special Master's Order Resolving Discovery Disputes. On June 2, 2020, Plaintiffs submitted a request for clarification of that Order. Charter responded on June 8, 2020. On June 16, 2020, Plaintiffs submitted a request for reconsideration of the May 29 Order. Charter responded on June 23, 2020. The issues have been fully briefed and are ripe for determination.

## II. APPLICABLE LAW

A motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Sterling Const. Mgmt., LLC*

*v. Steadfast Ins. Co.*, 280 F.R.D. 576, 578 (D. Colo. 2011). Grounds warranting a motion to reconsider include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d at 1012*; see also Laratta v. McCormac*, No. 09-CV-01832-REB-MEH, 2010 WL 3341284, at *1 (D. Colo. Jan. 25, 2010), report and recommendation adopted, No. 09-CV-01832-REB-MEH, 2010 WL 3341287 (D. Colo. Aug. 24, 2010).

### III. ANALYSIS

#### A. Plaintiffs' Request for Production 43

Plaintiffs' RFP 43 seeks "Documents discussing the impact of Subscribers' use of BitTorrent and/or peer-to-peer networks on [Charter's] current or future profits." Charter objected to this request, arguing that it is overbroad because BitTorrent is used for legitimate purposes. In my May 29 Order, I denied Plaintiffs' motion to compel a response, finding that:

> "Plaintiffs' request seeks information not only about infringing activity, but also about non-infringing, legal activity. Requiring production responsive to this request would therefore result in the production of a large amount of information that is not reasonably calculated to lead to the discovery of admissible evidence in the matter and would not be proportional to the needs of this case. A similar request may be appropriate if Plaintiffs can narrow the scope to specifically target infringing activity. As written, however, the request is overbroad." May 29 Order at 38-39.

Plaintiffs now seek reconsideration of that Order, arguing that "over 99% of content on BitTorrent is infringing, and the Discovery Order's contrary factual finding is

3

unsupported." Pl. Letter Br. June 16, 2020 at 1. However, Plaintiffs advanced this same argument when I considered their motion to compel. *See* Pl. Letter Br. May 8, 2020 at 5 (Describing BitTorrent as "a protocol used overwhelmingly for piracy"); Hrg. Tr. May 18, 2020 165:3-6 ("[T]he overwhelming majority of activity on bit torrent and peer-to-peer [] networks at issue in this case are infringing, overwhelmingly, 99 percent"). Plaintiffs' request is therefore not premised on an intervening change in the controlling law, nor is it premised on new evidence previously unavailable.

Nor have Plaintiffs established that reconsideration is necessary to correct clear error or prevent manifest injustice. Both parties agree that there are legitimate uses for BitTorrent, but they offer differing theories and support regarding how much it is actually used for legitimate purposes. Plaintiffs point to articles to support their contention that "over 99%" of peer-to-peer content is pirated. However, I do not find Plaintiffs' proposed support to be as clear as Plaintiffs represent. As Charter points out, Plaintiffs' Exhibit 1 suggests that only 69.7% of the content on BitTorrent was found to be infringing. Def. Letter Br. June 23, 2020, citing Plaintiffs' Ex. 1 at 85, Table 8.1.2. Thus, the evidence before me does not establish that 99% of peer-to-peer content is pirated.

Plaintiffs argue that a finding that BitTorrent is used for many legitimate purposes is contrary to the substantial evidence produced in the *Sony* case. Pl. Letter Br. June 16, 2020 at 1. However, the factual support in *Sony* is not what is before me. Only the facts and arguments presented in this case are before me. Indeed, Plaintiffs'

4

quotation from the *Sony* case specifically references the evidence that Plaintiffs produced in that case: "Defendants heard – and failed to disprove – evidence from [Plaintiffs' expert] that over 99% of P2P content is pirated." *Id*. Plaintiffs urge the findings in *Sony* should be accepted here, but this case must be decided on the evidence produced in this case.

The percentage of pirated content on peer-to-peer networks is not before me and need not be resolved here. My Order simply stated that, based upon the arguments and evidence before me, production of documents related to non-infringing activity on peer-to-peer networks was not reasonably calculated to lead to the discovery of admissible evidence and would not be proportional to the needs of the case. The Plaintiffs here ask that I accept the inference that if BitTorrent was used, it was used for an infringing purpose. The studies and arguments presented by Plaintiffs in this case do not establish this fact, nor do they establish clear error or the need to prevent manifest injustice. The parties will very likely present evidence at trial, including expert testimony as was presented in the *Sony* case, regarding the percentage of pirated content on BitTorrent and the determination of the extent to which BitTorrent use on Defendant's platform was infringing. That decision will be for the jury to decide as it was in the *Sony* case. My Order is limited to instructing Plaintiffs to narrow the scope of their request to specifically target *infringing* activity.

For these reasons, Plaintiffs' request for reconsideration is **DENIED.**

B. <u>**Charter's MPP Interrogatories 13 and 14**</u>

With MPP Interrogatories 13 and 14, Charter requests that the Music Publisher Plaintiffs identify which of their musical compositions-in-suit were recorded within which of the sound recordings in suit. In a copyright infringement case where plaintiffs assert both a music composition and a corresponding sound recording, the plaintiffs are entitled to only a single award of statutory damages for the overlapping work. *See* 17 U.S.C. 504(c); *see also Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003) ("Although parts of a compilation or derivative work may be 'regarded as independent works for other purposes,' for purposes of statutory damages, they constitute one work."); *see also* Sony Post-Trial Order at 40.

Plaintiffs here have asserted claims regarding 11,027 separate works—6,963 sound recordings and 4,064 music compositions. Def. Letter Br. June 23, 2020 at 4. Charter argues that as many as 3,000 sound recordings may be derivative of music compositions, "reducing Charter's potential exposure by hundreds of millions of dollars." *Id.* Charter therefore served interrogatories on the Music Publisher Plaintiffs, asking these Plaintiffs to identify which of their musical compositions in suit were recorded within which of the sound recordings in suit. Given the established case law on this issue, the information sought is clearly relevant.

Plaintiffs do not now challenge the legal relevance of the information, they instead argue that the burden of identifying the overlap between sound recordings and musical compositions should rest on Charter, not on the Plaintiffs. Plaintiffs do

6

not, however, offer any legal authority in support of such a request. Instead, Plaintiffs argue that because the *Sony* court ordered the defendant to identify the overlapping works in response to post-trial motions in that case, the same should be true here. Plaintiffs' reliance on the Sony Post-Trial Order is misplaced.

The circumstances and posture of this case differ from that before the court in *Sony*. As Plaintiffs point out in their brief, "The *Sony* plaintiffs were never asked or ordered to produce information on the relationship between sound recordings and musical compositions." Pl. Letter Br. June 16, 2020 at 3. Instead, the court ordered the *Sony* defendants to identify the overlapping works in suit pursuant to its consideration of the defendant's own post-trial motion. Indeed, the Plaintiffs in *Sony* argued that the defendant's Rule 50 motion should be denied because the defendant had not presented evidence to the jury on the issue of the number of works for purposes of statutory damages. Sony Post-Trial Order at 49.

Thus, the Sony Post Trial Order supports, rather than contradicts, my May 29 Order. Charter here seeks to gather the evidence that the plaintiffs in *Sony* accused the defendant there of failing to present. Here, Charter has specifically requested the information, the information is clearly and undisputedly relevant, and I have ordered it should be produced.

Each side agrees the overlapping works should be identified but disagrees which party is in the better position to do that work. Charter argues that it does not have all of the information that it would need to conduct such an analysis. *See* May

29 Order at 22-23. For example, Charter presented evidence suggesting that some asserted music compositions share the same title. Charter argued that, for example, "it is not possible [for Charter] to determine which of the five separate music compositions titled 'Everything' corresponds to which of the four sound recordings bearing the same name." *Id.* at 23. Plaintiffs do not offer any facts or arguments suggesting that this finding is contradicted by new evidence or that reconsideration of this finding is necessary to prevent manifest injustice.

Plaintiffs request for reconsideration is **DENIED.**

Plaintiffs alternatively request that I "revise" my May 29 Order to set a deadline requiring Plaintiffs to provide the requested information for a date after entry of final judgment in *Sony*. The court in *Sony* ordered the defendant in that case to "prepare a list of overlapping works in suit" by August 3, 2020 and ordered the plaintiffs in that case to propose their own number of works in suit in sixty days. Sony Post-Trial Order at 52; Pl. Letter Br. June 16, 2020 at 3.

Plaintiffs argue that such revision is necessary "to avoid the risk that discovery Plaintiffs provide in *Charter* will influence or be incorporated into Winston & Strawn's submission in *Cox*." Pl. Letter Br. June 16, 2020 at 4.

However, as Plaintiffs point out, "Cox must make its submission based on the evidentiary record *in that case*." *Id.* at 3. The record in *Sony* is closed, and the defendant therein will need to support its arguments with regard to the works in suit with evidence from that record. While Plaintiffs argue that delay in production here

8

will protect from "improper cross-pollination between the cases," it has not provided evidence or argument sufficient to establish how information produced to the defendants here might invade the already-closed record in *Cox*. *Id.* at 3.

Plaintiffs request is therefore **DENIED. Plaintiffs shall provide the requested information as soon as it is available and no later than July 27, 2020.**

### C.     Charter's MPP Interrogatory 15 and RCP Interrogatory 14

Charter also propounded discovery requests to the Plaintiffs seeking the identification of each notice that corresponds to each of Plaintiffs' works in suit. In my May 29 Order, I ordered Plaintiffs to produce the requested information. On June 2, 2020, Plaintiffs submitted a letter brief requesting clarification of that order.

Specifically, Plaintiffs ask whether the Order was intended to require Plaintiffs to identify *each* of the notices that corresponds to *each* of the works in suit. Pl. Letter Br. June 2, 2020 at 1. Plaintiffs explain that to accomplish this they would need to first connect hashes to sound recordings, then identify musical compositions contained with sound recordings. Plaintiffs have indicated that they will do this. Plaintiffs state that they will then "need to connect each sound recording and each musical composition to each of the approximately 700,000 notices." *Id.* Plaintiffs argue that this exercise "is not one that the individual Plaintiffs would ever do in that manner." *Id.* at 1-2. Plaintiffs argue that they would need to correlate multiple data sets to identify the requested information, and they argue that this will require an

9

expert. Plaintiffs therefore characterize my May 29 Order as "require[ing] Plaintiffs to conduct and produce expert analysis nine months before the Scheduling Order would otherwise require." *Id.* at 2.

To the extent that Plaintiffs seek reconsideration of the May 29 Order, I will reiterate that Plaintiffs have been ordered to identify *each* of the notices that corresponds to *each* of the works in suit. To the extent that Plaintiffs are asking that I reconsider that order in light of the volume of information at issue, I decline to do so.

Contrary to Plaintiffs' assertion, the information sought by MPP interrogatory 15 and RCP interrogatory 14 is basic factual information that will need to be set forth in order for Plaintiffs to establish liability. Plaintiffs seek to hold Charter secondarily liable for infringement based on Charter's purported knowledge of its subscribers' alleged infringement. Plaintiffs allege that Charter possessed the requisite knowledge of infringement of each work in suit by virtue of the infringement notices sent to Charter by the Record Label Plaintiffs. However, Plaintiffs now argue that determining which work is identified in a particular notice would require expert analysis. I find these arguments to be in conflict.

In supplemental briefing ordered on this issue prior to my May 29 Order, Plaintiffs performed the analysis necessary to link a notice to the related works in suit. Pl. Letter Br. May 20, 2020. They then argued that Charter had the information needed to perform that same analysis, "just as we have performed it here for Exhibit

10

1." *Id.* Plaintiffs do not suggest that they needed to engage an expert to conduct the analysis that they provided. Nor do the steps set forth in their briefing suggest that particular expertise is necessary. Instead, Plaintiffs have merely shown that the process of connecting a notice to a work in suit has multiple steps. Given the number of works in suit and notices sent, that process will undoubtedly take time to complete. However, the mere fact that responding to discovery will be time consuming does not render the discovery improper. And, while Plaintiffs are permitted to produce business records in lieu of responding to an interrogatory pursuant to Fed. R. Civ. P 33(d), such a production is only appropriate if the burden of deriving or ascertaining the answer will be substantially the same for either party. As I set forth in my May 29 Order, Charter has demonstrated that the Plaintiffs' burden of producing the requested information is less than Charter's. I therefore decline to make any revisions to my May 29 Order.

## IV.   PROCEDURE FOR FILING OBJECTIONS

Pursuant to the Court's Order Appointing Special Master, ECF 143, a party may file objections to the Special Master's order no later than five (5) business days from the time that the order is served. I explained to the parties that the time for objecting to my May 29 Order would not begin to run until I considered Plaintiffs' June 2, 2020 request for clarification and later requests for reconsideration of that Order. Because there are no further issues pending with regard to the May 29 Order,

and because I decline to make any changes to that Order, the parties shall file objections to the May 29 Order within five business days of the issuance of this Order.

Dated this 6th day of July, 2020 BY THIS SPECIAL MASTER

*/s/ Regina M. Rodriguez*
Regina M. Rodriguez
Special Master