# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC., et al.,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.**

      Defendant.

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT
CHARTER COMMUNICATIONS, INC.**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs serve this Second Set of Requests for Production of Documents and Things to Defendant Charter Communications, Inc. Plaintiffs request that Defendant respond in accordance with the Federal Rules of Civil Procedure, and produce the documents hereinafter described at the offices of Covington & Burling, LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, or at such other time and place as the parties may agree upon, within thirty (30) days of the date of service.

**DEFINITIONS**

Unless otherwise indicated, the following definitions apply to these requests:

1.    The term "Plaintiffs" refers collectively to Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc.,

Warner Chappell Music, Inc., Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp., W.C.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Chappell & Co. Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GmbH, PolyGram Publishing, Inc., and Songs of Universal, Inc.

2. The terms "you," "your," "Charter," or "Defendant" refer to Charter Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on behalf of the defendant.

3. The term "MarkMonitor" refers to MarkMonitor Inc., its parents, subsidiaries,

2

affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf. The term MarkMonitor also specifically includes DtecNet Inc. and Clarivate Analytics.

4. The term "Subscriber" refers to any account holder or subscriber of your internet services.

5. The term "User" refers to any person that uses your internet services, either presently or in the past.

6. The term "DMCA" refers to the Digital Millennium Copyright Act.

7. The term "Infringement Notice" refers to a notice that one or more of Charter's Subscribers or Users allegedly infringed a copyright. This includes notices sent on behalf of any copyright owner, regardless of whether or not Charter processed or retained the notice. This term includes but is not limited to a notification of claimed copyright infringement pursuant to the DMCA, 17 U.S.C. § 512.

8. The term "Customer Facing Action" shall mean any action that you directed to a Subscriber as a result of having received an Infringement Notice, including: forwarding a copy of the Infringement Notice to the Subscriber; sending the Subscriber a warning in response to receiving an Infringement Notice; suspending, slowing (i.e., "throttling") or otherwise adversely affecting the Subscriber's internet access; or disconnecting or terminating the Subscriber's internet service.

9. The term "Infringing Subscriber" refers to any Subscriber identified in any Infringement Notice sent to You by Plaintiffs, or on Plaintiffs' behalf, between March 24, 2013 and May 17, 2016.

3

10. The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Subscribers or Users relating to, the DMCA.

11. The term "Repeat Infringer Policy" refers to any policy that seeks to address copyright infringement or alleged copyright infringement by a Subscriber or User, whether or not contemplated by and/or set forth in 17 U.S.C. § 512(i).

12. The term "Acceptable Use Policy" refers to any policy concerning obligations, rules, or limitations of Subscribers' or Users' use of internet services offered by Charter.

13. The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server, including but not limited to protocols such as BitTorrent, ARES, eDonkey, and Gnutella, for the purpose of distributing data and electronic files over the internet.

14. The terms "person" or "persons" are defined as any natural person or business, legal or governmental entity or association.  Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions.  Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

15. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A non-identical copy is a separate document within the meaning of this term.  "Document" specifically includes electronically stored information as defined in Rule 34(a).

16. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place

4

under any circumstances. The definition includes any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal. For the avoidance of doubt, this term shall include letters, emails, call logs, voicemails, and text messages.

17. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

18. "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

19. The term "CATS" means the Charter Abuse Tracking System, including without limitation any programs, procedures, software, or policies related thereto.

20. The term "Cox" means Cox Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act, to your knowledge, on behalf of such entities or individuals.

21. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

22. The use of the singular form of any word shall include the plural and vice versa.

## INSTRUCTIONS

1. These requests shall be deemed to be continuing to the extent permitted by Rule

5

26(e) of the Federal Rules of Civil Procedure.

2. Defendant is to produce documents comprising electronically stored information pursuant to the agreed-upon protocol governing the production of electronically stored information and paper documents.

3. Defendant is to produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices as they are kept in the usual course of business or, alternatively, organized and labeled to correspond to the category of documents requested.

4. In response to each request, Defendant shall affirm whether responsive documents exist and have been, or shall be, produced.

5. If Defendant deems any information, document, or communication requested by any of the following requests to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe: (a) the information, document, or communication you claim to be so protected by author, subject matter, date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any individual to whom the information, document, or communication was distributed, shown, or explained; (c) the information, document, or communication's current custodian; and (d) all bases, factual and legal, upon which such protection allegedly rests.  If you contend that only a portion of the information contained in a document is privileged, provide the portion that you do not contend is privileged.

6. In the event that more than one copy of a document exists, Defendant shall produce the original and each non-identical copy of each document or other tangible thing requested herein, which is in Defendant's possession, custody, or control, or that of persons or entities under the

control of Defendant.

7. Each discovery request shall be fully responded to unless it is objected to in good faith. An objection must state with specificity the grounds for the objection and whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request (or a word, phrase, or clause contained in the request) must specify the part objected to and Defendant shall produce or permit inspection of the rest.

8. Unless otherwise specified, the relevant time frame for these Requests is January 1, 2012 through May 17, 2016.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 25**   Any sworn statements by any employee, agent, or other representative of Charter, discussing or concerning copyright infringement on Charter's network, or Charter's policies and/or practices regarding copyright infringement on Charter's network.

**REQUEST NO. 26**   All documents relating to CATS, including documents describing the technical abilities of the CATS system to track abuses of any copyright infringement-related policy by its users, or otherwise track or process notices of infringement, the source code implementing CATS, all versions of the CATS Abuse Automation System Implementation Plan, all communications between You and Cox regarding CATS, and documents reflecting your actual use of the CATS system to track abuses of any copyright infringement-related policy by your users.

**REQUEST NO. 27**   All communications between you, on the one hand, and any Subscribers or Users, on the other, discussing your DMCA Policy or other policy regarding copyright infringement.

**REQUEST NO. 28**   Internal communications discussing or concerning any policies regarding copyright infringement or peer-to-peer software use or traffic, including your DMCA Policy.

**REQUEST NO. 29**   All communications as between you, on the one hand, and any Subscribers or Users, on the other, discussing or considering any Infringement Notice, any notice of alleged copyright infringement or violation of any DMCA policy or other policy regarding copyright infringement, or any "ticket" generated in response to any Infringement Notice.

**REQUEST NO. 30**   All of your internal communications discussing any Infringement Notice, any instance of alleged copyright infringement, or any "ticket" generated in response to any Infringement Notice, including internal communications concerning the actual or potential termination of any Infringing Subscriber's account with Charter.

**REQUEST NO. 31**   All internal communications discussing or considering whether to terminate or suspend Subscribers' subscriptions for copyright infringement or alleged copyright infringement, or for violation of your policies regarding copyright infringement.

**REQUEST NO. 32**   Documents concerning any Infringement Notices that you received but rejected (and/or did not process or retain), including but not limited to Infringement Notices from MarkMonitor.

**REQUEST NO. 33**   For the time period May 17, 2016 through the present, documents sufficient to show the actual monthly revenue you received from all Infringing Subscribers.

**REQUEST NO. 34**   Documents reflecting or describing how and when Defendants communicated any Infringement Notice to third parties, including Subscribers or Users, including both (i) Defendants' policies for forwarding to or otherwise informing Subscribers or Users of

copyright infringement allegations, and (ii) any notices or communications to Subscribers or Users.

**REQUEST NO. 35**   Communications with the Recording Industry Association of America, the National Music Publishers' Association, and/or the Motion Picture Association of America, or any of their agents or vendors, discussing or concerning copyright infringement.

**REQUEST NO. 36**   Press releases or other public statements you made discussing your policies for responding to notices of copyright infringement, including Infringement Notices.

**REQUEST NO. 37**   Documents concerning all policies, practices, or capabilities that you considered, formulated, rejected, or adopted for taking adverse action (including suspending or terminating internet service) against Subscribers or Users for alleged copyright infringement.

**REQUEST NO. 38**   Documents reflecting Your Subscribers' or Users' awareness or non-awareness of Your DMCA Policies, Acceptable Use Policies, or other copyright infringement policies.

**REQUEST NO. 39**   Internal communications discussing your actual or potential Subscribers' or Users' satisfaction or dissatisfaction with your responses to Infringement Notices. For the avoidance of doubt, this request includes communications discussing whether, if you terminated internet service for one subscriber in response to an Infringement Notice, you would lose or be unable to attract additional subscribers.

**REQUEST NO. 40**   DHCP logs sufficient to link Subscribers to the IP addresses identified in each Infringement Notice you received from January 1, 2010 through May 17, 2016.

**REQUEST NO. 41**   All advertising or marketing materials, marketing reports, plans, studies, and consumer research materials discussing the use or potential use of your internet

9

services to download or obtain music, including the speeds at which music can be downloaded using your networks.

**REQUEST NO. 42**   Documents concerning your growth targets, strategic plans, or internal strategies pertaining to the use or offering of higher bandwidths to Subscribers for the purpose of downloading music.

**REQUEST NO. 43**   Documents discussing the impact of Subscribers' use of BitTorrent and/or peer-to-peer networks on your current or future profits.

**REQUEST NO. 44**   Documents discussing or concerning your employees' use of your internet services to copy, distribute or publicly perform copyrighted works without permission of the copyright owner.

**REQUEST NO. 45**   Documents concerning all suspensions or terminations of your internet services to any Subscriber or User relating to actual or alleged copyright infringement or violation of any copyright infringement-related provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, graduated response policy, or any other policy related to copyright infringement, including communications discussing the re-activation of the accounts of any Subscribers whose accounts were terminated for violation of any policy relating to copyright infringement.

**REQUEST NO. 46**   Documents sufficient to show your policies and practices for monitoring, reviewing, or inspecting your internet services for uses that violate your Acceptable Use Policy.

**REQUEST NO. 47**   Documents sufficient to show all terms of use and terms of service provided to Subscribers.

**REQUEST NO. 48**   Documents concerning any changes to your terms of use or terms of service relating to copyright infringement or allegations of copyright infringement, including internal communications discussing such changes.

**REQUEST NO. 49**   Documents sufficient to show, on a monthly basis, the number of Subscribers who subscribed to your television and/or telephone service.

**REQUEST NO. 50**   Documents sufficient to show the average and/or estimated cost to you of obtaining a Subscriber and the average or estimated costs associated with terminating a Subscriber's internet service.

**REQUEST NO. 51**   Documents sufficient to show the revenue and profit that you receive from Subscribers for each level or tier of internet service that you offer, by year and month from January 1, 2012 to present.

**REQUEST NO. 52**   Documents sufficient to show the average revenue and profit that you have received per Subscriber, for the life of the account, from January 1, 2012 to present.

**REQUEST NO. 53**   Documents sufficient to show the average and/or estimated total length of time that you retain Subscribers, from inception to termination of the subscription for any reason.

**REQUEST NO. 54**   Documents sufficient to show the prices at which you offered each tier of internet speed to Subscribers from January 1, 2010 to May 17, 2016.

**REQUEST NO. 55**   Documents sufficient to show the discount rate or weighted average cost of capital that you use in forecasting future financial performance.

**REQUEST NO. 56**   All records or logs of calls, scripts created for use on calls, or documents discussing calls or reflecting the content of any calls, between your employees, customer service representatives, or members of your internet security team, Network Securities

11

Operations department, or Customer Security team, on one hand, and any Subscriber or User identified in Infringement Notices or otherwise identified in connection with actual or alleged copyright infringement, on the other, related to alleged copyright infringement, any Infringement Notice, or any "ticket" generated by an Infringement Notice, including all "work log" or other notes entered in CATS as referenced on CHA_00000006.

**REQUEST NO. 57**   Documents sufficient to show the extent to which compensation (including bonus structure(s)) for your employees, customer service representatives, or members of your internet security, Network Securities Operations department, or Customer Security team, was tied to retention of Subscribers.

**REQUEST NO. 58**   Documents sufficient to describe Charter's efforts to educate or inform Subscribers or Users identified in any Infringement Notice Charter received regarding copyright and copyright infringement and Charter's related policies, including materials you provided to Subscribers after their service was suspended or terminated for actual or alleged copyright infringement, internal guidelines concerning such materials, and drafts thereof.

**REQUEST NO. 59**   Documents sufficient to show your policies and procedures for attempting to educate or inform Subscribers regarding copyright and copyright infringement, including any Charter policies concerning copyright infringement.

**REQUEST NO. 60**   Documents sufficient to show Charter's efforts to curtail its Subscribers' violations of Charter's Acceptable Use Policies other than its policies regarding copyright infringement (including any policies against hacking or spamming).

**REQUEST NO. 61**   All documents or communications distinguishing, differentiating, or otherwise comparing Charter's responses to violations of its Acceptable Use Policies for reasons

12

other than copyright infringement (including for hacking or spamming) to its responses to violations of those policies on the basis of copyright infringement.

**REQUEST NO. 62**   Documents sufficient to show all scripts you created for use by your employees in interactions with Subscribers that violated or are alleged to have violated Charter's Acceptable Use Policies for reasons other than copyright infringement.

**REQUEST NO. 63**   Documents sufficient to show all scripts created for use, considered for use, and/or used by your employees' in interactions with Subscribers who fail to pay their subscription fees.

**REQUEST NO. 64**   All documents that you may use as exhibits or demonstratives in the trial or any hearing in this lawsuit.

**REQUEST NO. 65**   All documents supporting, refuting, or otherwise concerning any affirmative defense or other defense you assert or intend to assert in this case.

**REQUEST NO. 66**   All documents concerning any subpoena you issue in this lawsuit, including all communications with the third party concerning the subpoena and all documents you receive in response to any subpoena.

**REQUEST NO. 67**   Documents sufficient to show the meaning of each action, code, field, or definition used in the "ticket log" data produced or to be produced by you in this action.

**REQUEST NO. 68**   Records of all information pertaining to Infringing Subscribers maintained in the "DMCA Postcard/Website" described in the document you produced in this case beginning at CHA_000000022.

**REQUEST NO. 69**   Documents sufficient to show the number of all "returned DMCA postcards," as referenced in the document you produced in this case at CHA_000000050, by month.

**REQUEST NO. 70**   Copies of all "metrics report[s]," as referenced in the document you produced in this case at CHA_000000050.

**REQUEST NO. 71**   Documents sufficient to show all criteria used in determining whether to suspend residential subscribers for the reasons identified in the document you produced in this case beginning at CHA_000000133, including all studies, analyses, or reports describing the frequency with which accounts were suspended for each of the stated reasons.

**REQUEST NO. 72**   Documents sufficient to show the level or tier of internet service Charter provided each Infringing Subscriber, by month, for 2012-2016.

**REQUEST NO. 73**   Documents sufficient to show actions Charter took in response to a subscriber exceeding data allowances imposed by the level or tier of internet service subscribed to.

**REQUEST NO. 74**   For each Infringing Subscriber, documents sufficient to show any charges to the Subscriber from 2012-2016 for exceeding data allowances provided by the level or tier of internet service subscribed to.

**REQUEST NO. 75**   Documents concerning any limitations, restrictions, caps, or quotas you imposed on the number of Infringement Notices you would receive, accept, process, forward to Subscribers/Users, take a Customer Facing Action, or otherwise act upon.

**REQUEST NO. 76**   Documents sufficient to show all circumstances in which you would ignore, or otherwise not act upon, an infringement notice.

**REQUEST NO. 77**   Documents sufficient to show the manner(s), if any, in which you are able to determine whether your business customers provide your internet service over a public or private network.

**REQUEST NO. 78**   Documents sufficient to show whether each individual Infringing Subscriber that is also a business customer uses Charter's internet service to provide public WiFi service, or a secured, private network.

February 7, 2020

*/s/ Mitchell A. Kamin*
Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 7th day of February, 2020, upon counsel of record.

Dated: February 7, 2020

/s/ J. Hardy Ehlers