# Exhibit 8

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF COLORADO

 3    Civil Action No. 19-cv-00874-RBJ-MEH
      _____
 4
      WARNER BROS. RECORDS INC., et al.,
 5
               Plaintiffs,
 6
      vs.
 7
      CHARTER COMMUNICATIONS, INC.,
 8
               Defendant.
 9
      _____
10
                  TELEPHONIC HEARING
11
                    May 18, 2020
12
      _____
13
           This telephonic hearing was taken before

14    Special Master Regina Rodriguez on May 18, 2020, at

15    1:32 p.m. Mountain Standard Time before K. Michelle

16    Dittmer, Registered Professional Reporter and Notary

17    Public within the state of Colorado.

18
      (The reporter, K. Michelle Dittmer, appearing remotely
19    via telephone)

20

21

22

23

24

25
```

Page 2

```
 1    A P P E A R A N C E S

 2    ON BEHALF OF THE PLAINTIFF WARNER BROS. RECORDS INC.:

 3              MATTHEW J. OPPENHEIM, ESQ.
                JEFFREY M. GOULD, ESQ.
 4              Oppenheim & Zebrak LLP
                4530 Wisconsin Avenue N.W.
 5              5th Floor
                Washington, DC 20016
 6              Phone: 202-480-2999
                Email: matt@oandzlaw.com
 7              Email: jeff@oandzlaw.com
                (appeared telephonically)
 8

 9              JONATHAN MICHAEL SPERLING, ESQ.
                Covington & Burling LLP
10              620 Eighth Avenue
                The New York Times Building
11              New York, New York 10018-1405
                Phone: 212-841-1153
12              Email: jsperling@cov.com
                (appeared telephonically)
13

14              NEEMA T. SAHNI, ESQ.
                Covington & Burling LLP
15              1999 Avenue of the Stars
                Suite 3500
16              Los Angeles, California 90066-4643
                Phone: 424-332-4757
17              Email: nsahni@cov.com
                (appeared telephonically)
18

19

20

21

22

23

24

25
```

Page 3

```
 1    ON BEHALF OF THE DEFENDANT:

 2              MICHAEL STUART ELKIN, ESQ.
                SEAN R. ANDERSON, ESQ.
 3              CESIE C. ALVAREZ, ESQ.
                Winston & Strawn, LLP
 4              200 Park Avenue
                New York, New York 10166-4193
 5              Phone: 212-294-6729
                Phone: 212-294-5388
 6              Email: melkin@winston.com
                Email: sranderson@winston.com
 7              Email: calvarez@winston.com
                (appeared telephonically)
 8
                JENNIFER ANN GOLINVEAUX, ESQ.
 9              Winston & Strawn, LLP
                101 California Street
10              Suite 3400
                San Francisco, California 94111-5802
11              Phone: 415-591-1506
                Email: jgolinveaux@winston.com
12
13              ERIN R. RANAHAN, ESQ.
                Winston & Strawn, LLP
14              333 South Grand Avenue
                Los Angeles, California 90071
15              Phone: 213-615-1835
                Email: eranahan@winston.com
16              (appeared telephonically)

17              JOHN (JACK) TANNER, ESQ.
                Fairfield & Woods, P.C.
18              1801 California Street
                Suite 2600
19              Denver, Colorado 80202-2645
                Phone: 303-830-2400
20              Email: jtanner@fwlaw.com
                (appeared telephonically)

21

22

23

24

25
```

Page 4

```
 1    P R O C E E D I N G S

 2    REPORTED REMOTELY FROM ARVADA, COLORADO

 3              SPECIAL MASTER RODRIGUEZ:  Okay.  Why

 4    don't we get started.  We're here today for hearing in

 5    Warner Records versus Charter Communications,

 6    19-cv-00874.  Last Friday, we took up defendant's motion

 7    to compel and promised we're here this afternoon to take

 8    up the plaintiffs' motion to compel.

 9              Could we have entry of appearances,

10    starting with plaintiffs, please.

11              MR. OPPENHEIM:  Good afternoon,

12    Ms. Rodriguez.  This is Matt Oppenheim, and I believe my

13    colleague, Jeff Gould, from Oppenheim & Zebrak is on, as

14    well as cocounsel, Neema Sahni and Jonathan Sperling,

15    from Covington & Burling.

16              SPECIAL MASTER RODRIGUEZ:  Thank you.

17              For the defendants?

18              MS. GOLINVEAUX:  Good morning -- good

19    afternoon, Ms. Rodriguez.  It's Jennifer Golinveaux at

20    Winston & Strawn.  And I believe with me on the line are

21    my partners, Michael Elkin and Erin Ranahan, at Winston &

22    Strawn, as well as Sean Anderson and Cesie Alvarez.

23              MR. TANNER:  Your Honor, it's Jack Tanner

24    with Fairfield & Woods here in Denver.  I'm also on the

25    line.  Craig Joyce, who was at the hearing on Friday,
```

1 could not make it today so I'm covering for him.

2         SPECIAL MASTER RODRIGUEZ:  Okay.  Great.

3 Thanks for joining us today, Mr. Tanner.

4         All right.  So let me ask, I always ask

5 because hope springs eternal, wondering if we have any

6 progress over the weekend and there are any issues that

7 we can take off of our list of things to discuss today?

8 Well, hearing that --

9         MR. OPPENHEIM:  This is Matt --

10         SPECIAL MASTER RODRIGUEZ:  -- deafening

11 silence -- okay.  Thank you --

12         MR. OPPENHEIM:  Well, this is --

13         SPECIAL MASTER RODRIGUEZ:  --

14 Mr. Oppenheim.

15         MR. OPPENHEIM:  -- Matt Oppenheim, but

16 what I'm going to say may not be much better than

17 deafening silence.

18         I don't think that any of the issues in

19 plaintiffs' motion to compel have been resolved by the

20 parties over the weekend.

21         SPECIAL MASTER RODRIGUEZ:  Okay.  All

22 right.  And I --

23         MS. RANAHAN:  Ms. Rodriguez --

24         SPECIAL MASTER RODRIGUEZ:  -- thought I --

25         MS. RANAHAN:  -- if I could just mention

1 one more.

2         SPECIAL MASTER RODRIGUEZ:  Uh-huh.  And

3 this --

4         MS. RANAHAN:  This is --

5         SPECIAL MASTER RODRIGUEZ:  -- is Ms. --

6         MS. RANAHAN:  -- Erin Ranahan for the

7 defendants.

8         SPECIAL MASTER RODRIGUEZ:  Okay.  Yes.

9         MS. RANAHAN:  And we did have one issue

10 carried over, the custodian issue, that was from our

11 motion that we pushed over until today.

12         I would say, on that front, this morning

13 plaintiffs sent us the names of two more custodians.  So

14 there are two, but we still have some issues with the

15 custodians, so whenever it makes sense to raise those

16 issues and a clarifying issue related to that, we would

17 also request to do that today.

18         SPECIAL MASTER RODRIGUEZ:  Okay.  Well,

19 why don't we go ahead and do that so we're complete with

20 all those.  You're saying that there are two custodians

21 who you have requested and now are no longer in dispute?

22         MS. RANAHAN:  This is Erin again, Erin

23 Ranahan.

24         We requested -- we didn't request specific

25 names of anyone.  We were requesting more categorical

1 types of witnesses, certain people from marketing and

2 what have you.  We've been given two names we didn't know

3 of before.  We don't know much about them, but we -- the

4 representations from plaintiffs are, is that they relate

5 to one aspect of what we're seeking on the second set of

6 custodians, which is the bit torrent bundling issue.

7         SPECIAL MASTER RODRIGUEZ:  Okay.  And so

8 what remains with regard to the custodians that you're

9 currently seeking?

10         MS. RANAHAN:  Yes.  So that relates -- so

11 one of them relates to the -- what we were just talking

12 about, which was that bundling issue, and the ways that

13 plaintiffs have used or been involved with P2P on their

14 own.

15         And one of the issues that we did not

16 discuss yet Friday, which is something called spoofing or

17 fake files, and so what we know from the prior case is

18 what plaintiffs were able to do is to put out there in

19 the bit torrent P2P universe some fake files so that when

20 a -- when a user attempts to go off of a file name and

21 they go through all the steps of, you know, this form and

22 the bit torrent, they end up with a wrong, inaccurate,

23 fake file.

24         And so that's important because that --

25 that goes to the veracity of some of these notices, where

1 there's not the underlying corresponding infringement.

2 It may not have actually been copied or infringed at all

3 because it turns out it was one of the fake files that

4 plaintiffs were involved with.

5         So we had asked about a week ago whether

6 plaintiffs' custodians would cover what plaintiffs -- we

7 know at least of one of them, one of the plaintiffs,

8 Sony, and we know that they have included a custodian

9 that we would expect to cover Sony.

10         So for the remaining plaintiffs, we do not

11 have, and we have not been given any assurance that those

12 custodians are covered for the other plaintiffs.

13         SPECIAL MASTER RODRIGUEZ:  Okay.  And

14 Mr. Oppenheim or someone from your team, are you prepared

15 to respond to this issue with regard to the custodians?

16         MS. SAHNI:  Ms. Rodriguez, this is Neema

17 Sahni for the plaintiffs.  Good afternoon.

18         So this issue was raised for the first

19 time less than a week ago.  It was not in their letter

20 and it's, in my view, not ripe.  It was not discussed on

21 any meet-and-confer calls prior to their submission of

22 the letter.  And they identified in their email, which we

23 received for the first time after our meet-and-confer

24 discussions, three requests, none of which called for

25 this information.

1    So this is entirely premature.  We don't

2  think it's appropriate for resolution on this call.

3    SPECIAL MASTER RODRIGUEZ:  Well, I mean,

4  that is what my review indicates about this as well.

5  This is a little bit different than what I was

6  anticipating.

7    So what I would ask the parties to do is

8  go back, complete their discussions on this, and then if

9  you're not able to reach agreement on it, come back on

10  it.  But if -- it doesn't sound to me like it's been

11  fully vetted, at least at this stage.  I understand we

12  might be back, but it seems to me that there's still work

13  to be done.

14    MS. RANAHAN:  Okay.  This is -- this is

15  Erin again.

16    It does relate to some of the broader

17  requests.  It's just that specific aspect, we asked them

18  about this eight days ago and haven't received a

19  response.  So we've been --

20    SPECIAL MASTER RODRIGUEZ:  Okay.

21    MS. RANAHAN:  -- requesting to meet and

22  confer and we've been, you know, getting no response.  So

23  we'll continue to try --

24    SPECIAL MASTER RODRIGUEZ:  Okay.

25    MS. RANAHAN:  -- to meet and confer, but

1  it certainly relates to some of the requests that were at

2  issue.  It's just, it wasn't spelled out in that way, so

3  I was trying to be more specific about something that we

4  know is out there, that we know --

5    SPECIAL MASTER RODRIGUEZ:  Understood.

6    MS. RANAHAN:  -- custodians would likely

7  cover.

8    SPECIAL MASTER RODRIGUEZ:  Okay,

9  understood.

10    MS. RANAHAN:  Another issue --

11    SPECIAL MASTER RODRIGUEZ:  Let me ask this

12  question.  Hold on just a second, Ms. Ranahan.

13    MS. RANAHAN:  Sure.

14    SPECIAL MASTER RODRIGUEZ:  Ms. Sahni, you

15  all will respond to this inquiry from Charter's counsel,

16  right?

17    MS. SAHNI:  Ms. Rodriguez, we're happy to

18  respond.  I do think we have a disagreement over whether

19  their request calls for this information, but we can meet

20  and confer and hear their understanding of why they think

21  it does.

22    SPECIAL MASTER RODRIGUEZ:  All right.  And

23  by when can you do that?

24    MS. SAHNI:  I'm happy to have a call, Erin

25  and Jennifer, this week that would be convenient to you.

1    SPECIAL MASTER RODRIGUEZ:  Okay.  So let's

2  get this sorted out this week, and if there's not a

3  resolution on that, then -- then you could raise that

4  when it's ripe.

5    MS. RANAHAN:  Okay.  So just to be -- this

6  is Erin Ranahan again, I'm sorry.

7    Just to be clear, so this is going to

8  cover some of the same requests that we put to you last

9  time, so we may now repeat them in our next round for

10  this specific issue.  This is maybe covered in some of

11  the requests that were -- they would be called for, but I

12  suppose we have to hash that out with plaintiffs' counsel

13  first.

14    SPECIAL MASTER RODRIGUEZ:  Okay.

15    MS. RANAHAN:  Okay.  And then there's

16  another -- which I think Ms. Golinveaux may want to

17  actually jump in here and ask a clarifying issue about

18  something from Friday which relates to the next batch of

19  custodians we wanted to discuss.

20    MS. GOLINVEAUX:  Yes.  It's Jennifer

21  Golinveaux at Winston.

22    Ms. Rodriguez, we wanted to seek

23  clarification on just one point from the discussion on

24  Friday, and this has to do with the correspondence and

25  the documents and agreements relating to MarkMonitor in

1  the relevant time period that you addressed.

2    SPECIAL MASTER RODRIGUEZ:  Yes.

3    MS. GOLINVEAUX:  During the hearing, you

4  had indicated that plaintiffs' production of the

5  responsive documents should include production documents

6  between plaintiffs' counsel and MarkMonitor or agreements

7  between plaintiffs' counsel and MarkMonitor through the

8  calendar year 2016, or that if there are -- if they claim

9  privilege, a work product, they should be logged as

10  appropriate.

11    What the clarification goes to is that

12  after you so stated, there was colloquy between yourself

13  and Mr. Oppenheim specifically about the nature of

14  Oppenheim & Zebrak's search of -- search for responsive

15  documents.

16    And we just want to be clear that as

17  plaintiffs' agent dealing directly with MarkMonitor,

18  Oppenheim & Zebrak will be searching for and producing

19  responsive documents or logging them on a privilege log;

20  we just -- the transcript became a little unclear after

21  that colloquy, so we wanted that clarification.

22    SPECIAL MASTER RODRIGUEZ:  Yes.  That

23  was --

24    MR. OPPENHEIM:  Ms. Rodriguez --

25    SPECIAL MASTER RODRIGUEZ:  -- my

Page 13

1   understanding, that it would encompass all of that.
2               MS. GOLINVEAUX:  Okay.  Thank you.
3               MR. OPPENHEIM:  Ms. Rodriguez, this is
4   Matt Oppenheim.
5               My understanding is actually 180 degrees
6   from that.  My understanding is that I asked you
7   specifically -- and I'm happy to discuss this -- whether
8   or not their request required our law firm to start doing
9   document searches, and I pointed out that we obviously
10  represent not only these plaintiffs on many matters and
11  many matters that involve MarkMonitor, but also represent
12  other clients involving MarkMonitor.
13              And your response to me, I believe -- and
14  I don't have the transcript in front of me -- was no, we
15  did not have to -- this -- you were not ordering a law
16  firm to start searching a law firm's files for documents.
17              If -- if that's the issue before us, I
18  think we should have a discussion about it, because that
19  would be quite a step, to start saying that Oppenheim &
20  Zebrak and Winston & Strawn are start going -- going to
21  have to be running searches across their firm for
22  responsive firms, because it would have to be bilateral.
23  Obviously, such an order going one way wouldn't be fair,
24  but -- but require that searching be done of both firms
25  across the board on document requests, including

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 14

1   preservation issues and so on and so forth.
2               I -- I think that's a bridge too far
3   personally.  I have not before been in a case where, in
4   discovery, a law firm has been ordered to search their --
5   to do email searches for responsive documents, and I --
6   certainly the defendants have not pointed to any
7   authority to support that request as it comes before you,
8   and it's obviously their burden to make that request.
9               SPECIAL MASTER RODRIGUEZ:  Well, let's --
10  I'm sorry.  Go ahead.
11              MS. GOLINVEAUX:  Ms. Rodriguez, I was just
12  going to -- it's Jennifer Golinveaux.
13              I was going to say, first, it appears like
14  the clarification was important because we had different
15  understandings on what you were ruling.  And I believe
16  Mr. Oppenheim is making this a much bigger issue than it
17  needs to be.
18              His partner, Mr. -- or his -- his
19  cocounsel, Mr. Sperling, on Friday, indicated that
20  correspondence between Oppenheim & Zebrak and MarkMonitor
21  about the evidence at issue would be likely privileged
22  because MarkMonitor has a litigation consultant to the
23  plaintiffs and specifically to Oppenheim & Zebrak as
24  plaintiffs' agent.
25              That -- that litigation agreement was

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 15

1   produced in the Cox case.  It was signed as between
2   Oppenheim & Zebrak and MarkMonitor with Oppenheim &
3   Zebrak acting as plaintiffs' agent.  It has not been
4   produced in this case.
5               So thus seeking clarification.  What we're
6   seeking here is not some kind of broad search of the law
7   firm's email files.  We're seeking specifically the
8   documents that you've ordered, which is correspondence
9   directly with MarkMonitor about the evidence at issue
10  that's being brought against Charter and agreements
11  regarding that evidence so that we can test the
12  assertions they're making.
13              If they say they won't search their own
14  documents, they're the ones that have the correspondence
15  with MarkMonitor.  So we will get nothing from the
16  plaintiffs because they were acting for plaintiffs in
17  this respect.
18              SPECIAL MASTER RODRIGUEZ:  Well, that was
19  my understanding.  This is Request Number 55, was it?
20  Point me --
21              MS. GOLINVEAUX:  Correct.
22              SPECIAL MASTER RODRIGUEZ:  -- to the
23  specific request.
24              MS. GOLINVEAUX:  No, that's right.  It was
25  Request for Production 55 and also the 62 through 66 that

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 16

1   were closely related.
2               MR. OPPENHEIM:  So this is --
3               MS. GOLINVEAUX:  For example, 63 is
4   correspondence and agreements with MarkMonitor about the
5   litigation or Charter and the copyrighted works, and
6   you'll recall we had a bunch of back-and-forth between
7   myself and Ms. Sahni about whether copyrighted works
8   should be in there, so we were talking about them as a
9   group.
10              SPECIAL MASTER RODRIGUEZ:  Well, as I
11  recall --
12              MR. OPPENHEIM:  So to be clear, these
13  are --
14              SPECIAL MASTER RODRIGUEZ:  -- my order --
15              MR. OPPENHEIM:  Sorry.  Go ahead.
16              SPECIAL MASTER RODRIGUEZ:  As I recall, my
17  order was that the responses on all of these requests for
18  production was plaintiffs' responses stood except for
19  with regard to the date.
20              The exception to that was Request
21  Number 55, and the request with regard to documents that
22  would potentially be privileged, but with the
23  understanding that this only related to the claims period
24  through -- and with regard to Request Number 55, it went
25  through the end of 2016, December 31, 2016.  So that's

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  first off.

2          Then the next question was whether or not

3  that this would require production of documents related

4  to emails that plaintiffs' firm may have sent on behalf

5  of MarkMonitor or with MarkMonitor, correct?

6          MS. GOLINVEAUX:  Right, correct.  Correct.

7  Yes.  Exactly.  Yeah.  Yeah.

8          SPECIAL MASTER RODRIGUEZ:  And --

9          MR. OPPENHEIM:  So Ms. -- Ms. Rodriguez,

10  if I may --

11          MS. GOLINVEAUX:  And to be clear --

12          MR. OPPENHEIM:  -- this is Matt Oppenheim.

13  So --

14          MS. GOLINVEAUX:  -- it was Oppenheim &

15  Zebrak that had the correspondence.

16          MR. OPPENHEIM:  Ms. Rodriguez --

17          SPECIAL MASTER RODRIGUEZ:  I'm sorry, "to

18  be clear," what?

19          MR. OPPENHEIM:  -- if I could just read

20  from the transcript.  So can I --

21          SPECIAL MASTER RODRIGUEZ:  I'm sorry.

22  Hold on a minute.  Let -- hold on just a moment.

23          Go ahead, Ms. Golinveaux, finish your --

24  what you were saying, and then I'll let you read,

25  Mr. Oppenheim.

1          MS. GOLINVEAUX:  Thank you.

2          I was saying:  To be clear, it was

3  Oppenheim & Zebrak that had the relevant correspondence

4  with MarkMonitor, so that was the concern for the

5  clarification.

6          SPECIAL MASTER RODRIGUEZ:  Okay.  And

7  Mr. Oppenheim?

8          MR. OPPENHEIM:  Certainly.  Thank you.

9          On page 27 of the transcript, I asked for

10  a clarification --

11          SPECIAL MASTER RODRIGUEZ:  And by the way,

12  I'm at a disadvantage because I don't have the

13  transcript.  That hasn't been provided to me yet so I

14  guess we're --

15          MR. OPPENHEIM:  My apologies, but I

16  will -- I will read it, the short excerpt, for you.

17          I said:  I don't understand that you've

18  ordered -- you've now ordered -- just want to make

19  sure -- that plaintiffs' counsel has to do -- start doing

20  searches of the Oppenheim & Zebrak law firm, for example,

21  in the same way that Winston & Strawn doesn't have to

22  start searching all of their correspondence, right?

23          And what you said, Ms. Rodriguez:  No,

24  that's not what my understanding of this is.

25          And I said:  Okay.

1          So there was at no time, did I understand,

2  that you had ordered that Oppenheim & Zebrak was going to

3  start searching its files.

4          And the reason for that, as I -- I believe

5  was because Oppenheim & Zebrak's correspondence with

6  MarkMonitor as a litigation consultant after the notices

7  have been sent are not relevant to the claims and

8  defenses.  That we produced -- right -- we produced the

9  notices, we produced the evidence collected by

10  MarkMonitor in support of the notices.  They've got an

11  enormous quantum of documentation on that.

12          What they're now looking to get are the

13  documents that go to our communications with MarkMonitor

14  after the operative period, and all they're trying to do

15  is inquire into our work with MarkMonitor.  And that's

16  not proper.  That's not proper.

17          SPECIAL MASTER RODRIGUEZ:  So --

18          MR. OPPENHEIM:  So, look, if we want to

19  brief this in full and have the defendant submit a clear

20  brief of what they're asking for -- because it's not

21  clear to me, it seems to be a moving target -- and cite

22  case law to support the idea that a law firm has to start

23  doing searches of its emails, and then we'll file a

24  responsive brief, I'm fine with that.

25          But I thought that what you did on Friday

1  was clear.

2          MS. GOLINVEAUX:  And, Ms. Rodriguez, to be

3  clear, Mr. Oppenheim read that excerpt from the

4  transcript out of context.  I can read to you the

5  excerpt, the full portion where you do, in fact, order

6  exactly that plaintiffs' counsel search and produce

7  responsive documents.

8          We only have the rough transcript, but he

9  left that part out, so it's important to see that in

10  context.

11          SPECIAL MASTER RODRIGUEZ:  Yeah, I

12  don't -- I don't have the transcript, and I apologize, I

13  don't have instant recall of what we did on Friday.  So

14  I'm going to have to go back and look at it.

15          I mean, I am concerned that we're getting

16  into a place where we're asking firms to do document

17  searches.  I -- that is not my intention.  However, my

18  understanding also was that MarkMonitor had

19  communications and could be searched for their records on

20  those communications.

21          So I need to go back and look at this.  I

22  apologize.  I -- I don't have the transcript.  I'll need

23  to look at what -- what the colloquy was on that,

24  so . . .

25          MS. GOLINVEAUX:  Thank you.  And this was

Page 21

1  for Mr. -- Mr. Oppenheim is saying this is after the
2  claims period.  You specifically limited it to 2016, so
3  it would encompass, for example, when MarkMonitor sent
4  them this so-called hard drive that we've had so much
5  dispute about, correspondence related to that, to see
6  what evidence they were getting and what was provided to
7  us, because they are filtering the MarkMonitor evidence
8  through Oppenheim & Zebrak.
9         MarkMonitor is taking the position in
10  response to our subpoena that they didn't retain a lot of
11  this, and if they did retain it, they won't turn it over.
12  So we're really kind of crossways here in terms of how to
13  get --
14         SPECIAL MASTER RODRIGUEZ:  Okay.  Okay.
15  Understood.  All right.
16         MS. GOLINVEAUX:  And then the last
17  point --
18         SPECIAL MASTER RODRIGUEZ:  Once I get the
19  transcript, I'll look at it.
20         MS. GOLINVEAUX:  Thank you.
21         And the last point is that I think it will
22  be helpful to see the litigation agreement that
23  plaintiffs are talking about but have not produced that
24  covers this case, because we understand that that was, in
25  fact, executed after the -- after 2016, so we think that

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 22

1  would be highly relevant as well.
2         SPECIAL MASTER RODRIGUEZ:  Well, that's
3  not something I have seen at this point, so if you
4  want -- you know, if you want to submit that to me, I
5  will take a look at it.
6         MS. GOLINVEAUX:  Okay.  Well, we will do
7  that, Ms. Rodriguez, but it's going to be necessary to --
8  in order to evaluate any claims of privilege or work
9  product that they're asserting here.
10         SPECIAL MASTER RODRIGUEZ:  All right.
11         MR. OPPENHEIM:  Ms. Rodriguez, this is
12  Matt Oppenheim.
13         I want to be very careful here.  There are
14  documents that were produced in the Cox case that were
15  not admitted into evidence at the trial that were
16  produced subject to a protective order that obviously
17  Winston & Strawn has as counsel in the Cox case.  We may
18  have objected to those documents for many reasons.  We
19  may have objected to their production.  They -- they may
20  have been excluded for many reasons.
21         I just want to be careful that we're not
22  just bleeding any document that was in the Cox case
23  suddenly can be brought forward in this case as though it
24  magically is just -- can be used in this case.
25         So I don't know what document

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 23

1  Ms. Golinveaux is referring to that is in the Cox case
2  that -- that she wants to provide to -- to you, but I --
3  I just -- I caution that -- that these are different
4  cases in terms of document productions and protective
5  orders.  I don't know what obligations we have to give
6  notice to people on certain documents, so on and so
7  forth.
8         SPECIAL MASTER RODRIGUEZ:  Understood.
9         Listen, I have to rely upon you all
10  because I wasn't involved in the Cox case, and I have to
11  rely on you that you're going to only provide to me
12  documents that are properly provided and in the proper
13  course.
14         Those weren't -- this court's orders from
15  either Judge Jackson or Judge Hegarty, I haven't been
16  privy to them.  So I have to trust in you all as counsel
17  and officers of the court that you're going to provide to
18  me what's proper and do it in the proper manner.
19         So if you're making representations to me
20  with regard to orders or documents or those kinds of
21  things from the Cox case, I have to rely on you that
22  those representations are, A, accurate and, B, that those
23  documents are properly documents that can be before me in
24  this litigation.
25         MS. GOLINVEAUX:  Understood.  And, of

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 24

1  course, we entirely agree with that, Ms. Rodriguez.
2         SPECIAL MASTER RODRIGUEZ:  All right.
3         MS. RANAHAN:  And Ms. Rodriguez, this is
4  Erin Ranahan again.  One more point on that is that
5  Judge Hegarty, so far, each time there's been something
6  that was produced in Cox that we wanted access to or to
7  use here, he's granted that request.  He says it's no
8  burden since you have it.  What's the problem?  That's
9  happened --
10         THE COURT REPORTER:  I'm sorry, I'm sorry.
11  Could you please repeat?
12         MS. RANAHAN:  Sure, sure.
13         So in this case, Judge Hegarty, both times
14  we've raised something that was produced in Cox,
15  including all the track-by-track financial data and the
16  implementation agreement, because there's no burden in
17  producing it, he found those -- that we could get those
18  in discovery.
19         So that's been the history so far of
20  anything we've -- we've raised before Hegarty that was
21  provided in Cox.
22         SPECIAL MASTER RODRIGUEZ:  Well, I
23  understand; though I think this is just a little bit
24  different.  So, again, I just think that Mr. Oppenheim
25  raises a good point:  We need to make sure that the

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

documents are properly being provided. The question of
whether or not it's burdensome is a little bit different
than what we're dealing with here at this moment. But I
understand your point.

MS. GOLINVEAUX: And Ms. Rodriguez, just
to close the loop, we would -- if you -- if you -- upon
further reflection on the transcript, we think you will
agree with us in terms of what you ordered on Friday, but
if you come to the determination that Oppenheim & Zebrak
does not have to provide their correspondence with
MarkMonitor or their litigation agreement with
MarkMonitor, we would ask that you allow us, as
Mr. Oppenheim suggested, to do further briefing on that
specific issue as to why it would be appropriate here.

SPECIAL MASTER RODRIGUEZ: Okay. All
right. I will look at it.

MS. GOLINVEAUX: Thank you.

SPECIAL MASTER RODRIGUEZ: Any remaining
matters from Friday?

MS. RANAHAN: No, I don't believe so.
Thank you. This is Erin again.

SPECIAL MASTER RODRIGUEZ: All right.
All right. Let's turn to the plaintiffs'
motion to compel. In the first instance, plaintiffs have
asked that Charter be ordered to state how many

infringement notices it received from 2012 to 2016 and
what actions it took in response to them that encompasses
Interrogatories 13 and 14.

The first thing I would note is that the
motion to compel seeks documents from the time period
2012 to 2016, but the request itself sought information
from 2010 to 2016.

Am I correct in understanding that you are
limiting your time period to 2012 to 2016?

MR. OPPENHEIM: Ms. Rodriguez, this is
Matt Oppenheim.

Yes, we agreed, as part of the meet and
confer, to limit our request.

SPECIAL MASTER RODRIGUEZ: Okay.

MS. GOLINVEAUX: Ms. Rodriguez, it's
Jennifer Golinveaux.

In fact, their motion is limited to May of
2016, so I just wanted to make that clear.

SPECIAL MASTER RODRIGUEZ: Through May of
2016. All right.

MS. GOLINVEAUX: Yes.

SPECIAL MASTER RODRIGUEZ: It appears, as
I review this, that this information is directly relevant
to the defense of the safe harbor that was raised by
Charter. And I think we had this discussion a little bit

on Friday, but it looks like, under this defense, the
focus is on Charter's conduct and implementation of its
policy. So it would not necessarily be limited just to
the plaintiffs in this case.

What -- my understanding is, is that what
plaintiffs are asking for is the number by month of all
notices received. They have not asked for each notice.
I did not see anything in the record indicating that
providing total number of notices would be unduly
burdensome.

Similarly, they've asked -- plaintiffs
have asked for all actions by type of action that Charter
took. Again, this appears to be an appropriate and
reasonable request specifically targeted to the
information which plaintiffs need as relevant to its
response to Charter's affirmative defense.

Defendant has stated that it has responded
to the RF -- request for interrogatory. I would note
that Exhibit 1 that was attached was actually the -- the
supplemental responses by Charter to the second set of
RFPs that starts with RFP 25, rather than the request
related to the interrogatories. But the interrogatories
were -- were included with the plaintiffs' submission.

So again, I don't think that it is
appropriate to simply limit it to the plaintiffs in this

case but, rather, the inquiry is Charter's actions and
how Charter, in general, handled these notices. I agree,
and it is my -- as I said in the prior hearing, that
requests for every communication regarding every notice
was so broad.

But it appears to me that in this
interrogatory, plaintiffs have narrowed it, as they
should, to the numbers by month for the limited time
period of 2012 through May of 2016.

My question of -- to defense counsel is,
why would this information not be relevant to Charter's
actions and how it implemented its own policies related
to infringers?

MS. GOLINVEAUX: It's Jennifer Golinveaux
from Winston. Thank you, Ms. Rodriguez. I can address
that.

First, to be clear, we responded to these
interrogatories, not only with respect to plaintiffs'
notices, but as to all third-party notices as well that
were sent to what's been defined by the parties as the
accused subscribers, and those are the subscribers that
got -- that ever received an RIAA notice on behalf of
plaintiffs. So we've already provided them the
underlying data for this for both plaintiffs' notices and
all third-party notices directed at those subscribers.

1        Their -- their only argument of relevance
2  for getting the total number ever sent by anyone to any
3  Charter subscriber is that it's somehow relevant to
4  whether Charter implemented a repeat infringer
5  termination policy under the DMCA, as you note.
6        But here, Charter has offered a
7  stipulation and plaintiffs assert an admission request
8  and Charter has acknowledged that it didn't terminate
9  anyone in response to the copyright notices.
10        So the sheer number of third-party notices
11 that came in completely unrelated to plaintiffs' notices
12 has no relevance to that issue.  It is not probative on
13 that issue.
14        Moreover, I would note, you've footnoted
15 our discussion of the Rightscorp request that we talked
16 about on Friday.  This -- this -- providing this
17 information would directly implicate Rightscorp.  And
18 that's because even with respect to the accused
19 subscribers who got the RIAA notice -- notices, more than
20 90 percent of the third-party notices sent to them were
21 from Rightscorp.
22        So to the extent you're prepared to order
23 this -- this information with respect to all third-party
24 notices, we think that this absolutely makes plaintiffs'
25 own communications about Rightscorp squarely at issue in

1  this case because plaintiffs had meetings with
2  Rightscorp.  They rejected Rightscorp's services, and
3  their discussions of why they would not use Rightscorp
4  would be a relevant party admission to counter evidence
5  that they're going to come forth with about total numbers
6  of notices not at issue in this case.
7        SPECIAL MASTER RODRIGUEZ:  Okay.
8        Plaintiffs' counsel, do you want to
9  respond?
10        MR. OPPENHEIM:  Yes.  Thank you,
11 Ms. Rodriguez.  Yes.  Let me back up a little.
12        So it -- this information is -- is
13 relevant to the safe harbor, as you indicated, because
14 the safe harbor is not just about what Charter did with
15 respect to plaintiffs' notices.  It's about how Charter
16 adopted and implemented the repeat infringer policy
17 generally.  And -- and so you're starting point was
18 right.
19        But it's also relevant to other purposes
20 as well.  It's not just the repeat infringer policy, of
21 course, right?  So it goes directly to plaintiffs'
22 affirmative claims, right?
23        The plaintiffs are asserting a claim that
24 Charter received notice that it had infringing
25 subscribers and failed to adequately address that

1  infringement.  And how Charter responded to notices is
2  squarely part of plaintiffs' affirmative claims, not only
3  in terms of the actions it took, the notice it was on,
4  whether it knew the infringement was going on in this
5  case, but it also goes directly to Charter's culpability.
6        And I think it's very telling,
7  Ms. Rodriguez, if you look at Exhibit 2 to plaintiffs'
8  letter and you look at the charts that were used in the
9  Cox case -- and in particular, I point you, if you have
10 it, to page 2 of that exhibit, because this really shows
11 what we're getting at here, and it speaks to many of the
12 issues that -- that Ms. Golinveaux was just trying to
13 refute.
14        And I don't know if you've looked at this
15 chart or if you have it in front of you, but if you
16 could, it's very helpful.  It shows -- and, of course,
17 this is Cox, but we would like to create the exact same
18 chart, whatever the numbers are, for Charter, right?
19        So for a period of time, month-by-month,
20 what's the total number of notices that -- infringement
21 notices that Charter received?  How many of those notices
22 did they actually accept?  We don't know the answer to
23 that.  How many of those notices did they delete and
24 never accept?  We don't know the answer to that.  How
25 many warnings did they send?  We don't know the answer to

1  that.  How many suspensions and how many terminations?
2        And you can see as, Ms. Rodriguez, you
3  tried cases for many years.  You can imagine that this
4  kind of chart in front of a jury is a very useful way of
5  not only describing the safe harbor and that -- which
6  obviously is not a jury issue, a judge issue -- but for
7  purposes of a jury to understand the culpability of the
8  ISP.  You know, how did they respond to these notices?
9        And so you look at this chart and you say,
10 "This is useful information."  And I think you already
11 said that.  You -- you started by saying you thought it
12 was relevant.
13        Now, Ms. Golinveaux starts with something
14 a little misleading when she says -- maybe not
15 intentionally, so I'm not trying to attribute that -- but
16 she says:  Well, we provided third-party notices for the
17 accused subscribers.  But accused subscribers are just
18 the subscribers that were the subject of plaintiffs'
19 notices.
20        She's not representing to you that they've
21 provided all the third-party notices and they haven't.
22 So that's number one.  And they need to.  They have to.
23 It's critical for purposes of understanding
24 comprehensively what Charter did and did not do with
25 respect to its -- its policy.

Page 33

1    Secondly, right, it can't just provide
2  spreadsheets, right?  We -- as you noted, they didn't
3  provide a rog response.  They provided a spreadsheet.
4  What we want is an interrogatory response that answers
5  our questions.
6    The spreadsheet doesn't tell us which
7  notices they didn't accept.  It doesn't tell us what the
8  different codes within the spreadsheet mean.  We've asked
9  them repeatedly to tell us, What do the different codes
10  in the spreadsheets mean?  And they haven't told us.
11  They've given us a shortened date period.
12    We asked -- we limited it, right?  It was
13  originally 2010, we went to 2012.  We limited the time
14  period to the discovery period, but they've only given us
15  data for -- from October 2014 to March 2015.
16    Now, if they don't have any other data,
17  they need to give us an interrogatory response that says
18  we don't have anything else, okay?  And -- and we need it
19  to do more than just say, We didn't terminate.
20    So the stipulation that's been offered --
21  and by the way, a stipulation that offers to -- to say
22  something that they've said on the record repeatedly is
23  not offering to resolve an issue.  They've said
24  repeatedly they didn't terminate people.  We got it.  It
25  would be nice if they, you know -- I'll withdraw it.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 34

1    They've said they haven't terminated
2  people, but they're still asserting a safe harbor
3  defense.  So presumably, Winston & Strawn and Charter
4  believe that somehow they adopted and reasonably
5  implemented a policy to deal with repeat infringers that
6  included termination.  Well, if they're going to put
7  forward that defense in light of the fact that they know
8  they didn't terminate somebody, then their stipulation is
9  inadequate.
10    Now, if they want to stipulate, "We did
11  not adopt and reasonably implement a policy and our
12  policy was, in fact, unreasonable," maybe we would
13  consider it.  But otherwise, this is key evidence that
14  goes to the core of our case and needs to be produced.
15    Now, I want to address the Rightscorp
16  issue quickly.  Rightscorp is a red herring here.  This
17  is not about their -- defendant's request of plaintiffs
18  about Rightscorp.  Plaintiffs aren't asking them in this
19  to blank out the Rightscorp data from other data.  If
20  they want to tell us, that's fine and they can do that in
21  data and spreadsheets.
22    But the Exhibit 2 that you have, the trial
23  exhibit from Cox, that includes Rightscorp notices.
24  And -- and so we just want all the notices they received.
25  They're free to put forward counter evidence that said,

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 35

1  "You know what?  90 percent of these were Rightscorp and
2  we ignored them," and they can try to explain why.  And
3  we'll deal with that.
4    But we just want the total number -- for
5  this purpose, and we're not conceding that for other
6  purposes, we don't need other information.  For this
7  purpose, we just need that high-level information.
8    Thank you.
9    MS. GOLINVEAUX:  Ms. Rodriguez, may I
10  respond briefly to Mr. Oppenheim?
11    SPECIAL MASTER RODRIGUEZ:  Yes.
12    MS. GOLINVEAUX:  It's Jennifer Golinveaux.
13    So plaintiff's theory of relevance here is
14  that it's relevant to eligibility for DMCA safe harbor,
15  right?  The only provision of DMCA safe harbor that comes
16  into play is Section 512(i)(1)(a).
17    And Mr. Oppenheim, when he was just
18  characterizing that provision -- and that's the provision
19  that deals with a reasonable repeat infringer policy --
20  just left out a keyword, which is "termination."
21    So what 512(i) says is that to be
22  eligible, you have to have adopted and implemented a
23  policy that provides for termination in appropriate
24  circumstances.
25    What they want to use this data for is to

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 36

1  say, Charter got 2 million, 3 million -- whatever the
2  number is -- notices from a variety of third parties and
3  they didn't terminate.  They don't need this information
4  for that because we've offered to stipulate that that's
5  the case.  They've pointed to no other relevance, other
6  than waving these numbers in front of the jury, and
7  they're not probative.
8    And he didn't address a point, a
9  corresponding point, that if they want to wave these
10  numbers in front of the jury and say, "Not only did they
11  get our notices, but they got millions of other notices
12  and they shouldn't -- didn't terminate either," then
13  we are entitled to the plaintiffs' email -- emails and
14  correspondence and documents about Rightscorp, which was
15  the primary, by a vast majority, of other notices, and
16  what the plaintiffs' admissions say about Rightscorp's
17  service and why it's not reliable.
18    SPECIAL MASTER RODRIGUEZ:  Okay.
19    MR. OPPENHEIM:  Ms. Rodriguez, there's
20  some critical facts here that -- I'm sorry and I -- just
21  one, if I may, quick -- two quick points.
22    One is, that exhibit that you're seeing
23  here of data that was used in Cox was used after there
24  was already a -- when there was no safe harbor in the
25  case.  For purposes of that exhibit, Cox didn't even

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  plead safe harbor because they had lost the safe harbor
2  in the prior BMG case.
3         So this was relevant for purposes of
4  plaintiffs' affirmative claims and was admitted and put
5  in front of the jury for plaintiffs' affirmative claims,
6  so it's not just the safe harbor issue.
7         With respect to the Rightscorp request --
8  and I'm happy to have this discussion at a later time if
9  you prefer -- but if Charter puts forward and shows any
10 evidence whatsoever, written evidence, that when it
11 received a notice from Rightscorp, it treated it
12 differently at the time, then we can have a discussion
13 about whether or not plaintiffs' view of Rightscorp is
14 relevant.
15        But so far, this notion that
16 Ms. Golinveaux keeps pushing that Rightscorp notices
17 should be treated differently, there's no evidence
18 whatsoever that Charter did that, and it is entirely a
19 lawyer-fabricated notion.
20        And so to delve into that issue with
21 plaintiffs -- it's a whole sideshow, and I'm happy to
22 go into it -- has to do with settlement claims.  To do
23 that when there's no evidence to show that it was
24 contemporaneously an issue is truly disproportionate.
25        SPECIAL MASTER RODRIGUEZ:  Okay.

1         MS. GOLINVEAUX:  Ms. --
2         SPECIAL MASTER RODRIGUEZ:  All right.  So
3  let's -- unless this is critical to the analysis, let's
4  move forward.
5         MS. GOLINVEAUX:  Just one last, small,
6  quick point, which is that Mr. Oppenheim says we provided
7  the underlying data but we didn't tally up the notices in
8  response to these interrogatories and they want us to
9  tally them up now.  That -- they're going to have to go
10 through the same exercise with the ticket data in order
11 to do that, that we've -- the ticket data that we've
12 already provided and plaintiffs have, and F.R.C.P.
13 Section 33(d) specifically allows us to produce the raw
14 data and let them do the tally.  There's no reason to
15 call for us doing the tally.
16        MR. OPPENHEIM:  Respectfully, that
17 presumes we can understand the data enough to -- to do
18 it.  They provided the data exactly in the form that
19 you -- in this monthly form using the same CATS system in
20 the Cox case in response to interrogatory.
21        So we can submit -- we can submit to you,
22 Ms. Rodriguez, if you'd like, the interrog- -- subject to
23 their consent, the interrogatory responses -- actually, I
24 think they were admitted, so they're public -- the
25 interrogatory responses in the Cox case, where they did

1  it month-by-month and action-item-by-action-item.
2         MS. GOLINVEAUX:  But they have the same
3  ticket data that shows how many notices went from both
4  the RIAA and third parties that we have.  There's nothing
5  confusing about it.  They can tally it up as easily as we
6  can tally it up and 33(d) allows us to provide it that
7  way.
8         SPECIAL MASTER RODRIGUEZ:  And,
9  Mr. Oppenheim, are you disputing that you have this data?
10        MR. OPPENHEIM:  So -- so we have a very
11 limited subset of data.  We don't have all of what you
12 indicated earlier.  But that data, the codes don't tell
13 us what happened.
14        So I'll give you a very specific example.
15 In response to some notices, it appears that the action
16 taken was called batch or batching -- I can't remember
17 the exact term.
18        What is that?  I don't know.  Does that
19 mean that they provided a notice to the subscriber?  Does
20 that mean they deleted the infringement notice?  Does
21 that mean -- I don't know what, right?
22        Another one said, P.C. something, which I
23 thought may have involved with -- with what is often
24 referred to as a soft wall guard, and one of my
25 colleagues said, no, it involves a postcard.  I don't

1  know what it means.  So what I want is --
2         SPECIAL MASTER RODRIGUEZ:  Well --
3         MR. OPPENHEIM:  -- just the exact same
4  chart that they provided in the Cox case, the same
5  counsel provided in the Cox case.
6         MS. GOLINVEAUX:  That was for deposition.
7         SPECIAL MASTER RODRIGUEZ:  All right.
8         MS. GOLINVEAUX:  He's not going to get it
9  from us any differently if we write it out from an
10 interrogatory.  Those questions are for depositions, what
11 the meaning of the various actions were.  They have the
12 numbers right there in the ticket data.  We've provided
13 it all to them.
14        SPECIAL MASTER RODRIGUEZ:  Okay.
15        Mr. Oppenheim, is this -- is this
16 information that would be subject to expert witness
17 review and analysis?  That is to say, you may not
18 understand it specifically, but is this something that
19 you would be having experts review in testimony on this?
20        MR. OPPENHEIM:  I don't know whether an
21 expert will use it as part of their larger analysis, but
22 the chart that you see, the summary chart that you see as
23 an exhibit from the Cox case was not an expert -- I mean,
24 it's not expertise.  It's just, here's the information.
25 It's very simple.  I --

Page 42

1  SPECIAL MASTER RODRIGUEZ:  Right.

2  MR. OPPENHEIM:  No expert that we retain

3  is going to tell us what batching means.  That is an

4  internal Cox -- Charter term, and they haven't produced

5  the documents that tell us what that means, right?  And

6  they haven't explained to us in the interrogatory

7  response.

8  That's why you ask interrogatories,

9  because you -- so that you get very clean, easy, simple

10 answers to certain things, and that's all,

11 Ms. Rodriguez --

12 MR. SPERLING:  Ms. Rodriguez, it's

13 Jonathan Sperling for the plaintiffs, and just to go a

14 little bit on the coattails of my colleague.

15 I think we're getting a little bit away

16 from the issue because you asked, I think, a focused, an

17 important question, which is:  Do we have the information

18 that would allow us to answer this interrogatory

19 ourselves?  And the answer is, no, we don't, because they

20 have not produced -- they have produced limited ticket

21 data.  They have produced data for fewer -- or tickets

22 for fewer than all of the notices that they received in

23 the period.

24 So if we take the information they have

25 given us and we rely on that -- and in addition, it does

not relate to all subscribers, okay?  If we take that, we
will not come up with the correct answer to the question
posed by the interrogatory.  Interrogatory is:  How many
notices did you get?

And since they provided us with
information for fewer than all the notices that they got,
therefore, if we tally up the information that they gave
us, we will have an incomplete, undercounted number.

That's the answer to the question that you
put.  And I'm glad that you asked the question,
Ms. Rodriguez --

SPECIAL MASTER RODRIGUEZ:  All right.

MR. SPERLING:  -- because it's really
important.

MS. GOLINVEAUX:  And, Ms. Rodriguez --

SPECIAL MASTER RODRIGUEZ:  Okay.  Okay.
Okay.

MS. GOLINVEAUX:  -- to be clear, we
produced -- we produced all the ticket data.  It won't be
any different if we add it up for them on the chart,
we've -- we've produced all the ticket data.  There's no
hidden ticket data that we haven't yet referred to --

SPECIAL MASTER RODRIGUEZ:  Okay.

MS. GOLINVEAUX:  -- on that front based on
what we produced.

Page 43

1  SPECIAL MASTER RODRIGUEZ:  All right.  So

2  let's -- let's deal with this.  So my understanding was

3  that the plaintiffs' objection to the response here was

4  that it was limited to the plaintiffs and did not include

5  all notices that the defendants received for the relevant

6  time period; that is, 2012 through May of 2017.

7  MR. SPERLING:  That's correct.

8  SPECIAL MASTER RODRIGUEZ:  I believe that

9  information is directly relevant to the seminal issues in

10 this case, both the plaintiffs' claims, as well as the

11 defendant's affirmative defense.

12 Yes, defendants have agreed to a

13 stipulation that they did not terminate, and that is

14 helpful.  But it does not obviate plaintiffs' need to

15 probe how that policy -- how Charter's policies were

16 actually implemented and what went into that.

17 This seems to be a reasonable request to

18 understand the number of notices that were received in

19 each month during the relevant time period, as well as

20 the actions that were taken with regard to those notices.

21 This is distinct from the issue that we

22 talked about on Friday, where we were comparing

23 apples-to-apples, and it was a matter of melding the

24 spreadsheets to see where the overlap existed.  This is

25 a -- is an order of magnitude different inasmuch as

Page 44

defendants are in a much better position to be able to
provide that information without additional significant
burden.

So my order would be that the plaintiffs
are entitled to this information, that defendants provide
the number of notices for each month and the actions that
were taken.

All right.

MS. GOLINVEAUX:  Thank you, Ms. Rodriguez.
We understand and we would ask that you reconsider your
ruling on the Rightscorp request, that narrowly focused
Rightscorp request we served since most of this data will
relate to Rightscorp notices.

SPECIAL MASTER RODRIGUEZ:  I think that is
a fair question because we raised on Friday the fact that
these things were intertwined.  So I will go back,
similar to Request for Production 55, and rereview this
issue in a --

MS. GOLINVEAUX:  Thank you.

SPECIAL MASTER RODRIGUEZ:  -- limited way.

MS. GOLINVEAUX:  Thank you.

MR. OPPENHEIM:  Ms. Rodriguez --

SPECIAL MASTER RODRIGUEZ:  All right.

MR. OPPENHEIM:  I'm sorry.  I didn't mean
to interrupt.

1    May I just make a point on that so that
2 there's some -- it wasn't worth going into on Friday
3 because we put the issue off, but there's got to be some
4 clarification here --
5          SPECIAL MASTER RODRIGUEZ:  Is this
6 Mr. Oppenheim?
7          MR. OPPENHEIM:  I apologize.  Yes, it is.
8 So --
9          SPECIAL MASTER RODRIGUEZ:  Okay.
10         MR. OPPENHEIM:  Rightscorp -- and I don't
11 think I'm saying anything that Charter's counsel doesn't
12 know.
13         Rightscorp had a -- they did a variety of
14 different types of notices, and one of the types of
15 notices that they did was very different than what, say,
16 MarkMonitor did.
17         Their notice was a notice where they
18 included a settlement offer to go to the underlying
19 infringer, so the email would go to the ISP and say:
20 We -- you know, we identified your subscriber at this IP
21 address infringing.  Please forward this notice to them
22 and include this link, which will allow your subscriber
23 to settle their claim -- the infringement claim against
24 them.
25         Now, the -- what happened is that

1 Rightscorp came to some of the plaintiffs and -- to
2 propose this business model, and there's a -- there's a
3 lot of internal emails about this idea of settling claims
4 in notices.
5          Charter is trying to bring that entire
6 side issue, which has nothing to do with this case, into
7 the case.  And so if you're going to consider this, we
8 need to have a more developed briefing on it than just,
9 what was the discussion on Rightscorp and -- and should
10 the notices -- should the plaintiff -- the -- excuse me,
11 should Charter be allowed to get discovery into all of
12 that, having nothing to do with this.
13         Charter has not produced any evidence to
14 indicate that it cared who sent a notice, not a single
15 document.  So before plaintiffs be asked to open their
16 files on all of those discussions -- which they rejected,
17 right? -- Charter should have to come forward and show
18 that it mattered to Charter at the time.
19         MS. GOLINVEAUX:  Ms. Rodriguez --
20         MR. ELKIN:  Ms. Rodriguez, Mr. Elkin here.
21 I --
22         SPECIAL MASTER RODRIGUEZ:  Well, listen --
23 let's not rehash this ground.  As I indicated last week,
24 it's my understanding that what we're looking at here is
25 what was in the mind of Charter, and what is relevant in

1 terms of Charter's knowledge, its policies, what it did,
2 how it did it, and why it did it.
3          So to the extent that that is the issue, I
4 will go back and look at it, but I don't think we need
5 to -- to ratchet this out again on those issues.  We had
6 a very fruitful discussion on this issue on Friday.  If I
7 have specific questions, I will reach out to you to
8 discuss those further.
9          MR. OPPENHEIM:  Very well.  Thank you.
10         MR. ELKIN:  Ms. Rodriguez, it's Mr. --
11 Ms. Rodriguez, it's Mr. Elkin here.
12         Very briefly, because I do think you could
13 decide this without additional briefing, but I -- what I
14 would suggest is that the point that Mr. Oppenheim made
15 regarding Rightscorp and the internal communications
16 misses the point.
17         The concerns that relate to Rightscorp is
18 not simply whether or not there was a settlement offer
19 contained in the notices, but the unsavory practices of
20 Rightscorp.  They would send notices completely
21 indiscriminately and overstuffed the ISP's mailboxes.
22         And what -- one of the things that you
23 heard from Ms. Golinveaux earlier is the fact there's a
24 disproportionate number of Rightscorp notices and
25 information now related to responded to it without a

1 concomitant set of discrete evidence that can be pulled
2 from the plaintiffs in terms of their interactions with
3 Rightscorp.
4          So it's far beyond the settlement issue.
5 It had to do with a lot of practices, including the
6 sending notices of -- in batch without the kind of
7 diligence that other notice senders may send.  And I'm
8 not trying to ascribe any credibility to MarkMonitor or
9 any other system.  Rightscorp obviously is a service unto
10 itself.
11         SPECIAL MASTER RODRIGUEZ:  Okay.
12 Understood.
13         All right.  That deals with
14 Interrogatories 13 and -- and 14.
15         Plaintiffs have also requested that
16 Charter be ordered to produce documents concerning its
17 practices for responding to copyright infringement.
18 Again, pursuant to our earlier discussions, it does seem
19 that the practices are directly applicable.
20         Judge Hegarty ordered that drafts would
21 not be relevant for policies -- but policies -- sorry.
22 Judge Hegarty ordered that drafts would be relevant, but
23 policies proposed or rejected can be very relevant.
24         The representations that there were no
25 terminations for repeat infringement raises questions

1  which plaintiffs are entitled to probe, again, in light
2  of the policies set forth by Charter.
3              With regard to Request for Production 37,
4  plaintiffs, what is your position on this one?
5              MR. SPERLING:  Good afternoon,
6  Ms. Rodriguez.  It's Jonathan Sperling.
7              So with respect to 37, exactly as you
8  said, we're focused on practices here.  And it's critical
9  to be able to actually see the emails and other documents
10 that account for the discrepancy between the policy that
11 they had and what they did in practice, and it's critical
12 to be able to see what was Charter saying internally to
13 each other about what their practices would be?
14             For example, you know, we mentioned in our
15 letter, a hypothetical email saying:  Ignore the written
16 policy.  Infringing subscribers are too lucrative for us
17 to terminate.  And that will be captured by this request.
18             Their position would result in that
19 document, that email not being discoverable.  They don't
20 dispute that in their letter.  We're entitled to see
21 their emails discussing what makes someone a repeat
22 infringer.
23             So, as I'm sure you saw in our papers,
24 their policy, their acceptable use policy that they make
25 available to their subscribers and that their subscribers

1  are bound by, says if Charter receives more than one
2  notice alleging copyright infringement on the customer's
3  part, customer may be deemed a, open quote, repeat
4  copyright infringer, quote closed.  Charter reserves the
5  right to terminate the account and access to the service
6  of repeat copyright infringers.
7              In this case, they've taken the position
8  that their policy was that to be terminated, one has to
9  be an adjudicated repeat infringer.  So whereas the
10 policy says, if you -- if they receive multiple notices
11 alleging infringement by a customer, the customer may be
12 deemed a repeat infringer.
13             Now in litigation they say:  Oh, no,
14 somebody's only a repeat infringer if a court has
15 adjudicated, actually entered a judgment saying that
16 that individual has infringed more than one time.
17             So we're certainly entitled to documents
18 reflecting their discussion of what makes someone a
19 repeat infringer.  You know, did they, in fact, say to
20 each other that they were going to take the position that
21 Charter is now advancing in the litigation and not apply
22 the policy as written?
23             In determining whether somebody met even
24 the definition of repeat infringer now, did they check,
25 did they actually make such a determination, or is that

1  just a litigation position that's being advanced by
2  Winston?
3              What documents reflect their decision not
4  to terminate even when multiple notices were received,
5  notwithstanding the terms of the written policy?
6              In addition, there will be documents
7  concerning Charter's practices beyond termination.  You
8  know, did they do anything, for example, to address
9  notices of repeat infringement by a particular
10 subscriber?
11             There are things that an ISP can do,
12 Ms. Rodriguez, short of termination.  They can suspend
13 the account.  They can engage in what's called
14 throttling, where they essentially reduce the bandwidth
15 available to that subscriber so it interferes with their
16 use of their account to engage in massive downloading of
17 large files.
18             So all of those documents, essentially the
19 narrative story describing what they did, what they were
20 saying about their practices, and how they deviated from
21 the policy, that's what's sought here.
22             And in their response, I think all that
23 Charter says is that -- actually, I take that back.
24 Withdrawn, confused on another issue.
25             But that's the essence of what we're

1  seeking, Ms. Rodriguez.  As you said, I think it's
2  clearly relevant, and so we would ask that they be
3  required to produce those documents.
4              SPECIAL MASTER RODRIGUEZ:  Okay.
5              Counsel for Charter, it does appear that
6  both -- or, actually, all three requests, 37, 56, and 61,
7  go to what Charter did in response to notices and what
8  their actions were, which seems to be critical in this
9  case.
10             So first of all, let me say with regard to
11 the drafts that Judge Hegarty has already ruled on, I'm
12 not going to revisit that.  Drafts would not be relevant
13 here.
14             But with regard to discussions, emails,
15 other documents directly discussing the infringement
16 policies and how Charter handled particular notices of
17 infringement, that does seem relevant.
18             Can you please tell me what your objection
19 is on that basis?
20             MS. RANAHAN:  Sure.  Thank you.  This is
21 Erin Ranahan.
22             I'm actually surprised this keeps coming
23 up because we have produced extensive information about
24 policies and practices and form communications.  We have
25 produced 30 separate documents, we've produced job aids,

Page 53

1   ticket job aids, scripting guidelines, notice job aids,
2   DMCA postcards, all sorts of things that go to our
3   policies and procedures in accordance with exactly what
4   Judge Hegarty already ordered on this.
5           And we have also produced all sorts of
6   form communications about how we responded to that form,
7   DMCA cover letters, customer letters.  And we've searched
8   for -- I think what the disconnect is, is that
9   plaintiffs -- because they've litigated the Cox case and
10  there was a lot of communications about terminations and
11  when to terminate someone -- here, because Charter's
12  policy was not to terminate, there just are not those
13  internal communications haggling about a policy because
14  there was nothing to internally discuss.
15          So we searched for this.  Judge --
16  we've -- in line with what Judge Hegarty ordered.  We've
17  produced what we've been able to locate.  We're now in
18  talks with discussing search terms.  And to the extent,
19  you know, we find more as we broaden our searches, as
20  we've already agreed to do -- we're going back and forth
21  with plaintiffs now -- we'll certainly produce anything
22  else we locate that would be responsive to this.
23          So we are not -- we have not -- we have
24  produced extensive information on this front, and we have
25  not tried to hold back anything.  This has been something

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 54

1   that we've --
2           SPECIAL MASTER RODRIGUEZ:  Okay.
3           MS. RANAHAN:  -- you know . . .
4           SPECIAL MASTER RODRIGUEZ:  Well, it does
5   seem to me that the plaintiffs are entitled to a
6   definitive answer on this, because obviously what
7   everybody is working towards is they want to know what is
8   the evidence that's going to be admitted against them at
9   trial.
10          So with regard to RFP 37, again, I'm not
11  going to order drafts, but with regard to documents or
12  memos discussing infringement policies, I hear you
13  saying, Ms. Ranahan, that those documents have been
14  searched for and that they do not exist.  Is that
15  correct?
16          MS. RANAHAN:  We have not been able to
17  locate them thus far.  If we locate them upon our
18  broadened searches, we will produce them, unless they're
19  privileged, in which case we'll log them.
20          But I think that the -- the disconnect,
21  again, is them expecting to have some of the same types
22  of communications in Cox, but those, again, are companies
23  with very different policies.  So there are not
24  just this --
25          SPECIAL MASTER RODRIGUEZ:  Well,

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 55

1   certainly -- certainly it makes sense that the companies
2   have different policies.  I think the question, though,
3   is:  Have these documents been searched for, and are you
4   representing that they -- that they don't exist?
5           MS. RANAHAN:  We've searched for them, and
6   I have not found -- we have not found them so far.  But
7   what I am representing is, to the extent different
8   documents are captured by broader searches, we will --
9   we're not holding them back.
10          MR. SPERLING:  Ms. Rodriguez --
11          MS. GOLINVEAUX:  Ms. Rodriguez, I think
12  because we are in the midst -- this is Jennifer
13  Golinveaux.  Because we're in the midst of negotiating
14  broader search terms with the plaintiffs, I think
15  Ms. Ranahan is rightly just saying that if additional
16  documents come to light in light of the new search terms,
17  we, of course, would produce them.
18          SPECIAL MASTER RODRIGUEZ:  All right.
19  Understood --
20          MR. SPERLING:  So Ms. Rodriguez, it's --
21          SPECIAL MASTER RODRIGUEZ:  -- so --
22          MR. SPERLING:  It's Mr. Sperling.  I just
23  want to be clear.
24          Nobody's asking them to produce a document
25  that doesn't exist.  They refused to produce documents in

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 56

1   response to these requests.  So what -- we want an order
2   that says, with the exception of the draft policies,
3   exactly as you said, Ms. Rodriguez, that they have to
4   produce what's responsive.  If that turns out to be a
5   null set, so be it.
6           But what I want to make sure we're
7   avoiding is a situation in which we serve the request.
8   They oppose.  We have to move to compel on it.  They make
9   a representation, We don't have them.  And we walk away
10  with their objection being sustained as opposed to there
11  being an order that they must respond and produce
12  whatever documents they do have responsive to these
13  requests.
14          SPECIAL MASTER RODRIGUEZ:  So I
15  understand, and what Ms. Rodriguez is representing is that
16  they are responding to this interrogatory and that they
17  have not found any such documents, but if they do, those
18  will be produced.
19          MR. SPERLING:  But we have -- it's
20  Mr. Sperling again.  We have no search terms from them
21  that they have offered to apply in connection with these
22  requests.
23          SPECIAL MASTER RODRIGUEZ:  Oh, I'm sorry.
24  I thought Ms. Ranahan represented that you all were
25  discussing additional search terms that were broader.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 57

1    MR. SPERLING:  Well, in connection with
2  the requests overall, we are discussing search terms.
3  And in connection with these RFPs, because they have
4  refused to respond and they gave us a blanket objection,
5  they have not agreed to any search terms at all.
6    SPECIAL MASTER RODRIGUEZ:  Well, I'm
7  trying to understand, have the plaintiffs -- or, sorry,
8  have the defendants responded or not responded to those
9  interrogatories?
10    (Simultaneous crosstalk.)
11    MS. RANAHAN:  Sorry, this is Erin Ranahan
12  again.
13    This is RFP 37, right?  And so we had an
14  order from Judge Hegarty to, you know, provide the
15  relevant communications on this, which we have -- which
16  we complied with.
17    And what I'm saying now is we're expanding
18  search terms much more broadly, and whether or not
19  they've been linked up to a request or not, we -- they
20  have set -- the way they're referring to these terms now,
21  I would think if there's anything we missed, it would be
22  captured by our new search parameters.
23    So I don't know what Mr. Sperling is
24  discussing, but things like connecting -- and we don't
25  have to get into the search terms now -- but infringe

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 58

1  within so many -- or terminate or suspense would
2  conceivably also hit this.  So I'm not sure if it's
3  because the word "policy" or something isn't included,
4  but --
5    So I think maybe this would be a more
6  appropriate discussion after we raise our search term
7  disputes with you, which I know we're planning to do
8  within the next couple weeks as, like, a separate issue.
9    MR. SPERLING:  Sorry, Ms. Rodriguez.
10  It's --
11    SPECIAL MASTER RODRIGUEZ:  So with regard
12  to --
13    MR. SPERLING:  -- Mr. Sperling.  I'm
14  sorry.  This is --
15    SPECIAL MASTER RODRIGUEZ:  -- RFP 37 --
16    MR. SPERLING:  -- this is --
17    SPECIAL MASTER RODRIGUEZ:  -- documents
18  concerning all policies, practices, or capabilities that
19  you considered, formulated, rejected, or adopted for
20  taking adverse action, including suspending or
21  terminating Internet service against subscribers or users
22  for alleged copyright infringement.
23    Charter is required to produce all such
24  documents consistent with Judge Hegarty's ruling.  That
25  does not include drafts, which he ruled were not

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 59

1  relevant.  However, the remaining documents related to
2  the policies, practices, or capabilities considered,
3  formulated, rejected, or adopted for taking adverse
4  action, which would include communications relating to
5  proposed policies, should be pursued pursuant to RFP 37.
6  If they do not exist, then defendants will so state they
7  do not exist.
8    All right.  RFP 56 seeks records or logs
9  of calls or documents discussing the contents of any
10  calls.
11    Again, this goes directly to what Charter
12  did or did not do in response to calls from subscribers.
13  As I understand, this response that Charter has provided
14  to date is that it has provided scripts for the calls.
15  It seems to me that this request is broader than simply
16  scripts, but those additionally to the work logs.
17    Counsel for Charter, can you please
18  explain your objection and --
19    MS. GOLINVEAUX:  Yes.
20    SPECIAL MASTER RODRIGUEZ:  -- what it is
21  that you're arguing here?
22    Yes.  Thank you.
23    MS. GOLINVEAUX:  Sure.  It's Jennifer
24  Golinveaux.
25    With respect to Request 56, plaintiffs are

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 60

1  seeking all the -- as you know, all the work logs, notes
2  in CATS, and they argue that this would -- it's relevant
3  because it would show what Charter actually did in
4  response to plaintiffs' notices.  But Charter has already
5  produced all the ticket data showing exactly what action
6  it took in response to each of plaintiffs' notices.
7    So to -- to go beyond that and look out
8  for these work log notes that contain the specific
9  processing information would be incredibly burdensome, as
10  we state, because it includes -- each one is laden with
11  PII, including the name, address, and email of the
12  subscriber, so they would have to be individually
13  redacted.
14    And plaintiffs aren't just seeking them
15  with respect to their own notices, Ms. Rodriguez.
16  They've sought them with respect to any notices that came
17  in to the folks who got their notices, so the so-called
18  accused or the -- so-called accused or they call them the
19  infringing subscribers.
20    And that, again, would implicate millions
21  of third-party notices sent to the subscribers who got
22  the RIAA notices, and they have no relevant and certainly
23  no proportional relevance to justify that burden as to --
24  to non-RIAA notices.
25    SPECIAL MASTER RODRIGUEZ:  Ms. Golinveaux,

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1 have defendants produced the logs with regard to the
2 plaintiffs?
3          MS. GOLINVEAUX:  With regard to the
4 plaintiffs' notices?
5          SPECIAL MASTER RODRIGUEZ:  Yes.
6          MS. GOLINVEAUX:  We -- no, we have not
7 produced the work logs for the plaintiffs' notices.
8 We've produced the ticket data showing when they came in
9 and what Charter did in terms of the correspondence
10 with -- the data points with respect to forwarding it to
11 the subscribers, et cetera, but not separately the work
12 log notes, in particular because they are -- they are
13 laden with this PII.
14          SPECIAL MASTER RODRIGUEZ:  And explain for
15 me what the work log is distinct from the ticket data.
16          MS. GOLINVEAUX:  Right.
17          SPECIAL MASTER RODRIGUEZ:  I understand
18 you to be saying that the work logs do, in fact, contain
19 information that's different than what's in the ticket
20 data; is that right?
21          MS. GOLINVEAUX:  They -- I think it's
22 both.  I think the work log notes were -- for
23 plaintiffs -- with respect to plaintiffs' notices would
24 show the same data that the plaintiffs are already
25 getting from the ticket data:  When the notice came in,

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

---

1 when Charter forwarded it on to the subscriber.  But they
2 could contain additional information.  For example, if
3 the -- if the subscriber called in or the like.  So that
4 is true.
5          SPECIAL MASTER RODRIGUEZ:  All right.
6          Plaintiffs' counsel, would you like to
7 respond?
8          MR. SPERLING:  Yes, Ms. Rodriguez.  It's
9 Mr. Sperling again for plaintiffs.
10          So as Ms. Golinveaux just acknowledged,
11 the work logs can contain additional info, and that's
12 exactly what we're after.
13          And I want to be clear.  When she says we
14 already have the ticket data, as you know, we have the
15 ticket data for very, very few notices.  We don't have
16 the ticket data for, you know, anywhere near all the
17 notices that we sent, let alone for others.
18          The sum total of what the ticket data says
19 about Charter's responses to notices is any one of four
20 entries.  They either say email warning, P.C. warning,
21 batched, or email and P.C. warning.  That's -- that's the
22 information that we have.
23          What the work logs are going to show are,
24 you know, the notes that were made by the customer
25 service agent who interacted with the customer.  And so

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

---

Page 63

1 that's obviously, you know, much more granular and
2 detailed and colorful in its texture.  And so, you know,
3 we're clearly entitled to see what they were saying with
4 respect to that.
5          Now, with respect to burden, the
6 information is in the database.  They queried the
7 database before to extract the ticket data that they did
8 provide to us.  They chose to omit this information
9 rather than include it when they pulled for the database
10 before.
11          All they have to do now is pull this
12 information from the database.  It's not a burden.  It's
13 a database pull.  Nobody has to track down documents.
14 There aren't searches.  You know, nobody has to collect
15 emails.  It's just a database download.
16          Now, finally, with respect to PII, the
17 first time that Charter raised that issue as a reason not
18 to provide the work logs was in their response to our
19 letter, so their May 13 letter.  They had never
20 identified that as an issue to us before, and so we have
21 no idea what the nature of the PII is.  But they're
22 claiming that's there.
23          Is that information always there?  Is it
24 only possible that it's there?  And without, at a
25 minimum, some sort of elaboration as to the nature of the

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

---

Page 64

1 PII and the frequency with which it's there, that's not a
2 legitimate basis, just to sort of say:  We'll stop -- you
3 know, we don't have to tell you anything about the
4 contents here because we're going to represent that
5 there's PII in there.
6          SPECIAL MASTER RODRIGUEZ:  Okay.
7          So, Ms. Golinveaux, can you tell us what
8 is the nature of the PII, and as Mr. Sperling said, is it
9 in each?  Is it necessarily there?  And what exactly is
10 the level of burden that would be involved in extracting
11 that information or redacting?
12          MS. GOLINVEAUX:  Sure.  Sure.  I'll
13 address that.
14          So, first, Mr. Sperling and Mr. Oppenheim
15 keep saying, "We don't have all the information yet
16 because they only gave us limited ticket data."  But just
17 to be clear, they're only going to get work log notes
18 with respect to the ticket data we've already provided.
19 We -- we've mined all the ticket data that Charter has,
20 so it's not like there's additional work log notes that
21 are -- you know, go beyond that body of ticket data.
22          With respect to the specific PII, there
23 are fields within the work log notes that contain
24 individual names, addresses, and emails.  There are more
25 than -- there are -- I think there are 38,000 ticket data

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1   entries for plaintiffs' notices, so those would have to
2   be individually gone through.  I can't, sitting here
3   today -- we have -- I can't, sitting here today, tell you
4   that those -- the PII shows up in each and every one of
5   those 38,000, but it's likely to be in many of them.  And
6   they would have to be individually reviewed and redacted
7   for that reason.
8                SPECIAL MASTER RODRIGUEZ:  So it's not
9   just a field that you can hide that would contain the
10  PII?
11               MS. GOLINVEAUX:  We looked into that
12  because -- but because -- and I'm -- the technical aspect
13  is a little bit beyond me -- but because of the raw text
14  format in which these records are retained, you can't
15  instruct a special to just redact out a particular field
16  or hide a particular field.  It would have to be more of
17  an individualized process.
18               SPECIAL MASTER RODRIGUEZ:  Okay.  All
19  right.
20               Well, given that there is a difference in
21  the data that's contained in the ticket data as opposed
22  to these logs and this information goes directly to the
23  issues at the heart of this case, it is appropriate that
24  the defendants produce the log entries.
25               However, I think that the request for all

1   notices and all log entries is overbroad at this stage
2   and that, at this point, we would limit that to the data
3   with regard to the plaintiff, which Ms. Golinveaux
4   represents is about 38,000 entries.
5                That should provide the plaintiffs with
6   sufficient data to understand and determine whether there
7   are patterns, issues, information with regard to
8   Charter's responses to notices without going into the
9   many millions of potential notices that may exist.
10               MR. SPERLING:  Ms. Rodriguez --
11               SPECIAL MASTER RODRIGUEZ:  All right.
12               MR. SPERLING:  -- Mr. Sperling.  We
13  understand that limitation.  Let me propose one other
14  sort of category for your consideration.
15               Obviously, the key issue here is what
16  Charter did with repeat subscriber -- repeat infringers,
17  subscribers where they had received multiple notices.
18  And so I totally understand your view with respect to just
19  getting a look on this to all.
20               But we would strongly request, in addition
21  to getting the notices -- excuse me, the work logs with
22  respect to plaintiffs' notices, that we also get the work
23  logs with respect to any subscriber that had been the
24  subject of three or more notices.
25               Because what's being said to somebody

1   after they've gotten multiple notices about them is
2   really, really critical.  And to carve that off would
3   really inhibit and limit our ability to explore and be
4   able to tell the jury the story about, what was Charter
5   actually doing when it knew that its subscriber was
6   engaging in repeat infringement?
7                Did Charter, for example, say to them,
8   "Listen, we know you keep doing it, but we're going
9   to cut you off and we're really never going to cut you
10  off."
11               Did they say to them something else?  What
12  did they do?  What notes did they make?  What were they
13  saying to the subscribers or to themselves when they were
14  confronted head-on with evidence of repeat infringement?
15               That's so critical to this case.  And so,
16  again, with complete understanding that you don't want to
17  have this include work logs for every single notice, we
18  would really request that you expand it to include, not
19  just the notices received from plaintiffs, but notices
20  for any subscribers who were the subject of three or more
21  notices.
22               MS. GOLINVEAUX:  Ms. Rodriguez, it's --
23  well, I'm sorry.  Go ahead.
24               SPECIAL MASTER RODRIGUEZ:  What is -- as I
25  understand the number of notices under Charter's policy,

1   what is that number to define a repeat infringer?
2                MR. SPERLING:  So what they are --
3                MS. GOLINVEAUX:  The repeated --
4                MR. SPERLING:  -- it's Mr. Sperling again.
5   What their policy says --
6                MS. GOLINVEAUX:  I'm sorry, were you
7   asking me or Mr. Sperling?
8                SPECIAL MASTER RODRIGUEZ:  Yeah, yeah.
9   Well, let me -- let me let Charter's counsel tell me what
10  Charter's policy is.
11               MS. GOLINVEAUX:  What Mr. Sperling is
12  referring to, again, Ms. Rodriguez, is the DMCA's
13  precondition that there's a policy for terminating repeat
14  infringers in appropriate circumstances, and Charter did
15  not terminate subscribers based merely on the face as set
16  forth in the notices.
17               So the ticket data he's asking for isn't
18  going to provide any -- it's not going to be probative on
19  that issue because it did not terminate --
20               SPECIAL MASTER RODRIGUEZ:  Well --
21               MS. GOLINVEAUX:  -- in response to
22  notices.  And this --
23               SPECIAL MASTER RODRIGUEZ:  I understand
24  that, but --
25               MS. GOLINVEAUX:  Yes.

Page 69

1    SPECIAL MASTER RODRIGUEZ:  I'm sorry.  I'm
2  sorry to interrupt you.
3         But you want to give an answer to my
4  question, which was:  Charter had its own policy, as I
5  understand it.
6         MS. GOLINVEAUX:  Right.
7         SPECIAL MASTER RODRIGUEZ:  And under that
8  policy, it indicated that a subscriber could be
9  terminated for infringement if they received X number of
10  notices.
11        My recollection was that it was one, but
12  I'm asking you, Ms. Golinveaux, to help refresh my
13  recollection.  What is the number?  Or am I recalling
14  this policy incorrectly?
15        MS. GOLINVEAUX:  Yeah.  The policy
16  absolutely does say that Charter reserves the right to
17  terminate repeat infringers.  But what I was trying to
18  articulate, not very artfully, is that it did not
19  terminate subscribers based purely on receiving notices,
20  that there would have to be something else that kicked in
21  in a claims period to -- to justify termination.  So it
22  wouldn't be --
23        SPECIAL MASTER RODRIGUEZ:  All right.
24        MS. GOLINVEAUX:  -- relevant to the ticket
25  data.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 70

1    SPECIAL MASTER RODRIGUEZ:  All right.
2         (Simultaneous crosstalk.)
3         SPECIAL MASTER RODRIGUEZ:  I think I've
4  got it.
5         MS. GOLINVEAUX:  If I could just say, what
6  Mr. Sperling is proposing now was nowhere in their
7  briefs, so we have never even inquired with our clients
8  with respect to the burden on what he's now asking for,
9  which could implicate an unknown number of notices.
10        So if they're now switching course and
11  asking for some different relief that they didn't brief,
12  I think we should be entitled to present some burden
13  arguments on that in a declaration, if you're inclined
14  to --
15        SPECIAL MASTER RODRIGUEZ:  Well, they
16  have.  They have made the request for logs, for all
17  infringe -- infringing notices -- sorry, for all notices
18  of infringement.
19        I'm not necessarily inclined to provide
20  that or to require you to provide that, but I do think
21  that some subset is appropriate.  Certainly those with
22  regard to the plaintiffs is appropriate, and certainly
23  some number with regard to repeat infringers is
24  appropriate.
25        So do you have a counterproposal or

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 71

1  thoughts on that particular issue?
2         MS. GOLINVEAUX:  Well, their motion was
3  specific to, quote/unqute, infringing subscribers, which
4  they defined in their own request for production as
5  subscribers who received notices.  So -- so that would
6  mean records with respect to any third-party notice that
7  came in to folks who got RIAA notices.
8         So if you're going -- if he's going -- so
9  that's probably defined it in -- in their own request.
10  So if he's going to propose something with respect to
11  folks who got more than one, it should certainly be
12  limited to that set of, quote/unqute, infringing
13  subscribers who got the RIAA notices.
14        SPECIAL MASTER RODRIGUEZ:  All right.  So
15  what I'm going to order now is that the plaintiffs --
16  sorry, that Charter needs to provide responses with
17  regard to the call logs, the worker call logs for the
18  infringing subscribers identified in plaintiffs' notices.
19  That would be all notices for the plaintiffs.
20        The parties are instructed to meet and
21  confer with regard to what would be an appropriate
22  number, whether it's three or four -- whatever the number
23  is the parties can agree to -- in terms of repeat
24  infringers that defendant would also search for and would
25  provide the logs.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 72

1         MR. SPERLING:  Thanks, Ms. Rodriguez.
2  It's Jonathan Sperling for the plaintiffs.
3         I just wanted to make sure you got an
4  answer to your question because it wasn't a complicated
5  question, and a simple question ought to get a simple
6  answer.  So it's in Exhibit 4 to our motion on the first
7  page, what their policy was, and I'm reading to you
8  directly from it.
9         If Charter receives more than one notice
10  alleging copyright infringement on the customer's part,
11  customer may be deemed a, open quote, repeat copyright
12  infringer, closed quote.
13        So the answer to your question,
14  Ms. Rodriguez, was more than one.
15        SPECIAL MASTER RODRIGUEZ:  All right.
16        With regard to RFP 61, seeking documents
17  distinguishing Charter's treatment of copyright
18  infringement notices from its treatment of other
19  acceptable use policy violations.
20        Charter, do you want to address this one
21  in the first instances?
22        MS. GOLINVEAUX:  Thank you, Ms. Rodriguez.
23  It's Jennifer Golinveaux.
24        So as we note in our opposition, we
25  already produced a detailed document called Abuse and

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  Vulnerability Process Playbook, which details how Charter
2  responds to various AUP violations, including whether
3  they be fishing or DDos attacks or copyright infringement
4  or spam.  So they already have that.
5          To companion that, what they've already
6  got, with this extremely broad request for production
7  that seeks all documents or communications in any way
8  comparing how Charter responded to copyright with other
9  violations, is overbroad, overly burdensome, and not
10  proportional.
11          SPECIAL MASTER RODRIGUEZ:  Is it
12  Mr. Sperling that's going to respond?
13          MR. SPERLING:  It is.  You guessed well,
14  Ms. Rodriguez.
15          So, look, it's clearly relevant, right?
16  The point is to conduct a comparison.  And in the same
17  way that it's important to see what they were saying
18  internally about how they would respond to notice of
19  repeat infringer by their subscribers, it's important to
20  be able to compare that to what they said about how they
21  would respond to other kinds of violations of their
22  acceptable use policy; and to be able, when we tell the
23  story to the jury, to show the jury:  Look, this is what
24  they did when they were confronted with violations of the
25  acceptable use policy that impacted their pocketbook.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  They were very rigid, they were very strict, they
2  enforced that policy as written.  Unlike what they did
3  when it came to violations with the acceptable use policy
4  that impacted plaintiffs' pocketbook because their
5  subscribers were stealing from plaintiffs by infringing
6  their copyrights.  Even though Charter knew it, there, by
7  contrast, Charter chose to take a light touch and not to
8  enforce acceptable use policy as written.
9          We're entitled to tell that story.  I'm
10  sure Charter has many things that they plan to tell the
11  jury to refute or rebut that story, but we're entitled to
12  the discovery that allows us to tell that story and to
13  show that Charter chose to treat violations of copyright
14  infringement of the copyright laws differently than they
15  treated other violations with the acceptable use policy.
16          And it goes to Charter's wilfulness, it
17  goes to its internal contribution to subscribers'
18  infringing activity, it goes to its right and ability to
19  control its subscribers' infringing activity when they --
20  when you can see that they were prepared to cut off
21  subscribers for other kinds of violations, but chose not
22  to cut off subscribers for these kinds of violations, et
23  cetera.
24          In short, it's clearly relevant for the
25  same reason that the other documents that you've already

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  ordered to be produced are relevant.
2          SPECIAL MASTER RODRIGUEZ:  Would a similar
3  process to what you've proposed in RFP 37 suffice to meet
4  your needs?  That is, rather than seeking every document
5  related to this issue, to provide numbers of actions and
6  what actions were taken with regard to the particular
7  type of policy violations?
8          MR. SPERLING:  So that's certainly part of
9  the story, Ms. Rodriguez.  But it's incomplete because it
10  doesn't provide the color and texture of narrative
11  emails.  So we certainly want the information that you're
12  describing, but respectfully think we're also entitled to
13  the narrative documents, where they're actually
14  discussing in their own words how they're treating one
15  kind of violation differently than another kind of
16  violation.
17          SPECIAL MASTER RODRIGUEZ:  And do we have
18  evidence to indicate that there were actually actions
19  taken for these different types of policy violations?
20  That is, are we talking about potentially another null
21  set here, or do we know that actions were taken?
22          MR. SPERLING:  We don't know what actions
23  were taken, other than we certainly know that they
24  terminated subscribers for nonpayment.  But in terms of
25  violations of DP's playbook, we don't know what actions

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  that they took, and so we need this discovery in order to
2  find that out.
3          MS. GOLINVEAUX:  No, that's not accurate.
4  The Abuse and Vulnerability Process Playbook walks
5  through each of these violations of the AUP one at a time
6  and provides some detailed information about them.
7          And I have to say, Mr. Sperling's
8  characterization of other violations like fishing and
9  DDos attacks and spam as ones that would just hit
10  Charter's pocketbook and that's why they would be
11  interested in dealing with them, that is -- that is --
12  I'm a little bit at a loss for words for that.
13          Those are issues, very serious issues that
14  affect each and every one of us as subscribers to an ISP
15  that are taken seriously, and they have exactly what they
16  need from the playbook.  It's a very detailed playbook.
17          We were -- we produced it in the interest
18  of being very -- you know, to providing them that
19  information even though they hadn't served a specific
20  request on these other violations that they're not
21  relevant.
22          And for now to do some kind of, you know,
23  broad email search for every time anyone discussed any
24  comparison is really above and beyond what's appropriate
25  and proportional here.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1    MR. SPERLING:  So just --

2    SPECIAL MASTER RODRIGUEZ:  Well --

3    MR. SPERLING:  -- really briefly,

4  Ms. Rodriguez.

5    In the Cox case, in which we didn't

6  participate -- and you and I have that among other things

7  in common -- but we do know that these kinds of actions

8  were produced in Cox, and there were huge variations.

9  And telling us that they have some sort of playbook or

10  policy book doesn't tell us what they actually did in

11  practice and doesn't tell us what they were saying about

12  it.

13    MS. GOLINVEAUX:  I don't think he's

14  accurate about that.

15    SPECIAL MASTER RODRIGUEZ:  Okay.  Well,

16  here's what -- the production of the playbook, I agree,

17  doesn't necessarily tell us whether or not Charter played

18  by the playbook and followed its own policy, which seems

19  to me to be at the heart of this case:  What did Charter

20  do, why, when, et cetera, and did Charter follow its own

21  policies and procedures?

22    Nonetheless, I -- I do recognize that it

23  is quite voluminous to produce every single

24  communication.

25    So what I would order here is that Charter

---

1  should produce documents showing its action, so the

2  actual action for a finding of abuse.

3    Charter, how does this -- how is this

4  information maintained?

5    MS. GOLINVEAUX:  You mean actions taken

6  going beyond the playbook, specific actions by category

7  with respect to different abuse violations?

8    SPECIAL MASTER RODRIGUEZ:  Right.  Do you

9  keep spread -- are there spreadsheets that relate to

10  this?  How is the information maintained in the normal

11  course of business?  There has to be some sort of

12  record --

13    MS. GOLINVEAUX:  Yeah.

14    SPECIAL MASTER RODRIGUEZ:  -- that is --

15  an abuse, for example, hacking was reported.  There would

16  have to be somewhere it indicates that the hacking was

17  reported, notice went to the alleged violator, and then

18  whatever action Charter took.

19    Is that also in the logs that we discussed

20  or is that someplace else?

21    MS. GOLINVEAUX:  Well, responsive to

22  particular notices on abuses would be within -- I assume

23  within the CATS ticket data.  But I would have to -- I

24  can go back and -- and query the client.  I, frankly,

25  don't know what documents beyond the playbook might

---

1  detail the actions specific to different categories of

2  abuse.  I could look into that.

3    SPECIAL MASTER RODRIGUEZ:  Yeah.  And I

4  understand that the playbook specifies what actions would

5  be taken under Charter's policies.  However, what I'm

6  asking is, where would information related to what action

7  actually was taken stored, whether that's in CATS or

8  elsewhere?  Is it the logs?  Is it something else?

9    MS. GOLINVEAUX:  Right.  I, frankly, would

10  have to go to the client about that.  It's not a -- it's

11  not something we have ever needed to look into in either

12  this case or the Cox case, so I'm just not sure.

13    SPECIAL MASTER RODRIGUEZ:  Okay.  Well,

14  fair enough.  If you could let us know.  If you would

15  send a response to me next week by Wednesday as to how

16  that data is kept so that we can --

17    MS. GOLINVEAUX:  Certainly.

18    SPECIAL MASTER RODRIGUEZ:  -- make a

19  judgment on where that is.  Because it does appear to me

20  to be relevant, of how Charter managed its own policies

21  and whether or not it took action on these different

22  types of policy violations.

23    MS. GOLINVEAUX:  Certainly we'll look into

24  that.

25    MR. SPERLING:  And, Ms. Rodriguez, it's --

---

1    SPECIAL MASTER RODRIGUEZ:  All right.

2    MR. SPERLING:  -- Mr. Sperling --

3    SPECIAL MASTER RODRIGUEZ:  We've been

4  going about an hour and a half.  It probably makes sense

5  that we take a break to give the reporter some relief

6  here.

7    Mr. Sperling, if you have a quick comment,

8  quickly, before we break.

9    MR. SPERLING:  Quickly and hopefully

10  helpfully, too, Ms. Rodriguez.

11    I just wanted to suggest -- as we're sort

12  of thinking about this and waiting for Charter to respond

13  to the directive that you just gave -- you know, in terms

14  of testing the burden, because you talked about the idea

15  that, you know, requiring the search for all the emails

16  might be too burdensome.

17    It seems to me that that burden

18  proposition can be tested the same way that we're testing

19  it with respect to all the other requests, which is to

20  come up with a set of proposed terms and have them run a

21  search and see what their report shows, because that

22  might show that it's far less burdensome than some of us

23  believe it could be right now.

24    SPECIAL MASTER RODRIGUEZ:  Okay.  Well,

25  that may be the next step.  I guess the question really

1   is, Where is this information kept and how?  How is it
2   kept, even if it is kept?  Because at a first glance, it
3   may be that that will answer some of these issues.
4               All right.  Let's take a break.  It's 2:11
5   now.  Let's reconvene -- sorry.  3:11 now.  Let's
6   reconvene at 3:30.
7               MR. OPPENHEIM:  Very well.  Thank you.
8               MS. GOLINVEAUX:  Thank you.
9               MS. RANAHAN:  Thank you.
10              (Recess taken from 3:11 p.m. until
11   3:30 p.m.)
12              SPECIAL MASTER RODRIGUEZ:  All right.  I
13   think the next thing that we had to take up was the issue
14   with regard to custodians.
15              I think I understand the issues as you all
16   have set them forward, but if you'd like to make brief
17   argument on this issue with regard to the custodians, I
18   would start with defendants on that issue.
19              MS. GOLINVEAUX:  It's Jennifer Golinveaux.
20   Thank you, Ms. Rodriguez.
21              I think we broke it down kind of by
22   custodian groupings as we saw relevant and as the
23   plaintiffs raised that --
24              AUTOMATED VOICE ON CONFERENCE CALL:
25   (Unintelligible) has joined the meeting.

1               MS. GOLINVEAUX:  -- and -- and walked
2   through on these why we didn't think it was appropriate
3   to add them to the pool of 17 custodians Charter is
4   already searching.
5               We had additionally identified 14 and
6   during the course of the parties' meet-and-confers, we
7   added an additional 3 that the plaintiffs requested.
8               But with respect to the ones that were
9   briefed to you, we really don't think that they are
10  tailored to provide relevant information in a way that
11  would justify the burden.
12              And I could kind of walk it through by
13  category, but I think our brief kind of sets forth our
14  positions on why, you know, we drew the line there and
15  why we didn't think they were relevant.
16              SPECIAL MASTER RODRIGUEZ:  Okay.  So with
17  regard to Mr. Erhardt and Mr. Taylor, these folks were
18  both included in the Rule 26(a)(1) disclosures; is that
19  correct?
20              MS. GOLINVEAUX:  That -- that is correct.
21  As we point out, we served those obviously early on in
22  the case as you're required to do, and we really erred on
23  the side of being over-inclusive.
24              And when we drilled down on these issues
25  later in the case, it turns out, as you saw from our

1   briefs, that Mr. Erhardt didn't even start at Charter
2   until September of 2016, which is a little after the
3   claims period and almost a year and a half after
4   plaintiffs sent their last notice.
5               And similarly, Mr. Taylor started, I think
6   it was a day before they sent their last notice.
7               So we -- what we ended up doing was
8   including as custodians people who we thought would have
9   had more interaction with plaintiffs' notices.
10              SPECIAL MASTER RODRIGUEZ:  Okay.  Hold on
11  just a moment.  Let me -- Mr. Taylor was hired on what
12  date?
13              MS. GOLINVEAUX:  His hire date was
14  March 30, 2015, and plaintiffs sent their last copyright
15  notice to Charter in March of 2015.  Even though their --
16  their claims period, for some reason, extends further,
17  their last notice came in in March of 2015.
18              SPECIAL MASTER RODRIGUEZ:  All right.
19  Well, the claims period that we have been using is the
20  period that we have been using through -- so through May
21  of 2016.  Under that basis, Mr. Taylor should be included
22  since his hire date was March 30, 2015.
23              Mr. Erhardt, E-r-h-a-r-d-t, didn't start
24  until September 2016 after the claim period, and he
25  should not be included.

1               MS. GOLINVEAUX:  Okay.
2               MR. OPPENHEIM:  Ms. Rodriguez, this is
3   Matt Oppenheim.  If I may be just heard briefly on
4   Mr. Erhardt.
5               So he wasn't just included in the Rule 26
6   Disclosures.  In February, Charter amended their RFP
7   responses to certain interrogatory responses, and they
8   listed Mr. Erhardt in that -- in those interrogatory
9   responses as having responsibility for designing,
10  developing, and implementing Charter's policies and
11  protocols for addressing infringement.
12              One of the things that we would typically
13  expect somebody who worked in the network securities
14  operations team to have is to have conducted an analysis
15  of how the system, the graduated response system -- that
16  is, the way in which Charter was responding to notices --
17  how it was functioning.  Was it accomplishing its goals?
18              And to do that, typically you would be
19  looking at data, what had happened in the past, had the
20  number of notices been increasing?  Had the amount of
21  infringement potentially been decreasing?  Did they see
22  that subscribers who had been sent notices from Charter
23  were being responsive?
24              So in that respect, even though
25  Mr. Erhardt might have come after the period, because he

1  was in the network securities operations team and was
2  listed in the Rule 26 Disclosures and the rog responses,
3  which Charter has not amended, even though they've had
4  lots of opportunity to, I believe that his -- his
5  communications would be searched.
6           Now, if they're right and he doesn't have
7  anything that's responsive, that -- there will be no
8  burden in doing the searches.  But, you know, I think
9  just to simply say, because he came afterwards, he
10 shouldn't be included, even though he's listed in those
11 two things and is in the core of the operations center
12 for what's relevant, he probably should be included.
13          SPECIAL MASTER RODRIGUEZ:  What
14 interrogatory or request response are you specifically
15 referring to that he was identified?
16          MR. OPPENHEIM:  It's Exhibit 7 to our
17 letter and --
18          SPECIAL MASTER RODRIGUEZ:  Uh-huh, I have
19 it.
20          MR. OPPENHEIM:  -- it is Rog -- yes, he's
21 listed in Supplemental Response Number 1.  So the rog
22 asks, on page 6:  Identify all persons, current and
23 former employees, with responsibility between 2008 to the
24 present, so on and so forth.
25          I -- and they object to the time period.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  And then in their supplemental response, they include, on
2  page -- actually, it's in the initial response and the
3  supplemental response, so page 7 he's listed --
4           SPECIAL MASTER RODRIGUEZ:  I see it.
5           MR. OPPENHEIM:  -- network securities
6  operation employee.  And then again in the supplemental
7  response in February, he's listed yet again.
8           MS. GOLINVEAUX:  Ms. Rodriguez, we -- it's
9  Jennifer Golinveaux.
10          This is entirely a fishing expedition as
11 to Mr. Erhardt.  We have explained to plaintiffs in
12 writing and on the phone multiple times that there was a
13 mistake made when we -- with respect to supplementing
14 that specific interrogatory response, and several people
15 from the initial disclosures were added to that
16 interrogatory response unintentionally.  And we have told
17 them that we are serving supplemental interrogatory
18 responses to correct that error, and he will come off.
19          Mr. Oppenheim is -- or certainly his team
20 understands that.  They know that.  Given his employment
21 date, it's entirely a fishing expedition as to
22 Mr. Erhardt.
23          SPECIAL MASTER RODRIGUEZ:  All right.
24          Well, with that representation, that
25 counsel for Charter is amending its interrogatory

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  response and that they are -- well, let me ask you the
2  question:
3           Are you intending to produce documents or
4  introduce documents, use documents at trial authored by
5  Mr. Erhardt?
6           MS. GOLINVEAUX:  No, we are not.
7           SPECIAL MASTER RODRIGUEZ:  With that
8  representation, I would not require that Mr. Erhardt be
9  added to the witness or custodian list.  However,
10 Mr. Taylor, I believe he did work within the relevant
11 time period, the claim period and, therefore, he should
12 be added.
13          All right.  With regard to Mr. -- I don't
14 know how to pronounce this name, I apologize.  Is it
15 Abramov?
16          MS. GOLINVEAUX:  It's Abramov.
17          SPECIAL MASTER RODRIGUEZ:  Abramov and
18 Ms. Starkweather.  I understand that Charter takes the
19 position that those folks are in-house counsel that were
20 involved in handling notices and also involved with the
21 policies and processes.
22          But the question that raises for me is,
23 doesn't that go to the heart of the business and that
24 this would be business review as opposed to purely legal
25 review in anticipation of litigation or otherwise?

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  That's really the question I have.  I don't know the
2  answer.  You all know the -- better than I do of what
3  they were doing and when they were doing it and why they
4  were doing it.
5           But I'm not so sure that just because they
6  are in-house counsel, that that's a sufficient reason
7  that they -- their documents would not have to be
8  searched, particularly when they've been disclosed in the
9  Rule 26 Disclosures.
10          Maybe -- is that Ms. Golinveaux that's
11 going to address that?
12          MS. GOLINVEAUX:  Yes.  Yes, ma'am.
13          Mr. Abramov is -- so he's the in-house
14 attorney at Charter who manages both -- both this
15 litigation and the corresponding Bright House litigation
16 in Florida.
17          So he is -- the idea of adding him here --
18 and you saw we submitted a declaration from Mr. Abramov,
19 talking about his role -- that he is very unlikely to
20 have any nonprivileged information and -- or non-work
21 product information.  And the idea of searching all of
22 his emails for any reference to this case or the broad
23 issues they've identified and logging all of that is --
24 is not proportional to the needs of the case given his
25 role.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1    SPECIAL MASTER RODRIGUEZ:  But it looks
2  like the representation is that Mr. Abramov had knowledge
3  about Charter's policies relating to copyright
4  infringement, which that policy is directly at issue in
5  this case, and Charter's policies and process relating to
6  the processing and handling of notices alleging copyright
7  infringement during the relevant time.
8    So while I understand that Mr. Abramov may
9  have also had legal responsibilities for supervising
10  litigation, that does not necessarily mean he wouldn't
11  have discoverable information related to the policies, as
12  well as the policies and processes for processing the
13  notices.
14    MS. GOLINVEAUX:  What --
15    SPECIAL MASTER RODRIGUEZ:  Does he have
16  different responsibilities?  Yeah, go ahead.
17    MS. GOLINVEAUX:  Ms. Rodriguez, are you
18  referring to the initial disclosures again?
19    SPECIAL MASTER RODRIGUEZ:  Yes.
20    MS. GOLINVEAUX:  Yeah.  It's our
21  understanding that he does not have any nonprivileged
22  documents, and we didn't intend to imply otherwise by
23  listing him.
24    He does have knowledge of policies, but
25  everything he has, from our discussions with him, would

1  be privileged.  And it would be, of course, since he's
2  point on the litigations, the idea of searching all of
3  his email for documents about the case or the issues
4  would be a daunting task in trying to log that.
5    SPECIAL MASTER RODRIGUEZ:  So you're
6  indicating that he has no privilege -- no documents that
7  would not be subject to privilege.  And are you basing
8  that on the fact that you have searched his documents and
9  found that they're all privileged, or are we relying on a
10  representation from someone?
11    MS. GOLINVEAUX:  Well, we're -- we're
12  relying on our discussions with Mr. Abramov when we
13  raised this issue with him.
14    SPECIAL MASTER RODRIGUEZ:  Okay.
15    Plaintiffs' counsel, do you want to
16  respond?
17    MR. OPPENHEIM:  Yes, please, if I may.
18  This is Matt Oppenheim.
19    By listing Mr. Abramov -- and, frankly,
20  Ms. Starkweather, who is privacy counsel -- in Rule 26
21  Disclosures, what the defendant was saying under the
22  rules is that these individuals were, quote, likely to
23  have discoverable information relevant to this case.
24    Now, if it's privileged, it's not
25  discoverable.  And so by putting them on the Rule 26

1  Disclosure, by definition, they have discoverable
2  information.
3    Now, they also listed, in response to
4  Interrogatory Number 1, both of them, as we looked at
5  before.  Again, they're listed as having -- being a
6  person with responsibility for designing, developing, or
7  implementing policies or protocols.
8    Doesn't ask whether they had
9  responsibility for providing litigation counsel.  Nothing
10  like that.  What it asks is:  Do they have responsibility
11  for designing, developing, or implementing a policy or
12  protocol for addressing infringement?
13    Now, the time period is critical here.
14  The time period -- the first letter from plaintiff to
15  Charter putting them on notice of potential claims was in
16  2016.
17    And so if I understand what Ms. Golinveaux
18  is saying, the -- she said two different things.  At
19  first, she said he's unlikely to have nonprivileged
20  information; and then she said, when pushed, Well, no, he
21  doesn't have nonprivileged information.  I don't know
22  which it is.
23    But there's -- there's -- I don't
24  understand, as a legal matter, how it could be privileged
25  if it predates 2016.  Of course, not everything a lawyer

1  does within a company as in-house counsel is
2  automatically privileged.  We all know that.  And, in
3  fact, the plaintiffs have many in-house counsel who are
4  listed on the Rule 26 Disclosures, and we've included
5  almost everyone of -- with only, I believe, one exception --
6  on our custodian list and have been -- have been -- have
7  been searching their emails.
8    The only -- the one that we didn't, it's
9  only because -- I don't even know if they're a lawyer,
10  but it has -- but it's the person having to do with chain
11  of title, and we searched their documents a different
12  way.
13    So the idea that -- that they -- they just
14  know that he doesn't have anything, that both he and
15  Ms. Starkweather don't have any nonprivileged documents
16  is not a representation that we can accept.
17    And, frankly, if they believe that
18  everything that predates 2016 is privileged, we need to
19  see it on a log because we're going to have some
20  significant privilege contests.
21    We have virtually no documents that show
22  the evolution -- the development or evolution or
23  implementation of the copyright policies here.  What we
24  have seen in other cases is that these policies are
25  considered and change over time as circumstances change,

Page 93

```
 1   as networks change, as the number of notices change.  And
 2   that the ISPs then look at the number of notices they're
 3   receiving and how they're being implemented by their
 4   system and what's happening.
 5            We don't have any of those documents,
 6   absolutely none.  Now, part of the reason is that the
 7   search terms are incredibly narrow, and we're going to
 8   get to that later.  But it's also that they're just not
 9   searching many custodians at all.  We need to deal with
10   that today, and I think unquestionably Mr. Abramov and
11   Ms. Starkweather need to be included.
12            SPECIAL MASTER RODRIGUEZ:  All right.
13   Well, I would say that it is difficult to argue that
14   people that you have put on the Rule 26(a)(1) Disclosures
15   should not be included on the custodian list is a tough
16   hurdle to get past.  Presumably, did the investigation
17   and made a determination of who should be included on the
18   Rule 26(a)(1) Disclosure and, therefore, by definition,
19   they are people who have potentially discoverable and
20   relevant information.
21            The fact that a particular custodian is an
22   attorney that has been included on the 26(1)(1) is
23   significant, and the fact that they are a lawyer does
24   not, in and of itself, end the inquiry as to whether or
25   not the information and documents that that particular
```

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 94

```
 1   custodian may have is, in fact, privileged, particularly
 2   when we're talking about in-house counsel, because I
 3   think there still has to be the distinction between
 4   whether the advice they were providing was legal or
 5   business advice.
 6            And particularly when it's information
 7   that goes to the business of the company, such as
 8   policies and procedures and how those policies and
 9   procedures are enacted, an argument can definitely be
10   made that that is legal, but it can also be made that it
11   is business.  So to include that on a log where those
12   assertions can be tested is likely important.
13            This is a significant issue in terms of --
14   well, actually, let me ask counsel for defendants:  Have
15   you looked to see what the hit count would be for these
16   custodians, or are we relying on the representations in
17   general that they have a lot to do with it?
18            MS. GOLINVEAUX:  Right.  We have not run
19   hit counts against Mr. Abramov or Ms. Starkweather in
20   light of their roles.
21            And, Ms. Rodriguez, to be clear, we, as
22   plaintiffs, know we're amending our initial disclosures,
23   and we are not -- Mr. Abramov will not be disclosed as a
24   witness with discoverable information on the amended
25   disclosures.
```

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 95

```
 1            SPECIAL MASTER RODRIGUEZ:  This one is --
 2   I mean, I understand -- what about Ms. Starkweather?
 3            MS. GOLINVEAUX:  It's the same for
 4   Ms. Starkweather.
 5            MR. OPPENHEIM:  May I speak to that,
 6   Ms. Rodriguez?
 7            SPECIAL MASTER RODRIGUEZ:  Yeah, please.
 8            MR. OPPENHEIM:  I don't believe that --
 9   that you get to -- that they get to kind of decide, We
10   want a do-over.  They -- they made the determine --
11            AUTOMATED VOICE ON CONFERENCE CALL:  Matt
12   Oppenheim has left the meeting.
13            SPECIAL MASTER RODRIGUEZ:  Uh-oh.
14            MR. SPERLING:  Hi, Ms. Rodriguez.  It's
15   Jonathan Sperling.
16            We can wait for Mr. Oppenheim, but in the
17   interest of time, I'm going to try and fill in because I
18   think we all know where he was going, and I think the
19   point is compelling and simple.
20            As he was saying, they don't get a
21   do-over, right?  They made a representation that he had
22   discoverable information, and that fact remains a fact,
23   which they can't wipe away just because they don't want
24   to search his documents.
25            So having concluded that he had
```

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 96

```
 1   discoverable information, they can't say, "Well, we'll
 2   amend the disclosures and take him off so then we don't
 3   have to search for and produce that information."
 4            SPECIAL MASTER RODRIGUEZ:  Well,
 5   understood.  And, you know, in general, I agree.  I think
 6   there is a significance to be included in the 26(a)(1)
 7   Disclosure.  However, I also don't think that it's
 8   dispositive.  I wouldn't necessarily call it a do-over.
 9            But I do think that it is probative of
10   whether or not the witness has relevant information.  I
11   don't believe that that's the dispute at this point as to
12   whether or not this witness has relevant information.
13   The question is whether or not it's privileged and to the
14   extent is that it would be burdensome that they have to
15   search for his documents.
16            And I'm -- I think that is a difficult
17   argument to make without actually doing the search and
18   without seeing what it entails.
19            I also think that the question about
20   whether or not the information, the particular documents
21   are actually privileged or not is a significant one.  And
22   just because someone is in the role of in-house counsel
23   does not, in and of itself, make their document, any
24   particular document privileged, in and of itself.
25            So I am not inclined at this point to take
```

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  them out of the list of custodians simply by virtue of
2  the fact that they are identified as in-house counsel.
3  What I would ask that Charter do is add as custodians so
4  that we can get a hit count and test some of this to see
5  how much we're talking about in terms of documents.
6         But I don't think it's fair to ask the
7  plaintiffs to simply rely upon their representation that
8  everything they did was privileged.
9         AUTOMATED VOICE ON CONFERENCE CALL:
10 (Unintelligible) has joined the meeting.
11 MS. GOLINVEAUX:  Understood.  Ms. --
12        MR. OPPENHEIM:  Ms. Rodriguez, this is
13 Matt Oppenheim.  I got disconnected.  I apologize.  I
14 don't know what happened.
15        SPECIAL MASTER RODRIGUEZ:  Fair enough.
16 Mr. Sperling took over in your absence, and I've asked
17 for some specific follow-up.  And I think Ms. Golinveaux
18 was going to follow up.
19        MS. GOLINVEAUX:  I was just going to say
20 we understand and we will do exactly that.
21        SPECIAL MASTER RODRIGUEZ:  Okay.  All
22 right.
23        Jim Obermeyer, Danyel Schoenemann, and
24 anyone else in Charter's marketing, consumer insight, or
25 finance department.  This is pretty broad and not

1  specific.  It seems to me that discovery will give you
2  some more information in terms of depositions and other
3  responses to help target this more.  It seems unworkable
4  to simply add anybody in marketing and consumer
5  insight -- sorry, in the consumer area or who has insight
6  into finance.
7         So on that, I think you have to meet and
8  confer to discuss specifics.  It may be that you need to
9  develop this through discovery and in deposition, but
10 this category is simply too broad to order the addition
11 of these folks as additional custodians.
12        MR. OPPENHEIM:  Ms. Rodriguez, if I may,
13 can I break this down a little bit?  I think you were
14 speaking to the -- kind of the grouping of somebody in
15 marketing, consumer insight, and finance.  But I think
16 you --
17        SPECIAL MASTER RODRIGUEZ:  Let me just say
18 I'm speaking of it in the way that you have posited it in
19 your -- in your motion.  So it was Jim Obermeyer, Danyel
20 Schoenemann or anyone else in Charter's marketing,
21 consumer insight, or finance department.
22        MR. OPPENHEIM:  So if I may speak to
23 Obermeyer and Schoenemann for a moment, please.
24        So, again, these two individuals were
25 originally included in our letter because they were

1  listed in response to the interrogatory responses.  Now,
2  for the first time --
3         SPECIAL MASTER RODRIGUEZ:  Are you talking
4  about the interrogatory response that was identified,
5  they were identified in?
6         MR. OPPENHEIM:  I'm sorry.  Yes.  I'm
7  sorry.  The same one we were just talking about, and that
8  is --
9         SPECIAL MASTER RODRIGUEZ:  Interrogatory
10 Number 1?
11        MR. OPPENHEIM:  Interrogatory Number 1.
12 And if you look at the very bottom of the supplemental,
13 you see Danyel Schoenemann and Jim Obermeyer.
14        SPECIAL MASTER RODRIGUEZ:  Okay.  Well,
15 those two, because they are included, I would -- I would
16 include those.
17        MS. GOLINVEAUX:  Yeah.  Ms. Rodriguez --
18        MR. OPPENHEIM:  So --
19        MS. GOLINVEAUX:  -- I'm sorry.  That --
20 they -- as we have explained to plaintiffs in writing,
21 that was an error which will be corrected.  That was not
22 what we were intending to do.  We've told them that, and
23 they keep arguing that it should be relevant, but
24 that's -- interrogatory response -- in fact, I believe
25 that -- it's already been supplemented to take him off.

1  Ms. Ranahan can confirm, but I think that's the case.
2         MR. OPPENHEIM:  And if I may, I --
3         SPECIAL MASTER RODRIGUEZ:  Well --
4         MR. OPPENHEIM:  -- Ms. -- sorry.
5         MS. GOLINVEAUX:  It's misrepresenting --
6         MR. OPPENHEIM:  Go ahead, Ms. --
7         MS. GOLINVEAUX:  -- to say that that's in
8  response to that interrogatory at this point.
9         MR. OPPENHEIM:  I hadn't completed my --
10 to allow Ms. Rodriguez to speak first.  Go ahead.
11        MS. GOLINVEAUX:  That's an earlier version
12 of the interrogatory response, not the latest.
13        SPECIAL MASTER RODRIGUEZ:  Okay.  Well, it
14 appears that --
15        MR. OPPENHEIM:  I'm sorry.
16        SPECIAL MASTER RODRIGUEZ:  -- with regard
17 to Mr. Obermeyer, with regard to Interrogatory Number 1,
18 it appears that Mr. Obermeyer, VP marketing, was added as
19 part of the supplemental response by Charter.
20        MS. GOLINVEAUX:  That's correct.  And
21 we -- that was in error.  They were not -- Mr. Obermeyer
22 and Mr. Schoenemann were not intended to, and we served
23 later interrogatory responses that took them off and
24 corrected the error.
25        SPECIAL MASTER RODRIGUEZ:  Okay.

1          MS. RANAHAN:  And this is Erin Ranahan.

2          Just to clarify, not only that, we emailed

3    them specifically about the error.  They're aware of

4    this, and it was just the same mistake had carried over.

5    So we had made a mistake, but these were never intended

6    to be part of Number 1.

7          MR. OPPENHEIM:  May I speak to this,

8    Ms. Rodriguez?

9          SPECIAL MASTER RODRIGUEZ:  And when did

10   you notify them -- hold on a minute.  When did you notify

11   them?

12         MS. RANAHAN:  May 6.  It's Exhibit 12.

13         SPECIAL MASTER RODRIGUEZ:  Okay.  I have

14   the supplement.  It looks like it was dated -- this can't

15   be right -- February 4 of 2019.

16         MR. OPPENHEIM:  2020, I believe.

17         SPECIAL MASTER RODRIGUEZ:  Let's see.  It

18   says on page 21, next to Mr. Elkin's signature,

19   February 4, 2019.  Ah.  The certificate of service

20   indicates --

21         MR. OPPENHEIM:  It's 2020.

22         SPECIAL MASTER RODRIGUEZ:  -- February 4,

23   2020.  All right.

24         And then when was the correspondence sent

25   indicating that this was an error?

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1          MS. RANAHAN:  It was Exhibit 12.  May 6.

2          SPECIAL MASTER RODRIGUEZ:  May 6?

3          MS. RANAHAN:  Yes.

4          MR. OPPENHEIM:  So, Ms. Rodriguez, this is

5    Matt Oppenheim.

6          I -- I don't have that document.  Here's

7    what I do know.  It is true that they told us, as they

8    told us with each of the other four custodians that we

9    went through, that they didn't want to search, that

10   again, it was a mistake including them.  That's, of

11   course, what they've now said four times; now this is

12   five and six.

13         And they're saying, "No, no, no, they

14   shouldn't have been included."  I don't -- if they've

15   served something that's been amended, so be it.  But what

16   they told us, I believe, is that they intended -- they

17   intend, but they haven't done yet, to amend their Rule 26

18   Disclosure to list both of these individuals on their

19   new, revised Rule 26 Disclosures.

20         So if I understand the facts correctly,

21   their intent is to take them out of the interrogatory

22   response and put them in the Rule 26 Disclosures.

23         That, of course, still makes them

24   relevant.  So --

25         MS. GOLINVEAUX:  That's --

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1          MR. OPPENHEIM:  So here we go.  You know,

2    look, they should do the searches and if they don't have

3    responsive documents, they don't have responsive

4    documents.  But you don't get to list witnesses over and

5    over in sworn responses, whether it be a Rule 26

6    Disclosure or interrogatory response, and then say, "Oh,

7    no, oops, we don't want to search their files.  We made a

8    mistake," which is what they have done every time here --

9          MS. GOLINVEAUX:  So, Ms. Rodriguez --

10         MR. OPPENHEIM:  -- so --

11         MS. GOLINVEAUX:  -- that is absolutely not

12   what happened.  We served supplemental interrogatory

13   responses correcting that mistake on March 31, as

14   Mr. Oppenheim knows.  He's had it for months now.  So

15   that is really -- and what they did is they attached

16   their motion, an earlier version of the interrogatory

17   response that they knew included them incorrectly.

18         So that is just entirely a

19   mischaracterization of what happened here.  He has our

20   served supplement, and he's referring to an earlier

21   version that contains the error.

22         And it wasn't repeated over and over.  It

23   was these two guys were added here to this interrogatory

24   response erroneously, and it was corrected the next month

25   when the -- when the error was noticed.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1          MR. OPPENHEIM:  I don't have a -- another

2    supplemental interrogatory response.  If you've served

3    it, I'm unaware of it and I apologize, but my cocounsel

4    is telling me -- hold on.

5          Let me ask, Ms. Sahni, could you step in

6    on this, because I'm not aware of this.

7          MS. SAHNI:  Sure.  Sure.

8          SPECIAL MASTER RODRIGUEZ:  Well, let's --

9          MS. SAHNI:  So, Ms. Rodriguez --

10         SPECIAL MASTER RODRIGUEZ:  Hold on just --

11   just one moment because I want to make sure I'm caught up

12   with all of you all because there's a lot of moving

13   pieces here.

14         The exhibit that I do have is Exhibit 7 to

15   plaintiffs' motion to compel, and that one is the one

16   that we just referenced that is dated February 19 of

17   2020.  And that one does indicate it is a supplement.

18         And in the supplemental response, again,

19   February of 2020, Mr. Obermeyer and Danyel Schoenemann

20   are listed in response to Interrogatory Number 1 by

21   defendant.

22         Perhaps I have missed it, but I do not

23   have a further supplement that was provided to me by

24   defense counsel.  If I'm wrong about that, if defense

25   counsel could point me to the exhibit, that would really

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1   help me.

2           MS. GOLINVEAUX:  Ms. Rodriguez --

3           SPECIAL MASTER RODRIGUEZ:  Is there an

4   amended supplement on March 31 of 2020?

5           MS. GOLINVEAUX:  Yes.  We --

6   Ms. Rodriguez, we refer to that supplement in Exhibit 13,

7   which you have, which is the email correcting it.

8           MS. SAHNI:  Ms. Rodriguez, if I may, this

9   is Neema Sahni.  I would like to be heard on this issue

10  to clarify the record here, and we'd be happy to send you

11  that further, March 31, if that would be convenient.

12          On March 31, Charter served a supplemental

13  response to the first set of interrogatories in which

14  there was a supplemental response for Interrogatory

15  Number 12, which was an interrogatory that Judge Hegarty

16  ordered them to produce by March 31.  That is the only

17  interrogatory for which any supplemental response is

18  listed.

19          If you go to Interrogatory Number 1 -- and

20  like I said, I'm happy to send this to you -- there is no

21  supplemental response, there is no amended response.  It

22  reverts back to their original interrogatory response for

23  all other interrogatories except for Rog Number 12, which

24  is the one that they were asked to supplement for that

25  date.

                WILSON & ASSOCIATES, LLC
            scheduling@wilsonandassociatesllc.com

---

1           As such, their supplemental response for

2   Interrogatory Number 1, dated February 4, is their

3   operative supplemental response.  They did not indicate

4   that it was further amended.  They did not indicate that

5   it was further supplemented.

6           The most recent response we have on Rog

7   Number 1 is their supplemental response, dated

8   February 4.  Their March 31 rog response does not include

9   their supplemental response or an amended response or

10  anything along those lines.

11          And when they told us, as you will see in

12  Exhibit 12, which they already pointed you to, that

13  Mr. Obermeyer and Mr. Schoenemann were inadvertently

14  added purportedly to the supplemental rog response, they

15  told us their intention was to amend their initial

16  disclosures to add individuals for these departments.

17          And so the request before you today is

18  that either Mr. Obermeyer or Mr. Schoenemann should get

19  added or whoever they're going to add to their Rule 26(a)

20  Disclosures from these departments because those

21  individuals have now been represented, both in a rog

22  response or in a 26(a) forthcoming initial disclosure

23  that they're going to be supposedly amending, to have

24  had -- to have discoverable information relevant here.

25          And we'd just like to have custodians that

                WILSON & ASSOCIATES, LLC
            scheduling@wilsonandassociatesllc.com

---

1   are from one of these groups that can actually have

2   documents that will be responsive to our request related

3   to financial and marketing issues.

4           MS. GOLINVEAUX:  So --

5           MS. SAHNI:  And I'd be happy to send you

6   the March 31 rog response if that would be helpful.

7           SPECIAL MASTER RODRIGUEZ:  Okay.

8           MS. GOLINVEAUX:  Ms. Rodriguez --

9           SPECIAL MASTER RODRIGUEZ:  So are there

10  witnesses that are going to be substituted for these two?

11          MS. GOLINVEAUX:  So it's Jennifer

12  Golinveaux.

13          Number one, what Ms. Sahni just said was

14  very confusing, but to be clear, the March 31

15  interrogatory responses do not include those gentlemen.

16  So I don't know if that came across in her long

17  explanation, but they were not on there.  What they're

18  relying on is an earlier version that we told them was a

19  mistake.

20          To your -- to your question, we will -- we

21  have -- we have collected documents from the marketing

22  department and produced them to plaintiffs, but they were

23  not the types of documents -- they were categories of

24  documents that were more appropriate for document

25  collections, not email searches.

                WILSON & ASSOCIATES, LLC
            scheduling@wilsonandassociatesllc.com

---

1           Plaintiffs have not identified any

2   document request that would be appropriate to run broad

3   email searches against folks from finance and marketing.

4   We have produced detailed marketing information -- pardon

5   me -- financial information from the financial

6   department.  That doesn't mean that we should be

7   searching the head of finance for documents about the --

8   the copyright policy, which he wouldn't have based on our

9   interviews of all the relevant custodians.

10          So we have produced documents from

11  finance.  We haven't run all the broad email searches

12  against them.

13          MS. SAHNI:  Ms. Rodriguez, if I may just

14  respond --

15          SPECIAL MASTER RODRIGUEZ:  All right.

16          MS. SAHNI:  -- to the point about the RFPs

17  at issue --

18          SPECIAL MASTER RODRIGUEZ:  Yes.

19          MS. SAHNI:  -- if that would be helpful

20  for you.

21          SPECIAL MASTER RODRIGUEZ:  Sure, very

22  quickly.

23          MS. SAHNI:  Yeah.  Ms. Golinveaux said

24  that there's no RFP that we've identified.  That's --

25  that's just plainly untrue.  It's in the -- our

                WILSON & ASSOCIATES, LLC
            scheduling@wilsonandassociatesllc.com

1  correspondence.

2          At minimum, RFP 14 concerned financial

3  issues.  They have search terms for that request, but

4  they're applying it to the wrong people.  They're

5  applying a finance-related search to people not in the

6  finance department.

7          And, of course, they have now represented

8  to us that they found no responsive documents.  Well, of

9  course they found no responsive documents because they

10  did not search in files of anyone that would actually

11  have those documents.  There are requests at issue that

12  would be related to them.

13          SPECIAL MASTER RODRIGUEZ:  Okay.

14          MS. GOLINVEAUX:  It had to do with

15  terminating subscribers for violation of copyright

16  infringement.

17          SPECIAL MASTER RODRIGUEZ:  All right.  So

18  what -- it's difficult for me to make a ruling on a

19  supplemental or amended response to interrogatories that

20  is forthcoming.

21          It's clear that this issue has been teed

22  up for some time, and I know that it is a big case and

23  there's a lot going on, but it is not for me at this

24  point in time to make a ruling on something that has not

25  yet been filed in terms of an amended interrogatory

1  response.

2          These two witnesses -- or these two

3  custodians, sorry, strike that -- these two custodians,

4  Mr. Obermeyer and -- I don't know if this is a Ms. or a

5  Mr. -- Schoenemann, have both been listed, not just in

6  the Rule 26 Disclosure, but they were added in the

7  supplemental interrogatory response, Interrogatory

8  Response Number 1, that was served on February 19 of

9  2020.  Therefore, it makes them relevant.

10          I understand that plaintiffs -- or, sorry,

11  the defendants intend to amend that as they may be

12  entitled to do.  However, that does not remove them from

13  the world of custodians that should be searched as of

14  this date.

15          And I apologize, I said February 19 of

16  2020.  It should have been February 4, 2020, when these

17  interrogatory responses were served.

18          Based upon the record that's before me,

19  this is the last supplement to the interrogatories and,

20  therefore, is the operative response.  The amendment that

21  defendants have represented that they make does not, in

22  and of itself, make these two people irrelevant.

23          It appears, from Charter's interrogatory

24  response, that Mr. Obermeyer, the VP of marketing from

25  2011 to the present; thus he would be an employee in that

1  position during the relevant claims period.

2          Similarly, Danyel Schoenemann is

3  identified as the VP of finance, May 20, 2011, through

4  the present, so also is in this position during the

5  relevant time period.

6          So my order is that both Jim Obermeyer and

7  Danyel Schoenemann should be included as custodians to be

8  searched in this matter.

9          All right.

10          MS. GOLINVEAUX:  Ms. Rodriguez, it's

11  Jennifer Golinveaux.  Understood, and we can move on.

12          I just want to note that Mr. Obermeyer is

13  a former employee.  He's no longer with Charter.  I

14  didn't know if you had that from the briefing.

15          SPECIAL MASTER RODRIGUEZ:  It indicates

16  here, at least in the interrogatory response that I'm

17  looking at, that his position was through present.  What

18  was the date --

19          MS. GOLINVEAUX:  He left after that.  He

20  left in February of this year.

21          SPECIAL MASTER RODRIGUEZ:  Were his

22  documents preserved?

23          MS. GOLINVEAUX:  Yes, they were preserved.

24          SPECIAL MASTER RODRIGUEZ:  Okay.  So --

25          MS. GOLINVEAUX:  I believe -- I believe

1  they were preserved.

2          SPECIAL MASTER RODRIGUEZ:  Okay.  Well, it

3  seems like they should have been, given this case was in

4  full swing at the time of his departure, so I would hope

5  that his documents would be preserved, and so he -- his

6  documents can be searched.

7          Is Mr. Schoenemann, or Ms. Schoenemann

8  still an employee?

9          MS. GOLINVEAUX:  He is still an employee.

10          SPECIAL MASTER RODRIGUEZ:  Okay.  All

11  right.

12          Let's move to the next topic:  Financial

13  information.  There are a number of discovery --

14          MR. OPPENHEIM:  I believe -- I'm sorry.

15          SPECIAL MASTER RODRIGUEZ:  -- requests

16  related to this.

17          MR. OPPENHEIM:  I was last --

18          SPECIAL MASTER RODRIGUEZ:  This is a lot.

19          MR. OPPENHEIM:  -- thing in the world --

20          SPECIAL MASTER RODRIGUEZ:  If you've

21  lumped -- yeah, you have lumped in quite a few different

22  things here.

23          MR. OPPENHEIM:  I believe we skipped one

24  topic here.  This is Matt Oppenheim --

25          SPECIAL MASTER RODRIGUEZ:  Oh, my

1    apologies.
2              MR. OPPENHEIM:  -- I apologize to the
3    court reporter.  No, no.  It's all right.  We're all
4    getting a little cross-eyed at this point.
5              So -- and -- but I think this one should
6    be relatively easy, and that's the --
7              SPECIAL MASTER RODRIGUEZ:  Oh.
8              MR. OPPENHEIM:  -- responses to RFP 7 and
9    10, which includes organizational charts or other
10   documents sufficient to show organizational structure for
11   certain items, including copyright infringement
12   complaints, user terms of service, acceptable use
13   policies, privacy policies, finances, and then documents
14   sufficient to identify name, title, role of each of the
15   employees responsible -- dealing with infringement
16   notices, in short.
17             We have not received any documents in
18   response to these RFPs.  These are basic corporate
19   organization documentation.  Every -- every major company
20   has documents like this, though they -- they are called
21   different things, they come in different forms.  More
22   modern companies have them in electronic digital database
23   trees.  All companies have the -- you know, the old
24   charts --
25             SPECIAL MASTER RODRIGUEZ:  Mr.

1    Oppenheim --
2              MR. OPPENHEIM:  Yes.
3              SPECIAL MASTER RODRIGUEZ:  Mr. Oppenheim,
4    I don't know that we need a lot of argument on this
5    issue.
6              MR. OPPENHEIM:  Okay.
7              SPECIAL MASTER RODRIGUEZ:  Counsel for
8    Charter, this does seem like a pretty straightforward
9    request that we see in a lot of these matters.
10             What -- what is the -- the issue here?  I
11   mean, an organizational chart -- perhaps it's definition
12   of the time period or something like that -- but in terms
13   of an organizational chart, that should be fairly
14   straightforward.
15             MS. GOLINVEAUX:  Yeah.  Ms. Rodriguez,
16   it's Jennifer Golinveaux.
17             First of all, when Mr. Oppenheim says they
18   don't have any documents, in fact, the Abuse Playbook
19   that we produced some time ago has a full employee
20   listing, employee listing for the subscriber services
21   security team that they seem to be asking about.  It has
22   it by name and other information for each employee.  So
23   for him to say they don't have it is inaccurate.
24             What we have told them is that there are
25   not otherwise org charts that can be produced sufficient

1    to show the information that they are requesting.  There
2    are, of course, full employee direct -- electronic
3    directories where folks can run ad hoc searches and look
4    up folks.  But outside that playbook, where they already
5    have the full listing, there are no org charts.
6              So if they're seeking additional
7    information, they really should serve an interrogatory
8    asking for what specifically they are seeking, because
9    these broad document requests for RFPs seeking documents
10   sufficient to identify all these various names and titles
11   simply don't exist.
12             SPECIAL MASTER RODRIGUEZ:  Okay.  So your
13   representation is that these org charts that are being
14   requested in response to RFP 7 and 10 do not exist, other
15   than what is provided in the Abuse and Vulnerability
16   Process Playbook?
17             Do I understand --
18             MS. GOLINVEAUX:  Correct.
19             SPECIAL MASTER RODRIGUEZ:  -- what you're
20   saying correctly?  Okay.
21             MS. GOLINVEAUX:  You did, yeah.
22             SPECIAL MASTER RODRIGUEZ:  And in
23   particular, defendants have produced, as Exhibit 4 to
24   their response to the motion to compel, the Abuse and
25   Vulnerability Process Playbook, and at CHA 162, there's a

1    listing with an SSFP contact list.
2              Is that what you're referring to is the
3    list of names?
4              MS. GOLINVEAUX:  It is, that's exactly
5    right.
6              SPECIAL MASTER RODRIGUEZ:  Is there
7    anything else in the playbook that I've missed that would
8    identify the employees that would have responsibility for
9    the abuse and vulnerability process?
10             MS. GOLINVEAUX:  I don't think they're
11   listed elsewhere.  But my understanding is that the
12   complete listing is here on these two pages.
13             SPECIAL MASTER RODRIGUEZ:  Am I missing
14   this, or does this tell me during what time period these
15   people would have been in these positions, and does it
16   cover the entire period of the claims period?
17             MS. GOLINVEAUX:  I don't think it provides
18   that information, but that information, if the plaintiffs
19   want it, they are certainly free to serve an
20   interrogatory or take depositions.
21             MR. OPPENHEIM:  Ms. Rodriguez, I'm sorry.
22   I -- I thought I heard Ms. Golinveaux just say that there
23   is an internal electronic system that can be queried,
24   that employees can query to find other employees.  That
25   is the modern equivalence of an org chart.

1   We don't say we are only asking for an org
2   chart.  We say org chart or other documents sufficient to
3   show.  The fact that something's electronic in a database
4   doesn't suddenly make it not a document, of course;
5   electronic documents are documents.
6          And they can run the queries to show, who
7   are the employees, what are their titles and
8   responsibilities for those items that we've listed in
9   RFP 7, and take them out.  I've done that in litigation
10   in the past on behalf of my clients.  You query their
11   internal database system for certain types of employees,
12   and you give the responses.
13          Pointing us to this Abuse and
14   Vulnerability Playbook as responsive as an organizational
15   chart is -- is not sufficient.
16          MS. GOLINVEAUX:  Ms. Rodriguez, based
17   on --
18          SPECIAL MASTER RODRIGUEZ:  So let me
19   ask -- uh-huh.  Let me just --
20          MS. GOLINVEAUX:  Just to be clear --
21          SPECIAL MASTER RODRIGUEZ:  -- ask,
22   Ms. Golinveaux, with --
23          MS. GOLINVEAUX:  Yes, yes.
24          SPECIAL MASTER RODRIGUEZ:  -- regard to
25   the database that -- the directory that you do maintain

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1   electronically, presumably that also includes employee
2   titles or positions; is that right?
3          MS. GOLINVEAUX:  I assume that it does,
4   yes.
5          SPECIAL MASTER RODRIGUEZ:  Okay.  Well, I
6   suppose you could argue that they should do an
7   interrogatory, but it seems fair in this request that
8   they're asking for documents to show who in the company
9   has responsibility for addressing copyright infringement
10   complaints, user terms of service, acceptable use
11   policies, privacy policies, and finances.  And they've
12   asked for the identity and title of each job occupant.
13          It seems to me that that is a reasonable
14   request that is directly applicable to the issues that
15   are relevant in this matter and the subject of
16   appropriate discovery, which does not carry with it a
17   disproportionate burden.  I have not seen or heard
18   anything thus far that would give me the sense that this
19   would take an inordinate amount of time, particularly
20   given the magnitude of the discovery in this case.
21          I do believe that the Abuse and
22   Vulnerability Process Playbook may be a place to begin.
23   However, this does not identify employees by title and,
24   therefore, it's limited more -- more narrowly than the
25   request warrants.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 119

1          So with regard to Request for Production
2   Number 7, would order that defendants produce the
3   information sufficient to identify those persons
4   responsible for addressing copyright infringement
5   complaints, user terms of service, acceptable use
6   policies, privacy policies, and finances, which shall
7   include the identity and title of each employee
8   identified.
9          With regard to Request Number 10,
10   documents sufficient to identify the name, title, and
11   role of each defendant -- each of defendant's employees
12   or agents involved in any manner in receiving, assessing,
13   addressing, responding, and/or implementing any
14   infringement notice, this is, again, information that
15   defendants should be able to glean without much burden
16   from its internal directory.
17          MS. GOLINVEAUX:  Ms. Rodriguez, once --
18          SPECIAL MASTER RODRIGUEZ:  I'm interested
19   in understanding -- I'm sorry.
20          MS. GOLINVEAUX:  No, I'm sorry.
21          SPECIAL MASTER RODRIGUEZ:  But let me just
22   say, I'm interested in understanding the defendant's
23   objection that this Request for Production Number 10
24   seeks information that is not relevant to any party's
25   claim or defense.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 120

1          Is there something that's being requested
2   here that is far afield from the relevant claims and
3   defenses in this case that you're alluding to here?
4          MS. GOLINVEAUX:  No.  What I was going to
5   ask is, with respect to 7, where it says:  Org chart
6   sufficient to show persons responsible for finances, I --
7   I'm not -- this is why I made the point that I think it's
8   more appropriate, since these documents don't exist, it's
9   more appropriate to serve an interrogatory.
10          I'm not even sure what's being sought
11   there or how we would search the internal electronic
12   database for responsive documents, which, of course --
13   and, of course, the current -- the database will reflect
14   current employees and not past employees or claims period
15   employees.
16          SPECIAL MASTER RODRIGUEZ:  Agree.  I mean,
17   I --
18          MS. GOLINVEAUX:  Which is the reason we
19   struggled with these --
20          SPECIAL MASTER RODRIGUEZ:  But -- but
21   defendant would only --
22          MS. GOLINVEAUX:  Yeah.
23          SPECIAL MASTER RODRIGUEZ:  You can
24   identify currently who the people responsible for this
25   particular topic would be; in fact, it looks like you

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  already have.  You've identified VP of finance, VP of
2  marketing, those types of things.  I think that the
3  plaintiffs probably want a more granular answer, and this
4  may be inartfully done.
5          So my recommendation to them would be, you
6  should look at this and see if you can't work out with
7  the defendants a more helpful response.
8          But on the face of the request for
9  production, it does seem appropriate and not
10 disproportionately burdensome to provide some
11 organizational documents or charts -- whether it's from
12 electronic means, your directories, or otherwise that
13 would be a standard thing that companies would have,
14 particularly for a company the size of Charter -- to
15 identify who those people are that are responsible for
16 these various areas of responsibility, such as copyright
17 infringement complaints, user terms of service, who are
18 those people that are responsible for those areas.
19          All right.  With respect to Request
20 Number 10, I have to admit, Mr. Oppenheim, I struggle to
21 see how the company would be able to put together this
22 strictly from documents such that anybody gets a
23 satisfying answer.
24          It seems more appropriate that the first
25 step would be to get the initial organization information

1  that you've requested in Interrogatory Number -- or
2  sorry, in RFP Number 7 and then follow it up with perhaps
3  an interrogatory or it would be something you would
4  address in your 30(b)(6) or other deposition.
5          MR. OPPENHEIM:  So our issue here,
6  Ms. Rodriguez, is we don't know the names of the
7  different groups within Charter.  We don't have enough,
8  we don't have any kind of documents that give us any
9  insight.
10          What we -- what we have seen in other
11 cases is that there are different teams within the ISP
12 that deal with receiving and -- and responding and
13 implementing infringement notices.  And they get called
14 different things from time to time.  Whoever those teams
15 are within Charter, that's who we're looking for them to
16 identify.
17          I will tell you, in a -- in a normal case,
18 I would have a discussion with opposing counsel.  They
19 would say, "Oh, I think this is what you're looking for,"
20 and it would be an amicable process, and it would be
21 produced.  Unfortunately, you know, we don't have that
22 happening here, not attributing fault to anybody, but it
23 is what it is.
24          We -- this is kind of the key people who
25 were responsible for doing whatever Charter was doing.

1  So we can't know who to -- who to specifically ask for
2  documents from.  We can't know who we might want to
3  depose, right?  We can't run searches until we have
4  the -- names of these employees.
5          So --
6          SPECIAL MASTER RODRIGUEZ:  Well, I hear
7  you --
8          MR. OPPENHEIM:  -- it would be --
9          SPECIAL MASTER RODRIGUEZ:  -- asking two
10 different things.
11          MR. OPPENHEIM:  Yeah.
12          SPECIAL MASTER RODRIGUEZ:  I'm sorry.  I
13 apologize.  Didn't mean --
14          MR. OPPENHEIM:  Yeah, go ahead.
15          SPECIAL MASTER RODRIGUEZ:  -- to interrupt
16 you.  Go ahead.
17          Well, I hear you --
18          MR. OPPENHEIM:  No, no, go ahead.  I'm
19 done.
20          SPECIAL MASTER RODRIGUEZ:  -- asking two
21 different things.  One thing you're asking for is, who
22 are the different groups, so organizationally, what do
23 they call the team that handles the complaints?  What do
24 they call the team that handles finance?
25          That's a different request than what

1  you've got here, which is:  We want the identification of
2  the people, the actual names of the employees who are
3  responsible for those functions.
4          I don't think that your request is going
5  to get you the answer to the question of, what is the
6  name of the team that does this and what is the name of
7  the team that does that?
8          So --
9          MR. OPPENHEIM:  Yeah, and so let me
10 clarify --
11          SPECIAL MASTER RODRIGUEZ:  -- it seems to
12 me that this is one of those places that you -- you
13 really need to sit down with opposing counsel and find
14 out, who -- who are the people that do this?  Not
15 necessarily by name, but what is the group?
16          And then you may need to follow it up with
17 an interrogatory to get the specific names so that you
18 can do the search.  But --
19          MR. OPPENHEIM:  So yeah --
20          SPECIAL MASTER RODRIGUEZ:  -- it's not
21 necessarily something you can get all in one bite here,
22 it seems.
23          MR. OPPENHEIM:  So what I was expecting to
24 see in response to this RFP was, here are the member --
25 the names of the individuals from a directory who sit in

Page 125

1  this group, and here are the names -- right -- and what
2  is their title and role.  And here is the names of the
3  individuals and their title and role who sit in this
4  group, right?  And there might be two or three groups, I
5  don't know.  But that's what I expected to get.
6          And I don't think it's a stretch, right,
7  to say:  Okay, you had a group of individuals who were
8  responsible for dealing with notices that came in from
9  the RIAA.  What was that group called?  Who was in the
10 group?  What were their titles?
11         That way, when we are looking at the issue
12 of custodians in response to certain search requests, we
13 can say, "Did you search all of these individuals?"  But
14 until we have that information, we can't possibly begin
15 to understand why they've only produced 24,000 documents.
16         So I think -- you know, look, I think
17 we've asked for it.  I'm happy to meet and confer with
18 them on this particular one, but I think that meet and
19 confer would only be productive if they are instructed
20 that they should disclose the organizational structure
21 for how notices are responded to and what the different
22 groups are called and where they're located.  Then we can
23 have a discussion about that and their response to this
24 request for production.
25         SPECIAL MASTER RODRIGUEZ:  Well, in

Page 126

1  fairness, Mr. Oppenheim, what they're saying is you
2  haven't asked that question.
3          Now, this is one of those places where it
4  gets a little frustrating from this end of the debate,
5  that something this straightforward, the parties cannot
6  sit down and formulate really basic questions and get
7  some basic answers in an exchange of information.
8          Believe me, I understand that these cases
9  get difficult and challenging and frustrating.  But at
10 some level, it is in the benefit of everybody -- most
11 importantly, the clients here -- to try and streamline
12 some of this.
13         So it does seem to me at some point, the
14 parties should be able to sit down and say:  We just want
15 to know who the groups are, what are the groups that
16 handle complaints from RIAA or notices from RIAA?  What
17 is the name of that group?  What's the name of the group
18 that does, you know, finance?  What's the name of the
19 group that would handle the marketing?  Those types of
20 things.
21         Are you all telling me that we're at the
22 place we can't do that?  And that we really do need to
23 wade into this in terms of formal discovery requests?
24         MR. OPPENHEIM:  From plaintiffs'
25 perspective -- sorry.  I don't mean to interrupt.

Page 127

1          From plaintiffs' perspective, we would
2  like to have that discussion.
3          MS. GOLINVEAUX:  Ms. Rodriguez,
4  unfortunately, that is never a two-way discussion.
5  That's a one-way discussion with us providing all the
6  information and plaintiffs providing none.
7          So when we get these requests for
8  production that we can all agree Number 10 is more
9  appropriate as an interrogatory, for us to voluntarily
10 pull together information to present to them would leave
11 us on very uneven ground because we are not getting any
12 of the same reciprocity in terms of what's incoming from
13 them.
14         So it really -- we really do need to -- to
15 focus on the formal discovery process for those types of
16 questions where documents don't exist.
17         SPECIAL MASTER RODRIGUEZ:  Okay.  Well,
18 you know, I -- I can't force you to do that.  I think
19 that that's probably why a special master was deemed to
20 be necessary here.  And so we'll -- we'll deal with these
21 one by one.
22         It just -- you know, I don't have to tell
23 you, it takes time, effort, it is challenging and,
24 ultimately, at the end of the day, costly to both sides.
25 But I understand here.  You all are all very good lawyers

Page 128

1  and professionals, and I understand your representations
2  on these issues.
3          So with regard to Request Number 7, I'm
4  going to order that the information requested be
5  produced, sufficient documents to show the organizational
6  structure, identify persons responsible for addressing
7  copyright infringement complaints, user terms of service,
8  acceptable use policies, privacy policies, and finances,
9  which will include the identity and title of each job
10 applicant.
11         If these functions are performed by groups
12 that have different names, an objection or response that
13 they don't have documents simply because it does not
14 comport with the specific phrasing used here of
15 "copyright infringement complaints," for example, but you
16 understand it to be complaints and that group that
17 addresses those happens to be identified as a -- with a
18 different name, nonetheless, you understand the function
19 there, you need to produce those documents addressing
20 that request.
21         So if the copyright infringement complaint
22 department is referred to as something else, such as use
23 issues or some other title, but you understand the
24 function to be the same, the documents identifying those
25 employees need to be addressed here, need to be produced

1   here.

2          Am I communicating, Ms. Golinveaux?

3          MS. GOLINVEAUX:  You are crystal-clear.

4   We understand.

5          SPECIAL MASTER RODRIGUEZ:  Okay.  With

6   regard to RFP Number 10, this appears to be more

7   appropriately housed as an interrogatory that would

8   likely dovetail, to some degree, with Interrogatory --

9   with Request Number 7.  Nonetheless, plaintiffs would

10  need to make this a request as an interrogatory.

11         I'm denying the request for motion to

12  compel as it relates specifically to Document Request

13  Number 10.

14         MR. OPPENHEIM:  Understood.

15         Ms. Rodriguez, before we move on to

16  Number 5, I've been informed that on the custodians, we

17  skipped to the very last category.

18         In order to move this along, that -- that

19  category, by the way, is individuals identified in

20  Charter's own documents as having relevant

21  communications.  And we provided some examples of those

22  and the individuals' names, such as Kelly Matthews, Tammy

23  Stuart, Matthew Nelson, Todd Neuverth.

24         So in order to move this along,

25  recognizing the time, we'll -- we'll reserve on that, and

1   if you instruct the parties to meet and confer on that,

2   leave it until next time after hopefully there's some

3   additional document production and we can revisit it.

4          SPECIAL MASTER RODRIGUEZ:  Yes.  Thank

5   you, Mr. Oppenheim, and I would instruct the parties to

6   meet and confer on this to determine whether or not

7   progress can be made as to whether or not these -- these

8   individuals identified in Charter's documents as having

9   relevant communications should be included on the

10  custodian list.

11         I would indicate again that it seems, to

12  the extent these people are identified in email

13  communications that are substantive and going to the

14  relevant issues in this case, it would be difficult for

15  me to understand how they would not be included on the

16  custodian list.

17         All right.  Did I skip over anything else,

18  other than the financial benefits information that we're

19  about to get to in Topic Number 5 of Plaintiffs' motion

20  to compel?

21         MS. GOLINVEAUX:  No, you did not.

22         MR. OPPENHEIM:  Yes, that is where we are.

23         SPECIAL MASTER RODRIGUEZ:  Okay.  See, we

24  have some agreement on something here.

25         Okay.  I will tell you all that we're

1   coming up on the 5:00 hour Mountain Time.  I realize that

2   is late Eastern Time and late Pacific Time, too, even.

3   It would not be my intention to go much past 7:00 Eastern

4   with this.  To the extent we're not able to finish this

5   this afternoon, we'll need to look for another time to

6   complete these last items.  So . . .

7          All right.  Ms. Sahni, are you going to

8   address the financial benefit RFPs, or somebody else for

9   plaintiffs going to do that?  We're talking about series

10  listed -- one, two, five, six -- eight specific RFPs.

11         MR. GOULD:  Good afternoon, Ms. Rodriguez.

12  This is Jeff Gould for the plaintiffs.  I've been sitting

13  patiently and quietly looking forward to chatting with

14  all of you.  I apologize.  I'm the first half of these,

15  and I believe Ms. Sahni will address the second half of

16  them.

17         So there's an overlay to all of these,

18  Ms. Rodriguez, that I just wanted to touch on before we

19  get into the individual requests, and that is:  These all

20  pertain largely to plaintiffs' claim for vicarious

21  liability, which Judge Jackson just held could move

22  forward in overruling the defendant's motion to dismiss.

23         The claim requires, among other things,

24  that plaintiffs establish that Charter receive the direct

25  financial benefit from its users' infringing activity.

1          Plaintiffs' theory here is that Charter

2   turned a blind eye to known infringement so that it could

3   continue to reap massive profits from infringing

4   subscribers.  The information, the financial information

5   we sought through these requests is critical to that

6   story and the ability to tell it to the jury.

7          The request goes to the heart of the

8   issue.  They seek data about what Charter actually earned

9   off of the infringing subscribers, and they seek data and

10  information on what Charter stood to lose if it were to

11  enforce a more rigid policy that resulted in suspending

12  or terminating subscribers or something else.

13         Now, a helpful way to think about this

14  context and try and give this overview -- because this is

15  decidedly different than all the stuff we've been talking

16  about, like tickets and notices.  So a helpful way to

17  think about this construct and one of the ways that the

18  law recognizes financial benefit is, what was Charter's

19  economic incentive for infringement?

20         So Charter tells us it had a policy of

21  never terminating for copyright infringement.  But what

22  considerations went into that decision?  What were the

23  downsides and costs if Charter had implemented a

24  different policy, including one where it actually

25  considered terminating?  And when it made those decisions

Page 133

1   on what, as a matter of policy, should be suspensions,
2   terminations, or none, what would that have cost them?
3            These requests are also relevant in
4   damages, among other things, to how much Charter profited
5   from the infringing activity it tolerated, and that's one
6   of the factors that the jury can consider in setting an
7   appropriate statutory damages.
8            Now, with that, I'm happy to turn to the
9   specific RFPs or pause for questions, if -- if helpful.
10            SPECIAL MASTER RODRIGUEZ:  No, that's
11   clear.
12            MR. GOULD:  Thank you.
13            SPECIAL MASTER RODRIGUEZ:  Yeah.  Go
14   ahead.
15            MR. GOULD:  Sure.
16            So Request 33 is the first request in this
17   set and through this request, plaintiffs seek monthly
18   revenue from the infringing subscribers from 2016 to
19   present.
20            Now, this request is really core.  This is
21   revenue and billings that Charter earned from the actual
22   subscribers who are the subject of our notices.  How much
23   did Charter make by continuing to provide service to
24   these known infringers?
25            Now, Charter wants to cut off this request

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 134

1   at the end of the claim period.  They say, "You have to
2   2016 and that's all you need."  But whatever Charter
3   collected from these infringing subscribers after knowing
4   that they were infringing is a direct financial benefit
5   from infringement.
6            And Judge Hegarty agreed with that.  He
7   agreed it was relevant, and he ordered them to produce
8   the same information based on a prior request.
9            Now, the current request is a different
10   one.  It seeks similar information but for a different
11   time period.  We specifically reserved this later time
12   period.
13            Now, we got information from Charter in
14   response to that prior order from Judge Hegarty.  Charter
15   produced to us -- we're still not clear if it's actual
16   revenue or if it's just billing records, but Charter
17   produced to us data showing either revenue or billings
18   from the infringing subscribers that were listed in our
19   notices.
20            Now, the problem with this -- and they
21   will tell you that that's a wealth of information and all
22   we could ever need.  But the problem with this, and
23   you've heard this again and again, is that this is tied
24   directly to the same challenge we have in that
25   plaintiffs -- excuse me, Charter had been unable to

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 135

1   identify the tickets, unable to identify the subscribers
2   identified in our notices.
3            So recall, we sent 700,000-or-so notices,
4   and they've identified 38,000.  So for those 38,000,
5   they've given us billing records.  That's a helpful
6   little piece, but it's just a little piece, and we're
7   left having to figure out other ways to explore Charter's
8   financial benefit.  That's what today's financial
9   requests are about.
10            So Request 33, we need these additional
11   years of revenue.
12            There's also a goose/gander issue here.
13   At the April special master conference, Charter claimed
14   it needed plaintiffs' financials -- perhaps you'll recall
15   this.  Charter needed plaintiffs' financials to present.
16   They said it was relevant to damages, deterrence, how
17   much we're making now, whether we're earning it this way
18   versus that way.
19            And, Ms. Rodriguez, you ordered the
20   plaintiffs to produce their financials to present.
21            So this request, 33 by plaintiffs, is far
22   more critical.  It's relevant to damages and issues
23   similar to what Charter described, but it's also directly
24   tied to the very core element of the vicarious claim,
25   which is direct financial benefit.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 136

1            SPECIAL MASTER RODRIGUEZ:  So let me just
2   stop you there, Mr. Gould.  With regard to the financial
3   information that was required from plaintiffs, as I
4   understand it, I think I recall this, that it was the
5   high-level financial information.
6            Is that correct?
7            MR. GOULD:  That's correct.
8            SPECIAL MASTER RODRIGUEZ:  And at what
9   level are you asking for this information to be provided
10   in RFP 33 if we're looking at the goose and gander rule,
11   as you have invoked?  What --
12            MR. GOULD:  Well, I --
13            SPECIAL MASTER RODRIGUEZ:  -- would be a
14   similar or equivalent document set that would provide the
15   information but not require literally us sorting through
16   each subscriber and the revenues?
17            MR. GOULD:  So I mentioned the
18   goose/gander rule to remind -- to remind ourselves that
19   you had found certain of the plaintiffs' financials
20   relevant.  I don't think that it's goose/gander in terms
21   of the exact overlay of what the request is and what the
22   information is relevant to and why it should be provided
23   here.
24            So all Charter needs to do here,
25   Ms. Rodriguez, is export billing data from a database for

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  a bunch of subscribers, and they did that previously and
2  they can do it again.
3            And that's -- I wouldn't be surprised -- I
4  certainly don't know, but I wouldn't be surprised that if
5  when they pulled the data that they have produced, while
6  they had their elbows -- they had their shirt sleeves up,
7  they may have even pulled it for the remaining years,
8  anticipating it may come to this.  I don't know, but we
9  had reserved on this so I wouldn't be surprised.
10           So with respect, Ms. Rodriguez, you know,
11 I don't think the exact same relevance issue that was in
12 our request here is to overall.
13           SPECIAL MASTER RODRIGUEZ:  Okay.  Counsel
14 for Charter, do you want to respond on this particular
15 RFP?
16           MS. GOLINVEAUX:  Yes.  Yes, please,
17 Ms. Rodriguez.  It's Jennifer Golinveaux.  I'll respond
18 briefly, and I'll refrain from responding to Mr. Gould's
19 open speech about vicarious liability, although I
20 certainly have some choice comments I can make about
21 that.  But I'll focus on RFP 33.
22           We think this is a highly inappropriate
23 attempt to end-run what Judge Hegarty has already done
24 here.  Let me explain why.
25           Plaintiffs already served RFP 19 seeking

1  the same information without time limitations.  They
2  moved to compel that in front of Mr. -- or in front of
3  Judge Hegarty, and in the course of his -- his hearing,
4  where he indicated in very strong terms that he thought
5  the discovery period was -- was the appropriate period
6  for these types of requests, at the hearing, the
7  plaintiffs voluntarily limited the request to the
8  discovery period.  Then they served a new RFP seeking
9  same information for what they had just agreed to limit
10 it out.
11           And so this is an end run over a ruling
12 that Judge Hegarty has already made with respect to
13 RFP 19, and it's highly inappropriate.
14           In addition, the -- the revenue from the
15 accused subscribers after the claims period has no
16 relevance for the reasons we state in our paper.  I don't
17 want to spend time now at the end of the day repeating
18 it.  But you see that we disagree with respect to how
19 Mr. Gould framed it relevant with respect to vicarious
20 liability as well.
21           SPECIAL MASTER RODRIGUEZ:  And you've used
22 this information with respect to the plaintiffs -- or,
23 sorry, with respect to the accused subscribers through
24 the claim period?
25           MS. GOLINVEAUX:  Not only that, for the

1  entire discovery period, which was the year look-back
2  before the claims period started.  That's correct.
3            SPECIAL MASTER RODRIGUEZ:  Given our
4  discussion about the claims period and the emphasis that
5  we have given on that, as well as Judge Hegarty's prior
6  ruling on this, I'm not going to order additional
7  documents produced pursuant to RFP 33 going all the way
8  to the present.
9            Defense counsel has represented that they
10 have provided response to RFP 33 up through and
11 including -- what is the date?  You've indicated you
12 added some time here, Ms. Golinveaux.  What is the date
13 that your production goes through?
14           MS. GOLINVEAUX:  It goes through the end
15 of the claims period, which is May 2016.
16           SPECIAL MASTER RODRIGUEZ:  Okay.  So
17 plaintiffs' counsel has represented they have produced
18 documents through May of 2016, May 17, 2016.  All right.
19           MR. GOULD:  Ms. Rodriguez, if I could
20 add --
21           SPECIAL MASTER RODRIGUEZ:  All right.
22 With respect to --
23           MR. GOULD:  Ms. Rodriguez, if I could just
24 add one last point.  This is Mr. Gould.
25           I'm concerned that my point as to why this

1  is critically relevant to financial benefit may not have
2  been articulated as clearly as I'd like.
3            Hold on a second.  I apologize.  My
4  7-year-olds are screaming.
5            Guys.
6            They've been quiet for three hours.
7            MS. GOLINVEAUX:  So are we, Judge.
8            MR. GOULD:  Apologies.
9            So Charter -- plaintiffs have taken the
10 position that every penny earned from new subscribers
11 after Charter knew they were infringing or on notice that
12 they were infringing is relevant to the financial benefit
13 they earned from them.  It cannot be that on the
14 arbitrary end date of the claim period, that financial
15 benefit ends.
16           If it's a subscriber who received 20 or 10
17 or 50 infringement notices during the claim period,
18 stayed on as a Charter subscriber and continued to pay
19 Charter thousands of dollars in the years that followed,
20 and Charter knowing that that infringer had been the
21 subject of many notices, continued to -- continued to
22 collect, that's relevant to that financial benefit.  That
23 goes directly to their incentives.
24           SPECIAL MASTER RODRIGUEZ:  But that could
25 go on for -- I mean, it could go on forever under that

1  theory.  At some point, there has to be a logical
2  endpoint, and I suppose it is arguable that there is some
3  benefit, but I think there is -- there are alternative
4  ways to prove this without getting into financial
5  information into infinity, in theory, according to this
6  argument, Mr. Gould.
7         MR. GOULD:  Doesn't that go,
8  Ms. Rodriguez, to the weight that should be afforded the
9  information and not whether we should be entitled to look
10  at it, whether our experts should be entitled to examine
11  it and present it to the jury?
12         Certainly Charter and its counsel are
13  competent and capable of trying to undermine the value of
14  that information or why it matters.  We shouldn't be
15  precluded, I don't believe, at this point from having the
16  opportunity to explore it.
17         SPECIAL MASTER RODRIGUEZ:  Well --
18         MS. GOLINVEAUX:  Ms. Rodriguez, if I could
19  just --
20         SPECIAL MASTER RODRIGUEZ:  -- Mr. Gould, I
21  understand your position, but I -- I have a hard time
22  getting in this information with regard to matters beyond
23  the claim period.  It appears that what's directly
24  relevant here is, what is the financial benefit that
25  Charter gained?

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1         You also can argue that they obviously had
2  to have benefit beyond the particular claim period for
3  those subscribers that continued, but at this point in
4  time, it does not appear that that information is
5  sufficiently probative of the issues currently before us
6  in this case to require the additional benefit.
7         MR. GOULD:  If I might add one additional
8  point.  Given the limitation on Charter's ability to
9  identify subscribers that received our notices, by
10  definition, we are only getting financial data showing
11  the financial benefit from subscribers identified in
12  5 percent of our notices.  We need to find other ways
13  that we --
14         SPECIAL MASTER RODRIGUEZ:  Uh-huh.
15         MR. GOULD:  -- can afford the financial
16  benefit.
17         So if it's expanding the pool of
18  subscribers from whom Charter was deriving a financial
19  benefit, that's one way.  They've tried that.  They can't
20  identify any more.
21         So what are we left with?  We're left with
22  other approaches, and one of those approaches is to find
23  out and understand the whole scope of benefit they
24  received from the few that they could identify, number
25  one.  And another, I'll touch --

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 143

1         SPECIAL MASTER RODRIGUEZ:  I'm sorry.
2  Hold on, hold on.  Repeat number one.  You cut out.
3  Repeat number one.
4         MR. GOULD:  Apologies.
5         Number one is -- one way you can do it is
6  to expand the pool of infringing subscribers from whom
7  Charter was receiving a financial benefit.  We've tried
8  that.  We spent hours on our last month's call trying to
9  figure out how we could identify more subscribers.  We
10  couldn't.
11         So what we're left with is billing and
12  revenue data for subscribers implicated by a microscopic
13  5 percent of our notices.  That's not an adequate
14  snapshot.  It's just not.
15         So then we're left looking for other ways
16  to explore the financial benefit.  A couple of those I'll
17  get to in the next request.
18         But on this one, an obvious way, to me at
19  least, and one that's core to the issues, is to get a
20  better picture of what it is that Charter earned from
21  these subscribers that it knew, had reason to know, was
22  receiving infringement notices from -- for over and over
23  again.  And it's not a big request.  It's another push a
24  button on the database to expand out the exact data that
25  they've already produced.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 144

1         MS. GOLINVEAUX:  Ms. Rodriguez, if you
2  want a response, I'd like to have an opportunity to
3  respond to this, please.
4         SPECIAL MASTER RODRIGUEZ:  Well, yeah.
5  I'm having a hard time understanding how it's just a push
6  response to what you've already produced.  It seems to me
7  that the question -- I understand the plaintiffs'
8  quandary, which is that through no fault of the
9  plaintiffs -- and plaintiff has assertions about why this
10  is -- we don't know the answers to all of this yet.  It
11  remains to be proven as part of discovery.
12         But nonetheless, the world of information
13  is limited and they are trying to identify other ways to
14  obtain the information, which is what they must do.  One
15  way would be to expand the pool.  I hear that.  But it
16  does not appear to me that that's the request that's in
17  front of us right now.
18         I understand, Mr. Gould, you're giving
19  that as context.  But I'm not sure I understand how, A,
20  this particular response addresses the issue you raised
21  and, B, why it is just the push of a button to obtain
22  this information.
23         So maybe you all can enlighten me on that
24  issue.
25         MS. GOLINVEAUX:  Well, Ms. Rodriguez, if I

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  could, there was -- Mr. Gould likes to infer to the
2  limited ticket data, and you noted that that's through no
3  fault of plaintiffs, but it's important to keep in mind
4  here that plaintiffs first put Charter on notice of this
5  case, as Mr. Oppenheim offered to you earlier today, in
6  March of 2016.  They sent their last notice a year
7  earlier.
8           Going back from when Charter got notice,
9  it had very reasonable retention policies in place, and
10  it was not Charter's fault that plaintiffs sat and waited
11  more than a year to even put Charter on notice of its
12  intended claims after they sent the last notice.  So --
13           SPECIAL MASTER RODRIGUEZ:  I get it.
14           MS. GOLINVEAUX:  -- it's --
15           SPECIAL MASTER RODRIGUEZ:  Thank you --
16           MS. GOLINVEAUX:  -- inappropriate --
17           SPECIAL MASTER RODRIGUEZ:  -- for
18  reminding me of that --
19           MS. GOLINVEAUX:  -- to point fingers.
20           SPECIAL MASTER RODRIGUEZ:  -- particular
21  piece.
22           MS. GOLINVEAUX:  Yes, yes.
23           SPECIAL MASTER RODRIGUEZ:  I think the
24  remaining question that will ultimately be answered, not
25  by me, and this is whether or not the retention policy in

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  and of itself was reasonable, and that will be something
2  that will get debated long into this case.
3           MS. GOLINVEAUX:  Sure.
4           SPECIAL MASTER RODRIGUEZ:  But I hear what
5  you're saying.
6           But again, I guess irrespective of that, I
7  struggle to see how this is information that's going to
8  answer that specific question that plaintiffs are trying
9  to get information about, given the lack of ticket data,
10  not casting aspersions on anybody.  It's just a fact of
11  life that we have what we have at this moment.
12           MR. GOULD:  Ms. Rodriguez, if I can
13  request -- add one other overlay.
14           We're talking here again about
15  discoverability, not admissibility.  And this is
16  information, again, that these same -- many upstanding
17  attorneys on this call, including Ms. Golinveaux,
18  including myself, dealt with at length in the Cox case.
19           And in the Cox case, what the judge
20  ordered to be produced in terms of billing data was
21  billing data for the subscribers identified in the
22  notices, including for several years after the claim
23  period, several years after the claim period.
24           And Winston, on behalf of their client,
25  Cox, fought that vociferously.  Their objection was

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  overruled, the data was produced.
2           Down the road, Winston, on behalf of its
3  clients, filed motions in limine and argued at length,
4  both in motions in limine and on Daubert motions, as to
5  the financial experts sponsoring that data.  And they
6  made every argument possible to them to keep out any iota
7  of billing data that postdated the claim period.  And at
8  each turn, those objections were overruled.
9           And what the expert, financial expert in
10  Cox presented on the billing data extended to the full
11  outside dates that the court had ordered to be produced.
12  That information was admitted.  The jury considered it,
13  and so it's -- to be left here with a ruling that it's
14  not even discoverable doesn't -- doesn't feel right to
15  me.
16           MS. GOLINVEAUX:  And -- and,
17  Ms. Rodriguez, in this case, not the Cox case, plaintiffs
18  already moved on a nearly identical request for
19  production and to resolve the issue with Judge Hegarty,
20  they limited it -- our -- what we had to produce to the
21  discovery period, and now they're coming back and asking
22  you for more than he directed, which is highly -- as I
23  said in the beginning, highly inappropriate.
24           MR. GOULD:  This is a primary issue that
25  was a sticking point before Judge Hegarty, and this was

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1  some time ago, was the challenge and alleged burden by
2  Charter of identifying the subscribers identified in our
3  notices.  This was a long time ago.  Charter hadn't
4  identified the subscribers yet and relied heavily on the
5  burden in their ability to do so.
6           We're in a different place now.  We know
7  that it's a very small group relative to the overall body
8  of Charter subscribers and overall body of subscribers
9  who received our notices.  And Charter has that
10  information, they demonstrated the ability to produce the
11  data for the years at issue during the claim period.  And
12  we've now presented, Ms. Rodriguez, with, I think, ample
13  information showing at a minimum the discoverability
14  here.
15           SPECIAL MASTER RODRIGUEZ:  Okay.  I will
16  look back again at Judge Hegarty's ruling on this issue.
17  I'm not going to give an order right now.  I will take a
18  look at it and provide you with my order when I issue the
19  rest of the order.  Thank you.
20           MS. GOLINVEAUX:  Thank you.
21           MR. GOULD:  Thank you, Ms. Rodriguez.
22           SPECIAL MASTER RODRIGUEZ:  So we're at 43.
23           MR. GOULD:  If I could go a bit out of
24  order to keep kind of in the same seam, would that be
25  okay, Ms. Rodriguez?

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

1         SPECIAL MASTER RODRIGUEZ:  Sure.

2         MR. GOULD:  I'm going to go next to RFPs

3 50, 52, and 53.

4         RFP 50 -- and I'll take them one at

5 time -- seeks documents sufficient to show the costs of

6 obtaining and terminating subscribers.  Now, these --

7 this request goes directly to the costs saved by Cox --

8 I'm sorry, I keep doing that.  I apologize.

9         This request goes directly to the costs

10 saved by Charter by tolerating infringement, and again,

11 that's an important part of the economic incentive

12 analysis.

13         So to break this down a little bit, there

14 is a cost to Charter associated with attracting a new

15 subscriber.  That's a cost that Charter calculates.  The

16 higher the cost, the greater Charter's incentive to

17 retain existing -- to retain existing customers.  That's

18 fairly basic economics.

19         There's also some cost to terminating

20 subscribers, and no doubt Charter knows what that is.

21 Charter terminated over 1 million subscribers in the same

22 time period for not paying their bills.  They know what

23 it costs to terminate a subscriber.

24         And so what we need to know is what that

25 cost is, because it shows us the cost that Charter saved

1 by tolerating infringement and never terminating.  So

2 what did Charter earn in terms of cost saved.

3         Now I'll refer again, I know people are

4 tired of it, but it's the closest analog.  The same

5 counsel from Winston argued in the Cox case:  The

6 plaintiffs have not identified any costs saved by

7 tolerating infringement.  This was a theme throughout.

8 They said plaintiffs haven't identified what the costs

9 are that we're saving.  So here we are back round 2 and

10 we want to know, we're asking:  Okay, what are those

11 costs?

12         MR. ELKIN:  This is Mr. Elkin.

13         Before Ms. Golinveaux responds, I just

14 want to say that I must have been at a different trial,

15 because we had not only provided information regarding

16 this issue, there was testimony actually addressed as to

17 what costs were actually relevant and what was actually

18 expenses related to, you know, not picking up equipment,

19 all different types of things that were put directly to

20 the head of finance at Cox Communications.

21         So I just don't even know where to begin

22 with that.

23         SPECIAL MASTER RODRIGUEZ:  Well, look, I

24 can't relitigate the discovery issues in the Cox case.

25 I've got to make decisions based upon this case and what

1 makes sense, what's relevant, what's proportional in

2 light of the claims and defenses put forth in this case.

3 And we have a challenging enough time dealing with what's

4 gone on in this case.

5         Now, I do appreciate the guidance.  If you

6 can point me to specific orders, motions, opinions in the

7 Cox case, that is, in some instances, helpful.  But just

8 general argument in reference to what was produced, what

9 was not, what was allowed, how evidence was used, is

10 challenging, particularly in light of the parties'

11 differing views on what was done, what evidence was

12 presented and admitted in the Cox case.

13         So with regard to RFP 50, average revenue

14 or profit per prescriber -- sorry, 52, average revenue or

15 profit per prescriber, it appears to be fairly

16 straightforward and should be information that Charter

17 has available to it.

18         MS. GOLINVEAUX:  Ms. Rodriguez, if I -- if

19 I could just briefly address that request.

20         SPECIAL MASTER RODRIGUEZ:  Uh-huh.

21 Uh-huh.

22         MS. GOLINVEAUX:  Plaintiffs already have

23 the information to calculate this based on revenues from

24 the accused subscribers that got their notices because

25 we've already produced the revenue information through

1 the larger discovery period for those subscribers.  This

2 request goes broader and asks about average revenue and

3 profit that we receive for any subscriber for the life of

4 the account for a long period of time.

5         So it's -- it's really not relevant to the

6 claims in the case, and the plaintiffs already have the

7 information they need on this with respect to the

8 subscribers who actually got their notices.

9         SPECIAL MASTER RODRIGUEZ:  Well, I

10 understand that the defendant would limit this strictly

11 to the subscribers that got their notices.

12         But seems to me that the plaintiffs are

13 asking for something broader here and are likely entitled

14 to probe that information because they're looking to be

15 able to make an argument in general, particularly where

16 they don't have the ticket data for a great number of

17 those people for whom notices were sent.

18         But certainly a company such as Charter

19 would have to have information regarding its average

20 revenue or profit per prescriber for the relevant claim

21 period.  So I will order that that information be

22 provided as requested in Interrogatory -- or in RFP

23 Number 52.

24         With regard to RFP 50, the representation

25 that termination information is available related to

subscribers who failed to pay, it seems that that's a
different issue, and average cost of obtaining -- let me
ask this question:

Does Charter keep data about average costs
of obtaining or terminating a subscriber?

MS. GOLINVEAUX:  Not -- not in the form
requested in this RFP, Ms. Rodriguez.  I mean, there's
various data points, obviously, in financial documents
that are relevant to this, but no -- I would say no
document sufficient to show this as plaintiffs have asked
it.

SPECIAL MASTER RODRIGUEZ:  All right.
Well, does -- it sounds like Charter does keep data for
the claim period that would provide Charter's average or
estimated costs for, one, obtaining a subscriber, and,
two, costs with terminating a subscriber's Internet
service.  It seems to me to be a fairly straightforward
inquiry and something that Charter does have.

So I would order that Charter produce that
information -- it's fairly limited here, that -- produce
the average or estimated cost that Charter estimates for
obtaining a subscriber during the claim period and the
average or estimated cost associated with terminating a
subscriber's Internet service during the claim period.

MS. GOLINVEAUX:  We'll do that to the

---

extent the documents exist.

SPECIAL MASTER RODRIGUEZ:  Exhibit
Number -- or, sorry, RFP 53.

Mr. Gould, would you like to address that
one specifically?

MR. GOULD:  Happy to, Ms. Rodriguez.

This is, again, another input that's
important for our financial expert to test Charter's
assertion as to the revenues, average revenues it
receives from its subscriber.

Essentially, you can think of this,
Ms. Rodriguez, as a multiplier.  Our expert intends to
both test Charter's representation on its revenue per
subscriber and to conduct his own or her own analysis.
That is typically information that can be determined on
an annual basis.

In order to determine the full value of a
subscriber to Charter, you need the multiplier to figure
out if Charter earns, on average, $100 or $1,000 per
subscriber per year; and the average subscriber purchases
services from Charter for seven years, then you multiply
it by seven years.  It's a fairly straightforward metric
that goes into the analysis.

What we know from working on -- and with
ISPs like Charter over the years, that this is

---

information that can be readily determined using a metric
called churn data.  Churn data by ISPs -- and
Ms. Golinveaux will, no doubt, correct me if I'm
mistaken -- is more or less a measure of the subscribers
leaving and entering the company's subscription base.

And from those monthly start-and-finish
tallies, you can do a very simple -- not simple for me,
but simple to someone with greater financial skills -- do
a calculation that nets out an average lifetime tenure
for the period in which you're examining.

SPECIAL MASTER RODRIGUEZ:  Well,
Ms. Golinveaux, does this -- does this data exist?  Have
you looked into what Charter actually does keep, does
generate?

MS. GOLINVEAUX:  Ms. Rodriguez, like the
last one, I think there are different data points around
this.  I don't think there are documents sufficient to
show this in the form plaintiffs requested it.

And more fundamentally, we don't think
it's relevant to any issue or defense in the case, like
the time of subscription.  With all due respect to
Mr. Gould's argument, they just haven't explained how
subscriber attrition or how long they stuck around would
have, in any way, had anything to do with how Charter
treated the RIAA notices.

---

SPECIAL MASTER RODRIGUEZ:  Well, I would
guess -- I don't know, Mr. Gould will jump in -- but I
guess they're saying that the longer you can keep them,
the more money you make, and that is why you have an
incentive not to terminate.  I don't know.  Is that --

MS. GOLINVEAUX:  Yeah, but the direct -- I
understand that and that's fair.

But the point is here -- and Judge Jackson
has already reiterated that in his order on the motion to
dismiss the vicarious liability claim -- is that
Mr. Gould is arguing that this is relevant to the direct
financial benefit prong of vicarious liability.

But what that prong looks at is whether
subscribers were drawn to Charter's service to infringe
plaintiffs' works, not generally what Charter subscribed
or how long it kept its -- it kept subscribers, and we
cite to that portion of the order in our brief.  It's
footnote 20.  It's page 7 of Judge Jackson's order.

So it's really, when you look at the
proper inquiries with respect to that prong, this is
entirely irrelevant.

MR. GOULD:  Ms. Rodriguez, if I could
respond, please.

SPECIAL MASTER RODRIGUEZ:  Yes.

MR. GOULD:  A couple of things.

Page 157

1    Ms. Golinveaux keeps referring to this
2  notion of draw.  We have separate requests that target
3  discovery as to the draw factor, and Ms. Sahni will
4  address those in a few moments.
5    This request is, in some ways, you can
6  think of it as the flip side of the coin for Request 52,
7  which you found relevant and ordered to produce.  52 was
8  for Charter to produce documents that show the average
9  revenue per subscriber.  That's great.  We'll get the
10  information as Charter gives it.
11    But our expert is going to do his own
12  financial analysis and kick the tires on that and decide
13  if he thinks they're right or wrong or if it's something
14  different.  This metric is needed for that analysis.
15    Now, to Ms. Golinveaux's point that the
16  only revenue arguably relevant is that from the
17  infringing subscribers, that's not right.  Our view is
18  that's not right.
19    The way to think about this,
20  Ms. Rodriguez, is when Charter was designing and later
21  implementing a policy which, as you've now heard, never
22  required termination unless some court said they had to
23  for repeat infringement, when Charter implemented that
24  policy, it would have been analyzing:  What is the value
25  of a subscriber to the company if we lose a subscriber to

Page 158

1  the company?  That's not this infringing subscriber or
2  that infringing subscriber.
3    The way that ISPs looked at it is, what is
4  the subscriber base?  And they do financial projections
5  based on how much revenue is coming in for each
6  subscriber and as the subscriber base.
7    So we're entitled, I believe, to do our
8  analysis and to determine what we believe is the overall
9  value of an average subscriber, and this lifetime tenure
10  input is an important piece of that.
11    MS. GOLINVEAUX:  And again, Ms. Rodriguez,
12  Mr. Gould has not articulated any element of any claim or
13  defense to which that is relevant.  The financial benefit
14  prong of vicarious liability does not look at that
15  information.
16    So this is beyond the scope, beyond the --
17  and it's not proportional because there really -- they
18  have articulated zero relevance for this churn rate that
19  he's talking about right now in RFP 53.
20    SPECIAL MASTER RODRIGUEZ:  Well, let me
21  ask you this:  I mean, we're asking -- we're providing
22  you with the average revenue and profit you receive per
23  subscriber for the entire length of the account during
24  the claim period.  Can you not use that information to
25  then glean the additional information that you're trying

Page 159

1  to do, which is the -- the, you know, multiplier of
2  however many years it is?
3    MR. GOULD:  So respectfully --
4    SPECIAL MASTER RODRIGUEZ:  Or are you
5  simply -- let me just ask -- finish my question.
6    MR. GOULD:  Yeah.
7    SPECIAL MASTER RODRIGUEZ:  Or are you
8  saying that what you need is the average length of time
9  that Charter has a subscriber as a customer?
10    MR. GOULD:  I need that, what you just
11  said at the end.  And the reason I need that --
12    SPECIAL MASTER RODRIGUEZ:  Okay.
13    MR. GOULD:  -- is so that my -- so that
14  our financial expert can do his own analysis to determine
15  the average lifetime value of a subscriber to Charter,
16  which is to --
17    SPECIAL MASTER RODRIGUEZ:  Okay.
18    MR. GOULD:  -- just address this -- I'll
19  leave it at that, unless you --
20    SPECIAL MASTER RODRIGUEZ:  That is a
21  very -- yeah, that is a very narrow request.  So -- and I
22  have to believe that Charter has that information.
23    So I would order that Charter would
24  produce the average time that Charter retained a customer
25  during the claim period, if there are documents that show

Page 160

1  that information, that would show that -- yes, show that
2  information.  That would be very limited and narrow, and
3  I'm not going to order that Charter in this instance,
4  with regard to RFP 53, create or do calculations that it
5  does not already have if this is not data that it does
6  not already keep.  All right.
7    Is that clear, Ms. Golinveaux?
8    MS. GOLINVEAUX:  It is.  Thank you.
9    SPECIAL MASTER RODRIGUEZ:  All right.  It
10  is 5:20.  We -- I need to ask the court reporter, how are
11  you doing?  It sounds like we probably -- if we are going
12  to continue, take -- certainly take a break, but this has
13  been a long period.
14    Are you able to continue?  We have three
15  additional requests for production, but you've been with
16  us here now for a few hearings; that could take a while.
17  So I hate to put you on the spot, but you are important,
18  a very important component of this, and I do want to be
19  respectful of your time as well.
20    So, Ms. Dittmer, do you have time
21  constraints and a preference here?
22    THE COURT REPORTER:  If I have a break,
23  I'll be okay to go on.
24    SPECIAL MASTER RODRIGUEZ:  Okay.  I
25  realize, Counsel, particularly on the East Coast, we're

1  pushing it here in terms of time.  Are we up against any
2  time constraints from your perspective?  Are you able to
3  continue, or should we continue this over to another day?
4           MR. SPERLING:  I think, from the
5  plaintiffs' side -- this is Mr. Sperling -- we'd like to
6  continue.
7           SPECIAL MASTER RODRIGUEZ:  Okay.
8           THE COURT REPORTER:  Who was that, please?
9           SPECIAL MASTER RODRIGUEZ:  Counsel for
10 Charter?
11          MR. SPERLING:  Sorry.  That was
12 Mr. Sperling speaking.
13          THE COURT REPORTER:  Thank you.
14          SPECIAL MASTER RODRIGUEZ:  And counsel --
15          MS. GOLINVEAUX:  I --
16          SPECIAL MASTER RODRIGUEZ:  -- for Charter?
17          MS. GOLINVEAUX:  Yeah.  I guess I need to
18 hear from my colleagues.  It's Jennifer Golinveaux.
19          I can continue if we're talking about
20 going for another half-hour or so.
21          MR. ELKIN:  Mr. Elkin here.  I'm fine with
22 that.
23          MS. RANAHAN:  That's fine with me, too.
24          SPECIAL MASTER RODRIGUEZ:  Okay.
25          MS. RANAHAN:  This is Erin.

1           SPECIAL MASTER RODRIGUEZ:  All right.
2  Well, let's take a 15-minute break.  We'll come back on
3  at, say -- let's do -- well, it won't be quite 15
4  minutes, 13 minutes -- 5:35.  And we'll try to be as
5  brief as we can to march through these last three.
6           UNIDENTIFIED SPEAKER:  Thanks very much.
7           UNIDENTIFIED SPEAKER:  Thank you.
8           SPECIAL MASTER RODRIGUEZ:  All right.
9  Thank you everybody.
10          (Recess taken from 5:23 p.m. until
11 5:36 p.m.)
12          SPECIAL MASTER RODRIGUEZ:  All right.  We
13 have Ms. Golinveaux, and I assume we have our Charter
14 team, and we've got the plaintiff team.  All right.
15 Let's go.
16          Mr. Gould, are you going to address
17 RFP 57?
18          MR. GOULD:  Well, one more from me,
19 Ms. Rodriguez.  43, we took 43 out of order.  I'd like to
20 address that and then turn the --
21          SPECIAL MASTER RODRIGUEZ:  Oh.
22          MR. GOULD:  -- conch shell over to my
23 colleague, Ms. Sahni.
24          SPECIAL MASTER RODRIGUEZ:  I keep trying
25 to skip things and you keep calling me back.  Thanks for

1  keeping me on track.
2           MR. GOULD:  Just one more hour.  Thank
3  you.
4           So Request 43, Ms. Rodriguez, is another
5  request related to financial issues.  The request is for
6  documents discussing the impact of subscribers' use of
7  bit torrent or peer-to-peer networks and current or
8  future profits.  And what Charter has agreed to produce
9  is only documents concerning the use of bit torrent to
10 infringe copyright.
11          So unfortunately, given the hour, this is
12 one that requires a little bit of explanation.
13          Bit torrent and other peer-to-peer
14 protocols like it are notoriously bandwidth intensive.
15 They're what we like to think of as sort of bandwidth
16 hogs; they just soak up a ton of bandwidth.  They benefit
17 from higher-speed service.
18          Subscribers that are heavy bandwidth users
19 and need higher speeds tend to subscribe to more
20 expensive Internet plans.  Now, this is no secret.
21 Charter certainly knows it, and we need the documents
22 that discuss that.
23          So ISPs like Charter do a tremendous
24 amount of internal analysis of other users' activities.
25 They look at bandwidth consumption, they look at their

1  customers' needs and preferences, they sometimes call it
2  consumer insights.  And it's the data that drives
3  marketing strategies.
4           And they do that so that they can tailor
5  their offerings to their customers and their customers'
6  needs and so they can improve the service to their
7  customers and, unsurprisingly, so that they can retain
8  customers and make more money.  So this RFP targets
9  documents discussing those financial impacts.
10          Now, Charter -- Charter's only response to
11 this request is that it's irrelevant because bit torrent
12 has legitimate uses.  But respectfully, that goes to
13 weight of any information that's produced, not
14 discoverability.  And so what they have agreed to produce
15 is simply not enough.
16          SPECIAL MASTER RODRIGUEZ:  Well --
17          MR. GOULD:  Plaintiffs --
18          SPECIAL MASTER RODRIGUEZ:  -- Mr. Gould,
19 let me ask you this question while you're explaining this
20 to me.
21          Isn't this going to, by necessity -- even
22 if we were to assume it's going to gather information
23 about improper use, isn't it going to gather an enormous
24 amount of data about uses that are proper and/or wholly
25 irrelevant to the inquiry at issue in this case?

1    MR. GOULD:  I don't think so and here's
2  why.  Our position, and we'll present evidence on this,
3  is that the overwhelming majority of activity on bit
4  torrent and peer-to-peer infringing -- and peer-to-peer
5  networks at issue in this case are infringing,
6  overwhelmingly, 99 percent.  There are market --
7    SPECIAL MASTER RODRIGUEZ:  What's the
8  basis for that?
9    MR. GOULD:  Academic literature in the
10  field.  We've produced a slew of it in prior cases.  It's
11  the kind of market studies and research data that experts
12  in the field rely on, not only to inform expert opinions
13  on the scope of infringement occurring on bit torrent,
14  but even admissible as market studies under the market
15  studies exception to the hearsay rule.
16    So Charter is free, of course, to try to
17  detract from those studies and from that data and from
18  those analyses and present its own information about the
19  myriad of uses that, you know, occasionally someone may
20  use bit torrent unlawfully.  But what the evidence that
21  we've seen in these cases shows and academic and research
22  literature supports is that the overwhelming majority is
23  infringing.
24    Now, admittedly, Charter has latched onto
25  this theory about these bit torrent bundles that they

1  claim show somehow that you are using bit torrent to
2  promote works lawfully.  We don't think there's anything
3  to that, but that will come out down the road.
4    But given the landscape and literature on
5  the uses of bit torrent for overwhelmingly infringing
6  activity and the evidence that we've seen in cases like
7  this, ISPs look at and are aware of the
8  bandwidth-intensive nature of bit torrent, and that tends
9  to and often does drive customers into higher-tier
10  Internet plans.
11    So if customers are using a service that's
12  overwhelmingly known for infringement and it forces them
13  into higher Internet plans, that inures to come to
14  Charter's financial benefit, particularly where they
15  know -- because they're looking at the bandwidth
16  consumption and they're looking at the bit torrent
17  usage -- the number of gigs per hour that subscribers are
18  using, they see that data and it's part of the analysis.
19    So, you know, it's -- it's information
20  that a jury is entitled to see and certainly we're
21  entitled to discover.
22    SPECIAL MASTER RODRIGUEZ:  Okay.
23  Ms. Golinveaux, or whoever from Charter's side is going
24  to address this?
25    MS. GOLINVEAUX:  Thank you.  It's Jennifer

1  Golinveaux.
2    Mr. Gould -- so first of all,
3  Ms. Rodriguez, you had it exactly right.  This request is
4  overbroad.  The issue is not bit torrent or peer-to-peer
5  generally.  It's using bit torrent for infringement.
6    Mr. Gould has the technology wrong.  It is
7  not the big bandwidth user.  It's movies and those
8  types -- that type of streaming content that are big
9  bandwidth users, so that's pure creation that he has
10  made.
11    He's also -- these studies he's referring
12  to are apparently studies that his own clients have
13  conditioned and are highly partisan, and they don't even
14  show near the percentages that he just mentioned.
15    So all that is just incorrect.  And our
16  concern with this one and our objection goes to the
17  overbreadthness of the request that you pointed to.  The
18  impact and use of bit torrent generally is not probative
19  of any issue, any claimed defense in the case, and it's
20  not proportional.
21    SPECIAL MASTER RODRIGUEZ:  All right.
22  Well --
23    MR. GOULD:  Can I just quickly comment on
24  that?
25    SPECIAL MASTER RODRIGUEZ:  I have no idea

1  who's talking right now.
2    MR. GOULD:  So Ms. Rodriguez, this is Jeff
3  Gould.
4    So a couple of points.  Number one, first,
5  the arguments that Ms. Golinveaux is making go to the
6  weight of the evidence, not its discoverability.  Whether
7  there's this much infringement or that much infringement
8  goes to weight.
9    Secondly, the Supreme Court in the
10  Grokster case, which is one of the key secondary
11  liability cases in peer-to-peer context:  Napster and
12  Grokster.
13    In the Grokster case, the Supreme Court
14  decision cited -- recognized the overwhelming use of
15  peer-to-peer for infringement.
16    So, you know, Ms. Golinveaux may disagree
17  about the kind of scope and parameters of it, but the
18  record is clear, and you can do some searching on your
19  own to satisfy yourself.  We're also happy to submit
20  information, including like that which we cited in our
21  Complaint and which Judge Jackson cited in denying Cox --
22  Charter's -- excuse me, Charter's motion to dismiss the
23  vicarious claim.
24    So what we're looking for is documents
25  that talk about Charter's customers using bit torrent and

1  driving them into higher-tiered plans that inured to
2  Cox's financial benefit.  It's not that -- it's no
3  stretch at all.
4          MS. GOLINVEAUX:  It does not go to weight;
5  it goes directly to relevance.  There's evidence that
6  plaintiffs and their artists themselves use peer-to-peer
7  technology as an efficient way to distribute the bit
8  torrent bundles and other ways of getting samples of
9  their work and distribution of their work.
10          We cite in our brief other examples of
11  NASA and Facebook and other companies using it.  It's an
12  efficient communications protocol.  Nothing is inherently
13  infringing about peer-to-peer technology, and it's
14  overbroad to serve a request that seeks, you know,
15  basically the fact that any -- any reference to bit
16  torrent whatsoever.  It's completely irrelevant.  It
17  doesn't go to weight.
18          SPECIAL MASTER RODRIGUEZ:  All right.
19  With regard to RFP 43, the request is broad and the
20  information ultimately that is being requested to benefit
21  and relevance to this matter and the claims and defenses
22  set forth in this case does appear to be attenuated.
23          It's not so much, and Charter -- sorry,
24  and plaintiffs have not limited their request to simply
25  infringers, but the entire population, which would appear

1  to encompass an incredible amount of information that is
2  not reasonably calculated to lead to the discovery of
3  admissible evidence in this matter and is not in
4  proportion to the needs of the case.
5          Perhaps there is a way that they could
6  narrow this that would more specifically target the
7  infringing use of bit torrent users.  Then to take it to
8  the next level to assert that the use of bit torrent
9  causes users to move to more expensive levels of
10  subscription, again, appears to be a leap of some
11  magnitude here.
12          Lacking further foundation for this
13  request, I am going to deny plaintiffs' motion to compel
14  with regard to RFP 43.
15          MR. GOULD:  Thank you, Ms. Rodriguez.
16          SPECIAL MASTER RODRIGUEZ:  All right.
17  RFP 57.
18          MS. SAHNI:  Hi, Ms. Rodriguez, this is
19  Neema Sahni.  I'm happy to address this one, if you would
20  like me to start for the plaintiffs.
21          SPECIAL MASTER RODRIGUEZ:  It seems to be
22  a fairly narrow request to understand whether or not
23  there is an incentive for employees to retain
24  subscribers, what that compensation might be.  Do I
25  understand your request, Ms. Sahni?

1          MS. SAHNI:  Yes, that's right,
2  Ms. Rodriguez.  This request seeks only documents
3  sufficient to show the extent to which compensation is
4  applied to retention.  So to the extent that there was no
5  such compensation or bonus structure, then that's fine.
6  There won't be anything to produce.
7          But to the extent there was such a bonus
8  structure or compensation structure that tied retention
9  to bonuses or increases in compensation, that's what
10  we're looking for, for these documents.
11          SPECIAL MASTER RODRIGUEZ:  Counsel for
12  Charter, this seems to be a narrow request which would be
13  relevant to any motive or incentive that Charter
14  employees reviewing these notices would have to
15  continuing the employee -- or sorry, the subscriber and
16  not terminating the subscriber.
17          What -- what is the objection on this?  I
18  understand you've indicated vague, ambiguous, overbroad,
19  unduly burdensome, outside the scope of permissible
20  discovery, but it does appear directly relevant to the
21  claims and defenses that have been raised in this case.
22          MS. GOLINVEAUX:  It's Jennifer Golinveaux.
23          On 57, and I think as we note in our
24  briefs, Charter didn't have a policy to terminate in
25  response to these copyright notices, so the idea that

1  somehow the folks who review the notices would have --
2  would have been compensated for retaining them and that
3  would be probative of something, that makes no sense
4  whatsoever.
5          There's just -- and that's their only
6  relevance theory, and it just doesn't -- it doesn't stack
7  up.  So that was what the objection was based on, the
8  lack of relevance.
9          SPECIAL MASTER RODRIGUEZ:  Okay.  Well, it
10  does appear to me that this would be a relevant inquiry.
11  If I understand what you're saying, Ms. Golinveaux, is
12  that there would be no policy to incentivize employees
13  not to terminate or that there would be some sort of
14  compensation tied to retention would not be the case
15  given the policy.
16          MS. GOLINVEAUX:  Right.
17          SPECIAL MASTER RODRIGUEZ:  But it seems to
18  me, then, the answer is, we don't have any such
19  documents.  But it does seem that plaintiffs should be
20  entitled to an answer.
21          MS. GOLINVEAUX:  Understood.
22          SPECIAL MASTER RODRIGUEZ:  All right.  Now
23  RFPs 41 and 42.
24          MS. SAHNI:  Yes, thanks, Ms. Rodriguez.
25          So these are our last two RFPs.  If there

Page 173

1  are specific questions, I'm happy to answer those, though
2  I can just give you an overview on why we believe this is
3  relevant and directly consistent with Judge Jackson's
4  order on our vicarious charge.
5         SPECIAL MASTER RODRIGUEZ:  A very brief
6  overview -- overview would be helpful, but really, if you
7  could focus on the breadth of this request.  I have a
8  sense that I understand where you're going here, but it
9  seems to me that this is potentially extremely broad and
10  potentially unduly burdensome.  If you could address that
11  in particular as you're giving your overview, I would
12  appreciate that.
13         MS. SAHNI:  Sure.  I'd be happy to.
14         So as has been referenced earlier, one of
15  the ways to show the direct financial benefit prong of
16  the vicarious count is to show that there was a draw,
17  that subscribers are drawn to Charter's service by the
18  ability to infringe.
19         And Judge Jackson, in his recent order
20  upholding our vicarious liability count in place of
21  Charter's motion to dismiss, found that plaintiffs'
22  allegations are sufficient to show that the ability to
23  download infringing content serves as a draw.
24         And importantly, Judge Jackson relied
25  on --

Page 174

1         MS. GOLINVEAUX:  I -- I'm really sorry,
2  Ms. Sahni, I'm very sorry to cut in.  I'm having a lot of
3  trouble understanding you.  There's some odd feedback.  I
4  don't know if you're on a headset.  I apologize.
5         MS. SAHNI:  I am not on a headset.  Is
6  that better, Jennifer?
7         MS. GOLINVEAUX:  Oh.  It is.  Thank you.
8  Sorry.
9         MS. SAHNI:  Okay.  No problem.
10         So I was citing Judge Jackson's orders at
11  Docket 157 at pages 10 to 11.  And Judge Jackson there
12  found that plaintiffs had alleged an adequate draw.  And
13  he relied specifically on advertisements of the type that
14  we are looking for here, including an advertisement by
15  Charter of features attractive to those who seek to
16  infringe, such as fast download speeds for just about
17  anything.
18         And that's Judge Jackson's words quoting
19  an advertisement that talks about downloading music,
20  including up to eight songs in three seconds.  So Charter
21  is out there advertising the fast speeds of its Internet
22  to try to draw in subscribers by the ability to download
23  songs.
24         Now, Judge Jackson found that we had
25  adequately alleged draw on the basis of such an

Page 175

1  advertisement in conjunction with our other -- other
2  allegations, including the fact that Charter sent --
3  received 700,000 notices from plaintiffs about the
4  infringement of plaintiffs' work.
5         So taking these allegations together,
6  Judge Jackson found that this was sufficient and adequate
7  to move forward into discovery on this issue.
8         So Charter's position as to RFP 41 denying
9  discovery of these sorts of advertisements is essentially
10  saying that although Judge Jackson said that we could
11  proceed on this count and ordered this discovery on it,
12  Charter is saying, "No, you can't have that discovery,"
13  which is just completely improper in light of Judge
14  Jackson's order which speaks directly to this issue.
15         Now, each of Charter's arguments don't
16  really speak to what Judge Jackson ordered.  It's that --
17  you know, they're sort of contending that this is
18  overbroad, and I hear your question as well,
19  Ms. Rodriguez, and I'd like to address it.
20         But the point simply is that these sorts
21  of advertisements and materials, they can search for
22  them.  They have these innate materials; they're focused
23  on downloader obtaining music for the discovery period.
24  That's what we're searching for here.
25         So it's not as broad as I think they're

Page 176

1  trying to make it seem, and I would imagine that they
2  have these in some sort of database or repository where
3  they can look at all of their prior marketing materials,
4  their prior advertising materials.
5         We're asking them to take a look.  And
6  again, Judge Jackson, I think, made pretty clear that
7  this is fair game for discovery.
8         SPECIAL MASTER RODRIGUEZ:  So, Ms. Sahni,
9  as I hear your argument, what you're saying is, is that:
10  We're not asking for generally all marketing materials or
11  advertising materials, but that it is a specific subset
12  of those materials that pertain to services to download
13  or obtain music, including the speed at which music can
14  be downloaded using their network.
15         Is that correct?
16         MS. SAHNI:  That's exactly right.  So
17  RFP 41 says:  Materials discussing the use or potential
18  use of your Internet services to download or obtain
19  music.
20         So it's exactly like the advertisement
21  that Judge Jackson relied upon or similar advertisements
22  that I know were deemed admissible in the Cox case, where
23  the ISP is out there advertising:  Hey, come use our
24  service because you can download music really fast with
25  our Internet speed.

Page 177

1          SPECIAL MASTER RODRIGUEZ:  And as it
2  relates to the marketing reports, plans, studies, and
3  consumer research materials, again, that is narrowly
4  tailored to downloading services to -- or obtaining
5  music, including the speeds at which the music can be
6  downloaded.  This would not include movies or other
7  things; it's really directed to the download of music,
8  correct?
9          MS. SAHNI:  That's correct, Ms. Rodriguez.
10  That's what those are, yeah.
11          SPECIAL MASTER RODRIGUEZ:  All right.  So
12  counsel for Charter, could you please address why that
13  narrowed request is overbroad and unduly burdensome
14  and/or not relevant in this matter?
15          MS. GOLINVEAUX:  Sure.  Thank you,
16  Ms. Rodriguez.  It's Jennifer Golinveaux.
17          I think you started out with the right
18  impression of these two -- these pair of requests, 41 and
19  42.  They are extremely overbroad because they
20  basically -- and plaintiffs love to say:  It's an easy
21  matter for Charter to go look for this stuff, it's very
22  tailored.
23          What this is asking for is any advertising
24  or marketing piece for a nearly four-year period, dating
25  back from 2012 into 2016, that made mention of music.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 178

1  And similarly for any -- any strategic plan or document
2  that simply mentions the use of Internet to download
3  music.  That is not tied to any issue in the case.
4          Judge Jackson, they keep citing to his
5  decision, but that decision makes very clear that the
6  relevant inquiry for vicarious liability requires that
7  infringement of the plaintiffs' works drew folks to
8  Charter.
9          The fact that an ad just mentions music,
10  when we all use the Internet to download music, hopefully
11  legally, but everyone -- this is something that's
12  prevalent, and for them to seek any ad for a four-year
13  period that just simply mentions using Internet to access
14  music is incredibly overbroad, it's not tailored to the
15  issues in this case, and it would be very burdensome.
16          MS. SAHNI:  Ms. Rodriguez, I'd be happy to
17  respond to any of those issues if it would be helpful.
18          I would note that I think Judge Jackson's
19  opinion considered each of these arguments which Charter
20  just made in their motion to dismiss papers, and they
21  were -- and they were rejected.
22          MS. GOLINVEAUX:  Well, certainly, this
23  overbroad request was not in front of Judge Jackson, and
24  for Ms. Sahni to imply that he's ordered -- already
25  ordered this type of discovery is inaccurate and

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 179

1  misleading.
2          SPECIAL MASTER RODRIGUEZ:  Well, all
3  right.  It does appear that this issue with regard to the
4  draw for use of Charter's services is an issue that is
5  directly at the heart of the issues in this matter.
6  Plaintiffs have narrowly crafted this request to address
7  advertising specific to downloads and obtaining music and
8  the speeds at which it can be downloaded.
9          Ms. Sahni, I understand that your
10  representation is that this would not necessarily just
11  include any report or other material that simply mentions
12  the word "downloaded" or "music."  It really goes to the
13  heart of the issue, which is advertisements to the public
14  about the speeds of downloads using the Charter network.
15          Is that correct?
16          MS. SAHNI:  Ms. Rodriguez, I think it is
17  about materials regarding the use or potential use of
18  Charter's service for downloading and obtaining music.  I
19  don't think it's necessarily limited to speed
20  specifically.
21          I wouldn't want a situation where they're
22  only looking for documents that say "seconds" or "speed,"
23  but I do think it is limited to download and obtaining
24  music as opposed to, say, movies or downloads generally,
25  as you know.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 180

1          SPECIAL MASTER RODRIGUEZ:  Okay.  So the
2  request seems narrowly tailored to the extent that it can
3  be as it relates to the specific request of advertising
4  or marketing materials related to services to download or
5  obtain music, especially including speeds at which music
6  can be downloaded using your network.
7          So I am going to order that Charter
8  provide this information subject to this caveat.
9          Charter, what I would ask you to do is to
10  develop the search terms that you would propose to use to
11  address this request and to run the search to determine
12  the hit count.  If it is a very large number, then I'm
13  instructing the parties to meet and confer to further
14  tailor this, and if you're not able to reach agreement,
15  to contact me so that we can work through that.
16          MS. GOLINVEAUX:  Understood.  Understood,
17  Ms. Rodriguez.  Thank you.
18          SPECIAL MASTER RODRIGUEZ:  I would enter
19  the same order with regard to -- well, actually, let me
20  hear you on Request Number 42 specifically regarding
21  growth target, strategic plans.
22          MS. SAHNI:  Sure, Ms. Rodriguez.  This is
23  Neema Sahni again.
24          So I think this was also a very tailored
25  request.  It still focused on the use or offering of

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 182

1  higher bandwidth to subscribers for the purpose of
2  downloading music.
3          So say Charter had an internal deck
4  saying, Let's target subscribers to download a lot of
5  music and offer them packages of higher bandwidth so we
6  can try to get them to pay more for these greater tiers
7  of service.
8          That's really what this is searching for,
9  their internal strategy documents, growth target
10 documents that are focused on very specifically the issue
11 of offering subscribers higher bandwidth tiers, going out
12 to these certain subscribers so that they can more
13 quickly download music.  I think it is a pretty narrow
14 request, you know, along the same lines we just
15 discussed.
16          SPECIAL MASTER RODRIGUEZ:  All right.
17 Ms. Golvin- -- sorry, Ms. Golinveaux?
18          MS. GOLINVEAUX:  Ms. Rodriguez, I think we
19 have the same concerns on this one that I articulated for
20 41:  That is, any -- any -- going back to a four-year
21 period, a nearly four-year period dating back to 2012 and
22 looking for any document concerning growth targets,
23 strategic plans, or internal strategies that had anything
24 to do with offering bandwidth to subscriber for
25 downloading music.

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 182

1          I -- we think it's outside the scope of --
2  it's not -- it's not relevant to the claims in this case.
3  The issues are whether Charter was promoting its service
4  for infringement, and this is far, far broader than that.
5          SPECIAL MASTER RODRIGUEZ:  Well, it seems
6  that the order from Judge Jackson is not necessarily
7  promoting, but whether or not it was a draw, and it does
8  appear that this request is narrowly tailored to address
9  that issue.
10          I'm going to issue the same order with
11 respect to RFP 42 as I did with respect to RFP 41; that
12 is to say, that Charter should develop the search terms
13 it would propose to use for this RFP response and confer
14 with plaintiffs' counsel, run the hit report, see how
15 many hits you are getting.  If it is an amount that seems
16 very large, that the parties should confer to see if it
17 can be further refined.
18          If the parties are unable to reach an
19 agreement, then they should contact Special Master to
20 resolve that issue.
21          MS. GOLINVEAUX:  Thank you, Ms. Rodriguez.
22          MS. SAHNI:  Thank you, Ms. Rodriguez, for
23 the plaintiffs.
24          SPECIAL MASTER RODRIGUEZ:  All right.  At
25 least according to my list, it seems that we have reached

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 183

1  the end of the issues that have been raised.
2          Are there -- is there anything else that
3  we need to address today?
4          (Simultaneous crosstalk.)
5          THE COURT REPORTER:  I'm sorry?
6          MR. ELKIN:  It's Mr. Elkin speaking.  But
7  I wasn't sure, was it -- someone was cutting in or not.
8          I was going to ask whether Special Master
9  wanted a response to the question posed last week with
10 regard to whether there should be some modification of
11 the process or to provide feedback in particular with
12 regard to the plaintiffs' proposal.
13          I'm happy to address that now.  It
14 shouldn't take any more than 45 minutes.  I'm joking.  I
15 think I'll probably get done in a few minutes.
16          SPECIAL MASTER RODRIGUEZ:  Yeah.  No, no,
17 no.  I do think we should address this.
18          The question I really have for the parties
19 is, do we need to have Ms. Dittmer on for this portion?
20 If so, we can have her continue.  If not, then this is
21 going to really be an informal discussion of what we
22 think makes sense.  We might think about letting her
23 conclude her time with us tonight.
24          MR. SPERLING:  So from the plaintiffs'
25 side -- this is Mr. Sperling -- we're happy to -- happy

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

Page 184

1  to let the reporter go, with many, many thanks for her
2  stamina.
3          MS. GOLINVEAUX:  And, Ms. Rodriguez, it's
4  Jennifer Golinveaux.  We -- I think we feel the same way.
5  I just wanted to make one last point on Request 33 before
6  she signs off for the evening.
7          SPECIAL MASTER RODRIGUEZ:  Okay.
8          MS. GOLINVEAUX:  You -- you -- this is the
9  request for the broader billing history up to the current
10 time.  It's RFP 33.  And you indicated you would look
11 back at the transcript to see how Judge Hegarty handled
12 the nearly identical Request for Production Number 19.
13          And I simply wanted to give you, since
14 there's been several discovery hearings, the date for
15 that hearing was December 17, 2019, and it's at page 47
16 in the transcript.
17          SPECIAL MASTER RODRIGUEZ:  Thank you very
18 much for that.
19          MS. GOLINVEAUX:  You're welcome.
20          SPECIAL MASTER RODRIGUEZ:  All right.
21 Well, with that, Ms. Dittmer, we'll conclude the
22 transcribed portion of the hearing, with our many thanks
23 to you for hanging in there with us.
24          THE COURT REPORTER:  Okay.  Thank you.
25          SPECIAL MASTER RODRIGUEZ:  Have a good

WILSON & ASSOCIATES, LLC
scheduling@wilsonandassociatesllc.com

```
1    evening.
2                UNIDENTIFIED SPEAKER:  Thank you.
3                UNIDENTIFIED SPEAKER:  Thank you.
4                THE COURT REPORTER:  Thanks.
5                (WHEREUPON, the within proceedings were
6    concluded at 6:08 p.m. on the 18th day of May, 2020.)
7                      *    *    *    *    *
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                    REPORTER'S CERTIFICATE
2
3         I, K. MICHELLE DITTMER, Registered Professional
4    Reporter and Notary Public, State of Colorado, do hereby
5    certify that the said hearing was taken in machine
6    shorthand by me at the time and place aforesaid and was
7    thereafter reduced to typewritten form; that the
8    foregoing is a true transcript of the proceedings had.  I
9    further certify that I am not employed by, related to,
10   nor counsel for any of the parties herein, nor otherwise
11   interested in the outcome of this litigation.
12        IN WITNESS WHEREOF, I have affixed my signature
13   this 29th day of May, 2020.
14        My commission expires April 15, 2024.
15
16   _____
               K. MICHELLE DITTMER
17          Registered Professional Reporter
               Wilson & Associates, LLC
18
19
20
21
22
23
24
25
```

MR. ELKIN: [5]  46/20 47/10 150/12
 161/21 183/6
MR. GOULD: [35]  131/11 133/12
 133/15 136/7 136/12 136/17 139/19
 139/23 140/8 141/7 142/7 142/15
 143/4 146/12 147/24 148/21 148/23
 149/2 154/6 156/22 156/25 159/3
 159/6 159/10 159/13 159/18 162/18
 162/22 163/2 164/17 165/1 165/9
 167/23 168/2 170/15
MR. OPPENHEIM: [76]  4/11 5/9 5/12
 5/15 12/24 13/3 16/2 16/12 16/15 17/9
 17/12 17/16 17/19 18/8 18/15 19/18
 22/11 26/10 30/10 36/19 38/16 39/10
 40/3 40/20 41/2 44/22 44/24 45/7
 45/10 47/9 81/7 84/2 85/16 85/20 86/5
 90/17 95/5 95/8 97/12 98/12 98/22
 99/6 99/11 99/18 100/2 100/4 100/6
 100/9 100/15 101/7 101/16 101/21
 102/4 103/1 103/10 104/1 112/14
 112/17 112/19 112/23 113/2 113/8
 114/2 114/6 116/21 122/5 123/8
 123/11 123/14 123/18 124/9 124/19
 124/23 126/24 129/14 130/22
MR. SPERLING: [30]  41/12 42/13 43/7
 49/5 55/10 55/20 55/22 56/19 57/11
 58/9 58/13 58/16 62/8 66/10 66/12
 68/2 68/4 72/1 73/13 75/8 75/22 77/1
 77/3 79/25 80/2 80/9 95/14 161/4
 161/11 183/24
MR. TANNER: [1]  4/23
MS. GOLINVEAUX: [161]  4/18 11/20
 12/3 13/2 14/11 15/21 15/24 16/3 17/6
 17/11 17/14 18/1 20/2 20/25 21/16
 21/20 22/6 23/25 25/5 25/17 26/15
 26/21 28/14 35/9 35/12 38/1 38/5 39/2
 40/6 40/8 42/15 42/18 42/24 44/9
 44/19 44/21 46/19 55/11 59/19 59/23
 61/3 61/6 61/16 61/21 64/12 65/11
 67/22 68/3 68/6 68/11 68/21 68/25
 69/6 69/15 69/24 70/5 71/2 72/22 76/3
 77/13 78/5 78/13 78/21 79/9 79/17
 79/23 81/8 81/19 82/1 82/20 83/13
 84/1 86/8 87/6 87/16 88/12 89/14
 89/17 89/20 90/11 94/18 95/3 97/11
 97/19 99/17 99/19 100/5 100/7 100/11
 100/20 102/25 103/9 103/11 105/2
 105/5 107/4 107/8 107/11 109/14
 111/10 111/19 111/23 111/25 112/9
 114/15 115/18 115/21 116/4 116/10
 116/17 117/16 117/20 117/23 118/3
 119/17 119/20 120/4 120/18 120/22
 127/3 129/3 130/21 137/16 138/25
 139/14 140/7 141/18 144/1 144/25
 145/14 145/16 145/19 145/22 146/3
 147/16 148/20 151/18 151/22 153/6
 153/25 155/15 156/6 158/11 160/8
 161/15 161/17 166/25 169/4 171/22
 172/16 172/21 174/1 174/7 177/15
 178/22 180/16 181/18 182/21 184/3
 184/8 184/19
MS. RANAHAN: [30]  5/23 5/25 6/4 6/6
 6/9 6/22 7/10 9/14 9/21 9/25 10/6
 10/10 10/13 11/5 11/15 24/3 24/12
 25/20 52/20 54/3 54/16 55/5 57/11
 81/9 101/1 101/12 102/1 102/3 161/23
 161/25
MS. SAHNI: [23]  8/16 10/17 10/24
 104/7 104/9 105/8 107/5 108/13

108/16 108/19 108/23 170/18 171/1
 172/24 173/13 174/5 174/9 176/16
 177/9 178/16 179/16 180/22 182/22
SPECIAL MASTER RODRIGUEZ:
 [284]
THE COURT REPORTER: [7]  24/10
 160/22 161/8 161/13 183/5 184/24
 185/4
UNIDENTIFIED SPEAKER: [4]  162/6
 162/7 185/2 185/3

$
$1,000 [1]  154/19
$100 [1]  154/19

-
-- I'm [1]  112/14

0
00874 [1]  4/6

1
1 million [1]  149/21
10 [10]  113/9 115/14 119/9 119/23
 121/20 127/8 129/6 129/13 140/16
 174/11
10018-1405 [1]  2/11
101 [1]  3/9
10166-4193 [1]  3/4
11 [1]  174/11
1153 [1]  2/11
12 [5]  101/12 102/1 105/15 105/23
 106/12
13 [5]  26/3 48/14 63/19 105/6 162/4
14 [4]  26/3 48/14 82/5 109/2
1405 [1]  2/11
15 [2]  162/3 186/14
15-minute [1]  162/2
1506 [1]  3/11
157 [1]  174/11
162 [1]  115/25
17 [3]  82/3 139/18 184/15
18 [2]  1/11 1/14
180 degrees [1]  13/5
1801 [1]  3/18
1835 [1]  3/15
18th [1]  185/6
19 [6]  104/16 110/8 110/15 137/25
 138/13 184/12
19-cv-00874 [1]  4/6
19-cv-00874-RBJ-MEH [1]  1/3
1999 [1]  2/15
1:32 [1]  1/15

2
2 million [1]  36/1
20 [3]  111/3 140/16 156/18
200 [1]  3/4
20016 [1]  2/5
2008 [1]  85/23
2010 [2]  26/7 33/13
2011 [2]  110/25 111/3
2012 [8]  26/1 26/6 26/9 28/9 33/13
 43/6 177/25 181/21
2014 [1]  33/15
2015 [5]  33/15 83/14 83/15 83/17
 83/22
2016 [25]  12/8 16/25 16/25 21/2 21/25
 26/1 26/6 26/7 26/9 26/18 26/20 28/9
 83/2 83/21 83/24 91/16 91/25 92/18

133/18 134/2 139/15 139/18 139/18
 145/6 177/25
2017 [1]  43/6
2019 [3]  101/15 101/19 184/15
202-480-2999 [1]  2/6
2020 [13]  1/11 1/14 101/16 101/21
 101/23 104/17 104/19 105/4 110/9
 110/16 110/16 185/6 186/13
2024 [1]  186/14
21 [1]  101/18
212-294-5388 [1]  3/5
212-294-6729 [1]  3/5
212-841-1153 [1]  2/11
213-615-1835 [1]  3/15
24,000 [1]  125/15
2400 [1]  3/19
25 [1]  27/21
26 [18]  82/18 84/5 85/2 88/9 90/20
 90/25 92/4 93/14 93/18 93/22 96/6
 102/17 102/19 102/22 103/5 106/19
 106/22 110/6
2600 [1]  3/18
2645 [1]  3/19
27 [1]  18/9
2999 [1]  2/6
29th [1]  186/13
2:11 [1]  81/4

3
3 million [1]  36/1
30 [4]  52/25 83/14 83/22 122/4
303-830-2400 [1]  3/19
31 [9]  16/25 103/13 105/4 105/11
 105/12 105/16 106/8 107/6 107/14
33 [11]  38/13 39/6 133/16 135/10
 135/21 136/10 137/21 139/7 139/10
 184/5 184/10
333 [1]  3/14
3400 [1]  3/10
3500 [1]  2/15
37 [8]  49/3 49/7 52/6 54/10 57/13
 58/15 59/5 75/3
38,000 [5]  24/25 65/5 66/4 135/4 135/4
3:11 [1]  81/5
3:11 p.m [1]  81/10
3:30 [1]  81/6
3:30 p.m [1]  81/11

4
41 [6]  172/23 175/8 176/17 177/18
 181/20 182/11
415-591-1506 [1]  3/11
4193 [1]  3/4
42 [4]  172/23 177/19 180/20 182/11
424-332-4757 [1]  2/16
43 [6]  148/22 162/19 162/19 163/4
 169/19 170/14
45 [1]  183/14
4530 [1]  2/4
4643 [1]  2/16
47 [1]  184/15
4757 [1]  2/16

5
5 percent [2]  142/12 143/13
50 [5]  140/17 149/3 149/4 151/13
 152/24
512 [2]  35/16 35/21
52 [5]  149/3 151/14 152/23 157/6
 157/7

**5**

53 [4]  149/3 154/3 158/19 160/4
5388 [1]  3/5
55 [5]  15/19 15/25 16/21 16/24 44/17
56 [3]  52/6 59/8 59/25
57 [3]  162/17 170/17 171/23
5802 [1]  3/10
5:00 [1]  131/1
5:20 [1]  160/10
5:23 p.m [1]  162/10
5:35 [1]  162/4
5:36 p.m [1]  162/11
5th [1]  2/5

**6**

61 [2]  52/6 72/16
62 [1]  15/25
620 [1]  2/10
63 [1]  16/3
66 [1]  15/25
6729 [1]  3/5
6:08 [1]  185/6

**7**

7-year-olds [1]  140/4
700,000 [1]  175/3
7:00 [1]  131/3

**8**

80202-2645 [1]  3/19

**9**

90 percent [2]  29/20 35/1
90066-4643 [1]  2/16
90071 [1]  3/14
94111-5802 [1]  3/10
99 percent [1]  165/6

**A**

ability [9]  67/3 74/18 132/6 142/8 148/5
148/10 173/18 173/22 174/22
able [18]  7/18 9/9 44/1 49/9 49/12
53/17 54/16 67/4 73/20 73/22 119/15
121/21 126/14 131/4 152/15 160/14
161/2 180/14
about [96]  7/3 7/12 8/5 9/4 9/18 10/3
11/17 12/13 13/18 14/21 15/9 16/4
16/7 16/8 21/5 21/23 29/16 29/25 30/5
30/14 30/15 34/17 34/18 36/14 36/16
37/13 39/5 43/22 46/3 49/13 51/20
52/23 53/6 53/10 53/13 62/19 64/3
66/4 67/1 67/4 73/18 73/20 75/20 76/6
77/11 77/14 79/10 80/4 80/12 80/14
88/19 89/3 90/3 94/2 95/2 96/19 97/5
99/4 99/7 101/3 104/24 108/7 108/16
114/21 125/23 130/19 131/9 132/8
132/13 132/16 132/17 135/9 137/19
137/20 139/4 144/9 146/9 146/14
152/2 153/4 157/19 158/19 161/19
164/23 164/24 165/18 165/25 168/17
168/25 169/13 174/16 174/19 175/3
179/14 179/17 183/22
above [1]  76/24
Abramov [12]  87/15 87/16 87/17 88/13
88/18 89/2 89/8 90/12 90/19 93/10
94/19 94/23
absence [1]  97/16
absolutely [4]  29/24 69/16 93/6 103/11
abuse [12]  72/25 76/4 78/2 78/7 78/15
79/2 114/18 115/15 115/24 116/9

abuses [1]  78/22
academic [2]  165/9 165/21
accept [4]  31/22 31/24 33/7 92/16
acceptable [11]  49/24 72/19 73/22
73/25 74/3 74/8 74/15 113/12 118/10
119/5 128/8
access [3]  24/6 50/5 178/13
accomplishing [1]  84/17
accordance [1]  53/3
according [2]  141/5 182/25
account [6]  49/10 50/5 51/13 51/16
152/4 158/23
accurate [3]  23/22 76/3 77/14
accused [9]  28/21 29/18 32/17 32/17
60/18 60/18 138/15 138/23 151/24
acknowledged [2]  29/8 62/10
across [3]  13/21 13/25 107/16
acting [2]  15/3 15/16
action [13]  1/3 27/12 39/1 39/1 39/15
58/20 59/4 60/5 78/1 78/2 78/18 79/6
79/21
action-item-by-action-item [1]  39/1
actions [20]  26/2 27/12 28/1 28/12 31/3
40/11 43/20 44/6 52/8 75/5 75/6 75/18
75/21 75/22 75/25 77/7 78/5 78/6 79/1
79/4
activities [1]  163/24
activity [6]  74/18 74/19 131/25 133/5
165/3 166/6
actual [4]  78/2 124/2 133/21 134/15
actually [33]  8/2 11/17 13/5 27/19
31/22 38/23 43/16 49/9 50/15 50/25
51/23 52/6 52/22 60/3 67/5 75/13
75/18 77/10 79/7 86/2 94/14 96/17
96/21 107/1 109/10 132/8 132/24
150/16 150/17 150/17 152/8 155/13
180/19
ad [3]  115/3 178/9 178/12
add [10]  42/20 82/3 97/3 98/4 106/16
106/19 139/20 139/24 142/7 146/13
added [10]  82/7 86/15 87/9 87/12
100/18 103/23 106/14 106/19 110/6
139/12
adding [1]  88/17
addition [5]  41/25 51/6 66/20 98/10
138/14
additional [17]  44/2 47/13 55/15 56/25
62/2 62/11 64/20 82/7 98/11 115/6
130/3 135/10 139/6 142/6 142/7
158/25 160/15
additionally [1]  59/16 82/5
address [30]  28/15 30/25 34/15 36/8
45/21 51/8 60/11 64/13 72/20 88/11
122/4 131/8 131/15 151/19 154/4
157/4 159/18 162/16 162/20 166/24
170/19 173/10 175/19 177/12 179/6
180/11 182/8 183/3 183/13 183/17
addressed [3]  12/1 128/25 150/16
addresses [3]  64/24 128/17 144/20
addressing [7]  84/11 91/12 118/9 119/4
119/13 128/8 146/15
adequate [3]  143/13 174/12 175/6
adequately [2]  30/25 174/25
adjudicated [2]  50/9 50/15
admissibility [1]  146/15
admissible [3]  165/14 170/3 176/22
admission [2]  29/7 30/4
admissions [1]  36/16
admit [1]  121/20

admitted [6]  22/15 37/4 38/24 54/8
147/12 151/12
admittedly [1]  165/24
adopt [1]  34/11
adopted [5]  30/16 34/4 35/22 58/19
59/3
advanced [1]  51/1
advancing [1]  50/21
adverse [2]  58/20 59/3
advertisement [4]  174/14 174/19 175/1
176/20
advertisements [5]  174/13 175/9
175/21 176/21 179/13
advertising [7]  174/21 176/4 176/11
176/23 177/23 179/7 180/3
advice [2]  94/4 94/5
affect [1]  76/14
affirmative [6]  27/16 30/22 31/2 37/4
37/5 43/11
affixed [1]  186/12
afford [1]  142/15
afforded [1]  141/8
afield [1]  120/2
aforesaid [1]  186/6
after [24]  8/23 12/12 12/20 19/6 19/14
21/1 21/25 21/25 36/23 58/6 62/12
67/1 83/2 83/3 83/24 84/25 111/19
130/2 134/3 138/15 140/11 145/12
146/22 146/23
afternoon [7]  4/7 4/11 4/19 8/17 49/5
131/5 131/11
afterwards [1]  85/9
again [47]  6/22 9/15 11/6 24/4 24/24
25/21 27/13 27/24 47/5 48/18 49/1
54/10 54/21 54/22 56/20 57/12 59/11
60/20 62/9 67/16 68/4 68/12 86/6 86/7
89/18 91/5 98/24 102/10 104/18
119/14 130/11 134/23 134/23 137/2
143/23 146/6 146/14 146/16 148/16
149/10 150/3 154/7 158/11 170/10
176/6 177/3 180/23
against [8]  15/10 45/23 54/8 58/21
94/19 108/3 108/12 161/1
agent [4]  12/17 14/24 15/3 62/25
agents [1]  119/12
ago [6]  8/5 8/19 9/18 114/19 148/1
148/3
agree [8]  24/1 25/8 28/2 71/23 77/16
96/5 120/16 127/8
agreed [9]  26/12 43/12 53/20 57/5
134/6 134/7 138/9 163/8 164/14
agreement [8]  9/9 14/25 21/22 24/16
25/11 130/24 180/14 182/19
agreements [4]  11/25 12/6 15/10 16/4
Ah [1]  101/19
ahead [12]  6/19 14/10 16/15 17/23
67/23 89/16 100/6 100/10 123/14
123/16 123/18 133/14
aids [3]  52/25 53/1 53/1
al [1]  1/4
all [161]  5/4 5/21 6/20 7/21 8/2 10/15
10/22 13/1 16/17 18/22 19/14 21/15
22/10 23/9 23/16 24/2 24/15 25/15
25/22 25/23 26/20 27/6 27/12 28/19
28/25 29/23 32/21 34/24 38/2 39/11
40/7 40/13 41/10 41/22 42/1 42/6
42/12 42/19 42/21 43/1 43/5 44/8
44/23 46/11 46/16 48/13 51/18 51/22
52/6 52/10 53/2 53/5 55/18 56/24 57/5
58/18 58/23 59/8 60/1 60/1 60/5 62/5

**A**

all... [99]  62/16 63/11 64/15 64/19
65/18 65/25 66/1 66/11 66/19 69/23
70/1 70/16 70/17 71/14 71/19 72/15
73/7 80/1 80/15 80/19 81/4 81/12
81/15 83/18 85/22 86/23 87/13 88/2
88/21 88/23 90/2 90/9 92/2 93/9 93/12
95/18 97/21 101/23 104/12 104/12
105/23 108/9 108/11 108/15 109/17
111/9 112/10 113/3 113/3 113/23
114/17 115/10 121/19 124/21 125/13
126/21 127/5 127/8 127/25 127/25
130/17 130/25 131/7 131/14 131/17
131/19 132/15 134/2 134/21 136/24
139/7 139/18 139/21 144/10 144/23
150/19 153/12 155/21 160/6 160/9
162/1 162/8 162/12 162/14 167/2
167/15 167/21 169/3 169/18 170/16
172/22 176/3 176/10 177/11 178/10
179/2 181/16 182/24 184/20
all the [1]  60/1
allegations [3]  173/22 175/2 175/5
alleged [5]  58/22 78/17 148/1 174/12
174/25
alleging [4]  50/2 50/11 72/10 89/6
allow [4]  25/12 41/18 45/22 100/10
allowed [2]  46/11 151/9
allows [3]  38/13 39/6 74/12
alluding [1]  120/3
almost [2]  83/3 92/5
alone [1]  62/17
along [4]  106/10 129/18 129/24 181/14
already [33]  28/23 32/10 36/24 38/12
52/11 53/4 53/20 60/4 61/24 62/14
64/18 72/25 73/4 73/5 74/25 82/4
99/25 106/12 115/4 121/1 137/23
137/25 138/12 143/25 144/6 147/18
151/22 151/25 152/6 156/9 160/5
160/6 178/24
also [31]  4/24 6/17 13/11 15/25 20/18
30/19 31/5 48/15 53/5 58/2 66/22
71/24 75/12 78/19 87/20 89/9 91/3
93/8 94/10 96/7 96/19 111/4 118/1
133/3 135/12 135/23 142/1 149/19
167/11 168/19 180/24
alternative [1]  141/3
although [2]  137/19 175/10
ALVAREZ [2]  3/3 4/22
always [2]  5/4 63/23
am [11]  20/15 26/8 55/7 69/13 96/25
116/13 129/2 170/13 174/5 180/7
186/9
ambiguous [1]  171/18
amend [4]  96/2 102/17 106/15 110/11
amended [10]  84/6 85/3 94/24 102/15
105/4 105/21 106/4 106/9 109/19
109/25
amending [3]  86/25 94/22 106/23
amendment [1]  110/20
amicable [1]  122/20
among [3]  77/6 131/23 133/4
amount [6]  84/20 118/19 163/24
164/24 170/1 182/15
ample [1]  148/12
analog [1]  150/4
analyses [1]  165/18
analysis [13]  38/3 40/17 40/21 84/14
149/12 154/14 154/23 157/12 157/14
158/8 159/14 163/24 166/18
analyzing [1]  157/24

ANDERSON [2]  3/2 4/22
Angeles [2]  2/16 3/14
ANN [1]  3/8
annual [1]  154/16
another [14]  10/10 11/16 39/22 51/24
75/15 75/20 104/1 131/5 142/25
143/23 154/7 161/3 161/20 163/4
answer [21]  31/22 31/24 31/25 41/18
41/19 42/22 42/9 54/6 69/3 72/4 72/6
72/13 81/3 88/2 121/3 121/23 124/5
146/8 172/18 172/20 173/1
answered [1]  145/24
answers [4]  33/4 41/10 126/7 144/10
anticipating [1]  9/6 137/8
anticipation [1]  87/25
any [72]  5/5 5/6 5/18 8/11 8/21 14/6
22/8 22/22 25/18 29/2 33/16 37/9 40/9
42/20 46/13 48/8 48/9 56/17 57/5 59/9
60/16 62/19 66/23 67/20 68/18 71/6
73/7 76/23 88/20 88/22 89/21 92/15
93/5 96/23 105/17 108/1 113/17
114/18 119/12 119/13 119/24 122/8
122/8 127/11 142/20 147/6 150/6
152/3 155/20 155/24 158/12 158/12
161/1 164/13 167/19 167/19 169/15
169/15 171/13 172/18 177/23 178/1
178/1 178/3 178/12 178/17 179/11
181/20 181/20 181/22 183/14 186/10
anybody [4]  98/4 121/22 122/22 146/10
anyone [7]  6/25 29/2 29/9 76/23 97/24
98/20 109/10
anything [21]  24/20 27/8 33/18 45/11
51/8 53/21 53/25 57/21 64/3 85/7
92/14 106/10 116/7 118/18 130/17
155/24 166/2 171/6 174/17 181/23
183/2
anywhere [1]  62/16
apologies [4]  18/15 113/1 140/8 143/4
apologize [13]  20/12 20/22 45/7 87/14
97/13 104/3 110/15 113/2 123/13
131/14 140/3 149/8 174/4
apparently [1]  167/12
appear [10]  52/5 79/19 142/4 144/16
169/22 169/25 171/20 172/10 179/3
182/8
appearances [1]  4/9
appeared [7]  2/7 2/12 2/17 3/7 3/12
3/16 3/20
appearing [1]  1/18
appears [12]  14/13 26/22 27/13 28/6
39/15 100/14 100/18 110/23 129/6
141/23 151/15 170/10
appears that [1]  100/14
apples [1]  43/23 43/23
applicable [2]  48/19 118/14
applicant [1]  128/10
applied [1]  171/4
apply [2]  50/21 56/21
applying [1]  109/4 109/5
appreciate [2]  151/5 173/12
approaches [2]  142/22 142/22
appropriate [25]  9/2 12/10 25/14 27/13
27/25 35/23 58/6 65/23 68/14 70/21
70/22 70/24 71/21 76/24 82/2 107/24
108/2 118/16 120/8 120/9 121/9
121/24 127/9 133/7 138/5
appropriately [1]  129/7
April [2]  135/13 186/14
arbitrary [1]  140/14
are [191]

area [1]  98/5
areas [2]  121/16 121/18
aren't [3]  34/18 60/14 63/14
arguable [1]  141/2
arguably [1]  157/16
argue [4]  60/2 93/13 118/6 142/1
argued [2]  147/3 150/5
arguing [3]  59/21 99/23 156/11
argument [11]  29/1 81/17 94/9 96/17
114/4 141/6 147/6 151/8 152/15
155/22 176/9
arguments [4]  70/13 168/5 175/15
178/19
around [2]  155/16 155/23
artfully [1]  69/18
articulate [1]  69/18
articulated [4]  140/2 158/12 158/18
181/19
artists [1]  169/6
ARVADA [1]  4/2
as [179]  4/13 4/14 4/22 4/22 9/4 12/9
12/16 14/7 14/23 15/1 15/3 16/8 16/10
16/16 19/4 19/6 22/1 22/17 22/23
23/16 25/12 25/14 26/12 26/22 27/15
28/3 28/7 28/19 28/19 28/20 29/5
30/13 30/20 32/2 33/2 39/5 39/5 39/24
40/21 40/22 43/10 43/10 43/19 43/19
43/25 46/23 49/7 49/23 50/22 52/1
53/19 53/19 56/3 56/10 58/8 59/13
60/1 60/9 60/23 62/10 62/14 63/17
63/20 63/25 64/8 65/21 67/24 68/15
69/4 71/4 72/24 74/2 74/8 76/9 76/14
79/15 80/11 81/15 81/22 81/22 82/21
82/22 82/25 83/8 84/9 86/10 86/21
87/24 89/11 89/12 91/4 91/5 91/24
92/1 92/25 93/1 93/1 93/24 94/7 94/21
94/23 95/20 96/11 97/2 97/3 98/11
99/20 100/18 102/7 103/13 106/1
106/11 110/11 110/13 111/3 111/7
115/23 117/14 117/14 121/16 127/9
128/17 128/22 128/22 129/7 129/10
129/12 129/20 129/22 130/7 130/8
133/1 136/3 136/11 138/20 139/5
139/5 139/25 140/2 140/2 140/18
144/11 144/19 145/5 147/4 147/22
150/16 152/18 152/22 153/10 154/9
154/12 157/3 157/6 157/10 157/21
158/6 159/9 160/19 162/4 162/5
163/15 165/14 169/7 171/23 173/11
173/14 173/23 174/16 175/8 175/18
175/25 175/25 176/9 177/1 179/24
179/25 180/3 182/11
as the [1]  81/22
ascribe [1]  48/8
ask [26]  5/4 5/4 9/7 10/11 11/17 25/12
41/8 44/10 52/2 87/1 91/8 94/14 97/3
97/6 104/5 117/19 117/21 120/5 123/1
153/3 158/21 159/5 160/10 164/19
169/9 183/8
asked [18]  8/5 9/17 13/6 18/9 25/25
27/7 27/11 27/12 33/8 33/12 41/16
42/10 97/16 105/24 118/12 125/17
126/2 153/10
asking [26]  19/20 20/16 27/6 34/18
55/24 68/7 68/17 69/12 70/8 70/11
79/6 114/21 115/8 117/1 118/8 123/9
123/20 123/21 136/9 147/21 150/10
152/13 158/21 176/5 176/10 177/23
asks [3]  85/22 91/10 152/2
aspect [3]  7/5 9/17 65/12

## A

aspersions [1] 146/10
assert [2] 29/7 170/8
asserting [3] 22/9 30/23 34/2
assertion [1] 154/9
assertions [3] 15/12 94/12 144/9
assessing [1] 119/12
associated [2] 149/14 153/23
Associates [1] 186/17
assume [4] 78/22 118/3 162/13 164/22
assurance [1] 8/11
attached [2] 27/19 103/15
attacks [2] 73/3 76/9
attempt [1] 137/23
attempts [1] 7/20
attenuated [1] 169/22
attorney [2] 88/14 93/22
attorneys [1] 146/17
attracting [1] 149/14
attractive [1] 174/15
attribute [1] 32/15
attributing [1] 122/22
attrition [1] 155/23
AUP [2] 73/2 76/5
authored [1] 87/4
authority [1] 14/7
AUTOMATED [3] 81/24 95/11 97/9
automatically [1] 92/2
available [4] 49/25 51/15 151/17
 152/25
Avenue [5] 2/4 2/10 2/15 3/4 3/14
average [19] 151/13 151/14 152/2
 152/19 153/2 153/4 153/14 153/21
 153/23 154/9 154/19 154/20 155/9
 157/8 158/9 158/22 159/8 159/15
 159/24
avoiding [1] 56/7
aware [3] 101/3 104/6 166/7
away [3] 41/15 56/9 95/23

## B

back [26] 9/8 9/9 9/12 16/6 20/14 20/21
 30/11 44/16 47/4 51/23 53/20 53/25
 55/9 78/24 105/22 139/1 145/8 147/21
 148/16 150/9 162/2 162/25 177/25
 181/20 181/21 184/11
bandwidth [14] 51/14 163/14 163/15
 163/16 163/18 163/25 166/8 166/15
 167/7 167/9 181/1 181/5 181/11
 181/24
bandwidth-intensive [1] 166/8
base [3] 155/5 158/4 158/6
based [11] 42/24 68/15 69/19 108/8
 110/18 117/16 134/8 150/25 151/23
 158/5 174/7
basic [4] 113/18 126/6 126/7 149/18
basically [2] 169/15 177/20
basing [1] 90/7
basis [6] 52/19 64/2 83/21 154/16
 165/8 174/25
batch [3] 11/18 39/16 48/6
batched [1] 62/21
batching [2] 39/16 41/3
be [269]
be some [1] 45/3
became [1] 12/20
because [83] 5/5 7/24 8/3 13/18 13/22
 14/14 14/22 15/16 18/12 19/5 19/20
 21/7 21/24 23/10 24/16 29/18 30/1
 30/13 31/10 36/4 37/1 41/9 41/16

41/19 42/13 44/15 45/3 47/12 52/23
53/9 53/11 53/13 54/6 55/12 55/13
57/3 58/3 60/3 60/10 61/12 64/4 64/16
65/12 65/13 65/13 66/25 68/19 72/4
74/4 75/9 79/19 80/14 80/21 81/2
84/25 85/9 88/5 92/9 92/19 94/2 95/17
95/23 96/22 98/25 99/15 104/6 104/11
104/12 106/20 109/9 115/8 127/11
128/13 132/14 146/25 150/15 151/24
152/14 158/17 164/11 166/15 176/24
177/19
been [63] 5/19 7/2 7/13 8/2 8/11 9/10
9/19 9/22 14/3 14/4 15/3 18/13 19/7
22/20 23/15 24/5 24/19 28/20 33/20
53/17 53/25 54/13 54/16 55/3 57/19
66/23 80/3 83/19 83/20 84/20 84/21
84/22 88/8 92/6 92/6 92/7 93/22 99/25
102/14 102/15 106/21 109/21 109/25
110/5 110/16 112/3 116/15 129/16
131/12 132/15 134/25 140/2 140/6
140/20 150/14 157/24 160/13 160/15
171/21 172/2 173/14 183/1 184/14
before [24] 1/13 1/15 7/3 13/17 14/3
14/7 23/23 24/20 46/15 63/7 63/10
63/20 80/8 83/6 91/5 106/17 110/18
129/15 131/18 139/2 142/5 147/25
150/13 184/5
begin [3] 118/22 125/14 150/21
beginning [1] 147/23
behalf [7] 2/2 3/1 17/4 28/22 117/10
146/24 147/2
being [16] 15/10 25/1 49/19 51/1 56/10
56/11 66/25 76/18 82/23 84/23 91/5
93/3 115/13 120/1 120/10 169/20
believe [30] 4/12 4/20 13/13 14/15 19/4
25/20 34/4 43/8 80/23 85/4 87/10 92/5
92/17 95/8 96/11 99/24 101/16 102/16
111/25 111/25 112/14 112/23 118/21
126/8 131/15 141/15 158/7 158/8
159/22 173/2
benefit [28] 126/10 131/8 131/25
132/18 134/4 135/8 135/25 140/1
140/12 140/14 140/22 141/3 141/24
142/2 142/6 142/11 142/16 142/19
142/23 143/7 143/16 156/12 158/13
163/16 164/14 169/2 169/20 173/15
benefits [1] 130/18
better [5] 5/16 44/1 88/2 143/20 174/6
between [9] 12/6 12/7 12/12 14/20 15/1
16/6 49/10 85/23 94/3
beyond [12] 48/4 51/7 60/7 64/21 65/13
76/24 78/6 78/25 141/22 142/2 158/16
158/16
big [4] 109/22 143/23 167/7 167/8
bigger [1] 14/16
bilateral [1] 13/22
billing [9] 134/16 135/5 136/25 143/11
146/20 146/21 147/7 147/10 184/9
billings [2] 133/21 134/17
bills [1] 149/22
bit [35] 7/6 7/19 7/22 9/5 24/23 25/2
26/25 41/14 41/15 65/13 76/12 98/13
148/23 149/13 163/7 163/9 163/12
163/13 164/11 165/3 165/13 165/20
165/25 166/1 166/5 166/8 166/16
167/4 167/5 167/18 168/25 169/7
169/15 170/7 170/8
bite [1] 124/21
blank [1] 34/19
blanket [1] 57/4

bleeding [1] 22/22
blind [1] 132/2
BMG [1] 37/2
board [1] 13/25
body [3] 64/21 148/7 148/8
bonus [2] 171/5 171/7
bonuses [1] 171/9
book [1] 77/10
both [19] 13/24 24/13 28/24 39/3 43/10
52/6 61/22 82/18 88/14 88/14 91/4
92/14 102/18 106/21 110/5 111/6
127/24 147/4 154/13
bottom [1] 99/12
bound [1] 50/1
breadth [1] 173/7
break [8] 80/5 80/8 81/4 98/13 149/13
160/12 160/22 162/2
bridge [1] 14/2
brief [10] 19/19 19/20 19/24 70/11
81/16 82/13 156/17 162/5 169/10
173/5
briefed [1] 82/9
briefing [6] 25/13 46/8 47/13 111/14
briefly [6] 35/10 47/12 77/3 84/3 137/18
151/19
briefs [17] 73/3 83/1 171/24
Bright [1] 88/15
bring [1] 46/5
broad [13] 15/6 28/5 73/6 76/23 88/22
97/25 98/10 108/2 108/11 115/9
169/19 173/9 175/25
broaden [1] 53/19
broadened [1] 54/18
broader [9] 9/16 55/8 55/14 56/25
59/15 152/2 152/13 182/4 184/9
broadly [1] 57/18
broke [1] 81/21
BROS [2] 1/4 2/2
brought [2] 15/10 22/23
Building [1] 2/10
bunch [2] 16/6 137/1
bundles [2] 165/25 169/8
bundling [2] 7/6 7/12
burden [18] 14/8 24/8 24/16 44/3 60/23
63/5 63/12 64/10 70/8 70/12 80/14
80/17 82/11 85/8 118/17 119/15 148/1
148/5
burdensome [12] 25/2 27/10 60/9 73/9
80/16 80/22 96/14 121/10 171/19
173/10 177/13 178/15
Burling [3] 2/9 2/14 4/15
business [7] 46/2 78/11 87/23 87/24
94/5 94/7 94/11
button [2] 143/24 144/21

## C

calculate [1] 151/23
calculated [1] 170/2
calculates [1] 149/15
calculation [1] 155/9
calculations [1] 160/4
calendar [1] 12/8
California [5] 2/16 3/9 3/10 3/14 3/18
call [15] 9/2 10/24 38/15 60/18 71/17
71/17 81/24 95/11 96/8 97/9 123/23
123/24 143/8 146/17 164/1
called [15] 7/16 8/24 11/11 21/4 39/16
51/13 60/17 60/18 62/3 72/25 113/20
122/13 125/9 125/22 155/2
calling [1] 162/25

**C**

calls [6]   8/21 10/19 59/9 59/10 59/12 59/14
calvarez [1]   3/7
came [11]   29/11 46/1 60/16 61/8 61/25 71/7 74/3 83/17 85/9 107/16 125/8
can [97]   5/7 10/19 10/23 15/11 17/20 20/4 22/23 22/24 23/23 28/15 32/2 32/3 34/20 35/2 37/12 38/17 38/21 38/21 39/5 39/6 48/1 48/23 51/11 51/12 51/13 52/18 59/17 62/11 64/7 65/9 71/23 74/20 78/24 79/16 80/18 92/16 94/9 94/10 94/12 95/16 97/4 98/13 100/1 107/1 111/11 112/6 114/25 115/3 116/23 116/24 117/6 120/23 124/18 124/21 125/13 125/22 127/8 130/3 130/7 133/6 137/2 137/20 142/1 142/15 143/5 144/23 146/12 151/6 154/11 154/15 155/1 155/7 156/3 157/5 158/24 159/14 161/19 162/5 164/4 164/6 164/7 167/23 168/18 173/2 175/21 176/3 176/13 176/24 177/5 179/8 180/2 180/6 180/15 181/6 181/12 182/17 183/20
can't [18]   33/1 39/16 65/2 65/3 65/14 95/23 96/1 101/14 121/6 123/1 123/2 123/3 125/14 126/22 127/18 142/19 150/24 175/12
cannot [2]   126/5 140/13
capabilities [2]   58/18 59/2
capable [1]   141/13
captured [3]   49/17 55/8 57/22
cared [1]   46/14
careful [2]   22/13 22/21
carried [2]   6/10 101/4
carry [1]   118/16
carve [1]   67/2
case [86]   7/17 14/3 15/1 15/4 19/22 21/24 22/14 22/17 22/22 22/23 22/24 23/1 23/10 23/21 24/13 27/4 28/1 30/1 30/6 31/5 31/9 34/14 36/5 36/25 37/2 38/20 38/25 40/4 40/5 40/23 43/10 46/6 46/7 50/7 52/9 53/9 54/19 65/23 67/15 77/5 77/19 79/12 79/12 82/22 82/25 88/22 88/24 89/5 90/3 90/23 100/1 109/22 112/3 118/20 120/3 122/17 130/14 142/6 145/5 146/2 146/18 146/19 147/17 147/17 150/5 150/24 150/25 151/2 151/4 151/7 151/12 152/6 155/20 164/25 165/5 167/19 168/10 168/13 169/22 170/4 171/21 172/14 176/22 178/3 178/15 182/2
cases [9]   23/4 32/3 92/24 122/11 126/8 165/10 165/21 166/6 168/11
casting [1]   146/10
categorical [1]   6/25
categories [2]   79/1 107/23
category [6]   66/14 78/6 82/13 98/10 129/17 129/19
CATS [4]   38/19 60/2 78/23 79/7
caught [1]   104/11
causes [1]   170/9
caution [1]   23/3
caveat [1]   180/8
center [1]   85/11
certain [9]   7/1 23/6 41/10 84/7 113/11 117/11 125/12 136/19 181/12
certainly [26]   10/1 14/6 18/8 50/17 53/21 55/1 55/1 60/22 70/21 70/22

71/11 75/8 75/12 75/23 79/17 79/23 86/19 116/19 137/4 137/20 141/12 152/18 160/12 163/21 166/20 178/22
certificate [2]   101/19 186/1
certify [2]   186/5 186/9
CESIE [2]   3/3 4/22
cetera [3]   61/11 74/23 77/20
CHA [1]   115/25
chain [1]   92/10
challenge [2]   134/24 148/1
challenging [4]   126/9 127/23 151/3 151/10
change [4]   92/25 92/25 93/1 93/1
characterization [1]   76/8
characterizing [1]   35/18
charge [1]   173/4
chart [15]   31/15 31/18 32/4 32/9 40/4 40/22 40/22 42/20 114/11 114/13 116/25 117/2 117/2 117/15 120/5
CHARTER [189]
Charter's [49]   10/15 27/2 27/16 28/1 28/11 31/5 43/15 45/11 47/1 51/7 53/11 62/19 66/8 67/25 68/9 68/10 72/17 74/16 76/10 79/5 84/10 89/3 89/5 97/24 98/20 110/23 129/20 130/8 132/18 135/7 142/8 145/10 149/16 153/14 154/8 154/13 156/14 164/10 166/14 166/23 168/22 168/22 168/25 173/17 173/21 175/8 175/15 179/4 179/18
charts [7]   31/8 113/9 113/24 114/25 115/5 115/13 121/11
chatting [1]   131/13
check [1]   50/24
choice [1]   137/20
chose [4]   63/8 74/7 74/13 74/21
churn [3]   155/2 155/2 158/18
circumstances [3]   35/24 68/14 92/25
cite [3]   19/21 156/17 169/10
cited [3]   168/14 168/20 168/21
citing [2]   174/10 178/4
Civil [1]   1/3
claim [30]   12/8 30/23 45/23 45/23 83/24 87/11 119/25 131/20 131/23 134/1 135/24 138/24 140/14 140/17 141/23 142/2 146/22 146/23 147/7 148/11 152/20 153/14 153/22 153/24 156/10 158/12 158/24 159/25 166/1 168/23
claimed [2]   135/13 167/19
claiming [1]   63/22
claims [30]   16/23 19/7 21/2 22/8 30/22 31/2 37/4 37/5 37/22 43/10 46/3 69/21 83/3 83/16 83/19 91/15 111/1 116/16 120/2 120/14 138/15 139/2 139/4 139/15 145/12 151/2 152/6 169/21 171/21 182/2
clarification [8]   11/23 12/11 12/21 14/14 15/5 18/5 18/10 45/4
clarify [3]   101/2 105/10 124/10
clarifying [2]   6/16 11/17
clean [1]   41/9
clear [27]   11/7 12/16 16/12 17/11 17/18 18/2 19/19 19/21 20/1 20/3 26/18 28/17 42/18 55/23 62/13 64/17 94/21 107/14 109/21 117/20 129/3 133/11 134/15 160/7 168/18 176/6 178/5
clearly [5]   52/2 63/3 73/15 74/24 140/2
client [1]   78/24 79/10 146/24
clients [6]   13/12 70/7 117/10 126/11

147/3 167/12
close [1]   25/6
closed [2]   50/4 72/12
closely [1]   16/1
closest [1]   150/4
Coast [1]   160/25
coattails [1]   41/14
cocounsel [3]   4/14 14/19 104/3
codes [3]   33/8 33/9 39/12
coin [1]   157/6
colleague [3]   4/13 41/14 162/23
colleagues [2]   39/25 161/18
collect [2]   63/14 140/22
collected [3]   19/9 107/21 134/3
collections [1]   107/25
colloquy [3]   12/12 12/21 20/23
color [1]   75/10
COLORADO [5]   1/2 1/17 3/19 4/2 186/4
colorful [1]   63/2
come [15]   9/9 25/9 30/5 42/2 46/17 55/16 80/20 84/25 86/18 113/21 137/8 162/2 166/3 166/13 176/23
comes [2]   14/7 35/15
coming [4]   52/22 131/1 147/21 158/5
comment [2]   80/7 167/23
comments [1]   137/20
commission [1]   186/14
common [1]   77/7
communicating [1]   129/2
communication [2]   28/4 77/24
communications [21]   1/7 4/5 19/13 20/19 20/20 20/20 29/25 47/15 52/24 53/6 53/10 53/13 54/22 57/15 59/4 73/7 85/5 129/21 130/9 130/13 150/20 169/12
companies [6]   54/22 55/1 113/22 113/23 121/13 169/11
companion [1]   73/5
company [9]   92/1 94/7 113/19 118/8 121/14 121/21 152/18 157/25 158/1
company's [1]   155/5
compare [1]   73/20
comparing [2]   43/22 73/8
comparison [2]   73/16 76/24
compel [12]   4/7 4/8 5/19 25/24 26/5 56/8 104/15 115/24 129/12 130/20 138/2 170/13
compelling [1]   95/19
compensated [1]   172/2
compensation [6]   170/24 171/3 171/5 171/8 171/9 172/14
competent [1]   141/13
complaint [2]   128/21 168/21
complaints [9]   113/12 118/10 119/5 121/17 123/23 126/16 128/7 128/15 128/16
complete [5]   6/19 9/8 67/16 116/12 131/6
completed [1]   100/9
completely [4]   29/11 47/20 169/16 173/19
complicated [1]   72/4
complied [1]   57/16
component [1]   160/18
comport [1]   128/14
comprehensively [1]   32/24
conceding [1]   35/5
conceivably [1]   58/2
concern [2]   18/4 167/16

**C**

concerned [3]  20/15 109/2 139/25
concerning [5]  48/16 51/7 58/18 163/9
181/22
concerns [2]  47/17 181/19
conch [1]  162/22
conclude [2]  183/23 184/21
concluded [2]  95/25 185/6
concomitant [1]  48/1
conditioned [1]  167/13
conduct [3]  27/2 73/16 154/14
conducted [1]  84/14
confer [15]  8/21 8/23 9/22 9/25 10/20
26/13 71/21 98/8 125/17 125/19 130/1
130/6 180/13 182/13 182/16
conference [4]  81/24 95/11 97/9 135/13
confers [1]  82/6
confirm [1]  100/1
confronted [2]  67/14 73/24
confused [1]  51/24
confusing [2]  39/5 107/14
conjunction [1]  175/1
connecting [1]  57/24
connection [3]  56/21 57/1 57/3
consent [1]  38/23
consider [3]  34/13 46/7 133/6
consideration [1]  66/14
considerations [1]  132/22
considered [6]  58/19 59/2 92/25 132/25
147/12 178/19
consistent [2]  58/24 173/3
constraints [2]  160/21 161/2
construct [1]  132/17
consultant [2]  14/22 19/6
consumer [7]  97/24 98/4 98/5 98/15
98/21 164/2 177/3
consumption [2]  163/25 166/16
contact [3]  116/1 180/15 182/19
contain [6]  60/8 61/18 62/2 62/11 64/23
65/9
contained [2]  47/19 65/21
contains [1]  103/21
contemporaneously [1]  37/24
contending [1]  175/17
content [2]  167/8 173/23
contents [2]  59/9 64/4
contests [1]  92/20
context [5]  20/4 20/10 132/14 144/19
168/11
continue [9]  9/23 132/3 160/12 160/14
161/3 161/3 161/6 161/9 183/20
continued [4]  140/18 140/21 140/21
142/3
continuing [1]  133/23 171/15
contrast [1]  74/7
contribution [1]  74/17
control [1]  74/19
convenient [2]  10/25 105/11
copied [1]  8/2
copyright [29]  29/9 48/17 50/2 50/4
50/6 58/22 72/10 72/11 72/17 73/3
73/8 74/13 74/14 83/14 89/3 89/6
92/23 108/8 109/15 113/11 118/9
119/4 121/16 128/7 128/15 128/21
132/21 163/10 171/25
copyrighted [2]  16/5 16/7
copyrights [1]  74/6
core [5]  34/14 85/11 133/20 135/24
143/19
corporate [1]  113/18

correct [21]  15/4 17/5 17/6 17/6 26/8
42/2 43/7 54/15 82/19 82/20 86/18
100/20 115/18 136/6 136/7 139/2
155/3 176/15 177/8 177/9 179/15
corrected [3]  99/21 100/24 103/24
correcting [2]  103/13 105/7
correctly [2]  102/20 115/20
correspondence [15]  11/24 14/20 15/8
15/14 16/4 17/15 18/3 18/22 19/5 21/5
25/10 36/14 61/9 101/24 109/1
corresponding [3]  8/1 36/9 88/15
cost [11]  133/2 149/14 149/15 149/16
149/19 149/25 149/25 150/2 153/2
153/21 153/23
costly [1]  127/24
costs [12]  132/23 149/5 149/7 149/9
149/23 150/6 150/8 150/11 150/17
153/4 153/15 153/16
could [42]  4/9 5/1 5/25 11/3 17/19
20/19 24/11 24/17 31/16 47/12 62/2
69/8 70/5 70/9 79/2 79/14 80/23 82/12
91/24 104/5 104/25 118/6 131/21
132/2 134/22 139/19 139/23 140/24
140/25 141/18 142/24 143/9 145/1
148/23 151/19 156/22 160/16 170/5
173/7 173/10 175/10 177/12
couldn't [1]  143/10
counsel [45]  10/15 11/12 12/6 12/7
18/19 20/6 22/17 23/16 28/10 30/8
40/5 45/11 52/5 59/17 62/6 68/9 86/25
87/19 88/6 90/15 90/20 91/9 92/1 92/3
94/2 94/14 96/22 97/2 104/24 104/25
114/7 122/18 124/13 137/13 139/9
139/17 141/12 150/5 160/25 161/9
161/14 171/11 177/12 182/14 186/10
count [6]  94/15 97/4 173/16 173/20
175/11 180/12
counter [2]  30/4 34/25
counterproposal [1]  70/25
counts [1]  94/19
couple [4]  58/8 143/16 156/25 168/4
course [20]  23/13 24/1 30/21 31/16
55/17 70/10 78/11 82/6 90/1 91/25
102/11 102/23 109/7 109/9 115/2
117/4 120/12 120/13 138/3 165/16
court [9]  1/1 23/17 50/14 113/3 147/11
157/22 160/10 168/9 168/13
court's [1]  23/14
cov.com [2]  2/12 2/17
cover [6]  8/6 8/9 10/7 11/8 53/7 116/16
covered [3]  8/12 11/10
covering [1]  5/1
covers [1]  21/24
Covington [3]  2/9 2/14 4/15
Cox [39]  15/1 22/14 22/17 22/22 23/1
23/10 23/21 24/6 24/14 24/21 31/9
31/17 34/23 36/23 36/25 38/20 38/25
40/4 40/5 40/23 41/4 53/9 54/22 77/5
77/8 79/12 146/18 146/19 146/25
147/10 147/17 149/7 150/5 150/20
150/24 151/7 151/12 168/21 176/22
Cox's [1]  169/2
crafted [1]  179/6
Craig [1]  4/25
create [2]  31/17 160/4
creation [1]  167/9
credibility [1]  48/8
critical [11]  32/23 36/20 38/3 49/8
49/11 52/8 67/2 67/15 91/13 132/5
135/22

critically [1]  140/1
cross [1]  113/4
cross-eyed [1]  113/4
crosstalk [3]  57/10 70/2 183/4
crossways [1]  21/12
crystal [1]  129/3
crystal-clear [1]  129/3
culpability [2]  31/5 32/7
current [6]  85/22 120/13 120/14 134/9
163/7 184/9
currently [3]  7/9 120/24 142/5
custodian [10]  6/10 8/8 81/22 87/9 92/6
93/15 93/21 94/1 130/10 130/16
custodians [28]  6/13 6/15 6/20 7/6 7/8
8/6 8/12 8/15 10/6 11/19 81/14 81/17
82/3 83/8 93/9 94/16 97/1 97/3 98/11
102/8 106/25 108/9 110/3 110/3
110/13 111/7 125/12 129/16
customer [9]  50/3 50/11 50/11 53/7
62/24 62/25 72/11 159/9 159/24
customer's [2]  50/2 72/10
customers [7]  149/17 164/5 164/7
164/8 166/9 166/11 168/25
customers' [2]  164/1 164/5
cut [7]  67/9 67/9 74/20 74/22 133/25
143/2 174/2
cutting [1]  183/7
cv [2]  1/3 4/6

**D**

damages [4]  133/4 133/7 135/16
135/22
Danyel [6]  97/23 98/19 99/13 104/19
111/2 111/7
data [83]  24/15 28/24 33/15 33/16
34/19 34/19 34/21 35/25 36/23 38/7
38/10 38/11 38/14 38/17 38/18 39/3
39/9 39/11 39/12 40/12 41/21 41/21
42/19 42/21 42/22 44/12 60/5 61/8
61/10 61/15 61/20 61/24 61/25 62/14
62/15 62/16 62/18 63/7 64/16 64/18
64/19 64/21 64/25 65/21 65/21 66/2
66/6 68/17 69/25 78/23 79/16 84/19
132/8 132/9 134/17 136/25 137/5
142/10 143/12 143/24 145/2 146/9
146/20 146/21 147/1 147/5 147/7
147/10 148/11 152/16 153/4 153/8
153/13 155/2 155/2 155/12 155/16
160/5 164/2 164/24 165/11 165/17
166/18
database [15]  63/6 63/7 63/9 63/12
63/13 63/15 113/22 117/3 117/11
117/25 120/12 120/13 136/25 143/24
176/2
date [14]  16/19 33/11 59/14 83/12
83/13 83/22 86/21 105/25 110/14
111/18 139/11 139/12 140/14 184/14
dated [4]  101/14 104/16 106/2 106/7
dates [1]  147/11
dating [2]  177/24 181/21
Daubert [1]  147/4
daunting [1]  90/4
day [6]  83/6 127/24 138/17 161/3 185/6
186/13
days [1]  9/18
DC [1]  2/5
DDos [2]  73/3 76/9
deafening [2]  5/10 5/17
deal [6]  34/5 35/3 43/2 93/9 122/12
127/20

**D**

dealing [6]  12/17 25/3 76/11 113/15 125/8 151/3
deals [2]  35/19 48/13
dealt [1]  146/18
debate [1]  126/4
debated [1]  146/2
December [2]  16/25 184/15
December 17 [1]  184/15
December 31 [1]  16/25
decide [3]  47/13 95/9 157/12
decidedly [1]  132/15
decision [5]  51/3 132/22 168/14 178/5 178/5
decisions [2]  132/25 150/25
deck [1]  181/3
declaration [2]  70/13 88/18
decreasing [1]  84/21
deemed [5]  50/3 50/12 72/11 127/19 176/22
defendant [10]  1/8 3/1 19/19 27/17 71/24 90/21 104/21 119/11 120/21 152/10
defendant's [6]  4/6 34/17 43/11 119/11 119/22 131/22
defendants [19]  4/17 6/7 14/6 43/5 43/12 44/1 44/5 57/8 59/6 61/1 65/24 81/18 94/14 110/11 110/21 115/23 119/2 119/15 121/7
defense [14]  26/24 27/1 27/16 28/10 34/3 34/7 43/11 104/24 104/24 119/25 139/9 155/20 158/13 167/19
defenses [5]  19/8 120/3 151/2 169/21 171/21
define [1]  68/1
defined [3]  28/20 71/4 71/9
definitely [1]  94/9
definition [5]  50/24 91/1 93/18 114/11 142/10
definitive [1]  54/6
degree [1]  129/8
degrees [1]  13/5
delete [1]  31/23
deleted [1]  39/20
delve [1]  37/20
demonstrated [1]  148/10
Denver [2]  3/19 4/24
deny [1]  170/13
denying [3]  129/11 168/21 175/8
department [6]  97/25 98/21 107/22 108/6 109/6 128/22
departments [2]  106/16 106/20
departure [1]  112/4
depose [1]  123/3
deposition [3]  40/6 98/9 122/4
depositions [3]  40/10 98/2 116/20
deriving [1]  142/18
described [1]  135/23
describing [3]  32/5 51/19 75/12
designing [4]  84/9 91/6 91/11 157/20
detail [1]  79/1
detailed [5]  63/2 72/25 76/6 76/16 108/4
details [1]  73/1
determination [3]  25/9 50/25 93/17
determine [7]  66/6 95/10 130/6 154/17 158/8 159/14 180/11
determined [2]  154/15 155/1
determining [1]  50/23
deterrence [1]  135/16
detract [1]  166/12
develop [3]  98/9 180/10 182/12
developed [1]  46/8
developing [3]  84/10 91/6 91/11
development [1]  92/22
deviated [1]  51/20
did [71]  6/9 7/15 13/15 19/1 19/25 20/13 21/11 27/8 30/14 31/22 31/23 31/25 32/8 32/24 32/24 34/10 36/10 37/18 38/25 42/4 43/4 43/13 45/13 45/15 45/16 47/1 47/2 47/2 49/11 50/19 50/24 50/25 51/8 51/19 52/7 59/12 59/12 60/3 61/9 63/7 66/16 67/7 67/11 67/12 67/12 68/14 68/19 69/18 73/24 74/2 77/10 77/19 77/20 84/21 87/10 93/16 97/8 101/9 101/10 103/15 106/3 106/4 109/10 115/21 125/13 130/17 130/21 133/23 137/1 150/2 182/11
didn't [27]  6/24 7/2 21/10 29/8 33/2 33/7 33/19 33/24 34/8 36/3 36/8 36/12 36/25 38/7 44/24 70/11 77/5 82/2 82/15 83/1 83/23 89/22 92/8 102/9 111/14 123/13 171/24
difference [1]  65/20
different [46]  9/5 14/14 23/3 24/24 25/2 33/8 33/9 42/20 43/25 45/14 45/15 54/23 55/2 55/7 61/19 70/11 75/19 78/7 79/1 79/21 89/16 91/18 92/11 112/21 113/21 113/21 122/7 122/11 122/14 123/10 123/21 123/22 123/25 125/21 128/12 128/18 132/15 132/24 134/9 134/10 148/6 150/14 150/19 153/2 155/16 157/14
differently [5]  37/12 37/17 40/9 74/14 75/15
differing [1]  151/11
difficult [5]  93/13 96/16 109/18 126/9 130/14
digital [1]  113/22
diligence [1]  48/7
direct [7]  115/2 131/24 134/4 135/25 156/6 156/11 173/15
directed [3]  28/25 147/22 177/7
directive [1]  80/13
directly [26]  12/17 15/9 26/23 29/17 30/21 31/5 43/9 48/19 52/15 59/11 65/22 72/8 89/4 118/14 134/24 135/23 140/23 141/23 149/7 149/9 150/19 169/5 171/20 173/3 175/14 179/5
directories [2]  115/3 121/12
directory [3]  117/25 119/16 124/25
disadvantage [1]  18/12
disagree [2]  138/18 168/16
disagreement [1]  10/18
disclose [1]  125/20
disclosed [2]  88/8 94/23
disclosure [7]  91/1 93/18 96/7 102/18 103/6 106/22 110/6
disclosures [16]  82/18 84/6 85/2 86/15 88/9 89/18 90/21 92/4 93/14 94/22 94/25 96/2 102/19 102/22 106/16 106/20
disconnect [2]  53/8 54/20
disconnected [1]  97/13
discover [1]  166/21
discoverability [4]  146/15 148/13 164/14 168/6
discoverable [11]  49/19 89/11 90/23 90/25 91/1 93/19 94/4 95/22 96/1
106/24 147/14
discovery [31]  14/4 24/18 33/14 46/11 74/12 76/1 98/1 98/9 112/13 118/16 118/20 126/23 127/15 138/5 138/8 139/1 144/11 147/21 150/24 152/1 157/3 170/2 171/20 175/7 175/9 175/11 175/12 175/23 176/7 178/25 184/14
discrepancy [1]  49/10
discrete [1]  48/1
discuss [8]  5/7 7/16 11/19 13/7 47/8 53/14 98/8 163/22
discussed [4]  8/20 76/23 78/19 181/15
discussing [12]  49/21 52/15 53/18 54/12 56/25 57/2 57/24 59/9 75/14 163/6 164/9 176/17
discussion [1]  11/23 13/18 26/25 29/15 37/8 37/12 46/9 47/6 50/18 58/6 122/18 125/23 127/2 127/4 127/25 139/4 183/21
discussions [8]  8/24 9/8 30/3 46/16 48/18 52/14 89/25 90/12
dismiss [5]  131/22 156/10 168/22 173/21 178/20
dispositive [1]  96/8
disproportionate [3]  37/24 47/24 118/17
disproportionately [1]  121/10
dispute [4]  6/21 21/5 49/20 96/11
disputes [1]  58/7
disputing [1]  39/9
distinct [2]  43/21 61/15
distinction [1]  94/3
distinguishing [1]  72/17
distribute [1]  169/7
distribution [1]  169/9
DISTRICT [2]  1/1 1/2
Dittmer [7]  1/16 1/18 160/20 183/19 184/21 186/3 186/16
DMCA [5]  29/5 35/14 35/15 53/2 53/7
DMCA's [1]  68/12
do [119]  6/17 6/19 7/18 8/10 9/7 10/18 10/23 11/24 14/5 18/19 19/14 20/5 20/16 22/6 23/18 25/13 30/8 32/24 33/9 33/19 34/20 37/22 37/22 38/11 38/14 38/17 41/17 46/6 46/12 47/12 48/5 51/8 51/11 53/20 54/14 56/12 56/17 58/7 59/6 59/7 59/12 61/18 63/11 67/12 70/20 70/26 72/20 75/17 75/21 76/22 77/7 77/20 77/22 78/8 82/22 84/18 88/2 90/15 91/10 92/10 94/17 95/10 95/21 96/8 96/9 97/3 97/20 99/22 102/7 103/2 104/14 104/22 107/15 109/14 110/12 115/14 115/17 117/25 118/6 118/21 123/22 123/23 124/14 124/18 126/22 126/22 127/14 127/18 131/19 136/24 137/2 137/14 143/5 144/14 148/5 151/5 153/25 155/7 155/8 155/24 157/11 158/4 158/7 159/1 159/14 160/4 160/20 162/3 163/23 164/4 168/18 170/24 179/23 180/9 181/24 183/17 183/19 186/4
do-over [3]  95/10 95/21 96/8
Docket [1]  174/11
document [24]  13/9 13/25 20/16 22/22 22/25 23/4 46/15 49/19 55/24 72/25 75/4 96/23 96/24 102/6 107/24 108/2 115/9 117/4 129/12 130/3 136/14 153/10 178/1 181/22
documentation [2]  19/11 113/19

**D**

documents [127]  11/25 12/5 12/5 12/15
12/19 13/16 14/5 15/8 15/14 16/21
17/3 19/13 20/7 22/14 22/18 23/6
23/12 23/20 23/23 23/23 25/1 26/5
36/14 41/5 48/16 49/9 50/17 51/3 51/6
51/18 52/3 52/15 52/25 54/11 54/13
55/3 55/8 55/16 55/25 56/12 56/17
58/17 58/24 59/1 59/9 63/13 72/16
73/7 74/25 75/13 78/1 78/25 87/3 87/4
87/4 88/7 89/22 90/3 90/6 90/8 92/11
92/15 92/21 93/5 93/25 95/24 96/15
96/20 97/5 103/3 103/4 107/2 107/21
107/23 107/24 108/7 108/10 109/8
109/9 109/11 111/22 112/5 112/6
113/10 113/13 113/17 113/20 114/18
115/9 117/2 117/5 117/5 118/8 119/10
120/8 120/12 121/11 121/22 122/8
123/2 125/15 127/16 128/5 128/13
128/19 128/24 129/20 130/8 139/7
139/18 149/5 153/8 154/1 155/17
157/8 159/25 163/6 163/9 163/21
164/9 168/24 171/2 171/10 172/19
179/22 181/9 181/10

does [60]  9/16 10/21 25/10 39/18 39/19
39/20 41/25 43/14 48/18 52/5 52/17
54/4 58/25 69/16 78/3 79/19 89/10
89/15 89/21 89/24 92/1 93/23 96/23
104/17 106/8 110/12 110/21 114/8
116/14 116/15 118/3 118/16 118/23
121/9 124/6 124/7 126/13 126/18
128/13 142/4 144/16 153/4 153/13
153/13 153/18 155/12 155/12 155/13
155/13 158/14 160/5 160/5 166/9
169/4 169/22 171/20 172/10 172/19
179/3 182/7

doesn't [23]  9/10 18/21 33/6 33/7 45/11
55/25 75/10 77/10 77/11 77/17 85/6
87/23 91/8 91/21 92/14 108/6 117/4
141/7 147/14 147/14 169/17 172/6
172/6

doing [16]  13/8 18/19 19/23 38/15 67/5
67/8 83/7 85/8 88/3 88/3 88/4 96/17
122/25 122/25 149/8 160/11

dollars [1]  140/19

don't [110]  4/4 5/18 6/19 7/3 9/1 13/14
18/12 18/17 20/12 20/12 20/13 20/22
22/25 23/5 25/20 27/24 31/14 31/22
31/24 31/25 33/16 33/18 35/6 36/3
39/11 39/12 39/18 39/21 39/25 40/20
41/19 45/10 47/4 49/19 55/4 56/9
57/23 57/24 62/15 64/3 64/15 67/16
75/22 75/25 77/13 78/25 82/9 87/13
88/1 91/21 91/23 92/9 92/15 93/5 95/8
95/20 95/23 96/2 96/7 96/11 97/6
97/14 102/6 102/14 103/2 103/3 103/4
103/7 104/1 107/16 110/4 114/4
114/18 114/23 115/11 116/10 116/17
117/1 120/8 122/6 122/7 122/8 122/21
124/4 125/5 125/6 126/25 127/16
127/22 128/13 136/20 137/4 137/8
137/11 138/16 141/15 144/10 150/21
152/16 155/17 155/19 156/2 156/5
165/1 166/2 167/13 172/18 174/4
175/15 179/19

done [10]  9/13 13/24 102/17 103/8
117/9 121/4 123/19 137/23 151/11
183/15

doubt [2]  149/20 155/3

dovetail [1]  129/8

down [10]  63/13 81/21 82/24 98/13
124/13 126/6 126/14 147/2 149/13
166/3

download [14]  63/15 173/23 174/16
174/22 176/12 176/18 176/24 177/7
178/2 178/10 179/23 180/4 181/4
181/13

downloaded [5]  176/14 177/6 179/8
179/12 180/6

downloader [1]  175/23

downloading [6]  51/16 174/19 177/4
179/18 181/2 181/25

downloads [3]  179/7 179/14 179/24

downsides [1]  132/23

DP's [1]  75/25

draft [1]  56/2

drafts [6]  48/20 48/22 52/11 52/12
54/11 58/25

draw [9]  157/2 157/3 173/16 173/23
174/12 174/22 174/25 179/4 182/7

drawn [2]  156/14 173/17

drew [2]  82/14 178/7

drilled [1]  82/24

drive [2]  21/4 166/9

drives [1]  164/2

driving [1]  165/21

due [1]  155/21

during [13]  12/3 43/19 82/6 89/7 111/1
111/4 116/14 140/17 148/11 153/22
153/24 158/23 159/25

**E**

E-r-h-a-r-d-t [1]  83/23

each [25]  24/5 27/7 43/19 44/6 49/13
50/20 60/6 60/10 64/9 65/4 76/5 76/14
102/8 113/14 114/22 118/12 119/7
119/11 119/11 128/9 136/16 147/8
155/25 175/15 178/19

earlier [10]  39/12 47/23 48/18 100/11
103/16 103/20 107/18 145/5 145/7
173/14

early [1]  82/21

earn [1]  150/2

earned [5]  132/8 133/21 140/10 140/13
143/20

earning [1]  135/17

earns [1]  154/19

easily [1]  39/5

East [1]  160/25

Eastern [2]  131/2 131/3

easy [3]  41/9 113/6 177/20

economic [2]  132/19 149/11

economics [1]  149/18

efficient [2]  169/7 169/12

effort [1]  127/23

eight [3]  9/18 131/10 174/20

Eighth [1]  2/10

either [6]  23/15 36/12 62/20 79/11
106/18 134/17

elaboration [1]  63/25

elbows [1]  137/6

electronic [7]  113/22 115/2 116/23
117/3 117/5 120/11 121/12

electronically [1]  118/1

element [2]  135/24 158/12

eligibility [1]  35/14

eligible [1]  35/22

ELKIN [7]  3/2 4/21 46/20 47/11 150/12
161/21 183/6

Elkin's [1]  101/18

else [14]  33/18 53/22 67/11 69/20
78/20 79/8 97/24 98/20 116/7 128/22
130/17 131/8 132/12 183/2

elsewhere [2]  79/18 116/11

email [27]  2/6 2/7 2/12 2/17 3/6 3/6 3/7
3/11 3/15 3/20 8/22 14/5 15/7 36/13
45/19 49/15 49/19 60/11 62/20 62/21
76/23 90/3 105/7 107/25 108/3 108/11
130/12

emailed [1]  101/2

emails [13]  17/4 19/23 36/13 46/3 49/9
49/21 52/14 63/15 64/24 75/11 80/15
88/22 92/7

emphasis [1]  139/4

employed [1]  186/9

employee [12]  86/6 110/25 111/13
112/8 112/9 114/19 114/20 114/22
115/2 118/1 119/7 171/15

employees [18]  85/23 113/15 116/8
116/24 116/24 117/7 117/11 118/23
119/11 120/14 120/14 120/15 123/4
124/2 128/25 170/23 171/14 172/12

employment [1]  86/20

enacted [1]  94/9

encompass [3]  13/1 21/3 170/1

encompasses [1]  26/2

end [13]  7/22 16/25 93/24 126/4
127/24 134/1 137/23 138/11 138/17
139/14 140/14 159/11 183/1

end-run [1]  137/23

ended [1]  83/7

endpoint [1]  141/2

ends [1]  140/15

enforce [2]  74/8 132/11

enforced [1]  74/2

engage [2]  51/13 51/16

engaging [1]  67/6

enlighten [1]  144/23

enormous [2]  19/11 164/23

enough [6]  38/17 79/14 97/15 122/7
151/3 164/15

entails [1]  96/18

enter [1]  180/18

entering [1]  155/5

entire [5]  46/5 116/16 139/1 158/23
169/25

entirely [7]  9/1 24/1 37/18 86/10 86/21
103/18 156/21

entitled [19]  36/13 44/5 49/1 49/20
50/17 54/5 63/3 70/12 74/9 74/11
75/12 110/12 141/9 141/10 152/13
158/7 166/20 166/21 172/20

entries [5]  62/20 65/1 65/24 66/1 66/4

entry [1]  4/9

equipment [1]  150/18

equivalence [1]  116/25

equivalent [1]  136/14

eranahan [1]  3/15

Erhardt [10]  82/17 83/1 83/23 84/4
84/8 84/25 86/11 86/22 87/5 87/8

ERIN [14]  3/13 4/21 6/6 6/22 6/22 9/15
10/24 11/6 24/4 25/21 52/21 57/11
101/1 161/25

erred [1]  82/22

erroneously [1]  103/24

error [8]  86/18 99/21 100/21 100/24
101/3 101/25 103/21 103/25

especially [1]  180/5

ESQ [10]  2/3 2/3 2/9 2/14 3/2 3/2 3/3
3/8 3/13 3/17

**E**

essence [1] 51/25
essentially [4] 51/14 51/18 154/11
175/9
establish [1] 131/24
estimated [3] 153/15 153/21 153/23
estimates [1] 51/21
et [4] 1/4 61/11 74/22 77/20
eternal [1] 5/5
evaluate [1] 22/8
even [23] 29/18 36/25 50/23 51/4 70/7
74/6 76/19 81/2 83/1 83/15 84/24 85/3
85/10 92/9 120/10 131/2 137/7 145/11
147/14 150/21 164/21 165/14 167/13
evening [2] 184/6 185/1
ever [4] 28/22 29/2 79/11 134/22
every [13] 28/4 28/4 65/4 67/17 75/4
76/14 76/23 77/23 103/8 113/19
113/19 140/10 147/6
everybody [3] 54/7 126/10 162/9
everyone [2] 92/5 178/11
everything [4] 89/25 91/25 92/18 97/8
evidence [27] 14/21 15/9 15/11 19/9
21/6 21/7 22/15 30/4 34/13 34/25
37/10 37/10 37/17 37/23 46/13 48/1
54/8 67/14 75/18 151/9 151/11 165/2
165/20 166/6 168/6 169/5 170/3
evolution [2] 92/22 92/22
exact [6] 31/17 39/17 40/3 136/21
137/11 143/24
exactly [15] 17/7 20/6 38/18 49/7 53/3
56/3 60/5 62/12 64/9 76/15 97/20
116/4 167/3 176/16 176/20
examine [1] 141/10
examining [1] 155/10
example [10] 16/3 18/20 21/3 39/14
49/14 51/8 62/2 67/7 78/15 128/15
examples [2] 129/21 169/10
except [2] 16/18 105/23
exception [4] 16/20 56/2 92/5 165/15
excerpt [3] 18/16 20/3 20/5
exchange [1] 126/7
excluded [1] 22/20
excuse [4] 46/10 66/21 134/25 168/22
executed [1] 21/25
exercise [1] 38/10
exhibit [19] 27/19 31/7 31/10 34/22
34/23 36/22 36/25 40/23 72/6 85/16
101/12 102/1 104/14 104/14 104/25
105/6 106/12 115/23 154/2
Exhibit 1 [1] 27/19
Exhibit 12 [3] 101/12 102/1 106/12
Exhibit 13 [1] 105/6
Exhibit 2 [2] 31/7 34/22
Exhibit 4 [2] 72/6 115/23
Exhibit 7 [2] 85/16 104/14
exist [12] 54/14 55/4 55/25 59/6 59/7
66/9 115/11 115/14 120/8 127/16
154/1 155/12
existed [1] 43/24
existing [2] 149/17 149/17
expand [5] 67/18 143/6 143/24 144/15
expanding [2] 57/17 142/17
expect [2] 8/9 84/13
expected [1] 125/5
expecting [2] 54/21 124/23
expedition [2] 86/10 86/21
expenses [1] 150/18
expensive [2] 163/20 170/9
expert [11] 40/16 40/21 40/23 41/2

147/9 147/9 148
159/14 165/12
expertise [1] 40/24
experts [4] 40/19 141/10 147/5 165/11
expires [1] 186/14
explain [4] 35/2 59/18 61/14 137/24
explained [4] 41/6 86/11 99/20 155/22
explaining [1] 164/19
explanation [2] 107/17 163/12
explore [4] 67/3 135/7 141/16 143/6
export [1] 136/25
extended [1] 147/10
extends [1] 83/16
extensive [2] 52/23 53/24
extent [12] 29/22 47/3 53/18 55/7
96/14 130/12 131/4 154/1 171/3 171/4
171/7 180/2
extract [1] 63/7
extracting [1] 64/10
extremely [3] 73/6 173/9 177/19
eye [1] 132/2
eyed [1] 113/4

**F**

F.R.C.P [1] 38/12
fabricated [1] 37/19
face [2] 68/15 121/8
Facebook [1] 169/11
fact [25] 20/5 21/25 26/17 34/7 34/12
44/15 47/23 50/19 61/18 90/8 92/3
93/21 93/23 94/1 95/22 95/22 97/2
99/24 114/18 117/3 120/25 146/10
169/15 175/2 178/9
factor [1] 157/3
factors [1] 133/6
facts [2] 36/20 102/20
failed [2] 30/25 153/1
fair [8] 13/23 44/15 79/14 97/6 97/15
118/7 156/7 176/7
Fairfield [2] 3/17 4/24
fairly [7] 114/13 149/18 151/15 153/17
153/20 154/22 170/22
fairness [1] 126/1
fake [4] 7/17 7/19 7/23 8/3
far [13] 14/2 24/5 24/19 37/15 48/4
54/17 55/6 80/22 118/18 120/2 135/21
182/4 182/4
fast [3] 174/16 174/21 176/24
fault [4] 122/22 144/8 145/3 145/10
features [1] 174/15
February [13] 84/6 86/7 101/15 101/19
101/22 104/16 104/19 106/2 106/8
110/8 110/15 110/16 111/20
February 19 [3] 104/16 110/8 110/15
February 4 [6] 101/15 101/19 101/22
106/2 106/8 110/16
feedback [2] 174/3 183/11
feel [2] 147/14 184/4
few [6] 62/15 112/21 142/24 157/4
160/16 183/15
fewer [5] 41/21 41/22 42/6
field [5] 65/9 65/15 65/16 165/10
165/12
fields [1] 64/23
figure [3] 135/7 143/9 154/18
file [3] 7/20 7/23 19/23
filed [2] 109/25 147/3
files [10] 7/17 7/19 8/3 13/16 15/7 19/3
46/16 51/17 103/7 109/10
fill [1] 95/17

filtering [1] 21/7
finally [1] 63/16
finance [14] 97/25 98/6 98/15 98/21
108/3 108/7 108/11 109/5 109/6 111/3
121/1 123/24 126/18 150/20
finance-related [1] 109/5
finances [5] 113/13 118/11 119/6 120/6
128/8
financial [44] 24/15 107/3 108/5 108/5
109/2 112/12 130/18 131/8 131/25
132/4 132/18 134/4 135/8 135/8
135/25 136/2 136/5 140/1 140/12
140/14 140/22 141/4 141/24 142/10
142/11 142/15 142/18 143/7 143/16
147/5 147/9 153/8 154/8 155/8 156/12
157/12 158/4 158/13 159/14 163/5
164/9 166/14 169/2 173/15
financials [4] 135/14 135/15 135/20
136/19
find [6] 53/19 76/2 116/24 124/13
142/12 142/22
finding [1] 78/2
fine [5] 19/24 34/20 161/21 161/23
171/5
fingers [1] 145/19
finish [4] 17/23 131/4 155/6 159/5
firm [7] 13/8 13/16 13/21 14/4 17/4
18/20 19/22
firm's [2] 13/16 15/7
firms [3] 13/22 13/24 20/16
first [26] 8/18 8/23 11/13 14/13 17/1
25/24 26/4 28/17 52/10 63/17 64/14
72/6 72/21 81/2 91/14 91/19 99/2
100/10 105/13 114/17 121/24 131/14
133/16 145/4 167/2 168/4
fishing [4] 73/3 76/8 86/10 86/21
five [2] 102/12 131/10
flip [1] 157/6
Floor [1] 2/5
Florida [1] 88/16
focus [4] 27/2 127/15 137/21 173/7
focused [6] 41/16 44/11 49/8 175/22
180/25 181/10
folks [11] 60/17 71/7 71/11 82/17 87/19
98/11 108/3 115/3 115/4 172/1 178/7
follow [5] 77/20 97/17 97/18 122/2
124/16
follow-up [1] 97/17
followed [2] 77/18 140/19
footnote [1] 156/18
footnoted [1] 29/14
force [1] 127/18
forces [1] 166/12
foregoing [1] 186/8
forever [1] 140/25
form [9] 7/21 38/18 38/19 52/24 53/6
53/6 153/6 155/18 186/7
formal [2] 126/23 127/15
format [1] 65/14
former [2] 85/23 111/13
forms [1] 113/21
formulate [1] 126/6
formulated [2] 58/19 59/3
forth [11] 14/1 16/6 23/7 30/5 49/2
53/20 68/16 82/13 85/24 151/2 169/22
forthcoming [2] 106/22 109/20
forward [11] 22/23 34/7 34/25 37/9
38/4 45/21 46/17 81/16 131/13 131/22
175/7
forwarded [1] 62/1

## F

forwarding [1]  61/10
fought [1]  146/25
found [13]  24/17 55/6 55/6 56/17 90/9
  109/8 109/9 136/19 157/7 173/21
  174/12 174/24 175/6
foundation [1]  170/12
four [8]  62/19 71/22 102/8 102/11
  177/24 178/12 181/20 181/21
four-year [4]  177/24 178/12 181/20
  181/21
framed [1]  138/19
Francisco [1]  3/10
frankly [4]  78/24 79/9 90/19 92/17
free [3]  34/25 116/19 165/16
frequency [1]  64/1
Friday [16]  4/6 4/25 7/16 11/18 11/24
  14/19 19/25 20/13 25/8 25/19 27/1
  29/16 43/22 44/15 45/2 47/6
front [13]  6/12 13/14 31/15 32/4 36/6
  36/10 37/5 42/24 53/24 138/2 138/2
  144/17 178/23
fruitful [1]  47/6
frustrating [2]  126/4 126/9
full [8]  19/19 20/5 112/4 114/19 115/2
  115/5 147/10 154/17
fully [1]  9/11
function [2]  128/18 128/24
functioning [1]  84/17
functions [2]  124/3 128/11
fundamentally [1]  155/19
further [12]  25/7 25/13 47/8 83/16
  104/23 105/11 106/4 106/5 170/12
  180/13 182/17 186/9
future [1]  163/8
fwlaw.com [1]  3/20

## G

gained [1]  141/25
game [1]  176/7
gander [4]  135/12 136/10 136/18
  136/20
gather [2]  164/22 164/23
gave [4]  42/7 57/4 64/16 80/13
general [5]  28/2 94/17 96/5 151/8
  152/15
generally [6]  30/17 156/15 167/5
  167/18 176/10 179/24
generate [1]  155/14
gentlemen [1]  107/15
get [43]  4/4 11/2 15/15 19/12 21/13
  21/18 24/17 36/11 40/8 41/9 42/4
  46/11 57/25 64/17 66/22 72/5 93/8
  93/16 95/9 95/9 95/20 97/4 103/4
  106/18 121/25 122/13 124/5 124/17
  124/21 125/5 126/6 126/9 127/7
  130/19 131/19 143/17 143/19 145/13
  146/2 146/9 157/9 181/6 183/15
gets [2]  121/22 126/4
getting [9]  9/22 20/15 21/6 29/2 31/11
  41/15 61/25 66/19 66/21 113/4 127/11
  141/4 141/22 142/10 169/8 182/15
gigs [1]  166/17
give [13]  23/5 33/17 39/14 69/3 80/5
  98/1 117/12 118/18 122/8 132/14
  148/17 173/2 184/13
given [18]  7/2 8/11 33/11 33/14 41/25
  65/20 86/20 88/24 112/3 118/20 135/5
  139/3 139/5 142/8 146/9 163/11 166/4
  172/15

gives [1]  152/10
giving [2]  144/18 173/11
glad [1]  42/10
glance [1]  81/2
glean [2]  119/15 158/25
go [47]  6/19 7/20 7/21 9/8 14/10 16/15
  17/23 19/13 20/14 20/21 37/22 38/9
  41/13 44/16 45/18 45/19 47/4 52/7
  53/2 60/7 64/21 67/23 78/24 79/10
  87/23 89/16 100/6 100/10 103/1
  105/19 123/14 123/16 123/18 131/3
  133/13 140/25 140/25 141/7 148/23
  149/2 160/23 162/15 168/5 169/4
  169/17 177/21 184/1
goals [1]  84/17
goes [24]  7/22 12/11 30/21 31/5 34/14
  59/11 65/22 74/16 74/17 74/18 94/7
  132/7 139/13 139/14 140/23 149/7
  149/9 152/2 154/23 164/12 167/16
  168/8 169/5 179/12
going [80]  5/16 11/7 13/20 13/20 13/23
  14/12 14/13 19/2 20/14 22/7 23/11
  23/17 30/5 31/4 34/6 38/9 40/8 41/3
  45/2 46/7 50/20 52/12 53/20 54/8
  54/11 62/23 64/4 64/17 66/8 67/8 67/9
  68/18 68/18 71/8 71/8 71/10 71/15
  73/12 78/6 80/4 88/11 92/19 93/7
  95/17 95/18 97/18 97/19 106/19
  106/23 107/10 109/23 120/4 124/4
  128/4 130/13 131/7 131/9 139/6 139/7
  145/8 146/7 148/17 149/2 157/11
  160/3 160/11 161/20 162/16 164/21
  164/22 164/23 166/23 170/13 173/8
  180/7 181/11 181/20 182/10 183/8
  183/21
GOLINVEAUX [53]  3/8 4/19 11/16
  11/21 14/12 17/23 23/1 26/16 28/14
  31/12 32/13 35/12 37/16 47/23 55/13
  59/24 60/25 62/10 64/7 66/3 69/12
  72/23 81/19 86/9 88/10 91/17 97/17
  107/12 108/23 111/11 114/16 116/22
  117/22 129/2 137/17 139/12 146/17
  150/13 155/3 155/12 157/1 160/7
  161/18 162/13 166/23 167/1 168/5
  168/16 171/22 172/11 177/16 181/17
  184/4
Golinveaux's [1]  157/15
Golvin [1]  181/17
gone [2]  65/2 151/4
good [9]  4/11 4/18 4/18 8/17 24/25
  49/5 127/25 131/11 184/25
goose [4]  135/12 136/10 136/18 136/20
goose/gander [3]  135/12 136/18
  136/20
got [25]  19/10 28/22 29/19 33/24 36/1
  36/11 42/6 45/3 60/17 60/21 70/4 71/7
  71/11 71/13 72/3 73/6 97/13 124/1
  134/13 145/8 150/25 151/24 152/8
  152/11 162/14
gotten [1]  67/1
GOULD [19]  2/3 4/13 131/12 136/2
  138/19 139/24 141/6 141/20 144/18
  145/1 154/4 156/2 156/11 158/12
  162/16 164/18 167/2 167/6 168/3
Gould's [2]  137/18 155/22
graduated [1]  84/15
Grand [1]  3/14
granted [1]  24/7
granular [2]  63/1 121/3
great [3]  5/2 152/16 157/9

greater [3]  149/16 155/8 181/8
Grokster [3]  168/10 168/12 168/13
ground [2]  46/23 127/11
group [12]  16/9 124/15 125/1 125/4
  125/7 125/9 125/10 126/17 126/17
  126/19 128/16 148/7
grouping [1]  98/14
groupings [1]  81/22
groups [8]  107/1 122/7 123/22 125/4
  125/22 126/15 126/15 128/11
growth [3]  180/21 181/9 181/22
guard [1]  39/24
guess [6]  18/14 80/25 146/6 156/2
  156/3 161/17
guessed [1]  73/13
guidance [1]  151/5
guidelines [1]  53/1
guys [2]  103/23 140/5

## H

hacking [2]  78/15 78/16
had [65]  8/5 12/4 14/14 16/6 17/15
  18/3 19/2 20/18 21/4 26/25 30/1 30/24
  37/1 45/13 47/5 48/5 49/11 57/13
  63/19 66/17 66/23 69/4 81/13 82/5
  83/9 84/19 84/19 84/20 84/22 85/3
  89/2 89/9 91/8 95/21 95/25 101/4
  101/5 103/14 106/24 109/14 111/14
  125/7 132/20 132/23 134/25 136/19
  137/6 137/6 137/9 138/9 140/20 142/1
  143/21 145/9 147/11 147/20 150/15
  155/24 157/22 167/3 174/12 174/24
  181/3 181/23 186/8
hadn't [3]  76/19 100/9 148/3
haggling [1]  53/13
half [5]  80/4 83/3 131/14 131/15 161/20
half-hour [1]  161/20
handle [2]  126/16 126/19
handled [3]  28/2 52/16 184/11
handles [2]  123/23 123/24
handling [2]  87/20 89/6
hanging [1]  184/23
happened [7]  24/9 39/13 45/25 84/19
  97/14 103/12 103/19
happening [2]  93/4 122/22
happens [1]  128/17
happy [19]  10/17 10/24 13/7 37/8 37/21
  105/10 105/20 107/5 125/17 133/8
  154/6 168/19 170/19 173/1 173/13
  178/16 183/13 183/25 183/25
harbor [11]  26/24 30/13 30/14 32/5
  34/2 35/14 35/15 36/24 37/1 37/1 37/6
hard [3]  21/4 141/21 144/5
has [66]  11/24 14/4 15/3 18/19 19/22
  22/17 27/17 27/17 29/6 29/8 29/12
  37/22 46/6 46/13 50/8 50/14 50/16
  52/11 53/25 59/13 59/14 60/23 63/13
  63/14 64/19 74/10 78/11 81/25 85/3
  89/25 90/6 92/10 93/22 94/3 95/12
  96/10 96/12 97/10 98/5 103/19 109/21
  109/24 113/20 114/19 114/21 118/9
  137/23 138/12 138/15 139/9 139/17
  141/1 144/9 148/9 151/17 156/9
  158/12 159/9 159/22 160/12 163/8
  164/12 165/24 167/6 167/9 173/14
hash [1]  11/12
hasn't [1]  18/13
hate [1]  160/17
have [308]
have not [1]  55/6

**H**

haven't [13]  9/18 23/15 32/21 33/10
34/1 41/4 41/6 42/22 102/17 108/11
126/2 150/8 155/22
having [12]  40/19 46/12 84/9 91/5
92/10 95/25 129/20 130/8 135/7
141/15 144/5 174/2
he [48]  20/8 24/7 24/17 35/17 36/8
58/25 83/24 84/5 84/25 85/6 85/9 85/9
85/12 85/15 86/18 87/10 87/11 88/17
88/19 89/10 89/15 89/21 89/24 89/25
90/6 91/20 92/14 92/14 95/18 95/20
95/21 95/25 103/19 108/8 110/25
111/19 111/19 112/5 112/9 134/6
134/7 138/4 138/4 147/22 157/13
167/9 167/14 174/13
he's [21]  24/7 40/8 68/17 70/8 71/8
71/10 77/13 85/10 85/20 86/3 86/7
88/13 90/1 91/19 103/14 103/20
111/13 158/19 167/11 167/11 178/24
head [3]  67/14 108/7 150/20
head-on [1]  67/14
headset [2]  174/4 174/5
hear [10]  10/20 54/12 123/6 123/17
144/15 146/4 161/18 175/18 176/9
180/20
heard [7]  47/23 84/3 105/9 116/22
118/17 134/23 157/21
hearing [12]  1/10 1/13 4/4 4/25 5/8
12/3 28/3 138/3 138/6 184/15 184/22
186/5
hearings [2]  160/16 184/14
hearsay [1]  165/15
heart [6]  65/23 77/19 87/23 132/7
179/5 179/13
heavily [1]  148/4
heavy [1]  163/18
Hegarty [19]  23/15 24/5 24/13 24/20
48/20 48/22 52/11 53/4 53/16 57/14
105/15 134/6 134/14 137/23 138/3
138/12 147/19 147/25 184/11
Hegarty's [3]  58/24 139/5 148/16
held [1]  131/21
help [3]  69/12 98/3 105/1
helpful [13]  21/22 31/16 43/14 107/6
108/19 121/7 132/13 132/16 133/9
135/5 151/7 173/6 178/17
helpfully [1]  80/10
her [6]  107/16 154/14 183/20 183/22
183/23 184/1
here [89]  4/4 4/7 4/24 11/7 15/6 21/12
22/9 22/13 24/7 25/3 25/14 29/6 31/11
34/16 35/13 36/20 36/23 43/3 45/4
46/20 46/24 47/11 49/8 51/21 52/13
53/11 59/21 64/4 65/2 65/3 66/15
75/21 76/25 77/25 80/6 88/17 91/13
92/23 103/1 103/8 103/19 103/23
104/13 105/10 106/24 111/16 112/22
112/24 114/10 116/12 120/2 120/3
122/5 122/22 124/1 124/21 124/24
125/1 125/2 126/11 127/20 128/14
128/25 129/1 130/24 132/1 135/12
136/23 136/24 137/12 137/24 139/12
141/24 145/4 146/14 147/13 148/14
150/9 152/13 153/20 156/8 160/16
160/21 161/1 161/21 170/11 173/8
174/14 175/24
here's [4]  40/24 77/16 102/6 165/1
hereby [1]  186/4
herein [1]  186/10

herring [1]  34/16
Hey [1]  176/23
Hi [2]  95/14 170/18
hidden [1]  42/22
hide [2]  65/9 65/16
high [2]  35/7 136/5
high-level [2]  35/7 136/5
higher [9]  149/16 163/17 163/19 166/9
166/13 169/1 181/1 181/5 181/11
higher-speed [1]  163/17
higher-tier [1]  166/9
higher-tiered [1]  169/1
highly [6]  22/1 137/22 138/13 147/22
147/23 167/13
him [8]  5/1 88/17 89/23 89/25 90/13
96/2 99/25 114/23
hire [2]  83/13 83/22
hired [1]  83/11
his [30]  14/18 14/18 14/18 83/13 83/22
85/4 85/4 86/19 86/20 88/19 88/22
88/24 90/3 90/8 95/24 96/15 111/17
111/21 112/4 112/5 112/5 138/3 138/3
154/14 156/9 157/11 159/14 167/12
173/19 178/4
history [2]  24/19 184/9
hit [7]  58/2 76/9 94/15 94/19 97/4
180/12 182/14
hits [1]  182/15
hoc [1]  115/3
hogs [1]  163/16
hold [1]  10/12 17/22 17/22 53/25
83/10 101/10 104/4 104/10 140/3
143/2 143/2
holding [1]  55/9
Honor [1]  4/23
hope [2]  5/5 112/4
hopefully [3]  80/9 130/2 178/10
hour [6]  80/4 131/1 161/20 163/2
163/11 166/17
hours [2]  140/6 143/8
house [9]  87/19 88/6 88/13 88/15 92/1
92/3 94/2 96/22 97/2
housed [1]  129/7
how [60]  21/12 25/25 28/2 28/12 30/15
31/1 31/21 31/23 31/24 32/1 32/1 32/8
39/3 42/3 43/15 43/15 47/2 51/20
52/16 53/6 73/1 73/8 73/18 73/20
75/14 78/3 78/3 78/10 79/15 79/20
81/1 81/1 84/15 84/17 87/14 91/24
93/3 94/8 97/5 120/11 121/21 125/21
130/15 133/4 133/22 135/16 138/18
143/9 144/5 144/19 146/7 151/9
155/22 155/23 155/24 156/16 158/5
160/10 182/14 184/11
however [9]  20/17 59/1 65/25 79/5 87/9
96/7 110/12 118/23 159/2
huge [1]  77/8
huh [6]  6/2 85/18 117/19 142/14
151/20 151/21
hurdle [1]  93/16
hypothetical [1]  49/15

**I**

I'd [7]  107/5 140/2 144/2 162/19 173/13
175/19 178/16
I'll [16]  17/24 20/22 21/19 33/25 39/14
64/12 137/17 137/18 137/21 142/25
143/16 149/4 150/3 159/18 160/23
183/15
I'm [94]  4/24 5/1 5/16 10/24 11/6 13/7

14/10 17/17 17/21 18/12 19/24 20/14
24/10 24/10 32/15 36/20 37/8 37/21
42/10 44/24 45/11 48/7 49/23 52/11
52/22 54/10 56/23 57/6 57/17 58/2
58/13 65/12 67/23 68/6 69/1 69/1
69/12 70/19 71/15 72/7 74/9 76/12
79/5 79/12 88/25 95/17 96/16 98/18
99/6 99/6 99/19 100/15 104/3 104/6
104/11 104/24 105/20 111/16 112/14
116/21 119/18 119/19 119/20 119/22
120/7 120/10 123/12 123/18 125/17
128/3 129/11 131/14 133/8 139/6
139/25 143/1 144/5 144/19 148/17
149/2 149/8 155/3 160/3 161/21
170/19 173/1 174/1 174/2 174/2
180/12 182/10 183/5 183/13 183/14
I've [7]  70/3 97/16 116/7 117/9 129/16
131/12 150/25
idea [10]  19/22 46/3 63/21 80/14 88/17
88/21 90/2 92/13 167/25 171/25
identical [2]  147/18 184/12
identification [1]  124/1
identified [27]  8/22 45/20 63/20 71/18
82/5 85/15 88/23 97/2 99/4 99/5 108/1
108/24 111/3 119/8 121/1 128/17
129/19 130/8 130/12 135/2 135/4
142/11 146/21 148/2 148/4 150/6
150/8
identify [18]  85/22 113/14 115/10 116/8
118/23 119/3 119/10 120/24 121/15
122/16 128/6 135/1 135/1 142/9
142/20 142/24 143/9 144/13
identifying [2]  128/24 148/2
identity [3]  118/12 119/7 128/9
Ignore [1]  49/15
ignored [1]  35/2
imagine [2]  32/3 176/1
impact [2]  163/6 167/18
impacted [2]  73/25 74/4
impacts [1]  164/9
implement [1]  34/11
implementation [3]  24/16 27/2 92/23
implemented [9]  28/12 29/4 30/16 34/5
35/22 43/16 93/3 132/23 157/23
implementing [6]  84/10 91/7 91/11
119/13 122/13 157/21
implicate [3]  29/17 60/20 70/9
implicated [1]  143/12
imply [2]  89/22 178/24
important [14]  7/24 14/14 20/9 41/17
42/14 73/17 73/19 94/12 145/3 149/11
154/8 158/10 160/17 160/18
importantly [2]  126/11 173/24
impression [1]  177/18
improper [2]  164/23 175/13
improve [1]  164/6
inaccurate [3]  7/22 114/23 178/25
inadequate [1]  34/9
inadvertently [1]  106/13
inappropriate [4]  137/22 138/13 145/16
147/23
inartfully [1]  121/4
inasmuch [1]  43/25
INC [3]  1/4 1/7 2/2
incentive [6]  132/19 149/11 149/16
156/5 170/23 171/13
incentives [1]  140/23
incentivize [1]  172/12
inclined [3]  70/13 70/19 96/25
include [17]  12/5 43/4 45/22 58/25 59/4

I

include... [12]  63/9 67/17 67/18 86/1
94/11 99/16 106/8 107/15 119/7 128/9
177/6 179/11
included [24]  8/8 27/23 34/6 45/18 58/3
82/18 83/21 83/25 84/5 85/10 85/12
92/4 93/11 93/15 93/17 93/22 96/6
98/25 99/15 102/14 103/17 111/7
130/9 130/15
includes [4]  34/23 60/10 113/9 118/1
including [21]  13/25 24/15 48/5 58/20
60/11 73/2 83/8 102/10 113/11 132/24
139/11 146/17 146/18 146/22 168/20
174/14 174/20 175/2 176/13 177/5
180/5
inclusive [1]  82/23
incoming [1]  127/12
incomplete [2]  42/8 75/9
incorrect [1]  167/15
incorrectly [2]  69/14 103/17
increases [1]  171/9
increasing [1]  84/20
incredible [1]  170/1
incredibly [3]  60/9 93/7 178/14
indicate [6]  46/14 75/18 104/17 106/3
106/4 130/11
indicated [10]  12/4 14/19 30/13 39/12
46/23 69/8 138/4 139/11 171/18
184/10
indicates [4]  9/4 78/16 101/20 111/15
indicating [3]  27/8 90/6 101/25
indiscriminately [1]  47/21
individual [3]  50/16 64/24 131/19
individualized [1]  65/17
individually [3]  60/12 65/2 65/6
individuals [11]  90/22 98/24 102/18
106/16 106/21 124/25 125/3 125/7
125/13 129/19 130/8
individuals' [1]  129/22
infer [1]  145/1
infinity [1]  141/5
info [1]  62/11
inform [1]  165/12
informal [1]  183/21
information [138]  8/25 10/19 26/6 26/23
27/15 28/11 29/17 29/23 30/12 32/10
35/6 35/7 36/3 40/16 40/24 41/17
41/24 42/6 42/7 43/9 44/2 44/5 47/25
52/23 53/24 60/9 61/19 62/2 62/22
63/6 63/8 63/12 63/23 64/11 64/15
65/22 66/7 75/11 76/6 76/19 78/4
78/10 79/6 81/1 82/10 88/20 88/21
89/11 90/23 91/2 91/20 91/21 93/20
93/25 94/6 94/24 95/22 96/1 96/3
96/10 96/12 96/20 98/2 106/24 108/4
108/5 112/13 114/22 115/1 115/7
116/18 116/18 119/3 119/14 119/24
121/25 125/14 126/7 127/6 127/10
128/4 130/18 132/4 132/4 132/10
134/8 134/10 134/13 134/21 136/3
136/5 136/9 136/15 136/22 138/1
138/9 138/22 141/5 141/9 141/14
141/22 142/4 144/12 144/14 144/22
146/7 146/9 146/16 147/12 148/10
148/13 150/15 151/16 151/23 151/25
152/7 152/14 152/19 152/21 152/25
153/20 154/15 155/1 157/10 158/15
158/24 158/25 159/22 160/1 160/2
164/13 164/22 165/18 166/19 168/20
169/20 170/1 180/8

informed [1]  129/16
infringe [6]  57/25 70/17 156/14 163/10
173/18 174/16
infringed [2]  8/2 50/16
infringement [59]  8/1 26/1 31/1 31/4
31/20 39/20 45/23 48/17 48/25 50/2
50/11 51/9 52/15 52/17 54/12 58/22
67/6 67/14 69/9 70/18 72/10 72/18
73/3 74/14 84/11 84/21 89/4 89/7
91/12 109/16 113/11 113/15 118/9
119/4 119/14 121/17 122/13 128/7
128/15 128/21 132/2 132/19 132/21
134/5 140/17 143/22 149/10 150/1
150/7 157/23 165/13 166/12 167/5
168/7 168/7 168/15 175/4 178/7 182/4
infringer [16]  29/4 30/16 30/20 35/19
45/19 49/22 50/4 50/9 50/12 50/14
50/19 50/24 68/1 72/12 73/19 140/20
infringers [10]  28/13 34/5 50/6 66/16
68/14 69/17 70/23 71/24 133/24
169/25
infringing [32]  30/24 45/21 49/16 60/19
70/17 71/3 71/12 71/18 74/5 74/18
74/19 131/25 132/3 132/9 133/5
133/18 134/3 134/4 134/18 140/11
140/12 143/6 157/17 158/1 158/2
165/4 165/5 165/23 166/5 169/13
170/7 173/23
inherently [1]  169/12
inhibit [1]  67/3
initial [7]  86/2 86/15 89/18 94/22
106/15 106/22 121/25
innate [1]  175/22
inordinate [1]  118/19
input [2]  154/7 158/10
inquire [1]  19/15
inquired [1]  70/7
inquiries [1]  156/20
inquiry [7]  10/15 28/1 93/24 153/18
164/25 172/10 178/6
insight [6]  97/24 98/5 98/5 98/15 98/21
122/9
insights [1]  164/2
instance [2]  25/24 160/3
instances [2]  72/21 151/7
instant [1]  20/13
instruct [3]  65/15 130/1 130/5
instructed [2]  71/20 125/19
instructing [1]  180/13
intend [3]  89/22 102/17 110/11
intended [4]  100/22 101/5 102/16
145/12
intending [2]  87/3 99/22
intends [1]  154/12
intensive [2]  163/14 166/8
intent [1]  102/21
intention [3]  20/17 106/15 131/3
intentionally [1]  32/15
interacted [1]  62/25
interaction [1]  83/9
interactions [1]  48/2
interest [2]  76/17 95/17
interested [4]  76/11 119/18 119/22
186/11
interferes [1]  51/15
internal [13]  41/4 46/3 47/15 53/13
74/17 116/23 117/11 119/16 120/11
163/24 181/3 181/9 181/23
internally [3]  49/12 53/14 73/18
Internet [12]  58/21 153/16 153/24

163/20 166/10 166/13 174/21 176/18
176/25 178/2 178/10 178/13
interrog [1]  38/22
interrogatories [12]  26/3 27/22 27/22
28/18 38/8 41/8 48/14 57/9 105/13
105/23 109/19 110/19
Interrogatories 13 [2]  26/3 48/14
interrogatory [62]  27/18 28/7 33/4
33/17 38/20 38/23 38/25 40/10 41/6
41/18 42/3 42/3 56/16 84/7 84/8 85/14
86/14 86/16 86/17 86/25 91/4 99/1
99/4 99/9 99/11 99/24 100/8 100/12
100/17 100/23 102/21 103/6 103/12
103/16 103/23 104/2 104/20 105/14
105/15 105/17 105/19 105/22 106/2
107/15 109/25 110/7 110/17 110/17
110/23 111/16 115/7 116/20 118/7
120/9 122/1 122/3 124/17 127/9 129/7
129/8 129/10 152/22
interrupt [4]  44/25 69/2 123/15 126/25
intertwined [1]  44/16
interviews [1]  108/9
introduce [1]  87/4
inured [1]  169/1
inures [1]  166/13
investigation [1]  93/16
invoked [1]  136/11
involve [1]  13/11
involved [8]  7/13 8/4 23/10 39/23 64/10
87/20 87/20 119/12
involves [1]  39/25
involving [1]  13/12
iota [1]  147/6
IP [1]  45/20
irrelevant [5]  110/22 156/21 164/11
164/25 169/16
irrespective [1]  146/6
is [543]
isn't [4]  58/3 68/17 164/21 164/23
ISP [6]  32/8 45/19 51/11 76/14 122/11
176/23
ISP's [1]  47/21
ISPs [6]  93/2 154/25 155/2 158/3
163/23 166/7
issue [84]  6/9 6/10 6/16 7/6 7/12 8/15
8/18 10/2 10/10 11/10 11/17 13/17
14/16 14/21 15/9 25/14 29/12 29/13
29/25 30/6 32/6 32/6 33/23 34/16 37/6
37/20 37/24 41/16 43/21 44/18 45/3
46/6 47/3 47/6 48/4 51/24 58/8 63/17
63/20 66/15 68/19 71/1 75/5 81/13
81/17 81/18 89/4 90/13 94/13 105/9
108/17 109/11 109/21 114/5 114/10
122/5 125/11 132/8 135/12 137/11
144/20 144/24 147/19 147/24 148/11
148/16 148/18 150/16 153/2 155/20
164/25 165/5 167/4 167/19 175/7
175/14 178/3 179/3 179/4 179/13
181/10 182/9 182/10 182/20
issues [34]  5/6 5/18 6/14 6/16 7/15
14/1 31/12 43/9 47/5 65/23 66/7 76/13
76/13 81/3 81/15 82/24 88/23 90/3
107/3 109/3 118/14 128/2 128/23
130/14 135/22 142/5 143/19 150/24
163/5 178/15 178/17 179/5 182/3
183/1
it [409]
it's [180]  4/19 4/23 8/20 9/2 9/10 9/17
10/2 11/4 11/20 14/8 14/12 19/20 20/9
22/7 24/7 25/2 26/15 28/14 29/3 30/15

## I

it's... [160]  30/19 30/20 31/6 31/16
32/23 35/12 35/14 36/17 37/6 37/21
40/24 40/24 40/25 41/12 42/13 46/24
47/10 47/11 48/4 49/6 49/8 49/11 52/1
55/20 55/22 56/19 58/2 58/10 59/23
60/2 61/21 62/8 63/12 63/12 63/15
63/24 64/1 64/20 65/5 65/8 67/22 68/4
68/18 71/22 72/2 72/6 72/23 73/15
73/17 73/19 74/24 75/9 76/16 79/10
79/10 79/25 80/22 81/4 81/19 85/16
86/2 86/8 86/21 87/16 89/20 90/24
90/24 92/8 92/10 93/8 94/6 95/3 95/14
96/7 96/13 97/6 99/25 100/5 101/12
101/21 107/11 108/25 109/18 109/21
111/10 113/3 114/11 114/16 118/24
120/7 120/8 121/11 124/20 125/6
134/15 134/16 135/6 135/22 135/23
136/20 137/17 138/13 140/16 142/17
143/14 143/23 143/23 144/5 145/3
145/14 146/10 147/13 147/13 148/7
150/4 152/5 152/5 153/20 154/22
155/20 156/17 156/18 156/19 157/13
158/17 161/18 164/2 164/11 164/22
165/10 166/18 166/19 166/19 166/25
167/5 167/7 167/19 169/2 169/2
169/11 169/13 169/16 169/23 171/22
175/16 175/25 176/20 177/7 177/16
177/20 177/21 178/14 179/19 182/1
182/2 182/2 183/6 184/3 184/10
184/15
item [2]  39/1 39/1
items [3]  113/11 117/8 131/6
its [35]  19/3 19/23 27/2 27/15 28/12
32/25 32/25 47/1 48/16 63/2 67/5 69/4
72/18 74/17 74/18 74/19 77/18 77/20
78/1 79/20 84/17 86/25 119/16 131/25
141/12 145/11 147/2 152/19 154/10
154/13 156/16 165/18 168/6 174/21
182/3
itself [7]  26/6 48/10 93/24 96/23 96/24
110/22 146/1

## J

JACK [2]  3/17 4/23
Jackson [16]  23/15 131/21 156/8
168/21 173/19 173/24 174/11 174/24
175/6 175/10 175/16 176/6 176/21
178/4 178/23 182/6
Jackson's [6]  156/18 173/3 174/10
174/18 175/14 178/18
jeff [4]  2/7 4/13 131/12 168/2
JEFFREY [1]  2/3
JENNIFER [23]  3/8 4/19 10/25 11/20
14/12 26/16 28/14 35/12 55/12 59/23
72/23 81/19 86/9 107/11 111/11
114/16 131/17 161/18 166/25 171/22
174/6 177/16 184/4
jgolinveaux [1]  3/11
Jim [4]  97/23 98/19 99/13 111/6
job [2]  52/25 53/1 53/1 118/12 128/9
JOHN [1]  3/17
joined [2]  81/25 97/10
joining [1]  5/3
joking [1]  183/14
JONATHAN [6]  2/9 4/14 41/13 49/6
72/2 95/15
Joyce [1]  4/25
jsperling [1]  2/12
jtanner [1]  3/20

judge [47]  23/15 23/15 24/5 24/13 32/6
48/20 48/22 52/11 53/4 53/15 53/16
57/14 58/24 105/15 131/21 134/6
134/14 137/23 138/3 138/12 139/5
140/7 146/19 147/19 147/25 148/16
156/8 156/18 168/21 173/3 173/19
173/24 174/10 174/11 174/18 174/24
175/6 175/10 175/13 175/16 176/6
176/21 178/4 178/18 178/23 182/6
184/11
Judge Hegarty [9]  24/5 24/13 48/20
48/22 52/11 53/4 53/16 57/14 105/15
Judge Hegarty's [1]  58/24
judgment [2]  50/15 79/19
jump [2]  11/17 156/2
jury [15]  32/4 32/6 32/7 36/6 36/10 37/5
67/4 73/23 73/23 74/11 132/6 133/6
141/11 147/12 166/20
just [129]  5/25 7/11 9/17 10/2 10/12
11/5 11/7 11/23 12/16 12/20 14/11
17/19 17/22 18/18 22/21 22/22 22/24
23/3 24/23 24/24 25/5 26/18 27/3
30/14 30/20 31/12 32/17 33/1 33/19
34/24 35/4 35/7 35/17 35/20 36/20
37/6 38/5 40/3 40/24 41/13 45/1 46/8
51/1 53/12 54/24 55/15 55/22 60/14
62/10 63/15 64/2 64/16 65/9 65/15
66/18 67/19 70/5 72/3 76/9 77/1 79/12
80/11 80/13 83/11 84/3 84/5 85/9 88/5
92/13 93/8 95/23 96/22 97/19 98/17
99/7 101/2 101/4 103/18 104/10
104/11 104/16 106/25 107/13 108/13
108/25 110/5 111/12 116/22 117/19
117/20 119/21 126/14 127/22 131/18
131/21 134/16 135/6 136/1 138/9
139/23 141/19 143/14 144/5 144/21
146/10 150/13 150/21 151/7 151/19
155/22 159/5 159/10 159/18 163/2
163/16 167/14 167/15 167/23 172/5
172/6 173/2 174/16 175/13 178/9
178/13 178/20 179/10 181/14 184/5
just this [1]  54/24
justify [3]  60/23 69/21 82/11

## K

keep [16]  64/15 67/8 78/9 99/23 145/3
147/6 148/24 149/8 153/4 153/13
155/13 156/3 160/6 162/24 162/25
178/4
keeping [1]  163/1
keeps [3]  37/16 52/22 157/1
Kelly [1]  129/22
kept [6]  79/16 81/1 81/2 81/2 156/16
156/16
key [4]  34/13 66/15 122/24 168/10
keyword [1]  35/20
kick [1]  157/12
kicked [1]  69/20
kind [5]  15/6 21/12 32/4 48/6 75/15
75/15 76/22 81/21 82/12 82/13 95/9
98/14 122/8 122/24 148/24 165/11
168/17
kinds [5]  23/20 73/21 74/21 74/22 77/7
knew [6]  31/4 67/5 74/6 103/17 140/11
143/21
know [114]  7/2 7/3 7/17 7/21 8/7 8/8
9/22 10/14 10/4 22/4 22/25 23/5 31/14
31/22 31/24 31/25 32/8 33/25 34/7
35/1 39/18 39/21 40/1 40/20 45/12
45/20 49/14 50/19 51/8 53/19 54/3

54/7 57/14 57/23 58/7 60/1 62/14
62/16 62/24 63/1 63/2 63/14 64/3
64/21 67/8 75/21 75/22 75/23 75/25
76/18 76/22 77/7 78/25 79/14 80/13
80/15 82/14 85/8 86/20 87/14 88/1
88/2 91/21 92/2 92/9 92/14 94/22
95/18 96/5 97/14 102/7 103/1 107/16
109/22 110/4 111/14 113/23 114/4
122/6 122/21 123/1 123/2 125/5
125/16 126/15 126/18 127/18 127/22
137/4 137/8 137/10 143/21 144/10
148/6 149/22 149/24 150/3 150/10
150/18 150/21 154/24 156/2 156/5
159/1 165/19 166/15 166/19 168/16
169/14 174/4 175/17 176/22 179/25
181/14
knowing [2]  134/3 140/20
knowledge [3]  47/1 89/2 89/24
known [3]  132/2 133/24 166/12
knows [3]  103/14 149/20 163/21

## L

lack [2]  146/9 172/8
Lacking [1]  170/12
laden [2]  60/10 61/13
landscape [1]  166/4
large [3]  51/17 180/12 182/16
largely [1]  131/20
larger [2]  40/21 152/1
last [23]  4/6 11/8 21/16 21/21 38/5
46/23 83/4 83/6 83/14 83/17 110/19
112/17 129/17 131/6 139/24 143/8
145/6 145/12 155/16 162/5 172/25
183/9 184/5
latched [1]  165/24
late [2]  131/2 131/2
later [6]  37/8 82/25 93/8 100/23 134/11
157/20
latest [1]  100/12
law [9]  13/8 13/15 13/16 14/4 15/6
18/20 19/22 19/22 132/18
lawfully [1]  166/2
laws [1]  74/14
lawyer [4]  37/19 91/25 92/9 93/23
lawyer-fabricated [1]  37/19
lawyers [1]  127/25
lead [1]  170/2
leap [1]  170/10
least [5]  8/7 9/11 111/16 143/19 182/25
leave [3]  127/10 130/2 159/19
leaving [1]  155/5
left [11]  20/9 35/20 95/12 111/19
111/20 135/7 142/21 142/21 143/11
143/15 147/13
legal [5]  87/24 89/9 91/24 94/4 94/10
legally [1]  178/11
legitimate [2]  64/2 164/12
length [4]  146/18 147/3 158/23 159/8
less [3]  8/19 80/22 155/4
let [30]  5/4 10/11 17/22 17/24 30/11
38/14 52/10 62/17 66/13 68/9 68/9
68/9 79/14 83/11 87/1 94/14 98/17
104/5 117/18 117/19 119/21 124/9
136/1 137/24 153/2 158/20 159/5
164/19 180/19 184/1
let's [18]  11/1 14/9 25/23 38/3 38/3
43/2 43/2 46/23 81/4 81/5 81/5 101/17
104/8 112/12 162/2 162/3 162/15
181/4
letter [10]  8/19 8/22 31/8 49/15 49/20

**L**

letter... [5]  63/19 63/19 85/17 91/14 98/25
letters [2]  53/7 53/7
letting [1]  183/22
level [6]  35/7 64/10 126/10 136/5 136/9 170/8
levels [1]  170/9
liability [9]  131/21 137/19 138/20 156/10 156/12 158/14 168/11 173/20 178/6
life [2]  146/11 152/3
lifetime [3]  155/9 158/9 159/15
light [9]  34/7 49/1 55/16 55/16 74/7 94/20 151/2 151/10 175/13
like [43]  9/10 14/13 27/1 31/17 38/22 57/24 58/8 62/3 62/6 64/20 76/8 81/16 89/2 91/10 101/14 105/9 105/20 106/25 112/3 113/20 114/8 114/12 120/25 127/2 132/16 140/2 144/2 153/13 154/4 154/25 155/15 155/20 160/11 161/5 162/19 163/14 163/15 163/23 166/6 168/20 170/20 175/19 176/20
likely [7]  10/6 14/21 65/5 90/22 94/12 129/8 152/13
likes [1]  145/1
limine [2]  147/3 147/4
limit [6]  26/13 27/25 66/2 67/3 138/9 152/10
limitation [1]  66/13 142/8
limitations [1]  138/1
limited [22]  21/2 26/17 27/3 28/8 33/12 33/13 39/11 41/20 43/4 44/20 64/16 71/12 118/24 138/7 144/13 145/2 147/20 153/20 160/2 169/24 179/19 179/23
limiting [1]  26/9
line [4]  4/20 4/25 53/16 82/14
lines [2]  106/10 181/14
link [1]  45/22
linked [1]  57/19
list [12]  5/7 87/9 92/6 93/15 97/1 102/18 103/4 116/1 116/3 130/10 130/16 182/25
listed [17]  84/8 85/2 85/10 85/21 86/3 86/7 91/3 91/5 92/4 99/1 104/20 105/18 110/5 116/11 117/8 131/10 134/18
listen [3]  23/9 46/22 67/8
listing [1]  89/23 90/19 114/20 114/20 115/5 116/1 116/12
literally [1]  136/15
literature [3]  165/9 165/22 166/4
litigated [1]  53/9
litigation [17]  14/22 14/25 16/5 19/6 21/22 23/24 25/11 50/13 50/21 51/1 87/25 88/15 88/15 89/10 91/9 117/9 186/11
litigations [1]  90/2
little [19]  9/5 12/20 24/23 25/2 26/25 30/11 32/14 41/14 41/15 65/13 76/12 83/2 98/13 113/4 126/4 135/6 135/6 149/13 163/12
LLC [1]  186/17
LLP [6]  2/4 2/9 2/14 3/3 3/9 3/13
locate [4]  53/17 53/22 54/17 54/17
located [1]  125/22
log [14]  12/19 54/19 60/8 61/12 61/15 61/22 64/17 64/20 64/23 65/24 66/1 90/4 92/19 92/19 94/15
logged [1]  12/9
logging [1]  12/19 88/23
logical [1]  141/1
logs [19]  59/8 59/16 60/1 61/1 61/7 61/18 62/11 62/23 63/18 65/22 66/21 66/23 67/17 70/16 71/17 71/17 71/25 78/19 79/8
long [7]  107/16 146/2 148/3 152/4 155/23 156/16 160/13
longer [3]  6/21 111/13 156/3
look [39]  19/18 20/14 20/21 20/23 21/19 22/5 25/16 31/7 31/8 32/9 47/4 60/7 66/19 73/15 73/23 79/2 79/11 79/23 93/2 99/12 103/2 115/3 121/6 125/16 135/19 141/9 148/16 148/18 150/23 156/19 158/14 163/25 163/25 166/7 176/3 176/5 177/21 184/10
look-back [1]  139/1
looked [6]  31/14 65/11 91/4 94/15 155/13 158/3
looking [18]  19/12 46/24 84/19 111/17 122/15 122/19 125/11 131/13 136/10 143/15 152/14 166/15 166/16 168/24 171/10 174/14 179/22 181/22
looks [5]  27/1 89/1 101/14 120/25 156/13
loop [1]  25/6
Los [2]  2/16 3/14
lose [2]  132/10 157/25
loss [1]  76/12
lot [12]  21/10 46/3 48/5 53/10 94/17 104/12 109/23 112/18 114/4 114/9 174/2 181/4
lots [1]  85/4
love [1]  177/20
lucrative [1]  49/16
lumped [2]  112/21 112/21

**M**

ma'am [1]  88/12
machine [1]  186/5
made [20]  47/14 62/24 70/16 86/13 93/17 94/10 94/10 95/10 95/21 101/5 103/7 120/7 130/7 132/25 138/12 147/6 167/10 176/6 177/25 178/20
magically [1]  22/24
magnitude [3]  43/25 118/20 170/11
mailboxes [1]  47/21
maintain [1]  117/25
maintained [2]  78/4 78/10
major [1]  113/19
majority [3]  36/15 165/3 165/22
make [31]  5/1 14/8 18/18 24/25 26/18 45/1 49/24 50/25 56/6 56/8 67/12 72/3 79/18 81/16 96/17 96/23 104/11 109/18 109/24 110/21 110/22 117/4 129/10 133/23 137/20 150/25 152/15 156/4 164/8 176/1 184/5
makes [12]  6/15 29/24 49/21 50/18 55/1 80/4 102/23 110/9 151/1 172/3 178/5 183/22
making [5]  14/16 15/12 23/19 135/17 168/5
managed [1]  79/20
manages [1]  88/14
manner [2]  23/18 119/12
many [27]  13/10 13/11 22/18 22/20
90/4 92/19 94/15
25/15 31/1 31/21 31/23 31/23 31/28 32/1 32/1 32/3 39/3 42/3 58/1 65/5 66/9 74/10 92/3 93/9 140/21 146/16 159/2 182/15 184/1 184/1 184/22
march [15]  33/15 83/14 83/15 83/17 83/22 103/13 105/4 105/11 105/12 105/16 106/8 107/6 107/14 145/6 162/5
March 2015 [1]  33/15
March 30 [2]  83/14 83/22
March 31 [8]  103/13 105/4 105/11 105/12 105/16 106/8 107/6 107/14
market [4]  165/6 165/11 165/14 165/14
marketing [19]  7/1 97/24 98/4 98/15 98/20 100/18 107/3 107/21 108/3 108/4 110/24 121/2 126/19 164/3 176/3 176/10 177/2 177/24 180/4
MarkMonitor [27]  11/25 12/6 12/7 12/17 13/11 13/12 14/20 14/22 15/2 15/9 15/15 16/4 17/5 17/5 18/4 19/6 19/10 19/13 19/15 20/18 21/3 21/7 21/9 25/11 25/12 45/16 48/8
massive [2]  51/16 132/3
master [5]  1/14 127/19 135/13 182/19 183/8
material [1]  179/11
materials [11]  175/21 175/22 176/3 176/4 176/10 176/11 176/12 176/17 177/3 179/17 180/4
matt [14]  2/6 4/12 5/9 5/15 13/4 17/12 22/12 26/11 84/3 90/18 95/11 97/13 102/5 112/24
matter [10]  43/23 91/24 111/8 118/15 133/1 169/21 170/3 177/14 177/21 179/5
mattered [1]  46/18
matters [6]  13/10 13/11 25/19 114/9 141/14 141/22
MATTHEW [2]  2/3 129/23
Matthews [1]  129/22
may [59]  1/11 1/14 5/16 8/2 11/9 11/16 17/4 17/10 22/17 22/19 22/19 26/17 26/19 28/9 35/9 36/21 39/23 40/17 43/6 45/1 48/7 50/3 50/11 63/19 66/9 72/11 80/25 81/3 83/20 84/3 89/8 90/17 94/1 95/5 98/8 98/12 98/22 100/2 101/7 101/12 102/1 102/2 105/8 108/13 110/11 111/3 118/22 121/4 124/16 137/7 137/8 139/15 139/18 139/18 140/1 165/19 168/16 185/6 186/13
May 13 [1]  63/19
May 17 [1]  139/18
May 20 [1]  111/3
May 2016 [1]  139/15
May 6 [2]  102/1 102/2
maybe [6]  11/10 32/14 34/12 58/5 88/10 144/23
me [93]  4/20 5/4 9/10 9/12 10/11 13/13 13/14 15/20 18/13 19/21 22/4 23/11 23/18 23/19 23/23 28/6 30/11 46/10 52/10 52/18 54/5 59/15 61/15 65/13 66/13 66/21 68/7 68/9 68/9 68/9 77/19 79/15 79/19 80/17 83/11 87/1 87/22 94/14 98/1 98/17 104/4 104/5 104/23 104/25 105/1 108/5 109/18 109/23 110/18 116/14 117/18 117/19 118/13 118/18 119/21 124/9 124/12 126/8 126/13 126/21 130/15 134/25 136/1 137/24 141/18 144/6 144/16 144/23

**M**

me... [25]  145/18 145/25 147/15 151/6
152/12 153/2 153/17 155/3 155/7
158/20 159/5 161/23 162/18 162/25
163/1 164/19 164/20 168/22 170/20
172/10 172/18 173/9 180/15 180/19
186/6
mean [21]  9/3 20/15 33/8 33/10 39/19
39/20 39/21 40/23 44/24 71/6 78/5
89/10 95/2 108/6 114/11 120/16
123/13 126/25 140/25 153/7 158/21
meaning [1]  40/11
means [4]  40/1 41/3 41/5 121/12
measure [1]  155/4
meet [15]  8/21 8/23 9/21 9/25 10/19
26/12 71/20 75/3 82/6 98/7 125/17
125/18 130/1 130/6 180/13
meeting [3]  81/25 95/12 97/10
meetings [1]  30/1
MEH [1]  1/3
melding [1]  43/23
melkin [1]  3/6
member [1]  124/24
memos [1]  54/12
mention [2]  5/25 177/25
mentioned [3]  49/14 136/17 167/14
mentions [4]  178/2 178/9 178/13
179/11
merely [1]  68/15
met [1]  50/23
metric [3]  154/22 155/1 157/14
MICHAEL [3]  2/9 3/2 4/21
Michelle [4]  1/15 1/18 186/3 186/16
microscopic [1]  143/12
midst [2]  55/12 55/13
might [10]  9/12 78/25 80/16 80/22
84/25 123/2 125/4 142/7 170/24
183/22
million [3]  36/1 36/1 149/21
millions [3]  36/11 60/20 66/9
mind [2]  46/25 145/3
mined [1]  64/19
minimum [3]  63/25 109/2 148/13
minute [3]  17/22 101/10 162/2
minutes [4]  162/4 162/4 183/14 183/15
mischaracterization [1]  103/19
misleading [2]  32/14 179/1
misrepresenting [1]  100/5
missed [3]  57/21 104/22 116/7
misses [1]  47/16
missing [1]  116/13
mistake [7]  86/13 101/4 101/5 102/10
103/8 103/13 107/19
mistaken [1]  155/4
model [1]  46/2
modern [2]  113/22 116/25
modification [1]  183/10
moment [6]  17/22 25/3 83/11 98/23
104/11 146/11
moments [1]  157/4
money [2]  156/4 164/8
month [9]  27/6 28/8 31/19 31/19 39/1
39/1 43/19 44/6 103/24
month's [1]  143/8
monthly [3]  38/19 133/17 155/6
months [1]  103/14
more [53]  6/1 6/13 6/25 10/3 24/4
29/19 33/19 46/8 50/1 50/16 53/19
57/18 58/5 63/1 64/24 65/16 66/24
67/20 71/11 72/9 72/14 83/9 98/2 98/3

107/24 113/24 118/24 118/24 120/8
120/9 121/3 121/7 121/24 127/8 129/6
132/11 135/22 142/20 143/9 145/11
147/22 155/4 155/19 156/4 162/18
163/2 163/19 164/8 170/6 170/9 181/6
181/12 183/14
Moreover [1]  29/14
morning [2]  4/18 6/12
most [3]  44/12 106/6 126/10
motion [21]  4/6 4/8 5/19 6/11 25/24
26/5 26/17 71/2 72/6 98/19 103/16
104/15 115/24 129/11 130/19 131/22
156/9 168/22 170/13 173/21 178/20
motions [4]  147/3 147/4 147/4 151/6
motive [1]  171/13
Mountain [2]  1/15 131/1
move [10]  38/4 56/8 111/11 112/12
129/15 129/18 129/24 131/21 170/9
175/7
moved [2]  138/2 147/18
movies [3]  167/7 177/6 179/24
moving [2]  19/21 104/12
Mr [10]  14/18 21/1 45/6 47/10 58/13
87/13 110/5 113/25 138/2 141/20
Mr. [106]  5/3 5/14 8/14 12/13 14/16
14/19 17/25 18/7 20/3 21/1 24/24
25/13 35/10 35/17 38/6 39/9 40/15
46/20 47/11 47/14 55/22 56/20 57/23
62/9 64/8 64/14 64/14 66/12 68/4 68/7
68/11 70/6 73/12 76/7 80/2 80/7 82/17
82/17 83/1 83/5 83/11 83/21 83/23
84/4 84/8 84/25 86/11 86/19 86/22
87/5 87/8 87/10 88/13 88/18 89/2 89/8
90/12 90/19 93/10 94/19 94/23 95/16
97/16 100/17 100/18 100/21 100/22
101/18 103/14 104/19 106/13 106/13
106/18 106/18 110/4 110/24 111/12
112/7 114/3 114/17 121/20 126/1
130/5 136/2 137/18 138/19 139/24
141/6 144/18 145/1 145/5 150/12
154/4 155/22 156/2 156/11 158/12
161/5 161/12 161/21 162/16 164/18
167/2 167/6 183/6 183/25
Mr. Abramov [9]  88/13 88/18 89/2 89/8
90/12 90/19 93/10 94/19 94/23
Mr. Elkin [5]  46/20 47/11 150/12
161/21 183/6
Mr. Elkin's [1]  101/18
Mr. Erhardt [10]  82/17 83/1 83/23 84/4
84/8 84/25 86/11 86/22 87/5 87/8
Mr. Gould [14]  136/2 138/19 139/24
141/6 144/18 145/1 154/4 156/2
156/11 158/12 162/16 164/18 167/2
167/6
Mr. Gould's [2]  137/18 155/22
Mr. Obermeyer [9]  100/17 100/18
100/21 104/19 106/13 106/18 110/4
110/24 111/12
Mr. Oppenheim [26]  5/14 8/14 12/13
14/16 17/25 18/7 20/3 21/1 24/24
25/13 35/10 35/17 38/6 39/9 40/15
47/14 64/14 86/19 95/16 103/14 114/3
114/17 121/20 126/1 130/5 145/5
Mr. Schoenemann [4]  100/22 106/13
106/18 112/7
Mr. Sperling [19]  14/19 55/22 56/20
57/23 62/9 64/8 64/14 66/12 68/4 68/7
68/11 70/6 73/12 80/2 80/7 97/16
161/5 161/12 183/25
Mr. Sperling's [1]  76/7

Mr. Tanner [1]  5/3
Mr. Taylor [5]  82/17 83/5 83/11 83/21
87/10
Ms [23]  4/19 6/5 12/24 17/9 38/1 42/15
46/20 47/11 55/11 55/20 97/11 97/12
100/4 100/6 101/8 105/2 107/8 110/4
131/11 146/17 154/12 177/9 178/24
Ms. [178]  4/12 5/23 8/16 10/12 10/14
10/17 11/16 11/22 13/3 14/11 16/7
17/9 17/16 17/23 18/23 20/2 22/7
22/11 23/1 24/1 24/3 25/5 26/10 26/15
28/15 30/11 31/7 31/12 32/2 32/13
35/9 36/19 37/16 38/22 41/11 41/12
42/11 44/9 44/22 46/19 47/10 47/23
49/6 51/12 52/1 54/13 55/10 55/15
56/3 56/15 56/24 58/9 60/15 60/25
62/8 62/10 64/7 66/3 66/10 67/22
68/12 69/12 72/1 72/14 72/22 73/14
75/9 77/4 79/25 80/10 81/20 84/2 86/8
87/18 88/10 89/17 90/20 91/17 92/15
93/11 94/19 94/21 95/2 95/4 95/6
95/14 97/17 98/12 99/17 100/1 100/10
102/4 103/9 104/5 104/9 105/6 105/8
107/13 108/13 108/23 111/10 112/7
114/15 116/21 116/22 117/16 117/22
119/17 122/6 127/3 129/12 129/15
131/7 131/15 131/18 135/19 136/25
137/10 137/17 139/12 139/19 139/23
141/8 141/18 144/1 144/25 146/12
147/17 148/12 148/21 148/25 150/13
151/18 153/7 154/6 155/3 155/12
155/15 156/22 157/1 157/3 157/15
157/20 158/11 160/7 160/20 162/13
162/19 162/23 163/4 166/23 167/3
168/2 168/5 168/16 170/15 170/18
170/25 171/2 172/11 172/24 174/2
175/19 176/8 177/16 178/16 179/9
179/16 180/17 180/22 181/17 181/17
181/18 182/21 182/22 183/19 184/3
184/21
Ms. Dittmer [3]  160/20 183/19 184/21
Ms. Golinveaux [31]  11/16 17/23 23/1
31/12 32/13 37/16 47/23 60/25 62/10
64/7 66/3 69/12 88/10 91/17 97/17
108/23 116/22 117/22 129/2 139/12
150/13 155/3 155/12 157/1 160/7
162/13 166/23 168/5 168/16 172/11
181/17
Ms. Golinveaux's [1]  157/15
Ms. Golvin [1]  181/17
Ms. Ranahan [6]  10/12 54/13 55/15
56/15 56/24 100/1
Ms. Rodriguez [116]  4/12 5/23 8/16
10/17 11/22 13/3 14/11 17/9 17/16
18/23 20/2 22/7 22/11 24/1 24/3 25/5
26/10 26/15 28/15 30/11 31/7 32/2
35/9 36/19 38/22 41/11 41/12 42/11
44/9 44/22 46/19 47/10 49/6 51/12
52/1 55/10 56/3 58/9 60/15 62/8 66/10
67/22 68/12 72/1 72/14 72/22 73/14
75/9 77/4 79/25 80/10 81/20 84/2 86/8
89/17 94/21 95/6 95/14 98/12 99/17
100/10 102/4 103/9 104/9 105/6 105/8
108/13 111/10 114/15 116/21 117/16
119/17 122/6 127/3 129/15 131/18
135/19 136/25 137/10 137/17 139/19
139/23 141/8 141/18 144/1 144/25
146/12 147/17 148/12 148/21 148/25
151/18 153/7 154/6 155/15 156/22
157/20 158/11 162/19 163/4 167/3

**M**

Ms. Rodriguez... [15]  168/2 170/15
 170/18 171/2 172/24 175/19 177/16
 178/16 179/16 180/17 180/22 181/18
 182/21 182/22 184/3
Ms. Sahni [12]  10/14 16/7 104/5
 107/13 131/7 131/15 157/3 162/23
 170/25 174/2 176/8 179/9
Ms. Schoenemann [1]  112/7
Ms. Starkweather [7]  87/18 90/20
 92/15 93/11 94/19 95/2 95/4
much [19]  5/16 7/3 14/16 21/4 44/1
 57/18 63/1 97/5 119/15 131/3 133/4
 133/22 135/17 158/5 162/6 168/7
 168/7 169/23 184/18
multiple [5]  50/10 51/4 66/17 67/1
 86/12
multiplier [3]  154/12 154/18 159/1
multiply [1]  154/21
music [24]  174/19 175/23 176/13
 176/13 176/19 176/24 177/5 177/5
 177/7 177/25 178/3 178/9 178/10
 178/14 179/7 179/12 179/18 179/24
 180/5 180/5 181/2 181/5 181/13
 181/25
must [3]  56/11 144/14 150/14
my [43]  4/12 4/21 8/20 9/4 12/25 13/5
 13/6 15/19 16/14 16/16 18/15 18/24
 20/17 20/17 27/5 28/3 28/10 39/24
 41/14 43/2 44/4 46/24 69/3 69/11
 69/12 100/9 104/3 111/6 112/25
 116/11 117/10 121/5 131/3 139/25
 140/3 148/18 159/5 159/13 161/18
 162/22 182/25 186/12 186/14
myriad [1]  165/19
myself [1]  16/7 146/18

**N**

N.W [1]  2/4
name [13]  7/20 60/11 87/14 113/14
 114/22 119/10 124/6 124/6 124/15
 126/17 126/17 126/18 128/18
names [15]  6/13 6/25 7/2 64/24 115/10
 116/3 122/6 123/4 124/2 124/17
 124/25 125/1 125/2 128/12 129/22
Napster [1]  168/11
narrative [3]  51/19 75/10 75/13
narrow [7]  93/7 159/21 160/2 170/6
 170/22 171/12 181/13
narrowed [2]  28/7 177/13
narrowly [6]  44/11 118/24 177/3 179/6
 180/2 182/8
NASA [1]  169/11
nature [5]  12/13 63/21 63/25 64/8
 166/8
near [2]  62/16 167/14
nearly [4]  147/18 177/24 181/21 184/12
necessarily [11]  27/3 64/9 70/19 77/17
 89/10 96/8 124/15 124/21 179/10
 179/19 182/6
necessary [2]  22/7 127/20
necessity [1]  164/21
need [45]  20/21 20/22 24/25 27/15
 32/22 33/17 33/18 35/6 35/7 36/3
 43/14 46/8 47/4 76/1 76/16 92/18 93/9
 93/11 98/8 114/4 124/13 124/16
 126/22 127/14 128/19 128/25 128/25
 129/10 131/5 134/2 134/22 135/10
 142/12 149/24 152/7 154/18 159/8
 159/10 159/11 160/10 161/17 163/19

needed [1]  79/11
needs [9]  14/17 34/14 71/16 75/4 88/24
 136/24 164/1 164/6 170/4
NEEMA [6]  2/14 4/14 8/16 105/9
 170/19 180/23
negotiating [1]  55/13
Nelson [1]  129/23
nets [1]  155/9
network [6]  84/13 85/1 86/5 176/14
 179/14 180/6
networks [3]  93/1 163/7 165/5
Neuverth [1]  129/23
never [9]  31/24 63/19 67/9 70/7 101/5
 127/4 132/21 150/1 157/21
new [11]  2/10 2/11 2/11 3/4 3/4 55/16
 57/22 102/19 138/8 140/10 149/14
next [14]  11/9 11/18 17/2 58/8 79/15
 80/25 81/13 101/18 103/24 112/12
 130/2 143/17 149/2 170/8
nice [1]  33/25
no [71]  1/3 6/21 9/22 13/14 15/24
 18/23 19/1 24/7 24/16 25/20 29/12
 36/5 36/24 37/17 37/23 38/14 39/25
 41/2 41/19 42/21 48/24 50/13 56/20
 60/22 60/23 61/6 63/21 76/3 85/7 87/6
 90/6 90/6 91/20 92/21 102/13 102/13
 102/13 103/7 105/20 105/21 108/24
 109/8 109/9 111/13 113/3 113/3 115/5
 119/20 120/4 123/18 123/18 130/21
 133/10 138/15 144/8 145/2 149/20
 153/9 153/9 155/3 163/20 167/25
 169/2 171/4 172/3 172/12 174/9
 175/12 183/16 183/16 183/17
nobody [2]  63/13 63/14
Nobody's [1]  55/24
non [2]  60/24 88/20
non-RIAA [1]  60/24
non-work [1]  88/20
none [4]  8/24 93/6 127/6 133/2
nonetheless [4]  77/22 128/18 129/9
 144/12
nonpayment [1]  75/24
nonprivileged [5]  88/20 89/21 91/9
 91/21 92/15
normal [2]  78/10 122/17
not [281]
Notary [2]  1/16 186/4
note [8]  26/4 27/18 29/5 29/14 72/24
 111/12 171/23 178/18
noted [2]  33/2 145/2
notes [9]  60/1 60/8 61/12 61/22 62/24
 64/17 64/20 64/23 67/12
nothing [7]  15/15 39/4 46/6 46/12 53/14
 91/9 169/12
notice [35]  23/6 27/7 28/4 28/22 29/19
 30/24 31/3 37/11 39/19 39/20 45/17
 45/17 45/21 46/14 48/7 50/2 53/1
 61/25 67/17 71/6 72/9 73/18 78/17
 83/4 83/6 83/15 83/17 91/15 119/14
 140/11 145/4 145/6 145/8 145/11
 145/12
noticed [1]  103/25
notices [139]  7/25 19/6 19/9 19/10 26/1
 27/7 27/9 28/2 28/19 28/19 28/24
 28/25 29/9 29/10 29/19 29/20
 29/24 30/6 30/15 31/1 31/20 31/21
 31/21 31/23 32/8 32/16 32/19 32/21
 33/7 34/23 34/24 36/2 36/11 36/11

163/21 183/3 183/19
36/15 37/16 38/7 39/3 39/15 41/22
 42/4 42/6 43/5 43/18 43/20 44/6 44/13
 45/14 45/15 46/4 46/10 47/19 47/20
 47/24 48/6 50/10 51/4 51/9 52/7 52/16
 60/4 60/6 60/15 60/16 60/17 60/21
 60/22 60/24 61/4 61/7 61/23 62/15
 62/17 62/19 65/1 66/1 66/8 66/9 66/17
 66/21 66/22 66/24 67/1 67/19 67/19
 67/21 67/25 68/16 68/22 69/10 69/19
 70/9 70/17 70/17 71/5 71/7 71/13
 71/18 71/19 72/18 78/22 83/9 84/16
 84/20 84/22 87/20 89/6 89/13 93/1
 93/2 113/16 122/13 125/8 125/21
 126/16 132/16 133/22 134/19 135/2
 135/3 140/17 140/21 142/9 142/12
 143/13 143/22 146/22 148/3 148/9
 151/24 152/8 152/11 152/17 155/25
 171/14 171/25 172/1 175/3
notify [2]  101/10 101/10
notion [3]  37/15 37/19 157/2
notoriously [1]  163/14
notwithstanding [1]  51/5
now [71]  6/21 11/9 18/18 19/12 32/13
 33/16 34/10 34/10 34/18 35/9 45/25 47/25
 50/13 50/21 50/24 53/17 53/21 57/17
 57/20 57/25 63/5 63/11 63/16 70/6
 70/8 70/10 71/15 76/22 80/23 81/5
 81/5 85/6 90/24 91/3 91/13 93/6 99/1
 102/11 102/11 103/14 106/21 109/7
 126/3 132/13 133/8 133/20 133/25
 134/9 134/13 134/20 135/17 138/17
 144/17 147/21 148/6 148/12 148/17
 149/6 150/3 151/5 157/15 157/21
 158/19 160/16 163/20 164/10 165/24
 168/1 172/22 174/24 175/15 183/13
nowhere [1]  70/6
nsahni [1]  2/17
null [2]  56/5 75/20
number [66]  15/19 16/21 16/24 27/6
 27/9 29/2 29/10 31/20 32/22 35/4 36/2
 42/8 43/18 44/6 47/24 67/25 68/1 69/9
 69/13 70/9 70/23 71/22 71/22 84/20
 85/21 91/4 93/1 93/2 99/10 99/11
 100/17 101/6 104/20 105/15 105/19
 105/23 106/2 106/7 107/13 110/8
 112/13 119/2 119/9 119/23 121/20
 122/1 122/2 127/8 128/3 129/6 129/9
 129/13 129/16 130/19 142/24 143/2
 143/3 143/5 152/16 152/23 154/3
 166/17 168/4 180/12 180/20 184/12
Number 1 [11]  85/21 91/4 99/10 99/11
 100/17 101/6 104/20 105/19 106/2
 106/7 110/8
Number 10 [5]  119/9 119/23 121/20
 129/6 129/13
Number 12 [2]  105/15 105/23
Number 19 [1]  184/12
Number 42 [1]  180/20
Number 5 [2]  129/16 130/19
Number 52 [1]  152/23
Number 55 [3]  15/19 16/21 16/24
Number 7 [4]  119/2 122/2 128/3 129/9
numbers [7]  28/8 30/5 31/18 36/6
 36/10 40/12 75/5

**O**

oandzlaw.com [2]  2/6 2/7
Obermeyer [14]  97/23 98/19 98/23
 99/13 100/17 100/18 100/21 104/19
 106/15 108/18 110/4 110/24 111/6

**O**

Obermeyer... [1] 111/12
object [1] 85/25
objected [2] 22/18 22/19
objection [11] 43/3 52/18 56/10 57/4
 59/18 119/23 128/12 146/25 167/16
 171/17 172/7
objections [1] 147/8
obligations [1] 23/5
obtain [5] 144/14 144/21 176/13 176/18
 180/5
obtaining [10] 149/6 153/2 153/5
 153/15 153/22 175/23 177/4 179/7
 179/18 179/23
obviate [1] 43/14
obvious [1] 143/18
obviously [12] 13/9 13/23 14/8 22/16
 32/6 48/9 54/6 63/1 66/15 82/21 142/1
 153/8
occasionally [1] 165/19
occupant [1] 118/12
occurring [1] 165/13
October [1] 33/15
October 2014 [1] 33/15
odd [1] 174/3
off [16] 5/7 7/20 17/1 45/3 67/2 67/9
 67/10 74/20 74/22 86/18 96/2 99/25
 100/23 132/9 133/25 184/6
offer [3] 45/18 47/18 181/5
offered [5] 29/6 33/20 36/4 56/21 145/5
offering [4] 33/23 180/25 181/11
 181/24
offerings [1] 164/5
offers [1] 33/21
officers [1] 23/17
often [2] 39/23 166/9
oh [9] 50/13 56/23 95/13 103/6 112/25
 113/7 122/19 162/21 174/7
okay [83] 4/3 5/2 5/11 5/21 6/8 6/18 7/7
 8/13 9/14 9/20 9/24 10/8 11/1 11/5
 11/14 11/15 13/2 18/6 18/25 21/14
 21/14 22/6 25/15 26/14 30/7 33/18
 36/18 37/25 40/14 42/1 42/16 42/16
 42/17 42/23 45/9 48/11 52/4 54/2 64/6
 65/18 77/15 79/13 80/24 82/16 83/10
 84/1 90/14 97/21 99/14 100/13 100/25
 101/13 107/7 109/13 111/24 112/2
 112/10 114/6 115/12 115/20 118/5
 125/7 127/17 129/5 130/23 130/25
 137/13 139/16 148/15 148/25 150/10
 159/12 159/17 160/23 160/24 161/7
 161/24 166/22 172/9 174/9 180/1
 184/7 184/24
old [1] 113/23
olds [1] 140/4
omit [1] 63/8
once [2] 21/18 119/17
one [90] 6/1 6/9 7/5 7/11 7/15 8/3 8/7
 8/7 11/23 13/23 24/4 32/22 36/21
 36/22 38/5 39/22 39/24 45/14 47/22
 49/4 50/1 50/8 50/16 60/10 62/19 65/4
 66/13 69/11 71/11 72/9 72/14 72/20
 75/14 76/5 76/14 84/12 92/5 92/8 95/1
 96/21 99/7 104/11 104/15 104/15
 104/17 105/24 107/1 107/13 112/23
 113/5 123/21 124/12 124/21 125/18
 126/3 127/5 127/21 127/21 131/10
 132/17 132/24 133/5 134/10 139/24
 142/7 142/19 142/22 142/25 143/2
 143/3 143/5 143/5 143/18 143/19

one-way [1] 127/5
ones [3] 15/14 76/9 82/8
only [34] 13/10 16/23 20/8 23/11 28/18
 29/1 31/2 32/5 33/14 35/15 36/10
 50/14 63/24 64/16 64/17 92/5 92/8
 92/9 101/2 105/16 117/1 120/21
 125/15 125/19 138/25 142/10 150/15
 157/16 163/9 164/10 165/12 171/2
 172/5 179/22
oops [1] 103/7
open [4] 46/15 50/3 72/11 137/19
operation [1] 86/6
operations [3] 84/14 85/1 85/11
operative [3] 19/14 106/3 110/20
opinion [1] 178/19
opinions [2] 151/6 165/12
OPPENHEIM [57] 2/3 2/4 4/12 4/13
 5/14 5/15 8/14 12/13 12/14 12/18 13/4
 13/19 14/16 14/20 14/23 15/2 15/2
 17/12 17/14 17/25 18/3 18/7 18/20
 19/2 19/5 20/3 21/1 21/8 22/12 24/24
 25/9 25/13 26/11 35/10 35/17 38/6
 39/9 40/15 45/6 47/14 64/14 84/3
 86/19 90/18 95/12 95/16 97/13 102/5
 103/14 112/24 114/1 114/3 114/17
 121/20 126/1 130/5 145/5
opportunity [3] 85/4 141/16 144/2
oppose [1] 56/8
opposed [4] 56/10 65/21 87/24 179/24
opposing [2] 122/18 124/13
opposition [1] 72/24
order [45] 13/23 16/14 16/17 20/5 22/8
 22/16 29/22 38/10 43/25 44/4 54/11
 56/1 56/11 57/14 71/15 76/1 77/25
 98/10 111/6 119/2 128/4 129/18
 129/24 134/14 139/6 148/17 148/18
 148/19 148/24 152/21 153/19 154/17
 156/9 156/17 156/18 159/23 160/3
 162/19 173/4 173/19 175/14 180/7
 180/19 182/6 182/10
ordered [23] 14/4 15/8 18/18 18/18
 19/2 25/8 25/25 48/16 48/20 48/22
 53/4 53/16 75/1 105/16 134/7 135/19
 146/20 147/11 157/7 175/11 175/16
 178/24 178/25
ordering [1] 13/15
orders [5] 23/5 23/14 23/20 151/6
 174/10
org [7] 114/25 115/5 115/13 116/25
 117/1 117/2 120/5
organization [2] 113/19 121/25
organizational [8] 113/9 113/10 114/11
 114/13 117/14 121/11 125/20 128/5
organizationally [1] 123/22
original [1] 105/22
originally [2] 33/13 98/25
other [59] 8/12 13/12 30/19 33/16
 34/19 35/5 35/6 36/5 36/5 36/11 36/15
 48/7 48/9 49/9 49/13 50/20 52/15
 66/13 72/18 73/8 73/21 74/15 74/21
 74/25 75/23 76/8 76/20 77/6 80/19
 92/24 98/2 102/8 105/23 113/9 114/22
 115/14 116/24 117/2 122/4 122/10
 128/23 130/18 131/23 133/4 135/7
 142/12 142/22 143/15 144/13 146/13
 163/13 163/24 168/8 169/10 169/11

144/14 146/13 149/4 153/15 154/5
 155/16 162/18 163/2 163/12 167/16
 168/4 168/10 170/19 173/14 181/19
 184/5
ones [3] ...
one-way...
others [1] 62/17
otherwise [6] 34/13 87/25 89/22 114/25
 121/12 186/10
ought [1] 72/5
our [77] 5/7 6/10 8/23 11/9 13/8 19/13
 19/15 21/10 26/13 29/15 33/5 34/11
 34/14 36/11 48/18 49/14 49/23 53/2
 53/19 54/17 57/22 58/6 63/18 67/3
 70/7 72/6 72/24 82/13 82/13 82/25
 85/16 89/20 89/25 90/12 92/6 94/22
 98/25 103/19 107/2 108/8 108/25
 122/5 133/22 134/18 135/2 137/12
 138/16 139/3 141/10 142/9 142/12
 143/8 143/13 147/20 148/2 148/9
 154/8 154/12 156/17 157/11 157/17
 158/7 159/14 162/13 165/2 167/15
 167/16 168/20 169/10 171/23 172/25
 173/4 173/25 175/1 176/23 176/25
 184/22
ourselves [2] 41/9 136/18
out [41] 7/18 8/3 10/2 10/4 11/2 11/12
 13/9 20/4 20/9 34/19 35/20 40/9 47/5
 47/7 56/4 60/7 65/15 76/2 82/21 82/25
 97/1 102/21 117/9 121/6 124/14 135/7
 138/10 142/23 143/2 143/9 143/24
 147/6 148/23 154/19 155/9 162/19
 166/3 174/21 176/23 177/17 181/11
outcome [1] 186/11
outside [4] 115/4 147/11 171/19 182/1
over [25] 5/6 5/20 6/10 6/11 10/18
 21/11 82/23 92/25 95/10 95/21 96/8
 97/16 101/4 103/4 103/5 103/22
 103/22 130/17 138/11 143/22 143/22
 149/21 154/25 161/3 162/22
over-inclusive [1] 82/23
overall [5] 57/2 137/12 148/7 148/8
 158/8
overbreadthness [1] 167/17
overbroad [10] 66/1 73/9 167/4 169/14
 171/18 175/18 177/13 177/19 178/14
 178/23
overlap [1] 43/24
overlay [3] 131/17 136/21 146/13
overly [1] 73/9
overruled [2] 147/1 147/8
overruling [1] 131/22
overstuffed [1] 47/21
overview [5] 132/14 173/2 173/6 173/6
 173/11
overwhelming [3] 165/3 165/22 168/14
overwhelmingly [3] 165/6 166/5 166/12
own [20] 7/14 15/13 28/12 29/25 60/15
 69/4 71/4 71/9 75/14 77/18 77/20
 79/20 129/20 154/14 154/14 157/11
 159/14 165/18 167/12 168/19

**P**

P.C [4] 3/17 39/22 62/20 62/21
p.m [6] 1/15 81/10 81/11 162/10
 162/11 185/6
P2P [2] 7/13 7/19
Pacific [1] 131/2
packages [1] 181/5
page [9] 18/9 31/10 72/7 85/22 86/2
 86/3 101/18 116/18 184/15
page 2 [1] 31/10
page 21 [1] 101/18
page 27 [1] 18/9
page 6 [1] 85/22

**P**

page 7 [2]  86/3 156/18
pages [2]  116/12 174/11
pair [1]  177/18
paper [1]  138/16
papers [2]  49/23 178/20
parameters [2]  57/22 168/17
pardon [1]  108/4
Park [1]  3/4
part [13]  20/9 26/12 31/2 40/21 50/3
72/10 75/8 93/6 100/19 101/6 144/11
149/11 166/18
participate [1]  77/6
particular [22]  31/9 51/9 52/16 61/12
65/15 65/16 71/1 75/6 78/22 93/21
93/25 96/20 96/24 115/23 120/25
125/18 137/14 142/2 144/20 145/20
173/11 183/11
particularly [9]  88/8 94/1 94/6 118/19
121/14 151/10 152/15 160/25 166/14
parties [16]  5/20 9/7 28/20 36/2 39/4
71/20 71/23 126/5 126/14 130/1 130/5
180/13 182/16 182/18 183/18 186/10
parties' [2]  82/6 151/10
partisan [1]  167/19
partner [1]  14/18
partners [1]  4/21
party [10]  28/19 28/25 29/10 29/20
29/23 30/4 32/16 32/21 60/21 71/6
party's [1]  119/24
past [5]  84/19 93/16 117/10 120/14
131/3
patiently [1]  131/13
patterns [1]  66/7
pause [1]  133/9
pay [3]  140/18 153/1 181/6
paying [1]  149/22
peer [18]  163/7 163/7 163/13 163/13
165/4 165/4 165/4 165/4 167/4 167/4
168/11 168/11 168/15 168/15 169/6
169/6 169/13 169/13
penny [1]  140/10
people [21]  7/1 23/6 33/24 34/2 83/8
86/14 93/14 93/19 109/4 109/5 110/22
116/15 120/24 121/15 121/18 122/24
124/2 124/14 130/12 150/3 152/17
per [9]  151/14 151/15 152/20 154/13
154/19 154/20 157/9 158/22 166/17
percent [5]  29/20 35/1 142/12 143/13
165/6
percentages [1]  167/14
performed [1]  128/11
perhaps [5]  104/22 114/11 122/2
135/14 170/5
period [70]  12/1 16/23 19/14 21/2 26/5
26/9 28/9 31/19 33/11 33/14 33/14
41/23 43/6 43/19 69/21 83/3 83/16
83/19 83/20 83/24 84/25 85/25 87/11
87/11 91/13 91/14 111/1 111/5 114/12
116/14 116/16 116/16 120/14 134/1
134/11 134/12 138/5 138/5 138/8
138/15 138/24 139/1 139/2 139/4
139/15 140/14 140/17 141/23 142/2
146/23 146/23 147/7 147/21 148/11
149/22 152/1 152/4 152/21 153/14
153/22 153/24 155/10 158/24 159/25
160/13 175/23 177/24 178/13 181/21
181/21
permissible [1]  171/19
person [2]  91/6 92/10

personally [1]  143
persons [4]  85/22 119/3 120/6 128/6
perspective [3]  126/25 127/1 161/2
pertain [2]  131/20 176/12
phone [9]  2/6 2/11 2/16 3/5 3/5 3/11
3/15 3/19 86/12
phrasing [1]  128/14
picking [1]  150/18
picture [1]  143/20
piece [5]  135/6 135/6 145/21 158/10
177/24
pieces [1]  104/13
PII [10]  60/11 61/13 63/16 63/21 64/1
64/5 64/8 64/22 65/4 65/10
place [7]  20/16 118/22 126/22 145/9
148/6 173/20 186/6
places [2]  124/12 126/3
plainly [1]  108/25
plaintiff [6]  2/2 46/10 66/3 91/14 144/9
162/14
plaintiff's [1]  35/13
plaintiffs [110]  1/5 4/10 6/13 7/4 7/13
7/18 8/4 8/6 8/7 8/10 8/12 8/17 13/10
14/23 15/16 15/16 21/23 25/24 27/4
27/6 27/11 27/15 27/25 28/7 28/23
29/7 30/1 30/23 34/17 34/18 37/17
38/12 41/13 43/4 44/4 46/1 46/15 48/2
48/15 49/1 49/4 53/9 53/21 54/5 55/14
57/7 59/25 60/14 61/2 61/23 61/24
62/9 66/5 67/19 70/22 71/15 71/19
72/2 74/5 81/23 82/7 83/4 83/14 86/11
92/3 94/22 97/7 99/20 107/22 108/1
110/10 116/18 116/23 127/6 129/9
131/9 131/12 131/24 133/17 134/25
135/20 135/21 136/3 137/25 138/7
138/22 140/9 144/9 145/3 145/4
145/10 146/8 147/17 150/6 150/8
151/22 152/6 152/12 153/10 155/18
164/17 169/6 169/24 170/20 172/19
174/12 175/3 177/20 179/6 182/23
plaintiffs' [66]  4/8 5/19 8/6 11/12 12/4
12/6 12/7 12/17 14/24 15/3 16/18 17/4
18/19 20/6 25/23 27/23 28/18 28/24
29/11 29/24 30/8 30/15 30/21 31/2
31/7 32/18 36/13 36/16 37/4 37/5
37/13 43/3 43/10 43/14 60/4 60/6 61/4
61/7 61/23 62/6 65/1 66/22 71/18 74/4
83/9 90/15 104/15 126/24 127/1
130/19 131/20 132/1 135/14 135/15
136/19 139/17 144/7 156/15 161/5
170/13 173/21 175/4 178/7 182/14
183/12 183/24
plan [2]  74/10 178/1
planning [1]  58/7
plans [7]  163/20 166/10 166/13 169/1
177/2 180/21 181/23
play [1]  35/16
playbook [18]  73/1 75/25 76/4 76/16
76/16 77/9 77/16 77/18 78/6 78/25
79/4 114/18 115/4 115/16 115/25
116/7 117/14 118/22
played [1]  77/17
plead [1]  37/1
please [13]  4/10 24/11 45/21 52/18
59/17 90/17 95/7 98/23 137/16 144/3
156/23 161/8 177/12
pocketbook [3]  73/25 74/4 76/10
point [43]  11/23 15/20 21/17 21/21 22/3
24/4 24/25 25/4 30/17 31/9 36/8 36/9
38/6 45/1 47/14 47/16 66/2 73/16

82/21 90/2 95/19 96/11 96/25 100/8
104/25 108/16 109/24 113/4 120/7
126/13 139/24 139/25 141/1 141/15
142/3 142/8 145/19 147/25 151/6
156/8 157/15 175/20 184/5
pointed [5]  13/9 14/6 36/5 106/12
167/17
Pointing [1]  117/13
points [5]  36/21 61/10 153/8 155/16
168/4
policies [41]  28/12 43/15 47/1 48/21
48/21 48/23 49/2 52/16 52/24 53/3
54/12 54/23 55/2 56/2 58/18 59/2 59/5
77/21 79/5 79/20 84/10 87/21 89/3
89/5 89/11 89/12 89/24 91/7 92/23
92/24 94/8 94/8 113/13 113/13 118/11
118/11 119/6 119/6 128/8 128/8 145/9
policy [57]  27/3 29/5 30/16 30/20 32/25
34/5 34/11 34/12 35/19 35/23 43/15
49/10 49/16 49/24 49/24 50/8 50/10
50/22 51/5 51/21 53/12 53/13 58/3
67/25 68/5 68/10 68/13 69/4 69/8
69/14 69/15 72/7 72/19 73/22 73/25
74/2 74/3 74/8 74/15 75/7 75/19 77/10
77/18 79/22 89/4 91/11 108/8 132/11
132/20 132/24 133/1 145/25 157/21
157/24 171/24 172/12 172/15
pool [4]  82/3 142/17 143/6 144/15
population [1]  169/25
portion [4]  20/5 156/17 183/19 184/22
posed [2]  42/3 183/9
posited [1]  98/18
position [15]  21/9 44/1 49/4 49/18 50/7
50/20 51/1 87/19 111/1 111/4 111/17
140/10 141/21 165/2 175/8
positions [3]  82/14 116/15 118/2
possible [2]  63/24 147/6
possibly [1]  125/14
postcard [1]  39/25
postcards [1]  53/2
postdated [1]  147/7
potential [4]  66/9 91/15 176/17 179/17
potentially [6]  16/22 75/20 84/21 93/19
173/9 173/10
practice [2]  49/11 77/11
practices [11]  47/19 48/5 48/17 48/19
49/8 49/13 51/7 51/20 52/24 58/18
59/2
precluded [1]  141/15
precondition [1]  68/13
predates [2]  91/25 92/18
prefer [1]  37/9
preference [1]  160/21
preferences [1]  164/1
premature [1]  9/1
prepared [3]  8/14 29/22 74/20
prescriber [3]  151/14 151/15 152/20
present [13]  70/12 85/24 110/25 111/4
111/17 127/10 133/19 135/15 135/20
139/8 141/11 165/2 165/18
presented [3]  147/10 148/12 151/12
preservation [1]  14/1
preserved [4]  111/22 111/23 112/1
112/5
presumably [3]  34/3 93/16 118/1
presumes [1]  38/17
pretty [4]  97/25 114/8 176/6 181/13
prevalent [1]  178/12
previously [1]  137/1
primary [2]  36/15 147/24

**P**

prior [10]  7/17 8/21 28/3 37/2 134/8
134/14 139/5 165/10 176/3 176/4
privacy [5]  90/20 113/13 118/11 119/6
128/8
privilege [6]  12/9 12/19 22/8 90/6 90/7
92/20
privileged [14]  14/21 16/22 54/19 90/1
90/9 90/24 91/24 92/2 92/18 94/1
96/13 96/21 96/24 97/8
privy [1]  23/16
probably [7]  71/9 80/4 85/12 121/3
127/19 160/11 183/15
probative [7]  29/12 36/7 68/18 96/9
142/5 167/18 172/3
probe [3]  43/15 49/1 152/14
problem [4]  24/8 134/20 134/22 174/9
procedures [4]  53/3 77/21 94/8 94/9
proceed [1]  175/11
proceedings [2]  185/5 186/8
process [12]  65/17 73/1 75/3 76/4 89/5
115/16 115/25 116/9 118/22 122/20
127/15 183/11
processes [2]  87/21 89/12
processing [3]  60/9 89/6 89/12
produce [32]  20/6 38/13 48/16 52/3
53/21 54/18 55/17 55/24 55/25 56/4
56/11 58/23 65/24 77/23 78/1 87/3
96/3 105/16 119/2 128/19 134/7
135/20 147/20 148/10 153/19 153/20
157/7 157/8 159/24 163/8 164/14
171/6
produced [60]  15/1 15/4 19/8 19/8 19/9
21/23 22/14 22/16 24/6 24/14 34/14
41/4 41/20 41/20 41/21 42/19 42/19
42/21 42/25 46/13 52/23 52/25 52/25
53/5 53/17 53/24 56/18 59/5 60/5 61/1
61/7 61/8 72/25 75/1 76/17 77/8
107/22 108/4 108/10 114/19 114/25
115/23 122/21 125/15 128/5 128/25
134/15 134/17 137/5 139/7 139/17
143/25 144/6 146/20 147/1 147/11
151/8 151/25 164/13 165/10
producing [2]  12/18 24/17
product [3]  12/9 22/9 88/21
production [21]  12/4 12/5 15/25 16/18
17/3 22/19 44/17 49/3 71/4 73/6 77/16
119/1 119/23 121/9 125/24 127/8
130/3 139/13 147/19 160/15 184/12
productions [1]  23/4
productive [1]  125/19
Professional [3]  1/16 186/3 186/16
professionals [1]  128/1
profit [5]  151/14 151/15 152/3 152/20
158/22
profited [1]  133/4
profits [2]  132/3 163/8
progress [2]  5/6 130/7
projections [1]  158/4
promised [1]  4/7
promote [1]  166/2
promoting [2]  182/3 182/7
prong [5]  156/12 156/13 156/20 158/14
173/15
pronounce [1]  87/14
proper [7]  19/16 19/16 23/12 23/18
23/18 156/20 164/24
properly [3]  23/12 23/23 25/1
proportion [1]  170/4
proportional [7]  60/23 73/10 76/25

88/24 151/7 158/17 167/20
proposal [1]  183/12
propose [5]  46/2 66/13 71/10 180/10
182/13
proposed [4]  48/23 59/5 75/3 80/20
proposing [1]  70/6
proposition [1]  80/18
protective [2]  22/16 23/4
protocol [2]  91/12 169/12
protocols [3]  84/11 91/7 163/14
prove [1]  141/4
proven [1]  144/11
provide [28]  23/2 23/11 23/17 25/10
33/1 33/3 39/6 44/2 44/5 57/14 63/8
63/18 66/5 68/18 70/19 70/20 71/16
71/25 75/5 75/10 82/10 121/10 133/23
136/14 148/18 153/14 180/8 183/11
provided [28]  18/13 21/6 23/12 24/21
25/1 28/23 32/16 32/21 33/3 38/6
38/12 38/18 39/19 40/4 40/5 40/12
42/5 59/13 59/14 64/18 104/23 115/15
129/21 136/9 136/22 139/10 150/15
152/22
provides [1]  35/23 76/6 116/17
providing [8]  27/9 29/16 76/18 91/9
94/4 127/5 127/6 158/21
provision [1]  35/15 35/18 35/18
public [4]  1/17 38/24 179/13 186/4
pull [3]  63/11 63/13 127/10
pulled [4]  48/1 63/9 137/5 137/7
purchases [1]  154/20
pure [1]  167/9
purely [2]  69/19 87/24
purportedly [1]  106/14
purpose [3]  35/5 35/7 181/1
purposes [6]  30/19 32/7 32/23 35/6
36/25 37/3
pursuant [3]  48/18 59/5 139/7
push [3]  143/23 144/5 144/21
pushed [2]  6/11 91/20
pushing [2]  37/16 161/1
put [15]  7/18 11/8 34/6 34/25 37/4
42/10 45/3 93/14 102/22 121/21 145/4
145/11 150/19 151/2 160/17
puts [1]  37/9
putting [2]  90/25 91/15

**Q**

quandary [1]  144/8
quantum [1]  19/11
queried [1]  63/6 116/23
queries [1]  117/6
query [3]  78/24 116/24 117/10
question [33]  10/12 17/2 25/1 28/10
41/17 42/2 42/9 42/10 44/15 55/2 69/4
72/4 72/5 72/5 72/13 80/25 87/2 87/22
88/1 96/13 96/19 107/20 124/5 126/2
144/7 145/24 146/8 153/3 159/5
164/19 175/18 183/9 183/18
questions [8]  33/5 40/10 47/7 48/25
126/6 127/16 133/9 173/1
quick [4]  36/21 36/21 38/6 80/7
quickly [6]  34/16 80/8 80/9 108/22
167/23 181/13
quiet [1]  140/6
quietly [1]  131/13
quite [4]  13/19 77/23 112/21 162/3
quote [7]  50/3 50/4 71/3 71/12 72/11
72/12 90/22
quote/unquote [2]  71/3 71/12

quoting [1]  174/18

**R**

raise [3]  6/15 11/3 58/6
raised [11]  8/18 24/14 24/20 26/24
44/15 63/17 81/23 90/13 144/20
171/21 183/1
raises [3]  24/25 48/25 87/22
RANAHAN [15]  3/13 4/21 6/6 6/23
10/12 11/6 24/4 52/21 54/13 55/15
56/15 56/24 57/11 100/1 101/1
ratchet [1]  47/5
rate [1]  158/18
rather [4]  27/21 28/1 63/9 75/4
raw [2]  38/13 65/13
RBJ [1]  1/3
reach [4]  9/9 47/7 180/14 182/18
reached [1]  182/25
read [5]  17/19 17/24 18/16 20/3 20/4
readily [1]  155/1
reading [1]  72/7
realize [2]  131/1 160/25
really [35]  21/12 31/10 42/13 67/2 67/2
67/3 67/9 67/18 76/24 77/3 80/25 82/9
82/22 88/1 103/15 104/25 115/17
124/13 126/6 126/22 127/14 127/14
133/20 152/5 156/19 158/17 173/6
174/1 175/16 176/24 177/7 179/12
181/8 183/18 183/21
reap [1]  132/3
reason [11]  19/4 38/14 63/17 65/7
74/25 83/16 88/6 93/6 120/18 143/21
159/11
reasonable [6]  27/14 35/19 43/17
118/13 145/9 146/1
reasonably [3]  34/4 34/11 170/2
reasons [3]  22/18 22/20 138/16
rebut [1]  74/11
recall [7]  16/6 16/11 16/16 20/13 135/3
135/14 136/4
recalling [1]  69/13
receive [4]  50/10 131/24 152/3 158/22
received [23]  8/23 9/18 26/1 27/7 28/22
30/24 31/21 34/24 37/11 41/22 43/5
43/18 51/4 66/17 67/19 69/9 71/5
113/17 140/16 142/9 142/24 148/9
175/3
receives [3]  50/1 72/9 154/10
receiving [6]  69/19 93/3 119/12 122/12
143/7 143/22
recent [2]  106/6 173/19
Recess [2]  81/10 162/10
reciprocity [1]  127/12
recognize [1]  77/22
recognized [1]  168/14
recognizes [1]  132/18
recognizing [1]  129/25
recollection [2]  69/11 69/13
recommendation [1]  121/5
reconsider [1]  44/10
reconvene [2]  81/5 81/6
record [6]  27/8 33/22 78/12 105/10
110/18 168/18
records [9]  1/4 2/2 4/5 20/19 59/8
65/14 71/6 134/16 135/5
red [1]  34/16
redact [1]  65/15
redacted [2]  60/13 65/6
redacting [1]  64/11
reduce [1]  51/14

**R**

reduced [1]  186/7
refer [2]  105/6 150/3
reference [3]  88/22 151/8 169/15
referenced [2]  104/16 173/14
referred [3]  39/24 42/22 128/22
referring [9]  23/1 57/20 68/12 85/15
 89/18 103/20 116/2 157/1 167/11
refined [1]  182/17
reflect [2]  51/3 120/13
reflecting [1]  50/18
reflection [1]  25/7
refrain [1]  137/18
refresh [1]  69/12
refused [2]  55/25 57/4
refute [2]  31/13 74/11
regard [45]  7/8 8/15 16/19 16/21 16/24
 23/20 43/20 49/3 52/10 52/14 54/10
 54/11 58/11 61/1 61/3 66/3 66/7 70/22
 70/23 71/17 71/21 72/16 75/6 81/14
 81/17 82/17 87/13 100/16 100/17
 117/24 119/1 119/9 128/3 129/6 136/2
 141/22 151/13 152/24 160/4 169/19
 170/14 179/3 180/19 183/10 183/12
regarding [7]  15/11 28/4 47/15 150/15
 152/19 179/17 180/20
Regina [1]  1/14
Registered [3]  1/16 186/3 186/16
rehash [1]  46/23
reiterated [1]  156/9
rejected [6]  30/2 46/16 48/23 58/19
 59/3 178/21
relate [6]  7/4 9/16 42/1 44/13 47/17
 78/9
related [21]  6/16 16/1 16/23 17/3 21/5
 27/22 28/12 42/25 47/25 59/1 75/5 79/6
 89/11 107/2 109/5 109/12 112/16
 150/18 152/25 163/5 180/4 186/9
relates [7]  7/10 7/11 10/1 11/18 129/12
 177/2 180/3
relating [4]  11/25 59/4 89/3 89/5
relative [1]  148/7
relatively [1]  113/6
relevance [12]  29/1 29/12 35/13 36/5
 60/23 137/11 138/16 158/18 169/5
 169/21 172/6 172/8
relevant [86]  12/1 18/3 19/7 22/1 26/23
 27/15 28/11 29/3 30/4 30/13 30/19
 32/12 35/14 37/3 37/14 43/5 43/9
 43/19 46/25 48/21 48/22 48/23 52/2
 52/12 52/17 57/15 59/1 60/2 60/22
 69/24 73/15 74/24 75/1 76/21 79/20
 81/22 82/10 82/15 85/12 87/10 89/7
 90/23 93/20 96/10 96/12 99/23 102/24
 106/24 108/9 110/9 111/1 111/5
 118/15 119/24 120/2 129/20 130/9
 130/14 133/3 134/7 135/16 135/22
 136/20 136/22 138/19 140/1 140/12
 140/22 141/24 150/17 151/1 152/5
 152/20 153/9 155/20 156/11 157/7
 157/16 158/13 171/13 171/20 172/10
 173/3 177/14 178/6 182/2
reliable [1]  36/17
relied [4]  148/4 173/24 174/13 176/21
relief [2]  70/11 80/5
relitigate [1]  150/24
rely [6]  23/9 23/11 23/21 41/25 97/7
 165/12
relying [4]  90/9 90/12 94/16 107/18
remaining [5]  8/10 25/18 59/1 137/7

145/24
remains [3]  7/8 95/22 144/11
remember [1]  39/16
remind [2]  136/18 136/18
reminding [1]  145/18
remotely [2]  1/18 4/2
remove [1]  110/12
rendered [1]  50/15
repeat [31]  11/9 24/11 29/4 30/16
 30/20 34/5 35/19 48/25 49/21 50/3
 50/6 50/9 50/12 50/14 50/19 50/24
 51/9 66/16 66/16 67/6 67/14 68/1
 68/13 69/17 70/23 71/23 72/11 73/19
 143/2 143/3 157/23
repeated [2]  68/3 103/22
repeatedly [3]  33/9 33/22 33/24
repeating [1]  138/17
report [3]  80/21 179/11 182/14
reported [3]  4/2 78/15 78/17
reporter [8]  1/16 1/18 80/5 113/3
 160/10 184/1 186/4 186/16
REPORTER'S [1]  185/8
reports [1]  177/2
repository [1]  176/2
represent [3]  13/10 13/11 64/4
representation [12]  56/9 86/24 87/8
 89/2 90/10 92/16 95/21 97/7 115/13
 152/24 154/13 179/10
representations [6]  7/4 23/19 23/22
 48/24 94/16 128/1
represented [6]  56/24 106/21 109/7
 110/21 139/6 139/17
representing [4]  32/20 55/4 55/7 56/15
represents [1]  66/4
request [116]  6/17 6/24 10/19 13/8
 14/7 14/8 15/19 15/23 15/25 16/20
 16/21 16/24 24/7 26/6 26/13 27/14
 27/18 27/21 29/7 29/15 34/17 37/7
 43/17 44/11 44/12 44/17 49/3 49/17
 56/7 57/19 59/15 59/25 65/25 66/20
 67/18 70/16 71/4 71/9 73/6 76/20
 85/14 106/17 107/2 108/2 109/3 114/9
 118/7 118/14 118/25 119/1 119/9
 119/23 121/8 121/19 123/25 124/4
 125/24 128/3 128/20 129/9 129/10
 129/11 129/12 132/7 133/16 133/16
 133/17 133/20 133/25 134/8 134/9
 135/10 135/21 136/21 137/12 138/7
 143/17 143/23 144/16 146/13 147/18
 149/7 149/9 151/19 152/2 157/5 157/6
 159/21 163/4 163/5 163/5 164/11
 167/3 167/17 169/14 169/19 169/24
 170/13 170/22 170/25 171/2 171/12
 173/7 173/11 178/23 179/6 180/2
 180/3 180/11 180/20 180/25 181/14
 182/8 184/5 184/9 184/12
requested [12]  6/21 6/24 48/15 82/7
 115/14 120/1 122/1 128/4 152/22
 153/7 155/18 169/20
requesting [3]  6/25 9/21 115/1
requests [28]  8/24 9/17 10/1 11/8
 11/11 13/25 16/17 28/4 52/6 56/1
 56/13 56/22 57/2 80/19 109/11 112/15
 115/9 125/12 126/23 127/7 131/19
 132/5 133/3 135/9 138/6 157/2 160/15
 177/18
require [6]  13/24 17/3 70/20 87/8
 136/15 142/6
required [7]  13/8 46/15 52/3 58/23
 82/22 136/3 157/22

requires [3]  131/23 163/12 178/6
requiring [1]  80/15
rereview [1]  44/17
research [3]  165/11 165/21 177/3
reserve [1]  129/25
reserved [2]  134/11 137/9
reserves [2]  50/4 69/16
resolution [2]  9/2 11/3
resolve [3]  33/23 147/19 182/20
resolved [1]  5/19
respect [43]  15/17 28/18 29/18 29/23
 30/15 32/25 37/7 49/7 59/25 60/15
 60/16 61/10 61/23 63/4 63/5 63/16
 64/18 64/22 66/18 66/22 66/23 70/8
 71/6 71/10 78/7 80/19 82/8 84/24
 86/13 120/5 121/19 137/10 138/12
 138/18 138/19 138/22 138/23 139/22
 152/7 155/21 156/20 182/11 182/11
respectful [1]  160/19
respectfully [4]  38/16 75/12 159/3
 164/12
respond [20]  8/15 10/15 10/18 30/9
 32/8 35/10 56/11 57/4 62/7 73/12
 73/18 73/21 80/12 90/16 108/14
 137/14 137/17 144/3 156/23 178/17
responded [9]  27/17 28/17 31/1 47/25
 53/6 57/8 57/8 73/8 125/21
responding [6]  48/17 56/16 84/16
 119/13 122/12 137/18
responds [2]  73/2 150/13
response [89]  9/19 9/22 13/13 21/10
 26/2 27/16 29/9 33/3 33/4 33/17 38/8
 38/20 39/15 41/7 43/3 51/22 52/7 56/1
 59/12 59/13 60/4 60/6 63/18 68/21
 79/15 84/15 85/14 85/21 86/1 86/2
 86/3 86/7 86/14 86/16 87/1 91/3 99/1
 99/4 99/24 100/8 100/12 100/19
 102/22 103/6 103/17 103/24 104/2
 104/18 104/20 105/13 105/14 105/17
 105/21 105/21 105/22 106/1 106/3
 106/6 106/7 106/8 106/9 106/9 106/14
 106/22 107/6 109/19 110/1 110/7
 110/8 110/20 110/24 111/16 113/18
 115/14 115/24 121/7 124/24 125/12
 125/23 128/12 134/14 139/10 144/2
 144/6 144/20 164/10 171/25 182/13
 183/9
response -- in [1]  99/24
responses [22]  16/17 16/18 27/20
 38/23 38/25 62/19 66/8 71/16 84/7
 84/7 84/9 85/2 86/18 98/3 99/1 100/23
 103/5 103/13 107/15 110/17 113/8
 117/12
responses by [1]  27/20
responsibilities [3]  89/9 89/16 117/8
responsibility [8]  84/9 85/23 91/6 91/9
 91/10 116/8 118/9 121/16
responsible [10]  113/15 119/4 120/6
 120/24 121/15 121/18 122/25 124/3
 125/8 128/6
responsive [20]  12/5 12/14 12/19 13/22
 14/5 19/24 20/7 53/22 56/4 56/12
 78/21 84/23 85/7 103/3 103/3 107/2
 109/8 109/9 117/14 120/12
rest [1]  148/19
result [1]  49/18
resulted [1]  132/11
retain [7]  21/10 21/11 41/2 149/17
 149/17 164/7 170/23
retained [2]  65/14 159/24

**R**

retaining [1]  172/2
retention [5]  145/9 145/25 171/4 171/8
  172/14
revenue [17]  133/18 133/21 134/16
  134/17 135/11 138/14 143/12 151/13
  151/14 151/25 152/2 152/20 154/13
  157/9 157/16 158/5 158/22
revenues [4]  136/16 151/23 154/9
  154/9
reverts [1]  105/22
review [7]  9/4 26/23 40/17 40/19 87/24
  87/25 172/1
reviewed [1]  65/6
reviewing [1]  171/14
revised [1]  102/19
revisit [2]  52/12 130/3
RF [1]  27/18
RFP [44]  27/21 54/10 57/13 58/15 59/5
  59/8 72/16 75/3 84/6 108/24 109/2
  113/8 115/14 117/9 122/2 124/24
  129/6 136/10 137/15 137/21 137/25
  138/8 138/13 139/7 139/10 149/4
  151/13 152/22 152/24 153/7 154/3
  158/19 160/4 162/17 164/8 169/19
  170/14 170/17 175/8 176/17 182/11
  182/11 182/13 184/10
RFP 19 [1]  138/13
RFP 41 [1]  176/17
RFP 56 [1]  59/8
RFP 57 [2]  162/17 170/17
RFP 7 [1]  117/9
RFPs [11]  27/21 57/3 108/16 113/18
  115/9 131/8 131/10 133/9 149/2
  172/23 172/25
RIAA [11]  28/22 29/19 39/4 60/22
  60/24 71/7 71/13 125/9 126/16 126/16
  155/25
right [113]  5/4 5/22 10/16 10/22 15/24
  17/6 18/22 19/8 21/15 22/10 24/2
  25/16 25/22 25/23 26/20 30/18 30/21
  30/22 31/18 33/1 33/2 33/12 35/15
  38/2 39/21 40/7 40/12 41/1 41/5 42/12
  43/1 44/8 44/23 46/17 48/13 50/5
  55/18 57/13 59/8 61/16 61/20 62/5
  65/9 66/11 69/6 69/16 69/23 70/1
  71/14 72/15 73/15 74/18 78/8 79/9
  80/1 80/23 81/4 81/12 83/18 85/6
  86/23 87/13 93/12 94/18 95/21 97/22
  101/15 101/23 108/15 109/17 111/9
  112/11 113/3 116/5 118/2 121/19
  123/3 125/1 125/4 125/6 130/17 131/7
  139/18 139/21 144/17 147/14 148/17
  153/12 157/13 157/17 157/18 158/19
  160/6 160/9 162/1 162/8 162/12
  162/14 167/3 167/21 168/1 169/18
  170/16 171/1 172/16 172/22 176/16
  177/11 177/17 179/3 181/16 182/24
  184/20
rightly [1]  55/15
Rightscorp [30]  29/15 29/17 29/21
  29/25 39/2 30/3 34/15 34/16 34/18
  34/19 34/23 35/1 36/14 37/7 37/11
  37/13 37/16 44/11 44/12 44/13 45/10
  45/13 46/1 46/9 47/15 47/17 47/20
  47/24 48/3 48/9
Rightscorp's [2]  30/2 36/16
rigid [2]  74/1 132/11
ripe [2]  8/20 11/4
road [2]  147/2 166/3

Rodriguez [13] 4/14 4/12 4/19 5/23
  8/16 10/17 11/22 12/24 13/3 14/11
  17/9 17/16 18/23 20/2 22/7 22/11 24/1
  24/3 25/5 26/10 26/15 28/15 30/11
  31/7 32/2 35/9 36/19 38/22 41/11
  41/12 42/11 42/15 44/9 44/22 46/19
  46/20 47/10 47/11 49/6 51/12 52/1
  55/10 55/11 55/20 56/3 58/9 60/15
  62/8 66/10 67/22 68/12 72/1 72/14
  72/22 73/14 75/9 77/4 79/25 80/10
  81/20 84/2 86/8 89/17 94/21 95/6
  95/14 97/12 98/12 99/17 100/10 101/8
  102/4 103/9 104/9 105/2 105/6 105/8
  107/8 108/13 111/10 114/15 116/21
  117/16 119/17 122/6 127/3 129/15
  131/11 131/18 135/19 136/23 137/10
  137/17 139/19 139/23 141/8 141/18
  144/1 144/25 146/12 147/17 148/12
  148/21 148/25 151/18 153/7 154/6
  154/12 155/15 156/22 157/20 158/11
  162/19 163/4 167/3 168/2 170/15
  170/18 171/2 172/24 175/19 177/9
  177/16 178/16 179/16 180/17 180/22
  181/18 182/21 182/22 184/3
rog [10]  33/3 85/2 85/20 85/21 105/23
  106/9 106/18 106/14 106/21 107/6
role [7]  88/19 88/25 96/22 113/14
  119/11 125/2 125/3
roles [1]  94/20
rough [1]  20/8
round [1]  1/9 150/9
rule [18]  82/18 84/5 85/2 88/9 90/20
  90/25 92/4 93/14 93/18 102/17 102/19
  102/22 103/5 106/19 110/6 136/10
  136/12 165/23
Rule 26 [11]  84/5 85/2 88/9 90/20
  90/25 92/4 102/17 102/19 102/22
  103/5 110/6
ruled [2]  52/11 58/25
rules [1]  90/22
ruling [9]  14/15 44/11 58/24 109/18
  109/24 138/11 139/6 147/13 148/16
run [11]  80/20 94/18 108/2 108/11
  115/3 117/6 123/3 137/23 138/11
  180/11 182/14
running [1]  13/21

**S**

safe [11]  26/24 30/13 30/14 32/5 34/2
  35/14 35/15 36/24 37/1 37/1 37/6
SAHNI [19]  2/14 4/14 8/17 10/14 16/7
  104/5 105/9 107/13 131/7 131/15
  157/3 162/23 170/19 170/25 174/2
  176/8 178/24 179/9 180/23
said [32]  18/17 18/23 18/25 28/3 32/11
  33/22 33/23 34/1 34/25 39/22 39/25
  49/8 52/1 56/3 64/8 66/25 73/20 91/18
  91/19 91/20 102/11 105/20 107/13
  108/23 110/15 135/16 147/23 150/8
  157/22 159/11 175/10 186/5
same [32]  11/8 18/21 31/17 38/10
  38/19 39/2 40/3 40/4 54/2 61/24
  73/16 74/25 80/18 95/3 99/7 101/4
  127/12 128/24 134/8 134/24 137/11
  138/1 138/9 146/16 148/24 149/21
  150/4 180/19 181/14 181/19 182/10
  184/4
samples [1]  169/8
San [1]  3/10
sat [1]  145/10

satisfy [1]  168/19
satisfying [1]  121/23
saved [5]  149/7 149/10 149/25 150/2
  150/6
saving [1]  150/9
saw [4]  49/23 81/22 82/25 88/18
say [48]  5/16 6/12 14/13 15/13 32/9
  33/19 33/21 36/1 36/10 36/16 40/17
  45/15 45/19 50/13 50/19 52/10 62/20
  64/2 67/7 67/11 69/16 70/5 76/7 85/9
  93/13 96/1 97/19 98/17 100/7 103/6
  114/23 116/22 117/1 117/2 119/22
  122/19 125/7 125/13 126/14 134/1
  150/14 153/9 162/3 177/20 179/22
  179/24 181/3 182/12
saying [34]  6/20 13/19 17/24 18/2 21/1
  32/11 45/11 49/12 49/15 50/15 51/20
  54/13 55/15 57/17 61/18 63/3 64/15
  67/13 73/17 77/11 90/21 91/18 95/20
  102/13 115/20 126/1 146/5 156/3
  159/8 172/11 175/10 175/12 176/9
  181/4
says [17]  24/7 32/14 32/16 33/17 35/21
  38/6 50/1 50/10 51/23 56/2 62/13
  62/18 68/5 101/18 114/17 120/5
  176/17
Schoenemann [13]  97/23 98/20 98/23
  99/13 100/22 104/19 106/13 106/18
  110/5 111/2 111/7 112/7 112/7
scope [6]  142/23 158/16 165/13 168/17
  171/19 182/1
screaming [1]  140/4
scripting [1]  53/1
scripts [2]  59/14 59/16
seam [1]  148/24
SEAN [2]  3/2 4/22
search [39]  12/14 12/14 14/4 15/6
  15/13 20/6 53/18 55/14 55/16 56/20
  56/25 57/2 57/5 57/18 57/22 57/25
  58/6 71/24 76/23 80/15 80/21 93/7
  95/24 96/3 96/15 96/17 102/9 103/7
  109/3 109/5 109/10 120/11 124/18
  125/12 125/13 175/21 180/10 180/11
  182/12
searched [13]  20/19 53/7 53/15 54/14
  55/3 55/5 85/5 88/8 90/8 92/11 110/13
  111/8 112/6
searches [17]  13/9 13/21 14/5 18/20
  19/23 20/17 53/19 54/18 55/8 63/14
  85/8 103/2 107/25 108/3 108/11 115/3
  123/3
searching [14]  12/18 13/16 13/24 18/22
  19/3 82/4 88/21 90/2 92/7 93/9 108/7
  168/18 175/24 181/8
second [5]  7/5 10/12 27/20 131/15
  140/3
secondary [1]  168/10
Secondly [2]  33/1 168/9
seconds [2]  174/20 179/22
secret [1]  163/20
Section [2]  35/16 38/13
Section 33 [1]  38/13
securities [3]  84/13 85/1 86/5
security [1]  114/21
see [35]  20/9 21/5 21/22 27/8 32/2
  40/22 40/22 43/24 49/9 49/12 49/20
  63/3 73/17 74/20 80/21 84/21 86/4
  92/19 94/15 97/4 99/13 101/17 106/11
  114/9 121/6 121/21 124/24 130/23
  138/18 146/7 166/18 166/20 182/14

**S**

see... [2] 182/16 184/11
seeing [2] 36/22 96/18
seek [6] 11/22 132/8 132/9 133/17
 174/15 178/12
seeking [15] 7/5 7/9 15/5 15/6 15/7
 52/1 60/1 60/14 72/16 75/4 115/6
 115/8 115/9 137/25 138/8
seeks [8] 26/5 59/8 73/7 119/24 134/10
 149/5 169/14 171/2
seem [9] 48/18 52/17 54/5 114/8
 114/21 121/9 126/13 172/19 176/1
seems [28] 9/12 19/21 43/17 52/8
 59/15 77/18 80/17 98/1 98/3 112/3
 118/7 118/13 121/24 124/11 124/22
 130/11 144/6 152/12 153/1 153/17
 170/21 171/12 172/17 173/9 180/2
 182/5 182/15 182/25
seen [6] 22/3 92/24 118/17 122/10
 165/21 166/6
seminal [1] 43/9
send [7] 31/25 47/20 48/7 79/15 105/10
 105/20 107/5
senders [1] 48/7
sending [1] 48/6
sense [8] 6/15 55/1 80/4 118/18 151/1
 172/3 173/8 183/22
sent [20] 6/13 17/4 19/7 21/3 28/20
 29/2 29/20 46/14 60/21 62/17 83/4
 83/6 83/14 84/22 101/24 135/3 145/6
 145/12 152/17 175/2
separate [3] 52/25 58/8 157/2
separately [1] 61/11
September [2] 83/2 83/24
September 2016 [1] 83/24
series [1] 131/9
serious [1] 76/13
seriously [1] 76/15
serve [5] 56/7 115/7 116/19 120/9
 169/14
served [11] 44/12 76/19 82/21 100/22
 102/15 103/12 103/20 104/2 105/12
 110/8 110/17 137/25 138/8
serves [1] 173/23
service [23] 36/17 48/9 50/5 58/21
 62/25 101/19 113/12 118/10 119/5
 121/17 128/7 133/23 153/17 153/24
 156/14 163/17 164/6 166/11 173/17
 176/24 179/18 181/7 182/3
services [8] 30/2 114/20 154/21 176/12
 176/18 177/4 179/4 180/4
serving [1] 86/17
set [15] 7/5 27/20 48/1 49/2 56/5 57/20
 68/15 71/12 75/25 80/20 81/16 105/13
 133/17 136/14 169/22
sets [1] 82/13
setting [1] 133/6
settle [1] 45/23
settlement [4] 37/22 45/18 47/18 48/4
settling [1] 46/3
seven [2] 154/21 154/22
several [4] 86/14 146/22 146/23 184/14
shall [1] 119/6
she [8] 23/2 32/14 32/16 62/13 91/18
 91/19 91/20 184/6
She's [1] 32/20
sheer [1] 29/10
shell [1] 162/22
shirt [1] 137/6
short [4] 18/16 51/12 74/24 113/16

shortened [1] 39/11
shorthand [1] 186/6
should [51] 12/5 12/9 13/18 16/8 28/8
 37/17 46/9 46/10 46/11 46/17 59/5
 66/5 70/12 71/11 78/1 83/21 83/25
 85/12 87/11 93/15 93/17 99/23 103/2
 106/18 108/6 110/13 110/16 111/7
 112/3 113/5 114/13 115/7 118/6
 119/15 121/6 125/20 126/14 130/9
 133/1 136/22 141/8 141/9 141/10
 151/16 161/3 172/19 182/12 182/16
 182/19 183/10 183/17
shouldn't [5] 36/12 85/10 102/14
 141/14 183/14
show [29] 37/23 46/17 60/3 61/24
 62/23 73/23 74/13 80/22 92/21 113/10
 115/1 117/3 117/6 118/8 120/6 128/5
 149/5 153/10 155/18 157/8 159/25
 160/1 160/1 166/1 167/14 171/3
 173/15 173/16 173/22
showing [6] 60/5 61/8 78/1 134/17
 142/10 148/13
shows [8] 31/10 31/16 37/9 39/3 65/4
 80/21 149/25 165/21
side [6] 46/6 82/23 157/6 161/5 166/23
 183/25
sides [1] 127/24
sideshow [1] 37/21
signature [2] 101/18 186/12
signed [1] 15/1
significance [1] 96/6
significant [5] 44/2 92/20 93/23 94/13
 96/21
signs [1] 184/6
silence [2] 5/11 5/17
similar [6] 44/17 75/2 134/10 135/23
 136/14 176/21
similarly [4] 27/11 83/5 111/2 178/1
simple [8] 40/25 41/9 72/5 72/5 95/19
 155/7 155/7 155/8
simply [18] 27/25 47/18 59/15 85/9
 97/1 97/7 98/4 98/10 115/11 128/13
 159/5 164/15 169/24 175/20 178/2
 178/13 179/11 184/13
Simultaneous [3] 57/10 70/2 183/4
since [7] 24/8 42/5 44/12 83/22 90/1
 120/8 184/13
single [3] 46/14 67/17 77/23
sit [5] 124/13 124/25 125/3 126/6
 126/14
sitting [3] 65/2 65/3 131/12
situation [2] 56/7 179/21
six [2] 102/12 131/10
size [1] 121/14
skills [1] 155/8
skip [2] 130/17 162/25
skipped [2] 112/23 129/17
sleeves [1] 137/6
slew [1] 165/10
small [2] 38/5 148/7
snapshot [1] 143/14
so [341]
so-called [3] 21/4 60/17 60/18
soak [1] 163/16
soft [1] 39/24
some [58] 6/14 7/19 7/25 9/16 10/1
 11/8 11/10 15/6 36/20 39/15 45/2 45/3
 46/1 54/21 63/25 70/11 70/12 70/21
 70/23 76/6 76/22 77/9 78/11 80/5
 80/22 81/3 83/16 92/19 97/4 97/17

98/2 109/22 114/19 121/10 126/7
 126/10 126/12 126/13 128/23 129/8
 129/21 130/2 130/24 137/20 139/12
 141/1 141/2 148/1 149/19 151/7 157/5
 157/22 168/18 170/10 172/13 174/3
 176/2 183/10
somebody [6] 34/8 50/23 66/25 84/13
 98/14 131/8
somebody's [1] 50/14
somehow [4] 29/3 34/4 166/1 172/1
someone [9] 8/14 49/21 50/18 53/11
 90/10 96/22 155/8 165/19 183/7
someplace [1] 78/20
something [33] 7/16 10/3 11/18 22/3
 24/5 24/14 32/13 33/22 39/22 40/18
 53/25 58/3 67/11 69/20 71/10 79/8
 79/11 102/15 109/24 114/12 120/1
 122/3 124/21 126/5 128/22 130/24
 132/12 146/1 152/13 153/18 157/13
 172/3 178/11
something's [1] 117/3
sometimes [1] 164/1
somewhere [1] 78/16
songs [2] 174/20 174/23
Sony [2] 8/8 8/9
sorry [50] 11/6 14/10 16/15 17/17
 17/21 24/10 24/10 36/20 44/24 48/21
 56/23 57/7 57/11 58/9 58/14 67/23
 68/6 69/1 69/2 70/17 71/16 81/5 98/5
 99/6 99/7 99/19 100/4 100/15 110/3
 110/10 112/14 116/21 119/19 119/20
 122/2 123/12 126/25 138/23 143/1
 149/8 151/14 154/3 161/11 169/23
 171/15 174/1 174/2 174/8 181/17
 183/5
sort [10] 63/25 64/2 66/14 77/9 78/11
 80/11 163/15 172/13 175/17 176/2
sorted [1] 11/2
sorting [1] 136/15
sorts [4] 53/2 53/5 175/9 175/20
sought [2] 26/6 51/21 60/16 120/10
 132/5
sound [1] 9/10
sounds [2] 153/13 160/11
South [1] 3/14
spam [2] 73/4 76/9
speak [5] 95/5 98/22 100/10 101/7
 175/16
speaking [4] 98/14 98/18 161/12 183/6
speaks [2] 31/11 175/14
special [6] 1/14 65/15 127/19 135/13
 182/19 183/8
specific [27] 6/24 9/17 10/3 11/10
 15/23 25/14 39/14 47/7 60/8 64/22
 71/3 76/19 78/6 79/1 86/14 97/17 98/1
 124/17 128/14 131/10 133/9 146/8
 151/6 173/1 176/11 179/7 180/3
specifically [20] 12/13 13/7 14/23 15/7
 21/2 27/14 38/13 40/18 85/14 101/3
 115/8 123/1 129/12 134/11 154/5
 170/6 174/13 179/20 180/20 181/10
specifics [1] 98/8
specifies [1] 79/4
speech [1] 137/19
speed [5] 163/17 176/13 176/25 179/19
 179/22
speeds [7] 163/19 174/16 174/21 177/5
 179/8 179/14 180/5
spelled [1] 10/2
spell [2] 138/17

**S**

spent [1]  143/8
SPERLING [26]  2/9 4/14 14/19 41/13
  49/6 55/22 56/20 57/23 58/13 62/9
  64/8 64/14 66/12 68/4 68/7 68/11 70/6
  72/2 73/12 80/2 80/7 95/15 97/16
  161/5 161/12 183/25
Sperling's [1]  76/7
sponsoring [1]  147/5
spoofing [1]  7/16
spot [1]  160/17
spread [1]  78/9
spreadsheet [3]  33/3 33/6 33/8
spreadsheets [5]  33/2 33/10 34/21
  43/24 78/9
springs [1]  5/5
squarely [2]  29/25 31/2
sranderson [1]  3/6
SSFP [1]  116/1
stack [1]  172/6
stage [2]  9/11 66/1
stamina [1]  184/2
standard [2]  1/15 121/13
Starkweather [7]  87/18 90/20 92/15
  93/11 94/19 95/2 95/4
Stars [1]  2/15
start [13]  13/8 13/16 13/19 13/20 18/19
  18/22 19/3 19/22 81/18 83/1 83/23
  155/6 170/20
started [5]  4/4 32/11 83/5 139/2 177/17
starting [2]  4/10 30/17
starts [2]  27/21 32/13
state [6]  1/17 25/25 59/6 60/10 138/16
  186/4
stated [2]  12/12 27/17
STATES [1]  1/1
statutory [1]  133/7
stayed [1]  140/18
stealing [1]  74/5
step [4]  13/19 80/25 104/5 121/25
steps [1]  7/21
steps of [1]  7/21
sticking [1]  147/25
still [9]  6/14 9/12 34/2 94/3 102/23
  112/8 112/9 134/15 180/25
stipulate [2]  34/10 36/4
stipulation [5]  29/7 33/20 33/21 34/8
  43/13
stood [2]  16/18 132/10
stop [2]  64/2 136/2
stored [1]  79/7
story [8]  51/19 67/4 73/23 74/9 74/11
  74/12 75/9 132/6
straightforward [6]  114/8 114/14 126/5
  151/16 153/17 154/22
strategic [3]  178/1 180/21 181/23
strategies [2]  164/3 181/23
strategy [1]  181/9
Strawn [9]  3/3 3/9 3/13 4/20 4/22 13/20
  18/21 22/17 34/3
streaming [1]  167/8
streamline [1]  126/11
Street [3]  3/9 3/18
stretch [2]  125/6 169/3
strict [1]  74/1
strictly [2]  121/22 152/10
strike [1]  110/3
strong [1]  138/4
strongly [1]  66/20
structure [6]  113/10 125/20 128/6

171/5 171/8 171/18
struggle [2]  121/20 146/7
struggled [1]  120/19
STUART [2]  3/2 129/23
stuck [1]  155/23
studies [7]  165/11 165/14 165/15
  165/17 167/11 167/12 177/2
stuff [2]  132/15 177/21
subject [11]  22/16 32/18 38/22 40/16
  66/24 67/20 90/7 118/15 133/22
  140/21 180/8
submission [2]  8/21 27/23
submit [5]  19/19 22/4 38/21 38/21
  168/19
submitted [1]  88/18
subpoena [1]  21/10
subscribe [1]  163/19
subscribed [1]  156/15
subscriber [44]  29/3 39/19 45/20 45/22
  51/10 51/15 60/12 62/1 62/3 66/16
  66/23 67/5 69/8 114/20 136/16 140/16
  140/18 149/15 149/23 152/3 153/5
  153/15 153/22 154/10 154/14 154/18
  154/20 154/20 155/23 157/9 157/25
  157/25 158/1 158/2 158/4 158/6 158/6
  158/9 158/23 159/9 159/15 171/15
  171/16 181/24
subscriber's [2]  153/16 153/24
subscribers [80]  28/21 28/21 28/25
  29/19 30/25 32/17 32/17 32/18 42/1
  48/19 49/25 49/25 58/21 59/12 60/19
  60/21 61/11 66/17 67/13 67/20 68/15
  69/19 71/3 71/5 71/11 71/18 73/19
  74/5 74/21 74/22 75/24 76/14 84/22
  109/15 132/4 132/9 132/12 133/18
  133/22 134/3 134/18 135/1 137/1
  138/15 138/23 140/10 142/3 142/9
  142/11 142/18 143/6 143/9 143/12
  143/21 146/21 148/2 148/4 148/8
  148/8 149/6 149/20 149/21 151/24
  152/1 152/8 152/11 153/1 155/4
  156/14 156/16 157/17 163/18 166/17
  170/24 173/17 174/22 181/1 181/4
  181/11 181/12
subscribers' [3]  74/17 74/19 163/6
subscription [3]  155/5 155/21 170/10
subset [3]  39/11 70/21 176/11
substantive [1]  130/13
substituted [1]  107/10
such [16]  13/23 50/25 56/17 58/23 94/7
  106/1 121/16 121/22 128/22 129/22
  152/18 171/5 171/7 172/18 174/16
  174/25
suddenly [2]  22/23 117/4
suffice [1]  75/3
sufficient [18]  66/6 88/6 113/10 113/14
  114/25 115/10 117/12 117/15 119/3
  119/10 120/6 128/5 149/5 153/10
  155/17 171/3 173/22 175/6
sufficiently [1]  142/5
suggest [2]  47/14 80/11
suggested [1]  25/13
Suite [3]  2/15 3/10 3/18
sum [1]  62/18
summary [1]  40/22
supervising [1]  89/9
supplement [8]  101/14 103/20 104/17
  104/23 105/4 105/6 105/24 110/19
supplemental [22]  27/20 85/21 86/1
  86/3 86/6 86/17 99/12 100/19 103/12

104/2 104/18 105/12 105/14 105/17
  105/21 106/1 106/3 106/7 106/9
  106/14 109/19 110/7
supplemented [2]  99/25 106/5
supplementing [1]  86/13
support [3]  14/7 110/20 19/22
supports [1]  165/22
suppose [3]  11/12 118/6 141/2
supposedly [1]  106/23
Supreme [2]  168/9 168/13
sure [29]  10/13 18/19 24/12 24/12
  24/25 49/23 52/20 56/6 58/2 59/23
  64/12 64/12 72/3 74/10 79/12 88/5
  104/7 104/7 104/11 108/21 120/10
  133/15 144/19 146/3 149/1 173/13
  177/15 180/22 183/7
surprised [4]  52/22 137/3 137/4 137/6
suspend [1]  51/12
suspending [2]  58/20 132/11
suspense [1]  58/1
suspensions [2]  32/1 133/1
sustained [1]  56/10
swing [1]  112/4
switching [1]  70/10
sworn [1]  103/5
system [7]  38/19 48/9 84/15 84/15 93/4
  116/23 117/11

**T**

tailor [2]  164/4 180/14
tailored [7]  82/10 177/4 177/22 178/14
  180/2 180/24 182/8
take [27]  4/7 5/7 22/5 41/24 42/1 50/20
  51/23 74/7 80/5 81/4 81/13 96/2 96/25
  99/25 102/21 116/20 117/9 118/19
  148/17 149/4 160/12 160/12 160/16
  162/2 170/7 176/5 183/14
taken [17]  1/13 39/16 43/20 44/7 50/7
  75/6 75/19 75/21 75/23 76/15 78/5
  79/5 79/7 81/10 140/9 162/10 186/5
takes [2]  87/18 127/23
taking [4]  21/9 58/20 59/3 175/5
talk [1]  168/25
talked [3]  29/15 43/22 80/14
talking [15]  7/11 16/8 21/23 75/20
  88/19 94/2 97/5 99/3 99/7 131/9
  132/15 146/14 158/19 161/19 168/1
talks [2]  53/18 174/19
tallies [1]  155/7
tally [7]  38/7 38/9 38/14 38/15 39/5
  39/6 42/7
Tammy [1]  129/22
TANNER [3]  3/17 4/23 5/3
target [7]  19/21 98/3 157/2 170/6
  180/21 181/4 181/9
targeted [1]  27/14
targets [2]  164/8 181/22
task [1]  90/4
Taylor [5]  82/17 83/5 83/11 83/21
  87/10
team [11]  8/14 84/14 85/1 86/19
  114/21 123/23 123/24 124/6 124/7
  162/14 162/14
teams [2]  122/11 122/14
technical [1]  65/12
technology [3]  167/6 169/7 169/13
teed [1]  109/21
telephone [1]  1/19
telephonic [2]  1/10 1/13
telephonically [7]  2/7 2/12 2/17 3/7 3/12

telephonically... [2]  3/16 3/20

tell [26]  33/6 33/7 33/9 34/20 39/12
41/3 41/5 52/18 64/3 64/7 65/3 67/4
68/9 73/22 74/9 74/10 74/12 77/10
77/11 77/17 116/14 122/17 127/22
130/25 132/6 134/21

telling [4]  31/6 77/9 104/4 126/21

tells [1]  132/20

tend [1]  163/19

tends [1]  166/8

tenure [2]  155/9 158/9

term [3]  39/17 41/4 58/6

terminate [21]  29/8 33/19 33/24 34/8
36/3 36/12 43/13 49/17 50/5 51/4
53/11 53/12 58/1 68/15 68/19 69/17
69/19 149/23 156/5 171/24 172/13

terminated [5]  34/1 50/8 69/9 75/24
149/21

terminating [13]  58/21 68/13 109/15
132/12 132/21 132/25 149/6 149/19
150/1 153/5 153/16 153/23 171/16

termination [9]  29/5 34/6 35/20 35/23
51/7 51/12 69/21 152/25 157/22

terminations [4]  32/1 48/25 53/10 133/2

terms [43]  21/12 23/4 25/8 31/3 47/1
48/2 51/5 53/18 55/14 55/16 56/20
56/25 57/2 57/5 57/18 57/20 57/25
61/9 71/23 75/24 80/13 80/20 93/7
94/13 97/5 98/2 109/3 109/25 113/12
114/12 118/10 119/5 121/17 126/23
127/12 128/7 136/20 138/4 146/20
150/2 161/1 180/10 182/12

test [4]  15/11 97/4 154/8 154/13

tested [2]  80/18 94/12

testimony [2]  40/19 150/16

testing [2]  80/14 80/18

text [1]  65/13

texture [2]  63/2 75/10

than [37]  5/16 8/19 9/5 14/16 25/3
27/21 29/19 33/19 36/6 41/22 42/6
45/15 46/8 50/1 50/16 59/15 61/19
63/9 64/25 71/11 72/9 72/14 74/14
75/4 75/15 75/23 80/22 88/2 115/15
118/24 123/25 130/18 132/15 145/11
147/22 182/4 183/14

Thank [45]  4/16 5/11 13/2 18/1 18/8
20/25 21/20 25/17 25/21 28/15 30/10
35/8 44/9 44/19 44/21 47/9 52/20
59/22 72/22 81/7 81/8 81/9 81/20
130/4 133/12 145/15 148/19 148/20
148/21 160/8 161/13 162/7 162/9
163/2 166/25 170/15 174/7 177/15
180/17 182/21 182/22 184/17 184/24
185/2 185/3

thanks [8]  5/3 72/1 162/6 162/25
172/24 184/1 184/22 185/4

that [1142]

that's [107]  7/24 13/17 14/2 15/10
15/24 16/25 18/24 19/15 19/16 22/2
24/8 24/19 29/18 32/22 33/20 34/20
35/18 36/4 41/8 41/10 42/9 43/7 51/1
51/21 51/25 54/8 61/19 62/11 62/21
62/1 63/1 63/22 64/1 65/21 67/15
71/9 73/12 75/8 76/3 76/10 79/7 85/7
88/1 88/6 88/10 96/11 99/24 100/1
100/7 100/11 100/20 102/10 102/15
102/25 108/24 108/25 110/18 113/6
116/4 120/1 122/15 123/25 125/5
127/5 127/19 133/5 133/10 134/2

134/21 135/5 135/8 136/7 137/3 139/2
140/22 142/19 143/13 143/19 144/16
144/16 145/2 146/7 149/11 149/15
149/17 153/1 154/7 156/7 157/9
157/17 157/18 158/1 161/23 164/13
166/11 167/9 171/1 171/5 171/9 172/5
174/18 175/24 176/16 177/9 177/10
178/11 181/8

their [126]  7/13 8/19 8/21 8/22 9/8
10/19 10/20 13/8 13/21 14/4 14/8
15/13 18/22 20/19 22/19 25/10 25/11
26/17 29/1 29/1 30/3 34/8 34/17 38/23
40/21 45/17 45/23 46/15 48/2 49/13
49/18 49/20 49/21 49/24 49/24 49/25
49/25 50/8 50/18 51/3 51/15 51/16
51/20 51/22 52/8 56/10 60/15 60/17
63/18 63/19 68/5 70/6 71/2 71/4 71/9
72/7 73/19 73/21 73/25 74/4 74/6
75/14 80/21 83/4 83/6 83/14 83/15
83/16 83/17 84/6 86/1 88/7 92/7 92/11
93/3 94/20 96/23 97/7 102/17 102/18
102/21 103/7 103/16 105/22 106/1
106/2 106/7 106/8 106/9 106/15
106/15 106/19 115/24 117/7 117/10
125/2 125/3 125/10 125/23 135/20
137/6 137/6 140/23 145/6 146/24
146/25 148/5 149/22 151/24 152/8
152/11 163/25 164/5 164/5 164/5
164/6 169/6 169/9 169/9 169/24 172/5
176/3 176/4 176/14 178/20 181/9

them [93]  7/3 7/11 8/7 9/11 12/19 12/19
16/8 21/4 23/16 26/2 28/23 29/20 33/9
34/18 35/2 36/12 38/9 38/14 40/13
42/20 45/21 45/24 54/8 54/17 54/17
54/18 54/19 54/21 55/5 55/6 55/9
55/17 55/24 56/9 56/20 60/14 60/16
60/18 65/5 67/1 67/7 67/11 76/6 76/11
76/18 80/20 81/16 82/3 86/17 90/25
91/4 91/15 97/1 99/22 100/23 101/3
101/10 101/11 102/10 102/21 102/22
102/23 103/17 105/16 107/18 107/22
108/12 109/12 110/9 110/12 113/22
114/24 117/9 121/5 122/15 125/18
127/10 127/13 131/16 133/2 134/7
140/13 147/6 149/4 156/3 166/12
169/1 172/2 175/22 176/5 178/12
181/5 181/6

theme [1]  150/7

themselves [2]  67/13 169/6

then [35]  9/8 11/3 11/3 11/5 17/2
17/24 19/23 21/16 34/8 36/12 37/12
59/6 78/17 86/1 86/6 91/20 93/2 96/2
101/24 103/6 113/13 122/2 124/16
125/22 138/8 143/15 154/21 158/25
162/20 170/7 171/5 172/18 180/12
182/19 183/20

theory [6]  35/13 132/1 141/1 141/5
165/25 172/6

there [94]  5/6 6/14 6/20 7/18 10/4 12/8
12/12 16/8 19/1 22/13 36/23 36/24
40/12 47/18 48/24 51/6 51/11 53/10
53/12 53/14 54/23 56/10 63/14 63/22
63/23 63/24 64/1 64/5 64/9 64/22
64/24 64/25 64/25 65/20 66/6 69/20
74/6 75/18 77/8 78/9 78/11 78/15
82/14 85/7 86/12 94/3 96/6 105/3
105/14 105/20 105/21 107/9 107/17
109/11 112/13 114/24 115/1 115/5
116/6 116/22 120/1 120/11 122/11
125/24 128/19 136/2 141/1 141/2 141/3

141/3 145/1 149/13 150/16 155/16
155/17 158/17 159/25 165/6 170/5
170/23 171/4 171/6 171/7 172/12
172/13 172/25 173/16 174/11 174/21
176/23 183/2 183/2 183/10 184/23

there's [38]  8/1 9/12 11/2 11/15 24/5
24/16 36/19 37/17 37/23 38/14 39/4
42/21 45/2 45/3 46/2 46/2 47/23 57/21
64/5 64/20 68/13 91/23 91/23 104/12
108/24 109/23 115/25 130/2 131/17
135/12 149/19 153/7 166/2 168/7
169/5 172/5 174/3 184/14

thereafter [1]  186/7

therefore [6]  42/7 87/11 93/18 110/9
110/20 118/24

these [103]  7/25 13/10 16/12 16/17
23/3 28/2 28/17 32/8 35/1 36/6 36/9
38/8 44/16 55/3 56/1 56/12 56/21 57/3
57/20 60/8 65/14 65/22 74/22 75/19
76/5 76/20 77/7 79/21 81/3 82/2 82/17
82/24 90/22 92/24 94/15 98/11 98/24
101/5 102/18 103/23 106/16 106/20
107/1 107/10 110/2 110/2 110/3
110/16 110/22 113/18 113/18 114/9
115/9 115/10 115/13 116/12 116/14
116/15 120/8 120/19 121/16 123/4
124/3 125/13 126/8 127/7 127/20
128/2 128/11 130/7 130/7 130/12
131/6 131/14 131/17 131/19 132/5
133/3 133/24 134/3 135/10 138/6
143/21 146/16 149/6 162/5 165/21
165/25 167/11 171/10 171/14 171/25
172/25 175/5 175/9 175/20 175/22
176/2 177/18 177/18 178/19 181/6
181/12

they [340]

they are [1]  68/2

they're [51]  15/12 15/14 19/12 19/14
19/20 22/9 30/5 34/2 34/6 34/25 36/7
38/9 38/24 54/18 57/20 63/21 64/17
70/10 75/13 75/14 76/20 85/6 90/9
91/5 92/9 93/2 93/3 93/8 101/3 102/13
106/19 106/23 107/17 109/4 109/4
115/6 116/10 118/8 125/22 126/1
147/21 152/14 156/3 157/13 163/15
166/15 166/16 175/17 175/22 175/25
179/21

they've [27]  19/10 27/11 32/20 33/11
33/14 33/22 33/23 34/1 36/5 50/7 53/9
57/19 60/16 67/1 73/5 85/3 88/8 88/23
102/11 102/14 118/11 125/15 135/4
135/5 140/6 142/19 143/25

thing [5]  26/4 81/13 112/19 121/13
123/21

things [26]  5/7 23/21 41/10 44/16 47/22
51/11 53/2 57/24 74/10 77/6 84/12
85/11 91/18 112/22 113/21 121/2
122/14 123/10 123/21 126/20 131/23
133/4 150/19 156/25 162/25 177/7

think [114]  5/18 9/2 10/18 10/20 11/16
13/18 14/2 21/21 21/25 24/23 24/24
25/7 26/25 27/24 29/24 31/6 32/10
38/24 41/15 41/16 44/14 45/11 47/4
47/12 51/22 52/1 53/8 54/20 55/2
55/11 55/14 57/21 58/5 61/21 61/22
64/25 65/25 70/3 70/12 70/20 75/12
77/13 81/13 81/15 81/21 82/2 82/9
82/13 82/15 83/5 85/8 93/10 94/3
95/18 95/18 96/5 96/7 96/9 96/16
96/19 97/6 97/17 98/7 98/13 98/15

**T**

think... [49]  100/1 113/5 116/10 116/17
120/7 121/2 122/19 124/4 125/6
125/16 125/16 125/18 127/18 132/13
132/17 136/4 136/20 137/11 137/22
141/3 145/23 148/12 154/11 155/16
155/17 155/19 157/6 157/19 161/4
163/15 165/1 166/2 171/23 175/25
176/6 177/17 178/18 179/16 179/19
179/23 180/24 181/13 181/18 182/1
183/15 183/17 183/22 183/22 184/4
thinking [1]  80/12
thinks [1]  157/13
third [11]  28/19 28/25 29/10 29/20
29/23 32/16 32/21 36/2 39/4 60/21
71/6
third-party [9]  28/19 28/25 29/10 29/20
29/23 32/16 32/21 60/21 71/6
this [439]
those [81]  6/15 6/20 8/11 20/20 22/18
23/14 23/20 23/22 23/22 24/17 24/17
28/21 28/25 31/21 31/23 40/10 43/20
46/16 47/5 47/8 51/18 52/3 53/12
54/13 54/22 56/17 57/8 59/16 65/1
65/4 65/5 70/21 76/13 82/21 84/8
85/10 87/19 93/5 94/8 94/11 99/15
99/16 106/10 106/20 107/15 109/11
117/8 119/3 121/2 121/15 121/18
121/18 122/14 124/12 126/3 126/19
127/15 128/17 128/19 128/24 129/21
132/25 135/4 142/3 142/22 143/16
147/8 150/10 152/1 152/17 155/6
157/4 164/9 165/17 165/18 167/7
173/1 174/15 176/12 177/10 178/17
though [11]  22/23 24/23 55/2 74/6
76/19 83/15 84/24 85/3 85/10 113/20
173/1
thought [8]  5/24 19/25 32/11 39/23
56/24 83/8 116/22 138/4
thoughts [1]  71/1
thousands [1]  140/19
three [10]  8/24 52/6 66/24 67/20 71/22
125/4 140/6 160/14 162/5 174/20
throttling [1]  51/14
through [33]  7/21 12/7 15/25 16/24
16/25 21/8 26/19 28/9 38/10 43/6 65/2
76/5 82/2 82/12 83/20 83/20 98/9
102/9 111/3 111/17 132/5 133/17
136/15 138/23 139/10 139/13 139/14
139/18 144/8 145/2 151/25 162/5
180/15
throughout [1]  150/7
thus [4]  15/5 54/17 110/25 118/18
ticket [31]  38/10 38/11 39/3 40/12
41/20 42/19 42/21 42/22 53/1 60/5
61/8 61/15 61/19 61/25 62/14 62/15
62/16 62/18 63/7 64/16 64/18 64/19
64/21 64/25 65/21 68/17 69/24 78/23
145/2 146/9 152/16
tickets [3]  41/21 132/16 135/1
tied [5]  134/23 135/24 171/8 172/14
178/3
tier [1]  166/9
tiered [1]  169/1
tiers [2]  181/6 181/11
time [71]  1/15 8/19 8/23 11/9 12/1 19/1
24/5 26/5 26/9 28/8 31/19 33/13 37/8
37/12 43/6 43/19 46/18 50/16 63/17
76/5 76/23 85/25 87/11 89/7 91/13
91/14 92/25 95/17 99/2 103/8 109/22

**T**

109/24 111/5 112/4 112/4 114/19
116/14 118/19 122/14 122/14 127/23
129/25 130/2 131/1 131/2 131/2 131/5
134/11 134/11 138/1 138/17 139/12
141/21 142/4 144/5 148/1 148/3 149/5
149/22 151/3 152/4 155/21 159/8
159/24 160/19 160/20 161/1 161/2
183/23 184/10 186/6
times [4]  2/10 24/13 86/12 102/11
tired [1]  150/4
tires [1]  157/12
title [10]  92/11 113/14 118/12 118/23
119/7 119/10 125/2 125/3 128/9
128/23
titles [4]  115/10 117/7 118/2 125/10
today [12]  4/4 5/1 5/3 5/7 6/11 6/17
65/3 65/3 93/10 106/17 145/5 183/3
today's [1]  135/8
Todd [1]  129/23
together [3]  121/21 127/10 175/5
told [10]  33/10 86/16 99/22 102/7 102/8
102/16 106/11 106/15 107/18 114/24
tolerated [1]  133/5
tolerating [3]  149/10 150/1 150/7
ton [1]  163/16
tonight [1]  183/23
too [7]  14/2 49/16 80/10 80/16 98/10
131/2 161/23
took [11]  4/6 26/2 27/13 31/3 60/6 76/1
78/18 79/21 97/16 100/23 162/19
topic [4]  112/12 112/24 120/25 130/19
torrent [23]  7/6 7/19 7/22 163/7 163/9
163/13 164/11 165/4 165/13 165/20
165/25 166/1 166/5 166/8 166/16
167/4 167/5 167/18 168/25 169/8
169/16 170/7 170/8
total [6]  27/9 29/2 30/5 31/20 35/4
62/18
totally [1]  66/18
touch [3]  74/7 131/18 142/25
tough [1]  93/15
towards [1]  54/7
track [4]  24/15 24/15 63/13 163/1
transcribed [1]  184/22
transcript [14]  12/20 13/14 17/20 18/9
18/13 20/4 20/8 20/12 20/22 21/19
25/7 184/11 184/16 186/8
treat [4]  74/13
treated [4]  37/11 37/17 74/15 155/25
treating [1]  75/14
treatment [2]  72/17 72/18
trees [1]  113/23
tremendous [1]  163/23
trial [5]  22/15 34/22 54/9 87/4 150/14
tried [4]  32/3 53/25 142/19 143/7
trouble [1]  174/3
true [3]  62/4 102/7 186/8
truly [1]  37/24
trust [1]  23/16
try [9]  9/23 35/2 95/17 126/11 132/14
162/4 165/16 174/22 181/6
trying [16]  10/3 19/14 31/12 32/15 46/5
48/8 57/7 69/17 90/4 141/13 143/8
144/13 146/8 158/25 162/24 176/1
turn [5]  21/11 25/23 133/8 147/8
162/20
turned [1]  132/2
turns [3]  8/3 56/4 82/25
two [24]  6/13 6/14 6/20 7/2 36/21 85/11
91/18 98/24 99/15 103/23 107/10

110/2 110/2 110/3 110/22 116/12
123/9 123/20 125/4 127/4 131/10
153/16 172/25 177/18
two-way [1]  127/4
type [5]  27/12 75/7 167/8 174/13
178/25
types [14]  7/1 45/14 45/14 54/21 75/19
79/22 107/23 117/11 121/2 126/19
127/15 138/6 150/19 167/8
typewritten [1]  186/7
typically [3]  84/12 84/18 154/15

**U**

uh [7]  6/2 85/18 95/13 117/19 142/14
151/20 151/21
uh-huh [6]  6/2 85/18 117/19 142/14
151/20 151/21
Uh-oh [1]  95/13
ultimately [3]  127/24 145/24 169/20
unable [3]  134/25 135/1 182/18
unaware [1]  104/3
unclear [1]  12/20
under [9]  27/1 29/5 67/25 69/7 79/5
83/21 90/21 140/25 165/14
undercounted [1]  42/8
underlying [4]  8/1 28/24 38/7 45/18
undermine [1]  141/13
understand [55]  9/11 18/17 19/1 21/24
24/23 25/4 32/7 38/17 40/18 43/18
44/10 56/15 57/7 59/13 61/17 66/6
66/13 66/18 67/25 68/23 69/5 79/4
81/15 87/18 89/8 91/17 91/24 95/2
97/20 102/20 110/10 115/17 125/15
126/8 127/25 128/1 128/16 128/18
128/23 129/4 130/15 136/4 141/21
142/23 144/7 144/18 144/19 152/10
156/7 170/22 170/25 171/18 172/11
173/8 179/9
understanding [20]  10/20 13/1 13/5
13/6 15/19 16/23 18/24 20/18 26/8
27/5 32/23 43/2 46/24 67/16 89/21
116/11 119/19 119/22 144/5 174/3
understandings [1]  14/15
understands [1]  86/20
understood [14]  10/5 10/9 21/15 23/8
23/25 48/12 55/19 96/5 97/11 111/11
129/14 172/21 180/16 180/16
unduly [4]  27/9 171/19 173/10 177/13
uneven [1]  127/11
unfortunately [3]  122/21 127/4 163/11
Unintelligible [2]  81/25 97/10
unintentionally [1]  86/16
UNITED [1]  1/1
universe [1]  7/19
unknown [1]  70/9
unlawfully [1]  165/20
unless [4]  38/3 54/18 157/22 159/19
Unlike [1]  74/2
unlikely [2]  88/19 91/19
unquestionably [1]  93/10
unquote [2]  71/3 71/12
unreasonable [1]  34/12
unrelated [1]  29/11
unsavory [1]  47/19
unsurprisingly [1]  164/7
until [8]  6/11 81/10 83/2 83/24 123/3
125/14 130/2 162/10
unto [1]  48/9
untrue [1]  108/25
unworkable [1]  98/3

**U**

up [33]  4/6 4/8 7/22 30/11 38/7 38/9 39/5 39/6 42/2 42/7 42/20 52/23 57/19 65/4 80/20 81/13 83/7 97/17 97/18 104/11 109/22 115/4 122/2 124/16 131/1 137/6 139/10 150/18 161/1 163/16 172/7 174/20 184/9
upholding [1]  173/20
upon [7]  23/9 25/6 54/17 97/7 110/18 150/25 176/21
upstanding [1]  146/16
us [63]  5/3 6/13 13/17 21/7 25/8 25/12 33/6 33/7 33/9 33/10 33/11 33/14 33/17 34/20 38/8 38/13 38/15 39/6 39/13 40/9 41/3 41/5 41/6 41/18 41/25 42/5 42/8 49/16 57/4 63/8 63/20 64/7 64/16 74/12 76/14 77/9 77/10 77/11 77/17 79/14 80/22 102/7 102/8 102/16 106/11 106/15 109/8 117/13 122/8 127/5 127/9 127/11 132/20 134/15 134/17 135/5 136/15 142/5 144/17 149/25 160/16 183/23 184/23
usage [1]  166/17
use [39]  24/7 30/3 35/25 40/21 49/24 51/16 72/19 73/22 73/25 74/3 74/8 74/15 87/4 113/12 118/10 119/5 128/8 128/22 158/24 163/6 163/9 164/23 165/20 167/18 168/14 169/6 170/7 170/8 176/17 176/18 176/23 178/2 178/10 179/4 179/17 179/17 180/10 180/25 182/13
used [8]  7/13 22/24 31/8 36/23 36/23 128/14 138/21 151/9
useful [2]  32/4 32/10
user [7]  7/20 113/12 118/10 119/5 121/17 128/7 167/7
users [5]  58/21 163/18 167/9 170/7 170/9
users' [2]  131/25 163/24
uses [4]  164/12 164/24 165/19 166/5
using [14]  38/19 83/19 83/20 155/1 166/1 166/11 166/18 167/5 168/25 169/11 176/14 178/13 179/14 180/6

**V**

vague [1]  171/18
value [5]  141/13 154/17 157/24 158/9 159/15
variations [1]  77/8
variety [2]  36/2 45/13
various [5]  40/1 73/2 115/10 121/16 153/8
vast [1]  36/15
veracity [1]  7/25
version [4]  100/11 103/16 103/21 107/18
versus [2]  4/5 135/18
very [50]  22/13 31/6 31/16 32/4 39/10 39/14 40/25 41/9 45/15 47/6 47/9 47/12 48/23 54/23 62/15 62/15 69/18 74/1 74/1 76/13 76/16 76/18 81/7 88/19 99/12 107/14 108/21 127/11 127/25 129/17 135/24 138/4 145/9 148/7 155/7 159/21 159/21 160/2 160/18 162/6 173/24 177/21 178/5 178/15 180/12 180/24 181/10 182/16 184/17
vetted [1]  9/11
via [1]  1/19
vicarious [12]  131/20 135/24 137/19

138/19 156/10 156/12 158/14 168/23 173/4 173/16 173/20 178/6
view [4]  8/20 37/13 66/18 157/17
views [1]  151/11
violation [3]  75/15 75/16 109/15
violations [18]  72/19 73/2 73/9 73/21 73/24 74/3 74/13 74/15 74/21 74/22 75/7 75/19 75/25 76/5 76/8 76/20 78/7 79/22
violator [1]  78/17
virtually [1]  92/21
virtue [1]  97/1
vociferously [1]  146/25
VOICE [3]  81/24 95/11 97/9
voluminous [1]  77/23
voluntarily [2]  127/9 138/7
VP [5]  100/18 110/24 111/3 121/1 121/1
vs [1]  1/6
vulnerability [7]  73/1 76/4 115/15 115/25 116/9 117/14 118/22

**W**

wade [1]  126/23
wait [1]  95/16
waited [1]  145/10
waiting [1]  80/12
walk [2]  56/9 82/12
walked [1]  82/1
walks [1]  76/4
wall [1]  39/24
want [47]  11/16 12/16 18/18 19/18 22/4 22/4 22/13 22/21 30/8 33/4 34/10 34/15 34/20 34/24 35/4 35/25 36/9 38/8 40/1 54/7 55/23 56/1 56/6 62/13 67/16 69/3 72/20 75/11 90/15 95/10 95/23 102/9 103/7 104/11 111/12 116/19 121/3 123/2 124/1 126/14 137/14 138/17 144/2 150/10 150/14 160/18 179/21
want is [1]  40/1
wanted [11]  11/19 11/22 12/21 24/6 26/18 72/3 80/11 131/18 183/9 184/5 184/13
wants [2]  23/2 133/25
WARNER [3]  1/4 2/2 4/5
warning [3]  62/20 62/20 62/21
warnings [1]  31/25
warrants [1]  118/25
was [204]
was the [1]  111/18
Washington [1]  2/5
wasn't [7]  10/2 23/10 45/2 72/4 84/5 103/22 183/7
wave [1]  36/9
waving [1]  36/6
way [35]  10/2 13/23 18/11 18/21 32/4 33/21 39/7 44/20 57/20 73/7 73/17 80/18 82/10 84/16 92/12 98/18 125/11 127/4 127/5 129/19 132/13 132/16 135/17 135/18 139/7 142/19 143/5 143/18 144/15 155/24 157/19 158/3 169/7 170/5 184/4
ways [10]  7/12 132/17 135/7 141/4 142/12 143/15 144/13 157/5 169/8 173/15
we [407]
we'd [3]  105/10 106/25 161/5
we'll [19]  9/23 19/23 35/3 53/21 54/19 64/2 79/23 96/1 127/20 127/20 129/25

129/25 131/5 153/25 157/9 162/2 162/4 165/2 184/21
we're [78]  4/4 4/7 6/19 7/5 10/17 15/5 15/7 18/14 20/15 20/16 21/12 22/21 25/3 31/11 35/5 41/15 46/24 49/8 49/20 50/17 51/25 53/17 53/20 55/9 55/13 56/6 57/17 58/7 62/12 63/3 64/4 67/8 67/9 74/9 74/11 75/12 80/11 80/18 90/11 90/11 92/19 93/7 94/2 94/22 97/5 113/3 122/15 126/21 130/18 130/25 131/4 131/9 134/15 135/6 135/17 135/17 136/10 142/21 143/11 143/15 146/14 148/6 148/22 150/9 150/10 158/7 158/21 158/21 160/25 161/19 166/20 168/19 168/24 171/10 175/24 176/5 176/10 183/25
we've [40]  7/2 9/19 9/22 21/4 24/14 24/20 24/20 28/23 33/8 36/4 38/11 38/11 40/12 42/21 42/21 52/25 53/7 53/16 53/16 53/17 53/20 54/1 55/5 61/8 64/18 64/19 80/3 92/4 99/22 108/24 117/8 125/17 132/15 143/7 148/12 151/25 162/14 165/10 165/21 166/6
wealth [1]  134/21
Wednesday [1]  79/15
week [7]  8/5 8/19 10/25 11/2 46/23 79/15 183/9
weekend [2]  5/6 5/20
weeks [1]  58/8
weight [6]  141/8 164/13 168/6 168/8 169/4 169/17
welcome [1]  184/19
well [86]  4/14 4/22 5/8 5/12 6/18 9/3 9/4 14/9 15/18 16/10 22/1 22/2 22/6 24/22 28/19 30/20 32/16 34/6 40/2 43/10 43/19 46/22 47/9 54/4 54/25 57/1 57/6 65/20 67/23 68/9 68/20 70/15 71/2 73/13 77/2 77/15 78/21 79/13 80/24 81/7 83/19 86/24 87/1 89/12 90/11 91/20 93/13 94/14 96/1 96/4 99/14 100/3 100/13 104/8 109/8 112/2 118/5 123/6 123/17 125/25 127/17 136/12 138/20 139/5 141/17 144/4 144/25 150/23 152/9 153/13 155/11 156/1 158/20 160/19 162/2 162/3 162/18 164/16 167/22 172/9 175/18 178/22 179/2 180/19 182/5 184/21
went [7]  16/24 33/13 39/3 43/16 78/17 102/9 132/22
were [111]  6/25 7/11 7/18 8/4 10/1 11/11 13/15 14/15 15/16 16/1 16/8 17/24 21/6 22/14 22/14 22/15 27/23 27/23 28/20 29/20 31/8 32/18 35/1 38/24 40/11 43/15 43/18 43/20 43/22 44/7 44/16 48/24 50/20 51/4 51/19 52/8 56/24 56/25 58/25 61/22 62/24 63/3 67/12 67/13 67/20 68/6 73/17 73/24 74/1 74/1 74/5 74/20 75/6 75/18 75/21 75/23 76/17 77/8 77/8 77/11 82/8 82/15 82/17 84/23 86/15 87/19 88/3 88/3 88/4 90/22 94/4 98/13 98/24 98/25 99/5 99/9 99/22 100/21 100/22 101/5 103/23 105/24 106/13 107/17 107/22 107/23 107/24 110/6 110/17 111/21 111/23 112/1 122/25 125/7 125/10 132/10 132/22 134/4 134/18 140/11 140/12 147/8 150/17 150/19 152/17 156/14 164/22 176/22 178/21

**W**

were... [2]  178/21 185/5
weren't [1]  23/14
what [267]
what's [21]  23/18 24/8 28/20 31/20
51/13 51/21 56/4 61/19 66/25 76/24
85/12 93/4 120/10 126/17 126/18
127/12 141/23 151/1 151/1 151/3
165/7
whatever [7]  31/18 36/1 56/12 71/22
78/18 122/25 134/2
whatsoever [4]  37/10 37/18 169/16
172/4
when [52]  7/19 7/20 10/23 11/4 21/3
32/14 35/17 36/24 37/10 37/23 51/4
53/11 61/8 61/25 62/1 62/13 63/9 67/5
67/13 73/22 73/24 74/3 74/19 74/20
77/20 82/24 86/13 88/3 88/8 90/12
91/20 94/2 94/6 101/9 101/10 101/24
103/25 103/25 106/11 110/16 114/17
120/5 125/11 127/7 132/25 137/5
145/8 148/18 156/19 157/20 157/23
178/10
whenever [1]  6/15
where [31]  7/25 14/3 20/5 20/16 38/25
43/22 43/24 45/17 51/14 66/17 75/13
79/6 79/19 81/1 94/11 95/18 115/3
115/4 125/22 126/3 127/16 130/22
132/24 138/4 150/21 152/15 166/14
173/8 176/2 176/22 179/21
whereas [1]  50/9
WHEREOF [1]  186/12
WHEREUPON [1]  185/5
whether [41]  8/5 10/18 13/7 16/7 17/2
25/2 29/4 31/4 37/13 40/20 47/18
50/23 57/18 66/6 71/22 73/2 77/17
79/7 79/21 91/8 93/24 94/4 96/10
96/12 96/13 96/20 103/5 121/11 130/6
130/7 135/17 141/9 141/10 145/25
156/13 168/6 170/22 182/3 182/7
183/8 183/10
which [88]  7/6 7/12 7/16 8/22 8/24
11/16 11/18 15/8 27/15 32/5 33/6
35/20 36/14 38/6 39/22 41/17 45/22
46/6 46/16 49/1 52/8 54/19 56/7 57/15
57/15 58/7 58/25 59/4 64/1 65/14 66/3
69/4 70/9 71/3 73/1 77/5 77/18 80/19
83/2 84/16 85/3 89/4 91/22 95/23
99/21 103/8 105/7 105/7 105/13
105/15 105/17 105/23 106/12 108/8
113/9 118/16 119/6 120/12 120/18
124/1 128/9 131/21 135/25 139/1
139/15 144/8 144/14 147/22 155/10
157/7 157/21 158/13 159/1 159/16
168/10 168/20 168/21 169/25 171/3
171/12 175/13 175/14 176/13 177/5
178/19 179/8 179/18 180/5
while [4]  89/8 137/5 160/16 164/19
who [48]  4/25 6/21 29/19 46/14 60/17
60/21 62/25 67/20 71/5 71/7 71/11
71/13 83/8 84/13 84/22 88/14 90/20
92/3 93/17 93/19 98/9 98/5 117/6 118/8
120/24 121/15 121/17 122/15 122/24
123/1 123/1 123/2 123/21 124/2
124/14 124/14 124/25 125/3 125/7
125/9 126/15 133/22 140/16 148/9
152/8 153/1 161/8 172/1 174/15
who's [1]  168/1
whoever [3]  106/19 122/14 166/23
whole [2]  37/21 142/23

wholly [1]  164/21
whom [3]  142/18 143/6 152/17
why [29]  4/3 6/19 10/20 25/14 28/11
30/3 35/2 36/17 41/8 47/2 76/10 77/20
82/2 82/14 82/15 88/3 120/7 125/15
127/19 136/22 137/24 139/25 141/14
144/9 144/21 156/4 165/2 173/2
177/12
wilfulness [1]  74/16
will [50]  10/15 12/18 15/15 18/16 18/16
21/21 22/5 22/6 25/7 25/16 40/21 42/2
42/8 44/12 44/16 45/22 47/4 47/7
49/17 51/6 54/18 55/8 56/18 59/6 81/3
85/7 86/18 94/23 97/20 98/1 99/21
106/11 107/2 107/20 120/13 122/17
128/9 130/25 131/15 134/21 145/24
146/1 146/2 148/15 148/17 152/21
155/3 156/2 157/3 166/3
Wilson [1]  186/17
Winston [15]  3/3 3/9 3/13 4/20 4/21
11/21 13/20 18/21 22/17 28/15 34/3
51/2 146/24 147/2 150/5
winston.com [5]  3/6 3/6 3/7 3/11 3/15
wipe [1]  95/23
Wisconsin [1]  2/4
withdraw [1]  33/25
Withdrawn [1]  51/24
within [13]  1/17 33/8 58/1 58/8 64/23
78/22 78/23 87/10 92/1 122/7 122/11
122/15 185/5
without [11]  44/2 47/13 47/25 48/6
63/24 66/8 96/17 96/18 119/15 138/1
141/4
witness [6]  40/16 87/9 94/24 96/10
96/12 186/12
witnesses [4]  7/1 103/4 107/10 110/2
won't [5]  15/13 21/11 42/19 162/3
171/6
wondering [1]  5/5
Woods [2]  3/17 4/24
word [2]  58/3 179/12
words [3]  75/14 76/12 174/18
work [28]  9/12 12/9 19/15 22/8 59/16
60/1 60/8 61/7 61/11 61/15 61/18
61/22 62/11 62/23 63/18 64/17 64/20
64/23 66/21 66/22 67/17 87/10 88/20
121/6 169/9 169/9 175/4 180/15
worked [1]  84/13
worker [1]  71/17
working [2]  54/7 154/24
works [5]  16/5 16/7 156/15 166/2 178/7
world [3]  110/13 112/19 144/12
worth [1]  45/2
would [192]
wouldn't [9]  13/23 69/22 89/10 96/8
108/8 137/3 137/4 137/9 179/21
write [1]  40/9
writing [2]  86/12 99/20
written [6]  37/10 49/15 50/22 51/5 74/2
74/8
wrong [5]  7/22 104/24 109/4 157/13
167/6

**Y**

yeah [29]  17/7 17/7 20/11 68/8 68/8
69/15 78/13 79/3 89/16 89/20 95/7
99/17 108/23 112/21 114/15 115/21
120/22 123/11 123/14 124/9 124/19
133/13 144/4 156/6 159/6 159/21
161/17 177/10 183/16

year [12]  12/8 83/3 111/20 139/1 140/4
145/6 145/11 154/20 177/24 178/12
181/20 181/21
years [11]  32/3 135/11 137/7 140/19
146/22 146/23 148/11 154/21 154/22
154/25 159/2
yes [42]  6/8 7/10 11/20 12/2 12/22 17/7
26/12 26/21 30/10 30/11 35/11 43/12
45/7 59/19 59/22 61/5 62/8 68/25
85/20 88/12 88/12 89/19 90/17 99/6
102/3 105/5 108/18 111/23 114/2
117/23 117/23 118/4 130/4 130/22
137/16 137/16 145/22 145/22 156/24
160/1 171/1 172/24
yet [9]  7/16 18/13 42/22 64/15 86/7
102/17 109/25 144/10 148/4
York [5]  2/10 2/11 2/11 3/4 3/4
you [372]
you'd [2]  38/22 81/16
you'll [2]  16/6 135/14
you're [33]  6/20 7/8 9/9 23/11 23/17
23/19 29/22 30/17 36/22 46/7 59/21
70/13 71/8 75/11 82/22 90/5 115/19
116/2 120/3 122/19 123/21 144/18
146/5 155/10 158/25 164/19 172/11
173/8 173/11 174/4 176/9 180/14
184/19
you've [19]  15/8 18/17 18/18 29/14
31/14 74/25 75/3 104/2 112/20 121/1
122/1 124/1 134/23 138/21 139/11
144/6 157/21 160/15 171/18
your [39]  4/23 8/14 13/13 17/23 25/4
26/9 44/10 45/20 45/22 49/4 52/18
59/18 66/14 66/18 72/4 72/13 75/4
97/16 98/19 98/19 107/20 107/20
115/12 121/12 122/4 124/4 128/1
139/13 141/21 160/19 161/2 168/18
170/25 173/11 175/18 176/9 176/18
179/9 180/6
yourself [2]  12/12 168/19

**Z**

Zebrak [14]  2/4 4/13 12/18 13/20 14/20
14/23 15/2 15/3 17/15 18/3 18/20 19/2
21/8 25/9
Zebrak's [2]  12/14 19/5
zero [1]  158/18