# Exhibit 20

**O+Z | Oppenheim + Zebrak, LLP**

Matthew J. Oppenheim
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
T: (202) 450-3958 | F: (866) 766-1678
matt@oandzlaw.com | www.oandzlaw.com

*Via Electronic Mail*                                                                 June 16, 2020

Special Master Regina Rodriguez
regina.rodriguez@wilmerhale.com

      Re:    <u>*Warner Records et al. v. Charter Communications,* Case No. 19-cv-00874</u>

Dear Ms. Rodriguez:

    We write on behalf of Plaintiffs to request reconsideration or revision of two rulings in the May 29, 2020 Discovery Order, in light of the recent post-trial ruling in *Sony v. Cox* (the "*Sony* Opinion").

    **I.    The denial of discovery concerning BitTorrent should be reversed or withdrawn, because it is based on an unsupported and erroneous factual finding regarding the prevalence of non-infringing activity on BitTorrent.**

    The portion of the Discovery Order denying discovery concerning BitTorrent should be reversed or withdrawn because, as reflected in the *Sony* Opinion, over 99% of content on BitTorrent is infringing, and the Discovery Order's contrary factual finding is unsupported.

    RFP 43 seeks documents "discussing the impact of Subscribers' use of BitTorrent and/or peer-to-peer networks on [Charter's] current or future profits." The Discovery Order denied Plaintiffs' motion to compel these documents based on its factual finding that "BitTorrent is used for many legitimate purposes" and therefore the request would "result in the production of a large amount of information that is not reasonably calculated to lead to the discovery of admissible evidence in the matter." Discovery Order at 38-39; *see also* May 18 Hrg. Tr. at 169-170 (RFP 43 "would appear to encompass an incredible amount of information that is not reasonably calculated to lead to the discovery of admissible evidence in this matter.").

    That factual finding is unsupported, and contrary to the substantial evidence in *Sony*. The unrebutted evidence there made clear that over 99% of BitTorrent use is for infringement. Based on an extensive trial record, the court concluded that:

> the argument that alleged infringers bought a lawful copy of a song to share via a torrent file is unsupported. Where Defendants speculate as to the source of the P2P files, Plaintiffs produced evidence to support illegitimate downloads by Cox subscribers. **Defendants heard—and failed to disprove—evidence from [Plaintiffs' expert] that over 99% of P2P content is pirated**.

June 16, 2020
Page 2 of 5

*Sony* Opinion at 14; *see also id.* at 13-14 (citing "fairly comprehensive report, QUANTIFYING GLOBAL TRANSFERS OF COPYRIGHTED CONTENT USING BITTORRENT, finding that 'only .55 percent . . . about half a percent of the content in BitTorrent is not copyright infringing and potentially legitimate"); FAC at ¶ 91 (citing similar study); May 18 Hrg. Tr. at 165 (discussing same studies).

The Discovery Order's contrary factual finding regarding the purported prevalence of non-infringing content on BitTorrent is not supported by the evidence. Unable to rebut the studies showing over 99% of BitTorrent use as infringing, *id*., Charter cited in a footnote to three examples of non-infringing uses:  (1) a NASA program from 2006, seven years before the Claim Period, *see* link at Charter's May 13 Brief at 5 n.21; (2) Facebook's "creat[ion] [of] *its own custom BitTorrent tracker*, which is designed so that *individual servers in Facebook's infrastructure* will try to obtain slices from other servers" to push updates to Facebook's code, *id*.; and (3) one musician's 2014 release of an album—the first ever album sold on BitTorrent, *id*.—that was immediately (and unsurprisingly) pirated, *see* "Of Course Thom Yorke's BitTorrent Album Was Immediately Pirated Using BitTorrent," *available at* https://www.vice.com/en_us/article/kbzg4e/thom-yorkes-bittorrent-album-was-immediately-pirated-through-bittorrent.[1]

These anecdotal references are insufficient to support the Discovery Order's potentially far-reaching factual finding, particularly in the face of substantial unrebutted evidence from the *Sony* Opinion showing that only 0.55% of content on BitTorrent is non-infringing. Indeed, what the *Sony* Opinion relied upon and Cox/Winston failed to rebut is not mere anecdote, but rather comprehensive studies measuring the relative proportion of infringing and non-infringing content available on BitTorrent. Two such studies are attached for the Special Master's reference, with key findings highlighted.  *See* Exhibit 1 at 29-30 (SIZING THE PIRACY UNIVERSE), Exhibit 2 at 1, 19-20 (QUANTIFYING GLOBAL TRANSFERS OF COPYRIGHTED CONTENT USING BITTORRENT).

Accordingly, the Discovery Order's contrary finding should be reversed, or at minimum, withdrawn based on the incomplete record on this issue in this case. And to the extent the Special Master's ruling as to RFP 43 was based on this erroneous factual premise, it too should be reversed. Indeed, if the jury in *Sony* was justified in concluding that files on BitTorrent were unlawfully reproduced and distributed because 99.45% of content on BitTorrent is pirated, *Sony* Opinion at 14, Plaintiffs here should be entitled to at least *ask* the jury to make the same presumption for any Charter documents that link Charter's profits to its subscribers' use of BitTorrent. Such documents are directly relevant to the financial benefit Charter received from its subscribers' infringing activity—a core element of Plaintiffs' vicarious liability claim. At a minimum, the information should be discoverable.

---

[1] Because Charter submitted these links in connection with its May 13 Opposition Brief, Plaintiffs did not have any opportunity to respond to them with the substantial evidence *from actual studies* showing BitTorrent is primarily used for infringement, or the article cited above regarding the immediate piracy of Thom Yorke's BitTorrent-released album.

June 16, 2020
Page 3 of 5

II. **The Discovery Order requiring Plaintiffs to identify the relationship between sound recordings and musical compositions should be reversed or, at a minimum, revised to set the date by which Plaintiffs must provide that information for after final judgement enters in *Sony v. Cox*.**

In *Sony*, the court concluded that the "overlap" between sound recordings and musical compositions is relevant to determining the individual number of statutory damage awards available to the *Sony* plaintiffs.[2] The *Sony* court ordered Cox—who is represented by the same Winston & Strawn attorneys that represent Charter here—to submit a post-verdict brief by August 3, 2020, identifying "a list of overlapping works in suit" and "propos[ing] a new number of works in suit for purposes of statutory damages." *Sony* Opinion at 52. The *Sony* plaintiffs may respond by October 2, 2020, and the court will then make a final determination of the number of works eligible for statutory damage awards "based on both Parties' submissions." *Id.* The *Sony* plaintiffs were never asked or ordered to produce information on the relationship between sound recordings and musical compositions, and Cox must therefore look to other evidence in that closed record to define the overlap.

While the *Sony* court placed the burden on <u>Cox</u> to identify the "overlap" between sound recordings and musical compositions, the Special Master ordered the <u>Music Publisher Plaintiffs</u> to identify that overlap. In putting that burden on Cox (rather than the *Sony* plaintiffs), the *Sony* court relied on Winston & Strawn's representation in that case that "calculating the precise number of overlapping works . . . is a ministerial act of comparing PX-1 [list of sound recordings] and PX-2 [list of musical compositions]." *Id.* (quoting *Sony*, ECF No. 682 at 10, n.6, attached as Exhibit 3). Winston & Strawn took the opposite position here in convincing the Special Master that Plaintiffs (rather than Charter) should bear the burden of this analysis. May 20, 2020 E. Ranahan Ltr. to R. Rodriguez. Just as the *Sony* court found that burden should lie with Cox, the Special Master should reverse her prior ruling and deny Charter's motion to require Plaintiffs to identify the relationship between sound recordings and musical compositions in suit.

But even if the Special Master disagrees with the *Sony* court and concludes that Plaintiffs must respond to MPP Interrogatories 13-14, that ruling should be revised to prevent interference with the *Sony* case. Plaintiffs (most of whom are also plaintiffs in *Sony*) need to ensure that discovery on overlapping works produced here is not—and cannot—be used (even inadvertently) to influence resolution of this issue in *Sony*. Critical to this are the facts that (i) Cox is represented by the same Winston & Strawn attorneys that represent Charter here, (ii) approximately 80 percent of the works in suit in this case are also at issue in *Sony*, (iii) Cox did not adduce direct evidence on relationship between sound recordings and musical compositions, and (iv) Cox must make its submission based on the evidentiary record *in that case*.

The Discovery Order here risks prejudicing the process that District Judge O'Grady established to resolve this post-verdict issue in *Sony*. If Plaintiffs are required to provide discovery on the "overlap" between sound recordings and musical composition in *Charter* before

---

[2] While Plaintiffs disagree with that ruling, that is not the basis of the instant request, and Plaintiffs expressly reserve the right to separately challenge in this case the legal issues underpinning that determination.

June 16, 2020<br>
Page 4 of 5

Winston & Strawn files Cox's brief on August 3, there is a meaningful risk that discovery from this case—produced only for the purpose of this litigation—could improperly influence the briefing and outcome in *Sony*. Hundreds of millions of dollars are potentially at stake in *Cox* based on this precise issue.

Moreover, and critically, *only* the Special Master (and not Judge O'Grady in *Sony*) is in a position to guard *with certainty* against the risk of improper influence. To be sure, it is easy enough to determine if defense counsel *expressly* relies upon the information disclosed here in their submission in *Sony*, and to direct any complaints about that to Judge O'Grady. The issue here, however, is the risk of a less explicit, but no less real, crossover of information from this case to *Sony*, where the evidentiary record is closed. Simply put, despite defense counsel's very best intentions, there is no way for them to unlearn the information that they learn in this case, nor is there any practical way to determine conclusively the extent to which defense counsel's submission in *Sony* is informed or influenced by what they learn from the information disclosed here.

Therefore, to protect against any improper cross-pollination between the cases (even unintentionally), the Special Master should, at a minimum, issue a revised order setting the deadline for Plaintiffs to provide the requested information for a date after entry of final judgment in *Sony*.

This is no attack on Winston & Strawn's ethics or intentions, and Plaintiffs are mindful that the Stipulated Protective Order prohibits use of confidential discovery for any purpose outside this litigation. But even assuming Winston & Strawn refrains from submitting the *Charter* discovery with the *Cox* briefing or using it directly to assist its analysis, those attorneys cannot un-learn what they learned—especially on an issue of such importance. Nor would it be possible to implement adequate screening measures given the number of overlapping Winston & Strawn attorneys on the two cases.[3] A simple extension of Plaintiffs' production deadline, by contrast, can definitively protect against these material risks.

Thus, in the event that the Special Master hews to her ruling that Plaintiffs bear the burden of responding to MPP Interrogatories 13-14, then, to avoid the risk that discovery Plaintiffs provide in *Charter* will influence or be incorporated into Winston & Strawn's submission in *Cox*, Plaintiffs request that the date for identifying the relationship between sound recordings and musical compositions be extended. Ideally, the deadline to produce would be set for after the *Sony* court enters final judgement, which Plaintiffs estimate should be in October 2020. At a minimum, Plaintiffs' production date should be set for after Cox (through Winston & Strawn) files its brief on August 3, 2020. There would be no prejudice to Charter by such an order as discovery is ongoing through January 31, 2021, and to date, Charter has not noticed or scheduled a single deposition. If that time comes and Charter believes it needs more time to address the overlap issue in discovery, Plaintiffs would confer in good-faith on a proposed extension.

---

[3] At least the following Winston & Strawn attorneys are actively involved in both the *Sony* and *Charter* cases: Michael Elkin, Jennifer Golinveaux, Sean Anderson, Thomas Patrick Lane, Michael Brody and Cesie Alvarez.

## LOCAL RULE 7.1(a) CERTIFICATION

Plaintiffs' counsel emailed Charter's counsel on June 8, 2020 stating the above-listed bases for reconsideration and requesting a telephonic conferral. On June 9, counsel for the parties conferred by telephone to discuss the issues. They were unable to resolve the disputes but agreed on a schedule for addressing these issues with the Special Master. On June 12, the parties discussed the issues and schedule further on a telephone conference with the Special Master. During the June 12 call, the Special Master and parties agreed that Plaintiffs would file a five-page letter on June 16, and Charter would have until June 23 to submit a five-page letter in response. The Special Master indicated she would let the parties know if additional argument or briefing was required, and informed the parties that their time to object to, or move to modify, the May 29, 2020 Discovery Order would run from the date the Special Master issues a revised order.

Sincerely,

*/s/ Matthew J. Oppenheim*