Jennifer A. Golinveaux (SBN: 203056)
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Krishnan Padmanabhan (SBN: 254220)
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: KPadmanabhan@winston.com

Counsel for Movant
CHARTER COMMUNICATIONS, INC.

ORIGINAL FILED

MAY 11 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

SK

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

CV20 80084MISC

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC. | Case No. _____ - MISC |
| Movant, | |
| v. | **REDACTED VERSION**<br>**Charter's Notice of Motion and Motion to Compel Compliance with Subpoena *Duces Tecum*** |
| MARKMONITOR, INC. | |
| Respondent. | Date:   May 11, 2020<br>Time:   To be set<br>Place:   To be set |

NOTICE is hereby given of the filing of this motion pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure by Charter Communications, Inc. ("Charter"). This motion seeks to compel Respondent, MarkMonitor, Inc. ("MarkMonitor"), to comply with a third-party subpoena that Charter served on it on December 20, 2019, in a copyright infringement litigation currently pending in the District of Colorado, styled *Warner Records Inc. v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH (the "*Warner* litigation"). Pursuant to Fed. R. Civ. P. 45, Charter files its Motion in this District, where MarkMonitor is located.

Pursuant to Local Civil Rule 37-1(a), the undersigned counsel for Charter represents that counsel for Charter met and conferred with counsel for MarkMonitor on multiple dates, including

1

1    most recently on May 1, 2020, with respect to the issues raised in this Motion, but that, as of the date

2    of filing this Motion, MarkMonitor has not produced documents responsive to Charter's requests nor

3    committed to a timeline for doing so.

4         This Motion seeks an order from the Court directing MarkMonitor to fully comply with

5    Request for Production ("RFP") Numbers 6, 9, 11–27, 31, 35–40, 43, 47–48 of the subpoena and

6    setting a deadline for MarkMonitor to produce all of the documents MarkMonitor has agreed to

7    produce.  As explained in greater detail below, those materials are essential to Charter in its preparation

8    of its defense in the *Warner* litigation.

9

10   Dated: May 11, 2020                          WINSTON & STRAWN LLP

11                                                By:   */s/* Jennifer A. Golinveaux
                                                       Jennifer A. Golinveaux (SBN: 203056)
12                                                     Winston & Strawn LLP
                                                       101 California Street, 35th Floor
13                                                     San Francisco, CA  94111
                                                       Tel: (415) 591-1000
14                                                     Fax: (415) 591-1400
                                                       Email: jgolinveaux@winston.com
15
                                                       Krishnan Padmanabhan (SBN: 254220)
16                                                     Winston & Strawn LLP
                                                       200 Park Avenue
17                                                     New York, NY  10166
                                                       Tel: (212) 294-6700
18                                                     Fax: (212) 294-4700
                                                       Email: KPadmanabhan@winston.com
19
                                                       Counsel for Movant
20                                                     CHARTER COMMUNICATIONS, INC.

21

22

23

24

25

26

27

28

2

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD ...........................................................................................................3

FACTUAL BACKGROUND.................................................................................................4

THE PLAINTIFFS' RELIANCE ON THE MARKMONITOR SYSTEM ...........................4

ARGUMENT.........................................................................................................................8

    I.     MarkMonitor Must Produce Technical Information About Its System (RFP Nos. 6, 9, 11–27, 31, 35–40, 43) .........................................................................................8

    II.    MarkMonitor Must Produce Technical Information Regarding the RIAA Databases (RFP Nos. 12, 13) ....................................................................................10

    III.   MarkMonitor Must Produce Assessments of Its System (RFP Nos. 35–40) .............11

    IV.   MarkMonitor Must Produce All of the Charter Evidence Packages (RFP Nos. 9, 13).12

    V.    MarkMonitor Must Produce All Documents Related to the CAS (RFP No. 35–40, 48)..............................................................................................................13

    VI.   MarkMonitor Must Produce All Communications with Plaintiffs and the RIAA......14

    VII.  MarkMonitor Must Produce Document Retention Policies and Privilege Logs (RFP Nos. 20, 47)....................................................................................................15

CONCLUSION....................................................................................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
    No. CV-12-80300-RMW, 2013 WL 1508894 (N.D. Cal. Apr. 10, 2013)........................4

*Bakhtiari Corp. v. Register Tapes Unlimited Inc.*,
    No. 12-cv-5183 LHK (PSG), 2013 WL 2253182 (N.D. Cal. May 22, 2013) ..............16

*Beinin v. Ctr. for Study of Popular Culture*,
    No. 06-cv-02298 JW (RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) ....................4

*Garrett v. City and Cty. of San Francisco*,
    818 F.2d 1515 (9th Cir. 1987) ....................................................................................4

*Integrated Global Concepts, Inc. v. j2 Global, Inc.*,
    2014 WL 232211 (N.D. Cal. Jan. 21, 2014) ...............................................................4

*La. Pac. Corp. v. Money Market 1 Inst'l Inv. Dealer*,
    Case No. 09–cv–03529–JSW, 2012 WL 5519199 (N.D. Cal. Nov. 14, 2012) ..............4

*McMorrow, et al. v. Mondelez Int'l, Inc.*,
    Case No. 17-cv-02327-BAS (JLB), 2019 WL 3852498 (N.D. Cal. Apr. 19, 2019)...............15, 16

*Montgomery v. Wal-Mart Stores, Inc. et al.*,
    12-cv-3057-JLS (DHB), 2015 WL 11233390 (S.D. Cal. Sep. 4, 2015)........................16

*Sharma v. BMW of N. Am. LLC*,
    No. 13-cv-02274-MMC (KAW), 2016 WL 1019668 (N.D. Cal. Mar. 15, 2016) ........16

*Sony Music Entm't, et al. v. Cox Commc'ns, Inc., et al.*,
    Case No. 1:18-cv-00950-LO-JFA.....................................................................*passim*

*Soto v. City of Concord*,
    162 F.R.D. 603 (N.D. Cal. 1995) ...............................................................................3

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) .....................................................................................3

*United States v. Warner*,
    Case No. 11–cv–04181–LB, 2012 WL 6087193 (N.D. Cal. Dec. 6, 2012) ...................4

*Warner Records Inc. v. Charter Communications, Inc.*,
    Case No. 19-cv-00874-RBJ-MEH (D. Colo.)..............................................................1

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

**Other Authorities**

Fed. R. Civ. P. 26 ..................................................................................................3, 4

Fed. R. Civ. P. 26(b)(1) .............................................................................................3

Fed. R. Civ. P. 26(b)(2) .............................................................................................4

Fed. R. Civ. P. 26(b)(2)(C)(i) ....................................................................................4

Fed. R. Civ. P. 26(b)(5)(A)(ii) .................................................................................16

Fed. R. Civ. P. 45 ......................................................................................................4

Fed. R. Civ. P. 45(a) .................................................................................................3

Fed. R. Civ. P. 45(d)(1) .............................................................................................4

N.D. Cal. L.R. 37-2 ...................................................................................................4

iii

**INTRODUCTION**

Charter, an Internet service provider ("ISP"), has been sued for copyright infringement by 66 of the world's largest record labels and music publishers (collectively, "Plaintiffs"). *Warner Records Inc. v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH (D. Colo.) (the "*Warner* litigation"). Plaintiffs allege that thousands of their works were unlawfully distributed online by Charter's Internet service subscribers to third parties using BitTorrent or other peer-to-peer file sharing programs between 2013 and 2016. They seek to hold Charter vicariously and contributorily liable for its subscribers' conduct based on Charter's provision of Internet services to these subscribers, and seek statutory damages in excess of $1.6 billion. The sole evidence supporting Plaintiffs' claims of copyright infringement by Charter's subscribers was provided by a third party—MarkMonitor—who was engaged by the record label Plaintiffs' trade organization, the Recording Industry Association of America ("RIAA"), to identify alleged infringers who were sharing copyrighted files on peer-to-peer networks, and send notices to the ISPs, including Charter, that provided Internet services to those alleged infringers. MarkMonitor has represented that it has been retained as a litigation consultant in this case. Given that the data compiled by MarkMonitor is the only evidence underlying Plaintiffs' claims, Charter served a subpoena seeking access to that data and to documents explaining the operation of the infringement detection and notice software that compiled it.[1] In addition, Charter sought documents evidencing the relationship between MarkMonitor and the RIAA, MarkMonitor and Plaintiffs, and communications among those respective parties.

MarkMonitor sought, and received, an extension to reply to the subpoena, promised to substantially comply with the requests during the meet and confer process, and took three months to collect responsive documents. Rather than perform the promised reasonable search to respond to Charter's subpoena, MarkMonitor ultimately produced a scant 15 documents comprising 94 pages, and insists that it possesses virtually none of the requested material.[2] The claim is facially untrue, as it means that MarkMonitor does not possess data that it produced in another related matter, data that

---

[1] *See* Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), Ex. 2 (Charter's Subpoena *Duces Tecum* on MarkMonitor).
[2] The totality of MarkMonitor's production in response to Charter's subpoena was a set of 15 contracts between MarkMonitor and the RIAA, totaling 94 pages.

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

1   it was contractually obligated to create and preserve in anticipation of potential litigation, data that it

2   incontestably received as evidenced by third-party documents, and that it lacks any of the basic

3   documentation that would be generated and maintained by a technology vendor.  Indeed, taken

4   literally, MarkMonitor's denials that it possesses responsive evidence would mean that it lacks the

5   very data the Plaintiffs' interrogatory responses indicate will be used to prove infringement.  For

6   example, MarkMonitor claims it does not possess any of the following:

7       • **Basic Technical Documents:** MarkMonitor claims it does not have any technical

8          documents, such as specifications, requirement documents, user guides, or technical

9          marketing materials that explain how MarkMonitor's software was designed and operates.

10          These are the types of documents that are universally maintained in the ordinary course of

11          business when developing and selling software and software-based services because they

12          are necessary to a well-designed and reliably operated data services business.

13       • **Previously Produced Documents That Are a Matter of Public Record:** In a recent

14          litigation featuring parallel claims of copyright infringement against another ISP (Cox

15          Communications, Inc.) MarkMonitor produced numerous documents that were identified

16          in the public record and, in some instances, disclosed in open court.  *Sony Music Entm't,*

17          *et al. v. Cox Commc'ns, Inc., et al.*, Case No. 1:18-cv-00950-LO-JFA ("*Sony v. Cox*").

18          Those publicly disclosed materials include numerous documents responsive to Charter's

19          subpoena, including a number of the technical documents that MarkMonitor now insists

20          do not exist.  MarkMonitor refused to stipulate that materials produced in *Sony v. Cox* can

21          be deemed produced in this case, refused to produce them in this case, and inexplicably

22          claims that it no longer possesses these publicly disclosed documents.

23       • **Documents and Data Compiled and Maintained by MarkMonitor Under Contract**

24          **with the RIAA:** MarkMonitor was contractually required to create, and preserve, a variety

25          of reports and databases under a series of written agreements with the RIAA, with the

26          expectation that this data would be used by the RIAA or its members in the event of

27          lawsuits such as this one.  The RIAA Agreements spell out this information, and third-

28          party documents confirm some of the data that MarkMonitor compiled.  Nonetheless,

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

1    MarkMonitor refused to produce any of this material, denied Charter access to these
2    databases, and refused to produce fundamental documentation describing the contents and
3    operation of the databases, claiming that the documentation does not exist, and that the data
4    has been provided to Plaintiffs—who have selectively reproduced certain of those
5    materials.  What Charter has received is massively incomplete, and consists of data that is
6    either lacking data known to have been received by MarkMonitor or altered from the
7    version produced by MarkMonitor.

8         The importance of MarkMonitor's documents are underscored by the Plaintiffs' own
9    statements in the *Sony v. Cox* litigation.[3]  During trial, Plaintiffs explained that their infringement
10   evidence was rock solid because evidence generated by MarkMonitor's software was the "gold
11   standard in antipiracy work," and boasted that "[MarkMonitor's] process is precise and meticulous"
12   and "essentially infallible."[4]  Charter must have an opportunity to see what *all of* that evidence was,
13   *how* it was compiled, and to challenge Plaintiffs' claim of infallibility.  Charter cannot do so without
14   complete discovery from MarkMonitor.   Given MarkMonitor's refusal to produce documents,
15   including documents it either must have or has acknowledged it does have, Charter was left with little
16   choice but to seek the Court's assistance through this motion to compel.

17                                **LEGAL STANDARD**

18        Pursuant to the Federal Rules, a party may subpoena a third party, such as MarkMonitor, to
19   produce documents.  *See* Fed. R. Civ. P. 45(a).  Fed. R. Civ. P. 26 allows a party to obtain discovery
20   concerning any non-privileged matter that is relevant to any party's claim or defense.  Fed. R. Civ. P.
21   26(b)(1).  "The question of relevancy should be construed liberally and with common sense and
22   discovery should be allowed unless the information sought has no conceivable bearing on the case."
23   *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  Ultimately, district courts have broad
24   discretion in determining whether evidence is relevant for discovery purposes.  *See Surfvivor Media,*
25   *Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *Beinin v. Ctr. for Study of Popular Culture*,
26   No. 06-cv-02298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007) (explaining that the

27

28   ---
     [3] Fifty-two of the 66 Plaintiffs in the *Charter* case were also Plaintiffs in *Sony v. Cox*.
     [4] *See* Golinveaux Decl., Ex. 15 (*Sony v. Cox* Litig. Trial Tr. at 40:1-9, 225:3-4, 2944:10-11).

     **NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

1    Rule 26 relevancy standard applies equally to third-party subpoenas).

2            To determine whether a subpoena should be enforced, the Court is guided by both Rule 45,

3    which protects a subpoenaed party from "undue burden," and Rule 26, which provides that the Court

4    must limit discovery if "the discovery sought . . . can be obtained from some other source that is more

5    convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery

6    outweighs its likely benefit." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C)(i); *see Integrated*

7    *Global Concepts, Inc. v. j2 Global, Inc.*, 2014 WL 232211, at *2 (N.D. Cal. Jan. 21, 2014); *see also*

8    *Am. Broad. Cos., Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *4 (N.D. Cal.

9    Apr. 10, 2013) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the

10   party to whom it is directed."). The subpoenaed party carries the burden of showing that requested

11   discovery should not be provided, and also has the burden of clarifying, explaining, or supporting its

12   objections with competent evidence. *See La. Pac. Corp. v. Money Market 1 Inst'l Inv. Dealer,* Case

13   No. 09–cv–03529–JSW, 2012 WL 5519199, at *3 (N.D. Cal. Nov. 14, 2012); *United States v. Warner*,

14   Case No. 11–cv–04181–LB, 2012 WL 6087193, at *3 (N.D. Cal. Dec. 6, 2012).

15           Pursuant to Northern District of California Local Rule 37-2, a party moving to compel

16   discovery must "detail the basis for the party's contention that it is entitled to the requested discovery

17   and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are

18   satisfied." *See also* Fed. R. Civ. P. 26(b)(2) (requiring that when determining the appropriateness of

19   discovery requests, courts should consider whether the discovery is duplicative or overly burdensome

20   and whether the burden and expense of discovery outweighs the benefit). The Court has discretion to

21   determine whether to grant a motion to compel. *See Garrett v. City and Cty. of San Francisco*, 818

22   F.2d 1515, 1519 (9th Cir. 1987).

23                                           **FACTUAL BACKGROUND**

24                   **THE PLAINTIFFS' RELIANCE ON THE MARKMONITOR SYSTEM**

25           In December 2011, the Plaintiffs, through their agent, RIAA, entered into a "Master

26   Agreement" with MarkMonitor, then called DtecNet, to perform copyright infringement detection

27   services aimed at identifying suspected infringement occurring on the networks of a number of ISPs,

28

                                                        4

1    including Charter.[5]   The Master Agreement was implemented through a series of "Statement[s] of

2    Work"[6] and supplanted one or more earlier agreements believed to date back to at least 2008.[7]  The

3    contracts between MarkMonitor and the RIAA explain that MarkMonitor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮[8]   RIAA contracted with MarkMonitor because it ▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9]

8         More specifically, the MarkMonitor–RIAA contracts required that MarkMonitor create three

9    databases: a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[10]  as well as

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[11]   The Agreements committed MarkMonitor to

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[12] including,

13   specifically, these databases and evidence packages.[13]  MarkMonitor was also required to ▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮and to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[15]

18        Pursuant to the Master Agreement between the parties, MarkMonitor agreed that, at RIAA's

19   expense, it would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;[16] these "Evidence Cases"

20   consisted of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

21   [5] *See* Golinveaux Decl., Ex. 7 (Master Agreement, Bates No. MM000001).

22   [6] *See, e.g.*, Golinveaux Decl., Ex. 8 (2011 Statement of Work ("SOW"), Bates No. MM000015); Ex. 10 (2012 SOW, Bates No. MM000023); Ex. 11 (2013 SOW, Bates No. MM000042); Ex. 12 (2014

23   SOW, Bates No. MM000076); Ex. 13 (2015 SOW, Bates No. MM0000064).
     [7] *See* Golinveaux Decl., Ex. 7 at MM000004, ¶ 1.3 (Master Agreement).

24   [8] *See* Golinveaux Decl., Ex. 7 (Master Agreement).
     [9] *Id.*

25   [10] *See* Golinveaux Decl., Ex. 10 at MM000033-34 (2012 SOW), Ex. 11 at MM000043-45, 49-51 (2013 SOW), Ex. 13 at MM000065-66, 71-73 (2015 SOW), Ex. 12 at MM000077-78, 85-87 (2014 SOW).

26   [11] *See, e.g.*, Golinveaux Decl., Ex. 10 at MM000032-34 (2012 SOW).
     [12] *See* Golinveaux Decl., Ex. 7 at MM000004, ¶ 2.1 (Master Agreement ).

27   [13] *See, e.g.*, Golinveaux Decl., Ex. 10 at MM000032-34 (2012 SOW).
     [14] *See, e.g.*, Golinveaux Decl., Ex. 11 at MM000044 (2013 SOW).

28   [15] *See id.* Ex. 11 at MM000053 (2013 SOW).
     [16] *See id.* Ex. 7 at MM000004, Par. 2.2 (Master Agreement).

1   ███████████[17]   MarkMonitor authorized the use of any "report" that it generated

2   pursuant to the Master Agreement ████████████████████████████

3   ██████████████ (namely, the RIAA or its members, including most of these

4   Plaintiffs),[18] as well as waiving the confidentiality of MarkMonitor information to the extent ███

5   ████████████[19]

6       In January 2015, RIAA and MarkMonitor entered into a Statement of Work pursuant to their

7   Master Agreement, describing ██████████████████████████

8   ████████████████████████████████

9   ████████████████████████████████

10  ████████████████████████████████

11  ██████████[20]   In connection with this work, as contemplated by the Master

12  Agreement, MarkMonitor committed to ████████████████████

13  ████████████████████████████████ at the

14  RIAA's expense.[21]

15      While MarkMonitor has declined to produce any documents regarding its software, publicly

16  available testimony, provided in open court during the *Sony v. Cox* trial, provides an insight into the

17  complexity of the system.[22]   At the *Sony v. Cox* trial, unsealed testimony from a MarkMonitor

18  representative and Plaintiffs' expert explained that the MarkMonitor system is comprised of three

19  modules: a Verification Module, which "creates a database of known infringing files"; a Detection

20  Module, which "identifies peers [i.e., subscribers] downloading or distributing known infringing

21  files"; and a Notice Module, which "sends email to [an] ISP reporting specific instances of

22

23

24  [17] *See id.* at MM000002, Par. C.

25  [18] *Id.* at MM000010, Par. 8.8.
    [19] *See* Golinveaux Decl., Ex. 7 at MM000012, Par. 11.1 (Master Agreement).

26  [20] *See id.*, Ex. 8 at MM000015 (2011 SOW).
    [21] *Id.* at MM000016.

27  [22] Similar descriptions of the MarkMonitor processes utilized by RIAA have been publicly disclosed
    in, *inter alia*, Congressional and other legislative hearings. *See, e.g.*, Golinveaux Decl., Ex. 21 (Jill

28  Lesser, Tr. of Mar. 8, 2013 educational briefing entitled "Combating Piracy Online: The Copyright
    Alert System, a Voluntary Approach").

6

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

infringement."[23]  The Verification Module is comprised of software that scans the Internet to identify potentially infringing files that are being shared in peer-to-peer networks.[24]  The MarkMonitor software downloads the suspected files and verifies that they represent copies of copyrighted works by interacting with the software and databases maintained by a third party, Audible Magic, to confirm what is in the downloaded file.  Verification that suspected files are in fact infringing is achieved by utilizing a process known as digital fingerprinting.[25]  In implementing the Infringement Module (also referred to as the Collection Module), the MarkMonitor software masquerades as a participant in the file-sharing network, and connects to the computers that are suspected of unlawfully sharing files (referred to as "peers"; in this case, Charter's subscribers).  MarkMonitor downloads from those peers a variety of information for the purpose of proving that the peer is sharing the file in question.[26]  That information is compiled into the "evidence packages" referred to above.[27]  The Notification Module performs a variety of checks on each evidence package, and, if appropriate, uses the content of the evidence package to generate a notice of infringement which is then sent to the ISP that provides Internet access to the infringing peer.[28]

---

[23] *See* Golinveaux Decl., Ex. 16 (*Sony v. Cox*, Frederiksen-Cross Trial Demonstrative, Slide 14); *see also* Decl. Ex. 17 (*Sony v. Cox*, Frederiksen-Cross Trial Testimony at 461:9-463:14).
[24] *See* Golinveaux Decl., Ex. 16 (*Sony v. Cox*, Frederiksen-Cross Trial Demonstrative, Slide 15); *see also* Golinveaux Decl. Ex. 17 (*Sony v. Cox*, Frederiksen-Cross Trial Testimony at 461:9-462:1).
[25] *See* Golinveaux Decl., Ex. 16 (*Sony v. Cox*, Frederiksen-Cross Trial Demonstrative, Slides 15-17); *see also* Golinveaux Decl. Ex. 17 (*Sony v. Cox*, Frederiksen-Cross Trial Testimony at 462:15-467:14).
[26] *See* Golinveaux Decl., Ex. 16 (*Sony v. Cox*, Frederiksen-Cross Trial Demonstrative, Slide 18); *see also* Golinveaux Decl. Ex. 17 (*Sony v. Cox*, Frederiksen-Cross Trial Testimony at 467:17-469:17).
[27] *See* Golinveaux Decl., Ex. 16 (*Sony v. Cox*, Frederiksen-Cross Trial Demonstrative, Slide 19); *see also* Golinveaux Decl. Ex. 17 (*Sony v. Cox*, Frederiksen-Cross Trial Testimony at 473:7-474:14).
[28] *See* Golinveaux Decl., Ex. 16 (*Sony v. Cox*, Frederiksen-Cross Trial Demonstrative, Slides 20-21); *see also* Golinveaux Decl. Ex. 17 (*Sony v. Cox*, Frederiksen-Cross Trial Testimony at 476:6-479:1).

**NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

**ARGUMENT**

**I.     MarkMonitor Must Produce Technical Information About Its System (RFP Nos. 6, 9, 11–27, 31, 35–40, 43)**

As discussed above, MarkMonitor's technology generated the sole evidence of the alleged infringement for which Plaintiffs seek to hold Charter vicariously or contributorily liable.  In particular, when the MarkMonitor technology detected suspected infringement on the Internet, it downloaded copies of the suspect files for "fingerprinting" and verification by Audible Magic, generated an "evidence package" by contacting the peer suspected of sharing the file, and generated notices of the infringement that it sent to Charter.  Plaintiffs now rely on those "verified" downloads and "evidence packages" to prove infringement, and on the notices to prove that Charter was secondarily liable for the infringement.  But what files were downloaded?  And which files were actually verified—or not verified—by Audible Magic?  When Audible Magic verified a file, how did it do that?  What information about the verified file did MarkMonitor receive from Audible Magic?  Did it keep everything?  Once a file was "verified" as containing a copyrighted work, how did MarkMonitor generate the "evidence packages" showing that a peer was sharing that work?  What is in the evidence packages that MarkMonitor generated in support of the notices sent to Charter?  And, with respect to those notices, how did the MarkMonitor system assure that only notices that met all of the relevant criteria were sent?

In order to answer many of these questions, Charter will review MarkMonitor's source code,[29] but it has also requested the documents necessary to make that review possible; namely, documents pertaining to what is contained in the source code; namely, the operation, features, and functionality of the MarkMonitor system and the manner in which it supposedly detected infringement and sent copyright infringement notices (RFP Nos. 6, 7, 9, 13, 24–27, 32), including details of how MarkMonitor performed the process of verification (RFP Nos. 10, 14), such as by downloading and fingerprinting copies of the allegedly infringing file.  The fingerprinting portion of this verification process relied on software and services provided by another software vendor, Audible Magic, and

---

[29] The parties are still negotiating the terms of this source code review, but are not currently at issue as to that process.

1    Charter has accordingly requested documents explaining the services that Audible Magic offered and

2    that MarkMonitor enlisted Audible Magic to provide (RFP Nos. 3, 15, 21), as well as the details of the

3    interaction between MarkMonitor's and Audible Magic's software, including the exchange of digital

4    "fingerprint" information, related metadata, and "transaction logs" of the data received from Audible

5    Magic reporting the results of the verification checks requested by MarkMonitor.  (RFP Nos. 12, 16,

6    17, 18, 19, 22, 25, 43.)[30]  Charter has also requested copies of the allegedly infringing files that

7    MarkMonitor downloaded from the Internet for verification by Audible Magic, the databases that

8    MarkMonitor created for RIAA, and the evidence packages that it compiled, so Charter can analyze

9    for itself whether the evidence of infringement is what MarkMonitor and Plaintiffs represent it to be.

10    (RFP Nos. 12, 13, 14, 16, 19, 25.)[31]

11        Incredibly, MarkMonitor claims that it does not possess a single document responsive to these

12    requests.[32]  This claim lacks credibility, for at least the reason that MarkMonitor was contractually

13    obligated by the RIAA to "maintain" exactly this data,[33] and to be able to provide detailed descriptions

14    of its processes, and documentation to verify and prove the integrity of any evidence it gathers.[34]

15    "Maintaining" data is the opposite of not possessing it.  And MarkMonitor could not reasonably honor

16    its promise to demonstrate the integrity of its infringement detection, file verification, and evidence

17    packages, without actually keeping the data in question and without documentation demonstrating

18    how that data was collected.

19        In addition, Charter's requests seek basic documents that would be maintained by any

20    technology company because these documents are required in order to develop, use, and offer services

21    of the sort provided by MarkMonitor.[35]  For example, a company that develops software or provides

22    database services would need to have internal documentation that details the features the software and

23    the database are supposed to provide (e.g., technical specifications) and tracks the implementation of

24

25

26    [30] *See* Golinveaux Decl., Ex. 2 (Charter's Subpoena *Duces Tecum* on MarkMonitor).
      [31] *Id.*

27    [32] *See* Golinveaux Decl., Ex. 5 (MarkMonitor's Am. Resps. and Objs.).
      [33] *See, e.g.*, Golinveaux Decl., Ex. 10 at MM000032-34 (2012 SOW).

28    [34] *Id.* Ex. 7 at MM000004 (Master Agreement); Ex. 11 at MM000044, 59, 66 (2013 SOW).
      [35] *See* Declaration of Dr. Sandeep Chatterjee ("Chatterjee Decl."), ¶¶ 22, 23.

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

1   those features (e.g., change requests, version control logs).[36]   Similarly, a company selling such

2   services would need to generate and maintain documentation to train its personnel and to help

3   salespeople explain the service to prospective customers, as well as documentation to inform potential

4   customers regarding the features and operation of the service, and to inform existing customers of

5   updates in the platform.[37]   And technology companies have extensive quality assurance operations,

6   which, among other things, perform audits, both internal and external, including pre-deployment

7   testing and post-deployment testing, to ensure the reliability and quality of their software.[38]

8   Remarkably, MarkMonitor contends that it ran a software business for over a decade without

9   maintaining any of this necessary and standard documentation.[39]

10   **II.      MarkMonitor Must Produce Technical Information Regarding the RIAA Databases**

11   **(RFP Nos. 11-13)**

12          Likewise, though MarkMonitor was contractually obligated to create and maintain a ▇▇▇▇

13   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇   for the RIAA, MarkMonitor has neither

14   produced copies of ▇▇▇▇▇▇▇▇▇▇▇   nor granted access to them, as sought by RFP Nos. 11–13.[40]

15   Rather, MarkMonitor has directed Charter to two spreadsheets produced by Plaintiffs.[41]   But

16   MarkMonitor, as the recipient of this subpoena and the custodian of this data, is obligated to respond

17   to Charter's requests, not Plaintiffs.  And, as Charter has explained to MarkMonitor, the spreadsheets

18   as produced by Plaintiffs are missing at least some of the data that was provided to MarkMonitor by

19   Audible Magic regarding the downloaded files.[42]

20          Moreover, beyond failing to provide access to the databases in question, MarkMonitor has

21   once again provided no documentation concerning the structure and operation of those databases.

22   Among the missing documentation, for example, are database schema that would at least show what

---

[36] *See* Chatterjee Decl., ¶ 19.
[37] *See* Chatterjee Decl., ¶ 22.
[38] *See* Chatterjee Decl., ¶ 23.
[39] *See* Golinveaux Decl., Ex. 5 (MarkMonitor's Am. Resps. and Objs.); Ex. 3 (Feb. 25, 2020 Email from MarkMonitor to Charter, "Specifically, I have requested, as we discussed, a more definitive statement as to those requests for production of documents which we believe do not exist and/or are not within our client's possession, custody, or control . . .").
[40] *See* Golinveaux Decl., Ex. 2 (Charter's Subpoena *Duces Tecum* on MarkMonitor).
[41] *See* Golinveaux Decl., Ex. 3 (Feb. 25, 2020 email from MarkMonitor to Charter).
[42] *See* Golinveaux Decl., Ex. 6 at 5-6 (Apr. 6, 2020 letter from Charter to MarkMonitor identifying 10 types of data provided by Audible Magic, but missing from the spreadsheets produced by Plaintiffs).

10

1   data was maintained in the databases.[43]  Likewise, specifications for the databases, manuals describing

2   their operation (such as descriptions of the reports that they can generate), and related documents are

3   absent from MarkMonitor's production.  Such documentation was specifically requested by RFP Nos.

4   11–13 and it is necessary to allow Charter to assess the significance of the data produced, and to

5   definitively determine whether the produced spreadsheets contain all of the relevant data in

6   MarkMonitor's possession.[44]

7   **III.   MarkMonitor Must Produce Assessments of Its System (RFP Nos. 35–40)**

8            Because Plaintiffs rely on MarkMonitor's detection and infringement notices as their sole

9   evidence of copyright infringement, Charter also sought any assessments of the technical strengths

10  and weaknesses of MarkMonitor's technology and all documents related to any such assessments.[45]

11  Notably, several such assessments were reported in the press in relation to the RIAA's use of

12  MarkMonitor for the Copyright Alert System ("the CAS") project.  The CAS was an inter-industry

13  agreement entered into by major ISPs in the U.S. as well as content owners, including many of the

14  Plaintiffs.  In fact, with regard to the CAS, the RIAA teamed with several large ISPs (Comcast,

15  Verizon, AT&T, and others), and relied on MarkMonitor to provide copyright infringement detection

16  and notice generation in the same manner as for Charter.[46]

17           Charter has requested these analyses of MarkMonitor's infringement and notice generation

18  techniques (RFP Nos. 35–40), since they provide a direct check to Plaintiffs' claim that

19  MarkMonitor's techniques are "precise and meticulous" and that MarkMonitor-generated evidence is

20  the "gold standard in antipiracy work."[47]  While two of these analyses are part of the public trial record

21  in the *Sony v. Cox* case, and, thus, available to Charter, copies in the possession of MarkMonitor

22  (including, for example, any annotations) have not been produced, nor has any of the surrounding

23  ─────────────────────
    [43] *See* Chatterjee Decl., ¶ 21.
24  [44] *See* Golinveaux Decl., Ex. 2 (Charter's Subpoena *Duces Tecum* on MarkMonitor).
    [45] *Id.,* Reqs. 11, 12, 13.
25  [46] *See* Golinveaux Decl. Ex. 19 (CCI Recommits to Independent Evaluation of Content Methodology)
    (explaining that the Center for Copyright Information ("CCI") hired independent technology
26  consultants to analyze the system run by MarkMonitor to "ensure that alerts are accurate and sent to
    the right person"); *see also* Golinveaux Decl., Ex. 20 (Phase One and Beyond) at 6 (explaining that
27  "all the member content owners use the same vendor to generate notices, a company called
    MarkMonitor") and n.19 (explaining that Stroz Friedberg and Harbor Labs were hired to "review the
28  notice generation methodology employed by the content owners," i.e., the MarkMonitor system).
    [47]  *See* Golinveaux Decl., Ex. 15 (*Sony* Trial Tr. at 40:1-9, 2944:10-11).

**NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

1    correspondence, let alone any documents or other materials that MarkMonitor made available to the

2    third parties that performed these analyses.  Similarly, none of MarkMonitor's own internal audits,

3    which would be expected to ensure the reliability of a software product, have been produced.[48]

4    **IV.    MarkMonitor Must Produce All of the Charter Evidence Packages (RFP Nos. 9, 13)**

5         As discussed above, when MarkMonitor detected a verified instance of infringement it was

6    supposed to create and maintain an "evidence package" to provide a record of the alleged

7    infringement.[49]  MarkMonitor intends to rely on these "evidence packages" at trial, as it did in the

8    recent *Sony v. Cox* litigation.[50]  Charter requested all of the "evidence packages" created by

9    MarkMonitor for RIAA and information sufficient to understand what the "evidence packages"

10   purport to represent.[51]  MarkMonitor has not produced them.  In response to these requests,

11   MarkMonitor again directed Charter to documents produced by Plaintiffs, but the documents produced

12   by Plaintiffs do not satisfy Charter's request.[52]

13        Each infringement notice is supposed to be accompanied by an evidence package.[53]  While

14   Plaintiffs claim that over 660,000 infringement notices were generated by MarkMonitor and sent to

15   Charter, only 357,000 evidence packages have been produced.  Where are the remaining 300,000

16   "evidence packages"?

17        Charter also requested any reports or other communications from MarkMonitor to the RIAA

18   regarding detected infringement.[54]  Since MarkMonitor was contractually obligated to ▇▇▇▇▇▇

19

20

21
     ─────────────────────
22   [48] *See* Chatterjee Decl., ¶ 23.
     [49] *See* Golinveaux Decl., Ex. 13 at MM000065 (2015 SOW. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *see*
     *also* Ex. 9 at MM000019 (2012 SOW University Notice Program); Ex. 10 at MM000025 (2012 SOW);
24   Ex. 13 at MM000072, 74 (2015 SOW).
     [50] *See, e.g.*, Golinveaux Decl., Ex. 15 (*Sony v. Cox* Litig. Tr. at 2944:21-24, "Mr. Bahun went through
25   numerous data packages of evidence, and ultimately, as you saw, all of that data came together to
     demonstrate why MarkMonitor's evidence collection process worked.").
26   [51] *See* Golinveaux Decl., Ex. 2 (Charter's Subpoena *Duces Tecum* on MarkMonitor, Reqs. 9 and 13).
     [52] *See* Golinveaux Decl., Ex. 4 (Mar. 5, 2020 email correspondence from MarkMonitor to Charter).
27   [53] *See* Golinveaux Decl., Ex. 10 at MM000033 (2012 SOW) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
     ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
28       *See* Golinveaux Decl., Ex. 2 (Charter's Subpoena *Duces Tecum* on MarkMonitor, Req. 23).

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

1       ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆[55] MarkMonitor's regular reports *should*

2    corroborate the alleged infringement detailed in the "evidence packages," but MarkMonitor has also

3    failed to produce any of the reports that it provided to the RIAA.

4   **V.**     **MarkMonitor Must Produce All Documents Related to the CAS (RFP No. 35–40, 48)**

5       As discussed above, Plaintiffs used MarkMonitor's technology to perform infringement

6    detection and send notices to alleged infringers on Charter's network, as well as alleged infringers on

7    the networks of the ISPs that participated in the CAS.  Indeed, the same Master Agreement and

8    Statements of Work governed and defined the services provided by MarkMonitor pursuant to both the

9    CAS and the Charter investigation and notice operations.[56]  Based on the allegations in Plaintiffs'

10    complaint and their interrogatory responses, it is clear that Plaintiffs intend to argue that the

11    MarkMonitor infringement notices were intended to prove infringement to Charter and invoke action

12    on Charter's part.[57]  In addition, Plaintiffs contend that Charter is liable for its "failure to take

13    reasonable measures to terminate repeat infringers" in response to the MarkMonitor notices.[58]

14       Ironically, the public record discloses that Plaintiffs' own use of MarkMonitor's notices during

15    the CAS program directly contradicts Plaintiffs' present litigation positions.  For example, Jill Lesser,

16    the president of the industry organization that pursued the CAS, explained during hearings on Capitol

17    Hill that the one of the two primary goals of the CAS was "to educate consumers about the importance

18    of copyright protection," and that it was specifically not intended to call the ISPs to action.[59]  Indeed,

19    the industry made clear that even when an ISP received MarkMonitor infringement notices relating to

---

[55] *See* Golinveaux Decl., Ex. 11 at MM000053 (2013 SOW); Ex. 13 MM000073 (2015 SOW); Ex. 12 at MM000077, 87 (2014 SOW).

[56] *See* Golinveaux Decl., Ex. 7 (Master Agreement, MM000001); Ex. 8 at MM000016 (2011 SOW); Ex. 10 at MM000030 (2012 SOW); Ex. 11 at MM000048 (2013 SOW); Ex. 12 at MM000082 (2014 SOW); Ex. 13 (2015 SOW).

[57] *See* Golinveaux Decl., Ex. 1 (*Warner* Litig. First Am. Compl. ¶ 2, "Those notices advised Charter of its subscribers' blatant and systematic use of Charter's Internet service to illegally download, copy, and distribute Plaintiffs' copyrighted music through BitTorrent and other online file-sharing services. *Rather than working with Plaintiffs to curb this massive infringement, Charter did nothing, choosing to prioritize its own profits over its legal obligations.*" (emphasis added)).

[58] *Id.* at ¶ 10 ("Much of the misconduct alleged in this Complaint arises directly from Charter's forum-directed activities—specifically . . . Charter's receipt of and failure to act in response to Plaintiffs' notices of infringement; and Charter's failure to take reasonable measures to terminate repeat infringers.").

[59] *See* Golinveaux Decl., Ex. 21 (Jill Lesser, Tr. of Mar. 8, 2013 educational briefing entitled "Combating Piracy Online: The Copyright Alert System, a Voluntary Approach").

**NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

1    a subscriber, the industry did "not in any circumstance require an ISP to terminate a subscriber's

2    account."[60]  Charter is entitled to documents and communications regarding the CAS because they are

3    at least relevant to direct challenges that Charter is allowed to make to Plaintiffs' current claims

4    regarding the purpose and appropriate action related to MarkMonitor's infringement notices.

5        In addition, testimony provided in open court during the *Sony v. Cox* trial establishes that the

6    infringement investigations pursued by MarkMonitor on behalf of the RIAA had several fundamental

7    differences from the investigations pursued here; in particular, the CAS investigations were more

8    thorough (and more expensive) than the investigations done in this case.   The nature of those

9    differences, the reasons for them, and their impact on the accuracy of the MarkMonitor findings here

10    (as opposed to the CAS findings) are all fair game in this case.

11    **VI.**     **MarkMonitor Must Produce All Communications with Plaintiffs and the RIAA**

12        MarkMonitor has acknowledged that it (or its counsel) have had communications with

13    Plaintiffs (or Plaintiffs' counsel) related to documents responsive to Charter's document requests.[61]  If

14    nothing else, the fact that MarkMonitor has relied on Plaintiffs' (facially incomplete) production of

15    MarkMonitor documents and data as a substitute for MarkMonitor's own production of these materials

16    evidences communication and coordination between the two.   Likewise, the fact that MarkMonitor

17    and the RIAA had a relationship that extended back to at least 2008, was memorialized in a series of

18    detailed agreements, and entailed weekly reporting confirms that there had to have been

19    communications between them, both at the time of the alleged infringement and continuing through

20    the present.   MarkMonitor has withheld these communications on the basis that MarkMonitor serves

21    as a litigation consultant to *Plaintiffs*, and that its communications with Plaintiffs (or Plaintiffs'

---

[60] *Id.*

[61] *See, e.g.*, Golinveaux Decl., Ex. 5 (MarkMonitor Am. Resps. and Objs. to Req. Nos. 9, 13, 24–27, and 51 ("[MarkMonitor] has determined responsive information to this request *may be contained in information previously provided to Plaintiffs* . . .")) (emphasis added).

14

counsel) are subject to some privilege or immunity.[62]  As a preliminary matter, it is unclear whether this privilege is being asserted from the inception of the MarkMonitor–RIAA relationship, from the time of the Master Agreement, or from some more recent date in connection with this lawsuit; depending on the answer to those questions, any privilege would only apply to a subset of the parties' communications.  In any event, the assertion of privilege is problematic.  MarkMonitor bears the burden of proving any privilege or immunity, and the withheld documents must be placed on a privilege log so that Charter can challenge those privilege assertions.  *See McMorrow, et al. v. Mondelez Int'l, Inc.*, Case No. 17-cv-02327-BAS (JLB), 2019 WL 3852498, at *4 (N.D. Cal. Apr. 19, 2019).  MarkMonitor has declined to provide any such privilege log.  Similarly, MarkMonitor should produce the agreement evidencing its relationship as a litigation consultant, as the details of any such agreement are fundamental to the assertion of privilege.

MarkMonitor's communications with the RIAA are certainly relevant for numerous reasons, not least of which is that MarkMonitor was performing infringement detection, and sending notices, at the RIAA's direction and it was ██████████████████████████.  All of the communications relating to this work, and the reports it entailed, are discoverable.  Moreover, the MarkMonitor–RIAA contracts indicate that there were various options available, related to the level of accuracy in MarkMonitor's infringement detection.  What level of accuracy was MarkMonitor directed to employ, and why?  What was MarkMonitor told regarding the purpose of sending infringement notices, and the supposed efficacy of those notices?  What did MarkMonitor tell the RIAA on these issues?  These are all critical issues in the litigation, and MarkMonitor has provided no explanation why documents bearing on them would be protected from production, nor has MarkMonitor provided a privilege log as required when withholding documents on the basis of privilege or work product immunity.  *Id.*

## VII.   MarkMonitor Must Produce Document Retention Policies and Privilege Logs (RFP Nos. 20, 47)

As discussed above, MarkMonitor has said that it does not possess documents responsive to

---

[62] *See* Golinveaux Decl., Ex. 4 (Mar. 5, 2020 email correspondence from MarkMonitor to Charter, "MarkMonitor also serves, as it did in the *Sony* case, as a litigation consultant to the plaintiffs and therefore is not going to produce communications with plaintiffs or their counsel which is protected from disclosure under the attorney work product doctrine, attorney-client privilege, is otherwise privileged or is beyond the scope of the subpoena requests.").

1   many of Charter's most basic requests.  Why?  Were the missing documents destroyed or lost, either

2   during the ordinary course of business or otherwise?  Courts have consistently found that document

3   retention polices are discoverable, especially in circumstances where the producing party contends

4   that they no longer possess responsive documents.  *See, e.g.*, *Sharma v. BMW of N. Am. LLC*, No. 13-

5   cv-02274-MMC (KAW), 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) (finding the information

6   relevant as the "document retention policies may help Plaintiffs determine the universe of responsive

7   documents and evaluate any gaps in document production"); *Montgomery v. Wal-Mart Stores, Inc. et

8   al.*, 12-cv-3057-JLS (DHB), 2015 WL 11233390, at *3 (S.D. Cal. Sep. 4, 2015); *Bakhtiari Corp. v.

9   Register Tapes Unlimited Inc.*, No. 12-cv-5183 LHK (PSG), 2013 WL 2253182, at *3 (N.D. Cal. May

10  22, 2013).

11          Similarly, to the extent that MarkMonitor has withheld documents on the basis of privilege,

12  Charter is entitled to a privilege log so that it may challenge MarkMonitor's privilege assertions.  Fed.

13  R. Civ. P. 26(b)(5)(A)(ii).  *See supra McMorrow* at *4.

14                                  **CONCLUSION**

15          Based on the foregoing, Charter respectfully requests that the Court grant its motion to compel

16  and order MarkMonitor to: (1) comply fully with RFP Nos. 6, 9, 11–27, 31, 35–40, 43, 47, 48 of the

17  Subpoena no later than June 5, 2020.

18

19  Dated: May 11, 2020                          WINSTON & STRAWN LLP

20                                          By:    /s/ Jennifer A. Golinveaux
                                                   Jennifer A. Golinveaux (SBN: 203056)
21                                                 Winston & Strawn LLP
                                                   101 California Street, 35th Floor
22                                                 San Francisco, CA  94111
                                                   Tel: (415) 591-1000
23                                                 Fax: (415) 591-1400
                                                   Email: jgolinveaux@winston.com
24
                                                   Krishnan Padmanabhan (SBN: 254220)
25                                                 Winston & Strawn LLP
                                                   200 Park Avenue
26                                                 New York, NY  10166
                                                   Tel: (212) 294-6700
27                                                 Fax: (212) 294-4700
                                                   Email: KPadmanabhan@winston.com
28

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

Counsel for Movant
CHARTER COMMUNICATIONS, INC.

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC.,    ) | Case No. _____ - MISC |
|      Movant,                ) | |
|        v.                ) | **[Proposed] Order** |
| MARKMONITOR, INC.          ) | |
|      Respondent.        ) | |

THIS MATTER having come before the Court on the Motion to Compel Compliance with Subpoena *Duces Tecum* filed by Charter Communications, Inc., and good cause having been shown, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the Respondent, MarkMonitor, Inc., _____.

**IT IS SO ORDERED.**

Dated: _____          _____

                                        JUDGE OF THE DISTRICT COURT

**CERTIFICATE OF SERVICE**

I hereby certify that I have made service of the foregoing NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM* AND PROPOSED ORDER by U.S. Mail and email on May 11, 2020, addressed to:

Andrew D. Castricone
acastricone@grsm.com
GORDON & REES
275 Battery Street, Suite 2000
San Francisco, CA
*Counsel for Respondent MarkMonitor, Inc.*

Jeffrey M Gould
jeff@oandzlaw.com
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
*Counsel for Plaintiffs in the Warner litigation*

*/s/ Krishnan Padmanabhan*
Krishnan Padmanabhan