**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

WARNER RECORDS INC., *et al.*,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**CHARTER COMMUNICATION, INC.'S RESPONSE TO PLAINTIFFS' PARTIAL
OBJECTION TO SPECIAL MASTER'S MAY 29, 2020 ORDER RESOLVING
<u>DISCOVERY DISPUTES</u>**

## <u>TABLE OF CONTENTS</u>

Page

I.    IT WAS NOT AN ABUSE OF DISCRETION FOR THE SPECIAL MASTER TO LIMIT PLAINTIFFS' REQUEST FOR MONTHLY SUBSCRIBER REVENUE TO THE RELEVANT TIME PERIOD ................................................................................................................... 3

II.   IT WAS NOT AN ABUSE OF DISCRETION FOR THE SPECIAL MASTER TO ORDER PLAINTIFFS TO RESPOND TO NOTICE INTERROGATORIES ............................................. 8

    A.    The Procedural History Confirms That the Special Master Permitted Extensive Argument and Re-Argument Before Reaching Her Decision ........................................................... 11

    B.    The Special Master Correctly Assessed the Parties' Respective Burdens ........................ 13

    C.    Responding to Charter's Interrogatories Does Not Require Expert Analysis .................. 15

III.  IT WAS NOT AN ABUSE OF DISCRETION FOR THE SPECIAL MASTER TO ORDER A TIMELY RESPONSE TO DISCOVERY IN THIS CASE ......................................................... 17

    A.    The Special Master Rightly Ordered Plaintiffs to Respond to the Derivative Works Interrogatories ...................................................................................................................... 17

    B.    The Special Master's Order Requiring a Response to the Derivative Works Interrogatories by July 27, 2020 Was Not an Abuse of Discretion .................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Canus Prods., Inc.*,
   173 F. Supp. 2d 1044 (C.D. Cal. 2001) ................................................................... 7

*Atchison v. Saddleback Metro. Dist.*,
   2008 WL 4681915 (D. Colo. Oct. 21, 2008) ......................................................... 15

*Baldwin v. US*,
   2012 WL 7051296 (D. Colo. Sept. 17, 2012) .......................................................... 3

*Bayview Loan Servicing, LLC v. Boland*,
   259 F.R.D. 516 (D. Colo. 2009) ..................................................................... 14, 18

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   149 F. Supp. 3d 634 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th
   Cir. 2018) ..................................................................................................................... 6

*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*,
   175 F.R.D. 646 (C.D. Cal. 1997) ........................................................................... 16

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
   2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ......................................................... 6

*Ellison v. Robertson*,
   189 F. Supp. 2d 1051 (C.D. Cal. 2002) ................................................................... 5

*Ellison v. Robertson*
   357 F.3d 1072 (9th Cir. 2004) ............................................................................. 5, 6

*F.T.C. v. Exxon Corp.*,
   636 F.2d 1336 (D.C. Cir. 1980) ............................................................................. 19

*King v. Solvay S.A.*,
   2014 WL 4267457 (D. Colo. Aug. 28, 2014) ........................................................ 14

*Perfect 10, Inc. v. Giganews, Inc.*,
   2014 WL 8628031 ..................................................................................................... 6

*Ramos v. Banner Health*,
   2018 WL 4700707 (D. Colo. Aug. 8, 2018) ............................................................ 3

*Rivera v. United Parcel Serv.*,
   325 F.R.D. 542 (S.D.N.Y. 2018) ........................................................................... 14

*Sony Music Entm't v. Cox Commc'ns, Inc.*,
   2020 WL 3121306 (E.D. Va. June 2, 2020) ................................................... *passim*

*Stross v. River's Edge Realty, LLC,*
  2018 WL 5733142 (W.D. Tex. Aug. 3, 2018) ................................................................. 6

*UMG Recordings, Inc. et al. v. Bright House Networks, LLC,*
  Case No. 8:19-cv-710-MSS-TGW (M.D. Fla.) ................................................................. 4

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC,*
  2018 WL 1096871 (W.D. Tex. Feb. 28, 2018) ................................................................. 4

*UMG v. BHN,*
  2020 WL 3957675 (M.D. Fla. July 8, 2020) ................................................................. 4, 7

*United States v. Caballero,*
  277 F.3d 1235 (10th Cir. 2002) ................................................................. 16

*United States v. High Plains Livestock, LLC,*
  2016 WL 10100734 (D.N.M. July 12, 2016) ................................................................. 14

*Univ. of Texas at Austin v. Vratil,*
  96 F.3d 1337 (10th Cir. 1996) ................................................................. 3

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................. 10

Fed. R. Civ. P. 12(b)(6) ................................................................. 4

Fed. R. Civ. P. 33 ................................................................. 14

Fed. R. Civ. P. 33(d) ................................................................. 14

Fed. R. Evid. 702 ................................................................. 15

Defendant Charter Communications, Inc. ("Charter") hereby responds to Plaintiffs' Partial Objection to Special Master's May 29, 2020 Order Resolving Discovery Disputes. ECF 199 ("Objection").

## INTRODUCTION

Charter is an internet service provider ("ISP") that provides high speed internet service through which subscribers have the freedom to access the internet as they choose. Plaintiffs are multi-billion-dollar music conglomerates that represent 65 of the world's largest record labels and music publishers, who have sued Charter based on theories of secondary copyright infringement for 11,027 separate works-in-suit. Plaintiffs claim that Charter should have done more to control certain allegedly infringing activity taking place through the accounts of its third-party subscribers. Plaintiffs have not sued the allegedly infringing subscribers or BitTorrent, or any the developers of the other peer-to-peer protocols, that they claim was used for the alleged underlying acts of infringement. Plaintiffs allege that Charter should have known about infringing activity through notices of alleged infringement sent by the agent of the record labels, the RIAA. They take this position despite the facts that none of the music publishers sent such notices; Plaintiffs sent no notices of alleged infringements to Charter during the Claim Period for the works in suit after March 2015—the last year of the "Claim Period"; and the notices Charter did receive specified only a fraction of the works in suit.

Plaintiffs have carefully selected a dated snapshot as their Claim Period—before Plaintiffs figured out how to take advantage of the massive potential of the internet, which in recent years has brought Plaintiffs' profits to record levels, driven by streaming revenues from those accessing the internet through ISPs like Charter. Nevertheless, through this and their other lawsuits, Plaintiffs seek windfall damages against ISPs like Charter for what happened during the Claim Period— seeking statutory damages here in excess of $1.6 billion.

Plaintiffs are challenging multiple rulings issued by Special Master Regina Rodriguez. First, Plaintiffs are challenging the Special Master's Order limiting discovery of monthly subscriber revenue to the "Discovery Period" (March 24, 2012 to May 17, 2016)—the entire Claim Period at issue plus one year prior, in connection with Plaintiffs' Request for Production ("RFP") 33. The Special Master followed the Court's prior ruling on a similar request, and rejected Plaintiffs' demand that this production extend beyond the Discovery Period. That ruling is unassailable, as subscriber revenue information for this later time period is wholly irrelevant and thus the production is not proportional to the needs of this case. *See* ECF 181 at 35-36.

Plaintiffs are further seeking to avoid—or at least delay—the requirement to respond to Charter's Interrogatories 13-15, which seek basic factual information about Plaintiffs' claimed works, and the notices at issue. Plaintiffs appear to prefer to repeat the uncertainty that marred the recent *Cox* case, where more than seven months after the jury trial, the court and the parties are still sorting out the answer to some of these questions necessary to finally ascertain the number of works at issue (and thus eligible for an individual statutory damages award) through post-trial rulings;[1] determinations that will substantially reduce Plaintiffs' billion-dollar verdict in that case. Plaintiffs have had ample opportunity to present, argue, reargue, and also moved to reconsider these issues before the Special Master. For any or all the reasons discussed during the hearing, in the Order, and herein, the Court should uphold the Special Master's rulings.

## LEGAL STANDARD

The order appointing the Special Master states that "[a]ny order, report, or recommendation of the Master on nondispositive motions (unless it involves a finding of fact or conclusion of law) will be deemed a ruling on a procedural matter" which can "only" be set aside if "it constitutes an

---

[1] *See Sony Music Entm't v. Cox Commc'ns, Inc.*, 2020 WL 3121306, at *26 (E.D. Va. June 2, 2020).

abuse of discretion." ECF 143, ¶ 6. The discovery rulings to which Plaintiffs object are "procedural matters." *See, e.g.*, *Ramos v. Banner Health*, 2018 WL 4700707, at *2 n.2 (D. Colo. Aug. 8, 2018) ("scope of discovery" is a "procedural matter.") (quoting *Callwave Comm'c LLC v. AT&T Mobility LLC,* 2016 WL 3450736, at *1, n.3, n.4 (D. Del. June 16, 2016)); *see also Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 n.3 (10th Cir. 1996). To satisfy the "abuse of discretion" standard, the Special Master's Orders must be deemed to be based on "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *See Baldwin v. US*, 2012 WL 7051296, at *3 (D. Colo. Sept. 17, 2012) (finding that the plaintiff's allegations of erroneous discovery rulings and fee allocations did not properly demonstrate that the Special Master met the requirements for abuse of discretion, which is "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment") (citation omitted). As explained herein, the Special Master did not abuse her discretion.

## ARGUMENT

## I.   IT WAS NOT AN ABUSE OF DISCRETION FOR THE SPECIAL MASTER TO LIMIT PLAINTIFFS' REQUEST FOR MONTHLY SUBSCRIBER REVENUE TO THE RELEVANT TIME PERIOD

The Special Master's finding that Plaintiffs' request for revenue information beyond the Claim or Discovery Period was irrelevant to their claims is supported by prior rulings of this Court, the needs of this case, and is consistent with relevant case law. In denying Plaintiffs' RFP 33, the Special Master reviewed the Court's prior ruling on a near-identical issue and agreed that Plaintiffs' request for revenue information for the accused subscribers should be restricted to the Discovery Period. *See* Ex. 8 at 148:15-19 (the Special Master noted "I will look back again at Judge Hegarty's ruling on this issue [RFP 33] … ."); *see also* ECF 181 at 35-36 (denying Plaintiffs' RFP 33).[2] Plaintiffs' request exceeds the scope of permissible discovery because it extends beyond

---

[2] Per the Court's Civil Practice Standards, references the exhibit numbers are to those exhibits attached to Plaintiffs' Objections and references to exhibit letters are to those attached hereto.

the date when Plaintiffs sent their final notice to Charter in March 2015 and the Claim Period specified in their Complaint. *See* ECF 123 at ¶ 5 (First Amended Complaint).

Plaintiffs insist that this information is relevant because Charter charges its subscribers subscription fees for general internet use, so thus Charter derived a "financial benefit" from its subscribers' alleged infringing activity on the network that apparently extends forever. *See id.*, ¶¶ 2, 115. Courts have rejected that these general internet fees are sufficient to satisfy a "direct financial benefit" as a matter of law. Indeed, invoking the same period for which Plaintiffs have sued Charter here, Plaintiffs have sued Bright House Networks ("BHN"), which merged with Charter in May 2016. BHN is now a subsidiary of Charter. Plaintiffs chose both to sue Charter in Colorado and sue the now-defunct BHN in Florida. *See UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, Case No. 8:19-cv-710-MSS-TGW (M.D. Fla.) ("*UMG v. BHN*"). While this Court allowed Plaintiffs' vicarious liability claim to stand on a Rule 12(b)(6) motion to dismiss, the *UMG v. BHN* court dismissed with prejudice an identical claim, on the ground that the "direct financial benefit" requirement for vicarious liability was not satisfied when infringing content was not the "main draw" to the internet service. *UMG v. BHN,* 2020 WL 3957675, at *1, *5-6 (M.D. Fla. July 8, 2020). That ruling is consistent with *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2018 WL 1096871, at *10 (W.D. Tex. Feb. 28, 2018), *adopted by* 2018 WL 2182282 (W.D. Tex. Mar. 26, 2018) (Plaintiffs' theory "would impose liability on every ISP, as the music at issue is available on the Internet generally, as is the BitTorrent protocol, and is not something exclusively available through [the ISPs] services").

In any event, even with the vicarious liability claim still in the case, there is no justification to extend discovery about subscriber revenue beyond the Claim Period or Discovery Period. Plaintiffs' request seeks the revenue information from May 17, 2016 to the present for any

subscriber identified in Plaintiffs' notices. This Court, as well as the Special Master, have repeatedly found this period of subscriber revenue to be irrelevant to Plaintiffs' claims.

Plaintiffs previously moved before this Court on RFP 19, which sought identical revenue information on a per-subscriber basis through the present, but the Court expressly restricted it to the Discovery Period. Ex. 3 at 34:17-25, 46:9-47:15. Plaintiffs' Objection regarding RFP 33 seeks to circumvent the Court's ruling for RFP 19, which established the relevant timeframe in this case for subscriber revenue information. Consistent with the Court's and the Special Master's rulings on the proper scope of subscriber revenue, Charter has already produced available revenue data for the accused subscribers during the Discovery Period, which includes data for over a year after the last notice Plaintiffs sent during the Claims Period (Bates No. CHA_00001359). *See also* Ex. A. Plaintiffs' request for data through the present would require Charter to produce information for nearly 64 months after the Claim Period at issue. As the Special Master warned, Plaintiffs' expanded proposal "could go on forever" and "[a]t some point, there has to be a logical endpoint." *See* Ex. 8 at 140:24-141:6. Plaintiffs have articulated no legal or factual basis to support their claim that their inquiry into Charter's finances should be limitless and have no "logical endpoint."

Indeed, neither (1) the cases Plaintiffs cite nor (2) the Court's Recommendation extend the boundaries of discovery beyond the relevant time periods, let alone beyond the period of alleged infringing activity. Rather, these cases only restate the direct financial benefit standard. *See, e.g., Ellison v. Robertson* 357 F.3d 1072, 1079 (9th Cir. 2004) (clarifying the direct financial benefit standard but issuing no guidance on the scope of discovery). In fact, the *Ellison* court stated that evidence relating to a period after the plaintiff sent the only infringement notice recognized by the defendant and two days after the plaintiff filed suit, was "hardly compelling." *See Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1054 (C.D. Cal. 2002); *see also Ellison*, 357 F.3d at 1079. None

of the cases Plaintiffs rely on suggest general revenue from subscribers should be counted for years outside of the relevant Claim Period.

Courts have similarly limited the time period for discovery related to vicarious infringement claims. *See Stross v. River's Edge Realty, LLC*, 2018 WL 5733142, at *2 (W.D. Tex. Aug. 3, 2018) (sustaining defendant's objection to plaintiffs' discovery requests, which sought financial information in connection with the infringement, as overbroad because there was no limitation on the relevant time period). While Plaintiffs also cite the Court's discussion of *Ellison,* that was about whether Plaintiffs' vicarious liability claim could survive a motion to dismiss; *not* about vastly expanding the permissible discovery period. *See* ECF 71 at 11-12.

The cases Plaintiffs rely on and cited in the Court's Recommendation recognize that "infringing activity" is an essential element for vicarious infringement. *See Ellison*, 357 F.3d, at 1079 (there must be a "causal relationship between the *infringing activity*" and the financial benefit) (emphasis added); *see also Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015) (finding defendant had a clear "economic incentive to tolerate *infringing conduct*") (emphasis added). In *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628031, the court explained that "[t]his action is a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted images; it is not a lawsuit against copyright infringement in general." *Id*. at *4.

Plaintiffs claim that their notices were how they informed Charter of supposed infringing activity on its network, yet, during the Claims Period, they stopped sending Charter these indicators in March 2015—more than a year before the end of the Claims Period. *See* ECF 123 (FAC), ¶¶ 2, 10. What is actionable should be the allegedly "infringing activities *at issue in th[e] case*" for which Plaintiffs sent notices. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149

F. Supp. 3d 634, 676 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628031, at *4 (C.D. Cal. Nov. 14, 2014), *aff'd,* 847 F.3d 657 (9th Cir. 2017)).

Plaintiffs have not cited any authority to suggest that they should receive revenue information long after the Claim Period at issue. Indeed, the "financial benefit" prong requires a "direct financial benefit" stemming from the infringing activity—not any financial gain whatsoever from a subscriber's general internet use. *See Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1050 (C.D. Cal. 2001) ("[t]he direct financial benefit must stem from the fact that substantial numbers of customers are drawn to a venue with the explicit purpose of purchasing counterfeit goods" and the profits must "flow directly from customers who want to buy the counterfeit recordings") (citation omitted). Otherwise, it would be a "limitless expansion of vicarious liability into spheres wholly unintended by the court." *Id.*; *see also UMG v. BHN*, 2020 WL 3957675, at *6 ("Significantly, Plaintiffs' expansive interpretation of the draw theory effectively eliminates the requirement that the defendant receive a direct financial benefit from drawing the infringer to available infringing content. … At best, any such benefit would be indirect and attenuated rather than, as the foundational case law requires, 'obvious and direct.'") (citation omitted). Plaintiffs' latest attempt to overturn the Special Master and the Court on their requests for revenue information from May 17, 2016 to the present should be denied.

Moreover, though Plaintiffs admit they have received individual subscriber revenue data from Charter, they mischaracterize its scope. Plaintiffs try to minimize Charter's production of responsive revenue data as "a single spreadsheet showing . . . billings," but the spreadsheet produced is the complete revenue Charter obtained from over 11,000 subscribers identified in Plaintiffs' notices for the Discovery Period. Plaintiffs have also omitted Charter's agreement to

produce revenue data for over 11,000 more accounts it recently uncovered through a complex DHCP log matching process.

Plaintiffs' argument that they require additional revenue information because Charter "deleted ticket data," ignores that the revenue information is entirely separate from the ticket data, which is only available going back a certain length of time because of Charter's entirely reasonable retention policies. *See* Ex. B (Charter informed the Court and Plaintiffs that certain ticket data did not exist because of Charter's retention policies); *see also* Ex. 3; *see also* Ex. 5 at 108:9-19 ("Based on the retention policies, we've been able to identify about 38,000 ticket information data packets for the notices that they provided around 11,000 subscribers, and we're working on the financial data"). Had Plaintiffs simply notified Charter of their claims after they sent their final notice in March 2015 instead of waiting a full year as they did here, the requested ticket data would have been subject to a litigation hold. It is improper to extend discovery beyond the Discovery Period because of Plaintiffs' failure to timely inform Charter of their claims, and to reach back years to a snapshot in time to strategically define the Claim Period.

Plaintiffs' request seeks an additional 50 months (and counting) of revenue data even though it is untethered to their claims. The Special Master's finding that the information would have minimal probative value carefully weighed the amount of additional data required by Plaintiffs' request against the amount of data they have already received that was directly tied to their notices. Plaintiffs' contention that all that would be involved is a simple query misconstrues the process and ignores the plain lack of relevance in the first place.

For all these reasons, the Special Master's Order should stand.

## II.   IT WAS NOT AN ABUSE OF DISCRETION FOR THE SPECIAL MASTER TO ORDER PLAINTIFFS TO RESPOND TO NOTICE INTERROGATORIES

With regard to MPP Interrogatory 15 and RCP Interrogatory 14 (the "Notice

Interrogatories"), the Special Master found that:

> Contrary to Plaintiffs' assertion, the information sought by MPP interrogatory 15 and RCP interrogatory 14 is basic factual information that will need to be set forth in order for Plaintiffs to establish liability. Plaintiffs seek to hold Charter secondarily liable for infringement based on Charter's purported knowledge of its subscribers' alleged infringement. Plaintiffs allege that Charter possessed the requisite knowledge of infringement of each work in suit by virtue of the infringement notices sent to Charter by the Record Label Plaintiffs. However, Plaintiffs now argue that determining which work is identified in a particular notice would require expert analysis. I find these arguments to be in conflict.

ECF 190 at 10.

Charter requests that Plaintiffs identify which of the 11,027 works-in-suit are identified in the notices sent to Charter. Critically, the vast majority of Plaintiffs' notices identify on their face only a single sound recording. Plaintiffs, however, take the position that these notices implicate many additional sound recordings not listed in the notice where the sound recording is allegedly contained on a torrent file with many other songs referenced only by a hash number. Plaintiffs' notices do not identify any music compositions—though the Music Publisher Plaintiffs are suing on 4,064 separate works in this case.

According to Plaintiffs, these un-identified works are implicated by Plaintiffs' notices by connecting a series of data sets created for the purpose of litigation by Plaintiffs and the third-parties with whom they work (*i.e.*, the RIAA, MarkMonitor, and Audible Magic). Plaintiffs have explained part of this process, which, as the Special Master found, requires no expert analysis or opinion. However, Plaintiffs left one integral step out of their explanation. Plaintiffs did not explain how they tie the music file allegedly contained with the torrent shared by a Charter subscriber to the specific work asserted in this case.

The mere fact that a torrent file shared by a Charter subscriber is titled "Rolling Stones Greatest Hits," and one of the files listed on that song/torrent is titled "Gimme Shelter," does not mean that "Gimme Shelter" is actually contained on that torrent. And even assuming that a copy

of "Gimme Shelter" is contained on that file, it does not mean that it is the same version Plaintiffs assert in this case. Plaintiffs are suing for infringement of a specific copyrighted work, which is identified by U.S. Copyright Office registration number on Exhibit A and B to Plaintiffs' First Amended Complaint. Plaintiffs could be suing for the studio-recorded version of "Gimme Shelter" but the version contained on the torrent file could be a live version, an alternate recording, or Patti Smith's acclaimed cover of the song. It could also be a corrupted file or something else entirely.

Tying Plaintiffs' notices to the specific works in suit is essential because Plaintiffs' notices, and the works in suit they purportedly implicate, form the basis of Plaintiffs' contributory liability claim against Charter through which they seek in excess of $1.6 billion in statutory damages. Plaintiffs must show that each of the 11,027 works in suit were directly infringed by Charter's subscribers, and that Charter had knowledge of that infringement. The notices are the key to both these elements.   Because it is Plaintiffs who determined which works to sue on in this case, and it is Plaintiffs who assert that these 11,027 works are implicated in at least one notice, it is Plaintiffs' burden, at least initially, to demonstrate that a particular torrent file contains a copy of the specific work asserted. The Special Master recognized this and ordered Plaintiffs to respond to the Notice Interrogatories.

Plaintiffs' Objection of the Special Master's Order is premised on two factual inaccuracies. First, Plaintiffs assert that collecting this information would be equally burdensome for each party. Not so. Consistent with their Rule 11 obligations in bringing this case, Plaintiffs have already determined the specific works-in-suit that are implicated by notices in this case, something Charter could not do without confirming the same with Plaintiffs. Thus, Plaintiffs' burden is lower. Second, Plaintiffs inaccurately claim that what the Special Master ordered with respect to these interrogatories requires expert analysis. While it may require Plaintiffs to devote some time and

resources to connect the dots—that is different from expert analysis or opinion, which the parties will disclose at a later point in this case. The Special Master recognized these distinctions and, accordingly, ordered Plaintiffs to respond to Charter's interrogatories. Thus, the Special Master's Order was not an abuse of discretion.

### A.    The Procedural History Confirms That the Special Master Permitted Extensive Argument and Re-Argument Before Reaching Her Decision

The Special Master considered extensive briefing and argument before ordering Plaintiffs to respond to the Notice Interrogatories. Initially, the parties submitted briefs on this issue. Ex. C & Ex. 10. Next, at the May 15, 2020 hearing, the parties devoted a substantial amount of time discussing what Charter sought, why it was essential to the case, and the process by which the interrogatory could be answered. Ex. 15 at 48:13-70:10. The Special Master acknowledged that the information sought by the Notice Interrogatories is critical but requested supplemental briefing on the question of whether Plaintiffs and Charter shared the same burden. *Id.* at 66:19-23, 68:14-19:11. The parties each submitted briefs. Plaintiffs explained the process by which one can tie notices to torrent files, claiming Charter could perform the same process. But Plaintiffs did not explain how they tied the contents of the torrent files to the specific works in suit. Ex. 16. Charter explained that it is Plaintiffs who readily possess the information to answer the interrogatory and should be the party who provides it. Ex. 17. Following the hearing and the supplemental briefing, the Special Master ordered Plaintiffs to respond to the Notice Interrogatories because the information was indisputably relevant and Charter's burden in responding was greater than Plaintiffs' burden. ECF 181 at 24-25.

Plaintiffs next sent the Special Master a letter seeking "clarification" of the scope of the Special Master's Order. Ex. D. While Plaintiffs stated that they sought "clarification of the timing and process through which Plaintiffs are expected to provide information responsive to [the Notice

Interrogatories]," *id.* at 1, Plaintiffs also re-argued why Plaintiffs did not believe they should be required to comply with the Court's Order. *Id.* at 2. In addition, Plaintiffs argued that the information sought by the Notice Interrogatories required "expert analysis" and that their own expert would respond "somewhat along the lines of what Charter seeks (though not exactly)." *Id.* Charter argued that Plaintiffs' loose use of the term "expert" was improper and was intended to mislead the Special Master, as Plaintiffs' expert in the closely-related *Sony* case did not provide the information Charter seeks here. The whole purpose of the Notice Interrogatories was so that Charter could obtain verified, unrebutted representations regarding the most basic evidence in this case—which works in suit are alleged by Plaintiffs to be infringed by which notices.

After receiving the supplemental briefing, the Special Master ruled on Plaintiffs' request for clarification and reconsideration. ECF 190. In that Order, the Special Master reiterated that Plaintiffs must "identify *each* of the notices that corresponds to *each* of the works in suit." *Id.* at 10. Second, with respect to Plaintiffs' request for reconsideration, the Special Master declined to reconsider the "order in light of the volume of information at issue[]" because the Notice Interrogatories seek "basic factual information that will need to be set forth in order for Plaintiffs to establish liability." *Id.* The Special Master acknowledged that the notices of alleged infringement, and the works in suit they purportedly implicate, form the basis for Charter's alleged knowledge, which is a critical element of Plaintiffs' contributory liability claim. *Id*

In addition, the Special Master explicitly rejected Plaintiffs' contention that they would require an expert to respond to the Notice Interrogatories. The Special Master held as much because Plaintiffs had explained the process for tying works in suit to notices in their supplemental briefing and "[g]iven the number of works in suit and notices sent, that process will undoubtedly take time to complete. However, the mere fact that responding to discovery will be time consuming

does not render discovery improper." *Id.* a 11.

Finally, the Special Master again found that the burden on Plaintiffs is less than Charter's burden for the same reasons set forth in the May 29 Order, namely that the notices do not identify on their face the vast majority of the works in suit and, just as critically, it is Plaintiffs who are in the position to determine whether the particular torrent files shared by Charter subscribers contain copies of the specific works Plaintiffs assert in this case. *Id.*

## B.      The Special Master Correctly Assessed the Parties' Respective Burdens

Plaintiffs' burden in responding to the Notice Interrogatories is necessarily lower than Charter's burden, and thus the Special Master's order was not an abuse of discretion.

Plaintiffs argue that the Special Master's burden finding is erroneous for two reasons. Plaintiffs take issue with the May 29 Order's reference to Charter's argument to the Special Master that Plaintiffs "had to have determined which of their music compositions are implicated by the RCP's notices and the RCP had to have determined which of their unidentified 5,000-plus sound recordings are implicated by their notices." *Id.* (citing Ex. 16 at 2). But that statement is entirely accurate, as Plaintiffs conceded in their Objection. ECF 199 at 11 ("[I]n preparing to file this case, Plaintiffs confirmed that each work in suit was supported by *at least one* notice."). And it is because Plaintiffs have already made this determination that their burden is necessarily less than Charter's burden, as the Special Master found. That Plaintiffs must now use that information to tie each of their notices to the works in suit does not render the Special Master's burden finding erroneous. As discussed above, the Special Master found that the fact that the analysis will take time does not change the fact that Plaintiffs' burden is necessarily less than Charter's burden.

In addition, Plaintiffs argued before the Special Master, and again in their Objection, that "[t]he requested discovery does not exist in Plaintiffs' files." *Id.* at 11 (citing Ex. 18 at 1). Charter did not propound a document request, it propounded an interrogatory, so whether a document exist

in "Plaintiffs' files" or not is irrelevant,[3] which is why the Special Master rejected that argument. What is relevant is whether Plaintiffs *can* answer the question, which they admitted they can do, and whether Plaintiffs' burden is less than Charter's, which, as discussed above, it necessarily is.[4]

Second, Plaintiffs argue that there is "no factual support for the Special Master's conclusion that it would be easier for Plaintiffs to undertake the requested analysis that for Charter to do it." ECF 199 at 11. That is false. Charter argued at length to the Special Master, as is outlined above, *see supra* 10-12, that Plaintiffs are better positioned to assess which of their specific works in suit is implicated by each notice. Thus, regardless of the fact that the parties may equally be able to follow the hash id identified in a notice to the torrent associated with that hash id and examine what files are purportedly contained on that torrent, that does not answer the question of what works in suit are allegedly contained within that torrent. Charter seeks Plaintiffs' verified representation regarding what each of the notices they sent Charter contains so that Charter can determine whether the notice indeed identifies an infringing file or not. Plaintiffs are better situated than Charter to answer that question.

It is for this reason that Plaintiffs' response to the Notice Interrogatories cannot be satisfied by the production of documents. Plaintiffs cite *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 519 (D. Colo. 2009) for the proposition that documents can be produced in lieu of written responses, pursuant to Rule 33(d). In that case, the producing party provided detailed compilations

---

[3] *See United States v. High Plains Livestock, LLC*, 2016 WL 10100734, at *3 (D.N.M. July 12, 2016) ("Litigants are often required to compile information from disparate sources when responding to an interrogatory."); *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 546 (S.D.N.Y. 2018) ("A party served with interrogatories under Rule 33 has a duty to 'compile information within his control' and provide 'all information available' in his responses) (quoting *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 309 F.R.D. 1, 14 (D.D.C. 2015)).

[4] Plaintiffs' citation to *King v. Solvay S.A.*, 2014 WL 4267457, at * 4 (D. Colo. Aug. 28, 2014) is misplaced, as Charter does not speculate regarding Plaintiffs' burden as did the requesting party in that case. Charter recognizes that there is a substantial burden in responding to the Notice Interrogatories, though that burden is more than justified given the magnitude of the case and the importance of the requested information

of data that allowed the requesting party to fully analyze the loans at issue, which the court deemed sufficient based on the nature of the request at issue. Here, however, there are no documents Plaintiffs have produced to date that would confirm that a particular notice identified a specific group of Plaintiffs' works in suit. If there were, Plaintiffs should produce these documents, as they are plainly responsive to a host of Charter's outstanding document requests.

Further, the Notice Interrogatories are tantamount to contention interrogatories, requiring Plaintiffs to represent the basis for their claims against Charter, necessitating Plaintiffs' "contention that relates to fact." *Atchison v. Saddleback Metro. Dist.*, 2008 WL 4681915, at *4 (D. Colo. Oct. 21, 2008) ("[I]t is not proper to object on the grounds that an interrogatory 'asks for an opinion or contention that relates to fact or the application of law to fact … .'") (quoting Fed. R. Civ. P. 33(a)(2)).

The Special Master did not abuse her discretion in determining that Plaintiffs' burden is less than Charter's burden in providing the information responsive to the Notice Interrogatories.

### C.     Responding to Charter's Interrogatories Does Not Require Expert Analysis

Contrary to Plaintiffs' assertion, responding to the Notice Interrogatories does not require expert analysis. As the Special Master recognized, the Notice Interrogatories seek "basic factual information that will need to be set forth in order for Plaintiffs to establish liability." ECF 190 at 10. And this basic factual information is compiled through the process Plaintiffs outline, which requires cross referencing datasets and, ultimately, tying the result of that process to the specific works in suit, which Plaintiffs are uniquely positioned to perform. As the Special Master found, "the mere fact that responding to discovery will be time consuming does not render discovery improper." *Id.* at 11.

Expert testimony is to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Unlike expert testimony or analysis, the Notice Interrogatories

seek basic factual information produced in the form of a verified interrogatory. *See, e.g., United States v. Caballero,* 277 F.3d 1235, 1247 (10th Cir. 2002) (testimony regarding facts experienced or observed by witness proffers "no opinion, lay or expert"); *see also Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997) (distinguishing between interrogatory damages information and later expert opinion related to the same). That a consultant who may also provide expert analysis in this case will be the person who ultimately undertakes the process for Plaintiffs to respond to the Notice Interrogatories does not render it expert opinion or analysis. As Plaintiffs concede, they do not intend to provide the information requested by the Notice Interrogatories, even when expert reports are due. Thus, Plaintiffs' contention that the Special Master's order requires expert analysis months before the deadline is without merit.

Plaintiffs also argue that Charter would not be prejudiced by waiting for Plaintiffs' expert disclosures in seven months. But, as noted above, Plaintiffs' proposed expert analysis will ***not*** provide the information Charter seeks through the Notice Interrogatories. *See supra* 14-16. Plaintiffs' anticipated expert opinion would not be expected to include the factual information Charter seeks with the Notice Interrogatories. Plaintiffs' expert disclosure is likely to state, as Plaintiffs did in *Sony*, that each work in suit was subject of a notice received by a Charter subscriber after that subscriber received at least two prior notices. This is Plaintiffs' theory of liability, but is not what Charter seeks with the Notice Interrogatories.

Charter seeks to determine, *during fact discovery*, each notice that implicates each of Plaintiffs' works in suit. Charter is entitled to understand which notices Plaintiffs contend identify which works in suit (particularly since Plaintiffs take the attenuated position that notices identify works that are not specifically referenced in the notice, which Charter intends to challenge on summary judgment), whether all of Plaintiffs' works in suit are implicated, and whether there are

16

versions of songs implicated in notices for which Plaintiffs are not suing. If Plaintiffs failed to send notices for a particular work in suit, Charter will seek to exclude it, which removes up to $150,000 in potential exposure per work. If certain of Plaintiffs' notices do not even reference files that contain works in suit, Charter will argue for the removal of those notices as well.

The Special Master did not abuse her discretion in holding that the Notice Interrogatories does not require expert analysis. Plaintiffs' Objection should be overruled.

## III.   IT WAS NOT AN ABUSE OF DISCRETION FOR THE SPECIAL MASTER TO ORDER A TIMELY RESPONSE TO DISCOVERY IN THIS CASE

### A.   The Special Master Rightly Ordered Plaintiffs to Respond to the Derivative Works Interrogatories

Plaintiffs do not challenge the legal relevance underpinning Charter's Derivative Works Interrogatories, but it is important context. Numerous courts, including most recently the *Sony* court, have held that plaintiffs are entitled to only one award of statutory damages for a music composition and its derivative sound recording. In this case, Plaintiffs assert 6,963 sound recordings and 4,064 music compositions for a total of 11,027 works in suit. By Charter's estimate, approximately 3,000 of those sounds recordings are derivative of music compositions in suit. Thus, as opposed to being entitled to 11,027 awards of statutory damages (should Plaintiffs establish liability), Plaintiffs would be entitled to damages on approximately 8,000 works. That constitutes a $450 million reduction in potential statutory damages.

Plaintiffs point to the procedure in *Sony* as if it should be a model of what should occur here. But what happened in *Sony* instead serves as a cautionary tale about what to avoid. In *Sony*, Cox attempted to resolve this issue on summary judgment, but the court deferred the issue for trial. The issue was not resolved at trial either. In granting Cox's post-trial motion on this issue, the court recognized that the issue should have been resolved in Cox's favor. Accordingly, months

after the jury deliberated, the number of derivative works for purposes of statutory damages remains uncertain.

> As the Special Master found in her July 6, 2020 Order:

> [T]he Sony Post Trial Order supports, rather than contradicts, my May 29 Order. Charter here seeks to gather the evidence that the plaintiffs in Sony accused the defendant there of failing to present. Here, Charter has specifically requested the information, the information is clearly and undisputedly relevant, and I have ordered it should be produced.

ECF 190 at 7-8.

Charter seeks to avoid what happened in *Cox* by resolving this issue during discovery through a verified interrogatory response from Plaintiffs. Without it, Charter would be forced to attempt to perform this analysis itself and then depose Plaintiffs' representatives to attempt to verify its own analysis. Indeed, the dramatic financial impact of this issue alone necessitates Charter receive Plaintiffs' responses on these issues.

Plaintiffs' reliance on *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 519 (D. Colo. 2009) is misplaced. Charter is not asking Plaintiffs "to prepare" its "case." *Id.* Rather, all the Derivative Works Interrogatories require is Plaintiffs to verify *facts* related to their works in suit so that Charter can argue at summary judgment that Plaintiffs are only entitled to a set number of statutory damages, should they establish liability. This is the most efficient process to resolve this important, basic, factual issue.

Finally, Plaintiffs have already prepared this analysis and can easily provide it to Charter. Ex. D. Plaintiffs are neither burdened nor prejudiced by doing so, as the information Charter seeks is purely factual and squarely relevant to the parties' claims and defenses. The Special Master recognized this and, accordingly, required Plaintiffs to produce the information as requested.

**B.     The Special Master's Order Requiring a Response to the Derivative Works Interrogatories by July 27, 2020 Was Not an Abuse of Discretion**

The Special Master rightly recognized that there is no genuine risk of what Plaintiffs refer to as improper "cross-pollination" between this case and the post-trial briefing in *Sony*. In *Sony*, the court invited Cox to "prepare a list of overlapping works in suit." *Sony Music Entm't*, 2020 WL 3121306, at *26. Once Cox has identified these overlapping works (a factual determination), the court permitted "Plaintiffs … sixty days to produce sufficient evidence to demonstrate which, if any, pairings or groupings should remain separate works … ." *Id*. "The [*Sony*] Court will determine the final number of works in suit as it deems appropriate ***based on both Parties' submissions***." *Id.* (emphasis added). Based on the procedure set up by the *Sony* court, Plaintiffs' fear that their provision of factual information in this case will somehow improperly influence the *Sony* court is entirely unfounded, as the *Sony* court is certainly capable ruling of ruling on the record as the *Sony* court deems appropriate.

Further, Plaintiffs' arguments relating to the risk of tainting the *Sony* record or Charter's counsels' minds with the information produced in this case make no sense.[5] As Plaintiffs argue in the first section of their brief, the information needed to determine the overlap of sound recordings and music compositions is purely factual.[6] The facts should not vary between cases unless Plaintiffs are misrepresenting the facts in one case.[7]

Plaintiffs also complain that the Special Master ordered this discovery be produced by July 27, 2020, which is a week before the date Cox is to make its post-trial submission. Plaintiffs

---

[5] *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) is inapposite, as it dealt with access by Exxon Corp.'s in-house legal counsel to a competitor's sensitive financial information.

[6] As Charter states above, that Charter may be able to attempt to perform this research and analysis itself does not obviate the need for Plaintiffs' response in the form of a verified interrogatory, particularly since Charter hopes to move for summary judgment on this issue with an undisputed record.

[7] Plaintiffs reference the Stipulated Protected Order in this case but that protects only information designated Confidential or Highly Confidential – Attorneys' Eyes Only. The information Charter requests with the Derivative Works Analysis is neither. To use the example in Plaintiffs' Objections, the fact that the sound recording titled "Everything," performed by the artist Michael Buble is derivative of the music composition with the same title and by the same artist is not confidential.

complain that this is an "abuse of discretion" because Charter did not request the Special Master order the production by a date certain. Plaintiffs do not cite any support for their argument that a Special Master setting a date certain for production of information 60 days after she originally ordered it be produced could possibly qualify as an abuse of discretion. There is no reasonable argument it could be, of course, particularly in light of the fact that Plaintiffs have represented—on numerous occasions—that they had already compiled this information. If Plaintiffs wanted to avoid having to produce materials in one case while another case is pending, perhaps they should not have prosecuted such cases simultaneously. There is certainly no good reason to justify a stay or delay of Charter getting these responses here.

In addition, contrary to Plaintiffs' assertions, Charter explicitly opposed Plaintiffs' request to delay a response until after the August 3, 2020 submission date in *Sony* because this particular discovery had been pending ***for over five months***. Charter first served the requests on February 13, 2020, to which Plaintiffs objected on March 26, 2020. The parties then met and conferred on the request over the ensuing month to no avail. On May 8, 2020, Charter moved to compel Plaintiffs' response. On May 29, 2020, the Special Master ordered Plaintiffs respond. Plaintiffs then further delayed their response by filing a motion for reconsideration, citing the *Sony* order, the Special Master denied on July 6, 2020. Accordingly, the Special Master's Order requiring a response of to the Derivative Works Interrogatories 60 days after it was first ordered is not an abuse of discretion, particularly in light of the fact that Plaintiffs represented that they could readily compile this information.

## CONCLUSION

Based on the foregoing, the Court should overrule Plaintiffs' Objection and uphold the Special Master's rulings on Plaintiffs' RFPs 13 and Charter's Interrogatories 13-15.

Dated: July 20, 2020

Charles K. Verhoeven
David Eiseman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com

Andrew H. Shapiro
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
andrewschapiro@quinnemanuel.com

Respectfully submitted,

*s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant*
*Charter Communications, Inc.*

21

## CERTIFICATE OF SERVICE

I certify that on July 20, 2020, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

| | |
|---|---|
| Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Tel: (202) 851-4526<br>E-mail: matt@oandzlaw.com<br>E-mail: scott@oandzlaw.com<br>E-mail: jeff@oandzlaw.com<br>*Attorneys for Plaintiffs* | Mitchell A. Kamin<br>Neema T. Sahni<br>Mark Y. Chen<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Tel: (424) 332-4800<br>E-mail: mkamin@cov.com<br>E-mail: nsahni@cov.com<br>E-mail: mychen@cov.com<br>*Attorneys for Plaintiffs* |
| Janette L. Ferguson<br>LEWIS BESS WILLIAMS & WEESE, P.C.<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Tel: (303) 861-2828<br>E-mail: jferguson@lewisbess.com<br>E-mail: bleoni@lewisbess.com<br>*Attorneys for Plaintiffs* | Jonathan M. Sperling<br>William E. O'Neil<br>COVINGTON & BURLING LLP<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Tel: (212) 841-1000<br>E-mail: jsperling@cov.com<br>E-mail: woneil@cov.com<br>*Attorneys for Plaintiffs* |
| | Megan M. O'Neill<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Tel: (202) 662-5416<br>E-mail: moneill@cov.com<br>*Attorneys for Plaintiffs* |

*s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux