# Exhibit B

| | |
|---|---|
| **From:** | Waters, Patty on behalf of Ranahan, Erin |
| **To:** | Hegarty Chambers |
| **Cc:** | Lampros, Nicholas M.; Sahni, Neema T; Craig Joyce; Sperling, Jonathan; Jeff Gould; Matt Oppenheim; Scott Zebrak; Kamin, Mitchell A; O"Neill, Megan; Mark Chen; Janette Ferguson; Ranahan, Erin; Golinveaux, Jennifer; Ellis, Emily; Elkin, Michael; Lane, Thomas; Skopec, Allison; Coorg, Shilpa; Spitzer, Seth; Jack Tanner |
| **Subject:** | Warner Records Inc et al v. Charter Communications, Inc. (D. Colo. 1:19-cv-00874-RBJ-MEH)-- Response re 2/19/20 Order |
| **Date:** | Monday, February 24, 2020 7:55:03 PM |

Dear Judge Hegarty,

I write in response to the Court's February 19, 2020 Order to specify instances where I communicated to Plaintiffs' counsel that Charter did not have certain historical ticket data information "because it is gone."

Mr. Oppenheim and Mr. Sperling—who were *not* at the prior December 17, 2019 hearing before the Court, and have *never* been on any meet and confer about any discovery in these cases—suggested I had never previously mentioned that we did not have available every piece of ticket data they sought, and had not mentioned Charter's six-month retention policy. As shown below, these assertions are plainly false.

During the February 19 hearing, the Court was directed to this statement from the December 17, 2019 hearing:

> Ms. Ranahan: We have to say, here is the ISP, do we still have information about what happened? Because we have to see, **do we still have the ticket data**? **We don't have ticket data for Charter from 2010, we don't have it from 2011. We have some data which started at 2012, 2013. So we're trying to assess against their notices what we have**.

12/17/19 Hr'g. Trans. at 75:1-7.

During the discussion about this on February 19, the Court found the above statement was "close enough [to] saying we're trying to assess what exists and what doesn't." 2/19/20 Hr'g. Trans. at 120:4-124:16-24.

But there were also multiple, additional statements during the December 17 hearing where I disclosed that some of the ticket data was simply no longer available given how old it was, including specifically mentioning that Charter retained data back six months, which demonstrates that Mr. Oppenheim's statement was incorrect that my statement at the February 19 hearing was the "very first time" Plaintiffs had heard it. (2/19/20 Hr'g at 120:9-11.)

> MS. RANAHAN: Whether -- I don't know if we can...**depends on how much data we have**.
> THE COURT: You don't know if you can take an IP address and find out how much you have, income you have received from that person.
> MS. RANAHAN: Whether we can link it to the billing account...it's another step to

then to try to find if we can link it to the billing account and for what time period, because again, our -- the timing happens like this. So the note that -- the first cease and desist was sent to them -- to us in 2016. So we started **preserving a lot of the data six months back from that point**. There is a time period from before that. **So there is going to be a 2012, 2013 period that we're not sure if we can still link it, because it depends on how much information is still available.**
THE COURT: **Because of the availability of data**?
MS. RANAHAN: **Correct.**
THE COURT: Not because that you can't? I mean --
MS. RANAHAN: **To the extent it still exists. We're trying to figure out what -- how much of it still exists** --
THE COURT: Okay.
MS. RANAHAN: -- and whether we can link the accounts to the billing.
THE COURT: Sure. But that's again just the breadth of the data. It's not whether providing you an IP address would allow you to determine how much income that person paid. I know you can because I've been the judge in charge of the BitTorrent cases in this district for probably nearly a decade and discovery can be served on Charter that gives you only an IP address and you can respond to that requester and tell who it is.
MS. RANAHAN: Right. Well, that's one question, you're just using the IP address. But whether we can link it to what their account number was at the time**, we have to make sure we still have that data. If it was in an early period, 2011 --**
THE COURT: I understand.
MS. RANAHAN: -- **we may not have it.**
THE COURT: But again, that's just connecting the dots.
MS. RANAHAN: Right. **So to the extent that we have that.**

12/17/19 Hr'g. Trans. 55:1-56:24.

THE COURT: Okay. So you're not opposing it on a fundamental basis? You just need more time?
MS. RANAHAN: **And we might not just be able to link it. If we can get the data based on what they've given us and we can link the accounts, which is what we're trying to determine,** because a lot of these notices...it's very complicated...But there is a lot of different systems that these notices were run through over the years during the claim period. And we also had the separate issue in Florida where it's, you know, a merged company, so we have historic data we're having to pull. **So it's old** and **we're trying to figure out if we can link these notices with the financial record.**

12/17/19 Hr'g. Trans. 51:5-18

I also disclosed that we simply did not have some of the data Plaintiffs were seeking during oral meet and confer discussions, none of which Mr. Oppenheim or Mr. Sperling participated in.

As I explained during the February 19 hearing, at the time the demand letter for this lawsuit was

sent in March 2016, Charter had a six-month retention policy for ticket data stored in CATS itself, and an 18-month retention policy for ticket table data, a related data repository.  Because Plaintiffs' most recent notice of infringement produced in this case was March 2015, there is no remaining ticket data, but Charter does have ticket table data with respect to 38,504 notices and 11,072 subscribers that it has been able to identify as having received notices at issue in this case, which we will produce to Plaintiffs by March 16, 2020.

Regards,

**Erin R. Ranahan**

**Partner**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

D: +1 (213) 615-1835

F: +1 (213) 615-1750

Bio | VCard | Email | winston.com