## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

     Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

     Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

## AFFIDAVIT OF WAYNE C. COLEMAN IN SUPPORT OF CHARTER COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO DENY WAYNE COLEMAN'S DESIGNATION AS A QUALIFIED PERSON UNDER THE PROTECTIVE ORDER

I, Wayne C. Coleman, hereby state as follows:

1.     I have personal knowledge of all facts stated in this affidavit, and if called upon as a witness, I could and would competently testify thereto.

2.     I have almost 50 years of experience in the music business as a royalty auditor, business manager, tour accountant, valuator, author, and expert witness. I graduated from Mississippi State University in 1968 with a BS in Accounting. From 1968-1970, I worked as a staff accountant at a CPA firm in Memphis, Tennessee. From 1970-1971, I operated my own CPA firm. I subsequently joined Gelfand, Rennert & Feldman ("Gelfand"), a business management firm headquartered in New York, as managing partner of Gelfand's Nashville office. I remained in this role from 1971-1973, during which time I established a royalty compliance practice to collect underpaid royalties for my clients in the music industry (my first client was Johnny Cash). In 1973, I moved to New York to head Gelfand's worldwide royalty compliance practice. I practiced out of Gelfand's Los Angeles office from 1974-1991. During this time, and in my position as head of Gelfand's worldwide royalty compliance practice, I established and supervised royalty

compliance teams in Los Angeles, Nashville, New York, San Francisco, and London. I remained with Gelfand until 1991, when I started my own company, the Royalty Compliance Organization ("RCO") (I also operated a joint venture with the CPA firm Moss Adams from 1994 through 2001). In 2001, I moved to St. Louis and have operated RCO out of St. Louis since that time, primarily performing consulting, royalty compliance services, valuations of intellectual property, and expert witness services. I am currently licensed as a CPA in three states: California, Tennessee, and Missouri.

3.       During my decades in the music business, I have represented numerous recording artists (and their estates), including: the Beatles; the Estate of Elvis Presley; Michael Jackson; Madonna; Johnny Cash; the Grateful Dead; the Who; Neil Diamond; Rod Stewart; Roy Orbison; Snoop Dogg; Garth Brooks; Fleetwood Mac; the Estate of Bob Marley; George Michael; and the Backstreet Boys. I have also represented numerous major and independent record labels and music publishers, including: Universal Music Group; Sony Music International; MCA Records; A&M Records; EMI; Sun Records; Curb Records; Blackberry Records; and Integrity Records. In addition, I have represented major companies and government agencies outside of the music industry, including: Coca Cola; Dream Works; Ernst & Young; General Motors; the Internal Revenue Service; KPMG; Lucas Films; NBC News; the Recording Industry Association of America; the Vatican; and Universal Pictures.

4.       I have personally conducted, supervised, or reviewed over 6,000 royalty compliance audits. In addition, I have acted as a business manager and tour accountant for numerous recording artists, including Michael Jackson, Bob Dylan, Neil Diamond, Fleetwood Mac, The Band, and Stevie Nicks. I have performed valuations of significant collections of music-

related intellectual property (including a valuation of the Beatles' catalogue when it was purchased by Michael Jackson).

5.      I am an author of numerous published works regarding the music business, including: several articles on royalty auditing issues for the periodical "Licensing Update"; a chapter in the book "Fighting for More Music Royalties" on reviewing and understanding royalty statements; an article on the Christian music industry for the publication "Copyrights, What You Need to Know"; a chapter in the book "Fighting for More Music Royalties" on personal and business managers of recording artists; an article on royalty compliance for the Moores Rowland International UK Conference; an article on how an auditor should work with legal counsel for the National Association of Unclaimed Property Administrators; an article on the economic structure of the music publishing business for the publication "Financing the Business"; and a chapter in the book "The Musician's Business & Legal Guide" on business managers in the recording industry.

6.      I have been quoted by the press as an authority on the music business. For instance, I was quoted as follows by the *Los Angeles Times* in a February 2002 article entitled "Auditors Put New Spin on Revolt Over Royalties": "Record companies use questionable accounting tactics and contractual provisions to get away with unconscionable things. Of the thousands of royalty compliance audits I've conducted over the past 30 years, I can recall only one instance where the artist owed money to the company."

7.      I have been retained as an expert witness in over 100 cases and have provided testimony over 35 times. My findings have been accepted by Courts, government bodies, arbitrators, and private firms alike. I have prepared reports and testified as an expert witness in

numerous record industry cases. I have also prepared reports and testified as an expert witness in numerous cases outside of the record industry.

8.      In connection with my professional engagements, whether they be to perform a royalty audit or in connection with a legal dispute, I have signed protective orders, non-disclosure agreements, and other agreements pertaining to the confidentiality of information learned in connection with those engagements. I have never breached those agreements. I have never been accused of breaching such an agreement either.

9.      I read the Stipulated Protective Order in this case and agree to its terms. Accordingly, I signed the Acknowledgment of Stipulated Protective Order. As with all of the agreements in which I enter, I fully intend to honor my obligations thereunder.

10.     As a matter of contractual obligation or professional and ethical duty, I do not use information learned in connection with one audit in another audit or for any other purpose.

11.     Recently, I was approached by counsel for the plaintiffs in putative class actions in order to informally consult with both the plaintiffs and the defendants during a telephonic meet and confer regarding an information storage issue. Since that call, I have not provided any additional consultation to those parties.

12.     With respect to these class actions, I have not been asked by the plaintiffs' counsel to "recruit" potential class members. That is an activity in which I have never engaged. I do not intend to engage in such activity in these class actions or in any future litigations of any kind.

13.     To be clear, my clients and potential clients come to me mostly by referrals and from my firm's website. My firm does not actively seek, market, or otherwise advertise for new clients. We are well known. We have a reputation for providing excellent services to our clients. We receive calls or emails almost daily from artists, publishers, writers, record companies,

attorneys, or accountants inquiring about our services.  At all time, our services are conducted in a professional manner with integrity.

14.    In the normal course of performing compliance audits for my clients, I am provided access to books and records which include information regarding sales, income, and / or royalties of non-clients.  I never use that information to recruit potential clients.  Each audit is conducted using the information, books, and records present for that audit.  Each audit stands alone.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of July, 2020 in St. Peters, Missouri.

Wayne C. Coleman

WENDY R. ROSE
Notary Public - Notary Seal
STATE OF MISSOURI
St. Charles County
My Commission Expires:  Jan. 2, 2021
Commission # 17114151