IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

      Defendant.

_____

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO DENY WAYNE COLEMAN'S DESIGNATION AS A QUALIFIED PERSON UNDER THE PROTECTIVE ORDER**
_____

Plaintiffs submit this Reply to: (i) update the Court as to the parties' negotiations subsequent to the filing of Plaintiffs' Motion (Dkt. 196), and (ii) address Charter's mischaracterization that a "risk of serious harm" under the Protective Order (Dkt. 63) requires a showing of *competitive* harm.

**I.  Subsequent Negotiations Between the Parties Have Heightened Plaintiffs' Concern That the Retention of Mr. Coleman Creates a Risk of Serious Harm.**

After filing their Motion on July 9, Plaintiffs continued discussing with Charter Plaintiffs' proposal to informally resolve their objection to Mr. Coleman: that Mr. Coleman receive Plaintiffs' highly sensitive artist agreements, publishing or administration agreements, and Digital Service Provider agreements *with the identities of the counterparties redacted.*  Sahni Decl. Ex. 1.  This would have protected Plaintiffs' sensitive information while allowing Mr. Coleman to fulfill the role for which he was retained—to "aid Charter's review" of these

agreements to the extent they concern "Plaintiffs' actual damages" and "the relative value of the copyrights in suit." Opp'n at 3–4. The redactions would have ensured that Mr. Coleman could still see the financial figures necessary to make such calculations. Nevertheless, Charter refused Plaintiffs' proposal, and instead suggested that Plaintiffs redact only the agreements that concern artists whom Mr. Coleman is currently representing. Sahni Decl. Ex. 1. This made little sense, however. Mr. Coleman presumably has such agreements entered into by clients who have retained him; the problem is unfettered access to hundreds of other artist and publisher agreements, which Mr. Coleman could use to recruit other clients or, in violation of the terms under which he performs audits, to inform arguments that he makes in audits.[1]

Plaintiffs then took a different tack. In response to Charter's suggestion that Mr. Coleman sign a more specific addendum to the Protective Order, Plaintiffs proposed that Mr. Coleman agree in writing (i) not to use, disclose, or share in this case any nonpublic information he has learned in auditing or consulting engagements adverse to any of the Plaintiffs, and (ii) not to use, disclose, or share in pending or future cases or audits, any nonpublic information learned in this case. Sahni Decl. Ex. 1. Plaintiffs believed that this would settle the matter, as their proposal was simply a more specific recitation of Mr. Coleman's nondisclosure obligations

---

[1] Far from simply crunching numbers, royalty auditors routinely make claims on behalf of their clients, including based on interpretation and application of contract terms as well as allegations of what is common in the industry. In connection with such audits, artists and composers agree that the audits will be limited to inspection of particular documents that are specifically relevant to transactions upon which the artists and composers are paid and not inclusive of other artists' or composers' agreements or the label's or publisher's broader blanket agreements with third parties such as Apple or Spotify (a typical such provision reads, "Your representatives will not be entitled to examine any manufacturing records or any other records that do not specifically report sales or other distributions of Records or exploitations of Masters on which royalties are payable to you."). Plaintiffs can provide specific examples of such agreements but have not attached them here because they are Highly Confidential.

under the NDAs he has executed in his auditing and consulting engagements, and the Protective Order in this case. Nevertheless, Charter rejected Plaintiffs' proposal, stating that such an agreement would "limit the scope of [Mr. Coleman's] testimony and prevent him from testifying from his knowledge and experience." Sahni Decl. Ex. 1.

Charter's response heightens Plaintiffs' concern that Mr. Coleman will improperly use nonpublic information that he learns in this case, or that he has previously learned pursuant to NDAs. As Charter recognizes, Mr. Coleman routinely executes NDAs in his auditing and consulting engagements adverse to Plaintiffs. *See* Opp'n at 12. Charter nonetheless contends that there *hypothetically* might have been instances where Mr. Coleman did not execute an NDA, or where the NDAs have now "lapsed" or are "otherwise non-enforceable." *Id.* It does not cite a single example (nor does Mr. Coleman in his affidavit). Charter's refusal to agree to this seemingly uncontroversial addendum, without any legitimate basis, only substantiates Plaintiffs' concerns. Mr. Coleman should not be permitted to serve as an expert except if subject to the terms proposed by Plaintiffs.

## II. Contrary to Charter's Characterization, "Risk of Serious Harm" Under the Protective Order Is Not Limited to *Competitive* Harm.

Charter does not dispute that a "risk of serious harm" can exist in the event Mr. Coleman is unable to "compartmentalize and selectively suppress [Plaintiffs' confidential] information" in his future roles adverse to Plaintiffs. *See* Mot. at 5–6 (citing cases).

Instead, Charter contends that Plaintiffs' Motion fails because the harm at issue would flow from Plaintiffs' information being used by an adverse consultant or auditor, rather than a *competitor*. Opp'n at 7. There is no basis for this argument. The Protective Order states that a "risk of harm" includes the risk of "competitive *or* financial injury *or* potential legal liability."

— 3 —

Dkt. 63 at 2 (emphasis added).  The cases cited by Charter stand for the unsurprising proposition that *one type* of "serious harm" occurs when a competitor gains access to a party's sensitive information.  But the Protective Order makes clear that this is not the *only type* of serious harm that a party may suffer from unwarranted disclosure.  Here, Plaintiffs may suffer financial or legal harm from Mr. Coleman's use of their confidential information in future auditing, consulting, or litigation roles adverse to Plaintiffs.  *See* Mot. at 4–5.  It is irrelevant whether Mr. Coleman works for one of Plaintiffs' competitors.

## **CONCLUSION**

For the reasons stated above and in Plaintiffs' Motion (Dkt. 196), Plaintiffs request that Mr. Coleman's designation as a Qualified Person under the Protective Order be permitted only subject to one of the following forms of relief, which Plaintiffs have previously proposed to Charter:

1. Require that Mr. Coleman sign an addendum to the Protective Order specifically agreeing:

    o Not to use, disclose, or share any nonpublic information learned in this engagement—including but not limited to the terms of artist or publishing agreements, artist contact information, or even potential artist names—with counsel in any other pending or future actions in which he serves as a consultant or expert adverse to any of the Plaintiffs;

    o Not to use, disclose, or share in this case, including with Charter or their counsel, any nonpublic information learned in the course of his engagement as a consultant in any other pending action adverse to any of the Plaintiffs;

    o Not to disclose or share in this case, including with Charter or their counsel, any nonpublic information learned in the course of any of his engagements as a royalty auditor adverse to any of the Plaintiffs; and

    o Not to use, disclose, or share any nonpublic information learned in this engagement—including but not limited to the terms of artist or publishing agreements, digital service provider agreements, or otherwise—in any audits

— 4 —

      adverse to any of the Plaintiffs, or to identify or solicit clients for future audits.

2.     Require that Mr. Coleman be provided Plaintiffs' Highly Confidential artist agreements, publishing or administration agreements, and Digital Service provider agreements only after those documents have been sufficiently redacted and anonymized by Plaintiffs' counsel to prevent disclosure of the identity of the counterparties.[2]

Dated: August 13, 2020

| | |
|---|---|
| Janette L. Ferguson, Esq.<br>Benjamin M. Leoni, Esq.<br>LEWIS BESS WILLIAMS & WEESE, P.C.<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Telephone: (303) 861-2828<br>jferguson@lewisbess.com<br>bleoni@lewisbess.com<br><br>Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>scott@oandzlaw.com<br>jeff@oandzlaw.com | */s/ Jonathan M. Sperling*<br>Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br><br>Mitchell A. Kamin<br>Neema T. Sahni<br>J. Hardy Ehlers<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>mkamin@cov.com<br>nsahni@cov.com<br>jehlers@cov.com<br><br>*Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 13, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

                                         */s/ Jonathan M. Sperling*
                                         Attorney for Plaintiffs

---

[2] Though Plaintiffs stated in their Motion that they might seek leave for additional briefing, they will rely on the arguments stated in their Motion (Dkt. 196) and this Reply.