# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH
_____

WARNER BROS. RECORDS INC., et al.,

    Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

_____

TELEPHONIC HEARING

July 15, 2020
_____

    This telephonic hearing was taken before Special Master Regina Rodriguez on July 15, 2020, at 1:04 p.m. Mountain Standard Time before K. Michelle Dittmer, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, K. Michelle Dittmer, appearing remotely via telephone)

Telephonic Hearing
July 15, 2020

Page 2

```
 1    A P P E A R A N C E S
 2    ON BEHALF OF THE PLAINTIFF WARNER BROS. RECORDS INC.:
 3              MATTHEW J. OPPENHEIM, ESQ.
                JEFFREY M. GOULD, ESQ.
 4              JIA RYU, ESQ.
                Oppenheim & Zebrak LLP
 5              4530 Wisconsin Avenue N.W.
                5th Floor
 6              Washington, DC 20016
                Phone: 202-480-2999
 7              Email: matt@oandzlaw.com
                Email: jeff@oandzlaw.com
 8              Email: jia@oandzlaw.com
                (appeared telephonically)
 9
                JONATHAN MICHAEL SPERLING, ESQ.
10              PHILLIP HILL, ESQ.
                Covington & Burling LLP
11              620 Eighth Avenue
                The New York Times Building
12              New York, New York 10018-1405
                Phone: 212-841-1153
13              Email: jsperling@cov.com
                Email: pahill@cov.com
14              (appeared telephonically)
15
                NEEMA T. SAHNI, ESQ.
16              J. HARDY EHLERS, ESQ.
                Covington & Burling LLP
17              1999 Avenue of the Stars
                Suite 3500
18              Los Angeles, California 90066-4643
                Phone: 424-332-4757
19              Email: nsahni@cov.com
                Email: jehlers@cov.com
20              (appeared telephonically)
21
22
23
24
25
```

Telephonic Hearing
July 15, 2020

Page 3

```
 1   ON BEHALF OF THE DEFENDANT:
 2             SEAN R. ANDERSON, ESQ.
               CESIE C. ALVAREZ, ESQ.
 3             Winston & Strawn, LLP
               200 Park Avenue
 4             New York, New York 10166-4193
               Phone: 212-294-6729
 5             Phone: 212-294-5388
               Email: sranderson@winston.com
 6             Email: calvarez@winston.com
               (appeared telephonically)
 7
               JENNIFER ANN GOLINVEAUX, ESQ.
 8             Winston & Strawn, LLP
               101 California Street
 9             Suite 3400
               San Francisco, California 94111-5802
10             Phone: 415-591-1506
               Email: jgolinveaux@winston.com
11             (appeared telephonically)
12             ERIN R. RANAHAN, ESQ.
               Winston & Strawn, LLP
13             333 South Grand Avenue
               Los Angeles, California 90071
14             Phone: 213-615-1835
               Email: eranahan@winston.com
15             (appeared telephonically)
16
17   Also Present:  Andrew Schapiro, Esq.
                    Mairead Dolan, Esq.
18                  Dhruva Krishna
                    Jack Dodge
19                  (appeared telephonically)
20
21
22
23
24
25
```

 1                AUTOMATED VOICE ON CONFERENCE CALL:  Jeff
 2     Gould has joined the meeting.
 3                SPECIAL MASTER RODRIGUEZ:  -- my question,
 4     I guess, would be to Ms. Golinveaux:  Is there a debate
 5     with regard to this issue and RFPs 2 and 3, or has that
 6     now been resolved?
 7                MS. GOLINVEAUX:  Thank you, Ms. Rodriguez.
 8     My colleague, Erin Ranahan, is going to address this, if
 9     she may.
10                SPECIAL MASTER RODRIGUEZ:  Okay.  Thanks
11     Ms. Ranahan.
12                MS. RANAHAN:  Thank you.  This is Erin
13     Ranahan.
14                So for 2, we appreciate your guidance, and
15     we took that, and what we propose is that for 2, we would
16     provide -- so what plaintiffs already have is the ticket
17     data for the accused subscribers and then all third-party
18     notices that those subscribers received, which includes
19     millions -- three million, I think -- extra ticket data
20     entries, including millions from Rightscorp already.
21                So what we proposed was that as a
22     compromise here, we would agree to provide additional
23     ticket data for all subscribers, except Rightscorp,
24     noting that they already have millions of Rightscorp to
25     analyze, so anyone with three or more, excluding

1  Rightscorp.
2              The difference is about 18 million versus
3  5 million, so it's still a huge amount of additional
4  data.  And because they already have the millions of
5  Rightscorp that we've already provided, we believe that
6  that was a reasonable proposal.  So that's the -- that is
7  the issue.
8              And for 3, I would just add -- 2 and 3 are
9  lumped in here.  We have not actually discussed 3 at all.
10 We have -- even on the call with you before, we discussed
11 2.  3 is something -- something different, which is
12 communications and text files that flow from each of
13 these.
14             So a text file would have to be pulled for
15 each of either the 5 million or the 18 million to do
16 that.  We've already done that for the accused
17 subscribers and the millions of additional tickets, so
18 we've already undertook a huge burden on that, and we
19 haven't actually discussed doing that for 3.  We have
20 discussed 2.  So --
21             SPECIAL MASTER RODRIGUEZ:  Okay.
22             MS. RANAHAN:  -- that was our proposal for
23 2.
24             SPECIAL MASTER RODRIGUEZ:  All right.  So
25 let me just make sure I understand what you're telling

```
 1   me, is that what you've already produced for Rightscorp
 2   is all of the notices, and that is millions of notices.
 3                  MS. RANAHAN:  What we -- for Rightscorp,
 4   it's all of the notices that were generated to the
 5   accused subscribers for Rightscorp, which happened to
 6   include, because of the way -- I know we've talked about
 7   it a lot -- but the way that Rightscorp generates their
 8   notices, it was millions of notices already.
 9                  So what we proposed here was now that
10   plaintiffs are asking for ticket data for everybody
11   across the board, we propose that we do three -- and
12   three or more was floated around.  We propose three or
13   more, excluding Rightscorp, which would still be more
14   than 5 million additional ticket data entries, 5 million,
15   but it wouldn't be the 18 million that would be included
16   if we counted all the Rightscorp.  And, again, that's
17   because we believe they have a very good sample from the
18   Rightscorp.
19                  Rightscorp has suffered from all sorts of
20   issues.  They would send 1,000 on the first day of the
21   same work.  They're not as reliable, as I know we talked
22   about, and we ultimately will have witnesses testify
23   about that, and there will be evidence about what our
24   clients understood about the Rightscorp issue.
25                  SPECIAL MASTER RODRIGUEZ:  Yeah.  I don't
```

```
 1   want to get into the particulars of Rightscorp tickets,
 2   that they're on notice.  And so what you're proposing
 3   would be that plaintiffs would be entitled to -- or,
 4   sorry, that what plaintiffs would be provided would be
 5   all of the notices for any subscriber, not limited to the
 6   plaintiffs, subscribers in this case -- sorry, not
 7   limited to the alleged infringers of plaintiffs' works in
 8   this case, except with regard to the body of Rightscorp
 9   notices.
10               For the body of Rightscorp notices, they
11   have already been limited to only notices for
12   infringement of plaintiffs' works.
13               MS. RANAHAN:  Not plaintiffs' works.  So
14   we had the body of the accused subscribers, the 38,000,
15   and then any other notices they got for any other alleged
16   infringement they've already received.  So Rightscorp
17   never sent any regarding plaintiffs' works.  They would
18   be sending them for third-party works.
19               And so what we're proposing is -- so the
20   problem is that when we say three or more, once you add
21   in Rightscorp, because of the way they operate, a first
22   notice would automatically get any subscriber into a
23   three-or-more category.
24               So what we're proposing is that we limit
25   the three or more to any besides Rightscorp, just because
```

```
 1   of the -- they already have a huge sample of Rightscorp
 2   notices for all sorts of works, not just plaintiffs'
 3   works.  It's the accused subscribers; whatever they got
 4   accused of, they already have.  And they already have
 5   millions of Rightscorp, so -- and, again, the difference
 6   is between 5 1/2 million, which would be a huge amount,
 7   which we're agreeing to, or 18 million.
 8                  And the difference is just more
 9   Rightscorp.  So it's whether they need, you know,
10   16 million for Rightscorp or just -- or however many.  I
11   can't do math.  It's 13 million more than they already
12   have.
13                  SPECIAL MASTER RODRIGUEZ:  We're all
14   lawyers, my friend.
15                  MS. RANAHAN:  And just adding up the
16   three -- the question is, when we're counting people as
17   repeat infringers, it's just really tricky to just assume
18   someone who only received Rightscorp is an automatic
19   repeat offender because of the way they send the notices.
20   So, so many on the very first offense.
21                  SPECIAL MASTER RODRIGUEZ:  Okay.
22                  MS. GOLINVEAUX:  Ms. Rodriguez, it's
23   Jennifer Golinveaux.  If I could just clarify one point,
24   because I know the terminology gets a little bit
25   confusing.
```

```
 1                   But when we refer to, quote/unquote,
 2   accused subscribers, that's the body of subscribers who
 3   received the RIAA notices.  But what Ms. Ranahan has
 4   proposed is that for those accused subscribers,
 5   plaintiffs will get the Rightscorp notices, and that will
 6   be millions of them.  But outside of that, so for people
 7   who never got an RIAA notice, that would be the one that
 8   we would restrict to three or more, not including
 9   Rightscorp --
10                   SPECIAL MASTER RODRIGUEZ:  Okay.
11   That's --
12                   MS. GOLINVEAUX:  -- because that's
13   where -- from the five -- yeah.
14                   SPECIAL MASTER RODRIGUEZ:  Thank you.
15   That's a helpful clarification.
16                   All right.  So, Ms. Sahni, what is your
17   response with regards to the specific proposal that
18   Charter has made, and what more are you going to get from
19   that additional 15 million or 13 million notices as they
20   relate to Rightscorp?
21                   MS. SAHNI:  Yes.  Thank you,
22   Ms. Rodriguez.
23                   So I think it's helpful to go back to what
24   we talked about for a minute at the July 2nd hearing.
25   And if you'll recall, plaintiffs at that hearing asked
```

 1   for all ticket data that Charter has retained from the
 2   claim period, and Mr. Sperling explained that Charter had
 3   been ordered by Judge Hegarty to provide ticket data for
 4   all subscribers identified in plaintiffs' notices.
 5   That's the so-called accused subscribers.
 6              But Charter hasn't been able to provide
 7   that because it doesn't have the information, the data it
 8   needs, to actually identify all such subscribers.  So
 9   Mr. Sperling and you, I believe, had a conversation about
10   how we need all the ticket data because by definition
11   they can't comply with what was ordered.
12              And you asked us to narrow our request for
13   all ticket data because you said that's a little too
14   broad.  And we took that to heart, and we came up with a
15   reasonable compromise consistent with the line we've
16   drawn many times before in this case, and we asked for
17   ticket data for all subscribers for whom Charter received
18   three or more notices.
19              Now, Charter's counterproposal is to take
20   that three-or-more-notice threshold and exclude
21   Rightscorp.  And it says, Rightscorp notices were too
22   voluminous, too unreliable.  But those are arguments
23   properly made to the jury at trial.  They're not a basis
24   to categorically exclude certain categories of data from
25   discovery.

1                    Charter can't say, I'm going to take this
2      chunk of data out and skew the results.  That's not how
3      discovery is supposed to work.  If we want to look at the
4      data and understand how many times a certain subscriber
5      got a notice, by excluding Rightscorp you are skewing the
6      results.  And Charter doesn't get to do that
7      unilaterally.
8                    Now, it can go to the jury -- you've said
9      this before.  Charter can go to the jury and say:
10     Rightscorp is unreliable.  They send too many notices.
11                   First, I think it's important to clarify
12     one point, which I think has been misrepresented a number
13     of times on these calls.  Rightscorp notices have formed
14     the basis for jury verdicts in other cases, including the
15     BMG v. Cox case, where there was a jury verdict returned
16     against the defendant ISP based on Rightscorp notices.
17                   Now, the ISP in that case made the same
18     arguments about Rightscorp's unreliability.  So most
19     importantly, those arguments were left for the jury to
20     decide.
21                   So too, here, Charter has the data.  If
22     Charter wants to go to the jury and say, Here is the data
23     and what it looks like without Rightscorp -- so if I take
24     this 5 million set, it looks very different.
25                   But we should be able to present the full

1    data, and then they can come back with whatever Charter
2    data they want.  It's not a basis to exclude a whole
3    category of discovery.
4              I would note that Ms. Ranahan didn't
5    mention once anything about burden.  She talked about
6    numbers, 18 million, 5 million.  This is a data dump.
7    It's a discovery database.  It's a CAP database, where
8    all they have to do is run a query and pull the data out.
9    They've done it before.  If they -- if anything,
10   excluding Rightscorp requires an extra step.
11             And so what we tried to do is come up with
12   a reasonable proposal consistent with your guidance at
13   the last hearing of three or more notices.  To allow
14   Charter to unilaterally decide one of these rights
15   holders shouldn't be included -- one of these vendors
16   that sent notices shouldn't be included allows Charter to
17   skew the data unilaterally without us even getting to see
18   it so that we can rebut whatever arguments they want to
19   make.
20             SPECIAL MASTER RODRIGUEZ:  Okay.
21             MS. RANAHAN:  If I could respond to that
22   briefly.  This is Erin Ranahan again.
23             We're not excluding it.  They have
24   millions of examples.  They're -- so they're getting a
25   huge sample of Rightscorp.  Even Interrogatory 13 and 14,

```
 1   that covered all the data.  They have other ways to get
 2   at all the data.
 3                 The question -- and this is not just a
 4   data dump.  We've been on the phone with the person who's
 5   been handling these, and it requires a tremendous amount
 6   of work and scripts.  And to increase something by that
 7   many more millions, it's not just a data dump, and it's
 8   incredibly complex.
 9                 So there is a huge additional burden.
10   And, you know, from 13 and 14, they're already getting
11   the rogs that they have mentioned.  They already have the
12   total numbers and total data.
13                 So it's not -- we're not excluding the
14   Rightscorp.  They have a huge category.  You advised us
15   to come back with some middle ground.  You thought that
16   all of them was too many, and to come up with three or
17   more, and this was the proposal we thought was
18   reasonable, given they already have millions of
19   Rightscorp to look to.
20                 MS. SAHNI:  Ms. Rodriguez, if I may just
21   add --
22                 SPECIAL MASTER RODRIGUEZ:  Okay.  Last
23   one -- last one.  We're not going to -- this is not going
24   to be a three-hour hearing today.
25                 MS. SAHNI:  Understood.  I will make it
```

```
 1   brief.
 2                  I just would note that the interrogatory
 3   Ms. Ranahan keeps referring to is raw total numbers.
 4   That doesn't actually allow us to know how many
 5   subscribers received how many notices.  That's what the
 6   ticket data shows, and that's why this is such critical
 7   evidence in the case.
 8                  MS. GOLINVEAUX:  Ms. Rodriguez, if I could
 9   just correct one thing briefly.  It's Jennifer
10   Golinveaux.
11                  Ms. Sahni referenced -- she made the
12   statement that Rightscorp was -- Rightscorp notices
13   provided the basis for a jury verdict in a different
14   case.  What she neglected to mention is that verdict was
15   reversed by the Fourth Circuit on appeal.  And in that
16   case, Rightscorp was actually the plaintiff's agent for
17   sending notices.
18                  So there's an entirely different relevance
19   calculation for that case.
20                  SPECIAL MASTER RODRIGUEZ:  Okay.  So I --
21   part of what plaintiffs have provided me is the actual
22   responses to Interrogatories 13 and 14.  I do, as I
23   recall, think that that may encompass the information
24   that we're looking for here, so I need to take a look at
25   that.  I have not had an opportunity to do that.  That
```

```
 1   came in today.  So I will take a look back at it.
 2                   I do think that these notices are
 3   important, the number of notices, the content of the
 4   notices, the subject matter of the notices, all of those
 5   type things.  We've dealt with this issue multiple times.
 6   It appears to me that that is integral to the issues in
 7   this case.
 8                   15 million notices is a lot.  I have
 9   nothing that's been provided to me in terms of what that
10   entails, burden -- I have counsel's representation that
11   it's either a data dump or it's very onerous, but I have
12   actually nothing in front of me on that issue.
13                   As I've indicated on other occasions, it's
14   difficult in this case to make argument about
15   proportionality on those very issues central to the case,
16   but we do need to try to work on some reasonable approach
17   on these.
18                   What I'm not certain about at this
19   point -- and I will look at this in more detail -- is
20   what an additional 13 million notices will tell you that
21   you don't have by the number, total that you've been
22   provided, and the sample set that you've already been
23   given.
24                   So I will look at that in more detail and
25   get back to you with an answer on that one.
```

Telephonic Hearing
July 15, 2020

Page 24

```
 1                    MS. RANAHAN:  Ms. Rodriguez, can I just
 2   ask for permission?  This is Erin Ranahan.
 3                    We also didn't get a chance to respond
 4   obviously because these were submitted, but we would love
 5   permission to have our client submit a burden
 6   declaration.  We talked to him about this just today.  If
 7   we could submit that by early next week, that would be --
 8   we would love the opportunity to do that because it is a
 9   hugely burdensome task to ask him to do.
10                    MS. SAHNI:  Ms. Rodriguez, if I may.  We
11   discussed this issue two weeks ago at the July 2nd
12   hearing.  Your transcript clearly indicated this was teed
13   up for today.
14                    Charter was invited to submit a
15   counterproposal with its May 5 -- July 13 submission.  It
16   could have submitted a burden declaration.  It did not.
17   So to now request the ability to do so and delay this
18   further seems unreasonable to me.
19                    SPECIAL MASTER RODRIGUEZ:  All right.
20   Well, I believe I have what I need.  The parties have
21   submitted what they have.  I will take a look at this.
22   If I find that I need additional information, I will let
23   you know.  But I think I have what I need to make a
24   decision on this.  I just need to sit down and look at
25   what has been recently submitted.
```