# Exhibit 10

<u>*Warner Records, Inc., et al. v. Charter Communications, Inc.*</u> **/ Plaintiffs' Response to Charter's Privilege Log**

| Item # | Charter's Privilege Description | Author(s) and Recipients | Plaintiffs' Challenge |
|---|---|---|---|
| 28 | Partially redacted email transmitting internal presentation attachment with notes reflecting legal advice from Kelly Starkweather* and Kiril Abramov* regarding copyright program. | Email-From: Alan Cobourn<br><br>Email-To: DL Corp Internet Security <dlcorpinternetsecurity@charter.com>; DL Corp SRT <dlcorpsrt@charter.com><br><br>Email-BCC: Laurie Rowlett; Tammy Stewart; Kelly Matthews; Andre Owens; Maureen Linhares; Alan Cobourn; Colton Mabb; Adam Smith; Timothy Brockel; Todd Neuverth; Austin McNeil; Brad Touchette; Jamie Gress; Anton Taylor; Travis Waller; Neal Borowiak; Timothy O'Brien; Kenneth | Plaintiffs challenge the assertion of privilege over both the email and the attached presentation.<br><br>Charter's privilege log indicates that the email and presentation were sent by Alan Cobourn, a Charter Security Specialist, who is not an attorney and did not work in the legal department.<br><br>Charter's privilege log indicates that the email and presentation were primarily distributed to two different listservs. During the meet and confer, Charter's counsel was unable to identify who was on either of the two listservs at the time of the email, the number of individuals on the listservs, or the nature of the listserv groups. The log then indicates that the email and presentation was blind carbon copied (BCC) to 24 other identified individuals, only one of whom was an attorney. None of those individuals include either Kelly Starkweather or Kiril Abramov, who are alleged to have provided the legal advice claimed. During the meet and confer, counsel also indicated that the attached presentation was used at an in-person meeting, but again, counsel was not able to identify any details about that meeting including who was in attendance at the time.<br><br>Charter cannot sustain its assertion of privilege on this email or attachment for two reasons. First, this email was sent broadly throughout Charter using two different listservs and a long list of other recipients. Both because it was widely disseminated |

1

| | | Gebken; Mike Hathaway; Kyle Free*; Mike Mclean; Laurie Ward; Jesse Williamson; Timothy Hobson | and because Charter does not even know who the recipients were, Charter cannot show that the email and presentation were only sent to those who needed to know the alleged legal information contained within it. *Orion Corp. v. Sun Pharm. Indus., Ltd*., No. CIV.A 07-5436(MLC), 2010 WL 686545, at *10 (D.N.J. Feb. 22, 2010) (privilege waived for a presentation sent to 112 recipients, where party did not establish that dissemination was limited to individuals who needed to know the information contained in the presentation); *Hayes v. SmithKlineBeecham Corp*., No. 07-CV-682 CVE-SAJ, 2008 WL 11381397, at *4 (N.D. Okla. Dec. 19, 2008) ("where legal advice is disseminated to a large group of personnel including lawyers and non-lawyers and doing so was unnecessary to transmit the lawyer's advice, any privilege claimed for that communication is waived due to a lack of confidentiality in the manner chosen to disseminate the advice."); *Muro v. Target Corp*., No. 04 C 6267, 2006 WL 3422181, at *4 (N.D. Ill. Nov. 28, 2006) ("Communications reflecting a large recipient pool-particularly when the privilege log is void of any factual detail as to the capacities in which those individuals were included in the information chain-do not evidence an intention to create and guard a confidential and privileged communication.").<br><br>Second, based on the broad dissemination to two different listservs that appear to include every employee involved in network security, the email and presentation appear to be operational in nature. *RCHFU, LLC v. Marriott Vacations Worldwide Corp*., No. 16-CV-1301-PAB-GPG, 2018 WL 3055774, at *4 (D. Colo. May 23, 2018) (document prepared primarily for purposes of developing operational strategy was not privileged). |

2

| | | | |
|---|---|---|---|
| | | | A more fulsome discussion of the nature of the email and presentation would be possible if Charter provided any detail about the title of the email or presentation.  However, during the parties' meet and confer, Charter's counsel refused to answer any questions about even the general nature of the attached presentation.  Notably, Plaintiffs provided titles for all such documents in their privilege log, but Charter refuses to reciprocate.<br><br>Finally, Charter's counsel stated that the presentation was entirely legal in nature and therefore was privileged in its entirety, which Plaintiffs challenge as highly unlikely and not supported by the log description.  Even if this presentation was created by or based on information provided by an attorney (which counsel did not confirm), it likely contains factual information.  As the Supreme Court has held, the attorney-client privilege protects only the disclosure of communications; it does not protect the disclosure of the underlying facts that might have been the subject of those communications.  *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 685 (1981).  At the very least, Charter should be compelled to produce the portions of the presentation that address any factual information, while redacting any privileged legal advice or communication.  Indeed, based on this guiding principle, Plaintiffs have agreed to produce several documents that Charter inquired about in redacted form, to allow for the disclosure of underlying facts in otherwise privileged materials. |
| 19-27 | (#19) Internal presentation reflecting the legal advice of in-house counsel regarding copyright program. | (#19) <u>Authors</u>: Kirill Abramov*; Kelly Starkweather*<br><br>(#20-21) <u>Email-From</u>: | According to Charter's counsel, items 19-27 on its privilege log all relate to the email and presentation discussed in item 28 above.  To the extent that item 28 is not privileged, the privilege assertion for these items should fail as well. |

3

| | | |
|---|---|---|
| (#20-21) Email seeking legal advice and internal presentation attachment with notes seeking and reflecting the legal advice of in-house counsel regarding copyright program.<br><br>(#22) Internal presentation with notes reflecting the legal advice of in-house counsel regarding copyright program.<br><br>(#23, 24) Email chain seeking and reflecting the legal advice of in-house counsel and internal presentation attachment with notes reflecting the legal advice of in-house counsel regarding copyright program.<br><br>(#25) Partially redacted email chain transmitting internal presentation attachment with notes reflecting legal advice from Kelly Starkweather* and Kirill Abramov* regarding copyright program.<br><br>(#26) Email chain providing information and attachments providing information to | Alan Cobourn<br>Email-To:<br>Kelly Starkweather*<br>Email-CC:<br>Tammy Stewart<br><br>(#22) Authors:<br>Kirill Abramov*; Kelly Starkweather*<br><br>(#23, 24) Email-From:<br>Kelly Starkweather*<br>Email-To:<br>Alan Cobourn<br>Email-CC:<br>Tammy Stewart<br><br>(#25) Email-From:<br>Laurie Rowlett<br>Email-To:<br>Alan Cobourn<br>Email-CC:<br>Tammy Stewart<br><br>(#26, 27) Email-From:<br>Laurie Rowlett<br>Email-To:<br>Kelly Starkweather*<br>Email-CC:<br>Tammy Stewart | More specifically, items 19 and 22 do not appear to be emails or letters, but rather just the internal presentation in item 28 itself or versions thereof.  Charter asserts attorney-client privilege over these documents, even though it does not appear as though there is any communication at all here.  At best, Charter may be able to assert work product protection over these documents if it can demonstrate that they were created in anticipation of litigation at this point in time.  However, Charter has not put forward sufficient facts to make this assertion for these documents to date.<br><br>Items 20, 21, and 23-27 appear to be emails about the presentation above.  If the presentations themselves are not protected, then the assertion of privilege over the emails related to them seem flawed. |

4

| | | | |
|---|---|---|---|
| | obtain legal advice from in-house counsel regarding copyright notices.<br><br>(#27) Email chain providing information and attachments providing information to in-house counsel to obtain legal advice regarding copyright notices. | | |
| 4 | Email chain seeking legal advice from in-house counsel and providing attachments to in-house counsel to obtain legal advice regarding internal presentation on customer communications. | Email-From: Laurie Rowlett<br>Email-To: Christopher Avery* | During the meet and confer, Charter's counsel indicated that the attachment to this document was a PowerPoint presentation related to Charter customer communications related to copyright notices.  Charter's counsel was not aware of whether this presentation had been given to an audience or who else may have received it.  Counsel did acknowledge that the presentation included factual information, but claimed that it was roped into privileged information.<br><br>Charter's description of this email and the attachments is vague and does not sufficiently provide a basis to claim attorney-client privilege.  Charter refused to provide a title of the attached presentation, whereas Plaintiffs have provided the titles of the documents in their privilege log.<br><br>Based on the foregoing, Charter has not sustained the assertion of privilege over the attachment. |
| 29-35 | Email chain providing information and attachments providing information to obtain legal advice from in-house counsel regarding copyright notices. | Email-From: Tammy Stewart<br>Email-To: Kelly Starkweather*<br>Email-CC: Laurie Rowlett | These six items are all emails and attachments from a Charter employee, Tammy Stewart (who appears to have worked on Charter's network security team) to Kelly Starkweather, Charter's in-house counsel.  During the meet and confer, Charter's counsel refused to answer questions on whether the attachments themselves were privileged, nor the general nature |

5

| | | | of the attachments—for example, whether the attachments included customer communications, ticket data, CATS data or other information that otherwise may have been spoliated. To the extent that the emails and attachments contain such information, they should be produced. |
|---|---|---|---|
| 17 | Email obtaining information and document attachment summarizing information to seek legal advice from Kelly Starkweather* regarding copyright program. | Email-From: Tammy Stewart Email-To: Laurie Rowlett | This item is an email between two Charter employees, neither of whom is a lawyer or works in the legal department. During the meet and confer, Charter's counsel indicated that the attached document summarizes internal questions on handling notices. Information about how Charter handles notices is not privileged; it is operational. *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-1301-PAB-GPG, 2018 WL 3055774, at *4 (D. Colo. May 23, 2018) (document prepared primarily for purposes of developing operational strategy was not privileged).<br><br>To date, Charter has produced very little documentation describing how it handles infringement notices. To the extent that Charter is seeking to shield such documents from production by claiming that they are privileged, that is improper. Documents describing Charter's operational steps in response to notices are not legal advice. They are internal policies, likely broadly disseminated to the security team within Charter. Charter should be instructed to produce this document, as well as any other similar documents that it is withholding under claim of privilege. |