# Exhibit 11

# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4800

**Via Email**

June 1, 2020

Special Master Regina Rodriguez
1225 17th Street, Suite 26
Denver, CO 80202
regina.rodriguez@wilmerhale.com

Re:   *Warner Records, Inc., et al. v. Charter Commc'ns, Inc.*,
D. Colo. Case No. 19-cv-00874-RBJ-MEH

Dear Ms. Rodriguez:

Pursuant to your April 28, 2020 Order, Dkt. 164 at 9, Plaintiffs "agreed to undertake to find the answer to the Defendant's question if they are able" as to "whether the digital files that the Plaintiffs have produced in response to Defendant's Request for Production No. 2 are the same files that were used by or provided to Audible Magic" as "a legitimate version of the copyrighted work" used to compare to "a suspected file on a P2P network to confirm that the online copy did in fact contain the copyrighted work, as opposed to another work with a similar title, an amateur cover, a corrupted or 'dud' file, a different version by the same artist, or something else."

By way of background, it is important to understand the role the requested Audible Magic reference files have to this case. Charter has argued that these files are critical to knowing whether the works in suit are infringing. *See* Charter's Apr. 10, 2020 Submission to the Special Master at 4–5; *see also* Pls.' April 15, 2020 Response at 4. This is simply not true. Plaintiffs have produced copies of the infringing music files. Those music files can be listened to and compared with legitimate copies of the same recordings. Doing so will demonstrate that the works in suit have been infringed, and that the notices alleging as much were accurate. Whether Plaintiffs can identify the reference files that Audible Magic used years ago when it was first reviewing infringing files from P2P networks will not change the answer to the question of whether the files that Charter's subscribers distributed and downloaded via Charter's network were in fact infringing.

Notwithstanding the foregoing, and at great expense of time and effort, Plaintiffs have been conducting a diligent investigation to answer the question raised in your Order. The only practical way to do so is by reference to the International Standard Recording Codes, or "ISRCs," associated with each recording. An ISRC is a "unique and permanent identifier" that "can never represent more than one unique recording."[1] While Plaintiffs' investigation is ongoing, at this

---

[1] "What is an ISRC?," *available at* https://usisrc.org/about/index.html.

**COVINGTON**

Regina Rodriguez
June 1, 2020
Page 2

time, they can confirm that the ISRCs of at least 5,765 (approximately 83%) of the digital files produced for the sound recordings at issue in this case match the ISRCs of digital files used to generate "fingerprints" for Audible Magic's use in confirming suspected infringements.

Plaintiffs are continuing to investigate the remaining 17% of the sound recordings at issue in this case, and will endeavor to produce by June 30, 2020, digital files with ISRCs matching those used to generate Audible Magic fingerprints to the extent they have not already done so.

Sincerely,

/s/ Neema T. Sahni
Neema T. Sahni