# Exhibit 14

## Statement of Pending Discovery Disputes (June 26, 2020)
Submitted by: Defendant Charter Communications, Inc. ("Charter")

### I. Audible Magic Reference Files and Fingerprints

| Request at Issue (verbatim) | Response to Request (verbatim) | Explanation of Position | Opposing Party Response |
|---|---|---|---|
| **RFP 90**: For the Copyrighted Works, copies of the digital files You used (or provided to a third party to use) to create a digital fingerprint through the Audible Magic System that were used by Audible Magic and/or MarkMonitor in connection with the creation of the infringement notices sent to Charter.<br><br>**RFP 91**: For the works for which you created digital fingerprints, as described in Request No. 92,[1] | **Objs. to RFP 90**: Plaintiffs object to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case, including because Plaintiffs have already produced, or will be producing digital copies of the works in suit and infringing copies of the works in suit. No other copies are necessary to establish direct infringement and therefore are not relevant or proportional to the needs of the case. Therefore, the burden and/or | In response to Charter RFP 2,[3] Plaintiffs produced or are producing digital copies of their sound recordings in suit.<br><br>At issue here is RFP 90, seeking the Reference Files,[4] and RFP 91, seeking documents sufficient to show the "fingerprints"[5] made from those Reference Files. Before moving to compel a response to RFP 90, Charter asked Plaintiffs to confirm whether the digital files produced in response to RFP 2 are copies of | • RFP 90 asks for "*copies* of the digital files . . . used . . . to create a digital fingerprint[.]" As explained in previous letters, Plaintiffs already confirmed that the vast majority of copies they produced in response to RFP 2 are in fact the "copies" called for in RFP 90. Plaintiffs are in the process of confirming the remaining minority of works, and will produce further copies to the extent necessary. This satisfies Charter's demand in RFP 90. |

---

[1] **RFP 92**: Documents and communications sufficient to show the process used to create the digital fingerprints for the Copyrighted Works used by Audible Magic and/or MarkMonitor to match alleged infringements.
[3] **RFP: 2** Full digital copies of all Copyright Works, including any and all versions of each Copyright Work You claim has been infringed, and any version submitted to the United States Copyright Office of the Library of Congress.
[4] "Reference Files" are copies of the digital files used to create fingerprints used to verify the alleged direct infringements at issue.
[5] A "fingerprint" is a unique identifier for a sound recording, which can be used to determine whether another file contains an identical sound recording. Plaintiffs claim they used fingerprints to determine whether an infringing file contained a copy of a work in suit.

1

| | | | |
|---|---|---|---|
| documents sufficient to show those digital fingerprints. | expense of the proposed discovery outweighs any likely benefit.<br><br>**Resp. to RFP 90**: Pursuant to the foregoing objection, Plaintiffs have or will produce digital copies of the recordings in suit and infringing copies of the works in suit.<br><br>**Objs. to RFP 91**: Plaintiffs object to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case, including because Plaintiffs have already produced, or will be producing digital copies of the works in suit and infringing copies of the works in suit. No other copies are necessary to establish direct infringement and therefore are not relevant or | the Reference Files.[6] Plaintiffs refused and the Special Master ordered them to do so.<br><br>On June 1, Plaintiffs responded but did not comply with the order, as they refused to confirm whether the produced files are copies of the Reference Files, instead arguing that the question was irrelevant and that the "ISRCs" for a subset of the digital files match, though refusing to say what reference material they used to make that determination.<br><br>Charter asked that Plaintiffs comply, answer the question, and provide the source used to match the ISRCs. Plaintiffs refused. That issue is currently before the Special Master.[7] Charter now seeks an order compelling | • Charter's argument that Plaintiffs "did not comply" with the Special Master's April 28 order is wrong.  Plaintiffs confirmed that the produced files are the same as the Reference Files.  As Plaintiffs explained in their June 1 and June 15 submissions, the way to determine that *is* by reference to "ISRCs." An ISRC is a unique and permanent identifier that can never represent more than one unique sound recording.  Because of this, a digital file associated with a given ISRC in 2015 will have the same audio content as a digital file associated with that ISRC today.<br><br>• RFP 91 seeks irrelevant, burdensome, and cumulative information.  Charter does not |

---

[6] The Special Master previously denied Charter's motion to compel without prejudice as premature, pending Plaintiffs' June 1, 2020 response.  *See* May 29, 2020 Order at 25-26.

[7] Plaintiffs refuse to produce the information they used to match the ISRC codes claiming it is not called for by RFP 90 or 91. This is disingenuous, as Plaintiffs are then relying on information they claim is not responsive to Charter's requests to attempt to satisfy Charter's request. Charter is entitled to this information to determine whether Plaintiffs' representations are accurate. In any event, this information is responsive to Charter's RFP 92, which Plaintiffs have agreed to answer. *See supra*, n.1; Resp. to RFP 92 ("Subject to the foregoing objections, Plaintiffs will produce non-privileged, non-work product documents responsive to this request to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable and diligent search.").

2

| | | | |
|---|---|---|---|
| | proportional to the needs of the case. Therefore, the burden and/or expense of the proposed discovery outweighs any likely benefit.<br><br>**Resp. to RFP 91**: Pursuant to the foregoing objection, Plaintiffs have or will produce digital copies of the recordings in suit and infringing copies of the works in suit.[2] | Plaintiffs to respond to RFPs 90 and 91.<br><br>RFP 90 seeks the Reference Files. As discussed, if what Plaintiffs have produced are copies of the files used to create the Reference Files, then this request is satisfied. If not, the Reference Files should be produced. If Plaintiffs do not have the Reference Files, Charter is entitled to that information, as it bears on Plaintiffs' ability to prove direct infringement in this case (and to what extent the fact-finder assigns any weight to the direct infringement "evidence"), a necessary prerequisite to the secondary claims against Charter. The Reference Files are fundamental because Plaintiffs did not download the allegedly infringing files from Charter subscribers because MarkMonitor charged more money to do so, and instead relied solely upon a metadata matching process that | need the fingerprint used by Audible Magic—in some cases from *eight years ago*—to determine if the works are infringing. Charter has both the infringing recordings and the legitimate recordings. Charter can conduct this comparison using those materials alone.<br><br>• Further, Charter's RFP 92 does not call for the production of any digital fingerprint. As such, Plaintiffs' willingness to search for and produce documents sufficient to demonstrate the *process* of creating fingerprints, as requested and to the extent they exist, does not encompass the fingerprints themselves.<br><br>Similarly, Charter has not served any request calling for production of "the information . . . used to match the ISRC codes." The plain text of the three RFPs Charter cites in its improper |

---

[2] Charter does not intend to misstate Plaintiffs' response and, accordingly, has copied Plaintiffs' served responses to these requests in the column, as ordered. That said, there has been correspondence between the parties regarding these request subsequent to Plaintiffs' responses, in which Plaintiffs have explained their position. To the extent Charter believes Plaintiffs' position is necessary to explain Charter's request, Charter has incorporated that into the "Explanation of Position" column. Charter expects Plaintiffs to supplement their position in the "Opposing Party Response" column.

| | | | |
|---|---|---|---|
| | | relied on the Reference Files to match alleged infringements. The Reference Files provide a key link in Plaintiffs' ability to prove direct infringement.<br><br>RFP 91 seeks "documents sufficient to show [the] digital fingerprints." Again, Plaintiffs refuse to produce responsive documents on the basis that they are producing digital copies of the works in suit. But those files are not responsive to a request seeking fingerprints. Charter seeks this information so that it can analyze *what* Audible Magic was matching alleged infringements against. Plaintiffs created these fingerprints (at least for some works), provided them to Audible Magic, MarkMonitor, and/or the RIAA,[8] and they were then used by Audible Magic and MarkMonitor to purportedly verify the alleged infringements at issue.[9] As with RFP 90, whether | footnote makes this abundantly clear: RFP 90 seeks "copies of digital files"; RFP 91 seeks documents sufficient to show the Audible Magic fingerprints; RFP 92 seeks documents "sufficient to show the process used to create the digital fingerprints." |

---

[8] Documents produced by Audible Magic to date demonstrate that, in at least some instances, Plaintiffs created their own fingerprints using Audible Magic's technology in-house.

[9] *See Sony* Trial Tr. 465:25-466:5) (*Sony* plaintiffs' expert testified: "Audible Magic gets recordings from the content providers, that is to say, from the record companies, and it uses its patented software to create fingerprints that are present in each song recording, and it

4

| | | | |
|---|---|---|---|
| | | Plaintiffs maintained these fingerprints, and whether they match works in suit, is fundamental to Plaintiffs' direct infringement case.<br><br>It is also unclear how Plaintiffs can refuse to produce documents in response to RFP 91 while, at the same time, agreeing to produce documents in response to RFP 92, seeking "[d]ocuments and communications sufficient to show the process used to create the digital fingerprints for the Copyrighted Works used by Audible Magic and/or MarkMonitor to match alleged infringements." Such documents should include the fingerprints and Reference Files.<br><br>Plaintiffs failed to articulate any burden, and refused to even say during meet and confer whether they have the requested documents. | |

---

puts those in a database along with information like the song's artist and title, and that's what I'm going to call a reference database."); *see also id.* 502:22-25 (MarkMonitor's infringement verification process "works by matching this digital fingerprint of a song to a database of digital fingerprints. It's not matching a file to a file. It's, it's the digital fingerprint stored in the database.").