# Exhibit 15

Oppenheim + Zebrak, LLP

Jeffrey M. Gould
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
jeff@oandzlaw.com

*Via Electronic Mail*                                                July 21, 2020
Special Master Regina Rodriguez
regina.rodriguez@wilmerhale.com

      Re:    **_Warner Records et al. v. Charter Communications_, Case No. 19-cv-00874**

Dear Special Master Rodriguez:

    For the reasons below, Charter's motion should be denied in its entirety.

**I.    Plaintiffs should not be required to conduct an irrelevant analysis regarding sound recordings issued as albums or compilations for Interrogatory 13.**



July 21, 2020
Page 2 of 10





## II.    RFP 59 seeks overbroad discovery into irrelevant and privileged matters.



### A.  Charter's RFP 59 is overbroad and seeks irrelevant information.



July 21, 2020
Page 4 of 10



**B.  Mitigation of damages is not a valid affirmative defense in this District.**



**C.  Mitigation is irrelevant to the calculation of a statutory damages award.**



July 21, 2020
Page 5 of 10





**D.  Charter's remaining justifications for RFP 59 all lack merit.**





### III. Charter's request for testimony concerning Rightscorp seeks irrelevant information in contravention of the Special Master's prior ruling.





### IV.     Charter's request for documents sufficient to demonstrate which files were fingerprinted is not called for by any RFP and seeks irrelevant information.

Charter seeks documents sufficient to show which music files were used to generate Audible Magic fingerprints, "including the information upon which Plaintiffs relied in order to represent that the digital files Plaintiffs have produced to date have the same ISRCs" as files used in Audible Magic's identification of the infringing works at issue in this case.

There is no basis to compel such production, because none of the RFPs Charter cites call for this information.  RFP 90 seeks "*copies of the digital files*" Plaintiffs used to create digital fingerprints that were used by Audible Magic in connection with the infringement notices sent to Charter; RFP 91 seeks "documents sufficient to show those *digital fingerprints*"; RFP 92 seeks "documents sufficient to show the *process* used to create the digital fingerprints" used by Audible Magic to match alleged infringements; and RFP 93 seeks "*communications*" between Plaintiffs and Audible Magic exchanged for the purpose of matching alleged infringing files with digital copies.  Not a single one of these requests asks for documents *used by litigation counsel* to identify the ISRCs of the files used to create Audible Magic fingerprints.[8]

Although Charter's failure to identify an applicable document request is dispositive, Charter also has not demonstrated that the requested information is relevant to any issue in the case.  Charter has repeatedly claimed it needs so-called "Reference Files" and fingerprints to rebut Plaintiffs' claims of direct infringement, but that is plainly not true.  The relevant question in determining infringement is whether "the accused work is sufficiently similar that an ordinary observer would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression[.]"  *See, e.g., Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996) (reversing district court because "a finding of substantial similarity does not require that an infringing work be a 'virtual copy' of a protected one").  Here, Plaintiffs have produced copies of the *actual* protected works—the *actual* copyrighted sound recordings that Plaintiffs claim were infringed—and copies of the infringing files.  As in any other infringement case, comparison of those two things is all that is necessary to prove (or disprove) infringement.

Charter has never responded to this point or explained why it needs *proxies* for the copyrighted works—or any information related to the generation of those proxies—when Plaintiffs are providing the copyrighted works themselves.  Notwithstanding this lack of relevance, Plaintiffs have agreed to produce email correspondence with Audible Magic regarding the provision of fingerprints or digital copies, and the parties have agreed on broad search terms intended to capture any copies of fingerprints (or copies of digital files) that may have been

---

[8] To the extent Charter seeks communications between Plaintiffs and their counsel regarding the investigation into which ISRCs were sent to Audible Magic, those attorney-client communications are core work product and not discoverable.

transmitted by email (however unlikely).  July 2 Hr'g Tr. 153:4–8.  Plaintiffs have also agreed to search for email communications regarding the "process for creating the fingerprints," (RFP 92) despite Charter's limited request for "documents and communications *sufficient to show*" that process.[9]  No more is required or warranted.

**V.  Charter's request regarding the** ███████████████████ **should be denied.**



July 21, 2020
Page 10 of 10



Sincerely,

*Jeffrey M. Gould*