# Exhibit A

Telephonic Hearing
July 2, 2020

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH
_____

WARNER BROS. RECORDS INC., et al.,

Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC.,

Defendant.

_____

TELEPHONIC HEARING

July 2, 2020
_____

      This telephonic hearing was taken before Special Master Regina Rodriguez on July 2, 2020, at 10:01 a.m. Mountain Standard Time before K. Michelle Dittmer, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, K. Michelle Dittmer, appearing remotely via telephone)

1    therefore, also won't be getting the data with respect to
2    the overwhelming majority of subscribers that were
3    actually the subject of our notices.
4              So, you know, I could go through other
5    reasons why --
6              SPECIAL MASTER RODRIGUEZ: Well, you say
7    that -- yeah. So you said that had you known the exact
8    lay of the land at the hearing with Judge Hegarty, you
9    wouldn't have made the agreement that you made. Well,
10   now that you know the exact lay of the land, what
11   agreement would you be willing to make with regard to
12   this data? Is there a compromise between: We want all
13   ticket data for the claim period?
14             MR. SPERLING: So I imagine that we could
15   potentially limit it to some number of sort of the
16   overall top ticket recipients, so maybe we take several
17   hundred, and Charter then has the burden to review the
18   data. It seems to me that's more burdensome for them,
19   but they can sort the data, identify the subscribers that
20   were the subject of the greatest number of participants.
21             But I think probably what makes the most
22   sense is, if you're telling us, "Please come up with a
23   compromise proposal," we can go back, we can do that. We
24   can be prepared to discuss that with Charter next week.
25   We can put it together with the search term discussion,

```
 1   and then we can be prepared to address that with you when
 2   we reconvene --
 3                SPECIAL MASTER RODRIGUEZ:  Okay.
 4                MR. SPERLING:  -- on the 15th.
 5                SPECIAL MASTER RODRIGUEZ:  I think that
 6   makes sense.  And I've got to tell you, I have -- feel
 7   that the answer lies somewhere between, you know, what
 8   you have now and everything that you've asked for.
 9                And so I do think it makes sense for you
10   to come up with something reasonable here.  Not all of it
11   is going to be important and relevant to what you're
12   needing or at that level, which would require that level
13   of production.  Unless, you know, you cannot find an
14   agreement, and then I will make one.
15                But my request is that each party make a
16   proposal, not just balk at the others, but the -- what is
17   your affirmative proposal?
18                MR. SPERLING:  Yes, we will do that.
19                SPECIAL MASTER RODRIGUEZ:  Okay.  All
20   right.  Plaintiffs' Issue -- I think it's Number 6 with
21   regard to the custodians.
22                MR. SPERLING:  So with respect to
23   Plaintiffs' Issue 6, Ms. Rodriguez, we were going to have
24   Mr. Ehlers lead the discussion on that, and then we
25   realized that he's not yet been admitted in this case.
```

```
 1   there.
 2                  MS. GOLINVEAUX:  Ms. Rodriguez --
 3                  SPECIAL MASTER RODRIGUEZ:  All right.
 4   So this --
 5                  MS. GOLINVEAUX:  -- this is the first
 6   time --
 7                  SPECIAL MASTER RODRIGUEZ:  Hold on a
 8   minute.  Hold on, hold on.
 9                  MS. GOLINVEAUX:  Okay.
10                  SPECIAL MASTER RODRIGUEZ:  Hold on.
11                  MS. GOLINVEAUX:  Okay.
12                  SPECIAL MASTER RODRIGUEZ:  Hold on.
13                  MS. GOLINVEAUX:  Okay.  Sorry.  Sorry.
14                  SPECIAL MASTER RODRIGUEZ:  I just want to
15   be clear I've heard what's being said.
16                  MS. GOLINVEAUX:  Okay.
17                  SPECIAL MASTER RODRIGUEZ:  So there are
18   three plaintiff groups, and some of those plaintiff
19   groups did create fingerprints in-house and sent those
20   fingerprints to Audible Magic.  The two that did create
21   those fingerprints are Sony and Warner, but --
22                  MS. SAHNI:  Correct.
23                  SPECIAL MASTER RODRIGUEZ:  -- your
24   representation, Ms. Sahni, is that those fingerprints
25   were not retained and that once the fingerprints were
```

|   |   |
|---|---|
| 1 | sent to Audible Magic, Sony and Warner did not continue |
| 2 | to retain those fingerprints. |
| 3 | Thus, even if I were going to order the |
| 4 | fingerprints to be produced by the plaintiffs in this |
| 5 | case, they do not exist today to be produced.  Is that |
| 6 | correct? |
| 7 | MS. SAHNI:  That is my understanding after |
| 8 | careful investigation and discussion with our clients, |
| 9 | Ms. Rodriguez. |
| 10 | SPECIAL MASTER RODRIGUEZ:  All right.  And |
| 11 | then the third plaintiff group, Universal, did not create |
| 12 | any fingerprints in-house.  And I guess the question |
| 13 | there is, why did they not present -- sorry, why did they |
| 14 | not create fingerprints? |
| 15 | MS. SAHNI:  Yeah. |
| 16 | SPECIAL MASTER RODRIGUEZ:  Was something |
| 17 | different about the procedure or the technology as it |
| 18 | relates to Universal, or they just have a different |
| 19 | understanding? |
| 20 | I'm just trying to understand, if that's |
| 21 | the way it's done, you create the fingerprints and you |
| 22 | send it to Audible Magic, why did some do it and some |
| 23 | not?  Or vice versa -- |
| 24 | MS. SAHNI:  Yeah. |
| 25 | SPECIAL MASTER RODRIGUEZ:  -- if it's not |

```
 1   of the Audible Magic database.  So there's no reason for
 2   our clients to use them because they don't have the
 3   Audible Magic database.  So they would create the
 4   fingerprint, upload it, and that was the end of it.
 5                SPECIAL MASTER RODRIGUEZ:  Okay.  Okay.
 6   So then the -- in terms of the defendant's specific
 7   request is why you have used the process that you have
 8   just described, Ms. Sahni, to provide them with the
 9   information that they're requesting.
10                But again, even were I inclined to require
11   the production of the fingerprints, you've indicated that
12   those fingerprints do not exist to produce?
13                MS. SAHNI:  That's our understanding,
14   correct, Ms. Rodriguez.
15                SPECIAL MASTER RODRIGUEZ:  Okay.  All
16   right.  So given that those fingerprints do not exist,
17   Ms. Golinveaux, what is it that you don't have that you
18   believe you should have now?
19                MS. GOLINVEAUX:  Thank you, Ms. Rodriguez.
20                First, I'm a little bit floored.  This is
21   the first time, after months of meeting and conferring
22   with the plaintiffs about this issue, about the exchange
23   of letters with you about the reference files, the sworn
24   interrogatory responses about the process, this is the
25   very first time we're hearing that plaintiffs, who hired
```

```
 1                  MS. GOLINVEAUX:  -- to confirm, is that --
 2   we're not looking for a file with the same audio content.
 3   We're actually looking for the files that were provided
 4   to Audible Magic so that we can analyze those.
 5                  I understand it has that same ISRC
 6   innate -- it's the same content.  But we're entitled to
 7   look at the files that were actually provided to Audible
 8   Magic to analyze those.  Some of them --
 9                  SPECIAL MASTER RODRIGUEZ:  Well --
10                  MS. GOLINVEAUX:  -- may have been --
11                  MS. SAHNI:  Ms. Rodriguez --
12                  SPECIAL MASTER RODRIGUEZ:  Yeah.  So do
13   those files even actually still exist?
14                  MS. SAHNI:  Ms. Rodriguez, that is my
15   point.  This is -- it is a red herring, because this --
16   the way to determine that is by reference to ISRC.  Our
17   clients have databases of recordings.  The way they get a
18   recording is by looking up the ISRC.
19                  To the extent Charter is concerned that
20   there is a portion of a recording associated with a given
21   ISRC that may have been used to create a fingerprint, as
22   we confirmed in our June 15 letter, in each instance,
23   complete copies of the sound recording associated with an
24   applicable ISRC was used.
25                  So it is -- that is how we make that
```

1 REPORTER'S CERTIFICATE

2

3     I, K. MICHELLE DITTMER, Registered Professional

4 Reporter and Notary Public, State of Colorado, do hereby

5 certify that the said hearing was taken in machine

6 shorthand by me at the time and place aforesaid and was

7 thereafter reduced to typewritten form; that the

8 foregoing is a true transcript of the proceedings had. I

9 further certify that I am not employed by, related to,

10 nor counsel for any of the parties herein, nor otherwise

11 interested in the outcome of this litigation.

12     IN WITNESS WHEREOF, I have affixed my signature

13 this 7th day of July, 2020.

14     My commission expires April 15, 2024.

15

16     _____
    K. MICHELLE DITTMER
    Registered Professional Reporter
17     Wilson & Associates, LLC

18

19

20

21

22

23

24

25