# Exhibit M



North America   Europe   Asia

101 California Street
34th Floor
San Francisco, CA 94111
T +1 415 591 1000
F +1 415 591 1400

**JENNIFER A. GOLINVEAUX**
jgolinveaux@winston.com

June 5, 2020

**VIA EMAIL**

Special Master Regina Rodriguez
Regina.rodriguez@wilmerhale.com

Re:   *Warner Records, Inc., et al. v. Charter Communications, Inc.*, 19-cv-00874-RBJ-MEH – Charter's Response to Plaintiffs' June 1, 2020 Letter re Audible Magic Reference Files

Dear Ms. Rodriguez:

We write on behalf of Defendant Charter in response to Plaintiffs' June 1 Letter, which purported to respond to your April 28 order requiring Plaintiffs to tell Charter "whether the digital files that the Plaintiffs have produced in response to the Defendant's Request for Production No. 2 are the same files that were used by or provided to Audible Magic to make those reference files." ECF 164 ("Order"). Plaintiffs' response did not comply with your Order, and raises new questions regarding the reference files.

Rather than confirming whether the music files Plaintiffs are in the process of producing are in fact the same files that were used to make the Audible Magic fingerprints (the "Reference Files"), Plaintiffs start by arguing that the Reference Files are not really relevant because Plaintiffs have "produced copies of the infringing music files", which can simply be "listened to and compared with legitimate copies." This is inaccurate and highly misleading. As Plaintiffs know, MarkMonitor *did not* download copies of the allegedly infringing music files at issue from Charter subscribers to check the contents. It offered this service in advance of sending infringement notices, but Plaintiffs elected a cheaper version of the service that did not include it. Instead, in March 2016, *nearly a year after* Plaintiffs sent their last infringement notice to Charter, MarkMonitor, presumably at Plaintiffs' direction, went back to the peer-to-peer networks and downloaded *new* purported copies of Plaintiffs' works, not from the allegedly infringing Charter subscribers, but from the networks at large. (These are the files on the MarkMonitor Hard Drive that has been separately addressed to the Special Master.)

The Reference Files are *highly* relevant to Plaintiffs' ability to establish the underlying direct infringements at issue. The only way MarkMonitor claims to have known during the 2013-2016 claims period whether the infringing files about which it sent notices contained copies of Plaintiffs' works, was by comparing *metadata* from suspected infringing files to the Reference Files using the Audible Magic fingerprinting technology. Determining the accuracy of Plaintiffs' notices, which form the basis of the secondary liability claims against Charter, requires first knowing what the files *were being matched to*. The Reference Files are the key link in that chain, which, if missing, pose serious issues to Plaintiffs' ability to establish the underlying direct infringement. Plaintiffs' hard drive of purportedly "infringing files" (collected long after Plaintiffs sent the infringement notices at issue and from the internet at large rather than from Charter subscribers), has nothing to do this with this process.

Accordingly, Charter cannot simply check a notice, inspect the actual file allegedly shared by that Charter subscriber, and confirm that it contains one of Plaintiffs' works in suit by listening to it. Instead,



June 5, 2020<br/>Page 2

MarkMonitor merely matched metadata for Audible Magic-matched files in its own database to the metadata of the file purportedly possessed by that Charter subscriber. The reliability of this metadata-matching process requires examination of the Reference Files. Therefore, contrary to Plaintiffs' claims, their hard drive of infringing files with tens of thousands of standalone files downloaded from peer-to-peer sites is not a substitute for providing the Reference Files nor any other adequate check on the veracity of their notices. Indeed, if Plaintiffs did not retain the Reference Files, it becomes all the more important for Charter to inspect the actual file index for the Mark Monitor Hard Drive and a forensic copy of that drive, as requested on May 26, to understand the genesis of those files.

Putting aside Plaintiffs' specious arguments regarding the relevance of the Reference Files, Plaintiffs have failed to comply with the Order. Rather than confirming whether the digital files they are in the process of producing are the same files used to make the Audible Magic fingerprints, as ordered, Plaintiffs' June 1 Letter dodges the question and merely says that they have now determined that (approximately 83% of) the digital files they have produced have industry codes (the Industry Standard Recording Codes ("ISRC")) that match the files used to create the Audible Magic fingerprints.[1] But that was not the question Plaintiffs were ordered to answer. As explained at the link Plaintiffs provided at fn. 1 of their June 1 Letter, an ISRC is simply a unique identifier for a specific recording, independent of format. The fact that Plaintiffs have somehow determined that some portion of the files they have produced have ISRCs that match the Reference Files used to create the Audible Magic fingerprints does not answer the question of whether the same *files* were used, or what portion of the recording was contained on the Reference File. Plaintiffs should comply with the Order and confirm whether the files they have produced to date are in fact the same files used to create the Audible Magic fingerprints, not merely whether they have matching ISRCs. If they are not, then Charter will renew its motion to compel production of the Reference Files. If Plaintiffs did not retain the Reference Files, they should simply say so and Charter can proceed accordingly.

Plaintiffs' claim that they have "compared" the ISRCs of the files produced to date to those used to create the Audible Magic fingerprints raises another concern. If they are not producing the Reference Files, it is unclear what information Plaintiffs reviewed to make this determination. Whatever it is, it would be directly responsive to Charter's discovery requests with which Plaintiffs have agreed to comply.[2] To

---

[1] Which, by implication, means that for 17%, the files do not even match the ISRCs of the Reference Files; this is concerning, as it calls into question whether Plaintiffs' notice in fact identified a work in suit for these files.

[2] Among others, two Charter RFPs are directly on point:

> REQUEST NO. 92: Documents and communications sufficient to show the process used to create the digital fingerprints for the Copyrighted Works used by Audible Magic and/or MarkMonitor to match alleged infringements.

> REQUEST NO. 93: All Communications between You and MarkMonitor or Audible Magic exchanged for the purpose of matching of alleged infringing files of the Copyright Works by Charter subscribers with digital copies of the Copyright Works, including but not limited to regarding copies of all files, or portions, or derivatives thereof (including any hashes, digital fingerprints, or checksums of files or portions of files) used as a reference for the purposes of fingerprinting, identifying, or verifying that files are copies of the Copyright Works.



June 5, 2020
Page 3

Charter's knowledge, no such information has been produced to date, let alone basic information required to verify whether what Plaintiffs claim in their June 1 Letter is accurate (i.e., whether the ISRCs in the digital files match ISRCs with whatever Audible Magic used to verify infringements).

In light of Plaintiffs' failure to comply with the Order, Charter respectfully requests that Plaintiffs be required to:

1) respond to the initial question posed and confirm whether the files they have produced to date are or are not *the same files* that were used to create the Audible Magic fingerprints, and if not to indicate whether the Reference Files were retained; and

2) explain how they purported to match the ISRCs of 83% of the files produced to date to the ISRCs for the Reference Files and to produce documents sufficient to perform such analysis, which would be responsive to Charter's outstanding RFPs.

Thank you for your time in addressing this important issue.

Sincerely,
*s/ Jennifer A. Golinveaux*

---

Plaintiffs have largely agreed to produce documents responsive to these requests. Further, RFPs 90 & 91 were subject to Charter's May 8, 2020 motion to compel, which was denied with leave to renew upon receipt of Plaintiffs' response to the outstanding question.  RFP 90 seeks the reference files themselves whereas RFP 91 seeks the database of the Audible Magic "fingerprints."