**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

---

**SPECIAL MASTER'S ORDER RE: PLAINTIFFS' MOTION TO DENY WAYNE COLEMAN'S DESIGNATION AS A QUALIFIED PERSON UNDER THE PROTECTIVE ORDER**

---

**Entered by Regina M. Rodriguez, Special Master, on September 4, 2020,**

This matter comes before me upon Order of Reference from Magistrate Judge Hegarty, ECF, 223**.** The matter is fully briefed (ECF 196, ECF 224 and ECF 231) and ripe for review. For the reasons that follow, **Plaintiffs' Motion to Deny Wayne Coleman's Designation as a Qualified Person is Denied in part and Granted in part.**

## BACKGROUND

This case arises out of the alleged secondary infringement by the Defendant of Plaintiffs' copyrighted musical compositions and sound recordings. Judge Hegarty has provided a detailed account of the factual allegations in this case in his October 21, 2019 Recommendation, ECF 71.

Plaintiffs are record companies and music publishers that produce, manufacture, distribute, sell, and license commercial sound recordings and musical compositions. Defendant Charter is a large internet service provider ("ISP"). Discovery in this matter, which has been protracted and contentious, includes highly confidential and sensitive financial data and documents, technical data and information, commercially sensitive business and competitive information and personally identifiable information and documents, as well as other categories of documents which the parties consider highly confidential and/or proprietary. At the beginning of discovery, the parties stipulated to a Protective Order which was entered as an Order by Judge Jackson on September 6, 2019. ECF 63.

The instant dispute relates to Charter's identification of Wayne Coleman as a Qualified Person under the terms of the Protective Order. Charter's counsel notified Plaintiffs' Counsel that they were designating Wayne Coleman as an "actual or potential independent expert[] or consultant[]…engaged in connection with this litigation[]," rendering him a "Qualified Person" under Section 5(a)(iii) of the Stipulated Protective Order." ECF 196-1 at 8. Plaintiffs objected. Plaintiffs object to Mr. Coleman's designation as a Qualified Person pursuant to Section 5(a)(iii) and bring this challenge pursuant to Section 14(b) of the Protective Order, which sets forth the procedure for such a challenge.

## **LEGAL STANDARD**

Section 14(b) of the Protective Order allows a party to object "[i]n the event that [they] in good faith disagree[] with the designation of an actual or potential independent expert or consultant as a Qualified Person or the disclosure of particular Protected Information to such expert or consultant." The objecting person shall have the burden of demonstrating that disclosure to the disputed expert or consultant would expose the objecting party to "risk of serious harm." *Id.* While "risk of serious harm" is not defined in the Protective Order, courts considering similar issues have instructed that general allegations of harm, absent supporting facts, are insufficient to warrant protection. *Cf. Wauchop v. Domino's Pizza, Inc*., 138 F.R.D. 539, 545 (N.D. Ind. 1991) ("[G]eneral concerns about the harm of public disclosure and others' use of discovery information in present or threatened litigation" against the producing party does not constitute good cause for a protective order); *FTC v. Sysco Corp*., 308 F.R.D. 19, 25 (D.D.C. 2015) (Hypothesized harm, without a specific demonstration of facts to support a party's alleged concern, is not sufficient to warrant the issuance of a protective order.).

## **ANALYSIS**

Charter represents that actual damages from the infringement alleged in this matter and the relative value of the copyrights in suit are relevant to both actual and potential damages should Plaintiffs establish liability. Thus, they have requested, and Plaintiffs have begun to produce, artist revenues, artist agreements, and agreements with third-party platforms like Spotify and Apple. The documents Plaintiffs have produced and continue to produce have been

designated as Highly Confidential – Attorneys' Eyes Only ("HC-AEO") pursuant to the Protective Order. By definition, documents identified as HC-AEO are documents the producing party—here the Plaintiffs—have identified as information, "that is particularly sensitive information that the producing party believes in good faith cannot be disclosed without creating a substantial risk of harm to the producing party." ECF 63 at ¶2.b. The parties do not as part of this dispute challenge the HC-AEO designation of the documents that Mr. Coleman is to review.

Rather, Plaintiffs argue that allowing Mr. Coleman "unfettered access to Plaintiffs' Highly confidential materials in this case" creates a substantial risk "that he will not be able to avoid exploiting this sensitive information in his other roles adverse to Plaintiffs." ECF 196 at 2. Plaintiffs specifically identify three potential sources of risk.

First, Plaintiffs assert that Mr. Coleman has been designated as a consultant in a purported class action against at least one Plaintiff entity, "in which plaintiffs' counsel have sought access to the royalty terms in other artist agreements, but discovery is not currently permitted." ECF 196 at 4. If designated as a Qualified Person, Plaintiffs argue, "Mr. Coleman would have access to thousands of artist agreements that have not been authorized for disclosure in the pending [class] action, which presents a substantial risk that those materials could be improperly used both to inform the prosecution of that action and to recruit additional named plaintiffs." *Id.*

Second, Plaintiffs assert that Mr. Coleman frequently performs royalty audits of Plaintiffs on behalf of artists and songwriters, and that he is currently involved in several such audits. *Id.*

Plaintiffs argue that, in the scope of Mr. Coleman's auditing work, he is not permitted access to agreements with third parties, which Plaintiffs are producing here. ECF 196 at 5. If designated as a Qualified Person, Plaintiffs argue, Mr. Coleman would receive access to such materials, which may then be improperly used in Mr. Coleman's auditing work. *Id.*

Third, Plaintiffs state that Mr. Coleman "routinely executes non-disclosure agreements with Plaintiffs." ECF 196 at 5. Plaintiffs argue that "[i]t is difficult to imagine how Mr. Coleman could consult with Charter on issues relating to Plaintiffs' artist and songwriter agreements, royalty calculations, or royalty practices without necessarily violating those non-disclosure agreements." *Id.*

Charter argues that Mr. Coleman is "one of the most experienced royalty auditors in the country," (ECF 224 at 2) and that he has been retained to "aid Charter's review of Plaintiffs' artist revenues, artist agreements, and agreements with third-party platforms like Spotify and Apple." *Id.* at 3-4.

Charter further argues that Plaintiffs have failed to carry their burden of demonstrating that Mr. Coleman's access to materials here would cause Plaintiffs a "risk of serious harm." Charter argues that there is no reason to believe that Mr. Coleman will ignore the Protective Order and his professional obligations in order to recruit class members in another case, to seek new clients for himself, or to utilize HC-AEO documents to disadvantage the Plaintiffs in other matters.

Charter argues that a risk of serious harm exists "where the producing and receiving parties are direct competitors, the information in question is competitively sensitive, and the proposed expert has an ongoing consulting relationship with the receiving party." ECF 224 at 6. Charter thus argues that Plaintiffs' motion should be denied because Mr. Coleman poses no competitive threat to Plaintiffs. While the Special Master acknowledges that neither Charter nor Mr. Coleman are competitors of the Plaintiffs, Mr. Coleman's position as a royalty auditor does place him in opposition to the Plaintiffs, such that his knowledge of certain highly confidential information may result in harm to the Plaintiffs. Indeed, case law cited by both Charter and the Plaintiffs suggests that ongoing work in a particular field may create a risk of harm for the producing party. *Symantec Corp. v. Acronis Corp*., No. 11-5310 EMC JSC, 2012 WL 3582974, at *3, n.1 (N.D. Cal. Aug. 20, 2012) (finding that a proposed expert's "ongoing work in the field" creates a substantial risk, noting that "neither the parties nor the Court on its own have been able to identify a case within the Ninth Circuit where a party's objections to an expert were overruled where that expert actively consulted in the very field at issue."). Therefore, that neither Mr. Coleman nor Charter are Plaintiffs' competitors is not dispositive.

### A. **Plaintiffs Have Not Established that Mr. Coleman's Retention as an Expert in a Pending Purported Class Action Poses a Risk of Serious Harm**

While the Plaintiffs broadly assert that Mr. Coleman has been retained as an expert consultant in a purported class action against at least one Plaintiff entity, Plaintiffs have not provided any detail about the pending class action, which Plaintiff entities are implicated, or the subject on which Mr. Coleman has been retained as an expert in that matter. Plaintiffs have

therefore failed to provide any basis for their claim that the materials at issue could be improperly used to inform the prosecution of that action. Nor is there any support for Plaintiffs' claim that the information could be used by Mr. Coleman to recruit additional named plaintiffs in that action. Absent any additional or supporting information, Plaintiffs' claims amount to mere speculation, and Plaintiffs therefore cannot meet their burden of establishing a risk of serious harm on this basis.

### B. Plaintiffs Have Not Established That Allowing Mr. Coleman to Act as a Consulting Expert Would Require Him to Violate Prior Non-Disclosure Agreements

Nor have Plaintiffs established that Mr. Coleman's proposed work with Charter would require that he breach prior non-disclosure agreements with Plaintiffs. As a threshold matter, Plaintiffs have made the assertion but have provided no evidence of any contractual obligations Mr. Coleman has arising out of work unrelated to this action that would require him to violate prior non-disclosure agreements. Mr. Coleman's Affidavit states that he has never breached, nor has he been accused of breaching, any protective order, non-disclosure agreement, or other agreement pertaining to the confidentiality of information learned in connection with his prior professional agreements. ECF 224-1 at ¶ 8. Mr. Coleman further states that he has read and agreed to the Stipulated Protective Order, and he fully intends to honor his obligations thereunder. *Id.* at ¶ 9. Finally, Mr. Coleman affirms: "As a matter of contractual obligation or professional and ethical duty, I do not use information learned in connection with one audit in another audit or for any other purpose." *Id.* at ¶ 10. I do not find that Plaintiffs' unsupported contention is sufficient to meet their burden of establishing a risk of serious harm on this basis.

C. **Plaintiffs Have Established that Mr. Coleman's Ongoing Royalty Auditing Work May Pose a Risk of Serious Harm**

Mr. Coleman is not a direct competitor of the Plaintiffs, however, as part of his work in the music business he has represented recording artists, record labels, and music publishers, including some of the Plaintiffs in this action. ECF 224-1 at ¶3. He has also personally conducted, supervised, or reviewed over 6,000 royalty compliance audits. *Id* at ¶4. Plaintiffs argue that by conducting auditing services for artists, Mr. Coleman is "regularly adverse to Plaintiffs." ECF 196 at 5. Plaintiffs further assert that Mr. Coleman is currently involved in several such audits, although they offer no further information about those audits. *Id.* at 4. Plaintiffs argue that, during these audits, Mr. Coleman is not permitted access to agreements with third parties, including highly sensitive materials such as Plaintiffs' agreements with streaming services like Apple and Spotify. *Id.* at 5. If designated as a Qualified Person, Plaintiffs argue that Mr. Coleman may improperly use the information contained in these agreements in his auditing work. Specifically, Plaintiffs argue that there is a risk that he "will not be able to separate the highly confidential information he gleans" from that review "with his consulting [] work in that same" field. *See Symantec*, 2012 WL 3582974 at *3; *see also Digital Equipment Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 492 (D. Col. 1992) (Once confidential and proprietary data is reviewed it "cannot be 'unlearned' or utilized only on a selective basis.").

*Digital Equipment* sets forth a three-part test for determining whether to afford protection to purportedly technical or sensitive materials: "(a) the information is highly confidential commercial information or a trade secret; (b) disclosure of such material might be damaging to

the producing party; and (c) the harm associated with disclosure outweighs the need for access." *Id.* at 491. Plaintiffs have met the first two requirements of *Digital Equipment*: they have established that the documents at issue are highly confidential, and they have established that disclosure might cause them harm. *Id.* at 491. *Digital Equipment* now suggests that we consider whether the harm associated with disclosure outweighs the need for access. *Id.* at 491

Plaintiffs have not specifically identified how the confidential documents might inform Mr. Coleman's ongoing audits, nor have they identified the specific harm that they might suffer as a result of disclosure to Mr. Coleman. Charter has similarly failed to explain what, exactly, Mr. Coleman intends to consult or opine on, or whether Mr. Coleman possesses unique expertise that could not be found in another expert. *See BASF Corp. v. United States*, 321 F. Supp. 2d 1373, 1378 (CIT 2004) ("When… disclosure of confidential information to a third-party consultant is opposed by the disclosing party, this court will balance the movant's interest in selecting the consultant most beneficial to its case, considering the specific expertise of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors."); *see also Symantec*, 2012 WL at *3.

While a lack of information regarding each party's position renders application of the third factor difficult, the parties' proposed compromises obviate the need to make an affirmative finding as to this factor. Plaintiffs object to the designation of Mr. Coleman as a Qualified Person, but in an effort to resolve the dispute, they seek an order requiring that Mr. Coleman (a) sign an addendum to the Protective Order; or (b) be provided access to Plaintiffs' HC-AEO

documents only after the documents have been redacted and anonymized. ECF 231 at 4-5. Charter proposed a similar compromise, proposing that (a) Mr. Coleman would explicitly agree not to "recruit" potential class members for the pending purported class action, and (b) Plaintiffs would be permitted to redact identifying information from agreements for any artists in which Mr. Coleman is currently engaged in audits. ECF 224 at 5.

**Based on the applicable law and the parties' arguments, I hereby preserve Mr. Coleman's designation as a Qualified Person, subject to the following requirements:**

**Mr. Coleman shall acknowledge and strictly comply with the terms of the Protective Order and sign an addendum to the Protective Order agreeing:**

1. **Not to use, disclose, or share any nonpublic information learned in this engagement—including but not limited to the terms of artist or publishing agreements or artist contact information—with counsel in the purported class action referenced by the Plaintiffs or in any related action;**

2. **Not to use, disclose, or share in this case, including with Charter or their counsel, any nonpublic information learned in the course of his engagement as a consultant in the purported class action referenced by the Plaintiffs or in any related action;**

3. **Not to disclose or share in this case, including with Charter or their counsel, any nonpublic information learned in the course of his engagement as a royalty auditor adverse to any of the Plaintiffs, except that nothing herein limits Mr. Coleman's ability to testify from his general knowledge and experience; and**

4. **Not to use, disclose, or share any nonpublic information learned in this engagement—including but not limited to the specific terms of artist or publishing agreements and digital service provider agreements—in any audits adverse to any of the Plaintiffs, or to identify or solicit clients for future audits.**

**5. Further, Plaintiffs are permitted to redact identifying information from agreements and documents for any artists in which Mr. Coleman is currently engaged in audits.**

Dated this 4th day of September, 2020

BY THE SPECIAL MASTER:

*/s/ Regina M. Rodriguez*
Regina M. Rodriguez
Special Master