UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al*.,

    *Plaintiffs*,

v.

CHARTER COMMUNICATIONS, INC.,

    *Defendant*.

Case No. 19-cv-00874-RBJ-MEH

## OBJECTION TO MAGISTRATE'S ORDER DENYING CHARTER'S MOTION TO COMPEL PLAINTIFFS TO RESPOND TO CHARTER INTERROGATORIES 14 & 15

### I.    INTRODUCTION

Plaintiffs in this case allege that Charter committed willful secondary copyright infringement of over 11,000 works and seek over $1.6 billion in statutory damages. In so doing, Plaintiffs rely exclusively on hundreds of thousands of infringement notices their agents sent to Charter to establish Charter's purported knowledge of the infringements, an essential element of their contributory copyright infringement claim. But 75% of the nearly 7,000 sound recordings in suit, and ***all*** of the over 4,000 music compositions in suit, representing over a billion dollars in claimed damages, ***do not appear in a single notice*** submitted to Charter. Instead, Plaintiffs maintain that the "hash value" listed on the notices—a complex string of numbers and letters affiliated with a torrent file—put Charter on notice of ***all*** the works owned by Plaintiffs included in the digital file associated with the "hash value." The problem is that the digital files associated with the "hash value" in the notice typically contain many different musical works—only some of which are owned by Plaintiffs. Charter has no reliable way of identifying the specific music files

1

in the torrent file, whether they are owned by the Plaintiffs, or if they are works that are asserted against Charter in this case.

Plaintiffs assert that Charter should be able to decipher the meaning of their infringement notices by "connecting the dots" comprising the entries in several massive spreadsheets of data produced by Plaintiffs in discovery. Even if Charter could reliably connect the hundreds of thousands of dots to match the notices with the works—and it cannot—it would be far simpler and much *more* reliable for Plaintiffs to provide this information because Plaintiffs are best positioned to identify the works they own and assert in this case. Yet Plaintiffs are unwilling to provide this basic information in support of their billion-dollar claims. Plaintiffs have steadfastly refused to match the works in suit to the specific notices they say gave Charter knowledge of the alleged infringement of those works. In other words, although Plaintiffs rely exclusively on the infringement notices to establish Charter's "knowledge" for purposes of Plaintiffs' contributory infringement claim, Plaintiffs are unwilling to say how or when that "knowledge" was communicated to Charter. In addition, Plaintiffs contend that Charter's infringement was willful, and seek enhanced damages for this alleged willful infringement on a *work-by-work basis*; Charter therefore must know whether it did in fact receive a valid notice for *each* of the works in the case. The Court should not allow Plaintiffs to hide the ball with respect to critical evidence at the very heart of their claims, and should compel Plaintiffs to respond to Charter's two interrogatories (one for music compositions and one for sound recordings) that ask Plaintiffs simply to identify which notices correspond to which works in suit.

In reversing the Special Master's order and denying Charter's motion to compel, the Magistrate Judge relied exclusively on a misapprehension of the record, contrary to the Special

Master's well-supported findings that (1) the information Charter requests is foundational to Plaintiffs' claims, and (2) it would be substantially less burdensome for Plaintiffs to produce this information than it would be for Charter to attempt to decipher it. Charter respectfully requests that the Court reverse the Magistrate Judge's decision and reinstate the Special Master's order.

## II.     BACKGROUND

From March 2013 to May 2016, the Record Company Plaintiffs, via their agents the Recording Industry Association of America ("RIAA") and MarkMonitor, sent hundreds of thousands of infringement notices to Charter, each asserting that a Charter subscriber committed an act of copyright infringement. The infringement notices identified, by name, one single purportedly infringed work and the artist recording it. The notices also included a "hash value," a string of letters and numbers that corresponded to the particular torrent file in which the infringed work purportedly appeared. In total, by Charter's estimate, only 25% of the sound recordings in suit and none of the musical compositions in suit, actually appear by name in Plaintiffs' infringement notices. Plaintiffs maintain that Charter should have been aware of the remaining 75% of allegedly infringed works because the works were purportedly also included in the torrent files that corresponded to the hash values identified in Plaintiffs' notices. In other words, Plaintiffs' position is that, from 2013 to 2016, Charter should have deciphered the hash values included in their notices, then attempted to locate those files on the Internet to determine the additional sound recordings in the file, and then endeavored to determine whether those additional sound recordings were owned by Plaintiffs and had been infringed. Of course, Charter has no reliable way of knowing with certainty whether or not any given sound recording is owned by Plaintiffs or whether it is covered by the particular copyright at issue in this case. Charter provides

3

Internet service to consumers—it has no expertise in identifying music files. This is in part why the DMCA requires copyright owners to identify the *specific copyrighted work* in notices sent to service providers under penalty of perjury.

Yet, Plaintiffs, in pursuing their $1.6 billion claim, decry that *very task* they are supposed to have performed during the relevant period as unduly burdensome. Because Plaintiffs rely on the infringement notices to establish Charter's alleged knowledge of infringement, and to establish the alleged underlying direct infringement by Charter subscribers, Charter propounded two interrogatories on Plaintiffs (one for the Record Company Plaintiffs, and one for the Music Publisher Plaintiffs) asking them to identify which of their infringement notices cover the works in suit. Interrogatory 15 to the Music Publisher Plaintiffs ("MPP Interrogatory 15") requested: "For each music composition listed on Exhibit B (including any amendments to same) to Plaintiffs' Complaint, identify each RIAA Notice that references the allegedly infringed file corresponding to that music composition." *See* Charter's Second Set of Interrogatories to the Music Publisher Plaintiffs No. 15 (Ex. 1). Interrogatory 14 to the Record Company Plaintiffs ("RCP Interrogatory 14") requests: "For each sound recording listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint, identify each RIAA Notice that references the allegedly infringed file corresponding to that sound recording." *See* Charter's Second Set of Interrogatories to the Record Company Plaintiffs No. 14 (Ex. 2). Plaintiffs refused to provide any substantive response to these Interrogatories. *See* Plaintiffs' Responses to Second Set of Interrogatories (Ex. 3).

Charter subsequently moved to compel responses to the Interrogatories. (Ex. 4 at 2-3). The Special Master held a lengthy hearing addressing this issue, during which she found this to be "a significant issue." 5/15/20 Hearing Trans. (Ex. 5) at 48:13-70:13. Given the complexity of the

4

technology and arguments, the Special Master ordered each side to submit additional supplemental briefing about these Interrogatories. *Id.* at 66:19-70:14. The parties submitted supplemental briefs on May 20, 2020. (Exs. 6-7).

On May 29, 2020, after considering extensive briefing and oral argument, the Special Master granted Charter's motion to compel these Interrogatories. In that Order, the Special Master noted that:

> Charter's arguments with regard to this data are compelling. The process here does not appear to be as simple as merely comparing two listings to provide potential overlap. The information sought is relevant, and Charter cannot discover this information merely by analyzing the documents that Plaintiffs have already produced.

ECF 181 at 23-24.

Plaintiffs moved to reconsider this issue before the Special Master. The Special Master again considered this issue and denied Plaintiffs' motion for reconsideration on July 7, 2020, finding:

> Contrary to Plaintiffs' assertion, the information sought by MPP interrogatory 15 and RCP interrogatory 14 is basic factual information that will need to be set forth in order for Plaintiffs to establish liability. Plaintiffs seek to hold Charter secondarily liable for infringement based on Charter's purported knowledge of its subscribers' alleged infringement. Plaintiffs allege that Charter possessed the requisite knowledge of infringement of each work in suit by virtue of the infringement notices sent to Charter by the Record Label Plaintiffs. However, Plaintiffs now argue that determining which work is identified in a particular notice would require expert analysis. I find these arguments to be in conflict.

ECF 190 at 10. Plaintiffs, seeking to evade having to perform the very analysis they say Charter was legally obligated to conduct, appealed the Special Master's order to the Magistrate Judge. The Magistrate Judge reversed the Special Master's order during oral argument, denying the motion to compel on a single ground: that the Special Master was purportedly under the misconception that

5

Plaintiffs had already conducted this analysis, which Plaintiffs represented they had not. *See* ECF 243 (9/9/2020 Hearing Tr.) at 171 (Ex. 9) ("[T]o the extent the Special Master, Ms. Rodriguez, based her ruling on the fact that this information already exists and I accept plaintiffs' counsel representation that it doesn't, then I find that's reversible."). Pursuant to Fed. R. Civ. P. 72(a), Charter now respectfully objects to the Magistrate Judge's ruling.

## III. <u>LEGAL STANDARD</u>

The Court reviews nondispositive orders of the Magistrate Judge "to determine whether it is clearly erroneous or contrary to law." *Smith v. Dwire Co*, 2006 WL 8454325, at *1 (D. Colo. Mar. 2, 2006) (quotations omitted). The order appointing the Special Master states that "[a]ny order, report, or recommendation of the Master on nondispositive motions (unless it involves a finding of fact or conclusion of law) will be deemed a ruling on a procedural matter" which can "only" be set aside if "it constitutes an abuse of discretion." ECF 143, ¶ 6. The discovery rulings to which Plaintiffs objected are "procedural matters"—thus, the Magistrate Judge was only empowered to reverse the Special Master if she committed an abuse of discretion. *See, e.g.*, *Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 n.3 (10th Cir. 1996) ("Discovery is a procedural matter") (quotations omitted). Consequently, the question here is whether the Magistrate Judge clearly erred in ruling that the Special Master abused her discretion in granting Charter's motion to compel.[1]

---

[1] Plaintiffs objected to six separate rulings by the Special Master. While the Magistrate Judge made adjustments to several of those rulings, this is the only one to which Charter now objects.

IV. **ARGUMENT**

A. **The Magistrate Judge's Sole Basis For Reversing The Special Master Was Clearly Erroneous**

The sole rationale the Magistrate Judge gave for his decision to reverse the Special Master's order granting Charter's motion to compel responses to MPP Interrogatory 15 and RCP Interrogatory 14 was his belief that the Special Master incorrectly found that Plaintiffs already conducted the analysis called for by the Interrogatories. *See* ECF 243 (9/9/2020 Hearing Tr.) at 171 (Ex. 9). This ruling was clearly erroneous, as the Special Master expressly understood that Plaintiffs had not yet conducted this analysis, and nonetheless granted Charter's motion to compel. After the Special Master delivered a brief initial ruling granting Charter's motion to compel, Plaintiffs sought clarification and reconsideration of the ruling. In her order clarifying her ruling and denying Plaintiffs' request for reconsideration, the Special Master made the following observations and ruling:

> Plaintiffs ask whether the Order was intended to require Plaintiffs to identify each of the notices that corresponds to each of the works in suit. Pl. Letter Br. June 2, 2020 at 1. Plaintiffs explain that to accomplish this they would need to first connect hashes to sound recordings, then identify musical compositions contained with sound recordings. Plaintiffs have indicated that they will do this. Plaintiffs state that they will then "need to connect each sound recording and each musical composition to each of the approximately 700,000 notices." *Id*. Plaintiffs argue that this exercise "is not one that the individual Plaintiffs would ever do in that manner." *Id*. at 1-2. Plaintiffs argue that they would need to correlate multiple data sets to identify the requested information, and they argue that this will require an expert. Plaintiffs therefore characterize my May 29 Order as "require[ing] Plaintiffs to conduct and produce expert analysis nine months before the Scheduling Order would otherwise require." *Id*. at 2.
>
> To the extent that Plaintiffs seek reconsideration of the May 29 Order, I will reiterate that Plaintiffs have been ordered to identify each of the notices that corresponds to each of the works in suit. To the extent that Plaintiffs are asking that I reconsider that order in light of the volume of information at issue, I decline to do so.

7

ECF 190 at 9-10.  The Special Master thus understood that Plaintiffs had not conducted the analysis called for by the interrogatories, quoting Plaintiffs' representations to that end.  The Special Master nonetheless concluded that Plaintiffs must undertake the task of matching their notices to the works in suit, finding that: (1) the information sought by the Interrogatories "is basic factual information that will need to be set forth in order for Plaintiffs to establish liability"; and (2) Plaintiffs' burden of producing the requested information is less than Charter's.  *Id*. at 10-11.

Reversal of the Special Master's order constitutes clear error.  The Magistrate Judge relied exclusively on the Special Master's purported finding that the Plaintiffs had already undertaken the work necessary to answer the Interrogatories—but the Special Master made the exact opposite finding.  *See id.* at 9-10.  The Court should therefore reverse the Magistrate Judge, and reinstate the Special Master's ruling.  *See Meeper, LLC v. Powers*, 2015 WL 4940972, at *5 (D. Colo. Aug. 20, 2015) (reversing magistrate judge order where the magistrate "made mistaken assumptions" about the record).

### B.     The Special Master Properly Granted Plaintiffs' Motion To Compel

The Special Master's ruling got it exactly right.  First, the Special Master's finding that the information requested in the interrogatories is "basic factual information that will need to be set forth in order for Plaintiffs to establish liability" is correct.  To establish both direct infringement and Charter's alleged knowledge of any such infringement, Plaintiffs must match the notices they sent to the works in suit.  With respect to direct infringement, Plaintiffs must demonstrate that Charter's subscribers were in fact infringing each and every work in suit—a showing Plaintiffs can only make by doing exactly what Charter has requested, and the Special Master ordered:

8

proving that the digital files identified by "hash value" in their infringement notices covered each work in suit.

Moreover, with respect to knowledge, it is well-settled that the knowledge necessary to establish contributory infringement is "actual or constructive ***knowledge of specific and identifiable infringements of individual items***, not a general awareness that there are infringements." *Lopez v. Bonanza.com, Inc.,* 2019 WL 5199431, at *25 (S.D.N.Y. Sept. 30, 2019) (quotations omitted); *see also Viesti Assocs., Inc. v. Pearson Educ., Inc.*, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013) (citing a case quoting the same language); *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628031, at *7 (C.D. Cal. Nov. 14, 2014), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ("Under either test, then, Plaintiff must prove that Giganews had ***actual knowledge of specific acts of infringement*** to hold Giganews liable for contributory copyright infringement.") (quotations omitted, emphasis added). Indeed, the DMCA's notice framework is designed precisely to ensure that "the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—[falls] squarely on the owners of the copyright." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007).

Plaintiffs may not skirt their obligation to prove that Charter knew of the infringement of each work in suit simply because they have filed suit on over 11,000 works at once. If this case featured a single plaintiff filing suit over a single song, there would be little doubt that liability for contributory infringement could not attach unless the plaintiff came forward with evidence that Charter knew of that song's infringement (and intended to induce that infringement). Here, Plaintiffs' only evidence of Charter's purported knowledge of the infringement of their works is the infringement notices. Thus, the Special Master correctly found that matching the notices to

each of the works in suit is "basic factual information that will need to be set forth in order for Plaintiffs to establish liability," (ECF No. 190 at 10)—there is no other way for Plaintiffs to establish that Charter had "knowledge of specific and identifiable infringements of individual items," and not merely "a general awareness that there are infringements." *Lopez*, 2019 WL 5199431, at *25. The Court should accordingly reinstate the Special Master's ruling, which properly requires Plaintiffs to identify, during fact discovery, the foundational evidence for their contributory infringement claim against Charter.

Second, the Special Master correctly found that Plaintiffs' burden of producing the requested information is less than Charter's. In reality, *only* Plaintiffs are able to reliably match the notices they sent to the works in suit. With the data that Plaintiffs have produced to Charter in this suit, Charter is able to take the following steps: (1) Charter can decipher the hash values contained in each torrent to match the hashes with a list of works that Plaintiffs claim were contained in each torrent; and (2) Charter can then match the names of the files to the list of recordings found in Exhibit A to Plaintiffs' Amended Complaint.

The problem is that, even if file names Charter identifies by deciphering the torrent hashes match the name of works found in Exhibit A, none of that tells Charter whether the works in the torrent identified in a notice were *actually* the works in suit. Most successful songs were recorded by the artist who made them famous on multiple occasions—in the studio, in studio outtakes, in concert, in music videos, in later covers of the recording, on TV, and so on. But only one sound recording copyright is asserted in this suit for each of the sound recordings at issue. Separate and different recordings may or may not be covered by other copyrights that are not asserted in this suit. In order to confirm whether the songs comprising the torrents identified in Plaintiffs' notices

10

are copies of the sound recordings that are the subject of this suit, Charter would have to compare the legitimate copies of the recorded works in suit to the sound recordings comprising the torrent files. In other words, this exercise would entail listening to and comparing literally tens of thousands of recordings. And as a practical matter, this exercise is not doable; it would require an ear acute enough to recognize the difference between, for example, the initial release of a song, a later cover, and a later released outtake from the initial recording session.

And then there is this problem: Plaintiffs have neither produced legitimate copies of all the works in suit, nor have Plaintiffs produced copies of all of the works comprising the torrent files identified in their notices. Plaintiffs concede that they have produced legitimate copies of only 83% of the works in suit, and admit that they do not know whether the copies they produced of the remaining 17% are in fact authentic copies of the works in suit. Plaintiffs' June 1, 2020 Letter to the Special Master (Ex. 8). Moreover, with respect to 40% of the infringement notices Plaintiffs sent to Charter—those notices addressing use of the Ares and Gnutella file sharing protocols—Plaintiffs have produced only five (out of many thousands) of the files comprising the torrents identified on the notices. Schapiro Decl. ¶ 10, Consequently, Plaintiffs have provided neither end of the equation Charter would need to solve in order to identify which notices actually match to a work in suit. ***In other words, only Plaintiffs—who presumably know what the works in suit are, and whose agents sent the notices at their behest—can tie an infringement notice to an actual work in suit, and not simply to a file with a similar name.*** Indeed, requiring Plaintiffs to make authenticated representations regarding which notices match which works in suit appears to be the *only* way Charter could ascertain the connection (if any) between the contents of each notice and the works in dispute. The Special Master in no sense erred in finding that Plaintiffs,

11

and not Charter, are uniquely positioned to match the infringement notices to particular works in suit.

Moreover, even if Charter were capable of matching some notices to the actual works in suit, the Special Master correctly found that it would be less burdensome for Plaintiffs to do. Specifically, Plaintiffs have admitted that they already conducted some matching to determine that each work in suit was covered by each of the notices at issue. ECF 199 at 11 ("[I]n preparing to file this case, Plaintiffs confirmed that each work in suit was supported by at least one notice."). Plaintiffs have thus already completed at least part of the process they would need to undertake to match notices to works in suit, whereas Charter would have to start from scratch. At a bare minimum, the Court should require Plaintiffs to produce the matches they have already identified, which imposes no burden whatsoever on Plaintiffs.

Finally, requiring Plaintiffs to make representations regarding which notices match the works in suit will create a clean record for the Court to evaluate on summary judgment. If Plaintiffs are not required to match their notices to specific works in suit, then Charter will be forced to attempt to decipher the notices with incomplete information—and presumably, Plaintiffs will attempt to challenge the methodology Charter uses to figure out which works in suit are covered by the notices. By contrast, if Plaintiffs are compelled to simply tell Charter which of its notices correspond to each work in suit, the parties and the Court may be spared a methodological battle that will consume the time and resources of all involved. Indeed, this is precisely why courts regularly compel parties to answer "contention" interrogatories that force parties to identify the bases of their claims. *Atchison v. Saddleback Metro. Dist.*, 2008 WL 4681915, at *4 (D. Colo. Oct. 21, 2008) ("[I]t is not proper to object on the grounds that an interrogatory 'asks for an opinion

12

or contention that relates to fact or the application of law to fact … .'") (quoting Fed. R. Civ. P. 33(a)(2)). The Court should do so here, as well.

## V. **CONCLUSION**

For the foregoing reasons, the Court should reverse the decision of the Magistrate Judge, and reinstate the Special Master's order compelling Plaintiffs to respond to MPP Interrogatory 15 and RCP Interrogatory 14.

Dated: September 23, 2020                                   Respectfully submitted,

| | |
|---|---|
| Jennifer A. Golinveaux<br>WINSTON & STRAWN LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 94111-5840<br>(415) 591-1506 (telephone)<br>(415) 591-1400 (facsimile)<br>E-mail: jgolinveaux@winston.com<br><br>Michael S. Elkin<br>Thomas Patrick Lane<br>Seth E. Spitzer<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 294-6700 (telephone)<br>(212) 294-4700 (facsimile)<br>E-mail: melkin@winston.com<br>E-mail: tlane@winston.com<br>E-mail: sspitzer@winston.com<br><br>Erin R. Ranahan<br>WINSTON & STRAWN LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>(213) 615-1933 (telephone)<br>(213) 615-1750 (facsimile)<br>E-mail: eranahan@winston.com | */s/Andrew H. Schapiro*<br>Andrew H. Schapiro<br>Allison Huebert<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>191 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>(312) 705-7400 (telephone)<br>(312) 705-7401 (facsimile)<br>E-mail: andrewschapiro@quinnemanuel.com<br>E-mail: allisonhuebert@quinnemanuel.com<br><br>Charles K. Verhoeven<br>David Eiseman<br>Linda Brewer<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600 (telephone)<br>(415) 875-6700 (facsimile)<br>E-mail: charlesverhoeven@quinnemanuel.com<br>E-mail: davideiseman@quinnemanuel.com<br>E-mail: lindabrewer@quinnemanuel.com<br><br>Todd Anten<br>Jessica Rose<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Ave, 22nd floor<br>New York, NY 10010<br>(212) 849-7000 (telephone)<br>(212) 849-7100 (facsimile) |

E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com
*Counsel for Defendant*
*Charter Communications, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 23, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ *Andrew Schapiro*
Andrew Schapiro