# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER BROS. RECORDS INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 19-cv-00874-RBJ |

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO
CHARTER COMMUNICATIONS, INC.'S SECOND SET OF INTERROGATORIES
TO THE MUSIC PUBLISHER PLAINTIFFS**

**PROPOUNDING PARTY**: Defendant Charter Communications, Inc.

**RESPONDING PARTY**: Music Publisher Plaintiffs (Warner Chappell Music, Inc., *et al.*)

**SET NUMBER**: Two

Plaintiffs Warner Chappell Music, Inc. (f/k/a/ Warner/Chappell Music, Inc.), Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp. (f/k/a/ WB Music Corp.), W.C.M. Music Corp. (f/k/a W.B.M. Music Corp.), Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Sony/ATV Music Publishing LLC, EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc. individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a/ EMI Foray Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., Universal Music Corp., Universal

1

Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music - Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Polygram Publishing, Inc., and Songs of Universal, Inc. (collectively "Music Publisher Plaintiffs"), through their undersigned counsel and pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby respond to Defendant Charter Communications, Inc.'s ("Charter") Second Set of Interrogatories upon Music Publisher Plaintiffs as follows. Music Publisher Plaintiffs' investigation into the facts of this case is ongoing and is not yet completed, and Music Publisher Plaintiffs therefore reserve the right to supplement or amend their responses and objections to the extent permitted by the Federal Rules of Civil Procedure, the Local Rules, and any applicable order of this Court. The responses set forth herein are based solely on the information that is presently available and known to Music Publisher Plaintiffs.

As a preliminary matter, the Music Publisher Plaintiffs object to Charter's service of Interrogatories numbered 13 and 14 on two different sets of Plaintiffs—Record Company Plaintiffs and Music Publisher Plaintiffs. Regardless of the numbering, Music Publisher Plaintiffs construe any Interrogatory served on any Plaintiff(s) in this case to count towards Charter's 25-Interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1) ("[A] party may serve on any other party no more than 25 written interrogatories . . . .").

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

1. Music Publisher Plaintiffs object to Charter's definitions, instructions, and interrogatories to the extent they seek to impose obligations other than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the District of Colorado, and any applicable order of this Court. Music Publisher Plaintiffs will interpret and respond to these interrogatories in the manner prescribed by the same.

2

2. Music Publisher Plaintiffs object to the definitions and instructions to the extent they call for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common-interest privilege, or any other privilege or immunity under federal or state law.

3. Any confidential or proprietary information pertaining to the Music Publisher Plaintiffs' businesses, technology, or economic relationships shall be disclosed solely pursuant to the protective order entered by the Court on September 6, 2019 (ECF No. 63).

4. Music Publisher Plaintiffs object to the definitions and instructions as overly broad and unduly burdensome to the extent they require Music Publisher Plaintiffs to provide any information beyond what Music Publisher Plaintiffs are able to locate from a reasonable and diligent search of their files.

5. Music Publisher Plaintiffs' response to the interrogatories will be made without waiver of, and with the intentional preservation of:

   a. All objections as to competence, relevance, materiality, privilege, confidentiality, authenticity, and admissibility as evidence in any aspect of this or any other legal proceeding;

   b. The right to object on any ground to the use of information or documents, or the subject matter thereof, in any aspect of this or any other legal proceeding;

   c. The right to object at any time to further responses to interrogatories on any ground;

   d. The right to revise, correct, supplement, or clarify the responses and objections propounded herein at any time; and

   e. The right to object to terms defined in the "Definitions" section of Charter's Interrogatories but not used in Interrogatories 13, 14, or 15.

6. Identification or production of documents or information responsive to any discovery request should not be construed as:

    a. An admission or stipulation that the information or documents or their content or subject matter are properly discoverable or relevant;

    b. A waiver by Music Publisher Plaintiffs of any of their objections as set forth herein; or

    c. An agreement that requests for similar information will be treated in a similar manner.

7. Music Publisher Plaintiffs interpret the interrogatories to include a reasonable time period of March 1, 2012 to May 17, 2016 and limit their responses to the interrogatories accordingly, unless otherwise indicated below.

8. Music Publisher Plaintiffs object to the definition of "Plaintiff," "Plaintiffs," "You," or "Your," to the extent it encompasses entities, individuals, and information outside of Music Publisher Plaintiffs' knowledge, possession, custody, or control. Music Publisher Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case. By including "all past and present . . . employees" of every corporate affiliate, parent, and predecessor of the Music Publisher Plaintiffs, Charter is requesting that Music Publisher Plaintiffs search for information relating to tens of thousands of persons, including even persons who have not worked for any Plaintiff in decades. By including "all past and present predecessors, successors, subsidiaries, affiliates, and parent companies[,]" Charter is requesting that Music Publisher Plaintiffs search for information held or pertaining to related corporate entities which have no connection to this matter. Music Publisher Plaintiffs will construe the terms "Plaintiff," "Plaintiffs," "You" or "Your" to refer to the specific entities named as Music Publisher Plaintiffs in this action.

9. Music Publisher Plaintiffs object to the definition of "RIAA" to the extent it encompasses entities, individuals, and information outside of Music Publisher Plaintiffs' knowledge, possession, custody, or control. Music Publisher Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case. By including "past and present employees" of the RIAA, Charter is requesting that Music Publisher Plaintiffs search for information relating to an unknown number of persons, all of whom are outside of Music

Publisher Plaintiffs' control. Music Publisher Plaintiffs will construe "RIAA" to mean the Recording Industry Association of America itself.

10. Music Publisher Plaintiffs object to the definition and sub-definitions of "Identify" as overbroad, unduly burdensome, and disproportionate to the needs of this case as set forth below:

    a. Music Publisher Plaintiffs object to the sub-definition under "Document." The definition requires identification of documents with extensive information from the underlying documents. For example, if Charter wants to know the "author," "subject matter," "title," "date," and "total number of pages," of particular documents, it should request those documents and review them itself. Music Publisher Plaintiffs will identify documents by Bates number where applicable or by other reasonable criteria.

    b. Music Publisher Plaintiffs object to the sub-definition under "Communication." The definition requires identification of communications with extensive information in records of the underlying communications. For example, if Charter wants a "detailed description of the contents of the Communication," it should request records of the communications and review them itself. Music Publisher Plaintiffs will identify communications by Bates number where applicable or by other reasonable criteria.

    c. Music Publisher Plaintiffs object to the sub-definition of "copyright" or a "Copyright Work." The definition requires identification of "any current exclusive licensee," including nonparties that are exclusive licensees of rights not at issue in this suit, *e.g.*, public performance rights. The only information that is relevant is whether the named Plaintiff for a particular work is an owner or licensee of an exclusive right for that work. Music Publisher Plaintiffs will identify a "copyright," or "Copyright Work," by the name of the work, the artist or author thereof (as applicable), and the Plaintiff entity which is an owner or licensee of an exclusive right for that work.

**OBJECTIONS AND RESPONSES TO CHARTER'S INTERROGATORIES**

**INTERROGATORY NO. 13:**

Identify which of the music composition(s) listed on Exhibit B (including any amendments to same) to Plaintiffs' Complaint correspond with (or are embedded within) which of the sound recording(s) listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint, if any.

**OBJECTIONS TO INTERROGATORY NO. 13:**

1. Music Publisher Plaintiffs object to the interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. The phrase "correspond with (or are embedded within)" is vague, ambiguous, and overbroad because there are numerous ways that a musical composition and sound recording may be related, and it is unclear to what type of relationship Charter is referring. Charter's use of these terms implies distinct definitions for "correspond with" and "embedded within"—definitions which Charter has not provided. The burden of researching and listing any possible relationship between the musical compositions listed on Exhibit B and the sound recordings listing on Exhibit A would be significant, and is not proportional to the needs of this case.

2. Music Publisher Plaintiffs object to the interrogatory insofar as it seeks information equally and readily available to Charter.

3. Music Publisher Plaintiffs object to the interrogatory because whether "music composition(s) listed on Exhibit B . . . correspond with (or are embedded within) . . . sound recording(s) listed on Exhibit A" is not relevant to any claim or defense in suit. Each sound recording listed on Exhibit A and each musical composition listed on Exhibit B has been exploited individually as a standalone work.

**RESPONSE TO INTERROGATORY NO. 13:**

Subject to, and without waiving their objections, Music Publisher Plaintiffs state that each musical composition listed on Exhibit B is a standalone work that has been exploited individually.

**INTERROGATORY NO. 14:**

Identify those music composition(s) listed on Exhibit B (including any amendments to same) to Plaintiffs' Complaint that do not correspond with (or are not embedded within) any of the sound recording(s) listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint, if any.

**OBJECTIONS TO INTERROGATORY NO. 14:**

1. Music Publisher Plaintiffs object to the phrase "do not correspond with (or are not embedded within)" as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case. There are numerous ways that a musical composition and sound recording may be related, and it is unclear to what type of relationship Charter is referring. Charter's use of these terms implies distinct definitions for "correspond with" and "embedded within"—definitions which Charter has not provided. The burden of researching any possible relationship between the musical compositions listed on Exhibit B and the sound recordings listing on Exhibit A would be significant, and is not proportional to the needs of this case.

2. Music Publisher Plaintiffs object to the interrogatory insofar as it seeks information equally and readily available to Charter.

3. Music Publisher Plaintiffs object to the interrogatory because whether "music composition(s) listed on Exhibit B . . . do not correspond with (or are not embedded within) . . . sound recording(s) listed on Exhibit A" is not relevant to any claim or defense in suit. Each sound recording listed on Exhibit A and each musical composition listed on Exhibit B has been exploited individually as a standalone work.

**RESPONSE TO INTERROGATORY NO. 14:**

Subject to, and without waiving their objections, Music Publisher Plaintiffs state that each musical composition listed on Exhibit B is a standalone work that has been exploited individually.

**INTERROGATORY NO. 15:**

For each music composition listed on Exhibit B (including any amendments to same) to Plaintiffs' Complaint, identify each RIAA Notice that references the allegedly infringed file corresponding to that music composition.

**OBJECTIONS TO INTERROGATORY NO. 15:**

1. Music Publisher Plaintiffs object to the interrogatory insofar as it seeks information equally and readily available to Charter, including by using the hash information included in the RIAA notices.

2. Music Publisher Plaintiffs object to the interrogatory to the extent it seeks to obtain expert opinions prior to the period for expert discovery.

3. Music Publisher Plaintiffs object to the interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case.

Dated: March 26, 2020

*/s/ Neema T. Sahni*
Mitchell A. Kamin
Neema T. Sahni
Mark Chen
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
mychen@cov.com

Jonathan M. Sperling
William O'Neil
COVINGTON & BURLING LLP

8

The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
woneil@cov.com

Megan M. O'Neill
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
moneill@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

9

## CERTIFICATE OF SERVICE

I certify that on March 26, 2020, a true and correct copy of the foregoing was served on counsel for the parties of record.

*/s/ Neema T. Sahni*
Neema T. Sahni

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 19-cv-00874-RBJ |

PLAINTIFFS' OBJECTIONS AND RESPONSES TO
CHARTER COMMUNICATIONS, INC.'S SECOND SET OF INTERROGATORIES
TO THE RECORD COMPANY PLAINTIFFS

**PROPOUNDING PARTY**:  Defendant Charter Communications, Inc.

**RESPONDING PARTY**: Record Company Plaintiffs (Warner Records Inc., *et al.*)

**SET NUMBER**: Two

Plaintiffs Warner Records Inc. (f/k/a Warner Bros. Records Inc.), Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recording LLC, UMG Recordings, Inc., and Capitol Records, LLC (collectively "Record Company Plaintiffs"), through their undersigned counsel and pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby respond to Defendant Charter Communications, Inc.'s ("Charter") Second Set of Interrogatories upon Record Company

1

Plaintiffs as follows. Record Company Plaintiffs' investigation into the facts of this case is ongoing and is not yet completed, and Record Company Plaintiffs therefore reserve the right to supplement or amend their responses and objections to the extent permitted by the Federal Rules of Civil Procedure, the Local Rules, and any applicable order of this Court. The responses set forth herein are based solely on the information that is presently available and known to Record Company Plaintiffs.

As a preliminary matter, Record Company Plaintiffs object to Charter's service of Interrogatories numbered 13 and 14 on two different sets of Plaintiffs—Record Company Plaintiffs and Music Publisher Plaintiffs. Regardless of the numbering, Record Company Plaintiffs construe any Interrogatory served on any Plaintiff(s) in this case to count towards Charter's 25-Interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1) ("[A] party may serve on any other party no more than 25 written interrogatories . . . .").

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1. Record Company Plaintiffs object to Charter's definitions, instructions, and interrogatories to the extent they seek to impose obligations other than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the District of Colorado, and any applicable order of this Court. Record Company Plaintiffs will interpret and respond to these interrogatories in the manner prescribed by the same.

2. Record Company Plaintiffs object to the definitions and instructions to the extent they call for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common-interest privilege, or any other privilege or immunity under federal or state law.

3. Any confidential or proprietary information pertaining to the Record Company Plaintiffs' businesses, technology, or economic relationships shall be disclosed solely pursuant to the protective order entered by the Court on September 6, 2019 (ECF No. 63).

2

4. Record Company Plaintiffs object to the definitions and instructions as overly broad and unduly burdensome to the extent they require Record Company Plaintiffs to provide any information beyond what Record Company Plaintiffs are able to locate from a reasonable and diligent search of their files.

5. Record Company Plaintiffs' response to the interrogatories will be made without waiver of, and with the intentional preservation of:

   a. All objections as to competence, relevance, materiality, privilege, confidentiality, authenticity, and admissibility as evidence in any aspect of this or any other legal proceeding;

   b. The right to object on any ground to the use of information or documents, or the subject matter thereof, in any aspect of this or any other legal proceeding;

   c. The right to object at any time to further responses to interrogatories on any ground;

   d. The right to revise, correct, supplement, or clarify the responses and objections propounded herein at any time; and

   e. The right to object to terms defined in the "Definitions" section of Charter's Interrogatories but not used in Interrogatories 13 or 14.

6. Identification or production of documents or information responsive to any discovery request should not be construed as:

   a. An admission or stipulation that the information or documents or their content or subject matter are properly discoverable or relevant;

   b. A waiver by Record Company Plaintiffs of any of their objections as set forth herein; or

   c. An agreement that requests for similar information will be treated in a similar manner.

7. Record Company Plaintiffs interpret the interrogatories to include a reasonable time period of March 1, 2012 to May 17, 2016 and limit their responses to the interrogatories accordingly, unless otherwise indicated below.

8. Record Company Plaintiffs object to the definition of "Plaintiff," "Plaintiffs," "You," or "Your," to the extent it encompasses entities, individuals, and information outside of Record Company Plaintiffs' knowledge, possession, custody, or control. Record Company Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case. By including "all past and present . . . employees" of every corporate affiliate, parent, and predecessor of the Record Company Plaintiffs, Charter is requesting that Record Company Plaintiffs search for information relating to tens of thousands of persons, including even persons who have not worked for any Plaintiff in decades. By including "all past and present predecessors, successors, subsidiaries, affiliates, and parent companies[,]" Charter is requesting that Record Company Plaintiffs search for information held or pertaining to related corporate entities which have no connection to this matter. Record Company Plaintiffs will construe the terms "Plaintiff," "Plaintiffs," "You" or "Your" to refer to the specific entities named as Record Company Plaintiffs in this action.

9. Record Company Plaintiffs object to the definition of "RIAA" to the extent it encompasses entities, individuals, and information outside of Record Company Plaintiffs' knowledge, possession, custody, or control. Record Company Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case. By including "past and present employees" of the RIAA, Charter is requesting that Record Company Plaintiffs search for information relating to an unknown number of persons, all of whom are outside of Record Company Plaintiffs' control. Record Company Plaintiffs will construe "RIAA" to mean the Recording Industry Association of America itself.

10. Record Company Plaintiffs object to the definition and sub-definitions of "Identify" as overbroad, unduly burdensome, and disproportionate to the needs of this case as set forth below:

   a. Record Company Plaintiffs object to the sub-definition under "Document." The definition requires identification of documents with extensive information from the underlying documents. For example, if Charter wants to know the "author," "subject

    matter," "title," "date," and "total number of pages," of particular documents, it should request those documents and review them itself. Record Company Plaintiffs will identify documents by Bates number where applicable or by other reasonable criteria.

b. Record Company Plaintiffs object to the sub-definition under "Communication." The definition requires identification of communications with extensive information in records of the underlying communications. For example, if Charter wants a "detailed description of the contents of the Communication," it should request records of the communications and review them itself. Record Company Plaintiffs will identify communications by Bates number where applicable or by other reasonable criteria.

c. Record Company Plaintiffs object to the sub-definition of "copyright" or a "Copyright Work." The definition requires identification of "any current exclusive licensee," including nonparties that are exclusive licensees of rights not at issue in this suit, *e.g.*, public performance rights. The only information that is relevant is whether the named Plaintiff for a particular work is an owner or licensee of an exclusive right for that work. Record Company Plaintiffs will identify a "copyright," or "Copyright Work," by the name of the work, the artist or author thereof (as applicable), and the Plaintiff entity which is an owner or licensee of an exclusive right for that work.

**OBJECTIONS AND RESPONSES TO CHARTER'S INTERROGATORIES**

**INTERROGATORY NO. 13:**

Identify which sound recordings listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint were first issued or released together on or as albums or compilations, including for each the name of the corresponding album or compilation.

**OBJECTIONS TO INTERROGATORY NO. 13:**

1. Record Company Plaintiffs object to the terms "issued" and "released" as vague and ambiguous. Charter's use of these terms implies distinct definitions for each—definitions which Charter has not provided.

5

2. Record Company Plaintiffs object to the term "compilations" as vague and ambiguous, including that it is unclear whether Charter is requesting, for example, that Record Company Plaintiffs identify any sound recording on Exhibit A that was released together with another sound recording on Exhibit A as part of a playlist, a marketing promotion, on a streaming service, a third party product (such as a movie soundtrack), or something else. Charter's use of the terms "albums" and "compilations" implies distinct definitions for each—definitions which Charter has not provided.

3. Record Company Plaintiffs object to the interrogatory because whether sound recordings were "first issued or released together on or as albums or compilations" is not relevant to any claim or defense in suit. Each sound recording listed on Exhibit A has been exploited as a standalone work through multiple platforms, including online services such as iTunes or Spotify. Each is a distinct copyright work, and the manner in which it was first issued or released does not bear on any claim or defense in suit.

4. Record Company Plaintiffs object to the interrogatory insofar as it seeks information equally and readily available to Charter, including through publicly available sources (*e.g.*, the copyright registration certificates state the date on which a recording was first published).

5. Record Company Plaintiffs object to the interrogatory as unduly burdensome, and not proportional to the needs of the case. A sound recording can be packaged with other sound recordings in numerous different ways (*e.g.*, as part of an album, a marketing promotion, a playlist, a soundtrack to a movie or dramatic work, or on a streaming service), and it would require an unduly burdensome investigation to identify and group together all sound recordings on Exhibit A that were released together in any manner.

6. Record Company Plaintiffs object to the interrogatory because it contains at least three distinct topics that should be separately numbered interrogatories: (1) Which sound recordings in Exhibit A were first issued on "albums" or "compilations"; (2) the names of

6

the "albums" and compilations"; and (3) what other sound recordings in Exhibit A, if any, were included on the "albums" or "compilations."

**INTERROGATORY NO. 14:**

For each sound recording listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint, identify each RIAA Notice that references the allegedly infringed file corresponding to that sound recording.

**OBJECTIONS TO INTERROGATORY NO. 14:**

1. Record Company Plaintiffs object to the interrogatory insofar as it seeks information equally and readily available to Charter, including by using the hash information included in the RIAA notices.

2. Record Company Plaintiffs object to the interrogatory to the extent it seeks to obtain expert opinions prior to the period for expert discovery.

3. Record Company Plaintiffs object to the interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case.

Dated: March 26, 2020

/s/ Neema T. Sahni
Mitchell A. Kamin
Neema T. Sahni
Mark Chen
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
mychen@cov.com

Jonathan M. Sperling
William O'Neil
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
woneil@cov.com

Megan M. O'Neill
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
moneill@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

8

**CERTIFICATE OF SERVICE**

I certify that on March 26, 2020, a true and correct copy of the foregoing was served on counsel for the parties of record.

/s/ *Neema T. Sahni*
Neema T. Sahni