# Exhibit 4



333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
T +1 213 615 1700
F +1 213 615 1750

**ERIN R. RANAHAN**
eranahan@winston.com

May 8, 2020

**VIA EMAIL**

Special Master Regina Rodriguez
Regina.rodriguez@wilmerhale.com

Re:   *Warner Records, Inc., et al. v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH – Charter Communications, Inc.'s May 8, 2020 Moving Letter Brief

Dear Ms. Rodriguez:

We write on behalf of Defendant Charter Communications, Inc. ("Charter"), seeking an order compelling Plaintiffs to respond to discovery relating to the issues identified in our May 6, 2020 email.

**I.   Date Certain for the Completion of Copyright Validity and Chain-of-Title Production**

Plaintiffs bear the burden to prove that each of the copyrights covering 11,000-plus works asserted in this case are valid and, separately, that they have the right to sue for their alleged infringement. To do so, Plaintiffs must produce U.S. Copyright Office registration certificates and chain-of-title documentation. Plaintiffs have yet to complete this production, nearly 11 months after Charter's requests.[1] And while these are documents Plaintiffs agreed to produce, told the Court they would be producing,[2] and should have possessed *before* they filed suit, Plaintiffs still refuse to commit to a date by which they will complete this production. Plaintiffs should be compelled to complete this production by June 1 so that Charter can prepare for depositions. Without this information, Charter cannot test copyright validity and Plaintiffs' chain-of-title, which can reduce Charter's potential exposure by up to $150,000 per work removed.[3]

Relatedly, Plaintiffs were ordered to produce, as part of a 1% ownership sample, documents relating to ownership disputes. Charter has been unable to locate any responsive documents in Plaintiffs' production,[4] and Plaintiffs have recently admitted that they did not search emails for these types of documents. Plaintiffs should be compelled to conduct a good-faith investigation for this information, including through reasonably diligent email searches, such as including the names and artists of the sample works along with terms like "own" and/or "cease and desist."

---

[1] *See, e.g.*, RFP 3, 5. Plaintiffs' responses to Charter's first set of document requests is attached hereto as Ex. 1.
[2] *See* Ex. 2 (Feb. 19 Hr'g Tr. at 12:17-23).
[3] After Judge Hegarty ordered Plaintiffs to produce these documents for a 1% sample, Plaintiffs dropped 455 works. *Id.* at 8:8-11:25. Many of these same Plaintiffs dropped hundreds of works while litigating chain-of-title issues in *Sony*.
[4] While Plaintiffs claim they have produced "one or two" responsive documents, Charter cannot locate any in the production and repeatedly asked Plaintiffs to identify them. Plaintiffs should be required to identify any such documents by Bates number.



May 8, 2020
Page 2

## II. Response to MPP Interrogatory 13-15 and RCP Interrogatory 14[5]

This case involves 42 Music Publisher Plaintiffs ("MPP"), which assert 4,064 musical compositions, and 23 Record Company Plaintiffs ("RCP"), which assert 6,963 sound recordings. A musical composition copyright protects the melody and lyrics and a sound recording copyright protects a particular recording of a musical composition. While they are separately copyrightable, a sound recording is derivative of a music composition. Accordingly, under the plain language of the Copyright Act, the owner(s) of the musical composition and sound recording are entitled to a single award of statutory damages—*not* separate awards for the musical composition and the sound recording.[6]

Here, the MPPs' 4,064 musical compositions could result in over $609 million in statutory damages. However, because nearly all of these compositions were recorded on (or embedded within) sound recordings-in suit, Plaintiffs are not entitled to separate awards of statutory damages on these compositions, even if they can establish liability. Thus, the determination of which musical compositions-in-suit were recorded on which sound recordings-in-suit has a dramatic impact on Charter's potential exposure.

With MPP Interrogatories 13 and 14, Charter simply requests that the MPPs identify which of their musical compositions-in-suit were recorded within which of the sound recordings-in-suit (and vice versa). This is basic information in the MPPs' possession, custody, or control. Critically, **the MPPs did not send Charter any infringement notices**. Instead, they rely on notices sent by the RCPs (through the RCPs' agent, the Recording Industry Association of America ("RIAA")).[7] Those notices only identify **sound recordings**. It is our understanding that the RCPs provided the MPPs with a list of sound recordings identified in their notices and asked the MPPs to determine which of their musical compositions were implicated,[8] and to decide which works to sue on and which entities should be parties. (Contributory liability requires knowledge of alleged infringement and Plaintiffs rely on the notices to allege knowledge, so the MPPs had to undertake this task before filing suit.)

Plaintiffs have refused to respond to Charter's MPP Interrogatories 13 and 14, instead claiming, in part, that each work "has been exploited individually." Even if that were true, Plaintiffs are still entitled to only one award of statutory damages for the music composition and its corresponding recording. Charter is entitled to this information to present its statutory damages argument on summary judgment and, if necessary, at trial, information that is readily in Plaintiffs' possession. The MPPs should be ordered to identify the compositions-in-suit which are recorded in the sound recordings-in-suit.

Separately, Charter seeks an order compelling a response to MPP Interrogatory No. 15 and RCP Interrogatory No. 14, which respectively seek the identification of each notice that corresponds to each of Plaintiffs' works-in-suit.[9] As discussed below, **the vast majority of Plaintiffs' works-in-suit are _not identified_ in any notice**.[10] In virtually all cases, the RCPs' notices identify only a single sound recording,

---

[5] Plaintiffs' respective objections and responses to Charters' interrogatories are attached hereto as Ex. 3 & 4.
[6] *See* 17 U.S.C. 504(c); *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 94 (2d Cir. 2016). Charter is prepared to provide further briefing on this pure legal issue, if necessary.
[7] The MPPs do not dispute this. *See, e.g.*, ECF 123 (First Amended Complaint ("FAC")), ¶ 95.
[8] For example, Sony Music Entertainment, Inc. (an RCP) claims that it owns a sound recording copyright of Billy Joel's *Allentown*. *See* Ex. 5 (FAC, Ex. A (excerpted) of sound recordings, line 1,960). Universal Music Corp. (a MPP) claims to own the musical composition copyright. *See* Ex. 6 (FAC, Ex. B (excerpted) of musical compositions, line 2,248).
[9] Plaintiffs must possess this information, as they allege Charter secondarily infringed each work. *See* FAC ¶¶ 107, 114, 118.
[10] For example, in *Sony*, approximately 75% of the works were not identified; it is reasonable to assume the same is true here.



May 8, 2020<br>Page 3

though Plaintiffs claim that many *other* works are also infringed by virtue of that notice because they may have been contained on a torrent file implicated by the notice.[11] Further, as discussed above, the RCPs' notices do not identify *any* compositions, though the MPPs assert 4,064 in this case relying on the RCPs' notices. Thus, Charter seeks an order compelling Plaintiffs to identify basic information regarding which notices they claim identify the works-in-suit, which is essential to direct infringement of each work.

### III.     Response to RFPs 90 and 91[12]

As discussed during the April hearing, the Audible Magic reference files ("Reference Files") are integral to Plaintiffs' ability to establish direct infringement, because they were used to match the alleged infringements at issue. The Special Master ordered Plaintiffs to state by June 1 whether the digital files they have produced to date *are* the Reference Files that were used. ECF 164. Charter served RFPs 90 and 91 seeking the Reference Files and the corresponding database of Audible Magic "fingerprints." Given Plaintiffs' patently deficient response to these requests, which Charter raised during the April hearing, Charter seeks an order compelling Plaintiffs to produce this information. If the digital files Plaintiffs have produced to date are the Reference Files, then Charter's RFP 90 is partially resolved (discussed below). If they are different, or Plaintiffs cannot answer the question, then Plaintiffs should be compelled to produce the Reference Files used or make them available for inspection. Charter's RFP 91 remains outstanding regardless of whether the digital files produced to date are the same as the Reference Files.

Plaintiffs have represented that they have produced digital copies of the sound recordings. As noted above, if these digital files are the same as the Reference Files, then Plaintiffs need not produce additional files for the sound recordings. However, there is a subset of musical compositions-in-suit which are *not* recorded sound recordings-in-suit.[13] Even assuming the digital files produced to date are the Reference Files, there are, therefore, musical compositions for which no file will have been produced. Plaintiffs should be compelled to produce the Reference File that corresponds to each of those musical compositions and documents sufficient to show the fingerprints, as requested by RFPs 90 and 91.

### IV.     Response to RFPs 27, 55, 56, 62-66 and 84

Since Charter served its first set of document requests in June 2019, the parties have met and conferred repeatedly regarding the deficient scope of Plaintiffs' responses. Charter seeks an order compelling Plaintiffs to expand their response to several requests—both as to time period and substance— that go to the heart of whether Plaintiffs can establish direct infringement. For ease of reference, App. 1 is a chart that lists Charter's original request, what Plaintiffs have agreed to produce, and what Charter seeks Plaintiffs be compelled to further produce.

---

[11] An example of an RCP notice is attached hereto as Ex. 7. The notice identifies only Kanye West's *Mercy*, though Plaintiffs will claim that other, non-noticed sound recordings and musical compositions were infringed by this Charter subscriber when a particular torrent file was downloaded from a P2P network; that is information in Plaintiffs' possession but not Charter's.

[12] Plaintiffs' objections and responses to Charter's second set of document requests is attached hereto as Ex. 8.

[13] For example, Band X may have covered *(I Can't Get No) Satisfaction* by The Rolling Stones. A Charter subscriber could be alleged to have downloaded the Band X cover, which might be owned by an independent record label that is not a party to this case. Thus, no Plaintiff is suing on Charter's alleged infringement of the sound recording. However, one of the MPPs may own the musical composition copyright to *(I Can't Get No) Satisfaction*, so this MPP is suing on the musical composition in this case. Charter seeks the Reference File for the musical compositions-in-suit for which there is no sound recording in suit. In *Sony*, there were approximately 800 such musical compositions (out of a total of approximately 3,400 asserted).



May 8, 2020<br>Page 4

Charter agreed to limit production in response to most of its requests to the end of the Claim Period. For the handful of requests discussed here, however, post-Claim Period documents are highly relevant. RFP 27 seeks documents concerning Charter and this litigation and RFPs 55, 56, 62-66 additionally seek documents concerning Plaintiffs' factual investigation, including documents with or concerning the RIAA, MarkMonitor, and Audible Magic. Documents concerning Plaintiffs' factual investigation and these third parties are key to Plaintiffs' direct infringement case. Indeed, these post-Claim Period documents are highly likely to include information bearing on the integrity of Plaintiffs' notices, including whether Plaintiffs' owned a work before a notice was sent, the notice correctly identified a work, the verification was accurate, and the system was reliable, which might not have been assessed until *after* the Claim Period. Plaintiffs object to producing these documents post-Claim Period, claiming, in part, they are "more likely to be privileged." But Plaintiffs have never explained how correspondence with these *third parties* about core evidence they rely on in this case would be privileged, and should nevertheless be ordered to log them, in order to allow Charter to challenge any such claim. Plaintiffs should be ordered to produce documents consistent with Charter's requests (as narrowed), after the Claim Period. App. 1.

Plaintiffs have objected to RFP 65, which seeks, in part, technical analyses of the systems used to send Charter notices, on the additional ground that they will not produce documents that relate solely to the Copyright Alert System ("CAS"). This is concerning. MarkMonitor's system was used to send notices *both* to Charter and in connection with CAS. Thus, Plaintiffs should be ordered to produce documents responsive to this and other MarkMonitor-related requests (RFPs 55, 62, 63, 66) regardless of whether they primarily concern the MarkMonitor system used under CAS. It is for percipient and expert witnesses to assess where the systems diverge (if at all)—not Plaintiffs' litigation counsel.

RFP 84 seeks documents concerning Audible Magic's verification process, which is clearly relevant, as discussed at length during the April hearing. Charter seeks an order compelling Plaintiffs to produce responsive documents regardless of whether the documents were created after the Claim Period.

## V. Response to RFP 22-25, 54, 59, 60, and 65

These requests involve issues relating to Plaintiffs' anti-piracy efforts at issue. App. 2, attached, outlines Charter's requested relief.

- RFP 22-25: Charter seeks documents concerning the financial effect from P2P infringement on Plaintiffs during the Claim Period (RFP 22) and P2P file sharing as it relates to Plaintiffs' respective businesses (RFPs 23-25). Plaintiffs claim there is no practicable way to search for post-Claim Period documents and, with respect to RFPs 23-25, any such documents are irrelevant. With respect to RFP 22, Plaintiffs can merely extend the dates of their current search parameters or apply other search terms (such as dates). Post-Claim Period documents sought by RFPs 23-25 are relevant, as Plaintiffs' Claim Period is a convenient, tolling-agreement induced snap-shot in the history of alleged piracy. Post-Claim-Period documents are integral to painting a complete picture for the jury, which is relevant to the deterrence factor of statutory damages.

- RFPs 54, 59, 65: Plaintiffs should be compelled to produce their documents and communications with or about Rightscorp, a company similar to MarkMonitor. Rightscorp was known to engage in suspect and questionable practices, including by flooding ISPs, including Charter, with millions of notices. In *Sony*, while Rightscorp's notices did not form the basis of



May 8, 2020
Page 5

the *Sony* plaintiffs' claims, the *Sony* plaintiffs (many of the same here) nevertheless elicited exhaustive trial testimony regarding Rightscorp. Here, Plaintiffs intend to do the same. Thus, Plaintiffs' communications with or about Rightscorp are probative of the reliability of Rightscorp's system, the appropriateness of its notices, and its perception by the industry; they should be produced. The jury is entitled to know if Plaintiffs were unwilling to do business with Rightscorp because of its questionable practices, and yet Plaintiffs now rely on Rightscorp notices as reliable.

- RFP 60: Plaintiffs claim their business was decimated by P2P piracy in the years leading up to and including the Claim Period (though, as discussed during the April hearing, since then, Plaintiffs' revenues sky-rocketed, mainly due to Internet streaming services). We understand Plaintiffs cut their anti-piracy budgets in the years during that same period. Charter seeks how much Plaintiffs cut their spending, including through the RIAA, between 2010 and 2016.

### VI. Supplementation of Custodians and Search Terms and a Plaintiff-Specific "Hit Report"

Plaintiffs have identified a total of 23 custodians for 65 separate Plaintiffs (as compared with Charter's 17 custodians for one company). Though Charter has agreed in meet and confer discussions to add several additional custodians, Plaintiffs refuse to supplement their custodians *at all*, including for two important sets of requests. First, for requests concerning the RIAA, MarkMonitor, or Audible Magic, (RFPs 55, 56, 62-66, and 84), Plaintiffs should add as custodians their agents who had such correspondence, including outside counsel. Plaintiffs claim that they have identified any *employees* who would have communicated with these key third parties and, unsurprisingly, have produced scant documents to date—because, of course, these communications were conducted on Plaintiffs' behalf by Plaintiffs' agents, including outside counsel. These would include, for example, counsel's correspondence with MarkMonitor about the hard drive containing purported evidence of direct infringement with which the Special Master is very familiar. Second, RFP 25 seeks, in part, documents concerning Plaintiffs' promotion of their works on P2P networks. Plaintiffs claim that it was ISPs and individual users who are responsible for the proliferation of their works on P2P networks. Yet a report from 2015 states that "over 30,000 publishers, including all of the major record labels [the RIAA] represent[s], have signed up to legally publish a Bundle on BitTorrent.com."[14] Despite this and other indicia that Plaintiffs used P2P networks to promote their works, Plaintiffs refuse to add *any* marketing custodians who deal with the exploitation of Plaintiffs' works on the Internet. Plaintiffs instead claim that their in-house lawyers and anti-piracy personnel (who are apparently unaware of *Plaintiffs'* potential use of BitTorrent) are the appropriate custodians for this and other promotional uses. Plaintiffs should be compelled to add custodians to properly respond to RFP 25.

Lastly, Plaintiffs should produce Plaintiff-specific search term hit reports by a date certain. While they have indicated that they will consider doing so, they will not commit to a date.

Very truly yours,

*s/ Erin R. Ranahan*

---

[14] Ex. 9 (Jason Abbruzzese, *BitTorrent defender sends scathing letter to music-industry lobby*, Mashable (Aug. 11, 2015), https://mashable.com/2015/08/11/bittorrent-fires-back-riaa/).

# Appendix 1

**APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 27:** All documents that mention, refer to, or relate to Charter and/or the above-captioned litigation that were created, received, or sent from 2013 to the present. | "Plaintiff will produce responsive, non-privileged documents in their possession, custody, or control concerning Charter and copyright infringement for the time period January 1, 2013 to May 17, 2016, to the extent located following a reasonable and diligent search."<br><br>*See* Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 27). | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019.[1] |
| **REQUEST NO. 55:** All communications with MarkMonitor regarding the Copyright Works[2] and/or copyright infringement notices considered, prepared, or sent to Charter or its account holders, subscribers, or customers. | "Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce, for the period from January 1, 2013 to May 17, 2016 responsive, non-privileged communications with MarkMonitor concerning infringement notices MarkMonitor sent to Charter in connection with the RIAA notice program at issue in this case that are in Plaintiffs' possession, custody, or control, to the extent located following a reasonable and diligent search."<br><br>*See* Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 55). | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019. |

---

[1] With respect to the requests addressed in this Appendix, the relief Charter seeks is based, in part, on Charter's recent correspondence with Plaintiffs. *See, e.g.*, Ex. 10 (Charter's April 22, 2020 Ltr.).

[2] The "Copyright Works" is defined as the works-in-suit.

1

**APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 56:** All documents concerning any computer code, computer program, software, hardware, system, process, or device utilized to monitor or detect copyright infringement through BitTorrent or peer-to-peer file sharing technologies or sites, or using copyright infringement notices that were prepared and sent by You or on Your behalf to Charter for the Copyright Works. | "Plaintiffs will agree, subject to these objections, to produce non-privileged documents, if any, responsive to RFP 56 that are located in their possession, custody, and control based on a reasonable and diligent search for the claim period." *See* Ex. 11 (Pls.' March 25, 2020 Ltr.) at 4. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. |
| **REQUEST NO. 62:** All documents concerning the RIAA and either this lawsuit, Charter, CAS, MarkMonitor, and/or the Copyright Works. | "Plaintiffs will produce non-privileged documents concerning (1) MarkMonitor, and (2) peer-to-peer file sharing networks, copyright infringement, Bright House/Charter, or the RIAA, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. Plaintiffs will also produce non-privileged documents concerning the RIAA, Bright House/Charter, and copyright infringement, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." Time period: March 1, 2012 through May 17, 2016. *See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | Plaintiffs should produce documents that concern the RIAA and either (i) this lawsuit, (ii) Charter, (iii) MarkMonitor, and/or (iv) the works in suit through 2019. |

2

**APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 63:** All documents pertaining to the relationship, agreement, and/or communications between You and/or any other Plaintiff and the RIAA and/or MarkMonitor regarding this lawsuit, the Copyright Works, and/or Charter. | "Plaintiffs will produce non-privileged documents concerning (1) MarkMonitor, and (2) peer-to-peer file sharing networks, copyright infringement, Bright House/Charter, or the RIAA, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. Plaintiffs will also produce non-privileged documents concerning the RIAA, Bright House/Charter, and copyright infringement, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search."<br><br>Time period: March 1, 2012 through May 17, 2016.<br><br>*See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019. |
| **REQUEST NO. 64:** All documents concerning the relationship, agreement, and/or communications between the RIAA and any other person as it relates to either Charter, this lawsuit, and/or the Copyright Works. | Plaintiffs will not produce documents responsive to this request. | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019. |

**APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 65:**<br>All documents concerning any technical or qualitative analysis of any computer code, computer program, software, hardware, system, process, or device utilized to identify infringement and/or produce the copyright notices which were sent to Charter or upon which You will rely in this litigation, including any documents drafted by the Center for Copyright Information ("CCI"), MarkMonitor, Stroz Friedberg, or Harbor Labs. | "Plaintiffs will produce non-privileged analyses of the computer code utilized to identify infringement and/or produce the infringement notices that were sent to Bright House and Charter during the claim period of March 24, 2013 to May 17, 2016, to the extent such analyses exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. Plaintiffs will not, however, produce any such documents that relate solely to the Copyright Alert System."<br><br>*See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | Plaintiffs should produce any analyses that concern computer code or other systems responsible for the process in identifying infringement and/or producing the infringement notices that were sent to Charter, or upon which Plaintiffs will rely on in this case. This includes any and all documents concerning such analyses involving CCI, MarkMonitor, Stroz Friedberg, and Harbor Labs. This also would include documents involving the RIAA.<br><br>Plaintiffs should be further ordered to produce the type of documents described above, even if the document references the Copyright Alert System ("CAS") or was created pursuant to the CAS or the CCI, unless the MarkMonitor system at issue shared absolutely no similarities, on any level, with the MarkMonitor system used to send notices to Charter or upon which Plaintiffs are otherwise relying in this case.<br><br>Plaintiffs should be ordered to produce documents from March 1, 2012 through 2019. |

**APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 66:** All documents and correspondence relating to the reliability and/or efficacy of the MarkMonitor System, including but not limited to audits related thereto, and documents and communications with MarkMonitor, Stroz Friedberg, and/or Harbor Labs pertaining to any technical assessments of the MarkMonitor System. | "Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control, for the period from January 1, 2013 to May 17, 2016, concerning the reliability of the MarkMonitor system used to produce the copyright notices sent to Charter upon which Plaintiffs will rely in this litigation, to the extent located following a reasonable and diligent search."<br><br>*See* Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 66). | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. |
| **REQUEST NO. 84:** All documents concerning the company Audible Magic and/or its technology, including without limitation, the use of Audible Magic's technology to identify the alleged infringements at issue in this litigation. | "Plaintiffs will produce non-privileged documents concerning the use of Audible Magic's technology to identify the infringements at issue in this litigation, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search."<br><br>*See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | Plaintiffs should be compelled to produce documents concerning Audible Magic's technology used in connection with the identification of the alleged infringements in this litigation through 2019. |

# Appendix 2

**APPENDIX 2 (RFPs 22-25, 54, 59, 60)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 22:** All documents concerning the effect from copyright infringement using peer-to-peer file sharing technologies on Your projected and actual total revenue and/or profits generated during Plaintiffs' Claim Period. | "Plaintiffs will produce non-privileged studies, reports, and analyses assessing the financial effect of copyright infringement via BitTorrent and other peer-to-peer file sharing networks on Plaintiffs' revenue from the works in suit, to the extent such studies, reports, and analyses exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." Time period: March 1, 2012 through May 17, 2016. *See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019.[1] |
| **REQUEST NO. 23:** All documents that reference BitTorrent or other types of peer-to-peer file sharing technologies as they relate to diminished or diminishing use of such technologies, copyright infringement, sampling musical works, or permitted authorized uses, whether actual, perceived, or potential, of the Copyright Works. | "Plaintiffs will produce non-privileged analyses and internal documents concerning the diminished or diminishing use of BitTorrent or other peer-to-peer file sharing networks, to the extent such analyses and internal documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." Time period: March 1, 2012 through May 17, 2016. *See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. |

---

[1] With respect to the requests addressed in this Appendix, the relief Charter seeks is based, in part, on Charter's recent correspondence with Plaintiffs. *See, e.g.*, Ex. 10 (Charter's April 22, 2020 Ltr.).

**APPENDIX 2 (RFPs 22-25, 54, 59, 60)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 24:** All documents concerning the effect of the use of peer-to-peer technologies on any Plaintiffs, including studies or analyses demonstrating, reflecting, supporting, or refuting any benefit or harm to any Plaintiff, including but not limited to any Copyright Work. | "Plaintiffs will produce non-privileged studies assessing the benefit or harm to Plaintiffs from copyright infringement via BitTorrent or other peer-to-peer file sharing networks, to the extent such studies exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." Time period: March 1, 2012 through May 17, 2016. *See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. |
| **REQUEST NO. 25:** All documents concerning the use of peer-to-peer file sharing sites or technologies including, but not limited to, BitTorrent to promote, market, or otherwise benefit You, any of the Copyright Works, and/or any of the artists who created the Copyright Works. | "Plaintiffs will produce non-privileged documents concerning Plaintiffs' use of BitTorrent and other peer-to-peer file sharing networks to market or promote Plaintiffs' works, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." Time period: March 1, 2012 through May 17, 2016. *See* Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. |

**APPENDIX 2 (RFPs 22-25, 54, 59, 60)**

| Charter's Original Request | Plaintiffs' Response | Charter's Proposed Order |
|---|---|---|
| **REQUEST NO. 54:** All communications with Rightscorp regarding the Copyright Works and/or copyright infringement notices considered, prepared, or sent to Charter or its account holders, subscribers, or customers. | Plaintiffs will not produce documents responsive only to this request. *See* Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 54). | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019. Charter is willing to further meet and confer regarding appropriate custodians and search terms, in addition to any other narrowing that may be appropriate in light of the volume of responsive documents per Plaintiff. |
| **REQUEST NO. 59:** Documents sufficient to demonstrate the specific actions You undertook in the last ten (10) years that were intended to reduce the infringement of Your Copyright Works and/or any of Your other copyrighted works, including any amount of money you expended on these actions. | Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce notices of infringement in their possession, custody, or control that are related to the copyrighted works in suit and were sent to Charter by or on behalf of Plaintiffs, to the extent located following a reasonable and diligent search. *See* Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 59). | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019, including as they concern Rightscorp. Charter is willing to further meet and confer regarding appropriate custodians and search terms, in addition to any other narrowing that may be appropriate in light of the volume of responsive documents per Plaintiff. |
| **REQUEST NO. 60:** Documents sufficient to demonstrate the amount of money You paid to the RIAA between 2010 and 2016. | Plaintiffs will not produce documents responsive only to this request. *See* Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 60). | Plaintiffs should produce documents responsive to Charter's request, as drafted. |

*Warner Records Inc., et al. v. Charter Communications, Inc.*, 1:19-cv-874-RBJ-MEH
**Index of Exhibits to Charter Communications, Inc.'s May 8, 2020 Moving Letter Brief**

| Ex. No. | Description |
|---|---|
| 1 | Plaintiffs' Objections and Responses to Charter Communications, Inc.'s First Set of Requests for Production of Documents, dated July 25, 2019 |
| 2 | Excerpt of Transcript of Proceedings before U.S.M.J. Michael E. Hegarty, dated February 19, 2020 |
| 3 | Plaintiffs' Objections and Responses to Charter Communications, Inc.'s Second Set of Interrogatories to the Music Publisher Plaintiffs, dated March 26, 2020 |
| 4 | Plaintiffs' Objections and Responses to Charter Communications, Inc.'s Second Set of Interrogatories to the Record Company Plaintiffs, dated March 26, 2020 |
| 5 | Excerpt of Amended Exhibit A to the First Amended Complaint |
| 6 | Excerpt of Amended Exhibit B to the First Amended Complaint |
| 7 | Example Record Company Plaintiff Notice, PL_CH_InfNotice_0632198 |
| 8 | Plaintiffs' Objections and Responses to Charter Communications, Inc.'s Second Set of Requests for Production of Documents, dated March 26, 2020 |
| 9 | Jason Abbruzzese, *BitTorrent defender sends scathing letter to music-industry lobby*, Mashable (Aug. 11, 2015), https://mashable.com/2015/08/11/bittorrent-fires-back-riaa/ |
| 10 | Letter from Charter to Plaintiffs, dated April 22, 2020 |
| 11 | Letter from Plaintiffs to Charter, dated March 25, 2020 |
| 12 | Letter from Plaintiffs to Charter, dated Nov. 8, 2019 |