# Exhibit 6



North America   Europe   Asia

333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
T +1 213 615 1700
F +1 213 615 1750

May 20, 2020

**VIA EMAIL**

Special Master Regina Rodriguez
Regina.rodriguez@wilmerhale.com

**Re:**   *Warner Records, Inc., et al. v. Charter Communications, Inc.*, 19-cv-00874-RBJ-MEH –
Charter's Submission Regarding MPP Interrogatory 13-15 and RCP Interrogatory 14

Dear Ms. Rodriguez:

We write on behalf of Defendant Charter Communications, Inc. ("Charter"), pursuant to your request for supplemental briefing regarding Charter's Interrogatory 13-15 to the Music Publisher Plaintiffs ("MPP") and Interrogatory 14 to the Record Company Plaintiffs ("RCP").

These interrogatories seek basic factual information underlying Plaintiffs' claims, which, in order to comply with their Rule 11 obligations, Plaintiffs had to compile *before* they filed their complaint. While Charter could devote substantial resources and outside investigation in *attempting* to perform the factual analyses sought by its targeted and highly relevant interrogatories, Rule 33(d) only allows documents to stand for a written response *where the burden is equal*. *See* Fed. R. Civ. P. 33(d); *see also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 2012 WL 12894846, at *11 (D. Minn. May 11, 2012). Here, the burden is clearly *unequal*, as it is between Plaintiffs providing information they already have in hand and Charter who would be left to try and piece together vast swaths of information to define Plaintiffs' *prima facie* case. Indeed, in this case where 65 Plaintiffs seek from Charter *nearly two billion dollars in damages*, any burden Plaintiffs encounter by being required to provide this basic information underlying their claims is outweighed by the critical nature of this information to the case, as described in more detail below.

MPP Interrogatory 13 and 14 seek the identification of which music compositions are embedded within which sound recordings, and which are not embedded in any sound recording, respectively. This is foundational information the MPPs had to have in hand before filing suit. Because the MPPs admittedly did not send Charter *any* infringement notices, before they could sue on their 4,064 compositions, seeking over $609 million in statutory damages, they had to determine which of their respective works were implicated by the notices the RCPs sent to Charter, as they concede. FAC ¶ 97 (alleging Plaintiffs' notices implicate music compositions). Thus, by necessity, *before suing*, the MPPs had to determine which of their compositions are and are not embedded within the sound recordings; this is precisely the information Charter requests with MPP Interrogatory 13 and 14.

As discussed in Charter's May 8 Motion, this information is critical to determine the appropriate number of "works" the jury will consider when deciding a just amount of statutory damages, should Plaintiffs establish liability. Plaintiffs seeking statutory damages are entitled to only one award of statutory damages for a music composition and a corresponding/derivative sound recording. *See* 17 U.S.C. 504(c); *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 94 (2d Cir. 2016). Here, based on the number of overlapping works from *Sony*, which is a reasonable proxy, canceling out overlapping compositions with a recording would reduce Charter's potential exposure by up to ***$450 million***.



May 20, 2020
Page 2

Plaintiffs claim that Charter is not entitled to responses to these interrogatories because Charter can easily compare Plaintiffs' list of sound recordings to their list of compositions. But that statement ignores that there are *hundreds* of music compositions that share the same title. Thus, for example, by comparing these lists, it is not possible to determine *which* of the five separate music compositions titled "Everything" corresponds to which of the four sound recordings bearing the same name.[1] In addition, there are *hundreds* of music compositions where *no* corresponding sound recording shares a title. Thus, it is unclear whether any of these music compositions resides in any of the sound recordings. Plaintiffs have the information to make this determination and Charter does not. And even if Charter could perform a simple title comparison, which it cannot for the reasons stated above, there would be less of a burden to Plaintiffs in providing what they have already done (or could simply do). Accordingly, Plaintiffs should be compelled to respond to these interrogatories. Given the relevance of this information, Charter is entitled to a verified response.

Separately, MPP Interrogatory 15 and RCP Interrogatory 14, respectively, asks for identification of the notices that identify each of their 11,027 works in suit. Plaintiffs also had to have this information in order to file suit because, as they allege, their notices to Charter implicate each work in suit. *See* FAC ¶ 97 (alleging the notices indicate Charter's subscribers infringed the works in suit). Critically, the information Charter requests, and the allegations it purportedly supports, serve as a basis for Plaintiffs' secondary infringement claims. Indeed, according to Plaintiffs, Charter's knowledge of the alleged infringement—an element of Plaintiffs' contributory liability claim—derives from the notices. But Plaintiffs notices on their face only identify approximately 25% of the 6,963 sound recordings in suit, leaving Charter to guess which notices Plaintiffs allege identify the remaining 75%. Moreover, because the MPPs did not send *any* notices to Charter, none of their 4,064 music compositions are identified either. So, in order to bring this suit for the 75% of works in suit that are not identified by name, the MPP had to have determined which of their music compositions are implicated by the RCP's notices and the RCP had to have determined which of their unidentified 5,000-plus sound recordings are allegedly implicated by their notices.

Plaintiffs wrongly claim Charter can just as easily do this on its own. This is because the obscure way Plaintiffs claim their notices implicate the 75% of works in suit that are not actually identified in the notices (worth nearly $1.4 billion in added statutory damages) is through a convoluted series of steps involving cryptographic hash numbers, several voluminous spreadsheets produced by Plaintiffs, manually listening to music on the contested MarkMonitor hard drive that purportedly contains tens of thousands of "infringing files," and, ultimately, resolving the first issue discussed above regarding the overlap of sound recordings and music compositions. While Charter could attempt to devote substantial resources to perform this analysis, given Plaintiffs' allegations and produced spreadsheets, they have already made this factual determination. Thus Plaintiffs' burden is less than Charter's and they should be compelled to respond to Charter's interrogatories, which seek verified responses about *Plaintiffs' factual* contentions purportedly supporting a critical component of their *prima facie* case.

We appreciate the opportunity to further address these issues and your assistance in resolving them.

---

[1] Notably, in *Sony*, Plaintiffs argued the exact opposite, claiming that comparing the lists of sound recordings and music compositions is no "ministerial task." *See* Ex. 1 (*Sony*, ECF 699 at 17, n.10) ("[T]here are simply too many separate musical compositions that happen to have the same title to have any certainty whether a sound recording with the same title corresponds to the musical composition without referencing data not found in [the respective lists of sound recordings and music compositions in suit].."). Nevertheless, Plaintiffs also performed this analysis in *Sony*, as represented in a summary proposed trial exhibit, which they later withdrew. *See* Ex. 2 (*Sony* Plaintiffs' proposed trial exhibit PX-38).



May 20, 2020
Page 3

Very truly yours,

*s/ Erin R. Ranahan*