REDACTED VERSION

ORIGINAL

RECEIVED
SEP 21 2020
CLERK, SUSAN Y. SOONG
NORTHERN DISTRICT OF COURT CALIFORNIA
SAN JOSE

1   Charles K. Verhoeven
    David Eiseman
2   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    50 California Street, 22nd Floor
3   San Francisco, CA 94111
    (415) 875-6600 (telephone)
4   (415) 875-6700 (facsimile)
    E-mail: charlesverhoeven@quinnemanuel.com
5   E-mail: davideiseman@quinnemanuel.com

6   Andrew H. Schapiro
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
7   191 N. Wacker Drive, Suite 2700
    Chicago, IL 60606
8   (312) 705-7400 (telephone)
    (312) 705-7401 (facsimile)
9   andrewschapiro@quinnemanuel.com

10  Jennifer A. Golinveaux (SBN: 203056)
    Winston & Strawn LLP
11  101 California Street, 35th Floor
    San Francisco, CA  94111
12  Tel: (415) 591-1000
    Fax: (415) 591-1400
13  Email: JGolinveaux@winston.com

14  Krishnan Padmanabhan (SBN: 254220)
    Winston & Strawn LLP
15  200 Park Avenue
    New York, NY  10166
16  Tel: (212) 294-6700
    Fax: (212) 294-4700
17  Email: KPadmanabhan@winston.com

18  Counsel for Movant
    CHARTER COMMUNICATIONS, INC.

19

20                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
21                       SAN JOSE DIVISION

22  CHARTER COMMUNICATIONS, INC.,          )   Case No. _____-MISC
                                           )
23          Movant,                        )
                                           )
24      v.                                 )   CHARTER'S NOTICE OF MOTION
                                           )   AND MOTION TO COMPEL
25  AUDIBLE MAGIC CORP.,                   )   COMPLIANCE WITH SUBPOENA
                                           )   *DUCES TECUM*
26          Respondent.                    )
                                           )   Date:    September 18, 2020
27  _____       )   Time:    To be set
                                               Place:   To be set
28

SVK

CV 20 80160 MISC

1  NOTICE is hereby given of the filing of this motion pursuant to Rule 45(d)(2)(B) of the
2  Federal Rules of Civil Procedure by Charter Communications, Inc. ("Charter").  This motion seeks
3  to compel Respondent, Audible Magic Corp. ("Audible Magic"), to comply with a third-party
4  subpoena that Charter served on it on December 20, 2019, in a copyright infringement litigation
5  currently pending in the District of Colorado, styled *Warner Records Inc. v. Charter*
6  *Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH (the "*Warner* litigation").  Pursuant to
7  Fed. R. Civ. P. 45, Charter files its Motion in this District, where Audible Magic is located.

8  Pursuant to Local Civil Rule 37-1(a), the undersigned counsel for Charter represents that
9  counsel for Charter met and conferred with counsel for Audible Magic on August 12, 2020, with
10  respect to the issues raised in this Motion, but that, as of the date of filing this Motion, Audible
11  Magic has refused to produce its source code and executable code to Charter for review by Charter's
12  expert witnesses.  Audible Magic has also refused to confirm whether it has withheld any
13  correspondence as privileged or work product, refused to produce a privilege log for any withheld
14  correspondence, and has refused to search for or log any correspondence.  This includes a failure to
15  search for documents and correspondence from 2016 onward, a period during which Plaintiffs and
16  their agent, the Recording Industry Association of America, were actively gathering the evidence
17  that forms the basis of their claims in this case, and purportedly used Audible Magic to verify that
18  evidence.

19  This Motion seeks two orders from the Court:  First, it seeks an order setting a date certain
20  by which Audible Magic will grant Charter access to its source code and executable code for review.
21  Second, it seeks an order directing Audible Magic to to produce, log, or disclaim the existence of
22  certain material sought by Requests for Production ("RFPs") 1-3, 8, 11, 15, 19-21 of the subpoena.
23  Audible Magic's response to these requests has asserted a privilege, but Audible Magic has neither
24  logged the ostensibly privileged material, nor has it been willing to disclaim the existence of any
25  such material.  For at least some of the period covered by the subpoena, there is good reason to
26  believe that such material exists.

27  As explained in greater detail below, Audible Magic's work on this case is foundational to
28  Plaintiffs' ability to attempt to prove the underlying direct infringement, which, in turn, is the

ii

premise upon which their secondary liability claims against Charter are based.   As a consequence, full and prompt compliance by Audible Magic is essential to Charter in preparation of its defense in the *Warner* litigation.   Charter's Motion is based on this Notice, the supporting Memorandum of Points and Authorities, and any additional arguments or evidence as may be presented at or before the hearing.

Dated: September 18, 2020                                WINSTON & STRAWN LLP

                                                By:     /s/ Jennifer A. Golinveaux
                                                        Jennifer A. Golinveaux (SBN: 203056)
                                                        Winston & Strawn LLP
                                                        101 California Street, 35th Floor
                                                        San Francisco, CA  94111
                                                        Tel: (415) 591-1000
                                                        Fax: (415) 591-1400
                                                        Email: JGolinveaux@winston.com

                                                        Krishnan Padmanabhan (SBN: 254220)
                                                        Winston & Strawn LLP
                                                        200 Park Avenue
                                                        New York, NY  10166
                                                        Tel: (212) 294-6700
                                                        Fax: (212) 294-4700
                                                        Email: KPadmanabhan@winston.com

                                                        Charles K. Verhoeven
                                                        David Eiseman
                                                        Quinn Emanuel Urquhart & Sullivan LLP
                                                        50 California Street, 22nd Floor
                                                        San Francisco, CA 94111
                                                        (415) 875-6600 (telephone)
                                                        (415) 875-6700 (facsimile)
                                                        E-mail: charlesverhoeven@quinnemanuel.com
                                                        E-mail: davideiseman@quinnemanuel.com

                                                        Andrew H. Schapiro
                                                        Quinn Emanuel Urquhart & Sullivan LLP
                                                        191 N. Wacker Drive, Suite 2700
                                                        Chicago, IL 60606
                                                        (312) 705-7400 (telephone)
                                                        (312) 705-7401 (facsimile)
                                                        andrewschapiro@quinnemanuel.com

                                                        Counsel for Movant
                                                        CHARTER COMMUNICATIONS, INC.

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................3

    A.    Plaintiffs' Reliance on Audible Magic's System ........................................3

    B.    Discussions with Audible Magic Regarding Its Code .................................4

    C.    Discussions with Audible Magic Regarding Production of Documents Related to this Litigation, and Underlying Plaintiffs' Evidence .....................7

III.  LEGAL STANDARD..............................................................................................9

IV.   ARGUMENT.........................................................................................................10

    A.    Audible Magic Should Be Compelled to Produce Its Code On a Date Certain Without Further Delay ...................................................................10

    B.    Audible Magic Should Be Compelled to Produce Documents Related to Its 2016 Work and Produce or Log its Communications with the RIAA, MarkMonitor, and Plaintiffs or Their Agents........................................................................14

V.    CONCLUSION......................................................................................................18

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

1

## **TABLE OF AUTHORITIES**

2
Page(s)

3
**Cases**

4

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
5   No. CV-12-80300-RMW, 2013 WL 1508894 (N.D. Cal. Apr. 10, 2013).............10

6
*Beinin v. Ctr. for Study of Popular Culture*,
   No. 06-cv-02298 JW (RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) .............9
7

*Canon, Inc., v. TCL Electronics Holdings, LTD.*,
8   Case No. 20-mc-80079-JCS................................................................13

9
*Compere v. Nusret Miami, LLC*,
10   2020 WL 2844888 (S.D. Fla. May 7, 2020) ........................................12

11
*De Lench v. Archie*,
   2020 WL 1644226 (D. Mass. Apr. 2, 2020) ........................................14
12

13
*Droplets, Inc. v. Yahoo!, Inc.*,
   Case No. 4:12-cv-03733-JST ECF No. 461......................................13

14
*Ewing v. Flora*,
15   No. 14CV2925 AJB NLS, 2015 WL 5177772 (S.D. Cal. Aug. 26, 2015).............14

16
*Fouad v. Milton Hershey Sch. & Tr.*,
   2020 WL 4228278 (M.D. Pa. July 23, 2020).........................................14
17

*Garrett v. City and Cty. of San Francisco*,
18   818 F.2d 1515 (9th Cir. 1987) ..........................................................10

19
*Integrated Global Concepts, Inc. v. j2 Global, Inc.*,
20   2014 WL 232211 (N.D. Cal. Jan. 21, 2014)........................................10

21
*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   No. CV14MD2542VSBSLC, 2020 WL 3271623 (S.D.N.Y. June 17, 2020) .......14
22

*La. Pac. Corp. v. Money Market 1 Inst'l Inv. Dealer*,
23   Case No. 09–cv–03529–JSW, 2012 WL 5519199 (N.D. Cal. Nov. 14, 2012) .....10

24
*Marsteller v. MD Helicopter Inc.*,
25   2015 WL 13724465 (D. Ariz. June 30, 2015) ......................................18

26
*Modern Font Applications v. Alaska Airlines*,
   2020 WL 3065157 (D. Utah June 9, 2020)..........................................13
27

*Multimedia Patent Tr. v. DirecTV, Inc.*,
28   2011 WL 13100742 (S.D. Cal. Feb. 2, 2011) ......................................18

v

*SkyHawke Technologies, LLC v. DECA Int'l Corp, et al.,*
    (C.D. Cal.)................................................................................................13

*Sony Music Ent'mt et al. v. Cox Communications, Inc. et al.,*
    Case No. 18-cv-00950-LO-JFA (E.D. Va.) ...........................................8

*Soto v. City of Concord,*
    162 F.R.D. 603 (N.D. Cal. 1995)...........................................................9

*Surfvivor Media, Inc. v. Survivor Prods.,*
    406 F.3d 625 (9th Cir. 2005) ................................................................9

*Takata v. Hartford Comprehensive Employee Ben. Serv. Co.,*
    283 F.R.D. 617 (E.D. Wash. 2012).......................................................12

*United States v. Warner,*
    Case No. 11–cv–04181–LB, 2012 WL 6087193 (N.D. Cal. Dec. 6, 2012) ..........10

*Warner Records Inc. v. Charter Communications, Inc.,*
    Case No. 19-cv-00874-RBJ-MEH (D. Colo.)................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 26 ....................................................................................9

Fed. R. Civ. P. 26(b)(1).........................................................................9

Fed. R. Civ. P. 26(b)(2).........................................................................10

Fed. R. Civ. P. 26(b)(2)(C)(i)...............................................................10

Fed. R. Civ. P. 45 ...................................................................................9

Fed. R. Civ. P. 45(a)..............................................................................9

Fed. R. Civ. P. 45(d)(1)..........................................................................10

L.R. 37-2 ..................................................................................................10

## I.   INTRODUCTION

Charter, an Internet service provider ("ISP"), has been sued for secondary copyright infringement by 66 of the world's largest record labels and music publishers (collectively, "Plaintiffs"). *Warner Records Inc. v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH (D. Colo.) (the "*Warner* litigation"). Plaintiffs allege that thousands of their works were unlawfully copied and distributed online by Charter's Internet service subscribers to third parties using BitTorrent or other peer-to-peer file sharing programs between 2013 and 2016. They propose to hold Charter contributorily and vicariously liable for its subscribers' conduct based solely on Charter's provision of Internet services to these subscribers, seeking statutory damages in excess of $1.6 billion. In order to hold Charter secondarily liable, it is black letter law that Plaintiffs must first establish the underlying direct infringements upon which they base their secondary claims. To do so, Plaintiffs rely on evidence collected and verified by two third parties—MarkMonitor, Inc. ("MarkMonitor"), and the respondent to the subpoena at issue here, Audible Magic Corporation ("Audible Magic"). The record-label Plaintiffs' trade organization, the Recording Industry Association of America ("RIAA"), engaged both third parties to identify alleged direct infringers who were suspected of copying and sharing copyrighted files on peer-to-peer networks and to send infringement notices to the ISPs, including Charter, that provided Internet services to those alleged infringers. MarkMonitor would monitor the peer-to-peer networks for potential instances of alleged infringement, while Audible Magic's software was used to create a "fingerprint" that uniquely identified a song owned by Plaintiffs and was relied upon to confirm that a song being shared on the peer-to-peer network was, in fact, one of Plaintiffs' works. Audible Magic's data was the sole basis on which Plaintiffs determined whether the files found on the peer-to-peer networks during the relevant period allegedly matched copies of the works in suit.

Given the key role Audible Magic played, Charter served a subpoena seeking, among other things, access to the source code and a copy of the executable code for Audible Magic's software in December 2019.[1] Initially Audible Magic agreed to host the code review at its counsel's offices in San Francisco beginning in late July. The business day after Charter provided Plaintiffs with

---

[1] *See* Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), Ex. 1 (Charter's Subpoena *Duces Tecum* to Audible Magic).

1  notice of the code review, however, Audible Magic abruptly reversed course and cancelled the

2  review without proposing a new date, claiming the health crisis had suddenly made the code review

3  too risky.  In an effort to address Audible Magic's concerns, Charter has offered numerous options

4  for where and how its technical experts might review Audible Magic's source code in a manner that

5  honors both Audible Magic's stated concerns with the health crisis and the sensitive and proprietary

6  nature of its code.  Specifically, Charter has proposed the use of secure and COVID-safe third-party

7  facilities for the review, or the use of specially adapted computers, servers, and networks to allow

8  secure remote viewing by Charter's experts.  Audible Magic has insisted that the only facility

9  suitable for code review is its counsel's offices in San Francisco and refuses to commit to any date

10 for the review in light of the COVID crisis.  To address the COVID-driven safety concerns, Charter

11 has alternatively offered to review the source code in a locale where the health issues are less

12 pressing, such as the New York office of Audible Magic's counsel.  Audible Magic had itself

13 initially suggested review at that location.  However, like its abrupt about face on the July inspection,

14 Audible Magic has also reversed course on the suitability of a New York code review.  As things

15 stand, Audible Magic has rejected all options except a review at its counsel's San Francisco Office,

16 and declined to commit to any date on which that might happen.

17     Meanwhile, the clock is ticking, with discovery set to close in the underlying action in

18 January 2021.  Time is of the essence, because the Audible Magic code review is the gating event

19 for additional third-party discovery, including the deposition of Audible Magic's technical witness,

20 a source code review of the MarkMonitor systems that interacted with Audible Magic, and

21 depositions of MarkMonitor's witnesses, some of whom are located outside of the United States,

22 where scheduling discovery will be even more difficult.

23     To break this logjam, Charter seeks an order compelling Audible Magic to commit to a date

24 certain before October 9, 2020, by which Audible Magic must provide Charter with access to its

25 source code and executable code.

26     Charter also seeks to compel Audible Magic to log, produce, or disclaim the existence of

27 correspondence among Audible Magic, RIAA, MarkMonitor, Plaintiffs, or their agents, related to

28 the collection of evidence of alleged copyright infringement.  Audible Magic has objected to a

2

number of Charter's requests on privilege grounds, but has declined to indicate whether anything is being withheld on that basis and has not logged any ostensibly privileged documents. Because, as is discussed more fully below, there is substantial reason to believe that responsive documents exist which have neither been produced nor logged, Charter seeks an order compelling their production or a log, or, if in fact there are no such documents, a simple affirmation that nothing has been withheld.

Charter respectfully requests that the Court grant its motion to compel and order Audible Magic to comply fully with RFPs 1-3, 8, 11, 15, 19-21 of the Subpoena.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' Reliance on Audible Magic's System

Audible Magic was responsible for



---

[2] *See* Golinveaux Decl., Ex. 2



[3] *See id.* at 24

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*



[5] Thus, Audible Magic's software was fundamental to ensuring the accuracy of the evidence that supports Plaintiffs' claims and is critical to the underlying infringement action.

**B.     Discussions with Audible Magic Regarding Its Code**

Over nine months ago, Charter issued a subpoena requesting a variety of documents and records from Audible Magic, including a review of AudibleMagic's source code and an executable version of its software.[6] Production of the non-source code material involved document review on Audible Magic's part, and a certain amount of back and forth between counsel, and Audible Magic finally completed that production after six months.  On June 13, as Audible Magic had concluded producing its paper and electronic documents, Charter contacted Audible Magic to schedule the code review, suggesting a date later that month.[7] On June 22, citing concerns with the health crisis

---

[4] *See* Golinveaux Decl., Ex. 2

[5] *See* Golinveaux Decl., Ex. 3

[6] *See* Golinveaux Decl., Ex. 4 (Audible Magic's Responses to Charter's Subpoena *Duces Tecum*, RFP Nos. 20-21)
[7] Golinveaux Decl., Ex. 5 (June 13, 2020 email from Charter to Audible Magic).

4

in San Francisco, and the need to conduct the review at its counsel's ("Crowell & Moring" or "Crowell") office, Audible Magic proposed that the review would need to take place in July.[8]

Taking Audible Magic's stated concerns at face value, Charter responded the next day, proposing to expedite the review by utilizing one of several secure and safe alternatives to Crowell's San Francisco offices as a way to allow the Audible Magic source code production to go forward without a month's delay.[9]  These proposals included: (i) production through third-party escrow facilities in the Bay Area that are widely used for these purposes, and which have continued to safely facilitate socially distanced source code reviews during the COVID-19 health crisis, and (ii) production through secure virtual (i.e., remote) means, which have also been widely and safely used for these purposes during the health crisis.[10]  Charter concluded by proposing that the parties discuss the logistics and parameters of the source code review by phone, so they could work together to find a secure and safe solution.

On June 25, Audible Magic declined these proposals, continuing to insist on a review at Crowell's offices, and declining to specify a date.[11]  Audible Magic also declined to discuss the issue on the phone.[12]

When, later that day, Charter renewed its request for a phone call to resolve the impasse, [13] Audible Magic's counsel refused, stating that they could only discuss the review on a call once they "ha[d] a better sense of the in-person inspection protocol"—even though the "in-person inspection protocol" was exactly what Charter proposed to discuss.[14]  Further, instead of considering Charter's suggested alternatives, identifying any shortcomings in those proposals, or suggesting any options of its own, Audible Magic simply clung to the position that the review could only proceed in person at Crowell's office, but declined to commit to a date certain for the review because of unspecified COVID-19 concerns.[15]

After further correspondence, Audible Magic committed to "make the [Audible Magic

---

[8] Golinveaux Decl., Ex. 6 (June 22 email from Audible Magic to Charter).
[9] Golinveaux Decl., Ex. 7 (June 23, 2020 email Charter to Audible Magic).
[10] *Id.*
[11] Golinveaux Decl., Ex. 8 (June 25, 2020 email from Audible Magic to Charter).
[12] *Id.*
[13] Golinveaux Decl., Ex. 9 (June 25, 2020 email from Charter to Audible Magic).
[14] Golinveaux Decl., Ex. 8 (June 25, 2020 email from Audible Magic to Charter).
[15] *Id.*

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

source] code available at the offices of Crowell & Moring in either New York or San Francisco, where you are located, on July 20 or anytime thereafter."[16]  On July 10, Audible Magic requested identification of any indivdiuals who would visit Crowell's offices for source code review, and Charter provided that information on July 13.  On July 16, Audible Magic asked to push the source code review because it had not received the resume of Charter's expert, or license information for software tools that Charter had requested.  Charter provided all of that information the very same day.[17]  On July 24, Charter informed Plaintiffs in the underlying *Warner v. Charter* case that the Audible Magic source code review would be proceeding.[18]

The next business day, on July 27, Audible Magic announced that the source code review it had been promising for a month would need to be indefinitely postponed because of unspecified restrictions imposed in Crowell's San Francscio office related to COVID-19.[19]  In response, Charter requested that Audible Magic again consider the alternative review options Charter had previously suggested when the source code discussion first began early in June.[20]  Charter explained that the alternative remote review options would allow all involved persons to conduct the review in a way that would protect their health and the security of the source code.[21]  Audible Magic refused to entertain any of the proposed alternatives, citing unspecified concerns about the security of the code review options, and indicating that it did not understand the urgency to complete the review.[22]  Audible Magic suggested waiting another one to two months to conduct the source code review, in the hope that the COVID-19 health crisis conditions affecting Crowell's San Francisco office would improve.  This would have pushed the review to late September or early October, 10 months after Charter served its subpoena.

Most recently, the parties finally held their long-delayed meet and confer (on August 12).  Audible Magic took the position that it would only produce its source code at Crowell's San Francisco office and only once COVID-19 health crisis restrictions were lifted.  Audible Magic

---

[16] Golinveaux Decl., Ex. 10 (June 30, 2020 email from Audible Magic to Charter).
[17] Golinveaux Decl., Ex. 11 (July 16, 2020 email from Audible Magic to Charter).
[18] Golinveaux Decl., Ex. 12 (July 24, 2020 email from Charter to Plaintiffs).
[19] Golinveaux Decl., Ex. 13 (July 27, 2020 email from Audible Magic to Charter).
[20] Golinveaux Decl., Ex. 14 (July 28, 2020 email from Charter to Audible Magic).
[21] Golinveaux Decl., Ex. 15 (August 2, 2020 email from Charter to Audible Magic).
[22] Golinveaux Decl., Ex. 16 (August 3, 2020 email from Audible Magic to Charter).

declined to provide any explanation as to why a secure third-party facility, a review at Crowell's New York office, or a secure remote review would not be acceptable, despite the fact that Charter had outlined how the source code review could be conducted, identified third-party vendors in the Bay Area who could facilitate the source code review, and was willing to conduct the review in New York as Audible Magic had previously suggested.  For example, Charter identified a third-party facility, commonly referred to as a "software escrow," that can securely store the software for purposes of review. Use of such "software escrows" are routine in the software industry.[23]  Indeed, they are often required when software licensors enter contracts with significant customers, or when due diligence is performed before the purchase of a software company.  Despite having been made aware that these facilties were available, and that their use was routine, Audible Magic was unable to explain why a software escrow would not meet the security requirements set forth in the Protective Order in the underlying litigation, to which Audible Magic had never objected or moved to amend, or why Audible Magic needed any security beyond those precautions afforded by the identified third parties.  Similarly, despite the fact that Crowell's New York office is open for business, Audible Magic could provide no explanation why it was no longer willing to host the review there.[24]

**C.     Discussions with Audible Magic Regarding Production of Documents Related to this Litigation, and Underlying Plaintiffs' Evidence**

Plaintiffs, through their agent the RIAA, engaged Audible Magic to support the process by which it sent notices to Charter during 2012-2015. ████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

---

[23]   *See, e.g.,* Golinveaux  Decl., Ex. 17 (https://www.ironmountain.com/information-management/software-escrow ("More than 90% of the Fortune 500 companies turn to Iron Mountain for software escrow protection.").
[24]  Golinveaux Decl., ¶ 32 (confirming that Crowell Moring's New York Office is open and conducting business)
[25]  The claims period is the period for which Plaintiffs claim damages, from March 2013 – May 2016.  The notices on which Charter's contributory liability are allegedly based were sent between the start of January 2012 and end of March 2015.
[26]  Golinveaux Decl., Ex. 18 ████████████

7

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Charter's subpoena seeks the production of Audible Magic's documents, including correspondence with Plaintiffs or their agents, regarding efforts to detect copyright infringement.[28] Presumably, Audible Magic possesses documents and correspondence regarding these transactions from 2016, since Audible Magic was specifically identified as a participant in that work. Indeed, there is reason to believe that Audible Magic has been acting as a consultant for Plaintiffs, or at least has worked in collaboration with Plaintiffs, in the *Warner* litigation and/or related matters. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For another, Audible Magic has voluntarily provided affidavit support to Plaintiffs in related litigation.[30] Additionally, Audible Magic appears to have coordinated its response – or, more accurately, nonresponse – to Charter's subpoena with Plaintiffs; first offering a date for the code review and then cancelling it immediately after the Plaintiffs were put on notice of the scheduled event.

Audible Magic's work product generated as part of the 2016 Project is directly relevant to the central question of the reliability of the notices sent to Charter and the likelihood that the alleged underlying infringement actually occurred. Likewise, Audible Magic's relationship with Plaintiffs goes directly to the question of whether any testimony supplied by Audible Magic witnesses is that of a true third party or a paid consultant. Nonetheless, relying on an erroneous interpretation of an order of the Special Master in the District of Colorado,[31] Audible Magic has refused to confirm whether it has searched for correspondence related to the 2016 Project or its relationship with Plaintiffs in connection with this case. Plaintiffs have also confirmed that they declined to produce a key document called the "hash report," in part, because the relevant information in that document should have been reflected in Audible Magic's production of documents from the 2016 timeframe.[32]

---

[27] *Id.*
[28] *See* Golinveaux Decl., Ex. 1 (Charter's Subpoena *Duces Tecum* to Audible Magic, RFP Nos. 1-3, 8, 11, 15, 19).
[29] *See* Golinveaux Decl., Ex. 34 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[30] *See Sony Music Ent'mt et al. v. Cox Communications, Inc. et al.*, Case No. 18-cv-00950-LO-JFA (E.D. Va.), Dkts. 352 (Ex. 2), 353 (Ex. 2), 473 (Ex. 2), 476 (Ex. 2), 538 (Ex. 2), 539 (Ex. 2).
[31] *See* Golinveaux Decl., Ex. 19 (June 9 email from Audible Magic to Charter); *see also* Ex. 20 (Special Master's Order, ECF 181 at 13-14).
[32] Golinveaux Decl. ¶ 42.

8

1   But Audible Magic has made no such production.

2       Audible Magic has also refused to confirm whether it has withheld any correspondence

3   responsive to Charter's subpoena as privileged, and has refused to provide a privilege log for any

4   withheld correspondence.[33]  Instead, Audible Magic has affirmatively stated that "we're not going

5   to answer whether there has been correspondence with plaintiffs or their counsel about the

6   subpoena," claiming as its only justification that "it is not relevant to your case."[34]

7   **III.   LEGAL STANDARD**

8       Pursuant to the Federal Rules, a party may subpoena a third party, such as Audible Magic,

9   to produce documents. *See* Fed. R. Civ. P. 45(a).  Fed. R. Civ. P. 26 allows a party to obtain

10  discovery concerning any non-privileged matter that is relevant to any party's claim or defense.

11  Fed. R. Civ. P. 26(b)(1).  "The question of relevancy should be construed liberally and with common

12  sense and discovery should be allowed unless the information sought has no conceivable bearing

13  on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  Ultimately, district

14  courts have broad discretion in determining whether evidence is relevant for discovery purposes.

15  *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *Beinin v. Ctr. for*

16  *Study of Popular Culture*, No. 06-cv-02298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16,

17  2007) (explaining that the Rule 26 relevancy standard applies equally to third-party subpoenas).

18      To determine whether a subpoena should be enforced, the Court is guided by both Rule 45,

19  which protects a subpoenaed party from "undue burden," and Rule 26, which provides that the Court

20  must limit discovery if "the discovery sought . . . can be obtained from some other source that is

21  more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed

22  discovery outweighs its likely benefit." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C)(i); *see*

23  *Integrated Global Concepts, Inc. v. j2 Global, Inc.*, 2014 WL 232211, at *2 (N.D. Cal. Jan. 21,

24  2014); *see also Am. Broad. Cos., Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894,

25  at *4 (N.D. Cal. Apr. 10, 2013) ("The burden of showing that a subpoena is unreasonable and

26  oppressive is upon the party to whom it is directed.").  The subpoenaed party carries the burden of

27  showing that requested discovery should not be provided, and also has the burden of clarifying,

28
[33] Golinveaux Decl. ¶ 33.
[34] Golinveaux Decl. ¶ 34.

9

1   explaining, or supporting its objections with competent evidence. *See La. Pac. Corp. v. Money*

2   *Market 1 Inst'l Inv. Dealer*, Case No. 09–cv–03529–JSW, 2012 WL 5519199, at *3 (N.D. Cal. Nov.

3   14, 2012); *United States v. Warner*, Case No. 11–cv–04181–LB, 2012 WL 6087193, at *3 (N.D.

4   Cal. Dec. 6, 2012).

5       Pursuant to Northern District of California Local Rule 37-2, a party moving to compel

6   discovery must "detail the basis for the party's contention that it is entitled to the requested discovery

7   and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are

8   satisfied." *See also* Fed. R. Civ. P. 26(b)(2) (requiring that when determining the appropriateness

9   of discovery requests, courts should consider whether the discovery is duplicative or overly

10  burdensome and whether the burden and expense of discovery outweighs the benefit).  The Court

11  has discretion to determine whether to grant a motion to compel. *See Garrett v. City and Cty. of*

12  *San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).

13  **IV.    ARGUMENT**

14  **A.    Audible Magic Should Be Compelled to Produce Its Code On a Date Certain
            Without Further Delay**

15

16      There is no reasonable dispute that Charter has requested, and Audible Magic has agreed to

17  produce, the Audible Magic source code and an executable copy of its software.

18  **RFP 20**: The source code for one copy of each version of Your System that was in use from
    March 2013 to May 2016 and that was used to fingerprint, identify, and/or verify the

19  Copyright Works.

20  **Response:** In addition to the forgoing general objections, Audible Magic objects to the
    request as overly broad and unduly burdensome to the extent it references the 7235 sound

21  recordings and 4247 musical compositions at issue in this case. Subject to the foregoing
    general and specific objections, Audible Magic will make available the source code for its

22  software used by MarkMonitor at undersigned counsel's office in San Francisco, subject to
    appropriate agreed terms regarding access and use of any such code, embodied in a protective

23  order or otherwise agreed to by Audible Magic.

24  **RFP 21:** One copy of executable code of each version of Your System that was in use from
    March 2013 to May 2016, as it was configured during the period of March 2013 to May2016,

25  and in executable format/form.

26  **Response**: Subject to the foregoing general objections, Audible Magic will make available
    one executable copy of its system in executable format at undersigned counsel's office in San

27  Francisco, subject to appropriate agreed terms regarding access and use of any such code,
    embodied in a protective order or otherwise agreed to by Audible Magic.

28

After agreeing to produce the code and an executable copy of its software for review in late July, Audible Magic has now unilaterally cancelled that review, and refuses to produce its code for review by any date certain, insisting on an in-person review in San Francisco and vaguely citing the COVID-19-related policies of Crowell's San Francisco office. Charter has offered three means by which the source code review can proceed in a safe and secure manner in light of the health crisis and consistent with the protective order in the underlying case. First, Charter has suggested a review at the offices of a secure Bay Area third party, Iron Mountain, whereby Audible Magic would provide the secured computer to Iron Mountain on which Charter would conduct its review. As set forth below, this guarantees that the safeguards in the *Warner v. Charter* protective order would be in place for the review. Notably, Audible Magic has never challenged or suggested revisions to the protective order. Second, Charter suggested the parties conduct a remote source code review using a tool such as OneDrive that would allow Audible Magic to retain control of the files as well as the ability to monitor access and review of the code. Charter also identified a vendor that provides these remote review services to Audible Magic's counsel. Third, Charter suggested that the review could be conducted in person at Crowell's New York office, as COVID-19-related protocols are less restrictive in New York than in San Francisco, given the substantially reduced rate of infection in the New York area at the present time.

Audible Magic has flatly refused each of Charter's suggestions, instead stating that it will only allow a review at Crowell's San Francisco location.[35] Despite fact discovery closing in the underlying action in January 2021, Audible Magic has identified no date certain by which that can happen, offering only the vague hope that COVID-related concerns will abate at some point in the future sufficiently to persuade Crowell's management to allow the review to proceed. Though Audible Magic has refused to consider Charter's suggestions, it has not articulated any shortcomings in the security or the safety of the three options presented by Charter. Nor has Audible Magic proposed any alternative methods by which a review can be conducted on any date certain. Audible Magic's refusal to produce its source code for review on a date certain is improper.

[35] Originally, Audible Magic offered both its New York and San Francisco offices as locations for the source code review. After months of negotiating and upon being informed that a review could not proceed in San Francisco, Charter asked if New York could be reconsidered. Audible Magic refused.

11

1    Audible Magic does not (and cannot) deny that source and executable code have been

2    properly requested by Charter. Nor can it deny that the protective order in the underlying litigation

3    specifically addresses source code reviews, and sufficiently protects Audible Magic's information

4    from improper disclosure.[36] *See Takata v. Hartford Comprehensive Employee Ben. Serv. Co.*, 283

5    F.R.D. 617, 621 (E.D. Wash. 2012) ("Disclosure to the public and competitors is a type of harm

6    that the protective orders are meant to guard against"). Indeed, Audible Magic has not raised

7    concerns with, or offered changes to, the protective order, and it has not denied that the options

8    available would permit full compliance with the protective order.

9    As for concerns about the current health crisis, while Audible Magic "estimates" it will take

10   one to two months for that risk to abate, such optimism is, as we have all learned, speculative at

11   best. There are, however, third-party facilities like Iron Mountain that are prepared to conduct

12   source code reviews *today* while ensuring that proper protocols to address the health crisis are in

13   place.[37] Likewise, a review in Crowell's New York Office, where the COVID pandemic is presently

14   much more under control than in San Francisco, is a perfectly reasonable option. New York allowed

15   offices to open in Phase II of reopening on June 22, 2020, and has since progressed to Phase IV of

16   reopening.[38] The health crisis should not be used as an excuse to extend discovery indefinitely—

17   particularly when there are readily available options to proceed. *See Compere v. Nusret Miami,*

18   *LLC*, 2020 WL 2844888, at *2 (S.D. Fla. May 7, 2020) ("[T]he Court will not allow the docket to

19   continue indefinitely until life gets back to the old normal.").[39] And because source code production

20   is an essential part of the modern discovery process, courts have consistently found that the health

21   crisis provides no basis to delay the production of source code given that safe and secure means are

22   available to facilitate those productions. *See Droplets, Inc. v. Yahoo!, Inc.*, Case No. 4:12-cv-03733-

23

24   [36] *See* Golinveaux Decl., Ex. 21 (*Warner* litigation Protective Order).
     [37] *See* Golinveaux Decl., Ex. 22 (Iron Mountain Balanced Protective Orders that Work); *see also*

25   Ex. 23 (Iron Mountain Custom Discovery Escrow Services Agreement).
     [38] *See* Golinveaux Decl., Ex. 24 (June 19, 2020 Announcement Regarding Phase II); Ex. 25 (Phase

26   II: Reopening New York: Office-Based Work); Ex. 26 (Phase IV).
     [39] *See also Modern Font Applications v. Alaska Airlines*, 2020 WL 3065157 (D. Utah June 9, 2020)

27   (acknowledging that the COVID-19 pandemic may cause case delays but giving plaintiffs only 14
     days to cure their production); Golinveaux Decl., Ex. 32 (*Canon, Inc., v. TCL Electronics Holdings,*

28   *LTD.*, Case No. 20-mc-80079-JCS, Order Denying Motion to Modify/and or Quash (DKT 1)) ("At
     a time when the country and the world is facing a health crisis, the court expects counsel and the
     parties to make extra efforts to resolve discovery issues amicably").

12

NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

1   JST ECF No. 461 at 2-3, Order) (ordering defendant to produce its source code within 30 days of

2   the order and noting, "If the COVID-19 pandemic and resulting shelter-in-place orders continue,

3   the parties shall meet and confer regarding whether a secure means exists to produce the source

4   code remotely or if precautions may be taken to enable Droplets to safely review the source code

5   on a secure computer"); *see also* Golinveaux Decl. Ex. 27 (*SkyHawke Technologies, LLC v. DECA*

6   *Int'l Corp, et al.* (C.D. Cal.) Order) (granting a proposal to conduct source code review in

7   defendant's counsel's office whereupon defendant had previously rejected each of plaintiff's

8   proposals "as not providing adequate security and safeguards" yet not providing "workable

9   solutions other than suggesting that plaintiff wait to view the source code until a later time when

10  [COVID] restrictions are lifted."); Golinveaux Decl. Ex. 28 (July 9, 2020, *IP Litigation Timing*

11  *Considerations in Light of COVID-19*) (noting that the International Trade Commission continues

12  source code reviews and has supplemented a protective order to permit remote source code review);

13  Golinveaux Decl., Ex. 29 (Eastern District of Texas Standing Order) (specifying procedures for

14  source code review by which "The Court expects the parties to work collaboratively to identify and

15  implement temporary procedures that will enable the receiving party's authorized personnel (e.g.,

16  outside counsel and experts) to review source code during the pandemic without the need for travel

17  or inperson code review.  The Court invites the parties to submit creative proposals that accomplish

18  the goal of allowing code review to efficiently and effectively continue during the COVID-19 crisis,

19  while protecting the security of the source code...").[40]

20          Thus, courts have ordered discovery to continue during the pandemic where there are means

21  other than the traditional ones by which it can be conducted.  *See De Lench v. Archie*, 2020 WL

22  1644226 (D. Mass. Apr. 2, 2020) ("In light of the current coronavirus pandemic, the Court

23  encourages the parties to avail themselves of video technology for meetings, depositions, and other

24  communication and interactions arising in the discovery process."); *see also Ewing v. Flora*, No.

25  14CV2925 AJB NLS, 2015 WL 5177772, at *5 (S.D. Cal. Aug. 26, 2015) (finding that "both

26  parties' stated concerns of safety and efficiency can be addressed through less costly means" than

27

28  [40] *See also* Ex. 28 (July 9, 2020, *IP Litigation Timing Considerations in Light of COVID-19*) (noting
     that the ITC continues source code reviews and has supplemented a protective order to permit
     remote source code review).

13

1   appointment of a discovery master, and suggesting that the plaintiff take the defendant's deposition

2   via videoconference or in the courthouse with a Court Security Officer present); *see also In re*

3   *Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. CV14MD2542VSBSLC, 2020

4   WL 3271623, at *1 (S.D.N.Y. June 17, 2020) (ordering third party's deposition to proceed remotely

5   notwithstanding the global pandemic because of his unique knowledge related to the case); *see also*

6   *Fouad v. Milton Hershey Sch. & Tr.*, 2020 WL 4228278, at *2 (M.D. Pa. July 23, 2020) ("While

7   we recognize, as many courts have, that remote depositions are perhaps not ideal and may require

8   more patience and time from those involved, they are an appropriate by-product of this new reality

9   in which we find ourselves").  Given the multiple COVID safe options by which Audible Magic

10  can safely produce its code and the security protections afforded by the protective order, Audible

11  Magic should be compelled to pick one, and to produce its code in a timely manner on or before

12  October 9.

13  During the meet and confer process, Audible Magic insisted that there is no immediate need

14  for its source code production, because six months of fact discovery remain in the underlying

15  litigation. Aside from the fact that it is closer to five months than six, this misses the point.  For one

16  thing, if all parties and third parties adopt Audible Magic's logic, no discovery will take place until

17  the last weeks of discovery, which defeats the purpose of having an extended discovery period.

18  Moreover, Audible Magic's source code production is fundamental to Charter's defense, and is a

19  necessary predicate to Charter's ability to take other key discovery; most notably, the 30(b)(6)

20  deposition of Audible Magic's witness, and the technical discovery that will need to be taken from

21  MarkMonitor, whose system interacts with Audible Magic's and which, therefore, cannot be fully

22  understood until Charter's experts are able to review the Audible Magic source code and executable

23  code.  This is exactly why Charter served its document subpoena on Audible Magic *in December*

24  *2019*.  Nine months have passed, and Audible Magic cannot legitimately claim that it has not

25  delayed, or that its delay has not prejudiced Charter.

26  **B.    Audible Magic Should Be Compelled to Produce or Log its Documents from
            2016, Including Communications with RIAA, MarkMonitor, and Plaintiffs or**

27  **Their Agents**

28  ████████████████████████████████████████████

█████████████████████████████████████████████████████

The Court handling the *Warner* litigation has recognized the critical importance of documents related to the 2016 Project, and has ordered Plaintiffs, whose agent (RIAA) contracted with Audible Magic, to produce the documents they have related to the project. *See Warner Bros. Records Inc., et al. v. Charter Communications, Inc.*, C.A. 19-cv-00874-RBJ-MEH, ECF 230 at 26-28.[42]  Given the central nature of Audible Magic's "identification and verification technology," also known as "fingerprinting," and because Audible Magic is highly likely to have relevant information in its possession, Charter subpoenaed Audible Magic to obtain it documents and correspondence. Audible Magic agreed to produce the requested documentation save to "the extent [Charter] seeks documents and communications that are protected from discovery by the attorney-client privilege, the attorney work-product immunity, or any other applicable privilege or immunity."

**RFP 1:** All Documents and Communications concerning any agreement between You and any Plaintiff(s).

**Response:** In addition to the foregoing general objections, Audible Magic objects to this request to the extent it seeks documents and communications that are protected from discovery by the attorney-client privilege, the attorney work-product immunity, or any other applicable privilege or immunity. Audible Magic further objects to this request as seeking documents that are already in Charter's possession, custody, or control, or otherwise available to Charter from the Plaintiffs, and on the grounds that it subjects Audible Magic to unreasonable burden and undue expense to the extent it requests "all documents and communications," without limitation. Subject to the foregoing general and specific objections, Audible Magic will produce responsive, non-privileged documents to the extent they exist in Audible Magic's possession, custody, or control and can be located through a reasonable search.

**RFP 2:** All Documents and Communications concerning any agreement between You and the RIAA.

**Response:** In addition to the foregoing general objections, Audible Magic objects to this request to the extent it seeks documents and communications that are protected from discovery by the attorney-client privilege, the attorney work-product immunity, or any other applicable privilege or immunity. Audible Magic further objects to this request as seeking documents that are already in Charter's possession, custody, or control, or otherwise available to Charter from the Plaintiff, and on the grounds that it subjects Audible Magic to unreasonable burden and undue expense to the extent it requests "all documents and communications," without limitation. Subject to the foregoing general and specific objections, Audible Magic will produce responsive, non-privileged documents to the extent they exist in Audible Magic's possession, custody, or control and can be located through a

---

[41] *See* Golinveaux Decl. Ex. 18 ████████████
[42] See Golinveaux Decl., Ex. 35.

15

reasonable search.

**RFP 3**: All Documents and Communications concerning any agreement between You and MarkMonitor.

**Response**: In addition to the foregoing general objections, Audible Magic objects to this request to the extent it seeks documents and communications that are protected from discovery by the attorney-client privilege, the attorney work-product immunity, or any other applicable privilege or immunity. Audible Magic further objects to this request on the grounds that it subjects Audible Magic to unreasonable burden and undue expense to the extent it requests "all documents and communications," without limitation. Subject to the foregoing general and specific objections, Audible Magic will produce responsive, non-privileged documents to the extent they exist in Audible Magic's possession, custody, or control and can be located through a reasonable search.

**RFP 8**: All Communications between You and the RIAA concerning the functionality or operation of Your System, including any promotional or marketing materials, manuals, data sheets, or any other technical materials provided to MarkMonitor. Response: In addition to the foregoing general objections, Audible Magic objects to this request as seeking documents that are already in Charter's possession, custody, or control, or otherwise available to Charter from the Plaintiffs, and on the grounds that it subjects Audible Magic to unreasonable burden and undue expense to the extent it requests "all communications," without limitation. Subject to the foregoing general and specific objections, Audible Magic will produce responsive, non-privileged documents to the extent they exist in Audible Magic's possession, custody, or control and can be located through a reasonable search.

**RFP 11**: All Documents provided by the RIAA, Plaintiffs, MarkMonitor, or any other third party to You concerning the fingerprinting, identifying, or verifying alleged instances of copyright infringement of the Copyright Works, including a copy of any database containing reference copies of Copyright Works or digital fingerprints of Copyright Works and any communications between you and RIAA, Plaintiffs, MarkMonitor, or any other third party concerning any such database.

**Response**: In addition to the foregoing general objections, Audible Magic objects to this request as seeking documents that are already in Charter's possession, custody, or control, or otherwise available to Charter from the Plaintiffs, and on the grounds that it subjects Audible Magic to unreasonable burden and undue expense to the extent it references "all documents" without limitation. Audible Magic further objects to the term "third party" as vague and ambiguous. Subject to the foregoing general and specific objections, Audible Magic will produce responsive, non-privileged documents to the extent they exist in Audible Magic's possession, custody, or control and can be located through a reasonable search.

**RFP 15**: Any databases, indices, or other repositories of information concerning the results of any fingerprinting, identification, and/or verification conducted by Your System of any files or portions or derivatives thereof (including hashes, digital fingerprints, or checksums of file or portions of files) submitted to you by MarkMonitor on behalf of RIAA or any of the Plaintiffs, including but not limited to "transaction logs" memorializing the results of such results.

**Response**: In addition to the foregoing general objections, Audible Magic objects to this request as seeking documents that are already in Charter's possession, custody, or control, or otherwise available to Charter from the Plaintiffs, and on the grounds that it subjects Audible

16

Magic to unreasonable burden and undue expense to the extent it calls for production of Audible Magic's reference database. Subject to the foregoing general and specific objections, Audible Magic will produce responsive, non-privileged documents to the extent they exist in Audible Magic's possession, custody, or control and can be located through a reasonable search.

**RFP 19**: All Documents and Communications, including data, compiled or generated by You concerning Your System's fingerprinting, identification, or verification of the files or derivatives thereof sent to you by MarkMonitor on behalf of RIAA or any of the Plaintiffs.

**Response:** In addition to the foregoing general objections, Audible Magic objects to this request as seeking documents that are already in Charter's possession, custody, or control, or otherwise available to Charter from the Plaintiffs, and on the grounds that it subjects Audible Magic to unreasonable burden and undue expense to the extent it calls for production of "all documents and communications." Audible Magic further objects to this request as duplicative of Request Nos. 15 and 18. Subject to the foregoing general and specific objections, Audible Magic will produce responsive, non-privileged documents to the extent they exist in Audible Magic's possession, custody, or control and can be located through a reasonable search.

Despite agreeing to produce the requested documents, Audible Magic has not produced any documents or correspondence, included any documents related to the 2016 Project on its privilege log, or even been willing to state whether any documents related to the 2016 Project exist. Charter is entitled to a clear answer as to the existence of any responsive documents. And Plaintiffs are withholding relevant documents (the "hash report"), in part, on the basis that the relevant information in those documents should have been reflected in Audible Magic's production.[43]

As Charter explained to Audible Magic during the meet and confer process, there must be some evidence of the fact Audible Magic performed work on behalf of Plaintiffs in 2016, such as communications regarding completion of this work with the RIAA, MarkMonitor, Plaintiffs, or Plaintiffs' agents. Yet, Charter has received nothing. In light of Audible Magic's deficient production, it is critical for Audible Magic to clarify why it has been unable or unwilling to produce or log correspondence related to the 2016 Project. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ If Audible Magic's technology was used to

---

[43] Golinveaux Decl. ¶ 42
[44] See Golinveaux Decl., Ex. 30 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[45] *See* Golinveaux Decl., Ex. 31 (May 20, 2020, Audible Magic to Charter); Ex. 20 ▮▮▮▮▮▮▮

17

"identify" and "verify" the downloaded files, as documents produced by other parties indicate, that work should have been reflected in correspondence between the collaborating parties and should be produced. Or, if a privilege is asserted, it should be logged. If there are no such documents to produce or log, Charter is also entitled to that information. Likewise, correspondence that reflects the nature of the relationship between Audible Magic and Plaintiffs in connection with the *Warner* and related litigation should be produced or logged. And if it no longer exists, that should be explained. At a minimum, the indisputable coordination between Audible Magic and Plaintiffs from the relevant period needs to be accounted for. Courts have not hesitated to compel production of relevant non-privileged communications between a party's counsel and non-party witnesses. *See Marsteller v. MD Helicopter Inc.*, 2015 WL 13724465, at *2 (D. Ariz. June 30, 2015) (denying plaintiffs' motion to quash defendant's subpoena seeking correspondence between Plaintiffs' counsel and non-party, noting that plaintiffs had not shown that the communications were protected by common interest privilege); *see also Multimedia Patent Tr. v. DirecTV, Inc.*, 2011 WL 13100742, at *2 (S.D. Cal. Feb. 2, 2011) (granting plaintiff's subpoena seeking correspondence between defendant or its counsel and third parties concerning any subpoena served in the case or the patents-in-suit, finding that the requests were "sufficiently relevant" to the litigation and "[t]he production or identification of responsive communications may implicate communications subject to a common interest privilege but that does not excuse them from being identified on a privilege log"). Given that Audible Magic has never claimed any privilege or immunity over its 2016 communications with the RIAA, MarkMonitor, or Plaintiffs and their agents, Audible Magic should be compelled to produce this correspondence. And to the extent Audible Magic attempts to take the position that such communications have been withheld because they are privileged, the communications should be included on a privilege log. Simply failing to search for these documents and correspondence, or pretending those materials are somehow irrelevant, is improper and should not be permitted.

## V.     CONCLUSION

Based on the foregoing, Charter respectfully requests that the Court grant its motion to

18

1   compel and order Audible Magic to comply fully with RFPs 1-3, 8, 11, 15, 19-21 of the Subpoena

2   no later than October 9, 2020.

3

4   Dated: September 18, 2020                  WINSTON & STRAWN LLP

5                                    By:    /s/ Jennifer A. Golinveaux
                                            Jennifer A. Golinveaux (SBN: 203056)
6                                           Winston & Strawn LLP
                                            101 California Street, 35th Floor
7                                           San Francisco, CA  94111
                                            Tel: (415) 591-1000
8                                           Fax: (415) 591-1400
                                            Email: JGolinveaux@winston.com
9
                                            Krishnan Padmanabhan (SBN: 254220)
10                                          Winston & Strawn LLP
                                            200 Park Avenue
11                                          New York, NY  10166
                                            Tel: (212) 294-6700
12                                          Fax: (212) 294-4700
                                            Email: KPadmanabhan@winston.com
13
                                            Charles K. Verhoeven
14                                          David Eiseman
                                            Quinn Emanuel Urquhart & Sullivan LLP
15                                          50 California Street, 22nd Floor
                                            San Francisco, CA 94111
16                                          (415) 875-6600 (telephone)
                                            (415) 875-6700 (facsimile)
17                                          E-mail: charlesverhoeven@quinnemanuel.com
                                            E-mail: davideiseman@quinnemanuel.com
18
                                            Andrew H. Schapiro
19                                          Quinn Emanuel Urquhart & Sullivan LLP
                                            191 N. Wacker Drive, Suite 2700
20                                          Chicago, IL 60606
                                            (312) 705-7400 (telephone)
21                                          (312) 705-7401 (facsimile)
                                            andrewschapiro@quinnemanuel.com
22
                                            Counsel for Movant
23                                          CHARTER COMMUNICATIONS, INC.

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that I have made service of the foregoing NOTICE OF MOTION AND

3    MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM* AND PROPOSED

4    ORDER by U.S. Mail and email on September 18, 2020, addressed to:

5
    Josh Rychlinski
6    JRychlinski@crowell.com
    Crowell & Moring LLP | www.crowell.com
7    1001 Pennsylvania Avenue NW
    Washington, DC 20004
8    *Counsel for Respondent Audible Magic Corp.*

9
    Jeffrey M Gould
10    jeff@oandzlaw.com
    Oppenheim + Zebrak, LLP
11    4530 Wisconsin Avenue, NW, 5th Floor
    Washington, DC 20016
12    *Counsel for Plaintiffs in the Warner litigation*

13
                    */s/ Krishnan Padmanabhan*
14                    Krishnan Padmanabhan

15

16

17

18

19

20

21

22

23

24

25

26

27

28