**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

WARNER RECORDS INC., *et al.*,

            Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

            Defendant.

**Case No. 19-cv-00874-RBJ**

**PLAINTIFFS' RESPONSE TO CHARTER'S OBJECTIONS TO MAGISTRATE JUDGE
HEGARTY'S ORDER DENYING CHARTER'S MOTION TO COMPEL**

## I.    <u>INTRODUCTION</u>

Magistrate Judge Hegarty's reversal of a discovery ruling by the Special Master concerning two of Charter's interrogatories should be upheld. The contested interrogatories require Plaintiffs to match every work in suit to *every* infringement notice that pertains to it. Magistrate Judge Hegarty correctly concluded that Charter failed to justify compelling Plaintiffs to conduct that time-consuming, detailed analysis. As he recognized, Charter can perform the analysis it demands from Plaintiffs, to develop factual information that neither party possesses, and it has the resources to do so. Plaintiffs are not obliged to build Charter's case for it, and Charter has failed to show that Magistrate Judge Hegarty's ruling was clearly erroneous.

Charter nevertheless contends that, in reversing the Special Master's order and denying Charter's motion to compel, Magistrate Judge Hegarty "relied exclusively on a misapprehension of the record." Charter further contends this Court should defer to the Special Master's findings that "(1) the information Charter requests is foundational to Plaintiffs' claims, and (2) it would

be substantially less burdensome for Plaintiffs to produce this information than it would be for Charter to attempt to decipher it."  But Charter's arguments are fundamentally flawed.

Plaintiffs are the major record companies and music publishers in the United States and internationally.  Charter is one of the largest Internet service providers in the country, marketing and selling high-speed Internet services to some 29 million consumers nationwide.  From 2012 through 2016, Plaintiffs sent Charter over 700,000 infringement notices detailing specific instances of specific Charter subscribers using Charter's network to infringe Plaintiffs' copyrighted music.  The notices gave Charter: (i) the identities of its infringing subscribers, referred to by their unique Internet Protocol (or "IP") addresses; (ii) the date and time the infringing activity was detected; (iii) the infringing file being distributed by the Charter subscriber, referred to by its unique cryptographic hash value; and (iv) and a representative sample work infringed.  Even after Charter became aware of *particular customers* engaging in *specific, repeated acts* of infringement, Charter did nothing to curb the infringement and instead continued to provide those customers with the Internet service they continued to use to infringe.  Given the massive infringing activity, there are over 11,000 works in suit.

Plaintiffs long ago produced in discovery the notice data at issue.  Plaintiffs also produced a large spreadsheet that correlates each work in suit to the infringing file identified in the notices, referred to by its cryptographic hash value.  With these items, Charter can identify all the works in suit referenced in each infringement notice, as well as each infringement notice that corresponds to each work in suit.  Because of the number of notices and number of works, the data correlation is complex and requires expert analysis.  Notwithstanding this, Charter served two interrogatories requesting that Plaintiffs conduct the analysis for Charter and produce the results in fact discovery to build Charter's defense.  The Special Master ordered Plaintiffs to

answer the interrogatories, and Magistrate Judge Hegarty reversed.  There are a several reasons
to affirm Magistrate Judge Hegarty's ruling and deny Charter's motion.

As a threshold matter, Charter presents an overly narrow, formalistic view of the basis for
Magistrate Judge Hegarty's decision.  Charter contends the decision rests solely on the
Magistrate Judge's misapprehension of the record, but that is not accurate, as the September 9,
2020 hearing transcript makes clear.  Charter focuses this Court on one excerpt from the hearing,
while ignoring the rest of the colloquy with Magistrate Judge Hegarty, which sets forth a fuller
explanation.

More fundamentally, this Court may affirm Magistrate Judge Hegarty's ruling on any
ground supported by the record—and here there are many.  *First*, Charter proceeds based on a
false legal predicate by focusing entirely on the work infringed, rather than on the specific
infringer.  That same mistaken view of copyright law undergirds the Special Master's overturned
ruling.  Contrary to the Special Master's finding, the information Charter seeks is not
information Plaintiffs need to develop to prove their claims, and there is no reason to match each
work in suit to *every* notice that pertains to it.  The relevant legal inquiry, as Charter's own cases
demonstrate, is whether Charter had specific enough knowledge, as opposed to more than mere
general knowledge that infringement "may be" happening somewhere.  Charter obtained that
specific knowledge by dint of notices repeatedly identifying *specific Charter subscribers* using
its network to infringe, on a specific date and time, referring to the infringing file and a
representative sample work.  The reason for requiring specific knowledge, as opposed to general
knowledge, is so that an ISP has enough information to address the ongoing infringing activity—
that is, to do something about the *infringer*.  Accordingly, it is not necessary to link each work in
suit to all the notices that pertain to it.  What matters is that each work in suit was infringed by a

particular subscriber *after* Plaintiffs' agent sent multiple notices informing Charter that the subscriber was using Charter's network to infringe.  Plaintiffs' expert will provide *that* analysis on the timeline set for expert reports.

*Second*, even if it would be worthwhile to develop the information that Charter seeks (and it is not), Charter is in substantially the same position as Plaintiffs to do the requested analysis.  Plaintiffs have not conducted the analysis required to develop the information called for by the interrogatories and the Special Master's overturned discovery order.  However, Plaintiffs have produced in discovery the documents from which one would conduct the analysis, and thus the records needed to conduct the analysis are equally available to Charter.  Plaintiffs even laid out, in writing, how to use those documents to develop the requested information.  This more than satisfies Federal Rule of Civil Procedure 33(d), which allows a party to produce business records in lieu of responding to an interrogatory if the burden of ascertaining the answer will be substantially the same for either party.

For any and all of these reasons, Magistrate Judge Hegarty's order should be affirmed.

## II.  <u>BACKGROUND</u>

Charter's Interrogatory 15 to the Music Publisher Plaintiffs ("MPP Interrogatory 15") requested: "For each music composition listed on Exhibit B (including any amendments to same) to Plaintiffs' Complaint, identify each RIAA Notice that references the allegedly infringed file corresponding to that music composition."  ECF 248-2 at 11.  Charter's Interrogatory 14 to the Record Company Plaintiffs ("RCP Interrogatory 14") requested: "For each sound recording listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint, identify each RIAA Notice that references the allegedly infringed file corresponding to that sound recording." ECF 248-3 at 9.

These two interrogatories, among other issues, were addressed in Charter's May 8 motion to compel (ECF 248-5), Plaintiffs' May 13 opposition (Ex. A), and a May 15 hearing with the Special Master (ECF 248-6).  Though the hearing before the Special Master was lengthy, the portion that concerned these interrogatories was not, and the Special Master requested further briefing.  In a letter brief submitted on May 20, 2020, Plaintiffs walked through the process, in detail, for linking notices to the works-in-suit.  Ex. B (May 20, 2020 Letter from M. Oppenheim to the Special Master).  Plaintiffs explained how Charter can obtain the information it seeks using the documents Plaintiffs produced.  All this was familiar ground for Charter's counsel, as that same counsel represents the defendant ISP Cox Communications in the *Sony v. Cox* case and dealt with similar issues through expert discovery and trial in that matter.

On May 29, 2020, the Special Master granted Charter's motion to compel as to these two interrogatories.  ECF 181 at 23–24.  The Special Master relied heavily on Charter's (incorrect) assumption "that Plaintiffs have already completed this analysis" to link each work in suit to all the notices that pertain to it.  The order indicated that Plaintiffs' document production did not suffice in lieu of written answers because "Charter has demonstrated that the Plaintiffs' burden of producing the information is less than Charter's."  *Id*. at 24.  Contrary to Charter's representations to this Court (Obj. at 5), the Special Master did *not* find either that "Charter's arguments with regard to this data are compelling" or that "Charter cannot discover this information merely by analyzing the documents that Plaintiffs have already produced."  Those statements from the Special Master concerned *different interrogatories* than those presently before this Court and relate to a *different issue*.  ECF 181 at 22–25 (Sections H–I).

On June 2, 2020, Plaintiffs sought clarification of the timing and process through which the Special Master expected Plaintiffs to provide the ordered information.  Ex. C (June 2, 2020

Letter from M. Oppenheim to Special Master).  Plaintiffs explained that contrary to Charter's

assertions, Plaintiffs have not conducted the analysis that Charter argued they performed in order

to file suit.  *Id.* at 1.  For each work in suit, there could be 100 or 1,000 or 10,000 (or some other

number of) corresponding notices, but Plaintiffs do not know how many.  *Id.*  In preparing their

case, Plaintiffs made a binary "yes" or "no" determination whether each work in suit was

contained within an infringing file distributed by certain Charter subscribers and identified in at

least one notice sent to Charter.  *Id.*  Plaintiffs distinguished that from the Special Master's

ruling, which required Plaintiffs, on a work-by-work basis, to identify *each* of more than 700,000

notices that correspond to *each* of more than 11,000 works in suit.  *Id.*

Thereafter, the Special Master issued an order on July 6, 2020, which, *inter alia*, clarified

her ruling on these interrogatories.  ECF 190 at 9–11.  The Special Master explained that

"Plaintiffs have been ordered to identify *each* of the notices that corresponds to *each* of the

works in suit."  *Id.* at 10.  The Special Master referred to the information sought as "basic factual

information that will need to be set forth in order for Plaintiffs to establish liability."[1]  *Id.*  The

Special Master reiterated that Plaintiffs could not provide documents in lieu of answering

because, as set forth the Special Master's May 29 Order, Charter has demonstrated that the

Plaintiffs' burden of producing the requested information is less than Charter's.[2]  *Id.* at 11.

Finally, the Special Master rejected Plaintiffs' argument that the information sought required

expert analysis.  Relying on a single example set forth in Plaintiffs' May 20 submission, the

Special Master concluded that because Plaintiffs were able to perform the analysis for one work,

---

[1] The Special Master's order did not cite any legal authority in support of that conclusion.  Nor did the parties provide briefing on what copyright law requires for Plaintiffs to establish liability.

[2]  Charter's submissions to the Special Master *never* addressed the parties' respective burdens in analyzing the documents to obtain the information sought by the two contested interrogatories.

as part of their May 20 letter, they could likewise do so for the other over 11,000 works in suit, without the aid of expert analysis.  *Id.* at 10–11.

On July 13, 2020, Plaintiffs objected to certain aspects of the Special Master's May 29 and July 6 orders.  ECF 199 at 7–12; ECF 190 at 9–11.  Magistrate Judge Hegarty held a hearing on September 9, 2020, wherein he reversed the Special Master's ruling on these interrogatories following lengthy discussion.

### III.     <u>LEGAL STANDARD</u>

#### A.     **This Court's Review of Charter's Objections.**

Under Federal Rule of Civil Procedure 72, a district court reviewing a magistrate judge's ruling on a non-dispositive issue must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1).  "Under the 'clearly erroneous' standard, the Court must affirm unless the Court has 'a definite and firm conviction' that the Magistrate Judge 'made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"  *7th Floor, LLC v. Evanston Ins. Co.*, No. 18-cv-02222, 2020 WL 4582716, at *7 (D. Colo. Aug. 8, 2020).  This standard is "significantly deferential."  *Clarendon Nat'l Ins. Co. v. Glickauf*, No. 18-cv-02549-CMA-NYW, 2019 WL 7168657, at *2 (D. Colo. Dec. 23, 2019).  A district court may affirm a magistrate judge on any ground supported by the record.  *O'Mara v. Gov't Emps. Ins. Co.*, No. 09-CV-229-GKF-FHM, 2010 WL 11520678, at *1 (N.D. Okla. May 4, 2010); *see also Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018).

#### B.     **Magistrate Judge Hegarty's Review of the Special Master.**

The Order Appointing Special Master provides that the Court will review rulings on non-dispositive rulings (other than findings or fact or conclusions of law) for abuse of discretion,

ECF 143 ¶ 6, but "decide de novo all objections to findings of fact or conclusions of law made or recommended by the Master."  ECF 143 ¶ 8; *accord* Fed. R. Civ P. 53(f)(3).  A Special Master's discovery ruling constitutes an abuse of discretion when it is not supported by facts in the record or applicable law.  *See, e.g.*, *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (special master abused his discretion when, after finding a document irrelevant, he ordered its production).  The "subordinate role of the master means that the trial court's review for abuse of discretion may be more searching than the review that an appellate court makes of a trial court." Fed. R. Civ. P. 53, Advisory Committee Notes, 2003 Amendment, Note to Subdivision (g).

## IV.   ARGUMENT

### A.  Magistrate Judge Hegarty's Ruling Was Not Clearly Erroneous and Charter Too Narrowly Defines The Basis For His Ruling.

Charter contends that Magistrate Judge Hegarty's ruling was clearly erroneous because his sole basis for reversing was his belief that the Special Master incorrectly found that Plaintiffs already conducted the analysis called for by the interrogatories.  Charter is wrong.

It is true that Magistrate Judge Hegarty indicated that "to the extent the Special Master, Ms. Rodriguez, based her ruling on the fact that this information already exists and I accept plaintiffs' counsel representation that it doesn't, then I find that that's reversible."  *See* ECF 243 (Sept. 9, 2020 Hearing Tr., attached as Ex. D) at 171:13–17.  However, Charter leaps to a conclusion that Magistrate Judge Hegarty misapprehended the record; he clearly did not.  In fact, Magistrate Judge Hegarty's statement above reflects exactly what *Charter* represented to him:

> THE COURT: But didn't you tell me you do have the means do this as well as they have?
>
> MR. SCHAPIRO (Charter counsel): I think we can't deny that, right?
>
> MS. RANAHAN (Charter counsel): I think we could ultimately do it, but again, consistent with Rule 11, we expected that they would have -- to able to put them in

the case, they would have found, well, this noticed covered it at some point, *and that's what the Special Master understood too*.

Ex. D at 147:7–14 (emphasis added).

Moreover, Charter ignores the lengthy discussion that undergirds and supports his ruling.

The following statements from Magistrate Judge Hegarty inform the basis for that ruling:

> Well, I know, but I'm still trying to understand, as a general matter in my experience as a lawyer and as a judge, it's one thing to ask a party for something they have. It's a very different thing to ask a party to (inaudible) up work and give it to you. Those are -- rarely if ever have I seen the latter successful.

Ex. D at 149:24–150:4.

> Well, so here is what I would understand about both of you.  You have equal access to resources.  Often in lawsuits we have a plaintiff who is a person, there is no money and an attorney on a contingent fee and a defendant that's a Fortune 50 company, okay.  That's disparate.  I don't see disparency here, okay.  I see an equal ability to find resources to do this kind of work, and you're asking me just to say who has to do it.  Why would I make them [Plaintiffs] do that if they haven't done it yet?

*Id.* at 156:11–19.

> But you can -- you can without them already.  You have what they have.  Again, I want everybody to have the same base information and to do with it whatever they think they can.  That's the way it should go.  Don't you agree?

*Id.* at 163:2–6.

In other words, Magistrate Judge Hegarty rightly concluded that Charter had equal access and means to conduct the requested analysis and ruled accordingly.  *See also* Ex. D at 167:7–20.

Indeed, **Charter itself agreed it could do the same analysis.**  Thus, Charter has failed to establish that Magistrate Judge Hegarty made a mistaken assumption about the record, or that any such mistaken assumption formed the "sole rationale" for his decision to reverse.

**B.  Magistrate Judge Hegarty Correctly Reversed.**

**1.  The Special Master's Decision is Contrary to Law.**

Charter cannot defend its argument, adopted in the Special Master's finding, that the interrogatories seek "basic factual information that will need to be set forth in order for Plaintiffs to establish liability."  (Obj. at 8.)  Copyright law requires no such thing.  Contrary to Charter's assertion, proving direct infringement and Charter's contributory liability does not require linking each work in suit to *every* infringement notice that pertains to it.  Here, Plaintiffs will demonstrate that a Charter subscriber downloaded or distributed each work in suit *at least once* after Charter was on notice of that subscriber's repeated infringements.

In an analogous ISP liability case, the Fourth Circuit held that the knowledge standard for contributory infringement "requires a defendant to have specific enough knowledge of infringement that the defendant could *do* something about it."  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 311–12 (4th Cir. 2018) (emphasis in original).  That "specific enough" knowledge means "knowledge that infringement is substantially certain to result from [the ISP's] continued provision of Internet access to *particular subscribers*."  *Id.* at 311 (emphasis added).  The Fourth Circuit explained that a defendant's "generalized knowledge" that "some number of its subscribers were infringing" is not enough.  *Id.*; *see also Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, No. C 07-03952 JW, 2010 WL 5598337, at *5 (N.D. Cal. Mar. 19, 2010), *aff'd in part, vacated in part, remanded*, 658 F.3d 936 (9th Cir. 2011) (knowledge for contributory infringement established by continued provision of webhosting services to specific sellers identified in infringement notices).

In *Sony Music Entertainment v. Cox Communications, Inc.*, looking at identical notices to those in this case, that district court rejected the precise argument Charter presents here, finding the knowledge standard "focuses on a defendant's ability to act upon the information provided":

> Cox argues that because each notice "specified only one particular work (Artist/Title pair), the opaque reference to an info hash in the notice did not on its face disclose that other works might have been on the subscriber's computer." Defs." Br. 23–24. But Cox's argument is misplaced. ***To be clear, the governing law is focused on the infringing conduct, not the specifics of the content of the notice***. The Fourth Circuit established a floor for a *prima facie* showing of knowledge in *BMG II.* The RIAA notices lie well above that floor, given the complex and detailed information just described. . . .
>
> Beyond general conduct, the Fourth Circuit requires knowledge of a "specific instance" of infringement. Rather than a particular work or type of work, it is the infringing conduct itself—the act of downloading or distributing a file—that is the specific instance of infringement. Here, MarkMonitor found an individual user on a P2P site, took specific data from that user, and then generated a detailed and time-stamped notice. The resulting notice both documented a specific instance of infringement and notified Cox of that instance. . . .
>
> When the Fourth Circuit describes knowledge of insufficient, generalized information, it gives the following example: "data showing that *some number* of its subscribers were infringing BMG's copyrights, even if the data did not show *which ones* were infringing." *BMG II*, 881 F.3d at 311. In this case, the notices accomplished far more than telling Cox that *some number* of subscribers were infringing. They told Cox *which ones*. **The standard is focused on the subscriber, not the particular works infringed**, and the specific instance of infringement guides service providers to the source.

426 F. Supp. 3d 217, 232–33 (E.D. Va. 2019) (emphasis added) (granting plaintiffs summary judgment on knowledge element of contributory infringement claim based on identical notices).

Contrary to this persuasive precedent and basic logic, Charter argues that knowledge of infringement requires knowledge of specific *works* infringed, rather than specific knowledge of infringing *acts* by particular subscribers. Of course, Charter has no support for its argument that it can only be held responsible for subsequent infringement of specific works identified by title and copyright owner in prior infringement notices. Indeed, this precise argument was rejected in

the cases discussed above.  The cases Charter relies on (Obj. at 9) are consistent with these decisions and stand for the notion that mere general awareness of infringing activity falls short.[3]

Here, the infringement notices identified to Charter its *particular subscribers* (by IP address and timestamp) using its Internet service to infringe.  The infringing files identified in the infringement notices often included multiple copyrighted works, and the notices made clear that the work listed in the notice was a "sampling of the music shared."  This is more than enough for Charter to *do something* about the infringement.  In *Sony v. Cox*, the court looked at the same form of notices that Charter received, concluding "[b]ased on the level of detail included in the notices directed at [the ISP] and its subscribers, there is no doubt that Defendants had more than just 'generalized knowledge' of infringement."  426 F. Supp. 3d at 232.

Finally, Charter distracts on two grounds.  First, Charter takes the Court on a journey through the steps that it erroneously contends that Plaintiffs believe Charter was legally obligated to conduct upon receiving their infringement notices.  (Obj. at 3.)  This is another manifestation of Charter's incorrect argument that knowledge focuses *only on the specific works infringed*, rather than on the ISP's *knowledge of infringing activity by a particular subscriber*.  Importantly, Charter does not contend that its policies, procedures, and practices varied depending on the work allegedly infringed, the number of works listed in an infringement notice, or whose rights were infringed—and nothing in Charter's own document productions remotely suggests they did.

Second, Charter's passing references to the DMCA (Obj. at 4, 9) are inapposite.  When multiple works are infringed, the DMCA expressly allows a copyright owner to provide "a

---

[3] *See*, *e.g.*, *Lopez v. Bonanza.com, Inc.*, 17 Civ. 8493 (LAP), 2019 WL 5199431, *25 (S.D.N.Y. Sept. 30, 2019) (finding allegation of knowledge insufficient where notices merely conveyed "general awareness that there are infringements" and defendant's website "was, at most, a means for unidentified users of the website to accomplish an infringing activity").

representative list of such works," 17 U.S.C. § 512 (c)(3)(A)(ii), just as occurred here.  With

respect to the standard for contributory liability, the underlying copyright jurisprudence governs

that question, without regard to the separate question of whether a DMCA safe harbor applies.

### 2.   The Special Master's Burden Finding has No Basis in Fact.

Underlying the Special Master's Order is the unsupported conclusion that "Plaintiffs'

burden of producing the requested information is less than Charter's."  ECF 181 at 25.

Magistrate Judge Hegarty rightly overturned the Special Master's ruling because this conclusion

comparing burdens has no basis in fact and is therefore clearly erroneous.  Charter has the same

data that Plaintiffs would use to conduct this analysis—it is within the discovery Plaintiffs have

already produced.  Moreover, the process for doing so is not a mystery.  Plaintiffs set forth in

detail how to conduct the analysis in their May 20 submission to the Special Master.  Ex. B.  As

that May 20 letter plainly shows, the burden is no different for either party; Charter is equally

situated to conduct the analysis.  *Id.*[4]

Plaintiffs' existing productions and detailed explanation of how to conduct the analysis,

as set forth in their May 20 letter, should be deemed a sufficient interrogatory response under

Fed. R. Civ. P. 33(d).  *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 519 (D. Colo.

2009) (Rule 33(d) satisfied by production of documents); *see also, e.g.*, *Ayala v. U.S. Xpress

Enters., Inc.*, No. EDCV 16-137-GW, 2018 WL 5794525, at *4 (C.D. Cal. Oct. 4, 2018)

(denying motion to compel defendant to "do [plaintiff's] work for him and cull data and

information" to conduct additional analysis "from documents already produced" when it was

---

[4] Charter complains that the process is time consuming, and alleges that in some instances it may
not be possible to recreate the process from scratch.  (Obj. at 10–11.)  None of those assertions
put Plaintiffs in a better position than Charter to perform the unnecessary analysis Charter
demands.

"undisputed that both parties [had] access to the underlying information"); *Ark. River Power Auth. v. Babcock & Wilcox Power Gen. Grp., Inc.*, No. 14-cv-00638-CMA-NYW, 2015 WL 2128312, at *9–12 (D. Colo. May 5, 2015) (refusing to compel defendant "to create an index linking the documents produced [by defendant] to specific discovery requests" on the grounds that it would be unduly burdensome (internal quotation marks omitted)).

Charter argues it is incapable of reviewing the same documents that Plaintiffs would review, claiming that "***only*** Plaintiffs are able to reliably match the notices they sent to the works in suit." (Obj. at 10.) Charter is wrong. Charter has received the documents to do the analysis, an explanation for how to do the analysis, and (per another Magistrate Judge Hegarty's Sept. 9 order) will receive additional discovery demonstrating the correlation between certain sound recordings and musical compositions in suit. Charter's assertions also fly in the face of its representations to Magistrate Judge Hegarty, wherein Charter acknowledged it is capable of doing this analysis. When Magistrate Judge Hegarty asked if Charter could do the analysis itself, Charter's counsel confirmed: "*We can go through a process that I think would allow us to put those pieces together.*" Ex. D at 145:11–13 (emphasis added); *see also supra* at 8–9.

*   *   *

For the reasons stated above, Plaintiffs respectfully request that the Court reject Charter's objection and affirm Magistrate Judge Hegarty's order. If the Court concludes that Plaintiffs must nevertheless provide the requested discovery (and it should not), the deadline for doing so should be in accordance with the schedule set for expert discovery. *See United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, No. 00-CV-737, 2005 WL 8176424, at *3 (E.D. Pa. June 17, 2005) (analysis of multi-year data regarding cancelled prescriptions "properly belong in the realm of expert discovery, not in the context of sworn factual discovery"); *Ziemack v. Centel*

*Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 n.3 (N.D. Ill. Dec. 7, 1995) ("[F]airness dictates that parties not be forced to prematurely take a position, which would produce an artificial narrowing of the issues, instead of an informed pairing down.").  Indeed, in the *Cox* case, a similar (but more limited) data analysis was performed by a statistical expert and professor with more than 50 years of experience (Plaintiffs) and a forensic accountant who has testified over 100 times (Cox), respectively.

Dated: October 7, 2020

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Respectfully submitted,

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE &
FERGUSON, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@williamsweese.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 7, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system.

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim