# Exhibit A

# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1000

**Via Email**

May 13, 2020

Special Master Regina Rodriguez
regina.rodriguez@wilmerhale.com

Re:   *Warner Records, Inc., et al. v. Charter Commc'ns, Inc.*, No. 19-cv-00874 —
Pls.' Resp. to Charter's 5/8 Letter Brief

Dear Ms. Rodriguez:

Charter's requests in its May 8 letter should be denied in their entirety.

## I.   Date Certain for Completion of Ownership Production

**Registrations and Chain-of-Title Productions.**  Plaintiffs have produced registration and chain-of-title records for over 95% of the over 11,000 works in suit, and as previously explained, are on pace to substantially complete productions in or before June.  There is no basis for Charter's seriatim requests for interim deadlines.

**"Disputes" Documents for 1% Sample.**  As Plaintiffs have explained to Charter, "disputes" over ownership are rare.  Nonetheless, Plaintiffs conducted a thorough, targeted search for "dispute"-related documents for the 110 works Charter identified for its 1% ownership sample.  Because of the small number of works at issue, Plaintiffs did not need to conduct wide-ranging email searches for the generic terms "own" and "cease-and-desist," or any other terms, as Charter suggests.  Instead, each Plaintiff group consulted centralized repositories and email folders where such "dispute"-related documents would reside.  As expected, few were found, and what did exist, Plaintiffs produced.[1]  More importantly, Charter complained about that production in February to Judge Hegarty.  *See* Charter's Feb. 17, 2020 Statement of Issues, at 10–12.  After hearing lengthy argument on these issues, *see, e.g.*, Dkt. 138 (Feb. 29 Hr'g) at 23:17–24:12, 40:1–43:4, Judge Hegarty did not order any additional "dispute" discovery.  *See generally id.*

## II.   Music Publisher Interrogatories 13–15 & Record Company Interrogatory 14

Charter seeks an order requiring Plaintiffs to (1) link the sound recordings and compositions in suit, and (2) match works to infringement notices.  Both interrogatories are improper on their face:  The requested discovery does not exist in Plaintiffs' files, as it can only be provided after analysis of data in the case.  Charter thus seeks expert analyses ten months prior to the Court's deadline for expert disclosures, *see* Dkt. 146 at 2, and work product created by Plaintiffs' counsel to aid in their prosecution of this case.  This discovery also is unduly

---

[1] Charter complains that Plaintiffs declined to identify those documents within their production.  Charter's counsel, however, first refused a similar request by Plaintiffs.  The applicable documents are PL_CH_0013185–90; Plaintiffs will not indulge future such requests until Charter is prepared to extend reciprocal courtesies.

COVINGTON

Special Master Regina Rodriguez
May 13, 2020
Page 2

cumulative and burdensome, since Charter already possesses the information it needs to conduct the analyses. The sound recordings in this case are listed by track name in Exhibit A; the musical compositions are also listed by name in Exhibit B. In virtually all cases, Charter can compare those listings to identify potential overlaps.

The same is true for matching works to notices. When Plaintiffs' antipiracy vendor, MarkMonitor, detected a torrent file that contained infringing copies of Plaintiffs' works—potentially among many other works—it sent a notice to Charter that identified the torrent file by hash and named a representative sample of one sound recording in the torrent. Charter possesses the notices, the infringing torrent files, and a spreadsheet of works that matches hash values to individual torrent files—meaning Charter has *everything* it needs to link the notices to the works in suit. And Charter's counsel knows how to do that linking exercise, because that very process was conducted by the plaintiffs' expert in the *Sony v. Cox* case.

### III. Production of "Reference Files" in Response to RFPs 90–91

Charter's request for production of the "reference files" provided by Plaintiffs to Audible Magic is premature. Last month, the Special Master ordered Plaintiffs to answer whether the digital copies they have produced are the same reference files provided to Audible Magic during the Claim Period. The Special Master expressly stated that Plaintiffs' need not produce the reference files pending that answer and discovery depositions. Ex. 1 (Apr. 17, 2020 Hr'g) at 152:6–20; Dkt. 164, at 9. Plaintiffs are working diligently to answer the question posed by June 1, as ordered; nothing more is required.

### IV. Responses to RFP Nos. 27, 55, 56, 62–66, and 84[2]

Post-Claim Period Documents (RFPs 27, 55–56, 62–66, 84). Ten months into discovery, Charter demands that Plaintiffs collect and review documents from years after the Claim Period, while insisting on limiting its own discovery to the 2012-2016 "Discovery Period." This one-sided request is unjustified for at least four reasons. ***First***, this case is about infringements from March 2013–May 2016 by *Charter's* subscribers on *Charter's* networks, and *Charter's* response (or non-response) to over 700,000 notices of infringement it received. What Plaintiffs may have discussed or considered four years *after* this period is irrelevant.

***Second***, Charter's stated reason for the request shows that it is cumulative. Charter speculates that post-Claim Period documents are "highly likely" to include information "bearing on the integrity of Plaintiffs' notices." But whether the notices Plaintiffs sent were accurate and reliable, or whether Plaintiffs owned a work before a notice was sent, can be ascertained by reviewing documents Plaintiffs have already agreed to produce. Specifically, Charter can test Plaintiffs' ownership by reviewing the ownership documentation Plaintiffs have produced; it can review the notices and the infringing files to confirm their accuracy and test whether the files are

---

[2] Charter mischaracterizes the state of play as to several of these requests, omitting entirely from its brief any mention of a comprehensive meet-and-confer letter that Plaintiffs sent to Charter on May 5, attached hereto as Ex. 2, which clarifies the record. Appendices 1–2 hereto correctly identify Plaintiffs' positions as to each of these requests.

COVINGTON

Special Master Regina Rodriguez
May 13, 2020
Page 3

in fact infringing; and it can review *contemporaneous* communications with MarkMonitor or Audible Magic concerning how well the process of tracking and verifying infringements, and sending notices, was (or was not) working. Nothing about that warrants searching and reviewing custodial emails covering a period of years after the Claim Period.

**Third**, Charter's request for documents post-dating, but concerning, the Claim Period is unworkable as a practical matter (and tellingly, when pressed at a recent meet-and-confer as to whether Charter would correspondingly agree to expand its search and review efforts, Charter's counsel deflected). There is no feasible search to target such documents without returning voluminous false hits that would require manual review to sift through—that defies proportionality. Compounding this burden, these requests overtly target information about Plaintiffs' litigation strategy, or its communications with third-party agents and litigation consultants, *following* Plaintiffs' pre-suit demand letters to Charter in March and April 2016.

**Fourth**, there is no predicate to believe that responsive, non-privileged documents created after the Claim Period—but about the Claim Period—exist. When Plaintiffs asked Charter's counsel to identify documents that they expected to exist based on their experience in *Cox*—so Plaintiffs could target similar documents here—Charter refused to identify any specific examples.

CAS Discovery (RFPs 55, 62–63, 65–66). Charter seeks an end run around Judge Hegarty's and Judge Jackson's rulings by demanding additional discovery regarding the Copyright Alert System, or "CAS"—a private arrangement between certain copyright owners, their trade associations, and certain ISPs (*not* including Charter) designed to educate consumers on infringement issues and deter infringement. Without even mentioning the prior rulings, Charter claims it is "concerning" that Plaintiffs will not produce technical documents or analyses that relate solely to CAS. But last fall, Charter moved for expansive discovery into CAS, including documents concerning the "reviews and analyses concerning the technology or system used in connection with CAS." Dkt. 84 at 16–20. After initially denying discovery into CAS outright, Dkt. 80 (Oct. 29, 2019 Hr'g) at 51:6–11, Judge Hegarty subsequently agreed to discovery of only the handful of private agreements between the CAS parties, on the condition that Charter stand down on the bulk of its requests concerning CAS. *See* Dkt. 108 (Dec. 17, 2019 Hr'g) 92:5–99:24. In doing so, Judge Hegarty limited CAS discovery to what Plaintiffs have already produced. Charter then filed a notice with Judge Jackson withdrawing its demand for more. Dkt. 101. Judge Jackson thereafter questioned the appropriateness of *any* CAS discovery, though declined to find Judge Hegarty's ruling clear error. Dkt. 159 at 7. Charter may not use the Special Master process to circumvent the Court's prior rulings.

V.   **Responses to RFP Nos. 22–25, 54, 59, 60, and 65**

Financial Effect of P2P (RFP 22–25). At the last Special Master conference, Charter sought post-Claim Period financial information to bolster its argument that "P2P infringement is no longer an impediment for Plaintiffs." Charter Ltr. to Special Master, dated April 10, 2020. Per the Special Master's ruling on this issue, Plaintiffs will be producing their top-level financials through the present. Charter now moves for documents post-dating the Claim Period "concerning the financial effect of P2P infringement during the Claim Period (RFP 22) and P2P file sharing as it relates to Plaintiffs' respective businesses (RFPs 23–25)." But Charter does

not—and cannot—explain why the financial information it already sought and obtained is insufficient, or why it needs *emails* to make its point. The burden of these cumulative requests is also significant. Charter proposes that Plaintiffs can simply "extend the dates of their current search parameters," but any search for financial information in documents generated after the Claim Period would necessarily sweep in a host of documents that have nothing at all to do with the Claim Period.

Rightscorp (RFP 54, 59, 65). Charter's request for documents about Rightscorp is unfounded. As Charter concedes, Plaintiffs used MarkMonitor as their vendor to send notices to Charter—*not* Rightscorp. Charter contends that, because *other* notices sent to Charter on behalf of other rights owners were sent by Rightscorp, the reliability of those notices is somehow relevant. But Charter has offered no evidence that it ever considered the reliability of the vendor sending a notice when deciding how to respond to that notice. Absent such a threshold showing—*e.g.,* that Charter considered certain vendors' notices more reliable than others and thus responded differently to each—there is simply no basis to demand discovery about a vendor that Plaintiffs never used. And, even then, the relevance of *Plaintiffs'* documents about Rightscorp, if any, remains unclear.

RIAA Payments (RFP 60). Charter seeks documents showing all of Plaintiffs' payments to the RIAA, a recording industry trade association, to purportedly show that "Plaintiffs cut their anti-piracy budgets" between 2010 to 2016. But as Charter's counsel well knows, RIAA receives annual dues from its members, which fund many different activities on the industry's behalf, including regulatory and legislative efforts, industry relations, research, litigation and more. There are no antipiracy-specific payments to RIAA. In any event, such information would be irrelevant as a matter of law. A copyright owner has no obligation to police infringements of its works in order to assert a claim for infringement; neither a thief nor someone, like Charter, that profits from the theft, gets to raise as a defense that the rightful owner should have invested in a better security system.[3]

## VI. Custodians and Search Terms

Plaintiffs identified custodians likely to have documents responsive to Charter's discovery requests, including at least two from each of the six Plaintiff groups, and several more for the larger Plaintiff groups. Unlike Charter, Plaintiffs dutifully investigated each individual listed in their Rule 26(a) disclosures as a possible custodian, and ultimately included all of them as custodians, except for one who Plaintiffs determined was unlikely to have responsive documents in her custodial files. Contrary to Charter's assertion, Plaintiffs *have* agreed to investigate the appropriateness of adding custodians on certain topics, as set forth below.

Third Parties. Charter demands that Plaintiffs add as custodians several third parties whose services Plaintiffs used in detecting infringements and *outside litigation counsel* in this case. This is an improper attempt either to obtain privileged information, or to impose an oppressive burden by requiring excessive logging of clearly privileged information. Plaintiffs

---

[3] In any case, if Charter seeks to prove that Plaintiffs' losses resulted from a purported lack of enforcement, that is both irrelevant and controverted by public records demonstrating that Plaintiffs vigorously enforced their rights, including now in this very litigation.

**COVINGTON**
Special Master Regina Rodriguez
May 13, 2020
Page 5

conducted a reasonable and diligent search of *Plaintiffs*' custodial documents related to these third parties. No more is required. Obviously, Plaintiffs cannot search or produce documents in the possession of third parties, and Charter has identified no basis for limiting Rule 45's procedural protections afforded to non-parties. Indeed, Charter already served subpoenas on each third party identified in its motion and has received documents in response from each (*e.g.*, RIAA recently produced nearly 500,000 documents). Setting aside third parties, Plaintiffs are continuing to investigate potential additional custodians for requests concerning their communications with Audible Magic.

      BitTorrent Bundles. Charter's fixation on supposed "promotion" of works via BitTorrent and "BitTorrent Bundles" is a red herring designed to create confusion. BitTorrent is a *protocol* for distributing information over the internet, and is a favored tool for distributing *pirated* content. The *Mashable* article cited by Charter quotes a letter written by a former employee of the *company*, BitTorrent, Inc. ("BTI"), advocating for *legitimate* licensing deals between the recording industry and BTI. The article itself explains that BTI is distinct from the BitTorrent file-sharing protocol at issue in this case (the overwhelming majority of protocol users have nothing to do with BTI). Charter's counsel is attempting to equate the company BTI and the independent protocol that bears the same name.

      Nonetheless, after Charter first mentioned BTI's *licensed* offering at the last Special Master conference, Plaintiffs immediately added search terms to target "BitTorrent Bundles" and investigated the offering within each Plaintiff group to determine (1) if documents concerning these "Bundles" were likely to exist, and (2) if the appropriate custodians had been identified. These investigations confirm what Plaintiffs already conveyed to Charter: in most cases, the existing antipiracy custodians are the individuals most likely to have relevant documents, if any, related to this topic. Plaintiffs are continuing their investigation, including with the aid of information newly provided in Charter's briefing, and anticipate adding a few additional custodians on this topic.

      Hit Reports. Charter's request for hit reports by Plaintiff group is moot. Plaintiffs provided Charter with these hit reports on May 11, as Plaintiffs had told Charter they would do when the parties met and conferred on this topic early last week.

      Sincerely,

      */s/ Jonathan Sperling*
      Jonathan Sperling

## APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| **REQUEST NO. 27:** All documents that mention, refer to, or relate to Charter and/or the above-captioned litigation that were created, received, or sent from 2013 to the present. | "Plaintiff will produce responsive, non-privileged documents in their possession, custody, or control concerning Charter and copyright infringement for the time period January 1, 2013 to May 17, 2016, to the extent located following a reasonable and diligent search." See [Charter] Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 27). | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019.[1] | Charter's characterization of Plaintiffs' response is generally accurate. See Ex. 2 (Pls.' May 5, 2020 Ltr.) at 6–7 for Plaintiffs' response.<br><br>Despite the fact that Charter's request overtly targets privileged information, Plaintiffs have agreed to conduct broad searches for this time period, and produce and/or log any responsive documents identified based on that review.<br><br>Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. |
| **REQUEST NO. 55:** All communications with MarkMonitor regarding the Copyright Works[2] and/or copyright infringement notices considered, prepared, or sent to Charter or its account holders, subscribers, or customers. | "Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce, for the period from January 1, 2013 to May 17, 2016 responsive, non-privileged communications with MarkMonitor concerning infringement notices MarkMonitor sent to Charter in connection with the RIAA notice program at issue in this case that are in Plaintiffs' possession, custody, or control, to the extent located following a reasonable and diligent search." | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019. | Subject to their objections, Plaintiffs have agreed to produce, for the period from January 1, 2010 to December 31, 2016, responsive, non-privileged communications with MarkMonitor concerning infringement notices MarkMonitor sent to Charter in connection with the RIAA notice program at issue in this case that are in Plaintiffs' possession, custody, or control, to the extent located following a reasonable and diligent search.<br><br>Plaintiffs' search term disclosure also shows that their search of email communications with MarkMonitor has not been limited by |

---

[1] With respect to the requests addressed in this Appendix, the relief Charter seeks is based, in part, on Charter's recent correspondence with Plaintiffs. See, e.g., [Charter] Ex. 10 (Charter's April 22, 2020 Ltr.).
[2] The "Copyright Works" is defined as the works-in-suit.

1

## APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| | *See* [Charter] Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 55). | | subject matter, and thus capture all email communications sent to, from, or cc'ing MarkMonitor domains. *See* Ex. 2 (Pls.' May 5, 2020 Ltr.) at 8 n.4.<br><br>Plaintiffs' proposed time limitation of 2010-2016 spans *seven years*, and is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. |
| **REQUEST NO. 56:** All documents concerning any computer code, computer program, software, hardware, system, process, or device utilized to monitor or detect copyright infringement through BitTorrent or peer-to-peer file sharing technologies or sites, or using copyright infringement notices that were prepared and sent by You or on Your behalf to Charter for the Copyright Works. | "Plaintiffs will agree, subject to these objections, to produce non-privileged documents, if any, responsive to RFP 56 that are located in their possession, custody, and control based on a reasonable and diligent search for the claim period."<br><br>*See* [Charter] Ex. 11 (Pls.' March 25, 2020 Ltr.) at 4. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. | Plaintiffs have agreed to produce documents concerning the reliability of the MarkMonitor system used to generate notices to Charter from the Claim Period (RFP No. 65), and non-privileged analyses of that system for the 2012-2016 Discovery Period (RFP No. 66). Moreover, Plaintiffs do not have possession or control of MarkMonitor's computer code, computer program, software, or hardware and, therefore, cannot produce them. Tellingly, Charter has sought similar discovery from third-party MarkMonitor (Subpoena to Produce Documents, Information or Objects, or to Permit Inspection of Premises In a Civil action to MarkMonitor, Inc. dated December 20, 2019) which is the appropriate entity to which such discovery should be directed. *See* Ex. 2 (Pls.' May 5, 2020 Ltr.) at 9.<br><br>Charter has not identified the purported "representations" made by Plaintiffs concerning limitations on their responses; Plaintiffs thus cannot confirm the accuracy of Charter's characterization of any such statements. |

## APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| | | | Plaintiffs' proposed time limitations for these related requests are proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief.<br><br>The parties agreed to a mutual exchange of amended RFP responses on May 18. Plaintiffs will serve amended responses in accordance with that agreement. *See* Pls.' Ex. 3 (Charter's May 7, 2020 email). |
| **REQUEST NO. 62:** All documents concerning the RIAA and either this lawsuit, Charter, CAS, MarkMonitor, and/or the Copyright Works. | "Plaintiffs will produce non-privileged documents concerning (1) MarkMonitor, and (2) peer-to-peer file sharing networks, copyright infringement, Bright House/Charter, or the RIAA, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. Plaintiffs will also produce non-privileged documents concerning the RIAA, Bright House/Charter, and copyright infringement, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search."<br><br>Time period: March 1, 2012 through May 17, 2016.<br><br>*See* [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | Plaintiffs should produce documents that concern the RIAA and either (i) this lawsuit, (ii) Charter, (iii) MarkMonitor, and/or (iv) the works in suit through 2019. | Charter's characterization of Plaintiffs' response is generally accurate. *See* Ex. 2 (Pls.' May 5, 2020 Ltr.) at 11–12 for Plaintiffs' response.<br><br>Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief.<br><br>Charter's proposed order is overly broad and would encompass documents unrelated to this case or Charter. Charter improperly seeks discovery about the Copyright Alert System ("CAS") beyond that permitted by the Court, as set forth in Plaintiffs' Response Brief. |
| **REQUEST NO. 63:** All documents pertaining to the relationship, agreement, and/or | "Plaintiffs will produce non-privileged documents concerning (1) MarkMonitor, and (2) peer-to-peer | Plaintiffs should produce documents responsive to | Charter's characterization of Plaintiffs' response is generally accurate. *See* Ex. 2 |

3

## APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| communications between You and/or any other Plaintiff and the RIAA and/or MarkMonitor regarding this lawsuit, the Copyright Works, and/or Charter. | file sharing networks, copyright infringement, Bright House/Charter, or the RIAA, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. Plaintiffs will also produce non-privileged documents concerning the RIAA, Bright House/Charter, and copyright infringement, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." Time period: March 1, 2012 through May 17, 2016. See [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | Charter's request, as drafted, through 2019. | (Pls.' May 5, 2020 Ltr.) at 11–12 for Plaintiffs' response. Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. Charter's proposed order is overly broad and would encompass documents unrelated to this case or Charter. Charter improperly seeks discovery about the CAS beyond that permitted by the Court, as set forth in Plaintiffs' Response Brief. |
| **REQUEST NO. 64:** All documents concerning the relationship, agreement, and/or communications between the RIAA and any other person as it relates to either Charter, this lawsuit, and/or the Copyright Works. | Plaintiffs will not produce documents responsive to this request. | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019. | Plaintiffs object to this request, including because it is facially overbroad by seeking "all" documents, targets agreements and communications between non-party RIAA and other unnamed non-parties, or targets privileged information. Any relevant non-privileged documents would be encompassed by what Plaintiffs have already agreed to produce in response to RFP Nos. 62 & 63. See Ex. 2 (Pls.' May 5, 2020 Ltr.) at 13. |
| **REQUEST NO. 65:** All documents concerning any technical or qualitative analysis of any computer code, computer program, | "Plaintiffs will produce non-privileged analyses of the computer code utilized to identify infringement and/or produce the infringement notices that | Plaintiffs should produce any analyses that concern computer code or other systems responsible for the process in | Charter stated, among other things that it can agree to limit the request to seek analyses that concern computer code or other systems responsible for the process in |

4

**APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)**

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| software, hardware, system, process, or device utilized to identify infringement and/or produce the copyright notices which were sent to Charter or upon which You will rely in this litigation, including any documents drafted by the Center for Copyright Information ("CCI"), MarkMonitor, Stroz Friedberg, or Harbor Labs. | were sent to Bright House and Charter during the claim period of March 24, 2013 to May 17, 2016, to the extent such analyses exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. Plaintiffs will not, however, produce any such documents that relate solely to the Copyright Alert System." *See* [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | identifying infringement and/or producing the infringement notices that were sent to Charter, or upon which Plaintiffs will rely on in this case. This includes any and all documents concerning such analyses involving CCI, MarkMonitor, Stroz Friedberg, and Harbor Labs. This also would include documents involving the RIAA. Plaintiffs should be further ordered to produce the type of documents described above, even if the document references the Copyright Alert System ("CAS") or was created pursuant to the CAS or the CCI, unless the MarkMonitor system at issue shared absolutely no similarities, on any level, with the MarkMonitor system used to send notices to Charter or upon which Plaintiffs are otherwise relying in this case. Plaintiffs should be ordered to produce documents from March 1, 2012 through 2019. | identifying infringement and/or producing the infringement notices that were sent to Charter and that Plaintiffs will rely on. *See* [Charter] Ex. 10 (Charter's April 22, 2020 Ltr.) at 7. Subject to their objections, Plaintiffs have agreed to produce exactly that, for the period March 1, 2012 to May 17, 2016: non-privileged analyses of the computer code utilized to identify infringement and/or produce the infringement notices that were sent to Charter during the Claim Period, to the extent such analyses exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. *See* Ex. 2 (Pls.' May 5, 2020 Ltr.) at 13–14. Plaintiffs will not, however, produce documents that relate solely to the CAS. Charter improperly seeks discovery about the CAS beyond that permitted by the Court, as set forth in Plaintiffs' Response Brief. Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. |
| **REQUEST NO. 66:** All documents and correspondence relating to the reliability and/or efficacy of the MarkMonitor System, including but not limited to audits | "Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control, for the period from January 1, 2013 to May 17, 2016, concerning the reliability of the | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their | Charter's characterization of Plaintiffs' response is generally accurate. *See* Ex. 2 (Pls.' May 5, 2020 Ltr.) at 14–15 for Plaintiffs' response. |

5

## APPENDIX 1 (RFPs 27, 55, 56, 62-66, 84)

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| related thereto, and documents and communications with MarkMonitor, Stroz Friedberg, and/or Harbor Labs pertaining to any technical assessments of the MarkMonitor System. | MarkMonitor system used to produce the copyright notices sent to Charter upon which Plaintiffs will rely in this litigation, to the extent located following a reasonable and diligent search."<br><br>See [Charter] Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 66). | written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. | It is *not* accurate, however, that Plaintiffs purportedly "represented" they would not limit their responses, and Plaintiffs are not aware to what Charter is referring by this statement. For clarity, Plaintiffs will not produce any documents responsive to this request that relate solely to the CAS. Charter improperly seeks discovery about the CAS beyond that permitted by the Court, as set forth in Plaintiffs' Response Brief.<br><br>Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief.<br><br>The parties agreed to a mutual exchange of amended RFP responses on May 18. Plaintiffs will serve amended responses in accordance with that agreement. See Pls.' Ex. 3 (Charter's May 7, 2020 email). |
| **REQUEST NO. 84:**<br>All documents concerning the company Audible Magic and/or its technology, including without limitation, the use of Audible Magic's technology to identify the alleged infringements at issue in this litigation. | "Plaintiffs will produce non-privileged documents concerning the use of Audible Magic's technology to identify the infringements at issue in this litigation, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search."<br><br>See [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 4. | Plaintiffs should be compelled to produce documents concerning Audible Magic's technology used in connection with the identification of the alleged infringements in this litigation through 2019. | Charter's characterization of Plaintiffs' response is generally accurate, subject to a time limitation of March 1, 2012 to May 17, 2016. See Ex. 2 (Pls.' May 5, 2020 Ltr.) at 15 for Plaintiffs' response.<br><br>Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. What matters here is whether Audible Magic's technology was reliable during the timeframe in which it was used; Plaintiffs have agreed to produce for an additional year beyond the relevant time frame of 2013–2016. |

**APPENDIX 2 (RFPs 22–24, 54, 59–60)**

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| **REQUEST NO. 22:** All documents concerning the effect from copyright infringement using peer-to-peer file sharing technologies on Your projected and actual total revenue and/or profits generated during Plaintiffs' Claim Period. | "Plaintiffs will produce non-privileged studies, reports, and analyses assessing the financial effect of copyright infringement via BitTorrent and other peer-to-peer file sharing networks on Plaintiffs' revenue from the works in suit, to the extent such studies, reports, and analyses exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." <br><br> Time period: March 1, 2012 through May 17, 2016. <br><br> *See* [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019.[3] | Subject to their objections, Plaintiffs have agreed to produce, for the period March 1, 2012 to May 17, 2016, non-privileged documents—not limited to formal studies, reports, or analyses—assessing the financial effect of copyright infringement via BitTorrent and other peer-to-peer file sharing networks on Plaintiffs' revenues and/or profits during the Claim Period, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search *See* Ex. 2 (Pls.' May 5, 2020 Ltr.) at 2–3. <br><br> Charter has not identified the purported "representations" made by Plaintiffs concerning limitations on their responses; Plaintiffs thus cannot confirm the accuracy of Charter's characterization of any such statements except as set forth herein. <br><br> Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. <br><br> The parties agreed to a mutual exchange of amended RFP responses on May 18. Plaintiffs will serve amended responses in accordance with that agreement. *See* Pls.' Ex. 3 (Charter's May 7, 2020 email). |

---

[3] With respect to the requests addressed in this Appendix, the relief Charter seeks is based, in part, on Charter's recent correspondence with Plaintiffs. *See, e.g.*, [Charter] Ex. 10 (Charter's April 22, 2020 Ltr.).

7

**APPENDIX 2 (RFPs 22–24, 54, 59–60)**

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| **REQUEST NO. 23:** All documents that reference BitTorrent or other types of peer-to-peer file sharing technologies as they relate to diminished or diminishing use of such technologies, copyright infringement, sampling musical works, or permitted authorized uses, whether actual, perceived, or potential, of the Copyright Works. | "Plaintiffs will produce non-privileged analyses and internal documents concerning the diminished or diminishing use of BitTorrent or other peer-to-peer file sharing networks, to the extent such analyses and internal documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search." <br><br> Time period: March 1, 2012 through May 17, 2016. <br><br> *See* [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. | Charter's characterization of Plaintiffs' response is generally accurate. *See* Pls.' Ex. 2 (Pls.' May 5, 2020 Ltr.) at 3–4. <br><br> Charter has not identified the purported "representations" made by Plaintiffs concerning limitations on their responses; Plaintiffs thus cannot confirm the accuracy of Charter's characterization of any such statements. <br><br> Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. <br><br> The parties agreed to a mutual exchange of amended RFP responses on May 18. Plaintiffs will serve amended responses in accordance with that agreement. *See* Pls.' Ex. 3 (Charter's May 7, 2020 email). |

**APPENDIX 2 (RFPs 22–24, 54, 59–60)**

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| **REQUEST NO. 24:** All documents concerning the effect of the use of peer-to-peer technologies on any Plaintiffs, including studies or analyses demonstrating, reflecting, supporting, or refuting any benefit or harm to any Plaintiff, including but not limited to any Copyright Work. | "Plaintiffs will produce non-privileged studies assessing the benefit or harm to Plaintiffs from copyright infringement via BitTorrent or other peer-to-peer file sharing networks, to the extent such studies exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search."<br><br>Time period: March 1, 2012 through May 17, 2016.<br><br>*See* [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. | Subject to their objections, Plaintiffs have agreed to produce, for the period March 1, 2012 to May 17, 2016, non-privileged documents—not limited to formal studies—assessing the benefit or harm to Plaintiffs from copyright infringement via BitTorrent or other peer-to-peer file sharing networks, to the extent such documents exist and can be found in Plaintiffs' possession, custody, or control after a reasonable search. *See* Pls.' Ex. 2 (Pls.' May 5, 2020 Ltr.) at 4–5.<br><br>Charter has not identified the purported "representations" made by Plaintiffs concerning limitations on their responses; Plaintiffs thus cannot confirm the accuracy of Charter's characterization of any such statements except as set forth herein.<br><br>Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief.<br><br>The parties agreed to a mutual exchange of amended RFP responses on May 18. Plaintiffs will serve amended responses in accordance with that agreement. *See* Pls.' Ex. 3 (Charter's May 7, 2020 email). |
| **REQUEST NO. 25:** All documents concerning the use of peer-to-peer file sharing sites or technologies including, but not limited to, BitTorrent to promote, market, or otherwise benefit You, any of the Copyright Works, and/or any of the | "Plaintiffs will produce non-privileged documents concerning Plaintiffs' use of BitTorrent and other peer-to-peer file sharing networks to market or promote Plaintiffs' works, to the extent such documents exist and can be found in Plaintiffs' possession, | Plaintiffs have represented during meet and confers that they are not limiting their responses to Charter's request based on what is stated in their written responses, but have not yet served supplemental responses reflecting this. | Charter's characterization of Plaintiffs' response is generally accurate. *See* Pls.' Ex. 2 (Pls.' May 5, 2020 Ltr.) at 4–5.<br><br>Charter has not identified the purported "representations" made by Plaintiffs concerning limitations on their responses; Plaintiffs thus cannot confirm the accuracy of |

## APPENDIX 2 (RFPs 22–24, 54, 59–60)

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| artists who created the Copyright Works. | custody, or control after a reasonable search." <br><br> Time period: March 1, 2012 through May 17, 2016. <br><br> See [Charter] Ex. 12 (Pls.' Nov. 8, 2019 Ltr.) at 1, 3. | Accordingly, Charter requests an order for Plaintiffs to produce all documents responsive to this request, as written, through 2019. | Charter's characterization of any such statements. <br><br> Plaintiffs' proposed time limitation is proper and proportionate to the needs of this case, as set forth in Plaintiffs' Response Brief. Plaintiffs' marketing media from after the Claim Period do not bear on Charter's culpability at the time of infringement or negate any loss that Plaintiffs' suffered. <br><br> Plaintiffs have also disclosed that their search terms target documents concerning "BitTorrent Bundles," as requested by Charter. <br><br> The parties agreed to a mutual exchange of amended RFP responses on May 18. Plaintiffs will serve amended responses in accordance with that agreement. See Pls.' Ex. 3 (Charter's May 7, 2020 email). |
| **REQUEST NO. 54:** All communications with Rightscorp regarding the Copyright Works and/or copyright infringement notices considered, prepared, or sent to Charter or its account holders, subscribers, or customers. | Plaintiffs will not produce documents responsive only to this request. <br><br> See [Charter] Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 54). | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019. <br><br> Charter is willing to further meet and confer regarding appropriate custodians and search terms, in addition to any other narrowing that may be appropriate in light of the volume of responsive documents per Plaintiff. | Charter's characterization of Plaintiffs' response is generally accurate. See Pls.' Ex. 2 (Pls.' May 5, 2020 Ltr.) at 8–9 for Plaintiffs' response. <br><br> Charter's request for documents concerning Rightscorp is unfounded; Plaintiffs used MarkMonitor, *not* Rightscorp, to send noticed to Charter. Absent evidence that Charter considered the reliability of the vendor sending a notice when deciding how to respond to that notice, there is no basis for discovery about a vendor that Plaintiffs never |

**APPENDIX 2 (RFPs 22–24, 54, 59–60)**

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| | | | used, as set forth in Plaintiffs' Response Brief. |
| **REQUEST NO. 59:** Documents sufficient to demonstrate the specific actions You undertook in the last ten (10) years that were intended to reduce the infringement of Your Copyright Works and/or any of Your other copyrighted works, including any amount of money you expended on these actions. | Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce notices of infringement in their possession, custody, or control that are related to the copyrighted works in suit and were sent to Charter by or on behalf of Plaintiffs, to the extent located following a reasonable and diligent search. See [Charter] Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 59). | Plaintiffs should produce documents responsive to Charter's request, as drafted, through 2019, including as they concern Rightscorp. Charter is willing to further meet and confer regarding appropriate custodians and search terms, in addition to any other narrowing that may be appropriate in light of the volume of responsive documents per Plaintiff. | Charter's characterization of Plaintiffs' response is generally accurate. See Pls.' Ex. 2 (Pls.' May 5, 2020 Ltr.) at 9–10 for Plaintiffs' response. RFP No. 59 is grossly overbroad as written because it seeks documents concerning each and every enforcement action that virtually the entire music industry undertook for a decade regardless of relevance to this case. Moreover, a copyright owner has no obligation to police infringements of its works in order to assert a claim for infringement, as set forth in Plaintiffs' response brief. As such, Plaintiffs investment in antipiracy efforts, or any supposed lack thereof, is utterly irrelevant. Finally, Charter's request for documents concerning Rightscorp is unfounded; Plaintiffs used MarkMonitor, *not* Rightscorp, to send noticed to Charter, as set forth in Plaintiffs' Response Brief. |
| **REQUEST NO. 60:** Documents sufficient to demonstrate the amount of money You paid to the RIAA between 2010 and 2016. | Plaintiffs will not produce documents responsive only to this request. See [Charter] Ex. 1 (Pls.' Objs. and Resps. to Charter's First Set of Requests for the Production of Documents, Resp. to RFP 60). | Plaintiffs should produce documents responsive to Charter's request, as drafted. | Charter's characterization of Plaintiffs' response is generally accurate. See Pls.' Ex. 2 (Pls.' May 5, 2020 Ltr.) at 10–11. Plaintiffs pay annual dues to the RIAA, which fund an array of activities for the recording industry, not limited to antipiracy alone, including regulatory and legislative efforts, industry relations, research, litigation and |

11

**APPENDIX 2 (RFPs 22–24, 54, 59–60)**

| Charter's Original Request | Charter's Characterization of Plaintiffs' Response | Charter's Proposed Order | Plaintiffs' Operative Response |
|---|---|---|---|
| | | | more. Moreover, what Plaintiffs spent on antipiracy efforts is irrelevant as a matter of law to *Charter's* culpability for infringement occurring on its network, as set forth in their Response Brief. |