**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

        Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

        Defendant.

---

**SPECIAL MASTER'S ORDER REGARDING PARTIES' MOTIONS TO COMPEL**

---

**Entered by Regina M. Rodriguez, Special Master, on October 8, 2020,**

Pending before me are Plaintiffs' and Defendant's motions to compel.  The parties set forth their positions regarding outstanding discovery disputes in motions to compel filed on September 2, 2020 and oppositions filed on September 10, 2020.  These issues are ripe for review. Based on the record and for the reasons that follow, Plaintiffs' motion is granted in part and denied in part and Defendant's motion is granted in part and denied in part.

## I.   BACKGROUND

This action arises out of the alleged secondary infringement by the Defendant of Plaintiffs' copyrighted musical compositions and sound recordings. Judge Hegarty has provided a detailed account of the factual allegations in this case in his October 21, 2019 Recommendation. ECF 71. To the extent that facts are relevant to a request at issue, those facts will be addressed in the analysis thereof.

1

## II.   APPLICABLE LAW

"[T]he scope of discovery under the federal rules is broad." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Federal Rule of Civil Procedure 26(b)(l) permits discovery regarding any nonprivileged matter that is relevant to a Party's claim or defense and proportional to the needs of the case. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

In considering whether the discovery is proportional to the needs of the case, Fed. R. Civ. P. 26(b)(l) instructs courts to analyze "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Discovery matters are "entrusted to the sound discretion of the trial courts." *Punt v. Kelly Servs*., 862 F.3d 1040, 1047 (10th Cir. 2017) (internal quotation marks omitted).  Where a discovery request appears relevant on its face, the party resisting the discovery request has the burden to show "the request (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(l), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery." *Sinclair Wyoming Ref. Co. v. A&B Builders, Ltd*., No. 15-cv-91-ABJ, 2017 WL 10309306, at *5 (D. Wyo. Oct. 31, 2017) (internal quotation marks omitted).

### III.   CHARTER'S MOTION TO COMPEL

#### A.   <u>Discovery Requests Relevant To Charter's Counterclaims</u>

Charter first seeks an order compelling Plaintiffs to respond to Charter's RFPs 96 and 97, and its RFAs 3-6. Defendant's Motion to Compel, September 2, 2020 ("Def. Mot.").  Plaintiffs have argued, both in opposition to Charter's motion to compel and in their own motion for protective order (filed August 21, 2020), that discovery relating to Charter's counterclaims should be stayed pending Plaintiffs' motion to dismiss those counterclaims.  *See* Plaintiffs' Opposition to Defendant's Motion to Compel, September 10, 2020 ("Pl. Opp."); Plaintiffs' Motion for Protective Order, August 21, 2020 ("Pl. Mot. P.O.").  In my September 29, 2020 order, ECF 251, I denied Plaintiffs' request for a stay.  To the extent that Plaintiffs repeat those arguments here, and for the reasons outlined in my order, those arguments are rejected.

Plaintiffs secondarily argue that Charter's requests should be denied on their merits. Pl. Opp. at 5-6. I therefore consider each request at issue as follows:

##### 1.   *RFP 96*

Charter's RFP 96 seeks "Documents sufficient to demonstrate Your ownership of, or possession of an exclusive right in, each of the Dropped Works at the time You sent a Notice of Alleged Infringement for that Dropped Work."  Charter argues that RFP 96 is directly relevant to its counterclaims, which seek to hold Plaintiffs liable for Charter's damages from receiving and responding to Plaintiffs' allegedly false infringement notices related to the 400-plus works Plaintiffs dropped from their First Amended Complaint. Def. Mot. at 1-2.  Charter secondarily argues that the information sought by RFP 96 is also relevant to Plaintiffs' claim in its Complaint

that Charter was in receipt of "hundreds of thousands of notices." Def. Mot. at 3 (citing First Am. Compl., ¶¶ 2, 95, 100).

Plaintiffs argue that the "only conceivable relevance to Plaintiffs' ownership of the Dropped Works is Charter's counterclaims," (Pl. Opp. at 5) noting that "Dropped Works" is "a defined term that singularly implicates Charter's counterclaims." *Id.*  While Plaintiffs repeatedly argue that Charter's request only relates to its counterclaims, they fail to rebut Charter's assertion that the requests are relevant given Plaintiffs' own argument that Charter was in receipt of "hundreds of thousands of notices."

The Federal Rules permit discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26.  Neither party disputes that Charter's RFP 96 is relevant to its counterclaims.  As such, there is not a dispute as to whether the information sought is relevant to a claim or defense.  Notwithstanding that this request is primarily relevant to Charter's counterclaims, I find that the request is also relevant to the underlying claims in this matter, as reflected by Plaintiffs' allegation that Charter received "hundreds of thousands of notices."

I also find that the probative value of the evidence sought outweighs the burden on the Plaintiffs.  Plaintiffs argue that they have not already collected the requested information, and that they would be burdened by collecting a "production-ready compilation of voluminous and comprehensive chain-of-title and ownership documentation." Pl. Opp. at 5.  This alone does not outweigh the potential probative value of the evidence sought.  "Parties always are burdened by discovery and the other requirements for the preparation of a case." *Webb v. Brandon Exp. Inc.*,

No. 09-cv-00792-WYD-BNB, 2009 WL 4061827, at *2 (D. Colo. Nov. 20, 2009).  That the Plaintiffs will need to expend time gathering the information sought does not render their burden undue—particularly when Plaintiffs themselves have pled additional counterclaims that would "put[] at issue four additional years of discovery and thousands of additional works." Pl. Mot. P.O. at 3. If Plaintiffs determine that the costs of producing the documents is significant, they can request an order to require Charter to pay the costs of the production.

**With regard to RFP 96, Charter's motion to compel is granted. Plaintiffs shall produce documents responsive to this request on or before December 18, 2020 unless Judge Jackson enters an order on the motion to dismiss prior to this date.**

*2.  RFA 3*

Charter's RFA 3 states: "Admit that You sent, or authorized to have sent, Notices of Alleged Infringement for the Dropped Works."  Plaintiffs have addressed RFP 96 and RFA 3 together.  For the reasons set forth above, I find Plaintiffs' arguments with regard to relevance unpersuasive.  Plaintiffs secondarily argue that, with regard to RFA 3, "though Charter deleted most of Plaintiffs' notices, Plaintiffs have produced them here, so Charter can determine for itself whether any of them list the Dropped Works…" Pl. Opp. at 5.  That Charter may be able to glean the information on its own does not in itself warrant denial of Charter's motion to compel. Rule 36 specifically allows a party to serve a written request to admit "the truth of any matters within the scope of Rule 26(b)(1)."  The information sought is relevant under the standard set forth in Rule 26. Charter is entitled to a verified admission or denial of the statement at issue.

**With regard to RFA 3, Charter's motion to compel is granted.**

*3.  RFP 97*

Charter's RFP 97 seeks "Documents sufficient to show, for each of the Dropped Works, that You were authorized to send Notices of Alleged Infringement concerning those works between January 1, 2012 and March 31, 2015."  Charter argues that this request differs from RFP 96 "to the extent that Plaintiffs may not have owned or possessed an exclusive right to a Dropped Work but were nevertheless authorized to send notices for the work, pursuant to some other type of agreement." Def. Mot. at 4.  Charter argues that the information is relevant because "If Plaintiffs lacked authorization, the notice is false based on the express representation contained therein." *Id.* Plaintiffs do not specifically address RFP 97, but it appears that their arguments with regard to Charter's counterclaim-related discovery, generally, apply to each request at issue.  For the reasons outlined with regard to RFP 96, above, I find that the probative value of the information sought outweighs the potential burden on Plaintiffs of producing such information.  Whether the Plaintiffs owned or had authorization to send notices relating to the Dropped Works is basic information that Charter will need to support its counterclaim.  Further, Plaintiffs have alleged that Charter received "hundreds of thousands of notices."  Charter is therefore entitled to discover information necessary to respond to this claim.  As with RFP 96, Plaintiffs argue that they will be burdened by collecting and producing chain of title and ownership documents.  This alone does not render Plaintiffs' burden undue.  Furthermore, the burden on each individual Plaintiff appears minimal: "the Universal Music Group dropped 209 sound recordings (as compared to the 2,156 they currently assert), Sony Music Entertainment dropped 38 sound recordings (as compared to the 3,306 they currently assert), and Warner Music Group dropped 21 sounds recordings (as compared to the 1,501 they currently assert)." Def. Mot. at 3.  If Plaintiffs determine that the costs of producing the

documents is significant, they can request an order to require Charter to pay the costs of the production.

**With regard to RFP 97, Charter's motion to compel is granted. Plaintiffs shall produce documents responsive to this request on or before December 18, 2020 unless Judge Jackson enters an order on the motion to dismiss prior to this date.**

*4.  RFA 4*

Charter's RFA 4 states: "Admit that You do not currently own or otherwise possess an exclusive right under the Copyright Act for one or more of the Dropped Works."  Charter argues that "Plaintiffs' lack of ownership or possession of an exclusive right may explain Plaintiffs' reason for dropping the works.  Thus, this information is relevant to Charter's counterclaims." Def. Mot. at 5.  Plaintiffs argue, however that whether Plaintiffs currently own or control rights in the works is not relevant because "[t]o establish an entitlement to sue on a particular work, Plaintiffs need not show they *currently* own that work, only that they owned or had rights to it *at the time it was infringed*." Pl. Opp. at 5.

Based on a review of Charter's counterclaims, I find that the requested information is not relevant to any claims or defenses in this case and it therefore lacks probative value.  In asserting its counterclaim, Charter specifically alleges that "during the Claim Period, the Record Company Plaintiffs sent notices to Charter that contained inaccurate information…" ECF 165 ¶ 153.  Charter further alleges that "During the Claim Period, Charter received notices from the Record Company Plaintiffs that it could not verify. Specifically, Charter could not verify whether any of the Plaintiffs owned or controlled the work identified in the notice." *Id.* ¶ 157.  Given the claims at issue in this

case, whether Plaintiffs *currently* have an ownership interest in one of the Dropped Works does not appear to be relevant.

**With regard to RFA 4, Charter's motion to compel is denied.**

*5.  RFA 5*

Charter's RFA 5 states: "Admit that during the time You sent, or authorized to have sent, Notices of Alleged Infringement for the Dropped Works, You did not own or otherwise possess an exclusive right under the Copyright Act for one or more of the Dropped Works."  Charter argues that "RFA 5 seeks an admission as to whether Plaintiffs owned or possessed an exclusive right to the Dropped Works during the period of time notices were sent.  Plaintiffs' response to this request may foreclose the need to conduct extensive document and deposition discovery to get at this basic information."  Def. Mot. at 6. Rule 36 allows a party to serve a written request to admit "the truth of any matters within the scope of Rule 26(b)(1)." Fed. R. Civ. P 36.  For the reasons outlined above, I find that the information sought is probative of an issue directly relevant to claims and defenses asserted in this matter.  That the Plaintiffs have not already gathered the requested information is not dispositive.  For these reasons, and for the reasons outlined with regard to RFP 96, I find that the information sought is relevant under the standard set forth in Rule 26. Charter is entitled to a verified admission or denial of the statement at issue.

**With regard to RFA 5, Charter's motion to compel is granted.**

*6.  RFA 6*

RFA 6 states: "Admit that during the time You sent, or authorized to have sent, Notices of Alleged Infringement for the Dropped Works, You lacked authorization to do so for one or more

of the Dropped Works." Charter argues that "RFA 6 is distinct from RFA 5 to the extent that it seeks an admission as to whether Plaintiffs were authorized to send the notices (as opposed to whether they owned or possessed an exclusive right to the copyright of the work at issue). This distinction is to account for the possibility that Plaintiffs might not have owned the particular work but were nevertheless authorized to send notices regarding it." Def. Mot. at 6. As set forth previously, whether the Plaintiffs owned or had authorization to send notices relating to the Dropped Works is basic information that Charter will need to support its counterclaim. Further, Plaintiffs put these notices at issue when they alleged that Charter received "hundreds of thousands of notices." The information sought is relevant under the standard set forth in Rule 26. Charter is entitled to a verified admission or denial of the statement at issue.

**With regard to RFA 6, Charter's motion to compel is granted.**

**B.  Charter's Discovery Requests Relating To Plaintiffs' Notice Program**

*1.  RFP 98*

Charter's RFP 98 seeks "Documents sufficient to show Your process for verifying the accuracy of the information in Notices of Alleged Infringement before they were sent on Your behalf. For the avoidance of doubt, the term 'information in Notices of Alleged Infringement' is any of the information concerning the allegedly infringed work, any information concerning the alleged infringement, any information concerning the IP address at which the alleged infringement occurred, and any statement that the sender is authorized to send such Notice of Alleged Infringement." Plaintiffs argue that they have already produced documents "detailing the process used by Plaintiffs' vendor, MarkMonitor, to monitor and detect Charter subscribers' downloading

and distributing of Plaintiffs' music, as well as the process for verifying the content of the infringing files downloaded and distributed." Pl. Opp. at 6.

Charter argues that Plaintiffs' proposed response addresses only one piece of Plaintiffs' notices, and that Plaintiffs have not addressed "the portion of Charter's request that seeks information concerning Plaintiffs' processes, if any, for determining that the work identified in the notice is the version that Plaintiffs own or for which they possess an exclusive right, as opposed to being an alternate version." Def. Mot. at 7.

MarkMonitor's process for monitoring and detecting downloads and distributions of Plaintiffs' music is only one aspect of the notice program.  As Charter has pointed out, Plaintiffs' notices contain several different pieces of information: "First, they state that they are sent by the RIAA with the authorization to do so.  Second, they identify a particular work and state that the RIAA has evidence that the internet user identified by IP address infringed that work on a peer-to-peer ("P2P") network.  And third, the notice contains some detail regarding the RIAA's purported observation of the infringing act, including the name and 'hash' number of the torrent file on which the identified work was included, the P2P network through which the file was allegedly shared, and time the observation occurred." Def. Mot. at 7.  These notices form the basis of Plaintiffs' infringement claims. The content of these notices, including information about how the information therein was gathered and verified, is therefore relevant and highly probative.

Plaintiffs' proposed production of documents related to MarkMonitor's process does not sufficiently respond to Charter's request here, nor does Plaintiffs' production of the evidence packages themselves.  MarkMonitor's response to Charter's subpoena *duces tecum* suggests that

many of the documents detailing MarkMonitor's processes are no longer available. *See* ECF 253. So, too, has Charter alleged that Plaintiffs have failed to produce evidence packages relating to approximately 300,000 notices. *Id.* Charter is therefore entitled to probe Plaintiffs' processes for determining that the work identified in the notice is the version that Plaintiffs own.

Given the importance of the notices and the information therein, the probative value of the information sought is high. As such, Plaintiffs would need to demonstrate an incredible burden associated with the production of the information. Plaintiffs have not done so here, instead simply arguing that additional information is unnecessary. I disagree.

Plaintiffs secondarily argue that Charter's request for information relating to the RIAA's authorization to send notices on behalf of Plaintiffs is premature and should be stayed pending resolution of Plaintiffs' motion to dismiss. For the reasons set forth in my September 28, 2020 Order (ECF 251), I find this argument to be unpersuasive.

**With regard to RFP 98, Charter's motion to compel is granted.**

*2. RCP Interrogatory 16*

Charter's RCP Interrogatory 16 states: "Explain in detail the process for selecting the allegedly copyrighted works that were monitored as part of the RIAA Notice Program." Charter argues that this information is relevant because "Charter seeks to investigate when, and for how long, Plaintiffs were monitoring a particular work in order to rebut Plaintiffs' inevitable argument that MarkMonitor only observed a fraction of the infringement occurring on Charter's network, as Plaintiffs only monitored a subset of their millions of copyrights." Def. Mot. at 8. Charter noted that "at the recent trial in *Sony*, Plaintiffs' counsel cross-examined Cox's expert on the point that

he did not know whether a Cox subscriber had stopped infringing or whether MarkMonitor simply stopped monitoring that work," arguing that  "Plaintiffs exploited the absence of this information to argue that the measure of infringement on Cox's network was incalculable." Def. Mot. at 8 n.5. Charter thus argues that it is entitled to understand the frequency with which the works were monitored "to combat Plaintiffs' narrative that the level of alleged infringement is unknowable and thus presumably high." Def. Mot. at 8.

While I agree that Charter is entitled to seek discovery to combat this narrative, RCP ROG 16 does not seek such information.  ROG 16 instead appears to merely seek information about the "process for selecting" the works that were monitored as part of the RIAA program.  While Charter clarifies in its motion to compel that the interrogatory seeks "such details as the duration of [Plaintiffs'] observation of a particular work," that information is simply not sought in the interrogatory itself.  Had Charter served such an interrogatory, I would be inclined to find that the information sought was relevant.  As currently drafted, however, I fail to see the relevance of the information sought in RCP ROG 16.

**With regard to ROG 16, Charter's motion to compel is denied.**

### C.   Charter's Requests Relating To Plaintiffs' Direct Actions Against Charter's Subscribers

*1.  RCP ROG 18*

Charter's RCP Interrogatory 18 states "Describe in detail all actions You have taken directly against the Charter subscribers who You allege infringed the Noticed Works."  Charter argues that the requested evidence will show that "while Plaintiffs took pains to collect this information through the RIAA and MarkMonitor specifically so that they could sue the users—

directly—Plaintiffs took no such action." Def. Mot. 10. Charter argues "Specifically, this information is relevant to Plaintiffs' mitigation efforts, which informs the question of Plaintiffs' actual damages—a factor the jury can consider when determining a just amount of statutory damages." Def. Mot. at 10. I have already considered whether mitigation is a proper defense in the face of statutory damages and determined that it is not. ECF 181 at 20.

Charter secondarily argues that the information sought is "relevant context for the jury." Def. Mot. at 10. Charter argues that "Plaintiffs will likely argue to the jury that P2P infringement was a global scourge that decimated Plaintiffs' businesses, and that it was the ISPs who should have stopped it. Plaintiffs were *also* in the position to help reduce infringement, but instead chose to hold back to pursue the more lucrative action of a mass copyright infringement action against the ISPs." Def. Mot. at 10. While the information sought may provide some context for the jury, I find that the probative value of the information sought is minimal, and it is likely outweighed by Plaintiffs' burden of responding to the Interrogatory. Further, my order with regard to RFAs 7-10, *infra*, obviates the need for the potentially burdensome discovery sought here.

**With regard to RCP ROG 18, Charter's motion to compel is denied.**

2. *RFAs 7-10*

Charter's RFAs 7-10 are as follows:

**RFA 7**: Admit that You did not initiate a federal lawsuit for copyright infringement against any of the Charter subscribers who were subject to the Notices of Alleged Infringement;

**RFA 8**: Admit that You did not initiate a federal lawsuit for copyright infringement against any Charter subscriber during Plaintiffs' Claim Period;

**RFA 9**: Admit that You did not initiate a federal lawsuit for copyright infringement against any Charter subscriber from 2010 through present; and

**RFA 10**: Admit that You did not send a "cease and desist" letter to any Charter subscriber relating to allegations of copyright infringement from 2010 to present.

Charter argues that "For the same reasons outlined [with regard to RCP ROG 18] Plaintiffs should be compelled to respond to these requests for admission, as they each seek basic admissions as to Plaintiffs' actions, if any, taken against Charter subscribers." Def. Mot. at 11.  As previously stated, courts in this district have established that mitigation is not a valid defense in the face of statutory damages.  However, the information sought is probative as context for the jury.  Further, the burden of responding to RFAs 7-10 is minimal, as these RFAs seek simple and straightforward admissions regarding actions taken by the Plaintiffs.  I find that the information sought meets the low standard for relevance set forth in Rule 26, and that the probative value of this information outweighs the minimal burden on Plaintiffs of responding to these requests for admission. Admissibility will of course be determined by the trial court.

**With regard to RFAs 7-10, Charter's motion to compel is granted.**

## IV.   PLAINTIFFS' MOTION TO COMPEL

### A.   RFPs 61 and 67

Plaintiffs seek an order requiring Charter to produce documents sufficient to show the meaning of the fields included in the spreadsheet Bates numbered CHA_00063488, which it created in response to the Special Master's order on RFP 61.  Plaintiffs argue that the spreadsheet produced is inscrutable because it contains acronyms and jargon unique to Charter. Plaintiffs' Motion to Compel, September 2, 2020 ("Pl. Mot.").  Plaintiffs argue that "Charter created the spreadsheet at issue in response to the Special Master's order, (Pl. Mot. at 1) and that "Charter has failed to abide by that order if the spreadsheet is incomprehensible." *Id.*  Plaintiffs secondarily

argue that Plaintiffs' RFP 67 specifically seeks this information. RFP 67 seeks "Documents sufficient to show the meaning of each action, code, field, or definition used in the 'ticket log' data produced or to be produced by you in this action."

Charter argues that Plaintiffs' demand for a key corresponding to the non-copyright abuse report is beyond the scope of RFP 67. Defendant's Opposition to Plaintiffs' Motion to Compel, September 10, 2020 ("Def. Opp."). To support this argument, Charter details the difference between "ticket log" data, as referenced in RFP 67, and the Acceptable Use Policy violation data ("AUP data"), sought in RFP 61. Therefore, while RFP 67 does seek documents sufficient to show the codes used in the ticket log data, that request does not cover codes used in the AUP data. Notwithstanding that RFP 67 does not call for the requested information, Charter argues that it nonetheless does not maintain such a key.

First, upon review of Plaintiffs' discovery requests and the parties' discussion relating to the "ticket log" data (Def. Opp. at 1-2), I agree with Charter that RFP 67 does not specifically call for the requested information. However, this is the kind of dispute that elevates form over substance and prolongs the pain of discovery. Charter does not contend that Plaintiffs are not entitled to understand the different acronyms used in the spreadsheet. Instead, it argues that it should not be required to prepare a key document or otherwise provide a key as part of its response to this request for production. While Charter may technically be correct that it should not be compelled to prepare a document, which does not already exist, it is clear that the spreadsheet will be the subject of deposition testimony. It seems pointless to require expenditure of time during deposition to identify basic acronyms. Nonetheless, I decline to compel Charter to prepare a key document. However, the parties must meet and confer in good faith to determine whether there is

basic information that can be provided to spell out acronyms which are not clear.  Questions regarding the meaning of particular acronyms should be dealt with in deposition, but questions regarding basic acronyms and what they stand for should be discussed during the meet and confer to provide such basic information to the extent possible.

**With regard to RFPs 61 and 67, Plaintiffs' request for a key is denied.**

**B.  RFP 81**

Plaintiffs' RFP 81 seeks "Documents reflecting any efforts or action taken by Charter to determine whether any of its Subscribers had been 'adjudicated to be a repeat infringer,' (see Charter's Submission Regarding its Affirmative Defenses at 13, ECF No. 160), including all documents concerning Charter's (i) criteria for determining whether a Subscriber had been 'adjudicated to be a repeat infringer,' (ii) protocols for identifying any Subscriber that had been 'adjudicated to be a repeat infringer,' (iii) notations in CATS or any other internal tracking system evidencing that any Subscriber had been 'adjudicated to be a repeat infringer,' (iv) internal communications concerning whether any Subscriber had been 'adjudicated to be a repeat infringer,' and (v) communications with Subscribers suspected of having been, or deemed to have been, 'adjudicated to be a repeat infringer.'"

Charter seeks to narrow the scope of RFP 81, limiting its responses to subsets (iii), (iv), and (v) of the request to the Accused Subscribers. Def. Opp. at 4.  Charter argues that broadening the scope of RFP 81 to include every subscriber would directly contradict my prior order "limiting the production of work log notes to those that correspond with Plaintiffs' notices and a subset of third party notices identifying the Accused Subscribers." Def. Opp. at 4-5. I disagree.  During the

hearing on July 2, 2020, I considered Plaintiffs' request for work log notes relating to all RIAA notices plus notices for any subscriber who received three or more notices. Charter represented to me that such a request would implicate over 18 million tickets. Given the volume of information that the request would pull, and given that the request was not limited in any way by the substance of the work log notes, I ordered that the ticket data produced be limited to the Accused Subscribers. July 2, 2020 Tr. at 23-30. I did not, however, indicate that Plaintiffs were foreclosed from seeking discovery relating to subscribers other than the Accused Subscribers. Indeed, Charter's invocation of the Safe Harbor defense puts at issue its actions relating to all subscribers. My ruling on July 2 was aimed at ensuring that the discovery sought was proportional to the needs of the case.

Unlike Plaintiffs' request with regard to all work log notes, RFP 81 is specifically limited to "notes evidencing that [a] subscriber had been 'adjudicated a repeat infringer.'" Thus, RFP 81 is specifically targeted at the relevant information. While there is always some burden associated with responding to discovery requests, I find that the burden of the proposed discovery does not outweigh its probative value here, where the application of Charter's copyright policies is central to its Safe Harbor defense.

Charter also argues that the information sought is duplicative because it has already agreed to produce documents sufficient for Plaintiffs to understand Charter's repeat infringer policy. I disagree. As opposed to seeking information about the policies themselves, Plaintiffs here are seeking to understand how those policies were actually implemented. The implementation of Charter's policies is relevant.

With regard to RFP 81, Plaintiffs' motion is granted. Charter shall produce documents responsive to RFP 81 by October 30.

### C. Documents On Which Charter Relied To Respond To ROGs 13 and 14

Plaintiffs here seek an order requiring Charter to produce the documents on which it relied to answer Plaintiffs' Interrogatories 13 and 14. These interrogatories seek "the number of Infringement Notices [Charter] received each month from January 1, 2010 through May 17, 2016" and "the number of Customer Facing Actions, by Customer Facing Action, [Charter] took each month from January 1, 2010 through May 17, 2016 in response to the Infringement Notices identified in response to Interrogatory No. 13."

Based on the evidence before me, it appears that Charter initially responded to Plaintiffs' interrogatories, but failed to include data for the month of August 2015. Pl. Mot. Ex. 4.  Charter then amended its response to include the missing data.  Plaintiffs do not allege that Charter has failed to respond to Interrogatories 13 and 14, nor do they allege that the responses are insufficient.

Instead, Plaintiffs argue that Charter should be ordered to produce the documents that it relied on to respond to Interrogatories 13 and 14.  Charter has represented that the "source documentation is a report containing summary statistics regarding all types of complaints processed in CATS, which contains a vast array of information that far exceeds the scope of the case, for example summary statistics concerning threat and harassment tickets, virus tickets, spam tickets, Ddos attack tickets, and all the other types of abuses an ISP must deal with, in addition to copyright tickets." Def. Opp. at 7.

Plaintiffs argue that such documents are responsive to Plaintiffs' RFPs 24, 26, and 61. Charter argues that the documents are not responsive to any of Plaintiffs' requests.

**For the reasons that follow, Plaintiffs' motion to compel the source report in its entirety is denied. However, I find that the information relied upon by Charter to respond to Interrogatories 13 and 14 is relevant and should be produced. Charter is therefore ordered to produce the source report, but it may redact the portions of the report that are not responsive to RFP 61 or that were not relied upon by Charter to respond to Interrogatories 13 and 14.**

*1. RFP 24*

Plaintiffs' RFP 24 seeks "All documents on which you rely in responding to Plaintiffs' Interrogatories." In responding to RFP 24, Charter limited its production, agreeing to produce only the documents relied upon pursuant to Rule 33(d). Def. Opp. at 8. Charter represents that Plaintiffs placed the same limitation on a near-identical document request. Def. Opp. at 8. Charter represents that it provided complete narrative responses to Interrogatories 13 and 14 and did not rely on Rule 33(d) in any way. Therefore, Charter argues that it is not obligated to produce the source report. I agree.

In responding to RFP 24, Charter explicitly stated that it would produce documents in accordance with Rule 33(d). Rule 33(d) allows for the production of documents in lieu of providing a narrative response to an interrogatory. Plaintiffs did not challenge Charter's response to RFP 24, and indeed imposed a similar limitation on their production of documents relied on in responding

to Plaintiffs' interrogatories.  Plaintiffs' RFP 24 therefore does not obligate Charter to produce the source report.

### 2.  RFP 26

RFP 26 seeks "All documents relating to CATS, including documents describing the technical abilities of the CATS system to track abuses of any copyright infringement-related policy by its users, or otherwise track or process notices of infringement, the source code implementing CATS, all versions of the CATS Abuse Automation System Implementation Plan, all communications between You and Cox regarding CATS, and documents reflecting your actual use of the CATS system to track abuses of any copyright infringement-related policy by your users." Charter objected to RFP 26 as overbroad and agreed to produce only "manuals for CATS" and to make "responsive, non-privileged versions of the CATS source code available for inspection." Pl. Mot. Ex. 13.  Plaintiffs did not challenge these objections.  Given Charter's objections, Charter is not obligated to produce the source report in response to RFP 26.

### 3.  RFP 61

RFP 61 seeks "All documents or communications distinguishing, differentiating, or otherwise comparing Charter's responses to violations of its Acceptable Use Policies for reasons other than copyright infringement (including for hacking or spamming) to its responses to violations of those policies on the basis of copyright infringement."  In its argument regarding RFP 61, Plaintiffs made clear that the request specifically sought information showing the actions taken by Charter in response to non-copyright violations so that they could compare, for the jury, the actions taken in response to copyright versus non-copyright violations. May 18, 2020 Tr. 73:13-

75:1.  Thus, in my May 29 Order, ECF 181, I found that Plaintiffs' request for "all documents and communications" was overly broad, but I ordered Charter to produce  "CATS data providing information regarding Charter's actions taken in response to different categories of abuse." ECF 181 at 30-31.  I specified that Charter was to provide a report that "summarizes the non-copyright AUP violations by type and by total number of actions taken in response to each category of AUP violation." *Id.* at 31 n.5.

Plaintiffs have represented that Charter has only provided data in response to RFP 61 starting in 2014.  Plaintiffs argue that Charter's response to Interrogatory 14 includes information before 2014.  The source report may, therefore, provide Plaintiffs with additional information regarding Charter's actions during the relevant time period.  At least some of the information contained in the source report is relevant, as evidenced by the fact that Charter relied on the document in its response to Plaintiffs' interrogatories.  Further, I find that the information relied upon by Charter is likely responsive to RFP 61, particularly given that it may provide Plaintiffs with information predating 2014, which Charter has not yet provided.  There is little, if any, burden associated with producing the document, as it has already been identified and reviewed by Charter when preparing its responses to the interrogatories.

While Plaintiffs have established the relevance and probative value of the information relied upon by Charter, they have not established the relevance of the additional information contained in the source report, nor have they identified a request to which this additional information is responsive.

**Charter is therefore ordered to produce, on or before October 20, 2020, the source report, but it may redact any information that is not responsive to RFP 61 or that was not relied upon by Charter to respond to Interrogatories 13 and 14.**

### D.  <u>RFP 83</u>

Plaintiffs' RFP 83 seeks "[d]ocuments concerning the use of virtual private networks ("VPNs") by Charter's Subscribers or Users to avoid detection of copyright infringement." Plaintiffs argue that they served the request "to ascertain the extent to which Charter was aware of its subscribers' use of VPNs to avoid detection, and whether it took any steps to investigate repeat infringers that accounted for these obfuscating tactics." Pl. Mot. at 9.  Charter seeks to limit its response to the request to the Accused Subscribers, arguing that the request, as written, would require Charter to review "all of the documents associated with every subscriber." Def. Opp. at 9. Charter argues that any mention of "VPN" would exist in the work log notes Charter has already produced.  Additionally, Charter argues that it "will be producing its internal correspondence concerning any copyright notices [it] received as well as additional communications with subscribers, beyond those identified in Plaintiffs' notices.  This documentation will necessarily include any discussion of VPNs, to the extent any such communications exist." Def. Opp. at 9.

Plaintiffs argue that they are entitled to responsive documents that concern "any of Charter's subscribers, or no specific subscribers at all." Pl. Mot. at 9-10.  "If, for example," Plaintiffs argue, "Charter created a report describing generally how its subscribers use VPNs to avoid detection for infringement, but it nevertheless did not try to curb improper use of VPNs, that would be highly probative evidence related to whether Charter reasonably implemented a repeat infringer policy." Pl. Mot. at 10.

On the record before me, I find subscriber use of VPNs to be of only marginal relevance to the claims at issue here.  While a document such as the hypothetical one Plaintiffs propose may be of some possible relevance to Plaintiffs' claims, it appears that such relevance is attenuated and speculative such that it does not overcome the burden identified by Charter of "searching every communication."  Further, it is likely that the information Plaintiffs seek may already be contained in other documents produced or soon to be produced by Charter.  Charter has represented that the work log notes and internal correspondence that it has already agreed to produce would include discussions of VPNs, to the extent that those discussions exist.  Given the marginal probative value of the information sought, I decline to order the production of additional documents at this time.  If, upon review of the materials produced by Charter, Plaintiffs uncover evidence suggesting that additional relevant and non-cumulative documents exist, Plaintiffs can seek to compel production at that time.

**With regard to RFP 83, Plaintiffs' motion to compel is denied.**

### E.  RFP 84

Plaintiffs' RFP 84 seeks "Communications between Charter and any current or former Charter Subscriber regarding 'Charter's intent to disclose their name and contact information pursuant to [the] Order' Regarding Personal Identifying Information in this case (ECF 182).  For clarity, this request includes any communications sent or received by Charter's outside or in-house counsel."  Plaintiffs represent that the scope of this request has been narrowed to seek only "the form outgoing letter that Charter sent to 787 subscribers notifying them of Charter's intent to disclose their personal identifying information." Pl. Mot. at 10.

Plaintiffs argue that they are "entitled to know how Charter has characterized the claims and defenses to the very subscribers whose infringement is at issue." Pl. Mot. at 11. I fail, however, to see how this information is relevant, and Plaintiffs have not cited to any caselaw suggesting that such post-suit behavior is relevant. The information sought fails to meet even the low bar set forth in Rule 26.

**With regard to RFP 84, Plaintiffs' motion to compel is denied.**


Dated this 8th day of October, 2020                    BY THE SPECIAL MASTER:


                                                       _/s/ Regina M. Rodriguez_
                                                       Regina M. Rodriguez
                                                       Special Master