IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** ***et al.*,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

      Defendant.

---

**MOTION TO COMPEL PRODUCTION OF ALL DOCUMENTS RELATED TO
CHARTER'S SPOLIATION LISTED ON CHARTER'S PRIVILEGE LOG OR
OTHERWISE WITHHELD ON THE BASIS OF PRIVILEGE**

---

**TABLE OF CONTENTS**

FACTUAL BACKGROUND .......................................................................................... 2

I.    Charter reveals it destroyed a large amount of relevant evidence. ...................................... 3

II.    Charter's counsel claims its investigation showed the spoliation was inadvertent, but refuses to produce underlying documents. .................................. 4

III.    Charter relies on its self-serving narrative before the Court to oppose spoliation-related discovery. ......................................................................... 5

IV.    Charter produces only 19 internal emails and no documents from the time period of the spoliation, while withholding over 800 documents concerning issues on which Charter's counsel made detailed representations. .................................... 7

ARGUMENT ............................................................................................................... 8

I.    Charter's use of privileged information as both a sword and a shield waives attorney-client privilege and work-product protection over the spoliation-related documents Charter has withheld. .................................................... 9

    A.    Courts regularly hold that disclosing investigation findings waives privilege and work-product protection over both the subject of the investigation and the investigation. .................................................... 9

    B.    Charter has waived privilege and work-product protection by making detailed representations about its spoliation while withholding the documents Plaintiffs requested regarding those representations. ........................ 12

    C.    The documents Charter is withholding speak directly to whether Charter's spoliation merits sanctions under Rule 37. ......................................... 13

II.    Charter must produce its work product concerning spoliation because Plaintiffs have a "substantial need" for this information and cannot obtain it through other means. ............................................................................................ 15

CONCLUSION ........................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Asten v. City of Boulder*,
  No. 08-cv-00845-PAB-MEH, 2010 WL 2612673 (D. Colo. June 29, 2010) .........................16

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) .................................................................................................15

*Chevron Corp. v. Stratus Consulting, Inc.*,
  No. 10-cv-00047-MSK-MEH, 2010 WL 3923092 (D. Colo. Oct. 1, 2010)............................9

*In re Delta/AirTran Baggage Fee Antitrust Litig.*
  846 F. Supp. 2d 1335 (N.D. Ga. 2012) .............................................................................9, 10

*In re Delta/AirTran Baggage Fee Antitrust Litig.*
  No. 1:09-md-02089, 2012 WL 12887089 (N.D. Ga. June 20, 2012) ..................................9, 10

*Frontier Ref., Inc. v. Gorman-Rupp Co.*,
  136 F.3d 695 (10th Cir. 1998) .................................................................................................9

*Gruss v. Zwirn*,
  No. 09 Civ. 6441 (PGG)(MHD), 2013 WL 3481350 (S.D.N.Y. July 10, 2013)....................11

*Henderlong v. Allstate Ins. Co.*,
  No. 08-cv-01377-CMA-MEH, 2009 WL 82493 (D. Colo. Jan. 13, 2009)............................16

*In re Kidder Peabody Sec. Litig.*,
  168 F.R.D. 459 (S.D.N.Y. 1996) ...........................................................................................11

*In re Martin Marietta Corp.*,
  856 F.2d 619 (4th Cir. 1988) ..................................................................................................10

*In re OM Sec. Litig.*,
  226 F.R.D 579 (N.D. Ohio 2005). .....................................................................................11, 12

*Resolution Trust Corp. v. Heiserman*,
  151 F.R.D. 367 (D. Colo. 1993) .............................................................................................16

*Sony Music Entm't v. Cox Commc'ns, Inc.*,
  No. 1:18-CV-950-LO-JFA, 2020 WL 3121306 (E.D. Va. June 2, 2020) ..............................15

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC,*
    384 F. Supp. 3d 743 (W.D. Tex. 2019)........................................................................15

*United States v. Billmyer,*
    57 F.3d 31 (1st Cir. 1995)................................................................................10, 11

**Statutes**

Fed. R. Civ. Proc. 26.........................................................................................8, 16

Fed. R. Civ. Proc. 37................................................................................... passim

Fed. R. Evid. 502 ............................................................................................8, 13

**Other Authorities**

Moore's Manual—Federal Practice and Procedure (2019). .........................................14

There is no dispute that Charter deleted hundreds of thousands of potentially relevant documents from more than a dozen key custodians in this case.  Nor is there any dispute that Charter knew it was obligated to preserve those documents.  But serious questions remain about (i) whether Charter ever attempted to preserve those documents *for this case*, (ii) the steps (if any) Charter took to do so, and (iii) the circumstances surrounding Charter's deletion of evidence in 2018.  Charter claims it had a litigation hold in place that covered this case, and that its massive destruction of evidence was "inadvertent."  But Charter has refused to produce the documents that would support or contradict its narrative, concealing the facts on a privilege log that dwarfs the size and scope of its underlying production on these issues.

The Court should compel Charter to divulge the full truth underlying its deletion of the majority of emails relevant to this case.[1]  Plaintiffs anticipate that Charter's admitted spoliation will necessitate a motion for sanctions under Fed. R. Civ. Proc. 37(e), but the parties cannot fully brief that issue without a complete record of the evidence that supports or repudiates Charter's claims.  *This* motion, therefore, seeks to discover the critical facts that Charter has self-servingly described to support its argument that its destruction of evidence was "inadvertent" but has simultaneously withheld through privilege assertions.  Charter cannot have it both ways.  Advancing a self-serving narrative while withholding the "privileged" documents on which that

---

[1] The Court should consider this motion in light of Magistrate Judge Hegarty's statement that he is taking jurisdiction "[o]ver the privilege logs" for this case.  *See* Kamin Decl. Ex. 15 at 227:4.  The Court's review is especially appropriate because this motion concerns a critical, time-sensitive issue.  Plaintiffs were granted leave to take spoliation-related discovery over four months ago, but Charter has stalled progress by refusing to produce key documents over which it is improperly claiming privilege.  The parties need to quickly resolve this issue so that they can complete spoliation discovery, and in turn, fact discovery (which closes on January 31, 2021, and as the Special Master has recognized, is directly impacted by the results of spoliation discovery, *see id.* Ex. 9 at 19:8–10).

narrative relies is the quintessential use of privilege as a sword and shield.  Indeed, numerous court decisions agree that Charter may not present a favorable narrative based on an internal investigation (including an investigation into spoliation of ESI) while shielding the underlying documents on the basis of privilege.  Accordingly, this Court should order Charter to promptly produce the documents that it has improperly withheld.

## FACTUAL BACKGROUND

In late 2018—after Plaintiffs had given Charter notice of their claims and after similar claims had been filed against Charter's competitors—Charter destroyed more than 700,000 potentially relevant documents.  Kamin Decl. Exs. 8 (Responses 7, 10), 14.[2]  The documents destroyed encompass nearly *all* of the email communications from the majority of document custodians in this case—including Charter employees responsible for handling copyright infringement notices.  *Id.* Exs. 8 (Response 10), 14.  Charter employees' internal communications are the most relevant evidence—in some cases, the only evidence—of Charter's knowledge of, and intent in responding to, Plaintiffs' (and other content owners') notices.  This evidence is critical to assessing Charter's liability for vicarious and contributory infringement, Charter's DMCA safe harbor defense, and Charter's willfulness.

Charter purportedly first discovered the deletion in April 2019, but waited until March 2020 to reveal it to Plaintiffs and the Court.  *Id.* Exs. 2, 3, 8 (Response 2).  Now, despite admitting that it destroyed evidence, Charter refuses to produce the documents that show what actually happened in late 2018, and what Charter's subsequent investigation concluded.  While

---

[2] *See also BMG Rights Mgmt. (US) LLC v. Cox Enters., Inc.*, No. 1:14-cv-1611 (E.D. Va.; filed 11/26/14); *Sony Music Entm't v. Cox Commc'ns Inc.*, No. 1:18-cv-00950 (E.D. Va; filed 7/31/18).

Charter's counsel claims to have investigated the destruction for at least nine months, and has repeatedly referred to that investigation in arguing to Plaintiffs, the Special Master, and the Court that the destruction was "inadvertent" and "minimal," Charter has refused to produce documents that will substantiate its claims.  *Id.* Exs. 2, 8 (Response 2); ECF No. 174.

Recognizing the gravity of the issue, the Special Master ordered that Plaintiffs were permitted to take spoliation-related discovery.  ECF No. 176.  But, in response to Plaintiffs' spoliation-related discovery requests, Charter has ***withheld as privileged more documents concerning its spoliation than it has actually produced***: it produced only 622 assertedly responsive documents while shielding 820 documents.  *Id.* ¶ 2, Ex. 13.  Moreover, it appears Charter opted to not even log many of the responsive documents over which it is claiming privilege.  Notably absent from Charter's privilege log are contemporaneous communications with its outside counsel regarding its document preservation or destruction, as well as its outside counsel's notes, memoranda, and internal communications from their 2019 investigation.

## I.    Charter reveals it destroyed a large amount of relevant evidence.

Nearly a year into the case and nine months into discovery, Charter revealed at a March 4, 2020 discovery conference that it had "become aware of some e-mails lost by [the company]." *Id.* Ex. 3 at 12:1–2.  Charter had learned of the loss *11 months earlier*, but waited to reveal it purportedly because of the "substantial time" it took to investigate the loss, and because Charter claimed it was "unclear" whether Plaintiffs would seek custodian-based ESI (despite the fact that Plaintiffs' initial discovery requests sought such information).  *Id.* Exs. 1, 8 (Response 3).

After the conference, Charter's outside counsel sent Plaintiffs a letter stating that their firm had conducted an "investigation into th[e] [loss of emails]" and determined that this loss

was "inadvertent," that this loss is "minimal as to evidence material to this action" and, in fact, "millions of messages are still available from which to search for responsive and relevant information in discovery." *Id.* Ex. 2.  The letter claimed that, when Charter transitioned to new platforms for its email archive and legal hold systems in 2017 and 2018, it "engaged in a clean-up" of its email archives.  *Id.*  During this "clean-up," Charter claims it "inadvertently" deleted all preserved emails for the majority of custodians in this matter, including employees who were responsible for handling copyright infringement notices.  *Id.*

Charter admitted that the clean-up was "immediate, automatic, and . . . unrecoverable." *Id.*  Although Charter insisted that any resulting prejudice to Plaintiffs was minimal because Charter preserved emails *for other matters* that might also be relevant to this case and could serve as "replac[ements]," Charter failed to describe the number of messages it had deleted.  *See id.*  Nor did Charter identify the document custodians from which it obtained the purported replacement emails, nor indicate that those custodians would have sent or received emails related to Plaintiffs' copyright infringement issues in this case.  *See id.*

## II.     Charter's counsel claims its investigation showed the spoliation was inadvertent, but refuses to produce underlying documents.

Over the next six weeks, Plaintiffs submitted thirty-two detailed questions to Charter about its spoliation.  *Id.* Exs. 4, 7.  While Charter's counsel responded to most questions, its responses were entirely attorney narrative without supporting documentation.  *See id.* Ex. 8.

Moreover, the answers that Charter's counsel did provide raise serious questions as to Charter's conduct and its claims that its data destruction was "inadvertent" and "minimal":

- Charter never instituted a legal hold in response to Plaintiffs' 2016 letter asserting claims. Charter claims it relied on a legal hold instituted for an unrelated claim by a different rightsholder entered months earlier.  *Id.* Ex. 8 (Response 18).

- At some unknown time between April 2017 and January 2018, Charter removed the above-referenced legal hold during a "manual" transfer of its legal holds to Charter's new legal hold management vendor. *Id.* Ex. 8 (Response 8).

- In December 2018, Charter deleted all of the data held in its email archive platform for 19 of the 30 document custodians in this case. *Id.* Exs. 8 (Response 8), 14.

- No copies of the lost data were saved by Charter's current or former ESI archive vendors, the hard drives used to transfer data between those vendors have been wiped, and there are no backups. *Id.* Ex. 8 (Response 15).

In its responses, Charter's counsel also identified investigative steps it claims it took during its nine-month investigation, and on which its responses relied, such as consulting with Charter's eDiscovery vendors and interviewing several Charter employees on issues related to the document deletion. *Id.* Ex. 8 (Responses 15, 16). Charter claims to have provided information gleaned from these interviews in response to Plaintiffs' questions. *Id.*

## III.    Charter relies on its self-serving narrative before the Court to oppose spoliation-related discovery.

To uncover the facts, Plaintiffs moved for expedited document discovery regarding Charter's spoliation. ECF No. 167. Charter's publicly-filed brief in opposition echoed the representations made to Plaintiffs, claiming that a "thorough investigation into [the] causes and scope" of the destruction "revealed that Charter took reasonable steps to preserve for litigation information that might be relevant to Plaintiffs claims." ECF No. 174 at 4. Charter's filing recounted the same narrative regarding the destruction it told Plaintiffs and attached the same letters it sent Plaintiffs about the data destruction, as well as an attorney declaration regarding Charter's ESI review. *Id.* at 4–6; *see also* ECF No. 174-1.

Recognizing the need to uncover the facts, the Special Master endorsed a plan whereby Charter would produce documents in response to twenty-five RFPs on an expedited basis and

Plaintiffs would take a Rule 30(b)(6) deposition on Charter's email deletion, outside of the discovery limits.  ECF No. 176.[3]

Plaintiffs' RFPs principally addressed the specific assertions in Charter's counsel's letters concerning the spoliation and frequently cited or quoted Charter's letters.  Kamin Decl. Ex. 10.[4] Charter agreed to produce all responsive documents for only three of Plaintiffs' twenty-five RFPs—which turned out to be just one document.  *Id.* Exs. 10–12.  For the other RFPs for which Charter claimed to have responsive documents, Charter withheld the documents on the basis of privilege.  *Id.*

When the parties conferred, Charter proposed a Rule 502(d) stipulation pursuant to which it would selectively withhold documents on privilege or work-product grounds.  *Id.* Exs. 11–12. In other words, Charter wanted to pick which privileged documents to produce and which it could hide from discovery.  Plaintiffs rejected Charter's proposal.  *Id.* Ex. 14 (7/19/20 M. Kamin Email).  Charter subsequently indicated that it would produce only non-privileged documents, along with a privilege log.

---

[3] Plaintiffs sought the right to take depositions of fact witnesses.  The Special Master indicated that Plaintiffs should first attempt to obtain responses from a designated Rule 30(b)(6) witness, after which Plaintiffs could seek follow up fact depositions if appropriate.  ECF No. 176.

[4] For example, Charter asserted that, in connection with this matter, it relied on an existing legal hold for another matter dating from December 2015.  RFP 7 therefore requested "Documents sufficient to show the manner in which 'the existing December 2015 hold' (as that phrase is used in response to Question 18 in the 4/14/2020 J. Rosenthal Letter) was recorded, saved, displayed and/or described in Salesforce.com and Legal Hold Pro, respectively, at any and all points in time, including with respect to the nine custodians whose data was deleted. (*See* 4/14/2020 J. Rosenthal Ltr.)."  Kamin Decl. Ex. 10.

**IV.    Charter produces only 19 internal emails and no documents from the time period of the spoliation, while withholding over 800 documents concerning issues on which Charter's counsel made detailed representations.**

In response to Plaintiffs' spoliation-related RFPs, Charter produced 622 non-privileged documents while producing a privilege log listing 820 documents. *Id.* ¶ 2, Ex. 13.[5]  Charter neither produced nor logged communications with outside counsel contemporaneous to Charter's receipt of Plaintiffs' claim letter, the (failed) document preservation and destruction, nor any notes, memoranda, and internal communications from its outside counsel's investigation.  These omissions from the log indicate that Charter has not logged all documents it is withholding on the basis of privilege.

Of the limited documents Charter did produce, only 19 are internal Charter emails and attachments.  *Id.* ¶ 3.  Moreover, the emails that Charter produced (both internal and external) end in October 2018, *id.* ¶ 4—*two months before Charter says it deleted its data for this case, and six months before it discovered the deletion*.  Charter has not produced a single contemporaneous internal document regarding the deletion, nor has it produced *any* documents regarding how the deletion was discovered.  The substantial majority of Charter's production (559 documents) are external emails involving Charter and its eDiscovery vendors, and concern technical aspects of Charter's transfer of its email archive and legal hold management platforms. *Id.* ¶ 3.  The remaining documents include a handful of policies, organizational charts, and stand-alone records.  *Id.*

---

[5] The Court already ruled that the privilege log Charter produced for its non-spoliation-related documents was insufficient and ordered Charter to produce a revised log.  Kamin Decl. Ex. 15 at 219:10–15; ECF No. 242.  Charter's privilege log for its spoliation-related documents suffers from similar flaws, yet Charter has not yet revised it to comply with this Court's order.

Crucially absent from Charter's production are most of the underlying documents Charter relied on for its spoliation narrative, all of which Plaintiffs have requested in discovery.  *See* Appendix (complete list of Charter's spoliation investigation representations and related document requests).  For example, Charter has refused to produce documents regarding its representation that its "December 2015 hold encompassed the scope of the record potentially relevant to Plaintiffs' notice in March of 2016, so another hold was not issued."  *See* Kamin Decl. ¶ 5; Exs. 8 (Response 18), 10 (RFP 6), 11, 12.  Nor has Charter produced documents regarding its claim that in April 2019 it "first became aware that certain custodians subject to the relevant legal hold did not appear to be on active hold."  *See* Kamin Decl. ¶ 5; Exs. 8 (Response 2), 10 (RFP 16), 12.

## ARGUMENT

Charter intentionally disclosed its attorneys' findings to support a favorable narrative about its ESI spoliation.  Charter cannot now shield the documents relating to those disclosures with selective claims of privilege and work-product protection.  *See* Fed. R. Evid. 502(a).  As courts consistently require in these circumstances, Charter must produce all documents underlying and bearing on its self-serving representations and allow Plaintiffs to test the accuracy of its claims.  The evidence Charter is withholding speaks directly to the elements of Federal Rule of Civil Procedure 37(e) that delimit potential sanctions for Charter's conduct.  Furthermore, Charter must produce relevant work product because Plaintiffs have a "substantial need" and cannot obtain the information through other means.  Fed. R. Civ. Proc. 26(b)(3)(A).

I.     **Charter's use of privileged information as both a sword and a shield waives attorney-client privilege and work-product protection over the spoliation-related documents Charter has withheld.**

    A.     **Courts regularly hold that disclosing investigation findings waives privilege and work-product protection over both the subject of the investigation and the investigation.**

"Where a party injects part of a communication as evidence, fairness demand[s] that the opposing party be allowed to examine the whole picture . . . . [T]he attorney-client privilege cannot be used as both a sword and a shield." *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 3923092, at *10 (D. Colo. Oct. 1, 2010) (Hegarty, J.) (citations and quotations omitted); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998) (applying the sword-shield doctrine in the context of work-product assertions). In determining waiver under the sword-shield doctrine, "[t]he primary inquiry is whether the party claiming privilege will assert the allegedly protected material in aid or in furtherance of its claims or defenses." *Chevron Corp.*, 2010 WL 3923092, at *10.

Courts regularly apply these principles to conclude that revealing the results of an investigation, as Charter has done here, waives privilege and work-product protection as to both the underlying subject of the investigation and the investigation itself. For example, *In re Delta/AirTran Baggage Fee Antitrust Litigation* held that a party waived privilege by disclosing its investigation findings concerning ESI production errors—facts nearly identical to those here. 846 F. Supp. 2d 1335 (N.D. Ga. 2012). In that case, defendant Delta Airlines failed to "upload all of the data from the relevant custodians' hard drives" and search certain "back-up tapes containing documents relevant to th[e] case." *Id.* at 1341-42. Delta represented to the court, based on its auditor's investigation, that it "*inadvertently* failed to search and produce responsive

documents."  Letter from Delta's Counsel at 1 (ECF No. 298), *In re Delta/AirTran Baggage Fee Antitrust Litig.*, No. 1:09-md-02089 (N.D. Ga. Feb. 3, 2012) (emphasis added).  Citing Delta's letter to the court describing the auditor's investigation, which attached attorney declarations and emails related to the investigation, the court held that Delta waived attorney-client privilege and work-product protection over documents related to ***both*** Delta's preservation and production efforts as well as the auditor's investigation.  *In re Delta/AirTran Baggage Fee Antitrust Litig.* No. 1:09-md-02089, 2012 WL 12887089, at *1–2 (N.D. Ga. June 20, 2012).

Other courts have similarly held that a party waives privilege and work-product protection when it discloses findings from an internal investigation.  In *In re Martin Marietta Corp.*, a company submitted a "Position Paper" to the U.S. Attorney that detailed the results of its counsel's investigation and "describ[ed] why [the company] should not face indictment" for fraud.  856 F.2d 619 (4th Cir. 1988).  The court held that this waived privilege over documents "from which the Position Paper statements were derived," including documents supporting the company's representations that "there [wa]s no evidence" that certain employees knew about misconduct and that employees would testify that they did not suspect fraudulent activity.  *Id.* at 623.  The court also held that the company waived work-product protection for its counsel's internal notes and memoranda except for "pure" opinion work product such as "marginal notations" about a witness's suitability to testify at trial.  *Id.* at 625, 626 n.2.

Similarly, in *United States v. Billmyer,* when American Honda Motor Company disclosed to the government "detailed evidence and allegations concerning possible bribes of its employees" elicited during its counsel's investigation, the court held Honda waived privilege and work-product protection over the underlying documents.  57 F.3d 31, 37 (1st Cir. 1995).  The

court recognized that "[a] risk of unfairness is evident where information is provided to one side in a case . . . and then an inquiry into its origin is shielded by a claim of privilege." *Id.* The court wrote that Honda could exclude from its production only its counsel's "commentary on the[] legal implications" of the evidence. *Id.*

Likewise, in *In re OM Sec. Litig.*, the defendant-company effected a subject-matter waiver when it produced a PowerPoint presentation and two spreadsheets that described findings from an attorney-directed internal investigation into inventory accounting issues. 226 F.R.D. 579, 590 (N.D. Ohio 2005). The court found that this was a "substantial, intentional, and deliberate" disclosure, and therefore ordered the defendant to produce "the underlying documents relating to, referred to, or relied upon, in the presentation" to "allow Plaintiff to review the whole picture." *Id.* at 590, 593. It held that it would be "unfair to protect the documents underlying the presentation," even though the defendant represented it was not shielding the information to gain any "tactical advantage in the litigation." *Id.* at 593; *see also Gruss v. Zwirn*, No. 09 Civ. 6441 (PGG)(MHD), 2013 WL 3481350, at *13 (S.D.N.Y. July 10, 2013) (holding that the defendants waived protection for investigation work product through "deliberate[], voluntar[y], and selective[] disclosure to the SEC" in PowerPoint presentations); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470–73 (S.D.N.Y. 1996) (holding that the defendant waived privilege over 85 interview documents by "repeated[ly] inject[ing]" into litigation a report based on those interviews, and whose "truth . . . c[ould] only be assessed by examination of the privileged communication").

**B.    Charter has waived privilege and work-product protection by making detailed representations about its spoliation while withholding the documents Plaintiffs requested regarding those representations.**

Charter has made "substantial, intentional, and deliberate" revelations of attorney-client privileged and work-product material to Plaintiffs and the Court about its spoliation.  *See In re OM Sec. Litig.*, 226 F.R.D. at 591, 593.  Charter's narrative includes select details on a wide range of topics: which employees were involved with the destruction and how; when and how Charter identified the destruction; whether and how Charter purported to have a legal hold in place related to documents for this case; and the availability of backup data from Charter's past or current eDiscovery vendors.  *See* Kamin Decl. Exs 2, 8.

Nevertheless, Charter is withholding virtually all of "the underlying documents relating to, referred to, or relied upon" for its spoliation narrative.  *In re OM Sec. Litig.*, 226 F.R.D. at 590.  As detailed in the Appendix, Charter has refused to produce the documents Plaintiffs requested that concern specific assertions Charter has made, and that would allow Plaintiffs (and ultimately, the Court) to test the accuracy of those assertions.

For example, Charter has not produced any documents in response to Plaintiffs' request regarding Charter's decision that the "December 2015 hold encompassed the scope of the record potentially relevant to Plaintiffs' notice in March of 2016."  *See* Kamin Decl. ¶ 5; Exs. 10 (RFP 6), 11, 12.  Nor has Charter produced any documents in response to Plaintiffs' request regarding Charter's claim that, in April 2019 it "first became aware that certain custodians subject to the relevant legal hold did not appear to be on active hold."  *See* Kamin Decl. ¶ 5; Exs. 10 (RFP 16), 12.  Further, as the cases cited above show, Charter must produce the documents Plaintiffs have requested "concerning any investigations or inquiries regarding 'the cause of the preservation

failure,' [and] 'the availability of sources from which the data might be restored or replaced' . . . including . . . notes or memos from any related interviews or conversations" with the key persons involved.  *See* Kamin Decl. Ex. 10 (RFP 18).

These documents Charter is shielding "ought in fairness to be considered together" with the information Charter has already provided.  *See* Fed. R. Evid. 502(a).  Plaintiffs and the Court need these materials to fully grasp Charter's culpability for destroying ESI, the resulting prejudice Plaintiffs have suffered, and the appropriate remedy under Rule 37(e).  This information must come from the relevant documents, not Charter's self-serving representations.

**C.     The documents Charter is withholding speak directly to whether Charter's spoliation merits sanctions under Rule 37.**

The risk of unfairness from selectively shielding documents that the sword-shield doctrine is designed to address is especially high here.  The documents regarding Charter's spoliation go directly to the elements of Federal Rule of Civil Procedure 37(e) that govern potential sanctions and appropriate remedies for Charter's spoliation.  With respect to nearly every element of Rule 37(e), Charter offered representations from its counsel's investigation while withholding the underlying documents:

*Whether Charter Acted with an Intent to Deprive Plaintiffs of Relevant Documents in this Litigation.*  Rule 37(e) allows a court to impose more severe sanctions—including an adverse inference or dismissal—where the spoliating party "acted with the intent to deprive another party of the information's use."  Charter has produced no documents permitting Plaintiffs to investigate Charter's say-so that the "loss was inadvertent."  By far the most likely source of evidence of Charter's intent is its internal, contemporaneous documents.  But Charter has produced no documents from the time period of its actual data deletion and no documents

demonstrating whether a hold was ever put in place for this case—and if not, then why not; if so, when or how that hold was lifted.

*Whether Charter Took "Reasonable Steps" to Preserve Data.*  Rule 37(e) sanctions apply where a party "failed to take reasonable steps" to preserve data.  Charter claims, even though it did not enter a litigation hold for this case, the Court should accept its explanation that a litigation hold from another matter was sufficient and that it "took reasonable steps to preserve" relevant information.  ECF No. 174 at 4.  But Charter refuses to produce *any documents* showing the terms of the legal hold on which it purportedly relied, or any documents otherwise supporting (or contradicting) its claim on this point.

*Whether the Spoliated Data "Cannot Be Restored or Replaced."*  Rule 37(e) requires that a party seeking sanctions show the deleted data "cannot be restored or replaced through additional discovery."  Charter asserts that it has adequately restored most of its lost messages.  But it has not revealed the document custodians to which those messages belonged, or the legal holds pursuant to which they were saved, which would enable Plaintiffs and the Court to discern whether the "restored" messages adequately substitute for the destroyed messages.

*The Importance of the Deleted ESI to the Litigation and Necessary Measures to "Cure the Prejudice."*  Rule 37(e) also requires weighing the importance of the deleted ESI to the litigation.  *See* Moore's Manual—Federal Practice and Procedure § 15.47 (2019).

There can be no doubt that Charter's deleted emails are critically important to Plaintiffs' claims, and that Plaintiffs' case will be significantly prejudiced without them.  This case centers in substantial part on how Charter handled Plaintiffs' approximately 700,000 infringement notices.   Charter's contemporaneous emails, sent by the Charter employees responsible for

14

handling infringement notices, are critical to understanding Charter's policies and practices, its knowledge of infringement occurring over its network, and its response to that infringement. *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 303 (4th Cir. 2018) (relying on defendant's internal emails to affirm rejection of DMCA safe-harbor defense); *Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-CV-950-LO-JFA, 2020 WL 3121306, at *10 (E.D. Va. June 2, 2020) (relying on defendant's internal emails to uphold jury verdict on vicarious liability and statutory damages); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 754-58, 769-70 (W.D. Tex. 2019) (relying on defendant's internal emails to reject DMCA safe-harbor defense and summary judgment on willfulness).

Moreover, Charter is withholding evidence on the *extent* of the prejudice to Plaintiffs. For example, Charter has not provided the results of its "interviews" (whether informal or formal) with document custodians in this case about the types of emails they sent during the Claim Period related to Plaintiffs' claims, or other relevant ESI they created. These interviews would inform Plaintiffs about the relevant documents that existed but Charter deleted.[6]

## II.   Charter must produce its work product concerning spoliation because Plaintiffs have a "substantial need" for this information and cannot obtain it through other means.

Even if Charter had not waived attorney-client privilege and work-product protection, it nevertheless would have to produce any documents it is claiming as work product related to

---

[6] It is no response that Plaintiffs can simply take depositions of these individuals to learn this information. The Special Master stated that Plaintiffs *may* be allowed to take such depositions only upon a future showing of "good cause." *See* ECF No. 176 at 2. Charter's notes showing what its employees revealed during internal interviews—*e.g.,* the types of emails these employees would have sent or received related to the claims in this case—are exactly what Plaintiffs need to show "good cause" for spoliation-related fact depositions.

spoliation.  Under Fed. R. Civ. Proc. 26(b)(3)(A), a party cannot withhold work product for which another party "has substantial need . . . to prepare its case and cannot, without undue hardship, obtain the[] substantial equivalent by other means."[7]  As described *supra*, Charter is withholding documents that Plaintiffs need to prepare their Rule 37 motion.  For example, Rule 37 contemplates considering a party's intent, Fed. R. Civ. Proc. 37(e)(2), and the best evidence of a party's intent is often that party's contemporaneous documents.  Plaintiffs cannot obtain these documents through any other means.  There is no third-party discovery, for example, that Plaintiffs could take to learn about the internal events that led to Charter's spoliation, its discovery, or what (and when) it did about it.  Consequently, Charter must also produce its work product concerning spoliation.

## **CONCLUSION**

For the reasons stated above, Plaintiffs request that the Court issue an order finding that Charter has waived attorney-client privilege and work-product protection for all documents responsive to Plaintiffs' spoliation-related document requests and requiring Charter to produce all documents it is withholding on that basis.

---

[7] *See also Henderlong v. Allstate Ins. Co.*, No. 08-cv-01377-CMA-MEH, 2009 WL 82493, at *3 (D. Colo. Jan. 13, 2009) (Hegarty, J.) (defendant insurance company must produce a claim report—regardless of whether it included work product—because plaintiff had "substantial need" for it to support her bad-faith breach claim); *Asten v. City of Boulder*, No. 08-cv-00845-PAB-MEH, 2010 WL 2612673, at *1–2 (D. Colo. June 29, 2010) (Hegarty, J.) (plaintiff must produce factual portions of tape-recorded interview with witness, even though it was protected work product, due to defendants' need to prepare their case); *Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 376 (D. Colo. 1993) (compelling production of work product from investigation because "[i]t would be extremely difficult, not to mention wasteful, for defendants to attempt to replicate [plaintiff's] three-year investigation when the information it seeks is readily available to the [plaintiff]").

Dated: October 12, 2020

*/s/ Mitchell A. Kamin*
Mitchell A. Kamin
Neema T. Sahni
J. Hardy Ehlers
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
jehlers@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

**APPENDIX**

| Representations by Charter's counsel | Plaintiffs' RFPs based on Charter's counsel's representations (*See* Kamin Decl. Ex. 10) | Documents produced and/or logged regarding Charter's counsel's representations |
|---|---|---|
| Charter "issued a legal hold on December 17, 2015 that was subsequently used across all secondary copyright infringement matters," including this case."  Kamin Decl. Ex. 8 (Response 7). | "[D]ocuments concerning the legal hold that Charter instituted on December 17, 2015."  [RFP 2.]<br><br>"Documents sufficient to show the manner in which [the hold] . . . was recorded, saved, displayed and/or described" in Charter's systems.  [RFP 7.]<br><br>"Documents discussing or concerning any legal hold(s) related to Plaintiffs' claims."  [RFP 8.] | No documents produced showing to which cases the December 2015 hold applied, or how its substantive scope was displayed or described in Charter's systems.  Kamin Decl. ¶ 5(a).<br><br>Charter's privilege log includes 41 responsive documents created between December 17, 2015 and January 21, 2016—the time period during which the hold was purportedly created.  Kamin Decl. Ex. 13 (Entries 1–41). |
| "When an employee is placed on legal hold [at Charter], Charter's internal records management team takes three steps to preserve their emails": these steps are mailbox "journaling," "snapshots," and "searches."  Kamin Decl. Ex. 2. | "[D]ocuments concerning [Charter's] legal hold policies, practices, or parameters."  [RFP 5.] | No documents produced describing this policy or practice.  Kamin Decl. ¶ 5(b).<br><br>It is unclear whether any of these documents appear on Charter's privilege log. |
| Charter determined that "[t]he existing December 2015 hold encompassed the scope of the record potentially relevant to Plaintiffs' notice in March of 2016, so another hold was not issued.  Charter elected to manage legal holds for all music copyright infringement claims under a single legal | "Documents concerning Charter's decision not to implement a legal hold specific to Plaintiffs' notice in March 2016, including any documents concerning Charter's assessment that 'the existing December 2015 hold encompassed the scope of the record potentially relevant to | No documents produced regarding this representation.  Kamin Decl. ¶ 5(c).<br><br>It is unclear whether Charter has reviewed responsive communications, as its privilege log includes only one document from the month following Plaintiffs' |

| | | |
|---|---|---|
| hold." Kamin Decl. Ex. 8 (Response 18). | Plaintiffs' notice in March of 2016.'" [RFP 6.]<br><br>"[D]ocuments concerning correspondence with outside counsel about the existence or implementation of a legal hold in connection with Plaintiffs' notice in March 2016 or this lawsuit." [RFP 24.] | notice on March 23, 2016. Kamin Decl. Ex. 13 (Entry 79). |
| Charter removed 9 of the custodians on legal hold for this case from prospective email "journaling [in] approximately September 2018." Kamin Decl. Ex. 8 (Response 21). | "Documents concerning Charter's removal or deletion of the '9 custodians' from 'journaling [in] approximately September 2018.'" [RFP 9.] | No documents produced regarding this representation. Kamin Decl. ¶ 5(d).<br><br>Charter's privilege log includes 11 responsive documents from September 2018. Kamin Decl. Ex. 13 (Entries 398–408). |
| "Charter suffered a loss of e-mails as a result of the migration of its legal hold management system," during which certain legal holds were "inadvertently omitted." Kamin Decl. Ex. 2. | "[D]ocuments concerning Charter's 'migration of its legal hold management system in 2017 and 2018.'" [RFP 12.]<br><br>"Documents sufficient to identify any legal holds, other than [the one relevant to this case]" omitted during Charter's system migration. [RFP 17.] | Charter has produced some emails describing the transfer of its legal hold management system, but it has not produced communications describing *why* this transfer was undertaken, and it has redacted documents that show the *other* legal holds were involved in the transfer. Kamin Decl. ¶ 5(e).<br><br>Charter has logged 104 responsive documents from the time period during which it purportedly transitioned to its new legal hold management platform (April 2017 to January 2018). Kamin Decl. Ex. 13 (Entries 251–354). |

| | | |
|---|---|---|
| Charter "inadvertently" deleted emails related to this case in December 2018 when it "engaged in a clean-up of its [data] archive and deleted any data that it believed in no longer had an obligation to preserve."  Kamin Decl. Ex. 2.<br><br>The "custodians relevant to this matter were not the only legal hold custodians impacted by the [December 2018] loss."  Kamin Decl. Ex. 8 (Response 20(d)). | "[D]ocuments concerning Charter's 'clean-up of its [data] archive and delet[ion of] . . . held data that [Charter] believed it no longer had an obligation to preserve' in December 2018."  [RFP 13.]<br><br>"[D]ocuments concerning the 'loss of e-mails as a result of the migration of [Charter's] legal hold management system.'"  [RFP 14.] | No documents produced from November or December 2018.  Kamin Decl. ¶ 4.<br><br>Charter has logged 14 responsive documents from November and December 2018.  Kamin Decl. Ex. 13 (Entries 410–423). |
| Charter "cannot verify whether any of the 9 custodians may have been subject to another legal hold during that time, but they were not on another active legal hold at the time of the clean-up, causing their preserved messages to be discarded."  Kamin Decl. Ex. 8 (Responses 8, 23). | "Documents sufficient to identify any legal holds, other than the December 2015 and January 2016 holds applied to the 9 Charter custodians relevant to this litigation."  [RFP 17.] | No documents produced regarding this representation.  Kamin Decl. ¶ 5(f).<br><br>It is unclear whether any of these documents appear on Charter's privilege log. |
| In April 2019, Charter "first became aware that certain custodians subject to the relevant legal hold did not appear to be on active hold."  Kamin Decl. Ex. 8 (Response 2). | "[D]ocuments related to Charter's April 2019 discovery that 'certain custodians . . . did not appear to be on active hold.'"  [RFP 16.] | No documents produced regarding this representation.  Kamin Decl. ¶ 5(g).<br><br>Charter has logged 95 responsive documents from April 2019.  Kamin Decl. Ex. 13 (Entries 448–542). |
| Charter "became aware of the full scope of the [ESI] loss, the specific relevant custodians impacted, the causes of the loss, and the unavailability of alternative sources, in late 2019."  Kamin Decl. Ex. 8 (Response 2). | "[D]ocuments related to Charter's . . . late 2019 discovery 'of the full scope of the loss.'"  [RFP 16.] | No documents produced regarding this representation.  Kamin Decl. ¶ 5(h).<br><br>It is unclear whether Charter has logged these documents, as Charter's privilege log includes documents only through October 9, 2019.  *See* |

3

|  |  | Kamin Decl. Ex. 13. |
| --- | --- | --- |
| "[N]o copies of the [deleted] archive or its contents are available from either Charter or its vendors . . . ." Kamin Decl. Ex. 2. | "[D]ocuments concerning any investigations or inquiries regarding . . . 'the availability of sources from which the data might be restored or replaced.'" [RFP 18.] | No documents produced regarding this representation. Kamin Decl. ¶ 5(i).<br><br>It is unclear whether any of these documents appear on Charter's privilege log. |
| At least five Charter employees were interviewed in connection with their ESI, and Charter's counsel communicated with another Charter employee in connection with attempts to replace the deleted data. Kamin Decl. Ex. 8 (Responses 15–16). | "[D]ocuments concerning any investigations or inquiries [regarding the data loss], including notes or memos from any related interviews or conversations with" the employees that Charter has identified as relevant to its investigation. [RFP 18.] | Charter has not produced any notes, memoranda, or transcripts related to these interviews and communications, nor any correspondence with its outside counsel. Kamin Decl. ¶ 5(j).<br><br>It does not appear that these documents have been logged. |
| There was "extensive investigation by Winston & Strawn . . .[into] the availability of sources from which the data might be restored or replaced," including communications with Charter's past and current eDiscovery vendors, and one of Charter's employees. Kamin Decl. Ex. 8 (Responses 2, 15). | Communications between Charter and its data archive and legal hold management vendors. [RFPs 22, 23.] | Charter has not produced communications involving Charter's outside counsel showing its investigation into the spoliation. Kamin Decl. ¶ 5(k).<br><br>Charter logged 32 emails that involve Charter's outside counsel and eDiscovery vendors. Kamin Decl. Ex. 13 (Entries 607–09, 617, 619, 625–27, 633–35, 637, 640, 643, 646-649, 652, 654, 656, 661, 666, 667–670, 786–88, 803–804.). |

## <u>LOCAL CIVIL RULE 7.1(a) CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1(a), Plaintiffs certify that they conferred with Charter regarding this motion.  During June and July 2020, the parties conferred over Charter's responses and objections to Plaintiffs' spoliation-related RFPs, and discussed Plaintiffs' position that Charter waived privilege over documents related to its spoliation with which Charter disagreed. On October 9, Plaintiffs asked Charter's counsel by email whether they maintain that Charter has not waived privilege over documents related to its spoliation.  On October 12, counsel for Charter responded that Charter "stands on its privilege," Charter previously offered access to "certain of those documents" through a Rule 502(d) order, and that the parties "have conferred extensively over these issues and [they] remain at impasse."


<u>/s/ Mitchell A. Kamin</u>
Attorney


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 12, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.


<u>/s/ Mitchell A. Kamin</u>
Attorney