# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-MSK-MEH

**WARNER RECORDS INC., et al.**

    Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.**

    Defendant.

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT CHARTER COMMUNICATIONS, INC.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs serve their First Set of Requests for Production of Documents and Things to Defendant Charter Communications, Inc. Plaintiffs request that Defendant respond in accordance with the Federal Rules of Civil Procedure, and produce the documents hereinafter described at the offices of Covington & Burling, LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, or at such other time and place as the parties may agree upon, within thirty (30) days of the date of service.

## DEFINITIONS

Unless otherwise indicated, the following definitions apply to these requests:

1. The term "Plaintiffs" refers collectively to Plaintiffs Warner Records Inc. (f/k/a Warner Bros. Records Inc.), Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., WEA International Inc., Warner Chappell Music, Inc. (f/k/a Warner/Chappell Music, Inc.), Warner-Tamerlane Publishing Corp., WB Music Corp., W.B.M. Music Corp., Unichappell Music

Inc., Rightsong Music Inc., Cotillion Music, Inc., and Intersong U.S.A., Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, Volcano Entertainment III, LLC, and Zomba Recordings LLC, and Plaintiffs Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., and Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Island Music Limited, PolyGram Publishing, Inc., and Songs of Universal, Inc.

2. The terms "you," "your," "Charter," or "Defendant" refer to Charter Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on behalf of the defendant.

3. The term "MarkMonitor" refers to MarkMonitor Inc., its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf. The term MarkMonitor also specifically includes DtecNet Inc. and Clarivate Analytics.

4. The term "Complaint" refers to the Complaint filed by Plaintiffs on March 22, 2019,

Case No. 1:19-cv-00874 (D. Colo.), in this lawsuit.

5. The term "ISP" means any business or organization that is an internet service provider.

6. The term "Subscriber" refers to any account holder or subscriber of your internet services.

7. The term "User" refers to any person that uses your internet services, either presently or in the past.

8. The term "DMCA" refers to the Digital Millennium Copyright Act.

9. The term "Infringement Notice" refers to a notice that one or more of Charter's Subscribers or Users allegedly infringed a copyright. This includes notices sent on behalf of any copyright owner, regardless of whether or not Charter processed or retained the notice. This term includes but is not limited to a notification of claimed copyright infringement pursuant to the DMCA, 17 U.S.C. § 512.

10. The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Subscribers or Users relating to, the DMCA.

11. The term "Repeat Infringer Policy" refers to any policy that seeks to address copyright infringement or alleged copyright infringement by a Subscriber or User, whether or not contemplated by and/or set forth in 17 U.S.C. § 512(i).

12. The term "DMCA Agent" refers to any person or entity Charter has designated to receive notifications of alleged copyright infringement pursuant to the DMCA.

13. The term "Acceptable Use Policy" refers to any policy concerning obligations, rules,

3

or limitations of Subscribers' or Users' use of internet services offered by Charter.

14. The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server, including but not limited to protocols such as BitTorrent, ARES, eDonkey, and Gnutella, for the purpose of distributing data and electronic files over the internet.

15. The terms "person" or "persons" are defined as any natural person or business, legal or governmental entity or association. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

16. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A non-identical copy is a separate document within the meaning of this term. "Document" specifically includes electronically stored information as defined in Rule 34(a).

17. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition includes any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal.

18. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

19. "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

20. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

21. The use of the singular form of any word shall include the plural and vice versa.

## INSTRUCTIONS

1. These requests shall be deemed to be continuing to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

2. Defendant is to produce documents comprising electronically stored information pursuant to the agreed-upon protocol governing the production of electronically stored information and paper documents.

3. Defendant is to produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices as they are kept in the usual course of business or, alternatively, organized and labeled to correspond to the category of documents requested.

4. In response to each request, Defendant shall affirm whether responsive documents exist and have been, or shall be, produced.

5. If Defendant deems any information, document, or communication requested by any of the following requests to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe: (a) the information, document, or communication you claim to be so protected by author, subject matter, date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any

5

individual to whom the information, document, or communication was distributed, shown, or explained; (c) the information, document, or communication's current custodian; and (d) all bases, factual and legal, upon which such protection allegedly rests.  If you contend that only a portion of the information contained in a document is privileged, provide the portion that you do not contend is privileged.

6. In the event that more than one copy of a document exists, Defendant shall produce the original and each non-identical copy of each document or other tangible thing requested herein, which is in Defendant's possession, custody, or control, or that of persons or entities under the control of Defendant.

7. Each discovery request shall be fully responded to unless it is objected to in good faith.  An objection must state with specificity the grounds for the objection and whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request (or a word, phrase, or clause contained in the request) must specify the part objected to and Defendant shall produce or permit inspection of the rest.

8. Unless otherwise specified, the relevant time frame for these Requests is January 1, 2010 through May 17, 2016.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 1**    All documents involving, mentioning or related to MarkMonitor or DtecNet Inc., including but not limited to communications with or concerning MarkMonitor or DtecNet Inc. and assessments or analyses of MarkMonitor or DtecNet Inc.

**REQUEST NO. 2**    Logs of all Infringement Notices sent to you by any person or entity, sufficient to show, as to each such Infringement Notice, the Subscriber ID, ticket number, date and time of alleged infringement as set forth in the Infringement Notice, IP address, each action taken

6

or determined to not be taken with respect to such Infringement Notice, and the date and time of each such action or determination.

**REQUEST NO. 3**     All documents evidencing or concerning each response by any Subscriber or User to an Infringement Notice.

**REQUEST NO. 4**     All communications concerning alleged copyright infringement by your Subscribers or Users or through your internet service, including but not limited to all communications regarding Infringement Notices.

**REQUEST NO. 5**     All documents concerning BitTorrent, ARES, eDonkey, Gnutella, or other Peer-to-Peer file sharing, including but not limited to documents concerning the use of Peer-to-Peer file sharing by your Subscribers or Users; the prevalence of copyright infringement occurring through Peer-to-Peer file sharing systems; communications, memos, and studies discussing Peer-to-Peer Internet traffic whether or not on Charter's network.

**REQUEST NO. 6**     Documents sufficient to show your corporate structure for the business of providing internet services, including the relationship among any parent corporations, subsidiaries, or any affiliates engaged in your business of providing internet services.

**REQUEST NO. 7**     Organizational charts or other documents sufficient to show your organizational structure for persons responsible for addressing copyright infringement complaints, user terms of service, Acceptable Use Policies, privacy policies, and finances, including the identity and title of each job occupant.

**REQUEST NO. 8**     Without regard to the time limitation set forth in Paragraph 8 of the Instructions above, all documents concerning any copyright or infringement policy applicable to Subscribers or Users, including but not limited to any draft or final versions of such policies; the effects of such policies; documents sufficient to identify the employees or agents with

7

responsibility for developing, conceiving, drafting and/or implementing such policies; documents sufficient to show when you first adopted such policies and the date of any changes to such policies; and documents sufficient to show how and when such policies were communicated to third parties, including but not limited to Subscribers or Users.  This request includes but is not limited to any DMCA Policy, Repeat Infringer Policy, and/or Acceptable Use Policy.

**REQUEST NO. 9**     All documents describing or concerning your IP address assignment protocol, including but not limited to documents concerning the manner in which you assign IP addresses to Subscribers or Users, the circumstances under and frequency with which a Subscriber's IP address is changed, your DHCP log retention policy, and any other policies or protocols by which IP address assignments are logged and retained or not retained.

**REQUEST NO. 10**     Documents sufficient to identify the name, title, and role of each of Defendant's employees or agents involved any manner in receiving, assessing, addressing, responding, and/or implementing any Infringement Notice.

**REQUEST NO. 11**     All documents concerning tracking or determining the identity of Subscribers or Users associated with an IP address identified in an Infringement Notice.

**REQUEST NO. 12**     Documents sufficient to identify the Subscribers associated with the IP addresses identified in any Infringement Notice Defendant received.

**REQUEST NO. 13**     All documents concerning any technological or other means or mechanisms you considered or implemented to address, limit or prevent use of your internet services in violation of your Acceptable Use Policy, including but not limited to preventing copyright infringement by Subscribers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems.

**REQUEST NO. 14**     All documents concerning the potential impact on your financial

interests, including but not limited to lost fees or revenues, in the event you terminated internet service to Subscribers or Users accused of copyright infringement, or adopted or made changes to any Repeat Infringer or graduated response policy. This request includes but is not limited to documents such as marketing reports, plans, studies, analyses, and consumer research.

**REQUEST NO. 15**   Documents sufficient to show, by month, the Subscriber ID of each Subscriber against whom you have taken any action or implemented any measures in response to an Infringement Notice, including but not limited to suspension or termination.

**REQUEST NO. 16**   All documents or communications concerning the DMCA or copyright infringement.

**REQUEST NO. 17**   All documents concerning Plaintiffs' copyright interests, including but not limited to the transmission or downloading of sound recordings or musical works of which Plaintiffs are the legal or beneficial copyright owners or exclusive licensees, and claims or potential claims by Plaintiffs against Defendant or any other person.

**REQUEST NO. 18**   Documents sufficient to show your total and average revenues and profits, by month and year, including a breakdown based on the type of service provided.

**REQUEST NO. 19**   Documents sufficient to show your total and average revenue and profit attributable to Subscribers about whom you received an Infringement Notice, including the per Subscriber revenue and profit by month and year.

**REQUEST NO. 20**   Documents sufficient to demonstrate your financial performance, including but not limited to regular corporate financial reports, audit reports, auditor letters, and any notes or supporting documents thereto.

**REQUEST NO. 21**   All documents concerning the impact or effectiveness of any graduated response program, DMCA Policy, or Repeat Infringer Policy in stopping alleged

copyright infringement through the use of your internet service. This request includes but is not limited to documents such as marketing reports, plans, studies, analyses, and consumer research.

**REQUEST NO. 22**   All communications with, from, or involving any employee, officer, or director of Cox Communications or Bright House Networks, LLC regarding alleged copyright infringement, including but not limited to graduated response programs, Repeat Infringer Policies, and DMCA Policies.

**REQUEST NO. 23**   All licenses to which you are a party for software or other intellectual property relating to tracking and responding to alleged copyright infringement, including but not limited to tracking and responding to Infringement Notices and amounts spent thereon.

**REQUEST NO. 24**   All documents on which you rely in responding to Plaintiffs' Interrogatories.

June 10, 2019

*/s/ Mitchell A. Kamin*
Mitchell A. Kamin
Neema T. Sahni
Rebecca G. Van Tassell
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
rvantassell@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

jcharlesworth@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*

11