# Exhibit 2



**WINSTON & STRAWN LLP**

North America   Europe   Asia

333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
T +1 213 615 1700
F +1 213 615 1750

**MICHAEL S. ELKIN**
Partner
(212) 294-6729
MElkin@winston.com

March 4, 2020

Mitchell Kamin
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643

Re:   *Warner Bros. Records, Inc. et al v. Charter Communications* Discovery

Dear Mitch:

We write to inform you about an email issue we have uncovered related to discovery in the above action. As you know, Charter's custodial email discovery for this matter is ongoing. In the course of searching for relevant and responsive information for the 14 relevant custodians we have identified for this matter, we determined that Charter suffered a loss of e-mails as a result of the migration of its legal hold management system in 2017 and 2018. The loss effected 9 of 14 relevant custodians. As further explained below, our investigation into this matter has determined that this loss was inadvertent, that the loss is minimal as to evidence material to this action and, in fact, millions of messages are still available from which to search for responsive and relevant information in discovery.

### A. Charter's Preservations Steps.

Charter's long-standing IT policy limits an employee's email mailboxes to 90 days of messages, after which messages are automatically deleted. When an employee is placed on legal hold, Charter's internal records management team takes three steps to preserve their emails. Charter:

1. Places that employee's mailbox on "journaling," which delivers copies of all messages sent or received by that employee to a preservation archive. Messages may then "age out" of the employee's active mailbox on the mail server, but copies are still retained in the archive.

2. Takes a "snapshot" copy of the employee's active inbox, unless the employee is already on hold and journaling. The snapshot ensures that messages pre-dating the journaling are not automatically deleted.

3. Searches for messages sent or received by newly on-hold employees which are already in the archive because another Charter employee also possessed a copy and already was on legal hold. These messages are then associated with the newly on-hold employee, to ensure they remain preserved as long as the new hold is active.



March 4, 2020
Page 2

### B. Chart's E-mail and Legal Hold Systems

Presently, Charter's email archive solution is operated by ProofPoint. Charter migrated to this platform in 2017, after preservation for this matter began. The prior archive solution was hosted by Charter's e-discovery vendor using technology from ZL Technologies.

When Charter initiated preservation for employees who may be relevant to this matter, it took all of the steps described above – it made 90-days snapshots for employees not already on legal hold, activated email journaling to the ZL Technologies archive for employees not already on hold, and identified and sequestered messages already in the ZL archive. When Charter migrated from ZL Technologies to ProofPoint in 2017, it moved the entire archive, including data set aside or journaled for employees who may be relevant to this litigation.

In 2017, Charter also changed the platform it used to initiate and track legal holds, moving from Salesforce.com to Legal Hold Pro. As part of this migration, Charter transferred active legal holds in the Salesforce platform over to Legal Hold Pro. This software contains the listing of legal holds and custodians that Charter uses to manage its legal holds as well as the information that resides in the ProofPoint archive. At the end of 2018, as part of a normal business review of its preservation burden, Charter engaged in a clean-up of its ProofPoint archive and deleted any held data that that it believed it no longer had an obligation to preserve for an active legal matter. This involved a months-long process of comparing lists of active legal hold custodians in Legal Hold Pro against those custodians on hold in ProofPoint, and releasing any ProofPoint custodians no longer subject to an active hold in Legal Hold Pro. Our investigation has revealed that emails for 9 of the 14 Charter custodians relevant to this litigation were inadvertently subject to the December 2018 clean-up. Five other custodians relevant to this matter were on other active holds and, thus, were not impacted.

### C. Availability from Other Sources

We have also investigated whether any of the lost archive data might be recovered, restored, or replaced. First, we have determined that no copies of the archive or its contents are available from either Charter or its vendors. The cleanup from ProofPoint was immediate, automatic, and according to ProofPoint engineers, unrecoverable. Likewise, no copies of the former ZL Technologies archive still exist with the previous vendor, and the hard drives used to complete the migration were repurposed years ago (Charter itself never possessed copies of the archive or of the transfer media).

Nevertheless, the comprehensive nature of Charter's preservation efforts ensures that a large volume of data is still available for discovery in this litigation. All 90-day snapshots set aside for the 14 custodians whose emails we are searching and reviewing have been preserved and are a part of our discovery collection. By virtue of the number of employees on hold in its ProofPoint archive as it relates to other matters, Charter has identified a substantial volume of messages (over 3 million) sent or received by the 14 custodians during the period March 2012 to May 2016 from which to search for relevant and responsive information.



March 4, 2020<br>Page 3

As you know, Plaintiffs first contacted Charter about potential litigation on March 23, 2016, less than two months before the end of the claim period in this case. In addition, based upon Plaintiffs' own production, the last copyright notice Plaintiffs sent to Charter during the claims period was on March 31, 2015, almost a year before the end of the claims period. This timeline, Charter's longstanding IT policy limiting an employee's email mailboxes to 90 days of messages, and the availability of the 90-day snapshots and other sources of data described above for custodians relevant to this case, all support our conclusion that any loss is minimal as to evidence material to this action.

Should you have further questions about this, please let us know and we can set up a time to discuss further. We look forward to having an open and transparent dialogue with you about this issue as we proceed with our planned document productions.

Sincerely,

Michael S. Elkin