# Exhibit 4

**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Mitchell A. Kamin

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T  +1 424 332 4759
mkamin@cov.com

*By Electronic Mail*                                                                                       March 11, 2020

Michael S. Elkin, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
T: (212) 294-6729
*melkin@winston.com*

      Re:    ***Warner Bros. Records Inc., et al. v. Charter Comm's,***
             ***Inc.***, **Case No.: 1:19-cv-00874-RBJ-MEH**

Dear Michael:

      We are writing to follow up on your recent disclosure that in 2018, Charter destroyed emails for 9 of the 14 custodians it identified as having relevant and responsive information in this matter.  While your March 4, 2020 letter concluded that the destruction was unintentional and the loss minimal, it was short on some of the key facts necessary for Plaintiffs to fully understand what occurred.  As such, this letter follows on your offer for an "open and transparent dialogue" to "ensure that Plaintiffs fully understand [the] facts surrounding the e-mail loss."  To begin that process, please provide the information requested below.

1. Identify all persons with knowledge regarding the "loss of e-mails as a result of the migration of [Charter's] legal hold management system in 2017 and 2018."  (*See* 3/4/2020 Ltr. from M. Elkin to M. Kamin Regarding *Warner Bros. Records, Inc. et al v. Charter Communications* Discovery).[1]  If the person is a current Charter employee, please provide their job title.  If the person is a former Charter employee, please provide their former job title and current address, email address, phone number, and employer.

2. Please describe how and when Charter first discovered that it deleted "emails as a result of the migration of its legal hold management system in 2017 and 2018," including how and when Charter first discovered that data belonging to "9 of the 14 Charter custodians relevant to this litigation" was deleted.  Please include the specific date(s) on which these discoveries were made.

---

[1] Unless stated otherwise, all quotations in this list are of this March 4, 2020 letter.

**COVINGTON**

Michael S. Elkin, Esq.
March 11, 2020
Page 2

3. Explain why Charter first notified Plaintiffs on March 4, 2020, as opposed to earlier, that data "belonging to 9 of the 14 Charter custodians relevant to this litigation" were deleted.

4. Please confirm that the email loss described in your March 4, 2020 letter on behalf of Bright House Networks, LLC is separate, distinct, and unrelated to Charter's "loss of e-mails as a result of the migration of its legal hold management system in 2017 and 2018." If the two events are related in any way, please explain how.

5. Please identify the "14 relevant custodians [that Charter has] identified for this matter."

6. Please identify the "9 . . . Charter custodians relevant to this litigation" who became "inadvertently subject to the December 2018 clean-up" of Charter's archives. If the person is a current Charter employee, please provide their job title. If the person is a former Charter employee, please provide their former job title and current address, email address, phone number, and employer.

7. Please provide the specific dates when Charter "initiated preservation for employees who may be relevant to this matter," including when it issued any legal hold(s).

8. Please specify how exactly the "9 . . . Charter custodians relevant to this litigation" became "inadvertently subject to the December 2018 clean-up" of Charter's archives.

    a. Were they omitted from the "lists of active legal hold custodians in Legal Hold Pro"?

    b. Were they ever on those lists?

    c. If so, at what point did they fall off?

9. Identify all persons involved with "the December 2018 clean-up" of Charter's archives, including but not limited to any persons at Winston & Strawn and any persons in Charter's in-house legal department (past or present).

10. How much data—in terms of documents and bytes—was deleted in the "December 2018 clean-up," as to each of the "9 . . . Charter custodians relevant to this litigation"?

11. How much data—in terms of documents and bytes—remains available after the "December 2018 clean-up," as to each of the "9 . . . Charter custodians relevant to this litigation"?

12. Does Charter possess emails for any of the "14 Charter custodians relevant to this litigation" sent or received more than 90 days before that custodian received a legal hold? If so, for which custodians, and how many emails for each custodian?

**COVINGTON**

Michael S. Elkin, Esq.
March 11, 2020
Page 3

13. What is the date range of the "over 3 million emails" remaining after the email deletion and within which Charter is "searching for relevant and responsive information"?

14. Of the "over 3 million emails," how many were sent to or from the "9 . . . custodians . . . subject to the December 2018 clean-up"?

15. Describe the investigations Charter has undertaken to determine "whether any of the lost archive data might be recovered, restored, or replaced," and identify all individuals (both internally at Charter and externally) involved in those investigations.

16. Did Charter undertake to interview the 9 custodians about Plaintiffs' claims and the lost emails? If so, when were those interviews undertaken?

We ask that you please provide the information requested above no later than March 16, 2020.[2] In the event you do not provide complete responses by that date, Plaintiffs will seek leave to conduct expedited discovery—outside the limits set forth in the Scheduling Order, Dkt. 44—into these questions, as the document destruction obviously is a critical and threshold issue that will affect ongoing discovery in this case.

Please let us know if you have any questions.

Sincerely,

*/s/ Mitchell A. Kamin*
Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643

---

[2] We disagree with your position that Charter is not required to amend its Rule 26(a) disclosures. At a minimum, Charter was required to disclose these data-destruction issues and related individuals as part of the Rule 26 conference and its initial disclosures, and to the extent these issues came to light later, Charter was, and is, obligated to update its disclosures accordingly. *See* FRCP 26(f)(2) (requiring parties to "discuss any issues about preserving discoverable information" in Rule 26 conference); *id.* (f)(3) ("discovery plan must state the parties' views and proposals on…any issues about disclosure, discovery, or preservation of electronically stored information"); *id.* 26(g)(1)(A) (requiring a "reasonable inquiry" before drafting of initial disclosures); *Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004) (a party must supplement its disclosures if "there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation.").

**COVINGTON**

Michael S. Elkin, Esq.
March 11, 2020
Page 4

Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

*Attorneys for Plaintiffs*

cc: Matthew J. Oppenheim (matt@oandzlaw.com)
　　　Scott A. Zebrak (scott@oandzlaw.com)
　　　Jeffrey M. Gould (jeff@oandzlaw.com)
　　　Thomas Patrick Lane (tlane@winston.com)
　　　Shilpa A. Coorg (scoorg@winston.com)