# Exhibit 6



275 Middlefield Road
Suite 205
Menlo Park, CA 94025
T +1 650 858 6500
F +1 650 858 6550

**JOHN ROSENTHAL**
(202) 282-5875
jrosenthal@winston.com

March 23, 2020

Mitchell Kamin
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643

Re:   *Warner Bros. Records, Inc., et al v. Charter Communications* Discovery

Dear Mitch:

This letter is in further response to your letter of March 11, 2020, concerning Charter's inadvertent loss of email ESI.  For your ease of reference, we have included here those Responses to your questions which we previously provided on Monday, March 16.

1. Question: *Identify all persons with knowledge regarding the "loss of e-mails as a result of the migration of [Charter's] legal hold management system in 2017 and 2018." (See 3/4/2020 Ltr. from M. Elkin to M. Kamin Regarding Warner Bros. Records, Inc. et al v. Charter Communications Discovery).  If the person is a current Charter employee, please provide their job title. If the person is a former Charter employee, please provide their former job title and current address, email address, phone number, and employer.*

    Response:  The following individuals have knowledge of events related to the email loss:

    | Name | Title | Current Employee | Other Details |
    |---|---|---|---|
    | Kirill Abramov | Vice President, Associate General Counsel - Intellectual Property Law | Y | |
    | Dan Vasey | Sr. Director, Records Management & eDiscovery | Y | |
    | Christine Flores | Manager, Legal Services – Litigation | Y | |
    | Kimberly Love | Records Analyst | Y | |
    | Joshua Paske | Sr. Manager, eDiscovery | N | Current employer unknown; address unknown; email unknown; phone number unknown |

    We have been unable to locate current contact or employer information for Mr. Paske.  Since he was a member of Charter Communications' Legal Department, we request that you not contact



March 23, 2020<br>Page 2

him directly should you locate contact information.  If we are able to locate contact information and should you wish to talk to Mr. Paske, we can discuss a process that will ensure the protection of Charter's privileges.

2. Question: *Please describe how and when Charter first discovered that it deleted "emails as a result of the migration of its legal hold management system in 2017 and 2018," including how and when Charter first discovered that data belonging to "9 of the 14 Charter custodians relevant to this litigation" was deleted. Please include the specific date(s) on which these discoveries were made.*

   Response: Charter first became aware that certain custodians subject to the relevant legal hold did not appear to be on active hold in its ProofPoint archive in April 2019.  After extensive investigation by Winston & Strawn, including thorough inquiry into the cause of the preservation failure and careful investigation of the availability of sources from which the data might be restored or replaced, Charter became aware of the full scope of the loss, the specific relevant custodians impacted, the causes of the loss, and the unavailability of alternative sources, in late 2019.  Charter continued to investigate whether any ticket data was impacted through February 2020, confirming that it was not impacted.

3. Question: *Explain why Charter first notified Plaintiffs on March 4, 2020, as opposed to earlier, that data "belonging to 9 of the 14 Charter custodians relevant to this litigation" were deleted.*

   Response: Investigation into the loss, including the nature and causes of the loss and whether any of the lost data might be restored or replaced from alternative sources, took substantial time, analysis and effort.  Furthermore, discovery in this matter has been fluid, and at various points since April 2019 it has been unclear from the parties' negotiations and positions whether substantial custodian-based discovery would be sought.  Only after all of the facts were known to Winston & Strawn and Charter, did we proceed to notify Plaintiffs.

4. Question: *Please confirm that the email loss described in your March 4, 2020 letter on behalf of Bright House Networks, LLC is separate, distinct, and unrelated to Charter's "loss of e-mails as a result of the migration of its legal hold management system in 2017 and 2018." If the two events are related in any way, please explain how.*

   Response: We confirm that the loss described in our March 4, 2020, letter concerning Charter Communications is distinct from and unrelated to the loss described in our correspondence concerning Bright House Networks.  As we made clear in both letters, the losses occurred at different times, involved different data sources, and had different precipitating causes.

5. Question: *Please identify the "14 relevant custodians [that Charter has] identified for this matter."*

   Response: The following custodians have been identified as custodians relevant to Plaintiffs' claims:



March 23, 2020
Page 3

    a. Avery, Christopher
    b. Brockel, Timothy
    c. Deloach, Tammy
    d. Haynes, Mary
    e. Jones, Philip
    f. Mabb, Colton
    g. Matthews, Kelly
    h. McMeley, Christin
    i. Nelson, Matthew
    j. Neuverth, Todd
    k. Noce, Elfin
    l. Rowlett, Laurie
    m. Stewart, Tammy
    n. Wood, Laurie

6. Question: *Please identify the "9 . . . Charter custodians relevant to this litigation" who became "inadvertently subject to the December 2018 clean-up" of Charter's archives.  If the person is a current Charter employee, please provide their job title.  If the person is a former Charter employee, please provide their former job title and current address, email address, phone number, and employer.*

   Response: Emails for the following employees were deleted from ProofPoint while the employee was on legal hold.  We do not have current contact or employer information for all of the former employees, but we will endeavor to provide this information to you:

| Name | Title | Current Employee | Other Details |
|---|---|---|---|
| Avery, Christopher | Director, Senior Counsel | N | TBD |
| Brockel, Timothy | Security Specialist II | N | TBD |
| Haynes, Mary | Vice President, Network Operations Security | Y | |
| Jones, Philip | Security Specialist II | Y | |
| Matthews, Kelly | Security Specialist I | N | TBD |
| McMeley, Christin | | N | TBD |
| Neuverth, Todd | Senior Project Manager | Y | |
| Noce, Elfin | Senior Manager, Counsel | N | TBD |
| Stewart, Tammy | Manager, Compliance & Ethics | Y | |

7. Question: *Please provide the specific dates when Charter "initiated preservation for employees who may be relevant to this matter," including when it issued any legal hold(s).*

   Response: Charter was not notified of Plaintiffs' claims until March 2016.  However, on December 16, 2015, Charter was notified of a possible claim for copyright infringement by an unrelated third-party.  In response, Charter issued a legal hold on December 17, 2015 that was


subsequently used across all secondary copyright infringement matters, even though they lacked specific notice of Plaintiffs' claims at the time. Charter initiated preservation on December 18, 2015. Consistent with its standard practices, messages already within the ZL Technologies archive that could be associated with new custodians were set aside and preserved on December 22, 2015. Certain additional custodians were added to the hold on January 21, 2016. Messages already within the ZL Technologies archive that could be associated with these custodians were set aside and preserved on January 29, 2016. Please see Response 10 for details for the impacted custodians.

8. Question: *Please specify how exactly the "9 . . . Charter custodians relevant to this litigation" became "inadvertently subject to the December 2018 clean-up" of Charter's archives. a. Were they omitted from the "lists of active legal hold custodians in Legal Hold Pro"? b. Were they ever on those lists? c. If so, at what point did they fall off?*

Response: The operative legal hold was activated in SalesForce.com on December 17, 2015. The transfer of active hold data between SalesForce.com and Legal Hold Pro began in April 2017 and finished January 2018; messages for the 9 custodians were journaled and preserved in ProofPoint until at least that point. The transfer was not automated, and each active legal hold was transferred manually. The operative legal hold inadvertently was omitted from this process. We cannot verify whether any of the 9 custodians may have been subject to another legal hold at that time, but they were not on another active legal hold at the time of the clean-up, causing their preserved messages to be discarded.

9. Question: *Identify all persons involved with "the December 2018 clean-up" of Charter's archives, including but not limited to any persons at Winston & Strawn and any persons in Charter's in-house legal department (past or present).*

Response: Individuals with knowledge of the December 2018 ProofPoint data clean-up have been identified in response to Question 1, above. No one from Winston & Strawn, any other outside firm, or ProofPoint had knowledge of the events leading up to or comprising the clean-up action.

10. Question: *How much data—in terms of documents and bytes—was deleted in the "December 2018 clean-up," as to each of the "9 . . . Charter custodians relevant to this litigation"?*

Response: ProofPoint cannot provide logs or records that indicate what was deleted at the message or custodian level. The data deleted from ProofPoint consisted of the entire corpus of data transferred from the ZL Technologies archive as part of a migration in March 2017. Any messages not otherwise preserved because they remained associated with another active hold custodian at the time of the clean-up were discarded. Messages that were associated with another legal hold custodian at the time of the deletion were retained.

We are aware that the ZL Technologies archive contained the following volumes of messages for each of the 9 custodians (covering all dates prior and up to) at the time they were added to the operative legal hold:



March 23, 2020
Page 5

| Name | ZL Archive Volume as of December 2015/January 2016 | Date Added to Legal Hold |
|---|---|---|
| Avery, Christopher | 94,521 | Dec. 22, 2015 |
| Brockel, Timothy | 50,320 | Jan. 29, 2016 |
| Haynes, Mary | 123,856 | Dec. 22, 2015 |
| Jones, Philip | 14,324 | Jan. 29, 2016 |
| Matthews, Kelly | 15,032 | Dec. 22, 2015 |
| McMeley, Christin | 29,145 | Dec. 22, 2015 |
| Neuverth, Todd | 70,541 | Dec. 22, 2015 |
| Noce, Elfin | 25,926 | Jan. 29, 2016 |
| Stewart, Tammy | 82,716 | Dec. 22, 2015 |

These represent the minimum volume, per custodian, that was deleted (but note that these totals extend to the period before the Discovery Time Period).[1]  We are unable to quantify, however, the volume of messages that may have been journaled for each custodian between January 2016 and the close of the Discovery Time Period on May 17, 2016.  Accordingly, we do not know the original volume associated with each custodian in the ZL Technologies archive corpus, and we therefore cannot calculate the volume of unique data that is no longer available.

11. Question: *How much data—in terms of documents and bytes—remains available after the "December 2018 clean-up," as to each of the "9 . . . Charter custodians relevant to this litigation"?*

Response: In early March 2020, Charter's eDiscovery vendor was the target of a cyber attack that has taken its Relativity hosting capability offline.  We are unable to provide details that precisely satisfy your request at this time.  We are able to respond, however, that Charter possesses the following messages and loose documents for each of the 9 custodians for the period March 1, 2012 to May 31, 2016 (corresponding roughly with the Discovery Time Period):

| Name | Total Documents Mar. 1, 2012 – May 31, 2016 |
|---|---|
| Avery, Christopher | 90,791 |
| Brockel, Timothy | 119,658 |
| Haynes, Mary | 294,770 |
| Jones, Philip | 46,096 |
| Matthews, Kelly | 14,891 |
| McMeley, Christin | 91,682 |
| Neuverth, Todd | 230,140 |
| Noce, Elfin | 87,588 |
| Stewart, Tammy | 289,088 |

---

[1] These totals do not include messages drawn from the 90-day inbox capture conducted at the time of the hold, which were preserved outside the ZL Technologies archive.



12. Question: *Does Charter possess emails for any of the "14 Charter custodians relevant to this litigation" sent or received more than 90 days before that custodian received a legal hold? If so, for which custodians, and how many emails for each custodian?*

Response: Yes, Charter possesses numerous documents sent or received by each impacted custodian more than 90 days prior to the start of their legal hold. Due to the status of Charter's eDiscovery vendor, we cannot provide precisely the metrics requested at this time. We are able to respond, however, that Charter possesses the following volumes of messages corresponding to the periods March 1, 2012 to February 28, 2013, and March 1, 2013 to December 31, 2015:

| Name | Total Documents Mar. 1, 2012 – Feb. 28, 2013 | Total Documents Mar. 1, 2013 – Dec. 31, 2015 |
|---|---|---|
| Avery, Christopher | 60,433 | 30,350 |
| Brockel, Timothy | 7,256 | 80,353 |
| Haynes, Mary | 133 | 230,140 |
| Jones, Philip | 11 | 23,115 |
| Matthews, Kelly | 0 | 14,891 |
| McMeley, Christin | 76,370 | 15,311 |
| Neuverth, Todd | 31,704 | 153,282 |
| Noce, Elfin | 416 | 69,043 |
| Stewart, Tammy | 48,261 | 199,431 |

We will provide a more precise analysis corresponding to the specific timeframe requested as soon as we are able to do so.

13. Question: *What is the date range of the "over 3 million emails" remaining after the email deletion and within which Charter is "searching for relevant and responsive information"?*

Response: The 3 million emails referenced in our March 4 letter are associated with the 14 relevant custodians and cover the time period March 2012 to May 2016. This is an average of 214,286 messages per custodian, or 4,286 messages per month per custodian.

14. Question: *Of the "over 3 million emails," how many were sent to or from the "9 . . . custodians . . . subject to the December 2018 clean-up"?*

Response: 1,264,704

15. Question: *Describe the investigations Charter has undertaken to determine "whether any of the lost archive data might be recovered, restored, or replaced," and identify all individuals (both internally at Charter and externally) involved in those investigations.*

Response: As discussed in Response 10, the lost data was drawn from the ZL Technologies archive that was transferred into ProofPoint in March 2017. To determine whether the lost data could be restored or replaced, Winston & Strawn (John Rosenthal and Jason Moore):



March 23, 2020
Page 7

    a. Confirmed that the administrators of the ZL Technologies archive (then Renew Data, now KLDiscovery), which was decommissioned in August 2017, do not possess: (1) back-up or archive copies of the archive or (2) back-up or archive copies of the media used to transfer the archive to ProofPoint. (Andrew Neipert, KLDiscovery)

    b. Confirmed that Charter eDiscovery did not receive a collateral copy of the archive and did not receive or relay the transfer media en route from KLDiscovery to ProofPoint. (Dan Vasey, Charter Communications)

    c. Confirmed that ProofPoint: (1) cannot restore the data that was deleted in December 2018, (2) did not retain the hard drives used to transfer the ZL Technologies archive to ProofPoint, (3) do not possess temporary or periodic backups of the overall ProofPoint archive from which the deleted data could be restored, and (4) did not create a temporary staging copy of the ZL Technologies archive that may still be accessible or itself restorable. (Thomas Mahoney and Jason Colvin, ProofPoint, Inc.)

16. Question: *Did Charter undertake to interview the 9 custodians about Plaintiffs' claims and the lost emails? If so, when were those interviews undertaken?*

Response: Of the nine referenced custodians, we have conducted interviews concerning issues related to Plaintiffs' claims and their relevant ESI with: Christopher Avery (Oct. 2. 2019), Mary Haynes (Aug. 7, 2019), Christin McMeley (Oct. 2, 2019), Todd Neuverth (July 23, 2019), and Tammy Stewart (July 22, 2019). Timothy Brockel, Kelly Matthews, and Elfin Noce are former employees we have been unable to interview to date, and Philip Jones reports up to Tammy Stewart, Todd Neuverth, and Laurie Rowlett.

Sincerely,

*John Rosenthal*

John Rosenthal

CC: Michael S. Elkin
JG
ER
JM