Exhibit 11



WINSTON
&STRAWN
LLP   North America   Europe   Asia

1901 L Street, NW
Washington, DC 20036
T +1 202 282 5000
F +1 202 282 5100

**JOHN ROSENTHAL**
(202) 282-5875
jrosenthal@winston.com

June 29, 2020

Mitchell Kamin
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643

**Re:**   *Warner Bros. Records, Inc., et al v. Charter Communications* Discovery

Dear Mitch:

Thank you for your letter of June 24, 2020.  I apologize for not getting back to you sooner.  In the meantime, we have been working in earnest on the open topics relating to the e-mail loss that are the subject of our prior conversations and your letter.  In terms of the issues raised in your letter:

1.  We will be serving today our objections and responses to your Rule 30(b)(6) deposition notice.  We would be happy to meet and confer on those topics early next week.

2.  You have asked for our updated positions on certain requests in light of our meet and confer.  To that end:

**REQUEST NO. 4**    Documents concerning the resolution or disposition of the Mingus Music Werkshop claim, including but not limited to documents sufficient to show the manner and date on which that resolution or disposition was recorded, displayed and/or described in Salesforce.com, Legal Hold Pro, and SharePoint, respectively.

We are prepared to withdraw our objection as to this request.  A single written notice of potential claim was received from Mingus Music Workshop.  No further communication or correspondence was received relating to that claim.  We have produced the notice Charter received.

**REQUEST NO. 6**    Documents concerning Charter's decision not to implement a  legal hold specific to Plaintiffs' notice in March 2016, including any documents concerning Charter's assessment that "the existing December 2015 hold encompassed the scope of the record potentially relevant to Plaintiffs' notice in March of 2016." (*See* 4/14/2020 J. Rosenthal Ltr.).

Subject to reaching an agreement on an appropriate 502(d) Order that the Court would enter, we would be amenable to producing documents relating to this request.

**REQUEST NO. 17**    Documents sufficient to identify any legal holds, other than the December 2015 and January 2016 holds applied to the "9 . . . Charter custodian relevant to this litigation," that



were "inadvertently [] omitted from th[e] process of [transfer[ring] active legal hold data between SalesForce.com and Legal Hold Pro]." (*See* Response to Question 8 in 4/14/2020 J. Rosenthal Ltr.)

Subject to reaching an agreement on an appropriate 502(d) Order that the Court would enter, we are amenable to providing documents sufficient to show the number of other legal matters and a general description of those matters.  To the extent any of those other matters involved copyright claims that related to the instant claims, if any, we would be willing to identify those matters.

**REQUEST NO. 18**   All documents concerning any investigations or inquiries regarding "the cause of the preservation failure," "the availability of sources from which the data might be restored or replaced," and "whether any ticket data was impacted," including documents sufficient to show investigatory steps taken and the results of any investigation, and notes or memos from any related interviews or conversations with Kirill Abramov, Dan Vasey, Christine Flores, Kimberly Love, Joshua Paske, Andrew Neipert, Thomas Mahoney, Jason Colvin, Christopher Avery, Timothy Brockel, Mary Haynes, Philip Jones, Kelly Matthews, Christin McMeley, Todd Neuverth, Elfin Noce, Tammy Stewart, or Laurie Rowlett.  (*See* 4/14/2020 J. Rosenthal Ltr.).

Subject to reaching an agreement on an appropriate 502(d) Order that the Court would enter, we would be amenable to producing documents concerning any internal Charter investigations or inquiries regarding "the cause of the preservation failure," "the availability of sources from which the data might be restored or replaced," and "whether any ticket data was impacted," including documents sufficient to show investigatory steps taken and the results of any internal Charter investigation.  We are not amenable to the production of documents concerning investigation conducted by outside counsel, which is work-product.  As we discussed previously in our earlier meet and confers, we were working with Plaintiffs in a voluntary process to disclose the objective facts of the e-mail loss without the waiver of any privilege.  Plaintiffs, however, decided to transform that voluntary process into formal discovery with a motion before the Court.  Having done so, our position is that you should undertake that discovery as authorized by the Court and, thus, have no need to attempt to invade the work product of outside counsel.

**REQUEST NO. 19**   Documents sufficient to identify the "employees on hold in [Charter's] ProofPoint archive as it relates to other matters" (*see* 3/4/2020 Letter from M. Elkin; Response to Question 27(a) in 4/14/2020 J. Rosenthal Ltr.) who sent or received the 1,264,704 messages identified in the Response to Question 14 set forth in John Rosenthal's April 14, 2020 letter.

Charter intends to remain firm on this objection.  We do not see why the identities of the employees on hold in other matters is relevant; furthermore, the identification would be burdensome and costly.  We have conducted a search of all e-mails in the archive where a custodian relevant to this matter was an author, recipient (including cc or bcc), regardless of what other employees in the archive may have sent or received such e-mails from such custodians.  We are happy to discuss this matter further, but to date you have not articulated why such information is relevant to the issues at hand.

3. In terms of the production of documents, we do not anticipate completing the production by June 30th, in light of our ongoing discussion relating to a potential Rule 502(d) agreement.  Obviously, such an agreement impacts the scope of the production.  We are continuing our review and are



June 29, 2020
Page 3

prepared to produce additional documents next week, but the remainder of the production is dependent upon the outcome of our ongoing discussions.

4. For the same reasons stated above, we do not anticipate completing the production of a privilege log until we conclude our discussion relating to the 502(d) agreement.

5. In terms of the specifics of the Rule 502(d) agreement, we have outlined above those categories of documents we would consider producing under a Rule 502(d) agreement as it relates to Requests 6, 17 and 18. We would like to continue the discussion regarding Plaintiffs' willingness to enter a Rule 502(d) agreement that would provide that the production of certain documents would not constitute a waiver of privilege, to include (to the extent such exists):

- Request No. 2:  The legal hold, any updates to the legal hold, the list of custodians subject to the hold, any changes of that list over time, and the categories of information requested to be held.
- Request No. 7:  Documents sufficient to show the manner in which the December 15, 2015 legal hold was recorded, saved, displayed and/or described in Salesforce.com and Legal Hold Pro.
- Request No. 8:   Any legal hold(s) related to Plaintiffs' claims, including documents sufficient to identify (i) all custodians and data repositories subject to the legal hold(s) at any point in time, (ii) what changes were made to the list of custodians or data repositories subject to the legal hold and when, and (iii) the amounts and types of data preserved pursuant to the legal hold and/or deleted notwithstanding the legal hold.
- Request No. 9:  Documents concerning Charter's removal or deletion of the "9 custodians" from "journaling [in] approximately September 2018."
- Request No. 10:  Documents concerning the considerations of taking or not taking snapshots of the inboxes of Tammy DeLoach and Matthew Nelson.
- Request No. 12:  Documents that relate to the planning, execution, and validation of the ZL Technologies to ProofPoint migration and the Salesforce.com to Legal Hold Pro migration.
- Request No. 13:  Documents that relate to the planning, execution, and validation of the ProofPoint cleanup process, including anything related to the deletion of data belonging to the nine custodians.

6. We will respond to your June 11 letter by separate cover.

Sincerely,

*John Rosenthal*

John Rosenthal



June 29, 2020
Page 4

CC:  Michael S. Elkin
JG
ER
JM