# Exhibit 12



North America  Europe  Asia

1901 L Street, NW
Washington, DC 20036
T +1 202 282 5000
F +1 202 282 5100

**JOHN ROSENTHAL**
(202) 282-5875
jrosenthal@winston.com

July 16, 2020

Mitchell Kamin
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643

**Re:** *Warner Bros. Records, Inc., et al v. Charter Communications* Discovery

Dear Mitch:

This letter is in response to your letter of July 3, 2020, and in follow-up to our meet and confer on Monday, July 13, 2020.

**1. 502(d) Order Scope**

Further to our discussion, we have analyzed the 11 Requests raised in your July 3, 2020, letter with respect to our proposal to enter an agreed 502(d) Order. Please find our comments below.

1. RFP 3: Charter did not object to this RFP on the basis of attorney-client privilege; we do not anticipate withholding documents responsive to this Request.

2. RFP 5: Charter does not intend to produce its internal, general legal hold "polices, practices, or parameters" pursuant to an agreed Rule 502(d) Order. To the extent documents are available which reflect application of those policies to documents or custodial records pursuant to legal holds relevant to Plaintiffs' claims, and to the extent those documents do not contain opinion work product of Charter's in-house or outside counsel, Charter is amenable to producing such documents pursuant to a 502(d) Order.

3. RFP 11: To the extent documents are available that are responsive to this Request that do not contain opinion work product of Charter's in-house or outside counsel, Charter is amenable to producing such documents pursuant to a 502(d) Order.

4. RFP 12: As described in our June 29, 2020, letter, Charter is amenable to producing "[d]ocuments that relate to the planning, execution, and validation of the ZL Technologies to ProofPoint migration and the Salesforce.com to Legal Hold Pro migration" pursuant to a 502(d) Order. As we discussed during our July 13, 2020, meet and confer, this would cover otherwise privileged communications that do not contain opinion work product of Charter's in-house or outside counsel.

5. RFP 13: As described in our June 29, 2020, letter, Charter is amenable to producing "[d]ocuments that relate to the planning, execution, and validation of the ProofPoint cleanup process, including anything related to the deletion of data belonging to the nine custodians" pursuant to a 502(d)



<div style="text-align: right">July 16, 2020<br>Page 2</div>

      Order. As we discussed during our meet and confer, this would cover otherwise privileged communications that do not contain opinion work product of Charter's in-house or outside counsel.

6. <u>RFP 14</u>: Communications generated by Charter's in-house legal group notifying, diagnosing, or investigating "the loss of e-mails" will inherently reflect the direction or opinions of Charter's counsel. Charter has not placed the contents of these communications at issue.

7. <u>RFP 16</u>: Please see our response to RFP 14, above.

8. <u>RFP 20</u>: Charter is amenable to producing documents responsive to this Request and concerning Charter's internal e-discovery and litigation support organizations pursuant to a 502(d) Order. Charter is not amenable to producing organization charts for its Information Technology organization, notwithstanding any objection as to privilege, as these are not relevant to any need.

9. <u>RFP 22</u>: To the extent documents are available that are responsive to this Request that do not contain opinion work product of Charter's in-house or outside counsel, Charter is amenable to producing such documents pursuant to a 502(d) Order.

10. <u>RFP 23</u>: To the extent documents are available that are responsive to this Request that do not contain opinion work product of Charter's in-house or outside counsel, Charter is amenable to producing such documents pursuant to a 502(d) Order.

11. <u>RFP 24</u>: Charter does not intend to produce its correspondence with its outside counsel, concerning the conduct of this litigation, whether or not a 502(d) Order is entered. Charter has not placed the contents of these communications at issue. We believe Plaintiffs can conduct their own investigation and analysis of the facts underlying Charter's data loss without prying into Charter's communications with its lawyers about this litigation.

We hope this clarifies our position, and welcome the opportunity to continue our meet and confer if useful. As we previously discussed, our objective in attempting to agree to a Rule 502(d) Order is to timely provide you with materials relating to the facts surrounding the legal hold, the migration, the loss, and the ability to replicate that information from other sources, without a broader waiver of privilege. As we said, the entry into such a proposed order would not preclude Plaintiffs from moving to compel the production of other documents, but they would be precluded from arguing the production of the documents under the 502(d) Order constitutes a waiver of privilege entitling you to other documents.

**2. RFP 17**

The list of employees who were on hold in ProofPoint and from whom Charter has retrieved messages sent or received by custodians relevant to discovery in this case is not relevant to Plaintiffs' inquiry or claims. Additionally, providing this information would be unduly burdensome. In any event, Charter does not believe that as a technical matter it is possible provide this information, as the ProofPoint archive is a single-instance archive that simply associates a metadata address with a designated hold custodian. As an alternative, we could provide you with metadata describing all senders and recipients within the total population.



<div style="text-align: right">July 16, 2020<br>Page 3</div>

### 3. Production Update

As a reminder, during our discussion on July 13, 2020, we clarified that our document production is currently largely contingent on reaching an agreement as to a 502(d) Order.  We have identified very little responsive content that is not subject to any claim of privilege.  If we reach agreement under the terms Charter has delineated, we anticipate production of several hundred documents in short order.

You asked us to estimate the volume of documents that Charter would continue to withhold (and log) pursuant to our exclusion from the scope of the 502(d) Order of documents that contain or reflect opinion work product of Charter's counsel.  While our review is not complete, we estimate that approximately ten percent of the material we have identified as responsive to Plaintiffs' requests might be withheld and logged on this basis.

You also asked us to estimate how long it will take to complete production and furnish privilege logs.  We expect this can be substantially completed within 10 business days of reaching agreement.  We have tentatively identified a substantial number of documents that may require redaction of material related to other litigations and legal holds, and that work may take one or more additional weeks.  We still anticipate that a privilege log can be produced within 10 business days of completing our production.

### 4. 30(b)(6) Responses

You asked us to reconsider our responses to your 30(b)(6) topics 19 and 20, concerning, respectively, (a) whether the legal hold migration error led to the loss of any non-email data and (b) whether the error led to the loss of any documents for any custodians (1) on Charter's initial disclosures or (2) subject to the Special Master's recent order compelling additional custodians.  Charter has reconsidered its position and will produce a corporate witness to testify to these matters based on Charter's current knowledge and understanding.

### 5. 30(b)(6) Deponent

Charter has authorized us to disclose that Charter will sit Daniel Vasey as its corporate designee in response to your 30(b)(6) notice.

<div style="padding-left: 50%">
Sincerely,

*John Rosenthal*

John Rosenthal
</div>

CC:  Michael S. Elkin
JG
ER
JM