IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

    Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

    Defendant.

---

**PLAINTIFFS' PARTIAL OBJECTION TO SPECIAL MASTER'S OCTOBER 8, 2020 ORDER REGARDING PARTIES' MOTIONS TO COMPEL**

---

    Plaintiffs object to the portion of the Special Master's October 8 Order permitting Charter to redact—from a document that the Special Master found contains responsive information that must be produced—any information Charter chooses to deem non-responsive.  Dkt. 261 at 22.

    By Charter's own description, the document is a "report containing summary statistics regarding all types of complaints processed in CATS [*i.e.*, the software Charter used to track abuse notifications that it received]," including copyright infringement notices (the "CATS Summary Statistics File").  Ex. 5.  The document is thus critical evidence and should have been produced long ago.

    In her October 8, 2020 Order resolving Plaintiffs' motion to compel the CATS Summary Statistics File, the Special Master found that Charter's own description demonstrated that the document was relevant and responsive to existing discovery requests.  Dkt. 261 at 18-22.  The Special Master therefore ordered Charter to produce it by October 20.  Bizarrely, however, the

Order went on to provide Charter free license to "redact any information that is not responsive to RFP 61 or that was not relied upon by Charter to respond to Interrogatories 13 and 14." *Id*. at 22 ("Redaction Ruling"). This ruling was not based on any review of the document by the Special Master, and thus gives Charter license to redact what it wants, without any effective check on the scope of those redactions.

The Redaction Ruling is contrary to law and was an abuse of discretion. Courts across the country, including this one, do not permit unilateral redactions for responsiveness in circumstances like these. The Redaction Ruling gives Charter free reign to redact what it deems non-responsive from a document that has been found to be responsive and relevant to the case. The ruling poses a particular danger here, because Charter has engaged in a systematic pattern and practice of withholding relevant and responsive documents—including this one—based on (i) relevance assertions that are flatly contrary to prior rulings in the case, and (ii) broad, unsubstantiated assertions of privilege that Charter has refused to substantiate. Permitting Charter to redact from this or other responsive documents information that it unilaterally deems non-responsive is a recipe for mischief.

Charter's continued concealment of critical evidence must cease, and the Special Master's October 8 Order authorizing Charter to unilaterally redact from this key document information that Charter chooses to deem non-responsive should be reversed.

## **BACKGROUND**

In May 2020, the Special Master ordered Charter to respond fully to Plaintiffs' Interrogatories 13 and 14, which asked how many infringement notices Charter received from 2012 through 2016 (No. 13), and the number of actions, by type of action, it took in response

(No. 14). Dkt. 181 at 26-27. Charter's supplemental responses to Interrogatories 13 and 14 included data going back to November 2012. This surprised Plaintiffs, because Charter had previously stated that it had ticket data (*i.e.*, data identifying specific infringement notices and the actions Charter took in connection with each) dating back only to November 2014. Plaintiffs therefore requested that Charter identify and produce the source of the data for 2012-2014 included in Charter's interrogatory response. Ex. 1 at 4.[1]

Charter refused to identify or produce the document. Addressing Plaintiffs' concern during an August 25 Status Conference, the Special Master ordered Charter to identify the document and state its position on whether Charter would produce it. Ex. 2 at 65:21-25. Charter's subsequent report stated that "the source of the supplemental information is a file that Charter maintains with certain summary statistics concerning CATS, which tracks information on a variety of complaints beyond copyright notices." Ex. 3 at 3.[2]

Plaintiffs immediately requested that Charter produce the document, because (i) it contained relevant information about *copyright infringement* notices that was not reflected in Charter's ticket data, and (ii) it was responsive to Plaintiffs' RFP 61, which sought documents concerning violations of Charter's abuse policy *other than* copyright infringement. *Id*. On the latter point, the Special Master had ordered Charter in May to respond to RFP 61 by producing "CATS data providing information regarding Charter's actions taken in response to different categories of abuse" beyond copyright infringement. Dkt. 181 at 30-31.

---

[1] All citations to exhibits herein refer to the concurrently filed Declaration of Neema T. Sahni.

[2] "CATS" is the Charter Abuse Tracking System, which Charter used during the Claim Period to track abuse notifications that it received, including copyright infringement notices. Dkt. 192-1 at ¶ 32.

3

Charter again refused, forcing Plaintiffs to move to compel. Exs. 3, 4. On October 8, the Special Master ordered Charter to produce the CATS Summary Statistics File (without the Special Master having examined the document) because Charter's own descriptions show that it (i) contains relevant information that Charter relied on to answer Interrogatories 13 and 14, and (ii) is responsive to RFP 61. Dkt. 261 at 19. However, the Order went on to state that Plaintiffs had not "established the relevance of the additional information contained in the source report," without specifying what that additional information might be. *Id*. at 21. On that basis, the Special Master permitted Charter to redact from this responsive document "any information that is not responsive to RFP 61 or that was not relied upon by Charter to respond to Interrogatories 13 and 14." *Id*. at 22.

## ARGUMENT

**I.      Legal Standard**

Under the Order Appointing Special Master, "any order, report, or recommendation of the Master on nondispositive motions (unless it involves a finding of fact or conclusion of law) will be deemed a ruling on a procedural matter," reviewable for abuse of discretion. Dkt. 143 at ¶ 6. A Special Master abuses her discretion when she "fails to articulate a reason for [her] decision…or articulates a reason which has no basis in fact[,] or the reason articulated is contrary to law." *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008). As the Court observed at the September 9 hearing, Hrg. Tr. at 3:19-4:12, the "subordinate role of the master means that the trial court's review for abuse of discretion may be more searching than the review that an appellate court makes of a trial court." Fed. R. Civ. P. 53, Adv. Cmte. Notes, Note to Subd. (g).

Here, the Special Mater's ruling was flatly contrary to law, and the risks attendant to that ruling are particularly heightened in the circumstances of this case.

## II. The Redaction Ruling should be reversed.

The Redaction Ruling is "contrary to law" and therefore an abuse of discretion. The Order acknowledges that the CATS Summary Statistics File contains responsive, relevant information. There is no basis to permit Charter to redact whatever it deems non-responsive from this otherwise relevant document.

Courts in the Tenth Circuit hold that open-ended, unilateral redactions are not permissible under circumstances like these. *See, e.g.*, *Brunet v. Quizno's Franchise Co.*, 2009 WL 902434, at *3 (D. Colo. Apr. 1, 2009) (rejecting redactions to claimed "irrelevant, highly confidential, highly sensitive material" because "[t]here is no reason why the protective order in this case is not sufficient to protect the [claimed non-responsive] material"); *McNabb v. City of Overland Park*, 2014 WL 1152958, at *2-5 (D. Kan. Mar. 21, 2014) ("In the few cases in this district where the court has addressed the propriety of unilateral redactions of either irrelevant, non-responsive, or confidential information, unilateral redactions have been found to be inappropriate."); *cf. Requa v. C.B. Fleet Holding Co., Inc.*, No. 06 CV 01981 PSF MEH, 2007 WL 2221146, at *1 (D. Colo. July 31, 2007) (Hegarty, J.) ("Although the Court found no authority for redacting information simply because it is irrelevant, Plaintiff does not object to this.").

Indeed, the practice is contrary to the predominant weight of authority across jurisdictions. *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 2017 WL 3624262,

at *3 (D.N.J. Apr. 26, 2017) (collecting cases across jurisdictions).  Courts refuse to permit redactions for responsiveness for at least four reasons, all of which apply with great force here.

***First***, courts find unilateral redactions improper because of the "potential for abuse": Plaintiffs should not have to "'take the defendants' word for it' that the redacted portions of the documents are not relevant to the plaintiffs' claim." *IDC Fin. Publ'g, Inc. v. Bonddesk Grp., LLC*, 2017 WL 4863202, at *3 (E.D. Wis. Oct. 26, 2017).  *See also, e.g., U.S. Equal Employment Opportunity Comm'n v. Dolgencorp, LLC,* 2015 WL 2148394, at *2 (N.D. Ill. May 5, 2015) (observing, in rejecting responsiveness redactions, that "[w]hat constitutes relevant information is often a matter of judgment"); *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 (E.D. Cal. Feb. 3, 2010) ("Redaction is, after all, an alteration of potential evidence . . . a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.  It should not come as a shock to those involved in litigation, that parties may see the outcome differently."); *In re Medeva Sec. Litig*, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995) ("Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured.").

Here, this "potential for abuse" is particularly acute.  The Redaction Ruling gives Charter free reign to redact what it deems non-responsive from a document containing subjects of discovery that the Special Master has ruled are relevant, over Charter's objection.  *See* 2-3, *supra* (Plaintiffs forced to compel Charter to produce information responsive to Interrogatories 13 and 14 and RFP 61).  Charter is sure to take a restrictive view of what is responsive, and Plaintiffs will have no way to check what Charter has unilaterally deemed outside the scope of the Special

6

Master's orders. Permitting Charter to redact what it unilaterally deems non-responsive or not relevant presents a serious risk that responsive and relevant information will be shielded from Plaintiffs—especially given Charter's history of refusing relevant discovery and imposing heavy-handed redactions. *See* 9-10, *infra*.

**Second**, courts reject the practice because even if the redacted information is truly non-responsive, the redactions deprive the recipient of discoverable context for the responsive information. *E.g., Bartholomew v. Avalon Capital Grp., Inc.,* 278 F.R.D. 441, 451 (D. Minn. 2011) ("It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information."); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (redactions for responsiveness "breed suspicions, and they may deprive the reader of context"); *Dolgencorp,* 2015 WL 2148394, at *2 (same); *Evon,* 2010 WL 455476, at *2 (same).

This consideration applies with particular force to the CATS Summary Statistics File. Even if one accepted Charter's claim that the "statistical data about all types of abuses" in the CATS Summary Statistics File is not responsive, it would still all provide context because it is clearly of the same type and category of the responsive information.

**Third**, courts find that redacting for relevance is prohibited by the language of Rule 34, which discusses only production of *whole* "documents." Fed. R. Civ. P. 34. "Nothing in that rule either expressly or impliedly authorizes a party to unilaterally redact documents. If anything, the Rule contemplates that a party cannot do so." *Engage*, 2017 WL 3624262, at *4; *see also Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Pa.

7

Sept. 30, 2008) ("Rule 34 talks about production of 'documents,' as opposed to the relevant information contained in those documents . . . . Certainly, a party that seeks to 'inspect' a document would anticipate being able to inspect the entire document."); *Bartholomew,* 278 F.R.D. at 451-52 ("This is the only interpretation of Fed.R.Civ.P. 34 that yields 'just, speedy, and inexpensive determination[s] of every action and proceeding.' Fed.R.Civ.P. 1. This interpretation is buttressed by the fact that the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of relevance.").

Here, too, the Redaction Ruling runs afoul of this authority by granting Charter permission to violate Rule 34. The CATS Summary Statistics File is a document that Charter maintains in the course of its business. Ex. 3 at 3 (Charter describing the "file that Charter maintains with certain summary statistics concerning CATS, which tracks information" concerning copyright and other violations). Under Rule 34, Charter "must produce *documents* as they are kept in the usual course of business"—not with the non-privileged content of those documents obscured according to Charter's views of responsiveness.

*Finally,* courts point to the burden that unilateral redactions place on the courts, which should "not be burdened with an *in camera* inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege." *Beverage Distributors, Inc. v. Miller Brewing Co.*, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010); *see also, e.g., David v. Alphin*, 2010 WL 1404722, at *7 (W.D.N.C. Mar. 30, 2010) (observing that "[t]he court knows of no better way to ensure that a motion to compel will be filed than to unilaterally black out

large portions of documents as the human mind is naturally curious," and rejecting *in camera* review where Protective Order protected any sensitive, assertedly non-responsive information).

Leaving the Redaction Ruling in place will ensure future motion practice and likely *in camera* review, to determine the responsiveness of information that is already fully protected by the Protective Order in this case. If history is any guide, Charter's redactions to the CATS Summary Statistics File will warrant *in camera* review. And if a precedent is set permitting redaction of information on non-responsiveness grounds in this case, Plaintiffs will likely need to challenge other responsiveness redactions going forward.

The risks associated with permitting unilateral redaction are especially heightened here, given Charter's pattern and practice of attempting to withhold relevant and responsive information from discovery:

- Charter has withheld or redacted a substantial volume of documents based on assertions of privilege for which, as this Court found, Charter failed to provide an adequate log. Sept. 9, 2020 Hrg. Tr. at 207:3-211:10. Following that hearing, Charter served an amended log that applied redactions to *nearly 40%* of the subject lines that the Court ordered to be added to the log, notwithstanding the Court's directive that Charter "be judicious on [its] use of redactions and [] to articulate for each redaction why [] the actual language would have revealed an attorney/client communication." *Id*. at 211:13-18. When Plaintiffs indicated they would move to compel production of an unredacted log, Charter agreed that it would produce the log without redactions—thus demonstrating that the redactions were never *bona fide*.

- As described in Plaintiffs' pending motion to compel production of documents listed on Charter's spoliation privilege log (Dkt. 262), Charter has systematically withheld as privileged essentially all documents bearing on Charter's mass deletion of electronically-stored information for most relevant custodians. Charter refuses to disclose even documents showing the terms and scope of the litigation hold that Charter claims to have relied on in this case.

- In response to an order from the Special Master directing Charter to produce revenue-related documents, Dkt. 181 at 37 (RFP 52), Charter recently produced eight spreadsheets for which 80-90% of the material is redacted on almost every page. When Plaintiffs asked Charter to remove these near-blanket redactions, Charter

refused—despite the existence of a two-tiered protective order in this case—claiming "the redacted information is non-responsive budgetary information that is highly sensitive information that is not relevant to the litigation." Ex. 6 at 1.

In these circumstances, it is important not only that the Redaction Ruling be reversed, but also that this Court make clear that, barring extraordinary circumstances, redactions for responsiveness are not appropriate.

\*     \*     \*

To be sure, courts permit redactions in the limited circumstance where the party seeking redaction successfully carries the burden of making a particularized showing of what special considerations, *other than mere non-responsiveness*, merit redaction. *See McNabb*, 2014 WL 1152958, at *4 ("[I]t is…the party redacting information on an otherwise discoverable document[] who has the burden to show why its relevancy-based redactions are proper."). But Charter did not even purport to make such a showing here, nor did the Special Master find that it had done so. Moreover, establishing the extraordinary circumstances that warrant redaction ordinarily requires *in camera* review of the document, which the Special Master did not undertake here. *See* McNabb, 2014 WL 1152958, at *4 (relying on review of redacted emails to overrule producing party's representations).

Instead, the Special Master justified redaction on the grounds that "Plaintiffs have established the relevance and probative value of the information relied upon by Charter, [but] they have not established the relevance of the additional information contained in the source report, nor have they identified a request to which this additional information is responsive." Dkt. 261 at 21. As discussed above, this was legal error; Plaintiffs had no burden to show that any "additional information" was relevant.

Compounding this error, the Special Master relied on her *own* characterizations of the document—sight unseen—that *Charter never even made*. In declining to reconsider her ruling, she observed that "[i]t seems to me that this spreadsheet is [] more akin to a database, from which it is easy to extract and identify the truly relevant information." Ex. 7. But Charter never used the words "database" or "spreadsheet" to describe the document. *See* Exs. 1-3, 5. All along, Charter's descriptions have made clear that it is a freestanding "report" *separate and apart from* its CATS database. *See, e.g.,* Ex. 5 at 7 ("[t]he source documentation is **a report** containing summary statistics regarding all types of complaints processed in CATS"); Ex. 3 ("the source of the supplemental information is **a file** that Charter maintains with certain summary statistics concerning CATS"); Ex. 5 at 8 ("even though **the document** underlying Charter's responses to Interrogatories 13 and 14 tracks certain summary statistics related to non-copyright Acceptable Use Policy violations, the data responsive to RFP 61 was maintained in and retrieved from CATS").

The Special Master's ruling concerning redaction is also inconsistent with other, prior rulings concerning redactions for responsiveness. For example, the Special Master previously permitted Charter to redact pricing information from before the Discovery Period, on the grounds that the parties agreed that the information was outside the scope of discovery. Dkt. 230 at 11. The Special Master contrasted those documents to highly-sensitive artist agreements that she refused to permit Plaintiffs to redact, on the grounds that "there was no agreement that the information that was redacted was not relevant." Ex. 8 (July 2, 2020 Hrg. Tr.) at 120:2-6; *accord Engage*, 2017 WL 3624262, at *4 (cases permitting redactions inapplicable because they

11

"involved prior agreements about what information could and could not be redacted by the producing party" and "[h]ere, there is no pre-existing agreement among the parties").[3]

But here, there is no agreement, concession, nor acknowledgement that whatever Charter redacts will be non-responsive. To the contrary, Charter's *only proffer* of information that it should be permitted to redact described information—statistics regarding subscribers' abuses of Charter's policies—that Plaintiffs have always contended is relevant:

> Any other information contained in the document is either irrelevant or non-responsive and commercially sensitive as it contains statistics regarding the vast array of abuses with which Charter deals as an ISP tracks. Even if the Special Master was inclined to order production of the document, which Plaintiffs entirely fail to justify, Charter should be entitled to redact the non-relevant information.

Ex. 5 at 8-9. Summary statistics concerning "abuses with which Charter deals as an ISP," including abuses *other than* copyright infringement, *are* relevant and responsive. And the Special Master has ordered their production. *See* Dkt. 181 at 30-31 (directing Charter "to produce CATS data providing information regarding Charter's actions taken in response to different categories of abuse"); Ex. 9 (May 18, 2020 Hrg. Tr.) at 79:18-22 (Special Master finding it "to be relevant, [] how Charter managed its own policies and whether or not it took action on these different types of policy violations").

Charter' own description of the document—that it contains "statistics regarding the vast array of abuses with which Charter deals as an ISP"—makes clear that the entirety of the

---

[3] The Special Master found there to be no agreement based on Charter's mere insistence that the terms Plaintiffs wished to redact—extremely sensitive payment terms that were not called for by any document request and have no bearing on this case—were relevant. *See* Dkt. 164 at 9-10. Nor was this the only inconsistent redaction ruling issued by the Special Master. The Special Master also recently refused to permit Plaintiffs to redact, from confidential transcripts from another matter, information that she had specifically ruled was outside the scope of discovery (Plaintiffs', rather than Charter's, dealings with Rightscorp). *See* Dkt. 230 at 23-24.

...

document is relevant for purposes of contrasting Charter's laissez-faire treatment of copyright infringement against its more vigilant responses to other types of abuse by its subscribers. In all events, however, Plaintiffs do not agree that the document (based on Charter's own description) includes non-responsive information, nor has Charter even attempted to show a reason that would justify redaction of this responsive document even if it contained some non-responsive information.

## CONCLUSION

For these foregoing reasons, the Court should overturn the Redaction Ruling.

Dated: October 16, 2020

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS &
WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*/s/ Neema T. Sahni*

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Neema T. Sahni*
Neema T. Sahni