# Exhibit 6

**Ehlers, J. Hardy**

| | |
|---|---|
| **From:** | Ranahan, Erin <ERanahan@winston.com> |
| **Sent:** | Wednesday, September 16, 2020 10:13 PM |
| **To:** | Fields, Michael |
| **Cc:** | Kamin, Mitchell A; Sperling, Jonathan; Sahni, Neema T; Ehlers, J. Hardy; Lampros, Nicholas M.; Hill, Phil; Jeff Gould; Scott Zebrak; Matt Oppenheim; Andrew (Andrew@oandzlaw.com); Kellyn Goler; Jia Ryu; Alvarez, Cesie; Elkin, Michael; Golinveaux, Jennifer; Kearney, Thomas; Anderson, Sean; davideiseman@quinnemanuel.com; Andrew Schapiro; Jessica Rose; Linda Brewer; Allison Huebert |
| **Subject:** | RE: Warner v. Charter - Charter's 18th Document Production |

**[EXTERNAL]**
Counsel,

Charter has fully complied with both Judge Hegarty and the Special Master's orders, and responds below to your mischaracterizations.

*First*, the Special Master's order did not extend the scope of discovery beyond the Claims Period. The portion of the Special Master's Order that you've quoted is only the portion that described your request as it was initially framed. But the Special Master limited the scope of Charter's required response at the May 18 hearing:

> So I would order that Charter produce that information -- it's fairly limited here, that – produce the average or estimated cost that Charter estimates for obtaining a subscriber during the claim period and the average or estimated cost associated with terminating a subscriber's Internet service **during the claim period.**

*See* May 18, 2020 Hr'g. Tr. At 39:19-24 (emphasis added). Charter produced the responsive information for the Claims Period. The additional information you are demanding is beyond the scope of the Special Master's Order.

*Second*, the redacted information is non-responsive budgetary information that is highly sensitive information that is not relevant to the litigation. Plaintiffs' speculative theory that the documents *may* contain information responsive to other requests served by Plaintiffs is not only over-reaching but not tethered to any actual document requests. Although Plaintiffs claim that the information may fall within the scope of Plaintiffs' request for the total number of Charter's subscribers, we note that the discovery request Plaintiffs appear to be referring to is Interrogatory 13, which Charter fully answered. Interrogatory No. 13 is not a "document request," and not a basis to demand the production of the information Charter has redacted (which again is not responsive or relevant).

*Third*, no false representations were made during the December 17 discovery conference. I explained at the time that I understood that Charter tracked its revenue as bundled services, as reflected by its extensive publicly available information, but that we would double check in response to Magistrate Hegarty's inquiry that Charter confirm whether there was any internal way that it may isolate the revenue information for internet services. After that investigation, on January 10, 2020, Charter updated the Court and Plaintiffs' counsel that "Charter will provide information that shows calculations of annual internet revenues from 2013-2016…"

Plaintiffs' own letter summarizing the December 17, 2019 discovery hearing made no mention of Magistrate Hegarty ordering revenue information beyond internet revenue. Plaintiffs' stated:

> Charter provided no response whatsoever to the Court's request for reports on . . . whether Charter maintains distinct internal systems of accounting **for the internet portion of its business**, even when many subscribers bundle with other services (Tr., 45:14-17).

1

*See* Jan. 14, 2020 Letter (emphasis added). Although Plaintiffs' letter complained about the need for the non-internet revenue information, Plaintiffs acknowledged (as they must) that the Court narrowed the scope of their request to exclude non-internet revenue information.

On January 16, 2020, in response to the numerous misstatements in Plaintiffs' January 10 and 14 letters, including citing back to their request for cable and video revenues in an attempt to imply it was encompassed by the Court's Order when it was not, Charter sent a letter to Judge Hegarty confirming its understanding of the scope of the information it was required to provide:

> Charter likewise complied with the Court's order on the remaining requests. With respect to internet accounting, Charter understood those inquiries to be aimed at ascertaining whether some internet only revenues could be gleaned from Charter's accounting records given the bundled nature of the services Charter offers. Charter has determined that it can provide such information, and has agreed to do so. There was no indication from the 12/17/19 hearing that the Court believed phone and cable revenue to be relevant.

*See* Dec. 17, 2019 Hr'g. Tr. at 45:14-17. Charter then produced the information on February 6, 2020. At the February 19, 2020 discovery conference, Magistrate Hegarty acknowledged that the internet-only revenue information, paired with the overall firm financial data, and per-subscriber revenue information for the infringing subscribers, was sufficient to satisfy Plaintiffs' requests. *See* Feb. 19, 2020 Hr'g. Tr. at 142:7-143:5. Although Magistrate Hegarty stated that Plaintiffs could conduct a 30(b)(6) deposition to explore whether other financial information may be responsive to Plaintiffs' requests, he explicitly acknowledged that Plaintiffs were getting far afield of relevancy. *Id.* at 150:17-23.

Indeed, given that Plaintiffs already are in possession of the overall revenues per subscriber, and given that Charter provided the Internet revenue, it is unclear why Plaintiffs need an additional breakdown of cable and voice data. But in any event, Charter has produced the revenue it received for the accused subscribers for each of its services. Charter has also produced the audited financial statements, which provide revenue information for all of Charter's services. Charter provided counts for its total number of subscribers in response to Interrogatory 11. And Charter has produced the ARPU in response to Plaintiffs' RFP 52 which discloses Charter's average revenue information as opposed to actual revenue and profits, which was requested under RFP 18. [*Compare:* RFP 18: Documents sufficient to show your total and average revenues and profits, by month and year, including a breakdown based on the type of service provided *with* RFP 52: Documents sufficient to show the average revenue and profit that you have received per Subscriber, for the life of the account, from January 1, 2012 to present.]

For all of the above reasons, Charter has fully complied with both of Plaintiffs' requests and has been forthcoming with its financial information. Plaintiffs have more than enough information to investigate the Internet revenue vs. the additional revenue sources from Charter subscribers. We do not appreciate you attempting to manufacture a dispute on an issue that has already been resolved.

Regards,

-Erin


**Erin R. Ranahan**
**Partner**
Winston & Strawn LLP
T: +1 (213) 615-1700
D: +1 (213) 615-1835
F: +1 (213) 615-1750
winston.com

2

**From:** Fields, Michael <MFields@cov.com>
**Sent:** Friday, September 11, 2020 9:53 AM
**To:** Alvarez, Cesie <CAlvarez@winston.com>; Elkin, Michael <MElkin@winston.com>; Golinveaux, Jennifer <JGolinveaux@winston.com>; Ranahan, Erin <ERanahan@winston.com>; Kearney, Thomas <TKearney@winston.com>; Anderson, Sean <SRanderson@winston.com>; davideiseman@quinnemanuel.com; Andrew Schapiro <andrewschapiro@quinnemanuel.com>; Jessica Rose <jessicarose@quinnemanuel.com>; Linda Brewer <lindabrewer@quinnemanuel.com>
**Cc:** Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>; Sahni, Neema T <nsahni@cov.com>; Ehlers, J. Hardy <JEhlers@cov.com>; Lampros, Nicholas M. <nlampros@cov.com>; Hill, Phil <PAHill@cov.com>; Jeff Gould <Jeff@oandzlaw.com>; Scott Zebrak <Scott@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Andrew (Andrew@oandzlaw.com) <Andrew@oandzlaw.com>; Kellyn Goler <Kellyn@oandzlaw.com>; Jia Ryu <Jia@oandzlaw.com>
**Subject:** RE: Warner v. Charter - Charter's 18th Document Production

Counsel,

We write regarding three issues related to Charter's 18th document production.

*First*, the Special Master ordered that Charter produce "[d]ocuments sufficient to show the average revenue and profit that [Charter has] received per Subscriber, for the life of the account, *from January 1, 2012 to present.*"  Dkt. 181 at 37 (emphasis added).  However, the documents that Charter has produced include average revenue per subscriber only through 2016.  Please confirm by Monday, September 14 that Charter will supplement its production to include responsive documents *to the present*, as ordered by the Special Master, and a date certain by which Charter will do so.

*Second*, Charter improperly redacted the vast majority of the information in the eight documents it produced.  *See, e.g.*, CHA_00079641 (redacting 426 of the 444 cells in the spreadsheet, and 3 of the 4 footnotes).  It is unclear on what basis Charter is relying to make these redactions.  To the extent Charter contends that these redactions are based on relevance or responsiveness, that is improper, especially because it has already designated these documents Highly Confidential.  *See, e.g.*, *Brunet v. Quizno's Franchise Co.*, No. 07-cv-01717-PAB-KMT, 2009 WL 902434, at *3 (D. Colo. Apr. 1, 2009); *McNabb v. City of Overland Park*, No. 12-cv-2331-CMTJJ, 2014 WL 1152958, at *5 (D. Kan. Mar. 21, 2014); *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2010 WL 4792388, at *5-6 (D. Kan. Nov. 17, 2010).  Furthermore, Charter redacted portions of the documents that are clearly relevant and responsive to Plaintiffs' discovery requests -- *e.g.*, the redacted information appears to include annual numbers showing Charter's total internet subscribers.  Please confirm by Monday, September 14 that Charter will produce unredacted versions of CHA_00079641-50, and a date certain by which Charter will do so.

*Third*, this production raises serious questions about the accuracy of Charter's prior representations to Plaintiffs and the Court regarding its financial documents.  During the December 17 discovery conference, counsel for Charter stated to the Court, "[W]e have revenue numbers, they're not necessarily able to break them down by service for all types because of the way that the bundling [has] now taken over." Dec. 17 Hrg Tr. 41:1-5.  When asked by the Court whether "you know, for a fact, that Charter does not internally track for accounting purposes" its revenues by service, counsel replied, "That is my understanding."  *Id.* 41:9-11.

However, Charter's production includes documents showing "████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████. Therefore, these documents clearly show Charter's revenues by service, contrary to counsel's representations.

Plaintiffs are concerned that Charter has not been forthcoming about responsive and relevant documents in its possession, especially in light of the fact that Plaintiffs' requests for these financial documents were discussed by the parties for months, and at two hearings before the Court.  Please confirm by Monday, September 14 whether Charter is

3

withholding any other documents responsive to Plaintiffs' RFP 18 ("Documents sufficient to show your total and average revenues and profits, by month and year, including a breakdown based on the type of service provided") or RFP 20 ("Documents sufficient to demonstrate your financial performance, including but not limited to regular corporate financial reports, audit reports, auditor letters, and any notes or supporting documents thereto").  Otherwise, please provide a date certain by which all responsive documents will be produced.

Best,
Michael

## Michael Fields
Pronouns: He/Him/His

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4766 | mfields@cov.com
www.cov.com

COVINGTON

**From:** Alvarez, Cesie <CAlvarez@winston.com>
**Sent:** Saturday, September 5, 2020 10:26 AM
**To:** Kamin, Mitchell A <MKamin@cov.com>; Sperling, Jonathan <jsperling@cov.com>; Sahni, Neema T <nsahni@cov.com>; Lampros, Nicholas M. <nlampros@cov.com>; Hill, Phil <PAHill@cov.com>; Fields, Michael <MFields@cov.com>; Jeff Gould <Jeff@oandzlaw.com>; Scott Zebrak <Scott@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>; Andrew (Andrew@oandzlaw.com) <Andrew@oandzlaw.com>; Kellyn Goler <Kellyn@oandzlaw.com>; Jia Ryu <Jia@oandzlaw.com>; Ehlers, J. Hardy <JEhlers@cov.com>
**Cc:** Elkin, Michael <MElkin@winston.com>; Golinveaux, Jennifer <JGolinveaux@winston.com>; Ranahan, Erin <ERanahan@winston.com>; Kearney, Thomas <TKearney@winston.com>; Anderson, Sean <SRanderson@winston.com>; davideiseman@quinnemanuel.com; Andrew Schapiro <andrewschapiro@quinnemanuel.com>; Jessica Rose <jessicarose@quinnemanuel.com>; Linda Brewer <lindabrewer@quinnemanuel.com>
**Subject:** Warner v. Charter - Charter's 18th Document Production

[EXTERNAL]
Counsel,

Please see the attached cover letter regarding Charter's 18th document production available through the below link. I will send the passwords under separate cover.

https://mft.winston.com/?ShareToken=639E47063EC5CEEBFEC9B204B2A59E44910EC36B


Regards,

## Cesie C Alvarez
**Associate Attorney**

Winston & Strawn LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925

D: +1 212-294-6737

F: +1 713-651-2700

VCard | Email | winston.com
*Admitted to practice in New York*

*Not admitted to practice in Texas*



---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.