# Exhibit 1

**O+Z | Oppenheim + Zebrak, LLP**

Jeffrey M. Gould
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016

*Via Electronic Mail*                                                                           July 15, 2020
Special Master Regina Rodriguez
regina.rodriguez@wilmerhale.com

Dear Ms. Rodriguez:

Plaintiffs' work product claim over the Hash Report should be sustained, and the remainder of Charter's demands should be denied as unripe and improperly presented, and also on the merits.

**_Hash Report_**.  From 2012-2015, RIAA engaged MarkMonitor to monitor and detect infringement on peer-to-peer (P2P) networks and send infringement notices to certain ISPs, including Charter.  Contrary to Charter's assertion, MarkMonitor only sent notices after confirming that underlying user was actively infringing.  Pursuant to that program, RIAA sent Charter DMCA-compliant notices in the hope and belief that Charter would do *something* about infringement occurring on its network.  Nothing in the agreements governing the notice program contemplated or anticipated litigation.  Rather, the prospect of litigation arose in late 2015 / early 2016 when outside counsel analyzed the data generated by the notice program, and Plaintiffs determined that Charter did nothing in response to its receipt of more than 700,000 notices.

The work product protection over the Hash Report arises, therefore, from a January 2016 agreement between RIAA and MarkMonitor, entered at the request of outside counsel, expressly in anticipation of litigation.  The Hash Report itself is a spreadsheet initially prepared by outside counsel, containing a list of hashes selected by counsel based on their analysis, as well as counsel's analysis of other information in the underlying notice data—all undertaken for purposes of deciding which works to include in this and other lawsuits against ISPs.  At counsel's direction, MarkMonitor supplemented the spreadsheet to provide additional information and analysis for the purpose of informing counsel's litigation strategy.  Thus, the report is not, as Charter contends, strictly factual or "simply MarkMonitor's 'report' on its findings."  Rather, it reflects counsel's analysis and mental impressions, regarding inquiries that counsel undertook and wanted undertaken, for the express purpose of informing litigation decisions.  That is core work product.  *United States v. J-M Mfg. Co.*, 2013 WL 424782, at *4 (D. Colo. Feb. 4, 2013) (forensic test report, including results, constituted work product where "[t]he selection of a particular test methodology or testing sample or set of samples to test … could reveal attorney opinions, theories, or strategies"), a*ff'd sub nom. Nevada v. J-M Mfg. Co.*, 555 F. App'x 782 (10th Cir. 2014).

Because the report is work product, the burden shifts to Charter to show: "(a) substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means." *Colorado Mills, LLC v. Philadelphia Indem. Ins. Co.*, 2013 WL 1340649, at *3 (D. Colo. Apr. 2, 2013) (M.J. Hegarty).  Charter's sole argument here is its claimed need to know which hashes MarkMonitor did and did not locate during a one-month period in 2016.  But Charter knows *exactly* which hashes Charter

located and downloaded, because Plaintiffs have produced them.  Plaintiffs also produced four indexes for the hard drive of folders/files, named and organized by hash value such that Charter can easily identify the included hashes.

To be clear, Plaintiffs have produced downloaded files containing hashes for *every work in suit*.  By definition, therefore, any files MarkMonitor did not download are *not* works in suit.  Charter thus knows which hashes were downloaded in 2016 and which were not, and can make any argument it wants to the jury about infringing hashes in Plaintiffs' notices that were not produced.  In sum, Charter cannot satisfy its burden to show substantial need and inability to obtain a substantial equivalent.  *See Nevada*, 555 F. App'x at 785 (a "showing of potential relevance" or "potential attacks on the credibility of independent testing done in preparation for litigation" is not sufficient to show substantial need).

Even if Charter could satisfy those elements, its request still fails because, "mental impressions, opinions, and conclusions" are "rarely, if ever, subject to discovery." *Colorado Mills*, 2013 WL 1340649, at *3.  As explained above, the full list of hashes and other information in the report reflect counsel's analysis and mental impressions.

Finally, both Charter's sword/shield and waiver points are without merit.  Plaintiffs neither produced any protected information, nor placed at issue the manner by which counsel analyzed and selected infringement data.  The audio and PCAP files that Plaintiffs produced, and to which Charter points in support of these arguments, are—unlike the Hash Report—raw evidence, over which Plaintiffs have never asserted a privilege.  Charter's own cases support Plaintiffs' position.  *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998) ("Frontier did not use the work product as a sword and is not, therefore, prohibited from shielding the material from discovery.").

**_Charter's unripe, new demands_**.  Charter next attempts to leverage its single privilege challenge into a new and overbroad request for communications with MarkMonitor and others, the list of 7,200 hashes, and more Audible Magic results.  While Charter states in its Rule 7.1 certification that the parties are at an impasse on the Hash Report, its silence on all these other issues speaks volumes.  Discovery by letter to the Special Master is improper.

Charter has not explained, in any event, why Plaintiffs should be compelled to produce documents related to this RIAA/MarkMonitor agreement, when Charter has already served a subpoena on the RIAA for "all documents" concerning that very agreement.  In any event, the list of hashes to be included in the project is core work product for the reasons described above, Plaintiffs have already produced Audible Magic verifications for all the works in suit, and Charter has subpoenaed Audible Magic for transaction logs of all MarkMonitor look-ups during the Claim Period.  No more is required.

Sincerely,

*/s/ Jeffrey M. Gould*