# Exhibit 2

```
                                                                    1




  1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO
  2
     Case No. 19-cv-874-RBJ-MEH
  3  _____

  4  WARNER RECORDS, INC., et al.,

  5      Plaintiffs,

  6  vs.

  7  CHARTER COMMUNICATIONS, INC.,

  8      Defendant.
     _____
  9
 10         Proceedings before MICHAEL E. HEGARTY, United

 11  States Magistrate Judge, United States District Court for the

 12  District of Colorado, commencing at 10:52 a.m., September 9,

 13  2020, in the United States Courthouse, Denver, Colorado.

 14  _____

 15  WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN

 16  TYPOGRAPHICALLY TRANSCRIBED. . .

 17  _____

 18                           APPEARANCES

 19         JONATHAN M. SPERLING, MATTHEW J. OPPENHEIMER, NEEMA

 20  SAHNI and JEFF GOULD, Attorneys at Law, appearing for the

 21  Plaintiffs.

 22  _____

 23

 24             ORAL ARGUMENT/IN COURT HEARING

 25
```

```
                                                          2



 1                   APPEARANCES (continued)
 2              ANDREW H. SCHAPIRO, ERIN R. RANAHAN, JACK M.
 3    TANNER, ALLISON H. HUEBERT, JENNIFER A. GOLINVEAUX and
 4    MICHAEL L. BRODY, Attorneys at Law, appearing for the
 5    Defendant.
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

71

1   perform a comparison in order to determine that.
2       So Mark Monitor goes and identifies the infringing
3   file or the potentially infringing file.  Then they go to a
4   second company called Audible Magic.  Audible Magic has taken
5   our sound recordings that we own and created what they call
6   fingerprints, which is like a digital summary of the sound
7   recording.  And Audible Magic compares the infringing file
8   that Mark Monitor has identified to the fingerprint to
9   determine whether the infringing file is, in fact, an
10  infringing file.  Does it infringe one of our sound
11  recordings?  And if it's a match, then Mark Monitor, as you
12  said, will send a notice identifying an example of one of the
13  actual works that was infringed and the IP number and that
14  goes off to Charter.
15      THE COURT:  And what percentage is a positive hit?
16      MR. SPERLING:  I have no idea, Your Honor.
17      THE COURT:  You have no idea?
18      MR. SPERLING:  No idea.  That's how the process
19  worked.
20      Now, there is a whole dispute in this case about
21  the reliability of Mark Monitor's identification of the
22  infringing file, okay, because they say, hey, they say Mark
23  Monitor didn't preserve a download of the file, they only
24  downloaded it later.  We say a hash is a hash is a hash.  As
25  long as I know I've got the same hash value, it's the same

72

1   file.  That's a fight to be had, but I can't emphasize
2   strongly enough, that's not relevant to what we're here about
3   today.
4           What we're about today is, what did you compare
5   what we claim is the infringing file to.  They're welcome to
6   argue it's not really -- it's not really what Mark Monitor
7   saw on the internet at the time, but the things that we say
8   are infringing files, what do you compare it to to confirm
9   that it's, in fact, infringing.
10          So a moment ago I described to you how the process
11  worked back when we were generating notices, but we've got a
12  simpler way to do it today in this case.  We've produced
13  actual copies of all of the sound recordings at issue, all of
14  the works in suit.
15          So to take the example of Bruce Springsteen, "Born
16  to Run," I don't even recall if it's a work in suit, but
17  assume that it is, we've given them a digital company of
18  Bruce Springsteen's "Born to Run."
19          THE COURT:  Okay.
20          MR. SPERLING:  So now one can simply perform a
21  comparison of the infringing file, and they're welcome to
22  argue it's not actually an infringing file, but the thing
23  that we say is the infringing file, they can compare that to
24  the copy we gave them of "Born to Run."  Either it's a match
25  or it's not.

73

1           THE COURT:  And it's matched how again?  Digitally?
2           MR. SPERLING:  You can do it however you want, Your
3    Honor.  You can listen to them side by side.  You can hire an
4    expert to do some sort of digital analysis, but one --
5    whatever methodology one chooses to use, one can compare the
6    infringing file to the authentic thing and say are these the
7    same song or not.
8           THE COURT:  So where is a record kept of what was
9    downloaded?
10          MR. SPERLING:  So Mark Monitor maintained that
11   record because they maintained a record of the hash value
12   with respect to each of those infringing files.
13          THE COURT:  All the way through the claim period
14   here?
15          MR. SPERLING:  Correct.
16          THE COURT:  Okay.
17          MR. SPERLING:  So, again, I want to emphasize, Your
18   Honor, while there is disagreement between the two sides
19   potentially about the infringing files and how reliable they
20   are, that's not the issue here.  The issue here is, okay,
21   discovery about what you compare that thing to to determine
22   whether it infringed one of our works.  So we have produced
23   all of our works.  We gave them MP3s, said here is the sound
24   recording, knock yourself out.
25          THE COURT:  How many?