# Exhibit 12

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,          :
                                 :
    -vs-                         :   Case No. 1:18-cv-950
                                 :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.          :
                                 :
---------------------------------:
```

VOLUME 1

TRIAL TRANSCRIPT

December 2, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

                                                                    2

APPEARANCES:

FOR THE PLAINTIFFS:           MATTHEW J. OPPENHEIM, ESQ.
                              SCOTT A. ZEBRAK, ESQ.
                              JEFFREY M. GOULD, ESQ.
                              MICHAEL J. DRUCKMAN, ESQ.
                              ANDREW L. GUERRA, ESQ.
                              LUCY G. NOYOLA, ESQ.
                              JIA RYU, ESQ.
                              Oppenheim + Zebrak, LLP
                              4530 Wisconsin Avenue, N.W.
                              5th Floor
                              Washington, D.C. 20015


FOR THE DEFENDANTS:           THOMAS M. BUCHANAN, ESQ.
                              Winston & Strawn LLP
                              1700 K Street, N.W.
                              Washington, D.C. 20006-3817
                                and
                              SEAN R. ANDERSON, ESQ.
                              MICHAEL S. ELKIN, ESQ.
                              THOMAS P. LANE, ESQ.
                              CESIE C. ALVAREZ, ESQ.
                              Winston & Strawn LLP
                              200 Park Avenue
                              New York, NY 10166-4193
                                and
                              JENNIFER A. GOLINVEAUX, ESQ.
                              THOMAS J. KEARNEY, ESQ.
                              Winston & Strawn LLP
                              101 California Street, 35th Floor
                              San Francisco, CA 94111-5840
                                and
                              MICHAEL L. BRODY, ESQ.
                              Winston & Strawn LLP
                              35 West Wacker Drive
                              Chicago, IL 60601
                                and
                              DIANA HUGHES LEIDEN, ESQ.
                              Winston & Strawn LLP
                              333 South Grand Avenue
                              Suite 3800
                              Los Angeles, CA 90071

3

INDEX

OPENING STATEMENTS BY:

   MR. OPPENHEIM                                  27
   MR. ELKIN                                           62

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| DENNIS KOOKER | | |
| | DIRECT | 95 |
| | CROSS | 120 |

CLOSING ARGUMENTS BY:

COURT'S JURY INSTRUCTIONS

   THE COURT                                          18

41

1  Then MarkMonitor would go onto the peer-to-peer networks and
2  search for people who were distributing those infringing hashes
3  because they knew if that person was distributing a file with
4  that hash, it was infringing.  No matter what the file was
5  called, they knew it was infringing.
6            At that point, MarkMonitor would connect to the user
7  and begin the download process and collect detailed evidence
8  about the user, the user who was distributing the file.
9  MarkMonitor would capture the evidence and use that evidence to
10 generate the infringement notice, and then that infringement
11 notice was sent.
12           Now, MarkMonitor sent that notice through a group
13 called the RIAA, or the Recording Industry Association of
14 America.  This association provided antipiracy services to the
15 record industry, among other things.
16           And so the RIAA would send these infringement notices
17 to Cox, and the infringement notices contained all the detailed
18 information that Cox needed to know which of its subscribers
19 was infringing and how.  Cox was receiving infringement notices
20 from a variety of industries, not just music.
21           So what did Cox do when it received infringement
22 notices?  Well, let's turn to that.  They sent an automatic
23 reply in response to infringement notices, and that reply was
24 what Cox told the copyright owners in response to the
25 infringing activity that they were seeing on the network, and

42

1  you'll see here Cox assured the sender that it took what they
2  called abuse complaints seriously.  Copyright infringement was
3  considered one of Cox's abuses, so they took copyright
4  infringement seriously, they said.
5              And then they went on and they said if Cox found that
6  the customer was in violation of Cox's policy, Cox would take
7  the necessary action to stop the infringement.  So every single
8  notice that Cox received, it sent a reply and it said:  We're
9  going to stop the infringement.
10             As you will see as the evidence is presented, this
11 reply could not have been further from the truth.  What Cox was
12 really doing internally with these notices was something
13 entirely different, and we'll get to that shortly.
14             Between 2012 and 2014, Cox accepted over 270,000
15 infringement notices from the RIAA.  At the time that the RIAA
16 sent the notices, it did not and could not know who Cox's
17 subscribers were who were infringing.  Only Cox could know
18 that.  Based on the information that was provided during the
19 course of this lawsuit, we now know that the 270,000
20 infringement notices identified 57,600 Cox subscribers.
21             But Cox did little to stop the infringement by these
22 57,600 subscribers.  In fact, the Cox data shows that more than
23 half of these subscribers were caught and reported in three or
24 more notices by copyright owners who had sent notices to Cox.
25             These were subscribers who were caught again and

43

1  again and again.  And during this trial, you will hear that
2  there were subscribers who reported dozens, hundreds, and even
3  some thousands of times in the very short period of 2012 to
4  2014.
5           So even though Cox was up to its neck, its eyes,
6  whatever expression you like, in infringement notices, and even
7  though, as you're going to see later, Cox had an endless number
8  of internal e-mails about the infringement on its network, Cox
9  is going to try to convince you that the infringement didn't
10 really happen.  Cox will likely claim there's no proof that Cox
11 subscribers were infringing, but the evidence that you will see
12 will be overwhelming.
13          I already described that MarkMonitor was the gold
14 standard when it comes to brand protection and antipiracy, and
15 there's a reason that they're hired not only by the music and
16 movie industries, but they're also hired by banks, professional
17 sports leagues, and major brands like Apple and Google.  You
18 will see and hear from a MarkMonitor witness who was deeply
19 involved in the process of sending these notices, and he will
20 describe and show you that process, and you will see the
21 270,000 notices that were sent.
22          No, we're not going to go through 270,000 notices,
23 but you'll see an example, and you'll see all of them if you
24 want to.  And you will see that MarkMonitor has copies of the
25 infringing files, and you will hear from a technical expert who