**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> *Defendant*. | Case No. 19-cv-00874-RBJ-MEH |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S RESPONSE TO PLAINTIFFS' PARTIAL OBJECTION TO SPECIAL MASTER'S OCTOBER 8, 2020 ORDER**

In their Partial Objection (Dkt. 264 ("Obj.")) to the Special Master's Oct. 8, 2020 Order (Dkt. 261("Order")), Plaintiffs ask the Court to order Charter to produce, in un-redacted form, the entirety of a voluminous, data-saturated Excel spreadsheet (the "Spreadsheet"), despite the fact that the Spreadsheet is not responsive to any outstanding document request and the Special Master's decision to permit Charter to redact the Spreadsheet's extensive non-responsive information is fully consistent with the law. The Special Master's decision should not be disturbed.

Plaintiffs initially requested in interrogatories discrete statistics reflecting: (1) how many copyright notices Charter received; and (2) the actions Charter took in response. There is no dispute that Charter provided in full the requested statistical information. Unsatisfied, Plaintiffs then demanded that Charter *also* produce the underlying document from which Charter retrieved these statistics (*i.e.*, the Spreadsheet). But the Spreadsheet contains **over 20,000** data entries that have nothing to do with any extant discovery request, on topics clearly and easily distinguishable by tab, column and row, and was referenced by Charter only to provide the information needed to

1

respond to the discrete interrogatories posed (which were answered in full). There is no basis for Plaintiffs to now inject further confusion and complexity into this already complex case by demanding the production of a massive spreadsheet containing tens of thousands of pieces of data that are commercially sensitive and not even *responsive* to Plaintiffs' discovery requests, as the Special Master found. While Charter respectfully submits that it should not have been ordered to produce the Spreadsheet in the first place because Charter already provided to Plaintiffs the specific information demanded in their interrogatory responses, the Special Master's reasoned compromise of allowing Charter to redact from the Spreadsheet the non-responsive information is consistent with how courts treat motions seeking to compel the production of data-rich spreadsheets containing a plethora of non-responsive information, and certainly comes nowhere close to an abuse of the Special Master's discretion.

Plaintiffs' Objection should be overruled.

## BACKGROUND

In their Second Set of Interrogatories, Plaintiffs requested that Charter: (1) "[s]tate" the number of copyright notices it received and the number of customer facing actions it took from January 1, 2010 through May 17, 2016; and (2) "identify" the persons most knowledgeable about the notices and actions. Defs.' Ex. A, Pls.' 2d Set of Interrogatories, Nos. 13-14 (Feb. 7, 2020). Consistent with the nature of Fed. R. Civ. P. 33, *see* 8B Wright & Miller, *Federal Practice & Procedure* § 2166 (3d ed.), Plaintiffs did not request the production of documents in these interrogatories.

On July 31, 2020, Charter fully answered the interrogatories. *See* Order 18 (noting Plaintiffs do not challenge sufficiency of Charter's responses). Plaintiffs then piggy-backed on

2

their existing interrogatories by propounding a request for the production of "[a]ll documents" which Charter relied on in responding to any of Plaintiffs' interrogatories. Defs.' Ex. B, Pls.' 1st Set of RFPs, No. 24 (June 10, 2019). Charter agreed to produce such responsive, non-privileged documents to the extent that Charter chose to cite such documents in response to an interrogatory pursuant to Fed. R. Civ. P. 33(d), but otherwise objected to the request on numerous grounds. *See* Defs.' Ex. C, Charter's 1st Supp. Resps. to Pls.' 1st Set of RFPs, No. 24 (May 27, 2020). Plaintiffs did not timely challenge those objections. *See* Dkt. 261, Special Master's Order Re: Mots. Compel ("Order") 19-20 (Oct. 8, 2020) (noting Plaintiffs' failure to challenge Charter's response).[1]

Plaintiffs also requested all documents relating to "CATS"—Charter's software for tracking abuse notifications—including five separate categories of documents. *See* Defs.' Ex. E, Pls.' 2d Set of RFPs, No 26 (Feb. 7, 2020). Charter agreed to produce manuals for CATS and to make a version of the CATS source code available for inspection by Plaintiffs, but asserted valid objections to producing the numerous other types of cumulative or irrelevant evidence Plaintiffs requested. *See* Defs.' Ex. F, Charter's 1st Supp. Resps. to Pls.' 2d Set of RFPs, No. 26 (Apr. 29, 2020). Plaintiffs again failed to timely challenge Charter's objections. *See* Order 20 (noting failure to object).

Finally, Plaintiffs requested all documents or communications comparing Charter's responses to violations of its "Acceptable Use Policies" for copyright infringement with responses to other types of violations. *See* Defs.' Ex. E, No. 61. Charter objected, and the Special Master subsequently narrowed Plaintiffs' request to "CATS data providing information regarding

---

[1] Indeed, Plaintiffs lodged similar objections to a similar request for production from Charter. *See* Defs.' Ex. D, Pls.' Am. Resps. to Charter's 1st & 2d Sets of RFPs, No. 83 (May 27, 2020).

Charter's actions taken in response to different categories of abuse." Dkt. 181, Special Master's Order Resolving Discovery Disputes ("May 29 Order") 30-31. Plaintiffs did not object to that part of the Order, and Charter subsequently produced that information on June 25, 2020. *See* Dkt. 199, Pls.' Partial Obj. to Special Master's May 29, 2020 Order 1 (July 13, 2020) (not objecting to order on RFP No. 61). Specifically, as Charter informed the Special Master and Plaintiffs, the information responsive to RFP No. 61 was provided via a report generated from Charter's CATS system, which Charter produced to Plaintiffs. *See* Defs.' Ex. G, J. Golinveaux Email (May 27, 2020).[2]

Separate from and unrelated to RFP No. 61, Plaintiffs also demanded to know the source of the information Charter relied on in answering Interrogatory Nos. 13 and 14. *See* Pls.' Ex. 2 (Dkt. 264-3), Aug. 25, 2020 Hr'g Tr. 55:5-65:25. The Special Master concluded that this information had not been requested in the interrogatories, but in the interest of expediency nonetheless directed Charter to state whether it could identify the source of the information. *Id.* 63:9-12, 64:14-16. Charter did so on August 28, 2020, stating that the source that it relied on was "a file that Charter maintains with certain summary statistics concerning CATS, which … contains additional information and data not relevant to this litigation." Pls.' Ex. 3 (Dkt. 268-4) at 3. This file—*i.e.*, the Spreadsheet—is a data-rich document containing **over 20,000** entries (more akin to

---

[2] The Spreadsheet at issue in this briefing is entirely different from this CATs report and does not contain the information ordered in response to RFP No. 61. That information was provided via the separate CATs report.

a database) and reflecting a wide array of information not sought by Plaintiffs and having nothing to do with this case, including highly sensitive third-party information.[3]

Unsatisfied with this information, Plaintiffs brought a motion to compel Charter to produce the entire Spreadsheet, Pls.' Ex. 4 (Dkt. 264-5) at 5-9 (Sept. 2, 2020), notwithstanding that it was not called for by any pending discovery request: (1) not Interrogatory Nos. 13 or 14, which did not call for the production of documents; (2) not RFP Nos. 24 or 26, which Plaintiffs chose not to pursue after Charter objected; and (3) not RFP No. 61 which, as narrowed by the Special Master, only called for "data providing information regarding Charter's actions taken in response to different categories of abuse," May 29 Order 30-31, and was satisfied by the production of a different report containing different information.

After briefing, the Special Master issued her Order, in which she held that "Plaintiffs' motion to compel the source report [Spreadsheet] in its entirety is denied." Order 19. In this Order, she accurately stated that Charter's objections to RFPs Nos. 24 and 26 stood unchallenged and therefore held that Charter was not obligated to produce the Spreadsheet in response to either RFP. Order 19-20. Additionally, she found that certain discrete information in the Spreadsheet was only discoverable to the extent that it was relied upon by Charter in responding to Interrogatory Nos. 13 and 14, or to the extent it provided discrete information "responsive to RFP 61," for information sought by the interrogatories pre-dating 2014. *Id.* 21.

---

[3]   The Court need not address Plaintiffs' critique of the word "spreadsheet," which accurately describes the document in any event. Obj. 11. That the Spreadsheet is a "file" or that it "reports" information does not undo that it is in the form of a spreadsheet.

However, the Special Master noted that the "probative value" of any such information was limited to "the information relied upon by Charter"; and, in stark contrast, noted that Plaintiffs "have not established the relevance of the additional information contained in the [Spreadsheet], nor have they identified a request to which this additional information is responsive." *Id.* To balance these interests, she ruled that "Charter is therefore ordered to produce the source report, but it may redact the portions of the report that are not responsive to RFP 61 or that were not relied upon by Charter to respond to Interrogatories 13 and 14." *Id.* at 19.

On October 12, 2020, Plaintiffs asked the Special Master to reconsider her decision, while somehow "not formally seek[ing] reconsideration." Pls.' Ex. 7 (Dkt. 264-8) at 2. The Special Master responded on October 14, 2020, reminding Plaintiffs that she did not "believe that Plaintiffs have issued a document request that covers the source report in its entirety" and that "Charter has already produced or will produce all of the information included in the document that is responsive to any of Plaintiffs' requests in accordance with my previous orders." *Id.* at 1. The Special Master concluded: "It seems to me that this spreadsheet is therefore more akin to a database, from which it is easy to extract and identify the truly relevant information." *Id.* Plaintiffs subsequently filed this Objection.

**LEGAL STANDARD**

An order from the Special Master on nondispositive motions will "only" be set aside if "it constitutes an abuse of discretion." Dkt. 143, Order Appointing Special Master ¶ 6 (Mar. 11, 2020). To satisfy the "abuse of discretion" standard, an order must be based on "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Baldwin v. United States*, 2012 WL 7051296, at *3 (D. Colo. Sept. 17, 2012) (quoting *Mid-Continent Cas. Co. v. Village At Deer Creek*, 685

F.3d 977, 981 (10th Cir. 2012)) (plaintiff failed to demonstrate special master abused discretion); *see also Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008) (overruling objections and holding that an abuse of discretion involves the special master "fail[ing] to articulate a reason for [her] decision" or "articulat[ing] a reason which has no basis in fact or the reason so articulated is contrary to law") (citation omitted).

## ARGUMENT

### I. PLAINTIFFS IMPROPERLY MOVE TO COMPEL PRODUCTION OF A DOCUMENT THAT IS NOT RESPONSIVE TO ANY DISCOVERY REQUEST

It is blackletter law that "[a] motion to compel is appropriate only where an appropriate request is made of the responding party." *D'Onofrio v. SFX Sports Grp., Inc.*, 247 F.R.D. 43, 48 (D.D.C. 2008) (refusing to compel production where no request had been made); *see also James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 695 (S.D. Fla. 2006) (motion to compel production denied where movant fails to make formal discovery request). Here, Plaintiffs fail to identify ***any*** specific discovery request the Spreadsheet itself is responsive to. Instead, Plaintiffs sweepingly describe the Spreadsheet as "responsive" with no explanation of which specific RFP it purportedly responds to. *See, e.g.*, Obj. 4, 13 (describing Spreadsheet as "this responsive document").

This is unsurprising, as none of the discovery requests that Plaintiffs rely on require the production of the Spreadsheet. ***First***, Charter's objections to Plaintiffs' dragnet requests in RFPs Nos. 24 and 26 were not timely challenged by Plaintiffs—a finding squarely made by the Special Master (Order 19-20) that Plaintiffs do not dispute in their Objection. ***Second***, RFP No. 61 was explicitly limited by the Special Master in the May 29 Order to the production of "data providing information regarding Charter's actions taken in response to different categories of abuse," and does not require the production of the Spreadsheet unless it contains such responsive data (and it

7

does not).  May 29 Order 30-31.  The Special Master quoted this very language in her Order, and Plaintiffs do not object to her recitation of her previous holding (nor could they, as the time to object to her May 29, 2020 ruling on RFP No. 61 long since expired).[4]

Plaintiffs try to skirt this issue by misrepresenting the Special Master's Order as supposedly having "found … that the document was relevant and responsive."  Obj. 1; *see also id.* at 2 (describing Spreadsheet as "a document that has been found to be responsive").  This is false—the Order states that "the *information* relied upon" by Charter in answering interrogatories—and not any *document*—would be considered "responsive."  Order 21 (emphasis added).  Indeed, after Plaintiffs' counsel emailed the Special Master to ask her to reconsider her ruling, she explicitly stated that "Charter is obligated to provide responsive *information* to the Plaintiffs, not necessarily "responsive *documents*."  Pls.' Ex. 7 (Dkt. 264-8) at 1 (emphasis in original).  In light of this ruling, the Special Master ordered Charter to produce the Spreadsheet in redacted form only to the extent it contained information relied upon by Charter in answering Interrogatory Nos. 13 and 14 or responsive to RFP No. 61.  Order 22.

In other words, the Special Master found that Charter need not produce the Spreadsheet in response to RFP No. 61 unless it contained information specifically sought by the (now-narrowed) request for production.  And as to Spreadsheet, generally, the Special Master held that Plaintiffs had otherwise not "identified a request to which [it] is responsive."  *Id.* at 21; *cf. RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 222 (N.D. Ill. 2013) ("[T]he Court does not compel parties to produce documents that were not requested.").  Plaintiffs do not address the clear parameters of

---

[4]  As noted above, information responsive to RFP No. 61 has already been provided to Plaintiffs via a separate CATs report.

the Special Master's ruling in their Objection, nor explain why the Special Master's holding on this point "has no basis in fact" or "is contrary to law." *Lee*, 249 F.R.D. at 671.

For this reason, Plaintiffs' free-floating characterization of the Spreadsheet as "relevant," Obj. 11-13, untethered to an actual demand, cannot give rise to a motion to compel. Federal Rule of Civil Procedure 26(b)(1) limits discovery to information that is "relevant to [a] claim or defense" and "proportional to the needs of the case" in light of the burden of the discovery and other factors. Fed. R. Civ. P. 26(b)(1). When a party propounds requests for production that go beyond these or other relevant limitations, the opposing party has the right to object. Fed. R. Civ. P. 34(b)(2)(C). If the parties are unable to resolve the dispute, the propounding party has the burden of moving to compel production over the opposing party's objection. *Cont'l Indus., Inc. v. Integrated Logistics Sols., LLC.*, 211 F.R.D. 442, 444 (N.D. Okla. 2002). This allows the Court to resolve the dispute in light of the Federal Rules, case law, local practice, and the Court's experience and discretion. *See Ritzmann v. Nalu Kai, Inc*., 523 F. Supp. 2d 564, 568 (S.D. Tex. 2007) ("An objection … is not passed on by a court unless a motion to compel under Rule 37(a) is made.") (alteration in original) (citation omitted). Plaintiffs seek to bypass these important steps; instead, they ask for Charter to be compelled to produce a document that is not responsive to RFP 61 as narrowed by the Special Master in a manner that Plaintiffs decided not to challenge. Judicial economy and equity demand that Plaintiffs be held to that decision.

Because Plaintiffs do not identify a specific document request that compels the production of the Spreadsheet, their Objection should be overruled—the Court need go no further.

**II.     COURTS ROUTINELY PERMIT DOCUMENTS TO BE REDACTED IN APPROPRIATE CIRCUMSTANCES SUCH AS THOSE PRESENTED HERE**

Even if Plaintiffs' motion to compel was made pursuant to a valid request, their Objection still should be overruled because the Special Master did not abuse her discretion in conditioning the Spreadsheet's production on Charter's redaction of voluminous non-responsive material.

Contrary to Plaintiffs' suggestion otherwise (Obj. 5-10), courts permit the redaction of non-responsive material from voluminous documents prior to production. *See, e.g.*, *RBS Citizens*, 291 F.R.D. at 222 (holding that "redacting documents that are non-responsive to … document requests is appropriate" and collecting cases permitting documents to be redacted). This is particularly true in the case of voluminous spreadsheets, as they "are often designed to pivot, storing vast quantities of information regarding disparate business ventures, product lines, marketing outlets, etc., that can then be queried or otherwise manipulated to produce specific reports of interest to the user." *Corker v. Costco Wholesale*, 2020 WL 1987060, at *2 (W.D. Wash. Apr. 27, 2020) (considering nature of Excel workbooks and "other potentially expansive databases" as warranting redaction of non-responsive information before declining to rule on the issue for other grounds).

For example, in *Epling v. UCB Films, Inc.*, the court considered a spreadsheet that contained information about applicants to numerous departments at a plant. 2000 WL 1466216, at *12-13 (D. Kan. Aug. 7, 2000). Because the court found that the scope of discovery should be limited to information about one department, it permitted the defendant to "redact any information from the … spreadsheet" concerning any of the other departments. *Id.* at *12. Similarly, in *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, the court upheld the defendant's decision to redact a spreadsheet so that data for each product that allegedly infringed a patent-in-suit was provided, while data on non-infringing products was redacted. 2014 WL 4593338, at *5 (N.D.

Cal. Sept. 15, 2014) (because plaintiff was not entitled to discovery on non-infringing products, defendant had "properly redacted … data from the spreadsheets").[5] *Cf.* Fed. R. Civ. P. 26(c)(1)(G) (permitting Court to restrict information to being "revealed only in a specified way").

Here, the Special Master granted Charter leave to do exactly what the law permits. Charter was ordered to produce, and is producing, all parts of the Spreadsheet disclosing information that was relied upon by Charter in responding to Interrogatory Nos. 13 and 14 and has confirmed that the Spreadsheet does not otherwise contain information responsive to RFP No. 61. Order 22. Just as in *Epling* and other cases, the Special Master allowed Charter to redact information from a data-heavy spreadsheet that falls outside the scope of discovery. *Id.* As the Special Master correctly explained, "this [S]preadsheet is … more akin to a database, from which it is easy to extract and identify the truly relevant information." Pls.' Ex. 7 (Dkt. 265-8) at 1. Plaintiffs never objected (and still do not object) that the Special Master erred in her limitation of the relevant discovery requests; rather, they object because they would like to see the non-responsive information that happens to be included in the massive Spreadsheet. But the Special Master's decision to permit redactions of this Spreadsheet, with its "vast quantities of information," *Corker*, 2020 WL 1987060, at *2, is consistent with the law and not an abuse of discretion. Thus, the Court has more than sufficient ground to overrule Plaintiffs' Objection because the Special Master's Order both has "basis in fact" and her reasoning is not "contrary to law."

---

[5] Plaintiffs also contend that the redacting party must affirmatively show that redacting would be appropriate. Obj. 10. However, as these cases show, it is the moving party who must show it is "entitled to" the discovery in question. *Icon-IP*, 2014 WL 4593338, at *5.

None of Plaintiffs' arguments is to the contrary. While they cling to a broad assertion that "redactions are not permissible under circumstances like these," Obj. 5, they gloss over the fact that the circumstances here are *not*, in fact, like those in the cases they rely upon. But, as Plaintiffs concede, the Special Master previously permitted Charter to redact non-responsive information. Obj. 11 (citing Dkt. 230 at 11 (Special Master permitting Charter to redact non-responsive pricing information)). To this end, Plaintiffs' cited cases turn on a party's unilateral assessments of **relevance**. *See* Obj. 5-6 (citing cases); *Brunet v. Quizno's Franchise Co. LLC*, 2009 WL 902434, at *2-3 (D. Colo. Apr. 1, 2009) (rejecting redactions based on relevance); *McNabb v. City of Overland Park*, 2014 WL 1152958, at *2 (D. Kan. Mar. 21, 2014) (similar); *Requa v. C.B. Fleet Holding Co., Inc.*, 2007 WL 2221146, at *1 (D. Colo. July 31, 2007) (similar); *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 3624262, at *1 (D.N.J. Apr. 26, 2017) (similar). Redactions for non-responsiveness, however, turn on the straightforward issue of what the discovery demand seeks. Here, the Special Master permitted Charter to redact information in a spreadsheet that is not responsive to Interrogatory Nos. 13 or 14, or to RFP No. 61—the scope of which she defined in her May 29 Order (at 30-31 & n.3),[6] and which she reiterated both in the instant Order (at 21) and in her response to Plaintiffs' email request for voluntary reconsideration (Pls.' Ex. 7 (Dkt. 265-8) at 1). The "danger" invoked by Plaintiffs (Obj. 2) of Charter supposedly redacting "relevant" information is therefore illusory.

---

[6] The Special Master narrowed RFP No. 61 to "'CATS data providing information regarding Charter's actions taken in response to different categories of abuse,'" in the form of "a report that 'summarizes the non-copyright AUP violations by type and by total number of actions taken in response to each category of AUP violation." Order 21 (quoting May 29 Order 30-31 & n.3).

12

Plaintiffs likewise err in suggesting that Charter's redactions "deprive [Plaintiffs] of discoverable context for the responsive information," Obj. 7, because where discrete information is ordered to be produced, and *is* produced, there is no concern about additional "context"—the produced information stands complete on its own accord, regardless of whether it is alone on the page or happens to be accompanied by other non-responsive data.

Plaintiffs' appeal to the language of Rule 34 is similarly flawed. *See* Obj. 7-8. Even if the text of Rule 34 required the production of entire documents (a self-made requirement that appears nowhere in the text or Plaintiffs' authorities), the Special Master's ruling on RFP No. 61 required Charter to provide only the information responsive to the as-narrowed request, which Charter provided via a separate report generated from CATs. Pls.' Ex. 7 (Dkt. 265-8) at 1 (emphasis in original). By producing this separate CATs report, Charter fully complied with Rule 34. If Plaintiffs disagreed with the Special Master's ruling on the scope of RFP No. 61 because they wanted it to be more broadly construed as requiring the wholesale production of "all documents" rather than the narrow set of documents containing the "information" deemed responsive by the Special Master, they should have objected within five business days after that order was issued on May 29, 2020. They didn't.

Nor does any hypothetical "potential for abuse" (Obj. 6-7) show that the Special Master abused her discretion, as Plaintiffs have not provided any grounds "beyond [their] litigation-driven general suspicions" to accuse that Charter will redact "on other than good faith." *Gates v. Rohm*

*& Haas Co.*, 2007 WL 295416, at *1 n.1 (E.D. Pa. Jan. 29, 2007).[7] To preemptively challenge redactions on the ground that Charter will make them in bad faith is improper.

Plaintiffs' final argument—that no redactions should be permitted because they will move to contest them, creating a need for *in camera* review—is both circular and self-defeating. Obj. 8-10. The fact that "the human mind is naturally curious" is not a basis to seek an *in camera* review for "relevancy," as this would merely create unnecessary and burdensome work for the Court and undoubtedly open the floodgates on further discovery disputes, causing contested issues to proliferate. If "curiosity" were the applicable standard for discovery, no case would be able to move forward efficiently. Moreover, this dispute does not resemble the cases cited by Plaintiffs, where, for example, the redactions involved multiple documents and the bases for the redactions were unclear. *See Beverage Distribs., Inc. v. Miller Brewing Co.*, 2010 WL 1727640, at *5 (S.D. Ohio Apr. 28, 2010) (distinguishing cases where "the number of redacted documents appeared to be small, and the content of the redactions was readily apparent"); *cf. Corker*, 2020 WL 1987060, at *2 (discussing unique nature of spreadsheets as warranting more nuanced redaction considerations). Here, only one Spreadsheet is in dispute, and the bases for the proposed redactions have been carefully vetted and authorized by the Special Master after extensive argument. The Court should reject Plaintiffs' desire to create unnecessary work for the Court based on unfounded speculation as to the Spreadsheet's non-responsive contents.

---

[7] Charter declines to engage with Plaintiffs' misleading characterizations of unrelated discovery disputes, the relevant parts of which neither the Special Master nor this Court have passed on. *See* Obj. 9-10.

## CONCLUSION

Plaintiffs' Partial Objection to the Special Master's October 8, 2020 Order should be overruled.

Dated: October 23, 2020

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Respectfully submitted,

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro
Nathan A. Hamstra
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
E-mail: andrewschapiro@quinnemanuel.com
E-mail: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.

1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant*
*Charter Communications, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro