**O+Z | Oppenheim + Zebrak, LLP**

Jeffrey M. Gould
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016

*Via Electronic Mail*                                                                                         November 2, 2020
Special Master Regina M. Rodriguez
regina.rodriguez@wilmerhale.com

Dear Ms. Rodriguez:

      Plaintiffs write to oppose the portion of Charter's Motion to Compel Compliance with *Subpoena Duces Tecum* by Audible Magic (ECF No. 258) that seeks to compel production of Plaintiffs' protected work product—namely the results of counsel's direction to MarkMonitor to analyze files using Audible Magic's identification and verification tool. That analysis was undertaken by MarkMonitor at the request and direction of counsel in anticipation of litigation and is core work product reflecting Plaintiffs' legal strategy. Charter's motion should be denied because Charter has not made the necessary showing to overcome Plaintiffs' work-product claim. The instant motion, however, cannot be resolved separately from Charter's pending motion before Magistrate Judge Hegarty to pierce Plaintiffs' work-product claim over the hash report. ECF No. 267. Plaintiffs therefore request that Charter's motion with respect to the 2016 Audible Magic transaction logs be transferred to Judge Hegarty pursuant to his September 9, 2020 order that he is taking complete jurisdiction over privilege disputes.

      Plaintiffs also object to Charter's request for post-Claim Period documents concerning Audible Magic, which the Special Master already denied in party discovery. Plaintiffs plainly have standing to oppose on these bases.[1]

**I.    Charter's motion should be transferred to Magistrate Judge Hegarty and denied.**

    **A. Magistrate Judge Hegarty's ruling on Charter's motion to compel production of the hash report will control the outcome of this motion.**

Charter's motion seeks to compel Audible Magic to produce "transaction logs" showing the results of counsel's direction to MarkMonitor in February 2016 to analyze certain files using Audible Magic's identification and verification tool. Mot. at 17-18. MarkMonitor performed that analysis at the direction of Plaintiffs' counsel pursuant to a January 2016 Statement of Work entered into expressly "in anticipation of litigation." Mot. Ex. 3 at 1 ("2016 SOW"). To be clear, the documents Charter seeks were created well after the 2012-2015 infringement notices were sent to Charter and were not the basis of any notices sent to Charter. What Charter really

---

[1] Charter's motion should also be denied as moot with respect to 2016 Audible Magic transaction logs because the only relief Charter sought was that Audible Magic "produce, log, or disclaim" their existence. Mot. at ii. Audible Magic's description of those transaction logs and disclosure that it withheld them on the basis of Plaintiffs' work-product claim satisfies Charter's demand. Charter cannot now use its brief to expand the scope of its motion and seek to compel production of material that its motion only requested be produced *or* logged.

seeks is a window into the analysis that Plaintiffs' *counsel* undertook in preparing this case and deciding to bring these claims.

One of the outputs of the 2016 SOW was the "hash report," and the Audible Magic information at issue here is part of the hash report. As Plaintiffs previously explained, the hash report "is a spreadsheet initially prepared by outside counsel, containing the list of torrent hashes selected by counsel based on their analysis of the underlying notice data." Ex. 1 at 9 (July 21, 2020 J. Gould Ltr. to Special Master). At counsel's direction, MarkMonitor supplemented the [hash report] to provide additional information, including **Audible Magic information**, for the purpose of informing counsel's litigation strategy." ECF No. 266-7 (emphasis added). As the Special Master is well aware, Plaintiffs have *always* maintained that information is protected work product. As a result, currently pending before Magistrate Judge Hegarty is Charter's motion to challenge Plaintiffs' work-product claim over the hash report, including the same February 2016 Audible Magic information at issue here. ECF No. 267 ("Hash Report Motion").

In the Hash Report Motion, Charter argues it has a substantial need for Audible Magic information from the 2016 SOW and cannot obtain substantially equivalent information other than from Plaintiffs. *Id.* at 11-14. Charter has not presented these "need" and "inability" arguments in the instant motion, but Plaintiffs anticipate Charter would do so in any follow-on motion to challenge Plaintiffs' work-product claim asserted here. Regardless, Charter is wrong.

Charter has no need for the 2016 Audible Magic information and has numerous options available to it to obtain substantially equivalent information. As an initial matter, Charter cannot articulate a valid reason that it needs to see what Plaintiffs' lawyers were considering when assembling these claims, other than a window into counsel's thoughts and strategy. Moreover, Charter has copies of the *actual files* used to conduct those Audible Magic look-ups and can conduct any analysis it wants on those files—including running them through Audible Magic's service or listening to the files themselves. To the extent Charter argues that performing new Audible Magic look-ups *today* will not allow it to assess the reliability of look-ups performed during the notice program, which ran from 2012-2015, the same is necessarily true of the *2016* look-ups it demands here, which likewise date from after the notice program. By definition, what Charter seeks is not a recreation of look-ups performed at the time of notice program, but rather to learn what Plaintiffs' attorneys discovered in preparing this case.[2]

In all events, the issues the instant motion raises are inextricably intertwined with the Hash Report Motion. While both motions should be denied because Charter cannot overcome Plaintiffs' work-product claim, Magistrate Judge Hegarty's ruling on the Hash Report Motion will no doubt impact, if not outright control, the outcome here. Further, Magistrate Judge Hegarty has ordered that he is "taking jurisdiction" over privilege issues. Sept. 9, 2020 H'rg Tr. 227:4. Allowing Magistrate Judge Hegarty to rule on the relevant work-product issues raised by both motions eliminates the risk of inconsistent rulings on identical issues and properly preserves Magistrate Judge Hegarty's jurisdiction over privilege issues.

---

[2] Even if Charter could demonstrate a sufficiently substantial need to overcome Plaintiffs' work-product claim over the 2016 Audible Magic transaction logs, that alone would not be sufficient to overcome Plaintiffs' work-product claim over the hash report, which reflects mental impressions and analysis of counsel on matters relating to and beyond the Audible Magic information.

### B. Plaintiffs have standing to oppose Charter's Motion to Compel.

It is well established that an objecting party has standing to challenge "a subpoena issued to a nonparty if the objecting party 'claims some personal right or privilege with regard to the documents sought.'" *Carbajal v. Serra*, No. 10-CV-02862-REB-KLM, 2012 WL 2215677, at *2 (D. Colo. June 15, 2012) (quoting 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.)); *see also Thane v. GEICO Casualty Co.*, No. 16-CV-02940-CMA-MEH, 2017 WL 3157966, at *4 (D. Colo. July 25, 2017) (Hegarty, M.J.) (holding that a party "seek[ing] protection from the subpoena based on the attorney-client privilege and work-product doctrine . . . [has made] the requisite showing to demonstrate she has standing to move to quash . . . ."). While most cases addressing a party's standing to object to a subpoena on privilege grounds arise in the context of motions to quash, the interest at issue and guiding principle are the same—namely, a party is entitled to protect its privileges notwithstanding that the protected material may reside with a non-party.

### C. Plaintiffs have not waived their work-product claim.

Elevating form over substance, Charter contends that Plaintiffs have waived their work-product protection by failing to lodge a timely objection to production of the 2016 Audible Magic transaction logs. Charter is wrong. While Plaintiffs acknowledge they could have asserted a formal objection earlier, there is no basis to find a waiver here.

*First*, Plaintiffs have consistently and repeatedly objected on work-product grounds to Charter's attempts to seek the hash report. To suggest that Plaintiffs objected to production of the hash report, but not the information contained within the hash report, is nonsensical. Plaintiffs first notified the Special Master of their work-product claim on the hash report in their April 29, 2020 submission of the hard drive index and included the hash report on their June 2020 privilege log. Beyond that, the hash report has been the subject of extensive and as yet unresolved litigation over the last six months. When Charter sought to compel production of the hash report in July, Plaintiffs objected, explaining that the hash report was "initially prepared by outside counsel" and contained additional information that "result[ed] from inquiries undertaken based on counsel's analysis." Ex. 1 at 9.

Plaintiffs have further made clear their objection to producing work product involving Audible Magic. For example, when Charter sought "[a]ll Communications between [Plaintiffs] and MarkMonitor or Audible Magic exchanged for the purpose of matching of alleged infringing files of the Copyright Works by Charter subscribers with digital copies of the Copyright Works directly from Plaintiffs . . . ," Plaintiffs objected "to the extent this request called for documents protected by . . . the work product doctrine . . . ." Ex. 2 at RFP 93 (March 26, 2020 Pls.' Objs. and Resps. to Second Set of RFPs).

*Second*, Plaintiffs have not run afoul of Rule 45 in not serving a standalone objection to the subpoena. By its plain terms, Rule 45(d)(2)(b)'s requirement that written objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served," applies only to "[a] person commanded to produce documents" in response to that subpoena. Since Charter's subpoena to Audible Magic did not command

*Plaintiffs* to produce documents, Rule 45 did not require *Plaintiffs* to serve objections within the time for compliance or 14 days on pain of waiver. *Broadcort Capital Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 628 (D. Colo. 1993) (Fed. R. Civ. P. 45(c)(2)(b)'s 14-day requirement "does not apply to a non-served party or non-party, provided that any objection to the subpoena is timely filed.").[3] In any event, Audible Magic, to whom the subpoena was addressed, timely objected, including to "the extent Charter seeks documents and communications that are protected from discovery by . . . the attorney work-product immunity . . . ." Mot. at 15.

*Third*, to the extent Plaintiffs' objection could be viewed as untimely, that still is not a basis to find work-product protection waived here. As Magistrate Judge Hegarty has observed, "a waiver of a privilege should not be imposed based merely on a party's failure to assert an objection within the time provided by the Federal Rules of Civil Procedure." *Chevron Corp. v. Stratus Consulting, Inc.*, No. CIV-A 10-CV-00047(MSK)(MEH), 2010 WL 2135217, at *4 (D. Colo. May 25, 2010) (Hegarty, M.J.) (citations and internal quotations omitted). Where production of protected material would otherwise result, that "alone constitutes good cause sufficient to excuse the untimeliness." *In re Keebaugh*, No. MC 19-163, 2019 WL 5802703, at *3 (E.D. Pa. Nov. 6, 2019) (relying on *Chevron* and finding no waiver of privilege objection to subpoena by untimely objection) (internal quotation marks omitted). Accordingly, "the sanction of 'waiver' is best suited for the more serious discovery violations." *Thane*, 2017 WL 3157966, at *5 (Hegarty, M.J.). Therefore, courts "find a waiver of a privilege only in the presence of unjustified delay, inexcusable conduct, or bad faith." *Chevron*, 2010 WL 2135217, at *4 (internal quotation marks omitted).

None of those are remotely present here. While Plaintiffs acknowledge that they should have lodged this formal work-product objection sooner, there is no basis to find a waiver on this record and given the high standard. The scope of Audible Magic's production was unclear to Plaintiffs for some time. And Plaintiffs recognize that they contributed to this lack of clarity by referencing Charter's subpoena to Audible Magic in resisting Charter's efforts to discover the hash report. During a September 15, 2020 meet-and-confer between counsel, however, "Charter explained that, in fact, Audible Magic had produced no results for any verification inquiries after July 2015." Ex. 3 (Sept. 24, 2020 J. Golinveaux Ltr. to R. Rodriguez). With this understanding, and consistent with their work-product claim over the hash report, Plaintiffs then promptly asserted a work-product claim over the February 2016 Audible Magic transaction logs. *See* Audible Magic Opp. Ex. 12 (Sept. 25, 2020 J. Gould email to J. Rychlinski). Though perhaps imperfect, this is a far cry from bad faith or inexcusable conduct, but rather a good-faith assertion of privilege as a murky record clarified.[4]

---

[3] Though Plaintiffs received Charter's notice of intent to serve the subpoena on Audible Magic, Plaintiffs themselves were not served with the subpoena and "commanded to produce documents."

[4] In this light, Plaintiffs now acknowledge that Charter cannot obtain the February 2016 Audible Magic results elsewhere but, as explained above, Charter still cannot show a sufficiently compelling need to overcome Plaintiffs' work-product protection. And even if Charter could make that showing solely for the Audible Magic transaction logs, that still would not resolve the work-product claim on the hash report, which was prepared at the direction of counsel and reflects additional information and analysis.

**II.     The Special Master has already denied the same post-Claim Period discovery Charter seeks here.**

Charter's demand for post-Claim Period documents concerning Audible Magic (Mot. at 14-18) should be denied as an attempted end-run around the Special Master's May 29, 2020 order denying precisely that. *See* ECF No. 181 at 10-11. Charter never objected to that ruling, and it should apply with equal effect here. *Accord* Audible Magic Opp. at 13-14 (arguing law of the case precludes post-Claim Period discovery here). Charter cannot avoid the limits of the Special Master's prior rulings and the law of the case by seeking the same information from a non-party. *See Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 WL 4166780, at *4–5 (N.D. Cal. Sept. 3, 2019) (granting party's motion to quash when non-party subpoenas "appear[ed] to resemble . . . an attempted end-run" around limits on the scope of discovery previously ordered); *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, No. 6:07-cv-1051-Orl-28DBA, 2008 WL 4186989, at *2 (M.D. Fla. Sept. 8, 2008) ("It is axiomatic that "Rule 45 subpoenas are not to be used as an 'end-run' around the regular discovery rules that apply to parties, *i.e.*, . . . for production of documents in Rule 34."); *Neel v. Mid-Atlantic of Fairfield, LLC*, Civ. No. SAG-10-cv-405, 2012 WL 98558, at *1 (D. Md. Jan. 11, 2012) ("[I]t is unthinkable that the effect of Rule 34 can be emasculated by the use of Rule 45." (internal quotation marks and citation omitted)).

Additionally, under Rule 26(b)(2)(C), either "[o]n motion or on its own, the court ***must*** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii) (emphasis added). Rule 26's requirements apply to non-party subpoenas equally as to party discovery. *See, e.g.*, *Prager v. Campbell County Mem. Hosp.*, No. 10-CV-0202-J, 2011 WL 13134916, at *2 (D. Wyo. June 11, 2011) ("Whether by subpoena under Rule 45, Fed.R.Civ.P., or by some other discovery methods under Rules 27 through 36, the boundaries of discovery are fenced under Rule 26 . . . ."). Charter has had ample opportunity to request post-Claim Period discovery concerning Audible Magic—it has already done so and its request was denied. Thus, the Special Master "must limit" the discovery Charter seeks here under Rule 26(b)(2)(C).

Plaintiffs have standing to object to Charter's demand for post-Claim Period discovery because it has a protectable interest in the rights secured by prior rulings in this case. *Mortg. Payment Protection, Inc. v. Cynosure Fin., Inc.*, No. 6:08-cv-1212-Orl-22GJK, 2010 WL 11507437, at *4 (M.D. Fla. Nov. 5, 2010) ("[A] party has standing to move to enforce the Court's orders and rules.") (citation and internal quotation marks omitted).

Sincerely,

*/s/ Jeffrey M. Gould*