**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

WARNER RECORDS INC., *et al*.,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**CHARTER COMMUNICATION, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL [ECF 262]**

# **TABLE OF CONTENTS**

<b><u>Page</u></b>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................3

LEGAL STANDARD............................................................................................................6

     I.     Attorney-Client Privilege Waiver......................................................................6

     II.    Work Product Immunity .......................................................................................7

ARGUMENT......................................................................................................................8

     I.     NO WAIVER OF ATTORNEY-CLIENT PRIVILEGED
           COMMUNICATIONS HAS OCCURRED............................................................8

           A.     Charter Has Not Asserted Privilege As A Result Of An
                   "Affirmative Act" .........................................................................9

           B.     Plaintiffs Have Failed To Establish That Charter Put Privileged
                   Information "At Issue" In This Case ......................................................10

           C.     Plaintiffs Have Not Established That The Privileged Information
                   They Seek Is "Vital" To A Claim Or Defense...........................................13

     II.    PLAINTIFFS HAVE NOT ESTABLISHED A "SUBSTANTIAL NEED"
           FOR CHARTER'S PROTECTED ATTORNEY WORK PRODUCT.................15

     III.   NO SUBJECT-MATTER WAIVER HAS OCCURRED OR SHOULD
           BE ORDERED.....................................................................................................17

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aull v. Cavalcade Pension Plan*,
 185 F.R.D. 618 (D. Colo. 1998) ..................................................................... 2, 6, 8, 10, 13

*Carbajal v. Lincoln Ben. Life Co.*,
 2007 WL 3407345 (D. Colo. Nov. 13, 2007) ..................................................... 6

*Constantine v. Teachers Coll.*,
 2010 WL 3260164 (S.D.N.Y. Aug. 6, 2010), ................................................... 13

*Enos-Martinez v. Bd. of Cty. Comm'rs of the Cty. of Mesa*,
 2012 WL 1079442  (D. Colo. Mar. 30, 2012) ................................................. 16

*Frontier Ref. Inc. v. Gorman-Rupp Co.*,
 136 F.3d 695 (10th Cir. 1998) ........................................................................ 14

*Gates Corp. v. CRP Indus., Inc.*,
 2018 WL 4697326 (D. Colo. Aug. 10, 2018) ................................................. 13

*Gruss v. Zwirn*,
 2013 WL 3481350 (S.D.N.Y. July 10, 2013) ................................................. 10

*Hearn v. Rhay*,
 68 F.R.D. 574 (E.D. Wash. 1975)............................................... 6, 7, 10, 13, 14

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
 2012 WL 12887089 (N.D. Ga. June 20, 2012)................................... 10, 11, 18

*In re Fluor Intercontinental, Inc.*,
 803 F. App'x 697 (4th Cir. 2020) ............................................................ 12, 13

*In re Kidder Peabody Sec. Litig.*,
 168 F.R.D. 459 (S.D.N.Y. 1996) ................................................................... 10

*In re Martin Marietta Corp.*,
 856 F.2d 619 (4th Cir. 1988) ................................................................... 10, 12

*In re Oltmann*,
 2013 WL 414212 (Bankr. D. Colo. Feb. 1, 2013) ........................................... 8

*In re OM Sec. Litig.*,
 226 F.R.D. 579 (N.D. Ohio 2005) ................................................................... 9

*Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Co.*,
 2011 WL 1527599 (D. Colo. Apr. 21, 2011)................................................... 17

*Jinks-Umstead v. England*,
    232 F.R.D. 142 (D.D.C. 2005) ........................................................................ 16

*Leprino Foods Co. v. DCI, Inc.*,
    2014 WL 2922667 (D. Colo. June 27, 2014) ............................................ 7, 17

*Lyall v. City of Denver*,
    2016 WL 7176716 (D. Colo. Sept. 28, 2016) .................................................. 18

*Martin v. Monfort, Inc.*,
    150 F.R.D. 172 (D. Colo. 1993) ............................................................... 8, 17

*Rosania v. Grp. O. Inc.*,
    2014 WL 1224234 (D. Colo. Mar. 25, 2014) ................................................... 2

*Ryall v. Appleton Elec. Co.*,
    153 F.R.D. 660 (D. Colo. 1994) ............................................................... 7, 14

*United States v. Billmyer*,
    57 F.3d 31 (1st Cir. 1995) ............................................................................... 9

*United States v. Graham*,
    2003 WL 23198792 (D. Colo. Dec. 2, 2003) ........................................... 7, 15

*United States v. Rankin*,
    2020 WL 3036015 (D. Conn. June 5, 2020) .................................................. 18

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................... 6, 12

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*,
    2009 WL 464989 (N.D. Tex. Feb. 23, 2009) ................................................. 18

*Zenith Radio Corp. v. United States*,
    764 F.2d 1577 (Fed. Cir. 1985) ...................................................................... 6

## Other Authorities

*The Sedona Conference Commentary on Protection of Privileged ESI*,
    17 Sedona Conf. J. 95 (2016) ......................................................................... 18

## Rules

8 Fed. Prac. & Proc. Civ. § 2025 ........................................................................ 16

Fed. R. Civ. P. 26(b)(3) ........................................................................... 7, 15, 16

Fed. R. Evid. 502(a) ................................................................................... 7, 17

Fed. R. Evid. 502(d) ....................................................................................... 1, 3

Charter submits this opposition to Plaintiffs' Motion to Compel (ECF 262), which seeks to compel Charter to produce all of its privileged documents relating to its inadvertent loss of certain electronically stored information ("ESI").  Because Plaintiffs come nowhere close to satisfying the high burden of demonstrating that privilege has been waived, and because Charter has already provided Plaintiffs with extensive factual information relating to this ESI loss, the Motion should be denied.

**PRELIMINARY STATEMENT**

When Charter learned of the inadvertent loss of certain ESI resulting from a migration of Charter's legal hold management system in 2017 and 2018, it notified Plaintiffs and: (1) voluntarily provided extensive factual information about the ESI loss in response to almost 50 written questions; (2) identified additional repositories of custodial information, which yielded millions of additional emails that could be searched for responsive information; (3) produced documents responsive to 25 additional document requests; and (4) agreed to make a corporate representative available for a 30(b)(6) deposition on the subject of the ESI loss.  In response to Plaintiffs' document requests, Charter produced over 600 responsive non-privileged documents, and logged the remaining responsive documents on its privilege log.  Charter also offered to produce hundreds of documents from its privilege log subject to the entry of a Federal Rule of Evidence 502(d) order, which would provide Plaintiffs with the additional information they seek but without the risk of broad subject-matter waiver in this and subsequent litigations.

Yet, despite these discussions, Plaintiffs now insist that Charter's provision of factual information about the ESI loss somehow constitutes a categorical waiver of all privilege and work product claims—including communications with legal counsel—concerning Charter's litigation

1

hold and ESI loss because Charter disclosed to Plaintiffs the fact of the ESI loss and worked in good faith to supply Plaintiffs with information about it.  Such a claim of waiver is not only unnecessarily draconian and punitive, but unsupported by law.  The Motion should be denied.

*First*, Plaintiffs do not establish that Charter ever intentionally waived attorney-client protections for the information sought.  Specifically, Plaintiffs fail to meet their heavy burden of establishing "at issue" waiver under Colorado's governing three-prong test: (1) the assertion of privilege was the result of an "affirmative act" by the party claiming privilege; (2) the party claiming privilege put the protected information "at issue" through this act; and (3) application of the privilege would deny the responding party information "vital" to its claim or defense.  *See, e.g.*, *Rosania v. Grp. O, Inc.*, 2014 WL 1224234, at *4 (D. Colo. Mar. 25, 2014); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 630 (D. Colo. 1998).  Here, Plaintiffs fail at each step—Charter's claim of privilege was not the result of an "affirmative act"; Charter did not put its privileged discussions "at issue" in the case, such as by relying on privileged information as part of its counterclaims or defenses; and Charter's privileged communications are not "vital" to Plaintiffs' claims or defenses.  Rather, at Plaintiffs' request, Charter's counsel disclosed objective ***facts*** relating to the ESI loss (such as how it happened).  Such factual disclosures do not implicate waiver—if that were the case, any ESI loss, no matter how small, would open the floodgates to piercing privilege.  Plaintiffs' blanket "all or nothing" approach to waiver as a penalty for Charter's provision of facts about the ESI loss should be rejected.

*Second*, Plaintiffs do not demonstrate the requisite "substantial need" for Charter's protected work product.  Unlike attorney-client privilege, work product can be pierced only upon a showing of "substantial need."  Plaintiffs make no such showing here, nor could they, given that

Charter already produced extensive factual information and agreed to make a corporate representative available for a deposition.  Further, Plaintiffs make no effort to distinguish between fact work product and opinion work product, the latter of which is rarely, if ever, discoverable.

*Third*, should the Court have any doubt, rather than find broad subject-matter waiver as requested by Plaintiffs, it may in the alternative hold under Fed. R. Evid. 502(d) that any subsequent production of documents explicitly would ***not*** constitute a waiver of privilege.  To that end, the parties discussed the scope of such an order for seven weeks, before Plaintiffs terminated those discussions in favor of this all-or-nothing approach.  The Court should not countenance Plaintiffs' attempt to gain an unfair tactical advantage in this litigation by refusing a reasonable compromise solely for the purpose of obliterating Charter's privilege and work product protections.

## BACKGROUND

On March 4, 2020, Charter voluntarily notified Plaintiffs regarding an inadvertent loss of ESI that resulted from a migration of Charter's legal hold management system in 2017 and 2018. ECF 262-3.[1]  In that letter, Charter disclosed the facts pertaining to the ESI loss and indicated a willingness to have an open dialogue with Plaintiffs about it.  *Id.*  On March 11, 2020, Plaintiffs responded with a litany of questions and demanded that Charter provide additional details regarding the loss. ECF 262-5.  Charter responded to Plaintiffs' questions on March 16, 2020. ECF 262-6.  Over the next six weeks, Plaintiffs demanded responses to an additional 48 written

---

[1]  Charter also fully disclosed the circumstances surrounding its inadvertent ESI loss in prior briefing before the Court.  *See* ECF 174, 174-1, 174-2, 174-3, 174-4.

questions (many of which contained numbered subparts), and Charter promptly responded to Plaintiffs' queries.  ECF 262-7, 262-8, 262-9, 262-11.

On May 4, 2020, despite Charter's willingness to voluntarily provide answers to Plaintiffs' questions through the meet-and-confer process, Plaintiffs filed an expedited motion to take discovery pertaining to Charter's ESI loss outside of the discovery limits set in the Court's Scheduling Order.  ECF 167.  On May 14, 2020, following a hearing, the Special Master issued an Order in which she acknowledged that Charter had already agreed to permit Plaintiffs to propound 25 requests for production and to take one 30(b)(6) deposition specifically related to relating to Charter's ESI loss, all of which would be exempt from the discovery limits set by the Court.  ECF 176.  Charter was instructed to produce documents responsive to Plaintiffs' document requests on a rolling basis, beginning on June 19, 2020, coupled with a privilege log.  Declaration of John Rosenthal ("Rosenthal Decl."), Ex. A (May 13, 2020 Hr'g Tr. at 27:8-10; 28:15-20). Importantly, there was absolutely no finding by the Special Master that Charter had waived attorney-client privilege or work product immunity relating to its counsel's investigation of the ESI loss.  *Id.*  Nor did Plaintiffs argue, at the time, that any such waiver had occurred.  To the contrary, Plaintiffs acknowledged that Charter's production would necessarily be accompanied by a privilege log.  ECF 167 at 3 (asking the Special Master to order "Charter to begin producing documents responsive to these RFPs within 15 calendar days of Charter's responses and objections thereto, and to provide a privilege log for that production within 15 days of their first production").

Following the Special Master's May 14 Order, Charter discussed the scope of its upcoming document production with Plaintiffs.  During these meet-and-confer discussions, Charter's counsel proposed that the parties agree to a Rule 502(d) order, so that Charter could produce certain

privileged documents responsive to Plaintiffs' requests without the risk of being accused of having made a broader, subject-matter waiver.  Rosenthal Decl. ¶ 5.  Specifically, Charter's counsel explained that a Rule 502(d) order would allow Charter to produce additional documents concerning internal Charter investigations or inquiries regarding the ESI loss, documents reflecting the availability of alternative sources of the information, and documents sufficient to show investigatory steps taken and the results of any internal Charter investigation.  ECF 262-12. Charter's counsel also explained that Charter would not produce any work product concerning the ESI loss prepared by its counsel.  *Id.*  Over the next seven weeks, the parties continued to discuss Charter's proposal and the confines and scope of the proposal.  ECF 262-13.

On July 24, 2020, after abruptly terminating the parties' meet-and-confer discussions, Plaintiffs argued, for the first time, that Charter had already waived its right to withhold documents on the basis of attorney-client privilege and work product protection.  Rosenthal Decl., Ex. B (Pls.' July 24 Ltr. at 2, n.2).  Charter responded on July 30, 2020 to again note that the parties had been discussing a stipulated 502(d) order for several weeks, and that Charter had made this proposal in good faith in order to provide the information Plaintiffs were demanding without risk of a broader waiver, but reiterated that Charter would not release any privileged communications without such an order in place.  Rosenthal Decl., Ex. C (Charter's July 30 Ltr. at 1-2).

Charter substantially completed its document production on August 3, 2020, followed by the service of a privilege log and a small supplemental production on August 11 and 13, 2020, respectively.[2]  *Id.* ¶ 6.  To date, Plaintiffs have not pursued a 30(b)(6) deposition of Charter

---

[2] Plaintiffs' Motion complains that Charter's document production and privilege log contain various deficiencies.  *See*, *e.g.*, ECF 262 at 7-8.  Because these issues are not germane to whether

pertaining to the ESI loss.  *Id.* ¶ 7.

**LEGAL STANDARD**

### I.        Attorney-Client Privilege Waiver

The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "[T]he attorney-client privilege is so sacred and compellingly important that the courts must, within their limits, guard it jealously." *Carbajal v. Lincoln Ben. Life Co.*, 2007 WL 3407345, at *3 (D. Colo. Nov. 13, 2007) (quotation marks and citations omitted).

A party demanding disclosure of attorney-client privileged information based on waiver "must make a strong showing of need in order to breach the privilege." *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985). Specifically, in the District of Colorado, the moving party must at least satisfy the three-part test first set forth in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (the "*Hearn* test"), before waiver can be established. *See Aull*, 185 F.R.D. at 630. The moving party must show that:

> 1) assertion of the privilege was the result of some affirmative act, such as filing suit or assertion of an affirmative defense, by the party claiming the privilege; 2) through this act, the party put the protected information at issue; and 3) application of the privilege would have denied the opposing party access to information vital to his or her defense.

---

Charter waived attorney-client privilege or work product immunity, Charter will not indulge in a point-for-point rebuttal, except to observe the following: (i) Plaintiffs' statement that the production does not contain documents dated after October 2018 is inaccurate, as Charter's production does in fact contain such documents; and (ii) Plaintiffs' complaint regarding the format of the log is now moot, as Charter served a supplemental log on November 3, 2020, which provides subject lines and file names consistent with the Court's September 9, 2020 Order.

*Id.* (citing *Hearn*, 68 F.R.D. at 581).

Further, Rule 502(a) of the Federal Rules of Evidence limits any waiver of privilege to "the communication or information disclosed." Fed. R. Evid. 502(a) (Advisory Committee Notes). "[S]ubject matter waiver … is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Id.* Courts "weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Leprino Foods Co. v. DCI, Inc.*, 2014 WL 2922667, at *8 (D. Colo. June 27, 2014) (internal citation omitted).

## II.    Work Product Immunity

The *Hearn* test "applies only to a waiver of the attorney-client privilege and does not concern the distinct and broader concept of work product immunity." *Ryall v. Appleton Elec. Co.*, 153 F.R.D. 660, 662 (D. Colo. 1994). The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) distinguishes between fact work product and opinion work product. *United States v. Graham*, 2003 WL 23198792, at *4 (D. Colo. Dec. 2, 2003). Fact work product is discoverable only upon a showing that "(a) the party seeking discovery has substantial need for the materials in the preparation of his case; and (b) the party is unable to obtain the substantial equivalent of the materials by other means without undue hardship." Fed. R. Civ. P. 26(b)(3). Opinion work product is afforded an even higher degree of immunity, "subject to enhanced and heightened protection, which approaches absolute protection." *Graham*, 2003 WL 23198792, at *4. In ordering the production of work product, courts "must distinguish between factual work product, and mental impressions, opinions, and

conclusions, for the latter are rarely, if ever, subject to discovery." *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 172–73 (D. Colo. 1993).   Further, subject-matter waiver is inapplicable to such opinion work product.  *See In re Oltmann*, 2013 WL 414212, at *2 (Bankr. D. Colo. Feb. 1, 2013).

## ARGUMENT

### I.    NO WAIVER OF ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS HAS OCCURRED

In their Motion, Plaintiffs make the sweeping assertion that Charter has categorically and irrevocably waived any privilege it could have asserted over its communications with its legal counsel concerning the application of its litigation hold and subsequent ESI loss because Charter voluntarily disclosed the fact of the ESI loss to Plaintiffs and then worked in good faith for months to supply Plaintiffs with information pertaining to it.  ECF 262 at 8.  If this were the standard for privilege waiver in civil litigation, no litigant could ever engage in a meet-and-confer process with opposing counsel on discovery issues for fear that any information it provided would obliterate privilege.  But this is not the standard, and Plaintiffs' aggressive attempt to eviscerate Charter's privilege by misrepresenting the relevant facts and law should be rejected.  Under the applicable standard, Charter's assertion of privilege over its communications with counsel must be upheld unless Plaintiffs can show that: (1) Charter's assertion of privilege was the result of an affirmative act, such as the initiation of litigation or the assertion of an affirmative defense; (2) Charter put the protected information "at issue" through this act; and (3) Charter's application of the privilege would prevent Plaintiffs from obtaining information vital to counter Charter's legal claims or affirmative defenses.  *See Aull*, 185 F.R.D. at 630.  Plaintiffs have not met their burden on any of these elements.

### A.     Charter Has Not Asserted Privilege As A Result Of An "Affirmative Act"

There is no reasonable argument that Charter has asserted a counterclaim or affirmative defense that depends on its inadvertent loss of ESI.  To the contrary, in its very first disclosure to Plaintiffs regarding the ESI loss, Charter explained its view that the loss of certain custodial e-mails would have minimal impact on any issues actually material to the copyright claims asserted by Plaintiffs or to Charter's counterclaims and defenses.  ECF 262-3.[3]  Simply put, Charter has not argued—and does not intend to argue at any time in this litigation—that its ESI loss is a defense to Plaintiffs' copyright infringement claims or a basis for the assertion of Charter's counterclaims.

Charter's voluntary disclosure of ESI loss concerning certain custodians, therefore, stands in stark contrast to the completely different situation where a defendant's counsel has conducted a factual investigation central to a theory of liability or defense asserted in a case, used that investigation to obtain relief from another party by divulging the facts of the investigation, and then refused to divulge the investigation in a related civil proceeding on the grounds of privilege. As such, all of the cases cited by Plaintiffs that deal with a party's voluntary disclosure of privileged communications to another party, such as a government agency, and subsequent refusal to disclose the same information in a subsequent civil proceeding, are inapposite.  *See, e.g.*, *United States v. Billmyer*, 57 F.3d 31, 36 (1st Cir. 1995) (finding waiver of privilege over counsel's internal investigation because the company chose to disclose its investigation of allegations concerning possible bribery to the government); *In re OM Sec. Litig.*, 226 F.R.D. 579, 593-94

---

[3]  Charter also explained that a substantial repository of electronic data remained available, even for the custodians impacted by the ESI loss, and therefore Charter was still able to search millions of messages for responsive content.  ECF 262-3.

(N.D. Ohio 2005) (finding waiver of privilege where documents were presented to the company's board of directors in the context of an SEC investigation pertaining to accounting fraud); *Gruss v. Zwirn*, 2013 WL 3481350, at *11-13 (S.D.N.Y. July 10, 2013) (finding waiver of privilege regarding counsel's internal investigation and voluntary disclosure of counsel's interview notes and summaries to the SEC); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 472-73 (S.D.N.Y. 1996) (finding waiver of privilege where representations were made to various courts and an arbitration panel as to the substance of a report summarizing counsel's internal investigation); *In re Martin Marietta Corp.*, 856 F.2d 619, 622-23 (4th Cir. 1988) (finding waiver of privilege regarding a company's prior disclosures to the government in a criminal investigation).  None of these cases cited by Plaintiffs supports their argument that Charter has waived privilege with respect to any attorney-client communications related to its ESI loss.

### B.   Plaintiffs Have Failed To Establish That Charter Put Privileged Information "At Issue" In This Case

Setting aside the fact that Plaintiffs have not even satisfied the first prong of the *Hearn* test, Plaintiffs nevertheless argue that Charter has put its privileged communications "at issue" by diligently responding to Plaintiffs' inquiries regarding the facts and circumstances of the ESI loss. But this self-serving argument does not show that Charter has affirmatively put any attorney-client privileged communications "at issue" in this case.  *See Aull*, 185 F.R.D. at 630 (citing *Hearn*, 68 F.R.D. at 58).

Plaintiffs primarily rely on the out-of-circuit, unpublished district court decision of *In re Delta/Airtran Baggage Fee Antitrust Litig.*, to argue that "revealing the results" of a spoliation-related investigation puts the investigation "at issue" in a case and constitutes waiver both as to "the underlying subject matter of the investigation and the investigation itself."  ECF 262 at 9-10

(citing *In re Delta/Airtran,* 2012 WL 12887089, at *2-3 (N.D. Ga. June 20, 2012)). But *In re Delta/Airtran* is not applicable to the facts here.  In that case, the defendant not only responded to a motion for sanctions by arguing that its data preservation and collection efforts were "reasonable," but ***also*** intentionally and extensively disclosed the privileged contents of its internal investigation in support of its argument.[4]  *Id.* at *1-3.  And, even in that circumstance, the court limited the scope of the waiver to the ***specific documents and information the defendant had voluntarily disclosed***—rejecting the argument that the defendant had broadly waived privileged materials or opinion work product as to other materials.  *Id.* at *3.[5]  Here, Charter has not affirmatively produced or relied on any privileged information related to its ESI loss.

Plaintiffs do not—and cannot—identify any privileged information that Charter has intentionally disclosed.  This is because Charter has continued to maintain the privilege over its attorney-client communications and work product and disclosed only the underlying ***facts*** to Plaintiffs.  For example, as Plaintiffs acknowledge in their Motion, Charter has endeavored to provide Plaintiffs with facts relating to the identity of the employees involved in the ESI loss, when and how Charter identified the ESI loss, whether and how Charter had a legal hold in place at the time of the loss, and the availability of backup data from Charter's past and current eDiscovery vendors.  ECF 262 at 12.  While Charter's counsel provided these facts to Plaintiffs in response to Plaintiffs' questions, Plaintiffs cannot point to a single instance in which Charter disclosed, quoted, or summarized a privileged communication or piece of attorney work product in supplying the

---

[4]  The nature of the defendant's disclosure of privileged communications and opinion work product in *In re Delta/Airtran* was substantial.  *Id.* at *1.  For example, the court noted that the defendant had submitted detailed attorney declarations and e-mails between its counsel and employees to the Court.  *Id.* at *2.
[5]  The court also found that opinion work product was not discoverable.  *Id.* at *1, n.2.

facts requested.  By definition, the disclosure of the underlying facts does not constitute waiver.  *Upjohn Co*., 449 U.S. at 395 ("The privilege only protects the disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").  To the extent Plaintiffs claim that the communication of underlying facts by counsel in the meet-and-confer process broadly waived privilege with respect to every underlying privileged communication regarding the ESI loss, they are wrong.  *See, e.g.*, *In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 701-02 (4th Cir. 2020) (rejecting finding that attorney-communicated fact waives privilege).

The Fourth Circuit's decision in *Fluor Intercontinental* is directly on point.  There, the panel reversed the district court's finding that the defendant waived its privilege over the results of an internal investigation into potential wrongdoing by a subcontractor after the defendant was required to disclose the results of an investigation to the government through mandatory reporting requirements.  *Id.* at 698-702.  In granting the defendant's petition for mandamus and finding that the defendant had not waived privilege, the Fourth Circuit held that the test is ***not*** whether the "statements were in fact legal conclusions that only a lawyer could make."  *Id.* at 702.  "Instead, to find waiver, a court must conclude that there has been disclosure of ***protected communications***."  *Id.* (emphasis in original).  The court explained that it "will not infer a waiver merely because a party's disclosure covers 'the same topic' as that on which it had sought legal advice."  *Id.* at 701 (citation omitted).

In so holding, the Fourth Circuit distinguished its prior holding in *Martin Marietta*, which Plaintiffs rely upon in their Motion.  *Id.* at 702.  In *Martin Marietta*, the defendant had provided a "position paper" to the government that summarized its interviews—and it was that intentional

disclosure summarizing the privileged communications that was found to waive privilege.  856 F.2d at 623-24, 626 n.2.  By contrast, in *Fluor Intercontinental*, there was no evidence that Fluor's disclosure quoted privileged communications or even summarized them. 803 F. App'x at 702.

Similarly, Charter has neither disclosed privileged communications nor quoted from the contents of it work product in supplying information to Plaintiffs.  At most, Charter has "describe[d its] general conclusions" about the nature of the ESI loss by generally describing the loss as "inadvertent."  *See id.* at 702. Such generalizations about facts are insufficient to waive privilege. *Id.*; *see also Constantine v. Teachers Coll.*, 2010 WL 3260164, at *1 (S.D.N.Y. Aug. 6, 2010), *aff'd*, 448 F. App'x 92 (2d Cir. 2011) (refusing to find waiver even after the defendant's counsel argued that the plaintiff's claim for spoliation was without merit); *Aull*, 185 F.R.D. at 630 (noting that it was the plaintiff's burden to establish that the defendants acted unreasonably or in bad faith and that the defendants' "denial of such allegation do not amount to an affirmative act which supports an at issue waiver"); *Gates Corp. v. CRP Indus., Inc.*, 2018 WL 4697326, at *10 (D. Colo. Aug. 10, 2018) ("[T]o waive the privilege, a party must do more than reflexively deny its opponent's allegations: 'the holder must inject a new factual or legal issue into the case,' typically via affirmative defense.") (internal quotations marks and citations omitted).  For these reasons, Charter's counsel's communications with Plaintiffs' counsel regarding the ESI- loss and description of the loss as "inadvertent" during a hearing before the Special Master do not constitute subject-matter waiver under any legal authority.

### C.      Plaintiffs Have Not Established That The Privileged Information They Seek Is "Vital" To A Claim Or Defense

Plaintiffs also fail to establish *Hearn*'s third prong, which requires Plaintiffs to show that Charter's application of the privilege would prevent Plaintiffs from obtaining information vital to

establish their copyright claims or to oppose Charter's counterclaims or affirmative defenses.  *See Aull*, 185 F.R.D. at 630.  With respect to this factor, "[m]ere relevance … is not the standard … the information must … be '***vital***'[.]"  *Frontier Ref. Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998) (quoting *Hearn,* 68 F.R.D. at 581) (emphasis added).  This "necessarily implies the information is available from no other source."  *Id.*

       As set forth above, there is absolutely no basis to conclude that Charter's privileged communications regarding ESI loss are "vital" to a copyright claim, counterclaim, or defense asserted in the case.  Moreover, there is still no basis for the Court to conclude that "vital" information is available only through privileged sources.  To the contrary, Plaintiffs have conceded that they have already been provided, through the meet-and-confer process, the answers to more than four dozen questions related to Charter's ESI loss.  ECF 262 at 4.  Additionally, Plaintiffs were granted leave to serve 25 requests for production (to which Charter has already responded) and to take a 30(b)(6) deposition of a Charter corporate designee specifically related to Charter's ESI loss (which Plaintiffs elected not to pursue prior to filing their Motion).[6]  Plaintiffs have therefore been provided with ample non-privileged information about the nature of Charter's ESI loss, including facts pertaining to the "who, what, when, why, and how" of the loss.  *See, e.g.*, *Ryall*, 153 F.R.D. at 662-63 (sustaining objection to Magistrate Judge's order requiring the production of the "substance of the interviews" because the plaintiff "already possesses a significant amount of information pertaining to the investigation," including "who conducted the investigation[,] everyone … interviewed," and non-privileged witness statements).  Further,

---

[6]  Plaintiffs' tactical decision to defer pursuit of the 30(b)(6) deposition does not convert Charter's privileged communications into "vital" sources of information.  To the contrary, it shows that Plaintiffs have been less than diligent in obtaining information from non-privileged sources.

Plaintiffs' claim that the withheld information is "vital" rings hollow in the wake of Charter's offer

to produce over 600 documents from its privilege log under the terms of a Rule 502(d) order and

Plaintiffs' failure to demonstrate on any basis, much less the required document-by-document

basis, that any of these documents are so "vital" that they justify invalidating Charter's privilege

claims.  The fact that Plaintiffs now want unfettered access to the contents of Charter's privileged

communications, in a crusade to mischaracterize the ESI loss as an intentional act, is not a basis to

pierce privilege, particularly when Plaintiffs can point to no facts (in the documents already

produced or with respect to Charter's privilege-log entries) supporting their unfounded contention

that intentional spoliation has occurred.

## II.    PLAINTIFFS HAVE NOT ESTABLISHED A "SUBSTANTIAL NEED" FOR CHARTER'S PROTECTED ATTORNEY WORK PRODUCT

Nor have Plaintiffs demonstrated entitlement to Charter's attorney work product.  Charter's

fact work product is discoverable only if Plaintiffs can show that (1) they have a substantial need

for the materials in the preparation of their case; and (2) they are unable to obtain the substantial

equivalent of the materials by other means without undue hardship.  *See* Fed. R. Civ. P. 26(b)(3).

Plaintiffs have failed to make this threshold showing as to any of Charter's fact work product, and

therefore cannot possibly meet the more stringent standard applied to opinion work product, which

is rarely, if ever, discoverable.  *See Graham*, 2003 WL 23198792, at *4 (stating that opinion work

product is "subject to enhanced and heightened protection, which approaches absolute

protection.").

Plaintiffs have not even tried to establish that any of Charter's attorney work product is

relevant to a copyright claim or defense.  Instead, Plaintiffs argue that they need to access Charter's

work product to prepare a Rule 37 sanctions motion against Charter because "Rule 37

contemplates considering a party's intent,  and the best evidence of a party's intent is often that party's contemporaneous documents."   ECF 262 at 16 (internal citations omitted).   But this argument makes no sense in the context of the request, as attorney work product is not a non-privileged "contemporaneous document" and is afforded significantly greater protection from disclosure as result.   Moreover, to the extent Plaintiffs are seeking "contemporaneous documents" pertaining to the ESI loss, they already have 622 such documents.

Plaintiffs also have not established "a substantial need" for Charter's attorney work product in order to litigate the legal claims asserted in the case or that, "[Plaintiffs] cannot, without undue hardship, obtain their substantial equivalent by other means."   *See* Fed. R. Civ. P. 26(b)(3). Nor could they credibly do so, given Plaintiffs' inexplicable rejection of a reasonable compromise that Charter offered (Charter's proposed Rule 502(d) order) and Plaintiffs' voluntary decision not to schedule the 30(b)(6) deposition they were granted leave to take ***five months ago***.[7]   *See Enos-Martinez v. Bd. of Cty. Comm'rs of the Cty. of Mesa*, 2012 WL 1079442, at *3 (D. Colo. Mar. 30, 2012) (not requiring production of work product-protected affidavits where the party failed to depose the witnesses during discovery); *Jinks-Umstead v. England*, 232 F.R.D. 142, 147 (D.D.C. 2005) (rejecting the plaintiff's request to pierce work product protection where "the information sought was available to [the] plaintiff through other discovery methods, such as interrogatories and depositions"); 8 Fed. Prac. & Proc. Civ. § 2025 (3d ed.) ("[D]iscovery of work product material will be denied if the party seeking discovery can obtain the desired information by taking the deposition of witnesses").   Plaintiffs' invasive demand for a finding of subject-matter waiver

---

[7]  By abruptly refusing to enter into a proposed Rule 502(d) order after discussions with Charter, Plaintiffs delayed for months the discovery they originally sought on an expedited basis.

encompassing all of Charter's attorney work product is legally unsupportable and should be denied.

To the extent the Court finds that Plaintiffs have established a "substantial need" for any of Charter's work product, it is incumbent upon the Court to consider Plaintiffs' request to pierce the work product protections on a document-by-document basis.   The Court should review Charter's documents *in camera* to determine whether the factual information in the work product rises to the level of "substantial need" that is not available through another means.   Since opinion work product is not discoverable even under the "substantial need" test, the documents would need to be reviewed in order to segregate and redact fact work product from opinion work product. *Martin*, 150 F.R.D. at 172-73.

### III.   NO SUBJECT-MATTER WAIVER HAS OCCURRED OR SHOULD BE ORDERED

Plaintiffs have failed to demonstrate that a blanket waiver of privilege and work product protection over every single document on Charter's privilege log is warranted.   Indeed, Plaintiffs' requested relief is in direct contravention of Rule 502(a), which limits subject-matter waiver to "those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."   Fed. R. Evid. 502(a) (Advisory Committee Note); *see also Leprino Foods*, 2014 WL 2922667, at *8 (rejecting a broad claim of subject-matter waiver based on selective disclosure of privileged reports at earlier stage of dispute); *Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Co.*, 2011 WL 1527599, at *6 (D. Colo. Apr. 21, 2011) (rejecting a broad claim of subject-matter waiver based on the disclosure of facts).   Thus, at a minimum, a court

should perform a document-by-document "fairness" analysis to determine the appropriate scope of a limited waiver.

Moreover, a sweeping evisceration of Charter's privilege and work product protections related to the ESI loss is particularly unfair and prejudicial here, where Charter has repeatedly offered  to disclose over hundreds of additional documents to Plaintiffs under the terms of a Rule 502(d) order, so long as Plaintiffs agree that the disclosure would not constitute a broader, subject-matter waiver in this and subsequent litigations.[8]   Charter's proposal is a common procedure, which courts routinely grant,[9] including in connection with ancillary disputes concerning data loss. *See, e.g.*, *In re Delta/Airtran.*, 2012 WL 12887089, at *2, n.2 (N.D. Ga. May 10, 2012) (entering a Rule 502(d) order for data-loss-related documents in connection with a spoliation motion). Therefore, should the Court find that Plaintiffs are entitled to the production of any documents on Charter's privilege log, Charter respectfully requests that the Court order production under the terms of Rule 502(d).[10]

---

[8]  Rule 502(d) provides that a "federal court may order that the [attorney-client] privilege or [work product] protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d).  A court has the authority to enter a Rule 502(d) order "on its own initiative and without prior agreement by the parties." *Lyall v. City of Denver*, 2016 WL 7176716, at *1 (D. Colo. Sept. 28, 2016) (Shaffer, J.) (noting that "it is not necessary for the parties to agree" to a Rule 502(d) order for the court to enter one) (citation omitted).

[9] *See also United States v. Rankin*, 2020 WL 3036015, at *4 (D. Conn. June 5, 2020); *Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4-5 (N.D. Tex. Feb. 23, 2009); Sedona Conference Journal, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 95, 130 (2016) ("Rule 502(d) gives a federal court broad power to enter an order ruling that the parties' conduct in a proceeding before the court does not result in waiver. A Rule 502(d) order may address not only inadvertent waiver, but also instances in which intentional disclosure will not result in waiver.").

[10] Charter has concurrently cross-moved for the entry of such an order and has identified the documents on its privilege log that it is willing to produce pursuant to this order.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: November 4, 2020

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

Respectfully submitted,

*s/ Andrew H. Schapiro*
Andrew H. Schapiro
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
E-mail: andrewschapiro@quinnemanuel.com
E-mail: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

*Counsel for Defendant*
*Charter Communications, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 4, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*s/ Andrew H. Schapiro*
Andrew Schapiro