IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER RECORDS INC., et al

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

## ORDER on PENDING MOTIONS (1)

The parties' teams of lawyers have been prolific in motion practice, and currently thirteen motions are pending. This order addresses five of those motions. The others are pending before the magistrate judge or the special discovery master.

### BACKGROUND

The background of this case has been described several times in previous orders. Plaintiffs are record companies and music publishers that produce and distribute commercial sound recordings and musical compositions. They collectively own or control millions of copyrighted musical compositions or sound recordings. The defendant, Charter Communications, Inc., is an internet service provider ("ISP") with more than twenty-two million subscribers nationwide. *Id*.

Plaintiffs contend that some Charter subscribers are using Charger's ISP services to repeatedly infringe plaintiffs' copyrighted works. Charter's terms of service prohibit users from engaging in copyright infringement and state that Charter reserves the right to terminate accounts

1

of participants engaged in piracy.  Plaintiffs have sent Charter hundreds of thousands of notices detailing specific acts of infringement allegedly committed by specific Charter subscribers. However, according to the plaintiffs, Charter has not addressed the reported infringements because Charter does not want to lose revenue from these subscribers.  On the contrary, plaintiffs contend that Charter's lack of action against known infringers "draws" (attracts) subscriptions, as subscribers know they can upload, download and distribute infringing content via Charter's ISP service without consequence.

The gist of this lawsuit is plaintiffs' contention that Charter is secondarily liable for its subscribers' infringements on theories of contributory and vicarious liability.  "[C]ontributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement."  *Diversey v. Schmidly,* 738 F. 3d 1196, 1204 (10th Cir. 2013).  "Vicarious liability attaches when the defendant 'has the right and ability to supervise the infringing activity' and 'has a direct financial interest in such activities.'"  *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*  443 F.2d 1159, 1162 (2d Cir. 1971)).

Charter moved to dismiss the vicarious liability claim pursuant to Rule 12(b)(6).  ECF No. 38.  Magistrate Judge Hegarty recommended that this Court deny the motion.  ECF No. 71. This Court ultimately agreed with Judge Hegarty and denied the motion to dismiss.  ECF No. 157.  Briefly, I found that plaintiffs had sufficiently alleged that Charter has the right and ability to terminate the users identified in plaintiffs' infringement notices.  *Id.* at 12-14.  And, for purposes of a Rule 12(b)(6) motion, plaintiffs had sufficiently alleged that the ability to infringe coupled with Charter's failure to exercise its authority to terminate infringers was a "draw" that gave Charter a direct financial interest in the infringing activities.  *Id.* at 5-12.

## PENDING MOTIONS

**A. Plaintiff's Amended Motion to Dismiss Charter's Counterclaims Three and Four, ECF No. 189.**

1. Claim Three.

Defendant's third counterclaim asserts a violation of § 512(f) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(f). That section provides, in pertinent part:

> **Misrepresentations. --** Any person who knowingly materially misrepresents under this section – (1) that material or activity is infringing, . . . .shall be liable for any damages including costs and attorneys' fees, incurred by . . . a service provider, who is injured by such misrepresentation, as the result of the service provider relying on such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . .

The premise for this counterclaim is that plaintiffs' original complaint identified 11,482 works (sound recordings and musical compositions) that were claimed to have been infringed by Charter's subscribers, ECF Nos. 1-1, 1-2, whereas plaintiffs' First Amended Complaint identifies 11,027 allegedly infringed works. ECF No. 123 at 31-57. According to Charter, the fact that the First Amended Complaint identifies 455 fewer works implies that plaintiffs dropped those works because plaintiffs did not have valid infringement claims as to them. That, in turn, was a "misrepresentation" that supports a claim for damages under § 512(f). Plaintiffs argue that the third counterclaim fails to state a claim under the DMCA on which relief could be granted. I agree.

Even if I assume, as does Charger, that plaintiffs dropped the 455 works because they did not have a valid infringement claim as to them, Charter has not alleged facts plausibly showing that plaintiffs knowingly or materially misrepresented its infringement claims in the original complaint. The closest the counterclaim comes to alleging a knowing misrepresentation is in

3

paragraph 80, which asserts, "Upon information and belief, at all times, Plaintiff had or should have had knowledge of the status of their purported ownership or control of copyrights when they went infringement notices regarding those copyrights, including those at issue in this case." ECF No. 165 at 59.  That conclusory statement, asserted on "information and belief," and sounding in language of negligence, falls short of the mark.  The several paragraphs discussing the 2016 Urban Study and the invalid infringement claims allegedly submitted by plaintiffs' agent MarkMonitor, *id.* at ¶¶ 85-104, say nothing about the 455 dropped works.

Nor does this Court find that 455 of 11,482 works is material.  Describing its automated "CATS" system in the same counterclaim, Charter explained that "[a]utomation is important, because manual processing of incoming abuse complaints is infeasible for all but the smallest ISP networks."  *Id.* at ¶33.  So too for the volume of works claimed here (which is in turn dwarfed by the number of claims of infringement of those works, said to be in the hundreds of thousands).  The dropped works represent slightly less than four percent of the total.

It is also significant that plaintiffs dropped works as to which they allegedly determined that they did not have a valid claim.  It would be ironic that an amendment to reduce the number of infringed works would support a counterclaim.

Finally, the Court finds that Charter has not alleged that it incurred damages "as the result of the service provider relying on such misrepresentation *in removing or disabling access to the material or activity claimed to be infringing*." (emphasis added).  It appears to be undisputed in this lawsuit that although Charter has notified some of its subscribers of some of plaintiffs' claims of infringement, it has not cancelled any subscriptions or taken other actions to disable subscribers' access to Charter's services.

Accordingly, the Court grants the motion to dismiss defendant's third counterclaim.

4

2. Claim Four.

The fourth claim asserts that plaintiffs violated the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. The basis again is the "dropped works," alleged to reflect plaintiffs' "knowingly or recklessly sending, and causing to be sent, copyright infringement notices concerning works for which they did not own the rights and for which they lacked authorization to send such notices." *Id.* at ¶167. However, for the same reasons as discussed concerning the third counterclaim, the Court finds that the conclusory allegation is not supported by any allegation of facts plausibly supporting a CCPA claim. Indeed, the premise that plaintiffs' dropping the 455 works constituted bad faith conduct that was "fraudulent, reckless, willful, knowing, and/or intentional" does not come close to satisfying the particularity required for allegations of fraud.

Possibly Charter will discover facts that would support claims such as its third and fourth counterclaims. At this time, however, Charter's allegations do not do it. The motion to dismiss the fourth counterclaim is granted.

**B. Charter Communication, Inc.'s Motion for Leave to Amend its Counterclaims One and Two, ECF No. 192**,

Courts "should freely give leave [to amend] when justice so requires." Rule 15(a)(2). The trial in this case has been reset to commence on October 18, 2021. The current discovery cutoff is January 31, 2021 (fact) and June 1, 2021 (expert). Permitting what the Court regards as a simple and clarifying amendment to defendant's first and second counterclaims will cause no unfair prejudice. Rather, plaintiffs' opposition to this motion reflects their effort to hold Charter to a position that it either did not mean to take or, at least, does not wish to continue to take, for

an ostensible strategic benefit to the plaintiffs. Plaintiffs should have consented to the motion. The Court now grants it.

**C. Plaintiffs' Unopposed Motion for Leave to File Level 1 Restricted Exhibit, ECF No. 201.**

Granted.

**D. [BCS Computers] Motion to Restrict Public Access Pursuant to District Court of Colorado Civil Rule 7.2, ECF No. 215.**

Granted.

**E. [Charter's] Objection to Magistrate's Order Denying Charter's Motion to Compel Plaintiffs to Respond to Charter's Interrogatories 14 & 15, ECF No. 248.**

Interrogatory 14 in Charter's Second Set of Interrogatories to the Record Company Plaintiffs, ECF Nos. 248-3, and Interrogatory 15 in Charter's Second Set of Interrogatories to the Music Publisher Plaintiffs, ECF No. 248-2, ask plaintiffs to identify the notices of infringement that correspond to the sound recordings and music compositions listed in Exhibits A and B to the Complaint.[1] Plaintiffs objected to these interrogatories, essentially asserting that answering the interrogatories would be unduly burdensome, and that Charter has information in its possession from which it can match notices to works.

These interrogatories and responses have been the subject of portions of a hearing before the special master, ECF No. 248-6 (transcript); supplemental letter briefing required by the special master, ECF No. 248-7 and 248-8); a portion of a special master order, ECF No. 181; a special master order on plaintiffs' motion for clarification of that order, ECF No. 190; an appeal by plaintiffs; an order by the magistrate judge during a hearing reversing the special master's

---

[1] The Court interprets the interrogatories now to apply to the lists provided with plaintiffs' Amended Complaint. ECF No. 123 at 31-57.

6

order, *see* ECF No. 243 at 133-71; and now defendant's appeal of the magistrate judge's order, which has been fully briefed.  ECF Nos. 248, 259 and 265.

The Court has reviewed all those transcripts, motions and briefs.  It appears to be undisputed that only a fraction of the 11,027 works at issue in the case appear by name in plaintiffs' infringement notices.  Plaintiffs contend that plaintiffs' notification of the remaining works can be determined by using the torrent and hash value method as explained by plaintiffs in their letter brief for the special master.  ECF No. 248-8.  Because of the number of notices and works at issue in plaintiffs' claims, the burden of doing this appears to be substantial.  *See* ECF No. 243 at 164.  Plaintiffs represent that they have not done the torrent and hash value matching work already.  The magistrate judge accepted the representation, and I will as well.

The magistrate judge was concerned about two issues.  First, he noted (as the expressed basis for reversal) that the special master's orders were based in part on her incorrect assumption that plaintiffs had already done the work.  ECF No. 243 at 171.  That might have been her assumption when she issued her first order, but it appears no longer to be her assumption in her second order after plaintiffs sought reconsideration.  *See* ECF No. 190 at 9-10.  In any event, that was not the only basis for the special master's decision.

Second, although not expressly indicated to be a ground for reversal, the magistrate judge expressed the opinion during the hearing that if both sides have an equal ability to do the work using the information that they both possess, then the party wanting the information should bear the burden of generating it (even if plaintiffs' failure to provide the information might come back to bite them on summary judgment or at trial).  *See id.* at 156-57, 163, 167.  For present purposes I will assume that this general proposition was another ground for the magistrate judge's decision, even though not expressly identified as such.

7

Defense counsel did seem to concede during the hearing that defendant had the ability to do the torrent and hash value work. *See id.* at 145-47. In its objection to the magistrate judge's order, however, Charter denies that it can do the work, at least not as easily or reliably as can the plaintiffs. *See* ECF No. 248 at 1-3, 10-11. Nevertheless, given the resources that both sides have devoted to this case, I will assume that Charter probably could do the work required or have the work done for it, though perhaps not as efficiently or reliably as the plaintiffs whose agents generated the notices and who explained how to decipher them.

More importantly, however, the plaintiffs' claim in this case is that they notified Charter that some of its subscribers had repeatedly infringed plaintiffs' copyrights on specific works, and that Charter's refusal to take meaningful steps in response to the receipt of plaintiffs' notices (such as termination of the subscriptions of the most repetitive infringers) facilitated and even encouraged the infringement. Plaintiffs hope to recover millions, if not billions, of dollars of damages from Charter. Proof of notice of infringement of specific works is fundamental to plaintiffs' claims. Plaintiffs' counsel have indicated that plaintiffs do not need the information defendants seek, as they have a different plan as to how to prove their case. That does not mean, however, that the information is not discoverable.

In terms of allocating the burden of generating this relevant and discoverable information, the unfortunate thing is that these parties have not agreed on a compromise method of reducing the burden such as by each doing the work on a representative sample and agreeing on how the result could be generalized to the larger data base, or in some other way.[2] Instead, they stubbornly insist that the other party bear the burden. In the circumstances I do not find that placing the burden of generating the information

---

[2] Defense counsel suggested a possible compromise, but plaintiffs raised the specter of a "work product" objection, and nothing came of it during the hearing. *See* ECF No. 243 at 167-69.

8

requested by the two subject interrogatories on the plaintiffs is in any manner unreasonable or unfair. Rather, I agree with the special master's analysis and orders.

Accordingly, the Court sustains Charter's objection to the magistrate judge's order and reinstates the special master's orders at ECF No. 181 at 24-25 and ECF No. 190 at 9-11. The Court directs plaintiffs to provide full and complete answers to the subject interrogatories 14 and 15 no later than 30 days after the date of this order. If plaintiffs choose to engage an "expert" to do the work, so be it. Plaintiffs should maintain a record of the specific costs or fees they incur in compiling this information for possible inclusion in an award of costs depending upon the use that is made of the information once it has been compiled and the ultimate result of the trial in the case.

## ORDER

1. Plaintiff's Amended Motion to Dismiss Charter's Counterclaims Three and Four, ECF No. 189, is GRANTED. The third and fourth counterclaims are dismissed without prejudice.

2. Charter Communication, Inc.'s Motion for Leave to Amend its Counterclaims One and Two, ECF No. 192, is GRANTED.

3. Plaintiffs' Unopposed Motion for Leave to File Level 1 Restricted Exhibit, ECF No. 201, is GRANTED.

4. [BCS Computers] Motion to Restrict Public Access Pursuant to District Court of Colorado Civil Rule 7.2, ECF No. 215, is GRANTED.

5. [Charter's] Objection to Magistrate's Order Denying Charter's Motion to Compel Plaintiffs to Respond to Charter's Interrogatories 14 & 15, ECF No. 248, is GRANTED, and plaintiffs are directed to answer the subject interrogatories no later than 30 days after the date of this order.

DATED this 5th day of November, 2020.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge