## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

**WARNER RECORDS INC., *et al.*,**

       Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

       Defendant.

---

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF ALL DOCUMENTS RELATED TO CHARTER'S SPOLIATION LISTED ON CHARTER'S PRIVILEGE LOG OR OTHERWISE WITHHELD ON THE BASIS OF PRIVILEGE

---

# **TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................... 2

I.      The At-Issue Waiver Doctrine On Which Charter Focuses Is a Separate and
        Distinct Doctrine from Subject-Matter Waiver Under Rule 502(a). ................................ 2

II.     Charter Effected Subject-Matter Waiver by Selectively Disclosing Privileged
        Information and Work Product About Its Spoliation of ESI. ............................................ 5

        A.      Charter Selectively Disclosed Details About Its Spoliation Derived from
                Protected Documents. ............................................................................................ 6

        B.      Charter Does Not Effectively Distinguish the Cases on Which Plaintiffs
                Rely. ........................................................................................................................ 8

        C.      Fairness Requires Disclosure of All Documents Charter Is Withholding. ........... 11

III.    Charter Also Waived Privilege Under the At-Issue Doctrine. .......................................... 12

IV.     Charter's Proposed Rule 502(d) Order Is a Transparent Attempt to Continue
        Using Privilege As a Sword and Shield. .......................................................................... 15

CONCLUSION .................................................................................................................. 15

## __TABLE OF AUTHORITIES__

**Page(s)**

**Cases**

*Aull v. Cavalcade Pension Plan*,
    185 F.R.D. 618 (D. Colo. 1998) ...............................................................................4, 12, 13, 14

*Constantine v. Teachers College*,
    2010 WL 3260164 (S.D.N.Y. Aug. 6, 2020) ........................................................................10

*In re Delta/Airtrust Baggage Fee Antitrust Litig.*,
    2012 WL 12887089 (N.D. Ga. June 20, 2012) ..............................................................8, 9, 14

*Fed. Deposit Ins. Corp. for Integra Bank, N.A. v. Fid. & Deposit Co. of Maryland*,
    2013 WL 12295907 (S.D. Ind. Nov. 26, 2013) ....................................................................4

*In re Fluor Intercontinental, Inc.*,
    803 F. App'x 697 (4th Cir. 2020) ...................................................................................9, 10

*Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*,
    136 F.3d 695 (10th Cir. 1998) ..............................................................................................4

*Gates Corp. v. CRP Industries, Inc.*,
    2018 WL 4697326 (D. Colo. Aug. 10, 2018) .......................................................................4

*Gruss v. Zwirn*,
    2013 WL 3481350 (S.D.N.Y. July 10, 2013) ......................................................................9

*Hearn v. Rhay*,
    68 F.R.D. 574 (E.D. Wash. 1975).....................................................................................5, 12

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    258 F.R.D. 280, 291-92 (D. Del. 2008) ..........................................................................13, 14

*Iowa Pacific Holdings, LLC v. National Railroad Passenger Corp.*
    2011 WL 1527599 (D. Colo. Apr. 21, 2011).........................................................................10

*In re Kidder Peabody Sec. Litig.*,
    168 F.R.D. 459 (S.D.N.Y. 1996) ..................................................................................9, 13, 14

*Leprino Foods Co. v. DCI, Inc.*,
    2014 WL 2922667 (D. Colo. June 27, 2014).....................................................................3, 10

*Lindley v. Life Investors Insurance Co. of Am.*,
  267 F.R.D. 382 (N.D. Okla. 2010), *aff'd in part as modified*, 2010 WL
  1741407 (N.D. Okla. Apr. 28, 2010) ...................................................................4

*In re Martin Marietta Corp.*,
  856 F.2d 619 (4th Cir. 1988) .......................................................................9

*In re OM Sec. Litig.*,
  226 F.R.D. 579 (N.D. Ohio 2005) .................................................................9

*Rosania v. Group O, Inc.*,
  2014 WL 1224234 (D. Colo. Mar. 25, 2014) ...............................................4

*Silverstein v. Federal Bureau of Prisons*,
  2009 WL 4949959 (D. Colo. Dec. 14, 2009) ................................................4

*Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*,
  2017 WL 712773 (D. Kan. Feb. 23, 2017) ...................................................4

*United States v. Billmyer*,
  57 F.3d 31 (1st Cir. 1995) ............................................................................9

*XY, LLC v. Trans Ova Genetics, Lc*,
  2018 WL 11000694 (D. Colo. May 14, 2018) ...........................................3, 5

## Statutes and Rules

Fed. R. Civ. P. 37(e) ...........................................................................5, 11, 13

Fed. R. Civ. Proc. 26(b)(3)(A) ...................................................................11

Fed. R. Evid. 502(a) ...................................................................... *passim*

Fed. R. Evid. 502(d) ...................................................................... *passim*

## Other Authorities

2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* (4th ed. 2020) ......................3

Charter destroyed a massive amount of evidence relevant to this case, after it was on notice of Plaintiffs' claims. It then argued to Plaintiffs and the Court that its own investigation established that its actions were "reasonable" and the spoliation "inadvertent." In support of those arguments, Charter offered a detailed litany of factual assertions purportedly derived from documents that Charter has now withheld as privileged and/or work product. Plaintiffs' motion, in turn, is based on this intentional, selective disclosure of privileged material and work product.

Unable to explain why these basic facts do not compel production of Charter's withheld documents under Federal Rule of Evidence 502(a)'s subject-matter waiver rule, Charter's opposition points to the standard for a *different* basis for finding waiver—"at-issue" waiver—and argues that Plaintiffs have not satisfied the elements of *that* standard. But at-issue waiver is a separate doctrine that does not bear on the analysis under Rule 502(a).

What is relevant under Rule 502(a) is that Charter does not dispute that the spoliation narrative it has provided to Plaintiffs, and argued to the Court, is based on selectively disclosing information derived from privileged materials and work product. Plaintiffs' motion detailed twelve specific examples where Charter affirmatively disclosed detailed information concerning its spoliation but withheld the documents bearing on that topic, and Charter's opposition fails to address any of them. *See* Mot. App'x (Dkt. 262). Furthermore, Charter concedes that subject-matter waiver occurs when a party intentionally discloses privileged information and work product, while withholding information on the same subject that "ought in fairness to be considered together." *See* Fed. R. Evid. 502(a); *see also* Opp'n at 7, 17; Dkt. 283 at 4–5.

Moreover, Charter also effected a waiver under the at-issue doctrine. By affirmatively offering a one-sided narrative to the Court and to Plaintiffs to try to explain its spoliation,

Charter has put at issue and thereby waived privilege and work-product protection over the investigation on which Charter relies for that narrative and the documents that would contradict or corroborate that narrative.  In comparable circumstances, courts have found that a party that offers summaries of privileged materials to argue that its destruction of ESI was inadvertent—even if the party "did not disclose or even paraphrase the attorney-client communications themselves"—waives privilege under the three-prong *Hearn* test on which Charter relies.

Finally, despite its superficial appeal, Charter's proposed Rule 502(d) order would only further prejudice Plaintiffs.  As described in Plaintiffs' concurrently filed opposition to Charter's motion for a Rule 502(d) order, Charter cannot voluntarily disclose privileged information and work product, and then undo the effects by requesting, over Plaintiffs' objection, an order permitting *further* selective disclosure.  Plaintiffs' motion should be granted.

## <u>ARGUMENT</u>

### I.      The At-Issue Waiver Doctrine On Which Charter Focuses Is a Separate and Distinct Doctrine from Subject-Matter Waiver Under Rule 502(a).

Charter's opposition sidesteps the core question under Rule 502(a):  whether Charter effected a subject-matter waiver concerning its spoliation-related documents by selectively disclosing privileged information and work product on the identified topics.  Mot. at 8–15. Instead of addressing subject-matter waiver based on intentional disclosure, Charter's opposition focuses on a different waiver doctrine, at-issue waiver, that is not the test under Rule 502(a). Opp'n at 2, 6–15.

Subject-matter waiver is an independent doctrine, which existed in common law and was codified in 2008 by Federal Rule of Evidence 502(a).  It provides that disclosure of privileged or work-product material waives protection over undisclosed privileged or work-product material

where:  "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."

Waiver is "intentional" where the disclosing party is "aware[] that privileged information is being released."  2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 5:35 (4th ed. 2020).  Thus, as the Advisory Committee Notes to Rule 502(a) describe, subject-matter waiver occurs where "a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."  A party that "makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation."  Advisory Committee Notes to Fed. R. Evid. 502(a).

Courts in this district similarly describe Rule 502(a) as preventing a party from using privilege and work-product protection as "both a sword and shield."  *XY, LLC v. Trans Ova Genetics, Lc*, 2018 WL 11000694, at *6 (D. Colo. May 14, 2018); *see also id.* (Rule 502(a) prevents "disclos[ing] selected attorney-client privileged communications . . . in hopes of gaining leverage or influencing the outcome of certain issues"); *Leprino Foods Co. v. DCI, Inc.*, 2014 WL 2922667, at *7 (D. Colo. June 27, 2014) (Rule 502(a) applies where "the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." (quotation omitted)).

Tellingly, even Charter admits in its Motion for a Rule 502(d) Order that production of privileged and work-product information concerning its spoliation could "subject Charter to

3

claims [of] a broader, subject-matter waiver" in this or subsequent litigations—without reference to the doctrine of at-issue waiver.  Dkt. 283 at 1, 5.

Nevertheless, Charter's opposition focuses on at-issue waiver—a separate doctrine, governed by a different test.  At-issue waiver applies where a party asserts a claim, defense, or allegation implicating protected material (*e.g.*, an advice-of-counsel defense).  The Advisory Committee Notes to Rule 502 confirm that at-issue waiver and disclosure-based waiver are distinct:

> [Rule 502] governs only certain waivers by disclosure.  Other common–law waiver doctrines may result in a finding of waiver *even where there is no disclosure of privileged information or work product*.  The rule is not intended to displace or modify federal common law concerning waiver of privilege or work product *where no disclosure has been made*."  (emphasis added) (internal citations omitted).[1]

Consequently, the three-part at-issue waiver framework—on which nearly all of Charter's opposition relies—does not apply to Charter's subject-matter waiver under Rule 502(a).  Likewise, all of the cases that Charter cites concerning at-issue waiver are irrelevant to assessing Charter's subject-matter waiver.[2]  *Accord Silverstein v. Fed. Bureau of Prisons*, 2009

---

[1] *See also Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, 2017 WL 712773, at *4 and n.23 (D. Kan. Feb. 23, 2017) (finding subject-matter waiver and declining to consider at-issue waiver); *Fed. Deposit Ins. Corp. for Integra Bank, N.A. v. Fid. & Deposit Co. of Maryland*, 2013 WL 12295907, at *3–4 (S.D. Ind. Nov. 26, 2013) (analyzing at-issue waiver and subject-matter waiver separately as distinct doctrines); *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 394 (N.D. Okla. 2010), *aff'd in part as modified*, 2010 WL 1741407 (N.D. Okla. Apr. 28, 2010) ("'At issue" or implied waiver can occur by implication . . . when a party injects the substance of work-product into litigation.  Waiver also occurs when a party makes a partial disclosure of work-product while seeking to maintain protection of work-product related to the same subject, otherwise known as 'subject matter' waiver.").

[2] *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695 (10th Cir. 1998) (cited at Opp'n 14); *Gates Corp. v. CRP Industries, Inc.*, 2018 WL 4697326 (D. Colo. Aug. 10, 2018) (cited at Opp'n 13); *Rosania v. Group O, Inc.*, 2014 WL 1224234 (D. Colo. Mar. 25, 2014) (cited at Opp'n 2); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618 (D. Colo. 1998) (cited at

WL 4949959, at *10–14 (D. Colo. Dec. 14, 2009) (applying the three elements of Rule 502(a) to subject-matter waiver, without reference to the three-part *Hearn* test for at-issue waiver); *XY, LLC*, 2018 WL 11000694, at *7 (same).

## II. Charter Effected Subject-Matter Waiver by Selectively Disclosing Privileged Information and Work Product About Its Spoliation of ESI.

As to the question actually presented under Rule 502(a)—whether Charter effected subject-matter waiver by selectively disclosing privileged information and work product about its spoliation—the answer clearly is "yes."  Charter admits as much:  in its Motion for a Rule 502(d) Order, Charter acknowledges that the documents on its privilege log constitute the "evidence . . . support[ing] Charter's explanation of its inadvertent loss of electronically-stored information."  Dkt. 283 at 1.  And Charter does not even attempt to refute *any* of the examples that Plaintiffs cited in which Charter made a detailed representation about its spoliation and then withheld the documents on which those assertions were based.  *See* Mot. App'x.  These simple facts establish the first two elements of subject-matter waiver under Rule 502(a): (1) Charter intentionally disclosed privileged information and work product and (2) withheld documents underlying those disclosures and related to the same subject matter.  Because the withheld documents are critical to Plaintiffs' anticipated motion under Fed. R. Civ. P. 37(e), Plaintiffs also have established the final element of Rule 502(a)—that fairness requires their disclosure.

---

Opp'n 2, 6, 8, 10, 13); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) (cited at Opp'n 6, 7, 10, 13, 14).

### A.    Charter Selectively Disclosed Details About Its Spoliation Derived from Protected Documents.

Charter's claim that "Plaintiffs cannot point to a single instance in which Charter disclosed, quoted, or summarized a privileged communication or piece of attorney work product in supplying the facts requested" ignores the record.  Opp'n at 11–12.  The Appendix to Plaintiffs' motion (Dkt. 262) details twelve instances in which Charter made representations about its spoliation and then withheld the documents from which those assertions were sourced. In its opposition, Charter does not dispute a single one of those examples.

Two examples illustrate the extent to which Charter disclosed the contents of the documents it is withholding.  *First*, in response to Plaintiffs' questions about the legal hold Charter applied to this case, Charter provided an account explaining how it issued a legal hold for a *different* matter in December 2015 and later concluded that this hold would be "used across all secondary copyright infringement matters."  Dkt 262-9, at 4.  When Charter received notice of Plaintiffs' claims, Charter claims that it decided that this hold "encompassed the scope of the record potentially relevant to Plaintiffs' notice [of their claims] in March of 2016."  Dkt. 262-9, at 9.  Charter also provided Plaintiffs a chronology with the specific dates on which it initiated document preservation pursuant to the hold (December 18 and 22, 2015), and increased the number of custodians subject to the hold (January 21, 2016).  Dkt. 262-9, at 4.

Charter thus made specific written representations to Plaintiffs about the scope and content of the legal hold that it claims to have had in place for Plaintiffs' claims—specifically, that the "December 2015 hold" was sufficient for "all music copyright infringement claims," and that Charter made the decision to rely on it in connection with the claims that Plaintiffs asserted in March 2016.  Dkt. 262-9, at 9.  Furthermore, in opposing Plaintiffs' motion for leave to take

spoliation-related discovery, Charter argued that it took "reasonable steps" to preserve information for this case by "issu[ing] a written legal hold" and saving "information relevant to the subject-matter of the anticipated litigation," and Charter backed this up with specific figures, such as dates on which it took specific actions, that realistically can only have been derived from written records.  Dkt. 174 at 4.

Yet, despite its representations to Plaintiffs and the Court, Charter has withheld documents showing how the substance of the hold was recorded, saved, displayed and/or described in Charter's systems.  Kamin Decl. ¶ 5(a), Dkt. 262-1.  Charter likewise has withheld every document bearing on whether Charter actually relied on that hold in connection with Plaintiffs' claims—as opposed to failing to put a hold in place for those claims.  *Id.*

*Second*, Charter's counsel described in detail Charter's policies concerning email preservation and legal holds.  It provided the specifics of its three-step process for preserving emails pursuant to a legal hold, including all of the actions taken by Charter's internal "records management team" once a custodian is placed on hold.  Dkt. 262-3, at 1.  In opposing Plaintiffs' motion for spoliation-related discovery, Charter also represented that it took "reasonable steps" to preserve information by "set[ting] its servers to automatically save to [its] archive any new email messages that those custodians sent or received after the date the hold was initiated."  Dkt. 174 at 4–5.  But when Plaintiffs sought documents "concerning [Charter's] legal hold policies, practices, or parameters," Dkt. 262-11 at 8—*i.e.*, the documents that constitute the record of the preservation procedures that Charter claims to have implemented—Charter withheld these documents in full even though it had revealed their contents in substantial part.

Charter contends that, if these disclosures effect a waiver, parties would be prevented from conferring on discovery issues, but that is plainly wrong. A party of course may disclose facts like the types and number of documents it possesses or the identity of witnesses, or even represent how they believe a witness would testify. But all of that is fundamentally different from what Charter has done here: Charter provided a detailed written narrative, summarized from and thus disclosing the *contents* of its documents, to tell a story about its purportedly "inadvertent" and "minimal" destruction of documents. Having done so, Charter cannot withhold the materials on which its assertions were based, or any related materials concerning the same subject matter.

**B.    Charter Does Not Effectively Distinguish the Cases on Which Plaintiffs Rely.**

Charter's opposition fails to meaningfully distinguish the cases that Plaintiffs cited (*see* Mot. at 9–12) in which subject-matter waiver resulted from disclosures similar to Charter's:

*In re Delta/Airtran Baggage Fee Antitrust Litig.*, 2012 WL 12887089 (N.D. Ga. June 20, 2012). Charter contends that *In Re Delta/Airtran* is "not applicable to the facts here," Opp'n at 10–11, but its own description of the case belies that argument. Charter explains that defendant Delta Airlines "responded to a motion for sanctions by arguing that its data preservation and collection efforts were 'reasonable,'" and that Delta "intentionally and extensively disclosed the privileged contents of its internal investigation in support of its argument." *Id.* at 11. Charter's own description of the case is thus nearly identical to the facts here: in a publicly-filed brief, Charter opposed Plaintiffs' motion for expedited spoliation discovery, arguing that its "thorough investigation into [the] causes and scope" of the data destruction "revealed that Charter took reasonable steps to preserve for litigation information that might be relevant to Plaintiffs claims."

Dkt. 174 at 4.  Furthermore, as part of its advocacy, Charter recounted to the Court the same spoliation narrative it provided to Plaintiffs.  *Id.* at 4–6; *see also* Dkt. 174-2, 174-3.  While Charter suggests in a footnote that Delta's disclosures were more substantial because they included "detailed attorney declarations and emails between its counsel and employees," Opp'n at 11 n.4, it does not explain how that is any different from the narrative Charter provided to the Court in its brief and in the letters that it attached to its brief in further support of that narrative. *See* Dkt. 174 at 4–6; *see also* Dkt. 174-2, 174-3.  That narrative disclosed the contents of Charter's privileged documents and internal investigation.

 *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988); *United States v. Billmyer*, 57 F.3d 31 (1st Cir. 1995); *In re OM Sec. Litig.*, 226 F.R.D. 579 (N.D. Ohio 2005); *Gruss v. Zwirn*, 2013 WL 3481350, at *13 (S.D.N.Y. July 10, 2013); and *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996).  Again resorting to the at-issue waiver doctrine, Charter suggests that these cases are inapposite because, in each, a party's counsel "conducted a factual investigation central to a theory of liability or defense asserted in a case" and then disclosed their investigation findings to gain some form of relief (*e.g.*, leniency from a government agency). Opp'n at 9.  But under Rule 502(a), these are meaningless distinctions.  The *purpose* for which protection has been waived is irrelevant to Rule 502(a)'s test for subject-matter waiver.  Indeed, *In re Delta/Airtran* makes clear that a party can waive protection through disclosures regarding spoliation, even though spoliation is not a "theory of liability or defense."

 Furthermore, the few cases cited in Charter's opposition that concern subject-matter waiver are consistent with Plaintiffs' arguments.  In *In re Fluor Intercontinental, Inc.*, 803 F. App'x 697 (4th Cir. 2020), the disclosure at issue consisted of just *four sentences* of

investigation conclusions that the defendant was legally obligated to provide to a government agency. *Id.* at 699. Unlike Charter's disclosures here, the court found that the defendant had not "disclos[ed] the content of the underlying attorney-client communication[s]" by "summariz[ing] them" in any way. *Id.* at 702. Moreover, the court expressed concern that to hold otherwise would discourage full compliance with the regulatory disclosure regime at issue. *Id.* at 703.

*Leprino Foods Co. v. DCI, Inc.*, 2014 WL 2922667 (D. Colo. June 27, 2014) is also inapposite. There, unlike here, the parties entered into a written confidentiality agreement for the purposes of pre-litigation settlement discussions, which "protecte[ed] against unwanted consequences in later litigation being attached to their open and collaborative efforts at out-of-court resolution." *Id.* at *8. Once litigation began, one party nevertheless argued waiver based on the parties' exchange of materials. *Id.* The court declined to find waiver, stating that principles of fairness weighed against it. *Id.*

Charter's other cases likewise are not on point. In *Iowa Pacific Holdings, LLC v. National Railroad Passenger Corp.*, 2011 WL 1527599 (D. Colo. Apr. 21, 2011), the plaintiff argued that the defendant effected a subject-matter waiver, but did not assert that the defendant had actually disclosed any privileged information. *Id.* at *6. And in *Constantine v. Teachers College*, 2010 WL 3260164 (S.D.N.Y. Aug. 6, 2020), the court simply wrote, "The Court has now done a thorough *in camera* review of all the privileged documents provided in connection with the spoliation issue and hereby reaffirms its prior ruling from the bench that the documents do not provide a basis for a waiver of privilege." *Id.* at *1. The case thus provides no guidance here.

**C.      Fairness Requires Disclosure of All Documents Charter Is Withholding.**

As Plaintiffs explained in their motion (at 13–16), the evidence Charter is withholding is critical to Plaintiffs' anticipated Rule 37(e) sanctions motion.  Charter has already argued that its "investigation revealed that Charter took reasonable steps to preserve for litigation information that might be relevant to the Plaintiffs' claims," and that "Charter inadvertently failed" to preserve the documents.  Dkt. 174 at 4–5.  In support of these assertions—which go directly to the analysis under Rule 37(e)—Charter's brief selectively disclosed a broad variety of specific facts derived from its investigation, including facts concerning the written legal hold that Charter alleges was relied upon for this matter and how ESI for multiple key custodians was deleted.  *Id.*

Plaintiffs need and are entitled to the materials underlying Charter's representations to test the veracity of those representations and so that their Rule 37(e) motion will be decided on a complete record.  Otherwise, Charter will be able to continue arguing that its document destruction was "reasonable" and "inadvertent" based on selective disclosure of privileged materials.  Plaintiffs have thus established the third element of Rule 502(a)—that fairness requires disclosure of the withheld materials.  For the same reasons, Plaintiffs have a "substantial need" and no other means for obtaining the information such that production of any withheld work product is required under Fed. R. Civ. Proc. 26(b)(3)(A).

Charter does not seriously dispute that the materials it is withholding are important to a Rule 37(e) motion.  Its only argument on this point is that one category of its withheld documents (notes taken by its outside counsel during their investigation) are irrelevant to one element of Rule 37(e) (intent).  Opp'n at 15–16.  But even as to intent, Charter is wrong.  Its counsel's notes about what Charter's employees revealed during interviews—for example,

concerning the actions they took related to the data destruction—certainly are relevant to intent. Charter also argues that disclosure of all withheld documents would be "prejudicial" to it, Opp'n at 18, but prejudice to the waiving party is not the test under Rule 502(a).

Finally, while Charter requests that the "court should perform a document-by-document 'fairness' analysis to determine the appropriate scope of a limited waiver," Opp'n at 17–18, that is self-evidently wrong. As described in Plaintiffs' motion, their discovery requests closely tracked (and in many cases, incorporated and quoted from) Charter's written disclosures about its spoliation. *See* Mot. at 6, n.4. Charter, in turn, logged the documents *responsive to those requests* that it was withholding. [3] There is no need for the Court to engage in an *in camera* review of over 800 documents, when the very appearance of the documents on the log establishes that they bear on the subjects as to which Charter waived the privilege; fairness demands that Charter produce *all* of those documents. Moreover, without additional factual background, it is difficult to imagine how the Court could determine which specific, responsive documents need *not* be disclosed in order to ensure a fair presentation of the issues.

## III.   Charter Also Waived Privilege Under the At-Issue Doctrine.

Charter's conduct here also effected waiver under the at-issue doctrine. At-issue waiver has three elements. First, the "assertion of the privilege [must be] the result of some affirmative act, such as filing suit or assertion of an affirmative defense, by the party claiming the privilege." *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 630 (D. Colo. 1998) (citing *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)). Charter acted affirmatively by intentionally relying on its

---

[3] Furthermore, if Charter possesses *any other* documents responsive to Plaintiffs' spoliation-related document requests—but chose not to log them—it must produce those documents as well. It appears that Charter may have done so, as Plaintiffs noted in their motion. Mot. at 3.

counsel's investigation in briefing before the Court and in letters to counsel defending Charter's destruction of hundreds of thousands of documents.  Charter's counsel's claim that Charter "inadvertently" deleted emails related to this case in December 2018 when it "engaged in a clean-up of its [data] archive and deleted any held data that it believed it no longer had an obligation to preserve," Dkt. 262-3 at 2, puts at issue the documents on which Charter relied to reach that assessment.  *In re Intel Corp. Microprocessor Antitrust Litig.*—involving substantially similar circumstances to those here—held that Intel affirmatively put at issue its counsel's investigation into its document destruction by disclosing summary results of that investigation, to "build and prove its assertion" regarding how the destruction occurred.  258 F.R.D. 280, 291–92 (D. Del. 2008); *see also Kidder Peabody*, 168 F.R.D. at 470 (holding that party waived privilege over employee interviews conducted as part of counsel's investigation through "its repeated injection of the substance of the report into this and other litigations and into related litigative contexts")

Charter's argument that it never acted affirmatively because it has not pled a defense implicating the privileged material reads the affirmative act requirement far too narrowly.  While Tenth Circuit cases have given "filing suit or asserting an affirmative defense" as *examples* of an affirmative act, Charter cites no authority that an affirmative act is *limited* to filing suit or asserting an affirmative defense.  Charter's acts here are just as intentional and "affirmative" as those that waived privilege in *Intel* and *Kidder Peabody*.

The second element requires that the "party put the protected information at issue."  *Aull*, 185 F.R.D. at 630.  Here, Charter put its counsel's investigation at issue by relying on the results of that investigation to forestall Rule 37(e) sanctions.  Charter contends that it disclosed only

underlying facts and not privileged content, but, unlike subject-matter waiver, whether Charter actually disclosed privileged content is *irrelevant* to at-issue waiver.  A party can effect at-issue waiver without disclosing privileged content by "mak[ing] factual assertions the truth of which can only be assessed by examination of the privileged communication."  *Kidder Peabody*, 168 F.R.D. at 470.  Indeed, the canonical at-issue waiver—asserting an advice-of-counsel defense— requires *no* disclosure of privileged communications.

In *In re Intel*, Intel likewise contended that there was no waiver because it had provided the court only "factual information, in summary form, 'derived in part from attorney's notes.'" 258 F.R.D. at 290–91.  The court rejected that argument, finding waiver because Intel "took the affirmative step" of providing the factual summaries and had argued to the Court, based on those summaries, "that its retention lapses we[re] the result of human error."  In particular, the court found that these waiver principles apply with "equal force to the voluntary disclosure of the verbatim privileged communication itself, a full report containing references to same, or to a memorandum or summary of the privileged communication."  *Id.* at 291; *see also In re Delta/AirTran*, 2012 WL 12887089, at *3 (holding that, when Delta "informed the Court . . . it had discovered an error in its document production," it "put at issue," and thereby waived privilege over, "the results of PwC's and its own investigation").

Finally for the reasons described above, Plaintiffs also clearly satisfy the final at-issue waiver element, that the information sought be "vital" to the claim.  *Aull*, 185 F.R.D. at 630; *see also In re Intel,* 258 F.R.D. at 292 (finding that the protected information was vital where it was needed to "fully test Intel's positions . . . on the issue of spoliation").  Thus, under the at-issue

doctrine, Charter's summarization of its investigation and the documents on which Charter's position relies waived the privilege as to the materials relating to Charter's spoliation.

**IV.     Charter's Proposed Rule 502(d) Order Is a Transparent Attempt to Continue Using Privilege As a Sword and Shield.**

As detailed in Plaintiffs' accompanying opposition to Charter's motion for an order under Fed. R. Evid. 502(d), Charter's proposed Rule 502(d) order is neither a solution nor a compromise. It is not a solution, because Charter cannot undo the broad  waiver it *already* effected by seeking a Rule 502(d) order now.  And it is not a compromise, because it improperly seeks to *perpetuate* Charter's selective waiver by disclosing *some* privileged documents (presumably, those that Charter likes) and withholding the rest.  Charter is welcome to produce any documents that it wishes from its spoliation privilege log, but Charter is no more entitled to engage in selective disclosure of privileged materials here than other party in any other case.

## <u>CONCLUSION</u>

For the reasons stated above and in Plaintiffs' motion (Dkt. 262), Plaintiffs request that the Court issue an order finding that Charter has waived attorney-client privilege and work-product protection for all documents responsive to Plaintiffs' spoliation-related document requests and requiring Charter to produce all documents it is withholding on that basis.

Dated: November 25, 2020

*/s/ Jonathan M. Sperling*
Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
J. Hardy Ehlers
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
jehlers@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 25, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ Jonathan M. Sperling
Attorney