# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

       Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

       Defendant.

___

**PLAINTIFFS' OPPOSITION TO CHARTER'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF EVIDENCE 502(d)**

___

## **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 2

I.     Rule 502(d) Does Not Permit Intentional, Selective Disclosure of Privileged
       Information and Work Product. ........................................................................................ 2

II.    Charter's Proposed 502(d) Order Is an Improper Attempt to Create a Favorable
       Documentary Record Concerning Its Spoliation. ............................................................. 5

CONCLUSION .............................................................................................................................. 9

# TABLE OF AUTHORITIES

                                                                                                       **Page(s)**

**Cases**

*Alpine Bank v. Hubbell*,
    2007 WL 219121 (D. Colo. 2007) ............................................................................................. 6

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
    2012 WL 12887089 (N.D. Ga. May 10, 2012) .......................................................................... 3

*Hostetler v. Dillard*,
    2014 WL 6871262 (S.D. Miss. Dec. 3, 2014) .......................................................................... 3

*Lyall v. City of Denver*,
    2016 WL 7176716 (D. Colo. Sept. 28, 2016) .......................................................................... 3

*Potomac Elec. Power Co. & Subsidiaries v. United States*,
    107 Fed. Cl. 725 (Fed. Cl. 2012) ............................................................................................. 4

*S2 Automation, LLC v. Micron Semiconductor Israel, Ltd.*,
    2012 WL 3150387 (D.N.M. July 23, 2012) .............................................................................. 3

*Smith v. Best Buy Stores, L.P.*,
    2017 WL 3484158 (D. Idaho Aug. 14, 2017) .......................................................................... 5

*Tetra Tech, Inc. v. Harter,*
    823 F. Supp. 1116 (S.D.N.Y. 1993) ......................................................................................... 6

*United States v. Rankin*,
    2020 WL 3036015 (D. Conn. June 5, 2020) ........................................................................ 3, 5

*Whitaker Chalk Swindle & Sawyer LLP v. Dart Oil & Gas Corp.*,
    2009 WL 464989 (N.D. Tex. Feb. 23, 2009) ........................................................................... 3

*XY, LLC v. Trans Ova Genetics*,
    2018 WL 11000694 (D. Colo. May 14, 2018) ..................................................................... 2, 4

**Statutes and Rules**

Fed. R. Evid. 502(a) ........................................................................................................................ 5

Fed. R. Evid. 502(b) ........................................................................................................................ 2

Fed. R. Evid. 502(d) .................................................................................................................. *passim*

Charter's proposal for a Rule 502(d) Order (Dkt. 283) has superficial appeal and a patina of reasonable compromise—after all, it will result in Charter producing three-quarters of the documents that Plaintiffs seek in their waiver motion (Dkt. 262), without the need for the court to resolve Plaintiffs' motion as to those documents. In fact, however, Charter's proposal is a ploy to lure the Court into endorsing its strategy of selective waiver. The Court should not fall for it.

Charter contends that its proposed Rule 502(d) order is simply a mechanism that will allow it to produce to Plaintiffs the documentary record of its spoliation without risking waiver as to third parties. But, contrary to what Charter suggests, it is not trying to ensure that Plaintiffs have a full and accurate picture of how its spoliation occurred. Instead, its offer to disclose *some* of its privileged information and work product is in furtherance of Charter's ongoing strategy to use privilege and work-product protection as both sword and shield—to selectively disclose helpful documents while shielding unhelpful ones. Tellingly, Charter does not identify any firm criteria that govern its determination of which documents it will produce and which it will withhold. And Charter's identification of the documents it proposes to withhold demonstrate that it some instances, Charter is cherry-picking which components of a single email chain—all of which have been withheld on privilege grounds—to disclose, and which to continue withholding. Thus, Charter's motion simply asks the Court to validate further selective disclosures of privileged information.

To Plaintiffs' knowledge, no court has *ever* authorized use of Rule 502(d) in this manner, and Charter has not cited any. Rather, courts, including in this district, have consistently held that Rule 502(d) may *not* be used to allow selective disclosure of protected materials. As Magistrate Judge Wang recently stated, based on the "language of the Rule, its legislative

1

history, and the interpreting case law . . . Rule 502 was never designed to provide blanket immunity to parties for subject-matter waiver resulting from the selective, intentional disclosure." *XY, LLC v. Trans Ova Genetics*, 2018 WL 11000694, at *5 (D. Colo. May 14, 2018).

Charter's motion for a Rule 502(d) order should be denied. Charter is welcome to produce any documents that it wishes from its spoliation privilege log, but Charter is no more entitled to engage in selective disclosure of privileged materials here than other party in any other case.

## ARGUMENT

### I. Rule 502(d) Does Not Permit Intentional, Selective Disclosure of Privileged Information and Work Product.

Charter's statement that using Rule 502(d) as it proposes is "common," or even permissible, is flat-out wrong.

Recognizing the volume of electronically stored information involved in modern cases, Congress enacted Rule 502(d) in 2008 to allow parties to produce documents without time-consuming pre-production privilege reviews. Under Rule 502**(b)**, a party may claw back a privileged document only if it "took reasonable steps to prevent [its] disclosure." Therefore, failing to take precautions to protect privileged documents typically creates a substantial risk of waiver. Rule 502**(d)**, however, allows a court to modify this default rule and enter an order permitting a party to claw back a privileged document even though it failed to take care beforehand to protect against its disclosure. The "Statement of Congressional Intent" for Rule 502(d) makes clear that this is the rule's purpose, stating that the rule is meant to "allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-

production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery." The Advisory Committee Notes similarly provide that the rule "contemplates enforcement of 'claw-back' and 'quick peek' arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product." Both of the cases that Charter cites for entry of a Rule 502(d) order without the opposing party's consent involve such clawback agreements, and one *denied* entry of the order.[1]

In limited instances, some courts have found additional uses of Rule 502(d) to be appropriate to facilitate discovery—for example, where both parties consent to an order or where a *receiving party* seeks an order due to the producing party's wholesale assertion of privilege. The remaining cases on which Charter relies exemplify that approach.[2] Other courts, however, have rejected the notion that Rule 502(d) may be used for anything beyond the narrow purpose of avoiding costly pre-production reviews.[3]

---

[1] *See Lyall v. City of Denver*, 2016 WL 7176716, at *2–3 (D. Colo. Sept. 28, 2016) (denying entry of order); *S2 Automation, LLC v. Micron Semiconductor Israel, Ltd.*, at *1 (D.N.M. July 23, 2012) (entering order that provided only that "[t]he *inadvertent* production of privileged or protected material during the course of discovery shall not be deemed a waiver or an impairment of any claim of privilege or protection").

[2] *See, e.g.*, *United States v. Rankin*, 2020 WL 3036015, at *1–2, 4 (D. Conn. June 5, 2020) (allowing third party to produce withheld documents to federal prosecutors pursuant to a Rule 502(d) order, where both the government and the third party consented); *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 2012 WL 12887089, at *2 n.3 (N.D. Ga. June 20, 2012) (stating in two-sentence footnote that the court entered a Rule 502(d) order allowing production of privileged documents while litigation continued over whether privilege had been waived; no mention of any objections to the order); *Whitaker Chalk Swindle & Sawyer LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4–5 (N.D. Tex. Feb. 23, 2009) (in a fee dispute between a party and its former counsel, entering a Rule 502(d) order to allow disclosure of documents without waiving privilege as to the underlying case, which remained ongoing).

[3] *See Hostetler v. Dillard*, 2014 WL 6871262, at *4 (S.D. Miss. Dec. 3, 2014) ("Plaintiffs argue that the Court's Order and Fed. R. Evid. 502(d) are not applicable to the intentional disclosures at issue. The Court agrees. Although Fed. R. Evid. 502(d) is not expressly limited to unintentional

3

What courts universally agree upon, however, is that Rule 502(d) may *not* be used for tactical advantage—for example, through selective disclosure of only *some* privileged information or work product on a subject.  In *XY, LLC v. Trans Ova Genetics*, 2018 WL 11000694 (D. Colo. May 14, 2018), Magistrate Judge Wang entered a Protective Order that provided protection from subject-matter waiver to the extent allowed by Rule 502(d).  *Id.* at *4.  The defendant's corporate designee subsequently provided testimony on advice he had received from company counsel.  *Id.* at *2.  The plaintiffs, in turn, contended that the defendant waived attorney-client privilege and that they were entitled to discovery of all legal advice on the same topic.  *Id.* at *3.  The defendant responded that the Rule 502(d) order entered by the court shielded it from a finding of waiver.  *Id.* at *4.

Based on a "careful review of the language of the Rule, its legislative history, and the interpreting case law," the court concluded that "Rule 502 was never designed to provide blanket immunity to parties for subject-matter waiver resulting from the selective, intentional disclosure and waiver such as what occurred [in the case]." *Id.* at *5.  It explained that "Rule 502 does not contemplate permitting a party to selectively and intentionally waive the attorney-client privilege without the potential risk of subject matter waiver." *Id.* at *6.  The court added that, had the Court thought that the Rule 502(d) order it entered allowed the parties to "selectively and intentionally inject attorney-client privileged communications into the action . . . it would have

---

disclosures, the purpose and intent of Rule 502 is to protect litigants from inadvertent disclosures."); *Potomac Elec. Power Co. & Subsidiaries v. United States*, 107 Fed. Cl. 725, 731 (Ct. Fed. Cl. 2012) (refusing to enter a Rule 502(d) order that would have allowed a party to "make intentional disclosures" related to its advice-of-counsel defense without effecting waiver; explaining that this went beyond the purpose of the rule described in the Advisory Committee Notes).

4

rejected such a provision." *Id.* at *7. While the court ultimately rejected plaintiff's argument that it was entitled to additional testimony and documents, it did so only because that information had "marginal relevance" and thus the plaintiff had not satisfied the "fairness" prong of Rule 502(a)'s test for subject-matter waiver. *Id.* at *8.

Other courts similarly agree that Rule 502(d) cannot authorize a party to selectively disclose privileged information. *See United States v. Rankin*, 2020 WL 3036015, at * 4 (D. Conn. June 5, 2020) (stating that a party may not use Rule 502(d) for "improper selective disclosures"); *Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *3-4 (D. Idaho Aug. 14, 2017) ("Allowing a party to intentionally and tactically disclose protected materials during litigation, while preserving the ability to assert privilege when such tactics change and against parties privy to the Rule 502(d) Order, would stretch attorney-client privilege and work product protections far beyond their intended purpose.").

Consistent with the above, *none* of the cases that Charter cites involve a Rule 502(d) order permitting the production of only *some* privileged documents in response to discovery requests while withholding others. *See supra* nn. 1-2.

## II. Charter's Proposed 502(d) Order Is an Improper Attempt to Create a Favorable Documentary Record Concerning Its Spoliation.

Charter is trying to use Rule 502(d) for the type of improper purpose expressly prohibited by courts, including the District of Colorado. It proposes producing about 600 privileged and work product documents responsive to Plaintiffs' spoliation-related RFPs, while withholding another roughly 200 documents responsive to the same discovery requests.

That disclosure is intentional, selective, and strategic. Charter has not divulged the criteria by which it selected the documents it would disclose and withhold. All it has done is list

5

six broadly-worded categories describing the types of documents it would produce. *See* Mot. at 3–4. But it has not stated whether it is producing every document within those six categories, nor described the categories of documents it is *withholding*. In other words, it is simply asking Plaintiffs and the Court to trust that its black-box selection process was in good faith.[4]

Charter is thus doubling down on its prior selective disclosure of information about its spoliation, described in Plaintiffs' motion for waiver (Dkt. 262). That prior selective disclosure has, under the law, resulted in subject-matter waiver. Rather than accept those consequences, Charter wants the Court to validate further selective disclosure and to endorse production of only those documents that support Charter's self-serving spoliation narrative.

In particular, Charter's proposal is intended to avoid disclosure of critical information to which Plaintiffs clearly have a right as a result of Charter's prior disclosures. Even if Charter were to produce every document in the six categories that it has listed, those categories still appear to exclude, at minimum, the following categories of information that Plaintiffs have sought (*see* Dkt. 262 App'x):

- The legal hold Charter claims to have applied to this case, or how the hold was recorded, saved, or displayed in Charter's systems;

- Charter's legal hold policies;

- Communications related to Charter's decision not to implement a legal hold specific to Plaintiffs' March 2016 notice of their claims;

---

[4] Nor can Charter purport to set forth criteria for the first time in its reply brief, such that Plaintiffs have no opportunity to respond. *See Alpine Bank v. Hubbell*, 2007 WL 219121, at *3 (D. Colo. 2007) ("A moving party should not be permitted to 'sandbag' its adversary by raising 'entirely new but foreseeable points relevant to [the motion] . . . in the reply." (quoting *Tetra Tech, Inc. v. Harter,* 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993))); *see also Ulibarri v. City & Cnty. of Denver*, 2011 WL 1336388, at *2 (D. Colo. 2011) ("As this argument was raised for the first time in the reply brief I need not consider it.").

6

- Communications related to Charter's legal hold migration generally, or other legal holds that were deleted during the migration; and

- Investigation of the email loss by Winston, including interview transcripts, summaries, and memoranda.  It has not even logged these documents.

Charter has not explained *any basis* for withholding these categories of documents while disclosing the others.  It has not provided any basis in the Federal Rules, caselaw, or any other legal authority that would suggest that its six listed categories of privileged information are more amenable to disclosure under Rule 502(d) than the categories it plans to withhold.

Charter's refusal to disclose the terms of the legal hold it claims to have applied to this case, or how the substance of the hold was displayed in Charter's systems, is particularly outrageous.  Charter has argued to the Court that it acted reasonably in not instituting a legal hold for this case because it had a sufficient hold already in place for another claim, and that the failure to move the data of key custodians to Charter's new document preservation platform was inadvertent.  Dkt. 174 at 4.  But Charter refuses to disclose the terms of the legal hold on which it claims it relied—such that it is impossible to assess whether reliance on that hold for purposes of this case was in fact reasonable.  And Charter refuses to disclose whether anything about how it maintained the hold indicated that the hold related to this case rather than solely to the claim in connection with which it was first instituted—such that it is impossible to assess whether Charter's destruction of relevant data was in fact inadvertent, as opposed to being a calculated result of failing to ever relate the hold to this case.

A review of the privilege log entries Charter wants to continue to withhold pursuant to a Rule 502(d) Order likewise raises serious concerns that Charter is trying to hide critical documents bearing on the document destruction.  These entries include emails with subject lines

7

like "Music industry copyright cases: Winston/Charter TPC re ESI/discovery," "Reminder-Archive Purge," and "Legal Hold Clean-up status." *See* Dkt. 238-1 App'x; Sahni Decl. Ex. 1 (Log Entries 601, 721, 241). They also include spreadsheets, PDFs, and Word documents with filenames like "Legal Hold Timeline Custodial Analysis – Privileged.xlsx," "8-20-19 Charter Legal Hold Memo.pdf," "Mingus – Hold Historical Info," and "Service Security Team Members Responsible for DMCA Workload.docx." *See* Dkt. 238-1 App'x; Sahni Decl. Ex. 1 (Log Entries 590, 592, 586, 602, 619, 785). These are documents that, based on their filenames alone, are highly relevant to Charter's contention that its spoliation was "inadvertent" and "minimal." *See* Dkt. 262-3, 262-9, 174. For example, one document concerns the archive "purge" that resulted in the deletion of relevant documents here. Another provides "historical info" about the legal hold for the "Mingus" matter—the matter for which Charter states that it initially instituted an infringement-related legal hold, and on which it contends it relied for purposes of Plaintiffs' claims. As described above, information about that legal hold is central to understanding whether Charter's destruction of information was truly inadvertent.

Furthermore, in several instances, Charter is proposing to disclose *some* privileged emails, but not others, from what appears to be a single email chain.[5]

---

[5] For example, Charter's proposed order states that it will *not* produce entries 462–468 on its privilege log. *See* Dkt. 238-1 App'x. These are 5 emails (with attachments) with the subject line "Mingus" or "Re: Mingus." *See* Sahni Decl. Ex. 1. But Charter's proposed order states that it *will* produce the next entry (469), which is an email with the same subject line ("Re: Mingus") and therefore appears to be part of the same chain. *See id.* Similarly, Charter's proposed order states that it will *not* produce entry 148 but *will* produce entries 149 and 150. *See* Dkt. 238-1 App'x. All three are emails containing the same subject line ("Mingus Legal Hold" or "Re: Mingus Legal Hold") sent within 5 minutes of one another. *See* Sahni Decl. Ex. 1.

8

Thus, while Charter claims that the proposed order will allow Plaintiffs to "test the accuracy" of Charter's claims (Mot. at 1–2), in fact it would simply facilitate Charter's calculated, selective disclosure. Because Rule 502(d) does not permit such disclosure, and because, to our knowledge, no court has *ever* entered an order under Rule 502(d) permitting intentional disclosure over the objection of the adverse party, Charter's motion should be denied, and the Court should grant Plaintiffs' motion to compel (Dkt. 262).

## CONCLUSION

For the reasons stated above, Plaintiffs request that the Court deny Charter's motion for entry of an order pursuant to Federal Rule of Evidence 502(d) (Dkt. 283).

| | |
|---|---|
| Dated: November 25, 2020 | */s/ Jonathan M. Sperling*<br>Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br><br>Mitchell A. Kamin<br>Neema T. Sahni<br>J. Hardy Ehlers<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>mkamin@cov.com<br>nsahni@cov.com<br>jehlers@cov.com<br><br>Janette L. Ferguson, Esq.<br>Benjamin M. Leoni, Esq.<br>LEWIS BESS WILLIAMS & WEESE, P.C.<br>1801 California Street, Suite 3400<br>Denver, CO 80202 |

Telephone: (303) 861-2828
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 25, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ Jonathan M. Sperling
Attorney