# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No. 1:19-cv-00874-RBJ-MEH |

## CHARTER COMMUNICATIONS, INC.'S MOTION TO STRIKE OR DISMISS PLAINTIFFS' COUNTERCLAIMS

Defendant Charter Communications, Inc. ("Charter") respectfully moves to strike or dismiss the purported "counterclaims" that the UMG Plaintiffs[1] seek to assert a year after the initial deadline for claim amendment, initially on the pretext that the counterclaims are "compulsory," but now based on a threat that the UMG Plaintiffs will pursue the claims in a separate action if the Court does not acquiesce to Plaintiffs' demand to add them here. No good cause been shown to support the late assertion of these claims, which would add over 3,000 new works to the case and would more than double the relevant claims period by adding four years of new claims. The belated assertion of these claims will wreak havoc on the existing case schedule and cause severe prejudice to Charter.

---

[1] As used herein, "UMG Plaintiffs" and "Plaintiffs" refers to the subset of plaintiffs who have pleaded "counterclaims" against Charter in the "Answer, Affirmative Defenses and Counterclaims to Defendant's Second Amended Counterclaims I and II," filed on November 24, 2020 (the "November 2020 Answer"), who are identified on Exhibits I and II thereto. (Dkt. 303 at 61 n.4).

Plaintiffs' gamesmanship is prohibited by the Federal Rules of Civil Procedure, which require that an untimely amendment be supported by good cause and cause no undue prejudice to the opposing party. Plaintiffs were dilatory in asserting their counterclaims, have sought to excuse the late timing by misrepresenting to the Court how and when they first became aware of the claims, and have thus far refused to provide any evidentiary support for the newly asserted claims. All of these factors negate any finding of good cause. Moreover, adding the claims to the existing case at this late stage would dramatically expand the scope of the case in a manner that is prejudicial to Charter and will impair a fair and timely resolution of the existing claims.

Because Plaintiffs cannot satisfy the requirements for leave to amend to add new claims, the Court should reject their bid to complicate this already-complex litigation at the eleventh hour. The Court has discretion to manage its docket to curtail tactical abuses of the judicial process. Charter respectfully submits that such discretion is appropriately exercised to strike or dismiss Plaintiffs' untimely claims pursuant to Federal Rule of Civil Procedure 12(f) and/or 12(b)(6).

## PROCEDURAL BACKGROUND

In March 2019, Plaintiffs first filed suit against Charter for the alleged secondary copyright infringement of over 11,000 works, asserting a claims period of March 24, 2013 through May 17, 2016 only. (Dkt. 1, ¶ 5; *id.* Exs. A–B.) On June 13, 2019, the Court entered a Scheduling Order establishing a deadline of November 1, 2019 to amend the pleadings and noting that it "may be altered or amended ***only on a showing of good cause***." (Dkt. 44, at 10, 12.) (emphasis added).

Plaintiffs subsequently sought and obtained an amendment to the Scheduling Order to extend the deadline to add parties (Dkts. 77, 79), and also sought and obtained leave to amend the list of works-in-suit (Dkts. 111, 122). Despite having multiple opportunities to do so, Plaintiffs

2

did not seek leave to add the new works that the UMG Plaintiffs now wish to assert as "counterclaims."

On February 14, 2020, Plaintiffs filed their First Amended Complaint. (Dkt. 123.) At that time, due in part to the fact Plaintiffs had expanded the case by adding 11 new parties, Charter requested a modification of the case schedule, which Plaintiff opposed. (Dkts. 128, 134.) The Court subsequently entered a modified Scheduling Order, which admonished the parties that they should "consider this schedule to be firm, and *any conduct that [the Court] believe[s] unreasonably interferes with it will be viewed with extreme prejudice*." (Dkt. 146 (emphasis added).)

The next day, and pursuant to the Court's instructions, Charter filed a partial answer and asserted counterclaims for declaratory judgment on contributory infringement and for violation of the Digital Millennium Copyright Act ("DMCA"). (Dkt. 147; *see* Dkt. 141.) Although Plaintiffs subsequently sought leave to file a motion to dismiss Charter's counterclaims, they did not indicate any intent to assert new claims. (Dkt. 156.) Based on Charter's stated intent to amend its DMCA counterclaim, the Court denied Plaintiffs' request for leave to file a motion to dismiss that claim. (Dkt. 161.) Charter filed its amendments shortly thereafter, adding a claim for declaratory judgment on vicarious copyright liability and a claim for violation of the Colorado Consumer Protection Act ("CCPA"), refiling its claim for declaratory judgment on contributory copyright liability, and slightly altering its DMCA claim. (Dkt. 165.) Charter's declaratory judgment claims were limited to the existing works-in-suit.

On June 15, 2020, Plaintiffs responded by filing a partial answer (the "June 2020 Answer"). (Dkt. 184.) In this pleading, the UMG Plaintiffs included two *new* claims on thousands of new

3

works, styled as "counterclaims to counterclaims," despite the Court's admonishment three months earlier against unreasonable interference with the established schedule.  In these new claims—filed more than seven months after the initial November 2019 deadline to amend the pleadings and without a request for leave to amend—the UMG Plaintiffs sought to add thousands of new works and to extend the claims period for four years beyond 2016.  (*Compare* Dkt. 123 ¶ 5, Exs. A-B, *with* Dkt. 184 ¶ 4, Exs. I-II.)  The ***sole*** ground the UMG Plaintiffs cited for asserting the counterclaims was that the claims were "compulsory."  Specifically, Plaintiffs claimed that they did not read Charter's declaratory judgment counterclaims to be limited to non-infringement of the underlying works-in-suit.  (*See* Dkt. 184, ¶¶ 3-4 & n.4.)  Charter did not intend to extend its counterclaims to non-asserted works, however, and requested Plaintiffs' consent to amend its counterclaims in order to make this fact crystal clear.  (*See* Dkt. 192.)  Plaintiffs refused to stipulate to this amendment, requiring Charter to file a motion seeking leave to amend.  (*See* Dkts. 191, 192.)

Four months later, on October 9, 2020, Plaintiffs informed Charter—for the first time—that the UMG Plaintiffs wanted to unilaterally "amend" all of their prior discovery requests to cover the new claims, expanding the discovery period by nearly four years to April 30, 2020.  (Ex. A.) Plaintiffs admitted that none of the requests they had previously served covered the new works or new time period, including requests Plaintiffs served ***after*** the June 2020 Answer was filed. (*Id.*)  After Plaintiffs repeatedly threatened Charter with motion practice despite Charter's attempts to reach a mutually-acceptable compromise, the parties participated in a hearing with the Special Master on October 26, 2020.  (Ex. B.)  At the hearing, counsel for Charter continued to express a willingness to reach a reasonable compromise, but indicated that the addition of the new claims

4

would have a profound impact on discovery by more than doubling the relevant claims period and requiring the addition of new document custodians, modifications to search terms, and the re-evaluation of burden and privilege objections. (Ex. C.) In light of the substantial work that would be required to accommodate the claims during the final months of discovery, and the fact that it was not clear whether the Court would even permit the new claims to be added to the case, Charter suggested that the most efficient course of action would be a bilateral stay of discovery on the new claims until the Court ruled on the pending pleadings motions. (*Id.*)

On November 2, 2020, Charter sent Plaintiffs a detailed letter pertaining to the new claims, again requesting that Plaintiffs dismiss the claims in the interests of judicial economy. (Exs. D, E.) In the letter, Charter pointed out that Plaintiffs had explicitly limited their document production and all of their written responses to the period of March 1, 2012 to May 17, 2016 throughout the litigation, and were continuing to refuse discovery on the new works and expanded time period even while demanding that same information from Charter. (*Id.*) To help ameliorate the prejudice resulting from Plaintiffs' delayed prosecution of the claims, Charter proposed two possible paths forward in the event Plaintiffs refused to dismiss the claims: (a) case bifurcation and a stay, or (b) a one-year extension of the case schedule, plus a bifurcated trial. (*Id.*) Plaintiffs did not substantively respond to the proposals in Charter's letter and instead filed a brief the same day opposing Charter's subpoena to a third party on the grounds that any discovery related to the post-2016 time period was expressly precluded by the Special Master's May 29, 2020 Order limiting discovery to the claims period of March 2012 to May 2016, which Plaintiffs deemed the "law of the case." (Dkt. 280 at 5). Inexplicably, after taking this position with respect to Charter's third party discovery, Plaintiffs then formally served Charter with written requests on November 5, 2020

5

for the new (post-2016) claims period, demanding that Charter respond to the discovery on an expedited basis and agree to a "50% increase" to the discovery limits.  (Exs. F, G).

On November 5, 2020, the Court granted Charter leave to make its "simple and clarifying amendment" to its declaratory judgment counterclaims recognizing that Plaintiffs' opposition reflected an "effort to [obtain] … an ostensible strategic benefit to the plaintiffs."  (Dkt. 284, at 5-6.)  In a Minute Order issued on November 9, 2020, the Court admonished that the UMG Plaintiffs "might wish to reconsider their position" regarding their desire to "expand the case beyond the claim period that has been the focus of attention throughout" the case, and granted Charter leave to file the instant motion if Plaintiffs declined to withdraw the claims.  (Dkt. 286.)

Over the next several weeks, the UMG Plaintiffs refused to tell Charter whether they intended to reassert their counterclaims, stating that they would need to see Charter's amended answer first, even though Charter had filed a copy of its proposed amendment months earlier.  (Ex. H; *see* Dkt. 192-1.)  After Charter filed its amended answer on November 18, 2020 (Dkt. 295), the UMG Plaintiffs informed Charter that they would indeed reassert the counterclaims, but no longer intended to argue that the claims were compulsory (Decl. ¶ 19).  As refiled, the counterclaims contained in the November 2020 Answer omit several works included in the June 2020 Answer, but still seek to add more than 3,000 works and extend the claims period beyond 2016 by an additional four years.  (Dkt. 303)

As of the date of this filing, Plaintiffs still have not produced a single page of evidence related to the new works or responded to any written discovery encompassing the new claims. (Decl. ¶ 20.)

6

## LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," including untimely or otherwise improper claims. Fed. R. Civ. P. 12(f). The decision to grant a motion to strike "rests within the discretion of the trial court." *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1168 (D. Colo. 2014).

Rule 12(b)(6) requires the dismissal of allegations that fail to state a cognizable claim. To withstand a Rule 12(b)(6) motion, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## ARGUMENT

In this complex case that has already consumed 20 months of the Court's time and substantial judicial resources, a bid to massively expand the case at the eleventh hour by adding roughly 3,000 new works and doubling the discovery period can be supported only by a compelling demonstration of "good cause" and the absence of prejudice to the opposing party. The opposite is true here. Plaintiffs' strategic ploy to inject new claims into the case without a formal request for leave to amend, now made under the threat of serial litigation, should not be countenanced. The Court has discretion to strike the new claims and should do so here. *See, e.g.*, *Old Town Indus., Inc. v. Ryan*, 2010 WL 2757352, at *2 (D. Colo. July 12, 2010) (granting motion to strike counterclaims-in-reply where "[p]laintiff failed to [amend its complaint] within the time limit").

7

### I. Plaintiffs' Counterclaims Are An Impermissible Attempt To Amend The Pleadings Without Good Cause

Because Plaintiffs seek to assert new claims after the Scheduling Order's deadline for amendment, they must satisfy the requirements for amendment under Rules 16(b)(4) and 15(a) before the claims can be considered at issue. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989-90 (10th Cir. 2019). Plaintiffs cannot satisfy either Rule's standard.[2]

#### A. Plaintiffs Were Not Diligent In Asserting Or Prosecuting The Claims

First, Plaintiffs cannot show "good cause" for the proposed amendment. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").[3] Showing good cause requires the movant to establish that the scheduling deadline could not have been met "despite the movant's diligent efforts." *Tesone*, 942 F.3d at 988. Good cause may exist if "the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no reason

---

[2] Further, as a threshold matter, counter-counterclaims are disfavored and allowable only as a compulsory response to permissive counterclaims, which Plaintiffs admit is not the situation here. *Conceptus, Inc. v. Hologic, Inc.*, 2010 WL 1460162, at *1 (N.D. Cal. Apr. 12, 2010) (holding that because a party's counterclaims were not compulsory, they were improper). This Court has noted that the "proper procedure" is instead to file a motion for leave to amend the party's complaint, and has granted a motion to strike counterclaims where that procedure was not followed. *See, e.g.*, *See Old Town Indus.*, 2010 WL 2757352, at *2. Strict enforcement of procedural rules is especially appropriate here, given that Plaintiffs also attempted to preempt the normal briefing process with an anticipatory letter brief, over Charter's objection. (Dkt. 308.)

[3] The heart of Rule 16(b)(4) is the requirement of good cause, but "prejudice to the party opposing the modification might supply additional reason[] to deny the motion [under Rule 16(b)(4)]." *Tesone*, 942 F.3d at 988. Because undue prejudice is more often considered under Rule 15(a), Charter includes its analysis of undue prejudice below.

8

for a grant of relief." *Id*. If the plaintiffs "knew or should have known" of the underlying facts but failed to timely assert claims, denying leave to add the late-filed claims is proper. *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1366 (10th Cir. 1993)

Here, the UMG Plaintiffs have admitted to facts showing they were aware of their claims before this lawsuit was filed and throughout its pendency, but simply failed to assert the claims in a timely fashion. Specifically, in their November 2020 Answer, the UMG Plaintiffs allege that they continuously "monitor[ed] and detect[ed] infringement occurring through Charter's network and sent more than 47,000 additional notices to Charter identifying specific Charter subscribers infringing Plaintiffs' copyrighted works" from 2016 onward. (Dkt. 303 ¶ 9) The fact that the UMG Plaintiffs were actively monitoring Charter's network from 2016 to 2020, and sending infringement notices to Charter during that time period, conclusively demonstrates that Plaintiffs long ago knew of the evidence underlying their new claims or, at minimum, should have been aware of the claims. This admission cannot be reconciled with Plaintiffs' newly-minted argument that they "only recently discovered these claims in light of Charter asserting its counterclaims." (Dkt. 308 at 1). Against this background, no good cause for the delay can be shown. *Tesone*, 942 F.3d at 990 ("If the plaintiff knew of the underlying conduct but simply failed to raise [its] claims, … the claims are barred.").

The UMG Plaintiffs' delay is inexcusable for the additional reason that Plaintiffs are sophisticated parties that have prosecuted numerous prior lawsuits involving copyright-infringement claims against internet service providers or concerning P2P networks over the last two decades. Given this extensive litigation experience, Plaintiffs were in the position to know, well before filing suit against Charter, what pre-suit diligence was needed. Despite ample

9

opportunity to seek leave to amend to add the new claims under the Court-ordered schedule, Plaintiffs appear to have made a conscious decision not to do so.

Finally, the manner in which the UMG Plaintiffs have prosecuted their claims also strongly negates a finding of good cause. After extensive briefing and a two-day hearing before the Special Master in May 2020, Plaintiffs obtained a favorable ruling limiting the scope of a number of Charter's requests for production, explicitly limiting those requests to materials pre-dating the 2016 end of the claims period. (Dkt. 181.) Only two weeks after the Special Master issued that order, the UMG Plaintiffs filed their June 2020 Answer, containing claims covering the post-2016 period. (Dkt. 184.) Even *after* that filing, however, Plaintiffs continued to object to any of Charter's discovery requests calling for information pertaining to the post-2016 time period on the grounds that the post-2016 time period was not "the relevant time period at issue in this case." (Exs. I, J, K.) Plaintiffs also *delayed* serving any of their own discovery related to the new claims for four months, and then admitted that the new discovery could not be completed without extracting a number of prejudicial concessions from Charter (namely, an accelerated response time, additional motion practice, and an agreement that Plaintiffs could grossly exceed the existing discovery limitations). (Ex. F.) To date, Plaintiffs have refused to reciprocate and thus have not produced a single piece of evidence related to the new works (including basic documentation related to ownership of the works). (Decl. ¶ 20.) Beyond that, Plaintiffs have recently objected to Charter's third party discovery to the extent any request implicates the post-2016 period. (Dkt. 280 at 5.) This type of gamesmanship warrants dismissal of the claims. *Tesone*, 942 F.3d at 989 ("[F]ailure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation … should not be considered good cause.").

### B. The Eleventh-Hour Counterclaims Are Unduly Prejudicial

A party seeking leave to amend outside the period for amendment must satisfy Rule 15(a)(2), which requires a showing that the proposed changes are an amendment "justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Tex. Instruments, Inc. v. BIAX Corp.*, 2009 WL 3158155, at *2 (D. Colo. Sept. 28, 2009). Applying Rule 15(a)(2),[4] courts may deny leave on account of "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive." *Frank*, 3 F.3d at 1365. Plaintiffs have not only failed to diligently assert and prosecute their new claims, but the addition of the claims to the underlying case will cause great prejudice to Charter. Plaintiffs' untimely counterclaims expand the scope of the lawsuit by adding more than 3,000 new works and more than doubling the claims period, increasing Charter's exposure as a result. This alone will result in undue delay.

Moreover, adding the new post-2016 claims to the existing case will complicate the case and fundamentally impair Charter's defenses because Charter's internal system for responding to copyright infringement notices materially changed shortly after May 2016. (Decl. ¶ 21.) Thus, any discovery directed to Charter's post-2016 system will involve significantly different underlying facts, documents, and witnesses. *Tex. Instruments*, 2009 WL 3158155, at *2 ("Most often, [prejudice] occurs when the amended claims rise out of a subject matter different from what

---

[4] The facts discussed above regarding Plaintiffs' undue delay and lack of a good faith effort to timely prosecute the claims are relevant under Rule 15(a)(2). *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) ("[D]enial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay"); *Frank*, 3 F.3d at 1365-66 (delay is undue where the movant "[knew] or should have known of the facts upon which the proposed amendment is based but fail[ed] to include them in the original complaint"); *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991) (motion to amend denied because it was untimely and the movant offered no explanation for the delay).

was set forth in the complaint and raise significant new factual issues."). Even if this entirely new discovery could be completed on an accelerated basis—and Charter respectfully submits that it would be manifestly unfair to require Charter to conduct such new discovery in addition to all the discovery remaining to be conducted to prepare its defenses to Plaintiffs' existing claims—Charter still will be left at trial with the task of explaining, and then defending, two disparate notice response systems to a jury. The resulting juror confusion will undoubtedly inure to Plaintiffs' strategic benefit, potentially rewarding Plaintiffs for their lack of diligence in asserting the new claims in a timely fashion.

Additionally, there is no reasonable dispute that the parties will have to start anew with respect to ownership and chain-of-title discovery pertaining to thousands of new works.[5] One would presume that litigants anxious to insert new claims into an existing case would have promptly produced the foundational material for their claims as soon as they became aware of them, but the opposite is true here. *As of the date of this Motion, the UMG Plaintiffs have not produced any of this basic, foundational evidence for the new works.*[6] In fact, Plaintiffs refused to provide this discovery even after Charter sent a letter in early November explaining: (a) how discovery pertaining to the new works was encompassed by Charter's existing discovery requests,

---

[5] Further, all of the third party subpoenas Charter has served to date are focused on the works-in-suit as defined by the February 2020 Complaint. Thus, the addition of the new works would require Charter to re-issue its subpoenas and/or re-brief all of its motions to compel, a burden that will unfairly and uniquely impact Charter, not Plaintiffs.

[6] New discovery and briefing may also be necessary to determine the extent to which Plaintiffs' new claims are barred by the statute of limitations. *See* 17 U.S.C. § 507(b). Certain agreements between Charter and Plaintiffs that temporarily tolled the statute of limitations have expired, and consequently some of the new claims from 2016 and 2017 may be time-barred. *See Gay v. Rojas*, 2012 WL 2711043, at *1 (D. Colo. July 9, 2012) (denying leave to add time-barred claims).

and (b) how Charter would be prejudiced if Plaintiffs did not promptly withdraw their scope objections barring discovery into the post-2016 time period. (Ex. E.) Plaintiffs not only ignored the request, but since then have repeatedly (and inexplicably) objected to providing any post-2016 discovery. (Dkt. 280 at 5; Exs. L, M, N, O, P.) Charter has been prejudiced by Plaintiffs' refusal to provide this discovery. The UMG Plaintiffs should not be permitted to further reap the benefits of their stonewalling by securing both a case extension and expansion.

Lastly, given the different time periods and works, the selection of custodians and search terms also will present another time-consuming issue for which no efficiency will be realized by permitting the counterclaims to proceed here instead of in a separate action. In the underlying case, the parties' negotiations on custodians and search terms took nearly six months and entailed extensive motion practice before the Special Master.[7] This process was further extended due to both parties' appeals of adverse rulings to Judge Hegarty and this Court. There is no reason to believe discovery on the additional 3,000 works can be accomplished at a faster pace.

Good cause does not exist for, nor does justice require, injection of Plaintiffs' newly dredged claims into this lawsuit a year after the initial deadline for claim amendment.

## II.     The Counterclaims Should Be Dismissed Under Rule 12(b)(6) For Failure To Identify The Specific Copyrighted Works At Issue

Finally, Plaintiffs' counterclaims should be dismissed under Rules 8 and 12(b)(6) for failure to adequately identify the copyrighted works at issue. "A complaint for copyright

---

[7] Indeed, one of the issues that has been litigated extensively before the Special Master pertains to Plaintiffs' objections to discovery requests related to the post-2016 time period, because Plaintiffs have asserted throughout the litigation (when advantageous to them) that the post-2016 time period is irrelevant and that production of additional documents related to this time period would be too burdensome. (*See* Dkt. 181; Exs. C, P.)

13

infringement fails to satisfy the requirements of Rule 8(a) if it does not allege the specific copyrighted work that has been infringed." *Livingston v. Morgan*, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006). Courts in this district routinely dismiss infringement claims where the complaint fails to identify the specific copyrighted works or their registration numbers. *See, e.g., Faircloth v. Schwartz*, 2014 WL 4466663, at *15 (D. Colo. Sept. 10, 2014) (dismissing claim in part because the complaint "fail[ed] to identify the alleged copyrighted property with the requisite degree of clarity"); *Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769 F. Supp. 1161, 1166-67 (D. Colo. 1991) (granting motion for a more definite statement).

While Plaintiffs have identified certain specific copyrighted works in Exhibits I and II of the November 2020 Answer, Plaintiffs also seek recovery for infringement of an unknown number of additional, unidentified works, because their counterclaims state that Exhibits I and II are representative lists and not exhaustive. (Dkt. 303 ¶¶ 38, 47.) Because Plaintiffs have failed to specifically identify and provide the registration number for any work other than the representative samples appearing in Exhibits I and II, Plaintiffs' counterclaims should be dismissed to the extent they cover any works not identified in those exhibits.

## CONCLUSION

For the foregoing reasons, Charter respectfully requests that the Court grant this motion.

Dated: December 8, 2020

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)

Respectfully submitted,

*s/ Andrew H. Schapiro*
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700

14

(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: melkin@winston.com
E-mail: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
E-mail: andrewschapiro@quinnemanuel.com


Charles K. Verhoeven
David Eiseman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com

*Counsel for Defendant*
*Charter Communications, Inc.*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*s/ Andrew H. Schapiro*
Andrew H. Schapiro
