# Exhibit E

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S EMAIL ADDRESS
lindabrewer@quinnemanuel.com

November 2, 2020

Jeffrey M. Gould
Matthew J. Oppenheim
Oppenheim & Zebrak LLP
4530 Wisconsin Avenue N.W., 5th Floor
Washington, DC 20016

Re:   *Warner Records Inc. v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ

Dear Counsel:

We write to follow up on the October 26, 2020 telephonic conference with the Special Master, consistent with her guidance that the parties meet and confer in good faith to determine whether they can reach agreement on a case schedule that takes into account the UMG Plaintiffs'[1] belated attempt to assert and pursue discovery related to their counter-counterclaims.

We note at the outset that it remains our position that the UMG Plaintiffs' counterclaims exceed the scope of Charter's declaratory relief counterclaims and are therefore not properly deemed "compulsory" counterclaims.  *See* Fed R. Civ. P. 13(a)(1); *see also Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 57, 64–65 (S.D.N.Y. 1981).  Because the UMG Plaintiffs' counterclaims are not compulsory, their untimely assertion in the case represents an impermissible attempt to amend the pleadings well after the Court's January 6, 2020 deadline, and the claims should be dismissed on that basis alone.  *See Old Town Indus., Inc. v. Ryan*, Case No. 09-cv-02587-WDM-DW, 2010 WL 2757352, at *2 (D. Colo. July 12, 2010) (granting motion to strike counterclaims-in-reply where "[p]laintiff failed to [amend its complaint] within the time limit set by [the] Magistrate").  We therefore renew our request that the UMG Plaintiffs voluntarily dismiss the counter-counterclaims, which is by far the most appropriate and efficient way to resolve the current discovery dilemma.  To be sure, a voluntary dismissal of the counter-counterclaims furthers the interests of judicial economy because it eliminates a significant amount of uncertainty related

---

[1]   For the purposes of this letter, the term "UMG Plaintiffs" refers to the "Counter-Counterclaim Plaintiffs," as identified in Exhibits I and II to Plaintiffs' June 15, 2020 Answer, Affirmative Defenses, and Counterclaims to Defendants' Counterclaims I and II, which Charter recognizes includes entities outside of the Universal Music Group.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

03319-00007/12403046.3

to the scope of the pleadings, reduces the number of disputes requiring court resolution, and affords the parties the greatest chance of completing discovery on the current case schedule.

If the UMG Plaintiffs are unwilling to agree to voluntarily dismiss their counter-counterclaims, then we think the next most reasonable compromise is for the parties to agree to a bifurcated case schedule with two distinct phases (Phase I and Phase II), coupled with a stay of discovery related to the counter-counterclaims during Phase I.  Phase I will be limited to the claims period of March 1, 2013 to May 17, 2016 and the works asserted in the operative February 2020 Amended Complaint (the "works-in-suit") and any corresponding counterclaims and defenses.  Phase II will be limited to the "new works" (and associated time period) asserted in Plaintiffs' Answer, Affirmative Defenses and Counterclaims to Defendants' Counterclaims I and II, filed on June 15, 2020.

As you are aware, at the time the Court issued its scheduling order on March 17, 2020, the counter-counterclaims were not yet asserted in the case.  Thus, when the fact discovery deadline was set, the Court was not aware that the UMG Plaintiffs would later seek to vastly expand the scope of the case by more than doubling the relevant time period and adding 3,000 new works.  While Plaintiffs have attempted to blame Charter for this unexpected development by claiming that Charter's declaratory judgment counterclaims triggered the case expansion, we are confident that the record does not support this assertion.  To the contrary, Charter's declaratory judgment counterclaims were very clearly limited to the works-in-suit (of which there is nearly zero overlap with the new works the UMG Plaintiffs are attempting to add).  Charter took the additional step of seeking leave to amend its counterclaims to remove any purported ambiguity regarding the works at issue, and expressly limited the time period at issue to the March 2013 to May 2016 claims period.  Not only were the UMG Plaintiffs unwilling to resolve the case scope dispute informally with Charter after receiving this clarification, but they then inexplicably sat on their purported counter-counterclaims for an additional four months, declining to pursue discovery related to the counter-counterclaims while also resisting any discovery falling within the expanded time period associated with the new works.  The significant prejudice to Charter that has resulted from the UMG Plaintiffs' dilatory litigation conduct can only be remedied by dismissal of the counter-counterclaims or case bifurcation.

For example, in all of Plaintiffs' responses to Charter's requests for production and interrogatories, Plaintiffs explicitly limited their production and responses to the period of March 1, 2012 to May 17, 2016, and characterized that as a "reasonable" time period for discovery (thereby representing that anything beyond that time period was "unreasonable").  Indeed, Plaintiffs maintained this position even *after* asserting the UMG Plaintiffs' counter-counterclaims on June 15, 2020.  *See, e.g.,* 6/29/20 Resp. to Third Set of Interrogatories at General Objection No. 7; 6/29/20 Resp. to Third Set of RFPs at General Objection No. 7.  To date, this has not been remedied, and the UMG Plaintiffs' continued refusal to provide *any* information in discovery relating to their counter-counterclaims has therefore resulted in substantial prejudice to Charter.  Even worse, the UMG Plaintiffs also did not diligently pursue *any* discovery related to their counter-counterclaims for four months.  And they have now admitted that expanding the scope of the case to accommodate the counter-counterclaims would require a "redo" of all of Plaintiffs' existing discovery requests, which purportedly cannot be done without a significant upward adjustment to the written discovery limits and a significant downward adjustment to the time Charter normally would have to respond

2

to discovery under the Federal Rules. As we have explained, this is not acceptable, and further exacerbates the prejudice to Charter.

Nevertheless, in a good faith attempt to confer with Plaintiffs regarding potential compromises, set forth below are three possible scenarios that could be a path forward. These scenarios are being presented solely in the spirit of compromise and shall not be construed as a waiver of Charter's right to continue to argue that a full dismissal of the UMG Plaintiffs' counter-counterclaims is appropriate and warranted.

### A. Scenario One

The UMG Plaintiffs voluntarily dismiss their counter-counterclaims from the case. In return, Charter would agree that the UMG Plaintiffs' dismissal is without prejudice and would agree to dismiss its declaratory judgment claims without prejudice at the same time. The rest of the case would remain on its current schedule.

### B. Scenario Two

Plaintiffs agree to a bifurcated case schedule, with a Phase I and Phase II. Phase I would proceed on the existing schedule and would be limited to the works-in-suit asserted in the Amended Complaint filed on February 14, 2020 and the associated discovery period (March 1, 2012 to May 17, 2016) and any counterclaims or defenses thereto. Discovery related to the new works, and their associated claims and discovery period, would be stayed. Phase II of the case would be limited to the new works asserted via the June 15, 2020 counter-counterclaims and the associated claims period (May 18, 2016 to April 30, 2020), and any counterclaims or defenses thereto. Phase II would commence on December 1, 2021, or two weeks after the Court's rulings on post-trial motions from the trial of Phase I, whichever date is later, and would thereafter run on a schedule similar to Phase I, with trial to be completed within 34 months. The new case schedule for Phase II would provide a date certain by which Charter would respond to the counter-counterclaims and a date certain by which any new parties may be added.

### C. Scenario Three

In the event Plaintiffs will not agree to either Scenario One or Scenario Two, we have set forth below the conditions that would need to be met in order for discovery on the counter-counterclaims to proceed in the existing case. While we are open to discussing modest adjustments to any of the specific proposals below, we do not see how major adjustments could be feasible given the short time period remaining for fact discovery and the delays that have already resulted from the UMG Plaintiffs' failure to timely pursue their counter-counterclaims. As such, if we cannot reach a mutually acceptable agreement on the terms below, this further reinforces our position that Scenarios One or Two are the only reasonable paths forward and intend to seek relief from the Court on that basis.

Under Scenario Three, discovery may proceed on the counter-counterclaims in the existing case, provided the parties can reach agreement on the following:

- The UMG Plaintiffs will cure all existing deficiencies to Charter's outstanding discovery requests by November 18, 2020, by updating each of their responses to the

      discovery requests identified below[2] (which already called for information falling within the broader time period and/or for all works asserted in the case):

- Specifically, the UMG Plaintiffs will produce all responsive, non-privileged documents, for the new works (to the extent applicable), through April 30, 2020, for the following already-served document requests:

  - RFP Nos. 2, 5 -7, 9, 14, 17, 18, 23-25, 27-30, 34, 41, 47, 48, 50, 53, 55-57, 62, 63, 65, 66, 81, 84, 86, 90-93

    - The UMG Plaintiffs' production may be made subject to any objections already asserted, with the exception of the time period objection/limitation, so long as the production is otherwise consistent with all prior rulings of the Special Master and Court. Charter reserves the right to address any specific objections that are untenable for the new claims.

- The UMG Plaintiffs will provide supplemental responses that contain the requested information for the new works (to the extent applicable), through April 30, 2020, for the following already-served RFAs:

  - RFA Nos. 9-10

    - The UMG Plaintiffs' responses may be made subject to any objections already asserted, with the exception of the time period objection/limitation, so long as the responses are otherwise consistent with all prior rulings of the Special Master and Court. Charter reserves the right to address any specific objections that are untenable for the new claims.

- Again, all of the above-mentioned requests already requested information for the broader time period and/or for all works asserted in the case. It was Plaintiffs who objected and narrowed the responsive time period to March 1, 2012 to May 17, 2016. Now that Plaintiffs have demanded that the scope of the case be expanded to include the new works and broader time period, the UMG Plaintiffs should be the first to produce documents and respond with the information supporting their counter-counterclaims.

  - We note that the UMG Plaintiffs are not similarly situated to Charter with respect to the above-mentioned requests. As Plaintiffs have already conceded, Plaintiffs explicitly included an instruction in all of their discovery requests that limited the requested information to the period of March 1, 2012 to May 17, 2016. Charter did not.

---

[2] Charter has made a good faith attempt to provide as much specificity as possible in this letter but reserves the right to supplement or correct its list of discovery requests to the extent additional existing requests are identified that encompass the counter-counterclaims.

4

- By November 6, 2020, Charter will serve an amended 30(b)(6) deposition notice on the UMPG Plaintiffs[3] that encompasses the broader time period. The UMPG Plaintiffs will respond by November 13, 2020 with: (a) an identification of the witnesses who will cover each topic, and (b) available dates between December 1 and 11, 2020.

- Charter and the UMG Plaintiffs will immediately meet and confer to reach agreement on a mutually-acceptable increase to the existing written discovery limitations, which will apply to both sides, in order to accommodate any remaining written discovery that needs to be served pertaining to the counter-counterclaims. Such negotiations shall be concluded by November 13, 2020. If no agreement can be reached, the parties will jointly request resolution by the Special Master.

    o Once the new written discovery limitations have been set (by agreement or order), each side shall have fifteen (15) days to serve their new counter-counterclaims requests and each side shall have twenty-one (21) days to serve objections and responses.

- The parties will jointly move the Court to extend all deadlines in the case by twelve (12) months, including the fact discovery deadline, the expert discovery deadline, the dispositive motion deadline, and the trial date. This extension is necessary so that the parties have adequate time to: (a) obtain rulings from the Court on the already pending motions related to the pleadings (a process that may take an additional three months, at the least, given the ongoing pandemic), (b) meaningfully meet and confer on any new discovery disputes arising out of the counter-counterclaims discovery and obtain Court resolution of the same, and (c) serve third party discovery related to the counter-counterclaims and obtain Court resolution of any disputes arising from the same.

    o In particular, we note that the UMG Plaintiffs' decision to expand the scope of the case occurred months *after* Charter served its subpoenas on certain third parties. If Charter is forced to re-serve or re-litigate third party discovery to address a broader time scope and new works, then the schedule will need to provide adequate time for that. For example, for the subpoena served on Mark Monitor in December 2019, it took ten (10) months for Charter to have its motion to compel heard by the Special Master. And, even after the Special Master issued her ruling, the process still has not concluded because Plaintiffs made an untimely request to intervene.

    o Alternatively, Charter is willing to consider a joint agreement whereby Charter is permitted to amend its counterclaims to add the RIAA and MarkMonitor as parties, which would allow discovery to proceed on a more efficient basis than if

---

[3] For the purposes of this letter, the term "UMPG Plaintiffs" includes Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GmbH, Polygram Publishing, Inc. and Songs of Universal, Inc.

these entities remain third parties.  If Plaintiffs are amenable to this proposal, Charter may be amenable to a shorter case extension (such as an extension of six months instead of twelve months).

- Charter reserves the right to request case bifurcation or a bifurcated trial to the extent the additional facts developed during discovery indicate that bifurcation is warranted.

Please let us know if you have questions or would like to discuss these issues.  Given the importance of the issues to the overall case schedule, please respond to this letter by the close of business on November 5, 2020.

Very truly yours,

Linda J. Brewer

CC: Covington & Burling LLP

03319-00007/12403046.3

6