# Exhibit G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC., et al.,**

Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.**

Defendant.

---

**PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANT CHARTER COMMUNICATIONS, INC.**

---

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Special Master's guidance at the October 26, 2020 hearing in this matter, Plaintiffs serve this Sixth Set of Requests for Production of Documents and Things to Defendant Charter Communications, Inc. Plaintiffs request that Defendant respond in accordance with the Federal Rules of Civil Procedure, and produce the documents hereinafter described at the offices of Covington & Burling, LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, or at such other time and place as the parties may agree upon, within fourteen (14) days of the date of service.

**DEFINITIONS**

Unless otherwise indicated, the following definitions apply to these requests:

1. The term "Plaintiffs" refers collectively to Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The

All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Warner Chappell Music, Inc., Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp., W.C.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., PolyGram Publishing, Inc., and Songs of Universal, Inc.

2. The terms "you," "your," "Charter," or "Defendant" refer to Charter Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on behalf of the defendant.

3. The term "MarkMonitor" refers to MarkMonitor Inc., its parents, subsidiaries,

affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf. The term MarkMonitor also specifically includes DtecNet Inc. and Clarivate Analytics.

4. The term "Subscriber" refers to any account holder or subscriber of your internet services.

5. The term "User" refers to any person that uses your internet services, either presently or in the past.

6. The term "DMCA" refers to the Digital Millennium Copyright Act.

7. The term "Infringement Notice" refers to a notice that one or more of Charter's Subscribers or Users allegedly infringed a copyright. This includes notices sent on behalf of any copyright owner, regardless of whether or not Charter processed or retained the notice. This term includes but is not limited to a notification of claimed copyright infringement pursuant to the DMCA, 17 U.S.C. § 512.

8. The term "Customer Facing Action" shall mean any action that you directed to a Subscriber as a result of having received an Infringement Notice, including: forwarding a copy of the Infringement Notice to the Subscriber; sending the Subscriber a warning in response to receiving an Infringement Notice; suspending, slowing (i.e., "throttling") or otherwise adversely affecting the Subscriber's internet access; or disconnecting or terminating the Subscriber's internet service.

9. The term "Infringing Subscriber" refers to any Subscriber identified in any Infringement Notice sent to You by Plaintiffs, or on Plaintiffs' behalf, between May 18, 2016 and April 30, 2020.

10. The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Subscribers or Users relating to, the DMCA.

11. The term "Repeat Infringer Policy" refers to any policy that seeks to address copyright infringement or alleged copyright infringement by a Subscriber or User, whether or not contemplated by and/or set forth in 17 U.S.C. § 512(i).

12. The term "Acceptable Use Policy" refers to any policy concerning obligations, rules, or limitations of Subscribers' or Users' use of internet services offered by Charter.

13. The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server, including but not limited to protocols such as BitTorrent, ARES, eDonkey, and Gnutella, for the purpose of distributing data and electronic files over the internet.

14. The terms "person" or "persons" are defined as any natural person or business, legal or governmental entity or association. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

15. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A non-identical copy is a separate document within the meaning of this term. "Document" specifically includes electronically stored information as defined in Rule 34(a).

16. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place

under any circumstances. The definition includes any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal. For the avoidance of doubt, this term shall include letters, emails, call logs, voicemails, and text messages.

17. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

18. "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

19. The term "CATS" means the Charter Abuse Tracking System, including without limitation any programs, procedures, software, or policies related thereto.

20. The term "Cox" means Cox Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act, to your knowledge, on behalf of such entities or individuals.

21. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

22. The use of the singular form of any word shall include the plural and vice versa.

**INSTRUCTIONS**

1. These requests shall be deemed to be continuing to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

2. Defendant is to produce documents comprising electronically stored information pursuant to the agreed-upon protocol governing the production of electronically stored information and paper documents.

3. Defendant is to produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices as they are kept in the usual course of business or, alternatively, organized and labeled to correspond to the category of documents requested.

4. In response to each request, Defendant shall affirm whether responsive documents exist and have been, or shall be, produced.

5. If Defendant deems any information, document, or communication requested by any of the following requests to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe: (a) the information, document, or communication you claim to be so protected by author, subject matter, subject line and/or document title, date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any individual to whom the information, document, or communication was distributed, shown, or explained; (c) the information, document, or communication's current custodian; and (d) all bases, factual and legal, upon which such protection allegedly rests. If you contend that only a portion of the information contained in a document is privileged, provide the portion that you do not contend is privileged.

6. In the event that more than one copy of a document exists, Defendant shall produce

the original and each non-identical copy of each document or other tangible thing requested herein, which is in Defendant's possession, custody, or control, or that of persons or entities under the control of Defendant.

7. Each discovery request shall be fully responded to unless it is objected to in good faith. An objection must state with specificity the grounds for the objection and whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request (or a word, phrase, or clause contained in the request) must specify the part objected to and Defendant shall produce or permit inspection of the rest.

8. Unless otherwise specified, the relevant time frame for these Requests is May 18, 2016 through April 30, 2020 ("Subsequent Claim Period").

9. Pursuant to the Special Master's guidance and instructions at the October 26, 2020 hearing in this matter, Plaintiffs have included, at the end of each Request, a citation to the corollary request for the Claim Period and the prior applicable agreements or rulings on that corollary request. *See* October 26, 2020 Hrg. Tr. at 21:11-30:18. As directed by the Special Master on October 26, 2020, Plaintiffs have limited the scope of certain Requests to conform to prior orders of the Special Master or the Court. For these, including Request Nos. 93, 98, 115, 122, 128, and 132, Plaintiffs do so without prejudice to their position that they are entitled to broader discovery and, but for the Special Master's October 26 directive, would have sought discovery commensurate with the original scope of those requests that were narrowed by such prior orders of the Special Master or the Court.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 88** All documents "involving, mentioning or related to MarkMonitor as it relates to copyright, peer-to-peer monitoring, and alleged copyright infringement notices." *See* Plaintiffs' RFP 1; N. Sahni September 25, 2019 Ltr.; E. Ranahan Oct. 1, 2019 Ltr.; N. Sahni October 16, 2019 Ltr.; E. Ranahan October 30, 2019 email; N. Sahni February 7, 2020 Ltr.

**REQUEST NO. 89** Logs of all Infringement Notices sent to you by any person or entity from May 18, 2016 to April 30, 2020, concerning (i) subscribers identified in Plaintiffs' Infringement Notices and (ii) all Subscribers who were the subject of three or more Infringement Notices, sufficient to show, as to each such Infringement Notice, the Subscriber ID, ticket number, date and time of alleged infringement as set forth in the Infringement Notice, IP address, each action taken or determined to not be taken with respect to such Infringement Notice, and the date and time of each such action or determination. *See* Plaintiffs' RFP 2; Dkt. 242; September 9, 2020 Hrg. Tr. at 38:11-69:17.

**REQUEST NO. 90** The responses of (i) subscribers identified in Plaintiffs' Infringement Notices and (ii) all Subscribers who were the subject of three or more Infringement Notices, to communications concerning Infringement Notices sent to Defendant by any person or entity. *See* Plaintiffs' RFP 3; Dkt. 242; September 9, 2020 Hrg. Tr. at 38:11-69:17.

**REQUEST NO. 91** Documents "concerning: the use of BitTorrent, or other peer-to-peer file-sharing systems by Charter subscribers; the prevalence of copyright infringement occurring through BitTorrent, or other peer-to-peer file-sharing systems; and communications, memos, and studies discussing Internet traffic attributable to BitTorrent, or other peer-to-peer file-sharing systems." *See* Plaintiffs' RFP 5; *quoting* Charter's May 27 Supplemental Response to RFP 5.

**REQUEST NO. 92** Organizational charts or other documents sufficient to show "Charter's corporate structure related to its internet services," including your organizational structure for persons responsible for addressing copyright infringement complaints, user terms of service, Acceptable Use Policies, privacy policies, and finances, including the identity and title of each job occupant. *See* Plaintiffs' RFPs 6-7; *quoting* Charter's May 27 Supplemental Response to RFP 6; Dkt. 181 at 34-35.

**REQUEST NO. 93** Copyright infringement policies, and documents and communications discussing copyright infringement policies during the Subsequent Claim Period. *See* Plaintiffs' RFP 8; Dkt. 100 at 3; December 17, 2019 Hrg. Tr. at 65:16-67:14, 68:9-15; February 19, 2020 Hrg. Tr. at 128:5-135:1.

**REQUEST NO. 94** "[D]ocuments sufficient to show Charter's policies and practices for assigning IP addresses to its subscribers and its DHCP log retention policy" during the Subsequent Claim Period. *See* Plaintiffs' RFP 9; *quoting* Charter's May 27 Supplemental Response to RFP 9.

**REQUEST NO. 95** "Information sufficient for Plaintiffs to match the IP addresses contained in infringement notices served on Charter with particular subscribers." *See* Plaintiffs' RFP 12; *quoting* Dkt. 164 at 2-3.

**REQUEST NO. 96** Documents concerning any technological or other means or mechanisms Defendants considered or implemented to address, limit or prevent Subscribers or Users' use of Defendants' internet services to infringe copyrights through the use of BitTorrent or Peer-to-Peer file sharing systems. *See* Plaintiffs' RFP 13; N. Sahni September 25, 2019 Ltr.; E. Ranahan October 1, 2019 Ltr.; N. Sahni October 16, 2019 Ltr.; N. Sahni February 7, 2020 Ltr.

**REQUEST NO. 97** "Documents related to any potential financial impact of terminating subscribers for alleged copyright infringement." *See* Plaintiffs' RFP 14; *quoting* Charter's May 27 Supplemental Response to RFP 14.

**REQUEST NO. 98** "Internal and external communications regarding copyright infringement by Charter's subscribers, sent to or from members of Charter's Network Securities Operations team [or its successor or functional equivalent] during the [Subsequent Claim Period], excluding form messages, form responses, or mere forwards of form messages (without more)." *See* Plaintiffs' RFP 16, as modified in search term negotiations; *quoting* Special Master's August 31, 2020 Order.

**REQUEST NO. 99** All documents concerning Plaintiffs' copyright interests, including but not limited to the transmission or downloading of sound recordings or musical works of which Plaintiffs are the legal or beneficial copyright owners or exclusive licensees, and claims or potential claims by Plaintiffs against Defendant or any other person. *See* Plaintiffs' RFP 17; E. Ranahan October 1, 2020 Ltr.

**REQUEST NO. 100** Documents "show[ing] calculations of annual internet revenues from" 2016 through April 30, 2020. *See* Plaintiffs' RFP 18; *quoting* E. Ranahan January 10, 2020 email.

**REQUEST NO. 101** Documents sufficient to show the actual monthly revenue from all Subscribers identified in Plaintiffs' Infringement Notices for May 18, 2016 through April 30, 2020. *See* Plaintiffs' RFP 19; Plainitffs' December 16, 2019 Letter for December 17, 2019 Discovery Conference; December 17, 2019 Hrg. Tr. at 47:1-59:4; February 19, 2020 Hrg. Tr. at 143:2-25.

**REQUEST NO. 102** Documents sufficient to demonstrate your financial performance, including but not limited to regular corporate financial reports, audit reports, auditor letters, and any notes or supporting documents thereto. *See* Plaintiffs' RFP 20.

**REQUEST NO. 103** Documents concerning the impact or effectiveness of any graduated response program, DMCA Policy, or Repeat Infringer Policy in stopping alleged copyright infringement through the use of Defendants' internet services. This includes but is not limited to documents such as marketing reports, plans, studies, analyses, and consumer research. *See* Plaintiffs' RFP 21; N. Sahni September 25, 2019 Ltr.; N. Sahni February 7, 2020 Ltr.

**REQUEST NO. 104** All communications with, from, or involving any employee, officer, or director of Cox Communications regarding alleged copyright infringement, including but not limited to graduated response programs, Repeat Infringer Policies, and DMCA Policies, for the time period May 18, 2016, to April 30, 2020. *See* Plaintiffs' RFP 22; E. Ranahan October 1, 2019 Ltr; N. Sahni February 7, 2020 Ltr.

**REQUEST NO. 105** "Documents concerning licenses paid for software that enables the tracking of and response to alleged copyright infringement on Charter's service" through April 30, 2020. *See* Plaintiffs' RFP 23; *quoting* Charter's May 27 Supplemental Response to RFP 23.

**REQUEST NO. 106** All documents on which you rely in responding to Plaintiffs' Interrogatories. *See* Plaintiffs' RFP 24.

**REQUEST NO. 107** "[S]worn statements made [by Charter] … concerning Charter's policies and practices regarding copyright infringement on its network." *See* Plaintiffs' RFP 25; *quoting* Charter's April 29 Supplemental Response to RFP 25.

**REQUEST NO. 108** All documents relating to CATS, including documents describing the technical abilities of the CATS system to track abuses of any copyright infringement-related

policy by its users, or otherwise track or process notices of infringement, the source code implementing CATS, all versions of the CATS Abuse Automation System Implementation Plan, all communications between You and Cox regarding CATS, and documents reflecting your actual use of the CATS system to track abuses of any copyright infringement-related policy by your users. *See* Plaintiffs' RFP 26.

**REQUEST NO. 109** All communications between you, on the one hand, and any Subscribers or Users, on the other, discussing your DMCA Policy or other policy regarding copyright infringement. *See* Plaintiffs' RFP 27; E. Ranahan July 10, 2020 email.

**REQUEST NO. 110** Internal communications "concerning Charter's copyright and DMCA policies." *See* Plaintiffs' RFP 28; *quoting* Charter's April 29, 2020 Supplemental Responses to Second Set of RFPs.

**REQUEST NO. 111** All communications as between you, on the one hand, and any Subscribers or Users who were the subject of three or more Infringement Notices, on the other, discussing or considering any Infringement Notice, notice of alleged copyright infringement or violation of any DMCA policy or other policy regarding copyright infringement, or any "ticket" generated in response to any Infringement Notice. *See* Plaintiffs' RFP 29; *see also* Dkt. 242; Sept. 9, 2020 Hrg. Tr. at 38:11-69:17.

**REQUEST NO. 112** All of your internal communications discussing any Infringement Notice, any instance of alleged copyright infringement, or any "ticket" generated in response to any Infringement Notice, including internal communications concerning the actual or potential termination of any Subscriber's account with Charter. *See* Plaintiffs' RFP 30; Special Master's August 31, 2020 Order.

**<u>REQUEST NO. 113</u>** All internal communications discussing or considering whether to terminate or suspend Subscribers' subscriptions for copyright infringement or alleged copyright infringement, or for violation of your policies regarding copyright infringement. *See* Plaintiffs' RFP 31; E. Ranahan June 4, 2020 email; H. Ehlers June 9, 2020 email.

**<u>REQUEST NO. 114</u>** Documents concerning any Infringement Notices that you received but rejected (and/or did not process or retain), including but not limited to Infringement Notices from MarkMonitor. *See* Plaintiffs' RFP 32; E. Ranahan July 10, 2020 email.

**<u>REQUEST NO. 115</u>** For the Infringing Subscribers, documents reflecting or describing how and when Defendants communicated any Infringement Notice to third parties, including Subscribers or Users, including both (i) Defendants' policies for forwarding to or otherwise informing Subscribers or Users of copyright infringement allegations, and (ii) any notices or communications to Subscribers or Users. *See* Plaintiffs' RFP 34; Special Master's August 31, 2020 Order.

**<u>REQUEST NO. 116</u>** Communications with the Recording Industry Association of America, the National Music Publishers' Association, and/or the Motion Picture Association of America, or any of their agents or vendors, discussing or concerning copyright infringement. *See* Plaintiffs' RFP 35.

**<u>REQUEST NO. 117</u>** Documents concerning all policies, practices, or capabilities that you considered, formulated, rejected, or adopted for taking adverse action (including suspending or terminating internet service) against Subscribers or Users for alleged copyright infringement. *See* Plaintiffs' RFP 37; Dkt. 181 at 27-28.

**REQUEST NO. 118** Documents reflecting Your Subscribers' or Users' awareness or non-awareness of Your DMCA Policies, Acceptable Use Policies, or other copyright infringement policies. *See* Plaintiffs' RFP 38; E. Ranahan July 10, 2020 email.

**REQUEST NO. 119** Internal communications discussing your actual or potential Subscribers' or Users' satisfaction or dissatisfaction with your responses to Infringement Notices. For the avoidance of doubt, this request includes communications discussing whether, if you terminated internet service for one subscriber in response to an Infringement Notice, you would lose or be unable to attract additional subscribers. *See* Plaintiffs' RFP 39; Charter's agreement during July 17, 2020 meet and confer.

**REQUEST NO. 120** All advertising or marketing materials, marketing reports, plans, studies, and consumer research materials discussing the use or potential use of your internet services to download or obtain music, including the speeds at which music can be downloaded using your networks. *See* Plaintiffs' RFP 41; Dkt. 181 at 40-41.

**REQUEST NO. 121** Documents concerning your growth targets, strategic plans, or internal strategies pertaining to the use or offering of higher bandwidths to Subscribers for the purpose of downloading music. *See* Plaintiffs' RFP 42; Dkt. 181 at 41-42.

**REQUEST NO. 122** Documents discussing or concerning your employees' use of your internet services to copy, distribute or publicly perform Plaintiffs' works-in-suit without permission of the copyright owner. Plaintiffs' RFP 44; Special Master's August 31, 2020 Order.

**REQUEST NO. 123** Documents concerning all suspensions or terminations of your internet services to any Subscriber or User relating to actual or alleged copyright infringement or violation of any copyright infringement-related provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, graduated response policy, or any other policy related to

copyright infringement, including communications discussing the re-activation of the accounts of any Subscribers whose accounts were terminated for violation of any policy relating to copyright infringement. *See* Plaintiffs' RFP 45; E. Ranahan July 10, 2020 email.

**REQUEST NO. 124** Documents sufficient to show the average and/or estimated cost to you of obtaining a Subscriber and the average or estimated costs associated with terminating a Subscriber's internet service. *See* Plaintiffs' RFP 50; Dkt. 181 at 36-37.

**REQUEST NO. 125** Documents sufficient to show the average revenue and profit that you have received per Subscriber, for the life of the account, from January 1, 2012 to present. *See* Plaintiffs' RFP 52; Dkt. 181 at 37.

**REQUEST NO. 126** Documents sufficient to show the average and/or estimated total length of time that you retain Subscribers, from inception to termination of the subscription for any reason. *See* Plaintiffs' RFP 53; Dkt. 181 at 37-38.

**REQUEST NO. 127** Documents sufficient to show the prices at which you offered each tier of internet speed to Subscribers from May 18, 2016 to April 30, 2020. *See* Plaintiffs' RFP 54; Charter's April 29, 2020 Supplemental Responses to Second Set of RFPs.

**REQUEST NO. 128** All "work-log notes"—or other records or logs of calls between your employees and your subscribers concerning infringement notices—associated with Plaintiffs' notices, or all Infringing Subscribers who were the subject of three or more Infringement Notices. *See* Plaintiffs' RFP 56; Dkt. 181 at 28-30; July 2, 2020 Hrg. Tr. at 29, 32.

**REQUEST NO. 129** Documents sufficient to show the extent to which compensation (including bonus structure(s)) for your employees, customer service representatives, or members of your internet security, Network Securities Operations department, or Customer Security team

(or their successors or functional equivalents), was tied to retention of Subscribers. *See* Plaintiffs' RFP 57; Dkt. 181 at 39-40.

**REQUEST NO. 130** Documents sufficient to describe Charter's efforts to educate or inform Subscribers or Users identified in any Infringement Notice Charter received regarding copyright and copyright infringement and Charter's related policies, including materials you provided to Subscribers after their service was suspended or terminated for actual or alleged copyright infringement, internal guidelines concerning such materials, and drafts thereof. *See* Plaintiffs' RFP 58; Charter's agreement during July 17, 2020 meet and confer.

**REQUEST NO. 131** Documents sufficient to show your policies and procedures for attempting to educate or inform Subscribers regarding copyright and copyright infringement, including any Charter policies concerning copyright infringement. *See* Plaintiffs' RFP 59; Charter's agreement during July 17, 2020 meet and confer.

**REQUEST NO. 132** Reports or summaries distinguishing, differentiating, or otherwise comparing Charter's responses to violations of its Acceptable Use Policies for reasons other than copyright infringement (including for hacking or spamming) to its responses to violations of those policies on the basis of copyright infringement. *See* RFP 61; Dkt. 181 at 30-31.

**REQUEST NO. 133** Documents sufficient to show the meaning of each action, code, field, or definition used in the "ticket log" data produced or to be produced by you in this action. *See* Plaintiffs' RFP 67; Charter's March 9, 2020 Responses to Second Set of RFPs.

**REQUEST NO. 134** For all Subscribers who were the subject of three or more Infringement Notices, records of all information maintained in the "DMCA Postcard/Website" described in the document you produced in this case beginning at CHA_000000022. *See* Plaintiffs' RFP 68.

**REQUEST NO. 135** Documents sufficient to show the number of all "returned DMCA postcards," as referenced in the document you produced in this case at CHA_000000050, by month. *See* Plaintiffs' RFP 69.

**REQUEST NO. 136** Copies of all "metrics report[s]," as referenced in the document you produced in this case at CHA_000000050, summaries, PowerPoints, tables, or other documents Charter created or used to monitor actions taken by your Network Securities Operations department or Subscriber Services Security team (or their successors or functional equivalents) in response to copyright infringement notices received. *See* Plaintiffs' RFP 70.

**REQUEST NO. 137** For each Infringing Subscriber, documents sufficient to show any charges to the Subscriber from 2012-2016 for exceeding data allowances provided by the level or tier of internet service subscribed to. *See* Plaintiffs' RFP 74; Charter's March 9, 2020 Responses to Second Set of RFPs.

**REQUEST NO. 138** Documents concerning any limitations, restrictions, caps, or quotas you imposed on the number of Infringement Notices you would receive, accept, process, forward to Subscribers/Users, take a Customer Facing Action, or otherwise act upon. *See* Plaintiffs' RFP 75; E. Ranahan July 10, 2020 email.

**REQUEST NO. 139** Documents sufficient to show all circumstances in which you would ignore, or otherwise not act upon, an infringement notice. *See* Plaintiffs' RFP 76; E. Ranahan July 10, 2020 email.

November 5, 2020

*/s/ Neema T. Sahni*
Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500

Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Janette L. Ferguson, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 5th day of November, 2020, upon counsel of record.

Dated: November 5, 2020

*/s/ J. Hardy Ehlers*