**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

WARNER RECORDS, INC., *et al.*

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.

    Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF EVIDENCE 502(d)**

The plain language of Rule 502(d) permits the Court to enter an order limiting the scope of subject-matter waiver—even over Plaintiffs' unfounded objections. Contrary to Plaintiffs' assertions, Rule 502(d) was not designed merely to allow "quick peek" productions. Rule 502(d) was intended to provide the judiciary and parties with a means of crafting an order that would allow the disclosure and use of otherwise privileged documents in federal proceedings without effecting a broader waiver. *See* Rule 502(d) Advisory Committee Notes ("[A] federal court may order that disclosure of privileged or protected information 'in connection with' a federal proceeding does not result in waiver.").

Such an order is particularly warranted in a dispute like the present one, which concerns the resolution of issues relating to Charter's ESI loss. Under Charter's proposed order, Charter would produce more than 600 of the 820 documents on its ESI loss-related privilege log—the same documents subject to Plaintiffs' Motion to Compel. While these documents are either privileged attorney-client communications or protected fact work product, their disclosure under the protection of a Rule 502(d) order will provide Plaintiffs the documents they seek, while protecting Charter from a broader claim of subject-matter waiver. The only documents relating to this case that Charter would withhold under its proposed 502(d) order are those comprising *opinion* work product—which reflect the impressions and opinions of counsel as opposed to factual information—for which Plaintiffs cannot satisfy the high threshold for compelled production. *See* ECF 283-1 (Proposed Order), ¶¶ 4-5 (Nov. 4, 2020).

While Plaintiffs' Opposition is dressed in a great deal of hyperbole, it does not provide a compelling reason why a Rule 502(d) order should not be entered. For example, Plaintiffs claim that Charter has cherry-picked helpful documents while withholding others to further a "self-

serving spoliation narrative." *See* ECF 305 at 6. Not so. Plaintiffs know exactly which documents Charter is proposing to produce and which documents it is proposing to withhold. Under Charter's proposed Rule 502(d) order, Plaintiffs would be provided with *more than 600 documents* that contain facts responsive to Plaintiffs' questions regarding Charter's ESI loss irrespective of whether they are "helpful." Plaintiffs' accusation that Charter is attempting to use Rule 502(d) as a "ploy" or as part of an "outrageous" attempt to conceal information is unfounded. *See*, *e.g.*, *id.* at 1, 7.

Charter engaged in conversations for weeks with Plaintiffs to attempt to construct a Rule 502(d) agreement that would have provided them with the very information they claim they need. Yet, Plaintiffs walked away from those discussions, leaving Charter with little choice but to either stand on its privilege and/or seek such an order from this Court. Although this raises a concern that Plaintiffs are more interested in gamesmanship than obtaining the discovery they claim to need, Charter is nevertheless willing to stand by its original offer because it believes it is the correct, and most efficient, way of resolving the dispute concerning Charter's privilege log.

## ARGUMENT

**I. THE COURT HAS THE AUTHORITY TO ENTER CHARTER'S PROPOSED RULE 502(d) ORDER**

### A. The Plain Language Of Rule 502(d) Provides For The Entry Of Charter's Proposed 502(d) Order

Rule 502(d) plainly states that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). Nothing in either Rule 502 or its explanatory materials preclude its use in resolving the type of

dispute presently before the Court. Rule 502(d) was not created to facilitate only pre-production "claw-back" provisions, but was also adopted as a vehicle to allow courts and parties to disclose certain otherwise privileged documents without the fear of a broader claim of waiver. To that end, The Sedona Conference has commented on the scope and design of Rule 502(d):

> Rule 502(d) gives a federal court broad power to enter an order ruling that the parties' conduct in a proceeding before the court does not result in waiver. A Rule 502(d) order may address not only inadvertent waiver, but also instances in which intentional disclosure will not result in waiver. *Thus, a Rule 502(d) order can be crafted to expedite discovery and save costs by obviating the risk that disclosure will result in wavier.*

*The Sedona Conference, Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 95, 130 (2016) (emphasis added). Courts may enter the type of order Charter proposes here to facilitate the disclosure of privileged information without broader waiver.[1] *See, e.g.*, *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 2012 WL 12887089, at *2, n.3 (N.D. Ga. June 20, 2012) (allowing production of otherwise privileged materials to rebut a spoliation motion without waiver pursuant to 502(d));[2] *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 2009 WL 2921302, at *1 (S.D.N.Y. Sept. 8, 2009) (same); *Whitaker Chalk Swindle & Sawyer, LLP v.*

---

[1] Plaintiffs purport to cite cases where courts have categorically declined to enter Rule 502(d) orders of the type Charter proposes here. ECF 305 at 3-5. That some courts decline to enter or enforce Rule 502(d) orders in the circumstances of a particular case is not determinative of whether Charter's proposed order is appropriate here. *Cf. id.* at 3-4 n.3 (citing *Hostetler v. Dillard*, 2014 WL 6871262, at *4 (S.D. Miss. Dec. 3, 2014) (declining to apply non-waiver provision in Case Management Order to documents defendants did not establish were privileged and were discussed during deposition) and *Potomac Elec. Power Co. & Subsidiaries v. United States*, 107 Fed. Cl. 725, 731 (2012) (declining to enter proposed 502(d) order that would permit party to produce documents in support of advice of counsel defense in present proceedings without privilege waiver in subsequent proceedings)); *id.* at 5 (citing *Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *3-4 (D. Idaho Aug. 14, 2017) (declining to enforce parties' Stipulated Discovery Plan to permit claw back of intentionally disclosed documents).

[2] The *In re Delta/Airtran Baggage Fee Antitrust Litig.* court's Rule 502(d) order is attached hereto as Exhibit A to the Declaration of Andrew Schapiro.

*Dart Oil & Gas Corp.*, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009) (allowing production of otherwise privileged materials without waiver pursuant to 502(d) order); *United States v. Rankin*, 2020 WL 3036015, at *4 (D. Conn. June 5, 2020) (same); *In re Processed Egg Prods. Antitrust Litig.*, 2014 WL 6388436, at *8 (E.D. Pa. Nov. 17, 2014) (same); *S.E.C. v. Bank of Am. Corp.*, 2009 WL 3297493, at *1 (S.D.N.Y. Oct. 14, 2009) (entering Disclosure Stipulation Agreement and Proposed Protective Order pursuant to Rule 502(d) to allow defendant "to waive attorney-client privilege and work-product protection regarding certain categories of information material to this case."); *In re MF Global Holdings Ltd.*, 2012 WL 769577, at *3 (Bankr. S.D.N.Y. Mar. 7, 2012) (same); *In re Gen. Motors LLC Ignition Switch Litig.*, 14-cv-02714-JMF, ECF No. 60 (S.D.N.Y. Nov. 14, 2014) (entering 502(d) order allowing production of specific categories of otherwise privileged materials without waiver which excluded opinion work product).

### B. The Court Can Enter A Rule 502(d) Order Without Party Agreement

While Charter would have preferred to obtain Plaintiffs' consent to a Rule 502(d) order,[3] nothing precludes the Court from entering one over Plaintiffs' objection. *See, e.g.*, Fed. R. Evid. 502(d), Advisory Committee Note ("[A] confidentiality order is enforceable whether or not it memorializes an agreement among the parties to the litigation", because "[p]arty agreement should not be a condition of enforceability to a federal court's order"); *Lyall v. City of Denver*, 2016 WL

---

[3] As detailed in Charter's Rule 502(d) Motion and Opposition to Plaintiffs' Motion to Compel, Charter has engaged with Plaintiffs for the better part of the past year to provide Plaintiffs with information regarding its ESI loss. *See* ECF 282 at 3-5 (Nov. 4, 2020). More specifically, Charter discussed the entry of a Rule 502(d) order to facilitate Charter's ongoing provision of information so that the parties could resolve Plaintiffs' ESI loss-related concerns. *Id.* After months of discussions, Plaintiffs abruptly rejected this offer, claimed that the parties' ESI loss-related discussions constituted a waiver by Charter, and moved the Court to require Charter to indiscriminately produce everything on its privilege log.

4

7176716, at *1 (D. Colo. Sept. 28, 2016) ("A court certainly has the authority to enter a Rule 502(d) order on its own initiative and without prior agreement by the parties."); *S2 Automation LLC v. Micron Tech., Inc.*, 2012 WL 3150387, at *3 (D. N.M. Jul. 23, 2012) (noting that "it is not necessary for the parties to agree" to a Rule 502(d) order for the court to enter one).

Plaintiffs point to the fact that the two cases to which Charter cited involved broader, pre-production claw back provisions pursuant to Rule 502(d). ECF 305 at 3 (citing *Lyall* and *S2 Automation LLC*).[4] But there is nothing in Rule 502(d) or case law that limits a court's authority to those types of agreements. Rather, Rule 502 and the legal authorities that discuss it make clear that a court has the ability to enter orders governing the scope and manner of discovery even when not premised on party agreement. As Judge Shaffer observed, this is a "well-established proposition" and consistent with Federal Rule of Civil Procedure 26(f), which states that "the parties must submit a discovery plan that states their views and proposals on, *inter alia*, 'any issues about claims of privilege or of protection as trial-preparation materials, including … whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.'" *Lyall*, 2016 WL 7176716, at *1 (quoting Fed. R. Civ. P. 26(f)(3)(D)). Based on the foregoing, the Court plainly does not require Plaintiffs' consent to enter a Rule 502(d) order.

---

[4] Plaintiffs note that Judge Shaffer did not enter the plaintiff's requested 502(d) order. ECF 305 at 3. Yet this is only because the plaintiff failed to meet and confer with the defendant, as required by Local Civil Rule 7.1(a). *Lyall*, 2016 WL 7176716, at *1-2. Here, Plaintiffs do not dispute that the parties have fully met and conferred regarding this issue. Thus, the procedural basis for Judge Shaffer's denial is inapposite.

### C.     The Plaintiffs' Reliance On *XY, LLC v. Trans Ova Genetics* is Misplaced

Plaintiffs heavily rely on a single case—Magistrate Judge Wang's decision in *XY, LLC v. Trans Ova Genetics*, 2018 WL 11000694 (D. Colo. May 14, 2018)—to argue that Rule 502(d) prohibits what Charter proposes. However, that decision is inapposite to the present facts.

In *Trans Ova Genetics*, during the deposition of a corporate designee, defendant's counsel intentionally allowed the witness to testify regarding privileged communications with counsel and acknowledged that it constituted a limited waiver. *See, e.g.*, *id.* at *3 ("Dr. Faber has testified as to when that conversation took place, and he's testified about the conversation that formed the legal basis for his company's understanding that the royalty applied, and that was the limit of the waiver that I was willing to give Dr. Faber today."). Critically, before waiving privilege, the defendant's counsel did not invoke the parties' protective order, which contained a bare-bones yet exceedingly broad provision that read: "Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work product protection is waived by disclosure connected with this litigation." *Id.* at *4. The defendant's counsel also failed to invoke Rule 502(d) more broadly, obtain a separate agreement with the plaintiff as to the scope of any waiver, or, absent agreement, an order from the court. The plaintiff subsequently moved to compel additional information from the defendant based on this intentional disclosure and waiver.

In opposing the motion, the defendant pointed to the parties' protective order and argued that its intentional disclosure and waiver could not result in broader subject-matter waiver pursuant to Rule 502(d). In response, Judge Wang observed that while Rule 502 was drafted to create "'some exceptions,' [it was not drafted] to 'supplant applicable waiver doctrine generally.'" *Id.* at *4 (quoting Fed. R. Evid. 502, Advisory Committee Note). Judge Wang also observed that the

6

defendant's interpretation of the parties' protective order in the circumstances would effectively supplant the doctrine of privilege waiver and "Rule 502 was never designed to provide *blanket immunity* to parties for subject matter waiver resulting from the selective, intentional disclosure and waiver …." *Id.* at *5 (emphasis added). Thus, Judge Wang held that if she had known the parties intended to use their protective order in this way, she would not have signed it.[5]

Here, in stark contrast, Charter is not attempting to rely—*post hoc*—on a non-waiver provision that is untethered in substance and scope. Charter is also not relying on a provision that purports, in Judge Wang's words, "to provide blanket immunity" for any and all "selective, intentional disclosure and waiver." Rather, *before* making *any* disclosure of attorney-client privileged communications or protected fact work product, Charter is requesting the entry of an order that makes explicit that the disclosure of a limited set of identified documents will not result in a broader subject-matter waiver in this or subsequent litigation. This approach is categorically distinct from the type of boiler-plate protective order which the defendant sought to invoke *post hoc* in *Trans Ova Genetics*. Moreover, this approach is entirely consistent with the plain language of Rule 502(d), which is demonstrated by other courts that have entered the type of targeted order Charter proposes here.

Further, unlike the "blanket immunity" from waiver sought by the defendant in *Trans Ova Genetics*, Charter's proposed Rule 502(d) order limits further waiver only to its *opinion* work product, which is rarely if ever discoverable under any circumstance. *See* ECF 283-1 (Proposed Order), at ¶5 ("Specifically, production of Documents and Related Information will not require

---

[5] Notwithstanding these observations, including that an "intentional, selective disclosure[] and waiver[] […] occurred" in *Trans Ova Genetics*, Magistrate Judge Wang did not find subject-matter waiver and Plaintiffs' motion to compel was denied without prejudice. 2018 WL 11000694, at *8.

the producing party to disclose all related work-product created by counsel that covers, touches on, or relates to the subject matter of the produced Documents and Related Information. This Order does not displace the common law applicable to work-product protection."); *Gates Corp. v. CRP Indus., Inc.*, 2018 WL 4697326, at *13 (D. Colo. Aug. 10, 2018) (opinion work product "rarely, if ever, subject to discovery"); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2014 WL 183303, at *5 (D. Colo. Jan. 12, 2014) ("opinion work product subject to enhanced and heightened protection"). Indeed, courts routinely hold that subject-matter waiver does not extend to a party's opinion work product. *See United States v. Graham*, 2003 WL 23198792, at *6 (D. Colo. Dec. 2, 2003) ("However, even when the subject matter waiver rule is potentially applicable to work-product, it does not apply to opinion work-product."); *see also In re Delta/Airtran Baggage Fee Antitrust Litig.*, 2012 WL 12887089, at *1 n.2 (holding that subject-matter waiver did not extend to opinion work product); *E.E.O.C. v. Roswell Radio, Inc.*, 2007 WL 2305521, at *5 (D.N.M. June 12, 2007) (citing cases). This is because Rule 502(a) must be read in conjunction with Federal Rule of Civil Procedure 26(b)(3), which provides heightened protections for opinion work product. *See, e.g.*, *In re Urethane Antitrust Litig.*, 2011 WL 322675, at *3 n.20 (D. Kan. Jan. 31, 2011). Thus, given the heightened protections afforded opinion work product, Charter's proposed Rule 502(d) order is entirely consistent with Rule 502.[6]

---

[6] *See Commentary on Protection of Privileged ESI* at 131 ("Similarly, the parties could also agree that the intentional production of privileged information does not result in a waiver. For example, one party might agree to produce certain 'privileged' documents such as legal opinions explaining the basis of its actions. Under a 502(d) agreement, the parties might agree that the production of those documents would not constitute a broader waiver of any claim to privilege over similar documents or similar communications.").

II. **CHARTER HAS NOT PROPOSED A RULE 502(D) ORDER AS A "PLOY" OR FOR TACTICAL ADVANTAGE – CHARTER IS ATTEMPTING TO FACILITATE ACCESS TO THE VERY INFORMATION PLAINTIFFS HAVE REQUESTED**

A. **The Provision Of *All* Relevant Documents Is Neither "Selective" Nor "Improper"**

Plaintiffs argue that "courts universally agree … that Rule 502(d) may *not* be used for a tactical advantage—for example, through selective disclosure of only *some* privileged information or work product on a subject." ECF 305 at 4. Plaintiffs therefore claim that Charter's Motion is improper because Charter "proposes producing about 600 privileged and work product documents responsive to Plaintiffs' spoliation-related RFPs, while withholding another roughly 200 documents responsive to the same discovery requests." *Id.* at 5. Plaintiffs add that "Charter has not divulged the criteria by which it selected the documents it would disclose and withhold." *Id.*

But Charter's disclosure would not be arbitrary. The documents that Charter would withhold under its proposal are those that constitute *opinion* work product, which are entitled to the highest level of protection. *See, e.g.*, ECF 283-1 (Proposed Order), ¶¶ 4-5. The 600-plus documents Charter proposes producing are attorney-client communications or *non*-opinion work product that contain facts relating to the preservation of documents relevant and proportional to this matter, the migration of Charter's legal hold notice and tracking system, the migration of Charter's e-mail preservation archive, and the inadvertent loss of e-mails during the migration process.[7]

---

[7] As set forth in Charter's Opposition to Plaintiffs' Motion to Compel, Charter has not waived the attorney-client privilege or work product protection as to these documents. The documents themselves were never disclosed to Plaintiffs. That Charter's counsel disclosed certain facts relating to the ESI loss and responded to Plaintiffs' questions regarding it also does not constitute waiver. Indeed, by Plaintiffs' logic, any time that litigation counsel undertakes to meet and confer

9

While Charter disagrees that Plaintiffs "need" all of these documents, as Plaintiffs could attempt to obtain the same information through their yet-to-be-noticed Rule 30(b)(6) deposition, Charter proposed the Rule 502(d) order as a means to provide Plaintiffs with the information they seek, but under a mechanism that protects Charter from a broader claim of waiver. To that end, once the 502(d) order is entered, Charter would promptly produce *all* the attorney-client privileged documents and non-opinion work product documents on its log regarding each of the categories it outlined in its Motion. Those categories are: "(i) communications related to the creation and management of the hold covering this litigation; (ii) records related to custodians and data sources preserved under that hold; (iii) records related to Charter's legal hold management migration and related 'clean up' of the legal hold; (iv) communications reflecting decisions related to the hold status of specific custodians; (v) communications related to the 'purge' of held e-mail data in December 2018; and (vi) communications (other than with outside counsel) related to Charter's identification and investigation of the e-mail loss." ECF 283 at 3-4.

Plaintiffs also claim that even if Charter were to produce all its documents for each of these six categories, certain categories of documents Plaintiffs seek would still be missing. ECF 305 at 6. That is incorrect. To the extent discoverable or relevant, each of these purportedly "missing" categories is captured by Charter's proposed production:

---

with opposing counsel regarding a discovery dispute, the information conveyed would constitute a broad and unfettered subject-matter waiver. ECF 282 at 8. Certainly, that is not the law. If it were, then a party or its counsel would never be able to disclose the loss of electronic information without the fear of subject-matter waiver. This would discourage parties and their counsel from disclosing information in the interests of narrowing disputes and finding compromise. That is precisely what Charter did here—disclose the loss and attempt to cooperatively work with opposing counsel to respond to their inquiries regarding the loss.

| Categories of Documents Plaintiffs Claim Are Excluded | Categories of Documents in Charter's Proposed Production |
|---|---|
| The legal hold Charter claims to have applied to this case, or how the hold was recorded, saved, or displayed in Charter's systems. ECF 305 at 6. | (i) communications related to the creation and management of the hold covering this litigation; (ii) records related to custodians and data sources preserved under that hold; (iii) records related to Charter's legal hold management migration and related "clean up" of legal holds. |
| Charter's legal hold policies. *Id.* | Plaintiffs are aware from the parties' meet and confer discussions that Charter did not agree to produce its legal hold policies; however, in light of their raising this issue, Charter will provide a supplemental log that identifies those materials. |
| Communications related to Charter's decision not to implement a legal hold specific to Plaintiffs' March 2016 notice of their claims. *Id.* | There are no documents responsive to this topic. |
| Communications related to Charter's legal hold migration generally, or other legal holds that were deleted during the migration. *Id.* at 7. | In addition to the categories enumerated above, Charter has agreed to also produce: "(iv) communications reflecting decisions related to the hold status of specific custodians; (v) communications related to the 'purge' of held e-mail data in December 2018; and (vi) communications (other than with outside counsel) related to Charter's identification and investigation of the e-mail loss."<br><br>Charter has not agreed to produce documents concerning other legal holds that were subject to the inadvertent deletion from the archive in December of 2018. |
| Investigation of the email loss by Winston, including interview transcripts, summaries, and memoranda. It has not even logged these documents. *Id.* at 7. | Charter is not producing the work product generated by Winston & Strawn, including its communications with Charter. The underlying Charter documents that may have been reviewed by Winston & Strawn in its effort to understand the nature and scope of its loss, however, are on Charter's privilege log and are among the more than 600 documents that |

11

| Categories of Documents Plaintiffs Claim Are Excluded | Categories of Documents in Charter's Proposed Production |
|---|---|
|  | Charter has offered to make available under a Rule 502(d) order.[8] |

Plaintiffs further assert that among the categories of documents Charter is proposing to produce, Charter is "trying to hide critical documents bearing on the document destruction," based on the email subject line or title of certain documents Charter proposes withholding. ECF 305 at 7. Plaintiffs claim that "[t]hese … documents … based on their filenames alone[] are highly relevant to Charter's contention that its spoliation was 'inadvertent' and 'minimal.'" *Id.* at 8. This is pure speculation and not a valid basis to deny the entry of a Rule 502(d) order. Charter is not *hiding* anything from Plaintiffs, as each of the documents on its log is described with adequate detail as required under Rule 26 (which Plaintiffs have not challenged). And, as already set forth above, the documents that would not be produced constitute *opinion* work product, which is not necessary to provide the factual information Plaintiffs seek. Plaintiffs have not satisfied the very high threshold for the production of opinion work product. *See supra*, at 8-9.

Plaintiffs also point to the file names of the documents on Charter's log to argue that Charter is deciding to withhold some emails in a chain while offering to produce others, and imply that this is improper. For example, Plaintiffs argue that entry 469 is part of the same chain as entries 462-468 on Charter's privilege log, so Charter's decision to withhold 469 cannot be squared with

---

[8] While Charter has not agreed to produce its outside counsel's files, to the extent documents created by Charter's outside counsel are otherwise responsive to the requests to which Charter has agreed to respond and are in Charter's possession, custody, or control, Charter has logged those documents. *See, e.g.*, Sahni Decl., ECF 305-2, Ex. 1 (entries 586 and 602) (Nov. 25, 2020). These documents are being withheld from Charter's proposed Rule 502(d) order because they are opinion work product.

its decision to produce entries 462-468. But 469 is *not* part of the same chain as entries 462-468,[9] and Charter has not offered to disclose it because it constitutes opinion work product. Similarly, entry 148 is not a part of the same email thread as entries 149 and 150, despite having similar subject lines.[10]

Regardless, the file name alone does not dictate whether it should be produced under Charter's proposed 502(d) order, and certainly does not demonstrate the sort of nefarious cherry-picking in which Plaintiffs accuse Charter of engaging. To allay any of Plaintiffs' concerns, however, Charter is willing to provide additional information to Plaintiffs regarding its privilege log, including clarification as to whether a document is being withheld as opinion work product. Thus, there is no need to burden the Court when Charter stands ready to work with Plaintiffs in good faith. Moreover, given that Plaintiffs have yet to review *any* of the more than 600 documents Charter proposes producing, there is no basis for Plaintiffs' inflammatory claim that Charter intends to selectively produce "only those documents that support Charter's self-serving spoliation narrative" (ECF 305 at 6), or that Plaintiffs are somehow precluded from reviewing documents that concern the nature of Charter's ESI loss. Plaintiffs' present obstinacy and overreach is the only impediment to the resolution of their ESI loss-inquiry and related Motion to Compel.

### B.     Plaintiffs' Concerns Can Be Addressed By An *In Camera* Review

Plaintiffs do not respond to Charter's accurate assertion that disputes regarding the withheld documents, or a subset thereof, can be and should be resolved on a document-by-

---

[9] As is evident from the information provided to Plaintiffs in Charter's privilege log, entry 469 was sent three days after entries 462-468, and does not contain all of the same recipients.

[10] As is evident from the information provided to Plaintiffs in Charter's privilege log, entry 148 (with the subject line "Re: Mingus Legal Hold") was sent *before* entries 149 and 150 (with the subject lines "Mingus Legal Hold", and was accordingly not sent in "reply" to those latter entries.

document basis through *in camera* review. Rather, Plaintiffs claim that Charter is asking the Court to "trust that its black-box selection process was in good faith." *Id*. But that is not true. Charter has provided a justifiable basis for withholding approximately 200 of the 820 documents on its privilege log. To the extent Plaintiffs have concerns regarding the 200 documents (which are adequately identified on Charter's privilege log), the most reasonable approach is for the parties to further confer and identify specific issues for the Court's resolution. *See, e.g.*, *Gates Corp. v. CRP Indus., Inc.*, 2018 WL 4697326, at *12 (D. Colo. Aug. 10, 2018) (ordering a document-by-document *in camera* review because "the request is focused and the amount of material to review appears reasonable and not intermixed with significant unrelated material") (citing *U.S. v. Zolin*, 491 U.S. 554, 572 (1989) ("In fashioning a standard for determining when *in camera* review is appropriate, we begin with the observation that *in camera* inspection … is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure.") (citation omitted))); *see also Am. Econ. Ins. Co. v. Schoolcraft*, 2007 WL 1229308, at *4 n.1 (D. Colo. Apr. 25, 2007) (discussing the utility of a more targeted *in camera* review after the parties worked out the scope of any waiver-based production and remaining issues for resolution).

Further, as Charter first explained to Plaintiffs during the parties' discussions, and again stated in its Motion, Plaintiffs would retain the right under Charter's proposed Rule 502(d) order to challenge any of Charter's privilege claims over the remaining 200 documents. Plaintiffs would also retain the right to argue that any of the 200 withheld documents should be produced out of "fairness" pursuant to Rule 502(a), based on any claimed *prior* waiver, as Plaintiffs contend in their Motion to Compel. In addition, Plaintiffs also retain the right to argue under Federal Rule of

Civil Procedure 26(b)(3) that they have a "substantial need" for any withheld work product.[11] The only argument Plaintiffs would be precluded from making is that Charter's production of documents pursuant to its proposed Rule 502(d) order constitutes a waiver of attorney-client privilege and work product protections that reaches Charter's undisclosed opinion work product.

## CONCLUSION

Based on the foregoing, Charter respectfully requests the Court grant Charter's Motion for entry of an order pursuant to Rule 502(d), which would permit Charter to produce more than 600 of the 820 documents on its privilege log—the same documents subject to Plaintiffs' Motion to Compel.

Dated: December 16, 2020

Respectfully submitted,

| | |
|---|---|
| Michael S. Elkin | *s/ Andrew H. Schapiro* |
| WINSTON & STRAWN LLP | Andrew H. Schapiro |
| 200 Park Avenue | Allison Huebert |
| New York, NY 10166 | QUINN EMANUEL URQUHART & |
| (212) 294-6700 (telephone) | SULLIVAN, LLP |
| (212) 294-4700 (facsimile) | 191 N. Wacker Drive, Suite 2700 |
| E-mail: melkin@winston.com | Chicago, IL 60606 |
| | (312) 705-7400 (telephone) |
| Jennifer A. Golinveaux | (312) 705-7401 (facsimile) |
| WINSTON & STRAWN LLP | E-mail: andrewschapiro@quinnemanuel.com |
| 101 California Street, 35th Fl. | E-mail: allisonhuebert@quinnemanuel.com |
| San Francisco, CA 94111-5840 | |
| (415) 591-1506 (telephone) | Charles K. Verhoeven |
| (415) 591-1400 (facsimile) | David Eiseman |
| E-mail: jgolinveaux@winston.com | Linda Brewer |
| | QUINN EMANUEL URQUHART & |
| Erin R. Ranahan | SULLIVAN, LLP |
| WINSTON & STRAWN LLP | 50 California Street, 22nd Floor |
| 333 S. Grand Avenue | San Francisco, CA 94111 |

---

[11] Though, as discussed in more detail above, Charter has proposed only withholding its opinion work product, which is rarely if ever discoverable under Rule 26(b)(3). *See supra*, at 8-9.

15

<div style="columns:2">

Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2020, I caused the foregoing document and supporting materials to be filed electronically with the Clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered within CM/ECF.

<div style="text-align:right">

*s/ Andrew H. Schapiro*
Andrew H. Schapiro

</div>