```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF COLORADO

 3
    Civil Action No. 19-CV-00874-RBJ-MEH
 4

 5    WARNER RECORDS, INC., et al.,

 6           Plaintiffs,

 7           vs.

 8    CHARTER COMMUNICATIONS, INC.,

 9           Defendant.

10   -----------------------------------------------------------
                           REPORTER'S TRANSCRIPT
11                          Status Conference
     -----------------------------------------------------------
12
             Proceedings before the HONORABLE R. BROOKE JACKSON,
13   Judge, United States District Court for the District of
     Colorado, commencing on the 15th day of December, 2020, via
14   video teleconference from Courtroom A902, United States
     Courthouse, Denver, Colorado.
15
                                APPEARANCES
16
     For the Plaintiffs:
17   MATTHEW J. OPPENHEIM and JEFFREY M. GOULD, Oppenheim & Zebrak
     LLP, 4530 Wisconsin Ave. N.W., 5th Floor, Washington, D.C.
18   20016

19   JONATHAN M. SPERLING, Covington & Burling LLP, 620 Eighth
     Ave., New York, NY 10018
20
     For the Defendant:
21   ANDREW H. SCHAPIRO, Quinn Emanuel Urquhart & Sullivan LLP, 191
     N. Wacker Dr., Ste. 2700, Chicago, IL 60606
22
     LINDA J. BREWER, Quinn Emanuel Urquhart & Sullivan LLP, 50
23   California St., 22nd Floor, San Francisco, CA 94111

24
         Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
25                  Denver, CO 80294, 303-335-2108

             Proceedings reported by mechanical stenography;
                 transcription produced via computer.
```

19-CV-00874-RBJ-MEH    Status Conference           12/15/2020    2

1           *        *        *        *        *

2       (The proceedings commenced at 10:00 a.m.)

3           THE COURTROOM DEPUTY:  Court is in session.

4           THE COURT:  Good morning.  19CV874, Warner Records versus Charter Communications.  We're set this morning for a status conference at the request of the parties.  So who's appearing?  Let's start with the plaintiff side.

8           MR. OPPENHEIM:  Good morning, Your Honor.  This is Matt Oppenheim.  Also on the line with me from my firm Oppenheim & Zebrak by audio is Jeff Gould, and my co-counsel is also on the line.  I'll allow him to introduce himself.

12          MR. SPERLING:  Good morning, Your Honor.  Jonathan Sperling of Covington & Burling also for the plaintiff.

14          THE COURT:  Who's on the call for the defendant? You're muted.

16          MR. SCHAPIRO:  I had it backwards.  I apologize, Your Honor.  Andrew Schapiro from the Quinn Emanuel firm, and I'll allow my colleague to introduce herself.

19          MS. BREWER:  Good morning, Your Honor.  Linda Brewer from Quinn Emanuel also representing Charter.

21          THE COURT:  All right.  What's up?

22          MR. OPPENHEIM:  Your Honor, this is Matt Oppenheim. The reason we asked for this hearing was in order to try to have a practical discussion about how plaintiffs should proceed on the plaintiffs' counterclaims and reply or

                        Sarah K. Mitchell, RPR, CRR

1  plaintiffs' new claims.  As Your Honor may know from some of
2  the briefing already, these claims are identical to the
3  existing legal claims in the case.  They include both
4  contributory and vicarious infringement claims like the
5  existing claims.  They're premised on the exact same legal
6  theory, that is, you know, Charter knowingly provided Internet
7  service to specifically identified repeat infringers for whom
8  Charter had repeatedly been put on notice, and that Charter
9  could have easily stopped that infringing behavior but chose
10 not to in order to continue to profit from those infringers.
11         The new claims involve the exact same new parties --
12 excuse me -- the exact same parties, many of the same fact
13 witnesses, likely precisely the same expert witnesses, and the
14 same types of evidence.  The plaintiffs first brought these
15 claims six months ago in June in response to Charter's
16 declaratory judgment claim.  As Your Honor no doubt recalls,
17 there's been a lot of back-and-forth motions and letters
18 already on how these new claims should proceed.
19         THE COURT:  Do you think I'm surprised given the
20 history of your motion practice?
21         MR. OPPENHEIM:  No, Your Honor.  But putting aside
22 the procedural maneuverings, plaintiffs intend to proceed on
23 these claims one way or the other.  Frankly, there are several
24 different ways that they could move forward.  But the question
25 that is ultimately before the Court is whether these claims

19-CV-00874-RBJ-MEH    Status Conference              12/15/2020    4

1   should proceed in this case or in a separate but related case
2   in this court, and the only reason not to litigate the new
3   claims together with the existing claims is if it will somehow
4   unfairly prejudice the schedule, and it won't, and we'll speak
5   about that.  The schedule is going to be extended anyway --
6           THE COURT:  Says who?
7           MR. OPPENHEIM:  Your Honor, Judge Hegarty --
8           THE COURT:  Judge Hegarty is a magistrate judge.  Who
9   says the schedule is going to be extended?
10          MR. OPPENHEIM:  Very well.
11          THE COURT:  Because I can tell you right now it will
12  not be.
13          MR. OPPENHEIM:  Your Honor, the current discovery
14  schedule is set to close in January.  The parties still have
15  multiple written discovery issues before the magistrate and
16  before the special master.  The -- at the last hearing that we
17  had before Magistrate Judge Hegarty he had indicated to us --
18  obviously it's up to Your Honor, but he had indicated to us
19  that he anticipated that the schedule would be extended.  The
20  special master has also indicated the same.  Again, obviously
21  up to you.
22          And in our meet-and-confers with opposing counsel,
23  there has been discussion about submitting a revised schedule.
24  We put aside -- proposed schedule, obviously subject to Your
25  Honor.  We put that aside for the moment because we wanted to

1  determine from Your Honor how these new claims would be
2  proceeding before we put forward a proposed new schedule.
3           THE COURT:  Okay.  Thank you, sir.
4           What's the defendant's position?
5           MR. SCHAPIRO:  Our position is that there is no good
6  cause for allowing these claims to be added.  This is styled
7  as a counterclaim, but as Your Honor will recall, originally
8  the plaintiffs described these as compulsory counterclaims.
9  Your Honor correctly, of course in our view, agreed with us
10 that they were not compulsory because we were not in our
11 counterclaim proposing to extend the time period for this
12 case.  We had made that clear to the plaintiffs, and Your
13 Honor made it clear to the plaintiffs that our say-so was
14 sufficient in that regard.  This case has been -- so
15 therefore, this is either a counterclaim which is permissive,
16 or I think it's more rationally understood as an attempt to
17 amend the pleadings belatedly.
18          Your Honor is correct this case has had a long
19 history, and I respectfully disagree with Mr. Oppenheim's
20 characterization of what we heard from Magistrate Judge
21 Hegarty.  Magistrate Judge Hegarty expressed surprise and I
22 would say perhaps some admiration that we were still trying to
23 stick to the original schedule.  Now, it may be that the
24 schedule becomes challenging at the margins, and that perhaps
25 we will be coming to the Court asking for a brief extension,

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference            12/15/2020    6

1   maybe 90 days.  But what the plaintiffs are proposing here
2   will blow that up entirely.  It would add four years.  It
3   would add thousands -- four years of a claims spirit,
4   thousands of works in suit.  I believe I heard Mr. Oppenheim
5   say it's the same parties.  It's not precisely the same
6   parties.  Only one of the plaintiffs is suing -- would be
7   suing under these new claims.
8           And there's an interesting side fact there, which is
9   that plaintiff itself was not similarly situated to the
10  plaintiffs in the current existing claims period, because in
11  the current existing claims period the plaintiff used agents,
12  various companies, a company called MarkMonitor to send out
13  the notices that are at the center of this case.  The new
14  plaintiff for this new time period sent out its own notices.
15          There would be an entirely new type of discovery,
16  round of discovery.  And on our end, as you might imagine, a
17  company over four years, the list of custodians and witnesses
18  changes and is ever changing.  And as we've noted in our
19  motion to dismiss which we filed the other day -- I don't
20  necessarily presume the Court has read it because they're not
21  all fully submitted -- we note that internally we followed a
22  different procedure for dealing with notices during that time
23  period.
24          So I could go on about the differences, but I'm
25  hoping perhaps --

                    Sarah K. Mitchell, RPR, CRR

1        THE COURT: Please don't. Yes, Mr. Schapiro, I saw
2   that you filed a motion to dismiss counterclaims that hadn't
3   even been filed yet. That's a new one. But then again, in
4   this case you folks are rather prolific when it comes to
5   filing motions against what the other side has done or what
6   you think they might do.
7        The Court is not going to permit the plaintiff to add
8   the new claims. I have no hesitancy in saying that.
9   Mr. Oppenheim's letter told the Court that I better do it or
10  else. I'll select or else. If the plaintiff wants to file a
11  new case, let them file. Folks, this case was filed on
12  March 22nd of 2019. It's an old case. You have consumed a
13  great deal of time of Magistrate Judge Hegarty, and perhaps an
14  even greater amount of time from Special Master Rodriguez.
15  And you've had plenty of time to do discovery. You have not
16  been the slightest bit shy about filing your motions. You
17  have a trial date. That date is October 18th, 2021. That
18  date was set on May 5th of 2020. And this case, unless it
19  settles, will go to trial on October 18th, 2021.
20       Now, as far as your pretrial schedule is concerned,
21  if you can reach agreement on, for example, extending
22  discovery a little bit, okay, I don't really care. If you
23  don't reach agreement, the discovery cutoff is what it is.
24  The dispositive motions cutoff is what it is, and that's the
25  way we're going to do it.

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference          12/15/2020    8

1              MR. SCHAPIRO:  Thank you, Your Honor.  We appreciate
2    that.
3              MR. OPPENHEIM:  Your Honor, to the extent that you --
4    again, sorry.  For the court reporter, it's Matt Oppenheim.
5    Obviously did not intend our letter to you to come across the
6    way it appears to have been taken by the Court, and my
7    apologies in that respect.  Our point was our clients intend
8    to proceed on the claims, and if not in this case, we'll file
9    a second case.  Not meant threatening, just matter of factly,
10   what any rights-holder whose rights have been infringed has an
11   obligation to do and they'll do.  And, Your Honor, so we'll
12   take that path and certainly didn't mean any offense.
13             THE COURT:  Fine.  What else, folks?
14             MR. SCHAPIRO:  That's all as far as we're concerned,
15   Your Honor.
16             MR. OPPENHEIM:  Thank you, Your Honor.
17             THE COURT:  How about your colleagues?  The one
18   that's on mute trying to talk, but I can just see her lips
19   moving.
20             MS. BREWER:  Did I successfully unmute myself, Your
21   Honor?
22             THE COURT:  There you go.  Tell me again your name,
23   please.
24             MS. BREWER:  Linda Brewer from Quinn Emanuel.  In
25   light of Your Honor's guidance at this status conference, I

                              Sarah K. Mitchell, RPR, CRR

1  thought we would benefit from clarification from you as to
2  whether you would wish for us to continue the briefing on the
3  motion to dismiss or hold that in abeyance in light of --
4           THE COURT:  There's nothing for you to dismiss.  I'm
5  not adding the claims.
6           MS. BREWER:  Okay.
7           THE COURT:  You can withdraw that one.
8           MS. BREWER:  Okay.
9           MR. SCHAPIRO:  Thank you, Judge.
10          THE COURT:  What a refreshing thing that would be for
11 the Court.
12          MS. BREWER:  Understood, Your Honor.
13          THE COURT:  I think Mr. Oppenheim has left us.
14          MR. SPERLING:  Your Honor, it seems that he dropped
15 accidentally.  With respect to Ms. Brewer's question --
16          THE COURT:  I don't know if it was accidental, but
17 he's gone.
18          MR. SPERLING:  He's gone.  With respect to
19 Ms. Brewer's question, I think there may just be a
20 misunderstanding, or perhaps the misunderstanding is mine.
21 The claims have been pled.  It's the motion that Charter filed
22 was not an anticipatory motion.  We filed an answer to their
23 declaratory judgment claim.  We asserted the counterclaim in
24 those papers, and so it is pled, and we certainly understand
25 Your Honor's guidance, but it's not the case that there's sort

                          Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference         12/15/2020    10

1  of nothing there.  It is pled, and their motion is directed at
2  that pleading.  And so procedurally, I don't want to get hung
3  up on niceties, but I also don't want the Court to be under a
4  misimpression, and then we end up with no ruling by the Court.
5           THE COURT:  What is there for me to rule on?
6           MR. SCHAPIRO:  Well, Your Honor, I'm not sure, but I
7  suppose the record could be cleaned up by granting an oral
8  motion to -- which I'm making now -- to strike the
9  counter-counterclaims.
10          THE COURT:  Well, if the counter-counterclaims are
11 the new claims, your motion is granted.
12          MR. SCHAPIRO:  Thank you.
13          THE COURT:  They're not going to proceed in this
14 case.  The case is the 11,027 works between March 24th, 2013,
15 and May 17th, 2016.  Now, if you folks had any sense you'd
16 settle this case, but maybe --
17          MR. SPERLING:  Your Honor, the only other thing that
18 I wanted to --
19          THE COURT:  Maybe there are reasons why you don't
20 want to settle.
21          MR. SPERLING:  Your Honor, for the plaintiffs,
22 Jonathan Sperling.  The only other issue that I wanted to
23 raise, we hear the Court's guidance loud and clear with
24 respect to the trial schedule.  The existing fact discovery
25 cutoff at the end of January -- we certainly understand that

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH     Status Conference      12/15/2020    11

1  the Court has been the recipient of a lot of paper from both
2  parties and that the case has been outstanding for some time.
3  We're the plaintiffs. We want to get to trial sooner rather
4  than later. We're not interested in delay.
5              It's also been the case that because of the volume of
6  material, and because of the time that it quite understandably
7  took the special master to get on top of this case, there are
8  a number of issues that were not resolved for many, many
9  months. Here we are on December 15th. There are going to be
10 20-odd or more than 20 depositions in this case. We, of
11 course, follow the Court's instructions, and will do so, but
12 with a January 31st fact discovery cutoff, 20 depositions to
13 take and document discovery not completed and depositions not
14 yet begun, I just -- it will be challenging for the parties to
15 get that done in the timeframe that the Court is talking
16 about.
17             THE COURT: Well, then I suggest that you talk very
18 sweetly to Mr. Schapiro and Ms. Brewer and see if they might
19 agree with you on an extension of the discovery period. But
20 let me ask you, Mr. Sperling, have you ever tried a case
21 without 20 depositions?
22             MR. SPERLING: I have indeed, Your Honor, but not one
23 of this complexity, not one of this magnitude, and I wouldn't
24 be serving my clients well if I try to take this case to trial
25 without deposing those witnesses. And I'm not taking 20

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH     Status Conference        12/15/2020    12

1  depositions, Your Honor, but between the two sides there will
2  be 20.  And certainly if defendants want to forego
3  depositions, that would be fine with us and would simplify
4  matters, but I wouldn't expect that of them.
5           THE COURT:  Well, tell us, defendant, what do you
6  want in terms of the discovery cutoff?
7           MR. SCHAPIRO:  I think Mr. Sperling is correct that
8  the January 31st date is overly ambitious, but I thought I
9  heard Your Honor to say earlier that if we can work out
10 something on our own, as long as it doesn't move the trial
11 date and the date for dispositive motions, that that's between
12 us, and I'm confident we'll be able to do it.  I can't as I'm
13 standing here say how many depositions we'll end up with.  But
14 I do agree with Mr. Sperling that January 31st will be a
15 challenge, but I also think we'll be able to find something
16 between then and the date for filing dispositive motions that
17 works for all of us.
18          THE COURT:  Yeah, well, that's good.  Look,
19 concerning your comment that things have been sitting in front
20 of Hegarty for a while.  First of all, there are three of us;
21 Gina Rodriguez, Michael Hegarty, and me.  How many lawyers
22 have there been on your respective teams churning out stuff?
23 Also, because of the pandemic and because we had to shut down
24 our court for trials, initially from March through June, and
25 then again from November through January, and tomorrow

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH   Status Conference        12/15/2020    13

1   afternoon en banc we're probably going to extend it at least

2   until the end of January, perhaps you can imagine -- I'm going

3   to guess that some of you have been law clerks -- what that

4   kind of situation has done to our dockets.

5            Most of us are working from home right at the moment.

6   I happen to be at home at the moment.  But I've never in

7   22 years now worked as hard as I'm working now to try to do

8   the best that I can to keep my head above the water, and so

9   are my colleagues.  So if we aren't able to get decisions out

10  on your motions lickety-split, it's not because we don't want

11  to.  It's because we have to fit you into a queue with

12  everybody else and do the best we can, and I know that Hegarty

13  is working his butt off.

14           MR. SPERLING:  Your Honor, I'm not sure who that was

15  addressed to, because I didn't hear any counsel from either

16  side say anything about Judge Hegarty.  I think I can

17  confidently speak for all parties in saying that we only have

18  admiration for the Court and how the Court has managed through

19  this very difficult time .  We certainly from the plaintiffs'

20  side have no complaints whatsoever about the pace at which

21  matters have been decided.  I think I made reference to the

22  amount of time that it quite understandably took Ms. Rodriguez

23  to just get on top of this case.  That's not finding any fault

24  with her either, far from it, and we're grateful that the

25  Court was able to designate a special master so that we have

                            Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference       12/15/2020    14

1   the dedicated attention that we obviously wouldn't be able to
2   get given how busy both you and Judge Hegarty are.
3           THE COURT:  Well, I'm hoping that if life is fair,
4   Regina will be renominated to the district court.  Her
5   nomination died during the period of time that everyone's
6   attention was on Judge Garland, but I am hopeful that she
7   might join us at some point.  She's very worthy.  And that
8   would help us out a great deal, because we're down
9   one district judge now on top of everything else, and have
10  been for, what, a year and a half, two years, whatever it's
11  been.
12           What's going on with the other case that went to
13  trial?  Is that up in the appellate court now?
14           MR. OPPENHEIM:  Are you asking, Your Honor, about the
15  Sony vs. Cox case?
16           THE COURT:  Yes, sir.
17           MR. OPPENHEIM:  Yes, Your Honor.  So after the
18  verdict was rendered there was significant post-trial
19  briefing, not surprisingly, and we're waiting for a final
20  verdict to be -- excuse me -- a final judgment to be entered
21  by the Court.
22           THE COURT:  And then once that happens, one side or
23  both will appeal.
24           MR. OPPENHEIM:  Undoubtably, Your Honor.
25           THE COURT:  Have you folks tried to settle this case?

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference         12/15/2020    15

1        MR. OPPENHEIM: Your Honor, on behalf of plaintiffs, we've been trying. We had hoped to settle this case when we sent the first demand letter in 2016, but have never made any progress. Obviously would love to have a discussion on that front. It takes two to tango.

6        MR. SCHAPIRO: Your Honor, Andrew Schapiro. As the other half of the tango pair, I assume, we are always open to reasonable settlement offers, and like any defendant, of course, would love to deal with cases that -- if there's a reasonable way to make that happen. But I don't think it would be worth anyone's while for both sides to get into laying out their positions here about why they believe the other side has an unrealistic vision of the case.

14       THE COURT: Oh, I don't have any doubt that both sides have an unrealistic vision. The other case Cox resulted in -- according to what I've been told -- a billion-dollar potential judgment. I mean, that's crazy money. But you're spending crazy money, and you're spending your litigation careers on one case. I would think there ought to be all kinds of reasons to get together, not only this case, not only the next Oppenheim case that he's going to file in our court, but even the Cox case and come up with some global resolution that will stop the bleeding.

24       MR. SCHAPIRO: Your Honor, we're not a defendant in Cox. Of course, Cox is a different defendant. In fact, there

Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH   Status Conference   12/15/2020   16

1  are other cases like this involving other ISPs which have
2  resulted in a far different verdict, and so, you know, there's
3  a lot of uncertainty out there, but certainly uncertainty
4  helps parties move forward as well.  In any event, we
5  certainly take your advice to heart.
6         THE COURT:  Yes.  Uncertainty sometimes fuels
7  settlements.  So sometimes do trial dates.  Anything else?
8         MR. OPPENHEIM:  Not from --
9         MR. SPERLING:  Not from plaintiffs, Your Honor.
10        MR. SCHAPIRO:  Nothing from Charter, Your Honor.
11        MS. BREWER:  We thank you for your time, Your Honor.
12        THE COURT:  So I have one last order to issue this
13 morning.  Listen carefully now.  Wear your masks, wash your
14 hands, socially distance, avoid large gatherings, stay
15 healthy, stay safe, and have a nice holiday.
16        MR. OPPENHEIM:  Thank you, Your Honor.
17        MR. SPERLING:  Thank you, Your Honor.  Same to you.
18        MS. BREWER:  Thank you, Your Honor.
19        MR. SCHAPIRO:  Thank you, Judge.
20        THE COURTROOM DEPUTY:  Court is in recess.
21    (The proceedings were concluded at 10:25 a.m.)
22
23
24
25

                    Sarah K. Mitchell, RPR, CRR

REPORTER'S CERTIFICATE

I, SARAH K. MITCHELL, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Professional Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true and correct transcript.

Dated this 17th day of December, 2020.

/s/ Sarah K. Mitchell

SARAH K. MITCHELL
Official Court Reporter
Registered Professional Reporter
Certified Realtime Reporter

Sarah K. Mitchell, RPR, CRR