IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

        Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

        Defendant.

### SPECIAL MASTER'S ORDER REGARDING CHARTER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

**Entered by Regina M. Rodriguez, Special Master, December 22, 2020.**

    Pending before me is Charter's motion to compel non-party Jill Lesser to comply with a third-party subpoena served by Charter on September 18, 2019. Pursuant to Fed. R. Civ. P. 45, Charter filed its Motion to Compel in the United States District Court for the District of Columbia, where Ms. Lesser resides. On August 11, 2020, counsel for Charter and counsel for Ms. Lesser filed a joint stipulated notice of transfer to this court. On September 23, 2020, Judge Jackson referred Charter's motion to me. ECF 249-250.

    This issue has been fully briefed and is ripe for review. For the following reasons, **Charter's motion to compel is denied.**

## I. BACKGROUND

This action arises out of the alleged secondary infringement by the Defendant of Plaintiffs' copyrighted musical compositions and sound recordings. Plaintiffs allege that thousands of their works were unlawfully distributed online by Charter's internet service subscribers to third parties using BitTorrent or other peer-to-peer file sharing programs between 2013 and 2016. Plaintiffs have represented that from 2012 to 2015, the RIAA (the Record Label Plaintiffs' trade organization) engaged MarkMonitor to monitor and detect infringement on peer-to-peer networks and to send infringement notices to ISPs, including Charter. (J. Gould letter to Special Master, July 15, 2020).

### A. Copyright Alert System ("CAS")

The Copyright Alert System ("CAS") was an agreement among the major stakeholders in the music industry (many of whom are plaintiffs here) and the five largest ISPs in the country to address online copyright infringement. Charter's Motion to Compel, ECF 245-1 ("Mot.") at 1. Charter was not a party to CAS. Ms. Lesser's Opposition to Charter's Motion to Compel, ECF 246 ("Opp.") at 3. The purpose of this experimental program was to educate consumers, deter online infringement, and direct consumers to lawful online sources of content. A separate corporate entity called the Center for Copyright Infringement, Inc. ("CCI") was created to administer and oversee CAS. The creation and administration of CCI and CAS involved dozens of individuals at more than two dozen companies from multiple industries engaged in dialogue over the course of years. *Id.* CCI engaged a vendor called MarkMonitor to detect online

copyright infringement on ISP networks that served as the basis for "alerts" sent to subscribers. Mot. at 3.

Ms. Lesser is the former Executive Director of CCI. Opp. at 3. Charter served a subpoena on Ms. Lesser seeking documents in response to twenty-one requests for production. Charter now seeks to compel Ms. Lesser's response to a subset of requests (1) "relating to the efficacy of CAS and the decision by CCI and its constituents not to include termination as a 'mitigation measure' under CAS" (Mot. at 1); (2) "relating to CCI's decision to use MarkMonitor and the independent critiques of the system" (Mot. at 3); and (3) "a narrow subset of Ms. Lesser's email correspondence from her time at the CCI related to specific topics directly relevant to the underlying litigation." Mot. at 3. Charter specifically seeks to compel Ms. Lesser to search for and produce documents responsive to Requests 3, 6, 7, 10, 13, 19, and 21.

## II. APPLICABLE LAW

Rule 45 of the Federal Rules of Civil Procedure governs the use of subpoenas. In relevant part, Rule 45 permits a party to an action to serve a nonparty with a subpoena commanding the nonparty to produce designated documents within that nonparty's possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). The nonparty on whom a subpoena is served to produce documents or tangible things may serve on the party or attorney designated in the subpoena "a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested." *Id*. at (d)(2)(B). Upon receiving the objection, the serving party may

move the court for the district where compliance is required for an order compelling production, as Charter has done here. *Id*. at (d)(2)(B)(i).

A subpoena served on a third party pursuant to Rule 45 is considered discovery within the meaning of the Federal Rules of Civil Procedure and thus must comply with the same standards that govern discovery between the parties: to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

### III.   CHARTER'S MOTION TO COMPEL

#### A. Documents Relating To The CCI's Development and Efficacy of CAS (RFPs 3, 6, 19)

Charter seeks an order compelling Ms. Lesser to produce documents relating to the development and efficacy of CAS. Charter argues that such documents are "highly relevant to the *Warner* Plaintiffs' allegations that Charter was unreasonable in the way it addressed claims of copyright infringement by its subscribers, including that it failed to terminate so-called 'repeat infringers.'" Mot. at 9. Charter specifically seeks to compel responses to the following requests:

> **RFP 3**: Any reports, analyses, studies, memoranda, white papers, presentations, or other related documents concerning the purpose, scope, and/or anticipated benefit(s) of a system or program for monitoring alleged copyright infringement on peer-to-peer file sharing technologies and/or generating or sending copyright infringement notices.
>
> **RFP 6**: All communications between the CCI and any copyright owner, ISP, the RIAA, or Plaintiffs concerning requirements of ISPs with respect to enforcement against alleged copyright infringement, including but not limited to whether ISPs must terminate alleged accursed infringer subscribers following receipt of notice of copyright information.
>
> **RFP 19**: All Documents relating to the impact, if any, on levels of infringement from the CAS, including data, reports, studies, or analyses.

Ms. Lesser objected to Charter's requests as irrelevant, overbroad, and burdensome. Opp. at 7. Ms. Lesser presents three arguments in her opposition to Charter's Motion to Compel. First, Ms. Lesser argues that this court has repeatedly rejected discovery relating to CAS. Second, Ms. Lesser argues that the CAS agreement does not impact Charter's obligations under the Copyright Act and is therefore not relevant. Finally, Ms. Lesser argues that compliance with the subpoena would be unduly burdensome.

1. *The court has not categorically denied discovery relating to CAS.*

While Judge Jackson, Judge Hegarty, and I have limited discovery relating to CAS, Ms. Lesser here overstates the breadth of those rulings. Indeed, during a December 17, 2019 hearing, Judge Hegarty ordered Plaintiffs to produce certain CAS agreements, observing that "The agreements that they entered into could be admissible for all different kind of reasons. And so I understand your relevance objection and, you know, I just think that's going to have to be reserved for Judge Jackson at trial as to admissibility." ECF 108 at 99:11-17. Ms. Lesser secondarily cites to my statements during the parties' May 15, 2020 hearing ("Let me make it clear, there is not going to be a production related to the CAS"), but Ms. Lesser does not acknowledge that the statement was made in reference to a single discovery request, for which Charter acknowledged that it was *not* seeking CAS documents. Opp. Ex. A (Tr. 108:4-9). As such, Ms. Lesser's argument that all CAS documents have been deemed categorically irrelevant is unsupported.

2. *The CAS documents sought are of limited relevance.*

5

Ms. Lesser argues that "neither CAS nor other ISP's actions have any bearing on whether Charter contributed to or profited from its subscriber's infringements. CAS was a private agreement involving compromises with other parties and it does nothing to alter Charter's legal obligation." Opp. at 8. Ms. Lesser further argues that the behavior of other ISPs is not relevant because Charter "cannot rely on industry custom or standards to excuse [itself] of [its] own legal obligations." Opp. at 8-9 (citing *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir. 2002)). However, *Dun & Bradstreet Software Services* is not necessarily instructive here, as the defendant's actions there directly contradicted the license agreement that it had entered into with the plaintiff.

Plaintiffs contend that "[b]y failing to terminate the accounts of specific recidivist infringers known to Charter, Charter obtained a direct financial benefit." Charter's Reply in Support of Motion to Compel ("Reply") at 3 (citing Complaint ¶ 4). Charter contends that documents regarding the efficacy of CAS, which did not use termination, are relevant "to directly rebut Plaintiffs' contention that termination was necessary to curb piracy." Reply at 3.

I agree that Charter is entitled to present evidence to rebut Plaintiffs' claims, however, I find that the requests here are overbroad, and that Charter has already obtained the relevant information from the Plaintiffs or from public sources.

Request 6 seeks documents "concerning the purpose, scope, and/or anticipated benefit(s) of a system or program for monitoring alleged copyright infringement on peer-to-peer file sharing technologies and/or generating or sending copyright infringement notices." However, in its motion, Charter has cited to public sources detailing the scope and anticipated benefits of the

6

system and the fact that it did not require termination.  Charter states that the CCI was formed "as part of a collaborative effort between U.S. content creators in the movie and music industries and leading Internet Service Providers ("ISPs") to develop a ground breaking CAS and educational framework intended to inform the public about and deter copyright infringement through direct communication with consumers." Mot. at 4.  Charter further notes that CAS was launched as a "tiered notice and response system aimed at reducing copyright infringement over peer-to-peer ('P2P') networks." Mot. at 4-5.  Charter further cites to public statements by Ms. Lesser that "the goal here is education, not punishment." Mot. at 5.  Thus, the information that Charter has already obtained may be used to support its argument that termination is not necessary to reduce copyright infringement.

      Charter's request for "[a]ny reports, analyses, studies, memoranda, white papers, presentations, or other related documents" is overbroad. Ultimately, Charter seeks to establish that termination was not necessary to curb infringement.  Charter can support that argument with the evidence it already has suggesting that CAS, which was specifically aimed at curbing infringement, did not require ISPs to terminate infringers.  The additional information Charter seeks is duplicative of the information presented here and is not likely to yield additional information sufficient to justify the additional burden of discovery on Ms. Lesser as a non-party. *See* Fed. R. Civ. P. (2)(c)(ii) ("the court must limit the frequency or extent of discovery…if it determines that the discovery sought is unreasonably cumulative or duplicative…").

Request 9 is similarly overbroad. Yet again, the ultimate decision not to include termination as a mitigation measure as part of CAS may be relevant to Charter's defense, but the communications underlying that decision are simply too far removed to be of relevance here.

Finally, Charter's Request 19 seeks documents relating to the impact of CAS on infringement. Charter, however, specifically states that Ms. Lesser stated in an interview that CCI would "undertake the collection and analysis of 'aggregated data to evaluate the efficacy of the program, and recommend necessary enhancements' and would 'report that data to the public.'" Mot. at 11. Charter does not, however, argue that this information was never released to the public or that it is unable to access these documents, nor does it explain why these public documents are insufficient. The additional information sought by Charter in Request 19 therefore also appears to be duplicative of information already available to Charter, and Charter has not met its burden of establishing that the probative value of the additional information outweighs the burden on Ms. Lesser of producing the information.

**Charter's request to compel a production in response to Requests 3, 6, and 19 is denied.**

### B. Documents Relating to MarkMonitor (Requests 7, 10, and 13)

Charter secondarily seeks to compel the production of documents related to MarkMonitor. Charter argues that the Plaintiffs here seek to hold Charter liable for vicarious and contributory copyright infringement predicated on Charter's subscribers' unauthorized download and distribution of Plaintiffs' works, and that proof of direct infringement is a necessary predicate to a finding of either vicarious or contributory liability. Mot. at 13. Infringement

notices sent by MarkMonitor serve as the basis for the Plaintiffs' allegations of direct infringement by Charter's subscribers. Mot. at 14. MarkMonitor was also hired to detect infringement in relation to CAS. The parties dispute, however, whether the same MarkMonitor system was used for both CAS ISPs and non-CAS ISPs like Charter. *See* Mot. at 15; Opp. at 12. While CAS was in place, the CCI hired two third party consultants (Stroz Friedberg and Harbor Labs) to conduct independent reviews of the MarkMonitor system, resulting in reports on its efficacy and reliability. Mot. at 15.

Charter represents that it has obtained these independent assessments of MarkMonitor from MarkMonitor and other third-party consultants, and so does not seek those assessments here. Mot. at 15. Instead, Charter seeks an order compelling responses to the following requests:

> **RFP 7:** Documents sufficient to show all systems used to detect, monitor, generate or send notifications concerning copyright infringement as part of the CAS, and any alternative systems considered but not utilized.
>
> **RFP 10:** All communications with Harbor Labs concerning any analyses of the systems used to detect, monitor, generate, or send notifications concerning copyright infringement as part of the CAS.
>
> **RFP 13:** All communications with Stroz Friedberg concerning any analyses of the systems used to detect, monitor, generate, or send notifications concerning copyright infringement as part of the CAS.

Charter argues that RFP 7 is relevant because "the documents could show that the CCI chose MarkMonitor because it was a less expensive alternative." Mot. at 16. Charter further argues that the documents are pertinent to "whether Charter's own internal systems for detecting and monitoring for instances of copyright infringement were comparable to either the MarkMonitor system or any alternative system." Mot. at 16.

9

Charter argues that RFPs 10 and 13 are relevant because "communications with Stroz Friedberg and Harbor Labs relating to their critique of MarkMonitor are squarely relevant to the efficacy, accuracy, and reliability of the MarkMonitor system." Mot. at 16.  Charter argues that Stroz Friedberg's recommendations to the CCI relating to MarkMonitor "were finalized only after receiving significant input from the CCI and Ms. Lesser herself, and several draft reports were exchanged," (Mot. at 16) and that "Ms. Lesser inserted comments into Harbor Labs' draft 'Evaluation of the MarkMonitor AntiPiracy System,' indicating that she likely had email communications with Harbor Labs as well." Mot. at 16.

Charter is entitled to discovery relating to the accuracy and reliability of the detection technology used to identify alleged infringement by Charter subscribers, particularly if Plaintiffs will rely upon such evidence to support the accuracy of the notices sent and the system used in this case.  However, Charter's requests to Ms. Lesser regarding MarkMonitor are overbroad, and it appears that Charter has already obtained the relevant and proportional information.  Charter here acknowledges that it has obtained independent assessments of the MarkMonitor system from Stroz Friedberg and Harbor Labs.  Furthermore, Charter's experts will be permitted to review the MarkMonitor source code, allowing them to form their own assessments of the system.

These documents provide Charter with the information that it needs to support its arguments relating to the efficacy of the MarkMonitor system.  Internal communications regarding the particular parameters of the work that MarkMonitor did for the CAS, or whether the CCI considered other potential providers, is not particularly probative of the efficacy of the

10

MarkMonitor system used to send notices to Charter subscribers. That MarkMonitor may have been cheaper than a different service does not, by itself, suggest that the MarkMonitor system was flawed or unreliable. To the extent there may be some probative value, it is outweighed by the time and expense required of a third party. Additionally, such information may be duplicative of information to be produced directly by MarkMonitor.

**Charter's request to compel a production in response to Requests 7, 10, and 13 is denied.**

C. **Emails Purportedly Already Collected By Ms. Lesser (Request 21)**

Charter lastly seeks an order compelling Ms. Lesser to produce email correspondence from 2011 through 2017 relating to (1) MarkMonitor, (2) the implementation of CAS by the ISPs that signed on to the program, (3) correspondence with the RIAA and the *Warner* Plaintiffs, and (4) the efficacy or impact of CAS. Mot. at 17.[1] Charter argues that Ms. Lesser has already gathered approximately five hundred documents relating to the CCI, and there is therefore minimal burden on her of producing them. Mot. at 18.

Ms. Lesser argues that the request is overbroad and irrelevant. She also argues that the time period at issue, the number of third parties at issue, and third-party confidentiality restrictions would impose a disproportionate burden on her. Opp. at 15.

---

[1] RFP 21 specifically seeks "All electronically stored information from email accounts/addresses used by [Ms. Lesser] between 2001 and 2017 concerning MarkMonitor or the MarkMonitor System; Audible Magic; ISPs' implementation of CAS; correspondence with the RIAA or Plaintiffs; or the efficacy or impact of the CAS, including but not limited to data and reports from ISPs or the RIAA concerning copyright infringement notices."

The documents sought by Request 21 appear to overlap in large part with the documents sought by Charter in its other requests. This request thus also seeks information that is duplicative of information that has already been produced or will be produced to Charter. Internal communications discussing, for example, the impact or efficacy of CAS, are not are not particularly probative in light of the publicly available documents and aggregated data on this issue that Charter has already identified. Additional discovery into internal email communications, particularly in light of the breadth of Request 21, would likely impose significant burden on Ms. Lesser. Because the information sought by Request 21 is duplicative of information already identified by Charter, I find that the probative value of the documents sought does not outweigh the burden on Ms. Lesser of producing those documents.

**Charter's request to compel a production in response to Request 21 is denied.**

Dated this 22nd day of December, 2020           BY THE SPECIAL MASTER:

*/s/ Regina M. Rodriguez*
Regina M. Rodriguez
Special Master