# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

## SPECIAL MASTER'S ORDER REGARDING CHARTER'S MOTION TO COMPEL RIAA'S COMPLIANCE WITH SUBPOENA *DUCES TECUM*

**Entered by Regina M. Rodriguez, Special Master, on December 22, 2020,**

    Pending before me is Charter's motion to compel the Recording Industry Association of America ("RIAA") to produce documents in response to two subpoenas duces tecum served on February 11, 2020 and April 17, 2020. Pursuant to Rule 45(d)(2)(B)(i), Charter filed its motion to compel in the District Court of the District of Columbia, where the RIAA's headquarters are located. The motion was transferred to the District of Colorado and referred to me. *See* ECF 254, 260. The motion has been fully briefed and is ripe for review.

    **For the following reasons, Charter's motion to compel is granted in part and denied in part.**

1

## I. BACKGROUND

This action arises out of the alleged secondary infringement by the Defendant of Plaintiffs' copyrighted musical compositions and sound recordings. Plaintiffs allege that thousands of their works were unlawfully distributed online by Charter's internet service subscribers to third parties using BitTorrent or other peer-to-peer file sharing programs between 2013 and 2016. Plaintiffs have represented that from 2012 to 2015, the RIAA engaged MarkMonitor to monitor and detect infringement on peer-to-peer networks and to send infringement notices to ISPs, including Charter. *See* ECF 254, Ex. 9 (J. Gould letter to Special Master, July 15, 2020).

### A. RIAA

RIAA is the 501(c)(6) non-profit U.S. trade association for the major record companies, including the record company Plaintiffs in the underlying action. Among other things, RIAA assists its members in protecting their copyrights through antipiracy and enforcement efforts. From 2012 through 2015, RIAA ran an antipiracy program to monitor infringement of its members' copyrighted music on peer-to-peer file-sharing networks, including by Charter's internet subscribers. RIAA Opposition to Charter's Motion to Compel ("Opp.") at 1. The RIAA acted on behalf of Plaintiffs to engage technology vendors like MarkMonitor and Audible Magic to monitor and detect infringement of Plaintiffs' works and send infringement notices to certain ISPs. Charter's Motion to Compel ("Mot.") at 6-7; *see also* ECF 287 at 3-4.

2

II. **APPLICABLE LAW**

Rule 45 of the Federal Rules of Civil Procedure governs the use of subpoenas. In relevant part, Rule 45 permits a party to an action to serve a nonparty with a subpoena commanding the nonparty to produce designated documents within that nonparty's possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). The nonparty on whom a subpoena is served to produce documents or tangible things may serve on the party or attorney designated in the subpoena "a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested." *Id*. at (d)(2)(B). Upon receiving the objection, the serving party may move the court for the district where compliance is required for an order compelling production, as Charter has done here. *Id*. at (d)(2)(B)(i).

A subpoena served on a third party pursuant to Rule 45 is considered discovery within the meaning of the Federal Rules of Civil Procedure and thus must comply with the same standards that govern discovery between the parties: to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses, and is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

III. **CHARTER'S MOTION TO COMPEL**

A. **Documents Relating to The Detection of Alleged Infringement on Charter's Network (Requests 10, 11, 20, 21, 22, and 47)**

Charter seeks an order compelling RIAA to produce documents relating to MarkMonitor, arguing that "the accuracy and reliability of the detection technology used to generate [the

3

infringement] notices is critical to the *Warner* litigation." Mot. at 11. Charter specifically seeks to compel responses to the following requests:

> **RFP 10**. Documents sufficient to show the features, functionality, capabilities, reliability, or operation of the MarkMonitor System.
>
> **RFP 11**. All Documents and Communications regarding the reliability of the MarkMonitor System.
>
> **RFP 20**. All technical assessments of the MarkMonitor System, or the flaws, weaknesses, or potential improvements to the MarkMonitor System, and any proposed and/or implemented remediation of any such flaws or weaknesses.
>
> **RFP 21**. All technical assessments of Audible Magic or its systems and processes, or the flaws, weaknesses, or potential improvements to Audible Magic or its systems and processes, and any proposed and/or implemented remediation of any such flaws or weaknesses.
>
> **RFP 22:** All communications between You and any third party who conducted technical assessments of the MarkMonitor System, including but not limited to Stroz Friedberg and Harbor Labs, concerning those technical assessments.
>
> **RFP 47.** All Documents or Communications regarding copyright notices sent by You or MarkMonitor being inaccurate or claiming that they are inaccurate.

RIAA has agreed to produce documents concerning "the features, functionalities, reliability, operations, technical assessments and communications regarding the MarkMonitor and Audible Magic systems that were actually used to detect infringements by Charter subscribers and send infringement notices to Charter on Plaintiffs' behalf." Opp. at 6. RIAA otherwise objected to Charter's requests on relevance and overbreadth grounds.

RIAA presents two arguments in its opposition to Charter's motion to compel. First, RIAA argues that the requests seek CAS-related discovery, which the court has already denied. Second, RIAA argues that the CAS program used a different system to detect infringement, and it is therefore not relevant here. I address each argument in turn.

4

*1. The court has not categorically denied discovery relating to CAS.*

While Judge Jackson, Judge Hegarty, and I have limited discovery relating to CAS, RIAA overstates the breadth of those rulings. As set forth in my ruling on Charter's Motion to Compel Ms. Lesser's compliance with its subpoena, during a December 17, 2019 hearing, Judge Hegarty ordered Plaintiffs to produce certain CAS agreements, observing that "The agreements that they entered into could be admissible for all different kind of reasons. And so I understand your relevance objection and, you know, I just think that's going to have to be reserved for Judge Jackson at trial as to admissibility." ECF 108 at 99:11-17. As in Ms. Lesser's opposition to Charter's motion to compel, RIAA cites to my statements during the parties' May 15, 2020 hearing ("Let me make it clear, there is not going to be a production related to the CAS."), but that statement was made in reference to a single discovery request, for which Charter acknowledged that it was *not* seeking CAS documents. Opp. Ex. A (Tr. 108:4-9). As such, RIAA's argument that all CAS documents have been deemed categorically irrelevant is unsupported.

*2. Technology systems not used to detect infringement and send notices to Charter are of limited relevance.*

RIAA argues that it (and MarkMonitor and Audible Magic) have agreed to produce discovery concerning the system actually used to detect infringement by Charter subscribers and to send notices to Charter. Charter argues that RIAA's response improperly carves out documents "relating to implementations of the MarkMonitor and Audible Magic systems that were used to send copyright notices to other ISPs or on behalf of other content owners such as,

5

for example, the notices sent to the CAS ISPs." Mot. at 12.  Charter and RIAA appear to disagree as to whether the system used to detect infringement by Charter subscribers is the same system as was used in CAS.  RIAA's response, however, obviates the need for extensive fact finding on this issue.  RIAA has agreed to produce documents concerning "the MarkMonitor and Audible Magic systems" that were used to detect infringement by Charter subscribers. Opp. at 6.  RIAA's response suggests that, to the extent the systems *were* the same, it will produce documents relating to the "features, functionalities, reliability, operations, technical assessments, and communications" relating to that system, regardless of whether those documents relate to CAS. *Id*.

Charter argues that, based on arguments made in the *Cox* case, Plaintiffs and the RIAA will likely present evidence that the MarkMonitor and Audible Magic systems were reliable based on reports on the systems made in the context of CAS. Charter argues that Plaintiffs "cannot have it both ways." Charter's Reply ("Reply") at 3.  It is not up to me to decide what evidence is admissible and what is not, but I note that Plaintiffs will be bound by the representations made in this case. To the extent the Plaintiffs have asserted that the technology systems used to detect infringement pursuant to CAS are not relevant, such statements may be considered by Judge Jackson when considering admissibility of evidence moving forward.

While I agree that documents relating to the reliability of the MarkMonitor and Audible Magic systems are relevant to the claims and defenses in this case, Charter's requests here are very broad.  When a discovery request appears to be relevant "the party objecting to the discovery has the burden to establish the information is irrelevant by demonstrating the

information does not come within the scope of relevance…Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D. 561, 567 (D. Colo. 2010).  Between Plaintiffs, MarkMonitor, RIAA, and Audible Magic, Charter already has or will have access to the information that it likely needs to make its assessment of liability.  To the extent there may be additional discoverable information, it is likely duplicative and certainly not in proportion to the needs of the case.  Both MarkMonitor and Audible Magic have agreed to produce their source code for review.  Further, Charter has already been provided the assessments of the MarkMonitor and Audible Magic systems conducted by Stroz Friedberg and Harbor Labs.  Charter has not established the relevance and proportionality of the additional information sought from RIAA.

**Charter's request to compel responses to Requests 10, 11, 20, 21, 22, and 47 is denied.**

### B. Documents Relating to the RIAA/ MarkMonitor Agreement (Request 49)

Charter also moves to compel documents relating to the 2016 agreement between RIAA and MarkMonitor. Charter specifically seeks a response to the following request:

> **RFP 49**. All documents, including spreadsheets, databases, or compilations, all communications, and all other things relating to the "Statement of Work – Anti Piracy Services," between RIAA and MarkMonitor signed by RIAA in January 2015, attached hereto as Exhibit 2, including documents, communications, and things relating to the reason(s) for initiation of the project mentioned in Exhibit 2, all reports and documentation received pursuant to Exhibit 2, and all analyses, investigations, projects, evaluations or other actions arising from or informed by Exhibit 2.

RIAA has agreed to produce non-privileged, non-work product documents in its possession relating to the RIAA/MarkMonitor agreement. Charter has also sought the requested documents from Plaintiffs, and Plaintiffs have agreed to produce some documents while they have withheld others as privileged. Given RIAA's representation and the production from Plaintiffs, it is unclear to me what Charter seeks to compel. I understand that Charter and the Plaintiffs have disputed the privileged nature of such documents and that those disputes are currently pending before Judge Hegarty. *See* ECF 266. To the extent Charter is asking me to address potential claims of privilege, I decline to do so. Judge Hegarty's ruling on Charter's motion to compel, ECF 266, will address the same documents that are at issue here. Because Judge Hegarty's ruling will determine whether the documents at issue are privileged, it would be premature to order discovery of those same documents from RIAA. To the extent RIAA is in possession of additional documents that are not in the possession of Plaintiffs, it appears that they have agreed to produce those documents. Any documents withheld on the basis of privilege must be included on a privilege log. To the extent that Charter then disagrees with any of RIAA's claims of privilege, those disputes are properly brought before Judge Hegarty.

**Charter's motion to compel a response to Request 49 is denied.**

C. **Documents Relating to Plaintiffs' Ownership of Alleged Infringing Works (Requests 45, 46, and 48)**

Charter seeks an order compelling RIAA to produce documents relating to Plaintiffs' ownership of the works in suit. Charter specifically seeks an order compelling responses to the following requests:

8

**RFP 45**. Documents sufficient to identify the steps You took in investigating or verifying Plaintiffs' ownership of the works for which You sent notices of alleged copyright infringement on behalf of Plaintiffs.

**RFP 46**. Documents sufficient to identify any steps Plaintiffs have taken with respect to updating with You their claimed ownership status as to works for which You sent notices of alleged infringement to Charter or others on their behalf.

**RFP 48**. With respect to any Copyright Works for which You sent notices of alleged infringement to Charter, all Communications from Plaintiffs to You from 2012 to the present in which Plaintiffs indicated that they do not actually own such works.

Charter first argues that the documents requested are relevant to its counterclaims. On November 5, 2020, Judge Jackson issued an order granting Plaintiffs' motion to dismiss Charter's counterclaims three and four. ECF 284. Because Charter's counterclaims have been dismissed, I need not address these arguments.

Charter argues, however, that the documents requested are relevant not only to its counterclaims, but also to its defense of Plaintiffs' claims, generally, because Plaintiffs will bear the burden of establishing that they own the works in suit. Mot. at 16. RIAA makes two main arguments in opposition: First, RIAA argues that the documents sought will "shed no light on whether Plaintiffs own or control the copyrighted works at issue." Opp. at 12. Second, RIAA argues that the documents are more appropriately sought from the Plaintiffs. I find RIAA's arguments to be unpersuasive, and I find that Charter is entitled to documents responsive to Requests 45, 46, and 48.

First, I find that documents relating to Plaintiffs' ownership of the works in suit are relevant to Charter's defense. The infringement notices sent by RIAA serve as the basis for the Plaintiffs' infringement allegations. Documents relating to these notices, including documents

9

providing information regarding the reliability and accuracy of these notices, are thus indisputably relevant.

I also find that Charter's requests are narrowly tailored to the relevant information. With Requests 45 and 46, Charter seeks only documents "sufficient to identify" steps taken by RIAA to verify Plaintiffs' ownership of the works for which RIAA sent notices and steps taken to update RIAA as to the ownership status of those works. If such steps were not taken, RIAA's response will be straightforward. If such steps were taken, RIAA need only produce documents sufficient to show how and when ownership was verified.

While Request 48 seeks "all communications," that request is also narrowly tailored to just those communications from Plaintiffs in which Plaintiffs have indicated that they do not own one of the copyrighted works. The universe of documents sought is therefore limited.

I am unpersuaded by RIAA's argument that the documents should be sought from Plaintiffs. First, RIAA acted on behalf of Plaintiffs in distributing the infringement notices, and it is therefore appropriate for Charter to seek this information from RIAA. Opp. at 3; *see also* ECF 287 at 3-4. Furthermore, RIAA has not identified a sufficient burden associated with responding to the requests.

**Charter's motion to compel responses to Requests 45, 46, and 48 is granted.**

### D. Reports Relating to the MarkMonitor Notices Sent to and Terminations of Subscribers by Other ISPs (Requests 9, 30, 31, and 32)

Charter seeks an order compelling RIAA to produce "data and information relating to notices sent by MarkMonitor to ISPs other than Charter, and whether other ISPs terminated any of their subscribers who were the subject of multiple infringement notices." Mot. at 18. Charter specifically seeks an order compelling responses to the following requests:

> **RFP 9**. All reports and documentation provided to You by MarkMonitor as required by any of Your agreements with MarkMonitor regarding copyright infringement.
>
> **RFP 30**. Documents sufficient to demonstrate the number of internet subscribers terminated by ISPs who were signatories of the CAS following receipt of notices of alleged copyright infringement from You.
>
> **RFP 31**. All Documents and Communications regarding termination of Internet service in response to copyright notices,
>
> **RFP 32**. All Documents and Communications regarding the efficacy of CAS or any other graduated response program for addressing copyright infringement.

RIAA argues that these requests focus on CAS and, as such, are not relevant. RIAA argues that "Requests 30 and 32 explicitly seek documents relating to CAS, while Requests 9 and 31 necessarily encompass CAS." Opp. at 14 n.5. Requests 30, 31, and 32 all relate to CAS and may be analyzed together. Request 9, however, requires independent analysis.

*1. Requests 30, 31, and 32 are overbroad*

RIAA argues that "neither CAS nor other ISPs' actions have any bearing on whether Charter contributed to or profited from its subscribers' infringements." Opp. at 15. Citing to *Dun & Bradstreet Software Services, Inc., v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir. 2002), RIAA argues that Charter cannot rely on industry custom or standards to excuse itself

11

from its own legal obligations.  However, *Dun & Bradstreet Software Services* is not necessarily instructive here, as the defendant's actions there directly contradicted the license agreement that it had entered into with the plaintiff.

Charter argues that that it seeks documents regarding CAS "and the efficacy of anti-piracy systems that did not use termination, to directly rebut Plaintiffs' contention that termination was necessary to curb piracy." Reply at 4.  Charter further argues that "[e]vidence that other ISPs failed to terminate subscribers with the knowledge and acquiescence—indeed, the encouragement—of the RIAA and its *Warner* Plaintiff members is surely relevant to the reasonableness issue." Mot. at 20.

As set forth in my order regarding Charter's motion to compel Ms. Lesser, I agree that Charter is entitled to present evidence to rebut Plaintiffs' claims regarding termination. However, Charter's Requests 30-32 here are overbroad, and Charter already has the relevant information that it seeks.  In its motion, Charter specifically cites to statements by Jill Lesser that the goal of the CAS was "education, not punishment," and that repeat infringers were not terminated under CAS. Mot. at 21.

**Charter's request for an order compelling response to Requests 30, 31, and 32 is denied.**

  2. *Request 9 seeks relevant information*

Charter moves to compel the RIAA to produce "reports and documentation provided to [the RIAA] by MarkMonitor as required by any of [the RIAA's] agreements with MarkMonitor regarding copyright infringement." Mot. 19.  This request is granted in part. Charter argues that

MarkMonitor was contractually obligated to provide updates on infringement notices to the RIAA on a weekly basis, and that the Statements of Work that called for this reporting were not limited to CAS. Charter thus argues that MarkMonitor's regular reports "*should* corroborate the alleged infringement detailed in the 'evidence packages.'" Mot. at 19. To the extent that these weekly reports contain information relating to notices sent to Charter subscribers, these reports are relevant and therefore discoverable.

While I find that Charter has established the relevance of the identified weekly reports, the remainder of the request is overbroad. Charter has not established the relevance of "all reports and documentation" from *any* RIAA agreement with MarkMonitor. To the extent that Charter needs information to rebut Plaintiffs' arguments regarding the necessity of termination, Charter has such relevant information.

**Charter's request for an order compelling a response to Request 9 is granted in part. RIAA is ordered to produce weekly reports, to the extent they exist, that include information about the infringement notices sent to Charter or its subscribers during the discovery period.**

> E. **Documents Regarding RIAA Attempts to Curb Piracy by Working Directly with P2P Technology Vendors (Requests 50 and 51).**

Charter seeks an order compelling RIAA to produce documents related to its efforts to reduce copyright infringement by working with P2P technology vendors. Charter specifically seeks an order compelling responses to the following requests:

13

**RFP 50**. All communications between You and BitTorrent, Inc. as well as associated external and internal communications**,** documents and things; further including communications with Matthew Mason, Bram Cohen, or any other BitTorrent employee or former employee. For avoidance of doubt, this includes Your July 30, 2015 letter to BitTorrent, Inc. attached as Exhibit 3, any preceding or responsive or follow-on communications with BitTorrent, Inc., any internal documents or communications concerning Exhibit 3, such as communications, documents, or things relating to the reasons Exhibit 3 was sent, the basis for the allegations contained in Exhibit 3, any communications with Your members regarding Exhibit 3, any analyses, investigations, projects, evaluations, or other actions related to Exhibit 3.

**RFP 51**. All communications between You and the developers of BitTorrent, Gnutella, Ares, or eDonkey protocols, networks, or clients related to efforts to curb copyright infringement on peer-to-peer networks utilizing those protocols, as well as any documents related to those communications.

In response to these requests, RIAA agreed to produce communications with BitTorrent, Inc. concerning the referenced July 30, 2015 letter. "RIAA otherwise objected on vagueness, breadth, and relevance grounds." Opp. at 18. Charter argues that the documents are relevant "so Charter can fully mount its defenses related to mitigation and damages." Mot. at 23. As has been stated in my prior rulings, failure to mitigate is not a proper defense in the face of a request for statutory damages. *See Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1372 (D. Kan. 2018) ("[A] plaintiff's failure to mitigate damages is not relevant to a statutory damages award calculation."). Charter's arguments related to mitigation are therefore unpersuasive here.

Charter also argues that the documents are relevant "so Charter can test Plaintiffs' trial theme that Charter held ultimate responsibility for stopping copyright infringement." Mot. at 23. Charter argues "If Plaintiffs establish liability, there is still a question regarding whether and how much Plaintiffs were actually harmed, and whether terminating infringing subscribers on

14

Charter's network could have actually prevented that harm. These documents are therefore relevant to both actual and statutory damages." Reply at 6. I have a hard time, however, discerning how Charter's cited case law supports its arguments here. The court's analysis in *Grady v. Swisher*, No. 11-CV-02880-WYD-KLM, 2014 WL 3562794 (D. Colo. July 18, 2014) appears to be focused on the conduct of the defendant in that action, and it is not clear how this case supports Charter's request for discovery from the third party P2P technology vendors. Similarly, Charter's citation to *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020) relates to mitigation, which is not relevant to Plaintiffs' request for statutory damages. I therefore fail to see the relevance of Charter's requests.

**Charter's request for an order compelling responses to Requests 50 and 51 is denied.**

### F. RIAA Document Retention Policies (Request 44)

Charter seeks an order compelling the production of documents sufficient to show RIAA's document retention policies. RIAA argues that Charter is not entitled to its document retention policies absent a showing of potential spoliation. I disagree. Charter here has established the probative value of the requested documents, and RIAA has not offered evidence that the requested documents would be overly burdensome to produce. Judge Hegarty has granted motions to compel document retention policies that may have been applicable to documents underlying the suit. *See Tara Woods Ltd. P'ship*, 265 F.R.D. at 569 ("[T]o the extent that document retention schedule(s) or policy(ies) exist for the particular unit, department or

business area that was responsible for the administration of the loans at issue in this case, the Court will grant in part the motion to compel[.]") And courts considering similar requests have explained that "document retention policies may help [the parties] determine the universe of responsive documents and evaluate any gaps in document production." *Sharma v. BMW of N. Am. LLC*, No. 13CV02274MMCKAW, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016).

Determining the universe of available relevant documents is important here, where multiple entities were involved in gathering the underlying evidence of the alleged wrongdoing. Given the interplay among Plaintiffs and third parties like MarkMonitor, Audible Magic, and RIAA, identifying what entity possesses relevant documents, or whether certain relevant documents even exist, has been difficult. For example, many of Charter's requests for documents to MarkMonitor did not lead to the discovery of any documents because MarkMonitor claimed that it did not possess documents related to, for example, its own system and marketing materials. *See* Charter's Motion to Compel MarkMonitor Compliance with Subpoena Duces Tecum; MarkMonitor's Opposition to Charter's Motion to Compel. Plaintiffs themselves have acknowledged that, while they were aware of the work being done by RIAA and MarkMonitor, the notices were "generated by MarkMonitor" and "went through an RIAA mailbox." Sept. 9, 2020 Hr. Tr. 108:5-14. Thus, while Charter has not suggested potential spoliation of relevant documents, it has established a need to understand what documents were retained by RIAA to accurately understand the universe of documents available in this case. **Charter's request for an order compelling a response to Request 44 is granted.**

G. **Document Production and Privilege Log Deadline**

Charter seeks an order requiring RIAA to produce documents and a privilege log by a date certain. It is unclear whether documents have been produced since briefing on this issue was completed. To the extent RIAA has not already produced documents, and to the extent required by this order, **RIAA is hereby ordered to produce documents and serve a completed privilege log no later than January 8, 2021.**

IV. CONCLUSION

For these reasons, Charter's motion to compel is granted in part and denied in part.

Dated this 22nd day of December, 2020

BY THE SPECIAL MASTER:

*/s/ Regina M. Rodriguez*
Regina M. Rodriguez
Special Master