**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No. 1:19-cv-00874-RBJ-MEH |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S PARTIAL OBJECTION TO SPECIAL MASTER'S DECEMBER 21, 2020 RULING REGARDING PRIVILEGE LOG ITEM 28**

Defendant Charter Communications, Inc. ("Charter") respectfully objects to the portion of the Special Master's December 21, 2020 Order requiring Charter to produce Item 28 of Charter's privilege log—which consists of an internal presentation by which Charter attorneys communicated privileged information to Charter personnel and an associated transmittal email. Because Item 28 contained the legal advice, opinions, and direction of Charter's in-house counsel regarding Charter's rights and obligations under the DMCA, was appropriately labeled "attorney-client privilege," and was transmitted to only that subset of employees for whom the information was pertinent, the presentation falls squarely within the protection of the attorney-client privilege.

The Special Master ruled that Item 28 should be produced because it addressed unprotected "business," versus legal, advice. Charter requests that the Court reverse the Special Master's Order that Charter produce Item 28 to Plaintiffs, and find the relevant documents protected by the attorney-client privilege. In the alternative, Charter requests the Court permit Charter to redact the

portion of the materials containing the legal opinions of its in-house counsel relating to Charter's rights and obligations under the DMCA.

## PROCEDURAL BACKGROUND

On July 13, 2020, Charter provided Plaintiffs with a privilege log describing items withheld from Charter's ongoing production of documents on the basis of privilege. (Ex. A). At issue in this motion are two documents logged as Item 28, which Charter describes in part as a "[p]artially redacted email transmitting [an] internal presentation attachment with notes reflecting legal advice from [in-house attorneys] Kelly Starkweather and Kirill Abramov regarding [Charter's] copyright program." (*Id*. at 5; Dkt. 252 at 3). The subject of the email was "SRT DMCA Legal Questions and Answers," and the first page of the internal presentation cautioned that it was "Subject to Attorney-Client Privilege." The presentation was for Charter's Internet Security and Corporate Security Resolution teams. From the initial log to present, Charter has maintained that Item 28 is protected from disclosure by the attorney-client privilege.

In July 2020, both parties raised objections to the Special Master regarding the privilege logs they had respectively received. (Exs. B, C, D). As to Charter's Item 28, Plaintiffs challenged the assertion of privilege over both the email and attachment, arguing that the documents were distributed "broadly throughout Charter" and "appear[ed] to be operational in nature." (Ex. C at 1-2). Plaintiffs also alleged that Charter did not provide enough information to allow for a "fulsome discussion" of the email and internal presentation. (*Id*. at 3; Dkt. 230 at 29).

The Special Master addressed the parties' privilege log disputes in an order issued on August 12, 2020. (Dkt. 230). In doing so, she found no basis for Plaintiffs' objection to the description contained in Charter's log, instead explaining that Item 28 had been "sufficiently

detailed." (*Id*. at 30). However, the Special Master determined that more information regarding the recipients of the communication was needed, and asked Charter to supply this information, along with documents related to Item 28 for *in camera* review. (*Id*.).

Charter did so on September 1, 2020. (Exs. E, F). In a letter brief, Charter confirmed that every individual who appeared on the email corresponding to Item 28 was a Charter employee at the time they received the email, and provided the Special Master with relevant employment titles. (Ex. F). Further, Charter provided the declaration of employee Dan Vasey confirming that two targeted internal distribution-list email address groups to which the email was sent included ***only*** internal Charter personnel and did not include third parties. (Ex. G). The distribution lists were used by the Internet Security and Corporate Security Resolution teams, which are both internal teams comprised exclusively of Charter staff. (Exs. F, G).

On October 2, 2020, the Special Master rejected Charter's claim of privilege, finding that the primary purpose of the presentation was to "provide ***direction*** to members of Charter's security teams regarding Charter's copyright program," which—even though this plainly contained direction from in-house counsel regarding legal matters—the Special Master distinguished from providing "specific legal advice." (Dkt. 252 at 3-4 (emphasis in original)). The Special Master based her determination in part on her finding that the recipients "were not instructed that the communication was protected by the attorney-client privilege" (*id*. at 4), omitting any reference to the fact that the very first page of the presentation at issue—a presentation that contained attorney

notes—was explicitly labeled "Subject to Attorney-Client Privilege."[1]  The Order was stayed pending appeal to Magistrate Judge Hegarty.  (*Id*. at 1).

Following the Special Master's October Order, counsel for Charter discovered that the version of the presentation document which had been provided to the Special Master for *in camera* review had inadvertently omitted the speaker's notes from Charter's in-house counsel that are included in the native version.  (Ex. H).  Charter requested permission to present the native version to the Special Master for additional review, including counsel's accompanying notes which provided legal answers to questions in the presentation regarding the DMCA.  (*Id*.).  The Special Master allowed Charter to submit the document *in camera* for additional review.  (Ex. I).

At a hearing on December 21, 2020, which was convened to address other matters, the Special Master ordered that the presentation and cover email be produced.  Charter now objects.  (*See* Dkt. 143 ¶ 5 (allowing objections five business days from the date on which the Special Master's order is served)).

## LEGAL STANDARD

Under the Order Appointing Special Master, "[a]ny order, report, or recommendation of the Master on nondispositive motions (unless it involves a finding of fact or conclusion of law) will be deemed a ruling on a procedural matter," and reviewed for abuse of discretion.  (*See* Dkt. 143 at 4).  The Special Master abuses her discretion when she "fails to articulate a reason for h[er] decision and no such reason is readily apparent from the record or articulates a reason which has no basis in fact or the reason so articulated is contrary to law." *Lee v. State Farm Mut. Auto. Ins.*

---

[1] Items 19-25, which had also been challenged by Plaintiffs and relate to the presentation, were found to be privileged because they were "communications directly with Charters in-house counsel seeking legal advice for and legal review of the presentation itself." (Dkt. 252 at 5).

*Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008). Given the role of the Special Master, "the trial court's review for abuse of discretion may be more searching than the review that an appellate court makes of a trial court." Fed. R. Civ. P. 53, advisory committee notes to 2003 amendment.

In cases arising under the Court's federal question jurisdiction, such as this one, federal common law applies to issues of attorney-client privilege. *Austin v. City & Cty. of Denver ex rel. Bd. of Water Comm'rs*, 2006 WL 1409543, at *4 n.2 (D. Colo. May 19, 2006); *see also* Fed. R. Evid. 501. The attorney-client privilege is the "the oldest of the privileges for confidential communications known to the common law," and encourages "full and frank communication between attorneys and their clients … thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Legal advice or opinion from an attorney to his client, individual or corporate, has consistently been held by the federal courts to be within the protection of the attorney-client privilege." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (quoting *United States v. Amerada Hess Corp.,* 619 F.2d 980, 986 (3d Cir. 1980)).

## ARGUMENT

### I. ITEM 28 SHOULD BE DEEMED PRIVILEGED

The Special Master acted "contrary to law" when determining documents related to Item 28 were not subject to the protections of attorney-client privilege. Among other things, the Special Master's Order failed to acknowledge the legal nature of notes written by Charter's in-house counsel, and erroneously concluded that "recipients of the email and attachment at issue … were not instructed that the communication was protected by the attorney-client privilege," despite the fact that the very first page of the presentation is marked "CONFIDENTIAL," "Internal Only,"

and "Subject to Attorney-Client Privilege." (Dkt. 252 at 4). These errors, and others detailed below, warrant reversal.

### A.     The Attorney-Client Privilege Applies To Item 28

The attorney-client privilege protects from discovery communications between a client and an attorney, including those by an in-house counsel, that were "made to obtain or deliver legal advice and were treated as confidential." *Lang v. Intrado, Inc.*, 2007 WL 4570558, at *2 (D. Colo. Dec. 26, 2007) (J. Hegarty). The two documents related to Item 28 meet these requirements.

*First*, the documents were made for the purpose of delivering legal assistance from attorney to client. Mr. Abramov and Ms. Starkweather were both in-house counsel for Charter at the time the documents were created, and their opinions on legal issues were contained in the presentation's notes. A review of the substance of the presentation and associated attorney notes demonstrate that these documents plainly were made for the purpose of ***delivering legal advice*** to Charter. *See, e.g.*, *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995) (draft memo originating from legal department and proposing "guidelines for implementation of involuntary terminations" was privileged legal opinion, rather than business advice); *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1174-76 (D. Nev. 2005) (email between employee and in-house counsel regarding termination of internet service for particular customers was found to have "the primary purpose of … discern[ing] the legal ramifications of a potential course of action" and was "unquestionably protected by the attorney-client privilege").

*Second*, and consistent with this purpose, the documents were intended to be kept confidential. The presentation itself was specifically marked "CONFIDENTIAL," "Internal Only," and "Subject to Attorney-Client Privilege," alerting the employees to whom it was

distributed of its confidential nature. Further, the recipients of the email and presentation were limited to the subset of Charter's employees to whom the advice was directed, which did not include third-parties. (Ex. F, G). More specifically, the "DL Corp Internet Security" and the "DL Corp SRT" distribution lists were used by the Internet Security and Corporate Security Resolution teams which are two internal teams at Charter charged with network security operations and are comprised exclusively of Charter staff.

Accordingly, Charter has shown that the communications relevant to Item 28 were "made to obtain or deliver legal advice and were treated as confidential." *Lang*, 2007 WL 4570558, at *2. The privilege applies.

### B. The Record Evidence Supports A Finding That Item 28 Is Privileged

The Special Master's reasoning that Item 28 is not subject to privilege contravenes the record evidence and is contrary to law. The Order primarily rests on a finding that the documents disseminate business, as opposed to legal, advice. (*See* Dkt. 252 at 3). But that is not correct. Of course, when the "client is a corporation, any advice sought by its representatives will obviously be, on some level, for the purposes of determining how that corporation should conduct its business." *Premiere Digital Access, Inc.*, 360 F. Supp. 2d at 1174.

Here, the Special Master's apparent rationale for her conclusion that Item 28 primarily offered business, versus legal, advice was that a non-lawyer sent the email, and that a non-lawyer may have assisted in preparation of the attached presentation. (Dkt. 252 at 4-5). But transmittal of materials by non-lawyers on its own does not negate the privilege, and the fact that a non-lawyer transmitted the presentation does not change the fact that the purpose of the communication was to provide legal advice and guidance from Charter's counsel to Charter personnel who needed it

to address complicated copyright enforcement issues with Charter customers. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) ("[D]ocuments subject to the privilege may be transmitted between non-attorneys … so that the corporation may be properly informed of legal advice and act appropriately." (internal quotations and citation omitted)).

Further, the Special Master's finding that "the email and attached presentation appear to provide *direction* to" Charter employees is not reason to conclude they do not "provide specific legal advice." (Dkt. 252 at 4). One of the two cases cited by the Special Master in her analysis of Item 28 confirms that such legal direction is contemplated by the privilege. *RCHFU, LLC v. Marriott Vacations Worldwide Corp*., 2018 WL 3055774, at *2 (D. Colo. May 23, 2018) ("The attorney-client privilege extends only to confidential matters communicated between the attorney and his or her client in the course of receiving … ***direction with respect to the client's rights or obligations.***" (emphasis added)). Indeed, by its nature, legal advice is meant to provide direction—here, direction regarding Charter's obligations under the DMCA and how these might be implicated by employees acting within the scope of their employment. The Special Master's formulation improperly elevates form over substance, failing to acknowledge that communications meant to "deliver legal advice" may be privileged, *see Lang*, 2007 WL 4570558, at *2, and failing to articulate why legal advice cannot come in the form of a directive. *See, e.g.*, *Motley*, 71 F.3d at 1550 (finding privileged a document from the legal department that "proposed guidelines for implementation of involuntary terminations").

Finally, the Special Master's assessment that Charter cannot prove the communication was confidential because of the nature of its distribution relies on several conclusions that do not comport with the facts or the law. ***First***, the Special Master's finding that "[t]he recipients were

not instructed that the communication was protected by the attorney-client privilege," (Dkt. 252 at 4), overlooks both that the subject of the email explained it was related to "DMCA Legal Questions and Answers," and the fact that the presentation clearly stated "Subject to Attorney-Client Privilege" on its opening page.

*Second*, the Special Master points out that the communication went to 26 Charter employees and two targeted distribution email groups. (Dt. 252 at 4). But determining whether a document is subject to the attorney-client privilege is not a line-drawing exercise turning on the number of employees to which it is distributed. *See, e.g.*, *SmithKline Beecham Corp.*, 232 F.R.D. at 476 (pointing out that the "control group test, which limited the number of employees to whom documents could be disclosed and yet remain privileged," has been rejected). There is no artificial limit on how many employees may be subject to confidential legal advice and direction, and there is nothing that indicates those Charter employees that received the communication went beyond those that needed to know the legal advice and direction to perform their jobs.

*Third*, the Special Master's reliance on the fact that no "attorneys were included on the cc line of the email" is equally misplaced, given that "[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." *Id*. at 477; (Dkt. 252 at 4). The notes at issue were authored by attorneys, and the presentation was conducted by the same attorneys. The identity of the sender of the email transmittal does not negate the fact that the materials at issue were presented by attorneys and delivered attorney advice.

In sum, the presentation included the legal opinions of Charter's in-house counsel regarding Charter's rights and obligations under the DMCA and was communicated to a subset of employees for whom the information was pertinent, and no one else. This brings the documents

within the protection of the attorney-client privilege. *See, e.g.*, *Motley*, 71 F.3d at 1550; *Premiere Digital*, 360 F. Supp. 2d at 1174-76. The Special Master's Order finding otherwise is contrary to law and constitutes an abuse of discretion.

## II. IN THE ALTERNATIVE, THE COURT SHOULD PERMIT CHARTER TO REDACT THE PORTION OF THE MATERIALS THAT THE COURT DETERMINES TO BE PRIVILEGED

For the reasons explained above, if the Court finds that the presentation should be produced in part, Charter requests that it be permitted to redact the portion of the materials clearly containing advice of legal counsel, including in-house counsel's notes that accompany the presentation. *See, e.g.*, *Bonanno v. Quizno's Franchise Co., LLC*, 2008 WL 1801173, at *3-6 (D. Colo. Apr. 18, 2008) (determining that "a portion of some of the documents are protected by the attorney-client privilege" and ordering redaction); *Kirsch v. Brightstar Corp.*, 68 F. Supp. 3d 846, 853 (N.D. Ill. 2014) (permitting redaction under attorney-client privilege as to documents containing both privileged and non-privileged materials).

Upon the Court's request, Charter will submit the two documents relevant to Item 28 for *in camera* review.

## CONCLUSION

For the reasons stated above, Charter requests the Court sustain its objection and reverse the portion of the December 21, 2020 Order by the Special Master requiring the production of the aforementioned documents.

Dated: December 29, 2020

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
Email: jgolinveaux@winston.com

Michael S. Elkin

Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
Email: melkin@winston.com

Email: sspitzer@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
Email: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
Email: cjoyce@fwlaw.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*

Andrew H. Schapiro
Nathan A. Hamstra
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
Email: andrewschapiro@quinnemanuel.com
Email: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

*Counsel for Defendant
Charter Communications, Inc.*

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2020, I caused a true and correct copy of the foregoing and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro