# Exhibit D

## Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)

| No. | Title/Description | Argument |
|---|---|---|
| 76[1] | Hash Report_02292016.xlsx<br><br>Privileged report prepared at the request of counsel in anticipation of litigation, containing analysis of infringement evidence collected in anticipation of litigation.[2] | The fundamental importance of Plaintiffs' investigative efforts leading up to their suit against Charter cannot be overstated. As the Special Master recognized, without adequate proof of direct infringement, Plaintiffs' immense secondary liability claims against Charter fall. *See* July 2 Hr'g Tr. at 155:25-156:6.[3]<br><br>As background, from about 2009 to 2015, Plaintiffs ran a notice program under the management of their trade organization, the RIAA. Plaintiffs have contended that the notice program was not run in anticipation of litigation. Instead, they characterize it as a combination of threats, education, and information-gathering. About a year after the notice program ended, in late 2015 or very early 2016, Plaintiffs decided to assert massive secondary infringement claims against some of the same ISPs to which they sent notices. A lawsuit required hard proof of direct infringement and Plaintiffs looked to their notice program for that proof.<br><br>However, a problem with Plaintiffs' notice program was that their vendor, MarkMonitor, did not download a single file (or even a piece of a file) from among the millions of files allegedly shared by the millions of ISP subscribers to whom Plaintiffs sent notices. Apparently recognizing this problem, Plaintiffs hired MarkMonitor to essentially re-do the investigations that had been conducted in the preceding years. That undertaking is outlined in a January 29, 2016 consulting agreement produced by Plaintiffs on June 25, and entered into between the RIAA and MarkMonitor "in anticipation of litigation." *See* Ex. 1 (PL_CH_0083049) (the "2016 RIAA/MM Agreement"). |

---

[1] Charter raised other issues with Plaintiffs' claim to privilege to other documents on Plaintiffs' privilege log, about which the parties are continuing to meet and confer. As the parties appear to be making progress, and in an effort to avoid unnecessary motion practice, Charter is still in the process of working through these issues with Plaintiffs, particularly in light of the fact that subsequent to these conferrals, Plaintiffs have agreed to produce many documents previously withheld for privilege, either in whole or with partial redactions. Charter will raise any remaining issues that cannot be resolved as appropriate.

[2] A copy of Plaintiffs' privilege log is attached hereto as Exhibit 1.

[3] Charter includes this issue on this chart pursuant to the Special Master's direction that the charts address all search term and privilege log issues. Charter apologizes for the length of the entry, but considered the background necessary in light of the fundamental importance of this issue.

**Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)**

| | | |
|---|---|---|
| | | In the 2016 RIAA/MM Agreement, the RIAA provided MarkMonitor (1) "with a list of up to 7200 hashes." A "hash" is an identifier for a file or collection of files that is shared on a peer-to-peer network. MarkMonitor was supposed "to search for and attempt to download the files associated with those [7200] hashes." This process was to continue for one month, and "[h]ashes that could not be obtained by the end of the one month period [would] be considered unavailable." For the files successfully located, (2) "those files [were to] be processed against Audible Magic fingerprinting for identification and verification," (3) "MarkMonitor will record packet capture logs to track when and where the files associated with these hashes are downloaded," and (4) "MarkMonitor will deliver a copy of the files downloaded and associated logs/back-up material to RIAA." The 2016 RIAA/MM Agreement also states that (5) "MarkMonitor will provide a report in Excel format to show a list of all successfully downloaded files associated with those hashes with the individual audio tracks extracted to show the full volume of audio tracks."[4]<br><br>Plaintiffs have produced items (3) and (4) (the PCAP files and the downloaded files) listed above. At issue is Plaintiffs' refusal to produce the remaining three categories of information generated by MarkMonitor under the January 2016 Agreement.<br><br>The first missing documents is the "report in Excel format" that was to be sent to RIAA "one month" after the 2016 RIAA/MM Agreement was entered into. This missing report is listed on Plaintiffs' privilege log as dated February 29, 2016, and as having been formatted as an Excel spreadsheet titled "Hash Report_02292016.xlsx" (the "Hash Report"). Plaintiffs are withholding this document as "work product." Plaintiffs describe this document as follows: "Report prepared at the request of counsel in anticipation of litigation, containing analysis of infringement evidence collected in anticipation of litigation."<br><br>The second item of information that is missing is the list of "7200 hashes" that RIAA sent to MarkMonitor for searching on the Internet. Unlike the Hash Report, Plaintiffs have not asserted a privilege for this document by logging it on their privilege log. |

---

[4] A "hash" that identifies a shared file may refer to a file that consists of a single song or track; but, more frequently, the shared file consists of multiple tracks. Multiple tracks would be shared as part of a single file in the case where the file being shared is a copy of an album, or a copy of a user's collection of the works by an artist, or a play list or the like.

**Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)**

|  |  | Third, Plaintiffs have not produced either the transmittals to Audible Magic of the successfully located "files [which were to] be processed against Audible Magic fingerprinting for identification and verification," nor have they either logged or produced the results of the fingerprinting received from Audible Magic showing which files did and which did not match fingerprints in Audible Magic's reference database. Plaintiffs have not asserted a privilege for these documents by logging them in their privilege log.<br><br>Beyond these documents specified in the 2016 RIAA/MM Agreement, Plaintiffs have not produced any communications with MarkMonitor relating to the 2016 RIAA/MM Agreement or the work done pursuant to it. Nor have they produced any documents showing why RIAA elected to commission the project governed by the 2016 RIAA/MM Agreement or any evaluation of MarkMonitor's findings, any requested follow-up, or, indeed, anything regarding the project except for the information that was produced on the Hard Drive that was the subject of much litigation before the Special Master; namely, the downloaded recording, the packet capture files, and their associated metadata.<br><br>Plaintiffs' claim of work product protection over the Hash Report should be rejected. First, based on the description of this document in the 2016 RIAA/MM Agreement, it is simply MarkMonitor's "report" on its findings. As such, the document as described would not contain any "attorney's strategies and legal impressions," which is all the doctrine protects, as opposed to merely "facts concerning the creation of work product or facts within the product," which are not protectable. *See Bonanno v. The Quizno's Franchise Co.*, LLC, No. 06-CV-02358-WYD-KLM, 2008 WL 1801173, at *6 (D. Colo. Apr. 18, 2008) (citations omitted).<br><br>At most, this file demonstrates the results of MarkMonitor going onto public P2P networks and attempting to download certain files by searching by a public hash number. If the file were located, MarkMonitor noted as much and outlined the information publicly available from that file. Based on the description in the 2016 RIAA/MM Agreement, there is no analysis contained within in this document, let alone analysis representing the thoughts or mental impressions of Plaintiffs' counsel. *See id.*; *see also L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-02868-MSK-KMT, 2014 WL 183303, at *5 (D. Colo. Jan. 12, 2014) (citation omitted) ("Because the work-product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning creation of work product or facts contained within work product… |

3

**Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)**

| | | |
|---|---|---|
| | | Thus, work product does not preclude inquiry into the mere fact of investigation."). The file should be produced on this basis alone.

Further, even if Plaintiffs had a prima facie claim of work product over this document, such a claim would not protect the document from production where Charter can show a substantial need for the information. *See* Fed. R. Civ. P. 26(b)(3)(A); *see Henderlong v. Allstate Ins*. Co., No. CIV.A08CV01377CMAMEH, 2009 WL 82493, at *2 (D. Colo. Jan. 13, 2009) (finding substantial need where "the sought-after information is not available elsewhere"). Charter cannot know the extent to which MarkMonitor was unable in 2016 to locate and authenticate (with Audible Magic) the hashes for which the RIAA sent notices between 2012 and 2015. This information goes directly to Charter's ability to challenge Plaintiffs' direct infringement evidence.

In addition, given Plaintiffs' production of two of the categories of information generated by MarkMonitor pursuant to the 2016 RIAA/MM Agreement, they cannot withhold the Hash Report. Plaintiffs are improperly attempting to wield the favorable results of the MarkMonitor work-product as a sword while utilizing the work product doctrine as a shield to protect the unfavorable results. That is impermissible. *See Frontier Ref., Inc. v. Gorman-Rupp Co*., 136 F.3d 695, 704 (10th Cir. 1998) ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.") (citing Moore's Federal Practice § 26.70[5][b] (Daniel R. Coquillette et al. eds., 3d ed. 1997), § 26.70[6][c])).

Moreover, by selectively producing the MarkMonitor and Audible Magic evidence Plaintiffs deem helpful to this case but withholding the evidence they deem unhelpful, Plaintiffs have waived any work product protection they might have had by putting MarkMonitor's and Audible Magic's respective 2016 efforts directly at issue to Plaintiffs' direct infringement case, necessitating its production. *See Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1278 (10th Cir. 2014); *Larson v. One Beacon Ins. Co.*, No. 12-CV-03150-MSK-KLM, 2013 WL 2477150, at *11 (D. Colo. June 10, 2013) (finding implied waiver where "1) the assertion of privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the privileged information at issue by making it relevant to the case; and (3) application of the privilege denies the opposing party access to information vital to his defense"). |

**Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)**

|  |  | All of the foregoing justifications for production apply not only to the logged Hash Report, but also to the other documents related to the 2016 RIAA/MM Agreement: the missing list of 7,200 hashes, the missing Audible Magic transmittals and results, and the missing communications with MarkMonitor and others leading up to and following the 2016 RIAA/MM Agreement.  In addition, a further waiver arises because these materials were never logged by Plaintiffs, so no privilege has been asserted.  During meet and confer, Plaintiffs contended that they were under no obligation to undertake to log these documents because they are "classic" work product.  But they assert the same with respect to the logged Hash Report and they had previously asserted the same with the since produced PCAPs and the since produced 2016 RIAA/MM Agreement.  What really happened is that Plaintiffs, fully aware that they were producing or logging some but not all of the documents relating to the work done by MarkMonitor in early 2016, unilaterally decided that they were not going to disclose the existence of this material.  The work product doctrine is not a license to conceal evidence, and Charter respectfully submits that Plaintiffs are not allowed to use it for that purpose.<br><br>The missing documents should be produced.  Failing that, they should be logged and reviewed by the Special Master *in camera* for decision regarding the same. |
|---|---|---|

5