IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

      Defendant.

---

**PLAINTIFFS' RESPONSE TO CHARTER'S OBJECTION TO SPECIAL MASTER'S RULING REGARDING PRIVILEGE LOG ITEM 28**

---

      Charter's Objection (Dkt. 329) should be denied for two simple reasons.

      *First*, Charter's challenge to the merits of the Special Master's order requiring production is untimely. On October 2, 2020, after conducting an *in camera* review, the Special Master ordered Charter to produce the document that is the subject of its Objection—Item 28 from its first privilege log. Dkt. 252 at 3-5 ("October 2 Ruling"). Under the Order Appointing Special Master (Dkt. 143), Charter had five business days to timely object to the October 2 Ruling. Charter chose not to object, however, nor to seek additional time to object. Instead, two weeks later, Charter asked the Special Master to reconsider her order on two limited grounds. Dkt. 329-10. The Special Master reviewed the document a second time, and denied reconsideration on December 21. Ex. 1 at 42:1-6. Only after that did Charter file its Objection.

      Accordingly, the only timely objection, and the sole question properly before the Court, is whether the Special Master abused her discretion in *denying reconsideration*. Charter's

Objection, however, focuses entirely on the reasoning in the Special Master's original order of October 2. That challenge to the merits of the Special Master's original ruling comes months too late.

*Second*, Charter's Objection to the October 2 Ruling also fails on the merits. The Special Master reviewed Item 28 *in camera*—not once, but twice—and determined both times that the "express purpose of the communication at issue in Item 28 appears to be the dissemination of business, not legal advice." Dkt. 252 at 3; Ex. 1 at 41:18-42:6. She relied on the controlling standard in this district for determining the privilege over corporate communications. And she buttressed that conclusion by pointing out that Item 28 was sent from a non-lawyer to a large and unknown group of other non-lawyers, that the email did not instruct these recipients that the contents were privileged, copied no lawyers, and attached a document prepared at least in part by a non-lawyer. *Id*. at 4-5. On this record, Charter cannot meet the high standard of establishing that the Special Master abused her discretion.

Charter should have produced Item 28 three months ago. The document is responsive to requests served nearly a year ago. By all indications, Item 28 is a core document illustrating the *operation* of Charter's security team in responding to copyright notices. Charter should not be permitted to further delay production, especially given the urgency in completing document production and commencing depositions in this matter.

## BACKGROUND

On May 25, 2020, Charter served its first privilege log. As later amended, Item 28 in that log describes a July 29, 2013 communication from a non-lawyer to 24 non-lawyers and two distribution lists, "transmitting internal presentation attachment with notes reflecting legal advice

from Kelly Starkweather and Kirill Abramov regarding copyright program." Dkt. 329-2 at 5. Charter did not identify the members of the distribution lists that received the document. *Id.* On July 13, pursuant to a process established by the Special Master, Plaintiffs challenged Charter's privilege claim over Item 28 on the basis that the document appeared to have a primary purpose that was operational rather than legal, given its description and the fact that it was sent by a non-lawyer to a large and unknown group of non-lawyers. Dkt. 329-3, -4.

In her August 12 ruling on Plaintiffs' initial challenge, the Special Master ordered Charter to submit Item 28 for *in camera* review, and to identify its recipients in a letter. Dkt. 230 at 30.[1] The letter that Charter submitted, however, failed to identify any members of the two distribution lists. Instead, Charter merely provided a declaration from an employee stating he was "not aware of any time where either of these distribution lists included non-Charter third parties." Dkt. 329-7, -8. (Charter argues in its Objection that the distribution list included only employees, Dkt. 329 at 7-9, but the declaration does not go that far.) Charter's letter also confirmed that no lawyers were in the recipient fields for Item 28. Dkt. 329-7; Ex. 2 at 3.

On October 2, the Special Master ordered Charter to produce Item 28. Dkt. 252 at 3-5. She concluded from her *in camera* review that "the express purpose of the communication at issue in Item 28 appears to be the dissemination of business, not legal advice." *Id.* at 3. The Special Master cited a number of facts in addition to the document's content to buttress that conclusion: (1) it was sent by a non-lawyer, *id.* at 4; (2) to 24 non-lawyer employees and an

---

[1] During the September 9, 2020 hearing, the Court agreed that this privilege issue would remain in the Special Master's jurisdiction, notwithstanding the Court otherwise taking jurisdiction over privilege issues. Sept. 9, 2020 Hrg. Tr. at 214:13-17.

3

indeterminate number of other recipients via two distribution lists, *id*.; (3) copying no lawyers, *id*.; (4) instructing no one on privilege, *id*.; and (5) the attachment "was, at least in part, prepared by a non-lawyer not a part of the legal staff in the first instance," *id.* at 4-5.

The Special Master reached this conclusion notwithstanding Charter's claim that the presentation contained "notes reflecting legal advice" from Charter's in-house counsel. *Id*. at 3 (twice referring to said notes). In holding that Charter had not sustained its burden to prove that the email and presentation were privileged, the Special Master relied on controlling authority dictating that "when the legal advice is merely incidental to business advice, the privilege does not apply." *Id*. at 4; *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 3055774, at *3 (D. Colo. May 23, 2018), both quoting *Neuder v. Battell Pac. Nw. Nat. Lab.,* 194 F.R.D. 289, 292 (D.D.C. 2000).

Charter did not object to the October 2 Ruling within five business days, as required by the Order Appointing Special Master. Dkt. 143 at ¶ 5. After Charter's time to object elapsed, Plaintiffs asked Charter to produce the document promptly, noting that it had "been 12 days since the Special Master found the email and its attachment to not be privileged, and Charter chose not to defend its assertions of privilege over these documents to Judge Hegarty." Ex. 3.

Two days later, Charter asked the Special Master to reconsider her ruling. Dkt. 329-10. The purported basis for Charter's request was that "in preparing to produce" Item 28 to Plaintiffs, Charter realized that the version it previously submitted for *in camera* review omitted certain "speaker notes prepared by in house counsel," viewable only in the native version of the document. *Id*. Charter also pointed to an "attorney-client privilege" label on the first page of the presentation that the Special Master had reviewed *in camera*, but for which Charter suggested

4

the Special Master did not account. *Id.* Charter requested a second *in camera* review, and reconsideration. *Id.* At no point did Charter ask the Special Master to permit redaction of the speaker notes—the "alternative relief" it now seeks for the first time in the Objection.

The Special Master permitted Charter to re-submit the native version of Item 28 for *in camera* review. *Id.* Following that second review, she denied Charter's reconsideration request at the December 21 hearing ("December 21 Reconsideration Ruling"), finding that "there's nothing there that causes me to reconsider, recast my prior order. The order stands. Item 28 of the privilege log should be produced forthwith." Ex. 1 at 41:18-42:6. Charter then filed the instant Objection.

## ARGUMENT

### I.     Legal Standards

Under the Order Appointing Special Master, "any order, report, or recommendation of the Master on nondispositive motions (unless it involves a finding of fact or conclusion of law) will be deemed a ruling on a procedural matter," reviewable for abuse of discretion. Dkt. 143 at ¶ 6. A Special Master abuses her discretion when she "fails to articulate a reason for [her] decision…or articulates a reason which has no basis in fact[,] or the reason articulated is contrary to law." *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008).

"A motion for reconsideration is an extreme remedy to be granted in rare circumstances." *Beyer Laser Ctr., LLC v. Polomsky*, No. 16-CV-03099-MEH, 2019 WL 5549160, at *2 (D. Colo. Oct. 25, 2019) (Hegarty, J.) (internal citation omitted). "In order to avoid the inefficiency of repeatedly re-adjudicating interlocutory orders, generally judges in this district have imposed limits" on the grounds upon which they may be considered. *Id.* Grounds

5

warranting a motion to reconsider include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete*, 204 F.3d at 1005, 1012 (10th Cir. 2000). A motion to reconsider is therefore "an inappropriate vehicle to advance 'new arguments, or supporting facts which were available at the time of the original motion.'" *Beyer Laser*, 2019 WL 5549160, at *2. And it "should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id*.

**II.     The Special Master's December 21 Reconsideration Ruling—the only ruling to which Charter can timely object— was not an abuse of discretion.**

Charter's Objection does not even attempt to challenge the December 21 Reconsideration Ruling—the only ruling to which Charter can timely object—as an abuse of discretion. And for good reason.

The sole bases for reconsideration that Charter identified to the Special Master were (1) its "discover[y] that the version [it] previously provided to [the Special Master] to review *in camera* did not include these speaker notes"; and (2) "the fact that the presentation is labeled 'Subject To Attorney-Client Privilege' on the first page of the PowerPoint presentation." Dkt. 329-10. But not only are these "facts which were available at the time of the original motion," *Beyer Laser*, 2019 WL 5549160, at *2, they were expressly *considered by* the Special Master.

Specifically, the October 2 Ruling took into account Charter's assertion that the presentation "contain[ed] Charter in-house counsel's notes." Dkt. 252 at 3. Unsurprisingly, further *in camera* review provided "nothing [to] cause [her] to reconsider," Ex. 1 at 42:1-6, because controlling law in this district makes clear that a "smaller measure of legal advice" contained in a document prepared for business purposes cannot shield the document from

6

discovery, *RCHFU*, 2018 WL 3055774, at *3 (D. Colo. May 23, 2018) (ordering production of entire document prepared for the "primary purpose of [] developing a successful strategy for further operation of a portion of the business" that also "involved some legal advice").

Likewise, the Special Master's citation to the fact that the many and unknown email "recipients were not instructed that the *communication* was protected by the attorney-client privilege" is in no way diminished by the label on the first page of the attached *presentation*, nor evidence that she did not consider that label in her analysis.

### III. Charter's Objection to the October 2 Ruling is untimely.

Rather than contending that the Special Master's December 21 Reconsideration Ruling was error under this district's standards for reconsideration, Charter's Objection focuses entirely on the merits of the Special Master's *original* October 2 Ruling. But Charter failed to timely object to that Ruling. *See* Dkt. 143 at ¶ 5 ("A Party may file objections to—or a motion to adopt or modify—the Master's order, report, or recommendation no later than five (5) business days from the time that order, report, or recommendation is served.").

A party cannot use an objection to a reconsideration ruling as a backdoor method to lodge an untimely objection to the underlying order. *Laubach v. Scibana*, 301 F. App'x 832, 836 (10th Cir. 2008) (applying firm waiver rule to late-filed objections and rejecting argument that a "motion for reconsideration should have tolled the objection period . . . because the motion for reconsideration in no way indicated that it was intended as a request for an extension").[2]

---

[2] For this reason, when Plaintiffs sought clarification and reconsideration of the Special Master's May 29 Order, they informed her of their intent to request an extension of their time to object, pending her clarification of that Order. The Special Master agreed to reissue the May 29 Order

Charter's challenge to the merits of the October 2 ruling is therefore untimely, and should be rejected on that ground. *See, e.g., id.*; *Blount v. Marin*, 2020 WL 7640219, at *1 (D. Colo. Dec. 23, 2020) (lateness of objection is sufficient basis to overrule it); *Georgacarakos v. Wiley*, 2009 WL 440934, at *7 (D. Colo. Feb. 23, 2009) (reviewing only timely submitted objection to Magistrate Judge's order and declining to consider untimely objection).

## IV. Charter's Objection to the October 2 Ruling also fails on the merits.

Even if Charter could challenge the October 2 Ruling, that order correctly applied the controlling standard in this district for determining whether documents that might involve in-house counsel are privileged: the corporation must clearly demonstrate that the "communication's primary purpose is to gain or provide legal assistance" and not business advice, and "when the legal advice is merely incidental to business advice, the privilege does not apply." Dkt. 252 at 3-4; *RCHFU*, 2018 WL 3055774, at *3 (D. Colo. May 23, 2018).[3]

---

in its entirety, expressly instructing "the parties [on June 4] that the time for objecting to [her] May 29 Order would not begin to run until [she] considered Plaintiffs' June 2, 2020 request for clarification and later requests for reconsideration of that Order." Dkt. 190 at 11-12. That never happened here—Charter never sought an extension of its time to object, and did not request reconsideration until a week after its Objection was due.

[3] None of the cases cited by Charter says otherwise, nor does Charter contend that they do. In *Motley*, the Court addressed a "memo from the Law Department," written by the defendant's in-house counsel. The *Motley* court stated that the memorandum would not be privileged if prepared for business purposes. 71 F. 3d 1547, 1550-51 (10th Cir. 1995). The court held that the district court did not abuse its discretion in declining *in camera* review because the author of the memorandum testified that it contained his legal advice and no business advice, and that evidence went unrebutted. *Id*. *Premiere Digital Access* also recognizes that the privilege does not protect business advice. 360 F. Supp. 2d 116, 1173-74 (D. Nev. 2005). In that case, the court addressed an email sent by in-house counsel recommending that the defendant provide a customer the opportunity to cure breach before terminating a service contract. *Id*. at 1169. The plaintiff attempted to argue that "in-house counsel is not covered by the privilege"—ever. *Id*. at 1174. The court easily rejected that position—not advanced by anyone here—because it would "render unprotected any communication that occurred between attorney and client prior to the start of litigation." *Id*. at 1175.

8

The Special Master reviewed Item 28 *in camera* and, applying *RCHFU*, determined that the "express purpose of the communication at issue in Item 28 appears to be the dissemination of business, not legal advice." Dkt. 252 at 3. She reinforced that conclusion by pointing out that the email was sent from a non-lawyer to a large and unknown number of non-lawyers, that the email instructed none of these non-lawyers about any privilege, that it copied no lawyers, and that the attachment was prepared at least in part by a non-lawyer. *Id*. None of this reasoning can be said to have "no basis in fact" or to be "contrary to law," as required to overturn the October 2 Ruling as an abuse of discretion. *Lee*, 249 F.R.D. at 671.

In fact, Charter does not even attempt to meet this standard. It disputes none of the facts adduced or law cited by the Special Master. Instead, each of its arguments ascribes to the Special Master reasoning she never articulated:

*First*, Charter claims that the Special Master's "apparent rationale for her conclusion that Item 28 primarily offered business, versus legal, advice was that a non-lawyer sent the email." Dkt. 329 at 7. Charter argues that the October 2 Ruling should be overturned because "transmittal of materials by non-lawyers *on its own* does not *negate the privilege*, and the fact that a non-lawyer transmitted the presentation does not change the fact that the purpose of the communication was to provide legal advice." *Id.* at 7 (emphasis added); *see also id.* at 9.

This argument misstates the October 2 Ruling. The Special Master never stated that the identity of the sender of Item 28 negated any privilege or converted what would otherwise be a legal purpose to a business purpose. Dkt. 252 at 3-5. She reviewed the document *in camera* and found that its "express purpose" was the "dissemination of business, not legal advice." *Id*. at 3. Among the facts *buttressing* that conclusion was that a non-lawyer sent Item 28. *Id*. at 4. The

identity of the sender did not "negate" anything—"on its own," or otherwise—in the Special Master's view. It was one of many facts supporting her review-based conclusion that the document was prepared primarily for business reasons. Dkt. 252 at 3-5.

*Second*, Charter argues that the Special Master erroneously concluded that Item 28 cannot be privileged because it provides "direction." Dkt. 329 at 8. Charter claims that the October 2 Ruling should be overturned because it "fail[s] to acknowledge that communications meant to 'deliver legal advice' may be privileged, [] and fail[s] to articulate why legal advice cannot come in the form of a directive." *Id*. This, too, attacks reasoning the Special Master never gave. The Special Master made no such broad pronouncements that "direction" can never be privileged. She found that the document "disseminat[ed] business, not legal advice," Dkt. 252 at 3, and thus offered *non-legal* direction—*not* that the document offered direction and was *therefore* not legal, *id*. at 4 ("the email and attached presentation appear to provide *direction* to members of Charter security teams *regarding Charter's copyright program rather than to seek or provide legal advice*") (emphasis added). A document whose primary purpose is to direct business "strategy for further operation of a portion of the business" that contains some "smaller measure of legal advice" is not privileged. *RCHFU*, 2018 WL 3055774, at *3-4 (D. Colo. May 23, 2018).

*Third*, Charter claims that the Special Master erroneously concluded that "the recipients [of the email] were not instructed that the communication was protected by the attorney-client privilege," because the first page of the attachment contains a label reading "subject to attorney-client privilege." Dkt. 329 at 8-9. But the October 2 Ruling is clearly discussing the *email* when it refers to the lack of a privilege instruction:

> The **email** and attachment at issue here was **sent by a non-lawyer to a number of unknown Charter employees**. The **recipients were not instructed** that the communication was protected by the attorney-client privilege, nor does it appear that any attorneys were included on the cc line of the **email**.

Dkt. 252 at 4 (emphasis added).  Charter does not dispute that the email itself contained no instructions about privilege.  Nor can it deny that an email to 26 non-lawyers and two distribution lists with unknown members, without a privilege instruction, is a salient fact in a privilege determination.  Charter's own cases confirm this.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) ("We therefore scrutinize closely any privilege claim where [the claimant] has provided only a general group-wide description for the recipients.").  Nor does the fact of the label prove anything about the underlying privilege.  *See, e.g.*, *Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.*, 213 F.R.D. 422, 430 (D. Kan. 2003) ("Labels such as 'Attorney Client Privilege' and 'Attorney Work Product' are overused on documents that do not truly qualify for protection."); *In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 1106257, at *7 (D. Kan. Mar. 24, 2017) ("[A] document is not cloaked with the privilege merely because it bears the label 'privileged' or 'confidential.'").

*Fourth*, Charter claims that the Special Master's citation to the email's wide and unknown distribution reflected an erroneous "line-drawing exercise turning on the number of employees to which [the document] is distributed." Dkt. 329 at 9.  But the Special Master never said her privileged determination "turn[ed] on" the number of recipients to which Item 28 was distributed.  That fact, again, was just one of many supporting her review-based conclusion that the document was prepared primarily for business reasons.  Dkt. 252 at 3-5.  Nor did the Special Master refer to any "artificial limit" or magic number of employees to whom a document may be

11

distributed "and yet remain privileged," as Charter implies.  The Special Master simply cited the large and unknown group of recipients as a relevant fact.

Charter cannot dispute that principle.  In fact, Charter's own case on this issue found such a large and unknown group of recipients sufficient to defeat a privilege claim.  In *SmithKline Beecham*, the court observed that claims of privilege should be "scrutinize[d] closely" where there is "only a general group-wide description for the recipients" and ordered several documents produced on that basis.  232 F.R.D. at 476 (ordering production of document where "the recipients … are only broadly defined as 'Members of SB Corporate Intellectual Property Department'"); *id*. at 478 ("In addition, document 3082 reflects a group-wide distribution ('Members of SB Corporate Management Team') and must also be produced.").

In sum, none of Charter's arguments actually address the October 2 Ruling.  There is no reason to second-guess the Special Master's rulings, which were the product of two *in camera* reviews, applied the correct standard, and provided a thorough and factually correct analysis.  Doing so would only convert the "abuse of discretion" standard into something else entirely, especially given that Charter's challenge to the merits of the October 2 Ruling is untimely.

Finally, Charter never asked the Special Master for the "alternative relief" of redacting the speaker notes it now seeks in its Objection.  Its failure to ask for that relief until now is reason alone to overrule that portion of the Objection.  But in any event, *RCHFU* rejects redaction of legal advice where it is "intertwined within the business advice" in a document prepared for business purposes, especially when the document is authored by a "sophisticated corporation with a large and experienced legal team."  2018 WL 3055774, at *4.

Charter should be ordered to produce the document forthwith.

## CONCLUSION

For the foregoing reasons, the Court should overrule Charter's Objection.

Dated: January 5, 2021

Janette L. Ferguson, Esq.
LEWIS BESS WILLIAMS &
WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

/s/ Jonathan M. Sperling
Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com


*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Jonathan M. Sperling*
Jonathan M. Sperling