# EXHIBIT 5

**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Jonathan M. Sperling

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1153
jsperling@cov.com

**Via Email**                                                                                                                January 18, 2021

Special Master Regina Rodriquez
regina.rodriguez@wilmerhale.com

      Re:  *Warner Records v. Charter Commc'ns*, No. 19-cv-00874

Dear Ms. Rodriguez:

      Plaintiffs identify the following ripe issues for discussion during tomorrow's hearing.

      **1.  Charter should be ordered to comply with your April 28 PII Order.**  Your April 28 Order adopted *Charter's* proposal that it "produce PII for the 112 residential subscribers with the greatest number of tickets."  Dkt. 164 at 5.  Charter's August 2 disclosure of PII did not comply with that directive.  To begin, in calculating the "top 112" subscribers, Charter did not account for the subscribers it identified in its court-ordered, June 25 production of DHCP logs.  Ex. 1.  In addition, a March 2016 document that Charter produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 2 at p. 4.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—meaning that Charter did *not* disclose PII for the top 112, as you ordered Charter to do.  Yet Charter refuses to provide Plaintiffs the PII for those top-25 notice recipients from 2015.  Charter should be ordered to correct its disclosure of PII by (1) accounting for its DHCP logs; and (2) identifying the ▮▮▮▮▮▮▮▮▮▮ in Exhibit 2.

      **2.  The PII Order should be amended to include <u>four</u> additional subscribers.**  When you ordered Charter to provide PII for the top 112 subscribers, you recognized that this was a starting place and that Plaintiffs might seek additional disclosures.  April 17, 2020 Hrg. Tr. at 71:15-17, 74:4-12.  Accordingly, Plaintiffs now seek disclosure of the PII for four additional subscribers.  The first is referred to in a Charter email ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exs. 1, 3.  Charter's contends that it was not required to terminate a subscriber's service "unless that subscriber was first adjudicated to be a repeat infringer."  Dkt. 160 at 13.  This email ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Plaintiffs also request that ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in three documents Charter produced.  Exs. 1, 4.  These documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

      **3.  Charter should be ordered to search all agreed-upon custodians for Plaintiffs' narrowed request seeking documents discussing the *BMG v. Cox* case and Charter's own policies and procedures.**  Pursuant to your direction at the December 21 hearing, Plaintiffs have narrowed their request for documents relating to *BMG v. Cox*.  *See* 12/21/2020 Hrg. Tr. at 13:1-14; 17:5-15; Ex. 5.  Charter has agreed to the narrowed request, but refuses to search the five custodians who are most likely to have the relevant documents, all of whom are in its legal department.  Ex. 5.  Charter refused to search its legal custodians for documents responsive to the narrowed request on the grounds that: (1) Charter claimed it would be burdensome

COVINGTON

Special Master Regina Rodriquez
January 18, 2021
Page 2

to log their documents; and (2) Charter does not want to disclose the dates on which any assertedly privileged communications occurred. *Id.*

Neither is a valid basis to exclude relevant communications. As to the first, Charter refuses to corroborate its burden claim by providing any hit counts for Plaintiffs' search term as applied to its legal custodians. As to the second, Charter's claim that it may exclude legal custodians because Plaintiffs should not see the dates of logged communications is contrary to law. Privilege logs regularly contain the dates of privileged communications, and those dates are not themselves privileged. Charter relies on an out-of-district case permitting a party to redact "email header[s]" from a privileged email, on the basis that it would disclose details, such as the topic and time of the conversation, that the opposing party would not otherwise be entitled to. *Schuler v. Invensys Bldg. Systems, Inc.*, 2009 WL 425923, at *2 (N.D. Ill., 2009). Setting aside that *Schuler* acknowledges countervailing authority in that jurisdiction, *see id.*, and says nothing about searching for documents in the first place, in *this* Court, the opposing party *is* entitled to see dates and topics. *Thane v. GEICO Cas. Co.*, 2017 WL 3157966, at *6 (D. Colo. July 25, 2017) (Hegarty, J) (privilege logs must include "date of creation, author, title or caption, addressee and each recipient, and general nature"). Indeed, Charter relied on *Schuler* when opposing Plaintiffs' request that Charter add subject lines to its privilege log, and the Court rejected Charter's position. Ex. 6 at 207:3-20.

**4. Charter should be ordered to unredact what it claims is "non-responsive budgetary information" from documents you ordered produced.** In response to your May 29 Order that Charter produce documents responsive to Plaintiffs' RFPs 52-53, Dkt. 181 at 37-38, Charter produced eight spreadsheets, and redacted the vast majority of the information in them on the grounds that this was "non-responsive" budgetary information. Ex. 7. For example, in one spreadsheet, Charter redacted 426 of the 444 cells. Ex. 12. Judge Hegarty has recently confirmed that "you generally don't get to produce documents and then redact nonresponsive information." Ex. 8 at 83:15-22, *see also id.* at 85:8-10, 92:15-19. Charter should not be permitted to maintain these unilateral responsiveness redactions.

**5. Charter should be ordered to provide discovery that peer-to-peer infringement is "no longer an issue."** Plaintiffs seek to compel discovery sought by the six RFPs and three interrogatories listed in Appendix 1. These requests seek information showing that peer-to-peer infringement is still a problem, that Charter continues to contribute to and financially benefit from it, and that there is value in deterring Charter's unlawful conduct. This information would rebut Charter's defense that any recovery would be a windfall to Plaintiffs because "*today* the [peer-to-peer] problem is no longer here . . . [n]ow plaintiffs are making a ton of money off of internet streaming, so it's *no longer* an issue" and there is thus no need for any deterrence. Ex. 6 at 34:1-10; *see also* July 19, 2020 Motion to Compel at 7. Charter argues that Plaintiffs' statutory damages should be reduced for this reason. *Id.*

Charter refused to engage with Plaintiffs regarding this discovery, claiming the only relevance to such discovery would be Plaintiffs' now-dismissed counter-counterclaims. Ex. 9; *see also* Exs. 10-11. That is not so. Charter sought and obtained discovery from *Plaintiffs* for the post-Claim Period on the basis of this damages defense. Plaintiffs have an equal right to discovery into post-Claim Period infringement that bears on that defense.

**COVINGTON**

Special Master Regina Rodriquez
January 18, 2021
Page 3

                                                                           Respectfully submitted,

                                                                          */s/ Jonathan M. Sperling*

                                                                          Jonathan M. Sperling

## Appendix 1

**RFP 89:**  Logs of all Infringement Notices sent to you by any person or entity from May 18, 2016 to April 30, 2020, concerning (i) subscribers identified in Plaintiffs' Infringement Notices and (ii) all Subscribers who were the subject of three or more Infringement Notices, sufficient to show, as to each such Infringement Notice, the Subscriber ID, ticket number, date and time of alleged infringement as set forth in the Infringement Notice, IP address, each action taken or determined to not be taken with respect to such Infringement Notice, and the date and time of each such action or determination.  *See* Plaintiffs' RFP 2; Dkt. 242; September 9, 2020 Hrg. Tr. at 38:11-69:17.

**RFP 98**:  "Internal and external communications regarding copyright infringement by Charter's subscribers, sent to or from members of Charter's Network Securities Operations team [or its successor or functional equivalent] during the [Subsequent Claim Period], excluding form messages, form responses, or mere forwards of form messages (without more)."  *See* Plaintiffs' RFP 16, as modified in search term negotiations; *quoting* Special Master's August 31, 2020 Order.

**RFP 101:**  Documents sufficient to show the actual monthly revenue from all Subscribers identified in Plaintiffs' Infringement Notices for May 18, 2016 through April 30, 2020.  *See* Plaintiffs' RFP 19; Plaintiffs' December 16, 2019 Letter for December 17, 2019 Discovery Conference; December 17, 2019 Hrg. Tr. at 47:1-59:4; February 19, 2020 Hrg. Tr. at 143:2-25.

**RFP 110:**  Internal communications "concerning Charter's copyright and DMCA policies."  *See* Plaintiffs' RFP 28; *quoting* Charter's April 29, 2020 Supplemental Responses to Second Set of RFPs.

**RFP 112:**  All of your internal communications discussing any Infringement Notice, any instance of alleged copyright infringement, or any "ticket" generated in response to any Infringement Notice, including internal communications concerning the actual or potential termination of any Subscriber's account with Charter.  *See* Plaintiffs' RFP 30; Special Master's August 31, 2020 Order.

**RFP 128:**  All "work-log notes"—or other records or logs of calls between your employees and your subscribers concerning infringement notices—associated with Plaintiffs' notices, or all Infringing Subscribers who were the subject of three or more Infringement Notices.  *See* Plaintiffs' RFP 56; Dkt. 181 at 28-30; July 2, 2020 Hrg. Tr. at 29, 32.

**Interrogatory 20:**  State the number of Infringement Notices you received each month from May 18, 2016 through April 30, 2020, and identify the person(s) most knowledgeable about such notices since May 18, 2016.  *See* Plaintiffs' Interrogatory 13; Dkt. 181 at 26-27.

**Interrogatory 21:**  State the number of Customer Facing Actions, by Customer Facing Action, you took each month from May 18, 2016 through April 30, 2020 in response to the Infringement Notices identified in response to Interrogatory No. 20 and identify the person(s) most knowledgeable about such Customer Facing Actions.  *See* Plaintiffs' Interrogatory 14; Dkt. 181 at 26-27.

**Interrogatory 22:**  Identify each Infringing Subscriber, by account number, whose internet service was terminated for nonpayment from May 18, 2016 through April 30, 2020 who also received at least three Infringement Notices.  *See* Plaintiffs' Interrogatory 16; Dkt. 230 at 7-9.