# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH
_____

WARNER BROS. RECORDS INC., et al.,

    Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

_____

TELEPHONIC HEARING

January 22, 2021
_____

    This telephonic hearing was taken before Special Master Regina Rodriguez on January 22, 2021, at 9:00 a.m. Mountain Standard Time before K. Michelle Dittmer, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, K. Michelle Dittmer, appearing remotely via telephone)

Telephonic Hearing
January 22, 2021

Page 2

```
 1   A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFF WARNER BROS. RECORDS INC.:
 3            MATTHEW J. OPPENHEIM, ESQ.
              ALEXANDER KAPLAN, ESQ.
 4            Oppenheim & Zebrak LLP
              4530 Wisconsin Avenue N.W.
 5            5th Floor
              Washington, DC 20016
 6            Phone: 202-480-2999
              Email: matt@oandzlaw.com
 7            Email: alex@oandzlaw.com
              (appeared telephonically)
 8
              JONATHAN MICHAEL SPERLING, ESQ.
 9            Covington & Burling LLP
              620 Eighth Avenue
10            The New York Times Building
              New York, New York 10018-1405
11            Phone: 212-841-1153
              Email: jsperling@cov.com
12            (appeared telephonically)
13            NEEMA T. SAHNI, ESQ.
              J. HARDY EHLERS, ESQ.
14            Covington & Burling LLP
              1999 Avenue of the Stars
15            Suite 3500
              Los Angeles, California 90066-4643
16            Phone: 424-332-4757
              Email: nsahni@cov.com
17            Email: jehlers@cov.com
              (appeared telephonically)
18
              STACEY K. GRIGSBY, ESQ.
19            Covington & Burling LLP
              One CityCenter
20            810 Tenth Street, NW
              Washington, DC 20001-4956
21            Phone: 202-662-5238
              Email: sgrigsby@cov.com
22            (appeared telephonically)
23
24
25
```

Telephonic Hearing
January 22, 2021

Page 3

```
 1   ON BEHALF OF THE DEFENDANT:
 2             ANDREW H. SCHAPIRO, ESQ.
               ALLISON HUEBERT, ESQ.
 3             Quinn Emanuel Urquhart & Sullivan, LLP
               191 N. Wacker Drive, Suite 2700
 4             Chicago, Illinois 60606
               Phone: 312-705-7403
 5             Email: andrewschapiro@quinnemanuel.com
               Email: allisonhuebert@quinnemanuel.com
 6             (appeared telephonically)
 7
               LINDA J. BREWER, ESQ.
 8             GRACIE CHANG, ESQ.
               Quinn Emanuel Urquhart & Sullivan, LLP
 9             50 California Street, 22nd Floor
               San Francisco, California 94111
10             Phone: 415-875-6403
               Email: lindabrewer@quinnemanuel.com
11             Email: graciechang@quinnemanuel.com
               (appeared telephonically)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1      SPECIAL MASTER RODRIGUEZ:  Okay.  All
2  right.
3      Well, on this one, what I'm going to order
4  is, Charter, that you provide to me a redacted and
5  unredacted version, and I'll take a look and review in
6  camera and make a final decision.
7      MR. SCHAPIRO:  Thank you, Ms. Rodriguez.
8      SPECIAL MASTER RODRIGUEZ:  All right.
9  What's next?
10     MR. EHLERS:  Good morning, Ms. Rodriguez.
11  This is Hardy Ehlers from plaintiffs.
12     The last issue in our letter is the
13  discovery that we requested that goes to Charter's
14  defense in this case arguing that peer-to-peer
15  infringement is no longer a problem.
16     So the defense is that plaintiffs'
17  statutory damages should be reduced because today,
18  peer-to-peer infringement is no longer a problem, that
19  it's instead a historical phenomenon.  And the theory
20  goes that deterrence is a factor in assessing statutory
21  damages, and there is nothing to deter here because
22  peer-to-peer infringement has just gone away and so
23  plaintiffs' statutory damages should be significantly
24  reduced.
25     The request at issue here that were listed

1    in the appendix to our letter seek information to rebut
2    that defense.  There, just the necessary course that have
3    requests that would show that infringement is so rampant
4    on Charter's network that Charter has continued to
5    present to provide services -- its services to known
6    repeat infringers and that Charter would terminate those
7    same repeat infringers when they would not pay the
8    subscription fees they owed to Charter; in other words,
9    when Charter's pocketbook was at stake rather than
10   plaintiffs'.
11                  So those are -- those kind of three
12   elements are the things that plaintiffs need to disprove
13   the predicate notions that underlie Charter's defense,
14   that peer-to-peer piracy isn't a problem anymore and
15   there's no Charter behavior to deter here.
16                  So we think we're entitled to this
17   discovery to rebut that notion, those two notions,
18   because if there's a liability finding here, Charter's
19   going to rely on them very heavily to say that damages
20   should be reduced potentially to the tune of hundreds of
21   millions of dollars.
22                  SPECIAL MASTER RODRIGUEZ:  All right.
23   Thank you, Mr. Ehlers.
24                  Remind me again, you indicated that with
25   regard to the specific issue, also peer-to-peer

```
 1   infringement, the specific discovery requests were --
 2   tell me what those were again.
 3                  MR. EHLERS:  They are six RFPs and three
 4   interrogatories.
 5                  SPECIAL MASTER RODRIGUEZ:  Okay.
 6                  MR. EHLERS:  And the --
 7                  SPECIAL MASTER RODRIGUEZ:  And this is
 8   what's in -- sorry.  This is what's in your Appendix 1,
 9   right, it's the whole list?
10                  MR. EHLERS:  Correct.
11                  SPECIAL MASTER RODRIGUEZ:  I currently --
12                  MR. EHLERS:  And they -- and they appear a
13   little bit out of order because they are six requests
14   that we selected from the sets that you had ordered us to
15   reproduce to cover infringement to present for purposes
16   of the counter-counterclaims.
17                  We're only -- we've only -- we picked
18   these six because they are the core requests that are
19   also relevant to Charter's defense here.
20                  SPECIAL MASTER RODRIGUEZ:  Okay.  Thank
21   you.
22                  Counsel for Charter, would you like to
23   respond?
24                  MS. BREWER:  Yes.  This is Linda Brewer on
25   behalf of Charter.
```

1                Given Judge Jackson's ruling on
2    December 15 and his very clear guidance to the parties as
3    to the scope of the case and the need for the parties to
4    stay on track for an October 2021 trial, we were very
5    concerned to receive the email on January 4 from
6    plaintiffs following up on this counter-counterclaims
7    discovery they served on December 5 that has always been
8    understood, by you and the parties, to be premised on the
9    prospective counter-counterclaims that have now been
10   stricken from the record.
11               We were even more disturbed that we
12   properly responded to that email to point out that a
13   motion to compel responses to those requests would be
14   improper.  Heard nothing back from plaintiffs, absolutely
15   nothing.  And then this issue was included in the
16   January 18 letter to you as a basis for a motion to
17   compel.
18               We think, and we hope that you agree,
19   after reviewing the December 15 transcript, that Judge
20   Jackson provided a very clear admonition to plaintiffs as
21   to the appropriateness of the case.
22               He not only found that the
23   counter-counterclaims that -- that sought to vastly
24   expand the scope of the case by adding new works, that
25   expanding the claims period by doubling it were not

1   permissible, but explicitly ruled that the proposed
2   claims were never properly at issue in the case in the
3   first place.
4              For that reason, he found Charter's motion
5   to dismiss unnecessary and instead granted Charter's oral
6   motion at the hearing to strike the claims from the
7   record.
8              In that hearing, Judge Jackson pointed out
9   that the case was filed back in March 2019, and he views
10  it as an old case.  He wants the parties to stay on
11  schedule.  He is not moving the October 2021 trial date.
12  This was made very clear to the parties on December 15.
13             Against this background, we are frankly
14  stunned that plaintiffs waited three weeks to approach us
15  with a brand-new argument:  That the November 5
16  counter-counterclaims discovery can nevertheless be
17  pursued, because plaintiffs believe there is now creative
18  arguments that is marginally related to a damages
19  argument that Charter asserted in different context with
20  respect to a different discovery request that was
21  extensively litigated and wasn't even decided in
22  Charter's favor.
23             This, to us, is problematic for so many
24  reasons.  First, plaintiffs never once made this argument
25  that they needed to propound this discovery of that issue

1  today in order to counter a damages argument made by
2  Charter six months ago.
3              And quite honestly, I woke up at 5:00 a.m.
4  this morning and I reviewed that October 26 transcript
5  before you in full.  I looked if there was any mention of
6  this argument as the basis for the need to propound this
7  discovery.  There was not.
8              They did not make this argument to you
9  when we appeared on October 26 as an additional reason
10 for the need to propound discovery, and they didn't make
11 this argument to Judge Jackson when they appeared before
12 him on December 15.
13             Second, the discovery is not proportional
14 or rationally related to the damages argument.  The
15 discovery is broadly based information from Charter that
16 is a complete redo of discovery taken on the underlying
17 claim that itself has consumed a vast amount of Charter's
18 time to respond to at great expense.
19             It has also consumed substantial judicial
20 resources to litigate due to all of the disputes that
21 naturally arise out of this type of discovery, which I
22 think is demonstrated by the fact that we've spent
23 90 minutes already in a hearing today on outstanding
24 requests on the underlying claim.
25             To require Charter to start anew with this

1    new fact discovery, when fact discovery is supposed to be
2    closing, would be incredibly prejudicial and at odds with
3    Judge Jackson's directive to the parties to stay on
4    track.
5                   It's also difficult for this discovery to
6    be justified when it's not tethered now to any new claims
7    that would be added to the case.  The pursuit of this
8    discovery, when not tethered to any claims, is, we think,
9    something that borders on a due process violation at this
10   point in time.
11                  We've also extensively briefed, in the
12   context of our declaratory judgment counterclaim and the
13   context of our motion to dismiss the proposed
14   counter-counterclaim, how prejudicial this discovery
15   would be for Charter.
16                  Not just because of the expense and burden
17   associated with responding to it, which could not be
18   cured unless the case is extended by a year and the
19   discovery was reciprocated by plaintiff, but also because
20   it would bring new facts into the case regarding the
21   post-2016 time period and Charter's system for processing
22   this case, that would be substantively prejudicial to
23   Charter to the point of preventing a fair trial.
24                  We made this argument to Judge Jackson in
25   the context of our motion to dismiss.  He was receptive

1  to it, and the issue was decided in our favor.
2              It's even more egregious at this point
3  that Charter was compelled to reveal that information in
4  order to adequately explain to the Court why the proposed
5  counter-counterclaims would be so prejudicial, and now
6  the information is being used against us.
7              We also have fundamental fairness concerns
8  about this litigation process.  Five of the six document
9  requests that Mr. Ehlers has referred to exceed the caps
10 that are set in the scheduling order.  As you're well
11 aware, all of the requests implicate claims that are
12 no -- no longer part of the case, and when we first
13 discussed these, there wasn't the clarity that we have
14 now.
15             As of October 26, when there's no clarity
16 as to how Judge Jackson would decide the issue pertaining
17 to the counter-counterclaims, we took to heart your
18 guidance that the parties should meet and confer and work
19 something out that would clearly and equally apply to
20 both sides.
21             We took that to heart on our end and made
22 an earnest attempt to find something workable with the
23 plaintiffs while we waited for Judge Jackson's ruling.
24             If you see attached to our submission of
25 yesterday, we included a letter that we sent following

```
 1   the October 26 hearing to plaintiff, which we think
 2   reflected quite a bit of thought and effort on our part
 3   to try to find path forward to compromise while we waited
 4   for Judge Jackson's ruling.
 5                  THE COURT REPORTER:  I'm sorry, I'm
 6   sorry --
 7                  MS. BREWER:  Additionally, that --
 8                  Yeah?
 9                  (Court reporter clarification.)
10                  MS. BREWER:  We attached to our submission
11   yesterday a letter that we sent to plaintiffs on
12   November 2, following the October 26 hearing, to see if
13   the parties could find an acceptable path forward.  That
14   letter was not responded to.
15                  In fact, plaintiffs just turned around and
16   served these additional discovery requests on us,
17   exceeding the discovery limits, and they did so at their
18   own peril.  It turned out that Judge Jackson did not
19   agree with them, did not agree that the claims were
20   properly at issue in the case, and struck the claims.
21                  That means, in our point of view, and we
22   think Judge Jackson would agree, that this discovery may
23   not proceed.
24                  What --
25                  SPECIAL MASTER RODRIGUEZ:  All right.
```

```
 1                    MS. BREWER:  -- we believe --
 2                    Oh, I have one more point.  But if I --
 3                    SPECIAL MASTER RODRIGUEZ:  Okay.
 4                    MS. BREWER:  If I --
 5                    SPECIAL MASTER RODRIGUEZ:  You may -- but
 6      I'll let you make your final point.
 7                    MS. BREWER:  Yes.  And I -- the final
 8      point is, is we think it's just as important, which is
 9      that we believe in earnest that this -- this issue was
10      conclusively decided in our favor as of December 15, and
11      that was by the Article III judge, who set aside his own
12      time to have a Zoom hearing with the parties so that he
13      could make his view of the case and his view of the
14      schedule very, very clear to the parties, which he did.
15                    Based on that, we served the remainder of
16      our written discovery on December 31, believing the scope
17      of the case to be clear and believing that the parties
18      were on the same page, that the November 5 discovery had
19      been rendered moot.
20                    And we also agreed with plaintiffs at the
21      end of December to negotiate in good faith with them on
22      extension of the fact discovery schedule, believing it to
23      be premised on a mutual understanding that we were
24      proceeding on the scope of the case as Judge Jackson
25      articulated.
```

 1                 We thought the parties were on the same
 2     page, but the fact extension that we were negotiating was
 3     to give the parties time to take depositions and to get
 4     the case ready for expert discovery and to move on to our
 5     pretrial and trial.
 6                 And we have, as Your Honor knows -- or as
 7     you understand from the Tuesday hearing, we have served
 8     our notices on plaintiffs.  We've got a deposition on
 9     calendar for next week.  We have a third-party deposition
10     that's starting today.  We have on our end pivoted, in
11     line with Judge Jackson's guidance, to move the case
12     along to the deposition phase.
13                 So for plaintiffs to now open up and
14     create a new argument that was never once raised in 2020
15     as the foundation for this discovery, for discovery that
16     is so broad and so expansive and is essentially a redo of
17     everything that we just did in this case, we think that
18     this is going to be significantly prejudicial and violate
19     Judge Jackson's directive that we stay on track for a
20     2021 trial.
21                 The discovery requests that are included
22     at the end of that letter are not benign and they are not
23     straightforward.  They would blow the lid off of this
24     case.
25                 They would require new negotiations

```
 1    regarding custodians, with productions, with follow-on
 2    requests challenging the sufficiency of Charter's
 3    production, new privilege reviews, new privilege logs,
 4    new discovery price related to those additional hearings
 5    before you, challenges to the rulings that are made by
 6    you for the -- by the party that loses, and more hearings
 7    on those challenges, both with Judge Hegarty, Magistrate
 8    Judge Hegarty, and Judge Jackson.
 9                    For all of those reasons, we think that
10    this instant attempt to move to compel the
11    counter-counterclaim discovery should be denied.
12                    SPECIAL MASTER RODRIGUEZ:  Okay.  Thank
13    you, Ms. Brewer.
14                    All right.  Well, I will tell you, I also
15    am a little surprised to see this discovery request.  It
16    does appear to me to be a back-door approach to obtain
17    discovery on topics for which the Court has already
18    denied.
19                    I also read Judge Jackson's order as being
20    very clear.  I don't find Judge Jackson to be ambiguous
21    in much of anything that he does, and he was very clear
22    in this case that we're not going to expand the claims,
23    nor are we going to expand the time period.
24                    Each of these discovery requests seeks
25    information for a time period May 18, 2016 through
```

```
 1   April 30, 2020, which would expand the time period at
 2   issue in this case, and we're not going to do that.
 3                  So for the reasons articulated by
 4   Ms. Brewer, I am not going to order this discovery, and I
 5   believe that issue has been fairly and decisively ruled
 6   upon by Judge Jackson.
 7                  All right.
 8                  MS. BREWER:  Thank you.
 9                  SPECIAL MASTER RODRIGUEZ:  Is there
10   anything else?
11                  MS. BREWER:  No.  Ms. Brewer again.
12                  I'm pleased to report, we had mentioned to
13   you on Tuesday that the parties were negotiating a
14   deposition protocol, and we actually resolved our
15   remaining issues related to that as of last night, and so
16   we don't need to take up your time with that.
17                  SPECIAL MASTER RODRIGUEZ:  Terrific.
18                  MS. BREWER:  And --
19                  SPECIAL MASTER RODRIGUEZ:  Thank you.
20                  MS. BREWER:  Yep.
21                  More good news for you, which is that, you
22   know, we've also taken to heart, again, consistent with
23   everything that I just said regarding how serious we took
24   Judge Jackson's guidance regarding moving this case along
25   and focusing on what's important.  And so at this point
```

Telephonic Hearing
January 22, 2021

Page 92

```
 1                    REPORTER'S CERTIFICATE
 2
 3        I, K. MICHELLE DITTMER, Registered Professional
 4   Reporter and Notary Public, State of Colorado, do hereby
 5   certify that the said hearing was taken in machine
 6   shorthand by me at the time and place aforesaid and was
 7   thereafter reduced to typewritten form; that the
 8   foregoing is a true transcript of the proceedings had.  I
 9   further certify that I am not employed by, related to,
10   nor counsel for any of the parties herein, nor otherwise
11   interested in the outcome of this litigation.
12           IN WITNESS WHEREOF, I have affixed my signature
13   this 28th day of January, 2021.
14           My commission expires April 15, 2024.
15
16           _____
                       K. MICHELLE DITTMER
17              Registered Professional Reporter
                     Wilson & Associates, LLC
18
19
20
21
22
23
24
25
```