Exhibit 6

1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
   Case No. 19-cv-874-RBJ-MEH
3  _____

4  WARNER RECORDS, INC., et al.,

5       Plaintiffs,

6  vs.

7  CHARTER COMMUNICATIONS, INC.,

8       Defendant.
   _____
9

10            Proceedings before MICHAEL E. HEGARTY, United

11 States Magistrate Judge, United States District Court for the

12 District of Colorado, commencing at 10:01 a.m., December 18,

13 2020, in the United States Courthouse, Denver, Colorado.

14 _____

15 WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN

16 TYPOGRAPHICALLY TRANSCRIBED. . .

17 _____

18                     APPEARANCES

19            JONATHAN M. SPERLING, MATTHEW J. OPPENHEIMER, NEEMA

20 SAHNI and JEFF GOULD, Attorneys at Law, appearing for the

21 Plaintiffs.

22
   _____
23

24                     MOTION HEARING

25
```

2

```
1                    APPEARANCES (continued)

2            ANDREW H. SCHAPIRO, CRAIG JOYCE, NATHAN HAMSTRA and

3    LINDA BREWER, Attorneys at Law, appearing for the Defendant.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

82

 1    Rodriguez's October 8 order and it pertains to just one

 2    issue.

 3            THE COURT:  Yeah, well, I'm glad you brought that

 4    up because within our own internal recordkeeping processes,

 5    it is not marked as any obligation that I have.  So honestly,

 6    I hate to burst anybody's bubble, but I do not scour the

 7    docket of this case on a regular basis so that's news to me.

 8            Summarize the issue, please, Mr. Oppenheim -- or

 9    Jeff, why don't you just summarize the issue.

10            MR. GOULD:  Actually, I think I'll pass the baton

11    on this one.  Is that Jonathan or Matt?

12            MR. SPERLING:  Your Honor, the issue is that -- and

13    I'm only getting to this right at a high level, actually,

14    probably we can play musical chairs, Ms. Sahni can speak to

15    this in a little bit more detail, so I will sit.

16            MS. SAHNI:  Thank you, Your Honor.  So this is an

17    issue about some source data for which there are two

18    interrogatories that Charter was required to answer:

19    Interrogatories 13 and 14, I believe.  And they later

20    disclosed that they got certain -- that information from

21    certain source data that was different from what we thought

22    they had and apart from what they represented they have in

23    terms of remaining ticket data.  And so we had an issue where

24    they then produced the source data, but they did so in a

25    heavily redacted form, so much so that very little of the

83

 1   document is actually visible.  And we disagree with the

 2   notion more generally of being able to redact what they claim

 3   to be nonresponsive information in an otherwise responsive

 4   document.

 5           And secondarily, we don't believe the other

 6   information is itself nonresponsive.  So we teed that issue

 7   up to Ms. Rodriguez and she had allowed them to produce the

 8   source data document in redacted form.  They did so.  We

 9   provided a copy to your Chambers.  And as you will see when

10   you look into this issue, it's heavily redacted.  We

11   challenge those redactions on the grounds I just noted.

12           And to be clear, Your Honor, the redactions are not

13   privileged redactions.  These are what they admit are

14   responsiveness redactions in their view.

15           THE COURT:  Well, I mean, I will acknowledge that

16   it is quite -- it is not my custom, nor any other judges I

17   know, that would permit parties to redact nonresponsive

18   information out of a responsive document.  They can redact

19   privileged information, confidential information such as

20   health information protected by HIPAA, but you generally

21   don't get to produce documents and then redact nonresponsive

22   information.  The nonresponsive information just won't become

23   part of the trial, but in every document production, in every

24   exchange of information of documents, at least, there's bound

25   to be portions that are not responsive.  They might be

84

1    talking about what they are going to have for lunch in an

2    e-mail stream, in addition to talking about facts material to

3    the case.  We don't require, even allow, that to be redacted.

4           So what's the basis -- I mean, what's the logical

5    basis for the --

6           MR. SCHAPIRO:  So, Your Honor --

7           THE COURT:  Go ahead.

8           MR. SCHAPIRO:  The reason the Special Master in

9    this case allowed us to redact is that the very document

10   itself is not responsive to a request for information.  This

11   is a document -- we were ordered to show -- to produce

12   something that showed what we relied on in preparing an

13   interrogatory response.  So, you know, it's essentially, you

14   know, information sufficient to show.

15          And so we said, Well, in order to could come up

16   with what we relied on, I guess we went back and we looked at

17   this big spreadsheet to provide our interrogatory response,

18   but this spreadsheet has a whole bunch of other stuff on it.

19   And she said, In those circumstances, just produce the parts

20   that you relied on.  And that seems like a perfectly

21   reasonable and fair thing and that's why we are here.

22          MR. OPPENHEIM:  So, Your Honor, I'm sorry --

23          THE COURT:  Matt, Matt, hold on a second before you

24   respond.

25          MR. OPPENHEIM:  (Inaudible) for production and not

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

85

1   an interrogatory.

2           THE COURT:  Whoever is going to respond for

3   plaintiff, let me throw this out.  Again, just like

4   information that I talked about with Jonathan, where I have

5   to rely on the good faith of an attorney to follow my orders,

6   if the Special Master said produce responsive information but

7   you don't have to produce nonresponsive, then as a general

8   matter we are going to not question that.  We are not going

9   to have to go into the process by which counsel chose what is

10  responsive and what is not responsive.

11          I mean, you guys are -- you are fighting against

12  one another over the same thing, accusing each other and

13  wanting the same material from each other again and again and

14  again.

15          I mean, people who live in a glass house shouldn't

16  throw stones, so I have got to treat you all equal.

17          MR. OPPENHEIM:  Respectfully, Your Honor, that's

18  not -- that's not -- and this is Matt Oppenheim.  That's not

19  at all the situation here.  And this goes back to the fact

20  that Charter has virtually no ticket data.

21          And just to put it in context, in the Cox case, we

22  had all of the ticket data related not only to the notices

23  that the plaintiffs themselves had sent, but that other

24  rights holders had sent for the claim period.  Here, we have

25  less than 11 percent of the ticket data related to our

86

 1   notices and virtually nothing else.

 2          So what we would ask for -- we asked for was

 3   summary statistics about notices they received and what they

 4   did in response to those notices.  Also when they received

 5   other abuse-type violations because ISPs view copyright

 6   infringement as one of many different types of abuse.  Other

 7   types of abuse are spamming and DUS attack -- DNS attack, so

 8   on and so forth.  So they have all of these different types

 9   of abuse and they usually generate tickets for them and they

10   take actions for them.

11          So we said, if you can't give us the ticket data,

12   give us summaries, whatever summaries you have of that abuse

13   information, and they gave us very little at first.

14          Then later they were ordered to produce additional

15   information and they suddenly came up with these (inaudible)

16   numbers that we had not seen in the summary spreadsheets.

17   And we said, Wait a minute, what you are telling us in an

18   interrogatory response is inconsistent with the documents you

19   have produced, so obviously you have data that you are not

20   producing.  So where did that data come from?  And they said,

21   Well, we have a masters -- they finally disclosed that that

22   they had a spreadsheet and then they chose to -- so they were

23   ordered to -- they were asked to produce that by virtue of

24   two different requests.

25          One is we had a request for summary statistics

1  because they didn't have ticket data.  We also had a request

2  that said, To the extent that you have answered an

3  interrogatory based on documents, give us the underlying

4  documents.  So there were two different requests.

5          What Ms. Rodriguez did, contrary to what I have

6  ever had in any court, she said, It's okay for them to redact

7  out nonresponsive information in a document that has nothing

8  to do with PII, HIPAA or privilege.  And we said, Wait a

9  minute, but that goes to the other abuse claim.  She said,

10  Well, that's not in the interrogatory response.

11          Your Honor, they should produce this on either of

12  the two interrogatories -- the requests for production bases

13  incomplete without any redactions.  And the idea that Ms.

14  Rodriguez could order that they wouldn't be allowed to redact

15  the relevance, I frankly think is contrary to the law.

16          It's not, as you suggest, Your Honor, picking and

17  choosing how you get to certain information.  They have a

18  spreadsheet, they have given us part of it, and especially in

19  the context of a spreadsheet where you can't understand the

20  entirety of it unless you see the entirety of it

21          MR. SCHAPIRO:  Your Honor, I don't, first of all,

22  understand what the prejudice is to opposing counsel, if it's

23  nonrelevant data that is redacted, but the Special Master had

24  a good reason for making this decision and certainly did not

25  abuse her discretion in making that decision.  This is

88

1   sensitive business data from a massive spreadsheet related to

2   years.

3            THE COURT:  Oh, my gosh, hold on.  I still see

4   them.

5            (Court lost connection.)

6            THE COURT:  We are back on.

7            MR. SCHAPIRO:  I'm not sure why I lost you, but I

8   was saying that the Special Master, her decision had a

9   rational basis.  It certainly was not an abuse of discretion.

10  The material that she permitted us to redact contains -- in a

11  massive spreadsheet, contains post-2016 data.

12           THE COURT:  Okay, so --

13           MR. SCHAPIRO:  Post-2016 information that we would

14  like --

15           THE COURT:  Yeah, hold on a second.  How long is

16  this report?

17           MR. SCHAPIRO:  Someone else may need to tell me.  I

18  don't know.

19           MS. SAHNI:  Your Honor, it was e-mailed to your

20  Chambers on November 3.  There was an e-mail sent from

21  someone, a member of our team, John Hardy Ellers (ph).

22           THE COURT:  Yeah.

23           MR. OPPENHEIM:  That was the redacted version,

24  right?

25           MS. SAHNI:  It was the redacted version.

89

1              THE COURT:  I'm still going to stay with my

2    question.

3              MS. SAHNI:  It had a whole number of lines so you

4    could see --

5              THE COURT:  Right.

6              MS. SAHNI:  -- how large.  It's just a spreadsheet.

7    The time-stamp, I believe, would be 241 Mountain.  Helpful?

8              THE COURT:  I can't access -- it's difficult

9    accessing my e-mail from the bench is the problem.  So how

10   long is it?

11             MS. SAHNI:  I will open it up and let you know how

12   many lines I see that's redacted.

13             MR. SCHAPIRO:  And sheets.

14             MS. BREWER:  This is Linda Brewer.  I don't know

15   that -- if the question is what is the volume of data in the

16   spreadsheet, it is, I believe, characterized in our briefing

17   which I'm trying to pull up, but I think it's fair to say

18   it's tens of thousands of fields of data, but the reason for

19   that is because this is essentially a database hold, so this

20   is a -- or, you know, what is sometimes referred to as a

21   database dump.  And the portions that are redacted are the

22   post-2016 time period, because as you could see from what is

23   unredacted, there is a field for each month of the year and

24   that continues on past the 2016 time period.

25             MS. SAHNI:  Your Honor, if I may, I have pulled up

1    the document now.  It is about 300 lines of data on the first

2    tab and then there's about seven or eight tabs that follow.

3    And if you look at the redactions and you are able look at it

4    in chambers, as it may be, you will see that the redactions

5    are not limited to post-2016 information.

6              I'm looking at a column right now that talks about,

7    for example, November 2012, and all but, I believe, five

8    lines -- or six lines were redacted and that is squarely

9    within the discovery period.

10             So that is not the sole basis for the redactions

11   and they have never taken that position.  They claim it is

12   nonresponsive and confidential.  We have a protective order

13   in this case with a highly confidential Attorneys' Eyes Only

14   designation, so that's (inaudible) upon which the parties

15   have been permitted to redact in this case.

16             THE COURT:  Give me the page you are relying on

17   again.

18             MS. SAHNI:  Your Honor, the document itself was

19   sent to you via e-mail.

20             THE COURT:  No, I have it on the screen, so I --

21             MS. SAHNI:  So if you look at the very first tab,

22   it's called Charter Rom Metrix and that is the only tab they

23   have provided in any unredacted form and that still only has

24   1, 2, 3, 4, 5, 6 lines of data that are unredacted.  The

25   remaining tabs have been redacted in full.

91

1              If you look at the bottom, it just says:  Redacted
2    1, 2, 3, 4, 5, 6, 7 and 8.  So they have only provided one
3    tab of this document, and within that one tab, they have
4    provided 6 lines of data.  And if you look at the top, they
5    have --
6              THE COURT:  Hold on.  I want to make sure I'm
7    seeing what you are.  So ███████████████████, is that
8    one line of data you are saying?
9              MS. SAHNI:  Correct.
10             THE COURT:  ██████████████████████████████
11   ███████████████████████████████ and then three
12   lines, one beginning with 418756 -- wait, wait, hold a
13   second.  Okay, then ██████████████████████ is that
14   correct?
15             MS. SAHNI:  Yes, other than the 6 lines of data.
16             THE COURT:  Okay.
17             MS. SAHNI:  If you see the remainder, it's all
18   blacked out.  Those are the redactions that they have
19   applied.
20             THE COURT:  And I'm looking at a total of 363
21   entries; is that correct?
22             MS. SAHNI:  On that first tab, I do see 300 and --
23   yes -- 63, is where the redactions seem to go.
24             THE COURT:  So tab A, correct?
25             MS. SAHNI:  Correct.

92

1           THE COURT:  And then there's a tab --

2           MS. SAHNI:  And the other --

3           THE COURT:  Tab B.  Then N, O, P, Q, R, S is what I

4    see.

5           MS. SAHNI:  So as I see tabbed, the next few sheets

6    are all redacted and they are called Redacted 1, 2, 3, 4, 5,

7    6, 7, 8.

8           THE COURT:  Well, I have 2, 3, 4, 5, 6, 7.  Yeah,

9    it's difficult for me to understand what this is, not having

10   seen it.

11          MR. SCHAPIRO:  Your Honor, we do have a brief filed

12   on this, so our brief is filed as well if the Court wants to

13   consider them.  People who are a little closer to it than I

14   am had the main input on this.

15          THE COURT:  All right, yeah.  So what I want to do

16   here is -- again, it's unusual to be able to redact

17   nonresponsive.  This is a little bit out of the ordinary

18   where you are not just blacking out certain lines of a memo

19   or an e-mail, it's a little different.  So the normal

20   analysis wouldn't necessarily apply, but what I do want you

21   to do, Mr. Schapiro, is use Attorneys' Eyes Only some small

22   sampling of redacted material to one lawyer for the plaintiff

23   just for purpose of this process.  So you plaintiffs choose a

24   lawyer.

25          MS. SAHNI:  You can send that to me, Neema Sahni.

93

1          THE COURT:  You are not to share with anybody else.

2    Understand?

3          MS. SAHNI:  Understood.

4          THE COURT:  I just want you to be able to see what

5    is not redacted, copy me on that.  Then if you believe

6    there's some further argument to be made, it better be a good

7    argument, okay?  You better, in that -- in any -- I mean, I

8    don't know what to say -- produce 2, 3, 4, 5, 6 and 7.  It's

9    hard to show you what I'm looking at.  I can't even share

10   screen, I don't think.

11         Do we even have a share screen function on this?

12   We don't think we do.

13         MS. SAHNI:  Your Honor, if there's a way to come up

14   with a more random sample, the concern would be that they

15   would pick lines that they believe are the most defensively

16   nonresponsive.

17         THE COURT:  I'm picking the lines right now.  So

18   just tell me what you would -- tell me a very small portion

19   and I will see if that's okay.

20         MS. SAHNI:  I think it would be helpful to maybe

21   get every -- maybe even fifth line of the first tab.

22         THE COURT:  Okay.  Every fifth line of the first

23   tab for your eyes only and then if we need --

24         MS. SAHNI:  And --

25         THE COURT:  If you have something to raise with me,

94

1    then I will go back on a record with one -- with you and with

2    one defense counsel in probably a closed proceeding or a

3    restricted proceeding with a restricted transcript that would

4    be available at the moment just to the Court.

5            So what restriction level is that?

6            MS. SAHNI:  Sorry, Your Honor, if I may, I just

7    want to clarify.  So I meant every fifth line of data, but we

8    would like to make sure we can see the titles of the tabs and

9    of the rows and columns.  Otherwise, it's hard to assess

10   what's actually being redacted.

11           THE COURT:  Mr. Schapiro, do you understand what

12   she is asking for?

13           MR. SCHAPIRO:  I do, I think.  I hope other people

14   on the call do.  Every fifth line including -- and the title

15   on the (inaudible).

16           MS. SAHNI:  Correct.  So all of titles of the rows

17   and the columns and the tabs as well as every fifth line of

18   data.

19           MR. SCHAPIRO:  Okay.

20           UNIDENTIFIED SPEAKER:  I'm sorry, was it every tab

21   or the first tab?  I wrote down the first tab.

22           MR. SCHAPIRO:  The first tab.

23           MS. SAHNI:  The title of the remaining tabs,

24   because you have redacted the titles, even the titles of the

25   remaining tabs, so we don't even know what data is in tabs 1

95

1    through 8.  So I would ask that the titles of the remaining

2    tabs, not the row and column information therein, but at

3    least the titles of the tabs included.

4              MR. SCHAPIRO:  Your Honor, and I thought your

5    original proposal was adequate.

6              THE COURT:  Yes.  Well, I mean, it's also not very

7    informed.  So I mean, we are talking about nonresponsive, so

8    I think in order to quench her interest in this thing, then

9    that would be a better way of proceeding.  So who would be

10   the defense counsel in any further discussion on this issue?

11             MR. SCHAPIRO:  I'm going to say on our side it

12   should be Linda Brewer or Allison Huebert.  Maybe one of them

13   can speak up or raise a hand or something or send me a text

14   so it's definitely not me.

15             THE COURT:  I'm going -- not going to -- you can

16   choose at the relevant time.  The plaintiffs have already

17   chosen.

18             MR. SCHAPIRO:  All right.

19             THE COURT:  But again, I mean, I can see why in

20   this context the Special Master, you know, if she had a

21   vision of what this spreadsheet was, might have made that

22   order.  I just also -- you know, because it is a little bit

23   unusual to withhold nonresponsive information as opposed to

24   other sorts of information that we traditionally permit to be

25   redacted, I just want them to understand that you made the

1    right call.  And so it's Attorney's Eye Only, one lawyer for

2    the plaintiff, and then if there's a matter to be raised,

3    please e-mail chambers or call chambers and request another

4    conference in which we will go on a restricted record.  Okay?

5              MR. SCHAPIRO:  Okay.

6              MS. SAHNI:  Thank you, Your Honor.

7              THE COURT:  What else?

8              MR. SPERLING:  Nothing for the plaintiffs, Your

9    Honor.  We appreciate the extensive amount of time you have

10   given us today.

11             THE COURT:  Okay.  You said that last time, nothing

12   else.  You mean it this time?

13             MR. SPERLING:  Nothing for the next five minutes,

14   Your Honor.

15             THE COURT:  Okay.

16             MR. SCHAPIRO:  I think that's it for us as well,

17   Your Honor.

18             THE COURT:  I'm going to go over with you what I'm

19   going to confer with Judge Jackson on and I will e-mail, I

20   guess, Mr. Gould -- or Mr. Sperling and Mr. Schapiro.

21             That is a relief from any pre-briefing letter

22   requirement; inquiry into whether Judge Jackson would

23   entertain a preliminary summary judgment motion on the safe

24   harbor issue.  No one raised any other issue with me on that.

25   And then a suggestion that the trial preparation date in

100

```
1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    December 30, 2020

8    Signature of Transcriber                    Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```