**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al*., <br><br> Plaintiffs, <br><br> *v.* <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 1:19-cv-00874-RBJ-MEH |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S JANUARY 28, 2021 ORDER REGARDING <u>PRIVILEGE LOG ITEM 28</u>**

Defendant Charter Communications, Inc. ("Charter") respectfully objects to the Magistrate Judge's January 28, 2021 order (Dkt. 345) requiring Charter to produce Item 28 of Charter's privilege log—which consists of an internal presentation in which Charter attorneys communicated privileged information to Charter personnel and an associated transmittal email. Because Item 28 contains the legal advice, opinions, and direction of Charter's in-house counsel regarding Charter's rights and obligations under the DMCA, was appropriately labeled "attorney-client privilege," and was transmitted to only that subset of employees for whom the information was pertinent, the presentation falls squarely within the protection of the attorney-client privilege.

The Special Master initially decided that Item 28 should be produced because it addressed unprotected "business" (rather than legal) advice based on her review of an incomplete version of the presentation that inadvertently excluded detailed page-by-page notes drafted by Charter's in-house counsel. Though the Special Master subsequently granted Charter's request that it be permitted to submit, for consideration, the full version of the presentation including the notes

1

containing in-house counsel's legal advice, the Special Master ultimately ordered its production without providing updated discussion or reasoning. Following Charter's objection to her order, the Magistrate Judge affirmed the Special Master's order on January 28, 2021 based on Plaintiffs' briefing without first reviewing the presentation *in camera* and without providing any discussion or reasoning.

Because Item 28 contains legal advice by Charter attorneys to Charter employees, and because of the sensitivity and importance of this privilege issue to Charter, Charter respectfully requests that the Court reverse the Magistrate Judge's order and allow Charter to maintain privilege over Item 28. In the alternative, Charter requests that the Court permit Charter to redact the portion of the materials containing the legal opinions of its in-house counsel relating to Charter's rights and obligations under the DMCA.[1]

## PROCEDURAL BACKGROUND

On July 13, 2020, Charter provided Plaintiffs with a privilege log describing items withheld from Charter's ongoing production of documents on attorney-client privilege and work product grounds. (Dkt. 329-2). At issue in this motion are two documents logged as "Item 28," which Charter describes on its log as a "[p]artially redacted email transmitting [an] internal presentation attachment with notes reflecting legal advice from [in-house attorneys] Kelly Starkweather and Kirill Abramov regarding [Charter's] copyright program." (*Id*. at 5; Dkt. 252 at 3). The subject of the email is "SRT DMCA Legal Questions and Answers," and the first page of the internal presentation cautions that it is "Subject to Attorney-Client Privilege." The presentation was for

---

[1] Concurrent with this filing, Charter will submit a copy of Item 28 to the chambers of Judge Jackson *in camera*, so that the Court may review the document.

Charter's Internet Security and Corporate Security Resolution teams. Charter has at all times maintained that Item 28 is protected from disclosure by the attorney-client privilege.

On September 1, 2020, following Plaintiffs' objection to Charter's claim of privilege over the presentation, Charter provided Item 28 to the Special Master for *in camera* review, along with a declaration confirming it had been shared only internally with Charter personnel and not with third parties. (Dkt. 329-6; 329-7; 329-8.). Due to an inadvertent error relating to how the presentation was pulled from counsel's document review system, however, the version Charter supplied to the Special Master omitted speaker notes that are visible in the native PowerPoint format but which do not appear in the PDF version of the presentation. (Dkt. 329-9). These omitted notes were the "notes reflecting legal advice from [in-house attorneys] Kelly Starkweather and Kirill Abramov regarding [Charter's] copyright program" that were described in Charter's privilege log. (Dkt. 329-2 at 5.)

Unfortunately, this error was not discovered by Charter's counsel until after the Special Master issued her initial ruling on October 2, 2020, finding that the primary purpose of the presentation was to "provide direction to members of Charter's security teams regarding Charter's copyright program," which the Special Master distinguished from providing "specific legal advice." (Dkt. 252 at 3–4). The Special Master based her determination in part on her finding that the recipients "were not instructed that the communication was protected by the attorney-client privilege" (*id*. at 4), which appears to have been an oversight given that the first page of the presentation is clearly labeled "Subject to Attorney-Client Privilege." The Order was stayed pending appeal to the Magistrate Judge. (*Id*. at 1).

3

Upon discovering that the version of Item 28 that the Special Master had reviewed did not contain the notes from Charter's in-house counsel supporting its assertion of privilege, Charter promptly requested permission to present the native version to the Special Master for additional review. (Dkt. 329-9.) The Special Master granted that request. (Dkt. 329-10.) Months later, at a hearing on December 21, 2020, which was convened to address other matters, the Special Master ordered that Item 28 be produced, stating, without addressing Charter's arguments, that the updated submission of the corrected documentation did not alter her prior determination. (Dkt. 331-2, 12/21/20 Hr'g Tr. at 42:2–6.) Charter submitted a written objection to the Magistrate Judge within five business days of this decision, as required under the order appointing the Special Master. (Dkt. 329; *see* Dkt. 143 ¶ 5 (allowing objections five business days from the date on which the Special Master's order is served)).

At a January 28, 2021 hearing, the Magistrate Judge denied Charter's objection. (Dkt. 345). He did so without requesting review of Item 28 *in camera*, and without hearing any oral argument on the issue, instead stating that he would affirm Special Master "for the reasons stated in Plaintiffs' brief." (Ex. 1, 1/1/28 Hr'g Tr. 32:21–23; Dkt. 345).

## ARGUMENT

### I. CHARTER SHOULD NOT BE REQUIRED TO PRODUCE ITEM 28

Charter respectfully submits that the determination that Privilege Log Item 28 is not privileged warrants reversal so that Charter's attorney-client privileged communications are afforded necessary protection. This Court may review non-dispositive orders of the Magistrate Judge for clear error and may "set aside any part of the order that . . . is contrary to law." Fed. R.

Civ. P. 72(a); *see Smith v. Dwire Co*, No. 04-cv-02182, 2006 WL 8454325, at *1 (D. Colo. Mar. 2, 2006).

### A. The Attorney-Client Privilege Applies To Item 28

The attorney-client privilege protects from discovery communications between a client and an attorney, including those by an in-house counsel, that were "made to obtain or deliver legal advice and were treated as confidential." *Lang v. Intrado, Inc.*, 2007 WL 4570558, at *2 (D. Colo. Dec. 26, 2007).[2] Indeed, the attorney-client privilege is the "the oldest of the privileges for confidential communications known to the common law," and encourages "full and frank communication between attorneys and their clients … thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Legal advice or opinion from an attorney to his client, individual or corporate, has consistently been held by the federal courts to be within the protection of the attorney-client privilege." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (quotations omitted). The two documents that constitute Privilege Log Item 28 meet these requirements.

These documents were prepared for the purpose of delivering legal advice from attorney to client. Mr. Abramov and Ms. Starkweather were both in-house counsel for Charter at the time the documents were created, and their opinions on legal issues were contained in the presentation's notes. A review of the substance of the presentation and associated attorney notes demonstrate that these documents were made for the purpose of delivering legal advice to Charter. *See, e.g.*, *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995) (draft memo originating from

---

[2] In cases arising under the Court's federal question jurisdiction, such as this one, federal common law applies to issues of attorney-client privilege. *Austin v. City & Cty. of Denver ex rel. Bd. of Water Comm'rs*, 2006 WL 1409543, at *4 n.2 (D. Colo. May 19, 2006); *see also* Fed. R. Evid. 501.

legal department and proposing "guidelines for implementation of involuntary terminations" was privileged legal opinion, rather than business advice); *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1174-76 (D. Nev. 2005) (email between employee and in-house counsel regarding termination of internet service for particular customers was found to have "the primary purpose of … discern[ing] the legal ramifications of a potential course of action" and was "unquestionably protected by the attorney-client privilege").

Consistent with this purpose, the documents comprising Privilege Log Item 28 were intended to be kept privileged and confidential. The presentation itself was specifically marked "CONFIDENTIAL," "Internal Only," and "Subject to Attorney-Client Privilege," alerting the employees to whom it was distributed of its confidential and privileged nature. Further, the recipients of the email and presentation were limited to the subset of Charter's employees to whom the advice was directed, which did not include third-parties. (Dkt. 329-7; 329-8). More specifically, the "DL Corp Internet Security" and the "DL Corp SRT" distribution lists were used by the Internet Security and Corporate Security Resolution teams which are two internal teams at Charter charged with network security operations and are comprised exclusively of Charter staff.

The evidence of record demonstrates that the communications relevant to Privilege Log Item 28 were "made to obtain or deliver legal advice and were treated as confidential," and therefore that the documents should be deemed privileged. *Lang*, 2007 WL 4570558, at *2.

6

### B.     Requiring Charter to Produce Item 28 is Contrary to Law

#### 1.     The Magistrate Judge's Order Cannot Be Sustained Based On the Arguments in Plaintiffs' Briefing.

To the extent the Magistrate Judge's order was based on the arguments set forth in Plaintiffs' briefing (Dkt. 331 at 8–12), Charter respectfully requests that the Court overrule the ruling as contrary to law.

In the underlying Special Master hearing, the Special Master concluded that the "purpose of the communication at issue in Item 28 appears to be the dissemination of business, not legal advice."  (Dkt. 252 at 3.)  In support of that finding, the Special Master explained that the communication "was sent by a non-lawyer to a number of unknown Charter employees" and that a non-lawyer may have assisted in its preparation, that "[t]he recipients were not instructed that the communication was protected by the attorney-client privilege," and that "the email and attached presentation appear to provide *direction* to members of Charter's security teams regarding Charter's copyright program rather than to seek or provide specific legal advice."  (Dkt. 252 at 3–4 (emphasis in original).)

However, as a factual matter, the recipients of Item 28 were instructed that the communication was protected by attorney-client privilege.  The first page of the presentation states that it was "CONFIDENTIAL," "Internal Only," and "Subject to Attorney-Client Privilege."  The email forwarding the presentation likewise advised in its subject line that it concerned "SRT DMCA Legal Questions and Answers."

The other two reasons underlying the Special Master's ruling—that the communication was transmitted by a non-lawyer to other non-lawyers, and that "the email and attached presentation appear to provide direction to members of Charter's security teams regarding

7

Charter's copyright program rather than to seek or provide specific legal advice"—are inconsistent with the substance of the documents and the applicable law regarding privilege. The fact that advice from Charter's lawyers was transmitted by and among non-lawyers does not alter the legal nature of the advice contained in the presentation, which was drafted by Charter's in-house counsel. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) ("[D]ocuments subject to the privilege may be transmitted between non-attorneys … so that the corporation may be properly informed of legal advice and act appropriately.") (internal quotations and citation omitted).

And the conclusion that Privilege Log Item 28 "appear[ed] to provide *direction* to members of Charter's security teams . . . rather than to seek or provide specific legal advice" is inconsistent with the in-house counsel attorney notes contained within the presentation. After all, the purpose of nearly all "legal advice" is to provide a client with direction as to how the client should act, a point that is made explicit by one of the two cases the Special Master cited. *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 3055774, at *2 (D. Colo. May 23, 2018) ("The attorney-client privilege extends only to confidential matters communicated between the attorney and his or her client in the course of receiving . . . *direction with respect to the client's rights or obligations.*" (emphasis added)); *see also Motley*, 71 F.3d at 1550 (finding privileged a document from the legal department that "proposed guidelines for implementation of involuntary terminations").

In their briefing before the Magistrate Judge, Plaintiffs did not disagree with any of this, instead arguing that Charter was wrong to characterize the Special Master's order as actually turning on any one of the reasons noted above. Instead, according to Plaintiffs, these reasons

8

merely "support[ed the Special Master's] review-based conclusion that the document was prepared primarily for business reasons." (Dkt. 331 at 10; *id.* at 8–12.)

But the Special Master's conclusion, that the "document was prepared primarily for business reasons," was based on the specific reasons she provided: namely, that the presentation was not labeled privileged when sent (though in fact it was so labeled), the fact that it was sent by and among non-lawyers and that a non-lawyer may have assisted lawyers in drafting it, and that it "appear[ed] to provide *direction* . . . rather than to seek or provide specific legal advice." (Dkt. 252 at 4; *id.* at 5 (stating, with reference to these reasons, that "*[t]herefore*, Charter has not met its burden to demonstrate that Item 28" is privileged (emphasis added)).  It is Plaintiffs who have failed to "actually address the [Special Master's] October 2 Ruling," Dkt. 331 at 12, because Plaintiffs ask for that ruling to be affirmed without addressing the specific reasons that formed the basis for the ruling.

In sum, the presentation included the legal opinions of Charter's in-house counsel regarding Charter's rights and obligations under the DMCA and was communicated to a subset of employees for whom the information was pertinent, and no one else.  This brings the documents within the protection of the attorney-client privilege.  *See, e.g.*, *Motley*, 71 F.3d at 1550; *Premiere Digital*, 360 F. Supp. 2d at 1174-76.  The Magistrate Judge's order upholding the Special Master's earlier order, therefore, was contrary to law.

        2.     <u>Charter's Motion Was Not Untimely.</u>

Plaintiffs also raised a procedural argument before the Magistrate Judge, arguing that to the extent Charter's objection is based on reasoning in the Special Master's October 2, 2020 order, that objection was untimely. (Dkt. 331 at 6–8.).  Because the Magistrate Judge merely referred to

9

the "reasons stated in the plaintiffs' brief" generally, Ex. 1, 1/28/21 Hr'g Tr. 32:21–23, it is not clear whether his order was based on this argument or on the substance of the Special Master's order. In any event, Plaintiffs' procedural argument is baseless.

Charter's motion was filed within five business days of the Special Master's December 21, 2020 order. (Dkt. 143 ¶ 5 (allowing objections five business days from the date on which the Special Master's order is served). That order was issued after Charter notified the Special Master that her previous order was based on a review of an incomplete version of the presentation, due to a technical error related to the processing of the presentation, which Charter's counsel raised and corrected as soon as Charter became aware of the problem. The Special Master agreed to Charter's request that she undertake a second *in camera* review based on the full presentation. (Dkt. 329-10.). This was an appropriate exercise of the Special Master's discretion. (*Id.*).

Plaintiffs are therefore wrong to argue that the Special Master's December 21, 2020 order should be reviewed under the same standard as the denial of a motion for reconsideration pursuant to Federal Rule 54(b). (Dkt. 331 at 6–8.) Charter's email informing the Special Master she had inadvertently reviewed an incomplete version of the presentation (through no fault of her own) was not styled as motion for reconsideration, and in fact Charter's only request was for "permission to present to [the Special Master] *in camera* the [correct] version of Item 28 . . . in the event that the additional information impacts [her] evaluation of the document." (Dkt. 329-10.). To the extent this was a motion for reconsideration, the Special Master granted that motion on October 21, 2020, when she agreed to undertake a second *in camera* review. (*Id.*)

Following her *in camera* review of the full presentation, the Special Master ordered Charter to produce Privilege Log Item 28 on December 21, 2020. (Dkt. 331-2 (12/21/20 Hr'g Tr. 42:2–

6.) The December 21, 2020 order was therefore the operative order, and it was proper for Charter to object to it within five business days. That the December 21, 2020 order was based on reasoning explained in the Special Master's October 2, 2020 order does not make Charter's objection untimely.

## II. IN THE ALTERNATIVE, THE COURT SHOULD PERMIT CHARTER TO REDACT THE PORTION OF THE MATERIALS THAT THE COURT DETERMINES TO BE PRIVILEGED

In the event the Court finds that the presentation should be produced, Charter should be authorized to redact the portion of the materials containing advice of legal counsel, including in-house counsel's notes that are contained in the presentation. *See, e.g.*, *Bonanno v. Quizno's Franchise Co., LLC*, 2008 WL 1801173, at *3-6 (D. Colo. Apr. 18, 2008) (determining that "a portion of some of the documents are protected by the attorney-client privilege" and ordering redaction); *Kirsch v. Brightstar Corp.*, 68 F. Supp. 3d 846, 853 (N.D. Ill. 2014) (permitting redaction under attorney-client privilege as to documents containing both privileged and non-privileged materials).

## CONCLUSION

For the reasons stated above, Charter requests that the Court sustain its objection and reverse the January 28, 2021 Order by the Magistrate Judge (Dkt. 345) requiring the production of Item 28 of Charter's privilege log.

Dated: February 9, 2021                                        Respectfully submitted,

Jennifer A. Golinveaux                                         */s/ Andrew H. Schapiro*
WINSTON & STRAWN LLP                                           Andrew H. Schapiro
101 California Street, 35th Floor                              Nathan A. Hamstra
San Francisco, CA 94111                                        Allison Huebert
(415) 591-1506 (telephone)

11

(415) 591-1400 (facsimile)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
Email: melkin@winston.com


Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
Email: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
Email: cjoyce@fwlaw.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
Email: andrewschapiro@quinnemanuel.com
Email: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

*Counsel for Defendant*
*Charter Communications, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 9, 2021, I caused a true and correct copy of the foregoing and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro