**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

WARNER BROS. RECORDS INC., *et al.*,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant

Case No. 19-cv-00874-RBJ-MEH

**PLAINTIFFS' MOTION FOR CLARIFICATION OF COMMENTS FROM STATUS CONFERENCE FOLLOWING DENIAL OF DEFENDANT'S MOTION TO COMPEL PRODUCTION OF THE HASH REPORT**

At the January 28, 2021 status conference, Defendant orally sought "clarification" of Your January 7, 2021 Order, ECF No. 332 (the "Order"), denying Charter's Motion to Compel Production of the Hash Report (the "Motion," ECF No. 266). In the course of seeking that "clarification," Defendant reargued the Motion the Court had denied and elicited generalized statements that now may create some confusion. Accordingly, and pursuant to the Court's direction during a February 8, 2021 videoconference, Plaintiffs bring this motion to clarify that the Order does not preclude Plaintiffs from introducing and relying on the evidence Plaintiffs have produced from the 2016 MarkMonitor download project.

***The Court's Order.*** Charter's Motion argued that (i) Charter's alleged need for the Hash Report and inability to obtain substantially equivalent information through other means overcame Plaintiffs' work product claims, and (ii) Plaintiffs waived work product protection over the Hash Report by producing files downloaded during the 2016 download project while withholding the Hash Report (*i.e.*, alleged sword/shield). Charter's Mot. to Compel Production

of Documents 9-14 (ECF No. 266). In response to the second point, Plaintiffs made clear they do not intend to rely on the Hash Report itself, nor on the fact of having conducted an investigation in 2016, in aid or furtherance of their claims and defenses. Pls.' Opp. to Charter's Mot. to Compel Production of Documents 8-9 (ECF No. 287). Rather, Plaintiffs have produced all the evidence from the 2016 download project on which they intend to rely by producing all of the downloaded files. *Id.*

As the Court will recall, the 2016 download project involving MarkMonitor developed several thousand files' worth of evidence. As Plaintiffs explained during the hearing, Plaintiffs intend to affirmatively rely on this download evidence at trial:

> THE COURT: Is what Mark Monitor did in 2016 also going to be part of what you introduce at trial?
> MR. GOULD: The files that are downloaded in 2016 will be. We would -- which we have produced.
> THE COURT: So the files they downloaded -- every file that they downloaded, you have produced?
> MR. GOULD: Yes, sir.
> THE COURT: And that's all you are going to use at trial from that effort, are the files downloaded by Mark Monitor?
> MR. GOULD: Yes.
> THE COURT: And, Andrew, do you disagree?
> MR. SCHAPIRO: I just reserve that if something in the course of the case changes, we would need to re---that would cause us to revisit that, but where we sit today, yes, only the downloads from 2016.

Dec. 18, 2020 Hr'g Tr. 44:2-17 (attached as Ex. 1). Consistent with this, Plaintiffs have produced the following:

- A hard drive containing ***all*** of the hash files downloaded pursuant to the 2016 SOW, which included, for each recording in suit, copies of the infringing files that were the subject of Plaintiffs' infringement notices. To be clear, and contrary to Charter's suggestion, Plaintiffs produced ***all*** downloads; they did not produce the so-called "good" and withhold the so-called "bad."
- PCAP files (or packet capture logs) showing when and where the files associated with the hashes in the 2016 SOW were downloaded.

- Four indexes for the hard drive of folders and infringing files, named and organized by hash value, such that Charter can easily identify the included hashes.
- The 2016 SOW demonstrating that MarkMonitor was engaged for this project "in anticipation of litigation."

Nov. 9, 2020 Declaration of Matthew J. Oppenheim ¶¶ 9-10 (ECF No. 287-1). The Hash Report, on the other hand, is a spreadsheet reflecting hashes selected by Plaintiffs' counsel that MarkMonitor searched for in 2016—some of which Mark Monitor did not find and, thus, did not download. As Plaintiffs explained in their Opposition to Charter's motion (ECF No. 287) and at oral argument, Plaintiffs do not intend to rely on the Hash Report itself in any way at trial. And, as Plaintiffs also explained, Charter already knows exactly which hashes were referenced in Plaintiffs' infringement notices but not downloaded in 2016 and can make any argument it wants about the significance of that fact.

The parties argued both issues Charter's Motion raised at length during the December 18, 2020 hearing and the Court's Order rejected both arguments. On the first issue, the Court held that "the Hash Report constitutes attorney work product and, at least at the present, Defendant has not established sufficient need to overcome the claim of privilege." ECF No. 332 at 1.

On the second issue, the Order held that Plaintiffs' production of other documents from the 2016 download project did not waive work product protection over the Hash Report, and held only that affirmative use of the *Hash Report itself* would effect a waiver:

> Plaintiffs cannot make affirmative use of a portion of the results of the ***Hash Report*** and shield the remainder as work product. Plaintiffs' counsel represented that the fruit of every aspect of ***Mark Monitor's 2016 efforts*** (Mark Monitor having also spawned the Hash Report) they intend to use at trial has been produced to Defendant. At the December 18, 2020 oral argument, Defendant's counsel did not know if that was true or not but correctly stated that if something "in the course of the case changes, we would need to re- -- that would cause us to revisit that." ECF 330. Defendant reserves the ability to challenge Plaintiff's treatment of the ***Hash Report*** and/or again seek to compel its production.

*Id.* (emphasis added). The Order thus properly distinguished between use of the fruits of MarkMonitor's 2016 efforts generally and use of the information contained within the Hash Report itself.

***The Status Conference.*** At the January 28, 2021 status conference, well past the deadline to object to or seek reconsideration of the Order, Charter sought to reargue its Motion by blurring this crucial distinction between the 2016 downloads (on which Plaintiffs intend to rely) and the Hash Report (on which Plaintiffs do not intend to rely):

> MR. SCHAPIRO: I'm focusing on the line that says: Plaintiffs' counsel recommended that the fruit of every aspect of Mark Monitor's (inaudible) efforts (inaudible) that they intend to use at trial has been produced to – to defendant. Now, what we're looking for here, of course, is not only -- so that's the sword, but we're also looking for the shield. So what we're looking for is the fruit of Mark Monitor's efforts that they don't intend to use at trial, but which will undermine the ones that they do choose to use at trial. So we weren't sure whether that encompassed [*sic*] within what you're saying they need to have produced to us.

Jan 28, 2021 Hr'g Tr. 35:3-14 (attached as Ex. 2). Charter had made this identical argument—unsuccessfully—at oral argument in December:

> MR. SCHAPIRO: And [Plaintiffs] have -- in this case, they are seeking to use the files that were downloaded through that process in 2016, including their hashes, as evidence against Charter. They say that the other evidence they searched for in 2016 somehow is not relevant or are opinions, they are not facts.
> THE COURT: But your position is that both of those are part of one effort and one result, correct? Is that what you are arguing?
> MR. SCHAPIRO: That's correct, that they are trying to wield the conclusions from these documents as a sword.

Dec. 18, 2020 Hr'g Tr. 31:1-16 (attached as Ex. 1). It was precisely this argument the Court *rejected* when it denied Charter's Motion and in doing so distinguished between Mark Monitor's 2016 efforts more broadly and the Hash Report itself. At the December argument, the Court homed in on this very point that withholding the Hash Report—including what MarkMonitor

investigated but did not find—does *not* prevent Plaintiffs from relying on the rest of the 2016 Mark Monitor evidence that MarkMonitor did find:

> THE COURT: Okay. So, Andrew, let's say in a – in a different kind of lawsuit, pre-suit plaintiffs' attorney goes out, does an investigation of liability, gathers evidence and then, you know, for a year goes out and uses his own wits and thought processes to determine what to investigate and how to find out facts that would support a claim in court, and then the case is filed because they feel they have a good faith basis for doing so, and then they turn over all evidence that they are going to use at trial, but they don't disclose every phone call they made, every car trip they took, every website they looked at, because to do that would be to re-create, you know, an attorney opinion work product that shows how they do their business, that's the merchandise of a lawyer. So how is this different than that?
>
> MR. SCHAPIRO: Yes, I think --I think it's entirely different, Your Honor. You said yourself and I'm going to go on (inaudible) maybe as Mr. Gould, they are going to use the evidence collected in the 2016 project in an attempt to try and support their allegations and prove that there was direct infringement by the subscribers here. The 2016 project was the effort by Mark Monitor to go back and find out what these files were for which the notices were sent. And it's a key part of our defense in this billion-dollar case to show that the Mark Monitor process and Audible Magic's supporting role in that are not reliable and they are withholding a document that shows not an attorney going -- as far as I know, I mean, I don't know what was discussed in camera and I obviously can't rebut it. But as far as we know and the part that we are seeking, the document -- it is more as if you said, I'm going to send a -- you know, a detective out to go and watch, you know, to see whether -- what person goes in and out of this building and what's an important part of the case in some way or another. And we have a right to get a report that the detective provides the lawyer saying, Well, you know, on such and such a day, it was really rainy and I really couldn't tell if anybody was going in and out. On another day, I saw someone wearing a wet hat, might have been that person. Seems like it turned out that it wasn't. They can't just selectively say, Ah, you know, we have this detective, isn't that great, and it's the gold standard which that they are going to be saying if it's anything like the Cox case. And, by the way, you know, on Thursday the 16th, the man in the brown hat entered. We have a right to test that and we are just seeking the facts produced by that report.
>
> THE COURT: So I don't see that, that's the problem. You are going to have to convince me of that. For example, using your analogy, let's say a dozen times he doesn't see the person he wants. He thinks it might be them, but it wasn't them. But one time he saw them and he has them on video and everybody in the courtroom, including the defense, says, Yeah, that's our guy in that video. The fact that there were a dozen other times that that investigator didn't see the person go in and out of the building, what difference does it make? It's not material to the case.

*Id.* at 44:18-47:1.

Accordingly, in order to avoid any confusion at trial, and to prevent Charter from seeking to preclude the 2016 downloads that are core to Plaintiffs' case and that have been discussed at length, Plaintiffs respectfully request that, consistent with the Order, the Court confirm that Plaintiffs' assertion of privilege over the Hash Report does not preclude Plaintiffs from introducing and relying on the evidence that Plaintiffs have produced from the 2016 MarkMonitor download project.

Dated: February 10, 2021

/s/ *Matthew J. Oppenheim*
Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

Mitchell A. Kamin
Neema T. Sahni
J. Hardy Ehlers
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
jehlers@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Janette L. Ferguson, Esq.

WILLIAMS WEESE PEPPLE & FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@williamsweese.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 10, 2021 I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Matthew J. Oppenheim*