# Exhibit 2

1

```
1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
  Case No. 19-cv-874-RBJ-MEH
3 _____

4 WARNER RECORDS, INC., et al.,

5      Plaintiffs,

6 vs.

7 CHARTER COMMUNICATIONS, INC.,

8      Defendant.
  _____
9

10       Proceedings before MICHAEL E. HEGARTY, United

11 States Magistrate Judge, United States District Court for the

12 District of Colorado, commencing at 1:00 p.m., January 28,

13 2021, in the United States Courthouse, Denver, Colorado.

14 _____

15 WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN

16 TYPOGRAPHICALLY TRANSCRIBED. . .

17 _____

18                           APPEARANCES

19       JONATHAN M. SPERLING, NEEMA SAHNI, MATTHEW J.

20 OPPENHEIMER and JEFF GOULD, Attorneys at Law, appearing for

21 the Plaintiffs.

22 _____

23

24                       STATUS CONFERENCE

25
```

2

1                APPEARANCES (continued)

2          ANDREW H. SCHAPIRO, LINDA BREWER, Attorneys at Law,

3    appearing for the Defendant.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

1        MR. SPERLING:  I believe that's it for the
2   plaintiffs, Your Honor.
3        THE COURT:  Okay.  Andrew or anybody else, please.
4        MR. SCHAPIRO:  Yes, as long as we're here, just one
5   thing I thought I would raise.
6        In Your Honor's order about the hash report, you'll
7   recall from a few weeks ago, I just wanted to make sure we
8   understand something.  You recall that was a document that
9   the plaintiffs wanted to shield as work product and you
10  granted the order, but you added a caveat, and the caveat was
11  based in part on what I think might have been representations
12  that were made when you'll recall that there was an in
13  camera -- a virtual in-camera discussion or a virtual sidebar
14  when -- when our side was off camera.
15       So the order says, you know, (inaudible),
16  plaintiffs cannot -- I'm quoting now, quote:  Plaintiffs
17  cannot make affirmative use of a portion of the results of
18  the hash report and shield the remainder as work product.
19  Plaintiffs' counsel represented that the fruit of every
20  aspect of Mark Monitor's 2016 effort, (Mark Monitor also
21  having spawned the hash report) they intend to use at trial
22  has been produced to defendant, the end of my quotation here.
23       And then at the end your rule says that if it turns
24  out they violated that representation, you would recommend
25  that Judge Jackson strike any such evidence and enter further

1   orders.

2   And we wanted to be clear so that we can make sure

3   that that order -- that this order is abided by.  What is

4   meant by plaintiffs' counsel has represented that the fruit

5   of every aspect of Mark Monitor's 2016 effort has been

6   produced, because as you'll recall, our point was, yes, they

7   want to use the pieces of the report -- the fruit -- sorry,

8   the fruit of Mark Monitor's efforts, they want to use the

9   efforts where they found items that were infringing, but what

10  they were trying to not turn over is the hash report which

11  will allow us to show when they went down and looked and

12  didn't find what they (inaudible) to find.  So has all of

13  that been produced?

14          THE COURT:  Can I read my message?  That was an

15  e-mail, wasn't it?

16          MR. SCHAPIRO:  I believe it was -- it was an

17  attachment to an e-mail.

18          THE COURT:  And what was the date of the e-mail?

19          MR. SCHAPIRO:  I'm reading from a document that I

20  cut and pasted.  Just a moment, I'll find it.  I invite my

21  colleagues to take over as well.

22          THE COURT:  I can't find it, but if you can.

23          MR. SCHAPIRO:  Just one more moment I think I'll be

24  able to find it.  Docket 332 apparently.  Docket 332, Your

25  Honor, I'm told.

35

1          THE COURT: Okay, all right, let's see. And which
2    line are you focusing on?
3          MR. SCHAPIRO: I'm focusing on the line that says:
4    Plaintiffs' counsel recommended that the fruit of every
5    aspect of Mark Monitor's (inaudible) efforts (inaudible) that
6    they intend to use at trial has been produced to -- to
7    defendant.
8          Now, what we're looking for here, of course, is not
9    only -- so that's the sword, but we're also looking for the
10   shield. So what we're looking for is the fruit of Mark
11   Monitor's efforts that they don't intend to use at trial, but
12   which will undermine the ones that they do choose to use at
13   trial. So we weren't sure whether that encompassed within
14   what you're saying they need to have produced to us.
15         THE COURT: Well --
16         MR. OPPENHEIM: This is Matt Oppenheim. I did not
17   understand the question that is being asked. I apologize.
18   Could I ask it to be restated?
19         THE COURT: Well, I mean, as a general matter, he's
20   saying there seems to be some body of data that was used --
21   well, that plaintiff -- that this Mark Monitor produced and
22   his -- his general point is you can't pick and choose out of
23   that body of data stuff that's good and you intend to use and
24   produce it, but then have other portions of that same body of
25   data that maybe, you know, don't shine such a good light on

1    your case or maybe help the other side that you can't -- that
2    you won't produce and also won't use.  Andrew, did I get that
3    right?
4              MR. SCHAPIRO:  That's exactly right.
5              THE COURT:  And you can't argue with that general
6    proposition, so I agree.  What are we going to do about that,
7    Matt?
8              MR. GOULD:  Magistrate Judge Hegarty, this is Jeff
9    Gould on behave plaintiffs, also from Oppenheim.  If you
10   remember --
11             THE COURT:  Very good.
12             MR. GOULD:  -- I spoke with you about this issue
13   last time.  So I'm a little confused, first of all, about
14   where we are here.  I mean, your ruling was I think about
15   three weeks ago and the time has run to reconsider or appeal
16   this, so I don't quite know what the posture is, but setting
17   that aside for the moment, this issue was briefed and argued
18   at length on both -- in a public session and in a private
19   session, and at length we discussed the contours of exactly
20   what Mr. Schapiro has raised today.  I don't really
21   understand what the confusion is about.  We made clear then
22   and you understood, as I see it from your opinion here, that
23   the fruits of Mark Monitor's efforts that they intend to rely
24   on have been produced, and there is nothing in the hash
25   report that was the subject of this work product issue that

37

1   we intend to rely on, and so there is no sword and shield.
2          The waiver argument has been, you know, pursued and
3   discussed at length.  So I -- maybe I'm missing
4   Mr. Schapiro's point, but I don't really see -- you know, I
5   don't see anything new here.  He's trying to -- it feels like
6   an effort to reargue this out of time.
7          THE COURT:  No, I -- I know how it may feel like
8   that.  What is appropriate at any moment in the case is
9   confusion over a judge's order and the interpretation of that
10  order.  So that's -- if there is true misunderstanding about
11  that, that's always an appropriate thing to discuss.
12  Reconsideration is not.  So it's just that, you know, you
13  guys live this case every day, I live it only as often as you
14  bring it to me, and so it's not something that's maintained
15  fresh in my mind.  And, you know, when I wrote that, I
16  believed in what I wrote; I think I understand what I wrote.
17  But I think the good point you make is exactly what, Andrew,
18  might be there that you believe would -- would cause issues
19  or violation of this order?
20         MR. SCHAPIRO:  Yes, Your Honor.  Well, the hash
21  report has seven -- a list of 7,000 items that they sent Mark
22  Monitor out to look for and some of them they came back empty
23  handed.  And so if they're not intending to rely on anything
24  that came back from Mark Monitor, which I recall you said the
25  sword, then, fine, but they are intending to rely on what

38

1  they got back from Mark Monitor, they have represented to

2  you, as I understand it I guess in that private session,

3  because at the end of the order you say if I find plaintiffs

4  in violation of their representation to me, they represented

5  to you that they're not going to use anything from Mark

6  Monitor as to which they haven't given over both the good and

7  the bad, the sword and the shield.

8          If what they're saying instead today is, Well,

9  we've given you everything we're going to use, that's fine,

10 but that's just the sword, that's not the shield.  So the

11 reason I'm asking is you have invited us I think quite

12 appropriately to hold them to their word and to raise this

13 again down the road if they are not keeping with that

14 representation, but I'm looking at this order.  We want to

15 make sure there is a clear record so that they can't say,

16 Well, sure, we told you we're going to give you everything

17 we're going to use and that's good enough.

18          THE COURT:  Understood.  Well, I did -- I mean, I

19 think we're going to have to see it in action, because what I

20 did give you the ability to do is reassert a motion to compel

21 or a request to compel, at least, if you see what you

22 perceive to be inappropriate application of this order,

23 right?

24          MR. SCHAPIRO:  Okay, yes, you know, you did say at

25 this time, I follow that, but I -- well, I guess -- I guess

39

1  we'll end up going back to this transcript and maybe that's
2  the -- the best we can do at this point.  But our point is
3  simply that if they're going to rely on material from the
4  Mark Monitor investigation that's helpful for them, then that
5  has to be consistent with this apparent representation they
6  made to you that they've sent over the material that might
7  not be helpful from Mark Monitor.
8             THE COURT:  Right, and I think that the way for
9  that to be effectively policed is for me to just, you know,
10 remain apprised and engaged in this whole process, even
11 possibly through trial.  So --
12            MR. GOULD:  Your Honor, may I respond briefly?
13            THE COURT:  Yes.
14            MR. GOULD:  This is Jeff Gould again.  So
15 Mr. Schapiro has just reargued his motion, make no mistake
16 about it.  Review his papers, review the transcript.
17 Mr. Schapiro argued at length that producing some downloaded
18 files while withholding a hash report that he claims
19 references other files was a sword and shield and a waiver on
20 that basis.  It was briefed, it was argued and there is a
21 clear record and ruling on it.  He's rearguing it.
22            What's important to understand here too is
23 plaintiffs are not relying on privileged material.  In order
24 for sword and shield to apply, we would need to be relying on
25 privileged material while withholding other privileged

1   material.  That's not what's happened here at all.  Nothing

2   new to see here.

3           You know, respectfully, I think that this feels

4   improper.

5           THE COURT:  Right.  Well, I don't -- listen, what I

6   did was a little bit unique in allowing an in-camera proffer.

7   It's -- it's what I would do in open court if someone says,

8   Your Honor, there is a privilege involved here.  If I say any

9   more about it, I'm going to, you know, violate the privilege,

10  and I would say, Will you please approach and explain it.  So

11  it's something that sometimes you have to hear in camera, but

12  what I don't recall is did we -- did we keep the recording on

13  during that proffer or did we turn it off when -- we

14  talked -- how did we talk, Mr. Gould?

15          MR. GOULD:  I don't know whether the recording was

16  on on your end.  I can tell you that on the transcript -- the

17  written transcript there is a break, the written transcript.

18          THE COURT:  So sometimes I designate a portion of a

19  transcript restricted to the Court only.  I don't know if we

20  just turned it off or I had a Court restriction only.  I

21  mean, in retrospect, in hindsight, I should have had it be a

22  Restricted Level 1 Court Only access, or whatever level that

23  is, but if I didn't, I didn't; but I somewhat recall the

24  conversation so I'm just going to just have to try to keep

25  that fresh in my mind.

41

```
 1              But, again, I think it's going to come down to -- I
 2    think it's what Justice Douglas said about obscenity:  I'll
 3    know when it I see it.  So I'll just have to keep a close
 4    watch on the case, I suppose.
 5              But the point is taken, you know, and I think we
 6    should move on.  What's next?
 7              MR. SCHAPIRO:  I think just the schedule, but maybe
 8    that's closed.  I don't know if anyone else has anything on
 9    that.
10              MR. SPERLING:  I think the schedule -- Jonathan
11    Sperling -- maybe the best thing, now that we've got that
12    issue resolved, is we can submit it to you in writing, Your
13    Honor, and then you can enter an order based on those dates,
14    so we're happy to do that.
15              THE COURT:  That's fine.  Do you guys have a trial
16    date still set or was that vacated?
17              MR. SPERLING:  For the time being, Judge Jackson
18    has been quite adamant that he's not moving it and so that's
19    what gives rise to a lot of the issues here and we need to
20    get all this done very quickly.
21              THE COURT:  Right.  Well, I mean, it's not beyond
22    me to go to a district judge and say, You really need to
23    change your trial date.  So if we reach that point, just let
24    me know.  Okay?
25              MR. SCHAPIRO:  We're not there yet, I think.  I
```

44

```
 1                    TRANSCRIBER'S CERTIFICATION
 2   I certify that the foregoing is a correct transcript to the
 3   best of my ability to hear and understand the audio recording
 4   and based on the quality of the audio recording from the
 5   above-entitled matter.
 6
 7   /s/ Dyann Labo                      January 30, 2021
 8   Signature of Transcriber            Date
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```