# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH
_____

WARNER BROS. RECORDS INC., et al.,

    Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

_____

TELEPHONIC HEARING

January 22, 2021
_____

    This telephonic hearing was taken before Special Master Regina Rodriguez on January 22, 2021, at 9:00 a.m. Mountain Standard Time before K. Michelle Dittmer, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, K. Michelle Dittmer, appearing remotely via telephone)

```
                          Telephonic Hearing
                          January 22, 2021
                                                                Page 2

  1     A P P E A R A N C E S
  2     ON BEHALF OF THE PLAINTIFF WARNER BROS. RECORDS INC.:
  3              MATTHEW J. OPPENHEIM, ESQ.
                 ALEXANDER KAPLAN, ESQ.
  4              Oppenheim & Zebrak LLP
                 4530 Wisconsin Avenue N.W.
  5              5th Floor
                 Washington, DC 20016
  6              Phone: 202-480-2999
                 Email: matt@oandzlaw.com
  7              Email: alex@oandzlaw.com
                 (appeared telephonically)
  8
                 JONATHAN MICHAEL SPERLING, ESQ.
  9              Covington & Burling LLP
                 620 Eighth Avenue
 10              The New York Times Building
                 New York, New York 10018-1405
 11              Phone: 212-841-1153
                 Email: jsperling@cov.com
 12              (appeared telephonically)
 13              NEEMA T. SAHNI, ESQ.
                 J. HARDY EHLERS, ESQ.
 14              Covington & Burling LLP
                 1999 Avenue of the Stars
 15              Suite 3500
                 Los Angeles, California 90066-4643
 16              Phone: 424-332-4757
                 Email: nsahni@cov.com
 17              Email: jehlers@cov.com
                 (appeared telephonically)
 18
                 STACEY K. GRIGSBY, ESQ.
 19              Covington & Burling LLP
                 One CityCenter
 20              810 Tenth Street, NW
                 Washington, DC 20001-4956
 21              Phone: 202-662-5238
                 Email: sgrigsby@cov.com
 22              (appeared telephonically)
 23
 24
 25
```

```
 1   ON BEHALF OF THE DEFENDANT:
 2            ANDREW H. SCHAPIRO, ESQ.
              ALLISON HUEBERT, ESQ.
 3            Quinn Emanuel Urquhart & Sullivan, LLP
              191 N. Wacker Drive, Suite 2700
 4            Chicago, Illinois 60606
              Phone: 312-705-7403
 5            Email: andrewschapiro@quinnemanuel.com
              Email: allisonhuebert@quinnemanuel.com
 6            (appeared telephonically)
 7
              LINDA J. BREWER, ESQ.
 8            GRACIE CHANG, ESQ.
              Quinn Emanuel Urquhart & Sullivan, LLP
 9            50 California Street, 22nd Floor
              San Francisco, California 94111
10            Phone: 415-875-6403
              Email: lindabrewer@quinnemanuel.com
11            Email: graciechang@quinnemanuel.com
              (appeared telephonically)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    hearing that the parties should meet and confer to see if
2    there was a narrower request or another discovery request
3    that could be submitted.  I understand that the parties
4    have conferred and defendants have provided some
5    additional limited information, although it is not as
6    robust as what plaintiffs are requesting.
7                However, at this time, again, for the
8    reasons cited in the December 21, 2020 hearing, I'm not
9    going to order at this time any additional information,
10   other than the additional that defendants have already
11   provided.
12               All right.  Let's talk about our next
13   issue.
14               MS. GRIGSBY:  Yes, Ms. Rodriguez.
15               So the next issue we have is the redaction
16   of eight budget documents.  So in particular -- and we
17   provided an exhibit on this -- which is, defendants have
18   redacted out the vast majority of cells and 8 budget
19   spreadsheets.  And this is information that defendants
20   say that they are redacting -- Defendant Charter is
21   saying that they are redacting out on the basis of
22   relevance.
23               Our financial expert, you know, needs this
24   financial information, the information in the
25   spreadsheets, in order to do an analysis.  And one of the

```
 1   reasons why we need that information and we need it in
 2   native format is because we really need to understand and
 3   put in context the unredacted cells.
 4                  So, for example, one of the exhibits that
 5   we provided, Charter had redacted roughly 400 out of, you
 6   know, over 440 cells.  And it's very difficult, based on
 7   a completely redacted document, to get the appropriate
 8   context.
 9                  So just kind of stepping back and starting
10   at the law and the rules, the Federal Rule 34(b)(2)(3) is
11   pretty clear that unless they've deleted and ordered
12   otherwise, documents should be produced as they are kept
13   in the usual course of business or -- and that means here
14   that an Excel spreadsheet should be produced as an Excel
15   spreadsheet and not as a redacted PDF.
16                  Moreover, the case law is uniform that
17   it's improper to redact simply for responsiveness.  We've
18   cited some case law in our letter, but I think it's very
19   important that the case law notes that it is rare that a
20   document that contains -- contains only relevant
21   information.  Irrelevant information within this document
22   can provide context that's useful for understanding the
23   document.
24                  And, you know, there is a quote in some of
25   the case law that says redactions certainly breed
```

1    suspicion because they deprive the reader of that
2    context.
3                 And here, just given the fact that it is
4    an Excel spreadsheet, we cannot see what formulas are
5    used in that Excel spreadsheet.  We cannot see where the
6    total, if it is a total, is derived from.  And to redact
7    it actually takes more work on the defendant's part than
8    it would just to produce the eight spreadsheets in an
9    unredacted format.
10                You know, they have noted that this is
11   highly sensitive and confidential information.  In this
12   case, as you're well aware, we have a two-tier protective
13   order, and this particular information was produced as
14   highly confidential, attorneys' eyes only.
15                So there's not the risk that this is going
16   to be shared even with the plaintiffs' parties
17   themselves.  This is something that, you know, obviously
18   would not be widely disseminated, and it would be
19   protected by the protective order.  Certainly, if anyone
20   were to violate the protective order, there are
21   consequences for that.
22                So, again, it's just -- it's improper,
23   it's our view that it's improper to redact.  And we will
24   also just note that in this case in dealing with a
25   different issue, which is the cat summary specific file,

```
 1   Judge Hegarty noted that you generally don't get to
 2   produce documents and then redact nonresponsive
 3   information.  That was from the hearing on December 18,
 4   2020.
 5                 So, you know, defendant's counsel have
 6   known that generally it is not necessary and, in fact,
 7   it's not proper to redact for responsiveness, and yet
 8   they've done so here.
 9                 So we are just asking for them to
10   reproduce the eight spreadsheets in the normal -- like in
11   native format as they're normally kept in the course of
12   business.
13                 SPECIAL MASTER RODRIGUEZ:  Okay.
14                 Counsel for Charter, do you want to
15   respond?  Also, I do seem to recall that, in this case,
16   we've had this issue on the other foot, where plaintiffs
17   had unilaterally redacted information in contracts
18   claiming that it was sensitive, and Charter objected to
19   that.
20                 It's my recollection that I ordered that
21   those documents had to be produced in an unredacted
22   format.  So help me understand the position here.
23                 MR. SCHAPIRO:  Sure.  It's Andy Schapiro.
24   I'll be speaking about this one.
25                 I think the starting point for this one is
```

1   the RFPs to which this production was responding.  So
2   RFP 52 asks for documents sufficient to show the average
3   revenue and profit that you have received per subscriber
4   for the life of the account from January 1, 2012.
5                RFP 53 asks for documents sufficient to
6   show the average and/or estimated total length of time
7   that you retained subscribers from inception to
8   termination of the subscription for any reason.
9                And you ordered production only to the
10  extent that we keep such information in the ordinary
11  course of our business.
12               So while it may be that an expert wants to
13  do something with a spreadsheet about something else,
14  that's not what these RFPs call for.  These RFPs call for
15  exactly what we've provided.  So that's the first point.
16               The second point in terms of the
17  redaction, I think we are in vehement agreement with
18  the -- with the plaintiffs that, ordinarily, redactions
19  for relevance aren't appropriate, but that doesn't mean
20  that they're never appropriate.
21               And, in fact, in the exchange with
22  Magistrate Judge Hegarty at our last hearing in which
23  this came up, he said exactly that.  He said:  Well,
24  ordinarily you're not supposed to redact for relevance.
25  But then what did he do?  He didn't order full-on

1 unredaction, nor even did he allow more than one attorney
2 from the other side to see partially unredacted.  He
3 instead ordered us to redact every fifth line so that
4 there could be -- unredact, rather, so that there could
5 be a sample.
6             So he recognizes as well what the law
7 itself says, which is, in certain circumstances, it's
8 okay to do that.
9             Here, we did all we could, other than go
10 out and create evidence.  We produced what we have.  On
11 our end, as the lawyers, this is how we receive it from
12 the client, a PDF.  And because this is very sensitive
13 business information that has nothing to do with the
14 actual RFPs Number 52 and 53, we produced the material
15 that was actually responsive.
16             So I think the way we produced it was
17 entirely appropriate.  I'll just add that this exchange
18 about -- we produced this material in September and we
19 had an email follow-up explaining why we produced it in
20 the form we did on September 16.  And so a good amount of
21 time has passed and now we're -- you know, just as you
22 raised.
23             I think what we have produced is
24 appropriate and shouldn't be ordered to produce anything
25 beyond.

1                SPECIAL MASTER RODRIGUEZ:  Okay.  All
2     right.
3                Well, on this one, what I'm going to order
4     is, Charter, that you provide to me a redacted and
5     unredacted version, and I'll take a look and review in
6     camera and make a final decision.
7                MR. SCHAPIRO:  Thank you, Ms. Rodriguez.
8                SPECIAL MASTER RODRIGUEZ:  All right.
9     What's next?
10               MR. EHLERS:  Good morning, Ms. Rodriguez.
11    This is Hardy Ehlers from plaintiffs.
12               The last issue in our letter is the
13    discovery that we requested that goes to Charter's
14    defense in this case arguing that peer-to-peer
15    infringement is no longer a problem.
16               So the defense is that plaintiffs'
17    statutory damages should be reduced because today,
18    peer-to-peer infringement is no longer a problem, that
19    it's instead a historical phenomenon.  And the theory
20    goes that deterrence is a factor in assessing statutory
21    damages, and there is nothing to deter here because
22    peer-to-peer infringement has just gone away and so
23    plaintiffs' statutory damages should be significantly
24    reduced.
25               The request at issue here that were listed

1   in the appendix to our letter seek information to rebut
2   that defense.  There, just the necessary course that have
3   requests that would show that infringement is so rampant
4   on Charter's network that Charter has continued to
5   present to provide services -- its services to known
6   repeat infringers and that Charter would terminate those
7   same repeat infringers when they would not pay the
8   subscription fees they owed to Charter; in other words,
9   when Charter's pocketbook was at stake rather than
10  plaintiffs'.
11              So those are -- those kind of three
12  elements are the things that plaintiffs need to disprove
13  the predicate notions that underlie Charter's defense,
14  that peer-to-peer piracy isn't a problem anymore and
15  there's no Charter behavior to deter here.
16              So we think we're entitled to this
17  discovery to rebut that notion, those two notions,
18  because if there's a liability finding here, Charter's
19  going to rely on them very heavily to say that damages
20  should be reduced potentially to the tune of hundreds of
21  millions of dollars.
22              SPECIAL MASTER RODRIGUEZ:  All right.
23  Thank you, Mr. Ehlers.
24              Remind me again, you indicated that with
25  regard to the specific issue, also peer-to-peer

```
 1   infringement, the specific discovery requests were --
 2   tell me what those were again.
 3                  MR. EHLERS:  They are six RFPs and three
 4   interrogatories.
 5                  SPECIAL MASTER RODRIGUEZ:  Okay.
 6                  MR. EHLERS:  And the --
 7                  SPECIAL MASTER RODRIGUEZ:  And this is
 8   what's in -- sorry.  This is what's in your Appendix 1,
 9   right, it's the whole list?
10                  MR. EHLERS:  Correct.
11                  SPECIAL MASTER RODRIGUEZ:  I currently --
12                  MR. EHLERS:  And they -- and they appear a
13   little bit out of order because they are six requests
14   that we selected from the sets that you had ordered us to
15   reproduce to cover infringement to present for purposes
16   of the counter-counterclaims.
17                  We're only -- we've only -- we picked
18   these six because they are the core requests that are
19   also relevant to Charter's defense here.
20                  SPECIAL MASTER RODRIGUEZ:  Okay.  Thank
21   you.
22                  Counsel for Charter, would you like to
23   respond?
24                  MS. BREWER:  Yes.  This is Linda Brewer on
25   behalf of Charter.
```

1               Given Judge Jackson's ruling on
2   December 15 and his very clear guidance to the parties as
3   to the scope of the case and the need for the parties to
4   stay on track for an October 2021 trial, we were very
5   concerned to receive the email on January 4 from
6   plaintiffs following up on this counter-counterclaims
7   discovery they served on December 5 that has always been
8   understood, by you and the parties, to be premised on the
9   prospective counter-counterclaims that have now been
10  stricken from the record.
11              We were even more disturbed that we
12  properly responded to that email to point out that a
13  motion to compel responses to those requests would be
14  improper.  Heard nothing back from plaintiffs, absolutely
15  nothing.  And then this issue was included in the
16  January 18 letter to you as a basis for a motion to
17  compel.
18              We think, and we hope that you agree,
19  after reviewing the December 15 transcript, that Judge
20  Jackson provided a very clear admonition to plaintiffs as
21  to the appropriateness of the case.
22              He not only found that the
23  counter-counterclaims that -- that sought to vastly
24  expand the scope of the case by adding new works, that
25  expanding the claims period by doubling it were not

1   permissible, but explicitly ruled that the proposed
2   claims were never properly at issue in the case in the
3   first place.
4                    For that reason, he found Charter's motion
5   to dismiss unnecessary and instead granted Charter's oral
6   motion at the hearing to strike the claims from the
7   record.
8                    In that hearing, Judge Jackson pointed out
9   that the case was filed back in March 2019, and he views
10  it as an old case.  He wants the parties to stay on
11  schedule.  He is not moving the October 2021 trial date.
12  This was made very clear to the parties on December 15.
13                   Against this background, we are frankly
14  stunned that plaintiffs waited three weeks to approach us
15  with a brand-new argument:  That the November 5
16  counter-counterclaims discovery can nevertheless be
17  pursued, because plaintiffs believe there is now creative
18  arguments that is marginally related to a damages
19  argument that Charter asserted in different context with
20  respect to a different discovery request that was
21  extensively litigated and wasn't even decided in
22  Charter's favor.
23                   This, to us, is problematic for so many
24  reasons.  First, plaintiffs never once made this argument
25  that they needed to propound this discovery of that issue

1    today in order to counter a damages argument made by
2    Charter six months ago.
3                And quite honestly, I woke up at 5:00 a.m.
4    this morning and I reviewed that October 26 transcript
5    before you in full.  I looked if there was any mention of
6    this argument as the basis for the need to propound this
7    discovery.  There was not.
8                They did not make this argument to you
9    when we appeared on October 26 as an additional reason
10   for the need to propound discovery, and they didn't make
11   this argument to Judge Jackson when they appeared before
12   him on December 15.
13               Second, the discovery is not proportional
14   or rationally related to the damages argument.  The
15   discovery is broadly based information from Charter that
16   is a complete redo of discovery taken on the underlying
17   claim that itself has consumed a vast amount of Charter's
18   time to respond to at great expense.
19               It has also consumed substantial judicial
20   resources to litigate due to all of the disputes that
21   naturally arise out of this type of discovery, which I
22   think is demonstrated by the fact that we've spent
23   90 minutes already in a hearing today on outstanding
24   requests on the underlying claim.
25               To require Charter to start anew with this

 1   new fact discovery, when fact discovery is supposed to be
 2   closing, would be incredibly prejudicial and at odds with
 3   Judge Jackson's directive to the parties to stay on
 4   track.
 5              It's also difficult for this discovery to
 6   be justified when it's not tethered now to any new claims
 7   that would be added to the case.  The pursuit of this
 8   discovery, when not tethered to any claims, is, we think,
 9   something that borders on a due process violation at this
10   point in time.
11              We've also extensively briefed, in the
12   context of our declaratory judgment counterclaim and the
13   context of our motion to dismiss the proposed
14   counter-counterclaim, how prejudicial this discovery
15   would be for Charter.
16              Not just because of the expense and burden
17   associated with responding to it, which could not be
18   cured unless the case is extended by a year and the
19   discovery was reciprocated by plaintiff, but also because
20   it would bring new facts into the case regarding the
21   post-2016 time period and Charter's system for processing
22   this case, that would be substantively prejudicial to
23   Charter to the point of preventing a fair trial.
24              We made this argument to Judge Jackson in
25   the context of our motion to dismiss.  He was receptive

1                We thought the parties were on the same
2    page, but the fact extension that we were negotiating was
3    to give the parties time to take depositions and to get
4    the case ready for expert discovery and to move on to our
5    pretrial and trial.
6                And we have, as Your Honor knows -- or as
7    you understand from the Tuesday hearing, we have served
8    our notices on plaintiffs.  We've got a deposition on
9    calendar for next week.  We have a third-party deposition
10   that's starting today.  We have on our end pivoted, in
11   line with Judge Jackson's guidance, to move the case
12   along to the deposition phase.
13               So for plaintiffs to now open up and
14   create a new argument that was never once raised in 2020
15   as the foundation for this discovery, for discovery that
16   is so broad and so expansive and is essentially a redo of
17   everything that we just did in this case, we think that
18   this is going to be significantly prejudicial and violate
19   Judge Jackson's directive that we stay on track for a
20   2021 trial.
21               The discovery requests that are included
22   at the end of that letter are not benign and they are not
23   straightforward.  They would blow the lid off of this
24   case.
25               They would require new negotiations

1   regarding custodians, with productions, with follow-on
2   requests challenging the sufficiency of Charter's
3   production, new privilege reviews, new privilege logs,
4   new discovery price related to those additional hearings
5   before you, challenges to the rulings that are made by
6   you for the -- by the party that loses, and more hearings
7   on those challenges, both with Judge Hegarty, Magistrate
8   Judge Hegarty, and Judge Jackson.
9              For all of those reasons, we think that
10  this instant attempt to move to compel the
11  counter-counterclaim discovery should be denied.
12             SPECIAL MASTER RODRIGUEZ:  Okay.  Thank
13  you, Ms. Brewer.
14             All right.  Well, I will tell you, I also
15  am a little surprised to see this discovery request.  It
16  does appear to me to be a back-door approach to obtain
17  discovery on topics for which the Court has already
18  denied.
19             I also read Judge Jackson's order as being
20  very clear.  I don't find Judge Jackson to be ambiguous
21  in much of anything that he does, and he was very clear
22  in this case that we're not going to expand the claims,
23  nor are we going to expand the time period.
24             Each of these discovery requests seeks
25  information for a time period May 18, 2016 through

```
 1   April 30, 2020, which would expand the time period at
 2   issue in this case, and we're not going to do that.
 3                 So for the reasons articulated by
 4   Ms. Brewer, I am not going to order this discovery, and I
 5   believe that issue has been fairly and decisively ruled
 6   upon by Judge Jackson.
 7                 All right.
 8                 MS. BREWER:  Thank you.
 9                 SPECIAL MASTER RODRIGUEZ:  Is there
10   anything else?
11                 MS. BREWER:  No.  Ms. Brewer again.
12                 I'm pleased to report, we had mentioned to
13   you on Tuesday that the parties were negotiating a
14   deposition protocol, and we actually resolved our
15   remaining issues related to that as of last night, and so
16   we don't need to take up your time with that.
17                 SPECIAL MASTER RODRIGUEZ:  Terrific.
18                 MS. BREWER:  And --
19                 SPECIAL MASTER RODRIGUEZ:  Thank you.
20                 MS. BREWER:  Yep.
21                 More good news for you, which is that, you
22   know, we've also taken to heart, again, consistent with
23   everything that I just said regarding how serious we took
24   Judge Jackson's guidance regarding moving this case along
25   and focusing on what's important.  And so at this point
```