# Exhibit E

Telephonic Hearing
October 26, 2020

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH
_____

WARNER BROS. RECORDS INC., et al.,

     Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC.,

     Defendant.
_____

TELEPHONIC HEARING

October 26, 2020
_____

     This telephonic hearing was taken before Special Master Regina Rodriguez on October 26, 2020, at 3:49 p.m. Mountain Standard Time before K. Michelle Dittmer, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, K. Michelle Dittmer, appearing remotely via telephone)

```
                         Telephonic Hearing
                          October 26, 2020
                                                              Page 2

 1    A P P E A R A N C E S
 2    ON BEHALF OF THE PLAINTIFF WARNER BROS. RECORDS INC.:
 3              MATTHEW J. OPPENHEIM, ESQ.
                JEFFREY M. GOULD, ESQ.
 4              Oppenheim & Zebrak LLP
                4530 Wisconsin Avenue N.W.
 5              5th Floor
                Washington, DC 20016
 6              Phone: 202-480-2999
                Email: matt@oandzlaw.com
 7              Email: jeff@oandzlaw.com
                (appeared telephonically)
 8
                NEEMA T. SAHNI, ESQ.
 9              Covington & Burling LLP
                1999 Avenue of the Stars
10              Suite 3500
                Los Angeles, California 90066-4643
11              Phone: 424-332-4757
                Email: nsahni@cov.com
12              (appeared telephonically)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   ON BEHALF OF THE DEFENDANT:
 2            ERIN R. RANAHAN, ESQ.
              Winston & Strawn, LLP
 3            333 South Grand Avenue
              Los Angeles, California 90071
 4            Phone: 213-615-1835
              Email: eranahan@winston.com
 5            (appeared telephonically)
 6            CRAIG D. JOYCE, ESQ.
              Fairfield & Woods, P.C.
 7            1801 California Street
              Suite 2600
 8            Denver, Colorado 80202-2645
              Phone: 303-830-2400
 9            Email: cjoyce@fwlaw.com
              (appeared telephonically)
10
11            ANDREW H. SCHAPIRO, ESQ.
              Quinn Emanuel Urquhart & Sullivan, LLP
12            191 N. Wacker Drive, Suite 2700
              Chicago, Illinois 60606
13            Phone: 312-705-7403
              Email: andrewschapiro@quinnemanuel.com
14            (appeared telephonically)
15
16
17
18
19
20
21
22
23
24
25
```

1    changed.
2              So, again, my recommendation is that the
3    parties really sit down and see if they can work
4    together.  I think it's much easier if I have a party
5    agreement that I can go to the Court with.
6              I think we can do that where we could work
7    with the response deadlines.  But it's much easier to do
8    it when we have some agreement, and I'm happy to sit
9    down, if we want to work through some of these deadlines,
10   and to help mediate a discussion by the parties on that
11   front.
12             But I think the time has come where folks
13   need to start to get realistic about talking to one
14   another and figuring out what can be done here.
15             MR. OPPENHEIM:  Ms. Rodriguez, this is
16   Matt Oppenheim.
17             I was at the last hearing, along with
18   Mr. Schapiro and Mr. Sperling -- who's not with us
19   today -- before Judge Hegarty, and he indicated as much
20   as -- as he expected that the current discovery deadline
21   would be pushed out.  And I don't think any of us were
22   particularly surprised, and at some point we anticipate
23   that it will be.  And I don't -- I don't think anybody on
24   this call probably expects otherwise.
25             And I'm not sure that that's really the

1    issue in front of us at the moment, because I -- and we
2    can -- I'm happy to -- we're happy to have a discussion
3    about that at any time.
4              I think that the real question is:  What's
5    the process we should be going through now on discovery
6    on the new claims?
7              And, look, the new claims are in the case
8    as of right now.  The different motions to dismiss, we
9    actually have a motion to dismiss on their counterclaims
10   pending their -- they don't yet have one.  They're
11   seeking leave to file one.
12             They're substantively different, but we
13   don't need to argue that in front of you, because the
14   principle that discovery should go forward, regardless of
15   what the deadline is, is one that should hold true.
16             And here, as much fun as all of our
17   hearings and emails have been to you over the last six,
18   eight months on discovery disputes, I don't think we want
19   to do a Groundhog Day campaign here of revisiting each of
20   those issues over again.
21             So what we're trying to do is find a way
22   to accomplish the discovery in a way that's sufficient
23   and makes sense.  And so we thought the most efficient
24   way was, let's just, as Ms. Sahni said, change the
25   default of what the time period is because that time

1   period is based off of either the parties' agreement or
2   rulings from -- from you.  We thought that, as a default,
3   that was a good way to start.
4               If -- if we want to handle it some other
5   practical way, we can, such as expedited responses to
6   existing discovery requests for the new time period where
7   they can raise new issues.
8               What I don't -- I think any of us probably
9   wants is to start a process which is going to result in
10  us reliving the last six, eight months all over again
11  with the exact same arguments and the exact same issues
12  over and over again relitigated in front of you, but now
13  just on a different time period.  That -- that would make
14  no sense.
15              So we're open to -- to any kind of
16  discussion on how to do this.  What we're not open to is
17  a process that -- that raises the time and the cost for
18  everybody and delays everything, which I don't think we
19  should have to go through in this instance.
20              So, you know, courts routinely exercise
21  discretion to require expedited responses to discovery.
22  Courts routinely change discovery periods when claims
23  change and new information comes to light.
24              So what we're asking is not in any way
25  extraordinary.  It's really just to have a discussion

1   about how to handle this matter.  And while Mr. Schapiro
2   may say, "Well, this is the opposite of efficient," look,
3   he may not like the fact that there are new claims in the
4   case and the fact that there are new claims may be
5   inefficient from his perspective, but there are new
6   claims in the case, you know, and that is what it is.
7                  So here we are.  We've got to find a way
8   to deal with it.  We're open to a dialogue on it.  I
9   welcome having that dialogue with you instrumental in
10  that discussion if that would help.
11                 I don't think, on this issue, us going
12  back and forth with more meet-and-confer emails, that
13  we're going to necessarily make progress.  So I think it
14  would be helpful to have you involved in that, if you're
15  willing to do it.
16                 And I understand why you might say no, but
17  I do think it would be helpful.
18                 SPECIAL MASTER RODRIGUEZ:  All right.
19  Well --
20                 MR. SCHAPIRO:  Ms. Rodriguez --
21                 SPECIAL MASTER RODRIGUEZ:  -- here --
22  yeah, hold on just a minute and then I'll let you speak
23  on this.
24                 I do agree with Mr. Oppenheim's
25  encapsulation of the issue, which is the next step I was

 1   that in relatively quick fashion and -- and would like to
 2   have expedited responses.
 3              What I think we want to avoid is 30 days
 4   to get what would be a perfunctory set of objections, and
 5   then a two-month meet-and-confer process before anything
 6   gets actually teed up to you, and then have some
 7   discussion about running hit counts and -- and, you know,
 8   next thing you know, we're four months into it.
 9              So we don't need to go through the
10   perfunctory objection stage.  They should issue any
11   objections which are -- you have not already ruled on and
12   that are truly uniquely different, and I mean truly
13   different, than what they've already objected and do that
14   in an expedited way.
15              And I still think there's no need to do
16   hit counts and burdens.  I think we have a paradigm of
17   what is appropriate here.
18              SPECIAL MASTER RODRIGUEZ:  Well, I don't
19   know.  The defendants are free to do what they need to do
20   on their side, and if they need to look at hit counts and
21   they find that it's going to be an extreme burden, I
22   don't think there's anything that precludes them from
23   that.
24              But I think that they understand that that
25   is going to be looked at a bit with askance, A, in this

 1   case where we've already said and we've said repeatedly
 2   that burden is a pretty high standard in this kind of
 3   case.
 4             So again, I mean, there may be something
 5   that we don't foresee here, something that -- changing
 6   the timelines or changing the custodians might
 7   dramatically increase or change that we're not predicting
 8   at the moment.  But I would agree that, all things being
 9   equal, we shouldn't see a lot of argument on those
10   issues.
11             It does make sense to me that the
12   procedures to be used would be that the plaintiffs would
13   need to go through each of the discovery requests,
14   include the prior rulings, and identify where the parties
15   have already reached agreement; and that they would
16   provide that to Charter, along with their requests for
17   discovery.
18             We do need -- I think, as appealing as it
19   may sound to be very simple about this, to just simply,
20   quote/unquote, amend the discovery request would create
21   enough of confusion and chaos in already a challenging
22   case to manage.
23             So I do think we need to have discovery
24   requests that address this particular time period and are
25   related to the counter-counterclaim.

```
 1                   MR. SCHAPIRO:  Ms. Rodriguez --
 2                   SPECIAL MASTER RODRIGUEZ:  To the extent
 3   that you can consolidate those so that we're not talking
 4   about as many or that we have seen, through our
 5   discussions on these discovery requests, some were
 6   overlapping, some were in ways duplicative, to the extent
 7   we can resolve those issues and narrow with that, I'd ask
 8   that the plaintiffs do that as they're going through
 9   their discovery requests.
10                   MR. SCHAPIRO:  And is that --
11                   SPECIAL MASTER RODRIGUEZ:  Then we would
12   have -- yes?
13                   MR. SCHAPIRO:  No, no.  Go ahead.  Sorry.
14                   SPECIAL MASTER RODRIGUEZ:  Then once the
15   plaintiffs are able to provide those to defense, we'll
16   set a time period for defendants to respond.
17                   But I would say to defendants, you need to
18   already be doing your own work and looking at these.
19   It's not going to be a surprise to you, necessarily, what
20   the requests are.  Plaintiffs have represented that they
21   are the exact same requests.
22                   So I'm anticipating -- without knowing for
23   sure here -- but I'm anticipating something to the effect
24   of two to three weeks to provide a response.
25                   MR. SCHAPIRO:  So all of this seems
```