# Exhibit G

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF COLORADO

 3
     Civil Action No. 19-CV-00874-RBJ-MEH
 4

 5    WARNER RECORDS, INC., et al.,

 6           Plaintiffs,

 7           vs.

 8    CHARTER COMMUNICATIONS, INC.,

 9           Defendant.

10   -----------------------------------------------------------------
                           REPORTER'S TRANSCRIPT
11                          Status Conference
     -----------------------------------------------------------------
12
              Proceedings before the HONORABLE R. BROOKE JACKSON,
13   Judge, United States District Court for the District of
     Colorado, commencing on the 15th day of December, 2020, via
14   video teleconference from Courtroom A902, United States
     Courthouse, Denver, Colorado.
15
                                APPEARANCES
16
     For the Plaintiffs:
17   MATTHEW J. OPPENHEIM and JEFFREY M. GOULD, Oppenheim & Zebrak
     LLP, 4530 Wisconsin Ave. N.W., 5th Floor, Washington, D.C.
18   20016

19   JONATHAN M. SPERLING, Covington & Burling LLP, 620 Eighth
     Ave., New York, NY 10018
20
     For the Defendant:
21   ANDREW H. SCHAPIRO, Quinn Emanuel Urquhart & Sullivan LLP, 191
     N. Wacker Dr., Ste. 2700, Chicago, IL 60606
22
     LINDA J. BREWER, Quinn Emanuel Urquhart & Sullivan LLP, 50
23   California St., 22nd Floor, San Francisco, CA 94111

24
         Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
25                 Denver, CO 80294, 303-335-2108

              Proceedings reported by mechanical stenography;
                 transcription produced via computer.
```

19-CV-00874-RBJ-MEH    Status Conference         12/15/2020    2

1               *         *         *         *         *

2        (The proceedings commenced at 10:00 a.m.)

3            THE COURTROOM DEPUTY:  Court is in session.

4            THE COURT:  Good morning.  19CV874, Warner Records
5   versus Charter Communications.  We're set this morning for a
6   status conference at the request of the parties.  So who's
7   appearing?  Let's start with the plaintiff side.

8            MR. OPPENHEIM:  Good morning, Your Honor.  This is
9   Matt Oppenheim.  Also on the line with me from my firm
10  Oppenheim & Zebrak by audio is Jeff Gould, and my co-counsel
11  is also on the line.  I'll allow him to introduce himself.

12           MR. SPERLING:  Good morning, Your Honor.  Jonathan
13  Sperling of Covington & Burling also for the plaintiff.

14           THE COURT:  Who's on the call for the defendant?
15  You're muted.

16           MR. SCHAPIRO:  I had it backwards.  I apologize, Your
17  Honor.  Andrew Schapiro from the Quinn Emanuel firm, and I'll
18  allow my colleague to introduce herself.

19           MS. BREWER:  Good morning, Your Honor.  Linda Brewer
20  from Quinn Emanuel also representing Charter.

21           THE COURT:  All right.  What's up?

22           MR. OPPENHEIM:  Your Honor, this is Matt Oppenheim.
23  The reason we asked for this hearing was in order to try to
24  have a practical discussion about how plaintiffs should
25  proceed on the plaintiffs' counterclaims and reply or

                           Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH     Status Conference          12/15/2020    3

1   plaintiffs' new claims.  As Your Honor may know from some of
2   the briefing already, these claims are identical to the
3   existing legal claims in the case.  They include both
4   contributory and vicarious infringement claims like the
5   existing claims.  They're premised on the exact same legal
6   theory, that is, you know, Charter knowingly provided Internet
7   service to specifically identified repeat infringers for whom
8   Charter had repeatedly been put on notice, and that Charter
9   could have easily stopped that infringing behavior but chose
10  not to in order to continue to profit from those infringers.
11          The new claims involve the exact same new parties --
12  excuse me -- the exact same parties, many of the same fact
13  witnesses, likely precisely the same expert witnesses, and the
14  same types of evidence.  The plaintiffs first brought these
15  claims six months ago in June in response to Charter's
16  declaratory judgment claim.  As Your Honor no doubt recalls,
17  there's been a lot of back-and-forth motions and letters
18  already on how these new claims should proceed.
19          THE COURT:  Do you think I'm surprised given the
20  history of your motion practice?
21          MR. OPPENHEIM:  No, Your Honor.  But putting aside
22  the procedural maneuverings, plaintiffs intend to proceed on
23  these claims one way or the other.  Frankly, there are several
24  different ways that they could move forward.  But the question
25  that is ultimately before the Court is whether these claims

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH   Status Conference          12/15/2020    4

1  should proceed in this case or in a separate but related case
2  in this court, and the only reason not to litigate the new
3  claims together with the existing claims is if it will somehow
4  unfairly prejudice the schedule, and it won't, and we'll speak
5  about that.  The schedule is going to be extended anyway --
6              THE COURT:  Says who?
7              MR. OPPENHEIM:  Your Honor, Judge Hegarty --
8              THE COURT:  Judge Hegarty is a magistrate judge.  Who
9  says the schedule is going to be extended?
10             MR. OPPENHEIM:  Very well.
11             THE COURT:  Because I can tell you right now it will
12 not be.
13             MR. OPPENHEIM:  Your Honor, the current discovery
14 schedule is set to close in January.  The parties still have
15 multiple written discovery issues before the magistrate and
16 before the special master.  The -- at the last hearing that we
17 had before Magistrate Judge Hegarty he had indicated to us --
18 obviously it's up to Your Honor, but he had indicated to us
19 that he anticipated that the schedule would be extended.  The
20 special master has also indicated the same.  Again, obviously
21 up to you.
22             And in our meet-and-confers with opposing counsel,
23 there has been discussion about submitting a revised schedule.
24 We put aside -- proposed schedule, obviously subject to Your
25 Honor.  We put that aside for the moment because we wanted to

                         Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference        12/15/2020    5

1    determine from Your Honor how these new claims would be

2    proceeding before we put forward a proposed new schedule.

3             THE COURT:  Okay.  Thank you, sir.

4             What's the defendant's position?

5             MR. SCHAPIRO:  Our position is that there is no good

6    cause for allowing these claims to be added.  This is styled

7    as a counterclaim, but as Your Honor will recall, originally

8    the plaintiffs described these as compulsory counterclaims.

9    Your Honor correctly, of course in our view, agreed with us

10   that they were not compulsory because we were not in our

11   counterclaim proposing to extend the time period for this

12   case.  We had made that clear to the plaintiffs, and Your

13   Honor made it clear to the plaintiffs that our say-so was

14   sufficient in that regard.  This case has been -- so

15   therefore, this is either a counterclaim which is permissive,

16   or I think it's more rationally understood as an attempt to

17   amend the pleadings belatedly.

18            Your Honor is correct this case has had a long

19   history, and I respectfully disagree with Mr. Oppenheim's

20   characterization of what we heard from Magistrate Judge

21   Hegarty.  Magistrate Judge Hegarty expressed surprise and I

22   would say perhaps some admiration that we were still trying to

23   stick to the original schedule.  Now, it may be that the

24   schedule becomes challenging at the margins, and that perhaps

25   we will be coming to the Court asking for a brief extension,

                         Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference         12/15/2020    6

1   maybe 90 days.  But what the plaintiffs are proposing here
2   will blow that up entirely.  It would add four years.  It
3   would add thousands -- four years of a claims spirit,
4   thousands of works in suit.  I believe I heard Mr. Oppenheim
5   say it's the same parties.  It's not precisely the same
6   parties.  Only one of the plaintiffs is suing -- would be
7   suing under these new claims.
8          And there's an interesting side fact there, which is
9   that plaintiff itself was not similarly situated to the
10  plaintiffs in the current existing claims period, because in
11  the current existing claims period the plaintiff used agents,
12  various companies, a company called MarkMonitor to send out
13  the notices that are at the center of this case.  The new
14  plaintiff for this new time period sent out its own notices.
15         There would be an entirely new type of discovery,
16  round of discovery.  And on our end, as you might imagine, a
17  company over four years, the list of custodians and witnesses
18  changes and is ever changing.  And as we've noted in our
19  motion to dismiss which we filed the other day -- I don't
20  necessarily presume the Court has read it because they're not
21  all fully submitted -- we note that internally we followed a
22  different procedure for dealing with notices during that time
23  period.
24         So I could go on about the differences, but I'm
25  hoping perhaps --

                      Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH     Status Conference          12/15/2020    7

1      THE COURT: Please don't. Yes, Mr. Schapiro, I saw
2 that you filed a motion to dismiss counterclaims that hadn't
3 even been filed yet. That's a new one. But then again, in
4 this case you folks are rather prolific when it comes to
5 filing motions against what the other side has done or what
6 you think they might do.
7      The Court is not going to permit the plaintiff to add
8 the new claims. I have no hesitancy in saying that.
9 Mr. Oppenheim's letter told the Court that I better do it or
10 else. I'll select or else. If the plaintiff wants to file a
11 new case, let them file. Folks, this case was filed on
12 March 22nd of 2019. It's an old case. You have consumed a
13 great deal of time of Magistrate Judge Hegarty, and perhaps an
14 even greater amount of time from Special Master Rodriguez.
15 And you've had plenty of time to do discovery. You have not
16 been the slightest bit shy about filing your motions. You
17 have a trial date. That date is October 18th, 2021. That
18 date was set on May 5th of 2020. And this case, unless it
19 settles, will go to trial on October 18th, 2021.
20     Now, as far as your pretrial schedule is concerned,
21 if you can reach agreement on, for example, extending
22 discovery a little bit, okay, I don't really care. If you
23 don't reach agreement, the discovery cutoff is what it is.
24 The dispositive motions cutoff is what it is, and that's the
25 way we're going to do it.

                          Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference         12/15/2020    8

1           MR. SCHAPIRO:  Thank you, Your Honor.  We appreciate
2    that.
3           MR. OPPENHEIM:  Your Honor, to the extent that you --
4    again, sorry.  For the court reporter, it's Matt Oppenheim.
5    Obviously did not intend our letter to you to come across the
6    way it appears to have been taken by the Court, and my
7    apologies in that respect.  Our point was our clients intend
8    to proceed on the claims, and if not in this case, we'll file
9    a second case.  Not meant threatening, just matter of factly,
10   what any rights-holder whose rights have been infringed has an
11   obligation to do and they'll do.  And, Your Honor, so we'll
12   take that path and certainly didn't mean any offense.
13          THE COURT:  Fine.  What else, folks?
14          MR. SCHAPIRO:  That's all as far as we're concerned,
15   Your Honor.
16          MR. OPPENHEIM:  Thank you, Your Honor.
17          THE COURT:  How about your colleagues?  The one
18   that's on mute trying to talk, but I can just see her lips
19   moving.
20          MS. BREWER:  Did I successfully unmute myself, Your
21   Honor?
22          THE COURT:  There you go.  Tell me again your name,
23   please.
24          MS. BREWER:  Linda Brewer from Quinn Emanuel.  In
25   light of Your Honor's guidance at this status conference, I

                        Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference         12/15/2020    9

1  thought we would benefit from clarification from you as to
2  whether you would wish for us to continue the briefing on the
3  motion to dismiss or hold that in abeyance in light of --
4           THE COURT:  There's nothing for you to dismiss.  I'm
5  not adding the claims.
6           MS. BREWER:  Okay.
7           THE COURT:  You can withdraw that one.
8           MS. BREWER:  Okay.
9           MR. SCHAPIRO:  Thank you, Judge.
10          THE COURT:  What a refreshing thing that would be for
11 the Court.
12          MS. BREWER:  Understood, Your Honor.
13          THE COURT:  I think Mr. Oppenheim has left us.
14          MR. SPERLING:  Your Honor, it seems that he dropped
15 accidentally.  With respect to Ms. Brewer's question --
16          THE COURT:  I don't know if it was accidental, but
17 he's gone.
18          MR. SPERLING:  He's gone.  With respect to
19 Ms. Brewer's question, I think there may just be a
20 misunderstanding, or perhaps the misunderstanding is mine.
21 The claims have been pled.  It's the motion that Charter filed
22 was not an anticipatory motion.  We filed an answer to their
23 declaratory judgment claim.  We asserted the counterclaim in
24 those papers, and so it is pled, and we certainly understand
25 Your Honor's guidance, but it's not the case that there's sort

                         Sarah K. Mitchell, RPR, CRR

19-CV-00874-RBJ-MEH    Status Conference    12/15/2020    10

1  of nothing there.  It is pled, and their motion is directed at
2  that pleading.  And so procedurally, I don't want to get hung
3  up on niceties, but I also don't want the Court to be under a
4  misimpression, and then we end up with no ruling by the Court.
5              THE COURT:  What is there for me to rule on?
6              MR. SCHAPIRO:  Well, Your Honor, I'm not sure, but I
7  suppose the record could be cleaned up by granting an oral
8  motion to -- which I'm making now -- to strike the
9  counter-counterclaims.
10             THE COURT:  Well, if the counter-counterclaims are
11 the new claims, your motion is granted.
12             MR. SCHAPIRO:  Thank you.
13             THE COURT:  They're not going to proceed in this
14 case.  The case is the 11,027 works between March 24th, 2013,
15 and May 17th, 2016.  Now, if you folks had any sense you'd
16 settle this case, but maybe --
17             MR. SPERLING:  Your Honor, the only other thing that
18 I wanted to --
19             THE COURT:  Maybe there are reasons why you don't
20 want to settle.
21             MR. SPERLING:  Your Honor, for the plaintiffs,
22 Jonathan Sperling.  The only other issue that I wanted to
23 raise, we hear the Court's guidance loud and clear with
24 respect to the trial schedule.  The existing fact discovery
25 cutoff at the end of January -- we certainly understand that

                         Sarah K. Mitchell, RPR, CRR