**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al*.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>　　　　Defendant. | Case No. 1:19-cv-00874-RBJ-MEH |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S RESPONSE TO PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S JANUARY 27 ORDER**

This Court should reject Plaintiffs' request to overturn the Special Master's January 27, 2021 Order permitting limited redactions to Charter's highly sensitive financial data, which was based on both an *in camera* review of the unredacted documents and a finding that Charter had fully complied with the scope of prior orders related to Charter's production of data on average revenue, profit, and subscription length. Dkt. 351, Plfs. Objection ("Objection"); Dkt. 351-1, Jan. 27, 2021 Order ("Order"). The Special Master's determination was narrowly-tailored and within the bounds of her discretion, and Plaintiffs' objection should be overruled.

**BACKGROUND**

On May 29, 2020, the Special Master ordered that Charter produce ""[d]ocuments sufficient to show the average revenue and profit that [Charter] . . . received per Subscriber," and "documents [that] show the average length of time that Charter retained a customer during the claim period, to the extent that information is maintained in the ordinary course of business." Dkt. 181, May 29, 2020 Order, 37–38. This information (sought by Plaintiffs' Requests for Production 52 and 53, respectively) was "straightforward and sufficiently narrow[.]" *Id.*; *see also* Ex. A,

1

5/18/20 Hr'g Tr. 153:19–24 (stating, with respect to RFP 52, "I would order that Charter produce that information – it's fairly limited here, that – produce the average or estimated cost that Charter estimates for obtaining a subscriber during the claim period and the average or estimated cost associated with terminating a subscriber's Internet service during the claim period."); *id.* 159:21–160:2 (stating, with respect to RFP 53, "that is a very narrow request . . . I would order that Charter would produce the average time that Charter retained a customer during the claim period, if there are documents that show that information . . . That would be very limited and narrow[.]")

Charter located information responsive to these requests within larger spreadsheets akin to "data repositories," and "identified the relevant data therein to provide Plaintiffs with the information requested." Dkt. 351-1, Order at 2.[1] Because these spreadsheets contained "non-responsive budgetary information" that is commercially sensitive but not relevant or responsive to Plaintiffs' requests or to the Special Master's order, *id.*, Charter produced the portions of the spreadsheets that were responsive to Plaintiffs' "very narrow request[s]," and redacted the commercially sensitive information not responsive to the requests. Plaintiffs ultimately moved the Special Master to compel Charter to produce the entirety of these spreadsheets, and, following briefing and argument, the Special Master ordered Charter to provide her with the redacted and

---

[1] Plaintiffs argue that Charter's ability to produce this data in 2020 somehow renders inaccurate its prior representations to this Court in 2019. (Dkt. 351, Objection at 2–3.) Charter believes this type of *ad hominem* criticism of counsel is inappropriate and has no place in this briefing, but responds to Plaintiffs' criticism so that the record is clear. Plaintiffs fail to acknowledge that Charter's counsel agreed to investigate whether Charter could produce "unbundled" revenue data by service type during a December 17, 2019 discovery conference. (Ex. B, 12/17/19 Hr'g Tr. 45:14–25; *see also* Dkt. 100, Courtroom Minutes, 2–3.). After making that inquiry, Charter's counsel promptly informed the Court that it could locate such information. Indeed, Plaintiffs' Objection includes, as an exhibit, an email from September 2020, in which Charter's counsel explained the relevant history, complete with citations to a letter Charter submitted to the Court in January 2020 indicating that it could produce the data discussed at the December 17, 2019 discovery conference. See Dkt. 351-5, 9/16/20 Email from E. Ranahan to M. Fields. As such, any such suggestion that Charter withheld information from this Court is inaccurate.

2

unredacted versions of the spreadsheets so that she could perform an *in camera* review and render a final decision.  Ex. C, 1/22/21 Hr'g Tr. 62:3–6.

Following this *in camera* review, the Special Master denied Plaintiffs' motion for an to order requiring further production on January 27, 2021.  Dkt. 351-1, Order, 2.  The Special Master emphasized that "[w]hen the parties argued these RFPs on May 18, 2020, much attention was paid to the narrowness of these requests." *Id.*  In particular, "Plaintiffs sought documents sufficient to show a particular amount—average revenue and profit received per subscriber (RFP 52) and average and/or estimated total length of time that Charter retains subscribers (RFP 53)." *Id.* Charter's productions were "in line with what was discussed during the hearing." *Id.*

Based on her *in camera* review, the Special Master determined that much of the information in these spreadsheets was "neither relevant nor probative[.]" *Id.*  Given the narrowness of Plaintiffs' request relative to the large amount of irrelevant, non-probative financial information contained in the spreadsheets, the Special Master "f[ound] therefore that [Charter's] redactions are appropriate." *Id.*

The Special Master explicitly considered and rejected Plaintiffs' argument that Charter's redactions were inconsistent with this Court's December 8, 2020 observation, with respect to a different production, that "you generally don't get to produce documents and then redact nonresponsive information." Dkt. 351-6, 12/8/20 Hr'g Tr. 83:20–22.  The Special Master noted that this Court did not order that all non-responsiveness redactions be removed from the production at issue on December 8, 2020, but instead "order[ed] that only a sampling of information be provided in unredacted form so that Plaintiffs could determine whether there were any arguments to be made regarding the relevance of the redacted information." Dkt. 351-1, Order, 3.  Notably,

3

at the December 8, 2020 hearing, "Plaintiffs specifically argued that they could not assess the redactions because the titles of the rows and columns had been redacted." *Id.* Here, "the titles of both the rows and columns are available," so that "[i]f any of the information redacted was indeed relevant, Plaintiffs would have been able to tell and could have made such arguments." *Id.* But Plaintiffs did not raise any arguments before the Special Master regarding the relevance of any particular redacted field. *Id.*

Plaintiffs have also previously argued that redactions are improper because "[w]e have a protective order in this case with a highly confidential Attorneys' Eyes Only designation." Dkt. 351-6, 12/8/20 Hr'g Tr. 90:12–15. Pursuant to that protective order, the spreadsheets presently at issue are all designated "Highly Confidential – Attorneys' Eyes Only." Notwithstanding that designation, Plaintiffs' Objection as originally filed on the public docket described the specific contents of these spreadsheets. Dkt. 349. Plaintiffs ultimately re-filed these spreadsheets under seal, but Plaintiffs' presumed inadvertent disclosure of the spreadsheets in public filings demonstrates that Charter's concerns regarding the sensitivity of these materials are warranted and that its redactions of its sensitive financial information wholly irrelevant to the matters at issue in this dispute are justified. Dkt. 350, Plfs. Mot. to Restrict.

## LEGAL STANDARD

An order from the Special Master on non-dispositive motions will "only" be set aside if "it constitutes an abuse of discretion." Dkt. 143, Order Appointing Special Master ¶ 6 (Mar. 11, 2020). To satisfy the "abuse of discretion" standard, an order must be based on "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Baldwin v. United States*, 2012 WL 7051296, at *3 (D. Colo. Sept. 17, 2012) (quoting *Mid-Continent Cas. Co. v. Village At Deer*

4

*Creek*, 685 F.3d 977, 981 (10th Cir. 2012)); *see also Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008) (overruling objections and holding that an abuse of discretion involves the special master "fail[ing] to articulate a reason for [her] decision" or "articulat[ing] a reason which has no basis in fact or the reason so articulated is contrary to law") (citation omitted).

## ARGUMENT

Plaintiffs' Objection should be overruled because the Special Master's decision permitting limited redactions to Charter's highly sensitive financial data was well-reasoned, appropriate, and fully within her discretion. The Special Master declined to order further production of financial data in response to RFPs 52 and 53 after receiving written submissions from both parties, hearing oral argument, and conducting an *in camera* comparison of the spreadsheets in question. *See* Dkt. 351-1, Order. Because that determination plainly has a "basis in fact" and is not "contrary to law," it should be affirmed. *Lee*, 249 F.R.D. at 671.

### A.   The Special Master Did Not Abuse her Discretion In Allowing Redactions.

Plaintiffs' primary argument that the Special Master abused her discretion in declining to order further production is this Court's December 8, 2020 observation that "you generally don't get to produce documents and then redact nonresponsive information." Dkt. 351-6, 12/8/20 Hr'g Tr. 83:20–22. However, as this Court noted at that time, "it's a little different" in the context of non-documentary spreadsheets, "where you are not just blacking out certain lines of a memo or an e-mail." *Id.* at 92:17–19. In such cases, this Court noted "the normal analysis wouldn't necessarily apply," *id.*. 92:19–20, which is why the Court did not order Charter to provide the full dataset at issue in the December 8, 2020 hearing, but rather to produce as "Attorneys' Eyes Only some small sampling of redacted material to one lawyer for the plaintiff just for purpose of this process." *Id.*

5

92:21–23.  In other words, in an analogous context, this Court *did not* reject all redactions of non-responsive elements of larger spreadsheets, but rather ordered a "small sampling" be produced for the purpose of facilitating a compromise that could potentially eliminate the expenditure of further Court resources on an ancillary dispute.

As the Special Master explained, the Court's basis for ordering that a "small sampling" of redacted data be produced does not apply here, where Defendants did not redact row and column titles, allowing Plaintiffs to see the subject of the redacted material.  Dkt.351-1, Order at 3; *compare id.*, *with* Dkt. 351-6, 12/8/20 Hr'g Tr. 94:7–10 ("[W]e would like to make sure we can see the titles of the tabs and of the rows and columns [because] [o]therwise, it's hard to assess what's actually being redacted.").  Notwithstanding their ability to see the column and row headers, Plaintiffs failed to articulate any reason why the redacted material was responsive or even relevant.  Dkt. 351-1, Order, 3.[2]  Moreover, the Special Master decided based on her *in camera* review that "the redacted data is neither relevant nor probative," and Plaintiffs offer no factual or legal basis on which to second-guess that determination.  *Id.* at 2.

Far from abusing her discretion, the Special Master's determination was consistent with this Court's December 8, 2020 order and ample case law permitting the redaction of non-responsive material from documents prior to production.  *See, e.g.*, *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 222 (N.D. Ill. 2013) (reasoning that "redacting documents that are non-responsive

---

[2] In their Objection, Plaintiffs assert, for the first time, that certain of the column and row headers suggest that the information may be "relevant to the case and responsive to the above document requests."  Dkt 351, Objection at 3.  Even if Plaintiffs had made these arguments before the Special Master (which they did not), Plaintiffs do not explain why any of this material is relevant, much less how any of it is responsive to the narrow "document requests" at issue.

6

to . . . document requests is appropriate" and collecting cases permitting documents to be redacted); *Corker v. Costco Wholesale*, 2020 WL 1987060, at *2 (W.D. Wash. Apr. 27, 2020) (considering nature of Excel workbooks as warranting redaction of non-responsive information before declining to rule on the issue for other grounds).[3]

Here, the Special Master granted Charter leave to do exactly what the law permits. Charter was ordered to produce, and has produced, the aspects of the spreadsheets that are responsive to RFPs 52 and 53, and the Special Master has confirmed through an *in camera* review that "the redacted data is neither relevant nor probative." Dkt. 351-1, Order at 2. This is neither lacking a "basis in fact" nor "contrary to law" and does not constitute an abuse of discretion.

### B. Plaintiffs Have Received The Information They Requested.

Finding no basis in this Court's orders or other case law to challenge the Special Master's determination, Plaintiffs instead quibble about the amount of redacted material. Dkt. 351, Objection, 3 (discussing the number of redacted cells). What Plaintiffs do not acknowledge, however, is that they have received exactly what was requested: documents sufficient to show a particular amount—average revenue and profit received per subscriber . . . and average and/or estimated total length of time that Charter retains subscribers[.]" Dkt. 351-1, Order, 2. That is precisely what Plaintiffs sought with RFPs 52 and 53, and precisely what the Special Master ordered Charter to produce. Dkt. 181, May 29, 2020 Order, 37–38.

---

[3] *See also Epling v. UCB Films, Inc.*, 2000 WL 1466216, at *12-13 (D. Kan. Aug. 7, 2000) (permitting redactions to a spreadsheet); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *5 (N.D. Cal. Sept. 15, 2014) (same); *cf.* Fed. R. Civ. P. 26(c)(1)(G) (permitting district courts to restrict information to being "revealed only in a specified way").

Further, the Special Master found that Charter's redaction of non-responsive and irrelevant portions of these spreadsheets containing "large [amounts of] data" was "in line with what was discussed during the hearing[.]" Dkt. 351-1, Order at 2; *id.* ("I don't agree that Charter's actions with regard to RFPs 52 and 53 constituted unilateral relevance redactions.")  As this Court has stated, "if the Special Master said produce responsive information but you don't have to produce nonresponsive, then as a general matter we are going to not question that."  Dkt. 351-6, 12/8/20 Hr'g Tr 85:6–8.  Because Charter produced all it was ordered to produce, Plaintiffs' Objection should be overruled.

## CONCLUSION

Because Plaintiffs cannot demonstrate that the Special Master's order was "contrary to law," Charter respectfully requests that Plaintiffs' Objection be overruled.

Dated: February 10, 2021

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
Email: jgolinveaux@winston.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
Email: melkin@winston.com
Email: tlane@winston.com
Email: sspitzer@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
Email: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
Email: cjoyce@fwlaw.com

Respectfully submitted,

*/s/ Andrew Schapiro*

Andrew H. Schapiro
Nathan A. Hamstra
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
Email: andrewschapiro@quinnemanuel.com
Email: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

*Counsel for Defendant
Charter Communications, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 10, 2021, I caused a true and correct copy of the foregoing Response to Plaintiffs' Objection to Special Master's January 27th Oder and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro