# Exhibit A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3    Civil Action No. 19-cv-00874-RBJ-MEH

 4    _____

      WARNER BROS. RECORDS INC., et al.,
 5
              Plaintiffs,
 6
      vs.
 7
      CHARTER COMMUNICATIONS, INC.,
 8
              Defendant.
 9
      _____
10
                        TELEPHONIC HEARING
11
                          May 18, 2020
12
      _____

13           This telephonic hearing was taken before

14    Special Master Regina Rodriguez on May 18, 2020, at

15    1:32 p.m. Mountain Standard Time before K. Michelle

16    Dittmer, Registered Professional Reporter and Notary

17    Public within the state of Colorado.

18
      (The reporter, K. Michelle Dittmer, appearing remotely
19    via telephone)

20

21

22

23

24

25
```

```
 1    A P P E A R A N C E S

 2   ON BEHALF OF THE PLAINTIFF WARNER BROS. RECORDS INC.:

 3            MATTHEW J. OPPENHEIM, ESQ.
              JEFFREY M. GOULD, ESQ.
 4            Oppenheim & Zebrak LLP
              4530 Wisconsin Avenue N.W.
 5            5th Floor
              Washington, DC 20016
 6            Phone: 202-480-2999
              Email: matt@oandzlaw.com
 7            Email: jeff@oandzlaw.com
              (appeared telephonically)
 8

 9            JONATHAN MICHAEL SPERLING, ESQ.
              Covington & Burling LLP
10            620 Eighth Avenue
              The New York Times Building
11            New York, New York 10018-1405
              Phone: 212-841-1153
12            Email: jsperling@cov.com
              (appeared telephonically)
13

14            NEEMA T. SAHNI, ESQ.
              Covington & Burling LLP
15            1999 Avenue of the Stars
              Suite 3500
16            Los Angeles, California 90066-4643
              Phone: 424-332-4757
17            Email: nsahni@cov.com
              (appeared telephonically)
18

19

20

21

22

23

24

25
```

```
 1    ON BEHALF OF THE DEFENDANT:

 2              MICHAEL STUART ELKIN, ESQ.
                SEAN R. ANDERSON, ESQ.
 3              CESIE C. ALVAREZ, ESQ.
                Winston & Strawn, LLP
 4              200 Park Avenue
                New York, New York 10166-4193
 5              Phone: 212-294-6729
                Phone: 212-294-5388
 6              Email: melkin@winston.com
                Email: sranderson@winston.com
 7              Email: calvarez@winston.com
                (appeared telephonically)
 8
                JENNIFER ANN GOLINVEAUX, ESQ.
 9              Winston & Strawn, LLP
                101 California Street
10              Suite 3400
                San Francisco, California 94111-5802
11              Phone: 415-591-1506
                Email: jgolinveaux@winston.com
12              (appeared telephonically)

13              ERIN R. RANAHAN, ESQ.
                Winston & Strawn, LLP
14              333 South Grand Avenue
                Los Angeles, California 90071
15              Phone: 213-615-1835
                Email: eranahan@winston.com
16              (appeared telephonically)

17              JOHN (JACK) TANNER, ESQ.
                Fairfield & Woods, P.C.
18              1801 California Street
                Suite 2600
19              Denver, Colorado 80202-2645
                Phone: 303-830-2400
20              Email: jtanner@fwlaw.com
                (appeared telephonically)
21

22

23

24

25
```

```
 1   the larger discovery period for those subscribers.  This
 2   request goes broader and asks about average revenue and
 3   profit that we receive for any subscriber for the life of
 4   the account for a long period of time.
 5               So it's -- it's really not relevant to the
 6   claims in the case, and the plaintiffs already have the
 7   information they need on this with respect to the
 8   subscribers who actually got their notices.
 9               SPECIAL MASTER RODRIGUEZ:  Well, I
10   understand that the defendant would limit this strictly
11   to the subscribers that got their notices.
12               But seems to me that the plaintiffs are
13   asking for something broader here and are likely entitled
14   to probe that information because they're looking to be
15   able to make an argument in general, particularly where
16   they don't have the ticket data for a great number of
17   those people for whom notices were sent.
18               But certainly a company such as Charter
19   would have to have information regarding its average
20   revenue or profit per prescriber for the relevant claim
21   period.  So I will order that that information be
22   provided as requested in Interrogatory -- or in RFP
23   Number 52.
24               With regard to RFP 50, the representation
25   that termination information is available related to
```

```
 1   subscribers who failed to pay, it seems that that's a
 2   different issue, and average cost of obtaining -- let me
 3   ask this question:
 4              Does Charter keep data about average costs
 5   of obtaining or terminating a subscriber?
 6              MS. GOLINVEAUX:  Not -- not in the form
 7   requested in this RFP, Ms. Rodriguez.  I mean, there's
 8   various data points, obviously, in financial documents
 9   that are relevant to this, but no -- I would say no
10   document sufficient to show this as plaintiffs have asked
11   it.
12              SPECIAL MASTER RODRIGUEZ:  All right.
13   Well, does -- it sounds like Charter does keep data for
14   the claim period that would provide Charter's average or
15   estimated costs for, one, obtaining a subscriber, and,
16   two, costs with terminating a subscriber's Internet
17   service.  It seems to me to be a fairly straightforward
18   inquiry and something that Charter does have.
19              So I would order that Charter produce that
20   information -- it's fairly limited here, that -- produce
21   the average or estimated cost that Charter estimates for
22   obtaining a subscriber during the claim period and the
23   average or estimated cost associated with terminating a
24   subscriber's Internet service during the claim period.
25              MS. GOLINVEAUX:  We'll do that to the
```

1    extent the documents exist.

2                SPECIAL MASTER RODRIGUEZ:  Exhibit
3    Number -- or, sorry, RFP 53.

4                Mr. Gould, would you like to address that
5    one specifically?

6                MR. GOULD:  Happy to, Ms. Rodriguez.

7                This is, again, another input that's
8    important for our financial expert to test Charter's
9    assertion as to the revenues, average revenues it
10   receives from its subscriber.

11               Essentially, you can think of this,
12   Ms. Rodriguez, as a multiplier.  Our expert intends to
13   both test Charter's representation on its revenue per
14   subscriber and to conduct his own or her own analysis.
15   That is typically information that can be determined on
16   an annual basis.

17               In order to determine the full value of a
18   subscriber to Charter, you need the multiplier to figure
19   out if Charter earns, on average, $100 or $1,000 per
20   subscriber per year; and the average subscriber purchases
21   services from Charter for seven years, then you multiply
22   it by seven years.  It's a fairly straightforward metric
23   that goes into the analysis.

24               What we know from working on -- and with
25   ISPs like Charter over the years, that this is