# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | **Case No. 19-cv-00874-RBJ** |

### PLAINTIFFS' AMENDED OBJECTIONS AND RESPONSES TO CHARTER COMMUNICATIONS, INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS

PROPOUNDING PARTY:   Defendant Charter Communications, Inc.

RESPONDING PARTY:   Plaintiffs Warner Records Inc., *et al.*

SET NUMBER:   One and Two

Plaintiffs Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Warner Chappell Music, Inc., Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp., W.C.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Chappell & Co. Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recordings, LLC, Sony/ATV

1

Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc., d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co., Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music–MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music–Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GMBH, PolyGram Publishing, Inc., and Songs of Universal, Inc. (collectively "Plaintiffs"), through their undersigned counsel and pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Parties' May 7, 2020 agreement to mutually amend their prior RFP responses in the above-captioned case in light of subsequent meet and confers and discovery proceedings, hereby respond to Defendant Charter Communications, Inc.'s ("Charter") Requests for Production ("Request(s)") upon Plaintiffs as follows. Plaintiffs' investigation into the facts of this case is ongoing and is not yet completed, and Plaintiffs therefore reserve the right to supplement or amend their responses and objections to the extent permitted by the Federal Rules of Civil Procedure, the Local Rules, and any applicable order of this Court. The responses set forth herein are based solely on the information that is presently available and known to Plaintiffs.

**PLAINTIFFS' OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

1.   Plaintiffs object to Charter's definitions, instructions, and the individual Requests to the extent they seek to impose obligations other than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the District of Colorado, and any applicable order of

2

this Court. Plaintiffs will interpret and respond to the Requests in the manner prescribed by the same.

2. Plaintiffs object to the definitions and instructions to the extent they call for information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint defense or common-interest privilege, or any other privilege or immunity under federal or state law. The inadvertent production of information that is privileged, was prepared in anticipation of litigation or for trial, or that is otherwise protected from discovery, shall not constitute a waiver of any privilege or any ground for objection, or of the right of Plaintiffs to object to the use of such information during subsequent proceedings. Plaintiffs are willing to meet and confer with Charter in good faith to discuss a joint approach to addressing privilege. In the event that an inadvertent production or identification of information is deemed by the Court to be a waiver of any privilege or immunity, the waiver shall be a limited waiver pertaining to that information only.

3. Any confidential or proprietary information pertaining to the Plaintiffs' businesses, technology, or economic relationships shall be disclosed solely pursuant to the protective order in the above-captioned action (Dkt. 70, the "Protective Order").

4. Plaintiffs object to the definitions and instructions as overly broad and unduly burdensome to the extent they require Plaintiffs to produce documents or information beyond what Plaintiffs are able to locate from a reasonable and diligent search of their files.

5. Plaintiffs' response to the Requests will be made without waiver of, and with the intentional preservation of:

   a. All objections as to the competence, relevance, materiality, privilege, confidentiality, authenticity, and admissibility as evidence in any aspect of this or any other legal proceeding;

   b. The right to object on any ground to the use of information or documents, or the subject matter thereof, in any aspect of this or any other legal proceeding;

   c. The right to object at any time to further requests for production on any ground; and

   d. The right to revise, correct, supplement, or clarify the responses and objections propounded herein at any time.

 6. Identification or production of documents or information responsive to any discovery request should not be construed as:

   a. An admission or stipulation that the information or documents or their content or subject matter are properly discoverable or relevant;

   b. A waiver by Plaintiffs of any of their objections as set forth herein; or

   c. An agreement that requests for similar information will be treated in a similar manner.

 7. Plaintiffs interpret the Requests to include a reasonable time period of March 1, 2012 to May 17, 2016, and limit their responses to the requests for production accordingly, unless otherwise indicated below.

 8. Plaintiffs object to the definition of "Plaintiff," "Plaintiffs," "You," or "Your," to the extent it encompasses entities, individuals, and information outside of Plaintiffs' knowledge, possession, custody, or control. Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case. By including "all past and present . . . employees" of every corporate affiliate, parent, and predecessor of the Plaintiffs, Charter is requesting that Plaintiffs search for information relating to tens of thousands of persons, including even persons who have not worked for any Plaintiff in decades. By including "all past and present predecessors, successors, subsidiaries, affiliates, and parent companies[,]" Charter is requesting that Plaintiffs search for information held or pertaining to related corporate entities which have no connection to this matter. Plaintiffs will construe the terms "Plaintiff," "Plaintiffs," "You" or "Your" to refer to the specific entities named as Plaintiffs in this action.

4

9. Plaintiffs object to the definition of "Communication" as overbroad, unduly burdensome, and disproportionate to the needs of the case. For example, the definition includes "telex" messages, which refers to messages sent on a public switched network of teleprinters that businesses used prior to the adoption of fax machines in the 1980s. Charter cannot justify the burden of searching for and reviewing telex messages since this case concerns Charter's infringement of Plaintiffs' copyrights from 2013 to 2016. It is also unlikely that "posts on social media platforms or blogs" would contain relevant information not already publicly available to Charter. And any limited or tangential relevance of such information would be outweighed by the burden of searching an undefined number of social media and blog sites for, potentially, tens of thousands of current and former employees. Plaintiffs will construe "Communication" to mean oral and written transmittals of information which are reasonably searchable without undue burden to Plaintiffs, and likely to contain relevant information not already available to Charter.

10. Plaintiffs object to the definition of "Electronic Storage Device" as overbroad, unduly burdensome, and disproportionate to the needs of the case. For example, the definition includes "SIM cards," which are small integrated circuits designed to authenticate subscribers on cellphone networks. There is no reason to believe that SIM cards contain unique information that would justify the burden of locating and extracting data from, potentially, tens of thousands of cards. Plaintiffs will construe "Electronic Storage Device" to mean those electronic repositories likely to contain relevant information, from which data can be reasonably extracted without undue burden to Plaintiffs.

11. Plaintiffs object to the definition of "Residential ISP Customer" as overbroad, unduly burdensome, and disproportionate to the needs of the case, in that it encompasses a broad category of persons having no relationship to Charter, the copyrighted works in suit, and/or BitTorrent or other similar peer-to-peer file-sharing networks. Plaintiffs further object to Charter's definition of "Residential ISP Customer" because it assumes facts and/or requires knowledge not in Plaintiffs' possession, custody, or control. In addition, to the extent that Charter's requests for

5

production relating to Residential ISP Customers seek documents or information concerning any "peer-to-peer litigation program," whether "university-specific or corporate," Plaintiffs object on the basis that such requests seek information protected by the attorney-client privilege, attorney work-product doctrine, or joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. Plaintiffs are aware of no documents that could be responsive to such a request that fall outside of the attorney-client privilege or the protection afforded to trial preparation materials under the Federal Rules of Civil Procedure.

12.     Plaintiffs object to the definition of "Non-Residential ISP Customer" as overly broad, unduly burdensome, and disproportionate to the needs of the case, in that it encompasses a broad category of persons having no relationship to Charter, the copyrighted works in suit, and/or BitTorrent or other similar peer-to-peer file-sharing networks. Plaintiffs further object to Charter's definition of "Non-Residential ISP Customer" because it assumes facts and/or requires knowledge not in Plaintiffs' possession, custody, or control. In addition, to the extent that Charter's requests for production relating to Non-Residential ISP Customers seek documents or information concerning any "peer-to-peer litigation program," whether "university-specific or corporate," Plaintiffs object on the basis that such requests seek information protected by the attorney-client privilege, attorney work-product doctrine, or joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. Plaintiffs are aware of no documents that could be responsive to such a request that fall outside of the attorney-client privilege or the protection afforded to trial preparation materials under the Federal Rules of Civil Procedure.

13.     Plaintiffs object to the definition of "peer-to-peer file sharing technologies" as so overly broad as to be meaningless. For example, despite the words used, Charter's definition does not limit the term to BitTorrent or similar peer-to-peer file-sharing networks, and instead includes any "websites, other locations on the Internet or other networks, services, products, applications,

apps, software, hardware, programs or programming, code, computer-based products, and/or any similar or related thing." Therefore, Plaintiffs interpret "peer-to-peer file sharing technologies" to refer to websites, applications, or programs that use the BitTorrent protocol or other protocol that similarly allows individual computers to act as a server for other computers, allowing shared access to files and peripherals without the need for a central server.

14. Plaintiffs object to the definitions of "RIAA," "MarkMonitor," "Harbor Labs," "Rightscorp," and "Stroz Friedberg," to the extent those definitions encompass entities, individuals, and information outside of Plaintiffs' knowledge, possession, custody, or control. Plaintiffs further object to the definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case. By including "past and present employees" of each such entity, Charter is requesting that Plaintiffs search for information relating to an unknown number of persons, all of whom are outside of Plaintiffs' control. Plaintiffs will construe "RIAA" to mean the Recording Industry Association of America itself; "MarkMonitor" to mean MarkMonitor, Inc. itself; "Harbor Labs" to mean Harbor Labs itself, "Rightscorp" to mean Rightscorp, Inc. itself; and "Stroz Friedberg" to mean Stroz Friedberg itself.

15. Plaintiffs object to the definition of "MarkMonitor System" to the extent it encompasses information outside of Plaintiffs' knowledge, possession, custody or control. Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case in that it encompasses a broad category of information having no relationship to Charter, the copyrighted works in suit, and/or BitTorrent or other similar peer-to-peer file-sharing networks.

**OBJECTIONS AND RESPONSES TO CHARTER'S REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**
Documents sufficient to identify all works, including, but not limited to, the Copyright Works, in which You own, claim, and/or control a copyright that You allege that subscribers, account holders, or customers of Charter have infringed and for which You claim Charter is responsible or liable in this litigation.

7

"sufficient to demonstrate the claimed lost sales or licenses due to infringement of the [sic] Copyright Works on peer-to-peer file sharing sites." Furthermore, Plaintiffs seek statutory damages in this case. Notwithstanding the above, Plaintiffs refer Charter to the notices of infringement sent on behalf of Plaintiffs to Charter regarding the copyrighted works identified on Exhibits A and B of the First Amended Complaint, Dkt. 123. In addition, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016. Plaintiffs will also (1) deem produced to Charter track-by-track revenue information already produced in *Sony Music Entm't, et al. v. Cox Commc'ns, Inc., et al.*, solely as to any overlapping works at issue in this case; and (2) Plaintiffs will produce annualized top-end financial data that includes streaming revenues for 2017, 2018, and 2019, to the extent located based on a reasonable and diligent search.

**REQUEST NO. 12:**
All documents that evidence, refer to, discuss, support, or refute any damages or harm, including, without limitation, monetary damage, You claim to have suffered, or believe are likely to suffer, due to the infringements of each of the Copyright Works by Charter's subscribers, account holders, or customers, as alleged in Your Complaint.

**OBJECTIONS TO REQUEST NO. 12:**

Plaintiffs object to this request as premature because Plaintiffs do not yet know the full scope of Charter's infringement of Plaintiffs' copyrighted works. A more complete picture of Charter's infringement will be developed and determined during discovery. Plaintiffs reserve the right to rely upon and/or assert in this litigation any of their copyrighted works infringed by Charter. Moreover, Plaintiffs object to this request because much of the information sought by this request is within Charter's possession, custody, or control, which Plaintiffs are presently seeking from Charter in discovery in this case. For example, Charter's documents showing that it continued to provide services to subscribers repeatedly infringing the copyrighted works in suit will help demonstrate "damages or harm, including . . . monetary damage" Plaintiffs suffered due to

infringement of the copyrighted works in suit by Charter's subscribers, account holders, or customers.

Plaintiffs also object to this request insofar as it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or joint defense or common-interest privilege, as trial preparation materials, or other privilege or immunity recognized by law. Such information shall not be produced in response to any of Charter's requests, and any inadvertent production shall not be deemed to waive any privilege with respect to such information.

In addition, Plaintiffs object to this request's call for "all documents that evidence, refer to, discuss, support, or refute any damages or harm" as overly broad, not proportional to the needs of the case, and therefore unduly burdensome.

**RESPONSE TO REQUEST NO. 12:**

Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**AMENDED RESPONSE TO REQUEST NO. 12:**

Subject to the foregoing objections, the parties' correspondence and discussions during the meet-and-confer process, this Court's discovery orders and rulings, and the Protective Order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016. Plaintiffs will also (1) deem produced to Charter track-by-track revenue information already produced in *Sony Music Entm't, et al. v. Cox Commc'ns, Inc., et al.*, solely as to any overlapping works at issue in this case; and (2) produce annualized top-end financial data that includes streaming revenues for 2017, 2018, and 2019, to the extent located based on a reasonable and diligent search.

overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited to the relevant time period at issue in this case.

**RESPONSE TO REQUEST NO. 94:**

Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

**REQUEST NO. 95:**

All correspondence between You and recording artists and/or songwriters (or their representatives) regarding allegations of Your failure to honor Your contractual obligations to them, including Your underpayment (or failure to pay) royalties, fees, advances, and other payments (including those related to audits) to them or the recording artists' and/or songwriters' (or their representatives') threats of termination of applicable agreements.

**OBJECTION TO REQUEST NO. 95:**

Plaintiffs object to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case, because allegations regarding Plaintiffs' payment or underpayment of royalties or other contractual payments to artists has no plausible relevance to the subject matter of this case and cannot bear on the claims at issue or the defenses thereto. Plaintiffs object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited to the relevant time period at issue in this case.

**RESPONSE TO REQUEST NO. 95:**

Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

Dated: May 27, 2020

*/s/ Neema T. Sahni*
Mitchell A. Kamin
Neema T. Sahni
Mark Chen
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: (424) 332-4800

mkamin@cov.com
nsahni@cov.com
mychen@cov.com

Jonathan M. Sperling
William O'Neill
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
woneill@cov.com

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on May 27, 2020, a true and correct copy of the foregoing was served on counsel for the parties of record.

*/s/ Neema T. Sahni*
Neema T. Sahni
