# EXHIBIT 3

1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
  Case No. 19-cv-874-RBJ-MEH
3 _____

4 WARNER RECORDS, INC., et al.,

5      Plaintiffs,

6 vs.

7 CHARTER COMMUNICATIONS, INC.,

8      Defendant.
  _____

9

10         Proceedings before MICHAEL E. HEGARTY, United

11 States Magistrate Judge, United States District Court for the

12 District of Colorado, and REGINA M. RODRIGUEZ,

13 Court-Appointed Special Master, commencing at 9:18 a.m.,

14 February 23, 2021, in the United States Courthouse, Denver,

15 Colorado.

16 _____

17 WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN
   TYPOGRAPHICALLY TRANSCRIBED. . .
18 _____

19                          APPEARANCES

20         JONATHAN M. SPERLING, JEFFREY M. GOULD, SHIRA

21 POLIAK, MATTHEW J.  OPPENHEIM, ALEX KAPLAN, STACEY GRIGSBY,

22 ANDERS LIDEROT, J. HARDER EHLERS, Attorneys at Law, appearing

23 for the Plaintiffs.

24 _____

25     IN COURT HEARING: UNRESOLVED DISCOVERY DISPUTES
```

```
1                APPEARANCES (continued)
2          ANDREW H. SCHAPIRO, LINDA J. BREWER, GRACIE CHANG,
3    JOHN ROSENTHAL, ERIN R. RANAHAN, JACK M. TANNER, ALLISON H.
4    HUEBERT, JENNIFER A. GOLINVEAUX, SEAN ANDERSON, CECIE
5    ALVAREZ, Attorneys at Law, appearing for the Defendant.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

49

1  we could sort it.  And we were troubled by the fact it wasn't
2  provided to us in a way that it would have been obvious on
3  the face of this that there was this long gap.  We had to
4  discover that by digging around.
5          MR. ROSENTHAL:  I just add, in terms of our
6  request, we obviously want the information.  We want the Hash
7  Report.  We would also ask that a privilege log be created by
8  Oppenheim & Zebrak as to all their communications as between
9  MarkMonitor and Audible Magic.  At this time, we're not
10 moving to pierce those, but we do have serious concerns as to
11 whether or not a privilege exists.  We don't believe a
12 privilege exists.
13         Let me explain that for a second, Your Honor.  In
14 the Cox case, look, they have to present evidence at trial,
15 right, of the alleged infringement.
16         So what do they do in the Cox case?  They went out
17 and they hired Audible Magic as a consultant to generate
18 this -- this information.  And then they called a person from
19 Audible Magic as a fact witness, right, from MarkMonitor as a
20 fact witness, to present this evidence and authenticate the
21 witness, right.
22         So here we have a situation where now they're
23 claiming all that is attorney work product, right.  Somehow
24 it's attorney work product, right.  They're manufacturing
25 evidence to use at trial and then calling a litigation

50

1  consultant, who is not a litigation consultant; it's a

2  testifying expert, right, to testify at trial.  They're going

3  to have to present that same evidence here, right.  They're

4  going to try and shoestring this person as a fact person.

5          THE COURT:  Well, did you try --

6          MR. ROSENTHAL:  If they're a fact --

7          THE COURT:  Did you try to inquire -- did you try

8  to -- did you argue to the judge in Virginia that this person

9  is not a fact witness; it should be -- they should be

10 designated as an expert, they should produce a report, they

11 should comply with Rule 26?

12         FEMALE SPEAKER:  Your Honor, the plaintiffs did not

13 produce the 2016 consulting agreement in Cox, even though

14 such agreements were ordered by the magistrate.  So we were

15 not aware of the project in Cox, so it was a very different

16 setup.

17         THE COURT:  No, no.  But he said Mark -- somebody

18 from MarkMonitor testified in the case, but the person wasn't

19 involved in the claims period with anything.  They were

20 completely post-claims period, kind of forensic review of

21 these hashes and yet, he was allowed to testify as a fact

22 witness and not an expert?

23         FEMALE SPEAKER:  He testified as to the system and

24 how reliable the system was and the files that they got as

25 part of that 2016 project, which are the files that they

51

1  relied on as the evidence of direct infringement in Cox and
2  that they plan to rely on as the evidence of direct
3  infringement in this case.
4          MR. ROSENTHAL:  So, Your Honor, if I could just
5  finish.
6          They're going to have to call that and they're
7  going to have to call a fact -- a witness here to testify to
8  all this.  Otherwise, they're not going to have any evidence
9  of direct infringement.
10         If the person is a fact witness, which we don't
11 believe they are, then they don't have an attorney-client
12 privilege, not with Oppenheim & Zebrak, right.  They're a
13 fact witness here.  They don't get to do work product as a
14 fact witness.
15         If they're a testifying expert, they don't get to
16 shield under the federal rules their communications with
17 their attorneys that form the basis of their opinions or
18 could be used to attack those.  They can't have it both ways.
19         You know, I reviewed all these pleadings and
20 everybody is talking about substantial need here, but
21 everybody has simply missed the underlying fact here.
22         There is no underlying privilege.  It can't exist.
23 It's not a question of work product and substantial need.
24 They can't have an underlying attorney-client privilege here.
25 It doesn't work that way.  And it's -- they could argue it

52

1  hasn't come to head because they haven't designated
2  MarkMonitor yet as a witness, which is why we want all these
3  communications logged, because that's coming, and they can't
4  have it both ways.
5         THE COURT:  So there is no Rule 26(a)(1) disclosure
6  or supplemental disclosure that identifies any MarkMonitor
7  employee?
8         MR. GOULD:  MarkMonitor is listed on the initial
9  disclosure in June of 2020.
10        THE COURT:  Okay.  Well, obviously, you've got to
11 be listed on a -- on a disclosure in order for a person to
12 testify as a witness at trial.
13        MR. ROSENTHAL:  So, Your Honor, at this point in
14 time, look, it's clear this is the damage evidence in the
15 case.  We are entitled to probe it, to show why it's not what
16 they say it is, it's not what they said it is in Cox.
17        THE COURT:  Well, it's a causation.  It's the
18 causation evidence, not the damages evidence.  We already
19 gave you the damages evidence, right?
20        MR. SCHAPIRO:  I guess in the end, Your Honor -- if
21 I may.
22        THE COURT:  Am I right, is it the causation?
23        MR. SCHAPIRO:  I think it's both.
24        So they have to, just for liability, they have to
25 prove that there was actual direct infringement, right,

83

1  will be able to point to things and argue to the jury that
2  there was some of that happening.
3          THE COURT: And what you're seeking right now is
4  just this thing called the Hash Report? That's all we're
5  talking about at the moment?
6          MR. SCHAPIRO: Yeah. My colleague will make the
7  larger ask.
8          But the first step is the Hash Report, which as I
9  understand it, it's -- it's a list of works that they -- or
10 hashes that they wanted to be searched and some explanation
11 of, either what was found or wasn't found, which is purely
12 factual, as far as I know. If there is something in there
13 that says why specifically a lawyer wants you to look at this
14 one, there would be a perfectly good argument, I'm sure, that
15 that should be redacted.
16         But if their argument is instead that, somehow if I
17 know that they sent out a request for Superstition by Steven
18 Wonder and Ain't Too Proud To Beg by the Temptations, and
19 Superstition comes back as a positive and Ain't Too Proud to
20 Beg doesn't, that somehow we'll be able to figure out
21 something amazing or revealing about the lawyer's thought
22 process in including Ain't Too Proud To Beg. That is
23 marginal, at best.
24         MR. ROSENTHAL: Well, so a couple things.
25         First of all, counsel raised the issue about the

105

1          THE COURT:  Right.
2          FEMALE SPEAKER:  If they found them, they sent them
3    over to Audible Magic to check, and both those datasets got
4    put on the Hash Report.
5          THE COURT:  And if they didn't find them, they
6    disregard -- they disregard- -- they just threw out that
7    information?
8          FEMALE SPEAKER:  We don't know because we haven't
9    seen the Hash Report.
10         THE COURT:  Okay.
11         MR. SCHAPIRO:  And I think there's nar- -- I think
12   we're actually in agreement on the foundation here, I think,
13   from hearing what Mr. Gould said.  And maybe Mr. Gould can
14   agree, yes, it is possible -- we would contend legally it is
15   not our obligation, given how much of a burden it would be.
16   It is possible for us to back out and at least determine
17   which items on the notices that we received are not in the
18   case now.  And we can assume that those ones also were in the
19   Hash Report.
20         But that's not the thing that we're particularly
21   interested in about the Hash Report.  What we're interested
22   in is, when you sent these out, what did MarkMonitor and
23   Audible Magic find?  I believe they will tell us, We have no
24   basis, without the Hash Report, of determining what
25   MarkMonitor or Audible Magic found.

110

1  MarkMonitor did not keep some of the results of the work that
2  they did in 2016.
3          MR. GOULD:  That's not correct.
4          THE COURT:  Is that your understanding?
5          MR. ROSENTHAL:  Audible Magic.
6          THE COURT:  Audible Magic.  Somebody didn't.
7          MR. ROSENTHAL:  And then -- and then --
8          THE COURT:  What about Audible Magic?
9          SPECIAL MASTER:  Can I --
10         MR. GOULD:  Audible Magic disclosed recently that
11 they could not find the lookups that pertain to this project,
12 that's correct.
13         MR. ROSENTHAL:  So we have a couple of things.
14 One, we have of the Audible Magic data.  Two, we have a legal
15 hold that did not go into place until 2018, even though they
16 were -- MarkMonitor was retained in 2016.  They have not
17 logged a single e-mail in that time period.  So we believe
18 that information has either been lost or hasn't been logged.
19 We would like it all logged so we can make an evaluation as
20 to whether or not it was lost or not.
21         SPECIAL MASTER:  Okay.  Let us just deal with the
22 first issue, which is the request for the Hash Report, the
23 full Hash Report.  Our order is that the Hash Report should
24 be produced.
25         Number one, we do believe that the claim of work

1   product is somewhat dubious here.  It is not entirely clear

2   whose work product protection this is, who's claiming it, et

3   cetera.  But even assuming that work product protection would

4   cover the Hash Report, there is a substantial need for this

5   evidence, as set forth by the defendants; and that this

6   information is not available from another source,

7   particularly given that Audible Magic no longer has the

8   underlying data and defendants have attempted to obtain the

9   underlying data from third-party sources, in particular

10  MarkMonitor and Audible Magic.

11          Therefore, it is our opinion that the substantial

12  need test, if a work product protection even did exist in

13  this situation, that showing has been met.  Therefore, we

14  determined that the document in question, that is, the hash

15  tag report, should be produced.

16          THE COURT:  And at the end of today, again, we're a

17  going to talk about timing.  Timing would include a stay of

18  any particular order to permit you to appeal, but it's going

19  to be a tight timeline because, as Mr. Sperling said, you

20  know, I think you guys want a trial sooner than later.  And

21  so in light of that, you'll have tight timelines for you to

22  appeal anything tighter than the rules, the Local Rules,

23  okay.

24          MR. SCHAPIRO:  All right.  So next -- I think we

25  can just go back to our chart, if that's acceptable to --

256

1        TRANSCRIBER'S CERTIFICATION

2   I certify that the foregoing is a correct transcript to the

3   best of my ability to hear and understand the audio recording

4   and based on the quality of the audio recording from the

5   above-entitled matter.

6

7   /s/ Dyann Labo                    March 1, 2021

8   Signature of Transcriber          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25