# Exhibit F

1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
   Case No. 19-cv-874-RBJ-MEH
3  _____

4  WARNER RECORDS, INC., et al.,

5       Plaintiffs,

6  vs.

7  CHARTER COMMUNICATIONS, INC.,

8       Defendant.
   _____
9

10          Proceedings before MICHAEL E. HEGARTY, United

11 States Magistrate Judge, United States District Court for the

12 District of Colorado, commencing at 9:33 a.m., February 1,

13 2021, in the United States Courthouse, Denver, Colorado.

14 _____

15 WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN

16 TYPOGRAPHICALLY TRANSCRIBED. . .

17 _____

18                          APPEARANCES

19         MATTHEW J. OPPENHEIM and JONATHAN SPERLING,

20 Attorneys at Law, appearing for the Plaintiffs.

21 _____

22                       STATUS CONFERENCE

23

24

25
```

                                                                    2

1                   APPEARANCES (continued)

2              ANDREW H. SHAPIRO, ERIN R. RANAHAN,

3    ALLISON H. HUEBERT, CESIE ALVAREZ and CRAIG JOYCE, Attorneys

4    at Law, appearing for the Defendant.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

71

1    that you can run off some kind of software on a computer that
2    you bring with you.
3             MR. SHAPIRO:  Okay.
4             THE COURT:  Keep it all internal to yourself.  I'll
5    sit next to you or somebody and look at it, appropriately
6    masked up, I guess, if I need to be, and then -- and then
7    take a look for myself.  Okay?
8             MS. RANAHAN:  And you're talking about only
9    Mr. Abramov's or the whole? because that was count for
10   Mr. Abramov, I believe.
11            THE COURT:  The three custodians that Mr. Oppenheim
12   is referring to.  Okay.
13            MS. RANAHAN:  There is one more issue, Your Honor,
14   if we could raise, and this is something you had denied
15   without prejudice on earlier -- at an earlier time.  At our
16   first very first initial teleconference with you, we raised
17   that we needed to have -- as you know, plaintiffs are raising
18   statutory damages of billions of dollars between this and the
19   Florida case.  They have brought a certain number of works,
20   11,000-plus works, and what you previously ordered as far as
21   financial track by track was that we could get whatever was
22   produced in the Cox case.
23            The Cox case doesn't include 3- to 4,000 of the
24   works that are only here in this case, and also, only covers
25   a portion of the claim period at issue in this case.  So it

72

1   doesn't have anything from either 2015 or 2016.
2           So we have a portion of the track level
3   financial -- when I say track level, it means the works
4   specifically for which plaintiffs are seeking 150,000 per
5   work.  We have only a portion and only a truncated time
6   period.  So we -- in the 30(b)(6), for instance, that we had
7   on Friday, the witness was presented with this Cox data and
8   was confused by why, you know, it wasn't for the full claim
9   period and seemed to have not the works at issue.  And I
10  have -- at least there are several reasons why it's
11  appropriate now for us to try to come back to you and try to
12  figure out how to revisit this.
13          So first of all, I think you're -- one of your
14  initial concerns was, we're not going to be presenting for
15  11,000 works individual financial information to the injury,
16  because it's not a realistic thing, which is -- I agree with
17  that.
18          But what we could do -- and I had a trial in March
19  of 2020 against many of the publishers at issue in this case,
20  where we had track level financials for every work for the
21  whole claim period.  We were able to find certain examples
22  that were the lowest or that didn't yield any financials, and
23  I think specifically cross witnesses about those.
24          THE COURT:  Are we losing the video?
25          MS. RANAHAN:  So right now we don't have -- we

73

1   don't have full claim period financials for anyone, for any
2   single work, and we also don't have the full scope of the
3   works at issue.  There is, again, several thousand missing.
4              So -- and also, of course, we would love our expert
5   to be able to do a comprehensive synthesis of all the works
6   at issue for the time period at issue.  And at present we
7   can't have our expert do that either because he's, again,
8   only given the work at issue in Cox.
9              Plaintiffs have not agreed to do that because they
10  say there is some burden involved, though, again, we haven't
11  had any specific burden.  They were able to isolate this
12  information to produce in Cox.  To suggest that they don't
13  track on a song-by-song basis is just not realistic.  We've
14  had -- we've had track by track produced in this case I'm
15  referring to in March that us against the publishers.  They
16  keep this information.  They keep -- it's like saying a food
17  manufacturer is not going to track which product is making
18  which money.  Of course, they track this data and it's very
19  basic.  I know you've reiterated how important it is to have
20  broad relevance and to be able to give us a chance to defend
21  ourselves from billions of dollars of liability.
22             And in the case in March where we were able to find
23  some of those examples, the jury -- I know we've heard a lot
24  about the billion dollar verdict, but in this case, the jury
25  actually found the lowest, 750 per work in this case, and we

74

1  were able to use that financial data to cross some of them on
2  it.
3            So I -- I don't know if this is an appropriate
4  venue to raise this.  I'm doing it because I think we need to
5  do it sooner than later so that our expert can get it so that
6  we can start having meaningful information in these
7  depositions to ask about.  And you had made it very clear
8  several times that it was without prejudice to see what we
9  could do with the sampling information and then come back if
10 we needed more.
11           MR. OPPENHEIM:  Your Honor, I believe -- first of
12 all, this reference to this other lawsuit in March, it wasn't
13 an ISP case.  It was in no relation to this at all.  It was
14 against a small individual website, individual owner, not a
15 multibillion dollar company like Charter engaged in egregious
16 conduct as they have here.  Put that aside, that case is not
17 relevant.
18           This issue was resolved I believe by you and then
19 appealed to Judge Jackson, and I believe that Judge Jackson
20 said it's inconceivable that a jury would examine the number
21 of works individually and calculate damages separately on a
22 work-by-work basis.  That might be defendant's litigation
23 position, but it is unrealistic from a practical standpoint.
24 And he went on.  That Judge Jackson rejected this, as I
25 recall, and, you know, there is a significant burden to

75

1  pulling all of the individual data as to each of the tracks
2  in this case. So the idea was that they would -- they would
3  get what had already been pulled and they got that.
4           So I'm happy -- if they want to seek to reargue it
5  and they want to rebrief it, we'll go back through all the
6  briefing and what Judge Jackson said before and what the
7  ruling was, but on the fly, that's my recollection.
8           THE COURT: No, but I don't think she's talking
9  about --
10          MS. RANAHAN: (Inaudible).
11          THE COURT: Hold on, hold on, my turn. I don't
12 think she's talking about getting down into the weeds and
13 going on a work-by-work basis. She's talking about getting
14 data that her expert can accumulate so they can present to
15 the jury a cumulative argument as to what damages might be in
16 the event the jury finds liability. That's how I interpret
17 it, I guess.
18          MR. OPPENHEIM: So she --
19          MS. RANAHAN: (Inaudible).
20          MR. OPPENHEIM: So, remember, we produced
21 cumulative data on the record industry. What I understand
22 her asking for is saying, we only have track-by-track revenue
23 data on 3- to 4,000 works. We want track-by-track revenue
24 data on the rest, on the other 6,000 works. So she wants
25 what she doesn't have already, which is, you know, one and

76

1   half times the work that was already done for the Cox case,
2   which by the way, was not used in the Cox case by any expert
3   or anybody.
4           MR. SHAPIRO:  And, Your Honor, I will say as the
5   person who took the deposition on Friday of their 30(b)(6)
6   witness, when I showed him what we were permitted to use,
7   which is just the list of works and the revenue related to
8   those works from Cox, he was reasonably enough a little bit
9   confused.  He was saying, Well, yes, some of these are the
10  works in this case, but what is this list from, because I was
11  asking questions about the damages they face.  And we were
12  able to muddle through with a list from Cox, but given that
13  they're seeking a lot of money from us, it shouldn't be that
14  hard for them to give us the list of revenue from natural
15  works in suit in this case.
16          MS. RANAHAN:  And I will say, as far as Judge
17  Jackson's ruling, he actually said -- he noted in his ruling
18  that you had given us permission to come back after if we
19  felt like we needed more information and that that was
20  significant to his ruling.
21          And as far as Cox, I disagree that we didn't use it
22  at all.  I wasn't part of the Cox team, but I understand that
23  we did.  But you also had noted in February, it would be
24  insane of us to take the exact same damages approach that we
25  took in Cox again here.  Of course, that didn't go as well,

1   which is why I'm citing that example to what happened in
2   March, which as plaintiffs' counsel noted, you know, it is
3   not relevant.  Of course it's relevant.  It's a situation
4   where the jury is asked to decide what's fair, and we were
5   able to come up with the best example we could find of, for
6   instance, a work that had zero revenue for the whole period.
7   And for us to be able to find those examples and distinguish
8   high-value works from low-value works, we should have the
9   right do that, as opposed to what happened in Cox, which is
10  where --
11              THE COURT:  Go ahead.
12              MS. RANAHAN:  -- which is where the jury picked a
13  number and they picked the billion and worked backwards from
14  the billion.  We would rather have the jury look at these
15  things as different values, which they're entitled to do and
16  we're allowed to present, some of them worth with very
17  little.  And if we can do -- if we can get data -- I mean,
18  this is basic.  The litigating copyright cases for 16 years
19  have never had a case where we can't get basic financial
20  information about the works alleged throughout the claim
21  period.  I mean, this is so incredibly basic and that we're
22  trying to now be able to -- whether we spend all of our trial
23  presenting every one to them or do some aggregate, this is
24  absolutely critical for us to be able to defend against,
25  again, a $2 billion case, where in the other case I'm

78

1   mentioning, the total damages for 200 works was 160,000.  So
2   it can make a difference (inaudible) for to us get this
3   financial data.
4           MR. OPPENHEIM:  Your Honor, so two things.  One is,
5   I understand the reason Mr. Cokakis (ph) in his deposition
6   was confused is because nobody explained to him what the
7   document was; that it was the revenue -- the track-by-track
8   revenue data from the Cox case.  So that's why he was
9   confused.  Mr. Shapiro didn't explain it to him, and so be
10  it, that's what happens.
11          MR. SHAPIRO:  Not correct.
12          MR. OPPENHEIM:  Let me offer a suggestion.  Judge
13  Jackson did leave open the possibility that if the defendants
14  made a showing that it was needed down the road based --
15  after a 30(b)(6) deposition, that they could make that
16  showing in writing.  So why don't they brief it up and let's
17  deal with it on the 22nd.  They submit a short letter brief,
18  we're happy to respond and deal with it then.
19          THE COURT:  Okay.  Well, I do think -- I agree
20  sooner than later is important, and I think there is going to
21  be probably some additional work to do on this particular
22  endeavor with regard to damages, because damages are
23  everything.
24          What I'm doing right now -- this is probably
25  unique, but I think it's appropriate -- I am communicating

```
 1   with --
 2             MR. OPPENHEIM:  I'm sorry -- sorry.
 3             THE COURT:  That's okay.
 4             MR. OPPENHEIM:  I was -- go ahead.
 5             THE COURT:  You go ahead.
 6             MR. OPPENHEIM:  I had responded to what had been
 7   said, but then realized I had been muted, and so if I could
 8   just -- Judge Jackson, Your Honor, did say --
 9             THE COURT:  We heard you.  No, we heard you.  You
10   weren't muted.
11             MR. OPPENHEIM:  Oh, you did?  Okay, okay, thank
12   you.
13             THE COURT:  That's okay.
14             MR. OPPENHEIM:  Apology.
15             THE COURT:  Nobody was saying anything.  There was
16   just quiet going on because I'm multitasking.  I'm -- I'm
17   conferring with the Special Master.  I mean, I've never done
18   this.  I've only used a Special Master once or twice in my
19   life.  She's going to -- she's going to be with us all day on
20   Monday and we're going to do this together, okay.  So you
21   bring your lawyers and I'm going to bring my lawyer and have
22   it out.
23             And we -- here is the thing.  I mean, I'm bringing
24   her in because I don't -- I'm not trying to bypass her, but I
25   do recognize that this could be creating some inefficiencies
```

80

1   given the time -- the proclivities which you guys appealed

2   what she's doing or what I'm doing.  So, you know, I guess

3   desperate times call for desperate measures.

4          So she and I and probably her associate will be

5   here as the neutrals.  Anything -- we'll try to create a

6   comprehensive list of what we discussed.  Anything not

7   discussed is waived after that day.  So be prepared, I guess.

8          Does anybody have any questions about that?  And

9   we'll address this issue as well with regard to further

10  production of financial information regarding the works at

11  issue.

12         MR. SHAPIRO:  The only question I have, Your Honor,

13  and maybe we can always -- we can always follow up with an

14  e-mail would be, we're all going to be tempted to put in

15  (inaudible) in advance of this, because we're lawyers and

16  that's what we want to do, and so we're happy do that, but

17  maybe you could give some guidance as to what you're seeking

18  in that regard because, of course, you know, we're all going

19  to be -- they'll send you something and we'll send you

20  something and they'll send you something and we'll all be

21  trying to get the last word, et cetera.  So I'm just

22  wondering what you're looking for in that regard, if

23  anything.

24         THE COURT:  Right.  So you're going to have an army

25  of people go through all the discovery you've issued, look at

94

1               TRANSCRIBER'S CERTIFICATION

2   I certify that the foregoing is a correct transcript to the

3   best of my ability to hear and understand the audio recording

4   and based on the quality of the audio recording from the

5   above-entitled matter.

6

7   /s/ Dyann Labo                    February 3, 2021

8   Signature of Transcriber          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25