# Exhibit G

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
    Case No. 19-cv-00874-MSK-MEH
 3  _____

 4  WARNER BROS. RECORDS, INC., et al.,

 5       Plaintiffs,

 6  vs.

 7  CHARTER COMMUNICATIONS, INC.

 8       Defendant.

 9  _____

10           Proceedings before MICHAEL E. HEGARTY, United

11  States Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 1:33 p.m., October 29,

13  2019, in the United States Courthouse, Denver, Colorado.

14  _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                            APPEARANCES

19           NEEMA SAHNI, MEGAN O'NEIL and JEFF GOULD, Attorneys

20  at Law, appearing for the Plaintiffs.

21           ERIN RANAHAN, ALLISON SKOPEC and JACK TANNER,

22  Attorneys at Law, appearing for Defendant.

23  _____

24                 TELEPHONIC DISCOVERY CONFERENCE

25
```

1  cases that have said, to not connect the damages and not
2  have it bear some relation to actual damages would -- would
3  be a windfall and what the jury needs to decide in a
4  statutory case of what is just, under the circumstances.
5  And we should be able to at least get discovery and make our
6  arguments for the jury.
7           THE COURT:  I understand.
8           So it's not my practice to make either side create
9  information or information that did not previously exist.
10 Based on plaintiff counsel's representations that a lot of
11 this information doesn't exist, then I'm not going to order
12 it produced.  However, you disbelieve that, based on what
13 you just said.  So what I --
14          MS. RANAHAN:  Yes.
15          THE COURT:  -- think should happen is that you
16 ought to do a properly worded, maybe even broad 30(b)(6) of
17 how the -- you know, maybe a sampling of how these record
18 companies do keep track of profits and whether they have an
19 idea of amount per work.  And if you can then show me that,
20 in fact, they -- plaintiffs' counsel was incorrect, and that
21 they do have a way of doing this, then it's a different
22 ballgame.
23          MS. RANAHAN:  Okay.
24          THE COURT:  So that would be without prejudice to
25 you getting some more information and showing me this is

1    something they can do easily and -- and if they provide the
2    right documents, any expert can reasonably calculate.  All
3    right?
4            MS. RANAHAN:  Okay.  Your Honor, could I make one
5    more point about that.
6            There's about 80 percent overlap in the work that
7    were in the prior case where this information was produced.
8    So there can be absolutely no burden on them reproducing for
9    this case what was produced about the same work in that
10   case, and, obviously, if they produce in that if that
11   exists.  So at the very least, we would request that they be
12   ordered to produce the work-ordered financials that they
13   produced in the other case that relate to the exact same
14   work at issue here.
15           THE COURT:  So you were counsel in that case --
16   were you counsel in that case?
17           MS. RANAHAN:  We were, we -- our firm was.  I
18   personally wasn't, just Jeff Gould on the phone was, for
19   plaintiff.
20           THE COURT:  So what was produced?
21           MS. SAHNI:  Your Honor, could I mention --
22           MR. GOULD:  Thank you, Your Honor.
23           MS. SAHNI:  Sorry, go ahead, Jeff.
24           MR. GOULD:  Thank you, Your Honor.  This is Jeff
25   Gould from Oppenheim & Zebrak.  I'm counsel for plaintiffs

1   Cox case and those works are not at issue in the Charter
2   case, my clients may feel strongly that they don't want to
3   expand the universe in which that information is looked at
4   and utilized.
5          THE COURT:  Well, I don't understand.  The defense
6   already volunteered to do that, subject to your review of it
7   and objection and correction.  So it would be the defense
8   that's spending the money, with you having authority to say
9   yeah or nay, this is not correct or this is including
10  information that is not relevant, and I would oversee that
11  process, what's wrong with that?
12         MR. GOULD:  That may work.  I misunderstood,
13  perhaps, what Ms. Ranahan was suggesting went to -- in the
14  course of the case, they would not seek to utilize --
15         THE COURT:  No, no, no.
16         MS. SAHNI:  -- the information about this --
17         THE COURT:  No, they will reduce the universe that
18  is -- that is brought over or transported to this case and
19  show you what the end product is.  Okay.
20         MR. GOULD:  Yes.  Thank you, sir.
21         THE COURT:  All right, next issue.
22         MS. RANAHAN:  Okay.  And just to clarify, so this
23  is still without prejudice to bring this back, once we take
24  a 30(b)(6), finding out what other types of agreements and
25  underlying information we --

24

```
 1              THE COURT:  Well, yeah.  I mean, I think you still
 2   ought to that probably, but now --
 3              MS. RANAHAN:  Okay.
 4              THE COURT:  -- now that we are getting you
 5   probably 60 or 70 percent of what you would need as far as a
 6   whole universe of data that would comprise profit or an
 7   amount of the income per work, I don't know.  I don't know
 8   what I would do.
 9              MS. RANAHAN:  Okay.
10              THE COURT:  So I'm altering that in a sense.  I'll
11   still make it without prejudice to asking for it in more
12   complete form.
13              MS. RANAHAN:  Right.
14              THE COURT:  But I --
15              MS. RANAHAN:  And also some of -- I'm sorry, Your
16   Honor.
17              THE COURT:  No, I'm done.
18              MS. RANAHAN:  Also as to some of the underlying
19   backup, we would prefer to have a chance to at least ask
20   about it and find out what is available --
21              THE COURT:  That's fine.
22              MS. RANAHAN:  -- before we are foreclosed
23   basically from it.
24              THE COURT:  That's fine.  You know where my mind
25   is so . . .
```

52

1           TRANSCRIBER'S CERTIFICATION

2  I certify that the foregoing is a correct transcript to the

3  best of my ability to hear and understand the audio recording

4  and based on the quality of the audio recording from the

5  above-entitled matter.

6

7  /s/ Carol Patterson                November 1, 2019

8  Signature of Transcriber                Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25