UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,
    Plaintiffs,
v.
CHARTER COMMUNICATIONS, INC.,
    Defendant

Case No. 19-cv-00874-RBJ-MEH

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS
TO FEBRUARY 23, 2021 DISCOVERY ORDERS**

**I.    Charter Provides No Reason to Revisit This Court's Denial of Charter's Request for Additional Track-Level Revenue Data.**

Charter's Opposition ignores the language of this Court's prior order denying the same discovery request, holding that production of the track-level revenue in *Sony Music Entm't., Inc. et al. v. Cox Commc'ns, Inc. et al.*, Case No. 1:18-cv-00950 (E.D. Va.) was sufficient, and limiting Charter to seeking *other* types of damages information.  Discovery Order 5, ECF No. 159 ("If the existence of additional relevant damages information is revealed by deposition testimony or otherwise, discovery of that information is not foreclosed.").  Nothing has changed since then, and Charter now simply recycles the same arguments this Court already rejected.

Charter disputes this Court's conclusion that the "roughly 80% sample is statistically enough to permit reasonable inferences to be drawn about the remaining 20%," Discovery Order 4, ECF No. 159, on the ground that Charter needs additional data to account for "explosive growth" in Plaintiffs' streaming revenue in later years.  Resp. 13.  But the only evidence that such "explosive growth" occurred is a single news article *from 2016*, Resp. 13 n.9 (citing April 15, 2016 FORBES article), which was equally available in 2020 when Charter initially sought to compel Plaintiffs to produce track-level revenue data.  Moreover, to the extent Charter claims to need data to quantify such growth, Plaintiffs have produced their top-end financial data, which includes streaming revenues, for the years 2017-2019.  Parties' Stipulation and Special Master's

1

Ord. Resolving Discovery Disps. 7, ECF No. 164 (Plaintiffs stipulating to producing 2017-19 top-end financial data).

Nothing in Charter's Opposition refutes Plaintiffs' showing that responding to the track-level revenue discovery request also would impose an immense and disproportionate burden. Charter's claim that the burden of compiling and updating track-level revenue data for all works in suit would be "spread out amongst more than 60 separate Plaintiffs," Resp. 14, is not true, and Charter knows it. The various named plaintiffs in this lawsuit are ultimately parts of six corporate groups, each of which has a single law department. Thus, the burden is *10 times* what Charter suggests. In addition, Charter's assertion that providing this data would only be "slightly more burdensome for Record Label Plaintiffs" than for Publisher Plaintiffs cites only Charter's own counsel purporting to read from testimony from the *Cox* litigation. *See id.* The only direct evidence before the Court, however—the declarations in this case from the Publisher and Label Plaintiffs—shows that compiling the requested track-level revenue data would require at least hundreds of hours of employee time. *See, e.g.*, Pls.' Obj. 4; Pls.' Resp. to Obj./App.to Maj. J. Dec. 9-12, ECF No. 89; Flott Decl. ¶ 13, ECF No. 89-2; Blietz Decl. ¶ 12, ECF No. 89-3; Abitbol Decl. ¶ 11, ECF No. 89-4; McMullan Decl. ¶ 14, ECF No. 89-5; Leak Decl. ¶ 14, ECF No. 89-6. That the burden on the Publisher Plaintiffs may be less than the Label Plaintiffs does not mean that the burden on the Publishers is "minimal," Resp. 14, nor that the greater burden on the Labels is proportional.

Finally, Charter argues proportionality based on the fact that the production of track-level data took eight weeks in *Cox*. *Id*. Just because Plaintiffs could complete the task in two months if they throw extraordinary resources at it does not render the discovery proportional—particularly at this late stage of the case when this discovery was rejected long ago.

II. **Charter's Opposition to Plaintiffs' Objections Regarding the Hash Report Is Replete with Fundamental Errors of Law and Fact.**

*First*, Charter does not and cannot articulate any reason why the Hash Report is not work product. Charter's claim that MarkMonitor's and Plaintiffs' privilege logs list MarkMonitor as the Hash Report's "author," Resp. 7, is irrelevant. That the logs list MarkMonitor as author of the *completed* report containing MarkMonitor's supplementation is not surprising and in no way contradicts the fact that Plaintiffs' counsel *initially* created the Hash Report. In any event, RIAA's supplemental privilege log *does* contain an entry reflecting the transmission of the initial Hash Report to MarkMonitor. Regardless, Rule 26 expressly extends work-product protection to documents prepared in anticipation of litigation by a party's "consultant," like MarkMonitor. Fed. R. Civ. P. 26(b)(3)(A).

Nor does Charter's characterizing MarkMonitor's contribution as "factual results," Resp. 7, undermine that protection, as "[w]ork product can be . . . non-opinion work product, *i.e.*, fact work product . . . ." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006). Even if it were everything Charter says it is (and it is not), the Hash Report would still be protected. That Magistrate Judge Hegarty and the Special Master overlooked these basic legal principles and suggested that the Hash Report's claim to work product was "somewhat dubious" is at the heart of the error here.

*Second*, Plaintiffs have not waived protection over the Hash Report by using 2016 downloads to demonstrate that the files Charter subscribers were distributing from 2012-2015 infringed Plaintiffs' copyrights. It is a truism that counsel's use of certain evidence that it collected in the course of preparing its case does not waive work-product protection over counsel's factual investigation. Moreover, there can be no sword/shield waiver here because the withheld information would not allow Charter to challenge Plaintiffs' direct infringement

3

evidence: information about files *not* downloaded in 2016, for works *not* at issue in the case, cannot bear in any way on whether files that *were* downloaded in 2016 are evidence of what Charters' subscribers were distributing.  Rather, Charter wants the Hash Report in order to get at counsel's mental impressions and strategic decisions in preparing for litigation.  But Charter wanting it does not create a waiver.

*Third*, Charter has no substantial need for the Hash Report because the Hash Report is not crucial to any issue.  Plaintiffs are not, as Charter claims, forcing Charter and the Court to take Plaintiffs' word that the 2016 downloads support Plaintiffs' direct infringement claims.  Rather, Plaintiffs have produced *all* files downloaded from that project, and Charter is free to review and test those files every way imaginable.  *See* Pls.' Obj. 8, 12-13.  Nor is the Hash Report crucial to Charter's challenge to Plaintiffs' notice program.  Charter seems to argue that, if MarkMonitor did not download a file during a single month in 2016, that means that MarkMonitor must not have actually detected that file between 2012 and 2015, such that any infringement notice associated with the file is false.  But whether MarkMonitor detected the file during a short period in 2016 obviously is not evidence at all of what happened years earlier.

*Fourth*, Charter does not refute the crucial point that Charter can obtain the "substantial equivalent" of the Hash Report because it can easily (i) determine the hashes in Plaintiffs' notices that were not downloaded in 2016, and (ii) analyze the downloaded files in any number of ways to determine whether they are copies of Plaintiffs' authentic works.  *See* Pls.' Obj. 12.  Charter responds only by citing the very order to which Plaintiffs are objecting.  Resp. 9-10 (citing Magistrate Judge Hegarty's order).  But that order mischaracterized the record: Plaintiffs have never admitted (and Charter does not cite any such admission) that Charter cannot recreate the Hash Report's substantial equivalent.  Indeed, Plaintiffs stated precisely the opposite:

> THE COURT: [D]o they have the source information from which they could -- if they had the wherewithal, re-create the efforts that MarkMonitor engaged in for you in 2016?
>
> MR. GOULD: For every single thing that pertains to Charter and the Charter case and the Charter notices, yes.
>
> THE COURT: And what else would be relevant, besides what pertains to Charter? I mean --
>
> MR. GOULD: Absolutely nothing.

Feb. 23, 2021 Hr'g Tr. at 103:11-19 (Resp. Ex. A). That Magistrate Judge Hegarty wrongly said Plaintiffs had admitted the opposite of the position they asserted demonstrates why his order was clearly erroneous and reversal is necessary.

*Finally*, Charter's suggestion that Plaintiffs "generated" or "recreated" evidence, Resp. 1, 3-4, is baseless, as Plaintiffs will make clear at summary judgment and at trial.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court sustain their Objections and respectfully request oral argument on these issues.

| | |
|---|---|
| Dated: March 15, 2021 | Respectfully submitted, |
| | */s/ Matthew J. Oppenheim* |
| Jonathan M. Sperling | Matthew J. Oppenheim |
| COVINGTON & BURLING LLP | OPPENHEIM + ZEBRAK, LLP |
| The New York Times Building | 4530 Wisconsin Ave. NW, 5th Fl. |
| 620 Eighth Avenue | Washington, DC 20016 |
| New York, NY 10018-1405 | Telephone: (202) 621-9027 |
| Telephone: (212) 841-1000 | matt@oandzlaw.com |
| jsperling@cov.com | |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 15, 2021 I caused the foregoing document and all supporting materials thereto to be served electronically using the CM/ECF system.

*/s/ Matthew J. Oppenheim*

5