IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

# CHARTER COMMUNICATIONS, INC.'S OBJECTION TO TWO SPECIAL MASTER RULINGS

## INTRODUCTION

Charter Communications, Inc. ("Charter") objects to the Special Master's March 16, 2021 order denying Charter's motion to compel the Record Company Plaintiffs (the "RCPs") to designate witnesses for two narrow Federal Rule of Civil Procedure ("FRCP") 30(b)(6) deposition topics. Charter seeks permission to take targeted deposition testimony regarding (1) the work-for-hire ("WFH") status of a limited number of works; and (2) the RCPs' ownership status of the 272 works that they dropped from the case but for which they continue to rely upon notices (the "Dropped Works"). The Special Master denied these requests, deeming them inconsistent with the Court's rulings denying Charter's related requests for *additional* WFH agreements and documentation for Dropped Works during the February 23 hearing. Ex. A (March 16, 2021 Hr'g Tr. at 11:1-8, 19:10-23:16). However, the February 23 rulings regarding *additional document discovery* should not foreclose Charter from seeking deposition testimony regarding the

agreements Plaintiffs have already produced and about works identified in notices upon which Plaintiffs will continue to rely.[1]

First, with respect to the WFH topic, this Court's prior decision not to require that Plaintiffs produce documents constituting the remaining 20% (in addition to those produced in the *Bright House* litigation) of responsive WFH agreements was primarily based on burden. *See* Feb. 23, 2021 Hr'g Tr. 132:10-15. No such burden exists with this request for deposition testimony on WFH agreements Plaintiffs *have already produced*. Further, the Court's denial was premised on the notion that Charter would have a chance to test its theories through the 80% of such agreements already being produced in the pending *Bright House* case with *deposition testimony*.[2] *See id.* at 145:9-21. Indeed, in denying the production of the balance of the documents, the Court noted that Charter "said they don't have any deposition testimony. They actually need that, plus deposition testimony, in order to do this process in their . . . mind." *Id.* at 148:19-22. Accordingly, Charter should be entitled to obtain the very testimony this Court recognized Charter *needs* to assess the documents Plaintiffs have already produced.

Second, with respect to the Dropped Works, Plaintiffs have admitted they intend to rely on the notices for the Dropped Works to demonstrate that Charter was on notice of allegations of infringement,[3] and Charter should be permitted to, at least, ask witnesses about whether the RCPs had the right to authorize notices to be sent for these works. The burden is minimal (and far less

---

[1] Indeed, this Court and the Special Master have noted instances when denying document discovery that the parties should instead seek testimony through depositions as a less intrusive discovery method. *See, e.g.*, Feb. 19, 2020 Hr'g Tr. at 148:12-14 (the Court denying discovery into Charter financial documents in favor of deposition testimony); *see also* ECF 230 at 23 (Special Master denying document discovery into Plaintiffs' anti-piracy measures in favor of deposition testimony).

[2] "*Bright House*" refers to *UMG Recordings, Inc. et al. v. Bright House Networks LLC*, 8:19-cv-00710-MSS-TGW (M.D. Fla.).

[3] Ex. B (Jan. 19, 2021 Special Master Hr'g Tr. at 25:21-26:14).

than any further document production) as Charter has offered to identify prior to the depositions the specific artists and works as to which it seeks testimony.

## ARGUMENT

I.  **This Court Should Order the RCPs to Designate a Witness on the Work-For-Hire Status of a Limited Number of Works.**

  A.  **The Discovery Sought is Narrowly Tailored.**

Topic 11 requests the RCPs designate a witness to testify to the following:

> Whether any of the sound recordings You assert in this litigation have been deemed or designated as a work made for hire, as that is defined in 17 U.S.C. §101.

A number of agreements with artists who recorded works-in-suit contain no WFH provision, but Plaintiffs nonetheless claimed their works as WFH on copyright applications. Relying upon this Court's prior ruling regarding whether to compel what it viewed as potentially burdensome document production, Ex. A (March 16, 2021 Special Master Hr'g Tr. at 11:1-8), the Special Master did not order the RCPs to designate a witness to testify about a limited number of artist agreement-specific issues where the agreements themselves contain no WFH provision, but Plaintiffs claimed them as WFH on copyright applications.

When the Court considered this in the context of document requests at the February 23 hearing, Charter's investigation of the documents produced in the *Bright House* case was ongoing. Charter has since completed its investigation of these *Bright House* agreements and identified issues regarding 15% of the sound recordings in suit (despite Plaintiffs' counsel repeatedly claiming the number was in the "single digits")[4], potentially impacting works for which the RCPs seek more than $150 million in statutory damages. While the number of potentially impacted

---

[4] Feb. 23, 2021 Hr'g Tr. at 151:20-25.

3

works is significant, the number of discrete *issues* about which Charter seeks to inquire about at depositions is limited.

Specifically, Charter has identified several dozen artists whose works the RCPs have registered with the U.S. Copyright Office as WFH but for which the agreements produced contain no such provision. For other artists, Charter has been unable to identify *any* artist agreements. With these limited number of artist agreement-specific issues, Charter intends to accomplish the following through depositions: (1) if no agreements containing a WFH provision were produced, confirm that no other relevant agreements exist; and (2) ascertain whether the RCP stands by its WFH designation in light of the lack of a written agreement. If Charter obtains evidence that a RCP knowingly provided false information to the U.S. Copyright Office, that information is highly relevant to any filing Charter makes with the U.S. Copyright Office to challenge the validity of the registrations. Charter simply seeks to inquire about a specified subset of the agreements produced in *Bright House,* which were deemed produced in this case.

**B.     The Requested Information is Indisputably Relevant.**

As the Court previously recognized, the requested testimony is relevant to two significant issues. Feb. 23, 2021 Tr. Hr'g 132:10-15 ("I think we're probably going to end up disagreeing with you on relevance, at least for purposes of discoverability. So why don't you focus on the burdensomeness?"). First, this information is relevant to whether the RCPs possess valid copyrights to certain of the works-in-suit, which is a statutory prerequisite to filing suit, obtaining statutory damages, and otherwise holding Charter secondarily liable for infringement. Second, this information is relevant to rebut Plaintiffs' expected trial argument that they act in the best interests of their artists, as there can be no question that the act of falsely representing the WFH status of a work on a registration is theft, pure and simple.

4

1.  **The requested testimony is relevant to Charter's challenge of the validity of the registrations.**

The RCPs cannot seek to hold Charter secondarily liable and obtain statutory damages with invalid copyright registrations. 17 U.S.C. § 411. In order for a work to be validly registered as "made for hire," the RCPs must have valid WFH agreement that pre-date the creation of the work. *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) ("The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally"); *Gladwell Gov't Servs., Inc. v. Cty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008) ("The plain language of the [Copyright Act] indicates that a work-for-hire agreement cannot apply to works that are already in existence.").[5]

If the RCPs lack such agreements but nevertheless knowingly filed applications with the U.S. Copyright Office that these works were "made for hire," Charter can seek to invalidate the registration pursuant to 17 U.S.C. § 411(b)(2). Charter seeks limited deposition testimony to (potentially) demonstrate to the U.S. Copyright Office (and on summary judgment, if necessary), that the RCPs registered hundreds of works as "made for hire," were aware of that fact, knew that they did not have a valid agreement allowing them to do so in some instances, and understood that

---

[5] To the extent Plaintiffs claim there is a circuit split on this issue, the Ninth and Seventh Circuits hold that a valid work for hire agreement must be in place before the work is created. *See, e.g.*, *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992); *Gladwell Gov't Servs., Inc. v. Cty. of Marin*, 265 F. App'x 624, 626. However, the Second Circuit in *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 559 (2d Cir. 1995) held that "the writing requirement of § 102(2) can be met by a writing after the work is created, if the writing confirms a prior agreement, either explicit or implicit, made before the creation of the work."). Of course, regardless of what law this Court applies, a valid work for hire agreement must be produced. And if the Court decided the issue in accordance with the Second Circuit, requiring only a valid agreement executed after the creation of the work, Plaintiffs would still bear the burden of establishing that there was "a prior agreement, either explicit or implicit, made before the creation of the work." *Id.*

by doing so they conferred to themselves much stronger rights than they were otherwise entitled to under the law.

As discussed at the conference on March 18, 2021, Charter will be able to proceed with the invalidation process with the U.S. Copyright Office within the contours of the current case and trial schedule. In Charter's counsel's prior experience in a different copyright case in which this procedure was utilized, the parties (with the support of the court) referred the dispute regarding the validity of certain registrations in suit to the U.S. Copyright Office during summary judgment briefing. The court in that case decided all other disputes and then, upon the receipt of the U.S. Copyright Office's response several months later, issued an order on the outstanding issue of registration validity.[6]

The same procedure could be followed here and would not disrupt the case schedule. Specifically, if Charter can establish that for a certain number of works, Plaintiffs' registrations may be invalid due to their knowing misrepresentations on summary judgment, the Court can defer ruling on those works until a response is received from the U.S. Copyright Office. Following this procedure will have no impact on the case schedule, as it will only affect the number of works the jury may consider in awarding statutory damages at the end of the trial if Plaintiffs establish liability.

> **2. The requested testimony is relevant to rebut Plaintiffs' argument that they act in the best interest of their artists.**

There can be no reasonable dispute that registering a sound recording as a work "made for hire" confers significant benefits to Plaintiffs. *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002) ("Because the record company plaintiffs list the copyrights as

---

[6] *See Archie MD, Inc. v. Elsevier, Inc.*, Case No. 1:16-cv-06614-JSR (S.D.N.Y.), ECF 78 at 30 & 79.

works for hire, they are considered to be the authors and do not have to face the prospect of artists terminating plaintiffs' ownership rights after 35 years."). It is widely alleged that the record company industry falsely represents the WFH status in applications. For example, following the parties' 2020 hearing on this issue, the *Hollywood Reporter* questioned whether "[t]he piracy case against Charter may provide an alternative avenue to resolving the big issue over whether record labels have skeletons in the closet."[7] Many artists, even, have recently sued the record labels over these very issues.[8]

Here, Plaintiffs will argue, as they did in *Sony Music Entertainment, Inc. v. Cox Communications, Inc. et al.*, Case No. 1:18-cv-00950-LO-JFA (E.D. Va.) ("*Cox*") that they act in the best interests of their artists. Charter should thus be entitled to present limited testimony related to rebutting that argument, including showing that Plaintiffs falsely take credit for individual artist's works by incorrectly registering the works as made for hire.

      **C.     Granting Charter's Request Will Impose No Undue Burden to the RCPs.**

There can be no undue burden to the RCPs in designating a witness for this topic because Charter has offered to pre-identify the limited number of artists for which it seeks testimony. Charter has also explained the targeted line of questioning it intends to pursue regarding these artist agreement issues. Plaintiffs should have already performed any work necessary to respond to these inquires, namely determining whether (1) they produced all applicable WFH agreements,

---

[7] *See* Eriq Gardner, *Charter Challenges Copyright Registrations of Music Recordings*, The Hollywood Report (March 2, 2020), *available at* https://www.hollywoodreporter.com/thr-esq/charter-challenges-copyright-registration-music-recordings-1282216.

[8] *See, e.g.*, *Waite et al. v. UMG Recordings, Inc. et al.*, Case No. 1:19-cv-01091-LAK (S.D.N.Y.) (putative class action against record companies for improperly claiming WFH); *Mtume v. Sony Music Entm't*, 408 F. Supp. 3d 471, 476 (S.D.N.Y. 2019) (dispute over WFH registration); *Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, 2010 WL 3564258, (S.D.N.Y. Sept. 10, 2010) (same); *Skidmore v. Led Zeppelin*, 2016 WL 1442461, at *9 (C.D. Cal. Apr. 8, 2016) (same).

as ordered by the court in *Bright House*; and (2) they stand by the registrations made to the U.S. Copyright Office.

## II. This Court Should Order the RCPs to Designate a Witness on their Ownership Status of the Dropped Works.

### A. The Requested Testimony is Irrefutably Relevant.

Topic 14 requests the RCPs designate a witness to testify to the following:

> The status of Your ownership, possession of an exclusive right, or ability to otherwise sue for the alleged infringement of the sound recordings that You asserted in the Complaint (i.e., as listed by You on ECF 1-2) but that You are not asserting in the First Amended Complaint (i.e., which are not listed as being asserted by You on ECF 111-2) (the "Dropped Works"). For clarity, this topic concerns the status of Your ownership, possession of an exclusive right, or ability to otherwise sue for the alleged infringement of the Dropped Works at the time (i) RIAA Notices were allegedly sent to Charter for the Dropped Works, (ii) You filed the Complaint, and (iii) currently.

While the RCPs have dropped 272 works from this case, they nevertheless intend to rely on the notices sent on their behalf for these works to establish Charter's liability. Thus, the fact that the RCPs dropped these works is not akin to a party narrowing its claims. Rather, Plaintiffs' act of dropping works from suit for which they sent notices (***and for which they recently obtained damages in* Cox**) is highly probative of the accuracy of the RCPs' notices. The accuracy of notices in this case is paramount, as Plaintiffs assert that ISPs like Charter must terminate subscribers based on the receipt of only a handful of notices. Further, Plaintiffs are relying on notices for these works to establish Charter's alleged liability. Plaintiffs will point to the fact that Charter received hundreds of thousands of notices, including notices for the Dropped Works. Charter thus intends to challenge both the factual and technological accuracy of these notices at summary judgment and, if necessary, at trial.

Although the Special Master previously suggested when denying this topic for the Music Publisher Plaintiffs that it would be more appropriate to ask the RCPs on whose behalf the notices

8

were sent[9]—she relied on rulings from the February 23 hearing regarding *document discovery* to foreclose this targeted *deposition testimony*.

At the February 23 hearing, however, new representations were made by Plaintiffs' counsel about which Charter is entitled to inquire. Specifically, the Court asked whether Plaintiffs' counsel was "affirmatively representing … that of all 400 dropped works, it's your good faith belief, after a reasonable investigation, that your clients did own those works," to which counsel replied "yes." Feb. 23, 2021 Hr'g Tr. at 180:6-10.[10] While the February 23 Order and subsequent Special Master ruling denied Charter's document requests and deposition testimony regarding ownership of the Dropped Works based on Plaintiffs' counsel's factual representations, this representation is belied by the limited public information that Charter has been able to investigate.

As just one example, Plaintiff UMG Recordings, Inc. dropped 134 works from suit that were registered to several independent labels. While the Universal Music Group (the global umbrella organization of which Plaintiff UMG Recordings, Inc. is a part) may have had some type of relationship with these independent labels (such as foreign distribution rights through one of its many corporate affiliates), that does not necessarily mean that Plaintiff UMG Recordings, Inc. owns or possesses an exclusive right in these works, calling into question counsel's representation at the hearing. Further, for other Dropped Works, the RCP (or one of its corporate affiliates) is listed as the "claimant" for a certificate that does not appear to cover the Dropped Work but rather

---

[9] Ex. B (Jan. 19, 2021 Special Master Hr'g Tr. 37:6-13) ("[W]hile I recognize Charter's right to make this inquiry regarding the validity of the notices . . . that is an issue I don't believe that in this particular instance with regard to UMPG's notices related to dropped works is the vehicle to have that happen.").

[10] This is inconsistent with Plaintiffs' counsel's response to a similar question from the Court last year, when counsel could *not* represent that Plaintiffs owned all the works that they dropped from this case but for which they had obtained statutory damages in *Cox* less than a month prior. *See* Feb. 19, 2020 Hr'g at 30:6-33:3.

9

is for an alternate version (which is prima facie evidence of ownership).  For this category, Charter would inquire as to the registration status of the actual Dropped Work, including whether the RCP owned or possessed an exclusive right to that copyright when notices were sent.  Requiring the RCPs to designate a witness on this topic would permit Charter to test Plaintiffs' counsel's representation and the RFA response asserting that Plaintiffs owned all of these works, which was the basis of the Court's decision not to order the requested document discovery and the Special Master's subsequent denial of Charter's request for this deposition testimony.

### B.     There is No Undue Burden to Plaintiffs in Providing this Testimony.

Providing this focused testimony would impose no undue burden on the RCPs.  This is because for Plaintiffs (and counsel) to have affirmatively represented that they owned all the Dropped Works when they sent the notices for them, *Plaintiffs had to have had investigated the very facts that are the subject of the testimony Charter seeks*.  The RCPs did (or should have) confirmed this information on at least three separate occasions.  First, pursuant to their FRCP 11 obligations, when filing suit in March 2019, Plaintiffs should have determined whether they had standing to assert these works.  Second, the RCPs likely determined the status of their ownership over the Dropped Works when Plaintiffs were required to amend the list of works in suit by January 2020.  Finally, when preparing their response to Charter's RFA, each RCP would have needed to consult the very information Charter seeks with this deposition topic.

Finally, there can be no undue burden, as there are only 272 Dropped Works across three multi-party plaintiff groups (i.e., Sony, Warner, and Universal), which are covered by only 63 certificates.  That amounts to a handful of lines of questions for approximately 20 certificates per Plaintiff Group.  Charter would identify the list of Dropped Works to the RCPs in advance of the deposition.

## **CONCLUSION**

Based on the foregoing, Charter respectfully requests the Court sustain Charter's objection to the Special Master's rulings and order the RCPs to designate witnesses for these two narrowed deposition topics so that Charter can obtain the targeted testimony it needs to support its defense of Plaintiffs' claims.

Dated: March 24, 2021

Andrew H. Schapiro
Nathan A. Hamstra
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
E-mail: andrewschapiro@quinnemanuel.com
E-mail: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant
Charter Communications, Inc.*

Respectfully submitted,

*/s/ Erin R. Ranahan*
Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com

## **CERTIFICATE OF SERVICE**

I certify that on March 23, 2021, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

*/s/ Erin R. Ranahan*