# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH
_____

WARNER BROS. RECORDS INC., et al.,

    Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

_____

WEBEX/TELEPHONIC HEARING

March 16, 2021
_____

    This WebEx/telephonic hearing was taken before Special Master Regina Rodriguez on March 16, 2021, at 12:01 p.m. Mountain Standard Time before K. Michelle Dittmer, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, K. Michelle Dittmer, appearing remotely via telephone)

1  that determination.  However, it would seem that
2  Topic 11, which is asking for information and the
3  designation of a witness to testify about specific sound
4  recordings you assert in the litigation had been deemed
5  or designated as a work made for hire, as that is defined
6  in 17 U.S.C. Section 101, is a bridge too far and is
7  inconsistent with the discussion that we had and
8  Judge Hegarty ruled on at the hearing on February 23.
9              Mr. Oppenheim or someone from the
10 plaintiffs, I'll let you discuss that if you want to --
11             MR. OPPENHEIM:  My colleague --
12             SPECIAL MASTER RODRIGUEZ:  -- talk me out
13 of that, but that is where I'm inclined right now.
14             MR. OPPENHEIM:  My colleague, Mr. Kaplan,
15 is going to respond, if that's all right.
16             SPECIAL MASTER RODRIGUEZ:  Okay.
17             MR. KAPLAN:  Thank you, Ms. Rodriguez.
18 Can you hear me okay on this setup?
19             SPECIAL MASTER RODRIGUEZ:  Yes.
20             MR. KAPLAN:  Thank you.
21             So we certainly agree with your ruling on
22 Topic 11.
23             And on Topic 12, I mean, I think we can
24 live with this, but I just do want to note that -- and
25 this is getting into legal conclusions and really asking

1                I could give you more examples, if you
2    want, but it would -- you know, they will be akin to the
3    ones that I listed a few moments ago.
4                SPECIAL MASTER RODRIGUEZ:  All right.
5    Well, listen, I mean, again, we've hooked up this issue
6    with regard to the notices and how many notices and what
7    the implications of both notices are and whether or not
8    the works for which the notices were sent were owned
9    works, et cetera.  I recognize that's an important issue.
10               We've also jumped around with regard to
11   this issue on discovery related to the dropped works and
12   discovery related to post-claim period.  But I think
13   we've been pretty clear that we're not getting into
14   discovery on dropped works and that they -- not going to
15   end up, we're not trying a case about the dropped works.
16   And so it is a slippery slope here, but that is
17   concerning to me.
18               Now, as I understand it, it's not merely a
19   representation by counsel that was made at the hearing
20   that the plaintiffs own all of the dropped works, but
21   that was also included in a request for admission.
22               Am I correct in that understanding,
23   Mr. Sperling?  So --
24               MR. SPERLING:  That's correct,
25   Ms. Rodriguez.  I think it's Mr. Gould who addressed this

1   at the hearing on the 22nd, but you're 100 percent
2   correct, there was a request for admission asking us to
3   admit that we did not own one or more of the works, and
4   we denied that request for admission.
5                SPECIAL MASTER RODRIGUEZ:  Okay.  So said
6   the other way around, so that there is no uncertainty
7   here, it is also the case that plaintiffs would have, by
8   that answer, admitted under oath that they did, in fact,
9   own all of the dropped works.  Is that accurate?
10               MR. OPPENHEIM:  So I believe that -- just
11  to -- because I want to be -- I think we should be very
12  precise -- own or have the exclusive rights to, right?
13  But yes.  And --
14               SPECIAL MASTER RODRIGUEZ:  So please say
15  it affirmatively on the record so that, once and for all,
16  we can put a stake in this issue, Mr. Oppenheim.
17               MR. OPPENHEIM:  Oh, I don't -- so I don't
18  have the language right in front of me, but the request
19  for admission that we -- that we submitted acknowledged
20  that the plaintiffs own or have the exclusive rights to
21  the so-called dropped works.  And that's already set
22  forth and they already have it.
23               And just to give an example, the issue
24  Mr. Schapiro raised --
25               SPECIAL MASTER RODRIGUEZ:  Let's not go

```
 1   down this road yet.
 2                MR. OPPENHEIM:  Okay.
 3                SPECIAL MASTER RODRIGUEZ:  We've got
 4   enough here.
 5                MR. OPPENHEIM:  Okay.  Very well.
 6                SPECIAL MASTER RODRIGUEZ:  All right.  So
 7   given that we have that admission, that is a,
 8   quote/unquote, done deal at this stage.
 9                Generally, we don't allow additional
10   discovery on something that is -- and that is the purpose
11   of the request for admission.  I understand you're
12   saying, Mr. Schapiro, that "I would like to test that
13   theory, I would like to test that admission," but --
14                MR. SCHAPIRO:  Well --
15                SPECIAL MASTER RODRIGUEZ:  -- I don't have
16   enough here to --
17                MR. SCHAPIRO:  Yes, but -- so it's not --
18   typically, the reason that was -- that a request for
19   admission normally ends things is it's an admission that
20   you normally -- maybe we should have phrased the request
21   for admission, you know, in -- done a mirror image, but
22   then it wouldn't have covered all of the works.  This,
23   quote/unquote, admission is something that's helpful to
24   them.
25                So if you request an admission, you know,
```

1  in a tort case, you know, say, you know, admit that you
2  had not checked the brakes on the car, you know, for a
3  year or something, then it's admitted and that issue is
4  done.
5              Here, they're admitting something that is
6  helpful to their case.  We want to be able to test this,
7  and I'm not sure I understand fully the qualification
8  that Mr. Oppenheim just added about:  Well, we own it or
9  we have exclusive rights.
10              We would like to be able to test and
11  understand that since they're going to be seeking
12  $150,000 for the works that are in the case.
13              And then, you know, Your Honor -- excuse
14  me, Ms. Rodriguez, you said a moment ago, "Well, this
15  isn't going to be a case about the dropped works," and
16  that's correct.  But it's a case about the notices.
17  And -- and, you know, they are going to be -- maybe they
18  will disavow now pointing to all of the notices they say
19  we've got.
20              But how -- you know, there are only a
21  limited number of ways we can show that there are
22  problems with the notices, and the fact that a bunch of
23  them may have been sent for -- with regard to works that
24  they didn't have a right to send them for, we shouldn't
25  have to just take their word for it, but we should be

```
 1   able to test it.
 2                MR. OPPENHEIM:  Ms. --
 3                SPECIAL MASTER RODRIGUEZ:  I will say that
 4   this was -- I mean, this was Charter's RFA and the
 5   plaintiffs did answer it.  So if there's a different RFA
 6   that should be crafted or some other thing that you need
 7   to close the loop on this, it may be that you want to
 8   submit that RFA.
 9                But based on what we have here now, I
10   don't see that it is fruitful at this point in time or it
11   is going to lead to the information that will tie this up
12   for you in the way that I think that you're articulating
13   here.  So I'm not inclined to allow the inquiry with
14   regard to Topic Number 14.
15                Is there anything else that we need to
16   hear on that topic?
17                All right.  So let's go to Topic
18   Number 57.
19                MR. SCHAPIRO:  All right.  So Topic
20   Number 57 is other ISPs -- or the plaintiffs'
21   understanding of other ISPs' responses to receive notices
22   of alleged copyright infringement, including whether the
23   other ISPs terminated subscribers who received a certain
24   number of notices, and if so, at what number of notices.
25                As you will recall, the plaintiffs' theory
```