**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

WARNER RECORDS INC., *et al.*,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant

Case No. 19-cv-00874-RBJ-MEH

---

**PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S MARCH 16, 2021 ORDER REQUIRING PLAINTIFFS TO PREPARE 30(b)(6) WITNESSES REGARDING THEIR UNDERSTANDING OF THE CONDUCT OF THIRD PARTIES WITH WHOM PLAINTIFFS DID NOT DEAL**

---

Plaintiffs object to the Special Master's ruling requiring them to prepare Rule 30(b)(6) deposition witnesses to testify about Plaintiffs' understanding of other ISPs' responses to copyright infringement notices. This ruling should be reversed for at least two reasons.

*First*, how *other ISPs* respond to infringement notices is irrelevant to any issue in the case, and unlikely to lead to the discovery of admissible evidence. Charter's liability turns on its legal obligations, not the conduct of other ISPs. Moreover, even if evidence of how other ISPs respond to infringement notices *was* relevant, Plaintiffs' second-hand *understanding* of what other ISPs may be doing is not. To boot, any such understanding is based primarily on Plaintiffs' enforcement efforts and thus overwhelmingly protected by privileged or work product or already a matter of public record in other litigations. If Charter wants actual knowledge of

other ISPs' responses to infringement notices and can justify the request, it should subpoena the other ISPs.

*Second*, the Special Master's order is irreconcilable with her prior decision shielding Charter from having to prepare a witness on Charter's own knowledge of other ISPs' responses to infringement—including through Charter's coordination on such matters with Cox Communications, an adjudicated infringer. It is flatly inequitable to rule that Charter need *not* prepare a witness to testify about its own first-hand dealings with and knowledge of another ISP's handling of infringement notices, but Plaintiffs *must* prepare a witness to testify about their second-hand impressions of the same.

Each of these reasons warrants reversal of the Special Master's ruling on Topic 57 under the abuse of discretion standard.

## I. Charter's 30(b)(6) Topic on Plaintiffs' Understanding of Other ISPs' Practices

On December 30, 2020, Charter served Rule 30(b)(6) deposition notices on three groups of Plaintiffs—Sony Music Plaintiffs, Universal Music Plaintiffs, and Warner Music Plaintiffs—requesting that each Plaintiff group designate witnesses on 81 topics. Topic 57 of Charter's 30(b)(6) notice reads as follows:

> Your understanding of other ISPs [*sic*] responses to receiving notices of alleged copyright infringement, including whether those other ISPs terminated subscribers who received a certain number of notices and, if so, at what number of notices.

*See* Ex. 1.[1] On February 5, Plaintiffs objected to this topic, noting that the topic is overbroad, not relevant, not proportional to the needs of the case. *See* Ex. 2. Further, Plaintiffs explained that

[1] For the purposes of this Objection, Plaintiffs have attached an exemplar of Charter's 30(b)(6) notice to the recording labels and Plaintiffs' responses and objections. Charter's 30(b)(6) notices to the Universal Music Plaintiffs, Sony Music Plaintiffs, and Warner Music Plaintiffs are identical, as are Plaintiffs' objections and responses to the topics in those notices.

to the extent that the topic requested "their understanding," it inherently called for speculation. *Id.* Plaintiffs also objected that the topic sought privileged information or information subject to the work product doctrine.

**II. The Special Master's Ruling**

After the parties engaged in multiple rounds of meet and confer conferences to narrow their disputes about Charter's deposition notices, the Special Master heard argument on March 16, 2021. At that hearing, Charter argued that Topic 57 was relevant to Plaintiffs' vicarious liability claim and specifically to the question of draw, *i.e.*, whether Charter's policy of inaction with respect to copyright infringement acted as a "draw" for infringing subscribers. Charter argued that it would "be able to show that Charter's policies were not a draw in any way because there was nothing different about what Charter was doing from what any Internet company would do." Ex. 3 at 24:20–23. Charter neither cited to a single vicarious liability case to support its novel argument, nor did it address the question of how *Plaintiffs'* perception of other ISPs could bear on what *consumers* may have been thinking. Notwithstanding, the Special Master found that Topic 57 was proper and ordered Plaintiffs to prepare witnesses on the disputed topic. *Id.* at 25:21–23; 31:7–19.

**ARGUMENT**

Under the Order Appointing Special Master, "[a]ny order, report, or recommendation of the Master on non-dispositive motions (unless it involves a finding of fact or conclusion of law) will be deemed a ruling on a procedural matter," reviewable for abuse of discretion. ECF 143 at ¶ 6. A Special Master abuses her discretion when she "fails to articulate a reason for [her] decision . . . or articulates a reason which has no basis in fact[,] or the reason so articulated is contrary to law." *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008). The "subordinate role of the master means that the trial court's review for abuse of discretion

may be more searching than the review that an appellate court makes of a trial court." Fed. R. Civ. P. 53, Advisory Committee Notes, Note to Subdivision (g).[2]

## I. Plaintiffs' Understanding of Other ISPs' Practices Is Irrelevant, Inadmissible, Largely Privileged, and Should Be Sought from Those ISPs Directly.

In overruling Plaintiffs' objection to Topic 57, the Special Master relied upon Charter's argument that, to prove their vicarious liability claim, Plaintiffs would compare Charter's practices to those of other ISPs to show that Charter's services were a draw to infringing subscribers. According to the Special Master, in addressing the "draw" to Charter, Plaintiffs "by implication, are making the argument that a subscriber would choose Charter's system over somebody else's system or services because Charter makes it easier for me, if I'm the subscriber, to carry on my illegal activities." Ex. 3 at 27:5-8. But this is not Plaintiffs' argument, and the Special Master's understanding of "draw" is contrary to the law on vicarious liability.

### A. Other ISPs' procedures are irrelevant.

The Special Master's assumption that how Charter's policies for handling infringement compare to those of any other ISPs is legally relevant was contrary to law, and her ruling based on that assumption was thus an abuse of discretion. Neither Charter nor the Special Master identified any legal precedent for that assumption; to the contrary, the seminal case on draw, *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), makes clear that a comparison to others in the market is unnecessary. There, the plaintiff demonstrated that the sale of infringing recordings by vendors at a flea market served as a draw to bring consumers to the flea market. *Id.* at 263–64. The copyright owner did not show, and did not need to show, that

[2] The Order Appointing Special Master provides that a party may file objections to the Special Master's order within five business days "from the time that order, report, or recommendation is served." ECF 143 at ¶ 5. On March 22, Plaintiffs were served with the transcript of the hearing before the Special Master concerning Topic 57. Plaintiffs file this Objection five business days later, on March 29.

other flea markets lacked infringing recordings. *Id.*; *see also Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble."); *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 348 (S.D.N.Y. 2009) ("[N]otwithstanding plaintiff's claims about 'custom and practice' in the entertainment industry, federal copyright law dictates the terms by which an exclusive license can be granted."); *Famous Music Corp. v. Seeco Records, Inc.*, 201 F. Supp. 560, 566 (S.D.N.Y. 1961) ("Custom and usage may not be invoked to relieve defendant of the clear cut obligations imposed by the application of the statute."). Charter has cited no law to the contrary.

Thus, without reference to any other ISP, Plaintiffs will demonstrate that the ability to infringe on Charter's network was "one among several draws to Charter's services." *Warner Records Inc. v. Charter Commc'ns*, 454 F. Supp. 3d 1069, 1074, 1077 (D. Colo. 2020) ("[P]laintiffs must only allege that the ability to download their infringing content served as a draw, not necessarily the only draw to subscribers."). Plaintiffs need not show that Charter's policies for handling infringement notices were comparatively worse than other ISPs to establish that those policies were a "draw" to infringing subscribers.

Plaintiffs, moreover, have not argued that Charter's handling of infringement notices is better or worse than other ISPs, and have made clear that, at trial, they do not intend "to compare what Charter's policies on repeat infringers or termination [are] to anyone else." Ex. 3 at 26:18–20. Rather, Plaintiffs will argue that infringing subscribers "are motivated to subscribe" to Charter by company advertisements of high speeds for downloading songs, First Am. Compl.

(ECF 123) ¶ 85, and that by failing to take action against known repeat infringers Charter operates as a safe haven for infringers. None of that bears on other ISPs' actions.

**B. In all events, Plaintiffs' *understanding* of other ISPs' procedures is irrelevant.**

Even assuming *arguendo* that other ISPs' policies could be relevant, Plaintiffs' *understanding* of what other ISPs do is still irrelevant.

Simply put, Plaintiffs' second-hand "understanding" of other ISPs' practices is not evidence of what those ISPs *actually* do. If Charter seeks to establish what other ISPs do, it can subpoena those ISPs to get direct, first-hand evidence.

The Special Master predicated her contrary ruling on the assumption that "[s]omeone at plaintiffs . . . would have an understanding of what other ISPs were doing[,] in other words, what the industry standard may have been." Ex. 3 at 25:21–23. But the Special Master identified no basis for that assumption. Plaintiffs are record companies and music publishers, not ISPs. ECF 123 ¶¶ 1, 13–82. The Special Master's conclusion that Plaintiffs must be knowledgeable about the standard in an industry in which they do not participate has no basis in fact.

To be sure, if Plaintiffs attempt to testify at trial that "Charter is the worst ISP ever," Charter would object to such testimony as lacking foundation and based on hearsay. *Cf. Anderson v. Credit Bureau Collection Services, Inc.*, 422 F. App'x 534, 538 (7th Cir. 2011) (rejecting an employee's affidavit that relied on his understanding of a third party's "business practices and customs"); *Sierra v. Stonebridge Life Ins. Co.*, No. 10-CV-03123-PAB-KMT, 2013 WL 5323083, at *2 n.4 (D. Colo. Sept. 23, 2013) (relying on *Anderson* and finding that an employee who sought to testify about a different company's procedures "did not have personal knowledge about the circumstances" or the "procedures that were in place"); *see also* Fed. R. Evid. 602 (requiring that non-expert testimony be based on personal knowledge). Only the ISPs can testify competently about their actual practices.

Thus, in the *BMG v. Cox* case involving materially similar claims, the court granted a motion to exclude testimony regarding other ISPs' handling of infringement notices, in part, because "Cox's witnesses would not have independent knowledge of the policies of other ISPs." *BMG v. Cox*, No. 1:14-cv-01611-LO-JFA (E.D.V.A. Aug. 9, 2018), ECF 998, at 2. The court further noted that "[n]o third-party discovery took place to determine if and when and why other ISPs took action on the notices," and that "impressions of other ISPs' practices based on [a proffered witness's] conversations" lacked "personal knowledge." *Id.* at 3–4. So too here, requiring Plaintiffs to testify on such "understanding" based on what they learned as part of privileged investigations and analysis would not lead to admissible evidence in any event.

### C. Plaintiffs understanding of other ISPs' responses to infringement notices is based primarily on privileged information or public records.

It is no secret that Plaintiffs have brought lawsuits against several ISPs for their contributions to, and profiting from, infringement of Plaintiffs' copyrights. *See, e.g.*, *Sony Music Entm't, et al. v. Cox Commc'ns, Inc.*, No. 1:18-cv-950 (E.D. Va.); *UMG Recordings, Inc., et al. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY (W.D. Tex.); *UMG Recordings Inc., et al. v. RCN Telecom Servs. LLC*, No. 19-cv-17272 (D.N.J.); *UMG Recordings, Inc., et al. v. Bright House Networks, LLC*, No. 8:19-cv-710-MSS-TGW (M.D. Fla.). Plaintiffs' investigations and analysis into how ISPs may or may not be responding to infringement notices is clearly confidential information that is contained either in privileged communications or attorney work product. Plaintiffs have no obligation to testify about any knowledge of other ISPs' practices that Plaintiffs learned from privileged conversations, attorney work product, or through other litigations. *See Berwick v. Hartford Fire Ins. Co.*, No. 11-CV-01384-MEH-KMT, 2012 WL 573939, at *5 (D. Colo. Feb. 21, 2012) (Hegarty, J.) (denying motion to compel

deposition testimony where the 30(b)(6) topic as drafted might call for privileged information or legal opinions).

**D. If Charter wants information on other ISPs' procedures for responding to infringement notices, it should subpoena those ISPs.**

To the extent that Charter believes it has a valid legal basis to seek information about other ISPs' practices, it should subpoena those ISPs directly. In so doing, Charter could obtain accurate information directly from the ISPs, based on a proper foundation, rather than second-hand information from companies in a different industry.

## II. The Special Master's Ruling Is Irreconcilable with Her Prior Ruling Limiting Plaintiffs' Inquiry into Charter's Knowledge and Communications with Cox, and Therefore an Abuse of Discretion.

The Special Master's Order is fundamentally at odds with her treatment of Charter's objection to Topics 11 and 69 in Plaintiffs' 30(b)(6) notice to Charter. The inconsistency between these two rulings is an abuse of discretion and provides an independent basis for reversal.

[redacted]

[REDACTED] Plaintiffs' 30(b)(6) notice included Topic 11, which reads as follows:

> Charter's licensing of software for "abuse tracking" from Cox Communications, Inc., as reflected in CHA_00001119, including the cost thereof, the Cox employees with whom Charter communicates regarding Charter's ongoing maintenance and operation of CATS, and the manner of such communication or coordination with Cox.

*See* Ex. 6. Plaintiffs' 30(b)(6) Notice also included Topic 69, which sought an educated witness on "Charter's knowledge of litigation against other ISPs concerning similar claims asserted by Plaintiffs in this case, including *BMG Rights Management (US) LLC v. Cox Communications, Inc*., No. 1:14-cv-1611 (E.D. Va.; filed November 26, 2014)." *Id.* For Topic 11, although Charter subsequently agreed to provide a witness on Charter's licensing the software for abuse tracking, it objected to testifying about its communications with Cox. *See* Ex. 7, Ex. 9. For Topic 69, Charter refused to designate a witness altogether. *See* Ex. 7.

To the extent that Charter was coordinating with another ISP on how it was responding to infringement notices, that is directly relevant to Charter's material contribution to infringement. Notwithstanding, the Special Master partially sustained Charter's objections. The Special Master first found that Charter's knowledge of similar claims against other ISPs was of "attenuated" relevance, that it "would be difficult to prepare a witness to testify" about that knowledge, and that the "outer bounds" of the testimony would be difficult to define, and on these bases did not require Charter to designate a witness for Topic 69. Ex. 8 at 82:24–83:11. Next, she denied 30(b)(6) testimony on the full scope of Topic 11, ruling that Charter must testify only about specific written communications with Cox, "directly relate[d] to the handling of DMCA complaints and any change during the relevant claim period of Cox's policies and procedures for the handling of those DMCA complaints." *Id.* at 84:12–20. Charter, however, did not have to provide a witness to testify on "the Cox employees with whom Charter

communicates regarding Charter's ongoing maintenance and operation of CATS, and the manner of such communication or coordination with Cox." *Id.* at 83:20–84:11.

Thus, Charter is not required to prepare a witness to testify about *its own* knowledge of Cox's handling of infringement notices, including from litigation and direct communications with Cox. Yet *Plaintiffs* have to prepare a witness on their second-hand and irrelevant understanding of other ISPs' practices. There is no basis to draw this distinction. If, as the Special Master found, it is disproportionately burdensome for Charter to prepare a witness to testify about communications with one ISP, it is likewise disproportionately burdensome for Plaintiffs to educate a witness to testify about the practices of "other ISPs" in the industry.

**CONCLUSION**

For the foregoing reasons the Court should reverse the Special Master's ruling on Charter's 30(b)(6) notice Topic 57, which requires Plaintiffs to prepare a witness to testify on their understanding of other ISPs' responses to notices of copyright infringement.

Dated: March 29, 2021

/s/ Stacey K. Grigsby
Stacey K. Grigsby
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
sgrigsby@cov.om

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin

Neema T. Sahni
J. Hardy Ehlers
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
jehlers@cov.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE & FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@williamsweese.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 29, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Stacey K. Grigsby*
Attorney for Plaintiffs