# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER RECORDS INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 19-cv-00874-RBJ |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S NOTICE OF DEPOSITION TO PLAINTIFFS WARNER RECORDS INC., ATLANTIC RECORDING CORPORATION, BAD BOY RECORDS LLC, ELEKTRA ENTERTAINMENT GROUP INC., FUELED BY RAMEN LLC, LAVA RECORDS LLC, MAVERICK RECORDING COMPANY, NONESUCH RECORDS INC., THE ALL BLACKS U.S.A., INC., WARNER MUSIC INC., WARNER RECORDS/SIRE VENTURES LLC, AND WEA INTERNATIONAL INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Charter Communications, Inc., will take the deposition of Plaintiffs Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, and WEA International Inc. (the "Warner Music Plaintiff Group").

Pursuant to Rule 30(b)(6), the Warner Music Plaintiff Group is directed to designate one or more of their officers, directors, managing agents, or other persons to testify on their behalf who have knowledge reasonable to it on the matters set forth in Exhibit A attached hereto.

1

The deposition will commence on **January 22, 2021** at 9:00 a.m., at the office of Quinn Emanuel Urquhart & Sullivan LLP, 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606, or at some other mutually agreeable time and location. To the extent travel and/or an in-person deposition is prohibited, unadvisable, or otherwise impracticable, the deposition shall proceed remotely, by means of video. The deposition will be taken before a notary public or other officer authorized by law to administer oaths, and will be recorded by both stenographic and/or videographic means. Provisions for real-time monitoring via LiveNote$^{TM}$ or similar facility may also be used. Said deposition shall continue from day to day, weekends and holidays excepted, until completed.

| | |
|---|---|
| Dated: December 30, 2020 | */s/* Andrew H. Schapiro |
| | Charles K. Verhoeven |
| Jennifer A. Golinveaux | David Eiseman |
| WINSTON & STRAWN LLP | QUINN EMANUEL URQUHART & |
| 101 California Street, 35th Floor | SULLIVAN, LLP |
| San Francisco, CA 94111 | 50 California Street, 22nd Floor |
| (415) 591-1506 (telephone) | San Francisco, CA 94111 |
| (415) 591-1400 (facsimile) | (415) 875-6600 (telephone) |
| Email: jgolinveaux@winston.com | (415) 875-6700 (facsimile) |
| | Email: charlesverhoeven@quinnemanuel.com |
| Michael S. Elkin | Email: davideiseman@quinnemanul.com |
| WINSTON & STRAWN LLP | |
| 200 Park Avenue | Andrew H. Schapiro |
| New York, NY 10166 | QUINN EMANUEL URQUHART & |
| (212) 294-6700 (telephone) | SULLIVAN, LLP |
| (212) 294-4700 (facsimile) | 191 N. Wacker Drive, Suite 2700 |
| Email: melkin@winston.com | Chicago, IL 60606 |
| Email: tlane@winston.com | (312) 705-7400 (telephone) |
| Email: sspitzer@winston.com | (312) 705-7401 (facsimile) |
| | andrewschapiro@quinnemanuel.com |
| Erin R. Ranahan | |
| WINSTON & STRAWN LLP | Craig D. Joyce |
| 333 S. Grand Avenue, 38th Floor | John M. Tanner |
| Los Angeles, CA 90071 | FAIRFIELD AND WOODS, P.C. |
| (213) 615-1933 (telephone) | 1801 California Street, Suite 2600 |
| (213) 615-1750 (facsimile) | Denver, Colorado 80202 |
| Email: eranahan@winston.com | (303) 830-2400 (telephone) |
| | (303) 830-1033 (facsimile) |
| | E-mail: cjoyce@fwlaw.com |
| | |
| | *Counsel for Defendant and Counterclaim Plaintiff Charter Communications, Inc.* |

2

# EXHIBIT A
# DEFINITIONS

1. "You," or "Your" shall mean any or all of Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, and WEA International Inc. (the Warner Music Plaintiff Group).

2. "Audible Magic System" shall refer to Audible Magic's system(s) for fingerprinting audio music files.

3. "Audible Magic Fingerprint" shall refer to a fingerprint created through the Audible Magic System.

4. "Charter" shall refer to Defendant Charter Communications, Inc.

5. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, in writing, or otherwise, including but not limited to written correspondence, reports, mailings, conversations, meetings, letters, notes, recordings, and telegraphic, facsimile, telex or computer-assisted electronic messages (including but not limited to e-mail, text messaging, instant messaging, VoIP calls, video conferencing, and posts on social media platforms or blogs).

6. "ISP" shall refer to Internet Service Provider.

7. "ISRC" shall refer to the International Standard Recording Code.

8. "BitTorrent, Inc." shall refer to BitTorrent, Inc. (n/k/a Rainberry, Inc.) and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on BitTorrent, Inc.'s behalf.

3

9. "Copyright Works" shall refer to the works listed in Exhibits A and B of the Complaint in the above-captioned litigation filed March 22, 2019 and/or the Amended Complaint filed on February 14, 2020.

10. "CAS" shall refer to the Copyright Alert System, or this system prior to the adoption of such nomenclature.

11. "CCI" shall refer to the Center for Copyright Information and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on the CCI's behalf.

12. "IFPI" shall refer to the International Federation of the Phonographic Industry and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on the IFPI's behalf.

13. "MarkMonitor" shall refer to MarkMonitor, Inc. and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on MarkMonitor's behalf, including but not limited to DtecNet Software and Clarivate Analytics.

14. "MarkMonitor System" shall refer to MarkMonitor's system(s) for monitoring and/or detecting alleged copyright infringement, generating copyright infringement notices, and sending copyright infringement notices.

15. "NMPA" shall refer to the National Music Publishers' Association and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past

4

and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on the NMPA's behalf.

16. "RIAA" shall refer to the Recording Industry Association of America and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on the RIAA's behalf.

17. "RIAA Notice Program" shall refer to the program through which the RIAA sent notices of alleged infringement ("RIAA Notice(s)").

18. "Stroz Friedberg" shall refer to Stroz Friedberg, an Aon company, and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person or entity acting, or purporting to act, on Stroz Friedberg's behalf.

19. "Harbor Labs" shall refer to Harbor Labs and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person or entity acting, or purporting to act, on Harbor Labs' behalf.

20. "Peer-to-peer file sharing technologies" shall include websites, other locations on the Internet or other networks, services, products, applications, apps, software, hardware, programs or programming, code, computer-based products, and/or any similar or related program, product or technology that are or may be used to electronically transfer and/or electronically share files among users, including those that utilize BitTorrent technology or other related protocols including, without limitation, uTorrent, eMule, and DC++.

5

21. "Peer-to-peer network pollution" shall refer to spoofing or any technique for introducing corrupt, misleading, or otherwise incorrect content or meta-data into peer-to-peer file sharing technologies or peer-to-peer file sharing networks and the results thereof, whether intentional or not.

22. "Plaintiff(s)" shall mean any or all of Warner Records Inc. (f/k/a Warner Bros. Records Inc.), Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recording LLC, UMG Recordings, Inc., Capitol Records, LLC, Warner/Chappell Music, Inc. (f/k/a/ Warner/Chappell Music, Inc.), Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp. (f/k/a/ WB Music Corp.), W.C.M. Music Corp. (f/k/a W.B.M. Music Corp.), Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Chappell & Co. Inc., Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc. individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a/ EMI Foray, EMI Jemaxal Music Inc., EMI Feist Catelog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal

Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music - Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GmbH, Polygram Publishing, Inc., and Songs of Universal, Inc. and/or any of its or their representatives, all past and present predecessors, successors, subsidiaries, affiliates, and parent companies, and all past and present directors, officers, partners, employees, agents, representatives, or persons acting on behalf of the foregoing entities.

23. As used herein, the terms "this lawsuit," "this litigation," and "this case" refer to *Warner Records Inc., et al. v. Charter Communications, Inc.,* Case No. 19-cv-00874-RBJ-MEH, pending in the United States District Court for the District of Colorado.

24. "And" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the topic all responses that might otherwise be construed to be outside of its scope, and the use of the singular form of any word includes the plural and vice versa.

25. "Any" and "all" shall mean one or more.

26. The terms "reflecting," "referring," "relating to," "concerning" or any derivation thereof shall mean, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, concerning, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

27. "Including" shall mean without limitation.

28. Unless the topic specifically states otherwise, references to the singular shall include the plural and vice versa; references to one gender shall include the other gender;

7

references to the past include the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

## **TOPICS FOR DEPOSITION**

1. Your general corporate structure and relationship to the other plaintiffs that are defined herein as part of the Warner Music Plaintiff Group, which are: Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, and WEA International Inc.

2. Your relationship, if any, to Warner Chappell Music, Inc., Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp., W.C.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Chappell & Co. Inc., and/or any other entity that is a part of the Warner Music Group.

3. Identification of the sound recordings You assert in this litigation, including the title, author, ISRC, and the registration number of the U.S. Copyright Office certificate for the sound recording.

4. The process by which You determined which sound recordings to assert in this litigation.

5. The process by which You identified the digital copies of the sound recordings You assert in this litigation for production to Charter.

6. The validity of the copyrights and the U.S. Copyright Office registrations, including the current registration status, of the sound recordings You assert in this litigation.

8

50. Your retention of, or failure to retain, the reference files that were used to create the Audible Magic Fingerprints.

51. Your understanding of how the Audible Magic System verified that files downloaded by MarkMonitor from peer-to-peer networks contained copies of the sound recordings You assert in this litigation.

52. Efforts by You, if any, to verify your allegations that Charter subscribers infringed the Copyright Works, including Your efforts, if any, to verify that the work identified in a notice of alleged infringement is the same as (1) the work allegedly in the possession of the Charter subscriber, (2) a work verified by Audible Magic, and (3) a Copyright Work.

53. The efficacy, reliability, and accuracy of the MarkMonitor System, and any changes impacting these measures between 2012 and the present.

54. The efficacy, reliability, and accuracy of the Audible Magic System, and any changes impacting these measures between 2012 and the present.

55. Your understanding of any data and/or reports received or sent by You as part of the RIAA Notice Program, including any reports received by you from MarkMonitor or Audible Magic.

56. Any audits or other efforts undertaken by You, on Your behalf, or by third parties known to you of the automated process used to detect and/or verify infringement and to generate notices relating to the alleged infringement at issue in this case.

57. Your understanding of other ISPs responses to receiving notices of alleged copyright infringement, including whether those other ISPs terminated subscribers who received a certain number of notices and, if so, at what number of notices.

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2020, a true and correct copy of the foregoing was served via electronic mail:

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S NOTICE OF DEPOSITION TO PLAINTIFFS WARNER RECORDS INC., ATLANTIC RECORDING CORPORATION, BAD BOY RECORDS LLC, ELEKTRA ENTERTAINMENT GROUP INC., FUELED BY RAMEN LLC, LAVA RECORDS LLC, MAVERICK RECORDING COMPANY, NONESUCH RECORDS INC., THE ALL BLACKS U.S.A., INC., WARNER MUSIC INC., WARNER RECORDS/SIRE VENTURES LLC, AND WEA INTERNATIONAL INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** upon the following:

Janette L. Ferguson, Esq.
Benjamin M. Leoni, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Tel: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com
bleoni@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Tel: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

*/s/ Seth Fortenbery*