# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 19-cv-00874-RBJ-MEH |

**WARNER MUSIC PLAINTIFFS' OBJECTIONS AND RESPONSES TO CHARTER COMMUNICATIONS, INC.'S NOTICE OF 30(b)(6) DEPOSITION**

Pursuant to Federal Rules of Civil Procedure 26 and 30, Plaintiffs Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, and WEA International Inc. (the "Warner Music Plaintiffs"), through their undersigned counsel, hereby submit their objections to Defendant Charter Communications, Inc.'s ("Charter") notice of 30(b)(6) deposition (the "Notice"), dated December 30, 2020.

Warner Music Plaintiffs will provide Charter with information regarding the time, date, and location their witness(es) are available. Warner Music Plaintiffs reserve the right to supplement or amend these objections and responses to the extent allowed by the Federal Rules of Civil Procedures, the Local Rules of the District of Colorado (the "Local Rules"), and orders of this Court (collectively, the "Rules").

1

## GENERAL OBJECTIONS

The following general objections apply to the Notice whether or not stated separately in response to each enumerated topic set forth in the attachment to the Notice (each a "Topic," and collectively "Topics"). The assertion of additional specific objections to certain Topics shall not be construed as waiving any applicable general objection.

1.  Warner Music Plaintiffs object to the Notice to the extent it seeks to impose obligations beyond those imposed by the Rules. Warner Music Plaintiffs will interpret and respond to the Notice in the manner prescribed by the same.

2.  Warner Music Plaintiffs object to the Notice to the extent it seeks testimony that is irrelevant to this action or disproportionate to the needs of the case.

3.  Warner Music Plaintiffs object to the Notice to the extent it seeks information through testimony that is (1) already in Charter's possession, custody, or control; (2) publicly available or that is of no greater burden for Charter to obtain than for Warner Music Plaintiffs to obtain; and/or (3) not known or reasonably available to Warner Music Plaintiffs as those terms are contemplated in the Rules.

4.  Warner Music Plaintiffs object to the Notice to the extent it purports to require testimony concerning an enormous volume of information, which cannot practicably be presented through a Rule 30(b)(6) witness, and therefore would be unduly burdensome and harassing in that it would be impossible for Warner Music Plaintiffs to prepare a witness adequately to testify.

5.  Warner Music Plaintiffs object to the Notice to the extent it seeks testimony protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, or by any other privilege or immunity under

federal or state law.  Nothing contained in any testimony provided by Warner Music Plaintiffs is intended as, nor shall in any way be deemed, a waiver of any applicable privilege or immunity.

6. Warner Music Plaintiffs object to the Notice to the extent it does not describe a Topic with reasonable particularity, for purposes of Rule 30(b)(6), sufficient to allow Warner Music Plaintiffs to prepare a witness adequately to testify.

7. Warner Music Plaintiffs object to the Notice to the extent it seeks information through testimony that is confidential or proprietary pertaining to Warner Music Plaintiffs' business, including dealings, technology, or relationships.  To the extent Warner Music Plaintiffs provide confidential or proprietary information in testimony, Warner Music Plaintiffs do so pursuant to the stipulated protective order entered in this case (Dkt. 63, the "Protective Order") and the parties' agreement that such information shall be disclosed only as permitted by the Protective Order and the Rules, and, as applicable, upon receipt of permission from third parties.

8. Warner Music Plaintiffs object to the Notice as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is not limited to (1) a reasonable time period, or (2) the claims or defenses in the action.

9. Warner Music Plaintiffs object to the Notice as irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it concerns Charter's now-dismissed Counterclaims III & IV.  Dkt. 284.

10. Warner Music Plaintiffs object to the Notice as unduly burdensome and disproportionate to the needs of the case to the extent it is potentially premature pending substantial completion of document discovery.  Warner Music Plaintiffs reserve the right to object to any subsequent Rule 30(b)(6) deposition of Warner Music Plaintiffs.

11. In objecting to the Notice and/or producing a witness on any noticed Topic(s), Warner Music Plaintiffs do not concede any express or implied assertion contained in any Topic(s), or that any information sought exists, is relevant, discoverable, or admissible. Warner Music Plaintiffs reserve all objections to the admissibility of any documents or testimony.

## OBJECTIONS TO CHARTER'S DEFINITIONS

1. Warner Music Plaintiffs object to the definition of "Communication" as overbroad, unduly burdensome, and disproportionate to the needs of the case. For example, the definition includes "telex" messages, which refers to messages sent on a public switched network of teleprinters that businesses used prior to the adoption of fax machines in the 1980s. It is also unlikely that "posts on social media platforms or blogs," would contain relevant information not already publicly available to Charter, or that is of no greater burden for Charter to obtain than for Warner Music Plaintiffs to obtain.

2. Warner Music Plaintiffs object to the definition of "ISP" as vague and ambiguous to the extent it consists solely of the undefined capitalized terms "Internet Service Provider," which suggests one or more defined terms that are not provided in the Notice.

3. Warner Music Plaintiffs object to the definitions of "BitTorrent, Inc.," "CCI," "IFPI," "MarkMonitor," "NMPA," "RIAA," "Stroz Friedberg," and "Harbor Labs" to the extent they encompass entities, individuals, and information outside of Warner Music Plaintiffs' knowledge, possession, custody, or control. Warner Music Plaintiffs further object to the definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case. By including "past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on" the behalf of such entities, Charter is seeking information relating to an unknown number of persons, all of whom are outside of Warner Music Plaintiffs'

4

control.  Warner Music Plaintiffs will construe "BitTorrent, Inc." to mean BitTorrent, Inc. itself; "CCI" to mean Center for Copyright Information itself; "IFPI" to mean International Federation of the Phonographic Industry itself; "MarkMonitor" to mean MarkMonitor, Inc. itself; "NMPA" to mean National Music Publishers' Association itself; "RIAA" to mean Recording Industry Association of America itself; "Stroz Friedberg" to mean Stroz Friedberg itself; and "Harbor Labs" to mean Harbor Labs itself.

4. Warner Music Plaintiffs object to the definition of "Copyright Works" as vague and ambiguous to the extent it differs from Charter's definition of that same term in previous discovery requests.  Warner Music Plaintiffs further object to the definition as irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it concerns Charter's now-dismissed Counterclaims III & IV. Dkt. 284.

5. Warner Music Plaintiffs object to the term "CAS" as vague and ambiguous to the extent it defines CAS as including any supposed "system prior to the adoption of such nomenclature."  CAS is a specific program.  Warner Music Plaintiffs further object to the terms "CAS" and CCI," as well as any Topic(s) incorporating them, in whole or in part, as irrelevant, as evidenced by repeated rulings foreclosing discovery from Plaintiffs concerning CAS beyond the Memorandum of Understanding and five implementation agreements.  *See, e.g.*, Dkt. 76 at 3; Dkt. 100 at 3; Dkt. 159 at 7; May 15, 2020 Hr'g Tr. (108:6–7).

6. Warner Music Plaintiffs object to the definition of the "MarkMonitor System" to the extent it is broader than the MarkMonitor system used during the relevant time period to detect and generate notices concerning direct copyright infringements by Charter's subscribers for the Warner Music Plaintiffs' works listed on Exhibit A to the First Amended Complaint.

5

7. Warner Music Plaintiffs object to the definition of the term "RIAA Notice Program" to the extent it encompasses any notice program other than the 2012–2015 RIAA notice program that resulted in the notices of infringement to Charter that are at issue in this case.

8. Warner Music Plaintiffs object to the definition of "peer-to-peer file sharing technologies" as so overly broad as to be meaningless, unduly burdensome, and disproportionate to the needs of the case. For example, despite the words used, Charter's definition does not limit the term to BitTorrent or specific peer-to-peer file-sharing networks at issue in this case, and instead includes any "websites, other locations on the Internet or other networks, services, products, applications, apps, software, hardware, programs or programming, code, computer-based products, and/or any similar or related program, product or technology that are or may be used to electronically transfer and/or share files among users."

9. Warner Music Plaintiffs object to the definition of "Peer-to-peer network pollution" as so overly broad as to be meaningless, unduly burdensome, and disproportionate to the needs of the case. For example, Charter does not limit the term to BitTorrent or specific peer-to-peer file sharing networks at issue in this case. Further, Charter's definition is not limited to Warner Music Plaintiffs and encompasses the actions of countless unknown entities or individuals and information outside of Warner Music Plaintiffs' knowledge, possession, custody, or control. Warner Music Plaintiffs also object to Charter's definition as vague and ambiguous as to the terms "any technique," "introducing," "corrupt," "misleading," "otherwise incorrect," "content," "meta-data," "peer-to-peer file sharing technologies," and "results." Additionally, Warner Music Plaintiffs object to the connotations of using "pollution" as part of this defined term. Warner Music Plaintiffs further object to this definition insofar as the Court has on

multiple occasions denied as irrelevant discovery into Warner Music Plaintiffs' purported "mitigation" efforts.  *See, e.g.*, Dkt. 181 at 20; Dkt. 230 at 21–23.

10. Warner Music Plaintiffs object to the definition of "Plaintiff(s)" to the extent it encompasses entities, individuals, and information outside of Warner Music Plaintiffs' knowledge, possession, custody, or control.  Warner Music Plaintiffs further object to the definition as overbroad, unduly burdensome, and disproportionate to the needs of the case.  By including "all past and present . . . employees" of every corporate affiliate, parent, and predecessor of the "Plaintiff(s)," Charter is requesting that Warner Music Plaintiffs search for information relating to tens of thousands of persons, including even persons who have never worked for any Warner Music Plaintiff.  By including "all past and present predecessors, successors, subsidiaries, affiliates, and parent companies," Charter is requesting that Warner Music Plaintiffs search for information held or pertaining to related corporate entities which have no connection to this matter.

## SPECIFIC OBJECTIONS AND RESPONSES TO RULE 30(b)(6) TOPICS

**TOPIC NO. 1**

Your general corporate structure and relationship to the other plaintiffs that are defined herein as part of the Warner Music Plaintiff Group, which are:  Warner Music Plaintiff Group, which are: Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, and WEA International Inc.

**OBJECTIONS:**  Warner Music Plaintiffs object to this Topic to the extent it is overbroad, not relevant, and not proportional to the needs of the case, and thus exceeds the scope of discoverable matters under Federal Rule of Civil Procedure 26.  For example, Warner Music Plaintiffs object to the Topic's request for testimony on "general corporate structure" and

7

expensive, and/or to the extent that compliance would be unduly burdensome, expensive, or oppressive.

**RESPONSE:** Subject to and without waiving these objections, Warner Music Plaintiffs will designate one or more persons to testify generally as to non-privileged, discoverable information regarding the knowledge, if any, of audits of the process used to generate notices relating to the infringement of Warner Music Plaintiffs' copyrighted works listed on Exhibit A to the First Amended Complaint.

**TOPIC NO. 57**

Your understanding of other ISPs responses to receiving notices of alleged copyright infringement, including whether those other ISPs terminated subscribers who received a certain number of notices and, if so, at what number of notices.

**OBJECTIONS:** Warner Music Plaintiffs object to this Topic to the extent it is overbroad, not relevant, and not proportional to the needs of the case, and thus exceeds the scope of discoverable matters under Federal Rule of Civil Procedure 26.  For example, Warner Music Plaintiffs object to the Topic's request for testimony on the "understanding," "certain number of notices" and "other ISPs responses" as the terms are vague, ambiguous, undefined, and potentially encompassing a wide range of information irrelevant to this case.  Warner Music Plaintiffs object to the Topic's request for testimony on their "understanding" to the extent it calls for speculation.  Further, the conduct of other ISPs has no plausible bearing on Warner Music Plaintiffs' claims against Charter in this action.

Warner Music Plaintiffs further object to this Topic as seeking information protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege or protection from disclosure, or that is subject to an order or agreement restricting its disclosure.

Warner Music Plaintiffs further object to this Topic to the extent it calls for legal conclusions.

Warner Music Plaintiffs also incorporate by reference their Objections and Responses to Charter's Definitions.

**RESPONSE:** In light of the foregoing objections, Warner Music Plaintiffs will not designate a witness to testify regarding this Topic.

**TOPIC NO. 58**

Any basis for Your belief that Charter's subscribers, or potential subscribers, were drawn to Charter's network in order to infringe Your sound recordings, including the sound recordings You assert in this litigation, through peer-to-peer networks.

**OBJECTIONS:** Warner Music Plaintiffs object to this Topic to the extent it is overbroad, not relevant, and not proportional to the needs of the case, and thus exceeds the scope of discoverable matters under Federal Rule of Civil Procedure 26. For example, Warner Music Plaintiffs object to the Topic's request for testimony on "any basis," "belief," and "drawn" as vague, ambiguous, undefined, and potentially encompassing a wide range of information irrelevant to this case. Warner Music Plaintiffs object to, and will not designate a witness in response to, the Topic to the extent it seeks testimony regarding (1) the factual matters derived from Charter's own documents, discovery responses, witness testimony or expert reports, and (2) legal standards, contentions, analyses, and conclusions.

Warner Music Plaintiffs further object to this Topic as seeking information protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege or protection from disclosure.

75

| | |
|---|---|
| Dated: February 5, 2021 | */s/ Jonathan M. Sperling*<br>Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br><br>Mitchell A. Kamin<br>Neema T. Sahni<br>J. Hardy Ehlers<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, California 90067-4643<br>Telephone: (424) 332-4800<br>mkamin@cov.com<br>nsahni@cov.com<br>jehlers@cov.com<br><br>Janette L. Ferguson, Esq.<br>Benjamin M. Leoni, Esq.<br>WILLIAMS WEESE PEPPLE & FERGUSON<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Telephone: (303) 861-2828<br>Facsimile: (303) 861-4017<br>jferguson@williamsweese.com<br>bleoni@williamsweese.com<br><br>Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Fl.<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>scott@oandzlaw.com<br>jeff@oandzlaw.com<br><br>*Attorneys for Warner Music Plaintiffs* |

105

**CERTIFICATE OF SERVICE**

I certify that on February 5, 2021 a true and correct copy of the foregoing was served on counsel for the parties of record.

/s/ Jonathan M. Sperling
Jonathan M. Sperling