# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC., et al.,**

    Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.**

    Defendant.

**PLAINTIFFS' AMENDED NOTICE OF DEPOSITION
TO DEFENDANT CHARTER COMMUNICATIONS, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of Defendant Charter Communications, Inc. ("Charter").

    Pursuant to Rule 30(b)(6), Charter is directed to designate one or more of its officers, directors, managing agents, or other persons to testify on its behalf who have knowledge reasonable to it on the matters set forth in Exhibit A attached hereto. Charter has a duty to promptly meet and confer in good faith about the matters for examination and to designate each person who will testify.

    The deposition will commence on January 29, 2021 at 9:00 a.m., at the office of Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York, 10018-1405, or at some other mutually agreeable time and location. To the extent travel and/or an in-person deposition is prohibited, unadvisable, or otherwise impracticable, the deposition shall proceed remotely, by means of video. The deposition will be taken before a

notary public or other officer authorized by law to administer oaths, and will be recorded by both stenographic and/or videographic means.  Provisions for real-time monitoring via LiveNoteTM or similar facility may also be used.  Said deposition shall continue from day to day, weekends and holidays excepted, until completed.

January 27, 2021

/s/ *Jonathan M. Sperling*
Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
J. Hardy Ehlers
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
jehlers@cov.com

Janette L. Ferguson, Esq.
LEWIS BESS WILLIAMS & WEESE, P.C.
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@lewisbess.com

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise indicated, the following definitions apply to these requests:

1. The term "Plaintiffs" refers collectively to Warner Records Inc., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Warner Chappell Music, Inc., Warner-Tamerlane Publishing Corp., W Chappell Music Corp. d/b/a WC Music Corp., W.C.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/Island Music Limited,

3

Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., PolyGram Publishing, Inc., and Songs of Universal, Inc.

2. The term "Universal Plaintiffs" refers collectively to UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GmbH, PolyGram Publishing, Inc., and Songs of Universal, Inc.

3. The terms "you," "your," "Charter," or "Defendant" refer to Charter Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on behalf of the defendant.

4. The term "Acceptable Use Policy" refers to any policy concerning obligations, rules, or limitations of Subscribers' or Users' use of internet services offered by Charter.

5. The term "CATS" means the Charter Abuse Tracking System, including without limitation any programs, procedures, software, or policies related thereto.

6. The term "Cox" means Cox Communications, Inc., its parents, subsidiaries, affiliates, predecessors, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act, to your knowledge, on behalf of such entities or individuals.

7. The term "DMCA" refers to the Digital Millennium Copyright Act.

4

8. The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Subscribers or Users relating to, the DMCA.

9. The term "Infringement Notice" refers to a notice that one or more of Charter's Subscribers or Users allegedly infringed a copyright. This includes notices sent on behalf of any copyright owner, regardless of whether or not Charter processed or retained the notice. This term includes but is not limited to a notification of claimed copyright infringement pursuant to the DMCA, 17 U.S.C. § 512.

10. The term "Infringing Subscriber" refers to any Subscriber identified in any Infringement Notice sent to You by Plaintiffs, or on Plaintiffs' behalf, between March 24, 2013 and May 17, 2016.

11. The term "MarkMonitor" refers to MarkMonitor Inc., its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf. The term MarkMonitor also specifically includes DtecNet Inc. and Clarivate Analytics.

12. The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server, including but not limited to protocols such as BitTorrent, ARES, eDonkey, and Gnutella, for the purpose of distributing data and electronic files over the internet.

13. The term "Repeat Infringer Policy" refers to any policy that seeks to address copyright infringement or alleged copyright infringement by a Subscriber or User, whether or not contemplated by and/or set forth in 17 U.S.C. § 512(i).

14. The term "Subscriber" refers to any account holder or subscriber of your internet services.

15. The term "Universal Infringement Notice" refers to the Infringement Notices sent by the Universal Plaintiffs to Charter between May 18, 2016 to the present.

16. The term "User" refers to any person that uses your internet services, either presently or in the past.

17. The terms "person" or "persons" are defined as any natural person or business, legal or governmental entity or association. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

18. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A non-identical copy is a separate document within the meaning of this term. "Document" specifically includes electronically stored information as defined in Rule 34(a).

19. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition includes any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or

informal. For the avoidance of doubt, this term shall include letters, emails, call logs, voicemails, and text messages.

20. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

21. "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

22. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

23. The use of the singular form of any word shall include the plural and vice versa.

24. Unless otherwise specified, the relevant time frame for these Topics is January 1, 2012 through May 17, 2016.

mailboxes, and whether Charter reviewed and/or processed all Infringement Notices sent to the mailboxes.

7. Infringement Notices Charter received from the RIAA on behalf of Plaintiffs and the Universal Infringement Notices, and Charter's responses to and handling of such notices, including any objections made or refusals to process any such notices.

8. Infringement Notices Charter received from third parties, and Charter's responses to, objections to, and handling of such notices.

9. Charter's CATS system, including its purpose, functionalities, capabilities, and ability to track abuses of any copyright infringement-related policy by Charter's Subscribers or Users, or otherwise track or process Infringement Notices.  This Topic includes Charter's actual configuration and use of CATS for such purposes, including as reflected in CHA_00082094 and CHA_00024727.

10. Charter's processes and procedures for "closing" tickets—whether manually or automatically—associated with Infringement Notices, including the different reasons why Charter closes tickets.

11. Charter's licensing of software for "abuse tracking" from Cox Communications, Inc., as reflected in CHA_00001119, including the cost thereof, the Cox employees with whom Charter communicates regarding Charter's ongoing maintenance and operation of CATS, and the manner of such communication or coordination with Cox.

12. Charter's process for assigning and/or re-assigning IP addresses to Subscribers, and Charter's process for tracking the identity of the Subscriber associated with each IP address, including through DHCP logs, for both residential and commercial Subscribers.

9

62. The various levels and tiers of internet services offered by Charter, data use limits associated with those tiers, the cost of such different levels or tiers of service, and Charter's efforts to move Subscribers into higher data use plans.

63. Market research, studies, surveys, reports and/or analysis concerning how Subscribers use the internet, Charter's internet service, and what attracts them to Charter's service.

64. Charter's efforts to market, promote and/or advertise faster download and upload speeds to Subscribers (including for music).

65. Growth targets, strategic plans, or internal strategies pertaining to the use or offering of higher bandwidths to Subscribers for the purpose of downloading music.

66. The impact of Subscribers' use of Peer-to-Peer file-sharing protocols on Charter's profits.

67. The factual bases for Charter's assertion of a DMCA safe-harbor defense and a copyright misuse defense.

68. The bases for Charter's purported belief that the "DMCA did not require it to cut off a subscriber's Internet service unless that subscriber was first adjudicated to be a repeat infringer" (see Charter's Submission Regarding its Affirmative Defenses at 13, ECF No. 160).

69. Charter's knowledge of litigation against other ISPs concerning similar claims asserted by Plaintiffs in this case, including *BMG Rights Management (US) LLC v. Cox Communications, Inc.*, No. 1:14-cv-1611 (E.D. Va.; filed November 26, 2014).

70. Charter's legal holds on ticket data or any other data saved in CATS, including the legal hold referenced in CHA_00024936 and any investigations taken to understand the existence and status of that legal hold, and any results of those investigations.

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 22nd day of January, 2021, upon counsel of record.

Dated: January 27, 2021

/s/ J. Hardy Ehlers