IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant

Case No. 19-cv-00874-RBJ-MEH

**PLAINTIFFS' RESPONSE TO CHARTER'S OBJECTION TO SPECIAL MASTER'S MARCH 16, 2021 ORDER DENYING CHARTER'S MOTION TO COMPEL 30(b)(6) TESTIMONY ON TOPIC 11 (WORK FOR HIRE AGREEMENTS) AND TOPIC 14 (OWNERSHIP OF DROPPED WORKS)**

## INTRODUCTION

Charter's Objection to the Special Master's ruling on Work for Hire and Dropped Works (ECF 421) reiterates the issues that Charter chose to first raise by letter on March 17, 2021 and then orally before the Court on March 18. *See* Ex. 1, Mar. 18, 2021 Hr'g Tr. 90:7–103:6. The Court denied the Objection then after Charter confirmed that it had received a full and fair opportunity to be heard on these issues, before the Court ultimately granted Charter leave to file its brief. *See id.* at 103:7–109:11. Nothing about the arguments has changed, however, and the Objection should again be overruled.

Charter seeks testimony concerning the designation of sound recordings in suit as works for hire in their respective copyright registrations. This Court was right to be skeptical at the February 23, 2021 hearing (the "February 23 Hearing") of Charter's purported intent to invalidate Plaintiffs' copyright registrations using the rarely-invoked Section 411(b) Copyright

1

Office procedure, and the Special Master was correct to deny Charter's motion to compel the related 30(b)(6) deposition testimony in her March 16, 2021 order ("March 16 Order").  In fact, Charter's Objection does not even *contend* that the Special Master abused her discretion, let alone attempt to substantiate such an argument.  Charter's failure even to assert an abuse of discretion is, alone, fatal to its Objection.

If anything, Charter's brief now makes clear that the real reason Charter seeks this testimony is in order to attempt to falsely portray Plaintiffs as treating artists poorly.  This lawsuit, however, is about Charter's response to massive infringement on its network, not about Plaintiffs' relationships with their artists.  To be sure, Charter can seek discovery regarding how artists will benefit from *this lawsuit*.  But the deposition topics at issue have nothing to do with that, and testimony regarding how well or poorly Plaintiffs generally treat artists or any other contractual counterparties is neither probative of or relevant to any issue in the case—any more than would be testimony about whether Charter generally does or does not treat its subscribers or vendors well.

Because the Special Master's denial of Charter's motion to compel Plaintiffs to designate a witness to address Topics 11 and 14 was well-reasoned and consistent with the Court's prior orders, and because Charter does not even contend that it was an abuse of discretion, the Court should overrule the Objection.

## ARGUMENT

Under the Order Appointing Special Master, "any order, report, or recommendation of the Master on nondispositive motions (unless it involves a finding of fact or conclusion of law) will be deemed a ruling on a procedural matter," reviewable for abuse of discretion.  ECF 143 at ¶ 6.  A Special Master abuses her discretion when she "fails to articulate a reason for [her]

2

decision...or articulates a reason which has no basis in fact[,] or the reason articulated is contrary to law." *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008).

**I.  The Special Master Did Not Abuse Her Discretion In Denying Charter's Motion To Compel Testimony Sought In Topic 11 Concerning Whether Any Of The Sound Recordings In This Litigation Are Works Made For Hire.**

Charter does not even contend that the Special Master abused her discretion in denying Charter's motion to compel testimony sought by Topic 11. That is because she did not. To the contrary, after receiving written submissions from the parties and entertaining Charter's oral argument, the Special Master carefully followed this Court's February 23 ruling that Charter's pursuit of further discovery regarding work for hire issues over specific works should be denied:

> [I]t would seem that Topic 11, which is asking for information and the designation of a witness to testify about specific sound recordings you assert in the litigation had been deemed or designated as a work made for hire, as that is defined in 17 U.S.C. Section 101, is a bridge too far and is inconsistent with the discussion that we had and Judge Hegarty ruled on at the hearing on February 23.

Ex. 2, Mar. 16, 2021 Hr'g Tr. 11:1–8; s*ee also id*. at 15:23–16:1 ("With regard to Topic 11, we would decline it on that one at this time for the reasons set forth in the February 23 hearing, as well as our discussion today.").

Indeed, the testimony sought by Topic 11 lacks relevance and having to prepare for it would place an undue and disproportionate burden on Plaintiffs.

**A.  This Court Has Already Determined that Any Effort by Charter to Invalidate Plaintiffs' Copyright Registrations Is Not a Basis for Ordering Work for Hire-Related Discovery.**

Charter erroneously states that this Court previously decided that the subject matter of Topic 11 is relevant. To the contrary, in response to Charter's argument that it needed the additional work for hire agreements and related deposition testimony to prove fraudulent intent under § 411(b), the Court ruled as follows:

3

> THE COURT: I'm not going to view this law or the actual invalidation as a basis for ordering anything here, because you haven't done it in the Bright House case, you haven't done it in this case. You've had the information for nine months to do it, and I just don't believe you're going to. So, if there is another foundation for how this might be used in our case, give it to me now, because I don't believe that you can possibly engage in that process in time enough for it to matter here. And I don't think Judge Jackson would participate to the extent any court involvement is required, because he has already made express statements about this is not going to be tried on a work-by-work basis.

Ex. 3, Feb 23, 2021 Hr'g Tr. 144:21–45:8.

Charter then offered no other foundation for how the information would be used in the case and the Court denied Charter the work for hire-related discovery it sought. The transcript cite Charter relies on to argue that the Court "recognized" the relevance of the testimony sought in Topic 11 (Br. at 4, citing p. 132) does no such thing and is from earlier in the oral argument before the Court heard of Charter's alleged plan to try to invalidate Plaintiffs' copyright registrations under 17 U.S.C. § 411(b).

Charter argues that it seeks the work for hire-related testimony of Topic 11 on the basis that it would be "relevant to any filing Charter makes with the U.S. Copyright Office to challenge the validity of the registrations." Br. at 4. Accordingly, the Special Master's denial of Charter's motion to compel testimony responsive to Topic 11 was consistent with this Court's earlier ruling and was not an abuse of discretion.

While no more is required to affirm the Special Master's ruling, Plaintiffs briefly address the following two points:

  **1.**  **The Court Will Ultimately Reject Any Effort by Charter to Engage in the Registration Invalidation Process under Section 411(b) as Futile.**

Charter's entire argument about the relevance of the work-for-hire designations is predicated on the erroneous assumption that, to the extent any of the works was fraudulently (not just erroneously) designated as a work for hire, that would bear on the validity of the copyright

4

registration. That could only be true, however, if the sole basis for registering the work in the name of Plaintiffs or their predecessors-in-interest was that it was a work made for hire. By contrast, if there were an additional basis for registering the copyright in Plaintiffs' names—such as through an assignment or exclusive license—even Charter's made-up case of a knowingly-false work-for-hire designation would not bear on the validity of the registration. And, tellingly, Charter has not argued that the chain of title to any sound recording copyrights allegedly implicated by its request lack an alternate transfer to Plaintiffs by assignment or exclusive license. That is because Charter knows from its review of Plaintiffs' recording agreements that such language of assignment or license is commonplace.

Specifically, to invalidate a copyright registration under Section 411(b)(1), Charter would have to prove both that the work for hire designation was "included on the application for copyright registration with knowledge that it was inaccurate" and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(A)–(B). Charter has not cited a single case where (i) a copyright registration for a sound recording was invalidated because the work was erroneously deemed a work for hire, or (ii) a registration for any type of work was invalidated because of an erroneous work for hire designation where the copyright was also transferred to the registrant by assignment or some other lawful way.

That is not surprising because case law uniformly holds that a registration is valid where the work is assigned or otherwise transferred to the registrant, notwithstanding questions about the propriety of a work-for-hire designation. *See, e.g.*, *Capital Concepts, Inc. v. Mountain Corp.*, No. 3:11-CV-00036, 2012 WL 6761880, at *2 (W.D. Va. Dec. 30, 2012) ("There was a written agreement in place when the copyright registrations were filed; this written agreement assigned

5

ownership of the Copyrighted Designs to Plaintiff; and there is no dispute that McAbee assigned, and intended to assign, ownership of the Copyrighted Designs to Plaintiff. Thus, it is clear that Plaintiff did not attempt to trick or deceive the Copyright Office by claiming ownership of the Copyrighted Designs. Accordingly, Plaintiff's copyright registrations are valid and Plaintiff is entitled to a jury trial on its claim for copyright infringement."); *Rottlund Co. v. Pinnacle Corp.*, No. Civ-01-1980 DSD/SRN, 2004 WL 1879983, at *13 (D. Minn. 2004) ("For purposes of this case, the work for hire designation is relevant only because it is a means of conferring authorship, and authorship confers ownership. 17 U.S.C. § 201. Rottlund, however, is already the owner of the Original Villa and New Villa technical drawing copyrights by assignment. Thus, the allegedly erroneous work for hire designation is immaterial and caused no prejudice to Defendants."); *Teevee Toons v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 549 (S.D.N.Y. 2001) ("Someone who in fact lawfully owns a copyright but in seeking registration inaccurately denominates the basis for ownership (as here, allegedly, by checking the 'work made for hire' box on the application form) does not thereby become subject to having the registration invalidated by an infringing party unless, at a minimum, the infringing party can show that the inaccuracy was both material and made in bad faith."), disagreed with on other grounds by *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 94 (2d Cir. 2016). As will be true here, the court in *Teevee Toons*, an earlier music mass-infringement case, then observed:

> Assuming plaintiffs can show at trial that as to each copyright here in issue they had a valid agreement at the time of application for registration that provided them with both potential 'work made for hire' ownership and fallback ownership by assignment, defendant will be unable to satisfy the aforementioned standard and plaintiffs will be entitled as a matter of law to a determination that each such copyright certificate validly and conclusively supports a claim for statutory damages in this case.

*Teevee Toons*, 134 F. Supp. 2d at 549.

In addition to the reasons this Court rejected the likelihood of Charter using the process under § 411(b) to invalidate any of Plaintiffs' registrations, the above cases indicate that Charter's attempt to invalidate Plaintiffs' registrations would be an exercise in futility.[1]

### 2. There Is No Argument Charter Is Responding to Concerning the "Best Interests of Plaintiffs' Artists" and Thus No Such Basis for Relevance of Any Work for Hire-Related Testimony.

Charter seeks alternatively to justify the requested discovery by setting up a strawman: Charter argues that Plaintiffs' claims are based on a general proposition that Plaintiffs act in the best interest of their artists. Charter then uses that strawman to justify seeking discovery regarding whether that is really true.

While Plaintiffs do not dispute that they act in the best interest of their artists, that point is entirely irrelevant to the claims and defenses in this case. Plaintiffs' position in this case is and has consistently been that their artists have been harmed by Charter's conduct and that *winning this lawsuit and collecting damages from Charter will benefit the artists*. Charter has a 30(b)(6) topic to Plaintiffs addressed to this issue—how proceeds from litigation are shared with artists when Plaintiffs obtain recoveries—and Charter can pursue that testimony to respond to this

---

[1] The "prior experience" of Charter's counsel with the § 411(b) process (Br. at 6) demonstrates the substantial delay such a process here would cause. In that case, where the copyright registration was not invalidated, the court issued a summary judgment decision on March 13, 2017 addressing all of the plaintiff's copyright claims other than with respect to a single work. *Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 513 (S.D.N.Y. 2017). The question concerning the validity of the registration governing that remaining work was referred to the Copyright Office thereafter and the Copyright Office responded to the court on June 16, 2017. *Id.* at 515. The court then had to order supplemental briefing because the response from the Copyright Office alone did not resolve the issue. *Id.* On August 20, 2017, the court issued an opinion, refusing to find the registration invalid and ordering the parties to proceed to trial. *Id.* at 520. Thus, it took six months to resolve the issue of whether *a single registration* was valid. Here, Charter has more than 1,000 registrations in its sights—and at a time when the Copyright Office has been functioning remotely and experiencing delays due to the Covid-19 pandemic. The idea that registration invalidation decisions would be made in this case in even the six months it took in the *Archie* case is farcical.

argument. But whether or not the sound recordings at issue are works for hire—or whether Plaintiffs are all-around nice guys or not—has no relevance to whether Plaintiffs' recording artists will benefit from the proceeds of this litigation, and Charter does not suggest that it does.

In all events, while Charter uses this Objection to scurrilously accuse Plaintiffs of stealing from their artists, Charter's brief does not identify a single fact to support the suggestion that any Plaintiff has ever knowingly registered a work as having been made for hire when it was not. For that matter, Charter does not identify a single work that it claims was registered as a work for hire, but should not have been. The only theft of which there is evidence before this Court is Charter's embrace of the rampant theft of music through peer-to-peer file sharing over its network, while pocketing billions of dollars from known, infringing subscribers via a stated policy to take no action against them despite (or, really, on account of) peer-to-peer traffic constituting the predominant upstream use of Charter's network. That behavior is what this case is about.

> **B.**     **The Burden to Prepare Witnesses to Testify to the Revised "Narrowly Tailored" Topic 11 Would Be Untenable and Disproportionate.**

Charter asserts, without any detail or substantiation, that it has identified potential "issues" regarding 15% of the sound recordings in suit concerning the registration of those works as works for hire and that, on a per-plaintiff basis, that number is not an unduly burdensome quantity of works to explore in a 30(b)(6) deposition. To the contrary, the burden is immense for even this purportedly "limited" set of works. Notably, Charter has failed to identify to the Court or Plaintiffs which works or which artists are included in this 15%. The assertion by counsel alone, without any declaration of support and without any detail, should be disregarded. *See, e.g.*, *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 537 (D. Kan. 2003) (holding that without

a supporting declaration, affidavit, or other evidence, defendant's "mere conclusory statement" regarding cost of discovery was not enough to support request for protective order).

Fifteen percent of the approximately 7,000 sound recordings in suit is more than 1,000 sound recordings and 350 works per Plaintiff group, on average. Charter argues minimal burden on the basis that there are merely "several dozen artists" at issue. Additionally, Charter claims there are an unnamed number of "other artists" for which it could not identify any specific artist agreements. Thus, though Charter has been careful not to specify the actual number of artists, it would appear to be over 50, and perhaps well more than that—and Plaintiffs' relationship with each artist could span many separate agreements and amendments.

That is a substantial volume of agreements on which to prepare a witness—and the number is ultimately unknown because Charter chose not to identify the actual number, even though it represented that it has now "completed its investigation" of the artist agreements. Accordingly, Topic 11 places a disproportionately high burden on Plaintiffs in having to prepare a witness to testify, even if Charter were to identify the recording artists it would inquire about before the deposition. The Court recognized over a year ago that educating a 30(b)(6) witness on each agreement over which Charter had a concern with respect to work for hire agreements would be impossible. *See* Ex. 4, Feb. 19, 2020 Hr'g Tr. 54:6–55:2. It remains highly difficult for even "several dozen" artists concerning potentially 100 or more agreements.

II. **The Special Master Did Not Abuse Her Discretion In Denying Charter's Motion To Compel Testimony Sought In Topic 14 Concerning The Dropped Works.**

Charter also objects to the Special Master's ruling denying Charter's motion to compel testimony sought by Topic 14: "The status of Your ownership, possession of an exclusive right, or ability to otherwise sue for the alleged infringement" of the "Dropped Works." As with its objection regarding the work-for-hire ruling, Charter does not even contend that the Special

9

Master abused her discretion—absent which there can be no basis for upholding the objection—because she clearly did not.

### A. The Dropped Works Are Out of the Case and Not Relevant.

After receiving Charter's written and oral argument, the Special Master reminded Charter that "we've been pretty clear that we're not getting into discovery on dropped works and … we're not trying a case about the dropped works." Ex. 2, Mar. 16, 2021 Hr'g Tr. 19:12–17. With respect to Charter's relevance argument—that it seeks to demonstrate that the notices for the Dropped Works were faulty because Plaintiffs may have lacked the rights to send the notices—the Special Master pointed to the request for admission ("RFA") in which the Plaintiffs admitted that they owned or had an exclusive right to all of the Dropped Works. *Id*. at 20. The Special Master then recognized that "given that we have that admission, that is a quote/unquote, done deal at this stage. Generally, we don't allow additional discovery on something that is – and that is the purpose of the request for admission." *Id*. at 21:7–11. The Special Master ruled in conclusion:

> [B]ased on what we have here now, I don't see that it is fruitful at this point in time or it is going to lead to the information that will tie this up for you in the way that I think that you're articulating here. So I'm not inclined to allow the inquiry with regard to Topic Number 14.

*Id*. at 23:9–14.

The Special Master's decision applied this Court's rulings from the February 23 Hearing, where the Court made clear that the Dropped Works were out of the case. Ex. 3, Feb. 23, 2021 Hr'g Tr. 174–75 (the trial will not be "about works-not-at-issue"). The Special Master's reference to the significance of Plaintiffs' RFA answer was also based in this Court's finding that the answer settled the issue over further discovery into ownership over the Dropped Works. *Id*. at 180. The Special Master's decision is also sound because it makes no sense that while this

10

Court ruled that Plaintiffs do not have to produce documents concerning the ownership or possession of an exclusive right in the Dropped Works, Plaintiffs would nonetheless have to prepare witnesses to testify about the subject matter of those documents.

Charter argues, based on publicly available information it claims to have found, that with respect to Plaintiff UMG Recordings, Inc., many of the dropped works were registered to independent labels. Charter concedes that UMG "may have had some type of relationship" with these labels, but argues that "that does not necessarily mean that Plaintiff UMG Recordings, Inc. owns or possesses an exclusive right in these works, *calling into question counsel's representation at the hearing*." Br. at 9 (emphasis added).

That final clause is a non sequitur. To be sure, that someone other than UMG registered the work "does not necessarily mean" that UMG possesses an exclusive right in the work—but it also does not suggest, let alone "necessarily mean," that UMG does *not* possess such an exclusive right. Indeed, at the hearing before the Special Master, Charter alleged as an example that "UMG Recordings dropped 36 works that were registered by an independent label called Concord Records." Ex. 2, Mar. 16, 2021 Hr'g Tr. 17:22–24. But it is no secret that UMG has had an exclusive distribution agreement with Concord for over 15 years[2]—and distribution rights are one of the exclusive rights under the Copyright Act. *See* 17 U.S.C. § 106(3) ("to distribute copies or phonorecords of the copyrighted work"). Thus, nothing about Charter's "research" even suggests anything inaccurate in Plaintiffs' RFA response or counsel's representations.

---

[2] *See* Universal Music Group, "Concord & Universal Music Group Extend Distribution Agreement," https://www.universalmusic.com/concord-and-universal-music-group-extend-distribution-agreement/.

11

### B. Preparing Witnesses to Testify in Response to Topic 14 Would Impose a Substantial Burden on Plaintiffs.

Charter argues that there is no undue burden to prepare witnesses to testify concerning questions over whether Plaintiffs own or hold an exclusive right in the Dropped Works because there are "only 272 Dropped Works" across the three record label plaintiff groups. That is incorrect. It would take substantial effort to prepare a witness for each plaintiff group to testify concerning almost 100 works per plaintiff group. Charter contends that the 272 Dropped Works are "covered by only 63 certificates." But preparation for this topic would be based not on registration certificates, but on the agreements granting plaintiffs rights in the sound recordings—of which there could be many applicable to any given work. The burden of preparing multiple witnesses to testify regarding the details of such agreements is clearly disproportionate given that this Court has already found the subject matter irrelevant.

### CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court overrule Charter's Objection.

Dated: March 30, 2021

/s/ Jeffrey M. Gould
Matthew J. Oppenheim
Jeffrey M. Gould
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE & FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
jferguson@williamsweese.com

*Attorneys for Plaintiffs*

13

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 30, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ Jeffrey M. Gould
*Attorney for Plaintiffs*