# Exhibit 2

WebEx/Telephonic Hearing
March 16, 2021

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

_____

WARNER BROS. RECORDS INC., et al.,

        Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC.,

        Defendant.

_____

WEBEX/TELEPHONIC HEARING

March 16, 2021

_____

        This WebEx/telephonic hearing was taken before Special Master Regina Rodriguez on March 16, 2021, at 12:01 p.m. Mountain Standard Time before K. Michelle Dittmer, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, K. Michelle Dittmer, appearing remotely via telephone)

WebEx/Telephonic Hearing
March 16, 2021

```
 1    A P P E A R A N C E S
 2    ON BEHALF OF THE PLAINTIFF WARNER BROS. RECORDS INC.:
 3            MATTHEW J. OPPENHEIM, ESQ.
              JEFFREY M. GOULD, ESQ.
 4            ALEXANDER KAPLAN, ESQ.
              Oppenheim & Zebrak LLP
 5            4530 Wisconsin Avenue N.W.
              5th Floor
 6            Washington, DC 20016
              Phone: 202-480-2999
 7            Email: matt@oandzlaw.com
              Email: jeff@oandzlaw.com
 8            Email: alex@oandzlaw.com
              (appeared via WebEx)
 9
              JONATHAN MICHAEL SPERLING, ESQ.
10            Covington & Burling LLP
              620 Eighth Avenue
11            The New York Times Building
              New York, New York 10018-1405
12            Phone: 212-841-1153
              Email: jsperling@cov.com
13            (appeared via WebEx)
14            STACEY K. GRIGSBY, ESQ.
              Covington & Burling LLP
15            One CityCenter
              810 Tenth Street, NW
16            Washington, DC 20001-4956
              Phone: 202-662-5238
17            Email: sgrigsby@cov.com
              (appeared via WebEx)
18
19
20
21
22
23
24
25
```

WebEx/Telephonic Hearing
March 16, 2021

```
 1    ON BEHALF OF THE DEFENDANT:
 2            ANDREW H. SCHAPIRO, ESQ.
              Quinn Emanuel Urquhart & Sullivan, LLP
 3            191 N. Wacker Drive, Suite 2700
              Chicago, Illinois 60606
 4            Phone: 312-705-7403
              Email: andrewschapiro@quinnemanuel.com
 5            (appeared via WebEx)
 6            LINDA J. BREWER, ESQ.
              Quinn Emanuel Urquhart & Sullivan, LLP
 7            50 California Street, 22nd Floor
              San Francisco, California 94111
 8            Phone: 415-875-6403
              Email: lindabrewer@quinnemanuel.com
 9            (appeared via WebEx)
10            GRACIE CHANG, ESQ.
              Quinn Emanuel Urquhart & Sullivan, LLP
11            50 California Street, 22nd Floor
              San Francisco, California 94111
12            Phone: 415-875-6403
              Email: graciechang@quinnemanuel.com
13            (appeared via WebEx)
14            KATY AKOPJAN, ESQ.
              Quinn Emanuel Urquhart & Sullivan, LLP
15            51 Madison Avenue, 22nd Floor
              New York, New York 10010
16            Phone: 212-849-7254
              Email: katyakopjan@quinnemanuel.com
17            (appeared via WebEx)
18            SEAN R. ANDERSON, ESQ.
              Winston & Strawn, LLP
19            200 Park Avenue
              New York, New York 10166-4193
20            Phone: 212-294-6729
              Phone: 212-294-5388
21            Email: sranderson@winston.com
              (appeared via WebEx)
22
              ERIN R. RANAHAN, ESQ.
23            Winston & Strawn, LLP
              333 South Grand Avenue
24            Los Angeles, California 90071
              Phone: 213-615-1835
25            Email: eranahan@winston.com
              (appeared via WebEx)
              (appeared via WebEx)
```

WebEx/Telephonic Hearing
March 16, 2021

Page 4

```
 1    ON BEHALF OF THE DEFENDANT: (Continued)

 2              JENNIFER ANN GOLINVEAUX, ESQ.
               Winston & Strawn, LLP
 3             101 California Street
               Suite 3400
 4             San Francisco, California 94111-5802
               Phone: 415-591-1506
 5             Email: jgolinveaux@winston.com
               (appeared via WebEx)
 6

 7              CRAIG D. JOYCE, ESQ.
               Fairfield & Woods, P.C.
 8             1801 California Street
               Suite 2600
 9             Denver, Colorado 80202-2645
               Phone: 303-830-2400
10             Email: cjoyce@fwlaw.com
               (appeared via WebEx)
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

WebEx/Telephonic Hearing
March 16, 2021

Page 10

```
 1              Sean, do you have more specifics on that?
 2              MR. ANDERSON:  Yeah, that's right.  As we
 3   discussed a bit during the February hearing, while the
 4   issue might pertain to, say, 30 or 40 works, it would be
 5   a single artist agreement or a single kind of inquiry
 6   about a specific artist.
 7              So by our internal count, it's about
 8   between 10 and 20 per -- per plaintiff group.  So
 9   essentially 10 or 20 discrete artist inquiries per -- per
10   plaintiff group, and we could get more specific shortly
11   after this hearing, if -- if needed.
12              But that may pertain to anywhere from, you
13   know, 100 to 200 works, given the fact that there are
14   whole discographies at issue in this case on, you know,
15   an artist-by-artist basis.
16              SPECIAL MASTER RODRIGUEZ:  All right.  So
17   based upon what you've provided to me on the discussion
18   that was had at the prior hearing on February 23, it
19   would be my inclination to allow the inquiry with regard
20   to the process for determining whether a sound recording
21   is a work made for hire, including whether to register a
22   work as one made for hire as that's defined in 17 U.S.C.
23   Section 101.
24              So as I understand that request, it's
25   generally the process that the plaintiffs use for making
```

WebEx/Telephonic Hearing
March 16, 2021

1   that determination.  However, it would seem that

2   Topic 11, which is asking for information and the

3   designation of a witness to testify about specific sound

4   recordings you assert in the litigation had been deemed

5   or designated as a work made for hire, as that is defined

6   in 17 U.S.C. Section 101, is a bridge too far and is

7   inconsistent with the discussion that we had and

8   Judge Hegarty ruled on at the hearing on February 23.

9               Mr. Oppenheim or someone from the

10  plaintiffs, I'll let you discuss that if you want to --

11              MR. OPPENHEIM:  My colleague --

12              SPECIAL MASTER RODRIGUEZ:  -- talk me out

13  of that, but that is where I'm inclined right now.

14              MR. OPPENHEIM:  My colleague, Mr. Kaplan,

15  is going to respond, if that's all right.

16              SPECIAL MASTER RODRIGUEZ:  Okay.

17              MR. KAPLAN:  Thank you, Ms. Rodriguez.

18  Can you hear me okay on this setup?

19              SPECIAL MASTER RODRIGUEZ:  Yes.

20              MR. KAPLAN:  Thank you.

21              So we certainly agree with your ruling on

22  Topic 11.

23              And on Topic 12, I mean, I think we can

24  live with this, but I just do want to note that -- and

25  this is getting into legal conclusions and really asking

WebEx/Telephonic Hearing
March 16, 2021

```
 1   about legal advice ultimately.
 2              I mean, we're -- the process by which a
 3   label determines whether a recording is a work for hire
 4   with particular reference to the definition under the --
 5   under the statute, that's a legal determination, right?
 6   Lawyers decide --
 7              SPECIAL MASTER RODRIGUEZ:  Well, let me
 8   just stop you there.  I'm not asking, nor am I ordering
 9   here, that you're going to be divulging legal analysis.
10   If that's the process, that's the process.
11              What I've indicated is that it seems fair
12   game for the defendant to be able to ask:  What is your
13   general process?  How do you go about doing that?  If
14   legal advice is part of that process, then I would
15   anticipate that's what the witness would say.
16              MR. KAPLAN:  Fair enough, Your Honor.
17              SPECIAL MASTER RODRIGUEZ:  So --
18              MR. SCHAPIRO:  So can I just take another
19   run at or just to seek a clarification on Number 11 --
20              SPECIAL MASTER RODRIGUEZ:  Yes.
21              MR. SCHAPIRO:  -- Ms. Rodriguez?  Because
22   back at the February 23 hearing, the plaintiffs'
23   counsel -- when there was a discussion of burden,
24   plaintiffs' counsel said that the material -- the sample
25   already produced in the Bright House case, the related
```

WebEx/Telephonic Hearing
March 16, 2021

1   case, showed an error rate (audio interruption) was in

2   the single digits.

3                   And Judge Hegarty asked us, "Well, you

4   know, have you run an analysis yet?"  And we hadn't.  And

5   he thought, "Okay.  Well, you know, you haven't justified

6   the -- claiming burden here."

7                   But we have since completed our analysis

8   of the documents from the Bright House case that pertain

9   to the works in this case, so there's about an 80 percent

10  overlap.  And our identification showed potential issues

11  with approximately only about 15 of the works-in-suit.

12  And so, you know, it was, you know, twice as many as --

13  (audio interruption) as many as (audio interruption)

14  digits.

15                  So we think --

16                  THE COURT REPORTER:  You're cutting out --

17  you're cutting out, Mr. Schapiro.

18                  SPECIAL MASTER RODRIGUEZ:  Yeah,

19  Mr. Schapiro.

20                  MR. SCHAPIRO:  Oh.

21                  SPECIAL MASTER RODRIGUEZ:  I'm sorry.

22  We're having trouble hearing you.

23                  Maybe if everybody else could mute?

24                  MR. SCHAPIRO:  Yeah.  I think the fan on

25  my computer turned on as well, and sometimes that does

WebEx/Telephonic Hearing
March 16, 2021

1    it.

2                    SPECIAL MASTER RODRIGUEZ:  Yeah.

3                    MR. SCHAPIRO:  Can you hear me better now?

4                    SPECIAL MASTER RODRIGUEZ:  Yeah.  You

5    might --

6                    MR. SCHAPIRO:  Or did you --

7                    SPECIAL MASTER RODRIGUEZ:  -- back up --

8                    MR. SCHAPIRO:  All right.  I'll back up.

9            In the hearing, originally, as you will

10   recall, we noted that we have some information already

11   about this from the Bright House case, and there's about

12   an 80 percent overlap.  And Judge Hegarty asked us

13   whether we had done an analysis and what it showed about

14   whether there was any problem with works identified or

15   deemed works for hire.

16           We had not yet done the analysis.  The

17   plaintiffs represented that the problem was in single

18   digits at best.  Judge Hegarty thought, "Well, that's not

19   enough."

20           We have since done that analysis, and it

21   ends up that about 15 percent of these works are

22   problematic in that way, so we think that does change the

23   calculus of relevance versus burden.

24           And we would at least ask that we be

25   permitted to inquire at the deposition about the

WebEx/Telephonic Hearing
March 16, 2021

Page 15

```
 1   agreements from the BHN case which overlap with this one.
 2   We have about 80 percent from the Bright House case.
 3                SPECIAL MASTER RODRIGUEZ:  Well --
 4                MR. KAPLAN:  And, Ms. --
 5                SPECIAL MASTER RODRIGUEZ:  -- I hear
 6   your --
 7                MR. KAPLAN:  I'm sorry, go ahead.
 8                SPECIAL MASTER RODRIGUEZ:  I hear your
 9   argument, Mr. Schapiro, but I'm still disinclined to send
10   us down this pathway here.  Perhaps, as you continue your
11   analysis, if there's more information that comes to light
12   or there's something that comes from your 30(b)(6)
13   deposition that could add to this, we could look at this
14   again.  But right now, I'm not inclined to change that at
15   this point.
16                Mr. Kaplan, you were about to say
17   something, or have you decided against that?
18                MR. KAPLAN:  Well, if I don't need to say
19   anything more on Topic 11, I will not.
20                SPECIAL MASTER RODRIGUEZ:  I think that's
21   wise.  All right.
22                So with regard to the process, Topic 12, I
23   would allow that to go forward.  With regard to Topic 11,
24   we would decline it on that one at this time for the
25   reasons set forth in the February 23 hearing, as well as
```

WebEx/Telephonic Hearing
March 16, 2021

```
 1   our discussion today.

 2              All right.  Topic 14, the status of your

 3   ownership/possession of an exclusive right or ability to

 4   otherwise sue for the alleged infringement of a dropped

 5   works.

 6              Is that -- let --

 7              MR. SCHAPIRO:  So --

 8              SPECIAL MASTER RODRIGUEZ:  -- me just make

 9   sure I've got a -- I've got an exact replication.

10   Because it was not -- this is related to Topic Number 14

11   as identified by Charter.  All right.

12              Mr. Schapiro, sorry to interrupt you.  Go

13   ahead.

14              MR. SCHAPIRO:  Sure.

15              So here we're discussing -- can you hear

16   me all right, by the way?

17              SPECIAL MASTER RODRIGUEZ:  Yes.

18              MR. SCHAPIRO:  All right.  So, you know,

19   this relates to the dropped works, which is a topic that

20   we've discussed in various other contexts here.

21              And when this issue came up at a prior

22   hearing, the -- one of the main issues was that:  Well,

23   the notices hadn't been sent by the publishers in the

24   past.  And -- and here we're talking about record

25   label -- the record label plaintiffs, and the dropped
```

WebEx/Telephonic Hearing
March 16, 2021

1   works are, of course, entirely intertwined with the issue

2   of notices.

3                    The plaintiffs are going to argue that

4   there were thousands of notices and that that's one of

5   the reasons why Charter should be held liable.  We want

6   to be able to argue, in whatever ways we are able, that

7   the notices were unreliable and that there are problems

8   with them.

9                    Now, at the hearing, I think the needle

10  moved on -- at the hearing in February, the needle moved

11  on this issue when one of the counsel for plaintiffs

12  ultimately, at the end of the argument, stood up and made

13  a representation and said, "We own all of these works."

14                   And at that point, Magistrate

15  Judge Hegarty said:  Well, if he's representing that they

16  own all of these works, I'm not going to ask them to go

17  and dig out documents.  But we would be -- we do believe

18  we are entitled to test that representation at the

19  deposition.

20                   And we have reasons for that.  I mean, we

21  have since found -- for example, with regard to a label

22  called Concord Records.  So the Plaintiff UMG Recordings

23  dropped 36 works that were registered by an independent

24  label called Concord Records; 66 works by the artist

25  Raffi that were registered by his independent label,

WebEx/Telephonic Hearing
March 16, 2021

```
 1   Troubadour; 14 works from Mumford & Sons, registered to
 2   an independent label.  I could go on.
 3              All of these, we have reason to believe,
 4   it looks like, on the surface at least, there's an
 5   ownership problem.  Maybe there isn't, but we shouldn't
 6   have to rely on a representation made by an attorney in
 7   the middle of an argument without being able to test it
 8   at deposition.
 9              And what we are willing to do here to
10   alleviate any burden in preparing a witness is to
11   identify the ones we consider problematic in advance, and
12   it's a relatively -- and that the universe of dropped
13   works is relatively small:  It's -- in this instance,
14   it's 272 works.
15              And if indeed, as was represented at the
16   hearing, they do own all of them, presumably the work was
17   already done before -- I think it was Mr. Sperling, I
18   can't recall, maybe it was Mr. Gould, said:  Oh, yes, I
19   can represent we own all of these.  He must have, someone
20   must have done the work to determine that.
21              So it should be pretty simple to tell the
22   witness:  Here's how we know that.  And so maybe it's ten
23   minutes of a deposition.  You know, okay, great.  But
24   we -- we should be entitled to test this because we have
25   legitimate concerns and suspicions.
```

WebEx/Telephonic Hearing
March 16, 2021

Page 19

```
 1              I could give you more examples, if you
 2    want, but it would -- you know, they will be akin to the
 3    ones that I listed a few moments ago.
 4              SPECIAL MASTER RODRIGUEZ:  All right.
 5    Well, listen, I mean, again, we've hooked up this issue
 6    with regard to the notices and how many notices and what
 7    the implications of both notices are and whether or not
 8    the works for which the notices were sent were owned
 9    works, et cetera.  I recognize that's an important issue.
10              We've also jumped around with regard to
11    this issue on discovery related to the dropped works and
12    discovery related to post-claim period.  But I think
13    we've been pretty clear that we're not getting into
14    discovery on dropped works and that they -- not going to
15    end up, we're not trying a case about the dropped works.
16    And so it is a slippery slope here, but that is
17    concerning to me.
18              Now, as I understand it, it's not merely a
19    representation by counsel that was made at the hearing
20    that the plaintiffs own all of the dropped works, but
21    that was also included in a request for admission.
22              Am I correct in that understanding,
23    Mr. Sperling?  So --
24              MR. SPERLING:  That's correct,
25    Ms. Rodriguez.  I think it's Mr. Gould who addressed this
```

WebEx/Telephonic Hearing
March 16, 2021

1   at the hearing on the 22nd, but you're 100 percent

2   correct, there was a request for admission asking us to

3   admit that we did not own one or more of the works, and

4   we denied that request for admission.

5              SPECIAL MASTER RODRIGUEZ:  Okay.  So said

6   the other way around, so that there is no uncertainty

7   here, it is also the case that plaintiffs would have, by

8   that answer, admitted under oath that they did, in fact,

9   own all of the dropped works.  Is that accurate?

10             MR. OPPENHEIM:  So I believe that -- just

11  to -- because I want to be -- I think we should be very

12  precise -- own or have the exclusive rights to, right?

13  But yes.  And --

14             SPECIAL MASTER RODRIGUEZ:  So please say

15  it affirmatively on the record so that, once and for all,

16  we can put a stake in this issue, Mr. Oppenheim.

17             MR. OPPENHEIM:  Oh, I don't -- so I don't

18  have the language right in front of me, but the request

19  for admission that we -- that we submitted acknowledged

20  that the plaintiffs own or have the exclusive rights to

21  the so-called dropped works.  And that's already set

22  forth and they already have it.

23             And just to give an example, the issue

24  Mr. Schapiro raised --

25             SPECIAL MASTER RODRIGUEZ:  Let's not go

WebEx/Telephonic Hearing
March 16, 2021

```
 1   down this road yet.
 2                   MR. OPPENHEIM:  Okay.
 3                   SPECIAL MASTER RODRIGUEZ:  We've got
 4   enough here.
 5                   MR. OPPENHEIM:  Okay.  Very well.
 6                   SPECIAL MASTER RODRIGUEZ:  All right.  So
 7   given that we have that admission, that is a,
 8   quote/unquote, done deal at this stage.
 9                   Generally, we don't allow additional
10   discovery on something that is -- and that is the purpose
11   of the request for admission.  I understand you're
12   saying, Mr. Schapiro, that "I would like to test that
13   theory, I would like to test that admission," but --
14                   MR. SCHAPIRO:  Well --
15                   SPECIAL MASTER RODRIGUEZ:  -- I don't have
16   enough here to --
17                   MR. SCHAPIRO:  Yes, but -- so it's not --
18   typically, the reason that was -- that a request for
19   admission normally ends things is it's an admission that
20   you normally -- maybe we should have phrased the request
21   for admission, you know, in -- done a mirror image, but
22   then it wouldn't have covered all of the works.  This,
23   quote/unquote, admission is something that's helpful to
24   them.
25                   So if you request an admission, you know,
```

WebEx/Telephonic Hearing
March 16, 2021

1   in a tort case, you know, say, you know, admit that you

2   had not checked the brakes on the car, you know, for a

3   year or something, then it's admitted and that issue is

4   done.

5            Here, they're admitting something that is

6   helpful to their case.  We want to be able to test this,

7   and I'm not sure I understand fully the qualification

8   that Mr. Oppenheim just added about:  Well, we own it or

9   we have exclusive rights.

10           We would like to be able to test and

11   understand that since they're going to be seeking

12   $150,000 for the works that are in the case.

13           And then, you know, Your Honor -- excuse

14   me, Ms. Rodriguez, you said a moment ago, "Well, this

15   isn't going to be a case about the dropped works," and

16   that's correct.  But it's a case about the notices.

17   And -- and, you know, they are going to be -- maybe they

18   will disavow now pointing to all of the notices they say

19   we've got.

20           But how -- you know, there are only a

21   limited number of ways we can show that there are

22   problems with the notices, and the fact that a bunch of

23   them may have been sent for -- with regard to works that

24   they didn't have a right to send them for, we shouldn't

25   have to just take their word for it, but we should be

WebEx/Telephonic Hearing
March 16, 2021

```
 1   able to test it.
 2                MR. OPPENHEIM:  Ms. --
 3                SPECIAL MASTER RODRIGUEZ:  I will say that
 4   this was -- I mean, this was Charter's RFA and the
 5   plaintiffs did answer it.  So if there's a different RFA
 6   that should be crafted or some other thing that you need
 7   to close the loop on this, it may be that you want to
 8   submit that RFA.
 9                But based on what we have here now, I
10   don't see that it is fruitful at this point in time or it
11   is going to lead to the information that will tie this up
12   for you in the way that I think that you're articulating
13   here.  So I'm not inclined to allow the inquiry with
14   regard to Topic Number 14.
15                Is there anything else that we need to
16   hear on that topic?
17                All right.  So let's go to Topic
18   Number 57.
19                MR. SCHAPIRO:  All right.  So Topic
20   Number 57 is other ISPs -- or the plaintiffs'
21   understanding of other ISPs' responses to receive notices
22   of alleged copyright infringement, including whether the
23   other ISPs terminated subscribers who received a certain
24   number of notices, and if so, at what number of notices.
25                As you will recall, the plaintiffs' theory
```

WebEx/Telephonic Hearing
March 16, 2021

 1   for (audio interruption)

 2              SPECIAL MASTER RODRIGUEZ:  You're cutting

 3   in and out again, Mr. Schapiro.  Sorry.

 4              MR. SCHAPIRO:  Okay.  Sorry.  Can I be

 5   heard now?

 6              SPECIAL MASTER RODRIGUEZ:  Yes.

 7              MR. SCHAPIRO:  Can you hear me better?

 8   Okay.

 9              The plaintiffs' theory in this case about

10   vicarious liability is what's known as the "draw theory,"

11   and they managed to defeat a motion to dismiss on that

12   theory by arguing, among other things, that Charter

13   advertised that it had super-fast speeds for downloads

14   and that Charter had certain features that -- and -- that

15   made it a draw to people who wanted to infringe.

16              And additionally, they argued that

17   Charter's policies with regard to notices and infringers

18   is something that was a draw and, therefore, supports

19   vicarious liability.

20              We think we will be able to show that

21   Charter's policies were not a draw in any way because

22   there was nothing different about what Charter was doing

23   from what any Internet company would do.

24              And so if your electric -- Charter was

25   essentially the same as, you know, some -- any other

WebEx/Telephonic Hearing
March 16, 2021

Page 65

1                    REPORTER'S CERTIFICATE

2

3        I, K. MICHELLE DITTMER, Registered Professional

4   Reporter and Notary Public, State of Colorado, do hereby

5   certify that the said hearing was taken in machine

6   shorthand by me at the time and place aforesaid and was

7   thereafter reduced to typewritten form; that the

8   foregoing is a true transcript of the proceedings had.  I

9   further certify that I am not employed by, related to,

10  nor counsel for any of the parties herein, nor otherwise

11  interested in the outcome of this litigation.

12            IN WITNESS WHEREOF, I have affixed my signature

13  this 21st day of March, 2021.

14            My commission expires April 15, 2024.

15

16       _____

17                K. MICHELLE DITTMER
            Registered Professional Reporter
18              Wilson & Associates, LLC

19

20

21

22

23

24

25