# Exhibit 3

1

```
1            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
     Case No. 19-cv-874-RBJ-MEH
3    _____

4    WARNER RECORDS, INC., et al.,

5        Plaintiffs,

6    vs.

7    CHARTER COMMUNICATIONS, INC.,

8        Defendant.
     _____
9

10           Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, and REGINA M. RODRIGUEZ,

13   Court-Appointed Special Master, commencing at 9:18 a.m.,

14   February 23, 2021, in the United States Courthouse, Denver,

15   Colorado.
     _____
16
17   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN
     TYPOGRAPHICALLY TRANSCRIBED. . .
18   _____

19                          APPEARANCES

20         JONATHAN M. SPERLING, JEFFREY M. GOULD, SHIRA

21   POLIAK, MATTHEW J.  OPPENHEIM, ALEX KAPLAN, STACEY GRIGSBY,

22   ANDERS LIDEROT, J. HARDER EHLERS, Attorneys at Law, appearing

23   for the Plaintiffs.
     _____
24

25       IN COURT HEARING: UNRESOLVED DISCOVERY DISPUTES
```

                                              2

1                APPEARANCES (continued)
2           ANDREW H. SCHAPIRO, LINDA J. BREWER, GRACIE CHANG,
3    JOHN ROSENTHAL, ERIN R. RANAHAN, JACK M. TANNER, ALLISON H.
4    HUEBERT, JENNIFER A. GOLINVEAUX, SEAN ANDERSON, CECIE
5    ALVAREZ, Attorneys at Law, appearing for the Defendant.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          MR. ANDERSON:  The way I've seen it in case law
2     and, obviously, Mr. Schapiro has -- sorry, Mr. Kaplan has
3     some experience, as well, is that when seeking to invalidate
4     registrations, it's, for lack of a better term, error if the
5     Court invalidates a registration without first having this
6     process be undertaken, i.e., the copyright -- the Register of
7     Copyrights weighing in.
8          However, what the Copyright -- Register of
9     Copyrights says is merely persuasive to the Court as to
10    whether or not the Court will invalidate the registrations.
11    But there does need to be that step first.
12         Judge Jackson does not need to be the one who
13    submits something, I don't believe.  I think we would.
14         MR. KAPLAN:  I don't -- I don't think that's right.
15         I mean, first of all, if you just look at the
16    language of the statute that's on the screen, it says:  The
17    Court shall request the Register of Copyrights.  So I believe
18    it is the Court that has to ask for this as part of the
19    lawsuit.  And then the Register takes this referral,
20    considers it, and then issues a written sort of almost
21    advisory opinion, which may not (inaudible) as happened in
22    the RG case.
23         THE COURT:  So when did you get the 80 percent that
24    you already have?
25         MR. ANDERSON:  If I could just -- we would write

1   the submission, obviously.  We wouldn't require the judge --

2          THE COURT:  When did you get the 80 percent you

3   already have?

4          MR. ANDERSON:  In May, June, I believe.

5          THE COURT:  And you haven't sought to do this yet,

6   with regard to 80 percent; is that correct?

7          MR. ANDERSON:  Correct.  And I'm glad Mr. Kaplan

8   brought this slide up again, or at least the one before that

9   had the two steps for invalidating the registration.  And he

10  said that the work-for-hire agreements themselves wouldn't

11  give us what we need to do.  So, exactly.

12         That's why we're here, one, trying to get the

13  work-for-hire agreements.  And then, two, we need to depose

14  plaintiffs on those agreements, the lack thereof, whether

15  there were any other agreements, and whether they knew that

16  when registering this work as one made for hire that, in

17  fact, the agreement that they had on file did not have such

18  provision.

19         That goes to the knowledge or the intent purpose.

20  So that's why --

21         THE COURT:  I'm not going to view this law or the

22  actual invalidation as a basis for ordering anything here,

23  because you haven't done it in the Bright House case, you

24  haven't done it in this case.  You've had the information for

25  nine months to do it, and I just don't believe you're going

145

1  to.

2           So if there is another foundation for how this
3  might be used in our case, give it to me now, because I don't
4  believe that you can possibly engage in that process in time
5  enough for it to matter here.  And I don't think Judge
6  Jackson would participate to the extent any court involvement
7  is required, because he has already made express statements
8  about this is not going to be tried on a work-by-work basis.

9           MR. ANDERSON:  Certainly, Your Honor.  So we need
10 deposition testimony with the agreements in order to
11 establish what is required to meet the statutory requirements
12 here.

13          THE COURT:  But you already have a lot of
14 agreements.  Have you sought that deposition testimony
15 already?

16          MR. ANDERSON:  We have.  And plaintiffs are
17 objecting to it, which is not teed up for today, and we've
18 had a process with the Special Master to address 30(b)(6)
19 topics.  But we haven't taken yet a plaintiff's deposition
20 yet on this issue, and we had a four-hour, three-hour meet
21 and confer last week on this.  That is happening presently.

22          And to your second point, with respect -- with
23 respect to the timing of this, the invalidation of
24 registrations could be resolved prior to trial.  All this is
25 relevant to in terms of trial preparation is how many

146

1   works-in-suit there are, how many awards of statutory damages
2   would plaintiffs be able to obtain if they established
3   liability.
4           And third, with respect to Judge Jackson's notion
5   of not -- not wanting to try this on a work-by-work basis,
6   the jury would never catch wind of this invalidation process
7   because it would be resolved prior to trial.
8           But to your other -- your first point, which is the
9   two bases for relevance, one is this:  The invalidation
10  process.  The other the jury would hear about.  And that is
11  related to essentially plaintiffs' acts of generally
12  registering works as works made for hire without -- without a
13  valid basis to do so, but that -- that is --
14          THE COURT:  So what you're saying is -- let's say
15  we require the additional 20 percent to be produced, you get
16  your deposition.  You are representing to the Court that you
17  are going to engage in an effort under that statute to
18  invalidate it?  You are going to do that in the next three or
19  four months, because that's all the time you have.
20          If you go into trial in October, I mean, that's --
21  that's only seven months away right now.  And discovery ends
22  way before you go into trial and dispositive motions need to
23  be briefed to give the month -- Court several months to
24  decide, because no district judge decides a motion for
25  summary judgment with only weeks before trial.  They just

1  that.  But you also, as it relates to the dismissed works --

2  how many were there?

3             MS. BREWER:  I believe it's 455.

4             SPECIAL MASTER:  Okay.  So you have the evidence

5  that those works were dismissed.

6             MS. BREWER:  We know -- we have the fact that they

7  were dismissed.  What we believe we're entitled to is the

8  discovery of whether there were ownership issues with respect

9  to those dropped works.

10            It's -- it's similar to what we were arguing with

11  respect to the Hash Report because those are other potential

12  defects with the notices; but one potential defect is that

13  they didn't own the works in the first place.  And these are

14  works that at one point in time they asserted against us in

15  this litigation.

16            SPECIAL MASTER:  Well -- yeah, I'll let you go

17  ahead, Judge.

18            THE COURT:  Maybe you go ahead.

19            SPECIAL MASTER:  The only thing I would say there

20  is the distinction is that the plaintiffs were relying on a

21  work product privilege as it relates to the hash tag report,

22  and to me and to Judge Hegarty that appeared dubious, at

23  best, and even if there were, it seemed that you had met the

24  standard for obtaining that information, despite the work

25  product protection.

174

1          This is a different issue because you're talking
2    about works that were dismissed clearly within the
3    litigation, and those decisions were clearly made by counsel.
4          So it appears to me that you're attempting to get
5    to exactly the kind of work product and potentially
6    privileged matters that would be protected.  Further, that
7    that need is lessened in this case because you have the fact
8    that those were withdrawn, and you can make whatever hay you
9    would like and whatever hay Judge Jackson will allow you to
10   make before the jury about those having been withdrawn or
11   dismissed.
12          MS. BREWER:  Can I -- can I clarify --
13          SPECIAL MASTER:  Yes.
14          MS. BREWER:  -- and address that?
15          So absolutely -- absolutely, the concern that you
16   just identified is valid, but that's not what we're seeking
17   here.  So we're not seeking privileged communications, or
18   what decisions were made by counsel with respect to dropping
19   those works.  We don't intend to make that argument.
20          What we're looking for are the factual underlying
21   chain of title ownership documents related to those works,
22   because we believe that they likely have some works that were
23   dropped because there were ownership issues or they didn't
24   own the works in the first place.  And that's what we're
25   looking for.

1         Absolutely not counsel's decisions.  If a work was
2    dropped that they owned, we get the ownership documentation,
3    we see that they owned it and it was dropped, nobody at this
4    table or within these teams is going to stand up at trial and
5    say, Well, Counsel made some decision about that.  That's not
6    the argument.
7         What we're looking for is just the underlying
8    factual information, the documentation related to the
9    ownership of the works.
10        THE COURT:  But if I was the trial judge in this
11   case, I would not let you have a trial about
12   works-not-at-issue.  I mean, I kind of under- -- I mean, I
13   know why you want it, but it's not a good reason relating to
14   what's actually going to be tried in this case.
15        You have other grounds for -- we've given you
16   foundation for going after works-at-issue and whether it is
17   proper title to those and whether there is standing even to
18   assert the claims.  But now you're going to say, Members of
19   the Jury, they originally sued on this many, but then they
20   dismissed some.
21        I mean, most judges I know are not going to let you
22   talk about claims that are dismissed because it's under -- at
23   least under 403 where their relevance is vastly outweighed by
24   the prejudicial effect of planting in the jury's mind that
25   somebody didn't do a very good job and you oversued and now

1  you cut back a little bit.

2         I mean, we're encouraging parties all the time
3  under Rule 1 to only try those matters that are absolutely
4  necessary and be looking at all types to pare down your case
5  and not overplead.

6         And I'm going to penalize somebody for, in fact,
7  taking my advice?  That's kind of counterproductive in my
8  mind.

9         MS. BREWER:  I fully embrace what you're saying,
10 Your Honor, especially as a former law clerk in federal
11 court.  If a party narrows the case, that should be embraced.

12        The issue here is that they don't plan to go there.
13 They, instead, plan to stand up and say, A notice sent to
14 Charter is evidence of infringement, and Charter received
15 700,000 notices.  That's the issue.  If they were just going
16 to talk to the jury about the notices associated purely with
17 the works-in-suit, excluding the dropped works or any other
18 works, that, we would embrace; but we're, unfortunately, not
19 in that position going into this trial.

20        They conceded today they fully plan to go there.
21 We know that for a fact because they did that in Cox.  And I
22 know that because we were just served with a request for
23 admission in late January asking us to admit that Charter
24 received 700,000 notices.

25        We're a group of pretty experienced trial lawyers

```
 1    and when you see an RFA like that served on your client, you

 2    know the purpose of that is it's going on an opening slide.

 3    It's going in opening; it's going in closing.  That jury is

 4    going to hear over and over again that Charter received

 5    700,000 notices.  That's the issue.

 6              MS. GOLVINEAUX:  Your Honors, the only thing I

 7    would add to Ms. Brewer's presentation is that these two

 8    requests are very narrowly tailored.  These are documents

 9    sufficient to show that you actually owned the work when you

10    sent a notice on it.  And these works can relate to

11    potentially tens of thousands of notices that they're going

12    to argue in this case.  So they're very tailored.

13              SPECIAL MASTER:  Well, I hear that as different

14    than what I thought we were talking about.  You were talking

15    about just the works that were dropped.  Now you're talking

16    about whether or not you owned it when the notice was sent.

17              And we have provided you with the opportunity to

18    get the evidence as to whether or not the plaintiff owned

19    the -- owned the work at the time that the notice was sent.

20    That was, one, the intention behind providing the Hash

21    Report; two, it seems to me that we've talked about this

22    several times before and requiring plaintiffs to produce

23    evidence related to their ownership.

24              Am I wrong about that?

25              MS. BREWER:  I don't ever want to say you're wrong.
```

1           SPECIAL MASTER: Well, sometimes I am, so.
2           MS. BREWER: I will say -- I will say my
3   understanding, and I invite my colleagues to correct me if
4   I'm wrong, but I don't think that the Hash Report, which
5   again, we have not seen, but that's -- that is going to
6   potentially show other defects related to the notice, the
7   inability, for example, for MarkMonitor to validate the
8   process that it purportedly engaged in during the claim
9   period, which again, we don't have.
10          This goes to whether or not the work wasn't owned
11  at the time that the notice was sent. It's a different
12  defect. And again, if somebody could represent today in
13  Court that they're not going to talk about 700,000 notices --
14          THE COURT: Well, I think if I could get a
15  stipulation with the plaintiffs that, even if you do talk
16  about 700,000, you will enter a fact stipulation that can be
17  presented to the jury that you are: Number one, not suing on
18  all those 700,000 before this jury. And number two, that
19  there may have even been works among the 700,000 which could
20  inform the basis of a lawsuit, or something to that effect.
21          Would you guys be willing to enter into that kind
22  of fact stipulation?
23          MR. GOULD: It's, number one, that there are
24  notices for works that are not in suit. And number two was
25  what?

PATTERSON TRANSCRIPTION COMPANY
scheduling@pattersontranscription.com

179

 1          THE COURT:  That, in fact, of the 700,000, not only
 2  are you not suing on all of them before this jury, but you
 3  also -- but you also recognize that it is factually correct
 4  that not all 700,000 could have been -- could have -- or
 5  somehow have been a judicial claim because there were
 6  defects.
 7          MR. SCHAPIRO:  Or how about that they didn't --
 8  some of them were for works that they didn't actually own?
 9          THE COURT:  Better still.  But if that's the point,
10  I would be -- I think I would be happy with the fact
11  stipulation and that's enough.
12          MR. GOULD:  Your Honor, there is -- there is an RFA
13  that we've already answered:  Admit that you didn't own the
14  dropped works.  We denied it.  It's like -- you know, we've
15  ruled on these issues.
16          THE COURT:  Admit that you are -- articulate that
17  again.
18          MR. GOULD:  Admit that you didn't own the dropped
19  works, and we denied it.  You ruled on this issue.  Your
20  ruling was right the first time.  The skepticism here is
21  warranted.  It's a goose chase, based on speculation.
22          The Bright House court denied this exact same --
23          THE COURT:  Yeah, but we're not going to --
24          MR. GOULD:  -- (inaudible) even when --
25          THE COURT:  We're not going to --

1          MR. GOULD:  Even when --
2          THE COURT:  Let me ask you a question, though.
3          You denied that you didn't own -- that you denied
4    that you didn't own the dropped works.
5          MR. GOULD:  Yes.
6          THE COURT:  On the flip side of that coin, are you
7    affirmatively representing to us that of all 400 dropped
8    works, it's your good faith belief, after a reasonable
9    investigation, that your clients did own those?
10         MR. GOULD:  Yes.
11         THE COURT:  Okay.
12         MS. BREWER:  Okay.  I think I'm on deck for the
13   next one as well, so I'll just take a moment to turn the
14   page.
15         SPECIAL MASTER:  And just to clarify, Ms. Brewer,
16   you were right, that I was incorrect about that, so I had
17   conflated those two.
18         So I do stand corrected on that.  So thank you.
19         MS. BREWER:  Thank you, I appreciate that.
20         Okay.  The next two are RFPs 99 and 100, and I
21   apologize I don't have the page, though.  I do.  It's page 20
22   of our chart.
23         I would hope that these two requests don't warrant
24   much discussion at all and I view these as noncontroversial.
25         We issued two requests that were asking for the

256

1        TRANSCRIBER'S CERTIFICATION

2   I certify that the foregoing is a correct transcript to the

3   best of my ability to hear and understand the audio recording

4   and based on the quality of the audio recording from the

5   above-entitled matter.

6

7   /s/ Dyann Labo                    March 1, 2021

8   Signature of Transcriber          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25