# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> *Defendant*. | Case No. 19-cv-00874-RBJ-MEH |

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S MARCH 16, 2021 ORDER

This Court should reject Plaintiffs' request to overturn the Special Master's March 16, 2021 Order compelling Plaintiffs to designate a witness regarding Plaintiffs' understanding of other ISPs' responses to notices of alleged copyright infringement ("Objection").  *See* Dkt. 425.

As a threshold matter, the Objection should be overruled as untimely and improper, as Plaintiffs filed it well past the five-day deadline.  Even if Plaintiffs' filing had been timely, the Objection should be rejected because the Special Master's decision to allow Charter to pursue deposition testimony that is "directly relevant to the defendant's claims and defenses in this case" did not constitute an abuse of discretion.  Pls.' Ex. 3, Mar. 16, 2021 Hr'g Tr. 31:7-13.  Plaintiffs' understanding of other ISPs' responses is directly relevant to Plaintiffs' vicarious infringement claim that subscribers were "drawn" to Charter's network.  It is also relevant to Charter's defenses to Plaintiffs' contributory infringement claims—the jury should be able to understand whether Plaintiffs were aware that other ISPs acted similarly to Charter (or even did less) when assessing whether Chart materially contributed to the alleged infringement.

## BACKGROUND

Charter served its 30(b)(6) deposition notices on the Record Label Plaintiffs on December 30, 2020 with requested deposition dates in January 2021.  Charter repeatedly followed up with the Record Label Plaintiffs for a response and ultimately had to seek assistance from the Special Master to set a timeline for Plaintiffs' responses to Charter's notices.  *See* Jan. 22, 2021 Hr'g Tr. 87:22-25.  Pursuant to the Special Master's guidance, the Record Label Plaintiffs provided their objections and responses on February 5, but did not identify any designated witnesses.  *See* Ex. A, Feb. 5, 2021 S. Dennis Email.  Charter again had to seek assistance from the Special Master to set a deadline for Plaintiffs to identify witnesses.  *See* Mar. 16, 2021 Hr'g Tr. 57:12-14.  On March 19, 2021, Plaintiffs identified most witnesses but did not identify designated topics for each witness.[1]  *See* Ex. B, Mar. 19, 2021 A. Kaplan Email.  Again, Charter had to correspond with the Special Master in order to get Plaintiffs to commit to a date for identifying topics for each designated witnesses.  *See* Ex. C, Mar. 23, 2021 K. Akopjan Email.  Finally, nearly three months after Charter first served its 30(b)(6) deposition notices, on March 24, 2021, Plaintiffs identified the witnesses and the topics for which the witnesses would be designated on for the Record Label Plaintiff's 30(b)(6) depositions.[2]  *See* Ex. D, Mar. 24, 2021 A. Kaplan Email.

Charter intended to move forward with scheduling these depositions and had preemptively asked the Special Master for her assistance with negotiating a deposition schedule, including how

---

[1]   In violation of the deadline set by the Special Master, Plaintiffs failed to identify all witnesses by this date.  On March 24, 2021, Plaintiffs identified an additional witness for the Sony Music Plaintiff Group, Neil Carfora.  Charter's request for an explanation as to why this witness was not disclosed by the Court-mandated deadline have gone unanswered.  *See* Ex. E, Apr. 1, 2021 K. Akopjan Email.

[2]   This list of topics, however, was not exhaustive.  Plaintiffs failed to designate a witness for the Universal Music Group Plaintiffs for Topics 23 and 24, forcing Charter to follow-up again.  *See* Ex. F, Mar. 29, 2021 G. Chang Email.

to move forward with the scheduling despite pending objections.  *See* Ex. C.  Instead of offering

dates for depositions, however, Plaintiffs filed their objection to the Special Master's March 16,

2021 Order, ***13 days*** after the order had issued, in violation of the March 11, 2020 Order issued by

this Court.  *See* Dkt. 143, Order Appointing Special Master ¶ 5 (Mar. 11, 2020).  Plaintiffs should

not be allowed to shirk deadlines and delay this case further, and Plaintiffs' Objection should be

denied as untimely.

## LEGAL STANDARD

An order from the Special Master on non-dispositive motions will be set aside "only"  if

"it constitutes an abuse of discretion."  *Id.* at ¶ 6.  To satisfy the "abuse of discretion" standard, an

order must be based on "arbitrary, capricious, whimsical, or manifestly unreasonable judgment."

*Baldwin v. United States*, 2012 WL 7051296, at *3 (D. Colo. Sept. 17, 2012) (quoting *Mid-*

*Continent Cas. Co. v. Village At Deer Creek*, 685 F.3d 977, 981 (10th Cir. 2012)); *see also Lee v.*

*State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671 (D. Colo. 2008) (overruling objections and

holding that an abuse of discretion involves the special master "fail[ing] to articulate a reason for

[her] decision" or "articulat[ing] a reason which has no basis in fact or the reason so articulated is

contrary to law") (citation omitted).

## ARGUMENT

## I.    PLAINTIFFS' OBJECTION IS UNTIMELY AND IMPROPER

### A.    Plaintiffs' Objection Should Be Denied Because It Was Filed Thirteen Days After The Special Master Issued Her Order

Plaintiffs filed their Objection ***13 days*** after the Special Master issued her Order, in

violation of the Court's deadlines outlined in its March 11, 2020 Order.  *See* Dkt. 143, ¶ 5.  The

March 11, 2020 Order allows a party to file an objection to the Special Master's order "***no later***

*than* five (5) business days from the time that order, report, or recommendation is served." *Id.* (emphasis added). At the March 16, 2021 hearing, the Special Master's Order was made orally, on the record. *See* Mar. 16, 2021 Hr'g Tr. 5:5-7 (affirmatively going on the record). Both Plaintiffs and Charter were aware of the full scope of the Special Master's rulings on that day. Plaintiffs thus had until March 23, 2021 to file their Objection. In accordance with that deadline, Charter filed its own objection on March 23, 2021, with a hearing date later set for April 1, 2021. *See* Dkt. 421; Dkt. 423. Plaintiffs not only failed to meet the deadline, but also waited an additional week, after the Court had already set a hearing date for Charter's Objection, to file their own ill-timed Objection on Monday, March 29, 2021. *See* Dkt. 424. The Objection was filed eight business days after the Special Master's order.

Until now, both parties have faithfully adhered to the five business day deadline, including when the Special Master's order was issued orally and on the record. *See, e.g.,* Dkt. 233, Plfs.' Partial Obj. to Special Master's Aug. 12, 2020 Order (filed five business days after Special Master Order issued).[3] Despite their prior practices, Plaintiffs now argue that receipt of the hearing transcript is what actually triggers the time to object. *See* Ex. G, Mar. 30, 2021 H. Ehlers Email; *see also* Mar. 18, 2021 Hr'g Tr. 108:17-22. That position is untenable.[4]

---

[3] For example, at the January 22, 2021 Hearing, the Special Master denied the discovery requests propounded by Plaintiffs by entering an oral order. *See* Jan. 22, 2021 Hr'g Tr. 74: 3-6 ("So for the reasons articulated by Ms. Brewer, I am not going to order this discovery, and I believe that issue has been fairly and decisively ruled upon by Judge Jackson."). Accordingly, Plaintiffs filed their objection to that order five business days after the hearing, on January 29, 2021. *See* Dkt. 346, Plfs.' Obj. to Special Master's Jan. 22, 2021 Order Denying Discovery Into Charter's Deterrence Defense.

[4] *See, e.g.*, *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 2015 WL 13706670, at *1 (S.D.N.Y. Nov. 30, 2015) (in seeking reconsideration of oral order, "any motion for reconsideration was due on or before October 12, 2015 *regardless of the date on which Versatile ordered or received a transcript* of the oral decision." (emphasis added)).

Even under this new timeline, however, Plaintiffs' Objection is untimely.  The hearing transcript was completed and available to the parties on March 21.  *See* Pls.' Ex. 3, at 65 (Reporter's Certificate dated March 21, 2021).  By Plaintiffs' own standard, their Objection was due on March 26, 2021, and is untimely.  Plaintiffs have offered no other explanation for their delay, nor can they.

The result of Plaintiffs' late-filed Objection is further delay to the discovery of this case, putting off the depositions of their designees.  Such conduct and tactics should be summarily denied.  *See*, *e.g.*, *E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.,* 2013 WL 752912, at *4 (D. Colo. Feb. 27, 2013) (Hegarty, J.) (prohibiting conduct that "negatively affect[s] the Court's management of its docket and [causes] unnecessary burdens on the opposing party and delays").

### B.    Plaintiffs' Objection Is Waived As To The Music Publisher Plaintiffs

Plaintiffs' Objection should also be denied as improper with respect to the Music Publisher Plaintiffs.  Plaintiffs have stated that they intend to apply the Court's ruling with respect to the Record Label Plaintiffs' 30(b)(6) deposition Topic 57[5] to the Music Publisher Plaintiffs 30(b)(6) deposition Topic 59[6], even though the Music Publisher Plaintiffs' deposition topics have already been negotiated by the parties and settled by the Special Master over two months ago.  *See* Ex. H, Mar. 24, 2021 A. Kaplan Email.  This is improper.

As background, the Warner and Sony Music Publishing Plaintiff Groups served their objections and responses to Charter's 30(b)(6) Notice on January 29, 2021.  Thereafter, pursuant

---

[5]  Topic 57 seeks testimony on: "Your understanding of other ISPs responses to receiving notices of alleged copyright infringement, including whether those other ISPs terminated subscribers who received a certain number of notices and, if so, at what number of notices."

[6]  Topic 59 for the Music Publisher Plaintiffs seeks testimony on the subject as Topic 57 for the Record Label Plaintiffs.

to the parties' agreement to memorialize negotiations between the parties and the Special Master's rulings, Plaintiffs served supplemental objections and responses on March 8, 2021.  In disregard of the parties' agreement, however, Plaintiffs *amended* their response to Topic 59 to a complete refusal to designate a witness on the Topic.  In their original response, Plaintiffs had agreed to prepare a witness on the entirety of Topic 59.  Plaintiffs had never raised this issue over the course of negotiations of 30(b)(6) deposition topics for the Music Publisher Plaintiffs and represented to Charter that there was nothing further to confer about in regards to the Sony and Warner Music Publishing Plaintiffs.  *See* Ex I, Feb. 2, 2021 H. Ehlers Email.  Plaintiffs now seek to avoid testimony on this Topic 59 by utilizing the Record Label Plaintiffs' briefing, months after they confirmed the conferral process was complete and after ample opportunity to raise the issue with Charter and before the Special Master.

Because Plaintiffs did not raise Topic 59 with respect to the Warner and Sony Music Publisher Plaintiffs, their Objection to the Special Master's ruling should be denied as improper. Plaintiffs further represented that they would "abide by [the Special Master's] ruling with respect to the remaining music publisher plaintiffs" and should be made to hold firm to that representation. *See* Ex. H.

## II.     IT WAS NOT AN ABUSE OF DISCRETION FOR THE SPECIAL MASTER TO PERMIT DISCOVERY INTO PLAINTIFFS' UNDERSTANDING OF OTHER ISPS' RESPONSES

### A.     The Special Master's Ruling That Plaintiffs' Understanding Of Other ISPs' Procedures Is Relevant Was Not Reversible Error

The Special Master did not abuse her discretion in ordering testimony on Topic 57, which relates to Plaintiffs' understanding of other ISPs' responses to infringement notices.  This information is relevant to Plaintiffs' claims and Charter's defenses against both the vicarious and

contributory infringement claims.  Specifically, Plaintiffs' claims that subscribers were "drawn" to Charter's network by Charter's "blazing-fast" Internet speeds necessarily poses a comparative question regarding Charter's competitors.  Additionally, Plaintiffs' ***understanding*** of other ISPs' responses is the basis for one of Charter's contributory liability defenses.

      1.    <u>The Special Master's Ruling that Other ISPs' Responses Are Relevant Is Not Contrary to the Law</u>

Plaintiffs argue that the Special Master's ruling that other ISPs' responses are relevant is "contrary to the law" and an abuse of discretion.  *See* Pls.' Obj. 4.  That is wrong.  Other ISPs' responses are plainly relevant to the question of whether specific features of Charter's services drew infringing subscribers to Charter's network.  Indeed, Plaintiffs acknowledge that they intend to prove that Charter had "blazing fast speeds that allow users to download up to eight songs in three seconds" and that Charter's alleged failure to take action against repeat infringers is what "motivated" people to subscribe to Charter.  *See* Dkt. 50, Plfs.' Opp'n to Def.'s Mot. to Dismiss Plfs.' Claim for Vicarious Liability at 2, 12; Dkt. 123, First Am. Compl. ¶ 85.  As the Special Master recognized, such an argument inherently involves a comparison to other ISPs.  *See* Pls.' Ex. 3 at 31:7-19 ("[W]hat Charter is probing here is exactly this question of … the draw to using [Charter's services], and so it seems to me that that is … ***directly relevant*** to the defendant's claims and defenses in this case." (emphasis added)).  For a feature, such as Charter's Internet speeds, to be a "draw" it has to be a distinguishing feature as compared to the existing marketplace of other ISPs.

Plaintiffs' insistence that this information is irrelevant because ***they*** do not intend to or need to make reference to other ISPs does not support a reversal of the Special Master's order.  *See* Pls.' Obj. 5.  Among other things, regardless of how ***Plaintiffs*** intend to prove that the ability

to infringe supposedly drew infringers to Charter's network, Charter is entitled to rebut any such proof—including by showing that the factors that supposedly drew would-be infringers to Charter's network were as or more true of other networks to which those infringers may have had access. Indeed, Plaintiffs' novel theory that Defendants cannot even inquire into other ISPs' policies flies flatly in the face of the flexible evidentiary approach courts take to analyzing whether a purported vicarious infringer financially benefits from the infringement.[7]

Plaintiffs' purported authority similarly does not support a reversal of the Special Master's ruling. While Plaintiffs rely heavily on *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996), *see* Pls.' Obj. 4, that case involved a motion to dismiss vicarious copyright infringement claims, and so had no occasion to address discoverability. Specifically, *Fonavisa* held that the plaintiffs "stated a claim for vicarious infringement" but did not address the kinds of evidence needed to make an ultimate finding of liability, let alone evidence that may be probative to the defense against those claims. 76 F. 3d at 263-264. Thus, *Fonovisa* did not have the opportunity to address any "comparison to others in the market," Pls.' Obj. 4, because at the pleading stage the allegations in the complaint, accepted as true, were sufficient to state a *prima facie* claim. Discovery, however, presents a far different inquiry, where a party is entitled to seek information that bears on its defense to a claim. *Cf.* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery

---

[7]   For instance, in *Erickson Prods., Inc. v. Kast*, the Ninth Circuit analyzed whether the Plaintiff had presented enough evidence that a business owner directly financially benefitted from the infringement, and was thus liable for vicarious infringement. 921 F.3d 822, 831 (9th Cir. 2019). Plaintiff argued that the infringing photographs ***drew*** customers to purchase the defendant's services. *Id.* (emphasis added). Notably, the Ninth Circuit did not outright reject this theory, but rather, held that because no evidence existed that the business owner was able to draw customers ***because*** of the alleged infringement, the jury's vicarious liability verdict should have been vacated. *Id.* In other words, rather than adopt a rule that certain kinds of financial benefit are per se sufficient for proving "draw" to consumers, the court took a flexible approach based on what the evidence ultimately proved. *Id.*

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]").  Plaintiffs identify no support for their contention that Charter is barred from seeking discovery from Plaintiffs regarding comparisons to other competitors to show that Charter was not a "draw" for the purposes of vicarious infringement.  *Cf. In re Aimster Copyright Litig.*, 334 F.3d 643, 654 (7th Cir. 2003) (applying similar economic analysis of competitive effects to the paradigmatic case where a dancehall proprietor becomes vicariously liable for a band's infringement, because competition may allow it to pay the infringing band less).

Plaintiffs fare no better in terms of the authorities cited in support of the proposition that "industry standards" or "custom" is not relevant.  *See* Pls.' Obj. 5 (collecting cases).  ***None*** of the cases cited by Plaintiffs even address vicarious liability, so are irrelevant to the issue presented here.  Moreover, Charter's defense is not premised on "industry standards,"[8] but rather it seeks to challenge, as a factual matter, Plaintiffs' contention that alleged infringers were actually drawn to Charter's network based on certain features that were as or more present at other ISPs' networks to which those alleged infringers had access.  If other ISPs offered the same or similar features complained of here, as a factual matter a jury may use this information to infer that these features were not responsible for "drawing" infringers to Charter.  Charter is entitled to develop that factual record in discovery.

---

[8]   For example, *Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc.* held that a direct infringer cannot rely upon "industry practice" to justify its unauthorized copying.  307 F.3d 197, 211 (3d Cir. 2002); *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 348 (S.D.N.Y. 2009) (holding that "custom and practice" claims could not be a viable defense to breach of contract); *Famous Music Corp. v. Seeco Records, Inc.*, 201 F. Supp. 560, 566 (S.D.N.Y. 1961) (defense of "custom and usage" could not be used in defense of vicarious infringement).  Moreover, to the extent Plaintiffs suggest that there is some general prohibition on considering industry norms in the context of the DMCA, that is plainly wrong, as the statute itself calls for such consideration in several places.  *See, e.g.,* 17 U.S.C. § 512(a)(2)(B) (referring to "generally accepted industry standard[s]"); *id.* § 512(i)(2)(A) (similar).

2. The Special Master's Ruling That Plaintiffs' Understanding of Other ISPs' Procedures Are Relevant Was Not Reversible Error.

Plaintiffs' **_understanding_** of other ISPs' responses to infringement notices is directly relevant to Charter's defenses against contributory liability. To establish contributory copyright infringement, Plaintiffs must prove that Charter intentionally induced or encouraged direct infringement "by clear expression or other affirmative steps taken to foster infringement." _Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd._ 545 U.S. 913, 919 (2005). Here, Plaintiffs allege that Charter's failure to terminate customers who received multiple notices is the primary evidence that Charter encouraged infringement. Dkt. 123, First Am. Compl. ¶¶ 101, 115 ("The specific infringing subscribers identified in Plaintiffs' notices, including the egregious infringers identified herein, knew Charter would not terminate their accounts despite receiving multiple notices identifying them as infringers, and they remained Charter subscribers to continue illegally downloading copyrighted works."). Evidence that Plaintiffs were aware of and endorsed other ISPs' similar policies of not terminating based on mere allegations of infringement contained in notices would undermine their contention that Charter's policies were intended to encourage infringement. To the contrary, this evidence supports Charter's defense that its policies and practices aligned with its competitors, which, in turn, was expressly endorsed by Plaintiffs.

Plaintiffs cannot avoid discovery on this Topic by insisting that Charter seek subpoenas directly from other ISPs. _See_ Pls.' Obj. 8. Plaintiffs collectively represent 80% of the recorded music industry and drove global copyright enforcement and policy. Plaintiffs are thus uniquely situated to have information related to how ISPs were responding to their and other rightsholders' notices. Further, if Plaintiffs knew of and endorsed other ISPs' responses that were similar to Charter's, then that endorsement is probative evidence that Charter cannot have engaged in the

kind of "purposeful, culpable expression and conduct" alleged by Plaintiffs.  *See Grokster* at 937.  Accordingly, the Special Master did not abuse her discretion by rejecting Plaintiffs' request that Charter seek this information from non-parties.

Plaintiffs' argument that their understanding other ISPs' responses is privileged or public information can also be easily dismissed.  *See* Pls.' Obj. 7-8.  First, how other ISPs responded to notices of infringement is comprised of facts, and there is no privileged or protectable relationship between Plaintiffs and other ISPs.  Second, as both parties are aware, the Special Master has made clear that the traditional rules regarding privilege still apply to her orders and that a party may object during the deposition to any line of questioning on privilege grounds.  *See, e.g.* Feb. 12, 2021 Hr'g Tr. 22:9-12 (Special Master noting that her Order with respect to a 30(b)(6) deposition topic "certainly would not include privileged or work product information").

Furthermore, the fact that some of this information may be publicly available does not serve as a basis to foreclose discovery or find an abuse of discretion.  Indeed, Plaintiffs do not and cannot offer any support for such argument.  Accordingly, Plaintiffs' arguments do not rise to the abuse of discretion level needed to reverse the Special Master's Order.

B.    **The March 16, 2021 Order Is Consistent With The Special Master's Previous Orders**

Plaintiffs' baseless assertion that the Special Master's March 16 Order is inconsistent with prior orders is not a basis to reverse the March 16 Order, but instead, a misguided effort to re-litigate a completely unrelated ruling made over a month ago.  This litigation tactic should be rejected.

The Special Master's Orders with respect to ***Plaintiffs'*** 30(b)(6) deposition Topics 11 and 69 to Charter are not inconsistent with the Special Master March 16 Order regarding ***Charter's***

30(b)(6) deposition Topic 57 to the Record Label Plaintiffs.  First, the topics seek wholly different testimony.  As set forth in the table below, Topic 57, at issue here, addresses Plaintiffs' understanding of other ISPs' responses, while Topics 11 and 69 sought testimony on Charter's communication with Cox employees and Charter's litigation knowledge.

| |
|---|
| **Topic 57 to the Record Label Plaintiffs:**  Your understanding of other ISPs responses to receiving notices of alleged copyright infringement, including whether those other ISPs terminated subscribers who received a certain number of notices and, if so, at what number of notices. |
| **Topic 11 to Charter:**  Charter's licensing of software for "abuse tracking" from Cox Communications, Inc., as reflected in CHA_00001119, including the cost thereof, the Cox employees with whom Charter communicates regarding Charter's ongoing maintenance and operation of CATS, and the manner of such communication or coordination with Cox. |
| **Topic 69 to Charter:**  Charter's knowledge of litigation against other ISPs concerning similar claims asserted by Plaintiffs in this case, including *BMG Rights Management (US) LLC v. Cox Communications, Inc.,* No. 1:14-cv-1611 (E.D. Va.; filed November 26, 2014). |

Plaintiffs are attempting to compare apples and oranges in an effort to re-litigate Topics for which the Special Master ruled on and the time for objections has long passed.

Second, Plaintiffs ignore the material difference between ***Charter's*** 30(b)(6) deposition Topic 57 (the topic at issue here), and ***Plaintiffs'*** 30(b)(6) deposition Topics 11 and 69.  That is, Plaintiffs' 30(b)(6) deposition Topics 11 and 69 are ***not relevant*** to any of Plaintiffs' claims and defenses.  Topic 69 sought testimony of "Charter's knowledge of ***litigation*** against other ISPs." Plaintiffs, however, do not advance any argument that Charter's knowledge of ISP litigation including *BMG Rights Management (US) LLC v. Cox Communications, Inc.,* No. 1:14-cv-1611 (E.D. Va.; filed November 26, 2014) is relevant to any of their claims at issue.  *See* Pls.' Obj. 9. Nor can they.  The Special Master has held on three separate occasions that such knowledge had

no relevance to the claims at issue.[9]  Despite Plaintiffs' attempts to draw similarities between the Topics, Topic 69 has no relevance to any of Plaintiffs' claims, and Plaintiffs' fourth backdoor attempt to litigate this issue without any new argument related to relevance should be rejected.

As to Topic 11, the Special Master ordered testimony into the portion of Plaintiffs' Topic that was relevant to Plaintiffs' claims.  Specifically, the Special Master allowed testimony into Charter's "licensing of software for abuse tracking from Cox Communications" including "communication between Cox and Charter that directly relates to the handling of DMCA complaints and any change during the relevant claim period of Cox's policies and procedures for the handling of those DMCA complaints."  *See* Feb. 16, 2021 Hr'g Tr. 84:12-20.  What the Special Master did not order testimony into, and what Plaintiffs take issue with, was an undefined fishing expedition into ***all*** of Charter communications with Cox employees.  Plaintiffs cannot make the argument that the entire universe of communications for which they seek testimony is relevant; instead what they seek to manufacture is a connection to an employee that they so frequently pointed to in the *Sony Music Entertainment v. Cox Communications, Inc.* case.[10]

The Special Master's Orders with respect to Plaintiffs' 30(b)(6) notices directed to Charter were properly denied because they had no relevance to Plaintiffs claims.  Plaintiffs advance no

---

[9]   In December 2020, the Special Master held that such knowledge was not relevant to any of Plaintiff's claims, contrary to Plaintiffs' argument that the *BMG v. Cox* case should have put Charter on notice of its legal obligations.   Dec. 21, 2020 Hr'g Tr. 8:6-25.   The Special Master held that Plaintiffs' argument "require[d] Charter to have instituted a legal hold based upon a case that was against another defendant at a different point in time" was "difficult to see." *Id.* at 8:13-19.   Plaintiffs again attempted to re-litigate the issue at the January 22, 2021 Hearing, which the Special Master denied due to its "dubious" relevance and overbroad nature.   Jan. 22, 2021 Hr'g Tr. 54:19-24.   Plaintiffs for the third time tried to litigate the issue with regards to the 30(b)(6) deposition topics, which the Special Master denied as having "marginal" relevance with a high burden.  *See* Feb. 16, 2021 Hr'g Tr. 73:14-17.

[10]   *See* Pls.' Obj. at 8.

arguments regarding relevance in their Objections.  In contrast, Charter's Topic 57 to the Record Label Plaintiffs is directly relevant to Plaintiffs' claims and Charter's defenses as detailed above. The Special Master's March 16 Order is thus consistent with her prior orders, and Plaintiffs' objections should be overruled.

## **CONCLUSION**

For all of the reasons set forth above, Charter respectfully requests that Plaintiffs' Objection to the Special Master's March 16, 2021 Order be overruled.

Dated: April 5, 2021

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
Nathan A. Hamstra
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
E-mail: andrewschapiro@quinnemanuel.com
E-mail: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant*
*Charter Communications, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 5, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro