UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>*Defendant*. | Case No. 19-cv-00874-RBJ-MEH<br><br>**CHARTER COMMUNICATIONS, INC.'S MOTION TO COMPEL DISCOVERY** |

Charter Communications, Inc. ("Charter") respectfully seeks an order compelling: (1) the Recording Industry Association of America ("RIAA") to produce its communications with third party MarkMonitor concerning the 2016 RIAA/MarkMonitor Project; and (2) Oppenheim + Zebrak Law ("O+Z") to produce and log its external communications concerning the same Project.

**CERTIFICATION PURSUANT TO D.C. COLO. LCivR 7.1(a)**

Counsel for Charter certifies that, pursuant to D.C. Colo. LCivR 7.1(a), they have conferred with counsel for RIAA and Plaintiffs (both represented by O+Z) by telephone as described more fully in the text below, and that RIAA and Plaintiffs declined to consent to the requested relief.

Pursuant to the Court's April 7, 2021 order, Charter proposed the following expedited briefing schedule: Opposition brief: Friday, April 16, 2021; Reply brief: Wednesday, April 21, 2021. In response, counsel for RIAA and Plaintiffs proposed an opposition date of Friday, April 30 (*i.e.*, no expedition), with no reply briefing. The parties are therefore at an impasse. Ex. G. Charter's proposed briefing schedule is consistent with prior expedited briefing schedules urged by Plaintiffs on issues they have considered time-sensitive.

**INTRODUCTION AND BACKGROUND**

Charter brings this motion because RIAA refuses to produce its communications with third party (and fact witness) MarkMonitor concerning a project undertaken to assemble evidence that Plaintiffs intend to rely on at trial—factual information the Court already noted is not protected as attorney-client privileged or under the work product doctrine.

To hold Charter secondarily liable for copyright infringement, Plaintiffs must prove that Charter's subscribers directly infringed the works-in-suit. From 2012-2015, RIAA retained third-party MarkMonitor to scour the internet and download files allegedly owned by Plaintiffs and shared by subscribers, which RIAA identified in notices it sent to Charter. It is undisputed that RIAA and MarkMonitor *failed to retain* those downloaded files. Plaintiffs (again, through RIAA) therefore *re-hired* MarkMonitor in 2016 to try to look for and download the *same* files it initially identified. Dkt. 409 at 3. The summary results of this 2016 evidence-recreation effort (the "2016 Project") are contained in a "Hash Report," a spreadsheet that identifies the files searched and indicates whether those files were located and whether they did or did not match to a work-in-suit.[1] While RIAA produced in discovery its communications with MarkMonitor regarding its initial (lost) collection of downloaded files, RIAA refuses to produce its communications with MarkMonitor about the 2016 Project (including the re-creation of that lost evidence), under the guise of attorney-client privilege and/or work product. The Court should compel RIAA to produce these communications.

---

[1] A complete discussion of the MarkMonitor's technological processes can be found at Dkt. 267 at 2-7.

Plaintiffs have indicated that at trial they will seek to: (1) rely on the files purportedly verified by the 2016 Project to prove direct infringement; and (2) argue to the jury that the notices for the works-in-suit were the "tip of the iceberg," and will point to "millions" of notices Charter received during the Claims Period. Dkt. 409 at 3-4. Crucial to Charter's defense will be evidence that, when Plaintiffs realized they had no evidence substantiating their notices to Charter, they tried to recreate the data after the fact but were unable to locate thousands of files or reliably match them to a work they owned. Thus, this Court already found that the Hash Report itself should be produced, expressing "concerns about the loss of data," finding Plaintiffs' claim of work product to be "suspect" and "dubious," and noting Charter had shown substantial need. Ex. A at 109:11-19, 110:25-111:15. Judge Jackson affirmed that decision on April 8, 2021, ordering Plaintiffs to produce the Hash Report with limited, enumerated redactions. *See* Dkt. 436 at 8-9.

RIAA now argues its communications with MarkMonitor *about the same 2016 Project* are protected by attorney-client privilege or as work product, contending that RIAA's legal department "is effectively an outside counsel to the Labels," and that it works "with MarkMonitor as a contractor to assist counsel in providing legal advice and developing legal strategy." Ex. B at 5. RIAA is wrong—there is no attorney-client relationship between RIAA and MarkMonitor, and labeling MarkMonitor a "contractor" does not undo that MarkMonitor is a fact witness, which will offer trial testimony about the RIAA's notices. Nor are such communications protected as work product. That protection has been was waived, and in any event is overcome, because the communications reflect information for which Charter has a substantial need. Having failed to preserve contemporaneous evidence of subscribers' alleged direct infringement (which undoubtedly is discoverable), Plaintiffs, RIAA and MarkMonitor cannot now claim that

3

communications about MarkMonitor's attempts to re-manufacture evidence after the fact—including the project's implementation and results—are somehow outside the scope of discovery. RIAA cannot have it both ways, selectively producing hand-picked communications with MarkMonitor about the notices, but withholding other communications that bear on its failed efforts to recreate the evidence underlying those same notices. In Judge Jackson's words: "[P]laintiffs can't have it both ways – they can't commission MarkMonitor to do the investigatory work and expect to have MarkMonitor present its work and work product at trial without exposing all of MarkMonitor's work on this case to scrutiny." Dkt. 436 at 8.

Similarly, O+Z should be compelled to produce and log its external communications with Plaintiffs, RIAA, MarkMonitor and Audible Magic about the 2016 Project and its implementation and results. It is undisputed that O+Z possesses such communications; in fact, its founding partner declared that he "directed" the Project. Dkt. 287-1, ¶ 5. Although such materials would ordinarily be obtainable from Plaintiffs or third parties, because of their ███████████████ ███████████████, Plaintiffs, RIAA, and MarkMonitor are not sufficiently reliable sources of discovery. Charter has in good faith exhausted its attempts to secure such communications from those entities. Given the Court's acknowledgment that O+Z, Plaintiffs, and RIAA are "all the same," there is no prejudice to O+Z to produce and log external communications about the 2016 Project.

## LEGAL STANDARD

Federal common law governs the attorney-client and work product analyses here. *See Zawadzki v. Cmty. Hosp. Ass'n*, 2010 WL 3085719, at *2 (D. Colo. Aug. 6, 2010) (Hegarty, M.J.)

4

("federal common law applies to the [attorney-client] privilege issue … in nondiversity cases"); *id.* at *3 ("work product privilege is governed … by a uniform federal standard").

**Attorney-client**: "The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quotations omitted). "The burden of establishing the applicability of [the attorney-client] privilege rests on the party seeking to assert it." *Id.* at 1183 (quotations omitted). The attorney-client privilege arises:

> (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless the protection is waived.

*Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3923092, at *6 (D. Colo. Oct. 1, 2010) (Hegarty, M.J.).

**Work product**: A "litigant cannot use the work product doctrine as both a sword and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Chevron Corp.*, 2010 WL 3923092, at *10 (quotations omitted). "[W]aiver of … work product privileges can occur when the privilege holder asserts a claim or affirmative defense which puts the privileged matter directly at issue." *Id.* (quotations omitted). "The primary inquiry is whether the party claiming privilege will assert the allegedly protected material in aid or in furtherance of its claims or defenses." *Id.*

If waiver is not found, the work product protection still is not absolute. Once the Court determines that the demanded discovery is relevant and not privileged:

> the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the

> party's attorney, consultant, surety, indemnitor, insurer or agent …. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

*Thane v. GEICO Cas. Co.*, 2017 WL 3157966, at *3 (D. Colo. July 25, 2017) (Hegarty, M.J.) (quotations omitted). "The more crucial the information is to the requesting party, the more likely the documents will not be subject to the privilege." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Intrawest ULC*, 2015 WL 5047635, at *3 (D. Colo. Aug. 27, 2015). The work product doctrine "does not protect facts concerning the creation of work product or facts contained within work product." *Hansen Constr., Inc. v. Everest Nat'l Ins. Co.*, 2017 WL 7726711, at *1 (D. Colo. July 28, 2017) (quotations omitted); *see also Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("A mere allegation that the work product doctrine applies is insufficient.").

## ARGUMENT

**I. RIAA SHOULD PRODUCE ITS COMMUNICATIONS WITH MARKMONITOR THAT IT IS IMPROPERLY WITHHOLDING AS PRIVILEGED**

RIAA is withholding ▇ communications, from ▇▇▇▇▇▇ between itself and MarkMonitor on asserted grounds of attorney-client privilege or as work-product. (Ex. C, RIAA PL Nos. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Put simply, RIAA seeks to shield its communications with a third party, who Plaintiffs will offer as a fact witness, about information that Plaintiffs intend to rely upon at trial. Such communications cannot be withheld as privileged or work product.



6

### A.     RIAA And MarkMonitor Do Not Share An Attorney-Client Privilege

RIAA is improperly withholding ▇ documents between RIAA and third-party MarkMonitor on the basis of attorney-client privilege, as reflected in RIAA's log:

- ▇ concern ▇ (Ex. C, RIAA PL Nos. ▇); and

- ▇ involve or reflect ▇ (Ex. C, RIAA PL Nos. ▇).

There can be no attorney-client privilege between RIAA and MarkMonitor, including for work related to the 2016 Project, because there is no attorney-client relationship between the parties. RIAA does not allege that it is acting as an attorney for MarkMonitor, or that MarkMonitor was acting as its attorney. Nor could it. RIAA has not even alleged that any of the communications between these two entities involves communications by a client to an attorney made for the purpose of obtaining legal advice from the attorney.[2] Consequently, RIAA cannot be permitted to withhold communications with MarkMonitor on the basis of attorney-client privilege. *See Mize v. Kai, Inc.*, 2018 WL 1035084, at *7 (D. Colo. Feb. 23, 2018) ("reliance on the attorney-client privilege as the basis for withholding any information … is misplaced" where "there simply is no attorney-client relationship upon which to base any claim of privilege"); *see also Havens v. Johnson*, 2013 WL

---

[2] It makes no difference that many of these communications include an RIAA employee who is an in-house attorney (▇) and/or an attorney from O+Z. "The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Guardiola v. Adams Cty. Sch. Dist.*, 2019 WL 5535224, at *1 (D. Colo. Oct. 25, 2019) (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995)).

1828245, at *6 (D. Colo. Apr. 30, 2013) (Hegarty, M.J.) ("Generally, disclosing attorney-client communications to a third party results in a waiver of the attorney-client privilege.").[3]

RIAA incorrectly claims that these communications are covered by the attorney-client privilege because it "is effectively an outside counsel" to Plaintiffs, and that "O+Z and RIAA work collaboratively to represent the Labels' interests, including at times with MarkMonitor as a contractor to assist counsel in providing legal advice and developing legal strategy." Ex. B at 5. RIAA cannot rely on the narrow exception established in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), which permits the attorney-client privilege to extend to third parties in the limited situation where "the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client," such as where a third-party must "translate or interpret information." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). That exception is not applicable here. First, the communications are between two third-parties (RIAA and MarkMonitor). Second, the communications concern MarkMonitor's project replicating its own earlier efforts to search for and download files that supposedly matched those initially identified in the notices previously sent to Charter. Such third-party fact gathering does not give rise to an attorney-client privilege. RIAA makes no claim that MarkMonitor was engaged to "improve [RIAA's] comprehension" of preexisting materials, akin to a translator. *Ackert*, 169 F.3d at 139.

---

[3] On March 26, 2021, more than *four months* after serving its initial log on November 25, 2020 (and just a few weeks after serving its first supplemental log on March 5), RIAA served a second supplemental log in which it for the first time retroactively asserted new claims of attorney-client privilege for 13 entries and revised the descriptions. RIAA provided no explanation for these last-minute amendments, which should be viewed with skepticism. *Cf. Rynd v. Nationwide Mut. Fire Ins. Co.*, 2010 WL 5161838, at *3 (M.D. Fla. Dec. 14, 2010) ("[T]he amended privilege logs appear to be a last-ditch effort to cloak work-product documents with attorney-client protection in order to avoid producing them. This is the sort of 'gamesmanship' that the waiver rules are designed to discourage.").

"When an attorney seeks out a third party to provide information rather than to act as a translator for client communications, the communications between the attorney and the third party are not privileged." *Merck Eprova AG v. Gnosis S.p.A.*, 2010 WL 3835149, at *2 (S.D.N.Y. Sept. 24, 2010); *see also Ackert*, 169 F.3d at 139 ("A communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client."). While MarkMonitor may have helped RIAA, that does not render the relationship to be that of an attorney and client giving rise to a privilege.

Nor are MarkMonitor's communications with RIAA protected under the guise that MarkMonitor is a "consultant" to RIAA hired in anticipation of litigation, as RIAA's counsel has argued. Although "confidential communications between a party's counsel and a non-testifying expert or consultant, hired in anticipation of litigation" might receive attorney-client privilege protection, *Coorstek, Inc. v. Reiber*, 2010 WL 1332845, at *4 (D. Colo. Apr. 5, 2010), MarkMonitor is not a non-testifying expert or consultant. Rather, Plaintiffs disclosed MarkMonitor as a material fact witness who will testify about RIAA's notices for which MarkMonitor played an integral role. *See* Ex. D at 5. ███████████████████████████████████████████████████████████████████████████████████████████████████ During the meet-and-confer, RIAA was unable to identify any authority that a party may *hire* a fact witness as a "consultant" to shield its communications with that witness about that subject matter that the witness is expected to testify about. Further, when considering this narrow exception, this Court indicated that the attorney-client privilege is unlikely to attach in scenarios that "generally involve

9

counsel for Plaintiffs and the third party," but "not the Plaintiffs themselves." *Chevron Corp.*, 2010 WL 3923092, at *7. Nor does privilege apply to situations where parties "collect information not obtainable directly from" the party (here, Plaintiffs) supposedly claiming the privilege. *Id.* In short, MarkMonitor is a third-party fact witness, not an expert or an employee.[4]

Even if the narrow exception for privilege could apply, any protection over the documents has been waived; Plaintiffs cannot shield communications about the work of the 2016 Project from production while employing the results of those communications to prove direct infringement. *Id.* at *10; *see also* Dkt. 436 at 8 ("[P]laintiffs can't have it both ways – they can't commission MarkMonitor to do the investigatory work and expect to have MarkMonitor present its work and work product at trial without exposing all of MarkMonitor's work on this case to scrutiny."). Because Plaintiffs intend to rely on MarkMonitor's testimony about the notice program and 2016 Project in support of its case-in-chief, Plaintiffs necessarily waive any supposed privilege over MarkMonitor's 2016 communications regarding the same.[5]

---

[4] Nor can RIAA make a "detailed factual showing" that MarkMonitor "is the functional equivalent" of an employee, *Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002), such that MarkMonitor was "integrat[ed] into the … corporate structure … as to be a de facto employee," *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113-14 (S.D.N.Y. 2005); *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 214-15 (E.D.N.Y. 2019) (consultants not functional equivalent of employees where they "worked out of their own offices," "communicated via the email addresses provided by their consulting firms," and "likely served as consultants for other companies").

[5] RIAA has not asserted a "common interest privilege" with MarkMonitor, nor identified any such privilege on its log. In any event, that exception is inapplicable because it "does not apply when the parties merely have similar legal interests or when the interests are solely commercial or business in nature." *Beltran v. InterExchange, Inc.*, 2018 WL 839927, at *4, 9-10 (D. Colo. Feb. 12, 2018) (quotations omitted).

### B. RIAA And MarkMonitor Cannot Claim Work Product Protection Over Their Communications With Each Other

Independently, RIAA is withholding ▉ communications as work product, but RIAA cannot meet its burden of demonstrating that work-product protection applies to its communications with MarkMonitor concerning the 2016 Project. The parties have already extensively briefed and argued this subject as to the Hash Report: at the February 23, 2021 hearing, the Magistrate Judge and Special Master Rodriguez ruled that the Hash Report should be produced over the same objection, noting that the 2016 data could not be obtained from other sources, expressing "concerns about the loss of data," finding the claim of work product to be "suspect" and "dubious," and noting that Charter had substantial need. Ex. A at 109:11-19, 110:25-111:15. Judge Jackson found that decision was not clearly erroneous. Dkt. 436 at 8-9.

The same reasoning that compelled the production of the Hash Report itself applies equally to RIAA's and MarkMonitor's communications *about* the 2016 Project that was undertaken for the precise purpose of producing the Hash Report. *See* Dkt. 409 at 2-10 (setting forth Charter's challenge to work product protection). As a threshold matter, any work product protection over these communications has been waived. Plaintiffs "can't commission MarkMonitor to do the investigatory work and expect to have MarkMonitor present its work and work product at trial without exposing all of MarkMonitor's work on this case to scrutiny." Dkt. 436 at 8; *see also id.* ("Plaintiffs cannot present a portion of MarkMonitor's work while shielding other portions from discovery."). "Fundamental fairness precludes" RIAA from shielding communications about the work of the 2016 Project while at the same time using the result of those communications to prove direct infringement "as a multi-billion dollar damages sword." *Chevron*, 2010 WL 3923092, at *10; *see also Martensen v. Koch*, 301 F.R.D. 562, 582 (D. Colo. 2014) (party "cannot use the work

product doctrine as both a sword and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion").

Even if there was no waiver, RIAA cannot demonstrate work-product protection applies to these communications in the first place. And even if it did, it must yield, as Charter has a substantial need for the information because it is fundamental to challenging the reliability of Plaintiffs' recreation of direct infringement evidence. *See, e.g.*, Ex. E at 28:6-7 (Special Master Rodriguez acknowledging that the Project goes "directly to the evidence of direct infringement that is at the heart of this case"). Factual information contained in such communications all inform the trustworthiness of Plaintiffs' key evidence. These communications about the 2016 Project can shed additional light on the need for such a project, as well as its deficiencies, methodology, and execution that may not be present in the Hash Report itself. And there is no reason to believe any of these communications, like the Hash Report itself, contains anything beyond factual work product. *See* Dkt. 409 at 6-10 (Hash Report not protected as work product). RIAA has not asserted on its privilege log that any of these ▮ documents communicates the reasons "why counsel selected the particular 7,200 hashes." Dkt. 436 at. 8. *See* Ex. C. Given that these communications are about the evidence Plaintiffs will introduce to support its direct infringement claims, Charter's substantial need supports its production.

Consequently, RIAA should be compelled to produce all of its communications with MarkMonitor about the 2016 Project that it has logged.

## II.   O+Z SHOULD PRODUCE OR LOG DOCUMENTS AND COMMUNICATIONS RELATING TO THE 2016 RIAA/MARKMONITOR PROJECT

Efforts to obtain documents relating to the 2016 Project from Plaintiffs, RIAA, and MarkMonitor exposed that many of the communications on this matter are exclusively in the possession of O+Z. Consequently, the Court should order O+Z to produce or log its external correspondence (*e.g.*, with Plaintiffs, RIAA, MarkMonitor or Audible Magic) relating to the 2016 Project, and its implementation and results, from the beginning of the Discovery Period through March 23, 2019.

O+Z has admitted that it helped coordinate the 2016 Project, and therefore possesses documents concerning the Project. *See, e.g.*, Dkt. 288 at 1 ("███████████████████████████████████████████"); Dkt. 287-1 (Declaration of Matthew J. Oppenheim), ¶ 5 ("I directed a project in February 2016"). It has also represented itself as ███████████████████████████████████████████ Ex. F at PL_CH_0083044. O+Z therefore is in possession of factual evidence that Charter is entitled to have. While O+Z insisted during the meet-and-confer process that such communications are protected as privileged or work product, communications between RIAA and MarkMonitor about the Project (on which O+Z was copied) are not protected for the reasons discussed above, and O+Z's communications solely with Plaintiffs or RIAA may be logged if privilege is being asserted.

Although Special Master Rodriguez previously did not compel a search of O+Z's custodial files when she ordered Plaintiffs to produce communications relating to the 2016 Project or when other third parties were subpoenaed, *see* Dkt. 230 at 27-28, this Court recognized that O+Z cannot avoid producing or logging such communications merely because it operates as outside counsel:

13

> THE COURT: … Mr. Gould has put on the record that everybody is the same: RIAA, the plaintiffs, Oppenheim & Zebrak, they're all the same. It was all one big effort. So if you direct that to the plaintiffs, based on what Mr. Gould said, you should be able to get that information because they're treating themselves as the same.
>
> ...
>
> MS. GOLINVEAUX: Your Honor, in light of your guidance, we can go back to the plaintiffs and explain that that's the position, coming out of today, and try and work that out with them.
>
> THE COURT: Yeah, I think you should.

Ex. A at 112:23-113:23; *cf. id.* at 88:15-20 (SPECIAL MASTER: "And it does seem to be a bit of a moving target, because when we talked about this before with the Hash Report, I specifically did not order that the report be produced, and I ordered -- or, at least, I suggested strongly that Charter seek to obtain the information from the third parties, so MarkMonitor or Audible Magic, et cetera."). Nor would relying on O+Z's status as outside counsel make sense, as RIAA, who also allegedly operates as "outside counsel," has logged responsive communications about the Project. If "outside counsel" RIAA produces or logs, so should "outside counsel" O+Z.

Months of discovery efforts have confirmed that O+Z is the only possible source of various communications about the 2016 Project. MarkMonitor likely is missing many communications between O+Z and MarkMonitor given that: (1) MarkMonitor's privilege log ▮▮▮▮ until July 2018 (Dkt. 409-5 at MM PL No. 8), over two-and-a-half years after the commencement of the 2016 Project; and (2) ▮▮▮▮ pre-dating July 2018. ▮▮▮▮, despite the fact that RIAA ▮▮▮▮

14

███████████████████. Dkt. 409-5 at MM PL No. 1. Thus, after extensive efforts, O+Z likely is the only comprehensive source of relevant communications between it and MarkMonitor for that period of time. Charter having exhausted its ability to secure such documents from third parties, it is not prejudicial for O+Z to produce or log its external communications on this Project.

## CONCLUSION

Based on the foregoing, Charter requests that the Court order: (1) RIAA to produce its communications with MarkMonitor concerning the 2016 Project; and (2) O+Z to produce and log its external communications concerning the same Project.

Dated: April 9, 2021

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)

Respectfully submitted,

/s/ Andrew H. Schapiro
Andrew H. Schapiro
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
E-mail: andrewschapiro@quinnemanuel.com
E-mail: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave, 22nd floor

| | |
|---|---|
| E-mail: cjoyce@fwlaw.com | New York, NY 10010 |
| | (212) 849-7000 (telephone) |
| *Counsel for Defendant* | (212) 849-7100 (facsimile) |
| *Charter Communications, Inc.* | E-mail: toddanten@quinnemanuel.com |
| | E-mail: jessicarose@quinnemanuel.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro