# EXHIBIT A

1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     Case No. 19-cv-874-RBJ-MEH
3    _____

4    WARNER RECORDS, INC., et al.,

5        Plaintiffs,

6    vs.

7    CHARTER COMMUNICATIONS, INC.,

8        Defendant.
     _____
9

10           Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, and REGINA M. RODRIGUEZ,

13   Court-Appointed Special Master, commencing at 9:18 a.m.,

14   February 23, 2021, in the United States Courthouse, Denver,

15   Colorado.
16   _____

17   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN
     TYPOGRAPHICALLY TRANSCRIBED. . .
18   _____

19                          APPEARANCES

20         JONATHAN M. SPERLING, JEFFREY M. GOULD, SHIRA

21   POLIAK, MATTHEW J.  OPPENHEIM, ALEX KAPLAN, STACEY GRIGSBY,

22   ANDERS LIDEROT, J. HARDER EHLERS, Attorneys at Law, appearing

23   for the Plaintiffs.

24   _____

25       IN COURT HEARING: UNRESOLVED DISCOVERY DISPUTES
```

2

```
1                    APPEARANCES (continued)
2             ANDREW H. SCHAPIRO, LINDA J. BREWER, GRACIE CHANG,
3    JOHN ROSENTHAL, ERIN R. RANAHAN, JACK M. TANNER, ALLISON H.
4    HUEBERT, JENNIFER A. GOLINVEAUX, SEAN ANDERSON, CECIE
5    ALVAREZ, Attorneys at Law, appearing for the Defendant.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

88

1            MR. GOULD:  I'm saying that there is a contract
2    signed between RIAA and MarkMonitor entered in anticipation
3    of litigation at the direction of counsel, counsel for --
4    excuse me, counsel for RIAA, counsel for the plaintiffs, the
5    outside litigation.  And attorneys asked the plaintiffs -- I
6    mean, I'm not trying to obfuscate.
7            I think the challenge is that the labels, the RIAA
8    and Oppenheim & Zebrak were working together to figure out
9    whether there are valid claims.  And if so, what those would
10   look like and against whom.
11           SPECIAL MASTER:  All right.  Well, the thing that
12   at least I am struggling with here is that this is not our
13   first round with this conversation.
14           MR. GOULD:  Sure.
15           SPECIAL MASTER:  And it does seem to be a bit of a
16   moving target, because when we talked about this before with
17   the Hash Report, I specifically did not order that the report
18   be produced, and I ordered -- or, at least, I suggested
19   strongly that Charter seek to obtain the information from the
20   third parties, so MarkMonitor or Audible Magic, et cetera.
21           As I understand what they have represented, is they
22   have attempted to do that and they have not been able to get
23   satisfactory answers.  And I -- having heard this, I don't
24   know this as well as you all, you live this day in and day
25   out, but based on the times that I have dealt with this

1   issue, I feel like it is a bit of pointing, go here, go

2   there, and yet at the end of the day, the answers are still

3   somewhat illusive.

4           So I think that we have to point to and be really

5   specific here because this is an important issue for all of

6   the parties.  And I need to clearly understand the basis for

7   the work-product privilege and whose privilege -- sorry, the

8   work-product protection, whose protection it is, who's

9   claiming it, and what is the extent of the claim.

10          So that would be, at least in my mind, step one.

11          THE COURT:  So and I have -- I want to again, you

12  know, the fact that I heard this in December doesn't mean

13  that I've retained everything that I understood at that time.

14          We -- there are 11,000 works-at-issue here and you

15  had MarkMonitor look for 7200.  Is that -- is that grossly

16  correct?

17          MR. GOULD:  I think the numbers are correct, but

18  it's not quite -- it's not quite the way I will phrase it,

19  Your Honor.

20          In this lawsuit there are roughly 7500 sound

21  recordings and roughly 4,000 compositions.  So what we're

22  talking about here today with the Hash Reports is recordings,

23  primarily.  So there are roughly 75-, 7600 sound recordings

24  in this suit.

25          The Hash Report project that -- excuse me.  The

109

1  MR. GOULD: -- Your Honor, I think Mr. Oppenheim
2  needs one minute to get back to (inaudible). If you'll
3  indulge me, can I please check with him.
4  THE COURT: Well, I see him.
5  MR. GOULD: Oh, then I'm mistaken. Never mind.
6  THE COURT: Yeah.
7  MR. OPPENHEIM: I'm here. I was being unusually
8  quiet.
9  THE COURT: All right, that's about to change. All
10 right.
11  So our determination -- and I know you'll believe
12 you have a bigger basis to appeal, and I'm positive there
13 will be one, which is fine, because judges get appealed all
14 the time and reversed and affirmed -- and that is, we're
15 suspect of the work product claim, we're concerned about the
16 loss of data. By plaintiffs' own admission, the defense
17 doesn't have the same body of information from which they
18 could re-create the effort and we believe that the Hash
19 Report should be produced.
20  Okay, what's the next issue?
21  MR. GOULD: Your Honor, may I ask, notwithstanding
22 Mr. Rosenthal's discontent, a clarifying question? When you
23 say that concerned about loss of data, could you clarify what
24 you have in mind, because we're not aware of any.
25  THE COURT: Well, it was our understanding that

110

1   MarkMonitor did not keep some of the results of the work that
2   they did in 2016.
3           MR. GOULD:  That's not correct.
4           THE COURT:  Is that your understanding?
5           MR. ROSENTHAL:  Audible Magic.
6           THE COURT:  Audible Magic.  Somebody didn't.
7           MR. ROSENTHAL:  And then -- and then --
8           THE COURT:  What about Audible Magic?
9           SPECIAL MASTER:  Can I --
10          MR. GOULD:  Audible Magic disclosed recently that
11  they could not find the lookups that pertain to this project,
12  that's correct.
13          MR. ROSENTHAL:  So we have a couple of things.
14  One, we have of the Audible Magic data.  Two, we have a legal
15  hold that did not go into place until 2018, even though they
16  were -- MarkMonitor was retained in 2016.  They have not
17  logged a single e-mail in that time period.  So we believe
18  that information has either been lost or hasn't been logged.
19  We would like it all logged so we can make an evaluation as
20  to whether or not it was lost or not.
21          SPECIAL MASTER:  Okay.  Let us just deal with the
22  first issue, which is the request for the Hash Report, the
23  full Hash Report.  Our order is that the Hash Report should
24  be produced.
25          Number one, we do believe that the claim of work

1  product is somewhat dubious here.  It is not entirely clear

2  whose work product protection this is, who's claiming it, et

3  cetera.  But even assuming that work product protection would

4  cover the Hash Report, there is a substantial need for this

5  evidence, as set forth by the defendants; and that this

6  information is not available from another source,

7  particularly given that Audible Magic no longer has the

8  underlying data and defendants have attempted to obtain the

9  underlying data from third-party sources, in particular

10 MarkMonitor and Audible Magic.

11       Therefore, it is our opinion that the substantial

12 need test, if a work product protection even did exist in

13 this situation, that showing has been met.  Therefore, we

14 determined that the document in question, that is, the hash

15 tag report, should be produced.

16       THE COURT:  And at the end of today, again, we're a

17 going to talk about timing.  Timing would include a stay of

18 any particular order to permit you to appeal, but it's going

19 to be a tight timeline because, as Mr. Sperling said, you

20 know, I think you guys want a trial sooner than later.  And

21 so in light of that, you'll have tight timelines for you to

22 appeal anything tighter than the rules, the Local Rules,

23 okay.

24       MR. SCHAPIRO:  All right.  So next -- I think we

25 can just go back to our chart, if that's acceptable to --

112

1    MR. ROSENTHAL:  One other thing.  Your Honor, that
2 does resolve the Hash Report.  We would like a log generated.
3 We have serious questions about whether or not there are
4 e-mails between 2016 and 2018.
5    THE COURT:  What have you been told?  Have you
6 asked that question?
7    MR. ROSENTHAL:  Well, we did serve a subpoena and
8 we got a privilege log that doesn't reflect any.
9    THE COURT:  No, but have you asked that question in
10 discovery to the plaintiffs?
11    MR. ROSENTHAL:  Well, the question would have to be
12 directed to Oppenheim & Zebrak, because MarkMonitor did not
13 produce that information and did not log that information.
14    THE COURT:  Did you ask the plaintiffs for
15 communications between plaintiffs' counsel and MarkMonitor
16 for the time period 2016 to 2018?
17    MR. ROSENTHAL:  We didn't.
18    THE COURT:  Why not?
19    MR. ROSENTHAL:  Go ahead.
20    MR. SCHAPIRO:  There has been motion practice.  We
21 did serve requests for discovery post-claim period.  I'll let
22 Ms. Golinveaux speak to that.
23    MS. GOLINVEAUX:  Well, we did serve that discovery,
24 Your Honor, and this came up at a hearing with Ms. Rodriguez
25 last summer.  And it became clear that it wasn't the

1    plaintiffs themselves who had the correspondence with

2    MarkMonitor; it was Oppenheim & Zebrak and the RIAA.  And at

3    that time --

4            THE COURT:  But here they're -- Mr. Gould has put

5    on the record that everybody is the same:  RIAA, the

6    plaintiffs, Oppenheim & Zebrak, they're all the same.  It was

7    all one big effort.  So if you direct that to the plaintiffs,

8    based on what Mr. Gould said, you should be able to get that

9    information because they're treating themselves as the same.

10           MR. ROSENTHAL:  Well, they're treating themselves

11   the same as Rightscorp, right, but MarkMonitor is an

12   independent company which they just admitted they don't have

13   an attorney-client relationship with.

14           THE COURT:  But if you're asking for something from

15   MarkMonitor, we can't give it to you because MarkMonitor is

16   not here.  If you're asking for something from the

17   plaintiffs --

18           MR. ROSENTHAL:  MarkMonitor says they don't have --

19           MS. GOLVINEAUX:  Your Honor, in light of your

20   guidance, we can go back to the plaintiffs and explain that

21   that's the position, coming out of today, and try and work

22   that out with them.

23           THE COURT:  Yeah, I think you should.

24           MR. SCHAPIRO:  So the next item on our chart, I

25   believe, is RFP 4 --

256

1        TRANSCRIBER'S CERTIFICATION

2   I certify that the foregoing is a correct transcript to the

3   best of my ability to hear and understand the audio recording

4   and based on the quality of the audio recording from the

5   above-entitled matter.

6

7   /s/ Dyann Labo                    March 1, 2021

8   Signature of Transcriber          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25