# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant

Case No. 19-cv-00874-RBJ-MEH

## RIAA'S AND PLAINTIFFS' OPPOSITION
## TO CHARTER COMMUNICATIONS, INC.'S
## <u>MOTION TO COMPEL DISCOVERY</u>[1]

---

[1] Charter filed a single motion seeking to compel documents from (i) non-party Recording Industry Association of America ("RIAA") requested under a Rule 45 subpoena, and (ii) custodial emails from Plaintiffs' litigation counsel, Oppenheim + Zebrak ("O+Z"). O+Z is not a party to this litigation and Charter has not subpoenaed O+Z. Charter's motion on the latter issue should be denied for that reason alone. To the extent the Court interprets (ii) as a motion directed at Plaintiffs, for the Court's convenience, Plaintiffs and RIAA have coordinated to respond in a single brief.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

    I.      RIAA is a trade organization whose legal department represents the Record Label
          Plaintiffs. ................................................................................................................... 3

    II.     Plaintiffs' counsel at RIAA and O+Z engaged MarkMonitor for the 2016 download project
          for the purpose of providing Plaintiffs legal advice in anticipation of litigation. .................. 4

    III.    This Court already rejected Charter's request for RIAA's privileged and protected
          documents concerning the 2016 download project .................................................. 6

ARGUMENT ........................................................................................................................... 6

    I.      RIAA's and O+Z's communications with MarkMonitor are privileged because they are
          confidential communications with a lawyer's agent made for the purpose of providing
          Plaintiffs legal advice. .............................................................................................. 6

        A.    Counsel's confidential communications with an agent made for the purpose of providing
              legal advice to a client are protected by attorney-client privilege. ...................................... 7

        B.    RIAA's and O+Z's confidential communications with MarkMonitor made for the purpose
              of providing Plaintiffs with legal advice are protected by attorney-client privilege. ........... 9

    II.     Confidential communications between RIAA, O+Z and MarkMonitor concerning the 2016
          download project are protected work product because they were made in anticipation of
          litigation. ................................................................................................................. 11

        A.    Counsel's communications with MarkMonitor are protected work product. ..................... 11

        B.    Charter has no substantial need for communications between RIAA, O+Z, and
              MarkMonitor about the 2016 download project, and can obtain their substantial equivalent
              by other means. ............................................................................................................... 12

    III.    Plaintiffs have not waived privilege or work product protection over RIAA's and O+Z's
          communications with MarkMonitor, and Judge Jackson found no waiver. ....................... 14

    IV.    There is no basis to require Plaintiffs' outside litigation counsel of record to log or produce
          its custodial documents. .......................................................................................... 15

CONCLUSION ..................................................................................................................... 19

## INTRODUCTION

Charter's motion seeking Plaintiffs' privileged communications and work product sows confusion by ignoring basic legal principles and mischaracterizing facts.  The essence of Charter's motion is that Plaintiffs' counsel's communications with MarkMonitor, whom Charter characterizes as a third-party fact witness, cannot be privileged or protected by work product.  Charter's argument ignores that Plaintiffs' counsel hired MarkMonitor specifically to aid counsel in providing legal advice to Plaintiffs in anticipation of litigation, and that the Court has already endorsed Plaintiffs' privilege and work-product assertions.

As explained at length in prior briefing and hearings, the 2012-2015 program during which Plaintiffs sent infringement notices to Charter was a "notice program" that did not anticipate litigation.  Had Charter acted reasonably (or at all) in response to those 700,000-plus notices, litigation would not have been necessary.  In early 2016, when it became apparent that Charter had done nothing in response to infringement notices, Plaintiffs began contemplating litigation and sought to collect *additional* information relating to *existing* evidence (the "2016 download project") to both inform counsel's legal advice regarding potential claims and for use in litigation.  Contrary's to Charter's assertions, Plaintiffs *did not* seek to recreate lost evidence.[2]

Plaintiffs' outside counsel at RIAA and Plaintiffs' outside litigation counsel at O+Z then began working together to prepare the case, enlisting the assistance of MarkMonitor.  In connection with that case preparation, Plaintiffs' attorneys engaged in confidential

---

[2] Plaintiffs have previously described in detail (i) MarkMonitor's process for detecting and verifying infringements and sending notices to Charter, and (ii) the 2016 download project.  *See* Pls.' Opp. to Charter Comm'ns, Inc.'s  Mot. to Compel Production of Documents at 3-8 (ECF No. 287).  Charter's bald contention that Plaintiffs have "no evidence substantiating their notices to Charter" and "failed to preserve contemporaneous evidence of [Charter] subscribers' alleged direct infringement," Mot. at 3, are plainly incorrect.  Plaintiffs have produced hundreds of thousands of notices, evidence packages recording MarkMonitor's detections, verifications from Audible Magic of the works in suit, and more.

communications with MarkMonitor so that RIAA (as counsel) and O+Z (as counsel) could provide *legal advice* to Plaintiffs on potential claims and for the purpose of developing *legal strategy for this and other litigations*.  Those communications are protected by both the attorney-client privilege and the attorney work-product doctrine.  That MarkMonitor will *also* testify as a fact witness at trial does not change that outcome, and Charter can identify no legal principle requiring otherwise.

Charter's current motion is just the latest in a protracted series—which has already produced multiple rounds of briefing, hearings and rulings over the 2016 download project and the "Hash Report," a spreadsheet memorializing MarkMonitor's work on that project.  In each instance, although Charter could have sought counsel's communications or drafts, Charter sought only the final Hash Report.  Judge Jackson ultimately ordered production of the Hash Report, finding no clear error in this Court's and Special Master Rodriguez's conclusion that Charter had shown a substantial need for it, and concluding that "Plaintiffs cannot present a portion of MarkMonitor's work while shielding other portions from discovery."  Order on Pending Motions/Objections (2) at 8 (ECF No. 436) ("Jackson Order").

Judge Jackson did not address the protected communications that are the subject of the instant motion.  Charter first raised this issue during the February 23, 2021 discovery summit without notice or briefing.  Charter next raised this issue on March 17, 2021 by asking this Court to review *in camera* a privileged email between an RIAA attorney, O+Z and MarkMonitor concerning the download project, raising all the same arguments presented here.  Not only did the Court reject the privilege challenge, but it declined to even review the document *in camera*.  Ex. 1 at 88:6-7 (Mar. 18, 2021 Hr'g Tr.) ("THE COURT:  I'm not going to require any further action with regard to that one.").  Ignoring that guidance, which Charter sought specifically to

"streamline" this dispute, Charter filed this motion, repeating the same already-rejected arguments.

Nothing in Judge Jackson's order compels a different result or production of the communications at issue here.  Judge Jackson's order was directed at production of MarkMonitor's *work* on the 2016 download project.  Charter now has that in the produced Hash Report.  RIAA's and O+Z's *communications* with MarkMonitor, and incomplete drafts of the Hash Report, were not at issue before Judge Jackson and raise significantly different concerns. Further, Judge Jackson made clear that Plaintiffs' opinion work product continues to be protected and that "Charter has no right or need to gain access to it."  Jackson Order at 8.  In so holding, Judge Jackson joined the Special Master and this Court in rejecting Charter's argument (presented in the instant motion for the *fifth* time) that Plaintiffs have waived all privileges and protections regarding the 2016 download project.

Finally, Charter's motion is the latest chapter in Charter's unending and misguided quest to get access to O+Z's custodial emails.  Both the Special Master and this Court have repeatedly—and for good reason—rejected Charter's attempts to do so, twice in written orders and once during a hearing.  The outcome should be the same here, just as Charter's outside counsel at Winston & Strawn has not been required to produce or log their external communications concerning Charter's spoliation of hundreds of thousands of emails.

For the reasons discussed below, Charter's motion should be denied in its entirety.

## FACTUAL BACKGROUND

I.  **RIAA is a trade organization whose legal department represents the Record Label Plaintiffs.**

RIAA is a trade organization that supports and promotes the creative and financial vitality of the major record companies through advocacy, as well as anti-piracy efforts.  Decl. of

Steven Marks ¶ 2 ("Marks Decl.").  The Record Label Plaintiffs are RIAA members.  *Id.*

RIAA's legal department is devoted to representing its members' legal interests.  *Id.*  RIAA

lawyers are highly experienced attorneys, some of whom represented the Record Label Plaintiffs

for years in private practice at large international law firms before joining RIAA.  *Id.* ¶ 3.

RIAA's lawyers routinely serve as counsel and provide legal advice to RIAA's members on a

variety of matters, including the identification and development of copyright infringement claims

and litigation targets.  *Id.*  RIAA lawyers regularly represent RIAA members in litigation.  *Id.*

Where RIAA members are jointly represented by a law firm as outside litigation counsel for a

particular matter, RIAA lawyers often manage the litigation and work closely with outside

counsel to advance RIAA members' interests.  *Id.*  In this case, RIAA (as counsel) worked

closely with O+Z (as counsel) in just that manner.

## II.  Plaintiffs' counsel at RIAA and O+Z engaged MarkMonitor for the 2016 download project for the purpose of providing Plaintiffs legal advice in anticipation of litigation.

Had Charter acted on the infringement notices sent during the 2012-2015 RIAA Notice

Program, and done anything to stop its subscribers' infringing behavior, no litigation would have

been necessary.  The prospect of litigation arose in early 2016, when Plaintiffs analyzed the data

generated by the RIAA Notice Program and determined that Charter did *nothing* in response to

the more than 700,000 notices it received.[3]  Thus, Plaintiffs retained O+Z as litigation counsel to

analyze potential claims against Charter.

To do so, O+Z worked closely with RIAA lawyers, as well as with MarkMonitor.  Marks

Decl. ¶ 5; Decl. of Matthew J. Oppenheim ¶ 6 (Nov. 9, 2020) (ECF No. 288-1) ("Oppenheim

---

[3] That conclusion has only been borne out in this litigation, as Charter has admitted in response to interrogatories that during the period at issue it neither terminated nor suspended a single subscriber for copyright infringement, including subscribers who were the subject of thousands of infringement notices.

Decl."). Judge Jackson has already determined

that information demonstrating why O+Z selected those hashes is attorney opinion work product

that is absolutely protected. Jackson Order at 8. And contrary to Charter's repeated

mischaracterization of this project as an exercise in "recreating" evidence, the task was to

identify and attempt to collect *existing* evidence. Plaintiffs' counsel engaged MarkMonitor to

perform this work on counsel's behalf because counsel lacked the technical skills and expertise

to perform the task themselves.

In the course of coordinating and executing the project, O+Z, RIAA lawyers, and

MarkMonitor communicated confidentially in December 2015 and early 2016. Plaintiffs and

RIAA both served privilege logs describing responsive communications found in their files and

withheld. Charter has challenged RIAA's privilege and work product assertions for 37 entries on

RIAA's privilege log—all of which include attorneys from RIAA's legal department. *See* Mot.

Ex. C (RIAA Privilege Log Nos. 37, 39, 41-43, 45, 47-48, 62-66, 69, 75-76, 79, 83-84, 91-92,

94, 107-109, 115-116, 118, 120, 122-125, 129-131, 134). Eleven challenged entries include

attorneys from O+Z. *Id.* (RIAA Privilege Log nos. 75, 76, 79, 83, 84, 91, 115, 118, 120, 129,

130). Seven challenged entries do not concern the 2016 download project at all. *Id.* (RIAA

Privilege Log nos. 42, 45, 58, 64-66, 69).

**III.    This Court already rejected Charter's request for RIAA's privileged and protected documents concerning the 2016 download project.**

On March 18, Charter asked the Court to review *in camera* log entry 129—an email chain (with attachment) between O+Z, an RIAA attorney, and MarkMonitor concerning the 2016 download project—"in order to evaluate the basis for the assertion of attorney-client privilege and work product protection over their contents" and "help streamline what we anticipate will be motion practice related to . . . [Plaintiffs' and RIAA's] claims of attorney-client privilege or work product protection for communications, including those with MarkMonitor and Audible Magic, that concern the 2016 RIAA/MarkMonitor 'Download' Project."  Ex. 3 at 2 (March 17, 2021 email from L. Brewer to Magistrate Judge Hegarty).  In other words, Charter sought a preliminary determination of the merits of the instant motion.  The Court denied Charter's request, holding, not only that Plaintiffs need not produce the email and draft Hash Report at issue, but that *in camera* review was not even warranted.  Ex. 1 at 88:6-7 (Mar. 18, 2021 Hr'g Tr.) ("THE COURT:  I'm not going to require any further action with regard to that one.").  Ignoring the Court's guidance, Charter filed this motion seeking to compel production of, among others, the very same documents at issue on March 18.

## ARGUMENT

**I.    RIAA's and O+Z's communications with MarkMonitor are privileged because they are confidential communications with a lawyer's agent made for the purpose of providing Plaintiffs legal advice.**

Charter argues that RIAA must produce its withheld communications with MarkMonitor concerning the 2016 download project because there can be no attorney-client relationship between RIAA and MarkMonitor.  Mot. at 7-10.  Charter's argument misstates the relationships and ignores the law.  No one contends that there is an attorney-client relationship between RIAA and MarkMonitor.  The attorney-client relationship is between Plaintiffs and their counsel at

6

RIAA (and O+Z).  RIAA's (and O+Z's) confidential communications with MarkMonitor, made for the purpose of providing legal advice to Plaintiffs in anticipation of litigation, are privileged communications.

### A. Counsel's confidential communications with an agent made for the purpose of providing legal advice to a client are protected by attorney-client privilege.

When counsel retains a non-attorney to assist it in providing legal advice, its confidential communications with that agent are protected by attorney-client privilege.  For counsel to effectively advise a client, it is essential that counsel be able to rely on skilled non-attorney assistance to identify, understand, and analyze complex information and issues.  Protecting these communications is "consistent with the rationale of the privilege and reflect[s] the reality that adequate legal representation often necessitates the assistance of skilled practitioners in various fields." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 72 (S.D.N.Y. 2010).  Recognizing the importance of protecting these communications, courts throughout the country have extended the attorney-client privilege to communications between a lawyer and agent retained by the lawyer to assist in providing legal advice.  *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961).[4]

The foundational case is *Kovel,* in which the Second Circuit held that communications between a client's attorney and accountant could be privileged, recognizing the principle that "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *Kovel*, 296 F.2d at 922.  Applying *Kovel*, courts

---

[4] *See also In re Grand Jury Investigation*, 918 F.2d 374, 384 (3d Cir. 1990) ("[T]he presence of third parties, if essential to and in furtherance of the communication, should not void the privilege."); *United States v. Bornstein*, 977 F.2d 112, 117 (4th Cir. 1992) (accountant's workpapers privileged when accountant's service was "performed primarily to allow [attorney] to give legal advice"); *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 19 F.3d 1432 (6th Cir. 1994) (confidential communication made by investigator to counsel for the purpose of receiving legal advice privileged); *U.S. Dep't of Educ. v. Nat'l Collegiate Athletic Ass'n.*, 481 F.3d 936, 938 (7th Cir. 2007) ("The lawyer-client privilege can embrace a lawyer's agents (including an investigator.); *United States v. Cote*, 456 F.2d 142, 144 (8th Cir. 1972) (privilege covers lawyer's agent services where "services are a necessary aid to the rendering of effective legal services to the client").

have recognized the privilege may extend to "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences." *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (internal quotation marks omitted) (citing treatise).

Courts in this district have applied *Kovel*, holding that "[t]he attorney-client privilege can extend to communications between representatives of the client . . . if the communication was made in confidence for the primary purpose of obtaining legal advice." *Coorstek, Inc. v. Reiber*, No. CIV-A-08-CV-01133 (KMT) (CBS), 2010 WL 1332845, at *4 (D. Colo. Apr. 5, 2010); *see also Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 629 (D. Colo. 1998) (adopting *Kovel* doctrine and holding communications with lawyer's agent privileged where "exchanged in confidence and in order to facilitate [the lawyer's] ability to give legal advice).

Particularly relevant here, courts have extended the attorney-client privilege to communications with investigators hired by counsel, like MarkMonitor. "Factual investigations conducted by an agent of the attorney . . . clearly fall within the attorney-client rubric. Thus, courts have frequently extended the attorney-client privilege to communications made to investigators who have provided necessary assistance to attorneys . . . ." *Gucci*, 271 F.R.D. at 71 (internal citations omitted) (citing cases); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 463 (N.D. Ill. 1990) (statements to and from investigator were privileged because "the privilege . . . extends to communications by agents of attorneys"); *see also* 24 Fed. Prac. & Proc. Evid. § 5482 n.30 (1st ed.) (citing cases extending privilege to investigators hired by counsel).

The holding in *Gucci* is particularly on point. 271 F.R.D. at 71-72. Applying *Kovel* and its progeny, *Gucci* held that the attorney-client privilege covered communications between an attorney and an investigator conducting a pre-suit investigation into potential trademark

infringement claims, where the investigator "acted at the direction of [counsel] to assist in-house and outside counsel to prepare for litigation . . . ." *Id.* Like MarkMonitor, the investigator in *Gucci* "played an integral role in providing hands-on assistance to in-house and outside counsel in gathering evidence . . . ." *Id.*

Charter reads the *Kovel* doctrine too narrowly in contending that it is limited solely to agents who "translate or interpret information" for an attorney. Mot. at 8 (quoting *United States v. Ackert*, 169 F.3d 136, 138 (2d. Cir. 1999)). Though some courts read *Kovel* as such, countless others, including the many cited herein, recognize that counsel's ability to communicate with its agents in confidence is essential to counsel's ability to advise its client, and thus focus on whether those communications are made to assist counsel in providing legal advice. *See supra*.

## B. RIAA's and O+Z's confidential communications with MarkMonitor made for the purpose of providing Plaintiffs with legal advice are protected by attorney-client privilege.

Applying these principles here establishes that the communications at issue are privileged. RIAA and O+Z both represent Plaintiffs ████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████ RIAA's and O+Z's communications with MarkMonitor regarding the 2016 download project are therefore privileged because they were made in confidence "for the purpose of facilitating the rendition of legal services" to the client. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (holding communications between defendant, defendant's counsel, and public relations firm privileged).

As the above cases demonstrate, Charter is simply wrong that communications between a lawyer and its agent (what Charter misdescribes here as merely two "third parties") cannot be privileged, and notably Charter cites no authority for its claim. Charter's assertion that "third-party fact gathering does not give rise to an attorney-client privilege," for which Charter again cites no authority, is belied by the cases cited above, and misses the key point. Mot. at 8. The privilege protects not the third-party fact gathering itself (*i.e.*, the facts about what the investigator did), but the *communications* between the lawyer and the lawyer's hired investigator that aid the lawyer's provision of legal advice. It is *those* communications Charter seeks and *those* communications that *Kovel* and its progeny protect.

Charter primarily relies on *United States v. Ackert*, which held that an in-house tax counsel's communications with an investment banker regarding a proposed investment were not privileged. 169 F.3d at 138. *Ackert* has no relevance here because the in-house tax lawyer did not retain the investment banker at all, let alone for the purpose of aiding the lawyer's provision of legal advice. *Id.* Rather, after the lawyer's client decided to pursue an investment, the *client* paid the investment bank a fee "for services rendered in connection with" the deal, not for aiding the lawyer. *Id.* Here, on the other hand, Plaintiffs' lawyers at RIAA retained MarkMonitor specifically to aid them in providing legal advice to Plaintiffs in anticipation of litigation.

Charter further complains that MarkMonitor is a fact witness, but that does not affect whether the attorney-client privilege covers RIAA's and O+Z's communications with MarkMonitor, and Charter cites no authority otherwise. Rejecting Charter's argument, Judge Jackson held that Plaintiffs' attorney opinion work product (communicated to MarkMonitor) remains protected. Jackson Order at 8. Judge Jackson thus correctly recognized that simply because MarkMonitor is a fact witness does *not* mean all privileges and protections relating to its

work vanish.  Indeed, it is commonplace for a fact witness to have a privileged relationship with

counsel for a party.  As the Court recognized at the February 23 hearing:

> THE COURT: Well, but -- you proffered them as a fact witness, not an expert.  So
> I've seen many cases where somebody comes in and they, in fact, have an attorney-
> client relationship with counsel for one of the parties, but they're not a party; they're
> just a fact witness.

Ex. 5 at 55:3-7 (Feb. 23 Hr'g Tr.).  Several of the witnesses Charter identified in its initial

disclosures are in-house Charter attorneys; Charter's disclosure of them as fact witnesses does

not nullify privilege over their communications, even as to the subject of their testimony.

## II.  Confidential communications between RIAA, O+Z and MarkMonitor concerning the 2016 download project are protected work product because they were made in anticipation of litigation.

Charter challenges 37 work product assertions on RIAA's privilege log based on its

contention that no work product applies, any such protection has been waived, and it has a

substantial need for the communications in any event.  Mot. at 11-12.  Charter is wrong on all

fronts.  By virtue of allowing Plaintiffs to redact portions of the Hash Report, Judge Jackson

confirmed that work product protection may apply to the 2016 project.  Production of the Hash

Report itself satisfied any need Charter previously claimed in seeking the Hash Report, and that

need does not extend to all communications with counsel concerning that project or even to

drafts of the Hash Report.  If it did, and it was the exact same need, then Charter should have

sought those materials in one of its many prior motions over the Hash Report.

### A.  Counsel's communications with MarkMonitor are protected work product.

RIAA's and O+Z's confidential communications with MarkMonitor regarding the 2016

download project warrant work-product protection because they concerned an investigation

performed in anticipation of litigation.  Judge Jackson's order requiring production of the Hash

Report did not doubt that the Report was work product.  Jackson Order at 8.  The same conclusion must attach to counsel's communications with MarkMonitor concerning that project.

Further, Judge Jackson's order was careful to distinguish between "attorney opinion work product [to which] Charter has no right or need to gain access" and "MarkMonitor's work and work product."  Jackson Order at 8.  RIAA's, O+Z's, and MarkMonitor's communications are not just MarkMonitor's factual work product, as reflected in the final Hash Report; they also reveal counsel's mental impressions, opinions and legal theories concerning the investigation and how Plaintiffs plan to use the results in litigation.  Those communications are absolutely protected opinion work product.  Indeed, Charter tries to justify its motion by claiming the emails it seeks will "shed additional light on the need for such a project."  Mot. at 12.  That argument makes Plaintiffs' point: any discussion by Plaintiffs and their counsel about the need for the download project is entirely litigation counsel's opinions and legal strategy—precisely the type of materials that the work product doctrine protects absolutely.

### B. Charter has no substantial need for communications between RIAA, O+Z, and MarkMonitor about the 2016 download project, and can obtain their substantial equivalent by other means.

Charter cannot show it has a "substantial need" for the challenged communications "to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  "A substantial need exists where the information sought is *essential* to the party's defense, is *crucial* to the determination of whether the defendant could be held liable for the acts alleged, or carries *great* probative value on contested issues."  *Nevada v. J-M Mfg. Co., Inc.*, 555 Fed. Appx. 782, 785 (10th Cir. 2014) (internal quotation marks omitted) (emphasis added).  "Nor does a showing of potential relevance mean that [the movant] has demonstrated a substantial need."  *Id.* (internal quotation marks omitted).

*First*, Charter's motion ignores that Charter already has the Hash Report itself.  Charter is wrong, therefore, that "[t]he same reasoning that compelled the production of the Hash Report itself applies equally to RIAA's and MarkMonitor's communications . . . ."  Mot. at 11.  Charter claimed that it needed the Hash Report because it disclosed the "files identified in [Plaintiffs'] copyright notices that could not be located by MarkMonitor or matched by Audible Magic," and that this information "is fundamental to challenging the reliability" of Plaintiffs' direct infringement evidence.  Charter Comm'ns, Inc.'s Response to Pls.' Objs. to Feb. 23, 2021 Discovery Orders at 3-4 (ECF No. 409).  But Charter now has that information by virtue of receiving the Hash Report.  Charter's claimed need for the data that it already has does not justify production of counsel's communications with MarkMonitor about that data.  Nor can it justify production of draft versions of the Hash Report now that Charter has the final version.  Charter's hollow claim that "information contained in such communications all inform the trustworthiness of Plaintiffs' key evidence," Mot. at 12, does not explain how such communications add anything significant to the Hash Report that Charter already has.

*Second*, Charter can obtain the information it seeks about the Hash Report by other means.  Charter will depose two MarkMonitor witnesses, during which it can inquire, without invading protected work product, into the "methodologies and execution that may not be present in the Hash Report itself," which is what Charter now claims to need.  Mot. at 12.  Further, MarkMonitor has produced documents describing how its technology works, and Charter spent days reviewing MarkMonitor's source code.  This information is far more probative of MarkMonitor's "methodologies and execution" than its communications with counsel.

III.    **Plaintiffs have not waived privilege or work product protection over RIAA's and O+Z's communications with MarkMonitor, and Judge Jackson found no waiver.**

Charter also argues that Plaintiffs have waived all privilege and work product protection over counsel's communications with MarkMonitor by relying on the 2016 downloads.  Charter is incorrect again, and Judge Jackson found no such thing in ordering the Hash Report's production.  Rather, Judge Jackson affirmed this Court's conclusion that Charter had a substantial need for the Hash Report because Plaintiffs intend to rely on MarkMonitor's work product at trial.  Jackson Order at 8.  But Judge Jackson did not find waiver.[5]  Not only does the word "waiver" not appear in Judge Jackson's order, but he permitted Plaintiffs to redact attorney opinion work product, *id.*, which is inconsistent with a finding of waiver.

To the extent Judge Jackson did find any waiver, it was limited to the final Hash Report itself, which is all Charter sought in that motion.  Judge Jackson held that, "Plaintiffs cannot present a portion of MarkMonitor's ***work*** while shielding other portions from discovery."  *Id.* at 8 (emphasis added).  All of MarkMonitor's work is embodied in the final Hash Report and the hard drive of downloaded files Plaintiffs have produced—Charter has all that.  Even prior iterations and non-final drafts of the Hash Report are not reasonably encompassed by Judge Jackson's order, given that all the results of MarkMonitor's work and work product are fully embodied in the produced Hash Report.  Nor could Charter demonstrate a substantial need for

---

[5] Charter has now argued the same waiver theory it asserts here to Judge Jackson, this Court, and the Special Master, on at least four separate occasions.  *See* Ex. 10 at 4 (Charter Comm'ns, Inc.'s Privilege Log Dispute Chart (July 13, 2020)); Charter Comm'ns, Inc.'s Mot. to Compel Production of Documents at 10-11 (ECF No. 267); Def. Charter Comm'ns, Inc.'s Response to Pls.' Mot. for Clarification at 1-2 (ECF No. 374); Charter Comm'ns, Inc.'s Response to Pls.' Objs. to Feb. 23, 2021 Discovery Orders at 8 (ECF No. 409).  All three decisionmakers repeatedly declined to adopt it.  Special Master's Order at 36 (ECF No. 230) (rejecting waiver and denying production of Hash Report); Order Denying Charter's Mot. to Compel. Production of Documents at 1-2 (ECF No. 332) (this Court rejecting waiver and denying production of Hash Report); Ex. 5 at 110:21–111:15 (Feb. 23, 2021 Hr'g Tr.) (this Court and Special Master ordering production of Hash Report based on finding of substantial need without finding waiver); Jackson Order at 8 (affirming order to produce Hash Report based on substantial need without finding waiver).

drafts, in any event, when it already has the final.  And, of course, nothing in Judge Jackson's order encompasses communications between counsel and MarkMonitor.

Charter's reliance on this court's decision in *Chevron* is misplaced.  There, the court held that, "[w]here a party injects part of a communication as evidence, fairness demand that the opposing party be allowed to examine the whole picture . . . ."  *Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3923092, at *10 (D. Colo. Oct. 1, 2010) (internal quotation marks omitted).  Here, Plaintiffs have not "injected" any part of their counsel's protected communications with MarkMonitor as evidence.  Charter's citation to *Martenson v. Koch* is also inapposite.  That case found a waiver where the defendant was withholding a consultant's reports while also relying on those same reports to establish an affirmative defense.  301 F.R.D. 562, 580-81 (D. Colo. 2014).  It said nothing about waiver of privileged communications.

## IV.    There is no basis to require Plaintiffs' outside litigation counsel of record to log or produce its custodial documents.

Charter's demand that O+Z log or produce documents from its custodial files, during the claim period and for three years thereafter, continues its repeatedly-rejected attempts to peek behind the curtain at Plaintiffs' counsel's litigation strategy.  Charter's brief focuses exclusively on its claimed need for communications between O+Z and MarkMonitor, and then demands an overbroad swath of duplicative O+Z communications with RIAA, Plaintiffs and Audible Magic. The request should be denied, for the fourth time.

*First*, the Court and the Special Master have repeatedly denied Charter's several previous attempts to compel O+Z to log or produce its custodial email on this very issue, repeatedly rejecting the same arguments presented here.  Special Master's Order Resolving Discovery Disputes at 7-8, 20-21 (ECF No. 181) ("Plaintiffs are not ordered to add outside counsel as a custodian at this time. Charter's request is denied."); Special Master's Order at 28 (ECF No. 230)

15

("I do not interpret Charter's request to require that Plaintiffs search custodial files of outside counsel, nor would I require Plaintiffs do to so."); Feb. 23, 2021 Courtroom Minutes (ECF No. 386) (demonstrating Court rejected Charter's request "that a privilege log be created by Oppenheim & Zebrak as to all their communications as between MarkMonitor and Audible Magic."  Ex. 5 at 49:7-9 (Feb. 23, 2021 Hr'g Tr.)).  Charter did not appeal any of these rulings. This Court even declined to review *in camera* a privileged email chain involving O+Z, confirming the unsurprising point that discovery of O+Z's custodial emails is unlikely to lead to admissible evidence.  Ex. 1 at 88:6-7 (Mar. 18, 2021 Hr'g Tr.).  Charter should not be permitted to endlessly reargue this issue.

*Second*, at Charter's suggestion, the parties mutually agreed long ago that "the parties need not log privileged and/or protected material dated after the claim period, or any documents authored by outside counsel."  Ex. 6 at 2 (Nov. 27, 2019 S. Coorg Ltr. making proposal); Ex. 7 at 3-4 (Dec. 4, 2019 N. Sahni Ltr. accepting proposal).  Charter has itself repeatedly relied on that agreement to shield its outside counsel's files from production and logging.  For example, Charter refused to search Winston & Strawn's files for documents regarding Charter's spoliation of evidence, despite their critical relevance and the order to produce documents pursuant to the Court's 502(d) order.  Charter also relied on this agreement in justifying to the Court why its privilege log of Kirill Abramov's sampled documents submitted for *in camera* review omitted such documents.  Ex. 8 at 2 n.3 (March 1, 2021 A. Schapiro Ltr.).  All with good reason: outside litigation counsel's custodial files are unlikely to include relevant non-privileged documents or

lead to discovery of admissible evidence.  Such discovery is not proportional under Rule 26(b)(1) on these facts.  There is no reason to disturb the parties' mutual agreement at this stage.[6]

Charter's argument that, because RIAA as counsel has produced and logged documents, O+Z must do so as well, ignores important distinctions.  Unlike O+Z, RIAA managed the 2012-2015 non-litigation notice program, and was a potential source of non-privileged discovery regarding events long before the conception of the 2016 download project.  RIAA is also not litigation counsel of record and was the subject of a Rule 45 subpoena, with its attendant protections.  Finally, not logging documents authored by outside counsel was a compromise agreed to by the parties to resolve discovery disputes.  *See* Ex. 6 at 2; Ex. 7 at 3-4.

*Third*, Charter's theory for why RIAA and MarkMonitor's communications are allegedly not privileged undermines its basis for seeking O+Z's custodial documents.  To justify departing from the Special Master's prior rulings, Charter quotes her comment at the February 23 discovery hearing that "RIAA, the plaintiffs, Oppenheim & Zebrak, they're all the same."[7]  Mot. at 14.  But elsewhere in its motion Charter argues that RIAA, Plaintiffs, and O+Z are all *distinct*, such that RIAA's communications with MarkMonitor are "between two third parties" and therefore not privileged.  Mot. at 7.  Charter cannot have it both ways.  Nor is the Special Master's remark a sufficient basis to impose discovery burdens here.  As part of the same colloquy Charter cites, the Court recognized that Charter had not teed-up this issue in advance nor given Plaintiffs an opportunity to prepare a response.  Ex. 5 at 115:7-9 (Feb. 23, 2021 Hr'g

---

[6] To the extent Charter's motion renders inoperative the parties' agreement, Plaintiffs reserve the right to seek discovery from Charter's outside counsel where appropriate, including with regard to Charter's spoliation of evidence.

[7] Certainly, they are not "all the same," and that lack of clarity resulted from the shotgun nature of Charter's privilege arguments during the hearing, without the benefit of briefing or Charter even indicating it would raise the issue in advance.  The dynamics and relationships between the parties are set forth above.

Tr.) ("I'm not going to find that you've waived attorney-client just because of what you said today.  I mean, I know you're working on the fly.").

*Fourth*, even by its own logic, Charter's request is grossly overbroad and seeks duplicative information with no added gain.  Charter seeks to compel production or logs of O+Z's correspondence with Plaintiffs, RIAA, MarkMonitor and Audible Magic relating to the 2016 download project, claiming that "O+Z is the only possible source of various communications about the 2016 Project."  Mot. at 13-14.  But the only communications for which Charter identifies O+Z as the "only possible source" are those *exclusively* between O+Z and MarkMonitor.  Mot. at 15.

Charter does not contend, because it cannot, that O+Z is the only possible source for communications involving RIAA, Plaintiffs, or Audible Magic.  ***RIAA*** has already produced or logged communications with O+Z (both with and without MarkMonitor) regarding the 2016 project.  *See* Mot. Ex. C.  Charter tries to distract by noting that RIAA's log does not independently list the Hash Report but ignores that RIAA long ago objected to duplicative discovery sought from other parties, and that Plaintiffs and MarkMonitor both logged it.  Ex. 9 at 6 (May 1, 2020 RIAA Subpoena Responses and Objections, RFP 49).  ***Plaintiffs*** too have logged communications with O+Z concerning the 2016 project after the Special Master ordered them to do so to the extent Plaintiffs found such documents in their custody.  Special Master's Order at 28 (ECF No. 230).  Charter does not even argue that O+Z is the only source for communications with ***Audible Magic*** concerning the 2016 project.  Nor is there any basis to do so, given Audible Magic's production of emails from the same period.  That leaves only communications made exclusively between O+Z and MarkMonitor, the request for which should nonetheless be denied for all the other reasons stated here.

*Fifth*, Charter's request that O+Z search for documents through March 23, 2019—three additional years after the claim period—is overbroad, speculative, not likely to lead to admissible evidence, and contravenes numerous discovery orders limiting post-claim period discovery. The record is clear that the 2016 download project was completed in early 2016 and well within the claim period. The 2016 SOW is dated Jan. 29, 2016, the Hash Report is dated Feb. 29, 2016, and the hard drive of infringing files MarkMonitor produced to Charter contains nothing dated beyond the May 2016 claim period. Consistent with this, the Special Master denied Charter's request that Plaintiffs produce communications with MarkMonitor after 2016. Special Master's Order Resolving Discovery Disputes at 5-7, 10 (ECF No. 181). Indeed, RIAA has already confirmed that it searched for communications concerning the 2016 download project, "including through the filing of the complaint, and none were identified. There is nothing more to produce or log post-claim period." Mot. Ex. B at 1. There is no basis to chart a different course at this late stage of the case.

## CONCLUSION

For the reasons stated above, Plaintiffs and RIAA respectfully request that the Court deny Charter's Motion to Compel Production of Discovery in its entirety.

Dated: April 21, 2021                          Respectfully submitted,

                                               */s/  Matthew J. Oppenheim*

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Ste.
3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Matthew J. Oppenheim
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE &
FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@williamsweese.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 21, 2021 I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Matthew J. Oppenheim*