# Exhibit 10

## Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)

| No. | Title/Description | Argument |
|---|---|---|
| 76[1] | Hash Report_02292016.xlsx<br><br>Privileged report prepared at the request of counsel in anticipation of litigation, containing analysis of infringement evidence collected in anticipation of litigation.[2] | The fundamental importance of Plaintiffs' investigative efforts leading up to their suit against Charter cannot be overstated. As the Special Master recognized, without adequate proof of direct infringement, Plaintiffs' immense secondary liability claims against Charter fall. *See* July 2 Hr'g Tr. at 155:25-156:6.[3]<br><br>As background, from about 2009 to 2015, Plaintiffs ran a notice program under the management of their trade organization, the RIAA. Plaintiffs have contended that the notice program was not run in anticipation of litigation. Instead, they characterize it as a combination of threats, education, and information-gathering. About a year after the notice program ended, in late 2015 or very early 2016, Plaintiffs decided to assert massive secondary infringement claims against some of the same ISPs to which they sent notices. A lawsuit required hard proof of direct infringement and Plaintiffs looked to their notice program for that proof.<br><br>However, a problem with Plaintiffs' notice program was that their vendor, MarkMonitor, did not download a single file (or even a piece of a file) from among the millions of files allegedly shared by the millions of ISP subscribers to whom Plaintiffs sent notices ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ |

---

[1] Charter raised other issues with Plaintiffs' claim to privilege to other documents on Plaintiffs' privilege log, about which the parties are continuing to meet and confer. As the parties appear to be making progress, and in an effort to avoid unnecessary motion practice, Charter is still in the process of working through these issues with Plaintiffs, particularly in light of the fact that subsequent to these conferrals, Plaintiffs have agreed to produce many documents previously withheld for privilege, either in whole or with partial redactions. Charter will raise any remaining issues that cannot be resolved as appropriate.

[2] A copy of Plaintiffs' privilege log is attached hereto as Exhibit 1.

[3] Charter includes this issue on this chart pursuant to the Special Master's direction that the charts address all search term and privilege log issues. Charter apologizes for the length of the entry, but considered the background necessary in light of the fundamental importance of this issue.

**Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)**



Plaintiffs have produced items (3) and (4) (the PCAP files and the downloaded files) listed above. At issue is Plaintiffs' refusal to produce the remaining three categories of information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The first missing documents is the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This missing report is listed on Plaintiffs' privilege log as dated February 29, 2016, and as having been formatted as an Excel spreadsheet titled "Hash Report_02292016.xlsx" (the "Hash Report"). Plaintiffs are withholding this document as "work product." Plaintiffs describe this document as follows: "Report prepared at the request of counsel in anticipation of litigation, containing analysis of infringement evidence collected in anticipation of litigation."

The second item of information that is missing is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Unlike the Hash Report, Plaintiffs have not asserted a privilege for this document by logging it on their privilege log.

---

[4] A "hash" that identifies a shared file may refer to a file that consists of a single song or track; but, more frequently, the shared file consists of multiple tracks. Multiple tracks would be shared as part of a single file in the case where the file being shared is a copy of an album, or a copy of a user's collection of the works by an artist, or a play list or the like.



Third, Plaintiffs have not produced either ▮▮▮ Plaintiffs have not asserted a privilege for these documents by logging them in their privilege log.

Beyond these documents specified in ▮▮▮ Plaintiffs have not produced any communications with MarkMonitor relating to ▮▮▮ or the work done pursuant to it. Nor have they produced any documents showing why ▮▮▮ except for the information that was produced on the Hard Drive that was the subject of much litigation before the Special Master; namely, the downloaded recording, the packet capture files, and their associated metadata.

Plaintiffs' claim of work product protection over the Hash Report should be rejected. First, based on ▮▮▮ As such, the document as described would not contain any "attorney's strategies and legal impressions," which is all the doctrine protects, as opposed to merely "facts concerning the creation of work product or facts within the product," which are not protectable. *See Bonanno v. The Quizno's Franchise Co.*, LLC, No. 06-CV-02358-WYD-KLM, 2008 WL 1801173, at *6 (D. Colo. Apr. 18, 2008) (citations omitted).

At most, ▮▮▮

*See id.*; *see also L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-02868-MSK-KMT, 2014 WL 183303, at *5 (D. Colo. Jan. 12, 2014) (citation omitted) ("Because the work-product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning creation of work product or facts contained within work product…

**Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)**

Thus, work product does not preclude inquiry into the mere fact of investigation."). The file should be produced on this basis alone.

Further, even if Plaintiffs had a prima facie claim of work product over this document, such a claim would not protect the document from production where Charter can show a substantial need for the information. See Fed. R. Civ. P. 26(b)(3)(A); see Henderlong v. Allstate Ins. Co., No. CIV.A08CV01377CMAMEH, 2009 WL 82493, at *2 (D. Colo. Jan. 13, 2009) (finding substantial need where "the sought-after information is not available elsewhere"). Charter cannot know the extent to which ███████████████████████████████████████████████████████ ███████████████████████████████████████. This information goes directly to Charter's ability to challenge Plaintiffs' direct infringement evidence.

In addition, given Plaintiffs' production of two of the categories of information ████ ███████████████████████████████████████████████████████████████████████████

Plaintiffs are improperly attempting to wield the favorable results of the MarkMonitor work-product as a sword while utilizing the work product doctrine as a shield to protect the unfavorable results. That is impermissible. See Frontier Ref., Inc. v. Gorman-Rupp Co., 136 F.3d 695, 704 (10th Cir. 1998) ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.") (citing Moore's Federal Practice § 26.70[5][b] (Daniel R. Coquillette et al. eds., 3d ed. 1997), § 26.70[6][c])).

Moreover, by selectively producing the MarkMonitor and Audible Magic evidence Plaintiffs deem helpful to this case but withholding the evidence they deem unhelpful, Plaintiffs have waived any work product protection they might have had by putting MarkMonitor's and Audible Magic's respective 2016 efforts directly at issue to Plaintiffs' direct infringement case, necessitating its production. See Seneca Ins. Co. v. W. Claims, Inc., 774 F.3d 1272, 1278 (10th Cir. 2014); Larson v. One Beacon Ins. Co., No. 12-CV-03150-MSK-KLM, 2013 WL 2477150, at *11 (D. Colo. June 10, 2013) (finding implied waiver where "1) the assertion of privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the privileged information at issue by making it relevant to the case; and (3) application of the privilege denies the opposing party access to information vital to his defense").

**Charter Communications, Inc.'s Privilege Log Dispute Chart (July 13, 2020)**

| | | |
|---|---|---|
| | | All of the foregoing justifications for production apply not only to the logged Hash Report, but also to the other documents related to  In addition, a further waiver arises because these materials were never logged by Plaintiffs, so no privilege has been asserted. During meet and confer, Plaintiffs contended that they were under no obligation to undertake to log these documents because they are "classic" work product.  But they assert the same with respect to the logged Hash Report and they had previously asserted the same with the since produced PCAPs and the since produced ▇▇▇▇▇▇▇▇.  What really happened is that Plaintiffs, fully aware that they were producing or logging some but not all of the documents relating to the work done by MarkMonitor in early 2016, unilaterally decided that they were not going to disclose the existence of this material.  The work product doctrine is not a license to conceal evidence, and Charter respectfully submits that Plaintiffs are not allowed to use it for that purpose.<br><br>The missing documents should be produced.  Failing that, they should be logged and reviewed by the Special Master *in camera* for decision regarding the same. |