## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al*.,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>*Defendant*. | Case No. 19-cv-00874-RBJ-MEH<br><br>**CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY** |

As Special Master Rodriguez recognized in the context of the upcoming deposition of RIAA, the 2016 Project that MarkMonitor conducted goes "directly to the evidence of direct infringement that is at the heart of this case." Dkt. 438 ("Mot."), Ex. E at 28:6-7. Judge Jackson further endorsed the centrality of this evidence, explaining that Plaintiffs "can't commission MarkMonitor to do the investigatory work and expect to have MarkMonitor present its work and work product at trial without exposing all of MarkMonitor's work on this case to scrutiny." Dkt. 436 at 8. Yet RIAA continues to withhold its communications with MarkMonitor about its 2016 efforts to re-create evidence of purported direct infringement that it failed to retain in 2012-2015, even though MarkMonitor is a fact witness that will testify about that very same work at trial.

As the overwhelming weight of authority makes clear, RIAA's use of MarkMonitor to conduct a fact-gathering investigation does not create an attorney-client relationship between the two, nor are their communications protected as work product. And given Charter's inability to obtain such responsive materials directly from those parties, O+Z should be compelled to produce and log its external communications about the same 2016 Project.

1

I.    **RIAA FAILS TO DEMONSTRATE THAT ITS COMMUNICATIONS WITH THIRD-PARTY MARKMONITOR ARE PRIVILEGED**

      A.    **<u>RIAA Does Not Demonstrate That Its Communications With MarkMonitor Are Protected By Attorney-Client Privilege</u>**

As RIAA concedes, "no one contends that there is an attorney-client relationship between RIAA and MarkMonitor." Opp. 6. Instead, RIAA relies entirely on the position that its communications with third-party MarkMonitor are protected by attorney-client privilege because MarkMonitor supposedly was retained for the purpose of providing legal advice. Opp. 6-11. RIAA is incorrect that this self-serving label creates an attorney-client relationship that allows it to shield the communications. MarkMonitor is a fact witness that was re-engaged in 2016 to re-create evidence of alleged direct infringement in the form of files it previously failed to retain as part of a similar effort in 2011. Mot. 2. This evidence provides the foundation for Plaintiffs' direct infringement case, and MarkMonitor will provide testimony at trial about the supposed *bona fides* of this evidence. The RIAA-MarkMonitor relationship is not protected by attorney-client privilege.

*First*, as Charter explained in its Motion (Mot. 8-9), MarkMonitor does not fall within the scope of *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), which permits the privilege to shield communications between counsel and a third party in certain narrow situations, such as where the third party acts as a "translator or interpreter of client communications," *United States v. Ackert*, 169 F.3d 136, 139-40 (2d. Cir. 1999) (clarifying *Kovel*); *see also United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("the extension [of *Kovel*] has always been a cabined one, and [t]o that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client") (quotations omitted).

In response, RIAA posits that "Charter reads the *Kovel* doctrine too narrowly."  Opp. 9. But none of the cases that RIAA cites (Opp. 7-9) involve counsel hiring a third party to conduct a fact-based exercise (such as downloading files from the internet) in aid of its case; if that were enough, *anyone* hired by an attorney to gather evidence would fall within the privilege.  Thus, courts recognize that counsel's communications with a third party, made for the purpose of collecting information not obtainable directly from the client, are not protected by attorney-client privilege.  For example, in *In re Chevron Corp.*, 2010 WL 9545704 (D.N.M. Sept. 13, 2010), the court applied Tenth Circuit precedent to hold that an attorney's communications with third-party consultants hired to provide "scientific and technical advice in connection with the … Plaintiffs' lawsuit" were not protected by attorney-client privilege.  *Id.* at *2-3.  As the court explained:

> [The third parties] were not hired to translate or interpret information given to [the attorney] by his clients, but instead to gather factual data which was obtained from sources other than the clients and to give the attorney information he otherwise would not have had.  Thus, the communications between [the attorney] and the [third parties] constitute third-party communications which, under Tenth Circuit precedent, are not protected by the attorney-client privilege

*Id.* at *3 (citing cases, including *Ackert*).[1]  So too here, MarkMonitor was engaged to gather external factual data: to scour the public internet and download files that supposedly matched the files that MarkMonitor had allegedly found years earlier.  RIAA concedes that this was the extent

---

[1]   *See also, e.g.*, *Merck Eprova AG v. Gnosis S.p.A.*, 2010 WL 3835149, at *2 (S.D.N.Y. Sept. 24, 2010) ("when an attorney seeks out a third party to provide information rather than to act as a translator for client communications, the communications between the attorney and the third party are not privileged"); *Narayanan v. Sutherland Glob. Holdings Inc.*, 285 F. Supp. 3d 604, 613 (W.D.N.Y. 2018) (no privilege where consultant "provided factual information to [counsel] that [the client] did not itself possess" even though "it may have been helpful or convenient to [counsel] to speak directly to [the consultant]"); *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994) ("There are few, if any, conceivable circumstances where a [third party] employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client.").

of the engagement.   *See* Marks Decl. [449-1] ¶ 4 (RIAA engaged MarkMonitor "to detect infringements occurring on Charter's network"), ███████████████████████████████ ███████████████.   RIAA offers no argument that MarkMonitor was tasked with anything other than looking for and reporting factual information.   Thus, the RIAA-MarkMonitor relationship cannot be protected by privilege.

RIAA's cited cases from this district (Opp. 8) confirm that its communications with MarkMonitor do not fall within the *Kovel* exception: in fact, the only case that has applied the *Kovel* doctrine extends the privilege to an *accountant*, the same exception recognized in *Kovel*. *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 629 (D. Colo. 1998).[2]   RIAA likewise ignores this Court's previous rulings that the privilege is unlikely to attach in scenarios such as this one, that: (1) "involve counsel for Plaintiffs and the third party," but "not the Plaintiffs themselves"; and (2) the third party "collect[ed] information not obtainable directly from" the party claiming the privilege. *Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3923092, at *7 (D. Colo. Oct. 1, 2010) (Hegarty, M.J.).

To be sure, there are circumstances where communications between an attorney and third-party investigator *might* be privileged, such as where the investigator gathers information obtainable directly from the client.  For example, in *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58 (S.D.N.Y. 2010)—heavily relied upon by RIAA (Opp. 8-9)—Gucci's in-house counsel worked with an employee in a Gucci affiliate company, which was technically a third party. *Id.* at 62-63. In gathering evidence for the litigation, the employee was "deputized to gather information *from*

---

[2]   *Coorstek, Inc. v. Reiber*, 2010 WL 1332845 (D. Colo. Apr. 5, 2010) (cited at Opp. 8) did not rely on *Kovel*, but rather the "functional equivalent" doctrine. *Id.* at *5-6.  RIAA does not argue, and cannot show, that MarkMonitor was a de facto employee of RIAA. *See* Mot. 10 n.4.

*Gucci employees* to assist in the litigation." *Id.* at 71 (emphasis added) (citing cases where agent collects employee statements).[3]  In contrast, MarkMonitor is not an entity related to RIAA, it did not gather information from RIAA employees, and was not "deputized" to act on RIAA's behalf.

*Second*, RIAA's self-serving description of the engagement as "for the purpose of providing Plaintiffs with legal advice" (Opp. 9-10) does not blanket these communications as privileged.  Nothing in the Statement of Work ("SOW") mentions that the purpose of the engagement is for RIAA to "provid[e] legal advice" or to assist RIAA in providing legal advice. In any event, "the privilege does not extend to communications where the third party merely provides additional 'information [the client] did not have' for the lawyer to 'advise his client ... about the legal and financial implications' of an action." *Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 19 (2d Cir. 2020) (quoting *Ackert*, 169 F.3d at 138-140).  RIAA describes no "legal advice" that *MarkMonitor* provided, nor has MarkMonitor submitted an affidavit describing any "legal advice" it supposedly gave RIAA.  While RIAA may use the information to inform its legal strategy, that is not enough.[4]

---

[3]    Similarly, in *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 463 (N.D. Ill. 1990) (cited at Opp. 8), questionnaires issued by EEOC investigators to prospective claimants were privileged because "[o]nly those who desired to be represented were asked to complete the questionnaire," so "[t]he communication was one between a legal representative and de facto clients," and the EEOC investigator "merely "hand[ed] [an] administrative task of sending out a questionnaire."

[4]    RIAA quotes *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) to argue that communications "made in confidence 'for the purpose of facilitating the rendition of legal services to the client'" are privileged.  Opp. 9.  But *In re Copper* found privilege where the third-party PR company was "the functional equivalent of a Sumitomo employee" because it was "essentially, incorporated into Sumitomo's staff to perform a corporate function." *Id.*  RIAA does not argue that MarkMonitor is the functional equivalent of a RIAA employee. *See supra* n.2.

*Third*, contrary to RIAA's assertion (Opp. 10-11), MarkMonitor's status as a fact witness is highly relevant to the determination of whether the communications are privileged.  RIAA cites no authority that a party may hire a fact witness as a "consultant" to shield its communications with that witness about the same subject matter the witness will testify about at trial.  Neither Judge Jackson's April 8, 2021 Order nor the Court's comments at the February 23, 2021 hearing accepted that position.[5]  And the fact that ███████████████████████████████

█████████████████████████ (Opp. 9-10) does not change that conclusion.  If anything, RIAA's admission that the █████████████████████████████████

█ highlights that these communications were *not* uniquely "in anticipation of litigation," but instead related to the notices that RIAA sent to Charter that form the evidentiary basis of Plaintiffs' direct infringement case.

*Fourth*, RIAA offers no explanation for why it retroactively asserted new last-minute claims of attorney-client privilege for 13 entries four months after serving the original privilege log, nor does it dispute that such amendments should be viewed with skepticism.  Mot. 8 n.3.

### B.   RIAA Does Not Demonstrate That Its Communications With MarkMonitor Are Protected As Work Product

As Judge Jackson recognized in overruling Plaintiffs' same work product arguments, "[P]laintiffs can't have it both ways – they can't commission MarkMonitor to do the investigatory work and expect to have MarkMonitor present its work and work product at trial without exposing

---

[5]   Although the Court recognized that a fact witness might have an attorney-client relationship with counsel (Opp. 11), the next (uncited) sentences display the Court's doubt that RIAA's hired fact-witness could be protected by such a privilege.  *See* Dkt. 448-5 at 55:12-15 ("MR. ROSENTHAL:  … If they hired these fact witnesses, why is there privilege relating to that?  THE COURT:  I don't know.  We'll see.  It's a good question.  It's a good question.").

all of MarkMonitor's work on this case to scrutiny." Dkt. 436 at 8. Yet that is what RIAA now asks, invoking MarkMonitor's 2016 investigation upon which Plaintiffs will rely, but refusing to "expos[e] all of MarkMonitor's work" to scrutiny. *Id.* The label "in anticipation of litigation" was no shield to the Hash Report, and is not a shield to communications *about* the same Project here.

*First*, RIAA mischaracterizes Charter's arguments on waiver (which apply to both RIAA's attorney-client and work product claims). *See* Opp. 14-15. Charter does not argue that Judge Jackson ordered that any privilege claims concerning the Hash Report are waived. Rather, Charter argues that the underlying reasoning that compelled the production of the Hash Report applies with equal force to RIAA's and MarkMonitor's communications about the 2016 Project. As Judge Jackson held, "by choosing to have "MarkMonitor present its work and work product at trial," Plaintiffs must "expos[e] all of MarkMonitor's work on this case to scrutiny."[6] Dkt. 436 at 8. The 2016 Project was commissioned to generate evidence for Plaintiffs' case-in-chief at trial, and communications *about* the Project are therefore not entitled to protection. *See Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3923092, at*10 (D. Colo. Oct. 1, 2010) (Hegarty, M.J.) ("fundamental fairness precludes Plaintiffs from using *communications* concerning Stratus and Mr. Cabrera as a shield from production after wielding the *conclusions* from disclosure of these communications as a multi-billion dollar damages sword") (emphasis added). Because Plaintiffs intend to rely on MarkMonitor's testimony about the 2016 Project, Plaintiffs have waived work product protection over communications on that work.

---

[6]   RIAA also mischaracterize previous rulings (Opp. 14 n.5) as rejecting a similar theory of waiver. *See, e.g.*, Dkt. 332 at 1 ("as I stated previously (and a point that Plaintiffs' counsel concedes), Plaintiffs cannot make affirmative use of a portion of the results of the Hash Report and shield the remainder as work product").

*Second*, RIAA has not shown that work-product protection even applies to these communications in the first place.  This Court and Special Master Rodriguez already found the claim of work product to be "suspect" and "dubious."  (Mot. 11); *see* Dkt. 438-2 at 110:25-111:15.  That Judge Jackson suggested that "work product protection may apply" (Opp. 11) to specific aspects of the Hash Report "that provide the reason for counsel's selection of the particular hashes for further investigation and supplementation" (Dkt. 436 at 9)—does not mean that work product protects all discussions about the Project.  *See, e.g.*, *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 436 (W.D.N.Y. 1997) (rejecting work product claim and ruling that party must produce "data or other purely factual information," as well as "any 'statements .... mental impressions, [or] personal beliefs ...' expressed in handwritten notes, drafts, memoranda or other tangible materials") (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  RIAA's representation that *every* communication at issue "reveal[s] counsel's mental impressions, opinions and legal theories concerning the investigation and how Plaintiffs plan to use the results in litigation" (Opp. 12) is the type of "mere allegation" that is "insufficient" for the application of the work-product doctrine.  *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (cited in Mot. 6).  Further, RIAA admits these communications include factual work product.  *See* Opp. 12. ("RIAA's, O+Z's, and MarkMonitor's communications are not just MarkMonitor's *factual work product* ….") (emphasis added).

*Third*, RIAA is wrong in arguing that there is no substantial need for the communications because Charter has the Hash Report and "does not explain how such communications add anything significant to the Hash Report that Charter already has."  (Opp. 13).  In addition to the fact that Charter cannot explain what it cannot see, there is good reason to expect that these

communications may well establish "the need for such a project" and "deficiencies" in "evidence of direct infringement that is *at the heart of this case*," in the words of Special Master Rodriguez (Mot., Ex. E at 28:6-7). These communications are likely to inform whether MarkMonitor did what it was contracted to do in the context of Plaintiffs' collection of evidence of direct infringement. This information is not apparent on the face of the Hash Report itself, nor from general documents about how MarkMonitor's system works. And RIAA's suggestion that Charter "obtain the information it seeks" from depositions of MarkMonitor (Opp. 13) presumes both that: (1) these witnesses have knowledge of the communications; and (2) can testify about those communications without violating the purported work product protections.

## II.   O+Z DOES NOT DISPUTE THAT IT POSSESSES RESPONSIVE DOCUMENTS ABOUT THE 2016 PROJECT

Finally, O+Z—as ██████ outside counsel for both Plaintiffs and RIAA—should produce external communications relating to the 2016 Project that Charter first sought in good faith from other sources but could not obtain. O+Z does not dispute that: (1) it coordinated the 2016 Project (*see* Mot. 13; *see also* Oppenheim Decl. [Dkt. 449-2] at ¶ 5);[7] (2) such documents are responsive to Charter's discovery requests; (3) Charter first sought these documents from other sources, but could not obtain them (*see* Mot. 14-15); and (4) O+Z has such documents in its possession, custody or control. None of O+Z's arguments justifies withholding these responsive documents.

*First*, while O+Z argues that Charter has received *some* communications "involving RIAA, Plaintiffs, or Audible Magic" (Opp. 18), it does not dispute that there are multiple material deficiencies in *MarkMonitor's* production because ████████████████████████████

---

[7]    That Charter did not subpoena O+Z (Opp. Cover n.1) is of no moment, as O+Z ██████████
████████████ and thus documents that O+Z possesses in such a capacity are discoverable.

████████████████████████████████████████████████████████████████

from before that date.  Mot. 14.[8]  O+Z thus concedes that, at minimum, any communications between O+Z and MarkMonitor relating to the 2016 Project are proper subjects of discovery from O+Z—there is nowhere else to get them, due to MarkMonitor's untimely litigation hold and significant evidentiary loss.

*Second*, O+Z errs in characterizing Charter's motion for O+Z to produce or log its external correspondence related to the 2016 Project through March 23, 2019 as "overbroad" and disregarding "numerous discovery orders."  Opp. 19.  The scope of this request mirrors the Special Master's recent order—to which RIAA did *not* object—that RIAA prepare a 30(b)(6) witness concerning communications related to the 2016 Project, "and its implementation and results … through March 23, 2019."  Ex. H (3/28/21 Hr'g at 39:17-24).  O+Z cannot complain about the scope of the *same* kinds of communications their client's 30(b)(6) witness must testify about.[9]

*Third*, neither this Court nor the Special Master have "repeatedly denied" this request, as O+Z represents.  Opp. 15.  As Charter has explained (Mot. 13-14), the Special Master previously directed Charter to first seek such documents from Plaintiffs and other entities, leaving for another

---

[8]   RIAA's production is likewise in question—including its failure to log the February 29, 2016 copy of the Hash Report.  While O+Z points to a self-serving objection to "duplicative discovery" (Mot. 18), this ignores that Plaintiffs, RIAA and MarkMonitor already routinely logged and/or produced "duplicative" documents.  Moreover, Charter is entitled to know what *RIAA* has produced, so that it can discern what is being withheld.

[9]   While Plaintiffs claim that RIAA has no documents related to the 2016 Project beyond May 2016 (*see* Opp. 19), MarkMonitor's own privilege log suggests otherwise—for example, it logged documents ███████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

day how to proceed should such documents not be produced.[10]  That is exactly what Charter did. And the Court's declination in one instance to "review *in camera* a privileged email chain involving O+Z" (Opp. 16) had nothing to do with whether O+Z should produce or log documents in its possession relating to the 2016 Project; rather, the Court chose not to review a last-minute log entry from RIAA that contradicted its earlier statements about the Hash Report.

 *Fourth*, contrary to O+Z's representations (Opp. 16-17), the parties' agreement (common in litigation) to not log post-claim-period communications is irrelevant.  Charter is not asking *Plaintiffs* to log their communications with O+Z; it is asking for *O+Z* to produce or log its external communications based on the fact that discovery has revealed that the third parties it communicated with, who would have been required to produce or log such documents, failed to retain their copies.  In such circumstances, where responsive documents are otherwise missing, O+Z cannot shield them simply because it is the only entity that kept copies.

## <u>CONCLUSION</u>

 Charter's motion to compel should be granted in full.

Dated: April 26, 2021      Respectfully submitted,

Jennifer A. Golinveaux      */s/ Andrew H. Schapiro*
WINSTON & STRAWN LLP     Andrew H. Schapiro
101 California Street, 35th Floor    Allison Huebert
San Francisco, CA 94111-5840    QUINN EMANUEL URQUHART &
(415) 591-1506 (telephone)     SULLIVAN, LLP
(415) 591-1400 (facsimile)     191 N. Wacker Drive, Suite 2700
E-mail: jgolinveaux@winston.com   Chicago, IL 60606
            (312) 705-7400 (telephone)
Michael S. Elkin        (312) 705-7401 (facsimile)
WINSTON & STRAWN LLP     E-mail: andrewschapiro@quinnemanuel.com
200 Park Avenue       E-mail: allisonhuebert@quinnemanuel.com
New York, NY 10166

---

[10] *See, e.g.*, Dkt. 181 at 20-21 ("Plaintiffs are ordered to produce documents ….  Plaintiffs are not ordered to add outside counsel as a custodian *at this time*."); *cf.* Dkt. 230 at 28 ("I do not interpret Charter's request to require that Plaintiffs search custodial files of outside counsel.").

(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

*Counsel for Defendant*
*Charter Communications, Inc.*

Charles K. Verhoeven
David Eiseman
Linda Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2021, I caused the foregoing document and all supporting

materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system,

which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro