UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant

Case No. 19-cv-00874-RBJ-MEH

### RIAA'S AND PLAINTIFFS' SURREPLY IN OPPOSITION TO CHARTER COMMUNICATIONS, INC.'S MOTION TO COMPEL DISCOVERY

Charter's Reply in Support of its Motion to Compel production of privileged documents (ECF 456), and its positions taken during the April 29, 2021 hearing reveal a multitude of flaws in Charter's Motion. RIAA and Plaintiffs briefly address the most glaring flaws below, as the Court authorized during the April 29 hearing.

***First***, Charter affirmatively represented to this Court during the course of its argument seeking the Hash Report that it was *not* seeking production of any communications—including "as to what [counsel] should have MarkMonitor do." Charter told this Court it was only seeking a single, discrete report needed for a specific purpose:

> THE COURT: Okay, but you believe you are ***not asking for anything any attorney actually wrote***. The only thing that would be revealing would be the --if someone were to look at the totality of the documents we are talking about, that would potentially reveal just an ***attorney's thought processes as to what they should have Mark Monitor do***?
>
> MR. SCHAPIRO: ***Exactly. I want to be a hundred percent clear about that. You are exactly right, Your Honor. We are not asking here for any communications*** that they may have had or meetings or documents that ultimately led them to choose these files versus other files, anything like that. ***We just want the list***.
> . . .

1

> MR. SCHAPIRO: But I agree, we are ***not*** looking for ***communications or guiding the investigation***, et cetera. And to the extent that there is any lack of clarity on that, I will stand on what I'm saying here.

Ex. 11 at 34:21-35:8; 38:17-20 (Dec. 18, 2020 Hr'g Tr.) (emphasis added).  Charter was asked this question and provided this answer because its motion papers sought something broader than just the Hash Report.  Charter thus made a specific tactical choice to waive anything beyond the Hash Report, but now seeks to be excused from the consequences of that choice.  Your Honor understood that Charter had expressly foregone exactly what it now seeks.

> THE COURT: I think, you know, one of the things Andrew [Schapiro] said was: We're not looking for communications or guiding the investigation.  Well, the only way to guide the investigation would be to look at documents that were actually between MarkMonitor and somebody else, ***because "guiding the investigation" means instructions given to Mark Monitor.  So I think the documents we're talking about seems to fall squarely within that***.

Ex. 12 at 19:4-11 (Apr. 29, 2021 Hr'g Tr.).  Whether through principles of waiver or the Court's inherent authority to control its docket and discovery for efficiency and fairness, Charter must be bound by its representation upon which the Court relied in resolving these issues previously.  The Court should not simply set those representations aside, as though they were never made.

    ***Second***, the distinction Charter seeks to draw between attorney opinion and facts is not relevant to the attorney-client privilege analysis.  The attorney-client privilege protects *communications*, and, unlike work-product protection, it cannot be overcome based on whether the privileged communications comprise attorney opinions or facts.  And while a showing of substantial need may justify production of factual work product in some circumstances, even substantial need cannot overcome attorney-client privilege.

    ***Third***, Charter's extremely limited interpretation of the *Kovel* doctrine is at odds with the case law and makes no practical sense.  Charter argues that *Kovel* applies only where the "third party acts as a translator or interpreter of client communications."  Reply at 2 (internal quotations

omitted). But the plethora of cases applying *Kovel* in much broader circumstances bely Charter's overly narrow view. *See* Opp. at 7-8 (citing authority extending privilege to "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences" (internal quotation marks omitted)). And Charter's cramped interpretation does not square with the reality of the modern technical age in which attorneys need to rely on technical or other specialized consultants all the time.

*Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58 (S.D.N.Y. 2010) proves these points. *Gucci* did not find that the third-party investigator there was acting only as a "translator or interpreter." Thus, under Charter's flawed interpretation of *Kovel*, no communications with the third-party investigator could have been privileged. Rejecting Charter's theory, *Gucci* held that "the standard is whether the third-party agent is supervised directly by an attorney and whether the communications were intended to remain confidential." *Id.* at 72; *see also In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003) (holding communications with third-party consultant privileged because "the ability of lawyers to perform some of their most fundamental client functions . . . would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' [third-party consultants]").

Recognizing that *Gucci* is fatal to its argument, Charter attempts to distinguish *Gucci* on the ground that the third-party investigator collected evidence from the client. But the *Gucci* court did not identify that as a basis for distinction, nor does Charter show how this distinction has any legal relevance.

Charter's reliance on this Court's decision in *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-CV-00047-MSK-MEH, 2010 WL 3923092 (D. Colo. Oct. 1, 2010), is misplaced. The

3

Court is well aware that *Chevron* involved vastly different facts and issues. *Chevron* involved communications between counsel and a consultant, some of which were disclosed to a court-appointed, purportedly neutral expert in a related Ecuadorian litigation, where the purportedly neutral expert was credibly accused of plagiarizing a report drafted by counsel's consultant. *Id.* at *1. *Chevron* recognized that "the penultimate question is whether the third-party communication was made in confidence for the purpose of obtaining legal advice from the lawyer." *Id.* at *7 (internal quotation marks omitted). However, unlike here, some of the communications in *Chevron* were not kept confidential, but instead were disclosed to the purportedly neutral expert. And there was no argument that the *purpose* of the communications at issue was to assist counsel in providing legal advice to its client. Further, because the communications spoke directly to corruption and the integrity of the litigation process—not at issue here—"fundamental fairness" required their disclosure. *Id.* at *10.

*Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 19 (2d Cir. 2020), also does not support Charter's position here. There, relying on *Kovel*, the Second Circuit—in a non-precedential summary order—*upheld* a privilege assertion over communications with a third-party consultant where the third-party consultant "was essential in interpreting large quantities of data . . . so that [counsel] could tailor its legal advice." *Id.* (internal quotation marks omitted). While Plaintiffs do not doubt that the privilege applies to the interpreter function, that is not a limit on scope of the privilege under *Kovel*.[1]

---

[1] While Charter cites several cases declining to extend the privilege to communications with third-party consultants, Reply at 3 n.1, **none** of those cases involve third-parties specifically retained by counsel to assist counsel in providing legal advice. For example, the consultants at issue in *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp.156, 161 (E.D.N.Y. 1994), were retained by the client to conduct an environmental study of a contamination site and draft a remediation plan for submission to the New York State Department of Environmental Conservation, not retained by litigation counsel to assist in providing legal advice.

*Fourth*, with respect to work product, while Charter may have shown a substantial need for the Hash Report, it has not shown (nor can it show) a substantial need for drafts of the Hash Report or the communications around its creation. Charter fails to address that the substantial need its papers identify—"***the need*** for such a project and deficiencies in evidence of direct infringement," Reply at 9 (internal quotation marks omitted) (emphasis added)—are precisely the attorney opinions to which Charter admitted at oral argument it is not entitled. *See* Ex. 12 at 24:8-10 (Apr. 29, 2021 Hr'g Tr.) (Charter's counsel admitting,"[i]f it's the why, or if it's the attorney saying, Uh-oh, this is going to be a problem for our case or ***we need that, then we shouldn't get it***") (emphasis added). Instead, at oral argument, Charter claimed to seek only "the what, when and how." *Id.* at 24:6-7. But Charter can depose MarkMonitor about "the what, when and how" and does not need protected communications with counsel for this purpose. Charter has served a 30(b)(6) notice on MarkMonitor that includes topics on the 2016 download project, obviating its concern that MarkMonitor's witnesses will not be prepared to testify.

*Fifth*, Charter's request that outside litigation counsel Oppenheim + Zebrak ("O+Z") should have to log their communications violates an explicit agreement of the parties. At the beginning of discovery, the parties agreed that "the parties need not log privileged and/or protected material dated after the claim period, or any documents authored by outside counsel." *See* Opp. at 16 and Exs. 6-7. Charter recognizes that this agreement is binding, so it now argues that Charter seeks documents from O+Z, not Plaintiffs. But the agreement between the parties not to log counsel's communications would be entirely hollow if it could be avoided by simply saying that the request is directed to counsel, not the parties.

*Sixth*, Charter has not shown that O+Z is a likely source of relevant non-privileged information, nor that such discovery (particularly for three years beyond the Claim Period) is

5

proportional as Rule 26(b)(1) requires. Charter claims only that it cannot obtain the documents it seeks from other sources and that O+Z may have them. But that is not the standard under Rule 26. Requiring counsel to search its files and log documents would be immensely burdensome and would distract counsel from actually litigating the case, an especially pressing concern in light of the imminent close of discovery and the many scheduled depositions in the next four weeks. Charter cannot show its request is proportional in light of that burden. Charter also has no answer for why three years of such discovery could possibly be warranted when it knows—and does not dispute—that the hash download project concluded in early 2016. Nor should the Court give credence to Charter's claim that Charter merely wants O+Z to *log*, not produce, these documents. If *all* Charter seeks is a log, then there is no non-privileged matter at issue and no basis for discovery. But, of course, Charter wants a log so it can move to compel production of the documents themselves, thereby tying up counsel and the Court in further distractions at a critical time. As explained during the April 29 hearing, at some point rationality and proportionality must apply and resolution must mean something. Charter has moved multiple times to compel production and a privilege log from O+Z. Each time, the requests were denied, and Charter never appealed.

**Seventh**, even granting Charter's own argument, Charter has shown no basis for O+Z to log any documents other than those exclusively with MarkMonitor. Charter's Reply implicitly concedes that the only documents Charter cannot obtain from other sources—the basis for Charter's request—are MarkMonitor documents. *See* Reply at 9-10 (discussing MarkMonitor only). Charter does not even argue that RIAA, Plaintiffs, or Audible Magic failed to preserve any communications, and it conceded at oral argument that it longer seeks an O+Z log of communications with Plaintiffs. Ex. 12 at 45:23-25 (Apr. 29, 2021 Hr'g. Tr.) ("[W]e're not

6

asking that communications between O&Z and Sony, or O&Z and Universal be logged."). Even if Charter had shown a basis to force O+Z to log documents (and it has not), that basis covers only communications exclusively between O+Z and MarkMonitor through the Claim Period.

*Eighth*, Charter's briefing entirely ignores that seven of the documents Charter seeks have absolutely nothing to do with the 2016 download project. *See* Opp. at 5 (identifying log entries). Charter has shown no basis at all to require production of these documents.

## CONCLUSION

For the reasons stated above, Plaintiffs and RIAA respectfully request that the Court deny Charter's Motion to Compel Production of Discovery in its entirety.

| | |
|---|---|
| Dated: May 2, 2021 | Respectfully submitted, |
| | */s/ Matthew J. Oppenheim* |
| Jonathan M. Sperling | Matthew J. Oppenheim |
| COVINGTON & BURLING LLP | Jeffrey M. Gould |
| The New York Times Building | OPPENHEIM + ZEBRAK, LLP |
| 620 Eighth Avenue | 4530 Wisconsin Ave. NW, 5th Fl. |
| New York, NY 10018-1405 | Washington, DC 20016 |
| Telephone: (212) 841-1000 | Telephone: (202) 621-9027 |
| jsperling@cov.com | matt@oandzlaw.com |
| | jeff@oandzlaw.com |
| Neema T. Sahni | |
| COVINGTON & BURLING LLP | Janette L. Ferguson, Esq. |
| 1999 Avenue of the Stars, Ste. 3500 | WILLIAMS WEESE PEPPLE & FERGUSON |
| Los Angeles, CA 90067-4643 | 1801 California Street, Suite 3400 |
| Telephone: (424) 332-4800 | Denver, CO 80202 |
| mkamin@cov.com | Telephone: (303) 861-2828 |
| nsahni@cov.com | jferguson@williamsweese.com |
| | *Attorneys for Plaintiffs* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 2, 2021 I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Matthew J. Oppenheim*
