# EXHIBIT 11

1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     Case No. 19-cv-874-RBJ-MEH
3    _____

4    WARNER RECORDS, INC., et al.,

5         Plaintiffs,

6    vs.

7    CHARTER COMMUNICATIONS, INC.,

8         Defendant.
     _____
9

10         Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 10:01 a.m., December 18,

13   2020, in the United States Courthouse, Denver, Colorado.

14   _____

15   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN

16   TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                       APPEARANCES

19         JONATHAN M. SPERLING, MATTHEW J. OPPENHEIMER, NEEMA

20   SAHNI and JEFF GOULD, Attorneys at Law, appearing for the

21   Plaintiffs.

22
     _____
23

24                      MOTION HEARING

25
```

34

1    sense that they did re-create customers sharing and some they

2    didn't?

3            MR. SCHAPIRO:  Correct.

4            THE COURT:  Okay.  And then is it your argument and

5    view that plaintiff is claiming the compilation is the

6    attorney opinion, but there's no other opinions that would

7    exist in any of the documents you are seeking?  In other

8    words, it's selection --

9            MR. SCHAPIRO:  I mean, my understanding of what

10   they are saying -- I mean, that they may articulate it

11   differently -- is that we might somehow be able to divine

12   from the list of, you know, which ones they chose to send out

13   for search and which they didn't, something about their

14   thought process that would somehow be relevant to us, but we

15   are not interested in that and I don't see how you'd be able

16   to derive that from just seeing, here's a list and here are

17   the results of it.  And if somehow there's some scintilla of

18   that in there, it's by far outweighed by the actual purpose

19   for which it's sought, which is to show just what was sought

20   and what came back, the pure fact.

21           ==THE COURT:  Okay, but you believe you are not==

22   ==asking for anything any attorney actually wrote.  The only==

23   ==thing that would be revealing would be the== -- if someone were

24   to look at the totality of the documents we are talking

25   about, that would potentially reveal just an attorney's

```
1    thought processes as to what they should have Mark Monitor
2    do?
3            MR. SCHAPIRO:  Exactly.  I want to be a hundred
4    percent clear about that.  You are exactly right, Your Honor.
5    We are not asking here for any communications that they may
6    have had or meetings or documents that ultimately led them to
7    choose these files versus other files, anything like that.
8    We just want the list.
9            THE COURT:  Okay.  Now --
10           MR. SCHAPIRO:  And I think that, you know, from
11   that, we could reverse engineer something about their thought
12   processes.
13           THE COURT:  Okay.  And I'm going to suggest
14   something a little bit unusual, but it's something I would do
15   probably if everybody were in here, live in court.
16   Obviously, I don't want the plaintiff to have to, on the
17   record in the hearing of defense counsel, articulate the
18   opinion work product that they are trying to protect and they
19   say they are trying to protect it, but I don't have a clear
20   understanding of what that would be other than what we are
21   all talking about right now.  And if that's it, that it's
22   just their -- so Jeff, this question is to you.
23           If it's just that producing these documents would
24   reveal attorney thought processes as to what to submit to
25   Mark Monitor, then I don't think I need any further
```

38

```
1                THE COURT:  Yeah, I wasn't that focused on that
2    part of what you wrote to me in the reply.  So, yeah, I --
3    Mr. Schapiro, you can speak for yourself, but I think that's
4    how I saw it.
5                MR. SCHAPIRO:  I think that's right, although not
6    having seen the hash report, our understanding is that part
7    of that, or at least what we are speaking of when we are
8    talking about the hash report, is there's a list of the
9    Audible Magic results.  So, remember, Mark Monitor is out
10   there searching the web, Audible Magic is theoretically
11   matching what's found there against works in suit.  So there
12   was a list of results from Audible Magic and we think that is
13   encompassed in this and that certainly is not anyone's work
14   product either.  It's just the result of the search.
15               I don't know if that's technically part of this
16   actual spreadsheet or whether it's an attachment or something
17   like that.  But I agree, we are not looking for
18   communications or guiding the investigation, et cetera.  And
19   to the extent that there is any lack of clarity on that, I
20   will stand on what I'm saying here
21               THE COURT:  Okay.  So again, let's sign back in at
22   about five after 11:00, Denver time.
23               Do we have the ability to turn the record off?
24               COURTROOM DEPUTY:  Yes.
25               THE COURT:  Okay.  So we are going to turn the
```

100

1                TRANSCRIBER'S CERTIFICATION

2     I certify that the foregoing is a correct transcript to the

3     best of my ability to hear and understand the audio recording

4     and based on the quality of the audio recording from the

5     above-entitled matter.

6

7     /s/ Dyann Labo                         December 30, 2020

8     Signature of Transcriber                    Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25