**quinn emanuel** trial lawyers | chicago

191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606-1881 | TEL (312) 705-7400 FAX (312) 705-7401

WRITER'S DIRECT DIAL NO.
**(312) 705-7403**

WRITER'S EMAIL ADDRESS
**andrewschapiro@quinnemanuel.com**

July 14, 2021

<u>VIA ECF AND EMAIL</u>

Magistrate Judge Michael Hegarty
Alfred A. Arraj
United States Courthouse A542
Courtroom A501
Hegarty_chambers@cod.uscourts.gov

Re:   <u>Warner Records et al. v. Charter Communications</u>, Case No. 19-cv-00874-RBJ-MEH

Dear Judge Hegarty:

We write on behalf of Charter Communications, Inc. ("Charter") in the above-captioned action. Pursuant to the Court's July 9, 2021 instruction and in connection with the forthcoming hearing on July 15, 2021, Charter respectfully submits this letter to raise a number of outstanding disputes related to Plaintiffs' discovery responses and document production that remain unresolved despite Charter's good faith efforts to confer with Plaintiffs.

**I.   <u>RFP 23</u>**

Charter respectfully requests the Court to compel Plaintiffs to provide an explanation for the deficiencies in their production in response to RFP 23, which requests documents that reference BitTorrent or other types of peer-to-peer file sharing technologies as they relate to diminished or diminishing use of such technologies for copyright infringement.  Specifically, Charter seeks an explanation for why Plaintiffs failed to produce 12 documents[1] which were deposition exhibits in the related *Cox* case.  These are documents that hit on agreed-upon search terms[2] and are indisputably responsive to RFP 23.  For example, these include email correspondence with

---

[1]   PL_CH_0192824,   PL_CH_0192957,   PL_CH_0192985,   PL_CH_0193411, PL_CH_0193450, PL_CH_0193241, PL_CH_0194095, PL_CH_0194624, PL_CH_0195724, PL_CH_0196033, PL_CH_0196114, PL_CH_0195956.

[2]   (torrent* OR "BitTorrent" OR "Bit Torrent" OR "Bit-Torrent" OR "peer-to-peer" OR "peer to peer" OR "P2P" OR "peer2peer")

quinn emanuel urquhart & sullivan, llp

AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

Plaintiffs' employees (also custodians in this case) regarding digital piracy trends and the declining usage of peer-to-peer for music acquisition. *See* PL_CH_0196114 and PL_CH_0192957.

Plaintiffs have refused to provide any explanation for the deficiencies in their production because they argue that this issue has been "waived" since Charter did not mention these specific documents prior to the hearing on February 22 and February 23 ("February 22-23 Hearing"). Plaintiffs are wrong. Plaintiffs' responsiveness calls in connection with RFP 23 were raised at and after the February 22-23 Hearing. Accordingly, this issue has not been waived.

Specifically, Charter raised the dispute regarding Plaintiffs' responsiveness decisions in connection with RFP 23 at the February 22-23 Hearing. *See* ECF 379-1 at 8-11; ECF 386 at 2; 2/23/21 Hr'g Tr., 153:12-154:6, 237:6-7. While Charter did not cite these specific documents, it did seek an order compelling Plaintiffs to provide an explanation for the deficiencies in their production in response to RFP 23 generally. *See* ECF 379-1 at 8-11. In addition, Charter raised its concerns with Plaintiffs' responsive calls in connection with RFP 23 when Plaintiffs submitted their Court-ordered sample of documents (*see* March 15, 2021 Letter from J. Sperling). *See* March 16, 2021 Email from K. Akopjan. And Charter again raised its concerns with Plaintiffs' review when Plaintiffs subsequently notified Charter on March 25, 2021 that a vendor error had occurred affecting approximately 20,000 documents, which impacted documents responsive to RFP 23. This was not an issue that Charter failed to raise before the close of fact discovery, but instead an issue Charter has repeatedly raised throughout this litigation.

Moreover, Charter's request to Plaintiffs involves little to no burden. Charter is not asking to add custodians, re-negotiate search terms, or re-open depositions, as Plaintiffs have demanded of Charter without justification. Instead, Charter is simply asking Plaintiffs for an explanation as to why 12 documents that hit on agreed upon search-terms were not produced. Plaintiffs' failure to cooperate with Charter is unjustified and troubling, especially considering the significant time and effort Charter has expended providing Plaintiffs with supplemental information beyond what is required under the Federal Rules. Plaintiffs should be ordered to provide an explanation for why these 12 documents were not produced independently in this case.

## II. Stipulations of Admissibility

Charter respectfully requests that the Court compel the Sony Music Publishing Plaintiffs ("SMP") and the Sony Music Plaintiffs ("SME") to stipulate to the authenticity and admissibility of three financial documents relating to Plaintiffs' streaming revenue, in lieu of re-opening the 30(b)(6) depositions of SMP and SME.

The documents are two profit and loss statements produced by SMP (PL_CH_0201605 and PL_CH_0201656) and one financial document produced by SME (PL_CH_0201655), which the Court compelled Plaintiffs to produce on the grounds that Plaintiffs' 30(b)(6) designees had relied upon these documents in preparation for and during their depositions. *See* May 25, 2021 Hg Tr. 34:7-15; 16:17-20.

Plaintiffs have stated that they will agree to stipulate to the authenticity of the documents, but not their admissibility. Specifically, SMP will not "stipulate that those documents fall within "[Federal

Rule of Evidence] 803(6)'s exception to the rule against hearsay" because they contend the two documents "haven't been prepared in the normal course of business" and do not fall within Rule 803(6). *See* June 7, 2021 Email from A. Linderot. SME therefore appears poised to contest the admissibility of that document based on FRE 802. *See id.*

Plaintiffs' refusal to stipulate to the admissibility of these documents is unjustified. The documents at issue are not hearsay because they are admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(B). *See, e.g.*, *Int'l Fid. Ins. Co. v. Dunn Bldg. Co., LLC*, 2006 WL 8437248, at *2 (N.D. Ala. Mar. 1, 2006) (documents, which were discussed during a Rule 30(b)(6) deposition without corporate representative ever challenging their veracity, constituted an adoptive admission under 801(d)(2)(b)). These are unchallenged documents relied upon by corporate representatives of SME and SMP. *See* A. Cranford Dep. Tr. 133:1-19 (SMP corporate representative answering questions by reading statistics pulled from the document as written down on a separate paper); N. Carfora Dep. Tr. 40:15-41:25,137:24-139:17 (SME corporate representative answering questions based on financial data from these documents).

Furthermore, even if the Court considered the documents to be hearsay, they are admissible pursuant to the exception under Federal Rule of Evidence 803(6) as the information was collected from company business records. *See, e.g., Health Alliance Network Inc. v. Continental Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007) (rejecting Defendants' claim that compilation of data was not a business record because it was culled from [a] database using a query, and therefore was [d]ata prepared or compiled for use in litigation ... not admissible as business records." (citation omitted) (first alteration provided). For context, Charter has entered into numerous stipulations of this nature at Plaintiffs request in order to streamline the case. *See* Stipulation Regarding Authentication of Documents in Charter's 57th Production (Charter agreeing that it will not pose a Fed R. of Evid. 802 challenge for documents listed in Exhibit A); Stipulation Regarding Authentication of Monthly Metrics Report (Charter agreeing that the documents listed in Appendix A qualify as records of a regularly conducted activity under Fed R. of Evid. 803(6)). Having demanded these stipulations of Charter, Plaintiffs' refusal to enter into the same kind of stipulation is baseless and prejudicial.

### III.  Privilege Log Disputes

Charter requests the Court's guidance on two categories of entries from Plaintiffs' privilege log: (1) documents shared with numerous third-parties, including third-party listervs; and (2) entries for which the communications claimed to be "legal advice" involve only piracy trends and anti-piracy strategy. As detailed below, certain of Plaintiffs' privilege log entries and explanations do not support assertions of privilege, but instead suggest that these documents reflect business strategy, not privileged legal advice.

#### A.  Documents shared with numerous third-parties, including third-party listervs

Charter respectfully requests the Court's guidance on at least the following entries from Plaintiffs' privilege logs entries: 281, 288, 307, 320, 341, 355, 488, 504, 506, 568, 647, 648, 687, 701, 724, 816, 833, 835, 839, 846, 861, 866, 894, 909,998. These entries reflect emails that were sent to third-party listservs without identifying the participants on the listserv. Without knowing who or

3

how many people received these emails, Charter cannot assess whether these communications were kept confidential.

For example, Entry 355 reflects an email sent from a non-attorney to dozens of individuals and at least eight listservs, including offices and general "info" email addresses:

- "European Office, Brussels (europeanregionaloffice@ifpi.org)"
- "Directors (directorslondon@ifpi.org)"
- "office@bamp-bg.org"
- "Czech Rep (ifpicr@ifpicr.cz)"
- "info@ifpi.gr"
- "IFPI Switzerland (info@ifpi.ch)"
- "Ignat-Ukraine (Ignat@uami.org.ua)"
- "Ignat2 Ukraine (igber@ukr.net)"

Plaintiffs have explained that "the 'third-party listservs' … are IFPI (International Federation of the Phonographic Industry), an industry group] and RIAA member groups," (*see* June 28, 2021 Email from S. Dennis) yet Plaintiffs have not established that they share common interest privilege with these various groups and offices.

The confidentiality of these emails is especially doubtful given their broad dissemination. *See, e.g.*, *Hayes v. SmithKlineBeecham Corp.*, 2008 WL 11381397, at *4 (N.D. Okla. Dec. 19, 2008) (holding that the inclusion of attorneys on "widely distributed e-mails" without preventing unnecessary widespread dissemination to non-lawyers waives attorney-client privilege); *United States v. Cmty. Health Sys., Inc.*, 2012 WL 12546808, at *3 (D.N.M. Jan. 13, 2012) (holding that the inclusion of attorneys on a "cc" line or on distribution lists for interoffice e-mails does not transform an email into a privileged attorney-client communication); *Muro v. Target Corp.*, 2006 WL 3422181, at *4 (N.D. Ill. Nov. 28, 2006) (holding that for "communications reflecting a large recipient-pool," the party asserting the privilege must demonstrate that the distribution did not undermine the expectation of confidentiality); *Acosta v. Target Corp.*, 281 F.R.D. 314, 320-24 (N.D. Ill. 2012) (holding that absent factual information about the identity or function of individuals on "unidentified distribution lists," the party asserting privilege has not met its burden).

Indeed, Plaintiffs themselves have taken the position that including unknown listservs on a communication can defeat privilege. *See e.g.*, February 22, 2021 Hr'g Tr. 151:3-6 ("[T]hey listed a list serve. And it's difficult to understand how it could be that privilege if they are attributing the meeting agenda, you know, discussion to a list serve.").

### B. Entries for which the communications claimed to be "legal advice" involve only piracy trends and anti-piracy strategy

Charter respectfully requests the Court's guidance on at least the following entries from Plaintiffs' privilege logs: 279, 315, 328, 377, 525, 526, 527, 595, 665, 667, 669, 690, 691, 693, 694, 695, 697, 698, 730, 734, 738, 739, 784, 785, 786, 787, 788, 789, 790, 791, 792, 796, 830, 831, 848, 869, 874, 889, 890, 908, 964, 965, 971, 1012, 1017, 1018, 1019. These entries reflect documents that are described as reflecting "legal advice" regarding "anti-piracy strategy."

4

Plaintiffs have explained that "Plaintiffs' anti-piracy strategy often implicates legal advice, including enforcement of Plaintiffs' IP rights, legal advice regarding anti-piracy measures within agreements, discussion or interpretation of relevant piracy laws, and litigation efforts."  *See* June 28, 2021 Email from S. Dennis.  However, the aforementioned entries do not reference any interpretation of piracy laws or litigation efforts, while other entries on Plaintiffs' privilege log do.  *See*, *e.g.*, Entry 275 (reflecting "legal advice regarding anti-piracy litigation"); Entry 281 ("legal advice of IFPI counsel* regarding copyright reform, ongoing and potential piracy litigation, anti-piracy strategy, and copyright and piracy-related legislation").

Given that formulation of an operational strategy is not privileged, *see RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 3055774, at *4 (D. Colo. May 23, 2018) (ordering production of document with the "primary purpose … [of] developing a successful strategy for further operation of a portion of the business"), advice on "anti-piracy strategy" alone is not automatically legal in nature, and listing it in a privilege log is certainly not a dispositive basis for withholding documents.

Very truly yours,

*Andrew  H. Schapiro*

Andrew H. Schapiro

cc:      All counsel of record via ECF and Email