# EXHIBIT A

**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Jonathan M. Sperling

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1153
jsperling@cov.com

By Email                                                                                                       July 14, 2021

Magistrate Judge Michael E. Hegarty
U.S. District Court for the District of Colorado
hegarty_chambers@cod.uscourts.gov

> Re:  *Warner Records, Inc., et al. v. Charter Communications, Inc.*, No. 19-cv-00874

Dear Judge Hegarty:

Plaintiffs write regarding the ripe disputes on which Plaintiffs respectfully request to be heard during the July 15 hearing.

## I.   Additional Discovery Stemming from Charter's Belated Productions

On May 25, 2021, the Court ordered Charter to search for responsive documents in the files of the following Charter employees: (1) the members of the DMCA Executive Steering Committee (the existence of which Charter failed to disclose until just before the scheduled close of discovery), (2) the members of the Security Executive Steering Committee, and (3) Messrs Burroughs and Schmoker, who had responsibility for Charter's CATS system during the claim period.  May 25, 2021 Hr'g Tr. 47:15–17; 55:1–7.  Charter had failed to disclose these employees earlier, including in response to Plaintiffs' Interrogatory 1, which asked Charter to "Identify all persons, including current and former employees, with responsibility for designing, developing, or implementing your policies and protocols for addressing alleged copyright violations through Charter's network . . . ."

Although Charter collected from these employees' files approximately 80,000 new documents that hit on the agreed-upon search terms and thus needed to be reviewed, it ultimately produced or logged fewer than 1,000 documents.  Even from this relatively small set of documents, Plaintiffs have learned new, relevant information.  Plaintiffs therefore need to take limited additional discovery regarding the issues and individuals described in these documents, as Plaintiffs anticipated at the May 25 hearing, *see* Hr'g Tr. 49:4–9.  Charter objects to virtually all of this discovery on the grounds that it is belated.  But these issues arise now precisely, and only, because Charter improperly failed to disclose these witnesses and documents earlier.  Plaintiffs should not be prejudiced by Charter's failure to timely identify witnesses and produce responsive documents.

***Hit Counts.***  Plaintiffs respectfully request that the Court order Charter to provide custodian-specific hit counts for each of the agreed-upon search terms for the newly-added

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 2

document custodians.  Contrary to Charter's argument, Plaintiffs' request for hit counts is neither improper nor burdensome.  These metrics are critical to assessing Charter's assertion that over 79,000 of the 80,000 documents that hit on the agreed-upon search terms for these custodians were non-responsive.  Charter previously represented to Plaintiffs that it would take its vendor a full day to provide the requested hit counts, but Charter refused to provide them on the basis that doing so would jeopardize its ability to produce or log the responsive documents in a timely manner.  That concern is now moot, as Charter claims to have finished its document productions and produced a final privilege log.

*Documents.*  Charter's newly-produced documents refer to specific other documents that are relevant and responsive to Plaintiffs' RFPs but have not been produced.  Had Plaintiffs timely received the documents Charter produced just in the last month, they would have requested the additional relevant documents months ago; due to Charter's delay, Plaintiffs are forced to request them now.  Plaintiffs have asked Charter to search for 12 discrete categories of documents by using narrowly tailored search terms and conducting a limited investigation of data repositories.  *See* Appendix.  Charter has refused, stating that it is willing only to either (a) search for these documents without disclosing to Plaintiffs how it plans to do so, or (b) not conduct any search at all.  Put another way, Charter agrees to search for these documents only if it can do so without transparency into its process.  Plaintiffs request that the Court order Charter to search for the documents listed in the Appendix using the search parameters proposed therein.

*Depositions.*  Charter's newly-produced documents show that certain employees were involved in Charter's DMCA program to an extent not previously revealed, or include material new information that Plaintiffs were not able to ask about during earlier depositions.  Accordingly, Plaintiffs request that the Court order Charter to make available the following deponents:

*Jay Rolls.*  Charter's recent productions show that Charter's former Chief Technology Officer, Jay Rolls, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ produced for the first time on June 21, 2021, shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CHA_00144656.  Though Charter has not produced the communications between Mr. Rolls and Time Warner, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Had Plaintiffs received this email chain months earlier, when it should have been produced, they would have subpoenaed Mr. Rolls for deposition then, to ask about this document specifically and his involvement more generally in developing technological solutions to curb the use of P2P for copyright infringement.  Because of the belated production, Plaintiffs were forced to subpoena him only now; Charter has refused to make him available.

*Laurie Rowlett.*  Plaintiffs deposed Ms. Rowlett on April 30.  When asked whether there were "performance benchmarks" related to DMCA ticket processing, she replied that she could not "recall what the benchmark was, or if there even was a benchmark for that."  Rowlett Dep.

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 3

Tr. 229:15–230:2. Over a month later, Charter produced CHA_00138271,[1] a document that it concedes it should have produced months earlier. *See* A. Huebert June 11, 2021 Email to Judge Hegarty. That document revealed for the first time that Ms. Rowlett ███████████████████████ ███████████████████████. By belatedly producing CHA_00138271, Charter deprived Plaintiffs of the ability to ask Ms. Rowlett about the document during her deposition, test her assertion that ███████████ ███████████████████████████████████████████████████ Plaintiffs should not be prejudiced by Charter's failure to carry out its discovery obligations.

*30(b)(6) Witness(es) on the Following Topics.*

- <u>Charter's design of the DMCA Notices Portal, including the decision-making process that led to its creation.</u>  Though Plaintiffs were previously aware of Charter's DMCA Notices Portal, Charter only now produced a design document describing ███ ██████████████████████████████████████████████████████ *See* CHA_00141905. Because of Charter's delay in producing this document, Plaintiffs were deprived of the ability to ████████████████████████████████████████ ████████████████████████████████████████████████████████████ Instead, Charter's 30(b)(6) witness testified only that ████████████████████ ████████████████████████ Haynes Dep. Tr. 82:18–21. This document contradicts that testimony, and Plaintiffs simply request that they be able to ask about it, as they would have done if this document had been timely produced.

- <u>Charter's "Cyber Attack Defense" presentations as they relate to DMCA issues.</u>  Charter recently produced a slide deck that includes new information it similarly failed to disclose before the end of fact discovery. The slide deck states that ███ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ *See* CHA_00143001. Notably, other documents produced by Charter suggest that ███████████████ ████████████████████████████████████████████ Again, Plaintiffs would have asked Charter's 30(b)(6) witness about this document had it been timely produced. Because it wasn't, Plaintiffs now request that they be able to depose a 30(b)(6)

---

[1] This document was produced in response to Plaintiffs' Eighth Set of RFPs, not as part of Charter's productions from the DMCA Executive Steering Committee, Security Executive Steering Committee, and Messrs Burroughs and Schmoker. As Charter's counsel has conceded, however, this document should have been produced months earlier, as it was responsive to Plaintiffs' Second Set of RFPs, served on February 7, 2020.

COVINGTON

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 4

witness about the information contained in this presentation, to whom it was presented, and any associated discussions.

- <u>Charter's marketing of IPv6 as it relates to peer-to-peer usage.</u>  Charter recently produced a document indicating that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *See* CHA_00142961. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ gain, Plaintiffs were deprived of the ability to ask about this document during the Charter 30(b)(6) deposition.

## II. Issues Related to Discovery into CATS

Charter relied on its Charter Abuse Tracking System ("CATS") to process and track DMCA notices from rightsholders, as well as to track other types of abuse.  CATS has been a critical subject of discovery in this case.  Recent documents and testimony demonstrate that Charter's discovery responses on CATS-related topics continue to be deficient and require redress.

***Charter must add Jim Smith as a custodian.***  Charter's recent productions, as well as the deposition of Charter 30(b)(6) witness Michael Hanrahan, reveal that Jim Smith was a key employee involved in the operation of Charter's CATS software for processing infringement notices, and that he therefore likely possesses relevant documents.  Although Charter's earlier productions occasionally mention Mr. Smith, Plaintiffs have only recently learned that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  CHA_00140613.  Recent productions also show that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ CHA_00141471, CHA_00141478; ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓, CHA_00141476; and ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ CHA_00141432.  Furthermore, Mr. Hanrahan ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Hanrahan Tr. 290:22-291:6.  Charter identified the *other* such administrator in response to Plaintiffs' Interrogatory 1 (Matt Nelson), but failed to identify Mr. Smith.  Plaintiffs request that Charter search Mr. Smith's documents for responsive documents, as Charter would have been required to do had it timely identified Mr. Smith in response to this verified interrogatory.

***Charter must make Bryan Burroughs available for deposition.***  Charter's 30(b)(6) designee on CATS, Mr. Hanrahan, testified that Mr. Burroughs was responsible for Charter's CATS software during the claim period, and yet Charter did not identify him in its response to Plaintiffs' Interrogatory 1.  Your Honor therefore ordered Charter to produce Mr. Burroughs' documents, which reveal that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  ▓▓▓▓▓▓▓▓▓▓▓▓▓ CHA_00142501, CHA_00142502, CHA_00142503, CHA_00142570. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 5

[redacted] CHA_00142030, CHA_00142202. Other documents show that [redacted] See CHA_00141443, CHA_00140661, CHA_0142139, CHA_00141426. That has been an important and recurring topic of discovery in this case, and Plaintiffs cannot be deprived of Mr. Burroughs' testimony because Charter failed to timely meet its discovery obligations.

***Charter must designate a knowledgeable 30(b)(6) witness regarding CATS.***
On May 12, Plaintiffs deposed Michael Hanrahan, Charter's 30(b)(6) witness on the following topic: "Charter's CATS system, including its purpose, functionalities, capabilities, and ability to track abuses of any copyright infringement-related policy by Charter's Subscribers or Users, or otherwise track or process Infringement Notices." Mr. Hanrahan testified that, since 2011, "I had no operational responsibility for the running of the systems, for the databases, or setting policy for how we would use the data collected by the complaint process." Hanrahan Tr. 39:1-5.

Not surprisingly, then, Hanrahan was unable to answer many questions regarding how CATS worked during the Claim Period, including, by way of example:

- Charter's practice of "batching" or closing multiple tickets simultaneously. Hanrahan Tr. 206:8-11 ("Q Okay. So can you describe the batching process as it developed with respect to e-mails? A No. I didn't write the code and I didn't manage the people writing the code.").
- A CATS feature that limited the number of tickets Charter processed daily in order to control call volumes. Hanrahan Tr: 177:14-16, 180:1-18, 182:9-183:6 ("Again, I don't know. I didn't develop the logic or manage the implementation of it.").
- The ability to close CATS tickets in bulk. Hanrahan Tr. 198:22-199:5.

"Corporations have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Live Face On Web, LLC v. Integrity Sols. Grp., Inc.*, 421 F. Supp. 3d 1051, 1080 (D. Colo. 2019) (internal quotations omitted). By designating Mr. Hanrahan, who had limited knowledge of how CATS operated during the relevant time period and was unable to answer critical questions, Charter breached this duty. "If it becomes obvious during the course of a deposition that the designee is deficient, the organization is obligated to provide a substitute." *In re Application of Michael Wilson & Partners*, No. CIV-A 06-CV-02575-MSK-KMT, 2009 WL 1193874, at *4 (D. Colo. Apr. 30, 2009) (internal quotation marks omitted). Charter must do so here.

### III. Privilege Log Challenges

Charter has not substantiated its claim of privilege over certain documents identified in its June 21, 2021 Privilege Log. Plaintiffs respectfully request that the Court review in camera the documents associated with the privilege log entries identified below.

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 6

***Communications between Non-Lawyers.*** Charter asserts an attorney-client privilege over communications that Charter contends reflect notes or changes requested by in-house counsel or "provid[e] information to obtain," "seek[]," or "request" legal advice, but where no attorney is listed as a sender or recipient of the communications. For example:[2]

- In Entries 2 and 3, Charter asserts attorney-client privilege over "CATS Status Meeting notes," because those "meeting minutes provid[e] information to obtain legal advice from in-house counsel regarding CATS," but the cover email, which is unredacted, indicates that no attorney participated in the meeting.

- Entries 50 and 51 are emails ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Charter redacted content that purportedly "reflect[s] a request for" and "provid[es] information to obtain legal advice from in-house counsel," but no in-house counsel is included on the email chains.

***Communications about Operational Matters.*** The following entries include documents and communications that all appear to be operational in nature based on Charter's privilege descriptions or Plaintiffs' review of associated documents in Charter's production. Communications about operational matters are not privileged because they neither seek, nor request, legal advice. Such documents do not become privileged even when an attorney is included on them. For example:

- Entries 22 and 23 concern Charter's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Although Charter claims these documents reflect the legal advice of in-house counsel, Charter produced in full ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Entry 111 is a "[m]eeting agenda and attachments" related to the DMCA. Despite Charter's assertion that these records contain the confidential impressions of counsel, unless the agenda itself reflects legal advice, it is not privileged. To the extent a meeting agenda reflects some privileged communication, Charter can apply redactions, but Charter's privilege description does not substantiate withholding these records in full.

- Entries 125-128 concern Charter's "DMCA/MPAA" project. Charter asserts attorney-client privilege over these emails even though it produced separate email correspondence that explains that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (CHA_00144656).

---

[2] Entries 8, 10, 11, 22, 24, 41-45, 125, 127, and 128 also reflect communications between non-lawyers that Charter claims are privileged.

COVINGTON

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 7

***Communications between Bright House and Time Warner Cable Regarding the Copyright Program.*** Entries 103-105 reflect emails between Charter and either Bright House Networks or Time Warner Cable *prior* to their merger, yet these emails have been entirely withheld on the basis of a common interest privilege because they purportedly "seek[] legal advice of in-house counsel regarding the copyright program." That is insufficient; a common interest or joint defense privilege "arises out of the need for a common defense, as opposed merely to a common problem. As a result, one relying on the joint defense privilege must establish that (a) there was existing litigation or a strong possibility of future litigation; and (b) the materials were provided for the purpose of mounting a common defense against it." *Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co.*, 142 F.R.D. 471, 479 (D. Colo. 1992) (cleaned up).

Charter has failed to establish any "joint defense effort" between itself and either Bright House Networks or Time Warner Cable regarding "the copyright program." Charter has also refused to explain who was providing the purported legal advice to whom and has admitted that these emails concern "the operation of the entities' copyright programs." *See* J. Young Email dated July 13, 2021. Charter has accordingly failed to substantiate that these communications are privileged.

**IV.   Documents Concerning Legal Holds on Ticket Data** (RFP 79)

Plaintiffs request that the Court compel Charter to produce documents in response to Plaintiffs' RFP 79 seeking "[a]ll documents concerning legal holds you placed on your ticket data . . . from 2012 through 2016." Plaintiffs previously moved to compel production of documents in response to this RFP, but that motion was denied based on what we now know was a material misrepresentation by Charter to the Special Master. With the benefit of this new information—the truth—Plaintiffs move to compel the production of these critically relevant documents.

In 2012, Charter implemented a legal hold in response to a repeat infringer claim requiring the preservation of, among other things, the entirety of CATS ticket data, both retrospectively and going forward. If it were available, such comprehensive data would fundamentally assist Plaintiffs in analyzing Charter's receipt of and response to DMCA notices.

In response to Plaintiffs' Motion to Compel RFP 79, Charter represented to the Special Master that "[t]here is **no evidence** in the record suggesting that the 2012 Legal Hold was active in October 2015, or, more importantly, in March 2016, when Plaintiffs notified Charter of their claims at issue in this litigation. . . . While Charter is continuing its research to determine exactly when the 2012 Legal Hold was lifted, currently **no information** suggests that the hold is still active or that it was active as of October 2015." July 21, 2020 Ltr. Opp. to Pls.' Mot. to Compel. at 2-3 (emphasis added). Relying on these representations, the Special Master largely denied Plaintiffs' motion to compel. Special Master's Order 3-6 (ECF No. 230). Charter repeated this representation in opposition to Plaintiffs' renewed motion in December. Dec. 18, 2020 Ltr. Opp. to Pls.' Request for Teleconference at 2.

Those representations were materially incorrect. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ well after Plaintiffs sent their demand letter in March 2016. Charter produced a report (excerpted below)

**COVINGTON**



CHA_00115188; see also Vasey Tr. 222:16-21, 223:5-224:1, 243:13-24. Another report (excerpted below) from Charter's data preservation system shows that,

CHA_00115350; see also Vasey Tr. 258:3-259:8. A report (excerpted below)

CHA_00115994.

    Contrary to its representations in this litigation, Charter's records thus demonstrate that this hold was, in fact, active when Plaintiffs notified Charter of their claims, was still active in 2019 when Plaintiffs filed this lawsuit, and that

    To date, there is no evidence or information indicating when, why, how and at whose direction, the preserved ticket data was destroyed (assuming it was destroyed). Because Charter's representations on which the Special Master's order relied are materially false and serious questions regarding Charter's preservation of ticket data remain unanswered, the Court should vacate that order and require Charter to produce documents in response to RFP 79.

    The documents are also necessary to test the veracity of Charter employees' testimony about the 2012 hold. Mary Haynes, Charter's 30(b)(6) witness on the issue, testified that

███████████████████████████████████████ Haynes Tr. 204:3-5. Haynes further testified that ███████████████████████████████. Haynes Tr. 205:19-206:3. But these claims are contradicted by the plain text of Charter's internal records described above, and Charter has refused to produce documents that could elucidate these issues.

V.  **Communications on Charter's Spoliation-Related Privilege Log Regarding the Revised 2019 Hold**

Charter admits that it did not implement a legal hold in response to Plaintiffs' March 2016 demand letter. Subsequently, Charter deleted more than 700,000 potentially relevant documents. In attempting to evade spoliation sanctions, Charter claims that it did not need to implement a legal hold in response to Plaintiffs' letter because it already had a hold in place in response to a 2015 letter from another claimant, Mingus MusicWerks (the "Mingus Hold"). Charter claims that the Mingus Hold was a "master" or "universal" hold covering all similar claims, even though there is not a single document that substantiates that claim.

In March 2019, Plaintiffs filed this suit. ████████████████████████████

██████████████████████████████ CHA_00116043.

Why Charter ████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████ Charter denies this but refuses to respond to discovery that would speak to this issue on the ground of selective work product. Charter should not be permitted to strategically pick and choose when to assert privilege.

Charter's ESI RFP Privilege Log lists at least six entries (Nos. 544, 545, 546, 547, 552, and 555) that appear to be communications between Charter employees and Charter's outside counsel regarding ████████████████. Plaintiffs seek production of all of these documents. By claiming that the 2015 Mingus Hold covered Plaintiffs' claims, Charter has directly put at issue ████████████████████████████. Charter has thus waived any work-product protection over these documents.[3]

---

[3] Plaintiffs previously filed a Motion to Compel Production of All Documents Related to Charter's Spoliation Listed on Charter's Privilege Log or Otherwise Withheld on the Basis of Privilege, in which Plaintiffs argued that Charter had waived work-product protection over these documents. ECF No. 262. The Court denied that motion without prejudice, granting leave to Plaintiffs to reassert it if necessary. ECF No. 322; Dec. 18, 2020 Hr'g Tr. 15:5-11 Plaintiffs incorporate the arguments in their prior motion by reference.

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 10

      Similarly, at Kirill Abramov's deposition, ███████████████████████████████
███. Abramov Tr. 250:21-251:9.  Charter should be ordered to produce all documents it is withholding as protected work-product concerning ████████████████████████████
████ and to require Mr. Abramov to answer questions on this issue.

      Respectfully submitted,

      */s/ Jonathan M. Sperling*

      Jonathan M. Sperling

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 11

## Appendix

| Requests for Documents | Search Terms for Custodial Email Data and Requests to Search Additional Data Repositories |
|---|---|
| ■■■ *See* CHA_00143323. | (infring* OR copyright* OR DMCA) w/5 enhance*<br><br>Weber AND sponsor AND (DMCA OR infring* OR copyright* OR enhance*)<br><br>Date limitation: December 1, 2015 to May 17, 2016<br><br>In addition to custodial email searches:<br>• Interview Mary Haynes and Scott Weber to determine where such documents are likely to be stored.<br>• Search all repositories where Confluence documents for this project were stored.<br>• Search all repositories where the Advanced Engineering workgroup stored documents. |
| ■■■ *See* CHA_00143347. | (industry w/10 (DMCA OR infring* OR copyright*)) AND (program* OR solution* OR system* OR respon* OR enforc*)<br><br>"Copyright Alert* System" OR "CAS" OR (DMCA w/5 compliance)<br><br>(six OR 6) w/3 strike*<br><br>(antipiracy OR "anti-pira*") w/5 program*<br><br>"Center for Copyright Information" OR ("CCI" AND (DMCA OR infring* OR copyright*))<br><br>Date limitation: March 1, 2012 to December 31, 2014. |
| ■■■ *See* CHA_00143355. | DMCA w/10 graduat*<br><br>graduat* w/5 (enforc* OR respon*)<br><br>(six OR 6) w/3 strike*<br><br>(antipiracy OR "anti-pira*" OR piracy) w/5 enforc* |

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 12

| | |
|---|---|
| | Date limitation: March 1, 2012 to December 31, 2014.<br><br>In addition to custodial email searches, search all repositories where the SSST's time and billing records were stored. |
| ▇▇▇▇ *See* CHA_00143054 ▇▇▇▇ | (("IT" OR "Informational Technology") w/5 (objectives OR "strategic priorities")) AND (DMCA OR copyright* OR infring*)<br><br>*Review hits only on presentation file types, e.g., .ppt, .pptx, .pptm, .pdf, .key*<br><br>In addition to custodial email searches, search repositories where the IT department stored documents. |
| All drafts and final versions of Charter's ▇▇▇ ▇▇▇ *See* CHA_00141905. | (copyright* OR infring* OR DMCA) w/10 portal<br><br>("solution design" OR "notice* design") w/20 DMCA<br><br>"notices application" OR "notices portal" OR ("notices.charter.com" AND (design* OR solution*))<br><br>In addition to custodial email searches:<br>• Interview Michael Hanrahan to determine where such documents are likely to be stored.<br>• Search repositories where the IT department stored documents. |
| ▇▇▇▇▇ *See* CHA_00138271. | Search repositories where employee reviews, assessments, or bonus plans were stored.<br><br>Within those repositories, search for: (DMCA OR infring* OR copyright* OR batch* OR ticket* OR "auto clos*" OR "auto-clos*" OR P2P OR file-shar* OR "file shar*" OR fileshar* OR "peer-to-peer" OR "peer to peer") |
| Documents, including time and billing records (*see* CHA_00143355), concerning ▇▇▇ ▇▇▇ (*see* CHA_00142961). | IPv6 AND (p2p OR "peer to peer" OR "peer-to-peer" OR BitTorrent OR torrent OR fileshar* OR "file shar*" OR "file-shar*")<br><br>In addition to custodial email searches, search repositories where SSST stored time and billing records. |

COVINGTON

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 13

| | |
|---|---|
| ███████████ | parrot<br><br>"Network intelligence"<br><br>"Initiative 168"<br><br>In addition to custodial email searches:<br>• Interview "M. Rosenblum" (if still a Charter employee) to determine where such documents are likely to be stored.<br>• Interview Scott Weber to determine where such documents are likely to be stored.<br>• Search the COIN site referenced in CHA_00144070. |
| ███████████ *e.g.*, presentation decks, presentation notes, and meeting notes). | ((internet w/5 "policy changes") OR ("general product meeting*")) AND (DMCA OR copyright* OR infring* OR piracy)<br><br>In addition to custodial email searches:<br>• Interview Richard DiGeronimo to determine where such documents are likely to be stored<br>• Search any repositories where documents were stored for the General Product Meetings. |
| All documents related to Charter's ███████ *see* CHA_00144220) that mention peer-to-peer use or downloading of media files. | (speed w/10 strategy) AND (p2p OR "peer to peer" OR torrent OR music OR mp3 OR movie* OR BitTorrent OR torrent OR fileshar* OR "file shar*" OR "file-shar*")<br><br>In addition to custodial email searches:<br>• Interview Richard DiGeronimo to determine where such documents are likely to be stored.<br>• Search any repositories where documents were stored for the General Product Meetings. |
| All documents related to the ███████████ (*see* CHA_00144656) including any presentation decks, presentation notes, or meeting notes related to the project. | DMCA w/5 (MPAA OR ("motion picture association"))<br><br>In addition to custodial email searches, interview Julie Pontier, Mary Haynes, and Jay Carlson to determine where such documents are likely to be stored. |
| All documents concerning ███████████ | sandbox* OR "sand box*" OR "penalty box*" OR "walled garden" OR "browser messag*" OR (DMCA w/5 trigger*) |

**COVINGTON**

Magistrate Judge Michael E. Hegarty
July 14, 2021
Page 14

| | |
|---|---|
|  (*see* CHA_00144243, CHA_00144656). | ("special processing" OR modem*) AND (DMCA OR p2p OR "peer to peer" OR "peer-to-peer" OR infring* OR BitTorrent OR torrent OR fileshar* OR "file shar*" OR "file-shar*") |