**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER RECORDS, INC., *et al.* | |
| Plaintiffs, | |
| v. | Case No. 1:19-cv-00874-RBJ-MEH |
| CHARTER COMMUNICATIONS, INC. | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF COX COMMUNICATIONS, INC.'S MOTION TO
INTERVENE FOR PURPOSES OF MODIFYING THE PROTECTIVE ORDER**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................................................... 1

LEGAL STANDARDS ...................................................................................................................... 6

ARGUMENT ..................................................................................................................................... 7

      A.    Cox Has Standing To Intervene. ................................................................................. 7

      B.    The *Cox* Litigation Shares Common Questions Of Law And Fact With This Action. ........................................................................................................................ 8

      C.    No Prejudice Will Result From Intervention. .......................................................... 9

CONCLUSION ................................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gubricky ex rel. Chipotle Mexican Grill, Inc. v. Ells*,
   No. 16-cv-3180, 2018 WL 1558264 (D. Colo. Mar. 26, 2018) ............................................ 6, 9

*City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*,
   79 F.3d 1038 (10th Cir. 1996) .................................................................................................. 6

*CRST Expedited, Inc. v. TransAm Trucking Inc.*,
   No. 16-cv-0052, 2018 WL 9880439 (N.D. Iowa Oct. 9, 2018) ............................................... 7

*EEOC v. Nat'l Children's Ctr.*,
   146 F.3d 1042 (D.C. Cir. 1998) ............................................................................................... 6

*Holland & Hart LLP v. Mills*,
   No. 8-cv-1408, 2009 WL 3046318 (D. Colo. Sept. 22, 2009) ................................................. 7

*Kahle v. Adams Cnty.*,
   No. 4-cv-1536, 2007 WL 2381403 (D. Colo. Aug. 16, 2007) ............................................ 8, 10

*Martindell v. Int'l Tel. & Tel. Corp.*,
   594 F.2d 291 (2d Cir. 1979) ..................................................................................................... 7

*Pub. Citizen v. Liggett Grp., Inc.*,
   858 F.2d 775 (1st Cir. 1988) .................................................................................................... 7

*Rightchoice Managed Care, Inc. v. Hosp. Partners, Inc.*,
 No. 18-cv-6037, 2020 WL 5733203 (W.D. Mo. Sept. 24, 2020) .............................................. 6

*United Nuclear Corp. v. Cranford Ins. Co.*,
 905 F.2d 1424 (10th Cir. 1990) ................................................................................... 6, 7, 8, 9

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
 295 F.3d 1111 (10th Cir. 2002) ............................................................................................. 7

*Young v. Glanz*,
 No. 13-cv-315, 2018 WL 1588026 (N.D. Okla. Mar. 31, 2018) .............................................. 7

**Other Authorities**

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................................................ 6

Fed. R. Civ. P. 24(b)(3) .................................................................................................................... 7

Fed. R. Civ. P. 60(b)(3) ................................................................................................................ 1, 6

Fed. R. Civ. P. 60(c)(1) .................................................................................................................... 6

## **INTRODUCTION**

Cox Communications, Inc. is an internet service provider ("ISP") that defended a nearly identical case brought by most of the same plaintiffs here. *Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-00950-LO-JFA (E.D. Va.).[1] Based on information disclosed in the public record of this action, it appears that Plaintiffs failed to produce to Cox certain documents related to a key exhibit underlying Plaintiffs' showing of direct infringement: A hard drive allegedly containing contemporaneously downloaded files that Plaintiffs claim were infringed by Cox's subscribers. Having concealed the nature of this exhibit, Plaintiffs misrepresented it at trial, where they ultimately obtained a $1 billion verdict.

Cox intends to file a motion under Federal Rule of Civil Procedure 60(b)(3) to obtain relief from that judgment, which was procured through misconduct. Cox respectfully requests to intervene in this action for the limited purpose of modifying the Protective Order, ECF 63, to obtain access to materials that should have been disclosed in the *Cox* litigation and that are necessary to fully support Cox's anticipated Rule 60 motion (the "Rule 60 Material"). Cox has concurrently filed a motion for relief under the Protective Order to obtain these documents should it be granted leave to intervene.

## **FACTUAL BACKGROUND**

Plaintiffs are a collection of major record companies and music publishers. Over the last several years, they have filed a series of infringement lawsuits against ISPs on the theory that the ISPs should be held secondarily liable for the copyright infringement of internet subscribers. On December 19, 2019, Plaintiffs obtained a $1 billion jury verdict for secondary infringement in their

---

[1] We cite docket entries from the *Cox* litigation "*Cox* ECF __"; docket entries in this action "ECF ___"; Cox's contemporaneously filed Motion to Modify the Protective Order "Mot. to Modify PO"; and the Declaration of Elyse D. Echtman in support of Cox's Motions "Echtman Decl."

suit against Cox. Exh. 3 (*Cox* ECF 669). On January 12, 2021, a judgment was entered on that verdict. Exh. 4 (*Cox* ECF 723). Cox's appeal is pending. *Sony Music Entertainment et al., v. Cox Communications, Inc. and CoxCom, LLC*, No. 21-1168 (4th Cir).

***Plaintiffs' Direct Infringement Case.*** A central contested evidentiary issue in the *Cox* litigation concerned a hard drive (the "*Cox* Hard Drive") that, according to Plaintiffs, contained files proving Cox subscribers' direct infringement of Plaintiffs' works. Echtman Decl. ¶ 5. Plaintiffs' direct infringement case was based largely on evidence generated by two consultants: MarkMonitor, which monitors the internet for infringing music files and sends notices to ISPs like Cox when it detects infringement; and Audible Magic, which uses an automated system to verify whether internet files that are suspected of being infringing match the recordings of protected works in its database. Ex. 5 (*Cox* ECF 535, Oct. 24, 2019 Hr'g Tr. at 93-97). At trial, Plaintiffs introduced (i) the infringement notices generated by MarkMonitor and sent to Cox between 2012 and 2014, which identified the works allegedly shared by Cox's subscribers; (ii) a MarkMonitor spreadsheet, which purportedly documented Audible Magic's verification of the allegedly infringed works; and (iii) the *Cox* Hard Drive. Ex. 6 (*Cox* Trial Tr. at 788:1-789:4, 791:13-24, 792:4-14). The hard drive purportedly contained the very files that MarkMonitor and Audible Magic verified before sending notices between 2012 and 2014.

So foundational was the *Cox* Hard Drive to Plaintiffs' case that their expert, George McCabe, testified that each work in suit needed to appear on the drive before he could opine that the work had been infringed by a Cox subscriber. Ex. 6 (*Cox* Trial Tr. at 788:1-789:4, 791:13-24, 792:4-14). So, without the contents of the *Cox* Hard Drive, Plaintiffs' expert, by his own admission, would not have opined as to any of the direct infringement for which Cox was held secondarily liable.

Because of the *Cox* Hard Drive's centrality to Plaintiffs' direct infringement case, Cox sought extensive discovery concerning MarkMonitor's involvement in the sending of notices and compilation of evidence of alleged direct infringement. *See infra* 4-6; Mot. to Modify PO 2-7. But Plaintiffs disclosed nothing that demonstrated when and how the files on the hard drive were first downloaded from the internet. As explained below, and in Cox's Motion to Modify the Protective Order, it is now clear that Plaintiffs' nondisclosures concealed a critical detail: That the files on the Hard Drive were not downloaded contemporaneously with MarkMonitor and Audible Magic's alleged detection and verification of infringement, but were downloaded *years later*, in 2016, as part of a litigation-focused effort to recreate evidence.

***Plaintiffs' Misrepresentations.*** Before and during trial, Plaintiffs exploited the gap in the record they had worked to create, securing admission of the *Cox* Hard Drive through misrepresentations about its contents.

Before trial, Cox moved to exclude the *Cox* Hard Drive for lack of foundation, arguing that the drive's metadata showed that the drive itself was created in 2016. *See* Ex. 7 (*Cox* ECF 488 at 3-6, Plaintiffs' Omnibus Memorandum in Opposition to Cox's Motions in Limine Numbers 1-10); Ex. 5 (*Cox* ECF 535, Oct. 24, 2019 Hr'g Tr. at 93-97). In response, Plaintiffs misleadingly claimed that it "contains digital files that were the basis of MarkMonitor's infringement notices to Cox," downloaded when the notices were sent between 2012 and 2014. Ex. 8 (*Cox* ECF 539 at 22, Plaintiffs' Omnibus Memorandum in Opposition to Cox's Motions in Limine Numbers 1-10). Specifically, at trial, one of their experts testified that the drive contained the files that "were captured by MarkMonitor during [the] downloading step in" MarkMonitor's verification process, which occurred before the notices were sent between 2012 and 2014. Ex. 6 (*Cox* Trial Tr. at 515:15-22); *see id.* at 516:17-20 ("[W]hat's on the hard drive" are "[t]he [specific files] that were

3

downloaded [and] matched."). Another witness, Samuel Bahun, MarkMonitor's Director of Strategic Accounts, then claimed that the drive contained the very "song files that were downloaded from the corresponding peer-to-peer networks" to verify infringement. *Id.* at 648:23-25.

Cox pressed Bahun on cross-examination concerning both "when ... those songs [were] put on" the drive, *id.* at 705:23-24, and when they were actually downloaded, *id.* at 708:03-709:14. Bahun testified that the drive itself was created at "the end of 2015, beginning of 2016," *id.* at 706:01, but that the files on it were downloaded on "different dates," and that "some of them" were stored on MarkMonitor's "system when they were first downloaded from the Internet." *Id.* at 708:3-709:14. Bahun thus testified that, though the *Cox* Hard Drive had been *created* after the fact, the files it contained were *downloaded* contemporaneously with the alleged infringement they were offered to prove. On the basis of Plaintiffs' and their witnesses' representations, the district court ultimately overruled Cox's several objections to the admission of the *Cox* Hard Drive, Ex. 9 (*Cox* ECF 590 at 3); Ex. 6 (*Cox* Trial Tr. at 647:8-648:12, 706:12-707:22). This enabled Plaintiffs' expert McCabe to rely on the presence of each of the works in suit to opine that all 10,017 of Plaintiffs' works had been infringed. Ex. 6 (*Cox* Trial Tr. at 791:13-24).

***Revelation of Plaintiffs' Misconduct.*** As detailed in Cox's Motion to Modify the Protective Order, discovery in this action has revealed a strong likelihood that Plaintiffs in *Cox* concealed materials and information that would have demonstrated that all the files on the hard drive were downloaded in 2016—and not as contemporaneous verification of alleged infringement before the notices were sent between 2012 and 2014.

The public record in this case and the record in Cox strongly suggest that Plaintiffs produced a near-identical hard drive (the "*Charter* Hard Drive"). Ex. 10 (*Charter* ECF 287-1,

4

Oppenheim Decl. ¶ 9); *see* Cox's Mot. to Modify PO 3-4. But, pursuant to an order compelling production in this case, the *Charter* Hard Drive contained "packet capture" ("PCAP") data that, according to Plaintiffs' counsel here, were recorded by MarkMonitor to show "when and where each of the audio files on the drive was downloaded" from peer-to-peer networks. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 9). Also produced here pursuant to a motion to compel was a so-called "Hash Report." Ex. 11 (*Charter* ECF 436 at 4-9, Order on Pending Motions/Objections (2)). According to the Court's order on the motion to compel, the purpose for which Charter sought the Hash Report was to determine the extent to which Plaintiffs' counsel and MarkMonitor were unable to re-verify in 2016 the infringement they alleged from 2012 to 2014—in other words, because of its propensity to demonstrate the extent to which Plaintiffs' *ex post facto* attempt to recreate evidence was unsuccessful, the Hash Report sheds light on the reliability of the methodology. *Id.* And Plaintiffs in this case also disclosed the 2016 Statement of Work, which detailed a 2016 project led by Plaintiffs' counsel Matthew Oppenheim and his firm Oppenheim + Zebrak LLP for purposes of the *Charter* case "and other cases against other ISPs," which ultimately yielded the files put onto the hard drives and the Hash Report. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶¶ 5, 9).

All of this should have been disclosed during discovery in *Cox*—indeed, it all falls within categories of information Plaintiffs either pledged to produce or were specifically ordered to produce by the district court. As detailed in Cox's Motion to Modify the Protective Order, Plaintiffs represented during discovery that they had disclosed (or would disclose) any "evidence that MarkMonitor has captured for purposes of the [*Cox*] case." Ex. 12 (*Cox* Jan. 25, 2019 Hr'g Tr. at 68:14-20). Both the PCAP data and the Hash Report are plainly evidence "captured for purposes of the case," and therefore should have been turned over. And in failing to produce the

5

2016 Statement of Work, Plaintiffs flouted the district court's order that they "produc[e] … the documents that are sufficient to show the relationship between MarkMonitor and each individual Plaintiff." Ex. 12 (*Cox* Jan. 25, 2019 Hr'g Tr. at 73:1-5).

Based on the foregoing, Cox believes that relief is warranted in *Cox* under Rule 60(b)(3). Plaintiffs' discovery violations and misstatements at trial fundamentally prejudiced Cox's ability to challenge Plaintiffs' proof of direct infringement—a prerequisite for holding an ISP like Cox secondarily liable. Cox seeks to intervene here to gain access to materials that were wrongly withheld in *Cox*, as well as other targeted discovery material concerning the 2016 project that led to the creation of that withheld evidence. These documents will provide the *Cox* court with a full record to decide Cox's anticipated Rule 60 motion, the deadline for which is January 12, 2022. *See* Fed. R. Civ. P. 60(c)(1); Echtman Decl. ¶ 6-7.

## LEGAL STANDARDS

"[C]ourts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *see EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases and explaining that "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders").

Rule 24 permits intervention for the purpose of obtaining discovery where the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see Rightchoice Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 18-cv-6037, 2020 WL 5733203, at *2 (W.D. Mo. Sept. 24, 2020). In weighing whether to exercise its discretion to grant a motion for permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," *Gubricky ex rel. Chipotle*

*Mexican Grill, Inc. v. Ells*, No. 16-cv-3180, 2018 WL 1558264, at *2 (D. Colo. Mar. 26, 2018) (citing *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)). Courts construe Rule 24(b) liberally in favor of intervention. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

## ARGUMENT

### A. Cox Has Standing To Intervene.

"[T]he Tenth Circuit [has] permitted 'collateral litigants" to intervene under Rule 24(b) for the purpose of modifying a protective order to gain access to pretrial discovery materials for use in other litigation, without any discussion of standing requirements." *Young v. Glanz*, No. 13-cv-315, 2018 WL 1588026, at *6 (N.D. Okla. Mar. 31, 2018) (citing *United Nuclear Corp.*, 905 F.2d at 1427). Regardless, Cox can readily demonstrate its standing to intervene.

A party has Article III standing to intervene in a case for purposes of obtaining unfiled discovery when it can show "that it would 'directly benefit from modification of the protective order.'" *CRST Expedited, Inc. v. TransAm Trucking Inc.*, No. 16-cv-0052, 2018 WL 9880439, at *4 (N.D. Iowa Oct. 9, 2018) (alterations omitted) (quoting *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988)). This burden is met when "there is evidence that one of the parties would share the documents with the third party if not for the protective order." *Id.* (collecting cases). That condition is satisfied here: Charter has not opposed sharing the documents. Echtman Decl. ¶ 8. Moreover, and independently, because the protective order impedes Cox's access to materials that would permit Cox to fully exercise its right to file its Rule 60 motion, Cox "would be adversely affected by the court's refusal to modify or vacate it" and therefore "ha[s] standing in the constitutional sense to seek review of the order" *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir. 1979). Finally, the relationship between the collateral litigants is sufficiently close. *See Holland & Hart LLP v. Mills*, No. 8-cv-1408, 2009 WL 3046318, at *1 (D. Colo. Sept.

7

22, 2009) (Hegarty, J.). As in *Mills*, Cox seeks access to discovery produced by a party to which it is adverse in another case. *Id.* This close relationship further underscores Cox's interest here.

### B. The *Cox* Litigation Shares Common Questions Of Law And Fact With This Action.

"When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits." *United Nuclear Corp.*, 905 F.2d at 1427.

This lenient standard is plainly satisfied here. As detailed above, Plaintiffs filed nearly identical cases against Cox and Charter. The form of infringement notices, the technical data, the copyrighted works, the parties and third parties, and the legal issues are the same. More specifically, the hard drive of "infringing" files used in the *Cox* case appears to be the same as the hard drive that was produced in this case, except that the hard drive here contains additional information that appears to reveal the true origins of the hard drives' contents—information that was omitted from the *Cox* production. *Supra* 4-6. Cox seeks that information here because it bears directly on identical proof offered by identical plaintiffs relevant to an identical legal issue.

This strong legal and factual nexus between the two suits is sufficient to satisfy Rule 24. And any argument Plaintiffs may raise with respect to the underlying law or facts that will ultimately form the basis for Cox's Rule 60 motion are properly litigated before the district court in *Cox*. *See Kahle v. Adams Cnty.*, No. 4-cv-1536, 2007 WL 2381403, at *2 (D. Colo. Aug. 16, 2007) (permitting intervention because there is "sufficient commonality between the facts" in the cases and noting that the objecting party "may, of course, challenge the relevance of any documents produced" in the other litigation).

8

### C. No Prejudice Will Result From Intervention.

Allowing Cox to intervene for purposes of modifying the Protective Order and obtaining access to the Rule 60 Material poses no prejudice. There is little chance of prejudice where "intervention [i]s not on the merits, but for the sole purpose of challenging a protective order." *United Nuclear Corp.*, 905 F.2d at 1427. The timeliness of Cox's motion is also a nonissue. Cox moved to intervene shortly after public disclosure, in this action, of the high probability that documents produced in this case are material to Cox's anticipated Rule 60 motion. Discovery is still underway here, and, again, because Cox's request to intervene "is for a collateral purpose," intervention would therefore not interrupt or delay "the adjudication of the rights of the existing parties." *Id.*; *see Gubricky*, 2018 WL 1558264, at *2-3 (finding "no cogent objection" to intervention for such a "limited purpose"); *see also United Nuclear Corp.*, 905 F.2d at 1427 ("Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose.").

Nor would granting Cox access to the materials it seeks impose any burden on Plaintiffs and their third-party agents. Plaintiffs have already produced the materials. In any event, Cox seeks access to only a very narrow set of materials. Specifically, Cox seeks (i) a hard drive of files, partially identical to a version produced in the *Cox* case, but with complete and accurate PCAP data, and an index related to the same; (ii) a spreadsheet that demonstrates the results of the 2016 investigation that generated the hard drive (the "Hash Report"); and (iii) certain deposition transcripts, exhibits, and expert reports, which either authenticate or otherwise provide necessary background information for these documents and additionally demonstrate the prejudice to Cox from Plaintiffs' discovery violations. *See* Mot. to Modify PO 3-7; Echtman Decl. ¶ 10.

9

Further, the rights of Plaintiffs and their third-party agents in maintaining the confidentiality of these documents will be fully preserved. A virtually identical protective order to the one here is in place in *Cox*, ensuring continuity of confidentiality protections. *See* Ex. 2 (*Cox* ECF 58). In addition, if necessary, Cox would sign the Protective Order in this case and/or agree to be bound by any additional restrictions.[2]

Finally, to the extent Plaintiffs or the third parties have any "cogent objection," it would be to the merits of Cox's anticipated Rule 60 motion and not to Cox's ability to seek access to the documents. Any such objection belongs in the *Cox* court. *See Kahle*, 2007 WL 2381403, at *2 (noting that objections regarding the produced documents can be asserted in the collateral litigation).

---

[2] As set forth in its concurrently filed Motion to Modify the Protective Order (at 10), Cox does not believe that Plaintiffs and the third parties have a strong basis to maintain designations over these documents, as they are not confidential or highly confidential and, in any event, their contents have largely been publicly disclosed in court filings and hearings conducted in open court. Moreover, any argument as to confidentiality from Plaintiffs is undermined by the fact that Plaintiffs should have produced these documents to Cox already—so, but for Plaintiffs' improper withholding, Cox would already have them.

## **CONCLUSION**

Based on the foregoing, Cox respectfully requests that the Court permit it to intervene in this action for the limited purpose of seeking relief under the Protective Order to obtain a narrow set of discovery material to support its anticipated Rule 60 motion in the *Cox* action.

Dated: September 21, 2021

Respectfully submitted,

*/s/ Elyse D. Echtman*
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com
*Counsel for Movant*
*Cox Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2021, I caused the foregoing document and supporting materials to be filed electronically with the Clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered within CM/ECF.

*/s/ Elyse D. Echtman*
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com