# Exhibit 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER RECORDS INC., et al

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

**ORDER on PENDING MOTIONS/OBJECTIONS (2)**

This order addresses two appeals from orders issued by the magistrate judge and the special discovery master.

## BACKGROUND

Plaintiffs are record companies and music publishers that produce and distribute commercial sound recordings and musical compositions. They collectively own or control millions of copyrighted musical compositions or sound recordings. The defendant, Charter Communications, Inc., is an internet service provider ("ISP") with more than twenty-two million subscribers nationwide. *Id*.

Plaintiffs contend that some Charter subscribers are using Charter's ISP services to repeatedly infringe plaintiffs' copyrighted works. Charter's terms of service prohibit users from engaging in copyright infringement and state that Charter reserves the right to terminate accounts of participants engaged in piracy. Plaintiffs have sent Charter hundreds of thousands of notices

1

detailing specific acts of infringement allegedly committed by specific Charter subscribers. However, according to the plaintiffs, Charter has not addressed the reported infringements because Charter does not want to lose revenue from these subscribers. On the contrary, plaintiffs contend that Charter's lack of action against known infringers "draws" (attracts) subscriptions, as subscribers know they can upload, download, and distribute infringing content via Charter's ISP service without consequence.

The gist of this lawsuit is plaintiffs' contention that Charter is secondarily liable for its subscribers' infringements on theories of contributory and vicarious liability. "[C]ontributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." *Diversey v. Schmidly,* 738 F. 3d 1196, 1204 (10th Cir. 2013). "Vicarious liability attaches when the defendant 'has the right and ability to supervise the infringing activity' and 'has a direct financial interest in such activities.'" *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.* 443 F.2d 1159, 1162 (2d Cir. 1971)).

## STANDARD OF REVIEW

The Court here reviews objections to non-dispositive orders of a magistrate judge on discovery disputes. "The district court must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a),

## PENDING "MOTIONS"

**A. Defendant Charter Communications, Inc.'s Objection to the Magistrate Judge's January 28, 2021 Order Regarding Privilege Log Item 28, ECF No. 362.**

The subject document is a series of Power Point slides as to which defendant claims attorney-client privilege. Special Discovery Master Rodriguez found that the document constitutes unprotected business advice, not privileged attorney-client advice. On appeal

2

Magistrate Judge Hegarty affirmed. *See* ECF No. 345. This appeal followed. Plaintiffs have responded. ECF No. 371. Defendant has replied. ECF No. 387.

Preliminarily, the Court takes this opportunity to express its appreciation for the countless hours devoted to this case, and in particular to myriad discovery issues, by Ms. Rodriguez and Judge Hegarty. The assistance they have provided to this Court during the course of an exceptionally aggressively disputed and protracted litigation has been extraordinary. The Court also congratulates Special Discovery Master Rodriguez on her recent nomination by the President to serve as a United States District Judge in this district.

The Court has reviewed Privilege Log Item 28 *in camera*. It consists of two documents. First, there is a series of 17 slides. Slide No. 1 is a cover showing that it is a presentation of Kirill Abramov and Kelly Starkweather, who are represented in the Objection to be in-house attorneys at Charter Communications, Inc. Slide 17 appears to indicate that the presenters were open to additional questions. Neither of those two slides contains any substantive information. Slides 2-16 are a series of questions as if they might have been frequently asked question by the recipients of the slide presentation. Presumably the two in-house lawyers provided answers to the questions during the presentation, but their answers are not shown. Each of the 17 slides is labeled "CONFIDENTIAL. Internal Only Subject to Attorney-Client Privilege."

The second document appears to be an internal Charter email to approximately 25 recipients attaching the "Question and Answer list from our Legal meeting a couple of weeks ago." This document, without the attachment, contains nothing that would be considered to be privileged, and it is not marked as an attorney-client privileged document. However, it also contains nothing relevant to the issues in this case. It is simply a cover email that presumably was used to distribute the Power Point slides internally.

3

The attorney-client privilege shields from discovery communications between an attorney and his or her client for the purpose of the client's obtaining legal advice. Absent a waiver, the advice provided is privileged, but generally, the client's communication seeking the advice would also fall within the privilege. Here, the questions posed in Slides 2-16 each either are actual questions that have been posed by Charter employees or are questions of the type that the employees would ask of their attorneys about issues in this case. They are questions of the nature of "What should we do" in this or that factual scenario. Although the answers are not provided, the slides reveal the questions and concerns that Charter employees have, or might have, about subjects that are at the heart of this case.

In my judgment, the Power Point slides were appropriately claimed as attorney-client privileged documents. They effectively would give plaintiffs and their attorneys a peek behind the curtain as to what advice is being sought by Charter's personnel from Charter's lawyers that relates to this case. I do not regard the slides as purely business advice. Accordingly, I conclude that the order of the magistrate judge requiring production of the slides was clearly erroneous. The slides are privileged and need not be produced.

### B. **Plaintiffs' Objections to February 23, 2021 Discovery Orders, ECF No. 390**,

There are two objections, one to an order requiring production of a "hash report," and the other requiring production of certain financial documents. Both orders modified or reversed orders on the same subject issued earlier in the case.

1. Hash Report.

During 2012-2015 a third party vendor hired by the Recording Industry Association of America, MarkMonitor, researched the Internet and attempted to identify infringements of plaintiffs' copyrighted works. MarkMonitor then sent some 700,000 notices of alleged

4

infringement to Charter. The notices contained a cryptographic "hash" that identified the file that Charter's subscriber was illegally distributing. Plaintiffs state that this was all done before litigation was contemplated and in the hope that Charter would act on the infringement notices without litigation. ECF No. 390 at 7.[1] They label this effort the "RIAA Notice Program." *Id.*

According to plaintiffs, the prospect of litigation arose in 2016 when plaintiffs analyzed the data generated by the RIAA Notice Program and determined that Charter was continuing to provide service to known repeat infringers. Plaintiffs' litigation counsel then prepared a spreadsheet of some 7,200 hashes counsel selected to investigate further based on counsel's analysis of the RIAA Notice Program. The spreadsheet is said to include information as to why counsel selected those particular hashes. Then MarkMonitor attempted to download files associated with the 7,200 hashes. The downloaded files were then analyzed by another third party vendor, Audible Magic, and counsel added the results of that analysis to counsel's spreadsheet. The result, plaintiffs claim was "a spreadsheet created by and at the direction of counsel," to which the parties now refer as the "Hash Report." *Id.* at 8. This is alleged by plaintiffs to be protected attorney opinion work product. This time it is the defendant who hopes to peek behind the curtain.

The issue was first addressed by the special discovery master in an order issued on August 12, 2020. She accepted plaintiffs' representation that the Hash Report was prepared by or for counsel in anticipation of litigation. Defendant maintained that the report was nevertheless discoverable because of Charter's substantial need for the information. Charter's argument was that, without this information, Charter "'cannot know the extent to which MarkMonitor was

---

[1] Parts of plaintiffs' motion, ECF No. 390, are redacted. The unredacted version is ECF No. 391. Parts of defendant's response, ECF No. 408, are redacted. The unredacted version is ECF No. 409. I will cite the redacted versions, but I have reviewed the unredacted versions as well. Plaintiffs' reply, ECF No. 416, contains no redactions.

5

unable in 2016 to locate and authenticate (with Audible Magic) the hashes for which the RIAA sent notices between 2012 and 2015. This information goes directly to Charter's ability to challenge Plaintiffs' direct infringement evidence.'" ECF No. 230 at 34 (quoting Charter's brief). The special discovery master found that Charter had "failed to meet its burden at this time" of showing a substantial need for the information that could not be obtained by other means without undue hardship. *Id.* at 36.

Charter appealed to the magistrate judge who conducted a hearing including an *in camera* session during which plaintiffs described the Hash Report in detail. He concluded: "I agree with the Special Master's analysis at ECF 230 and made the independent determination that the Hash Report constitutes attorney work product and, at least at the present, Defendant has not established sufficient need to overcome the claim of privilege." ECF No. 332 at 1. However, he cautioned that "Plaintiffs cannot make affirmative use of a portion of the results of the Hash Report and shield the remainder as work product." *Id.* He noted that plaintiffs had represented that "the fruit of every aspect of MarkMonitor's 2016 efforts ... they intend to use at trial has been produced to Defendant." *Id.* This order was not appealed.

However, the "at this time" and "at least at the present" qualifiers were just enough of a toehold for defendant to try again, and this they did during a marathon two-day hearing conducted jointly by Magistrate Judge Hegarty and Special Discovery Master Rodriguez February 22-23, 2021. Specifically, defense counsel noted that plaintiffs will have to present evidence of the alleged infringement. He argued that in the *Cox* case (a similar case between plaintiffs and a different Internet Service Provider that was tried in the Eastern District of Virginia) plaintiffs called individuals from Audible Magic and MarkMonitor as witnesses to present the information they had generated for RIAA and the plaintiffs. The MarkMonitor

6

witness testified as to the reliability of its system and the files plaintiffs relied on as evidence of direct infringement. According to counsel, if plaintiffs plan to present a MarkMonitor individual as a fact witness, they can't claim a portion of its work as work product. If, instead, plaintiffs plan to present the MarkMonitor witness as an expert witness, they can't shield from discovery MarkMonitor's communications with plaintiffs' counsel. In short, instead of "substantial need," counsel argued that there was no work product (or attorney-client) protection for the Hash Report in the first place. ECF No. 391-3 (partial transcript of the February 23, 2021 hearing) at 4 6 (tr. pp. 49-51).

This time defendant succeeded. The Special Master announced,

[W]e do believe that the claim of work product is somewhat dubious here. It is not entirely clear whose work product protection this is, who's claiming it, et cetera. But even assuming that work product protection would cover Hash Report, there is a substantial need for this evidence, as set forth by the defendants; and that this information is not available from another source, particularly given that Audible Magic no longer has the underlying data and defendants have attempted to obtain the underlying data from third-party sources, in particular MarkMonitor and Audible Magic.

Therefore, it is our opinion that the substantial need test, if a work product protection even did exist in this situation, that showing has been met. Therefore, we determined that the document in question, that is, the has tag report, should be produced.

*Id.* at 10-11 (Tr. pp. 110-11).

Plaintiffs' argument restates the arguments they have made before. They assert that they have produced all the evidence collected from the RIAA Notice Project on which they will rely at trial. ECF No. 390 at 5. Discovery is not limited to what the answering party chooses to present at trial. Plaintiffs reiterate that the Hash Report began with a spreadsheet created by counsel "based on ***its own internal analysis and strategic judgment.***" *Id.* at 6 (emphasis in original). They acknowledge, however, that MarkMonitor supplemented the spreadsheet with additional information to produce the so-called "Hash Report." *Id.* In *ipse dixit* fashion (it is

7

because I say it is) plaintiffs proclaim that Charter has no substantial need for the document because it is not "essential" or "greatly probative" of any issues, and that Charter can obtain the substantial equivalent of the information elsewhere without undue hardship. *Id.* Plaintiffs' best argument is that this issue was decided by Magistrate Judge Hegarty back in December 2020 after a careful examination including an *in camera* review session; and, implicitly, that the joint reversal of that decision during the course of a difficult, two-day hearing concerning multiple disputes without a clear explanation of the reasons should not be accepted by this Court.

I accept plaintiffs' repeated representation that counsel created the original spreadsheet in anticipation of litigation. Neither the special discovery master nor the magistrate judge ever questioned that, nor do I have any reason to do so. The problem is that MarkMonitor supplemented the spreadsheet and, apparently, plaintiffs will present a MarkMonitor witness at trial to discuss the work MarkMonitor did to identify the infringed files. Plaintiffs cannot present a portion of MarkMonitor's work while shielding other portions from discovery. Plaintiffs' assurance that they have produced the MarkMonitor work product that plaintiffs wish to rely on is essentially meaningless.

The Court has two concerns. On the one hand, plaintiffs represent that the spreadsheet includes information as to why counsel selected the particular 7,200 hashes for further investigation. That plainly is attorney opinion work product, and Charter has no right or need to gain access to it. On the other hand, plaintiffs can't have it both ways – they can't commission MarkMonitor to do the investigatory work and expect to have MarkMonitor present its work and work product at trial without exposing all of MarkMonitor's work on this case to scrutiny.

Accordingly, the Court finds that the final order of the magistrate judge, joined by the special master, that plaintiffs must produce the Hash Report was not clearly erroneous with the

8

exception that plaintiffs will be permitted to redact the portion(s) that provide the reason for counsel's selection of the particular hashes for further investigation and supplementation.

2. <u>Track-Level Revenue Data</u>.

In October 2019 Judge Hegarty denied defendant's request for track-level revenue data beyond that which was already produced in the *Cox* case, finding that the latter was sufficient to enable defendant to draw inferences about the data not produced in *Cox*. However, in the February 2021 hearing the magistrate judge and special master ordered that the additional track-level data be produced. In addition to complaining that the issue was already decided, plaintiffs state that producing this additional data would be enormously burdensome. They add that the information has little probative value since they are seeking statutory damages, not actual damages.

The fact that the issue was analyzed at an early stage of the case does not rule out that circumstances could change during the following 16 months of this case. The fact that the production of the information would be burdensome is of little consequence in this case in which plaintiffs are seeking extraordinary sums, and they (like defendants) have been able and willing to throw large teams of highly expensive lawyers at this case to the tune of undoubtedly millions of dollars in legal fees per side. The fact that plaintiffs are seeking "only" statutory damages does not persuade this Court that actual lost revenues are irrelevant. On the contrary, plaintiffs' actual losses are relevant to the jury's determination of an appropriate amount of statutory damages, not to mention the amount that this Court would ultimately accept.

The issue, however, is whether plaintiff has shown that the burden or expense outweighs the likely benefit of the information to the extent that the generation and production of the information is <u>unduly</u> burdensome. The Court found that the data assembled for the *Cox* case,

9

estimated to be about 80% of the total, was a sufficient sample to enable experts to draw reasonable inferences about the remaining 20%. ECF No. 159 at 4. I agree with plaintiffs that defendant still has not shown why that cannot be done. Defendant's argument now is that the additional information would show how "shifts in music consumption" towards streaming has affected plaintiffs' revenue. That begs the question of whether qualified experts could draw reasonable inferences from the data already produced. As plaintiffs point out, they have produced their annualized total U.S. revenues for the years 2010 through 2016, which defendant's expert(s) can take into consideration in drawing inferences.

Particularly since plaintiff is not seeking actual lost revenues, the Court finds that the burden of generating the additional 20% of the track-level revenue substantially outweighs the benefit of the additional information and, therefore, the Court reverses the order requiring plaintiff to generate and produce the additional data.

## ORDER

1. Defendant's objection, ECF No. 362, is GRANTED. The Court reverses the order of the magistrate judge and sustains the objection to production of Privilege Log Item 28.

2. Plaintiffs' objection to February 23, 2021 discovery orders, ECF No. 390, is GRANTED IN PART AND DENIED. (a) The order of the magistrate judge requiring production of the Hash Report is affirmed with the exception that plaintiffs may redact such portions of the spreadsheet that indicate counsel's reasons for selecting the 7,200 hashes; (b) the order requiring production of additional track-level revenue data is reversed.

DATED this 8th day of April, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

Case No. 1:19-cv-00874-RBJ-MEH Document 486 Filed 04/08/21 USDC Colorado Page 11 of 12

11