**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| WARNER RECORDS, INC., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC. <br><br> Defendant. | Case No. 1:19-cv-00874-RBJ-MEH |

**MEMORANDUM IN SUPPORT OF COX COMMUNICATIONS, INC.'S**
<u>**MOTION TO MODIFY THE PROTECTIVE ORDER**</u>

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................. 8

      A.      No Prejudice Will Result From Modifying The Protective Order. .......................... 8

      B.      The Benefits Of Modifying The Protective Order Outweigh Any Prejudice.
            ...................................................................................................................... 11

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Holland & Hart LLP v. Mills*,
   08-CV-01408-REB-MEH, 2009 WL 3046318 (D. Colo. Sept. 22, 2009) ...............................11

*Mann v. Boatright*,
   477 F.3d 1140 (10th Cir. 2007) ...............................................................................................10

*Martindell v. Int'l Tel. & Tel. Corp.*,
   594 F.2d 291 (2d Cir.1979)......................................................................................................11

*SEC v. Merrill Scott & Assocs., Ltd.*,
   600 F.3d 1262 (10th Cir. 2010) ..........................................................................................7, 11

*United Nuclear Corp. v. Cranford Ins. Co.*,
   905 F.2d 1424 (10th Cir. 1990) ..............................................................................7, 8, 10, 11

**Statutes**

Fed. R. of Civ. P. 60(b)(3) ...........................................................................................................1, 12

## **INTRODUCTION**

Cox Communications, Inc. ("Cox") is a defendant in a nearly identical suit brought by most of the same plaintiffs in this case. *See Sony Music Ent. v. Cox Commc'ns*, No. 1:18-cv-950 (E.D. Va.).[1] In its concurrently filed Motion to Intervene for Purposes of Modifying the Protective Order ("Motion to Intervene"), Cox seeks to intervene for the limited purpose of modifying the Protective Order (ECF 63) in this case so it may obtain a targeted set of discovery material (the "Rule 60 Material") for use in a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(3) in the *Cox* case.

In *Cox*, Plaintiffs appear to have engaged in significant misconduct related to their evidence of direct infringement—a threshold issue that Plaintiffs must prove before seeking to hold an ISP like Cox or Charter secondarily liable. As set forth more fully in Cox's Motion to Intervene, Plaintiffs' direct infringement case depended on a hard drive (the "*Cox* Hard Drive") that, according to Plaintiffs, contained files proving Cox subscribers' direct infringement of Plaintiffs' works. But Plaintiffs breached their discovery obligations with respect to certain materials that fundamentally undermine that evidence by demonstrating that, contrary to Plaintiffs' assertions at trial, the files contained on the hard drive were downloaded by Plaintiffs' consultants several years after the alleged infringement the files purport to prove. Plaintiffs then misrepresented the contents of the hard drive in persuading the district court, over Cox's repeated objections, to allow that exhibit into evidence, and ultimately to obtain an unprecedented $1 billion judgment against Cox.

Public filings and statements in the instant action demonstrate that Plaintiffs' disclosed materials in discovery here that they should have produced in the *Cox* litigation. There is sufficient

---

[1] We cite docket entries from the *Cox* litigation "*Cox* ECF __"; docket entries in this action "ECF ___"; Cox's contemporaneously filed Motion to Modify the Protective Order "Mot. to Modify PO"; and the Declaration of Elyse D. Echtman in support of Cox's Motions "Echtman Decl."

cause to modify the Protective Order in this case for purposes of allowing Cox to obtain and use these materials in a Rule 60 motion, promoting the efficient and just resolution of the *Cox* case.

There is no prejudice to Plaintiffs in modifying the Protective Order. The Rule 60 Material should have been produced to Cox by Plaintiffs and their third-party agents in the *Cox* litigation or would have flowed from proper disclosure in that case. Even now, the burden on Plaintiffs and their third-party agents would be minimal: Cox does not ask them to do anything; Cox can seek the information from other parties to the case. And modifying the Protective Order would in no way expose material that ought to be kept confidential. Indeed, there is good reason to lift the Protective Order as to the Rule 60 Material, as much of its content has already been publicly disclosed. Nevertheless, Cox will abide by the Protective Order's terms and maintain the purported confidentiality of the Rule 60 Material.

Modifying the Protective Order would also advance good judicial administration and justice. Because discovery is now closed in *Cox*, modifying the Protective Order so that Cox can obtain and use the Rule 60 Material is the most efficient option. Doing so would also ensure that Plaintiffs are not able to profit from their misconduct in *Cox*. Plaintiffs should not be able use the Protective Order to shield their misdeeds and perpetuate their fraud. For these and the additional reasons set forth below, Cox respectfully requests that the Court grant the motion.

## **FACTUAL BACKGROUND**

The Rule 60 Material relates to a litigation-focused project initiated by Plaintiffs' counsel in 2016 (the "2016 Project"), which enlisted a consultant—MarkMonitor—to recreate a set of files allegedly downloaded by users of peer-to-peer networks. As detailed below, Plaintiffs in *Cox* concealed critical information about the 2016 Project and the evidence it generated.

***The Hard Drives.*** Plaintiffs' direct infringement case in *Cox* was based on evidence generated by two consultants, MarkMonitor and Audible Magic. Together, these consultants

2

claimed to have monitored the internet for infringing downloads or uploads, verifying contemporaneously that the files being exchanged matched a recording in a database of Plaintiffs' protected works. *See* Mot. to Intervene at 2-3. At trial, Plaintiffs offered the *Cox* Hard Drive, claiming through its witnesses that the drive contained contemporaneously downloaded files that MarkMonitor and Audible Magic had used to verify infringement before notices were sent to Cox between 2012 and 2014. *Id.* at 2. Plaintiffs' expert, George McCabe, then relied on a file's presence on the drive as a necessary condition to a demonstration of direct infringement. *Id.*

The nature of both MarkMonitor's work and the *Cox* Hard Drive's contents was a central issue during discovery. Cox sought documents related to the analyses of MarkMonitor's system and to the evidence that MarkMonitor compiled. Ex. 13 (Defendants Cox Communications, Inc.'s and CoxCom, LLC's First Set of Requests for Production, dated November 19, 2018, Request Nos. 141 & 142). Although Plaintiffs initially proposed to limit their response to analyses from 2012-2014, Ex. 14 (Plaintiffs' Objections and Supplemental Responses to Defendants Cox, Inc. and CoxCom, LLC's First Set of Request for Production, Supp. Resp. to RFP 141, dated January 10, 2019), Cox insisted that Plaintiffs provide analyses generated after the fact as well. Ex. 15 (*Cox* ECF 75 at 20, Defendants' Memorandum of Law in Support of Their Motion to Compel). Plaintiffs ultimately agreed to produce any information "regarding the reliability of the MarkMonitor system used to produce the copyright notices sent to Cox." Ex. 16 (*Cox* ECF 82 at 24, Plaintiffs' Memorandum of Law in Opposition to Defendants' Moton to Compel). And at a January 25, 2019 hearing, Plaintiffs represented that their proposed production would contain "the evidence that MarkMonitor has captured for purposes of the case," including "all the music," and "[d]ocuments to show the information concerning the infringement of the copyrighted works in suit by their subscribers." Ex. 12 (*Cox* Jan. 25, 2019 Hr'g Tr. at 68:14-20).

3

This was not done. In this action, pursuant to Charter's motion to compel, Plaintiffs appear to have produced a hard drive similar to the *Cox* Hard Drive, but that included "packet capture" ("PCAP") files that seemingly had been omitted from the *Cox* Hard Drive. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 9). According to Plaintiffs' counsel here, the PCAPs were recorded by MarkMonitor to show "when and where each of the audio files on the drive was downloaded" from peer-to-peer networks. *Id.* Plaintiffs' counsel further averred that the hard drive "contain[ed] all of the 2016 downloads" from the 2016 Project. *Id.*

These disclosures and statements on the public record demonstrate a high likelihood that Plaintiffs in *Cox* did not, as they represented they would, disclose all "evidence that MarkMonitor … captured," nor complete information "regarding the reliability of the MarkMonitor system used to produce the copyright notices sent to Cox." Ex. 16 (*Cox* ECF 82 at 24, Plaintiffs' Memorandum of Law in Opposition to Defendants' Moton to Compel). And these failures prevented Cox, the district court, and the jury from learning key information that would have shown that the contents of the *Cox* Hard Drive were in fact downloaded not contemporaneously with any alleged infringement, but years after the fact. Mot. Intervene at 3-6.

***The Hash Report.*** Also produced in this case, after extensive litigation on Charter's motion to compel, is a document known as the "Hash Report." Ex. 11 (*Charter* ECF 436, Order on Pending Motions/Objections (2)). The Hash Report was also created in 2016, as part of the 2016 Project. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 6). In its motion to compel, Charter argued that the Hash Report reflects "the extent to which MarkMonitor was unable in 2016 to locate and authenticate (with Audible Magic) the hashes for which the RIAA sent notices between 2012 and 2015," which "goes directly to Charter's ability to challenge Plaintiffs' direct infringement evidence." Ex. 11 (*Charter* ECF 436 at 5-6, Order on Pending Motions/Objections (2)). After a

4

two-day hearing, the Court ruled that Charter had demonstrated "substantial need," ordering Plaintiffs to produce the Hash Report. *Id.*

Like the PCAPs, the Hash Report seemingly contains what Plaintiffs' counsel in *Cox* labeled "the evidence that MarkMonitor ha[d] captured for purposes of the [*Cox*] case," Ex. 12 (*Cox* ECF 93, Jan. 25, 2019 Hr'g Tr. at 68:14-20), and information "regarding the reliability of the MarkMonitor system," Ex. 16 (*Cox* ECF 82 at 24, Plaintiffs' Memorandum of Law in Opposition to Defendants' Moton to Compel). Yet Plaintiffs disclosed neither the existence of the Hash Report nor the report itself in the *Cox* litigation. Based on Charter's arguments for disclosure here, the Hash Report seemingly would have shown when the files on the *Cox* Hard Drive were downloaded, as well as the extent to which the 2016 Project was unable to replicate the alleged verification of infringement that took place in 2012-2014. *See* Ex. 11 (*Charter* ECF 436 at 5-6, Order on Pending Motions/Objections (2)).

***2016 Statement of Work.*** Lastly, the public record in this case strongly suggests that Plaintiffs in *Cox* breached discovery obligations with respect to a statement of work with MarkMonitor from 2016 (the "2016 Statement of Work"). The 2016 Statement of Work documents the 2016 Project that ultimately yielded the Hard Drives and their contents, as well as the Hash Report. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 9).

The district court in *Cox* explicitly ordered "production of the documents that are sufficient to show the relationship between MarkMonitor and each individual Plaintiff." Ex. 12 (*Cox* ECF 93, Jan. 25, 2019 Hr'g Tr. at 73:1-5); *see id.* at 73:16-74:4 ("[I]f you signed a contract with them, if you have a written agreement, if you have an understanding, you know, a letter agreement that says you're going to do this, we will pay you this, you provide me with these services, these are your obligations, these are my obligations, that kind of agreement or description of the relationship

5

between MarkMonitor and your clients ... with respect to ... the program at issue in this case."). But while Plaintiffs disclosed other agreements pursuant to that order, they did not produce the 2016 Statement of Work, Ex. 17 (*Charter* ECF 400, Feb. 23, 2021 Hr'g Tr. at 50:12-16) (Charter counsel: "Your Honor, the plaintiffs did not produce the 2016 consulting agreement in Cox, even though such agreements were ordered by the magistrate. So we were not aware of the project in Cox, so it was a very different setup.").

Ultimately, the 2016 Statement of Work was produced in *Cox* by MarkMonitor in a later, unrelated production, *id.* at 72:9-14, buried among other MarkMonitor agreements unrelated to Plaintiffs' ISP notice program. But Cox—led to believe it had already received any agreement showing "the relationship between MarkMonitor and each individual Plaintiff," Ex. 12 (*Cox* ECF 93, Jan. 25, 2019 Hr'g Tr. at 73:1-5)—could not have appreciated the significance of the 2016 Statement of Work. As Plaintiffs acknowledged in a public hearing here, the 2016 Statement of Work vaguely says only that it was conducted "'[in] anticipation of litigation.'" Ex. 18 (*Charter* ECF 400, Feb. 23, 2021 Hr'g Tr. at 66:10-11).

It now appears, however, that the 2016 Statement of Work outlined the process by which Plaintiffs generated evidence of direct infringement for all of their litigation against ISPs, Cox included. Ex. 11 (*Charter* ECF 436 at 5, Order on Pending Motions/Objections (2)); *see* Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 9). As a result of the timely revelation of the 2016 Statement of Work in this case, Charter had the opportunity to depose Plaintiffs' witnesses with respect to the 2016 Project. Cox never had that opportunity in the action against it because Plaintiffs concealed the 2016 Statement of Work's significance by representing it had previously disclosed all agreements relevant to the *Cox* litigation.

\*\*\*

The Rule 60 Material Cox seeks consists of: (i) a hard drive of files partly identical to a version produced in the *Cox* case but with complete and accurate data that demonstrates that the allegedly infringing files were *not* downloaded during the claims period in *Cox*, but years later as part of the 2016 Project and in anticipation of the litigations against Cox, Charter, and other ISPs; (ii) a directory of that hard drive; (iii) an Excel spreadsheet that compiles the results of the 2016 Project; and (iv) certain deposition transcripts, exhibits, and expert reports that Cox believes will support its anticipated Rule 60 motion. Echtman Decl. ¶¶ 5, 10. Cox believes there is a strong probability that had Plaintiffs disclosed this Rule 60 Material, the evidence on which they relied at trial would not have been admitted or, at a minimum, the jury would have had the opportunity to assess the credibility of infringement claims that relied on an after-the-fact and partial re-creation of the allegedly infringing files. A table specifically identifying the Rule 60 Material appears in the Echtman Declaration at ¶ 10.

## **LEGAL STANDARD**

"As long as a protective order remains in effect, the court that entered the order retains the power to modify it…." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). "Typically, when considering whether to modify a protective order, courts examine any tangible prejudice to the party opposing modification that outweighs the benefits of modification." *SEC v. Merrill Scott & Assocs., Ltd*., 600 F.3d 1262, 1272 (10th Cir. 2010). "[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *United Nuclear*, 905 F.2d at 1428 (quotation marks and citation omitted). And even then, the district court still has "broad discretion" to modify the Protective Order if the benefits outweigh that prejudice. *Id.*

7

## **ARGUMENT**

Neither Plaintiffs nor their third-party agents in this case will suffer any tangible prejudice—let alone "substantial" prejudice—if this Court modifies the Protective Order so that Cox may obtain and use the Rule 60 Material. *United Nuclear*, 905 F.2d at 1428. At the same time, modifying the order will spare the *Cox* court and parties undue burden. And it will prevent Plaintiffs from shielding their misconduct and its consequences from the *Cox* court.

**A. No Prejudice Will Result From Modifying The Protective Order.**

Modifying the Protective Order will not prejudice Plaintiffs. To start, the Rule 60 Material should have already been made available in the *Cox* litigation. It was only because of Plaintiffs' misconduct that it was not. As demonstrated above and in Cox's Motion to Intervene, there appears to be a high likelihood that Plaintiffs wrongfully withheld information showing that they generated the bulk of their direct infringement evidence *after-the-fact* in 2016—through an effort to recapture files allegedly downloaded two to four years *earlier*.

For instance, Plaintiffs relied on a hard drive that they said "contain[ed] digital files that were the basis of MarkMonitor's infringement notices [sent] to Cox" between 2012 and 2014. Motion to Intervene at 3 (quoting Ex. 8, *Cox* ECF 539 at 22, Plaintiffs' Omnibus Memorandum in Opposition to Cox's Motions *in Limine* Numbers 1-10). Plaintiffs' technical expert specifically testified that the "hard disc" contained files that "were captured during [the] downloading step" in the process MarkMonitor used between 2012 and 2014 to verify that the illegally downloaded works were owned by Plaintiffs. Ex. 6 (*Cox* Trial Tr. at 515:10-22). "[T]hat's what's on the hard drive," she confirmed, "the [specific files] that were downloaded [and] matched." *Id.* at 516:17-20.

But Plaintiffs failed to disclose the PCAP data that would have shown when and where the files on the hard drive were downloaded from peer-to-peer networks, despite the representation

8

that they had produced "the evidence that MarkMonitor ha[d] captured for purposes of the [*Cox*] case." *Supra* 2-4. They also failed to produce the Hash Report, while concealing the significance of the 2016 Statement of Work. Through public disclosures of discovery conducted in this case, Cox learned that the audio files on the *Cox* Hard Drive were downloaded in 2016, not before notices were sent between 2012 and 2014, and that the 2016 Project may in fact have failed to replicate significant portions of the infringement allegedly detected by MarkMonitor and Audible Magic. *Supra* 4-6.

Had Plaintiffs produced a complete hard drive, and timely and adequately produced the 2016 Statement of Work, Cox would have been able to build its case that Plaintiffs' evidence of direct infringement was defective. Those materials appear to show that Plaintiffs lacked direct evidence that the works they claimed Cox subscribers infringed actually were downloaded over the Cox network during the relevant period.

Because the Rule 60 Material is information that Plaintiffs or their third-party agents were required to, but did not, timely or adequately disclose in the *Cox* litigation, Plaintiffs cannot be prejudiced by an order permitting Cox to obtain it now. In fact, it is the same kind of material Plaintiffs and their third-party agents produced to Cox—except that this time it would be complete. It also is the same information Plaintiffs or third-party agents produced in this litigation. Plaintiffs were not unfairly prejudiced by disclosing that information to Charter's counsel in this case, and they will not be unfairly prejudiced by disclosing it to Cox's counsel, either. The two are similarly situated—indeed, the two parties share counsel.

There is no reason to think that permitting Cox to obtain the Rule 60 Material subject to the Protective Order's strictures would burden Plaintiffs in any other way. The Protective Order in this case will fully protect Plaintiffs' and their third-party agents' respective interests in

9

maintaining the confidentiality of these materials upon their disclosure to Cox just the same as with their production to Charter. As the Tenth Circuit explained in *United Nuclear*, "any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing [i]ntervenors under the restrictions on use and disclosure contained in the original protective order." 905 F.2d at 1428. The concern is even further diminished here because there is a nearly identical protective order governing the *Cox* case. Echtman Decl. ¶ 12. These dual layers of protection will ensure that the material stays confidential.

Not that any of that is necessary. Much of the content of the Rule 60 Material has already been publicly disclosed through public court filings, including transcripts of hearings in open court and pleadings. *Supra* 2-6. Accordingly, and in lieu of permitting Cox to intervene and modifying the Protective Order to admit Cox to its terms, the Court would be fully justified in de-designating the Rule 60 Material. *See United Nuclear*, 905 F.2d at 1427 ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it"; "modification of a protective order, like its original entry, is left to the discretion of the district court."). There is, after all, a "strong presumption in favor of public access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).

What is more, granting Cox's proposed relief would not require Plaintiffs to take any action. Cox is not presently asking this Court to order Plaintiffs, their third-party agents, or anyone else to produce anything. Cox simply asks that the Protective Order not be a hindrance to its efforts to obtain and use the documents, subject to the existing terms of the Protective Order. Echtman Decl. ¶ 12. That is consistent with Judge Hegarty's decision in *Holland & Hart LLP v. Mills*, 08-CV-01408-REB-MEH, 2009 WL 3046318 (D. Colo. Sept. 22, 2009), to grant a party's request to

intervene for purposes of modifying a protective order so that it would not bar that party from obtaining material produced in discovery to support a collateral litigation.

### B. The Benefits Of Modifying The Protective Order Outweigh Any Prejudice.

Plaintiffs face no prejudice from the proposed modification of the Protective Order, but even if they did, the benefits outweigh any prejudice.

Modifying the Protective Order would "serve the vital function of 'secur[ing] the just, speedy, and inexpensive determination'" of Cox's dispute with Plaintiffs in *Cox*. *Merrill Scott*, 600 F.3d at 1272 (alteration in original) (quoting *Martindell v. Int'l Tel. & Tel. Corp*., 594 F.2d 291, 295 (2d Cir.1979)). As for efficiency, "when a collateral litigant seeks access to discovery produced under a protective order, there is a countervailing efficiency consideration—saving time and effort in the collateral case by avoiding duplicative discovery." *United Nuclear*, 905 F.2d at 1428. Cox cannot obtain the Rule 60 Material case as expeditiously in the *Cox* case as it can here because discovery there closed long ago and judgment has been entered. Plaintiffs may suggest there is some other way for Cox in its case to obtain the Rule 60 Material, but their "desire to make it more burdensome for [i]ntervenors to pursue their collateral litigation is not legitimate prejudice." *Id.*

As for justice, Plaintiffs should not be able to use the Protective Order in this case to hide their misconduct in the *Cox* case. In *Cox*, Plaintiffs wrongfully withheld certain materials in discovery and otherwise misrepresented the origin of discovery they did produce. *Supra* 2-6. For that reason, Cox intends to file a Rule 60(b)(3) motion for relief from judgment. Without the Rule 60 Material, the district court in *Cox* will not have the full picture it needs to evaluate that motion.

11

## CONCLUSION

Based on the foregoing, Cox respectfully requests that the Court modify the Protective Order so that it may obtain and make use of the Rule 60 Material in the *Cox* case.

Dated: September 21, 2021

Respectfully submitted,

*/s/ Elyse D. Echtman*
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com
*Counsel for Movant*
*Cox Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2021, I caused the foregoing document and supporting materials to be filed electronically with the Clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered within CM/ECF.

> */s/ Elyse D. Echtman*
> Elyse D. Echtman
> ORRICK, HERRINGTON & SUTCLIFFE LLP
> 51 West 52nd Street
> New York, NY  10019
> Tel: (212) 506-5000
> Fax (212) 506-5151
> eechtman@orrick.com