# Exhibit 5

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,          :
                                 :
    -vs-                         :    Case No. 1:18-cv-950
                                 :
                                 :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.          :
                                 :
---------------------------------:


HEARING ON MOTIONS

October 24, 2019

Before:  Liam O'Grady, USDC Judge


APPEARANCES:


Matthew J. Oppenheim, Scott A. Zebrak, Jeffrey M. Gould,
and Andrew Guerra, Counsel for the Plaintiffs

Thomas M. Buchanan, Michael S. Elkin, Jennifer A. Golinveaux,
Thomas Patrick Lane, and Diana Hughes Leiden,
Counsel for the Defendants


Norman B. Linnell   OCR-USDC/EDVA   (703)549-4626

Case No. 1:19-cv-00874-RBJ-MEH   Document 522-7   filed 09/21/21   USDC Colorado   pg 3 of 8
Case 1:18-cv-00950-LO-JFA   Document 535   Filed 10/28/19   Page 93 of 127 PageID# 23364

93

1  something that they do in trolling peer-to-peer sites to
2  develop an inventory of potentially suspect files.
3             Then what you do is you go to the second step, this
4  is their so-called verification step.  This is the step where
5  MarkMonitor goes to Audible Magic and they confirm, hey, this
6  is the suspecting file, it's something you guys have in your
7  database, because if you do we know it belongs to the
8  plaintiffs.  Right?
9             The third step, this is the logging step.  Once
10 MarkMonitor has gotten the verification, it then logs the data,
11 whatever -- that's, obviously, a subject of debate here.  They
12 log that into the MarkMonitor database.
13            And then you go to the fourth step where MarkMonitor
14 actually connects a Cox subscriber.  It confirms that the
15 subscriber is infringing.  The so-called handshake that
16 everybody is talking about.
17            And those are the steps.  And there is a fifth step,
18 of course, the notice step where they actually send the notice.
19 That relates to contributory liability, which I will get to
20 when I get to that argument.
21            So what I would like to focus on in each of these
22 four steps is why there is an insufficient foundation for Your
23 Honor to conclude at this stage that there is direct
24 infringement.  If you take a look at the first step, you have
25 to ask yourself, or I would hope the Court would ask itself,

94

1 where is the proof in the record, beyond conclusory statements,
2 that MarkMonitor has actually done what it says it did rather
3 than just to assume that it did?
4 What do they have? They have pointed to a hard
5 drive, the hard drive of 57,000 some-odd recordings. But the
6 problem is that it lacks foundation because, number one, nobody
7 bothered to even listen to the files.
8 Secondly, plaintiffs didn't produce any reference
9 files of their works in this case. So nothing could be done to
10 actually match this -- the contents of the hard drive to what
11 it is plaintiffs actually claim were infringing. But what we
12 do know, Your Honor, what we do know is that the files on the
13 hard drive were dated 2016 and later.
14 We can conclude on that basis, and there is another
15 point I want to make, but there is no reliable basis to infer
16 that MarkMonitor searched for and downloaded reference copies
17 of the plaintiffs' works in suit, nor were they downloaded in
18 advance of the notices being sent.
19 Now, if we go to step two, this is the verification
20 stage. And we have a number of issues with this particular --
21 with the foundation of this. The first is that there is no
22 evidence in the record that plaintiffs actually lodged original
23 works with Audible Magic to create the referenced library.
24 They say that, but there is no witness that testified, there is
25 no declaration that lays out from the record labels, we are

Case No. 1:19-cv-00874-RBJ-MEH   Document 522-7   filed 09/21/21   USDC Colorado   pg 5 of 8
Case 1:18-cv-00950-LO-JFA   Document 535   Filed 10/28/19   Page 95 of 127 PageID# 23366

95

1   giving to you MarkMonitor, MarkMonitor -- I mean, Audible
2   Magic, I apologize -- Audible Magic has actually received these
3   sound recordings and they have ingested them or any of that.
4   There is just no foundation for it.
5          And we believe that to be -- on that basis there is
6   no reliable mechanism to infer that the files located by
7   MarkMonitor later were matched against plaintiffs' works in
8   suit.
9          Secondly, with regard to this second step here, the
10  only evidence of this match is metadata recorded in the
11  spreadsheets.  But as Your Honor knows from reading the papers,
12  the spreadsheet on which plaintiff intends to rely is missing
13  Audible Magic data from before 2015 because they didn't bother
14  to include for the BitTorrent files some 14 out of the 17
15  fields.  We don't know what was recorded there.
16         Two, it is an inadmissible summary of the missing
17  Audible Magic data.  And I want to pause here and just go over
18  this argument because it's important.  It did crop up.
19  Recently Judge Anderson asked you to ultimately deal with this,
20  and it will be part of an in limine motion.  But I just want to
21  take Your Honor through it very quickly because it does relate
22  to the foundation issue.
23         As Your Honor well knows, under Federal Rule of
24  Evidence 1006, a summary is admissible to prove the content of
25  voluminous evidence only if the proponent makes the originals

96

1  available to the other side.

2          What we have here is an extract.  We have data from a
3  database.  We requested -- we were -- we asked the Court, we
4  asked the other side for it, MarkMonitor for it.  We went to
5  court.  We got a Court order.  It wasn't turned over.  We
6  complained about it.  And what we have is the so-called '431
7  spreadsheet.

8          And we believe that is a summary in the
9  circumstances.  And we believe that the case law is clear that
10 these selective extracts were from a database, and we believe
11 it's a summary.

12         If you take a look at the Branch case, which we have
13 cited, it is a Judge Payne decision from two years ago where
14 there was a spreadsheet selectively compiled from a database.
15 The Court held there that it clearly was a summary that would
16 need to have the underlying database be provided to counsel.

17         Similarly, the District Court in Maryland in the
18 Sprint Nextel case, another case that we cited in our reply
19 brief, indicated that spreadsheets combining data and analysis
20 from different sources were Rule 1006 summaries.

21         And, of course, we know here that the MarkMonitor
22 database -- and this is not really disputed, Your Honor --
23 contained both Audible Magic data as well as whatever
24 MarkMonitor has that we have never been in position to actually
25 inspect.  So we think that's a separate problem with respect to

Case No. 1:19-cv-00874-RBJ-MEH   Document 522-7   filed 09/21/21   USDC Colorado   pg 7 of 8
Case 1:18-cv-00950-LO-JFA   Document 535   Filed 10/28/19   Page 97 of 127 PageID# 23368

97

1   this foundation.

2           And then finally here, this '431 spreadsheet was
3   created after the claims period.  It was done in 2018 when this
4   case was pending.

5           So we believe on that basis, Your Honor, that there
6   is no reliable basis to infer that the works in suit were
7   matched to the files being shared by Cox subscribers on the
8   peer-to-peer networks.

9           And then finally on the verification step related to
10  this foundation, we know that the evidence packages were
11  assembled without waiting for the verification step.  And they
12  say that somehow it existed anyway.  But if you look at
13  Barbara Frederiksen-Cross' report, she specifically even admits
14  that.

15          So my -- our conclusion with respect to that is that
16  creates the potential of sending notices on non-infringing
17  works.  I know that the plaintiffs probably won't want me to
18  say this, but the truth of the matter is, they had an
19  operational audit.  It was done by an independent company, the
20  Stroz Friedberg.  They were required to do all of this
21  verification, an audit under the implementation agreements that
22  the record labels had with MarkMonitor and the ISPs that
23  were not -- did not implicate Cox, but were a part of this
24  program.  And they said, look, there is a problem.  Unless you
25  get this stuff verified before sending notices, there is a

127

1 know, something like that.

2     MR. OPPENHEIM:  I thought we had actually said that

3 we --

4     THE COURT:  Yeah, gone farther than that?

5     MR. OPPENHEIM:  I thought we had concluded it was

6 going to take us three weeks total, but I'm not sure we had

7 settled on that.  But we'll discuss it, obviously, Your Honor.

8     THE COURT:  Yeah.

9     MR. OPPENHEIM:  And none of us want to be driving

10 into the holidays that far if we can avoid it.

11     THE COURT: Yeah.  Well, keep -- you know, obviously,

12 a lot of repetition is not going to be permitted.  And you need

13 to -- and, you know, some of these rulings will help focus the

14 case.  And I realize you've got to wait for those before you

15 have your final trial strategy set.

16     So -- but keep looking at what you need versus what

17 you don't need.  All right.

18     MR. OPPENHEIM: Very well.  Thank you, Your Honor.

19     THE COURT:  Okay.  All right.  Well, thank you all.

20     Have a good evening and we're in recess.

21     ----------------------------------------------------
    HEARING CONCLUDED

22

23     I certify that the foregoing is a true and
  accurate transcription of my stenographic notes.

24

25     /s/  Norman B. Linnell
    Norman B. Linnell, RPR, CM, VCE, FCRR