IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC, et al.,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

### PLAINTIFFS' OPPOSITION TO COX COMMUNICATIONS, INC.'S MOTIONS TO INTERVENE AND MODIFY THE PROTECTIVE ORDER[1]

Cox's motions to intervene and modify the protective order are improper attempts to obtain discovery for a separate case that concluded nearly two years ago—*Sony Music Entertainment v. Cox Communications, Inc.*, 1:18-cv-00950-LO-JFA (E.D. Va.) (the "*Cox* case"). Cox vigorously litigated that case, had ample notice of and opportunity to take the precise discovery it seeks from this Court, and a federal jury found it willfully liable—both contributorily and vicariously—for its subscribers' infringement of more than 10,000 of Plaintiffs' copyrighted works. The district court in the *Cox* case rejected all of Cox's post-trial motions; final judgment has been entered; and Cox's pending appeal in the Fourth Circuit has divested the district court of jurisdiction over the *Cox* case. The case record is closed; the appeal is fully briefed and awaiting hearing.

That procedural posture alone should doom Cox's motions, as there is no more discovery to be taken in the *Cox* case.

---

[1] For the convenience of this Court, and because the issues Cox raises in its Memorandum in Support of Motion to Intervene ("Intervene Mem."), ECF 521-1, and Memorandum in Support of Motion to Modify the Protective Order ("Modify Mem."), ECF 522-1, materially overlap and interrelate, Plaintiffs submit this single brief in opposition to both requests.

Even if there were, however, Tenth Circuit precedent makes clear that this Court is not the right venue for Cox's request to re-open discovery in the *Cox* case. As detailed below, granting Cox's requests would be directly at odds with two key principles from *United Nuclear Corp. v. Cranford Insurance Co.*, which set the standard in this circuit for resolving motions to intervene and modify a protective order to obtain discovery for use in a separate case. 905 F.2d 1424 (10th Cir. 1990). In particular, *United Nuclear* establishes that "federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding," and therefore "a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." *Id.* at 1428. That is fatal to Cox's attempt to gain discovery materials for purported use in a proceeding where discovery was long ago completed, judgment entered, and an appeal pending. Not surprisingly, persuasive authority from other federal courts therefore rejects requests like Cox's here.

Nor is this the correct court for Cox's frivolous allegations of fraud, which concern another court's case and another court's detailed record. Plaintiffs engaged in no wrongdoing, and Cox's claim to the contrary—which contains substantial errors, omits key aspects of the complex pre-trial and trial records, and relies on altered snippets of statements strung together without context or completeness—is unfounded. But that is an issue for the court in the Eastern District of Virginia. If Cox indeed files a Rule 60 motion in the *Cox* case, Plaintiffs will respond there, and the *Cox* court, which lived with that case for years and knows and understands its own extensive record, will rule on it. As Cox acknowledges, this Court need only rule on Cox's motions to intervene and modify a protective order, which clearly fail under pertinent case law.

Indeed, Cox has not cited a single case where a party's anticipated Rule 60 motion in a closed case justified granting motions to intervene and modify a protective order to obtain

discovery in a separate case. Nor has Cox cited any case where such relief was granted when the proposed intervenor's case is on appeal—let alone where, as here, the proposed intervenor took extensive discovery in its own case; had ample notice and opportunity to explore the very discovery issues it seeks through intervention; already deposed all conceivably relevant party and non-party witnesses; litigated the case to a jury verdict; and pursued and was denied post-trial relief. For the reasons explained herein, Cox's motions should be denied.

## I. BACKGROUND

Cox tries to justify its motions by accusing Plaintiffs in the *Cox* case of violating a discovery order and misrepresenting at trial whether the files on a hard drive produced to Cox in discovery dated to 2016 or some earlier point in time. *See* Intervene Mem., at 4–6; Modify Mem., at 2–7. For the reasons discussed above, it is not appropriate for Plaintiffs to rebut the merits of Cox's accusations except in the *Cox* court—though, to be clear, Plaintiffs vigorously dispute them. In the meantime, the following facts make clear that Cox's true motivation here is a second bite at discovery it chose not to take in that case.

### A. The *Cox* Case

Discovery in the *Cox* case commenced in late 2018 and closed on July 2, 2019. *See Cox* ECF 138, at 2.[2]

In February 2019, Plaintiffs in *Cox* produced a hard drive to Cox. The hard drive contained music files with 2016 metadata, and the hash values of the files matched those of infringing files listed in infringement notices from years prior.[3]

---

[2] Citations in this opposition to "*Cox* ECF" refer to the *Cox* case docket. All other "ECF" citations refer to the docket in the above-captioned case, unless otherwise specified.

[3] Hash values are a widely used and proven mechanism for file identification. Because they are a function of the content of the file, a file with a hash value of XYZ123 is identical to any other

Early in discovery, Cox served a third-party subpoena on MarkMonitor, the anti-piracy vendor that sent infringement notices on Plaintiffs' behalf.  In March 2019, as Cox concedes (Modify Mem., at 6), MarkMonitor produced to Cox a January 29, 2016 Statement of Work (the "2016 SOW"), between the Recording Industry Association of America ("RIAA") and MarkMonitor.  The 2016 SOW concerned ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (the "Hash Download Project").  Cox correctly refers to the 2016 SOW, and the Hash Download Project described therein, as "a litigation-focused project."  Modify Mem., at 2.  The activity took place expressly in anticipation of litigation.  *See* ECF 268, at 1 (sealed filing submitting 2016 SOW).[4]

The 2016 SOW, which Cox received before all depositions in that case, describes with particularity the documents Cox seeks here but falsely claims were hidden from it in the *Cox* case.  Specifically, the 2016 SOW states that:

   i. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   ii. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ECF 268, at 1–2.

---

file with that same XYZ123 hash value regardless of when downloaded.  That proposition is not subject to reasonable dispute.  *See, e.g.*, Nat'l Inst. of Standards & Tech., U.S. Dep't of Com., NIST SP 800-175B Rev. 1, Guideline for Using Cryptographic Standards in the Federal Government: Cryptographic Mechanisms, at 21 (2020), https://doi.org/10.6028/NIST.SP.800-175Br1; David Wagner et al., Computer Security § 7.1 (2021), https://textbook.cs161.org/crypto/hashes.html ("The hash function … is deterministic, meaning if you compute [it] twice with the same input … you will always get the same output twice.").

[4] The Court previously granted Charter's Unopposed Motion for Leave to Restrict the 2016 SOW.  ECF 273.  Charter then filed it under seal at ECF 268.  This is the same three-page SOW that Cox received in discovery in the *Cox* case in March 2019 and references in its Modify Mem. at page 6.

In the *Cox* case, extensive fact and expert depositions occurred between April 5 and July 2, 2019. Cox deposed two MarkMonitor Rule 30(b)(6) witnesses; took Rule 30(b)(6) depositions of RIAA, Audible Magic, and all Plaintiffs; and deposed all of Plaintiffs' experts. In total, Cox deposed 28 witnesses—all of which followed production of the hard drive with 2016 metadata and the 2016 SOW—and yet Cox never asked a single witness a single question about the hard drive or the 2016 SOW.

Despite this, Cox moved *in limine* and again at trial to exclude admission of the hard drive, arguing Plaintiffs could not lay an adequate foundation for what it contains. *See Cox* ECF 488. Cox argued that because the files on the hard drive were created in 2016 (or later), they could not, so Cox claimed, support Plaintiffs' claims of infringement from years earlier. *See* Intervene Mem., at 3. The *Cox* court denied Cox's motion. *See Cox* ECF 590, at 3. At trial, over Cox's renewed objection, the *Cox* court admitted the hard drive into evidence. *See* Intervene Mem., Ex. 6, at 647:8–648:12, 706:12–707:22, 709:15–16.

Following a three-week trial in December 2019, the jury ruled for Plaintiffs on all counts, finding Cox secondarily liable for willful copyright infringement. *See Cox* ECF 669. After resolving Cox's extensive post-trial motions, the *Cox* court entered final judgment on January 12, 2021. *See Cox* ECF 723. Cox filed its notice of appeal on February 10, 2021. *See Cox* ECF 732. Cox's appeal is fully briefed, and the parties are awaiting argument in the Fourth Circuit.

B. **The Discovery Cox Seeks From This Case**

Cox makes three arguments concerning allegedly withheld information in the *Cox* case. First, Cox contends that the hard drive it received in discovery should have included "packet capture" ("PCAP") files that show when MarkMonitor downloaded the audio files. *See* Intervene Mem., at 5; Modify Mem., at 4. Second, Cox argues it should have received a

5

spreadsheet known as the "Hash Report," which identifies files (referenced by hash value) that MarkMonitor searched for, downloaded, and attempted to verify during the 2016 Hash Download Project. *See id*. Third, notwithstanding its receipt of the 2016 SOW before depositions began, Cox argues that it was prejudiced because it did not also receive a copy of that same 2016 SOW from Plaintiffs. *See* Intervene Mem., at 5; Modify Mem., at 5–6.[5]

Against that backdrop, Cox seeks access to the following discovery materials from this case: (1) a hard drive of files produced in this case; (2) a directory of that hard drive; (3) the Hash Report; and (4) portions of depositions, exhibits, and expert reports from this case that concern the 2016 Hash Download Project. *See* Modify Mem., at 7.

Charter—which is represented by the same law firm and many of the same lawyers as Cox—filed numerous motions to compel related to the Hash Download Project, and especially the Hash Report. *See, e.g.*, ECF 436, at 5–7 (recounting numerous motions). This Court did not question Plaintiffs' designation of the Hash Report as work product, prepared in anticipation of litigation. The Hash Report was produced only after this Court affirmed, over Plaintiffs' objection, Magistrate Judge Hegarty's ruling that Charter had demonstrated substantial need for it *in this litigation*. *Id.* at 7–8. This Court then ordered Plaintiffs to produce a redacted version of the Hash Report to Charter, *see id.* at 8–9, and later affirmed, upon *in camera* review, that Plaintiffs' redactions of attorney opinion work product were appropriate. *See* ECF 474.

---

[5] Cox complains that MarkMonitor "buried" the 2016 SOW in its production. *See* Modify Mem., at 6. This is meritless. Apart from infringement data, MarkMonitor's production consisted of just 240 pages. The 2016 SOW is three pages long and expressly states it is part of the same Master Services Agreement that governed the entire RIAA/MarkMonitor notice program. *See* ECF 268.

6

## II. LEGAL STANDARD

A non-party may seek modification of a protective order by filing a motion to intervene under Federal Rule of Civil Procedure 24(b). Whether to grant intervention and whether to grant modification of a protective order are two separate questions. A court might grant intervention for the limited purpose of seeking to modify a protective order, but then deny the motion to modify the protective order. *See, e.g.*, *Holland & Hart LLP v. Mills*, No. 08-cv-01408-REB-MEH, 2009 WL 4264388, at *2 (D. Colo. Nov. 27, 2009) (M.J. Hegarty) (denying motion to modify protective order in part because discovery in collateral litigation was nearly complete).

Rule 24(b) states in relevant part: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). If a court grants intervention, it must then decide whether to modify the protective order by "weigh[ing] the rights of the private party litigants who produced the materials and the reasons and policies for the restrictions against the interests of collateral and other litigants in disclosure of such material." *Carbajal v. Warner*, No. 10-cv-02862-REB-KLM, 2015 WL 1945129, at *4 (D. Colo. Apr. 28, 2015).

Here, solely for purposes of Cox's request to intervene, Plaintiffs do not dispute that this case and the *Cox* case include some overlapping questions of law or fact, although the *Cox* Plaintiffs' "claims" and Cox's "defenses" have long since been adjudicated. Fed. R. Civ. P. 24(b)(1)(B). As explained below, however, both of Cox's motions fail all the other tests.

## III. ARGUMENT

Cox has not cited a *single case* in which a court granted intervention and modified a protective order in one case to obtain discovery for a Rule 60 motion following judgment in a different case. Nor has Cox cited a *single case* in which a litigant in a separate case successfully

7

intervened and obtained modification of a protective order while that separate case was on appeal. On the other side of the ledger, binding Tenth Circuit law and directly on-point persuasive cases squarely illustrate why Cox's requests should be denied.

### A. Cox's Motions Fail Under Tenth Circuit Precedent

In *United Nuclear*, 905 F.2d 1424, the Tenth Circuit set the standard for assessing a non-party's motions to intervene and modify a protective order to get protected discovery materials for use in a separate case.

In *United Nuclear*, non-parties sought to intervene in a settled case to obtain discovery for use in their separate pending lawsuits. *Id.* at 1426. The Tenth Circuit observed the tension that naturally arises in those circumstances. Protective orders make the discovery process "operate more efficiently" and "encourage disclosures that otherwise would be resisted," while "[a]llowing modification of protective orders for the benefit of collateral litigants tends to undermine the order's potential for more efficient discovery." *Id.* at 1427–28. At the same time, "when a collateral litigant seeks access to discovery produced under a protective order, there is a [countervailing] efficiency consideration—saving time and effort in the collateral case by avoiding duplicative discovery." *Id.* at 1428. Accordingly, the Tenth Circuit adopted the Seventh Circuit's standard:

> [W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.

*Id.* (quoting *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)) (citations omitted).

Granting Cox's motions would be directly at odds with two key principles from *United Nuclear*. The first key principle is that granting the requested relief must create "more efficient

8

discovery" in a related case by avoiding "repetition of another's discovery." *Id.* at 1427–28. Cox's motions promote no such efficiency as there is no repetition of discovery to avoid. Discovery closed in the *Cox* case over two years ago; a jury resolved the case at trial in December 2019; the *Cox* court entered final judgment thereafter; and jurisdiction now lies with the Fourth Circuit. *See Doe v. Pub. Citizen*, 749 F.3d 246, 258–59 (4th Cir. 2014) (holding that "an effective notice of appeal divests a district court of jurisdiction" and "[a] district court does not act in aid of the appeal when it alters the status of the case as it rests before the court of appeals" (alterations & internal quotation marks omitted)). Accordingly, there is no prospect of duplicative discovery to avoid.

*United Nuclear*'s second key principle is that "federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding"—which means that "a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." 905 F.2d at 1428 (quoting *Wilk*, 635 F.2d at 1300) (alteration omitted); *accord AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (affirming district court's denial of a non-party's motion to intervene to modify a protective order because the non-party's "motion appear[ed] to be an attempt to circumvent the close of discovery in his State Court Action"); *Carbajal*, 2015 WL 1945129, at *5 ("The Court will not allow Plaintiff to circumvent the protections provided in the protective orders in [collateral litigation] by obtaining the Denver Defendants' privileged and/or confidential documents from [two non-party law firms]."). That is exactly what Cox attempts to do here, with discovery long over in its case. The district court's proceedings in the *Cox* case are closed, and Cox cannot circumvent the close of discovery in that case through the instant motions to this Court.

9

Accordingly, Tenth Circuit precedent requires rejecting Cox's motions.

### B. Cox's Motions Fail Under Other Persuasive Authority Addressing Strikingly Similar Facts

Other courts have likewise rejected similar requests to those from Cox here. In *Holmes v. UPS, Inc.*, No. 04-2315-KHV-DJW, 2006 WL 1642719 (D. Kan. Feb. 16, 2006), *mot. to review overruled*, 2006 WL 2506181 (D. Kan. Aug. 28, 2006), plaintiff sued a defendant for race, sex, and age discrimination and retaliation, and the court entered a protective order. *Id.* at *1. During discovery, plaintiff voluntarily dismissed the lawsuit. *Id.* Thereafter, non-parties suing the same defendant in another court, the Western District of Missouri, moved to intervene and modify the protective order, arguing—like Cox—that the defendant had wrongfully withheld documents in the non-parties' lawsuit, and that allowing their use in the non-parties' lawsuit was necessary to ensure justice was done. *Id.*

Before the proposed intervenors moved in the District of Kansas, however, the Western District of Missouri had granted summary judgment to the defendant, and the proposed intervenors' appeal was pending before the Eighth Circuit. *Id.* at *2. The District of Kansas allowed permissive intervention for the limited purpose of *requesting* modification of the protective order, but, applying *United Nuclear*, ultimately rejected the request:

> Here, the collateral litigants, i.e., [the non-parties], are no longer conducting discovery. Summary judgment has been entered in their lawsuit, and the case is on appeal to the Eighth Circuit. Thus, the consideration of saving time and effort by avoiding duplicative discovery in the collateral case is simply not present here.
>
> Movants do not cite any case law, nor can the Court find any, where a court has modified a protective order to allow disclosure of protected documents to litigants in a collateral case where there is no ongoing discovery in the collateral case or where the collateral case is on appeal and the factual record is closed.
>
> In short, the Court finds that the requested modification is not supported by any case law and that the requested modification would serve no legitimate purpose, at least based on the present circumstances. The Court will therefore deny the Motion to Modify Protective Order.

10

*Id.* at \*3.

Equally on-point is *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, No. CV 16-4686, 2018 WL 5303326, at \*2 (E.D. Pa. Oct. 24, 2018). There, proposed intervenors lost their own case and then unsuccessfully moved to intervene in a separate action to modify the protective order to gain access to discovery. Like Cox here, the proposed intervenors' stated purpose was to obtain the discovery to file a Rule 60 motion in their own court. The Eastern District of Pennsylvania rightfully rejected the request as an improper attempt "to obtain a second bite at the apple." *Id.* at \*3. The court explained that "a party may not use a motion to intervene to modify a protective order so as to circumvent limitations on discovery in the intervening party's own case." *Id.* at \*2. Because discovery had already closed in the intervenors' action, the requested relief would not promote efficiency by avoiding duplicative discovery. *Id.*; *see also AT&T Corp.*, 407 F.3d at 562 (denying intervention to seek modification of a protective order to gain access to documents because discovery already closed in proposed intervenor's action).

The reasoning of *Holmes* and *In re Zostavax* is compelling and should govern here. As in *Holmes*, Cox's requests do nothing to advance "the consideration of saving time and effort by avoiding duplicative discovery in the collateral case," since discovery has long-since concluded in the *Cox* case. *Holmes*, 2006 WL 1642719, at \*3. And just as Cox argues here, the proposed intervenor in *Holmes* argued that intervention and modification were necessary due to the wrongful withholding of documents and to ensure justice is done. But here, as in *Holmes*, the factual record is closed in the *Cox* case and Cox's desire to supplement it does not trump the governing standard for resolving these motions. Just as in *In re Zostavax*, Cox's motions seek discovery for a Rule 60 motion by circumventing discovery limitations, promote no efficiency

11

because there is no duplicative discovery to avoid, and simply seek a "second bite at the apple." Nor should Cox get more discovery in any event. Cox had the hard drive (with 2016 file metadata) and the 2016 SOW (█████████████████████████) early in the *Cox* case and chose not to explore them in discovery, despite ample notice and opportunity.

### C. Cox's Motions Fail For Additional Reasons.

#### 1. Cox's Motions Are Untimely.

Cox's long delay in seeking intervention dooms its motion under Rule 24(b). *See* Fed. R. Civ. P. 24(b)(1)(B) (requiring a "timely motion"). Cox identifies public disclosures that allegedly put it on notice of these issues as early as November 9, 2020. *See* Intervene Mem., at 4–5 (citing ECF 287); Modify Mem., at 4 (citing ECF 287). That was *two months before* entry of judgment in the *Cox* case on January 12, 2021, and *three months before* Cox noticed an appeal. Cox and Charter are represented by the same law firm in Winston & Strawn, including many of the same individual attorneys. Cox and its counsel were thus well aware of those November 2020 disclosures yet waited at least 10 months to act. Cox had ample opportunity, prior to entry of judgment and divestiture of jurisdiction to the Fourth Circuit, to petition the *Cox* court to reopen discovery. Cox failed to do so and now asks this Court for relief that it could not get in the *Cox* case itself.

#### 2. Cox's Motions Prejudice Plaintiffs.

Cox is wrong in claiming that granting the motions would cause Plaintiffs no prejudice.

*First*, Cox argues that there can be no prejudice because Plaintiffs in the *Cox* case should have produced the materials already. *See* Modify Mem., at 8–9. But Cox has not established— and cannot establish—that the discovery it seeks here *should* have been produced in the *Cox*

12

case. That is a question for the *Cox* court, because it necessarily pertains to the discovery propounded, scope of any orders, and litigation strategy choices that Cox made there.

*Second*, this Court did not dispute that the Hash Report is protected work product. *See* ECF 436. While this Court affirmed Magistrate Judge Hegarty's ruling that Charter had established "substantial need" to overcome such protection in the *Charter* case, there is no such ruling in the *Cox* case as to Cox. Cox cites to no case, nor can it, where a demonstration of substantial need by a party in one case somehow establishes substantial need, after the fact, by a different party in an earlier-litigated case that long since proceeded to judgment. Only the *Cox* court can address that question.

*Third,* Cox is wrong in asserting that there is no prejudice because Cox's proposed relief "would not require Plaintiffs to take any action" because Cox "can seek the information from other parties to the case." Modify Mem., at 2, 10. What this means is that Charter—represented by the same counsel as Cox—is willing to work with Cox to provide it with discovery from this case. But Cox and Charter cannot have *carte blanche* to decide what to disclose from the *Charter* litigation, particularly where the request as to depositions and expert reports, by definition, seeks excerpts and would require judgment calls to identify. Intervention and modification would burden Plaintiffs and non-parties in this action by requiring them to continue policing access to confidential information disclosed in the present case. To the extent there are disputes about what is appropriate for disclosure, or how it is used, that could necessitate yet more briefing and argument before this Court, further burdening the parties and this Court. Moreover, Cox states only that it "is not *presently* asking this Court to order Plaintiffs, their third-party agents, or anyone else to produce anything." Modify Mem., at 10 (emphasis added). That leaves open the possibility of even more requests.

*Fourth*, contrary to Cox's argument, the PCAP files, Hash Report, and deposition testimony from this case have not been filed publicly. Thus, Cox's argument about a "strong presumption in favor of public access to judicial records" is inapposite. Modify Mem., at 10. There likewise is no basis for Cox's bald assertion that there is "good reason" to lift the Protective Order and de-designate the content Cox seeks because much of it has already been publicly disclosed. *See* Modify Mem., at 2, 10. Identifying or describing a document in the public record is not equivalent to the document itself being in the public record.

*Fifth,* the need for finality in litigation and conservation of judicial resources weigh against Cox's requests. *See*, *e.g.*, *Century Laminating, Ltd. v. Montgomery*, 595 F.2d 563, 568 (10th Cir. 1979) ("There is some virtue in finality in an end to litigation"). Absent such finality, the costs and burdens of litigation would become even more substantial as losing parties seek additional discovery, or to intervene and modify protective orders in other actions, to obtain documents long after discovery closes, and a final judgment is entered, as Cox does here.

These considerations further weigh against Cox's requests.

## IV. CONCLUSION

Motions to intervene and modify protective orders to obtain discovery are not meant as tools for a losing party to re-litigate a separate case that concluded long ago. Yet that is exactly what Cox is trying to do. Discovery in the *Cox* case closed long ago, with the closed record now on appeal. Pursuant to the cases and considerations above, Cox's motions should be denied.

Respectfully submitted:

| | |
|---|---|
| Dated: October 19, 2021 | */s/ Matthew J. Oppenheim* |
| Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405 | Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor |

<div style="columns:2">

Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE & FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@williamsweese.com
*Attorneys for Plaintiffs*

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 19, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Matthew J. Oppenheim*