# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

WARNER RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

### PLAINTIFFS' MOTION TO STRIKE UNTIMELY EXPERT DISCLOSURES
---

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Plaintiffs in the above-captioned matter respectfully move to strike certain untimely expert disclosures by defendant Charter Communications, Inc. ("Charter"). The schedule for expert disclosures in this case provided for multiple initial and supplemental reports, with the last of those reports due on September 21, 2021. On October 14, 2021—23 days later, and on the afternoon before Plaintiffs' deposition of defendant's damages expert, George Strong—Charter disclosed for the first time 30 pages of tables, exhibits and work papers containing new opinions, data, and calculations about which Strong plans to testify at trial. Charter's late-disclosed expert materials should be stricken because (1) the untimely disclosure prejudiced Plaintiffs, who had no opportunity to analyze or rebut the new analyses (or to have their own experts do so) in advance of Strong's deposition; (2) that prejudice cannot be easily cured because expert discovery is now closed; and

(3) Charter's untimely disclosure of Strong's new analyses, which rely on information that was available to Charter at the time Strong was preparing his expert reports, was willful.

# BACKGROUND

### A. Strong's New Analyses Were Disclosed Well After the Court-Ordered Deadlines for Expert Disclosures.

The parties have had over four months to complete expert discovery in this complex case. The deadlines for expert disclosures were as follows:

| | |
|---|---|
| May 27, 2021 | Initial expert designations |
| June 28, 2021 | Rebuttal expert designations |
| Sept. 3, 2021 | Supplemental expert reports |
| Sept. 21, 2021 | Supplemental rebuttal reports |

Dkts. 392, 490 (as amended by party agreement at direction of Judge Hegarty). The parties agreed that supplemental expert reports were solely to take account of fact discovery that occurred after the May 27, 2021, and supplemental rebuttal reports were to be limited solely to the scope of the corresponding supplemental opening report. Dkt. 486 at Attachment A & n.1.

Charter served a purported "Expert Rebuttal Report" from Strong on June 28, 2021. In response to a timely supplemental opening report from Plaintiffs' damages expert, Harold Furchtgott-Roth, Charter served a "Second Rebuttal Expert Report" from Strong on September 21, 2021. Charter deposed Furchtgott-Roth on October 12, 2021. On October 14, 2021 at 3:20 p.m. MT, Charter disclosed "updated tables (both clean and with updates in red text) and workpapers" that Strong intended to rely upon for his testimony at his deposition, scheduled to commence at 10 a.m. MT the next day. Ex. A (email thread dated Oct. 14, 2021).[1]

---

[1] Citations to "Ex." refer to the exhibits to the Declaration of Stacey K. Grigsby filed concurrently herewith.

## B.     Charter's New Expert Analyses.

The new materials consisted of three documents: (1) a 13-page document that added an entirely new analysis to two tables and 11 exhibits from Strong's June 28 Rebuttal Report, identifying in red text new data and analyses not previously disclosed to Plaintiffs, (2) a substantially identical "clean" version of the same document, and (3) a 17-page document that added three new analyses to 17 other exhibits from Strong's June 28 Rebuttal Report. *See* Exs. B-D (the "October 14 Materials").

The overall purpose of the new analyses is to expand upon and strengthen the opinions Strong offered in his June 28 Rebuttal Report. The first two documents disclosed for the first time a new analysis of the number of works-in-suit subject to statutory damages in this case. In his June 28 Rebuttal Report, Strong purported to calculate the "range of statutory damages based on the number of works-in-suit" based on three different estimates of the number of works-in-suit: (1) those identified in the complaint, (2) those identified by Plaintiffs' expert as being associated with repeat infringers, and (3) those Strong contends are associated with repeat infringers identified by Defendants' expert. *See* Ex. E (June 28 Rebuttal Report) at 35-36; *see id.* at Ex. 3A. Strong then reduced each estimate of the number of works-in-suit to purportedly "account[ ] for overlap between sound recordings and musical compositions" and then, separately, "for overlap between sound recordings and musical compositions and works that are part of albums." *Id.* at 35-36, Table 5. In the newly disclosed materials, Strong conducts this analysis on a new *fourth* estimate of potential works-in-suit—"works-in-suit associated with work-in-suit notices sent during the Claims Period"—and incorporates the results in new versions of two tables and eleven exhibits from his June 28, Rebuttal Report. Ex. B. The newly-provided materials do not reveal how Strong determined what works-in-suit were associated with

3

infringement notices sent during the Claims Period, nor what materials he relied upon to make that determination.

The third document in the October 14 Materials disclosed a new method for calculating the financial gains Charter obtained from certain repeatedly infringing subscribers. ▮

▮

First, Strong ▮ *Compare* Ex. D at 9, 10 *with* Ex. E (June 28 Rebuttal Report) at 24, Ex. 5.

▮ That opinion in Strong's September 21 Second Rebuttal Report should be stricken for the same reason: It presents a new methodology that should have been disclosed in the June 28 Rebuttal Report and does not rebut any opinions disclosed for the first time in Furchtgott-Roth's August 26 Supplemental Report.

Second, Strong ▮ . *Compare* Ex. D at 10-13 *with* Ex. E (June 28 Rebuttal Report) at Exs. 5, 5A1, 5B4. 5C.

Third, Strong ▮

█████████████████████████████████████ *Compare* Ex. D at 14-17 *with* Ex. E (June 28 Rebuttal Report) at Exs. 5, 5A1, 5B4, 5C.[2]

## ARGUMENT

The October 14 Materials and any testimony relying upon them should be stricken, because Charter cannot bear its burden of showing that the belated disclosures were both substantially justified and harmless.

Expert reports must disclose "all opinions the witness will express and the basis and reasons for them … at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2). If a party fails to make the required disclosures, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c) thus "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a) …." Fed. R. Civ. P. 37, 1993 adv. comm. note.

Although Rule 26(e) permits supplementation of an expert report in certain circumstances, "[t]his provision is 'not intended to provide an extension of the expert designation and report production deadlines' and may not be used for this purpose." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (quoting *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)). Instead, "a supplemental expert report should be based upon additional or corrective information that was not available at the time of the expert's original report." *SEC v. Nacchio*, 2008 WL 4587240, at *3 n.3 (D. Colo. Oct.15, 2008). "A supplemental expert report that states additional opinions or rationales or seeks to

---

[2] The October 14 Materials also appear to correct two arithmetic errors in Strong's opening report on the calculation of "harm to Plaintiffs." *See* Ex. D at Workpapers A-A3, B-B3.

5

'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c). *Cook*, 580 F. Supp. 2d at 1169.

Although a district court has discretion to determine whether a Rule 26(a) violation is substantially justified or harmless, "the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). "The nonmoving party has the burden of showing that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a) and that such failure was harmless." *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv. II, LLC*, 2016 WL 9735144, at *4 (D. Colo. June 8, 2016) (granting motion to strike supplement to original report where defendants were deprived of the opportunity to pursue discovery, including a rebuttal opinion and deposition testimony from plaintiff's expert).

Charter cannot meet that burden here. As detailed below, its strategically-timed disclosure—weeks after any supplemental rebuttal reports were due, after the deposition of Plaintiffs' damages expert, and literally on the eve of Strong's deposition—was not based on information that was not available to Strong earlier and was highly prejudicial to Plaintiffs.

## I. CHARTER'S UNTIMELY DISCLOSURE OF STRONG'S NEW ANALYSES WAS UNFORESEEN AND PREJUDICIAL.

Charter provided the October 14 Materials to Plaintiffs at 3:20 p.m. the afternoon before Strong's deposition—scheduled for the last day of expert discovery—preventing Plaintiffs and their expert from having any meaningful opportunity to analyze the new opinions before Strong's deposition, or to rebut them. Plaintiffs had no reason to believe that Strong's June 28

6

Rebuttal Report was incomplete and would be supplemented with these new analyses at the last moment, and Plaintiffs should not be prejudiced as a result of Charter's attempt to impermissibly "bolster or submit additional expert opinions." *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 663 (10th Cir. 2018) (quoting *Nacchio,* 2008 WL 4587240, at *3 n.3).

The new analyses revise and expand opinions in Strong's June 28 Rebuttal Report.[3] At his deposition, Strong confirmed that the October 14 materials disclose entirely new analyses that he intends to present at trial:

> Q And, again, are you able to testify today and explain the methodology for customer value in gains to Charter without resort to those materials that we were provided yesterday?
>
> A Well, only if I exclude the 7 percent explicit calculation. But I believe that the 7 percent calculation is useful.
>
> Q So is the answer yes or no?
>
> THE WITNESS: Yeah. The -- the answer is I can't fully testify if I believe that 7 percent ought to be included explicitly in the calculation. So the answer is no.
>
> BY MS. GRIGSBY: Q So is it your -- so are you telling me that the methodology for customer value and gains to Charter before apportionment in this rebuttal report which is Exhibit 314 and the second rebuttal report which is 315 is incomplete?
>
> THE WITNESS: I believe -- yeah. I believe the 7 percent should be added to it. In other words, you should take 7 percent off the number you're looking at on Exhibit 5A2 [to the June 28 Rebuttal Report].

Ex. G (Strong Dep. Tr.) at 221:1-24. A simple comparison of the new materials with their corollaries in the June 28 Rebuttal Report confirms that the new materials indeed provide new analyses not previously disclosed.

---

[3] Plaintiffs objected to certain paragraphs of Strong's June 28 Rebuttal Report as beyond the scope of Plaintiffs' opening reports, and Charter asserted similar arguments concerning a rebuttal report from one of Plaintiffs' experts. The parties agreed to defer any disputes about the scope of rebuttal reports and to instead serve limited sur-rebuttal reports.

7

By not disclosing Strong's new analyses in the June 28 Rebuttal Report, Charter denied Plaintiffs the opportunity to have their own expert rebut the new analyses and to depose Strong on the new analyses. Charter's counsel at 9:21 p.m. suggested that "Strong will be prepared to respond to any questions Plaintiffs would like to ask him about those materials" at the deposition that was then less than 14 hours away. But "[t]he purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial." *See Cook*, 580 F. Supp. 2d at 1122. Charter's demand that Plaintiffs digest and incorporate Strong's new analyses and methods overnight contravenes that purpose.

## II. THE PREJUDICE TO PLAINTIFFS CANNOT BE CURED IN LIGHT OF THE EXISTING PRE-TRIAL SCHEDULE.

The prejudice to Plaintiffs cannot easily be cured. This is not a situation where the expert could "be available for a second deposition before the end of the discovery period." *Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009). Strong's deposition was scheduled for the last day of expert discovery. *See* Dkt. 527. For that reason, curing the prejudice to Plaintiffs from Charter's untimely disclosure would severely disrupt the pre-trial schedule. Allowing Charter to rely on Strong's new materials "could trigger an endless wave of supplemental reports and the need for additional depositions ...." *Scholl v. Pateder*, 2011 WL 3684779, at *5 (D. Colo. Aug. 22, 2011) (citation and internal quotation marks omitted). Here, the pre-trial schedule would need to be amended to permit Plaintiffs to (1) serve yet another report from Furchtgott-Roth to rebut Strong's new analyses, (2) re-depose Strong, and (3) have 30 days between Strong's deposition and the deadline for *Daubert* and summary judgment motions, currently set for November 15, 2021. There simply is no time for that, and "[i]t is this type of supplementation that Rule 37 is designed to prevent." *Id.*

8

### III. CHARTER'S LATE DISCLOSURE OF STRONG'S NEW ANALYSES WAS WILLFUL.

Strong's new analyses in the October 14 Materials could and should have been disclosed in his June 28 Rebuttal Report, and Charter cannot justify their untimely disclosure. Strong testified at his deposition that he prepared the new materials not because he received new data or evidence after he submitted his June 28 Rebuttal Report, but because, "as I was doing a review of my report in preparation for this deposition, there were certain aspects of it that I thought needed clarification .…" Ex. G (Strong Dep. Tr.) at 10:3-9. But the new materials disclose new analyses and methods, not mere clarifications, and the Federal Rules do not permit supplementation "to bolster or submit additional expert opinions." *Rodgers*, 759 F. App'x at 663.

Because the new analyses do not rely on any data or information resulting from discovery that occurred after May 27, 2021, they should have been disclosed in Strong's June 28 Rebuttal Report. *See Rehberg v. City of Pueblo*, 281 F.R.D. 620, 625 (D. Colo. 2012) (finding untimely disclosure of certain expert opinions was not substantially justified where counsel prior to the disclosure deadline possessed the evidence on which the expert relied). Even if the new analyses relied on post-May 27 discovery, the deadline for disclosing the new analyses was September 3. If Charter obtained any information after September 3 that was necessary for Strong to formulate his opinion, Charter could have moved for leave to further supplement in the intervening three weeks. *See, e.g.*, *Enos-Martinez v. Bd. of Cnty. Comm'rs of Cnty. of Mesa*, 2012 WL 1044483, at *2 (D. Colo. Mar. 28, 2012) (granting plaintiff's motion for leave to timely supplement expert report limited in scope to opinions formed based on fact depositions that took place after the expert disclosure deadline).

Instead, Charter waited until the afternoon before Strong's deposition (and after the deposition of Charter's expert) to disclose the new opinions to Plaintiffs. That timing was clearly designed to prejudice Plaintiffs; indeed, in response to Plaintiffs' complaint about the strategically-late disclosure, Charter could not provide any justification for why it disclosed the October 14 Materials more than three weeks after the last deadline for any expert disclosures, saying only that it "disagree[s] with [Plaintiffs'] characterization of the materials …." Ex. A.

\* \* \*

The purpose of Rule 37(c) is to induce timely disclosure of information on which a party intends to rely. The prejudice to Plaintiffs of having received Strong's new expert analyses weeks after any conceivable deadline for supplementation, and just hours before Strong's deposition, cannot be cured without upending the case schedule. Because Charter has no justification for its untimely disclosure of the new analyses, Charter should be subject to the "automatic sanction" that it cannot use these analyses. Fed. R. Civ. P. 37(c), 1993 adv. comm. note.

## **CONCLUSION**

For the foregoing reasons, the Court should strike the October 14 Materials and any testimony relying upon them.

Dated: October 25, 2021

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE & FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@williamsweese.com

*/s/ Stacey K. Grigsby*
Stacey K. Grigsby
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
sgrigsby@cov.com

Jonathan M. Sperling
Phil Hill
Anders Linderot
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
pahill@cov.com
alinderot@cov.com

Mitchell A. Kamin
Neema T. Sahni
J. Hardy Ehlers
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com
jehlers@cov.com

*Attorneys for Plaintiffs*

Case No. 19-cv-00874-RBJ-MEH Document 540 Filed 10/25/21 USDC Colorado Page 12 of 14

## LOCAL CIVIL RULE 7.1(a) CERTIFICATION

Pursuant to Local Civil Rule 7.1(a), Plaintiffs certify that they conferred with Charter regarding this motion. On October 14, 2021, Plaintiffs' counsel conferred with Charter's counsel by email and sought Charter's position on how the October 14 Materials complied with the Court's order. Charter responded the same day by email that it "disagree[s] with [Plaintiffs'] characterization of the materials provided [on October 14]." On October 22, 2021, Plaintiffs' counsel notified Charter's counsel by email that, unless Charter agreed to withdraw the October 14 Materials, Plaintiffs intended to move to strike them on the ground that their disclosure failed to comply with Federal Rule of Civil Procedure 26. On October 25, 2021, counsel for Charter responded that Charter "will not withdraw Mr. Strong's updated tables and workpapers." The emails quoted herein are attached as Exhibit A to the declaration of Stacey K. Grigsby, filed concurrently herewith.

                                          /s/ Stacey K. Grigsby
                                          Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 25, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Stacey K. Grigsby*
Attorney for Plaintiffs