# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>*Defendant*. | Case No. 19-cv-00874-RBJ-MEH |

## CHARTER COMMUNICATIONS, INC'S. OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

Defendant Charter Communications, Inc. ("Charter") respectfully opposes Plaintiffs' motion to strike certain workpapers and updated tables and exhibits that Charter's damages expert disclosed in advance of his October 15, 2021 deposition [Dkt. 540] ("Mot."), because these documents contain no "new" analyses, and in any event their production prior to his deposition was not prejudicial.

The day before his deposition, George Strong—Charter's rebuttal damages expert—provided Plaintiffs' counsel with a handful of documents he prepared in connection with his deposition preparation, consisting of some workpapers and updated tables and exhibits. These documents contain no undisclosed opinions, analyses or methods. Rather, the documents clarify Mr. Strong's previously-provided opinions, primarily showing results of his already-disclosed opinions if a few alternative, unremarkable inputs are considered—*i.e.*, basic math. Plaintiffs offer no explanation beyond their own *ipse dixit* of how these papers provide "new" opinions or analyses.

Even if the calculations in the documents were subject to the stricter standard governing disclosure of "new" opinions or analyses under Rule 37(c)(1), Mr. Strong's pre-deposition

1

production did not prejudice Plaintiffs. While the documents were produced the day before Mr. Strong's deposition, Plaintiffs chose to not ask Mr. Strong *a single question* about their substance at his deposition, even though the deposition ended with 30 minutes of unused time. To the extent Plaintiffs claim they were prejudiced by the disclosure, they provide no explanation for their failure to cure the prejudice by asking Mr. Strong about the contents of these materials when they had the opportunity to do so. Their tactical decision to not ask Mr. Strong any such questions or to take any lesser steps to cure the purported prejudice cannot be reconciled with the extreme reluctance of courts in this district to strike expert testimony on such grounds. And with trial nearly a year away, Plaintiffs' cries of the impossibility of cure cannot be seriously credited.

## BACKGROUND

On May 27, 2021, Plaintiffs' damages expert, economist Harold Furchtgott-Roth, served an opening expert report. On June 28, 2021, pursuant to the deadline in the operative Scheduling Order, Charter's damages expert, George Strong, served a 41-page Rebuttal Report with exhibits, contesting certain of Dr. Furchtgott-Roth's opinions. Grigsby Ex. E. On September 3, 2021, Dr. Furchtgott-Roth served: (1) a sur-rebuttal report to Mr. Strong's rebuttal; and (2) a supplemental expert report, purportedly to address discovery produced after his opening report. On September 21, 2021, per the parties' agreement, Mr. Strong served a second Rebuttal Report contesting Dr. Furchtgott-Roth's supplemental report. *Id.* Ex. F. Dr. Furchtgott-Roth was deposed on October 12, 2021 and Mr. Strong's deposition was scheduled for October 15, 2021.

On October 14, 2021, at 3:20 pm MT, Charter's counsel emailed Plaintiffs' counsel certain documents which counsel said Mr. Strong would have with him at the deposition. *Id.* Ex. A at 4. Contrary to Plaintiffs' representations (Mot. 3-4), these documents did not offer any "new"

opinions, facts, methods or analyses. For example, the 13 pages of updated tables and exhibits (collectively, "tables") are all identical to those in Mr. Strong's initial rebuttal report, except that while Mr. Strong initially premised his opinions on certain ways to count the number of works-in-suit, the updated tables merely show the impact of applying the *same* methods and *same* analyses if the works-in-suit and alleged repeat infringers are filtered to be further limited to the Claims Period. Plaintiffs complain (Mot. 3-4) that these materials "do not reveal" how Mr. Strong calculated his numbers or what he relied on, overlooking that Mr. Strong expressly discloses that these are the works "associated with work-in suit notices sent during the Claims Period." Grigsby Ex. B at 3; *see also id.* at 5-7 ("associated with at least one work-in-suit notice sent during the Claims Period"). Plaintiffs had every opportunity to make further inquiries at deposition.

Similarly, the workpapers Charter served on October 14 simply reflect sensitivities of Mr. Strong's existing analyses provided in his initial Rebuttal Report (that is, he examines the impact on his analyses based on further refinement of the data) that came about during his deposition preparation. Plaintiffs do not move to strike Workpapers A or B as untimely (*see* Mot. 5 n.2), and the remaining workpapers offer no "new" opinions or analyses. Specifically, Workpaper C shows the impact on Mr. Strong's gains analyses ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*See id.* Ex. F (Sept. 3 Rebuttal Rep.) at 6 [Table 1] (citing June 28 Rebuttal Rep. n.160).[1]



*Compare id.* Ex. D at 10-13 *with* Ex. E at 64-65, 72-73.  And <u>Workpaper E</u> provides the same analysis as Workpaper D, but also accounts for ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Compare id.* Ex. D at 14-17 *with* Ex. E at 64-65, 72-73.

About four and a half hours after Charter served the updated tables and work papers, Plaintiffs responded, contending that the documents were "new opinions, calculations and data" and thus untimely.  *Id.* Ex. A at 4.  Charter replied that it disagreed with this characterization, but that Mr. Strong would be prepared to answer any questions Plaintiffs needed to ask him about those materials at his deposition.  *Id.* at 3.

At his deposition, Mr. Strong testified that, at his own request, he (with his team) prepared these papers during the two days before his deposition.  Declaration of Dylan I. Scher ("Scher Decl."), Ex. 1 (Tr. 9:12-20).  Mr. Strong explained why:

> Q. Why did you ask your team to update your rebuttal and second rebuttal reports?
>
> A. Well, I -- as I was doing a review of my report in preparation for this deposition, there were certain aspects of it that I thought needed clarification or would benefit from, you know, a clarification.

---

[1] Plaintiffs suggest that Mr. Strong's opinions about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in his September 21 Rebuttal Report are also untimely, but other than a single passing reference (*see* Mot. 4), Plaintiffs make no argument to exclude that opinion in Mr. Strong's report, which was served more than a month before Plaintiffs filed this motion, and which Plaintiffs' counsel had more than three weeks to study in advance of his deposition.  Any argument of untimeliness is therefore waived, and in any event the disclosure was not untimely or prejudicial.

*Id.* (Tr. 10:3-9). But rather than ask Mr. Strong any questions about the contents of the documents, Plaintiffs lodged a "standing objection" to the entire production as untimely and *refused* to ask Mr. Strong any questions about them. *Id.* (Tr. 10:10-15). Charter's counsel advised that "Mr. Strong is prepared to answer any questions you have about those documents today and we encourage you to ask him anything you want," but Plaintiffs' counsel stated they would not do so. *Id.* (Tr. 10:22-11:11). Plaintiffs ended the deposition with 30 minutes of on-the-record time remaining, without asking Mr. Strong any questions about the substance of those documents. *Id.* (Tr. 266:18-267:3).

A week later, on October 22, 2021, Plaintiffs' counsel disclosed their intention to file a motion to strike Mr. Strong's updated tables and workpapers the next Monday, October 25, unless Charter withdrew the papers. Grigsby Ex. A at 2. Charter did not withdraw the materials, and Plaintiffs filed their motion on October 25 as threatened. Dkt. 540.

## ARGUMENT

### I. MR. STRONG DID NOT DISCLOSE ANY NEW OPINIONS THAT TRIGGER RULE 26(A)(2) OBLIGATIONS

Rule 26 requires an expert witness to disclose "all opinions the witness will express and the basis and reasons for them" under the Court's schedule. Fed. R. Civ. P. 26(a)(2). An expert, however, may clarify already-disclosed opinions without automatically triggering the disclosure requirements of Rule 26. *See Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co., Ltd.*, 2015 WL 2176964, at *3 (E.D. Mo. May 8, 2015) (denying motion to exclude paragraphs in expert declaration that "contain more details" but "are entirely consistent with and do not significantly expand on any of the opinions or reasons" already disclosed).

Plaintiffs' motion rests on the faulty assumption that new documents must mean new opinions. Mot. 6-8. But Mr. Strong's updated tables and workpapers exemplify how a document

5

may simply add further color to previously-disclosed opinions without constituting "new" opinions. Mr. Strong's updated tables are consistent with his prior analyses, as the updated tables apply the same methods as the already-disclosed calculations in his Rebuttal Reports, except that the calculations for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ Similarly, Mr. Strong's workpapers are entirely consistent with his earlier reports, applying the same methods, but providing calculations for a subset of data based on ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This does not involve new or different analyses, but rather clarifications about subsets of data already disclosed in Mr. Strong's reports. *Emerson*, 2015 WL 2176964 at *3. Being prepared to discuss subsets of disclosed data is not offering a "new" opinion; if the Court were to hold otherwise, experts would be forced to submit reports thousands of pages long to account for every conceivable mathematical possibility that an expert could derive. In short, Mr. Strong's updated tables and workpapers do not offer "new" analyses, but reasonably clarify already-offered opinions. Under such circumstances, courts have allowed even *post-deposition* supplementation of an expert report. *See, e.g., Emerson*, 2015 WL 2176964 at *3; *Quinn v Franzen Family Tractors & Parts, LLC*, 2018 WL 9869629 at *2-3 (N.D. Iowa Mar. 6, 2018) (permitting expert to testify on opinions that "did not contradict or significantly expand [expert's] prior opinions"); *Taylor v. Cottrell*, 795 F.3d 813, 818-19 (8th Cir. 2015). In *Taylor*, for example, the Eighth Circuit held that the district court abused its discretion by striking a supplemental affidavit submitted by an expert's business manager *after her deposition* to clarify and put her testimony in context. *Id.* In contrast, here, Mr. Strong merely produced updated tables and workpapers before his deposition—*i.e.*, not a supplemental report or declaration.

Because Mr. Strong's production of his updated tables and workpapers did not trigger a duty to disclose under Rule 26(a)(2), the motion may be denied on this ground alone.

## II. EVEN IF MR. STRONG'S PRODUCTION HAD BEEN UNTIMELY, IT SHOULD NOT BE STRICKEN

Even assuming, *arguendo*, that Mr. Strong's updated tables or workpapers constituted an "untimely" production, that by no means mandates the extreme sanction of striking such materials. Whether to exclude an expert disclosure as untimely lies within the Court's discretion. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). In exercising that discretion, courts are "loathe" to invoke the "drastic sanction" of exclusion. *McAdoo v. IT Educ. Servs., Inc.*, 2011 WL 2198568, at *2 (D. Colo. Jun. 6, 2011) (collecting cases). Courts weighing whether untimely disclosures are substantially justified or harmless consider four factors: (1) the prejudice or surprise to the impacted party, (2) the ability to cure the prejudice, (3) the potential for trial disruption, and (4) the erring party's bad faith or willfulness. *Woodworker's Supply, Inc.*, 170 F.3d at 993. Here, even if Mr. Strong's updated tables or workpapers were deemed untimely, the "drastic sanction" of exclusion would be unwarranted because any late disclosure was harmless. *McAdoo*, 2011 WL 2198568, at *2.

### A.  Plaintiffs Identify No Prejudice From Mr. Strong's Production

Plaintiffs identify no prejudice from Mr. Strong's pre-deposition production. Indeed, Plaintiffs barely mention prejudice, but only assert without any explanation that the purported late disclosures "prevent[ed] Plaintiffs and their expert from having any meaningful opportunity to analyze the new opinions before Strong's deposition, or to rebut them." Mot. 6-7. That conclusory assertion is not enough—despite having had Mr. Strong's papers for nearly two weeks, Plaintiffs still do not articulate what specific aspects of the tables or workpapers they or their expert needed

7

time to "digest" (*id.* 8), or what they needed to discuss with their own expert (*id.*). *See Blatchley v. Cunningham*, 2016 WL 9735742 at *4 (D. Colo. Oct. 20, 2016) ("Dr. Janes argues that the August 25 disclosures constitute unfair surprise and prejudice to him, but he does not explain why or how."). And for good reason: as discussed *supra* at 2-4, the information is straightforward and entirely consistent with Dr. Strong's prior analyses.

In any event, courts in this district have rejected virtually identical claims of prejudice to those which Plaintiffs make here. For example, in *Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*, 2015 WL 7294791 (D. Colo. Nov. 19, 2015), the court held that any prejudice to the defendant from a supplemental expert report served two days before the expert's deposition was minimal despite the defendant's argument—just as Plaintiffs argue here—that it had "no opportunity to seek discovery …, to have its rebuttal expert opine on the late-disclosed information, or to adequately prepare to depose [expert] on the new bases in the Supplemental Report" and that "curing this prejudice would require setting a new rebuttal expert deadline and reopening fact discovery at great expense." *Id.* at *6. The court rejected these arguments, noting that the "[d]efendant could have moved to extend discovery, to reschedule [the expert's] deposition, or to convene a second deposition of [the expert]," but that the "[d]efendant declined to do so despite ample opportunity, as the Final Pretrial Conference was not scheduled for four more months." *Id.* So too here: the Pretrial Conference is still 10 months away. And here, as in *Bio Med*, the "prejudice was sufficiently minimal that [Plaintiffs] chose not to mitigate it through seeking a minor extension of discovery." *Id.* Plaintiffs' own conduct belies any prejudice.

Plaintiffs' assertion (Mot. 7) that Mr. Strong "confirmed" that his production disclosed "entirely new analyses" not only misreads his testimony, but is of no moment. The sole example

8

offered (Mot. 7) is that Mr. Strong stated that his June 28 Rebuttal Report did not disclose "explicitly in the calculation" ████████████████████████████████████████ ████████████████████████████████████ But Mr. Strong then continued:

> Q. So you do not feel that you can give me a complete answer unless you rely or resort to the materials that were provided to plaintiffs yesterday in order to respond to questions concerning the gains to Charter in customer value; is that correct? [Objection omitted]…
>
> THE WITNESS: ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████

Scher Ex. 1 (Tr. 222:2-15) (emphasis added). In other words, Mr. Strong testified he *could* give a complete answer without relying on the October 14 materials by simply using basic multiplication, but that his October 14 materials present it "in a clearer form." This is not prejudice.

Even assuming his disclosure was untimely, that does not render it prejudicial; otherwise the inquiry would be meaningless. Nor, as a practical matter, can Plaintiffs fairly claim to be surprised by Mr. Strong's production—the workpapers and updated tables apply the exact same processes already disclosed, ████████████████████████████████████████ ████████████████████████████████████████ This is not the kind of "surprise" that could have caught Plaintiffs off-guard, let alone warrant striking.

### B. Plaintiffs Had The Ability To Cure The Purported Prejudice, But Refused

Plaintiffs had multiple opportunities to cure any claimed prejudice but made no attempt to do so. Plaintiffs did not ask Mr. Strong *any* questions about the substance of the October 14 tables and workpapers, so they cannot now claim that they did not have a fair opportunity to investigate their contents. Indeed, Plaintiffs left a full *half hour* on the clock at Mr. Strong's deposition, even though Charter's counsel repeatedly stated that Mr. Strong was prepared to answer any questions

9

about the materials. Instead, Plaintiffs chose to *not* to try to cure that purported prejudice, and instead ask the Court to impose the harshest remedy possible. "[T]he reason why the purported Rule 26 violation cannot now be cured is because Plaintiff[s] horded [sic] any opportunity to devise a cure away from [Charter] and the Court." *Beebe v. Colorado*, 2019 WL 6044742, at *12 (D. Colo. Nov. 15, 2019). Such gamesmanship should not be rewarded. If Plaintiffs had simply asked Mr. Strong questions about these materials, this motion would have been unnecessary.

Nor can Plaintiffs' complaint (Mot. 8) that the deposition was taken on the last day of expert discovery be credited. They could have (but did not) asked Charter to consent to Mr. Strong being deposed shortly outside the discovery schedule (such as the next week), or could have asked for a 30-minute supplemental deposition shortly after his first deposition, limited to his October 14 materials. They did neither.

### C. Mr. Strong's Production Did Not And Will Not Disrupt Trial

Trial is almost a year away. Dkt. 489 (trial commences on Oct. 24, 2022). That weighs heavily against exclusion. *Vanderlaan v. Ameriprise Auto & Home Ins.*, 2021 WL 4441518 at *8 (D. Colo. Sep. 28, 2021) (declining to exclude expert opinions where "[a]ny prejudice that could result … can be cured without any disruption to the trial, which is not set until May 2022," eight months away); *see also Great Northern Ins. Co. v. NGL Warehouse, LLC*, 2016 WL 11691162, at *5 (D. Colo. Sep. 21, 2016) ("this court is not persuaded that any prejudice cannot be cured, given the fact that dispositive motions have not been decided and a jury trial is not set to commence" for four months).

Plaintiffs' parade of horribles (Mot. 8)—that they would need to "serve yet another report from Furchtgott-Roth to rebut Strong's new analyses"[2] and then "re-depose" Strong—is incorrect. As a threshold matter, Plaintiffs never asked (and still have not asked) to "re-depose" Mr. Strong, so they cannot complain of that lost opportunity. And despite having Mr. Strong's papers for over a week before filing their motion, Plaintiffs still offer no explanation of what "new analyses" their expert would rebut, or on what topics they would need to "re-depose" Mr. Strong. Even if the Court *sua sponte* decided to permit a 30-minute supplemental deposition to question Mr. Strong on his papers, Plaintiffs' conclusory assertion that "there simply is no time" (*id.*) ignores that it is nearly 11 months until trial. Dkt. 489. "To the extent that Plaintiff[s'] claim survives summary judgment and [they] can persuade the [C]ourt that further discovery of Mr. [Strong] is warranted, there will be sufficient time to accomplish such discovery." *Advance Trust & Life Escrow Servs., LTA v. Sec. Life of Denver Ins. Co.*, 2020 WL 7979020 at *5 (D. Colo. Oct. 26, 2020), *report & recommendation adopted*, 2021 WL 62339 (D. Colo. Jan. 6, 2021).

### D. Mr. Strong's Pre-Deposition Disclosure Of Materials Was Not "Willful"

Finally, contrary to Plaintiffs' representations (Mot. 9-10), neither Charter nor Mr. Strong acted willfully or in bad faith. Plaintiffs simply rehash their timeliness arguments, and then conclude "[t]hat timing was clearly designed to prejudice Plaintiffs." Mot. 10. But such serious accusations, supported by nothing more than attorney *ipse dixit*, should not be countenanced— Plaintiffs provide no basis that Charter or Mr. Strong: (1) believed that the papers contained any new opinions triggering Rule 26(a)(2) disclosure deadlines; let alone that (2) Mr. Strong or

---

[2] In addition, because Mr. Strong is offered solely as a rebuttal expert, Dr. Furchtgott-Roth would not be permitted to serve a report rebutting Mr. Strong's opinions anyway.

11

Charter's counsel somehow "designed" the timing of the submission to prejudice Plaintiffs. In fact, Mr. Strong explained that he had prepared the papers in just the two days before his own deposition "as I was doing a review of my report in preparation for this deposition." Scher Ex. 1 (Tr. 10:3-9). Plaintiffs did not question the sincerity of Mr. Strong's explanation at his deposition, nor do they now. Moreover, upon Charter's receipt of the materials, it disclosed them to Plaintiffs before the deposition. To insinuate that Charter's counsel had these materials but "waited" to produce them (Mot. 10) is an unsupportable and uncivil accusation.

Plaintiffs further err in arguing that "Charter could not provide any justification" for Mr. Strong's "late" disclosure. Mot. 10. To the contrary, in response to Plaintiffs' query, Charter invited Plaintiffs to ask Mr. Strong any questions they liked about the papers at his deposition, and Mr. Strong provide a reasonable answer as to why he had not prepared them earlier. While that alone is enough, Charter's position that no "justification" was needed because the papers did not trigger Rule 26 disclosure requirements is entirely reasonable; while Plaintiffs may disagree, they offer nothing to suggest that such a position was not taken in good faith.

If anyone erred here, it is Plaintiffs, who could have avoided this motion if they simply asked Mr. Strong about the substance of the materials at his deposition. Stubborn refusal to do so is not good cause to burden the Court with motion practice on the eve of the dispositive motion deadline. Moreover, Plaintiffs never sought—and still do not seek—any lesser form of relief that could cure any supposed prejudice, opting for an all-or-nothing gamble, a tactic that should not be rewarded. "Although Rule 37(c)(1) authorizes other sanctions for late disclosures besides striking the information, [Plaintiffs have] not requested an alternative sanction here." *Boyd v. Home Depot,*

*Inc.*, 2013 WL 300917, at *3 (D. Colo. Jan. 25, 2013) (denying motion to strike), *reconsideration granted on alternative grounds*, 2013 WL 788085 (D. Colo. Mar. 1, 2013).

## CONCLUSION

The Court should deny Plaintiffs' motion to strike in its entirety.

Dated:   November 9, 2021

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
(303) 830-1033 (facsimile)
E-mail: cjoyce@fwlaw.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
Nathan A. Hamstra
Allison Huebert
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
(312) 705-7401 (facsimile)
E-mail: andrewschapiro@quinnemanuel.com
E-mail: allisonhuebert@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
(415) 875-6700 (facsimile)
E-mail: charlesverhoeven@quinnemanuel.com
E-mail: davideiseman@quinnemanuel.com
E-mail: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)
E-mail: toddanten@quinnemanuel.com
E-mail: jessicarose@quinnemanuel.com

*Counsel for Defendant
Charter Communications, Inc*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro