# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC. (F/K/A )
WARNER BROS. RECORDS, INC.), ET )
AL., )
)
PLAINTIFFS, )
) CASE NO.
VS. ) 19-cv-00874
) RBJ-MEH
CHARTER COMMUNICATIONS, INC., )
)
DEFENDANTS. )
________________________________)

* * * ATTORNEYS' EYES ONLY * * *

REMOTE PROCEEDINGS OF THE
VIDEOTAPED EXPERT DEPOSITION OF
GEORGE STRONG, JR.
FRIDAY, OCTOBER 15, 2021

JOB NO. 4848551
REPORTED BY KIMBERLY EDELEN,
CSR. NO. 9042, CRR, RPR.
PAGES 1 - 260

REMOTE PROCEEDINGS OF THE VIDEOTAPED EXPERT DEPOSITION OF GEORGE STRONG, JR., TAKEN ON BEHALF OF PLAINTIFFS, ON FRIDAY, OCTOBER 15, 2021 AT 8:01 A.M. PDT, BEFORE KIMBERLY A. EDELEN, CSR NO. 9042, CRR, RPR.

REMOTE APPEARANCES OF COUNSEL

FOR THE PLAINTIFFS WARNER RECORDS INC., FKA WARNER BROS. RECORDS, INC. AND UMG RECORDINGS, INC.:

COVINGTON & BURLING LLP
BY: STACEY GRIGSBY, ESQ.
ANDERS LINDEROT, ESQ.
ELIZABETH R. ARCHER, ESQ.
ONE CITYCENTER
850 TENTH STREET, NW
WASHINGTON, DC 20001
202.662.5238
SGRIGSBY@COV.COM
ALINDEROT@COV.COM
EARCHER@COV.COM

FOR THE DEFENDANT CHARTER COMMUNICATIONS:

QUINN EMANUEL URQUHART & SULLIVAN LLP
BY: DAVID EISEMAN, ESQ.
DYLAN SCHER, ESQ.
50 CALIFORNIA STREET
22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111
415.875.6600
DAVIDEISEMAN@QUINNEMANUEL.COM
DYLANSCHER@QUINNEMANUEL.COM

ALSO PRESENT: JEFREE ANDERSON, VIDEOGRAPHER

A These are updates to prior exhibits that I had prepared in the last day or two.

Q And so when you say that these are updates to the last exhibits, for the record, are those the same papers that were served on plaintiffs at 5:20 p.m. Eastern time yesterday?

MR. EISEMAN: Well, let me just -- because I don't know if Mr. Strong knows that, but I will represent that they are the same papers that were served yesterday at that time.

BY MS. GRIGSBY:

Q And you just testified that you prepared those updated papers in the last few days. When were you asked to provide updated exhibits and work papers?

MR. EISEMAN: Objection as to form.

THE WITNESS: I didn't -- I wasn't asked to do that. I asked my team to do that and informed the attorneys and they decided to send them to you. That's the way I understand it worked.

BY MS. GRIGSBY:

Q When did you ask your team to update the work papers and exhibits from your rebuttal and second rebuttal reports?

A Well, as recently as yesterday morning,

some of them, but most of them were the day before. So the last -- last two days.

Q Why did you ask your team to update your rebuttal and second rebuttal reports?

A Well, I -- as I was doing a review of my report in preparation for this deposition, there were certain aspects of it that I thought needed clarification or would benefit from, you know, a clarification.

MS. GRIGSBY: Plaintiffs object to the provision of these materials well past the close of the -- well past the disclosure deadline, and we have a standing objection to the reliance on any of these materials in the case and specifically during this deposition.

So I just want to get that on the record.

MR. EISEMAN: Yeah. And, obviously, you're free to state whatever objections you want. We disagree with how you've characterized the documents that Mr. Strong provided to us and that we provided to you yesterday.

Mr. Strong is prepared to answer any questions you have about those documents today and we encourage you to ask him anything you want.

MS. GRIGSBY: And, again, for the record,

we object to any reliance given the fact that they were provided less than 24 hours prior to Mr. Strong's deposition, and we have a standing objection.

We do not believe we were provided the papers during the deadline for expert discovery. And in any event, even if it were not untimely, which they are, we have not been provided sufficient time to consult with our own experts or our own expert teams to review them. So we're going to have that standing objection.

And we dispute your characterization that we were given ample opportunity to -- to examine this witness on these materials.

BY MS. GRIGSBY:

Q Okay. So other than these work papers and updated exhibits, do you have any other materials with you today, Mr. Strong?

A No.

Q So just in -- very generally, you understand that you are under oath today, correct?

A I do.

Q And during this deposition, I will be asking questions. If at any time my question is unclear, then I'm happy to repeat the question. But

Q And, again, are you able to testify today and explain the methodology for customer value in gains to Charter without resort to those materials that we were provided yesterday?

A Well, only if I exclude the 7 percent explicit calculation. But I believe that the 7 percent calculation is useful.

Q So is the answer yes or no?

MR. EISEMAN: Objection as to form.

THE WITNESS: Yeah. The -- the answer is I can't fully testify if I believe that 7 percent ought to be included explicitly in the calculation. So the answer is no.

BY MS. GRIGSBY:

Q So is it your -- so are you telling me that the methodology for customer value and gains to Charter before apportionment in this rebuttal report which is Exhibit 314 and the second rebuttal report which is 315 is incomplete?

MR. EISEMAN: Objection as to form.

THE WITNESS: I believe -- yeah. I believe the 7 percent should be added to it. In other words, you should take 7 percent off the number you're looking at on Exhibit 5A2.

\\\

BY MS. GRIGSBY:

Q So you do not feel that you can give me a complete answer unless you rely or resort to the materials that were provided to plaintiffs yesterday in order to respond to questions concerning the gains to Charter in customer value; is that correct?

MR. EISEMAN: Objection to form, mischaracterizes the witness' testimony.

THE WITNESS: Yeah, I --

MS. GRIGSBY: I'm asking.

[redacted]

BY MS. GRIGSBY:

Q Well, again, I'm just asking you, without resorting to that -- those particular materials, what your answers are. And again, whenever you feel like your answer is either incomplete or you cannot provide an answer without resort to the materials, please let me know.

Okay. So let's go to Paragraph 84, again, which is on Page 31.

A Okay.

[redacted]

Did I read that correctly?

A You did.

Q For this particular statement, are you relying on something other than Dr. Snow's report?

A No.

Q And did you perform your own analysis of the distribution of when the alleged infringing subscribers received notices?

A I did not.

MS. GRIGSBY: Okay. That is all I have. Thank you, Mr. Strong.

MR. EISEMAN: And I have no questions for the witness.

I will note that there's about 30 minutes left on the seven-hour record, and plaintiffs' counsel made the decision not to question Mr. Strong on the charts and work papers that were sent to

plaintiffs yesterday. So I'm just -- they had the opportunity to question him and I'll note for the record they chose not to do so.

But other than that, I'm all set.

THE VIDEOGRAPHER: Shall I take us off the record then?

MR. EISEMAN: Yes, please.

MS. GRIGSBY: Yes.

THE VIDEOGRAPHER: All right. This marks the end of the deposition of George Strong, Jr. We're going off the record. The time is 4:21 p.m.

(Whereupon, at 4:21 p.m., the deposition of GEORGE STRONG, JR. was concluded.)

---oOo---

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES ) ss.

I, Kimberly A. Edelen, C.S.R. No. 9042, in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify the truth, the whole truth and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named, and thereafter reduced to typewriting under my direction, and the same is a true, correct and complete transcript of said proceedings;

That if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript { } was {X} was not requested.

I further certify that I am not interested in the event of the action.

Witness my hand this 20th day of October, 2021.

KIMBERLY A. EDELEN, C.S.R. NO. 9042