# Exhibit I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

WARNER RECORDS INC., *et al.*,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

---

## PLAINTIFFS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GEORGE STRONG

---

Plaintiffs in the above-captioned matter respectfully move to exclude certain testimony by Defendant Charter's expert, George Strong.

Strong is a professional expert witness who focuses on damages calculations. Although Strong offers a number of calculations in this case, Strong's opinions are based on his understanding of the law, unsupported assumptions and flawed methodology, and Charter's other expert Dr. Aram Sinnreich.

Strong opines on the statutory damages factors and the range of statutory damages in the case based on his (or Charter's counsel's) interpretation of statutory and case law. Strong also intends to opine that the opinions of Plaintiffs' damages expert, Dr. Harold Furchtgott-Roth, are irrelevant or insufficient under "the actual standards … of [17 U.S.C.] Section 504." Ex. C

(Strong Deposition Transcript) at 107:25-108:15.[1]  These opinions should all be excluded
because they are improper legal opinion testimony.

Strong's opinions on the economic benefits to Charter of retaining infringing subscribers
and harm to Plaintiffs from infringement should be excluded because they are based on
unreasonable assumptions and methods that are contradicted by the evidence.  Strong's analysis
of the economic benefit to Charter of retaining infringing subscribers rests on assumptions that
Strong himself has admitted are "unrealistic" and "supersede[ ] the practicality" that internet use
wasn't severable in the way it would have to be for Strong's analysis to make sense.  *Id.* at
232:5-14; 233:16-20.  Strong's analysis of the harm suffered by Plaintiffs is unreliable because it
fails to account for subsequent distribution of the copyrighted material—a key feature of peer-to-
peer ("P2P") file-sharing software.

Finally, although Strong is a self-described "damages witness," he opines on the music
industry, file-sharing technology, and piracy, based on the opinions of Charter's expert
Dr. Sinnreich.  Those opinions should be excluded for the reasons stated in Plaintiffs' motion to
exclude Dr. Sinnreich and because they are well beyond the scope of Strong's expertise.

## BACKGROUND

Strong, a professional damages expert, authored two reports in this matter: the "Expert
Rebuttal Report of George G. Strong, Jr." dated June 28, 2021 (Ex. A) and the "Second Rebuttal
Expert Report of George G. Strong, Jr." dated September 21, 2021 (Ex. B).[2]  Strong is not an
economist nor does he have expert knowledge of the music industry and technology.  *See* Ex. A

---

[1] Citations to "Ex." refer to the exhibits to the Declaration of Stacey K. Grigsby filed
concurrently herewith.

[2] Strong subsequently disclosed "updated tables . . . and workpapers" that should be excluded for
the reasons set forth in Plaintiffs' Motion to Strike Untimely Expert Disclosures.  *See* Dkt. 540.

at App. A; Ex. C at 34:4-35:21; 105:18-106:17.  Strong has never worked in or studied the music or internet service industries, and he lacks professional and academic experience with file-sharing technologies and digital piracy.  *See* Ex. C at 34:18-35:21; Ex. A at App. A.

Strong's proposed testimony, as set forth in his expert reports and at his deposition, falls into four general subject areas.  *First*, Strong conducts a damages analysis in which he purports to measure the actual harm to Plaintiffs, gains to Charter, and deterrence.  *See* Ex. A ¶¶ 46-100.

*Second,* Strong, assuming that, as a legal matter, Plaintiffs can obtain only one recovery for all songs that were registered as part of an album and only one recovery where a sound recording and its underlying composition are both asserted, calculates the number of works-in-suit to arrive at a range of statutory damages and then concludes that the actual damages in this case are well below the minimum award for statutory damages.  *See id.* ¶¶ 21 & n.42, 106.

*Third,* Strong opines that Dr. Furchtgott-Roth does not offer an adequately supported claim for damages because Dr. Furchtgott-Roth analyzes harm to Plaintiffs in the context of the economic characteristics of property, which Strong opines is "not relevant" to copyright infringement damages.  *Id.* ¶¶ 30, 35.

*Fourth*, Strong opines generally on the music industry and how it was impacted by P2P file sharing.

## LEGAL STANDARD

An expert qualified "by knowledge, skill, experience, training, or education" may provide opinion testimony if it (1) is helpful to the jury; (2) is based on sufficient facts or data; (3) is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702.

Trial courts act as gatekeepers to ensure that expert testimony is relevant and reliable.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). Expert opinions are relevant if they would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Daubert*, 509 U.S. at 591. They are reliable if the expert is qualified and his or her opinions are "scientifically valid" and based on "reasoning or methodology [that] properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. As a gatekeeper, the Court must assess the "reasoning and methodology underlying the expert's opinion" and determine "whether it is scientifically valid and applicable to a particular set of facts." *Blotcher v. Stewart*, 45 F. Supp. 3d 1274, 1278 (D. Colo. 2014) (Jackson, J.) (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)). Even if relevant, "[e]xpert testimony, like any other evidence, is subject to exclusion if it fails the Fed. R. Evid. 403 balancing test." *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994).

The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *Salvatore v. Pingel*, 2010 WL 11590318, at *4 (D. Colo. Mar. 12, 2010).

## ARGUMENT

### I. Strong's Legal Opinions Should Be Excluded.

"Expert witnesses may not testify as to ultimate issues of law governing the jury's deliberations, because instructing the jury is the function of the trial judge." *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1150 (10th Cir. 2009) (citing *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988)). Furthermore, "testimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case." *Specht*, 853 F.2d at 808; *see also Wildearth Guardians v. Pub.*

4

*Serv. Co. of Colo.*, 853 F. Supp. 2d 1086, 1090 (D. Colo. 2012) (Jackson, J.) (excluding opinions

interpreting environmental regulations because "interpretation of the law is a matter for the

Court"). Strong's proffered testimony circumvents both of these rules.

> A. **Strong Improperly Instructs the Jury on Statutory Damages.**

Strong improperly instructs the jury on the relevant factors the jury may consider in

awarding damages and the amount of damages that would provide adequate deterrence. Strong

opines on the "factors that inform an appropriate calculation of statutory damages" based on his

interpretation of case law and a U.S. Department of Commerce White Paper. Ex. A ¶ 63. To

quantify one of the factors, "the deterrent value of the damages," Strong incorporates a purported

"deterrence multiplier" of two to three times actual harm based solely on his "understand[ing]"

that "courts in Colorado . . . have awarded statutory damages in cases involving musical works

that are between two and three times license fees." *Id.* ¶¶ 98-100. Strong offers no factual or

economic basis for his claim that his chosen "deterrence multiplier" captures the range of

statutory damages appropriate here and incorrectly states that his choice of a numerical

deterrence multiplier can yield an appropriate calculation of the upper bound of statutory

damages because one case he relies upon involved an instance of willful infringement. *See* Ex.

A ¶ 99 n.171 (citing case law). But, in assessing statutory damages, "courts have eschewed use

of mathematical formulas or equations in favor of a number of factors." 6 William F. Patry,

*Patry on Copyright* § 22:174 (2021) (citation omitted). And willfulness and deterrence are

typically evaluated as distinct factors bearing on statutory damages. *See, e.g.*, *Bryant v. Media

Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (distinguishing "the infringer's state of

mind" from deterrence considerations).

Strong's opinion on the statutory damages factors and the deterrence multiplier should be

excluded because Strong "may not … testify outside of the statutory damages framework, or to

what goes into statutory damages as a matter of law." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 2019 WL 9088257, at *2 (E.D. Va. Nov. 19, 2019).  Strong acknowledges that he is not offering opinions as a legal expert, *see* Ex. C at 33:22-34:3, and the cases he cites were provided to him by Charter's counsel, *id.* at 262:15-264:24.  By opining on case law Charter's counsel provided, he acts as "a puppet through which counsel will lecture the jury on the law." *KNAPP Logistics & Automation, Inc. v. R/X Automation Sols., Inc.*, 2015 WL 5608124, at *1.  But the range of statutory damages is set by statute, and this Court, not an expert witness, must instruct the jury on the factors to consider in awarding damages within that statutory range.

> **B.    Strong's Opinion on the Number of Works in Suit is an Impermissible Legal Conclusion.**

Strong's calculation of the number of works-in-suit rests on and advances improper legal opinions.  First, based on instructions from Charter's counsel, Strong assumes that "tracks embody both an identified sound recording and an identified musical composition within a single track" and counts the two separate copyrights—one for the track and one for the composition— as a single work.  *See* Ex. A ¶ 21.  Second, Strong treats "all songs on an album and registered as a compilation . . . as a single work." *See id.* ¶ 21 n.42.  These assumptions are crucial to Strong's damages analysis: the fewer the works-in-suit, the lower the range of statutory damages that Strong opines that the jury may award in this case.  *See id.* ¶ 100.  Yet Strong admitted that the number of works-in-suit is "a legal issue" and that he was asked to make those assumptions by counsel.  *See* Ex. C at 97:11-25.  Strong also admitted that the "the correct number of works-in-suit" is "well beyond my purview."  *Id.* at 98:1-6.  Strong's calculations give voice to Charter's counsel's legal conclusions, and Strong should be precluded from repackaging those conclusions as expert testimony.  *See KNAPP Logistics*, 2015 WL 5608124, at *1-2.

C.      **Strong's Criticisms of Dr. Furchtgott-Roth's Analysis Invade the Roles of the Court and the Jury.**

Strong's opinion that Dr. Furchtgott-Roth's analysis "does not inform a showing of harm to plaintiffs" is an inadmissible legal opinion. Ex. C at 106:25-107:4; *see* Ex. A ¶¶ 30-36. Strong opines that 17 U.S.C. § 504 permits recovery for "(1) actual damages … and any profits," and "(2) statutory damages, which includes consideration of certain factors, including harm to the plaintiffs and gains by the defendant." Ex. A ¶ 30. According to Strong, because "Dr. Furchtgott-Roth refers to three attributes of property" generally accepted in economics, and because those attributes aren't part of "the actual standards of either [subsection of] Section 504" they are "not informative with respect to harm to Plaintiffs." Ex. C at 107:5-108:15; Ex. A ¶ 30. But an expert may testify about "economic principles." Fed. R. Evid. 702, 2000 Adv. Comm. Note (quoting Am. Coll. of Trial Laws., *Standards and Procs. for Determining the Admissibility of Expert Test. after Daubert*, 157 F.R.D. 571, 579 (1994)). Whether Dr. Furchtgott-Roth's opinions are "informative" in assessing statutory damages under Section 504 and thus whether they "will help the trier of fact to understand the evidence or to determine a fact in issue[,]" Fed. R. Evid. 702(a), is a question for the Court, not Strong, to determine.

Strong's opinion is also legally incorrect. He opines that Dr. Furchtgott-Roth's analyses of harm are "not sufficient" primarily because Dr. Furchtgott-Roth "cannot say how much" Plaintiffs were harmed. Ex. A ¶¶ 35-36; *see* Ex. C at 108:16-19 ("Q. And is it your understanding that Dr. Furchtgott-Roth opines on the actual harm …?  A. No, he does not. He says it's impossible."). But economic expert opinions need not be tied to a specific quantitative analysis, and economists may testify as to factors that resist quantification but are nevertheless proper for a jury to consider in awarding damages. *See, e.g., Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245-46 (10th Cir. 2000) (upholding district court ruling permitting an economist to

offer testimony about the principles of hedonic damages while also excluding the expert's quantitative analysis). Strong's opinion impermissibly conflates "actual damages," which Plaintiffs have chosen not to seek in this case, with the unquantifiable harm suffered by Plaintiffs, a proper factor for the jury to consider in assessing statutory damages. *See, e.g.*, *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (in assessing statutory damages, trier of fact may consider, among other things, "the difficulty or impossibility of proving actual damages").

## II. Strong's Opinions on Gains to Charter and Actual Harm to Plaintiffs Are Unreliable Because They Are Contradicted by the Evidence and Rest on Flawed Methodology.

Although experts may base their opinions on assumptions of fact, those assumptions must be connected to the actual facts of the case. *See*, *e.g.*, *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1213 (10th Cir. 2004) (holding that expert's opinion regarding source of fire was unreliable because expert made assumptions about ballast temperature that were not supported by evidence). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Strong's opinions about Charter's gains from retaining infringing subscribers and estimation of Plaintiffs' lost sales should be excluded because they are based on Strong's unreasonable assumptions rather than the facts.

### A. Strong's Analysis of Charter's Gains Relies on Unreasonable Assumptions That Are Contradicted by the Evidence.

One of the key opinions offered by Strong is a quantification of the gains to Charter of retaining infringing subscribers. *See* Ex. A ¶¶ 63, 81-91. In calculating Charter's gains, Strong uses a flawed methodology that lacks factual support and is based on speculation. Because

Strong's analysis of Charter's gains is neither "based on sufficient facts or data" nor "the product

of reliable principles and methods[,]" it should be excluded.  Fed. R. Evid. 702(b)-(c).

Strong's methodology suffers from three primary flaws, each providing an independent

basis for excluding his analysis of gains to Charter as unreliable.  First, Strong fails to account

for bundling—a process by which Charter aggregated and sold multiple services to a single

customer.  Ex. C at 234:5-11 (explaining that he "disregard[s] the bundle" at the "first level of

apportionment").  ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████.  *Id.*

at 230:22-231:9.

Second, ███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████ Ex. C at 237:1-9.  ████████████████████

█████████████████████████████████████████████

█████████████████████ Ex. A ¶ 61.  But Strong does not account for the fact that, in reality,

Charter's internet service was not severable and, as Strong agreed, "[c]ustomers do not pay a

prorated amount based on how they use the internet on Charter's network."  Ex. C at 235:21-

237:11.  So if Charter had terminated the internet service of a repeat infringer, as Plaintiffs

contend it should have done, Charter would have lost all subscription fees for that subscriber, not

just a pro-rated amount for the bandwidth associated with infringing file-sharing.

Third, Strong's apportionment for P2P traffic as a percentage of all internet traffic,

including by the millions of internet users who do not use P2P, fails to account for the actual P2P

use by repeat infringers.  Strong relies on data that reflects the percentage of all internet traffic

that is attributable to P2P traffic, and thus ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████. *Id.* at 240:20-243:2.

With each of these flaws, Strong disregards the facts underlying this case in favor of a contrived but-for world that underestimates Charter's gains. Such testimony does not satisfy the standards for expert testimony set forth by Rule 702 and should be excluded. *See, e.g.*, *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 144 (4th Cir. 1994) ("When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court."). Nor should Strong be permitted to recast his analysis of "financial gain" to Charter as an opinion on Charter's incentives to retain infringing subscribers, an element of Plaintiffs' vicarious liability claim. *See* Ex. C at 238:2-239:6. Such an opinion should be excluded because, as Strong admits, he is not qualified to offer any opinions on questions of liability, nor does he purport to do so. *See, e.g.*, *id.* at 27:24-28:1; 180:16-181:9.

**B. Strong's Estimate of Lost Sales Rests on Unreasonable Assumptions That Lack a Factual Basis.**

████████████████████████████████████████████████████████████████

██████████████████████. *See* Ex. A ¶ 68. Because Strong's assumption is not supported by evidence, Strong's estimate of lost sales should be excluded. *MagneTek, Inc.*, 360 F.3d at 1213 (holding district court within its discretion to exclude expert testimony based on "assumptions . . . that were not supported by the evidence").

First, Strong incorrectly assumes that the notices Plaintiffs sent informing Charter that its subscribers were infringing Plaintiffs' works reflect that the subscribers *downloaded* the works when, in fact, the notices reflect observed *distributions* of Plaintiffs' copyrighted works. *See* Ex.

A ¶ 67; *see also* Ex. D (Testimony of Barbara Frederiksen-Cross, *Sony Music Ent. v. Cox Commc'ns, Inc.*, Dec. 4, 2019) at 423:12-20.  Second, relying entirely on Dr. Sinnreich and without any independent analysis,



. *See* Ex. A ¶ 68.

. *See* Ex. C at 194:14-20.

. *See id.* at 200:13-21 (

").  Because Strong's lost sales estimate is the product of arbitrary assumptions not tied to the facts of this case, that opinion should be excluded.

## III. Strong is Unqualified to Opine on the Music Industry and P2P Piracy, and He Should Be Precluded from Repeating Dr. Sinnreich's Opinions on Those Topics.

Strong's wide-ranging opinions on the music industry, digital file sharing, and piracy are outside the scope of his expertise and should be excluded.  Strong's Rebuttal Report offers sweeping characterizations of P2P piracy and its impact on the music industry, including the "extensive non-infringing uses," "declining … popularity," and "benefits" to Plaintiffs of P2P piracy, Ex. A ¶¶ 18-20, 31, 49-53, 59, that Plaintiffs failed to mitigate the harm from P2P piracy, *id.* ¶¶ 54, 96, and that Charter's subscribers likely wouldn't have purchased through legitimate means the music they distributed via P2P file sharing, *id.* ¶ 57.  Although Strong characterized

these opinions as mere "context," Ex. C at 85:8-17; 92:7-13, that is inaccurate. ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ , *id.* at 192:16-194:25;

196:14-197:4; 200:22-201:12. Strong also opines, ████████████████████████

████████████████████████████████ , that Charter's handling of DMCA notices caused a

decline in infringing activity on its network, which he claims "contradicts Plaintiffs' claims that

Charter did nothing to deter subscribers from infringement." Ex. A ¶ 104.

But Strong is relying entirely on Dr. Sinnreich to offer these opinions. Strong admits that

he is not an expert in the music industry. *See* Ex. C at 34:15-17; 253:12-18. He has never

worked in the music industry or published any analysis of it. *See id.* at 35:2-4; Ex. A at App. A.

Strong also admits that he is not an expert in internet services, file-sharing technologies, or

telecommunications. *Id.* at 34:18-35:1; 35:13-21. Strong uncritically adopts and repeats,

without any independent investigation, opinions about the music industry and file sharing offered

by Dr. Sinnreich. Strong's Rebuttal Report cites to Dr. Sinnreich's Expert Report 33 times and

to a separate conversation with Dr. Sinnreich 16 times. *See id.* at 84:18-85:17. In spite of his

extensive reliance on Dr. Sinnreich, ████████████████████████████████████

████████████████████████ . *See id.* at 87:25-88:5. ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ . *Id.* at 78:10-80:21. Likewise,

when Strong ostensibly draws on other sources, including a Nielsen report that he claims

corroborates Dr. Sinnreich's views on piracy's benefits, his grasp of these materials is shaped

entirely by Dr. Sinnreich's conclusions. *See id.* at 140:15-141:17. Strong's opinions on the

music industry and digital file sharing should be excluded because they are informed entirely by

what Strong was told by Dr. Sinnreich, rather than by Strong's own expertise. *See Arista Records LLC v. Lime Group LLC*, 2011 WL 1674796, at *10 (S.D.N.Y. May 2, 2011) (excluding Strong's opinions on "the music industry and technology spheres" because of his "lack of expertise" and "he appears to rely almost entirely on an uncritical review of others' views").

Plaintiffs are separately moving to exclude the testimony offered by Dr. Sinnreich. To the extent that Dr. Sinnreich's testimony is inadmissible, that is an independent ground for excluding Strong's opinions that either depend on or merely repeat Dr. Sinnreich's conclusions. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (affirming exclusion under Rule 703 of expert testimony that relied on excluded opinions of another expert). But even if Dr. Sinnreich's opinions were admissible, which they are not, those parts of Strong's testimony that echo Dr. Sinnreich's conclusions should be excluded as needlessly cumulative and unfairly prejudicial. Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. As discussed above, Strong's opinions about the music industry, file-sharing, and piracy uncritically repeat Dr. Sinnreich's conclusions. If Dr. Sinnreich is allowed to testify as an expert for Charter, then Strong should not be allowed to repeat Dr. Sinnreich's conclusions in his testimony. In that case, Strong's testimony would be needlessly cumulative. *See Lime Group*, 2011 WL 1674796, at *11 (excluding Strong's opinions because his testimony "is duplicative of the testimony of Defendants' music industry expert, Professor Aram Sinnreich"). The risk of unfair prejudice would also far outweigh such testimony's probative value, as Strong has undertaken no independent analysis of the topics covered by Dr. Sinnreich and would offer no more than uncritical bolstering of his conclusions.

Strong's testimony should neither needlessly bolster Dr. Sinnreich's testimony nor supplant it if this Court deems the latter inadmissible. Those parts of Strong's testimony that repeat Dr. Sinnreich's conclusions should therefore be excluded.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court:

(1) preclude Strong from instructing the jury on the law of statutory damages and its application on the ground that Strong is offering an impermissible legal conclusion;

(2) preclude Strong from testifying to the number of works-in-suit on the ground that Strong's calculation rests on improper legal conclusions;

(3) preclude Strong from critiquing the testimony of Plaintiffs' expert, Dr. Furchtgott-Roth, as irrelevant and insufficient to support Plaintiffs' damages claim, on the ground that Strong is offering an impermissible legal conclusion;

(4) preclude Strong from opining on Charter's gains and Plaintiffs' harms caused by Charter's infringing subscribers on the ground that Strong's analysis is unreliable because it lacks factual support and rests on flawed methodology;

(5) preclude Strong from opining on the music industry, internet piracy, and Charter's antipiracy efforts on the ground that Strong is unqualified to offer such testimony and, because Strong relies on Dr. Sinnreich, such testimony should be excluded to the extent Dr. Sinnreich's testimony is excluded or as needlessly cumulative if Dr. Sinnreich is permitted to testify.

Dated: November 15, 2021                    /s/ Stacey K. Grigsby
                                            Stacey K. Grigsby
Matthew J. Oppenheim                        COVINGTON & BURLING LLP
Scott A. Zebrak                             One City Center
Jeffrey M. Gould                            850 Tenth Street NW

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE & FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@williamsweese.com

Washington, DC 20001-4956
Telephone: (202) 662-6000
sgrigsby@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 7.1(a) CERTIFICATION

The parties conferred by phone on November 10, 2021 regarding the issues raised by this motion and could not reach agreement.

## CERTIFICATE OF SERVICE

On November 15, 2021, I caused the foregoing document and all supporting materials to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Stacey K. Grigsby*