# Exhibit VII

Exhibit B

Page 1

1                UNITED STATES DISTRICT COURT

                   DISTRICT OF COLORADO

2

3      WARNER RECORDS, INC., et al.,      )

                                          )

4                    Plaintiffs,          )

                                          )

5      vs.                                )  No.

                                          )  1:19-cv-00874-RBJ

6      CHARTER COMMUNICATIONS, INC.,      )

                                          )

7                    Defendants.          )

8

9        The remote videotaped deposition via ZOOM of

10                   KRISTOFER BUCHAN

11                    9:00 A.M. CST

12                  October 15, 2021

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 2

```
 1    PRESENT via Zoom:
 2
           OPPENHEIM & ZEBRAK LLP
 3         COREY MILLER
           ANDREW GUERRA
 4         4530 Wisconsin Avenue NW
           15th Floor
 5         Washington, DC 20016
           corey@oandzlaw.com
 6              Appeared on behalf of Plaintiffs.
 7
           QUINN EMANUEL URQUHART & SULLIVAN LLP
 8         NATHAN M. HAMSTRA
           JESSICA ROSE
 9         191 North Wacker Drive
           Suite 2700
10         Chicago, Illinois 60606
           (312) 605-7400
11         nathanhamstra@quinnemanuel.com
                Appeared on behalf of Defendants.
12
           WINSTON & STRAWN
13         MICHAEL J. BRODY
           35 West Wacker Drive
14         Chicago , Illinois 60606
           (312) 558-6385
15         mbrody@winston.com
                Appeared on behalf of Defendants.
16
17
18    ALSO PRESENT:
19         CHRIS BENNETT, Bates White LLC
20
21
22    VIDEOGRAPHER:  MICHAEL PRAGER
23    STENOGRAPHICALLY REPORTED BY:
      JO ANN LOSOYA, CSR, RPR, CRR
24    LICENSE #:  084-002437
25
```

Page 3

1                       EXAMINATION

2   Witness                              Page    Line

3   KRISTOFER BUCHAN

4    By Mr. Hamstra                        6       6

5                   * * * * * * * * * * * * * * *

6                   INDEX OF EXHIBITS

7    EXHIBIT              DESCRIPTION              PAGE

8   Exhibit 1  Opening Report                       8

9   Exhibit 2  Supplemental Report                  8

10  Exhibit 3  Rebuttal report                      8

11  Exhibit 4  Documents considered list           21

12  Exhibit 5  Opening Report Exhibits 10,         47

13             10A, 10B

14  Exhibit 6  Report exhibits 5A-5C               67

15  Exhibit 7  Report Exhibit 4A and 4B            82

16  Exhibit 8  Report Exhibit 8, 8A-8D             83

17  Exhibit 9  Report Exhibit 5                    86

18  Exhibit 10 Rebuttal report exhibits            99

19             14-15A

20  Exhibit 11 Spreadsheet responses              117

21             Footnote 48

22  Exhibit 13 Hash Notice                        140

23

24    *Exhibit 12 marked in error (Duplicate of EX11)*

      *Exhibit 14 marked in error (Duplicate of EX13)*

25

```
                                              Page 4
 1            THE VIDEOGRAPHER:  Good morning.  We are
 2     going on the record at 9:06 a.m. on October 15,
 3     2021.
 4                  Please note that the microphones are
 5     sensitive and may pick up whispering, private
 6     conversations, and cellular interference.  Please
 7     turn off all cell phones or place them away from the
 8     microphones as they can interfere with the
 9     deposition audio.
10                  Audio and video recording will
11     continue to take place unless all parties agree to
12     go off the record.
13                  This is Media Unit 1 of the
14     video-recorded deposition of Kristofer Buchan taken
15     by counsel for the defendant in the matter of Warner
16     Records Inc., et al, versus Charter Communication,
17     Inc., filed in the United States District Court for
18     the District of Colorado, Case
19     No. 19-cv-00874-RBJ-MEH.
20                  This deposition is being held
21     remotely.
22                  My name is Michael Prager from the
23     firm Veritext, and I'm the videographer.  The court
24     reporter is JoAnn Losoya from the firm Veritext.
25                  I am not authorized to administer an
```

Page 5

1    oath, I'm not related to any party in this action,
2    nor am I financially interested in the outcome.
3                    Counsel and all present in the room
4    and everyone attending remotely will now state their
5    appearances and affiliations for the record.  If
6    there are any objections to proceeding, please state
7    them at the time of your appearance, beginning with
8    the noticing attorney.
9            MR. HAMSTRA:  Nathan Hamstra, Quinn
10   Emanuel, on behalf of Defendant Charter.  With me is
11   Michael Brody of Winston & Strawn as well as Chris
12   Bennett, with the consultancy, Bates White.
13           MR. MILLER:  Corey Miller of Oppenheim &
14   Zebrak for the plaintiffs.  Also here is Andrew
15   Guerra of Oppenheim & Zebrak.
16           THE VIDEOGRAPHER:  Will the court
17   reporter please swear in the witness.
18                   (Witness sworn at 9:08 a.m.)
19           THE VIDEOGRAPHER:  Please proceed.
20
21
22
23
24
25

1  number was 4,008 -- 4,018.  And the updated number

2  is 4,023 compositions.

3      Q.    Anything else, Mr. Buchan?

4      A.    That is all.

5      Q.    How did you discover or learn of that

6  error -- or those errors?

7      A.    I and my team were reviewing some of the

8  exhibits and workpapers to the rebuttal report in

9  preparation for my deposition, and I had noted what

10  appeared to be a discrepancy in one of the

11  workpapers.  And we took at look at that and

12  realized that we were ignoring, like I said, the MD4

13  and the SHA-1 Base32 hashes in identifying

14  Works-in-Suit.

15      Q.    And, Mr. Buchan, the paragraph you just

16  provided corrections for cited to -- or cites to

17  Rebuttal Exhibits 4A through 4B and Rebuttal

18  Exhibit 9.

19              Were there any corrections made or

20  required in those exhibits as well?

21      A.    Correct.  That's how the numbers change

22  is the associated workpapers -- and there are

23  workpapers that feed into Exhibits 4A and 4B that

24  would -- that's where the change comes from.

25      Q.    Do you have a corrected version of

1   Rebuttal Exhibit 4A and 4B and Rebuttal Exhibit 9 as

2   well?

3          A.    I don't believe those have been prepared.

4   I don't have those with me today.

5          Q.    I'm going to start with some basics,

6   Mr. Buchan.

7                You understand that this is a case

8   relating to copyright infringement, correct?

9          A.    Correct.

10         Q.    Were you provided a legal understanding

11  of what constitutes copyright infringement in

12  connection with your work on this matter?

13               MR. MILLER:  Objection.

14  BY THE WITNESS:

15         A.    I don't know if I was provided with a

16  legal understanding.  I'm not a lawyer.

17         Q.    Are you offering an opinion that Charter

18  subscribers have infringed any copyrights?

19         A.    No, I'm not.

20         Q.    So, you answered that no, you are not,

21  but, Mr. Buchan, you do refer to some Charter

22  subscribers as, for instance, repeat infringers,

23  correct?

24         A.    I do define the term repeat infringers in

25  the work that I do.

Page 13

1    Q.    But when you use the term "repeat
2    infringers," you are not accusing the Charter
3    subscribers you characterize as repeat infringers of
4    copyright infringement?
5              MR. MILLER:   Objection.
6    BY THE WITNESS:
7    A.    I'm not accusing anybody of infringement,
8    no.
9    Q.    So, you mentioned you did define the term
10   repeat infringers.   Can you point me to where you do
11   that?
12   A.    Sure.
13             THE VIDEOGRAPHER:   When you get a chance,
14   can you angle your camera down a hair.   We're losing
15   you at the bottom of the frame.
16   BY THE WITNESS:
17   A.    So in my first report, if you go the
18   Page 16, there's a bullet at the bottom of Page 16
19   that is titled Repeat Infringers.   And I can read
20   that definition if you'd like.
21   Q.    I'm with you.   That's not necessary.
22   Thank you, Mr. Buchan.
23             So you are -- you aren't opining that
24   Charter subscribers committed any particular act of
25   copyright infringement, correct?

1      MR. MILLER:  Objection.

2   BY THE WITNESS:

3      A.    Correct.

4      Q.    Your definition of repeat infringer is

5   not someone that has repeatedly infringed a

6   copyright, correct?

7      MR. MILLER:  Objection.

8   BY THE WITNESS:

9      A.    Well, I wouldn't know.  That's ultimately

10  up to the trier of fact to determine.

11     Q.    Let me ask you then, are you accusing

12  Charter subscribers of repeatedly infringing a

13  copyright?

14     MR. MILLER:  Objection.

15  BY THE WITNESS:

16     A.    No.

17     Q.    Do you have an understanding of what the

18  Charter subscribers did that plaintiffs claim

19  constitutes copyright infringement?

20     MR. MILLER:  Objection.

21  BY THE WITNESS:

22     A.    I have a general understanding as a data

23  scientist and statistician.

24     Q.    What is that understanding?

25     A.    I can go through -- I outline the

Page 15

1    allegations in the complaint.  Those are what I

2    understand to be alleged.

3         Q.    And were you referring to the discussion

4    at, at least, Paragraphs 31 through 37 of your

5    opening report?

6         A.    Part of it is certainly discussed there,

7    yes.

8         Q.    Do you have an understanding of whether

9    MarkMonitor detected copyright infringement before

10   sending a notice to Charter of infringement?

11             MR. MILLER:  Objection.

12   BY THE WITNESS:

13        A.    I have no opinion on that.

14        Q.    Are you familiar with what it means for

15   MarkMonitor to handshake with a Charter subscriber?

16             MR. MILLER:  Objection.

17   BY THE WITNESS:

18        A.    I have certainly seen reference to a

19   handshake.  I know it from a laymen's term.  But I'm

20   not an expert on crypto or handshakes and that sort

21   of thing.

22        Q.    Do you know whether MarkMonitor

23   downloaded any content from a Charter subscriber

24   before sending an infringement notice directed

25   towards that subscriber?

1            MR. MILLER:  Objection.

2     BY THE WITNESS:

3          A.    I have no opinion on that.

4          Q.    Paragraph 33 of Exhibit 1 includes a

5     reference to alleged infringing activity of

6     Charter's customers for which Charter is allegedly

7     secondarily liable.

8                Do you see that?

9          A.    I do.

10          Q.    Do you have an understanding of how

11     legally Charter could be liable for its subscribers'

12     infringement?

13            MR. MILLER:  Objection, calls for a legal

14     conclusion.

15     BY THE WITNESS:

16          A.    I have a -- the only understanding I have

17     is as a data scientist and statistician economist,

18     not as a lawyer.

19          Q.    What is your understanding as a data

20     scientist and statistician?

21          A.    Essentially what's alleged in the

22     complaint so -- I guess, maybe -- repeat the

23     question.  I'm not sure I understand what you are

24     asking.

25          Q.    I think you answered the question.  Thank

Page 104

1    BY THE WITNESS:

2        A.    I have no opinion on what is one act of

3    infringement.  That's up to the trier of fact to

4    determine.

5        Q.    You don't know whether MarkMonitor

6    observes a Charter subscriber creating a copy of a

7    Work-in-Suit before sending a notice, correct?

8            MR. MILLER:  Objection.

9    BY THE WITNESS:

10       A.    I don't recall sitting here today whether

11   or not MarkMonitor is preserving copies being made

12   or what that even means, so I don't have an opinion

13   on that right now.

14       Q.    Turn Paragraph 6 of your rebuttal report.

15       A.    Okay.

16       Q.    Paragraph 6 repeats a number of

17   statements of Dr. Snow, and then in your Paragraph 7

18   you state, "Dr. Snow offers no basis or explantation

19   as to the relevance for his analysis of focusing on

20   the actions of the majority of Charter subscribers."

21              Do you see that?

22       A.    I do.

23       Q.    Is it your opinion that the actions of a

24   majority of Charter subscribers is irrelevant?

25            MR. MILLER:  Objection.

1    BY THE WITNESS:

2        A.    I don't have an opinion on that one way

3    or the other.  I was just responding to Dr. Snow's

4    apparent focus on what the majority of a group of

5    individuals do, instead of repeat infringers.

6        Q.    Paragraphs 8, 9, 10, 11 of your rebuttal

7    report all contain statements about infringements by

8    subscribers.

9              Is it the case that I should view all

10   your statements of infringement by Charter

11   subscribers as referring to alleged infringements?

12             MR. MILLER:  Objection.

13   BY THE WITNESS:

14       A.    Yes.  Clearly -- sorry.

15             Yes.  Clearly I'm not rendering an

16   opinion as to what constitutes infringement.  That's

17   ultimately up to the trier of fact.

18       Q.    The infringement here is being alleged

19   through the MarkMonitor RIAA notice, correct?

20             MR. MILLER:  Objection.

21   BY THE WITNESS:

22       A.    Certainly one way that Charter was

23   notified of the alleged infringement.  I don't think

24   it's exclusive.

25       Q.    Are you aware of other ways that Charter

Page 106

1  was notified of alleged infringement of the

2  Works-in-Suit, let's say, prior to filing of this

3  complaint?

4            MR. MILLER:  Objection.

5  BY THE WITNESS:

6       A.    I don't really have an opinion on that.

7  I don't recall as I sit here today, but I don't have

8  an opinion on the breadth or scope of the

9  notifications that RIAA and MarkMonitor provided to

10 various ISPs.

11      Q.    Turn to Paragraph 15 of your rebuttal

12 report.

13      A.    Okay.

■    ■    ██████████████████████

■    ██████████████████████████████████

■    ██████████████████████████████████

■    ███████████████████████████████

■    ████████████

19            Sorry.  That was not the last but the

20 second-to-last sentence.

21            Do you see that sentence regardless?

22      A.    I do.

23      Q.    Did you use the date of the alleged

24 infringement or the date of the notice itself to

25 determine whether, as you say here, the dates are

```
                                                Page 146
 1    opinions.  So I did not independently check the

 2    accuracy of Audible Magic's logs.

 3         Q.    Mr. Buchan, anything you want to change

 4    or correct about your testimony today?

 5         A.    Not that I can think of.

 6               MR. HAMSTRA:  I have no further

 7    questions.

 8                    Mr. Miller?

 9               MR. MILLER:  No questions from

10    plaintiffs.

11               THE VIDEOGRAPHER:  We are off the record

12    at 3:00 p.m. and this concludes today's testimony

13    given by Kristofer Buchan.

14                    The total number of media units used

15    was 8 and will be retained by Veritext.

16                    (Off the record at 3:00 p.m. CST)

17

18

19

20

21

22

23

24

25
```

Page 147

1           REPORTER CERTIFICATION

2

3

4           I, JO ANN LOSOYA, a Certified Shorthand

5     Reporter of the State of Illinois, do hereby certify

6     that I reported in shorthand the proceedings had at

7     the deposition aforesaid, and that the foregoing is

8     a true, complete and correct transcript of the

9     proceedings of said deposition as appears from my

10    stenographic notes so taken and transcribed under my

11    personal direction.

12           IN WITNESS WHEREOF, I do hereunto set my

13    hand at Chicago, Illinois, this October 19, 2021.

14

15

16

      JO ANN LOSOYA, CSR, RPR, CRR

17    C.S.R. No. 084-002437

18

19

20

21

22

23

24

25