# Exhibit VIII

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 1:19-cv-00874-RBJ-MEH <br><br> *DAUBERT* HEARING REQUESTED |

### CHARTER'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF HAROLD FURCHTGOTT-ROTH

**D.C.COLO.LCivR 7.1(a) Certification**: Charter Communications, Inc. ("Charter") certifies that it conferred with Plaintiffs in a good-faith attempt to resolve the disputes raised herein, including via telephone between counsel on November 10, 2021, but the parties did not reach agreement.

\*

Charter respectfully requests that the Court exclude certain opinions and testimony of Plaintiffs' putative damages expert Harold Furchtgott-Roth pursuant to Federal Rules of Evidence ("FRE") 401-403, 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Plaintiffs intend for Dr. Furchtgott-Roth to testify at trial in support of their astronomical $1.6+ billion statutory damages demand, primarily by providing opinions on: (1) the purported "harms" that Plaintiffs experienced "as a consequence of the alleged infringement of Plaintiffs' copyrighted works" through Charter subscribers' use of peer-to-peer ("P2P") file-sharing distribution services; and (2) Charter's supposed "economic and financial incentives to retain infringing subscribers."

Dr. Furchtgott-Roth's testimony should be excluded for multiple reasons. *First*, Dr. Furchtgott-Roth concedes he lacks any expertise in the music industry, P2P file-sharing, consumer

1

use of P2P file-sharing, or the effect of P2P file-sharing on the music industry and thus lacks the requisite expertise to opine on the alleged "harms" Plaintiffs "experienced as a consequence" of Charter subscribers' use of P2P. *Second*, Dr. Furchtgott-Roth's opinions about Charter's "revenues and profits" are irrelevant and untethered to the actual facts of this case, as he inflates his calculations by incorporating works that Plaintiffs do not assert or even own. *Third*, his opinions about Charter's purported "incentives" to retain allegedly "infringing" subscribers should be excluded as speculative testimony regarding Charter's state of mind. *Fourth*, his opinions about Charter's advertising should be excluded because he does nothing more than read the ads and (again) improperly speculate about Charter's marketing motivations. *Finally*, Dr. Furchtgott-Roth should not be permitted to opine on legal issues, such as the question of whether Charter's subscribers committed "piracy," as such opinions are prejudicial legal conclusions.

## FACTUAL BACKGROUND

Dr. Furchtgott-Roth is the president of an economics consulting firm and a former commissioner of the Federal Communications Commission. *See* Ex. A (5/27 Rep.) ¶¶ 1-2.[1] While he has written on topics generally related to economics and regulation, he concedes that he has no expertise in the music industry in a business or production capacity, and no knowledge about P2P file-sharing technologies, the impact of P2P on the music industry, or consumer use of P2P for music distribution. Ex. E (Tr.) 21:17-23:10, 27:3-28:15, 92:24-93:7. Prior to this lawsuit, he had never offered an opinion, conducted an analysis, or published an article about the impact of P2P file-sharing on the music industry or any other industry. *Id.* 23:4-6, 27:3-28:15.

---

[1] Exhibits cited herein as "Ex." are attached to the Declaration of Todd Anten, filed herewith.

2

Dr. Furchtgott-Roth served four reports in this case: (1) an opening report dated May 27, 2021 (Ex. A ("5/27 Rep.")); (2) a rebuttal report dated June 28, 2021, responding to the reports of Charter's experts Dr. Aram Sinnreich and Dr. Sandeep Chatterjee (Ex. B ("6/28 Reb. Rep.")); (3) a supplemental report dated September 3, 2021 (Ex. C ("9/3 Supp. Rep.")); and (4) a sur-rebuttal report dated September 3, 2021, responding to the rebuttal report of Charter's damages expert George Strong (Ex. D ("9/3 Sur-Reb. Rep.")).  He was deposed on October 12, 2021.

Among his various opinions, Dr. Furchtgott-Roth offers opinions on the following: **(1)** the impact of "piracy" and P2P file distribution on Plaintiffs, the music industry, and the economy, Ex. A (5/27 Rep.) ¶¶ 18-24, 34-54; Ex. B (6/28 Reb. Rep.) ¶¶ 8-12, 23-37; **(2)** the extent to which "the music industry has adapted to changing technologies and cultural trends," Ex. B (6/28 Reb. Rep.) ¶¶ 13-22; **(3)** Charter's provision of internet services and the revenues and profits it earned from subscribers who allegedly "infringed" copyrights, Ex. A (5/27 Rep.) ¶¶ 25-33, 55-70, Ex. C (9/3 Supp. Rep.) ¶¶ 10-13; Ex. D (9/3 Sur-Reb. Rep.) ¶¶ 6-38; **(4)** Charter's purported "economic incentives to allow repeat infringement activity by its subscribers," Ex. A (5/27 Rep.) ¶¶ 72-88; Ex. C (9/3 Supp. Rep.) ¶¶ 14-15; Ex. D (9/3 Sur-Reb. Rep.) ¶¶ 42-43; and **(5)** Charter's advertising, Ex. A (5/27 Rep.) ¶ 71. For the reasons that follow, these opinions should be excluded in full.

## ARGUMENT

### I. DR. FURCHTGOTT-ROTH IS UNQUALIFIED TO OPINE ON THE MUSIC INDUSTRY AND ANY IMPACTS OF P2P USAGE, AND HIS METHODOLOGY LACKS FOUNDATION AND RIGOR

Dr. Furchtgott-Roth's reports are replete with opinions about the alleged impact of P2P usage on Plaintiffs, the music industry, and the general economy. *See, e.g.*, Ex. A (5/27 Rep.) ¶¶ 18-24, 34-54; 84-88; Ex. B (6/28 Reb. Rep.) ¶¶ 8-37.  But, by his own admission, Dr.

3

Furchtgott-Roth is unqualified to provide any opinions about the music industry, much less opinions about the purported impact that subscriber use of P2P on Charter's network may have had on Plaintiffs' businesses. Because this testimony is outside his professed expertise, it should be excluded.

As part of its gatekeeping function, the Court must assess whether an expert is qualified by "knowledge, skill, experience, training, or education to render an opinion." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (quotations omitted). "An expert who possesses knowledge as to a general field but lacks specific knowledge does not necessarily assist the jury." *Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 807 (10th Cir. 2016) (quotations omitted). The testimony must "fall within the reasonable confines of [the witness's] expertise." *Id.* (quotations omitted). If not, it is properly excluded. *See, e.g.*, *Conroy*, 707 F.3d at 1169 (affirming exclusion of testimony where expert never researched, wrote, or opined about the specific topic before); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (affirming exclusion of testimony by orthopedic surgeon who was not an expert in intramedullary nailing). Here, Dr. Furchtgott-Roth is not qualified to provide opinions on any of the following:

**The music industry:** Dr. Furchtgott-Roth concedes he has no expertise specific to the music industry. Ex. E 21:19-21 ("Q. You do not consider yourself an expert in the music industry, do you? A. No."). This is unsurprising, given that he has never been employed by a record label or music publisher, *id.* 21:25-22:2, has never taken a course concerning the music industry, *id.* 22:6-8, has never negotiated a music license or a music industry-related contract, *id.* 22:15-22, and has never before "offered opinions in cases involving the music industry," *id.* 23:4-6. Nor has Dr. Furchtgott-Roth ever conducted a survey on consumer purchasing behavior within the music

4

Case 1:19-cv-00874-RBJ-MEH Document 562 Filed 11/29/21 USDC Colorado Page 5 of 15
Case No. 1:19-cv-00874-RBJ-MEH Document 590-91 Filed 2/11/22 USDC Colorado Page 5 of 15
of 16

industry. *Id.* 27:6-10. And while Dr. Furchtgott-Roth claims to have published "several papers on the broader copyright industry" and "written thought pieces on copyright law," he admitted in deposition that he is "not sure" whether he ever wrote a paper about the music industry apart from its mere presence in the larger "copyright industry," and he acknowledged that his general publications on copyright were not specific to the music industry. *Id.* 23:11-25:9.

**P2P technology and its impacts:** Dr. Furchtgott-Roth also acknowledged in deposition that he is not an expert on P2P distribution technology. *Id.* 92:24-93:1 ("Q. You told us earlier you're not an expert on peer-to-peer technology, correct? A. That's correct."); *see also id.* 27:18-21. Prior to this lawsuit, he had never offered opinions about "the effects of piracy due to peer-to-peer file sharing," the "effect of peer-to-peer file-sharing on the music industry," or "peer-to-peer file sharing" in general. *Id.* 20:23-21:5, 23:7-10. He also has never prepared an "analysis of the impact of peer-to-peer file sharing on the music industry" or conducted "a survey on the impact of consumer use of peer-to-peer file sharing on the music industry." *Id.* 27:22-25, 28:4-7. Nor has he ever "conducted a survey on consumer purchasing behavior … of music." *Id.* 27:8-10. And he has never "participated in peer review of another individual's article about the impact of … peer-to-peer file sharing on the music industry." *Id.* 28:8-12. In fact, he confirmed he has never even "personally use[d] a peer-to-peer file sharing distribution service." *Id.* 28:13-15.

Despite this decided lack of expertise, Dr. Furchtgott-Roth devotes entire sections of his reports to opinions, analyses, and pronouncements about the music industry, the alleged impact of P2P file-sharing on the music industry, and the purportedly harmful impact that P2P file-sharing (and the acts of Charter subscribers using P2P) may have had on Plaintiffs' businesses and the economy on the whole. Examples include:

5

- How "the music industry is important" to the U.S. economy. Ex. A (5/27 Rep.) ¶¶ 18-20.

- The extent of the "[d]istribution of copyrighted materials by Charter subscribers" using P2P technologies. *Id.* ¶¶ 34-38.

- The "harms" that P2P "piracy" of music allegedly caused Plaintiffs and the economy, including supposed direct losses and reduced profitability. *Id.* ¶¶ 39-43.

- A review of "academic literature" that he claims supports the conclusion that P2P distribution has negatively impacted the music industry. *Id.* ¶¶ 39-40 & Ex. V.3; Ex. B (6/28 Reb. Rep.) ¶¶ 23-30; Ex. D (9/3 Sur-Reb. Rep.) ¶¶ 17, 33.

- The assertion that the number of alleged infringement notices Charter received "substantially understates the extent of piracy attributable to Charter customers" which he claims is "not possible" to quantify. Ex. A (5/27 Rep.) ¶ 44.

- How "piracy" is responsible for causing harm to Plaintiffs during the Claims Period, including purported "loss of control" over music distribution, the reduction of sales, disincentives to invest in recorded music, and expenses to combat piracy. *Id.* ¶¶ 45-54; Ex. D (9/3 Sur-Reb. Rep.) ¶¶ 6-19, 36-37.

- How "the music industry has adapted to changing technologies and cultural trends." Ex. B (6/28 Reb. Rep.) ¶¶ 13-22; *see also* Ex. D (9/3 Sur-Reb. Rep.) ¶ 18.

- The "prevalence of infringing P2P activity." Ex. B (6/28 Reb. Rep.) ¶¶ 31-37.

- How "frequent infringers" were "more likely" to drive revenue for Charter due to a preference for "faster download and upload speeds." Ex. A (5/27 Rep.) ¶¶ 84-88.

There can be no serious question that these are all opinions that require proper foundation and the appropriate expertise. By Dr. Furchtgott-Roth's own admission, he does not have either.

6

Rather than render opinions based on his own expertise, Dr. Furchtgott-Roth's reports repeat and spin findings from publicly available articles and materials selected for him by his team of researchers. But Dr. Furchtgott-Roth acknowledged at his deposition he had never read any of the articles before preparing his report and had never studied the effect of P2P on music sales before being retained by Plaintiffs. *See* Ex. E 230:2-21. To form his "expert" opinions, all he did was "read [the articles] closely." *Id.* 232:22-233:13. That is not enough.[2] *See Newton v. Roche Lab'ys, Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002) (excluding testimony where expert had "no relevant expertise … outside of that which he has gleaned from a scant literature review").

Dr. Furchtgott-Roth has similarly admitted that his opinions on P2P technology are premised exclusively on a review of articles selected for him for this case:

> Q. [Y]our opinions in this case about the use of peer-to-peer technology are not based on any expertise you bring to the case, right?
>
> A. They're not based on direct expertise but, you know, I can read things and, and make inferences based on them. …

Ex. E 93:2-7; *see also id.* 110:3-10 ("I may not be an expert but I can read."). Given Dr. Furchtgott-Roth's admitted lack of expertise, the Court should exclude any testimony about: (1) P2P technologies; (2) the purported effect of P2P on Plaintiffs, the music industry, and the general economy; and (3) how P2P is used and whether use of P2P by subscribers harmed Plaintiffs.

Courts have excluded such testimony in this exact situation where a damages expert sought to testify about the music industry without requisite expertise. *See Arista Recordings LLC v. Lime Grp. LLC*, 2011 WL 1674796 (S.D.N.Y. May 2, 2011). In *Arista,* a copyright case brought by

---

[2] In contrast, Charter's expert, Dr. Aram Sinnreich, has extensive academic and professional expertise in the music industry and specialized knowledge regarding use of P2P technologies for sharing music, and has authored a book on P2P file-sharing and its impact on the music industry.

7

music owners against a P2P distribution service, the defendants' damages expert sought to offer opinions that "declines in music industry sales and revenues were not caused by file sharing in general," or by the defendants' online file-sharing program. *Id.* at *9. Based on the expert's "lack of expertise in the music industry and technology spheres," as well as the fact that he appeared "to rely almost entirely on an uncritical review of others' views," much of his testimony was excluded. *Id.* at *10.[3] Similarly, in *Loussier v. Universal Music Group, Inc.*, 2005 WL 5644422 (S.D.N.Y June 28, 2005), where the plaintiffs' expert had no "relevant experience in the music industry," the expert's opinion about "apportionment of sales in the music industry" was excluded because the expert lacked knowledge of "sufficient pertinent facts relating to the production and sale of music." *Id.* at *3-4. The same result is appropriate here. *See also, e.g.*, *Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, at *8-10 (E.D. Tex. Apr. 10, 2017) (excluding testimony from economist providing damages opinions in false advertising case as unqualified to opine on PVC-coated conduit market and whether defendant caused harm to plaintiff).

Dr. Furchtgott-Roth's testimony about the impact of P2P should also be excluded because he failed to apply any level of scrutiny when reviewing materials, so his analysis does not meet

---

[3] In *Arista*, the defendant's damages expert was George Strong, Charter's damages expert in this case. Mr. Strong's damages opinions in this case that relate to the music industry are not subject to the same criticism because he relies on the expertise of Dr. Aram Sinnreich, another Charter expert, as foundation. *See, e.g.*, *United States v. Water Supply & Storage Co.*, 2008 WL 1930602, at *6 (D. Colo. May 1, 2008) (expert "properly may rely on information provided by another expert in developing his own opinions"). Mr. Strong did not do so blindly, but conferred with Dr. Sinnreich about the information supporting his opinions. In contrast, Dr. Furchtgott-Roth simply read and adopted hearsay statements in various articles. *Contra TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (excluding damages expert testimony that relied on sales projections provided by another expert, Mr. Werber, where the damages expert adopted the projections without "any familiarity with the methods or reasoning used by Mr. Werber" and "knew little or nothing at all about Werber").

8

the "level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). *See, e.g.*, *Mooring Cap. Fund, LLC v. Knight*, 388 F. App'x 814, 820-21 (10th Cir. 2010) (affirming exclusion of testimony that simply adopted and confirmed another expert's opinions without contributing own expertise). Here, all Dr. Furchtgott-Roth did was "read closely" articles he had never read before, from outside his field, that his team of researchers primarily pulled together and provided to him. Ex. E 230:2-233:13. That is not independent analysis or application of his own expertise.

Dr. Furchtgott-Roth's sur-rebuttal to the report of Charter's expert, George Strong, should be excluded for all the same reasons. For example, his opinions on the alleged harm of P2P use, subscriber incentives to use P2P, "lawful" availability of music, and the effects of P2P file-sharing in the "real world" are all far outside his expertise. Ex. D (9/3 Sur-Reb. Rep.) ¶¶ 2-39, 42-44.

## II. DR. FURCHTGOTT-ROTH SHOULD NOT BE PERMITTED TO OPINE ON CHARTER'S REVENUES OR PROFITS

Dr. Furchtgott-Roth seeks to testify about Charter's "revenues and profits" from its Internet subscribers, but his opinions are not reasonably tied to the alleged infringing activity in this case and thus lack the requisite "fit" for expert testimony. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1179 (D. Colo. 2018) ("[r]elevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case") (quotations omitted).

Dr. Furchtgott-Roth's opinions about the growth of Charter's overall revenues during the Claims Period, and the estimated "average lifetime value" of Charter residential or commercial subscribers for Internet services, should be excluded because they have no relevance to the facts the jury must consider under the appropriate framework for statutory damages. Ex. A (5/27 Rep.) ¶¶ 55-66. Specifically, none of his calculations is tied to P2P file-sharing of the works-in-suit, or

9

even the more general categories of P2P file-sharing, P2P file-sharing of music, or P2P file-sharing of Plaintiffs' music. *See Harrington v. Aerogelic Ballooning, LLC*, 2019 WL 5095683, at *2 (D. Colo. Aug. 8, 2019) (noting that a statutory damage analysis must consider "the profits reaped by the defendants in connection with the infringement"). Providing generic calculations of the "average lifetime value" of a Charter subscriber has no connection to the profits or revenues that Charter supposedly accrued as a result of the alleged infringement by a subscriber using P2P to distribute music, to the extent such infringement can be proven. *Cf. Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (as amended) ("a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement").

Additionally, the Court should exclude Dr. Furchtgott-Roth's opinions on Charter's revenue earned from subscribers who supposedly "infring[ed] Plaintiffs' copyrights." Ex. A (5/27 Rep.) ¶¶ 67-70. Not only do such calculations offer nothing for the jury's assessment of statutory damages because such high-level revenue is untethered to the specific allegedly infringing acts, but they turn on Dr. Furchtgott-Roth's assumption that such subscribers actually did "infringe Plaintiffs' copyright"—something outside the scope of his expertise. Ex. E 39:4-18; 40:18-22.

Dr. Furchtgott-Roth's opinions about revenue earned from "repeat infringers" should also be excluded for the additional reason that he has no foundation to opine on a subscriber receiving "at least three infringement notices" from Plaintiffs during the Claims Period. Ex. A (5/27 Rep.) ¶¶ 68-70. He provides no reason for this calculation other than that it was done "[a]t the request of counsel." *Id.* ¶ 69. Such opinions are unfairly prejudicial to Charter and should be excluded

10

under FRE 403 because they will mislead the jury into believing that receipt of "three notices" equates to liability. This too is a contested legal issue outside of Dr. Furchtgott-Roth's expertise.

At a bare minimum, Dr. Furchtgott-Roth should be precluded from opining on the revenue Charter earned ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. A (5/27 Rep.) ¶ 70. By his own admission, this particular calculation represents revenues he claims Charter earned from subscribers who received notices from *any* rightsholder, for any work, and not just notices associated with Plaintiffs and the works-in-suit. Indeed, Dr. Furchtgott-Roth has conceded that notices from other rightsholders should have no bearing on his opinions of Charter's revenues earned. Ex. E 125:18-21 (agreeing that "notices sent by other copyright holders don't go into [his] calculation of actual gain by Charter"). It would be highly prejudicial and misleading for the jury to be presented with opinions about revenues earned from subscribers who have never even been accused of infringing any of Plaintiffs' works-in-suit.

### III. DR. FURCHTGOTT-ROTH SHOULD NOT BE PERMITTED TO OPINE ON CHARTER'S "ECONOMIC INCENTIVES"

Dr. Furchtgott-Roth's opinions on Charter's purported "economic incentives" should be excluded as speculative, unreliable, unsupported, and artificially inflated. Dr. Furchtgott-Roth speculates that "Charter had at least two economic incentives to allow repeat infringement by its subscribers, as enforcing its own Acceptable Use Policy and discouraging copyright infringement on its network would have accomplished the following: (1) reduced its revenues and profits; and (2) increased Charter's costs." Ex. A (5/27 Rep.) ¶ 72; *see also id.* ¶¶ 72-88; Ex. C (9/3 Supp. Rep.) ¶¶ 14-15. According to Dr. Furchtgott-Roth, these "economic incentives discouraged Charter from taking action that might interfere with the activities of infringing customers." Ex. A

11

(5/27 Rep.) ¶ 17(e). Such opinions are premised on nothing more than Dr. Furchtgott-Roth's irrelevant speculation into Charter's mental state and motivations.

Dr. Furchtgott-Roth did not conduct any analysis of Charter's operations that would enable him to opine on Charter's "incentives" to supposedly allow infringement on its network, nor does he have any factual basis to offer opinions about Charter's state of mind. What "incentivized" or "motivated" Charter to undertake or abstain from a specific act is the type of speculative opinion that courts frequently exclude. *See, e.g.*, *McGill v. Corr. Healthcare Cos.*, 2014 WL 6513185, at *5 (D. Colo. Nov. 20, 2014) ("[A]n opinion on an individual's state of mind (intent) … is inappropriate for expert opinion testimony.") (Jackson, J.). For example, in a similar case brought by other members of the music industry against Cox Communications, Inc. ("Cox"), the plaintiffs' damages expert was precluded from opining on Cox's alleged economic "incentives" to permit infringement on its network. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF 691 at 1 (E.D. Va. Nov. 25, 2015). This Court should reach the same conclusion.

Additionally, Dr. Furchtgott-Roth's opinions on Charter's "economic incentives" should be excluded because they are irrelevant to any material inquiry before the jury, as they do not have any bearing on an assessment of Plaintiffs' claims or an award of statutory damages. *See TBL Collectibles*, 285 F. Supp. at 1179. Moreover, his calculations are irrelevant because they are based on Charter's supposed "financial incentive to retain … repeat infringing subscribers (based on *all rights holders' notices*)," and therefore incorporate subscribers *never* accused of infringing Plaintiffs' works. Ex. A (5/27 Rep.) ¶ 17(e) (emphasis added); *see also id.* ¶ 78 (estimating "Charter's economic incentives to retain" subscribers who received three or more notices from *any rightsholder* during the claims period); Ex. C (9/3 Supp. Rep.) ¶¶ 5(b), 15 (similar); Ex. E 260:19-

12

24 (admitting he did not "estimat[e] the economic incentive to Charter" for "subscribers accused only of being repeat infringers with respect to [P]laintiffs' copyrighted works"). Because his calculations are for all rightsholders, such opinions are inflated and violate the tenet that "[e]xpert testimony must 'fit' the case." *Hobdy v. Wells Fargo Bank, Nat'l Ass'n*, 2019 WL 132137, at *2-3 (D. Colo. Jan. 8, 2019) (striking opinion not "tie[d] to the facts of the case"). Dr. Furchtgott-Roth should therefore be precluded from opining on Charter's "economic incentives" to retain "repeat infringing subscribers" or offering calculations that such "economic incentives" are ▮. Ex. C (9/3 Supp. Rep.) ¶ 15; Ex. A (5/27 Rep.) ¶ 78.

## IV. DR. FURCHTGOTT-ROTH SHOULD NOT BE PERMITTED TO OPINE ON CHARTER'S ADVERTISING

Dr. Furchtgott-Roth's opinions that "Charter advertising emphasized features valuable to infringing subscribers" should be excluded. Ex. A (5/27 Rep.) ¶ 71. Dr. Furchtgott-Roth does nothing more than convey what the ads say—something any juror can easily determine on their own. *See Pritchett v. I-Flow Corp.*, 2012 WL 1059948, *7 (D. Colo. Mar. 28, 2012) (excluding testimony where expert sought "to summarize documents that the jury could just as easily summarize itself"). And Dr. Furchtgott-Roth admitted in deposition he is "not offering any opinion in this case as an expert in advertising," so he has no expertise for opining on Charter's advertising or its effects. Ex. E 29:1-3. Dr. Furchtgott-Roth further admitted he looked at "just a handful" of ads—"probably about five"—and does not know where, when, or how frequently those ads were distributed; thus he has no foundation to draw any conclusions about their effects. *Id.* 235:21-237:5. His ultimate conclusion that such ads "indicate that Charter viewed its Internet performance and the ability to rapidly download music as an attractive feature for consumers," Ex. A (5/27 Rep.) ¶ 71, is an improper opinion about Charter's motivations and state of mind.

13

## V. DR. FURCHTGOTT-ROTH SHOULD NOT BE PERMITTED TO OPINE ON LEGAL ISSUES OR IRRELEVANT AND PREJUDICIAL MATTERS

Finally, to the extent the Court determines that Dr. Furchtgott-Roth should be permitted to offer some limited testimony within the scope of his expertise, the Court should not allow him to offer legal conclusions, unsubstantiated opinions, or prejudicial advocacy.

For example, Dr. Furchtgott-Roth admitted in deposition that he is "not offering any opinions about whether there has or has not been any copyright infringement in this case." Ex. E 42:5-8. This concession includes an acknowledgment that he is not specifically opining on (1) "whether Charter did or did not commit copyright infringement," (2) whether Charter's subscribers "did or did not commit copyright infringement," or (3) whether Charter was aware of specific subscribers engaging in copyright infringement on its network (to the extent it occurred). *Id.* 39:4-40:22. Nonetheless, throughout his reports, he repeatedly asserts that Charter subscribers committed "piracy" that "harmed" Plaintiffs. Ex. A (5/27 Rep.) ¶¶ 34-54. For example, he states that "Charter subscribers" engaged in "widespread" distribution of "copyrighted materials," *id.* ¶ 36, that notices sent to Charter "understate[] the extent of piracy attributable to Charter customers," *id.* ¶ 44, and that "piracy committed by Charter subscribers from 2013-2016 harmed Plaintiffs," *id.* ¶¶ 45-54. Such opinions are outside the scope of his expertise, are prejudicial to Charter, and invade the province of the jury, as they are factual determinations the jury will be asked to resolve. For the same reasons, Dr. Furchtgott-Roth should be precluded from using the term "piracy" to describe any behavior or conduct relating to Plaintiffs' works.

The Court should also preclude Dr. Furchtgott-Roth from opining that "peer-to-peer networks" are harmful to Plaintiffs. Ex. A (5/27 Rep.) ¶¶ 39-43. In addition to his concession that he is not qualified to provide such opinions, Ex. E 92:24-93:1; 27:22-25, vague opinions about the

14

general "harm" that P2P usage could cause, when not tethered to the actual facts of this case, are irrelevant and do not present a valid "fit" to support an expert's opinions.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Charter respectfully requests that the Court grant its motion to exclude certain opinions and testimony of Harold Furchtgott-Roth and grant Charter such other and further relief as the Court deems just and proper.

Dated: November 15, 2021

Respectfully submitted,

*/s/ Todd Anten*

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Andrew H. Schapiro
Nathan Hamstra
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*

15