# Exhibit X

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| |
|---|
| WARNER RECORDS INC., *et al*., <br><br> *Plaintiffs*, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> *Defendant*. |

Case No. 19-cv-00874-RBJ-MEH

***DAUBERT* HEARING REQUESTED**

### CHARTER'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF TERRENCE P. MCGARTY

**D.C.COLO.LCivR 7.1(a) Certification**: Charter Communications, Inc. ("Charter") certifies that it conferred with Plaintiffs in a good-faith attempt to resolve the disputes raised herein, including via telephone between counsel on November 10, 2021, but the parties did not reach agreement.

\*

Charter respectfully requests that the Court exclude the opinions and testimony of Plaintiffs' putative expert Terrence P. McGarty pursuant to Federal Rules of Evidence ("FRE") 401-403, 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Dr. McGarty is one of more than a dozen "expert" witnesses retained by Plaintiffs to serve as an advocate in furtherance of Plaintiffs' narratives at trial. The opinions he seeks to offer about Charter's ability to know what its subscribers were doing online and the reasonableness of Charter's policies and procedures related to copyright infringement are not premised on any true expertise, but instead are attorney-manufactured arguments about core issues in the case, based on an unreliable and inaccurate compilation of purported "facts." By his own admission, Dr. McGarty is unqualified to opine about Deep Packet Inspection technology and its use in detecting peer-to-

1

peer activity on an ISP's network. Dr. McGarty also lacks the requisite expertise to opine on an ISP's copyright program, and his opinions—which improperly attempt to usurp the jury's role in determining a key contested legal issue in this case—are not based on any reliable methodology. Finally, the purported "factual" narratives in his reports regarding Charter's policies, procedures, and technical capabilities should be excluded because they mischaracterize the record and are not reasonably tethered to an admissible expert opinion.

## BACKGROUND

Dr. McGarty is a professional testifying witness and former academic. He has not held a formal teaching position since 1998. *See* Ex. A (Opening Report), Attach. 1 at 7.[1] He has not published any research books or academic articles on any subject since 2008. *Id.* at 8, 13. And he has not worked in management or operations for an ISP since 2008. *Id.* at 1. His current employment is limited to a small role in winding down the operations of his now-defunct "investment and management company" and providing expert testimony in approximately a dozen cases, including several on behalf of Plaintiffs in similar cases against other ISPs. Ex. C (Tr.) 6:22-8:19, 37:8-19. He has spent the past twelve years self-publishing "white papers" on matters related to cancer and genomics. *Id.* at 34:19-35:1. Dr. McGarty is admittedly not an expert in DPI technology, the peer-to-peer file sharing protocols at issue in this case, or the DMCA. *Id.* at 191:9-12 ("In term of being a broad-based expert on DPI technology, that's not what I do."), 220:12 ("I'm not an expert in the DMCA."), 313:8 ("I'm not an expert in BitTorrent."), 315:21-316:3 ("Any of the [file sharing protocols] associated with this [case] I'm not an expert on at all.").

---

[1] Exhibits cited herein as "Ex." are attached to the Declaration of Grace E. Chang, filed herewith.

2

Dr. McGarty authored two reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). He submitted his opening report on May 27, 2021. *See* Ex. A. On September 3, 2021, Dr. McGarty issued a supplemental report. *See* Ex. B. Dr. McGarty offers opinions on the following general subjects that this motion addresses: (1) Charter's provision of high speed internet, and the extent to which it facilitates access to peer-to-peer networks; (2) Charter's awareness of peer-to-peer traffic on its network and its ability to inspect its subscribers' traffic to determine its subscribers' peer-to-peer usage; (3) Charter's policies and procedures for addressing allegations of copyright infringement on its network; and (4) the consequences Charter imposed in response to allegations of copyright infringement and in response to Acceptable Use Policy ("AUP") violations on its network. He was deposed on October 6, 2021.

For the reasons that follow, Dr. McGarty's opinions should be excluded in full.

## ARGUMENT

### I. DR. MCGARTY SHOULD NOT BE PERMITTED TO OPINE ON THE USE OF DEEP PACKET INSPECTION TECHNOLOGY

Dr. McGarty's opening and supplemental reports provide extensive background information regarding Deep Packet Inspection technology ("DPI") functionality and how ISPs could theoretically use DPI to determine whether their users were engaging in peer-to-peer use correlated with copyright infringement. *See* Ex. A ¶¶ 35-39, Ex. B ¶¶ 4-9. In doing so, Dr. McGarty ultimately opines that Charter "had the ability to determine whether a given subscriber was using peer-to-peer applications with the capability of copyright infringement." Ex. A ¶ 39; Ex. B ¶ 4. This proposed testimony should be disallowed because Dr. McGarty is not qualified to testify regarding DPI, has no expertise in the peer-to-peer protocols at issue in this case, and

Case No. 1:19-cv-00874-RBJ-MEH Document 554 Filed 11/15/21 USDC Colorado Page 3 of 16

3

because his explanation of how Charter did utilize (or could have utilized) DPI to monitor its subscribers is based on an unreliable mischaracterization of the record.

### A. Dr. McGarty Does Not Have Expertise In DPI Or Peer-To-Peer Technologies

Dr. McGarty is not qualified to opine about DPI, or its use to identify peer-to-peer activity on an ISP's network. As part of its "gatekeeping function with respect to the admissibility of expert opinions," a court must first "determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (quotations omitted). If a court determines that the expert is unqualified to render an opinion, a court may properly exclude the expert's testimony in its entirety. *See, e.g.*, *id.* at 1169 (affirming district court's exclusion of expert testimony at the first step because she was "unqualified").

Dr. McGarty's proposed testimony contains a general discussion of how DPI functions and how ISPs may implement it to learn more about subscriber peer-to-peer use. *See* Ex. A ¶¶ 35-36; Ex. B ¶ 4. But, by his own admission, Dr. McGarty is not an expert on DPI. Ex. C 191:11-12 ("[I]n terms of being a broad-based expert on DPI technology, that's not what I do."). Likewise, despite detailing DPI-provider Sandvine's functionalities and ███████████████████████████████████████████████████, Dr. McGarty admitted that he was "not opining as an expert on the operational functions of Sandvine," *id.* at 191:7-8, and that he had no knowledge regarding ███████████████████████████████████████████████████, *id.* at 144:6-10. Moreover, even though he suggests in his report that he has "considerable experience with" and has "written on and developed peer-to-peer technologies and applications," Ex. A ¶ 8, Dr. McGarty admitted that he was not an expert in the

4

type of peer-to-peer protocols at issue in this case, Ex. C 315:21-316:3 ("Any of the [peer-to-peer file-sharing protocols] associated with this [case] I'm not an expert on at all.").

Dr. McGarty does not have any education or experience relating to implementation of DPI across a network like Charter's. Dr. McGarty's only experience with implementing DPI is limited to his experience with "early versions of DPI" deployed on a European network from 2001 to 2004, over a decade before the beginning of the Claims Period in this case. *See id.* at 27:24-28:16, 143:12-144:25. Dr. McGarty has no other firsthand knowledge, education, or scholarship regarding DPI, and made no effort to understand how it operated on Charter's network. *See id.* at 146:20-24; *see also* Ex. A, Attach. 1. In cases such as this, where the expert has explicitly admitted that he is not an expert on the specific subject matter encompassed by his opinions, a court may properly preclude the expert from testifying at trial. *See, e.g.*, *Ralston v. Smith & Nephew Richards, Inc.*, 275 F. 3d 965, 969 (10th Cir. 2001) (affirming exclusion of expert because, in part, "[t]hroughout her deposition testimony, [the expert] conceded several times that she knew little … about the subject.").

### B. Dr. McGarty Materially Misrepresents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Despite admitting that he is not an expert on DPI or peer-to-peer applications, Dr. McGarty opines that Charter "had the ability to determine whether a given subscriber was using peer-to-peer applications with the capability of copyright infringement." Ex. A ¶ 39; *see also* Ex. B ¶ 4. While Dr. McGarty also repeatedly testified that he was not providing any expert testimony on Charter's actual capabilities, Ex. C 144:6-10, or even what Charter "should have done" with this information had it been available, *id.* at 46:21-24, his supplemental report contains unsupportable opinions such as that Charter "could have utilized DPI technology as a corroborative tool to

5

monitor the infringing subscriber's traffic for continued use of peer-to-peer applications" to the extent it "was concerned about the accuracy of DMCA notices," Ex. B ¶ 7; *see also* Ex. A ¶ 39. In addition to Dr. McGarty's lack of qualifications on the subject, this opinion is also contradicted by his deposition testimony, based on a mischaracterization of the record, and should be excluded as unreliable. *See Conroy* 707 F.3d at 1168 (affirming exclusion of expert under the reliability step of *Daubert* analysis because opinions were based on a "not entirely accurate" set of facts).

Dr. McGarty admits he could not testify whether any specific DPI solution would actually work on Charter's network. Ex. C 144:6-10 ("How Charter would themselves implement such a thing in their network would require a level of detail that I had not gotten into, nor was I asked to do as part of this opinion."); *see also id.* 146:4-24. In fact, during his deposition, Dr. McGarty admitted—in direct contradiction of his proffered opinion—that Charter ███████████ ███████████████████████████████████████████." *Id.* at 150:18-20 (emphasis added). Dr. McGarty further acknowledged at his deposition that: (1) ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

6

██████████████, *id.* at 139:17-23, 142:6-20.² Yet, he opines in his reports that "████████

████████████████████████████████████████████████████████████████████████████

█" and that Charter "had the ability to determine whether a given subscriber was using peer-to-peer applications with the capability of copyright infringement." Ex. B ¶ 4; *see also* Ex. A ¶ 39. The "analytical gap" between Dr. McGarty's premises and his final conclusions is illogical and far too wide for his opinion to be considered reliable. *See Pertile v. Gen. Motors, LLC*, 2017 WL 4099895, at *4-5 (D. Colo. Sept. 15, 2017) (excluding expert opinion when not supported by relied-upon facts, because "such an opinion would appear to be no more than an *ipse dixit* conclusion"); *see also* Fed. R. Evid. 702(b) (expert testimony must be "based on sufficient facts").

Moreover, to the extent Dr. McGarty purports to rely on deposition transcripts from Charter witnesses when assessing Charter's monitoring capabilities, *see, e.g.*, Ex. C 193:23-194:5, he mischaracterizes the evidence. For example, Dr. McGarty's opinion that it was ████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ that "[d]espite having a variety of

---

² This testimony should also be excluded under FRE 401 and 403 because any minimal probative value is substantially outweighed by the danger of misleading the jury.

7

technological options, Charter failed to implement tools, policies, and procedures to impose consequences on repeat infringers." Ex. B ¶ 9. An expert, however, cannot accept only some portions of the record because it "suit[s] his theory and ignore[ ] other portion of it that d[oes] not." *See Barber v. United Airlines, Inc.* 17 F. App'x 433, 437 (7th Cir. 2001). Such a "selective use of facts" and testimony is barred because it "fails to satisfy the scientific method and *Daubert* and it thus fails to assist the trier of fact." *Id.* (quotations omitted). Dr. McGarty should not be permitted to mislead the jury and prejudice Charter by presenting testimony that inaccurately implies that ███████████████████████████████████████████████████████████████.

## II. DR. MCGARTY'S OPINIONS ON "GENERALLY ACCEPTED BUSINESS POLICIES AND PROCEDURES" SHOULD BE EXCLUDED

In Subsection VII.D of his opening report, Dr. McGarty relies on his purported "experience" to opine on an "illustrative framework" for "complying with legal and regulatory requirements" and ultimately concludes that Charter's copyright program was insufficient because Charter did not terminate subscribers accused of repeat copyright infringement. Ex. A ¶ 47; Ex. C 259:22-25. Dr. McGarty's opinion should be excluded because he lacks the requisite expertise to opine on an ISP's copyright program and because his "opinion" is not based on any reliable methodology. More importantly, however, his opinion regarding the sufficiency of Charter's response efforts should be excluded as an improper legal argument that is no longer relevant given that Charter has withdrawn its Safe Harbor defense.

Dr. McGarty admits he has no experience or expertise implementing copyright policies and procedures. *See* Ex. C 26:14-18 ("Q: So is it fair to say that you don't have direct experience in implementing a DMCA policy for an ISP […]? A: Correct."). He has written no papers and has

8

conducted no research into copyright programs. *Id.* at 34:6-36:3. He admits he disregarded any information regarding the practices of other ISPs in forming his conclusions. *Id.* at 58:10-18.

Merely possessing *general qualifications* with respect to ISP management does not allow an expert to testify as to the *specific issue* of implementing a copyright program. *See Masters v. Safeco Ins. Co.*, 2021 WL 4317112, at *16 (D. Colo. Sept. 23, 2021) (anesthesiologist not qualified to opine on traumatic arthritis risk). Instead, the Court considers whether an expert's qualifications are adequate *"specific[ally]* to the matters he proposes to address." *Id.* (emphasis added). Dr. McGarty has not provided any evidence that he is qualified to testify as to implementation of a copyright program and cannot rely generally on his stale ISP-management credentials. *See, e.g.*, *Milne v. USA Cycling Inc.,* 575 F.3d 1120, 1133-34 (10th Cir. 2009) (expert's experience supervising paved road bike races did not qualify him as an expert in other races with differing "rules and practices"); *Brown v. Nat'l R.R. Passenger Corp.*, 2020 WL 8277569, at *2 (D. Colo. Nov. 12, 2020).

Dr. McGarty's opinions in Subsection VII.D of his opening report should also be excluded because they are not based on any reliable methodology. Dr. McGarty provides no academic support for his opinion, noting instead that his "framework" is based on his "prior experiences of developing business policies and procedures." *See* Ex. A ¶ 46. But Dr. McGarty provides no evidence that his "framework" has been tested, has been subjected to peer review or publication, or has been generally accepted, failing all of the *Daubert* factors. *See Daubert*, 509. U.S. at 593-94; *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134 (D. Colo. 2020) ("the 'methodology,' as it were, of solely relying on experience in an industry is not an acceptable method of opining").

9

Case No. 19-cv-00874-RBJ-MEH Document 554 Filed 11/15/21 USDC Colorado Page 10 of 115
Case 1:19-cv-00874-RBJ-MEH Document 590-11 Filed 11/29/21 USDC Colorado Page 11 of 16
of 16

Instead, Dr. McGarty's framework appears to be entirely fabricated for the purpose of shoehorning into his opinion Plaintiffs' anticipated arguments on an ultimate legal issue in this case. Because Dr. McGarty's opinion regarding the "reasonableness" of an ISP's response to copyright infringement was previously excluded in a case against another ISP, *see BMG Rights Mgmt. LLC v. Cox Commc'ns, Inc.*, Dkt. No. 691 (Order) ¶ 2, No. 1:14-CV-1611, (E.D. Va. Nov. 25, 2015), Dr. McGarty went to great lengths to *avoid* any implication that he was testifying regarding the reasonableness of any of Charter's actions, Ex. C 110:10-12 ("I'm not opining on reasonableness."),116:13-16, 114:10-13, 114:22-115:4, 109:15-18.

Dr. McGarty clearly understood it would be improper to opine on the "reasonableness" of Charter's actions. But this is precisely the type of inadmissible opinion Dr. McGarty is offering when he asserts that ███████████████████████████████████████████████████████████████████████████████████████. *Brown*, 2020 WL 8277569, at *2 (excluding testimony as to whether defendant complied with "best industry practices" as misleading when relevant inquiry was whether defendant acted with reasonable care).

Courts regularly exclude expert testimony such as this that opines on an ultimate legal issue because it "circumvents the jury's decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (en banc) (recognizing that "a number of federal circuits have held that an expert witness may not give an opinion on ultimate issues of law"); *see also Sanchez v. Duffy*, 416 F. Supp. 3d 1131, 1150 (D. Colo. 2018) ("testimony on ultimate questions of law is not favored") (quotations omitted). To allow Dr. McGarty to testify that ███████████████████████████████████ would invade the province of the jury and significantly prejudice Charter.

10

### III. DR. MCGARTY'S OPINION COMPARING CHARTER'S HANDLING OF OTHER ABUSE VIOLATIONS SHOULD BE EXCLUDED

In Section VIII of his opening report, Dr. McGarty opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. A ¶ 48. To support this opinion, Dr. McGarty explains that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3] In instances like these, when an expert offers conclusory, unsupported opinions, courts hold that the expert testimony is inadmissible as not "based on sufficient facts or data." *See* Fed. R. Evid. 702(b). For example, in *Hines v. Wyeth*, 2011 WL 2680842 (S.D. W. Va. July 8, 2011), the court held that although the expert was "more than qualified to testify" regarding compliance with the regulations at issue, the expert's opinion did not include any "grounds for her testimony." *Id.* at *5. The court concluded

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11

Case No. 1:19-cv-00874-RBJ-MEH Document 554-1 Filed 11/15/21 USDC Colorado Page 13 of 135
Case 1:19-cv-00874-RBJ-MEH Document 590-1 Filed 11/29/21 USDC Colorado Page 13 of 135
of 16

that such an unsupported opinion constituted a "mere personal opinion" and was thus inadmissible. *Id.* Similarly, because Dr. McGarty's conclusion is not supported by any evidence in the record and because he disregarded a key set of facts in his analysis, his opinion should be excluded. *See also Smith v. Ill. Dep't of Trans.*, 936 F. 3d 554, 558-59 (7th Cir. 2019) (excluding expert's opinion when she "omitted a substantial set of facts from her analysis").

## IV. DR. MCGARTY'S IMPROPER NARRATIVE SHOULD BE EXCLUDED

Dr. McGarty's reports consist primarily of factual narrative ostensibly included as support for opinions on issues that are *not in dispute* in this case. This improper narrative should be excluded because it does not stem from Dr. McGarty's expertise and is based on a biased, misleading, and selective presentation of evidence. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding narrative containing "simple inference drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case" because such material is "properly presented through percipient witnesses and documentary evidence"); *Brown*, 2020 WL 8277569, at *2.

While Dr. McGarty's report includes a lengthy and misleading[4] narrative regarding technology used on Charter's network and Charter's policies and procedures for addressing copyright on its network, Dr. McGarty's actual opinions are quite limited. Despite including statements and characterizations of documentary evidence overtly or implicitly critical of Charter

---

[4] Dr. McGarty's factual exposition should also be excluded because it relies on inaccurate "cherry-picking" and mischaracterizations of the evidence. For example, he admittedly relies on infringement statistics covering only four months of the more-than-three-year period at issue here. Ex. C 233:21-24, 234:6-17. He also repeatedly mischaracterizes and selectively quotes documents in his attempt to support Plaintiffs' theory of the case. *Id.* at 239:7-253:19; 263:23-271:6. Such a selective use of facts and testimony is barred because it "fails to satisfy the scientific method and *Daubert* and thus fails to 'assist the trier of fact.'" *Barber,* 17 F. App'x at 437.

12

throughout his report,[5] Dr. McGarty confirmed *repeatedly* that he is *not* opining on the reasonableness or sufficiency of *any* of Charter's specific policies or procedures for addressing allegations of copyright infringement directed at its subscribers. *See, e.g.,* Ex. C 116:13-16 ("Charter is the decider of how it deals with these notices. I don't have any opinion on the reasonableness or effectiveness of Charter's specific procedure[s]."); *id.* at 115:1-4 ("It's Charter's purview of what they want to do. I'm not making any reasonable opinion."). Dr. McGarty is also not opining on what Charter should have done differently. *See, e.g., id.* at 43:3-44:15, 45:15-46:24 ("I'm not opining on what Charter should be doing in this case."). And despite writing at length about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See id.* at 144:6-10. Accordingly, Dr. McGarty's factual exposition of these matters is not relevant to any opinion to be offered at trial.

With his admitted limitations, Dr. McGarty's reports and testimony are cabined to the few remaining factual assertions summarized here: (1) Charter provides high speed internet, which allows its subscribers access to the internet to engage in peer-to-peer activity; (2) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[5] *See, e.g.*, Ex. A ¶ 21 ("[B]roadband Internet networks such as Charter's provide the most efficient means for individuals to distribute copyrighted materials through peer-to-peer systems like BitTorrent."); *id.* at ¶ 38 (claiming certain documents are "evidence of Charter's reluctance to demonstrate any policing of peer-to-peer platform use"); *id.* at ¶ 40 (noting ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); *id.* (claiming that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); *id.* at ¶ 43 ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.").

13

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ Yet, aside from the fifth assertion, which is excludable for the reasons discussed above, these matters *are not actually disputed* by Charter and thus expert testimony regarding these issues is not "relevant to the task at hand," nor could it possibly provide any assistance to a jury in determining any matter *in dispute*. *See Daubert*, 509 U.S. at 597; *see also TBL Collectibles, Inc v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1180 (D. Colo. 2018) (excluding expert testimony opining on statute not at issue in the case).

Because it is not offered as support for an admissible expert opinion, Dr. McGarty's overview of Charter's policies, procedures, and technical capabilities is nothing more than improper factual narrative. To the extent Plaintiffs want to present any of the facts set forth in Dr. McGarty's reports, this evidence should be introduced via percipient witnesses. Indeed, courts regularly preclude experts seeking to offer this type of testimony. *See, e.g., In re Rezulin Prods.*, 309 F. Supp. 2d at 551 (expert may not "merely [present] a narrative of the case which a juror is equally capable of constructing"). The bulk of Dr. McGarty's reports amount to nothing more than a factual compilation of Charter's documents, the interpretation of which "invades the province of the jury." *See In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1334 (S.D. Fla. 2010) (excluding expert who assumed the role "advocate in her presentation of the facts and invade[d] the province of the jury"); *see also Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1111

(11th Cir. 2005) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Charter respectfully requests that the Court grant its motion to exclude the opinions and testimony of Terrence P. McGarty and grant Charter such other and further relief as the Court deems just and proper.

Dated: November 15, 2021

Respectfully submitted,

*/s/ Andrew H. Schapiro*

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

Andrew H. Schapiro
Nathan Hamstra
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*

15