# Exhibit XV

# EXHIBIT 7

                                                      Page 1

 1              THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLORADO
 3
 4     WARNER RECORDS INC. (f/k/a       )
       Warner Bros. Records, Inc.),    )
 5     et al.,                          )
                                        )
 6              Plaintiffs,             )
                                        )
 7        vs.                           ) No. 19-cv-00874
                                        )     RBJ-MEH
 8     CHARTER COMMUNICATIONS, INC.,    )
                                        )
 9              Defendant.              )
10
11
12            Deposition of MICHAEL HANRAHAN
13                 Taken May 12, 2021
14
15
16          The remotely held videotaped deposition
17     of MICHAEL HANRAHAN, taken by Maria S. Winn, CSR,
18     RPR and CRR, pursuant to the Federal Rules of
19     Civil Procedure for the United States District
20     Courts pertaining to the taking of depositions,
21     with the witness located in St. Louis, Missouri,
22     commencing at 9:00 a.m. on May 12, 2021.
23
24
25

Page 38

[redacted lines 1-6]

7  Q   What is your current involvement with
8  Charter's DMCA abuse program?
9  A   None.
10       MR. SCHAPIRO: Objection, vague.
11 BY MR. OPPENHEIM:
12 Q   What is your current involvement in
13 dealing with copyright infringement notices that
14 Charter receives?
15 A   None.
16 Q   What is your current involvement in the
17 way in which Charter responds to copyright
18 infringement notices?
19 A   None.
20 Q   Since the year 2012, have you had any
21 involvement in dealing with Charter's receipt or
22 response to copyright infringement notices?
23 A   Can you clarify?
24 Q   What part of that would you like me to
25 clarify?

Page 39

1  A   From my perspective, again, I had no
2  operational responsibility for the running of the
3  systems, for the databases, or setting policy for
4  how we would use the data collected by the
5  complaint process.
6  Q   And that's true from 2012 to the present?
7  A   From 2011 to the present.
8  Q   So you said you had no operational
9  responsibility.
10     Did you have any administrative
11 responsibility?
12     MR. SCHAPIRO: Objection, foundation.
13 A   Define "administrative."
14 BY MR. OPPENHEIM:
15 Q   Well, let me ask you this.
16     You said you had no operational
17 responsibility. Did you have any other kind of
18 responsibility in --
19 A   No.
20 Q   -- in overseeing or -- sorry.
21     Let me ask it again, and I apologize for
22 having paused.
23     Did you have any other responsibility for
24 overseeing Charter's receipt or response to
25 copyright infringement notices since 2012?

Page 40

1  A   Yeah.
2  Q   And what responsibility was that?
3  A   I provided a training session for about
4  one or two hours in probably 2015, 2016, providing
5  an overview of the fundamentals of how CATS worked
6  to the new group of people in the team that was
7  running it, as they --
8  Q   Other than -- again, apologies.
9      Go ahead.
10 A   But again, that's not policy. That's not
11 running it day-to-day. That's explaining how the
12 original design worked.
13 Q   Other than providing a training session
14 for one to two hours in the 2015 to '16 time
15 frame, have you had any other responsibility in
16 Charter's receipt or response to copyright
17 infringement notices?
18 A   No.

[redacted lines 19-25]

Page 41

[redacted line 1]

2  Q   And how are you aware -- strike that.
3      Is that Charter's current goal --
4      MR. SCHAPIRO: Objection to form of the
5  question.
6      MR. OPPENHEIM: -- for the -- sorry.
7  I'll finish.
8      MR. SCHAPIRO: Sorry.
9  BY MR. OPPENHEIM:
10 Q   Is that Charter's goal for the current
11 DMCA abuse program?
12     MR. SCHAPIRO: I will object to the form
13 and as beyond the scope.
14 A   That is my understanding.
15 BY MR. OPPENHEIM:
16 Q   And is that your understanding of what
17 the goal of the DMCA abuse program was for Charter
18 for the years 2012 to 2016?
19 A   Yes.
20 Q   And how do you know that that's Charter's
21 goal for the DMCA abuse program?
22     MR. SCHAPIRO: Objection, misstates the
23 testimony. Form of the question.
24 A   I know that that's the business inputs
25 that we were given when selecting the system and

11 (Pages 38 - 41)



| Page 270 | Page 272 |
|---|---|
| 1  record, beginning of Media Unit Number 7, of | |
| 2  the virtually-recorded deposition of Michael | |
| 3  Hanrahan. | |
| 4      Today's date is May 12, 2021. | |
| 5      The time is 5:05 p.m. | |
| | 13  Q  I'd ask you to look at Plaintiffs' |
| | 14  Exhibit 28, which is in your exhibit folder, |
| | 15  Mr. Hanrahan. |
| | 16      (Document previously marked as |
| | 17      Exhibit No. 28 for |
| | 18      identification) |
| | 19      MR. SCHAPIRO:  Sorry, which exhibit? |
| | 20  BY MR. OPPENHEIM: |
| | 21  Q  Plaintiffs' Exhibit 28, which was |
| | 22  previously marked. |
| | 23  A  I'm not seeing that.  28?  Not yet. |
| | 24  Q  It should be at the top, maybe, of |
| | 25  your Exhibit Share folder.  They don't come |

| Page 271 | Page 273 |
|---|---|
| | 1  in seriatim. |
| | 2  A  Is it, like, BT14? |
| | 3  Q  It says Austin McNeil 28. |
| | 4  A  Oh, yeah, this just appeared.  Hold on. |
| | 5  Let me refresh. |
| | 6  Q  For me it's the very first one, and it's |
| | 7  a PDF file. |
| | 8  A  Yeah, I've got it.  I found it. |
| | 9  Q  So if you scroll to the top, maybe, |
| | 10  Mr. Hanrahan, you see it. |
| | 11  A  Yes. |
| | 12  Q  Okay.  If you could open that, please. |
| | 13      And you will see Plaintiffs' Exhibit 28 |
| | 14  is an e-mail from Austin McNeil to Tammy Stewart, |
| | 15  attaching a monthly status report dated |
| | 16  September 2015.  Correct? |
| | 17  A  I see that, correct. |



69 (Pages 270 - 273)



Page 330

1     MR. SCHAPIRO:  No, I haven't.
2          You may answer.
3     A    My interpretation of the question at the
4  time was whether we were including every ticket ID
5  on the postcard, and the answer to that is no.
6          If you followed the link on the postcard
7  with the ticket ID provided, would you see more
8  tickets?  Yes.
9          MR. SCHAPIRO:  That's all I have.
10         MR. OPPENHEIM:  I object to that last
11  question and answer and move to strike.
12         On that note, Mr. Hanrahan, I express my
13  appreciation for the time you've spent with us
14  today, and I wish you the best.
15         Thank you.  Let's go off the record.
16         THE VIDEOGRAPHER:  There being nothing
17  further, this will conclude the deposition,
18  and we'll go off the record at 6:50 p.m. and
19  seven media units were used.
20         MR. SCHAPIRO:  Thank you, Mr. Hanrahan.
21  Thank you, Mr. Oppenheim, and Ms. Winn,
22  Mr. Lyle, and the cast of thousands.
23  Thank you.
24         MR. OPPENHEIM:  I agree with that.
25  Thank you very much.

Page 331

1  STATE OF ILLINOIS )
              ) SS:
2  COUNTY OF C O O K )
3
4      The within and foregoing deposition of
5  the aforementioned witness was taken by
6  MARIA S. WINN, CSR, RPR and CRR, on the date and
7  time aforementioned.
8      There were present remotely during the
9  taking of the deposition the previously named
10  counsel.
11     The said witness was first duly sworn and
12  was then examined upon oral interrogatories; the
13  questions and answers were taken down in shorthand
14  by the undersigned, acting as stenographer; and
15  the within and foregoing is a true, accurate and
16  complete record of all of the questions asked of
17  and answers made by the aforementioned witness, at
18  the time and place hereinabove referred to.
19     The signature of the witness was not
20  waived, and the deposition was submitted,
21  pursuant to Rule 30(e) and 32(d)4 of the Rules
22  of Civil Procedure for the United States District
23  Courts, to the deponent per copy of the attached
24  letter.
25

Page 332

1      The undersigned is not interested in the
2  within case, nor of kin or counsel to any of the
3  parties.
4      In witness whereof, I have hereunto set
5  my hand and seal of office this day, May 17, 2021.
6
7
8         [signature: Maria S. Winn]
9
10  CSR No. 084-003784 - Expiration Date: May 31, 2021

Page 333

1             Veritext Legal Solutions
              1100 Superior Ave
2                Suite 1820
              Cleveland, Ohio 44114
3            Phone: 216-523-1313
4
    May 17, 2021
5
    To: Mr. Schapiro
6
    Case Name: Warner Records, Inc., Et Al. v. Charter Communications,
7   Inc.
8   Veritext Reference Number: 4557531
9   Witness: Michael Hanrahan      Deposition Date: 5/12/2021
10
    Dear Sir/Madam:
11
12  Enclosed please find a deposition transcript.  Please have the witness
13  review the transcript and note any changes or corrections on the
14  included errata sheet, indicating the page, line number, change, and
15  the reason for the change.  Have the witness' signature notarized and
16  forward the completed page(s) back to us at the Production address
    shown
17
    above, or email to production-midwest@veritext.com.
18
19  If the errata is not returned within thirty days of your receipt of
20  this letter, the reading and signing will be deemed waived.
21
    Sincerely,
22
    Production Department
23
24
25  NO NOTARY REQUIRED IN CA

84 (Pages 330 - 333)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*,

*Plaintiffs*,

v.

CHARTER COMMUNICATIONS, INC.

*Defendant*.

Case No. 19-cv-00874-RBJ-MEH

**Errata Sheet for the Deposition of Michael Hanrahan (May 12, 2021)**

| Page | Line(s) | Now Reads | Should Read | Reason: 1=clarify the record; 2=conform to the facts; 3=correct transcription errors |
|---|---|---|---|---|
| 68 | 12 | turnout | turn-up | 3 |
| 113 | 15 | occasions | instances | 3 |
| 144 | 15 | not | note | 3 |
| 146 | 6 | attar | alter | 3 |
| 148 | 14 | think bullet | think that bullet | 3 |
| 156 | 5 | POP Polar, POP3 Polar | POP Poller, POP3 Poller | 3 |
| 156 | 7 | polar | poller | 3 |
| 158 | 1-2 | polar | poller | 3 |
| 159 | 11 | SNTP | SMTP | 3 |
| 159 | 20 | Yeah. | I don't know. | 1 |
| 180 | 24 | polar | poller | 3 |
| 181 | 8 | leave the last two unprocessed | leave the last two hundred unprocessed | 3 |
| 188 | 7 | times | types | 3 |
| 207 | 10 | per-roll | PERL | 3 |
| 272 | 5 | and migrating | and then later, in 2018, migrating | 2 |
| 275 | 2 | No, I was not aware. | No, I was not aware, and do not know if the retention policy was ever 2 years. | 1 |
| 283 | 9 | migrated to Oracle | upgraded | 2 |
| 284 | 1 | migrated to Oracle | upgraded | 2 |

| Page | Line(s) | Now Reads | Should Read | Reason: 1=clarify the record; 2=conform to the facts; 3=correct transcription errors |
|---|---|---|---|---|
| 288 | 14-15 | upgraded to Oracle | upgraded the hardware | 2 |
| 301 | 12 | Yes | All full time employees of the IT department are employed by Charter Communications, Inc. Contractors working for IT are not. | 2 |
| 323 | 4 | reduplicate | verify | 1 |

Date: 6/14/2021        Signature: _[signature]_