# Exhibit XVI

# EXHIBIT 8

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1            UNITED STATES DISTRICT COURT
                  DISTRICT OF COLORADO
2

   Case No. 19-cv-00874-RBJ-MEH
3

4  WARNER RECORDS, INC., (f/k/a Warner Bros.
   Records, Inc.), et al.,
5

      Plaintiffs,
6

   vs.
7

   CHARTER COMMUNICATIONS, INC.,
8

        Defendant.
9

10        CONFIDENTIAL - ATTORNEYS' EYES ONLY
11   VIDEO VIDEOCONFERENCE RULE 30(b)(6) DEPOSITION OF
        CHARTER COMMUNICATIONS, INC. by MARY HAYNES
12              May 21, 2021
   _____

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 58

1    A.   I'm sorry.  Can you repeat that?

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 82

Page 84

1      A.   I'd have to look at the postcard again.
2   Do you have a copy of that exhibit?
3      Q.   I do.  I'll tell you what.  I'm going to
4   come back to that question, and we can look at that
5   together.
6      A.   Okay.

Page 83

Page 85

22 (Pages 82 - 85)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 86

Page 88

5      MR. SPERLING:  Okay.  Why don't we take
6  a short break and go off the record.
7      THE VIDEOGRAPHER:  We're going off the
8  record at 9:24 a.m.
9      (Recess taken, after which time Ms. Rose
10  was not present.)
11     THE VIDEOGRAPHER:  We're going back on
12  the record at 9:35 a.m.

Page 87

Page 89

3      MR. EISEMAN:  Ms. Haynes, if you take a
4  look at it, you should do that before answering the
5  question, if you need to.
6      A.  I don't think I need to look at it.
7  Yes, that would be an example.

23     MR. SPERLING:  Why don't we mark Tab 42
24  as Exhibit 211.
25     (Deposition Exhibit 211 was marked.)

23 (Pages 86 - 89)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 90

1    Q.  (BY MR. SPERLING) Ms. Haynes, you
2  should have Exhibit 211 in your folder now.  If you
3  could open that, please.
4    A.  I now can see the exhibit.
5    Q.  I'm going to start just by asking about

12    A.  I'd like to review the exhibit first.
13    Q.  Sure.
14    A.  Okay.  I have reviewed the document.

Page 92

1    MR. EISEMAN:  Objection as to form.
2    MR. SPERLING:  Will everyone please mute
3  their microphones?
4    A.  Yes.
5    Q.  (BY MR. SPERLING) Thank you,
6  Ms. Haynes, and I take it your yes was an answer to my
7  question, not to my request for everyone to mute their
8  microphones?
9    A.  My yes was in response to your question.

Page 91

Page 93

Veritext Legal Solutions
www.veritext.com                                              888-391-3376

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 94

Page 96

Page 95

16      MR. SPERLING:  Why don't we move Exhibit
17  78 into the folder, please.
18      Q.  (BY MR. SPERLING)  Ms. Haynes, Exhibit
19  78 should be there.
20      MR. EISEMAN:  It's at the top, not the
21  bottom of the box.  It's numbered.
22      A.  Okay.  I can see the exhibit.

Page 97

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 98

22    Q.  If you could look in your folder, you
23  should have Exhibit 81 there.
24    A.  Exhibit?  Which exhibit?
25    Q.  Exhibit 81, so it won't be at the

Page 99

1  bottom.  It'll just show up in the numerical sequence.
2    A.  Okay, I have that exhibit.

Page 100

          MR. EISEMAN:  Objection to the form.
18  And, Mr. Sperling, the witness asked you if she could
19  look at the document.  So I think you should give her
20  an opportunity to look at the document.
21    Q.  (BY MR. SPERLING)  Ms. Haynes, are you
22  reviewing the document?
23    A.  Yes, I am.
24    Q.  Okay.  Just let me know when you're
25  done.

Page 101

1    A.  Okay, I've reviewed the document.
2    Q.  Okay.  So you can go back to the page
3  with the Bates number ending in 391 in the bottom
4  right.
5    A.  Okay.

26 (Pages 98 - 101)



Page 102

10    Q.   All right.  Earlier, you and I spoke
11  about postcards.
12        MR. SPERLING:  So if we could move
13  Exhibit 71 into the Marked Exhibits folder.
14    Q.   (BY MR. SPERLING)  Ms. Haynes, you
15  should have Exhibit 71 in your folder now.
16    A.   Okay.
17    Q.   If you go to the second page of the
18  document, please --
19        MR. EISEMAN:  Please give the witness
20  the opportunity to look at the document before you ask
21  her questions about it, Mr. Sperling.
22    Q.   (BY MR. SPERLING)  Ms. Haynes, I'm going
23  to pose my question, and if there's a reason why you
24  need to look elsewhere in the document to answer this,
25  just let me know.

Page 104

Page 103

1        MR. EISEMAN:  No, I appreciate giving
2  her the opportunity to look at the question.
3        MR. SPERLING:  David, if you have an
4  objection to a question, please state it.  There's no
5  question pending, so --
6        MR. EISEMAN:  I have an objection to you
7  not letting the witness take a look at documents you
8  put before her before you ask her questions.  That's
9  my objection.
10        MR. SPERLING:  David, I have an
11  objection to you larding the record up with this
12  before I've ever posed a question.  Right?  The
13  question is specific to a narrow, specific issue.
14  We've got 43 topics to cover and seven hours with this
15  witness.  I object to your attempting to chew up time
16  on the record by having the witness take time to read
17  loads and loads of pages that have nothing to do with
18  the question that you haven't even heard me ask yet.
19  so I'm going to pose my question, and if you have an
20  objection, you can state it.
21    Q.   (BY MR. SPERLING)  Ms. Haynes, if you
22  need to look elsewhere in the document to answer my

Page 105

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 106

Page 108

21    MR. EISEMAN:  Objection as to form.
22    Q.  (BY MR. SPERLING)  Here, I'll ask the
23  question differently, and your counsel can instruct
24  you and not object to my question.

Page 107

Page 109

3    MR. EISEMAN:  Objection as to form.
4  Ms. Haynes, I'd caution you not to reveal any
5  attorney-client communications you had in responding
6  to this question.

25  communicate to subscribers about DMCA notices?

28 (Pages 106 - 109)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 162

Page 164

Page 163

Page 165

22        MR. SPERLING:  Let's mark Tab 88.
23        MR. EISEMAN:  Mr. Sperling, when we
24  could take a break, could we take a break?  I know
25  it's not been quite an hour, but the lunch -- anyway,

42 (Pages 162 - 165)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 186

Page 188

Page 187

3        Q.   Oh, wow.  Maybe I did.  My apologies.
4   Let me try again.
5            MR. SPERLING:  And apologies also to our
6   court reporter who I falsely accused of taking
7   something down incorrectly.

Page 189

48 (Pages 186 - 189)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 222

Page 224

Page 223

5          (Deposition Exhibit 218 was marked.)
6      Q.  (BY MR. SPERLING)  Okay.  Let me ask you
7  to look at Exhibit 218, which is in your folder,
8  please.
9      A.  Okay.  I have Exhibit 218 up.

Page 225

57 (Pages 222 - 225)



Page 228

1        MR. SPERLING:  You have a standing

2  objection, so let's move on.

3        MR. EISEMAN:  I have a standing

4  objection, right?

5        MR. SPERLING:  You do.

6    Q.  (BY MR. SPERLING) Ms. Haynes, let's go

7  back to my question.  I'd rather get you out of here

13        MR. SPERLING:  Okay.  I think we've only

14  gone for a half hour, but why don't we take a short

15  break, just five minutes.  Can we go off the record?

16        MR. EISEMAN:  Okay.

17        THE VIDEOGRAPHER:  Did you say go off

18  the record?  I'm sorry.

19        MR. SPERLING:  Yes, please.

20        THE VIDEOGRAPHER:  Okay.  We're going

21  off the record at 3:15 p.m.

22        (Recess taken.)

23        THE VIDEOGRAPHER:  We're going back on

24  the record at 3:26 p.m.

25        (Deposition Exhibit 219 was marked.)

Page 227

1    Q.  (BY MR. SPERLING) Ms. Haynes, if you

2  could please open Exhibit 219, which is in your Marked

3  Exhibits folder.

4    A.  Okay, I have that open.

Page 229

17    Q.  (BY MR. SPERLING) Ms. Haynes, I'm going

18  to point you to another document in just a moment.

19        Okay.  If you could open Exhibit 114 in

20  your Marked Exhibits folder.

21    A.  I see that.

22        MR. EISEMAN:  Let me just state for the

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 240

8    Q.  (BY MR. SPERLING) Okay.  Let me ask
9  you, please, to open Exhibit 115 in your folder.
10    A.  Okay, I have that open.

Veritext Legal Solutions
www.veritext.com                                              888-391-3376

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 242

1    Q.  (BY MR. SPERLING)  Have you been the
2  subject of a DMCA notice, Ms. Haynes?
3        MR. EISEMAN:  Objection as to form.
4    A.  No.

Page 244

Page 243

Page 245

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376



Page 248

25    Q.  Okay.

Page 247

1        MR. EISEMAN:  Mr. Sperling, I think
2    you're about three minutes shy of your seven hours.
3    Just wanted to let you know that.  Hope you'll wrap it
4    up soon.
5        MR. SPERLING:  Why don't we do the
6    following?  Why don't we go off the record for just a
7    minute.
8        THE VIDEOGRAPHER:  We're going off the
9    record at 4:00 p.m.
10        (Recess taken.)
11        THE VIDEOGRAPHER:  We're going back on
12    the record at 4:10 p.m.
13        Q.  (BY MR. SPERLING)  Ms. Haynes, do you
14    still have Exhibit 115 up on your screen?
15        A.  I'll need to go back and get that.
16        Okay.  I have that up.

Page 249

63 (Pages 246 - 249)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 258

5     MR. SPERLING:  No further questions.
6 Thank you.
7     THE VIDEOGRAPHER:  David, did you have
8 any?  I just want to make sure before I --
9     MR. EISEMAN:  No, I have no further
10 questions of the witness.
11     MR. SPERLING:  This concludes the
12 videotaped deposition of Mary Haynes.  We're going off
13 the record at 4:26 p.m.
14     WHEREUPON, the foregoing deposition was
15 concluded at the hour of 4:26 p.m.  Total time on the
16 record was 7 hours and 14 minutes.
17     *   *   *   *   *
18
19
20
21
22
23
24
25

Page 259

1     REPORTER'S CERTIFICATE
2
3     I, Sandra L. Bray, Registered Diplomate
4 Reporter, Certified Realtime Reporter, and Notary
5 Public within and for the State of Colorado,
6 commissioned to administer oaths, do hereby certify
7 that previous to the commencement of the examination,
8 the witness was duly sworn by me to testify the truth
9 in relation to matters in controversy in the said
10 parties; that the said deposition was taken in
11 stenotype by me at the time and place aforesaid and
12 was thereafter reduced to typewritten form by me; and
13 that the foregoing is a true and correct transcript of
14 my stenotype notes thereof.
15     That I am not an attorney nor counsel
16 nor in any way connected with any attorney or counsel
17 for any of the parties to said action nor otherwise
18 interested in the outcome of this action.
19     My commission expires:  January 17, 2024.
20
21
22     *Sandra L. Bray*
          Sandra L. Bray
23        Registered Diplomate Reporter
          Certified Realtime Reporter
24        and Notary Public
25

Page 260

1          Veritext Legal Solutions
2          1100 Superior Ave
             Suite 1820
3          Cleveland, Ohio 44114
             Phone: 216-523-1313
4
May 26, 2021
5
To: Ms. Eiseman
6
Case Name: Warner Records, Inc., Et Al. v. Charter Communications,
7 Inc.
8 Veritext Reference Number: 4593611
9 Witness:  Mary Haynes , 30(b)(6)     Deposition Date: 5/21/2021
10
Dear Sir/Madam:
11
12 Enclosed please find a deposition transcript.  Please have the witness
13 review the transcript and note any changes or corrections on the
14 included errata sheet, indicating the page, line number, change, and
15 the reason for the change.  Have the witness' signature notarized and
16 forward the completed page(s) back to us at the Production address
   shown
17
   above, or email to production-midwest@veritext.com.
18
19 If the errata is not returned within thirty days of your receipt of
20 this letter, the reading and signing will be deemed waived.
21
   Sincerely,
22
   Production Department
23
24
25 NO NOTARY REQUIRED IN CA

Page 261

1          DEPOSITION REVIEW
            CERTIFICATION OF WITNESS
2
     ASSIGNMENT REFERENCE NO: 4593611
3     CASE NAME: Warner Records, Inc., Et Al. v. Charter
   Communications, Inc.
     DATE OF DEPOSITION: 5/21/2021
4     WITNESS' NAME: Mary Haynes , 30(b)(6)
5     In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6 my testimony or it has been read to me.
7     I have made no changes to the testimony
   as transcribed by the court reporter.
8
   _____
9 Date      Mary Haynes , 30(b)(6)
10    Sworn to and subscribed before me, a
   Notary Public in and for the State and County,
11 the referenced witness did personally appear
   and acknowledge that:
12
   They have read the transcript;
13 They signed the foregoing Sworn
      Statement; and
14 Their execution of this Statement is of
      their free act and deed.
15
   I have affixed my name and official seal
16
   this _____ day of_____, 20____.
17
18 _____
   Notary Public
19
   _____
20 Commission Expiration Date
21
22
23
24
25

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*, | |
|---|---|
| *Plaintiffs,* | Case No. 19-cv-00874-RBJ-MEH |
| v. | |
| CHARTER COMMUNICATIONS, INC. | |
| *Defendant.* | |

### Errata Sheet for the Deposition of Mary Haynes (May 21, 2021)

| Page | Line(s) | Now Reads | Should Read | Reason: 1=clarify the record; 2=conform to the facts; 3=correct transcription errors |
|---|---|---|---|---|
| 58 | 23-24 | Components would not be aware of the components of the program. | Customers would not be aware of the components of the program. | 3 |
| 80 | 15 | SST [sic] | SSST | 3 |
| 178 | 14-15 | It's referring to with Wi-Fi requests, | It's referring to Wi-Fi requests, | 3 |
| 191 | 4-6 | In November of 2015, it involved both adding additional hardware and migrating to a larger, more robust database. | In November of 2015, it involved adding additional hardware. Later we migrated to a larger, more robust database. | 2 |
| 193 | 3-4 | It was made based that we learned other carriers only kept that data for six months. | It was made based on that we learned other carriers only kept that data for six months. | 3 |
| 217 | 5 | Yes | No | 2 |
| 217 | 19-21 | Yeah, they would—they would manually request one notification to be sent for both the parent ticket as well as any child tickets. | Yeah, they would—they would manually request one notification to be sent for both the parent ticket as well as any child tickets during that time. | 2 |

| Page | Line(s) | Now Reads | Should Read | Reason: 1=clarify the record; 2=conform to the facts; 3=correct transcription errors |
|------|---------|-----------|-------------|-------------------------------------------------------------------------------------|
| 218 | 7-9 | That is correct. These would have been tickets, however, that were specific to our Optimum West acquisition. | No. These would have been tickets, however, that were specific to our Optimum West acquisition. | 2 |
| 218 | 15 | Yes. | No. | 2 |

Date: _1/1/2021_          Signature: _May Haynes_