# Exhibit XXI

# EXHIBIT 13

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF COLORADO

3

4    WARNER RECORDS INC. (f/k/a        )

     Warner Bros. Records, Inc.),     )

5    et al.,                          )

                                      )

6              Plaintiffs,            )

                                      )

7        vs.                          ) No. 19-cv-00874

                                      )      RBJ-MEH

8    CHARTER COMMUNICATIONS, INC.,    )

                                      )

9              Defendant.             )

10

11

12              Deposition of TAMMY STEWART

13                 Taken April 27, 2021

14

15          The remotely held videotaped deposition

16    of TAMMY STEWART, taken by Maria S. Winn, CSR, RPR

17    and CRR, pursuant to the Federal Rules of Civil

18    Procedure for the United States District Courts

19    pertaining to the taking of depositions, with the

20    witness located in St. Louis, Missouri, commencing

21    at 9:01 a.m. on April 27, 2021.

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 26

1  BY MR. SPERLING:
2     Q   So, Ms. Stewart, I'm going to pose a
3  yes-or-no question.
4         And so unless you're not able to answer
5  the question with a yes or no, you shouldn't.
6         You just identified one responsibility of
7  the SRT, which you said was to educate customers
8  as to how to secure their network against
9  unauthorized use by others.  Correct?
10    A   Please ask the question again.
11    Q   I'm going to.
12        You testified a moment ago, didn't you,
13 Ms. Stewart, that one responsibility of the SRT
14 was to educate customers on how to avoid third
15 parties trying to use the customer's internet
16 service without the customer's consent; is that
17 right?
18    A   Yes.
19    Q   Yes or no.  Did the SRT have any other
20 responsibilities?
21    A   Yes.
22    Q   What other responsibilities did the SRT
23 have?
24    A   We processed tickets.
25    Q   What kind of tickets did you process?

Page 27

1     A   We received notifications from outside
2  sources, and it was my team's responsibility to
3  process them.
4     Q   You received notifications of what from
5  outside sources?
6     A   Violations of the Acceptable Use Policy,
7  alleged violations.
8     Q   Okay.
9         And what are the kinds of outside parties
10 you received those notices from?
11    A   Please ask the question again.
12    Q   You said you received these notifications
13 from outside sources.
14        What sort of outside sources did you
15 receive these notifications from?
16    A   I don't know specifically who.
17    Q   And when you say you processed these
18 notifications, what did you do to process them?
19    A   We would identify who the customer was
20 and forward the notification to the customer.
21    Q   And did these notifications concern
22 copyright infringement by Charter subscribers?
23        MR. EISEMAN:  Objection as to form.
24    A   We did receive DMCA notifications.
25

Page 28

1  BY MR. SPERLING:
2     Q   And a DMCA notification is a notification
3  from a copyright holder stating that the user with
4  an IP address controlled by Charter has infringed
5  the copyright holder's copyright.  Correct?
6         MR. EISEMAN:  Objection as to form.
7     A   The notifications were allegations of
8  copyright infringement.
9  BY MR. SPERLING:
10    Q   They were allegations of copyright
11 infringement by Charter subscribers.  Correct?
12    A   They were allegations of copyright
13 infringement by Charter subscribers, yes.
14    Q   And so is it your testimony that one of
15 the responsibilities of the SRT was to process the
16 notifications by identifying the customer that was
17 the subject of the DMCA notification and
18 forwarding the DMCA notice to the subscriber?
19    A   My team's responsibility was to identify
20 the customer and forward each notification on to
21 them.
22    Q   Did your team have any other
23 responsibilities with respect to DMCA notices?
24    A   They handled customer calls.
25    Q   And what did those responsibilities

Page 29

1  entail?  What were they authorized to do in
2  handling customer calls regarding --
3         MR. EISEMAN:  Objection as to form.
4     A   Educate the customer on what that
5  notification alleged.
6  BY MR. SPERLING:
7     Q   Was your team authorized to do anything
8  else in connection with calls from customers about
9  DMCA notices?
10        MR. EISEMAN:  Objection as to form.
11    A   Discouraged customers, if they were
12 involved in any type of activity, to refrain from
13 getting engaged in any activity in violation to
14 the Acceptable Use Policy.
15 BY MR. SPERLING:
16    Q   Was your team authorized to do anything
17 else in connection with calls from customers about
18 DMCA notices?
19        MR. EISEMAN:  Object as to form.
20    A   I don't recall.  No.
21 BY MR. SPERLING:
22    Q   To the best of your recollection, that's
23 the full range of what your team was authorized to
24 do, with respect to DMCA notices; is that correct?
25        MR. EISEMAN:  Objection as to form.

8 (Pages 26 - 29)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 226

1    The witness deserves better.
2    Why don't we take a break?
3        MR. SPERLING:  No, we're not -- we're not
4    taking a break in the middle of this question
5    which hasn't been answered.
6  BY MR. SPERLING:
7    Q   Ms. Stewart --
8        MR. EISEMAN:  Ask your question.
9  BY MR. SPERLING:
10    Q    -- I certainly don't mean any disrespect
11  to you, and so I hope you didn't take it in that
12  way.
13        I do realize this was several years ago.
14  The question is focused, and we'll be more
15  successful if you try to answer my question rather

Page 228

Page 227

Page 229

12        MR. SPERLING:  Okay.  Why don't we take a
13    break.
14        THE VIDEOGRAPHER:  Off the record, 3:39.
15        (WHEREUPON, a recess was taken,
16        after which the following
17        proceedings were held:)
18        THE VIDEOGRAPHER:  Back on the record at
19    3:53.
20        (Document marked as Exhibit No. 84
21        for identification.)
22  BY MR. SPERLING:
23    Q   Ms. Stewart, if you look at your exhibits
24  folder, there should be an Exhibit 84.
25    A   I have it.

58 (Pages 226 - 229)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 242

23      MR. SPERLING:  Let's put Exhibit 29 into
24    the folder.
25

Page 243

1         (Document previously marked as
2          Exhibit No. 29 for
3          identification)
4    BY MR. SPERLING:
5      Q    Okay.  You should see, actually at the
6    top of the list of your exhibits, not the bottom,
7    Exhibit 29.
8      A    Yes, I have it.
9      Q    Okay.  Ms. Stewart, are you able to hear
10   me?
11     A    Yes.

Page 244

Page 245

62 (Pages 242 - 245)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 246

Page 247

13    MR. EISEMAN:  I don't know what you're
14  doing here, Mr. Sperling.  But if you want to
15  ask a question, you can ask a question.
16       And what you're asking about, with regard
17  to documentation -- the witness was talking
18  about documentation.  You haven't put anything
19  in front of her.
20       So I -- I don't know if I -- if you want
21  to make a representation off the record, and
22  then ask her what?
23       MR. SPERLING:  If you will stop talking,
24  I'll be able to ask the question, and you'll
25  be able to see.  And then if you have an

Page 248

1    objection to the question, then we'll know.
2  BY MR. SPERLING:

24       MR. SPERLING:  Let's mark as Tab 46
25  Tab 87 -- I said 86, but it should be

Page 249

1  Exhibit 87.  Excuse me.
2       (Document marked as Exhibit No. 87
3       for identification.)
4  BY MR. SPERLING:
5    Q   And you should have it in your folder.
6    A   I do.
7    Q   Okay.  It's a two-page e-mail, and I
8  would like to look through the whole thing with
9  you, from the beginning.  So the beginning in this
10  case means the end of the document.

63 (Pages 246 - 249)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 294

1  A   That's my response, yes.
2  Q   Was that an accurate statement of the
3  policy Charter had in place as of December 8,
4  2015?
5      MR. EISEMAN:  Objection as to form.
6  A   I'm not positive what the rest of the
7  content was around this discussion.
8      I don't believe my team had the ability
9  to suspend services.  I -- I don't recall.
10 BY MR. SPERLING:
11 Q   Well, you see an e-mail from Scott Weber
12 that day inquiring about your DMCA process.
13 Right?
14 A   Yes.
15 Q   And Scott Weber, you told me, was a very
16 senior official within the company.  Right?
17 A   Yes.
18 Q   And then you were responding to
19 additional questions from Mr. Dickerson about the
20 process by which you handled DMCA notices.
21 Correct?
22 A   About the batching process, yes.
23 Q   And you understood that it was important
24 to relay accurate information in response to these



HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 298

Page 300

Page 299

Page 301

3      MR. EISEMAN:  I'm going to object, to the
4   extent you're asking about the time period
5   after May 17th, 2016.
6      MR. SPERLING:  I'm asking about her
7   answer to my question.
8      MR. EISEMAN:  I'm not sure that she was
9   clear that you were limiting your question to
10   the time period up until that date.
11      That's what I'm worried about.
12  BY MR. SPERLING:

76 (Pages 298 - 301)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 310

1  contact each customer for our notifications.
2  Q   When you say "our group," do you mean the
3  SRT/SSST?
4  A   Yes. I believe this is referring to when
5  I managed them.
6  MR. EISEMAN:  Mr. Sperling, you've gone
7  beyond your seven hours.
8  MR. SPERLING:  I have no further
9  questions for the witness.
10  MR. EISEMAN:  I have no questions for the
11  witness either.
12  MR. SPERLING:  Ms. Stewart, thank you for
13  your time.
14  THE WITNESS:  Thank you.
15  MR. EISEMAN:  Thanks everybody.
16  THE VIDEOGRAPHER:  Off the record at
17  5:56.
18  (WITNESS EXCUSED)
19
20
21
22
23
24
25

Page 312

1  The undersigned is not interested in the
2  within case, nor of kin or counsel to any of the
3  parties.
4  In witness whereof, I have hereunto set
5  my hand and seal of office this day, May 3, 2021.
6
7
    _Maria S. Winn_
8  _____
9
10  CSR No. 084-003784 - Expiration Date: May 31, 2021
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 311

1  STATE OF ILLINOIS )
           ) SS:
2  COUNTY OF C O O K )
3
4  The within and foregoing deposition of
5  the aforementioned witness was taken by
6  MARIA S. WINN, CSR, RPR and CRR, on the date and
7  time aforementioned.
8  There were present remotely during the
9  taking of the deposition the previously named
10  counsel.
11  The said witness was first duly sworn and
12  was then examined upon oral interrogatories; the
13  questions and answers were taken down in shorthand
14  by the undersigned, acting as stenographer; and
15  the within and foregoing is a true, accurate and
16  complete record of all of the questions asked of
17  and answers made by the aforementioned witness, at
18  the time and place hereinabove referred to.
19  The signature of the witness was not
20  waived, and the deposition was submitted,
21  pursuant to Rule 30(e) and 32(d)4 of the Rules
22  of Civil Procedure for the United States District
23  Courts, to the deponent per copy of the attached
24  letter.
25

Page 313

1  Veritext Legal Solutions
       1100 Superior Ave
2         Suite 1820
     Cleveland, Ohio 44114
3     Phone: 216-523-1313
4
  May 4, 2021
5
  To: MR. EISEMAN
6
  Case Name: Warner Records, Inc., Et Al. v. Charter Communications,
7  Inc.
8  Veritext Reference Number: 4557312
9  Witness: Tammy Stewart     Deposition Date: 4/27/2021
10
  Dear Sir/Madam:
11
12  Enclosed please find a deposition transcript.  Please have the witness
13  review the transcript and note any changes or corrections on the
14  included errata sheet, indicating the page, line number, change, and
15  the reason for the change.  Have the witness' signature notarized and
16  forward the completed page(s) back to us at the Production address
   shown
17
  above, or email to production-midwest@veritext.com.
18
19  If the errata is not returned within thirty days of your receipt of
20  this letter, the reading and signing will be deemed waived.
21
  Sincerely,
22
  Production Department
23
24
25  NO NOTARY REQUIRED IN CA

79 (Pages 310 - 313)