# Exhibit XXVII

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC, et al.,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

___

**PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT
CERTAIN EXPERT TESTIMONY AND OPINIONS BY DR. KEVIN ALMEROTH**

    Charter's proffered rebuttal expert, Dr. Kevin C. Almeroth, offers several opinions in his reports that violate Rule 702 and Rule 403 and should be excluded from trial.

    Dr. Almeroth is a computer science professor emeritus, has a Ph.D. in computer science, and is the epitome of a professional testifier. In the last four years alone, he has provided deposition and/or live trial testimony in 59 separate cases. Gould Decl. Ex. 1 (June 28, 2021 Rebuttal Expert Report of Dr. Kevin C. Almeroth ("Almeroth Rept.")). Dr. Almeroth submitted two reports purporting to rebut, in pertinent part, portions of opinions from two of Plaintiffs' experts, concerning Charter's technical ability to undertake certain actions in response to infringement notices.

    *First*, the Court should exclude Dr. Almeroth's opinions and testimony concerning the "technical feasibility" and "technical reasonableness" of certain measures that Plaintiffs' experts proposed Charter could have taken in responding to infringement notices. The effect, if not intent, of Dr. Almeroth's opinion is to tell the jury that Charter's decision not to implement certain procedures—and indeed its overall response to infringement notices—was *reasonable*. The *Sony v. Cox* court excluded a similar opinion by Dr. Almeroth that an ISP's response to

infringement notices was reasonable "because Dr. Almeroth is not qualified to give that opinion" and it "would usurp the jury's factfinding role." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 2019 WL 9088257, at *1 (E.D. Va. Nov. 19, 2019). The same is true here. Nor did he conduct any analysis to support his opinion. Instead, he merely summarizes Charter's evidence in what amounts to unfair vouching for evidence.

*Second*, Dr. Almeroth criticizes Plaintiffs' experts for not opining that the measures they propose Charter could have adopted, would have been *effective* in curbing infringement or sufficient for Charter to *avoid liability*. This opinion should be excluded because it is not a proper subject of expert opinion, Dr. Almeroth lacks sufficient qualifications to opine on effectiveness or liability, and allowing him to do so would mislead rather than assist the jury.

*Third*, Dr. Almeroth purports to analyze net neutrality laws and human rights principles, and then opines that those issues would have impacted Charter's state of mind in deciding whether to terminate, suspend or otherwise limit an infringing subscriber's internet service. Dr. Almeroth is not qualified to characterize for the jury complex regulatory orders, legal opinions or human rights proclamations, and no expert can speculate on the state of mind of another litigant.

*Fourth*, Dr. Almeroth should be precluded from testifying about the importance of internet access to modern life because it does not require specialized knowledge or expertise, he conducted no analysis, it would not assist the jury, and it is irrelevant to his claimed opinions.

**LEGAL STANDARD**

Under Federal Rule of Evidence Rule 702, an expert qualified "by knowledge, skill, experience, training, or education" may provide opinion testimony if it (1) is helpful to the jury; (2) is based on sufficient facts or data; (3) is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

2

Trial courts act as gatekeepers to ensure that expert testimony is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). Expert opinions are relevant if they would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591. They are reliable if the expert is qualified and his or her opinions are "scientifically valid" and based on "reasoning or methodology [that] properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. As a gatekeeper, the Court must assess the "reasoning and methodology underlying the expert's opinion" and determine "whether it is scientifically valid and applicable to a particular set of facts." *Blotcher v. Stewart*, 45 F. Supp. 3d 1274, 1278 (D. Colo. 2014) (Jackson, J.) (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)).

Even if relevant, "[e]xpert testimony, like any other evidence, is subject to exclusion if it fails the Fed. R. Evid. 403 balancing test." *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994).

The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *Salvatore v. Pingel*, 2010 WL 11590318, at *4 (D. Colo. Mar. 12, 2010).

## ARGUMENT

### I. Dr. Almeroth's rebuttal opinions regarding "technical feasibility" and "technical reasonableness" should be excluded.

Plaintiffs' expert, Dr. Terrence McGarty, opined that Charter had the *technical capability* to enforce its Acceptable Use Policy ("AUP") that prohibits use of Charter's network to infringe, by imposing consequences for repeat infringement. To that end, Dr. McGarty opined, among other things, that Charter could ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3

████████████████████████████████████████████████. Gould Decl. Ex. 2 ¶¶ 34-45 (May 27, 2021 Expert Report of Dr. Terrence P. McGarty).

Another of Plaintiffs' experts, Barbara Frederiksen-Cross, opined that Charter had the *technical capability* to ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ Gould Decl. Ex. 3 ¶ 14 (June 11, 2021 Expert Report of Barbara Frederiksen-Cross).

In response, Dr. Almeroth purports to argue that neither of Plaintiffs' experts demonstrates the "technical feasibility" or "technical reasonableness" of these proposals. *See, e.g.*, Almeroth Rept. ¶¶ 1-2, 33-35. The problem with this opinion is that Dr. Almeroth is really opining on the reasonableness of ████████████████████████████████████████, which is beyond his expertise and usurps the jury's fact-finding role. And even if the Court concludes that this opinion is a proper subject of expert testimony, it should still be excluded because Dr. Almeroth has conducted no expert analysis and instead just summarizes and vouches for Charter's evidence.

### A. Dr. Almeroth usurps the jury's fact-finding role.

Despite stating in his report that he was opining on the "technical feasibility" or "technical reasonableness" of Plaintiffs' experts' proposals, Dr. Almeroth did not define these terms in his report and was unable to do so in his deposition. The little he offered to define these terms made clear that his real opinion is that ████████████████████████████████████ ████████████████████, considering the cost, effectiveness, and impact on Charter's subscribers. That is not a proper subject for expert opinion; it usurps the jury's factfinding role.

4

Asked to define "technical feasibility," Dr. Almeroth said, "I don't know that I can give you a dictionary definition," and circularly referred to "the kinds of opinions I've offered around technological feasibility [that] are contained within the report as examples of what I'm talking about." Gould Decl. Ex. 4 at 126:16-25 (Deposition Transcript of K. Almeroth, Sept. 28, 2021 ("Almeroth Tr.")). Pressed further, Dr. Almeroth admitted that "technical feasibility" is different than "technical possibility," because whether something is technically possible "ignores issues like cost, safety, effectiveness, and all sorts of criteria that you would want to consider." *Id.* at 128:2-11. Dr. Almeroth further admitted that his conception of feasibility includes considering "reasonableness":

> [T]he point of feasibility, as you related to possibility would be -- again, while it might be possible to put somebody on Mars within a narrow time frame, the feasibility for doing so is -- you know, there might be considerations that make it not feasible. And then there's a *second element with respect to reasonableness*, which I think sort of drives that point home.

*Id.* at 128:21-129:3 (emphasis added).

Thus, according to Dr. Almeroth, it 

Almeroth Rept. ¶ 137. Similarly, it is technically possible to

. Gould

---

[1] *See* Gould Decl. Ex. 5 at CHA_00146008 (reporting on ); Almeroth Tr. at 242:19-242:22 (discussing same).

5

Ex. 6 at ¶¶ 7-8, 10 (Sept. 21, 2021 Supplemental Rebuttal Expert Report of Dr. Kevin C. Almeroth). Dr. Almeroth could not distinguish between "technical feasibility" and "technical reasonableness." Almeroth Tr. at 130:16-131:3 ("I'm not trying to give you a specific difference between the terms. In order to articulate it succinctly, I would have to give it some thought.").

Stripped of his hazy labels, Dr. Almeroth is passing judgment on the reasonableness of Charter's business decision to prioritize cost, network efficiency, user experience or other considerations over complying with its legal obligations to impose consequences on repeat infringers.[2] Such testimony usurps the jury's role to assess the propriety of Charter's conduct.

This is not the first time Dr. Almeroth has attempted to opine on an ISP's reasonableness. In *Sony v. Cox*, Dr. Almeroth tried to opine on the reasonableness of Cox's policies and procedures for responding to infringement notices. Unsurprisingly, the *Sony* court struck these opinions, finding that "Dr. Almeroth is not qualified to give that opinion. Opining on questions of reasonableness would usurp the jury's fact finding role." *Sony v. Cox*, 2019 WL 9088257, at *1. Mindful of this admonition, Dr. Almeroth has tried to disclaim offering here "any opinions regarding the ultimate question of reasonableness of Charter's response to [] DMCA notices." Almeroth Rept. ¶ 2. The problem, however, is that he does just that.

### B. Dr. Almeroth is not qualified to opine on reasonableness.

Compounding the problem, and as the *Sony v. Cox* court concluded, Dr. Almeroth lacks specialized knowledge, skill, experience, training, or education to opine on the reasonableness of

---

[2] *See* Almeroth Tr. at 100:22-101:8 ("Q. Dr. Almeroth, are you opining on Charter's business practices? MS. CLARK: Object to form. THE WITNESS: I'm not sure if the opinions I've offered would fall within that characterization or not. So, for example, just going back to Paragraph 117 and what Charter did or didn't have the technical capability to provide, whether that falls under business practices or not. If it does, then I am. And if those kinds of examples that I've got in the report don't fall under that characterization, then I wouldn't be.").

6

an ISP's infringement policies or procedures—including whether implementing Dr. McGarty or Ms. Frederiksen-Cross's suggestions would be reasonable. Dr. Almeroth has never drafted an acceptable use policy for an ISP (Almeroth Tr. at 89:15-19), has never been involved in designing an ISP's program for responding to copyright infringement notices (*id.* at 90:15-91:5), has never worked on an ISP's DMCA policy (*id.* at 97:1-4), has never evaluated the effectiveness of an ISP's DMCA compliance program (*id.* at 122:6-20), does not hold a business degree (*id.* at 123:19-21), has never managed a budget for an ISP (*id.* at 124:6-8), and has no knowledge of Charter's revenues or profits (*id.* at 124:21-125:7).

Because Dr. Almeroth offers no specialized knowledge or experience that will assist the jury in determining whether Charter acted reasonably—the ultimate question for the jury—his opinion on alleged "technical feasibility" and "technical reasonability" should be excluded.

### C. Dr. Almeroth conducted no expert analysis and instead improperly summarizes and vouches for Charter's evidence.

Notwithstanding the above discussion, Dr. Almeroth claims that he is *not* opining on whether Charter acted reasonably. Almeroth Rept. ¶ 2. Rather, he is merely criticizing Plaintiffs' experts for not adequately accounting for certain evidence in forming their opinions. But Dr. Almeroth did not conduct any analysis for this supposed rebuttal opinion. Instead, he parrots information learned in a private conversation with a Charter employee, Mary Haynes, and Charter's deposition testimony, in what amounts to improper vouching for evidence.

Dr. Almeroth accepts Charter's representations on faith, without conducting any further investigation or analysis, and then adopts Charter's view that the proposed measures were not technically feasible or reasonable. For example, Dr. Almeroth:

- ██████████████████████████████████████████████████████████ Almeroth Rept. ¶ 100.

7



- ████████████████████████████████████████

- ████████████████████████████████████████ *Id.* ¶ 101.

- ████████████████████████████████████████ *Id.* ¶ 107.

- ████████████████████████████████████████ *Id.* ¶¶ 119-120.

- ████████████████████████████████████████ *Id.* ¶ 121.

Dr. Almeroth then repeats Ms. Haynes' facts again as his supposed analysis and opinion.[3] This is not an expert opinion based on specialized training or expertise, but rather "unfair vouching" for Charter's evidence. *See Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018) (excluding Dr. Almeroth's summary of facts because "[a]llowing Dr. Almeroth to do so would amount to no more than an unfair vouching of evidence"). Charter's counsel can cross-examine Plaintiffs' experts on whether they considered certain evidence, and Charter's witnesses may testify to facts Dr. Almeroth summarizes, but Dr.

---

[3] *See, e.g.*, Almeroth Rept. ¶¶ 126 & n.68 ("I spoke with Ms. Haynes and she explained…"), 127 & n.69 (citing Ms. Haynes to explain why "████████████████…"), 128 & n.72-73 (same), 137 & n.87-89 ("Ms. Haynes confirmed that…" and "Ms. Haynes verified that…"), 141 & n.93-94 (citing Ms. Haynes to explain that "████████████████████████████████████████████████████████"), 143 & n. 98 ("Ms. Haynes disagreed…"), 146 ("As Ms. Haynes described…").

8

Almeroth should not be permitted to stamp Charter's view of the facts with the imprimatur of expertise when he has done no analysis and offers no opinions of his own.

> **II. Dr. Almeroth's opinions regarding effectiveness and avoiding liability are improper expert rebuttal that should be excluded.**

Dr. Almeroth states that, even if the measures Dr. McGarty and Ms. Frederiksen-Cross proposed would have been simple and reasonable to implement, neither opines "that they would have effectively curbed infringement (or that they would have addressed infringement any more effectively than Charter's education-based system), or that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Almeroth Rept. ¶ 33; *see also id.* at ¶¶ 35, 128-29. This opinion should be excluded because it is not a proper subject of expert opinion, Dr. Almeroth lacks sufficient qualifications to testify about effectiveness or liability, and allowing him to do so would mislead rather than assist the jury.

*First*, Dr. Almeroth's criticism that Plaintiffs' experts do not opine on effectiveness or liability ignores that neither issue is the proper subject of expert opinion. Indeed, the *Sony v. Cox* court excluded expert opinion on whether Cox's procedures for responding to infringement notices were "effective," in part, because it "unfairly usurps the factfinding role of the jury on issues of fact." 2019 WL 9088257, at *1. And, of course, no expert can opine on liability.

Following *Sony*'s guidance, Dr. Almeroth admits here that he is not offering any opinions on "steps that could be taken to more effectively curb copyright infringements" or "what an ISP could do to avoid [] secondary liability for copyright infringement claims. Almeroth Tr. at 115:17-116:6.[4] But then he criticizes Dr. McGarty and Ms. Frederiksen-Cross for failing to offer opinions they cannot properly offer. That criticism is ill-founded and should be excluded.

---

[4] Almeroth Tr. at 115:17-116:6 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9

*Second*, Dr. Almeroth is not qualified to opine on either issue in any event. He is not a lawyer and has never evaluated the effectiveness of an ISP's DMCA compliance program. *Id.* at 122:6-20 ("Q. Have you ever evaluated the effectiveness of an ISP's DMCA compliance program? A. After DMCA? I don't believe I'm doing it here, but, again, I would defer to the report."). Nothing in his reports in this case or the *Sony v. Cox* case identifies a basis for such expertise regarding effectiveness or liability. *Sony v. Cox*, 2019 WL 9088257, at *1 (excluding "effectiveness" opinion, in part, because proffered expert "is also not an expert in the field"). Allowing Dr. Almeroth to present this criticism as an expert opinion would mislead the jury to believe that he *is* qualified to evaluate what constitutes an effective DMCA compliance program and how to avoid liability.

*Third*, there is nothing "expert" about this opinion since Dr. Almeroth does not rely on any specialized knowledge or expertise for it. Dr. Almeroth merely read Plaintiffs' experts' reports and pointed out the undisputed fact that neither opined on effectiveness or liability. Dr. Almeroth cannot backdoor an "effectiveness" or "liability" opinion through with empty rebuttal.

### III. Dr. Almeroth should be precluded from testifying about the meaning of net neutrality laws and human rights principles and their impact on Charter's state of mind.

In paragraphs 132-137 of his report, Dr. Almeroth purports to summarize net neutrality laws and human rights principles allegedly espoused by the United Nations. He then opines that the legal and policy implications of those laws and principles would have impacted Charter's state of mind in determining whether to suspend, terminate or otherwise limit internet access of

---

[redacted].").

infringing subscribers. Because Dr. Almeroth is not qualified to speak on these matters, they are unreliable, would be unhelpful to the jury and should be excluded.[5]

Dr. Almeroth states that the "UN has declared Internet access a fundamental human right" and opines that Plaintiffs' proposal of suspending, terminating or limiting internet access of repeat infringers "subjugates the economic interests of the music content owners over th[ose] fundamental human rights." Almeroth Rept. ¶ 132. In support of this, he cites one news article from The Atlantic and one U.N. statement that does not support the proposition and does not even include the language that Dr. Almeroth quotes as his source. *Id.* at ¶ 132 n.78.

Dr. Almeroth then describes FCC regulatory orders concerning net neutrality, and judicial opinions analyzing the scope of the FCC's administrative authority and overturning the FCC's net neutrality rules. *Id.* at ¶¶ 133-135. Dr. Almeroth purports to characterize and quote from legal opinions and FCC orders. He then opines that Charter would have considered the legal and policy implications of these rulings in assessing the "reasonability" of terminating, suspending, or monitoring the volume of peer-to-peer use by repeat infringers. *Id.* at ¶¶ 133-136.

Dr. Almeroth is not a lawyer or legal expert, Almeroth Tr. at 107:6-7, and has no expertise in human rights matters. He should not be permitted to infect the jury with his lay understanding of FCC orders, judicial opinions, U.N. human rights statements, or the legal and policy implications of such matters. *E.g.*, *Luciano v. East Cent. Bd. of Coop. Educ. Servs.*, 885 F. Supp. 2d 1063, 1067-68 (D. Colo. 2012) (expert could not opine on what statutes and regulations required and whether certain actions would violate them); *Wildearth Guardians v.*

---

[5] Another of Charter's experts, Dr. Aram Sinnreich, offers a similar opinion that Plaintiffs have also moved to exclude. To the extent the Court denies both motions, at a minimum, it should exclude cumulative testimony from separate experts on this issue.

11

*Pub. Serv. Co. of Colo.*, 853 F. Supp. 2d 1086, 1090 (D. Colo. 2012) (expert could not express opinions about his interpretation of environmental laws or regulations).

Nor should Dr. Almeroth be permitted to speculate on how net neutrality or U.N. human rights principles would have impacted Charter's state of mind in considering whether to terminate, suspend, or otherwise restrict a subscriber's internet service in response to infringement notices. *See Arista Networks*, 2018 WL 8949299, at *3 (excluding Dr. Almeroth's opinion, in part, because "[e]xperts may not speculate about the state of mind" of others).

Other courts have precluded Dr. Almeroth from offering similar types of testimony and opinions because they are outside his expertise and amount to unfair vouching:

> Dr. Almeroth summarizes his view of what the 2003 lawsuit between Cisco and Huawei was about and how the lawsuit concluded. Rebuttal Report ¶ 129. This is neither the proper subject of expert testimony nor does Dr. Almeroth have expertise in characterizing lawsuits and their results. Thus, to the extent that Dr. Almeroth proffers expert opinions on the nature of the Huawei lawsuit, those opinions are inadmissible. If Cisco intends to offer the statements in paragraph 129 as a factual background, Cisco does not require an expert to introduce such statements. Allowing Dr. Almeroth to do so would amount to no more than an unfair vouching of evidence.

*Arista Networks*, 2018 WL 8949299, at *3.

The same applies here. Dr. Almeroth has no expertise in characterizing regulatory orders, lawsuits, or their results. Nor would that be proper subject of expert testimony in any event. To the extent Charter wishes to provide factual background regarding its consideration of net neutrality or human rights principles in determining whether to terminate infringing subscriber's service, it should offer a fact witness with personal knowledge, rather than the improper imprimatur of an expert.

12

### IV. Dr. Almeroth should be precluded from testifying that the internet is "essential to the operation of our economy and our lives."

Dr. Almeroth should be precluded from testifying about the importance of internet access to modern life because it does not require specialized knowledge or expertise, would not assist the jury, and is irrelevant to his claimed opinions.

In describing the "Technology At Issue," Dr. Almeroth opines that the internet "has become ubiquitous and essential to the operation of our economy and our lives." Almeroth Rept. ¶ 40. He describes internet use "to collaborate for social, professional, and educational purposes," "for entertainment, to complete school work, and to perform necessary job responsibilities," and for businesses "to provide goods and services to customers, keep track of their finances and other data, and ensure employees and management are communicating seamlessly." *Id.* He describes hospitals' reliance on internet access "to convey vital, private patient information and allow medical providers to coordinate patient care," use by schools "to get and convey classwork," and the dissemination of internet services "to otherwise under-served communities. *Id.*

Nothing about these matters warrants testimony from Dr. Almeroth and the corresponding endorsement of an expert. Jurors are perfectly capable of understanding how individuals and businesses use the internet without such expert testimony, and assuredly already know that from their own experience. Thus, "where[,] as here[,] expert testimony is offered on an issue that a jury is capable of assessing for itself . . . that testimony [is] inadmissible because it would not even marginally 'assist the trier of fact,' while it must be viewed as a 'needless presentation.'" *Thompson*, 34 F.3d at 941 (quoting Fed. R. Evid. 403); *see also McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (affirming exclusion of expert

13

testimony under Rule 702 on matters "equally within the competence of the jurors to understand and decide" because such expert testimony would not be helpful to the jury).

Further, to the extent Dr. Almeroth limits his opinions to "*technical* feasibility" and "*technical* reasonableness" (rather than the ultimate reasonableness of Charter's business decisions), then this discussion is irrelevant. Nothing about the technical feasibility of Charter's ability to suspend, terminate or limit internet access turns on how essential the internet is to the daily lives of Charter users. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Given this, any testimony about the importance of internet access to daily life could only be relevant to "the ultimate question of reasonableness" of terminating access based on infringement allegations, which Dr. Almeroth expressly disclaims is part of his opinion. Almeroth Rept. ¶ 2.

## CONCLUSION

Dr. Almeroth's opinions concerning (i) technical feasibility and reasonableness, (ii) effectiveness and avoiding liability, (iii) net neutrality and human rights principles, and (iv) the importance of internet to modern life, go beyond the bounds of permissible expert testimony. For the reasons set forth herein, such opinions and testimony should be excluded.

Respectfully submitted,

Dated: November 15, 2021  /s/ Jeffrey M. Gould

| | |
|---|---|
| Jonathan M. Sperling | Matthew J. Oppenheim |
| COVINGTON & BURLING LLP | Scott A. Zebrak |
| The New York Times Building | Jeffrey M. Gould |
| 620 Eighth Avenue | Alexander Kaplan |
| New York, NY 10018-1405 | OPPENHEIM + ZEBRAK, LLP |
| Telephone: (212) 841-1000 | 4530 Wisconsin Ave. NW, 5th Floor |
| jsperling@cov.com | Washington, DC 20016 |
| | Telephone: (202) 621-9027 |

14

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

*Attorneys for Plaintiffs*

**LOCAL CIVIL RULE 7.1(a) CERTIFICATION**

The parties conferred by phone on November 10, 2021 regarding the issues raised by this motion and could not reach agreement.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 15, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically using the CM/ECF system.

*/s/ Jeffrey M. Gould*