# Exhibit XXIX

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC, et al.,

    Plaintiffs,

v.                                                                                          ***DAUBERT* HEARING REQUESTED**

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

### PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF DR. SANDEEP CHATTERJEE

This case involves infringement of Plaintiffs' copyrighted works on a massive scale via peer-to-peer ("P2P") networks. Both sides have retained technical experts to analyze and opine on aspects of internet technology, P2P technology, MarkMonitor's infringement detection system, and the Audible Magic technology used for audio content identification. Charter served two expert reports from Dr. Sandeep Chatterjee, a computer scientist, in which he opines on these technologies and systems, and purports to rebut Plaintiffs' experts' several ways.[1]

While the opposing experts agree on much of the basic technological background, some (but not all) of Dr. Chatterjee's opinions should be excluded. That is because he offers several opinions for which he lacks relevant expertise or bases opinions on unsupportable assumptions or analytical leaps. Accordingly, Plaintiffs move to exclude those unreliable and irrelevant opinions, which will mislead or confuse the jury rather than assist it.

---

[1] Declaration of Gould ("Gould Decl.") Ex. 1 (May 27, 2021 Expert Report of Sandeep Chatterjee, Ph.D. Regarding the RIAA Notice Program ("Chatterjee Rept.")); Gould Decl. Ex. 2 (June 28, 2021 Responsive Expert Report of Sandeep Chatterjee, Ph.D. Regarding the RIAA Notice Program ("Chatterjee Rebuttal")).

1

**LEGAL STANDARD**

An expert qualified "by knowledge, skill, experience, training, or education" may provide opinion testimony if it (1) is helpful to the jury; (2) is based on sufficient facts or data; (3) is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

Trial courts act as gatekeepers to ensure that expert testimony is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). Expert opinions are relevant if they would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591. They are reliable if the expert is qualified and his or her opinions are "scientifically valid" and based on "reasoning or methodology [that] properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. As a gatekeeper, the Court must assess the "reasoning and methodology underlying the expert's opinion" and determine "whether it is scientifically valid and applicable to a particular set of facts." *Blotcher v. Stewart*, 45 F. Supp. 3d 1274, 1278 (D. Colo. 2014) (Jackson, J.) (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)). "Expert testimony, like any other evidence, is [also] subject to exclusion if it fails the Fed. R. Evid. 403 balancing test." *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994).

The proponent of expert testimony has the burden to demonstrate its admissibility by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

**I.   Dr. Chatterjee's opinions on "fake" files and "pollution" should be excluded.**

Dr. Chatterjee seeks to offer opinions on the prevalence of "fake" files or "pollution" on P2P networks in an attempt to undermine the reliability of MarkMonitor's process for sending

2

notices. Dr. Chatterjee lacks the relevant expertise to offer this opinion, his opinion lacks a sufficient factual foundation, and he makes crucial errors that undermine his opinion's reliability.



Dr. Chatterjee opines that ███████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ Chatterjee Tr. 148:3-13. ████████████████████████████████████ Chatterjee Rept. ¶¶ 73-74, 85. In this regard, Dr. Chatterjee hopes to convince the jury that MarkMonitor was fooled

---

[2] A hash value is an alphanumerical representation of the contents of a digital file. Nov. 14, 2021 Decl. of Barbara Frederiksen-Cross in Supp. of Pls.' Mot. for Summary Judgment ¶¶ 5-11 ("Frederiksen-Cross Decl."). Identical files will have the same hash value, as Dr. Chatterjee and Charter's other technical expert, Dr. Kevin Almeroth, agree. Gould Decl. Ex. 3 84:5-13, 90:8-13 (Oct. 5, 2021 Dep. of S. Chatterjee, Ph.D. ("Chatterjee Tr.")) ("Q. So as a practical matter, two files that calculate the same hash value are identical, correct? A. If you calculate using the same hash algorithm on two different files and the resulting hash values are the same, yes, it tells you something, that the files are the same."); Gould Decl. Ex. 4 145:3-11 (Sept. 28, 2021 Dep. of K. Almeroth, Ph.D.) ("If you have two different files and they are identical, they have the same hash values, so one is essentially a copy of the other.").

into sending infringement notices based on Charter subscribers' distribution of "fake" files rather than infringing copies of Plaintiffs' works in suit. These opinions should be excluded.

*First*, Dr. Chatterjee lacks relevant expertise for this opinion. His opinion on the prevalence of "fake" files is not an opinion about how P2P technology works (about which he is qualified to opine), but an opinion about how participants in P2P networks *use* the technology.



*Id.* ¶ 75. He then parrots reports regarding the possibility of such activity without any analysis. Chatterjee Tr. 164:24-166:1. He has no relevant qualifications to opine on the behavior of P2P users.

*Second*, Dr. Chatterjee cannot establish a factual foundation for his opinion that this could have impacted the 2012-2015 period he identifies. Every study he cites was published before the Claim Period or relies exclusively on data that predates it. Chatterjee Tr. 165:11-19, 167:22-168:16, 170:11-171:16. *Id.* 151:6-23. *Id.* 148:10-13, 149:14-24, 152:5-156:5, 162:14-19, 166:3-12, 171:17-172:18, 173:21-174:8. But repeating over and over that something is does not make it so, and certainly does not establish a reliable factual foundation for an expert opinion. *Mooring Capital Fund, LLC v. Phoenix Cent., Inc.*, 2009 WL 4263359 at *5 (W.D. Okla. Feb. 12, 2009), *aff'd*, 388 Fed. Appx. 814 (10th Cir. 2010) ("[I]t is clear that an expert's opinions are

4

not admissible merely because the expert says, in effect, 'trust me, I know.'") (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Murphy-Sims v. Owners Ins. Co.*, 2018 WL 8838811, at *6 (D. Colo. Feb. 27, 2018) (excluding "a clear [] example of *ipse dixit*").

In fact, the undisputed evidence shows that "fake" *music* files did *not* persist into the Claim Period. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Gould Ex. 5, 23:10-24:2 (Apr. 29, 2021 30(b)(6) Dep. of D. Benjamin ("Benjamin Tr.")); Gould Ex. 6, 156:10-17 (May 5, 2021 30(b)(6) Dep. of D. Jang ("Jang Tr.")); Gould Ex. 7, 214:22-215:4 (May 21, 2021 30(b)(6) Dep. of C. Bell). Dr. Chatterjee has no basis to extrapolate from pre-2012 studies to show the prevalence of "fake" music files during the Claim Period.

Relatedly, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Chatterjee Rept. ¶ 74. The studies he cites show that malware publishers primarily published "fake" *software*, not music files. *See* Gould Ex. 8, 4.1 (Cuevas, et al., "Is Content Publishing in BitTorrent Altruistic or Profit-Driven?").

*Third*, Dr. Chatterjee's opinion is neither reliable nor relevant because he conflates different issues regarding "fake" files as if they were a single phenomenon. But they are not, and his testimony will confuse rather than assist the jury. There are different ways a file can be "fake," different reasons "fake" files may circulate on a P2P network, and different kinds of "fake" files are accounted for in different ways by MarkMonitor's system. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5



*See* Chatterjee Rept. ¶¶ 73, 85.

The occurrence of "fake" files also provides no basis for conclusions on how "fake" music files, or "fake" files generally, affected MarkMonitor's reliability. Yet that is precisely what Dr. Chatterjee does. *Id.* ¶¶ 73-74, 85, 95 (referencing at least six different kinds of "fakes" or pollution, including decoys, spoofing, metadata pollution, content pollution, index poisoning, and index falsification). His opinion is like assuming all types of cancer are the same, and the prevalence of kidney cancer is a basis to draw conclusions about the prevalence of lung cancer.

*Fourth*, and critically, Dr. Chatterjee did not perform any analysis of the various phenomena identified in the studies to apply them to *this* case. *See Arista Records LLC v. Lime Group LLC*, 2011 WL 1674796, at *10 (S.D.N.Y. May 2, 2011) (excluding opinion where expert's "failure to perform any independent analysis results in an opinion that is only a summary of what other experts have said, without application of his own expertise"). While he opines that  Chatterjee Rept. ¶ 103, he does *no* analysis to estimate the prevalence of these phenomena. Chatterjee Tr. 148:14-149:13, 173:18-20. *Id.* 139:17-141:8. The jury cannot weigh the import of his testimony—indeed, it would be

6

misleading—███

**II. Dr. Chatterjee's opinion that the files on the MarkMonitor Hard Drive are not "referenced" in the notices will mislead the jury.**

███

███ Gould Decl. Ex. 9 ¶¶ 54-60 (May 27, 2021 Expert Report of Kristofer Buchan). ███

Despite conceding the reliability of hash technology, ███ Chatterjee Rebuttal ¶ 32 (internal quotes omitted). This opinion should be excluded because it relies on claims that are irrelevant, mathematically impossible, or based on unreliable assumptions.

*First*, Dr. Chatterjee argues that the files on the MarkMonitor Hard Drive are ███ Chatterjee Rebuttal ¶¶ 32, 37. He also

contends that ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████ *Id.* ¶ 32. These points are irrelevant: *how* the files on the Hard Drive were selected does not bear on *whether* Plaintiffs' notices reference those files or not. Similarly, *how* files were selected for Mr. Geluso's review says nothing about *whether* the files Mr. Geluso concluded are matches actually *are* matches.

    *Second*, Dr. Chatterjee notes that, ████████████████████████████

████████████████████████████████████████████████████████████ *Id.* ¶ 35. Again, this is irrelevant. That Plaintiffs' notices reference files that are *not* on the hard drive says nothing about whether files that *are* on the hard drive relate to Plaintiffs' notices.

    *Third*, Dr. Chatterjee opines that ██████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████ *Id.* ¶¶ 40-41. He bases this opinion on another expert's finding that, ██████████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.* ¶ 40.

    This opinion is irrelevant and unreliable because the files on the MarkMonitor Hard Drive do not just have the same "metadata" (*i.e.*, descriptive information, such as filename, date, etc.) as the files downloaded in 2012-2015 and submitted to Audible Magic; they have the same *hash values—i.e.*, an immutable, deterministic representation of the file's contents. *See supra* n.2. Dr. Chatterjee confirms the properties and uses of hash algorithms. A cryptographic hash algorithm takes as an input a digital file and outputs a fixed-length value called a "hash value." Chatterjee Tr. 79:2-13. The file input to a hash algorithm will always result in the same hash value. *Id.* 79:14-80:2. Conversely, if two files vary by even one bit, their hash values will be



8

different, *id.* 83:17-84:4, and thus a hash value may be used as a fingerprint for the contents of a file. *Id.* 43:22-44:2. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Frederiksen-Cross Decl. ¶ 14. ▬▬▬▬▬▬▬▬ Chatterjee Tr. 230:16-19.

Against this undisputed technological backdrop, Dr. Chatterjee cannot explain how files with identical hash values can have different contents. They cannot; it is mathematically impossible. His unfounded speculation about the prevalence of fake files or missing source code is no answer. Dr. Chatterjee has no basis to question that, where the hash of a file on the MarkMonitor Hard Drive matches the hash contained in a notice, that file "relates to" that notice.

*Fourth*, despite arriving at an impossible result, Dr. Chatterjee fails to question his assumptions. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Chatterjee Rebuttal ¶ 39. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Gould Ex. 10 112:5-17 (Jan. 22, 2021 30(b)(6) Dep. of V. Ikezoye ("Ikezoye Tr.")); Chatterjee Rept. ¶ 131. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ikezoye Tr. 203:15-21.

**III.   Dr. Chatterjee's opinion that MarkMonitor did not verify files referenced in Plaintiffs' notices to Charter should be excluded or limited.**

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

There are two fatal flaws with this analysis. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

Gould Ex. 11 78:1-21, 227:25-228:4 (Oct. 12, 2021 Dep. of Karl Snow, Ph.D.). Dr. Chatterjee did not conduct this analysis and cannot assign meaning to it that Dr. Snow expressly disclaimed.

*Second*, ████████████████████████████

████████████████████████████████████████

████████████████████████████████

Chatterjee Rept. ¶ 327. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

10

But there is no need to speculate. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ikezoye Tr. 210:16-211:1; *see also Rimbert v. Eli Lilly & Co.*, 2009 WL 2208570, at *20 (D.N.M. July 21, 2009) ("A methodology that inexplicably ignores material facts and relies only on selective evidence does not lead to a reliable opinion."), *aff'd*, 647 F.3d 1247 (10th Cir. 2011).

### IV. Dr. Chatterjee's opinion that MarkMonitor and Audible Magic cannot identify specific recordings should be excluded.

Dr. Chatterjee's opinion that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬ Chatterjee Rept. ¶¶ 344-355, requires music industry expertise that Dr. Chatterjee lacks and relies on unreliable assumptions. It should therefore be excluded.

Audible Magic is an audio content identification service that takes (i) digital "fingerprints" of unknown files and compares them to (ii) a fingerprint reference database of known copyrighted content provided copyright holders. Where there is a match, Audible Magic identifies the sound recording contained in the unknown file. Ikezoye Tr. 45:7-25.

In the music industry, an International Sound Recording Code ("ISRC") is assigned as an identifier to all sound recordings. Typically, an ISRC is associated with Audible Magic's reference fingerprints. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

11

Understanding the meaning of matches to multiple ISRCs requires expertise on how record labels release sound recordings and assign ISRCs. Dr. Chatterjee has no expertise in this area. He has never worked for a record label or trade association, Chatterjee Tr. 217:18-23, has no prior knowledge or information regarding how record labels assign ISRCs to sound recordings, *id.* 217:24-218:6, and has no experience working with music content identification technology. *Id.* 44:13-46:19. His lack of relevant expertise causes him to make basic mistakes that illustrate the unreliability of his opinions.

*First*, Dr. Chatterjee incorrectly assumes that, when an unknown recording matches to multiple ISRCs, each ISRC necessarily represents a different sound recording. In fact, one sound recording may be associated with multiple, unique ISRCs. Ikezoye Tr. 64:10-24; Gould Ex. 12 267:7-268:12 (May 25, 2021 30(b)(6) Dep. of W. Leak ("Leak Tr.")). Further, a sound recording is often released multiple times in different formats, such as a single version, album version (which may be somewhat longer), or a "radio edit" (which may be a shortened version to accommodate radio station airplay length preferences). These all contain, indisputably, the same sound recording, notwithstanding that, for example, one version (or ISRC) might be shorter than another. Leak Tr. 255:1-256:4. Thus, the problem of an "ambiguous" match Dr. Chatterjee hypothesizes does not exist.

*Second*,  Chatterjee Rept. ¶¶ 346-47. Chatterjee Tr. 222:2-5. He misunderstands the meaning of a match.

12



Chatterjee Tr. 223:17-224:7.

**V. Dr. Chatterjee conducted no analysis on Plaintiffs' use of P2P networks and has no qualifications to do so, yet improperly summarizes and vouches for facts on the issue.**

Dr. Chatterjee purports to opine on how Plaintiffs used BitTorrent beneficially for distribution of music, but fails to conduct any analysis; instead, he simply parrots the words of Matt Mason, the former Chief Content Officer of BitTorrent, Inc. Dr. Chatterjee's "opinion" should be excluded because it amounts to improper vouching for fact evidence, on which he lacks relevant expertise to opine in any event.

Dr. Chatterjee opines that

13

Chatterjee Rebuttal ¶ 15. In support, he summarizes an open letter written by Mr. Mason and Mr. Mason's deposition testimony. *Id.* ¶¶ 15-20. Dr. Chatterjee accepts Mr. Mason's representations uncritically, without conducting any analysis of Mr. Mason's statements or acknowledging contradictory evidence in the record. For example, Dr. Chatterjee:



These summaries are not expert opinion based on specialized knowledge and training, but rather "unfair vouching" for fact evidence. *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018) (excluding expert's summary of facts because "[a]llowing [expert] to do so would amount to no more than an unfair vouching of evidence."). If Charter wants to present evidence from Mr. Mason, it should call him at trial. But Dr. Chatterjee should not be permitted to present Mr. Mason's lay testimony with the stamp of expertise, on issues for which Dr. Chatterjee has no expertise.

## CONCLUSION

For the reasons explained above, the Court should exclude Dr. Chatterjee's opinions (i) concerning "fake" files or "pollution," (ii) that the files on the MarkMonitor Hard Drive are not "referenced" in Plaintiffs' notices, (iii) that MarkMonitor did not verify files before sending notices, (iv) that MarkMonitor and Audible Magic cannot identify specific recordings, and (v) that Plaintiffs have beneficially used P2P networks to distribute music.

Dated: November 15, 2021

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

Respectfully submitted,

*/s/ Jeffrey M. Gould*
Matthew J. Oppenheim
Jeffrey M. Gould
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 7.1(A) CERTIFICATION

The parties conferred by phone on November 10, 2021 regarding the issues raised by this motion and could not reach agreement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically using the CM/ECF system.

*/s/ Jeffrey M. Gould*

15