# Exhibit 7

# Exhibit XXXVII

```
                                                          Page 1
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLORADO
 3
 4    WARNER RECORDS, INC., et   )
      al.,                       )
 5                               )
                Plaintiffs,      )
 6                               )
      vs.                        )         Case No.
 7                               )  1:19-cv-00874-RBJ-MEH
      CHARTER COMMUNICATIONS,    )
 8    INC.,                      )
                                 )
 9              Defendant.       )
10
11
12        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
13              REMOTE VIDEOTAPED DEPOSITION OF
14                    KARL N. SNOW, Ph.D.
15
16
17    DATE:       October 12, 2021
18    TIME:       9:05 a.m. (Eastern)
19    PLACE:      Veritext Virtual Videoconference
20
21
22
23
24    JOB NO.:      MW 4844439
      PAGES:        1 to 248
25    REPORTED BY:  Merilee Johnson, RDR, CRR, CRC, RSA
```

Page 22

1 was unreliable and therefore exclude.
2    Q.  Has a court ever held that your opinion was
3 contrary to law?
4    A.  Yes.  I was -- that's -- often in my line
5 of work that I am asked to make certain legal
6 assumptions based on instructions from counsel and
7 sometimes the court has ruled that those legal
8 instructions were not in -- didn't comport with the
9 court's determination of the law and, hence, that
10 impacted my analysis.
11    Q.  In what subject areas are you claiming to
12 have relevant expertise in this case?
13    A.  I am -- my expertise is, broadly speaking,
14 in the analysis of data.  And specifically they're
15 listed in A.2 of my curriculum vitae, you know,
16 sort of -- statistical and econometric analysis,
17 which is sort of more just broad data analysis, and
18 then I have expertise in various areas related to
19 financial economics.
20    Q.  By training and profession, you are not a
21 computer scientist, correct?
22    A.  I am -- have been trained and at one point
23 was a very good computer programmer, but I am not a
24 computer science -- I am not offering opinions
25 about computer science in this matter.

Page 23

1    Q.  And you're not offering any expert opinions
2 related to the technological functioning of
3 peer-to-peer networks, are you?
4    A.  No, I am not.  I have a -- I have a rough
5 understanding of those, but I'm not offering
6 opinions about that.
7    Q.  And you are not offering any expert
8 opinions related to cryptography in this matter,
9 correct?
10    A.  No, I am not.
11    Q.  And specifically, you are not offering any
12 opinions relating to cryptographic hashes, correct?
13    A.  Correct, I am not.
14    Q.  And you are not offering any expert
15 opinions related to antipiracy monitoring and
16 detection, correct?
17    A.  Well, I don't know exactly what that means.
18 My analysis has implications for that, so I am
19 offering opinions about the data associated with
20 monitoring.  That's as much as I think I can answer
21 you.
22    Q.  You're not offering any opinions on the
23 validity or invalidity of any antipiracy detection
24 technologies?
25    A.  No, I am not.  I am offering opinions,

Page 24

1 however, on consistency of data across those
2 technologies.
3    Q.  You are not offering any opinions on how
4 those technologies work?
5    A.  No, I am not offering opinions on how they
6 work.  I am offering opinions on the data that has
7 been produced by those technologies.
8    Q.  And you're not offering any expert opinions
9 in this case related to audio content
10 identification technology?
11    A.  No --
12         MS. ROSE:  Objection to the form.
13         THE WITNESS:  I'm sorry.
14         MS. ROSE:  I'm going to put one in
15 before.
16         THE WITNESS:  Okay.
17         MS. ROSE:  Objection to the form of the
18 question.
19 BY MR. MILLER:
20    Q.  And you have no significant expertise
21 related to audio engineering?
22    A.  No, I --
23         MS. ROSE:  Objection to the form of the
24 question.
25    A.  No, I am not an audio engineer.

Page 25

1    Q.  You're also not offering any expert
2 opinions in this case related to critical
3 listening?
4    A.  No, I am not.
5    Q.  And you are not offering any expert
6 opinions in this case related to waveform or
7 spectral analysis or any other forms of sound
8 recording audio analysis?
9    A.  No, I am not.
10    Q.  While you have a professional background in
11 finance and economics, you're not offering any
12 expert opinions in this case related to the
13 economics of the music industry?
14    A.  No, I am not.
15    Q.  And you are not offering any expert
16 opinions in this case related to the economics of
17 the Internet service providers?
18    A.  No, I am not.
19    Q.  You are not offering any expert opinions in
20 this case on any harm plaintiffs suffered as a
21 result of any infringement on Charter's network?
22    A.  As I think I've made very clear in my
23 report, I am not offering an opinion on what
24 constitutes infringement.  So therefore, I'm not
25 offering any opinion on what harm, you know, may or

Page 42

8    Q. I understand that's how you defined a
9  duplicate notice in terms of your report. Do
10  you -- is it your view that your use of the term
11  "duplicate" as you use it to define duplicate
12  notices is consistent with the standard meaning of
13  duplicate in ordinary English?
14        MS. ROSE: Objection to the form of the
15  question.
16    A. I don't believe there's a standard meaning.
17  And I don't believe especially that there's a
18  standard meaning in terms of data. Things can be
19  duplicates on some dimensions and not on other
20  dimensions.
21    Q. You don't think there's a conventional --
22  conventionally understood meaning of what a
23  duplicate is?
24    A. Yes, I do.
25    Q. And what -- what is your understanding of

Page 43

1  what a -- of what that conventionally understood
2  meaning of duplicate is?
3    A. It is the same -- it means that something
4  is the same along certain dimensions. I can make a
5  copy on a copy machine, and then an hour later make
6  a copy of the exact same thing. In standard
7  language, we would consider that duplicate, even
8  though the copies were made at different points in
9  time.
10       So I think even in standard English terms,
11  we know what we're talking about, that that copy
12  made from the copy machine has the same information
13  although it may not have been created at the exact
14  same time.

25    A. One, from counsel; two, from the reports





| | Page 50 |
|---|---|
| 11 | (Exhibit No. 303 was marked for |
| 12 | identification.) |
| 13 | Q. Show you what I've marked as Exhibit 303. |
| 14 | A. Okay. So I should get out of Exhibit 301? |
| 15 | Q. Yes. |
| 16 | A. Okay. I need to refresh so you'll need to |
| 17 | give me a second. |
| 18 | Q. For the record, what I have marked as |
| 19 | Plaintiffs' Exhibit 303 are excerpts from |
| 20 | plaintiffs' notice data which has the Bates number |
| 21 | PL_CH_0003188. These are excerpts of the notices |
| 22 | for three IP addresses. |
| 23 | MS. ROSE: Counsel, before we start |
| 24 | questioning on this, has this been -- has this |
| 25 | document or the data in this document been filtered |

Page 51
1  in any way or are there any sort of actions taken
2  on it or is it just like a pure excerpt with
3  nothing else done?
4       MR. MILLER: We've pulled the -- all
5  the notices for three IP addresses which are then
6  grouped -- there's one IP address on each tab. And
7  I believe certain rows have been highlighted, but
8  other than that, there's been no further analysis
9  done or --
10      MS. ROSE: Okay. Nothing -- no hidden
11 rows, hidden anything or --
12      MR. MILLER: Not that I'm aware of, no.
13      THE WITNESS: It doesn't appear that
14 there's -- I mean, they appear to be excerpted
15 lines from plaintiffs' notice data. Is that what
16 you're representing that they are?
17      MR. MILLER: Oh, you know what? This
18 has additional information in it that's from --
19 I'll need to -- yeah, you can take that down. I
20 need to remove some things from this exhibit.
21      THE WITNESS: Okay.
22      MR. MILLER: We can come back to it
23 later.
24      THE WITNESS: So can I get back into
25 Exhibit 300 for the moment?

Page 52
1       MR. MILLER: Yes.
2  BY MR. MILLER:
3       Q. Dr. Snow, are you aware of what a dynamic
4  IP address is?
5       A. Roughly speaking, yes.
6       Q. What is your understanding of what a
7  dynamic IP address is?
8       A. Well, that the IP address, you know, can be
9  assigned to -- you know, can -- for a given user
10 can sort of change over time.
11      Q. So at different points in time -- strike
12 that.
13      And under a -- on a network that uses
14 dynamic IP addresses, IP addresses can be recycled,
15 correct?
16      A. Correct.
17      MS. ROSE: Objection --
18      THE WITNESS: Oh, sorry.
19      MS. ROSE: Objection to the form of the
20 question.
21      That's okay.
22 BY MR. MILLER:
23      Q. So on a network that uses dynamic IP
24 addresses, the same IP address can be associated
25 with different subscribers at different points in

Page 53
1  time, correct?
2       A. Correct.

Veritext Legal Solutions

www.veritext.com                                      888-391-3376

Page 46

16       MR. MILLER: Ms. Rose, we would call
17 for the -- not would. We call for the disclosure
18 of the emails -- the Bates numbers of the emails
19 that were shown to Mr. Snow by counsel and that
20 he's relying on for his testimony here.
21       MS. ROSE: I hear your request and will
22 consider it. Thank you.
23       THE WITNESS: If this is a good point,
24 could we take a five-minute break or so?
25       MR. MILLER: Sure.

Page 47

1       THE VIDEOGRAPHER: Time is 10:09 a.m.
2 Eastern District Time on October 12, 2021. We are
3 now off the record.
4       (Break: 10:09 a.m. to 10:24 a.m.)
5       THE VIDEOGRAPHER: Time is currently
6 10:24 Eastern District Time October 12, 2021. We
7 are back on the record. You may proceed.
8 BY MR. MILLER:
9   Q. Dr. Snow, you are not expressing any
10 opinion regarding the action or inaction by the
11 subscriber that the duplicative notices represent?
12   A. Correct, I am not offering any opinion on
13 that.

Page 48

5   Q. Dr. Snow, if I make a copy of a piece of
6 paper and four hours later I make another copy,
7 have I made one copy or two copies?
8   A. That depends. I mean, some people would
9 say you've made one copy of the original. Some
10 people would say you now have two copies of the
11 same thing. You know, both would get used.
12   Q. Your definition of duplicative notices is
13 any notice with the same -- strike that.
14      How could that -- if you make one copy at
15 12:00 and another copy at 4:00, don't you have two
16 physical copies at the end?
17   A. I guess maybe I'm not understanding your
18 hypothetical. Are you saying we have something
19 created at noon and then a copy made at 1:00 and
20 then another copy made at 4:00? Is that the
21 hypothetical?
22   Q. I'm saying take your document -- you have
23 your document. You make a copy of that document at
24 noon, and then at 4 o'clock you make another copy
25 of that document. Do you now have -- how many

Page 49

1 copies of that document do you have now?
2   A. You --
3      MS. ROSE: Objection to the form of the
4 question.
5      You may answer.
6   A. You have two copies of the original as I
7 understand your hypothetical.



13 (Pages 46 - 49)



















Page 238

14  Q. Could you please pull up in your Marked
15  Exhibits folders -- your Marked Exhibit folder what
16  I'm introducing as Plaintiffs' Exhibit 308.
17      (Exhibit No. 308 was marked for
18      identification.)
19      MR. MILLER: This is the document I
20  tried to pull up earlier and had the wrong version
21  of.
22  BY MR. MILLER:

Page 239

 6      MS. ROSE: And, Counsel, all the
 7  representations you made earlier about this -- the
 8  file and that it's been excerpted and that there's
 9  no hidden anything are all still pertaining to this
10  document?
11      MR. MILLER: Yes.
12  BY MR. MILLER:

Page 240

Page 241

61 (Pages 238 - 241)



Page 242

Page 243

11 Q. Well, but then --
12 MS. ROSE: Counsel -- Counsel, your
13 time is up. You're over a minute over. So . . .
14 BY MR. MILLER:
15 Q. But you do an analysis --
16 MR. MILLER: I just have one -- I just
17 want to close out this --
18 MS. ROSE: Okay. Well --
19 MR. MILLER: -- line of questioning.
20 Then --
21 MS. ROSE: Okay. One more question.
22 MR. MILLER: Okay.
23 BY MR. MILLER:

Page 244

3 MS. ROSE: Objection to the form of the
4 question. Okay. We're done.
5 MR. MILLER: Thank you.
6 MS. ROSE: I have one question for
7 the --
8 (Simultaneous crosstalk.)
9 MS. ROSE: Still on the record. I have
10 one question for the witness on redirect.
11 EXAMINATION
12 BY MS. ROSE:

Page 245

11 THE VIDEOGRAPHER: Any follow-up to
12 that question, Counsel?
13 MR. MILLER: I'm thinking.
14 FURTHER EXAMINATION
15 BY MR. MILLER:

Page 246

13  MS. ROSE: Sorry. Is this -- this
14  seems -- this seems to be beyond the scope of my --
15  MR. MILLER: It's not. Just let me ask
16  the questions.
17  MS. ROSE: Okay.
18  BY MR. MILLER:

Page 247

10  Q. Okay. Thank you for your time today,
11  Dr. Snow.
12  A. Thank you.
13  THE VIDEOGRAPHER: Off the record then.
14  This concludes today's deposition of Dr. Karl Snow.
15  Time is 6:31 p.m. on October 12, 2021. We are now
16  off the record.
17  (Time Noted: 6:31 p.m.,
18  October 12, 2021.)
19  - - -
20
21
22
23
24
25

Page 248

1  REPORTER'S CERTIFICATE
2  STATE OF MINNESOTA  )
3           ) ss.
   COUNTY OF HENNEPIN  )
4
   I hereby certify that I reported the remote
5  videotaped deposition of KARL N. SNOW, Ph.D., on
   October 12, 2021, via Veritext Virtual
6  Videoconference, and that the witness was by me
   first duly affirmed to tell the whole truth;
7
   That the testimony was transcribed by me and
8  is a true record of the testimony of the witness;
9  That the cost of the original has been
   charged to the party who noticed the deposition,
10 and that all parties who ordered copies have been
   charged at the same rate for such copies;
11
   That I am not a relative or employee or
12 attorney or counsel of any of the parties, or a
   relative or employee of such attorney or counsel;
13
   That I am not financially interested in the
14 action and have no contract with the parties,
   attorneys, or persons with an interest in the
15 action that affects or has a substantial tendency
   to affect my impartiality;
16
   That the right to read and sign the
17 deposition by the witness was not addressed.
18
   WITNESS MY HAND AND SEAL THIS 14th day of
19 October, 2021.
20
21
22
23
24  Merilee Johnson, RDR, CRR, CRC, RSA
    Notary Public, Hennepin County, Minnesota
25  My commission expires January 31, 2026