# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC. et al.,

      Plaintiffs,

                                                   ***HEARING REQUESTED***

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

---

**PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

---

      Plaintiffs respectfully move the Court for sanctions to address two separate instances in which Charter spoliated critical documents and data.

*First*, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. ████████████████████████████████████████████████████████████████████████████████████████████████████████ establishes that Charter acted with the intent to deprive Plaintiffs of this critical information.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Charter has deprived Plaintiffs of critical evidence directly relevant to, among other things, Charter's knowledge that its subscribers were repeatedly engaging in copyright infringement and what Charter said internally about infringement notices that it received. To cure this prejudice, the Court should (1) preclude Charter from arguing at trial that it lacked knowledge regarding the accuracy or reliability of Plaintiffs' notices, (2) instruct the jury that Charter spoliated documents, and (3) instruct the jury that the evidence Charter destroyed would have been unfavorable to Charter.

*Second*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.



. After receiving third parties' claims that Charter failed to terminate repeat infringers, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

As a result, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This materially prejudices Plaintiffs' ability to identify and quantify the repeat infringers on Charter's network and, for each, how many notices Charter received about them (both from Plaintiffs and from other rightsholders), and how much revenue Charter generated by not terminating their accounts. To cure this prejudice, the Court should (1) preclude Charter from disputing the accuracy of Plaintiffs' identification of repeat infringers using IP addresses, (2) preclude Charter from disputing the propriety of using billing data and

2

third-party ticket data that Charter produced for identified subscribers to extrapolate information about unidentified subscribers, and (3) instruct the jury that Charter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

## FACTUAL BACKGROUND

**I.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

On March 23, 2016, Plaintiff Universal Music Group sent Charter a letter putting Charter on notice of Plaintiffs' claims. Ex. 1;[1] Ex. 2 at 223:24-224:23. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 3; Ex. 2 at 226:6-15.

Charter now claims that it did not do so because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including Plaintiffs.'. Ex. 2 at 226:8-12; Ex 4 at 151:21-153:6, 160:14-161:6, 266:18-267:1; Ex. 5; Ex. 6. But there is not a single Charter document indicating that, prior to the discovery of the data loss at issue here, anyone thought that to be true. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3.

Consistent with the fact that Charter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



---

[1] All exhibits cited are exhibits to the Declaration of Corey Miller in Support of Plaintiffs' Motion for Spoliation Sanctions.

3

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 4 at 50:25-51:22; Ex. 7 414:9-18. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 7 at 414:9-18. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 8; Ex. 4 at 209:9-20. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 7 at 355:5-8; 358:5-9.

Plaintiffs filed their complaint in March 2019 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 9. For example, in June 2019, Charter represented to the Court that "[t]he parties have instituted electronic litigation holds in order to preserve electronically stored information," Joint Proposed Scheduling Order at 6 (ECF No. 42), without mentioning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. And Charter never mentioned its ▓▓▓▓▓▓▓▓ at multiple discovery hearings regarding its efforts to collect and produce documents. *See* Ex. 10 at 63:10-64:3, 67:8-68:15, 79:2-10; Ex. 11 at 71:25-73:18, 91:9-22, 131:15-132:25.

During merits discovery, Charter searched the emails of ▓ current and former Charter employees (the "Custodians") for relevant documents. Miller Decl. ¶ 4 and Ex. 34.[2] 24 of the

---

[2] Exhibit 34 is a chart showing which Custodians: (i) were included in Charter's First Amended Initial Disclosures; (ii) were members of Charter's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; (iii) had documents preserved under the ▓▓▓▓▓▓▓▓▓▓▓▓; (iv) had documents from the Claim Period preserved under ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (v) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and (vi) documents from the Claim Period have been preserved. Miller Decl. ¶ 4. A Custodian had documents from the Claim Preserved only if that Custodian was on an active hold in ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).

4

Custodians were never subject to the ▮▮▮▮ at all. *Id*. Of these, ▮▮▮▮

▮▮▮▮

▮▮▮▮ *Id*. ▮▮▮▮

▮▮▮▮. *Id*. In sum, Charter ▮▮▮▮. *Id*. The employees ▮▮▮▮ include some of Charter's most important witnesses:

- **Mary Haynes**, who oversaw the department responsible for handling DMCA notices and who was Charter's principal 30(b)(6) witness, covering 43 topics;
- **Tammy Stewart**, who managed the day-to-day operations of the Charter team responsible for handling DMCA notices; and
- **Adam Taylor**, **Philip Jones**, and **Timothy Brockel**, who were members of the Charter team responsible for handling DMCA notices.

## II. Charter deleted ▮▮▮▮ after Plaintiffs sent their demand letters.

▮▮▮▮

▮▮▮▮

▮▮▮▮.

In ▮▮▮▮ after receiving letters from four copyrights owners, none of whom are plaintiffs in this case, asserting claims against Charter for copyright infringement. Ex. 12. The letters stated that the rightsholders, working with the antipiracy vendor Digital Rights Corp., had identified numerous instances of repeat infringers distributing copyrighted content on Charter's network. *Id*.

To operate CATS, Charter IT personnel relied on the "▮▮▮▮

▮▮▮▮ Ex. 13 127:18-129:8, 129:23-130:2; Ex. 14 44:5-46:11. On June 15, 2012, Charter revised the ▮▮▮▮

▮▮▮▮

5

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ Ex. 15 at 210; Ex. 14 at 98:11-16. █████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████ Ex.

15 at 210-11; Ex. 14 at 101:19-102:22; Ex. 16 365:3-22, 366:14-369:8.

████████████████████████████████. Charter admitted that it ████████

███████████████████████████████." Ex. 17 at 7. █████████

███████████████████████████████████████████████

████████████████████████████████████████ Ex. 3 at 5.

Charter has identified no such formal resolution or judgment. ██████████████

████████████████████████████ *Id.* at 5. Charter ████████████

████████████████. Ex. 17 at 7.

    Correspondingly, Charter never removed ████████████████████

████. A Charter employee responsible for ████████████████████████

████████████████████ Ex. 14 at 46:17-23, and ████████████

███████████████████████████████████████████████

████████████████████████████. Ex. 15 at 210. Charter objected to

producing ████████████████████████. Ex. 18 at 6, ¶ 24.

    Charter's records show that ██████████████████████████

███████████████████████████████████████████████

6



███████████[3] ██████████████████████████████
████████████████████████████████████████
██████████ Ex. 19; Ex. 4 at 222:16-21, 223:5-224:1, 243:13-24. ████████
████████████████████████████████████
████████████████████████████████████
█████. Ex. 20; *see also* Ex. 4 at 258:3-259:8. ████████████
████████████████████████████████████
████ Ex. 21.

Despite all this, ████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████d.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide two different remedies for spoliation of electronically stored information. Under Rule 37(e)(1), the Court may sanction a party where: (1) that party failed to preserve electronically stored information it should have preserved, (2) the loss occurred because that "party failed to take reasonable steps to preserve it," (3) the information "cannot be restored or replaced through additional discovery," and (4) there is "prejudice to another party from the loss of the information." Fed. R. Civ. P. 37(e)(1). Upon such findings, the Court "may order measures no greater than necessary to cure the prejudice."

---

[3] Three Custodians' emails—Laurie Rowlett, Laurie Wood, and Matthew Nelson—escaped destruction only because the 2012 Rightscorp Hold preserved them. Ex. 33.

7

*Id.* Rule 37(e)(2) creates a separate remedy: if "the party acted with the intent to deprive another party of the information's use in the litigation," the Court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

## ARGUMENT

**I.    Charter has prejudiced Plaintiffs by deleting emails it needed to preserve.**

**A. Charter acted with intent to deprive Plaintiffs of relevant information.**

Upon receiving Plaintiffs' claim letter in March 2016, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 3 at 3-4. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex.4 at 83:7-16.

There is *zero* contemporaneous evidence to support Charter's claim that it ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ By its terms, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." Ex. 6. Similarly, ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 22. ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 3. Thus, no one reviewing Charter's records could know that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 2 at 208:5-9 ("Q. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

8

▓▓▓▓▓▓▓▓▓▓ Further, Charter's actions to ▓▓▓▓▓▓▓▓▓▓

In 2019, after Plaintiffs filed suit, Charter attempted to cover its tracks: ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓ Ex. 23; Ex. 4 at 286:5-15. Of course, this is wrong; Plaintiffs' claims do not relate to Charles Mingus and/or Rightscorp, Inc.'s copyrights. The only reason to include this false statement in the ▓▓▓▓▓▓ was to create the appearance—after the fact—that the ▓▓▓▓▓▓ applied to Plaintiffs' claims. But were that the case, there would have been no need to revise the ▓▓▓▓▓▓ language when reissuing it.

The sole basis for Charter's claim that the ▓▓▓▓▓▓▓▓▓▓ —that when Charter implemented the ▓▓▓▓▓▓▓▓▓▓ . Ex. 2 at 206:14-207:12. This self-serving testimony, contrary to the entire documentary record, is not credible. *See United States v. Wilhite*, 2017 WL 4572321, at *4 (D. Colo. Oct. 13, 2017) (finding self-serving testimony non-credible when contradicted by substantial evidence), *aff'd* 774 Fed. Appx. 478 (10th Cir. 2019); *Venturi Jet Sets, Inc. v. Custom Molded Prod., Inc.*, 2016 WL 6871483, at *2 (D. Utah July 27, 2016) (same).

9

Charter's (i) failure to do anything to preserve relevant information in response to Plaintiffs' claims, while knowing it would delete information as a result, (ii) concealment of the deletion from Plaintiffs and the Court for a year, and (iii) false testimony regarding whether a hold had ever been implemented, establishes that Charter acted with intent to deprive Plaintiffs of the use of the information. *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (finding intent to deprive where, "[w]hile knowing they had a duty to preserve . . . defendants allowed the original data . . . to be overwritten, and destroyed . . . ."); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (intentional failure to take steps necessary to preserve relevant evidence "satisfies the requisite level of intent required by [Rule] 37(e)"). While a failure to implement a hold, standing alone, may not constitute intent to deprive *per se* in all cases, *see*, *e.g.*, *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (rejecting per se rule but considering failure to implement a hold as a factor), the totality of Charter's actions and attempted cover-up make its intent to deprive obvious. *See, e.g., GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *8 (D. Del. Jul. 12, 2016) (finding bad faith based in part on spoliator's "repeated obfuscation and misrepresentations related to [the spoliator's] email deletion and its investigation of it"); *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 318 (D. Del. 2013) (litigation misconduct weighed toward finding bad faith).

Moreover, even if one accepts the implausible claim that ████████████████ ████████████, Charter necessarily manifested its intent to deprive Plaintiffs of relevant information when it ████████████████████████████████████████████████

████████████████████████████████████████████████

10

███████████████████████████████████████████████████████ Ex. 7 at 364:15-365:12.

### B. By purging data without implementing appropriate safeguards, Charter failed to take reasonable steps to preserve data relevant to Plaintiffs' claims.

Even if Charter did not act with intent to deprive, Charter failed to take reasonable steps to preserve relevant data, as Rule 37 requires. Even if Charter relied on the ███████ ███████████████████████████████████████████████████████ ███████████████. *See supra* at 8-9. Moreover, the ███████████████████ ██████████. Ex. 34. Charter's own Initial Disclosures identified ███████████████ ███████████████████. *Id.* ███████████████████████████████████ ███████████████████████████, nor the Charter executives responsible for managing the ███████████████████████████████████████ *Id.*; *see supra* n. 2.

Charter also knew in advance that its ███████████████████████████████ ███████████████████. At the beginning of the process, a ███████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████" Ex. 24 (emphasis added). Similarly, prior to the deletion, a Charter employee wrote a memo describing ███████████████████████████████ ███████████████████████████████████████████████. Ex. 25. █ ███████████████████████████████████████████████████████, yet it proceeded anyway.

11

### C. Charter's destruction of relevant data has prejudiced Plaintiffs and requires sanctions to cure that prejudice.

There can be no doubt that Charter's ▬▬▬▬▬▬ has prejudiced Plaintiffs. Contemporaneous emails from Charter employees responsible for handling infringement notices would uniquely reflect what Charter actually thought and said about the infringement notices that it received. *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 303 (4th Cir. 2018) (relying on defendant's emails to affirm rejection of DMCA safe-harbor defense); *Sony Music Entm't v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 814, 846 (E.D. Va. June 2, 2020) (upholding verdict on vicarious liability and statutory damages based on defendant's emails); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 754-58, 769-70 (W.D. Tex. 2019) (relying on defendant's emails to reject DMCA safe-harbor defense and deny summary judgment on willfulness).

Charter ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, including some of Charter's most crucial witnesses. *Supra* at 4-5. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬, or between one such Custodian and a non-Custodian, are lost. There is no replacement for these deleted documents. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ has prejudiced Plaintiffs' ability to challenge Charter's witnesses' repeated insistence that Charter took virtually no action in response to infringement notices because it considered the notices to be mere "allegations" of infringement it could not verify. *See, e.g.*, Ex. 26 153:14-22, 161:15-22 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬). Charter destroyed evidence that would show whether Charter believed that at the time, or whether its notices were "just allegations" theory is a *post-hoc* invention.



12

The significant prejudice Charter's spoliation has caused requires redress. Because Charter acted with the intent to deprive, the Court should instruct the jury that the evidence Charter destroyed would have been unfavorable to Charter. Even if the Court finds no intent to deprive, the Court has broad discretion to order sanctions necessary to cure the prejudice. Fed. R. Civ. P. 37. Because Charter destroyed evidence reflecting Charter's contemporaneous views on the accuracy of Plaintiffs' notices, the Court should (i) preclude Charter from arguing at trial that it did not know whether Plaintiffs' notices were accurate or reliable, and (ii) instruct the jury that Charter spoliated relevant emails. This relief is "narrowly tailored" to the prejudice Charter's spoliation has caused. *Ad Astra Recovery Servs., Inc. v. Heath*, 2020 WL 969762, at *8 (D. Kan. Feb. 28, 2020) (holding that deeming facts established for purposes of litigation was narrowly tailored to address prejudice).

## II.  Charter has prejudiced Plaintiffs by ▇▇▇▇▇▇ it needed to preserve.

By not producing the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Charter failed to take reasonable steps to preserve relevant data. Charter was obligated to preserve this data for this litigation, and the evidence shows that Charter was preserving this ▇▇▇▇▇▇▇▇▇▇▇▇ when Plaintiffs sent their first demand letter on March 23, 2016: as of October 13, 2015, the ▇▇▇▇▇▇▇



13



*Supra* at 6-7.

Charter's failure to preserve ▉▉▉▉▉▉▉ for the Claim Period has prejudiced Plaintiffs in at least three ways by preventing them from identifying the subscribers at issue in all of Plaintiffs' infringement notices. Charter produced ▉▉▉▉▉▉▉

▉▉▉▉▉▉▉. Ex. 27 ¶¶ 40-43.

First, Charter's inability to identify subscribers prevented Plaintiffs from determining the extent of repeat infringement at issue. Without subscribers' identities, it is impossible to identify and quantify repeat infringers with perfect accuracy. Plaintiffs' notices contain the subscribers' IP addresses. Plaintiffs' statistical expert, Kristoffer Buchan, analyzed the IP addresses to identify repeat infringers, but because a subscriber's IP address can change over time, this is an imperfect approximation. As he explained, "Charter's failure to failure to provide Subscriber account numbers for RIAA Notices and Tickets inherently causes any resulting conclusions with respect to the scope and magnitude of infringement by Charter customers to be understated." Ex. 27 ¶ 45; *see also* Ex. 28 36:3-19.

Second, Charter's inability to identify subscribers prevented Charter from producing billing data for most of the subscribers identified in Plaintiffs' notices, hindering Plaintiffs' ability to show the revenue Charter earned from (and economic incentive to tolerate) repeat infringers. That is critical to Plaintiffs' vicarious liability claim. Third, Charter produced ▉▉▉▉▉▉▉, but it is impossible to link these tickets to the unidentified subscribers at issue in Plaintiffs' notices. That

14

is consequential: ████████████████████

████████████████████

████████████████████

████████████. 27 ¶¶ 73, 82-83.

This prejudice necessitates sanctions. Because Charter deleted the data necessary to identify the subscribers referenced in Plaintiffs' notices, Charter should be precluded from disputing (i) the accuracy of Plaintiffs' identification of repeat infringers using IP addresses, and (ii) Plaintiffs' use of the billing data and third-party ticket data that Charter produced for identified subscribers to extrapolate information about unidentified subscribers. Finally, the Court should instruct the jury that Charter ████████████.

| Dated: December 3, 2021 | */s/ Matthew J. Oppenheim* |
|---|---|
| Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com | Matthew J. Oppenheim<br>Jeffrey M. Gould<br>Alexander Kaplan<br>Corey Miller<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com |
| Neema T. Sahni<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>nsahni@cov.com | jeff@oandzlaw.com<br>alex@oandzlaw.com<br>corey@oandzlaw.com |

*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 7.1(a) CERTIFICATION

The parties conferred by phone on November 10, 2021 regarding the issues raised by this motion and could not reach agreement.

*/s/ Matthew J. Oppenheim*

15