# PLAINTIFFS' EXHIBIT 3

CONFIDENTIAL

Page 1

1   UNITED STATES DISTRICT COURT
2   FOR THE DISTRICT OF COLORADO
3   Case No. 1:19-cv-00874-RBJ-MEH
4   ------------------------------------------ x
5   WARNER RECORDS INC., et al.,
6                       Plaintiffs,
7        -against-
8   CHARTER COMMUNICATIONS, INC.,
9                       Defendant.
10  ------------------------------------------ x
11
12                September 1, 2021
                  12:01 p.m.
13
14
15                ***CONFIDENTIAL***
16
17        DEPOSITION of ELENI MALTAS, taken
18  pursuant to Notice, held via Zoom, before Fran
19  Insley, a Notary Public of the States of New
20  York and New Jersey.
21
22
23
24
25

CONFIDENTIAL

Page 70

1  Stills have any contracts with any of the
2  plaintiffs in this lawsuit?
3     A.  I'm not aware.
4     Q.  You don't know one way or the other?
5     A.  No.
6     Q.  Okay. Let's take a look at
7  paragraph six. Do you see that it says you are
8  being paid at the rate of $75 an hour?
9     A.  Yes.
10    Q.  Is that the rate you are being paid
11 for your deposition today?
12    A.  Yes.
13    Q.  Is that the rate you are being paid
14 for your deposition preparation?
15    A.  Yes.
16    Q.  Do you have an understanding of who
17 is paying you?
18    A.  Yes.
19    Q.  And who is that?
20    A.  Covington.
21    Q.  Do you know how many total hours you
22 worked on this case?
23    A.  I believe -- I don't know the exact
24 hours off the top of my head right now.
25    Q.  Can you give a range of how many

Page 71

1  hours you worked on this case?
2     A.  About like 300 hours approximately,
3  give or take.
4     Q.  Do you know how much you've been
5  paid for your work in this case?
6     A.  I have to go back and look at the
7  exact numbers but.
8     Q.  Do you know how many hours you spent
9  doing your critical listening analysis?
10    A.  Again, it's a rough estimate off the
11 top of my head. I don't know exact numbers
12 right now.
13    Q.  What would your rough estimate be?
14    A.  Approximately 200 or $300, somewhere
15 in between that range.
16    Q.  And you said you spent somewhere
17 between 10 and 15 hours on your report?
18    A.  Approximately.
19    Q.  How many hours did you spend
20 preparing for today's deposition?
21    A.  About approximately six hours.
22    Q.  How many hours do you spend
23 communicating with others in relation to your
24 work on this case?
25    A.  What are you referring to?

Page 72

1     Q.  I'm referring to your group calls
2  with other Listeners or your conversations with
3  Yi-Wen?
4        MR. HILL:  Objection. Form.
5     A.  I don't know approximate hours for
6  that. I don't know. Probably four or five
7  hours total.
8     Q.  And you are being paid $75 an hour
9  for the time you spend communicating with other
10 listeners, correct?
11    A.  Yes.
12    Q.  Is there any other work on this case
13 that you are being paid for?
14    A.  No.
15    Q.  Do you expect to be doing any
16 additional work on this case after today?
17    A.  No.
18    Q.  We've been going for about an hour,
19 so I think this might be a good time to take a
20 break. Does everyone agree?
21    A.  Sure.
22       MR. HILL:  Sounds good.
23       THE VIDEOGRAPHER:  Thank you. The
24    time is approximately 2:08. We are going
25    off the record.

Page 73

1        (Brief recess taken.)
2        THE VIDEOGRAPHER:  The time is
3    approximately 2:22 p.m. We are back on
4    the record.
5  BY MR. SCHER:
6     Q.  Ms. Maltas, can you please look at
7  paragraph seven of your report, which is
8  Exhibit 2?
9     A.  Yes.
10    Q.  Do you see the first sentence reads,
11 "I was asked to conduct a critical listening
12 analysis to compare two sets of digital files
13 containing recorded music?"
14    A.  Yes.
15    Q.  When were you asked to perform this
16 critical listening analysis?
17    A.  The beginning of spring. Sometime
18 in March I believe.
19    Q.  And that was in 2021?
20    A.  Correct.
21    Q.  Who asked you to perform this
22 analysis?
23    A.  Counsel.
24    Q.  And counsel also provided the two
25 sets of digital files for your analysis,

CONFIDENTIAL

Page 130

1    MR. HILL:  Objection.  Form.
2    A.   I played for them.  So they had
3    access to them.
4    Q.   And then they put them -- strike
5    that.
6         And then Soul in the Horn put these
7    mixes on the profile page they made for you?
8         MR. HILL:  Objection to form.
9    A.   That's what appears here, yes.
10   Q.   Before today did you know that there
11   were mixes on your Soul in the Horn DJ page?
12        MR. HILL:  Objection to form.
13   A.   I was not aware that these were on
14   their page.
15   Q.   Okay.  We have been going for 50
16   minutes.  I think this might be a good time to
17   take a break.
18        THE VIDEOGRAPHER:  Is that okay for
19   everybody?
20        MR. HILL:  That works for me.
21        THE VIDEOGRAPHER:  Thank you.  The
22   time is 4:09.  We are going off the
23   record.
24        (Brief recess taken.)
25        THE VIDEOGRAPHER:  The time is

Page 131

1    approximately 4:23.  We are back on the
2    record.
3         MR. SCHER:  I have no further
4    questions at this time.  Charter reserves
5    our rights subject to the production of
6    any documents.
7         MR. HILL:  Obviously we disagree and
8    our position is that the deposition is
9    closed.  If that is the basis for your
10   Reservation of Rights, I have no redirect.
11        THE VIDEOGRAPHER:  May I close it
12   out for today?
13        MR. HILL:  Yes.
14        MR. SCHER:  Yes.
15        THE VIDEOGRAPHER:  Thank you.  We
16   are off the record at 4:23 p.m. and this
17   concludes today's testimony given by Eleni
18   Maltas.  The total number of media units
19   used is four and will be retained by
20   Veritext Midwest.  Thank you.
21        (Time noted:  4:23 p.m.)
22
23
24
25

Page 132

1
2            C E R T I F I C A T E
3         I, FRAN INSLEY, hereby certify that the
4    Deposition of ELENI MALTAS was held before me
5    on the 1st day of September, 2021; that said
6    witness was duly sworn before the commencement
7    of testimony; that the testimony was taken
8    stenographically by myself and then transcribed
9    by myself; that the party was represented by
10   counsel as appears herein;
11        That the within transcript is a true
12   record of the Deposition of said witness;
13        That I am not connected by blood or
14   marriage with any of the parties; that I am not
15   interested directly or indirectly in the
16   outcome of this matter; that I am not in the
17   employ of any of the counsel.
18        IN WITNESS WHEREOF, I have hereunto set
19   my hand this 7th day of September, 2021.
20
21
                        FRAN INSLEY
22
23
24
25

Page 133

1         Veritext Legal Solutions
              1100 Superior Ave
2                Suite 1820
            Cleveland, Ohio 44114
3            Phone: 216-523-1313
4
     September 7, 2021
5
     To: Mr. Hill
6
     Case Name: Warner Records Inc v. Charter Communications Inc
7
     Veritext Reference Number: 4761751
8
     Witness:  Eleni Maltas       Deposition Date:  9/1/2021
9
10   Dear Sir/Madam:
11
     Enclosed please find a deposition transcript.  Please have the witness
12
     review the transcript and note any changes or corrections on the
13
     included errata sheet, indicating the page, line number, change, and
14
     the reason for the change.  Have the witness' signature notarized and
15
     forward the completed page(s) back to us at the Production address
16   shown
17   above, or email to production-midwest@veritext.com.
18
     If the errata is not returned within thirty days of your receipt of
19
     this letter, the reading and signing will be deemed waived.
20
21   Sincerely,
22   Production Department
23
24
25   NO NOTARY REQUIRED IN CA