# PLAINTIFFS' EXHIBIT 7

Page 1

1   UNITED STATES DISTRICT COURT
2   FOR THE DISTRICT OF COLORADO
3   Case No.: 1:190-cv-000874-RBJ-MEH
4   ------------------------------------x
5   WARNER RECORDS INC., et al.,
6                         Plaintiffs,
7        -against-
8   CHARTER COMMUNICATIONS, INC.
9                         Defendant.
10  ------------------------------------x
11                      September 3, 2021
                        12:13  p.m.
12
13
14
15
16     Remote Video Zoom Deposition of JACOB CHERIFF,
    taken by Defendant, pursuant to Notice, with the
17  Witness located in Brooklyn, New York, before
    William Visconti, a Shorthand Reporter and Notary
18  Public within and for the State of New York.
19
20
21
22
23
24
25

Page 50

1   determine whether a particular file that is
2   shared on or downloaded from a pier-to-pier
3   website is considered infringing?
4       A.   No, I don't believe so.
5       Q.   So are you offering any opinion
6   whether Charter is liable for copyright
7   infringement of any of the works that you
8   listened to?
9       A.   No, I don't believe so.
10      Q.   Will let's take a look at
11  paragraph 6 of your report which is Exhibit 2.
12  Let me know when you're there.
13      A.   Paragraph 6?
14      Q.   Yes.
15      A.   Okay, I'm there.
16      Q.   Do you see it says you're being
17  paid $75 an hour for your critical listening
18  analysis?
19      A.   I do.
20      Q.   Is that the rate that you're also
21  being paid for your deposition today?
22      A.   Correct.
23      Q.   And that is the rate that you're
24  paid for any other work that you have done in
25  connection with this case?

Page 51

1       A.   Correct.
2       Q.   Do you have an understanding of
3   who is paying you?
4       A.   I believe the client, but I'm not
5   sure.
6       Q.   Do you know how many total hours
7   you worked on this case?
8       A.   I'm not sure.
9       Q.   Do you know how much you have been
10  paid in connection with your work in this case?
11      A.   I'm not sure.
12      Q.   Have you been paid in connection
13  with your work in this case?
14      A.   I have.
15      Q.   But you don't know how much?
16      A.   I do not.
17      Q.   Do you know how many hours you
18  spent doing critical listening analysis?
19      A.   I do not.
20      Q.   Was it more than 10 hours?
21      A.   It was more than 10 hours.
22      Q.   Was it more than 100 hours?
23      A.   I believe it was more than 100
24  hours.
25      Q.   Was it more than 200 hours?

Page 52

1       A.   I'm not sure if it was more than
2   200 hours.
3       Q.   Is it fair to say that you spent
4   between 100 and 250 hours doing your critical
5   listening analysis?
6       A.   It may have been more than that
7   many hours, I'm not sure.
8       Q.   Well, if you had to offer a range
9   for how many hours you spent doing your
10  critical listening analysis what would you say?
11           MR. HILL:  Objection, asked and
12      answered.
13      A.   I would guess or approximate
14  somewhere between 2 and 400 hours.
15      Q.   And that was over a seven week
16  span?
17      A.   Correct.
18      Q.   How many hours did you work on
19  preparing your report?
20      A.   I don't remember.
21      Q.   If you had to estimate a range for
22  how many hours you worked on your report what
23  would you say?
24           MR. HILL:  Objection, asked and
25      answered.

Page 53

1       A.   I don't remember.
2       Q.   You're unable to give me a range
3   for how many hours you worked on your report?
4            MR. HILL:  Objection,
5       mischaracterizes testimony.
6       A.   I'm unable to remember how many
7   hours I spent writing the report.
8       Q.   How many hours did you spend
9   preparing for the deposition?
10      A.   I don't remember.
11      Q.   Was it more than five?
12      A.   It may have been more than five.
13      Q.   Was it more than 10?
14      A.   I don't believe so.
15           MR. HILL:  Objection, asked and
16      answered.
17      Q.   Somewhere between five and ten?
18      A.   I can't remember.
19      Q.   Do you remember how many hours you
20  spent communicating with others in relation to
21  your work on this case?
22      A.   I do not.
23      Q.   Is there any other work that you
24  have done on this case?
25           MR. HILL:  Objection, vague.

Page 126

1  that you played for Yi-Wen, you haven't played
2  any other audio files that you were given for
3  this lawsuit to anyone else?
4      A.   That's correct.
5      Q.   Can you go to page 4 of your
6  report?
7      A.   Okay.
8      Q.   Do you see in footnote 2 you
9  reference "Berkeley School of Music Online
10  Course Critical Listening 1"?
11     A.   I do.
12     Q.   Why did you reference that course?
13     A.   I referenced that course because
14  it's a good example of the prevalence of the
15  idea of critical listening.
16     Q.   Does NYU have a critical listening
17  course?
18     A.   I believe they do.
19     Q.   Did you take a critical listening
20  course at NYU?
21     A.   I don't recall if I did.
22     Q.   Why would you cite the Berkeley
23  course as opposed to an NYU course?
24     A.   I thought the online Berkeley
25  article does a really good job of explaining

Page 127

1  it.
2      Q.   Did you find the Berkeley online
3  course on your own?
4      A.   I don't recall.
5          MR. SCHER:   I think this is good
6      time to take a break.
7          THE VIDEOGRAPHER:   Going or the
8      report at approximately 4:30 p.m.
9          (Recess Taken).
10         THE VIDEOGRAPHER:   This is the
11     beginning of media 7 going back on the
12     record at approximately 4:38 p.m.
13         MR. SCHER:   I have no further
14     questions at this time and Charter reserves
15     our right subject to the production of any
16     new documents.
17         MR. HILL:   I have no redirect.
18     Thank you.
19         THE VIDEOGRAPHER:   Off the record
20     at 4:38 p.m.
21         (TIME NOTED:  4:38 P.M.)
22
23
24
25

Page 128

1          C E R T I F I C A T E
2  STATE OF NEW YORK  )
3              : ss.
4  COUNTY OF NEW YORK  )
5      I, WILLIAM VISCONTI, a Shorthand Reporter and
6  Notary Public within and for the State of New York,
7  do hereby certify:
8      That prior to being examined, the witness named in
9  the foregoing deposition was duly sworn to testify the truth,
10  the whole truth, and nothing but the truth;
11     That said deposition was taken down by me in
12  shorthand at the time and place therein named and
13  thereafter reduced by me to typewritten form and that the
14  same is a true, correct, and complete transcript of said
15  proceedings.
16     Before completion of the deposition, review of the
17  transcript [ X ] was [  ] was not requested.  If requested,
18  any changes made by the deponent (and provided to the
19  reporter) during the period allowed are appended hereto.
20     I further certify that I am not interested in the
21  outcome of the action.
22     Witness my hand this 9th day of 2021.
23
24              _____
25                 WILLIAM VISCONTI

Page 129

1
2          E X H I B I T S
3  DESCRIPTION                        PAGE
4  (Exhibit 1 for identification,     41
5  document entitled First Amended
6  Complaint and Jury Demand.)
7  (Exhibit 2 for identification,     43
8  Expert report of Mr. Cheriff.)
9  (Exhibit 3 for identification,     85
10  Appendix B.)

33 (Pages 126 - 129)