# Plaintiffs' Exhibit 4

```
                                                          Page 1

 1        IN THE UNITED STATES DISTRICT COURT
 2           FOR THE DISTRICT OF COLORADO
 3
 4   WARNER RECORDS INC. (f/k/a        )
     Warner Bros. Records, Inc.),      )
 5   et al.,                           )
                                       )
 6          Plaintiffs,                )
                                       )
 7      vs.                            ) No. 19-cv-00874
                                       )     RBJ-MEH
 8   CHARTER COMMUNICATIONS, INC.,     )
                                       )
 9          Defendant.                 )
10
11
12        Deposition of SLAWOMIR PACZKOWSKI
13              Taken May 11, 2021
14
15        The remotely held videotaped deposition
16   of SLAWOMIR PACZKOWSKI, taken by Maria S. Winn,
17   CSR, RPR and CRR, pursuant to the Federal Rules of
18   Civil Procedure for the United States District
19   Courts pertaining to the taking of depositions,
20   with the witness located in Vilnius, Lithuania,
21   commencing at 9:08 a.m. Eastern European Summer
22   Time on May 11, 2021.
23
24
25
```

Page 34

1 through 2016 time frame, that source code for
2 those versions don't exist.  Correct?
3         MR. CASTRICONE:  Objection, vague and
4    ambiguous.  Argumentative.
5         MR. GOULD:  Objection, form.
6    A    I cannot -- I cannot answer that
7 question.  Yeah.  The -- the system that they were
8 all in, it's not accessible anymore.  So...
9 BY MR. HAMSTRA:
10   Q    The source code for the versions of
11 Torrent and File Hash Manager from 2016 and
12 earlier are, at the very least, no longer
13 accessible.  Correct?
14        MR. CASTRICONE:  Same objection.
15   A    Correct.  That's correct.
16        MR. GOULD:  Objection, form, to the last
17   question.
18 BY MR. HAMSTRA:
19   Q    And do you know when source code for the
20 versions of Torrent and File Hash Manager from
21 2016 and earlier became inaccessible?
22        MR. CASTRICONE:  Objection, lacks
23   foundation.  Vague and ambiguous.
24   A    I don't have the exact details on that.
25

Page 35

1 BY MR. HAMSTRA:
2    Q    Can you identify a year or two range in
3 which that event occurred?
4         MR. CASTRICONE:  Same objection.
5    A    Not really.
6 BY MR. HAMSTRA:
7    Q    Is that something you could figure out?
8         MR. CASTRICONE:  Calls for speculation.
9    A    Yeah, I'm not sure.  I would have to do a
10 lot of digging, but I'm not sure what the result
11 of that would be.
12        MR. GOULD:  Nate, in an effort to try to
13   minimize double objections, I'll have a
14   standing join to Mr. Castricone's objections.
15   I may at times add additional ones.
16        MR. HAMSTRA:  Okay.  That is fine with
17   me.
18        MR. CASTRICONE:  Even though he's just
19   going to object as to form.
20 BY MR. HAMSTRA:
21   Q    What is the difference between Torrent
22 Manager and File Hash Manager?
23   A    The difference between the two is that
24 File Hash Manager processes single files, binary
25 files, while Torrent Manager processes the torrent

Page 36

1 and the files out of the torrent download.
2    Q    So is Torrent Manager used only for the
3 BitTorrent protocol?
4    A    It's only used for the downloads from the
5 BitTorrent protocol.
6    Q    Is File Hash Manager used for downloads
7 from the Ares, Gnutella, and eDonkey protocol?
8    A    The File Hash Manager can be used for
9 processing any binary files, regardless where they
10 are coming from, yeah.
11   Q    And from the 2012 through 2016 time
12 frame, the component within MarkMonitor's P2P
13 Technologies that spoke to MarkMonitor's --
14 strike that.
15        From the 2012 to 2016 time frame, the
16 component within MarkMonitor's P2P Technologies
17 that spoke to Audible Magic was the Torrent
18 Manager and File Hash Manager.  Right?
19   A    That's correct.
20   Q    And those components would process the
21 results of queries made to MarkMonitor.  Correct?
22        MR. CASTRICONE:  Objection, vague and
23   ambiguous.
24   A    Can you elaborate on the question?
25 Sorry.

Page 37

1 BY MR. HAMSTRA:
2    Q    Sure.  So File Hash Manager and Torrent
3 Manager would send a fingerprint to Audible Magic
4 for identification.  Correct?
5    A    The File Hash Manager and Torrent Manager
6 would use the Audible Magic SDK and would use the
7 SDK to process the file and send them to the
8 Audible Magic service and receive results from
9 them and pass that information and put it into our
10 database.
11   Q    Is there a particular database into which
12 such information was put?
13   A    Yes, there is.
14   Q    Is there a name for that?
15   A    Yes.  It's DtecNet staging.
16   Q    Does that database still exist?
17   A    Yes, that database still exists.
18   Q    Is that one of the data warehouses you're
19 responsible for in your new analytics role?
20        MR. CASTRICONE:  Objection,
21   mischaracterizes prior testimony.
22   A    No, it's not.  It's a staging database,
23 as the name states.  So it's an operational level
24 database.  It might provide bits and pieces of
25 information needed in reporting, but it's not a

Page 162

 1   and ambiguous.
 2       Are you talking about the hard drive?
 3   A   In the hard drive?
 4   BY MR. HAMSTRA:
 5   Q   You said, "The copy I had prepared had a
 6   bunch of folders and a bunch of files downloaded
 7   from the networks. And it had a report with a
 8   list of hashes and other items."
 9       What's the report with the list of hashes
10   and other items you referred to?
11       MR. CASTRICONE: Objection, beyond the
12   scope.
13   A   It is a report with the -- all the items
14   that were on the driver.
15   BY MR. HAMSTRA:
16   Q   Were you involved in preparing that
17   report at all?
18   A   Not the final report, no.
19   Q   Were you involved in preparing your
20   earlier versions of that report?
21   A   Not at that particular report. I was
22   involved in the parts of the work that was
23   necessary to carry out the project.
24       So this whole project was executed by
25   operations, and they would download the content

Page 163

 1   and place it somewhere. And then I would create a
 2   report based on what they had downloaded in
 3   there -- on it.
 4   Q   So you say this whole project was
 5   executed by operations.
 6       You are not a member of the operations
 7   team?
 8   A   No.
 9   Q   And you were not one at the time?
10   A   No.
11   Q   Do you know a Jason Runnion at
12   MarkMonitor?
13   A   Yeah. Jason was part of the team back
14   then. I believe he was the customer support
15   manager for RIAA.
16   Q   Are you aware of a tool at MarkMonitor
17   that was developed to take fingerprints that did
18   not match against Audible Magic, and then run them
19   against a different database?
20       MR. CASTRICONE: Objection, vague and
21   ambiguous. Lacks foundation.
22       MR. GOULD: Objection, form. Scope.
23       MR. CASTRICONE: Join.
24   A   Yeah. I think the tool is the same tool
25   that is used for verification. And you can use

Page 164

 1   the tool against the different content types, and
 2   you can use it against different Audible Magic
 3   databases if necessary.
 4       And you can get the outputs locally, and
 5   then you will be able to kind of check with the
 6   matched one database.
 7       If it didn't match another one, you would
 8   provide that input to Audible Magic, and they
 9   could make sure that the relevant reference file
10   was added to the custom database.
11       And all that is just this application
12   that wraps around Audible Magic. Audible Magic is
13   doing all the work. Right?
14       Processing the fingerprints, the
15   reference files, and then providing us results
16   back. And then we store it in our database using
17   components around the Audible Magic database
18   submission process.
19   BY MR. HAMSTRA:
20   Q   Speaking of Audible Magic submissions,
21   the files that were downloaded and then sent to
22   Audible Magic for identification, were those files
23   retained by MarkMonitor?
24       MR. CASTRICONE: Objection, vague and
25   ambiguous. Calls for speculation. Beyond

Page 165

 1   the scope.
 2       MR. GOULD: Objection, form. Scope.
 3   Foundation.
 4   A   So there are a couple of things in what
 5   you are asking about here.
 6       One thing is the files we got from the
 7   network.
 8       And another thing is the files we sent to
 9   Audible Magic.
10       The files we sent to Audible Magic I
11   generated by using Audible Magic SDK, and they are
12   the reference files, or fingerprint files, or
13   whatever we should call them, that only they know
14   how they are built and how they are processed. So
15   they were sent to them. Right?
16       And none of this was retained, because we
17   had the hash of the specific file, and then we get
18   the data back and we tied these things together
19   and they are associated with each other.
20       So when we have the file hash, or the
21   physical file, we know that this is the binary
22   content with this file, has this set of values
23   returned from Audible Magic, and that's what we
24   stored and that's what we reference.
25

38 (Pages 162 - 165)

Page 166

1  BY MR. HAMSTRA:
2  Q   So neither the content downloaded from
3  the network nor the fingerprints sent to Audible
4  Magic were retained for the reasons you just
5  stated.  Correct?
6       MR. CASTRICONE:  Objection --
7       MR. GOULD:  Objection, form.
8       MR. CASTRICONE:  Objection -- go ahead.
9       MR. GOULD:  Objection, mischaracterizes.
10  Vague as to time.
11      Are we talking about the 5/16 project, or
12  during the period the notices were sent?
13      MR. CASTRICONE:  I join the objections.
14  This is also argumentative.  Beyond the scope.
15      MR. HAMSTRA:  You can answer the
16  question, Mr. Paczkowski.
17  A   Yeah --
18      MR. GOULD:  Vague as to time.
19  A   Sorry.  We didn't retain the files
20  because we didn't believe it was necessary, when
21  we had our cryptographic value of the file.  And
22  then whenever we had that, we know that this is
23  the file.
24      And if we encountered it in the future,
25  it would still be the same file, the same content,

Page 167

1  and it would still relate to the same information
2  from Audible Magic.
3  BY MR. HAMSTRA:
4  Q   A followup on a few things from earlier.
5      Could you -- remember Exhibit 8 was the
6  sample evidence package we looked at earlier.
7      Do you recall that?
8  A   Yeah.  Let me find that.  Was that the
9  text file or -- no.
10  Q   It was in the evidence package with the
11  XML files.
12  A   Um-hm.  Yeah.
13  Q   So there was no packet capture within
14  that zip file.  Correct?
15      MR. CASTRICONE:  Objection, calls for
16  speculation.  The document speaks for itself.
17  A   Yeah.  Right here, I don't see any packet
18  capture.  That's correct.
19  BY MR. HAMSTRA:
20  Q   Does that mean that the -- this project
21  was not configured to retain a packet capture?
22      MR. CASTRICONE:  Same objection.  Calls
23  for speculation.
24  A   Based on what I have here, I cannot tell
25  whether it was configured to have packet capture

Page 168

1  or not.
2  BY MR. HAMSTRA:
3  Q   If it were configured to have packet
4  capture, wouldn't it have a packet capture in the
5  evidence package?
6       MR. CASTRICONE:  Objection, calls for
7  speculation.  Incomplete hypothetical.
8  Argumentative.
9  A   If this is the full evidence packet, then
10  there is no packet capture.  That's what I can
11  conclude on that.  Whether there has been a packet
12  capture, I don't know.
13  BY MR. HAMSTRA:
14  Q   Were packet captures stored by
15  MarkMonitor during the time frame in question, as
16  part of the evidence package?
17      MR. CASTRICONE:  Objection, incomplete
18  hypothetical.  Calls for speculation.  Lacks
19  foundation.  Beyond the scope.
20      MR. GOULD:  Objection, form.  Foundation.
21  A   I believe they should be stored with the
22  rest of the evidence.
23  BY MR. HAMSTRA:
24  Q   Okay.  Another question, coming back to
25  something we discussed earlier.

Page 169

1      Do you have Exhibit 5 open, one of the
2  spreadsheets?
3  A   Yes, I got it.
4  Q   Okay.  And we looked at Column E before,
5  "Verified Type Name."  Correct?
6  A   Column --
7  Q   E.
8  A   In which tab?
9  Q   Oh, I'm sorry.  BitTorrent.
10  A   Yes.
11  Q   And every record, at least in this tab
12  for that column, is "Real."  Correct?
13  A   That's correct.  Yeah.
14  Q   Did MarkMonitor retain records of songs
15  it identified as fake as well?
16      MR. CASTRICONE:  Objection, vague and
17  ambiguous.  Incomplete hypothetical.  Lacks
18  foundation.  Beyond the scope.
19  A   We would keep record of all the files we
20  processed.  So regardless of what status they're
21  in, as we go for the processing, it would change
22  the status.
23      They would start as not verified and then
24  transition to one of the stages, if necessary.
25

39 (Pages 166 - 169)

Page 190

```
 1  STATE OF ILLINOIS )
                     ) SS:
 2  COUNTY OF C O O K )
 3
 4       The within and foregoing deposition of
 5  the aforementioned witness was taken by
 6  MARIA S. WINN, CSR, RPR and CRR, on the date and
 7  time aforementioned.
 8       There were present remotely during the
 9  taking of the deposition the previously named
10  counsel.
11       The said witness was first duly sworn and
12  was then examined upon oral interrogatories; the
13  questions and answers were taken down in shorthand
14  by the undersigned, acting as stenographer; and
15  the within and foregoing is a true, accurate and
16  complete record of all of the questions asked of
17  and answers made by the aforementioned witness, at
18  the time and place hereinabove referred to.
19       The signature of the witness was not
20  waived, and the deposition was submitted,
21  pursuant to Rule 30(e) and 32(d)4 of the Rules
22  of Civil Procedure for the United States District
23  Courts, to the deponent per copy of the attached
24  letter.
25
```

Page 191

```
 1       The undersigned is not interested in the
 2  within case, nor of kin or counsel to any of the
 3  parties.
 4       In witness whereof, I have hereunto set
 5  my hand and seal of office this day, May 14, 2021.
 6
 7
 8            [signature: Maria S. Winn]
 9
10  CSR No. 084-003784 - Expiration Date: May 31, 2021
```

Page 192

```
Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313

May 14, 2021

To: Mr. Castricone

Case Name: Warner Records Inc v. Charter Communications Inc

Veritext Reference Number: 4577828

Witness:  Slawomir Paczkowski      Deposition Date:  5/11/2021

Dear Sir/Madam:

The deposition transcript taken in the above-referenced
matter, with the reading and signing having not been
expressly waived, has been completed and is available
for review and signature.  Please call our office to
make arrangements for a convenient location to
accomplish this or if you prefer a certified transcript
can be purchased.

If the errata is not returned within thirty days of your
receipt of this letter, the reading and signing will be
deemed waived.

Sincerely,
Production Department

NO NOTARY REQUIRED IN CA
```

Page 193

```
           DEPOSITION REVIEW
          CERTIFICATION OF WITNESS

    ASSIGNMENT REFERENCE NO: 4577828
    CASE NAME: Warner Records Inc v. Charter Communications Inc
    DATE OF DEPOSITION: 5/11/2021
    WITNESS' NAME: Slawomir Paczkowski
    In accordance with the Rules of Civil
Procedure, I have read the entire transcript of
my testimony or it has been read to me.
    I have made no changes to the testimony
as transcribed by the court reporter.

_____    _____
Date              Slawomir Paczkowski
    Sworn to and subscribed before me, a
Notary Public in and for the State and County,
the referenced witness did personally appear
and acknowledge that:

    They have read the transcript;
    They signed the foregoing Sworn
        Statement; and
    Their execution of this Statement is of
        their free act and deed.

    I have affixed my name and official seal

this _____ day of_____, 20____.

            _____
            Notary Public
            _____
            Commission Expiration Date
```