# Plaintiffs' Exhibit 5

HIGHLY CONFIDENTIAL

Page 1

1       IN THE UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF COLORADO

3 - - - - - - - - - - - - - - - x

4 WARNER RECORDS, INC., et al,   :

5         Plaintiffs,       :

6   vs.                           : Civil Action No.

7 CHARTER COMMUNICATIONS, INC., : 19-CV-874

8         Defendant.        :

9 - - - - - - - - - - - - - - - x

10         HIGHLY CONFIDENTIAL

11   VIRTUAL VIDEOTAPED 30(b)(6) DEPOSITION OF:

12    RECORDING INDUSTRY ASSOCIATION OF AMERICA

13         GIVEN BY STEVEN MARKS

14 DATE:       Friday, May 7, 2021

15 TIME:       10:08 a.m.

16 LOCATION:   Remote Proceedings

17 REPORTED BY: Denise M. Brunet, RPR

18         Reporter/Notary

19

20        Veritext Legal Solutions

21

22

HIGHLY CONFIDENTIAL

Page 210

1 the other ISPs. I think she was drawing our
2 attention to that issue.
3  MR. SCHAPIRO: All right. Let's
4 introduce the next exhibit, please.
5  MR. SCHER: I have introduced Exhibit 18.
6  (Marks Deposition Exhibit Number 18 was
7 marked for identification.)
8 BY MR. SCHAPIRO:
9  Q  Take a look at this, please, Mr. Marks.
10 So Exhibit 18, multi-page document produced in
11 this litigation, RIAA_CH_01546619.
12  A  I'm sorry, it didn't load. Hold on a
13 second. I think I have to refresh every time for
14 it to load. Okay. I have it.
15  Q  All right. So on April 19th Teresa
16 Denver from MarkMonitor responds to some questions
17 from Victoria Sheckler, correct?
18  A  Yes.
19  Q  And the second question from
20 Ms. Sheckler, or request, says, "Please confirm
21 that you can provide us -- provide to us a sample
22 of the files associated with a random sampling of

Page 211

1 the hashes."
2  Do you see where that is?
3  A  Yes.
4  Q  But Ms. Denver from -- I'm just checking.
5 Ms. Denver MarkMonitor or Audible Magic, do you
6 know? She's MarkMonitor, correct?
7  A  Yes.
8  Q  Ms. Denver of MarkMonitor responds, "We
9 currently do not store audio files, and once it
10 has been verified, we delete the file."
11  As far as you know, is that true?
12  A  Yes. That's my understanding.
13  Q  Did RIAA store any audio files from
14 MarkMonitor?
15  A  No.
16  Q  Did RIAA store any hash files from
17 MarkMonitor?
18  A  On their behalf, do you mean? No. No.
19  MR. GOULD: Objection to form.
20 BY MR. SCHAPIRO:
21  Q  You said on their behalf. Or on anyone's
22 behalf. Hash files related to the monitoring that

Page 212

1 took place from 2012 to 2015.
2  MR. GOULD: Objection to form.
3  THE WITNESS: Those files would have --
4 the hashes would have been kept by MarkMonitor.
5 BY MR. SCHAPIRO:
6  Q  And MarkMonitor didn't -- but MarkMonitor
7 didn't keep them, correct?
8  A  They kept the hashes, but, you know, as
9 we were discussing earlier, the process here was
10 they would download the file in the first
11 instance, verify then with Audible Magic that it
12 was one of our member recordings. If it was, they
13 would create a hash that was unique to that file.
14 They would delete the recording, because, at that
15 point, you didn't need it for purposes of the
16 notice program, and put the hash in a database of
17 hashes that they would then use to go out and
18 identify instances of infringement of that
19 recording, at least pursuant to that hash.
20  Q  Well, Ms. Sheckler in her question
21 number 3 here says, "Please have your colleague
22 with the relevant expertise with Audible Magic

Page 213

1 either confirm that the description I told you
2 that we received from Audible Magic is correct or,
3 if not, provide us with a description of the
4 current methodology used with Audible Magic to
5 confirm that a suspect file matches the known
6 master of the sound recording."
7  What was the description that she's
8 referring to there that RIAA received from Audible
9 Magic, the one that she's asking whether it's
10 correct or not?
11  MR. GOULD: Objection. Foundation.
12  THE WITNESS: Well, this would relate to
13 the part of the process where -- that I just
14 described, where the file downloaded by
15 MarkMonitor would be compared to the database
16 that -- of fingerprints that Audible Magic had to
17 determine whether that was a recording owned by
18 one of the member companies that was participating
19 in our program.
20  So she was just saying, I have a
21 description from Audible Magic about how these
22 process works; can you just let me know whether

HIGHLY CONFIDENTIAL

Page 218

1    THE WITNESS: I don't know. It -- just
2 to clarify, you're talking about provided by
3 the --
4 BY MR. SCHAPIRO:
5    Q   By the owner.
6    A   -- label to Audible Magic?
7    Q   Yes.
8    A   I don't know.
9    Q   Do you know if any metadata was
10 associated with the fingerprinted works?
11       MR. GOULD: Objection. Form.
12 Foundation.
13       THE WITNESS: I don't know Audible
14 Magic's process in terms of what metadata it
15 retained alongside the fingerprint in the
16 reference database.
17       MR. SCHAPIRO: All right. Let's load the
18 next exhibit, Exhibit 19, our internal next tab.
19       MR. SCHER: I have introduced Exhibit 19.
20       (Marks Deposition Exhibit Number 19 was
21 marked for identification.)
22 BY MR. SCHAPIRO:

Page 219

1    Q   All right. Take a look at Exhibit 19.
2 Tell me if you recognize this document.
3    A   It's loading still.
4        Got it.
5    Q   All right. Do you recognize this
6 document?
7    A   Yes.
8    Q   What is it?
9    A   It's a statement of work between RIAA and
10 MarkMonitor regarding, you know, a certain kind of
11 data collection that was described in the document
12 and -- along with the fees and other -- and it was
13 signed in January of 2016.
14       Sorry. The Amazon guy.
15    Q   All right. Okay. And the statement of
16 work says that RIAA is to provide a list of up to
17 7200 hashes and MarkMonitor is to search for and
18 attempt to download the files associated with
19 those hashes.
20       Do you see that?
21    A   Can you point me to where -- oh, I see.
22    Q   Under data collection.

Page 220

1    A   Yes, I see that now.
2    Q   Why was that done?
3    A   This was part of --
4        MR. GOULD: Let me just -- pause for a
5 moment, Steve. Be mindful that to the extent you
6 can answer without disclosing privileged or work
7 product information --
8        THE REPORTER: I'm sorry. Mr. Gould,
9 you're muffled.
10       MR. GOULD: Sorry about that. Can you
11 hear me now?
12       THE REPORTER: Yeah, a little better.
13       MR. GOULD: Mr. Marks, just caution to be
14 careful not to disclose privileged or work product
15 information as you answer these questions.
16       THE WITNESS: This was related to a
17 possible litigation effort. And it does remind
18 me, by the way, as to the dates -- when you were
19 asking me earlier today about when litigation was
20 contemplated, it wouldn't have been much earlier
21 than this time. It would have been right around
22 this time. When we were going through the years

Page 221

1 and you were saying '13, '14, '15, the answer
2 would have been around the beginning of 2016.
3 BY MR. SCHAPIRO:
4    Q   Why did RIAA want MarkMonitor to search
5 for and attempt to download 72 hashes or files
6 associated with 72 hashes in connection with this
7 litigation? What did that have to do with
8 litigation?
9        MR. GOULD: Again, caution you, to the
10 extent you can answer the question without
11 disclosing privileged or work product information
12 about why an attorney may have instructed you on
13 something, you may answer.
14       THE WITNESS: I think, for privilege
15 reasons, it's hard for me to answer that question.
16 BY MR. SCHAPIRO:
17    Q   Well, did MarkMonitor already have this
18 data?
19    A   MarkMonitor, as we've discussed, for the
20 notice program did not retain the download it
21 initially made when creating the hash and relied
22 on the hash alone for purposes of the notice

HIGHLY CONFIDENTIAL

Page 306

1     CERTIFICATE OF NOTARY PUBLIC
2         I, Denise M. Brunet, the officer before
3  whom the foregoing deposition was taken, do hereby
4  certify that the witness whose testimony appears
5  in the foregoing deposition was sworn by me; that
6  the testimony of said witness was taken by me
7  stenographically and thereafter reduced to print
8  by means of computer-assisted transcription by me
9  to the best of my ability; that I am neither
10 counsel for, related to, nor employed by any of
11 the parties to this litigation and have no
12 interest, financial or otherwise, in the outcome
13 of this matter.
14
15         [signature: Denise M. Brunet]
16         Denise M. Brunet
17         Notary Public in and for
18         The District of Columbia
19
20 My commission expires:
21 December 14, 2022
22

Page 307

1         Veritext Legal Solutions
           1100 Superior Ave
2          Suite 1820
           Cleveland, Ohio 44114
3          Phone: 216-523-1313
4  May 12, 2021
5  To: Jeffrey M. Gould, Esq.
6  Case Name: Warner Records, Inc., et al. v. Charter Communications, Inc.
7
   Veritext Reference Number: 4572136
8
   Witness: Steve Marks    Deposition Date: 5/7/2021
9
   Dear Sir/Madam:
10
   Enclosed please find a deposition transcript.  Please have the witness
11
   review the transcript and note any changes or corrections on the
12
   included errata sheet, indicating the page, line number, change, and
13
   the reason for the change.  Have the witness' signature notarized and
14
   forward the completed page(s) back to us at the Production address
15 shown
16 above, or email to production-midwest@veritext.com.
17 If the errata is not returned within thirty days of your receipt of
18 this letter, the reading and signing will be deemed waived.
19 Sincerely,
20 Production Department
21
22 NO NOTARY REQUIRED IN CA

Page 308

1         DEPOSITION REVIEW
          CERTIFICATION OF WITNESS
2
          ASSIGNMENT REFERENCE NO: 4572136
3         CASE NAME: Warner Records, Inc., et al. v. Charter Communications, Inc.
          DATE OF DEPOSITION: 5/7/2021
4         WITNESS' NAME: Steve Marks
5         In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7         I have made no changes to the testimony
   as transcribed by the court reporter.
8
          _____
9  Date           Steve Marks
10        Sworn to and subscribed before me, a
   Notary Public in and for the State and County,
11 the referenced witness did personally appear
   and acknowledge that:
12
          They have read the transcript;
13        They signed the foregoing Sworn
              Statement; and
14        Their execution of this Statement is of
              their free act and deed.
15
          I have affixed my name and official seal
16
   this _____ day of_____, 20____.
17
          _____
18        Notary Public
19
          _____
20        Commission Expiration Date
21
22
23
24
25

Page 309

1         DEPOSITION REVIEW
          CERTIFICATION OF WITNESS
2
          ASSIGNMENT REFERENCE NO: 4572136
3         CASE NAME: Warner Records, Inc., et al. v. Charter Communications, Inc.
          DATE OF DEPOSITION: 5/7/2021
4         WITNESS' NAME: Steve Marks
5         In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7         I have listed my changes on the attached
   Errata Sheet, listing page and line numbers as
8  well as the reason(s) for the change(s).
9         I request that these changes be entered
   as part of the record of my testimony.
10
          I have executed the Errata Sheet, as well
11 as this Certificate, and request and authorize
   that both be appended to the transcript of my
12 testimony and be incorporated therein.
13        _____
   Date           Steve Marks
14
          Sworn to and subscribed before me, a
15 Notary Public in and for the State and County,
   the referenced witness did personally appear
16 and acknowledge that:
17        They have read the transcript;
          They have listed all of their corrections
18            in the appended Errata Sheet;
          They signed the foregoing Sworn
19            Statement; and
          Their execution of this Statement is of
20            their free act and deed.
21        I have affixed my name and official seal
22 this _____ day of_____, 20____.
23        _____
          Notary Public
24
          _____
25        Commission Expiration Date

```
                    VERITEXT LEGAL SOLUTIONS
          COMPANY CERTIFICATE AND DISCLOSURE STATEMENT
```

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.