# Plaintiffs' Exhibit 8

HIGHLY CONFIDENTIAL

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                 DISTRICT OF COLORADO
 3
 4    WARNER RECORDS INC., et    )
      al.,                       )
 5                               )
                 Plaintiffs,     )
 6                               )
             vs.                 )   No.
 7                               )   1:19-cv-00874-
      CHARTER COMMUNICATIONS,    )   RBJ-MEH
 8    INC.,                      )
                                 )
 9               Defendant.      )
      ------------------------   )
10
          (Captions continued on following page.)
11
12    * * * H I G H L Y   C O N F I D E N T I A L * * *
13
14                    May 13, 2021
15                    10:33 a.m.
16
17          Videoconferenced deposition of SAM
18     BAHUN, held virtually with the witness located
19     in Cleveland, Ohio, pursuant to Rule 30(b)(6)
20     notice, before Laurie A. Collins, a Registered
21     Professional Reporter and Notary Public of the
22     State of New York.
23
24
25
```

HIGHLY CONFIDENTIAL

Page 194

1 the e-mail. I don't think I've read this before,
2 and I just want to read it real quick to refresh
3 my memory --
4    Q.  Yeah.
5    A.  -- get the context here.
6        MR. CASTRICONE: I was just going to
7    interject a vague objection too.
8        (Pause.)
9    A.  Okay. I'm sorry, yes. What was your
10 question, then?
11   Q.  Do you recall experiencing the drop in
12 the number of notices being sent to
13 nonparticipating ISPs through the year 2013?
14   A.  I don't recall what's displayed here in
15 the chart or even some of what's being described,
16 I mean, not specifically. I think there were a
17 couple of adjustments that were occurring around
18 that time. But, yeah, I don't -- I don't really
19 recall it specifically.
20   Q.  Do you recall experiencing any pressure
21 from the RIAA to increase the number of notices
22 that you were sending to ISPs?
23       MR. CASTRICONE: Objection, vague and
24   ambiguous, argumentative.
25       MR. GOULD: Form.

Page 195

1    A.  I don't -- I don't recall any specific
2 pressure that stands out in my mind. I mean,
3 what's being displayed here in this chart I can
4 tell you looks very -- I hate to keep
5 feeling like -- I feel like I'm going back and
6 using this word again. It looks unnatural.
7        I don't recall ever seeing a trend like
8 this that would be tied to the natural flow or
9 rates of piracy that we see. So it would indicate
10 to me that something changed where you see the
11 drop in the chart.
12       I wouldn't -- I don't think I've ever
13 seen anything that would cause that naturally
14 so -- but I don't remember what the change might
15 have been or if there was pressure, as you said.
16 The reason I mention that is because if there was
17 a change that occurred I would expect the RIAA to
18 have been aware of it, you know.
19   Q.  I'm going to quick touch on I think it
20 was another follow-up topic to Mr. Paszkowski.
21 Oh, yeah, so I had a question. Were you there at
22 all for Mr. Paszkowski's testimony about the
23 source code for torrent manager and file hash
24 manager?
25   A.  Yeah, I believe I was both present an

Page 196

1 listening at that point.
2    Q.  Did you investigate to see when the
3 source code for the 2012 through 2016 versions of
4 those software items became inaccessible?
5    A.  Yes. It's difficult to say exactly
6 when, as you put it, it became inaccessible. I
7 don't know -- I don't know if that's necessarily
8 the right term. But it doesn't appear we have
9 anything prior to December 2016.
10   Q.  Okay. So the code for historical
11 versions of that software -- well, let me -- let
12 me step back.
13       So you know that you don't have source
14 code for versions of that software from prior to
15 December 2016; is that right?
16   A.  Yeah, I mean, it coincides with I
17 think -- I believe maybe Slawomir also referenced
18 some of the migrations we've been through. But it
19 coincides with -- or matches up, I guess I should
20 say, with some of those migrations. And in terms
21 of like any of the historical information, like I
22 said, I believe what we discovered yesterday
23 basically of looking into this a little bit
24 further after the deposition on Tuesday was we
25 have information going back to December of 2016.

Page 197

1        So I don't know that we can really say
2 much of anything prior to that time. Whether we
3 had or didn't have or what was available I think
4 is kind of a blind spot to some extent because of
5 the migration.
6    Q.  And the migration you're mentioning,
7 did that occur in this December of 2016 time
8 frame?
9    A.  One of them, one of -- that's why I was
10 saying it coincides, because I think -- and I hope
11 I'm not misspeaking from my memory of the
12 deposition, but I'm sure you can go back and look
13 at the transcript.
14       I think Slawomir described kind of the
15 way some of the migrations -- there were multiple,
16 I think three or four, migrations, and some they
17 may have been able to transition some historical
18 information, some they may not have.
19       And so it appears that some of the
20 migrations with MarkMonitor and the Thomson
21 Reuters Clarivate acquisitions may have happened
22 around that December 2016 time frame. And some of
23 the migrations that happened since then we have
24 been able to maintain or keep some of the
25 historical records, which is why we can go back to

HIGHLY CONFIDENTIAL

Page 198

1  December of 2016.
2      Does that make sense?
3  Q.  Yeah, I think so.
4      So just to be clear, the earliest
5  version of source code that we have or you have
6  for torrent manager and file hash manager dates to
7  December 2016; correct?
8  A.  That is my understanding from the
9  research that's been done the last couple days.  I
10 don't know if we can say a hundred percent for
11 sure on that in terms of source code.  I know the
12 revision history is what Slawomir focused his
13 efforts on the last day was to try to understand
14 any of that information, which also, you know, has
15 a repository or an element to those systems.  You
16 may be familiar with them.  But it can save some
17 of that.
18     Whether or not there's, you know, some
19 source code, yeah, I don't know.  I don't have any
20 information, basically.  It's a blind spot.  So
21 back to December 2016 is all I know.
22 Q.  And do you know whether the revision
23 history only goes back to December 2016 as well?
24 A.  We're talking specifically about these
25 two tools; right --

Page 199

1  Q.  Correct.
2  A.  -- which are pretty basic.  They're not
3  like -- I wouldn't overemphasize the role these
4  two play, especially given the portion of these
5  two tools that really are just -- certainly as it
6  relates to RIAA the Audible Magic SDK.
7      But these two small tools, if you will,
8  I don't know -- I only have what we were able to
9  identify in the last day or so, which is revision
10 history and I believe source code starting from
11 December of 2016.
12     (Discussion off the record.)
13 Q.  I have found what I'm looking for.
14     Mr. Bahun, do you understand that one
15 of the topics on which you've been designated is
16 MarkMonitor's responses to our document subpoenas
17 in this case?
18 A.  Yes.
19 Q.  So there should be a new exhibit.
20 Exhibit 22 is nonparty MarkMonitor Inc.'s amended
21 objections and responses to subpoena to produce
22 documents by Defendant Charter Communications
23 dated March 14, 2020.
24     (Bahun Exhibit 22, MarkMonitor amended
25     objections and responses to subpoena to

Page 200

1  produce documents by Charter, marked for
2  identification.)
3  A.  Yes, I see that.
4      MR. CASTRICONE:  I don't know what
5  you're going to ask, Nate, but obviously his
6  responses will be subject to the objections
7  that were raised in the written objections and
8  responses.
9      MR. HAMSTRA:  I understand.
10 Q.  All right.  Mr. Bahun, can you go to
11 page 8?
12 A.  Page 8?
13     (Discussion off the record.)
14 A.  Yes, I'm on page 8.
15 Q.  That's a topic that reads, all
16 documents and communications concerning the
17 features, functionality, capabilities, or
18 operation of the MarkMonitor system, including all
19 guidelines, data sheets, manuals, and/or
20 instructions.
21     Do you see that?
22 A.  Yes.
23 Q.  And if you go through a lot of
24 objections on the next page, do you see around
25 line 19 on page 9 there's a sentence that begins,

Page 201

1  responding nonparty has determined that there are
2  no nonprivileged documents that are responsive to
3  a reasonable interpretation of this request and no
4  documents are being withheld on the basis of any
5  privilege?
6      Do you see that document, Mr. Bahun --
7  or that sentence?
8  A.  Yes, I see that.
9      MR. CASTRICONE:  I'm sorry, what line
10 are you on, Nate?  I was shutting the door
11 when you started the question.
12     MR. HAMSTRA:  18 through 21 of page 9.
13     MR. CASTRICONE:  Thanks.
14 Q.  Now, Mr. Bahun, the software system
15 that sent notices to Charter and Bright House, is
16 it really the case that there are no documents
17 concerning the features, functionalities,
18 capabilities, or operation of that system?
19     MR. CASTRICONE:  Objection, overbroad,
20 argumentative.
21     MR. GOULD:  Object to form, foundation.
22 A.  Yeah, in terms of our interpretation of
23 this request, we did a search, and we produced
24 everything that we had so...
25 Q.  Well, you did a search, and you said

51 (Pages 198 - 201)

HIGHLY CONFIDENTIAL

Page 230

| 1 | Stroz Friedberg overview of antipiracy |
| 2 | process, Bates-stamped MM000228 through |
| 3 | 236 |
| 4 | Exhibit 9, independent expert         117 |
| 5 | assessment of MarkMonitor antipiracy |
| 6 | methodologies, Bates-stamped |
| 7 | PL_CH_0140585 through 604 |
| 8 | Exhibit 10, enhancement               126 |
| 9 | recommendations, Bates-stamped MM000237 |
| 10 | through 239 |
| 11 | Exhibit 11, Harbor Labs evaluation,   129 |
| 12 | Bates-stamped PL_CH_0140183 through 193 |
| 13 | Exhibit 12, response to Harbor Labs'  147 |
| 14 | executive summary, Bates-stamped |
| 15 | MM000240 through 241 |
| 16 | Exhibit 13, private placement         149 |
| 17 | enforcement process, Bates-stamped |
| 18 | MM000195 through 227 |
| 19 | Exhibit 14, native Excel file,        158 |
| 20 | Bates-stamped PL_CH_0003189 |
| 21 | Exhibit 15, document, Bates-stamped   164 |
| 22 | MM_EH_0000096 |
| 23 | Exhibit 16, native Excel file,        165 |
| 24 | Bates-stamped PL_CH_0003188 |
| 25 | Exhibit 17, MarkMonitor notice,       167 |

Page 231

| 1 | Bates-stamped MM_CH_InfNotice_0065406 |
| 2 | Exhibit 18, record of notices sent by   179 |
| 3 | MarkMonitor to Bright House, |
| 4 | Bates-stamped MM_VH_0000095 |
| 5 | Exhibit 19, MarkMonitor infringement    182 |
| 6 | notice, Bates-stamped |
| 7 | MM_CH_InfNotice_0000541 |
| 8 | Exhibit 20, MarkMonitor evidence        185 |
| 9 | package, Bates-stamped |
| 10 | PL_CH_InfPackage_000004 |
| 11 | Exhibit 21, e-mail from Runnion with    192 |
| 12 | attachment, Bates-stamped |
| 13 | RIAA_CH_01545054 through 5057 |
| 14 | Exhibit 22, MarkMonitor amended         199 |
| 15 | objections and responses to subpoena to |
| 16 | produce documents by Charter |
| 17 | Exhibit 23, MarkMonitor's privilege log  209 |
| 18 | Exhibit 24, letter from Oppenheim to    216 |
| 19 | MarkMonitor, Bates-stamped MM000911 |
| 20 | through 913 |
| 21 | Exhibit 25, Attachment A to deposition  222 |
| 22 | subpoena to MarkMonitor in Charter case |
| 23 | |
| 24 | |
| 25 | |

Page 232

Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313

May 18, 2021

To: ANDREW D. CASTRICONE

Case Name: Warner Records Inc v. Charter Communications Inc

Veritext Reference Number: 4581819

Witness:  Sam Bahun        Deposition Date:  5/13/2021

Dear Sir/Madam:

Enclosed please find a deposition transcript.  Please have the witness review the transcript and note any changes or corrections on the included errata sheet, indicating the page, line number, change, and the reason for the change.  Have the witness' signature notarized and forward the completed page(s) back to us at the Production address shown above, or email to production-midwest@veritext.com.

If the errata is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,
Production Department

NO NOTARY REQUIRED IN CA

Page 233

DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 4581819
CASE NAME: Warner Records Inc v. Charter Communications Inc
DATE OF DEPOSITION: 5/13/2021
WITNESS' NAME: Sam Bahun

In accordance with the Rules of Civil Procedure, I have read the entire transcript of my testimony or it has been read to me.

I have made no changes to the testimony as transcribed by the court reporter.

_____     _____
Date                Sam Bahun

Sworn to and subscribed before me, a Notary Public in and for the State and County, the referenced witness did personally appear and acknowledge that:

They have read the transcript;
They signed the foregoing Sworn
   Statement; and
Their execution of this Statement is of
   their free act and deed.

I have affixed my name and official seal

this _____ day of_____, 20____.

    _____
    Notary Public
    _____
    Commission Expiration Date