# Plaintiffs' Exhibit 10

*Confidential & Proprietary*



<u>*DRAFT*</u>

# Independent Expert Assessment of MarkMonitor AntiPiracy Methodologies

October 14, 2012



*Confidential & Proprietary*

# Table of Contents

**Executive Summary** ..................................................................................................... 1

    1.  Background ............................................................................................................ 1

    2.  Summary of Findings and Recommendations ........................................................ 1

**Independent Assessment Methodology** ...................................................................... 2

**Assessment of MarkMonitor AntiPiracy Platform** ....................................................... 3

    1.  Platform Overview ................................................................................................ 3

    2.  Identification of Infringing Files and File Verification ............................................. 5

    3.  Search for and Identification of Infringing files with P2P Collection Agents ......... 6

    4.  Infringement File Collection and Verification ......................................................... 9

    5.  P2P Online Infringement Enforcement ................................................................. 12

    6.  AntiPiracy System Redundancies ......................................................................... 13

**Controlled System Test of MarkMonitor Platform** ..................................................... 14

**Enhancement Recommendations** ............................................................................... 15

    1.  Augment the File Identification Audit Trail ........................................................... 16

    2.  Deploy a Higher Percentage of "Verified" Infringing Works to the Collection Agents ....................................................................................................................... 16

    3.  File Identification of Obfuscated Infringing Works ............................................... 16

    4.  Create and Maintain a Hash Value with the Case File ......................................... 16

    5.  Notice Generation and Sending Should Move Away from Email/SMTP ............... 17

    6.  Develop a Periodic Audit Framework .................................................................. 17

**Recommendations for Ongoing Periodic Review** ....................................................... 17

*Confidential & Proprietary*

# Executive Summary

### 1.  Background

Stroz Friedberg, LLC was retained by the Center for Copyright Information ("CCI") as an Independent Expert under the July 6, 2011 CCI Memorandum of Understanding ("MOU") executed between the Content Owner Representatives and the Participating ISPs, both as defined by the MOU.  Under the MOU, the Content Owner Representatives are required to develop and maintain Methodologies (as defined by the MOU) for identifying instances of Peer-to-Peer ("P2P") online infringement and gathering reliable evidence that the identified content was uploaded, downloaded, copied, or offered on a P2P network.  The Independent Expert, in turn, is required by the MOU to review on a periodic and ongoing basis the Methodologies and any modifications thereto, and recommend enhancements as appropriate, with the goal of ensuring and maintaining confidence on the part of the Content Owner Representatives, the Participating ISPs, and the public in the accuracy and security of the Methodologies.

To this end, the Content Owner Representatives have retained the company MarkMonitor to implement its P2P antipiracy services to identify instances of online copyright infringement.  Stroz Friedberg conducted an assessment of the MarkMonitor Methodologies for monitoring, verifying, and enforcing online copyright infringement on P2P file sharing networks.  Stroz Friedberg assessed the efficacy of MarkMonitor's Methodologies to monitor, identify, collect evidence, and generate notices to P2P infringers by conducting a series of in-person and remote interviews, reviewing documentation, and conducting technical analysis.  This report details Stroz Friedberg's findings from this assessment.  Stroz Friedberg reserves the right to amend, modify, or supplement this report as necessary or based on newly discovered information.

### 2.  Summary of Findings and Recommendations

Based on our analysis and review of MarkMonitor's Methodologies, Stroz Friedberg found that:

➢ MarkMonitor's Methodologies effectively identify P2P online copyright infringers.

➢ MarkMonitor Methodologies are well-developed and matured.

➢ MarkMonitor's evidence collection in connection with P2P infringement is robust, defensible, and will withstand adverse party scrutiny or evidentiary challenges.

➢ The Methodologies include appropriate checks and balances at key points in the work flow to ensure accuracy.

*Confidential & Proprietary*

➢ The reporting and notice-generating abilities allow MarkMonitor to accurately report on identified infringers.

➢ The Methodologies have a number of inherent and added system redundancies designed to ensure that MarkMonitor can provide continuous and consistent scanning.

Though on the whole we found MarkMonitor's present Methodologies to be well developed and robust, we offer the following recommendations as potential enhancements:

➢ Consider adding additional checks and auditing to the file identification and verification protocols.

➢ Increase the percentage of verified infringing works deployed to the remote collection agents.

➢ Consider modifications to the infringement file identification process to include works with obfuscated names, or that are sourced from private trackers.

➢ Create and maintain a cryptographic hash value for each collected case file.

➢ Regarding ISP notifications, to the extent possible, move away from reliance on email/SMTP and towards the use of other secure protocols such as HTTPS.

➢ Develop an audit framework that allows for assessment and evaluation of the effectiveness of the Methodologies on an ongoing periodic basis.

## Independent Assessment Methodology

MarkMonitor has been extremely helpful in preparing detailed documentation, making appropriate resources available, responding to our specific inquiries, and overall cooperating with the Independent Expert assessment.  Stroz Friedberg's independent assessment involved:  (1) a review of MarkMonitor's network, application components, and antipiracy workflow; (2) in-person and remote walk-throughs of the antipiracy work flow from beginning to end; (3) identification and review of in-process verification checks and controls and potential breakpoints; (4) limited live testing of the antipiracy system and technical analysis of captured P2P content; and (5) multiple live/real-time reviews of the MarkMonitor antipiracy applications and systems.  Sequentially, our assessment began with an overview of MarkMonitor's network and systems and progressed through the following specific topics, organized loosely with discrete steps in MarkMonitor's own antipiracy work flow:

• Identification of infringing files and file verification;

• Search for and identification of infringing files using P2P data collection agents;

*Confidential & Proprietary*

- Infringement verification and evidence collection; and

- Notice generation and enforcement.

Outlined immediately below is a list of the documentation that Stroz Friedberg reviewed in connection with our assessment.

- MarkMonitor P2P Enforcement Process Report, dated April 11, 2012;

- MarkMonitor Presentation entitled "Stroz Friedberg – Overview of Anti-Piracy Process";

- Screenshots of various components of the MarkMonitor antipiracy system;

- Test torrent files prepared by MarkMonitor;

- Case file packages generated from Stroz Friedberg's test of P2P content hosting; and

- Infringement Notice generated as a result of Stroz Friedberg's test P2P content hosting.

## Assessment of MarkMonitor AntiPiracy Platform

This section provides an overview of the MarkMonitor AntiPiracy Methodologies and outlines the steps it takes to monitor, verify, collect evidence regarding, and enforce against online copyright infringement on P2P file sharing networks.  For purposes of our assessment, Stroz Friedberg focused specifically on the extent to which these steps accurately identify copyright infringers; the checks and balances in place to ensure accuracy; and where any potential process break points exist.

### 1.  Platform Overview

The MarkMonitor AntiPiracy platform consists of an enterprise client-server environment designed to scan P2P networks and websites, collect and preserve evidence, and send infringement notices.  The system has been in use and evolving for over eight years, and in this time has developed into a reliable, dynamic, and highly extensible system.   In connection with MarkMonitor's MOU-related work, the system currently monitors the top four most popular P2P networks: BitTorrent, eDonkey, Gnutella, and Ares.

At the highest level, the MarkMonitor platform consists of Scanning Systems, multiple Operational Databases, Collection Agents, and Configuration Systems.  Figure 1 below visually depicts the antipiracy workflow and the interaction of these systems and databases.

*Confidential & Proprietary*



**Figure 1: MarkMonitor AntiPiracy Workflow**

To identify infringing works, MarkMonitor personnel search for magnet links, torrent files and other content files related to a list of copyrighted works and add the results to an Operational Database that captures relevant metadata about each file, including its name, hash values, and size.  This identified content is next reviewed manually or with automated fingerprinting technology to determine if it is an actual infringing copy of the protected work.  Once the work has been reviewed, its status is updated in an Operational Database to indicate that it has been confirmed as an actual infringing work.

Concurrently, identified infringing searches and torrents are deployed to a distributed collection of P2P Collection Agents.  The Collection Agent is a custom-built software application that runs on servers deployed in datacenters geographically spread across North America and Europe.  MarkMonitor has designed the agents to specifically target each of the four most-popular P2P networks.  The Collection Agents search for, download portions of, and create evidence packages or "cases" of infringing works including (among other data points) IP address, port, time/date, size, PeerID, and hash values.

Automated scripts are next used to import the cases from the Collection Agents to a centralized Operational Database (client database).  Here, additional scripts run to verify that the collected evidence is in fact a verified infringing work and meets all program requirements.

*Confidential & Proprietary*

After the collection has been verified, in the final step, infringement notices are generated and sent to the appropriate ISP based on specifications specific to each provider.

## 2.  Identification of Infringing Files and File Verification

Once a month the Content Owner Representatives provide MarkMonitor lists of titles of copyrighted works they would like monitored.  MarkMonitor identifies infringing online versions of these titles through a combination of programmatic and manual searches across known torrent sites, integrated P2P network searches, automated site crawling, and RSS monitoring.

Each new instance of an identified work is fully downloaded and reviewed by MarkMonitor personnel to verify that it is in fact an actual infringing copy of the title.  The purpose of this step is to verify that the file being targeted is the asset intended for monitoring by the content owners.  This verification step is crucial to ensure that the content owners are not enforcing antipiracy measures on non-protected works and is a key part of MarkMonitor's ongoing success in the proper identification of P2P copyright infringement.

In order to conduct the verification, for the MPAA, MarkMonitor analysts are required to:

- Manually review at least 10 minutes of a video file at the beginning, middle and end of the file, including reviewing all titles and credits; and

- Manually review at least two full minutes of content from each 10 minutes of the remaining content of the file.

For the RIAA, MarkMonitor analysts are required to:

- Use industry standard audio fingerprinting technology provided by Audible Magic to identify the first instance of an identified file, and match each subsequent version of the same file by hash value.  The Audible Magic settings require a "Type 3" match.[1]  With this setting, the entire suspected infringing file is fingerprinted, and that fingerprint is sent to a lookup server for identification.  An arbitrary 20 seconds segment is used to initially match the suspected infringing file against the reference file (i.e. reference sound recording).  Once initially identified in this manner, the remainder of the suspected infringing file is matched to the reference file to confirm the match across all or substantially all of the sound recording.

The status of each reviewed instance of each file and its hash value is recorded in MarkMonitor's Operational Database called the Hash Matching database.  The database will reflect the status of each reviewed file, indicating whether it is incomplete, fake, or a

---

[1] For the Type 3, the media sample up to 10 minutes is fingerprinted is sent to a lookup server for identification.

*Confidential & Proprietary*

verified infringing work.  Figure 2 below is a screenshot of the file verification entry into the Hash Matching database:



Figure 2: Torrent Manager File Verification

Searches for new versions of an in-scope title are conducted and added to the database continuously throughout the duration of a project/program.  However, only the first unique instance of each identified file is subjected to the full review process; each subsequent version can be verified as identical through SHA1 cryptographic hash matching, which confirms that the file is identical to the previously reviewed version. Though all identified versions of a file are deployed to the P2P data Collection Agents, as described in the next section, only verified infringing works are eligible to generate infringement notices.

### 3.  Search for and Identification of Infringing files with P2P Collection Agents

For purposes of its work pursuant to the MOU, MarkMonitor uses a distributed network of servers that can scale up to approximately 1,000 systems, all with custom designed data scanning and collection agent software.  This software, which consists of four different versions for each of the four targeted file sharing networks, is responsible for collecting information from P2P networks and websites.   The Collection Agents search process and functionality vary by P2P network, but are all designed to integrate and function on the P2P network as a standard peer and communicate and download data from other peers, just like a standard P2P client.

*Confidential & Proprietary*

Unlike a standard P2P client, however, the P2P Collection Agents are designed to document users' activities and generate evidentiary collections of shared content with relevant supporting information.  Also unlike standard P2P clients, the Collection Agents request and download only a portion of a shared file from each peer, typically around 512 kilobytes.  These individual pieces are verified by SHA1 cryptographic hash values to be part of the original targeted work and after the content is confirmed to part of the original targeted work, the download is stopped.  Downloading only a limited portion of the file allows the agents to minimize required storage space and target as many peers sharing a particular work as possible.  The figure below contains a screenshot of a P2P Collection Agent designed for BitTorrent searches:



Figure 3: BitTorrent P2P Collection Agent

The Collection Agents are configured by a centralized administration tool called the Remote Management Client Application.  This application has a series of modules designed to further facilitate configuration, including a Torrent List Manager and Agent Configuration Manager that are used to deploy torrents, add search terms, query torrent sites, turn agents on or off, and change other parameters related to searches for infringing works.  The Agent Configuration Manager is also used to filter collection to IP address blocks known to be associated with the Participating ISPs.

The Remote Management Client Application allows the search for content to be highly scalable and customizable, and allows for management of the distributed agents through a centralized console.  Figures 4, 5, and 6 below contain screenshots of the Remote Management Client Application, Torrent List Manger and Agent Configuration Manager, respectively:

*Confidential & Proprietary*



**Figure 4: Remote Management Client Application**



**Figure 5: Torrent List Manager**

*Confidential & Proprietary*



Figure 6: Agent Configuration Manager

### 4. Infringement File Collection and Verification

When a P2P Collection Agent connects with a peer and identifies an in-scope file, either through review of the Distributed Hash Table network, magnet link, relevant trackers, or an in-network search, it attempts to download a piece of that file and generate an infringement "case" package.

Stroz Friedberg found that the MarkMonitor case file generation follows practices consistent with industry standard forensic data collection, including generation of audit trails, robust documentation, hash verification, and repeatability. As described below, this infringement case package is an exhaustive and defensible collection of evidence about the infringement.

*Confidential & Proprietary*

In addition to collecting actual portions of the infringing work, each infringement case contains a series of XML-formatted log files with case specific information, a packet capture file ("PCAP"), and a presentation layer that renders the case information cleanly in a web browser.  Timestamps included in the log files are synchronized with Internet time servers and are configured to Coordinated Universal Time (UTC).  The evidence file includes the following key information:

- IP Address
- Country
- Capture Initiated time
- Capture Completed time
- P2P Protocol
- Target ISP
- Target Port
- Target Hostname
- Server ISP
- Server IP
- Server Port
- Server Hostname
- SHA1 hash value
- Connection type
- Peer Client Info
- Peer ID

Among the XML files in the case file are an activity log and a communication log.  These files provide a timeline for the entire collection process and detail the P2P protocol related communications between the Collection Agent and end user's peer sharing or downloading the infringing content.

Another of the XML files, the "ContentInfo" file, includes the name, SHA1 hash value, and size of the target file, as well as how much of the infringing work was shared by that particular user, and the portion downloaded and hash verified by the Collection Agent. The figure below contains an example of the ContentInfo XML file as displayed through the HTML presentation layer:

*Confidential & Proprietary*



**Figure 7: Content Info from Case File**

The evidence package also includes a traceroute of the user's IP address in connection with a reverse DNS lookup of all devices encountered, to determine the IP address, ISP, and geographic location of the peer.

MarkMonitor relies on the program WinPcap to preserve network packets exchanged between the Collection Agent and the target peer. The packet captures preserve and allow for review of the entire communication session between the P2P agent and the investigation subject.

Key to MarkMonitor's Methodologies is a second level of verification that is conducted at this point in the process. This "Infringement Verification" consists of a check to ensure that the individual file found shared by a user (and captured in part in the case file) is a true copy of the asset being monitored. Stroz Friedberg confirmed that for each instance of infringement, the MarkMonitor system verifies that:

- The IP address is sharing a file with the asset name;

- The IP address is verified as active by pinging it;

11

*Confidential & Proprietary*

- The IP address is detected as having a P2P client; and

- The hash reported by the peer matches a hash value in the database of confirmed infringing files.

This second verification level, or Infringement Verification, is accomplished by a series of scripts that automate these comparisons.  For example, the hash matching is accomplished by an SQL "interjoin" query across a verified hash table and the hash of the captured title as reflected in a content Operational Database.   If the file identified for infringement is not in the database of confirmed infringing files, it is downloaded in full and subjected to the manual File Verification process described above.  This results in a continually growing library of known hashes for each in-scope work.

Stroz Friedberg finds that these Infringement Verification steps are adequate and sufficient to confirm that files identified by the P2P Collection Agent are in fact copies of known infringing works.

### 5.  P2P Online Infringement Enforcement

MarkMonitor's enforcement-specific Methodologies consist of identifying the ISP associated with an infringement case, generating infringement notices, sending a notice to the ISP, and (at least in the case of RIAA-related works) logging notice responses received back from the ISPs and/or customer.  After a P2P Collection Agent has identified and downloaded a shared file, generated a case file, and that work has been verified as infringing (through both the File Verification and Infringement Verification process), notices are programmatically generated and sent by email.

Stroz Friedberg took steps to ensure that MarkMonitor's approach included safeguards to: (1)  only send notices for verified infringement cases that have been captured within the past 48 hours; (2) ensure notices are not duplicative of notices sent to the same IP address within the past 24 hours; (3) create notices using the proper template and format; (4) send notices to the proper ISP and correct contact address using the appropriate method; (5) make sure notices are delivered properly; and (6) for RIAA works, document responses from ISPs and users.  A mistake or breakdown in any of these areas could potentially result in a failure to properly report on or track infringement cases.  The specific steps MarkMonitor takes to address each of these six areas is discussed below:

- To ensure that notices are only sent on verified cases, MarkMonitor relies on scripts that generate notices only on cases that have been verified within the client database.

- To ensure that notice timeframe limitation rules are met, settings within the Remote Management Client Application allow MarkMonitor to specify the frequency of collection for a particular identified IP address.

*Confidential & Proprietary*

- To identify the appropriate ISP for each infringement case, MarkMonitor maintains its own database of IP-block to ISP correlation.  To ensure that this database is current, MarkMonitor uses the IP addresses identified in the reverse DNS lookups performed in the collection stage and compares them to a subscription service for ISP identification offered by MaxMind (www.maxmind.com).  MarkMonitor also proactively maintains and updates a list of ISP contact information as well as a report on each ISP to ensure its notices are directed to the appropriate location.

- To make sure its notices are delivered properly, MarkMonitor runs and reviews a weekly report on the SMTP server used to send notices.   Any address message blocking errors are addressed on a timely basis.

- To track notice response for RIAA content, MarkMonitor utilizes a call center in Los Angeles, California to facilitate communication with end users.  These users receive MarkMonitor contact information as part of the notification passed to them from the ISP.  MarkMonitor maintains weekly and monthly reporting on the notice responses.

Stroz Friedberg found these steps to be adequate and sufficient to ensure the proper creation and delivery of infringement notices.

### 6.  AntiPiracy System Redundancies

The MarkMonitor Methodologies have a number of inherent and added system redundancies designed to ensure that it can provide continuous consistent scanning.

First, the distributed nature of Collection Agents creates an inherent redundancy.  If one or even several systems fail, or if a certain IP range is backlisted from a P2P site, there are always hundreds of other systems utilizing different IP blocks or geographic locations online and available to continue scanning.

Second, the data collected by the Collection Agents and sent to the Operational Databases has built in levels of redundancy as each Collection Agent initially stores data locally.  This local storage serves as a caching mechanism and ensures no collected data is lost.  If an Operational Database is temporarily offline, the case data will queue locally and can then load once the Operational Database functionality had been restored.

Third, MarkMonitor configures the Collection Agents to conduct scheduled system restarts to ensure "fresh" connections to P2P networks and mitigate any other latency or performance issues.

Finally, MarkMonitor has centralized monitoring applications that allow manual administration of the Collection Agents as well as real-time status reports on the distributed Collection Agents.

*Confidential & Proprietary*

## Controlled System Test of MarkMonitor Platform

Stroz Friedberg worked with MarkMonitor to conduct a controlled test of its antipiracy Methodologies and to independently test the efficacy of the processes.  As described below, the test worked as expected and further demonstrated the overall effectiveness of the Methodologies.

Our test environment consisted of a VMWare virtual machine running Windows XP and the BitTorrent client application, version 7.7.0.  This virtual computer was connected to a business DSL line provided by one of the Participating ISPs, AT&T.  Our test machine connected to the Internet with IP address 76.214.12.234.

To test the operation of the Methodologies, Stroz Friedberg downloaded and became a seeder of a torrent file, "House season 4.avi".[2]  Figure 8 below contains a screenshot of the BitTorrent client running on Stroz Friedberg's test computer.



Figure 8: BitTorrent running on Stroz Friedberg test computer

The "House season 4.avi" content file was one that MarkMonitor had identified as a file to search for by the Collection Agents.  In our live test, the MarkMonitor Collection

---

[2] The "House season 4.avi" was not, in reality, a pirated copy of the NBC television series.

*Confidential & Proprietary*

Agent identified and began collecting data about our test system almost immediately after our BitTorrent client began seeding the file.

The P2P Collection Agent evidence collection lasted just over two seconds and resulted in the capture of 65,536 bytes out of the 2,908,160 byte file (or 2.3% of the total file). Figure 9 below depicts a remote session on the MarkMonitor Collection Agent that captured the evidence about our test system.  The highlighted folder "76.214.12.234 1340.zip" contains the evidence file as it resides on the MarkMonitor Collection Agent:



Figure 9: Remote Connection to MarkMonitor Collection Agent

Our inspection of this case file confirmed that the XML files contained within maintained the key information required to document our test computer's download and sharing of the "House season 4.avi" file, as well as information necessary to authenticate the collection.  The evidence collection package is included as **Exhibit 1** to this report.

MarkMonitor also took steps to generate a sample notice based on this test case using the template in place for a current MPAA program.  And though this manual notice generation did not fully duplicate the automated methods used to create notices in the MarkMonitor production environment, it helped demonstrate the workings of the overall process.  The notice email is included as **Exhibit 2** to this report.

## Enhancement Recommendations

Stroz Friedberg offers the following recommendations focused on improving the accuracy and reliability of MarkMonitor's already robust processes to ensure P2P infringers are properly identified in a defensible and well documented manner.  These recommendations are designed to further mitigate any potential break points and lower the probability of exposure as a result of inaccurate identification.

*Confidential & Proprietary*

### 1.   Augment the File Identification Audit Trail

MarkMonitor should consider adding additional checks to the file identification protocol to ensure that identified works are not improperly "verified" as an infringing work.  The current manual verification process employed by MarkMonitor to review the first instance of an identified file is key to all subsequent steps in its process.  Thus, if a file were to be improperly verified as infringing as a result of improper or incomplete review, it would generate a "ripple effect" through the entire AntiPiracy workflow, resulting in the collection and generation of notices for non-protected works.  Stroz Friedberg saw no evidence to suggest that this has occurred; however, we feel that the potential exposure risk at this juncture warrants supplemental mitigating measures.  MarkMonitor could augment its Hash Operational Database – the current repository for this information – to include a more detailed audit trail for each title, including why a file was verified as infringing, when, and by whom.  These added checks would need to be balanced with any detrimental effects on MarkMonitor's rate of file verification.

### 2.   Deploy a Higher Percentage of "Verified" Infringing Works to the Collection Agents

In the current model, MarkMonitor deploys all instances of an in-scope work to its Collection Agents, regardless of whether or not that file has been verified as an infringing work.  This is an efficient approach, as the agents can start searching for and identifying content immediately; however, it also results in the collection of thousands of files that are later determined not to be infringing works.  And though there are subsequent steps in place to ensure notices are only generated on verified infringing works, collection by the agents of these non-infringing files introduces inefficiencies into the process and increases the chances that notices will be generated for non-infringing files.  We appreciate that for P2P networks that rely on in-network searches it may not be possible to only search for known-verified infringing files; however, to the extent this is possible for P2P networks like BitTorrent, this change may prove to be a methodological enhancement.

### 3.   File Identification of Obfuscated Infringing Works

MarkMonitor's current program rules dictate that only infringing works that contain names that fully match the protected work will be subject to notice generation.  This is adequate for most circumstances, but in special circumstances titles do not always exist.  This would be especially important in looking for rare or sensitive infringements, like pre-release copies of content.

### 4.   Create and Maintain a Hash Value with the Case File

MarkMonitor's evidence collection in connection with each infringement case is robust and includes all information required to document the P2P transaction.  However, MarkMonitor could enhance the defensibility of its audit trail by generating a cryptographic hash of each entire case package contemporaneously with when the Collection Agent finishes the collection.  This practice is an industry standard in digital

*Confidential & Proprietary*

forensics, as it demonstrates that a file or collection has not been changed or edited over time.

### 5.  Notice Generation and Sending Should Move Away from Email/SMTP

MarkMonitor currently relies heavily on email/SMTP to send infringement notices to the ISPs.  This can be problematic as email servers often choke with high volumes of traffic, catalogue messages as spam, and addresses change.  To the extent possible, MarkMonitor should work with the ISPs to implement and rely on a different method of notice sending, such as an automated HTTPS transfer via a web form, or similar encrypted channel.

### 6.  Develop a Periodic Audit Framework

For auditing purposes, MarkMonitor should consider developing a framework that allows periodic audits to be conducted in an efficient, reliable, and repeatable manner. This audit should include a test that simulates a real-time search and allows for testing of the efficacy of the antipiracy workflow, a review of notice generation and metrics, and discussion of any P2P sharing or platform changes.  A predefined framework for such a review would create a consistent "yard-stick" against which the efficacy of MarkMonitor's processes could be evaluated on a periodic and ongoing basis.

## Recommendations for Ongoing Periodic Review

The MOU establishes that the Independent Expert shall evaluate the Content Owner Representatives' Methodologies on a periodic basis.  Stroz Friedberg proposes to accomplish this through a quarterly review of MarkMonitor's Methodologies.  The quarterly review would follow the recommended framework discussed above, and Stroz Friedberg can work with MarkMonitor to develop this framework.  The substance of the periodic review should include at least the following events:

➢ A briefing on protocols that have been changed or revised.

➢ Discussion of any P2P platform, network changes, or file sharing trends that may implicate the MarkMonitor Methodologies.

➢ A review of metrics related to notice generation sending and responses and trends compared to the prior quarter.

➢ A limited audit of a statistically relevant sample of reviewed/verified titles.

➢ A limited review of a statistically relevant sample of notices generated to ensure they relate to verified infringing works.

➢ Review a sample of collected cases to ensure they contain all required components.

*Confidential & Proprietary*

BOSTON, MA

CHICAGO, IL

DALLAS, TX

LOS ANGELES, CA

MINNEAPOLIS, MN

NEW YORK, NY

SAN FRANCISCO, CA

SEATTLE, WA

WASHINGTON, DC

LONDON, UK

## STROZ FRIEDBERG

www.strozfriedberg.com

© 2012 Stroz Friedberg. All rights reserved.