DocuSign Envelope ID: A92C09E8-7A0B-4ABC-B393-F3FA140ED025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC. et al.,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

---

**DECLARATION OF ALASDAIR MCMULLAN**

---

I, Alasdair McMullan, hereby declare pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my personal knowledge and belief:

1. I am Executive Vice President of Business & Legal Affairs at UMG Recordings, Inc., which is the United States-based legal entity for recorded music operations within the group of companies colloquially known as "Universal Music Group" or "UMG." Universal Music Group is a vertically integrated, global group of affiliated record labels, and other corporate entities, with common parentage through the Netherlands public limited company, Universal Music Group, N.V. Universal Music Group's foreign affiliated record labels operate on nearly every continent. In my capacity as in-house counsel for UMG Recordings, Inc., among other things, I manage and supervise litigation for Plaintiffs UMG Recordings, Inc. and Capitol Records, LLC (formerly Capitol Records, Inc.) (collectively, the "UMG Plaintiffs") and all of their record label affiliates. I submit this declaration in support of Plaintiffs' Opposition to Charter's Motion For Curative Measures and Sanctions For Plaintiffs' Spoliation of Evidence

based on personal knowledge and/or information learned in the course of my duties for Universal Music Group.

2.     The UMG Plaintiffs seek out and develop recording artists to create, exploit, and distribute copyrighted sound recordings and audiovisual works through various record labels. The UMG Plaintiffs' exclusive copyright interests in their catalogs of sound recordings are their principal corporate assets and are central to their businesses.

3.     The UMG Plaintiffs have, at times, authorized their trade association, the Recording Industry Association of America ("RIAA"), to conduct anti-piracy activities on their behalf, including in connection with detecting infringement of their works on peer-to-peer ("P2P") networks.

4.     For a period of years prior to 2008, the music industry had a well-known litigation program that involved lawsuits against individuals infringing on P2P services. Once that program ended in roughly 2007 or early 2008, RIAA and its members, including UMG Plaintiffs, shifted focus away from litigation against individuals and sought instead to send notices to internet service providers ("ISPs") of infringement occurring on their networks with the hope that they would comply with the law and take action to stop that piracy.

5.     Consistent with that approach, from 2008 through at least March 2015, MarkMonitor's efforts, on behalf of RIAA and its members, to monitor P2P networks and detect instances of infringement were part of a notice program, not a litigation program. The purpose of the notice program was to provide notice to ISPs (including Charter) of specific instances of infringement by IP addresses so that the ISPs could take appropriate action, since only the ISPs know which subscribers are associated with which IP addresses. Throughout the duration of the

notice program, the UMG Plaintiffs were not contemplating, considering or anticipating litigation against Charter or other ISPs involved in the RIAA notice program. Quite the opposite—the UMG Plaintiffs fully expected that the ISPs (including Charter) would take their legal responsibilities seriously, work with their subscribers to combat infringement that it knew was occurring on their networks, and take meaningful steps against repeat infringers.

6. On December 17, 2015, a federal jury in *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, found Cox Communications, Inc., another ISP, liable for secondary copyright infringement. Following that verdict, in early 2016, the UMG Plaintiffs, analyzed the notices that MarkMonitor sent to ISPs, including Charter, from 2012-2015 in a new light. Had Charter acted on the infringement notices to stop the infringing behavior, no litigation would have been necessary. The UMG Plaintiffs had not contemplated litigation before this point in early 2016.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 7th day of January, 2022 in  Los Angeles california  _____

DocuSigned by:
*Alasdair McMullan*
F516E6F66908443...

Alasdair McMullan

3