# Moore Declaration

# Exhibit 19

1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     Case No. 19-cv-874-RBJ-MEH
3    _____

4    WARNER RECORDS, INC., et al.,

5        Plaintiffs,

6    vs.

7    CHARTER COMMUNICATIONS, INC.,

8        Defendant.
     _____
9

10         Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, and REGINA M. RODRIGUEZ,

13   Court-Appointed Special Master, commencing at 9:22 a.m.,

14   February 22, 2021, in the United States Courthouse, Denver,

15   Colorado.
16   _____

17   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN
     TYPOGRAPHICALLY TRANSCRIBED. . .
18   _____

19                         APPEARANCES

20         JONATHAN M. SPERLING, SHIRA POLIAK, MATTHEW J.

21   OPPENHEIM, ALEX KAPLAN, STACEY GRIGSBY, ANDERS LIDEROT, J.

22   HARDER EHLERS, Attorneys at Law, appearing for the

23   Plaintiffs.

24   _____

25       IN COURT HEARING: UNRESOLVED DISCOVERY DISPUTES
```

196

1   only seeing that, so we can, Chris.
2           MR. SPERLING:  We see it on our screen too.
3           THE COURT:  Yeah, I know you are, but we're not.
4   Is it on this big guy here?
5           MR. ROSENTHAL:  Yes.
6           THE COURT:  Turn it around, please.  It's minimized
7   in our screen.
8           SPECIAL MASTER:  Now, we've got Matt again, only
9   bigger.
10          MR. OPPENHEIM:  It got worse, not better.
11          THE COURT:  All right, go ahead.
12          SPECIAL MASTER:  Yeah, there we go.
13          MR. OPPENHEIM:  So what you see in this document is
14  Charter in 2012 acknowledging that it had an obligation to
15  preserve responsive information and that it was preserving
16  all information responsive from this date to the present and
17  continuing forward.  And it says the following table should
18  not be dropped from the CATS and DHCP database is in order to
19  comply with this legal hold.
20          Now, when we first raised this with Ms. Rodriguez,
21  right -- let me back up.  So as -- according to this
22  document, as of October 2015 ticket data from 3/30/2012
23  forward should have been preserved.
24          THE COURT:  Well, hold on.  Can I ask you a
25  question why you have standing to raise this issue?

1      MR. OPPENHEIM:  Because if they had a legal hold in

2  place, then they should have had all this data.

3      THE COURT:  No, no, I agree with that, but why do

4  you have standing to assert that?

5      MR. OPPENHEIM:  Because -- well, the question is

6  what happened to it and when.  It appears that sometime after

7  October 13, 2005, which would have been during the discovery

8  period, right, during the claim period, that this was

9  destroyed.  I don't know -- and I don't -- I don't know that

10 because they haven't answered any questions about that.

11     THE COURT:  Right, but they weren't holding this

12 because of anything your clients did.

13     Am I right about that?

14     MR. OPPENHEIM:  That is correct.

15     THE COURT:  Okay.  So somebody else may have a big

16 beef with Charter for not preserving their documents.  And

17 even if these documents might have been responsive to

18 something you needed, your right to have them held didn't

19 accrue until you asserted a claim; is that correct?

20     MR. OPPENHEIM:  No.  The question, I think, Your

21 Honor --

22     THE COURT:  No, no, no.  I'm asking you if that's

23 correct.  Your legal right to have them hold documents and

24 preserve documents did not accrue until they had notice that

25 they might have a legal matter with your clients; is that

1   right?

2           MR. OPPENHEIM:  I disagree with you and I will

3   explain.

4           THE COURT:  Why?  Okay.

5           MR. OPPENHEIM:  Because if after they had notice or

6   were aware of our potential claim, they engaged in some

7   conduct that resulted in spoliation of data that they

8   understood would go to our claim, then they spoliated --

9           THE COURT:  That's what I just said.  I said after

10  they had notice of your claim.

11          MR. OPPENHEIM:  Or have reason, right.  And we

12  don't know when this was lost.

13          And if I can, and again, this is -- you've asked me

14  to do this without going through this piece by piece.  This

15  is the second piece.

16          The first piece is the 2015 Mingus hold of data,

17  which I'm going to go to next; but we don't know, Your Honor,

18  when this -- this 2012 forward data was potentially

19  spoliated.  They've refused to answer questions about it.

20  And when they were asked about this by Ms. Rodriguez at a

21  hearing, they said, Well, we don't know that this hold was

22  actually in place.  There may have been a remnant in the

23  document.

24          And so Ms. Rodriguez appropriately said to them,

25  Well, then you should figure that out.  And they came back

1   and they said, We have no written documentation indicating

2   that this legal hold was ever lifted.

3          MR. ROSENTHAL:  Your Honor --

4          MR. OPPENHEIM:  Now, they may think that something

5   happened that wasn't written and they haven't produced, but

6   they haven't spoken to it, they haven't told us.  As far as

7   we know, this is what the documentation shows.

8          THE COURT:  Well, wait.  Hold on.  Wouldn't that

9   only matter if they were relying on the 2012 hold as part of

10  the preservation of documents for your clients?

11         MR. OPPENHEIM:  Yeah, so let me connect this up to

12  the next one, which is the Mingus hold that came about in

13  roughly the same time period, in late 2015.

14         And so -- and what Mr. Rosenthal said about that is

15  he said, of course, the Mingus hold included CATS data.  So I

16  would ask you now to turn to slide 16.  Because while

17  Mr. Rosenthal is saying that now and said that a couple days

18  or two weeks ago, that's not what they had said before.

19         What they had told us in May and in February, but

20  (inaudible) in May, was right there in what they filed to the

21  Court.  They said relevant CATS data was maintained in

22  accordance with the CATS detention schedule.  They did not

23  say it was subject to the Mingus hold.

24         And then they said -- you can see right here,

25  Ms. Ranahan in a hearing, we go back to that time period.  By

1   the time we got notice of a lawsuit, it was only (inaudible)

2   six-months' worth of data and others 18, not the one

3   Mr. Rosenthal just said.

4          Go to the next slide, please.  So what we were then

5   told in February (inaudible), but by Ms. Ranahan, at the time

6   that the demand letter for this lawsuit was sent to in March

7   2016, Charter had a six-month retention policy for ticket

8   data (inaudible) itself and an 18-month retention policy for

9   ticket data.  Again, Mr. Rosenthal just said it was a year,

10  right, but again, in April Ms. Ranahan again told us in

11  writing, six months, 18 months, right there, April 1, 2020.

12         So here is what we've got on this.  Plaintiffs

13  don't know if the CATS data was preserved as of late 2012

14  going forward all the way to 2015, and then the Mingus hold

15  would have taken up and continued to preserve it, right.  And

16  then how long it would have preserved it for and how long

17  (inaudible).

18         All of these are totally -- these issue are totally

19  misunderstood.  Is it six months?  Is it one year as Mr. --

20  as we were just told?  Or is it 18 months?  Because

21  repeatedly we've been told different thing after different

22  thing after different thing.

23         So respectfully, Your Honor -- and I'm trying to

24  cut this short because I know the patience is running thin.

25  We need a discovery into the CATS retention and spoliation

1  issue, and that should both include -- some of it will be a

2  fact deposition of a witness who we're already going to take,

3  which will be Mr. Mabb, who we've heard so much about, or

4  it's a question of how much time we take for his deposition.

5            THE COURT:  Well, hold on.  When did the plaintiffs

6  notify Charter of their claim in this case?

7            MR. ROSENTHAL:  March 2016.

8            THE COURT:  March 2016.  So I'm going to ask you a

9  very clear question, Mr. Oppenheim, I want a very succinct

10 answer.

11           When did Charter's obligation to preserve documents

12 related to your clients arise?

13           MR. OPPENHEIM:  As of -- well --

14           THE COURT:  I knew you couldn't do it.

15           MR. OPPENHEIM:  As of -- well --

16           THE COURT:  I knew you couldn't do it.

17           MR. OPPENHEIM:  No, I am going to do it.

18           THE COURT:  Okay.

19           MR. OPPENHEIM:  It was certainly by no later than

20 the claim letter, but arguably at the time of the BMG vs. Cox

21 decision when they were on notice of a protective

22 (inaudible).

23           THE COURT:  All right.  So if they only had an

24 obligation to preserve information for your clients as of

25 March 2016, what basis do you have to raise -- anything that

1  was lost before March of 2016 wouldn't be spoliation.  As to
2  this case, it may be crappy document-handling procedures, it
3  may be gross negligence, it may be fraud, but it's not
4  spoliation, because they have the legal obligation to
5  preserve documents until the law says they do as to your
6  clients.
7           You may have all kinds of other arguments and maybe
8  even discoverable information to be had, but it's not called
9  spoliation as far as I understand that concept.
10          Does that make sense?
11          MR. OPPENHEIM:  No, because, Your Honor, they --
12          THE COURT:  It doesn't make sense?
13          MR. ROSENTHAL:  It makes --
14          THE COURT:  It makes sense.  You may disagree with
15  it, but it didn't make sense?
16          MR. OPPENHEIM:  No, no.  And if you will let me
17  explain --
18          THE COURT:  All right.
19          MR. OPPENHEIM:  -- I think what I have to say will
20  make sense.  They didn't put a hold in place at the time that
21  they received our letter, because they -- they didn't do
22  anything.  There is no discussion of them doing anything.
23  They -- they now claim -- there is no documentation for it --
24  that there was a hold in place already by virtue of the
25  Mingus claim.

1  narrow way that you phrase it, I think it's -- that could be

2  fall in the zone of spoliation, if they intentionally

3  destroyed documents pursuant to any policy.

4         MR. OPPENHEIM:  Well, based on the (inaudible).  If

5  they -- if they had documents -- if they have documents on

6  their system related to our claim at the time they went to

7  our letter, whether those documents go back six months, a

8  year or ten years, they have an obligation to act reasonably

9  to preserve it.

10        THE COURT:  As you phrase it, I agree.  As you

11 phrase that, I agree.

12        MR. OPPENHEIM:  Right.  So if they had documents on

13 their system as of March of 2016 dating back, either from the

14 Mingus hold or from the 2012 hold, it doesn't matter which,

15 they have an obligation to act reasonably to preserve that.

16        THE COURT:  Right, you just said that.

17        MR. OPPENHEIM:  So, right, but I was trying to put

18 it in the context of these specific holds.  So that's why the

19 Mingus hold and that's why the 2012 hold, right, that's why

20 they're important here.  Now --

21        THE COURT:  No, I disagree, I still don't see it.

22 I still don't see it.  Whatever documents existed as of March

23 2016, no matter why they existed, if they existed and there

24 was a way to determine that, they had an obligation to

25 preserve that.

1               MR. OPPENHEIM:  Right.

2               THE COURT:  Okay, so -- so if you could take a

3    snapshot -- if you could take a snapshot of every ounce of

4    information they had as of March of 2016, that's the universe

5    that they needed to think about in preserving information.

6    And then --

7               MR. OPPENHEIM:  I want to --

8               THE COURT:  -- let's move forward from there,

9    whatever they did or accidently, mistakenly, intentionally

10   from that point forward, that lost information relevant to

11   this case is the subject of debate and discussion and

12   discovery.

13              MR. OPPENHEIM:  So let me make two points to that.

14   I don't think we're that far apart and I think you're going

15   to agree with me.

16              One is, I want to put a pin in whether the trigger

17   date is the date of our letter or the date that they're on

18   notice of potential claims by virtue of the BMG decision.

19   There is law, Your Honor, that says that industry

20   participants can have a duty to preserve when they're put on

21   notice of potential claims.  So put a pin in that, whether

22   the trigger date is the date of our letter or the date of the

23   BMG vs. Cox decision.

24              But putting that aside, we have no idea factually

25   whether or not the documents were preserved from -- whether

208

1        All right.  So where do you think that you're going
2   to get crosswise with them, based on what I just said and
3   what Ms. Rodriguez just said?
4            MR. ROSENTHAL:  You're asking me?
5            MR. OPPENHEIM:  Oh, you're asking --
6            THE COURT:  I'm looking at you, but talking to him.
7   I don't know where to look.
8            MR. SPERLING:  The question was for Matt, but I
9   think at least one concern, Your Honor, would simply be, and
10  hear you loud and clear, but as far as their position, and I
11  think this is what we heard from Mr. Rosenthal, that in
12  connection with the March of 2006 letter put on notice of the
13  claims in this case, they relied on a hold placed in December
14  in 2015; that we should be able to explore at least what
15  happened with that hold in December 2015.
16           THE COURT:  Of course.
17           MR. SPERLING:  Okay.
18           ==THE COURT:  I'm telling you whatever conduct they==
19  ==engaged in on the representations they made to you as to, no==
20  ==worries, it's all taken care of, we are going to do this==
21  ==according to some other hold; that is, conduct that occurred==
22  ==on or after your notice and so that's what can be explored.==
23           ==And I'm telling you that they -- they got to cover==
24  ==this -- there is already somebody that they had a hold going==
25  ==on for is fine, but it's just what they actually did after==

1  March of 2016 that's going to matter on any motion.

2       I mean, I just don't think any judge I know is

3  going to sanction them for something they did in 2012 when

4  you gave them a notice in 2016.  It would be -- it would be

5  irreversible error.

6       MR. OPPENHEIM:  So, Your Honor, I think that makes

7  sense and let me see if I can bring this to a --

8       MR. ROSENTHAL:  Wait, wait, we don't need to bring

9  -- here we go again.  Now we are going to try and unwind the

10 whole thing.

11      THE COURT:  Well, you have got one minute to

12 summarize what you --

13      MR. ROSENTHAL:  No, no, I object.

14      THE COURT:  Why would you object?

15      MR. ROSENTHAL:  We heard extensive, extensive

16 argument well beyond what was reasonable.  The Court has

17 ruled here, and this is what they do every time, every single

18 time.  Back here, I'm just going to clarify my understanding.

19 Let me ask this.  This has been this case over and over

20 again.

21      They won't accept the Court's ruling.  It has

22 multiplied this litigation and raised costs tremendously.

23      THE COURT:  But --

24      MR. ROSENTHAL:  Sometime the Court has to say,

25 That's it, I ruled.

236

```
1                    TRANSCRIBER'S CERTIFICATION
2    I certify that the foregoing is a correct transcript to the
3    best of my ability to hear and understand the audio recording
4    and based on the quality of the audio recording from the
5    above-entitled matter.
6
7    /s/ Dyann Labo                       February 26, 2021
8    Signature of Transcriber                  Date
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```