# EXHIBIT I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

      Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

      Defendant.

---

### PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE DECLARATIONS OF MARY HAYNES AND ANDREW SCHAPIRO
---

Substantial portions of the Declarations of Mary Haynes (ECF 549-1) and Andrew Schapiro (ECF 549-5) in support of Charter's Motion for Summary Judgment attempt to introduce information and documents that would never be admissible at trial, and therefore cannot be used to support Defendant's Motion for Summary Judgment.

(1) Ms. Haynes testifies about communications by Charter subscribers that she learned about only third-hand, offered for the truth of the matter asserted. She also testifies about requirements of the Copyright Alert System ("CAS"), an educational program in which Charter never participated, and about which she has no personal knowledge. (2) Mr. Schapiro—Charter's counsel of record, who may not testify on its behalf at trial—offers hearsay documents that have not been authenticated. And both declarants attempt to offer summary exhibits without laying a proper foundation or meeting definitional requirements of Rule 1006.

Plaintiffs move to strike the portions of the Haynes and Schapiro Declarations suffering from these and other infirmities, because an "affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. Proc. 56(c)(4). These requirements are mandatory; there is no "license to relax the *content* or *substance* of the Federal Rules of Evidence when viewing a summary judgment affidavit[.]" *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (emphases in original). Accordingly, these portions of the declarations must be stricken.

## I. Portions of the Haynes Declaration Must Be Stricken.

### A. Ms. Haynes's testimony about what subscribers said and felt is inadmissible hearsay about which she has no personal knowledge.

In Paragraphs 10, 30-35, and 38 of her declaration, Ms. Haynes testifies about subscribers' states of mind upon receiving infringement notices and their conversations with *other Charter employees* about those notices. She repeatedly testifies, for instance, that ▇ ▇ Haynes Decl. ¶ 31, ¶ 10 ("▇"), ¶ 32 (same), ¶ 33 (same), ¶ 38 (same); *id.* ¶ 31 ("▇"), ¶ 33 (same). She also testifies that, ▇ ▇. *Id.* ¶ 35. And she testifies about statements that other Charter employees made in response. *Id.* ¶ 30 ("▇"), ¶ 32 (▇");

2

¶ 34 (███████████████████████████████████████████████████████████

████████████████████████████████").

None of this would be admissible were Ms. Haynes testifying in court—and it therefore must be stricken from her affidavit—for two independent reasons.

*First*, Ms. Haynes has no personal knowledge of these conversations. "Under the personal knowledge standard, a[] [summary judgment] affidavit is inadmissible if the witness could not have actually perceived or observed that which [s]he testifies to." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006). Ms. Haynes testified in her deposition that she did not actually perceive or observe subscriber communications. Specifically, Ms. Haynes testified that she would receive ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████. Sahni Decl. at Ex. 1 at 59:7-60:4, 65:5-22. Ms. Haynes' knowledge of these conversations is thus through third-hand summaries. Paragraphs 10, 30-35, and 38 must therefore be stricken as not made on personal knowledge. *Argo*, 452 F.3d at 1200 (affirming exclusion of affidavit of employee who was "not in a position to acquire" personal knowledge of co-workers' terminations, because he did not work in human resources).

*Second*, Ms. Haynes's testimony about what subscribers said and felt, and about other Charter employees' responses, is all hearsay or hearsay-within-hearsay. Because she did not participate in any subscriber communications herself, the paragraphs in which she testifies about what a subscriber said (*e.g.*, ████████████████████████████████████████ ██████" (¶ 31)), are relaying an out-of-court statement—what someone else told Ms. Haynes

3



the customer said—for the truth of whether the customer said it.  And the paragraphs in which she testifies to a subscriber's mental state—*e.g.*, " (¶ 10)—are double-hearsay, because Ms. Haynes is offering for its truth an out-of-court statement by a Charter subscriber, which statement Ms. Haynes heard only from someone else who repeated it to her.[1]

Charter's Motion for Summary Judgment ("MSJ") relies upon Paragraphs 10, 30-35, and 38 of the Haynes Declaration for the truth of the matters asserted in these hearsay statements, whether it be the fact of the subscriber communication, or the truth of what the subscriber (or an employee) allegedly said.  MSJ (ECF 549) at 3 (the " "); *id.* (" "); *id.* at 10 (" ").  Ms. Haynes's testimony thus must be excluded under Rules of Evidence 801 and 802; neither Charter nor Ms. Haynes laid any foundation for any hearsay exception.  *Johnson*, 594 F.3d at 1210 ("any hearsay contained in a summary judgment affidavit remains hearsay, beyond the bounds of the court's consideration").

### B. The Haynes "samples" are without foundation and inadmissible hearsay.

In Paragraphs 30 and 31, Ms. Haynes also attaches two summary documents purporting to show "samples" of subscriber communications:  a

---

[1] If Charter had wanted to put forward evidence that subscribers who were the subject of Plaintiffs' infringement notices believed they were innocent, Charter could have taken the depositions of those subscribers, where they would have been subject to cross-examination about their infringement.  Charter consciously decided not to seek any such testimony.

4

███████ (Exhibit B), and a ████████████████████████████████

████████████████████████ (Exhibit C). Her declaration does not attach the underlying

documents. The charts in Exhibits B and C purporting to summarize them can therefore be admissible only if they meet the requirements of a Rule 1006 summary. They do not, for no fewer than four independent reasons.

*First*, for a summary exhibit to be admissible, its foundation must be "laid through the testimony of the witness who supervised preparation of the exhibit." *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982). Charter did not even identify the person who supervised preparation of the Haynes samples; Ms. Haynes does not assert that she did so, and does not even attempt to attest to the summaries' authenticity and accuracy.

*Second*, the proponent of a Rule 1006 summary must lay a foundation for the admissibility of the material being summarized. *United States v. Irvin*, 682 F.3d 1254, 1262-63 (10th Cir. 2012) ("a contrary rule would inappropriately provide litigants with a means of avoiding rules governing the admission of evidence such as hearsay"). Charter did not attempt to do so here. Exhibit B contains two levels of hearsay: (1) the out-of-court statements from Charter employees, purportedly reflecting (2) out-of-court statements from Charter subscribers. The emails in Exhibit C are also hearsay statements from Charter subscribers. Charter's MSJ cites them for the truth of the matter asserted in the communications: that "customers . . . did not know of, or were not responsible for, the acts complained of in the notices," or that "they would take steps to prevent notices in the future." MSJ at 10-11 (citing Exs. B, C). This is, again, classic hearsay that must be excluded under Rules of Evidence 801 and 802; neither Charter nor

5

Ms. Haynes laid any foundation for any exception thereto. *See Irvin*, 682 F.3d at 1262 (district court erred in not requiring proponent of summary to establish hearsay exceptions).

*Third*, Rule 1006 permits summaries only of "voluminous writings, recordings, or photographs that cannot be conveniently examined in court," Fed. R. Evid. 1006, such that the summary is "the only practicable means of making [these documents'] contents available to judge and jury," R. 1006, Adv. Cmte. Note. Charter laid no foundation for that requirement; the summary should be excluded on that basis alone. *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,* 2014 WL 358866, at *5-9 (D. Colo. Jan. 31, 2014) (excluding seven different summaries, all on the basis that "[t]here is no indication that the underlying evidence is too voluminous to be conveniently examined in court").

Nor could it. For each of the 162 "sampled" documents, the exhibit simply quotes the subscriber communication to which Charter wants to call attention. The "samples" are thus not appropriate for a Rule 1006 summary. *See Predator*, 2014 WL 358866, at *5-8 (excluding four summaries on the basis that they "contain[] quotes from source documents, which are not appropriate for a summary"); *Griddine v. GP1 KS-SB, Inc.*, 2019 WL 1002049, at *8 (D. Kan. Feb. 28, 2019) ("it is not clear to the Court, without seeing any of the 223 pages of documents in question, that those documents are so voluminous as to require a summary").

*Fourth*, because Rule 1006 summaries are admitted into evidence even if the underlying documents are not, they must "summarize[] the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner, [with] [n]othing [] lost in the translation." *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). Summaries "containing elements of argumentation" or for pedagogical purposes are *not* admitted into

6

evidence. *Id*.; *see also Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1335 (10th Cir. 1996) (affirming exclusion of summary that was "compiled . . . to facilitate cross-examination and closing argument on a specific area, and as such [] was more pedagogical than evidentiary").

Charter's "samples" run afoul of this rule in two ways. To begin, Ms. Haynes misleadingly refers to the exhibits as "samples" and each is also titled a "sample," implying that the summarized communications were chosen as a representative subset of all such emails and logs. *Cf. Utah v. Evans*, 536 U.S. 452, 467 (2002) ("sampling" occurs when "statisticians seek[] to find a subset that will resemble a whole through the use of artificial, random selection processes"). But no "sampling" was performed: instead, Charter cherry-picked excerpts from its favorite subscriber replies and call logs, while omitting many others. Because Exhibits B and C misleadingly portray the documents they purport to summarize, they should be stricken. *See Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n*, 2014 WL 1715063, at *1 (D. Colo. Apr. 30, 2014) (striking summary because it "bears its argumentative title in writing"); s*ee also* 6 Weinstein's Federal Evidence § 1006.04 (2021) ("Rule 1006 summaries should be distinguished from . . . summaries [that] are used to reflect the party's own case"; the latter are "not admitted into evidence").

Further, Charter presented even its cherry-picked examples in a misleading way, by omitting any information from the underlying documents about the notices or rights-holder to which the "sampled" communications relate. As a result, the court or jury is left to assume that the communications in the "samples" concern *Plaintiffs'* notices, for which Charter has thousands of related subscriber replies and call notes, and not notices from other rightsholders. In fact, not one of them does. Charter's omission of key information from the documents being

7

summarized is another independent reason to exclude the samples. *See Silva v. Goodwill Indus. of N.M.*, 210 F.3d 390 (10th Cir. 2000) (affirming exclusion of summary that omitted key facts).

### C. Ms. Haynes's testimony about the Copyright Alert System is not based on personal knowledge and is inadmissible hearsay.

In Paragraphs 14-20 of her declaration, Ms. Haynes testifies about the "Copyright Alert System," which was a negotiated series of private agreements among some of the Plaintiffs in this case and certain ISPs, *not* including Charter. As all of the witnesses with firsthand knowledge testified when deposed by Charter, CAS was an "experiment," Decl. of J. Gould in Support of MSJ Opp. (concurrently-filed) at Ex. 8 at 266:18-267:12, Ex. 9 at 113:14-16, Ex. 10 at 133:1-25, Ex. 11 at 154:10-24, Ex. 12 at 117:20-118:5, Ex. 13 at 179:23-180:6, and expressly did not displace ISPs' obligations under the Copyright Act, *id.* Ex. 13 (Leak Tr. 179:14-21).[2]

CAS was announced in 2011. Its participants implemented the program in February 2013, Sahni Decl. Ex. 2 at 72:21-74:18, pursuant to confidential, negotiated agreements. Charter, as a non-participant, played no role in negotiating these agreements or performing under them. ECF 84 at 8 (Charter Objection) ("Charter was not a signatory to the CAS, and does not have access to many of the relevant documents and communications."). Ms. Haynes joined Charter in August 2013, *two years after* CAS was announced and *six months after* its implementation began. Sahni Decl. Ex. 1 at 18:17-19:16. She had no experience responding to copyright infringement notices or allegations prior to working at Charter. *Id.* at 25:13-26:14; 27:22-28:2.

---

[2] As the Court previously found, it is "difficult . . . to see how what plaintiffs were willing to accept from those [ISPs] in that context is relevant to" Charter's legal obligations. ECF 159 at 7.

8

And yet, in Paragraphs 14-20 of her declaration, Ms. Haynes testifies about subjects concerning which only CAS participants could have personal knowledge, including: what, among many features, was the "cornerstone" of CAS (¶ 16); what its "purpose" was (¶ 16); what the "participants in CAS recognized" (¶ 17); what the "methods endorsed by CAS" were (¶ 18); what, among many, constituted "the *primary* methods used by [] CAS" (¶ 19); that CAS participants did not terminate customers' internet access based solely on the receipt of infringement notices (whether as part of CAS or not) (¶ 19); and what the specific requirements of the program were (¶¶ 17, 20). All of this must be disregarded because Ms. Haynes "could not have actually perceived or observed that which [s]he testifies to." *Argo*, 452 F.3d at 1200.

Ms. Haynes also relays out-of-court statements about what the CAS participants "endorsed" (¶ 14), what they "announced" (¶ 15), and how they "described" the program (¶ 15). The testimony in these paragraphs must be stricken as hearsay, because Charter's MSJ cites them for the truth of the matter—whether CAS was, in fact, "a set of 'best practices'" and whether it was an "industry standard." *See* MSJ at 2 (citing Paragraphs 14-15).

### D. Ms. Haynes's testimony that Charter's processes were designed to be in line with CAS must be stricken as inconsistent with her deposition testimony.

In the Tenth Circuit, "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237-38 (10th Cir. 1986). They do so by evaluating the following factors: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.*; *see also Savacool v. Weir Oil & Gas*, 2021 WL 4426955, at *3 (D. Colo. Sept. 27,

9

2021) (Jackson, J.) (applying doctrine).

Ms. Haynes's declaration states that "███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████."

Haynes Decl. ¶ 18; *see also id*. at ¶ 14 ("███████████████████████████████████████████████

█████████████████████████████████████). These portions of her

declaration cannot be reconciled with her previous deposition testimony. Among other things,

███████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████:

1. "Initial Education Step": ISPs were required to send at least two alerts that "include[d], at a minimum, the information contained in the ISP notice regarding the alleged infringement." Sahni Decl. Ex. 3 at 8, § 4(g)(i).

2. "Acknowledgment Step": ISPs were required to send at least two alerts that "require[d] acknowledgment of receipt," either in the form of a "temporary landing page" or a "pop-up notice." *Id*. at 9, § 4(g)(ii).

3. "Mitigation Measures Step": ISPs were required to send additional alerts forcing acknowledgment via landing page or pop-up *and* take a mitigation measure, such as restricting the subscriber's access or reducing their internet speed. *Id*. at 4(g)(iii).

*First*, Ms. Haynes testified in her deposition that, █████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████.

Sahni Decl. Ex. 1 at 98:16-101:17. *Second*, Ms. Haynes testified that █████████████████

███████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████

████████████" *Id*. at 108:11-110:14, 84:12-85:8. And *third*, Ms. Haynes testified that █████

███████████████████████████████████████████████████████████████████████████████████████

10



. *Id.* at 57:13-58:13 (

), 161:15-22 (

); 188:1-189:8 ( ).

Paragraphs 14 and 18 of Ms. Haynes's declaration thus must be stricken because they contradict her prior deposition testimony, and (i) Charter cross-examined her at her deposition, *see* Sahni Decl. Ex. 1 at 252:14-255:14, (ii) she had access to pertinent evidence, and (iii) her earlier testimony does not reflect confusion which the declaration attempts to explain. *Franks*, 796 F.2d at 1237-38 (district court appropriately struck summary-judgment affidavit that met these three conditions); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (same); *Burns v. Bd. of Comm'rs of Jackson Cnty*, 330 F.3d at 1275, 1281-82 (10th Cir. 2003) (district court correctly disregarded Rule 30(e) declaration meeting those criteria).

## II. Portions of the Schapiro Declaration Must Be Stricken.

### A. The "Wayback Machine" printouts that Mr. Schapiro attaches are inadmissible hearsay that has not been authenticated.

Mr. Schapiro's declaration attaches, as Exhibits B and C, printouts "downloaded on November 12, 2021" from the "Internet Archive Wayback Machine" that purport to replicate webpages—a press release and a "fact sheet"—as they appeared over ten years ago, in July 2011. The exhibits must be disregarded because the Wayback Machine webpages *and* the press release and fact sheet they purport to replicate are hearsay and have not been authenticated.

1. *The Wayback Machine webpages are hearsay and not authenticated*.

The Wayback Machine is "a service that allows people to visit archived versions of Web sites." *Shell v. Henderson*, 2013 WL 2394935, at *9 n.15 (D. Colo. May 31, 2013). "Evidence

11

of this type," absent testimonial corroboration, presents hearsay and authenticity problems. *Id.* Thus, "courts have rejected evidence from the Wayback Machine when the only evidence submitted were screenshots attached to an attorney declaration," as is the case here. *Really Good Stuff, LLC v. BAP Invs., L.C.*, 2021 WL 2469707, at *10 (S.D.N.Y. June 17, 2021) (citing cases). In order to overcome these authenticity and hearsay problems, the proponent must either (1) introduce testimony from an employee of the archive to explain how the webpage was captured and preserved and the reliability of the archive's contents, *see, e.g.*, *United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018); *United States v. Bansal*, 663 F.3d 634, 667-68 (3d Cir. 2011); or (2) offer some other testimony to provide sufficient indicia of reliability, *see Live Face On Web, LLC v. Integrity Sols. Grp., Inc.*, 421 F. Supp. 3d 1051, 1069 (D. Colo. 2019) (not requiring testimony of Wayback employee where proponent offered testimony of witness with personal knowledge of the appearance of the website on the date it was archived). Charter did neither, and therefore Exhibits B and C to Mr. Schapiro's declaration must be stricken.

        2.    *The press release and "fact sheet" are hearsay and not authenticated.*

Even if Charter had properly authenticated the Wayback Machine printouts as true copies of what appeared on the websites in question on the date in question, the *underlying* documents themselves—the press release and "fact sheet"—would still be inadmissible for two reasons.

*First*, Charter also failed to authenticate that pages from the website www.copyrightinformation.org (which today points to a mattress-sales website) are what they purport to be. "To satisfy the requirement of authenticating [] an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," such as "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901. Under

12

Fed. R. Evid. 902, Charter was required to introduce "extrinsic evidence of [the websites'] authenticity," because "private websites, or websites that do not fall squarely within the language of Rule 902(5), are not considered self-authenticating," *Powers v. Emcon Assocs., Inc.,* 2017 WL 2718476, at *5-6 (D. Colo. June 23, 2017); *see also Hansen v. PT Bank Negara Indon. (Persero)*, 706 F.3d 1244, 1249-50 (10th Cir. 2013) (holding that information purportedly from private website requires authentication). Charter deposed at least six witnesses about CAS, including the Executive Director of the consortium that operated CAS, but did not ask anyone about the Wayback Machine printouts. Instead, Charter downloaded the unauthenticated Wayback Machine printouts three days before their summary judgment motion was due. *See* Schapiro Decl. ¶¶ 2-3.

*Second*, the documents are clearly hearsay. Charter's MSJ cites them for the truth of the matter asserted: for example, that CAS was "a framework of best practices," "the cornerstone of [which] was customer education." MSJ at 8; *see also id.* at 2, 13.

### B. The Schapiro summary Exhibit F must be stricken because Mr. Schapiro cannot testify as a summary witness.

In Paragraph 8, Mr. Schapiro attaches, as Exhibit F, a "chart summarizing information contained in the copyright registrations for 71 specific works-in-suit . . . and the corresponding notice of alleged copyright infringement." His declaration did not attach the underlying documents. The chart in Exhibit F purporting to summarize them therefore can be admissible only if it meets the requirements of a Rule 1006 summary. It does not.

Again, the foundation for a Rule 1006 summary must be "laid through the testimony of the witness who supervised preparation of the exhibit." *Behrens*, 689 F.2d at 161. The Schapiro Declaration does not identify who created, supervised, or directed the creation of Exhibit F.

13

Exhibit F therefore lacks the necessary foundation to be admissible.

Further, the witness who testifies to a Rule 1006 summary's foundation must be available for cross-examination, *United States v. Quinn*, 566 F. App'x 659, 667-68 (10th Cir. 2014), and therefore cannot be Mr. Schapiro, Charter's counsel. *Mascarenas v. Am. Fam. Mut. Ins. Co.*, 2015 WL 8303604, at *4-5 (D. Colo. Dec. 8, 2015) (lawyer "cannot both represent Plaintiff at trial and testify as a witness regarding a contested factual issue"); *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) (Rule 1006 contemplates that summary "will have been prepared by a witness available for cross-examination, not by the lawyers trying the case."). Because Charter has not offered any testimony regarding Exhibit F from a witness who can testify at trial, Exhibit F must be stricken.

Finally, Exhibit F must be stricken as hearsay: Charter offers the summary for the truth of the matter asserted on the chart, but there is no admissible testimony regarding its contents.

### C. Mr. Schapiro's testimony characterizing documents must be stricken as attorney argument not based on personal knowledge.

In Paragraphs 5-7, Mr. Schapiro characterizes interrogatory responses prepared by Plaintiffs and argues that "based on the information" provided in those responses, if the Court makes the legal ruling requested in Charter's MSJ, thousands of works should be deemed ineligible for statutory damages. In Paragraphs 8 and 9, Mr. Schapiro characterizes the documents cited in the inadmissible summary Exhibit F, and goes on to assert that they "show[] that for each of the 71 works-in-suit listed, the work-in-suit was (a) not registered at the time a Notice was sent to Charter, and (b) not registered within three months of the date the work was first published." In Paragraph 10, Mr. Schapiro concludes that "[b]ased on a review of the

14

copyright registrations produced by Plaintiffs for the works-in-suit, 6,440 sound recordings at issue in this case were registered as works-for-hire."

This is not testimony, but argument about conclusions to draw from *Plaintiffs'* documents and information. These portions of Mr. Schapiro's declaration must be excluded because "the lawyer trying the case should not testify, in person or by affidavit, concerning factual matters at issue, particularly when those facts are transformed into legal conclusions." *Associated Int'l Ins. Co. v. Crawford*, 182 F.R.D. 623, 628 n.9 (D. Colo. 1998); *see also Houston Cas. Co. v. Swinerton Builders*, 2021 WL 5736435, at *4 n.2 (D. Colo. Dec. 2, 2021) ("Defendant has cited no legal authority demonstrating that the court may consider arguments raised in an attorney's declaration attached to a response to a motion for summary judgment").

## CONCLUSION

For the foregoing reasons, the Court should strike the portions of the Haynes and Schapiro Declarations specified above.

| | |
|---|---|
| Dated: December 20, 2021 | */s/ Jonathan M. Sperling* |
| Matthew J. Oppenheim<br>Jeffrey M. Gould<br>Alexander Kaplan<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>jeff@oandzlaw.com<br>alex@oandzlaw.com | Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br><br>Neema T. Sahni<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>nsahni@cov.com<br><br>*Attorneys for Plaintiffs* |

15