# EXHIBIT III

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

WARNER RECORDS INC., *et al.*,

    Plaintiffs,

*v.*

CHARTER COMMUNICATIONS, INC.,

    Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**CHARTER'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE PORTIONS OF
THE DECLARATIONS OF MARY HAYNES AND ANDREW SCHAPIRO**

In support of its motion for summary judgment, Dkt. 549 ("MSJ"), Charter submitted declarations from: (1) fact witness Mary Haynes, Dkt. 549-1 ("Haynes Decl."); and (2) Charter's counsel, Andrew Schapiro, Dkt. 549-5 ("Schapiro Decl.").[1] Aside from the fact that "[m]otions to strike are disfavored, particularly in the context of motions for summary judgment," *Enos-Martinez v. Bd. of Cnty. Comm'rs of the Cnty. of Mesa*, 2012 WL 1079442, at *1 (D. Colo. Mar. 30, 2012) (quotations omitted), Plaintiffs' motion to strike Ms. Haynes's and Mr. Schapiro's declarations, Dkt. 608 ("Mot."), are meritless and should be denied.

---

[1] The proper course for Plaintiffs to challenge such evidence would have been to raise objections in their response brief, with the Court then "disregard[ing] those portions of the [declarations] that are objectionable." *Green v. Cath. Health Initiatives Colo.*, 2007 WL 136558, at *1 (D. Colo. Jan. 16, 2007) (Hegarty, M.J.) (denying motion to strike as inappropriate remedy "under the prevailing case law"). Further, Plaintiffs did not make any attempt to confer with Charter before filing their motion, which violates Local Rule 7.1(a), and have offered no justification for waiting 35 days to file their motion after being served with the two declarations. Declaration of Jessica Rose ("Rose Decl.") ¶ 1.

1

# ARGUMENT

## I. NO PORTIONS OF THE HAYNES DECLARATION SHOULD BE STRICKEN

Mary Haynes is Charter's Group Vice President of Network Security Operations, and has worked in Charter's Network Security Operations division in a senior capacity since August 2013. Haynes Decl. ¶ 1. As she states in her declaration, "[i]n the course of my duties, I have become familiar with Charter's business generally," including, among other things, "Charter's program for addressing allegations of copyright infringement levied against Charter subscribers." *Id.* She further declares that she has "personal knowledge of the facts stated in this declaration." *Id.* ¶ 2.

### A. Ms. Haynes's Testimony About Subscribers' Statements Is Based On Personal Knowledge And Is Not Inadmissible Hearsay

Ms. Haynes testifies that . Haynes Decl. ¶¶ 7-13. Plaintiffs argue that statements in ¶¶ 10, 30-35 and 38 of Ms. Haynes's declaration about these communications are not admissible because they are (1) not within her personal knowledge and (2) hearsay. Mot. 2-4. These arguments lack merit.

#### 1. Mrs. Haynes Statements Are Within Her Personal Knowledge

Rule 56 requires declarations to be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A declarant's personal knowledge may be based on knowledge obtained from doing his or her job. *See Pipkin v. Mortg. Creditcorp. Inc,* 72 F.3d 138, 138 n.5 (10th Cir. 1995). The declarant need not have "witnessed every incident" described. *Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1318 (8th Cir. 1996).

As a senior officer of Charter's Network Security Operations division, Haynes Decl. ¶ 1, Ms. Haynes oversaw the operations of Charter's anti-infringement program. She was thus in a position to acquire personal knowledge about this program to which she testifies, including Charter's communications with subscribers on this subject. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (personal knowledge can be "reasonably inferred" from role). As the executive in charge, Ms. Haynes need not have been personally present on every call to possess personal knowledge of them. *See, e.g.*, *Deer v. XPO Logistics Freight, Inc.*, 2019 WL 699112, at *3 (D. Colo. Feb. 20, 2019) (human resources officials were "qualified based on personal knowledge to attest to XPO's application processes"); *see also Aucutt*, 85 F.3d at 1318. Ms. Haynes' testimony is also based in part on her review of business records documenting the contents of these communications, which were regularly created and kept by Charter. *Alloc, Inc. v. Pergo, L.L.C.*, 2010 WL 3808977, at *8 (E.D. Wis. Sept. 23, 2010) (declarant's "position and experience, coupled with his review of [internal] documents, render him capable of having 'personal knowledge'" of both "current" and "historic" policies, even if not physically present).[2]

Plaintiffs primarily rely upon *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) to challenge Ms. Haynes' personal knowledge. Mot. 3. In *Argo*, the lack of personal knowledge did not turn on whether the declarant was physically present, but rather

---

[2] Plaintiffs' argument (Mot. 3) that Ms. Haynes was not present on each customer call goes to hearsay, not personal knowledge. *See* FRE 602 adv. comm. note ("This rule does not govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement."). And while Plaintiffs complain that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Mot. 3), Ms. Haynes's testimony is also based on her review of the records in Exhibits B and C. In any event, Ms. Stewart and Ms. Rowlett may also lay foundation for such materials at trial if necessary.

3

that as "a *co-worker*, and *not a human resources official*, [the declarant] simply was not in a position to acquire … comprehensive knowledge" about the termination at issue. *Id.* (emphasis added). Ms. Haynes, by contrast, was the Charter executive overseeing its copyright program. Haynes Decl. ¶¶ 1, 7.

### 2. Ms. Haynes's Statements Are Admissible

Ms. Haynes' statements (¶¶ 10, 31-35, 38) are not hearsay (Mot. 3-4) because they are not being offered into evidence for their truth. Rather, they are being used to demonstrate ***the fact*** that subscribers ***stated to Charter*** that they were disputing or unaware of the infringements. *See, e.g.,* Haynes Decl. ¶ 33 ("███████████████████████████████████████████████████████████████████████████████████████…"). In other words, the statements are offered not to prove whether alleged infringements did or did not occur, but for the fact that subscribers made such statements to Charter. FRE 801(c) adv. comm. note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted …"); *Ries Biologicals, Inc. v. Bank of Sante Fe*, 780 F.2d 888, 890 (10th Cir. 1986) (admitting statements "offered for a nonhearsay purpose" of "the fact the statements were made"). For this reason, third-party statements are routinely admitted to show their effect on the listener. *See, e.g.*, *Savacool v. Weir Oil & Gas*, 2021 WL 4426955, at *3 (D. Colo. Sept. 27, 2021) (Jackson, J.) ("An out-of-court statement offered to show the effect of that statement on a listener is not hearsay."); *Tygrett v. City & Cnty. of Denver*, 2020 WL 6873953, at *3 n.5 (D. Colo. Nov. 23, 2020) (Hegarty, M.J.) (similar); *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) (similar).

Charter properly uses this testimony to show that it "█████████████████

4

███ not as evidence of what customers *actually* did or did not know. MSJ 3 (emphasis added); *id.* 10 (similar as the fact that customers would "inform Charter"). This evidence also explains why Charter adopted a program of communication and education. *Id.* 2-3; *see Pedroza v. Lomas Auto Mall, Inc.*, 2009 WL 1325440, at *9 (D.N.M. Apr. 6, 2009) (statement admissible to "explain why the employees took the actions they did").[3] And as described *infra* Part I.B, Charter's records of such statements are admissible as business records, so there is no hearsay-in-hearsay problem.

At bottom, Plaintiffs' objection to Ms. Haynes testimony is hyper-technical: Plaintiffs complain that Ms. Haynes's statements do not explicitly say that customers ███

███. But the meaning of these statements is clear from the context of the declaration. And had Plaintiffs conferred with Charter, this issue could easily have been addressed through supplementation instead of motion practice. But alas, here we are. In its reply submission, Charter will supplement the Haynes declaration by adding the words "told Charter" to clarify the meaning of the contested testimony.

### B. Ms. Haynes's Summaries Of Examples Of Charter's Notes And Communications With Customers Could Be Properly Admitted At Trial

Ms. Haynes's declaration includes summaries of examples of: (1) the Security Team's notes of calls with customers who received copyright notices (¶ 31 & Ex. B); and (2) customers' emails to Charter after receiving such notices (¶ 32 & Ex. C). Plaintiffs challenge the admissibility

---

[3] Although the Court need not reach the issue, the customer statements are also admissible under the state-of-mind exception to hearsay, as they are statements of the declarant's then-existing awareness or unawareness of committing certain acts. *See* FRE 803(3).

5

of these summaries on the grounds that they do not meet the requirements of a Rule 1006 summary. Mot. 4-8. Plaintiffs' objections are meritless.

Plaintiffs first argue (Mot. 5) that Ms. Haynes does not specifically identify who supervised preparation of the two summary exhibits. However, Plaintiffs make no argument that such a foundation could not be set at trial. *See Danielson v. Huether*, 2021 WL 217706, at *7 (D.S.D. Jan. 21, 2021) (FRE 1006 summary admitted where underlying materials "would be admissible at trial"). In any event, to cure this theoretical deficiency, Ms. Haynes will submit a supplemental declaration in connection with Charter's summary judgment reply providing additional detail about the preparation of the exhibits. *Alpha Prime Dev. Corp. v. Holland Loader Co., LLC*, 2010 WL 2691774, at *3 (D. Colo. July 6, 2010) (accepting supplemental declaration on reply).

Plaintiffs also err in arguing (Mot. 5-6) that the contents of Exhibits B and C are inadmissible hearsay. As explained above, the communications with subscribers are not being offered for their truth, but to show the fact that subscribers regularly gave this type of feedback about notices to Charter (whether or not the feedback is true), thus impacting Charter's view of the notices. MSJ 10-11 (citing Exhibits B and C as examples of "feedback" received from customers). And as to a supposed second level of hearsay in Exhibit B (Mot. 5), the Team's notes satisfy FRE 803(6)'s business record exception. Specifically, the notes "(1) have been prepared in the normal course of business; (2) have been made at or near the time of the events recorded; (3) [are] based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) indicate the sources, methods and circumstances by which the record was made were trustworthy." *U.S. v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008). As Ms. Haynes explains: "████████████████████████████████████

6

████████████████████.” Haynes Decl. ¶ 31. Thus, these were contemporaneously recorded in the regular course of business and have indicia of trustworthiness. *See Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 966 (W.D. Wis. 2013) ("call logs and notes are admissible under the exception to hearsay for records of regularly conducted activity" where declarant's position at company provides personal knowledge, even if he did not enter notes). Ms. Haynes can further lay this foundation at trial, and Plaintiffs make no argument to the contrary.

The summaries also satisfy FRE 1006's "voluminous writings" standard. Mot. 6. The materials summarized were part of a program that ████████████████████████████████████████████████████████████████████████." Haynes Decl. ¶ 13. ████████████████████████████████████████████████████████████████. *Id.* ¶ 31. Summaries of examples of 165 such calls and emails plainly satisfy FRE 1006, which "allows the use of summaries when '[t]he contents of voluminous writings … cannot *conveniently* be examined in court.'" *U.S. v. Schuler*, 458 F.3d 1148, 1154 (10th Cir. 2006) (quoting FRE 1006) (emphasis added). Submitting 165—let alone tens of thousands—of individual call records and emails where summaries convey their relevant contents would be far less convenient for the Court.[4]

Further, there is nothing misleading or inappropriate with summary charts that accurately convey the contents of voluminous materials. While Plaintiffs take issue (Mot. 7) with the word

---

[4] Nor is there any bar to a FRE 1006 summary quoting excerpts of material. Mot. 6. To the contrary, the Rule requires such summaries to be used "to prove the content of" the writings. *See U.S. v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006) ("[c]harts admitted under Rule 1006 are explicitly intended to reflect the contents of the documents they summarize"). Of course, if the Court would prefer to inspect full copies of all 165 call logs and emails summarized in the Exhibit, Charter will submit those documents for the Court's consideration upon request.

7

"sample" at the top of the two summaries, a layperson's description of examples of records as a "sample" in no way implies that she conducted a *statistical* analysis, as Plaintiffs suggest. *Cf. Utah v. Evans*, 536 U.S. 452, 464-65 (2002) (referring to federal statute's authorization of a "*statistical method* known as 'sampling'" for U.S. Census) (cited at Mot. 7).[5] Nor do Plaintiffs explain why they think these examples are "misleading." Mot. 7-8. In any event, Plaintiffs have a complete set of these documents.[6]

### C. The Haynes Testimony About The Copyright Alert System Is Based On Her Personal Knowledge And Is Not Inadmissible Hearsay

Plaintiffs argue (Mot. 8-9) that Ms. Haynes' testimony about CAS is not admissible because (1) Ms. Haynes did not personally participate in the CAS negotiations from 2011-2013 and (2) prior to working at Charter, Ms. Haynes did not handle copyright-related issues. Plaintiffs' arguments ignore that CAS was a well-known and widely-publicized program that purported to set forth "best practices" for how ISP's should handle copyright complaints. *See* Rose Decl. Ex. A (press release about CAS program); *id.* Ex. B (Lesser Tr.) 84:6-88:1 (FAQ from CAS's website to "educate people about the system"); *id.* Ex. C (blog post about CAS program). Moreover, the CAS program was in effect throughout the time Ms. Haynes worked at Charter overseeing its anti-infringement efforts, and in this capacity she became familiar with it. Haynes Decl. ¶ 15; Rose Decl., Exs. A-C. As the executive overseeing Charter's anti-infringement program, Ms. Haynes

---

[5] In *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n*, 2014 WL 1715063, at *1 (D. Colo. Apr. 30, 2014) (cited at Mot. 7), the Court *permitted* admission of the summary exhibit "bearing a neutral, non-argumentative title." *Id.* at *2. So too here, the Court may consider the exhibit's contents, and leave for trial whether the heading needs modification.

[6] In *Silva v. Goodwill Indus. of N.M., Inc.*, 2000 WL 358437, at *2-3 (10th Cir. 2000) (cited at Mot. 7-8), the summary of instances of reverse discrimination did not include other applicants' gender, qualifications or prospective jobs, so it did not provide "even meaningful[] information."

8

may properly testify to the company's knowledge and understanding of the CAS program and how Charter's own policies were developed around and comported with the "best practices" touted by that program. Rose Decl. Ex. A (CAS press release and FAQ documents promoting program as best practice). FRE 602 "does not require first-hand observation or experience" or "that personal knowledge be acquired contemporaneous with the events at issue"; rather, "'[p]ersonal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry practice, is a sufficient foundation for lay opinion testimony.'" *In re RFC & RESCAP Liquidating Tr. Action*, 2020 WL 504661, at \*6 (D. Minn. Jan. 31, 2020) (quoting *Qwest Corp. v. City of Santa Fe*, 2013 WL 12239494, at \*1 (D.N.M. Apr. 15, 2013)).

Plaintiffs also argue that the CAS negotiations were "confidential" (Mot. 8), but do not identify any facts that Ms. Haynes could not acquire from public sources in her capacity as the supervisor of Charter's notice program from 2013-2016. Ms. Haynes states that "Charter's processes for addressing alleged copyright infringement on the Internet"—processes she oversaw and directed—"were designed to be in line with the widely accepted industry best practices at the time" including the CAS program, Haynes Decl. ¶ 14, that members of certain industries "announced" and "described" this framework in 2011, *id.* ¶ 15, that CAS had certain requirements and features that Charter's program shared, *id.* ¶¶ 16-19, and that Charter "was aware" of CAS's requirements, *id.* ¶ 20. None of these facts are confidential. *See* Rose Decl. Exs. A, C.

Finally, Plaintiffs' argument (Mot. 9) that Ms. Haynes' statements about Charters' understanding of the CAS program (*see, e.g.*, Haynes ¶¶ 14-15) is hearsay should be rejected. Ms. Haynes does not relay *any* out of court statements in her testimony. Rather, she testifies about her own knowledge and understanding of the nature and purpose of the CAS program gleaned from

9

her personal experience as the executive responsible for implementing Charter's own version of the program. This testimony is plainly admissible.

### D. Ms. Haynes's Statements About Similarities Between Charter's Copyright Program And The CAS Program Is Not A "Sham"

Plaintiffs argue that the testimony in paragraphs 14 and 18 of Ms. Haynes's declaration is inadmissible because it "cannot be reconciled with her previous deposition testimony." Mot. 9-11. But the previous deposition testimony cited in no way contradicts Ms. Haynes's declaration.



. Ms. Haynes's declaration states:

18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Haynes Decl. ¶¶ 18-19 (emphasis added). Ms. Haynes could not be clearer in her declaration that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Rose Decl. Ex. B (Lesser Tr.) 95:1-96:3 (CCI Executive Director describing CAS as a "voluntary system … for education, deterrence and redirection" and explaining "it was important to us to make clear that the [CAS] did not have a termination aspect to it").

Plaintiffs do not identify any deposition testimony from Ms. Haynes contradicting her declaration. In fact, Plaintiffs did not ask Ms. Haynes *any* questions about CAS at her deposition,

10

Case 1:19-cv-00874-RBJ-MEH Document 684 Filed 01/27/22 USDC Colorado Page 12 of 25
Case No. 1:19-cv-00874-RBJ-MEH Document 560-30 Filed 11/10/21 USDC Colorado Page 11 of 12
of 16

even though she was the witness designated to give testimony on this subject pursuant to Fed. R. Civ. P. 30(b)(6). Instead, Plaintiffs resort to nitpicking what are minor distinctions between



. But Ms. Haynes's declaration leaves room for such minor distinctions because it states clearly that                                                       . Ms. Haynes' declaration therefore is far from the "unusual" scenario of a "sham" affidavit, where a witness "directly contradict[s] her earlier deposition testimony." *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014) (quotations omitted).

## II. NO PORTIONS OF THE SCHAPIRO DECLARATION SHOULD BE STRICKEN

### A. The Two "Wayback Machine" Exhibits Are Authenticatable And Admissible

Mr. Schapiro's declaration appends two exhibits that are archived webpages from www.copyrightinformation.org, the website of the Center for Copyright Information ("CCI")—which ran the CAS program—printed from the Internet Archive. *See* Mot. 11-12 (explaining Internet Archive's "Wayback Machine"). Neither exhibit should be stricken.

Plaintiffs first argue (Mot. 11-12) that the Internet Archive printouts are not properly authenticated. While some courts require an Internet Archive employee to testify to the capture, "[t]here does not appear to be a similar Tenth Circuit case requiring particularized authentication for Internet Archive material." *Marten Transp., Ltd. v. Plattform Advert., Inc.*, 2016 WL 1718862, at *3 (D. Kan. Apr. 29, 2016).[7] But in any event this issue is academic: Charter has obtained a

---

[7] In *Marten*, the Court resolved the issue by simply taking judicial notice of what appeared on the websites. 2016 WL 1718862, at *3-4 (citing cases); *see also E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 967 (D. Minn. 2018) ("[t]he Court takes judicial notice of the authenticity of the January 16, 2013, Internet Archive capture"). This Court may do so too.

11

declaration from an Internet Archive employee attesting to authenticity of these documents. *See* Rose Ex. A (Affidavit of Internet Archive employee Duncan Hall authenticating exhibits). Courts accept such declarations on reply to address authentication concerns. *See Universal Church, Inc. v. Universal Life Church/ULC Monastery*, 2017 WL 3669625, at *3 n.7 (S.D.N.Y. Aug. 8, 2017) ("plaintiff submitted with its reply an affidavit from an archive.org employee … which courts in this Circuit have generally accepted as sufficient for authentication purposes").

### B. The CCI Documents Are Not Hearsay And Are Admissible

Plaintiffs argue (Mot. 12-13) that the underlying exhibits—a CCI press release and CCI fact sheet, both relating information about its CAS program—are unauthenticated hearsay. Neither challenge withstands scrutiny. First, Charter's authentication through an Internet Archive employee (discussed above) satisfies FRE 901 as conveying what appeared on those URLs on the dates at issue. The same materials need not be authenticated twice, and Plaintiffs provide no authority to the contrary. *See, e.g.*, *Foreword Mag., Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) ("Internet archive services … have sufficient indicia of reliability to support introduction of their contents into evidence").[8] Nor do Plaintiffs dispute that www.copyrightinformation.org was CCI's website where it posted information about CAS.[9]

---

[8] Neither of the authorities cited by Plaintiffs (Mot. 13) involved website materials already authenticated through the Internet Archive.

[9] For example, Jill Lesser, the Executive Director of CCI at the time, confirmed that pages from www.copyrightinformation.org are "from our website." Rose Decl., Ex. B (Lesser Tr.) 34:17-24, 84:1-85:11; *id.* 74:14-75:20 (describing "the educational materials that we had on the CCI website") Ex. D (CAS FAQs on website); *see also* Exs. C (blog post on website). Moreover, because "there is no indication that [Charter] will be unable to lay the requisite foundation" for the two exhibits at trial through Ms. Lesser, "this Court can consider the content for the purposes of this motion." *Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 626 (D. Ariz. 2020).

12

Additionally, Schapiro Exhibits B & C are not hearsay. They contain statements "made by a person whom the party authorized to make a statement on the subject." FRE 801(d)(2)(c). These documents were issued by CCI *on behalf of the participating members of CAS*, which included the Plaintiffs. Indeed, the press release itself expressly states "the companies and associations collaborating on the framework include … Universal Music Group Recordings, Sony Music Entertainment, [and] Warner Music Group." Ex. B at 4. The exhibits are thus nonhearsay.

Separately, these documents are admissible to prove the *fact* that certain statements appeared on CCI's website on a certain date—regardless of whether the statements are true. *See Powers v. Emcon Assocs., Inc.*, 2017 WL 2718476, at *5 (D. Colo. June 23, 2017) (LinkedIn profiles not hearsay because not used "for the truth of the matter asserted therein, *i.e.* that the two individuals were indeed FMNow employees, but instead that they held themselves out as such"). These documents are admissible to prove that participants in the CAS program ***represented to the public and to the ISP industry***, including to Charter, that the CAS program was a set "best practices," premised on research that customer education deterred infringement online.

### B. Exhibit F To The Schapiro Declaration Should Not Be Stricken

Exhibit F of the Schapiro Declaration lists the 71 Works identified in Plaintiffs' Exhibits A and B to their Complaint, and corresponding dates of (a) registration, (b) first publication, and (c) the transmission of a notice to Charter. Plaintiffs do not dispute the accuracy of this information. Indeed, the summary simply reproduces verbatim undisputed information from the copyright registrations and the notices produced by Plaintiffs into a chart for the convenience of the Court. Exhibit F may be treated as a FRE 1006 summary, as Plaintiffs do not identify any missing elements. Further, Plaintiffs' argument (Mot. 13-14) that Mr. Schapiro failed to state that

13

he supervised the preparation of the Exhibit is wrong: He states the information is based on his "personal knowledge," Schapiro Decl. ¶ 1, and he explains the creation of the exhibit, *id.* ¶¶ 8-9.

Plaintiffs also complain (Mot. 13-14) that Mr. Schapiro is an attorney, but courts routinely consider attorney FRE 1006 summaries at summary judgment where the materials could be admitted at trial through other means. *See, e.g.*, *Danielson*, 2021 WL 217706, at *7 (FRE 1006 summary in attorney declaration on summary judgment admitted where underlying materials "would be admissible at trial"); *Schmidt v. DIRECTV, LLC*, 2017 WL 3575849, at *8 (D. Minn. Aug. 17, 2017) (similar).

### C. Mr. Schapiro's Identification Of Factual Information In Plaintiffs' Tabulation Of Interrogatory Responses Is Not Attorney "Argument"

In ¶¶ 5-10, Mr. Schapiro provides straightforward arithmetic that counts the number of Works if the Court makes certain rulings. As he explains, the counts come from "the information contained in" Plaintiffs' "interrogatory response[s]." Schapiro Decl. ¶¶ 5-9. Those responses have been provided to the Court. *Id.* Exs. D & E. Mr. Schapiro's presentation of the raw tabulation in those responses—rather than requiring the Court to sift through over 250 pages of tables to count on its own—is not "argument." Mot. 14-15. The same applies to ¶¶ 8-9, where Mr. Schapiro again merely provides, for 71 works-in-suit, factual information consisting of (1) the registration date, (2) the date of first publication, and (3) the date Plaintiffs sent Charter a notice, and provides the Court the portions of Plaintiffs' interrogatory responses from which these facts are derived. *Id.* Exs. G & H. Paragraph 10 simply counts the number of works registered as works made for hire.

Charter is not aware of any means by which the Court could itself conveniently calculate the number of works affected by each of the damages issues, and thus provided Mr. Schapiro's testimony to aid the Court. As an alternative, the Court could simply order the parties to stipulate

14

to the number of "works eligible for statutory damages after it rules on the damages issues. *See* MSJ 18 n.8. Should the Court opt for this course, Plaintiffs' motion to strike ¶¶ 5-10 of the Schapiro Declaration should be denied as moot.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Charter respectfully requests that the Court deny the motion to strike portions of the declarations of Mary Haynes and Andrew Schapiro.

Dated: January 10, 2022                     Respectfully submitted,

                                            */s/ Andrew H. Schapiro*

| | |
|---|---|
| Charles K. Verhoeven | Andrew H. Schapiro |
| David Eiseman | Nathan Hamstra |
| Linda J. Brewer | QUINN EMANUEL URQUHART & |
| QUINN EMANUEL URQUHART & | SULLIVAN, LLP |
| SULLIVAN, LLP | 191 N. Wacker Drive, Suite 2700 |
| 50 California Street, 22nd Floor | Chicago, IL 60606 |
| San Francisco, CA 94111 | (312) 705-7400 (telephone) |
| (415) 875-6600 (telephone) | Email: andrewschapiro@quinnemanuel.com |
| Email: charlesverhoeven@quinnemanuel.com | Email: nathanhamstra@quinnemanuel.com |
| Email: davideiseman@quinnemanuel.com | |
| Email: lindabrewer@quinnemanuel.com | Todd Anten |
| | Jessica Rose |
| Jennifer A. Golinveaux | QUINN EMANUEL URQUHART & |
| WINSTON & STRAWN LLP | SULLIVAN, LLP |
| 101 California Street, 35th Floor | 51 Madison Avenue, 22nd Floor |
| San Francisco, CA 94111 | New York, NY 10010 |
| (415) 591-1506 (telephone) | (212) 849-7000 (telephone) |
| Email: jgolinveaux@winston.com | Email: toddanten@quinnemanuel.com |
| | Email: jessicarose@quinnemanuel.com |
| Michael S. Elkin | |
| WINSTON & STRAWN LLP | Craig D. Joyce |
| 200 Park Avenue | Fairfield and Woods, P.C. |
| New York, NY 10166 | 1801 California Street, Suite 2600 |
| (212) 294-6700 (telephone) | Denver, CO 80202 |
| Email: melkin@winston.com | (303) 830-2400 (telephone) |
| | Email: cjoyce@fwlaw.com |

*Counsel for Charter Communications, Inc.*