# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 19-cv-00874-RBJ-MEH

WARNER RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

**PLAINTIFFS' OPPOSITION TO CHARTER'S MOTION TO EXCLUDE EXPERT TESTIMONY OF HAROLD FURCHTGOTT-ROTH**

---

Dr. Harold Furchtgott-Roth is a trained economist, a former Federal Communications Commission ("FCC") Commissioner, and a published author of an extensive body of literature, including multiple versions of the report "Copyright Industries in the U.S. Economy." Dr. Furchtgott-Roth has offered opinions in over two dozen proceedings, and courts have permitted him to testify in all these matters. Dr. Furchtgott-Roth is more than qualified to offer the opinions outlined in his report. His testimony will assist the jury in assessing the harm to Plaintiffs, Charter's incentives to turn a blind eye toward infringement, and the broader effects of widespread copyright infringement on Charter's network. These opinions are directly relevant to the factors a jury must consider to award statutory damages. Despite Dr. Furchtgott-Roth's extensive qualifications, Charter seeks to exclude his testimony by attacking Dr. Furchtgott-Roth's credentials and arguing that his opinions are not relevant to the issues here, overstate the

harms to plaintiffs, or are prejudicial. Charter's arguments mischaracterize Dr. Furchtgott-Roth's opinions and their foundation. At best, these criticisms go to weight, not admissibility, and none of these arguments justifies excluding Dr. Furchtgott-Roth's testimony. Charter's motion should therefore be denied.

## BACKGROUND

Dr. Harold Furchtgott-Roth is an MIT- and Stanford-educated economist with 35 years of academic and professional experience as a scholar on the intersection of economics, technology, and intellectual property and as a regulator of the telecommunications industry. Now the president of an economics consulting firm, he served as an FCC Commissioner from November 1997 through May 2001 and, before that, as the Congressional staff member with primary responsibility for drafting the Telecommunications Act of 1996. Dkt. 552-2 ¶¶ 2-3. He is also the founder of the Center for the Economics of the Internet at the Hudson Institute, where he is a Senior Fellow, and an adjunct professor at Brooklyn Law School, where he teaches communications law, including how copyright law influences communications law. *Id.* ¶ 1. Dr. Furchtgott-Roth has authored or coauthored books on cable television, telecommunications, and international trade and published numerous articles for both scholarly and lay audiences. *Id.* ¶¶ 4-6. He has published research on America's copyright industries, which include the music industry, and their importance to the U.S. economy, including a book on how copyright law contributed to the growth of America's software market. *Id.* ¶ 5; *Id.* App. A.

Dr. Furchtgott-Roth's reports outline the opinions that he is prepared to offer in this case:

- The music industry is important to America's economy and strong copyright laws encourage investment in music. *Id.* ¶¶ 18-24. Piracy hampers the music industry by weakening creators' financial and artistic control over their works and undermining incentives to invest in creative production. *Id.* ¶¶ 21, 24.

2

- ██████████████████████████████████████████████████████████████
  ██████████████████████████████████████ *Id.* ¶¶ 34-54 & Ex. V.3; Dkt. 552-3 ¶¶ 23-37.

- P2P piracy deprives copyright owners of control of their work, reduces the benefit from the licensing of copyrights, and creates extra costs. Dkt. 552-2 ¶¶ 41-43. These harms cannot be quantified. *Id.* ¶¶ 44-54; 9/3 Dkt. 552-5 ¶¶ 20-26.

- ██████████████████████████████████████████████████████████████
  ██████████████████████████████████████. Dkt. 552-2 ¶¶ 55-70.

- ██████████████████████████████████████████████████████████████
  ██████████████████████████. *Id.* ¶ 71.

- ██████████████████████████████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████. *Id.* ¶¶ 72-88.

Charter has moved to exclude all of these opinions. Dkt. 552. Alternatively, Charter requests that if Dr. Furchtgott-Roth is permitted to testify, that he not be allowed to use the term "piracy," or even to say that P2P networks "are harmful to Plaintiffs." *Id.* at 14.

## ARGUMENT

### I. Dr. Furchtgott-Roth Applies His Expertise As An Economist To Analyze The Impact Of P2P Usage On The Music Industry.

Charter claims that Dr. Furchtgott-Roth is "unqualified" to opine on the impact of P2P usage on Plaintiffs, the music industry, and the general economy. *Id.* at 3-9. But Dr. Furchtgott-Roth's training and many years of experience as an economist in government and academia qualify him to produce and evaluate economic studies on a variety of subjects.

Rule 702 allows expert testimony "where the witness [is] qualified as an expert by knowledge, skill, experience, training, or education to offer such opinions." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (internal quotation omitted). To qualify as an expert, a proposed witness need not specialize in the "particular field" about which

3

he will testify so long as his opinions "fall 'within the reasonable confines' of [his] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)); *see also, e.g.*, *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002) (allowing testimony by expert witness who had no experience in telecommunications industry because he was qualified to opine on broader economic principles). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Beebe v. Colorado*, 2019 WL 6044742, at *5 (D. Colo. Nov. 15, 2019).

As detailed below, Dr. Furchtgott-Roth is qualified to form his own opinions about copyright issues in the music industry and our economy by applying his expertise in a thorough evaluation of other experts' analyses.

### A. Dr. Furchtgott-Roth's Opinions About P2P Piracy's Impacts On The Music Industry Are "Within The Reasonable Confines" Of His Expertise As An Economist And Scholar Of The Broader Copyright Industry.

As a Ph.D. in economics with years of experience in government and academia, Dr. Furchtgott-Roth is qualified to synthesize and critique economic studies, including those that have analyzed the economic impact of P2P piracy on the music industry. Dr. Furchtgott-Roth also has extensive experience in telecommunications regulation and a record of teaching and publications addressing, among other topics, the economic significance of copyright law and industries that rely on it. Dkt. 552-2 App. A. Copyright issues affecting the music industry and our economy undoubtedly fall "within the reasonable confines" of his expertise.

Dr. Furchtgott-Roth also has specific experience applying his economic expertise to measuring the size of the copyright industry and its importance to the U.S. economy. While his

4

prior work on the copyright industries is not limited to the music industry, the music industry is "part of the copyright industry" that Dr. Furchtgott-Roth has studied and about which he has authored academic papers and a book. Dkt. 552-6 at 23:22-24:12. Those studies also set forth an enduring method for studying copyright issues and their economic effects that applies to the music industry.[1]

This sets Dr. Furchtgott-Roth apart from putative experts excluded for lack of industry-specific experience in the cases that Charter cites. The proffered experts in those cases could not claim to have, as Dr. Furchtgott-Roth has, studied, written about, or developed a method for analyzing a broader whole to which their opinions' subject belonged. In *Lime Group*, the court excluded the opinions of Charter's current damages expert George Strong not only because of his "lack of expertise in the music industry and technology spheres," but also because Mr. Strong relied "almost entirely on an *uncritical* review of others' views" and failed to "apply his own economics expertise in reaching his conclusions." *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *10 (S.D.N.Y. May 2, 2011) (emphasis added). *Loussier v. Universal Music Group, Inc.*, 2005 WL 5644422 (S.D.N.Y June 28, 2005), is also inapposite because the witness lacked "'intimate knowledge' of sufficient pertinent facts relating to the production and sale of music," which were necessary to offer an opinion on apportionment of sales attributable to infringement. *Id.* at *4. Neither criticism applies to Dr. Furchtgott-Roth's analysis.

---

[1] That Dr. Furchtgott-Roth's opinions concern areas where his expertise applies directly—economic research and telecommunications and network operations—sets his opinions apart from those of Charter's expert, George Strong. Unlike Mr. Strong, who opines on matters such ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ issues beyond his ken as a damages expert—Dr. Furchtgott-Roth's opinions apply and rest on his knowledge of economics and telecommunications.

5

Economists regularly produce rigorous, reliable analyses of industries with which they have no direct professional experience. And when an expert is qualified "in a general field closely related to the subject matter in question, the court will not exclude the testimony solely [because he] lacks expertise in the specialized areas that are directly pertinent." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007). That Dr. Furchtgott-Roth has not worked in the music industry is irrelevant to his qualifications to offer the opinion that the music industry contributes a significant amount to the U.S. economy, and that wide-scale infringement of copyrighted music harmed the music industry generally, and Plaintiffs specifically.

**B. Dr. Furchtgott-Roth's Opinions On P2P Usage's Effects On The Music Industry Are Based On A Rigorous Application Of His Expertise.**

Charter argues that Dr. Furchtgott-Roth's opinions are based on a review of the literature that is unreliable because it is not based on his own expertise, narrowly understood as past research on P2P's effects on music sales. Dkt. 552 at 6-7. Contrary to Charter's argument, Rule 702 does not require a witness to have conducted original research on the subject of their testimony to be qualified as an expert. Expert testimony based on examination of the literature in a field is permissible, provided that it is rigorous, comprehensive, and unbiased. Fed. R. Evid. 703 (experts' bases for their opinions may encompass "facts or data in the case that the expert has been made aware of or personally observed . . . [i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject"); *see also, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 929 (D.S.C. 2016) (accepting literature review as a method if it is rigorous and based on "a complete view of the literature, rather than cherry-picking articles based on the authors' biases"); *cf. Newton v. Roche Lab'ys, Inc.*, 243 F. Supp. 2d 672, 678-79 (W.D. Tex. 2002)

6

(excluding the testimony of a pharmacist falsely claiming to have a Ph.D. in pharmacology and basing opinions on the toxicity of Vitamin A on "a scant literature review" that included "no epidemiological or clinical studies").

Dr. Furchtgott-Roth bases his opinions on P2P usage's effects on the music industry on a systematic and comprehensive review of the literature. The literature he addresses consists of complicated economic studies that require expert interpretation for a jury to understand. In forming his opinions, he brings to bear his training as an economist to distill other economists' evaluations of file-sharing's impacts. Those opinions are founded on both Dr. Furchtgott-Roth's expertise and data on which an economist can reasonably rely. Although Dr. Furchtgott-Roth's opinions are "not based on *direct* expertise" with P2P and were formed after he "read [the literature] closely," Dkt. 552-6 at 93:2-7; 232:22-233:13, he conducted his review with the rigor appropriate for an economist. When Dr. Furchtgott-Roth evaluates articles on copyright and economic issues, he does so as a Ph.D. in economics and published author in the field, not a layperson. For some of the most comprehensive studies, he also examined the underlying data. *See* Pls.' Ex. 1 (Furchtgott-Roth Dep. Tr.) at 227:13-15. Exhibit V.3 in his opening report, a comprehensive table summarizing the literature reviewed, makes this clear. Furthermore, Dr. Furchtgott-Roth relied entirely on papers and articles that experts in the field ultimately deemed worthy of publication or that he determined should be considered to make his testimony comprehensive. *See* Dkt. 552-6 at 232:8-21.

Charter has not identified any deficiencies in Dr. Furchtgott-Roth's analysis of the literature or offered any reason to doubt that it lacked the required level of rigor.[2] Even if he had not previously examined the articles cited in his report, an experienced economist can evaluate a publication and distill its conclusions to form an opinion. And, unlike Charter's expert, Mr. Strong, whose opinions on the music industry and piracy entirely depend on those of Charter's other expert, Dr. Sinnreich, Dr. Furchtgott-Roth engaged in a comprehensive, unbiased examination of economic analyses of P2P usage's effects on the music industry.

## II. Charter's Revenues and Profits Are A Factor To Consider In Determining Charter's Gains Connected to Subscribers' Infringing Activity.

"Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute[.]" *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citations omitted). "Whether an expert's testimony is relevant has been described as a question of 'fit.'" *Doe v. Bd. of Cnty. Comm'rs of Payne Cnty., Okla.*, 613 F. App'x 743, 746 (10th Cir. 2015) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)).

An assessment of statutory damages for infringement should consider, among other things, "the expenses saved and the profits reaped by the defendant[] in connection with the infringement[.]" *Harrington v. Aerogelic Ballooning, LLC*, 2019 WL 5095683, at *2 (D. Colo. Aug. 8, 2019). Dr. Furchtgott-Roth's opinions about Charter's revenues during the Claims

---

[2] Charter notes that Dr. Furchtgott-Roth's team of researchers "pulled together and provided to him" articles. Dkt. 552 at 9. But academics and economists routinely rely on research assistants, and Dr. Furchtgott-Roth supervised and directed his assistants. In any event, Dr. Furchtgott-Roth testified that he "went to a social science research network and, and put in some terms and looked around for some articles" *himself*, as well as requesting that his research team conduct a thorough "literature search." Dkt. 552-6 at 230:2-14.

8

Period and his estimated ▇▇▇

▇▇▇

▇▇▇ and thus "fit" the case.

### A. Dr. Furchtgott-Roth's Calculations of Charter Subscribers' Average Lifetime Value Are Relevant.

The average lifetime value of a Charter subscriber is relevant to assessing Charter's "expenses saved and profits reaped" from retaining users who infringed Plaintiffs' copyrights. It is not "an undifferentiated gross revenue number," as Charter contends, Dkt. 552 at 10 (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004)), but ▇▇▇

▇▇▇.  ▇▇▇

▇▇▇

Dkt. 552-5 ¶ 38; Pls.' Ex. 1 (Furchtgott-Roth Dep. Tr.) at 175:1-12. ▇▇▇

▇▇▇

▇▇▇

▇▇▇. Dkt. 552-5 ¶ 38; Pls.' Ex. 1 (Furchtgott-Roth Dep. Tr.) at 175:21-177:7. Charter's objections to Dr. Furtchgott-Roth's calculations, which do not identify any fundamental methodological flaws, go to their weight rather than their admissibility.

### B. Dr. Furchtgott-Roth's Calculations Of ▇▇▇

Dr. Furchtgott-Roth's calculations of ▇▇▇

▇▇▇

9

▬▬▬▬▬▬▬▬▬▬. Dr. Furchtgott-Roth assumes that direct infringement took place and will be proven at trial. But so does Charter's damages expert, Mr. Strong. Neither expert's testimony is proffered as probative on whether infringement occurred, and both were asked to assume liability for analyzing damages.

Dr. Furchtgott-Roth's calculations of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Contrary to Charter's argument, whether a given user received three or more infringement notices is a matter of fact, not a legal conclusion. Incorporating the observation that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

### III. Dr. Furchtgott-Roth's Opinions On Charter's Economic Incentives Are Relevant To Vicarious Liability And The Jury's Determination Of Damages, And Do Not Speak To Charter's Subjective State Of Mind.

First, Dr. Furchtgott-Roth's analysis of Charter's economic incentives bears on Charter's vicarious liability for infringing activity on its network. By explaining ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Dr. Furchtgott-Roth's analysis explains "the causal relationship between the infringing activity alleged in this case and any financial benefit [Charter] reap[ed] in this case." *Warner Recs. Inc. v. Charter Commc'ns, Inc.*, 454 F. Supp. 3d 1069, 1084 (D. Colo. 2020).

Furthermore, Dr. Furchtgott-Roth's analysis of Charter's economic incentives is also relevant to the jury's assessment of statutory damages. "The jury is free to consider a number of factors when determining the amount of a statutory damage award[,]" as 17 U.S.C. § 504 affords

10

them "the 'necessary flexibility to do justice' when it is difficult or impossible to calculate actual damages." *Nunes v. Rushton*, 2018 WL 2214593, at *1 (D. Utah May 14, 2018) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232-33 (1952)). Among the factors that the jury may consider in assessing statutory damages, deterrence is key. *See id.* at 234 ("[A statutory damages award] not merely compels restitution of profit and reparation for injury, but also is designed to discourage wrongful conduct."); *see also Kamar Int'l v. Russ Berrie & Co.*, 829 F.2d 783, 786 (9th Cir. 1987) (explaining that the purpose of 17 U.S.C. § 504 is, in part, "to discourage wrongful conduct and deter infringements"). To adequately deter a defendant from either engaging in or tolerating infringement—that is, to *dis*incentivize them from infringing or facilitating infringement—the jury is entitled to consider the defendant's incentives for infringing or tolerating infringement.

Dr. Furchtgott-Roth's analysis of Charter's incentives can also help assess Charter's "blameworthiness—that is, whether [Charter] acted willfully, knowingly, or innocently[.]" *Harrington*, 2019 WL 5095683, at *2. That analysis does not state a conclusion about Charter's state of mind, but is a standard economic analysis illuminating facts that tend to support a finding that ████████████████████████████████████████████████. "An incentive is something that induces a person to act, such as the prospect of a punishment or a reward. Because rational people make decisions by comparing costs and benefits, they respond to incentives . . . . [I]ncentives play a central role in the study of economics."[3] Understanding the

---

[3] N. Gregory Mankiw, Principles of Economics 7 (Joseph Sabatino et al. eds., 6th ed. 2012).

11

incentives—*i.e.*, the benefits— ██████████████████████████

██████████████████████████████████████████.

Finally, Charter misrepresents the court's ruling in *BMG Rights Management (US) LLC v. Cox Communications, Inc.*, No. 14-cv-1611 (E.D. Va. Nov. 25, 2015), ECF No. 691 at 1. Charter cites that order and represents that Dr. Lehr, plaintiffs' damages expert in that case, "was precluded from opining on Cox's alleged economic 'incentives' to permit infringement on its network." Dkt. 552 at 12. But Judge O'Grady subsequently clarified, on the record, that Dr. Lehr *would* be allowed to testify about Cox's economic incentives not to take action against infringing subscribers, because economic incentives are relevant to proving vicarious liability. *See* Pls.' Ex. 2 Hr'g Tr. at 23, 30, 63, *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.* (E.D. Va. Dec. 1, 2015). Judge O'Grady also permitted Dr. Lehr to offer the same type of testimony in a subsequent similar case. *See Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 18-cv-950 (E.D. Va. Nov. 19, 2019), ECF No. 589 at 4.

## IV. Dr. Furchtgott-Roth's Opinions on Charter's Advertising Are Proper.

Contrary to Charter's assertion, Dr. Furchtgott-Roth's opinion that Charter's advertising emphasized features that infringing subscribers would value is similarly not an opinion on Charter's state of mind. Dr. Furchtgott-Roth is a former FCC Commissioner with extensive experience in the telecommunications industry who understands how companies like Charter interact with and attract customers. That qualifies him to assess whether Charter's advertising distinctively highlighted features that infringing subscribers would prize, which is an evaluation about the ads' objective content and their resulting draw to certain subscribers. Furthermore, although Charter observes that Dr. Furchtgott-Roth could not remember all the details about the

12

reach and distribution of Charter's advertisements, Charter's own corporate designee admitted that the same advertisements were the advertising inserts Charter "typically" used when Charter "went to market with the Charter Triple Play" services. Pls.' Ex. 3 (Leonard Dep. Tr.) at 128:24-130:3; Pls.' Ex. 4 (Leonard Dep. Ex. 176). Charter has no basis to imply that the advertisements were of limited reach, nor can it credibly dispute that the advertisements Dr. Furchtgott-Roth reviewed were typical of Charter's advertisements. While Charter may question the actual effect of the advertisements on subscribers, these questions are the subject of cross-examination and do not go to Dr. Furchtgott-Roth's opinions' admissibility.

## V. Dr. Furchtgott-Roth's Opinions About Harms from Piracy and P2P Usage Are Helpful, Fair, and Appropriate for an Expert Witness.

As discussed above, Dr. Furchtgott-Roth's opinions on the impact to the music industry of P2P piracy and to plaintiffs of that by Charter's subscribers are founded on rigorous examination of the facts.

First, Dr. Furchtgott-Roth's opinions about piracy's harmful effects on the music industry are based on his critical evaluation of economic analyses on that exact topic. There can be no legitimate dispute that illegal P2P sharing of copyrighted works on the internet was widespread during the Claims Period. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Dkt. 552-5 ¶¶ 17, 32-36. Accordingly, Dr. Furchtgott-Roth's assessment of the various unquantifiable ways in which infringement harms copyright holders does not posit, as Charter claims, a vague, general harm resulting from piracy. To the extent that Charter takes issue with whether the harm is quantifiable or not, that would affect the weight, not the admissibility, of Dr. Furchtgott-Roth's opinions.

13

Case 1:19-cv-00874-RBJ-MEH Document 684-21 filed 12/02/21 USDC Colorado Page 14 of 15
Case 1:19-cv-00874-RBJ-MEH Document 600 filed 12/02/21 USDC Colorado Page 14 of 15
of 16

Second, Charter's claim that Dr. Furchtgott-Roth's references to Charter subscribers' infringement amount to a legal conclusion and are unduly prejudicial lacks merit. Dr. Furchtgott-Roth is entitled to assume direct infringement and explain how, *if proven*, it took place in the context of rampant P2P file-sharing and how Charter profited from allowing that on its network. As an economist with unique expertise spanning copyrights and the communications industry, Dr. Furchtgott-Roth can analyze the disparate evidence in the record—including reports and data about the nature of P2P traffic generally ███████████ ████████████████████, as well as studies and testimony indicating that such traffic is overwhelmingly infringing—and conclude that, ████████████████████████████ ████████████████████████████████████████, it would represent only a fraction of the infringing activity that Charter knew was taking place on its network, and that Charter benefited from not taking action to curb it.

Referring to this widespread unauthorized distribution of copyrighted works as "piracy" is not unduly prejudicial, but reflects common and widely accepted usage. "Piracy" is frequently used by courts and the government to refer to unauthorized distribution of copyrighted content. *See, e.g.*, *Capitol Recs., Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 732 (S.D.N.Y. 2014) (concluding that the defendant "contributed significantly to an era of rampant digital piracy"); *Elektra Ent. Grp. Inc. v. Brimley*, 2006 WL 2367135, at *4 (S.D. Ga. Aug. 15, 2006) (noting "the harm caused by the widespread problem of digital piracy over the Internet"); Press Release, U.S. Dept. of Justice, Operator of Music Piracy Websites Pleads Guilty to Criminal Copyright Infringement (Aug. 21, 2015), https://www.justice.gov/opa/pr/operator-music-piracy-websites-

14

pleads-guilty-criminal-copyright-infringement.  Dr. Furchtgott-Roth merely adopts the common meaning of that word.

## CONCLUSION

For the reasons set forth above, Charter's motion should be denied and Dr. Furchtgott-Roth's opinions and testimony should be admitted in their entirety.

| | |
|---|---|
| Dated: December 20, 2021 | /s/ Stacey K. Grigsby |
| Matthew J. Oppenheim<br>Jeffrey M. Gould<br>Alexander Kaplan<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Fl.<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>jeff@oandzlaw.com<br>alex@oandzlaw.com<br><br>Janette L. Ferguson, Esq.<br>WILLIAMS WEESE PEPPLE & FERGUSON<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Telephone: (303) 861-2828<br>jferguson@williamsweese.com | Stacey K. Grigsby<br>COVINGTON & BURLING LLP<br>One City Center<br>850 Tenth Street NW<br>Washington, DC 20001-4956<br>Telephone: (202) 662-6000<br>sgrigsby@cov.om<br><br>Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br><br>Neema T. Sahni<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>nsahni@cov.com<br><br>*Attorneys for Plaintiffs* |