# Exhibit III

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

*Plaintiffs*,

v.

CHARTER COMMUNICATIONS, INC.,

*Defendant*.

Case No. 19-cv-00874-RBJ-MEH

## CHARTER'S RESPONSE TO PLAINTIFFS'
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' motion for partial summary judgment (Dkt. 555 ("Mot.")) should be denied. Plaintiffs seek summary judgment on their contributory infringement claim, but they have not established that Charter's *objective* was to facilitate infringement—a showing that is required under binding Supreme Court precedent, which Plaintiffs fail to cite. To the contrary, the evidence of record shows that Charter adopted a rigorous program to discourage infringement online. Plaintiffs' motion for summary judgment on the supervision element of their vicarious liability claim likewise fails because Charter does not supervise subscribers' conduct on the Internet.

Plaintiffs' motion directed to the "two foundational" issues underlying Plaintiffs' claims (Mot. 3) should be denied because: (1) Plaintiffs have failed to establish that they own many of the copyrighted works in the case and, therefore, they are not entitled to assert claims as to those works; and (2) summary judgment on whether Plaintiffs' works were contained on the MarkMonitor hard drive is procedurally improper and not suitable for resolution under Rule 56.

## MATERIAL FACTS

Charter is a cable company that provides customers with a connection to the Internet for a monthly fee. Declaration of Mary Haynes, attached hereto ("Haynes Opp. Decl.") ¶ 3. During the



relevant period, Charter provided Internet access to ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ and hundreds of thousands of businesses, in geographic regions across the country. *Id.*

¶¶ 3-4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 5-6.  Although Plaintiffs contend that these notices

prove "Charter subscribers have illegally downloaded" music files (Mot. 1),[1] ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Haynes Opp. Decl. ¶¶ 7-8, 29-30.  Nonetheless, Charter took

these notices seriously, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 9-11, 19-33.  The goal of Charter's

program was to discourage and prevent copyright infringement online. *Id.* ¶¶ 11, 16-17, 21, 26-

27, 42-43.  Plaintiffs' claim that Charter failed to "take steps to stop, reduce, or address in some

meaningful way its subscribers' [allegedly] infringing behavior" (Mot. 2),[2] is contradicted by the

record. *Id.* ¶¶ 9-11, 19-52.  Charter's anti-infringement efforts were significant and successful.

*Id.*; Snow Opp. Decl. ¶¶ 4,7.

Charter's program for addressing allegations of copyright infringement was also ▮▮▮▮▮

---

[1]  Plaintiffs have moved for summary judgment that they own rights in validly registered copyrights, but this assertion is not supported by evidence for certain Works-in-Suit. *Compare* Mot. 4 (¶¶ 1-2), *with* Declaration of Andrew Schapiro, attached hereto ("Shapiro Opp. Decl.") ¶¶ 9-12; *see infra* IV.A.

[2]  Plaintiffs criticize Charter's anti-infringement program, but the evidence of record demonstrates that it was robust and effective. *Compare* Mot. 7-8 (¶¶ 20-25), *with* Haynes Opp. Decl. ¶¶ 9-52; Declaration of Karl N. Snow, Ph.D., attached hereto ("Snow Opp. Decl.") ¶¶ 4,7; Affidavit of Duncan Hall, attached hereto ("Hall Opp. Decl.") Ex. A.

████████████████████████ Haynes Opp. Decl. ¶¶ 12-18. In 2011, members of the movie, television, music and Internet service provider communities announced the creation of the Copyright Alert System ("CAS")—a set of "best practices" for ISPs like Charter to follow when handling copyright complaints. *Id.* ¶¶ 12-13; Hall Opp. Decl. Ex. A. The cornerstone of the CAS program was customer education, and it was based on data showing that most Internet subscribers, once informed about the alleged content theft and its possible consequences, would take steps to ensure that the misconduct did not happen again. Haynes Opp. Decl. ¶ 14; Hall Opp. Decl. Ex. A; Schapiro Opp. Decl. Exs. F, G. ***Importantly, CAS did not require an ISP to terminate customer accounts based solely on the receipt of repeated notices of alleged infringement.*** Haynes Opp. Decl. ¶¶ 15-18; Hall Opp. Decl. Ex. A; Schapiro Opp. Decl. Exs. B, C, D, E, G. Although Charter was not itself an official participant in the CAS program, its copyright notice program similarly used ████████████████████████████████ to mitigate online infringement. Haynes Opp. Decl. ¶ 16. Plaintiffs' claim today that "Charter did nothing to curtail its subscribers' [alleged] infringement" (Mot. 2), cannot be squared with their support for CAS, which expressly promoted education over termination (████████████████) as the "best practice" for addressing online infringement. *See* Hall Opp. Decl. Ex. A; Schapiro Opp. Decl. Exs. F, G. And although Plaintiffs argue that Charter's policy ████████████████ was driven by a desire to "reap[] millions of dollars in subscription fees" (Mot. 2), Plaintiffs point to no evidence to support this conclusion—because it was not the case. Haynes Opp. Decl. ¶¶ 42-46.

Plaintiffs claim to have sent Charter ████████████ notices of alleged copyright infringement from 2012 to 2015. Mot. 1. The notices informed Charter that a customer "may be liable" for acts of infringement:

If you are an Internet Service Provider (ISP), you have received this letter because we have identified a user on your network reproducing or distributing an unauthorized copy of a copyrighted sound recording. *This letter constitutes notice to you that this user may be liable for infringing activity occurring on your network.*

Haynes Opp. Decl. ¶ 56 & Ex. A (emphasis added). Thus, the notices also correctly contemplated that Charter's subscribers *may not* be liable— ████████████████████████████

███████████████████████████. *Id.* ¶¶ 29-33 & Exs. B, C. Although Plaintiffs sent

Charter ███████████████ of notices, ████████████████████████████

███████████████████████████████████████████████████

████████ Snow Opp. Decl. ¶ 4. █████████████████████████

███████████████████████████████████████. *Id.* ¶¶ 5-6.

███████████████████████████████████████████████

███████████████████████. *Id.* ¶ 5. Plaintiffs' practice was also to send multiple

notices to the same account over a short period of time. █████████████████████

███████████████████████████████████████. *Id.* ¶ 7.

Plaintiffs point out that some Charter subscribers ████████████████████

███████████████(Mot. 2, 7)—but these statistics are misleading (and irrelevant), because they

do not reflect subscribers who received *notices from Plaintiffs*.[3] In fact, the largest number of

notices received from Plaintiffs ██████████████████████████████████

███████████████████████████████████████. Snow Opp. Decl.

¶ 9. ████████████████████████████████████████████████

███████████████████████. *Id.* ¶ 4.

---

[3] Plaintiffs' suggestion that individual customers received "████████ of notices from Plaintiffs" is flatly contradicted by the record. *Compare* Mot. 7 (¶ 19), *with* Snow Opp. Decl. ¶¶ 9-10.



Plaintiffs fault Charter for ██████████████████████████████████ ██████████████████████████████████, but ██████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████. Haynes Opp. Decl. ¶¶ 9-18, 34-37, 44; Snow Opp. Decl. ¶ 7 (██████████████████████████████████████████████████). In addition, ████████████████████████████████, █████████████ ██████████████████████████████████ Haynes Opp. Decl. ¶¶ 7-8, 29-33. Moreover, at the same time Plaintiffs were sending notices, █████████████ ██████████████████████████████████████████████████████████████ ████████████████████████ *Id.* ¶¶ 29-33 & Exs. B, C. ██████████████████████████████████████████████████████—all in an effort to curb infringement. *Id.*[4]

## ARGUMENT

## I.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR CONTRIBUTORY INFRINGEMENT CLAIM

Plaintiffs ask the Court to find Charter liable for contributory infringement as a matter of law without even mentioning that ***intent to cause infringement*** is a required element of the claim. Plaintiffs' briefing does not cite or even acknowledge the controlling legal standard articulated in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). This omission alone warrants denial of Plaintiffs' motion. Separately, Plaintiffs have failed to prove that Charter had

---

[4]  Plaintiffs' reference to Charter's ███████████████████████████████ ████████████████████ (Mot. 10) is improper and the Court should disregard it. Evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct. Fed. R. Evid. 407.

actual knowledge of the alleged acts of copyright infringement by its customers, as required.

### A. Plaintiffs Ignore *Grokster*

Reading Plaintiffs' motion, one might think that the Supreme Court has never considered whether, and under what circumstances, a legitimate service provider can be held liable for alleged acts of copyright infringement by its customers. And yet, this precise question was addressed by the Supreme Court in *Grokster*, 545 U.S. 913 (2005) and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). These cases limit the circumstances under which a claim of contributory infringement can lie against a party selling a product or service capable of substantial noninfringing use. *Grokster* holds that the mere sale of a product or service "capable of both lawful and unlawful use" does not constitute contributory infringement unless there is additional evidence that the defendant acted "*with the object* of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." 545 U.S. at 918-19 (emphasis added). It is insufficient to premise a contributory infringement claim on "mere knowledge of infringing potential or of actual infringing uses." *Id.* at 937. Rather, a plaintiff must show the defendant distributed a device or service with the *intent* of fostering infringement:

> [O]ne who distributes a device [or service] with the *object* of promoting its use to infringe copyright, as shown by *clear expression* or other *affirmative steps* taken to foster infringement, is liable for the resulting acts of infringement by third parties. We are, of course, mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential. Accordingly, just as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, 464 U.S., at 439, n.9, 104 S.Ct. 774, *mere knowledge* of infringing potential or *of actual infringing uses would not be enough* here to subject a distributor to liability. *Nor would ordinary acts incident to product distribution*, such as offering customers technical support or product updates, support liability in themselves. The inducement rule, instead, premises liability on *purposeful, culpable expression and conduct*, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.

6

*Id.* at 936-37 (emphasis added).

Instead of acknowledging *Grokster* and attempting to explain why it should not apply here, Plaintiffs ignore it altogether. Plaintiffs' argument (Mot. 17-19) that Charter is liable because it "materially contributed" to the alleged infringement ████████████████████████ ████████████████████████████████ is foreclosed by *Grokster*. Under *Grokster*, Plaintiffs must prove, by showing "clear expression or other affirmative steps taken to foster infringement," that Charter's *objective* ████████████████████ was to encourage infringement. 545 U.S. at 937. Further, under *Grokster*, a defendant's failure to act affirmatively to prevent infringement does not satisfy the intent requirement. *Id.* at 939 n.12 ("in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a *failure to take affirmative steps* to prevent infringement, if the device otherwise was capable of substantial noninfringing uses") (emphasis added).

Plaintiffs may argue on reply that *Grokster* does not apply to this case because "material contribution" is a different form of contributory liability than "inducement." But that argument finds no support in *Grokster* itself, and indeed Justice Ginsburg's concurrence directly refutes it. Justice Ginsburg described the two (and only two) ways in which a plaintiff can state a contributory infringement claim: (1) by "actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops)" or (2) by "distributing a product distributees use to infringe copyrights, *if the product is not capable of 'substantial' or 'commercially significant'* noninfringing uses." *Id.* at 942 (Ginsburg, J., concurring) (emphasis added). Plaintiffs cannot argue that Charter's service—*the Internet*—is incapable of substantial noninfringing uses. Accordingly, Plaintiffs must prove that Charter actively encouraged (or induced) infringement

through specific acts.  *Id.*  This proof must be in the form of "*purposeful, culpable expression and conduct*."  *Id.* at 936-37 (emphasis added).

Indeed, *Grokster* declined to find that material contribution and knowledge alone were sufficient to find liability where a defendant offers a product or service with substantial noninfringing uses.  In the briefing to the Supreme Court, the motion picture studio and recording company petitioners argued—exactly as Plaintiffs do here—that the evidence of knowledge and material contribution was enough to render the defendants liable, even though they distributed software with both lawful and unlawful uses.  Br. for Pet'rs, 2005 WL 166587, at *24-25 (Jan. 24, 2005).  Specifically, the petitioners argued that "Grokster and StreamCast have always known about the massive infringement occurring daily on their services" because they "received notices from petitioners," and that the "creation and operation of the[ir] services constitutes material contribution."  *Id.*; *see also id.* at *8-9 ("Ignoring the notices, Grokster and StreamCast continued to provide the software, updates, and network maintenance needed for new users to join and old users to access the services.").  They also argued that, when considering *Sony*, the defendants should be held liable because there was evidence that it *intended* to cause infringement.  *Id.* at *27.  Presented with both arguments, the Supreme Court held that liability could be found consistent with the *Sony* rule, but *only* where there is evidence of "affirmative steps" or "clear expression" by the defendant to foster infringement.  *Grokster*, 545 U.S. at 937.  In that circumstance, "mere knowledge of infringing potential *or of actual infringing uses* would not be enough," nor would "ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves."  *Id.* (emphasis added).

To be sure, some out-of-circuit courts have misapplied *Grokster* by finding an ISP's failure

to terminate customers' Internet service after receiving notices alleging infringement can itself establish the requisite intent to cause infringement.[5] These non-binding decisions cannot be reconciled with *Grokster's* clear holding that liability exists only where there is evidence that it was a defendant's intended purpose—its **objective**—to foster infringement, as shown by **clear expression or affirmative acts**. *Grokster* also expressly cautions that liability may not be based on a failure to prevent infringement. *Id*. at 939 n.12 ("in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement").

Likewise, the "simple measures test" Plaintiffs advocate (Mot. 18) cannot be squared with *Grokster*'s express holding that a mere "failure to take affirmative steps" is not enough to establish contributory liability. 545 U.S. at 939 n.12.[6] The Tenth Circuit has not adopted this test, and this Court should decline to do so because it is contrary to the holding in *Grokst*er, which is binding on this Court. *See Greer v. Moon*, 2021 WL 4291197, at *3 & n.3 (D. Utah Sept. 21, 2021) (rejecting Ninth Circuit's *Perfect 10* test in favor of *Grokster*, holding "it is not enough for

---

[5]   *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, 2020 WL 5204067, at *7-9 (D.N.J. Aug. 31, 2020) (acknowledging that contributory infringement requires "intentionally inducing or encouraging direct infringement" but erroneously holding, contrary to *Grokster*, that failure to terminate Internet service can meet that standard) (quotations omitted); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743 (W.D. Tex. 2019) (similar); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293 (4th Cir. 2018) ("*BMG*") (similar).

[6]   Plaintiffs' reliance (Mot. 18) on *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), is misplaced. First, it was decided before *Grokster*. Second, the defendants were operating a retail space that they oversaw; they were not merely distributing a service. *Id*. at 261. Third, the requisite intent to contribute to the infringement was established because the court found the defendant "*actively strives* to provide the environment and the market for counterfeit recording sales to thrive." *Id*. at 264 (emphasis added). By contrast, Plaintiffs here have offered no evidence showing that Charter actively strived to promote infringement.

contributory liability for a defendant to have merely permitted the infringing material to remain on the website, without having induced or encouraged the initial infringement") (quotations and brackets omitted)).

The record contains no emails, policy documents, presentations, or testimony even suggesting that Charter had an objective to encourage infringement—because it did not. Haynes Opp. Decl. ¶¶ 42-46. To the contrary, the record overwhelmingly shows that Charter went to great lengths to address incoming allegations of infringement by implementing an anti-infringement program that ██████████████████, which was considered the industry's best practice at the time. Indeed, CAS expressly provided that ISPs were *not* required to terminate customers—and Plaintiffs endorsed this model. Haynes Opp. Decl. ¶¶ 12, 15-17; Hall Opp. Decl. Ex. A (Fact Sheet) ("This alert system does not, in any circumstance, require the ISP to terminate an Internet subscriber's account."); Schapiro Opp. Decl. Ex. G. It cannot be the case that adopting the prevailing industry standard for *discouraging* infringement is evidence of intent to *encourage* infringement.

Although Plaintiffs nitpick the mechanics of Charter's anti-infringement program, claiming it was not as efficient or as effective as it could have been (Mot. 1-3, 7-10, 18-19) these criticisms do not demonstrate an intent to promote infringement. Plaintiffs' belief that Charter should have taken additional or different steps does not convert Charter's good faith into bad intent. *See, e.g.*, *Greer*, 2021 WL 4291197, at *3 ("It is not enough for contributory liability for a defendant to have merely 'permitted' the infringing material to remain on the website, without having 'induced or encouraged' the initial infringement.") (brackets omitted); *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1147-49 (9th Cir. 2018) (affirming dismissal of contributory copyright

claim under *Grokster* and holding that "a failure to take affirmative steps to prevent infringement" alone cannot trigger liability) (quotations omitted); *Dallas Buyers Club, LLC v. Doughty*, 2016 WL 1690090, at *9 (D. Or. Apr. 27, 2016) ("[Defendant] did not promote the use of his Internet service to infringe [plaintiff's] copyright and is therefore not liable for contributory infringement. … [Plaintiff's] theory of contributory infringement is precluded by the Supreme Court's holding in *Grokster*."). The fact that a reasonable juror could find that Charter invested in and maintained a bona fide and effective infringement prevention program that was consistent with industry practices precludes any finding on summary judgment that Charter's goal ████████████████ ██████ was to *promote* infringement.

Even under the "simple measures" test that Plaintiffs advocate, their claim fails. Mot. 18. The evidence of record shows that Charter *did* employ "simple measures" to prevent future acts of infringement by customers through its infringement prevention program—which included ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████. Haynes Opp. Decl. ¶¶ 9-11, 19-33. Further, the data show that Charter's anti-infringement program was effective: ████████████████████████████ ████████████████████████████████████████. Snow Opp. Decl. ¶ 7. Terminating a household's or business's access to the *entire Internet* based only on the allegation that someone—not necessarily the Charter account holder—may have used that Internet connection to download an infringing music file in the past, is not a "simple measure." Implementing an industry-sanctioned program designed to inform, educate and discourage customers from future infringement is such a measure.

11

Lastly, Plaintiffs assert—without evidence—that "[t]he reason Charter did nothing to curtail its subscribers' infringement is simple: … Charter reaped millions of dollars in subscription fees that it would have lost if it terminated the infringing subscribers' accounts." Mot. 2. This assertion is wrong and unsupported—███████████████████████████████ ███████████████████████████. Haynes Opp. Decl. ¶¶ 42-46. Moreover, automatically terminating customers who received multiple notices could have enormous and detrimental impact on those customers and their families and businesses. *Id.* ¶ 40.

### B.     Charter Did Not Have Actual Knowledge Of The Alleged Infringement

In addition to failing to prove Charter's *objective* was to cause infringement, Plaintiffs have not proven that Charter had the requisite knowledge of customers' alleged infringement to support liability.[7] Mot. 15.   Plaintiffs' only purported evidence of Charter's alleged knowledge of infringement are the notices Charter received from copyright holders (including Plaintiffs) during the Claims Period.   Mot. 6, 15-17.   But Plaintiffs' notices do not even assert that Charter's subscribers are liable for copyright infringement.   Rather, the portion of the notice directed to Charter says that the customer "may be" (so, may not be) liable for infringing activity.   This equivocal language does not give Charter knowledge of infringement.   *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1105-06 (W.D. Wash. 2004) ("Actual knowledge of blatant, repeat infringement cannot be imputed merely from the receipt of notices of infringement.

---

[7]    As Plaintiffs point out, the Tenth Circuit has not ruled on whether actual or constructive knowledge is required to make out a claim for contributory copyright infringement.  Mot. 15.  A constructive knowledge standard cannot be squared with the holdings of courts in this District and Circuit that, under *Grokster*, a contributory infringement claim requires *intent* to encourage infringement. *See, e.g.*, *Shell v. Henderson*, 2013 WL 2394935, at *11 (D. Colo. May 31, 2013); *Greer*, 2021 WL 4291197, at *3.

Instead, there must be additional evidence available to the service provider to buttress the claim of infringement supplied by the notices.").  That is especially true in the context of a cable company like Charter, which merely provides a *connection to the Internet* and does not itself host the allegedly infringing content and thus ██████████████████████████████.  Haynes Opp. Decl. ¶¶ 7-8.  ████████████████████████████████████████████

████████████████████████████.  ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  Haynes Opp. Decl. ¶¶ 29-33.  On this record, it cannot be said Charter had knowledge of the alleged infringements as *a matter of law*.

Plaintiffs advocate for the knowledge standard adopted in *BMG*, which requires a showing that Charter knew *in fact* that its customers would continue to infringe Plaintiffs' copyrighted works.  881 F.3d at 307.  Under this standard, Plaintiffs must show that Charter was "substantially certain" that the accused subscriber would continue to receive notices.  *Id*.  Plaintiffs have not made this showing.  There is no dispute that Charter implemented an anti-infringement program, *the entire point of which was to discourage future infringement by customers*.  Haynes Opp. Decl. ¶¶ 11, 16-17, 21, 26-27, 42-43.  Charter's program ███████████████████ — the industry standard at the time, which was premised on research showing that once customers were informed and educated about the harms caused by infringement, it would cease.  Haynes Opp. Decl. ¶¶ 12-18; Hall Opp. Decl. Ex. A (Fact Sheet) ("Data suggest that, once informed about the

alleged content theft and its possible consequences, most Internet subscribers will quickly take steps to ensure that the theft doesn't happen again.").  Indeed, the feedback from Charter subscribers— ███████████████████████████████████████████████ — demonstrates that Charter's efforts were succeeding.  Haynes Opp. Decl. ¶¶ 33, 39.  And the data on Plaintiffs' infringement notices show that ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████.  Snow Opp. Decl. ¶¶ 4, 7.[8]  Nor is there any dispute that Charter, a cable company that only provides its customers with a connection to the Internet, ██████████████████████████████████████████████████ ██████████████████.

Plaintiffs' reliance on the *BMG* court's VCR analogy (Mot. 15) is misplaced because it does not fit the facts of this case.  Charter provides Internet access to subscribers, and █████████ ████████████████████████████████████████████████████████████████ ██████████████████████  But unlike the VCR leasing company in the analogy, Charter takes the accusations seriously and (at great expense) employs a program guided by industry standards (sanctioned by Plaintiffs) to educate customers about infringement with the goal of stopping it.  In implementing that program, ████████████████████████████████████████████████ ████████████████████████████████████████████████████.  And indeed ███████████████████████████████████████████████████ Snow Opp.

---

[8]  Plaintiffs claim that ██████████████████████████████████████████ Mot. 16), but this statistic includes notices sent by rights holders *other than Plaintiffs*.  ████████████████████████ ████████████████████████████████████████  Snow Opp. Decl. ¶¶ 4, 7.

Decl. ¶ 4.  There is nothing like this in the VCR analogy.  Under these facts, unlike the VCR purveyor, Charter does not by any standard "know" (nor *a fortiori*, could the Court find as a matter of law that it knows) that ███████████████████████████ is substantially certain to result in future infringement.

Given all this, at a minimum, genuine issues of material fact exist as to whether Charter was "substantially certain" that any customer would continue to receive notices from Plaintiffs.

## II.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE SUPERVISION ELEMENT OF THEIR VICARIOUS LIABILITY CLAIM

To establish vicarious liability for copyright infringement, Plaintiffs must prove (among other things) that Charter has the "right and ability to supervise the direct infringer."[9]  *Grokster*, 545 U.S. at 930 n.9; *Shell*, 2010 WL 1348548, at *16.  The record, however, contains no evidence that Charter could supervise its customers' conduct online.  To the contrary, ██████████ █████████████████████████████████████████████████.  Haynes Opp. Decl. ¶¶ 7-8.  ███████████████████████████████████████████ *Id*.; *see* *VHT, Inc. v. Zillow Grp. Inc.*, 918 F.3d 723, 746 (9th Cir. 2019).  ██████████████████ ██████████████████████████████  Haynes Opp. Decl. ¶¶ 7-8.  Unlike an agent or an employee, Charter's customers did not act on Charter's behalf when they went online and, accordingly, ████████████████████████ *Id*.

The ability to *terminate* customers' Internet service is not, as Plaintiffs wrongly suggest (Mot. 19), equivalent to the ability to *supervise* subscribers' activity.  Every ISP can turn off subscribers' service, much like an electric company can turn off a customer's electricity.  But

---

[9]   Plaintiffs have *not* moved for summary judgment on the "direct financial benefit" element of their vicarious liability claim, which precludes the entry of summary judgment on this claim.

neither Charter nor the electric company has the ability to *supervise* what customers actually do with the service as they are doing it. *Id.*; *see Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 715-16 (9th Cir. 2014) ("while Amazon may have had the right and ability to terminate the accounts of the infringing Associates, Routt has not adequately alleged that Amazon exercises any direct control over those Associates' activities"); *Music Force, LLC v. Sony Music Holdings Inc.*, 2020 WL 5733258, at *3 (C.D. Cal. Aug. 12, 2020) ("[T]he right to terminate services or a contract with an infringer does not amount 'to a right and ability to supervise the infringing conduct.'").[10]

The other cases cited by Plaintiffs (Mot. 19), holding that termination by an ISP is equivalent to supervision of the directly infringing conduct as a matter of law, stretch the doctrine of vicarious liability too far, unmooring it from its *respondeat superior* roots. Under this reading, the right and ability to supervise prong is effectively rendered moot, because all service providers (of any type, in any industry) can always decline to provide service.[11] Charter can control only the *noninfringing act* of getting online; but ███████████████████████████████
███████████████. Haynes Decl. ¶¶ 7-8. Summary judgment on the supervision element of Plaintiffs' vicarious liability claim must be denied. *Routt*, 584 F. App'x at 715-16.

## III. CHARTER'S DECISION NOT TO ASSERT SAFE HARBOR DOES NOT MAKE IT LIABLE FOR SECONDARY INFRINGEMENT

Plaintiffs are incorrect that "Charter forfeited the possibility of immunity from Plaintiffs' copyright infringement claims" because it no longer asserts a "safe harbor" defense. Mot. 3.

---

[10]  Charter is mindful that this Court concluded, at the motion to dismiss stage, that Plaintiffs sufficiently alleged supervision. Dkt. 157. However, for the reasons stated above, Plaintiffs have failed to meet their burden on summary judgment of proving supervision.

[11]  Moreover, such a holding would require ISPs to disconnect an entire household's or business's Internet service if *one* member of that household or business is repeatedly accused of infringement, even where subscriber purchasing the service has not engaged in the accused infringement.

Section 512(l) of the Digital Millennium Copyright Act expressly provides that an ISP's failure to meet the safe harbor's terms "shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense."  17 U.S.C. § 512(l); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 552 (4th Cir. 2004) ("despite a failure to meet the safe-harbor conditions … an ISP is still entitled to all other arguments under the law—whether by way of an affirmative defense or through an argument that conduct simply does not constitute a prima facie case of infringement").

## IV.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON EITHER "FOUNDATIONAL ISSUE" RELATED TO INFRINGEMENT

### A.  <u>Plaintiffs Have Failed To Prove Ownership Of Many Of Their Asserted Works</u>

Plaintiffs seek partial summary judgment that they "own or control the exclusive rights under copyright for each of Plaintiffs' Works," "each of which has been validly registered."  Mot. 4, 12; *id*. at 4 (defining "Plaintiffs' Works").  Because Plaintiffs *have not* submitted evidence of ownership for 148 of the works listed in Exhibits A and B to their Amended Complaint, they are not entitled to summary judgment for these works.  *See* Schapiro Opp. Decl. ¶ 9 & Ex. H-1.

As to the works for which Plaintiffs *have* submitted evidence of registration and ownership, summary judgment should be denied for 252 of these works.  *First*, for 230 works, the claimant listed on the registration certificate is not the asserting Plaintiff in this case and the asserting Plaintiff has not provided other sufficient documentation of chain of title to the claimant.  *See Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, 2009 WL 902422, at *6-7 (D. Kan. Mar. 31, 2009) (granting summary judgment of no infringement to defendant because plaintiff failed to "establish a chain of title culminating in [its] ownership" of works).

For the 207 music compositions identified in Exhibit H-2 of the Shapiro Opp. Decl.,

Plaintiffs' evidence merely demonstrates that a Plaintiff had a contractual relationship with the *author* listed on the registration certificate and not the claimant, but an author does not necessarily own all the rights in a copyrighted work. Schapiro Opp. Decl. ¶ 10. *See Jordan v. Sony BMG Music Ent. Inc.*, 354 F. App'x 942, 946 (5th Cir. 2009) ("the Copyright Office defines the *claimant* as the individual with the ownership of all rights in the property listed") (emphasis added); *see also Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 471 (S.D.N.Y. 2013) (claimant must own all rights, not only some of the rights, in a work). While Plaintiffs do put forward declarations that they acquired from these authors some "distinct ownership interest in [the work] that was not assigned or conveyed to a claimant," Plaintiffs do not explain what rights, if any, the authors retained and conveyed to the asserting plaintiff. Blietz Decl. ¶ 23; Kokakis Decl. ¶ 42; Patel Decl. ¶ 34. Moreover, the declarations do not state what those alleged "distinct ownership interests" were, including whether the "interest" granted standing to bring a claim.

For the 23 sound recordings listed in Exhibit H-3 of the Schapiro Opp. Decl., Plaintiffs have not proven a chain of title between the claimant and the asserting Plaintiff. Schapiro Opp. Decl. ¶ 11. For 21 of those works, Plaintiffs' evidence points to an incorrect entity, namely, a non-party affiliate of the asserting Plaintiff. *Id.* ¶ 11(a),(b). *See EMI Ent. World, Inc. v. Karen Recs., Inc.*, 2013 WL 2480212, at *3 (S.D.N.Y. June 10, 2013) (company lacks standing to sue for infringement of copyrights owned by its affiliate). For the remaining two works, Plaintiffs have put forward evidence of transfers that purportedly links the claimant to the asserting Plaintiff, but the chain of title breaks down in at least one place (for example, because there is an unexplained leap from one entity to another along the way). Schapiro Opp. Decl. ¶ 11(c),(d). *See, e.g., Am. Plastic Equip.*, 2009 WL 902422, at n.35 (copyright assignee bears burden to prove chain of title).

*Second*, for the 22 works listed in Exhibit H-4 of the Schapiro Opp. Decl., Plaintiffs have submitted as proof of registration certificates that, on their face, provide no indication that they cover the asserted works. Schapiro Opp. Decl. ¶ 12. For 16 of them, the certificate does not list the asserted work. *Id.* For the remaining 6, the asserted work is expressly excluded from the registration. *Id.* However, to obtain summary judgment, Plaintiffs must prove that each work is registered. 17 U.S.C. § 412(2). Plaintiffs have failed to do so.

## B. Plaintiffs Are Not Entitled To Partial Summary Judgment On Whether Their Works Are Contained On A Hard Drive

Finally, Plaintiffs should not be granted partial summary judgment on whether copies of "Plaintiffs' Works" are included in files that ██████████████████████████████████ ██████████[12] *See* Mot. 12-14. As an initial matter, Charter has raised legitimate questions about the process by which this comparison was done. *See* Dkt. 553. In addition, Rule 56 does not permit standalone motions to obtain rulings on questions of fact. *Powers v. Emcon Assocs., Inc.*, 2017 WL 4102752, at *1-2 (D. Colo. Sept. 14, 2017). While Rule 56(g) permits a court to "enter an order stating any material fact," that provision "applies only after the court has applied the general summary-judgment standard … to each claim … on which a party moved." 10B FED. PRAC. & PROC. CIV. § 2737 (4th ed.). Here, Plaintiffs do not seek summary judgment on the underlying question of direct infringement, or even on an element of direct infringement, but rather ask the Court to engage in fact-finding related to thousands of files so that Plaintiffs may be spared their burden of proof at trial. *See* Mot. 13-14. This is exactly the type of motion that courts reject.

---

[12]   Plaintiffs assert they are only seeking summary judgment on the narrow issue of whether "each of Plaintiffs' Works is copied in the corresponding file ███████████████████████ set forth in Exs. 2A and 2B to [the Buchan Decl.]." Mot. 14. Yet, in doing so, Plaintiffs set forth purported facts that are immaterial to that issue. *Id.* 5-6, 12-14. Charter disputes these facts. *See* Dkt. 593.

*Carbajal v. Lincoln Benefit Life Co.*, 2007 WL 2221147, at *3 n.1 (D. Colo. July 31, 2007) (Rule

56 "does not authorize an independent motion to establish certain facts as true").

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Charter respectfully requests that the Court

deny in all respects Plaintiffs' Motion for Partial Summary Judgment.

Dated:  December 20, 2021

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

Respectfully submitted,

By: */s/ Andrew H. Shapiro*
Andrew H. Schapiro
Nathan Hamstra
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*