# Exhibit IX

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al*.,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**CHARTER'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GEORGE STRONG**

George Strong, Charter's damages expert, has more than thirty years of consulting experience in complex commercial disputes. Dkt. 547-2 ("Strong Rep.") App'x A. He holds a bachelor's degree in economics from Yale University, an MBA from Harvard University, and a JD from the University of San Diego School of Law. *Id.* ¶ 2. Mr. Strong is a certified public accountant and a certified management consultant, and is accredited in business valuation and certified in financial forensics. *Id.* ¶ 3. He has provided expert testimony in nearly 150 cases, including damages opinions in copyright cases. *Id.* App'x A (Curriculum Vitae).

Given that Plaintiffs are seeking statutory damages as their sole monetary remedy, Mr. Strong reviewed "certain factors" of statutory damages "in light of [his] expertise as a damages expert, including the actual harm suffered by Plaintiffs [and] gains to Charter." *Id.* ¶ 6. Based on his review of those factors, Mr. Strong's opinions include, among others, that Plaintiffs' putative expert Dr. Furchtgott-Roth's analysis does not "inform a showing of harm to Plaintiffs," and that Dr. Furchtgott-Roth's "assessment of Charter's incentives to retain its subscribers does not inform an assessment of damages." *Id.* ¶¶ 26-42. Mr. Strong then offers his own alternative analysis "of

1

███████████████████████████, and other factors that inform statutory damages." *Id.* ¶¶ 43-100.

The issues raised in Plaintiffs' motion [Dkt. 547 ("Mot.")] turn on their disagreement with, not the admissibility of, Mr. Strong's opinions. While Plaintiffs may not agree with Mr. Strong's conclusions or how he reaches them, such challenges lie within the purview of cross-examination.

*First*, while Plaintiffs argue that certain of Mr. Strong's opinions about factors he considered are "legal" opinions, they plainly are not; Mr. Strong merely identifies the factors and framework that guide his damages opinions—something experts do all the time.

*Second*, Plaintiffs wrongly claim that Mr. Strong's opinions regarding purported gains to Charter and harms to Plaintiffs are based on unreasonable assumptions, but each such challenge goes to weight, not admissibility—Plaintiffs offer no basis other than their own *ipse dixit* to assert that any assumptions he employed are "unreasonable," "unrealistic" or otherwise unsupportable. As just one example, Mr. Strong did not "fail[] to account for subsequent distribution" of a file, as Plaintiffs assert. Mot. 2. In fact, he *explicitly* "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Strong Rep. ¶¶ 68-71.

*Third*, Mr. Strong's reliance on the reports of and his discussion with Dr. Aram Sinnreich, an expert in the music industry and P2P services, to support Mr. Strong's damages opinions is proper. Mr. Strong is not offering his own opinions on the music industry or Internet P2P file-sharing; rather, he relies (in part) on another testifying expert, as damages experts routinely do. If Plaintiffs' argument were accepted, no damages expert could *ever* use information obtained from other experts to inform their calculations—an absurd result.

2

## ARGUMENT

**I. MR. STRONG DOES NOT OFFER IMPROPER "LEGAL OPINIONS"**

Mr. Strong does not purport to offer any improper "legal opinions"—he does not testify on any "ultimate issues of law," nor does he purport to interpret or apply the law in a manner to circumvent the jury's or the Court's role. Mot. 4-8. Rather, Mr. Strong does what experts commonly do: at times he refers to factors or legal concepts as a framework for his opinions.

While Plaintiffs suggest that any reference by Mr. Strong to cases or law is prohibited, their own cases establish otherwise. Mot. 4-5 (citing cases). As the Tenth Circuit has confirmed, "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). The standard is simply that "an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* at 809-10. Mr. Strong's opinions therefore fall squarely within what courts in this Circuit recognize as permissible. *See, e.g.*, *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) ("[a]n expert may ... refer to the law in expressing his or her opinion") (quotations omitted); *McNeese v. Access Midstream Partners, L.P.*, 2016 WL 9211747, at *3 (W.D. Okla. May 18, 2016) ("Harris' opinion is not inadmissible simply because he cites to relevant case law"); *cf. United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) (testimony on "ultimate issue" is "permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment").[1]

---

[1] This is a far cry from *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 853 F. Supp. 2d 1086, 1090 (D. Colo. 2012) (cited at Mot. 4-5), where the court excluded an expert from testifying how "the Clean Air Act, the regulations, or the Colorado [State Implementation Plan] should be interpreted." Mr. Strong offers no opinions on how any law or regulation "should be interpreted."

3

### A.     <u>Mr. Strong Does Not Offer "Legal Opinions" About Statutory Damages</u>

Contrary to Plaintiffs' argument, Mr. Strong does not "opine[] on the 'factors that inform an appropriate calculation of statutory damages' based on his interpretation of case law.'" Mot. 5 (quoting Strong Rep. ¶ 63). In fact, he states he is *not* offering opinions on the law of statutory damages. Strong Rep. ¶ 43 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"). Rather, Mr. Strong identifies three factors that lend themselves to quantification that inform his damages opinions—"(1) the revenues and profits lost by the plaintiff due to the defendant's conduct; (2) the expenses saved and profits reaped by the defendant in connection with the infringement; and (3) the deterrent value of the damages imposed"—and explains why he selected these factors. *Id.* ¶ 63; *see also* Ex. A[2] (Strong Tr.) 85:18-87:5 (not "opining legally one way or the other" on whether cases listing statutory damages factors are "good, bad or indifferent," but rather that they "provide a framework for me").

Referring to law as a framework for an opinion, particularly when there is a list of factors, is not only permissible but commonplace. *See, e.g.*, *Marketquest Grp., Inc. v. BIC Corp.*, 2018 WL 1756116, at *3 (S.D. Cal. Apr. 12, 2018) (expert testimony to "assist the jury in understanding the *Sleekcraft* factors" is "entirely proper and relevant," noting that "expert testimony on the factors that go into the ultimate finding on the confusion issue is generally quite proper and helpful to both judge and jury") (quotations omitted). The *Georgia-Pacific* factors that guide patent damages provide a ready example. In *Pulse Med. Instrs., Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505 (D. Md. 2012), the plaintiff challenged the defendant's damages

---

[2]   Unless otherwise noted, all exhibits cited as "Ex." herein are to the declaration of Dylan I. Scher.

4

opinions on the grounds asserted here: that the expert "improperly usurps the role of the Court in instructing the trier of fact by discussing" the factors. *Id.* at 509. The court disagreed:

> Here, [the expert's] discussion of the *Georgia-Pacific* factors is reasonable. Far from being testimony regarding "pure questions of law," as [the plaintiff] contends, [the expert's] references to these factors in Exhibit 4 of his report are in the context of the facts of this case. As such, [the expert's] analysis of the *Georgia-Pacific* factors can assist the trier of fact regarding the damages issue and is therefore admissible.

*Id.* at 510 (internal citation omitted); *see also*, *e.g.*, *Freeman v. Gerber Prod. Co.*, 450 F. Supp. 2d 1248, 1262 (D. Kan. 2006) (similar). So too here, Mr. Strong identifies certain statutory damages factors (which Plaintiffs do not dispute) and references them in the context of the facts of this case.

Plaintiffs' citation to *Sony Music Ent. v. Cox Commc'ns, Inc.*, 2019 WL 9088257 (E.D. Va. Nov. 19, 2019) (Mot. 6) highlights the appropriate nature of Mr. Strong's opinions. There, the court *permitted* the defendant's damages expert to provide opinions within "the statutory damages framework." *Id.* at *2. That is what Mr. Strong does here, and Plaintiffs do not argue otherwise.

Plaintiffs further complain that Mr. Strong incorporates a "deterrence multiplier" of ▮ ▮ Plaintiffs' actual harm. Mot. 5. But his act of multiplying Plaintiffs' actual harm by ▮ not a "legal opinion." *First*, Mr. Strong does not rely "solely" on what Colorado courts have awarded, but also states that such a multiplier is "not unusual" based on his "experience as a damages expert." Strong Rep. ¶ 99. *Second*, he never opines, as Plaintiffs pronounce, that this multiplier "captures the range of statutory damages appropriate here," or is "the upper bound of statutory damages." Mot. 5. Instead, his multiplier analysis is limited to a single statutory damages factor. *Id.* ¶ 98 (multiplier opinion on "the third factor"). Mr. Strong then presents his opinion on this factor alongside actual harm to Plaintiffs and gains to Charter as the three "that lend themselves to quantification," which are the only ones he was "asked to

5

▇▇▇▇▇ *Id.* ¶¶ 94-99.  The jury will be free, of course, to consider other factors identified in the Court's instructions.³  *Third*, it is of no moment that courts do not adopt "mathematical formulas" to calculate statutory damages (Mot. 5), as Mr. Strong does not do so either; he limits his opinions to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ should liability be found.

Because Mr. Strong does not offer opinions on the law of statutory damages but only on discrete factors that lie within the statutory damages framework—opinions that may assist the jury in its ultimate assessment—Mr. Strong is not a "puppet" (Mot. 6) and his opinions are admissible.

### B. Mr. Strong Does Not Offer "Legal Conclusions" About The Works-In-Suit

For similar reasons, Mr. Strong's calculations of the number of works-in-suit in this case do not "rest[] on and advance[] improper legal opinions."  Mot. 6.  As Plaintiffs admit, Mr. Strong simply relies on various factual "assumptions" counsel asked him to make, such as the total number of works-in-suit if he assumes that: (1) a sound recording overlaps with a musical composition; or (2) all of the songs released on an album registered as a compilation count as a single work.  Strong Rep. ¶ 21.  Mr. Strong offers no opinions on whether these assumptions are right or wrong, or on the number of works-in-suit the jury should ultimately consider, as he confirmed at his deposition:

> Q. So just to be clear, *you are not opining on what the correct number of works-in-suit* are or is for the purposes of calculating statutory damages in this case?
>
> A. I -- *I'm not*.  That's well beyond my purview.

---

³ Whether or not willfulness and deterrence are "typically evaluated" as "distinct factors" (Mot. 5) has no bearing on the admissibility of Mr. Strong's calculation of two to three times actual harm. Colorado courts have accepted such a multiplier as accounting for both factors.  *See, e.g., Girlsongs v. 609 Indus., Inc.*, 625 F. Supp. 2d 1127, 1131 (D. Colo. 2008) (multiplier accounts for "willful conduct" and "serve[s] as a deterrent").  If a court can use this approach, certainly a jury can too.

6

Ex. A (Tr.) 98:1-6 (emphasis added).[4] Instead, he offers fact-based calculations of the number of works-in-suit based on his cross-tabulations of Plaintiffs' own interrogatory responses. Strong Rep. ¶ 21 & Exs. 3A-3E. Plaintiffs offer no challenge to the accuracy of Mr. Strong's calculations.[5] Damages experts routinely offer opinions based on disclosed assumptions. *See, e.g.*, *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 WL 1319361, at *3 (D. Colo. Apr. 2, 2014) ("As an economic expert, he is free to make certain assumptions, and then testify about the effect those assumptions would have on any economic issues."). Moreover, Mr. Strong's calculations will greatly assist the jury, given the sheer number of works-in-suit.

### C. Mr. Strong's Criticisms Of Dr. Furchtgott-Roth's Analysis Are Proper

Mr. Strong's opinion that Dr. Furchtgott-Roth's analysis "does not inform a showing of harm to Plaintiffs" is not a "legal opinion." Mot. 7-8. Dr. Furchtgott-Roth offers extensive opinions on how he believes that alleged P2P copyright infringement by Charter's subscribers "harmed Plaintiffs and the economy." Dkt. 552-2 ("Furchtgott-Roth Rep.") ¶¶ 34-54. As a rebuttal witness, Mr. Strong criticizes these opinions based on his expertise in the field of damages, explaining how Dr. Furchtgott-Roth's opinions are rife with errors and omissions, including: (1) addressing harm in theory only, without making any specific connection to Plaintiffs; (2) ███████████████████████████████████████████; (3) ███████████████████████████ ███████████████████████████████; (4) ███████████████████████████

---

[4] Mr. Strong did not testify that his own calculations are a "legal issue" (Mot. 6), but rather that whether the assumptions provided to him are or are not correct "is not an issue that I opined upon or dealt with. This is a calculation performed at the behest of the lawyers." Ex. A (Tr.) 97:22-25.

[5] Dr. Furchtgott-Roth does not dispute that Mr. Strong's calculations are accurate under the assumptions employed (*see* Ex. B (Furchtgott-Roth Tr.) 184:5-10), and offered his own calculations applying a different assumption provided by counsel (*id.* 181:12-182:6, 184:12-14), as well as corroborating certain of Mr. Strong's calculations (Dkt. 552-5 at 21 (Fig. III.3)).

7

████████████████████████████████; and (5) ████████████████████

████████████████████████████████████    Strong Rep. ¶¶ 31-36.  Mr. Strong then

████████████████████████████████████████████████████████████████

*E.g.*, *id.* ¶¶ 46-59.  Mr. Strong's opinion that Dr. Furchtgott-Roth's analysis is not "informative" of actual harm is thus Mr. Strong's fact-based opinion supported by analysis, not a legal conclusion.  Mr. Strong, for example, offers no opinion about whether Dr. Furchtgott-Roth's opinions are inadmissible under Rule 403.  Rather, he does what rebuttal experts do: he challenges the rigor of Dr. Furchtgott-Roth's analysis, and explains why the jury should not give it any weight.

Plaintiffs also err in arguing (Mot. 7-8) that Mr. Strong's critique of Dr. Furchtgott-Roth's failure to adequately evaluate actual harm is "legally incorrect."  One factor in assessing statutory damages is "the revenues lost by the plaintiff due to the defendant's conduct," *i.e.*, Plaintiffs' actual harm.  *Harrington v. Aerogelic Ballooning, LLC*, 2019 WL 5095683, at *2 (D. Colo. Aug. 8, 2019).  The absence of such evidence is appropriate for a jury to consider.  *See, e.g.*, *LHF Prods., Inc. v. Gonzales*, 2020 WL 6323425, at *10 (D. Utah Oct. 28, 2020) (considering plaintiff's failure to "present any evidence regarding its actual losses from illegal peer-to-peer sharing of its motion picture").  Courts recognize that "[a] plaintiff's actual damages are a relevant consideration in determining statutory damages under the Copyright Act."  *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 677 (E.D. Va. 2015) (copyright action brought against ISP), *rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018); *McGlynn v. Cube N.Y. Inc.*, 2021 WL 1338955, at *3-4 (S.D.N.Y. Apr. 9, 2021) ("statutory damages should bear some relation to actual damages suffered") (quotations omitted) (awarding $1,000 where plaintiff failed to provide "a viable actual damages amount on which to base our award").  Even if Plaintiffs are not *required*

to present evidence of actual harm, Charter, for example, "is entitled to present evidence that Plaintiffs did not suffer any lost profits to argue that Plaintiffs are seeking a windfall." *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2021 WL 1222492, at *2 (N.D. Cal. Apr. 1, 2021). Mr. Strong therefore may critique Dr. Furchtgott-Roth's refusal to provide an estimate of actual harm.

## II. MR. STRONG'S OPINIONS ON GAINS TO CHARTER AND ACTUAL HARM TO PLAINTIFFS SHOULD NOT BE EXCLUDED

In rebutting Dr. Furchtgott-Roth's damages opinions, Mr. Strong provides analyses of: (1) ███████████████████████████████████████████████████████ (Strong Rep. ¶¶ 81-91); and (2) ███████████████████████████████████████████████ (*id.* ¶¶ 65-80). Plaintiffs' challenges reflect nothing more than disagreement with a "damages expert's reasoning and methodology [that] ultimately go to the weight that should be given to his opinions." *Waterman v. City of Colo. Springs*, 2019 WL 6465364, at *2 (D. Colo. Dec. 2, 2019).

### A. Criticisms Of Mr. Strong's Analysis Of Charter's Alleged Gains Go To Weight Rather Than Admissibility

Plaintiffs argue that Mr. Strong's methodology for calculating Charter's gains is based upon "unreasonable assumptions." Mot. 8-10. However, "the assumptions underlying an expert opinion go to the weight that should be afforded such opinion, and not its admissibility." *SolidFX*, 2014 WL 1319361, at *3; *see also Mills v. FCA US, LLC*, 2021 WL 4079363, at *21 (D. Colo. Sept. 7, 2021) ("a dispute over the persuasiveness of the assumptions that underlie Dr. Gwin's opinion" is "a dispute that goes to the weight, not the admissibility"). Thus, to the extent Plaintiffs argue that Mr. Strong's "facts and data or methodology may be inaccurate, incomplete, or otherwise imperfect, those flaws go to the weight to be ascribed to his opinions, and not to their admissibility." *Hardy v. Union Pac. R.R. Co.*, 2011 WL 5295199, at *3 (D. Colo. Nov. 2, 2011).

9

In any event, Plaintiffs do not explain why the supposed "three primary flaws" they identify (Mot. 9-10) require exclusion of his opinions. While Plaintiffs argue that Mr. Strong's gains analysis is flawed because he (1) ███████████████████████████," (2) apportions fees to account for P2P use, and (3) ███████████████████████████ ███████ they do not cite to a *single* piece of evidence or authority showing that Mr. Strong's approach is unreasonable, let alone excludable. Ex. A (Tr.) 237:1-20 (Mr. Strong explaining that based on experience, apportionment is appropriate to determine value, regardless of severability).[6]

Moreover, Plaintiffs' challenges are legally wrong. Mr. Strong's apportionment of Charter's revenues to estimate gains attributable to the alleged infringement is *consistent* with how experts assess damages. One of the statutory factors is "the profits reaped by the defendants *in connection with the infringement*." *Harrington*, 2019 WL 5095683, at *2 (emphasis added). Factfinders thus routinely consider what portion of a defendant's profits is attributable to the infringement alleged. *See, e.g.*, *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 636 (6th Cir. 2020) (approving "jury's assessment that only 0.4% of Carrier's Collierville revenues were earned as a result of its infringing use of ECIMOS's database-script source code"). Plaintiffs' argument that Charter's fees are "not severable" (Mot. 9) is thus a red herring. For example, in *Brown v. McCormick*, 87 F. Supp. 2d 467, 483 (D. Md. 2000), where a quilt block appeared in a movie, "[t]he defendants' expert testified that the value of [plaintiff's] contribution to the Movie through the [quilt block] was .0001176% of the total value of the Movie," or $2 million, which the court used to issue an award of $2.35 in profits, even though a ticket sale is not "severable." Likewise,

---

[6] In contrast, the expert in *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 143 (4th Cir. 1994) (cited at Mot. 10), used figures based on comparing two "pits" with no factual basis and applied "the concept of the learning curve" which was "thought up 'one night on his own.'"

10

Mr. Strong's calculation of Charter's gains attributable to the alleged infringement is reasonable.

### B. Criticisms Of Mr. Strong's Analysis Of Lost Sales Go To Weight Rather Than Admissibility

Plaintiffs' attack on Mr. Strong's lost sales analysis based on disagreement with the assumptions he employs is likewise faulty. Mot. 10-11. Again, criticisms of "the assumptions underlying an expert opinion go to the weight that should be afforded such opinion, and not its admissibility." *SolidFX*, 2014 WL 1319361, at *3. The same principle applies here.

While Plaintiffs challenge that Mr. Strong "incorrectly assumes" that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Mot. 10-11), Plaintiffs cite no record evidence that this "assumption" is incorrect. The *sole* citation is to their own expert's trial testimony in a *different* case in 2019 involving *different* notices. Mot. 11. In any event, Plaintiffs misconstrue Mr. Strong's report: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Strong Rep. ¶ 68. While Plaintiffs bemoan his labels (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) Mr. Strong unambiguously ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.



Plaintiffs are also wrong that Mr. Strong's use of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is "arbitrary" or not sufficiently tied to this case. Mot. 11. *First*, Plaintiffs do not challenge Mr. Strong's method, but the data he relies on; "criticisms [that] challenge particular flaws in Mr. [Strong]'s data and/or assumptions, but do not address his methodology, … go to the

11

weight, rather than the admissibility." *Jones v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 3625435, at *9 (D. Colo. Apr. 27, 2021). *Second*, ▮

▮. Strong Rep. ¶ 68 & nn.123-124. As both explain, ▮

▮. *Id.* (citing, *inter alia*, Sinnreich Rebuttal Rep. & conversation with Dr. Sinnreich). ▮

▮. Strong Rep. ¶ 68. *Third*, Plaintiffs do not contest that an expert "properly may rely on information provided by another expert in developing his own opinions," as Mr. Strong does. *U.S. v. Water Supply & Storage Co.*, 2008 WL 1930602, at *6 (D. Colo. May 1, 2008); Ex A (Tr.) 193:21-194:13 (relying on Dr. Sinnreich's expertise ▮ as "an issue that [Dr. Sinnreich] had dealt with before, and he said that was a decent and reasonable assumption to make"). Plaintiffs' challenges go to the weight to afford Mr. Strong's opinions, which can be tested through cross-examination of Mr. Strong and Dr. Sinnreich.[7]

### III. MR. STRONG'S OPINIONS THAT RELY ON ANOTHER EXPERT'S OPINIONS ABOUT THE MUSIC INDUSTRY OR P2P FILE-SHARING ARE PROPER

Plaintiffs err in contending that certain of Mr. Strong's various "opinions on the music industry, digital file sharing, and piracy" to support his damages opinions should be excluded where he is "relying entirely on Dr. Sinnreich." Mot. 11-14. Mr. Strong is not offering his own opinions on those subjects; he relies on Dr. Sinnreich's expertise to inform his damages opinions.

Mr. Strong can rely on Dr. Sinnreich's expertise on the music industry and P2P file-sharing

---

[7] This is not a case like *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1213 (10th Cir. 2004) (cited at Mot. 10), where the expert's testimony was *directly contradicted* by record evidence.

because an expert "properly may rely on information provided by another expert in developing his own opinions." *Water Supply & Storage Co.*, 2008 WL 1930602, at *6; *see also Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1144-45 (D. Utah 2021) ("expert may rely upon another expert's opinion if the facts or data relied upon are of the kind that experts in the particular field would reasonably rely on ... in forming an opinion on the subject") (quotations and brackets omitted); *cf. Burgard v. Morales*, 2020 WL 2214394, at *4 (D. Colo. May 7, 2020). Plaintiffs identify no contrary authority. This rule is sensible, as no expert can possess expertise in every field—especially damages experts, who often rely upon the expertise of others to obtain inputs for a damages model. *See TC Rich, LLC v. Shaikh*, 2021 WL 4812314, at *2 (C.D. Cal. May 4, 2021) ("[A]n expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion.") (quotations and brackets omitted). Mr. Strong uses Dr. Sinnreich's information as background for arriving at his own damages-related opinions. *See, e.g.*, Strong Rep. ¶ 48 (using Dr. Sinnreich's ███████████████████████████████████████████████ ███); *id.* ¶¶ 50-53 (using Dr. Sinnreich's ███████████████████████████████████████████████████████████████); *id.* ¶ 54 (using Dr. Sinnreich's ███████████████████████████████████████████████████████████████ *id.* ¶¶ 56-58 (using Dr. Sinnreich's ███████████████████████████████████████████████).

With this understanding, Plaintiffs' list of the fields that Mr. Strong is not an expert in (Mot. 12), or the number of times that Mr. Strong references Dr. Sinnreich in his report (*id.*), simply do not matter. Nor do Plaintiffs argue that a damages expert such as Mr. Strong would not reasonably rely on an industry expert such as Dr. Sinnreich in forming his opinions.

13

Plaintiffs further err in arguing that Mr. Strong "uncritically adopts and repeats, without any independent investigation, opinions … offered by Dr. Sinnreich" or that he "did not undertake any independent analysis" of any articles he analyzed. Mot. 12. To the contrary, Mr. Strong: (1) personally discussed the information that he relies upon at length with Dr. Sinnreich; (2) reviewed Dr. Sinnreich's reports submitted in this case; and (3) independently reviewed articles and studies that confirmed the contents of his discussion with Dr. Sinnreich. Ex. A (Tr.) 72:3-15 (discussion with Dr. Sinnreich); *id.* 77:22-82:17 (describing review of articles). In any event, Plaintiffs' positions are academic and premature; because Dr. Sinnreich will testify at trial, Plaintiffs may cross-examine him on the opinions, facts or data that Mr. Strong relies upon.

*Arista Records LLC v. Lime Group LLC*, 2011 WL 1674796 (S.D.N.Y. May 2, 2011) thus is inapposite. There, Mr. Strong did *not* rely upon Dr. Sinnreich's (or any other expert's) expertise. Here, however, Mr. Strong expressly relies on Dr. Sinnreich's expertise (supported by their discussion and his review of Dr. Sinnreich's reports), and so is not subject to the same criticism.

Plaintiffs' back-up suggestion that Mr. Strong's (unidentified) opinions should be excluded as cumulative of Dr. Sinnreich's (Mot. 13-14) should also be rejected. "The mere presence of overlap, reference to another expert's report or a similar conclusion … does not render an expert report unnecessarily 'cumulative' …." *Banks v. U.S.*, 93 Fed. Cl. 41, 51 (2010) (experts can have a "different perspective that is potentially helpful to the court," such as where experts have "unique educational backgrounds"). In any event, such an objection is premature; "[i]f an expert's testimony begins to be repetitious, or if it is unduly duplicative of the opinions of a previous expert, the Court will sustain objections or intervene on its own" at trial. *Aqua-Hot Heating Sys., Inc. v.*

*Gorman-Rupp Co.*, 2018 WL 6249886, at *15 (D. Colo. Nov. 29, 2018) (Jackson, J.).[8]

## CONCLUSION

WHEREFORE, for the foregoing reasons, Charter respectfully requests that the Court deny the Motion to Exclude Certain Expert Testimony of George Strong.

Dated: December 20, 2021

Respectfully submitted,

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

/s/ Andrew H. Schapiro
Andrew H. Schapiro
Nathan Hamstra
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*

---

[8] Similarly, should the Court exclude any of Dr. Sinnreich's opinions (*see* Mot. 13), it would be premature to determine the effect, if any, on Mr. Strong's opinions. *See* Ex. A (Tr.) 90:11-92:17.