# Exhibit X

# Exhibit A

ATTORNEYS' EYES ONLY

Page 1

1              UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF COLORADO

3

4

    WARNER RECORDS INC. (F/K/A       )

5    WARNER BROS. RECORDS, INC.), ET )

    AL.,                             )

6                                     )

             PLAINTIFFS,             )

7                                     ) CASE NO.

            VS.                      ) 19-cv-00874

8                                     ) RBJ-MEH

    CHARTER COMMUNICATIONS, INC.,    )

9                                     )

            DEFENDANTS.              )

10    _____)

11

12

13            * * * ATTORNEYS' EYES ONLY * * *

14

15             REMOTE PROCEEDINGS OF THE

16           VIDEOTAPED EXPERT DEPOSITION OF

17               GEORGE STRONG, JR.

18             FRIDAY, OCTOBER 15, 2021

19

20

21

22    JOB NO.  4848551

23    REPORTED BY KIMBERLY EDELEN,

24    CSR. NO. 9042, CRR, RPR.

25    PAGES 1 - 260

Case No. 19-cv-00874-RBJ-MEH Document 602-84 Filed 12/02/22 USDC Colorado Page 4 of 834

Page 2

```
 1    REMOTE PROCEEDINGS OF THE VIDEOTAPED EXPERT
 2    DEPOSITION OF GEORGE STRONG, JR., TAKEN ON BEHALF
 3    OF PLAINTIFFS, ON FRIDAY, OCTOBER 15, 2021 AT
 4    8:01 A.M. PDT, BEFORE KIMBERLY A. EDELEN, CSR
 5    NO. 9042, CRR, RPR.
 6
 7
 8    REMOTE APPEARANCES OF COUNSEL
 9    FOR THE PLAINTIFFS WARNER RECORDS INC., FKA WARNER
      BROS. RECORDS, INC. AND UMG RECORDINGS, INC.:
10
                     COVINGTON & BURLING LLP
11                   BY:  STACEY GRIGSBY, ESQ.
                          ANDERS LINDEROT, ESQ.
12                        ELIZABETH R. ARCHER, ESQ.
                     ONE CITYCENTER
13                   850 TENTH STREET, NW
                     WASHINGTON, DC 20001
14                   202.662.5238
                     SGRIGSBY@COV.COM
15                   ALINDEROT@COV.COM
                     EARCHER@COV.COM
16
17    FOR THE DEFENDANT CHARTER COMMUNICATIONS:
18                   QUINN EMANUEL URQUHART & SULLIVAN LLP
                     BY:  DAVID EISEMAN, ESQ.
19                        DYLAN SCHER, ESQ.
                     50 CALIFORNIA STREET
20                   22ND FLOOR
                     SAN FRANCISCO, CALIFORNIA 94111
21                   415.875.6600
                     DAVIDEISEMAN@QUINNEMANUEL.COM
22                   DYLANSCHER@QUINNEMANUEL.COM
23
24    ALSO PRESENT:  JEFREE ANDERSON, VIDEOGRAPHER
25
```

Case No. 1:19-cv-08247-MEJ-MEH Document 601-84 Filed 12/02/23 DUSDC Colorado Page 5 of 34

Page 72

1      Q      Sure.

2      A      Okay.  Sorry.

3      Q      Okay.  And I want to talk now a little bit

4   more about your conversation with Dr. Sinnreich.

5             How many conversations did you have with

6   Dr. Sinnreich?

7      A      Just one.

8      Q      Okay.  Just one.

9             And how long was that conversation?

10     A      That was a lot longer.  That might have

11  been an hour and a half.  As you know from the

12  report, for the contextual and the industry

13  material, we refer to Dr. Sinnreich quite

14  frequently.  And so, yeah, there was a longer

15  discussion that was had with him.

16     Q      Who else was present at that conversation

17  with Dr. Sinnreich?

18     A      Well, Colleen Connolly was and Mr. Anten or

19  Mr. Eiseman probably was.  I can't remember which

20  one.  Maybe both.

21     Q      And did you take notes during that

22  conversation with Dr. Sinnreich?

23     A      I did not.

24     Q      Did anyone else take notes during the

25  conversation between you and Dr. Sinnreich?

Case No. 1:19-cv-00874-RBJ-MEH Document 602-84 filed 12/02/22 USDC Colorado Page 6 of 34



ATTORNEYS' EYES ONLY

Page 77

1

Case No. 19-cv-09074-BLF-MEJ Document 602-8 Filed 12/02/23 DISDoc Colorado Page 8 of 834



```
23     Q    Okay.  So it's fair to say that you may

24   have reviewed Oberholzer-Gee and Pratt independent

25   of this discussion you had with Dr. Sinnreich,
```

Case No. 9-1-cv-0087-RMI-MEJ Document 601-8 Filed 12/07/23 DC Colorado Page 9 of 34

ATTORNEYS' EYES ONLY

Page 79

1   correct?

2       A    Yeah.  And several -- and several others.

3            But, yeah, if we cite them, then I've at

4   least, you know, looked at them, some in more

5   cursory fashion than others.  And you'll see a lot

6   of the same kinds of articles that he recites are

7   included in our report as well.

8            So I have seen, you know, some of the same

9   material that he used.

10      Q    And did you do anything to verify or test

11  the methodology that Oberholzer-Gee or Pratt used in

12  their reports or studies?

13      A    Well, I mean, analytically, probably no.

14  But, you know, I've reviewed a whole host of these

15  materials and some are confirming and some aren't.

16  And to the degree that, you know, not relying on a

17  single article but, in fact, reviewing several is

18  confirming of various theses that, yeah, I did that.

19           I mean, Dr. Furchtgott-Roth said, you know,

20  he used a similar technique in that he read

21  carefully, I mean, some of the reports now.  So,

22  yeah, I read other reports.  And although I don't

23  regard that as an analytical procedure confirming

24  what they did, it is either confirming or not in

25  that they're -- you can see either a consensus or

Case No. 1:19-cv-00874-RBJ-MEH Document 602-4 Filed 12/02/21 USDC Colorado Page 10 of 34

1    not.

2            And there doesn't appear to be much of a

3    consensus, in other words, and the -- and the

4    coefficients you put on the three buckets might vary

5    from what Dr. Sinnreich has concluded.  Those three

6    possibilities exist elsewhere in the literature.

7        Q    And so in terms of reading the articles,

8    the host of articles concerning the potential

9    benefit of P2P, again, apart from that, did you do

10   anything to analyze the methodologies used by the

11   articles' authors?

12       A    Yeah, I -- no.  Analytically, I don't think

13   so.

14

Case No. 1:19-cv-00874-RBJ-MEH Document 602-84 Filed 12/02/22 USDC Colorado Page 11 of 34



```
21        Q    Are you aware of any criticisms by
22   academics of Oberholzer-Gee's studies and their
23   methodologies?
24        A    Yes.
25             (Simultaneous cross talk.)
```

Case No. 1:19-cv-00874-RBJ-MEH Document 602-84 Filed 12/02/21 USDC Colorado Page 12 of 34

Page 82

```
 1            MR. EISEMAN:  Objection as to form.
 2            THE WITNESS:  Sorry.  Sorry.  Sorry.
 3    Sorry.  I'll let you finish the objection.  Sorry.
 4            MR. EISEMAN:  It was just as to form.
 5            THE WITNESS:  Oh, okay.
 6            Yeah.  Well, all of them, you know, have
 7    certain flaws, some of them admitted, some of them
 8    not.  And my overarching sort of criticism -- and
 9    it's not a criticism because the focus of their
10    study was not intended to cover offsetting benefits.
11            That's more of an issue for somebody
12    performing my role in which I have to assess what
13    the net economic effect of this and what's its
14    impact on their propensity to buy.
15            And so -- but, yeah, I'm aware of the --
16    sorry.  That was long-winded.  I'm aware of the
17    criticism of Oberholzer-Gee, yes.
18    BY MS. GRIGSBY:
19    ███████████████████████████████████████████
```

Case No. 1:19-cv-00874-RBJ-MEH Document 692-84 Filed 12/02/22 USDC Colorado Page 13 of 34



Case No. 1:19-cv-00874-RBJ-MEH Document 602-84 Filed 12/02/22 USDC Colorado Page 14 of 34



Case No. 1:19-cv-00874-RBJ-MEH  Document 602-4  Filed 12/02/21  USDC Colorado  Page 15 of 34



    18        Q     And you mentioned a couple of times prior
    19    court decisions.  Do you consider prior court
    20    decisions that have not been overturned something
    21    that is reliable or confirmation of the way
    22    copyright infringement damages should be analyzed?
    23              MR. EISEMAN:  Objection as to form.
    24              THE WITNESS:  Yeah.  That may call for a
    25    legal conclusion, too, in the following sense.

Case No. 1:19-cv-00874-RBJ-MEH Document 602-84 filed 12/02/21 USDC Colorado pg 16 of 834

Page 86

1    Look, I look at either court decisions or things

2    like this Commerce Department articulation of

3    factors as providing structure and actually

4    requirements of a damages claim and what it has

5    to -- the requirements it must meet; not unlike

6    Section 504 of the U.S. Code which sets out, you

7    know, the damages standards to which I have to

8    adhere in -- in calculating damages.

9              So court decisions and -- and, you know,

10   other articles provide a framework for me.  I'm not

11   assessing whether they were, you know, reviewed or

12   not.  These are court decisions that provide some

13   framework.

14             And it turns out the Colorado decisions are

15   very confirmatory of the factors and are factors

16   that are included within.  There are only three of

17   them, but they're included within the nine from the

18   white paper.

19             So there's a -- a convergence of thought in

20   terms of what -- what would provide a proportional

21   remedy in an environment or especially in cases of

22   multiple works like this one, a rather formulaic

23   solution articulated by the statutory damages remedy

24   can be disproportionate to the actual harm or gain.

25   And that notion is, I think, carried throughout all

Case No. 1:19-cv-00874-RBJ-MEH Document 602-34 Filed 12/02/21 USDC Colorado Page 17 of 34

Page 87

1    it.

2           Yeah.  Beyond that, they set a framework

3    for me.  I -- I'm not opining -- you know, certainly

4    not opining legally one way or the other whether

5    they're good, bad or indifferent.

6    BY MS. GRIGSBY:

7        Q    And you referred just now to Dr. Sinnreich

8    as a music industry expert; is that right?

9        A    That's my understanding, yes.

10       Q    So it's fair to say you're considering him

11   a music industry expert?

12       A    Well, he's -- yeah.  His -- his -- he's in

13   the -- it's probably more internet than it is music,

14   but he's got some knowledge in the music business as

15   well.  He studied the P2P file sharing which is in

16   the music industry.

17           I mean, that's what his research was in,

18   so -- I mean, I have -- yeah.  Yeah, he's an expert

19   in a number of fields.

20       Q    And what led you to the conclusion that

21   Dr. Sinnreich is an expert in a number of fields?

22       A    Well, I read -- I read his report.  I read

23   his resume.  I talked to him.  I -- you know, that's

24   enough for me.

25       Q    Did you do anything independently to

Case No. 1:19-cv-00874-RBJ-MEH Document 602-84 Filed 12/03/21 USDC Colorado Page 1 of 1

Page 90

1    expertise?

2              MR. EISEMAN:  Objection as to form and also

3    asked and answered.

4              THE WITNESS:  Yeah.  Again, that -- that

5    one decision in one particular case on one

6    particular set of facts wouldn't cause me to, you

7    know, disregard or -- I just -- I don't see how that

8    would be important in my relying on his opinion in

9    this case in this set of facts.

10   BY MS. GRIGSBY:

11       Q    And if in this case Dr. Sinnreich's

12   opinions are found to be either excluded or

13   unreliable, would that change any of your analyses?

14             MR. EISEMAN:  Objection as to form.

15             THE WITNESS:  Well, that's a better

16   question and it might, depending upon what part, you

17   know, it was -- for example, many of these

18   assumptions, I tried to gather several forms of

19   support.  And the primary one is analytically, I

20   think, it's -- it's reliable because I propose it as

21   a -- as an element of a damages claim where I can

22   rely on my own expertise.

23             To the degree that I find confirmation from

24   Dr. Sinnreich, usually I have other forms of

25   confirmation.  So I'm not sure it's a quinae --

Case No. 1:19-cv-00874-RBJ-MEH Document 602-14 Filed 12/02/23 USDC Colorado Page 19 of 34

1    sine qua non for my -- in fact, it wouldn't be for

2    my opinion.  It would depend on, again, the facts

3    and the -- how narrow the exclusion is and what it

4    related to and a whole bunch of other things.

5    BY MS. GRIGSBY:

6        Q    Well, I mean, if Dr. Sinnreich's opinions

7    were excluded here, would you have to at least

8    analyze the support for the 16 footnotes in your

9    rebuttal report that cite to Dr. Sinnreich?

10           MR. EISEMAN:  Objection as to form.

11           THE WITNESS:  Well, I might look at what

12   exactly it was and whether it was germane to the

13   support that it gave me in the context of all the

14   other support that I have.  So, yeah, I'd probably

15   look at it.

16   BY MS. GRIGSBY:

17       Q    And if Dr. Sinnreich were excluded here or

18   some of his opinions were excluded, you would have

19   to look at least in the context of this case as to

20   whether you would have to revise the 33 footnotes in

21   your rebuttal report that rely on Dr. Sinnreich,

22   correct?

23           MR. EISEMAN:  Object -- objection as to

24   form.

25           THE WITNESS:  Well, in an abundance of

ATTORNEYS' EYES ONLY

Page 92

1    caution, I would -- I would probably look to see

2    what impact it had.  It doesn't -- I mean, so, yeah,

3    I'd probably look.

4    BY MS. GRIGSBY:

5        Q    And if Dr. Sinnreich were excluded here,

6    then your analysis could change, correct?

7        A    Well, potentially.  It would depend on, you

8    know, whether other confirming collateral sources

9    for the footnote, whether the footnote, you know,

10   was important, whether it's -- a large part of my

11   report is, shall I say, contextual in nature, and

12   that's not germane to the -- the actual calculation

13   from whence my primary opinion flows.

14            So, yeah, I -- I mean, I'd look and see

15   what the nature of it was and what particular

16   footnote and what it was supporting and it may or

17   may not impact any opinion.

18       Q    And just to put a finer point on it, in

19   your rebuttal report, which is Exhibit 314, you have

20   176 footnotes; is that correct?

21       A    I haven't looked, but there are a lot,

22   yeah.

23       Q    So, you know, hopefully I haven't missed

24   one, but let's just call it 180.

25            So you have about 180 footnotes, correct?

Case No. 1:19-cv-00874-RBJ-MEH Document 692-84 Filed 12/00/00 USDC Colorado Page 21 of 834

Page 95

```
1       Q    All right.  In Section 3E of your report,
2   which is on Page 7, Paragraph 21.
3       A    Okay.  Just a second.
4       Q    Uh-huh.
5       A    Paragraph E, Page 7.
6       Q    Uh-huh.
7       A    Okay.  Yeah.
8       Q    Okay.  You say you "understand that some
9   tracks embody both an identified sound recording and
10  an identified musical composition within a single
11  track."
12           Do you see that?
13      A    I do.
14      Q    What led you to write this sentence?
15      A    Well, that's a -- that's a deeper question.
16  Well, was a desire to communicate the work that I
17  had done, is the strict answer.
18           But, you know, the entire inquiry was
19  requested by the attorneys.  Apparently there's
20  debate as to what constitutes a work, which wouldn't
21  surprise me, so...
22      Q    And what exactly did the attorneys ask you
23  to do here?
24      A    Well, to -- to make the following
25  assumptions about works-in-suit.  If it were
```

Case No. 1:19-cv-00874-RBJ-MEH Document 692-14 Filed 12/07/23 DC Colorado Page 22 of 34

Page 96

1  determined that "works" is to be defined as those

2  sound recordings and musical compositions, but to

3  treat the areas or the individual sound recordings

4  which also incorporate a musical composition as a

5  single work, then what would be the total and

6  moreover, what would be the distribution between

7  those three buckets.  That's sound recordings

8  without overlaps, musical compositions without

9  overlaps, and then third, overlaps which treat the

10  combination as one.

11      Q    And can you tell me what your methodology

12  was for determining there was an overlap between a

13  sound recording and a composition?

14      A    Yeah.  The simple answer is an

15  interrogatory response.  I think it's Interrogatory

16  No. 13.  It's cited.

17          And moreover, I think we gave you a

18  technical appendix which explains the methodology

19  for not only this, but for the -- the next topic,

20  which is how do you -- how do you assess the

21  treatment of albums, if albums are to be regarded as

22  a single work-in-suit as opposed to the tracks

23  contained therein.

24      Q    So the track album, yeah.  I was getting to

25  that, too.

Page 97

1          So Charter's counsel also asked you to

2   determine the number of works-in-suit if when

3   treated all songs -- all songs released on an album

4   registered as a compilation as a single work,

5   correct?

6      A    Yeah.  Yeah.  That's better said than I

7   did.

8      Q    Well, it is basically what you said in your

9   Paragraph 21, so...

10     A    Oh.

11     Q    Okay.  And so in Footnote 42 you say "I

12  understand that all songs on an album and registered

13  as a compilation are to be treated as a single work

14  for the purposes of awarding statutory damages."

15          Again, apart from counsel's direction, what

16  is that understanding based on?

17     A    Well, counsel's direct -- I have no

18  independent reason to do that.  I mean, I -- as far

19  as I'm concerned, that's a legal issue, whether --

20  and I would say feeds into statutory damages.  I

21  assume that's where this is going.

22          But whether legally, you know, the work is

23  to be considered one if it combines both is not an

24  issue that I opined upon or dealt with.  This is a

25  calculation performed at the behest of the lawyers.

Page 98

1    Q    So just to be clear, you are not opining on

2    what the correct number of works-in-suit are or is

3    for the purposes of calculating statutory damages in

4    this case?

5    A    I -- I'm not.  That's well beyond my

6    purview.

7    Q    All right.  So now I would like to look at

8    Exhibit 3B on your rebuttal report.

9    A    Oh, rebut -- okay.  I keep forgetting this,

10   the first one.  Yeah.  Okay.

11   Q    You got there more quickly than I did.

12

Case No. 1:19-cv-00874-RBJ-MEH Document 602-34 Filed 12/20/21 USDC Colorado Page 25 of 34

Page 184



1

25        MR. EISEMAN:  Objection as to form, calls

ATTORNEYS' EYES ONLY

Page 192



Page 193



ATTORNEYS' EYES ONLY

Page 194



ATTORNEYS' EYES ONLY

Page 237

1



Case No. 1:19-cv-00874-RBJ-MEH Document 602-84 Filed 12/07/21 USDC Colorado Page 30 of 34

Page 267

1    plaintiffs yesterday.  So I'm just -- they had the

2    opportunity to question him and I'll note for the

3    record they chose not to do so.

4            But other than that, I'm all set.

5            THE VIDEOGRAPHER:  Shall I take us off the

6    record then?

7            MR. EISEMAN:  Yes, please.

8            MS. GRIGSBY:  Yes.

9            THE VIDEOGRAPHER:  All right.  This marks

10   the end of the deposition of George Strong, Jr.

11   We're going off the record.  The time is 4:21 p.m.

12

13       (Whereupon, at 4:21 p.m., the deposition of

14           GEORGE STRONG, JR. was concluded.)

15

16                     ---oOo---

17

18

19

20

21

22

23

24

25

Case No. 1:19-cv-00874-RBJ-MEH   Document 692-14   filed 12/02/21   USDC Colorado   pg 31 of 34

Page 268

```
 1   STATE OF CALIFORNIA        )
 2   COUNTY OF LOS ANGELES      )    ss.
 3
 4        I, Kimberly A. Edelen, C.S.R. No. 9042, in and
 5   for the State of California, do hereby certify:
 6        That prior to being examined, the witness named
 7   in the foregoing deposition was by me duly sworn to
 8   testify the truth, the whole truth and nothing but
 9   the truth;
10        That said deposition was taken down by me in
11   shorthand at the time and place therein named, and
12   thereafter reduced to typewriting under my
13   direction, and the same is a true, correct and
14   complete transcript of said proceedings;
15        That if the foregoing pertains to the original
16   transcript of a deposition in a Federal Case, before
17   completion of the proceedings, review of the
18   transcript { } was {X} was not requested.
19        I further certify that I am not interested in
20   the event of the action.
21        Witness my hand this 20th day of October,
22   2021.
23
24
          KIMBERLY A. EDELEN, C.S.R. NO. 9042
25
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC. (f/k/a/ Warner Bros. Records, Inc.), *et al.*,

*Plaintiffs*,

v.

CHARTER COMMUNICATIONS, INC.

*Defendant*.

Case No. 19-cv-00874-RBJ-MEH

**Errata Sheet for the Deposition of George Strong, Jr. (October 15, 2021)**

| Page | Line(s) | Now Reads | Should Read | Reason: 1=clarify the record; 2=conform to the facts; 3=correct transcription errors |
|---|---|---|---|---|
| 25 | 7 | Garth | Guy | 3 |
| 33 | 13 | Pricewaterhouse | Cornerstone | 1 |
| 36 | 7 | Slootlinen | Linen | 3 |
| 41 | 17 | Pratt | Watters | 1 |
| 42 | 6 | | | |
| 60 | 1, 25 | | | |
| 62 | 5, 6 | | | |
| 63 | 8, 10 | | | |
| 73 | 12 | | | |
| 78 | 14, 24 | | | |
| 79 | 11 | | | |
| 126 | 18 | | | |
| 220 | 18 | | | |
| 234 | 23 | | | |
| 41 | 21 | refine | define | 3 |
| 51 | 3 | call liability | call a liability | 3 |
| 58 | 4 | Capdata | Capital IQ | 1 |
| | 9 | CapAnalysis | Capital IQ | |
| 66 | 7 | any me heartburn | me any heartburn | 3 |
| 69 | 9 | high | low | 2 |
| 82 | 13 | of this and | of this is and | 3 |
| 83 | 20 | he did | you did | 3 |
| 101 | 5 | now | Snow | 3 |
| 102 | 14 | bucket | Buchan | 3 |

1

| Page | Line(s) | Now Reads | Should Read | Reason: 1=clarify the record; 2=conform to the facts; 3=correct transcription errors |
|------|---------|-----------|-------------|-----------------------------------------------------------------------|
| 102 | 20 | purchased | Downloaded | 1 |
| 103 | 21 | original | First Amended | 1 |
| 104 | 21 | infringing repeaters | repeat infringers | 1 |
| 107 | 15 | Elkins | Alchian | 1 |
| 108 | 2 | that Dr. Furchtgott-Roth referred to the | what Dr. Furchtgott-Roth didn't.  I referred to the | 3 |
| 108 | 6 | probe | Prove | 3 |
| 116 | 12 | sales | Sale | 3 |
| 120 | 5 | infringing repeater | repeat infringer | 1 |
| 120 | 5, 6 | were | we're | 3 |
| 121 | 18 | know | use it | 1 |
| 122 | 9 | one | a track | 1 |
| 126 | 20 | Oberholzer | Oberholzer-Gee | 1 |
| 128 | 15 | this | His | 3 |
| 134 | 8 | of P2P | besides P2P | 3 |
| 138 | 3 | add supported | ad supported | 3 |
| 149 | 25 | taking | making | 3 |
| 151 | 14 | it that | it like that | 3 |
| 151 | 20 | say | say that | 3 |
| 157 | 14 | sake | Sense | 3 |
| 168 | 24 | services of goods | services or goods | 3 |
| 177 | 15 | an advanced | a | 3 |
| 180 | 24 | relative any | relevant to any | 3 |
| 187 | 12 | be more a narrower | be more of a narrower | 3 |
| 189 | 5 | subscriber | subscribers | 3 |
| 197 | 3 | are | are not | 3 |
| 209 | 10 | Z | zero | 3 |
| 214 | 14 | trucks | tracks | 3 |
| 216 | 6 | went unnoticed | were noticed | 3 |
| 216 | 11-12 | the 125 comes in. | the 1.25 comes in. | 3 |
| 220 | 3 | to the internet | of the internet here | 1 |
| 220 | 7 | by | to | 3 |
| 220 | 9 | 151,000 | $151,000 | 3 |
| 222 | 12 | 7 percent off of this number. | 7 percent of this number. | 3 |
| 222 | 14 | than | in | 3 |
| 225 | 25 | months | quarters | 1 |
| 230 | 14 | but | on serverability | 1 |
| 233 | 17 | of principal | principle | 3 |
| 233 | 25 | of | or | 3 |

| Page | Line(s) | Now Reads | Should Read | Reason: 1=clarify the record; 2=conform to the facts; 3=correct transcription errors |
|------|---------|-----------|-------------|---------------------------------------------|
| 240 | 6 | Sandvine annual | Sandvine | 1 |
| 241 | 9 | said the | said that | 3 |
| 243 | 11 | it | at | 3 |
| 246 | 5 | $12,795 | 12,795 | 3 |
| 257 | 1 | apparently | apparently didn't | 3 |
| 259 | 24 | infringers | works-in-suit | 1 |
| 260 | 9 | infringers | works-in-suit | 1 |
| 261 | 8 | and | of | 3 |
| 261 | 14 | can't | can | 3 |

Date:  November 23, 2021        Signature: _____