# Exhibit XII

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

## CHARTER'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT CERTAIN EXPERT TESTIMONY AND OPINIONS BY DR. KEVIN ALMEROTH

Dr. Almeroth has been a Professor in the Department of Computer Science at the University of California, Santa Barbara since 1997, where he is a founding member of the Computer Engineering Program, Media Arts and Technology Program, and the Technology Management Program. *See* Dkt. 557-2 ("Almeroth Rep.") ¶¶ 6-7. Dr. Almeroth has concentrated his research on, among other things, the delivery of multimedia content across large-scale delivery systems, such as those used by Internet service providers ("ISPs"). *Id.* ¶ 8. In his professional and academic work, he has examined available technology in the marketplace for network management and has worked with the Internet Engineering Task Force ("IETF"), which focuses on Internet architecture and the smooth operation of the Internet. *Id.* ¶ 22.

Dr. Almeroth relies on his professional background and substantial expertise in the area of computer networking to rebut certain opinions of Plaintiffs' putative experts, Dr. Terrence P. McGarty and Ms. Barbara Frederiksen-Cross. Plaintiffs' putative experts intend to offer testimony at trial on the steps Charter could or should have taken in response to Plaintiffs' notices of alleged infringement ("copyright notices") during the Claims Period. In reply, Dr. Almeroth evaluates the

1

technical characteristics of the Charter Abuse Tracking Systems ("CATS") used by Charter during the relevant period, and opines on the technological feasibility and technological reasonableness of the options Plaintiffs' experts contend were available to Charter. *Id.* ¶ 2.[1]  In his report, Dr. Almeroth identifies many errors and misstatements made by Dr. McGarty and Ms. Frederiksen-Cross about CATS and other technical aspects of Charter's operations. *Id.* ¶ 2.

Dr. Almeroth's rebuttal opinions are both relevant and reliable under Federal Rules of Evidence 401, 402 and 702, and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993).  His technical opinions bear on "the ultimate question of reasonableness" of Charter's response to copyright notices and are therefore relevant. Almeroth Rep. ¶ 2.  Because he testifies only as to the technical feasibility and technical reasonableness of certain actions proposed by Plaintiffs, and does not opine on Charter's business judgment or any ultimate questions of reasonableness, his opinions are well within the scope of his technical expertise and fully within the proper confines of rebuttal expert testimony.  Plaintiffs may not like the opinions that Dr. Almeroth intends to offer, but he is highly qualified to offer them, and there is no reasonable dispute that Plaintiffs have put this testimony at issue due to the breadth of the opinions offered by Dr. McGarty and Ms. Frederiksen-Cross.  Thus, Plaintiffs' Motion to Exclude or Limit Certain Expert Testimony and Opinions By Dr. Kevin Almeroth should be denied.

---

[1]  Plaintiffs do not seek to exclude any of Dr. Almeroth's opinions relating to computer networking or the operation of Charter's ISP network.

2

# ARGUMENT

## I. DR ALMEROTH'S OPINIONS ON TECHNICAL FEASIBILITY ARE PROPER

### A. Dr. Almeroth Does Not Opine On Charter's Business Decisions

Plaintiffs' first criticism of Dr. Almeroth is that he is offering an opinion on the overall "reasonableness of Charter's business decisions," which usurps the fact-finding role of the jury. Dkt. 557 ("Mot.") 4. This criticism rests on a fundamental mischaracterization of Dr. Almeroth's testimony. Dr. Almeroth is not offering any opinions on Charter's business decisions or judgment, but instead will use his specialized expertise to help the jury understand why Charter's task of responding to copyright notices was not the technically simple matter that Plaintiffs make it out to be. This testimony is necessary to rebut the opinions of Dr. McGarty and Ms. Frederiksen-Cross.

In his report, Dr. Almeroth uses his technical expertise to rebut Dr. McGarty's opinion that



Dkt. 557-3 ("McGarty Rep.") ¶¶ 34-37. In rebutting this opinion, Dr. Almeroth notes that Dr. McGarty does not identify any "specific, reasonable technical means for verifying infringement" and                               . Almeroth Rep. ¶¶ 137-138. For example, Dr. Almeroth explains that

 *Id.* ¶ 138.

In a supplemental opening report, Dr. McGarty offers the additional opinion that Charter could have used DPI to monitor a subset of subscribers who received a high number of copyright

3

notices. Dkt. 554-3 ("McGarty Supplement") ¶ 7. In his supplemental rebuttal report, Dr. Almeroth ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████. Dkt. 557-7 ("Almeroth Supplement") ¶ 10.

Dr. Almeroth also provides opinions necessary to rebut Ms. Frederiksen-Cross' opinions. Ms. Frederiksen-Cross erroneously claims that ███████████████

███████████████████████████████████████████████████████

███████ Dkt. 557-4 ("Fredericksen-Cross Rep.") ¶ 14. Dr. Almeroth's technical expertise is necessary to put this testimony in proper context for the jury, so that the jury can understand why Ms. Frederiksen-Cross' opinions are flawed and incorrect. Almeroth Rep. ¶¶ 114-121. In particular, Dr. Almeroth has ███████████████████████████████

███████████████████████████████████████████████. *Id.* ¶ 116. It is

███████████████████████████████████████████████████████

███████████████ *Id.* He also explains t███████████████████████

███████████ *Id.* ¶ 121.[2]

---

[2] For example, Dr. Almeroth states that "█████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████████████████████████"
Almeroth Rep. ¶ 121. He notes that ███████████████████████████
█████████████████████████████████████ *Id.*

4

To be sure, the issues outlined above are of sufficient technical complexity such that Plaintiffs have retained not just one, but two, technical consultants to testify at trial. In light of this, Plaintiffs' mischaracterization of Dr. Almeroth's rebuttal opinions as non-technical opinions about "business decisions" does not withstand scrutiny. Mot. 4. Dr. Almeroth intends to provide only technical background and opinions that will aid the jury in evaluating the opinions offered by Plaintiffs' own technical consultants. Almeroth Rep. ¶ 1. It is Plaintiffs who have decided that technical consultants are necessary to evaluate the reasonableness of the decisions made by Charter in responding to copyright notices. If the Court deems Dr. McGarty and Ms. Frederiksen-Cross' opinions admissible, then Dr. Almeroth's rebuttal opinions are also necessary to aid the jury in understanding the technical reasons why the copyright notices did not give rise to knowledge of verified infringement on Charter's network, and the technical reasons why the monitoring and network management proposals made by Plaintiffs' witnesses are not within the realm of technical feasibility.

Plaintiffs' reliance on the decision limiting Dr. Almeroth's opinion in the *Sony v. Cox* case ("*Cox*") is misplaced. *See* Mot. 6. In *Cox,* the opinions that were excluded went well beyond the opinions Dr. Almeroth offers here. *Sony Music Ent. v. Cox Commc'ns, Inc.*, 2019 WL 9088257, at *1 (E.D. Va. Nov. 19, 2019). Specifically, in *Cox*, Dr. Almeroth ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

5

███████████████████████████████████████████████." Ex. A[3] (Almeroth *Cox* Rep.) ¶¶ 2, 127-138. ████████████████████████████████████████████████████████████████

████████████ ("CAS"). *Id.* ¶¶ 153-158. Dr. Almeroth does not offer similar opinions in this case, and the *Cox* decision is thus inapplicable here.

### B. Dr. Almeroth Does Not Merely Vouch For Charter's Evidence

In providing his opinions about the technical feasibility of the various courses of action suggested by Dr. McGarty and Ms. Frederiksen-Cross, Dr. Almeroth necessarily relies on facts about Charter's network structure and capabilities and Charter's investigations into the technical practicalities of those courses of action. Dr. Almeroth learned these facts through a combination of reviewing the deposition testimony in this case (including the deposition transcripts of five Charter employees), and by conducting a separate interview with Mary Haynes, a Group Vice President of Network Security Operations at Charter. Almeroth Rep. Ex. 2. Dr. Almeroth properly discloses all the facts—whether learned through Charter's deposition testimony or his interview with Ms. Haynes—on which he bases his opinions. *See, e.g.*, Almeroth Rep. ¶ 97 n.13 (disclosing reliance on both the interview and deposition testimony). This is exactly what is required of Dr. Almeroth under Rule 26. Fed. R. Civ. P. 26(a)(2)(B)(ii). *See DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1148 (N.D. 15 Cal. 2003) ("[W]hen the parties' experts rely on conflicting sets of facts, an expert may testify on his party's version of the disputed facts."). Had Dr. Almeroth failed to explain the facts on which he bases his opinions about Charter's network and technical capabilities, he would surely be facing a motion to exclude for his failure to do so.

---

[3] Exhibits cited herein as "Ex." are to the declaration of Justine Young.

6

Although Plaintiffs accuse Dr. Almeroth of attempting to "vouch" for Charter's evidence, Mot. 7, and cite *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018) as an example of inadmissible "vouching of evidence," Mot. 8, the testimony excluded in *Arista* bears no relation to Dr. Almeroth's proffered testimony here. The excluded testimony in *Arista* consisted of a "summar[y]" of the expert's "view of what the [prior] lawsuit between Cisco and Huawei was about and how the lawsuit concluded" and a summary of "written discovery in this case." *Arista*, 2018 WL 8949299, at *3. Dr. Almeroth offers no such summary here, but instead has closely adhered to the requirements of Rule 26 by reciting the foundational facts that directly inform his opinions. That is not "vouching." *See United States v. Chapman*, 59 F. Supp. 3d 1194 (D.N.M. 2014), *aff'd*, 839 F.3d 1232 (10th Cir. 2016) (explaining "an expert's testimony results in impermissible vouching if the expert testifies to the credibility of a factual witness"). Plaintiffs' reliance on *Arista* is therefore unfounded.

## II. DR. ALMEROTH'S OPINIONS ON EFFECTIVENESS ARE PROPER

Plaintiffs next criticize Dr. Almeroth for offering opinions on "effectiveness" and "liability." Mot. 9-10. But, as with the other arguments in Plaintiffs' Motion, this criticism is premised on a fundamental mischaracterization of Dr. Almeroth's opinions and overlooks the fact that he is a rebuttal expert, and therefore necessarily has to summarize the opinions offered by Dr. McGarty and Ms. Frederiksen-Cross so that he can respond to them.

For example, Dr. Almeroth notes that Dr. McGarty and Ms. Frederiksen-Cross discuss the technical courses of action that they claim Charter could or should have implemented. Almeroth Rep. ¶ 33. He then observes that ▮

7

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* This merely summarizes the scope of the opinions that Dr. Almeroth is rebutting, and Plaintiffs do not contest its accuracy. As Plaintiffs themselves acknowledge, Dr. Almeroth offers no independent opinion on either "steps that could be taken to more effectively curb copyright infringements" or "what an ISP could do to avoid [] secondary liability for copyright infringement claims." Mot. 9. Because Dr. Almeroth offers no such opinions, there is nothing to exclude.

Further, to the extent that Dr. Almeroth opines on "effectiveness," it is in the context of discussing the technical effectiveness of the methods espoused by Dr. McGarty and Ms. Frederiksen-Cross, and not a legal opinion about liability. He comments on the effectiveness of the various methods that Dr. McGarty and Ms. Frederiksen-Cross claim Charter could or should have pursued, and his opinions are tailored toward commenting on the effectiveness of the tools at accomplishing specific goals, such as identifying or verifying copyright infringement. For example, Dr. Almeroth notes that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬k. Almeroth Rep. ¶ 131. Dr. Almeroth also opines on ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* ¶ 138. He explains that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬ *Id.* Such testimony on the technical effectiveness of the hypothetical solutions

presented by Plaintiffs' consultants is relevant rebuttal, will be helpful to the fact finder, and therefore should be admitted.

## III. DR. ALMEROTH'S COMMENTS ON NET NEUTRALITY ARE RELEVANT AND ADMISSIBLE

Plaintiffs next challenge whether Dr. Almeroth is qualified to offer opinions on the basic principles of net neutrality and Internet openness. Mot. 10-12.[4] But as an academic who has studied the provision of multimedia content via network technology since the 1990s, these topics are fully within Dr. Almeroth's expertise. Indeed, Dr. Almeroth has served as a member of the IETF, an international community of network designers, operators, vendors and researchers responsible for shepherding "the evolution of the Internet architecture and the smooth operation of the Internet," which uniquely qualifies him to comment on these issues. Almeroth Rep. ¶ 22.

Contrary to Plaintiffs' argument, Dr. Almeroth does not opine on what any of the relevant legal or regulatory regimes require or whether any particular Charter actions would violate them. Mot. 11. Instead, Dr. Almeroth discusses the idea known as "net neutrality," which is founded on principles of both Internet access and openness. Almeroth Rep. ¶ 133. These are principles that shaped the Internet long before any particular legal or regulatory regime was put in place. *Id.* Moreover, when Dr. Almeroth quotes from the FCC's Open Internet Order, he does so to simply

---

[4] Plaintiffs quibble that another one of Charter's experts, Dr. Aram Sinnreich, also offers opinions on net neutrality. Mot. 11 n.5. But this a function of the sheer number of putative experts disclosed by Plaintiffs, which total over a dozen, as well as the sweeping breadth of the opinion testimony that those witnesses have disclosed. In any event, given that Dr. Sinnreich and Dr. Almeroth have different areas of specialized expertise, the testimony is not cumulative and the interrelatedness of their opinions is not a basis to exclude Dr. Almeroth's testimony. *See, e.g.*, *Banks v. United States*, 93 Fed. Cl. 41, 51 (2010) ("The mere presence of overlap, reference to another expert's report or a similar conclusion, however, does not render an expert report unnecessarily 'cumulative' pursuant to FRE 403.").

9

to illustrate the "underlying policy considerations" underpinning the architecture of the Internet which led the FCC to adopt that order. *Id.* ¶ 133. Dr. Almeroth's extensive academic and professional background in Internet architecture and his ongoing service with the IETF certainly qualify him as an expert in the policy considerations underlying Internet openness.

As the Tenth Circuit has recognized, a district court need not "exclude all [expert] testimony regarding legal issues." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). An expert may properly "refer to the law" when expressing an opinion within his area of expertise, without that "reference rendering the testimony inadmissible." *Id.*; *see McNeese v. Access Midstream Partners, L.P.*, 2016 WL 9211747, at *3 (W.D. Okla. May 18, 2016) ("[Expert's] opinion is not inadmissible simply because he cites to relevant case law. An expert may refer to the existing law in expressing an opinion without such reference rendering his opinion inadmissible.") In describing the principles of neutrality and openness that were essential to the creation of the Internet, and the recognition of those principles by the FCC and the United Nations, Dr. Almeroth will help the jury understand essential considerations underlying an ISP's management of its network. The testimony gives the jury essential context and is not an opinion on the legal requirements that must be applied by the factfinder in resolving the disputed issues at trial. Simply put, Dr. Almeroth does not seek to "define the legal parameters within which the jury must exercise its fact-finding function." *Specht,* 853 F.2d at 809-10. As such, the testimony he is offering is permissible.

Plaintiffs further object that Dr. Almeroth's testimony consists of "speculat[ion] on how net neutrality or U.N. human rights principles would have impacted Charter's state of mind in considering whether to terminate." Mot. 12. But Plaintiffs do not, and cannot, point to any

10

statement in Dr. Almeroth's report that speculates about Charter's state of mind. Dr. Almeroth merely provides testimony about these essential principles to present to the jury with the "backdrop" against which Charter and other ISPs "would have evaluated the technical feasibility and reasonability of proposed network traffic management technology, including to address copyright infringement." Almeroth Rep. ¶ 136. Dr. Almeroth says nothing about Charter's state of mind, but instead criticizes Plaintiffs' experts for disregarding this context when they suggest specific courses of action that Charter could or should have taken. *Id*. Here again, Dr. Almeroth's expertise will assist the jury in understanding the technical considerations (including basic Internet principles and architecture) that must be considered by any ISP in managing its network. It is necessary for the jury to understand that Plaintiffs' witnesses have ignored those considerations in offering their own opinions. This is proper rebuttal testimony, and Plaintiffs have offered no viable basis to exclude it.

## IV. DR. ALMEROTH'S COMMENTS ON USES OF THE INTERNET ARE RELEVANT AND ADMISSIBLE

Last, Plaintiffs object to a single paragraph of Dr. Almeroth's report, in which he begins a background section with a description of the Internet. Mot. 13-14. After stating that the "Internet is one of the most widely deployed, if not the most widely deployed, computer networks … to exchange data, in the world," Dr. Almeroth summarizes some key uses of the Internet in modern life. Almeroth Rep. ¶ 40. This background material is so fundamental and uncontroversial that it is beyond reasonable dispute. And it is necessary context for the technical opinion Dr. Almeroth offers at the end of that paragraph, which is that: "As the uses and users of the Internet have expanded over time so too has the size, complexity, and necessary security measures necessary to ensure that people are afforded reliable network access." *Id*.

11

Dr. Almeroth's testimony about the size and complexity of the massive networks managed by ISPs such as Charter, supported by the background information he provides about the scope and widely varied uses of those networks, will assist the jury in understanding the technical dilemmas faced by Charter as it crafted its policies and practice related to copyright notices. His testimony on this point is thus both relevant and admissible.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Charter respectfully requests that the Court deny the Motion to Exclude or Limit Certain Expert Opinions By Dr. Kevin Almeroth.

Dated: December 20, 2021

Respectfully submitted,

*/s/ Andrew Schapiro*

| | |
|---|---|
| Charles K. Verhoeven<br>David Eiseman<br>Linda J. Brewer<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600 (telephone)<br>Email: charlesverhoeven@quinnemanuel.com<br>Email: davideiseman@quinnemanuel.com<br>Email: lindabrewer@quinnemanuel.com | Andrew H. Schapiro<br>Nathan Hamstra<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>191 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>(312) 705-7400 (telephone)<br>Email: andrewschapiro@quinnemanuel.com<br>Email: nathanhamstra@quinnemanuel.com |
| Jennifer A. Golinveaux<br>WINSTON & STRAWN LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 94111<br>(415) 591-1506 (telephone)<br>Email: jgolinveaux@winston.com | Todd Anten<br>Jessica Rose<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000 (telephone)<br>Email: toddanten@quinnemanuel.com<br>Email: jessicarose@quinnemanuel.com |
| Michael S. Elkin<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 294-6700 (telephone)<br>Email: melkin@winston.com | Craig D. Joyce<br>Fairfield and Woods, P.C.<br>1801 California Street, Suite 2600<br>Denver, CO 80202 |

12

(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*