# Exhibit XIV

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC. et al.,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

**PLAINTIFFS' OPPOSITION TO CHARTER'S MOTION TO EXCLUDE
THE OPINIONS AND TESTIMONY OF TERRENCE P. MCGARTY**

    This case puts the operations of Charter, one of the one of the largest telecommunications companies in the country, in the crosshairs. Yet the average juror is undoubtedly unfamiliar with the details of how the telecommunications industry operates. To assist the jury in understanding the evidence regarding Charter's operations and putting Charter's actions in context, Plaintiffs have proffered as an expert Dr. Terrence P. McGarty. Dr. McGarty holds a Ph.D. in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology and has spent more than 40 years in the telecommunications industry in a range of management and operations roles. Mot. Ex. A ¶¶ 1-8, ECF No. 554-2 ("McGarty Rept.").

    Charter's motion to exclude Dr. McGarty's opinions misstates both the relevant facts and the law. Charter twists Dr. McGarty's words by taking them out context to argue that Dr. McGarty offers opinions he does not offer or that Dr. McGarty endorses arguments that he rejects. Charter also incorrectly imports requirements into the legal standard to argue

Dr. McGarty lacks qualifications, and wrongly argues that the law does not permit Dr. McGarty's testimony. Accordingly, Charter's motion should be denied.

**I.      Dr. McGarty Is Qualified To Offer Opinions Regarding Deep Packet Inspection, And His Opinions Reliably Characterize The Factual Record.**

Deep packet inspection ("DPI") is a technology that "allows network managers to collect and analyze a variety of statistics" regarding the data packets being transmitted on a network. *Id.* ¶ 36. By "enabl[ing] the examination of information regarding data packets such as sources, destinations, time, and length," DPI "allows an ISP to monitor the traffic on its network associated with peer-to-peer protocols." *Id.* Understanding DPI is important in this case because it bears on Charter's ability to identify peer-to-peer ("P2P") activity on its network, the overwhelming majority of which is infringing.

Dr. McGarty's extensive telecommunications industry experience includes founding and serving as Chief Executive for a decade of Zephyr Telecommunications, Inc., one of the largest IP voice and data networks in Central and Eastern Europe, where Dr. McGarty was responsible for the design, development, deployment, and operation of Zephyr's network. *Id.* ¶ 7. While Dr. McGarty was running Zephyr, Zephyr deployed DPI technology across its network. Decl. of Corey Miller in Supp. of Pls.' Opp. to Charter's Mot. to Exclude the Opinions and Testimony of Terrence P. McGarty ("Miller Decl.") Ex. 1 27:20-29:3.

Based on his telecommunications industry experience and his experience deploying DPI, Dr. McGarty offers several opinions regarding DPI that will assist the jury. First, Dr. McGarty explains, from a network operator's perspective, what DPI is and how it works, what DPI's capabilities are, and how network operators use DPI. McGarty Rept. ¶¶ 35-36; Mot. Ex. B ¶ 6, ECF No. 554-3 ("McGarty Supp. Rept."). Second, Dr. McGarty reviews and discusses how

2

Case 1:19-cv-00874-RBJ-MEH Document 684-1 Filed 12/20/21 Page 3 of 15

Charter actually used DPI during the Claim Period. McGarty Rept. ¶ 37; McGarty Supp. Rept. ¶ 5. Third, Dr. McGarty opines that  In this regard, Dr. McGarty opines that,

McGarty Supp. Rept. ¶ 7.

### A. Dr. McGarty's Experience Implementing Deep Packet Inspection Qualifies Him To Opine On An ISP's Use Of That Technology.

Dr. McGarty easily possesses the necessary "scientific, technical, or other specialized knowledge" to testify about an ISP's use of DPI. He has decades of experience operating and managing telecommunications networks and has actually run a telecommunications company that used DPI. McGarty Rept. ¶¶ 1-8. This experience gives him a sufficient background to provide opinion testimony that will assist the jury regarding an ISP's use of DPI.

Charter's criticisms of Dr. McGarty's credentials fail to undermine his qualifications. Charter truncates Dr. McGarty's statement about his experience to, "in terms of being a broad-based expert on DPI technology, that's not what I do." Mot. 4 (quoting Mot. Ex. C 191:11-12). Dr. McGarty actually said, "***I'm aware of the technical aspects of DPI***, but in terms of being a broad-based expert on DPI technology, that's not what I do." Mot. Ex. C 191:11-12 (emphasis added). Dr. McGarty's testimony indicates merely that he is not opining on DPI in the abstract, but only on how a network operator can use DPI on a telecommunications network.

Charter's complaint that Dr. McGarty has no experience implementing DPI across a network like Charter's ignores Dr. McGarty's actual experience implementing DPI across a large network with "millions and millions of users." Miller Decl. Ex. 1 183:15-17. Charter's only

3

argument for why Dr. McGarty's experience is not applicable to Charter is that his experience involved "'early versions of DPI' deployed on a European network from 2001 to 2004 . . . ." Mot. 5. But Charter cannot explain why any of these factors undermine Dr. McGarty's qualifications. Charter identifies no relevant differences between "early versions of DPI" in use in 2001-04 and the versions of DPI in use during the Claim Period, such that Dr. McGarty's experience is not relevant. As Dr. McGarty explained at his deposition that, while certain aspects of DPI technology improved from 2001-04 to the Claim Period, "fundamentally, it's the same." Mot. Ex. C. 144:12-145:20. Nor does Charter offer any reason why the fact that Dr. McGarty's experience was in Europe, while Charter is America, makes any difference.

Charter is also wrong that Dr. McGarty "made no effort to understand how [DPI] operated on Charter's network." Mot. 5. He extensively explored Charter's documents and deposition testimony regarding Charter's use of DPI. McGarty Rept. ¶¶ 35-39; McGarty Supp. Rept. ¶¶ 5-9. Dr. McGarty's testimony that Charter cites shows only that Dr. McGarty is not opining on the details of ███████████████████████████████████████████████████████████████████████████. Mot. Ex. C. 146:20-24. Further, Charter misunderstands Dr. McGarty's opinion in arguing that Dr. McGarty has "no knowledge regarding whether Charter was actually capable of implementing [DPI] *across its network*." Mot. 4 (emphasis added). Dr. McGarty explained that, ███████████████████████████████████████████████████████████████████████████████████████████████████ McGarty Supp. Rept. ¶ 8 (emphasis added).

Charter criticizes Dr. McGarty's lack of expertise regarding the P2P protocols at issue in this case, but nothing about Dr. McGarty's opinions regarding DPI requires such expertise or

4

turns on the details of how those specific P2P protocols function. Similarly, while Dr. McGarty does not purport to have detailed expertise regarding ███████ ████████████████, he does not need it: ████████████████████████████████████████████████

██████████ as distinct from DPI technologies generally.

**B. Dr. McGarty's Opinion That ████████████████████████████████████ ██████████████ Reliably Characterizes The Factual Record.**

Charter's argument that Dr. McGarty materially misrepresents the record regarding Charter's use of DPI is incorrect. Dr. McGarty accurately describes the record on which he relied—including that ██████████████████████████████████████████. Contrary to Charter's claims, Dr. McGarty's deposition testimony does not contradict his opinions that Charter "had████████████████████████████████████████████████

████████████████████████████████████████" and that "████████████████████████

████████████████████████████████████████████████████████████████████

██████ McGarty Supp. Rept. ¶¶ 4, 8. Dr. McGarty did not "admit[] he could not testify whether any specific DPI solution would actually work on Charter's network;" Mot. 6; Charter again omits a critical part of Dr. McGarty's testimony. As his full answer shows, Dr. McGarty made clear only that he is not opining on the details of Charter's technical implementation of DPI technology within Charter's specific network architecture:

> Q. Sure. Do you have an understanding of what would have been required of an ISP during the claims period in this case to implement DPI such that it could obtain information related to the peer-to-peer use of individual subscribers?
>
> A. I have an understanding of how this could be implemented in various architectures. I implemented some of these in my European network early versions of DPI where our interest was in tracking a specific sender. Another interest was in tracking a specific recipient. The question is one of complexity and scale and it does depend, to some degree, on the overall network implementation that Charter

5

may have, okay. So it was not my objective to go and architect a DPI solution for Charter, ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████. How Charter would themselves go and implement such a thing in their network would require a level of detail that I had not gotten into, nor was I asked to do, as part of this opinion.

Mot. Ex. C. 143:12-144:10.

Charter asserts that Dr. McGarty's testimony that ██████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████," Mot. 6, contradicts his opinion. It does not; Dr. McGarty does not opine that Charter had the capability to continually monitor its entire network to identify subscribers using BitTorrent. Instead, he opines that, rather than using DPI to *identify* repeat infringers using BitTorrent, ████████████████████

████████████████████████████████████████████████████████████████████████

McGarty Supp. Rept. ¶¶ 7-8. In this way, Dr. McGarty opines that Charter ███████████

████████████████████████████████████████████████████████████████████████.

████████████████████████████████████████████████████████████████████████

█████████████████████████████ *Id.* (emphasis added). For example, Dr. McGarty explained that Charter ██████████████████████████████████████████████████

█████████████████████████████████████████████████████████████ Miller Decl. Ex. 1 185:4-11. And Charter's documents show that Charter ████████████████████

███████████████████████████████████████████████. McGarty Supp. Rept. ¶ 6.

The rest of Charter's criticisms confuse what Charter *actually* did with what Charter had the *capability* to do. Charter is wrong that Dr. McGarty agreed that "██████████████

████████████████████████████████████████████████████████████████████████

6

███████████████ Mot. 6 (emphasis added). Dr. McGarty agreed Charter did not do so, ███ ██████████████ ████████ █████████. The testimony Charter cites makes this clear:

Q. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

A. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████ █████████████████████████
██████ █████████████████████████████████
████████████████████████████████████████
████████████████████ █████████████████████
████████████████

Mot. Ex. C 167:17-168:20 (emphasis added).

Charter makes much of Dr. McGarty's reliance on ████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████ "███████████████████████████████████████████████████
████████████████████████████████████████████████████████. Mot. 7. ██████
████████████████████████████████████████████, ████████████████
████████████████████████████████████████ Dr. McGarty's opinion is not that Charter actually implemented this capability, but that ████████████████████████
████████████████████ ██████████████ ██████████████████████
████████████████████████████████ Miller Decl. Ex. 2 176:5-14, confirming, rather than contradicting, Dr. McGarty's opinion that ████████████████████████
████████████████████████████████████ McGarty Supp. Rept. 8.

7

II.     **Dr. McGarty's Framework For How Telecommunications Companies Approach Compliance Issues And His Opinion That Charter's Conduct Did Not Satisfy That Framework Are Admissible.**

Based on his decades of experience as a telecommunications executive responsible for legal and regulatory compliance issues, Dr. McGarty offers "an illustrative framework that I have followed in my prior experiences of developing business policies and procedures to comply with legal and regulatory standards."  McGarty Rept. ¶¶ 1-7, 46; Mot. Ex. C 258:15-259:6.  This framework includes such steps as: obtain advice from attorneys; develop written policies and procedures; develop systems to implement those policies; communicate the policies to employees and customers; create systems to monitor policy compliance; impose consequences for compliance failures that will affect behavior; and continually audit compliance performance.  McGarty Rept. ¶ 46.  Dr. McGarty then opines that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *Id.* ¶ 47.  Notably, Dr. McGarty does *not* opine that the law requires complying with his framework.

A.      **Dr. McGarty's Experience Qualifies Him To Opine On A Framework For How Telecommunications Companies Approach Compliance Issues.**

Charter's argument that Dr. McGarty is not qualified to offer this testimony misses the mark.  Charter objects that Dr. McGarty lacks specialized experience specific to copyright or DMCA compliance, Mot. 8-9, but Tenth Circuit law holds that, "[a]s long as an expert stays within the reasonable confines of his subject area, our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1143 (D. Colo. 2019) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).  Dr. McGarty's long experience with

8

telecommunications compliance renders copyright compliance within the "reasonable confines" of his expertise even if he lacks copyright compliance experience specifically.

Moreover, Charter does not offer any reason why Dr. McGarty's framework should not apply to copyright compliance. Charter never explains, because it cannot, why implementing a copyright compliance program is sufficiently distinct from other forms of compliance such that Dr. McGarty's legal compliance framework is inapplicable. The cases that Charter cites holding an expert unqualified are thus all distinguishable on their facts. In *Milne v. USA Cycling Inc.*, the Tenth Circuit held that a road bike racing expert was not qualified to opine regarding mountain bike racing because "[t]he facts of this case make it clear that the rules and practices that prevail at mountain bike races—even the on-the-road portion of mountain bike races—are different from the rules and practices that prevail at traditional road races." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009); *see also Masters v. Safeco Ins. Co. of America*, 2021 WL 4317112, at *16 (D. Colo. Sept. 23, 2021) (holding that details of plaintiffs' spinal injury required specialized knowledge outside anesthesiologist's expertise); *Brown v. Nat'l R.R. Passenger Corp.*, 2020 WL 8277569, at *2 (D. Colo. Nov. 12, 2020) (holding that there is "no factual commonality" between the facts at issue and the expert's experience). Unlike those cases, there is nothing distinct about copyright from a compliance perspective that renders Dr. McGarty's general compliance expertise (which Charter does not dispute) inapplicable.

### B. Dr. McGarty Reliably Bases His Compliance Framework On His Professional Experience.

Charter's argument that Dr. McGarty's opinion lacks a reliable basis misconstrues the relevant standard. Charter argues that Dr. McGarty "provides no academic support" and "provides no evidence that his 'framework' has been tested, has been subjected to peer review or

9

publication, or has been generally accepted." Mot. 9.  But an expert need not rely on academic support or peer review because testimony about industry practice based on personal experience is "generally deemed reliable so long as it is 'based on actual knowledge, and not mere subjective belief or unsupported speculation.'"  *Panel Specialists, Inc. v. Tenawa Haven Processing, LLC*, 2019 WL 3716451, at *2 (D. Kan. Aug. 7, 2019) (permitting expert to testify to industry standards based on experience) (quoting *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1341-42 (10th Cir. 2017).

Dr. McGarty's opinion is based on his actual knowledge from decades as a telecommunications executive responsible for compliance, which he then applies to the facts of Charter's conduct, and therefore satisfies that standard.  Where relevant, courts routinely permit expert testimony in these circumstances.  *Troudt*, 369 F. Supp. 3d at 1142-43 (permitting expert to testify regarding the "best practices" an ERISA plan administrator would follow based on the expert's "professional experience"); *cf. Denton v. Nationstar Mortg. LLC*, 2020 WL 3261008, at *2 (N.D. Okla. May 1, 2020) ("Generally, courts permit expert testimony regarding the customs, standards, and practices in a particular industry or profession.") (citing cases).

**C.  In Opining That ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Dr. McGarty Neither Offers An Opinion On The Reasonableness Of Charter's Actions Nor Opines On The Ultimate Legal Issue.**

Dr. McGarty's conclusion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ is admissible because it will assist the jury in evaluating and putting into context Charter's actions.  Charter is wrong that Dr. McGarty is opining on the "ultimate legal issue." Mot. 10.  He does not opine that Charter has "materially contribute[d] to another's infringing activities and knows of the infringement," nor that Charter had either "the right and ability to

10

supervise the infringing activity" or a "direct financial interest" in the infringement. *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013). Instead, Dr. McGarty offers an informed perspective on how industry participants approach compliance issues, but does not opine that the law requires adopting his framework, nor that his compliance framework is the *only* way to comply with the law. Such testimony does not offend the rule against an expert testifying to the ultimate legal issue. As a court in this district recently explained:

> An opinion that defendants breached their duties under [the law] leaves no room for the factfinder to do its job but essentially directs judgment in plaintiffs' favor. By contrast, testimony that defendants' actions were not prudent by the standards of the industry and in the more prosaic usage of that term allows room for argument and proof that the duty of prudence under [the law] may be informed by other considerations.

*Troudt*, 369 F. Supp. 3d at 1142–43; *see also Scalia v. Reliance Tr. Co.*, 2021 WL 795270, at *21 (D. Minn. Mar. 2, 2021) (expert opinion that "Defendants' conduct was imprudent . . . based on [expert's] extensive experience" was "not impermissible legal conclusions").

Charter is also wrong that that Dr. McGarty opines "that Charter acted unreasonably or improperly." Mot. 10. In offering his compliance framework, Dr. McGarty does not opine that his framework is the *exclusive* framework an ISP *must* adopt when addressing compliance issues. Nor does he opine that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dr. McGarty's opinion is limited to presenting his framework as, based on his experience, one viable approach to addressing compliance issues, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dr. McGarty's opinion leaves space for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. His  opinion therefore does not improperly invade the province of the jury, and Charter's objections go to the weight, not the admissibility, of Dr. McGarty's opinions.

11

### III. Dr. McGarty's Opinion That ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Reliably Characterizes The Record.

Dr. McGarty shows that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ McGarty Rept. ¶¶ 48-51. For example, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* ¶ 49. Further, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* ¶ 50. Dr. McGarty concludes from this evidence that "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." *Id.* ¶ 51.

Charter's argument that Dr. McGarty's opinion lacks a reliable factual basis mischaracterizes the record. Charter claims that "Dr. McGarty defines 'meaningful consequence' as termination and termination alone," but Dr. McGarty clarified at his deposition that "[s]uspension is a meaningful response . . . ." and that, "[i]n my opinion, [suspension is] a meaningful consequence. It stops the user's ability to continue to use the service for a period of time. Miller Decl. Ex. 1 309:8-10, 310:17-19. Charter also claims that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Mot. 11 n.3

12

(███████████████████████████████████████████████████

███████████████).  As a "consequence" is "a result that follows as an effect of something that came before," CONSEQUENCE, BLACK'S LAW DICTIONARY (11th ed. 2019), Dr. McGarty's opinion ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████.

### IV. Dr. McGarty's Factual Analysis Contextualizes And Supports His Opinions And Will Assist The Jury To Understand Complex Factual Issues.

Charter's argument that Dr. McGarty's opinions consist of improper factual narrative misstates both the facts and the law.  Dr. McGarty's discussion and analysis of the facts provide important support and context for his opinions.  For example, Dr. McGarty's review of ██████ ███████████████████████████████████ █ ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████.  *Id.* ¶¶ 46-51.  █████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████  This distinguishes Dr. McGarty's opinions from the cases Charter cites, where the expert's factual narrative was not connected to any actual expert opinion.  *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)

13

(excluding testimony where the expert admitted that "the purpose of this testimony is simply to 'provid[e] an historical commentary of what happened'"); *In re Trasylol Prod. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346-47 (S.D. Fla. 2010) (excluding factual summary where the expert "does not analyze the facts" and "no connection is made" between the facts and the opinion).

In arguing that Dr. McGarty's opinions consist of undisputed factual assertions, Charter fundamentally mischaracterizes Dr. McGarty's opinions.[1] For example, Dr. McGarty opines not just that "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." McGarty Rept. ¶ 21 (emphasis added). These statements are self-evidently not the same, and Charter cannot rewrite Dr. McGarty's opinions so that Charter likes them better. Charter's other characterizations of Dr. McGarty's opinions are equally misleading.

Charter also misstates the law. The standard under Fed. R. Evid. 702(a) is whether the expert's opinion "will help the trier of fact to understand the evidence or to determine a fact in issue." As such, courts permit an expert witness to present facts where "the average person is undoubtedly largely unfamiliar with the particulars" of the facts at issue because "[e]xpert testimony therefore is not self-evidently unhelpful to an understanding of those matters."

---

[1] Even if Charter's characterizations were correct, Charter's claim that these facts are undisputed is incorrect. Charter did not admit these facts in its Answer, *see* First Amended Answer, ECF No. 165, the Court has not found these facts to be established, and Charter has never offered to stipulate to them. Accordingly, Plaintiffs still have the burden to prove them at trial.

14

*Troudt*, 369 F. Supp. 3d at 1144; *see also Wells v. Allergan, Inc.*, 2013 WL 7208221, at *2 (W.D. Okla. Feb. 4, 2013) ("To the extent the facts relied upon by [the expert] in forming his opinions are relevant and not cumulative, [the expert] may include them in his testimony."). That is clearly the case here: the average person is undoubtedly unfamiliar with the details of DPI technology or the structures of telecommunications compliance programs, and Dr. McGarty's analysis will help the jury understand and interpret these complex factual issues. As *Troudt* observed, "[t]o the extent defendants believe [the expert's] narrative is based on an incomplete and skewed interpretation of the evidence, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' are the appropriate means for pointing out such flaws." *Troudt*, 369 F. Supp. 3d at 1144 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

## CONCLUSION

For the reasons explained above, the Court should deny Charter's Motion in its entirety.

| | |
|---|---|
| Dated: December 20, 2021  December 20, 2021 | */s/ Matthew J. Oppenheim* |
| | Matthew J. Oppenheim |
| Jonathan M. Sperling | Jeffrey M. Gould |
| COVINGTON & BURLING LLP | Alexander Kaplan |
| 620 Eighth Avenue | Corey Miller |
| New York, NY 10018-1405 | OPPENHEIM + ZEBRAK, LLP |
| Telephone: (212) 841-1000 | 4530 Wisconsin Ave. NW, 5th Floor |
| jsperling@cov.com | Washington, DC 20016 |
| | Telephone: (202) 621-9027 |
| Neema T. Sahni | matt@oandzlaw.com |
| COVINGTON & BURLING LLP | jeff@oandzlaw.com |
| 1999 Avenue of the Stars, Suite 3500 | alex@oandzlaw.com |
| Los Angeles, CA 90067-4643 | corey@oandzlaw.com |
| Telephone: (424) 332-4800 | |
| nsahni@cov.com | |
| | *Attorneys for Plaintiffs* |