# Exhibit XVII

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

WARNER RECORDS INC., *et al.*,

*Plaintiffs*,

*v.*

CHARTER COMMUNICATIONS, INC.,

*Defendant*.

Case No. 19-cv-00874-RBJ-MEH

**CHARTER'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF DR. SANDEEP CHATTERJEE**

Dr. Sandeep Chatterjee holds a doctorate in computer science from MIT, is the founder of several companies, and has personally developed technology related to computing and web services. Dkt. 558-2 ("Op. Rep.") ¶¶ 13-22. He regularly advises world leaders on issues related to technology and innovation. *Id.* In his Opening and Rebuttal Reports, [REDACTED] *See* Op. Rep.; Dkt. 558-3 ("Reb. Rep.").

Plaintiffs do not question Dr. Chatterjee's technical expertise, nor could they. Instead, Plaintiffs mischaracterize the evidentiary record in an attempt to keep the jury from learning relevant information about one of the core issues in the case: [REDACTED] But, as demonstrated below, Dr. Chatterjee's opinions are unquestionably reliable and relevant under Federal Rules of Evidence ("FRE") 401, 402, and 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and therefore there is no basis to exclude them. Plaintiffs' motion should be denied.

**ARGUMENT**

**I. DR. CHATTERJEE'S OPINIONS REGARDING "FAKE" FILES AND "POLLUTION" SHOULD NOT BE EXCLUDED**

As Dr. Chatterjee notes in his Opening Report, there has long been a proliferation of decoy or "fake files" on peer-to-peer ("P2P") networks. Dr. Chatterjee's opinions regarding these "fake files" are fully within his technical expertise and are relevant given that Plaintiffs' direct infringement claims are based on the allegation that Charter subscribers used P2P networks to distribute Plaintiffs' copyrighted works. *See, e.g.*, Op. Rep. ¶¶ 71-104. As Dr. Chatterjee explains, one type of "fake file" is a file with identifying metadata that mimics metadata for popular music files in order to encourage sharing, but the file does not actually contain the referenced music. Rather, the file is corrupt or unplayable or consists of malware. *Id.*



Op. Rep. ¶ 334.

Op. Rep. ¶¶ 329-30.

Case 1:19-cv-00874-RBJ-MEH Document 667 Filed 12/08/21 USDC Colorado Page 3 of 15



Op. Rep. ¶ 360.[1] Op. Rep. ¶ 104; *see also* Dkt. 558-4 ("Chatterjee Tr.") 176:21-177:16. Moreover, as discussed in Charter's pending spoliation motion, Dkt. 593 ("Spoliation Mot.") 6-8. Reb. Rep. ¶ 35. *Id.* ¶ 36.

Dkt. 558 ("Mot.") 4. This argument should be rejected because Dr. Chatterjee's analysis is well supported and within his technical expertise. Indeed, he relies on peer-reviewed articles from scientific publications describing the fake file pollution phenomenon *See, e.g.*, Op. Rep. ¶¶ 72, 75, 83, 85, 88, 92, 94, 99 (citing an array of articles

[1] Plaintiffs' consultant, Barbara Frederiksen-Cross, identified *over 100* such examples. Dkt. 556-3 ("Frederiksen-Cross Reb. Rep.") ¶¶ 128-29.

regarding pollution). Under FRE 703, these articles may be properly relied upon by Dr. Chatterjee.

Documents produced by Plaintiffs also corroborate Dr. Chatterjee's analysis.[2] For example, during the relevant period, [redacted] Ex. A, at -0140591 to -92 [redacted]; Ex. B, at -0140185 (similar).[3] [redacted] Ex. B, at -0140191.[4] [redacted] *See, e.g.*, Op. Rep. ¶ 122 [redacted]

---

[2] Plaintiffs also criticize Dr. Chatterjee's description of the presence of fake content and pollution as "well known" (Mot. 4), but Dr. Chatterjee fully discloses the bases and support for his opinion on fake content and pollution in his reports, and his support includes published articles [redacted]. *See, e.g.*, Op. Rep. ¶¶ 72, 75, 83, 85, 88, 92, 94, 99 (citing articles regarding pollution); *id.* ¶ 334 [redacted]). Thus, the cases Plaintiffs rely upon for this criticism (Mot. 4-5) are inapposite. *See Mooring Capital Fund, LLC v. Phoenix Cent., Inc.*, 2009 WL 4263359, at *5 (W.D. Okla. Feb. 12, 2009), *aff'd*, 388 F. App'x 814 (10th Cir. 2010) (rejecting expert analysis when basis was "simply undisclosed"); *Murphy-Sims v. Owners Ins. Co.*, 2018 WL 8838811, at *6 (D. Colo. Feb. 27, 2018) (rejecting analysis because the expert did not "provide any support for his opinion regarding Plaintiff's disc herniation").

[3] Unless otherwise noted, all exhibits cited as "Ex." herein are to the declaration of Joseph Reed.

[4] [redacted]. Ex. A, at -0140591 [redacted]; Ex. B, at -0140185 [redacted].

[redacted] Op. Rep. ¶ 104. Plaintiffs do not dispute that Dr. Chatterjee has the background to opine on these technical matters.

The Court should also reject Plaintiffs' contention that Dr. Chatterjee's opinions regarding fake files should be excluded because "every study [Dr. Chatterjee] cites was published before the Claim Period or relies exclusively on data that predates it." Mot. 4. This criticism entirely misses the point: Once seeded onto a P2P network, a file persists. [redacted] *See*, *e.g.*, Ex. C ([redacted]) 41:2-42:10 ([redacted]). [redacted] Op. Rep. ¶ 67. [redacted].[5]

Plaintiffs' contention that Dr. Chatterjee [redacted][6] Mot. 6. In fact, [redacted]

---

[5] Moreover, [redacted] as Dr. Chatterjee states in his report, fake files were also circulated by [redacted] as well as by "internet trolls." Op. Rep. ¶¶ 66, 75, 333.

[6] [redacted] Mot. 5-6. [redacted] *Id.* at 6. Disagreement with a qualified expert's opinion may be fodder for cross-examination, but is not a basis to exclude that opinion under *Daubert.*

Op. Rep. ¶¶ 320-28.

*Id.* ¶¶ 312-28, 341-43.

Finally, Plaintiffs' argument that Dr. Chatterjee's opinion should be excluded because he

Mot. 6 (emphasis in original). Here, Plaintiffs again misstate the scope of Dr. Chatterjee's analysis.

*See* Op. Rep. ¶¶ 104, 122, 313, 326, 328, 340, 343, 359; Reb. Rep. ¶¶ 36, 40, 41, 46, 77.

Op. Rep. ¶ 103.

*See* Spoliation Mot. 5-6. At most, Plaintiffs' argument is a cross-examination point.

## II. DR. CHATTERJEE'S OPINION REGARDING THE MARKMONITOR HARD DRIVE WILL NOT MISLEAD THE JURY

[redacted] Mot. 7-9. This argument is baseless.[7] Dr. Chatterjee's opinion that [redacted] *Id.* 8. [redacted] *See* Spoliation Mot. 5-6. [redacted] Op. Rep. ¶¶ 329-40. For this reason, [redacted] Rather, [redacted] As Dr. Chatterjee notes, [redacted] Reb. Rep. ¶ 35. The jury should be permitted to hear Dr. Chatterjee's testimony [redacted]

---

[7] [redacted]



and reliable.

Likewise, as Plaintiffs claim. Mot. 8. Reb. Rep. ¶ 40. And Plaintiffs' own putative expert, Ms. Frederiksen-Cross, opines Dkt. 556-2 ("Frederiksen-Cross Op. Rep.") ¶ 128. Although Plaintiffs assert it is "mathematically impossible" for "files with identical hash values" to have different content,

Unlike Plaintiffs, Dr. Chatterjee offers plausible reasons for this anomaly: Reb. Rep. ¶ 40. This is not "unfounded speculation," as Plaintiffs contend. Mot. 9. To the contrary, the presence of fake files cannot reasonably be disputed. *See* Op. Rep. ¶¶ 72, 75, 83, 85, 88, 92, 94, 99. And *Id.* ¶¶ 312-43. Accordingly, *See, e.g.*, *United States v. Water Supply & Storage Co.*, 2008 WL 1930602, at *6 (D. Colo. May 1, 2008).

**III. DR. CHATTERJEE'S OPINIONS REGARDING MARKMONITOR'S VERIFICATION PROCESS IS SUPPORTED BY THE EVIDENCE**

The Court should also reject Plaintiffs' request to exclude or limit Dr. Chatterjee's opinion

that [redacted]. Mot. 9-11.[8] Here, Plaintiffs take issue with [redacted] *Id.* at 10. But this is a distinction without a difference. [redacted] Dkt. 560-2 ("Snow Op. Rep.") ¶¶ 79-93. Dr. Chatterjee properly relies on Dr. Snow's analysis to illustrate that [redacted] *E.g.*, Op. Rep. ¶ 104.

Indeed, in his Opening Report, Dr. Chatterjee [redacted]

- [redacted] *Id.* ¶ 322.
- [redacted] *Id.* ¶¶ 329-40.
- [redacted] *Id.* ¶¶ 341-43.

Plaintiffs' assertion that Dr. Chatterjee's analysis relies on the [redacted] Mot. 10. [redacted]

---

[8] Plaintiffs do not challenge paragraphs 320-326 of Dr. Chatterjee's Opening Report, which also address verification. Plaintiffs' challenge is limited to paragraphs 327-328.

[redacted]. *See* Op. Rep. ¶ 183 (quoting testimony of V. Ikezoye) (emphasis added).[9] Indeed, Audible Magic's representative testified that [redacted] *Id.* (same). Accordingly, Dr. Chatterjee reasonably relied upon [redacted]. [redacted] *Id.* ¶ 327. This conclusion is further supported by the fact that the [redacted], *id.* ¶ 322, which Plaintiffs' putative expert does not dispute. Moreover, as Dr. Chatterjee states in his Opening Report, the [redacted] *Id.* ¶ 327. Accordingly, Dr. Chatterjee's testimony is well-supported by the evidentiary record.

Finally, Plaintiffs' cited authority is inapposite, as Dr. Chatterjee has not "ignore[d] material facts and relie[d] only on selective evidence" as Plaintiffs suggest.[10] Mot. 11. Rather, it

---

[9] The Audible Magic Logs produced in this case are the same as in the *Sony v. Cox* matter.

[10] Even if Plaintiffs were correct, and they are not, this issue goes to weight, not admissibility. *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("The relative weakness or

is [redacted]. Dr. Chatterjee's opinions regarding MarkMonitor's verification failures should be deemed admissible.

## IV. DR. CHATTERJEE'S OPINION THAT MARKMONITOR AND AUDIBLE MAGIC CANNOT IDENTIFY SPECIFIC RECORDINGS IS RELIABLE

Plaintiffs next seek to exclude Dr. Chatterjee's opinion that [redacted] because it "requires music industry expertise that Dr. Chatterjee lacks and relies on unreliable assumptions." Mot. 11. But Dr. Chatterjee does not need music industry expertise to explain how the [redacted] *See* Op. Rep. ¶¶ 344-55. As Dr. Chatterjee notes in his Opening Report, [redacted] *Id.* ¶ 345. This presented an obvious problem. [redacted] *id.*, [redacted]

Plaintiffs further contend that [redacted] Mot. 12. But he had good reason to make this assumption. Plaintiffs' own Rule 30(b)(6) witness acknowledged that an [redacted] Op. Rep.

---

strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility.").

¶ 348. And Audible Magic testified that Id. Id.

Plaintiffs also assert that Mot. 12. But no one disputes that Frederiksen-Cross Op. Rep. ¶ 14. At most, Plaintiffs' argument goes to the weight of Dr. Chatterjee's opinions rather than their admissibility. *Hardy v. Union P. R.R. Co.*, 2011 WL 5295199, at *3 (D. Colo. Nov. 2, 2011).

Further, Plaintiffs cite no case law to support their assertion that can establish copyright infringement of a specific asserted work. To establish copyright infringement, Plaintiffs must show: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009). Here, it is simply not the case that a

For example, a sound recording created in 1982 cannot infringe a recording created in 1984, as it would be impossible for the 1982 version to copy the 1984 version.

In sum, Dr. Chatterjee's opinions identify two key flaws related to Plaintiffs' direct infringement evidence: In rendering opinions regarding these flaws, Dr. Chatterjee appropriately uses his technical expertise to analyze the Audible Magic Logs and MarkMonitor's records. Dr. Chatterjee should be permitted to present these opinions regarding the import of these flaws so the jury can evaluate whether MarkMonitor's system was as accurate as Plaintiffs claim.

## V. DR. CHATTERJEE DOES NOT MERELY "PARROT" FACT WITNESSES WHEN OPINING ON PLAINTIFFS' USE OF P2P NETWORKS

Finally, Plaintiffs argue that Dr. Chatterjee's opinions regarding Mot. 13. *Id.* at 13-14.

The portions of Dr. Chatterjee's Rebuttal Report that Plaintiffs seeks to strike—paragraphs

15-20 (Mot. 14)—outline background facts directly supporting his opinions. This is proper. *See DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) ("[W]hen the parties' experts rely on conflicting sets of facts, an expert may testify on his party's version of the disputed facts."). Indeed, Dr. Chatterjee's discussion of background evidence relevant to his opinions is not only proper, but required under the Federal Rules. *See, e.g.*, Fed. R. Evid. 702(b) (expert testimony should be "based on sufficient facts and data"); Fed. R. Civ. P. 26(a)(2)(B) (requiring "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them"). Accordingly, Dr. Chatterjee should be permitted to testify regarding the reasons for his opinions and the underlying evidence, particularly where he is rebutting Plaintiffs' experts' assessment of those same facts. *DSU Med.*, 296 F. Supp. 2d at 1148.[11]

For these reasons, Plaintiffs' reliance on *Arista Networks, Inc. v. Cisco Systems, Inc.*, 2018 WL 8949299 (N.D. Cal. June 15, 2018) is misplaced. Mot. 14. In *Arista*, the Court excluded a technical expert from "summariz[ing] his view" of a prior lawsuit due to his lack of expertise "in characterizing lawsuits and their results." 2018 WL 8949299, at *3. In contrast, here, ███████ ███████████████████████████████ ██████████████████████████. Fed. R. Evid. 705. The Court should accordingly deny Plaintiffs' request to exclude paragraphs 15-20 of Dr. Chatterjee's Rebuttal Report.

---

[11] Further, Dr. Chatterjee does not "vouch" for the evidence, as Plaintiffs suggest. Mot. 14. He identifies the salient testimony without attempting to bolster the reliability or credibility of the testifying witnesses. Reb. Rep. ¶¶ 15-20. Indeed, there was no need for him to do so.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Charter respectfully requests that the Court deny the Motion to Exclude or Limit Expert Testimony of Dr. Sandeep Chatterjee.

Dated: December 20, 2021

Respectfully submitted,

*/s/ Andrew H. Schapiro*

Andrew H. Schapiro
Nathan Hamstra
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

*Counsel for Charter Communications, Inc.*