# Exhibit XX

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC, et al.,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

## PLAINTIFFS' OPPOSITION TO CHARTER'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF BARBARA FREDERIKSEN-CROSS

---

Plaintiffs' technical expert, Barbara Frederiksen-Cross, has 47 years of experience in the design, development, and analysis of computer software and computer forensics. She has testified in dozens of cases on the design, operation, results, and source code of technical systems—including the *Sony v. Cox* and *BMG v. Cox* cases, both materially identical cases involving secondary copyright claims by music company plaintiffs against large internet service providers ("ISPs").[1] She is scheduled to testify in a third nearly identical case, *UMG v. Grande*, in January 2022. Her opinions in those cases are materially similar to those offered here, including that the ███████████████████████████████████████████████████████ ███████████████████████████████████████. The courts in two of those cases denied

---

[1] *Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-cv-950, ECF No. 637 (E.D. Va.) (Frederiksen-Cross Direct Examination); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF Nos. 709, 713, 714 (E.D. Va.) (Frederiksen-Cross Direct Examination).

motions to exclude or limit her testimony.[2] In the third, the defendant did not even challenge her qualifications or opinions. The juries in *Sony v. Cox* and *BMG v. Cox* returned favorable plaintiff verdicts, demonstrating that they credited Ms. Frederiksen-Cross's expert opinions.

Faced with this expertise and Ms. Frederiksen-Cross's well-founded opinions in this case ███████████████████████████████████████████████████████ (ii) ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████. Charter's motion to exclude Ms. Frederiksen-Cross's testimony is baseless and should be denied in its entirety.

Her opinions are amply supported by specialized expertise and a reliable analysis of voluminous code, data and documentation; reinforced by background explanations of relevant information; and are tied to the specific facts and record of this case. There can be no serious question that her opinions will assist the jury in considering key and complex disputed issues. This Court should therefore join others that have permitted Ms. Frederiksen-Cross to offer materially similar opinions about the systems that detect infringement on P2P networks and the automated notice processing systems of defendant ISPs.

## BACKGROUND

Ms. Frederiksen-Cross's opinions are based on her forensic examination of, broadly speaking, two computer systems. ████████████████████████████████████████ ████████████████████████████████████████████████████████████,

---

[2] *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2019 WL 3207803, at *4 (W.D. Tex. July 16, 2019) (denying motion to exclude Barbara Frederiksen-Cross); *Sony Music Entm't v. Cox Commc'ns, Inc.*, 2019 WL 9088257, at *2 (E.D. Va. Nov. 19, 2019).

2

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████. Dkt. 556-2 at ¶¶ 65–68 ("Frederiksen-Cross Rept.").

After this exhaustive review, █████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████. *Id.* ¶¶ 14,

343–44. ████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████. *Id.* ¶¶ 14, 345. ████████████████

█████████████████████████████████████████████████████

████████████ Dkt. 558-2 at ¶¶ 105–310 ("Chatterjee Rept.").

Second, Ms. Frederiksen-Cross opines on the operation of the Charter Automated Tracking System ("CATS") used by Charter to process infringement notices. She examined the CATS source code, reviewed Charter's policies regarding copyright infringement, reviewed Charter emails describing how Charter responded to notices of infringement, analyzed ticket data extracts from CATS, analyzed Charter's auto-responses to notices, and considered deposition

3

testimony of Charter witnesses responsible for the operation of CATS and Charter's notice processing. *See* Frederiksen-Cross Rept. ¶¶ 233–252, 257–285, 290, 310, 322, 332.

Ms. Frederiksen-Cross considered and analyzed this information, and based on her expertise and knowledge, opines on actions that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* ¶¶ 14, 346–351.

Contrary to Charter's claim, Ms. Frederiksen-Cross does not opine on "the effectiveness of Charter's notice program." Mot. 4.

## ARGUMENT

### I. Ms. Frederiksen-Cross applies her significant technical expertise to the relevant facts to form opinions based on a reliable methodology.

Ms. Frederiksen-Cross is more than qualified to express the opinions set forth in her Reports, and she reliably applies that expertise to an analysis of relevant facts, data and source code in forming her opinions. Charter concedes that Ms. Frederiksen-Cross is qualified as a forensic software analyst, Mot. 4, and yet baselessly attacks her credentials as lacking and vaguely challenges all her opinions based on an allegedly unreliable methodology. Charter ignores her 47 years of relevant, applied experience in software development, analysis and forensic examination, and ignores that Ms. Frederiksen-Cross's methodology for evaluating the reliability of the MarkMonitor system was fundamentally the same as that of Charter's own

4

technical expert. Charter likewise ignores that three separate courts have found Ms. Frederiksen-Cross qualified to offer virtually identical opinions in virtually identical cases.[3]

***Standard***. "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702, Adv. Cmte. Notes (2000). A qualified expert's opinion is admissible where her opinions are "scientifically valid" and based on "reasoning or methodology [that] properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). Ms. Frederiksen-Cross's opinions easily satisfy both requirements.

***Qualifications***. There can be no question that Ms. Frederiksen-Cross has extensive experience in forensic software analysis, including of P2P networks, or that this expertise grounds the opinions offered here. She began programming in the seventh grade, *Sony v. Cox* ECF No. 637 at 407:6-15, completed her high school education at age 16, and graduated from college with an Associate of Applied Science degree in Computer Programming in 1974 at age 18. Dkt. 556-4 at 1 ("Frederiksen-Cross CV"). She then received additional computer systems training from IBM, Amdahl, Hitachi Data Systems, Verhoef, SAS Institute, Merrill Consultants, Microsoft, and through other education providers. *Id.* For over 25 years, Ms. Frederiksen-Cross

---

[3] Charter's references to rulings from other courts limiting Ms. Frederiksen-Cross's testimony, *see* Mot. n.1, have absolutely no bearing on this case. *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, was a patent case that presented the narrow question of whether Ms. Frederiksen-Cross had experience in "the design or development of high speed switches, bridges, or routers." 395 F. App'x 709, 715 (Fed. Cir. 2010). In *DropzoneMS, LLC v. Cockayne*, the court concluded that her declaration provided *expert* opinions and thus was inadmissible as *lay* opinion under FRE 701. No. 3:16-cv-2348, Dkt. 122 at 10-16 (D. Or. Sep. 12, 2019). And the cited materials and public record for *Bowie v. New Orleans Pub. Belt R.R.*, No. 2:11-cv-755, Dkt. 202 at 1 (E.D. La. Sep. 12, 2012), are completely devoid of any indication of what portions of her report were excluded or why; the cited minute order simply reads "GRANTED in part and DENIED in part."

5

has worked as a consultant in the field of computer forensics. *Id.* at 2. Her experience includes software design, programming, project management, capacity planning, performance tuning, problem diagnosis, and administration of hardware, operating systems, application software, and database management systems. Frederiksen-Cross Rept. ¶ 3.

Ms. Frederiksen-Cross has substantial experience with P2P networking. She has presented on P2P networks at multiple university conventions. Frederiksen-Cross CV at 5 ("Will Peer-to-Peer Disappear?" and "New Technology, New Challenges"). She has analyzed publicly available source code for BitTorrent clients and proprietary file distribution software that utilizes the BitTorrent protocol. Frederiksen-Cross Rept. ¶ 4. She has used BitTorrent personally, conducted a test of BitTorrent's operation and a separate infringement detection system than the one at issue in this case, and analyzed BitTorrent network traffic. *Id.* She also has substantial knowledge of cryptographic hash technology and internet and P2P network operation. *Id.* ¶¶ 13–64. Compared to Charter's technical expert—whose primary P2P experience is "playing around with open source clients for BitTorrent"—Ms. Frederiksen-Cross is quite literally an expert. Ex. 1 at 64:18-23 (Oct. 5, 2021 Dep. of S. Chatterjee, Ph.D.).[4]

**Prior Related Admissions & Credibility Endorsements**. Ms. Frederiksen-Cross has already opined at trial on these exact types of issues twice—and done so credibly. *See supra* n.1. At those trials, she offered opinions on the operation and reliability of two infringement detection systems, including the MarkMonitor system at issue in this litigation, and also opined

---

[4] Exhibits are attached to the Declaration of Jeffrey M. Gould.

on the operation of an ISP's notice processing system. *Id.* Her testimony regarding the operation of P2P networks was endorsed by a court that observed it first-hand:

> BMG's expert Barbara Frederiksen-Cross gave the jury an extensive explanation of BitTorrent. She discussed file sharing and the role of the Internet Service Provider ("ISP"), both issues on which Cox now seeks to have Dr. Almeroth testify. Ms. Frederiksen-Cross testified competently at trial, and the Court is simply not persuaded by Cox's argument that she "lacks the expertise necessary" to explain the relevant technological functions.

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 2018 WL 4440838, at *2 (E.D. Va. June 20, 2018) (internal citations omitted). Both juries credited Ms. Frederiksen-Cross's testimony in rendering favorable verdicts for the music plaintiffs on whose behalf she testified. *Sony v. Cox*, ECF 669; *BMG v. Cox*, ECF 754.

In a third related matter, the court denied the defendant ISP's *Daubert* motion entirely:

> [Grande] contends that Frederiksen-Cross should not be permitted to testify on the operation of BitTorrent clients and Rightscorp's ability to detect files shared through BitTorrent because she has no background or education in BitTorrent software or protocols. None of these arguments have merit.

*UMG v. Grande*, 2019 WL 3207803, at *3 (internal citations and quotations omitted).

**Reliable Methodology.** Ms. Frederiksen-Cross's opinions examine the available evidence and opine on the operation of two computer systems: the MarkMonitor infringement detection system and the CATS infringement notice processing system. Charter's motion seeks to exclude her opinions as lacking "scientific methodology" and "academic support," Mot. 5, without identify any flaw in the methodology that both she and Charter's expert employed.

7



▬▬▬▬▬▬▬▬▬▬▬▬▬ Frederiksen-Cross Rept. at ¶¶ 65–68, 156–184, 199–222.  Ms. Frederiksen-Cross thoroughly examined these materials and applied her technical expertise to form opinions about the MarkMonitor and Audible Magic systems.

Ms. Frederiksen-Cross's opinions with respect to Charter's infringement notice processing are based on her review of CATS source code, documentation, ticket data, and testimony.  Her opinions describe: (i) what the notice processing system did with infringement notices; (ii) what that system could do, but did not do, in response to notices; and (iii) how the notice processing system changed over time.  *Id.* ¶¶ 14, 346–351.  Contrary to Charter's characterization, Ms. Frederiksen-Cross's opinions do not characterize the *intent* behind the changes Charter implemented to its notice processing over time, but simply describe what those changes were and what effect they had on the number of notifications sent to Charter's customers.  *Id.* ¶¶ 14, 346–351.  Such observations are closely tied to her analysis of the CATS source code in understanding and explaining Charter's infringement notice processing practices.

***Sandvine***.  Much of Charter's motion is focused on Ms. Frederiksen-Cross's reference to ▬▬▬▬▬▬▬▬▬▬.  Mot. 5-6.  She opined, in pertinent part, that Charter ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* ¶ 255, 259, 315–316, 321.  This

8

is sometimes known as directing traffic to a "." *Id.* ¶ 255. Ms. Frederiksen-Cross

*Id.* ¶ 255 & n.171–172.

Charter criticizes Ms. Frederiksen-Cross for failing to "attempt to determine whether Charter actually implemented this technology" and not considering deposition testimony provided *after* she served her reports. Mot. 6. It is unclear what Charter believes Ms. Frederiksen-Cross should have done apart from consider the incomplete source code produced to her and the testimony available at the time of her reports. Ex. 2 at 27:12-28:11 (Oct. 8, 2021 Dep. of B. Frederiksen-Cross ("Frederiksen-Cross Tr.")); Frederiksen-Cross Rept. ¶ 255 & n.171–172. Regardless, Charter's criticism that Ms. Frederiksen-Cross's opinions are at odds with Charter's late and self-serving testimony goes to weight, not admissibility. *Elizondo-Sedillo v. City of Albuquerque*, 2015 WL 13534220, at *9 (D.N.M. Jan. 26, 2015) ("[A]rguments about factual errors go to the weight, not the admissibility, of [the expert] testimony.").

**II.   Ms. Frederiksen-Cross's purported factual narratives are essential to her opinions on the operation of CATS.**

In moving to strike portions of Ms. Frederiksen-Cross's opinions as improper factual narrative, Charter misunderstands the contours and purpose of her report. Mot. 7–8. Her discussion of Charter's AUPs, abuse team emails, and the actions Charter took in response to notices from copyright holders is essential to her opinions on the functioning of CATS. As explained above, Ms. Frederiksen-Cross applied her expertise to an examination of the CATS

9

system and source code to determine how Charter processed infringement notices and whether its actions were with consistent with or contrary to Charter's claimed policies and procedures. Frederiksen-Cross Rept. ¶¶ 241, 242, 252, 254, 347; Frederiksen-Cross Tr. at 212:8-213:4. She describes that evidence for the purpose of grounding her opinions.

Ms. Frederiksen-Cross's reliance on these documents is necessary for two reasons. First,  Frederiksen-Cross Tr. at 27:12-28:5; Frederiksen-Cross Rept. ¶¶ 286–292. Second, . *See, e.g.*, Ex. 3 at CHA_00086209–12. But the CATS system did not operate in a vacuum. . Thus, . Ms. Frederiksen-Cross's expertise is necessary for the jury to understand

Charter's technical expert, Sandeep Chatterjee, similarly included an extensive summary of documents describing how MarkMonitor's system was designed to operate. Chatterjee Rept. ¶¶ 107–127. Had Ms. Frederiksen-Cross not included detail of the materials on which she relied

10

to evaluate the design and function of the CATS infringement notice processing system, her opinions would have lacked sufficient foundation.

Because Charter's policies and procedures are relevant to her opinions on CATS, Ms. Frederiksen-Cross should be permitted to present them. *Wells v. Allergan, Inc.*, 2013 WL 7208221, at *2 (W.D. Okla. Feb. 4, 2013) ("To the extent the facts relied upon by [the expert] in forming his opinions are relevant and not cumulative, [the expert] may include them in his testimony."). If Charter contends these facts are "incomplete" or "misleading" (Mot. 7), the correct remedy is cross-examination, not exclusion. *Chavez v. Marten Transp., Ltd.*, 2012 WL 988011, at *3 (D.N.M. Mar. 22, 2012) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination.") (internal citation and quotation marks omitted).

In any event, Plaintiffs are acutely aware of the value of the Court and jury's time and have no intention of eliciting cumulative testimony. Charter's motion should thus also be denied to preserve flexibility for the most efficient presentation of evidence at trial. *See Procter & Gamble Co. v. Haugen*, 2007 WL 9782772, at *5 (D. Utah Feb. 15, 2007) (denying motion to exclude "common knowledge" expert statements and reserving admissibility question for trial).

### III. Ms. Frederiksen-Cross relied on the type of information used by experts like her in forming their opinions.

Ms. Frederiksen-Cross analyzed information from a variety of sources, including interviews with several fact witnesses, before forming her opinions. Charter's contention that her reliance on these interviews renders her opinions inadmissible as a mere "conduit of hearsay"

11

(Mot. 9–11) is incorrect, and Charter fails to articulate any cognizable prejudice that would bar the underlying information at trial from fact witnesses that Charter deposed.

Under Fed. R. Evid. 703, an expert can rely on otherwise inadmissible facts or data "[i]f experts in a particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Charter does not contend that the types of information relied on by Ms. Frederiksen-Cross are not those relied on by forensic software experts, and indeed it cannot, ▌

▌ *See, e.g.*, Chatterjee Rept. ¶¶ 105–109 (Bahun), 232–240, (Paszkowski), 306–307 (Wold), 334 (Jang), 348 (ISRC). But Charter "conflate[s] the separate issues of whether [the relied-upon information] can be admitted into evidence and whether [the expert's] opinion can be admitted." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 246 (3d Cir. 2008). Because Ms. Frederiksen-Cross relies on information of a type that experts like her typically rely on, her opinions are admissible regardless of whether the underlying statements from third parties are admissible. Thus, Charter's motion to exclude Ms. Frederiksen-Cross's opinions where she "includes a conversation with a fact witness in a string cite," Mot. 11 n.7, is unfounded. The statements Charter challenges are Ms. Frederiksen-Cross's opinions, based on interviews *and other evidence*. Charter has identified no basis for excluding these opinions solely because they partially rely on interviews with fact witnesses.

Nor has Charter demonstrated prejudice sufficient to exclude the underlying statements from fact witnesses. Charter deposed *every* witness with whom Ms. Frederiksen-Cross spoke and could have asked questions of those witnesses on the topics they discussed with Ms. Frederiksen-Cross. Moreover, the probative value of statements regarding "central" issues in the case, such as the operation of the MarkMonitor system, far outweighs any prejudice from such

12

statements coming through an expert. In any event, any theoretical prejudice can be ameliorated with a limiting instruction. *See U.S. v. Farley*, 992 F.2d 1122, 1125 (10th Cir. 1993) (affirming admission of hearsay where jury was instructed "the testimony was being received for the limited purpose of laying a foundation for the [expert's] opinion.").

In no way is Ms. Frederiksen-Cross's testimony simply a vehicle for hearsay, as she does not simply "summarize" or "vouch" for the statements of fact witnesses. She conducts significant analysis in connection with these statements. . Dkt. 556-3 at ¶¶ 127–131.

Lastly, as above, Plaintiffs are mindful of the Court and jury's time and have no intention of eliciting cumulative testimony. Charter's motion thus should also be denied to preserve flexibility for the most efficient presentation of evidence at trial.

## IV. Ms. Frederiksen-Cross should be permitted to use terms like "infringer" and "infringement" that reflect the underlying evidence.

Ms. Frederiksen-Cross's use of words like "infringement" and "infringer" accurately reflects the evidence in the record. Charter's motion attempts to sanitize the record of language used by all parties—including Charter's own experts—during the relevant period and in the documents at issue to present a counterfactual world to the jury. Charter's argument that use of such words would be prejudicial is unavailing.

13

Case 1:19-cv-00874-RBJ-MEH Document 684-2 Filed 02/08/22 USDC Colorado Page 14 of 15 of 16

First, Ms. Frederiksen-Cross's use of "infringe" and related terms reflects the evidence in the case. ████████████████████████████████████████ Ex. 4 at MM000204 ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ The notices sent to Charter speak of "infringing activity," provide a "[l]ist of infringing content," and encourage ISPs to assist in these "efforts to reduce copyright infringement on [their] networks." Ex. 5 at 1–2. Charter's own communications to its subscribers during the Claim Period inform the subscriber that a notice indicates a rightsholder "believe[s] a Charter customer has infringed their work(s)," and warn the recipient that "Charter may determine that the customer is a repeat copyright infringer and reserves the right to suspend or terminate the accounts of repeat copyright infringers." Ex. 6 at CHA_00082315. And Charter's internal documents reflect that Charter understood the notices were about infringement. Ex. 7 at CHA_0000022 ("This job aid provides information on Notice of Copyright Infringements sent via postcards."); Ex. 8 at CHA_00000155 ("This reference document provides a list frequently [sic] asked questions from customers regarding received notice(s) of copyright infringement.").

That Ms. Frederiksen-Cross's opening report uses variations on the word "infringement" more than 60 times, as Charter points out (Mot. 12), is consistent with the points above. So, too, is the fact that Charter's technical expert, Dr. Chatterjee, uses these words or variants of them 87 times. Charter's misguided attempts to scrub the record of any reference to "infringement" is unwarranted and unsupported, and merely seeks to present the jury with a false picture of the documents, discussions, and issues as they actually occurred.

Second, ████████████████████████████████████████████

████████████████████████████████████████████ *See, e.g.*, Frederiksen-Cross Rept. ¶ 14; Frederiksen-Cross Tr. at 192:7-10. The jury must decide the question of infringement, and it will be provided an appropriate legal instruction. Indeed, this is precisely what has occurred in prior trials in which Ms. Frederiksen-Cross testified regarding P2P infringement. *BMG Rights Mgt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 314 (4th Cir. 2018) (ruling that the district court did not abuse its discretion by permitting testimony including the word "infringement" because "the court clearly and carefully instructed the jurors that they alone could determine infringement.").

## CONCLUSION

For the reasons explained herein, the Court should deny Charter's Motion in its entirety.

| | |
|---|---|
| Dated: December 20, 2021 | Respectfully submitted, |
| | *Jeffrey M. Gould* |
| Jonathan M. Sperling | Matthew J. Oppenheim |
| COVINGTON & BURLING LLP | Jeffrey M. Gould |
| The New York Times Building | Alexander Kaplan |
| 620 Eighth Avenue | OPPENHEIM + ZEBRAK, LLP |
| New York, NY 10018-1405 | 4530 Wisconsin Ave. NW, 5th Fl. |
| Telephone: (212) 841-1000 | Washington, DC 20016 |
| jsperling@cov.com | Telephone: (202) 621-9027 |
| | matt@oandzlaw.com |
| Neema T. Sahni | jeff@oandzlaw.com |
| COVINGTON & BURLING LLP | alex@oandzlaw.com |
| 1999 Avenue of the Stars, Suite 3500 | |
| Los Angeles, CA 90067-4643 | |
| Telephone: (424) 332-4800 | |
| nsahni@cov.com | *Attorneys for Plaintiffs* |