# Exhibit XXXVII

# PLAINTIFFS' EXHIBIT 11

CONFIDENTIAL

Page 1

1  UNITED STATES DISTRICT COURT
2  FOR THE DISTRICT OF COLORADO
3
4
   WARNER RECORDS INC. (F/K/A        )
5  WARNER BROS. RECORDS, INC.), ET   )
   AL.,                              )
6                                    )
             PLAINTIFFS,             )
7                                    ) CASE NO.
            VS.                      ) 19-cv-00874
8                                    ) RBJ-MEH
   CHARTER COMMUNICATIONS, INC.,     )
9                                    )
             DEFENDANTS.             )
10 _____)
11
12           * * * C O N F I D E N T I A L * * *
13
14              REMOTE PROCEEDINGS OF THE
15           VIDEOTAPED 30(B)(6) DEPOSITION OF
16          UNIVERSAL RECORD COMPANY PLAINTIFFS
17                  ALASDAIR McMULLAN
18                FRIDAY, MAY 14, 2021
19
20
21
22
23
24 JOB NO. 4582718
   REPORTED BY KIMBERLY EDELEN,
25 CSR. NO. 9042, CRR, RPR.
   PAGES 1 - 274

Page 110

1 THE VIDEOGRAPHER: This marks the end of
2 Media No. 2. Going off the record at 11:52 a.m.
3 (Off the record from 11:52 a.m. - 12:04 p.m.)
4 THE VIDEOGRAPHER: This marks the beginning
5 of Media No. 3. Going back on the record at
6 12:04 p.m.
7 BY MR. SCHAPIRO:
8 Q Mr. McMullan, did you talk to anyone during
9 the break, communicate with anyone?
10 A I talk -- I talked to my lawyer.
11 Q That's fine. Just wondering.
12 Talk to anyone else, communicate with
13 anyone else?
14 A Carla was on as well.
15 Q Okay. I hope they said you're doing great
16 and just listen the question. I was listening.
17 You're doing great. Listen to the question. Give
18 Matt time to object.
19 MR. OPPENHEIM: He wouldn't let me get that
20 in.
21 Just to be clear, you're not going to send
22 him a bill for that advice, Andrew, are you?
23 BY MR. SCHAPIRO:
24 Q Mr. McMullan, in your position at UMG, you
25 sometimes review or negotiate agreements of various

Page 111

1 types, correct?
2 A Sure. Yes.
3 Q And I -- I assume it's fair to say that UMG
4 would not knowingly enter into an agreement that
5 contains a misstatement, correct?
6 A What's a misstatement in an agreement? I
7 don't know what that means.
8 Q I assume it's fair to say that UMG would
9 not knowingly enter into an agreement that contains
10 a false statement of fact, not knowingly?
11 MR. OPPENHEIM: Objection. Vague and
12 ambiguous, outside the scope, no foundation.
13 THE WITNESS: I don't -- I don't disagree
14 with what you're saying, but I don't really
15 understand. An agreement is generally I'll do this
16 and you -- and you'll do that, so I'm not sure where
17 a statement of facts even come into play.
18 I guess in the -- you mean like a -- in a
19 recital of an agreement?
20 BY MR. SCHAPIRO:
21 Q Sure.
22 A Yeah, I would -- I would think that whoever
23 at UMG is doing agreements tries to make sure it's
24 all accurate.
25 Q Are you familiar with something called the

Page 112

1 Copyright Alert System?
2 A I'm familiar with what that was, yeah.
3 Q What was it?
4 A Sort of a cooperative program among movie
5 companies, music companies and some ISPs to sort of
6 experiment on an educational program for the ISP's
7 customers.
8 Q And what's the basis for your familiarity,
9 aside from the fact that it's one of the topics that
10 you prepared for?
11 A Because it was something that we, as a
12 company, were doing, participating in.
13 Q And the program began when you were at EMI,
14 correct?
15 A I think that's right.
16 Q And -- and UMG was also a signatory,
17 correct?
18 A I believe --
19 MR. OPPENHEIM: Objection. Vague and
20 ambiguous.
21 BY MR. SCHAPIRO:
22 Q Sorry. I didn't hear the answer.
23 A I believe that's right.
24 Q Do you know the period during which the
25 Copyright Alert System was in effect?

Page 113

1 A I don't remember the -- the years.
2 Q Can you approximate?
3 A I think it was approximately during the
4 claims period here, but I don't -- don't recall.
5 Q The claims period is about 2012 to 2016,
6 right?
7 A Yeah. And I think it was approximately
8 during that time. I mean, did it end in 2015? I'm
9 not -- there's an answer to that. I just can't
10 remember dates that well.
11 Q Sure.
12 So let's introduce the next exhibits.
13 A Is it there?
14 Q I think not, but it will be Exhibit 7 in a
15 moment, which is our Tab 21 for internal purposes.
16 (Deposition Exhibit 7
17 was marked for identification.)
18 THE WITNESS: There it is.
19 BY MR. SCHAPIRO:
20 Q Do you have that in front of you?
21 MR. OPPENHEIM: Hold up a minute, Andrew.
22 I -- for some reason, I do not yet.
23 MR. SCHAPIRO: Sure.
24 MR. OPPENHEIM: Okay. There you go. I've
25 got it.

Page 154

1 BY MR. SCHAPIRO:
2  Q  And so that was a premise, as you correctly
3 stated, that people had at the time.
4  A  Well --
5     MR. OPPENHEIM: Objection. Foundation.
6     THE WITNESS: Someone had it because they
7 wrote a sentence that says it's based on the
8 premise.
9 BY MR. SCHAPIRO:
10  Q  Well, it's not just someone. It says --
11 it's talking about the CAS which is the agreement
12 between the record -- well, the content owners and
13 the ISPs who were identified in that memorandum of
14 understanding.
15  A  Well, the CCI is saying that CAS is based
16 on that premise, right. I mean, it's a very
17 limited -- it gives you a very limited bit of
18 information. Yeah. Great.
19     I mean, CAS was a -- a little limited --
20 right, a limited program where we were experimenting
21 with educating consumers and seeing what that would
22 lead to.
23     So, sure, this is a premise that I guess
24 was being tested in CAS, C-A-S, the CAS, whatever.
25  Q  I'm going to ask you to turn to Page 11 of

Page 155

1 this document.
2  A  Does that start "Independent Review
3 Decisions"?
4  Q  Yes.
5  A  Okay, I got it. I'm having the same
6 problem where it's just not letting me get to the
7 bottom. All right, there. Okay.
8  Q  So you said a moment ago this is a
9 snapshot. And, indeed, the authors at CCI say that
10 there's still a lot left to learn about the program,
11 right?
12  A  Right.
13  Q  That's at the bottom of the second
14 paragraph.
15  A  Yeah.
16  Q  But "Nevertheless, the analyses we have
17 performed thus far support the notion that, when
18 presented with clear, concise information about the
19 problems associated with P2P file sharing of
20 copyrighted content and information about how to
21 find content from licensed sources, many subscribers
22 will begin to change their behavior."
23     Do you think if an ISP believed that at the
24 time, the ISP was unreasonable?
25     MR. OPPENHEIM: Objection. Outside the

Page 156

1 scope.
2     THE WITNESS: Do I think if an ISP believed
3 that if a -- that a subscriber would change its
4 behavior if it was presented with clear, concise
5 informations about the problems associated with P2P
6 file sharing, that they would be unreasonable?
7 BY MR. SCHAPIRO:
8  Q  Yeah.
9  A  I don't know if I'd use the word
10 unreasonable. I think this is a -- this is another
11 premise.
12  Q  So that -- sorry. Go ahead.
13  A  No, I -- but, I mean, do I think that it's
14 unreasonable to believe that if people were duly
15 educated about the problem with P2P file sharing,
16 they will stop -- they will stop doing it? I think
17 that some people will do that, yeah.
18     I mean, some people take -- will take more
19 than just education. Some people won't stop unless
20 something more coercive happens. I mean, there will
21 be -- different people will react in different ways.
22 That's part of what this program was testing.
23  Q  And this program -- I apologize if you
24 answered this already -- ended when?
25  A  I'm feeling 2015-ish.

Page 157

1  Q  All right.
2  A  I mean, I'm -- there's an answer to that,
3 but, again, I just couldn't tell you the date.
4  Q  I still have a ways to go, and I'm
5 comfortable continuing. Just let me know if you --
6 if you're feeling all right.
7  A  The date of this document was what?
8  Q  This document?
9  A  Yeah.
10  Q  You can turn to the very first page of
11 Exhibit 8 [verbatim], and you'll see the date there.
12  A  '14.
13  Q  May 28th, 2014.
14  A  So maybe -- maybe this ended in 2017.
15 There's an answer to when CAS ended. I think it
16 would be 2017.
17     MR. SCHAPIRO: All right. Let's go off the
18 record for a five-minute break. If you want to take
19 a longer break now, or if Matthew --
20     THE WITNESS: Why don't we -- can we
21 take -- can we take like 15, 20 minutes now?
22     MR. SCHAPIRO: Yeah. So if this is lunch,
23 that's fine.
24     THE WITNESS: Yeah, let's do that.
25     MR. SCHAPIRO: Let's say -- it's now

CONFIDENTIAL

Page 270

23  MR. OPPENHEIM: I have no further
24  questions.
25  MR. SCHAPIRO: Nor do I.

Page 271

1  MR. OPPENHEIM: Thank you, Mr. McMullan.
2  Kim, our court reporter, Steven, our
3  videographer, thank you for your time today.
4  And, Andrew, appreciate it as well.
5  THE REPORTER: Thank you.
6  THE VIDEOGRAPHER: Thanks.
7  Mr. McMullan --
8  Sorry, Kim, did you have any other issues
9  that needed to...
10  THE REPORTER: Just, Mr. McMullan,
11  [verbatim] did you want your certified copy
12  expedited?
13  MR. OPPENHEIM: So, Kim, there's a standing
14  order for the plaintiffs in the case. We'll just
15  follow that if that's all right.
16  THE REPORTER: Sure.
17  MR. OPPENHEIM: Great. Thank you.
18  MR. SCHAPIRO: I think we have one for the
19  defendant as well.
20  THE REPORTER: Thank you.
21  MR. OPPENHEIM: We'll reserve our rights.
22  MR. SCHAPIRO: If you need any spelling or
23  anything, I can hang around another few minutes.
24  THE REPORTER: I think I'm good.
25  MR. SCHAPIRO: Great. Schapiro is S-c-h --

Page 272

1  MR. OPPENHEIM: S-c-h-a-p-i-r-o.
2  THE REPORTER: Did you want to go off the
3  record? We're still on.
4  MR. SCHAPIRO: Yeah. Let's go off the
5  record.
6  THE VIDEOGRAPHER: Okay. Thanks. We are
7  off the record at 5:03 p.m., and this concludes
8  today's 30(b)(6) deposition of the Universal Record
9  Company plaintiffs regarding certain topics through
10  Alasdair McMullan. The total number of media used
11  was six and will be retained by Veritext Legal
12  Solutions. Thank you.
13
14  (Whereupon, at 5:03 p.m., the 30(B)(6) DEPOSITION
15  OF UNIVERSAL RECORD COMPANY PLAINTIFFS,
16  ALASDAIR MCMULLAN was concluded.)
17
18  ---oOo---
19
20
21
22
23
24
25

Page 273

1  STATE OF CALIFORNIA     )
2  COUNTY OF LOS ANGELES   ) ss.
3
4  I, Kimberly A. Edelen, C.S.R. No. 9042, in and
5  for the State of California, do hereby certify:
6  That prior to being examined, the witness named
7  in the foregoing deposition was by me duly sworn to
8  testify the truth, the whole truth and nothing but
9  the truth;
10  That said deposition was taken down by me in
11  shorthand at the time and place therein named, and
12  thereafter reduced to typewriting under my
13  direction, and the same is a true, correct and
14  complete transcript of said proceedings;
15  That if the foregoing pertains to the original
16  transcript of a deposition in a Federal Case, before
17  completion of the proceedings, review of the
18  transcript {X} was { } was not requested.
19  I further certify that I am not interested in
20  the event of the action.
21  Witness my hand this 21st day of June,
22  2021.
23
24
KIMBERLY A. EDELEN, C.S.R. NO. 9042
25