# Exhibit XLIII

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC. et al.,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

_____

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY AND OPINIONS OF DR. KEVIN ALMEROTH**
_____

**I.  Dr. Almeroth's opinions regarding "technical feasibility" and "technical reasonableness" should be excluded.**

Charter concedes that Dr. Almeroth's opinions regarding "technical feasibility" and "technical reasonableness" concern the "'ultimate question of reasonableness' of Charter's response to copyright notices." Opp. 2. By labeling these opinions as "technical," Charter aims to have Dr. Almeroth tell the jury that Charter's decision not to implement certain steps was reasonable. The Court should look past Charter's self-serving labels to the substance of his opinions and exclude those concerning reasonableness because "Dr. Almeroth is not qualified to give that opinion" and it "would usurp the jury's factfinding role." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 2019 WL 9088257, at *1 (E.D. Va. Nov. 19, 2019) (excluding Dr. Almeroth's opinion that Cox's response to infringement notices was reasonable).

Charter states categorically that "[REDACTED]

██████████████████████████████████████████████████████████

██████████████████████████████ Gould Decl., Ex. 7 at 100:22-101:8 ("Almeroth Tr.").

To be sure, ██████████████████████████████████████████████████

██████████████████████████████, not a technical one. So too was ████████████

██████████████████████████████████████████████████████████

██████████████████████. That these measures happen to involve technology does not make Dr. Almeroth's opinions purely technical. The jury, not Dr. Almeroth, must decide if Charter's behavior was reasonable, and Charter cannot stack the deck on that question by window-dressing an expert opinion with a "technical" prefix.

Dr. Almeroth's reasonableness opinions are particularly pernicious because he is not qualified to provide them, as the *Sony v. Cox* court correctly held. Mot. 6-7. He has no experience or expertise concerning a commercial ISP's handling of infringement notices.

His opinions also will not assist the jury because he merely echoes facts learned in a private conversation with Charter's lead witness, Mary Haynes. Mot. 7-8. Though experts may rely on facts to undergird their opinions, the expert must add something based on his or her knowledge and experience to those facts. Dr. Almeroth's summary of whispered conversations, with no expert analysis applied, unfairly stamps Charter's preferred facts with expert imprimatur.

**II.     Dr. Almeroth's opinions regarding effectiveness and avoiding liability are improper expert rebuttal that should be excluded.**

Charter does not dispute that expert testimony on the "effectiveness" of Charter's response to notices would "unfairly usurp[] the factfinding role of the jury on issues of fact," *Sony v. Cox*, 2019 WL 9088257, at *1, or that experts may not opine on liability. Mot. 9. And Charter concedes █████████████████████████████████████████████████████

2

████████████████████████████████████████████████

████████████████████████████████ Opp. 8 (quoting Almeroth Tr. 115:17-116:6).

Yet Charter aims to have Dr. Almeroth criticize Plaintiffs' experts for not opining on effectiveness or liability. Charter's claim that Dr. Almeroth should be able to do so to summarize the scope of opinions he is rebutting, Opp. 8, misses the point. Criticizing experts for not providing opinions they cannot and should not provide would mislead the jury to believe that Plaintiffs' experts could and should have provided such opinions. Had Plaintiffs' experts opined on effectiveness or liability, they would surely be facing a motion to exclude for doing so.

Charter claims that Dr. Almeroth should nevertheless be permitted to testify that the steps Plaintiffs' experts proposed would not (i) "effectively target infringing *users*" but merely the primary *account holder*, or (ii) allow Charter to "effectively verify infringement." Opp. 8. While Plaintiffs disagree with these opinions, they are not the subject of this Motion. Rather, the purpose of this Motion is to preclude Dr. Almeroth from criticizing Plaintiffs' experts for not opining that the steps they proposed would be *effective at reducing infringement or avoiding liability*. Because no expert can testify affirmatively on those issues, and Plaintiffs' experts did not, Dr. Almeroth should not be permitted to mislead the jury into thinking they could have.

### III. Dr. Almeroth should be precluded from testifying about the meaning of net neutrality laws and human rights principles.

Charter has proffered Dr. Almeroth as a putative expert on "networking and network security." ECF 557-2 ("Almeroth Rept.") ¶ 2. Dr. Almeroth defined the scope of his expertise as including networking technology, the protocol stack, network monitoring and management, and attacks over networks. Almeroth Tr. 101:21-102:11. He added that his only other relevant expertise was with peer-to-peer networking and exchange of multimedia traffic. *Id.* at 103:5-

3

104:2. Charter's Opposition stretches to characterize Dr. Almeroth as "an expert in policy considerations" underlying internet openness so that he may testify on the meaning and import of FCC regulations and human rights laws. Opp. 10. By Dr. Almeroth's own admission, he is no policy expert, and that alone dooms his opinions on net neutrality and human rights laws.

Further, the proffered testimony runs afoul of the prohibition on experts testifying about the law. Charter attempts to minimize Dr. Almeroth's opinions by characterizing his statements as merely "discussing" "principles" that shaped the Internet, and quoting FCC orders and legal rulings merely to illustrate "underlying policy considerations." Mot. at 9-10. But the Report speaks for itself by quoting, summarizing, and interpreting numerous regulatory orders and legal opinions—including FCC Orders and lower court rulings that were rejected and overruled by higher courts—that Charter apparently wants the jury to consider. Almeroth Rept. ¶¶ 132-137. Dr. Almeroth's opinion teeters on the edge of encouraging jury nullification, as it has the effect, if not intent, of encouraging the jury to rule based on "principles" that decidedly are *not* the law.

Dr. Almeroth's discussion of United Nations' human rights laws is equally problematic. He has no expertise to ground his opinion, which is apparent when he misquotes and misinterprets the UN document he cites. Mot. 10 (citing Almeroth Rept. ¶ 132 n.78). Even if his testimony were accurate, the Court will instruct the jury on the relevant law, and a UN proclamation on human rights principles surely will not be part of that.

As explained in Plaintiffs' opening brief, another court recently excluded Dr. Almeroth's opinion that improperly summarized the law and other lawsuits, and this Court should do so too. Mot. 12; *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018) (excluding Dr. Almeroth's opinions summarizing what a lawsuit "was

4

about and how the lawsuit concluded" because it "is neither the proper subject of expert testimony nor does Dr. Almeroth have expertise in characterizing lawsuits and their results").

### IV. Dr. Almeroth should be precluded from testifying that the internet is "essential to the operation of our economy and our lives."

Dr. Almeroth wants to tell the jury that internet access is too precious for Charter to terminate it, even for repeat infringers (████████████████████████████████████████████████████). He opines that "[t]he implications of suspending or terminating Internet access cannot be overstated" given its importance for "dissemination of information, the availability of education, access to support communities and potentially lifesaving information, and economic opportunities." Almeroth Rept. ¶ 132. But the jury does not need a "networking and network security" expert to know that internet access is important. And nothing about the importance of internet access bears on "technical" feasibility. Whether to terminate a subscriber is a business or legal judgment, not a technical one.

| | |
|---|---|
| Dated: January 19, 2022 | /s/ Jeffrey M. Gould |
| Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br><br>Neema T. Sahni<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>nsahni@cov.com | Matthew J. Oppenheim<br>Jeffrey M. Gould<br>Alexander Kaplan<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>jeff@oandzlaw.com<br>alex@oandzlaw.com<br><br>*Attorneys for Plaintiffs* |

5