# Exhibit XLVII

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC, et al.,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

___

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE OR LIMIT CERTAIN EXPERT OPINIONS AND TESTIMONY BY DR. ARAM SINNREICH**

      Charter's confirmation that Dr. Sinnreich intends to liken the music industry to slavery, and accuse Plaintiffs of illegal price fixing and lying in prior litigations, makes clear that Dr. Sinnreich's opinions must be limited by the Court to avoid irrelevant distractions and undue prejudice. His 20 years of experience criticizing the music industry and advocating for piracy do not qualify him as an expert; nor does the fact that he has published books on those topics. They simply confirm that he has a view. Under *Daubert*, expert testimony must do more than advocate a cause. *See, e.g.*, *Williams v. Michelin N. Am., Inc.*, 381 F. Supp. 2d 1351, 1362–63 (M.D. Fla. 2005) (excluding testimony from "a professional advocate, dressed in scientific garb," whose opinions "lack[ed] sufficient foundation to withstand scrutiny under Rule 702").

      ***First***, Charter fails to explain how Dr. Sinnreich's opinion maligning music industry practices generally has anything to do with this case. The *Lime Group* court agreed in assessing the *same* opinions from Dr. Sinnreich:

> Testimony about relations between recording companies and artists is likely to be excluded. This case concerns Defendants' inducement of copyright infringement of Plaintiffs' works. Any relevance of the nature of the relations between recording

companies and artists is likely to be substantially outweighed by the danger of unfair prejudice to Plaintiffs.

*Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *20 (S.D.N.Y. May 2, 2011).

Dr. Sinnreich in no way connects his personal opinion about the music industry's purported "exploitation of creative labor" at "macro and micro scales" to the relationships between *Plaintiffs* and their artists and songwriters for purposes of this case. He has not reviewed any contracts for artists or works in this case, Oppenheim Decl. (Jan. 19, 2022), Ex. 6 ("Sinnreich Tr.") 220:22–221:11, and he concedes that his "opinion is about the normative practices and relations within the industry, not about the individual relationships between the creative professionals whose works are reflected in the list of alleged infringements and the plaintiffs specifically." Sinnreich Tr. 194:3–8; *see also* ECF No. 609 ("Opp'n") at 4–5 (conceding same). Even as to "normative practices," Dr. Sinnreich has little knowledge of such contracts generally. *See* Sinnreich Tr. 196:4–214:14.[1]

Further, Charter's protestation that Dr. Sinnreich *himself* does not compare the music industry to slavery, and that he is just repeating the accusations of others in his extensive discussion of slavery, is a meaningless distinction. Opp'n at 6; *see also* ECF No. 559-2 ("Sinnreich Rept.") at 18–19. To the extent he disavows that this is *his* opinion, it should be excluded. He "may not simply parrot or recite the opinions and knowledge" of others. *See, e.g.*, *Rodgers v. Beechcraft Corp.*, 2016 WL 7888002, at *8 (N.D. Okla. Oct. 27, 2016) (internal

---

[1] Where courts consider parties' "conduct and attitude," Opp'n at 4, it is "in relation to the infringement," not ancillary contractual arrangements. *Nunes v. Rushton*, 2018 WL 2214593, at *3 (D. Utah May 14, 2018); *see also Harrington v. Aerogelic Ballooning*, 2019 WL 5095683, at *2 n.3 (D. Colo. Aug. 8, 2019) (stating court would only consider plaintiff's "negligence in failing to secure his photos from infringers"); *Barcroft Media v. Coed Media Grp.*, 297 F. Supp. 3d 339, 358–59 (S.D.N.Y. 2017) (noting "lackadaisical approach to enforcing [] copyrights").

2

quotation omitted). Finally, and critically, any testimony about exploitation or slavery presents an obvious risk of unfair prejudice, particularly weighed against its totally non-probative value.

***Second***, Dr. Sinnreich's rhetorical opinion that Plaintiffs have promoted "a false narrative" using the word "piracy" to "extract[] billions" in litigation, Opp'n at 6–8, is an unsupported, inflammatory, subjective view that should be excluded. The effect, if not intent, of this opinion is to argue that every court (and there have been many) that has ruled for the music industry by finding P2P infringement harms copyright holders, got it wrong. Dr. Sinnreich aims to tell the jury that the music industry—including Plaintiffs in this case—*lied to the courts* to achieve those results. Not only is that opinion inadmissibly unsupported and unreliable, it must also be excluded as grossly more prejudicial than probative.

***Third***, Charter claims that because experts commonly rely on literature in forming their opinions, Dr. Sinnreich may opine on the conclusions from two consumer surveys for which *he* was the lead analyst, by referring to reports generated about those surveys. Sinnreich Tr. 133:18–21, 137:12–138:3. Dr. Sinnreich led the surveys, ▮▮▮▮▮▮▮▮▮▮▮▮ and offers opinions based on their conclusions, but ▮▮▮▮▮▮▮▮▮▮▮▮. *Compare* Opp'n at 9, with ECF No. 550 at 2, 7. That is improper, and it distinguishes this case from those where an expert simply cites to research performed by others. ▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs are denied the opportunity to meaningfully cross-examine Dr. Sinnreich and challenge the Jupiter Reports. It is classic sword-shield.

Charter has no response to the outdated surveys' lack of relevance. Surveys done in 2000–2001, more than a decade before the Claims Period, during which period the technology and consumer behavior changed dramatically, cannot inform consumer behavior in 2013–2016.

3

***Fourth***, Charter's attempt to salvage Dr. Sinnreich's right to testify that Plaintiffs engaged in illegal price fixing, by discussing an FTC accusation that was never litigated and was settled without admission, also fails. He lacks the necessary qualifications, for one. *See, e.g.*, *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) (affirming exclusion of statistician's testimony concerning price-fixing conspiracy because it was "outside of his competence"); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *6–8 (D. Md. May 1, 2013) (excluding law professor's testimony on price-fixing cartel as outside his expertise, likely to mislead the jury, and posing risk of unfair prejudice). Charter also fails to show any relevance of a pricing strategy that ended 13 years before the Claims Period. And far from assisting the jury in assessing Charter's 2013–2016 misconduct, the unfair prejudice of discussing unproven criminal allegations substantially outweighs any probative value.

***Fifth***, Charter quibbles that Dr. Sinnreich is not offering a legal opinion that P2P is capable of "substantial noninfringing uses" under the standard set forth in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), Opp'n at 12–13, but ignores that an entire section of his report is titled "Opinion: P2P Is a Neutral Platform with Extensive Non-Infringing Uses." Sinnreich Rept. at 20–24. It is hard to imagine a more clear-cut example of leading a jury to rule based on a standard that simply does not apply (*i.e.*, encouraging jury nullification). Nor will his opinion help the jury understand any issue in the case, where "Charter's awareness of P2P activity on its networks" was not just generalized as to P2P use on its network, as Charter contends, Opp'n at 12, but grounded in millions of notices identifying specific instances of infringement. Neither Charter nor Dr. Sinnreich points to any evidence that Charter knew that there was any non-infringing use of P2P on Charter's network.

4

Charter is also wrong that *Grokster* and *Lime Group* do not undermine Dr. Sinnreich's opinion that P2P is "neutral" with "extensive non-infringing uses," or that he did not opine on this issue there. Opp'n at 13. In *Grokster*, the Supreme Court explained that while "an exact calculation of infringing use, as a basis for a claim of damages, is subject to dispute," there was "evidence of infringement on a gigantic scale." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940–41 (2005); *see also id.* at 948 (Ginsburg, J., concurring) (explaining Grokster "had been for some time, overwhelmingly used to infringe" and discrediting "anecdotal evidence" in declarations including Dr. Sinnreich's). And in *Lime Group*, the court held it was likely to exclude Dr. Sinnreich's testimony concerning "positive views of file sharing." *Lime Grp.*, 2011 WL 1674796, at *20.

***Sixth***, Dr. Sinnreich has no expertise in human rights, the Copyright Alert System ("CAS"), or ISP customs and practices. *See* Sinnreich Rept. at 1–3. He is not qualified to opine on any such issues, especially when his source is a United Nations report that was not ultimately adopted by either the U.N. or the United States.

| | |
|---|---|
| Dated: January 19, 2022 | */s/ Matthew J. Oppenheim* |
| Jonathan M. Sperling<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com | Matthew J. Oppenheim<br>Jeffrey M. Gould<br>Alexander Kaplan<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>jeff@oandzlaw.com<br>alex@oandzlaw.com |
| Neema T. Sahni<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>nsahni@cov.com | *Attorneys for Plaintiffs* |

5