# Exhibit XLIX

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al.*,

*Plaintiffs*,

v.

CHARTER COMMUNICATIONS, INC.,

*Defendant*.

Case No. 19-cv-00874-RBJ-MEH

**CHARTER'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
THE OPINIONS AND TESTIMONY OF ON AMIR**

**I. DR. AMIR CANNOT OPINE ON SURVEYS HE DID NOT REVIEW**

The sole purpose of Dr. Amir's rebuttal testimony is to offer speculative theories about two surveys **Dr. Amir never reviewed**. Plaintiffs cite no authority to support the proposition that this type of speculation is admissible.[1] Nor could they, as district courts routinely exclude such speculative opinions. *See, e.g.*, *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) ("[g]uesses, even if educated, are insufficient"); *Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993) (affirming expert testimony excluded as "just professional speculation"); *Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (similar).

Dr. Amir concedes he has no foundation to comment on how the surveys were actually conducted, just how they "appeared" to be conducted. Dkt. 550-3 ("Amir Rep.") ¶¶ 29-34. But

---

[1] Plaintiffs incorrectly assert that Charter's Motion is premised on the argument that Dr. Amir "did not conduct the survey himself." Opp. 6. But Charter is not arguing that Dr. Amir had to personally conduct the surveys. Charter is arguing that he had to *review* the surveys in order to provide opinions about them, which is an indisputable proposition, even under the authorities Plaintiffs cite in their own brief. *See id.* at 6-7 (citing *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2010 WL 3397358, at *4-6 (N.D. Ill. Aug. 24, 2010) (rebuttal expert permitted to opine on a party's "internal surveys" that "he reviewed") and *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1323 (N.D. Ga. 2008) (rebuttal expert permitted to opine on survey he reviewed)).

1

his guess that the surveys employed a correlation analysis is wrong (as Dr. Sinnreich has explained), an unsurprising error given that Dr. Amir's supposition is based on a sentence in a Jupiter Report that concerns *an entirely different analysis*.[2]  Dr. Amir's flawed speculation provides no basis with which to "disagree" with Dr. Sinnreich.  Further, to permit the jury to hear Dr. Amir guess at what he does not know would inject error and confusion into an already complicated trial.

Recognizing this, Plaintiffs argue that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Opp. 7-9.  ▮▮▮▮▮▮▮▮▮▮▮▮.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3]  Dkt. 613-4 ("Sinnreich Tr.") 136:8-13.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Mot. 5 n.2.  Plaintiffs accepted this, taking no further action.  Again, this is of no import, since Dr. Sinnreich's opinions do not depend on the surveys, but rather pertain to the conclusions in the Jupiter Reports that were made available to Plaintiffs.



## II. DR. AMIR IS NOT QUALIFIED TO OPINE ON CONSUMER BEHAVIOR AND PURCHASING DECISIONS IN THE MUSIC INDUSTRY

Dr. Amir's lack of qualifications is another reason why his opinions should be excluded.

---

[2]  In addition to discussing the causal relationship between use of P2P platforms and music purchasing behavior (which is the subject of Dr. Sinnreich's opinion), *see* Dkt. 550-5 at 2, the 2002 Jupiter Report separately comments on a statistical correlation related to spending behavior, *id.* at 5 (limiting that analysis to specific "data above").  Dr. Amir confuses the two analyses.

[3]  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Sinnreich Tr. 134:15-25.

2

Dr. Amir admits he has no expertise in the music industry and therefore is unqualified to provide opinions relating to consumer purchasing in the music industry. Amir Rep. ¶¶ 15-21, 26-28. To be sure, a survey expert might opine about the "scientific reliability" of a specific survey "without regard to the specific subject matter." Opp. 5. He cannot, however, go beyond the assessment of the survey itself to offer opinions about a field entirely foreign to him.

Dr. Amir is also not qualified to opine that P2P file-sharing was widely considered "illegal" at the time the surveys were conducted. Amir Rep. ¶¶ 15-17. While Plaintiffs argue that Dr. Amir describes this information as "widely-known," Dr. Amir has acknowledged that it is merely a "guess." Dkt. 550-7 ("Amir Tr.") 61:15-19. Absent the requisite qualifications and foundation, Dr. Amir's guesswork should not be permitted. *See Mitchell*, 165 F.3d at 781.

Similarly, Dr. Amir is not qualified to opine as to whether findings from a survey conducted in 2000-2001 can inform "consumer behavior and purchasing decisions" in the music industry in 2013-2016. Amir Rep. ¶¶ 18-21.[4] To offer such a conclusion would require music-industry expertise that Dr. Amir simply does not have. And he cannot remedy the gaps in his knowledge by relying on his review of industry articles, since he has no expertise to begin with that would bear on his review. *Larson v. Kempker*, 405 F.3d 645, 651 (8th Cir. 2005) (affirming exclusion of expert because "a person does not become an expert simply by reviewing an expert's reports or research") (quotations omitted).[5] Nor is it relevant that certain courts have found, under

---

[4] Plaintiffs err in arguing that Dr. Sinnreich "admitted" he did not believe the Jupiter Surveys reflected music consumer views during 2013-2016. Dr. Sinnreich testified that the survey "was applicable … to what consumers were doing in 2013 to [2016]" because "[m]ost research is used for years" after publication. Sinnreich Tr. 150:11-19. Unlike Dr. Amir, Dr. Sinnreich has extensive expertise in the music industry and P2P technology to support this opinion.

[5] Plaintiffs' reliance on *Eclipse Elecs. v. Chubb Corp.* 176 F. Supp. 2d 406 (E.D. Pa. 2001) is

3

completely different circumstances, that survey opinions can be excluded if the survey fails to use a proper "universe"—*i.e.*, the proper population of respondents.[6] At most, this point may be fodder for cross-examination of Dr. Sinnreich, but it does nothing to support the admissibility of Dr. Amir's unsupported and unqualified opinions.

Finally, Dr. Amir is not qualified to opine on whether the Jupiter Reports would have "overestimated" the beneficial impact of P2P file-sharing. Contrary to Plaintiffs' assertion that this is uncontested, Charter has expressly challenged Dr. Amir's lack of qualifications here. Mot. 9 (challenging opinions about whether Jupiter Reports "can be used to understand consumer purchasing in the music industry"); *see also id.* at 7-10.

### III. DR. AMIR'S TESTIMONY SHOULD BE EXCLUDED UNDER FRE 403

Because Dr. Amir is not qualified and has no foundation for his opinions, and seeks to offer testimony about surveys that are not in evidence, Dr. Amir's testimony would be a waste of jury time and judicial resources. Dr. Sinnreich has made clear that his testimony does not rely on the Jupiter surveys, and only tangentially relate to the Jupiter Reports. Dkt. 550-2 (Sinnreich Rep.) 12-13; Sinnreich Tr. 149:19-20 ("I did not cite the survey in my report."). Indeed, Dr. Sinnreich's 25-page opening report refers to the Jupiter Reports in only one paragraph. Dr. Amir's unqualified and speculative theories about the surveys are therefore unnecessary and irrelevant. Plaintiffs' argument that Dr. Amir will help the jury "understand complicated concepts relating to survey

---

unavailing, because the expert in that case *was* qualified in the relevant field. *See id.* at 410, 413 (permitting testimony due to expert's extensive qualifications).

[6] For this reason, Plaintiffs' reliance on *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.* 82 F.3d 1533, 1545 (10th Cir. 1996) and *Citizen Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 2003 WL 24010950, at *5 (W.D. Pa. Apr. 23, 2003) is misplaced—those cases critiqued the population of the respondents that the expert used, not the time period.

4

methodology" misses the point. It is a waste of time for Plaintiffs to call an expert to opine on a single paragraph of Dr. Sinnreich's report, when cross-examination of Dr. Sinnreich would suffice.

Dated: January 19, 2022                                                                 Respectfully submitted,

*/s/ Todd Anten*
Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

Andrew H. Schapiro
Nathan Hamstra
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*

5