# Exhibit L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| WARNER RECORDS INC., *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 1:19-cv-00874-RBJ-MEH |

**CHARTER'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
THE OPINIONS AND TESTIMONY OF HAROLD FURCHTGOTT-ROTH**

**I.  DR. FURCHTGOTT-ROTH IS NOT QUALIFIED TO OPINE ON THE MUSIC INDUSTRY, P2P USAGE, OR THE IMPACT OF P2P ON THE MUSIC INDUSTRY**

Plaintiffs do not dispute that Dr. Furchtgott-Roth has no expertise in the music industry, P2P technology, or the impact of P2P on Plaintiffs, the music industry, or the economy.[1]  Mot. 3-6.  Indeed, Plaintiffs concede that his opinions are based on nothing more than reading articles.  Opp. 6-8.  He does not purport to assess economic theories; rather, he repeats the conclusions of the literature he reviewed to opine that there is a causal relationship between P2P and its impact on the music industry.  Plaintiffs' concessions, alone, are enough to limit his testimony.

While economists sometimes provide general financial assessments of commonplace economic activities in industries in which they do not have direct experience—such as reading a company's P&L statements—that is not what Dr. Furchtgott-Roth does here.  Instead, he seeks to opine on how the music industry operates, P2P usage and trends, and P2P's effects on the music

---

[1]  Contrary to Plaintiffs' assertion, an expert's lack of qualifications do not go solely to "weight."  In *TC Sys. Inc. v. Town of Colonie*, the court found industry-specific expertise unnecessary only because the economist testified generally about "broad economic principles and market forces."  213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002).

1

industry. Such testimony is not the realm of an economist, but an industry specialist. A "witness may not qualify—through reading and preparation—as an expert in an entirely different field or discipline." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304-05 (N.D. Ga. 2008) (quotations omitted).

Plaintiffs ask the Court to overlook Dr. Furchtgott-Roth's lack of expertise by pointing to his knowledge about revenues earned by "copyright industries" *en masse*. Opp. 4-5. But he has admitted he has no experience in the music industry or how it has been impacted by technological developments, and therefore does not have the right type of expertise. *See Nash v. Wal-Mart Stores, Inc.*, 2017 WL 5188339, at *6 (D. Colo. Feb. 15, 2017) (witness with expertise in structural engineering and building design not qualified to opine on ladder design). Without the requisite expertise, Dr. Furchtgott-Roth's testimony is inadmissible.

## II. DR. FURCHTGOTT-ROTH'S OPINIONS ON CHARTER'S REVENUES, PROFITS AND "ECONOMIC INCENTIVES" ARE INADMISSIBLE

***Revenues and Profits.*** Plaintiffs concede the only opinions about Charter's revenues or profits relevant here are those Charter allegedly reaped "in connection with the infringement" to the extent Plaintiffs are able to prove infringement. Opp. 8 (quoting *Harrington v. Aerogelic Ballooning, LLC*, 2019 WL 5095683, at *2 (D. Colo. Aug. 8, 2019)). This requires exclusion of Dr. Furchtgott-Roth's broader opinions about Charter's revenues and profits.

Dr. Furchtgott-Roth never calculates Charter's profits from P2P file-sharing of the works-in-suit. Instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Thale v. Apple Inc.*, 2013 WL 3245170, at *8 (N.D. Cal. June 26, 2013) (plaintiff must offer "non-speculative

2

evidence showing that infringement at least partially caused the profits") (quotations omitted); *Ordonez-Dawes v. Turnkey Props., Inc.*, 2008 WL 828124, at *4 (S.D. Fla. Mar. 27, 2008) ("it is insufficient for a plaintiff to demonstrate the infringer's gross revenues from all streams of revenue").

Although Plaintiffs argue that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Dr. Furchtgott-Roth conceded in deposition that those revenues "don't go into [his] calculation" of revenue and therefore these opinions are irrelevant as well. Dkt. 552-6 (Tr.) 125:18-21. Nor do Plaintiffs contest the irrelevance of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Mot. 11

***Economic Incentives.*** Dr. Furchtgott-Roth's opinions that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is the type of speculative assessment of a party's state of mind that courts do not permit. Plaintiffs argue that his economic incentives analysis "bears on Charter's vicarious liability for infringing activity." Opp. 10.[2] But Dr. Furchtgott-Roth and Plaintiffs already confirmed he will not offer opinions on whether Charter is vicariously liable. *See* Dkt. 552-6 (Tr.) 39:4-14; Opp. 10 (his opinions are not "proffered as probative on whether infringement occurred"). In *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF 691 at 1 (E.D. Va. Nov. 25, 2015), for example, the court precluded a damages expert from opining on economic "incentives." Mot. 12. While the court later clarified that the expert could testify to the extent economic incentives are relevant to

---

[2] This Court's order on Charter's motion to dismiss only addressed the elements necessary to prove vicarious infringement. Dkt. 157. Dr. Furchtgott-Roth assumes liability has already been proven.

3

proving vicarious liability, in this case Plaintiffs concede he will not offer these opinions.[3]

Dr. Furchtgott-Roth's opinions independently should be excluded because (a) he does not explain how hypothetical "incentives" are probative of actual financial benefits, and (b) Plaintiffs do not explain how Charter's "economic incentives" are probative of "deterrence" or "blameworthiness" relating to the acts of infringement alleged. But the Court need not even wade into those issues—because his "incentives" calculations are based all rightsholders' notices and not just Plaintiffs', his opinions do not "fit" the case. Mot. 12-13.

### III. DR. FURCHTGOTT-ROTH CANNOT OPINE ON CHARTER'S ADVERTISING

Dr. Furchtgott-Roth's advertising-related opinions are impermissible because they merely repeat what certain Charter advertisements say—something any juror can see for herself. Here, Plaintiffs do not dispute that opinions about Charter's state of mind are inadmissible, they only argue that he will testify about the state of mind of Charter's subscribers. Not only is this speculation also inadmissible, but Dr. Furchtgott-Roth's report discloses no such opinion. Dkt. 552-2 (5/27 Rep.) ¶ 71 (concluding that Charter's "advertisements indicate that Charter viewed its Internet performance and the ability to rapidly download music as an attractive feature").

### IV. PREJUDICIAL AND IRRELEVANT EXPERT OPINIONS ARE INADMISSIBLE

Finally, Dr. Furchtgott-Roth should not be permitted to say that subscribers committed "piracy," or that "piracy" caused harm to Plaintiffs. Plaintiffs argue these opinions explain how their allegations "represent only a fraction of the infringing activity that Charter knew was taking place," but that would require him to opine that Charter "knew" of other *unproven* acts of

---

[3] Further, *BMG v. Cox* precluded the expert from testifying about "why people do what they do or don't do," which is precisely what Dr. Furchtgott-Roth seeks to testify about here regarding Charter's "incentives." No. 1:14-cv-1611, ECF 704 at 62:25-64:12 (Dec. 1, 2015).

4

infringement—opinions that: (a) he is not offering, (b) are speculative, (c) have no "fit" to the alleged acts, and (d) are prejudicial. Because Dr. Furchtgott-Roth's use of the term "piracy" is unnecessary and prejudicial, he should not be permitted to use that terminology at trial.[4]

Dated: January 19, 2022                                                          Respectfully submitted,

/s/ Todd Anten

Charles K. Verhoeven                          Todd Anten
David Eiseman                                 Jessica Rose
Linda J. Brewer                               QUINN EMANUEL URQUHART &
QUINN EMANUEL URQUHART &                      SULLIVAN, LLP
SULLIVAN, LLP                                 51 Madison Avenue, 22nd Floor
50 California Street, 22nd Floor              New York, NY 10010
San Francisco, CA 94111                       (212) 849-7000 (telephone)
(415) 875-6600 (telephone)                    Email: toddanten@quinnemanuel.com
Email: charlesverhoeven@quinnemanuel.com      Email: jessicarose@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com           Andrew H. Schapiro
                                              Nathan Hamstra
Jennifer A. Golinveaux                        QUINN EMANUEL URQUHART &
WINSTON & STRAWN LLP                          SULLIVAN, LLP
101 California Street, 35th Floor             191 N. Wacker Drive, Suite 2700
San Francisco, CA 94111                       Chicago, IL 60606
(415) 591-1506 (telephone)                    (312) 705-7400 (telephone)
Email: jgolinveaux@winston.com                Email: andrewschapiro@quinnemanuel.com
                                              Email: nathanhamstra@quinnemanuel.com
Michael S. Elkin
WINSTON & STRAWN LLP                          Craig D. Joyce
200 Park Avenue                               Fairfield and Woods, P.C.
New York, NY 10166                            1801 California Street, Suite 2600
(212) 294-6700 (telephone)                    Denver, CO 80202
Email: melkin@winston.com                     (303) 830-2400 (telephone)
                                              Email: cjoyce@fwlaw.com

                                              *Counsel for Charter Communications, Inc.*

---

[4] While courts and press releases may casually refer to "piracy" in other contexts, an expert's repeated use of that term before a jury invites prejudice. *See, e.g.*, *Realtime Data, LLC v. Actian Corp.*, No. 6:15-cv-00463, ECF 551, at 1 (E.D. Tex. May 4, 2017) (excluding any "evidence or argument derogatory of Realtime's business model, such as referring to it as a … 'pirate'").

5