# Exhibit LI

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al*.,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**CHARTER'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
THE OPINIONS AND TESTIMONY OF TERRENCE P. MCGARTY**

### I.  DR. MCGARTY SHOULD NOT BE PERMITTED TO OPINE ON USE OF DEEP PACKET INSPECTION ("DPI") TECHNOLOGY

***Lack of Technical Expertise.***  Plaintiffs argue that Dr. McGarty's "aware[ness] of the technical aspects of DPI" qualifies him to testify broadly regarding Charter's ability to deploy DPI on its network to monitor subscriber activity.  Opp. 3.  But that is not the standard to qualify as an expert.  *See, e.g.*, *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).  Dr. McGarty admits that he is not an expert on DPI generally or the specific DPI solutions discussed in his report, and concedes that his experience with DPI is limited to deploying a totally different type of DPI application than the one he mentions in his report, roughly a decade ago.  Dkt. 544-4 ("McGarty Tr.") 144:12-15, 147:7-13, 191:4-191:12.  And despite his unsupported opinion that Charter could have done "more" than it did with respect to DPI monitoring, Dr. McGarty repeatedly admitted in deposition that he was not asked to examine whether any DPI solution would work on Charter's network, that he did not know enough about Charter's network to render such an opinion, and that he was not aware of any ISP that used the type of DPI described in his report.  *Id.* at 143:12-149:3; 168:7-20; 191:4-12.  Thus, by Dr. McGarty's own admission, he

1

is not qualified to testify about how DPI could have operated or did operate on Charter's network. These admissions are enough to exclude his testimony on DPI. *See, e.g.*, *Ralston*, 275 F.3d at 969 (affirming exclusion of expert opinion because "[expert] herself admits that she is not an expert on intramedullary nailing").

## II. DR. MCGARTY'S OPINIONS ON HIS "ILLUSTRATIVE FRAMEWORK" SHOULD BE EXCLUDED

***Lack of Copyright Expertise.*** Plaintiffs acknowledge that an expert's testimony must fall within the "reasonable confines" of his specialized expertise and concede that Dr. McGarty "lacks copyright compliance experience." Opp. 8-9. Although they argue that Dr. McGarty nevertheless has general "telecommunications" experience (which largely consists of providing ill-defined assistance with start-ups that never served customers), they do not explain how that qualifies him to opine on the steps a large ISP must take to comply with copyright law. Opp. 9. Instead, Plaintiffs try to flip the burden onto Charter, arguing that Charter has not explained why "implementing a copyright compliance program is sufficiently distinct from other forms of compliance." *Id.* Putting aside Plaintiffs' failure to establish that Dr. McGarty has any direct experience with "compliance" in any industry, this is not the correct legal standard. *See, e.g.*, *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) ("The district court would not connect the proverbial dots for [the plaintiff] and found that she had failed to carry her burden to show that [the expert] was qualified to opine.") (quotations omitted); *Masters v. Safeco Ins. Co. of Am.*, 2021 WL 4317112, at *16 (D. Colo. Sept. 23, 2021) (an "expert's qualifications must be both (i) adequate in a general, qualitative sense … and (ii) specific to the matters he proposes to address

Case No. 1:19-cv-00874-RBJ-MEH Document 648-5 Filed 02/02/22 USDC Colorado Page 2 of 3

as an expert.") (quotations omitted). Dr. McGarty has no experience with copyright compliance, and thus is not qualified to offer an "illustrative framework" for such compliance.[1]

***Unreliable Methodology***. Dr. McGarty's opinions regarding an "illustrative framework" for copyright compliance should also be excluded because the opinions are not based on a reliable methodology. Plaintiffs argue that his framework is reliable because it is "based on personal experience." Opp. 10. Experience, however, is "not a methodology." *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1139 (D. Colo. 2019). "Methodology is the process by which the expert *relates* his experience to the facts at hand in order to reach an expert opinion." *Id.; Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134 (D. Colo. 2020) ("the 'methodology,' as it were, of solely relying on experience in an industry is not an acceptable method of opining"). Plaintiffs also misstate the holding of *Troudt*. In *Troudt* the district court *excluded* several opinions offered by the plaintiff's expert because the expert failed to disclose the process by which he applied his experience to his opinions. 369 F. Supp. 3d at 1139-40 ("without any independent knowledge of what the evidence supporting [the expert's] opinions actually consists, the court (and ultimately the factfinder) is left simply to trust [the expert]"). Although the court did allow the expert to opine on certain ERISA matters, that was because the expert had direct knowledge of those specific issues. *Id.* at 1144. Dr. McGarty, in contrast, has no experience with copyright law compliance and provides no explanation for how he designed and applied his illustrative framework other than

---

[1] Plaintiffs admit that Dr. McGarty is not opining that "Charter's failure to adopt and follow his framework was unreasonable," but argue that his opinion is limited to presenting "one viable approach to addressing compliance issues, and showing that Charter did not follow that approach." Opp. 11. But this type of speculation is not relevant, and would not assist the jury in determining any matter in dispute.

3

pointing to his general business experience. Mot. 8-9; Opp. 8-10. "It would be an abuse of the discretion … to allow [the expert] to testify as to those opinions under such conditions." *Troudt*, 369 F. Supp. 3d at 1140.

### III. DR. MCGARTY'S OPINIONS COMPARING CHARTER'S HANDLING OF OTHER ABUSE VIOLATIONS IGNORES THE EVIDENTIARY RECORD

Dr. McGarty admitted in deposition that he failed to consider Charter's interrogatory response stating that . Mot. 11. Dr. McGarty also admitted in deposition that

*Id.*[2] Dr. McGarty's opinion is not only unsupported by the record, but is contrary to it, and his failure to consider the relevant evidentiary record renders his opinion unreliable and subject to exclusion. *Smith v. Ill. Dep't of Trans.*, 936 F. 3d 554, 558-59 (7th Cir. 2019).

### IV. DR. MCGARTY'S IMPROPER NARRATIVE SHOULD BE EXCLUDED

Finally, the Court should exclude Dr. McGarty's narrative testimony. The majority of Dr. McGarty's "opinions" are a misleading factual narrative disguised as expert testimony. This is impermissible. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (expert may not "merely [present] a narrative of the case which a juror is equally capable of constructing"). Dr. McGarty has no personal knowledge of Charter's policies, procedures, or technical capabilities, and no specialized expertise that would inform his review of the evidence.

---

[2] Although Plaintiffs argue that Dr. McGarty's use of the word "consequence" did not imply "punitive intent," this argument is not supportable. Opp. 13. In his report, Dr. McGarty uses the phrase "meaningful consequences" interchangeably with "meaningful penalties." *See* Dkt. 554-2 (McGarty Rep.) Section VIII. And—prior to being redirected by his counsel on this point—he testified that "termination, in my opinion and my experience, is the only significant option." McGarty Tr. 272:15-21.

4

As such, his narrative testimony should be excluded as unnecessary and cumulative of testimony by percipient witnesses. *See ODG-OU, L.L.C. v. Pierce Prop. Mgmt., LLC*, 2016 WL 11447824, at *3 (W.D. Okla. Jan. 19, 2016) (excluding testimony where "[i]t appears that plaintiffs' experts are merely repeating the testimony of plaintiffs' witnesses").

Dated: January 19, 2022

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
Nathan Hamstra
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com

Todd Anten
Jessica Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*