# Exhibit LVI

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC. et al.,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

_____

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF DR. KARL SNOW**
_____

**I.  Dr. Snow's opinion that files with the same hash values are not the same files is not reliable because that result is impossible.**

Dr. Snow opines that Plaintiffs' expert, Kristoffer Buchan's, reliance on Mr. Geluso and the Listeners' verifications, for purposes of identifying Repeat Infringers, was inappropriate. Charter's Response makes basic factual errors that undermine its argument that this opinion is reliable and confirm that the opinion should be excluded.

*First*, Charter claims that Dr. Snow's observation that Mr. Geluso and the Listeners did not verify *all* files is relevant because "Mr. Buchan[] ignores this fact and relies on both the verified and the unverified files." Resp. 7, ECF No. 611. But this is plainly wrong: Mr. Buchan's identification of "Repeat Infringers" relies on verified files *only*. ECF No. 560-5 ¶ 38 and n.59 (Buchan Report) (defining "Repeat Infringers" as based on notices that match to a "Hash associated with . . . ***a file that Mr. Geluso and the Listeners verified . . . .***") (emphasis added).

*Second*, ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ Resp. 9.  While Charter is right that "[t]here has to be some

explanation" for this, *id.*, Charter ignores the reasonable explanation for an impossible one.

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

2



*Third*, Charter's Response does not dispute that, where two files have the same hash values, the two files are the same. *See* Mot. 5-6. Charter cannot explain how files with the same hash values can have different content, which Dr. Snow posits is the "logical conclusion" of his analysis. *See id*. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Charter's technical expert, Dr. Sandeep Chatterjee, tries to point to "'spoofing or some flaw in the MarkMonitor system,'" *see* Resp. 10-11 (quoting ECF 558-3 ¶ 40 (Chatterjee Rebuttal Rept.)), but neither suggested explanation suffices.[2] Spoofing is not relevant here.

---

[1] Charter's claim that, if the Audible Magic database was not always complete, then Plaintiffs must concede that MarkMonitor sent notices to Charter for unverified files, Resp. 10, is wrong. Because the Audible Magic Logs are also not complete, a file could match Audible Magic's reference database at one point in time (when logs were not kept), and then not match that database at a different point in time (when logs were kept). In that case, notices for that file would properly follow a verification, even if Audible Magic's logs do not reflect the verification.

[2] Plaintiffs have moved to exclude Dr. Chatterjee's opinion on this point. *See* ECF No. 558 7–9.

3

Spoofing is "the technique of flooding a network with . . . files masquerading as one thing when in fact they were something totally different." ECF No. 558-2 ¶¶ 71-73 (Chatterjee Rept.).

 *See* ECF No. 558-4 82:20-83:16 (Dr. Chatterjee testifying that a hash is computed based on "the contents of the file, not -- not the file name or other metadata"). And while Dr. Chatterjee emptily speculates that "some flaw in the MarkMonitor system" could have caused the "paradox," he fails to identify any such flaw.

## II.     Charter fails to connect Dr. Snow's duplicative notices to any relevant issue.

Charter fails to address the fundamental problem with Dr. Snow's duplicative notice analysis: it lacks any basis to establish its relevance and how it will assist the jury. Charter never explains *how* the fact that Plaintiffs sent multiple notices for the same file to the same IP address "render[s] the overall volume cited by Plaintiffs quite misleading." Resp. 12. Charter does not dispute that Dr. Snow's baseless speculation, *see* Mot. 10-11, cannot provide that grounding. Resp. 13. Charter cites no facts showing that multiple infringements of the same work by the same subscriber are not infringements, nor any law showing that such infringements are not legally relevant. Charter's argument that "[a] fact finder may understandably feel differently about a subscriber" who received many notices for the same work, *id.*, assumes precisely what Charter needs to show: Charter never explains *why* a fact finder should feel differently.

Charter utterly fails to connect Dr. Snow's analysis of duplicative notices to any relevant

4

behavior by Charter subscribers. Lacking any such connection, Dr. Snow's duplicative notices analysis is no different from an analysis that excludes all notices sent on Tuesdays, or that excludes all notices sent to IP addresses ending in an even number. It is meaningless, and therefore irrelevant and misleading. Without any explanation of why duplicative notices matter, Dr. Snow's analysis will not assist the jury and should be excluded.

### III. Charter concedes that Dr. Snow cannot offer affirmative opinions purporting to interpret and explain the significance of his analysis.

Plaintiffs moved to exclude Dr. Snow's opinions purporting to interpret and explain the significance of his analysis. Mot. 12-14. Charter agrees Dr. Snow should be "limited to a statistical analysis . . . ." Resp. 13. In arguing "there is nothing to exclude," Charter pretends Dr. Snow's report does not say what it says. *See* Mot. 12-14 (quoting Snow Rept.). Because Charter agrees Dr. Snow's opinions must be limited to statistical analysis, the Court should grant Plaintiffs' motion to exclude Dr. Snow's opinions that go beyond that limited analysis.

| Dated: January 19, 2022 | Respectfully submitted, |
|---|---|
| | */s/ Matthew J. Oppenheim* |
| Jonathan M. Sperling | Matthew J. Oppenheim |
| COVINGTON & BURLING LLP | Jeffrey M. Gould |
| The New York Times Building | Alexander Kaplan |
| 620 Eighth Avenue | OPPENHEIM + ZEBRAK, LLP |
| New York, NY 10018-1405 | 4530 Wisconsin Ave. NW, 5th Fl. |
| Telephone: (212) 841-1000 | Washington, DC 20016 |
| jsperling@cov.com | Telephone: (202) 621-9027 |
| | matt@oandzlaw.com |
| Neema T. Sahni | jeff@oandzlaw.com |
| COVINGTON & BURLING LLP | alex@oandzlaw.com |
| 1999 Avenue of the Stars, Ste. 3500 | |
| Los Angeles, CA 90067-4643 | |
| Telephone: (424) 332-4800 | |
| nsahni@cov.com | *Attorneys for Plaintiffs* |

5