# Exhibit LVII

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC., et al.,

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Charter's Response ("Resp." Dkt. 601) does not meaningfully dispute the two foundational issues that Plaintiffs asked the Court to resolve to expedite trial, or the facts establishing both elements of contributory infringement, and the control element of vicarious liability.

**I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON OWNERSHIP AND VALID REGISTRATION.**

Charter does not contest Plaintiffs' ownership of, or the validity of the copyright registrations for 10,522 of the 10,759 works at issue in Plaintiffs' MSJ.[1] *See* Resp. 17. The Court should, accordingly, grant summary judgment on those works under Rule 56(a). As to the remaining 237 works, Charter's effort to create a genuine issue of disputed fact depends entirely on arguments and facts set forth in an improper declaration from counsel (the "Schapiro

---

[1] Capitalized terms not defined herein take the meaning ascribed in Plaintiffs' Motion for Partial Summary Judgment ("Pl. MSJ" Dkt. 555). Citations to Plaintiffs' Memorandum in Opposition to Charter's Motion for Summary Judgment (Dkt. 614) are noted as "Pl. Opp. Br."

1

Declaration").[2]  That declaration should be stricken for the reasons set forth in Plaintiffs' concurrently-filed Motion to Strike ("Mot. to Strike," Dkt. 654, at 8-10).

Among other things, the declaration is a circumvention of this Court's page limits on briefs. Charter has granted itself five extra pages of argument, which incorporate and depend upon 37 pages of charts, to make arguments as to 237 works. Plaintiffs cannot respond without a reciprocal violation of the Court's page limits, but will do so upon the Court's request. A response would demonstrate that the declaration is rife with errors and unsupported assertions. *See Li Zu v. Avalon Health Care, Inc.*, 806 F. App'x 610, 617–18 (10th Cir. 2020) ("conclusory, self-serving assertions, devoid of factual support, do not create a genuine issue of material fact …").

As just one example, Charter argues that the registrations for 16 works "do not list the asserted work (because the work is a track that is not identified as part of the registered album)." Dkt. 601-1 ¶ 12. As with many of the Schapiro Declaration's conclusory assertions, it is impossible to discern what Charter means to argue here. Regardless, an album registration need not list each track for the copyright to extend to all tracks on the album, *see Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 684-85 (9th Cir. 2014), and Charter points to no evidence disputing Plaintiffs' declarations that the tracks are included on those albums.[3]

---

[2] Although Charter purports to challenge 252 works, there are only 237 unique works included on Exhibits H-2, H-3, and H-4 to the Schapiro Declaration (Dkt. 601-1).

[3] While Charter appears to argue to the contrary, Plaintiffs may rely on declaration testimony to establish ownership and chain of title. *See* Fed. R. Civ. P. 56(c); *Sony Music Entm't. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 228 (E.D. Va. 2019). Moreover, Charter "knew or should have known [it was] at least potentially infringing *someone's* copyright—even if they perhaps could not be precisely sure whose." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011). Because there is no bona fide dispute that Plaintiffs own rights to these works, Charter cannot invoke purported technical deficiencies in the chain of title—such as "there is an unexplained leap from one entity to another along the way"—to escape liability. Resp. 18; *cf.*

## II.   CHARTER DOES NOT DISPUTE THAT THE WORKS ON THE MARK-MONITOR HARD DRIVE ARE COPIES OF PLAINTIFFS' WORKS.

Charter does not dispute that each of Plaintiffs' Works is copied in the corresponding file on the MarkMonitor hard drive. Instead, Charter makes two arguments to support the idea that Plaintiffs should have to put on this undisputed evidence at trial.

First, Charter points to its *Daubert* motion as "rais[ing] legitimate questions about the process" Plaintiffs' expert audio engineers used to confirm copying. Resp. 19. But Charter's *Daubert* motion challenges only Prof. Geluso's process, and that prong of Charter's motion should be denied, *see* Dkt. 603, which would dispose entirely of Charter's argument here. Even if that portion of Charter's *Daubert* motion were granted, Charter does *not* dispute the qualifications, methodologies, or conclusions of Plaintiffs' seven "Critical Listening Experts." Instead, Charter complains only about how they may present their conclusions at trial. *See id.* at 2, 5–7, 13–15. Charter thus does not challenge each instance of copying that the Critical Listening Experts confirmed, and summary judgment should be granted on each of those works. Dkt. 555-44 (Burst Ex. B), 555-47 (Cass), 555-50 (Cheriff), 555-53 (Gilchrest), 555-56 (Maltas), 555-59 (Lai-Tremewan), 555-62 (Wineman).

Second, Charter argues that Rule 56 does not permit "standalone motions to obtain rulings on questions of fact." Resp. 19. But Plaintiffs brought no such standalone motion. Instead, as permitted by Rule 56(a), they have moved for partial summary judgment on portions of their claims for infringement, including ownership and that files that Plaintiffs contend Charter's subscribers

---

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003) ("where there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement'").

3

distributed and are infringing do indeed contain copies of Plaintiffs' Works. *See Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1189 (D. Colo. 2016) ("copying of constituent elements of the work that are original" is an element of a claim for copyright infringement). Moreover, as Charter admits, Rule 56(g) expressly permits the Court to "enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g); *see, e.g.*, *Blue v. Hill*, 2020 WL 2441417, at *3–4 (E.D.N.C. May 12, 2020) (granting partial summary judgment on "material fact").[4]

Whereas Plaintiffs seek a streamlined trial limited to genuine issues of fact, Charter seeks to force Plaintiffs to spend hours presenting the jury with evidence for thousands of files to establish uncontroverted facts: precisely what Rule 56(g) is designed to avoid. *See SEC v. Retail Pro, Inc.*, 2011 WL 589828, at *3 (S.D. Cal. Feb. 10, 2011) (explaining that Rule 56(g) is "intended to avoid a useless trial of facts and issues over which there was never really any controversy").

### III. CHARTER IS LIABLE FOR CONTRIBUTORY INFRINGEMENT.

#### A. Charter's Continued Provision of Service to Known Repeat Infringers Establishes Intent and Gives Rise to Contributory Liability.

Charter argues that Plaintiffs cannot establish contributory infringement because Plaintiffs have not shown that Charter intended to cause infringement under *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). While Plaintiffs do not agree that a showing of intent

---

[4] Charter's contrary argument is based on a case that pre-dates the 2010 amendments to Rule 56 (which clarified that summary judgment may be sought as to "part of a claim or defense"), and on *Powers v. Emcon Assocs., Inc.*, 2017 WL 4102752 (D. Colo. Sept. 14, 2017), which has been criticized for its erroneous reliance on pre-2010 authority. *See Aubrey v. Koppes*, 383 F. Supp. 3d 1203, 1213–14 (D. Colo. 2019) (rejecting magistrate's reliance on *Powers*; "cases that pre-date the 2010 amendment" are "outdated authority" and "[t]he modern rule made summary judgment a more versatile tool"), *rev'd in part on other grounds*, 975 F.3d 995 (10th Cir. 2020).

4

is required (*see* Pl. Opp. Br. at 5), Plaintiffs have cited appellate decisions that apply *Grokster* to contributory infringement claims against ISPs and found the intent standard met under the facts presented here. *See* Pl. MSJ at 15 ("an ISP's knowledge that a subscriber repeatedly infringed gives rise to a presumption of knowledge that they will infringe again, and of *intent* by the ISP to cause additional infringements") (emphasis added) (citing *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 311–12 (4th Cir. 2018) ("*BMG*"); *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1171-72 (9th Cir. 2007)). Indeed, even the facts in *Grokster*, on which the Court relied to find intent there, are present here. Pl. Opp. Br. 11-12.[5]

Charter has no response to the applicable case law holding that intent can be imputed to a service provider that knows of specific infringing subscribers using its system, or of specific infringing content on its system, and fails to stop or remove those infringers or content.[6] Charter simply asks this court to disagree with the Fourth Circuit, the Ninth Circuit, and district courts in the Third, Fourth, Fifth, and Eleventh Circuits, all of which have found that, under *Grokster*, intent can be imputed to a service provider under the facts present here.

Charter disputes *none* of Plaintiffs' material facts demonstrating that: (i) Plaintiffs sent Charter over ▉▉▉▉▉ infringement notices (SUMF ¶¶ 5-11); (ii) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[5] Under the standard of imputed intent, however, evidence showing that Charter had an objective to promote or encourage infringement is not required, as the below cases make clear.

[6] In addition to *BMG* and *Perfect* 10, those cases include: *UMG Recordings, Inc. v. RCN Telecom Servs. LLC*, 2020 WL 5204067, at *9 (D.N.J. Aug. 31, 2020); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 767–68 (W.D. Tex. 2019); *Sony Music Ent.*, 426 F. Supp. 3d at 224; *Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, 2017 WL 4077045, at *8 (M.D. Fla. Sept. 14, 2017) (citing *Disney Enters., Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *35 (S.D. Fla. Sept. 20, 2013)). *See* Pl. MSJ 15-19 & Pl. Opp. Br. 5-8 (analyzing these cases and their consistent holdings that an ISP that, like Charter, continues to provide service to known repeat infringers meets *Grokster*'s standard).

5



(*id.* ¶¶ 16-21); (iii) ▇▇▇ (*id.* ¶¶ 22-25); and (iv) ▇▇▇ (*id.* ¶¶ 26-34). Under the above authority, this conduct gives rise to contributory liability, satisfying the knowledge and material contribution elements of the claim. *See also* Pl. MSJ 16-19; Pl. Opp. Br. 11-12.[7]

Charter's Haynes Declaration principally advances three assertions—that Charter modeled its "program" on CAS, spent substantial resources on its program, and had a goal of stopping infringement. As set forth in the accompanying Motion to Strike, however, Haynes' assertions are made without any firsthand knowledge and are based on hearsay and unauthenticated documents.

Even if not stricken, the Haynes Declaration cannot create a fact issue sufficient to prevent summary judgment. Tenth Circuit law is clear that "conclusory, self-serving assertions, devoid of factual support do not create a genuine issue of material fact." *Li Zu*, 806 F. App'x at 617–18; *see also Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975) ("generalized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment"); *Lewis v. Recreational Sports & Imps., Inc.*, 2016 WL 8542533, at *5 (D.

---

[7] Charter asks this Court to reject the simple measures test set forth in *Perfect 10* and which the District of Kansas adopted in *Tomelleri v. Zazzle, Inc.*, 2015 WL 8375083, at *14 (D. Kan. Dec. 9, 2015), a case Charter ignores. Resp. 9-10; Pl. MSJ at 18. But *Perfect 10* is not inconsistent with *Grokster*, as Charter argues; rather, the Ninth Circuit made clear that its "tests for contributory liability are consistent with the rule set forth in *Grokster*." 508 F.3d at 1171. Nor did Charter employ simple measures to prevent further damage to Plaintiffs' Works, as it claims, Resp. 11, because it "continue[d] to provide" its high-speed internet service to known repeat infringing subscribers and "failed to take [the] steps" to curtail their service. *Perfect 10*, 508 F.3d at 1172.

Colo. Oct. 27, 2016) ("many of Lewis's factual claims [in his affidavit] are generalizations with no support in the documentary evidence and thus do not demonstrate a 'genuine' dispute of fact"). Here, all three of Haynes's assertions are entirely conclusory generalizations. As to each, the declaration offers no concrete verifiable facts. And it points to *no* contemporaneous evidence—not a single document suggesting that Charter modeled its program on CAS; no evidence of how much Charter spent on its "program"; and not a single document in which any Charter employee makes *any* reference to a goal of stopping infringement. The Court thus should consider Plaintiffs' material facts undisputed. *See* Fed. R. Civ. P. 56(e)(2).[8]

Charter also relies on an analysis by its expert, Dr. Karl Snow, to argue that its "anti-infringement program" was effective, because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Resp. 4, 11. Dr. Snow's analysis, which fails to consider any notices addressed to these subscribers from other rightsholders, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id*. 4. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, the actual number makes clear that Charter's "anti-infringement program" was hardly

---



[8] Haynes acknowledges that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉." Resp. 14; Haynes Decl. ¶ 39 & Ex. D. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* Kaplan Reply Decl. Exs. 32-38. Moreover, a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉…"; ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ In other words, ▉▉▉▉▉▉▉▉▉. Similarly, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉," Haynes Decl. ¶ 30 & Ex. C, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Kaplan Reply Decl. Exs. 39-44.

7



"effective"— ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*see* Snow Rpt. ¶ 42)). ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓. But that just further confirms that ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓.[9]

Charter seeks to avoid the uncontested fact that it was aware that ▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, arguing that the "statistic" includes notices from more than just Plaintiffs. Resp. 14 n.8. But Charter does not deny that many of its subscribers who were the subject of others' notices were *also* the subject of Plaintiffs' notices and that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### B. Charter Had Actual Knowledge of Its Subscribers' Infringement.

Plaintiffs' DMCA-compliant notices provided Charter with detailed knowledge of the infringement of Plaintiffs' Works by Charter's subscribers, Pl. MSJ 16-17, and unequivocally informed Charter that infringement had occurred. *See* Pl. Opp. Br. 9 (quoting notice language). Charter does not address the cases holding that such notices twice established another ISP's knowledge for purposes of contributory infringement, *see* Pl. MSJ 17, and the case on which

---

[9] Charter touts that the largest number of notices a single subscriber received from Plaintiffs was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Resp. 4. That number, of course, is enormous, and only seems small to Charter in comparison to the massive scale of infringement on its network.

8

Charter relies described DMCA notices as "the most powerful evidence of a service provider's knowledge—actual notice of infringement from the copyright holder." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1107 (W.D. Wash. 2004). As Plaintiffs have explained,

Pl. Opp. Br. 9-10.[10]

As for Charter's proffered "evidence" ▓▓▓▓▓ the assertions are hearsay—not evidence—and, additionally, inadmissible as improper summary evidence under FRE 1006. *See* Mot. to Strike at 2-6. More importantly, ▓▓▓▓▓, Resp. 5; Haynes Decl. ¶¶ 29-32, does not call into question the *accuracy* of the notices of themselves.

Charter's inadmissible and irrelevant evidence fails to dispute any of Plaintiffs' material facts and underlying evidence, which conclusively establishes that Charter knew that continuing to provide internet service to its subscribers who were the subject of multiple infringement notices

---

[10] Charter argues that ▓▓▓▓▓ (SUMF ¶ 34)), are inadmissible. But subsequent remedial measures are admissible for "impeachment, or—if disputed—proving … the feasibility of precautionary measures." Fed. R. Evid. 407; *see also Meller v. Heil Co.*, 745 F.2d 1297, 1300 (10th Cir. 1984) (affirming admission of evidence regarding subsequent changes "to show the feasibility of alternative designs"); Dec. 17, 2019 Hearing Tr. (Judge Hegarty: "So what they're saying is, suddenly in 2017 . . . you come out with a very strict policy . . . [and] you are going to terminate [a] person['s] [internet service]. . . . [T]here are ways to get that information in sometimes, like feasibility"). Charter contends, and its Rule 30(b)(6) witness testified, ▓▓▓▓▓. Resp. 5; Kaplan Decl. Ex. 8 (Haynes Tr. 163:23-164:3, 242:5-242:23). Evidence that Charter ▓▓▓▓▓.

9

would be substantially certain to result in the infringement of Plaintiffs' Works. The *BMG* court's analogy of a service "that leases VCRs, learns that specific customers use their VCRs to infringe, but nonetheless renews the lease to those infringing customers," 881 F.3d at 308, is *precisely* on point (*contra* Resp. 14-15) and makes Charter's liability clear.[11]

## CONCLUSION

For the foregoing reasons, Plaintiffs' MSJ should be granted in its entirety.

Dated: January 19, 2022

Respectfully submitted,

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim
Jeffrey M. Gould
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

*Attorneys for Plaintiffs*

---

[11] With respect to Charter's argument concerning vicarious liability (Resp. 15-16), Plaintiffs refer the Court to their prior briefing establishing that it is undisputed that Charter had the right and ability to supervise its subscribers' infringing conduct under application of the correct legal standard and the law of the case. *See* Pl. MSJ 19-20 & SUMF ¶¶ 28-34; Pl. Opp. Br. 12-13.