# Exhibit XVII

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al*.,

    Plaintiffs,

*v.*

CHARTER COMMUNICATIONS, INC.,

    Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

## REPLY IN SUPPORT OF CHARTER'S MOTION FOR CURATIVE MEASURES AND SANCTIONS FOR PLAINTIFFS' SPOLIATION OF EVIDENCE

Charter seeks sanctions for the destruction of foundational evidence necessary to link the allegedly infringing files identified on Charter's network with Plaintiffs' copyrighted works. Plaintiffs do not dispute that evidence was irretrievably lost, but offer a litany of excuses for why they are not accountable for spoliation. Given the magnitude of the case and Plaintiffs' extensive evidentiary losses, the Court should not condone these excuses. It would be reasonable for the Court to conclude that Plaintiffs and their agents were under an obligation to preserve "all evidence" derived from the Notice Program for "legal actions" as of December 2011, when MarkMonitor and RIAA contractually agreed to do so. And, even if the Court credits Plaintiffs' position that litigation was not anticipated until January 2016, Plaintiffs still failed to take reasonable steps to preserve evidence from that point forward. As a result, Plaintiffs' case relies on cherry-picked evidence recreated at the direction of counsel after the Notice Program. Charter is prejudiced by the evidentiary loss as well as the selective recreation of evidence. The Court should grant Charter's motion and preclude Plaintiffs' reliance on all materials created in 2016, permit Charter to present evidence and argument regarding Plaintiffs' failure to preserve evidence,

1

and instruct the jury regarding Plaintiffs' spoliation, including an instruction that the jury may assume the lost evidence was unfavorable to Plaintiffs.

## I. PLAINTIFFS DID NOT TAKE REASONABLE PRESERVATION STEPS AND THE DESTRUCTION OF EVIDENCE HAS PREJUDICED CHARTER

During the Notice Program, MarkMonitor sent ▬▬▬▬▬ to Charter regarding subscribers purportedly identified as possessing allegedly infringing copies of Plaintiffs' copyrighted works. Although Plaintiffs acknowledged in writing that they would need to preserve evidence from the Notice Program for future litigation, they did not take reasonable steps to preserve all of the material evidence, and as a result, much of it was destroyed. When Plaintiffs' counsel directed MarkMonitor to redownload the evidence for trial in 2016, MarkMonitor could not locate the files for the majority of notices, but Plaintiffs pursued claims based on those notices anyway. Mot. 10. As a result, Plaintiffs' direct infringement case is premised on an incomplete evidentiary record recreated at the instruction of Plaintiffs' counsel. Charter is prejudiced by Plaintiffs' unreasonable failure to preserve material evidence, as well as this misleading record.

### A. Evidence Is Lost And Cannot Be Replaced

Plaintiffs do not dispute that the following evidence relevant to direct infringement is lost:[1]

**Song Files**, which were files downloaded by MarkMonitor and verified by Audible Magic prior to 2016. These files are the original evidence that would have shown what was in the files MarkMonitor downloaded from P2P networks during the Notice Program. Plaintiffs concede the Song Files cannot be replaced.

**Unverified Song Files**, which were files downloaded by MarkMonitor but not verified by

---

[1] A demonstrative depicting the extensive evidentiary losses is attached hereto as Appendix A.

Audible Magic prior to 2016. These files would have permitted Charter to challenge Plaintiffs'
assertion that MarkMonitor's process for identifying alleged infringing works was accurate and
reliable, including by flagging instances in which MarkMonitor could not verify a file that was the
subject of a notice and that Plaintiffs now claim is a genuine copy of a work-in-suit. Plaintiffs
concede the Unverified Song Files cannot be replaced.

**All Responses sent to MarkMonitor** when a file was verified by Audible Magic. The
Audible Magic Responses disclosed information about whether a file matched to a copyrighted
work, and if so, which work. This information could have been used to determine whether the
matched file was actually a copy of a work-in-suit. Plaintiffs concede the 2012-2015 Responses
cannot be replaced. While Plaintiffs argue that Charter can analyze the 2016 files to obtain the
necessary information (Opp. 16), this argument ignores that those files (and associated Responses)
are only a subset of the Song Files, and would not cure the prejudice to Charter.[2]

**Operable portions of source code** used by MarkMonitor during the Claim Period for
Audible Magic "file verification."[3] The missing source code would have permitted Charter to

---

[2]  In any event, Audible Magic did not permit the parties to submit downloaded song files to it in
this litigation, but only permitted use of its system with a small sample of files pre-selected by
Audible Magic. Dkt. 556-2, Frederiksen-Cross Rpt. at 43, ¶ 46.

[3]  On January 5, 2022, two days before Plaintiffs' Opposition to Charter's Spoliation Motion was
due, Plaintiffs' counsel informed Charter for the first time that MarkMonitor had located portions
of missing source code in November 2021, and referenced it in their Opposition despite Charter's
request to confirm they would not do so. Ex. X, Email chain. (Unless otherwise noted, all exhibits
cited as "Ex." herein are to the declaration of Andrew H. Schapiro in support of Charter's Reply.)
This Reply addresses the source code for MarkMonitor's "Torrent Manager" that was operational
during the Claim Period, which has not been recovered. Plaintiffs claim there is "a materially
similar version" of this source code dated after the Claim Period (Opp. 3), but such source code
was never produced by MarkMonitor, which represented all relevant material had been produced.
MarkMonitor's purported identification of the "File Hash Manager" source code in November
2021 will be the subject of a separate motion for sanctions and evidentiary exclusion.

3

analyze the interface between Audible Magic and MarkMonitor software for verifying BitTorrent files during the Notice Program (the subject of most of the notices[4]), and to evaluate how MarkMonitor processed Responses to generate the records Plaintiffs now rely upon.  Plaintiffs concede the Torrent Manager software operational during the Claim Period does not exist.

**Sam Bahun's emails prior to 2017**.  Mr. Bahun is expected to be a key trial witness regarding the purported "reliability" of MarkMonitor's system.  Plaintiffs concede that his emails prior to 2017 were deleted (when he left MarkMonitor) and cannot be restored.  Plaintiffs argue that "more than 100 emails with Mr. Bahun have been produced or logged" (Opp. 17), but this does not cure the prejudice to Charter as the majority of those emails do not relate to the 2012-2015 Notice Program and not a single one of them is an internal MarkMonitor communication.[5]

### B.   Plaintiffs Did Not Take Reasonable Steps To Preserve Evidence

With Plaintiffs' knowledge, MarkMonitor discarded evidence collected as part of the Notice Program, even though Plaintiffs' agent entered into contracts with MarkMonitor requiring its preservation.  Plaintiffs then did not send MarkMonitor a litigation hold until 2018, two years *after* sending a demand letter to Charter and *after* material evidence had been lost.  Plaintiffs never sent a litigation hold to Audible Magic at all.  These actions were not reasonable.

Plaintiffs posit that it was reasonable for MarkMonitor to preserve only the data itemized in the SOWs and to discard the rest.  Opp. 13.  But this argument attempts to rewrite the plain terms of the parties' agreements to preserve "all evidence," "verify and prove the integrity of any

---

[4]   Dkt. 593-12, Snow Rpt. ¶ 25, n.15.

[5]   Plaintiffs accuse Charter of "rank speculation" for arguing that Mr. Bahun's missing emails would question whether MarkMonitor's software was accurate and effective.  Opp. 17.  But the small number of emails from the Notice Program involving MarkMonitor show exactly that.  *See, e.g.*, Ex. Y, Email chain, at -35 ("This isn't the quality of service we expect from MarkMonitor").

evidence … gather[ed] for RIAA," and "keep back-up copies of the evidence for as long as reasonably required for taking and pursuing legal actions." Mot. 9. These requirements were not limited to those categories of evidence itemized in the SOWs. *Id*. at 2. Given this clear language, it was not reasonable for MarkMonitor to retain only a subset of evidence and destroy Song Files and Unverified Song Files with Plaintiffs' knowledge. Further, as Plaintiffs' incomplete attempts to redownload the Song Files in 2016 makes clear, it was unreasonable to only retain hash values for files and discard the files themselves. Opp. 13-14. Similarly, Plaintiffs' retention of "experts" to conduct a "listening analysis" on the redownloaded files shows that discarding Audible Magic's Responses in 2012-2015 and again in 2016 was not reasonable.

Plaintiffs insist that their failure to issue a litigation hold to MarkMonitor prior to July 2018 (or to Audible Magic, at all) is "of no consequence" as it was reasonable to rely on the terms of the SOWs to preserve evidence. Opp. 14. Not so. As a result of the failure to issue a timely legal hold to MarkMonitor, or to issue any hold to Audible Magic, important evidence regarding the operation of the Notice Program was destroyed, Sam Bahun's emails were deleted, and the source code used during the Claim Period to verify most of the files asserted in this case was irretrievably lost. Thus, due to Plaintiffs' failure to take reasonable steps to preserve evidence even *after* they admit anticipating litigation, Charter does not have "all relevant information from the 2016 project," as Plaintiffs represent. *Id*.

Plaintiffs try to dismiss Charter's position as a mere "wish[]" that more information was saved, and cite *Sch.-Link Techs., Inc. v. Applied Res., Inc.*, 2007 WL 677647 (D. Kan. Feb. 28, 2007), in support of their claim that a desire for additional evidence does not render preservation steps unreasonable. Opp. 14-15. But the district court in *Sch.-Link* found that the defendant

5

breached its duty to preserve because it did not instruct a key player in the litigation "to gather and preserve any documents or information relating to the lawsuit" and failed to implement a litigation hold. 2007 WL 677647, at *4. The same applies here, and Charter has shown that relevant evidence was destroyed by MarkMonitor and Audible Magic because Plaintiffs failed to implement a litigation hold either on time or, in Audible Magic's case, at all.

## C.  Charter Is Prejudiced By Plaintiffs' Failure To Preserve Material Evidence

The cumulative effect of the spoliation is that Charter has been deprived of the contemporaneous evidence needed to evaluate whether the Notice Program operated as Plaintiffs represent. Plaintiffs intend to argue at trial that the files downloaded in 2016 are the same as the original Song Files and that MarkMonitor's system was reliable and accurate. But Plaintiffs purged the evidence needed to challenge those assertions. And Charter has good reason to question the 2016 Project, as Plaintiffs admit it was done at the direction of counsel to "inform counsel how best to assert Plaintiffs' claims." Opp. 8. Litigants "are not free to create their own corroborating evidence after the fact, when they have a duty to preserve." *Emuveyan v. Ewing*, 2021 WL 3617423, at *10 (D. Utah Aug. 16, 2021). Of course, the spoliation of the Song Files, Unverified Song Files, and Responses means the remaining evidence relates exclusively to instances where a downloaded file (allegedly) matched Plaintiffs' works, creating a misleading and incomplete evidentiary record that inherently favors Plaintiffs.[6] Evidence that could have been used to show flaws in Plaintiffs' systems has been conveniently discarded.

Plaintiffs rely on Judge Jackson's decision in *Aqua-Hot Heating Sys., Inc. v. Gorman-Rupp*

---

[6]  Plaintiffs posit that "hash values reliably determine that one file is an exact copy of another" (Opp. 7), but MarkMonitor's records show instances of the same file in the same torrent having two different hash values. Mot. 10.

*Co.* for the proposition that Charter suffered no prejudice because Plaintiffs had no duty to preserve. Opp. 15. But unlike the plaintiff in *Aqua-Hot*, who collected and retained a subset of the evidence after deciding to file litigation, Plaintiffs did not preserve the original evidence from the Notice Program and their agent subsequently recreated and preserved only evidence that favors Plaintiffs. *See Aqua-Hot*, 2018 WL 6249886 (D. Colo. Nov. 29, 2018), at \*12. While the defendant in *Aqua-Hot* could analyze at least some of the original evidence to build a defense, Plaintiffs' destruction of evidence and reliance on partially recreated evidence prejudices Charter.

## II.    PLAINTIFFS WERE REQUIRED TO PRESERVE EVIDENCE

Plaintiffs' argument that they were not required to preserve the missing evidence because litigation was not "imminent" before January 2016 is baseless. Courts consider litigation to be imminent when "a party knew *or should have known* that the evidence *may* be relevant to future litigation," irrespective of whether the litigant understood at the time the precise nature of the specific litigation at issue. *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1162-63 (D. Colo. 2015) (emphasis added). The facts here show that Plaintiffs knew evidence collected for the Notice Program "might be relevant to a reasonably-defined future litigation." *Id*. at 1164.

### A.    Plaintiffs Anticipated Litigation In 2011

The Master Agreement provides contemporaneous proof that litigation was anticipated in 2011 because it required "all evidence collected by MarkMonitor for RIAA in relation to any peer-to-peer network, web service, internet file sharing platform or any internet infringement" to be retained to assist RIAA in "pursuing legal actions." Mot. 2. Plaintiffs cannot avoid this language.[7]

---

[7]    The majority of Plaintiffs' cited cases (Opp. 10) do not discuss the circumstances in which a *plaintiff's* obligation to preserve evidence is triggered and are inapposite. *Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 966 (10th Cir. 2017) (no abuse of

Although Plaintiffs say that the Master Agreement is "merely … a framework for potential future services" which were set out in later SOWs (Opp. 10), this ignores that the SOWs were subject to the terms of the Master Agreement, which provides for the preservation of "all evidence." Mot. 2. The SOWs show the parties anticipated "legal disputes arising out of the use of [MarkMonitor] gathered evidence," and provide a non-exhaustive list of evidence to be maintained. *Id*. Plaintiffs' preservation of specific evidence pursuant to the SOWs is not relevant, as "all evidence" compiled during the Notice Program should have been preserved. Opp. 5.[8]

The Court should also reject Plaintiffs' argument that the SOWs refer to "a corporate p2p litigation program" that is separate from the "P2P notice program." Opp. 4. This distinction does not change the parties' agreements, which show that Plaintiffs knew evidence collected during the Notice Program should be preserved for future litigation. Plaintiffs' attempt to characterize the clear contractual provisions to preserve "all evidence" for use in anticipated "legal actions" as merely a document retention policy should also be rejected. Opp. 11.

Plaintiffs cite identical passages in self-serving declarations from Plaintiffs and RIAA representatives stating each was "not contemplating, considering or anticipating litigation against Charter or other ISPs" during the Notice Program. *See* Opp. 4. But this overlooks the contemporaneous evidence. During the Notice Program, Plaintiffs entered into agreements to

---

discretion where no adverse-inference jury instruction given absent allegation of bad faith); *Salvatore v. Pingel*, 2009 WL 943713 (D. Colo. Apr. 6, 2009) (settlement demand triggered *defendant's* duty to preserve); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614 (D. Colo. 2007) (filing of complaint triggered *defendant's* duty to preserve). Unlike here, the plaintiff in *Aqua-Hot* "met the objective standard of showing litigation was not imminent." 2018 WL 6249886, at *12.

[8] In his declaration, Mr. Bahun acknowledges that MarkMonitor is expected to preserve evidence to help "content owners [] protect their rights and pursue enforcement." Bahun Decl. ¶ 5.

collect and preserve evidence for future "legal actions," monitored similar legal actions,[9] received

legal advice in anticipation of litigation, and identified "litigation targets." Mot. 4. In these

circumstances, Plaintiffs at the very least should have known that the evidence generated during

the Notice Program may be relevant to future litigation and needed to be preserved.

### B. The Court's Decision In *Sony v. Cox* Is Inapplicable

The Court should also reject Plaintiffs' argument that the decision in *Sony v. Cox* disposes

of whether they had a duty to preserve evidence in this case. Opp. 12. As has since come to light,

Plaintiffs failed to adequately disclose the scope of their evidentiary losses in *Cox* and that decision

was premised on an incomplete record. No. 1:18-cv-950, ECF 749 at 1-3 (E.D. Va.).

Because information was concealed, Cox only sought to preclude Plaintiffs' reliance on a

spreadsheet that purportedly showed that MarkMonitor reliably matched the files it located on P2P

networks to Audible Magic fingerprints of works-in-suit in that case. *Cox*, No. 1:18-cv-950, ECF

238 at 1-2. Specifically, Plaintiffs concealed the 2016 Project, which discloses that the files

provided to Cox in discovery were downloaded in 2016 at the instruction of Plaintiffs' counsel.

*Cox*, No. 1:18-cv-950, ECF 738 at 9-10. Instead, Plaintiffs represented they had produced all the

underlying files for the works-in-suit (as well as the data itemized in the SOWs) without disclosing

that those files were actually manufactured at counsel's direction. Dkt. 632-2, *Cox* Hearing

Transcript, at 56:12-14. On this misleading record, Magistrate Judge Anderson found that no duty

to preserve had been violated. *Id.* at 76:14-77:2. Now that the truth concerning Plaintiffs'

---

[9] Messrs. Leak, McMullan and Marks, who are declarants here, were aware of litigation against an ISP premised on a similar notice program in December 2014 when they received correspondence "reflecting legal advice and mental impressions of counsel regarding copyright infringement litigation" regarding the "BMG Rights Lawsuit," which is allegedly protected by work product. *See, e.g.*, Dkt. 593-16, Plfs' Am. Third Priv. Log Nos. 325 and 326.

evidentiary losses has come to light, that decision is inapplicable.

## III. THE REMEDIES SOUGHT BY CHARTER ARE APPROPRIATE

Even the authorities cited by Plaintiffs acknowledge that the Court has discretion to impose sanctions to cure the prejudice to Charter and may consider a range of factors in doing so. *See McGee v. Pacheco*, 2021 WL 2104831, at *5 (D. Colo. May 25, 2021) (presenting evidence at trial regarding failure to preserve evidence may be appropriate to counter prejudice). At a minimum, the Court should exclude evidence and testimony related to the 2016 Project. Otherwise, the jury will hear a misleading presentation of recreated evidence, and Charter will have limited evidence from the 2012-2015 Notice Program available to challenge it. *See Ewing*, 2021 WL 3617423, at *10.[10] Plaintiffs should be forced to make their case using the data they retained. Plaintiffs should also be precluded from arguing that Audible Magic transaction logs from the Notice Program are incomplete and cannot be relied upon by Charter's experts because, despite an obligation to preserve the Responses reflected in the Audible Magic transaction logs, MarkMonitor deleted its copies of the Responses that would show whether or not a file was verified by Audible Magic.

The Court should also preclude Plaintiffs from presenting evidence, testimony, or argument that MarkMonitor's system was accurate or reliable, such as that the Torrent Manager source code parsed Responses as represented, or Mr. Bahun's testimony regarding the Notice Program, as Charter is unable to test these assertions due to the loss of contemporaneous evidence. Jury instructions regarding the deletion of evidence, including an instruction that the evidence deleted was unfavorable to Plaintiffs, are also appropriate, given Plaintiffs' intentional conduct.

---

[10]   Plaintiffs deny that their conduct is a "recreation" of evidence (Opp. 19), but the 2016 Project is akin to the "corroborating evidence" created "after the fact" described in *Ewing*. *Ewing*, 2021 WL 3617423, at *9-10.

Dated: January 28, 2022

John J. Rosenthal
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
(202) 282-5000 (telephone)
Email: jrosenthal@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1506 (telephone)
Email: jgolinveaux@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*