Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00874-RBJ-MEH

WARNER RECORDS INC. et al.,

Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

---

### PLAINTIFFS' OPPOSITION TO CHARTER'S MOTION FOR CURATIVE MEASURES AND SANCTIONS FOR PLAINTIFFS' SPOLIATION OF EVIDENCE

---

There can be no real dispute that Charter's subscribers were infringing Plaintiffs' copyrights in mass or that Charter knew and did nothing to stop it. Nor is there any dispute that the audio files that Charter's subscribers downloaded and distributed contained Plaintiffs' copyrighted music and are infringing—indeed, Plaintiffs moved for partial summary judgment on this issue and Charter offered no contrary evidence. ECF 555 at 12-14; ECF 601 at 18-20.

Unable to *dispute* Plaintiffs' evidence of direct infringement, Charter now seeks to *exclude* it by complaining of ordinary-course—and inconsequential—deletion of other documents long before a duty to preserve arose. To do so, Charter presents a revisionist history of Plaintiffs' motivation for sending infringement notices, when Plaintiffs anticipated litigation, why MarkMonitor retained certain documents and not others, and alleged shortcomings in MarkMonitor's technical records.

Among other things, ███████████████████████████████



But the reality is that Plaintiffs sent notices to Charter for years in order to *avoid* the need for litigation, not in anticipation of it. Charter contends that Plaintiffs ███████████████████, but in truth MarkMonitor retained everything required under the relevant contracts and necessary for sending notices. As detailed below, the notion that Plaintiffs cherry-picked only favorable evidence to retain has no basis in fact.

Against this backdrop, Charter's motion should be denied.

*First*, while fully half of Charter's spoliation allegations concern documents deleted in the ordinary course before January 2016, Charter fails to show—and cannot show—that Plaintiffs reasonably anticipated litigation until then. The *Sony v. Cox* court considered many of these same issues on Cox's similar spoliation motion and expressly found that during the same 2012-2015 notice program at issue here, Plaintiffs did *not* anticipate litigation, there was *no duty* to preserve anything more than the contracts governing the program outlined, Plaintiffs' retention efforts were *reasonable*, and there was *no* intent to deprive. Ex. 1 at 76:8-77:12 (Sept. 27, 2019 Cox Hr'g Tr.).[1] Those rulings apply equally here.

*Second*, Charter fails to demonstrate any meaningful prejudice caused by the loss of

---

[1] Exhibits are attached to the Declaration of Jeffrey M. Gould.

information after January 2016. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

*Third*, Charter's requested relief—████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Rule 37(e) makes clear that any spoliation

sanction should be "no greater than necessary to cure the prejudice," of which Charter shows

virtually none. █████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

## **BACKGROUND**

I.    **From 2012-2015, RIAA engaged MarkMonitor for a Notice Program, not a litigation program.**

A.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████



██████████████████████████████████████████.[2] Marks Decl. ¶¶ 2, 5.

████████████████████████████████

███████████████████ ████████████████████████

████████████████████████████████ ECF 593-2 at 1

("2011 MSA"). ████████████████████████

██████████████████████████████████

████████████ ██████████████████████████████

████████████████████ *Id.* at 4.

**B. The 2012-2015 Statements of Work directed MarkMonitor to provide a "P2P notice program," not a litigation program.**

████████████████████████████

██████████████████████████████████████████

████████████ ECF 593-4 at 1 ("2012 SOW")[3]; Marks Decl. ¶ 6. ████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ Marks Decl. ¶ 6; McMullan

Decl. ¶ 5; Leak Decl. ¶ 5; Cohen Decl. ¶ 5. █████████████████

███████████████ ███████████████████████

████████ ████████████████████████████

██████████████████████████████████████████

---

[2] The Music Publisher Plaintiffs are not members of RIAA. Marks Decl. ¶ 3.

[3] As Charter notes (Mot. at n.2), the 2012, 2013, 2014 and 2015 SOWs are nearly identical.



. Marks Decl. ¶ 6.

Under the 2012-2015 SOWs, MarkMonitor agreed to maintain

[5] 2012 SOW at 24-25, 34.

*Id.* at 33-34.

---

[4] A "hash" or "hash value" is a unique identifier generated by a cryptographic algorithm for a specific file that acts as a file's "digital fingerprint." Files with the same hash value are identical.

[5] Each "Evidence Package" contains six computer log files evidencing, among other things, the steps of MarkMonitor's investigation, MarkMonitor's communications with infringing peers, the list of files shared, and the trace route mapping the flow of connections between MarkMonitor and the infringing peer. Ex. 2 at 652:3-657:21 (*Cox* Trial Tr.); *see also* 2012 SOW at MM 33.

[6] 

Bahun Decl. ¶ 21.

Neither item is a subject of Charter's motion.

### C.  MarkMonitor's process for detecting infringement and sending notices.

In order to assess Charter's spoliation allegations, it is critical to understand

MarkMonitor's process for detecting and noticing infringement on P2P networks at this time.

███████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██  █████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████  Bahun Decl. ¶ 15.

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████  Bahun Decl. ¶¶ 16-18; Paszkowski

Tr. at 166:19-167:2; Ex. 5 (May 8, 2021 S. Marks Dep. Tr. ("Marks Tr.")) at 212:8-19.

All the technical experts in this case, including Charter's, agree that hash values reliably determine that one file is an exact copy of another—*i.e.*, that two files with the same hash value are identical and have the same contents. ECF 555-64 at 5-11 (Frederiksen-Cross Decl.); Ex. 6 (Sept. 28, 2021 K. Almeroth Dep. Tr.) at 145:7-9 ("If you have two different files and they are identical, they have the same hash values, so one is essentially a copy of the other"); Ex. 7 (Oct. 5, 2021 S. Chatterjee Dep. Tr.) at 43:22-44:2, 83:17-84:4.

*Notices*.



Bahun Decl. ¶ 20.

Bahun Decl. ¶ 20.

Bahun Decl. ¶ 20.

In discovery, MarkMonitor produced from its Verified Hash and File Databases all the records that it agreed to maintain under the 2012-2015 SOWs, consistent with the parties' requests and responses.

## II.    In the aftermath of the *BMG v. Cox* verdict, RIAA and MarkMonitor entered into the 2016 SOW expressly in anticipation of litigation.

For the 2012 Notice Program, MarkMonitor's last notice to Charter was dated March 31, 2015. On December 17, 2015, a jury in *BMG v. Cox* found Cox contributorily liable for its subscribers' infringements of musical works on P2P networks. Mot. at 6. That case was the first of its kind to establish the liability of an ISP for such claims.

7



Marks Decl. ¶ 7; McMullan Decl. ¶ 6;

Leak Decl. ¶ 6; Cohen Decl. ¶ 6.

*Id.*; Marks Tr. at 220:16-221:3.

Accordingly,

Marks Decl. ¶ 8.

Bahun Decl. ¶ 11.

Gould Decl. ¶ 6; Bahun Decl. ¶¶ 10-11.

## III.    Charter's Motion.

Charter alleges that Plaintiffs anticipated litigation as early as December 2011 and

spoliated the following five items:



1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mot. at 5.  Charter generically contends that this has ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Mot. at 2, 12.

## LEGAL STANDARD

Rule 37 provides two remedial schemes.  Under Rule 37(e)(1), the Court may sanction a party only where: (1) that party had a duty to preserve in anticipation of litigation, (2) a loss occurred because that "party failed to take reasonable steps to preserve it," (3) the information "cannot be restored or replaced through additional discovery," and (4) there is "prejudice to another party from [the] loss of the information."  Fed. R. Civ. P. 37(e)(1).  Upon such findings, the Court "may order measures no greater than necessary to cure the prejudice."  *Id.*

Rule 37(e)(2) creates a separate remedy upon a showing of bad faith.  Thus, if a "party acted with the intent to deprive another party of the information's use in the litigation," the Court may, among other things, "presume that the lost information was unfavorable" and "instruct the jury that it may or must presume the information was unfavorable to the party."

## ARGUMENT

### I.    Plaintiffs had no duty to preserve prior to January 2016.

Rule 37(e) "does not apply when information is lost before a duty to preserve arises."

Fed. R. Civ. P. 37(e), 2015 Advisory Committee notes.  Under Tenth Circuit law, "a party has a

duty to preserve evidence [when] it knew, or should have known, that litigation was imminent."

*Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc.,* 878 F.3d 960, 964 (10th Cir.

2017); *see also Aqua-Hot Heating Sys., Inc. v. Gorman-Rupp Co.*, 2018 WL 6249886, at *12 (D.

Colo. Nov. 29, 2018) (Jackson, J.) (holding "plaintiff has met the objective standard of showing

that litigation was not imminent until early 2017" because "it had no intention of suing defendant

until early 2017").  A theoretical possibility of litigation does not mean litigation is imminent.

*See Salvatore v. Pingel*, 2009 WL 943713, at *4 (D. Colo. Apr. 6, 2009) (duty to preserve

"should require more than a mere possibility of litigation") (quoting *Cache La Poudre Feeds,*

*LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007)).

**A.**



███ Marks Decl. ¶ 6; McMullan Decl. ¶ 5; Leak Decl. ¶ 5; Cohen Decl. ¶ 5; Marks Tr. 220:16-221:2. ██████████████████████████████████████

███████████████████████ *See* Fed. R. Civ. P. 37, 2015 Advisory Committee notes ("The fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation[.]"); *Johnson v. Liberty Mut. Fire Ins. Co.*, 648 F.3d 1162, 1165 (10th Cir. 2011) (Gorsuch, J.) (rejecting that "adoption of an internal retention policy establishes that it did foresee or should have foreseen" litigation).[8]

---

[7] ████████████████████████████████████

[8] It is undisputed that only the Record Company Plaintiffs (and not the Music Publisher Plaintiffs) are RIAA members, and that ████████████████████████



*See* *Aqua-Hot Heating,* 2018 WL 6249886, at *12 (Jackson, J.). ████████████████

████████████████████████████████████

### B. The *Sony v. Cox* court rejected the exact same argument that a preservation duty arose during the 2012-2015 Notice Program.

The court in *Sony v. Cox* rejected Cox's spoliation motion that argued, as Charter does here, that Plaintiffs had a duty to preserve evidence during the same 2012-2015 RIAA Notice Program. Mot. for Sanctions, *Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-cv-950, ECF 238 at 18-19 (E.D. Va.). On full briefing and a hearing, the court found no duty to preserve:

> I do not find at this point in time that in the 2013/2014 time frame, that there was necessarily an anticipation of this litigation or this type of litigation that would require one to keep every piece of information relating to every examination, work, verification, or whatever of the various notices that were sent out during that time period. . . .
>
> So as an initial matter, I find at this point in time that there really wasn't a duty to preserve any more of the information than what was outlined in the Statement of Work, and that has been produced.

Ex. 1 at 76:8-77:12 (also finding Plaintiffs' efforts to retain were reasonable and finding no intent to deprive). To dull the effect of this persuasive precedent, Charter argues that the *Cox* court did not consider ███████████. Mot. at 8 n.11. ████████████████████

████████████████████████████████████

████████████████████████████████████

II.   **RIAA and MarkMonitor took reasonable steps to ensure relevant data was preserved and Charter fails to show any culpable conduct.**

   A.   **Prior to January 2016, MarkMonitor took reasonable steps by adhering to its contractual obligations to preserve evidence generated in the Notice Program.**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ *See* Fed. R. Civ. P. 37, 2015 Advisory

Committee notes (Rule 37(e) "recognizes that 'reasonable steps' to preserve suffice; it does not

call for perfection"). ███████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ On this basis, the *Cox* court concluded that "the reasonableness

of the party in this, [they] state they had an agreement, they expected MarkMonitor to agree by

it.  They did do it, it seems reasonable.  So I think it has been reasonable."  Ex. 1 at 77:3-6.

   Ignoring this, ████████████████████████████████████████

████████████████████████████ Mot. at 9. █████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████ As the

*Cox* court found, the information RIAA required MarkMonitor to preserve *was* reasonable.

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████ Mot. at 9. ███████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

[REDACTED]

Paszkowski Tr. at 166:19-167:2; Marks Tr. at 212:8-19 [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]).

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Bahun Decl. ¶ 15.  And, of course, no preservation

duty attached at this time anyway.

**B. After January 2016, RIAA and MarkMonitor took reasonable steps to preserve by contractually requiring MarkMonitor to preserve evidence in anticipation of litigation.**

Charter claims that [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

That Charter wishes more information was saved does not render the preservation steps

unreasonable. *See School-Link Techs., Inc. v. Applied Res., Inc.*, 2007 WL 677647, at *3 (D.

Kan. Feb. 28, 2007) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y.

2003)) ("[A] corporation, upon recognizing the threat of litigation, need not preserve 'every

shred of paper, every e-mail or electronic document, and every backup tape.'"); *see also* Fed. R.

Civ. P. 37, 2015 Advisory Committee notes (reasonable steps "does not call for perfection").

### III. Charter fails to demonstrate prejudice because the lost data can either be replaced or is minimally relevant.

The allegedly spoliated data does not matter to Charter's cause and thus cannot be the

basis for a spoliation sanction. To trigger spoliation sanctions, "[t]he prejudice must be actual,

rather than merely theoretical." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1171

(D. Colo. 2015). "[T]he burden is on the aggrieved party to establish a reasonable possibility,

based on concrete evidence rather than a fertile imagination, that access to the lost material

would have produced evidence favorable to his cause." *Salvatore*, 2009 WL 943713, at *10

(quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996)).

***No duty, no prejudice.*** Charter suffered no prejudice from ███████████

████████████████████████████████████████████████████████████

██████████████████. *Aqua-Hot Heating Systems* is instructive. 2018 WL 6249886, at

*12 (Jackson, J.). After customers complained of pump failures in the heating systems plaintiff

sold, plaintiff collected 1,006 of those pumps for inspection and retained only 504 of those

collected. In plaintiff's suit against the pump manufacturer alleging 5,223 defective pumps,

defendant sought to exclude on spoliation grounds "any evidence regarding the missing pumps

that defendant was unable to inspect." *Id.* Judge Jackson denied the motion, finding no duty to

preserve, and concluding that "defendant will not be substantially prejudiced" by "allow[ing]

evidence to be presented at trial regarding all 5,223 defective pumps" because the "jury can evaluate plaintiff's decision" regarding what to retain. *Id.*

Any relevant prejudice for purposes of Charter's motion ███████████████████ ███████████████████████████ This Charter cannot show.

*2016 Audible Magic Responses*. Charter cannot show any prejudice from the absence of complete Audible Magic Responses from 2016. Charter has copies of the *actual 2016 files* and can analyze them any way it wants—including through Audible Magic or another content identification service, such as Shazam, SoundHound or AcoustID, to identify their contents. Or it could listen to the files and compare them to authentic copies of Plaintiffs' copyrighted works, as Plaintiffs' audio experts and sound engineers have done. Charter has chosen not to do any of that, even in response to Plaintiffs' experts identifying each 2016 download that contains a copy of one of Plaintiffs' works. Tellingly, in summary judgment briefing, Charter has not disputed even *one* of Plaintiffs' experts' conclusions identifying those songs. ECF 601 at 18-20.

In any event, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████

*Partial Source Code Wrapper*. Charter cannot show prejudice by ███████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

Paszkowski Decl. ¶¶ 6-7.

ECF 556-2 at ¶ 104.

Paszkowski Tr. at 164:11-16.

*Second*,

Paszkowski

Decl. ¶¶ 7, 10-12; *see also* Ex. 8 (May 13, 2021 S. Bahun Dep. Tr. ("Bahun Tr.")) at 196:2-199:11.

[9]

**Bahun emails**.

Gould Decl. ¶ 5.

Mot. at 12.

*See* Exs. 10, 11. Charter's claim is rank speculation,

---

[9]

Gould Decl. ¶ 4, Ex. 9 (Email from J. Gould).



based on a "fertile imagination." *Salvatore*, 2009 WL 943713, at *10.

## IV. Charter's proposed remedies are disconnected from and grossly disproportionate to the alleged spoliation and harm.

"The two most important factors in determining spoliation sanctions are culpability of the offending party and actual prejudice to the other party." *McGee v. Pacheco*, 2021 WL 2104831, at *5 (D. Colo. May 25, 2021). Rule 37(e)(1) grants courts discretion to order sanctions "no greater than necessary to cure the prejudice," and "does not require the court to adopt measures to cure every possible prejudicial effect." 2015 Advisory Committee notes.

Here, there is no culpability for anything deleted prior to January 2016 and thus no cognizable harm to remedy. And, even assuming *arguendo* some culpability for information deleted after January 2016, there is no non-speculative harm caused by it, as explained above. Against this backdrop, no sanction of any kind is warranted.

Yet Charter proposes multiple draconian remedies completely untethered to the alleged spoliation and harm.

Mot. at 13.



*See* ECF 555 at 12-14.

Charter also has not shown harm sufficient to warrant presentation of spoliation evidence or an instruction on Plaintiffs' alleged "recreation" of evidence. ██████████████████

██████████████████████████████████

██████████████████████████████████

████ The sole case Charter cites in support this remedy only proves the points. There, in *Emuveyan v. Ewing*, the court found defendants had "significantly altered the human resources file by creating an additional document" and backdating it to "appear[] to be contemporaneously written." 2021 WL 3617423, at *11 (D. Utah Aug. 16, 2021). Nothing like that happened here.

Charter has wholly failed to demonstrate any bad-faith intent to deprive as Rule 37(e)(2) requires for an adverse instruction. Mot. at 14. Lacking any actual evidence of bad faith, Charter summarily concludes that Plaintiffs *must* have intended to deprive them of favorable

evidence. But inferring an intent to deprive from the mere fact of the deletion itself would render Rule 37(e)(2)'s intent-to-deprive requirement a nullity. Courts reject Charter's approach, reserving adverse inference instructions for severely culpable misconduct simply not present here. *See, e.g.*, *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1219-20 (10th Cir. 2008) (because an adverse inference "is a powerful sanction" and "'brands one party as a bad actor' . . . courts require evidence of intentional destruction or bad faith") (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900-01 (8th Cir. 2004)).

## **CONCLUSION**

For the foregoing reasons, Charter's motion should be denied in its entirety.

Dated: January 7, 2022

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Ste. 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Respectfully submitted,

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim
Jeffrey M. Gould
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

Janette L. Ferguson, Esq.
WILLIAMS WEESE PEPPLE & FERGUSON
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
jferguson@williamsweese.com

*Attorneys for Plaintiffs*