# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC., *et al*.,

      Plaintiffs,

*v.*

CHARTER COMMUNICATIONS, INC.,

      Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

## RESPONSE TO PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE DECLARATIONS OF MARY HAYNES, ANDREW SCHAPIRO AND DUNCAN HALL

In support of its response to Plaintiffs' motion for partial summary judgment, Dkt. 601 ("SJ Resp."), on December 20, 2022, Charter submitted declarations from: (1) fact witness Mary Haynes, Dkt. 657-1[1] ("Haynes Opp. Decl."); (2) Charter's outside counsel, Andrew Schapiro, Dkt. 601-1 ("Schapiro Opp. Decl."); and (3) a representative of the Internet Archive, Duncan Hall, Dkt. 601-19 ("Hall Opp. Decl.").[2] On January 19, 2022, Plaintiffs moved to strike all three declarations. Dkt. 654 ("Mot."). In this district, however, "[m]otions to strike are disfavored, particularly in the context of motions for summary judgment." *Enos-Martinez v. Bd. of Cnty. Comm'rs of the Cnty.*

---

[1] Ms. Haynes's declaration, filed on December 20, 2021 (Dkt. 601-13) with Exhibits A – D (Dkts. 601-14 – 17), inadvertently omitted her signature. On January 25, 2022 the Court accepted the corrected declaration at ECF No. 657-1 and stated that it "will refer to it, not the unsigned version." Dkt. 661. Exhibits A – D were not re-submitted and can be found at Dkt. 601-14 – 17.

[2] The proper course for Plaintiffs to challenge such evidence would have been to meet and confer with Charter first, and then raise any unresolved objections in their response brief. *See Green v. Cath. Health Initiatives Colo.*, 2007 WL 136558, at *1 (D. Colo. Jan. 16, 2007) (Hegarty, M.J.). Not only did Plaintiffs make no attempt to confer with Charter, in violation of Local Rule 7.1(a), but the motion circumvents the 20-page limit for summary judgment briefing, providing Plaintiffs with an additional 11 pages of argument. Both violations may serve as a basis to deny the motion. *See Massari v. Potter*, 2006 WL 318658, at *7 (D. Colo. Feb. 9, 2006) (denying motion to strike).

*of Mesa*, 2012 WL 1079442, at *1 (D. Colo. Mar. 30, 2012) (quotations omitted). Plaintiffs'

motion to strike the declarations of Ms. Haynes, Mr. Schapiro and Mr. Hall should be denied.

## ARGUMENT

## I.    NO PORTIONS OF THE HAYNES DECLARATION SHOULD BE STRICKEN

Mary Haynes is Charter's Group Vice President of Network Security Operations, and has

worked in Charter's Network Security Operations division in a senior capacity since August 2013.

Haynes Opp. Decl. ¶ 1. As she states, "[i]n the course of my duties, I have become familiar with

Charter's business generally," including, among other things, "Charter's program for addressing

allegations of copyright infringement levied against Charter subscribers." *Id.* She further declares

that she has "personal knowledge of the facts stated in this declaration." *Id.* ¶ 2

### A.    Ms. Haynes's Testimony Is Not Inadmissible Hearsay

Ms. Haynes states that



. Haynes Opp. Decl. ¶¶ 5-11, 29. Plaintiffs argue that statements in ¶¶ 8, 28-33, 36,

38, 39, 44, and 48 of her declaration about these communications are not admissible because they

are (1) not within her personal knowledge and (2) hearsay. Mot. 2-4. Plaintiffs are incorrect.[3]

---

[3]    On almost every page of their January 19, 2022 motion to strike, Plaintiffs seek to incorporate
by reference arguments made in their December 20, 2021 motion to strike (Dkt. 608), ultimately
incorporating all of the earlier motion. *See* Mot. 2 (arguing paragraphs should be stricken "for all
the same reasons" in earlier motion), 3 (similar), 4 (similar), 5 (similar), 6 (similar), 7 (similar), 10
(similar). That this effectively provides Plaintiffs with a 26-page brief is an additional basis to
deny the instant motion. *See Wilson v. Pauling*, 457 F. Supp. 3d 965, 978 n.2 (D. Colo. 2020)
("[n]o authority extends Rule 10(c) to incorporation of a party's prior motion into a later motion")
(Jackson, J.). But, because Charter has no other option but to respond to these "incorporation by
reference" arguments, it has referred the Court to its earlier response where appropriate.

## 1.     Ms. Haynes's Statements Are Within Her Personal Knowledge

Rule 56 requires declarations to be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  A declarant's personal knowledge may be based on knowledge obtained from doing his or her job.  *See Pipkin v. Mortg. Creditcorp. Inc,* 72 F.3d 138, 138 n.5 (10th Cir. 1995).  The declarant need not have "witnessed every incident" described. *Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1318 (8th Cir. 1996).

As a senior officer of Charter's Network Security Operations division, Ms. Haynes oversaw the operations of Charter's anti-infringement program.  She was thus in a position to acquire personal knowledge about this program, including Charter's communications with subscribers on this subject.  *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (personal knowledge can be "reasonably inferred" from role).  As the executive in charge, Ms. Haynes need not have been personally present on every call or copied on every email to possess personal knowledge of them.  *See, e.g., Deer v. XPO Logistics Freight, Inc.*, 2019 WL 699112, at *3 (D. Colo. Feb. 20, 2019) (human resources officials "qualified based on personal knowledge" to attest to application processes); *see also Aucutt*, 85 F.3d at 1318.  Ms. Haynes's testimony is also based in part on her review of business records documenting the contents of these communications, which were regularly created and maintained by Charter in the ordinary course of business.  *Alloc, Inc. v. Pergo, L.L.C.*, 2010 WL 3808977, at *8 (E.D. Wis. Sept. 23, 2010) (declarant's position and experience, coupled with review of internal documents, made witness capable of having personal knowledge of current and historic policies).

As to ¶¶ 38, 39, 44 and 48, Ms. Haynes, as the supervisor of Charter's anti-infringement

3

program, has the requisite personal knowledge for the reasons stated above—for example, Ms. Haynes addresses Charter's policies and practices, her review of department documents, and her awareness of communications with Charter, which all fall squarely within her supervisory role.[4]

Plaintiffs offer specific challenges only to ¶ 44, but those are without merit. Specifically, they argue that Ms. Haynes's statement about ████████████████████████ ████████████████ is inconsistent with the deposition of Charter employee Tammy Stewart, characterizing Ms. Stewart's testimony as saying that ████████████████████████ ████████████. Mot. 3-4. Plaintiffs are wrong—in fact, Ms. Stewart specifically testified that ████████████████████████████████████████████████████████ ████████████████ Dkt. 654-3 (Stewart Tr.) 263:8, 266:5-12. Ms. Stewart's lack of recollection solely was on the point of ████████████████████████. *Id.* 263:10-13, 264:12-18. ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████" Kaplan Ex. 22. There is no "contradiction."

## 2. **Ms. Haynes's Statements Are Admissible**

Ms. Haynes's statements in ¶¶ 8, 28-33, 36, 38, 39, 44 and 48 are not hearsay (Mot. 4) because they are not being offered into evidence for their truth. *See also* Dkt. 634 at 4-5 (Charter addressing similar argument). Rather, they are being used to demonstrate ████████████ ████████████████████████████████████████████████████████. *See, e.g.,*

---

[4] Plaintiffs rely on *Savacool v. Weir Oil 7 Gas*, 2021 WL 4426955, at *4 (D. Colo. Sept. 27, 2021) in support of their motion to strike. Mot. 3. But *Savacool* merely refers to *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006), which did not turn on whether the declarant was or was not physically present, but rather that he was "not a human resources official" and so "was not in a position to acquire" sufficient knowledge about the matter.

Haynes Opp. Decl. ¶ 31 ("████████████████████████████████████████████

██████████████████████████████████████████ ...."). The

statements are offered not to prove whether an alleged infringement did or did not occur, but

instead to show that subscribers made such statements to Charter.  FRE 801(c) adv. comm. note

("If the significance of an offered statement lies solely in the fact that it was made, no issue is

raised as to the truth of anything asserted …"); *Ries Biologicals, Inc. v. Bank of Sante Fe*, 780 F.2d

888, 890 (10th Cir. 1986) (admitting statements offered for a nonhearsay purpose).  For this reason,

third-party statements are routinely admitted to show their effect on the listener.  *See, e.g.*,

*Savacool*, 2021 WL 4426955, at *3 ("An out-of-court statement offered to show the effect of that

statement on a listener is not hearsay."); *Tygrett v. City & Cnty. of Denver*, 2020 WL 6873953, at

*3 n.5 (D. Colo. Nov. 23, 2020) (Hegarty, M.J.) (similar).

      Charter properly uses this testimony to show that it "████████████████████████

████████████████████████████████████████████████████████████

████████████," not as evidence of what customers ***actually*** did or did not know.  SJ Resp. 5

(emphasis added); *id.* 4 (similar as to show the existence and types of customer feedback).  This

evidence also explains why Charter ███████████████████████████████████. *Id.* 14

(citing Haynes Opp. Decl. ¶ 39); *see Pedroza v. Lomas Auto Mall, Inc.*, 2009 WL 1325440, at *9

(D.N.M. Apr. 6, 2009) (statement admissible to "explain why the employees took the actions they

did").[5]  And as described *infra* Part I.B, Charter's records of such statements are admissible as

---

[5]  Although the Court need not reach the issue, the customer statements are also admissible under
the state-of-mind exception to hearsay, as they are statements of the declarant's then-existing
awareness or unawareness of committing certain acts.  *See* FRE 803(3).

business records, so there is no hearsay-in-hearsay problem.[6]

Ultimately, Plaintiffs complain that Ms. Haynes's statements do not explicitly say that customers ███████████████████████████████████████████████████ ███████████████████████████. But the meaning of her statements is clear from the context, and such testimony was clarified in her January 19, 2022 Declaration. *See* Dkt. 650-1 (Ms. Haynes clarifying similar testimony). While Ms. Haynes's clarifications are more than sufficient, Charter is willing to clarify her testimony in similar fashion here should the Court deem it necessary.

### B. Ms. Haynes's Summaries Can Be Properly Admitted At Trial

Ms. Haynes includes summaries of examples of: (1) the Security Team's notes of calls with customers who received copyright notices (¶ 29 & Ex. B); (2) customers' emails to Charter after receiving such notices (¶ 30 & Ex. C); and (3) the Security Team's notes of calls with customers who suspected the source of the problem (¶ 39 & Ex. D). Plaintiffs challenge the admissibility of these summaries on the grounds that they do not meet the requirements of a Rule 1006 summary. Mot. 4-6. Plaintiffs' objections are meritless. *See* Dkt. 634 at 5-8 (addressing similar arguments).

Plaintiffs first argue that the exhibits lack a "foundational sponsor." Mot. 5. However, Plaintiffs make no argument that such a foundation could not be set at trial. *Danielson v. Huether*, 2021 WL 217706, at *7 (D.S.D. Jan. 21, 2021) (FRE 1006 summary considered on summary judgment where underlying evidence "would be admissible at trial"); *see also* Dkt. 650-1 ¶ 11.

Plaintiffs also err in arguing (Mot. 5 & n.1) that the exhibits contain inadmissible hearsay. As explained above, the communications with subscribers are not being offered for their truth, but

---

[6]  This distinguishes *Johnson v. Weld Cty, Colo.*, 594 F.3d 1202, 1208-10 (10th Cir. 2010) (cited Mot. 4), which excluded the statement at issue because there was an additional layer of hearsay about *whether* the statement was even made to the listener. Here, there is no such problem.

to show the fact that subscribers regularly gave this type of feedback about notices to Charter

(whether or not the feedback is true), thus impacting Charter's view of the notices and, in turn, its

view of its anti-infringement program.  SJ Resp. 4-5 (citing Exhibits B and C as examples of

"feedback" received from customers); *id.* 14 (citing Exhibit D as an examples of Charter's view

that its "efforts were succeeding," *i.e.*, the effects of the statements on Charter).  And as to a

supposed second level of hearsay in Exhibits B and D, the Team's notes satisfy FRE 803(6)'s

business record exception.  Specifically, the notes:

> (1) have been prepared in the normal course of business; (2) have been made at or near the
> time of the events recorded; (3) [are] based on the personal knowledge of the entrant or of
> a person who had a business duty to transmit the information to the entrant; and (4) indicate
> the sources, methods and circumstances by which the record was made were trustworthy.

*U.S. v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008).  As Ms. Haynes explains in ¶ 29: "



" Thus, these were

contemporaneously recorded in the regular course of business and have indicia of trustworthiness.

*See Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 966 (W.D. Wis. 2013) ("call

logs and notes are admissible under the exception to hearsay for records of regularly conducted

activity" where declarant's position at company provides personal knowledge, even if he did not

enter notes).  Ms. Haynes can further lay this foundation at trial.

The summaries also satisfy FRE 1006's "voluminous writings" standard.  The materials

summarized were part of a program that ████████████████████████████████████████

████████████████████████████████████████." Haynes Opp. Decl. ¶ 11. ████████

████████████████████████ *Id.* ¶ 29.  Summaries of examples of

195 such calls and emails plainly satisfy FRE 1006, which "allows the use of summaries when

'[t]he contents of voluminous writings … cannot *conveniently* be examined in court.'" *U.S. v. Schuler*, 458 F.3d 1148, 1154 (10th Cir. 2006) (quoting FRE 1006) (emphasis added).

Finally, there is nothing "misleading[]" about Exhibit D (the only exhibit that Plaintiffs expressly challenge here). Mot. 5-6. Specifically, Plaintiffs complain that Exhibit D ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Mot. 4-5. However, in the *sole* call

log identified, █████████████████████████████████████████████. Dkt. 654-4

(██████████████████████████████████████████████████████████████

███████). The other two documents cited (Dkts. 614-19 & 614-23) are customer emails—***not
Charter call logs or work log notes***—and thus by definition are not in Ms. Haynes's exhibit of
"call logs and work log notes." Haynes Opp. Decl. ¶ 39. Plaintiffs offer no other explanation as
to how Exhibit D's verbatim excerpts of call log and work log notes are "misleading."

### C. Ms. Haynes's Testimony About CAS Is Based On Her Personal Knowledge

Plaintiffs argue (through incorporation of their prior motion to strike) that Ms. Haynes's
testimony about CAS is not admissible because (1) she did not personally participate in the CAS
negotiations from 2011-2013 and (2) prior to working at Charter, Ms. Haynes did not handle
copyright-related issues. Mot. 6. Again, Plaintiffs' arguments ignore that CAS was a well-known
and widely-publicized program that purported to set forth "best practices" for how ISPs should
handle copyright complaints. *See* Dkt. 634 at 8-10 (Charter addressing similar arguments); *see
also* Dkt. 634-2 (press release about CAS program); Dkt. 634-3 (Lesser Tr.) 84:6-88:1 (FAQ from
CAS's website to "educate people about the system"); Dkt. 634-4 (blog post about CAS program).
Moreover, the CAS program was in effect throughout the time Ms. Haynes worked at Charter

overseeing its anti-infringement efforts, and in this capacity she became familiar with it. Haynes Opp. Decl. ¶ 13; Dkts. 634-2 – 4 (Exs. A – C). As the executive overseeing Charter's anti-infringement program, Ms. Haynes may properly testify to the company's knowledge and understanding of the CAS program and how Charter's own policies were developed around and comported with the "best practices" publicly touted by that program. Dkt. 634-2 (CAS press release and fact sheet promoting program as best practice). FRE 602 "does not require first-hand observation or experience" or "that personal knowledge be acquired contemporaneous with the events at issue"; rather, "'[p]ersonal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry practice, is a sufficient foundation for lay opinion testimony.'" *In re RFC & RESCAP Liquidating Tr. Action*, 2020 WL 504661, at *6 (D. Minn. Jan. 31, 2020) (quoting *Qwest Corp. v. City of Santa Fe*, 2013 WL 12239494, at *1 (D.N.M. Apr. 15, 2013)).

Plaintiffs also argue that the CAS negotiations were "confidential," but do not identify any facts Ms. Haynes could not acquire from public sources in her capacity as the supervisor of Charter's notice program from 2013-2016. *See* Haynes Opp. Decl. ¶¶ 12-18 (referencing publicly available information about CAS); Dkts. 634-2, 634-4 (publicly available information about CAS).

Finally, Plaintiffs' argument that Ms. Haynes's statements about Charters' understanding of the CAS program is hearsay (*see, e.g.*, Mot. 6 n.2, citing ¶¶ 12-13) should be rejected. Ms. Haynes does not relay *any* out of court statements in her testimony. Rather, she testifies about her own knowledge and understanding of the nature and purpose of the CAS program gleaned from her personal experience as the executive responsible for implementing Charter's own version of the program, and the effects of public statements on Charter. This testimony is plainly admissible.

9

**D.      Ms. Haynes's Statements About CAS Are Not A "Sham"**

Plaintiffs argue that ¶¶ 12 and 16 of Ms. Haynes's declaration are inadmissible because "they cannot be reconciled with Ms. Haynes's deposition testimony." Mot. 6-7. But the deposition testimony cited in no way contradicts Ms. Haynes's declaration. *See* Dkt. 634 at 10-11 (addressing similar arguments). ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████. Ms. Haynes's declaration states:



Haynes Opp. Decl. ¶¶ 16-17 (emphasis added). Ms. Haynes could not be clearer that ██████████ ██████████████████████████████████████████████████████████████ *See* Dkt. 634-3 (Lesser Tr.) 95:1-96:3 (CCI Executive Director describing CAS as a "voluntary system … for education, deterrence and redirection" and explaining "it was important to us to make clear that the [CAS] did not have a termination aspect to it"). Plaintiffs do not identify any deposition testimony from Ms. Haynes contradicting her declaration. In fact, Plaintiffs did not ask Ms. Haynes *any* questions about CAS at her deposition, even though she was the witness designated to give testimony on this subject pursuant to Fed. R. Civ. P. 30(b)(6). Instead, Plaintiffs resort to nitpicking what are minor distinctions between ███████████████████████████████ ██████████████████████████████████████████). But Ms. Haynes's

declaration leaves room for such minor distinctions because she states clearly that ██████████ ████████████████  Ms. Haynes's declaration therefore is far from the "unusual" scenario of a "sham" affidavit, where a witness "directly contradict[s] her earlier deposition testimony." *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014) (quotations omitted).

### E.    Ms. Haynes's Corrected Declaration Has Been Accepted By The Court

Plaintiffs' argument that Ms. Haynes's declaration is not evidence because it was not signed or dated (Mot. 7) is moot.  On January 25, 2022, with Plaintiffs' consent, the Court accepted Ms. Hayne's corrected declaration, ruling it "will refer to it, not the unsigned version."  Dkt. 661.

## II.    NO PORTIONS OF THE SCHAPIRO DECLARATION SHOULD BE STRICKEN

### A.    Mr. Schapiro's Declaration Is Not "Attorney Argument"

In ¶¶ 10-12 of his December 20, 2021 Declaration, Mr. Schapiro provides a straightforward summary of evidence produced in discovery regarding Plaintiffs' alleged ownership of the works-in-suit.  As he explains, his sources are: (1) "Plaintiffs' declarations"; the (2) "copyright registration certificates submitted by Plaintiffs"; and (3) "the works as identified by Plaintiffs." Schapiro Opp. Decl. ¶¶ 10-12.  Plaintiffs do not challenge any of this evidence as inadmissible, or any information in these paragraphs as inaccurate, confirming that the declaration is merely a vehicle to identify relevant evidence to the Court.

Rather than requiring the Court to sift through thousands of copyright registration certificates and more than 200 pages of fact declarations to cross-check Plaintiffs' claims of ownership, Mr. Schapiro summarizes and appends relevant portions of Plaintiffs' evidence to aid the Court's review.  This is not "attorney argument."  *See Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y 2016) ("it is well established that an attorney's affidavit can be used,

11

in connection with a summary judgment motion, [to make] summaries of evidence in the record")
(quotations omitted); *Ada Liss Grp. (2003) Ltd. v. Sara Lee Corp.*, 2013 WL 9637196, at *5
(M.D.N.C. Sept. 3, 2013) (accepting attorney's summaries as "an organizational guide for the
Court as to relevant facts to consider with regard to the surrounding issues in Plaintiff's pending
motion for partial summary judgment"). Charter is not aware of any other means by which the
Court could conveniently compare and calculate the number of works with open ownership
questions. And although Plaintiffs do not specify an argument, "some degree of characterization
of attached documents is permissible" on summary judgment. *Gasser v. Infanti Int'l, Inc.*, 2008
WL 2876531, at *7 (E.D.N.Y. July 23, 2008).[7]

### B.   Shapiro Exhibits H-2, H-3 And H-4 Are Proper FRE 1006 Summaries

Exhibits H-2, H-3 and H-4 of Mr. Schapiro's December 20, 2021 declaration are all
admissible FRE 1006 summary exhibits. Plaintiffs offer no arguments specific to Exhibits H-2,
H-3 or H-4, merely stating they are not admissible for the "same reasons" as Exhibit F to Mr.
Schapiro's November 15, 2021 declaration. Plaintiffs are wrong.

Exhibit H-2 lists 207 musical compositions for which Plaintiffs' declarants aver a
contractual relationship with the author of the work. Schapiro Opp. Decl. ¶ 10. Exhibit H-3 lists
23 sound recordings for which Plaintiffs' declarants purport to establish chain of title between the
Plaintiff and claimant. *Id.* ¶ 11. Exhibit H-4 lists 22 sound recordings for which the copyright
registration certificates identified by Plaintiffs for the works do not list the asserted work or
expressly exclude the asserted work. *Id.* ¶ 12. Plaintiffs do not dispute the accuracy of any of this

---

[7]   Unlike *Sony v. Cox*, Plaintiffs do not identify any testimony where Mr. Schapiro "interpret[s]
and analyze[s]" the materials at issue. *Contra* Mot. 8-10.

information, nor identify any missing elements necessary for FRE 1006 summaries.

Plaintiffs' procedural challenges are unavailing. Mot. 10. While Plaintiffs argue that the exhibits lack adequate foundation, Mr. Schapiro states that the information is based on "personal knowledge" (¶ 1) and describes their creation (¶¶ 10-12).[8] And while Plaintiffs complain that Mr. Schapiro is an attorney, courts routinely consider such FRE 1006 summaries at summary judgment where the materials could be admitted at trial through other means. *See, e.g.*, *Danielson*, 2021 WL 217706, at *7 (admitting FRE 1006 summary in attorney declaration on summary judgment); *Schmidt v. DIRECTV, LLC*, 2017 WL 3575849, at *8 (D. Minn. Aug. 17, 2017) (similar).

## III.   EXHIBIT A TO THE HALL DECLARATION SHOULD NOT BE STRICKEN

### A.   <u>Exhibit A To The Hall Declaration Has Been Authenticated</u>

To authenticate certain documents, Charter submitted a declaration from an Internet Archive employee who attests that two website printouts attached as Exhibit A: (1) are true and accurate copies of the screenshots attached; and (2) represent "archived files for the URLs and the dates specified" on the coversheet of each printout. Hall Opp. Decl. ¶ 6. This satisfies FRE 901.

As courts uniformly recognize, such a declaration from an Internet Archive employee satisfies FRE 901 regarding how a webpage appeared on a particular date. *See Marten Trans., Ltd. v. Plattform Advert., Inc.*, 2016 WL 1718862, at *2 (D. Kan. Apr. 29, 2016) (Internet Archive affidavit "is sufficient to authenticate the screenshots under Rule 901"); *Universal Church, Inc. v.*

---

[8]   *U.S. v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982) does not say that the foundation for a Rule 1006 summary "must" be established by the person who supervised its preparation (Mot. 10), but that such a person *can* lay a foundation. The only foundation requirement for a FRE 1006 chart is that the underlying documents be admissible and made available to the opposing party for inspection. *See, e.g.*, *U.S. v. Lewis*, 594 F.3d 1270, 1282 (10th Cir. 2010). In any event, Mr. Schapiro states he has personal knowledge of the facts in his declaration.

*Universal Life Church/ULC Monastery*, 2017 WL 3669625, at *3 n.7 (S.D.N.Y. Aug. 8, 2017).[9]

While Plaintiffs concede that Mr. Hall's declaration authenticates "how the webpages were captured" and preserved, they now argue—without authority or explanation—that it still does not establish the webpages are "what [they] claim[] to be." Mot. 11. Plaintiffs are wrong, and courts have rejected this exact argument. *See Abu-Lughod v. Calis*, 2015 WL 12746198, at *2 (C.D. Cal. May 20, 2015) (affidavit verifying "unaltered copy of a website as it appears on a given day is sufficient to authenticate"); *Shell v. Henderson*, 2013 WL 2394935, at *9 n.15 (D. Colo. May 31, 2013) (treating printout as "a true and accurate copy of what the Internet Archive reports when queried for the website and date in question"); *Foreword Mag., Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) (Internet Archive has "sufficient indicia of reliability").

### B.  Exhibit A To The Hall Declaration Is Not Inadmissible Hearsay

Exhibit A contains statements "made by a person whom the party authorized to make a statement on the subject." FRE 801(d)(2)(c). These documents were issued by CCI *on behalf of the participating members of CAS*, including Plaintiffs. Dkt. 601-20 (press release: "the companies and associations collaborating on the framework include … Universal Music Group Recordings, Sony Music Entertainment, [and] Warner Music Group"). Exhibit A thus is nonhearsay.

Separately, Exhibit A is admissible to prove the *fact* that certain statements appeared on CCI's website on a certain date—regardless of whether the statements are true. *See Powers v. Emcon Assocs., Inc.*, 2017 WL 2718476, at *5 (D. Colo. June 23, 2017) (LinkedIn profiles not hearsay because not used for the truth of the matter asserted). These documents show that

---

[9]  The Court may also take judicial notice of Exhibit A. *See Marten Trans.*, 2016 WL 1718862, at *3-4; *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 967 (D. Minn. 2018).

participants in the CAS program *represented to the public and to the ISP industry*, including to Charter, that the CAS program was a set "best practices" with a cornerstone of customer education. The fact that the websites publicly made such statements is not hearsay.

Exhibit A alternatively satisfies the residual hearsay exception because it is supported by sufficient guarantees of trustworthiness. FRE 807. Plaintiffs do not dispute that (1) these statements were made at the time by CCI on its website, (2) they were endorsed by Plaintiffs and other rightsholders, or (3) the factual statements made are independently corroborated by deposition testimony. *See, e.g.*, Dkt. 601-3 (Lesser Tr.) 45:5-48:4, 54:4-21, 59:1-17; Dkt. 601-5 (Sheckler Tr.) 69:2-70:24, 74:8-76:21; *see also* Dkt. 634 at 12 & n.9 (addressing CCI website).

**CONCLUSION**

WHEREFORE, Charter respectfully requests that the Court deny Plaintiffs' motion to strike portions of the declarations of Mary Haynes, Andrew Schapiro and Duncan Hall.

Dated: February 9, 2022

Respectfully submitted,

*/s/ Andrew H. Schapiro*

Charles K. Verhoeven
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email: charlesverhoeven@quinnemanuel.com

Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400 (telephone)
Email: andrewschapiro@quinnemanuel.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
Email: melkin@winston.com

Craig D. Joyce
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
(303) 830-2400 (telephone)
Email: cjoyce@fwlaw.com

*Counsel for Charter Communications, Inc.*