IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., *et al.*,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

## I.      INTRODUCTION

The parties in this case have filed their respective motions for sanctions arising out of potentially relevant evidence that was lost prior to the filing of this lawsuit. ECF 592 [Plaintiffs' Motion for Spoliation Sanctions][1]; ECF 593 [Charter's Motion for Curative Measures and Sanctions for Plaintiffs' Spoliation of Evidence]. Thankfully, neither party seeks dismissal of the other's claims or defenses, nor do they seek monetary penalties. Rather, they each seek relief at trial in the form of (1) precluding the other side from challenging what the missing evidence would have shown (Plaintiff's request); (2) precluding the other side from presenting "re-created" evidence of illegal music downloads (Defendant's request); (3) presenting evidence that the other side failed to preserve relevant documents (Defendant's request); and (4) instructing the jury on

---

[1] The Court notes that at ECF 681/689, Plaintiffs also move to strike portions of the declaration of Dan Vasey that Defendant attached to its Response (ECF 633) to their Motion for Spoliation Sanctions. Because that Motion was not referred, I do not include it in this ruling. However, the Court has reviewed the motion, and it would not change the outcome. The same is true regarding missing source code that has recently been discovered by Plaintiffs' vendor and produced to Defendant.

the other side's spoliation of evidence (both Plaintiff and Defendant), including telling the jury (a) that the missing evidence would have been unfavorable to the spoliating party (both Plaintiff and Defendant) and/or (b) it may consider the failure to preserve evidence in evaluating witness credibility and making fact determinations (Defendant's request).

Both Judge Jackson and I have recounted the facts of this case numerous times, and I will not further clutter the docket except to note that Plaintiff contends that Defendant, an internet service provider, permitted its customers to illegally download Plaintiffs' music, an "indirect copyright infringement" theory under 17 U.S.C. § 504. In short, Plaintiffs contend they provided hundreds of thousands of notices of such customer infringement ("infringement notices") to Defendant, and Defendant either did nothing, or did not do enough, to stop these downloads.

It is undisputed that both sides, either directly or indirectly, lost, deleted, failed to preserve, or otherwise spoliated data and documents that would have been relevant to either a claim or defense in this case. The questions I find relevant to their motions are (1) is the loss of information materially prejudicial to the complaining party (a necessary proof, *Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017)); (2) is there any culpability associated with the respective losses (court must find "bad faith" before approving an adverse inference, *id.* at 965)); and (3) would granting the requested relief result in a sideshow, a trial within a trial, or otherwise distract the jury from the truly important issues of fact and law that this case engenders. As addressed below, I find a practical equilibrium between the parties as to (1) and (2). Because that is so, and because (3) is a consideration uniquely pertinent to a trial judge, which I will not be in this case, Judge Jackson should either permit the parties to slug out spoliation at trial by presenting their respective positions (and including the relevance of those positions in

the jury instructions) or exclude the concept altogether and try the case solely on the claims and defenses.[2]

## II.    PLAINTIFFS' MOTION

Plaintiffs reference two types of alleged spoliation by Defendant. First, Defendant deleted the emails of relevant document custodians. Second, Defendant deleted millions of infringement notices that form the foundation of Plaintiffs' allegation of knowing refusal to stop illegal downloads.

### A.    Deletion of Emails

It is undisputed that in December 2018, Defendant deleted relevant emails of eighteen or nineteen custodians. Plaintiffs allege that the genesis of the deletions was as follows: (1) in December 2015, a company called Mingus Music Werkshop put Defendant on notice of claims of indirect infringement; (2) Defendant instituted a litigation hold (the "Mingus Hold"); (3) in March 2016, Plaintiff Universal Music Group (UMG) put Defendant on notice of the claims in this lawsuit; (4) Defendant has asserted the Mingus Hold thereupon extended to the litigation hold associated with UMG (although Plaintiffs contend no internal defense documents support this claim); (5) in the 2016-17 timeframe, Defendant migrated the custodian of its legal hold(s) from a company called Salesforce to another called Proofpoint; (6) that migration did not adequately instruct Proofpoint to segregate and preserve the Mingus Hold documents (and, by extension, Defendant's other "holds"); and (7) in December 2018, allegedly intending to delete emails held by Proofpoint that were no longer subject to any hold, many of the Mingus Hold documents were deleted.

Plaintiffs assert, and I find, that emails of very relevant witnesses were deleted. Those emails would have contained discoverable information. But I believe two infirmities render this

---

[2] In this Recommendation, I will suggest one specific element of relief for each side that would not involve burdening the jury with the legal concept of spoliation.

deletion not susceptible to harsh judicial remedies, at least at the pretrial stage. First, I find material issues of fact concerning Defendant's culpability. At this stage, Plaintiffs have not established calculated wrongdoing by a preponderance standard. *See Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015) (discussing burden). And I believe such calculation is necessary to justify sanctions. *E.g.*, *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003) ("Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.") (citing BLACK'S LAW DICTIONARY 1401 (6th ed.1990)). Some emails were preserved, some not. If the effort was deliberate, Defendant was a very sloppy malefactor. At worst, Plaintiff *has* established Defendant's negligence and/or preservatory incompetence in retracing the steps of the deletion of alleged "held" documents and Defendant's failure to be transparent in addressing these deletions during the early stages of this litigation. By that time, of course, the damage had been done pre-suit. I do not see this latter circumstance to warrant any remedy that the Court (either through Judge Jackson, Special Master Rodriguez, or myself) has not already imposed.

Second, again at this stage, Plaintiffs have not established material prejudice. As I note above, the emails of important fact witnesses were lost. But Plaintiffs have not convinced me that the emails that *do* remain (I believe hundreds of thousands or millions of them) do not paint a full picture. Do I believe the missing emails would add some color or scenery to the intricate picture (whatever it shows) Plaintiffs already have? Probably. And it is true that we don't know what we don't know, so I understand Plaintiffs' frustration in being required to prove what might or would have been in those emails. The discovery in this case has been colossal, probably beyond proportional, and I cannot conclude on this record that Plaintiffs are materially prejudiced by the missing information.

**B.      Deletion of Infringement Notices**

When Defendant received an infringement notice, it used a system called CATS (Charter's Abuse Tracking System) to create a ticket for the notice and query Defendant's systems to identify the subscriber whose internet protocol (IP) address the notice referenced. CATS information is important to Plaintiffs (or anyone claiming indirect copyright infringement) because the notices may establish Defendant's knowledge of the scope of the problem, and more specifically because the volume of notices may establish whether Defendant should have engaged in efforts (or more efforts) to restrain its customers. CATS had a one-year retention instruction. CATS data also permits the Plaintiffs to show the extent of Defendant's customers who are repeat infringers, an element important to the Plaintiffs' substantive and damages claims.

Defendant received legal notices in 2012 (unrelated to this case) (the "Rightscorp Hold") prompting Defendant to create a legal hold, including CATS data. Plaintiffs state the Rightscorp Hold was never lifted; Defendant admits it has no record of it ever being lifted. Defendant does state that as early as November 2013, CATS was instructed to revert to its pre-hold document retention instruction. Defendant acknowledges that until the Mingus Hold in 2015, Defendant was not preserving CATS data. Defendant does not deny Plaintiffs' allegation that CATS data from 2011-April 2014 has been lost. Plaintiffs were sending infringement notices to Defendant during this time period that therefore have been lost. Plaintiffs state that this loss of data means that only 13% of the notices Plaintiffs sent to Defendant have been preserved.

In response, Defendant argues primarily that it had no legal duty *to Plaintiffs* to preserve the referenced CATS data. Its Rightscorp Hold did not relate to the Plaintiffs' claims here. At least as regards the Plaintiffs in the present case, they themselves state, in response to Defendant's motion for spoliation sanctions, that "Charter fails to show—and cannot show—that Plaintiffs reasonably anticipated litigation until [January 2016]." Resp. at 2, ECF 632. If Plaintiffs did not reasonably anticipate litigation, they cannot hold Defendant to a different standard. Indeed, later

in that response brief, Plaintiffs acknowledge the following: "On December 17, 2015, a jury in *BMG v. Cox* found Cox contributorily liable for its subscribers' infringements of musical works on P2P networks. . . . That case was the first of its kind to establish the liability of an ISP for such claims." *Id.* at 7. I cannot see how Defendant would have reasonably anticipated litigation, and thus been under a legal obligation to preserve documents, for a potential liability theory that had never been successful.

Nevertheless, I believe Plaintiffs have established the data was lost, it is material, and as a consequence, Defendant should be precluded from disputing, at least, the numerosity of the infringement notices that Plaintiffs reasonably establish occurred during the period of time for which such notices have been lost. I also believe Plaintiffs should be permitted to put on evidence that Defendant lost the CATS data, that the loss of information has prevented Plaintiffs from determining the extent of repeat infringement, and that the loss of information has hindered Plaintiffs' ability to show the revenue Charter earned from repeat infringers. I do not view these as sanctions for spoliation, but rather as necessary for context for the jury to evaluate Plaintiffs' claims, and I do not recommend that Plaintiffs be permitted to introduce this evidence in the context of a spoliation allegation unless, of course, Judge Jackson determines that spoliation will be an appropriate line of inquiry at the trial.

## III.    DEFENDANT'S MOTION

The crux of Defendant's motion is that Plaintiffs contracted with two vendors to "scan peer-to-peer ('P2P') networks for suspected copyright infringement and generate millions of notices to ISPs." Mot. at 1, ECF 593. From 2012-2015, these venders were supposed to create a paper trail (a chain of custody of sorts) for each notice of violation, to prove (someday) that a specific work belonging to one of the Plaintiffs was the actual product of copyright infringement by ISP customers. The forensic foundation of this effort was the creation of a digital "hash" (or fingerprint) for the infringed work and tracking that hash to the various IP addresses that

downloaded it. The vendors would then track the offending IP addresses to the ISP who provided their internet service and send an infringement notice to the ISP. There are over 700,000 of such notices to Defendant that underlie this lawsuit.

Whether through the vendors' violation of their contracts with Plaintiffs, or by knowing participation from Plaintiffs, the paper trail for most of the 700,000+ notices no longer exists. The missing information includes (1) audio files of the actual works in suit; (2) verification from one vendor to the other that Plaintiffs' works were illegally downloaded; (3) records by one vender of "suspected" copyrighted works that were never verified as copyrighted; (4) source code used by one of the vendors for "file verification"; and (5) emails of the former director of strategy accounts at one of the vendors, this person having been closely involved in the infringement notice program. According to Defendant, this substantially hinders its ability to verify the reliability of the Plaintiffs' notices of infringement, the thought being that, while Defendant admits it received over 700,000 notices, it does not know whether those notices were proof of actual copyright infringement by its customers. Defendant blames this loss of information on Plaintiffs' failure to send a litigation hold to the vendors (although it did send one vendor a hold very late in the process, in July 2018, more than two years after one of the Plaintiffs sent a litigation demand to Defendant). Plaintiffs admit this. Moreover, Defendant contends that after the *Cox* verdict, it dawned on Plaintiffs that they actually needed the information the vendors regularly discarded, so in 2016, Plaintiffs instructed its vendors to recreate what the paper trail would have shown during the 2012-2015 period (the "2016 Download Project"). Defendant contends Plaintiffs cherry-picked the information it sought to recreate to make sure only evidence that would support its theory was generated. Bottom line for Defendant: Plaintiffs will rely on all 700,000+ notices of infringement, although a forensic paper trail exists for less than one-third of those notices.

Plaintiffs have several responses. First, they claim they did preserve relevant information, and the fact that "Charter wishes more information was saved does not render the preservation

steps unreasonable." Resp. at 14-15, ECF 632. Plaintiffs state that the vendors preserved all information required by the contracts, albeit not the information Defendant alleges they should have saved. The Master Agreement between Plaintiffs and the vendors required them to "keep back-up copies of the evidence for as long as reasonably required for taking and pursuing legal actions," and "to assist RIAA in litigation cases."  It also covered "all evidence collected . . . for [the Plaintiffs] in relation to any [P2P] network, web service, internet file sharing platform or any internet infringement." Mot. at 2, ECF 593.

Second, and as noted above, Plaintiffs contend that not until January 2016, after a jury found an ISP liable for indirect copyright infringement, did they reasonably anticipate litigation. Third, they contend Defendant is not materially prejudiced by the absent information, because Defendant has actual information that is the practical equivalent of non-retained data, and the 2016 Download Project confirmed the accuracy and factual foundation for Plaintiffs' notices of infringement.

In my view, the essence of this dispute is a difference of opinion concerning what is relevant for purposes of preserving documents in anticipation of litigation. I do agree with Plaintiffs that prior to December 2015, I cannot say that they, or Defendant, should have had a reasonable anticipation of litigation for an indirect copyright infringement case. But even if they had such a reasonable anticipation, or even if some documents were not preserved after December 2015, the sides simply disagree on the materiality of the lost information. At the very least, Defendant has not met its burden of proof of establishing malfeasance. Moreover, the loss of the vendor's employee's emails does not provide any basis for a remedy. Plaintiffs establish that many of this person's emails have been produced, Defendant (as with Plaintiffs concerning the lost custodians' emails) does not prove material prejudice, and in any event, Defendant does not focus on this issue but merely references it in passing. That said, I agree Defendant should be permitted to introduce evidence of the missing information at trial, if for no other reason than to attack the

weight the jury should accord Plaintiffs' proof of actual copyright infringement by Defendant's customers, but this should not be articulated to the jury as "spoliation" of evidence.

## IV.    CONCLUSION

Defendant should be precluded from disputing the numerosity of the infringement notices that Plaintiffs reasonably establish occurred during the period of time for which such notices have been lost by Defendant. Plaintiffs should be permitted to put on evidence that Defendant lost its CATS data, that the loss of such information has prevented Plaintiffs from determining the extent of repeat infringement, and that this has hindered Plaintiffs' ability to show the revenue Charter earned from repeat infringers. Defendant should be permitted to introduce evidence of the missing forensic paper trail for purposes of attacking the weight the jury should accord Plaintiffs' proof of actual copyright infringement by Defendant's customers. In all other respects, I do not find either party has carried its respective burden of proof, on the current record, for the imposition of sanctions, particularly regarding adverse jury instructions. I leave it to Judge Jackson to decide whether the parties should be permitted to litigate, at trial, the alleged spoliation of evidence in this case, and whether they can meet their burdens of proof as to the requested sanctions.

For these reasons, I respectfully recommend Plaintiffs' Motion for Spoliation Sanctions [filed December 3, 2021; ECF 592/594] and Charter's Motion for Curative Measures and Sanctions for Plaintiffs' Spoliation of Evidence [filed December 3, 2021; ECF 593/595] be **granted in part** and **denied in part** as discussed herein.[3]

---

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after

DATED at Denver, Colorado this 4th day of March, 2022.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).