# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-00874-RBJ-MEH

**WARNER RECORDS INC.,** *et al.***,**

        Plaintiffs,

v.

**CHARTER COMMUNICATIONS, INC.,**

        Defendant.

_____

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF MOTIONS TO STRIKE**
_____

Charter's Oppositions (ECF 634 and 693, "Opp. 1" and "Opp. 2") to Plaintiffs' Motions to Strike (ECF 608 and 654, "Mot. 1" and "Mot. 2") ignore Tenth Circuit authority and mischaracterize the scope of the testimony at issue. Because that testimony attempts to introduce information and documents that are not admissible at trial, it must be stricken; Charter cannot avoid that result based on assurances that there will be admissible evidence down the road.

**I.    Ms. Haynes's Testimony About Subscriber Communications Is Not Made on Personal Knowledge and Is Inadmissible Hearsay.**

    **A.    Ms. Haynes has no personal knowledge.**

Charter admits that Ms. Haynes did not actually perceive the subscriber communications about which she testifies. *Compare* Mot. 1 at 3 *with* Opp. 1 at 2-3, Opp. 2 at 3-4. Binding Tenth Circuit precedent dictates that the Court therefore disregard this testimony: "[u]nder the personal knowledge standard, a[] [summary judgment] affidavit is inadmissible if the witness could not have actually perceived or observed that which [s]he testifies to." *Argo v. Blue Cross & Blue*

*Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006); *see also Savacool v. Weir Oil & Gas*, 2021 WL 4426955, at *4 (D. Colo. Sept. 27, 2021) (Jackson, J.) (same).

Charter argues that the Court should *infer* Ms. Haynes's personal knowledge of the communications from her position as Vice President of Charter's entire Network Security Operations division. Opp. 1 at 2-3; Opp. 2 at 3. But in *Pack v. Hickey,* the Tenth Circuit rejected this *exact* argument because the two cases on which Charter relies[1] inferred knowledge from the declarants' roles *and* "the nature of th[e] [declarants'] participation in the contested matters." 776 F. App'x 549, 555-56 (10th Cir. 2019). There, the affidavit of a CEO and Vice President was properly struck because it "was devoid of any indication that he *personally participated in*" the billing and hiring activities described in it. *Id*. (emphasis added). Likewise, Ms. Haynes does not aver that she personally participated in any of the communications to which she testifies, or even in immediate oversight of them. Mot. 1 at 3; Opp. 1 at 2-3; Opp. 2 at 3-4.

Charter also argues that personal knowledge may be established by educating Ms. Haynes through a "review of business records." Opp. 1 at 3; Opp. 2 at 3. But this Court has rejected that argument as inconsistent with *Argo*. *Tygrett v. Denver Water*, 2020 WL 6873953, at *1 n.1 (D. Colo. Nov. 23, 2020) (Hegarty, J.) ("in light of the *Argo* opinion," a party may not "'educate' a declarant and submit a declaration in support of a summary judgment motion").[2]

---

[1] *Pipkin v. Mortg. Creditcorp, Inc.*, 72 F.3d 138, at *4 n.5 (10th Cir. 1995) (unpublished); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)

[2] Charter also argues that Ms. Haynes "need not have been personally present on every call to possess personal knowledge of them," citing *Deere v. XPO Logistics Freight, Inc.*, 2019 WL 699112, at *3 (D. Colo. Feb. 20, 2019 and *Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1317 (8th Cir. 1996). Opp. 1 at 3; Opp. 2 at 3. No foundation has been laid that Ms. Haynes participated on *any* calls. And in any event, neither of Charter's cases support its argument. *See*

2

Case 1:19-cv-00874-RBJ-MEH Document 708 Filed 01/28/22 USDC Colorado Page 3 of 7

### B. The testimony about subscriber communications is inadmissible hearsay.

*The hearsay-within-hearsay still exists*. Charter attempted to cure the first layer of hearsay by offering an amended Haynes Declaration, "adding the words 'told Charter' to clarify the meaning." Opp. 1 at 5; ECF 650-1. This, of course, does not change the fact that *Charter's MSJ* still cites the Charter-subscriber communications for their truth. *See* ECF 549 at 3

████████████████████████████████████████████████████

*The second layer of hearsay (offered for the fact of the communications) is inadmissible.* Charter acknowledges that Ms. Haynes is relaying out-of-court oral reports from Ms. Stewart and Ms. Rowlett, but claims that "Ms. Stewart and Ms. Rowlett may also lay foundation for such materials at trial if necessary." Opp. 1 at 3 n.2. The Tenth Circuit rejected an identical proffer in *Johnson v. Weld County*. 594 F.3d 1202, 1209-10 (10th Cir. 2010) (rejecting request "to consider [out-of-court declarant's statements relayed in MSJ affidavit] because they could be replaced at trial by admissible evidence, namely their live testimony"). As *Johnson* instructs, Charter was required to come forward with admissible testimony *now*, at the summary judgment stage; it cannot sidestep that requirement via assurances that at trial it will be able to offer evidence that it failed (but was required to) bring forward now.

Charter also argues that the second layer of hearsay is "based on [Ms. Haynes's] review of the records in Exhibits B and C," which it claims qualify as business records. Opp. 1 at 3 n.2; Opp. 2 at 5-6. But Ms. Haynes's testimony is expressly based on many more communications

---

*Deere*, 2019 WL 699112, , at *3 (plaintiff "provide[d] no basis for [his personal-knowledge] accusation, and the Court [could] not supply one"); *Aucutt*, 85 F.3d at 1317-18 (plaintiff claimed court could not consider any "reasons for his termination" given in declaration by manager *who made the decision to lay off the plaintiff*).

3

than the 160 summarized in Exhibits B and C, Haynes Decl. ¶ 29-30—communications she

*testified* ███████████████████████████████████████████ Mot. 1 at 3.

## II. The Haynes "Summaries" Are Inadmissible For Multiple Reasons.

*First*, Charter acknowledges that the summaries lack a foundational sponsor, but argues that "a foundation could [] be set at trial." Opps. at 6. Again, the Tenth Circuit rejected this "hypothetical foundation" approach to summary-judgment evidence. *Johnson*, 594 F.3d at 1210 (*Celotex* prohibits "getting bogged down in a needless examination of the hypothetical ways the nonmoving party's evidence might be reduced to admissible form by the time of trial.") (cleaned up). *Second*, Charter claims the hearsay summaries are not offered for their truth. But both Charter's MSJ and its Response cite them as "demonstrat[ing] that Charter's efforts *were succeeding*," ECF 601 at 14, ECF 549 at 11, *not*, as Charter's Oppositions state, "*Charter's view* that its 'efforts were succeeding,'" Opp. 2 at 7 (emphases added).

## III. Ms. Haynes's Testimony About CAS Is Without Knowledge and Hearsay.

Conceding that none of Ms. Haynes's testimony about CAS is based on her actual perception, as *Argo* requires, Charter argues that she "may properly testify to *the company's* knowledge and understanding of the CAS program" gleaned from public documents. Opp. 1 at 8-9; Opp. 2 at 9. But Ms. Haynes testified not to *Charter's* understanding of CAS, or to what public documents say, but to subjects concerning which only CAS participants could have personal knowledge, including what the "participants in CAS recognized" (MSJ Decl. (ECF 549-1) ¶ 17, Opp. Decl. (ECF 601-13) ¶ 15), what constituted "the *primary* methods used by [] CAS" (MSJ Decl. ¶ 19, Opp. Decl. ¶ 17) or what was the "cornerstone" of CAS (MSJ Decl. ¶ 16, Opp. Decl. ¶ 14). And under *Argo*, Charter could not "'educate' [Ms. Haynes] and submit a

4

declaration in support of a summary judgment motion." *Tygrett*, 2020 WL 6873953, at *1 n.1. Charter also claims that "Ms. Haynes's does not relay *any* out of court statements." Opps. at 9. In fact, Ms. Haynes purports to report what the participants "endorsed," what they "announced," and how they "described" CAS. MSJ Decl. ¶ 14-15; Opp. Decl. ¶ 12-13; Mot. 1 at 9.

## IV. Ms. Haynes's Testimony that Charter's Processes ▮▮▮▮▮▮▮▮▮▮ Must Be Stricken as Inconsistent with Her Deposition Testimony.

Charter argues that Ms. Haynes's declaration is not contrary to her deposition testimony, because the declaration acknowledges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Opps. at 10-11. But that is beside the point. Plaintiffs seek to strike Ms. Haynes's specific testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. 1 at 10 (emphasis added). Charter makes no attempt to reconcile *that* testimony with Ms. Haynes's deposition, in which she testified Charter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. 1 at 9-11; *compare with* Opps. at 10-11. And Charter does not dispute that the three elements of the test for disregarding contrary affidavits are otherwise met here. *Id.*

## V. The Attorney Argument in the Schapiro Opp. Declaration Must Be Stricken.

The law in this District is clear that attorneys may not testify about contested factual matters or offer argument in summary-judgment declarations. Mot. 1 at 15. Charter does not dispute this, but claims the challenged testimony in the MSJ Declaration is "straightforward arithmetic." Opp. 1 at 14. This is contrary to Charter's own MSJ, which acknowledges that "the parties may disagree" about Mr. Schapiro's conclusions. ECF 549 at 18 n.8. Likewise, Charter claims Plaintiffs "do not specify an argument" in Mr. Schapiro's Opposition Declaration. Opp. 2 at 12. Plaintiffs in fact specified half a dozen argumentative paragraphs, which included lines

5

like "[b]ased on the declarants' own statements, chain of title is not established." Mot. 2 at 8.

**VI. The Schapiro Exhibits H-2 through H-4 Are Improper Rule 1006 Summaries.**

Charter admits there is no one available to testify to the accuracy or admissibility of the Schapiro summary Exhibits H-2 through H-4, but argues that "the materials could be admitted at trial through other means." Opp 1 at 14; Opp. 2 at 13. Again, the Tenth Circuit instructs not to "examin[e] hypothetical ways the nonmoving party's evidence might be reduced to admissible form by the time of trial." *Johnson*, 594 F.3d at 1209-10; *see also* 6 Weinstein's Federal Evidence § 1006.05 (2021) ("it is very difficult to authenticate the [] summary, [] or to establish its accuracy, without calling as a witness the person who is responsible for its preparation").

**VII. The Wayback Printouts (ECF 549-7-8, 601-20) Must Be Stricken.**

Charter concedes that the only evidence authenticating the Wayback printouts is that they are "archived files for the URLs and the dates specified." Opp. 2 at 13. But Charter does not offer the printouts for the mere fact that the screenshots appeared at the given URL on the given date; it claims the information at the captured URL constitutes a CAS press release and fact sheet containing statements by or on behalf of Plaintiffs that CAS was a set of best practices. *E.g.*, ECF 549 at 8, 601 at 3, 650 at 4. On that, Charter has offered no evidence that the screenshots are what Charter says they are.[3] They are therefore not authenticated. Fed. R. Evid. 901; *Shell v. Henderson*, 2013 WL 2394935, at *9 (D. Colo. May 31, 2013 (assuming screenshot "is a true and accurate copy of what the Internet Archive reports when queried for the website and date in

---

[3] Charter claims it can "lay the requisite foundation for the two exhibits at trial through Ms. Lesser," the Executive Director of the consortium that administered CAS ("CCI"), whom Charter deposed but did *not* ask about the Wayback Printouts. Opp. 1 at 12 n. 9. Charter's request that the Court accept this speculative foundation is foreclosed by *Johnson*. 594 F.3d at 1209-10.

6

question" and going on to address other authenticity issues for the underlying content); *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022) (requiring that "Wayback Machine content" be "*otherwise* authenticated") (emphasis added).

Charter argues that the Wayback printouts are not hearsay because they "were issued by CCI on behalf of the participating members of CAS, including Plaintiffs," Opp. 2 at 14, and thus qualify as non-hearsay statements "made by a person whom the party authorized to make a statement on the subject," Fed. R. Evid. 801(d)(2)(C). But Rule 801 requires independent proof of such authority. *Id*. ("The statement must be considered but does not by itself establish the declarant's authority under (C)"). There is no evidence that CCI was authorized by Plaintiffs to state, *on Plaintiffs' behalf, specifically*, that CAS was a "best practice." Indeed, in the very same document, Plaintiffs' trade organization used a different label: "fresh approach."

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motions to Strike.[4]

Dated: February 23, 2022

Matthew J. Oppenheim
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com

*/s/ Jonathan M. Sperling*
Jonathan M. Sperling
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
*Attorneys for Plaintiffs*

---

[4] Charter's procedural objections to these motions are meritless. Opps. at 1. First, a motion to strike is the correct procedure to challenge summary-judgment affidavits that violate Rule 56(c)(4). *E.g.*, *Noblett v. Gen. Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir. 1968). Second, such motions, like Plaintiffs', are brought under Rule 56(c)(4) and therefore not subject to the meet-and-confer requirement. L.R. 7.1(b)(3). And third, filing a motion to strike a summary-judgment affidavit concurrently with a summary-judgment response is not untimely under any rule. *E.g.*, *Fuller v. Old Dominion Freight Line, Inc.*, 2018 WL 2335696, at *2 (D. Colo. May 23, 2018) (Jackson, J.) (granting motion to strike filed day after summary-judgment reply).

7