IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No 19-cv-00874-RBJ-MEH

WARNER RECORDS INC., et al

    Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

ORDER ON PLAINTIFFS' MOTIONS TO STRIKE

---

Plaintiffs' move to strike materials attached to defendant's motion for summary judgment and defendant's response to plaintiffs' partial cross-motion for summary judgment, ECF Nos. 608 (public entry 624) and 654 (public entry 663). For the reasons discussed below, those motions are GRANTED in part and DENIED in part.

## I.    BACKGROUND

Briefly, plaintiffs are a collection of record companies and music publishers that produce and distribute commercial musical compositions and sound recordings. Defendant Charter Communications, Inc. ("Charter") is an internet service provider. Plaintiffs allege that Charter has facilitated subscribers' pirating of plaintiffs' copyrighted works.

## II.    STANDARD OF REVIEW

"Motions to strike are disfavored, particularly in the context of motions for summary judgment." *Lobato v. Ford*, 2007 WL 2593485 at *11 (D. Colo. Sept. 5, 2007). To be

1

considered on a motion for summary judgment, evidence must be admissible. *See L. Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009). A summary judgment affidavit must "be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). While the parties "need not produce evidence in a *form* that would be admissible at trial," "the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995) (emphasis in original) (internal quotations and citations omitted).

"Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotations omitted).

"Courts may disregard an otherwise proper affidavit if the court first determines that the affidavit's purpose is to create a sham issue of material fact, but there is no authority to disregard the affidavit simply because it contradicts an affiant's prior sworn testimony." *Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, n.4 (D. Colo. 2020). To determine if an affidavit creates a sham fact issue, courts consider whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir.2001).

### III.     ANALYSIS OF MOTIONS TO STRIKE

**A. <u>Haynes Declarations</u>**

Mary Haynes, Charter's head of security, submitted two declarations with which plaintiffs take issue: a declaration in Support of Charter's Motion for Summary Judgment (Haynes Declaration) and a declaration in Support of Charter's Response to Plaintiffs' Partial Motion for Summary Judgment (Haynes Opposition Declaration). Plaintiffs argue that substantial portions of the declarations and their attachments should be stricken because they would not be admissible at trial. Because the language objected to in both Haynes declarations is largely identical, I deal with both motions to strike as to Ms. Haynes' declarations in this section.

1. <u>Paragraphs 10, 30–35, and 38 of the Haynes Declaration and Paragraphs 8, 28–33, 36[1], 38, 39, 44, and 48 of the Haynes Opposition Declaration[2]</u>

In these paragraphs, Ms. Haynes testified about what subscribers to Charter said and felt regarding copyright infringement notices they received. ECF No. 608 at 2. Plaintiffs argue that Ms. Haynes' testimony on these points is inadmissible for two reasons: (1) Ms. Haynes had no personal knowledge of these communications because she did not hear them occur and only reviewed notes of the conversations, and (2) her testimony is hearsay or hearsay-within-hearsay because she is testifying about statements that customers made to Charter employees that those employees then relayed to her.

Defendant responds that Ms. Haynes had personal knowledge of the conversations because personal knowledge of these interactions can be reasonably inferred from her role as head of the security team for Charter. It argues that these paragraphs do not contain hearsay or

---

[1] Plaintiffs assert that paragraphs 8, 28–33, and 36 in the Haynes Opposition Declaration are identical to the paragraphs complained of in the Haynes Declaration. Defendants advance the same arguments regarding these paragraphs in the Haynes Opposition Declaration as they did in defense of the paragraphs in the Haynes Declaration.

[2] The motions unfortunately required a paragraph by paragraph and, at times, even a line by line review.

hearsay-within-hearsay because the statements are not being introduced to show the truth of the matter asserted. Ms. Haynes has submitted a second declaration to clarify the language at issue in this motion. *See* ECF No. 650-1.

  a. <u>Personal Knowledge</u>

  Ms. Haynes's declaration states that she was sufficiently involved with the Network Security Operations team to give her personal knowledge of the statements made in her declaration. The question is whether the knowledge she acquired as security officer could be legally sufficient to constitute "personal knowledge" for evidentiary purposes. I find that it could be.

  Ms. Haynes' position, and the knowledge she was able to acquire from it, is different than the situation in *Argo*, where the Tenth Circuit upheld the district court's decision to strike portions of an affidavit in support of a motion opposing summary judgment. 452 F.3d at 1200. There, the affiant testified that no female employees were fired during his employment at Blue Cross & Blue Shield. The affiant lacked personal knowledge to make this statement because "[a]s a co-worker, and not a human resources official, Mr. Argo simply was not in a position to acquire such comprehensive knowledge." *Id*. The court implied that blanket statements require that an affiant be in a position to acquire comprehensive knowledge about the subject matter. Unlike Mr. Argo, as the Senior Director in Charter's Network Security Operations in charge of the Network Security Operations team, Ms. Haynes was in a position to acquire comprehensive knowledge of statements customers generally made in response to receipt of notices of infringement. While she might not have seen the specific language of every such customer communication, she was in a position to understand general or common responses to these notices.

Plaintiffs complain that Ms. Haynes lacks personal knowledge for paragraphs 38, 39, 44 and 48 of the Haynes Opposition Declaration for the same reasons. For the same reasons discussed above, Ms. Haynes had personal knowledge of these statements about what Charter subscriber generally said to Charter security team members.

    b. Hearsay

On the issue of hearsay and hearsay-within-hearsay, Charter claims the statements at issue are not hearsay because they are being introduced to show the effect that these subscriber statements had on Charter and not for their truth. Plaintiffs counter that these are statements that Charter subscribers made to Charter employees (the first layer of hearsay), and that Charter employees then relayed to Ms. Haynes (the second layer of hearsay), who then asserted them in her declaration for their truth.

On the first layer of hearsay, these statements are not being asserted for their truth. Ms. Haynes says that subscribers told Charter that they were unaware of any infringing activity occurring on their accounts. Ms. Haynes does not seek to prove that the customers actually were unaware of the infringing activity; she is attempting to show the effect that these statements had on Charter. Whether or not subscribers were unaware of the infringing behavior, statements that subscribers were unaware could have impacted the way that Charter responded to notices of infringement.

On the second layer of hearsay, plaintiffs complain that Ms. Haynes only learned of these subscriber statements from the out-of-court statements of her subordinates. Defendant asserts that though Ms. Haynes testimony is based on oral reports from subordinates, these statements are likewise not being asserted for their truth. I agree. Ms. Haynes is not necessarily asserting that the statements of her subordinates about subscribers' responses to infringement notices were true. Rather, the statements relayed by her subordinates impacted Charter. These statements in

ECF Nos. 549-1 as amended in ECF No. 650-1 and 657-1 need not be stricken. The same applies to statements in paragraphs 38, 39, 44 and 48 of the Haynes Opposition Declaration.

    2. <u>Exhibits B and C of the Haynes Declaration and Exhibits B, C, and D of the Haynes Opposition Declaration[3]</u>

Rule 1006 states that summaries are permissible when voluminous evidence "cannot conveniently be examined in court," and when the evidence upon which the summary is based is made available to the other parties at a "reasonable time and place." Fed. R. Evid. 1006. A proper foundation for a summary exhibit can be laid through the testimony of the witness who supervised preparation of the exhibit. *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982).

Plaintiffs claim that Exhibits B and C, which are attached to both declarations, and Exhibit D, which is attached to the Haynes Opposition Declaration, should be stricken because they purport to summarize documents but do not meet the requirements for Rule 1006 summary evidence. These exhibits contain charts with a "sample" of direct statements that Charter received from subscribers after being informed that they were engaging in infringing activity. Plaintiffs argue that (1) no witness who supervised the preparation of the exhibits has laid the foundation for the summary exhibits; (2) there is no foundation for the admissibility of the exhibits, particularly because the exhibits contain two levels of hearsay; (3) these exhibits summarize documents and evidence that are inappropriate for summarization; and (4) the exhibits are argumentative and presented in a misleading manner. ECF No. 608 at 5–7. Defendant responds that (1) foundation on preparation can be supplied at trial, and Ms. Haynes will submit a supplemental declaration addressing this issue; (2) the statements in Exhibits B and

---

[3] Plaintiffs assert and defendant does not dispute that Exhibits B and C in the Haynes Opposition Declaration is identical to Exhibits B and C in the Haynes Declaration.

C have a foundation for admissibility because they do not contain hearsay; (3) the documents and statements in Exhibits B and C are appropriate for summarization under Rule 1006's voluminous writings standard; and (4) Exhibits B and C are not misleading or inappropriate and accurately convey the contents of the voluminous materials. *See* ECF No. 634 at 6–7.

Ms. Haynes did not explain who supervised the compilation of these exhibits. *See* ECF Nos. 549-1, 601-13. Nor did she provide this foundational information in her amended declaration attached to the reply to Charter's motion for summary judgment as Charter indicated she would. *See* ECF No. 650-1. Though Charter argues that this foundation can be laid at trial, to be considered at the summary judgment stage, these documents needed to be shown to be admissible. Providing that a witness *could* be made available at trial to lay a foundation for this evidence is insufficient. Without any foundational sponsor or even the clear prospect of any foundational sponsor, the Court cannot consider these exhibits for purposes of Charter's motion for summary judgment, and they are stricken.

The same problem exists for Exhibit D to the Haynes Opposition Declaration. This exhibit contains "verbatim notes from calls in which a customer stated he or she suspected the source of the issue." ECF No. 657-1 at 13. However, Ms. Haynes does not indicate that she prepared Exhibit D, or who did prepare it. Her supplemental declaration likewise fails to identify a foundational witness.

Exhibits B and C to the Haynes Declaration and Exhibits B, C, and D to the Haynes Opposition declaration are stricken for lack of foundation.

3. <u>Ms. Haynes' Testimony Regarding the Copyright Alert System (CAS)</u>

The CAS was an agreement among various ISPs and leaders in the entertainment community to use a common framework for alerting subscribers that they were engaging in

copyright infringement. Ms. Haynes explained in her declaration that Charter was trying to follow best practices with its responses to notices of infringement by following the CAS, even though Charter was not a party to the agreements that created the CAS. *See* 549-1 at ¶¶14–20, 657-1 at ¶¶12–18.[4]

### a. Personal Knowledge

Plaintiffs argue that without Charter's being a party to the private CAS agreements, Ms. Haynes could not have had personal knowledge of CAS's requirements or what the parties' intent in entering those agreements was. However, Charter responds that as Senior Director in Charter's Network Security Operations in charge of the Network Security Operations team, Ms. Haynes would have been interested in these agreements and sought information about them, especially because she was tasked with creating and enforcing Charter's policies around infringement.

"An affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Argo*, 452 F.3d at 1200 (citations omitted). Ms. Haynes made some statements about the CAS agreements of which that she could not have had personal knowledge. For instance, Ms. Haynes could not have learned from any research about the CAS agreements that parties to the agreement *believed* that "the cornerstone of the CAS program was customer education," or that "it was based on data suggesting that once informed about the alleged content theft and its possible consequences, most Internet subscribers would take steps to ensure that the theft didn't happen again." ECF Nos. 549-1 at ¶16, 657-1 at ¶14. Ms. Haynes could not have personal knowledge of the parties' beliefs simply from press releases and other publicly

---

[4] Plaintiffs assert and defendant does not dispute that paragraphs 12–18 in the Haynes Opposition Declaration are identical to paragraphs 14–20 in the Haynes Declaration. As a result, this section applies to both the paragraphs in the Haynes Declaration and the paragraphs in the Haynes Opposition Declaration.

available materials.  Though a press release from a related organization, the Center for Copyright Information (CCI), listed some purposes and goals of the CAS agreements, ECF No. 634-2 at 5, Ms. Haynes could have no personal knowledge that this actually was the parties' purpose.  Ms. Haynes might have had personal knowledge of what parties or related entities have said the purposes and procedures of CAS were, but she had no personal knowledge that those statements were accurate.  Paragraphs 15, 16, 17, 19, and 20 in the Haynes Declaration and paragraphs 13, 14, 15, 17, and 18 in the Haynes Opposition Declaration are therefore stricken.

However, I decline to strike the entirety of paragraph 14 in the Haynes Declaration or corresponding paragraph 12 in the Haynes Opposition Declaration.  In the first sentence of those paragraphs Ms. Haynes asserts that Charter followed industry standards for best practices for dealing with copyright infringement.  *See* ECF Nos. 549-1 at ¶14, 657-1 at ¶12.  Ms. Haynes presumably had personal knowledge of the practices that Charter followed due to her position with the company.  In the second sentence, Ms. Haynes wrote, "[t]hese standards were endorsed by many copyright holders, including the Plaintiffs in this case."  *Id*.  Without explaining how she knows that plaintiffs here endorsed these methods, there is no reason to think that she has personal knowledge of the infringement enforcement practices that plaintiffs endorsed.  The second sentence of these paragraphs is stricken for lack of personal knowledge.

I decline to strike paragraph 18 in the Haynes Declaration and corresponding paragraph 16 in the Haynes Opposition Declaration.  In those paragraphs, Ms. Haynes wrote, "Charter's processes for addressing allegations of infringement were designed with CAS in mind and utilized the methods endorsed by CAS—namely, to reduce instances of alleged copyright infringement online through customer education and awareness, not termination."  ECF Nos. 549-1 at ¶18, 657-1 at ¶16.  Ms. Haynes would have had personal knowledge of how Charter

9

used what it knew about the CAS program in designing its own infringement policies. Further, Ms. Haynes could have had personal knowledge of the methods endorsed by CAS members generally, even if she could not have knowledge of the methods actually used by the parties to CAS. In the press release from the CCI discussing the CAS agreements and including quotations from members to the agreements, the methods CAS members intended to use and that they believed would be effective were listed and explained. *See* ECF 634-2 at 5.

    b. <u>Hearsay in Ms. Haynes Statements Regarding the CAS</u>

In the challenged paragraphs that were not stricken above, I have considered whether they are based on hearsay, as plaintiffs argue. In paragraph 14 and corresponding paragraph 12 there are no remaining statements that could contain hearsay. ECF Nos. 549-1 at ¶14, 657-1 at ¶12. As for paragraph 18 and corresponding paragraph 16, Ms. Haynes wrote that Charter considered the practices endorsed by the CAS program when developing its own infringement policy. ECF Nos. 549-1 at ¶18, 657-1 at ¶16. This, again, is admissible for the non-hearsay use of showing the effect that such a statement had on Charter. As a result of the endorsement, Charter decided to adopt what it considered to be substantially similar standards.

    4. <u>Ms. Haynes Statements that Charter Acted in Line with CAS Standards</u>

Lastly, plaintiffs argue that Ms. Haynes' statements indicating Charter's procedures were in line with CAS standards should be stricken as inconsistent with her deposition testimony. "Courts may disregard an otherwise proper affidavit if the court first determines that the affidavit's purpose is to create a sham issue of material fact, but there is no authority to disregard the affidavit simply because it contradicts an affiant's prior sworn testimony." *Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, n.4 (D. Colo. 2020). To determine whether an affidavit creates a sham fact issue, the court considers whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier

testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001).

Plaintiffs take issue with paragraphs 14 and 18 of the Haynes Declaration and 12 and 16 of the Haynes Opposition Declaration where she stated, "Charter's processes for addressing alleged copyright infringement on the Internet were designed to be in line with the widely accepted industry best practices at the time," and "Charter's processes for addressing allegations of infringement were designed with CAS in mind and utilized the methods endorsed by CAS— namely, to reduce instances of alleged copyright infringement online through customer education and awareness, not termination." ECF Nos. 549-1 at ¶¶14, 18; 657-1 at ¶¶12, 16. Actually, the deposition testimony cited by plaintiffs does not contradict Ms. Haynes' testimony in paragraphs 14 and corresponding paragraph 12. Though she indicated in her deposition testimony that Charter did not follow the exact requirements of the CAS program, that does not contradict the idea that Charter's infringement policies were "designed to be in line with the widely accepted industry best practices at the time." There is no indication that Ms. Haynes was attempting to create a sham fact issue with her statements in paragraph 14 or corresponding paragraph 12.

Nor do the statements in paragraph 18 and corresponding paragraph 16 contradict the deposition testimony cited by plaintiffs in their motions to strike. Ms. Haynes stated in her declaration that Charter's infringement enforcement used CAS-endorsed methods in that it focused on subscriber education and awareness rather than termination. In her deposition testimony, Ms. Haynes acknowledged that Charter did not use several of the CAS's preferred *procedures* to educate subscribers. *See* ECF No. 608 at 10. That is not inconsistent with Ms. Haynes declaration that Charter used the CAS *method* of piracy-reduction-through-education. If

11

Charter chose to educate its subscribers using postcards instead of internet pop-ups, its method of addressing infringement could still be in line with CAS methods—the method Ms. Haynes was referring to was education, not the use of any specific method of education.

     5.   <u>Ms. Haynes Initial Opposition Declaration was Unsigned</u>

Plaintiffs also argue that the Court should not consider the Haynes Opposition Declaration at all because it was not signed or dated. ECF No. 654 at 7. However, Charter filed an unopposed motion for leave to substitute the version of the Haynes Opposition Declaration that included the signature and date. *See* ECF No. 657. The Court, while mechanically unable to accept a substitution, granted the motion in part, stating that it would use the signed version of the Haynes Opposition Declaration (found at ECF No. 657-1) rather than the one originally filed (at ECF No. 601-13). *See* ECF No. 661.

**B.  <u>Mr. Schapiro's Declaration in Support of Charter's Motion for Summary Judgment (Schapiro Declaration)</u>**

     1.   <u>Exhibits B and C to Mr. Schapiro's Declaration from the Wayback Machine</u>[5]

Plaintiffs complain that Exhibits B and C attached to Mr. Schapiro's declaration must be stricken because they are screenshots from the "Internet Archive Wayback Machine," that have not been authenticated and that contain hearsay.

     a.   <u>Authenticity of the Exhibits B and C</u>

Though there is no Tenth Circuit case that directly addresses the requirements for authenticity of internet archive documents, courts in other circuits have rejected evidence from the Wayback Machine when the only evidence submitted were screenshots attached to an attorney declaration. *See Really Good Stuff, LLC v. BAP Invs.*, L.C., 2021 WL 2469707, at *10

---

[5] The Wayback Machine attachments, which I also refer to as screenshots or documents, are ECF Nos. 549-7 and 549-8.

12

(S.D.N.Y. June 17, 2021). However, those courts have accepted evidence from the Wayback Machine where the proponent submitted an affidavit from an employee from the archive testifying to the authenticity of the documents. *See Universal Church, Inc. v. Universal Life Church/ULC Monastery*, 2017 WL 3669625, at *3 n.7 (S.D.N.Y. Aug. 8, 2017).

Here, Charter submitted an affidavit from an employee from the Wayback Machine. *See* 634-2. That employee affirmed that Exhibits B and C are accurate copies of the records that the Wayback Machine maintained. *Id*. at 2. Plaintiffs respond that Charter must do more to authenticate these documents. They argue that because Charter says these screenshots are of "a CAS press release and fact sheet containing statements by or on behalf of Plaintiffs that CAS was a set of best practices . . . , it must also submit evidence that the screenshots are what Charter says they are." ECF No. 650 at 6.

I disagree. Just because Charter did not describe the contents of the documents in the way plaintiffs would have does not mean Exhibits B and C are not what Charter said they were, which is a press release and a fact sheet. Exhibits B and C have been sufficiently authenticated.

b. Hearsay in the Wayback Machine Documents

Plaintiffs argue that even if Exhibits B and C are authentic, they cannot be considered because they contain hearsay. Defendants respond that the documents are non-hearsay under Fed. R. Evid. 801(d)(2)(C)—the statements were made by a person whom the opposing party authorized to make a statement on the subject. However, Charter presents little evidence to indicate that the CCI, which issued the press release and fact sheet, was authorized to speak on behalf of plaintiffs in this case. It argues that the press release and fact sheet "were issued by CCI *on behalf of the participating members of the CAS*, which included the [p]laintiffs." ECF

13

No. 634 at 13 (emphasis in original). It attempts to support this assertion by explaining that the press release lists parties to the agreement, including Warner Music Group. *Id.*

The CCI is described in the press release itself as a collaboration between the entertainment and broadband business communities. ECF No. 549-7 at 4. It is described in the fact sheet as "a new information center dedicated to educating the public about copyright and helping to implement an unprecedented and constructive effort to stop online content theft." ECF No. 549-8 at 2. None of this indicates that any or all individual parties to the CAS agreements authorized CCI to speak on their behalf. Charter's primary argument seems to be that the Court can infer authorization from the fact that CCI made these statements about the CAS agreements. However, the fact that the statement was given is, without more, insufficient to show that plaintiffs authorized the CCI to speak on their behalf. Fed. R. Evid. 801(d)(2)(C). The only evidence Charter points to support its contention that CCI was authorized to speak on behalf of plaintiffs is the text of the documents themselves. This is insufficient to show authorization.

Charter also argues that these documents are not hearsay because they are not being introduced for their truth, but to show the fact that members of the CAS agreements made certain representations about those agreements to the public. Plaintiffs do not respond to this argument. *See* ECF No. 708 at 7. If introduced for this purpose, these documents would not be hearsay. However, that is not exactly an accurate portrayal of the documents. The documents do not show that members of the CAS agreements made certain representations about the agreements to the public. They show that the CCI made certain representations about the agreements to the public. I will only consider those exhibits for that limited non-hearsay purpose.

14

      2. <u>Exhibit F to the Schapiro Declaration</u>

Exhibit F summarizes copyright registration information for 71 works-in-suit contained in plaintiffs' amended complaint. Plaintiffs assert that Exhibit F to Mr. Schapiro's Declaration must be stricken because it is summary evidence that does not comply with the requirements of Fed. R. Evid. 1006. ECF No. 608 at 13–14. They assert that no foundation has been laid on the preparation of the document, and that even if Mr. Schapiro prepared the document, he could not lay its foundation because he is a lawyer in this case and therefore not available for cross examination. *Id*. Plaintiffs also argue that this exhibit should be stricken as hearsay. *Id*. Defendant responds that Mr. Schapiro did state that he participated in the preparation of the exhibit (he stated that all statements in his declaration were based on personal knowledge and made statements about how Exhibit F was prepared). ECF No. 634 at 13. It also argues that lawyers are routinely permitted to present summary evidence through their declarations at the summary judgment stage when the underlying materials would be admissible at trial. *Id*. at 14.

Rule 1006 states that summaries are permissible when voluminous evidence "cannot conveniently be examined in court," and when the evidence upon which the summary is based is made available to the other parties at a "reasonable time and place." Fed. R. Evid. 1006. A proper foundation for a summary exhibit can be laid through the testimony of the witness who supervised preparation of the exhibit. *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982).

If Mr. Schapiro prepared Exhibit F, he should have said so in his declaration. However, Charter argues that one can infer that Mr. Schapiro prepared Exhibit F because he testifies about its preparation in paragraphs eight and nine of his declaration, which show that he has personal knowledge of its preparation. Reading paragraphs eight and nine charitably, I agree with Charter. Mr. Schapiro states what information is contained in Exhibit F and from where that

15

information was obtained, which is not immediately obvious in Exhibit F itself. Considering that motions to strike summary judgment materials are disfavored, I find that Mr. Schapiro has laid a sufficient foundation for the admission of Exhibit F for purposes of Rule 1006.

Plaintiffs next argue that because Mr. Schapiro would not be available for cross examination on the preparation of Exhibit F, Exhibit F must be stricken. Under the Colorado Rules of professional conduct, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," with certain exceptions. Colo. R. Prof'l Conduct 3.7. Plaintiffs cite *Associated Int'l Ins. Co. v. Crawford*, 182 F.R.D. 623, 628 n.9 (D. Colo. 1998) for the proposition that "the lawyer trying the case should not testify, in person or by affidavit, concerning factual matters at issue, particularly when those facts are transformed into legal conclusions." The Court assumes that Mr. Schapiro will not serve as trial counsel. Otherwise, Charter would have, and should have, enlisted another individual to provide what amount to accounting-type information.

Plaintiffs next argue that Exhibit F should be stricken as hearsay. They claim that "Charter offers the summary for the truth of the matter asserted on the chart, but there is no admissible testimony regarding its contents." ECF No. 608 at 14. Charter did not respond. Based on inspection of Exhibit F, it does not appear to contain hearsay. All the data contained in that exhibit, according to the exhibit and Mr. Schapiro's declaration, comes from statements from plaintiffs and thus would be admissible as a statement of an opposing party. Fed. R. Evid. 801(d)(2).

    3. <u>Mr. Schapiro's Allegedly Argumentative Statements in Paragraphs Five Through Ten</u>

In paragraphs five through ten of the Schapiro Declaration, Mr. Schapiro explained the contents of several of the exhibits attached to his declaration. In paragraphs five through seven,

he explained what the number of works-in-suit would be—a calculation essential for assessing statutory damages—if the Court were to use a particular method of counting violations. Plaintiffs argue that Mr. Schapiro engaged in inappropriate argument in these paragraphs. Charter responds that Mr. Schapiro simply tabulated information contained in plaintiffs' interrogatory responses to save the Court from sifting "through over 250 pages of tables." ECF No. 634 at 14. I do not interpret these paragraphs as argumentative. Mr. Schapiro indicates what the number of works-in-suit would be based on data from the interrogatories and the First Amended Complaint if the Court were to count the violations in a certain way. ECF No. 549-5 at ¶¶5–7. Mr. Schapiro did not argue which approach to calculating the works-in-suit he believes to be correct or best. Plaintiffs do not assert that this computation is incorrect. *See* ECF No. 608.

In paragraphs eight and nine, Mr. Schapiro likewise did not engage in argumentation. Instead, he explained how the chart contained in Exhibit F was prepared, including where the data came from and how to read the chart. In paragraph ten, Mr. Schapiro provided his computation of the number of works-in-suit that were also registered as works-for-hire based on the copyright registrations produced by plaintiffs. He also explained how he arrived at that computation. Plaintiffs do not contest his calculation. *See* ECF No. 608. As was the case with paragraphs five through seven, Mr. Schapiro was not making improper argument, and the motion to strike is denied as to paragraph ten.

C. **Mr. Schapiro's Declaration in Support of Charter's Response to Plaintiffs' Partial Motion for Summary Judgment (Schapiro Opposition Declaration)**

Plaintiffs assert that Exhibit H-2 through H-4 to the Schapiro Opposition Declaration must be stricken because it is summary evidence that does not comport with the requirements of Fed. R. Evid. 1006. ECF No. 654 at 10. The arguments on this issue from both plaintiffs and

Charter are largely the same arguments raised regarding the admissibility of Exhibit F to the Schapiro Declaration. The Court's analysis is similar as well.

### D. **Mr. Hall's Declaration in Support of Charter's Response to Plaintiffs' Partial Motion for Summary Judgment (Hall Opposition Declaration)**

Mr. Hall is an employee at the Wayback Machine who provided an affidavit attesting to the fact that the screenshots from the Wayback Machine accurately reflects what appeared on those webpages on the dates requested. Plaintiffs argue that Exhibit A to Mr. Hall's declaration should be stricken because it contains inadmissible hearsay and because it has not been authenticated. Exhibit A to the Hall Opposition Declaration contains the same documents attached as Exhibits B and C to the Schapiro Declaration. They claim that Mr. Hall's declaration did not cure the problem that "Charter has still failed to introduce evidence that each webpage is what it is claimed to be." ECF No. 654 at 11 (internal quotations omitted). Plaintiffs also argue that the documents contain hearsay. Charter raises the same arguments in response that it did for Exhibits B and C to the Schapiro Declaration; namely that Mr. Hall's testimony as an employee of the archive is sufficient to authenticate the documents and that the documents do not contain hearsay, either because CCI was authorized to speak on behalf of plaintiffs or because the documents are not being introduced for their truth. *See* ECF No. 693 at 14.

For the same reasons articulated for Exhibits B and C of the Schapiro Declaration, Exhibit A to the Hall Opposition Declaration is sufficiently authenticated. Additionally, Exhibit A does not contain hearsay for the same reason articulated for Exhibits B and C of the Schapiro Declaration. While Charter has not shown that CCI was authorized to speak on behalf of plaintiffs, these documents could be introduced for a non-hearsay purpose. Charter argues that it seeks their introduction only to show the effect that the contents of these documents had on it

18

and others grappling with copyright infringement problems. The Court will consider Exhibit A for that limited non-hearsay purpose.

## ORDER

1. The motion to strike as to Charter's motion for summary judgment (ECF No. 608/624) is GRANTED as to the second sentence of paragraph 14 and paragraphs 15–17 and 19–20 of the Haynes Declaration (ECF No. 549-1). That motion is also GRANTED as to Exhibits B and C of the Haynes Declaration (ECF Nos. 549-3, 549-4).

2. The motion to strike as to Charter's response to plaintiffs' partial motion for summary judgment (ECF No. 654/663) is GRANTED as to the second sentence of paragraph 12 and paragraphs 13–15 and 17–18 of the Haynes Opposition Declaration (ECF No. 657-1). That motion is also GRANTED as to Exhibits B, C, and D of the Haynes Opposition Declaration (ECF Nos. 601-15, 601-16, 601-17).

DATED this day 12th of May, 2022

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge