IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER RECORDS INC., et al

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

---

# ORDER on PENDING MOTIONS (3)

---

This order addresses pending non-dispositive pretrial motions except Rule 702/Daubert motions. The background for this case has been summarized in several other orders and is not repeated here.

**A. Plaintiffs' Motion for Spoliation Sanctions, ECF No. 594 (592), and**

**B. Charter's Motion for Curative Measures and Sanctions for Plaintiffs' Spoliation of Evidence, ECF No. 595 (593).**

A hearing would not materially assist the Court in resolving the issues, and therefore, plaintiffs' request for a hearing is denied.

1. Plaintiff's Motion.

Plaintiffs assert that despite a March 23, 2016 notice of claims letter, Charter failed to implement a litigation hold. As a result, Charter permitted the deletion of "potentially relevant" emails of 33 custodians and attempted to conceal the failure. In addition, Charter deleted ticket data from the Charter Abuse Tracking System ("CATS"), resulting in plaintiffs' being able to

1

identify the infringing Charter subscriber for only 13% of plaintiffs' 704,355 notices of infringement. Plaintiffs ask the Court to sanction the alleged misconduct by precluding Charter from arguing at trial that it lacked knowledge of the accuracy of plaintiffs' infringement notices; precluding Charter from disputing the accuracy of plaintiffs' identification of repeat infringers; precluding Charter from disputing plaintiffs' extrapolation of information about unidentified subscribers from the ticket data that was produced; and instructing the jury that Charter spoliated evidence, and that they should infer that the missing information would have been unfavorable to Charter. *See* ECF No. 592 at 1-3.

Defendant responds that it took reasonable steps to preserve documents for anticipated copyright litigation such as plaintiffs' claims by issuing its "Mingus Hold" in December 2015. Some emails that were inadvertently deleted in December 2018 were available from other sources. Further, Charter claims that plaintiffs have no evidence that Charter intended to deprive them of relevant information, and that they are speculating that there is relevant evidence that plaintiffs do not have. ECF No. 633 at 1. Charter states that deletion of data from CATS was done pursuant to its regular retention schedule before the Mingus hold and Charter's notice of this litigation. *Id.* at 1-2.

In reply, plaintiffs claims that the Mingus Hold was only intended to apply to claims of Mingus Music Werkshop, not to plaintiff's claims; and that, in any event, Charter closed the hold when it failed to migrate the hold to its new legal hold system in 2017. Even if that failure was inadvertent, it shows that Charter did not take reasonable steps to preserve evidence. Plaintiffs dispute that lost emails were available through other sources. ECF No. 680 at 1-6. They assert that Charter acted with intent to deprive them of relevant information, and they argue that they were prejudiced if there was even a reasonable possibility that the lost evidence would have been

2

favorable to them. *Id.* at 6-7. Plaintiffs state that the CATS data was on hold as early as 2012, and that emails were preserved under that hold at least until 2017, i.e., they were on hold in 2016 when plaintiffs notified Charter of their claims. *Id.* at 8. They assert that they were prejudiced because they only received between 5.5 and 7.6 percent of the data, and statistical extrapolation by plaintiffs' expert is not as good as having the evidence in hand. *Id.* at 10.

2. Defendant's Motion.

Charter claims that in 2011 plaintiffs retained MarkMonitor, Inc. to scan peer-to-peer networks for suspected copyright infringement and to generate infringement notices to Internet Service Providers, ultimately for use in litigation. However, only "helpful fragments" of the MarkMonitor evidence were retained. Plaintiffs' effort to recreate missing evidence in 2016 was "no remedy." ECF No. 593 at 1-11. Charter claims to have been prejudiced, invoking the same "reasonable possibility" standard on which plaintiffs relied in their motion. *Id.* at 11-12. "At a minimum," the Court should preclude plaintiffs from presenting the materials created in plaintiffs' 2016 Download project; permit Charter to present evidence of plaintiffs' spoliation to the jury; and give an adverse inference instruction. *Id.* at 13-14.

Plaintiffs respond that MarkMonitor retained everything required by "relevant contracts" that was necessary for sending infringement notices. Plaintiffs did not attempt to recreate missing evidence in 2016. They deleted some documents "in ordinary course" and gathered other files with the same "hash" value as the infringing files as to which plaintiffs gave notice from 2012 to 2015. ECF No. 632 at 1-2. They claim that rulings in the *Sony v. Cox* case show that their retention efforts were reasonable. Moreover, there is no prejudice from deletion of the source code MarkMonitor used because Charter has copies of the actual files downloaded (and in any event MarkMonitor "recently" located some missing source code). *Id.* at 3. Exclusion of

3

everything from the 2016 download project would be excessively punitive because plaintiffs rely heavily on that information. *Id.*

Defendant replies that plaintiffs' "litany of excuses for why they are not accountable for spoliation" should not be condoned. ECF No. 682.

 3. <u>Magistrate Judge Recommendation</u>.

Given the extraordinary number of discovery disputes in this case, the Court sought the assistance of United States Magistrate Judge Michael E. Hegarty and Special Discovery Master (now District Judge) Regina Rodriguez in managing the discovery. Both of them were intimately involved in the discovery process. I sought Judge Hegarty's assistance again in light of the volume of paper submitted with the parties' respective spoliation motions.[1]

In his initial recommendation Judge Hegarty found it to be undisputed that both sides had failed to preserve some relevant information. However, he found a "practical equilibrium" between the parties as to whether the lost information was materially prejudicial to the complaining party and whether there was bad faith or other culpability. He also questioned whether the requested relief would result in a distracting sideshow at trial and concluded that this Court, as trial judge, would need to address that question. ECF No. 718 at 2-3.

Judge Hegarty found that in December 2018 deleted relevant emails of 18 or 19 custodians. He traced the history of the "Mingus Hold" and Charter's change of vendors for litigation holds in the 2016-17 timeframe. Due to inadequate instructions to a company called Proofpoint, many of the Mingus Hold documents were deleted in 2018. However, plaintiffs did

---

[1] Plaintiffs' 15-page motion has 35 exhibits comprising 3364 pages. Defendant's 16-page response has 103 exhibits (564 pages). The reply is 10 pages with 9 exhibits (305 pages). Defendant's motion is 15 pages with 24 exhibits (863 pages); response 20 pages with 18 exhibits (207 pages); and reply 11 pages) with 4 exhibits (22 pages). The parties might have unlimited manpower and resources at their disposal, but they seem to be oblivious as to whether the magistrate judge or the Court has the time to read and patience to evaluate all of this material.

not establish "calculated wrongdoing," as opposed to negligence, warranting any remedy beyond what the magistrate judge or the special master had already imposed. Nor did plaintiffs establish material prejudice; in particular, they did not show that the emails that do remain do not paint a full picture. *Id.* at 3-4. "The discovery in this case has been colossal, probably beyond proportional, and I cannot conclude on this record that Plaintiffs are materially prejudiced by the missing information." *Id.* at 4.

Judge Hegarty found that Charter did not preserve CATS data until the Mingus Hold in 2015, and infringement notices sent by plaintiffs between 2011 and 2014 (alleged to be 87 percent of the notices) were therefore lost. But plaintiffs have insisted in response to defendant's spoliation motion that they did not reasonably anticipate litigation until 2016, and they cannot hold Charter to a different standard. Nevertheless, because the lost data is material, Charter should be precluded from disputing the numerosity of the infringement notices that plaintiffs reasonably establish were sent, and they should be allowed to present evidence that the data was lost, and the loss has hindered plaintiffs' ability to determine the extent of the infringement and to show the revenue Charter earned from repeat infringers. This is not an indication of or a sanction for "spoliation" as such. *Id.* at 5-10.

Regarding defendant's motion, MarkMonitor and a second vendor (Audible Magic) were hired to "create a paper trail (a chain of custody of sorts) for each notice of violation" sent to Internet Service Providers during 2012-15. They created a digital "hash" for the infringed work, tracked that hash to IP addresses that downloaded it, and then tracked the offending IP addresses to the Internet Service Provider who provided the service. In that manner more than 700,000 notices were provided to Charter. But the paper trail for most of those notices (audio files, vendor verifications of downloads, records of suspected infringement of works not verified as

5

copyrighted, source code, and vendor emails) no longer exists, thus allegedly hindering Charter's ability to verify the reliability of plaintiffs' infringement notices. Plaintiffs admit that they failed to send a timely litigation hold to the vendors; and when they realized that the information would be useful to them as well, they implemented the "2016 Download Project" by instructing the vendors to try to recreate what the paper trail would have shown for 2012-15. Plaintiffs claim that they took reasonable steps, including contractually requiring the vendors to keep back-up copies of the evidence. They didn't reasonably anticipate litigation with Charter until 2016; and Charter is not materially prejudiced because it has the practical equivalent of the non-retained data. *Id.* at 6-8.

Judge Hegarty found that while the parties disagree about the materiality of the lost information, "[a]t the very least Defendant has not met is burden of proof of establishing malfeasance," nor has Charter proven material prejudice. *Id.* at 8. Similarly, to his conclusion regarding plaintiffs' motion, Judge Hegarty concluded that Charter should be permitted to introduce evidence of the missing information at trial but not to describe it as spoliation of evidence. *Id.* at 8-9.

Per Fed. R. Civ. P. 72(b)(2), the parties were granted 14 days to file written objections to the recommendation. *Id.* at 9 n.3. Neither party filed an objection within that timeframe, but plaintiffs filed a motion for "clarification," ECF No. 725, and the parties jointly sought and were granted an extension of the objection deadline. ECF Nos. 727, 730. Plaintiffs sought clarification of the distinction between their notices of infringement and Charter's creation of "tickets" after its receipt of the notice. The subject of plaintiffs' motion was deletion of ticket data, not the infringement notices which plaintiffs have preserved. Plaintiffs also asked Judge Hegarty to clarify what otherwise might be confusion between his description of Charter's

6

positions and his findings. Plaintiffs all but suggested modified language that they hoped Judge Hegarty would adopt in place of his own wording. *See* ECF No. 725 at 3-4 and 6-7. That provoked a response from Charter, ECF No. 733.

Judge Hegarty granted the motion in part and issued an amended recommendation. ECF No. 735. Plaintiffs did not file an objection to the recommendation as amended. However, Charter did. ECF No. 737.

First, Charter argues that because the magistrate judge found that Charter did not reasonably anticipate litigation prior to December 2015, and therefore would not have been under a legal obligation to preserve the ticket data before then, curative measures under Rule 37(e) are inappropriate. Charter objects to the recommendations that Charter "be precluded from disputing, at least, the numerosity of the copyright notices that Plaintiffs reasonably establish were sent" and that plaintiffs "be permitted to put on evidence that Defendant lost the CATS data, that the loss of information has prevented Plaintiffs from determining the extent of repeat infringement, and that the loss of information has hindered Plaintiffs' ability to show the revenue Charter earned from repeat infringers." *Id.* at 1-2. Charter claims in particular that Judge Hegarty's use of the words "prevented" and "hindered" is unduly prejudicial. *Id.* at 2-3. Charter protests that it has been punished more severely than the relief suggested for plaintiffs' "more extensive evidentiary losses." *Id.* at 3.

Second, Charter objects to Judge Hegarty's finding that plaintiffs and Charter anticipated litigation in the same timeframe. That could not be so, Charter argues, because plaintiff "spent years conducting activities designed to support a litigation campaign." *Id.* at 4.

Third, Charter insists that it should not be required, as Judge Hegarty suggested, to establish malfeasance to receive "curative measures;" because malfeasance applies to

7

"sanctions."  To obtain curative measures a party need only demonstrate that it has been prejudiced by an evidentiary loss.  *Id.* at 4-5.

    4. <u>Conclusions</u>.

The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).  The Court has reviewed the briefs and finds that oral argument would not materially assist the Court and denies the request for same.

Plaintiffs have not objected to the magistrate judge's recommendation as clarified.  For the most part neither has Charter.  Nevertheless, the Court has essentially conducted a de novo review of the magistrate judge's entire recommendation by reading the motions and briefs, some of the exhibits, the initial recommendation, the clarified recommendation, and defendant's objection to the clarified recommendation.

Based on its review of the portions of the recommendation to which neither party has objected, the Court finds no clear error, indeed no error at all.  The recommendation reflects Judge Hegarty's in depth understanding of the issues, obtained through countless hours of reviewing the parties' pleadings and overseeing the parties discovery disputes, not to mention his preparation of a recommendation on defendant's motion to dismiss, and his continual efforts to assist and encourage the parties in their attempts to resolve their disputes.  He has frequently consulted with me, to my substantial benefit, about the parties and their issues.  The fact that the parties for the most part have not objected to his recommendation on the spoliation issues –

8

parties not known to be shy about voicing objections – tends to corroborate my conclusion from my review of the recommendation and the related materials.

Charter objects to Judge Hegarty's recommendation that plaintiffs be permitted to present evidence that Charter lost CATS data before January 2016; and that this has "prevented" plaintiffs from determining the extent of repeat infringement; and that it has "hindered" plaintiffs' ability to show the revenue Charter has earned from repeat infringers. This is not, Charter agues, an appropriate application of Rule 37(e). However, Judge Hegarty expressly stated that he did not view these recommendations as a sanction for spoliation. ECF No. 735 at 6. Rather, he viewed them as necessary context for the jury to evaluate plaintiffs' claims. *Id.* at 7. I agree. Facts are facts, regardless of any attribution of fault. Assuming it to be factual that Charter did not reasonably anticipate litigation before 2016, that does not mean that plaintiffs were not impacted by the loss of potentially relevant evidence.

Indeed, when the shoe is on the other foot, "Charter does not object to the ultimate recommendation that it be permitted to 'introduce evidence of the missing information at trial' in order 'to attack the weight the jury should accord Plaintiffs' proof of actual copyright infringement.'" ECF No. 737 at 4. The recommendation does not preclude either party from challenging the opposing party's evidence. Charter complains that it has been punished more severely than plaintiffs for their respective losses of relevant evidence. But neither party has been punished or sanctioned.

Although Charter agrees that it did not reasonably anticipate litigation before December 2015, it objects to the implied finding that the same is true for plaintiffs. Essentially, Charter argues that plaintiffs must have anticipated litigation earlier because they spent years preparing for it. But that is speculation, not evidence. It is equally plausible that plaintiffs' efforts were

9

motivated by a desire to discourage Internet Service Providers from facilitating infringement and thus to avoid litigation. If Charter has evidence that plaintiffs anticipated litigation before 2016, it can present it. But it didn't persuade the magistrate judge, nor have they persuaded this Court.

In sum, it is not surprising to this Court that retention mistakes have been made, given the enormity of the documentation potentially relevant to this and to similar cases. But I have seen no convincing evidence of wrongful intent. The parties have a great deal of information to work with, and it will be their task to organize and present the information in a way that persuades the jury. The Court accepts and adopts the recommendation of the magistrate judge and denies the parties respective spoliation motions.

### C. **Plaintiffs' Motion to Strike Portions of the Declaration of Dan Vasey, ECF No. 689 (681).**

The Court has reviewed the briefs, finds that oral argument would not materially assist the Court, and denies the request for same. The Court addressed the standard of review of motions to strike in general in its order addressing plaintiffs' motions to strike two declarations of Mary Haynes, Charter's head of security. ECF No. 749 at 1-2.

In the pending motion plaintiffs ask the Court to strike the Declaration of Dan Vasey, Charter's Senior Director for E-Discovery and Records & Information Management, ECF No. 633-22 at 1. Mr. Vasey has been involved in records management at Charter since 2009, and from 2016 to the present he has overseen electronic discovery including litigation holds (sometimes referred to as "legal holds"). *Id.* at 1-2. He was Charter's Rule 30(b)(6) witness concerning preservation of ESI, including the loss of certain emails potentially relevant to this case. He was deposed by the plaintiffs on two occasions in April 2021. His declaration, which

10

is one of the 103 exhibits submitted in support of Charter's opposition to plaintiffs motion for spoliation sanctions, apparently covered much of the same ground as his deposition testimony.

Plaintiffs motion to strike the declaration is largely moot. Magistrate Judge Hegarty indicated that the Vasey Declaration did not affect his recommendation that the Court deny plaintiffs' spoliation motion. ECF No. 735 at 1 n.1. Plaintiffs did not object to that recommendation. I did not read the Vasey Declaration until after I had read, decided, and written my order *supra* denying plaintiffs' spoliation motion. Nevertheless, I will address it because I have now read it, and it clarified the chronology of Charter's loss of certain documents.

By way of background, I believe it to be undisputed that Charter issued a litigation hold in December 2015 after receiving a notice of potential litigation from a company, Mingus Music Werkshop, that is not a party to the present case. The "Mingus Hold" was in place when plaintiff Universal Music Group notified Charter of potential litigation in March 2016. Charter believed that the hold was sufficiently broad that it did not need to issue a new hold in response to Universal's notice. Ultimately, some potentially relevant emails and other documents plaintiffs sought in discovery in this case were lost when the Mingus Hold was deactivated. Mr. Vasey was tasked with investigating how, when, and why this happened.

According to Mr. Vasey, on December 17, 2015 Charter's General Counsel, Rick Dykhouse, received the litigation hold notice from Mingus Music Workshop. Mr. Dykhouse anticipated that Charter would be receiving similar letters from other music publishers. At the direction of Kirill Abramov, Group Vice President and Associate General Counsel for Intellectual Property Law, the "Mingus Hold" was created over the next few days. It was thought to be broad enough to cover future infringer claims involving the music industry. ECF No. 633-22 at 4-9.

11

At the time Charter was using several outside vendors to assist in managing its litigation holds: Salesforce, Renew Data, and ZL Technologies. However, in May 2016 Charter merged with Time-Warner Cable and Bright House Networks; and it began a massive project of migrating its preserved documents and litigation holds to new vendors. ProofPoint replaced the ZL Technologies archive that had been operated by Renew Data; and Legal Hold Pro, which was in use by Time-Warner Cable, replaced Salesforce for legal hold notice and tracking. Mr. Vasey was closely involved in coordinating, planning, and managing the migration. *Id.* at 9-10.

In April 2017, in connection with the migration project, a Records Analysist under Mr. Vasey's supervision, Kimberly Love, sent to Christine Flores, a paralegal in the Intellectual Property and Litigation Groups, a spreadsheet that purportedly identified legal holds that were no longer active and could be deleted. Those holds were highlighted in green. The Mingus Hold was erroneously highlighted in green. Even after interviewing Ms. Love and Ms. Flores, Mr. Vasey cannot explain how or why that happened. As a result, the Mingus Hold was not added to the Legal Hold Pro database. The Mingus Hold was one of 215 holds that were closed in June 2017. *Id.* at 13-15.

In November 2017, Ms. Flores caught the original error as to the Mingus Hold and confirmed with Mr. Abramov that the hold was still active. However, efforts to add the Mingus Hold custodians to Legal Hold Pro failed for reasons that are not clear. *Id.* at 17. Ultimately, 783 employees ("custodians") were removed from the new master hold in ProofPoint. That included 24 of the 33 custodians then on the Mingus Hold. Then, Charter initiated the final deletion of the ZL Technologies archive, almost 327 million messages. That was completed on December 24, 2018. Of those, 2,057,331 messages were in the ZL Technology archive for Mingus custodians. *Id.* at 18.

The present suit was filed on March 22, 2019. Shortly thereafter Mr. Vasey, Mr. Abramov and Ms. Flores determined that the Mingus Hold was not present in Legal Hold Pro, and that some of the Mingus custodians were not on hold in ProofPoint. *Id.* at 19. Unfortunately, some potentially relevant records that had been preserved in the Mingus Hold were no longer available.

To this point Mr. Vasey's declaration focused primarily on the Mingus Hold. However, near the end of the declaration he discusses CATS data. Charter had a one-year retention period for CATS data running from the date of closure of the record, unless the data was subject to a legal hold. In 2015 he approved a reduction of the retention period to six months, but apparently the reduction was not implemented right away. The declaration does not address any loss of CATS data, but it does state that CATS data was never held or maintained by Renew Data or ProofPoint. *Id.* at 23-24.

During the course of his investigation Mr. Vasey reviewed documents that were maintained by or on behalf of Charter, and he interviewed employees who were involved in the Mingus Hold matter, most notably Ms. Love and Ms. Flores. Plaintiffs' motion to strike Mr. Vasey's declaration based on their contention that it is not based on his personal knowledge; rather, in part it is based on inadmissible hearsay. I disagree.

In the first place, the information Mr. Vasey obtained from business records and subordinate employees is not necessarily offered or admitted for its truth. Rather, the information was obtained as part of Mr. Vasey's internal investigation and informed the ultimate findings and conclusions he reached.

Moreover, an individual can acquire personal knowledge from business records. *See Pipkin v. Mortgage Creditcorp., Inc.,* 72 F. 3d 138, 1995 WL 747437, at *4 and n.5 (10th Cir.

13

1995) (unpublished table disposition); *Alpha Prime Dev. Corp. v. Holland Loader Co, LLC,* No. 09-cv-01763, 2010 WL 2691774, at *2 (D. Colo. July 6, 2010). Personal knowledge may also be inferred from a person's position in the company. *See Univ. of Kansas v. Sinks,* 565 F. Supp. 2d 1216, 1227 (D. Kan. 2008). I have no doubt that corporate executives regularly make critical business decisions in reliance on information provided to them by subordinate employees. It is somewhat analogous to Rule 703 of the Federal Rules of Evidence which permits an expert to base his opinion on facts or data that he has been made aware of if experts in the field would reasonably rely on those kinds of facts or data.

      Here, plaintiffs accuse Charter of intentionally destroying relevant evidence or, at a minimum, failing to take reasonable steps to preserve relevant evidence. It is hard to imagine how Charter could respond to those charges without having a responsible person conduct an investigation; or how the investigation could be competently performed without reviewing the company's records and interviewing subordinate employees who were involved with the migration of records project. Plaintiffs can challenge Mr. Vasey's findings and conclusions. Presumably, they can subpoena and cross-examine Ms. Love and Ms. Flores at trial if they wish to. But I see no need to strike the Vasey declaration where he did what common sense suggests he should have done to try to get to the bottom of what happened. The motion to strike the Declaration is denied.

D. **Charter's Motion for Discovery Sanctions Against Plaintiffs Pursuant to Fed R. Civ. P. 37(c), ECF No. 691 (686).**

The Court finds that oral argument would not materially assist the Court and denies the request for same. The gist of this motion is that on November 4, 2021 an individual named Paszkowski who works for plaintiffs' retained consultant MarkMonitor, Inc., discovered certain source code that had not previously been identified or produced. Plaintiffs' counsel learned about this on January 4, 2022 when one of their lawyers was visiting with Mr. Paszkowski. Charter was informed, and the previously unidentified source code has apparently been produced. Nevertheless, Charter wants the Court to impose sanctions on someone. This motion asks for sanctions against the plaintiffs. In another motion filed on the same day Charter requested sanctions against MarkMonitor.

To begin, the Court will not sanction plaintiffs for the alleged misconduct of an independently retained consultant unless plaintiffs or their counsel were in some way involved or responsible for the problem. Nor does the Court intend to sanction a non-party absent some evidence of deliberate and intentional withholding of information that was subpoenaed or otherwise subjected to compulsive disclosure. I am aware of no such evidence.

Moreover, even assuming without deciding that Mr. Paszkowski for some reason intentionally withheld the source code from the parties, the fact is that it was made available to Charter some 10 months before trial. To any extent that the source code contains the key to the case or even any relevant information not otherwise provided in another form or format, Charter and its teams of lawyers and experts are well situated to use it.

It appears to the Court that counsel on both sides of this case see accusations of misconduct and requests for sanctions against one another as an ordinary and even routine part of complex civil litigation. It is not. This Court is not shy about imposing sanctions against a party or counsel when sanctions are warranted. So far, this is not such a case. The motion is denied.

**E. Charter's Motion for Contempt and Discovery Sanctions Against MarkMonitor, Inc. Pursuant to Fed. R. Civ. P. 37(c) and 45(g), ECF No. 692 (687).**

The Court finds that oral argument would not materially assist the Court and denies the request for same. For the reasons set forth above with respect to the similar motion for sanctions against the plaintiffs, the motion is denied.

## ORDER

1. Plaintiffs' Motion for Spoliation Sanctions, ECF No. 594 (filed as a restricted document as ECF No. 592) is DENIED.

2. Charter's Motion for Curative Measures and Sanctions for Plaintiffs' Spoliation of Evidence, ECF No. 595 (filed as a restricted document as ECF No. 593) is DENIED.

3. Plaintiffs' Motion to Strike Portions of the Declaration of Dan Vasey, ECF No. 689 (filed as a restricted document as ECF No. 681) is DENIED.

4. Charter's Motion for Discovery Sanctions Against Plaintiffs Pursuant to Fed R. Civ. P. 37(c), ECF No. 691 (filed as a restricted document at ECF No. 686) is DENIED.

5. Charter's Motion for Contempt and Discovery Sanctions Against MarkMonitor, Inc. Pursuant to Fed. R. Civ. P. 37(c) and 45(g), ECF No. 692 (filed as a restrict document at ECF No. 687) is DENIED.

6. The magistrate judge's initial recommendation on the spoliation motions, ECF No. 718, is MOOT, as it has been amended.

      7.  The magistrate judge's amended recommendation, ECF No. 735, is accepted and adopted.

DATED this 18th day of May, 2022.

BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Judge