# EXHIBIT 1

# EXHIBIT B

```
 1                IN THE UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
 2                        TAMPA DIVISION

 3

 4   UMG RECORDINGS, INC., et al.,   )
                                     )
 5                Plaintiffs,        )
                                     )
 6                                   )  CASE NO.
              VS.                    )  8:19-CV-00710-MSS-TGW
 7                                   )
                                     )
 8   BRIGHT HOUSE NETWORKS, LLC.,    )
                                     )
 9                Defendant.         )

10

11
     _____
12
                     MOTION HEARING – VOLUME II
13             BEFORE THE HONORABLE MARY S. SCRIVEN
                  UNITED STATES DISTRICT JUDGE
14
                          MAY 26, 2022
15                         9:13 A.M.
                        TAMPA, FLORIDA
16   _____

17

18

19

20

21        Proceedings transcribed via courtroom digital audio
     recording by transcriptionist using computer-aided
22   transcription.
     _____
23
                   DAVID J. COLLIER, RMR, CRR
24             FEDERAL OFFICIAL COURT REPORTER
             801 NORTH FLORIDA AVENUE, 7TH FLOOR
25               TAMPA, FLORIDA  33602
```

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFFS:

 4

 5           Matthew J. Oppenheim
              Jeffrey M. Gould
 6           Corey Miller
              Kellyn M. Goler
 7           Alexander Kaplan
              Oppenheim & Zebrak, LLP
 8           4530 Wisconsin Avenue, NW
              5th Floor
 9           Washington, D.C.  20016
              (202) 450-3958

10

11

12           David Christopher Banker
              Bush Ross, P.A.
13           1801 North Highland Avenue
              Tampa, Florida  33602-2656
14           (813) 224-9255

15

16           Jonathan M. Sperling
              Sara J. Dennis
17           Anders Linderot
              Covington & Burling, LLP
18           620 Eighth Avenue, 43rd Floor
              New York, New York  10018-1405
19           (212) 841-1000

20

21           Neema T. Sahni
              Covington & Burling, LLP
22           1999 Avenue of the Stars, Suite 3500
              Los Angeles, California  90067-4343
23           (424) 332-4800

24

25
```

FOR THE DEFENDANTS:

　　　　Charles K. Verhoeven
　　　　Linda Brewer
　　　　David Eiseman
　　　　Gracie Chang
　　　　Quinn Emanuel Urquhart & Sullivan, LLP
　　　　50 California Street, 22nd Floor
　　　　San Francisco, California  94111
　　　　(415) 875-6600


　　　　Justine Young
　　　　Todd Anten
　　　　Quinn Emanuel Urquhart & Sullivan, LLP
　　　　51 Madison Avenue, 22nd Floor
　　　　New York, New York  10010
　　　　(270) 227-2996


　　　　Allison Huebert
　　　　Nathan A. Hamstra
　　　　Quinn Emanuel Urquhart & Sullivan, LLP
　　　　191 Norther Upper Wacker Drive, Suite 2700
　　　　Chicago, Illinois  60606
　　　　(312) 705-7400


　　　　John A. Schifino
　　　　William J. Schifino, Jr.
　　　　Gunster, Yoakley & Stewart, PA
　　　　401 East Jackson Street, Suite 2500
　　　　Tampa, Florida  33602-5226
　　　　(813) 228-9080


　　　　Jennifer A. Golinveaux
　　　　Winston & Strawn, LLP
　　　　101 California Street, 35th Floor
　　　　San Francisco, California  94111-5840
　　　　(415) 591-1506


　　　　Sean R. Anderson
　　　　Winston & Strawn, LLP
　　　　200 Park Avenue
　　　　New York, New York  10166-4193
　　　　(212) 294-6700

1  Q    You don't actually know from whom that file was originally
2  downloaded in any case, do you?
3  A    Well, like I stated, there are no notices with regard to
4  those, all of the notices demonstrate that a file was not
5  downloaded for the Bright House subscribers, and so, yes, based
6  on that I am able to make that conclusion.
7  Q    Just so I understand, you agree with me that you don't
8  know from whom those files were downloaded?
9  A    They were not from Bright House because there are no
10  notices that show that there was a download for the
11  Bright House subscribers.
12  Q    There's no notice, so your testimony is that it
13  definitely --
14        THE COURT:  Counsel, this is argumentative and
15  fact-intensive and jury-specific.
16        You may step down.
17        MR. GOULD:  Thank you, Your Honor.
18        THE COURT:  The motion to exclude Dr. Chatterjee's
19  opinion is denied.  With respect to his ability to testify
20  about ISRCs, the Court holds and will reconsider any request --
21  I'll rule denying the motion but without prejudice to that
22  aspect of the opinion if he is asked those questions at trial.
23        Who is your next witness?
24        MR. OPPENHEIM:  I believe, Your Honor, the next
25  witness is Mr. Kris Buchan, but before we call the witness,

1  Your Honor, I believe we've resolved many of the issues with

2  respect to Mr. Buchan with opposing counsel, so maybe we can

3  narrow this and speed this process up and potentially even

4  avoid Mr. Buchan having to take the stand.

5        THE COURT:  That would be good.

6        MR. OPPENHEIM:  So there were three issues in

7  Bright House's motion on Mr. Buchan.  The first issue --

8        THE COURT:  I have them right here in front of me, so

9  which one have you all resolved?

10        MR. OPPENHEIM:  I think the first issue, which is

11  really the sanitizing of the opinion issue, and, Your Honor,

12  plaintiffs will do that, and in fact we've agreed that we'll do

13  that across -- for all witnesses going forward.  We'll have to

14  amend the reports, sanitize and re-serve them, and we'll do

15  that for Mr. Buchan and everybody else.  So that issue is

16  resolved.

17        THE COURT:  All right.

18        MR. OPPENHEIM:  The second issue was that

19  Bright House took issue with several paragraphs in his report,

20  background paragraphs that they believed he should not be

21  permitted to testify to.

22        THE COURT:  If you'd direct me to the page of the

23  motion, maybe that would help.

24        MR. OPPENHEIM:  I'm sorry.  You want the page of

25  their motion on this?

 1           THE COURT:  If that's what you're going to clarify,
 2    or if you want to use your response.
 3           MR. OPPENHEIM:  Well, Your Honor, they point in their
 4    motion on page 11 --
 5           THE COURT:  Yes, sir.
 6           MR. OPPENHEIM:  -- to paragraphs 19 through 29.
 7           THE COURT:  Yes, sir.
 8           MR. OPPENHEIM:  And the plaintiffs have agreed with
 9    Bright House that if we withdraw, which we will, paragraphs 19
10    through 23 and then paragraphs 28 and 29, that that resolves
11    that part of the motion.
12           THE COURT:  All right.
13           MR. OPPENHEIM:  That leaves us with only the third
14    remaining issue for Mr. Buchan, and that issue, Your Honor --
15    so that issue is the question of -- questions Mr. Buchan's use
16    of a three plus notice analysis.
17           THE COURT:  One second.  What is that light source
18    over by the end of the table?  Do you know what that is, Dave?
19           Go ahead.
20           MR. OPPENHEIM:  For this third issue, Your Honor,
21    Mr. Buchan did an analysis of the data in the case to identify
22    what's called in the report repeat infringers, and we know
23    we're going to come up with sanitized terminology for that.
24           Bright House's sole contest to the repeat infringer
25    analysis is that Mr. Buchan's analysis defined a repeat

```
 1              Three or more notices is not a legally significant
 2    category here.  By having their expert frame his analysis
 3    around that threshold plaintiffs are introducing a favorable
 4    legal conclusion and they're giving it the imprimatur of --
 5              THE COURT:  Can't we just resolve that by an
 6    instruction to the jury, if this person is going to testify
 7    that three has no significance other than that's the number
 8    counsel told him to use?
 9              MS. YOUNG:  I think we could resolve it with that
10    instructors or we could resolve it by requiring plaintiffs to
11    lay some kind of foundation for that number.
12              THE COURT:  Counsel?
13              MR. OPPENHEIM:  Your Honor, I believe that --
14              THE COURT:  You may give Mr. Oppenheim the floor.
15              MR. OPPENHEIM:  Counsel for Bright House asked
16    plaintiffs' 30(b)(6) witnesses at length about the use of a
17    three plus analysis.  So they've asked the questions.  The fact
18    witnesses will speak to it.  Your Honor, some kind of
19    instruction could be worked out as you described, but it
20    doesn't go to the underlying reliability of his analysis or his
21    methodology, it goes to the question of what constitutes
22    sufficient notice.  He could have done it on two, he could have
23    done it on 100, and certainly Bright House could have put
24    forward a witness that said we don't have knowledge until --
25              THE COURT:  Well, he's not offering an opinion that
```

```
 1    three is the magic number or that that's sufficient notice.

 2              MR. OPPENHEIM:  Right.

 3              THE COURT:  He's just saying three people -- he

 4    didn't do a calculation unless there were three such notices,

 5    and if the jury is simply told that this number three is not

 6    legally binding on them or some such disclosure, so that

 7    they're not led to believe that if you get a notice that three

 8    people who lived in Apartment 10 over a five year period of

 9    time got a ticket from Bright House and therefore Bright House

10    got notice and received tickets and therefore Bright House had

11    notice and therefore Bright House acknowledged notice as

12    evidence of some legal liability, then I think we're fine, but

13    he's not offering that opinion, is he?

14              MR. OPPENHEIM:  I'm with you 100 percent, Your Honor.

15    The jury can say, boy, it should be two, or they could say to

16    themselves it should have been ten.  It will be up to the jury

17    to give whatever weight they want to that three plus number.

18              THE COURT:  Or the jury could say that's no notice at

19    all because I didn't know who was living in that apartment and

20    I don't know if it was three separate college kids living there

21    and all of them got tickets and threw them in the garbage can

22    and never opened the envelope, and Bright House didn't know who

23    it was, and so forth and so on.

24              MR. OPPENHEIM:  On that issue, Your Honor, and

25    I believe this, again, will come in through fact witnesses,
```

 1    Bright House's very clear Acceptable Use Policy requires that

 2    the subscriber be responsible for the conduct on the network,

 3    and so that's an agreement with the subscriber, and so if the

 4    subscriber is receiving notices for conduct on their account,

 5    they're responsible for it.  But that will come in through fact

 6    witnesses.  I don't believe Bright House would be proper in

 7    eliciting testimony to the contrary of their very own

 8    agreements, but we'll see how that plays out.

 9           MS. YOUNG:  Your Honor, we would agree that a jury

10    instruction resolves this issue.

11           THE COURT:  All right.  Well, you all will need to

12    work one out between or among yourselves, and Mr. Buchan will

13    be allowed to testify with the limitations in the stipulation

14    that we've already discussed and with some sort of

15    predetermined instruction of an explanatory nature to the jury

16    in advance of his being called to testify, or perhaps in

17    advance of anybody using this three notices discussion.  We'll

18    decide when you give it in the course of the case.

19           Who would be the next witness?

20           MR. EISEMAN:  Good morning, Your Honor.

21    David Eiseman for Quinn Emanuel on behalf of Bright House

22    Networks.

23           Our next witness is Dr. Karl Snow.

24           THE COURT:  All right.  Let's go ahead and take the

25    morning break for 15 minutes and we'll come back.

1          Your Honor, this slide contains a summary of

2    Dr. Snow's opinions in his report, and we've highlighted in red

3    the opinions that are the subject of plaintiffs' motion.

4    BY MR. EISEMAN:

5    Q    Dr. Snow, with respect to your --

6              THE COURT:  Yes?

7              MR. MILLER:  Objection, Your Honor.  Corey Miller for

8    the plaintiffs.  The slide does not accurately reflect the

9    subject of plaintiffs' motion.

10             THE COURT:  So let's look at the slide as it sits

11   there.  The plaintiff is not objecting to the three red

12   highlighted portions of his testimony?

13             MR. MILLER:  We are objecting to the duplicative

14   notice analysis and the critique of Mr. Buchan's reliance on

15   the 2016 hard drive and the listeners.  We are not objecting to

16   the entirety of paragraphs -- we are not objecting to

17   paragraph --

18             THE COURT:  Use that microphone a little bit better.

19             MR. MILLER:  Hmmm?

20             THE COURT:  Use the microphone a little bit better.

21             MR. MILLER:  Apologies, Your Honor.

22             We are not objecting to the analysis of records

23   supporting file verification in paragraphs 84 to 102.

24             THE COURT:  All right.  So skip that reference and

25   just go to the two that plaintiff is challenging, duplicative

1          You have no opinion of your own on whether those

2     assumptions are justified, do you?

3     A     Correct.  I am just pointing out a paradox in the data and

4     saying that there must be some resolution to it, but regardless

5     of what those assumptions are, it would seem to indicate that

6     notices were going out without being verified.

7     Q     And you're aware that Audible Magic's CEO testified that

8     Audible Magic's transaction logs are not substantially

9     complete?

10    A     And I'm -- yes, and I'm aware that he also testified that

11    they were substantially complete, and there is evidently

12    between the parties a disagreement as to how to interpret his

13    testimony.

14    Q     But you recognize that there is competing evidence on that

15    question?

16          THE COURT:  Counsel, this is not a cross-examination

17    of this witness in front of a jury.  This has to do with his

18    qualifications to count the number of notices and determine

19    whether there were multiple notices or single notices.  He's of

20    the opinion that a notice as to the same hash multiple times

21    should be counted as one, and your witness's opinion is that

22    they should be counted as multiples if they happened 24 hours

23    apart and fall -- at least one of them falls within the claim

24    period, and that's just a difference of opinion, and he's not

25    offering an opinion as to infringement, he's already said that.

```
 1          Is there some other question you want to raise with
 2   this witness?
 3          MR. MILLER:  Yes, Your Honor.  We've moved to exclude
 4   this opinion of Dr. Snow's on the basis that it's unreliable
 5   because his conclusion is contrary to established scientific
 6   evidence regarding the validity of hashes, and so I'm exploring
 7   with him to show that he has reached a conclusion that is
 8   contradicted by the clear expert scientific testimony in this
 9   case.
10          THE COURT:  And you can take that up with him at the
11   trial.
12          MR. MILLER:  And we'd move to exclude it on that
13   basis.
14          THE COURT:  And denied.  Next witness.
15          You may step down.
16          MR. MILLER:  Your Honor, I have a couple further
17   issues with Dr. Snow that we raised in our motion.
18          THE COURT:  I thought there were two and you went
19   through those two?  You put them up on the screen and you said
20   there are only two, and you just went through those two.
21          MR. MILLER:  I did not say there were two.  I said
22   that the three they had put up on the screen -- of the three
23   they put up on the screen, one we had not raised.  We had a
24   couple small issues that they did not include on their slide.
25          THE COURT:  Have a seat.
```

1   draw those inferences himself.

2          MR. EISEMAN:  He has the expertise to analyze the

3   data, and they're obviously able and we welcome them to

4   vigorously cross-examine him, but this is not about the

5   admissibility of the opinions, it's about the weight that the

6   jury should give to them.

7          THE COURT:  As to paragraph 62, the Court finds that

8   this is a fair use of expert testimony sitting as a premise to

9   the witness' conclusion and it's not even stated as his

10  opinion.

11         Paragraph 68, that last sentence, is outside the

12  witness's purview of knowledge, and he even admits it's not

13  even an opinion, it is just something that affirmatively isn't

14  an opinion, and so that last sentence, he shouldn't be asked

15  that at trial and he shouldn't be asked to give that opinion at

16  trial.

17         MR. EISEMAN:  We understand that, Your Honor.

18  Thank you.

19         And I just want the record to be very clear that

20  plaintiffs have withdrawn their challenge as to Dr. Snow with

21  respect to his opinions in paragraphs 84 to 102 of his report.

22  I heard Mr. Miller say that, but I want the record to be very

23  clear about that.

24         THE COURT:  So noted.

25         MR. MILLER:  I don't think we ever made any

1     they were duplicative.  That's different than us asking him to

2     make the assumption for purposes of the case.

3             MR. MILLER:  Your Honor, that's not a relevant

4     distinction.  The question is is the expert suggesting some

5     legal significance by the way he conducts the analysis, and

6     it's the same on both sides.

7             THE COURT:  I believe that repeat infringing is a

8     different standard than multiple instances of detection of

9     responsive content.  If Mr. Snow, Dr. Snow, is only saying that

10    in his opinion there are only two instances in regard to this

11    circumstance or only one instance in this regard, he can say

12    that, and if the plaintiffs' expert wants to say there are

13    three, the plaintiffs' expert can say there are three, but the

14    plaintiffs' expert, I think, is trying to say that three

15    constitutes infringement, or was, or equates to infringement,

16    and the Court simply didn't want him to give that opinion, but

17    he can say there are three instances, he just can't say there

18    are three instances and therefore repeat infringement, which is

19    the legal -- one of the questions of legality and liability,

20    and I don't see Dr. Snow as saying there's no repeat

21    infringement.  I think Dr. Snow is saying here are the three --

22    here are the 100 claims, I think there are only ten claims.

23            MR. EISEMAN:  That's exactly right, Your Honor.

24            THE COURT:  And so if the defense purports to have

25    him offer an opinion that that doesn't constitute or equate to

```
 1    repeat infringement, it's going to draw an objection and the
 2    Court is going to resolve it similarly as to the plaintiff, but
 3    I don't hear him saying that in his opinion.
 4              MR. EISEMAN:  Yeah, we don't intend to offer that
 5    opinion from him, so I don't think that's going to be a
 6    problem, Your Honor.
 7              MR. MILLER:  To be clear, Your Honor, Mr. Buchan is
 8    not opining on the legal -- that three plus equals
 9    infringement, he is just identifying the infringers who meet
10    that -- excuse me, the subscribers who meet that criteria.
11    Plaintiffs will argue in the context of the case that that
12    analysis shows infringement.
13              THE COURT:  Well, why don't we do this.
14              MR. MILLER:  But Mr. Buchan is not --
15              THE COURT:  When you all prepare your jury
16    instruction that you're going to come to together, work it out
17    and make sure that it covers both parties not being able to
18    offer legal opinions as to what constitutes infringement, and
19    if you can't work it out I'll hear it at the charge conference.
20    I don't want a motion on it because we're going to get to no
21    more motions at the end of this hearing.  So I don't think
22    that's what Dr. Snow was doing.  If the plaintiff thinks it is
23    what he's doing, you all work it out in whatever this drafted
24    jury instruction is going to be so nobody does it.
25              MR. EISEMAN:  Bright House understands, Your Honor.
```

```
 1   to figure out what the Court's thoughts are on the rest of the
 2   schedule and -- because it looks like it will be a difficult
 3   task to get through everything and what the Court's intent on
 4   that is, because it may inform over lunch break how we try to
 5   work with opposing counsel in terms of the schedule of the
 6   remaining witnesses and the remaining matters.
 7              So does Your Honor have an intent on how --
 8              THE COURT:  How many witnesses do we have left?
 9              MR. OPPENHEIM:  I believe six, if I'm counting
10   correctly.
11              MR. EISEMAN:  Yes, I believe that's right,
12   Your Honor.
13              MR. OPPENHEIM:  And then we also have, obviously,
14   Your Honor, I think several motions, three motions you wanted
15   to hear argument on as well.
16              Is Your Honor interested in having us -- I hate to
17   say this -- return next week?
18              MR. SPERLING:  Tomorrow?
19              THE COURT:  Tomorrow is not happening.
20              So the motions will probably be resolved pretty
21   quickly, short shrift.  The parties should focus on what they
22   can do to truncate the witness part so we can get through them.
23              And so that you don't waste your whole lunch talking
24   about Professor Geluso, I think his methodology doesn't
25   establish any fundamental flaws.  Whether he'll be allowed to
```

```
1    pull his opinion over from another case to this case is largely

2    dependent on the admissibility of the Epiq opinion, and that's

3    not in front of me and it's mentioned in a footnote in the

4    summary judgment motion.  So I would focus on the other people.

5    You can argue a few minutes if you want when we come back, but

6    I would focus on the other witnesses.  And I'm going to try to

7    get through this, so have a hearty lunch and bring some chips

8    in your bags when you come back so we can get through this

9    work.

10           Thank you.

11           MR. OPPENHEIM:  Very well, Your Honor.

12                      - - - - -

13           (Recess at 1:37 p.m. until 2:26 p.m.)

14                      - - - - -

15           THE COURT:  Are Counsel ready to proceed?

16           MR. SPERLING:  Yes, Your Honor.

17           MR. SCHAPIRO:  Yes, Your Honor.

18           THE COURT:  Do you want to be heard briefly on Geluso

19    or are you going to move to the next witness?

20           MR. SCHAPIRO:  With your indulgence, Your Honor, just

21    a couple minutes on Geluso.

22           THE COURT:  Yes, sir.

23           MR. SCHAPIRO:  So, Your Honor, I'm going to focus on

24    just a couple of the global issues here.

25                One of them as a basis to exclude is the fact that
```

1    generator is how Counsel picked the files for you to review?

2           THE WITNESS:  Yes.  I believe so.

3           THE COURT:  Did you do two randomized --

4           THE WITNESS:  Exactly.  Yeah.

5           THE COURT:  Did you do two randomized reviews, one

6    for Charter and one for Bright House, or did you just give them

7    eight to ten numbers total?

8           THE WITNESS:  I don't recall exactly.  I believe

9    I may have given them more numbers than they needed, and so

10   I only needed to give them one set of numbers and they could

11   then draw from that list, but I don't exactly recall.

12          THE COURT:  And the list then corresponds to some

13   number assigned to each one of the files?

14          THE WITNESS:  I believe so.  I believe it corresponds

15   to maybe the row in my Appendix B or something like that -- or

16   not my Appendix B, but the appendix of the other listeners.

17          THE COURT:  All right.  Thank you.

18          Anything else for the witness from the plaintiff or

19   the defense?

20          MR. SCHAPIRO:  Your Honor, the only thing I want to

21   get in for the record, just so it was clear, and I can ask the

22   witness about this, is:  Sir, in connection with what the Court

23   was just asking you, in paragraph 17, note 4 of your report,

24   you state:  I am informed by Counsel that identical copies of

25   certain files identified in the first column of Appendix B were

 1   also produced using a corresponding PL underscore CH underscore

 2   Bates number and file name identified in the second column of

 3   Appendix B.  Where applicable, I conducted my analysis using

 4   the copy of the file named according to its PL underscore CH

 5   Bates number.

 6          MR. SPERLING:  Objection, Your Honor.  This is the

 7   subject of the stipulation.  The Court would not permit me to

 8   ask him a question about this.  I don't understand how

 9   Mr. Schapiro can go into this.

10          THE COURT:  I don't know what the question is yet.

11          MR. SCHAPIRO:  My question is just going to be:  When

12   you said in your report PL underscore BH, is that what you were

13   referring to a moment ago when you were talking about files

14   from the Charter case?

15          THE WITNESS:  Yes, I believe so.

16          MR. SCHAPIRO:  Thank you.

17          THE COURT:  Do you need to ask a follow-up question

18   about that, Counsel?

19          MR. SPERLING:  Pardon me, Your Honor?  I couldn't

20   hear the Court.

21          THE COURT:  Do you wish to ask a follow-up question

22   about that?

23          MR. SPERLING:  I do not, Your Honor.

24          THE COURT:  All right.  Anything further of this

25   witness?

```
 1              MR. SPERLING:  No, Your Honor.
 2              THE COURT:  Sir, you may exit the Zoom call.
 3     Thank you very much.
 4              THE WITNESS:  Thank you.
 5              MR. SPERLING:  Your Honor, if you can give me a
 6     moment to confer with Mr. Schapiro, we're going to try and
 7     simplify the schedule.
 8              Your Honor, Plaintiffs' next witness is
 9     Charles Burst.
10              THE COURT:  Were you able to simplify things or was
11     that --
12              MR. SPERLING:  Well, we weren't able to eliminate the
13     witness, but we may have succeeded in streamlining it,
14     Your Honor.
15              THE COURT:  All right.  Call your witness.
16              MR. SCHAPIRO:  We're happy not to ask any questions,
17     but we have a -- Mr. Sperling noted that we have an objection
18     on the basis of cumulative nature of testimony, and I think he
19     wants to elicit some questions, I don't know what they would
20     be, that address that somehow.  We're happy not to hear from
21     this witness.
22              THE COURT:  What is he going to say to help you with
23     cumulative, since they all did the same thing?
24              MR. SPERLING:  Your Honor, I expect that he would
25     describe the process that he followed and testify that he has
```

 1 │ no knowledge of any of the other experts listening to the same
 2 │ audio file pairs that he did.
 3 │         THE COURT:  All right.  I don't need to hear him say
 4 │ that.  I will --
 5 │         MR. SCHAPIRO:  We'll stipulate to that.
 6 │         THE COURT:  He doesn't need to testify.
 7 │         MR. SPERLING:  Thank you, Your Honor.
 8 │         THE COURT:  All right.  Sir, we don't need your
 9 │ testimony.
10 │         And do we need Professor Geluso?  I asked him to
11 │ stay.  Are we going to need him again for any testimony, from
12 │ the plaintiff?
13 │         MR. SPERLING:  Not for plaintiffs, Your Honor.
14 │         THE COURT:  From the defense?
15 │         MR. SCHAPIRO:  No.  The only other thing I should
16 │ have clarified a moment ago that Mr. Sperling and I conferred
17 │ about was our agreement that we don't need to ask Mr. Burst any
18 │ questions is premised on the same understanding with regard to
19 │ not asking many questions about the Charter/Bright House issue
20 │ of the previous witness, that is --
21 │         THE COURT:  Do you agree with that, Mr. Sperling?
22 │         MR. SCHAPIRO:  Same objections, but can be argued
23 │ later.
24 │         MR. SPERLING:  So, Your Honor, so it's specific, they
25 │ retain their challenge with respect to audio file pairs that

 1    were reviewed for purposes of both the Charter and Bright House

 2    case.

 3              THE COURT:  All right.

 4              MR. SCHAPIRO:  Yes.

 5              MR. SPERLING:  And, Your Honor, the one other thing

 6    that I don't think we need to call Mr. Burst for, but we would

 7    if we need to, is for his testimony regarding whether it was

 8    realistic for him as a single individual to listen to and

 9    analyze more audio file pairs than the substantial number that

10    he did.

11              THE COURT:  Well, he could have listened to more.

12    It would have just taken more time.

13              MR. SPERLING:  Well, he would testify as to the

14    practical ability to do that, Your Honor.

15              THE COURT:  So one person can't listen to all the

16    files if given a timeless deadline?

17              MR. SPERLING:  We would agree, given unlimited time,

18    Your Honor, any single individual could probably do just about

19    anything.

20              THE COURT:  All right.  Thank you.

21              MR. SPERLING:  Thank you, Your Honor.

22              THE COURT:  Don't need any testimony about that.

23              Who is your next witness?

24              MS. YOUNG:  The next witness would be Dr. Kevin

25    Almeroth.

1    the U.N.  Certainly he shouldn't be permitted to talk about the

2    U.N. at all, what he thinks about it, what someone may or may

3    not have said about it, but it's a broader opinion about

4    testifying from a highly credentialed expert to tell the jury

5    that the internet is so important that Bright House shouldn't

6    take certain steps.

7         As I elicited from the testimony, jurors are

8    perfectly capable without Dr. Almeroth's networking security

9    expertise to understand that concept.

10         Thank you, Your Honor.

11         THE COURT:  Anything else from the defense?

12         MS. YOUNG:  No, Your Honor.

13         THE COURT:  The Court would deny the motion to

14    exclude Dr. Almeroth as relates to his testifying as to the

15    feasibility and technical feasibility of the measures proposed

16    by McGarty and Frederiksen-Cross, if they are called to testify

17    on those points, and the Court would generally allow him to

18    testify concerning his understanding of Bright House function

19    in regard to this technical capability as informed by others

20    once that testimony is properly elicited or presented on the

21    record in the same way that the Court required of

22    Ms. Frederiksen-Cross.

23         The Court will allow the witness to testify as to net

24    neutrality implications as they existed in the time period

25    that's relevant, without regard to changes in law,

1  modifications in law, and the Court is going to be monitoring

2  that testimony really carefully, so please kind of stay on top

3  of it, if it starts to come in, because it could draw a proper

4  objection because it may bleed over into determinations of law,

5  which the Court is not going to let him opine as to.

6          And the Court will allow the witness to speak

7  generally about the internet to provide context to his

8  testimony, but again, he won't be allowed to testify about or

9  raise implications of human rights violations or human rights

10  implications as set forth in his footnote, because I think that

11  would tend to be overly prejudicial and not really probative of

12  the point he's trying to make, which point is largely known to

13  everyone.

14          Who is the next witness?

15          MS. YOUNG:  Your Honor, it's plaintiffs' witness,

16  Dr. Harold Furchtgott-Roth.

17          THE COURT:  Thank you.

18          COURTROOM DEPUTY:  Please raise your right hand.

19          Do you solemnly swear or affirm, under penalty of

20  perjury, that the testimony you shall give in these proceedings

21  shall be the truth, the whole truth and nothing but the truth?

22          THE WITNESS:  I do.

23          COURTROOM DEPUTY:  Could you please state and spell

24  your name for the record.

25          THE WITNESS:  Yes, my name is Harold Furchtgott-Roth.

 1   plaintiffs may have suffered as a result of alleged

 2   infringement by subscribers of Bright House.  I've also been

 3   asked to consider the benefits that Bright House obtained

 4   during the claims period.  I've also been asked to consider the

 5   incentives that Bright House had during the claims period.

 6   Both the benefits and incentives relate to Bright House's

 7   let's call it lax policy with respect to enforcing DMCA

 8   compliance.

 9            THE COURT:  You're going to opine as to whether it

10   was lax or not lax, or is somebody else going to opine as to

11   that?

12            THE WITNESS:  Someone else will opine as to that.

13            THE COURT:  So I don't want you to characterize it as

14   anything if that's not what you're going to testify about.

15            Please continue.

16            MS. SAHNI:  Your Honor, we have some slides to walk

17   through.  With your permission, may I publish them?

18            THE COURT:  You may.

19            MR. VERHOEVEN:  May I have a copy, please?

20            MS. SAHNI:  Yes.

21            Your Honor, would you like a copy for the Court?

22            THE COURT:  Yes, please.

23            MS. SAHNI:  May I approach?

24            THE COURT:  Yes.

25            MS. SAHNI:  Your Honor, while we're waiting on that,

1    I believe the parties have been discussing whether we can

2    resolve one of the issues in the motion.  Mr. Oppenheim

3    mentioned earlier today that the parties have agreed to

4    sanitize the reports.  We'll go ahead and sanitize

5    Dr. Furchtgott-Roth's report to change references to

6    infringement or repeat infringement where it concerned the

7    specific infringements at issue in this case.

8              THE COURT:  And does he have piracy as one of his

9    descriptors?

10             MS. SAHNI:  He does describe piracy, Your Honor, and

11   that is similar to Dr. Sinnreich, where he's talking about the

12   phenomenon of piracy.

13             THE COURT:  But this witness talks about piracy

14   committed by subscribers, not what piracy is as a general

15   matter?

16             MS. SAHNI:  Well, he does both, Your Honor.  He has a

17   long section about the academic literature about the general

18   harms from piracy to copyright holders, and then he does

19   specific opinions regarding the alleged infringements in this

20   case.  And so with respect to the latter, we've agreed to

21   sanitize the report.  In discussions of piracy generally,

22   unless I understand that other experts are also similarly not

23   going to be able to speak to piracy generally, it seems --

24   you know, the same for both.

25             THE COURT:  He can't draw any conclusions or state

 1   any opinions as to piracy committed.  It's not precluding him

 2   from using the word "piracy" as a backdrop.

 3            MS. SAHNI:  Thank you, Your Honor.  He's not --

 4            Dr. Furchtgott-Roth, are you providing any opinions

 5   in your report as to whether infringement or piracy occurred

 6   with respect to the Bright House subscribers?

 7            THE WITNESS:  No, Your Honor, I'm not.  I've been

 8   asked to assume liability, but I have no opinion about whether

 9   liability actually occurred.

10            MS. SAHNI:  Your Honor, the first slide that is on

11   this printout for some reason is not showing up, so I'm going

12   to jump to the second slide to get to the heart of the matter.

13   These are the opinions challenged by Bright House.

14   BY MS. SAHNI:

15   Q    Dr. Furchtgott-Roth, can you please briefly state each of

16   the opinions that are challenged by Bright House in its Daubert

17   motions.

18            THE COURT:  I have them.  Can you just go to the

19   first one.  We're running out of time.

20            So the first one is:  The music industry is an

21   important component of the U.S. economy.

22            MS. SAHNI:  Yes.

23            THE COURT:  What is your qualification to opine as to

24   that?

25            THE WITNESS:  Your Honor, my qualification is that

```
 1              THE COURT:  All right.  Thank you.

 2              MR. VERHOEVEN:  Thank you, Your Honor.

 3              THE COURT:  All right.  I will take that motion under

 4    advisement.  It is not likely that Mr. Furchtgott-Roth is going

 5    to be able to put the ████████████████ in front of the jury

 6    as the incentive of Bright House's desire not to lower the

 7    hammer on customers based on alleged statements of notices from

 8    all sources near and far; nor is it likely he's going to be

 9    able to post a number of damages based upon the revenue

10    associated with all customers who receive any kind of notices,

11    either measured by the value of the sale of Bright House that

12    included lots of assets besides residential customers and lots

13    of assets besides residential customers who were infringing, or

14    using as the other possible denominator the value of --

15    I'm sorry, multiply the value of the average bundle of sales to

16    customers and then multiply by all customers.

17              Whether the Court will allow him to say, well, they

18    stood to earn ██████████████████████████████████

19    ██████████████████████████████████████ if we can

20    ever prove that there was one infringing customer, is a matter

21    still in play, but this is largely fanciful and it is outside

22    the scope of his expertise by his own admission, and I --

23    although I will pen an order so that you don't have to

24    challenge my decision from the bench, that is the Court's

25    direction with respect to Furchtgott-Roth.
```

1    Now, maybe there's somebody else who can come in and

2    bring us some more damages numbers, but he's admittedly not a

3    damages expert, he is an expert to talk about what incentivizes

4    companies to behave in a certain way, what they would stand to

5    lose if they behave in a different way, and that damages are

6    largely unquantifiable because of that so the jury should lean

7    toward statutory damages.

8    So that's my thinking, so nobody has to go home

9    wondering.  And then we'll take up Strong, though I'm not sure

10   what we do with Furchtgott-Roth if we limit his opinions,

11   because then it becomes a question of whether his existing

12   opinion can be culled in any way that makes it still admissible

13   without him having to draft an entirely different opinion,

14   which the deadline for doing so has long since passed, in which

15   case I don't know that Strong would be relevant, because

16   I think he is rebuttal to Furchtgott-Roth, unless he's rebuttal

17   to somebody else too, I don't know, I can't remember now.

18   So that's where we stand.  I'll look at your

19   infraction motions, which are largely just everybody is mad at

20   everybody because people didn't want to do what they were

21   supposed to do when they were supposed to do it.  I don't

22   intend to spend a lot of time on it.  I wouldn't spend

23   17 lawyers over $400 an hour over multiple hours in the next

24   ten days to prepare for an argument over those last three

25   sanctions motions, because I can tell you in that regard my